IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER  1:20CV66

JANE ROE,                           )
                                    )
       Plaintiff,                )
                                    )
v.                                    )
                                    )
UNITED STATES OF AMERICA, et al.,   )
                                    )
       Defendants.             )

**DEFENDANT CIRCUIT EXECUTIVE JAMES N. ISHIDA'S MEMORANDUM  IN SUPPORT OF MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ....................................................................................3

      A.    Plaintiff complains about the First Assistant to the Federal Public Defender .........3
      B.    The Fourth Circuit initiates an investigation ......................................................3
      C.    Plaintiff requests mediation ...............................................................................4
      D.    The mediation results in Plaintiff obtaining a Fourth Circuit clerkship, and she withdraws her Chapter X claim ..........................................................................4
      E.    Chief Judge Gregory takes disciplinary action ....................................................5

PROCEDURAL BACKGROUND.............................................................................5

      A.    Administrative Process ...................................................................... 5
      B.    This Lawsuit................................................................................... 6

STATUTORY AND ADMINISTRATIVE FRAMEWORK ..........................................6

      A.    Federal Employment ........................................................................ 6
      B.    Fourth Circuit Employee Dispute Resolution (EDR) Plan .................................... 8

ARGUMENT ................................................................................................................9

    A.     LEGAL STANDARD.............................................................................9

    B.     THE JUDICIALLY IMPLIED *BIVENS* CAUSE OF ACTION SHOULD
           NOT BE EXTENDED TO PLAINTIFF'S NOVEL CLAIMS WHICH
           ARISE IN A "NEW *BIVENS* CONTEXT" SINCE SPECIAL FACTORS
           COUNSEL HESITATION .....................................................................10

         1.     Plaintiff's novel claims present a "new *Bivens* context" ...........11

         2.     Special factors counsel against implying a *Bivens* cause of action ..........14

             a.     Federal employment counsels hesitation ........................14

             b.     Judicial independence counsels hesitation.....................16

             c.     Judicial Council of the Fourth Circuit and Judicial
                  Conference of the United States policies counsel hesitation .........17

             d.     The Fourth Circuit's Plan provides an alternative,
                  existing process precluding a *Bivens* cause of action ..................18

    C.     QUALIFIED IMMUNITY BARS THIS LAWSUIT ...........................20

         1.     Step One: Plaintiff fails to allege plausibly that Circuit
             Executive Ishida personally violated the law.............................21

              a.     Plaintiff fails to allege plausibly that Circuit
                  Executive Ishida personally violated Plaintiff's
                  constitutional rights........................................................21

              b.     Plaintiff fails to allege plausibly that Circuit
                  Executive Ishida personally violated 42 U.S.C.
                  § 1985(3) and § 1986 .....................................................24

         2.     Step Two: Plaintiff Alleges No Violation of Clearly
             Established Law .........................................................................25

CONCLUSION .........................................................................................................25

Case 1:20-cv-00066-WGY   Document 39   Filed 06/05/20   Page 2 of 31

# TABLE OF AUTHORITIES

## CASES

*Arar v. Ashcroft,*
  585 F.3d 559 (2d Cir. 2009)...................................................................... 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................ 9, 20, 21, 24

*Atkinson v. Holder,*
  925 F.3d 606 (4th Cir. 2019) ............................................................. 12, 13

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007)............................................................................. 9

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
  403 U.S. 388 (1971)................................................................... 1, 10, 19

*Blankenship v. McDonald,*
  176 F.3d 1192 (9th Cir. 1999) .......................................................... 15

*Buschi v. Kirven,*
  775 F.2d 1240 (4th Cir. 1985) ......................................................... 24

*Bush v. Lucas,*
  462 U.S. 367 (1983)........................................................................ 2, 13

*Carlson v. Green,*
  446 U.S. 14 (1980)........................................................................... 10

*Chappell v. Wallace,*
  462 U.S. 296 (1983)...................................................................... 13, 14

*Correctional Services Corp. v. Malesko,*
  534 U.S. 61 (2001)........................................................................ 2, 17

*Corsi v. Mueller,*
  422 F. Supp.3d 51 (D.D.C. 2019) ..................................................... 21

*Davis v. Passman,*
  442 U.S. 228 (1979)................................................................ 10, 12, 19

*Doe v. Meron,*
  929 F.3d 153 (4th Cir. 2019) ............................................................ 12

*Dotson v. Griesa,*
  398 F.3d 156 (2d. Cir. 2005)................................................... passim

*Drone v. Duff,*
  2017 WL 6383607 (E.D. Va. 2017).................................................... 19

*FDIC v. Meyer,*
  510 U.S. 471 (1994)......................................................................... 13

*Feit v. Ward,*
  886 F.2d 848 (7th Cir. 1989) .............................................................. 2

*Frank v. Relin,*
  1 F.3d 1317 (2d Cir. 1993)................................................................. 2

*Gleason v. Malcom,*
  718 F.2d 1044 (11th Cir. 1983) ........................................................ 19

Case 1:20-cv-00066-WGY   Document 39   Filed 06/05/20   Page 3 of 31

*Gooden v. Howard County,*
 954 F.2d 960 (4th Cir. 1992) ........................................................................... 24

*Grieveson v. Anderson,*
 538 F.3d 763 (7th Cir. 2008) ........................................................................... 22

*Hall v. Clinton,*
 235 F.3d202 (4thCir. 2000).................................................................... 14, 19, 24

*Harlow v. Fitzgerald,*
 457 U.S. 800 (1982)........................................................................................ 20

*In re Golinski,*
 587 F.3d 956 (9th Cir. 2009) ............................................................ 7, 8, 9, 15, 16

*Jeffrey M. Brown Assoc., Inc. v. Rockville Center, Inc.,*
 7 Fed. App'x. 197 (4th Cir. 2001) ..................................................................... 4

*Kirby v. City of Elizabeth City,*
 388 F.3d 440 (4th Cir. 2006) ............................................................................. 1

*Lee v. Hughes,*
 145 F.3d 1272 (11th Cir. 1998) ......................................................................... 15

*Lehman v. Morrissey,*
 779 F.2d 526 (9th Cir. 1985) ............................................................................. 6

*Marcilis v. Township of Redford,*
 693 F.3d 589 (6th Cir. 2012) ............................................................................. 22

*Matthews v. Bergdorf,*
 889 F.3d 1136 (10th Cir. 2018) ................................................................... 22, 23

*Migdal v. Rowe Price-Fleming Int'l,*
 248 F.3d 321 (4th Cir. 2001) ............................................................................. 9

*Mirmehdi v. United States,*
 689 F.3d 975 (9th Cir. 2012) ............................................................................. 19

*Pahls v. Thomas,*
 718 F.3d 1210 (10th Cir. 2013) ......................................................................... 22

