IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66


JANE ROE,                                              )
                                                       )
            Plaintiff,                                 )
                                                       )
v.                                                     )
                                                       )
UNITED STATES OF AMERICA, et al.,                      )
                                                       )
            Defendants.                                )


**<u>DEFENDANT CHIEF JUDGE ROGER L. GREGORY'S MEMORANDUM  IN
SUPPORT OF MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS</u>**


**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

    A.    Plaintiff complains about the First Assistant to the Federal Public Defender .........2
    B.    The Fourth Circuit initiates an investigation .......................................................3
    C.    Plaintiff requests mediation ..............................................................................3
    D.    The mediation results in Plaintiff obtaining a Fourth Circuit clerkship, and she
        withdraws her Chapter X claim ..............................................................................4
    E.    Chief Judge Gregory takes disciplinary action .....................................................5

PROCEDURAL BACKGROUND.........................................................................................5

    A.    Administrative Process ..................................................................................... 5
    B.    This Lawsuit.................................................................................................... 5

STATUTORY AND ADMINISTRATIVE FRAMEWORK.........................................................6

    A.    Federal Employment ....................................................................................... 6
    B.    Fourth Circuit Employee Dispute Resolution (EDR) Plan ................................... 8

ARGUMENT ................................................................................................................9

    A.    LEGAL STANDARD.............................................................................9
    B.    THE JUDICIALLY IMPLIED *BIVENS* REMEDY SHOULD NOT
           BE EXTENDED TO THIS NEW CONTEXT BECAUSE PLAINTIFF'S
           NOVEL CLAIMS PRESENT A "NEW *BIVENS* CONTEXT"
           AND SPECIAL FACTORS COUNSEL HESITATION .......................................9
           1.    Plaintiff's novel claims present a "new *Bivens* context" ..........................11
           2.    Special factors counsel against implying a *Bivens* cause of action ...........13
                 a.    Federal employment counsels hesitation ......................................14
                 b.    Judicial independence counsels hesitation....................................15
                 c.    Judicial Council of the Fourth Circuit and Judicial
                     Conference of the United States policies counsel hesitation ........16
                 d.    The Fourth Circuit's Plan provides an alternative,
                     existing process precluding a *Bivens* cause of action ..................17

    C.    ABSOLUTE AND QUALIFIED IMMUNITY BAR THIS LAWSUIT..............19

           1.    Absolute immunity bars this lawsuit.........................................................20
            2.    Qualified immunity bars this lawsuit ........................................................22

                 a.    Step One: Plaintiff fails to allege plausibly that
                     Chief Judge Gregory personally violated the law.........................22
                         1.    Plaintiff fails to allege plausibly that Chief Judge
                             Gregory personally violated her constitutional rights........22
                         2.    Plaintiff fails to allege plausibly that Chief Judge
                                  Gregory personally violated 42 U.S.C. § 1985(3)
                                  and § 1986.........................................................................24
                 b.    Step Two: Plaintiff alleges no violation of clearly
                       established law ..............................................................................25

CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2009)................................................................................ 14

*Ashcroft v. al-Kidd,*
    563 U.S. 731, 741 (2011)................................................................................ 25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................ 9, 20, 23, 24

*Atkinson v. Holder,*
    925 F.3d 606 (4th Cir. 2019) ........................................................... 12, 13

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007)....................................................................................... 9

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971)................................................................... 1, 10, 19

*Blankenship v. McDonald,*
    176 F.3d 1192 (9th Cir. 1999) .......................................................... 15

*Buschi v. Kirven,*
    775 F.2d 1240 (4th Cir. 1985) .......................................................... 25

*Bush v. Lucas,*
    462 U.S. 367 (1983)............................................................................. 2, 13

*Butz v. Economou,*
    438 U.S. 478 (1978).......................................................................... 20, 22

*Carlson v. Green,*
    446 U.S. 14 (1980)................................................................................. 10

*Chappell v. Wallace,*
    462 U.S. 296 (1983).......................................................................... 13, 14

*Cleavinger v. Saxner,*
    474 U.S. 193 (1985)................................................................................. 20

*Correctional Services Corp. v. Malesko,*
    534 U.S. 61 (2001)..................................................................................... 2

*Corsi v. Mueller,*
    422 F. Supp.3d 51 (D.D.C. 2019) ..................................................... 23

*Davis v. Passman,*
    442 U.S. 228 (1979)................................................................... 10, 12, 19

*Dellenbach v. Letsinger,*
    889 F.2d 755 (7th Cir. 1989) ............................................................. 21

*Dennis v. Sparks,*
    449 U.S. 24 (1980)................................................................................. 20

*Doe v. Meron,*
    929 F.3d 153 (4th Cir. 2019) ............................................................. 12

*Dotson v. Griesa,*
    398 F.3d 156 (2d. Cir. 2005)................................................... passim

*Drone v. Duff*,
　2017 WL 6383607 (E.D. Va. 2017)............................................................... 18
*FDIC v. Meyer*,
　510 U.S. 471 (1994)........................................................................................ 13
*Feit v. Ward*,
　886 F.2d 848 (7th Cir. 1989) ........................................................................... 2
*Forrester v. White*,
　484 U.S. 219 (1988)................................................................................... 21, 22
*Frank v. Relin*,
　1 F.3d 1317 (2d Cir. 1993)................................................................................ 1
*Gleason v. Malcom*,
　718 F.2d 1044 (11th Cir. 1983) ..................................................................... 18
*Gooden v. Howard County*,
　954 F.2d 960 (4th Cir. 1992) ......................................................................... 25
*Grieveson v. Anderson*,
　538 F.3d 763 (7th Cir. 2008) ......................................................................... 24
*Hall v. Clinton*,
　235 F.3d 202 (4th Cir. 2000) ............................................................. 14, 18, 25
*Harlow v. Fitzgerald*,
　457 U.S. 800 (1982)........................................................................................ 22
*In re Golinski*,
　587 F.3d 956 (9th Cir. 2009) ........................................................... 7, 8, 15, 16
*Jeffrey M. Brown Assoc., Inc. v. Rockville Center, Inc.*,
　7 Fed. App'x. 197 (4th Cir. 2001) .................................................................... 4
*Kirby v. City of Elizabeth City*,
　388 F.3d 440 (4th Cir. 2006) ............................................................................ 1
*Lee v. Hughes*,
　145 F.3d 1272 (11th Cir. 1998) ..................................................................... 15
*Lehman v. Morrissey*,
　779 F.2d 526 (9th Cir. 1985) ........................................................................... 6
*Marcilis v. Township of Redford*,
　693 F.3d 589 (6th Cir. 2012) ......................................................................... 24
*Matthews v. Bergdorf*,
　889 F.3d 1136 (10th Cir. 2018) ..................................................................... 24
*McCray v. State of Maryland*,
　456 F.2d 1 (4th Cir. 1972) ............................................................................. 20
*Migdal v. Rowe Price-Fleming Int'l*,
　248 F.3d 321 (4th Cir. 2001) ........................................................................... 9
*Mireles v. Waco*,
　502 U.S. 9 (1991)..................................................................................... 20, 21
*Mirmehdi v. United States*,
　689 F.3d 975 (9th Cir. 2012) ......................................................................... 19
*Pahls v. Thomas*,
　718 F.3d 1210 (10th Cir. 2013) ..................................................................... 24
*Pearson v. Callahan*,
　555 U.S. 223 (2009)........................................................................................ 22

iv

*Philips v. Pitt Cty Mem'l. Hosp.,*
  572 F.3d 176 (4th Cir. 2009) ............................................................................................ 4

