**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAORLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

JANE ROE,                                    )
                                             )
      Plaintiff,                      )
                                             )
v.                                           )
                                             )
UNITED STATES OF AMERICA, et al.,            )
                                             )
      Defendants.                     )

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

   A.  Plaintiff complains about the First Assistant to the Federal Public Defender ................... 2

   B.  The Fourth Circuit initiates an investigation ..................................................... 3

   C.  Plaintiff requests mediation ....................................................................... 3

   D.  The mediation results in Plaintiff obtaining a Fourth Circuit clerkship, and she withdraws her Chapter X claim .............................................................. 4

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ...................................................................................................... 5

   I.  Plaintiffs' Claims Are Barred by Sovereign Immunity ....................................... 5

   II.  The CRSA Preculdes Plaintiffs' Claims ......................................................... 7

   III.  Plaintiff Failed to Exhaust Administrative Remedies ........................................ 11

   IV.  The Complaint Fails to State a Claim ............................................................ 14

      A.  The Complaint Fails to State a Claim for Violation of Due Process Clause ............. 14

      B.  The Complaint Fails to State a Claim for Violation of Equal Protection .................. 18

      C.  The Complaint Fails to State a Claim for Violations of 42 U.S.C. §§ 1985, 1986 .... 22

CONCLUSION .................................................................................................. 22

i

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Mecham*,
2006 U.S. Dist. LEXIS 68124 (D.D.C. Sept. 12, 2006) ........................................................... 15

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ................................................................................................................... 14

*Arroyo Planas v. Lamoutte*,
2015 U.S. Dist. LEXIS 128399 (D.P.R. Sept. 33, 2015).................................................... 10, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ *passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 4, 5

*Bohen v. City of E. Chi.*,
799 F.2d 1180 (7th Cir. 1986) ............................................................................................ 19, 21

*Buschi v. Kirven*,
775 F.2d 1240 (4th Cir. 1985) .................................................................................................. 22

*Clemente v. United States*,
766 F.2d 1358 (9th Cir. 1985) .................................................................................................. 15

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992) .................................................................................................................. 18

*Collins v. FBI*,
No. 10-3470, 2011 U.S. Dist. LEXIS 46019 (D.N.J. Apr. 28, 2011) ....................................... 19

*Danos v. Jones*,
652 F.3d 577 (5th Cir. 2011) ...................................................................................................... 7

*Demello v. Ney*,
No. 97-15205, 1999 U.S. App. LEXIS 11156 (9th Cir. May 28, 1999).................................... 6

*Dexter v. Huerta*,
No. 12-1147, 2013 U.S. Dist. LEXIS 13632 (M.D.N.C. Sept. 24, 2013) ............................... 12

*Doe v. Chao*,
306 F.3d 170 (4th Cir. 2002) ...................................................................................................... 6

ii

*Dotson v. Griesa*,
    398 F.3d 156 (2d Cir. 2005) ............................................................................... *passim*

*Drone v. Duff*,
    No. 17-cv-332, 2017 U.S. Dist. LEXIS 206167 (E.D. Va. Dec. 14, 2017) .......................... 7, 10

*Elgin v. Dep't of Treasury*,
    132 S. Ct. 2126 (2012) .................................................................................... 8

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ..................................................................................... 5, 6

*Fleming v. Spencer*,
    718 F. App'x 185 (4th Cir. 2018) ...................................................................... 13

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005) ........................................................................... 8

*Fultz v. Waldron*,
    No. 93-891, 1994 U.S. Dist. LEXIS 5318 (D.N.J. Apr. 9, 1994) ..................................... 13, 17

*Garrow v. Gramm*,
    856 F.2d 203 (D.C. Cir. 1988) ......................................................................... 15

*Gooden v. Howard County*,
    954 F.2d 960 (4th Cir. 1992) ........................................................................... 22

*Hall v. Clinton*,
    235 F.3d 202 (4th Cir. 2000) .......................................................................... 22

*Hammer v. Fed. Pub. Def. Org.*,
    No. 16-02192, 2017 U.S. Dist. LEXIS 122777 (S.D. Cal. Aug. 2, 2017) .............................. 7

*Hawkins v. Freeman*,
    195 F.3d 732 (4th Cir. 1999) ........................................................................... 17

*Hill v. Cundiff*,
    797 F.3d 948 (11th Cir. 2015) ......................................................................... 19

*In re Golinski*,
    587 F.3d 956 (9th Cir. 2009) ........................................................................... 9

*In re KBR, Inc.*,
    744 F.3d 326 (4th Cir. 2014) ........................................................................... 4

Case 1:20-cv-00066-WGY   Document 43   Filed 06/08/20   Page 4 of 30

*Jeffrey M. Brown Assoc., Inc. v. Rockville Center, Inc.*,
 7 Fed. App'x 197 (4th Cir. 2001) ............................................................. 4

*Kentucky v Graham*,
 473 U.S. 159 (1985) ................................................................................. 5

*Kotishak v. Mannes*,
 No. 97-1500, 1998 U.S. App. LEXIS 7811 (4th Cir. Apr. 22, 1998) ...................... 15

*Larson v. Domestic & Foreign Commerce Corp.*,
 337 U.S. 682 (1949) ............................................................................. 6, 7

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ........................................................................... 4, 22

*Mendoza v. Weinheimer*,
 No. 16-0645, 2018 U.S. Dist. LEXIS 206167 (E.D. Va. Dec. 14, 2018) ................... 7

*Migdal v. Rowe Price-Fleming Int'l*,
 248 F.3d 321 (4th Cir. 2001) ................................................................... 5

*Muirhead v. Mecham*,
 427 F.3d 14 (1st Cir. 2005) .................................................................... 6

*Novell, Inc. v. United States*,
 109 F. Supp. 2d 22 (D.D.C. 2000) .............................................................. 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
 465 U.S. 89 (1984) ............................................................................... 7

*Pers. Adm'r of Massachusetts v. Feeney*,
 442 U.S. 256 (1979) ............................................................................. 18

