145 F.3d 1325
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. See CTA4 Rule 32.1.
United States Court of Appeals, Fourth Circuit.

Michael KOSTISHAK, Plaintiff-Appellant,

v.

Paul MANNES, Chief Judge; James F.
Schneider, Bankruptcy Judge; E. Stephen Derby,
Bankruptcy Judge, Defendants-Appellees.

No. 97-1500.
|
Argued March 5, 1998.
|
Decided April 22, 1998.

Appeal from the United States District Court for the District
of Maryland, at Greenbelt, (CA-95-2788-PJM); Robert R.
Merhige, Jr., Senior District Judge, sitting by designation.

**Attorneys and Law Firms**

ARGUED: Joel Paul Bennett, LAW OFFICES OF JOEL P.
BENNETT, P.C., Washington, D.C., for Appellant.

Kaye A. Allison, Assistant United States Attorney, Baltimore,
Maryland, for Appellees.

ON BRIEF: Lynne A. Battaglia, United States Attorney,
Baltimore, Maryland, for Appellees.

Before MURNAGHAN, Circuit Judge, KEELEY, United
States District Judge for the Northern District of West
Virginia, sitting by designation, and MOON, United States
District Judge for the Western District of Virginia, sitting by
designation.

OPINION

PER CURIAM:

**\*1** A former Bankruptcy Clerk, Michael Kostishak, brought
suit against Bankruptcy Judges Mannes, Schneider and
Derby for various claims challenging his forced resignation.
Kostishak pursued these claims through the administrative

process of the Model Equal Employment Opportunity Plan
adopted for the District of Maryland. His claims were denied
by then-Chief Judge Black, and his appeal to the Judicial
Council of the Fourth Circuit was also denied. Kostishak then
brought this suit in district court, where it was dismissed on
summary judgment. Kostishak has appealed the dismissal to
us. Because we believe that an adequate alternative remedy
existed for the vindication of Kostishak's constitutional rights,
to the extent that he has alleged a violation of those rights, we
affirm the grant of summary judgment.

I.

After two years of borderline performance reviews,
Bankruptcy Judge Mannes asked Michael Kostishak, the
Clerk of the United States Bankruptcy Court for the District
of Maryland, to tender his resignation. Kostishak resisted,
and Judge Mannes thereafter contacted the other Bankruptcy
Judges, who all signed a letter terminating Kostishak.

Kostishak claimed that his termination was not due to poor
work performance, but rather was discrimination. He alleged
that the firing was done in retaliation against him because
he intended to serve as a witness for another Bankruptcy
Court employee who claimed racial discrimination by
Judge Mannes. Kostishak also claimed that the firing
was discrimination based upon his age (60) and disability
(hypertension).

Because Title VII of the Civil Rights Act of 1964, the
Age Discrimination in Employment Act of 1967 and the
Americans With Disabilities Act of 1990 do not apply
to judicial branch employees, Kostishak did not sue for
the alleged discrimination. Instead he filed administrative
claims pursuant to the court's Equal Employment Opportunity
(EEO) Plan. The EEO coordinator, Joseph Haas, reviewed
Kostishak's complaint and the Judges' response and found
Kostishak's claims to be meritless.

Kostishak requested review of this determination by Chief
Judge Black of the District of Maryland. Chief Judge Black
reviewed the claims based on the filings, without interviewing
Kostishak or conducting a hearing. Chief Judge Black agreed
with Haas that the claim was meritless and wrote a letter
to Kostishak in which he explained his findings. Kostishak
appealed to the Judicial Council for the Fourth Circuit, who
denied his appeal in a two-sentence letter.



DEFENDANT'S
EXHIBIT
A

Case 1:20-cv-00066-WGY   Document 52-1   Filed 07/16/20   Page 1 of 5

Kostishak then brought this complaint in federal district court, alleging a *Bivens* claim for discrimination, deprivation of property and liberty without due process of law, and violation of First Amendment rights. The district court dismissed some of the claims and granted summary judgment as to the others. Kostishak brings this appeal.[1]

II.

A.

