IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

JANE ROE,                                    )
                                             )
         Plaintiff,                          )
                                             )
v.                                           )
                                             )
UNITED STATES OF AMERICA, et al.,            )
                                             )
         Defendants.                         )

## DEFENDANTS' REPLY BRIEF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................... iii

INTRODUCTION ....................................................................1

    A.    The judicially implied *Bivens* remedy should not be extended to
this new context because special factors counsel hesitation ...................1

        1.    Contrary to Plaintiff's argument, this case presents
a "new *Bivens* context" ....................................................1

        2.    Special factors counsel against implying a *Bivens* cause of action ............5

            a.    Judicial branch federal employment is a special factor ..................6

            b.    Judicial independence is a special factor .........................................8

            c.    Judicial Council and Judicial Conference policies are
special factors..................................................................9

            d.    The Fourth Circuit's Plan is a special factor................................10

    B.    Absolute and Qualified Immunity Bar This Lawsuit.............................13

        1.    Plaintiff's argument that Chief Judge Gregory is not entitled
to absolute immunity ignores *Butz v. Economou* which
extends absolute immunity to administrative adjudications ...................13

        2.    Plaintiff fails to apply the two-part qualified immunity test....................14

            a.    Step One:  Plaintiff fails to allege plausibly that
Defendants personally violated the law .........................................15

Case 1:20-cv-00066-WGY   Document 53   Filed 07/17/20   Page 1 of 27

(1) Plaintiff fails to allege plausibly that Defendants personally violated her constitutional rights .....................15

(2) Plaintiff fails to allege plausibly that Defendants personally violated 42 U.S.C. § 1985(3) and § 1986.........18

b. Step Two: Plaintiff identified no clearly established law personally violated by any Defendant ...........................................................21

CONCLUSION.....................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*A Soc'y Without a Name v. Commonwealth of Va.*,
  655 F.3d 342 (4th Cir. 2011) ................................................................ 19, 20
*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .............................................................................. 21
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................... 3, 15, 17
*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) ........................................................................ passim
*Blankenship v. McDonald*,
  176 F.3d 1192 (9th Cir. 1979) ............................................................ 7, 8
*Bolton v. Colvin*,
  674 F. App'x 282 (4th Cir. 2017) .......................................................... 18
*Booker v. South Carolina Dept. of Corrections*,
  855 F.3d 533 (4th Cir. 2017) ...................................................... 14, 15, 16, 21
*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ............................................................................. 7
*Buschi v. Kirven*,
  775 F.3d 1240 (4th Cir. 1985) ............................................................... 20
*Bush v. Lucas*,
  462 U.S. 367 (1983) ......................................................................... 8, 11
*Butz v. Economou*,
  438 U.S. 478 (1978) ............................................................................ 13
*Chappell v Wallace*,
  462 U.S. 296 (1983) ............................................................................. 8
*City of Escondido, Cal. V. Emmons*,
  -- U.S. --, 139 S.Ct. 500 (2019) .......................................................... 15
*Cleavinger v. Saxner*,
  47 U.S. 193 (1985) .............................................................................. 14
*D.C. v. Wesby*,
  138 S.Ct. 577 (2018) ........................................................................... 14
*Davis v. Passman*,
  442 U.S. 228 (1979) ...................................................................... 1, 2, 7
*Doe v. Meron*,
  929 F.3d 153 (4th Cir. 2019) ................................................................. 1
*Dotson v. Griesa*,
  398 F.3d 156 (2d Cir. 2005) ........................................................ 6, 7, 9, 10, 11
*Drone v. Duff*,
  2017 WL 6383607 (E.D.Va. 2017) ......................................................... 11
*Gooden v. Howard County*,
  954 F.2d 960 (4th Cir. 1992) ................................................................. 20

iii

*Hall v. Clinton,*
   235 F.3d 202 (4th Cir. 2000) ..................................................................... 8, 10, 18
*Hannah v. Larche,*
   362 U.S. 420 (1960) ............................................................................................ 12
*Hurd v. Hodge,*
   334 U.S. 24 (1948) ............................................................................................. 16
*Kisela v. Hughes,*
   -- U.S. --, 138 S.Ct. 1148 (2018) ........................................................................ 15
*Kostishak v. Mannes,*
   145 F.3d 1325, 1999 WL 196607 (4th Cir. 1998) ...................................... 8, 11, 13
*Lee v. Hughes,*
   145 F.3d 1272 (11th Cir. 1998) ............................................................................. 7
*Lissau v. Southern Food Service, Inc.,*
   159 F.3d 177 (4th Cir. 1998) ............................................................................... 17
*Murray's Lessee v. Holboken Land & Imp. Co.,*
   59 U.S. 272 ......................................................................................................... 16
*Pearson v. Callahan,*
   555 U.S. 223 (2009) ............................................................................................ 14
*Planas v. LaMoutte,*
   2015 WL 5568015 (D. P.R. 2015) ....................................................................... 10
*Reichle v. Howard,*
   566 U.S. 658 (2012) ............................................................................................ 14
*Schweiker v. Chilicky,*
   487 U.S. 412, 423 (1988) .................................................................................... 10
*Simmons v. Poe,*
   47 F.3d 1370 (4th Cir. 1995) ............................................................................... 19
*Trerice v. Summons,*
   755 F.2d 1081 (4th Cir. 1985) ....................................................................... 18, 19
*Tun-Cos v. Perrotte,*
   922 F.3d 514 (4th Cir. 2019) ........................................................................ passim
*White v. Pauly,*
   137 S. Ct. 548 (2017) .......................................................................................... 21
*Whitman v. Dep't of Transp.,*
   547 U.S. 512 (2006) .............................................................................................. 7
*Wilson v. Layne,*
   526 U.S. 603 (1999) ............................................................................................ 15
*Ziglar v. Abbasi,*
   137 S.Ct. 1843 (2017) ................................................................................... passim
*Zimbelman v. Savage,*
   228 F.3d 367 (4th Cir. 2000) .......................................................................... 8, 11

