**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

JANE ROE,                              )
                                       )
     Plaintiff,              )
                                       )
v.                                     )
                                       )
UNITED STATES OF AMERICA, et al.,      )
                                       )
     Defendants.             )

**REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 1

I.   Plaintiff's Claims Are Barred by Sovereign Immunity ........................................ 1

II.  The CSRA Precludes Plaintiff's Claims .............................................................. 5

    1.    CSRA Exclusivity Applies to Plaintiff's Claims .......................................... 6

    2.    Legislative History Confirms that Congress Intended to Preclude Judicial Branch Employees From Bringing Employment-Based Claims in Federal Court.................. 10

    3.    The CSRA Does Not Violate the Constitution .......................................... 12

III.  Plaintiff Failed to Exhaust Administrative Remedies........................................ 15

IV.  Plaintiff's Complaint Fails to State a Claim ...................................................... 17

    A.    Due Process Claim ............................................................................. 17

    B.    Equal Protection Claim ....................................................................... 19

CONCLUSION............................................................................................................ 21

**Cases**

*Ahmed v. Bd. of Trs. of Ala. Agric. & Mech. Univ.*,
No. 14-cv-01683, 2017 U.S. Dist. LEXIS 166782 (N.D. Ala. Oct. 10, 2017) .......................... 2

*Andrews v. City of Philadelphia*,
895 F.2d 1469 (3d Cir. 1990) ................................................................................................ 18

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ................................................................................................................ 5

*Arroyo Planas v. Lamoutte*,
No. 14-1468, 2015 U.S. Dist. LEXIS 128399 (D.P.R. Sep. 22, 2015) .................................... 7

*Blankenship v. McDonald*,
176 F.3d 1192 (9th Cir. 1999) ................................................................................................ 5

*Bohen v. City of East Chicago*,
799 F.2d 1180 (7th Cir. 1986) ...................................................................................... 18, 20

*Campbell v. Arkansas Department of Correction*,
155 F.3d 950 (8th Cir. 1998) ................................................................................................. 2

*Danos v. Jones*,
652 F.3d 577 (5th Cir. 2011) .................................................................................................. 3

*Davis v. Passman*,
442 U.S. 228 (1979) ................................................................................................................ 7

*Dotson v. Griesa*,
398 F.3d 156 (2d Cir. 2005) ........................................................................................ *passim*

*Drone v. Duff*,
No. 17-332, 2017 U.S. Dist. LEXIS 206167 (E.D. Va. Dec. 14, 2017) ................................... 7

*Elgin v. Dep't of the Treasury*,
567 U.S. 13 (2012) ............................................................................................. 6, 11, 12, 13

*FDIC v. Meyer*,
510 U.S. 471 (1994) ........................................................................................................... 1, 5

*Gray v. Office of Pers. Mgmt.*,
771 F.2d 1504 (D.C. Cir. 1985) .............................................................................................. 3

*Johnson v. Mishler,*
    526 F.2d 364 (2d Cir. 1975)..................................................................................... 18

*Kostishak v. Mannes,*
    No. 97-1500, 1998 U.S. App. LEXIS 7811 (4th Cir. Apr. 22, 1998)....................................... 15

*Kruise v. Fanning,*
    214 F. Supp. 3d 520 (E.D. Va. 2016) ..................................................................................... 3

*Landgraf v. Usi Film Prods.,*
    511 U.S. 244 (1994)................................................................................................ 8

*Lane v. Pena,*
    518 U.S. 187 (1996)................................................................................................ 4

*Larson v. Domestic & Foreign Commerce Corp.,*
    337 U.S. 682 (1949)................................................................................................ 2

*Lee v. Hughes,*
    145 F.3d 1272 (11th Cir. 1998) ......................................................................... 5, 8

*McCarthy v. Madigan,*
    503 U.S. 140, 112 S. Ct. 1081 (1992)................................................................ 15, 16

*Paige v. Harris*,
    584 F.2d 178 (7th Cir. 1978) .......................................................................... 18

*Pickus v. United States Bd. of Parole,*
    507 F.2d 1107 (D.C. Cir. 1974)......................................................................... 4

*Randall v. United States,*
    95 F.3d 339 (4th Cir. 1996) ................................................................................. 1

*Semper v. Gomez,*
    747 F.3d 229 (3d Cir. 2014)....................................................................... *passim*

*Semper v. United States,*
    694 F.3d 901 (Fed. Cir. 2012)....................................................................... 5, 10

*Sundby v. Marquee Funding Grp., Inc.,*
    No. 19-0390, 2020 U.S. Dist. LEXIS 15058 (S.D. Cal. Jan. 28, 2020)................................... 17

*Tahy v. United States,*
    No. 98-4167, 1999 U.S. App. LEXIS 20250 (10th Cir. Aug. 26, 1999) ................................... 8

*United States v. Fausto,*
   484 U.S. 439 (1988) ................................................................ 3, 7

*United States v. Mitchell,*
   463 U.S. 206 (1983) ........................................................... 1, 2, 5

*United States v. Williams,*
   514 U.S. 527 (1995) .................................................................. 4

*Vance v. Ball State Univ.,*
   570 U.S. 421 (2013) ................................................................ 20

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
   429 U.S. 252 (1977) ................................................................ 21

*Vitarelli v. Seaton,*
   359 U.S. 535 (1959) ................................................................ 18

*Washington Legal Found. v. U.S. Sentencing Comm'n,*
   17 F.3d 1446 (D.C. Cir. 1994) ............................................. 3, 4

*Weber v. Dep't of Veterans Affairs,*
   521 F.3d 1061 (9th Cir. 2008) .................................................. 3

