IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

| | |
|---|---|
| JANE ROE, | ) |
| | ) |
|       *Plaintiff*, | ) |
| | ) |
| v. | )   **Civil No. 1:20-cv-00066-WGY** |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
|       *Defendants*. | ) |
| | ) |

### DECLARATION OF PLAINTIFF JANE ROE IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE OFFICIAL CAPACITY AND ENTITY DEFENDANTS

I, Jane Roe, hereby declare and state as follows:

1.   I am the plaintiff in this matter and submit this declaration in support of my motion for partial summary judgment against the official capacity and entity defendants. I have personal knowledge of the facts set forth herein, and if called upon to do so, could and would testify competently thereto.

2.   The allegations set forth in the complaint filed on March 3, 2020 are true to the best of my knowledge and belief, except for those allegations set forth upon information and belief, and as to those allegations, I believe them to be true. Attached as Exhibit A hereto is a true and correct copy of an affidavit so stating dated March 3, 2020.

3.   Attached as Exhibit B hereto are true and correct copies of the filings in my EDR proceeding, including the (1) Request for Counseling and Official Grievance dated September 10, 2018, (2) Request for Disqualification and Stay of the Prior Investigation dated September

1

10, 2018, (3) Request for Mediation dated January 31, 2019, and (4) Supplement to Mediation dated February 22, 2019.

4. Attached as Exhibit C hereto are true and correct copies of email correspondence related to my EDR proceeding.

5. Attached as Exhibit D hereto is a true and correct copy of the Request for Personnel Action, which was submitted with approval of the Fourth Circuit, dated August 28, 2018.

6. My dream since law school was to be a federal defender, and I anticipated working at the FDO until retirement. As a result of defendants' conduct, I lost opportunities for training, experience, and professional growth in my calling to serve indigent clients.

7. To date, I have not been offered reinstatement. Under existing circumstances, I do not believe reinstatement would be feasible because (1) no position is available, (2) a subsequent working relationship between the parties would be antagonistic, (3) the FDO has a record of employee misconduct and discrimination, (4) the individuals responsible for the harassment, retaliation, and discrimination described in my complaint still hold their respective positions and titles at the FDO, and (5) reinstatement would require me to return to a hostile working environment with no meaningful remedies for discrimination.

8. Before and after my constructive discharge, I made diligent efforts to find employment with comparable pay and benefits within the Fourth Circuit and judiciary but was unsuccessful. After my clerkship, I accepted another public service position. Though I received outstanding mentorship, training, and experience, the position was temporary, with substantially lower compensation, and did not involve indigent criminal defense work.

9. Given my location in the Western District of North Carolina, it is extremely unlikely that I will ever find a position with comparable terms and compensation to the one I held at the FDO.

10. My next best employment is in court-appointed indigent appellate defense work. I have been accepted to the state indigent appellate roster and, after completing required training, I anticipate taking cases as soon as possible.[1] However, that schedule will likely be delayed for several months due to COVID-19, which has caused criminal caseloads to plummet across the state. *See* Melissa Boughton, *Uncharted territory: Solo attorneys, small law firms struggle with impacts of COVID-19*, NC POLICY WATCH (Apr. 30, 2020), *available at* https://tinyurl.com/yyc3864e. A true and correct copy of the Boughton article is attached as Exhibit E hereto.

11. I was also accepted to the Fourth Circuit Criminal Justice Act panel but, given this pending lawsuit, I do not believe it would be appropriate to take Fourth Circuit cases at this time. If I were to begin taking Fourth Circuit cases, I was told by the CJA Appointment Deputy that I can expect to be assigned 2–3 cases per year.

12. Court-appointed indigent defense work offers substantially less compensation than my job with the FDO. For example, under the Judiciary Salary Plan pay scale, I would have received a grade increase and periodic steps increases in the rate of basic pay pursuant to Office of Personnel Management policy. A true and correct copy of the 2020 JSP pay scale is attached as Exhibit F hereto. A true and correct copy of the OPM policy regarding step increases in the rate of basic pay is attached as Exhibit G hereto.

---

[1] The only state-employed appellate public defender positions are at the Office of the Appellate Defender, which has no openings and would require relocation.

13. As a 2019 study found, federal workers earned 80 percent more, on average, than private-sector workers, and 47 percent more, on average, than state and local government workers. Chris Edwards, *Reforming Federal Worker Pay and Benefits*, CATO INSTITUTE (Aug. 2, 2019), *available at* https://tinyurl.com/y3zeqx3g. The study concluded that "[t]he federal government has become an elite island of secure and high-paid employment separated from the ocean of average Americans competing in the economy." *Id.* A true and correct copy of this study is attached as Exhibit H hereto.

14. Similarly, a 2019 New York Times analysis found that "[s]ince 2000, average pay has grown twice as fast for federal employees as it has in the private sector." Natalie Kitroeff and Robert Gebeloff, *Government Shutdown Shakes Stability of Jobs That Are Often the Best Around*, NY TIMES (Jan. 16, 2019), *available at* https://tinyurl.com/yary9gzg. As the article notes, federal government workers who do well "are entitled by law to regular pay increases." *Id.* Their compensation also includes benefits, such as pensions and health insurance, that are "hard to come by" in the private sector. *Id.* Because of these advantages, the article concludes, federal jobs are "often the best around." A true and correct copy of the Kitroeff and Gebeloff analysis is attached as Exhibit I hereto.

