# EXHIBIT E

**- NC Policy Watch - http://www.ncpolicywatch.com -**

# Uncharted territory: Solo attorneys, small law firms struggle with impacts of COVID-19

Posted By *Melissa Boughton* On 4/30/2020 @ 1:00 pm In COVID-19,Law and the Courts |
Comments Disabled





[1]

Source: Administrative Office of the Courts

**Some lawyers are taking side jobs now, but could face a flood of indigent clients when courts reopen**

As courts across the state consider reopening, it's expected that more people with criminal citations or charges will be found indigent after losing their jobs or a significant part of their income during the COVID-19 pandemic. Many of these people might need representation from public defenders, but they too, are struggling.

Crystal Bryson, a solo attorney in Murphy who represents clients from five counties in the western part of the state, said that before the pandemic, she was going to court daily, visiting upward of

Case 1:20-cv-00066-WGY   Document 60-6   Filed 08/17/20   Page 2 of 7

two to three courtrooms in a day. Now she attends emergency hearings about once per week related to Department of Social Services cases.

"We have really gone from 90 miles per hour to maybe 10," she said.

Bryson, like many solo attorneys across the state, serves as appointed counsel for individuals who are found to be indigent. These attorneys' income is tied to both their work in court and to the conclusion of their cases, which have, for the most part, been put on hold through June.



[2]

Crystal Bryson

But Bryson's criminal caseload has stopped. Mediation in civil and family cases is out of the question because of social distancing protocols.

"Everyone's having to be like a chameleon and change with their environment," she said.

The caseload could also change — and quickly. Tens of thousands of North Carolinians have already filed unemployment insurance claims, and many more have reported a steep reduction in income after state and local governments closed restaurants and businesses for nearly two months.

A recent Federal Reserve report warns of an impending 30% unemployment rate. If that prediction holds, a widely used measure of poverty would skyrocket by half, from 12.4% to 18.9%, according to a report from the Center on Poverty and Social Policy.

If that happens, Indigent Defense Services (IDS) could become quickly overwhelmed without enough attorneys to meet the needs of impoverished clients caught in an expensive, backlogged criminal justice system.

Some attorneys who are solo practitioners have taken second jobs, like driving for Uber or running food delivery services, to pay their bills. In others cases, they're shifting their law practices to meet clients' needs specific to the pandemic, like drawing up wills for first responders and frontline workers.

In more dire situations, solo attorneys and small law firms are facing the prospect of downsizing or shuttering their businesses altogether.

Whitney Fairbanks, interim executive director of IDS, said other than expediting payments for work that attorneys already have completed and sharing resources for small business opportunities (CARES Act loans, SBA loans and payroll protections), there's little the agency can do to help struggling lawyers.

She said IDS continues to ask the General Assembly to expand the agency's budget and to give it

Case 1:20-cv-00066-WGY    Document 60-6    Filed 08/17/20    Page 3 of 7



[3]

Whitney Fairbanks, interim Executive Director of Indigent Defense Services

flexibility in how it dispenses funds. Right now, most assigned counsel in indigent cases earn $55 per hour in district court, where most of the work is done. That pay scale varies depending on the complexity of a case, but it's still minimal. Yet the largest decrease in case filings has been in district courts.

Criminal case filings across the state totaled 42,624 in one week at the beginning of March and decreased to 13,695 at its lowest point during the first week of April, according to statistics from the Administrative Office of the Courts — a drop of 67%.

Civil case filings dropped from 14,561 at the beginning of March to 4,470 last week, according to the AOC. At their 2020 peak, which occurred in January, there were 18,006 civil filings.

"Keep in mind, they run a small business on this," Fairbanks said. "I don't know what $55 an hour means after you pay salary, pay rent, pay overhead. What do you actually take home? I think an existential threat to some of these businesses is that they have very little-to-no margin to begin with."

She said she hopes the legislature will be open to increasing the pay rate for appointed counsel and allow IDS some flexibility to create positions in public defender offices across the state. That would help IDS meet the impending increased demand for its work in "a targeted fashion."

Fairbanks said IDS doesn't expect jury trials in June, but there will likely be a lot of work for privately assigned counsel once cases are added back to dockets.

"Some of it for us will depend on how courts re-open as far as a bottleneck or crush," Fairbanks said. "We do have significant concerns about a contraction in state funding at a time when we are looking at expanding poverty rates."

North Carolina's public defense system is a hybrid – some public defenders are employed by the state, but others are private attorneys and are appointed to indigent cases, then managed by IDS.

In 18 judicial districts — encompassing 35 of the state's 100 counties — there are public defender offices with attorneys whom the state employs. They are continuing to work and get paid during the pandemic.

Yet in every district and county across the state, there are also private attorneys who are paid through IDS either by contract, a flat fee or an hourly rate for their work as public defenders.

