IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAORLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

JANE ROE,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

## **DEFENDANTS' JOINT NOTICE OF SUPPLEMENTAL AUTHORITY**

NOW COMES Defendants United States of America, Judicial Conference of the United States, Administrative Office of the United States Courts, United States Court of Appeals for the Fourth Circuit, Judicial Council of the Fourth Circuit, Roslynn R. Mauskopf and James C. Duff, in their official capacities, General Counsel Sheryl L. Walter, Chief Judge Roger L. Gregory, James N. Ishida, Anthony Martinez, in their individual and official capacities and the Federal Public Defender Office (collectively, "Defendants"), through counsel, and pursuant to Local Rule 7.1(j) and submits *Wilcox v. Lyons*, No. 19-1005, --- F.3d ----, 2020 WL 4664794 (4th Cir. Aug. 11, 2020). In *Wilcox*, the Fourth Circuit held that a pure retaliation claim is not cognizable under the Fourteenth Amendment's Equal Protection Clause *Wilcox v. Lyons*, No. 19-1005, ___ F.3d ___, 2020 WL 4664794, at *1 (4th Cir. Aug. 11, 2020). This is relevant to Defendants' Memoranda (ECF No. 37 at 22-25; ECF No. 39 at 21-25; ECF No. 41 at 22-25; ECF No. 43 at 14-22; ECF No. 45 at 22-25 43) in support of their Motions to Dismiss in which Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted under the Fifth Amendment's Equal Protection and Due Process Clauses.

This the 11th day of September, 2020.

                                                Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

s/*Joshua Kolsky*
JOSHUA M. KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov


R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone: (828) 271-4661
Fax: (828) 271-4327
Email: Gill.Beck@usdoj.gov

      Counsel for Defendants United States of America, Judicial Conference of the United States, Administrative Office of the United States Courts, United States Court of Appeals for the Fourth Circuit, Judicial Council of the Fourth Circuit, Roslynn R. Mauskopf and James C. Duff, in their official capacities, General Counsel Sheryl L. Walter, Chief Judge Roger L. Gregory, James N. Ishida, Anthony Martinez, in their individual and official capacities and the Federal Public Defender Office (collectively, "Defendants")

s/Shannon Sumerell Spainhour
SHANNON SUMERELL SPAINHOUR
N.C. State Bar No. 28108
DAVIS HARTMAN WRIGHT PLLC

2

28 Schenck Parkway, Suite 200
Asheville, NC 28803
Phone: 828-771-0833
Fax: 252-514-9878
Email: mss@dhwlegal.com

Counsel for the federal defender for the Western District of North Carolina, Anthony Martinez

**2020 WL 4664794**
United States Court of
Appeals, Fourth Circuit.

Colette Marie WILCOX,
Plaintiff - Appellant,
v.
Nathan H. LYONS, Esq.; Phillip C.
Steele, Esq. Defendants - Appellees,
and
Carroll County, Virginia, Defendant.

No. 19-1005
|
Argued: January 30, 2020
|
Decided: August 11, 2020

**Synopsis**
**Background:** Former deputy commonwealth attorney for county brought a § 1983 employment action against former employer alleging violations of her Equal Protection rights under the Fourteenth Amendment to the United States Constitution. The United States District Court for the Western District of Virginia, Michael F. Urbanski, Chief Judge, 2018 WL 1955826, dismissed the retaliation claim, and former employee appealed.

**[Holding:]** The Court of Appeals, Rushing, Circuit Judge, held that in an apparent matter of first impression, former employee's allegation that former employer fired her in retaliation for her complaint of sexual harassment and discrimination was insufficient to state claim of sexual discrimination under the Equal Protection Clause.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (18)

**[1]** **Federal Civil Procedure** Matters deemed admitted; acceptance as true of allegations in complaint

Facts alleged in a complaint will be accepted as true on a motion to dismiss.

**[2]** **Civil Rights** Practices prohibited or required in general; elements

To establish a prima facie case of retaliation in the Title VII retaliation context, a plaintiff must show (1) that she engaged in protected activity, (2) that her employer took adverse action against her, and (3) that a causal relationship existed between the protected activity and the adverse employment activity. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**[3]** **Civil Rights** Causal connection; temporal proximity

A disproportionate response to a minor workplace infraction suggests pretext and can bolster the causation

element of a plaintiff's prima facie case of retaliation.

### [4] Civil Rights  Public Employment
### Civil Rights  Employment practices

Public employees enjoy the protection of antidiscrimination statutes such as Title VII as well as the protection of the Constitution, which they may enforce against their employers in civil actions pursuant to § 1983. 42 U.S.C.A. § 1983; Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

### [5] Constitutional Law  Discrimination and Classification
### Constitutional Law  Similarly situated persons; like circumstances

The constitutional imperative of equal protection does not entirely remove the States' power to classify but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. U.S. Const. Amend. 14, § 1.

