IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER  1:20CV66

JANE ROE,                                          )
                                                   )
          Plaintiff,                               )
                                                   )
v.                                                 )
                                                   )
UNITED STATES OF AMERICA, et al.,                  )
                                                   )
          Defendants.                              )

## DECLARATION OF WILLIAM MOORMANN

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct:

1.      I am the Administrative Officer for the Federal Defender's Office for the Western
District of North Carolina (FDO-WDNC).  I have served in the FPDO-WDNC since 2006 and
assumed duties as Administrative Officer in 2013.  I am and have been since 2013 the local contact
for human resources and personnel issues, among many other duties.  Part of my duties are to
maintain all personnel documents and any other documents relating to employment.  A true and
accurate copy of my job description is published in the DOCS Manual described in this Declaration
and attached as Government Exhibit ("GE") A-1.

2.      This declaration is based upon my personal knowledge and the procedures
applicable to FDOs across the country, including the Defender Organization Classification System
Manual ("DOCS Manual"), the Administrative Office of U.S. Courts procedures, and the Fourth
Circuit's Employee Dispute Resolution ("EDR") Plan.  The DOCS Manual is created and
distributed by the Defender Services Organization ("DSO").  The DSO is a national program
established to ensure the right to counsel guaranteed by the Sixth Amendment, the Criminal Justice
Act, and other congressional mandates relating to indigent criminal defendants.  The DSO also
ultimately determines the distribution of the annual budget in the FDO system.  The FDO-
WDNC's budget is, therefore, set at the national level, not locally.

3.      True and accurate copies of the Introduction, Table of Contents, and "General
Information and Key Terms" portion of the DOCS Manual are attached as GE A-2a and 2b.  The
DOCS Manual and many other materials relating to employment in an FDO are and were during

the Plaintiff's employment accessible via the DSO's intranet system to all employees who have an e-mail address ending in "fd.org."

4.      On August 19, 2016, Plaintiff applied for a position as a Research & Writing Specialist with the FDO-WDNC in the Charlotte office, to begin the following summer after her completion of a year as a Supreme Court Fellow.  A true and accurate copy of Plaintiff's cover letter and resume are attached as GE A-3.

5.      On March 24, 2017, Ross Richardson, the Interim Public Defender at the time, sent a letter to Plaintiff formally offering her a Research & Writing Specialist position in "the Charlotte Headquarters Office."  She was to begin between July 15 and August 15, 2017.  Her start date was August 21 2017 and her salary as a Research & Writing Specialist was set at $101,929.00 per year according to the General Schedule ("GS") 14, Step 1, with the expectation that she would "transition to an Assistant Defender" ("AFD") at an unspecified time in the future.  A true and accurate copy of Plaintiff's countersigned offer letter is attached as GE A-4.

6.      A true and accurate copy of the job description for Research & Writing Specialist from the DOCS Manual is attached as GE A-5.  The Research and Writing Specialist Attorney position is a developmental and trial and appellate support position for attorneys who did not have substantial directly relevant career experience.  As stated in the job description, "[t]he Research and Writing Specialist does not ordinarily sign pleadings or make court appearances.  The Research & Writing Specialist position is not intended to serve as a proxy, substitute, or replacement for an AFD position, nor in the place of an additional AFD position."  These employees do not handle their own caseloads.

7.      Since graduating from law school in 2013, Plaintiff had two federal clerkships, one state-level clerkship, and a one-year Supreme Court fellowship, but did not have any first-hand experience trying cases or representing clients.  She also had no first-hand experience defending criminal defendants in the federal system or otherwise.  Based on what plaintiff told us, she had not tried a case as first or second chair.

8.      Typically, the FDO-WDNC hires attorneys with substantially more trial and career experience than Plaintiff had because of the importance of the defense function and because the FDO budget is limited, resulting in fewer attorneys who could devote time to training of less experienced lawyers like the Plaintiff.  At the time, there were also a limited number of AFDs the office was able to have due to budgetary restrictions imposed by the DSO.

9.      Since Plaintiff's hire, the FDO-WDNC has, like most other FDOs throughout the country, transitioned away from employing Research & Writing Specialists.  Instead, lawyers new to the FDO begin as AFDs.  However, just like other junior lawyers, inexperienced AFDs are not immediately given their own cases to handle, generally do not appear in court without another

2

attorney, nor do they make ultimate decisions about how to handle cases. With time and experience, these lawyers are given tasks the Defender or the Team Leaders feel the attorney is ready to handle. Eventually with sufficient first-hand trial and criminal litigation experience, successful AFDs will begin to handle their own cases and their careers progress accordingly.

10.     This progression is not unique to the Plaintiff and is not a punishment or a reflection on performance. It is simply a result of the fact that first-hand court (including motions practice and especially trial) and client representation experience is a necessary part of attorney progression. This is especially important when representing criminal defendants.

11.     Research & Writing Specialists are paid on the "GS" pay scale set by Congress for federal employees. True and accurate copies of the 2017 and 2018 GS Salary Charts for the Charlotte-Concord-NC-SC geographic area, along with Locality Pay Tables for Geographic Areas and other information regarding federal pay are publicly available at: https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/.

12.     The GS pay structure applies to all the employees of the FDO-WDNC except for the Defender and the AFDs, who are in "unrated" positions. There is guidance generally determining when a GS employee is eligible for grade and step changes. The current Defender has never "skipped" an employee on the GS pay scale up several steps of pay at a time.

13.     All the employees, whether in the GS system or not, of the FDO-WDNC are "at-will" employees who can be terminated by the Defender at any time. Employees may also resign at any time. There is no guarantee of continued employment for any of us.

14.     On October 30, 2017, Plaintiff received a step increase from GS 14, Step 1 to GS 14, Step 2, which resulted in Plaintiff's salary increasing from $101,929 to $105,327. GE A-6. This advancement from Step 1 to Step 2 is automatic unless the Defender affirmatively takes action to block the Step increase. The Defender did not take action to block the Plaintiff's increase. There are 10 Steps [GS-14, step 1 through GS-14, step 10] within GS-14 before employees become eligible for a GS-15 position.

15.     On January 8, 2018, Plaintiff received a cost of living increase bringing her salary to $107,319. GE A-6.

16.     In May of 2018, at the time Plaintiff raised the issue of being promoted to GS-15, the guidelines for promotion to GS-15 stated that 10 years of experience in the federal GS system is required to be eligible for promotion to GS-15. Plaintiff had slightly less than 4 years' federal government employment at that time, about 9 months of which was with the FDO-WDNC.

**Reclassification**

17.     On August 20, 2018, at Plaintiff's request, Plaintiff was reclassified from Research & Writing Specialist to an AFD. GE A-7 is a true and accurate copy of the reclassification request, submitted to the DSO on or about August 16, 2018.  The office's other Research & Writing Specialist was also reclassified at the time.

18.     A move from a Research & Writing Specialist position to an AFD is considered to be a promotion on a long-term basis, even though it may not come with immediate compensation increases or responsibilities.  Unlike Research & Writing Specialists, AFDs have direct exposure to the U.S. Government and its many resources (i.e. our opposing party), and all that entails.  They face the challenges of dealing directly with sophisticated government agencies involved in the criminal justice system like the FBI. Research & Writing is often a key part of the job, but the advocacy and trial exposure on behalf of a client is the crux of the position.  A true and accurate copy of the job description for Assistant Federal Defender is attached as GE A-8.

19.     As noted above, the compensation for the Research & Writing Specialist position was governed by the GS for federal employees.  In contrast, AFD positions are governed by a different pay structure for "ungraded" employees known as the AD system.  Other differences between the two positions are significant.

    a.      **Different Pay Structures**.  Research & Writing Specialists, although they are lawyers, are classified as a "support" function, and are paid according to the DOCS Manual under the GS pay scale. GE A-2b, § 3(B)(1).  AFDs are paid on an "ungraded" basis at "[p]ay rates not to exceed those paid to individuals of similar qualifications, experience, and responsibilities in the Office of the United States Attorney (USAO) for the same district."  GE A-8 § E.

    b.      **Pay Difference**: The AFD position has a much greater long-term pay potential.  Employees operating under the GS system cap out at $158,811.00.  On the other hand, an AFD caps out at $161,288.00 based on the current pay structures.  However, at the beginning of the AFD's career, the pay scale is lower than that of a GS employee with Plaintiff's level of experience at the time.

    c.      **Time to Max Out Pay**: It takes an attorney starting as a GS 14, step 1 twenty years to reach the maximum pay amount under the GS.  In AFD positions, it only takes nine years to max out pay.  In other words, the pay scale is higher, long term, for AFDs than for GS employees.

d. **Career Progression**: Additionally, serving as an AFD is typically viewed as a more prestigious position. Those in the AFD position—as opposed to the Research & Writing position-- can serve in a broader range of capacities, including eventually handling direct trial and appellate work. As noted, Research & Writing Attorneys are not permitted to handle their own cases, or to appear in court without another attorney except for occasional minor procedural motions hearings. In my experience, Research and Writing Attorneys have been offered that transfer take the offer because of (1) the greater maximum pay as an AFD as opposed to a GS employee, (2) the accelerated movement to the maximum pay as an AFD, and (3) the greater professional opportunities and prestige as an AFD. Not all Research & Writing Specialists are offered the AFD position. Some of them are offered it, but only after several years of experience as a Research & Writing Specialist.

20.     As mentioned, the reclassification form Research & Writing Specialist to AFD required Plaintiff to move from the GS system to an "ungraded" AD pay system. Because the rules for calculating salaries differ between the two systems, adjustments had to be made to ensure Plaintiff did not have to take a pay <u>decrease</u> because of the transition.

21.     In August of 2018 at the time of the transition, Plaintiff as a Research & Writing Specialist was making a salary of $107,319.00 per year. Under the ungraded AD System, with Plaintiff's 1 year of service in the FDO-WDNC, plus her prior experience in clerkships and the Supreme Court fellowship, the Defender could have set Plaintiff's salary between $66,254.00 and $101,036.00. The absolute maximum the Defender was permitted to pay Plaintiff under the ungraded AD System would have been $101,038.00 (including locality pay) per year, which would have resulted in an annual pay <u>decrease</u> of $6,319.00 for the Plaintiff.

22.     The Defender had a choice of reclassifying Plaintiff with the maximum AD salary of $101,038.00 (which included 16.21% locality enhancement for the Charlotte, NC area) for an AFD, or to use a "Red Circle Rule" in the DOCS Manual. Under the Red Circle Rule, the Defender, in his discretion, is authorized to compensate a reclassified employee like Plaintiff the same amount the employee previously earned under the GS scale. The Defender instructed that I apply the Red Circle Rule in Plaintiff's case, which resulted in Plaintiff continuing to receive $107,319.00 (locality pay included), and which was above the top of the GS salary range and the maximum the Defender was authorized to pay Plaintiff. Attached as GE A-9 is a true and accurate copy of the Request for Personnel Action submitted wherein the Defender's instructed me to ensure Plaintiff's salary remained at $107,319.00.

5

## Appellate Position

23.     On July 25, 2018, the FDO-WDNC advertised an Appellate Position for an AFD. The following day, the Defender sent out an e-mail to all FDO-WDNC employees providing the job description and additional information about the position stating, in part, "This AFPD will be stationed in Charlotte. **Like Jared and [Plaintiff],** the new position will divide time between providing support for the trial teams and assisting with our appellate and post-conviction practice." A true and accurate copy of the job posting is attached as GE A-10a, and a true and accurate copy of the e-mail sent by the Defender to the FDO-WDNC is attached as GE A-10b.

24.     As a result of prior Sequestration and uncertain budgets, that Appellate AFD position was going to be filled as a "term" position. As a term position, the Appellate AFD position was only for a period of one year and one day.

25.     At that time Plaintiff was already in a long-term position, soon to be reclassified as an AFD position, with no specific ending date. It would have been detrimental to Plaintiff for her to move from a permanent position to a term position with a finite end date. Because Plaintiff was already in a long-term position that was imminently being reclassified as an AFD position, there was no reason for her to apply for or interview for the term position. Basically, she would have already had a better version of the position for which she was applying.

26.     Junior-level AFDs are generally given "hybrid" responsibilities between the trial and appellate divisions, so the FDO-WDNC can determine which track suits their skills and interests best. Sometimes, there is a need for one or the other. Other times there is a need for an AFD to remain in the "hybrid" category depending on the type of work and the make-up of the office at any given time.

27.     At the time the position was advertised, it was anticipated that there would be enough work in the Charlotte office to support three additional AFD's if the Research & Writing Specialists were reclassified: (1) Plaintiff; (2) the other attorney who was reclassified at the same time as Plaintiff; and (3) the person who would fill the advertised term position.

28.     Like all AFD positions, these had to be requested from, authorized by, and approved by the local Defender, the Circuit, <u>and</u> the DSC. GE A-2b § 3(B)(2). All 3 of the positions were authorized.

29.     A true and accurate copy of the offer letter sent to the candidate who ultimately accepted the position is attached as GE A-11. The letter identifies the position as a "Term (Year and one day)" position. That individual's pay was not subject to the "Red Circle Rule" and was accordingly in keeping with the pay structure applicable to AFDs. Even though the woman who

6

filled that position had more experience than Plaintiff, she was paid less than Plaintiff because of the Defender's ability and decision to apply the Red Circle Rule to Plaintiff.

## **Work Space**

30.     As Administrative Officer, I am and have been responsible for the physical facilities within the FDO-WDNC for many years.

31.     When determining where employees are placed within the FDO-WDNC and the size of each employee's workspace, the FDO-WDNC complies with the General Services Administration's ("GSA") Space Planning Guide.  The GSA is a governmental agency responsible for all government leasing.

32.     Research & Writing Specialists, like paralegals and other categories of employees, are designated 150 square feet of rentable space.  Larger offices and most offices with windows are reserved for the Defender, the AFDs, and certain senior-level staff.

33.     Specifically in anticipation of Plaintiff's hire and in July of 2017 before she started work, the FDO-WDNC spent nearly $10,000 to renovate a former File Room and convert it into a comfortable office large enough to hold two employees.  True and accurate copies of the invoices for this upfit are attached as GE A-12.  The space has never been a "utility," "storage," or any other type of "closet" since the conversion in July of 2017.

34.     In compliance with the GSA Space Planning guidelines, when Plaintiff began working, she was placed in this shared, partitioned interior office with one other employee.  Privacy panels were erected between the two workspaces.  Photographs of that office are attached as GE A-13a (Overview of entire office) and GE A-13b (Plaintiff's specific portion of the office).  The office had 396 square feet, was well lighted, fully furnished, and complied with North Carolina building code and occupancy requirements.

35.     In late August of 2018, Plaintiff was provided a private office when one became available and when she became an AFD, which, coincidentally, both happened around the same time.  A true and accurate copy of my e-mail to her regarding the new office is attached as GE-A14a Plaintiff never moved into that office, nor did she respond to my e-mail.  A true and accurate photograph of Plaintiff's AFD office is attached as GE A-14b.

36.     Rather than move into her new office as expected, Plaintiff came to clean out her personal belongings from the FDO-WDNC while everyone else in the office was at an office retreat in October of 2018.  Plaintiff was asked, but not required, to attend the retreat but chose not to respond either way as to her intent.

7

## Telework

37.     In 2017 and up to the present (except during the coronavirus pandemic), the FDO-WDNC did not authorize telework; however, at Plaintiff's request on or about August 17, 2018, the Defender authorized Plaintiff to telework as she requested.  The Defender advised me of this authorization at that time.

38.     Others have requested telework in the past but, until coronavirus in 2020, it has never been permitted on any long-term basis.  I would be the person who would handle any paperwork associated with teleworking.

39.     Attached as GE A-15a is a true and accurate copy of the Plaintiff's telework agreement, which I personally sent to Plaintiff on September 10, 2018, via e-mail.  Plaintiff returned the completed agreement to me on October 2, 2018 after prompting from me.  A copy of the e-mail correspondence with Plaintiff is attached as GE A-15b.

40.     The telework agreement clearly states that "[e]ither management **or the employee** may terminate participation in telework at any time."  Plaintiff could have returned to her duty station in the Charlotte office at any time but chose to continue to telework.  She was never "forced" to telework, and her private office was available to her at any time.

41.     In the telework agreement, Plaintiff stated she was working from her home in ███ NC.  ███ is approximately 90 miles from Charlotte.  Plaintiff did not inform me, as the Office Administrator, of her move outside the Charlotte area.  Her address was never changed or updated in our personnel system by her or anyone else and was always listed as a Charlotte address.

42.     Plaintiff did submit a "Health Benefits Election Form" on April 3, 2018 requesting to add her future spouse to her health insurance effective April 28, 2018, due to a change in marital status on April 28, 2018.  The address listed for her future spouse was identified as a Post Office Box in ███ North Carolina.  ███ is an unincorporated town approximately 1-2 miles away from ███ North Carolina.  A true and accurate copy of the Health Benefits Election Form is attached as GE A-16.

43.     Additionally, since Plaintiff was teleworking from a location outside of the Charlotte metropolitan area, she technically was no longer eligible for the locality adjustment.  Since the telework was always intended to be temporary, the Defender chose not to remove that locality adjustment and continued to pay her the adjustment.

44.     The closest cities to ███ NC with federal courthouses are Asheville, NC (approximately 35 miles away) and Greenville/Spartanburg SC (each approximately 30 miles away).  None of those geographic locations have locality adjustments.

45.     Employees frequently approach us requesting transfers to the Asheville office.  It is a sought-after location, and AFDs senior to Plaintiff have asked that we consider allowing them to move in the unlikely event a full-time AFD opening arises in Asheville.  We do not and have not had physical space in that office to accommodate these requests.  In fact, the interns who are hired in the summer share an office with the Defender, who uses it when he works in Asheville.  There is also significantly more work in Charlotte so most of our attorneys are needed in Charlotte.

### No Adverse Employment Actions Taken Against Plaintiff

46.     As Administrative Officer, I had responsibility for processing any adverse personnel action against Plaintiff.  Based upon my knowledge as Administrative Officer, neither the Defender nor any other individual took any adverse action against Plaintiff at any time.  There are also no "performance improvement plans" or other performance-related issues documented in her personnel file.

47.     Plaintiff took five days of sick leave during the Summer of 2018.  The Defender instructed that I ensure these days be restored to her sick leave, which I did.  Plaintiff was paid the entire period of her employment, including those days, which were categorized as paid "administrative leave" days.  None of those days counted against any of her leave entitlements.  True and accurate copies of her notifications of those sick leave dates are attached as GE A-17.

48.     Plaintiff never received a pay decrease, including her locality adjustment.  Her salary remained at the maximum level permitted commensurate with her experience and years of service through the end of her employment.

### Plaintiff's Departure from FDO-WDNC

49.      On March 22, 2019, I received an automatically generated e-mail from the Administrative Office of the Courts indicating that Plaintiff had transferred within the judiciary effective March 18, 2019.  This was the first and only notification I received indicating that Plaintiff would no longer be working at the FDO-WDNC.  A true and accurate copy of that e-mail is attached as GE A-18.

9

## **Office Diversity**

50.     As one of the three initial employees of the Public Defenders' organizations in the WDNC, both the FDO and the Community Defenders' Office, which served as the FDO's predecessor, I have had the opportunity to see the growth and development of the office under multiple leadership teams. I have also had the opportunity to view the commitment to diversity that the Defender and his predecessors have prioritized.

51.     The FDO-WDNC goes above and beyond seeking diversity by recruiting diverse candidates, advertising with both the Hispanic Bar (HNBA), and the National Bar Association (NBA), encouraging staff to promote job openings to diverse candidates, intentionally hosting diverse interns whenever possible, and employing other methods of attracting diverse employees as they arise. It is and has always been a very central and important part of the current Defender's overall objectives for the office.

52.     The FDO-WDNC currently has 40 employees. Of those employees we have:
     a.     29 female employees and 11 male employees.
     b.     21 diverse employees (as that term is defined by the AOC) and 19 non-diverse (Caucasian) employees.
     c.     13 female attorney employees and 7 male attorney employees.

53.     I have never heard the Defender or anyone else in the office use derogatory language based on gender. Since his appointment in August of 2017, the current Defender has hired 11 employees, of whom 9 are women and 2 are men. Five of the nine women are attorneys, along with both men.

54.     I have never heard or seen the Defender, the First Assistant, or anyone else in the office speak in an inappropriate way to any employee, including the Plaintiff. I have never witnessed any sexual harassment or discrimination of any kind in our office, nor have I witnessed any retaliation. No employee has ever reported to me, as the human resources contact for the FDO-WDNC or otherwise, any type of harassment, discrimination, or retaliation they have witnessed or experienced in the FDO-WDNC.

55.     I have never witnessed any inappropriate interactions between any employees, nor have I witnessed any gender-based (or any protected-category based) comments or actions in the FDO-WDNC at any time. The atmosphere at the office is very professional. We all work hard as a team and are very respectful to each other.

William Moormann

10

# *ADMINISTRATIVE OFFICER*

## A. DEFINITION

The Administrative Officer provides assistance and advice to the Defender on a variety of administrative and management issues. General areas of direct or supervisory responsibility include: management and administrative analysis; financial management; personnel administration, supervision and training; space and facilities management; equipment, telecommunications and office automation management; and property, records and procurement management. *The Administrative Officer is a one-of-a-kind position within a defender organization and may not be combined with other positions in a mixed function.*

## B. PRIMARY JOB DUTIES

The Administrative Officer performs or supervises the performance of tasks such as the following:

1. General Administration and Management:

   a. Acts as the principal advisor to the Defender on all aspects of office administration and management.

   b. Analyzes management issues for the organization. Based on a thorough knowledge of the functions, processes and principles of office management and judicial policies and procedures, identifies issues in need of study, develops analytical methods, conducts investigations and presents findings.

   c. Analyzes the potential impact of new legislation, policies and regulations on office resources. Develops and recommends short and long range plans to ensure effective and efficient office operations. In FPDOs, works with Clerk of District Court (as disbursing office) and complies with all Judiciary accounting requirements.

   d. Develops and maintains a system of internal controls to assure proper segregation of duties for financial, procurement and property management, as well as personnel functions. Periodically audits internal control procedures and recommends improvements. Identifies priorities for the allocation of financial, human and physical resources within the organization.

   e. Implements systems, work methods and procedures to ensure maximum efficiency and economy in the operation and utilization of resources. This includes office organization, staffing, distribution of work assignments, delegation of authority, and similar functions of management. Recommends and/or implements changes in administrative structure of the office, case management, office automation and other functions.

   f. Serves in administrative matters as the Defender's liaison and representative with the various divisions of the AOUSC, the ODS, the Human Resources Division, the GSA,



GOVERNMENT
EXHIBIT
A-1

and with representatives of other federal agencies, vendors, and in the private sector.

    g.  Responds to administrative inquiries from staff and other organizations. Coordinates the preparation and transmittal of all administrative, statistical and narrative reports.

    h.  Implements office security measures and develops an on-site employee safety program.