*Pearson v. Callahan,*
 555 U.S. 223 (2009)........................................................................................ 20

*Philips v. Pitt Cty Mem'l. Hosp.,*
 572 F.3d 176 (4th Cir. 2009) ............................................................................. 4

*Pinar v. Dole,*
 747 F.2d 899 (4th Cir. 1984) ............................................................................. 14

*Ridpath v. Board of Governors Marshall Univ.,*
 447 F.3d 292 (4th Cir. 2006) ............................................................................. 21

*Robbins v. Oklahoma,*
 519 F.3d 1242 (10th Cir. 2008) ......................................................................... 22

*Ryan v. McAleenan,*
 No. CV ELH-19-1968, 2020 WL 1663172 (D. Md. Apr. 3, 2020) ..................... 4, 5

*Semper v. Gomez,*
 747 F.3d 229, 240 (3d Cir. 2014)................................................................. passim

*Simmons v. Poe,*
 47 F.3d 1370 (4th Cir. 1995) ............................................................................. 24

*Trerice v. Summons,*
 755 F.2d 1081 (4th Cir. 1985) ........................................................................... 24

iv

*Tun-Cos v. Perrotte*,
    922 F.3d 514 (4th Cir. 2019) ................................................................. 10

*United States v. Fausto*,
    484 U.S. 439 (1988)............................................................................. 6

*Vanderklok v. United States*,
    868 F.3d 189 (3d Cir. 2017)............................................................... 11

*Vega v. United States*,
    881 F.3d 1146 (9th Cir. 2018) ........................................................... 18

*White v. Pauly*,
    137 S. Ct. 548 (2017)........................................................................ 25

*Wilkie v. Robbins*,
    551 U.S. 537 (2007)................................................................... passim

*Young v. City of Mount Ranier*,
    238 F.3d 567 (4th Cir. 2001) ............................................................... 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ............................................................... 1

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)................................................................ passim

*Zimbelman v. Savage*,
    228 F.3d 367 (4th Cir. 2000) ............................................................. 14

## STATUTES

2 U.S.C. § 1434 ....................................................................................... 8
5 U.S.C. § 55 .......................................................................................... 6
5 U.S.C. § 63 ...................................................................................... 6, 7
5 U.S.C. § 1101 ....................................................................................... 6
5 U.S.C. § 2105 ....................................................................................... 7
5 U.S.C. § 6301(2)(A) ............................................................................. 7
5 U.S.C. § 8331 ....................................................................................... 7
5 U.S.C. § 8901 ....................................................................................... 7
5 U.S.C. §§ 2302 ..................................................................................... 7
28 U.S.C. § 332 ....................................................................................... 2
28 U.S.C. § 332(e) ................................................................................. 17
42 U.S.C. § 1985(3) ............................................................................ 1, 24
42 U.S.C. § 1986 ................................................................................ 1, 24
Pub. L. No. 104-1 .................................................................................... 7

Case 1:20-cv-00066-WGY   Document 39   Filed 06/05/20   Page 5 of 31

# I. INTRODUCTION

This case arises out of an employment discrimination request for counseling filed by Plaintiff, Jane Roe ("Plaintiff"), a former assistant federal public defender ("AFPD") in the Federal Public Defender's Office for the Western District of North Carolina ("FPD-WDNC"), under the Consolidated Equal Employment Opportunity and Employment Dispute Resolution (EDR) Plan of the United States Court of Appeals for the Fourth Circuit (Nov. 2018)[1] (EDR Plan or Plan). Pursuant to the Plan, Plaintiff participated in mediation, obtained a Fourth Circuit clerkship, withdrew her request for counseling, and resigned. In accordance with his obligations under the Plan, Chief Judge Roger L. Gregory, United States Court of Appeals for the Fourth Circuit, ordered an investigation, and following the investigation took disciplinary action.

Plaintiff now sues Circuit Executive James N. Ishida, United States Court of Appeals for the Fourth Circuit, and eleven other federal defendants, alleging under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), a due process violation under the Fifth Amendment (First Claim for Relief), an equal protection violation under the Fifth Amendment (Second Claim for Relief), a conspiracy to violate her constitutional rights under 42 U.S.C. § 1985(3) (Third Claim for Relief), and an action for neglect to prevent a conspiracy to

---

[1] The Plan, which is referred to throughout the Complaint, is attached as Exhibit A, and is a publicly-available document at https://www.ca4.uscourts.gov/docs/pdfs/equal-employment-opportunity-and-employment-dispute-resolution-plan.pdf?sfvrsn=0&sfvrsn=0. The Court may take judicial notice of this document. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). The 2018 Plan superseded the 2013 Plan, but did not change the pertinent portions of the Plan. Subsequently, the 2019 Plan was adopted.

violate her constitutional rights under 42 U.S.C. § 1986 (Fourth Claim for Relief). Plaintiff sues Circuit Executive Ishida in his official and individual capacities.[2]

The Court should reject Plaintiff's claims in full. This personal-capacity *Bivens* lawsuit is not a "proper vehicle" for challenging his performance of duties, pursuant to 28 U.S.C. § 332, as the Circuit Executive, his administration of the Plan, or to attack the policies underlying the Plan itself. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (the purpose of *Bivens* is to deter a federal officer, not challenge an entity's policies); *see Bush v. Lucas*, 462 U.S. 367, 378-80 (1983) (federal employment constitutes a "special factor" warranting refusal to imply a *Bivens* claim). *First*, Plaintiff's *Bivens* claims present a "new context" never previously recognized by the Supreme Court. *See Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). *Second*, special factors, including the federal employment relationship, judicial independence, and judicial policies, counsel hesitation in implying a *Bivens cause of action*. *Id.* at 1857-58. Indeed, because the Plan provided Plaintiff an alternative process for addressing her claims, "that alone may limit the power of the Judiciary to infer a new Bivens cause of action" because "'any alternative, existing process for protecting the [injured party's] interest' . . . itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.*

---

[2] To the extent the Complaint could be construed to seek equitable relief from Circuit Executive Ishida in his individual capacity, such relief is not available. *Kirby v. City of Elizabeth City*, 388 F.3d 440, 452 n.10 (4th Cir. 2006) ("injunctive relief could only be awarded against the officers in their official capacities"), *cert. denied*, 547 U.S. 1187 (2006); *e.g.*, *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ("equitable relief" available from defendant "only in his official, not his individual capacity"); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (Equitable relief "can be obtained only from the defendants in their official capacities."). The Plaintiff's request for equitable relief will be addressed in the brief of the United States and is barred by sovereign immunity.

at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). *Finally*, qualified immunity bars the claims against Circuit Executive Ishida.