*Pierson v. Ray,*
  386 U.S. 547 (1967) .......................................................................................................... 20

*Pinar v. Dole,*
  747 F.2d 899 (4th Cir. 1984) ............................................................................................ 14

*Pink v. Lester,*
  52 F.3d 73 (4th Cir. 1995) ................................................................................................ 20

*Ridpath v. Board of Governors Marshall Univ.,*
  447 F.3d 292 (4th Cir. 2006) ............................................................................................ 23

*Robbins v. Oklahoma,*
  519 F.3d 1242 (10th Cir. 2008) ........................................................................................ 24

*Ryan v. McAleenan,*
  No. CV ELH-19-1968, 2020 WL 1663172 (D. Md. Apr. 3, 2020) ....................................... 4, 5

*Semper v. Gomez,*
  747 F.3d 229 (3d Cir. 2014) ...................................................................................... passim

*Simmons v. Poe,*
  47 F.3d 1370 (4th Cir. 1995) ............................................................................................ 24

*Stump v. Sparkman,*
  435 U.S. 349 (1978) .......................................................................................................... 21

*Trerice v. Summons,*
  755 F.2d 1081 (4th Cir. 1985) .......................................................................................... 25

*Tun-Cos v. Perrotte,*
  922 F.3d 514 (4th Cir. 2019) ............................................................................................ 10

*United States v. Fausto,*
  484 U.S. 439 (1988) ............................................................................................................ 6

*Vanderklok v. United States,*
  868 F.3d 189 (3d Cir. 2017) ............................................................................................. 11

*Vega v. United States,*
  881 F.3d 1146 (9th Cir. 2018) .......................................................................................... 18

*White v. Pauly,*
  137 S. Ct. 548 (2017) ........................................................................................................ 25

*Wilkie v. Robbins,*
  551 U.S. 537 (2007) .................................................................................................. passim

*Young v. City of Mount Ranier,*
  238 F.3d 567 (4th Cir. 2001) .............................................................................................. 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.,*
  780 F.3d 597 (4th Cir. 2015) .............................................................................................. 1

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017) .............................................................................................. passim

*Zimbelman v. Savage,*
  228 F.3d 367 (4th Cir. 2000) ............................................................................................ 14

v

**STATUTES**

2 U.S.C. § 1434.................................................................................................................... 15
5 U.S.C. § 55...................................................................................................................... 13
5 U.S.C. § 63...................................................................................................................... 13
5 U.S.C. § 1101.................................................................................................................. 12
5 U.S.C. § 8331.................................................................................................................. 13
5 U.S.C. § 8901.................................................................................................................. 13
5 U.S.C. §§ 2302................................................................................................................ 14
28 U.S.C. § 332(e).............................................................................................................. 36
42 U.S.C. § 1985(3)............................................................................................... ii, 2, 51
42 U.S.C. § 1986............................................................................................................ 2, 52
Pub. L. No. 104-1............................................................................................................... 14

# I. INTRODUCTION

This case arises out of an employment discrimination request for counseling filed by Plaintiff, Jane Roe ("Plaintiff"), a former assistant federal public defender ("AFPD") in the Federal Public Defender's Office for the Western District of North Carolina ("FPD-WDNC"), under the Consolidated Equal Employment Opportunity and Employment Dispute Resolution (EDR) Plan of the United States Court of Appeals for the Fourth Circuit (Nov. 2018)[1] (EDR Plan or Plan). Pursuant to the Plan, Plaintiff participated in mediation, obtained a Fourth Circuit clerkship, withdrew her request for counseling, and resigned. In accordance with his obligations under the Plan, Chief Judge Roger L. Gregory, United States Court of Appeals for the Fourth Circuit, ordered an investigation, and following the investigation took disciplinary action.

Plaintiff now sues Chief Judge Gregory and eleven other federal defendants alleging under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), a due process violation under the Fifth Amendment (First Claim for Relief), an equal protection violation under the Fifth Amendment (Second Claim for Relief), a conspiracy to violate her constitutional rights under 42 U.S.C. § 1985(3) (Third Claim for Relief), and an action for neglect to prevent a conspiracy to violate her constitutional rights under 42 U.S.C. § 1986 (Fourth Claim for Relief). Plaintiff sues Chief Judge Gregory in his official and individual capacities.[2]

---

[1] The Plan, which is referred to throughout the Complaint, is attached as Exhibit A, and is a publicly-available document at https://www.ca4.uscourts.gov/docs/pdfs/equal-employment-opportunity-and-employment-dispute-resolution-plan.pdf?sfvrsn=0&sfvrsn=0. The Court may take judicial notice of this document. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). The 2018 Plan superseded the 2013 Plan, but did not change the pertinent portions of the Plan. Subsequently, the 2019 Plan was adopted.

[2] To the extent the Complaint could be construed to seek equitable relief from Chief Judge Gregory in his individual capacity, such relief is not available. *Kirby v. City of Elizabeth City*, 388 F.3d 440, 452 n.10 (4th Cir. 2006) ("injunctive relief could only be awarded against the officers in their official capacities"), *cert. denied*, 547 U.S. 1187 (2006); *e.g.*, *Frank v. Relin*, 1

The Court should reject Plaintiff's claims in full. This personal-capacity *Bivens* lawsuit against Chief Judge Gregory is not a "proper vehicle" for challenging Chief Judge Gregory's obligations under the Plan, his decisions under the Plan, and the policies underlying the Plan itself. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (the purpose of *Bivens* is to deter a federal officer, not challenge an entity's policies); *see Bush v. Lucas*, 462 U.S. 367, 378-80 (1983) (federal employment constitutes a "special factor" warranting refusal to imply a *Bivens* claim). First, Plaintiff's *Bivens* claims present a "new context" never previously recognized by the Supreme Court. *See Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Second, special factors, including the federal employment relationship, judicial independence, and judicial policies, counsel hesitation in implying a *Bivens cause of action*. *Id.* at 1857-58. Indeed, because the Plan provided Plaintiff an alternative process for addressing her claims, "that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action" because "'any alternative, existing process for protecting the [injured party's] interest' . . . itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Finally, absolute and qualified immunity bar the claims against Chief Judge Gregory.