*Philips v. Pitt Cty Mem'l. Hosp.*,
 572 F.3d 176 (4th Cir. 2009) ................................................................... 4

*Pinar v. Dole*,
 747 F.2d 899 (4th Cir. 1984) ................................................................. 14

*Ryan v. McAleenan*,
 No. ELH-19-1968, 2020 WL 1663172 (D. Md. Apr. 3, 2020) ........................... 4, 13

*Semper v. Gomez*,
 747 F.3d 229 (3d Cir. 2014) .............................................................. 9, 10

iv

*Simmons v. Poe*,
   47 F.3d 1370 (4th Cir. 1995) ....................................................................................... 22

*South Carolina v. United States*,
   232 F. Supp. 3d 785 (D.S.C. 2017) ................................................................................. 7

*Spidle Hogan*,
   No. 12-0983, 2014 U.S. Dist. LEXIS 90999 (M.D. Tenn. July 3, 2014) ................... 11

*Theard v. United States Army*,
   653 F. Supp. 536 (M.D.N.C. 1987) ............................................................................... 15

*Thompson v. Dist. of Columbia*,
   530 F.3d 914 (D.C. Cir. 2008) ...................................................................................... 14

*United States v. Fausto*,
   484 U.S. 439 (1988) .......................................................................................................... 8

*United States v. Mitchell*,
   463 U.S. 206 (1983) .......................................................................................................... 5

*United States v Nordic Village, Inc*.,
   503 U.S. 30 (1992) ............................................................................................................ 5

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ................................................................................................ 18, 21

*Washington Legal Found. v. U.S. Sentencing Comm'n*,
   17 F.3d 1446 (D.C. Cir. 1994) ........................................................................................ 6

*Winters v. Law Firm of Richard H. Parsons*,
   No. 07-cv-588-JPG, 2007 U.S. Dist. LEXIS 84910 (S.D. Ill. Nov. 16, 2007) ............ 7

*Young v. City of Mount Ranier*,
   238 F.3d 567 (4th Cir. 2001) .......................................................................................... 5

### Statutes

5 U.S.C. § 701(b)(1)(B) ............................................................................................................ 6

5 U.S.C. § 702 ............................................................................................................................ 6

5 U.S.C. § 2302 .......................................................................................................................... 9

5 U.S.C. § 4301 .......................................................................................................................... 9

Case 1:20-cv-00066-WGY   Document 43   Filed 06/08/20   Page 6 of 30

5 U.S.C. § 7511 ............................................................................................................... 9

28 U.S.C. § 331 ............................................................................................................... 17

42 U.S.C. § 1985 ............................................................................................................. 22

# INTRODUCTION

Plaintiff Jane Roe, a former assistant federal public defender ("AFPD") in the Federal Public Defender's Office for the Western District of North Carolina ("FPD-WDNC") filed two employment dispute resolution claims alleging sexual harassment, discrimination, and retaliation under the Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit (Nov. 2018) ("Plan") (Exhibit A). Specifically, Plaintiff filed a claim under Chapter IX (Reports of Wrongful Conduct) and Chapter X (Dispute Resolution Procedures). Pursuant to the Plan, Plaintiff participated in mediation, obtained a Fourth Circuit clerkship, resigned as an AFPD, and withdrew her Chapter X request for counseling.

Plaintiff now sues the United States and various federal entities and officials in their individual and/or official capacities. This Motion seeks dismissal of the claims against Defendants the United States, Judicial Conference of the United States, Administrative Office of the United States Courts, United States Court of Appeals for the Fourth Circuit, Judicial Council of the Fourth Circuit, Federal Public Defender's Office, Chief Judge Roger L. Gregory in his official capacity, Chief Judge Roslynn R. Mauskopf in her official capacity, Circuit Executive James N. Ishida in his official capacity, Director James C. Duff in his official capacity, General Counsel Sheryl L. Walter in her official capacity, and Federal Public Defender Anthony Martinez in his official capacity (collectively, "Defendants" or the "United States").[1]

The Court should dismiss Plaintiff's claims in full. First, each of Plaintiff's claims is jurisdictionally barred by the doctrine of sovereign immunity. Second, employment-based claims

---

[1] The individuals sued in their individual capacities are separately moving for dismissal of the individual capacity claims.

1

by a judiciary employee, such as those alleged here, are precluded by the Civil Service Reform Act of 1978 and the judiciary's own equal employment opportunity administrative procedures. Third, even if Plaintiff could assert employment challenges in federal court (she cannot), she should not be permitted to do so here where she failed to complete the administrative process that was available to her. As noted, Plaintiff invoked that process, complaining of sexual harassment, discrimination, and retaliation, but she withdrew her claim after obtaining a Fourth Circuit clerkship as a negotiated resolution of her claims. And Plaintiff failed to invoke the administrative process available for her constructive discharge claim.

Even if the Court reaches the merits of her claims, it should dismiss them under Rule 12(b)(6). Plaintiff failed to allege any property interest to support her due process claim. And to the extent that Plaintiff is dissatisfied with the outcome of the administrative process, it is clear that a plaintiff may not short-circuit an administrative process and then blame the process for not delivering the result she was expecting. Also, because Plaintiff failed to allege that Defendants acted with discriminatory intent, she has not alleged a claim for violation of equal protection.

For these reasons, as discussed further below, Defendants respectfully request the Court to dismiss the claims against Defendants.

## BACKGROUND

### A. Plaintiff complains about the First Assistant to the Federal Public Defender

Plaintiff alleges that while an AFPD, she complained to the Federal Public Defender ("Defender") that the First Assistant sexually harassed her, discriminated against her based on her gender, and retaliated against her. *See* Compl. ¶¶ 65-66, 69, 72-76. On August 10, 2018, Plaintiff emailed the Defender regarding the First Assistant's alleged sexual harassment. *Id.* ¶ 211. She

2

alleges that the Defender mishandled her complaints and retaliated against her. *See id.* ¶¶ 65-69, 72-76.