The district court correctly granted summary judgment on Kostishak's discrimination claims. Kostishak asserts that the Bankruptcy Judges forced him to resign in retaliation for his participation as a witness to another employee's claim for racial discrimination, or alternatively as discrimination against him because of his age (he was 60 at the time).[2] Because neither Title VII of the Civil Rights Act of 1964 nor the Age Discrimination in Employment Act of 1967 ("ADEA") apply to employees of the federal judiciary, Kostishak brings his claims directly under the Constitution, as a *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), action for deprivation of Fifth Amendment rights. We will not fashion a *Bivens* remedy, however, if Congress has explicitly provided that an equally effective statutory remedy is exclusive, or if there are other "special factors counselling hesitation." *United States v. Stanley,* 483 U.S. 669, 678, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

**\*2** In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court "held that the Due Process Clause of the Fifth Amendment gave [the plaintiff] a federal constitutional right to be free from official discrimination and that she had alleged a federal cause of action," *Bush v. Lucas,* 462 U.S. 367, 376-77, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (citing ---- *Davis* ). However, "[i]n reaching the conclusion that an award of damages would be an appropriate remedy, [the Court] emphasized the fact that no other alternative form of judicial relief was available." *Id.* at 377. On the other hand, where Congress has established an adequate alternative remedial scheme for the vindication of constitutional rights, the Court has refused to extend a *Bivens* remedy, even if the Congressional scheme is not as effective as a *Bivens* remedy would be. *See id.* at 388-90; *Schweiker v. Chilicky,* 487 U.S. 412, 425-27, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). The establishment of such a scheme is a "special

factor" that counsels hesitation before we imply a judicially created remedy. *See McCarthy v. Madigan,* 503 U.S. 140, 151-52, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

Noting that Congress had specifically decided not to apply Title VII to the federal judiciary,[3] *see* Congressional Accountability Act of 1995, Pub.L. No. 104-1 (1995), 2 U.S.C. §§ 1301, 1434, the district court refused to imply a *Bivens* remedy because Kostishak had an adequate alternative remedy: Kostishak could file an administrative complaint pursuant to the Equal Employment Opportunity Plan promulgated by the Judicial Council for the Fourth Circuit and, if his administrative complaint were successful, he could pursue a claim for damages under the Back Pay Act, 5 U.S.C. § 5596. The district court found that the EEO plan and Back Pay Act provided an adequate, if not equally as effective, remedy for Kostishak's alleged deprivation of rights. *Compare Garcia v. Williams,* 704 F.Supp. 984, 988-92 (N.D.Cal.1988) (before revision of the Back Pay Act, holding that a judicial branch employee had no effective remedy for discrimination and there were no other special factors counselling hesitation, and therefore allowing a *Bivens* claim for discrimination), *with Fultz v. Waldron,* 1994 WL 146361, \*4-\*7 No. 93-891 (D.N.J. April 19, 1994) (refusing to recognize a *Bivens* claim for discrimination, and distinguishing *Garcia,* after the Back Pay Act had been revised to allow damages for violations found under the Equal Employment Opportunity plan).

**\*3** Kostishak objects that the procedures provided by the Equal Employment Opportunity Plan and the Back Pay Act are not adequate to protect his rights because they do not provide "the opportunity for a due process hearing before an independent adjudicator." Brief of Appellant at 8. He argues that "a paper appeal to the supervisors of the discriminating officials without any right to discovery, was woefully inadequate." *Id.*

Although affording a hearing would have been preferable, we do not believe that one is necessary in every case for the EEO procedure to be constitutionally adequate. It is important to note that the EEO plan does provide for a hearing if "the Chief Judge or a designee finds that a hearing is necessary." At such a hearing, each party has the right to representation, to present evidence and to cross-examine adverse witnesses. But where the evidence is uncontested or clear enough that the Chief Judge or his designee can fairly review the merits of

2

the complaint without such a hearing, the Constitution does not demand that one be held.

Even in Title VII or ADEA cases, if the facts are uncontested, a judge may find for a claimant or dismiss a claim as a matter of law on summary judgment. Here, Judge Black found that

> The only evidence of ... retaliation [for Kostishak's role as a witness to the racial discrimination charge] is the proximity of these events [Kostishak's firing] to the filing of the [racial discrimination] complaint. Any inference to be drawn therefrom is far outweighed by a review of the entire record reflecting [Kostishak's] deficiencies in the operation of the office....

And Kostishak had "presented no evidence whatsoever to indicate that [his] age played any part in the actions by the Court other than the fact that [his] successor is younger than[he.]"[4] These findings by Chief Judge Black are equivalent to a finding by a judge in a Title VII or ADEA case that Kostishak had not offered sufficient evidence to make out a prima facie case of retaliation or discrimination, and that he could not offer any evidence to rebut his employer's proffered non-discriminatory justification. In such a situation Kostishak would not be entitled to a trial-type hearing, but would lose on summary judgment. We find it inappropriate to hold that the EEO plan's dismissal of these claims without a hearing was constitutionally inadequate in the circumstances presented.