**Statutes**

5 U.S.C. § 2302(d) ..................................................................................................... 8
29 U.S.C. § 79 ............................................................................................................ 8
29 U.S.C. § 206(d) ..................................................................................................... 8
29 U.S.C. §§ 631 ........................................................................................................ 8

Case 1:20-cv-00066-WGY   Document 53   Filed 07/17/20   Page 4 of 27

42 U.S.C. § 1985(3) ................................................................................ ii, 5, 18, 20

42 U.S.C. § 2000e-16 .......................................................................................... 8

42 U.S.C. §§ 1983 ............................................................................................. 19

42 U.S.C. §§ 1985 ............................................................................................... 2

Pub.L.No. 95-454 ............................................................................................... 7

U.S.C. § 1985(1) .............................................................................................. 18

U.S.C. § 1985(3) .............................................................................................. 21

## I.  INTRODUCTION

Defendants Chief Judge Roger L. Gregory, Circuit Executive James N. Ishida, and General Counsel Sheryl L. Walter, in their individual capacities ("Defendants"), hereby reply to Plaintiff's Response in Opposition to the Individual Capacity Defendants' Motions to Dismiss (Doc. 48) ("Opp.") and request dismissal of this lawsuit.

A.  **THE JUDICIALLY IMPLIED *BIVENS* REMEDY SHOULD NOT BE EXTENDED TO THIS NEW CONTEXT BECAUSE SPECIAL FACTORS COUNSEL HESITATION.**

1.  **Contrary to Plaintiff's argument, this case presents a "new *Bivens* context."**

Plaintiff argues that this case does not differ in a "constitutionally meaningful way" from *Davis v. Passman,* 442 U.S. 228 (1979).  In particular, relying upon Title VII case law and various secondary materials, Plaintiff argues that "[i]t makes no difference that the facts of this case involve a constructive discharge based on sexual harassment rather than a termination based on sex."  Opp., 13-15.  To determine whether a case presents a "new *Bivens* context," however, courts must determine "new context" solely by reference to the Supreme Court's own decisions implying private rights of action.  *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017); *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th Cir. 2019), *cert. denied*, 2020 WL 1496627 (2020); *Doe v. Meron,* 929 F.3d 153, 168 (4th Cir. 2019).  Application of the *Abbasi* framework reveals that this case is "meaningfully different" from *Davis*, presents a "new *Bivens* context," and "special factors counsel hesitation in the absence of affirmative action by Congress."  *See Abbasi*, 137 S.Ct. at 1843; *Tun-Cos*, 922 F.3d at 522; *Meron*, 929 F.3d at 168.

*Davis* dealt with a narrow and specific Fifth Amendment Due Process Clause gender discrimination claim in which a Congressman stated in a letter that "although Davis was 'able,

1

energetic, and a very hard worker,' he had concluded 'that it was essential that the understudy to my Administrative Assistant be a man,'" *Davis*, 442 U.S. at 231. Here, by contrast, Plaintiff asserts Fifth Amendment Due Process and Equal Protection claims, as well as claims under 42 U.S.C. §§ 1985 and 1986, alleging broad-based, unprecedented claims of conspiracy within the Judicial Branch to commit sexual harassment, retaliate, and discriminate based on gender. Unlike the discrete, specific discriminatory act of firing in *Davis*, Plaintiff attempts to import Title VII employment concepts of *quid pro quo* and amorphous claims of employer-imputed sexual harassment into her overarching conspiracy theory involving high-level officials, including the Chief Judge of the Fourth Circuit Court of Appeals, the Chief Judge of the United States District Court for the Eastern District of New York, the Director of the Administrative Office of U.S. Courts, and eight other Defendants, including the United States, the Fourth Circuit Court of Appeals, and the Judicial Conference of the United States. The difference between the specificity of *Davis* and the generality of Plaintiff Roe's vast conspiracy claims could hardly be more profound and "constitutionally meaningful." *See Abbasi*, 137 S.Ct. at 1843; *Tun-Cos*, 922 F.3d at 522.

Additionally, Plaintiff's attempt to re-package her claim against Defendants as a claim for sexual harassment and retaliation belies the fact that her claims against Defendants relate to their handling of the Employment Dispute Resolution ("EDR") process, the Judiciary's administrative process for employment claims such as constructive discharge and sexual harassment. Put simply, Defendants were not Plaintiff's employer, the allegations against Defendants relate to events that purportedly occurred after the underlying alleged sexual harassment and retaliation by Plaintiff's employer, and they occurred while Defendants were fulfilling their duties under the EDR Plan. During all relevant times giving rise to Plaintiff's claims, Defendants had no employment

2

relationship with Plaintiff, which provides another constitutionally meaningful difference from *Davis*. *See Tun-Cos*, 922 F.3d at 522.

While apparently recognizing the fatal absence of any employment relationship between Defendants and Plaintiff, and unable to "plead that each Government-official defendant, through the official's own actions, has violated the Constitution, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), Plaintiff asserts an unsupported "conspiracy" theory. In *Abbasi,* the Supreme Court specifically stated that "the generality or the specificity of the official action" is one of those "differences that are meaningful enough to make a given context a new one." *Abbasi*, 137 S.Ct. at 1859-60.

While *Davis* dealt with a Congressman-employer, this case deals with "a new category of defendants" – non-employer Judiciary officials – a Circuit Chief Judge acting in his capacity as the judicial officer presiding over Plaintiff's administrative EDR claim, a Circuit Executive acting in his capacity as the EDR Coordinator, coordinating the administrative EDR process, and the General Counsel of the Administrative Office of the U.S. Courts, acting in her legal capacity as the entity responsible for providing legal guidance and support to courts on administrative matters such as the EDR process. The "*Abbasi* Court 'refused to extend *Bivens* to any . . . new category of defendants,'" and pointed out categories that had been found to be meaningfully distinct from the three *Bivens* cases, such as federal employers, military officers, Social Security officials, a federal agency, a private prison operator, Bureau of Land Management officials, and prison guards at a private prison. *Tun-Cos*, 922 F.3d at 525 (citing *Abbasi*, 137 S.Ct. at 1857). In *Tun-Cos*, the Fourth Circuit found a meaningful difference between the Executive Branch narcotics officers in *Bivens* and the ICE officers in *Tun-Cos*, even though both were Executive Branch law enforcement officers. *Tun-Cos*, 922 F.3d at 525. A "new category of defendants" – federal Judiciary officials

3

– is therefore, under the logic of *Abbasi* and *Tun-Cos,* meaningfully distinct from the Legislative Branch's Congressman. *Tun-Cos*, 922 F.3d at 525 (citing *Abbasi*, 137 S.Ct. at 1857). This new category of defendants is new, not just because they are judicial officials, but also because they are not the alleged primary tortfeasors or even in a traditional supervisory relationship as in *Davis*.