*Webster v. Doe,*
   486 U.S. 592 (1988) .......................................................... 12, 18

*Weihua Huang v. Rector & Visitors of the Univ. of Va.,*
   No. 11-00050, 2013 U.S. Dist. LEXIS 34186 (W.D. Va. Mar. 7, 2013) ................................... 2

*Wellness International Network, Ltd. v. Sharif,*
   135 S. Ct. 1932 (2015) ...................................................... 14, 15

*Zheng v. N.Y.C. Hous. Auth. Office of Impartial Hearing,*
   2010 U.S. Dist. LEXIS 107714 (S.D.N.Y. Sep. 28, 2010) ...................................... 17

**Statutes**

5 U.S.C. § 701(b)(1)(B) ................................................................. 3

5 U.S.C. § 2302(d) ......................................................................... 6

5 U.S.C. § 5596(b)(1) .................................................................... 3

5 U.S.C. § 7703(b)(2) .................................................................... 6

18 U.S.C. § 3006A .............................................................................. 4

28 U.S.C. § 602 .................................................................................. 9

28 U.S.C. § 1331 ................................................................................ 1

42 U.S.C. § 2000e-16(a) ..................................................................... 7

Pub. L. No. 101-474 ........................................................................... 9

**Rules**

Fed. R. Civ. P. 12(h)(3) ....................................................................... 5

**Legislative Materials**

S. Rep. No. 752, 79th Cong., 1st Sess. 10 (1945) ............................... 4

**INTRODUCTION**

On behalf of Defendants United States, Judicial Conference of the United States, Administrative Office of the United States Courts, United States Court of Appeals for the Fourth Circuit, Judicial Council of the Fourth Circuit, Federal Public Defender's Office, Chief Judge Roger L. Gregory in his official capacity, Chief Judge Roslynn R. Mauskopf in her official capacity, Circuit Executive James N. Ishida in his official capacity, Director James C. Duff in his official capacity, and Federal Public Defender Anthony Martinez in his official capacity (collectively, "Defendants"), the undersigned respectfully submit this memorandum in support of Defendants' Motion to Dismiss the Complaint, ECF No. 42.

**ARGUMENT**

**I.     Plaintiff's Claims Are Barred by Sovereign Immunity**

The Court should dismiss all of Plaintiff's claims because she cannot identify any applicable waiver of Defendants' sovereign immunity. Plaintiff notes first that 28 U.S.C. § 1331 permits "federal courts to issue injunctions to protect rights safeguarded by the Constitution." Pl's Resp. in Opp'n to the Official Capacity and Entity Defs' Mot. to Dismiss ("Opp'n"), ECF No. 49, at 16. But "Section 1331 'is not a general waiver of sovereign immunity.'" *See Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996). If Plaintiff is arguing that a court may award injunctive relief notwithstanding a sovereign immunity bar, that too is incorrect. It is well-established that sovereign immunity protects the government "from suit" altogether, not merely from the payment of money damages. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent[.]"). Indeed, a waiver of sovereign immunity is "a prerequisite for jurisdiction,"

*Mitchell*, 463 U.S. at 212, so without such a waiver, courts lack jurisdiction to order any relief, including injunctive relief.

Plaintiff notes without analysis that the court in *Dotson v. Griesa* 398 F.3d 156 (2d Cir. 2005) found that sovereign immunity did not bar the plaintiff's claim for reinstatement in that case. Opp'n at 17. But, there, the Court was applying the exception to sovereign immunity described in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949), involving "suits for specific relief against officers of the sovereign which are not suits against the sovereign." *See Dotson*, 398 F.3d at 177. Plaintiff does not contend that the *Larson* exception applies here. In any event, whether reinstatement could be available here is irrelevant because Plaintiff expressly does not seek reinstatement. *See* Compl. at 84. Rather, she seeks "front pay as equitable relief in lieu of reinstatement." *Id*. *Dotson* relied on Eleventh Amendment cases interpreting state sovereign immunity to conclude that reinstatement was not barred by sovereign immunity in some circumstances. *Dotson*, 398 F.3d at 178. In contrast, with regard to front pay, "the weight of authority" provides that "the Eleventh Amendment bars it against a state" because it is the "'functional equivalent' of a damages award." *Ahmed v. Bd. of Trs. of Ala. Agric. & Mech. Univ.*, No. 14-cv-01683, 2017 U.S. Dist. LEXIS 166782, at *16 (N.D. Ala. Oct. 10, 2017); *Weihua Huang v. Rector & Visitors of the Univ. of Va.*, No. 11-00050, 2013 U.S. Dist. LEXIS 34186, at *41-42 (W.D. Va. Mar. 7, 2013) ("[f]or purposes of the eleventh amendment . . . front pay is not analogous to the prospective relief permitted under *Ex parte Young* because it 'must be paid from public funds in the state treasury'") (quoting *Campbell v. Arkansas Department of Correction*, 155 F.3d 950 (8th Cir. 1998)). Accordingly, the *Dotson* ruling regarding reinstatement has no relevance here.

Plaintiff is also wrong in claiming that the Back Pay Act is an applicable waiver of sovereign immunity. Opp'n at 17. By its terms, the Back Pay Act applies only where an "appropriate authority" has first found the employee to have been affected by an unjustified or unwarranted personnel action resulting in loss of pay. 5 U.S.C. § 5596(b)(1). "[A]n appropriate authority is the 'agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination.'" *Kruise v. Fanning*, 214 F. Supp. 3d 520, 529 (E.D. Va. 2016); *United States v. Fausto*, 484 U.S. 439, 454 (1988); *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008) (district court "was not an 'appropriate authority'" under the Back Pay Act); *Gray v. Office of Pers. Mgmt.*, 771 F.2d 1504, 1514 (D.C. Cir. 1985) (back pay claim failed where the plaintiffs "have not yet been found by an appropriate authority to have been wrongfully denied promotion"). Plaintiff does not allege that there has been any determination by an appropriate authority that would entitle her to back pay. Therefore, the statutory prerequisite to the Back Pay Act's waiver of sovereign immunity has not been satisfied. *See Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (claim for back pay by judiciary employee was "barred by sovereign immunity").