15. The value of federal employee benefits, in particular, will be impossible to replicate as a court-appointed attorney or virtually anywhere else in the private sector. A non-exhaustive list of these benefits, provided by the Office of Personnel Management, includes alternative work schedules, vacation leave, personal and sick leave, paid holidays, child care subsidies and flexibilities, continuing education and professional development, dental and vision insurance, employee assistance and referral, flexible spending accounts, health insurance, leave to care for family members, life insurance, long-term care insurance, pay and leave flexibilities,

4

and retirement benefits. Office of Pers. Mgmt., *Federal Employee Compensation Package: It's More than Just Salary*, *available at* https://tinyurl.com/y5mjl9bp (last visited Aug. 14, 2020). A true and correct copy of this webpage is attached as Exhibit J hereto.

16. According to a 2017 Congressional Budget Office study, federal benefits are worth, on average, 41 percent of total compensation (defined as wages plus benefits), for all education levels. Congressional Budget Office, *Comparing the Compensation of Federal and Private-Sector Employees, 2011 to 2015*, at 14 (Apr. 2017), *available at* https://tinyurl.com/yx9w5q8x. For employees with professional degrees and long federal tenure, the benefits percentage is likely higher than 41 percent, because "workers with more education tend to receive more expensive benefits as well as higher wages."[2] *Id.* As the study explained, many federal benefits, like pension benefits and paid leave, are "based largely on the wages that employees receive," and thus tend to increase as wages increase. *Id.* A true and correct copy of the 2017 CBO study is attached as Exhibit K hereto.

17. By contrast, court-appointed attorneys are not entitled by law to regular pay increases and have no benefits. For example, the currently applicable gross hourly rate for private assigned counsel for state non-capital appeals is $75 for Class A-D felony appeals and $60 for all other non-capital appeals. Private Assigned Counsel Rates Chart (updated Dec. 1, 2018), *available at* https://tinyurl.com/y59xe7lo. The former rate has remained constant since

---

[2] Though federal workers with advanced degrees receive lower benefits, on average, than less educated federal workers, "[m]ost of that difference can be explained by the fact that the shorter tenures of the more-educated federal employees result in smaller government obligations for their future defined-benefit pensions and retiree health benefits." Justin Falk, *Comparing Benefits and Total Compensation in the Federal Government and the Private Sector*, Congressional Budget Office Working Paper Series, at 6 (Jan. 2012). By contrast, long-tenured federal employees with professional degrees tend to have higher wages <u>and</u> benefits. *See id.* (explaining that benefits such as paid leave are "closely tied" to wages).

5

2008 and the latter was reduced from $75 per hour in 2011. A true and correct copy of the private assigned counsel pay rate chart is attached as Exhibit L hereto.

18. As a recent effective pay rate study for court-appointed counsel found, these compensation rates are "far below the fair market value." Margaret A. Gressens, FY19 Private Appointed Counsel Effective Pay Rate Study: Public Defense Attorney Overhead Rates and Access to Benefits, at 4 (Mar. 2019), *available at* https://preview.tinyurl.com/y6rp8pqr. Moreover, unlike federal government attorneys, court-appointed attorneys are responsible for all overhead costs. These overhead costs include office overhead (*e.g.*, rent, malpractice insurance, office equipment, internet, required CLE programs, and legal research programs), employer FICA, health insurance, retirement, and life insurance. *Id.* at 1. According to the pay rate study, the average overhead cost (not including the employer share of FICA or benefits) for private assigned defense attorneys is $38.10 per hour and the median is $21.72 per hour. *Id.* at 2. A true and correct copy of the 2019 Gressens study is attached as Exhibit M hereto.

19. Beyond higher pay and benefits, federal public defender jobs have other advantages as well. For example, while federal public defenders are not compensated based on billable hours, almost half of state court-appointed attorneys report that they self-cut the hours they submit for approval on fee applications every month. *Id.* at 4. While federal public defenders have access to support staff including legal assistants, paralegals, and IT support, 84 percent of court-appointed attorneys have zero support staff. *Id.* at 3. While federal public defenders are provided funding to attend trainings, court-appointed attorneys are responsible for their own training and continuing legal education. And while federal public defenders continue to be paid the same salary and benefits even when caseloads decline due, for example, to the COVID-19 epidemic, court-appointed attorneys don't get paid except when they finish the work

6

in a case; "if they aren't receiving appointments to cases and finishing them, they aren't getting paid." *See* Boughton, *supra*.

20.    As these factors show, under any reasonable scenario, my compensation as a court-appointed attorney will be far less than I would have received over the course of my career at the FDO.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of August, 2020 at Lynn, North Carolina.

_____/s/ Jane Roe_____
Jane Roe