Fairbanks said those attorneys usually don't get paid until they finish the work in a case, at which time they submit a fee application with their hours and expenses. Typically, if they aren't

Case 1:20-cv-00066-WGY   Document 60-6   Filed 08/17/20   Page 4 of 7

receiving

| Paid Hourly Rates | | Overhead Cost | | | Effective Rate | | Benefits | | | Earnings | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Per Atty per Mos. Ovrhd Cost | Per Atty Billable Hours | Per Atty per Hr Ovrhd Cost | Eff. Hourly Rate | Eff. Hourly Rate Less FICA | Health Hourly Cost | Retirement Hourly Cost (6%) | Life Insur. Hourly Cost ($500,000) | Eff. Hourly Rate Less Ben. | Annual Earnings |
| $55 Rate | Average | $ 7,007 | 1,800 | $ 46.71 | $ 8.29 | $ 7.66 | $ 3.72 | $ 0.46 | $ 0.77 | $ 2.71 | $ 4,877 |
| $55 Rate | Median | $ 5,729 | 1,800 | $ 38.20 | $16.81 | $ 15.53 | $ 3.61 | $ 0.93 | $ 0.76 | $ 10.23 | $18,412 |
| $85 Rate | Average | $ 7,007 | 1,800 | $ 46.71 | $38.29 | $ 35.38 | $ 3.72 | $ 2.12 | $ 0.77 | $ 28.77 | $51,779 |
| $85 Rate | Median | $ 5,729 | 1,800 | $ 38.20 | $46.81 | $ 43.25 | $ 3.61 | $ 2.59 | $ 0.76 | $ 36.29 | $65,314 |

Note: $85 paid hourly rate based on restored rate of $75 adjusted for inflation ($83.90). Billable hours based on typical billable hours per year by attorneys. Health insurance based on 79 survey responses with health benefits (average $724 and median $575 a month). Retirement based on 6% employer match. Life insurance based on average cost of $500,000 policy.

[4]

Source: Indigent Defense Services

appointments to cases and finishing them, they aren't getting paid.

"When the courthouses slowed down and dispositions came to a grinding halt, the trigger for these attorneys to be paid for their work stopped being triggered," Fairbanks said.

Ward Collins is part of a small law firm in Franklin. He said it is feeling the hit, particularly in criminal defense. In the past month, he said there has been at least a 90% decrease in appointments, retainers and other criminal defense work, which during a normal year, makes up about half of the firm's income.

The firm has offset some of those losses through real estate and estate planning, so they haven't had to lay off any staff yet. But as long as their attorneys aren't in court, they're not earning as much money.

Collins said there has been a more liberal granting of interim fee applications. If an appointed attorney has done some work on a case, they can submit an interim fee application that reflects the work and request payment before the conclusion of a case.

"That was a good development," he said.

Daniel Meier, a solo attorney in Durham, is also still getting paid for work he'd done with IDS, but his work also continues to be affected by

the court slow-down.

"Criminal defense is basically at a standstill," he said in a phone interview.

He's has shifted his work to drafting wills for first responders and frontline workers – at a discount, of course, he said. He also knows of some of his peers who have had to make more drastic changes outside the field by taking on part-time gigs to stay afloat until courts reopen.

Case 1:20-cv-00066-WGY   Document 60-6   Filed 08/17/20   Page 5 of 7


[5]

Daniel Meier is a solo attorney in Durham

"Some will be able to weather this and some won't," he said, adding that the good thing about law is that if you have to set it down for a bit, "you can pick it back up" without losing the tools of the trade.

Like Bryson, Meier noted several changes in how he does his work during the pandemic. He said it's harder to meet with people and to get new clients. And because of societal changes related to the pandemic, certain types of legal cases aren't being filed: Fewer people are driving and getting into accidents; fewer people are in stores and restaurants slipping or falling.

Meier is spending more time these days catching up on cases that are on pause. He said during the first week or two of quarantine, he was taking calls back-to-back answering clients' questions about their cases and what was happening.

"The phones have stopped ringing, which is disconcerting to say the least," he said.

He is concerned about how the courts will reopen. If it's not done gradually, he said, the caseloads can easily overwhelm the system, considering there are two months of backlogged cases.

He said in Durham, it's not unusual for 150 people to cram into a courtroom on a typical day. He wondered whether that would even be possible this summer, if public health recommendations, like social distancing, remain in place. It's also uncertain if a dozen people would be comfortable in one small room deliberating for a trial.

"It's going to be interesting," Meier said of the future of court operations. "We are in completely new and uncharted territory right now. There are still an awful lot of logistics to work out."

Similarly, Collins said he worries about the future of the courts. It's not optional for clients, he said, like barber shops and grocery stores. When court opens, a defendant will have to be there.

"I worry that it's going to be one of the last things to come back because of that," he said.

---

Article printed from NC Policy Watch: **http://www.ncpolicywatch.com**

URL to article: **http://www.ncpolicywatch.com/2020/04/30/uncharted-territory-solo-attorneys-small-law-firms-struggle-with-impacts-of-covid-19/**

URLs in this post:

[1] Image: **http://www.ncpolicywatch.com/wp-content/uploads/2020/04/AOC-case-**

Case 1:20-cv-00066-WGY   Document 60-6   Filed 08/17/20   Page 6 of 7

**filings.jpg**
[2] Image: **http://www.ncpolicywatch.com/wp-content/uploads/2020/04/IMG.5347.jpg**
[3] Image: **http://www.ncpolicywatch.com/wp-content/uploads/2020/04/Fairbanks.jpg**
[4] Image: **http://www.ncpolicywatch.com/wp-content/uploads/2020/04/IDS-chart-1.jpg**
[5] Image: **http://www.ncpolicywatch.com/wp-content/uploads/2020/04/Meier.jpg**

Copyright © 2019 NC Policy Watch. All rights reserved.