### [6] Constitutional Law  Sex or gender

Distinctions on the basis of sex or gender are subject to heightened scrutiny under equal protection analysis. U.S. Const. Amend. 14, § 1.

### [7] Civil Rights  Employment practices
### Constitutional Law  Public employees and officials in general
### Constitutional Law  Harassment

Intentional sex discrimination and sexual harassment against public employees by persons acting under color of state law violate the Equal Protection Clause and are actionable under § 1983. U.S. Const. Amend. 14, § 1; 42 U.S.C.A. § 1983.

### [8] Constitutional Law  Race, national origin, or ethnicity

Distinctions on the basis of race are subject to the strictest judicial scrutiny because racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification.

### [9] Constitutional Law  Retaliation in general
### Constitutional Law  Public Employees and Officials

Allegations that a public employer subjected an employee to adverse consequences in retaliation for his speech are, at their core, free-speech retaliation claims that do

not implicate the Equal Protection Clause. U.S. Const. Amend. 1; U.S. Const. Amend. 14, § 1.

[10] **Constitutional Law** Sex or Gender

Sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth, therefore the imposition of special disabilities upon the members of a particular sex because of their sex would seem to violate the basic concept that legal burdens should bear some relationship to individual responsibility, and thus, state action that causes different treatment to be accorded to individuals on the basis of their sex establishes a classification subject to scrutiny under the Equal Protection Clause. U.S. Const. Amend. 14, § 1.

[11] **Civil Rights** Causal connection; temporal proximity

The necessary causal link in a retaliation case under Title VII is between the employee's complaint and the adverse action, not between her sex and the adverse action. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

[12] **Constitutional Law** Discharge

**Constitutional Law** Public employees and officials in general

**Constitutional Law** Harassment

**Public Employment** Causal connection; temporal proximity

Former public employee's allegation that former employer fired her in retaliation for her complaint of sexual harassment and discrimination was insufficient to state claim of sexual discrimination under the Equal Protection Clause; former employee did not allege that she was fired because she was a woman, but rather alleged she suffered adverse consequences because of her speech and conduct, which triggered the First Amendment rather than the Equal Protection Clause. U.S. Const. Amend. 1; U.S. Const. Amend. 14, § 1.

[13] **Constitutional Law** Public employees and officials in general

**Constitutional Law** Harassment

Continued sexual harassment and adverse treatment of a female public employee unlike the treatment accorded male employees is actionable as a violation of the Equal Protection Clause even when the sex discrimination and harassment continue after, and partially in response to, the female employee's report of prior discrimination and harassment; the employee's claim in such a case is not a claim of pure

retaliation, but instead implicates the basic equal protection right to be free from sex discrimination that is not substantially related to important governmental objectives. U.S. Const. Amend. 14, § 1.

**[14]** **Constitutional Law** Retaliation in general

**Constitutional Law** Public employees and officials in general

A pure or generic retaliation claim, even if premised on complaints of sex discrimination, is not cognizable under the Equal Protection Clause; to the extent a public employee contends she suffered adverse consequences for expressing complaints or reporting discrimination to her employer, her claim arises under the First Amendment. U.S. Const. Amend. 1; U.S. Const. Amend. 14, § 1.

**[15]** **Constitutional Law** Public employees and officials in general

To the extent a public employee links an alleged retaliatory action to her gender, that allegation would constitute part of an equal protection discrimination claim, not a freestanding retaliation claim. U.S. Const. Amend. 14, § 1.

**[16]** **Civil Rights** Retaliation for Exercise of Rights

**Constitutional Law** Sex or Gender

**Constitutional Law** Harassment in general

The right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause. U.S. Const. Amend. 14, § 1; Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**[17]** **Civil Rights** Purpose and construction in general

**Civil Rights** Retaliation for Exercise of Rights

Title VII's antidiscrimination and antiretaliation provisions differ not only in language but in purpose as well: the substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status, while the antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct. Civil Rights Act of 1964 § 704, 42 U.S.C.A. § 2000e-3(a).

**[18]** **Civil Rights** Sex Discrimination

Title IX, which prohibits sex discrimination by recipients of federal education funding, is a broadly written general prohibition on discrimination. Education Amendments of 1972 § 901, 20 U.S.C.A. § 1681(a).

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Michael F. Urbanski, Chief District Judge. (7:17-cv-000530-MFU-RSB)

**Attorneys and Law Firms**

ARGUED: Thomas E. Strelka, STRELKA LAW OFFICE, Roanoke, Virginia, for Appellant. Henry S. Keuling-Stout, KEULING-STOUT, P.C., Big Stone Gap, Virginia, for Appellees. ON BRIEF: L. Leigh R. Strelka, N. Winston West, IV, STRELKA LAW OFFICE, Roanoke, Virginia, for Appellant.

Before NIEMEYER, QUATTLEBAUM, and RUSHING, Circuit Judges.