2. Financial Management:

    a.  Manages the financial operations of the defender office under the general policy guidelines of the ODS and the AOUSC. Controls funds for various activities and functions and ensures expenditures remain within budgetary constraints. Formulates and justifies itemized budget projections for all budget categories.

    b.  Reviews and analyzes long-range budgetary and program emphasis, staffing needs and resource allocations. Prepares and coordinates financial plans and staffing patterns for the organization. Develops case load projections in conjunction with budget plans.

    c.  Manages and oversees day-to-day operations of accounting functions. Performs or oversees the accounting for the disbursement of appropriated funds for the defender organization. Monitors and controls expenses incurred in the operation and maintenance of the office. Assumes responsibility for complying with the internal controls procedures of the office.

    d.  Evaluates and recommends improvements for the financial systems. Implements improved systems and procedures for ensuring the accuracy and facilitating the disbursement of monies processed through the defender organization. Complies with judiciary accounting requirements.

    e.  Develops and implements, with the Defender, a system of internal controls to assure proper segregation of accounting functions and to prevent errors and fraud.

    f.  Maintains and analyzes accounting records; provides documentation for expenditures and balances of the defender organization.

    g.  Develops and monitors monthly variance reports, status of funds reports and monthly reconciliation reports for review and approval by the Defender.

    h.  Prepares or reviews vouchers for payment, ensuring accuracy and appropriateness.

    i.  Develops and monitors spending plans as budget allotments are received. Recommends reprogramming actions between budget classifications and categories as necessary.

    j.  Initiates and maintains a comprehensive training program for all employees responsible for financial duties. Ensures that all such employees are informed of regulations and

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 12 of 102

procedures relating to financial matters.

3. Personnel Administration and Management:

    a. Provides the Defender with technical and advisory assistance in the areas of recruitment, selection and staffing, classification and compensation, benefits, performance management, grievance and EEO procedures, performance evaluations and employee relations. Implements personnel policies and procedures and rules and regulations for the organization.

    b. Reviews, researches, develops and recommends personnel policies for the Defender. Advises senior managers on personnel matters such as recruitment and staffing, classification and compensation, benefits, performance management, grievance and adverse action procedures and the Equal Employment Opportunity (EEO) and employee dispute resolution (EDR) plans.

    c. Researches topics and issues in employment law and regulations, Judicial Conference Policy, AOUSC, ODS policies and procedures, and provides findings to the Defender. Advises Defender and staff regarding local office, state (CDO), AOUSC and ODS policies and procedures.

    d. Provides technical expertise and advice to the Defender and staff on issues such as employee development and promotion, position standards and classification, standards of conduct, performance standards and appraisals, disciplinary proceedings, dispute resolution and out-placement services.

    e. Develops and administers procedures for recruitment and selection of applicants for employment. Assists with determination of basic eligibility and qualifications standards. Screens applications, tests and interviews candidates. Refers qualified candidates to the senior managers for final selection.

    f. Administers Equal Employment Opportunity (EEO) programs and complies with reporting requirements. Assures that hiring and promotion practices comply with Equal Employment Opportunity guidelines.

    g. Initiates and maintains a comprehensive orientation program for all new employees on various administrative, personnel and procedural matters. Assures documentation and justification of decisions made. Administers exit interviews to departing employees.

    h. Determines training needs, plans and methods. Develops training manuals for non-attorney staff. Works with Defender and/or Supervisory Assistant to identify training needs for attorney staff. Evaluates training plans and requests to ensure training is appropriate and properly approved. Identifies sources for training.

    i. Facilitates management development programs for supervisory personnel. Promotes development of technical and specialized skills in supervisory employees.

j. Advises senior managers on application of relevant classification standards according to DOCS. Advises senior managers regarding appointments, promotions, separations, terminations, within-grade increases, and quality step increases.

k. Prepares position descriptions and performance work plans for all non-attorney staff. Applies qualification standards and develops rating plans as needed. Assists in conducting performance appraisals for non-attorney staff. Determines which personnel are not performing satisfactorily and recommends appropriate action.

l. Provides advice and assistance to employees and managers on various benefit programs including health benefits, life and disability insurance, leave policies, and the Employee Assistance Program (EAP). If the office is a CDO, initiates requests for bids on group insurance policies and retirement plans, selects appropriate plans and plan administrators; develops a corporate benefit package comparable to that offered to federal employees; administers selected programs. Coordinates employee benefits with regard to retirement; advises retiring employees on retirement benefits and activities.

m. Processes personnel and payroll actions such as appointments, promotions, separations, terminations, within-grade increases, and quality step increases. Maintains personnel files and records such as payroll and leave records, personnel training reports, and time and attendance records.

n. Acts as liaison with the Human Resources Division, Federal Judicial Center, ODS, and Board of Directors (CDO) in personnel matters. Acts as the EEO coordinator, health benefits coordinator, and training coordinator for the organization.

o. Evaluates the overall effectiveness of the personnel program and its components. Recommends program improvements. Develops and administers time and attendance system.

4. Space, Telecommunications and Office Automation Management:

a. Determines need and secures adequate and suitable office space. Monitors monthly or quarterly rent bills.

b. Coordinates construction projects and arranges office relocations, renovations, and repairs.

c. Contracts for maintenance and repair of office space, equipment and furniture.

d. Arranges for the authorization, procurement and installation of telecommunication equipment through the appropriate government agencies and the telephone company. Serves as liaison to the circuit's telecommunications coordinator, the AOUSC, GSA, and equipment vendors, researching any discrepancies or problems encountered with any service requests.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 14 of 102

e. Arranges for the authorization, procurement and installation of office automation equipment in conjunction with the Computer Systems Administrator.

f. Acts as CALR (computer aided legal research) coordinator for the district.

5. Purchasing, Procurement, Property Management:

a. Ensures adherence to federal and local procurement practices and procedures. Acquires current knowledge of fiscal year spending requirements and restrictions provided by 1) ODS and the AOUSC; 2) the procurement practices provided in *The Guide to Judiciary Policy*; 3) applicable state and federal statutes; and 4) GSA's rules and regulations. Acts as on-going liaison with ODS, the Contracts and Services Division (CSD) and GSA in all purchasing matters.

b. Develops, with the Defender, a system of internal controls to assure the proper segregation of procurement functions.

c. Determines need and ensures procurement of supplies, equipment, library materials, furnishings and professional contract services from government and non-government sources through competitive bids, existing government contracts, or new contracts. Acts as advisor to staff in purchasing matters. Originates or reviews requisitions and confers with requesting persons regarding necessary goods and services. Originates or receives and processes purchase orders and invoices as authorized. Prepares correspondence and conducts meetings and interviews with vendors or their representatives. Determines whether prices are fair and correct; judges if quality meets specifications and performance standards. Locates sources for regular and emergency supplies purchases.

d. Initiates and maintains a comprehensive training program for all employees responsible for procurement duties. Ensures that all such employees are informed of regulations and procedures relating to procurement matters.

6. Maintains purchasing records and reports. Reports significant discrepancies in inventory reconciliations to the Defender.Records, Mail and Forms Management:

a. Organizes and manages storage systems and/or facilities for old records and used property. Monitors accountable property.

b. Ensures that the organization has an effective system of data and records security, storage, retrieval and archiving for case and administrative files.

c. Oversees mail and forms management in compliance with applicable regulations and procedures.

7. Other Responsibilities:

a. Initiates and maintains a comprehensive training program for all employees responsible for administrative and management duties.

b. As designated by the Defender, directly supervises the work of the Supervisory or Administrative Assistant, the Financial Administrator, the Personnel Administrator, the Property and Procurement Administrator, the Supervisory or Computer Systems Administrator, Panel Administrator, Case Management Assistant, Supervisory Legal Secretary, and other positions as designated by the Defender.

c. Participates in national administrative working groups or projects, as needed.

d. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Administrative Officer reports directly to the Defender, who determines overall objectives and resources available. The Administrative Officer has wide discretionary and independent authority in the implementation of policies and programs to achieve the objectives.

## D. QUALIFICATIONS

To qualify for the position of Administrative Officer, a person must be a high school graduate or the equivalent and must have the requisite experience outlined in the *Salary and Experience Scale* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

## E. SALARY AND EXPERIENCE SCALE

| DOCS Grade Level | Years of General Experience | Years of Specialized Experience | Total Years of Experience |
|---|---|---|---|
| 11 | 3 | 3 | 6 |
| 12 | 3 | 4 | 7 |
| 13 | 3 | 5 | 8 |
| 14 | 3 | 6 | 9 |
| 15 | 3 | 7 | 10 |

**Note:** One year of the required experience must have been at, or equivalent to, the next lower grade in federal service. Experience that has not provided training or required the application of the knowledge, skills and abilities outlined in the *Primary Job Duties* section above is **not** creditable experience. Specialized experience may always substitute for general experience but general experience may not substitute for specialized experience.

**Note:** To qualify at the **DOCS Level 14,** the Administrative Officer must supervise *either* three or more staffed offices *or* three or more administrative specialist positions (three of the following: Supervisory Administrative Assistant or Administrative Assistant, Financial Administrator,

Personnel Administrator, Property and Procurement Administrator, Panel Administrator, Operations Administrator, Supervisory Computer Systems Administrator or Computer Systems Administrator, Case Management Assistant, Supervisory Legal Assistant). If the minimum number of subordinates includes subordinate supervisors, the subordinates of these supervisors cannot be counted.

**Note:** To qualify at the ***DOCS Level 15,*** the Administrative Officer must supervise *either* 1) three or more staffed offices **and** three administrative specialist positions *or* 2) four or more administrative specialist positions (four of the following: Supervisory Administrative Assistant or Administrative Assistant, Financial Administrator, Personnel Administrator, Property and Procurement Administrator, Panel Administrator, Operations Administrator, Supervisory Computer Systems Administrator or Computer Systems Administrator, Case Management Assistant, Supervisory Legal Assistant). If the minimum number of subordinates includes subordinate supervisors, the subordinates of these supervisors cannot be counted.

**Note:** A ***staffed office*** is a Capital Habeas Unit (CHU) or an office that is designated as the permanent duty station for one or more permanent FDO employees. Associated with the supervision of a staffed office are the duties related to general office administration; financial management; personnel administration and management; space and facilities management; telecommunications and automation management; purchasing, procurement and property management; records, mail, forms and file management; and local area network and PC management and support.

## F. EXPERIENCE REQUIREMENTS

### General Experience

Experience that provides evidence the individual has:

- a general understanding of the methods and skills required for accomplishing the tasks outlined in the *Primary Job Duties* section above;
- a general understanding of office confidentiality issues, such as attorney/client privilege;
- the ability to read, analyze and interpret common technical journals and legal documents;
- the ability to apply common sense understanding to carry out instructions furnished in written, oral or diagram form;
- the ability to analyze and apply relevant policies and procedures to office operations;
- the ability to exercise good judgment in a mature and diplomatic manner;
- the ability to communicate orally and in writing;
- a general knowledge of office practices and legal processes;
- the ability to recognize and analyze problems and recommend practical solutions;
- the ability to use a personal computer.

### Specialized Experience

Progressively responsible experience in the functional areas described in the *Primary Job Duties* section above. Such experience provides the individual:

- the ability to supervise the work of others;
- a comprehensive knowledge of administrative management principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of management issues;
- a comprehensive knowledge of fiscal processes including budget preparation and management, office automation, procurement, personnel management, and operations in a legal environment;
- experience as an administrative manager performing progressively responsible duties;
- the skills and ability to execute the duties of the position.

## G. EDUCATIONAL SUBSTITUTIONS

Education above the high school level in accredited institutions may be substituted for the general experience on the basis of one academic year (30 semester or 45 quarter hours) equals nine months of experience.

Completion of all the requirements for a bachelor's degree from an accredited college or university and having met one of the following may be substituted for one year of specialized experience:

1. An overall "B" grade point average equaling 2.9 or better of a possible 4.0.

2. Standing in the upper third of the class.

3. A "B+" (3.5) grade point average or better in major fields of study such as business or public administration, accounting, personnel management, information systems, legal management, or specialized or significant course work in a field closely related to the subject matter of this position.

4. Election to membership in Phi Beta Kappa, Sigma XI, or one of the National Honor Scholastic Societies meeting the minimum requirements of the Association of College Honor Societies, other than Freshman Honor Societies.

Completion of one academic year (18 semester hours) of graduate study in an accredited university in such fields as business or public administration, accounting, personnel management, information systems, legal management or other field closely related to the subject matter of the position, may be substituted for one year of specialized experience.

Completion of a master's degree or two years of graduate study (36 semester hours) in an accredited university in such fields as business or public administration, accounting, personnel management, information systems, legal management or other field closely related to the subject matter of the position, or completion of a Juris Doctor (JD), may be substituted for two years of specialized experience.

## H. PHYSICAL DEMANDS AND WORK ENVIRONMENT

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 18 of 102

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear. The individual frequently is required to use hands to touch, handle, or feel. The individual must occasionally lift and/or move up to 25 pounds. The individual is frequently required to stand, walk and reach with hands and arms. Frequent travel to branch offices may be required. The individual will spend most of his/her time in an office environment.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 19 of 102

# Defender Organization Classification System



**2016 Version**
*Revised September 2016*



GOVERNMENT EXHIBIT
A-4a

# DOCS

## Sections

Revised September 2016

| | |
|---|---|
| **1** | *General Information and Key Terms*<br>*Salary and Experience Scale* |
| **2** | *Appointment and Compensation of Assistant Defenders* |
| **3** | *Assistant Federal Defender Positions* |
| **4** | *Research and Writing Specialist Positions*<br>*Legal Intern Positions* |
| **5** | *Paralegal Positions* |
| **6** | *Investigator Positions* |
| **7** | *Interpreter and Librarian Positions* |
| **8** | *Legal Assistant Positions* |
| **9** | *Administrative Positions* |
| **10** | *Information Technology Positions* |
| **11** | *Office Support Positions* |
| **12** | *National Support Positions* |
| **13** | *Mitigation Specialist Positions* |

# RELEASE NOTES AND UPDATE INFORMATION

❖ **DOCS, December 2016 updates**
> (*DOCS2016.pdf* - full document)

> This version includes a capital mitigation specialist position description and a non-capital mitigation specialist position description as approved by the Judicial Conference.

❖ **DOCS, December 2012 updates**
> (*DOCS12212012.pdf* - full document)
> (*DOCS12212012Portfolio.pdf* – includes national positions)

> ➤ This version includes updated "Litigation Support Duties," which were added to all paralegal, investigator and CSA staff position descriptions, as approved by the DOCS Expert Panel.

❖ **DOCS, December 2010 Version, Third Edition.**
> (*DOCS1210.pdf* – full document.)

> ➤ The new *DOCS*. Supersedes all previous versions. The new edition reflects all of the adopted Federal Defender Compensation Study changes endorsed by the Defender Services Committee at its meeting in December 2009, and issued through a series of policy memoranda during 2010.

❖ **DOCS, November 1998 Version, Second Edition, Updated July 2000.**
> (*DOCS98_2d.pdf* – full document.)
> (*DOCS0700.pdf* – revisions package released July 2000.)

> ➤ Revisions to the ***Research and Writing Specialist*** position description (as reviewed by Defenders at the January 2000 conference).

> ➤ Addition of *Release Notes and Update Information* page.

❖ **DOCS, November 1998 Version.**
> (*DOCS1198.pdf* – full document.)

> ➤ The new *DOCS*. Supersedes all previous versions.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 22 of 102

# *TABLE OF CONTENTS*

## *DEFENDER ORGANIZATION CLASSIFICATION SYSTEM (DOCS)*

**RELEASE NOTES AND UPDATE INFORMATION** ........................................................ i

**SECTION 1: GENERAL INFORMATION AND DEFINITION OF KEY TERMS**

I.    Introduction.................................................................................................. 1-1
    A.    Purpose ...................................................................................... 1-1
    B.    Key Definitions .......................................................................... 1-1
    C.    Additional References ................................................................. 1-2

II.    Appointment and Compensation of Personnel: Statutory Authority ............... 1-2
    A.    General ....................................................................................... 1-2
    B.    Federal Public Defender Organizations (FPDOs) ......................... 1-2
    C.    Community Defender Organizations (CDOs) ................................ 1-2

III.    Development and Contents of DOCS ............................................................ 1-3
    A.    Purpose and Development of DOCS .............................................. 1-5
    B.    Categorization of DOCS Positions ............................................... 1-5
        1.    Graded Positions ............................................................. 1-5
            a.    General (includes DOCS position categories)........................ 1-5
            b.    One-of-a-Kind Positions ............................................ 1-6
            c.    National Support Positions ......................................... 1-6
            d.    Legal Interns.............................................................. 1-6
        2.    Ungraded (Attorney) Positions ......................................... 1-6
        3.    Supervisory Positions.................................................... 1-7
            a. Supervisory Responsibilities........ .................................... 1-7

IV.    DSC-Authorized Positions for FDOs............................................................ 1-8
    A.    Process for Obtaining Positions:   Resource Requirements,
        Budget Requests, Supplemental Requests................................... 1-8
    B.    Obtaining DSC Approval............................................................. 1-9
    C.    Changes to DSC-Authorized Positions ........................................ 1-9
        1.    General ........................................................................... 1-9
        2.    Effecting Change............................................................. 1-9
        3.    Reclassification .............................................................. 1-9
        4.    Mixed-Function Position .................................................. 1-10
        5.    Exception to Approval Requirement ................................. 1-10

V.    Appointing Personnel.................................................................................. 1-11
    A.    Determining Qualifications .......................................................... 1-11
        1.    Qualification Standards .................................................... 1-12
        2.    General Work Experience ................................................ 1-12
        3.    Specialized Work Experience ........................................... 1-12
        4.    Selective Placement Factors ............................................. 1-12
        5.    Creditability.................................................................... 1-12
        6.    Educational Substitutions ................................................. 1-13
        7.    Determination of Equivalence........................................... 1-13

|       | B.   | Job Sharing ................................................................................................ | 1-13 |
|       | C.   | Mixed-Function Positions ........................................................................... | 1-14 |
|       | D.   | Position Reassignments .............................................................................. | 1-14 |

| VI.   | Grade Levels ............................................................................................................. | 1-15 |
|       | A.   | General ....................................................................................................... | 1-15 |
|       | B.   | Entry Level ................................................................................................ | 1-15 |
|       |      | 1.   Standard DOCS Positions ..................................................................... | 1-15 |
|       |      | 2.   Mixed-Function Positions ..................................................................... | 1-15 |
|       | C.   | Target Grade............................................................................................... | 1-16 |
|       |      | 1.   Standard DOCS Positions ..................................................................... | 1-16 |
|       |      | 2.   Mixed-Function Positions ..................................................................... | 1-16 |
|       | D.   | Saved Grade and Saved Pay Plan ............................................................... | 1-17 |
|       | E.   | Possible Overtime Pay Requirement for CDOs ........................................... | 1-17 |

| VII.  | Movement Within and Between Grade Levels ............................................................ | 1-17 |
|       | A.   | General ....................................................................................................... | 1-17 |
|       | B.   | Within-Grade Increases (WGIs).................................................................. | 1-18 |
|       |      | 1.   Definition .......................................................................................... | 1-18 |
|       |      | 2.   Eligibility........................................................................................... | 1-18 |
|       |      |      | a.   Waiting Period ................................................................... | 1-18 |
|       |      |      | b.   Performance ..................................................................... | 1-18 |
|       |      | 3.   Denial of WGIs .................................................................................. | 1-19 |
|       | C.   | Promotions ................................................................................................. | 1-19 |
|       |      | 1.   Definition .......................................................................................... | 1-19 |
|       |      | 2.   Eligibility........................................................................................... | 1-20 |
|       |      | 3.   Anniversary Date Status...................................................................... | 1-20 |
|       |      | 4.   Determining Proper Grade and Step for Promotions ............................ | 1-20 |
|       | D.   | Quality Step Increases (QSIs) .................................................................... | 1-22 |
|       | E.   | Awards ....................................................................................................... | 1-23 |
|       | F.   | Demotions .................................................................................................. | 1-23 |

| VIII. | Exceptions to DOCS Requirements............................................................................ | 1-23 |
|       | A.   | General ....................................................................................................... | 1-23 |
|       | B.   | Process for Obtaining Approvals ................................................................ | 1-23 |

| IX.   | Updating and Revising DOCS ................................................................................... | 1-24 |
|       | A.   | Identifying Need for New Positions or Revisions to Existing Policies......... | 1-24 |
|       | B.   | DOCS Expert Panel .................................................................................... | 1-24 |
|       | C.   | DSC Approval of New Positions................................................................. | 1-24 |
|       | D.   | Drafting New Position Descriptions............................................................ | 1-24 |
|       | E.   | Modification to Existing DOCS Policies .................................................... | 1-25 |

| X.    | Comparative Salary and Experience Scale Information ................................................ | 1-25 |
|       |      | *Comparative Salary and Experience Table*.................................................... | 1-25 |

## SECTION 2: APPOINTMENT AND COMPENSATION OF ASSISTANT DEFENDERS

Appointment and Compensation of Assistant Federal Defenders .................................... 2-1
(Effective May 26, 2010)