## II. FACTUAL BACKGROUND

A.      **Plaintiff complains about the First Assistant to the Federal Public Defender.**

Plaintiff alleges that while an AFPD, she complained to the Federal Public Defender (Defender) that the First Assistant sexually harassed her, discriminated against her based on her gender, and retaliated against her. *See* Compl., ¶¶ 65-66, 69, 72-76. On August 10, 2018, Plaintiff emailed the Defender regarding the First Assistant's alleged sexual harassment. *Id*., ¶ 211. She alleges that the Defender mishandled her complaints and retaliated against her. *See Id.,* ¶¶ 65-69, 72-76.

B.      **The Fourth Circuit initiates an investigation.**

Based on Plaintiff's August 10, 2018 e-mail, the Defender notified Circuit Executive Ishida, who, in his role as the Employment Dispute Resolution (EDR) Coordinator,[3] and in compliance with the Plan, notified Chief Judge Gregory, who ordered an investigation under the Plan. Id., ¶¶ 217, 257-58, 451, 484; Exhibit A, Ch. IX (Reports of Wrongful Conduct). On September 10, 2018, Plaintiff formally filed a request for counseling under Chapter X of the Plan in conjunction with her report of wrongful conduct under Chapter IX of the Plan,[4] naming both

---

[3] The EDR Coordinator is responsible for providing information to the Court and employees regarding the rights and protections afforded under the Plan, to coordinate and organize the procedures under the Plan, and to coordinate the counseling of individuals in the initial stages of the claims process. *See* Plan, Exhibit A, Chapter X, § 6.

[4] "A report of wrongful conduct is not the same as initiating or filing a claim under this Plan; thus, employees who wish to file an EDR claim relating to any alleged wrongful conduct . . . must follow the procedures set forth in Chapter X of the Plan." Plan, Chapter IX, p. 7. An employee can only obtain relief under Chapter X. *See* Plan, Chapter X, § 1. The Chief Judge or unit executive imposes discipline under Chapter IX. *See* Plan, Chapter IX, p. 7.

the First Assistant and Defender as violators of the Plan. *Id.*, ¶ 274. In a separate filing, Plaintiff requested disqualification of the Defender. *Id.*, ¶ 276. On September 28, 2018, Circuit Executive Ishida, serving as the Employment Dispute Resolution (EDR) Coordinator, confirmed to Plaintiff that there would be one unified investigation covering Plaintiff's Chapter IX report of wrongful conduct and Chapter X request for counseling. *Id.*, ¶¶ 299, 325.

**C.**   **Plaintiff requests mediation**.

On January 30, 2019, Plaintiff requested mediation under the Plan. *Id.*, ¶¶ 411-17. On February 7, 2019, Plaintiff met with the Mediator and requested a duty station transfer. *Id.*, ¶ 411. On February 26, 2019, Plaintiff again met with the Mediator, who reported that Plaintiff could not transfer to an adjacent federal defender office because that office did not have an opening. *Id.*, ¶ 454. The Mediator offered to help Plaintiff secure a Fourth Circuit clerkship, and after the meeting the Mediator went to Richmond, Virginia, to advocate in person on Plaintiff's behalf for a clerkship. *Id.*, ¶¶ 456-57. Later that week, the Mediator told Plaintiff that a Fourth Circuit judge had an available term clerkship position, and wanted to interview Plaintiff. *Id.*, ¶ 458.

**D.**   **The mediation results in Plaintiff obtaining a Fourth Circuit clerkship, and she withdraws her Chapter X claim.**

On March 8, 2019, Plaintiff interviewed with the Fourth Circuit Judge, who then offered her a clerkship, which Plaintiff accepted as a "negotiate[ed] . . . resolution" of her Chapter X claim. *Id.*, ¶¶ 7, 459. On March 11, 2019, Plaintiff sent an email[5] to the Circuit Executive Ishida withdrawing her Chapter X claim.

---

[5]  This email, while not cited in the Complaint, is properly considered on a motion to dismiss pursuant to Rule 12(b)(6) because it is integral to the Complaint. *Philips v. Pitt Cty Mem'l. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). *Jeffrey M. Brown Assoc., Inc. v. Rockville Center, Inc.*, 7 Fed. App'x. 197, 203 (4th Cir. 2001) (considering documents referenced in a complaint in order to "further the policy of '[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting … documents upon which their claims are based.'"). This is especially appropriate here,



Redacted EDR Claim (Chapter X)
Jane Roe    to: James_Ishida@ca4.uscourts.gov          03/11/2019 09:11 AM

| | |
|---|---|
| From: | Jane Roe |
| To: | "James_Ishida@ca4.uscourts.gov" <James_Ishida@ca4.uscourts.gov> |
| History: | This message has been replied to and forwarded. |

Dear James,

I hope you are doing well. I wanted to let you know that I have accepted a clerkship with Judge Redacted. Although I am saddened to no longer be a federal defender, I am honored for this opportunity and I very much appreciate the Fourth Circuit's assistance in helping me reach the best possible outcome under the circumstances. I am also extremely grateful for the Fourth Circuit's support in being considered for a potential placement in Judge Redacted chambers. These opportunities will allow me a fresh start while saving my reputation and the hard work I have put into building my career. Given these circumstances, I no longer wish to pursue the Chapter X portion of my EDR claim.

Thank you again for your time and attention to this matter. I would appreciate it if you would also forward my appreciation and thanks to Chief Judge Gregory.

Respectfully,



On March 15, 2019, Plaintiff voluntarily resigned from the FDO-WDNC.  Compl., ¶ 464.

**E.      Chief Judge Gregory takes disciplinary action.**

Following the investigation, Chief Judge Gregory took disciplinary action.  *Id*., ¶¶ 483-84.

### III.  PROCEDURAL BACKGROUND

**A.      Administrative Process**

On September 10, 2018, Plaintiff filed a request for counseling under Chapter X of the Plan and filed a report of wrongful conduct under Chapter IX of the Plan.  *Id*., ¶¶ 274-76.  On March 11, 2019, Plaintiff withdrew her Chapter X claim based on sexual harassment, discrimination, and retaliation.  Plaintiff did not file a complaint under § 10(A), request a hearing under § 10(B), or request review by the Circuit Council under§ 11(F) of Chapter X of the Plan.  In May 2019, Chief

---

where Plaintiff challenges the validity of the administrative process, yet omits mentioning the email in which she withdrew her administrative claim.  *See, e.g., Ryan v. McAleenan*, No. CV ELH-19-1968, 2020 WL 1663172, at *10 (D. Md. Apr. 3, 2020) (considering emails and other documentation from administrative process attached to a motion to dismiss in a Title VII case).

Judge Gregory took disciplinary action at the conclusion of the investigation in the Chapter IX proceeding. Id., ¶¶ 483-484.