## II. FACTUAL BACKGROUND

### A.    <u>Plaintiff complains about the First Assistant to the Federal Public Defender.</u>

Plaintiff alleges that while an AFPD, she complained to the Federal Public Defender (Defender) that the First Assistant sexually harassed her, discriminated against her based on her

---

F.3d 1317, 1327 (2d Cir. 1993) ("equitable relief" available from defendant "only in his official, not his individual capacity"); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (Equitable relief "can be obtained only from the defendants in their official capacities."). The Plaintiff's request for equitable relief will be addressed in the brief of the United States and is barred by sovereign immunity.

2

gender, and retaliated against her. *See* Compl., ¶¶ 65-66, 69, 72-76. On August 10, 2018, Plaintiff emailed the Defender regarding the First Assistant's alleged sexual harassment. *Id.*, ¶ 211. She alleges that the Defender mishandled her complaints and retaliated against her. *See Id.,* ¶¶ 65-69, 72-76.

**B.     The Fourth Circuit initiates an investigation.**

Based on Plaintiff's August 10, 2018 e-mail, the Defender notified the Circuit Executive, who notified Chief Judge Gregory, who ordered an investigation. *Id.*, ¶¶ 217, 257-58, 451, 484. On September 10, 2018, Plaintiff filed a request for counseling under Chapter X of the Plan and a report of wrongful conduct under Chapter IX of the Plan,[3] naming both the First Assistant and Defender as violators of the Plan. *Id.*, ¶ 274. In a separate filing, Plaintiff requested disqualification of the Defender. *Id.*, ¶ 276. On September 28, 2018, the Circuit Executive confirmed to Plaintiff that there would be one unified investigation covering Plaintiff's Chapter IX report of wrongful conduct and Chapter X request for counseling. *Id.,* ¶¶ 299, 325.

**C.     Plaintiff requests mediation.**

On January 30, 2019, Plaintiff requested mediation under the Plan. *Id.*, ¶¶ 411-17. On February 7, 2019, Plaintiff met with the Mediator and requested a duty station transfer. *Id.*, ¶ 411. On February 26, 2019, Plaintiff again met with the Mediator, who reported that Plaintiff could not transfer to an adjacent federal defender office because that office did not have an opening. *Id.*, ¶ 454. The Mediator offered to help Plaintiff secure a Fourth Circuit clerkship, and after the meeting the Mediator went to Richmond, Virginia, to advocate in person on Plaintiff's behalf for a

---

[3] "A report of wrongful conduct is not the same as initiating or filing a claim under this Plan; thus, employees who wish to file an EDR claim relating to any alleged wrongful conduct . . . must follow the procedures set forth in Chapter X of the Plan." Plan, Chapter IX, p. 7. An employee can only obtain relief under Chapter X. *See* Plan, Chapter X, § 1. The Chief Judge or unit executive imposes discipline under Chapter IX. *See* Plan, Chapter IX, p. 7.

3

clerkship. *Id.*, ¶¶ 456-57. Later that week, the Mediator told Plaintiff that a Fourth Circuit judge had an available term clerkship position, and wanted to interview Plaintiff. *Id.*, ¶ 458.

**D.**     **The mediation results in Plaintiff obtaining a Fourth Circuit clerkship, and she withdraws her Chapter X claim.**

On March 8, 2019, Plaintiff interviewed with the Fourth Circuit Judge, who offered her a clerkship, which Plaintiff accepted as a "negotiate[ed] . . . resolution" of her Chapter X claim. *Id.*, ¶¶ 7, 459. On March 11, 2019, Plaintiff sent an email[4] to the Circuit Executive withdrawing her Chapter X claim.



---

[4] This email, while not cited in the Complaint, is properly considered on a motion to dismiss pursuant to Rule 12(b)(6) because it is integral to the Complaint. *Philips v. Pitt Cty Mem'l. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). *Jeffrey M. Brown Assoc., Inc. v. Rockville Center, Inc.*, 7 Fed. App'x. 197, 203 (4th Cir. 2001) (considering documents referenced in a complaint in order to "further the policy of '[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting … documents upon which their claims are based.'"). This is especially appropriate here, where Plaintiff challenges the validity of the administrative process, yet omits mentioning the email in which she withdrew her administrative claim. *See, e.g., Ryan v. McAleenan*, No. CV-ELH-19-1968, 2020 WL 1663172, at \*10 (D. Md. Apr. 3, 2020) (considering emails and other documentation from administrative process attached to a motion to dismiss in a Title VII case).

On March 15, 2019, Plaintiff voluntarily resigned from the FDO-WDNC.  Compl., ¶ 464.

**E.      Chief Judge Gregory takes disciplinary action.**

Following the investigation, Chief Judge Gregory took disciplinary action.  *Id*., ¶¶ 483-84.

## III.  PROCEDURAL BACKGROUND

**A.      Administrative Process**

On September 10, 2018, Plaintiff filed a request for counseling under Chapter X of the Plan and a report of wrongful conduct under Chapter IX of the Plan.  *Id*., ¶¶ 274-76.  On March 11, 2019, Plaintiff withdrew her Chapter X claim based on sexual harassment, discrimination, and retaliation.  Plaintiff did not file a complaint under § 10(A), request a hearing under § 10(B), or request review by the Circuit Council under§ 11(F) of Chapter X of the Plan.  In May 2019, Chief Judge Gregory took disciplinary action at the conclusion of the investigation in the Chapter IX proceeding.  *Id*., ¶¶ 483-84.

**B.      This Lawsuit**

Plaintiff now sues Chief Judge Gregory in his individual capacity, seeking monetary damages and alleging that Chief Judge Gregory was responsible for "duties under the EDR Plan used to process Plaintiff's complaints of sexual harassment, retaliation, and gender discrimination." Compl. ¶ 32.[5]  She asserts four causes of action.  While styled as claims against Chief Judge Gregory in his individual capacity, each claim seeks recovery from Chief Judge Gregory's personal assets for actions he took as Chief Judge.

---

[5]  Plaintiff's Complaint names Chief Judge Gregory in 17 out of 505 paragraphs,  alleging that Chief Judge Gregory was responsible for duties under the EDR Plan, Compl., ¶ 32;  that he was copied on e-mail communications,  *id*., ¶¶ 287, 322, 325, 330, or otherwise provided information, *id*. ¶¶ 217, 451; that he decided Plaintiff's extension request, *id*., ¶¶ 285, 287, 388, and disqualification request, *id*., ¶¶ 285, 453; that he directed assistance regarding Plaintiff's transfer request, *id*., ¶ 410; and he ordered an  investigation and took disciplinary action,"  *id*., ¶ 484.