**B.    The Fourth Circuit initiates an investigation**

Based on Plaintiff's August 10, 2018 e-mail, the Defender notified the Circuit Executive, who notified Chief Judge Gregory, who ordered an investigation. *Id.* ¶¶ 217, 257-58, 451, 484. On September 10, 2018, Plaintiff filed a request for counseling under Chapter X of the Plan and a report of wrongful conduct under Chapter IX of the Plan,[2] naming both the First Assistant and Defender as violators of the Plan. *Id.* ¶ 274. In a separate filing, Plaintiff requested disqualification of the Defender. *Id.* ¶ 276. On September 28, 2018, the Circuit Executive confirmed to Plaintiff that there would be one unified investigation covering Plaintiff's Chapter IX report of wrongful conduct and Chapter X request for counseling. *Id.* ¶¶ 299, 325.

**C**.    **Plaintiff requests mediation**

On January 30, 2019, Plaintiff requested mediation under the Plan. *Id.* ¶¶ 411-17. On February 7, 2019, Plaintiff met with the Mediator and requested a duty station transfer. *Id.* ¶ 411. On February 26, 2019, Plaintiff again met with the Mediator, who reported that Plaintiff could not transfer to an adjacent federal defender office because that office did not have an opening. *Id.* ¶ 454. The Mediator offered to help Plaintiff secure a Fourth Circuit clerkship, and after the meeting the Mediator went to Richmond, Virginia, to advocate in person on Plaintiff's behalf for a clerkship. *Id.* ¶¶ 456-57. Later that week, the Mediator told Plaintiff that a Fourth Circuit judge had an available term clerkship position, and wanted to interview Plaintiff. *Id.* ¶ 458.

---

[2] "A report of wrongful conduct is not the same as initiating or filing a claim under this Plan; thus, employees who wish to file an EDR claim relating to any alleged wrongful conduct . . . must follow the procedures set forth in Chapter X of the Plan." Plan, Chapter IX at 7. An employee can only obtain relief under Chapter X. *See* Plan, Chapter X, § 1. The Chief Judge or unit executive imposes discipline under Chapter IX. *See* Plan, Chapter IX at 7.

**D.** **The mediation results in Plaintiff obtaining a Fourth Circuit clerkship, and she withdraws her Chapter X claim**

On March 8, 2019, Plaintiff interviewed with the Fourth Circuit Judge, who offered her a clerkship, and Plaintiff accepted as a "negotiate[ed] . . . resolution" of her Chapter X claim. *Id.* ¶¶ 7, 459. On March 11, 2019, Plaintiff sent an email[3] to the Circuit Executive withdrawing her Chapter X claim. *See* Ex. A. On March 15, 2019, Plaintiff voluntarily resigned from the FDO-WDNC. Compl. ¶ 464.

## LEGAL STANDARD

To survive a challenge to the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must establish a court's jurisdiction through sufficient allegations. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When considering motions to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the court may consider materials outside the pleadings. *See In re KBR, Inc.*, 744 F.3d 326, 333-34 (4th Cir. 2014).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of

---

[3] This email, while not cited in the Complaint, is properly considered on a motion to dismiss pursuant to Rule 12(b)(6) because it is integral to the Complaint. *Philips v. Pitt Cty Mem'l. Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009). *Jeffrey M. Brown Assoc., Inc. v. Rockville Center, Inc.*, 7 Fed. App'x 197, 203 (4th Cir. 2001) (considering documents referenced in a complaint in order to "furthers the policy of '[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based.'"). This is especially appropriate here, where Plaintiff challenges the validity of the administrative process, yet omits mentioning the email in which she withdrew her administrative claim. *See, e.g., Ryan v. McAleenan*, No. ELH-19-1968, 2020 WL 1663172, at *10 (D. Md. Apr. 3, 2020) (considering emails and other documentation from administrative process attached to a motion to dismiss in a Title VII case).

4

action will not do." *Id.* To assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* (quoting *Twombly*, 550 U.S. at 557). Also, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)).

## ARGUMENT

**I. Plaintiffs' Claims Against Are Barred by Sovereign Immunity**

All of Plaintiff's claims should be dismissed under Rule 12(b)(1) because they are barred by the United States' sovereign immunity. It is well settled that sovereign immunity bars suits against the United States, its agencies, and officers in their official capacities, absent a congressional waiver of such immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475, 485-86 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *United States v Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) ("waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed"). A constitutional tort action against federal officers in their official capacities operates as a claim against the United States. *Kentucky v Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity").

Here, Plaintiff is seeking money damages and equitable relief from Defendants in their official capacities for alleged violations of her constitutional and statutory rights. Because the United States has not expressly waived its sovereign immunity with respect to such claims, a

5

plaintiff may not bring a constitutional tort claim against the United States, its agencies, or officers sued in their official capacities. *See Meyer*, 510 U.S. at 475, 485-86 (sovereign immunity bars *Bivens* action against federal government); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) ("*Bivens* action does not lie against either agencies or officials in their official capacity").

Plaintiff cannot rely on the waiver of sovereign immunity in the Administrative Procedure Act ("APA"). The APA allows claims seeking other than money damages against an "agency or an officer or employee thereof" to be brought in federal court. 5 U.S.C. § 702. Congress defined "agency" to mean "each authority of the Government of the United States" but expressly excluded from the definition, *inter alia*, "the courts of the United States." 5 U.S.C. § 701(b)(1)(B). "Over the years, virtually every case interpreting the APA exemption for 'the courts of the United States' has held that the exemption applies to the entire judicial branch[.]" *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994); *Demello v. Ney*, No. 97-15205, 1999 U.S. App. LEXIS 11156, at *2-3 (9th Cir. May 28, 1999) (ruling that APA waiver of sovereign immunity did "not apply to the Federal Public Defender's Office, which is a part of the federal judiciary"); *Muirhead v. Mecham*, 427 F.3d 14, 18 (1st Cir. 2005) ("The Administrative Office of the United States Courts is part of the judicial branch, so the Director's actions are not subject to judicial review under the terms of this waiver."); *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 25 (D.D.C. 2000) (Administrative Office of U.S. Courts is excluded from the APA's coverage).