B.

Kostishak also alleges that his due process rights were violated because he was deprived of his job without being afforded a hearing. However, the "procedural safeguards encompassed by the due process clause extend to appellant's continued employment only if [he] had a property interest in that employment." *Pittman v. Wilson County,* 839 F.2d 225, 226-27 (4th Cir.1988). Kostishak's claim in his complaint that he "has a property right in his continued employment with the Bankruptcy Court, pursuant to the Fifth Amendment to the United States Constitution," is incorrect.

**\*4** Kostishak has not alleged that he had any employment contract or any promise of tenure. Apparently he is an employee at will. Mere subjective expectation of continued employment, *see Perry v. Sindermann,* 408 U.S. 593, 603 (1972), or longevity of employment, *see McNeill v. Butz,* 480 F.2d 314, 320 (4th Cir.1973), do not support a cognizable property interest under the Constitution. "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry,* 408 U.S. at 601. Because Kostishak has alleged no such rules or mutually explicit understandings, this claim was properly dismissed.

C.

Kostishak also alleges a deprivation of liberty without due process. In his complaint, Kostishak asserts that he "has a liberty right pursuant to the Fifth Amendment to the United States Constitution to hold employment and to seek employment free of the stigma of false and defamatory information being disseminated about him." The Supreme Court has recognized that:

> liberty might be implicated if the state made charges against the employee which "might seriously damage his standing and associations in his community," as, for example, accusations of dishonesty, disloyalty, or immorality. Thus, "liberty" is implicated and procedural due process is required when government action threatens an employee's good name, reputation, honor, or integrity. Secondly, the Court explained that government dismissal may abridge liberty if it imposes a "stigma or other disability" which forecloses a discharged employee's freedom to take advantage of other employment opportunities.

*McNeill,* 480 F.2d at 319. Kostishak asserts in his complaint that he has been damaged by the "stigmatization of his name and reputation," and that he has suffered "emotional distress, humiliation and personal indignity resulting from [his] loss of employment and the loss of his good name." These assertions are too vague and general to support a claim.

The Fourth Circuit addressed a similar situation in *Ogilbee v. Western District Guidance Center, Inc.,* 658 F.2d 257 (4th Cir.1981). There we observed that "[b]y means of his allegation that '[p]laintiff's termination has damaged the plaintiff's reputation and good name,' [the plaintiff]'s complaint might broadly be construed to claim deprivation of

a liberty interest." *Id.* at 258 (second alteration in original). However, the plaintiff in *Ogilbee* had not alleged any specific act of defamation nor any public disclosure of the reasons for the adverse employment action taken against him. The Fourth Circuit therefore concluded that:

> **\*5** [plaintiff]'s complaint suggests only that, as a result of the mere act of his termination, some unspecified damage to his reputation has occurred. This suggestion, without more, is not sufficient ... to allege deprivation of a liberty interest.

*Id.* at 259.

The same is true here. Kostishak did not allege that his employer made public the reasons for, nor even the fact of, his termination. *See Wooten v. Clifton Forge School Bd.,* 655 F.2d 552, 555 (4th Cir.1981) (explaining that a plaintiff must allege public disclosure of the reasons for his discharge to support a claim that such discharge deprived him of a liberty interest in his reputation). Even if he had alleged that the reasons for his termination were made public, published comments must include charges of serious character defects to be the basis for a claim of infringement of a liberty interest. *See Robertson v. Rogers,* 679 F.2d 1090, 1092 (4th Cir.1982). Kostishak did not meet this burden, and thus the claim was properly dismissed.

### D.

Finally, summary judgment was appropriate against Kostishak regarding his allegation of infringement of his First Amendment right to free speech. To demonstrate termination in violation of the First Amendment, a public employee must comply with the two-pronged test set forth in *Hanton v. Gilbert,* 36 F.3d 4, 6-7 (4th Cir.1994). First, he must show that his speech related to matters of public interest and that his interest in expression outweighed his employer's interest in the efficient operation of the workplace. Second, he must demonstrate that his protected speech was a substantial factor in his employer's decision to terminate him. Although he may be able to pass the first prong, Kostishak cannot satisfy the second prong. And even if he could, the bankruptcy judges would be qualifiedly immune from suit for any First Amendment violation.