While, for the *Davis* plaintiff, it was "damages or nothing," Roe had an existing, alternative process under the Fourth Circuit's EDR Plan ("Plan") in which, following mediation, she obtained a Fourth Circuit clerkship, and under the Plan could have requested a hearing before the Chief Judge and sought review of the hearing decision under procedures established by the Judicial Council of the Circuit. Plan, Ch. X, § 1(B) – (C). As explained in Defendants' Memoranda, the Plan provides an alternative, existing process, which constitutes a "constitutionally meaningful" difference from the *Davis* plaintiff. *See* Doc. 37 at 19-21, Doc. 39 at 18-20, Doc. 41 at 17-19.

The *Abbasi* Court also provided a non-exhaustive list of "constitutionally meaningful differences," which further underscore that this case is distinguishable from *Davis*:

> The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the **rank of the officers involved**; the **constitutional right at issue**; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; **the statutory or other legal mandate under which the officer was operating**; **the risk of disruptive intrusion by the Judiciary into the functioning of other branches**; or **the presence of potential special factors that previous *Bivens* cases did not consider**.

*Abbasi*, 137 S.Ct. at 1859-60 (emphasis added). Plaintiff ignores the other constitutionally meaningful differences, including: (1) rank of officers involved (in *Davis*, the case involved a Congressman, whereas this case involves the Circuit Chief Judge, Circuit Executive, and General

Counsel); (2) different constitutional rights at issue (in *Davis*, the case involved a Fifth Amendment Due Process Clause claim, whereas this case also involves claims under the Fifth Amendment Equal Protection Clause; (3) the statutory or legal mandate under which the officials operated (unlike *Davis,* this case involves the Fourth Circuit's Plan); (4) the Civil Service Reform Act ("CSRA") (in *Davis*, the Court did not address the CSRA, whereas in this case the CSRA is directly at issue as supported by Second, Fourth, Ninth, and Eleventh Circuit decisions); (5) judicial independence (in *Davis,* the case involved an internal Congressional personnel decision with no risk to judicial independence, whereas in the present case the Plaintiff argues that the Court should invalidate the Fourth Circuit's Plan which manages internal judiciary matters); (6) policy challenges (in *Davis*, the case did not present policy issues, whereas in the present case Plaintiff challenges the Fourth Circuit's Plan by seeking to hold the Chief Judge, Circuit Executive, and General Counsel personally liable in damages for the policies of the Judicial Council of the Fourth Circuit and Judicial Council of the United States); and (7) the role of the General Counsel in promoting compliance with the law (in *Davis*, the role of the General Counsel was not at issue, whereas in the present case the Plaintiff seeks to convert the relationship between the General Counsel and the Judiciary into a basis for *Bivens* liability). The Supreme Court emphasized that "the new-context inquiry is easily satisfied." *Abbasi*, 137 S.Ct. at 1865. For the aforementioned reasons, and for the reasons set forth in the Defendants' memoranda, Doc. 37 at 11-13, Doc. 39 at 11-14, Doc. 41 at 11-13, *Davis* is not controlling, constitutionally meaningful differences exist between *Davis* and this case, and where a new *Bivens* context is presented, special factors must be considered.

2.      **Special factors counsel against implying a *Bivens* cause of action.**

"In determining whether 'special factors' are present, [courts] focus on whether Congress *might doubt* the need for an implied damages remedy." *Tun-Cos*, 922 F.3d at 525 (quoting *Abbasi*,

5

137 S.Ct. at 1858) (emphasis added). Courts should not extend "the application of *Bivens* to [a] new context [if doing so] *causes [the court] to hesitate*, as it raised the substantial question of whether Congress would want plaintiffs to have a money damages remedy against [federal officials]." *Tun-Cos*, 922 F.3d at 528 (emphasis added). Applying these standards, Plaintiff's arguments fail because, in each instance, there is strong reason to believe that "Congress *might doubt*" the need for an implied damages remedy, and extending the *Bivens* remedy "causes hesitation" as it raises a substantial question of whether Congress would want an unprecedented money damages remedy against a Circuit Chief Judge, Circuit Executive, and the General Counsel for the Administrative Office of U.S. Courts in their supporting roles of the EDR administrative process and not acting as Plaintiff's employer.

a. Judicial branch federal employment is a special factor.

Plaintiff fails to distinguish three circuit court of appeals cases that support Defendants' position that federal employment, in particular, judicial branch federal employment, constitutes a "special factor" precluding implication of a *Bivens* cause of action. Contrary to Plaintiff's position, the Second Circuit's decision in *Dotson v. Griesa*, 398 F.3d 156, 176 (2d Cir. 2005), specifically addresses issues that are central to this case. In considering a probation officer's *Bivens* claim for racial discrimination and denial of due process, the Second Circuit in *Dotson* carefully examined the CSRA's structure and history and determined that "Congress's exclusion of most judicial branch employees from the statutes review procedures was not inadvertent but deliberate." *Dotson*, 398 F.3d at 160 & 163-171. The Second Circuit rested its opinion on (1) the CSRA's comprehensive nature; (2) the CSRA's amendment history; and (3) the Judiciary's comprehensive review process under the model EDR Plan. *Dotson*, 398 F.3d at 169-176. After this comprehensive review of the CSRA's structure and history, the Second Circuit held, "we conclude