Likewise, the APA does not provide an applicable sovereign immunity waiver as the APA excludes "the courts of the United States," 5 U.S.C. § 701(b)(1)(B), which includes "the entire judicial branch," *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994). Plaintiff argues that federal defender offices are not "courts," but she cites no decision ever finding that a federal defender office – or any other judicial branch entity for that matter – qualifies as an agency under the APA. Opp'n at 17. Moreover, the Court in *Washington Legal Foundation* explained that the APA's legislative history reveals "that the term 'agency' was supposed to have substantially the same meaning in the APA as in two preexisting statutes: the

Federal Reports Act of 1942, and the Federal Register Act." 17 F.3d at 1449 (internal citations omitted). "The Federal Reports Act defined 'Federal Agency' as including only entities 'in the executive branch,' while the Federal Register Act explicitly exempted entities in 'the legislative and judicial branches of the Government.'" *Id.* In addition, the APA's Senate Committee report states that "the word 'agency' is defined in the Act 'by excluding legislative, judicial, and territorial authorities.'" *Id.* (quoting S. Rep. No. 752, 79th Cong., 1st Sess. 10 (1945)). Plaintiff argues that a federal defender office is not a "court" because it performs a "defense function," but the exemption of that office from the APA "is warranted not by the functions it performs . . . but by its status as an auxiliary of the courts[.]" *Id.* (quoting *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1112 (D.C. Cir. 1974) (finding Probation Service exempt from the APA as an auxiliary of the courts)). There is no question that federal defender offices are auxiliaries of the courts. *See* 18 U.S.C. § 3006A. Accordingly, the APA does not supply a relevant waiver of sovereign immunity, particularly considering that any "waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). To the extent that the Court finds any ambiguity on this issue, it must "construe ambiguities in favor of immunity." *Id.* (quoting *United States v. Williams*, 514 U.S. 527, 531 (1995)).[1]

Next, Plaintiff argues, essentially, that there must be an applicable waiver of sovereign immunity because the judiciary is authorized to provide relief to employees through the employment dispute resolution ("EDR") process. Opp'n at 17-20. Plaintiff is apparently under

---

[1] A decision that federal public defender offices are "agencies" under the APA would have broad implications beyond the sovereign immunity question. It would mean, for instance, that such offices are subject to the rulemaking provisions of the APA, which, as far as Defendants are aware, no court has ever held.

the mistaken impression that a waiver of sovereign immunity is required for any program that "requires the use of government funds." Opp'n at 19. Plaintiff misunderstands the nature of sovereign immunity, which as noted above, is a protection from being sued in court. *See FDIC v. Meyer*, 510 U.S. at 475; *Mitchell*, 463 U.S. at 212. Sovereign immunity does not prohibit a government entity from providing relief to employees who have suffered a violation of his or her rights, any more than it would prohibit a government entity from paying salaries to its employees.

Finally, Plaintiff's passing reference to amending her complaint if the Court finds that sovereign immunity applies here, Opp'n at 20, fails to meet her burden to establish grounds for amendment. Moreover, sovereign immunity is a jurisdictional bar. *See Mitchell*, 463 U.S. at 212. Absent subject matter jurisdiction over a case, the Rules provide that the Court "shall dismiss the action." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Dismissal, not leave to amend, is appropriate here.

## II.     The CSRA Precludes Plaintiff's Claims

Numerous courts – including several Courts of Appeals – agree that the CSRA precludes judicial branch employees from bringing employment-based claims in federal court. *See, e.g., Gaylor v. Smith*, No. 16-5308, ECF No. 10-1, at 1 (6th Cir. Feb. 28, 2017) (Ex. B to Motion); *Semper v. Gomez*, 747 F.3d 229, 235-43 (3d Cir. 2014) ("*Semper II*"); *Semper v. United States*, 694 F.3d 90, 91 (Fed. Cir. 2012) ("*Semper I*"); *Dotson*, 398 F.3d at 95-96; *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999); *Lee v. Hughes*, 145 F.3d 1272, 1274-75 (11th Cir. 1998); *see also* Mot. at 9-11 (citing cases). Plaintiff does not cite any decision of any court holding otherwise. Instead, Plaintiff insists that all of these courts were wrong and that this Court should embrace what are essentially Plaintiff's personal views about what the law should be, not

what the law actually is.  If the Court reaches this issue, it should reject Plaintiff's unsupported arguments.

### 1. CSRA Exclusivity Applies to Plaintiff's Claims

The exclusivity of the CSRA is well-established.  *See Elgin v. Dep't of the Treasury*, 567 U.S. 1, 13 (2012) (the CSRA's "statutory review scheme is exclusive, even for employees who bring constitutional challenges to federal statutes").  Nevertheless, Plaintiff contends that the "CSRA preserves federal employees' right to file discrimination lawsuits in federal court."  Opp'n at 2.  But even Plaintiff's own-cited authority makes clear that the "discrimination lawsuits" preserved by the CSRA are those pursuant to specific anti-discrimination *statutes* and other inapplicable sources of law, not constitutional provisions.  *See* 5 U.S.C. § 2302(d) ("This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under [specific statutes and other inapplicable sources of law.]"); *Elgin*, 567 U.S. at 13 (noting that the CSRA allows covered employees to obtain judicial review of an unfavorable decision by the Merit Systems Protection Board by filing a civil action pursuant to certain specified federal statutes) (citing 5 U.S.C. § 7703(b)(2)).  Thus, Congress's exclusion of specifically enumerated *statutory* claims from the CSRA's preclusive effect is hardly an indication that Congress intended to exclude unmentioned *constitutional* claims as well.  *Cf. Elgin*, 567 U.S. at 13 ("That Congress declined to include an exemption from Federal Circuit review for challenges to a statute's constitutionality indicates that Congress intended no such exception.").