**Opinion**

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

RUSHING, Circuit Judge:

**\*1** Collette Marie Wilcox, a former Deputy Commonwealth Attorney for Carroll County, Virginia, sued her former employer, contending that she was fired in retaliation for reporting alleged sex discrimination. Wilcox sought to proceed solely pursuant to 42 U.S.C. § 1983, on the theory that her public employer's retaliation violated the Fourteenth Amendment's Equal Protection Clause. In line with our precedent and the majority of courts to consider the question, we conclude that a pure retaliation claim is not cognizable under the Equal Protection Clause. We therefore affirm the district court's dismissal of Wilcox's retaliation claim.

I.

A.

**[1]** Nathan Lyons, the elected Commonwealth Attorney for Carroll County, hired Wilcox to serve as a Deputy Commonwealth Attorney in May 2014.[1] Following an incident on November 30, 2015, Wilcox reported alleged sex discrimination to Lyons. The incident occurred when one of Wilcox's colleagues recounted his efforts to protect a female relative from "rough-housing and unwanted violence." J.A. 138. During this conversation, another of Wilcox's colleagues, defendant Phillip Steele, forcefully struck Wilcox on her right arm or shoulder with a closed fist. Steele accompanied his strike with a derogatory comment toward women. Taken aback, Wilcox told Steele not to "use [her] as demonstrative evidence of violence against women." J.A. 138. She asked Steele to back away from her, but he did not comply. Wilcox feared he might attempt to hit her again. At this point, Lyons entered the room. Wilcox uttered a "nervous joke" about filing a worker's compensation claim for battery and began to leave. J.A. 138. Before Wilcox had made a complete exit, a female colleague entered the room, and Wilcox exclaimed to her that there was "hostility in the room against women." J.A. 139.

Later that afternoon, Wilcox sent Lyons an email describing the incident. The next day, Wilcox met with Lyons to discuss her email. During that meeting, she expressed her opinion that the Commonwealth Attorney's Office promoted, or at least tolerated, discrimination against women. Lyons apologized "for the Office hostility" but did not take "affirmative steps" to reprimand Steele or correct his behavior. J.A. 140. In the weeks after the incident, Wilcox perceived that her colleagues were "distanc[ing] themselves" from her. J.A. 140.

Thereafter, on several occasions in January 2016 Wilcox missed or was late to work due to bad weather or illness. At one point, Lyons asked Wilcox to inform him about her absences by phone rather than text message but added that it was "no big deal." J.A. 141. At the end of January, Wilcox submitted her monthly timesheet to Lyons. Court proceedings had run long one of the days Wilcox was late to work, so although she had arrived late, she made a notation on her timesheet explaining she had worked the equivalent of a full day.

**\*2** On February 16, 2016, Lyons directed Wilcox to resubmit her January timesheet to reflect sick leave for part of the day on which court proceedings had run late. The next day, Lyons called Wilcox into his office and informed her that she had used too much leave, despite his approval of her leave requests. Lyons then told Wilcox she was in violation of a "state compensation board policy" concerning leave and he was going to issue her a written reprimand. J.A. 142. Wilcox told Lyons she did not know about the policy to which Lyons was referring and asked why Carroll County's leave policy was not applicable. Lyons handed Wilcox the letter of reprimand and directed her to sign it. Wilcox asked if she could read the letter first and requested a copy of the pertinent policy to review. In response, Lyons turned his back, raised his voice, and told Wilcox she was fired for insubordination.

B.

Wilcox subsequently filed this lawsuit against Lyons, Steele, and Carroll County. She alleged sex discrimination, hostile work environment, and retaliation in violation of the Equal Protection Clause, as well as deprivation of a liberty interest in violation of the Due Process Clause and common law battery. The defendants moved to dismiss. The district court dismissed with prejudice all claims against Carroll County and the hostile work environment claim. The court also rejected Wilcox's claims for sex discrimination, retaliation, and deprivation of a liberty interest but granted Wilcox leave to amend those claims.

Wilcox filed an amended complaint in which she dropped her allegation of sex discrimination, asserted additional facts to support her claim for deprivation of a liberty interest, and reasserted her retaliation and battery claims. Pertinent for this appeal, Wilcox did not amend her retaliation claim but instead sought reconsideration of the district court's prior order dismissing that claim. The district court denied Wilcox's motion for reconsideration.[2] Briefly surveying our precedent regarding Section 1983 retaliation

claims, the court observed that it "is far from certain" that "her retaliation claim alleging adverse action on account of her complaint of discrimination is actionable under § 1983 as a violation of the Equal Protection Clause." J.A. 126–127. However, the court determined it need not reach that issue because, even assuming such a claim were viable, Wilcox had failed to state a prima facie case for retaliation.