# SECTION 3: ASSISTANT DEFENDER POSITION DESCRIPTIONS

First Assistant Defender ...........................................................................................3-1
Second Level Supervisor ..........................................................................................3-4
Third Level Supervisor .............................................................................................3-7
Senior Litigator .......................................................................................................3-10
Assistant Federal Defender .....................................................................................3-13

# SECTION 4: RESEARCH POSITION DESCRIPTIONS

Research and Writing Specialist ...............................................................................4-1
Legal Intern ..............................................................................................................4-6

# SECTION 5: PARALEGAL POSITION DESCRIPTIONS

Chief Paralegal ..........................................................................................................5-1
Paralegal ....................................................................................................................5-6
Assistant Paralegal ..................................................................................................5-11

# SECTION 6: INVESTIGATOR POSITION DESCRIPTIONS

Chief Investigator ......................................................................................................6-1
Investigator ...............................................................................................................6-7
Assistant Investigator .............................................................................................6-12

# SECTION 7: INTERPRETER AND LIBRARIAN POSITION DESCRIPTIONS

Chief Interpreter ........................................................................................................7-1
Interpreter .................................................................................................................7-6
Librarian ..................................................................................................................7-10

# SECTION 8: LEGAL SECRETARY/ASSISTANT POSITION DESCRIPTIONS

Secretary to the Defender .........................................................................................8-1
Secretary to the First Assistant ................................................................................8-5
Senior Legal Assistant ..............................................................................................8-9
Supervisory Legal Assistant ...................................................................................8-13
Legal Assistant ........................................................................................................8-17

# SECTION 9: ADMINISTRATIVE POSITION DESCRIPTIONS

Administrative Officer ..............................................................................................9-1
Supervisory Administrative Assistant ....................................................................9-10
Administrative Assistant .........................................................................................9-19
Financial Administrator ..........................................................................................9-28
Personnel Administrator .........................................................................................9-33
Property and Procurement Administrator ...............................................................9-38
Panel Administrator .................................................................................................9-43

# SECTION 10: INFORMATION TECHNOLOGY POSITION DESCRIPTIONS

Supervisory Computer Systems Administrator .......................................................10-1
Computer Systems Administrator ...........................................................................10-7
Assistant Computer Systems Administrator ..........................................................10-13

# SECTION 11: OFFICE SUPPORT POSITION DESCRIPTIONS

Administrative Secretary ........................................................................................11-1
Case Management Assistant ...................................................................................11-5
Panel Assistant ........................................................................................................11-9
Clerical Assistant ..................................................................................................11-14
Receptionist ...........................................................................................................11-18

## SECTION 12: NATIONAL SUPPORT POSITION DESCRIPTIONS

NITOAD: Branch Chief, Branch Deputy Chief, Administrative Assistant, Domain Administrator and Network Administrator.................................................................................................12-1

NITOAD: Programmer, Project Manager, Property & Procurement Administrator and Operating Systems Administrator ........................................................................................................12-28

National Litigation Support-NLS: Administrator, Assistant Administrator and Paralegal......................12-50

Federal Capital Habeas-2255 Project: Project Director, Project Manager, Attorney, Paralegal and Research and Writing Specialist ................................................................................12-65

National SRC: Attorney, Paralegal and Research and Writing Specialist.................................12-92

National FCARC: Attorney and Research and Writing Specialist.........................................12-110

National Mitigation: Mitigation Coordinator and Mitigation Paralegal ................................12-120

National CRC: Attorney, Paralegal and Investigator (Victim Liaison Specialist)....................12-129

## SECTION 13: MITIGATION SPECIALIST POSITION DESCRIPTIONS

Non-Capital Mitigation Specialist.................................................................................13-1

Capital Mitigation Specialist.......................................................................................13-5

# *DEFENDER ORGANIZATION CLASSIFICATION SYSTEM*

## *GENERAL INFORMATION AND DEFINITION OF KEY TERMS*

### I.    Introduction

#### A.    Purpose

This section, the *General Information and Definition of Key Terms*, provides Federal Public and Community Defender Organizations with general information concerning the authorities, responsibilities and processes associated with the appointment and compensation of graded personnel.[1]  Key terms are defined and personnel management policy statements are included.

#### B.    Key Definitions

**DOCS:** the Defender Organization Classification System.   The DOCS is the personnel classification system for defender organizations.

**FDOs:**  Federal Public and Community Defender Organizations are collectively referred to as *FDOs, federal defender organizations*, or *defender organizations*.

**AOUSC:** the Administrative Office of the United States Courts.

**DSC:** the Judicial Conference Committee on Defender Services.

**ODS:** the Office of Defender Services, AOUSC.

**OHR:** the Office of Human Resources, AOUSC.

**USAO:** the Office of the United States Attorney.

**JSP:** the Judiciary Salary Plan.

---

[1]Position descriptions for defender organization attorneys (*ungraded* personnel) are included in the DOCS Manual as a matter of convenience.  As noted in **Section III.B.2** herein, policies and procedures associated with the appointment and compensation of attorneys are found in ODS policy memoranda.  Examples of the most recent memoranda are included in Section 2 for reference.  Updated memoranda concerning salary charts are sent by ODS to Defenders on an annual basis.



C.    **Additional References**

FDOs should consult the *Guide to Judiciary Policy (Guide), Volume 12, Human Resources,* for additional information on judiciary personnel policies.

FDOs should also consult the *Federal Defender Operations Manual, Chapter 11 (Personnel),* for comprehensive information regarding personnel policies and procedures.

II.    **Appointment and Compensation of Personnel: Statutory Authority**

A.    **General**

The Criminal Justice Act *(18 U.S.C. § 3006A)* grants Federal Public Defenders the authority to appoint attorneys and other personnel.

B.    **Federal Public Defender Organizations (FPDOs)**

The Federal Public Defender (FPD) appoints full-time attorneys in such numbers as approved by the circuit court of appeals *(18 U.S.C. § 3006A (g)(2)(A))*, and by the Judicial Conference Committee on Defender Services (DSC). The FPD may also appoint non-attorney personnel as authorized by the DSC.

The FPD may fix the compensation of attorneys and other personnel at rates not to exceed those paid to individuals of similar qualifications, experience, and responsibilities in the Office of the United States Attorney (USAO) for the same district. *(*see the *Guide, Volume 7, Defender Services.)*

C.    **Community Defender Organizations (CDOs)**

Although not statutorily mandated, the DSC considers the authority of the CDO Executive Director comparable to that of the Federal Public Defender with respect to the appointment and compensation of personnel. Throughout DOCS, the term *Defender* or *Federal Defender* refers to the head of a FDO.

The DSC annually approves federal grants for CDOs. The receipt and use of grant funds is subject to the conditions set forth in the *Grant and Conditions. (*See the *Guide, Volume 7, Part A, Chapter 4 and its Appendix.)* Approval of a CDO grant by the DSC is based on the assumption that the CDO follows judiciary policies regarding appointment and compensation of personnel. DOCS, therefore, applies to CDOs.

Clause 15 of the *Grant and Conditions* requires a CDO to:

•    provide its employees with written personnel policies and other terms and conditions of employment;

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 28 of 102

- furnish the ODS a copy of said policies and any subsequent changes thereto;
- notify the ODS of the intent to fill a personnel vacancy.

## III. Development and Contents of DOCS

### A. Purpose and Development of DOCS

DOCS was developed to provide FDOs with a variety of positions that are comparable, in scope of responsibility and pay levels, to those used by the USAOs while meeting the unique needs of a defender organization. The needs of a 100-person office are quite different from those of a four- to six- person office. DOCS was designed to allow a Defender to structure his or her organization and select positions for the most effective office operations.

Prior to the implementation of DOCS, the positions available to FDOs were very limited. The duties and responsibilities included in the original position descriptions (written in the late 1960s or early 1970s) no longer accurately reflected the tasks performed by defender personnel. Additionally, the grade levels were not comparable to those of the USAO or other judiciary positions. Further, the rapid growth of the federal defender program combined with the divestiture of authority from the AOUSC to Defenders, redefined the role of many positions in defender operations. Changes in the nature of the practice of criminal law, increased Congressional oversight, and additional accountability and reporting requirements highlighted the limitations of the original position descriptions and emphasized the need for updated and expanded position descriptions.

Beginning in 1990, Defender organization personnel developed DOCS to meet the changing needs of all defender organizations. In May 1993, the FDOs adopted DOCS as the personnel classification system. In 1995, a *DOCS Expert Panel*, consisting of FDO Defenders and staff, was formed to review and recommend revisions to the DOCS positions descriptions. The groups' efforts are ongoing.

An 18-month Study on Compensation in Federal Defender Organizations was undertaken in 2008. The Study analyzed and compared the compensation levels and benefits of both graded and ungraded positions in Federal Defender Organizations (FDOs) to compensation levels and benefits in U.S. attorneys' offices (USAOs) to ensure parity at all levels. The study concluded in December 2009 when the contractor, Human Resources Research Organization, assisted

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 29 of 102

ODS in presenting the study recommendations to the Defender Services Committee.

Overall, the Study found that:
- FDO compensation is in compliance with 18 U.S.C. § 3006A(g)(2)(A).
- There are no major deficiencies with FDO compensation policies or patterns of over-compensation in FDOs relative to United States attorneys' offices.
- There is a considerable degree of parity for attorney and graded compensation systems.
- There are several policies that allow United States attorneys' offices to compensate their employees at higher levels than FDOs can provide.

The *DOCS Expert Panel*, which served as the primary source of specialized knowledge for the contractor and ODS during the study, considered the study findings and defender comments in August 2009. The *DOCS Expert Panel* submitted its recommendations to the Performance Measurement Working Group (PMWG) and the Defender Services Advisory Group (DSAG). At their meetings in September and October 2009, respectively, the PMWG and the DSAG endorsed the recommendations, which were then submitted for consideration by the Defender Services Committee's Long-Range Planning and Education Subcommittee. The Subcommittee endorsed the recommendations at its meeting in October 2009.

The full Defender Services Committee (the Committee) considered and endorsed the study recommendations at its meeting in December 2009.

The *DOCS Expert Panel* and ODS undertook the substantive work needed to implement the recommendations and reissue an updated DOCS in December 2010.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 30 of 102

**B.** **Categorization of DOCS Positions**

    **1.** **Graded Positions**

        **a.** **General**

To facilitate ODS's tracking of DSC-authorized positions, ODS has grouped the graded DOCS positions into six major *categories* according to type of positions (*see below*). FDOs are generally authorized several positions in each of the six DOCS categories.

The six ODS position categories are: Research and Writing/Paralegal; Investigator/Interpreter; Administrative; Information Technology; Legal Secretarial; and Office Support. The individual DOCS positions in each category are listed below:

*DOCS Position Categories*

**Research & Writing/Paralegal**
Research & Writing Specialist
Legal Intern
Chief Paralegal
Paralegal
Assistant Paralegal

**Investigator/Interpreter**
Chief Investigator
Investigator
Assistant Investigator
Chief Interpreter
Interpreter
Librarian

**Administrative**
Administrative Officer
Supervisory Administrative Assistant
Administrative Assistant
Financial Administrator
Personnel Administrator
Property & Procurement Administrator
Panel Administrator

**Information Technology**
Supervisory Computer Systems Administrator
Computer Systems Administrator
Assistant Computer Systems Administrator

**Legal Assistant**
Secretary to the Federal Public or Community Defender
Secretary to the First Assistant Defender
Senior Legal Assistant
Supervisory Legal Assistant
Legal Assistant

**Office Support**
Administrative Secretary
Case Management Assistant
Panel Assistant
Clerical Assistant
Receptionist

**b. One-of-a-Kind Positions**

The functions of several DOCS positions are considered unique, and only one such position is available to each organization. The positions that are limited to one per organization are identified in the DOCS description definitions as one-of-a-kind.

**c. National Support Positions**

In order to economize, certain DOCS positions provide centralized support to all FDOs on a national program level. These positions are assigned to individual defender offices, yet support all FDOs. Position descriptions for these national support positions are contained in the DOCS in a reserved chapter available only through ODS. FDOs hosting national positions should consult with ODS regarding the DOCS title, grade level and position description prior to advertising or filling a national position.

**d. Legal Interns**

FDOs regularly hire law students or recent law school graduates to assist with legal research, writing, and case preparation. The DSC does not specifically authorize these positions. Legal Interns are only hired as *temporary* employees. The Legal Intern position is often incorrectly referred to as a Law Clerk. The title *Law Clerk* is reserved for high-level positions on a judge's staff. **Legal Intern is the correct title for the defender organization position.** The Legal Intern position description is included in DOCS. An individual who has passed the bar cannot be placed in a Legal Intern position.

**2. Ungraded (Attorney) Positions**

The Federal Defender and all assistant federal defenders are considered *ungraded* positions. Salaries for these attorney positions *are not* based on the Judiciary Salary Plan (JSP) grade and step tables used to calculate salaries of graded personnel.

Position descriptions for the various AFD positions are included in the DOCS Manual as a matter of convenience. The AFD position descriptions contain a general explanation of the duties and activities associated with AFDs, based on those of the USAO. These position descriptions should be used as guidelines. ***Policies and procedures related to the appointment and compensation of AFDs, and applicable salary charts, are sent to FDOs by the ODS in the form of policy memoranda and***

*updates to Tab 2 of this manual.  The individual memoranda and Tab 2
should be replaced as they are updated by ODS.*

The number of authorized ungraded positions is also tracked by ODS.

3.    **Supervisory Positions**

   a.    **Supervisory Responsibilities**

Listed below are the types of responsibilities generally performed
by supervisors who are either attorneys or graded employees.
With few exceptions, supervisors meet the technical qualifications
of the positions they supervise.    They may have line
responsibilities in addition to providing, on a daily basis, the
technical and administrative supervision of employees who are
performing a particular job function or functions.    Technical
supervision generally relates to the abilities associated with the
functional responsibilities, e.g., technical proficiency in using
interviewing techniques to obtain factual information from
witnesses as an Investigator or applying the principles of financial
accounting as a Financial Administrator.    Administrative
supervision generally relates to the ability to select, direct, develop,
reward, and retain qualified people to perform their work.

Employees holding supervisory positions generally perform the
following list of supervisory tasks:

1)    Plan work to be accomplished by subordinates, including
setting and adjusting priorities and deadlines, and
distributing and balancing the workload among employees.
2)    Assign work to subordinates.
3)    Evaluate work performance of subordinates by keeping in
touch with the status and progress of work and maintaining
records of accomplishments.
4)    Give advice or assist with work in progress.  Approve,
revise, or reject completed work.
5)    Interview and recommend candidates for vacant positions,
identify training needs and conduct on-the-job training,
establish performance standards consistent with job
description, and recommend salary increases, promotions
and awards for subordinate employees.
6)    Hear and resolve subordinates' concerns or complaints,
assist with problems when possible, and recommend and,
as authorized, implement disciplinary actions when
required.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 33 of 102

7) Develop or accept recommendations from subordinates to increase productivity or quality.

8) Keep subordinates informed of the policies and procedures of the organization and make sure they are followed.

9) Approve leave in accordance with personnel policies.

10) Inform employees of available services and employee activities.

11) Report to the next level supervisor on performance, progress, and training needs, and on behavior or performance problems. Provide information to the next level supervisor as requested concerning promotions, reassignments, recognition, and personnel needs.

12) Facilitate and participate in annual performance reviews of subordinate employees.

Some supervisors may also be assigned budgetary or personnel responsibilities for the staff that they supervise.

## IV.  DSC-Authorized Positions for FDOs

### A.  Process for Obtaining Positions: Resource Requirements, Budget Requests, Supplemental Requests

Annually, FDOs are required to submit resource requirements to ODS for the fiscal year commencing several months in the future. For example, in February 2010, FDOs submitted resource requirements for FY 2011.

The information submitted includes a projected caseload for the upcoming fiscal year. The current year FTE levels and the projected caseload in the budget year are used to calculate an attorney and non-attorney FTE ceiling for each organization. If an organization requests any positions above the calculated FTE ceiling, justification must be provided for consideration by the Defender Services Budget Subcommittee (DSBS). The DSBS forwards a recommendation to the Defender Services Committee for each individual organization's budget and FTE ceiling for the upcoming fiscal year.

Once FDOs receive their yearly budgets, they are required to submit a monthly Electronic Status of Funds Report (ESFR) which shows projected surpluses or shortfalls. FDOs may submit requests for supplemental positions or funding for a specific case, or for a sudden increase in caseload, etc. Approval for supplemental requests is based on the justification submitted, the availability of funds and the guidelines established by the Defender Services Committee.

**B.** **Obtaining DSC Approval**

Resource requests are reviewed by ODS. Questions or concerns regarding the budget request are discussed with the Federal Defender/Executive Director or Administrative Officer. Once a year, the Defender Services Committee's Budget Subcommittee meets to review FDO budgets for the upcoming fiscal year, and forwards a recommendation to the Defender Services Committee for its consideration. The recommended budgets must fall within the Defender Services' Financial Plan as approved by the Executive Committee of the Judicial Conference. The approved financial plan is based upon funding appropriated by Congress to Defender Services.

FPDO requests for new attorney positions must be approved by each Circuit. (CDO new attorney requests do not require Circuit approval.) After Circuit approval is obtained, **all new attorney positions must also be approved by the ODS prior to an offer of employment being made (for both FPDOs and CDOs).**

**C.** **Changes to DSC-Authorized Positions**

1. **General:** FDOs may find it necessary to change an authorized position to a different position. The types of changes are indicated below. The ODS tracks the number of positions authorized by the DSC according to district and position category (described in **Section III.B.1.a.** above).

2. **Effecting Change:** The ODS must approve changes to DSC-authorized positions. All requests to ODS for approval of personnel actions must include a statement that the FDO has sufficient funding to support the requested action. If additional funding is required, the request must be submitted to the DSC for approval, as described in **Section IV.B.** above.

   **FPDOs** must submit to the Office of Human Resources (OHR) an *AO-193, Request for Personnel Action* form, or its electronic equivalent using remote data entry (RDE), to effect either a reclassification or a mixed-function position. **CDOs** are not required to submit additional paperwork.

3. **Reclassification**

   A reclassification changes the title of an existing **filled** position to one that more closely describes the duties that are actually performed by the employee.

   For example, a Defender has determined that a Legal Assistant is actually performing the duties associated with a Case Management Assistant, and

s/he should reclassify the position accordingly. The category would change from Legal Assistant to Office Support.

**ODS's prior written approval is required to reclassify an authorized position. The "Nature of Action" or NOA Code which FPDOs must submit to the OHR to effect this reclassification is 984. ODS's written approval should be attached to the reclassification request when submitted to OHR. (CDOs are not required to submit additional paperwork, but must obtain ODS written approval to reclassify a position.)**

4.    **Mixed-Function Position**

A **mixed-function position** combines the primary functions of two (or more) different DOCS positions, and may change the total number of authorized positions in two (or more) categories.

For example, an organization has been authorized four legal assistant positions and six paralegal positions, and the Defender determines that one paralegal is actually performing as 50% legal assistant and 50% paralegal. After requesting and receiving the ODS's written approval, the Defender could create such a mixed-function position, which would result in a change in authorized positions to 4.5 legal assistant and 5.5 paralegal.

Please refer to **Sections V.C.** and **VI.B.2.** below for additional information concerning mixed-function positions.

5.    **Exception to Approval Requirement**

There are certain "series" of DOCS positions which are so similar in nature that prior ODS approval is **not** required to reclassify positions within those series. These series are in three categories: **Paralegal, Investigator** and **Legal Assistant** positions.

An organization that is authorized one or more of these positions may appoint a new employee to any of the DOCS positions within the series for which s/he qualifies. The organization may also reclassify an existing employee to a different position in the same series without ODS approval.

For example, a Defender may determine that an Assistant Investigator meets the qualifications for, and is actually performing as, an Investigator. The Defender may reclassify the Assistant Investigator to Investigator. Or, the Defender may wish to reclassify a Legal Assistant to the position of Secretary to the First Assistant Defender, and s/he may do so without prior ODS approval.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 36 of 102

Please note, however, that to reclassify a **Legal Assistant** as **Administrative Secretary,** or vice versa, ODS approval is required, because these two classifications fall into different *categories* of positions. Please refer to **Section III.B.1.a., and the listing of DOCS position categories,** above.

## V. Appointing Personnel

### A. Determining Qualifications

The Defender, or his/her designee, is responsible for determining the qualifications of prospective employees and ensuring that personnel employed by the organization meet the DOCS qualifications for the positions to which they are appointed. **The Defender is the appointing authority, and that authority may not be delegated.**

A careful review must be made of the applicant's education, training and work experience, and a determination made of the highest-grade level for which the individual qualifies. Although the Defender may appoint at a lower grade than the highest grade for which an applicant qualifies (for reasons such as funding constraints, a desire to evaluate the individual's performance for a certain period of time, etc.), this is not recommended. The decision to appoint at a lower grade and promote at a later date will not entitle the employee to retroactive compensation at the higher rate. Taking future actions to properly compensate an employee who was initially appointed at a lower level than that for which s/he qualified is very difficult.

Generally, individuals are appointed at the first step in a grade level. However, in order to compete successfully for the services of a quality applicant, a Defender may consider it necessary to either match the current salary or other offer received by that applicant. Please refer to the *Guide, Volume 12, Chapter 6.*

If the Defender erroneously sets the entrance grade lower than that for which the employee qualifies, the Defender may, at any time, request prospective promotion to the highest eligible grade. Likewise, if a Defender determines that an existing employee's grade was improperly established, the Defender may, at any time, request prospective promotion to the highest eligible grade. That promotion becomes effective in the first pay period subsequent to the date of the promotion request, and cannot be made retroactive.

General descriptions of the different types of qualifying experience are provided below.

1. **Qualification Standards**

   Qualification standards are considered the *minimum level* of knowledge, skill and/or ability. Certification or education requirements for professionals (e.g. attorneys, interpreters) **must be job related.**

2. **General Work Experience**

   General work experience refers to the minimum entry-level qualifications that demonstrate the applicant's ability to acquire knowledge and skills necessary to function within a position. General work experience cannot be credited as specialized experience.