## B. <u>This Lawsuit</u>

Plaintiff now sues Circuit Executive Ishida, acting in his role as EDR Coordinator, asserting four causes of action. While styled as claims against Circuit Executive Ishida in his individual capacity, each claim seeks recovery from Circuit Executive Ishida's personal assets for actions he took as the EDR Coordinator.

## IV. STATUTORY AND ADMINISTRATIVE FRAMEWORK

### A. <u>Federal Employment</u>

Congress enacted the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq*., to replace a "patchwork system" of federal personnel law "with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto,* 484 U.S. 439, 445 (1988). The CSRA personnel system provides a "comprehensive" scheme of protections and remedies for federal employment disputes, *id*., at 448, and "prescribes in great detail the protections and remedies applicable . . . including the availability of . . . judicial review." *id.* at 443. Because of its comprehensive nature, courts have held that "Congress meant to limit the remedies of federal employees bringing claims closely intertwined with their conditions of employment to those remedies provided in the [CSRA]." *Lehman v. Morrissey,* 779 F.2d 526, 527-28 (9th Cir. 1985).

Judicial Branch employees are federal "employees" under Title 5, Section 2105, of the United States Code. Indeed, most Judicial Branch employees, including all Federal Public Defender Office employees, are covered by many parts of Title 5 of the United States Code,

6

conferring rights and benefits to federal employees such as back pay, severance pay, family and medical leave, and health and retirement benefits.[6]  However, Congress intentionally omitted Judicial Branch employees and Legislative Branch employees from the CSRA's specific procedures and remedies afforded by expressly classifying such employees as "excepted service" personnel under various provisions of the CSRA.  *See generally* 5 U.S.C. §§ 2302, 4301, 7511; *see also Semper v. Gomez*, 747 F.3d 229, 240 (3d Cir. 2014).  Thus, Judicial Branch employees have long been covered by a distinct and comprehensive set of administrative procedures and remedies for personnel matters, including employee discrimination, harassment and retaliation claims.  Soon after Congress's enactment of the CSRA, the Judicial Conference developed a Model Equal Employment Opportunity Plan in 1980, and revised it in 1986 (Model Plan).  Every federal court has adopted the Model Plan in its entirety or with some procedural modifications.

Congress has long been aware of the Judicial Conference Model Plan, and elected not to subject Judicial Branch employees to the CSRA.  Thus, when Congress enacted the Congressional Accountability Act of 1995 (CAA), Pub. L. No. 104-1, 109 Stat. 3, "'Congress initially considered extending the [CAA's] coverage to employees of the judicial branch but mindful of judicial autonomy, ultimately decided against such action.'"  *In re Golinski*, 587 F.3d 956, 962-63 (9th Cir. 2009) (Kozinski, C.J.) (decision under 9th Circuit EDR Plan) (quoting *Dotson v. Griesa,* 398 F.3d 156, 173 (2d. Cir. 2005)).

---

[6]  *See generally* 5 U.S.C. § 55 (providing severance pay, separation pay, and back pay for employees of the Administrative Office of the United States Courts and federal courts under 28 U.S.C. § 610); 5 U.S.C. § 63, Subchapter I (applying annual and sick leave provisions for all employees defined under 5 U.S.C. § 2105, which includes most judiciary employees); 5 U.S.C. § 63, Subchapter III (applying family and medical leave provisions to employees as defined under 5 U.S.C. § 2105, by reference to 5 U.S.C. § 6301(2)(A); 5 U.S.C. § 8901 (including employees defined under 5 U.S.C. § 2105 for health insurance coverage under Chapter 89 of Title 5 of the United States Code; 5 U.S.C. § 8331 (including employees defined under 5 U.S.C. § 2105 for civil service retirement benefits set forth under Chapter 83 of Title 5 of the United States Code).

Rather, in enacting the CAA, Congress required the Judicial Conference to submit a report to Congress on the application to the Judicial Branch of the federal labor laws extended to Congress by the CAA, and any need for legislation to afford Judicial Branch employees rights, protections, and procedures, "including administrative and judicial relief," that are comparable to those available to Legislative Branch employees. 2 U.S.C. § 1434. In response, the Judicial Conference emphasized that "[f]rom the beginning of the federal court system, the hallmarks of judicial branch governance have been local court management and individual judge autonomy, coupled with mechanisms for ensuring accountability and effective use of resources." *Dotson,* 398 F.3d at 175 (internal citation omitted). For this reason, the "judiciary's internal governance system is a necessary corollary to judicial independence." *Id.* The Judicial Conference thereafter adopted a new Model Employment Dispute Resolution Plan in 1997 (1997 Model EDR Plan). *In re Golinski*, 587 F.3d at 963. The new Model EDR Plan established enhanced review procedures similar to the structure Congress created in the CAA. "Congress has determined that the Judiciary's EDR tribunals are the only forum where judicial employees may seek redress for unlawful personnel actions." *Id.,* at 961.

## B.     Fourth Circuit Employment Dispute Resolution (EDR) Plan

Like the 1997 Model EDR Plan, the Fourth Circuit's Plan that was in place at the time of the events giving rise to this claim prohibited discrimination against employees based on race, color, religion, sex, national origin, and disability, harassment, and retaliation. Plan at Ch. X, § 1. The Plan established review procedures similar to the structure Congress created in the CAA. The Plan required mandatory counseling and mediation, *id*., §§ 8-9, and, upon expiration of the mediation period, afforded an employee the right to file a formal written complaint. *Id.,* § 10. The Chief Judge was responsible for determining if the complaint stated a claim upon which relief

could be granted, *id.,* § 10(A)-(B), and, if so, the Chief Judge or other designated judicial officer was required to hold a hearing on the merits within sixty days of the filing of the complaint. *Id.,* § 10(B)(2). The presiding judicial officer could allow discovery and investigation, *id.,* § 10(B)(2); the employee had the right to present evidence and to cross-examine witnesses, *id.,* § 10(B)(2)(c); and the judicial officer could award broad equitable relief, including back pay.[7] *Id.,* § 10(B)(2)(f) & § 12. If an employee was still dissatisfied, the employee could appeal under the procedures established by the judicial council of the circuit. *Id.,* § 11. "The Plan is . . . the exclusive remedy of the employee relating to rights enumerated under the Plan." *Id.,* § 11. "Decisions of the Judicial Council are final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id*., Ch. 10, § 12.

## V. ARGUMENT

### A.  LEGAL STANDARD

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1949 (2009) quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). To assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Iqbal,* 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged

---

[7]  *See In re Golinski*, 587 F.3d at 961 (in a proceeding under the 9th Circuit's EDR Plan, the Chief Judge observes:  "Our EDR tribunals . . . have the authority to grant full relief . . . .").

9

or the relief sought.  *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001)

(quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)).