5

# IV. STATUTORY AND ADMINISTRATIVE FRAMEWORK

## A.    <u>Federal Employment</u>

Congress enacted the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq.*,
to replace a "patchwork system" of federal personnel law "with an integrated scheme of
administrative and judicial review, designed to balance the legitimate interests of the various
categories of federal employees with the needs of sound and efficient administration." *United
States v. Fausto,* 484 U.S. 439, 445 (1988).   The CSRA personnel system provides a
"comprehensive" scheme of protections and remedies for federal employment disputes, *id.*, at 448,
and "prescribes in great detail the protections and remedies applicable . . . including the availability
of . . . judicial review." *Id.*, at 443.   Because of its comprehensive nature, courts have held that
"Congress meant to limit the remedies of federal employees bringing claims closely intertwined
with their conditions of employment to those remedies provided in the [CSRA]." *Lehman v.
Morrissey,* 779 F.2d 526, 527-28 (9th Cir. 1985).

Judicial Branch employees are federal "employees" under Title 5, Section 2105, of the
United States Code.   Indeed, most Judicial Branch employees, including all Federal Public
Defender Office employees, are covered by many parts of Title 5 of the United States Code,
conferring rights and benefits to federal employees such as back pay, severance pay, family and
medical leave, and health and retirement benefits.[6]   However, Congress intentionally omitted
Judicial Branch employees and Legislative Branch employees from the CSRA's specific

---

[6]   *See generally* 5 U.S.C. § 55 (providing severance pay, separation pay, and back pay for
employees); 5 U.S.C. § 63, Subchapter I (applying annual and sick leave provisions for most
judiciary employees); 5 U.S.C. § 63, Subchapter III (applying family and medical leave provisions
to certain judiciary employees); 5 U.S.C. § 8901 (including certain judiciary employees for health
insurance coverage under Chapter 89 of Title 5 of the United States Code); 5 U.S.C. § 8331
(including certain judiciary employees for retirement benefits).

6

procedures and remedies afforded by expressly classifying such employees as "excepted service" personnel under various provisions of the CSRA. *See generally* 5 U.S.C. §§ 2302, 4301, 7511; *see also Semper v. Gomez*, 747 F.3d 229, 240 (3d Cir. 2014). Thus, Judicial Branch employees have long been covered by a distinct and comprehensive set of administrative procedures and remedies for personnel matters, including employee discrimination, harassment and retaliation claims. Soon after Congress's enactment of the CSRA, the Judicial Conference developed a Model Equal Employment Opportunity Plan in 1980, and revised it in 1986 (Model Plan). Every federal court has adopted the Model Plan in its entirety or with some procedural modifications.

Congress has long been aware of the Judicial Conference Model Plan, and elected not to subject Judicial Branch employees to the CSRA. Thus, when Congress enacted the Congressional Accountability Act of 1995 (CAA), Pub. L. No. 104-1, 109 Stat. 3, "'Congress initially considered extending the [CAA's] coverage to employees of the judicial branch but mindful of judicial autonomy, ultimately decided against such action.'" *In re Golinski*, 587 F.3d 956, 962-63 (9th Cir. 2009) (Kozinski, C.J.) (quoting *Dotson v. Griesa,* 398 F.3d 156, 173 (2d. Cir. 2005)).

Rather, in enacting the CAA, Congress required the Judicial Conference to submit a report to Congress on the application to the Judicial Branch of the federal labor laws extended to Congress by the CAA, and any need for legislation to afford Judicial Branch employees rights, protections, and procedures, "including administrative and judicial relief," that are comparable to those available to Legislative Branch employees. 2 U.S.C. § 1434. In response, the Judicial Conference emphasized that "[f]rom the beginning of the federal court system, the hallmarks of judicial branch governance have been local court management and individual judge autonomy, coupled with mechanisms for ensuring accountability and effective use of resources." *Dotson,* 398 F.3d at 175 (internal citation omitted). For this reason, the "judiciary's internal governance system is a

7

necessary corollary to judicial independence." *Id.* The Judicial Conference thereafter adopted a new Model Employment Dispute Resolution Plan in 1997 (1997 Model EDR Plan). *In re Golinski*, 587 F.2d at 963. The new Model EDR Plan established enhanced review procedures similar to the structure Congress created in the CAA. "Congress has determined that the Judiciary's EDR tribunals are the only forum where judicial employees may seek redress for unlawful personnel actions." *Id.* at 961.

**B.** **Fourth Circuit Employee Dispute Resolution (EDR) Plan**

Like the 1997 Model EDR Plan, the Fourth Circuit's Plan, that was in place at the time of the events giving rise to this claim, prohibited discrimination against employees based on race, color, religion, sex, national origin, and disability, harassment, and retaliation. Plan at Ch. X, § 1. The Plan established review procedures similar to the structure Congress created in the CAA. The Plan required mandatory counseling and mediation, *id.*, §§ 8-9, and, upon expiration of the mediation period, afforded an employee the right to file a formal written complaint. *Id.,* § 10. The Chief Judge was responsible for determining if the complaint stated a claim upon which relief could be granted, *id.,* § 10(A)-(B), and, if so, the Chief Judge or other designated judicial officer was required to hold a hearing on the merits within sixty days of the filing of the complaint. *Id.,* § 10(B)(2). The presiding judicial officer could allow discovery and investigation, *id.,* § 10(B)(2); the employee had the right to present evidence and to cross-examine witnesses, *id.,* § 10(B)(2)(c); and the judicial officer could award broad equitable relief, including back pay.[7] *Id.,* § 10(B)(2)(f) & § 12. If an employee was still dissatisfied, the employee could appeal under the procedures established by the judicial council of the circuit. *Id.,* § 11. Under the Plan, "[d]ecisions of the

---

[7] *See In re Golinski*, 587 F.3d at 961 (in a proceeding under the 9th Circuit's EDR Plan, the Chief Judge observes: "Our EDR tribunals . . . have the authority to grant full relief . . . .").

Judicial Council are final and conclusive and shall not be judicially reviewable on appeal or otherwise." Id., Ch. 10, § 12.

## V. ARGUMENT

### A. LEGAL STANDARD

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). To assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Iqbal,* 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)).

### B. THE JUDICIALLY IMPLIED *BIVENS* REMEDY SHOULD NOT BE EXTENDED TO THIS NEW CONTEXT BECAUSE PLAINTIFF'S NOVEL CLAIMS PRESENT A "NEW BIVENS CONTEXT AND SPECIAL FACTORS COUNSEL HESITATION.