Plaintiff also cannot rely on the exception to sovereign immunity described in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), involving "suits for specific relief against officers of the sovereign which are not suits against the sovereign." *Id.* at 689-90. Even assuming the *Larson* exception continues to apply after the 1976 amendments to the APA (which

added the sovereign immunity waiver), the exception would not apply here. "To invoke this exception, a plaintiff must 'do more than simply allege that the actions of the officer are illegal or unauthorized.'" *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011). "The complaint must allege facts sufficient to establish that the officer was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)). Moreover, the *Larson* exception does not apply "if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." *Larson*, 337 U.S. at 691 n.11. Accordingly, a suit is one against the United States where, as here, the remedy requires payment "out of the public treasury." *Danos*, 652 F.3d at 583; *see also South Carolina v. United States*, 232 F. Supp. 3d 785, 796-97 (D.S.C. 2017).

Accordingly, all Plaintiff's claims against the United States are jurisdictionally barred by sovereign immunity and must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *See Winters v. Law Firm of Richard H. Parsons*, No. 07-cv-588-JPG, 2007 U.S. Dist. LEXIS 84910, at *6 (S.D. Ill. Nov. 16, 2007) (dismissing claims against, *inter alia*, Federal Public Defender's Office and Federal Public Defender as barred by the doctrine of sovereign immunity); *Hammer v. Fed. Pub. Def. Org.*, No. 16-02192, 2017 U.S. Dist. LEXIS 122777, at *12-13 (S.D. Cal. Aug. 2, 2017) (same as to Federal Public Defender's Office); *Mendoza v. Weinheimer*, No. 16-0645, 2018 U.S. Dist. LEXIS 164598, at *6 (E.D. Cal. Sep. 24, 2018) (same); *Drone v. Duff*, No. 17-cv-332, 2017 U.S. Dist. LEXIS 206167, at *7-8 (E.D. Va. Dec. 14, 2017) (ruling that sovereign immunity barred claims against federal judicial employees).

## II.    The CSRA Precludes Plaintiffs' Claims

In addition to the bar from sovereign immunity, Plaintiffs' claims against the United States are jurisdictionally barred for another reason as well – review in this Court is precluded by the

Civil Service Reform Act of 1978 ("CSRA") and the judiciary's own equal employment opportunity procedures.

In enacting the CSRA in 1978, Congress reformed the relationship between the federal government and its employees. It "replace[d] the haphazard arrangements for administrative and judicial review of personnel action[s]" that were "part of the 'outdated patchwork of statutes and rules built up over almost a century.'" *United States v. Fausto*, 484 U.S. 439, 444 (1988) (quoting S. Rep. No. 95-969, at 3 (1978)). The CSRA provides a comprehensive "framework for evaluating adverse personnel actions against federal employees[.]" *Id*. at 443. The CSRA details the protections and remedies offered to federal employees with respect to such actions, "including the availability of administrative and judicial review." *Id*. Congress designed those protections and remedies to strike a "balance" between "the legitimate interests of the various categories of federal employees" and "the needs of sound and efficient administration." *Id*. at 445. Crucially, the CSRA is not only comprehensive, but exclusive. In other words, with a few inapplicable exceptions, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.).

The CSRA divides employees into three central classifications: (1) senior executive service employees, who "occupy high-level positions in the Executive Branch but are not required to be appointed by the President and confirmed by the Senate;" (2) competitive service employees, who are either Executive Branch employees who are neither in the senior executive service nor excepted by statute, or employees not in the Executive Branch who are included by statute; and (3) excepted service employees who are neither in the senior executive service nor in the competitive service. *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2130 n.1 (2012). Judicial branch employees are part of the "excepted service" for purposes of the CSRA because they are not in the executive branch

and are not included by statute in the competitive service.  *See Semper v. Gomez*, 747 F.3d 229, 235-36 (3d Cir. 2014); *Dotson v. Griesa*, 398 F.3d 156, 163 (2d Cir. 2005).

The CSRA excludes non-preference eligible members of the excepted service from the administrative and judicial review rights that the statute creates for federal employment-related claims.  *See generally* 5 U.S.C. §§ 2302, 4301, 7511. Plaintiff does not contend that she is preference-eligible under the CSRA.  Accordingly, the CSRA would not provide her with a right to administrative or judicial review of the employment-related claims she asserts in this action.

In *Dotson*, the Second Circuit determined that "Congress's decision to exclude judicial branch employees from the administrative and judicial review procedures of the CSRA . . . was not inadvertent, but a conscious and rational choice made and maintained over the years in light of both a proper regard for judicial independence and recognition of the judiciary's own comprehensive review procedures for adverse employment actions, including review by judicial officers."  398 F.3d at 176.  The court emphasized that the judiciary's own review procedures provided a "rational basis for Congress's decision to withhold statutory remedies."  *Id.* at 171. "Congress's awareness of the courts' EEO plans is beyond question" and "it has carefully monitored the operations of these plans to satisfy itself that they adequately protect judicial employees from discrimination without the need for legislative action."  *Id.* at 173.  Importantly, the judiciary's "internal procedures have always involved some opportunity for review by a judicial officer[.]"  *Id.* at 175-76.  "Indeed the judiciary is unique among the branches of government in being able to provide for itself some review of its administrative employment decisions by a judicial officer."  *Id.* at 176 n.14.[4]  "Congress undoubtedly considered this fact and

---

[4] *See, e.g., In re Golinski*, 587 F.3d 956, 963-64 (9th Cir. 2009) (Kozinski, C.J.) (ordering relief to judicial branch employee as part of the Ninth Circuit's Employment Dispute Resolution procedure).

9

the long history of judicial review within the courts' EEO plans in concluding that it was unnecessary to legislate multiple and redundant levels of judicial review for court employees." *Id*. Accordingly, the Second Circuit ruled that "employees covered by the CSRA – including judicial branch employees – may not sue in equity for reinstatement of employment, even when they present constitutional challenges to their termination." *Id*. at 180.