The United States complains that Kostishak cannot meet the first prong of the *Hanton* test because his speech was not on a matter of public concern. The government argues that "a public employee's expression of grievances concerning his own employment is not a matter of public concern," Brief of Appellee at 21 (quoting *Huang v. Board of Governors of the Univ. of North Carolina,* 902 F.2d 1134, 1140 (4th Cir.1990)). The government further argues that because Kostishak was the supervisor of the employee who was allegedly discriminated against, Kostishak's speech was merely a "mandated responsibility" of his job. Therefore, we are urged not to "constitutionalize the employee grievance" by holding that the speech is on a matter of public concern. Brief of Appellee at 20.

However, the speech for which Kostishak alleges he is being retaliated against is much more than a grievance about his own employment: Kostishak has alleged in his affidavit that he not only discussed the discrimination with his subordinate, but that he "will act as a witness on [her] behalf in that matter." Taking the facts presented in the light most favorable to the non-moving party, Kostishak has alleged that he was terminated in retaliation for his intent to act as a witness in administrative or judicial proceedings. Such speech clearly relates to matters of public concern.

**\*6** The second half of the first prong of the *Hanton* test requires us to balance the employee's interest in the speech against the employer's interest in controlling his workplace. Only if Kostishak's interest outweighs the government's will the First Amendment protect his speech. Kostishak's brief does not provide any context for his speech-for example, it does not explain what exactly it was that he witnessed to be discrimination, nor under what circumstances he would have to serve as a witness on behalf of his subordinate. On this skimpy record, and without any argument on Kostishak's behalf, we must make the "subtle, difficult to apply, and not yet well-defined" balancing called for by this part of the *Hanton* test. *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995).

Additionally, we must keep in mind that, because this "particularized balancing" is so difficult even in a case where the record is fully developed, a public employer will usually deserve qualified immunity in such cases. *Id.* "[O]nly infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected." *Id.* Even if we could make the

required balancing in this case, we would find that Judges Mannes, Schneider and Derby were qualifiedly immune for their actions.

The second prong of the *Hanton* test requires a showing that the employee's "protected speech was a substantial factor in [his] employer's termination decision." 36 F.3d at 7. To avoid summary judgment, Kostishak must have demonstrated by admissible evidence that there was a genuine issue of material fact in this regard. Kostishak did not meet this burden.

The government asserts, and the record demonstrates, that Kostishak's poor management of the Bankruptcy Clerk's Office had been a source of contention between himself and the Bankruptcy Judges for the two years leading up to his termination. Kostishak may not merely rely on the assertions in his complaint that he was fired in retaliation for his speech, but he must offer some admissible evidence demonstrating that there is a genuine issue for trial. He offered nothing of the kind. The only affidavit in the record relevant to this question is Kostishak's 5-sentence affidavit, J.A. at 265-66, in which he explains that he will act as a witness in the matter of the racial discrimination of his subordinate. There is no affidavit or other admissible evidence in the record suggesting that Kostishak's protected speech played any role, much less a "substantial" one, in the decision to fire him. Summary judgment was therefore appropriate because Kostishak did not carry his burden of demonstrating a genuine issue for trial in this regard.

### III.

The district court held that there was an adequate remedial scheme and thus no *Bivens* claim was appropriate for Kostishak's discrimination claims. The holding did not dispose of Kostishak's other Due Process and First Amendment causes of action, but because he failed to introduce any evidence demonstrating a genuine issue for trial regarding these claims, they were properly dismissed. The judgment of the district court is, therefore,

**\*7** *AFFIRMED.*

1  Kostishak does little to advance his appeal through his brief. In his "argument," the entire body of which totals only five pages, he merely sets forth at length the standards for granting summary judgment and then conclusorily asserts that the standards were not met. He does not explain what genuine issues of material fact he believes he has demonstrated; in fact, he never even states what his claims *are,* much less makes any actual arguments about them.

Kostishak asserts in his brief that he was *pro se* below and thus we should be more forgiving than we normally would be before dismissing his case. The assertion is simply not true: Kostishak was *not pro se* before the district court, but rather was represented by the same attorney who represents him now on appeal. *See* J.A. at 12 (complaint); J.A. at 236 (plaintiff's opposition to defendant's motion to dismiss or, in the alternative, for summary judgment). Nor was Mr. Kostishak *pro se* during the administrative proceeding; in fact he explained on his original complaint of discrimination that he was represented by another attorney. J.A. at 36.

2  Apparently, Kostishak has abandoned the disability-discrimination claim he earlier pursued.

3  The same is true of the ADEA.

4  Additionally, "[h]andicap discrimination could not have been the basis for the adverse personnel actions taken against [him] since [his] alleged handicap was unknown to the Court at the time of the adverse actions...."

### All Citations

145 F.3d 1325 (Table), 1998 WL 196607

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.