6

that judicial branch employees such as *Dotson* no less than other federal employees covered by the CSRA are precluded from pursuing *Bivens* damages actions for adverse employment decisions." *Dotson*, 398 F.3d at 176. The Second Circuit did not "mistakenly conflate discrimination claims with other types of claims," as Plaintiff claims, but specifically denied both *Dotson's* Fifth Amendment discrimination and due process claims because the CSRA precludes *Bivens* claims from "adverse employment decisions." *Dotson*, 398 F.3d at 176.[1]

Plaintiff's attempts to distinguish *Lee v. Hughes*, 145 F.3d 1272 (11th Cir. 1998), also fail. In *Lee*, the Eleventh Circuit carefully examined the interrelationship of *Davis* and the CSRA, and found that "the *Davis* Court did not consider the effect of the CSRA on *Davis's Bivens* claim because the CSRA had been enacted immediately prior to the ruling and the preemptive effect of the Act was not an issue before the Court." *Lee*, 145 F.3d at 1275.[2] Plaintiff also attempts to distinguish the Ninth Circuit's decision in *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1979), but this is similarly unavailing. Plaintiff argues that *Blankenship* only applies to non-discrimination claims; however, the Ninth Circuit's analysis is not so limited. To the contrary, the Ninth Circuit closely evaluated the CSRA and determined that it was an "elaborate remedial system" constructed with "careful attention to conflicting policy considerations." *Id*. The Ninth Circuit noted that while Congress has given judicial employees certain employment benefits and remedies it has withheld other remedies, and this demonstrated that the lack of more complete

---

[1] Attempting to undercut *Dotson*, Plaintiff relies upon *Whitman v. Dep't of Transp.,* 547 U.S. 512, 514 (2006), which is inapposite. That case involved the issue of whether an FAA employee in challenging drug testing could proceed under the CSRA even though he had not exhausted grievance procedures under a CSRA-modified statutory scheme for FAA employees. *Whitman* is not a *Bivens* claim, and its analysis in no way undercuts *Dotson*.

[2] The CSRA went into effect on January 11, 1979, Pub.L.No. 95-454, 92 Stat. 1111 (October 13, 1978). Although the Supreme Court issued its opinion in *Davis* on June 5, 1979, Davis was terminated on July 31, 1974. *Davis*, 442 U.S. at 230. Because the CSRA does not apply retroactively, there was no occasion for the Supreme Court to consider it. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204 (1988).

7

remedies was not inadvertent.  *Id.*  Although a discrimination claim was not before the *Blankenship* Court, the logic of its analysis applies with equal force to *Bivens* claims alleging discrimination.

Plaintiff ignores the seminal Supreme Court case, *Bush v. Lucas*, 462 U.S. 367 (1983),[3] and argues that the Fourth Circuit has limited its CSRA preclusive effect to non-discrimination cases.  Opp., 18.  *Bush* and the Fourth Circuit's CSRA cases, interpreting *Bush*, however, are not based on a discrimination versus non-discrimination distinction, but rather recognize that the CSRA precludes all cases arising out of the federal employment relationship.  *Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000) ("The salient fact is that the wrongful acts . . . arose out of her federal employment, *Bush* and *Zimbelman* dictate that Hall's claim is precluded."); *Zimbelman v. Savage*, 228 F.3d 367, 369 (4th Cir. 2000) (the special factor of plaintiff's federal employment precludes a *Bivens* claim).[4]

<u>b.</u>      <u>Judicial independence is a special factor.</u>

Plaintiff also maintains that judicial independence is not a "special factor" because the doctrines of absolute and qualified immunity are enough, the Judiciary's personnel system is not "special," and "they have no reason to worry if they follow the law."  Opp., 19-20.  These points

---

[3] Plaintiff also ignores *Chappell v Wallace*, 462 U.S. 296, 297 (1983), in which the Supreme Court rejected a *Bivens* claim brought by enlisted sailors against their superior officers alleging unconstitutional racial discrimination in employment matters.  The *Abbasi* Court distinguished and limited *Davis*, observing that *Davis* was "decided before the Court's cautionary instructions with respect to *Bivens* suits," and "the *Chappell* framework . . . now controls."  *Abbasi*, 137 S.Ct. at 1859.

[4] Plaintiff raises a straw man argument regarding Title VII, asserting that Congress left "undisturbed whatever remedies" the employee "might otherwise possess."  Opp., 16.  However, Defendants have never argued that Title VII precluded a *Bivens* action.  Defendants rely on the CSRA's exclusivity.  *See* Doc. 37 at 14-15, Doc. 39 at 14-15, Doc. 41 at 14-15.  Plaintiff also misconstrues the CSRA's exception, 5 U.S.C. § 2302(d), which preserved specified enumerated actions under (1) 42 U.S.C. § 2000e-16 (Title VII); (2) 29 U.S.C. §§ 631, 633a (Age Discrimination in Employment Act); (3) 29 U.S.C. § 206(d) (Fair Labor Standards Act); (4) 29 U.S.C. § 79 (Rehabilitation Act); and (5) discrimination on the basis of marital status or political affiliation.  5 U.S.C. § 2302(d).  Plaintiff's gender discrimination, sexual harassment, and retaliation claims do not fit under any of these exceptions.  *See Kostishak v. Mannes*, 145 F.3d 1325, 1999 WL 196607 *1 (4th Cir. 1998) (Title VII does not apply to the Judiciary) (unpub.).