Next, Plaintiff tries to distinguish the cases cited by Defendants because they allegedly "did not involve class-based discrimination claims."  Opp'n at 3.  But that is simply incorrect.  *See Dotson* 398 F.3d at 162 (plaintiff claimed race discrimination); *Gaylor*, No. 16-5308, ECF No. 10-

1, at 1 (plaintiff filed "complaint of employment discrimination"); *Drone v. Duff*, No. 17-332, 2017 U.S. Dist. LEXIS 206167, at *3 (E.D. Va. Dec. 14, 2017) (plaintiff claimed "discrimination based on age and disability"); *Arroyo Planas v. Lamoutte*, No. 14-1468, 2015 U.S. Dist. LEXIS 128399, at *25 (D.P.R. Sep. 22, 2015) (plaintiff alleged "employment discrimination").[2]

Although Plaintiff relies heavily on *Davis v. Passman*, 442 U.S. 228 (1979), that decision offers no support for her legal theories. The Supreme Court in *Davis* held that a *Bivens* action was permissible because there was "no evidence . . . that Congress meant § 717 [of Title VII] to foreclose alternative remedies available to those not covered by the statute." *Id*. at 247. Plaintiff argues that the reasoning in *Davis* "applies equally to the CSRA." Opp'n at 4. But Plaintiff ignores a critical difference between Title VII and the CSRA, which is that judicial branch employees *are not* covered by Title VII, *see* 42 U.S.C. § 2000e-16(a),[3] whereas they *are* covered by the CSRA. *See Fausto*, 484 U.S. at 444-48 (CSRA applies to excepted service employees); *Dotson*, 398 F.3d at 170 (the CSRA "specifically includes [judicial branch personnel] within the civil service"); *Planas*, 2015 U.S. Dist. LEXIS 128399, at *12 (the CSRA "is 'applicable' to judicial employees" even though it does not provide them the "same opportunities to challenge adverse personnel actions that it provides to other categories of federal employees"). In other words, because Title VII does not cover judiciary employees, Title VII's exclusivity provision cannot limit the remedies available to them. But because the CSRA does cover judiciary employees, CSRA exclusivity limits their remedies. Indeed, it is well-settled that CSRA exclusivity applies to employees who do not have remedies under the CSRA. *See Fausto*, 448 U.S. at 448-49 ("the absence of provision

---

[2] Contrary to Plaintiff's assertion that the court in *Planas* "held that the CSRA does not preempt a judiciary employee's equal protection claim," Opp'n at 4, that court expressly ruled that "judicial review in this Court is foreclosed to her by the exclusivity of the CSRA." 2015 U.S. Dist. LEXIS 128399, at *25.

[3] All judiciary positions are excepted service positions.

for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review"); *Dotson*, 398 F.3d at 169-76; *Semper II*, 747 F.3d at 243.[4]

Plaintiff observes that the CSRA went into effect while *Davis* was pending at the Supreme Court and suggests that that fact should somehow influence how *Davis* is interpreted. Opp'n at 4 & n.3. But "the *Davis* Court did not consider the effect of the CSRA on Davis's *Bivens* claim because the CSRA had been enacted immediately prior to the ruling and the preemptive effect of the Act was not an issue before the Court." *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998); *see also Tahy v. United States*, No. 98-4167, 1999 U.S. App. LEXIS 20250, at *9 n.4 (10th Cir. Aug. 26, 1999) ("*Davis* predates the Supreme Court's jurisprudence concerning the effect of the CSRA on *Bivens* remedies."). Moreover, given the "traditional presumption" that a statute does not operative retroactively, *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994), it is no surprise that the defendant in *Davis* did not raise the CSRA with the Supreme Court, Opp'n at 4 n.3.

According to Plaintiff, Congress expressed its "intent to preserve judiciary employees' remedies for unconstitutional discrimination" when it amended the CSRA in the Administrative Office of the United States Courts Personnel Act of 1990 ("AOUSC Act"). Opp'n at 5-6. The AOUSC Act, however, strongly supports Defendants' position, not Plaintiff's. As the Second Circuit explained, the AOUSC Act "eliminated a loophole in the statutory scheme that had granted CSRA review rights to certain judicial employees in the AOUSC that were unavailable to all other

---

[4] It is unclear what Plaintiff is arguing when she asserts that "[u]nder [Defendants'] interpretation, excepted service employees would have constitutional remedies under Title VII, but not under the CSRA." Opp'n at 5. Judiciary employees in the excepted service are not covered by Title VII and therefore do not have any "remedies under Title VII."

judicial employees." Congress "sought to bring AOUSC employees in line with the remainder of judicial branch personnel," but, it accomplished this "not by extending CSRA review rights to judiciary employees generally, but by phasing out such rights for AOUSC employees." *Dotson*, 398 F.3d at 171. "Congress's decision to eliminate CSRA procedural protections for the small class of judicial branch employees to whom they had long applied indisputably reveals its conscious decision to withhold such statutory review rights from judicial employees generally." *Id.*

Disregarding this clear lesson from this legislative history, Plaintiff instead selectively quotes a provision of the Act which she claims supports her view. Opp'n at 5-6. The full excerpt, however, reveals that the purpose of that provision was simply to clarify that any anti-discrimination rights that previously fell within the jurisdiction of administrative tribunals like the EEOC, OPM, and MSPB would be transferred to the jurisdiction of the AOUSC:

> Nothing in this Act shall be construed to abolish or diminish any right or remedy granted to employees of or applicants for employment in the Administrative Office by any law prohibiting discrimination in Federal employment on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition, except that, with respect to any such employees and applicants for employment, any authority granted under any such law to the Equal Employment Opportunity Commission, the Office of Personnel Management, the Merit Systems Protection, Board, or any other agency in the executive branch, shall be exercised by the Administrative Office.