Drawing on the requirements for a Title VII retaliation claim, the district court concluded that Wilcox failed to sufficiently allege a causal relationship between her protected activity and her termination. Wilcox "relie[d] heavily on temporal proximity" to allege causation, but the court concluded that the two-and-a-half month time span between her report of alleged sex discrimination and her termination was too long to establish causation by temporal proximity alone. J.A. 129. Finding that Wilcox had not pleaded any other evidence of retaliatory animus, the court held that the complaint failed to state a claim for retaliation.

Wilcox appealed. On appeal, she argues that her retaliation claim is actionable under Section 1983 as a violation of the Equal Protection Clause and that she has sufficiently alleged causation to support her retaliation claim. We review the district court's dismissal de novo. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

## II.

As noted above, the district court assumed for the sake of argument that Wilcox's retaliation claim was cognizable under the Equal Protection Clause but determined that she failed to sufficiently allege causation to support her claim. We likewise first consider whether, assuming such a claim is cognizable, Wilcox has sufficiently pleaded it in her complaint. *Cf. Hagans v. Lavine*, 415 U.S. 528, 547, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (reiterating the "ordinary rule that a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available").

**\*3** **[2]** The district court borrowed the prima facie case framework from the Title VII retaliation context. Under that framework, to establish a prima facie case of retaliation, a plaintiff must show "(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (brackets and internal quotation marks omitted). Although we have not drawn a bright temporal line, we have observed that two-and-a-half months between the protected activity and the adverse action "is sufficiently long so as to weaken significantly the inference of causation between the two events" in the absence of other evidence of retaliation. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003); *see id.* at 151 & n.5 (nevertheless concluding that temporal proximity was sufficient to establish causation in that case because the end of the school year was "the natural decision point"); *cf. Foster*, 787 F.3d at 253 (holding complaints of discrimination one month before termination

sufficient to create jury question regarding causation prong of prima facie case).

**[3]** But here, Wilcox has alleged additional facts suggesting retaliation, namely Lyons's alleged overreaction in firing Wilcox for insubordination in response to her request for clarification about the attendance policy and time to read the letter of reprimand. A disproportionate response to a minor workplace infraction suggests pretext and can bolster the causation element of a plaintiff's prima facie case. *See*, *e.g.*, *Hernandez v. Fairfax Cnty.*, 719 Fed. App. 184, 189–190 (4th Cir. 2018) (per curiam). Considered together, Wilcox's allegations about Lyons's overreaction in the reprimand meeting and the two-and-a-half month span between Wilcox's complaint and her termination are sufficient to plead causation at this preliminary stage.

Thus, if Wilcox's retaliation claim were governed by the Title VII framework, her claim would survive dismissal. But Wilcox did not plead a Title VII claim; she has advanced only a Section 1983 claim alleging a violation of the Equal Protection Clause, which she argues should follow the Title VII pattern. We therefore are squarely presented with the question whether a pure retaliation claim is cognizable as a violation of the Equal Protection Clause.

### III.

**[4]** Public employees enjoy the protection of antidiscrimination statutes such as Title VII as well as the protection of the Constitution, which they may enforce against their employers in civil actions pursuant to 42 U.S.C. § 1983.[3] *See*, *e.g.*, *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989) ("We have held that Title VII is not an exclusive remedy for employment discrimination by a public entity. A state employee may still bring a Fourteenth Amendment challenge under 42 U.S.C. § 1983 to discriminatory employment decisions."). We have recognized as cognizable, for example, claims by public employees alleging that their employers violated their rights under the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See*, *e.g.*, *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (First Amendment); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (Due Process); *Talbert v. City of Richmond*, 648 F.2d 925, 929 (4th Cir. 1981) (Equal Protection).

**[5] [6] [7] [8]** The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This constitutional imperative of equal protection does not entirely remove the States' power to classify but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Distinctions on the basis of sex or gender are subject to heightened scrutiny under equal protection analysis. *See Knussman v. Maryland*, 272 F.3d 625, 635 (4th Cir.

2001).[4] Thus, this Court has recognized that the Equal Protection Clause confers on public employees "a right to be free from gender discrimination that is not substantially related to important governmental objectives." *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994); see *Davis v. Passman*, 442 U.S. 228, 234–235, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Intentional sex discrimination and sexual harassment against public employees by persons acting under color of state law violate the Equal Protection Clause and are actionable under Section 1983. *Beardsley*, 30 F.3d at 529; cf. *J.E.B. v. Alabama*, 511 U.S. 127, 130–131, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) ("Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where ... the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women.").