3. **Specialized Work Experience**

   These elements are related directly to the duties of the position. This is experience required for above entry-level work. General work experience requirements and any minimum educational, licensure, or other special qualification requirements and selective factors established for the position must be met first. Specialized work experience must demonstrate the knowledge, skill, and ability (KSAs) necessary for successful job performance. When an applicant meets the experience requirement for a specific DOCS grade level, s/he also meets the experience requirements for lower grade levels in that position, as well as other similar DOCS positions at lower grade levels.

4. **Selective Placement Factors**

   Selective placement factors are the elements considered above minimum requirements, and are based on special circumstances of knowledge required. These elements do not alter minimum qualification standards. Licensure or certification and language fluency are examples of selective placement factors. Language fluency may be considered a minimum qualification for a position, depending upon cultural circumstances. Selective placement factors *cannot* be substituted for general or specialized experience requirements.

5. **Creditability**

   Creditable work experience provides the individual with the knowledge, skills and abilities (KSAs) to perform the duties of the position. One year of creditable experience is gained through completion of either twelve months or 52 weeks of creditable work experience, whichever comes first.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 38 of 102

6. **Educational Substitutions**

Education above the high school level may be substituted for a prescribed amount of general, or where noted, specialized experience as detailed in each position description. Unless otherwise provided, education may be substituted for experience only in full year increments of academic study for the prescribed number of years of general experience.

If an academic degree is used as a qualification for appointment at a particular grade level, *all* requirements for that degree must have been completed and *the degree granted*. The Defender is responsible for ensuring that the degree was actually granted.

7. **Determination of Equivalence**

Experience attained outside the federal system, or in ungraded federal positions, must be evaluated and equivocated to the appropriate federal grade level. This applies exclusively to service outside the federal system, or to service in ungraded federal positions. **If a federal employee has attained the next lower grade in the federal service, determination of equivalency is not necessary.**

Non-federal work experience is subject to varying interpretations of relative complexity. Such experience must be examined for general relevance to the position in question, level of responsibility and complexity, and salary level. All valuable experience and training, including experience and training gained in religious, civic, welfare, service, and organization activities should be considered in determining qualifications, regardless of whether or not compensation was received. Unpaid experience should be given as much credit as paid experience if it is valuable and pertinent to the position in question.

Part-time experience is prorated according to the relation it bears to a full workweek.

Education may also affect the determination of equivalency. The manner in which education may be substituted for required years of employment experience, either general or specialized, is detailed in each position description.

B. **Job Sharing**

Job sharing is available in DOCS, and the Federal Defender may appoint two (or more) persons to fill one full-time authorized position. The total hours worked by

the individuals may not exceed the hours associated with one full-time position, or 40 hours per workweek.

**FPDOs** should note "job sharing" on the AO-193 form, or its electronic equivalent, that is submitted to OHR for processing. OHR will assign the same position number to all individuals who share that position, so that the 40-hour weekly work schedule *per position* is not exceeded.

**CDOs** should carefully track the hours of individuals in a job sharing situation to ensure that the authorized working hours per position/per workweek are not exceeded.

C. **Mixed-Function Positions**

Mixed-function positions combine the performance of two or more DOCS positions into one position. DOCS provides flexible staffing options by allowing a Defender to create mixed-function positions. Defenders may find it useful to combine some positions.

Only graded positions may be combined to form a mixed-function position. Defenders may not create positions that are part graded and part ungraded (e.g., Research & Writing Specialist/Assistant Federal Defender). This is not permitted because the positions are subject to different compensation systems and different placement and advancement policies. A mixture of graded and ungraded positions cannot be accommodated in one mixed-function position.

Generally speaking, one-of-a-kind positions cannot be combined with another position to create a mixed function position.

To ensure that the records are correct concerning the number and type of DSC-authorized positions, as described in **Section IV.** above, a written request to create a mixed-function position must be submitted to, and approved by the ODS prior to processing the personnel action to classify/reclassify the mixed-function position to assure that work is organized in an efficient and cost-effective manner, and that the skills and abilities of employees are used to the fullest extent possible. Assignment of work that results in a higher grade based on duties performed less than a majority of time generally is not efficient or cost-effective.

D. **Position Reassignments**

A Defender may reassign an employee from one authorized position to another authorized position, based on an assessment of the individual's qualifications and the needs of the office. ODS approval is not required for this action.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 40 of 102

For **FPDOs**, a Form AO-193, or its electronic equivalent, must be submitted to OHR to effect this change. **CDOs** should notify the ODS of any position reassignments, in accordance with Clause 15 of the Grant and Conditions agreement, which requires notification be given to the ODS prior to filling all personnel vacancies.

## VI. Grade Levels

### A. General

The grade levels of the DOCS positions are comparable to those in offices of United States Attorneys (USAOs). DOCS positions are graded according to the Federal Defender (FD) plan, which is identical to JSP and federal General Schedule (GS) positions.

### B. Entry Level

#### 1. Standard DOCS Positions

The first grade level on the Salary and Experience Scale (also referred to as the *grade ladder*) of each position is generally considered the minimum entry level for the position.

A professional *internship* is available in certain positions. A one- or two-year internship may be utilized. A Defender may hire into those positions, as an intern, an individual who does not possess the requisite years of specialized experience, at one or two grades lower than the minimum entry level for the position. The availability of internship is described in each position to which it applies.

#### 2. Mixed-Function Positions

The proper grade of a mixed function position is determined by evaluation of the regularly assigned work which is paramount in the position. In most instances, the highest level work assigned to and performed by the employee for the majority of time is grade-determining. When the highest level of work is a smaller portion of the job, it may be grade-controlling only if:

- The work is officially assigned to the position on a regular and continuing basis;
- It is a significant and substantial part of the overall position (i.e., occupying at least 25 percent of the employee's time); and
- The higher level knowledge and skills needed to perform the work would be required in recruiting for the position if it became vacant.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 41 of 102

Work which is temporary or short-term, carried out only in the absence of another employee, performed under closer than normal supervision, or assigned solely for the purpose of training an employee for higher level work, cannot be considered paramount for grade level purposes.

The entry level of a mixed-function position is determined by the percentage of time spent performing each DOCS position function. The entry grade for the mixed function position is the entry grade for the highest graded DOCS job that is performed at least 25 percent of the time.

**EXAMPLE:**

| | | |
|---|---|---|
| Legal Assistant | Grades 6-8 | 60% |
| Asst. Paralegal | Grades 5-9 | 40% |

The entry-level grade of the above mixed function Legal Assistant /Asst. Paralegal position would be 5.

## C. Target Grade

### 1. Standard DOCS Positions

The highest grade on the Salary and Experience Scale of each DOCS position is the target grade for that position. **The established target grade may not be exceeded under any circumstances; exceptions to this requirement are not available.**

**Please Note:** *Person-in-the-job* increases, available prior to the implementation of DOCS, were used to upwardly adjust the grades of experienced individuals who had reached the target grades of their positions. These increases are no longer available to FDOs. DOCS provides an adequate variety of positions, at grade levels comparable to the USAO and JSP, to properly compensate all FDO graded personnel.

### 2. Mixed-Function Positions

The target grade of a mixed-function position is determined in the same manner as described for determining the entry grade of a mixed-function position.

**EXAMPLE:**

| | | |
|---|---|---|
| Legal Assistant | Grades 6-8 | 60% |
| Asst. Paralegal | Grades 5-9 | 40% |

The target grade of the above mixed-function Legal Assistant /Asst. Paralegal position would be 9

Note: Although the Legal Assistant job progresses at the one-grade interval whereas the Assistant Paralegal job progresses at the two-grade interval, the

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 42 of 102

Assistant Paralegal job is grade-determining. Therefore, the mixed function job is graded 5-7-9 following the Assistant Paralegal job's two-grade interval progression scheme. The qualifications requirements for each of the grades for the Assistant Paralegal and Legal Assistant positions should be reviewed to ensure the incumbent meets all general and specialized qualifications.

D.     **Saved Pay Plan**

The Judicial Conference reinstated saved pay provisions for federal public defender and judiciary employees in September 2007. This plan provides that, under specific circumstances, a graded employee who is placed by management action into a different salary plan or pay table, or rehired/reclassified into a <u>lower</u> graded position, may continue to receive the same rate of basic pay as s/he would have received if s/he had remained in the former position. Under saved pay, an employee receives the same rate of pay that was received immediately before the reduction to the lower grade, but does not receive any step increases and receives a reduced employment cost index (ECI) rate until the employee's pay is overtaken by the regularly prescribed pay for the current position. For information concerning applicability of this policy in specific situations, FPDOs should contact OHR or consult the *Guide, Volume 12, Chapter 6, §680*; CDOs should contact the program duty officer in ODS.

E.     **Possible Overtime Pay Requirement for CDOs**

**CDOs** may be required to pay overtime to certain nonexempt employees, in accordance with the Fair Labor Standards Act (FLSA), as well as state employment regulations. There are variations in Federal rules regarding overtime, and there are no uniform standards for states to use in defining *nonexempt employees*. ODS strongly recommends that the Defender and/or the Administrative Officer/Assistant in each CDO meet with a local Department of Labor representative to determine the liability of the organization with respect to overtime pay. The overtime pay requirement may affect a CDO's decisions with respect to setting grade levels and the advancement of graded personnel discussed in the following section. FPDOs are not legally permitted to pay overtime.

VII.   **Movement Within and Between Grade Levels**

A.     **General**

As noted in **Section VI. A.** above, employees in graded DOCS positions are compensated according to JSP grade levels that are identical to the GS levels of the USAO. Advancement within a grade, and between grade levels of DOCS positions, is administered in the same manner as for JSP positions. See the *Guide, Volume 12, Human Resources*. **FPDOs** must follow the *Guide* with respect to all salary-related personnel policies. Those same requirements are extended to

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 43 of 102

**CDOs** whenever possible, to ensure consistency in compensation for FDO employees who perform similar functions in the two types of organizations.

B. **Within-Grade Increases (WGIs)**

1. **Definition**

   A within-grade increase (WGI) is the advancement of an employee to the next higher step in the same grade. A WGI is also referred to as a *step* increase.

2. **Eligibility**

   a. **Waiting Period**

      The Within-Grade Increase Plan (see the *Guide, Volume 12, Chapter 6, §665.40)* provides that each full-time or part-time employee in steps 1 through 9 will be eligible for a WGI after the appropriate waiting period at the next lower step has been completed. **FPDO** personnel are required to meet the specified waiting period, and it is ODS policy that all **CDO** personnel are subject to the same requirements.

      The waiting period begins on the date the employee was hired or the date the employee was promoted to the current grade, whichever is most recent. This month and day become the employee's *anniversary date.* The *WGI date* is the date on which an employee becomes eligible for a WGI, based on the following waiting periods: WGIs to steps 2, 3, or 4 require a 52-calendar week waiting period (approximately one year of service at the next lower step of the grade); WGIs to steps 5, 6, or 7 require a 104-calendar week waiting period (approximately two years); and WGIs to steps 8, 9, or 10, require a 156-calendar week waiting period (approximately three years) at the next lower step.

   b. **Performance**

      The AOUSC's personnel/payroll system is keyed to automatically grant WGIs to eligible **FPDO** employees on their WGI dates, *unless they are specifically denied* by the Defender for unacceptable performance, as discussed below, or a promotion is granted in lieu of a WGI. A **WGI should be granted only if the employee has performed at an acceptable level of competence during the waiting period**. The FPDO should generate a rating form for each graded employee from the AOUSC's

personnel/payroll system for the Defender's action at least 90 days prior to the employee's WGI date. *If the employee's performance is acceptable, the rating form should be completed and maintained in the local office personnel file.*

**CDOs** should consider each employee's performance and determine that it is at the acceptable level prior to awarding WGI increases.

3.    **Denial of WGIs**

If an employee is not performing at an acceptable level, the Defender may deny a WGI to the employee. **To deny a WGI in a FPDO, the FPD must appropriately complete the rating form and return it to the AOUSC at least two weeks prior to the WGI date, to ensure that the employee does not receive the WGI automatically.**

The Defender should give the employee written notice of any unacceptable rating, fully documenting the reasons for the denial of a WGI. If an employee whose performance level was determined unacceptable subsequently improves, the acceptable level may be certified as such by the Defender in any subsequent pay period and a WGI may then be awarded. Written notice to reinstate WGIs must be provided to the OHR. In such instances, the employee's WGI date will change to the date the WGI is awarded and the waiting period for eligibility for the next WGI will be calculated from that new date. WGIs may not be made retroactive.

**CDOs** also may deny a WGI to an employee whose performance is not acceptable. The employee should be given written notice of this action, which also should be fully documented in the employee's file. If performance improves and WGIs are reinstated by the CDO, it is recommended that the WGI date and eligibility waiting period be adjusted in the same manner as for FPDO employees.

C.    **Promotions**

1.    **Definition**

A promotion is the advancement of an employee from one grade to the next higher grade.

2. **Eligibility**

A promotion is available to an employee when: (a) the higher grade level has been previously authorized for the position, as per the DOCS position description; and (b) the employee has met the qualifications for promotion to that grade level. At the discretion of the Defender, a promotion may be awarded once an individual meets the requirements of the position for the next grade level, and completes the time-in-grade requirements. A promotion is not an entitlement; it should not be granted automatically simply because it is available. A promotion should be awarded only when the Defender determines that the employee's performance merits such recognition.

3. **Anniversary Date Status**

When a promotion is processed in conjunction with an employee's anniversary date, the anniversary date remains the same. However, if a promotion is authorized by an **FPDO** at any time other than on the anniversary date, the anniversary date will change to the date of the promotion, and the new WGI date waiting period begins as of that new date. **CDOs** should record anniversary dates and WGI waiting periods in the same manner.

4. **Determining Proper Grade and Step for Promotions**

When promoting an eligible employee to the next higher grade, the proper method for determining the employee's new step at that grade is as follows: Start with the employee's current grade and step, go two steps higher within the same grade and identify the salary amount for that step; then, at the next higher grade, find the lowest step at which the salary meets or exceeds that amount.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 46 of 102

# Table 01: REST OF THE UNITED STATES

2010 Pay Rates of the Judiciary Salary Plan with 14.16% Locality Pay Differential

| Grade | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $20,324 | $21,009 | $21,679 | $22,351 | $23,027 | $23,424 | $24,092 | $24,766 | $24,717 | $25,422 |
| 2 | $22,851 | $23,395 | $24,151 | $24,792 | $25,071 | $25,808 | $26,546 | $27,283 | $28,021 | $28,758 |
| 3 | $24,933 | $25,764 | $26,595 | $27,426 | $28,257 | $29,088 | $29,919 | $30,750 | $31,581 | $32,412 |
| 4 | $27,990 | $28,922 | $29,855 | $30,788 | $31,720 | $32,653 | $33,586 | $34,519 | $35,451 | $36,384 |
| 5 | $31,315 | $32,359 | $33,402 | $34,445 | $35,489 | $36,532 | $37,576 | $38,619 | $39,663 | $40,706 |
| 6 | $34,907 | $36,070 | $37,233 | $38,397 | $39,560 | $40,723 | $41,886 | $43,050 | $44,213 | $45,376 |
| 7 | $38,790 | $40,084 | $41,377 | $42,671 | $43,964 | $45,258 | $46,551 | $47,844 | $49,138 | $50,431 |
| 8 | $42,960 | $44,391 | $45,823 | $47,254 | $48,686 | $50,117 | $51,549 | $52,981 | $54,412 | $55,844 |
| 9 | $47,448 | $49,029 | $50,611 | $52,192 | $53,773 | $55,354 | $56,935 | $58,516 | $60,097 | $61,678 |
| 10 | $52,252 | $53,994 | $55,736 | $57,478 | $59,221 | $60,963 | $62,705 | $64,447 | $66,189 | $67,931 |
| 11 | $57,408 | $59,321 | $61,234 | $63,148 | $65,061 | $66,974 | $68,888 | $70,801 | $72,714 | $74,628 |
| 12 | $68,809 | $71,102 | $73,396 | $75,689 | $77,983 | $80,276 | $82,570 | $84,863 | $87,157 | $89,450 |
| 13 | $81,823 | $84,550 | $87,278 | $90,005 | $92,732 | $95,459 | $98,187 | $100,914 | $103,641 | $106,369 |
| 14 | $96,690 | $99,913 | $103,136 | $106,358 | $109,581 | $112,804 | $116,027 | $119,249 | $122,472 | $125,695 |
| 15 | $113,735 | $117,527 | $121,318 | $125,109 | $128,900 | $132,692 | $136,483 | $140,274 | $144,065 | $147,857 |
| 16 | $133,389 | $137,636 | $142,282 | $146,729 | $151,175 | $155,622 | $160,068 | $164,515 | $165,300 * | $165,300 * |
| 17 | $153,194 | $158,300 | $163,406 | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * |
| 18 | $165,300 | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * |

* The rate of pay payable at these steps is limited to the rate for Level III of the Executive Schedule, which is $165,300

**EXAMPLE:** To promote a Legal Assistant currently at the grade/step of 7/3:
- advance two steps to 7/5, note that the salary is $43,964
- find the lowest step at grade 8 that would meet or exceed that salary, which is 8/2, with a salary of $44,391.
- the correct promotion from grade/step 7/3 is to 8/2.

There are several situations in which this rule is modified:

If an individual is currently at step 9 or 10, it is not possible to perform the calculation as noted above. In those instances, determine the WGI *value* (which is the dollar difference between the steps in that grade), add that amount to the current salary **twice;** then proceed to the next grade to determine the proper step.

**EXAMPLE:** To promote a Legal Assistant at the 7/9 level to grade 8:
- The WGI value at 7/9 (the difference between the salaries paid at 7/9 and 7/10) is $1,293. Double that amount to $2,586.
- Add $2,586 to the current salary of $49,138, for a total of $51,724.
- find the lowest step at grade 8 that meets or exceeds that salary, (in this example it is step 8, with the salary of $52,981). The employee would be promoted from grade/step 7/9 to 8/8.

If a promotion is awarded on an individual's anniversary date, and if the employee is eligible for a WGI on that anniversary date (see **Section VII. B. 2. a.** above), the WGI should be added when calculating the grade/step for the promotion. In other words, identify the salary amount at *three* steps, rather than two, above the current step in determining the proper

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 47 of 102

step at the next higher grade. Adding this additional step may, or may not, affect the new grade/step.

The following examples illustrate how promotions, awarded first on a non-anniversary and secondly on the anniversary date, would be determined for two individuals. In one situation, the result would change; in the other, it would not:

**EXAMPLE:**

Investigator John Smith has been at grade/step 11/6 for one year and eight months. Grade 12 is available in that position, and he meets the requirements for promotion to that grade. The Defender is promoting Smith to Grade 12 as of February 20. This is not his anniversary date, and because he has not completed the WGI waiting period at step 6 (which is approximately two years), he is not eligible for a WGI to step 7. Therefore, to calculate: advance two steps, from 11/6 to 11/8 ($70,801), then to the lowest step at grade 12 that meets or exceeds that salary, which is 12/2 ($71,102). *But,* if the Defender delays the promotion until June 20 (Smith's anniversary date and the date he completes the 104-week waiting period at step 6), he is eligible for a WGI to an 11/7, then up two steps to 11/9 ($72,714), and the correct promotion then would be to 12/3 ($73,396).

**EXAMPLE:**

Research and Writing Specialist Mary Jones, grade/step 12/3, is being promoted on a non-anniversary date. Advance to 12/5 ($77,983), then promote to the 13/1 level ($81,823). For Ms. Jones, an anniversary-date promotion would result in the same new grade/step: 12/3 to 12/4, then to 12/6 ($80,276), and the promotion to 13/1 ($81,823).

**D.    Quality Step Increases (QSIs)**

The judiciary's Quality Step Increase (QSI) Program was designed to recognize and reward, on a continuing basis, employees who maintain outstanding performance. The QSI program was approved for graded personnel by the Judicial Conference at its 1976 session; but QSIs were suspended for all personnel in Fiscal Year 1993. At its March 1998 session, the Judicial Conference granted federal defenders the authority to reinstate QSIs for graded employees in their organizations, to the same extent and within the same constraints as the offices of United States Attorneys. The policy for granting QSIs can be found in the *Federal Defender Operations Manual.*

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 48 of 102

E.    **Awards**

The awards program set forth in the *Guide to Judiciary Policy* for court employees specifically **excludes** FPDOs.   The awards available to FDO employees are Quality Step Increases (QSIs), which are discussed above, and Time-Off and On-the-Spot Awards, discussed in this section.

In December 2009, the Defender Services Committee approved the establishment of an FDO awards program to implement Time-Off and On-the-Spot Awards for employees of FDOs, comparable to awards available to employees of USAOs.

The policy for granting awards can be found in the *Federal Defender Operations Manual.*

As set forth in the *Guide, Volume 12, Chapter, 6*, *§660.30,* the aggregate pay for any FDO employee may not exceed the salary of a district court judge.

F.    **Demotions**

A demotion is a change to a lower grade, based upon an employee's unsatisfactory job performance.   Should this type of action be necessary, please refer to the *Guide*, *Volume 12, Chapter 6, §645.60.*

VIII.   **Exceptions to DOCS Requirements**

A.    **General**

Although DOCS positions will continue to be reviewed and revised as appropriate, requests for exceptions are anticipated.   All requests for exceptions will be considered; however, exceptions will be granted only in truly unusual circumstances or when the proposed exception points out a problem with a DOCS position or policy that should be corrected in the next revision of that position description.

B.    **Process for Obtaining Approvals for Exception Requests**

A written request for exception should be sent to the ODS, fully detailing the reason(s) for the request.   The ODS will evaluate the request.   The ODS will promptly distribute the request and the ODS evaluation to the *DOCS Expert Panel*.   The request will be considered, and a determination will be made. Written approval will be forwarded to the requesting Defender as soon as possible.   If the exception request is denied, a written explanation will be provided to the Defender.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 49 of 102

IX. **Updating and Revising DOCS**

A. **Identifying Need for New Positions Or Revisions to Existing Policies**

As the priorities and requirements of the federal defender program change in future years, DOCS will be subject to review and revision. If a Defender, or group of Defenders and/or Administrators, believes there is a need to create a new DOCS position, or a series of positions, a detailed proposal should be submitted to the ODS. The ODS will evaluate the request, and consult with the Executive Office for United States Attorneys (EOUSA) to determine whether a comparable position, or series of positions, exists in the USAOs. All suggestions for new DOCS positions and the ODS evaluation will be forwarded to the *DOCS Expert Panel* for further action. The ODS and the *DOCS Expert Panel* will follow a similar protocol when evaluating requests to revise existing DOCS requirements and policies.