**B.**   **THE JUDICIALLY IMPLIED *BIVENS* REMEDY SHOULD NOT BE EXTENDED TO PLAINTIFF'S NOVEL CLAIMS WHICH ARISE IN A "NEW BIVENS CONTEXT" SINCE SPECIAL FACTORS COUNSEL HESITATION.**

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court explained that jurisprudence

regarding the implication of private rights of action has fundamentally changed since the Court

first recognized a private cause of action for a Fourth Amendment violation in *Bivens*, 403 U.S.

388.  The Court noted that, when *Bivens* was decided, it regularly found implied causes of action

not explicit in statutory text; by contrast, its subsequent decisions have concluded that if a statute

itself does not display an intent to create a private remedy, "a private cause of action will not be

created through judicial mandate."  *Abbasi*, 137 S. Ct. at 1855-56.  This "caution as to implied

causes of actions under congressional statutes led to similar caution with respect to actions in the

*Bivens* context, where the action is implied to enforce the Constitution itself."  *Id.* at 1856.  Indeed,

the Court has recognized an implied constitutional damages remedy only twice since *Bivens* itself,

in *Davis v. Passman*, 442 U.S. 228 (1979) (gender discrimination in violation of Fifth

Amendment's Due Process Clause), and in *Carlson v. Green*, 446 U.S. 14 (1980) (failure to provide

medical treatment to prisoner in violation of the Eighth Amendment).

The Supreme Court made clear in *Abbasi* "that expanding the *Bivens* remedy is now a

'disfavored' judicial activity," and emphasized that it has "consistently refused to extend *Bivens*

to any new context or new category of defendants" for the past 30 years.  137 S. Ct. at 1857 (citing

cases); *Tun-Cos v. Perrotte*, 922 F.3d 514, 521 (4th Cir. 2019) (in *Abbasi*, the Supreme Court

expressed "open hostility to expanding *Bivens* liability").  Strikingly, although the Court did not

overrule *Bivens*, it observed that "in light of the changes to the Court's general approach to

10

recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 1856.

The Court's reluctance to extend *Bivens* is rooted in separation-of-powers principles. *Abbasi*, 137 S. Ct. at 1856-57. *Abbasi* explained that it is a "significant step under separation-of-powers principles for a court to determine that it has the authority . . . to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* at 1856. When a party seeks to assert a *Bivens* remedy, "[t]he question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1857. The answer, the Court observed, "most often will be Congress," because Congress is better suited to consider the costs and benefits of recognizing a damages remedy. *Id.* at 1857-58. Accordingly, a *Bivens* remedy is not available in any "new context" when there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857. Relatedly, if there is an "'alternative, existing process for protecting the [injured party's] interest,'" that process "itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (alterations in original) (quoting *Wilkie*, 551 U.S. at 550). Under this guidance, Plaintiff's *Bivens* claim fails.

       1.     <u>Plaintiff's novel claims present a "new *Bivens* context."</u>

A case presents a "new context" if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court" (*i.e.*, *Bivens*, *Davis*, and *Carlson*). *Abbasi*, 137 S. Ct. at 1859-60. Courts must decide whether a *Bivens* claim arises in a "new context" solely by reference to the Supreme Court's own decisions implying private rights of action. *Abbasi*, 137 S. Ct. at

1860.[8] *Abbasi* provides "some examples" of "differences that are meaningful enough to make a given context a new one," such as "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action . . . the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1864 (explaining that "even a modest extension is still an extension"). If the asserted cause of action arises in a new context, courts must then consider whether "special factors counsel[] hesitation" before finding an implied cause of action "in the absence of affirmative action by Congress." *Id.* at 1857.

Here, Plaintiff's case differs in several "meaningful ways" from previous *Bivens* cases decided by [the Supreme] Court. *Abbasi*, 137 S. Ct. at 1859-60. First, this case involves a claim against the AOC's General Counsel. *Id.* at 1864 (observing that "meaningful differences" include "the rank of the officers involved"); *Atkinson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) (finding meaningful difference where Attorney General Holder "held much higher rank[]than the line-level FBI agents sued in *Bivens*."). Second, this case is not similar to *Davis v. Passman* because that case dealt with a very specific action, the firing of a staff member explicitly because of gender. *See Davis,* 442 U.S. at 230 (the defendant fired the female assistant after concluding "that it was essential the understudy to my Administrative Assistant be a man."); *Doe v. Meron*, 929 F.3d 153, 159 (4th Cir. 2019) (finding meaningful differences because of multiple allegations of violations of the Fifth Amendment's Due Process Clause and different legal mandates the officers were operating under). Plaintiff's allegations of gender discrimination are more general. She does not allege that Circuit Executive Ishida, as EDR Coordinator, took any specific employment action

---

[8] Under *Abbasi*, any "past pronouncements" from lower courts recognizing *Bivens* claims not explicitly authorized in those three cases "are . . . not controlling," regardless of jurisdiction. *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017).

against her but merely implies that things would have been different if she were a man. *See, e.g.,* Compl. ¶ 102. *See Abbasi* at 1864 (observing that "meaningful differences" include the generality or specificity of the official action). Third, *Davis* dealt with congressional employment practices, whereas Plaintiff's allegations deal with federal judiciary policies underlying the Plan that implicate special considerations that could disrupt judicial operations and undercut judicial autonomy. *Id.* at 1864 (observing that "meaningful differences" include the risk of disruptive effects); *Atkinson*, 925 F.3d at 621 (finding meaningful difference where "plaintiffs seek to hold high-level officials accountable for what they . . . frame as policy-level decisions"). Additionally, in *Davis*, an alternative process did not exist, whereas, as explained below, in this case, the Plan provided Plaintiff an existing process for protecting her interests.

Thus, Plaintiff's proposed constitutional claims "bear little resemblance" to those previously recognized by the Supreme Court. *See id.* at 1860, 1865 (even where "[t]he differences between a claim and the one in *Carlson* are perhaps small . . . " "the new-context inquiry is easily satisfied."). The Supreme Court has never recognized a Due Process or Equal Protection Claim against a General Counsel. Insofar as it has considered implying federal employment claims, it has decided *against* doing so. *See Bush*, 462 U.S. at 367, 390 (denying *Bivens* claim for allegedly retaliatory personnel action against federal worker); *see also Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (denying sailors' *Bivens* claim alleging racial discrimination by military officers); *see also FDIC v. Meyer*, 510 U.S. 471, 473 (1994) (rejecting *Bivens* claim against agency in a procedural due process suit against a federal agency for wrongful termination).