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court explained that jurisprudence regarding the implication of private rights of action has fundamentally changed since the Court first recognized a private cause of action for a Fourth Amendment violation in *Bivens*, 403 U.S. 388. The Court noted that, when *Bivens* was decided, it regularly found implied causes of action not explicit in statutory text; by contrast, its subsequent decisions have concluded that if a statute itself does not display an intent to create a private remedy, "a private cause of action will not be created through judicial mandate." *Abbasi*, 137 S. Ct. at 1855-56. This "caution as to implied

9

causes of actions under congressional statutes led to similar caution with respect to actions in the *Bivens* context, where the action is implied to enforce the Constitution itself." *Id.* at 1856. Indeed, the Court has recognized an implied constitutional damages remedy only twice since *Bivens* itself, in *Davis v. Passman*, 442 U.S. 228 (1979) (gender discrimination in violation of Fifth Amendment's Due Process Clause), and in *Carlson v. Green*, 446 U.S. 14 (1980) (failure to provide medical treatment to prisoner in violation of the Eighth Amendment).

The Supreme Court made clear in *Abbasi* "that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," and emphasized that it has "consistently refused to extend *Bivens* to any new context or new category of defendants" for the past 30 years. 137 S. Ct. at 1857 (citing cases); *Tun-Cos v. Perrotte*, 922 F.3d 514, 521 (4th Cir. 2019) (in *Abbasi*, the Supreme Court expressed "open hostility to expanding *Bivens* liability"). Strikingly, although the Court did not overrule *Bivens*, it observed that "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 1856.

The Court's reluctance to extend *Bivens* is rooted in separation-of-powers principles. *Abbasi*, 137 S. Ct. at 1856-57. *Abbasi* explained that it is a "significant step under separation-of-powers principles for a court to determine that it has the authority . . . to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* at 1856. When a party seeks to assert a *Bivens* remedy, "[t]he question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1857. The answer, the Court observed, "most often will be Congress," because Congress is better suited to consider the costs and benefits of recognizing a damages remedy. *Id.* at 1857-58. Accordingly, a *Bivens* remedy is not available in any "new context" when there are "special factors counselling hesitation

in the absence of affirmative action by Congress." *Id.* at 1857. Relatedly, if there is an "'alternative, existing process for protecting the [injured party's] interest,'" that process "itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (alterations in original) (quoting *Wilkie*, 551 U.S. at 550). Under this guidance, Plaintiff's *Bivens* claim fails.

### 1. Plaintiff's novel claims present a "new *Bivens* context."

A case presents a "new context" if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court" (*i.e.*, *Bivens*, *Davis*, and *Carlson*). *Abbasi*, 137 S. Ct. at 1859-60. Courts must decide whether a *Bivens* claim arises in a "new context" solely by reference to the Supreme Court's own decisions implying private rights of action. *Abbasi*, 137 S. Ct. at 1860.[8] *Abbasi* provides "some examples" of "differences that are meaningful enough to make a given context a new one," such as "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action . . . the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1864 (explaining that "even a modest extension is still an extension"). If the asserted cause of action arises in a new context, courts must then consider whether "special factors counsel[] hesitation" before finding an implied cause of action "in the absence of affirmative action by Congress." *Id.* at 1857.

Here, Plaintiff's case differs in several "meaningful ways" from previous *Bivens* cases decided by [the Supreme] Court. *Abbasi*, 137 S. Ct. at 1859-60. First, this case involves a claim against the Chief Judge of the Fourth Circuit. *Id.* at 1864 (observing that "meaningful differences"

---

[8] Under *Abbasi*, any "past pronouncements" from lower courts recognizing *Bivens* claims not explicitly authorized in those three cases "are . . . not controlling," regardless of jurisdiction. *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017).

include "the rank of the officers involved"); *Atkinson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) (finding meaningful difference where Attorney General Holder "held much higher rank[]than the line-level FBI agents sued in *Bivens*."). Second, this case is not similar to *Davis v. Passman* because that case dealt with a very specific action, the firing of a staff member explicitly because of gender. *See Davis,* 442 U.S. at 230 (the defendant fired the female assistant after concluding "that it was essential the understudy to my Administrative Assistant be a man."); *Doe v. Meron*, 929 F.3d 153, 159 (4th Cir. 2019) (finding meaningful differences because of multiple allegations of violations of the Fifth Amendment's Due Process Clause and different legal mandates the officers were operating under). Plaintiff's allegations of gender discrimination are more general. She does not allege that Chief Judge Gregory himself took any specific employment action against her but merely implies that things would have been different if she were a man. *See, e.g.,* Compl. ¶ 102. *See Abbasi* at 1864 (observing that "meaningful differences" include the generality or specificity of the official action). Third, *Davis* dealt with congressional employment practices, whereas Plaintiff's allegations deal with federal judiciary policies underlying the Plan that implicate special considerations that could disrupt judicial operations and undercut judicial autonomy. *Id*. at 1864 (observing that "meaningful differences" include the risk of disruptive effects); *Atkinson*, 925 F.3d at 621 (finding meaningful difference where "plaintiffs seek to hold high-level officials accountable for what they . . . frame as policy-level decisions"). Additionally, in *Davis*, an alternative process did not exist, whereas, as explained below, in this case, the Plan provided Plaintiff an existing process for protecting her interests.

Thus, Plaintiff's proposed constitutional claims "bear little resemblance" to those previously recognized by the Supreme Court. *See id.* at 1860, 1865 (even where "[t]he differences between a claim and the one in *Carlson* are perhaps small . . . " "the new-context

inquiry is easily satisfied."). The Supreme Court has never recognized a Due Process or Equal Protection Claim against a member of the federal judiciary. Insofar as it has considered implying federal employment claims, it has decided *against* doing so. *See Bush*, 462 U.S. at 367, 390 (denying *Bivens* claim for allegedly retaliatory personnel action against federal worker); *see also Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (denying sailors' *Bivens* claim alleging racial discrimination by military officers); *see also FDIC v. Meyer*, 510 U.S. 471, 473 (1994) (rejecting *Bivens* claim against agency in a procedural due process suit against a federal agency for wrongful termination).

In addition, Plaintiff's theories of vicarious and collective liability have no analog in the Supreme Court's core *Bivens* jurisprudence. The Supreme Court in *Bivens, Davis, and Carlson* did not embrace Plaintiff's brand of "conspiracy" liability. In fact, the Supreme Court has never permitted a *Bivens* remedy for a standalone "conspiracy" claim, or to vindicate an AFPD's claim of constructive discharge. Additionally, the Supreme Court has never recognized any constitutional impediments under a *Bivens* analysis to a Circuit Court Chief Judge supervising judicial branch personnel practices or taking disciplinary action. This most certainly constitutes a new *Bivens* context.