In *Semper*, the Third Circuit followed *Dotson* and affirmed the dismissal of a due process challenge to the termination of a probation officer formerly employed by a United States District Court. The court explained that "employment disputes within the Judicial Branch implicate a special set of circumstances including the doctrine of separation of powers and the protection of an independent judiciary." *Semper*, 747 F.3d at 240. In light of the judiciary's own review procedures, the court "agree[d] with the Second Circuit that it would be unnecessary and even inappropriate to allow a judicial employee to file a lawsuit against a judicial officer where the judiciary has already provided a means for this person to obtain meaningful relief together with a measure of judicial review." *Id*. at 243. Other circuit and district courts have reached the same conclusion as the Second and Third Circuits and have dismissed, or affirmed the dismissal of, claims brought by judicial branch employees arising from their employment. *See, e.g.*, *Gaylor v. Smith*, No. 16-5308, ECF No. 10-1, at 2 (6th Cir. Feb. 28, 2017) (holding that the CSRA barred a former judicial employee "from bringing a due process challenge due to the established procedure for challenging her termination provided by the court") (attached hereto as Exhibit B); *Arroyo Planas v. Lamoutte*, 2015 U.S. Dist. LEXIS 128399, at *17-18, 25 (D.P.R. Sep. 22, 2015) (court lacked jurisdiction over due process and equal protection claims arising out of the plaintiffs' judicial branch employment); *Drone*, 2017 U.S. Dist. LEXIS 206167, at *6-7 (court lacked jurisdiction over constitutional claims by judicial branch employee in part because "judicial

employees can pursue meaningful relief for employment-related claims within the courts' own remedial schemes"); *Spidle v. Hogan*, No. 12-0983, 2014 U.S. Dist. LEXIS 90999, at *1 (M.D. Tenn. July 3, 2014) (dismissing claims by former bankruptcy court employee because the "sole remedy for his employment dispute was pursuant to the Bankruptcy Court's Employment Dispute Resolution Plan").

Accordingly, the CSRA precludes Plaintiff from asserting her claims in federal court. Plaintiff's claims should be dismissed under Rule 12(b)(1).

### III.    Plaintiff Failed to Exhaust Administrative Remedies

Judicial review of Plaintiff's claims in federal court is especially inappropriate here, where Plaintiff failed to fully utilize the administrative process available to her under the Fourth Circuit's Plan. That Plan afforded employees like Plaintiff the right to file a formal written complaint upon expiration of the mediation period. Plan § 10. The Chief Judge was responsible for determining if a complaint stated a claim upon which relief could be granted, Plan § 10(A)-(B), and if so, the Chief Judge or other designated judicial officer was required to hold a hearing on the merits. Plan § 10(B)(2). The presiding judicial officer could award broad equitable relief, including back pay, if the statutory requirements of the Back Pay Act are satisfied. Plan § 10(B)(2)(f), § 12. If an employee was still dissatisfied, the employee could appeal under the procedures established by the judicial council of the circuit. Plan § 11.

Plaintiff pursued her remedies under the Plan, at least initially. But she ultimately withdrew her claim, ending the administrative process through a "negotiat[ed] . . . resolution." Compl. ¶ 7. Specifically, Plaintiff filed a request for counseling under Chapter X of the Plan alleging that she had been subjected to unlawful harassment, retaliation, and discrimination.

11

Compl. ¶ 274.[5]  While an investigation into her claims was ongoing, *id.* ¶¶ 297, 299, Plaintiff filed a request for mediation under the Plan, *id.* ¶ 411.  Plaintiff asked the mediator to help her secure a Fourth Circuit clerkship, *id.* ¶ 456, and the mediator went to Richmond to advocate in person for a clerkship on Plaintiff's behalf, *id.* ¶ 457.  Shortly thereafter, on March 8, 2019, Plaintiff was offered a position as a Fourth Circuit law clerk, which she accepted.  *Id.* ¶¶ 459, 465.  On March 11, 2019, Plaintiff emailed Defendant Ishida to inform him that she had accepted a clerkship and that she was withdrawing her Chapter X claim.  *See* Exhibit C ("Given these circumstances, I no longer wish to pursue the Chapter X portion of my EDR claim.").[6]

Plaintiff thus short-circuited the administrative process by voluntarily withdrawing her claims before the proceedings were completed, before a hearing on her claims was held, and before any determination of whether she should be afforded relief.  Having thus terminated the administrative process, Plaintiff cannot now seek the same relief in this new forum.  *See Dexter v. Huerta*, No. No. 12-1147, 2013 U.S. Dist. LEXIS 136362, at *4 (M.D.N.C. Sep. 24, 2013) (prudential exhaustion requires "parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court").  "[P]recisely because the judiciary's administrative review process itself affords an employee one or more levels of judicial review, it would be particularly incongruous to hold that an employee who failed to secure administrative relief from these judicial officers could then invoke equity to have h[er] claim reviewed by a different set of judicial officers."  *Dotson*, 398 F.3d at 182.  This is especially true where Plaintiff

---

[5] Plaintiff also filed a report of wrongful conduct under Chapter IX, but an employee can only obtain relief under Chapter X.  *See* Plan, Chapter X, § 1.

[6] Plaintiff's Complaint does not allege that she pursued a claim under the Plan for her alleged constructive termination.

12

extracted a benefit – a coveted Fourth Circuit clerkship – as part of the negotiated resolution of her administrative claims.

Notably, federal employees who have remedies under the CSRA must exhaust those remedies before asserting constitutional claims in federal court. *See Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) ("The CSRA plainly precludes extrastatutory judicial review of constitutional claims that are asserted before an employee has exhausted his remedies available under the statute."). As discussed above, Congress has determined that the judiciary's employee dispute resolution procedures are a substitute for remedies under the CSRA. *See* Section II *supra*; *Dotson*, 398 F.3d 169-76. Therefore, the same exhaustion requirement that applies under the CSRA should apply if the Court determines that a judiciary employee ever may challenge employment decisions in federal court (which it should not for the reasons discussed in Section II).