8

do not raise a substantial argument; accordingly, Defendants rely on their dismissal memoranda that the Judiciary's internal governance system is a corollary to judicial independence, *Dotson*, 398 F.3d at 175, and that the Model EDR Plan was a response to Congress's invitation for the Judiciary to develop its own internal system. *See* Doc. 37 at 15-16, Doc. 39 at 16-17, Doc. 41 at 15-16.

c. <u>Judicial Council and Judicial Conference policies are special factors.</u>

Plaintiff further contends that the Judicial Council and Judicial Conference policies are not "special factors" because she is challenging the execution of the policies, Opp., 21, but in her First Claim for Relief, Plaintiff alleges that the Defendants "[b]y **<u>adopting</u>**, promulgating, and implementing policies and practices" deprived her of meaningful review, Comp., ¶ 495 (emphasis added). Additionally, Plaintiff repeatedly alleges that the EDR Plan was structurally flawed (Comp., ¶¶ 8, 448, 468, 470). Roe's claims as to Chief Judge Gregory relate to his decisions under the Plan; as to Circuit Executive Ishida, his decisions implementing the Plan; and as to General Counsel Walter, her advice regarding the Plan. Plaintiff does not assert that Defendants violated the Plan. Rather, her claims seek to challenge the underlying policies as reflected in the Plan that Defendants executed. Plaintiff's claims against each Defendant are inextricably tied to her dissatisfaction with the policies of the Judicial Conference of the United States and the Judicial Council for the Fourth Circuit as promulgated in the Plan.[5] Defendants rely on their dismissal memoranda that Judicial Council and Judicial Conference policies are special factors precluding the implication of a *Bivens* action. *See* Doc. 37 at 16-18, Doc. 39 at 17-18, Doc. 41 at 16-17.[6]

---

[5] In naming Chief Judge Roslyn Mauskopf as a defendant in her role as the Chair of the Judicial Resources Committee, Plaintiff reflects her dissatisfaction with the policy decisions underlying the 2019 Model EDR Plan. Compl., ¶¶ 469-70.

[6] Plaintiff did not respond to General Counsel's argument that the role of the General Counsel in promoting compliance with the law in providing legal guidance to the Judiciary is a special factor precluding

Plaintiff argues that the Plan is not a special factor; however, Plaintiff's withdrawal of her Chapter X claim and failure to exhaust her remedies under the Plan fatally undermines her argument that the Plan was constitutionally deficient.  Doc. 37 at 19-20, Doc. 39 at 18-20, Doc. 41 at 17-19.[7]   Under the Plan, Plaintiff, after mediation, could have requested a hearing before the Chief Judge and sought review of the hearing decision under procedures established by the Judicial Council of the Circuit. Plan, Ch. X, § 1(B) – (C).

Plaintiff argues that the Plan did not provide the "appropriate remedies" Plaintiff believed it should, Opp., 9; however, the Supreme Court has made clear that the absence of a particular remedy is not dispositive – a special factor counsels hesitation if Congress created an "alternative, existing process for protecting the [injured party's] interest" irrespective of whether that process makes a particular plaintiff whole. *Abbasi*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see also id.* at 1849 ("Congress' failure to provide a damages remedy might be more than mere oversight, and its silence might be more than 'inadvertent.'") (quoting *Schweiker v. Chilicky,* 487 U.S. 412, 423 (1988)).  The Second Circuit, in considering a probation officer's *Bivens* claim for racial discrimination and denial of due process, held:

> [W]e conclude that Congress's decision to exclude judicial branch employees from the administrative and judicial review procedures of the CSRA, and from subsequent legislation, such as the CAA, was not inadvertent, but a conscious and rational choice made and maintained over the years in light of both a proper regard for judicial independence and recognition of the judiciary's own comprehensive review procedures for adverse employment actions, including review by judicial officers.  For all these reasons, we conclude that judicial branch employees such as

_____

implication of a *Bivens* action.  General Counsel Walter incorporates the argument from her dismissal memorandum, Doc. 37 at 18-19, which is unrebutted.

[7] Plaintiff relies on *Planas v. LaMoutte*, 2015 WL 5568015 at *9 (D. P.R. 2015); however, the court held "because *Arroyo-Planas* did not avail herself of the existing administrative means to address her unequal treatment claim under the existing EEOC Plan, the Court is of the opinion that judicial review in this Court is foreclosed to her by the exclusivity of the CSRA."

Dotson . . . are precluded from pursing *Bivens* damages action for adverse employment actions.

*Dotson*, 398 F.3d at 176.

The Fourth Circuit has addressed and rejected the remedy argument Plaintiff is making. In *Hall*, 235 F.3d at 205, the Fourth Circuit stated: "That the CSRA does not provide the remedy she would prefer is of no moment." *See Bush*, 462 U.S. at 388-90 (refusing to allow a *Bivens* action even though existing remedies did not provide complete relief); *Zimbelman*, 228 F.3d at 370-71 (holding that plaintiffs were not released from the exclusive remedial framework of the CSRA when their claims arose from their federal employment even though the CSRA provided plaintiffs with no remedy). As the Second Circuit has explained, the question of preclusion under the CSRA does "not turn on 'the merits of the particular remedy' sought but on 'who should decide' what remedy, if any, should be provided." *Dotson*, 398 F.3d at 166 (quoting *Bush,* 462 U.S. at 380). Accordingly, Plaintiff's focus on the remedy she would prefer is the wrong focus. The proper focus is what did Congress intend, and whether its decision not to extend the CSRA to the Judiciary was intentional or inadvertent. *See Kostishak v. Mannes*, 145 F.3d 1325, 1999 WL 196607 *2 (4th Cir. 1998) (unpub.) (affirming district court's dismissal of bankruptcy clerk's *Bivens* lawsuit against Chief Judge of the Bankruptcy Court, finding that the Fourth Circuit's EDR Plan (formerly Equal Employment Opportunity Plan) was a "special factor" precluding bankruptcy clerk's *Bivens* claim and observing "where Congress has established an adequate remedial scheme for the vindication of constitutional rights, the Court has refused to extend a *Bivens* remedy, even if the Congressional scheme is not as effective as a *Bivens* remedy would be."); *Drone v. Duff*, 2017 WL 6383607 (E.D.Va. 2017) (EDR Plan provided meaningful review).