Pub. L. No. 101-474, § 3(g) (appearing in notes to 28 U.S.C. § 602).

In any event, by its terms, this provision applies only to "employees of or applicants for employment in the Administrative Office," *id.*, which would not include Plaintiff, who was not an employee of or applicant for employment in the AOUSC.

2. **Legislative History Confirms that Congress Intended to Preclude Judicial Branch Employees From Bringing Employment-Based Claims in Federal Court**

Multiple circuit courts have carefully reviewed the legislative history associated with the CSRA and each has determined that that history indicates that Congress made a deliberate decision to exclude judicial branch employees from challenging employment actions in federal court. *See, e.g., Dotson*, 398 F.3d at 169-82; *Semper I*, 694 F.3d at 94-96; *Semper II*, 747 F.3d at 240-43. In particular, the Second Circuit in *Dotson* "painstakingly detail[ed] the history of administrative review of adverse employment actions within the judiciary to make several points supporting the conclusion that Congress's decision to withhold CSRA review procedures from judicial employees was deliberate and rational." Those points were as follows:

> (1) administrative review within the judiciary plainly has a long history, which has been well known to Congress; (2) at all times pertinent to this action, a judicial employee who thought himself the victim of unlawful discrimination had specific procedures available to him (separate and apart from the disciplinary review pursued by Dotson) to raise such a claim; (3 ) such internal procedures have always involved some opportunity for review by a judicial officer; and (4) within the last decade, Congress has engaged in an extensive dialogue with the federal courts about the need to legislate remedies for judicial employment disputes, with Congress ultimately choosing not to enact any such legislation and with the courts establishing even more detailed and multi-layered levels of administrative review.

398 F.3d at 176 (footnote omitted).

Nevertheless, Plaintiff insists that the legislative history actually supports her view. She is, once again, mistaken. First, Plaintiff observes that Congress was not aware of the judiciary's current EDR plans when it enacted the CSRA in 1978 because the EDR plans did not exist at that time. Opp'n at 6. But that misses the point. Although "the judiciary's review procedures have been modified and refined over the years," "[s]ince 1966, it has been the avowed policy of the federal judiciary, . . . to follow the equal employment opportunity principles applicable to private sector and government employers." *Dotson*, 398 F.3d at 171-72 (internal quotation marks omitted). In particular, "the judiciary's EEO policy, first adopted in 1966, . . . followed the spirit

10

and intent of [four federal anti-discrimination statutes] and provided for dispute resolution procedures similar to those administrative procedures available to federal employees in the executive branch." *Id*. at 174 n.12 (internal quotation marks omitted). Accordingly, at the time it passed the CSRA in 1978, Congress was aware of the judiciary's EEO policy in effect at that time.

Since then, Congress has continued to monitor the judiciary's EEO policies. As the Second Circuit explained, "Congress's awareness of the courts' EEO plans is beyond question" and "it has carefully monitored the operation of these plans to satisfy itself that they adequately protect judicial employees from discrimination without the need for legislative action." 398 F.3d at 173. For instance, when it enacted the Congressional Accountability Act of 1995, "Congress extended to its own employees the protections of eleven labor laws generally applicable to other public and private employees[.]" *Id*. Although it "initially considered extending the statute's coverage to employees of the judicial branch" it "ultimately decided against such action." *Id*. at 174.

Plaintiff disagrees that Congress has "'maintained' such a choice over the years," though she points to no legislation that expands judiciary employees' judicial review rights. Opp'n at 8. Plaintiff contends that a 1996 Judicial Conference report to Congress somehow supports her position. *Id*. at 9. But as the Second Circuit explained, in that report, the Judicial Conference concluded "that legislation is neither necessary nor advisable in order to provide judicial branch employees with protections comparable to those provided to legislative branch employees under the CAA." *Dotson*, 398 F.3d at 175. After receipt of that study, "Congress took no action to legislate administrative or judicial review requirements for the judicial branch." *Id*. Plaintiff also references a 1993 study regarding federal defender offices, but she does not contend that Congress took any action in response. Opp'n at 8-9. Thus, Plaintiff's discussions of these studies only underscores the point that Congress has recognized the judiciary's own process for handling

employment discrimination claims and has declined to expand judicial branch employees' rights through legislation.

Plaintiff makes two other arguments relating to legislative history, but neither has any relevance here. She contends that the judiciary adopted EEO plans, not because of the CSRA, but because of "outside pressure." Opp'n at 8. The reason why the judiciary adopted EEO plans is not relevant to Congress's awareness of or response to such plans. Similarly, the fact that the judiciary has recommended against legislation does not refute any of Defendants' arguments. Rather, "[i]n this context, Congress's decision not to act endorses the conclusion that it considered the judicial review available to judicial branch employees through the judiciary's own review plans adequate and intended no supplemental judicial review either at law or in equity." *Dotson*, 398 F.3d at 181.