**\*4** [9] Neither our Court nor the Supreme Court has recognized an equal protection right to be free from retaliation. To the contrary, we have previously held that " '[a] pure or generic retaliation claim ... simply does not implicate the Equal Protection Clause.' " *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999) (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997)). Instead, we have consistently considered retaliation claims brought under Section 1983 to be more properly characterized as claims asserting a violation of the First Amendment. See *Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir. 2017); *Kirby v. Elizabeth City*, 388 F.3d 440, 447 (4th Cir. 2004); *Edwards*, 178 F.3d at 250. As we have explained, allegations that an employer subjected an employee to adverse consequences "in retaliation for his speech are, at their core, free-speech retaliation claims that do 'not implicate the Equal Protection Clause.' " *Kirby*, 388 F.3d at 447 (quoting *Edwards*, 178 F.3d at 250).[5] When an employee experiences an adverse employment action after "voic[ing] a grievance" to her public employer, "[a] violation of the First Amendment's protection of the right to speak out is a necessary predicate to a claim of pure retaliation." *Beardsley*, 30 F.3d at 530; cf. *Martin*, 858 F.3d at 252 (affirming dismissal of equal protection claim because prisoner's claim of retaliation for filing grievance and participating in grievance resolution process was "best characterized as a mere rewording of his First Amendment retaliation claim").

Wilcox acknowledges this body of precedent but contends that the subject matter of her complaint—sex discrimination and harassment—makes her claim of retaliation in response to that complaint cognizable under the Equal Protection Clause. In other words, she asks us to expand the reach of the Fourteenth Amendment in claims arising under Section 1983. We are not persuaded.

[10] The Supreme Court has subjected discrimination on the basis of sex to heightened equal protection scrutiny because differences between the sexes are so rarely a legitimate reason to treat otherwise similarly situated people differently. See *Frontiero v. Richardson*, 411 U.S. 677, 686–687, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) ("[T]he sex

characteristic frequently bears no relation to ability to perform or contribute to society."); *Craig v. Boren,* 429 U.S. 190, 198–199, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (recognizing that "classifications by gender" have served as "inaccurate prox[ies]" for other classifications, rooted in stereotypes and "outdated misconceptions" about women). The Court views classifications based on sex or gender with suspicion because of their roots in our Nation's "long and unfortunate history of sex discrimination." *Frontiero,* 411 U.S. at 684, 93 S.Ct. 1764; *see also Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) ("Classifications based upon gender, not unlike those based upon race, have traditionally been the touchstone for pervasive and often subtle discrimination."). Moreover, "sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth," therefore "the imposition of special disabilities upon the members of a particular sex because of their sex would seem to violate the basic concept of our system that legal burdens should bear some relationship to individual responsibility." *Frontiero,* 411 U.S. at 686, 93 S.Ct. 1764 (internal quotation marks omitted). Thus, state action that causes "different treatment [to] be accorded to [individuals] on the basis of their sex ... establishes a classification subject to scrutiny under the Equal Protection Clause." *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).[6]

**\*5** [11] Retaliation for reporting alleged sex discrimination imposes negative consequences on an employee because of the employee's report, not because of the employee's sex. The very premise of a retaliation claim is that the employer has subjected an employee to adverse consequences in response to her complaint of discrimination. For example, to establish a prima facie case of retaliation under Title VII, a plaintiff must prove: (1) that she engaged in a protected activity, which includes complaining to her superior about sex discrimination or harassment; (2) that her employer took an adverse action against her; and (3) that there was "a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 281 (4th Cir. 2015) (internal quotation marks omitted). The necessary causal link is between the employee's complaint and the adverse action, not between her sex and the adverse action. *See Wetzel v. Glen St. Andrew Living Cmty., LLC,* 901 F.3d 856, 868 (7th Cir. 2018) ("[A]ll anti-retaliation provisions ... provide[ ] protections not because of who people are, but because of what they do."). A retaliation claim of this type thus does not implicate disparate treatment on the basis of a classification forbidden by the Equal Protection Clause.

Consider a male employee who has not personally experienced discrimination but denounces his superior's misogyny and is punished for doing so. *See Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 259 (4th Cir. 1998) (identifying protected activities under Title VII, including "voicing one's opinions in order to bring attention to an employer's discriminatory activities"); *cf., e.g., Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010) (holding that non-African American plaintiff had established a prima facie claim of Title VII retaliation

stemming from "concerns she expressed on behalf of an African–American coworker"). His superior's retaliation is a product of the employee voicing his opinion, not his sex. *Cf. CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 460, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) (Thomas, J., dissenting) ("When an individual is subjected to reprisal because he has complained about racial discrimination, the injury he suffers is not on account of his *race*; rather, it is the result of his *conduct*."). The sex of the complainant is irrelevant, because it is not the complainant's sex that motivated the employer's retaliatory adverse action. *See Yatvin v. Madison Metro. School Dist.*, 840 F.2d 412, 419 (7th Cir. 1988); *cf. Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) (plaintiff who alleged she was demoted "in retaliation for her vocal opposition to race discrimination" had a viable First Amendment claim but "none of [the plaintiff's] evidence that she was [demoted] in retaliation for her speech suggests that she was [demoted] because of her race," so summary judgment was warranted on her racial discrimination claims).