B. **DOCS Expert Panel**

The *DOCS Expert Panel* will continually work with the ODS to update and revise DOCS as needed. The *DOCS Expert Panel* will develop new positions, modify existing DOCS policies, and review requests for exceptions to DOCS requirements and generally represent the Defender community in all DOCS-related matters.

C. **DSC Approval of New Positions**

The DSC does not review and approve each individual DOCS position description. The DSC is notified and approves the series or types of positions available to defender organizations. When the ODS and *DOCS Expert Panel* have determined that additional positions are necessary, a proposal concerning the development of new position descriptions is submitted by the ODS to the DSC for approval. After DSC approval is received, the positions are developed and adopted by the Defenders as outlined below.

D. **Drafting New Position Descriptions**

The ODS and the *DOCS Expert Panel* will identify the individual(s) in the defender community who are most familiar with requirements of the position description(s) under development, and will request that those individuals draft the new position description(s). The new DOCS positions will be forwarded to all members of the *DOCS Expert Panel*, and selected staff members in the ODS and OHR at the AOUSC, for review and comment. The ODS and the *DOCS Expert Panel* chair will jointly agree on finalizing each position description. For new national positions, the *DOCS Expert Panel* is not consulted. Instead, the appropriate oversight committee or advisory group participates in the process of developing the new national position description.

GENERAL INFORMATION AND DEFINITION OF KEY TERMS
Defender Organization Classification System - DOCS
Revised: 2010
Page 1 - 24

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 50 of 102

The new DOCS position description(s) will be distributed to all Defenders for review and comment, revised as considered appropriate by the ODS and the *DOCS Expert Panel*, and then redistributed for adoption by a vote of the Defenders. The approved positions will be incorporated into the DOCS Manual and distributed to the defender community. New national position descriptions are distributed to those with direct knowledge and involvement in the national program.

E.    **Revisions to Existing DOCS Policies**

When a Defender has a suggestion for a revision to an existing policy, a written request should be sent to the ODS, fully detailing the reason(s) for the suggested change in policy. The ODS will evaluate the request. All suggestions for revisions to DOCS policies and the ODS evaluation will be forwarded to the *DOCS Expert Panel* for further action. The request will be considered, and an initial determination will be made about the feasibility of the proposal. Depending on the nature of the proposed policy, the issue may require additional research or coordination with one or more of the advisory or working groups. The ODS will determine if final disposition of the request will be issued by the Assistant Director, ODS, or by the DSC based on the scope and impact of the proposed change. Written notification of the outcome will be forwarded to the requesting Defender by the ODS as soon as possible.

X.    **The Comparative Salary and Experience Scale**

The following table provides summary grade and experience requirements information for each DOCS position. Each position is listed in the far left column. Moving horizontally, the numbers in each column represent the number of years of general and specialized experience (expressed as *g/s*) required to qualify for the grade listed at the top of each column.

Please note: The general and specialized years of experience identify qualifications requirements for the employees holding these positions at these grade levels. Some positions have specific grade qualifiers. Please refer to the DOCS descriptions when making grade determinations.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 51 of 102

# DOCS: COMPARATIVE SALARY AND EXPERIENCE TABLE
*Summary of Grade Levels, General and Specialized Years of Experience for all DOCS Positions*
(updated May 14 2012)

| DOCS Grades | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Legal Staff** | | | | | | | | | | | | |
| First Assistant Defender (AD-37) | | | | | | | | | | | | |
| Second Level Supervisor (AD-37) | | | | | | | | | | | | |
| Third Level Supervisor (AD-31, AD-35) | | | | | | | | | | | | |
| Senior Litigator (AD-33, AD-35 (if pre-3/24/1995)) | | | | | | | | | | | | |
| Assistant Federal Defender (AD-21, AD-24 to 29) | | | | | | | | | | | | |
| Research and Writing Specialist | | | | | | 1/2 | | 1/3 | 1/4 | 3/5 | 3/6 | 3/7 |
| Legal Intern | | intern | | intern | | 1/2 | | | | | | |
| Chief Paralegal | | | | | | | | | | 3/5 | 3/6 | 3/7 |
| Paralegal | | | | | | | | 1/3 | 3/4 | 3/5 | 3/6 | |
| Assistant Paralegal | | intern | | intern | | 1/2 | | | | | | |
| Chief Investigator | | | | | | | | | | 3/5 | 3/6 | 3/7 |
| Investigator | | | | | | | | 1/3 | 3/4 | 3/5 | 3/6 | |
| Assistant Investigator | | intern | | intern | | 1/2 | | | | | | |
| Chief Interpreter | | | | | | | | | | 3/5 | 3/6 | 3/7 |
| Interpreter | | | | | | 1/2 | | 1/3 | 3/4 | 3/5 | 3/6 | |
| Librarian | | | | 1/1 | | 1/2 | | 3/3 | 3/4 | | | |
| Secretary to Defender | | | | | 1/3 | 1/1 | 1/4 | | | | | |
| Secretary to First Assistant | | | | 1/2 | 1/3 | 1/4 | | | | | | |
| Senior Legal Assistant | | | | | | 1/1 | | | | | | |
| Supervisory Legal Assistant | | | | | 1/1 | 1/1 | | | | | | |
| Legal Assistant | | | 1/1 | 1/2 | 1/3 | | | | | | | |
| **Administrative Staff** | | | | | | | | | | | | |
| Administrative Officer | | | | | | | | 3/1 | 3/1 | 3/5 | 3/6 | 3/7 |
| Supervisory Administrative Assistant | | | | | | | | | 3/4 | 3/5 | | |
| Administrative Assistant | | intern | | intern | | 1/2 | | 3/1 | 3/4 | | | |
| Financial Administrator | | intern | | intern | | 1/2 | | 3/3 | 3/4 | | | |
| Personnel Administrator | | intern | | intern | | 1/2 | | 3/3 | 3/4 | | | |
| Property and Procurement Administrator | | intern | | intern | | 1/2 | | 3/3 | 3/4 | | | |
| Panel Administrator | | | | 1/1 | | 1/2 | | 3/3 | 3/4 | 3/4 | | |
| **Information Technology Staff** | | | | | | | | | | | | |
| Supervisory Computer Systems Administrator | | | | | | | | | | 3/5 | 3/6 | |
| Computer Systems Administrator | | | | | | 1/2 | | 3/3 | 3/4 | 3/4 | | |
| Assistant Computer Systems Administrator | | intern | | intern | | 1/2 | | 3/3 | 3/4 | | | |
| **Office Support Staff** | | | | | | | | | | | | |
| Administrative Secretary | | | 2/1 | 2/2 | 2/3 | | | | | | | |
| Case Management Assistant | | 2/0 | 2/1 | 2/2 | 2/3 | 2/3 | | | | | | |
| Panel Assistant | | | 2/1 | 2/2 | 2/3 | | | | | | | |
| Clerical Assistant | 1/4 | 2/0 | 2/1 | 2/2 | | | | | | | | |
| Receptionist | | 2/0 | 2/1 | 2/2 | | | | | | | | |



August 19, 2016

William Moormann, Administrative Officer
Office of the Federal Public Defender
129 West Trade Street, Suite 300
Charlotte, NC 28202

Dear Mr. Moormann:

I am applying for a position as a Research and Writing Attorney in the Charlotte office, starting in the summer of 2017. I graduated with honors ████████ School of Law, where I served on the ████ Law Journal. I am serving a ████████████████ Court with the ████ Recently, I clerked for Judge ████ of the ████ Circuit Court of Appeals. Previously, I clerked for Judge James Jones of the United States District Court for the Western District of ████ and Chief Justice ████ of the ████ Supreme Court. As a result of these experiences, I apply with an appreciation of the terrific opportunity working in the Federal Defenders Office would provide.

My interest in working as a public defender began during my internship for the Federal Public Defender in ████████ when I drafted a winning motion to suppress, several appellate briefs, and a petition for writ of certiorari. In my clerkship for Judge ████, I worked on a variety of criminal matters and assisted in implementing the U.S. Sentencing Commission's retroactive reduction of drug sentences pursuant to Amendment 782. As a law clerk for Judge ████ I worked on a number of criminal appeals, including issues such as the voluntariness of a defendant's guilty plea, whether police interrogated a defendant in violation of his constitutional rights, and interpretation of the Sentencing Guidelines.

As a ████████████ I expect to further develop my knowledge of federal criminal law, including the Sentencing Guidelines, by working with the criminal law committees as part of the Judicial Conference. In addition, I plan to conduct a study of administrative and procedural discrepancies in the implementation of retroactive Guidelines amendments.

My prior experiences have given me the strong research, writing, and communication skills necessary for this position. Having majored in Spanish, I would also be able to communicate with Spanish-speaking clients. I have enclosed a resume for your review.

Thank you for your consideration.

Respectfully,

GOVERNMENT
EXHIBIT
A-3

**FEDERAL PUBLIC DEFENDER**
**WESTERN DISTRICT NORTH CAROLINA**

Ross Richardson
Interim Federal Public Defender

129 West Trade Street
Suite 300
Charlotte, NC 28202
(704) 374-0720
Fax (704) 374-0722



1 Page Avenue
Suite 210
Asheville, NC 28801
(828) 232-9992
Fax (828) 232-5575

March 24, 2017



Re: Offer letter for attorney position

Dear

     This offer letter confirms our conversation regarding your employment as a Research and Writing Specialist Attorney with the expectation that you will transition to an Assistant Defender position. You will be working at the Charlotte Headquarters Office. Your salary has been set in accordance with Defender Services Office policy at Grade 14, Step 1, earning $101,929 per annum, including locality pay. At this time, we expect your start date to be between July 15 and August 15, 2017, but that may change depending upon circumstances.

     You will be eligible for the federal benefits package including health insurance, dental insurance, life insurance, and retirement benefits. You will accrue sick leave at the rate of 4 hours per pay period and accrue annual leave at the rate of 4 hours per pay period. Employment terms are subject to final approval by the Defender Services Office and the Administrative Office of the Courts.

     We are excited about the talents and skills you bring to this position and are looking forward to working with you.

     If you have any questions, please contact William Moormann, our Administrative Officer.

Sincerely,

Ross Richardson

Ross Richardson
Federal Public Defender, Interim

Signed

GOVERNMENT
EXHIBIT
A-4

# RESEARCH AND WRITING SPECIALIST

## A. DEFINITION

The Research and Writing Specialist provides advanced research and writing services to assistant federal defender (AFD) staff on trial and appellate cases. The individual in this position must be an attorney. The Research and Writing Specialist writes briefs, motions, petitions for certiorari, and legal memoranda for review by the Defender and staff attorneys. General duties include examining, analyzing and researching records and issues; performing legal research and preparing legal documents; assisting AFD staff with all aspects of case preparation, training and continuing legal education and supervision of other research staff as appropriate.

***The Research and Writing Specialist does not ordinarily sign pleadings or make court appearances. The Research and Writing Specialist position is not intended to serve as a proxy, substitute, or replacement for an AFD position, nor in the place of an additional AFD position.***

The Research and Writing Specialist, under supervision of the responsible AFD, may sign pleadings or make court appearances in exceptional circumstances, but only if the following conditions are met:

(1)  the RWS has extraordinary case-specific expertise; the RWS has performed an exceptionally large amount of high quality work on the case; the RWS has an unusually strong interest in the case issues; the Defender concludes that a court appearance, under direct supervision, is appropriate for training purposes; or in other exceptional circumstances as determined by the Defender when necessary to protect the client's interest;

(2)  authorization of the appropriate court; and

(3)  if mandated by the laws of the state or the local rules of the district in which the defender organization is located, the RWS must be admitted to the bar of that state and to the bar of the federal court.

## B. PRIMARY JOB DUTIES

The Research and Writing Specialist performs or supervises the performance of tasks such as the following:

1  Assists the assigned attorney in the preparation of motions and briefs for review and signature by the Defender or the responsible case attorney for filing in federal magistrate, district, and appellate courts. Also assists in the preparation of petitions for certiorari

2.  Assists the assigned attorney in the preparation of legal memoranda for review and signature by the Defender and staff attorneys. Assists in the preparation of jurisdictional statements, review of issues, comprehensive statements of relevant facts, standards of review, and briefs complex legal and factual arguments. Advises the responsible attorney regarding all issues relevant to the case.

# RESEARCH AND WRITING SPECIALIST

## A. DEFINITION

The Research and Writing Specialist provides advanced research and writing services to assistant federal defender (AFD) staff on trial and appellate cases. The individual in this position must be an attorney. The Research and Writing Specialist writes briefs, motions, petitions for certiorari, and legal memoranda for review by the Defender and staff attorneys. General duties include examining, analyzing and researching records and issues; performing legal research and preparing legal documents; assisting AFD staff with all aspects of case preparation, training and continuing legal education and supervision of other research staff as appropriate.

*The Research and Writing Specialist does not ordinarily sign pleadings or make court appearances. The Research and Writing Specialist position is not intended to serve as a proxy, substitute, or replacement for an AFD position, nor in the place of an additional AFD position.*

The Research and Writing Specialist, under supervision of the responsible AFD, may sign pleadings or make court appearances in exceptional circumstances, but only if the following conditions are met:

(1)     the RWS has extraordinary case-specific expertise; the RWS has performed an exceptionally large amount of high quality work on the case; the RWS has an unusually strong interest in the case issues; the Defender concludes that a court appearance, under direct supervision, is appropriate for training purposes; or in other exceptional circumstances as determined by the Defender when necessary to protect the client's interest;

(2)     authorization of the appropriate court;  and

(3)     if mandated by the laws of the state or the local rules of the district in which the defender organization is located, the RWS must be admitted to the bar of that state and to the bar of the federal court.

## B. PRIMARY JOB DUTIES

The Research and Writing Specialist performs or supervises the performance of tasks such as the following:

1.  Assists the assigned attorney in the preparation of motions and briefs for review and signature by the Defender or the responsible case attorney for filing in federal magistrate, district, and appellate courts. Also assists in the preparation of petitions for certiorari.

2.  Assists the assigned attorney in the preparation of legal memoranda for review and signature by the Defender and staff attorneys. Assists in the preparation of jurisdictional statements, review of issues, comprehensive statements of relevant facts, standards of review, and briefs complex legal and factual arguments. Advises the responsible attorney regarding all issues relevant to the case.

3. Examines complex and diverse records. Reviews the record proper, exhibits, transcripts and tapes of trials and hearings in habeas and direct appeals cases. Analyzes the record and determines relevant legal issues. Determines the need for an evidentiary hearing and prepares evidence for presentation.

4. Performs legal research utilizing all available resources including computer-assisted legal research tools. Research includes state and federal statutes, case law, regulations, precedents, treaties, sentencing guidelines, and related subject matter.

5. Analyzes the potential impact of new legislation, policies and regulations on the defender organization. Develops and recommends short and long-range plans.

6. Updates research in preparation for oral argument by the responsible attorney. Consults with the attorney regarding the priority of issues, difficulties of the case and possible responses to panel questions.

7. Supervises law students, legal interns and paralegals where appropriate.

8. Analyzes legal decisions, opinions, rulings, memoranda and related legal materials, and prepares digests and indexes of same. Compiles and summarizes substantive information on statutes, treaties and specific legal subjects.

9. Coordinates and assists in coordinating training and CLE programs for office staff (and Panel attorneys where appropriate.)

10. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Research and Writing Specialist reports to the Defender or other supervisor as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Research and Writing Specialist, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Research and Writing Specialist must be an attorney with knowledge of defense or prosecution services, in either the public or private sector.

Requirements include admission and good standing to a federal and state bar (see ***DEFINITION***, subpart (3)).

### E. SALARY AND EXPERIENCE SCALE

| DOCS Grade Level | Years of General Experience | Years of Specialized Experience | Total Years of Experience |
|---|---|---|---|
| 9 | 3 | 2 | 5 |
| 11 | 3 | 3 | 6 |
| 12 | 3 | 4 | 7 |
| 13 | 3 | 5 | 8 |
| 14 | 3 | 6 | 9 |
| 15 | 3 | 7 | 10 |

**Note:** One year of the required experience must have been at, or equivalent to, the next lower grade in federal service. Experience that has not provided training or required the application of the knowledge, skills and abilities outlined in the *Primary Job Duties* section above is **not** creditable experience. Specialized experience may always substitute for general experience but general experience may not substitute for specialized experience.

### F. EXPERIENCE REQUIREMENTS

**General Experience**

Experience that provides evidence the individual has:

- a general understanding of the methods and skills required for accomplishing the tasks outlined in the *Primary Job Duties* section above;
- a general understanding of office confidentiality issues, such as attorney/client privilege;
- the ability to read, analyze and interpret common technical journals and legal documents;
- the ability to apply common sense understanding to carry out instructions furnished in written, oral or diagram form;
- the ability to analyze and apply relevant policies and procedures to office operations;
- the ability to exercise good judgment in a mature and diplomatic manner;
- the ability to communicate orally and in writing;
- a general knowledge of office practices and legal processes;
- the ability to recognize and analyze problems and recommend practical solutions;
- the ability to use a personal computer

**Specialized Experience**

Progressively responsible legal experience in the functional areas described in the *Primary Job Duties* section above. Such experience provides the individual:

- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- understanding of criminal law, criminal procedure, and evidence;

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 58 of 102

- a knowledge of sentencing guidelines and evidence handling;
- experience performing progressively responsible duties of a lawyer;
- the skills and ability to execute the duties of the position.

## G. EDUCATIONAL SUBSTITUTIONS

Education above the high school level in accredited institutions may be substituted for the general experience on the basis of one academic year (30 semester or 45 quarter hours) equals nine months of experience.

Completion of all the requirements for a bachelor's degree from an accredited college or university and having met one of the following may be substituted for one year of specialized experience:

1. An overall "B" grade point average equaling 2.9 or better of a possible 4.0.

2. Standing in the upper third of the class.

3. A "B+" (3.5) grade point average or better in major fields of study such as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position.

4. Election to membership in Phi Beta Kappa, Sigma XI, or one of the National Honor Scholastic Societies meeting the minimum requirements of the Association of College Honor Societies, other than Freshman Honor Societies.

Completion of one academic year (18 semester hours) of graduate study in an accredited university in such fields as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position, may be substituted for one year of specialized experience.

Completion of a master's degree or two years of graduate study (36 semester hours) in an accredited university in such fields as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position, or completion of a Juris Doctor (JD), may be substituted for two years of specialized experience.

## H. PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear. The individual frequently is required to use hands to touch, handle, or feel. The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds. Frequent travel to court locations and detention facilities may be required. The individual will spend most of his/her time in an office environment.

| Effective Date | NOA | Description | Dept ID | Salary | Notes |
|---|---|---|---|---|---|
| 8/21/2017 | 914 | Change in Home/W2 Address | 1111000163 | $94,796.00 | |
| 8/21/2017 | 935 | Inter-Judiciary Agency | F04NCWX | $101,929.00 | Transfer to FPDWNC |
| 10/30/2017 | 893 | Step Increase | F04NCWX | $105,327.00 | Step Increase from 14-1 to 14-2 91,074 base + 14,253 locality |
| 1/8/2018 | 894 | Pay Adjustment | F04NCWX | $107,319.00 | ECI Increase 92,349 base + 14,970 locality |
| 7/16/2018 | 780 | Name Change From | F04NCWX | $107,319.00 | |
| 8/20/2018 | 894 | Pay Adjustment | F04NCWX | $107,319.00 | Re classify from R/W to AFD, pay to salary from GS |

GOVERNMENT EXHIBIT
A-6

Request to Reclassify An Employee

Federal Defender Organization:  Western North Carolina      Date:   8/16/2018
Point of Contact and Telephone Number:  William Moormann 704 374 0720

## Information about the Employee

Employee's Name: █████████

Current job title and current pay grade and step: Research & Writing Specialist 14/2
Current promotion potential:  1 grade      Years in current position: Current 1 year
Full-time or part-time employee (if part-time, how many months)?:      Full time

## Information about the Reclassified Position

Title of reclassification (new) position:  Assistant Federal Defender
Will this reclassification provide the employee with an immediate promotion?  No
If so, what is the new promotion grade?   n/a
What is the grade potential of new position? n/a      Is the new position "one-of-a-kind?:  no
Has the employee been performing tasks assigned to this position? Yes
If so, please explain what tasks the employee has been performing and for how long?
R&W and Appellate AFD's preform the same tasks.  We are ending the R&W position.

Explain how the employee meets all of the DOCS qualification requirements for the new
position (e.g., describe work experience and/or education and attach documents such as detailed
resume or college transcripts)?

R&W and Appellate AFD's preform the same tasks.  We are ending the R&W position.
█████ has been preforming these tasks from the first day of hire.

*FPDOs: Explain how this request complies with your circuit's EEO plan. CDOs: Please attach
a copy of your employment program as required by #19 of the G&C and explain how this
request complies with the program.*

Our Office is ending the use of R&Ws.  We will reclassify both of our existing R&Ws.  All new hires for this
work will be AFDs  We are currently advertising for an additional Appellate AFD.  This means this
reclassification would not exclude anyone from the opportunity of being considered for an Appellate AFD
position.  We do not feel that advertising the reclassification would be necessary.
The Forth Circuit is aware of this request and is in support of it.  The office is within the Circuit AFD Limit.
This action would be revenue neutral.

Is there any other information DSO should know about this situation?



(BOA form, Oct 2013)

# ASSISTANT FEDERAL DEFENDER

## A. DEFINITION

The Assistant Federal Defender (AFD) provides every aspect of legal representation to individuals charged with federal criminal offenses but who are unable to retain an attorney. Duties include trials and court hearings, direct appeals to the circuit court, habeas, post-conviction and witness representation, and representation in other matters such as supervised release hearings and probation and parole hearings.