In addition, Plaintiff's theories of vicarious and collective liability have no analog in the Supreme Court's core *Bivens* jurisprudence. The Supreme Court in *Bivens, Davis, and Carlson*

did not embrace Plaintiff's brand of "conspiracy" liability. In fact, the Supreme Court has never permitted a *Bivens* remedy for a standalone "conspiracy" claim, or to vindicate an AFPD's claim of constructive discharge. Additionally, the Supreme Court has never recognized any constitutional impediments under a *Bivens* analysis to a Circuit Executive acting as EDR Coordinator. This most certainly constitutes a new *Bivens* context.

    2.    <u>Special factors counsel against implying a *Bivens* cause of action</u>.

The special-factors inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58. "The only relevant threshold — that a factor 'counsels hesitation'— is remarkably low . . . . 'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider." *Arar v. Ashcroft*, 585 F.3d 559, 573-74 (2d Cir. 2009). "[I]f there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy[.]" *Abbasi*, 137 S. Ct. at 1858 (emphasis added). This case implicates special factors that, "[t]aken together," "dictate that it would be inappropriate" to imply the remedies Plaintiff proposes. *Chappell*, 462 U.S. at 304.

    a.    *Federal employment counsels hesitation.*

"In *Bush*, the Supreme Court determined that federal employment constituted a 'special factor' warranting refusal to recognize a First Amendment *Bivens* claim asserted by a federal employee." *Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000), *cert. denied,* 121 S. Ct. 1656 (2001); *Zimbelman v. Savage*, 228 F.3d 367, 370-71 (4th Cir. 2000) (rejecting *Bivens* action by civilian Air Force employee as barred by CSRA). "Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of federal employment." *Hall*, 235 F.3d at 206; *Pinar v. Dole*, 747 F.2d 899, 910-12 (4th Cir. 1984)

14

(Congress intended CSRA to be exclusive; rejecting federal employee's *Bivens* challenge to personnel actions taken against him). "Congress's omission of review rights [under the CSRA] for judicial branch employees was not inadvertent and, therefore, preclude[s] pursuit of a *Bivens* claim." *Dotson*, 398 F.3d at 169 (rejecting probation officer's *Bivens* claim for racial discrimination); *Semper*, 747 F.3d at 237 (in rejecting probation officer's *Bivens* claim, "it is undisputed that the CSRA precludes current or former federal employees from bringing a *Bivens* damages action for alleged constitutional violations arising out of the employment context"); *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999) (denying federal court reporter's *Bivens* action holding "that the CSRA precludes a *Bivens* remedy in this case"); *Lee v. Hughes*, 145 F.3d 1272, 1276 (11th Cir. 1998) (CSRA precludes probation officer's *Bivens* claim); *see In re Golinski*, 587 F.3d at 961 ("Congress has decided that the Judiciary's EDR tribunals are the only forum where judicial employees may seek redress for unlawful personnel actions. . . . [Federal judicial] employees "can't appeal to the MSPB, they have no *Bivens* action and they aren't provided remedies by the Civil Service Reform Act . . . .").

"[T]he Second, Ninth, and Eleventh Circuits have concluded that current or former employees of the Judicial Branch -- who otherwise have no right to administrative or judicial review under the CSRA itself -- could not bring damages claims pursuant to the *Bivens* doctrine." *Semper*, 747 F.3d at 237; *Dotson*, 398 F.3d at 159-83; *Blankenship*, 176 F.3d at 1194-96; *Lee*, 145 F.3d at 1273-77; *see In re Golinski*, 587 F.3d at 961 (Judicial employees "have no *Bivens* action and they aren't provided remedies by the Civil Service Reform Act . . . ."). This Court should join the ranks of courts that have declined to imply *Bivens* remedies for novel claims in the federal employment context.

15

### b. *Judicial independence counsels hesitation.*

The Federal Judiciary has long taken the position that the judicial branch must have control over its employee and workplace management in order to ensure both the independence, and the appearance of independence, of its decisions. *Dotson*, 398 F.3d at 175. The "judiciary's internal governance system is a necessary corollary to judicial independence." *Id.* (internal citations omitted). "Congress has indicated on a number of occasions that employment disputes with the Judicial Branch implicate a special set of circumstances, including the doctrine of separation of powers and the protection of the independent judiciary." *Semper,* 747 F.3d at 240. Congressional action in withholding CSRA review rights from judicial branch employees was not inadvertent, *Dotson*, 398 F.3d at 169, and, in fact, the CSRA's history evidences Congress's deliberate decision to exclude judicial branch employees from the CSRA's review process, *Dotson*, F.3d at 170; *In Re Golinski*, 587 F.3d at 962 ("History reveals that Congress intended the Judiciary to have . . . the ability to manage its own personnel and adjudicate workplace complaints.").

"Congress initially considered extending the [CAA's] coverage to employees of the judicial branch but, mindful of the importance of judicial autonomy, ultimately decided against such action." *Dotson*, 398 F.3d at 173. "The Judicial Conference of the United States submitted [a] report in 1996, telling Congress: 'The judicial branch is committed to providing the general protections of the CAA laws in a manner that preserves judicial independence and the decentralized administration of the federal courts.'" *In Re Golinski*, 587 F.3d at 962 (quoting Judicial Conference of the United States, Study of Judicial Branch Coverage Pursuant to the Congressional Accountability Act of 1995 (Study) 2-3 (1996)). "As part of that commitment, the Judicial Conference reported that it was developing 'a plan to provide the rights, protections, and remedies similar to the CAA.'" *In re Golinski*, 587 F.3d at 963 (quoting Study at 15). That Plan

16

became the Model EDR Plan, which the Fourth Circuit adopted. Congress, aware of the Judiciary's use of EDR Plans, has not taken further action to bring judiciary employees within a statutory scheme, but instead has allowed the judiciary to implement EDR plans. Congressional action and inaction in this area recognize the importance of separation of powers concerns in ensuring the independence of the federal judiciary, counsel hesitation, and constitute a "special factor" precluding implication of a *Bivens* action. *Id.* at 171.

<blockquote>c. *Judicial Council of the Fourth Circuit and Judicial Conference of the United States policies counsel hesitation.*</blockquote>

Plaintiff's claims attack the Judicial Council for the Fourth Circuit's employment dispute resolution (EDR) policies as embodied in the Plan. Plaintiff asks this Court to recognize an alternative process, when the Plan already provides a process, because she does not agree with the Fourth Circuit's policies and procedures. Plaintiff's claims boil down to a former judiciary employee's dissatisfaction with the Plan's administrative process for addressing alleged personnel claims of harassment, discrimination, and retaliation. However, as noted in *Abbasi*, a *Bivens* action is not the proper vehicle for altering an entity's policy. *Abbasi*, 137 S. Ct. at 1860. Plaintiff's *Bivens* cause of action is a thinly-veiled attempt to attack the Fourth Circuit's EDR policies, *see* Compl. ¶¶ 465-70, as reflected in the Fourth Circuit's Plan. Notably, Plaintiff's claim is predicated on her contention that the 2019 Model EDR Plan "did not address the problems" with the prior Model EDR Plan, *see* Compl. at ¶¶ 465-470, and did not provide her "meaningful remedies," Id., ¶¶ 8, 9. But Plaintiff's subjective views of what would be the Circuit's best policy, as reflected in the Plan, do not create a *Bivens* cause of action.