### 2. Special factors counsel against implying a *Bivens* cause of action.

The special-factors inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58. "The only relevant threshold — that a factor 'counsels hesitation'— is remarkably low . . . . 'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider." *Arar v. Ashcroft*, 585 F.3d 559, 573-74 (2d Cir. 2009). "[I]f there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the

13

courts must refrain from creating the remedy[.]" *Abbasi*, 137 S. Ct. at 1858 (emphasis added). This case implicates special factors that, "[t]aken together," "dictate that it would be inappropriate" to imply the remedies Plaintiff proposes. *Chappell*, 462 U.S. at 304.

           *a.*    *Federal employment counsels hesitation.*

"In *Bush*, the Supreme Court determined that federal employment constituted a 'special factor' warranting refusal to recognize a First Amendment *Bivens* claim asserted by a federal employee." *Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000), *cert. denied*, 121 S. Ct. 1656 (2001); *Zimbelman v. Savage*, 228 F.3d 367, 370-71 (4th Cir. 2000) (rejecting *Bivens* action by civilian Air Force employee as barred by CSRA). "Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of federal employment." *Hall*, 235 F.3d at 205; *Pinar v. Dole*, 747 F.2d 899, 910-12 (4th Cir. 1984) (Congress intended CSRA to be exclusive; rejecting federal employee's *Bivens* challenge to personnel actions taken against him). "Congress's omission of review rights [under the CSRA] for judicial branch employees was not inadvertent and, therefore, preclude[s] pursuit of a *Bivens* claim." *Dotson*, 398 F.3d at 169 (rejecting probation officer's *Bivens* claim for racial discrimination); *Semper*, 747 F.3d at 237 (in rejecting probation officer's *Bivens* claim, "it is undisputed that the CSRA precludes current or former federal employees from bringing a *Bivens* damages action for alleged constitutional violations arising out of the employment context"); *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999) (denying federal court reporter's *Bivens* action holding "that the CSRA precludes a *Bivens* remedy in this case"); *Lee v. Hughes*, 145 F.3d 1272, 1276 (11th Cir. 1998) (CSRA precludes probation officer's *Bivens* claim); *see In re Golinski*, 587 F.3d at 961 ("Congress has decided that the Judiciary's EDR tribunals are the only forum where judicial employees may seek redress for unlawful personnel actions. . . . [Federal judicial] employees "can't appeal to the MSPB, they have no *Bivens* action and they

aren't provided remedies by the Civil Service Reform Act . . . .").

"[T]he Second, Ninth, and Eleventh Circuits have concluded that current or former employees of the Judicial Branch -- who otherwise have no right to administrative or judicial review under the CSRA itself -- could not bring damages claims pursuant to the *Bivens* doctrine." *Semper*, 747 F.3d at 237; *Dotson*, 388 F.3d at 159-83; *Blankenship*, 176 F.3d at 1194-96; *Lee*, 145 F.3d at 1273-77; *see In re Golinski*, 587 F.3d at 961 (Judicial employees "have no *Bivens* action and they aren't provided remedies by the Civil Service Reform Act . . . ."). This Court should join the ranks of courts that have declined to imply *Bivens* remedies for novel claims in the federal employment context.

### b. *Judicial independence counsels hesitation.*

The Federal Judiciary has long taken the position that the judicial branch must have control over its employee and workplace management in order to ensure both the independence, and the appearance of independence, of its decisions. *Dotson*, 388 F.3d at 175. The "judiciary's internal governance system is a necessary corollary to judicial independence." *Id.* (internal citations omitted). "Congress has indicated on a number of occasions that employment disputes with the Judicial Branch implicate a special set of circumstances, including the doctrine of separation of powers and the protection of the independent judiciary." *Semper,* 747 F.3d at 240. Congressional action in withholding CSRA review rights from judicial branch employees was not inadvertent, *Dotson*, 398 F.3d at 169, and, in fact, the CSRA's history evidences Congress's deliberate decision to exclude judicial branch employees from the CSRA's review process, *Dotson*, F.3d at 170; *In Re Golinski*, 587 F.3d at 962 ("History reveals that Congress intended the Judiciary to have . . . the ability to manage its own personnel and adjudicate workplace complaints.").

"Congress initially considered extending the [CAA's] coverage to employees of the

judicial branch but, mindful of the importance of judicial autonomy, ultimately decided against such action." *Dotson*, 398 F.3d at 173. "The Judicial Conference of the United States submitted [a] report in 1996, telling Congress: 'The judicial branch is committed to providing the general protections of the CAA laws in a manner that preserves judicial independence and the decentralized administration of the federal courts.'" *In Re Golinski*, 587 F.3d at 962 (quoting Judicial Conference of the United States, Study of Judicial Branch Coverage Pursuant to the Congressional Accountability Act of 1995 (Study) 2-3 (1996)). "As part of that commitment, the Judicial Conference reported that it was developing 'a plan to provide the rights, protections, and remedies similar to the CAA.'" *In re Golinski*, 587 F.3d at 963 (quoting Study at 15). That Plan became the Model EDR Plan, which the Fourth Circuit adopted. Congress, aware of the Judiciary's use of EDR Plans, has not taken further action to bring judiciary employees within a statutory scheme, but instead has allowed the judiciary to implement EDR plans. Congressional action and inaction in this area recognize the importance of separation of powers concerns in ensuring the independence of the federal judiciary, counsel hesitation, and constitute a "special factor" precluding implication of a *Bivens* action. *Id.* at 171.

<blockquote>

c.     *Judicial Council of the Fourth Circuit and Judicial Conference of the United States policies counsel hesitation.*

</blockquote>

Plaintiff's claims attack the Judicial Council for the Fourth Circuit's employment dispute resolution (EDR) policies as embodied in the Plan. Plaintiff asks this Court to recognize an alternative process, when the Plan already provides a process, because she does not agree with the Fourth Circuit's policies and procedures. Plaintiff's claims boil down to a former judiciary employee's dissatisfaction with the Plan's administrative process for addressing alleged personnel claims of harassment, discrimination, and retaliation. However, as noted in *Abbasi*, a *Bivens* action is not the proper vehicle for altering an entity's policy. *Abbasi*, 137 S. Ct. at 1860. Plaintiff's

16

*Bivens* cause of action is a thinly-veiled attempt to attack the Fourth Circuit's EDR policies, *see* Compl. ¶¶ 465-70, as reflected in the Fourth Circuit's Plan. Notably, Plaintiff's claim is predicated on her contention that the 2019 Model EDR Plan "did not address the problems" with the prior Model EDR Plan. *See* Compl. at ¶¶ 465-470. But Plaintiff's subjective views of what would be the Circuit's best policy, as reflected in the Plan, do not create a *Bivens* cause of action.