This case is similar to *Fultz v. Waldron*, No. 93-891, 1994 U.S. Dist. LEXIS 5318 (D.N.J. Apr. 19, 1994). There, a former bankruptcy court employee brought statutory and constitutional claims against the bankruptcy court clerk. The district court ruled that the plaintiff could not proceed with her claims, in part because of the existence of the court's employee dispute resolution plan. *Id*. at *9-24. But the court explained that even if that plan did not preclude the plaintiff's claims, the court "would dismiss her complaint for failure to exhaust the available administrative remedies" under the plan. *Id*. at *32. The court emphasized the "institutional interests" that favored requiring exhaustion, including "(1) deference to Congress' delegation of authority, vesting the coordinate judicial branch with the primary responsibility for administering its personnel matters, and (2) promoting judicial economy by allowing the federal courts to correct their own mistakes or by the creation of a useful record for a subsequent judicial action." *Id*.; *see*

13

*also Arroyo Planas*, 2015 U.S. Dist. LEXIS 128399, at *25 ("[B]ecause Arroyo-Planas did not avail herself of the existing administrative means to address her unequal treatment claim under the existing EEOC Plan, the Court is of the opinion that judicial review in this Court is foreclosed to her by the exclusivity of the CSRA.").

The same result is appropriate here. If the Court finds that a judiciary employee like Plaintiff could ever raise employment-based claims in federal courts (it should not, for the reasons discussed above in Section II), it should still dismiss Plaintiff's claims for lack of administrative exhaustion.

## IV. The Complaint Fails to State a Claim

### A. The Complaint Fails to State a Claim for Violation of Due Process Clause

Claim One of Plaintiff's Complaint alleges that Defendants violated her due process rights. Compl. ¶¶ 494-96. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest do [courts] look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Plaintiff's due process claim fails because Plaintiff has not alleged the existence of any property interest.

To the extent that Plaintiff believes she had a property interest in her employment at the FPD-WDNC, she is mistaken. "It is well-settled that 'property interests in employment positions are not created by the Constitution, but rather, are created and their dimensions defined by independent sources such as state law, local ordinances, and employment contracts.'" *Pinar v. Dole*, 747 F.2d 899, 913 (4th Cir. 1984). An employee has a property interest in a government job only if, under the law, "he did not serve in his job at his employer's 'will,' but he could be removed only 'for cause.'" *Thompson v. Dist. of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008). Here, Plaintiff did not enjoy for-cause removal protections. As discussed above, Plaintiff was a member

14

of the "excepted service" under the CSRA. "It is the well-recognized rule that federal employees in the excepted service can be terminated at any time, without either a statement of reasons for discharge or adverse action appeal rights." *Theard v. United States Army*, 653 F. Supp. 536, 550 (M.D.N.C. 1987). Absent a protected property interest in her job, Plaintiff cannot allege a due process violation based on her alleged constructive termination. *See Kostishak v. Mannes*, No. 97-1500, 1998 U.S. App. LEXIS 7811, at *10-11 (4th Cir. Apr. 22, 1998) (affirming dismissal of due process claim for constructive termination because the plaintiff lacked "a property right in his continued employment with the Bankruptcy Court"); *Garrow v. Gramm*, 856 F.2d 203, 204 (D.C. Cir. 1988) (excepted service employee had no property interest in his continued employment); *Theard*, 653 F. Supp. at 550 (excepted service employee "lacked a constitutionally protected property interest in her job").

Next, to the extent that Plaintiff's allegation that Defendants "violat[ed] the limited procedural protections and rights Plaintiff was afforded under the EDR Plan," Compl. ¶ 495, is intended to suggest Plaintiff had a property interest in the Fourth Circuit's Plan procedures, "a number of courts have explicitly rejected . . . [the] argument that procedures may constitute property subject to due process protection." *Allen v. Mecham*, 2006 U.S. Dist. LEXIS 68124, *11-12 (D.D.C. Sept. 22, 2006); *Clemente v. United States*, 766 F.2d 1358, 1364 (9th Cir. 1985) (failure to follow "procedural requirements, without more, do not create constitutionally cognizable property interests"). Accordingly, Plaintiff did not have a property interest in the Plan procedures.

In any event, the Complaint fails to allege facts to support the conclusion that any of Defendants violated Plaintiff's rights under the Plan. *See Iqbal*, 556 U.S. at 678 (a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). On the contrary, the Complaint indicates that Circuit

Executive Ishida and Chief Judge Gregory followed the Plan by initiating an investigation into Plaintiff's claims, which included multiple meetings with Plaintiff to obtain Plaintiff's version of events "in painstaking detail," and which led to Plaintiff accepting a "negotiat[ed] . . . resolution" in the form of a Fourth Circuit judicial clerkship that Plaintiff had specifically requested. Compl. ¶¶ 7, 301, 308, 456-59. The actions by Circuit Executive Ishida and Chief Judge Gregory described in the complaint were taken in accordance with the Plan. *Id.* Likewise, the allegations concerning General Counsel Walter are simply that she and/or her staff provided legal guidance and advice to an AO Office (the Office of Fair Employment Practices) and the Fourth Circuit with which Plaintiff disagrees. *Id.* ¶¶ 227-31, 265, 398, 474. That does not suffice to plead a violation of Plaintiff's rights under the Plan. As to Chief Judge Mauskopf, the Judicial Conference of the United States, and the Judicial Council of the Fourth Circuit, there are no allegations that those defendants played any role at all in addressing Plaintiff's administrative claims, much less that they violated Plaintiff's rights under the Plan. Indeed, the Complaint contains no allegations of any conduct whatsoever by Chief Judge Mauskopf, other than that she "serves as Chair of the Judicial Conference Committee on Judicial Resources, which is responsible for making judicial policy on issues of human resource administration in the judiciary." *Id.* ¶ 25. Likewise, there are no factual allegations concerning the Judicial Resources Committee, much less any allegations suggesting the committee took any action regarding Plaintiff's administrative claims or had any responsibilities related thereto.