In support of her contention that the Plan was not a "special factor," Plaintiff asserts that the Plan was not "constitutionally adequate." Opp., 21-22. But nothing in *Abbasi* or the Supreme

Court's other jurisprudence supports such an argument. And again, Plaintiff glosses over the fact that she withdrew her Chapter X claim. Had she continued with the complaint process, the Presiding Judicial Officer would have determined what evidence was necessary to adjudicate the claim, and both parties would have had access to that evidence. Plaintiff had no legal right under the Plan or under the Constitution to know what disciplinary action was taken or the investigation associated with the disciplinary action.[8] The Plan makes clear that Chapter IX cases are separate and distinct from EDR Chapter X proceedings:

> *A report of wrongful conduct is not the same as initiating or filing a claim under this Plan; thus, employees who wish to file an EDR claim relating to any alleged wrongful conduct as defined in Chapter II, § 1 must follow the procedures set forth in Chapter X of this Plan.*

Plan, Chapter IX, p. 7. And because Chapter IX proceedings could result in disciplinary action against the subject of the Complaint, the Plan makes clear that:

> *All individuals involved in the investigation shall protect the confidentiality of the allegations of wrongful conduct to the extent possible. Information and records about the allegations shall be shared on a need-to-know basis.*

Plan, chapter IX, §4, p.8. In fact, to disclose the results of the disciplinary portion of the investigation as Plaintiff suggests would have been a violation of the Plan.

Similarly, Plaintiff had no right to demand that Chief Judge Gregory rule on her disqualification request or take disciplinary action according to her timetable, either under the Plan or otherwise.[9] Plaintiff's criticism that the Plan allowed the Defender to cross-examine her at a

---

[8] Plaintiff cites *Hannah v. Larche*, 362 U.S. 420, 442 (1960), for the proposition that due process protections attach to adjudicative proceedings. *Hannah* did not address rights under an EDR Plan or provide a right to the results of another person's disciplinary proceedings.

[9] Plaintiff's disqualification request did not present a conflict of interest under the EDR Plan because Defendant Martinez represented the employing office. Plaintiff argues at length that the employing office had responsibilities under the Plan to take action, and then argues that the Defender should have been "conflicted out" from representing its interest as an "employer" in an employment matter. Following Plaintiff's argument would have resulted in the First Assistant, who she alleges harassed her, taking

hearing does not set forth a constitutional violation. Plaintiff's argument that the final hearing officer "had no independent legal authority to order remedies against a federal defender office," Opp., 8, 10-12, confuses the authority to effectuate a remedy versus the authority to order a remedy. As with any employment law claim, the judge or hearing officer cannot effectuate an employment action since only an employer can effectuate the ordered employment action. Here, as with any other adjudicatory body, under the Plan, the presiding judicial officer "may order a necessary and appropriate remedy," including placement in a comparable alternative position, reinstatement, promotion, back pay and associated benefits, and equitable relief. Plan, §12. Finally, with regard to Plaintiff's contention that information was improperly shared, she fails to establish a violation of the Plan or otherwise. *Cf. Kostishak*, 145 F.3d 1325, 1999 WL 196607 *3 (upholding Fourth Circuit's EDR Plan against challenge that it was procedurally defective).

**B.** **ABSOLUTE AND QUALIFIED IMMUNITY BAR THIS LAWSUIT.**

   **1.** **Plaintiff's argument that Chief Judge Gregory is not entitled to absolute immunity ignores *Butz v. Economou* which extends absolute immunity to administrative adjudications.**

Plaintiff argues that Chief Judge Gregory is not entitled to absolute immunity regarding his decisions under the Plan. Opp., 23. Plaintiff's argument ignores *Butz v. Economou*, 438 U.S. 478, 512-13 (1978), in which the Supreme Court applied absolute immunity to administrative proceedings, and stated: "We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudications should also be immune from suits for damages."

Under the Supreme Court's decision, a "functional comparability" applies, and absolute immunity attaches here because the Plan involves administrative adjudications. *See Butz*, 438 U.S.

---

responsibility for the Federal Public Defender's Office. In any event, Plaintiff withdrew her Chapter X complaint before Chief Judge Gregory acted on her request.

13

at 512. When the functional comparability test is applied to Chief Judge Gregory's actions under the Plan, which included granting in part and denying in part Plaintiff's motion for continuing the counseling period and his decision *to defer* ruling on the disqualification motion, those actions are functionally comparable to the actions that an Article III judge takes in a court setting and are entitled to absolute immunity. *See Butz*, 438 U.S. at 512.

Plaintiff's contention that absolute immunity is not available because the Plan lacks "procedural safeguards" also fails. The Plan provided substantial procedural protections, Plan, § 10B, and if Plaintiff was dissatisfied with Chief Judge Gregory's actions, she could appeal her decision under the Plan, § 10B. Unlike the prison disciplinary proceeding in *Cleavinger v. Saxner*, 47 U.S. 193, 202 (1985), a case upon which Plaintiff relies, the Fourth Circuit's Plan has robust procedural protections and is distinguishable from a prison disciplinary proceeding. Simply because Plaintiff did not avail herself of the procedural protections does not mean they did not exist.

### 2.      Plaintiff fails to apply the two-part qualified immunity test.

Even apart from absolute immunity, Plaintiff's Opposition ignores the relevant legal inquiry for qualified immunity, arguing simply that Defendants "should already know about sex discrimination based on Judicial Conference policy, EDR plans, and judiciary codes of conduct." Opp., 22. This is not the standard for evaluating qualified immunity, and Plaintiff ignores Supreme Court and Fourth Circuit precedent that require application of the two-step analysis that holds that public officials "are entitled to qualified immunity . . . unless (1) they violated a federal or constitutional right; and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S.Ct. 577, 587 (2018); *Reichle v. Howard*, 566 U.S. 658, 664 (2012); *Booker*

*v. South Carolina Dept. of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017) (applying the same standard).

Although "[c]ourts have discretion to take these steps in either order," *Booker*, 855 F.3d at 538; *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), they do not, as Plaintiff proposes, have discretion to ignore the two-step inquiry and assume that the standard is met because Defendants "should already know about sex discrimination." Opp., 22. The court must apply the two-step inquiry for each defendant. Application of the two-part test reveals that Chief Judge Gregory, Circuit Executive Ishida, and General Counsel Walter did not violate a constitutional right of Plaintiff, much less a "clearly established" one. *City of Escondido, Cal. V. Emmons*, -- U.S. --, 139 S.Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, -- U.S. --, 138 S.Ct. 1148, 1152 (2018) (per curiam)). Plaintiff's unsupported attempt to ignore the relevant legal standard underscores the weakness of her arguments, and qualified immunity bars her claims against Defendants.