### 3. The CSRA Does Not Violate the Constitution

Relying on *Webster v. Doe*, 486 U.S. 592 (1988), Plaintiff contends that a "serious constitutional question" would arise if the CSRA is interpreted to preclude her claims. Opp'n at 10. *Webster* held that "where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear." 486 U.S. at 603. This "heightened showing" is required "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.*

Plaintiff's "argument overlooks a necessary predicate to the application of *Webster*'s heightened standard: a statute that purports to 'deny any judicial forum for a colorable constitutional claim.'" *Elgin*, 567 U.S. at 9 (quoting *Webster*, 486 U.S. at 603). Plaintiff has not been denied a judicial forum for her claims. She was entitled to pursue the available EDR procedures for resolving her complaint, which included meaningful review by a judicial officer

and an opportunity for appellate review by the Fourth Circuit's Judicial Council. Plaintiff began that process for some of her employment claims, but she withdrew from it after obtaining a Fourth Circuit clerkship through the mediation program. Had Plaintiff not cut the process short, she could have obtained an adjudication of the merits of her claims. Channeling such claims into the judicial branch's own process thus would not result in any denial of judicial review of any claim; it would simply provide for that review through a process separate from the traditional path of a suit filed in federal district court.

As the Second Circuit explained, "the judiciary is unique among the branches of government in being able to provide for itself some review of its administrative employment decisions by a judicial officer." *Dotson*, 398 F.3d at 176 n.14. "Congress undoubtedly considered this fact and the long history of judicial review within the courts' EEO plans in concluding that it was unnecessary to legislate multiple and redundant levels of judicial review for court employees." *Id.* The Third Circuit, too, concluded that the CSRA precludes a federal employee from litigating constitutional claims "where the employee could pursue meaningful relief under a remedial plan that provides for meaningful review of his or her claims by judicial officers." *Semper II*, 747 F.3d at 242. That "approach honors" the *Webster* decision, because it "permits an employee to obtain meaningful redress for violations of his or her own constitutional rights through a process involving meaningful review by judicial officers while — at the same time — taking into account the special set of circumstances arising out of employment disputes between the judiciary and its own employees." *Id.*[5]

---

[5] Plaintiff notes that the Supreme Court in *Elgin* "held that the CSRA does not foreclose all judicial review of constitutional claims." Opp'n at 11. Defendants agree, because Plaintiff may still obtain judicial review of her constitutional claims through the EDR process. Likewise, that "the CSRA does not contain a 'heightened showing' of congressional intent to foreclose review of constitutional claims altogether," *id.* at 12, is beside the point because Plaintiff can "pursue

Plaintiff is also incorrect in arguing that requiring judicial review to occur through the EDR process instead of through a traditional federal court lawsuit would "violate separation of powers because it would usurp power that Congress has not delegated." Opp'n at 13. That argument ignores that Congress itself determined, through the CSRA, to limit the claims that judicial branch employees may bring in federal court. Moreover, the power has not been "usurp[ed]" where it is still being exercised by the same branch of government – the judiciary. Relying on *Wellness International Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1943 (2015), Plaintiff also argues that Congress may not withdraw claims by judicial branch employees from Article III. Opp'n at 14. The *Wellness International Network* decision explains that Article III preserves "an impartial and independent federal adjudication of claims" and serves as part of the "constitutional system of checks and balances.'" *Id.* Allowing Article III judges to decide judicial branch employee claims through EDR forums does not undermine impartial and independent adjudication, nor does it offend the separation of powers because the judicial branch retains the authority to adjudicate the claims.[6]

Plaintiff's argument that EDR forums cannot provide "meaningful review" is baseless. Opp'n at 14. The Fourth Circuit's EDR Plan provides that judicial officers "may order a necessary and appropriate remedy." Plan, Ch. X, § 12.[7] Such remedies include, but are not limited to,

---

meaningful relief under a remedial plan that provides for meaningful review of . . . her claims by judicial officers." *Semper II*, 747 F.3d at 242.

[6] Plaintiff quotes a government brief stating that the plaintiff in *Dotson* could bring suit at the end of the EDR process if he was dissatisfied with the result. Opp'n at 12. That question is not implicated by this case because Plaintiff never completed the EDR process. Instead, this case presents the question of whether a judicial branch employee may circumvent the EDR process and proceed directly to federal court.

[7] Plaintiff contends that she submitted her complaint under the 2013 Plan, not the 2018 Plan. Opp'n at 1 n.1. But the 2018 Plan, which was issued shortly after Roe submitted her complaint, states that it "supersedes the Court's Consolidated Equal Employment Opportunity and Dispute

various forms of equitable relief and back pay. *Id.* This is clearly meaningful relief. *See Kostishak v. Mannes*, No. 97-1500, 1998 U.S. App. LEXIS 7811, at *8-10 (4th Cir. Apr. 22, 1998) (upholding Fourth Circuit's EDR Plan against challenge that it was procedurally defective); *Semper II*, 747 F.3d at 244 (district's EDR plan provided "the means to obtain meaningful relief" where it authorized the judicial officer to provide equitable relief and back pay); *see also Dotson*, 398 F.3d at 175 (discussing relief available under the model EDR plan).[8]  Indeed, Plaintiff acknowledges that the EDR plans in *Dotson* and *Semper II* were found to provide meaningful relief and she fails to show any relevant difference between those plans and the Fourth Circuit's Plan. Opp'n at 15. Although she argues that the judicial officer in an EDR hearing could not "impose remedies upon entities other than the employing office," she does not explain why she would require employment remedies against non-employer entities in order to obtain meaningful relief. Opp'n at 14.