 **[12]** Likewise here, Wilcox has alleged that the defendants fired her in retaliation for her complaint of sexual harassment and discrimination, not because she is a woman. These allegations do not implicate an impermissible classification or discrimination on the basis of Wilcox's membership in a class defined by an immutable characteristic. Rather, Wilcox alleges she suffered adverse consequences because of her speech and conduct: reporting alleged harassment and discrimination. In such a case, the Equal Protection Clause's concern with treating similarly situated people differently on the basis of sex is not implicated. *See Yatvin*, 840 F.2d at 418 ("Although sex discrimination by state agencies has been held to violate the equal protection clause, retaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on grounds of sex ....").

 **[13]** This is not to say that retaliation can never be evidence of sex discrimination. For example, if a public employer retaliated against women who filed complaints or participated in an investigation but not against men who did the same, the women may have a cognizable Equal Protection Claim. That claim, however, would not be for retaliation but for straightforward sex discrimination, because their employer was treating similarly situated employees differently on the basis of sex. *See id.* Similarly, continued sexual harassment and adverse treatment of a female employee unlike the treatment accorded male employees remains actionable as a violation of the Equal Protection Clause even when the sex discrimination and harassment continue after, and partially in response to, the female employee's report of prior discrimination and harassment. *See Beardsley*, 30 F.3d at 530. The employee's claim in such a case is not "a claim of pure retaliation," *id.*, but instead implicates the basic equal protection right to be free from sex discrimination that is not substantially related to important governmental objectives. *Id.* at 529; *see also Watkins*, 105 F.3d at 1354 (distinguishing a "pure or generic retaliation claim" from a situation like that in *Beardsley*).

**\*6** **[14]** **[15]** **[16]** A "pure or generic retaliation claim," however, even if premised on complaints of sex discrimination, is not cognizable under the Equal Protection Clause. *Edwards*, 178 F.3d at 250 (internal quotation marks omitted). To the extent a public employee contends she suffered adverse consequences for expressing complaints or reporting discrimination to her employer, her claim arises under the First Amendment. *See Campbell v. Galloway*, 483 F.3d 258, 266–268, 272 (4th Cir. 2007); *Watkins*, 105 F.3d at 1354. To the extent a public employee links an alleged retaliatory action to her gender, that allegation would constitute part of an equal protection discrimination claim, not a freestanding retaliation claim. *See Watkins*, 105 F.3d at 1354. Wilcox has not made such an allegation, nor has she pleaded a First Amendment action. The "right to be free from retaliation for protesting sexual harassment and sex discrimination" upon which Wilcox solely relies "is a right created by Title VII, not the equal protection clause." *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989); *see also Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause."). To be clear: these existing legal avenues for challenging public employer retaliation remain open to employees; we simply decline to create a new one under the auspices of the Fourteenth Amendment.

In reaching this conclusion, we join the vast majority of circuit courts to have considered the question. At least six of our sister circuits have held that the Equal Protection Clause cannot sustain a pure claim of retaliation. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 298 n.6 (3d Cir. 2006) (retaliation for complaint of race discrimination); *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990) (retaliation for complaints about improper promotions and misconduct by other police officers); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 439–440 (6th Cir. 2005) (retaliation for complaint of police harassment); *Boyd*, 384 F.3d at 898 (retaliation for filing charges of race discrimination); *Yatvin*, 840 F.2d at 418 (retaliation for filing charges of sex discrimination); *Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006) (retaliation for complaint of national origin discrimination); *Teigen v. Renfrow*, 511 F.3d 1072, 1084–1086 (10th Cir. 2007) (retaliation for complaints about violations of state employment laws); *Watkins*, 105 F.3d at 1354 (retaliation for complaints of sexual and racial harassment); *see also Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1237 (8th Cir. 2013) (observing that other courts have rejected equal protection retaliation claims and concluding that "no clearly established right exists under the *equal protection* clause to be free from retaliation" (internal quotation marks omitted)). And a host of district courts—both within our circuit [7] and beyond (including in circuits that have not yet resolved this question) [8]—have reached the same conclusion.

**\*7** Only the Second Circuit has reached a contrary conclusion, in *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d

Cir. 2015), and Wilcox urges us to adopt its reasoning. But we do not find *Vega* persuasive.

After distinguishing contrary circuit precedent, the *Vega* court offered two primary reasons undergirding its conclusion that retaliation is actionable under the Equal Protection Clause. First, the court observed that "an 'equal protection claim [largely] parallels [a plaintiff's] Title VII claim,' " and found "no sound reason to deviate from this principle for a retaliation claim." *Id.* at 82 (second alteration in original) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). While Title VII's antidiscrimination provision overlaps the ambit of the Equal Protection Clause, and we have applied a similar framework in analyzing workplace protected-characteristic discrimination claims under each, the scope of the two laws is not identical. *See United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 206 n.6, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) ("Title VII ... was not intended to incorporate and particularize the commands of the ... Fourteenth Amendment[ ]."); *Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 627–628 n.6, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (rejecting the notion that "the obligations of a public employer under Title VII must be identical to its obligations under the Constitution"). Title VII, for instance, permits litigants to assert discrimination claims under a "disparate impact" theory, but such claims are not cognizable in the context of the Equal Protection Clause. Compare *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation."), with *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ("Disproportionate impact ... [s]tanding alone" does not violate Equal Protection Clause.).