*In districts where an AFD is the only attorney in a branch office, some uncompensated supervisory duties may be assigned. The Federal Public/Community Defender, however, has full responsibility for all actions of the AFD.*

## B. PRIMARY JOB DUTIES

The Assistant Federal Defender performs tasks such as the following:

1. Provides zealous, professional legal representation to his/her clients. Appears, on behalf of the client, in court hearings and at other related proceedings.

2. Communicates with the court, opposing counsel, probation officers, witnesses, clients and the families of clients concerning case-related issues.

3. Maintains in-depth and updated knowledge of criminal defense trial and appellate practices and case law. Develops expertise with the federal sentencing guidelines, understands the ethical obligations and restrictions and practices courtroom advocacy. Pursues all appropriate available training opportunities including local or nationally sponsored core training within the limits of funding, workload and defender organization approval.

4. Prepares motions and briefs for consideration in federal magistrate, district, and appellate courts. Also prepares petitions for certiorari.

5. Prepares legal memoranda, review of issues, comprehensive statements of relevant facts, standards of review and briefs complex legal and factual arguments. Consults with investigative and legal staff regarding issues relevant to the case.

6. Examines complex and diverse records. Reviews the record proper, exhibits, transcripts and tapes of trials and hearings in habeas and direct appeals cases. Analyzes the record and determines relevant legal issues. Determines the need for an evidentiary hearing and prepares evidence for presentation.

7. Performs legal research utilizing all available resources including computer-assisted legal research tools. Research includes state and federal statutes, case law,


GOVERNMENT
EXHIBIT
A-8

regulations, precedents, treaties, sentencing guidelines, and related subject matter. Analyzes legal decisions, opinions, rulings, memoranda and related legal materials. Compiles and summarizes substantive information on statutes, treaties and specific legal subjects.

8. Analyzes the potential impact of new legislation, policies and regulations on the defender organization. Recommends short and long range plans to ensure efficient operations.

9. Updates research and prepares for oral argument. Prioritizes issues, analyzes difficulties of the case and prepares responses to possible panel questions.

10. Continues development of strong written and verbal communication skills to enhance professional documentation and interpersonal interaction.

11. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Assistant Federal Defender reports directly to the Federal Public/Community Defender or other supervising attorney as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Assistant Federal Defender, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Assistant Federal Defender must be an attorney with knowledge of defense or prosecution services, in either the public or private sector.

Requirements include admission and good standing before the federal bar, in combination with admission and good standing to a state bar. If mandated by the laws of the state or the local rules of the district in which the defender organization is located, admission to the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

## E. SALARY AND EXPERIENCE

The salary of the Assistant Federal Defender may not exceed the maximum salary level established for that position by the Executive Office for United States Attorneys (EOUSA) and must conform to the AFD Appointment and Compensation Policies

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 63 of 102

provided by the ODS. Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

## F. EXPERIENCE REQUIREMENTS

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above. Such experience provides evidence the individual has:

- the ability to coordinate the work of others;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- an understanding of criminal law, criminal procedure, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

## G. PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear. The individual frequently is required to use hands to touch, handle, or feel. The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds. Frequent travel to court locations and detention facilities may be required. The individual works primarily in an office environment.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 64 of 102

# 2018* Line AFD Salary Charts

**Office location(s):** NC(W) -- Charlotte

2018 locality rate for this location(s):     **16.21 %**

| Starting Salary Chart | | | | | | |
|---|---|---|---|---|---|---|
| Calendar Year 2018 | | | | | | |
| AD Level | Years of Professional Attorney Experience | | | Starting Salary Ranges | | |
|  | **At Least** | | **Less Than** | | | |
| AD-21 | 0 | - | 3 | $ 61,663 | - | $94,037 |
| AD-23 | 3 | - | 5 | $ 66,254 | - | $101,038 |
| AD-25 | 5 | - | 6 | $ 71,187 | - | $108,560 |
| AD-26 | 6 | - | 7 | $ 76,487 | - | $116,642 |
| AD-27 | 7 | - | 8 | $ 82,183 | - | $125,328 |
| AD-28 | 8 | - | 9 | $ 88,301 | - | $134,659 |
| AD-29 | 9+ | | | $ 94,875 | - | $144,685 |

GOVERNMENT EXHIBIT A-9

AO 52
Rev 7/91

# REQUEST FOR PERSONNEL ACTION

U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 4

| PART A - Requesting Office | (Also complete Part B, Items 1,7-22,32,33,36 and 39) | |
|---|---|---|

| 1. Actions Requested<br>Position Change | 2. Request Number<br>470202 |
|---|---|

| 3. For Additional Information Call (Name and Telephone Number)<br>William Moormann | 4. Emplid |
|---|---|

| This request is submitted with the approval of the court and is electronically signed by: | 6. Action Authorized By (Typed Name, Title, Signature, and Date)<br>Anthony Martinez<br>Federal Public Defender |
|---|---|

| PART B - For Preparation of SF 50 | (Use only codes in The Guide to Personnel Data Standards. Show all dates in month-day-year order.) | | |
|---|---|---|---|

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date<br>08-20-2018 |
|---|---|---|---|

## FIRST ACTION / SECOND ACTION

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 984 | Reclassification | | |

| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
|---|---|---|---|
| S52 | AO 52 dated xx-xx-xxxx<br>08/16/2018 | | |

| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
|---|---|---|---|
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| Research & Writing Specialist<br>PD: 541011        Position: | Assistant Federal Public Defender<br>PD: 540400        Position: |

| 8.Pay Plan | 9.Occ. CD | 10.Grd/Lvl | 11.Step/Rate | 12.Tot. Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. CD | 18.Grd/Lvl | 19.Step/Rate | 20.Tot. Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | FD | FD02 | 14 | 2 | $107,319.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $92,349.00 | $14,970.00 | $107,319.00 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| Charlotte NC USA | Federal Public Defender Office<br>129 West Trade Street<br>Room 300<br><br>Charlotte NC USA |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1-None  3-10 Point/Disability  5-10 Point/Other<br>2-5 Point  4-10 Point/Compensable  6-10 Point/Compensable/30% | 0-None  2-Conditional<br>3  1-Permanent  3-Indefinite | | YES    NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| K0    Basic + Option B (2x) | 9    Not Applicable | |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly |
|---|---|---|---|
| KF    FERS FRAE and FICA | 09-10-2014 | F    Full Time | Pay Period |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code |
|---|---|---|
| 2  1-Competitive Service 3-SES General<br>2-Excepted Service  4-SES Career Reserved | E-Exempt<br>N-Nonexempt | |

| 38. Duty Station Code | 39. Duty Station (City-County-State or Overseas Location) |
|---|---|
| | Charlotte  NC |

| 40. Agency Data<br>LEI:  10-30-2017 | 41.<br>WGI: 10-29-2018 | 42. SCD LEO | 43. | 44. |
|---|---|---|---|---|

| 45. Action<br>POS | 46. Reason<br>REL | 47. Pay Rate Deter<br>Regular Rt | 48. Bud Cat<br>011E | 49. Org Title Code<br>0000 | 50. Jobcode<br>540400 | 51. Paygroup<br>C04 |
|---|---|---|---|---|---|---|

| PART C - Reviews and Approvals | (Not to be used by requesting office.) | | | | |
|---|---|---|---|---|---|

| 1. Office/Function | Initials/Signature | Date | 1. Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| A. Requestor | William Moormann | 08-16-2018 | D. | | |
| B. | | | E. | | |
| C. | | | F. | | |

**CONTINUED ON REVERSE SIDE**    OVER    Editions Prior to 7/91 Are Not Usable After 6/30/93


GOVERNMENT EXHIBIT A-10

**PART D - Remarks by Requesting Office**

Should be Set at AD level 28 To be set at AD 28 Salery should remain $107,319

**PART E - Employee Resignation/Retirement**

1. Reasons for Resignation/Retirement (NOTE: Your reasons are used in determining possible unemployment benefits.
   Please be specific and avoid generalizations.
   Your resignation/retirement is effective at the end of the day - midnight - unless you specify otherwise.)

| 2. Effective Date | 3. Your Signature | 4. Date Signed | 5. Forwarding Address          (Number, Street, City, State, ZIP Code) |
|---|---|---|---|
| | | | |

**PART F - Remarks for SF 50**

Position Announcement

# ASSISTANT FEDERAL PUBLIC DEFENDER (APPELLATE)

Office of the Federal Public Defender
Western District of North Carolina (Charlotte Office)

The Office of the Federal Public Defender for the Western District of North Carolina is accepting applications for an Assistant Federal Public Defender to join our appellate team in the Charlotte Office. The Federal Public Defender operates under authority of the Criminal Justice Act, 18 U.S.C. 3006A, to provide defense services in federal criminal cases and related matters by appointment from the court to individuals unable to afford counsel.

**Duties.** In addition to handling traditional appeals, our appellate team provides extensive legal-issue support to the office's trial teams while also aggressively pursuing post-conviction relief in appropriate cases. Accordingly, the duties of this position may include: (1) researching, briefing, and arguing cases in the Fourth Circuit and the Supreme Court; (2) assisting the office's trial attorneys in identifying legal issues in pending cases, and researching and drafting motions, objections, and memoranda in those cases; (3) litigating post-conviction motions arising from retroactive judicial decisions or Sentencing Guidelines amendments; and (4) monitoring relevant legal developments and helping to train the office's lawyers, and other criminal defense practitioners, on the impact of those developments. The balance of responsibilities among these duties will vary depending on the office's needs at any particular time.

**Requirements.** Candidates must be law school graduates and members in good standing of the bar of any state or federal district court. Attorneys applying for this position should have sufficient experience to undertake the defense of serious criminal cases before the United States District Court and the Fourth Circuit Court of Appeals. Appointment is subject to a satisfactory background investigation, including but not limited to an FBI name and fingerprint check and an IRS tax check. The private practice of law is prohibited.

**Selection Criteria.** The successful applicant will have a strong academic background and excellent research, writing, and oral advocacy skills. Appellate experience in federal court is preferred. Prior judicial clerkship experience is preferred.

**Salary and Benefits.** The salary of an assistant federal public defender is commensurate with that of an assistant U.S. attorney with similar qualifications and experience. The position is in the excepted service and does not carry the tenure rights of the competitive Civil Service. The position offers federal government employment benefits, including



GOVERNMENT EXHIBIT A-11a

participation in health and life insurance program, retirement, and the Thrift Savings Plan. Salary is payable only by Electronic Funds Transfer (direct deposit).

**How to Apply.** You may apply by submitting a letter of interest, résumé, and representative writing sample, along with 3 references, to WDNCapplication@fd.org. Please describe in detail your experience with appellate work and motions practice.

For applicants with disabilities, this organization provides reasonable accommodations which are decided on a case-by-case basis. To request a reasonable accommodation for any part of the application or interview process, please submit the request in writing to WDNCapplication@fd.org.

Position announced July 25, 2018; open until filled. Applications received by August 17, 2018, will be given priority consideration.

**Federal Public Defender is an equal-opportunity employer.**

| | |
|---|---|
| **From:** | Anthony Martinez |
| **Sent:** | Thursday, July 26, 2018 9:03 AM |
| **To:** | zzNCWml_AllStaff |
| **Subject:** | Fw: Research & Writing Support Follow-Up |
| **Attachments:** | App AFD posting.pdf |

All,

Following up on my email from last Friday, I'm happy to report that we are going forward with the hiring of a new Appellate Assistant Federal Public Defender. This AFPD will be stationed in Charlotte. Like Jared and ▓▓▓▓ the new position will divide time between providing support for the trial teams and assisting with our appellate and post-conviction practice.

In light of this development and in order to facilitate the flow of work to the R&W's I am adjusting how work is assigned from the trial teams to the R&W's. We will no longer assign each team a designated R&W attorney. Instead, all requests for R&W support should be sent to Jared, who will then distribute the work amongst himself and ▓▓▓▓ based on their current workload capacity and any particular interest or expertise that an R&W may have on the relevant issue. This is the system that Jared has used to handle requests from Asheville since we implemented the team structure, and he reports that it has worked well.

This is a temporary fix. Once we get the new AFPD on board we will revisit the issue on how to distribute the R&W trial/appellate workload going forward.

In the meantime, if you know any attorneys who might be a good fit for the attached position, please reach out to them.

Thank you for your patience.

*(See attached file: App AFD posting.pdf)*

Thanks!
Tony

—— Forwarded by Anthony Martinez/NCWF/04/FDO on 07/26/2018 09 02 AM ——

From  Anthony Martinez/NCWF/04/FDO
To  zzNCWml_AllStaff@FDO
Date  07/20/2018 04 15 PM
Subject  Research & Writing Support



All,

In light of Caleb's imminent departure, we will be adding a new assistant paralegal position for JP's team. Meanwhile, we will be making some adjustments to ensure all teams have full R&W support.

1

Going forward, each of our two remaining Research and Writing attorneys will be assigned to cover two teams. Jared will be assigned to Erin and Mary Ellen's teams. ▇▇▇▇ will be assigned to Peter and JP's teams. We are still exploring the possibility of adding an additional position with research and writing responsibilities at some point in the future, so please keep your team leaders informed about how your R&W needs are being met.

Thanks,
Tony

**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited If you have received this e-mail in error, please notify us by reply e-mail.

# FEDERAL PUBLIC DEFENDER
# WESTERN DISTRICT OF NORTH CAROLINA

**Ross Richardson**
Federal Public Defender, Interim



129 West Trade Street
Suite 300
Charlotte, NC 28202
(704) 374-0720
Fax (704) 374-0722

1 Page Avenue
Suite 210
Asheville, NC 28801
(828) 232-9992
Fax (828) 232-5575

September 12, 2018



**Offer letter**

This offer letter confirms our conversation regarding your employment as a Term (Year and one day) Assistant Federal Public Defender, Appellate working at the Charlotte Headquarters Office. Your salary has been set in accordance with Defender Services Office policy at AD 25, earning $98,789 per annum, including locality pay. Your start date has been determined to October 1 2018.

You will be eligible for the federal benefits package including health insurance, dental insurance, life insurance, and retirement benefits effective 2 weeks after your start date. You will earn annual leave at 4 hours per pay period and sick leave at 4 hours per pay period. Employment terms are subject to final approval by the Defender Services Office and the Administrative Office of the Courts.

We are very excited about the opportunity to work with you and the talents and skills you bring to this position.

If you have any questions, please contact William Moormann, Administrative Officer.

Sincerely,

_____

Anthony Martinez
Federal Public Defender

Signed: _____

GOVERNMENT
EXHIBIT
A-12



**FSI office**

Remit To:
FSIoffice
PO Box 563953
Charlotte, NC 28256

PHONE
704-598-8971

**INVOICE**

| DATE 07/27/17 | INVOICE # 4201851-0 |

SALESMAN 4106   TIME 08:25:09
WRITER   240   PAGE   1
FEDERAL # 56-0903427

CUSTOMER # F3740720 DEPT
  BILLING ADDRESS
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE    NC 28202

CHARGE
INVOICE
ROUTE # CLT
REPRINT

PO #I3-1756970   0010
SHIPPING ADDRESS
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE    NC 28202

**FINAL**

| ITEM NBR. | CO. DESCRIPTION | UN | ORDER QTY | B/O QTY | SHIP QTY | NET PRICE | D I | EXTENDED |
|---|---|---|---|---|---|---|---|---|
| | | in EA | | | | | | |
| | CONTACT: AMANDA HUCKNER 704-688-6930 | | | | | | | |
| | DELIVER AND INSTALL | | | | | | | |
| | RAYNOR -- 1P -- 7-3-17 11(P5A) | | | | | | | |
| | HON -- 50P -- 7-21-17 ( 8P 8/3) (32P 87B) (10P NBC ) | | | | | | | |
| | Customer P/O#I3-1756970 | | | | | | | |
| H90054 | 10500 Series Tckbd f | EA | 2 | | 2 | 89.700 | N | 179.40 |
| | Stack on Strg Bck Enclosure | | | | | | | |
| | $(A)   Gr A Fab | | | | | | | |
| | .TG   FABRIC: Tango | | | | | | | |
| | 39   COLOR: Pecan | | | | | | | |
| HNL23162 | 15-1/2wx21-1/8Dx28-1 | EA | 2 | | 2 | 252.330 | N | 504.66 |
| | File/File Pedestal | | | | | | | |
| | /B   Canopy/Black | | | | | | | |
| | P   Color: Black | | | | | | | |
| | $(LLSTD)   Grd LL Standard Laminates | | | | | | | |
| | .COGN   LAM: Cognac | | | | | | | |
| | $(LLSTD)   Grd LL Standard Laminates | | | | | | | |
| | .COGN   LAM: Cognac | | | | | | | |
| HNL23302 | 30wx29-1/8Dx28-1/2F | EA | 4 | | 4 | 340.860 | N | 1363.44 |
| | File Pedestal | | | | | | | |
| | /B   Canopy/Black | | | | | | | |
| | P   Color: Black | | | | | | | |
| | $(LLSTD)   Grd LL Standard Laminates | | | | | | | |
| | .COGN   LAM: Cognac | | | | | | | |
| | $(LLSTD)   Grd LL Standard Laminates | | | | | | | |
| | .COGN   LAM: Cognac | | | | | | | |
| HNL29162 | 15-1/2wx29-1/8Dx28-1 | EA | 2 | | 2 | 276.510 | N | 553.02 |
| | Box/Box/File Pedestal | | | | | | | |
| | /B   Canopy/Black | | | | | | | |
| | P   Color: Black | | | | | | | |
| | $(LLSTD)   Grd LL Standard Laminates | | | | | | | |
| | .COGN   LAM: Cognac | | | | | | | |
| | | | | | | | | CONTINUED |



GOVERNMENT




PHONE
704-598-8971

**INVOICE**

| DATE | INVOICE # |
|------|-----------|
| 07/27/17 | 120185 0 |

SALESMAN 4106   TIME 08:25:09
WRITER   240   PAGE 2
FEDERAL # 56-0903427

Remit To:
Fsioffice
PO Box 563953
Charlotte, NC 28256

CUSTOMER # F3740720 DEPT_____
BILLING ADDRESS
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE          NC 28202

CHARGE
INVOICE
ROUTE # CLT
REPRINT

PO #I3-1756970
SHIPPING ADDRESS
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE          NC 28202

| ITEM NBR. | CO. DESCRIPTION | UN | ORDER QTY | B/O QTY | SHIP QTY | NET PRICE | D T | EXTENDED |
|-----------|-----------------|-----|-----------|---------|----------|-----------|-----|----------|
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| HNL3660LD | 60x15x35-1/4 Stack-o<br>lam doors | EA | 2 | | 2 | 403 260 | N | 806.52 |
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| HNLBW3672 | 72W x 36D Bow Worksu<br>.G   Smooth, Flat<br>COGN   Cognac<br>.P   Color: Black | EA | 2 | | 2 | 218 010 | H | 436.02 |
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| HNLMP6028 | 60W x 27-7/8H Modest<br>Panel<br>.P   Color: Black | EA | 2 | | 2 | 85 410 | H | 170.82 |
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| HNLMP7228 | 72W x 27-7/8H Modest<br>Panel<br>.P   Color: Black | EA | 2 | | 2 | 100 230 | H | 200.46 |
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| HNLRC2448V | 48W x 24D Rectangle<br>worksurface vert grain<br>.G   Smooth, Flat<br>COGN   Cognac<br>.P   Color: Black | EA | 2 | | 2 | 93 210 | H | 186.42 |
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| HNLRC2460 | 60W x 24D Rectangle<br>worksurface<br>.G   Smooth, Flat<br>COGN   Cognac<br>.P   Color: Black | EA | 2 | | 2 | 110 760 | N | 221.52 |
| | $(L1STD)   Grd L1 Standard Laminates<br>.COGN   LAM: Cognac | | | | | | | |
| HCTL182 | 18D Cantilever brkt<br>$(CORE)   PAINT: Select Core Paint<br>.S   Paint: Charcoal | EA | 2 | | 2 | 15.310 | H | 30.62 |
| HEC65PL | 1 Connector bar | EA | 2 | | 2 | 36.430 | N | 72.86 |

CONTINUED



PHONE
704-598-8971

**INVOICE**

| DATE | INVOICE # |
|------|-----------|
| 07/27/17 | 4201851-0 |

Remit To:
FSIoffice
PO Box 563953
Charlotte, NC 28256

SALESMAN 4106   TIME 08:25:09
WRITER   240   PAGE   3
FEDERAL # 56-0903427

| CUSTOMER # F3740720 DEPT | CHARGE | PO #I3-1756970 |
|---|---|---|
| BILLING ADDRESS | INVOICE | SHIPPING ADDRESS |
| GSAF-FEDERAL PUBLIC DEFENDER | ROUTE # CLT | GSAF-FEDERAL PUBLIC DEFENDER |
| SUITE 300 | REPRINT | SUITE 300 |
| 129 WEST TRADE ST | | 129 WEST TRADE ST |
| CHARLOTTE          NC 28202 | | CHARLOTTE          NC 28202 |

| ITEM NBR. | CO. DESCRIPTION | UN | ORDER QTY | B/O QTY | SHIP QTY | NET PRICE | D T | EXTENDED |
|-----------|-----------------|----|-----------|---------|----------|-----------|-----|----------|
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HEC65PT | T Connector 65H | EA | 1 | | 1 | 36.430 | | 36.43 |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HEFEC65P | Panel Finished End C | EA | 2 | | 2 | 14.520 | | 29.04 |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HETC24 | Panel Top Cap 24"w | EA | 2 | | 2 | 8.180 | | 16.36 |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HETC30 | Panel Top Cap 30"w | EA | 7 | | 7 | 9.770 | | 68.39 |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HETC48 | Panel Top Cap 48"w | EA | 2 | | 2 | 15.310 | | 30.62 |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HETP6524FP | Tackable Panel w/o T | EA | 2 | | 2 | 86.860 | | 173.72 |
| | 24W | | | | | | | |
| | $(A)         Gr A Fabric | | | | | | | |
| | .TG          FABRIC: Tingo | | | | | | | |
| | 39           COLOR: Pecan | | | | | | | |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HETP6530FP | Tackable Panel w/o T | EA | 7 | | 7 | 91.610 | | 641.27 |
| | 30W | | | | | | | |
| | $(A)         Gr A Fabric | | | | | | | |
| | .TG          FABRIC: Tingo | | | | | | | |
| | 39           COLOR: Pecan | | | | | | | |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HETP6548FP | Tackable Panel w/o T | EA | 2 | | 2 | 111.410 | | 222.82 |
| | 48W | | | | | | | |
| | $(A)         Gr A Fabric | | | | | | | |
| | .TG          FABRIC: Tingo | | | | | | | |
| | 39           COLOR: Pecan | | | | | | | |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| HEWS65P | Wall Starter Kit for | EA | 1 | | 1 | 24.290 | | 24.29 |
| | 65H | | | | | | | |
| | $(CORE)      PAINT: Select Core Paint | | | | | | | |
| | .S           Paint: Charcoal | | | | | | | |
| | | | | | | | | CONTINUED |