Congress has granted the circuit councils broad authority to develop policies and procedures to administer the circuit's personnel system through the circuit executive "subject to the general supervision of the chief judge of the circuit." 28 U.S.C. § 332(e). Plaintiff seeks

17

through this *Bivens* action to encourage this Court to override the policy-making roles of the Judicial Conference of the United States and the Judicial Council for the Fourth Circuit, and undermine the AOC's General Counsel's role in advising the Federal Judiciary. That would be contrary to "*Bivens*, which is concerned solely with deterring the unconstitutional acts of individual officers." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) ("If deterring the conduct of a policy-making entity was the purpose of *Bivens* then *Meyer* would have implied a damages remedy against the Federal Deposit Insurance Corporation; it was after all an agency policy that led to Meyer's constitutional deprivation."). Allowing Plaintiff's *Bivens* cause of action would require the Court to assess the quality and appropriateness of the policies underlying the Plan – policies promulgated by the Judicial Council for the Fourth Circuit. Consequently, Plaintiff's *Bivens* action "would call into question the formulation and implementation of a high-level policy," *Abbasi*, 137 S. Ct. at 1860, and counsels hesitation against recognizing a *Bivens* claim.

> d.   The Fourth Circuit's Plan provides an alternative, existing process precluding a Bivens cause of action.

*Any* sort of "alternative, existing process" may "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858, 1876 (quoting *Wilkie* 551 U.S. at 550). This includes "administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). The Fourth Circuit's Plan provides an alternative process for Plaintiff's claims. *See Abbasi*, 137 S.Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a *Bivens* cause of action").

Plaintiff's actions demonstrate the availability of an alternative, existing process, which resulted in Plaintiff obtaining a Fourth Circuit clerkship. Under the Plan, instead of withdrawing

18

her Chapter X claim, Plaintiff, after mediation, could have requested a hearing before the Chief Judge and sought review of the hearing decision under procedures established by the Judicial Council of the Circuit. Plan, Ch. X, § 1(B) – (C). This is precisely the type of alternative, administrative process that precludes a *Bivens* claim. "'The purpose of denying a [*Bivens*] private cause of action to federal employees is to ensure that they do not bypass comprehensive and carefully-balanced statutory and administrative remedies in order to seek direct judicial relief.'" *Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000) (quoting *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983)). And this is especially true where Plaintiff did not exhaust her remedies under the Plan, and voluntarily withdrew her claim after obtaining an appellate clerkship. *See Drone v. Duff*, 2017 WL 6383607 (E.D. Va. 2017) (federal district court's EDR Plan provided meaningful review by judicial officers).

Plaintiff's decision not to pursue the full alternative process under the Plan provides an additional basis for dismissal since a plaintiff who fails to pursue relief under available administrative remedies cannot bring a *Bivens* due process challenge "if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate." *Dotson*, 398 F.3d at 161, n.2 (refusing to imply *Bivens* cause of action for probation officer who alleged he was terminated based on racial discrimination and denial of due process). *Bivens* was never intended to be a "vehicle" where plaintiffs could pick and choose which part of the alternative process that would benefit them and complain of other parts as being inadequate in a *Bivens* lawsuit. *Cf. Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) (declining to imply a *Bivens* remedy when plaintiffs had sought alternative relief "through not one but two different remedial systems").

The Plan's comprehensive process further distinguishes this case from *Davis*, where the Supreme Court emphasized "[f]or Davis, as for Bivens, 'it is damages or nothing.'" *Davis*, 442

19

U.S. at 245 (quoting *Bivens* 403 U.S. at 410 (Harlan, J. concurring in judgment)).  Unlike *Davis,* this is a case in which "an alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Abbasi*, 137 U.S. at 1858; *see Semper,* 747 F.3d at 242 (in case involving a probation officer holding that "the CSRA precludes a federal employee from litigating constitutional claims for equitable and declaratory relief in a § 1331 action where the employee could pursue meaningful relief under a remedial plan that provides for meaningful review of his or her claims by judicial officers.").  At the end of mediation, if Plaintiff had elected to file a formal complaint under § 10 of the Plan, she would have been afforded a hearing, with the right to present evidence, cross-examine adverse witnesses, and if she disagreed with the Chief Judge's decision, to seek review under § 10 of the EDR Plan from the Judicial Council of the Circuit.  Under the Plan, the Chief Judge could have "order[ed] a necessary and appropriate remedy," which could include placement in a comparable alternative position, prospective promotion, back pay and associated benefits, records modification, and equitable relief.  *See* Plan, Chapter X, § 12.  Plaintiff chose to withdraw her claim, and she cannot now complain about the inadequacy of the administrative process.

## C.    <u>QUALIFIED IMMUNITY BARS THIS LAWSUIT</u>

Even if Plaintiff's complaint stated a claim, Circuit Executive Ishida is entitled to qualified immunity from Plaintiff's claims.[9]  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly

---

[9] Qualified immunity is an immunity from suit and not simply protection from the ultimate assessment of damages.  *Iqbal*, 556 U.S. at 685-86 (qualified immunity).  "Litigation . . . exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government," and a defendant entitled to dismissal on the pleadings should "be free from the burdens of discovery."  *Id.* at 685-86.

established statutory or constitutional rights of which a reasonable person would have known."' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity serves the public interest by allowing government officials to perform their duties diligently, without being chilled or distracted by the risk of personal damages suits. Accordingly, government officials are entitled to qualified immunity unless: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" *Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). Here, Plaintiff fails both steps of this test.

1. <u>Step One: Plaintiff fails to allege plausibly that Circuit Executive Ishida personally violated the law</u>.

   a. *Plaintiff fails to allege plausibly that Circuit Executive Ishida personally violated Plaintiff's constitutional rights*.

Because officials must have clear notice that their own specific actions are unconstitutional before they can be held liable in damages, *see Iqbal*, 556 U.S. at 676, step one of the qualified immunity test asks whether the plaintiff has plausibly alleged the violation of a right. *Id*. Specifically, in a *Bivens* action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," *id*. at 677, and a plaintiff must include factual material about the defendant's particular actions.