Congress has granted the circuit councils broad authority to develop policies and procedures to administer the circuit's personnel system through the circuit executive "subject to the general supervision of the chief judge of the circuit." 28 U.S.C. § 332(e). Plaintiff seeks through this *Bivens* action to encourage this Court to override the policy-making roles of the Judicial Conference of the United States and the Judicial Council for the Fourth Circuit, and undermine Chief Judge Gregory's statutory authority. Allowing Plaintiff's *Bivens* cause of action would require the Court to assess the quality and appropriateness of the policies underlying the Plan – policies promulgated by the Judicial Council for the Fourth Circuit. Consequently, Plaintiff's *Bivens* action "would call into question the formulation and implementation of a high-level policy," *Abbasi*, 137 S. Ct. at 1860, and counsels hesitation against recognizing a *Bivens* claim.

> d. *The Fourth Circuit's Plan provides an alternative, existing process precluding a Bivens cause of action.*

*Any* sort of "alternative, existing process" may "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858, 1876 (quoting *Wilkie* 551 U.S. at 550). This includes "administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). The Fourth Circuit's Plan provides an alternative process for Plaintiff's claims. *See Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a *Bivens*

cause of action").

Plaintiff's actions demonstrate the availability of an alternative, existing process, which resulted in Plaintiff obtaining a Fourth Circuit clerkship. Under the Plan, instead of withdrawing her Chapter X claim, Plaintiff, after mediation, could have requested a hearing before the Chief Judge and sought review of the hearing decision under procedures established by the Judicial Council of the Circuit. Plan, Ch. X, § 1(B)–(C). This is precisely the type of alternative, administrative process that precludes a *Bivens* claim. "'The purpose of denying a [*Bivens*] private cause of action to federal employees is to ensure that they do not bypass comprehensive and carefully-balanced statutory and administrative remedies in order to seek direct judicial relief.'" *Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000) (quoting *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983)). And this is especially true where Plaintiff did not exhaust her remedies under the Plan, and voluntarily withdrew her claim after obtaining an appellate clerkship. *See Drone v. Duff*, 2017 WL 6383607 (E.D. Va. 2017) (federal district court's EDR Plan provided meaningful review by judicial officers).

Plaintiff's decision not to pursue the full alternative process under the Plan provides an additional basis for dismissal since a plaintiff who fails to pursue relief under available administrative remedies cannot bring a *Bivens* due process challenge "if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate." *Dotson*, 398 F.3d at 161, n.2 (refusing to imply *Bivens* cause of action for probation officer who alleged he was terminated based on racial discrimination and denial of due process). *Bivens* was never intended to be a "vehicle" where plaintiffs could pick and choose which part of the alternative process that would benefit them and complain of other parts as being inadequate in a *Bivens* lawsuit. *Cf. Mirmehdi v.*

18

*United States*, 689 F.3d 975, 982 (9th Cir. 2012) (declining to imply a *Bivens* remedy when plaintiffs had sought alternative relief "through not one but two different remedial systems").

The Plan's comprehensive process further distinguishes this case from *Davis*, where the Supreme Court emphasized "[f]or Davis, as for Bivens, 'it is damages or nothing.'" *Davis*, 442 U.S. at 245 (quoting *Bivens,* 403 U.S. at 410 (Harlan, J. concurring in judgment)). Unlike *Davis,* this is a case in which "an alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S.Ct. at 1858; *see Semper,* 747 F.3d at 242 (in case involving a probation officer holding that "the CSRA precludes a federal employee from litigating constitutional claims for equitable and declaratory relief in a § 1331 action where the employee could pursue meaningful relief under a remedial plan that provides for meaningful review of his or her claims by judicial officers."). At the end of mediation, if Plaintiff had elected to file a formal complaint under § 10 of the Plan, she would have been afforded a hearing, with the right to present evidence, cross-examine adverse witnesses, and if she disagreed with the Chief Judge's decision, to seek review under § 10 of the EDR Plan from the Judicial Council of the Circuit. Under the Plan, the Chief Judge could have "order[ed] a necessary and appropriate remedy," which could include placement in a comparable alternative position, prospective promotion, back pay and associated benefits, records modification, and equitable relief. See Plan, Chapter X, § 12. Plaintiff chose to withdraw her claim, and she cannot now complain about the inadequacy of the administrative process.

## C.   ABSOLUTE AND QUALIFIED IMMUNITY BAR PLAINTIFF'S LAWSUIT

Even if Plaintiff's complaint stated a claim, Chief Judge Gregory is entitled to absolute and qualified immunity from Plaintiff's claims. These immunities are immunities from suit and not simply protection from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam) (judicial immunity); *Iqbal*, 556 U.S. at 685-86 (qualified immunity).

"Litigation . . . exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government," and a defendant entitled to dismissal on the pleadings should "be free from the burdens of discovery." *Id.* at 685-86.

### 1.     <u>Absolute immunity bars this lawsuit.</u>

"The absolute immunity from suit for alleged deprivation of rights enjoyed by judges is matchless in its protection of judicial power." *McCray v. State of Maryland*, 456 F.2d 1, 3 (4th Cir. 1972), *overruled on other grounds, Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995). "'Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction.'" *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985) (quoting *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967)); *see also Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "Absolute immunity is . . . necessary to assure that judges . . . can perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978) (administrative law judge performing adjudicatory function entitled to absolute immunity). In determining the availability of absolute judicial immunity, the Supreme Court applies a two-factor test: (1) that the challenged act be judicial in nature and (2) that it not be done in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.

The factors determining whether a challenged act by a judge is a judicial one for purposes of immunity "relate to the nature of the act itself, i.e. whether it is a function normally performed by a judge, and the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The inquiry thus goes to the nature and function of the act, *Mireles*, 502 U.S. at 12, because absolute judicial "immunity is justified and derived by the functions it protects and serves . . . ." *Forrester v. White,* 484 U.S. 219, 227 (1988)

(distinguishing between a judge's "judicial acts and administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform").

While a judge's actions during a court hearing are quintessential judicial acts, a judge need not be in court wearing a robe with a gavel in hand for his acts to be judicial in nature. *See Dellenbach v. Letsinger*, 889 F.2d 755, 760 (7th Cir. 1989) (telephone calls). Recognizing that "[d]ifficulties have arisen primarily in attempting to draw a line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," 484 U.S. at 227, *Forrester* emphasizes that every inquiry regarding absolute immunity must be a functional one – an inquiry that considers the nature of the function performed and the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. *Forrester*, 484 U.S. at 224.