Plaintiff also appears to challenge the substance of the Plan itself in Claim One. She alleges that Defendants violated the due process clause by "adopting, promulgating, and implementing policies and practices under which Plaintiff was deprived of immediate and effective action on, and meaningful review of and remedies for, the harassment, retaliation, and discrimination she

16

suffered[.]" *Id.* ¶ 495. At the outset, it is unclear precisely which Defendants are included in this claim beyond, presumably, the Judicial Conference of the United States and the Fourth Circuit Judicial Council, which the complaint alleges promulgated the judiciary's model EDR plan and the Fourth Circuit's Plan, respectively. *Id.* ¶¶ 24, 31. To the extent that Plaintiff intends to include Chief Judge Mauskopf in this claim, as noted above, the sole allegation about Chief Judge Mauskopf fails to identify any relevant conduct. *Id.* ¶ 25. The complaint contains a few allegations about the "Model EDR Plan Working Group," *id.* ¶¶ 465-70, but that is a separate body from the Judicial Resources Committee chaired by Chief Judge Mauskopf. Regardless of which Defendants this claim targets, it necessarily fails. Plaintiff, of course, did not have a substantive due process right to employee dispute resolution procedures, much less to procedures containing particular terms of her choosing. *See Hawkins v. Freeman*, 195 F.3d 732, 738-39 (4th Cir. 1999) (discussing standards for identifying fundamental constitutional rights).[7]

Any purported due process claim based on the Plan would fail for the additional reason that Defendants did not deny Plaintiff any process under the Plan. Rather, as discussed above, it is *Plaintiff* who chose to reach a "negotiat[ed] . . . resolution" of her administrative claims, Compl. ¶ 7, at which point she withdrew her claims, Ex. A. Moreover, Plaintiff never pursued her rights under the Plan to challenge her supposed constructive termination. A plaintiff should not be heard to complain about the process she was afforded where she cut the process short as to certain claims

---

[7] "By statute Congress created the Judicial Conference, which is comprised of various federal judges from across the nation and is empowered to promulgate the rules and procedures governing the administration of the federal court system." *Fultz*, 1994 U.S. Dist. LEXIS 5318, at *21 (citing 28 U.S.C. § 331). "In turn, each of the eleven federal circuits is headed by a Judicial Council, which is comprised of various federal judges from within each circuit and is authorized to promulgate the administrative rules and regulations applicable to each circuit." *Id.* (citing 28 U.S.C. § 332). Accordingly, the Plan was approved by the Judicial Council of the Fourth Circuit "in view of the congressional authority outlined in these federal statutes." *Id.*

17

and failed to initiate the process as to others. *See Dotson*, 398 F.3d at 161 n.2 (because the plaintiff

failed to pursue relief under the court's employee dispute resolution plan, "he cannot complain

that his termination was in violation of due process" because he "failed to avail himself of the very

administrative procedures he attacks as inadequate"). Any regrets Plaintiff may have about her

decisions during the administrative process are no justification for finding that Defendants violated

Plaintiff's rights.[8]

### B.  The Complaint Fails to State a Claim for Violation of Equal Protection

The Complaint also purports to plead a violation of the Equal Protection component of the

Fifth Amendment.  Compl. ¶¶ 497-99.  But the Complaint fails to allege that Defendants

discriminated against Plaintiff on the basis of her gender.  *See Vill. of Arlington Heights v. Metro.*

*Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose

is required to show a violation of the Equal Protection Clause.").  "Discriminatory purpose . . .

implies more than intent as volition or intent as awareness of consequences."  *Pers. Adm'r of*

*Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).  "It implies that the decisionmaker . . . selected

. . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse

effects upon an identifiable group." *Id.*

The Complaint alleges that Defendants denied Plaintiff equal protection by "subjecting

Plaintiff to harassment, retaliation, and discrimination, failing to take immediate and effective

action on her complaints, and failing to provide her with meaningful review or remedies[.]"

---

[8] Plaintiff also alleges that Defendants violated the due process clause by "discriminating against Plaintiff based on her gender."  Compl. ¶ 495.  That claim is co-extensive with Plaintiff's equal protection claim, discussed below, and fails for the same reasons. There is no reason to suppose that greater scrutiny would apply to a claim sounding in due process than to a claim sounding in equal protection. On the contrary, "the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Compl. ¶ 498. Even assuming – solely for purposes of argument – that the Complaint adequately alleges that the FDO-WDNC's First Assistant's conduct amounted to unlawful harassment and that it occurred because of Plaintiff's gender, that would not establish an equal protection violation by any of the defendants. "It is axiomatic that a federal agency may not be held liable under the doctrine of respondeat superior for the actions of its employees." *Collins v. FBI*, No. 10-3470, 2011 U.S. Dist. LEXIS 46019, at *14-15 (D.N.J. Apr. 28, 2011) (citing *Iqbal*, 556 U.S. at 676). Courts adjudicating equal protection claims under the analogous Fourteenth Amendment hold that a governmental defendant "may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015) (internal quotation marks omitted); *see also Bohen v. City of E. Chi.*, 799 F.2d 1180, 1187 (7th Cir. 1986) (holding that a government employee can make "a claim of sexual harassment under the equal protection clause" by "showing that sexual harassment that is attributable to the employer . . . amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination").

Here, the Complaint fails to allege facts to plausibly suggest that the alleged actions of the First Assistant resulted from an official government policy or practice, or that Defendants failed to protect Plaintiff from the alleged harassment. On the contrary, the allegations in the Complaint show that, after Plaintiff raised concerns, the Defender took action that ended the alleged harassment. Specifically, the Complaint alleges that on July 5, 2018, Plaintiff "notified [the

19

Defender] of the First Assistant's harassing behaviors." Compl. ¶¶ 135, 143.[9] On Friday, July 20, 2018, the Defender announced his intention to assign Plaintiff to the office's trial team headed by the First Assistant, *id*. ¶ 150, but reversed that decision four days later, *id*. ¶ 163, and allowed her to report to the Appellate Chief and to telework, *id*. ¶¶ 216, 219. The Defender also reported Plaintiff's allegation to the Circuit Executive, who promptly informed the Chief Judge, who ordered an investigation into Plaintiff's allegations. *Id*. ¶¶ 217, 257-58.