> a. <u>Step One: Plaintiff fails to allege plausibly that Defendants personally violated the law.</u>

> > *(1)    Plaintiff fails to allege plausibly that Defendants personally violated her constitutional rights.*

Plaintiff, in her argument opposing qualified immunity, alleges broadly that Chief Judge Gregory, Circuit Executive Ishida, and General Counsel Walter engaged in sexual discrimination, Opp., 22-24, but this broad-brush approach is insufficient because "[a] plaintiff must plead that each Government-official defendant, through the official's individual actions has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff's generalized argument that Defendants "should already know about sex discrimination based on Judicial Conference policy, EDR plans, and judiciary codes of conduct," Opp., 22, has been rejected by the Supreme Court, which has "repeatedly told courts . . . not to

15

define clearly established law at a high level of generality." *Kisela v. Hughes*, -- U.S. --, 138 S.Ct. 1148 (2018) (per curiam). Similarly, the Fourth Circuit has instructed, "we must first define the right at the 'appropriate level of specificity,'" *Booker*, 855 F.3d at 539 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Plaintiff's generalized proposition that Defendants should know what sexual discrimination is does not define the issue at the appropriate level of specificity. *Booker*, 855 F.3d at 539 (citing *Wilson*, 526 U.S. at 615).

Plaintiff does not identify a single case involving the specific context in which any of the Defendants allegedly violated Plaintiff's constitutional rights, but instead argues that Defendants "believe that without a specific case telling them so, they could not have known that sex discrimination violates the law." Opp., 22. But that argument mischaracterizes Defendants' position and Plaintiff's argument directly contradicts the Fourth Circuit direction, which requires that in conducting the clearly established analysis for qualified immunity, the court first examine cases of controlling authority in the Fourth Circuit or a consensus of persuasive authority. *Booker*, 855 F.3d at 538.

Instead of citing controlling authority or a consensus of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm, Plaintiff cites two ancient and irrelevant cases, *Hurd v. Hodge*, 334 U.S. 24, 35-36 (1948), and *Murray's Lessee v. Holboken Land & Imp. Co.*, 59 U.S. 272, 276 (18 How. 272) (1855), for the general principle that the Fifth Amendment applies to the Judiciary. In *Hurd*, the Supreme Court held that judicial enforcement of restrictive covenants that would prohibit a person from owning or occupying property based on race or color violated the Civil Rights Act of 1866. In *Murray's Lessee*, the Court held that a distress warrant issued by the solicitor of the Treasury was constitutional. Neither of these cases address with the appropriate level of specificity whether the

Chief Judge of a Circuit Court, the Circuit Executive, or General Counsel have violated any constitutional duty owed to Plaintiff in these circumstances.

Claims of constructive discharge and sexual harassment are employment law concepts that create employer responsibilities and liabilities, and the cases Plaintiff cites, *Hurd* and *Murray's Lessee,* do not define the constitutional right at issue with regard to the specific context of this case, where a former federal employee is attempting to impose unprecedented personal liability under *Bivens* against individuals who had no employment relationship with Plaintiff at the time of the alleged constructive discharge and sexual harassment. Unless Plaintiff can cite controlling authority or consensus of cases regarding the specific context involved, where a Chief Judge was merely discharging his duties under a Circuit EDR, a Circuit Executive executing his duties under the EDR, or a General Counsel advising judicial officials, qualified immunity attaches regarding constructive discharge, sexual harassment, and other claims.

Chief Judge Gregory, Circuit Executive Ishida, and General Counsel Walter were not Plaintiff's "employer," and Plaintiff cites no controlling authority or consensus of cases where a non-employer violated a non-employee's constitutional rights giving rise to a constructive discharge or sexual harassment, nor is there any such authority supporting any of Plaintiff's other claims. Plaintiff improperly conflates Title VII[10] with constitutional Fifth Amendment claims, concluding that "[i]n evaluating these claims, courts apply the well-established standards developed in similar litigation under Title VII …" Opp., 2.[11] Plaintiff's attempted reliance on Title

---

[10] In fact, applying Title VII would necessarily require dismissal of Plaintiff's claims against the Defendants, as Title VII also does not apply to individual employees since they are not considered "employers" under the statute. *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 178 (4th Cir. 1998) ("employees are not liable in their individual capacities for Title VII violations.").

[11] Relying on Title VII principles, Plaintiff argues that the Federal Public Defender's Office did not meet its employer duties by failing to take remedial action once the alleged harassment stopped. That is the very issue that would have been adjudicated under the Plan had Plaintiff not withdrawn her Chapter X Claim. Plaintiff argues that the Court ignore the Fourth Circuit's Plan and usurp the role of EDR Presiding

17

VII principles, including imputed employer liability for sexual harassment, is contrary to the constitutional tort principle that "each Government official . . . is only liable for his or her own misconduct," *Iqbal*, 556 U.S. at 677.

> ### (2) *Plaintiff fails to allege plausibly that Defendants personally violated 42 U.S.C. § 1985(3) and § 1986.*

Rather than address the controlling decisions of *Hall* and *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985), Plaintiff makes a flawed statutory argument under 42 U.S.C. §§ 1985(3) and § 1986. Plaintiff's argument fails for six reasons.

First, the Fourth Circuit in *Hall* considered and rejected Plaintiff's statutory argument that repeal by implication is disfavored. "Because 'Congress clearly intended the CSRA to be the exclusive remedy for federal employees,' the comprehensive grievance procedures of **the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions**." *Hall*, 235 F.3d at 206 (emphasis added); *Bolton v. Colvin*, 674 F. App'x 282, 290 (4th Cir. 2017) ("[T]he comprehensive grievance procedures of the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions." (internal quotations omitted)) (rejecting APA claim arising out of federal employment relationship). After rejecting the very argument Plaintiff is making, the *Hall* Court announced a broad rule that bars both of Plaintiff's statutory claims: "[W]e hold that Congress intended the CSRA would operate to the exclusion of ***all*** other statutory remedies for claims arising out of the federal employment relationship." *Hall*, 235 F.3d at 206 (emphasis added). While *Hall* dealt with a 42 U.S.C. § 1985(1) claim, the Fourth Circuit's holding applies to ***all*** other statutory remedies for claims arising out of the federal employment relationship, *Id.*, 235 F.3d at 206

_____

Judicial Officer to determine whether the employing office should be liable for the alleged underlying harassment and other acts complained of.