## III.     Plaintiff Failed to Exhaust Administrative Remedies

Even if the Court finds that judiciary employees may raise employment-related claims in federal court, Plaintiff's claims are still precluded here because she failed to exhaust administrative remedies. Instead, as noted, Plaintiff started the EDR process for certain claims and then withdrew from that process after negotiating new employment as a Fourth Circuit law clerk. By failing to fully pursue the EDR process, Plaintiff prevented the judiciary from adjudicating the merits of her complaints and awarding relief if appropriate. *See McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S. Ct. 1081, 1086 (1992) (discussing purposes of exhaustion requirement). Plaintiff offers no valid excuse for her decision to curtail the EDR process before reasserting her claims in this forum.

---

Resolution Plan adopted January 2013." Plan, Ch. I, § 1.  Also, there are no differences to the remedies available under the 2013 and 2018 plans.

[8] The EDR Plan does not provide for compensatory or punitive damages, Plan Ch. X, § 12, but Plaintiff is not seeking such damages against the entities or the official capacity defendants. *See* Opp'n at 16 n.13.

First, Plaintiff claims that exhaustion would have resulted in "prejudice" because certain defendants allegedly failed to "take prompt and effective action on her complaints," which she believes caused her to be "constructively discharged." Opp'n at 20. Even assuming that Plaintiff was harassed and that the alleged failure to take prompt and effective action on that alleged harassment caused her to be constructively discharged, that would not justify prematurely terminating the EDR process. Nothing would have prevented Plaintiff from continuing to pursue her EDR claim after she ended her employment with the Federal Defender's Office. In any event, Plaintiff has not plausibly alleged any failure to take prompt and effective action on her complaints. *See* Mot. at 21.

Next, Plaintiff insists that her failure to exhaust should be excused because there is "doubt as to whether the agency was empowered to grant effective relief." Opp'n at 21. But as discussed above, there is no doubt that the Plaintiff could have received effective relief through the EDR process. *See* Section II(3) *supra*. Notably, Plaintiff fails to identify any relief that she sought through the EDR process or that she seeks in this lawsuit that she could not have obtained through the EDR process. Accordingly, regardless of what "Roe was told" about potential remedies, Opp'n at 21, she has plainly failed to show any deficiencies in the remedies available to her under the Plan. Notably, Plaintiff does not claim that exhaustion would have been futile.

Plaintiff also tries to excuse her failure to exhaust by claiming that exhaustion is "not required where an administrative body is 'shown to be biased or has otherwise determined the issue before it.'" Opp'n at 21. Plaintiff claims that a "conflict of interest" existed because the Federal Public Defender was "both the employing office's representative and an accused violator of Roe's rights." *Id*. Plaintiff does not explain why that presented a conflict of interest. And she neglects to mention that she withdrew from the EDR process before her request to disqualify the

Federal Public Defender was decided. *See* Compl. ¶ 453. In any event, the relevant question is whether *the adjudicator* was biased – not whether another party to the proceeding was – and there is no allegation that the judicial officer (Chief Judge Gregory) was biased.[9]

Lastly, Plaintiff does not dispute that she withdrew her EDR complaint, nor could she. Instead, she states that when she withdrew her complaint, "she was seeking the best possible outcome when forced to resign." Opp'n at 22. But, as noted above, nothing prohibited Plaintiff from continuing to pursue her EDR complaint even if she felt the need to resign. Employment is not a requisite to an EDR claim. In fact, Plaintiff could have sought to amend her EDR claim to include a claim for constructive discharge. Accordingly, Plaintiff has failed to justify her lack of administrative exhaustion, and her claims should be dismissed.[10]

## IV. Plaintiff's Complaint Fails to State A Claim[11]

### A. Due Process Claim

Defendants' Motion identified several reasons why Plaintiff's claims fail under Rule 12(b)(6), Mot. at 14-22, and Plaintiff has refuted none of them. First, Plaintiff has failed to identify any protected property or liberty interest which would give rise to a due process claim. She asserts

---

[9] Even if Plaintiff had alleged that Chief Judge Gregory was biased (she has not), it would be too late, because Plaintiff never sought to disqualify Chief Judge Gregory from his role as the judicial officer. "By failing to object, Plaintiff has waived his right to make such objection now." *Zheng v. N.Y.C. Hous. Auth. Office of Impartial Hearing*, 2010 U.S. Dist. LEXIS 107714, at *10 (S.D.N.Y. Sep. 28, 2010).

[10] Plaintiff requests an opportunity to submit "documentation and affidavits" pursuant to Rule 12(d) if the Court considers her email withdrawing her EEO complaint. Opp'n at 22 n.20. But Rule 12(d) does not apply where a court considers materials that are integral to the complaint. *See Sundby v. Marquee Funding Grp., Inc.*, No. 19-0390, 2020 U.S. Dist. LEXIS 15058, at *10 (S.D. Cal. Jan. 28, 2020). Plaintiff does not dispute Defendants' arguments that her email is integral to the complaint. *See* Mot. at 4 n.3.

[11] Plaintiff's statutory claims are addressed in the individual capacity defendants' reply brief filed today.

a "property interest in the Plan's terms," Opp'n at 23, but she ignores the cases cited in the Motion holding that procedural requirements, without more, do not create constitutionally cognizable property interests, Mot. at 15.[12]  Plaintiff also claims she "had a right to prompt and effective remedial action on her complaints," Opp'n at 22, but the cases she cites as support stand only for the unremarkable proposition that public sector employees have an equal protection right to be free from illegal discrimination.[13]  Nor has Plaintiff shown that she has a due process "right to meaningful review and remedies."  Opp'n at 22.  The cases she cites address whether to apply *Webster*'s heightened standard, discussed above in Section II(3), where a plaintiff claims he or she has been denied a judicial forum for a colorable constitutional claim.  486 U.S. at 603.  Those cases do not hold that a government employee has a due process right to particular EEO procedures.  Instead of identifying a protected property or liberty interest, Plaintiff's Opposition makes clear that her due process claim merely duplicates her equal protection claim.  *See* Opp'n at 23-24 ("The bottom line is that Roe had a right to expect that she would not be subjected to discrimination in her employment.").