[17] Another critical difference between Title VII and the Equal Protection Clause directly undermines the rationale relied upon by the court in *Vega*: Title VII contains a provision—separate from its antidiscrimination provision—expressly prohibiting retaliation. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter ...."); *see, e.g.*, *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) (outlining the elements of a Title VII retaliation claim). The Equal Protection Clause contains no comparable antiretaliation language. And as the Supreme Court has explained, Title VII's antidiscrimination and antiretaliation provisions "differ not only in language but in purpose as well." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). "The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Id.* We cannot read this additional, and materially different, language and purpose into the Equal Protection Clause.

**\*8** **[18]** Second, the *Vega* court reasoned that "retaliation is a form of discrimination," relying on the Supreme Court's interpretation of Title IX in *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005). Title IX, which "prohibits sex discrimination by recipients of federal education funding" is a "broadly written general prohibition on discrimination." *Jackson*, 544 U.S. at 173, 175, 125 S.Ct. 1497. The statute declares that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The question in *Jackson* was whether Title IX's implied private right of action encompasses claims of retaliation. The Court held that it did, relying on its "repeated holdings construing 'discrimination' under Title IX broadly," Congress's awareness of precedent issued shortly before Title IX's passage, the absence of language limiting the statute to "discrimination on the basis of *such individual's* sex," and Congress's purposes in enacting the statute. *Jackson*, 544 U.S. at 173–181, 125 S.Ct. 1497. [9]

We do not read the Court's decision in *Jackson* to suggest that every statute prohibiting discrimination—much less the Constitution's aged guarantee of equal protection—also necessarily incorporates a right to be free from retaliation for reporting discrimination. As an initial matter, that proposition is difficult to square with Title VII, which contains an antidiscrimination provision and a separate express antiretaliation provision. If a prohibition on discrimination always encompassed retaliation, Title VII's antiretaliation provision would be mere surplusage. Such an interpretation flies in the face of commonly applied canons of statutory construction. *See In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013). But, more importantly, it illustrates that—at least in the mind of Congress—retaliation is not always included within the conceptual ambit of discrimination. *See Gomez-Perez*, 553 U.S. at 495, 128 S.Ct. 1931 (Roberts, C.J., dissenting) (explaining that although "broad bans on discrimination, standing alone, may be read to include a retaliation component," differences in the "text and structure of" the ban, along with factors such as "the broader ... scheme of which [the ban] is a part," can counsel in favor of the opposite conclusion—that retaliation is not included). The better understanding is that *Jackson* and cases like it turned on the text and history of the statutes being interpreted—neither of which they share with the Equal Protection Clause.

In fact, the Supreme Court has specifically held that Title IX's antidiscrimination imperative is not coterminous with the Equal Protection Clause. In *Fitzgerald v. Barnstable School Committee*, the Court engaged in a "comparison of the substantive rights and protections guaranteed" by Tile IX and the Equal Protection Clause and determined that "Title IX's protections are narrower in some respects and broader in others." 555 U.S. 246, 256, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009). As the Court explained, Title IX applies in circumstances in which the Equal

Protection Clause does not, as well as vice versa, and "[e]ven where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause" the pertinent standards provided by each "may not be wholly congruent." *Id.* at 257, 129 S.Ct. 788.

We therefore cannot agree with the *Vega* court's conclusion that because the term "discrimination" in Title IX encompasses retaliation, the Equal Protection Clause's prohibition on unjustified classifications based on sex must also encompass pure claims of retaliation based not on sex but on an employee's speech. The guarantee of equal treatment for similarly situated persons is conceptually distinct from a right to be free from retaliation for voicing complaints of discrimination. While the latter may serve to guard and secure the former primary objective, the enforcement mechanism is distinct from the right itself. See *Burlington N.*, 548 U.S. at 63, 126 S.Ct. 2405. It does not follow that because discrimination sometimes includes retaliation in other contexts, the Equal Protection Clause must have the same remedial scope. We decline to break new constitutional ground based on the interpretation of statutes with different histories, different structures, and different text than the Fourteenth Amendment.

\*9

\* \* \*

Because Wilcox has pleaded her retaliation claim solely under the Equal Protection Clause, she has failed to present a cognizable claim. The district court therefore did not err when it granted the defendants' motion to dismiss. Accordingly, for the reasons set forth in this opinion, the decision of the district court is

*AFFIRMED*.