**FSI office**

Remit To:
FSIoffice
PO Box 563953
Charlotte, NC 28256

PHONE
704-598-8971

**INVOICE**

| | |
|---|---|
| DATE | INVOICE # |
| 01/27/11 | 4201851-0 |

SALESMAN 4106   TIME 08:25:09
WRITER   240   PAGE   4
FEDERAL # 56-0903427

CUSTOMER # F3740720 DEPT

BILLING ADDRESS
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE       NC 28202

CHARGE
INVOICE
ROUTE # CLT
REPRINT

PO #I3-1756970

SHIPPING ADDRESS
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE       NC 28202

| ITEM NBR. | CO. DESCRIPTION | UN | ORDER QTY | B/O QTY | SHIP QTY | NET PRICE | D T | EXTENDED |
|---|---|---|---|---|---|---|---|---|
| HH871130 | Electrical Pass-Thru 3-1 & 2-2 Systems | EA | 1 | | 1 | 30.360 | N | 30.36 |
| HH871248 | Electrical Power Har 3-1 & 2-2 Systems | EA | 1 | | 1 | 51.220 | N | 51.22 |
| HH871501 | Duplex Receptacle Ci 3-1 & 2-2 Systems .S  PAINT: Charcoal | EA | 4 | | 4 | 9.770 | b | 39.08 |
| HH879072 | Base In-Feed Cable 8 2-2 Systems | EA | 1 | | 1 | 54.380 | N | 54.38 |
| HSCKTPS | Straight Connector K .X  No Option | EA | 6 | | 6 | 3.960 | N | 23.76 |
| HWSB2 | Worksurface Bracket $(CORE)  PAINT: Select Core Paint .S  PAINT: Charcoal | EA | 2 | | 2 | 10.560 | N | 21.12 |
| H5220 | Dual Monitor Arm-Lft Adj | EA | 2 | | 2 | 234.700 | N | 469.40 |
| HIGCL | Ignition Guest chair Frame: Arms .E  Glide Glide .U  Back: Upholstered $(1)  Gr 1.UPH .RO  Arrondi Disc 12/31/17 96  COLOR: Lagoon Disc 12/31/17 .T  FRAME: Black | EA | 4 | | 4 | 158.340 | b | 633.36 |
| HLWM | Endorse work Mid-bac Back .Y3  Synchrotilt w/indpnd Bck Angle .A  Arm Height and Width Adj .H  CASTER: Hard (Standard) .IM  Black Mesh $(1)  Gr 1 UPH .CU  Centurion 24  COLOR: White .SB  Base: Standard Plastic Black .N  No Head Rest | EA | 1 | | 1 | 324.870 | N | 324.87 |
| Fee | Servicing Dealer Fee | EA | 1 | | 1 | .000 | N | .00 |
| LEM6ERGLO | ERGO LO LTHR SEAT/ME A  Tension Control D  Tilt Lock E  Back Angle Adjustment F  Synchro Tilt G  Seat Height Adjustment | EA | 1 | | 1 | 620.500 | N | 620.50 |

CONTINUED

PHONE
704-598-8971

**INVOICE**

Remit To:
FSIoffice
PO Box 563953
Charlotte, NC 28256

| DATE | INVOICE # |
|------|-----------|
| 07/27/17 | 4201851-0 |

SALESMAN 4106   TIME 08:25:09
WRITER   240   PAGE 5
FEDERAL # 56-0903427

CUSTOMER # F3740720 DEPT
— BILLING ADDRESS —
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE          NC 28202

CHARGE
INVOICE
ROUTE # CLT
REPRINT

PO #I3-1756970
SHIPPING ADDRESS
GSAF-FEDERAL PUBLIC DEFENDER
SUITE 300
129 WEST TRADE ST
CHARLOTTE          NC 28202

| ITEM NBR. | CO. DESCRIPTION | UN | ORDER QTY | B/O QTY | SHIP QTY | NET PRICE | D T | EXTENDED |
|-----------|-----------------|----|-----------|---------|----------|-----------|-----|----------|
| | H     Waterfall Seat | | | | | | | |
| | J     Back Height Adjustment | | | | | | | |
| | K     Seat Depth Adjustment | | | | | | | |
| | M     Arm Height Adjustment | | | | | | | |
| | O     Swivel Arm | | | | | | | |
| | P     Adjustable Arm Depth | | | | | | | |
| | ~     NO Selection | | | | | | | |
| INSTALL- M | Installation/Labor - | EA | 1 | | 1 | 1235.510 | N | 1235.51 |

INVOICE

| | | |
|---|---|---|
| | SUB-TOTAL | 9472.26 |
| | TOTAL | 9472.26 |

 **Re: Reconfiguration of Office Space (Caleb's office)**
Ross Richardson  to: Amanda Buckner

This is approved

Sent from my iPhone

On Jun 23, 2017, at 10:42 AM, Amanda Buckner <Amanda_Buckner@fd.org> wrote:

> Ross:
>
> I reached out to three vendors to get quotes for reconfiguring the space to allow for two attorneys in Caleb's office. Right now, it looks like the total price will be under $9,000 for the furniture and installation. I am seeking formal approval for this project.
>
> Please let me know if you have any questions.
>
> Thank you,
>
> Amanda
>
> <0.26C.jpeg>
>
> CONFIDENTIALITY NOTE
>
> This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender Western District of North Carolina which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

# AMENDED PURCHASE / DELIVERY / TASK ORDER FOR SUPPLIES OR SERVICES

**IMPORTANT: Mark all packages and papers with contract and / or order numbers.**

| | | |
|---|---|---|
| 1. DATE OF ORDER | 06/27/2017 | **6. SHIP TO:** |
| 2. CONTRACT NO. *(If any)* | | Federal Public Defender, Western District of NC |
| 3. ORDER NO. | 13-17569700010 | 129 W. Trade Street, Suite 300 |
| 4. AMENDMENT / MOD NO. & DATE *(If any)* | 1  06/27/2017 | Charlotte, NC  28202 |
| 5. REQUISITION / REFERENCE NO. *(If any)* | | |

| 7. ISSUING OFFICE *(Address Correspondence to)* | 8. ISSUING OFFICE CONTACT INFO. | |
|---|---|---|
| Federal Public Defender, Western District of NC | a. EIN: | b. DUNS No. |
| 129 W. Trade Street, Suite 300 | c. Name: | |
| Charlotte, NC  28202 | d. Phone No. | e. Fax No. |
| | f. Email: | |

| 9. NAME OF CONTRACTOR / VENDOR AND ADDRESS | 10. CONTRACTOR / VENDOR CONTACT INFO. | |
|---|---|---|
| FORMS AND SUPPLY INC | a. EIN:  56-0903427 | b. DUNS No. |
| PO BOX 563953 | c. Name:  STACY S BEARDSLEE | |
| CHARLOTTE, NC  28256 | d. Phone No. 704-598-8971 | e. Fax No.  704-598-6651 |
| | f. Email: | |

| 11. ACCOUNTING AND APPROPRIATION DATA | 12. REQUISITIONING OFFICE |
|---|---|
| 2017-092300-F04NCWF-F04NCWF-3111                 $9,472.26 | Federal Public Defender, Western District of NC |
| | 129 W. Trade Street, Suite 300 |
| | Charlotte, NC  28202 |

**13. TYPE OF ORDER**

a. Open Market
- [ ] 1. Small Purchase *(Terms and Conditions Attached)*
- [ ] 2. Contract

b. Delivery / Task Order
- [x] 1. Non-Judiciary Wide Contract Including GSA Federal Supply Services and Scheduled Contracts *(Terms and Conditions Attached)*
- [ ] 2. Judiciary Wide Contract

| 14. F.O.B. POINT | Destination | 15. SHIPPING POINT | | 16 GROSS SHIPPING WEIGHT | |
|---|---|---|---|---|---|
| 17. PLACE OF INSPECTION / ACCEPTANCE | | | | 18 DELIVER TO F.O.B. ON OR BEFORE *(Date)* | |
| 19. DISCOUNT TERMS | | | | | Net 30 Days |

| 20a. ITEM NO. | 20b. SUPPLIES OR SERVICES | 20c. QUANTITY ORDERED | 20d. UNIT | 20e. UNIT PRICE | 20f. AMOUNT |
|---|---|---|---|---|---|
| H90054 | HON 10500 Series Tckbd for 60"W Stack on Strg Bck Enclosure<br>Gr A Fab $(A)<br>FABRIC: Tango .TG<br>COLOR: Pecan 39 | 2.00 | EA | 89.7000 | 179.40 |
| HNL231628PFF | HON 15-3/4Wx23-1/8Dx28-1/2H File/File Pedestal<br>Canopy/Black .D<br>Color: Black .P<br>Grd L1 Standard Laminates $(LISTD)<br>LAM: Cognac .COGN<br>Grd L1 Standard Laminates $(LISTD) | 2.00 | EA | 252.3300 | 504.66 |

| 21 MAIL INVOICE TO: Federal Public Defender, Western District of NC | 20g. TOTAL *(Cont. pages)* | $8,788.20 |
|---|---|---|
| 129 W. Trade Street, Suite 300 | | |
| Charlotte, NC  28202 | 20h. GRAND TOTAL | $9,472.26 |

| 22. UNITED STATES OF AMERICA BY *(Contracting Officer Signature)* | 23. NAME *(Typed)* AND TITLE *(If any)* | 24. SYSTEM APPROVAL |
|---|---|---|
| *Amanda Buckner* | Amanda Buckner | 06/27/2017 |
| | | Amanda Buckner |
| 25. CONTRACTOR / VENDOR *(Option for Bilateral Signature)* | 26. NAME *(Typed)* AND TITLE *(If any)* | 27 DATE |

**IMPORTANT: Mark all packages and papers with contract and / or order numbers.**

| . DATE OF ORDER | ? CONTRACT NO. *(if any)* | 3. ORDER NO. | 4 AMENDMENT / MOD NO. & DATE *(If any)* |
|---|---|---|---|
| 06/27/2017 | | 13-17569700010 | 1    06/27/2017 |

| 20a.<br>ITEM NO. | 20b<br>SUPPLIES OR SERVICES | 20c<br>QUANTITY<br>ORDERED | 20d.<br>UNIT | 20e.<br>UNIT<br>PRICE | 20f.<br>AMOUNT |
|---|---|---|---|---|---|
| HNL233028PLF | HON 30Wx23-1/8Dx28-1/2H Lateral File Pedestal<br>Canopy/Black .D<br>Color: Black .P<br>Grd L1 Standard Laminates $(L1STD)<br>LAM: Cognac .COGN<br>Grd L1 Standard Laminates $(L1STD) | 4 00 | EA | 340.8600 | 1,363.44 |
| HNL291628PB | HON [illegible]<br>[illegible]<br>[illegible]<br>[illegible] | 2 00 | EA | 276 5100 | 553 02 |
| HNL3660LD | HON [illegible] $(L1STD)<br>[illegible] .COGN<br>[illegible] | 2.00 | EA | 403 2600 | 806 52 |
| HNLBW3672 | HON [illegible] Hng Worklamp<br>[illegible] .G<br>Cognac .COGN<br>Color: Black .P<br>Grd L1 Standard Laminates $(L1STD)<br>LAM: Cognac .COGN | 2 00 | EA | 218 0100 | 436 02 |
| HNI MP6028 | HON 60W x 27-7/8H Modesty / Back Panel<br>Color: Black .P<br>Grd L1 Standard Laminates $(L1STD)<br>LAM: Cognac .COGN | 2 00 | EA | 85 4100 | 170.82 |
| HNLMP7228 | HON 72W x 27-7/8H Modesty / Back Panel<br>Color: Black .P<br>Grd L1 Standard Laminates $(L1STD)<br>LAM: Cognac .COGN | 2 00 | EA | 100.2300 | 200 46 |
| HNLRC2448V | HON 48W x 24D Rectangle Worksurface vert grain<br>[illegible] .COGN<br>[illegible]<br>Grd L1 Standard Laminates $(L1STD)<br>LAM: Cognac .COGN | 2 00 | EA | 93.2100 | 186 42 |
| HNLRC2460 | HON 60W x 24D Rectangle Worksurface<br>Smooth, Flat .G<br>Cognac COGN<br>Color: Black .P<br>Grd L1 Standard Laminates $(L1STD)<br>LAM: Cognac .COGN | 2 00 | EA | 110 7600 | 221.52 |
| HCTL182 | HON 18D Cantilever One Pair<br>PAINT: Select Core Paint $(CORE)<br>Paint. Charcoal .S | 2 00 | EA | 15 3100 | 30.62 |

| | The total for this page and any subsequent continuation<br>page(s) will be carried forward to the first page (Item 20g.). | | TOTAL*(This cont. page)* | | 3 968 8 |
|---|---|---|---|---|---|

AO FAS,T FORM 348 (Rev 02/2009)

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 80 of 102

| AMENDED | PURCHASE / DELIVERY / TASK ORDER FOR SUPPLIES OR SERVICES | | PAGE 3 | PAGE(S) OF 4 |
|---|---|---|---|---|

Continuation Page(s)

**IMPORTANT: Mark all packages and papers with contract and / or order numbers.**

| 1. DATE OF ORDER | 2. CONTRACT NO. (If any) | 3. ORDER NO. | 4. AMENDMENT / MOD NO. & DATE (If any) |
|---|---|---|---|
| 06/27/2017 | | 13-17569700010 | 1    06/27/2017 |

| 20a. ITEM NO | 20b. SUPPLIES OR SERVICES | 20c. QUANTITY ORDERED | 20d UNIT | 20e. UNIT PRICE | 20f. AMOUNT |
|---|---|---|---|---|---|
| HEC65PL | HON L Connector 65H<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 2 00 | EA | 36.4300 | 72.86 |
| HEC65PT | HON T Connector 65H<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 1 00 | EA | 36.4300 | 36.43 |
| HEFEC65P | HON Panel Pass-thru End Connector 65H | 2.00 | EA | 14.5200 | 29.04 |
| HETC24 | HON Panel Top Cap 24"W<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .P | 2.00 | EA | 8.1800 | 16.36 |
| HETC30 | HON Panel Top Cap 30"W<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 7.00 | EA | 9.7700 | 68.39 |
| HETC48 | HON Panel Top Cap 48"W<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 2 00 | EA | 15.3100 | 30.62 |
| HETP6524FP | HON Tackable Panel w/o TC 65H x 24W<br>Gr A Fabric S(A)<br>FABRIC: Tango .TG<br>COLOR: Pecan 39<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 2.00 | EA | 86.8600 | 173 72 |
| HETP6530FP | HON Tackable Panel w/o TC 65H x 30W<br>Gr A Fabric S(A)<br>FABRIC: Tango .TG<br>COLOR: Pecan 39<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 7 00 | EA | 91 6100 | 641.27 |
| HETP6548FP | HON Tackable Panel w/o TC 65H x 48W<br>Gr A Fabric S(A)<br>FABRIC: Tango .TG<br>COLOR: Pecan 39<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 2 00 | EA | 111.4100 | 222 82 |
| HEWS65P | HON Wall Starter Kit for Panels 65H<br>PAINT: Select Core Paint S(CORE)<br>Paint: Charcoal .S | 1 00 | EA | 24.2900 | 24 29 |
| HH871130 | HON Electrical Pass-Thru Cable 30W 3-1 & 2-2<br>Systems | 1.00 | EA | 30 3600 | 30.36 |
| HH871248 | HON Electrical Power Harness 48W 3-1 & 2-2 Systems | 1 00 | EA | 51.2200 | 51 22 |

| The total for this page and any subsequent continuation page(s) will be carried forward to the first page (Item 20g.). | TOTAL (This cont page) | |
|---|---|---|
| | | 1,397.31 |

IMPORTANT: Mark all packages and papers with contract and / or order numbers.

| 1. DATE OF ORDER | 2. CONTRACT NO. (If any) | 3. ORDER NO. | | 4. AMENDMENT / MOD NO. & DATE (If any) | |
|---|---|---|---|---|---|
| 06/27/2017 | | 13-17569700010 | | 06/27/2017 | |

| 20a. ITEM NO. | 20b. SUPPLIES OR SERVICES | 20c. QUANTITY ORDERED | 20d. UNIT | 20e. UNIT PRICE | 20f. AMOUNT |
|---|---|---|---|---|---|
| HH871501 | HON Duplex Receptacle Circuit 1 3-1 & 2-2 Systems<br>PAINT: Charcoal .S | 4.00 | EA | 9.7700 | 39.08 |
| HH879072 | HON Base In-Feed Cable Base 3-1 & 2-2 Systems | 1.00 | EA | 54 3800 | 54.38 |
| HSCKTPS | HON Straight Connector Kit | 6.00 | EA | 3.9600 | 23.76 |
| HWSB2 | HON Worksurface Bracket Kit<br>PAINT: Select Core Paint $(CORE)<br>Paint: Charcoal .S | 2.00 | EA | 10.5600 | 21.12 |
| H5220 | HON Dual Monitor Arm-Effortless Adj | 2.00 | EA | 234 7000 | 469.40 |
| HIGCL | HON Ignition Guest Chair Four Leg Frame Arms<br>Glide: Glide .E<br>Back: Upholstered .U<br>Gr 1 UPH $(1)<br>Arrondi Disc 12/31/17 .RO<br>COLOR: Lagoon Disc 12/31/17 96 | 4.00 | EA | 158 3400 | 633.36 |
| HLWM | HON Hollister Work Mid Back Affirm Hair<br>Freedom Tilt – Seat Bik Angle .Y =<br>Arm: Height seat Width Adj .A<br>CASTER Hard [ ] .H<br>Back Black .HA<br>Pe 1 UPH $( ) | 1 00 | EA | 324.8700 | 324.87 |
| LEM6ERGLO | RGP ERGO LO LTHR SEAT/MESH BACK<br>Tension Control A<br>Tilt Lock D<br>Back Angle Adjustment E<br>Synchro-Tilt F<br>Seat Height Adjustment G | 1.00 | EA | 620 5000 | 620 50 |
| 32 | Installation labor | 1 00 | INSTALL | 1,235 5100 | 1,235 51 |

| | The total for this page and any subsequent continuation page(s) will be carried forward to the first page (Item 20g.). | | | TOTAL(This cont page) | $3,421 98 |
|---|---|---|---|---|---|

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 82 of 102

APPLICABLE JUDICIARY CLAUSES

1. Clause B-5, Clauses Incorporated by Reference (SEP 2010)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the contracting officer will make their full text available. Also, the full text of a clause may be accessed electronically at this address: http://www.uscourts.gov/procurement.aspx.

2. The following clauses are incorporated by reference if marked (X):

_X_ Clause 1-15   Disclosure of Contractor Information to the Public (AUG 2004)
____ Clause 2-35   F.o.b. Destination, Within Judiciary's Premises (JAN 2003)
____ Clause 2-130   Energy Efficiency in Energy-Consuming Products (APR 2013)
____ Clause 2-135   IEEE Standard for the Environmental Assessment of Personal Computer Products (APR 2013)
____ Clause 3-175   Fair Labor Standards Act and Service Contract Act – Price Adjustment (Multiple Year and Option Contracts) (JUN 2012)
____ Clause 6-20   Insurance – Work on or Within a Judiciary Facility (APR 2011)
____ Clause 6-85   Commercial Computer Software License (APR 2013)
____ Clause 6-105   California E-Waste Fee (APR 2013)
_X_ Clause 7-30   Public Use of the Name of the Federal Judiciary (JUN 2014)
_X_ Clause 7-35   Disclosure or Use of Information (APR 2013)
____ Clause 7-55   Contractor Use of Judiciary Networks (JUN 2014)
____ Clause 7-65   Protection of Judiciary Buildings, Equipment and Vegetation (APR 2013)
____ Clause 7-115   Availability of Funds (JAN 2003)
_X_ Clause 7-130   Interest (Prompt Payment) (Jan 2003)
_X_ Clause 7-140   Discounts for Prompt Payment (JAN 2003)
_X_ Clause 7-235   Disputes (JAN 2003)

3. The following full text clauses apply if marked (X):

____ Clause 2-90C, Option to Extend Services (APR 2013)

The judiciary may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The contracting officer may exercise the option by written notice to the contractor no later than _____ calendar days prior to the contract's current expiration date.

(end)

____ Clause 2-90D, Option to Extend the Term of the Contract (APR 2013)

(a) The judiciary may extend the term of this contract by written notice to the contractor no later than _____ calendar days prior to the contract's current expiration date; provided that the judiciary gives the contractor a preliminary written notice of its intent to extend at least _____ calendar days [60 days unless a different number of days is inserted] before the contract expires. The preliminary notice does not commit the judiciary to an extension.

(b) If the judiciary exercises this option, the extended contract shall be considered to include this option clause

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed _____ (months) (years)

(end)

____ Incorporation of Department of Labor Service Contract Act Wage Rate Determination No _____, Dated_____



GOVERNMENT EXHIBIT A-14a



Redacted

GOVERNMENT
EXHIBIT
A-14b

## William Moormann

**From:**     William Moormann
**Sent:**     Monday, October 15, 2018 9:59 AM
**To:**       ███
**Subject:**  RE: whereabouts

███

Different issue, We are relocating some people in the office and have an actual office with a door for you. We are relocating a new Paralegal and Claudia to the back office. The plan is to relocate you to Brian Wise's old office (Terra's office is also open but I thought you would want Brian's instead). Claudia will take Caleb's old space and the new Paralegal will be taking your old space. She will be starting on October 29th, 2 weeks from today. We need to plan on relocating your office within those 2 weeks.