Plaintiff's allegations do not plausibly allege that Circuit Executive Ishida personally violated Plaintiff's rights. Whether viewed as an impermissible theory of "supervisory liability," *see Iqbal*, 556 U.S. at 677, or as "an unadorned, the-defendant-unlawfully-harmed-me accusation,"

21

*id.* at 678, Plaintiff's allegations are not enough to show a plausible claim. *See Corsi v. Mueller*, 422 F. Supp.3d 51, 65 (D.D.C. 2019) (allegation that alleged violations took place "at the direction of Defendant Mueller" was merely a conclusion and did not plausibly plead that Special Counsel Mueller personally acted in violation of plaintiff's rights).

A plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. To the extent Plaintiff attempts to generally implicate the allegations against other defendants to Circuit Executive Ishida, a complaint that contains "only collective references to defendants does not adequately state a *Bivens* claim . . . ." *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)); *see also Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). When a complaint, like Plaintiff's, "makes only categorical references to 'Defendants,'" it fails to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Marcilis*, 693 F.3d at 596-97; *see also Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (complaint's "undifferentiated contention that 'defendants' infringed" plaintiff's rights failed to state a claim); *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) ("Before a court may undertake the proper analysis, the complaint must 'isolate the allegedly unconstitutional acts of each defendant'; otherwise the complaint does not 'provide adequate notice as to the nature of the claims against each' and fails for this reason."). Here, Plaintiff's collective allegations regarding defendants in general do not state a plausible claim against Circuit Executive Ishida.

Notably, Plaintiff's allegations against Circuit Executive Ishida wholly emanate from his actions while serving as the EDR Coordinator under the Plan. In essence, Plaintiff is unhappy with the entire administrative process under the Plan and everyone who was even remotely

involved in the administrative process. Even assuming Plaintiff's allegations as true, Plaintiff does not allege that Circuit Executive Ishida violated a constitutional right, but only alleges a violation of her rights under the Plan by Circuit Executive Ishida for fulfilling his collateral duty as the EDR Coordinator. Plaintiff cannot establish a *Bivens* claim by repackaging her grievances resulting from an administrative process as "constitutional violations."[10]

Plaintiff's allegations focus on what she perceives to be deficiencies in the Fourth Circuit's Plan and the policies underlying the Plan. *E.g.,* Compl. ¶¶ 8 ("EDR process was structurally flawed), 9 (EDR Plan was "[w]ithout any meaningful review or remedies"), 264 ("EDR's Plan's lack of meaningful remedies"), 448 ("The Fourth Circuit's EDR Plan, unlike the Model EDR Plan . . . also gave accused violators . . . a right to cross-examine"). Plaintiff's disagreement with the Fourth Circuit's Plan, however, does not provide a basis for turning EDR Coordinator Ishida's conscientious efforts in following the Plan into plausible allegations that he personally violated Plaintiff's constitutional rights, when in fact he faithfully performed his EDR Coordinator duties under the Plan, and diligently worked to assist Plaintiff.

Plaintiff's overarching belief that the Fourth Circuit's Plan is inadequate is further reflected in her criticism of EDR Coordinator Ishida following OGC legal guidance. She alleges that EDR Coordinator Ishida should be faulted for following OGC advice to not disclose the investigative report, Compl. ¶¶ 7, 398, for not disclosing information regarding disciplinary matters, Id., ¶¶ 7, 398, and for forwarding unredacted information to Chief Judge Gregory, Id. ¶ 451. EDR Coordinator Ishida's refusal to disclose the investigative report or information regarding disciplinary action fails to state a constitutional violation, especially while conscientiously

---

[10] To recognize a *Bivens* action against Circuit Executive Ishida for no other reason other than faithfully executing his duties under the Plan would expose all EDR Coordinators to individual liability every time an EDR complainant is dissatisfied with their EDR outcome.

following OGC's legal advice. Similarly, following OGC legal advice regarding whether to forward unredacted information to Chief Judge Gregory fails to plausibly allege any constitutional violation.

Additionally, *Bivens* liability cannot be established solely on a theory of *respondeat superior*. *Iqbal*, 556 U.S. 676 ("Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Because vicarious liability is inapplicable to *Bivens* suits, a plaintiff must plead that the Government-official defendant, through the official's own individual actions, violated the Constitution. Here, Plaintiff offers no specific allegations against Circuit Executive Ishida that plausibly state a constitutional violation.

   b.   *Plaintiff fails to allege plausibly that Circuit Executive Ishida personally violated 42 U.S.C. § 1985(3) and § 1986.*

Plaintiff also fails to state any plausible claim that Circuit Executive Ishida personally violated 42 U.S.C. §§ 1985(3) and 1986. Plaintiff's claims under these statutes fail to allege all elements of the causes of action, *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995), are impermissibly conclusory, *Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) (*en banc*), barred by the intracorporate-conspiracy doctrine, *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985), and precluded by the CSRA, *Hall*, 235 F.3d at 206. Specifically, the Fourth Circuit has held "that Congress intended the CSRA would operate to the exclusion of ***all*** other statutory remedies for claims arising out of the federal employment relationship." *Hall*, 235 F.3d at 206 (emphasis added). Because "[a] cause of action based upon a § 1986 is dependent upon the existence of a claim under § 1985," the dismissal of plaintiff's § 1985 claim requires the dismissal of a § 1986 claim. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). Accordingly, under step one of the qualified immunity analysis, Plaintiff fails to allege a plausible claim for relief,

24

and Circuit Executive Ishida is entitled to qualified immunity. *See Abbasi*, 137 S. Ct. at 1869 (qualified immunity bars 42 U.S.C. § 1985(3) claim because of a circuit-split regarding application of intracorporate-conspiracy doctrine).

      2.    <u>Step Two: Plaintiff Alleges No Violation of Clearly Established Law.</u>

Under step two of the qualified immunity test, the question is whether plaintiff has alleged a clearly established right. For an official to lose the protections of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff must "identify a case where an [official] acting under similar circumstances . . . was held to have violated [the Constitution]." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). As previously set forth, there is no case where a member of the federal judiciary has been held to violate another's constitutional rights in a similar context. Because Plaintiff sets forth no constitutional or statutory violation at all, much less a clearly established one, qualified immunity bars Plaintiff's lawsuit. *See Abbasi*, 137 S. Ct. at 1869 (qualified immunity bars 42 U.S.C. § 1985(3) claim because law not clearly established due to circuit-split regarding application of intracorporate-conspiracy doctrine).

CONCLUSION

For the foregoing reasons, Circuit Executive Ishida respectfully requests dismissal with prejudice.

This the 5th day of June, 2020.

                          Respectfully submitted,

                          JOSEPH H. HUNT
                          Assistant Attorney General
                          CARLOTTA P. WELLS
                          Assistant Branch Director

                          s/*Joshua Kolsky*
                          JOSHUA M. KOLSKY

25

Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone:  (828) 271-4661
Fax:  (828) 271-4327
Email:  Gill.Beck@usdoj.gov