Chief Judge Gregory's denial of Plaintiff's request to disqualify the Defender, Compl. ¶ 453, and his decision regarding Plaintiff's request for extension of the counseling period, *id.*, ¶¶ 299, 325, 484, by their nature and function are "judicial acts." Chief Judge Gregory, in performing these adjudicatory functions under the EDR Plan, was acting in a "functionally comparable" role to his Article III role, and is entitled to absolute immunity because adjudication under the Plan is "every bit as fractious as those [cases] that come before the Court." *See Butz*, 438 U.S. at 512-13. Additionally, absolute immunity is justified on the ground that "suits against judges [are not] the only available means through which litigants can protect themselves," where an appeal process exists. *Forrester*, 484 U.S. at 227. That same rationale applies in this case because, under the Plan, Plaintiff had a right to appeal to the Judicial Council of the Circuit. *See* Plan, § 11. Accordingly, the policy concerns in protecting the judicial function that undergird the absolute immunity doctrine applied when Chief Judge Gregory performed adjudicatory functions under the

Plan, and, consequentially, absolute immunity bars Plaintiff's challenges to his adjudicatory functions under the Plan. *Butz*, 438 U.S. at 512.[9]

### 2. Qualified immunity bars this lawsuit.

In addition, and in the alternative, the doctrine of qualified immunity bars Plaintiff's claims against Chief Judge Gregory. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity serves the public interest by allowing government officials to perform their duties diligently, without being chilled or distracted by the risk of personal damages suits. Accordingly, government officials are entitled to qualified immunity unless: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" *Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). Here, Plaintiff fails both steps of this test.

> a. *Step One: Plaintiff fails to allege plausibly that Chief Judge Gregory personally violated the law*.
>
> > 1. Plaintiff fails to allege plausibly that Chief Judge Gregory personally violated her constitutional rights.

Because officials must have clear notice that their own specific actions are unconstitutional before they can be held liable in damages, *see Iqbal*, 556 U.S. at 676, step one of the qualified

---

[9] Regarding the second prong of the absolute judicial immunity test, Plaintiff makes no allegation that Chief Judge Gregory was acting in the absence of all jurisdiction. In fact, Plaintiff alleges Chief Judge Gregory was responsible for various "duties under the EDR Plan used to process Plaintiff's complaints of sexual harassment, retaliation, and gender discrimination." Compl. ¶ 32.

immunity test asks whether the plaintiff has plausibly alleged the violation of a right. *Id.* Specifically, in a *Bivens* action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," *id.* at 677, and a plaintiff must include factual material about the defendant's particular actions.

Specifically, Plaintiff's Complaint does not adequately allege an individual-capacity constitutional claim merely by alleging that Chief Judge Gregory was responsible for duties under the Plan, Compl. ¶ 32, that he was aware of Plaintiff's complaints or copied on emails, or provided a copy of Plaintiff's narrative. Comp. ¶¶ 217, 287, 322, 325, 330, 451. Whether viewed as an impermissible theory of "supervisory liability," *see Iqbal*, 556 U.S. at 677, or as "an unadorned, the-defendant-unlawfully harmed-me accusation," *id.* at 678, Plaintiff's allegations are not enough to allege a plausible claim. *See Corsi v. Mueller*, 422 F. Supp.3d 51, 65 (D.D.C. 2019) (allegation that alleged violations took place "at the direction of Defendant Mueller" was merely a conclusion and did not plausibly plead that Special Counsel Mueller personally acted in violation of plaintiff's rights).

Moreover, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. To the extent Plaintiff attempts to generally implicate the allegations against other defendants to Chief Judge Gregory, a complaint that contains "only collective references to defendants does not adequately state a *Bivens* claim . . . . " *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)); *see also Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). When a complaint, like Plaintiff's, "makes only

categorical references to 'Defendants,'" it fails to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Marcilis*, 693 F.3d at 596-97; *see also Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (complaint's "undifferentiated contention that 'defendants' infringed" plaintiff's rights failed to state a claim); *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (court must "'isolate the allegedly unconstitutional acts of each defendant'"). Here, Plaintiff's collective allegations regarding defendants in general do not state a plausible claim against Chief Judge Gregory. Moreover, *Bivens* liability cannot be established on a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676 ("Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Accordingly, Plaintiff fails to allege plausibly that Chief Judge Gregory personally violated her constitutional rights.

2.      Plaintiff fails to allege plausibly that Chief Judge Gregory personally violated 42 U.S.C. § 1985(3) and § 1986.

Plaintiff also fails to state any plausible claim that Chief Judge Gregory personally violated 42 U.S.C. §§ 1985(3) and 1986. Plaintiff's claims under these statutes fail to allege all elements of the causes of action, *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995), are impermissibly conclusory, *Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) (*en banc*), barred by the intracorporate-conspiracy doctrine, *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985), and precluded by the CSRA, *Hall*, 235 F.3d at 206. Specifically, the Fourth Circuit has held "that Congress intended the CSRA would operate to the exclusion of ***all*** other statutory remedies for claims arising out of the federal employment relationship." *Hall*, 235 F.3d at 206 (emphasis added). Because "[a] cause of action based upon a § 1986 is dependent upon the existence of a claim under § 1985," the dismissal of plaintiff's § 1985 claim requires the dismissal

24

of a § 1986 claim. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). Accordingly, Plaintiff fails to allege a plausible claim for relief, and Chief Judge Gregory is entitled to qualified immunity. *See Abbasi*, 137 S. Ct. at 1869 (qualified immunity bars 42 U.S.C. § 1985(3) claim because of a circuit-split regarding application of intracorporate-conspiracy doctrine).

        b.    *Step Two: Plaintiff Alleges No Violation of Clearly Established Law.*

Under step two of the qualified immunity test, the question is whether plaintiff has alleged a clearly established right. For an official to lose the protections of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff must "identify a case where an [official] acting under similar circumstances . . . was held to have violated [the Constitution]." *White v. Pauly,* 137 S. Ct. 548, 552 (2017) (per curiam). Because Plaintiff sets forth no constitutional or statutory violation at all, much less a clearly established one, qualified immunity bars Plaintiff's lawsuit. *See Abbasi*, 137 S. Ct. at 1869.

CONCLUSION

For the foregoing reasons, Chief Judge Gregory respectfully requests dismissal with prejudice.

This the 5th day of June, 2020.

        Respectfully submitted,

        JOSEPH H. HUNT
        Assistant Attorney General
        CARLOTTA P. WELLS
        Assistant Branch Director

        s/*Joshua Kolsky*
        JOSHUA M. KOLSKY
        Trial Attorney
        D.C. Bar No. 993430
        United States Department of Justice
        Civil Division, Federal Programs Branch

25

1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone:  (828) 271-4661
Fax:  (828) 271-4327
Email:  Gill.Beck@usdoj.gov