Although the Complaint attempts to show that the First Assistant "continue[d] his [allegedly] obsessive, demeaning, and sexually harassing behavior" after Plaintiff reported her concerns to the Defender, *id*. ¶ 172, the behavior alleged in the Complaint could not reasonably be considered harassment. The Complaint alleges that the First Assistant harassed Plaintiff after she reported her concerns to the Defender on July 5, 2018 because: the First Assistant made a joke about another attorney outside of Plaintiff's presence, *id*. ¶ 177; at an unspecified time, the First Assistant asked employees to "keep tabs" on Plaintiff, *id*. ¶ 179; the First Assistant copied Plaintiff on an email to a client in which the First Assistant used words that Plaintiff believes were "coded references" to a law review article she had written, *id*. ¶ 253; the First Assistant spent long periods of time in the county jail lobby "as if he was waiting for someone," *id*. ¶ 255; and the First Assistant started doing some appellate work while Plaintiff was doing appellate work (remotely), *id*. ¶¶ 338-42. None of these allegations, either standing alone or in combination, plausibly suggest harassment by the First Assistant. Accordingly, the Complaint does not allege any failure by the Director to protect Plaintiff from the First Assistant, much less a "conscious failure." *Bohen*, 799 F.2d at 1187.

---

[9] The Complaint alleges that three days earlier, on July 2, 2018, Plaintiff "told the Defender that she would be drawing boundaries with the First Assistant." Compl. ¶ 124. But when asked "if this was 'sexual harassment,' [Plaintiff] said she was not using those words *yet*." *Id*. ¶ 125.

20

Plaintiff also claims that Defendants violated her equal protection rights by "failing to take immediate and effective action on her complaints," Compl. ¶ 498, but that conclusion is unsupported by the factual allegations in the Complaint. *See Iqbal*, 556 U.S. at 678. The Complaint establishes that, based on Plaintiff's August 10, 2018 e-mail report of sexual harassment, the Defender notified the Circuit Executive of Plaintiff's allegations, the Circuit Executive notified Chief Judge Gregory, who promptly ordered an investigation. *Id*. ¶¶ 217, 257-58, 299, 325; *see also id*. ¶¶ 387-88 (alleging that Chief Judge Gregory extended the counseling period at *Plaintiff's* request). Following the investigation, Chief Judge Gregory took disciplinary action. Compl. ¶¶ 484-85. These allegations refute any suggestion that Defendants failed to take immediate and effective action. But even if the Complaint could be construed to allege that a defendant failed to take appropriate action, the Complaint does not allege that any defendant did so because of Plaintiff's gender, which is fatal to Plaintiff's equal protection claim. *See Arlington Heights*, 429 U.S. at 265 (equal protection violation requires intent to discriminate).

Lastly, Plaintiff alleges that Defendants denied Plaintiff equal protection by "failing to provide her with meaningful review or remedies[.]" Compl. ¶ 498. That allegation appears to challenge the Judicial Conference's formulation of the Model EDR Plan and the Fourth Circuit's formulation of its EDR Plan. *See id*. ¶¶ 24-25, 31.[10] Not only has Plaintiff failed to allege facts plausibly suggesting that those plans lack meaningful review or remedies, but Plaintiff also has not alleged that any defendant promulgated the plans with an intent to discriminate against Plaintiff or female judiciary employees generally. Likewise, although Plaintiff alleges that the Judicial Conference of the United States adopted a new model EDR plan sometime after Plaintiff left the

---

[10] To the extent that the allegation is also directed towards Chief Judge Mauskopf, the complaint contains no allegation of any conduct by her or by or the Judicial Resources Committee that she chairs, as discussed above.

FPD-WDNC, *id*. ¶¶ 465-70, and that the new plan "did not address the problems with EDR remedies that Roe had raised," *id*. ¶ 470, Plaintiff does not allege that any defendant adopted the new plan with an intent to discriminate. Moreover, Plaintiff plainly lacks standing to challenge changes to the judiciary's employment dispute resolution processes that occurred *after* the resolution of her administrative claims, and which therefore could not possibly have caused any "actual or imminent" injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Accordingly, the Court should dismiss Plaintiff's claim for violation of equal protection.

### C. The Complaint Fails to State a Claim for Violations of 42 U.S.C. §§ 1985, 1986

Finally, Plaintiff also pleads violations of civil rights statutes. Compl. ¶¶ 500-05. But those claims fail under Fourth Circuit precedent. The Fourth Circuit has squarely held "that Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship." *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000) (holding that claim under 42 U.S.C. § 1985 was precluded by the CSRA). "Because 'Congress clearly intended the CSRA to be the exclusive remedy for federal employees,' the comprehensive grievance procedures of the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions." *Id*. In addition, Plaintiff's claims under these statutes fail to allege all elements of the causes of action, *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995), are impermissibly conclusory, *Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) (*en banc*), and are barred by the intracorporate-conspiracy doctrine, *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985). Accordingly, Plaintiff's third and fourth claims for relief should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the complaint.

This the 8th day of June, 2020.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

s/*Joshua Kolsky*
JOSHUA M. KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov


R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone:  (828) 271-4661
Fax:  (828) 271-4327
Email:  Gill.Beck@usdoj.gov

Counsel for Defendants United States of America, Judicial Conference of the United States, Administrative Office of the United States Courts, United States Court of Appeals for the Fourth Circuit, Judicial Council of the Fourth Circuit, the Federal Public Defender's Office, Chief Judge Roslynn R. Mauskopf in her official capacity, Director James C. Duff in his official capacity, Federal Public Defender Anthony Martinez in his official capacity, General Counsel Sheryl L. Walter in her individual and official capacity, Chief Judge Roger L. Gregory in his individual and official capacity, and James N. Ishida, in his individual and official capacity.