(emphasis added), including Plaintiff's 42 U.S.C. § 1985(3) and § 1986 claims, since they arose out of Plaintiff's federal employment relationship. *See* Compl. ¶1 ("This action seeks relief for the deprivation of constitutional rights suffered by Jane Roe ("Roe") during her employment as a federal judiciary employee.").

Second, Plaintiff's argument regarding her § 1986 claim is foreclosed by *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985), which holds that because a cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985, the dismissal of a plaintiff's § 1985 claim requires the dismissal of a § 1986 claim. *Trerice*, 755 F.2d at 1085. Plaintiff attempts to avoid *Trerice* by citing *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342 (4th Cir. 2011)[12] (hereinafter "*ASWAN*"); however, *ASWAN* does not address *Trerice*, much less overrule it.

Third, although her Complaint is prolix, covering 85 pages and 505 allegations, she fails to allege "concrete supporting facts." Instead, she alleges in a conclusory fashion that a conspiracy existed, which is insufficient as a matter of law. *See Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) ("We have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.").

Plaintiff's conclusory allegations of conspiracy fail to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made. *ASWAN*, 655 F.3d at 347. Allegations that are "insufficient to support a meeting of the minds by the defendants" at most

---

[12] In *ASWAN*, the Fourth Circuit dealt with a homeless advocacy group that argued that the relocation of a homeless shelter from Richmond's downtown community to a remote location was motivated by discriminatory animus in violation of 42 U.S.C. §§ 1983 and 1985(3). The Fourth Circuit affirmed the dismissal of the case and, as to the § 1985(3) claim, held that allegations of parallel conduct and a bare assertion of conspiracy failed to state a claim under § 1985(3). *ASWAN*, 655 F.3d at 347.

amount to allegations of parallel conduct and a bare assertion of a conspiracy, which cannot survive a motion to dismiss. *Id. at 347.* Accordingly, Plaintiff's §§ 1985 and 1986 claims fail because she has failed to adequately plead that Chief Judge Gregory, Circuit Executive Ishida, and General Counsel Walter had a "meeting of the minds" through "specific communications between them," s*ee id. at 347,* because her allegations are impermissibly conclusory. *Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) (*en banc*).

Fourth, Plaintiff has failed to adequately allege unlawful intent regarding her §§ 1985 and 1986 claims. *See Gooden*, 954 F.2d at 969-70. "To avoid evisceration of qualified immunity, courts have thus required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) . . . plead specific facts in a nonconclusory manner to survive a motion to dismiss." *Id.* at 969-70. Plaintiff has failed to plead facts plausibly supporting an inference of unlawful intent in her conspiracy claims. Her bare allegations of malice fail. *See id.*at 969-70.

Fifth, Plaintiff's argument that this court should disregard *Buschi v. Kirven*, 775 F.3d 1240 (4th Cir. 1985), in which the Fourth Circuit adopted the intracorporate conspiracy doctrine, fails. Pursuant to the intracorporate conspiracy doctrine, a plaintiff cannot bring a civil conspiracy claim based on an agreement between "agents of the same legal entity, when the agents act in their official capacities," *Ziglar*, 137 S.Ct. at 1867, and "the immunity granted under the doctrine to the agents and corporation" is not destroyed because the agents are sued individually. *Buschi*, 775 F.2d at 1252. This doctrine "has been applied in the civil rights area, involving 'officials of a public body who act within the scope of their employment.'" *Id.* at 1251-52. Plaintiff's allegations fail to state a claim of conspiracy in light of the intracorporate conspiracy doctrine. *Id*. at 1251-52. Plaintiff's argument that the doctrine does not apply to the Judiciary because it is "inherently

decentralized" are wholly unsupported, and Plaintiff cites no Fourth Circuit authority contrary to *Buschi*.

Sixth, Plaintiff's citation to *Abbasi*, 137 S.Ct. at 1868, and the circuit split provides further support that Defendants are entitled to qualified immunity. As the *Abbasi* Court observed: "[T]he fact that the courts are divided as to whether or not a §1985(3) conspiracy can arise from official discussions between and among agents of the same entity demonstrate that the law on the point is not well established." *Id.* at 1868. Because of that circuit split, the Supreme Court held that the officers were entitled to qualified immunity with respect to the claims under 42 U.S.C. § 1985(3). *Id.* at 1869. The Supreme Court's logic in applying qualified immunity applies with even more force in the Fourth Circuit, which has adopted the intracorporate conspiracy doctrine, and where Plaintiff is seeking to establish an unprecedented exception to that doctrine. Accordingly, Defendants are entitled to immunity, and this lawsuit should be dismissed.

> **b.** **Step Two: Plaintiff identified no clearly established law personally violated by any Defendant.**

Under step two of the qualified immunity test, Plaintiff has failed to allege, with the appropriate level of specificity, a clearly established right that each Defendant personally violated. She has failed regarding the "clearly established" prong of the qualified immunity test to produce "cases of controlling authority in [this] jurisdiction" or a "consensus of cases of persuasive authority," *Booker*, 855 F.3d at 538, that establishes that each Defendant under "similar circumstances . . . was held to have violated [the Constitution]." *White v. Pauly,* 137 S. Ct. 548, 552 (2017) (per curiam). For an official to lose the protections of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Because Plaintiff sets forth no constitutional or statutory

violation at all, much less a clearly established one, qualified immunity bars Plaintiff's lawsuit.

*See Abbasi*, 137 S. Ct. at 1869.

CONCLUSION

For the foregoing reasons, Defendants respectfully request dismissal with prejudice.

This the 17th day of July, 2020.

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director
s/*Joshua Kolsky*
JOSHUA M. KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone: (828) 271-4661
Fax: (828) 271-4327
Email: Gill.Beck@usdoj.gov

Counsel for Defendants Chief Judge Roger L. Gregory, James N. Ishida, and General Counsel
Sheryl L. Walter, in their individual capacities.

22