Even if the Court were to find a due process right in the EDR Plan, Plaintiff has not plausibly alleged that any defendant violated that plan.  Plaintiff claims that "defendants . . . refused to disqualify the Defender from serving as the employing office's representative[.]"  Opp'n at 24.  But the Plan did not require disqualification.  *See* Plan, Ch. X, § 7.  Anyway, Plaintiff withdrew

---

[12] The cases Plaintiff cites on this point do not support her argument.  In *Johnson v. Mishler*, 526 F.2d 364, 366 (2d Cir. 1975), the court found it "unnecessary . . . to decide whether [the plaintiff] would . . . be entitled to . . . an appeal as a matter of constitutional due process."  Likewise, the court in *Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959) found it "unnecessary to reach the constitutional issues[.]"  And, in *Paige v. Harris*, 584 F.2d 178, 181 (7th Cir. 1978), the plaintiff was found to have "possessed a property interest in his continued employment with HUD."  Here, however, Plaintiff concedes she had no property interest in her employment.  *See* Opp'n at 22 n.22.

[13] *See Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

from the EDR process before her disqualification request was decided.  Compl. ¶ 453.  Plaintiff

also claims that she was "forced . . . to telework."  Opp'n at 24.  But the complaint does not allege

any compulsory telework and Plaintiff does not explain how telework would violate the Plan.  She

challenges the adequacy of the EDR investigation, but the Complaint shows that an appropriate

investigation was conducted.  Mot. at 15-16.  And she claims that Defendants "refused to provide

her with the investigation's findings," Opp'n at 24, but nothing in the Plan provided Plaintiff the

right to receive the investigator's findings.

Notably, Plaintiff directs these arguments generally at "defendants" even though the

Complaint does not allege that all of the defendants took these actions.  Defendants' Motion

explained that certain defendants, such as Chief Judge Mauskopf, were not involved in responding

to Plaintiff's EDR complaint, Mot. at 15-16, and Plaintiff ignored that argument.  Indeed, Plaintiff

has failed to identify *any* conduct by Chief Judge Mauskopf at all, much less conduct that violated

Plaintiff's rights.  To the extent Plaintiff intended her allegations about the judiciary's new model

EDR plan to somehow relate to Chief Judge Mauskopf, Defendants already explained, first, that

those allegations relate to a separate body from the Judicial Resources Committee chaired by Chief

Judge Mauskopf, Mot. at 17, and, second, that Plaintiff lacks standing to challenge changes made

after Plaintiff withdrew her EDR complaint.  *See* Mot. at 21-22.

Finally, Plaintiff did not respond to Defendants' argument that she was not denied due

process under the Plan because she withdrew from the process.  Mot. at 17-18.  That alone is fatal

to her due process claim.

### B.  Equal Protection Claim

Plaintiff's equal protection claim should be dismissed because she has failed to allege that

any defendant took any action against her because of her gender.  Plaintiff attempts to rely on Title

VII principles to argue that alleged harassment by the First Assistant was imputable to the Federal Defender's Office because the First Assistant was a supervisor, and that the Office is strictly liable because the alleged harassment supposedly resulted in a tangible employment action. Opp'n at 23. Plaintiff improperly conflates Title VII with Fifth Amendment claims. For a Fifth Amendment equal protection claim, the "ultimate inquiry is whether the sexual harassment constitutes intentional discrimination" and "[t]his differs from the inquiry under Title VII as to whether or not the sexual harassment altered the conditions of the victim's employment." *Bohen v. E. Chi.*, 799 F.2d 1180, 1187 (7th Cir. 1986). Even in the Title VII context, however, "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (rejecting "nebulous definition of a 'supervisor'" that "ties supervisor status to the ability to exercise significant direction over another's daily work"). Plaintiff's Complaint does not allege that the First Assistant was empowered to take tangible employment actions against Plaintiff.

Accordingly, Plaintiff must point to allegations in her Complaint suggesting that Defendants themselves acted with an intent to discriminate. Mot. at 18-19. Plaintiff does not even attempt to identify any such allegation, nor could she. As discussed in the Motion, the Complaint does not plausibly allege that Defendants failed "to take immediate and effective action on her complaints" or failed "to provide her with meaningful review or remedies," much less that they did so because of Plaintiff's gender. Mot. at 18-22. That is fatal to her equal protection claim, which requires a showing that the defendant intended to discriminate on the basis of a protected

characteristic.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

Specifically, as to her claim that Defendants failed "to take immediate and effective action on her complaints," Plaintiff does not even argue, much less point to plausible allegations in her Complaint, that any defendant took any action or failed to take any action in connection with her EDR complaints because of Plaintiff's gender.  Likewise, regarding her claim that Defendants failed "to provide her with meaningful review or remedies," she does not contend that any defendant formulated the judiciary's Model EDR Plan or the Fourth Circuit's EDR Plan because they wanted to discriminate against Plaintiff or female employees generally.  In particular, the Court should reject Plaintiff's absurd description of those plans as "discriminatory policies." Opp'n at 24.  The fact that the judiciary's anti-discrimination policies may not match precisely with Plaintiff's personal preferences does not mean they are "discriminatory."

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint.

This the 17th day of July, 2020.

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

s/*Joshua Kolsky*
JOSHUA M. KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch

1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov


R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone:  (828) 271-4661
Fax:  (828) 271-4327
Email:  Gill.Beck@usdoj.gov