**All Citations**

--- F.3d ----, 2020 WL 4664794, 2020 Fair Empl.Prac.Cas. (BNA) 302,902

**Footnotes**

1    We take the facts as alleged in Wilcox's complaint, which we accept as true on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). We therefore do not consider the defendants' attempts to add to the factual record.

2    The district court subsequently dismissed with prejudice the claim for deprivation of a liberty interest and, in the absence of any viable federal cause of action, declined to exercise supplemental jurisdiction over the state-law battery claim. J.A. 169–180. That order disposed of all of Wilcox's remaining claims, thereby ripening for appeal the dismissal of her retaliation claim.

| | |
|---|---|
| 3 | Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." |
| 4 | Distinctions on the basis of race, by contrast, are subject to the strictest judicial scrutiny because " '[r]acial classifications are simply too pernicious to permit any but the most exact connection between justification and classification.' " *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 240–241 (4th Cir. 2010) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 229, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995)). |
| 5 | In *Kirby*, the employee advanced two equal protection claims: first, that his employer was actually motivated to treat him differently in retaliation for his speech, and second, that his employer had no rational basis for treating him differently. 388 F.3d at 447. Wilcox does not argue that Lyons lacked any "conceivable rational basis" to terminate her. *Id.* at 448. Nor has she alleged that the defendants, without a rational basis, treated her discrimination complaint differently from other employees' discrimination complaints. Rather, she contends only that Lyons fired her in retaliation for her complaint of discrimination. |
| 6 | This is not to say that all sex-based classifications are unconstitutional. "The two sexes are not fungible," and "[p]hysical differences between men and women ... are enduring." *United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (internal quotation marks omitted). Indeed, "[i]nherent differences between men and women" need not be ignored or suppressed but rather "remain cause for celebration." *Id.* Classifications based on sex, however, may not be used, "as they once were, to create or perpetuate the legal, social, and economic inferiority of women." *Id.* at 534, 116 S.Ct. 2264. |
| 7 | *See, e.g., Whitehurst v. Bedford Cnty. Sch. Bd.*, No. 6:19-cv-00010, 2020 WL 535962, at *12–13 (W.D. Va. Feb. 3, 2020); *White v. Gaston Cnty. Bd. of Educ.*, No. 3:16-cv-00552-MOCDSC, 2017 WL 220134, at *3–4 (W.D.N.C. Jan. 18, 2017); *Johnson v. Scott Cnty. Sch. Bd.*, No. 2:12-cv-00010, 2012 WL 4458150, at *3 (W.D. Va. July 31, 2012); *Bailey v. Fairfax Cnty. Va.*, No. 1:10-cv-1031, 2011 WL 3793329, at *2 (E.D. Va. Aug. 18, 2011); *Byrd v. Md. Dep't of Health & Mental Hygiene - State Bd. of Dental Exam'rs*, No. WMN-07-2740, 2008 WL 11509375, at *7 (D. Md. Apr. 16, 2008); *Phillips v. Mabe*, 367 F. Supp. 2d 861, 870–871 (M.D.N.C. 2005). |
| 8 | *See, e.g., Harrison v. Fed. Bureau of Prisons*, 298 F. Supp. 3d 174, 181 (D.D.C. 2018); *Roy v. Correct Care Sols., LLC*, 321 F. Supp. 3d 155, 170 n.6 (D. Me. 2018), *rev'd in part on other grounds*, 914 F.3d 52 (1st Cir. 2019); *see also Benson v.* |

*City of Lincoln*, No. 4:18-cv-3127, 2019 WL 1766159, at *9 (D. Neb. Apr. 22, 2019); *Zimmerman v. Ark. Dep't of Fin. & Admin.*, No. 5:17-cv-00160-JM, 2018 WL 700850, at *3 (E.D. Ark. Feb. 2, 2018); *Mazzeo v. Gibbons*, No. 2:08-cv-01387-RLH, 2010 WL 4384207, at *5 (D. Nev. Oct. 28, 2010); *Occhionero v. City of Fresno*, No. CV F 05-1184 LJO SMS, 2008 WL 2690431, at *7–8 (E.D. Cal. July 3, 2008); *Rodriguez-Melendez v. Rivera*, No. CIV. 97-1258 SEC, 1998 WL 151870, at *3–4 (D.P.R. Mar. 23, 1998).

9    The Supreme Court has also construed the federal employer provision of the Age Discrimination in Employment Act and 42 U.S.C. § 1981 to encompass retaliation, again focusing on the particular language and history of the statutes and relevant precedent. *See Gomez-Perez v. Potter*, 553 U.S. 474, 479, 128 S.Ct. 1931, 170 L.Ed.2d 887 (2008) (ADEA); *CBOCS*, 553 U.S. at 445, 128 S.Ct. 1951 (Section 1981).

---

**End of Document**      © 2020 Thomson Reuters. No claim to original U.S. Government Works.