Please advise on the best way to accomplish this. With your approval I can relocate your items, however for privacy reasons it would be best if you were to do that.

Thanks for your help with this.

Bill



William Moormann
Administrative Officer
Federal Public Defender
Western District of North Carolina
129 West Trade St, Suite 300
Charlotte NC 28202
704 374 0720 Main
704 374 0720 Fax
704 770 5889 Cell

This e-mail and any attachments accompanying this e-mail contain information from the Federal Public Defender for the Western District of North Carolina, which is confidential and privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail

**From:** ███
**Sent:** Monday, October 15, 2018 8:25 AM
**To:** zzNCWml_AllStaff <zzNCWml_AllStaff@fd.org>
**Subject:** whereabouts

I will be traveling to the Second Circuit Court of Appeals in NYC to serve on a panel with Chief Judge Robert Katzmann and Jeffrey Minear, Counselor to the Chief Justice, regarding the Supreme Court Fellows program. I will be returning on Wednesday and will be checking email only sporadically tomorrow. Thanks, ███

███
Assistant Federal Defender
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202

1



GOVERNMENT
EXHIBIT
A-15a

Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.



GOVERNMENT
EXHIBIT
A-156

# TELEWORK AGREEMENT

The following constitutes an agreement on the terms and conditions of telework between:

Employee's name: █████████████████

Supervisor's name:  Anthony Martinez

Court, Chambers, Court Unit, or Federal Public Defender Organization (FPDO):

Federal Public Defender Western District North Carolina

1.  The employee has read and agrees to adhere to the *Guide to Judiciary Policy* (Guide), Volume 12, Chapter 10, Telework, and any additional requirements imposed by the court's local Telework Plan. The supervisor concurs with the employee's participation in telework as outlined by the terms of this agreement.

2.  The employee is authorized to telework on the following basis:

    ☐ Ad hoc during emergencies only, e.g., COOP events, inclement weather or similar situations, as required by local policy, or by appointing officer (executive or judge) or delegated manager or supervisor;

    ☑ Ad hoc (including intermittent or temporary full-time telework) based on work requirements and situational circumstances such as medical recuperation periods, as approved by the appointing officer (executive or judge) or delegated manager or supervisor;

    ☐ Regular and recurring, generally at least one day per pay period, on the following days (unless changes are approved by the supervisor):

    _____

    ☐ Full-time, when the employee is not required to report to the employing court or organization at least twice each biweekly pay period on a regular and recurring basis.

    **Note:** The location of the telework site is the official duty station (e.g., for locality pay, leave, travel, and workers' compensation purposes) for an employee who teleworks and is not required to report to the employing court or organization at least twice each biweekly pay period on a regular and recurring basis.

3.  Employee agrees to limit telework to the approved telework location. The telework location is (indicate either home or telework center, and full street address with city, county, state, and zip code):

    █████████████████████████████ *NC* ██████████

4.  Attendance and Leave

    Employee's time and attendance will be documented as either regular hours or telework hours, i.e., telework hours must be documented on the employee's time sheet, whether ad hoc; regular and recurring; or full-time (Guide, Vol 12, § 930.20.30).

5.  Telework During COOP Events or Weather Emergencies

    ☐ When the court or organization is closed to the public due to a COOP event, inclement weather, or other similar circumstance (e.g., flood, fire, or loss of electricity or other services), the employee is required to telework when possible, or may contact the supervisor to request leave.

GOVERNMENT
EXHIBIT
A-16a

Page 1 of 4

☐ During a weather or other emergency when the court or organization is open with an option for unscheduled leave, the employee may either report to the court or organization, telework (even if it is not the employee's normal telework day), or request annual leave, or sick leave if applicable.

6.  Travel and Relocation

    If a full-time teleworker is required to travel to and from the court or FPDO (e.g., to attend a required meeting or training), travel reimbursement:

    ☐ is authorized;

    ☐ is not authorized;

    ☐ is authorized no more than ( _____ ) times per year;

    ☑ other (please explain):  Reporting to Duty Station in same city is not considered travel.

    Note: Travel is not authorized when a teleworker commutes between his or her home and the official duty station (i.e., the court or organization for an employee who is not defined as a full-time teleworker). Relocation expenses are not authorized when the official duty station changes as a result of the initiation, modification, or termination of a full-time telework agreement.

7.  Equipment, Supplies and/or Services Provided by the Court or Organization

    The following government-owned equipment, supplies, and/or services are provided by the court or organization for the employee's use while teleworking:

    ☑ personal computer/laptop

    ☐ cell phone or blackberry

    ☐ printer

    ☐ USB modem internet card (e.g., 4G SIM card)

    ☐ supplies (e.g., paper, pens, toner/ink)

    ☐ other: _____

    Note: For the use of government-owned equipment, see: Guide, Vol 12, § 1020.60. The government will not be responsible for operating costs, home maintenance, or any other costs (e.g., utilities) that are associated with the use of the employee's residence as the telework site.

8.  Equipment and Services Provided by the Employee

    The following employee-owned equipment and/or services are used by the employee while teleworking:

    ☐ personal computer/laptop

    ☒ land line telephone or cell phone equipment and service

    ☒ printer

    ☒ internet connectivity (cable) service

    ☒ electricity

    ☐ other: _____

    Note: For use of employee-owned equipment, see: Guide, Vol 12, § 1020.65.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 90 of 102

9. Information Technology (IT) Security

The court or organization IT manager has an inventory of any government-owned IT equipment provided for an employee's use at the telework site. Policies and procedures covering the care and maintenance of government-issued equipment, the security of equipment, and the protection of judiciary records and data from unauthorized disclosure or damage have been discussed, and are clearly understood. The employee certifies that the requirements are met, including the following:

☑ Employee will protect government records and data from unauthorized disclosure or damage.

☑ The government maintains ownership of its records, data, and any hardware or software the government provides for use by employee.

☑ Employee agrees to immediately report any unauthorized access to government records or data.

☑ The employee has completed the court's or FPDO's initial and periodic IT security training and understands his or her responsibilities regarding protecting access to the networks and systems as well as keeping sensitive information secure.

☑ Up-to-date antivirus software has been installed on the computer at the telework site (including procedures for when and how to update virus signatures) by the IT staff, or by the employee if an employee-owned computer is used for telework.

☑ The government will not be liable for damages to employee's personal or real property during telework. (For liability exceptions, see Guide, Vol 12, § 1020.80.20(b).)

10. Safety

Requirements for a safe and adequate telework space and area have been discussed and the employee certifies that those requirements are met. Some of the issues discussed include:

- adequate temperature, ventilation, and lighting;
- aisles free of obstructions;
- space free of noise hazards;
- handrails for stairs;
- labeled circuit breakers and/or fuses;
- grounded electrical equipment free of recognized hazards (e.g., frayed, loose or exposed wires);
- surge protector installed at the telework site;
- telephone lines, electrical cords, and extension wires secured under a desk or alongside a baseboard;
- office space free of excessive amounts of combustibles;
- carpets secured to the floor and free of worn or frayed seams;
- satisfactory placement of the monitor and keyboard;
- enough leg room at the desk;
- chair adjustable with adequate support.

Employee agrees to permit inspections of telework site during official work hours to ensure proper maintenance of the government-owned property and work site conformance with safety standards.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 91 of 102

11. Accident or Injury

Any job-related accident or injury occurring to the employee at the telework site must be brought to the immediate attention of the supervisor. Because a job-related accident sustained by an employee while teleworking will occur outside the premises of the court or FPDO, the supervisor must investigate any report immediately following notification. Employee may be covered under the Federal Employees Compensation Act if injured in the course of performing official duties at the telework site. (Guide, Vol 12, § 1020.55)

12. Either management or the employee may terminate participation in telework at any time.

Note: If a manager terminates a full-time telework agreement for any reason, e.g., for operational reasons or performance, the employee is required to report back to the employing court or organization location or another location at the discretion of the court or FPDO. If the full-time teleworker is required to report back to the employing court or another location outside of the commuting area of the telework location and the employee declines to report, the employee may be eligible for severance pay (subject to additional severance pay eligibility criteria). In making a determination as to whether severance pay may apply, a court or FPDO should consider whether the full-time telework arrangement and the employee's location in another area outside of the commuting area was required by the court or FPDO or allowed at the request of the employee. See Guide, Vol. 12, § 1020.30, Terms, Conditions, and Pay, and Guide, Vol 12, § 685, Severance Pay.

_____
*Employee's Signature*

10/2/18
*Date*

_____
*Supervisor's Signature*

10/4/18
*Date*

_____
*Appointing Official's Signature*

10/4/18
*Date*

Note: A court or FPDO may attach an addendum to this form to cover any additional court or organization-specific elements or requirements.

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 92 of 102

**From:** ████████████████████ @fd.org>
**Sent:** Tuesday, October 2, 2018 4:22 PM
**To:** William Moormann <William_Moormann@fd.org>
**Subject:** RE: Telework Agreement

Bill, I have attached the signed form. Thanks, ████

**From:** William Moormann
**Sent:** Tuesday, October 2, 2018 12:06 PM
**To:** ████████████████ @fd.org>
**Subject:** FW: Telework Agreement



I still need a signed copy of the telework agreement back.
The Auditors are in and are wanting to see our active telework agreements.

Thanks
Bill



| William Moormann |
| --- |
| Administrative Officer |
| Federal Public Defender |
| **Western District of North Carolina** |
| 129 West Trade St, Suite 300 |
| Charlotte NC 28202 |
| 704 374 0720 Main |
| 704 374 0720 Fax |
| 704 770 5889 Cell |

This e-mail and any attachments accompanying this e-mail contain information from the Federal Public Defender for the Western District of North Carolina, which is confidential and privileged   The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail

**From:** William Moormann
**Sent:** Monday, September 10, 2018 11:13 AM
**To:** ████████████████ @fd.org>
**Subject:** Telework Agreement



As you may know, we are going through our cyclical audit.  One of the issues that came up is the requirement to have a PER-30 Telework Agreement for any staff utilizing telework.

I have attached the form PER-30.

GOVERNMENT
EXHIBIT

Please fill out line #3 sign and return as soon as possible.

Thanks

Bill



William Moormann
Administrative Officer
Federal Public Defender
Western District of North Carolina
129 West Trade St, Suite 300
Charlotte NC 28202
704 374 0720 Main
704 374 0720 Fax
704 770 5889 Cell

This e-mail and any attachments accompanying this e-mail contain information from the Federal Public Defender for the Western District of North Carolina, which is confidential and privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.



**FEHB**
Federal Employees
Health Benefits Program

**Health Benefits Election Form**

Form Approved:
OMB No. 3206-0160

## Part A - Enrollee and Family Member Information (for additional family members use a separate sheet and attach)

| 1. Enrollee name (last, first, middle initial) | 2. Social Security Number | 3. Date of birth (mm/dd/yyyy) | 4. Sex | 5. Are you married? |
|---|---|---|---|---|
| | | | M [X] F | Yes [X] No |

6. Home mailing address (including ZIP Code)

Charlotte NC

7. If you are covered by Medicare, check all that apply.
A [ ]   B [ ]   D [ ]

8. Medicare Claim Number

9. Are you covered by insurance other than Medicare?

Yes, indicate in item 10 below.   [X] No

10. Indicate the type(s) of other insurance:

TRICARE [ ]   Other [ ]   Name of other insurance: _____   Policy Number: _____

FEHB [ ]   An FEHB Self Plus One enrollment covers the enrollee and one eligible family member designated by the enrollee. An FEHB Self and Family enrollment covers the enrollee and all eligible family members. No person may be covered under more than one FEHB enrollment. See instructions for item 10 on page 1.

11. Email address

12. Preferred telephone number

| 13. Name of family member (last, first, middle initial) | 14. Social Security Number | 15. Date of birth (mm/dd/yyyy) | 16. Sex | 17. Relationship code |
|---|---|---|---|---|
| | | | [X] M   F | 1 |

18. Address (if different from enrollee)

PO Box

19. If this family member is covered by Medicare, check all that apply
A [ ]   B [ ]   D [ ]

20. Medicare Claim Number

21. Is this family member covered by insurance other than Medicare?

Yes, indicate in item 22 below.   [X] No

22. Indicate the type(s) of other insurance:

TRICARE [ ]   Other [ ]   Name of other insurance: _____   Policy Number: _____

FEHB [ ]   An FEHB Self Plus One enrollment covers the enrollee and one eligible family member designated by the enrollee. An FEHB Self and Family enrollment covers the enrollee and all eligible family members. No person may be covered under more than one FEHB enrollment. See instructions for item 10 on page 1.

23. Email address (if applicable, enter email address of your spouse or adult child)

24. Preferred telephone number (if applicable, enter preferred phone number of your spouse or adult child)
828

| 25. Name of family member (last, first, middle initial) | 26. Social Security Number | 27. Date of birth (mm/dd/yyyy) | 28. Sex | 29. Relationship code |
|---|---|---|---|---|
| | | | M   F | |

30. Address (if different from enrollee)

31. If this family member is covered by Medicare, check all that apply.
A [ ]   B [ ]   D [ ]

32. Medicare Claim Number

33. Is this family member covered by insurance other than Medicare?

Yes, indicate in item 34 below.   [ ] No

34. Indicate the type(s) of other insurance:

TRICARE [ ]   Other [ ]   Name of other insurance: _____   Policy Number: _____

FEHB [ ]   An FEHB Self Plus One enrollment covers the enrollee and one eligible family member designated by the enrollee. An FEHB Self and Family enrollment covers the enrollee and all eligible family members. No person may be covered under more than one FEHB enrollment. See instructions for item 10 on page 1.

35. Email address (if applicable, enter email address of your spouse or adult child)

36. Preferred telephone number (if applicable, enter preferred phone number of your spouse or adult child)

| 37. Name of family member (last, first, middle initial) | 38. Social Security Number | 39. Date of birth (mm/dd/yyyy) | 40. Sex | 41. Relationship code |
|---|---|---|---|---|
| | | | M   F | |

42. Address (if different from enrollee)

43. If this family member is covered by Medicare, check all that apply.
A [ ]   B [ ]   D [ ]

44. Medicare Claim Number

45. Is this family member covered by insurance other than Medicare?

Yes, indicate in item 46 below.   [ ] No

46. Indicate the type(s) of other insurance

TRICARE [ ]   Other [ ]   Name of other insurance: _____   Policy Number: _____

FEHB [ ]   An FEHB Self Plus One enrollment covers the enrollee and one eligible family member designated by the enrollee. An FEHB Self and Family enrollment covers the enrollee and all eligible family members. No person may be covered under more than one FEHB enrollment. See instructions for item 10 on page 1.

47. Email address (if applicable, enter email address of your spouse or adult child)

48. Preferred telephone number (if applicable, enter preferred phone number of your spouse or adult child)

(Continued on the reverse)

For agency distribution of copies, see page 5 of the instructions.

U.S. Office of Personnel Management

**GOVERNMENT EXHIBIT**

Standard Form 2809
Revised November 2015
Previous edition is not usable.

Enrollee name: _____   Date of birth: _____

| Part B - FEHB Plan You Are Currently Enrolled In *(if applicable)* | | Part C - FEHB Plan You Are Enrolling In or Changing To | |
|---|---|---|---|
| 1. Plan name | 2. Enrollment code | 1. Plan name | 2. Enrollment code |
| Basic Option | 111 | Basic Option Self Plus One | 113 |

| Part D - Event That Permits You To Enroll, Change, or Cancel *(see page 2)* | | Part E - Election NOT to Enroll *(Employees Only)* |
|---|---|---|
| 1. Event code | 2. Date of event | ☐ I do NOT want to enroll in the FEHB Program. *My signature in Part H certifies that I have read and understand the information on page 3 regarding this election.* |
| 1C | 04/28/2018 | |

| Part F - Cancellation of FEHB | Part G - Suspension of FEHB *(Annuitants/Former Spouses Only)* |
|---|---|
| ☐ I CANCEL my enrollment. *My signature in Part H certifies that I have read and understand the information on page 3 regarding cancellation of enrollment.* | ☐ I SUSPEND my enrollment. *My signature in Part H certifies that I have read and understand the information on page 4 regarding suspension of enrollment.* |

**Part H - Signature**

WARNING: Any intentionally false statement in this application or willful misrepresentation relative thereto is a violation of the law punishable by a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001.)

| 1. Your signature *(do not print)* | 2. Date *(mm/dd/yyyy)* |
|---|---|
| | 04/03/2018 |

**Part I - To be completed by agency or retirement system**

REMARKS

| 1. Date received *(mm/dd/yyyy)* | 2. Effective date of action *(mm/dd/yyyy)* | 3. Personnel telephone number |
|---|---|---|
| 4/03/2018 | 4/28/2018 | ( 704  374  0720 |
| 4. Name and address of agency or retirement system | | 5. Authorizing official *(please print)* |
| Federal Public Defender West NC | | William J Moormann |
| 129 West Trade st Suite 300 | | 6. Signature of authorized agency official |
| Charlotte NC 28202 | | |
| 7. Payroll office number | 8. Payroll office contact *(please print)* | 9. Payroll telephone number |
| | | ( ) |

Standard Form 2809
Reverse of revised November 2015
Previous edition is not usable

Case 1:20-cv-00066-WGY   Document 78-1   Filed 10/02/20   Page 96 of 102

**William Moormann**

From: ▓▓▓▓▓▓▓▓▓▓
Sent: Monday, August 13, 2018 9:15 AM
To: zzNCWml_Clt_Attorneys
Subject: whereabouts

**SL today.**

R▓▓▓▓ ▓ W▓▓▓ A▓▓▓▓,
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main – 704-374-0720
Fax – 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

GOVERNMENT
EXHIBIT
A-13

## William Moormann

**From:**
**Sent:** Friday, August 10, 2018 8:07 AM
**To:** zzNCWml_Clt Staff
**Subject:** whereabouts

SL this morning, flex this afternoon.

Sent from Mail for Windows 10

**William Moormann**

| | |
|---|---|
| **From:** | ████████████████ |
| **Sent:** | Thursday, July 26, 2018 9:02 AM |
| **To:** | zzNCWml_AllStaff |
| **Subject:** | Re: Whereabouts |

I am still not feeling well today. I will be on AL tomorrow through next Wednesday, returning Thursday, August 2  Thanks,

████████

████████████████
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited  If you have received this e-mail in error, please notify us immediately by reply e-mail

████████████----07/25/2018 08:09:00 AM---I am still not feeling well today ████████████████████

From  ████████████
To  Jared P Martin/NCWF/04/FDO@FDO
Cc  zzNCWml_AllStaff@FDO
Date  07/25/2018 08 09 AM
Subject  Re  Whereabouts

I am still not feeling well today.  ████████

████████████████
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged  The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail

**William Moormann**

| | |
|---|---|
| **From:** |  |
| **Sent:** | Wednesday, July 25, 2018 8:09 AM |
| **To:** | Jared P Martin |
| **Cc:** | zzNCWml_AllStaff |
| **Subject:** | Re: Whereabouts |

I am still not feeling well today

Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged  The information is intended only for the use of the individual(s) or entity(s) named in this e-mail  If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited  If you have received this e-mail in error, please notify us immediately by reply e-mail

    Jared P Martin---07/25/2018 05:50.24 AM---Hello,  Margaret, Andrew, and I will be at the Asheville court and office today  Thanks.

From  Jared P Martin/NCWF/04/FDO
To  zzNCWml_AllStaff@fd org
Date  07/25/2018 05 50 AM
Subject  Whereabouts

Hello,

Margaret, Andrew, and I will be at the Asheville court and office today  Thanks

Sent from my iPhone

**William Moormann**

| | |
|---|---|
| **From:** | ████████████ |
| **Sent:** | Tuesday, July 24, 2018 8:05 AM |
| **To:** | Kevin Tate |
| **Cc:** | zzNCWml_Clt_Staff |
| **Subject:** | Re: Whereabouts |

Still not feeling well today and will be taking SL. ████████

Sent from my iPhone using IBM Verse

On Jul 23, 2018, 8:28:07 AM, ████████████ wrote:

From: ████████████
To: Kevin_Tate@fd.org
Cc: zzNCWml_Clt_Staff@fd.org
Date: Jul 23, 2018, 8:28:07 AM
Subject: Re: Whereabouts

I will be on SL today. ████████

Sent from my iPhone using IBM Verse

On Jul 22, 2018, 11:41:41 PM, Kevin_Tate@fd.org wrote:

From: Kevin_Tate@fd.org
To: zzNCWml_Clt_Staff@fd.org
Cc:
Date: Jul 22, 2018, 11:41:41 PM
Subject: Whereabouts

I will be on leave this week but for a few hours Monday afternoon I will have access to email or can be reached on my cell shock the need arise.

Kevin A. Tate
Attorney at Law

6

## William Moormann

**From:**  HRMIS_DO_NOT_REPLY_Help@ao.uscourts.gov
**Sent:**  Friday, March 22, 2019 9:45 AM
**To:**  Anthony Martinez; Kathryn Phillips; ralph_jewell@ao.uscourts.gov; William Moormann
**Subject:**  ██████████ Transfer OUT action Processed - DO NOT REPLY

A transfer action has been approved / processed for the employee listed below.

The following actions may be required (if applicable): approve leave requests/timesheets, complete the SF-1150, close employee evaluation in ePerformance.

```
Name                   : █████████
Effective Date         : 03/18/2019
Effective Sequence     : 11
Action          : XFR
Action Reason          : TWJ
Action Reason Description  : Transfer within Judiciary
NOA Code        : 937
NOA Code Description      : Transfer to Excepted Term
Transfer to Department   : A04XXXJS
Department Description    : 4th Circuit - Judges Staff
```

**GOVERNMENT EXHIBIT**
A - 19