IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

JANE ROE,                                            )
                                                     )
     Plaintiff,                               )
                                                     )
v.                                                   )
                                                     )
UNITED STATES OF AMERICA, et al.,                    )
                                                     )
     Defendants.                              )

## **DECLARATION OF JILL B. LANGLEY**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct:

1.     I am Jill B. Langley, the Administrative Office of the United States Courts'
Judicial Integrity Officer (JIO).

2.     Prior to my role as JIO, I worked for the Tenth Circuit for 23 years, the last 13
focused on Employment Dispute Resolution (EDR). I provided leadership and training in EDR
and conflict resolution for employees and judges within the Tenth Circuit. I developed a
nationally recognized training program on EDR laws, designed for court employees, judges,
court executives, and EDR coordinators. I also served on a national working group that was
responsible for developing the 2019 Model EDR Plan.

3.     I served on a national working group with judges in 2008 when the wrongful
conduct reporting provisions were added to the Model EDR Plan. I contributed significantly to
drafting the wrongful conduct reporting provisions in the Model EDR Plan.

4.     I am considered a primary resource for the entire judiciary on the Model
Employment Dispute Resolution Plan, its coverage, and processes.

5.     Under the Model EDR Plan in effect in 2018, the wrongful conduct provisions
were intended to encourage employees to report discrimination, harassment, or retaliation in the
workplace.  The wrongful conduct reporting process is intended to be informal and has no formal
procedures or time frames.  The Model EDR Plan expressly states that a report of wrongful
conduct is not the same as initiating or filing an EDR claim.  The provision encourages
employees to report wrongful conduct, but it is not an employment action, and does not entitle
the employee to corrective action.  It is simply filing a report of misconduct, which then prompts

the appropriate unit executive or chief judge to appropriately investigate whether the alleged individual(s) engaged in misconduct and determine whether a personnel or disciplinary action is warranted.

6.      Under the Model EDR Plan in effect in 2018, EDR Coordinators and/or the chief judges did not reveal the results of a wrongful conduct investigation to the parties because it is considered an internal investigation into confidential personnel matters. The Chief Judge is obligated to take appropriate action based on that investigation, but no EDR plan obligated the court to disclose the actual investigation report.

7.      A complainant could request an investigative report in discovery under the EDR Formal Complaint process, if she completed the Counseling and Mediation prerequisite stages of EDR and then filed a formal EDR complaint. Specifically, Section X, Paragraph B, subparagraph 2 under the Model EDR Plan that was in effect during the relevant time period states: "The presiding judicial officer may provide for such discovery and investigation as is necessary." *See* September 2018 Model Employment Dispute Resolution Plan.

8.      The disqualification provision under the Model EDR Plan in effect in 2018 was designed to ensure that the EDR Coordinator, Mediator, and presiding judicial officer were impartial, not that the defending party was impartial. This is because the EDR Coordinator, Mediator and presiding judicial judge are involved in the processing of the EDR matter and must, therefore, be fair and impartial to both parties. But the defending Respondent employing office, acting through its unit executive, is the opposing or differing party to an EDR disputed matter, entitled to act and respond on behalf of the Respondent employing office.

9.      While serving on a national working group that was responsible for developing the 2019 Model EDR Plan, I ensured that the 2019 Model EDR Plan explicitly limited disqualifications for a conflict of interest to the EDR Coordinator, mediator, and presiding judicial officer.

10.     Under the Model EDR Plan in effect in 2018, during the counseling stage, only the parties can mutually agree to a resolution. A presiding judicial officer may not make a determination of liability or order a resolution during the counseling stage.

11.     Under the Model EDR Plan in effect in 2018, after adjudication of a formal complaint, a chief judge or designated judicial officer could order any "make-whole" remedies contemplated under the Model EDR Plan against any employing office, including a Federal Public Defender organization.

12.     My interpretation of a chief judge or designated judicial officer's authority for remedies under the Model EDR Plan is consistent with the Judicial Conference of the United States' September 2010 policy statement that a presiding judicial officer in an EDR matter has the authority to "compel the participation of or impose remedies upon . . . the employing office which is the respondent in such matters." GE E-1.

13.     The Employment Dispute Resolution Guide – Bench Book for Judges, which serves as an interpretive guide for the relevant Model EDR Plan also provides that a presiding judicial officer retains jurisdiction over the EDR complaint until the ordered resolution or relief has been implemented and a presiding judicial officer or judicial council officer reviewing a final decision may impose sanctions for failure to implement an ordered resolution or relief. *See* GE E-2, §§ 12.24(A)(2)(c), 14.04(B)(2).

14.     While each circuit had the authority to adopt and administer their own Employment Dispute Resolution Plan, I am not aware of any Employment Dispute Resolution Plans that did not largely track the 2018 Model EDR Plan's "Dispute Resolution Procedures" set forth under Chapter X of the 2018 Model EDR Plan.

15.     I have reviewed the Fourth Circuit's Employment Dispute Resolution Plans that were in effect at the time Plaintiff filed a request for counseling under the Fourth Circuit's Employment Dispute Resolution Plan. The provisions that I discuss under paragraphs 5-10 of this declaration are identical to the provisions under the Model EDR Plan in effect in 2018.

16.     I am not aware of any EDR matter where a respondent-employing office, including a Federal Public Defender organization, refused to comply with an EDR Order.

Date: September 23, 2020


Jill B. Langley
Administrative Office of the United States Courts
Office of Judicial Integrity
Judicial Integrity Officer

REPORT OF THE PROCEEDINGS
OF THE JUDICIAL CONFERENCE
OF THE UNITED STATES

**September 14, 2010**

The Judicial Conference of the United States convened in Washington, D.C., on September 14, 2010, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331. The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Sandra L. Lynch
> Chief Judge Mark L. Wolf,
> > District of Massachusetts

Second Circuit:

> Chief Judge Dennis Jacobs
> Chief Judge William K. Sessions III,
> > District of Vermont

Third Circuit:

> Chief Judge Theodore A. McKee
> Chief Judge Harvey Bartle III,
> > Eastern District of Pennsylvania

Fourth Circuit:

> Chief Judge William B. Traxler, Jr.
> Judge James P. Jones,
> > Western District of Virginia

Fifth Circuit:

> Chief Judge Edith Hollan Jones
> Judge Sim Lake III,
> > Southern District of Texas

GOVERNMENT
EXHIBIT
F-1

Sixth Circuit:

> Chief Judge Alice M. Batchelder
> Chief Judge Solomon Oliver, Jr.,
>> Northern District of Ohio

Seventh Circuit:

> Chief Judge Frank H. Easterbrook
> Chief Judge Richard L. Young,
>> Southern District of Indiana

Eighth Circuit:

> Chief Judge William Jay Riley
> Judge Rodney W. Sippel,
>> Eastern District of Missouri

Ninth Circuit:

> Chief Judge Alex Kozinski
> Judge Charles R. Breyer,
>> Northern District of California

Tenth Circuit:

> Chief Judge Mary Beck Briscoe
> Judge Robin J. Cauthron,
>> Western District of Oklahoma

Eleventh Circuit:

> Chief Judge Joel F. Dubina
> Judge Myron H. Thompson,
>> Middle District of Alabama

District of Columbia Circuit:

> Chief Judge David Bryan Sentelle
> Chief Judge Royce C. Lamberth,
>> District of Columbia

2

Federal Circuit:

Chief Judge Randall R. Rader

Court of International Trade:

Chief Judge Jane A. Restani

The following Judicial Conference committee chairs attended the Conference session: Circuit Judges Bobby R. Baldock, Julia Smith Gibbons, Michael S. Kanne, M. Margaret McKeown, Jeffrey S. Sutton, and Richard C. Tallman, and District Judges Julie E. Carnes, Rosemary M. Collyer, Janet C. Hall, Robert L. Hinkle, D. Brock Hornby, George H. King, Mark R. Kravitz, Barbara M.G. Lynn, J. Frederick Motz, Donald C. Pogue, Michael A. Ponsor, Julie A. Robinson, Lee H. Rosenthal, Charles R. Simpson III, George Z. Singal, and Laura Taylor Swain. Bankruptcy Judge Rosemary Gambardella and Magistrate Judge Anthony J. Battaglia were also in attendance, and Collins Fitzpatrick of the Seventh Circuit represented the circuit executives.

James C. Duff, Director of the Administrative Office of the United States Courts, attended the session of the Conference, as did Jill C. Sayenga, Deputy Director; William R. Burchill, Jr., Associate Director and General Counsel; Laura C. Minor, Assistant Director, and Wendy Jennis, Deputy Assistant Director, Judicial Conference Executive Secretariat; Cordia A. Strom, Assistant Director, Legislative Affairs; and David A. Sellers, Assistant Director, Public Affairs. District Judge Barbara Jacobs Rothstein, Director, and John S. Cooke, Deputy Director, Federal Judicial Center, and Judith W. Sheon, Staff Director, United States Sentencing Commission, were in attendance at the session of the Conference, as was Jeffrey P. Minear, Counselor to the Chief Justice. Scott Harris, Supreme Court Counsel, and the 2010-2011 Supreme Court Fellows also observed the Conference proceedings.

Acting Deputy Attorney General Gary Grindler addressed the Conference on matters of mutual interest to the judiciary and the Department of Justice. Senators Patrick Leahy and Jeff Sessions spoke on matters pending in Congress of interest to the Conference.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 6 of 159

## REPORTS

Mr. Duff reported to the Conference on the judicial business of the courts and on matters relating to the Administrative Office (AO). Judge Rothstein spoke to the Conference about Federal Judicial Center (FJC) programs, and Chief Judge Sessions, in his capacity as Chair of the United States Sentencing Commission, reported on Sentencing Commission activities. Judge Gibbons, Chair of the Committee on the Budget, presented a special report on the budget outlook.

## EXECUTIVE COMMITTEE

### RESOLUTION

The Judicial Conference approved a recommendation of the Executive Committee to adopt the following resolution recognizing the substantial contributions made by the Judicial Conference committee chairs whose terms of service end in 2010:

The Judicial Conference of the United States recognizes with appreciation, respect, and admiration the following judicial officers:

**HONORABLE DONALD C. POGUE**
Committee on Audits and Administrative Office Accountability

**HONORABLE BARBARA M. G. LYNN**
Committee on the Administration of the Bankruptcy System

**HONORABLE JULIE E. CARNES**
Committee on Criminal Law

**HONORABLE CHARLES R. SIMPSON III**
Committee on International Judicial Relations

**HONORABLE LAURA TAYLOR SWAIN**
Advisory Committee on Bankruptcy Rules

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 7 of 159

## HONORABLE ROBERT L. HINKLE
Advisory Committee on Rules of Evidence

Appointed as committee chairs by the Chief Justice of the United States, these outstanding jurists have played a vital role in the administration of the federal court system. These judges served with distinction as leaders of their Judicial Conference committees while, at the same time, continuing to perform their duties as judges in their own courts. They have set a standard of skilled leadership and earned our deep respect and sincere gratitude for their innumerable contributions. We acknowledge with appreciation their commitment and dedicated service to the Judicial Conference and to the entire federal judiciary.

_____

## JUDICIARY STRATEGIC PLANNING

In 2008, with the permission of the Chief Justice, the Executive Committee formed an Ad Hoc Advisory Committee on Judiciary Planning to propose a new planning process for the federal judiciary. The group, which was comprised of current and former Conference committee chairs and members of the Executive Committee, as well as court executives, also took on the role of developing a new strategic plan that would potentially replace the *Long Range Plan for the Federal Courts* adopted by the Conference in 1995 (*see* JCUS-SEP 95, pp. 38-63). After two years of work and extensive consultation within the judiciary, in August 2010, the Ad Hoc Advisory Committee proposed a strategic plan that was intended to serve as a broad action agenda addressing judiciary trends, issues, challenges, and opportunities. Beginning with restatements of the vision, mission, and core values of the judiciary, the plan identifies seven key issues and sets forth 13 strategies and more than 30 goals by which the judiciary could address those issues. The Ad Hoc Advisory Committee also made several recommendations with regard to an approach to planning.

On recommendation of the Executive Committee, and after discussion, the Judicial Conference approved the proposed *Strategic Plan for the Federal Judiciary,* as well as a recommended approach to planning, both with minor changes recommended by the Executive Committee on the Conference floor. With regard to the planning approach, the Conference agreed that—

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 8 of 159

a.    The Executive Committee chair may designate for a two-year renewable term an active or senior judge, who will report to that Committee, to serve as the judiciary planning coordinator. The planning coordinator will have responsibility to facilitate and coordinate the strategic planning efforts of the Judicial Conference and its committees.

b.    With suggestions from Judicial Conference committees and others, and the input of the judiciary planning coordinator, the Executive Committee will identify issues, strategies, or goals to receive priority attention over the next two years.

c.    The committees of the Judicial Conference will integrate the *Strategic Plan for the Federal Judiciary* into committee planning and policy development activities.

d.    For every goal in the *Strategic Plan*, a mechanism to measure or assess the judiciary's progress will be developed.

e.    Any substantive changes to the *Strategic Plan* will require the approval of the Judicial Conference, but the Executive Committee will have the authority, as needed, to approve technical and non-controversial changes to the *Strategic Plan*. A review of the *Strategic Plan* will take place every five years.

f.    The new *Strategic Plan for the Federal Judiciary* will supersede the December 1995 *Long Range Plan for the Federal Courts* as a planning instrument to guide future policy-making and administrative actions within the scope of Conference authority. This action, however, should not be interpreted as an across-the-board rescission of the individual Conference policies articulated in the recommendations and implementation strategies of the earlier plan.

## MISCELLANEOUS ACTIONS

The Executive Committee —

•    Approved a statement on behalf of the Conference in reaction to pending legislation – as it related to the judiciary – that would have clarified the Government Accountability Office's (GAO's) ability to

enforce its existing authority to see records and expanded its interview authority, as well as its power to make and retain copies of agency records; and endorsed pursuit of formal protocols for GAO's interactions with the judiciary;

• Declined to recommend action by the Judicial Conference on a request for Conference review of a Judicial Conduct and Disability Act complaint that had been dismissed and for which the petition for review had been denied by the Committee on Judicial Conduct and Disability, on delegation from the Conference;

• Pending final congressional action on the judiciary's appropriations for fiscal year (FY) 2011, approved FY 2011 interim financial plans for the Salaries and Expenses, Defender Services, Court Security, and Fees of Jurors and Commissioners accounts, and endorsed a strategy for distributing court allotments among the court programs;

• Discussed challenges faced by the judiciary with regard to its courthouse construction program and decided to form an ad hoc group of judges to discuss how the judiciary should approach these challenges; and endorsed a letter to be sent by the Director of the Administrative Office on behalf of the judiciary to the President regarding FY 2012 funding for new federal courthouse construction projects.

## COMMITTEE ON AUDITS AND ADMINISTRATIVE OFFICE ACCOUNTABILITY

### COMMITTEE ACTIVITIES

The Committee on Audits and Administrative Office Accountability reported that it was briefed on the scope, methodology, findings, and identified risks in recent audits. It also reviewed an analysis of audit data over the past ten years, which showed a downward trend in the average number of audit findings since the implementation of numerous enhancements to the judiciary's financial management, audit, and internal control programs over the last decade. Noting that the minority of court units which do not complete annual internal control evaluations tend to have more audit findings, the Committee asked the AO to consider how best to encourage those courts to

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 10 of 159

complete the annual self-evaluations. The Committee selected two AO employees to receive the Leonidas Ralph Mecham Award for Exemplary Service to the Courts, and the Committee determined to expand the award's scope to recognize career excellence and outstanding leadership.

# COMMITTEE ON THE ADMINISTRATION OF THE BANKRUPTCY SYSTEM

## BANKRUPTCY JUDGESHIP VACANCIES

In accordance with 28 U.S.C. § 152(b)(3), the Judicial Conference conducts a comprehensive review of all judicial districts every other year to assess the continuing need for authorized bankruptcy judgeships. By December 31 of each even-numbered year, the Conference reports its recommendations to Congress for the elimination of any authorized bankruptcy judgeship position that can be eliminated when a vacancy exists by reason of resignation, retirement, removal, or death. On recommendation of the Bankruptcy Committee, which relied on the results of the 2010 continuing needs survey, the Judicial Conference agreed to take the following actions:

a.    Recommend to Congress that no bankruptcy judgeship be statutorily eliminated; and

b.    Advise the Eighth Circuit Judicial Council with regard to the District of South Dakota and the Northern District of Iowa and the Ninth Circuit Judicial Council with regard to the District of Alaska to consider not filling vacancies in those districts that currently exist or may occur by reason of resignation, retirement, removal, or death, until there is a demonstrated need to do so.

## CRITERIA FOR ADDITIONAL BANKRUPTCY JUDGESHIPS

In March 1991, the Judicial Conference adopted a policy statement regarding the standards to be used for considering requests for additional bankruptcy judgeships. At the same time, the Conference adopted bankruptcy case weights developed by the Federal Judicial Center to be used in administering those standards (JCUS-MAR 91, pp. 12-13). The Federal Judicial Center recently developed new case weights that reflect the effects of

economic, technological, and legislative developments since 1991 (such as the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005) on the judicial time needed to process bankruptcy cases. The Committee recommended that the Conference adopt the new case weights to be used for assessing judgeship needs. The Committee also recommended that the Conference revise the 1991 policy statement to (a) make non-substantive changes to the standards for evaluating additional bankruptcy judgeship needs; (b) add standards for evaluating requests for conversion of temporary judgeships to permanent; and (c) incorporate the standards the Conference has approved for use in the biennial continuing needs surveys. The Conference approved the Committee's recommendations.

## OFFICIAL DUTY STATIONS

On recommendation of the Bankruptcy Committee and in accordance with 28 U.S.C. § 152(b)(1), the Judicial Conference took the following actions regarding official duty stations:

a.      Approved a request from the Ninth Circuit Judicial Council to designate in the Central District of California Santa Ana as the duty station for two of the vacant bankruptcy judgeships in that district and Riverside as the duty station for the four bankruptcy judges currently serving at that location; and

b.      Approved a request from the Second Circuit Judicial Council to designate Burlington as the duty station for the bankruptcy judgeship in the District of Vermont.

## BANKRUPTCY ADMINISTRATOR REGULATIONS

On recommendation of the Bankruptcy Committee, the Judicial Conference approved revisions to the Regulations of the Judicial Conference of the United States Governing the Bankruptcy Administrator Program that clarify language and consolidate sections that were duplicative. The regulations appear in Volume 9, Chapter 2, of the *Guide to Judiciary Policy*.

9

## COMMITTEE ACTIVITIES

The Committee on the Administration of the Bankruptcy System reported that it agreed unanimously to recommend to the Budget Committee that funding in FY 2012 for recalled bankruptcy judges and temporary law clerks remain at the FY 2011 projected current services levels. At the request of the Budget Committee, the Bankruptcy Committee also discussed the programmatic impact of a proposal to lower the budget cap for the Salaries and Expenses account, and had no objection to the proposal.

## COMMITTEE ON THE BUDGET

### FISCAL YEAR 2012 BUDGET REQUEST

.
After careful consideration of the funding levels proposed by the program committees, the Committee on the Budget recommended to the Judicial Conference a fiscal year 2012 budget request to Congress that is 4.7 percent above assumed appropriations for FY 2011. This request contains funding to meet the essential, increasing workload needs of the judiciary while taking into consideration the limited funding that Congress is likely to have available. The Conference approved the budget request subject to amendments necessary as a result of (a) new legislation, (b) actions of the Judicial Conference, or (c) any other reason the Executive Committee considers necessary and appropriate.

### COMMITTEE ACTIVITIES

The Committee on the Budget reported that in light of the current and projected austere fiscal outlook, its FY 2012 budget recommendation would provide funding for only what is essential to support the judiciary's mission. In addition, noting that it expects that budgets in the next several cycles will be tighter than in the current cycle, the Budget Committee asked Administrative Office staff to develop alternative budget cap proposals that are lower than the current 8.2 percent annual budget cap for the Salaries and Expenses account adopted by the Judicial Conference in March 2007 (JCUS-MAR 07, p. 10). Any proposals will be provided to the program committees in advance of their December 2010 meetings for their input. The Budget Committee commended the program committees for their

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 13 of 159

cost-containment initiatives to date and noted that the long-term financial health of the judiciary will be aided by future cost-containment efforts that provide tangible cost savings or avoidances.

# COMMITTEE ON CODES OF CONDUCT

## COMMITTEE ACTIVITIES

The Committee on Codes of Conduct reported that since its last report to the Judicial Conference in March 2010, the Committee received 17 new written inquiries and issued 17 written advisory responses. During this period, the average response time for requests was 22 days.  In addition, the Committee chair responded to 159 informal inquiries, individual Committee members responded to 133 informal inquiries, and Committee counsel responded to 358 informal inquiries.

# COMMITTEE ON COURT ADMINISTRATION AND CASE MANAGEMENT

## CAMERAS IN THE COURTROOM PILOT PROJECT

On recommendation of the Committee on Court Administration and Case Management, the Judicial Conference authorized a pilot project to evaluate the effect of cameras in district court courtrooms, of video recordings of proceedings therein, and of publication of such video recordings.  The pilot project will proceed in accordance with the tenets outlined below, and is subject to definition and review by the Committee.  In addition, the Committee will request that a study of the pilot be conducted by the Federal Judicial Center.

a.      The pilot will be national in scope and consist of up to 150 individual judges from districts chosen to participate by the Federal Judicial Center, in consultation with the Court Administration and Case Management Committee.  The pilot project should include a national survey of all district judges, whether or not they participate in the pilot, to determine their views on cameras in the courtroom.                        .

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 14 of 159

b.      The pilot will last up to three years, with interim reports prepared by the Federal Judicial Center after the first and second years.

c.      The pilot will be limited to civil cases only.

d.      Courts participating in the pilot will record proceedings, and recordings by other entities or persons will not be allowed.

e.      Parties in a trial must consent to participating in the pilot.

f.      Recording of members of a jury will not be permitted at any time.

g.      Courts participating in the pilot should – if necessary – amend their local rules (providing adequate public notice and opportunity to comment) to provide an exception for judges participating in the Judicial Conference-authorized pilot project.

h.      The Court Administration and Case Management Committee is authorized to issue and amend guidelines to assist the pilot participants.

I.      The Administrative Office is authorized to provide funding to the courts with participating judges – if needed – for equipment and training necessary to participate in the pilot.

_____

## PACER ACCESS TO CERTAIN BANKRUPTCY FILINGS

Under the Judicial Conference policy on privacy and public access to electronic case files, bankruptcy filings should include only the last four digits of filers' social security numbers on their petitions and other public documents (JCUS-SEP/OCT 01, pp. 48-50).  However, documents filed prior to implementation of the policy in 2003 are still available on the Public Access to Court Electronic Records (PACER) system and contain the debtors' full social security numbers, creating privacy concerns.  To address those concerns, on recommendation of the Committee, the Judicial Conference agreed to amend its privacy policy to restrict public access through PACER to documents in bankruptcy cases that were filed before December 1, 2003 and have been closed for more than one year, with the following conditions:

12

    a.       The docket sheet and docket information would remain available to the general public via PACER.

    b.       Any party who has filed a notice of appearance in an individual case would have Case Management/Electronic Case Files (CM/ECF) system or PACER access to all filings in that case.

    c.       All filings in such cases would remain accessible at the clerks' offices, except those under seal.

    d.       Access to documents in bankruptcy case appeals filed in the district courts, bankruptcy appellate panels, or courts of appeals for bankruptcy cases filed before December 1, 2003, would be similarly restricted.

The Conference also agreed to delegate to the Court Administration and Case Management Committee the authority to develop implementation guidance for the courts to effectuate this policy. This guidance will include encouraging courts to establish a method to accept requests for copies of documents in these cases.

## CENTRAL VIOLATIONS BUREAU PETTY OFFENSE CASES

Petty offense cases committed on federal property are processed by the judiciary's Central Violations Bureau (CVB). In order to facilitate management of such cases, the Administrative Office is working to integrate CVB data into the CM/ECF system and make such cases accessible through PACER. However, because standard CVB violation notices contain personal identifiers such as social security numbers, full birth dates, and full home addresses, the Committee recommended that the Conference endorse the approach of providing courts with redacted and unredacted versions of the CVB violation notice, with participant access to the unredacted version, and public access through PACER to the redacted version. The Conference adopted the Committee's recommendation.

## RECORDS MANAGEMENT

The Committee recommended that the Judicial Conference adopt a revised district court records disposition schedule for civil cases that sets retention periods for non-trial civil cases largely by case type. Under this schedule, it is estimated that half of the closed case files currently in storage at federal retention centers (for which storage fees are charged) would be immediately eligible for disposal, which would lead to reductions in storage fees. The Conference adopted the revised retention schedule.

## PACER TRAINING PROGRAM

In September 2007, the Judicial Conference approved a pilot project to provide free public access to PACER at Federal Depository Libraries (FDLs) (JCUS-SEP 07, pp. 12-13). However, that program was suspended when a PACER security vulnerability was discovered. At this session, the Committee recommended, and the Conference approved, the establishment of a program involving the Government Printing Office, the American Association of Law Libraries, and the Administrative Office, that would provide training and education to the public about the PACER service, and would exempt from billing the first $50 of quarterly usage by a library participating in the program.

## COURT LIBRARIES AND LIBRARY SERVICES

At the request of the Committee, the Administrative Office undertook a comprehensive study of court libraries and library services focusing on the role for libraries in the digital age, options for change, and consideration of potential savings. Based on the results of that study, and after receiving significant input from circuit librarians, subject matter experts, judges, and legal researchers, among others, the Committee made a number of recommendations, which were approved by the Conference as follows:

a.      With regard to library collections, agreed to—

      (1)      Ask that the Committee establish guidelines to discourage maintaining subscriptions to regional reporters, state case law reporters, and specialty reporters in libraries and advise circuit

librarians to consider significantly reducing the number of subscriptions to the federal reporters in staffed libraries, especially West's Federal Supplement. If there is a concern that legal research services for the public/litigants or bar would be hindered if case law reporters are not available in the library, the local court(s) should consider using attorney admission funds to maintain the subscriptions.

(2)    Request that the circuit librarians conduct and lead a comprehensive assessment of usage and need in the headquarters library and each satellite library or shared collection. The assessment should involve local judges, legal researchers, and any relevant circuit library committees; consider if infrequently used categories of materials identified by the library survey results could be eliminated; and include an analysis of duplication. A summary of the assessment should be reported to the Committee.

(3)    Ask that the Committee establish guidelines discouraging subscriptions to case law reporters for newly appointed judges and existing judges.

b.    With regard to the number and size of libraries, agreed to request that the circuit judicial councils, working with circuit librarians, library committees, and relevant judges, review satellite libraries to assess the continuing need for each library. In addition, they should review more closely libraries that serve fewer than 10 judges and report to this Committee whether those libraries will remain open or are targeted either for closure or reduction in size and collection. Consideration should be given to the circuit library program as a whole and the impact of closure of any satellite on the remaining libraries and the judges and others served.

## NATIONAL VACCINE ACT PROPOSAL

The National Childhood Vaccine Injury Act of 1986 establishes a procedure to compensate vaccine-injured individuals through use of vaccine special masters within the United States Court of Federal Claims. Special masters conduct hearings and issue findings of fact and conclusions of law, and their determinations are appealable to Court of Federal Claims judges and

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 18 of 159

then to the Court of Appeals for the Federal Circuit. To address significant backlogs in processing these cases, the Court of Federal Claims has proposed legislation that would (a) assign vaccine claims directly to Court of Federal Claims judges, who could then hear the cases or refer them to vaccine judges; (b) rename vaccine special masters as vaccine judges; (c) authorize vaccine judges to issue a recommended decision, or with the consent of the parties, hear and enter judgement; (d) with the consent of the parties, authorize appeal of the vaccine judge's decision directly to the Court of Appeals for the Federal Circuit; and (e) authorize the Court of Federal Claims clerk instead of the chief special master to assume responsibility for the managerial aspects of the vaccine judges. After considering the proposal, the Committee recommended that the Judicial Conference decline to endorse renaming vaccine special masters as vaccine judges in light of the limited jurisdiction of those officers, but endorse the remaining concepts proposed by the Court of Federal Claims. The Conference adopted the Committee's recommendations.

## TRANSLATED FORMS

The Judicial Conference declined to approve a motion to recommit an information item regarding the translation of court forms for voluntary use by district courts in civil cases.

## COMMITTEE ACTIVITIES

The Committee on Court Administration and Case Management reported that given the current economic climate, it determined to defer until June 2011 its cyclical review of miscellaneous fee schedules regarding increases for inflation. The Committee continued to provide policy guidance and oversight in the development of the functional requirements for the next generation CM/ECF software. It also endorsed an updated policy on wireless communication devices in courthouses and asked for review of the policy by the Judicial Security Committee. In addition, the Committee expressed support for the Codes of Conduct Committee's recently issued resource packet to assist courts in developing guidelines for employees on the use of social media.

16

# COMMITTEE ON CRIMINAL LAW

## SEARCH AND SEIZURE

Guidelines.  On recommendation of the Committee on Criminal Law, the Judicial Conference approved guidelines entitled, "Search and Seizure Guidelines for United States Probation Officers in the Supervision of Offenders on Supervised Release or Probation," to replace model search and seizure guidelines adopted in 1993 (JCUS-MAR 93, p. 13).  The new guidelines reflect developments in case law, best practices, and updates to administrative policies and procedures.

Use-of-Force Policy.  In September 2002, the Judicial Conference approved a use-of-force continuum to govern self-defense responses by probation and pretrial services officers (JCUS-SEP 02, p. 44).  Noting that certain provisions of that policy might conflict with provisions in the new search and seizure guidelines, the Committee recommended that the Conference approve revisions to the use-of-force policy to allow officers to manage searches as permitted by the new guidelines.  The Conference approved the Committee's recommendation.

## *THE SUPERVISION OF FEDERAL DEFENDANTS*, MONOGRAPH 111

On recommendation of the Committee, the Judicial Conference approved revisions to Monograph 111, *The Supervision of Federal Defendants*.  The monograph, which provides guidance to officers who supervise defendants on pretrial release, was updated to reflect current knowledge in the field of substance abuse and mental health treatment.

## COMMITTEE ACTIVITIES

The Committee on Criminal Law reported that it discussed the status of the implementation of actuarial risk-needs instruments developed by the AO for use in pretrial and post-conviction supervision, consistent with the Committee's ongoing commitment to evidence-based practices.  In addition, the Committee reviewed the results of several preliminary studies of the

effectiveness of certain evidence-based practices that have been implemented by the courts.

# COMMITTEE ON DEFENDER SERVICES

## COMMUNITY DEFENDER ORGANIZATION MODEL CODE OF CONDUCT

On recommendation of the Committee on Defender Services, the Judicial Conference approved a Model Code of Conduct for Federal Community Defender Employees, which is based on the code of conduct applicable to federal public defender organization employees, but modified appropriately for non-profit criminal defense organizations. The Conference also approved a new paragraph to be added to the community defender organization (CDO) grant and conditions document that requires CDOs to adopt the code, absent an approved variance from the AO. Finally, the Conference delegated to the Defender Services Committee the authority to make future adjustments to the CDO code that are substantially in accord with the code of conduct applicable to federal public defenders.

## LITIGATION SUPPORT

The Committee recommended and the Conference approved revisions to the Criminal Justice Act (CJA) Guidelines, *Guide to Judiciary Policy*, Volume 7A, § 320.70.40, and the corresponding sample model order, to streamline and clarify the procedures for CJA panel attorneys to request and acquire computer hardware and software for use in CJA representations.

## COMMITTEE ACTIVITIES

The Committee on Defender Services reported that, under delegated authority from the Judicial Conference (JCUS-MAR 89, pp. 16-17), it approved FY 2011 budgets and grants for federal defender organizations. The Committee also approved funding for the establishment of a federal public defender organization in the Northern District of Alabama, to be headquartered in Birmingham, with a staffed branch office in Huntsville and a staffing level of six assistant federal public defenders. The Committee reviewed an update to the 1998 report, "Federal Death Penalty Cases:

18

Recommendations Concerning the Cost and Quality of Defense Representation" (the "Spencer Report"), and endorsed updated commentary to the original recommendations and public dissemination of the report, as updated.

## COMMITTEE ON FEDERAL-STATE JURISDICTION

### COMMITTEE ACTIVITIES

The Committee on Federal-State Jurisdiction reported that it discussed with the Legal Adviser for the Department of State the position adopted by the Judicial Conference in March 2010 regarding federal legislation to implement the Hague Convention on Choice of Court Agreements. The Committee also reviewed proposed legislation to authorize the High Court of American Samoa to exercise federal criminal jurisdiction, and determined to recommend no change in the 1996 Judicial Conference position expressing a preference for a territorial court in the event Congress chooses to extend federal jurisdiction to the territory. In addition, the Committee reviewed a legislative proposal to establish standards for state court actions on child custody orders affecting military personnel deployed overseas. Noting that the Judicial Conference has opposed legislation that would result in child custody cases being brought in federal court, the Committee asked the AO Director to transmit a letter to Congress suggesting that it consider an amendment to the proposed measure that would clarify the exclusion of such cases from federal courts.

## COMMITTEE ON FINANCIAL DISCLOSURE

### COMMITTEE ACTIVITIES

The Committee on Financial Disclosure reported that as of July 1, 2010, it had received 4,015 financial disclosure reports and certifications for calendar year 2009, including 1,215 reports and certifications from Supreme Court justices, Article III judges, and judicial officers of special jurisdiction courts; 339 reports from bankruptcy judges; 534 reports from magistrate judges; and 1,927 reports from judicial employees. The Committee continues to oversee the development of a system for the electronic filing and records management of financial disclosure reports. The system will work in conjunction with the financial disclosure report software currently used to produce these reports.

19

# COMMITTEE ON INFORMATION TECHNOLOGY

## *LONG RANGE PLAN FOR INFORMATION TECHNOLOGY*

Pursuant to 28 U.S.C. § 612 and on recommendation of the Committee on Information Technology, the Judicial Conference approved the fiscal year 2011 update to the *Long Range Plan for Information Technology in the Federal Judiciary*.  Funds for the judiciary's information technology program will be spent in accordance with this plan.

## COMMITTEE ACTIVITIES

The Committee on Information Technology reported that it endorsed a number of information technology (IT) program initiatives designed to enhance communication and collaboration with the courts, provide the courts with key IT services and support, and strengthen the reliability and capability of the judiciary's IT infrastructure.  The Committee discussed ongoing initiatives including the next generation CM/ECF architecture study, the development of functional requirements for the next generation CM/ECF system, and the development of an electronic vouchering system for Criminal Justice Act panel attorneys.  The Committee received a presentation on how information in digital form is transforming the writing of judicial opinions and discussed the potential implications of this trend.

# COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

## COMMITTEE ACTIVITIES

The Committee on Intercircuit Assignments reported that 112 intercircuit assignments were undertaken by 89 Article III judges from January 1, 2010, to June 30, 2010.  During this time, the Committee continued to disseminate information about intercircuit assignments and aided courts requesting assistance by identifying and obtaining judges willing to take assignments.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 23 of 159

# COMMITTEE ON INTERNATIONAL JUDICIAL RELATIONS

## COMMITTEE ACTIVITIES

The Committee on International Judicial Relations reported on its involvement in rule of law and judicial reform throughout the world, highlighting activities in Asia and the Pacific Basin, Latin America and the Caribbean, the Middle East, Europe, and Eurasia. The Committee further reported on its participation in the rule of law component of the Library of Congress' Open World Program for jurists from Russia, Ukraine, Georgia, Kazakhstan, Kyrgyzstan, Moldova, and Tajikistan, and in activities involving the Federal Judicial Center, the Department of State, the Agency for International Development, the Department of Justice, the Patent and Trademark Office, the AO Office of Defender Services, and U.S. court administrators. The Committee also received an analysis of current rule of law and judicial reform issues in Eastern Europe and the Balkans from the Minister of Justice of the Republic of Slovenia.

# COMMITTEE ON THE JUDICIAL BRANCH

## JUDGES' TRAVEL REGULATIONS

The Judicial Conference approved an amendment to the Travel Regulations for United States Justices and Judges, *Guide to Judiciary Policy*, Vol. 19, § 220.30.10(g), to provide that a chief district judge, with the concurrence of the circuit judicial council, may authorize a senior district judge who lives within the territorial boundaries of the court to which the judge was originally commissioned, reimbursement for enhanced transportation, lodging, and subsistence expenses (e.g., airfare, lodging, and three meals per day) when it is in the interest of the administration of justice (e.g., due to a shortage of judge power or case backlog). The amendment is intended to address a situation where the judge's residence, although within the court's territorial boundaries, may be located outside the commuting area of the court.

## COMMITTEE ACTIVITIES

The Committee on the Judicial Branch reported that it continues to consider ways to maintain and enhance the independence and dignity of the federal judicial office. The Committee also considered steps that may be taken to improve the total compensation of federal judges. The Committee continues to examine ways to improve judicial-legislative communications, and educating the public, especially the media, on the judiciary and the role of judges in society remains a priority of the Committee.

# COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY

## COMMITTEE ACTIVITIES

The Committee on Judicial Conduct and Disability reported that on April 12, 2010, it issued a Memorandum of Decision on a petition for review of a circuit judicial council order on a complaint under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364. In addition, the Committee has issued a set of complaint filing instructions for courts to post online. The Committee continues to address courts' inquiries and to develop resources and infrastructure in support of the Committee's responsibilities.

# COMMITTEE ON JUDICIAL RESOURCES

## JUDICIARY SALARY PLAN PAY-SETTING FLEXIBILITY

With limited exceptions, the salary for applicants from outside the federal civil service is set at step 1 of the Judiciary Salary Plan (JSP) grade to which they are appointed. On recommendation of the Committee on Judicial Resources, the Judicial Conference affirmed the interpretation and application of the Judiciary Salary Plan (JSP) non-chambers pay-setting flexibility that would allow an applicant for a court unit executive or second-in-command (e.g., Type II chief deputy/deputy chief) JSP position to be appointed at step 1 or above in a grade lower than the highest grade for which the individual is qualified, subject to the following policy provisions:

22

a.  The salary for the higher step may not exceed the corresponding salary for step 1 of the higher grade for which the individual is qualified;

b.  If such an employee is subsequently promoted in less than one year from the individual's appointment date, the promotion may not result in the individual's salary exceeding the highest grade and step for which the individual was initially eligible;

c.  For individuals appointed using this flexibility, the two-step increase JSP promotion rule may not be applied until the employee has worked at the grade and step to which the individual is appointed for one year; and

d.  The position must be announced at all possible grades that the appointing officer is considering for the appointment.

This pay flexibility allows a court to offer a salary that is not at the highest possible grade or salary for that applicant, but may still be competitive because it is at a higher step than could otherwise be offered in the lower grade.

## JUDICIAL ASSISTANT/ COURT REPORTER POSITION

On recommendation of the Committee, and in accordance with 28 U.S.C. § 753(a), the Judicial Conference approved the addition of court reporter duties to the judicial assistant position in the chambers of Judge Roberto A. Lange in the District of South Dakota based on the circumstances presented by the court and because it is in the public interest. The approval is limited to the present incumbent judicial assistant in Judge Lange's chambers. The judicial assistant-court reporter is required to follow all statutory requirements and Judicial Conference policies related to court reporting, as well as the Code of Conduct for Judicial Employees, when providing court reporting services to the court and the litigants.

## COURT INTERPRETER POSITIONS

Using established criteria, the Committee recommended and the Conference approved one additional Spanish staff court interpreter position each for the Southern District of California and the District of New Mexico

23

and two additional Spanish staff court interpreter positions for the Western District of Texas for fiscal year 2012, based on the Spanish language interpreting workload in these courts.  Accelerated funding in fiscal year 2011 was authorized for the one additional Spanish staff court interpreter position for the District of New Mexico and the two additional Spanish staff court interpreter positions for the Western District of Texas.

-------------------

## TELEWORK POLICY

On recommendation of the Committee, the Judicial Conference amended its telework policy for courts and federal public defender organizations as it relates to teleworkers who work permanently from remote locations to change the official duty station for locality pay purposes to the site where the employee spends the majority of his or her time in the performance of official duties, and to clarify travel and relocation policies for such employees.  Specifically, the Conference revised the current telework policy to —

a.  Define "official duty station" as the telework site for an employee who is not required to report to the employing court or federal public defender organization at least twice each biweekly pay period on a regular and recurring basis (other than during temporary telework, e.g., during a medical recovery period), and as the site of the employing court or organization for any employee who reports to the court or organization at least twice each biweekly pay period on a regular and recurring basis;

b.  Provide that a court or federal public defender organization should establish in its telework policy generally, and in each telework agreement specifically, what, if any, travel reimbursement is authorized when an employee travels to the employing court or organization; and

c.  Clarify that relocation expenses are not authorized when the official duty station changes as a result of the initiation of full-time telework, or modification or termination of a telework agreement.

24

## EMPLOYMENT DISPUTE RESOLUTION

On recommendation of the Committee, the Conference adopted the following policy statement regarding a judge's role when presiding in an employment dispute resolution (EDR) proceeding:

a.      EDR proceedings are strictly administrative and are not "cases and controversies" under Article III of the Constitution;

b.      Judges presiding in EDR matters are functioning in an administrative rather than judicial capacity;

c.      Judges' decisions in EDR matters must be in conformance with all statutes and regulations that apply to the judiciary, and judges in the EDR context have no authority to declare such statutes or regulations unconstitutional or invalid; and

d.      Judges presiding in EDR matters may not compel the participation of or impose remedies upon agencies or entities other than the employing office which is the respondent in such matters.

## COMMITTEE ACTIVITIES

The Committee on Judicial Resources reported that it submitted to the Committee on the Budget a fiscal year 2012 budget request that represents a 5.4 percent increase over the fiscal year 2011 assumed appropriations. In order to stay within the guidelines recommended by the Budget Committee for 2012, the request was based on a re-computation of the staffing formulas using only the fastest 70 percent of the work measurement data at the category level of work (e.g., civil cases, Chapter 7 bankruptcy cases). The Committee also established as Committee policy its intent to use category-level formula adjustments as a cost-containment mechanism for developing its budget request each year when budget guidance establishes a ceiling lower than would be derived using the work measurement formulas at 100 percent of requirements. The Committee asked the Administrative Office to conduct studies on the alternative dispute resolution program, death penalty law clerks, and court sizing formulas, and present the results to the Committee at its June 2011 meeting.

25

# COMMITTEE ON JUDICIAL SECURITY

## COMMITTEE ACTIVITIES

The Committee on Judicial Security reported that it discussed and concurred with the Space and Facilities Committee's recommendation that the Conference endorse the concept of the establishment of a Capital Security Program (*see infra*, "Capital Security Program," p. 30). The Committee also reported on the development of a guide for judges who have had false liens filed against them, which provides easy-to-follow instructions on requesting representation and taking appropriate action.

# COMMITTEE ON THE ADMINISTRATION OF THE MAGISTRATE JUDGES SYSTEM

## CHANGES IN MAGISTRATE JUDGE POSITIONS

After consideration of the report of the Committee on the Administration of the Magistrate Judges System and the recommendations of the Director of the Administrative Office, the district courts, and the judicial councils of the circuits, the Judicial Conference approved the following changes in the number, locations, salaries, and arrangements of magistrate judge positions in the respective district courts. Changes with a budgetary impact are to be effective when appropriated funds are available.

### SEVENTH CIRCUIT

Southern District of Indiana

1.      Authorized an additional full-time magistrate judge position at Indianapolis; and

2.      Made no other change in the number, locations, salaries, or arrangements of the magistrate judge positions in the district.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 29 of 159

## EIGHTH CIRCUIT

District of Minnesota

1.    Authorized an additional full-time magistrate judge position at Minneapolis or St. Paul; and

2.    Made no other change in the number, locations, salaries, or arrangements of the magistrate judge positions in the district.

## NINTH CIRCUIT

Central District of California

1.    Authorized an additional full-time magistrate judge position at Santa Ana or Riverside; and

2.    Made no other change in the number, locations, salaries, or arrangements of the magistrate judge positions in the district.

District of Nevada

1.    Authorized an additional full-time magistrate judge position at Las Vegas; and

2.    Made no other change in the number, locations, or arrangements of the magistrate judge positions in the district.

The Conference also agreed to make no change in the number, locations, salaries, or arrangements of the magistrate judge positions in the District of Puerto Rico; District Court of the Virgin Islands; District of Nebraska; District of South Dakota; Southern District of Georgia; and District of Columbia.

_____

## ACCELERATED FUNDING

On recommendation of the Committee, the Judicial Conference agreed to designate for accelerated funding, effective April 1, 2011, the new full-time magistrate judge positions at Indianapolis in the Southern District of Indiana;

27

Minneapolis or St. Paul in the District of Minnesota; Santa Ana or Riverside in the Central District of California; and Las Vegas in the District of Nevada.

## COMMITTEE ACTIVITIES

The Committee on the Administration of the Magistrate Judges System reported that under the September 2004 Judicial Conference policy regarding the review of magistrate judge position vacancies (JCUS-SEP 04, p. 26), during the period between the Committee's December 2009 and June 2010 meetings, the Committee chair approved filling nineteen full-time magistrate judge position vacancies. At its June 2010 meeting, the full Committee approved filling one vacancy and deferred action on another vacancy pending further review at its December 2010 meeting. The Committee also reviewed a report on long-range planning for the magistrate judges system and agreed to consider, at its December 2010 meeting, several long-range planning issues identified in the report.

# COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

## FEDERAL RULES OF APPELLATE PROCEDURE

Rules Amendments. The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed amendments to Appellate Rules 4 (Appeal as of Right — When Taken) and 40 (Petition for Panel Rehearing), together with committee notes explaining their purpose and intent. The Judicial Conference approved the proposed rules amendments and authorized their transmittal to the Supreme Court for its consideration with a recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

Statutory Amendment. The Committee also recommended seeking legislation to amend 28 U.S.C. § 2107, consistent with the proposed amendment to Appellate Rule 4, to clarify and make uniform the treatment of the time to appeal in all civil cases in which a federal officer or employee is a party. The Conference adopted the Committee's recommendation.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 31 of 159

## FEDERAL RULES OF BANKRUPTCY PROCEDURE

<u>Rules Amendments</u>.  The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed amendments to Bankruptcy Rules 2003 (Meeting of Creditors or Equity Security Holders), 2019 (Representation of Creditors and Equity Security Holders in Chapter 9 Municipality and Chapter 11 Reorganization Cases), 3001 (Proof of Claim), 4004 (Grant or Denial of Discharge), 6003 (Interim and Final Relief Immediately Following the Commencement of the Case — Applications for Employment; Motions for Use, Sale, or Lease of Property; and Motions for Assumption or Assignment of Executory Contracts), and new Rules 1004.2 (Petition in Chapter 15 Cases) and 3002.1 (Notice Relating to Claims Secured by Security Interest in the Debtor's Principal Residence), together with committee notes explaining their purpose and intent.  The Judicial Conference approved the proposed rules amendments and new rules and authorized their transmittal to the Supreme Court for its consideration with a recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

<u>Forms Amendments</u>.  The Committee also submitted to the Judicial Conference proposed revisions to Official Forms 9A, 9C, 9I, 20A, 20B, 22A, 22B, and 22C.  The Judicial Conference approved the revised forms to take effect on December 1, 2010.

## FEDERAL RULES OF CRIMINAL PROCEDURE

The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed amendments to Criminal Rules 1 (Scope; Definitions), 3 (The Complaint), 4 (Arrest Warrant or Summons on a Complaint), 6 (The Grand Jury), 9 (Arrest Warrant or Summons on an Indictment or Information), 32 (Sentencing and Judgment), 40 (Arrest for Failing to Appear in Another District or for Violating Conditions of Release Set in Another District), 41 (Search and Seizure), 43 (Defendant's Presence), and 49 (Serving and Filing Papers), and new Rule 4.1 (Complaint, Warrant, or Summons by Telephone or Other Reliable Electronic Means), together with committee notes explaining their purpose and intent.  The Judicial Conference approved the proposed amendments and new rule and authorized their transmittal to the Supreme Court for its consideration with a recommendation

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 32 of 159

that they be adopted by the Court and transmitted to Congress in accordance with the law.

## FEDERAL RULES OF EVIDENCE

The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed restyled Evidence Rules 101-1103, together with committee notes explaining their purpose and intent. The restyling of the Evidence Rules is the fourth in a series of comprehensive style revisions to simplify, clarify, and make more uniform all of the federal rules of practice, procedure, and evidence. The Judicial Conference approved the proposed restyled rules amendments and authorized their transmittal to the Supreme Court for its consideration with a recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

## COMMITTEE ACTIVITIES

The Committee on Rules of Practice and Procedure reported that it approved publishing for public comment proposed amendments to Bankruptcy Rules 3001, 7054, and 7056, proposed revisions of Bankruptcy Official Forms 10 and 25A, and a proposed new attachment and supplements to Bankruptcy Official Form 10, and proposed amendments to Criminal Rules 5 and 58, and a new Criminal Rule 37. The comment period expires on February 16, 2011.

# COMMITTEE ON SPACE AND FACILITIES

## CAPITAL SECURITY PROGRAM

Noting that there are many court facilities that have serious operational and security deficiencies, but might not qualify for funding for a new courthouse, the Committee recommended that the Judicial Conference endorse the concept of a Capital Security Program to assist such courts. The program, which would be a collaborative effort between the judiciary and GSA, would fund the retrofitting of certain types of physical security enhancements at locations that are suitable for such improvements. The Conference adopted the Committee's recommendation.

## FIVE-YEAR COURTHOUSE PROJECT PLAN

On recommendation of the Committee, the Judicial Conference approved the *Five-Year Courthouse Project Plan for FYs 2012-2016*, which (a) adds the courthouse in Los Angeles, California, to the first year of the plan (FY 2012) as it is the only judicial space emergency that has not yet been built and is the judiciary's highest space priority; and (b) includes two new projects in the last year of the plan (FY 2016) for which it has been determined sufficient funding exists under the Judicial Conference's rent cap.

## FEASIBILITY STUDIES

Requests for GSA feasibility studies must be approved by the Judicial Conference as Component B projects under the judiciary's circuit rent management program (JCUS-SEP 07, pp. 36-37). After reviewing requests for feasibility studies using asset management planning (a methodology approved by the Conference, *see* JCUS-MAR 08, p. 26) and determining urgency scores for each project, the Committee recommended that the Conference approve GSA feasibility studies for the projects in the following three locations: Hartford, Connecticut; Winston-Salem/Greensboro, North Carolina; and Clarksburg, West Virginia. The Conference approved the Committee's recommendation.

## COMMITTEE ACTIVITIES

The Committee on Space and Facilities reported that it advised the Administrative Office on procedures for responding to out-of-cycle circuit rent budget Component B requests for housing for newly confirmed judges, and clarified the process through which its space planning and rent management subcommittees deal with requests for feasibility studies. The Committee also discussed the status of the first three tenant alterations projects (in Des Moines, Iowa; Chicago, Illinois; and Washington, D.C.) planned by the courts under the newly granted congressional authorization for the GSA to delegate to the judiciary the authority to perform tenant alterations projects costing up to $100,000.

## FUNDING

All of the foregoing recommendations that require the expenditure of funds for implementation were approved by the Judicial Conference subject to the availability of funds and to whatever priorities the Conference might establish for the use of available resources.

Chief Justice of the United States
Presiding

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 35 of 159



**Employment Dispute Resolution**



# Bench Book for Judges



Administrative Office of the United States Courts
James C. Duff, Director

GOVERNMENT EXHIBIT E-2

## SECTION 1—INTRODUCTION:  EVOLUTION OF EMPLOYMENT DISPUTE RESOLUTION (EDR) PROGRAM  IN THE U.S. COURTS

**1.01  Congressional Accountability Act (CAA).  2 U.S.C. sec. 1301 et seq.**

The CAA:
A.  Created rights and remedies for Legislative Branch employees by:
1.  Applying 11 federal employment and workplace laws; and
2.  Establishing dispute resolution procedures and remedies to address potential violations of these laws.
B.  Required the Judicial Conference of the United States to study possible Judicial Branch coverage under the CAA, and to report to Congress on its study by December 31, 1996.

**1.02  The Judicial Conference Report, December 30, 1996**

A.  The Judicial Conference Report concluded:
1.  Existing Judicial Branch policies were comparable to those protections provided to legislative branch employees under the 11 laws applied by the CAA.
2.  Primary differences between current Judiciary practices and the underlying CAA laws were in the details of enforcement and dispute resolution.
B.  The Judicial Conference Report recommended:
1.  Development of an internal plan and procedures to provide Judicial Branch employees with rights, protections, and remedies similar to protections the CAA provides to legislative branch employees.
2.  Application of the plan and procedures throughout the Judicial Branch.

3.  Coverage to include the substantive rights under the nine substantive laws which the Judicial Conference recommended as appropriate for the judicial branch.[1]

4.  Inclusion of three key procedural elements in the new plan:

    a.  Informal dispute resolution:

        (1)  Use of such procedures is to be mandatory before a complaining employee is entitled to a formal hearing.

        (2)  Such procedures are to include:

            (a)  Counseling; and/or

            (b)  Mediation.

    b.  Hearing:

        (1)  May occur only after exhaustion of informal resolution.

        (2)  Is to be conducted by the chief judge or a designated judicial officer including, where appropriate, a judicial officer from outside the court where the complaint arose or the parties are employed.

    c.  Review:

        (1)  A procedure is to be established for reviewing the presiding judicial officer's decision, as appropriate.

        (2)  Review must be heard by a judicial officer.

        (3)  No further judicial review is authorized.

## 1.03   EDR process flow chart (see following two pages)

---

[1] The Report recommended against applying the Federal Labor-Management Relations Statute as well as the Fair Labor Standards Act overtime pay provisions, notwithstanding the Judicial Branch's adherence to the latter Act's minimum wage and child labor requirements and equal pay principles.

# Process for Handling Claims/Complaints Under Model Employment Dispute Resolution Plan



Alleged Violation by Judge

## EDR Only

**Filing an EDR Claim**: Within 30 days of alleged violation or time employee becomes aware of alleged violation

**Step 1**

Request for Counseling

30 Days for Counseling

Notice of end of counseling period

15 Days

**Step 2**

Request for Mediation

30 Days for Mediation (must attend at least one session)

Notice of end of mediation period

15 Days

Filing of Formal EDR Complaint

60 Days

**Step 3**

Hearing

30 Days

Final Decision

Petition for Review of Decision

**Step 4**

Review of Final Decision

## Judicial Misconduct Only

If a judge is the subject of a judicial misconduct complaint, please refer to the reverse side of this chart.

## Both Judicial Misconduct and EDR

If a judge is the subject of both a judicial misconduct complaint and an EDR claim, the CJC or its designee will craft a procedure for determining common issues of fact and processing both complaints, subject to requirements of the Judicial Conduct and Disability Act and, as practicable, the EDR Plan.

CJC or its designee may determine that all or part of the EDR claim must be abated until action is taken on the judicial misconduct complaint.

**Model CJC Procedure:**
An EDR claim abated pending the entry of the final order that concludes the judicial misconduct complaint, is dismissed if such allegations of judicial misconduct are dismissed. As to any allegations that the order does not dismiss, the EDR claim will be reinstated and decided by the CJC. If the EDR claim includes allegations separate and divisible from those in the judicial misconduct compliant, the separate allegations will be treated as a distinct EDR claim that will not be abated.

**ⓘ** *For more information*

Refer to the **Judicial Misconduct Procedures** re: *Judicial Misconduct Complaint* and to the **EDR Plan** re: *abated EDR Claim.*

# Judicial Misconduct and Judicial Disability Procedure



**Alleged Violation by Judge**

**Judicial Misconduct Only**

**Step 1**
Chief Circuit Judge (CCJ) becomes aware of a complaint or situation constituting reasonable grounds for an inquiry.

**Step 2**
CCJ may conduct an inquiry to determine whether probable cause of misconduct or a disability exists.

> No probable cause found. Case ends.

**Step 3**
CCJ attempts informal resolution.

> Informal resolution achieved. Case ends.

**Step 4**
CCJ may "identify a complaint" as he/she deems appropriate. However, where the evidence of misconduct is clear and convincing the CCJ must identify a complaint.

> The CCJ may decide that a case is trivial, isolated, or based on marginal evidence and not proceed. This decision is not appealable. Case ends.

> Rule 11 (C),(D), & (E). Where a complaint is filed the CCJ may dismiss the complaint if it involves conduct that is not deemed to be prejudicial to the operation of the court, relates to the merits of a ruling, is frivolous, is lacking in sufficient evidence of misconduct, is filed in the wrong circuit, is otherwise not appropriate for consideration under the Act, an informal resolution has been reached, the subject has taken appropriate corrective action, or because intervening events have made it unnecessary.

**Step 5**
Subject judge is given a chance to respond to the complaint.

> In a Rule 11 (C), (D), or (E) dismissal the CCJ must prepare a memorandum when dismissing a complaint and the complainant or judge may petition the judicial council for review. The petition must be filed within 35 days of the date of the notice letter.

**Step 6**
CCJ appoints a special committee, consisting of himself and equal numbers of circuit and district court judges. Judge, complainant, and Judicial Conference Committee notified of the appointment and the members of the committee.

> Petition filed.

> No petition filed. Case ends.

**Step 7**
The special committee conducts an investigation. Where criminal conduct is involved the special committee must consult with the relevant prosecutorial authorities. The complainant may be interviewed at the committee's discretion, may submit written argument, and may be permitted to present oral argument at the committee's discretion.

> Petitions to the judicial council are reviewed by a panel of at least 5 members. The judge is entitled to file a written response. The panel may: 1) affirm the disposition, 2) remand to the CCJ for further inquiry, 3) return to the CCJ with directions to appoint a special committee (see step 6), or 4) in exceptional circumstances take other appropriate action. Where a disposition is affirmed, the complainant is notified.

**Step 8**
The special committee may hold a hearing and must notify the subject judge of witnesses to be called. The judge may suggest additional witnesses, may present evidence, may attend the hearing, cross-examine witnesses, and present evidence. Normally, a complainant will not be permitted to attend except where the special committee elects to allow for complainant participation.

> Remand. Case returns to Step 6.

> Dismissed with dissent.

> Affirmed. No dissent. Case ends.

> No petition filed. Case ends.

> Petition filed. Step 11 appeal limited to dissent issue.

> Other appropriate action. Case presumably ends.

**Step 9**
The special committee must file a report of its investigation and recommendations with the judicial council. A copy is sent to the Judicial Conference Committee on Judicial Conduct and Disability (CCJCD), but is not shared with the complainant.

**Step 11**
A complainant or subject judge may petition the CCJCD for review of a judicial council decision or, where a dissent occurred, from a judicial council affirmed dismissal, within 63 days of the decision. The CCJCD may also hear a case at its own initiative. The CCJCD sits absent any members from the judge's circuit and must have at least five members. Decisions are normally on the record, though written submissions are at CCJCD discretion.

**Step 10**
The judge has 21 days following the filing of the special committee report to file a written response with the judicial council and must also be given a chance to present argument through counsel. The council may: 1) dismiss the complaint on the merits or on procedural grounds, 2) conclude the proceedings because intervening events have corrected the situation or made the proceeding unnecessary, 3) refer the complaint to the JCUS with council recommendations (the council must refer any case that might constitute grounds for impeachment of a district or circuit judge or is not amenable to resolution by the judicial council), 4) take one of several remedial actions or a combination of actions, 5) remand the case to the special committee for further review.

**Step 12**
The JCUS may review any CCJCD decision at its discretion. Otherwise, the decision is final and any JCUS decision is final. However, the JCUS determines whether impeachment proceedings may be warranted in the case of district and circuit court judges and, if so, transmits the record to the Speaker of the House.

**1.04   Background of the Judiciary Model Employment Dispute Resolution Plan (Model EDR Plan)**[2]

**N.B.  The discussion in this Bench Book is based solely on the provisions of the Model EDR Plan.  Individual court plans may differ.  Consult the individual provisions of your court's EDR Plan to determine if, and in what way, it differs from the Model EDR Plan.**

    A.      The Model EDR Plan provides rights and protections to Judicial Branch employees comparable to those already provided by the CAA to Legislative Branch employees.

    B.      The Model EDR Plan supersedes Appendix I of the Judiciary Model Equal Employment Opportunity Plan (Model EEO Plan), except for sec. VI of Appendix I (Annual Report).

    C.      Each court was required to adopt, effective January 1, 1999, an EDR Plan based on the Model EDR Plan.

          1.    EDR Plans may vary among circuits.

          2.    Any modification to the Model EDR Plan must be approved by the judicial council for that circuit.

          3.    Each court must file its EDR Plan and any subsequent modification with the Administrative Office (AO).

          4.    Each court must submit an annual report on implementation of its plan to the AO for inclusion in the Director's Annual Fair Employment Practices Report to the Judicial Conference.

    D.      The Model EDR Plan was amended in 2010 to reflect changes in case law and to update the Plan based upon Judiciary experience with the Model EDR Plan. Major changes included:

          1.    Specific provisions addressing harassment and retaliation and broadening the definition of harassment beyond sexual harassment.

          2.    A new wrongful conduct reporting procedure.

---

[2] All citations in this Bench Book, unless otherwise noted, are to the Model EDR Plan.

3.     A procedure to address violations by judges.
4.     A new dismissal provision allowing summary dismissals at any point in the process.
5.     Clarifying the provisions regarding remedies, notice, and confidentiality.

## 1.05   Statutes related to the provisions of the Model EDR Plan.  See "EDR Legal Resources Guide" (available from the AO Fair Employment Practices Office)

A.     Title VII, Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. Chapter II of the Model EDR Plan.

B.     Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. sec. 631 et seq.  (Chapter II.)

C.     Rehabilitation Act of 1973, 29 U.S.C. sec. 791 et seq.  (Chapter II.)

D.     Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. sec. 12101 et seq. as amended by the Americans With Disabilities Act Amendment Act of 2008. (Chapter II.)

E.     Family and Medical Leave Act of 1993 (FMLA), 5 U.S.C. sec. 6381 et seq.  (Chapter III.)

F.     Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. sec. 2101 et seq.  (Chapter IV.)

G.     Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. sec. 4301 et seq.  (Chapter V.)

H.     Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. sec. 651 et seq.   (Chapter VI.)

I.     Employee Polygraph Protection Act of 1988 (EPPA), 29 U.S.C. sec. 2001 et seq. (Chapter VII.)

## 1.06   Four stages of the EDR process

Under the Model EDR Plan, the first three stages of the EDR process are:

A.     Counseling.  (Chapter IX, sec. 8.)

B.     Mediation.  (Chapter IX, sec. 9.)

C. Filing of the complaint, review of pleadings, and hearing and decision. (Chapter IX, sec. 10.)
Any party aggrieved may elect to file for:

D. Review of the decision. (Chapter IX, sec. 11.)


## 1.07 Definition of terms used in the Model EDR Plan. (Chapter I, sec. 3.)

A. "Employee":
   1. Includes:
      a. All individuals listed in Chapter I, sec. 2 of the Model EDR Plan (*see* discussion, *infra* sec. 1.08A); and
      b. Applicants for employment and former employees.
   2. Does not include :
      a. Interns or externs providing gratuitous service,
      b. Applicants for bankruptcy judge or magistrate judge positions,
      c. Private attorneys who apply to represent indigent, defendants under the Criminal Justice Act,
      d. Criminal defense investigators not employed by federal public defenders,
      e. Volunteer counselors or mediators, or
      f. Other individuals who are not employees of an "employing office."

B. "Employing office":
   1. Includes all offices of the U.S. court of appeals, district courts, and bankruptcy courts, including the offices of circuit executives, district court executives, federal public defenders, clerks of court, chief probation officers, chief pretrial services officers, staff attorneys, chief preargument attorneys, circuit librarians, bankruptcy administrators, and any such offices that might be created in the future.
   2. The court is the employing office of a judicial officer's chambers staff.

C. "Judicial officer": A judge appointed under Article III of the Constitution, a U.S. bankruptcy judge, a U.S. magistrate judge, a judge on the Court of Federal Claims, or a judge of any court created

EDR Bench Book for Judges (March 2011)                                    7

by Act of Congress in a territory which is invested with any jurisdiction of a district court of the U.S.

D. "Court":
   1. The appropriate court (appeals, district, or bankruptcy) in which is located the employing office which would be responsible for redressing, correcting, or abating the violation(s) alleged in the complaint.
   2. Where disputes involve federal public defenders, the term "court" refers to the appropriate court of appeals.

## 1.08   Major provisions of the Model EDR Plan

A. Coverage.  (Chapter I, sec. 2.)
   1. Applies to all:
      a. Article III judges and other judicial officers of the U.S. court of appeals, district courts, bankruptcy courts, Court of Federal Claims and Court of International Trade, as well as to judges of any court created by an Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States;
      b. Employees of the court of appeals, district courts, bankruptcy courts, Court of Federal Claims, Court of International Trade, as well as to judges of any court created by an Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States;
      c. Staff of judges' chambers, court unit heads and their staffs, circuit executives and their staffs, federal public defenders and their staffs, and bankruptcy administrators and their staffs (including applicants and former employees).
   2. Intended to be Judicial Branch employees' exclusive remedy relative to rights enumerated under the Model EDR Plan.
   3. Not intended to duplicate procedures for resolving complaints of  judicial officer misconduct or disability under 28 U.S.C. §§ 351-364. Claims against judges follow special procedures at Chapter IX, sec. 3.

B. Reports of wrongful conduct:

1. Employees are encouraged to report discrimination, harassment, and retaliation through the wrongful conduct process; and

2. Chief judges and unit executives are to assure that allegations of wrongful conduct are promptly investigated.

C. Four procedural stages under the Model EDR Plan (Chapter IX):

1. Counseling;

2. Mediation (if counseling fails and aggrieved employee elects to pursue allegations further);

3. Hearing (if counseling and mediation fail and complaint is filed which is not dismissed); and

4. Review of hearing decision (if an aggrieved party petitions for review of final decision of presiding judicial officer).

D. Remedies:

1. A judicial officer, when acting as presiding judicial officer or when reviewing a decision (Chapter IX, sec. 10 and 11 of the Model EDR Plan), who finds a violation of a substantive right protected by the Model EDR Plan, may order a necessary and appropriate remedy. (Chapter IX, sec. 12.)

2. Available remedies:

 a. Retrospective relief to correct a past violation; and/or

 b. Prospective relief to ensure compliance with rights protected under the Model EDR Plan.

3. The remedy must be tailored as closely as possible to the specific violation.

4. For remedies which may be provided to successful complainants under the Model EDR Plan, (*see* Chapter IX, sec. 12B.)

5. For remedies not available under the Model EDR Plan, (*see* Chapter IX, sec. 12C.)

E. General provisions of the Model EDR Plan, applicable at multiple stages:

1. Representation. (Chapter IX, sec. 5B.)

 a. An aggrieved employee is entitled to the representative of his/her choice if that person is available and willing to serve.

b.    A court employee may serve if representation will not unduly interfere with his/her court duties or constitute a conflict of interest.

c.    The Model EDR Plan is silent regarding representation of the employing office or the alleged violator.

d.    The Model EDR Plan does not authorize payment of attorney's fees to complainant, except as authorized by the Back Pay Act.  (Chapter IX, sec. 12B6.)

2.    Official time: An aggrieved employee may use a reasonable amount of official time to prepare his/her case, so long as it does not unduly interfere with the performance of his/her court duties.  (Chapter IX, sec. 5C.)

3.    Disqualification: A party may request disqualification of a judicial officer, employee, or other person involved in an employment dispute  (including the EDR Coordinator, counselor, or mediator) under procedures established by the court and its judicial council.  (Chapter IX, sec. 7.)

4.    Confidentiality of allegations filed shall be protected to the extent possible. However a copy of the request for counseling will be provided to the unit executive and the chief judge and, allegations shall be shared on a need-to-know basis.  Records relating to violations shall be kept confidential on the same basis. (Chapter IX, sec. 4.)  An employee filing a claim may waive this right. (Chapter IX, sec. 8C3.)

5.    Prohibition against retaliation.  Chapter IX, sec. 5 prohibits retaliation or harassment against:

a.    Complainants; and

b.    Any person who participates in the filing or processing of a claim or wrongful conduct report including EDR Coordinators, counselors, mediators, witnesses, representatives, and co-workers.

6.    Access to final decisions: Final decisions must be made available to the public under procedures established by the judicial council of the circuit.  (Chapter IX, sec. 13.)

**1.09  Significant deadlines in the Model EDR Plan**

**N.B.  Be sure to consult your court's EDR Plan, because deadlines in court plans  may vary significantly from the Model EDR Plan.**

  A.  Counseling (Chapter IX, sec. 8):
    1.  Must be requested by the employee:
      a.  Within 30 days of the alleged violation, or
      b.  Within 30 days of the time the employee becomes aware of the alleged violation.  (Chapter IX, sec. 8B3.)
    2.  Counseling can last up to 30 days, beginning on the date the EDR Coordinator receives the counseling request. (Chapter IX, sec. 8D.)
  B.  Mediation (Chapter IX, sec. 9):
    1.  Must be requested by the employee within 15 days after the employee receives notification of the end of the counseling period.  (Chapter IX, sec. 9A.)
    2.  The mediation period can last up to 30 days from the date the EDR Coordinator receives the mediation request.  (Chapter IX, sec. 9C.)
  C.  Filing of complaint by the employee must be no later than 15 days after the employee receives notification of the end of the mediation period.  (Chapter IX, sec. 10A.)
  D.  Hearing.  (Chapter IX, sec. 10B.)
    Designated judicial officer must:
    1.  Begin the hearing no later than 60 days after the complaint is filed.  (Chapter IX, sec. 10B2a.)
    2.  Issue the final decision no later than 30 days after the end of the hearing.   (Chapter IX, sec. 10B2g.)
  E.  Review:  The Model EDR Plan establishes no deadline for seeking review of designated judicial officer's decision. Circuit judicial councils are to establish procedures for seeking review. (Chapter IX, sec. 11.)
  F.  The chief judge of the court, or other presiding judicial officer, may extend, for good cause shown, any of the above deadlines. (Chapter IX, sec. 5D.)

## SECTION 2—ADMINISTRATIVE DUTIES OF JUDGES

**2.01  Designation of EDR Coordinator**

A.  Initial designation.  (Chapter IX, sec. 6.)
Each court must designate one or more EDR Coordinators.

B.  Designation of an alternate EDR Coordinator.
Where the EDR Coordinator is disqualified under Chapter IX, sec. 7, the court must designate an alternate.

C.  Responsibilities of EDR Coordinator.  (Chapter IX, sec. 6A-D.)

1.  Provide information to the court and its employees regarding the rights and protections afforded under the Model EDR Plan.

2.  Coordinate and organize the procedures under the Model EDR Plan.

3.  Maintain the court's official files of claims and related matters initiated and processed under the court's EDR Plan.

4.  Coordinate employee counseling, and serve as a counselor, in the initial stage of the claims process, consistent with Chapter IX, sec. 8.

5.  Provide copies of  requests  for counseling and requests for mediation to the unit executive and the chief judge.

6.  Conduct a pre-hearing investigation and/or collection of evidence at the request of designated judicial officer.

7.  Collect, analyze, and consolidate statistical data and other information relating to the court's EDR process.

**2.02  Chief judge's responsibility for establishing EDR procedures**

A.  The chief judge ensures that procedures are established by the court and made available:

1.  For employees to file a formal complaint.  (Chapter XI, sec. 10A.)

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 48 of 159

2. For a party to seek disqualification of a judicial officer, employee, or other person involved in a dispute. (Chapter IX, sec. 7.)
3. For parties to seek the dismissal of a claim, (Chapter IX, sec. 5E.)
B. The chief judge of the court of appeals ensures that:
1. Review procedures have been established by the judicial council of the circuit to be used when a party requests review of a decision rendered by a judge who has reviewed the pleadings or by a presiding judicial officer.
2. These procedures are made available to all employees in the circuit.
3. Procedures are established for cases involving judges.

## 2.03 Extensions of time

The chief judge of the court, or other presiding judicial officer, may, for good cause shown, extend any of the deadlines in Chapter IX of the Model EDR Plan. (Chapter IX, sec. 5D.)

## 2.04 Chief judge's responsibilities during the informal stages of the Model EDR Plan process

A. Designate a counselor. (Chapter IX, sec. 8C1.)
After an employee requests counseling, the chief judge designates a counselor. If the EDR Coordinator is disqualified as counselor under Chapter IX, sec. 4, or is otherwise unavailable, the chief judge will designate another counselor.
B. Designate a mediator as soon as possible after receiving a request for mediation. (Chapter IX, sec. 9B1.)

**2.05   Chief judge's responsibilities during the formal stage of the Model EDR Plan process**

A.   Review pleadings.  (Chapter IX, sec. 10B.)
1.   The chief judge, or presiding judicial officer, reviews the complaint and any other documents after the EDR Coordinator provides written notification to the complaining employee that the mediation period has ended and the employee files a complaint.
2.   Exception: If the chief judge is disqualified under Chapter IX, sec. 7, or is unavailable to serve, the reviewing official shall be designated in accordance with procedures established by the court.

B.   Dismiss a complaint.  (Chapter IX, sec. 5E.)
The chief judge or presiding judicial officer, after reviewing the complaint and any other documents, may issue a written dismissal of any complaint, on several grounds (*see* "Review of Pleadings," *infra* sec. 8),

C.   Assess the merits.  (Chapter IX, sec. 10B.)
If the chief judge or presiding judicial officer does not dismiss the complaint, he/she, acting as designated judicial officer:
1.   Holds a hearing on the merits of the complaint**,** no later than 60 days after filing of the complaint (Chapter IX, sec. 10B2a); or
2.   Determines no material factual dispute exists, and therefore no hearing is necessary.  (Chapter IX, sec. 10B1.)

D.   Issue a decision and order remedies.  (Chapter IX, sec. 10B2h and sec. 12.)
The chief judge or presiding judicial officer:
1.   Issues a final written decision no later than 30 days after:
a.   Deciding to dismiss without hearing; or
b.   Concluding the hearing.

2.     Notifies in writing all parties, or any aggrieved individual, of any action taken as a result of:
    a.     The decision to dismiss without hearing; or
    b.     The hearing.
3.     Uses as a guide (Chapter IX, sec. 10B2e.):
    a.     The judicial and administrative decisions under the laws related to Chapters II through VII of the Model EDR Plan; and
    b.     The decisions of the judicial council of the appropriate circuit under Chapter IX, sec. 11.
4.     A judicial officer may order any appropriate remedy. (Chapter IX, sec. 10B2f and sec. 12.)

## 2.06   Administrative duties of other judges

The chief judge may designate a presiding judicial officer to:[3]
A.     Designate an EDR Coordinator.  (Chapter IX, sec. 6.)
B.     Review pleadings.  (Chapter IX, sec. 5E.)
C.     Dismiss a complaint. ( Chapter IX, sec. 5E.)
D.     Conduct a hearing.  (Chapter IX, sec. 10B.)
E.     Issue a decision.  (Chapter IX, sec. 10B2g and h.)
F.     Order remedies.  (Chapter IX, sec. 10f & 12.)
G.     Extend deadlines.  (Chapter IX, sec. 5D.)

---

[3] Chapter I, sec. 3D, defines a "judicial officer" as an Article III judge, a U.S. bankruptcy judge, a U.S. magistrate judge, a judge of the Court of Federal Claims, or a judge of any court created by an Act of Congress in a territory which is invested with any jurisdiction of a U.S. district court.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 51 of 159

## SECTION 3 – REPORTS OF WRONGFUL CONDUCT

### 3.01   Wrongful Conduct.  (Chapter VIII)

A.   Wrongful Conduct is:
1.   Discrimination based upon age, race, color, gender, religion, national origin, or a disability.
2.   Harassment based upon any of the aforementioned protected categories.
3.   Retaliation for reporting wrongful conduct, engaging in any protected activity or otherwise taking part in the EDR process including as a counselor, EDR Coordinator, mediator, witness, coworker, or representative.  (Chapter II, sec.1.)

B.   Reporting wrongful conduct:
1.   The wrongful conduct reporting process is intended to be informal and expeditious.  The process has no formal procedures or time frames.
2.   Wrongful conduct should be reported by any judge or employee who becomes aware of it.
3.   When a report of wrongful conduct is received it is the responsibility of the employee receiving the report to pass it on to the EDR Coordinator, the appropriate unit executive, or the chief judge.

C.   Actions to be taken:
1.   Upon receiving a report of wrongful conduct the unit executive or chief judge shall ensure that the matter is appropriately investigated.  What is an appropriate investigation will vary based upon the nature of the report.
2.   The confidentiality of the allegations will be protected to the extent possible and information and records shall be shared on a need-to-know basis.
3.   Employees found to have engaged in wrongful conduct may be subject to disciplinary action.

**3.02 Wrongful Conduct and the Employment Dispute Resolution Process. (Chapter VIII)**

A.   The filing of a wrongful conduct report is not the same as filing an EDR claim and may not entitle the injured employee to corrective action.

B.   Employees injured by wrongful conduct may report the conduct through the wrongful conduct process and also file an EDR claim to seek corrective action.

**SECTION 4 – EMPLOYMENT DISPUTE RESOLUTION PROCESS CASES INVOLVING JUDGES.**

**4.01 Handling Allegations Against Judges**. (**Chapter IX, sec. 3.**)

A.    All EDR claims alleging violations by a judge are to be referred to the circuit judicial council.

B.    All Dispute Resolution Procedures will be followed, but the various stages (counseling, mediation, hearing, and review) will be performed by members of the council or employees designated to act on behalf of the council, which may include the chief judge.

    1.    Each circuit judicial council shall designate one or more EDR Coordinator(s) to counsel employees bringing claims against judges.

    2.    The circuit judicial council should assure that the designated EDR Coordinator is properly trained and that his/her name and phone number are publicized within the circuit.

    3.    Each circuit judicial council shall decide how mediators will be designated to hear judge related EDR claims.

    4.    Each circuit judicial council shall establish a review process to determine whether any issues in a case involving a judge are presently pending as Judicial Misconduct issues or should be raised in that forum.

    5.    Each circuit judicial council shall decide whether EDR cases against judges and motions for dismissal of such cases should be heard by the circuit chief judge or an alternate presiding judicial officer.  Where cases are to be heard by an alternate presiding judicial officer each circuit should designate how that officer will be assigned.

C.    EDR cases involving Judicial Misconduct issues. 28 U.S.C. §§ 351-364 (*Act*).

    1.    Each circuit judicial council or its designee (which may be the chief judge for the circuit) will draft procedures for determining common issues of fact and processing mixed EDR/Misconduct cases.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 54 of 159

2. Any procedure shall be subject to all the requirements of the *Act* as well as the Rules for Judicial Conduct and Judicial Disability Proceedings.

3. To the extent practicable, the dispute resolution procedures are also to be followed.

4. The circuit judicial council or its designee may determine that all or part of an EDR claim should be abated until the Judicial Misconduct complaint is resolved.

## SECTION 5—INFORMAL DISPUTE RESOLUTION PROCESS

**5.01   Counseling.   (Chapter IX, sec. 8.)**

A.   Counseling is:
1.   The initial stage of the informal dispute resolution process under the Model EDR Plan.
2.   Conducted by the EDR Coordinator, except when the EDR Coordinator is disqualified or the dispute involves an alleged violation by a judicial officer.  (Chapter IX, sec. 8C1.)  (*See* "Employment Dispute Resolution Process Cases Involving Judges," *supra* sec. 4.)

B.   Responsibilities of counselor:
1.   Obtain preliminary information from the aggrieved employee including a written statement (request for counseling) about:
   a.   His/her allegations;
   b.   Requested relief;
   c.   Jurisdictional matters.
2.   Advise the aggrieved employee of his/her rights and responsibilities.
3.   Explain procedures available under the EDR Plan.
4.   Provide a copy of the request for counseling to the relevant unit executive and the chief judge of the court.
5.   Obtain pertinent information from the employing office or others as needed to evaluate the matter, consistent with the employee's right to confidentiality. (Chapter IX, sec. 4 and 8C3.)
6.   Make an initial effort to reach a voluntary, mutually satisfactory resolution.
7.   Reduce to writing any resolution achieved.
8.   Prepare a written record of all contacts made by the EDR Coordinator during the counseling phase.
9.    Notify the employee, in writing, of the end of counseling and of his/her right to continue to pursue a claim.

C.   For a detailed discussion of counseling, *see* discussion, *infra* Appendix B-1: Counseling Process.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 56 of 159

**5.02   Mediation.  (Chapter IX, sec. 9.)**

A.   Mediation is:
    1.   The second stage of the informal dispute resolution process under the Model EDR Plan.
    2.   Conducted by a mediator, who is a third-party neutral skilled in enhancing resolution.

B.   Responsibilities of mediator:
    1.   Assure that a request for mediation is received and provided to the EDR Coordinator for distribution to the unit executive and chief judge.
    2.   Facilitate at least one meeting to discuss alternatives for resolving the dispute, attended by the following:
        a.   The aggrieved employee and his/her representative;
        b.   The employing office and the employing office's representative, if any.
    3.   May also meet with each party separately, as appropriate, during the mediation.
    4.   Encourage a voluntary, mutually satisfactory resolution.
    5.   Reduce to writing any resolution achieved.
    6.   Identify and document any issues raised in mediation that were not documented in the request for mediation.

C.   Responsibilities of the EDR Coordinator:
    1.   Provide a copy of the request for mediation to the chief judge and unit executive.
    2.   Provide written notice to the employee, the employee's representative, and the employing office of the conclusion of the mediation period.
    3.   Provide written notice to the employee of his/her right to file a complaint under chapter IX, sec. 10.

D.   For a detailed discussion of mediation, *see* discussion, *infra* Appendix B-3: Mediation Process.

## SECTION 6—DISMISSAL OF CLAIM OR COMPLAINT

**6.01   Who may seek a dismissal? (Chapter IX, sec. 5E.)**

    A.    Any party may seek a dismissal.

    B.    The chief judge or presiding judicial officer may consider dismissal at his/her own initiative.

**6.02   When and how may a dismissal be sought? (Chapter IX, sec. 5E.)**

    A.    A dismissal may be sought by filing a request with the chief judge or presiding judicial official or said official may act on his/her own initiative.

    B.    A dismissal may be sought or initiated at any point during the claim or complaint process, including the counseling and mediation stages.

**6.03   On what basis may a dismissal be sought?**

    A.    Timeliness;

    B.    Frivolousness;

    C.    Claim is unduly repetitive of a previous claim, grievance, or adverse action;

    D.    The claim does not invoke violations of the rights or protections granted under the Model EDR Plan; and

    E.    Failure to state a claim upon which relief may be granted.

## SECTION 7—FILING OF COMPLAINT

**7.01   Requirements for filing a complaint.  (Chapter IX, sec. 10.)**

If an employee intends to file a formal complaint, he/she must:
A.    File not later than 15 days after receiving the EDR Coordinator's written notification that the mediation period has ended.  (Chapter IX, sec. 10A.)
B.    Have participated in at least one mediation session.  (Chapter IX, sec. 9C.)
C.    File the complaint consistent with procedures established by the court.

**7.02   Contents of the complaint.  (Chapter IX, sec. 10.)**

The complaint must:
A.    Be in writing.
B.    Identify complainant, including by title and office, and list the names of all parties and individuals involved in the actions at issue.
C.    Set forth a short and plain statement of:
1.    The Complainant's claim(s) (which may not exceed those listed in the request for mediation); and
2.    The relief or remedy sought for each.
D.    Identify the respondent to the complaint.
1.    The respondent is the employing office which would be responsible for redressing, correcting, or abating the alleged violation(s).
2.    An individual cannot be named as a respondent.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 59 of 159

# SECTION 8—REVIEW OF PLEADINGS

**8.01. Designation of reviewing official by chief judge or designee.
(Chapter IX, sec. 10B1.)**

A. The court's chief judge, or designated judicial officer, reviews the complaint and any other documents submitted with the complaint by complainant, the respondent employing office, and the EDR Coordinator.

B. Where a complaint alleges a judge has violated rights protected by the Model EDR Plan the hearing will be conducted by the chief judge of the circuit or a circuit judicial council designee. (*See* Employment Dispute Resolution Process Cases Involving Judges, *supra* sec. 4.)

**8.02 Complaint and other documents available for review.
(Chapter IX, sec. 10A.)**

A. The complaint file should contain the following information:
   1. Statement that complainant attended at least one mediation session.
   2. Evidence of timely filing at every stage of the informal dispute process:
      a. A written request for counseling filed within the EDR Plan's time limits, which relates to the date of the alleged violation or the date the employee became aware of the alleged violation. (30 days under the Model EDR Plan. Check your court plan for guidance.)
      b. A request for mediation within the EDR Plan's time limits, which relates to the date the employee receives notification of the end of the counseling period. (15 days under the Model EDR Plan. Check your court plan for guidance.)
      c. A complaint filed within the EDR Plan's time limits, which relates to the date the employee receives notification of the end of the mediation period. (15 days

under the Model EDR Plan. Check your court plan for
guidance.)

3. The EDR Coordinator's counseling record, including the date
complainant received the EDR Coordinator's notification of the
end of the counseling period and of the right to request
mediation.

4. The mediator's record, including claims raised in mediation
(The complaint claims are limited to those raised in the request
for mediation).

5. A record of the date complainant received the EDR
Coordinator's notification of the end of the mediation period
and of the right to file a complaint.

6. Complainant's name, title, and office.

7. The names of all parties and individuals involved in the actions
constituting the alleged violation(s).

8. A statement of the claim(s), including:

a. Identification of the alleged acts and omissions which
constitute the claim.

b. Identification of the dates on which each act or omission
occurred.

c. Identification of the specific covered statute(s) and/or
chapters of the EDR Plan allegedly violated.

d. If discrimination (violation of the EDR Plan chapters
based on Title VII, Civil Rights Act; the Rehabilitation
Act; the Americans with Disabilities Act; or the Age
Discrimination in Employment Act) is alleged,
identification of the EEO bases of the complaint: race,
color, religion, national origin, sex, age, disability,
harassment, or retaliation.

9. The relief or remedy sought.

B. Deficiencies in the complaint file:

1. Complaint files, particularly where complainant is *pro se*, may
lack information essential for resolution of the complaint, e.g.,
the specific date on which each alleged violation occurred and
specific descriptions of the violations.

2. Corrections of these deficiencies as soon as possible will
expedite resolution of the complaint.

3. Deficiencies may be remedied by:
    a. Requesting additional information from the EDR Coordinator; and/or
    b. Requesting additional information from complainant; and/or
    c. Deferring any requests for additional information until the investigation/discovery stage of the hearing process; or
    d. Dismissing the complaint at this stage, in whole or part, if it meets any of the criteria discussed in section 6 (*see* discussion, *supra* 6.03) or involves issues not raised in the request for mediation.

## 8.03  Delineation of claims

A. The reviewing official, based on review of the complaint and pleadings,  delineates the claims:
    1. To determine whether grounds for dismissal exist;
    2. To identify deficiencies in the complaint file, which may be remedied by investigation/discovery; and
    3. To identify the scope of the evidence to be presented at hearing.
B. A claim includes:
    1. The issues or incidents which allegedly violated the law and/or the court EDR Plan; and
    2. If discrimination is alleged, the bases of the alleged discrimination.  (*See* discussion, *supra* sec. 8.02A8d.).

## 8.04  Grounds for dismissal. (Chapter IX, sec. 5E.)

To ensure efficient use of judicial resources and ensure the integrity of the EDR process, the reviewing official, after reviewing the pleadings prior to hearing, should dismiss, in whole or in part, any complaint which satisfies one or more of the following grounds for dismissal.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 62 of 159

A. Frivolous complaint

      A frivolous complaint:

1. Presents no justiciable question. It is, on its face, so devoid of merit that no prospect exists for success; or

2. Is filed solely to harass or delay; or

3. Abuses or misuses the process, for ends other than those for which it was intended; or

4. Raises issues previously settled or otherwise resolved.

B. Unduly repetitive complaint

1. An unduly repetitive complaint relies on the same or substantially similar facts to those raised in a previous complaint or which previously were resolved in another claim, grievance, or adverse action, in which complainant was a party.

2. Under the doctrine of *res judicata*, complaints are unduly repetitive which:

    a. Recite the same facts as a previous complaint, but allege an additional cause of action;

    b. Identify the same personnel action as a previous complaint, but identify different involved parties;

    c. Raise the same or substantially similar claims.

3. Complaints are not repetitive or identical merely because they are related.

C. Failure to state a claim upon which relief may be granted

1. To state a claim for relief, complainant must:

    a. Be aggrieved;

    b. Allege a violation of one of the laws referenced in the court EDR Plan;[4] and

    c. Request a form of relief that can be granted under the court EDR Plan.

---

[4] For example, a complaint alleging discrimination must allege a deprivation of one of the substantive protections provided by the anti-discrimination statutes (Title VII of the Civil Rights Act, Rehabilitation Act, Americans with Disabilities Act, and/or Age Discrimination in Employment Act), or one or more of the following bases: race, color, religion, national origin, sex, age, disability, or retaliation.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 63 of 159

2. To be aggrieved, complainant must:
   a. Be an applicant for employment, an employee, or a former employee of the court. (*See* discussion of exclusions from definition of "employee", *supra* sec. 1.07A2.),
   b. Allege a tangible personal harm or loss. Complainant does not allege tangible harm or loss when he/she relies on:
      (1) A mere proposal to take a personnel action or a threat to take such action;
      (2) Harm or loss suffered by another person; or
      (3) A situation where no relief may be granted. Therefore, the claim must be dismissed (*see* E. below).

D. Timeliness
   1. The reviewing official should consider dismissal of the complaint when complainant has not satisfied established time limits. (*See* "Significant deadlines in the Model EDR Plan," *supra* sec. 1.09.)
   2. The chief judge of the court, or other presiding judicial officer, may, for good cause shown, extend any of the deadlines under Chapter VIII of the Model EDR Plan. (Chapter IX, sec. 5D.)
   3. Dismissal is not appropriate when:
      a. Complainant was not notified of the time limits.
      b. The EDR Coordinator or the employing office explicitly or implicitly extended the deadlines.
      c. Complainant relied to his/her detriment on erroneous advice given by the EDR Coordinator or employing office about time limits.
      d. Complainant was prevented by circumstances beyond his/her control from timely filing a complaint.

E.     Claims do not invoke rights on protections under the Model EDR Plan.  To determine whether dismissal on this ground is appropriate, inquire as to whether:

    1.    The complainant has alleged a violation of any of the nine laws

    2.    The conduct, if true, would constitute an unlawful employment practice when considered under the referenced statute(s) allegedly violated under the EDR Plan; and

    3.    Any relief that can be granted.

F.     Claims not advanced in mediation

    1.    The Model EDR Plan requires an aggrieved employee to file a written request for mediation within 15 days of receiving notification of the end of the counseling period.

    2.    The mediation request must state the claims presented. (Chapter IX, sec. 9A.)

    3.    If the complaint raises claims not previously presented at mediation:

        a.    The claim should be dismissed.

        b.    However, designated judicial official may find the employee's new claim is substantially similar or related to claims raised in the request for mediation.  In that case, the reviewing official may consider the new claim.  This is particularly advisable where the new claim arose subsequent to the filing of the request for mediation and consideration would result in judicial economy.  (*See* "Consolidation of complaints," *infra* sec. 8.06.)

    4.    Under the Model EDR Plan, a complainant's failure to participate in mediation precludes further processing of the claim. (Chapter IX, sec. 10A.)

G.        Mootness

    1.    The Model EDR Plan is silent regarding dismissal on the basis of mootness.

    2.    A complaint is moot if it does not involve a live controversy or dispute, such that there is no ongoing harm or injury.

    3.    The standard for determining mootness generally is whether:

        a.    There is no reasonable expectation the alleged violation will recur; and

        b.    Interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

    4.    Mootness may occur at any stage of complaint processing.

        a.    For example, departure of complainant from the employing office may render a complaint moot if:

            (1)    The complaint alleges harassment, and the only relief requested is cessation of the harassment.

            (2)    The complaint alleges improper denial of training or other actions for which there is no ongoing h . arm.

        b.    In contrast, a complainant's departure may not render the allegations moot if they involve such actions as:

            (1)    Constructive discharge or termination;

            (2)    Failure to promote; or

            (3)    Loss of pay.

## 8.05  Dismissal of a claim or complaint.  (Chapter IX, sec. 5E.)

A.    The Model EDR Plan is silent as to what procedures must be followed in dismissing a claim or complaint.  Courts may establish procedures to fill this gap.  Prior to dismissing a claim or complaint, the following actions are advisable:

    1.    Notice to the claimant/complainant that a request for dismissal has been filed with a copy of the request.

2. Where the chief judge or presiding judicial officer has decided to act *sua sponte*, notice to the parties of the proposed reason for the dismissal.

B. Notice of proposed dismissal to complainant should include:
   1. Reason(s) for the proposed dismissal (where a motion or request for dismissal has been filed, a copy of the motion). (*See* "Grounds for dismissal," *supra* sec. 8.04.)
   2. Opportunity to respond to the proposed dismissal.
   3. Deadline for responding to the notice of the proposed dismissal.

C. Upon receipt of any response from complainant, designated judicial officer determines whether the response:
   1. Is timely.
   2. Establishes good cause for not dismissing the complaint.

D. Designated judicial officer should refer to court procedures to determine whether:
   1. He/she should notify the employing office of the proposed dismissal.
   2. He/she should require the complainant to serve copies of the complainant's response on the employing office.

E. Written dismissal of all or part of the complaint:
   1. Is appropriate where complainant fails to establish good cause for not dismissing.
   2. Must identify the reasons for dismissal.
   3. Is designated judicial officer's final decision as to those portions of the complaint dismissed.
   4. Should be served on all parties.

## 8.06   Consolidation of complaints

A. The Model EDR Plan is silent regarding consolidation of complaints.

B. Consolidation promotes judicial efficiency and economy, where:
   1. One complainant files two or more complaints (whether involving similar or different issues and whether involving the same or different employing offices); or

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 67 of 159

2. Two or more complainants file complaints consisting of substantially the same claims or allegations, or relating to the same matter.

C. The chief judge or presiding judicial officer is responsible for ordering consolidation of complaints.

**8.07 Amendment of complaints**

A. The Model EDR Plan is silent regarding amendment of complaints.

B. Amendment promotes judicial economy and efficiency when complainant:
   1. Provides additional evidence to support an existing claim;
   2. Raises a new claim or allegation that is like or related to the claims raised in the pending complaints. However, where the new claim or allegation is not contained in the request for mediation, an issue may exist as to whether it was raised in a timely manner.

C. The chief judge or presiding judicial officer is responsible for ordering amendment of complaints.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 68 of 159

## SECTION 9—DESIGNATION OF HEARING OFFICER
## ALLEGED VIOLATION BY AN EMPLOYEE

**9.01  Designation of the hearing  officer.  (Chapter IX, sec. 10.)**

If the chief judge or designated judicial officer who has reviewed the complaint and pleadings under section 8 (see "Review of Pleadings," *supra* sec. 8) does not dismiss the complaint, he/she will:

A.   Act as hearing officer;

B.   Hold a hearing on the complaint, unless he/she determines there is no issue of material fact;

C.   Provide for discovery and investigation as necessary (*see* sec II); and

D.   Issue a written decision, within the parameters of 9.02.

**9.02  Limits of chief judge or presiding judicial officer authority over EDR matters.**

Official Judicial Conference statement of Judiciary policy limitations of judges in the EDR process are:

A.   That EDR proceedings are strictly administrative and are not "cases and controversies" under Article III of the Constitution;

B.   That judges presiding in EDR matters are functioning in an administrative rather than a judicial capacity;

C.   That judges' decisions in EDR matters must be in conformance with all statutes and regulations that apply to the Judiciary and that judges in the EDR context have no authority to declare such statutes or regulations unconstitutional or invalid; and

D.   That judges presiding in EDR matters may not compel the participation of or impose remedies upon agencies or entities other than the employing office which is the respondent in such  matters.

**9.03    Designation of designated judicial officer where alleged violator is a judge.  (Chapter IX, sec. 3.)**

Where a judge is the alleged violator, the hearing will be conducted by the chief circuit judge or another judicial officer as provided for by the circuit judicial council.

**9.04    Designation of the hearing officer where chief judge is disqualified. (Chapter IX, sec. 7.)**

Where a chief judge is disqualified under Chapter IX, sec. 7, or is unavailable to serve, a presiding judicial officer must be designated under procedures established by the court or circuit judicial council.

Case 1:20-cv-00066-WGY    Document 78-5    Filed 10/02/20    Page 70 of 159

## SECTION 10—DESIGNATION OF AUTHORITY ALLEGED VIOLATION BY A JUDGE

**10.01  Designation of the authority where alleged violator is a judge.**

Where a judge is the alleged violator, all claims procedures shall be performed by the circuit council, either by members of the council directly or by persons designated to act on its behalf, which may include the chief judge of the circuit.

If a judge becomes the subject of both an EDR claim and a judicial misconduct complaint under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364, the circuit judicial council or its designee, which may include the chief judge of the circuit, will craft a procedure for determining any common issues of fact and processing both complaints, subject to all requirements of the Act, the Rules for Judicial-Conduct and Judicial-Disability Proceedings, and, as practicable, the EDR Plan.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 71 of 159

## SECTION 11—INVESTIGATION/DISCOVERY

**11.01  Choosing an investigation or discovery method.  (Chapter IX, sec. 10B.)**

A.  Prior to the commencement of the hearing, designated judicial officer[5] may provide for such investigation or discovery as necessary.  At all times designated judicial officer oversees the development of the record.  Options include:
   1.  Proceeding with the hearing on the complaint record.
   2.  Asking the EDR Coordinator and/or the parties to produce any necessary documentation to designated judicial officer prior to the hearing.
   3.  Investigation by the EDR Coordinator, contractor, or some other person assigned by a designated judicial officer.
   4.  Discovery.

B.  Designated judicial officer should consider the relative informality of the EDR process when selecting a method for developing a hearing record.

C.  Proceeding with the hearing on the complaint record may be preferable where:
   1.  Avoidance of delay is imperative.
   2.  Relevant and material evidence is primarily testimonial in nature.
   3.  The issues are finite and limited and the necessary documentation is already available.

D.  Asking the EDR Coordinator and/or the parties to produce any necessary documentation prior to the hearing may be preferable where:
   1.  Avoidance of delay is imperative.
   2.  Relevant and material evidence is documentary in nature.
   3.  The issues are finite and limited.

---

[5] All references in this Chapter to the "hearing officer,"refer to the role of the "presiding judicial officer" during the hearing stage of the Model EDR Plan.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 72 of 159

E.    Investigation may be preferable where:
　　1.    One or both parties is/are *pro se*, and may be unfamiliar with discovery procedures.
　　2.    The complaint and pleadings do not adequately describe the facts, issues, and persons involved.
　　3.    The issues are few and relatively simple.
　　4.    The existing record is not extensive.
　　5.    A determination at the outset as to what information is relevant and material is not possible because of the limitations of the record.
F.    Discovery may be preferable where:
　　1.    Both parties are represented by counsel.
　　2.    The complaint involves multiple or complex issues.
　　3.    It is desirable to limit additional evidence to that which is material and relevant.

## 11.02  Sources of funding for investigation or discovery

A.    Investigation
　　Designated judicial officer may order an investigation.
　　1.    The EDR Coordinator may conduct the investigation; or
　　2.    The EDR Coordinator may contract with an outside investigator, but should first request guidance on contracting procedures from the Procurement Management Division of the Administrative Office.
B.    Sources of funding for conducting investigation or discovery must be provided from the court budget.

## 11.03  Investigation.  (Chapter IX, sec. 10 B2.)

A.    The Model EDR Plan authorizes investigation, but does not discuss specific investigation procedures.
B.    After ordering an investigation and receiving the investigation report, designated judicial officer reviews it for legal and factual sufficiency.

C.  If the record of investigation is inadequate or incomplete, designated judicial officer should order:
1.  Supplementation of the record of investigation; or
2.  Production by the parties of such additional evidence prior to hearing; or
3.  Production by the parties of such additional evidence at hearing.

## 11.04  Discovery.  (Chapter IX, sec. 10B2.)

A.  The Model EDR Plan authorizes discovery, but does not discuss specific discovery procedures.  Designated judicial officer may use standard discovery procedures, at his/her discretion.
B.  Discovery evidence may be developed using a variety of methods, including:
1.  Informal, unrecorded meetings and conference calls,
2.  Interrogatories,
3.  Depositions,
4.  Stipulations,
5.  Requests for admissions, and
6.  Requests for production of documents.
C.  In the interests of judicial economy and efficiency, informal discovery methods are preferable in the EDR process.

## 11.05  Relevant documents

Examples of documents a presiding judicial officer might expect to review following investigation or discovery for various types of alleged violations of the Model EDR Plan are included at Appendix C.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 74 of 159

# SECTION 12—HEARINGS UNDER THE MODEL EDR PLAN

## 12.01  Introduction to hearing procedures.  (Chapter IX, sec. 10B.)

A.    Under the Model EDR Plan, the hearing is the third stage in the  EDR process, if counseling and mediation are unsuccessful.
  1.    It continues the fact-finding process, allowing the parties to:
    a.    Explain and supplement the record.
    b.    Resolve a dispute.
  2.    A hearing is not a formal judicial hearing or mini-trial.
  3.    One or both parties may be *pro se*.

B.    Rules of evidence
  1.    The Federal Rules of Civil Procedure (FRCP) and the Federal Rules of Evidence (FRE):
    a.    Are not dispositive; and
    b.    Should be used only as guidance.
  2.    Hearsay evidence
    a.    Although the plan does not specifically address hearsay evidence, designated judicial officer may wish to consider admitting it only where it:
      (1)    Is reliable and relevant; or
      (2)    Falls within the FRE exclusions to the hearsay rule.
    b.    Hearsay evidence should not be given as much weight as direct testimony under oath.

C.    A hearing allows the parties to:
  1.    Examine and cross-examine witnesses.
  2.    Introduce documentary evidence as deemed appropriate by the presiding judicial officer.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 75 of 159

**12.02  Hearing role and responsibilities of presiding judicial officer. (Chapter IX, sec. 10.[6])**

Designated judicial officer:

A.    Regulates the conduct of the hearing.

B.    Supplements the record as he/she deems necessary, by ordering:

    1.    Production of additional documents by the EDR Coordinator and/or the parties; and/or

    2.    Investigation; and/or

    3.    Discovery.

C.    Reviews the complete record, including the complaint file and any supplemental documentation.

D.    Determines the time, place, and manner of conducting the hearing. (Chapter IX, sec. 10B2.)

    1.    Begins the hearing no later than 60 days after the complaint is filed, under the Model EDR Plan. (Chapter IX, sec. 10B2a.)

    2.    Provides written notice of the hearing, or requests the EDR Coordinator to do so to (Chapter IX, sec. 10B2b):

        a.    The Complainant;

        b.    The head of the employing office against which the complaint was filed;

        c.    The person who allegedly violated the Model EDR Plan; and

        d.    Others he/she deems appropriate.

E.    Dismisses the complaint summarily prior to hearing when:

    1.    No material facts are in dispute; or

    2.    Other grounds exist for summary dismissal (e.g., no EDR basis for claim).

---

[6]All references in this Chapter to the "hearing officer,"refer to the role of the "presiding judicial officer" during the hearing stage of the Model EDR Plan.

F.  When circumstances warrant, postpones the beginning of the hearing, stays or holds the hearing in abeyance after it has begun, or dismisses without prejudice.

G.  Administers oaths or requests the court reporter to do so.

H.  Helps the parties clarify the legal issues, eliminating extraneous issues.

I.  Encourages and assists the parties to stipulate to the undisputed facts.

J.  Encourages and assists the parties to resolve the dispute as early as possible.

K.  Limits witnesses, testimony, and documentary exhibits to exclude irrelevant and repetitious evidence.

L.  Limits the hearings to disputed issues.

M.  Issues protective orders to protect confidential or privileged information.

N.  Excludes from the hearing:
    1.  Witnesses not currently testifying;
    2.  Anyone who has no legitimate official reason to participate; and
    3.  Anyone who is disruptive or contumacious.

O.  Imposes appropriate sanctions on parties, witnesses, or other court officials or employees who fail to comply with orders or requests.

P.  Issues an oral bench decision, later reduced to writing, as appropriate, when the facts and legal issues are few and simple.

Q.  As stated in section 9.02 of this Benchbook, official Judicial Conference statements of Judiciary policy limitations of judges in the EDR process are:
    •   That EDR proceedings are strictly administrative and are not "cases and controversies" under Article III of the Constitution;
    •   That judges presiding in EDR matters are functioning in an administrative rather than a judicial capacity;
    •   That judges' decisions in EDR matters must be in conformance with all statutes and regulations that apply to the Judiciary and that judges in the EDR context have no authority to declare such statutes or regulations unconstitutional or invalid; and

- That judges presiding in EDR matters may not compel the participation of or impose remedies upon agencies or entities other than the employing office which is the respondent in such matters.

R. ALLEGED VIOLATION BY AN EMPLOYEE
Issues a written final decision, within the parameters of 12.02Q, within 30 days of the conclusion of hearing, under the Model EDR Plan:
1. On the merits of the complaint or on summary dismissal;
2. Based on the oral bench decision, if any.

S. ALLEGED VIOLATION BY A JUDGE
If a judge becomes the subject of both an EDR claim and a judicial misconduct complaint under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364, the EDR claim is abated pending the entry of the final order that concludes the judicial misconduct complaint. The judge is then subject to all requirements of the Act, the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

T. Orders appropriate resolution of the dispute and relief, including calculation of back pay and attorney's fees if authorized under the Back Pay Act.

U. Retains jurisdiction until the resolution of the dispute and relief ordered are fully implemented.

## 12.03 Hearing role and responsibilities of EDR Coordinator and other court officials

A. The EDR Coordinator:
1. Produces, prior to hearing, any additional documentation ordered by designated judicial officer or sought by the parties.
2. At the request of designated judicial officer, provides written notice of the hearing date, time, and place, *see* "Scheduling and notification of hearing," *infra* sec. 12.05.

3. Arranges for a court reporter to produce the required verbatim record of the hearing. (Chapter IX, sec. 10B2d.) The EDR Coordinator may need to contract with an outside court reporter. (*See* 28 U.S.C. sec.753 and *Guide to Judicial Policies*, Vol. 6.)

4. Coordinates any relief with the court's office of personnel or any other office, as appropriate, if designated judicial officer rules in complainant's favor and orders relief for complainant. For example, the EDR Coordinator could assist:

a. Personnel, which would implement a promotion; and

b. The court's chief financial officer, who would implement a back pay award under the Back Pay Act.

5. Maintains official hearing files. (Chapter IX, sec. 6B.)

6. Makes available to the public hard copies of final decisions, in accordance with procedures established by the judicial council of the circuit. (Chapter IX, sec. 13.)

B. Court officials and employees other than the chief judge or designee:

1. Act as witnesses, depending upon the facts of each case.

2. Act as representatives for:

a. Complainant, for whom the Model EDR Plan expressly authorizes representation (Chapter IX, sec. 5B), if:

(1) The proposed representative is available and agrees to such representation; and

(2) It will not:

(a) Unduly interfere with his/her court duties; or

(b) Constitute a conflict of interest as determined by the representative's appointing officer.

b. Respondent employing office, as authorized by the individual court plan or appointed by designated judicial officer. It is not advisable for the alleged violator to serve as representative for the employing office.

3.      Act as court reporter.  However, court reporters who are
         employees of the court are obliged only to take the record in
         court, not in administrative proceedings.  (Chapter IX, sec.
         10C2d.) (*See* 28 U.S.C. sec. 753 and *Guide to Judicial Policies*,
         Vol. 6.)
4.      Implement any resolution of the dispute or relief ordered by
         designated judicial officer.
5.      Implement any sanctions ordered by designated judicial officer
         against court officials or employees.

## 12.04  Time limits under the Model EDR Plan and individual court plans

Designated judicial officer:
A.      Begins the hearing no later than 60 days after the complaint is filed,
         under the Model EDR Plan.  (Chapter IX, sec. 10B2a.)
B.      Has no time certain for concluding the hearing, under the Model EDR
         Plan.
C.      Issues a final written decision no later than 30 days after conclusion of
         the hearing, under the Model EDR Plan.  (Chapter IX, sec.10B2g.)
D.      May extend any of these deadlines for good cause.
         (Chapter IX, sec. 5D.)
E.      Conducts the hearing in accordance with the individual court plan,
         which may differ from the Model EDR Plan.[7]

--------

[7] For example, the EDR Plan for the Sixth Circuit, Eastern District of Tennessee, requires the hearing to start no later than 10 days after the complaint is filed, and a written decision to be issued no later than 15 days after conclusion of the hearing.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 80 of 159

**12.05  Scheduling and notification of hearing.  (Chapter IX, sec. 10B2a &b.)**

Designated judicial officer provides written notice, or requests the EDR Coordinator to provide written notice, of the hearing date, time, and place to:
A.     Complainant;
B.     The head of the employing office against which the complaint was filed;
C.     The person who allegedly violated the Model EDR Plan, and
D.     Others designated judicial officer deems appropriate.

**12.06  Resolution efforts**

A.     The goal of the EDR procedures is to resolve complaints at the earliest possible stage.
     1.     The counseling stage is the first opportunity to resolve. (Chapter IX, sec. 9.)
     2.     The mediation stage is the second opportunity to resolve. (Chapter IX, sec. 7.)
     3.     Prior to, or during, the hearing is the last opportunity to resolve.
B.     At the hearing stage, designated judicial officer may, during the parties' good-faith efforts at resolution:
     1.     Postpone the beginning of the hearing;
     2.     Stay or hold the hearing in abeyance after it has begun; or
     3.     Dismiss the complaint without prejudice where the delay will be lengthy or indefinite.
C.     Role of designated judicial officer in resolution:
     1.     Clarify the facts and legal issues in dispute.
     2.     Enhance likelihood of resolution by:
          a.     Suggesting possible resolutions if the parties cannot or will not do so.
          b.     Drawing on the advantages of designated judicial officer's prestige, position, and perceived objectivity in working to convince the parties to resolve the complaint.
          c.     Ensuring that resolution and any remedies are authorized by law.
     3.     Ensure the parties understand the terms of any resolution.
     4.     Retain jurisdiction over a complaint until the appropriate court officials or employees fully implement the resolution and any relief ordered.

**12.07   Postponement of hearing**

A.   Before granting a postponement of the beginning of the hearing, a stay after the hearing has begun, or a dismissal without prejudice, it is appropriate for the chief judge or presiding judicial officer to require any party requesting the delay to:
1.   Provide written justification for the request.
2.   Where possible, obtain the opposing party's written agreement to the delay.

B.   Justification for request for postponement of the hearing:
1.   May be by letter or statement, rather than by motion.
2.   Should include:
a.   The reason(s) for the request (e.g., extended illness of a party or representative; temporary unavailability of necessary documentation or a witness);
b.   Any documentation necessary to support the proffered reason for delay (for example, affidavits and/or medical documentation); and
c.   A proposed date certain for beginning/resuming the hearing or for refiling of the complaint.

C.   If the opposing party objects to the delay, it is appropriate for the chief judge or presiding judicial officer to require the opposing party to submit the objection in writing.

D.   Designated judicial officer may stay or hold the hearing in abeyance after it has begun.

E.   The chief judge or presiding judicial officer should not find good cause shown when the proffered justification reflects:
1.   Poor planning;
2.   Lack of foresight; or
3.   That, had the requesting party taken expeditious action, they would have avoided the need for postponement.

F.   Designated judicial officer's decision to grant or deny delay should:
1.   Be issued within a reasonable time after the request.
2.   Be in writing.

3. Contain the reasons for granting or denying the request for delay.
4. If the delay is granted:
   a. Establish a new hearing date; or
   b. Schedule a status conference to discuss a new hearing date.

## 12.08  Interlocutory appeals

A. The Model EDR Plan is silent regarding interlocutory appeals.
B. Interlocutory appeals under the Model EDR Plan should be discouraged because:
   1. They are inconsistent both with the purpose and process of dispute resolution.  They:
      a. Delay what is intended to be an expedited process.
      b. Complicate what is intended to be an informal, simple process that neither replicates a judicial proceeding nor requires representation by attorneys.
   2. The EDR Plan's time limit for issuance of a written final decision, 30 days after conclusion of the hearing (Chapter IX, sec. 10B2g), allows issues typically raised on interlocutory appeal to be resolved expeditiously at the review stage.
   3. Anyone aggrieved by the decision, or by a summary dismissal of the claim, may petition for review of designated judicial officer's final decision under procedures established by the judicial council of the circuit.  (Chapter IX, sec. 11.)
C. Presiding judicial officers may avoid certifying interlocutory appeals by:
   1. Clearly identifying motions, objections, or any other possible bases for interlocutory appeal, as they are made during hearing.
   2. Explicitly reiterating these bases or issues in the written final decision.

**12.09** *Ex parte* communications

A. The Model EDR Plan is silent regarding *ex parte* communications.
B. Designated judicial officer should apply the standard rules for *ex parte* communications; i.e., there is no *ex parte* communication unless the court is conducting an in camera hearing or considering an *ex parte* application relevant to an issue in the proceeding.

**12.10 Introduction of additional evidence**. **(Chapter IX, sec. 10B2.**)

A. The Model EDR Plan explicitly authorizes:
   1. Designated judicial officer to order necessary investigation and/or discovery.
   2. Complainant to present evidence on his/her behalf.
   3. The respondent employing office to present evidence on its behalf.
B. The purpose of the hearing is to:
   1. Remedy gaps/omissions in the complaint record.
   2. Continue and complete development of the factual record.
   3. Resolve disputed facts and legal issues.
   4. Ultimately resolve the complaint.
C. Criteria for allowing introduction of additional evidence at hearing Designated judicial officer should allow introduction only of evidence that is:
   1. Not unduly repetitious of evidence already contained in the complaint record.
   2. Relevant and material to the disputed legal and factual issues in the complaint.
D. Failure to introduce necessary and relevant evidence at hearing Designated judicial officer may:
   1. Issue a written order instructing the offending party to produce such evidence, and warn that party of possible sanctions.
   2. Where the party ordered to produce the evidence fails to do so, and offers no good cause for the failure:
      a. Draw an adverse inference that the requested information would have reflected unfavorably on the party refusing to provide it;
      b. Consider the issues to which the requested information pertains to be established in favor of the opposing party;

  c.  Exclude other evidence proffered by the party failing to produce the requested information;

  d.  Enter a decision fully or partially in favor of the opposing party; or

  e.  Take other appropriate action.

## 12.11 Motions

A.  The Model EDR Plan is silent regarding the use of motions.

B.  Disadvantages of requiring the filing of formal motions.

  1.  Hearings under the Model EDR Plan are a continuation of fact-finding on a complaint.

  2.  The FRE and FRCP merely provide guidance in these hearings.

  3.  The dispute resolution process, including the hearing stage, is intended to be informal.

  4.  Parties may use procedural formalities such as motions to delay and unnecessarily complicate the hearing stage.

  5.  Parties may be *pro se* and therefore unfamiliar with the process of filing and responding to motions.

C.  Designated judicial officer may require or permit parties to file motions.

D.  Alternatives to motions.

  1.  Less formal processes include use of:

    a.  Letters

    b.  Narrative statements.

  2.  When less formal processes are used in lieu of motions, it is appropriate for designated judicial officer to:

    a.  Require the party proffering such letters or narrative statements to state clearly the desired request, and the reasons for the request.

    b.  Give the opposing party a reasonable opportunity to respond, by a time certain, such as five to ten days, depending upon the complexity of the request.

    c.  Issue a written order disposing of the request within a reasonable time after receiving:

      (1)  Any objection to the request; or

      (2)  An unopposed request.

**12.12  Representation at hearing**

A.  Complainant
   1.  Under the Model EDR Plan, the complainant has a right to representation of his/her choice, provided (Chapter IX, sec. 5B):
      a.  That person is available and consents to be the representative; and
      b.  If a court employee, the representation will not:
         (1)  Unduly interfere with his/her court duties; or
         (2)  Constitute a conflict of interest, as determined by the representative's appointing officer.
   2.  Complainant may select a private representative, including an attorney; however, complainant is entitled to attorney's fees only where authorized by the Back Pay Act, 5 U.S.C. sec. 5596. (Chapter IX, sec. 12B6.)

B.  Respondent employing officer and individual alleged violator
   1.  The Model EDR Plan is silent regarding representation for the respondent employing office or for an alleged violator, although the employing officer may contract with an attorney to represent the employing office.
   2.  Courts seeking representation for the employing office might explore available means, if any, for securing representation through contact with the Fair Employment Practices Office or the Office of General Counsel of the Administrative Office of the U.S. Courts.
   3.  The Model EDR Plan states that only the employing office, not individuals, can be named as respondents. (Chapter IX,  sec. 10A.)

C.    *Pro se* parties
    1.    Complainant and/or the respondent employing office may appear *pro se* at the hearing.
    2.    When a party appears *pro se*, and is unable to present his/her case effectively, designated judicial officer may decide that basic fairness and due process require him/her to provide assistance in:
        a.    Identifying the legal and factual issues;
        b.    Examining and cross-examining witnesses;
        c.    Introducing documentary evidence; and
        d.    Raising appropriate procedural objections and objections to documentary and testimonial evidence.

## 12.13  Reasonable time for case preparation

A.    The Model EDR Plan:
    1.    Authorizes reasonable official time for the person invoking the EDR process to prepare his/her case.  (Chapter IX, sec. 5C.)
        a.    "Reasonable" may be defined as whatever is appropriate, under the particular circumstances of the complaint, in order to allow a complete presentation of the relevant information associated with the complaint and a response to requests for information.
        b.    The actual number of hours to which the aggrieved employee is entitled will vary, depending on the nature and complexity of the complaint and considering the court's need to have its employees available to perform their normal duties on a regular basis.
        c.    "Reasonable" is generally defined in terms of hours, not in terms of days, weeks, or months.
    2.    Does not address case preparation time for court officials or employees who act as representatives.
B.    Where an employee has a representative who is a court employee, reasonable official time for the representative's case preparation is appropriate.  Employees of the court representing the employing office or acting in third party roles established by the Model or court EDR Plan are normally considered to be acting in an official capacity.

**12.14  Obtaining witnesses.  (Chapter IX, sec. 10B2c.)**

A.   The Model EDR Plan explicitly authorizes the complainant to (Chapter IX, sec. 10B2c):
   1.   Present evidence on his/her own behalf, including, by inference, testimonial evidence.
   2.   Cross-examine adverse witnesses.
B.   The Model EDR Plan is silent regarding:
   1.   The issuance of subpoenas or use of other means to compel witnesses to testify.
   2.   Granting official time to court officials or employees for witness preparation and testimony.   (The Model EDR Plan expressly authorizes the complainant to use a reasonable amount of official time to prepare his/her case, so long as it does not interfere with his/her court duties. Chapter IX, sec. 5C).
C.   Production of witnesses
   1.   Both complainant and the respondent employing office may call witnesses, so long as the testimony will be limited to witnesses having:
       a.   Direct knowledge relating to the complaint; and
       b.   Testimony that is relevant and not unduly repetitious.
   2.   There is no requirement that the parties have the same number of witnesses.
D.   Preparation of witnesses
   1.   To ensure orderly and effective presentation of the issues in dispute, designated judicial officer may authorize reasonable official time for both parties to prepare witnesses, if such time does not unduly interfere with the witnesses' court duties.
   2.   If the employing office of the witness objects, designated judicial officer may:
       a.   Order that office to cooperate in the EDR process; or
       b.   Establish good cause for its failure to cooperate based on business necessity. (*See* "Cooperation of witnesses and representatives," *infra* sec 11.15.)

## 12.15  Cooperation of witnesses and representatives

A.  Cooperation of witnesses
1.  The Model EDR Plan does not explicitly address the cooperation of witnesses and representatives.
2.  All court employees have an affirmative duty to cooperate at all stages in the EDR process, including the hearing.
B.  Failure of witnesses or representatives to cooperate
1.  Where good cause is shown for the non-appearance of a witness (e.g., a witness or representative no longer is employed by the court or is ill), designated judicial officer may:
a.  Substitute another witness or representative; or
b.  Postpone or stay the hearing, or dismiss without prejudice.  (*See* "Postponement of hearing," *supra* sec. 11.07.)
2.  Where no good cause is shown for the non-appearance of a witness who is a court employee, it is appropriate for designated judicial officer to remind him/her of the obligation, under the Model EDR Plan, to assist, as necessary and appropriate, in the employment dispute resolution process where:
a.  The proffer of testimony shows the witness has material and relevant testimony regarding the complaint; and
b.  The information cannot be obtained through any other witness or documentation.
3.  Where the non-appearance is deliberate and the result of a failure to cooperate by one of the parties, designated judicial officer also may impose sanctions directly relating to disposition of the complaint, as appropriate.  Such sanctions may include, but are not limited to:
a.  Drawing an adverse inference that the requested information would have reflected unfavorably on the non-cooperating party;
b.  Considering the issues pertaining to the non-appearance as established in favor of the opposing party;
c.  Excluding other evidence proffered by the non-cooperating party;

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 89 of 159

       d.     Entering a decision fully or partially in favor of the opposing party;

       e.     Excluding a representative from future hearings, and/or reporting the attorney representative to the appropriate licensing authority; and/or

       f.     Any other appropriate action.

## 12.16  Pre-hearing conferences

    A.    The Model EDR Plan is silent regarding pre-hearing conferences.

    B.    Designated judicial officer may rely on the standard procedures for pre-hearing conferences.

## 12.17  Who may attend the hearing

    A.    General attendance

      1.    The Model EDR Plan:

         a.     Does not require that the hearing be limited to the parties, their representatives, and the witness testifying at a particular time.

         b.     Does not address the question of who may attend the hearing, but does provide that designated judicial officer may control the time, place and manner of the hearing.

         c.     States only that final decisions under the Model EDR Plan are to be made available to the public under procedures established by the judicial council of the circuit. (Chapter IX, sec. 13.)

      2.    The Privacy Act (PA), 5 U.S.C. sec. 552a, and the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552, do not apply to the federal courts.

         a.     The federal courts do not meet the statutory definition of a covered agency.  5 U.S.C. sec. 552(f), 552a(a)(1).

         b.     These statutes may be used as guidance, as it is the policy of the Administrative Office to follow their intent. Redesigned *Guide to Judiciary Policy*, Vol. 12, Chapter 4.

B. It is appropriate for designated judicial officer to limit attendance at the hearing in light of the following considerations:
   1. The hearing is an extension of the investigation/discovery process, which is not public;
   2. Complaints often involve confidential, personal, and highly sensitive matters;
   3. Complainant's inherent right to privacy, as balanced against any minimal public need to attend the proceeding;
   4. Attendance by outsiders may inhibit witness candor;
   5. Witness testimony should not be influenced by the testimony of other witnesses; and
   6. The public ultimately will have access to the final decisions. (Chapter IX, sec. 13.)

## 12.18  Hearing rooms

A. The Model EDR Plan does not address the issue of hearing rooms.
B. The Model EDR Plan encourages informality during the entire EDR process.
C. It is appropriate for designated judicial officer to consider the following alternative types of hearing rooms for the reasons discussed below:
   1. Judge's chambers.
      a. Designated judicial officer's chambers are an appropriate alternative if they can accommodate comfortably designated judicial officer, court reporter, possibly a law clerk, all parties, representatives, and a witness. Designated judicial officer's presence at the conference table with the participants may reduce barriers between him/her and the participants in the hearing.
      b. All participants are likely to perceive the chambers as neutral territory.
   2. Conference room (the same considerations apply here as with judge's chambers).

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 91 of 159

3. Courtroom.
    a. A courtroom is the most formal of the alternatives, in part because of its physical configuration, including:
        (1) The judge's bench, which is behind a partition and elevated above the courtroom;
        (2) The separate witness stand; and
        (3) The separate counsels' tables.
    b. If the officer sits on the bench, this may intimidate the parties and witnesses and create a barrier between designated judicial officer and the participants at the hearing.
    c. All participants are likely to perceive a courtroom as neutral territory.
4. Office of a court official.
    a. This may be appropriate if the court official is not involved in the dispute, i.e., is not an official in the employing office, and if the office can accommodate comfortably designated judicial officer, court reporter, possibly a law clerk, all parties, representatives, and a witness.
    b. An office of a court official involved in the proceeding is not likely to be perceived as neutral territory by all participants in the hearing.

## 12.19  Special needs at hearing

A. The Model EDR Plan does not explicitly address the issue of meeting special needs, nor does it provide separate funding authority for meeting such needs.
B. Applicability of the Rehabilitation Act and Americans with Disabilities Act:
    1. The Model EDR Plan incorporates the protections provided by both the Rehabilitation Act and the Americans with Disabilities Act as amended.  *(See* Chapter II.)
    2. Both Acts require reasonable accommodation for physical disabilities in certain situations.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 92 of 159

C.  Providing assistance for the physically disabled:

1.  If complainant, a representative, or a witness is physically disabled, designated judicial officer may ask the EDR Coordinator to arrange for reasonable accommodation to ensure that person has a meaningful opportunity to participate in the hearing.

2.  A disabled person or his/her representative must:

    a.  Request such reasonable accommodation; and

    b.  Request it sufficiently in advance of the time needed.

3.  Such reasonable accommodation may include, but is not limited to, arranging for:

    a.  A hearing room, bathroom, and eating facilities which are readily accessible and usable by those with physical disabilities;

    b.  A signer or interpreter for the hearing impaired;

    c.  Reasonable access for the visually impaired to any evidence presented visually at hearing.

D.  Foreign languages

1.  Although court employees generally are presumed to speak English, there may be varying degrees of proficiency; non-court employees who may occasionally participate in hearings may not be proficient in English.

2.  Where lack of an interpreter might significantly interfere with a party's comprehension of the proceedings, designated judicial officer may decide to order use of an interpreter.

3.  It is appropriate for designated judicial officer to ensure that:

    a.  The record contains sufficient evidence to establish that the interpreter is qualified; and

    b.  The translation is a true translation by administering, or having the court reporter administer, the following oath or affirmation:

        Do you solemnly swear (or affirm) that you will provide a true and accurate translation of the testimony given by this (these) witness(es), so help you God (or so help you).

4. Designated judicial officer may wish to ask the EDR Coordinator or the Contracting Division of the Administrative Office for assistance in:
   a. Procuring reasonable physical accommodation; or
   b. Obtaining a qualified interpreter.

## 12.20 Examination of witnesses

A. Complainant's examination of witnesses (including examination by his/her representative, if any)
   1. The Model EDR Plan (Chapter IX, sec. 10B2c) explicitly authorizes complainant to:
      a. Present evidence on his/her own behalf; and
      b. Examine and cross-examine witnesses.
   2. Where the employing office or its representative objects to the testimony of a witness:
      a. Complainant or his representative must make a proffer on the substance of the testimony; and
      b. It is appropriate for designated judicial officer to rule immediately on whether the witness may testify.
   3. It is appropriate for designated judicial officer to limit complainant's and his/her witnesses' testimony to that which is relevant, material, and not unduly repetitious.
B. The employing office's examination of witnesses
   1. The Model EDR Plan (Chapter IX, sec. 10B2c) explicitly authorizes the employing office to:
      a. Present evidence on its own behalf; and
      b. Examine and cross-examine witnesses.[8]

---

[8] The person alleged to have violated rights under the Model EDR Plan has no explicit right under the Plan to examine or cross-examine witnesses, but merely is entitled to have notice of the hearing.  Chapter IX, sec.10b2 b & c.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 94 of 159

2. Where complainant or his/her representative objects to the testimony of a witness:
   a. The employing office or representative must make a proffer on the substance of the testimony; and
   b. Designated judicial officer should rule immediately on whether the witness may testify.
3. Designated judicial officer should limit the employing office's witness testimony to that which is relevant, material, and not unduly repetitious.

C. Designated judicial officer's examination of witnesses
1. The Model EDR Plan does not address this issue.
2. Designated judicial officer may wish to examine witnesses when:
   a. One or both of the parties is *pro se*;
   b. Factual, material or legal issues necessary to disposition of the complaint have not been adequately developed by the parties' witnesses or documentary evidence;
   c. Such examination would shorten the hearing or increase the possibility of resolving the dispute; or
   d. It is deemed appropriate based on other circumstances.

D. Alternative means of testimony
1. Alternative means of testimony are appropriate when credibility is not a significant issue and essential witnesses are unavailable indefinitely or for a lengthy period of time, for good cause shown.
2. Alternative means of testimony include:
   a. Deposition,
   b. Video Conference,
   c. Telephone testimony, or
   d. Affidavit, if the opposing party does not object to the inability to cross-examine.

**12.21  The record.  (Chapter IX, sec. 10B2d.)**

A. The Model EDR Plan requires a verbatim record of the hearing, which is to be the sole official record.  It does not address the mode of taking the record.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 95 of 159

B. The Model EDR Plan does not address whether complainant should receive a copy of the transcript or electronic recording and, if so, whether he/she should pay. The court may:

    1. Supply such transcripts or electronic recordings;

    2. Require complainant to pay; or

    3. Waive the costs where complainant demonstrates, by statement or affidavit, an inability to pay.

C. Contents of the record

The record will consist of all:

    1. Pleadings;

    2. Motions or written documents used in lieu of motions;

    3. Non-evidentiary submissions;

    4. Admitted evidence;

    5. Orders and decisions; and

    6. Any hearing transcripts or electronic recordings.

D. Closing the record

    1. Generally, designated judicial officer orders the record closed at the end of the hearing.

    2. Designated judicial officer may extend the close of record if he/she permits the parties to file post-hearing briefs.

    3. Upon closure of the record, it is appropriate for designated judicial officer to refuse to accept new evidence or argument, except upon a showing that:

        a. New and material evidence has become available;

        b. Despite due diligence, it was not readily available prior to the close of record.

E. Reopening the record

Designated judicial officer may reopen the record *sua sponte* where:

    1. A party timely has raised material new issues or new evidence, and the opposing party requests an opportunity to respond.

    2. Designated judicial officer believes the interests of justice may be served.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 96 of 159

## 12.22  Privacy considerations

A. The Model EDR Plan does not specifically address confidentiality at the hearing stage, including who may attend the hearing.  Such matters are left to the discretion of designated judicial officer. (*See* "Who may attend the hearing," *supra* sec. 11.17B.).

B. Complaints often involve matters in which complainant and other court officials and employees have a significant privacy interest to be balanced against the interests of the public.

C. Considerations applicable to preserving the confidentiality of complaint files and related documents:

   1. It is appropriate for designated judicial officer to determine who may attend the hearing:

      a. Maintain, insofar as possible, the confidentiality of these records, which often contain personal and highly sensitive information.  (Chapter IX, sec. 8C3.)

      b. Use the Freedom of Information Act (FOIA) and the Privacy Act (PA) as guidance for releasing/withholding information.  For example, FOIA permits agencies, when responding to FOIA requests, to withhold personal and confidential information, such as personnel, medical, and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  (*See* 5 U.S.C.  sec. 552(b)(6).)  FOIA  does not apply by statute to the federal Judiciary.

   2. It is appropriate for designated judicial officer to refuse to release information relating to a complaint, the complaint record, or the hearing unless the requester:

      a. Demonstrates a legitimate, official need to know (for example, the EDR Coordinator who is implementing the relief ordered by designated judicial officer has a legitimate need to know) (Chapter IX, sec. 8C3;)

      b. Agrees to maintain the confidentiality of the information released; and

      c. Agrees to make no further disclosure without designated judicial officer's consent.

**12.23  Applicable precedent**

A.  Model EDR Plan
    The Model EDR Plan requires designated judicial officer, in reaching
    his/her decision, to use as guidance (Chapter IX, sec. 10B2e):
    1.  Judicial decisions;
    2.  Administrative decisions under the laws related to the Model
        EDR Plan.  (Chapters II through VII;) and
    3.  Decisions of judicial councils of the appropriate circuit in
        reviewing EDR matters brought to the judicial council.
        (Chapter IX, sec. 10B2e.)
B.  Judicial decisions and administrative decisions of executive agencies
    and decisions under the laws related to the Model EDR Plan,
C.  Final decisions of the courts in EDR matters
    The Model EDR Plan requires that final decisions under Chapters II
    through VIII of this Plan, whether at the local court or circuit judicial
    council level, are to be made available to the public under procedures
    established by the judicial council of the circuit.  (Chapter IX, sec. 13.)

**12.24  Final decision.  (Chapter IX, sec. 10B2f-h.)**

A.  Issuance of a written final decision

    ALLEGED VIOLATION BY AN EMPLOYEE
    1.  Designated judicial officer must issue a written final decision on
        the merits of the complaint or on a summary dismissal of the
        complaint, no later than 30 days after the end of the hearing,
        under the Model EDR Plan.  (Chapter IX, sec. 10B2g.)
    2.  It is appropriate that the final decision:
        a.  Contain findings of fact and conclusions of law on all the
            issues in the complaint;
        b.  Order any appropriate resolution of the complaint, or relief,
            if complainant has established, by a preponderance of the
            evidence, that a substantive right protected by the Model
            EDR Plan has been violated.  (Chapter IX, sec. 10B2f;)
        c.  Retain jurisdiction over the complaint until court officials
            fully implement the resolution and any relief ordered.

(Chapter IX, sec. 10B2h.)

B.  Bench decision
1.  The Model Plan is silent regarding issuance of an oral bench decision.
2.  If designated judicial officer determines an oral bench decision is appropriate, he/she must reduce that decision to writing and serve it on all parties.  (Chapter IX, sec. 10B2g-h.)

C.  ALLEGED VIOLATION BY A JUDGE
An EDR claim abated pending the entry of the final order that concludes the judicial misconduct complaint, is dismissed if such allegations of judicial misconduct are dismissed.  As to any allegations that the order does not dismiss, the EDR claim will be reinstated and decided by the circuit judicial council.  If the EDR claim includes allegations separate and divisible from those in the judicial misconduct complaint, the separate allegations will be treated as a district EDR claim that will not be abated.

## 12.25  Remedies under the Model EDR Plan.  (Chapter IX, sec. 12.)

A.  Authority to award remedies.  (Chapter IX, sec.12A.)
Designated judicial officer orders remedies authorized by the court's EDR Plan where he/she finds complainant has established, by a preponderance of the evidence, that a substantive right protected by the Plan has been violated.  (Chapter IX, sec. 10B2f.)

B.  Designated judicial officer:
1.  May order any necessary and appropriate remedy; and
2.  Must tailor the remedy as closely as possible to the specific violation involved.  Chapter IX, sec. 12A.  For discussion of specific remedies, *see* discussion,  *infra* sec. 13.

## 12.26  Sanctions under the Judicial Conduct and Disability Act, 28 U.S. C. §§ 351-364.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 99 of 159

## SECTION 13—REVIEW OF FINAL DECISION

**13.01  Petition for review of final decision or summary dismissal.
        (Chapter IX, sec. 11.)**

A.   A party or individual aggrieved by a presiding judicial officer's final decision or summary dismissal may petition for review of that decision.

B.   The petition must be filed in accordance with procedures established by the judicial council of the circuit.

C.   The Model EDR Plan specifies no time limit for:
     1.   Filing a petition for review; or
     2.   Issuing a decision on the petition for review
     3.   Circuit councils are encouraged to establish such limits.

D.   The review must be conducted by a judicial officer(s).

**13.02  Conduct of the review**

ALLEGED VIOLATION BY AN EMPLOYEE.  (Chapter IX, sec. 10B1.)

A.   A judicial council officer conducts the review based on the hearing record.

B.   The judicial officer reviewing the final decision affirms the decision if it is supported by substantial evidence.

ALLEGED VIOLATION BY A JUDGE.  (Chapter IX, sec.11.)
A party or individual aggrieved by a final decision of the chief judge or presiding judicial officer, or by a summary dismissal of the complaint, may petition for review of that decision under procedures established by the judicial council of the circuit.  Any review will be conducted by a judicial officer(s), based on the record created by the hearing officer, and shall be affirmed if supported by substantial evidence.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 100 of 159

**13.03  Remedies upon review.  (Chapter IX, sec. 12A.)**

The judicial council officer reviewing the final decision:
A.      May order any necessary and appropriate remedies; and
B.      Must tailor the remedy as closely as possible to the specific violation involved.  For discussion of specific remedies, *see* discussion, *infra* sec. 13.

**13.04  No external judicial review**

The Model EDR Plan does not authorize external judicial review of final decisions or decisions after review.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 101 of 159

# SECTION 14—REMEDIES

**14.01 Authority to order remedies**.  (**Chapter IX, sec. 12A.**)

    A.      Remedies are available at both the hearing and review stages.

    B.      Designated judicial officer, or judicial council officer reviewing the hearing officer's final decision, may order a remedy tailored to the particular facts of the case to correct the violation.  He/she may order:

        1.     A remedy to correct a past violation; or

        2.     A prospective remedy to ensure compliance with rights protected by the EDR Plan.

    C.      Designated judicial officers and judicial council officers who hear EDR cases sit as hearing officers not in their capacity as judges.
Judges presiding in EDR matters are functioning in an administrative rather than a judicial capacity; judges' decisions in EDR matters must be in conformance with all statutes and regulations that apply to the Judiciary and that judges in the EDR context have no authority to declare such statutes or regulations unconstitutional or invalid; judges presiding in EDR matters may not compel the participation of or impose remedies upon agencies or entities other than the employing office which is the respondent in such matters. In this context, their capacity is limited to directing actions by the circuit, and they have no authority to require parties outside a circuit court to take actions (e.g., an order can direct a unit executive to request GSA to make a building modification to accommodate an employee with a disability, but the order cannot direct GSA to make the modification).

**14.02  Available remedies.  (Chapter IX, sec. 12B.)**

    Available remedies include, but are not limited to:

    A.      Placement of an employee in a position previously denied;

    B.      Placement in a comparable alternative position;

    C.      Reinstatement to a position from which previously removed;

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 102 of 159

D.  Prospective promotion to a position;

E.  Priority consideration for a future promotion or position;

F.  Back pay and associated benefits, including attorney's fees, where the statutory criteria of the Back Pay Act, 5 U.S.C. sec. 5596, are satisfied;

G.  Records modification and/or expungement;

H.  "Equitable" relief such as temporary stays of adverse actions;

I.  Granting of family and medical leave; and

J.  Accommodation of disabilities through the purchase of specialized equipment or the restructuring of duties and work hours.

**14.03  Remedies which are not legally available.  (Chapter IX, sec. 12C.)**

A.  Payment of attorney's fees (except as authorized by the Back Pay Act).

B.  Compensatory damages.

C.  Punitive damages.

**14.04  Failure to implement remedies ordered by a presiding judicial officer or judicial council officer reviewing the final decision.**

A.  Retention of jurisdiction
Designated judicial officer, where review is not sought, or the judicial council officer reviewing the final decision retains jurisdiction over the complaint until the employing office fully implements the resolution and any relief.

B.  Failure to implement resolution or relief
Where any court official or employee fails to implement the ordered resolution or relief, designated judicial officer or the judicial council officer reviewing the final decision either indirectly, through the respondent employing office, or directly, may appropriately:

1.  Order full implementation of the resolution or relief; and

2.  Impose sanctions for failure to do so.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 103 of 159

## SECTION 15—PUBLICATION OF FINAL DECISIONS

**15.01  Publication of final decisions.  (Chapter IX, sec. 13.)**

    A.    The Model EDR Plan requires that final decisions under the EDR process be made available to the public under procedures established by the judicial council of the circuit.  (Chapter IX, sec. 13.)

    B.    It may be appropriate that the final decisions be redacted to protect the privacy of anyone involved in the matter.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 104 of 159

**MODEL EMPLOYMENT DISPUTE RESOLUTION PLAN**
CHAPTER I - GENERAL PROVISIONS

**§ 1    Preamble**

This Plan shall be known as the Federal Judiciary Model Employment Dispute Resolution Plan ("Model EDR Plan"). It was adopted by the Judicial Conference of the United States in order to provide rights and protections to employees of the United States courts that are comparable to those provided to legislative branch employees under the Congressional Accountability Act of 1995.

The Plan supersedes all previous versions of the Model Employment Dispute Resolution Plan and Appendix I ("Discrimination and Complaint Procedures") of the Model Equal Employment Opportunity Plan ("Model EEO Plan"), except for Section VI of Appendix I ("Annual Report") imposing requirements on the courts. Claims arising under Chapters II through VII of this Plan, or under Sections I through VII of the Judiciary's Model EEO Plan, shall be treated in accordance with the procedures set forth in Chapter IX of this Plan. The duties of the court's EEO Coordinator will be assumed by the Employment Dispute Resolution Coordinator (established in Section 6 of Chapter IX of this Plan), except that the dispute resolution duties assigned to the EEO Coordinator under the Model EEO Plan will be replaced by the dispute resolution procedures set forth in Chapter IX of this Plan.

This Plan is to be implemented in the same manner as the Model EEO Plan. Each court shall adopt and implement a plan based thereon. Any modification of this Plan by a court must first be approved by the judicial council of its circuit. Courts and employing offices shall post their plans on their respective internal and external websites. A copy of each plan and any subsequent modifications shall be filed with the Administrative Office. Each court shall annually submit a report on the implementation of its plan to the Administrative Office for inclusion in the Director's Annual Report to the Judicial Conference.

Policies adopted by individual courts pertaining to adverse action or general grievance proceedings that do not invoke the rights and protections afforded under the Model EDR Plan are not affected by the Plan. Further, local policies relating to rights enumerated under the Plan that are not inconsistent with the rights and procedures established herein will not be affected by the Plan.
The Model EDR Plan is not intended to duplicate the protections provided for the resolution

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 105 of 159

of complaints of judicial officer misconduct or disability under 28 U.S.C. §§ 351, et seq. and otherwise is intended to be the exclusive remedy of the employee relating to rights enumerated under the Plan.

## § 2    Scope of coverage

This Plan applies to all Article III judges and other judicial officers of the United States courts of appeals, district courts, bankruptcy courts, Court of Federal Claims, as well as to judges of any court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States. The Plan also applies to all employees of the courts of appeals, district courts, bankruptcy courts, Court of Federal Claims and Court of International Trade, or of a judge of any court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States. Also included are judges' chambers staffs, court unit heads and their staffs, circuit executives and their staffs, federal public defenders and their staffs, and bankruptcy administrators and their staffs.

## § 3    Definitions

For purposes of this Plan:

**A.** The term "claim" means the filing of a request for counseling as set forth in Chapter IX, which may be further pursued by the filing of a request for mediation and a request for hearing.

**B.** The term "employee" includes all individuals listed in Section 2 of this Chapter, as well as applicants for employment and former employees, except as provided below. The term "employee" does not include interns or externs providing gratuitous service, applicants for bankruptcy judge or magistrate judge positions, private attorneys who apply to represent indigent defendants under the Criminal Justice Act, criminal defense investigators not employed by federal public defenders, volunteer counselors or mediators, or other individuals who are not employees of an "employing office" as that term is defined below.

**C.** The term "employing office" includes all offices of the United States courts of appeals, district courts, and bankruptcy courts, including the offices of circuit executives, district court executives, federal public defenders, clerks of court, chief probation officers, chief pretrial services officers, staff attorneys, chief preargument attorneys, circuit librarians, bankruptcy administrators, and any such offices that might be created in the future. The court is the employing office of a judicial officer's chambers staff.

**D.** The term "judicial officer" means a judge appointed under Article III of the Constitution,

EDR Bench Book for Judges (March 2011)                                    70

a United States bankruptcy judge, a United States magistrate judge, a judge on the Court of Federal Claims, or a judge of any court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States.

E.  The term "court" refers to the appropriate court (appeals, district or bankruptcy) in which is located the employing office which would be responsible for redressing, correcting or abating the violation alleged in the complaint. In the case of disputes involving federal public defenders, the term "court" refers to the appropriate court of appeals.

## CHAPTER II - EQUAL EMPLOYMENT OPPORTUNITY AND ANTI-DISCRIMINATION RIGHTS

§ 1  **General -** Discrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited.  Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited.  All of the above constitute "wrongful conduct."  The rights and protections of Sections I through VII of the Judiciary's Model Equal Employment Opportunity Plan shall also apply to employees.

§ 2  **Definition -** The term "disability" means:

A.  a physical or mental impairment that substantially limits one or more of the major life activities of an employee,

B.  a record of such an impairment, or

C.  being regarded as having such an impairment. *See 42 U.S.C. § 12102(2).*

§ 3  **Special provision for probation and pretrial services officers -** The age discrimination provision of Section I of this Chapter shall not apply to the initial hiring or mandatory separation of probation and pretrial services officers and officer assistants.  *See* Report of the Proceedings of the Judicial Conference of the United States (March 1991), pp. 16-17. Additionally, probation and pretrial services officers must meet all fitness for duty standards, and compliance with such standards does not, in and of itself, constitute discrimination on the basis of disability.

## CHAPTER III - FAMILY AND MEDICAL LEAVE RIGHTS

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 107 of 159

**§ 1**     **General -** Title II of the Family and Medical Leave Act of 1993, 5 U.S.C. §§ 6381 et. seq., applies to court employees in the manner prescribed in Volume 12, Chapter 9, Sec. 920.20.35 of the *Guide to Judiciary Policies and Procedures*.


## CHAPTER IV - WORKER ADJUSTMENT
## AND RETRAINING NOTIFICATION RIGHTS


**§ 1**     **General -** No "employing office closing" or "mass layoff" (as defined in Section 2 of this Chapter) may occur until the end of a 60-day period after the employing office serves written notice of such prospective closing or layoff to employees who will be affected. This provision shall not apply to an employing office closing or mass layoff which results from the absence of appropriated funds.


**§ 2**     **Definitions**

    **A.**     The term "employing office closing" means the permanent or temporary shutdown of a single site of employment if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees.

    **B.**     The term "mass layoff" means a reduction in force which:

        **1.**     is not the result of an employing office closing; and
        **2.**     results in an employment loss at the single site of employment during any 30 day period for

            **a.**     (1)     at least 33 percent of the employees (excluding any part-time employees); and
                    (2)     at least 50 employees (excluding any part-time employees); or
            **b.**     at least 500 employees (excluding any part-time employees). *See 29 U.S.C. § 2101.*


## CHAPTER V - EMPLOYMENT AND REEMPLOYMENT RIGHTS
## OF MEMBERS OF THE UNIFORMED SERVICES

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 108 of 159

**§ 1    General -** An employing office shall not discriminate against an eligible employee or deny an eligible employee reemployment rights or benefits under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 et seq.


## CHAPTER VI - OCCUPATIONAL SAFETY
## AND HEALTH PROTECTIONS


**§ 1    General -** Each employing office shall provide to its employees a place of employment which is free from recognized hazards that cause or are likely to cause death or serious physical harm to employees.  Claims that seek a remedy that is exclusively within the jurisdiction of the General Services Administration ("GSA") or the United States Postal Service ("USPS") to provide are not cognizable under this Plan; such requests should be filed directly with GSA or the USPS as appropriate.

**§ 2    Court program requirements -** The court shall implement a program to achieve the protections set forth in Section 1 of this Chapter.


## CHAPTER VII - POLYGRAPH TESTS


**§ 1    General –** Unless required for access to classified information, or otherwise required by law, no employee may be required to take a polygraph test.


## CHAPTER VIII – REPORTS OF WRONGFUL CONDUCT

A report of wrongful conduct is not the same as initiating or filing a claim under this Plan; thus, employees who wish to file an EDR claim relating to any alleged wrongful conduct as defined in Chapter II, §1 must follow the procedures set forth in Chapter IX of this Plan.


Judges and employees are encouraged to report wrongful conduct to the court's EDR Coordinator, the chief judge, unit executive, human resources manager, or their supervisor as soon as possible, before it becomes severe or pervasive.  Retaliation against any employee making a report of wrongful conduct

is prohibited. The person receiving such a report has the responsibility to notify the EDR Coordinator as soon as possible.

The EDR Coordinator shall promptly inform the chief judge and unit executive of any report. The chief judge and/or unit executive shall ensure that the allegations in the report are appropriately investigated, either by the human resources manager or other person.

All individuals involved in the investigation shall protect the confidentiality of the allegations of wrongful conduct to the extent possible. Information and records about the allegations shall be shared on a need-to-know basis.

Employees found by the chief judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan, may be subject to disciplinary action.

## CHAPTER IX - DISPUTE RESOLUTION PROCEDURES

**§ 1    General procedure for consideration of alleged violations -** An employee who claims a denial of the rights granted under Chapters II through VII of this Plan shall seek resolution of such claims through the procedures of this Chapter. Generally, the process consists of:

    **A.**    counseling and mediation;

    **B.**    hearing before the chief judge of the court (or a designated judicial officer) in which the alleged violation arises; and

    **C.**    review of the hearing decision under procedures established by the judicial council of the circuit.

**§ 2    Alleged Violation by Employee -** Before invoking a request for counseling an employee (to the extent feasible) is encouraged to bring his or her concerns to his or her supervisor or unit executive, unless the supervisor or unit executive is the alleged violator. In such a situation, the court or employing office should specify alternative neutral points of contact for the initial inquiry. An employee alleging that any of the rights granted under the Model EEO Plan or this Model EDR Plan have been violated, and who seeks relief under this Plan, must file a request for counseling with their court's EDR Coordinator in accordance with Section 8 of this Chapter.

**§ 3    Alleged Violation by Judge -** Any employee alleging that a judge violated any rights granted under the Model EEO Plan or this Model EDR Plan may file an EDR claim in accordance with this Plan. In such an instance, however, all the claims procedures of this Chapter shall be

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 110 of 159

performed by the circuit council, either by members of the council directly or by persons designated to act on its behalf, which may include the chief judge of the circuit. If a judge becomes the subject of both an EDR claim and a judicial misconduct complaint under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364, the circuit judicial council or its designee, which may include the chief judge of the circuit, will craft a procedure for determining any common issues of fact and processing both complaints, subject to all requirements of the Act, the Rules for Judicial-Conduct and Judicial-Disability Proceedings, and, as practicable, the EDR Plan. In so doing, the council or its designee, who may include the chief judge of the circuit, may determine that all or part of the EDR claim must be abated until action is taken on the judicial misconduct complaint.

**§ 4    Confidentiality** - The court or employing office shall protect the confidentiality of allegations filed under this Plan to the extent possible. However, information about allegations filed under this Plan shall be shared on a need-to-know basis. Records relating to violations under this Plan shall be kept confidential on the same basis.

**§ 5    General provisions and protections**

    **A.    Prohibition against retaliation -** Claimants under this Plan have the right to be free from retaliation because of filing a claim pursuant to this Plan. Likewise, any person who participates in the filing or processing of a claim, such as an employment dispute resolution coordinator, mediator, witness, representative, or co-worker, is also entitled to freedom from retaliation.

    **B.    Right to representation -** Every individual invoking the dispute resolution procedures of this Plan has the right to be represented by a person of his or her choice if such person is available and consents to be a representative. A court employee may accept the responsibilities of representation if it will not unduly interfere with his or her court duties or constitute a conflict of interest, as determined by the representative's appointing officer.

    **C.    Case preparation -** To the extent feasible, every individual invoking the dispute resolution procedures of this Plan may use a reasonable amount of official time to prepare his or her case, so long as it does not unduly interfere with the performance of his or her court duties.

    **D.    Extensions of time -** The chief judge of the court, or other presiding judicial officer, may extend any of the deadlines set forth in this Chapter for good cause.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 111 of 159

**E.** **Dismissal of claim -** On his or her own initiative or at the request of any party, the chief judge or presiding judicial officer may at any time in the proceedings, dismiss a claim on the grounds that it does not invoke violations of the rights or protections granted under the Model EEO Plan or this Model EDR Plan, is untimely, is unduly repetitive of a previous claim, adverse action, or grievance, is frivolous, or fails to state a claim upon which relief may be granted.

**F.** **Records -** At the conclusion of formal and informal proceedings under this Plan, all papers, files, and reports will be filed with the court's Employment Dispute Resolution Coordinator ("EDR Coordinator").  No papers, files, or reports relating to a dispute will be filed in any employee's personnel folder, except as necessary to implement an official personnel action.

**§ 6** **Designation and duties of employment dispute resolution coordinator -** Each court shall designate a person to serve as the EDR Coordinator.  Courts may designate more than one EDR Coordinator.  The duties of such persons shall include the following:

**A.** to provide information to the court and employees regarding the rights and protections afforded under this Plan;

**B.** to coordinate and organize the procedures and establish and maintain official files of the court pertaining to claims and other matters initiated and processed under the court's employment dispute resolution plan;

**C.** to coordinate the counseling of individuals in the initial stages of the claims process, in accordance with Section 8 of this Chapter; and

**D.** to collect, analyze, and consolidate statistical data and other information pertaining to the court's employment dispute resolution process.

**§ 7** **General disqualification provision -** Each court and judicial council shall make available procedures through which a party may seek the disqualification of a judicial officer, employee or other person involved in a dispute under this Chapter.

**§ 8** **Counseling**

**A.** **Initiating a proceeding; formal request for counseling -** An employee who believes

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 112 of 159

that his or her rights under Chapters II through VII of this Plan have been violated must first request counseling.

**B.**    **Form and manner of requests -** Requests for counseling:

    **1.**    are to be submitted to the court's EDR Coordinator;

    **2.**    must be made in writing and contain all the violations asserted by the claimant; and

    **3.**    must be made within 30 days of the alleged violation or within 30 days of the time the employee becomes aware of the alleged violation.

**C.**    **Procedures**

    **1.**    **Who may serve as counselor -** The counseling shall be conducted by the court's EDR Coordinator, unless the EDR Coordinator is disqualified from serving as counselor under Section 7 of this Chapter, or is otherwise unavailable.  In such instances, the chief judge of the court shall designate another qualified individual to perform the counseling function.  The EDR Coordinator shall promptly provide a copy of the request for counseling to the unit executive and the chief judge of the court.

    **2.**    **Purposes of counseling -** The purposes of the counseling shall be to discuss the employee's concerns and elicit information regarding the matter which the employee believes constitutes a violation; to advise the employee of his or her rights and responsibilities and the procedures of the court applicable to the employment dispute resolution process; to evaluate the matter; and to assist the employee in achieving an early resolution of the matter, if possible.

    **3.**    **Confidentiality -** Unless waived by the employee, the court or employing office shall protect the confidentiality of allegations filed under this Plan to the extent possible.  However, information about allegations filed under this Plan shall be shared on a need-to-know basis.  Records relating to violations under this Plan shall be kept confidential on the same basis.

    **4.**    **Form of settlement -** The EDR Coordinator shall reduce to writing any settlement achieved during the counseling process and secure the signatures of the employee, his or her representative, if any, and the member of the employing

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 113 of 159

office who is authorized to enter into settlement on the employing office's behalf.

**D.** **Duration of counseling period -** The period for counseling shall be 30 days (or a shorter period if counseling is concluded at an earlier date), beginning on the date that the request for counseling is received by the EDR Coordinator.

**E.** **Conclusion of the counseling period and notice -** The EDR Coordinator shall notify the employee in writing of the end of the counseling period. As part of the notice, the EDR Coordinator shall inform the employee of the right and obligation, should the employee choose to pursue his or her claim, to file with the EDR Coordinator a request for mediation in accordance with Section 9 of this Chapter.

## § 9    Mediation

**A.** **Initiation -** Within 15 days after receipt by the employee of the notice of the conclusion of the counseling period, the employee may file with the EDR Coordinator a request for mediation. The request must be made in writing and must state the claim(s) presented. The EDR Coordinator shall promptly provide a copy of the request for mediation to the unit executive and the chief judge of the court. Failure to pursue mediation will preclude further processing of the employee's claim under any other provisions of this Chapter.

**B.** **Procedures**

    **1.** **Designation of mediator -** As soon as possible after receiving the request for mediation, the chief judge or EDR Coordinator shall designate a mediator and provide written notice of such designation.

    **2.** **Who may serve as mediator -** Any person with the skills to assist in resolving disputes, except the court's EDR Coordinator, may serve as a mediator under this Plan.

    **3.** **Purpose of mediation -** The mediator shall meet separately and/or jointly with the employee and his or her representative, if any, and the employing office to discuss alternatives for resolving a dispute, including any and all possibilities of reaching a voluntary, mutually satisfactory resolution.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 114 of 159

**4. Confidentiality -** Any person or party involved in the mediation process shall not disclose, in whole or in part, any information or records obtained through, or prepared specifically for, the mediation process, except as necessary to consult with the parties or their representatives, and then only with notice to all parties.

**5. Form of settlement -** The mediator shall reduce to writing any settlement achieved during the mediation process and secure the signature of the employee, his or her representative, if any, and the member of the employing office who is authorized to enter into settlement on the employing office's behalf.

**C. Duration of mediation period -** The mediation period shall be 30 days (or a shorter period if mediation is concluded at an earlier date), beginning on the date the request for mediation is received. The employee is required to attend at least one mediation session. Thereafter, he or she may proceed to file a request for hearing.

**D. Conclusion of mediation period and notice -** If, at the end of the mediation period, the parties have not resolved the matter that forms the basis of the request for mediation, the EDR Coordinator shall provide the employee, the employee's representative, if any, and the employing office with written notice that the mediation period has concluded. The notice shall also inform the employee of his or her right to file a complaint under Section 10 of this Chapter.

## § 10   Complaint and hearing

**A. Complaint -** Not later than 15 days after receiving notice of the end of the mediation period, an employee may file a complaint under procedures established by the court. The complaint shall be in writing, shall identify the complainant and all involved parties and individuals, and shall set forth a short and plain statement of the complainant's claim and the relief or remedy being sought. Claims that were not presented in §9(A) may not be pursued. The respondent shall be the employing office which would be responsible for redressing, correcting or abating the violation(s) alleged in the complaint. No individual shall be named as a respondent in the complaint.

**B. Hearing procedures**

**1. Presiding judicial officer -** If the chief judge or presiding judicial officer does

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 115 of 159

not dismiss the complaint, the chief judge or presiding judicial officer shall hold a hearing on the merits of the complaint unless he or she determines that no material factual dispute exists.

**2.** **Specific provisions -** Designated judicial officer may provide for such discovery and investigation as is necessary. In general, designated judicial officer shall determine the time, place, and manner of conducting the hearing. However, the following specific provisions shall apply to hearings conducted under this Section:

**a**. the hearing shall be commenced no later than 60 days after the filing of the complaint;

**b.** the complainant and the head of the office against which the complaint has been filed must receive written notice of the hearing; such notice shall also be provided to the individual alleged to have violated rights protected by this Plan;

**c.** at the hearing, the complainant will have the right to representation, to present evidence on his or her behalf, and to cross-examine adverse witnesses; the employing office will have the right to present evidence on its behalf and to cross-examine adverse witnesses;

**d.** a verbatim record of the hearing must be kept and shall be the sole official record of the proceeding;

**e.** in reaching his or her decision, the chief judge or presiding judicial officer shall be guided by judicial and administrative decisions under the laws related to Chapters II through VII of this Plan and by decisions of the judicial council of the appropriate circuit under Section 11 of this Chapter;

**f.** remedies may be provided in accordance with Section 12 of this Chapter where the hearing officer finds that the complainant has established by a preponderance of the evidence that a substantive right protected by this Plan has been violated;

**g.**      the final decision of the chief judge or presiding judicial officer must be issued in writing not later than 30 days after the conclusion of the hearing; and

**h.**      all parties, or any aggrieved individual, shall have the right to written notice of any action taken as a result of a hearing.

**§ 11**    **Review of decision -** A party or individual aggrieved by a final decision of the chief judge or presiding judicial officer, or by a summary dismissal of the complaint, may petition for review of that decision under procedures established by the judicial council of the circuit. Any review will be conducted by a judicial officer(s), based on the record created by the hearing officer, and shall be affirmed if supported by substantial evidence.

**§ 12**    **Remedies**

**A.**      Where judicial officers acting pursuant to section 10 or 11 of this Plan find that a substantive right protected by this Plan has been violated, they may order a necessary and appropriate remedy. A remedy may be directed at correcting a past violation, prospectively ensuring compliance with the rights protected by this Plan, or both. A remedy shall be tailored as closely as possible to the specific violation involved.

**B.**      Remedies which may be provided to successful complainants under this Plan include, but are not limited to:

**1.**      placement of an employee in a position previously denied;

**2.**      placement in a comparable alternative position;

**3.**      reinstatement to a position from which the employee was previously removed;

**4.**      prospective promotion to a position;

**5.**      priority consideration for a future promotion or position;

**6.**      back pay and associated benefits, including attorney's fees, where the statutory criteria of the Back Pay Act, 5 U.S.C. § 5596, are satisfied;

**7.**      records modification and/or expungement;

Case 1:20-cv-00066-WGY    Document 78-5    Filed 10/02/20    Page 117 of 159

**8.** "equitable" relief, such as temporary stays of adverse actions;

**9.** granting of family and medical leave; and

**10.** accommodation of disabilities through the purchase of specialized equipment or the restructuring of duties and work hours, or other appropriate means.

**C.** Remedies which are *not* legally available include:

**1.** payment of attorney's fees (except as authorized under the Back Pay Act);

**2.** compensatory damages; and

**3.** punitive damages.

**§ 13** **Record of final decisions** - Final decisions under this Plan shall be made available to the public in accordance with procedures established by the judicial council of the circuit.

**COUNSELING PROCESS**

A.  An aggrieved employee's request for counseling initiates the informal dispute resolution process.   (Chapter IX, sec. 8A and B).

    1.  The aggrieved employee  must:

        a)  Submit a written request for counseling to the court's EDR Coordinator; which

        b)  Describes the claim(s) presented.

    2.  Under the Model EDR Plan, the employee must submit the request within 30 days of the alleged violation, or within 30 days of the time he/she becomes aware of the alleged violation.

B.  Exceptions to counseling process time frames.  The timeliness  requirement for the counseling contact may be waived for good cause shown, such as:

    1.  The aggrieved employee was not notified of the time limits.

    2.  The aggrieved employee did not reasonably suspect the alleged violation or discrimination within the time limitation.

    3.  Despite due diligence, the aggrieved employee was prevented from timely requesting counseling by circumstances beyond his or her control.

    4.  Other equitable reasons, e.g., an allegation that a violation is continuing, as in a denial of an accommodation request.

C.  Who serves as counselor.  (Chapter IX, sec. 8C1.)

    1.  Generally, the court's EDR Coordinator serves as counselor.

    2.  If  the EDR Coordinator is disqualified under the Chapter IX, sec. 7 procedures, or is otherwise unavailable, the chief judge designates another qualified person.

3. If a judicial officer is the alleged violator, the matter goes to the circuit judicial council. *(See* "Employment Dispute Resolution Process Cases Involving Judges," *supra* sec. 4.)

D. Purpose and process of counseling. (Chapter IX, sec. 8C2.)

1. To discuss the aggrieved employee's concerns and elicit information about the alleged violation.

2. To advise the aggrieved employee about his/her rights and responsibilities under the court's EDR procedures.

3. To evaluate the matter.

4. To assist the aggrieved employee in achieving an early resolution of the dispute, if possible.

E. Representation. (Chapter IX, sec. 5B.)

1. An aggrieved employee who invokes the Model EDR Plan's dispute resolution process may be represented by the person of his/her choice if the person:

   a. Is available; and

   b. Consents.

2. A court employee may act as representative if the representation will not:

   a. Unduly interfere with his/her court duties; or

   b. Constitute a conflict of interest, as determined by the representative's appointing officer.

3. The Model EDR Plan:

   a. Does not authorize payment of attorney fees to complainant, except as authorized by the Back Pay Act. (Chapter IX, sec. 12 B6.)

   b. Is silent regarding representation of the employing office or the alleged violator.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 120 of 159

F.    Confidentiality.  (Chapter IX, sec. 8C3.)

The counselor must maintain confidentiality to the extent possible of all allegations, unless the employee signs a written waiver of confidentiality. However, information about allegations filed under the EDR Plan shall be shared with the unit executive and chief judge.

G.    Resolution of the matter.  (Chapter IX, sec. 8C4.)

The counselor:

1.    Assists in resolution by:

a.    Obtaining from the aggrieved employee a specific delineation of the requested remedies;

b.    Notifying the employing office of the relief sought, provided the claimant has waived confidentiality; and

c.    Serving as an intermediary, as needed and appropriate, in resolution discussions.

2.    Reduces to writing any settlement achieved during counseling; and

3.    Secures the signatures of the aggrieved employee, his/her representative, if any, and the official of the employing office who is authorized to agree to settlement on behalf of the employing office.

H.    Counseling settlement agreement should:

1.    Be neutral.

2.    Be clear.

3.    Be measured  by objective standards.

4.    Identify specifically the matter being resolved.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 121 of 159

5. Completely describe each individual's responsibilities under the agreement.

6. Include a specific time period for each required action.

7. Where warranted, what happens if there is noncompliance.

I. Duration of counseling. (Chapter IX, sec. 8D.)

Under the Model EDR Plan, the counseling period is no more than 30 days, beginning on the day the EDR Coordinator receives the request for counseling.

J. End of counseling period and notice. (Chapter IX, sec. 8E.)

1. The EDR Coordinator notifies the aggrieved employee, in writing, that the counseling period has ended.

2. The EDR Coordinator notifies the aggrieved employee, in writing, that if he/she chooses to pursue his/her claim, he/she must file with the EDR Coordinator a request for mediation within 15 days after receipt of such notification.

K. Counseling record.

1. The Counselor must:

a. Maintain a written record of all counseling contacts.

b. Allow review of that record of contacts on a need-to-know basis.

2. The counseling record should include:

a. Identifying information about the aggrieved employee (name, job title, address, phone number).

b. Identifying information about the employing office (names, job titles, addresses, phone numbers).

c. A description of the specific claims made by the aggrieved employee.

d. A brief description of each counseling contact.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 122 of 159

e.      The requested remedies.

f.      A general summary of any resolution effort and the outcome (settlement agreement/no settlement).

g.      A summary of documents reviewed.

h.      Identification of all pertinent dates, including the date on which the aggrieved employee was notified by the EDR Coordinator that the counseling period had ended and the aggrieved employee had a right to request mediation.

## SAMPLE

## COUNSELOR'S REPORT

**I.    EMPLOYEE:**

**Name:** Julia Boyd

**Job Title:** Court Reporter

**Place of Employment:** U.S. Federal Court, Some City, PA 12355

**Work Phone No.:** (728) 177-0455

**Home Phone No.:** (728) 424-9185

**Home Address:** 434 Frank Avenue, Some City, PA 12343

**Representative:** Claudia Rivers

**Representative's Address:** Law Offices of Claudia Rivers, 778 E. Main Street, Some City,  PA 12344

**Representative's Phone No.:** (728) 519-6189

**II.    CHRONOLOGY OF COUNSELING:**

**Date of request for counseling:** June 5, 2000

**Date of initial interview:** June 7, 2000

**Date(s) of alleged violation(s):** June 1, 2000

**30th day after alleged violation:** July 1, 2000

**Reason for delayed contact beyond 30 days, if applicable:** N/A

**Date of waiver of confidentiality, if any:** June 7, 2000

**Date of resolution agreement, if any:** N/A

**Date of notification to employee of right to request mediation, if applicable:**

July 5, 2000

**Date counseling report completed:** July 10, 2000

## III. CLAIMS MADE:

Employee alleges she was discriminated against on the basis of sex (female) when she was denied 12 weeks unpaid leave and placed on AWOL status on June 1, 2000. She alleges she cannot return to work because she still is in rehabilitation and the building is partially inaccessible to her wheelchair. She further alleges the denial of leave violated the Family and Medical Leave Act.

## IV. REMEDY REQUESTED:

(1) Twelve weeks unpaid leave under FMLA and removal of AWOL from all

records; and

(2) Reasonable attorney's fees.

## V. SUMMARY OF COUNSELING CONTACTS:

Counselor conducted an initial interview with the employee on June 7, 2000. The employee was informed of her rights and responsibilities under the court's EDR Plan and signed a waiver of her right to confidentiality. The employee said she has worked in her present position for nine years. She said she is supervised by Glen Johnson, Deputy Clerk of Court, who reports to Stuart Ferguson, Clerk of Court.

The employee identified her claims, as outlined above, and provided additional background information. She said that she had been on sick leave for three month because of a knee injury that required surgery. She said at the end of that period, she asked Mr. Johnson to approve 12 weeks of unpaid leave under

the FMLA because she needed to walk at least 10 minutes every hour, could not negotiate steps, and that she continued to get around with the assistance of a wheelchair and, at times, a cane. She said he asked for a medical opinion as to whether she could return to work, but then, despite her medical documentation, he denied the leave request and placed her on AWOL status.

The employee believed the leave denial was based, in part, on gender discrimination because Mr. Johnson remarked that she was "twirling like a whirling dervish" prior to her fall. She explained that this referred to the swing-dancing which caused her injury. She believed he would not have made such a remark to a male. She was not aware of any male employees who had made similar leave requests and therefore could not compare her treatment to that of others. She also contended the leave denial was discriminatory based on disability, stating her mobility was severely impaired by her injury. She said her supervisor seemed more concerned about the quality of the court reporting they were getting in her absence than he was with her health. She said he also questioned her about why she could not come back and just go to therapy twice a week, showing no real understanding of what she was undergoing. She said she was expected to make a full recovery, and according to her doctor, should show significant improvement within the next 12 weeks.

The employee contended, further, that she should be granted leave under the FMLA. She said she had a serious health condition and explained that it would be very difficult for her to get around the courthouse in her current condition. Specifically, she said she could not negotiate steps, but would have to go up at least four to enter the courthouse or the elevator. In addition, she believed the wheelchair was too wide for many of the doorways in the building, and did not believe there were wheelchair-accessible bathrooms on several floors. Finally, she said the floors were so slippery that she was afraid she could fall if she tried to walk with a cane. She expressed a fear that she could easily re-injure her knee under these conditions.

On July 8, 2000, the Counselor spoke with Mr. Johnson, who denied any wrongdoing. He confirmed that he had denied the leave request, stating there was nothing in the doctor's statement that said the employee could not work.

He noted that her job did not require significant mobility and said they could give her the walking breaks and time off for therapy mentioned in her medical

documentation.  He confirmed the "whirling dervish" remark, but denied that it had anything to do with the employee's gender.  He believed the employee was only temporarily injured, rather than disabled, and contended that with a little help, she could get around sufficiently to do her job. He said he recommended denial of the employee's request for leave under the FMLA, and Mr. Ferguson concurred.  He also noted that the temporary court reporters being used in the employee's absence were providing substandard services and said they needed her to return to work because the judge was requesting the reporting services to which he was accustomed.

## VI.  SUMMARY OF DOCUMENTS REVIEWED:

(1)    Medical documentation provided by employee, dated May 20, 2000.

(2)    Drawing prepared by employee showing physical layout of the courthouse, in pertinent part, undated.

(3)    Denial of leave request, dated June 1, 2000.

## VII.  SUMMARY OF INFORMAL RESOLUTION ATTEMPT:

The Counselor called Mr. Ferguson to discuss the employee's requested remedy, as outlined above.  He indicated there was no opportunity for resolution of this matter as he believed Mr. Johnson had acted properly in denying the requested leave.

## VIII.  SUMMARY OF INFORMATION GIVEN TO EMPLOYEE BY COUNSELOR:

The Counselor[9] notified the employee that the counseling period had ended and the matter could not be resolved at this stage. The procedures available to her under the EDR Plan were reviewed and she was provided written notification of the 15-day period within which to request mediation.

Margaret Springfield

Counselor

(728) 177-4233

Telephone Number

_____

Signature of Counselor

U.S. Federal Court, Some City, PA 12355

Address

July 10, 2000

Date

_____

[9] The EDR Coordinator served as counselor. When the EDR Coordinator and counselor are different, the EDR Coordinator notifies the employee in writing of the end of the counseling period.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 128 of 159

**ATTACHMENTS**

1.  Written request for counseling, dated June 5, 2000.

2.  Denial of leave request, dated June 1, 2000.

3.  Notification of right to request mediation, dated July 5, 2000.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 129 of 159

**MEDIATION PROCESS**

A.    Request for mediation.  (Chapter IX, sec. 9A).

    1.    The aggrieved employee files with the EDR Coordinator a request for mediation.

    2.    Under the Model EDR Plan, any such request must be filed within 15 days after the aggrieved employee receives notification that the counseling period has ended.

    3.    The EDR Coordinator will promptly provide a copy of the mediator request to the unit executive and the chief judge.

    4.    The request must be in writing and must describe the claim(s) presented. Failure to state a claim will preclude consideration of the issue at the hearing phase.

    5.    An employee's failure to request mediation or attend at least one mediation session, will preclude further processing of the employee's claim under the EDR procedures.

B.    Exceptions to mediation timeframes.  The chief judge or other presiding judicial officer may waive the timeliness requirement for the request for mediation for good cause shown, such as:

    1.    The aggrieved employee was not notified of the time limits or otherwise was not aware of them.

    2.    Despite due diligence, the aggrieved employee was prevented from timely requesting mediation by circumstances beyond his/her control.

C.    Who serves as mediator.  (Chapter IX, sec. 4B1 and 2.)

1. The chief judge or EDR Coordinator generally designates the mediator.

2. Any person with skills to assist in resolving disputes, except the EDR Coordinator, may serve as a mediator.

3. If the alleged violator is a judicial officer, the mediator is assigned under the circuit judicial council procedure. *(See* "Employment Dispute Resolution Process Cases Involving Judges," *supra* sec. 4.)

D. Purpose and process of mediation. (Chapter IX, sec. 9B3.)

1. The mediator meets, separately and/or jointly, with the aggrieved employee and his/her representative, if any, and the employing office to help the parties:

    a. Identify the issues (claims) in dispute;

    b. Uncover their real interests;

    c. Explore the range of possible solutions to help the parties fashion an acceptable resolution.

2. The mediator encourages achievement of a voluntary, mutually satisfactory resolution of the dispute.

3. The aggrieved employee must attend at least one mediation session. (Chapter IX, sec. 9C.)

E. Representation. (Chapter IX, sec. 5B.)

1. An aggrieved employee who invokes the employment dispute resolution process may be represented by the person of his/her choice if the person:

   a. Is available; and

   b. Consents.

2. A court employee may agree to such representation if it will not:

   a. Unduly interfere with his/her court duties; or

   b. Constitute a conflict of interest, as determined by the representative's appointing officer.

3. The Model EDR Plan does not authorize payment of attorney fees to complainant, except as authorized by the Back Pay Act. (Chapter IX, sec. 12B6.)

4. The Model EDR Plan is silent regarding representation of the employing office.

F. Confidentiality. (Chapter IX, sec. 9B4.)

Any person or party involved in mediation cannot disclose, in whole or in part, any information or records obtained through, or prepared specifically for, mediation, except:

1. As necessary to consult with the parties or representatives, then only after notice to all parties;

2. To provide a mediator's report to the EDR Coordinator.

3. Where the settlement is reached, the settlement may be released as necessary to carry out its terms or for enforcement purposes.

G. Resolution of the matter. (Chapter IX, sec. 9B5.)

The mediator:

1.   Reduces to writing any settlement achieved during mediation; and

2.   Secures the signature of the aggrieved employee, his/her representative, if any, and the official of the employing office who is authorized to agree to settlement on behalf of the employing office.

3.   As stated in any signed settlement.

H.   Mediation agreement must:

1.   Be neutral.

2.   Be clear.

3.   Be measured by objective standards.

4.   Identify specifically the matter being resolved.

5.   Completely describe each individual's and the employing office's responsibilities under the agreement.

6.   Include a specific time period for each required action.

7.   Where warranted, describe what happens if there is noncompliance.

I.   Duration of mediation.  (Chapter IX, sec. 9C.)

Under the Model EDR Plan, the mediation period is 30 days or less, beginning on the date the EDR Coordinator receives the employee's request for mediation.

J.   End of mediation period and notice.  (Chapter IX, sec. 9D.)

1. If, at the end of the mediation period, the parties have not resolved the matter that is the subject of the mediation request, the EDR Coordinator notifies the aggrieved employee, the aggrieved employee's representative, if any, and the employing office, in writing, that the mediation period has ended.

2. The notice also informs the aggrieved employee of his/her right to file a complaint.

K. Mediation record.

1. The mediator should maintain a record of all mediation contacts and any issues raised during mediation that were not identified in the request for mediation and make it available to the EDR Coordinator.

2. If the aggrieved employee files a complaint under Chapter IX, sec. 10, designated judicial officer has access to the record of any claims raised in mediation.

3. The mediation record should include:

   a. Identifying information about the aggrieved employee (name, job title, address, phone number);

   b. Identifying information about the employing office (names, job titles, addresses, phone numbers);

   c. A description of the specific claims addressed in the mediation, including any additional claims not identified in the request for mediation;

   d. The date(s) of the mediation session(s) and duration of the session(s);

   e. The outcome of the mediation (settlement agreement/no settlement).

**SAMPLE**

**MEDIATOR'S REPORT**

**Case File No. 00-001**

**I.    Mediator:**

    A.    Name of Mediator:    Betty Jones

    B.    Business Address:    Jones and Associates, 123 W. Main Street, Some City, PA 12345

    C.    Business Telephone No.: (728) 222-2929

    D.    Business Fax No.:    (728) 222-2930

**II.    Parties:**

    A.    Employee (Name, Job Title, Employing Office, Address, Phone No.): Julia Boyd, Court Reporter, U.S. Federal Court, Some City, PA 12355, (728) 177-0455

        Employee Representative (Name, Address, Phone No.): Claudia Rivers,

        Law Offices of Claudia Rivers, 778 E. Main Street, Some City, PA

        12344, (728) 519-6189

    B.    Management Official (Name, Job Title, Employing Office, Address, Phone No.): Stuart Ferguson, Clerk of Court, U.S. Federal Court, Some City, PA 12355, (728) 177-4100

        Management Representative (Name, Address, Phone No.): None

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 135 of 159

## III. Key Dates:

A.  Date of notification of right to request mediation: July 5, 2000

Date of written request for mediation: July 10, 2000

Reason for delay of mediation request beyond 15 days, if applicable: N/A

B.  Date Mediator first contacted parties:

Employee: July 12, 2000

Management Official: July 12, 2000

C.  Mediation session(s) (list date and number of hours of each session):

Date: July 17, 2000          No. of Hours: 4

D.  Date(s) and Nature of Additional Contact with Parties, if any: None

## IV. Claims Mediated (briefly identify allegations and bases):

Employee alleges she was discriminated against on the basis of sex (female) when she was denied 12 weeks unpaid leave and placed on AWOL status on June 1, 2000. She alleges she cannot return to work because she still is in rehabilitation and the building is partially inaccessible to her wheelchair. She further alleges the denial of leave violated the Family and Medical Leave Act.

## V. Outcome:

A.  Session Resulted in Resolution: Yes: ____No: __X__

1.  If Settled: N/A

Date Settlement Agreement Signed by Parties:

Date Copy of Agreement Provided to Each Party:

If case was settled without written agreement, explanation:

EDR Bench Book for Judges (March 2011)                                        100

2. If Not Settled:

Date of Notification to EDR Coordinator that Mediation Has Concluded:

July 18, 2000.

## RELEVANT DOCUMENTS

1.      Generic disparate treatment

   a.      Workforce profile, as of the date of the action at issue, showing for each employee under the direct and indirect supervision of the official who made the decision at issue: organizational unit, name, position title, series, grade, and identification of membership in the protected group(s) which form the basis for the complaint.

   b.      Documentation showing whether the action at issue occurred, when it occurred, and why it occurred.

   c.      Documentation showing similar actions taken by the official responsible for the action at issue in the two-year period prior to the action at issue, with each affected employee identified by the protected group(s) which form the basis for the complaint, redacted for privacy considerations, as appropriate.

   d.      Pertinent policy manuals, guides, and regulations governing the action at issue in effect as of the date of the action at issue.

2.      Sexual harassment

   a.      Workforce profile, as of the date of the action at issue (or, if a continuing violation, as of the date of complaint), showing for each employee under the direct and indirect supervision of the official who allegedly harassed the complainant, or, if the alleged harassment was by a coworker or nonemployee, the official who knew or should have known of the harassment: organizational unit, name, position title, series, grade, and sex.

   b.      Documentation of the alleged harassment at issue, such as contemporaneous notes kept by the complainant.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 138 of 159

c. Documentation of other allegations of harassment made by others against the manager, employee, or nonemployee who is alleged to have harassed the complainant. Documentation should be redacted for privacy considerations, as appropriate.

d. Documentation of any sexual harassment prevention training provided to the alleged harasser by the Agency prior to the alleged harassment at issue.

e. Sexual harassment policy and guidance.

3. Reasonable accommodation to disability

a. Workforce profile, as of the date of the action at issue, showing for each employee under the direct and indirect supervision of the official who made the accommodation decision at issue: organizational unit, name, position title, series, grade, and disability status.

b. Complainant's request(s) for accommodation and agency response(s).

c. Medical documentation showing complainant's physical or mental impairment.

d. Complainant's position description as of the request(s) for accommodation.

e. Agency policy on reasonable accommodation in effect as of the denial of the request for accommodation at issue.

4. Failure to promote (career, noncompetitive)

a. Workforce profile, as of the date of the failure to promote at issue, showing for each employee under the direct and indirect supervision of

EDR Bench Book for Judges (March 2011)                   103

the official who failed to promote the complainant: organizational unit, name, position title, series, grade, and identification of membership in the protected group(s) which form the basis for the complaint.

b.    Complainant's position description as of the date of the complaint.

c.    Position description for position to which the complainant states he/she should have been promoted.

d.    Personnel action showing the complainant's position in effect as of the date of the complaint.

e.    Complainant's performance evaluations and standards for the two year period prior to his/her complaint.

f.    For the two-year period prior to the complaint, listing of all career promotions of employees under the supervision of the official responsible for the complainant's nonpromotion, with each employee identified by the protected group(s) which form the basis for the complaint, redacted for privacy considerations, as appropriate. Please also indicate the time in grade for each of these employees prior to their promotion.

g.    Qualification and classification standards for the series and grade complainant was in at the time of the complaint and for the position to which the complainant states he/she should have been promoted.

h.    Pertinent policy manuals, guides and regulations governing career ladder promotions in effect as of the date of the action at issue.

5.    Nonselection

a.  Workforce profile, as of the date of the action at issue, showing for each employee under the direct and indirect supervision of the selecting official: organizational unit, name, position title, series, grade, and identification of membership in the protected group(s) which form the basis for the complaint.

b.  Documentation contained in the selection file for the position at issue, advertised under announcement number _____:

    (1)  Announcement;

    (2)  Position description;

    (3)  Ratings and rankings of candidates;

    (4)  Selection referral(s) (certificates), with each candidate referred for selection consideration, if known, identified by the protected group(s) which form the basis for the complaint;

    (5)  Interview questions and notes, if applicable;

    (6)  Any written recommendation or justification for the selection at issue;

    (7)  Documentation of complainant's notification of nonselection;

    (8)  Applications of complainant and selectee(s).

c.  Selection referrals (certificates) for all selections made by the selecting official in the two-year period prior to the selection at issue, with each candidate referred for selection consideration identified by the protected group(s) which form the basis for the complaint, if  known, redacted for privacy considerations, as appropriate.

d.  Pertinent policy manuals, guides, and regulations governing competitive selection in effect as of the date of the selection at issue.

6.  Disciplinary action

EDR Bench Book for Judges (March 2011)                                    105

a.     Workforce profile, as of the date of the discipline at issue, showing for each employee under the direct and indirect supervision of the official who disciplined the complainant: organizational unit, name, position title, series, grade, and identification of membership in the protected groups(s) which form the basis for the complaint.

b.     Complainant's position description in effect at the time the discipline was proposed or issued.

c.     Pertinent documentation on the discipline at issue, including:

      (1)     The personnel action showing the disciplinary action;

      (2)     Any proposal to discipline, with all supporting documentation;

      (3)     Complainant's response, if any;

      (4)     Decision letter.

d.     Disciplinary actions taken by the official who disciplined the complainant during the two-year period prior to the action at issue, with each disciplined employee identified by the protected group(s) which form the basis for the complaint, redacted for privacy considerations, as appropriate.

e.     Record of any previous disciplinary action taken against the complainant.

f.     Rules and regulations on discipline, including any table of penalties, as of the date of the discipline at issue.

7.    Performance evaluation

a.     Workforce profile, as of the date of the action at issue, showing for each employee under the official who rated the complainant's performance: organizational unit, name, position title, series, grade, and identification of membership in the protected group(s) which form the basis for the complaint.

b.     Complainant's position description as of the rating period at issue.

c.	Performance evaluations and standards for all employees whose performance was rated by the official who rated the complainant's performance for the rating period at issue and for the previous year, with each employee identified by membership in the protected group(s) which form the basis for the complaint, redacted for privacy considerations, as appropriate.

d.	Workproduct documentation on the complainant's performance during the rating period at issue.

e.	Workproduct documentation on employees in the complainant's position and grade who were rated more favorably than the complainant during the performance period at issue by the official who rated the complainant's performance.

f.	Any record of counseling or performance discussion with complainant during the performance period at issue.

g.	Evaluations of the complainant under different management in the two year period prior to the evaluation at issue.

h.	Pertinent policy manuals, guides, and regulations governing rating of employee performance in effect as of the date of the performance rating at issue.

8.	Leave

a.	Workforce profile, as of the date of the denial of leave at issue, showing for each employee under the direct and indirect supervision of the official who denied the complainant's leave: organizational unit, name, position title, series, grade, and identification of membership in the protected group(s) which form the basis for the complaint.

b.	Complainant's request(s) for leave, management's response, and supporting documentation.

c.	Complainant's time and attendance records for the two year period prior to the denial of leave at issue.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 143 of 159

d. Documentation of any counseling provided the complainant regarding leave prior to denial of leave at issue.

e. Requests for leave and management response for all other leave denied by the official responsible for denying the complainant leave, in the two-year period prior to the action at issue, with each affected employee identified by the protected group(s) which form the basis for the complaint, redacted for privacy considerations, as appropriate.

f. Pertinent rules and regulations governing denial of leave in effect as of the date of the action at issue.

9. Detail or reassignment

a. Workforce profile, as of the date of the action at issue, showing for each employee under the direct and indirect supervision of the official who made the detail or reassignment decision at issue: organizational unit, name, position title, series, grade, and identification of membership in the protected groups(s) which form the basis for the complaint.

b. Personnel action on the detail or reassignment at issue.

c. Complainant's position description prior to the detail or reassignment at issue.

d. Complainant's position description after the detail or reassignment at issue.

e. Notice to the complainant on the detail or reassignment at issue and any underlying documentation.

f. For the two-year period prior to the detail or reassignment at issue, a listing of all other involuntary details or reassignments made by the official responsible for the decision at issue, with each affected employee identified by the protected group(s) which form the basis for the complaint, redacted for privacy considerations, as appropriate.

g. Pertinent policy manuals, guides, and regulations governing detail or reassignment in effect as of the date of the action at issue.

10. Denial of training

    a.    Workforce profile, as of the date of the denial of the request for training at issue, showing for each employee under the direct and indirect supervision of the official who denied the complainant's request for training: organizational unit, name, position title, series, grade, and identification of membership in the protected group(s) which form the basis for the complaint.

    b.    Complainant's request for training and management response.

    c.    Complainant's position description as of the date of the denial of the request for training at issue.

    d.    Complainant's training plan in effect as of the denial of the request for training at issue, if applicable.

    e.    Record of training for complainant for the two year period prior to the denial of request for training.

    f.    For the two year period prior to the denial of the request for training at issue, record of all other training requests denied by the official who denied complainant's request for training, with each employee denied training identified by the protected group(s) which form the basis for the complaint.

    g.    Record of training for all other employees under the direct and indirect supervision of the official[10] who denied the complainant's request for training, with each affected employee identified by the protected group(s) which form the basis for the complaint, redacted for privacy considerations, as appropriate.

---

[10] This comparative data may be narrowed to other employees in the same position and grade as complainant, as appropriate.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 145 of 159

**STATUTES RELATED TO THE MODEL EDR PLAN**

1.  **Title VII, Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq.  (Chapter II of the Model EDR Plan.)**

    A.  Major provisions

        1.  Prohibits employment discrimination or harassment based on:

            a.  Race,

            b.  Color,

            c.  Religion,

            d.  Sex (including sexual harassment and discrimination based on pregnancy), and

            e.  National origin.

        2.  Theories of discrimination include:

            a.  Disparate treatment/intentional discrimination,

            b.  Disparate impact/adverse impact, which does not require intent,

            c.  Harassment (hostile work environment and *quid pro quo),*

            d.  Failure to make reasonable accommodation,

        3.  Prohibits retaliation or reprisal for engaging in previous EEO activity.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 146 of 159

B.    Coverage

     1.    Substantive protections provided by the statute apply to all employees and employing offices covered under the Model EDR Plan.  Check coverage under court EDR Plan.

     2.    The age discrimination provision of Chapter II, sec. 1, of the Model EDR Plan does not apply to the initial hiring of probation and pretrial services officers or assistants.  Chapter II, sec. 3.  See *Report of the Proceedings of the Judicial Conference of the United States* (March 1991),  pp. 16-17.

**2.    Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. sec. 621 et seq.  (Chapter II of the Model EDR Plan.)**

A.    Major provisions

     1.    Prohibits employment discrimination based on age.

     2.    Age must be established as the determinative factor in the employer's decision.

B.    Coverage

     1.    Substantive protections provided by the statute apply to all employees of employing offices who are 40 years of age or older under the Model EDR Plan.  Check coverage under court EDR Plan.

     2.    The age discrimination provision of Chapter II, sec. 1, of the Model EDR Plan does not apply to the initial hiring of probation and pretrial services officers or assistants.  Chapter II, sec. 3.  See *Report of the Proceedings of the Judicial Conference of the United States* (March 1991),   pp. 16-17.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 147 of 159

**3.** **Rehabilitation Act of 1973, 29 U.S.C. sec. 791 et seq, and Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. sec. 12101 et seq., as amended by the American with Disabilities Act Amendments Act of 2008 (ADAA). (Chapter II of the Model EDR Plan.)**

    A.    Major provisions

        1.    Prohibit intentional employment discrimination against persons with disabilities.

        2.    A disabled person is defined as one who:

            a.    Has a "major physical or mental impairment that substantially limits one or more of [such person's] major life activities."  Major life activities include but are not limited to:

                (1) - Caring for oneself, performing manual tasks, seeing, hearing. eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working; and

                (2) - The operation of a major bodily function including but not limited to, function of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

            b.    Has a "record of such an impairment"; or

            c.    Is "regarded as having such an impairment".  *See* 42 U.S.C. sec. 12102(2).

        3.    Require reasonable accommodation to the known limitations of an otherwise qualified disabled person to perform the essential functions of his/her position, unless such accommodation would result in an undue hardship to the employer.

        4.    Prohibit discrimination against an employee because of his/her association with a disabled person, e.g., an employee's spouse.

    B.    Coverage

1. Substantive protections provided by the statute apply to all disabled employees of an employing office who meet the above definition under the Model EDR Plan. Check coverage under court EDR Plan.

2. Apply to all employees of an employing office who are associated with disabled persons who meet the above definition under the Model EDR Plan. Check coverage under court EDR Plan.

**4. Family and Medical Leave Act of 1993 (FMLA), 5 U.S.C. sec. 6381 et seq. (Chapter III of the Model EDR Plan.)**

A. Major provisions

1. Provides a maximum of 12 weeks unpaid leave (for which paid leave may be substituted at the employees discretion) in a 12-month period to eligible employees for one or more of the following reasons:

   a. Birth of newborn child;

   b. Care of adopted or foster child (within one year after placement);

   c. Care of spouse, child, or parent with a serious health condition; and/or

   d. A serious health condition that makes the employee unable to perform his/her job functions.

2. "Serious health condition" is defined as an illness, injury, impairment, or physical or mental condition that involves:

   a. Inpatient care in a:

      (1) Hospital**;**

      (2) Hospice; or

      (3) Residential medical care facility; or

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 149 of 159

      b.     Continuing treatment by a health care provider, as further defined in 5 C.F.R. sec. 630.1202.

3. Provides military family leave entitlements for a federal employee who is the spouse, son, daughter, parent, or next of kin (defined as the nearest blood relative) of a covered service member with a serious injury or illness and who provides care for such service member.

      a.     The serious illness or injury must have been incurred by the covered service member in the line of duty while on active duty in the Armed Forces.

      b.     Covered family members are entitled to up to 26 weeks of FMLA leave during a single 12-month period to care for the service member (hereafter referred to as "military family leave").

      c.     During the single 12-month period, the employee is entitled to a combined total 26 weeks of regular FMLA leave and military family leave.

      d.     The use of this military family leave in a single 12-month period does not limit the use of regular FMLA leave during any other 12-month period.

B. Coverage

1. The Model EDR Plan reaffirms that Title II of FMLA applies by statute to judicial branch employees, as described in Vol. 12, Chapter 9, sec. 920.20.35, *Guide to Judiciary Policies.*

2. Covered employees must have completed at least 12 months of civilian service with the federal government.

3. The 12-month period of FMLA leave is computed 12 months from date of employee's first FMLA leave; *see* 5 C.F.R. sec. 630.1203(c).

4. A covered employee must provide:

    a. At least 30 days advance notice when the leave is foreseeable; 5 C.F.R. sec. 630.1206; and

    b. Adequate and acceptable medical documentation, 5 C.F.R. sec. 630.1207. The employing office may require:

        (1) Certification by a health care provider; and

        (2) A second opinion, if it doubts the opinion of the primary health care provider; and

        (3) A mandatory third opinion to resolve any conflict between the first and second opinions.

5. An employer may not designate leave as FMLA leave unless the employer has obtained confirmation from the employee of intent to invoke FMLA leave; 5 C.F.R. sec. 630.1203(h).

6. Employees may elect to substitute annual leave or sick leave for leave without pay consistent with the laws and regulations covering usage. 5 CF.R. Sec. 630.1205 (e).

7. An employee may not retroactively designate paid leave for leave without pay. 5 C.F.R. sec. 630.1205(e).

## 5. Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. sec. 2101 et seq. Chapter IV of the Model EDR Plan.

A. Major provisions

1. Requires a 60-day written notice to affected employees before an "employing office closing" or a "mass layoff."

2. Defines the term "employing office closing" as:

    a. The permanent or temporary shutdown of a single employment site, if:

    b. The shutdown results in an employment loss of 50 or more full-time employees during any 30-day period.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 151 of 159

3.  Defines the term "mass layoff" as:

    a.  A reduction-in-force (RIF) at a single employment site during any 30-day period, resulting in termination or layoff of at least 33% of full-time employees, where at least 50 full-time employees are affected; or

    b.  A RIF of at least 500 full-time employees, regardless of the percentage of the workforce; and

    c.  In either a. or b. above, the RIF is not the result of an employing office closing.

4.  Delineates notice requirements:

    a.  The notice must be in writing;

    b.  The notice must be issued to all affected employees, defined as those who reasonably may be expected to experience an employment loss as a consequence of their employing office's closing or mass layoff.

    c.  The notice period must be at least 60 days, except where:

        (1)  Court business circumstances exist that were not reasonably foreseeable at the time the 60-day notice would have been required; or

        (2)  A natural disaster, such as an earthquake, flood, or hurricane, has occurred.

    d.  Additional notice should be given to affected employees when the date, or schedule of dates, of a planned office closing or mass layoff is extended beyond the date announced in the original notice.

B.    Coverage

       1.    Does not apply to an employee office closing or mass layoff that results from the absence of appropriated funds.

       2.    Applies to all court employees whose employing offices meet the above definitions.

**6.    Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. sec. 4301 et seq.  (Chapter V of the Model EDR Plan.)**

A.    Major provisions

       1.    Prohibits employing offices from denying:

           a.    Initial employment;

           b.    Reemployment;

           c.    Retention in employment;

           d    Promotion; or

           e.    Any other employment benefit.

       2.    On the basis of the employee's:

           a.    Service;

           b.    Application for service; or

           c.    Obligation of service in the "uniformed services."

       3.    The service, application for, or obligation of, service must be a "substantial or motivating factor" in any adverse employment action.

       4.    An employee must timely request reemployment upon return from service in the uniformed services by:

           a.    Reporting for work in the employing office the next day; or

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 153 of 159

b. Submitting an application for reemployment with the employing office within 14-90 days, depending on how long the service lasted.

5. The time for reemployment may be extended for up to two years based on a service-connected injury.

6. A reemployed eligible employee:

   a. Is entitled to:

      (1) The seniority and other seniority-based rights and benefits he/she had on the date of the beginning of the service; and

      (2) Any additional rights and benefits he/she would have received with continuous employment.

   b. May elect to continue health insurance coverage, with payment, for up to 18 months while performing service.

   c. Must receive credit for the period of service as if employed by the employing office, for purposes of accrual and non-forfeitability of benefits.

   d. Is protected from termination, except for cause, for 180 days or one year, depending on the length of service in the uniformed services.

7. The employing office is not required to reemploy an eligible employee, if it establishes any of the following:

   a. The employing office's circumstances have so changed that reemployment is unreasonable or impossible;

   b. Reemployment would impose an undue hardship on the employer; or

   c. The eligible employee's original employment was for a brief, nonrecurrent period, and there was no reasonable expectation

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 154 of 159

that employment would continue indefinitely or for a significant period.

B.      Coverage

1.      Applies by statute to all judiciary branch employees who meet the following statutory criteria:

   a.      Performed service in the uniformed services, including:

      (1)      Armed Forces;

      (2)      National Guard;

      (3)      Commissioned Corps of the Public Health Service; or

      (4)      Any other category designated by the President during time of war or national emergency.

   b.      Service includes:

      (1)      Weekend drills and training; and

      (2)      All periods of voluntary or involuntary active service.

2.      Does not apply to employees:

   a.      Terminated from service because of dishonorable or bad conduct discharge;

   b.      Separated under other than honorable conditions;

   c.      Dismissed by a general court martial, by commutation of sentence, or by order of the President in time of war; or

   d.      Dropped from the rolls because of:

EDR Bench Book for Judges (March 2011)                                      119

(1)    An unauthorized three-month absence; or

(2)    A sentence to confinement.

C.    Remedies

Where a court is unable to reemploy an eligible employee:

1.    The employing office:

a.    May notify the Office of Personnel Management (OPM) of the inability to reemploy; and

b.    Should notify the eligible employee of his/her rights under 38 U.S.C. sec. 4314, including his/her right to apply to OPM.

2.    OPM is required, under 38 U.S.C. sec. 4301 et seq., to find a position for the eligible employee in an executive branch agency.

**7.**    **Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. sec. 651 et seq.  (Chapter VI of the Model EDR Plan.)**

A.    Major provisions

1.    Employing office must provide a place of employment to its employees which is free from recognized hazards that cause, or are likely to cause, death or serious physical harm.

2.    Courts are required to implement a health and safety program under standards established by the Occupational Safety and Health Administration (OSHA).

B.    Coverage

1.    Applies to all employees and employing offices covered under the Model EDR Plan.

2.    The Judiciary:

a.    Has no direct authority to procure facilities for its own use.

b. Generally occupies property acquired and maintained by the General Services Administration (GSA) and the United States Postal Service (USPS).

(1) GSA and USPS are subject to OSHA regulations and additional safety and health regulations applicable to federal agencies.

(2) GSA and USPS do not oversee tenant-controlled space.

c. Courts occupying space which neither GSA nor USPS oversees are required to implement a program to ensure a place of employment free from recognized hazards that cause or are likely to cause death or serious physical harm to employees.

C. Special procedural considerations

Alleged violations involving property exclusively within the jurisdiction of GSA or USPS should be filed directly with GSA or USPS.

**8. Employee Polygraph Protection Act of 1988 (EPPA), 29 U.S.C. sec. 2001 et seq. Chapter VII of the Model EDR Plan.**

A. Major provisions

1. Prohibits requiring employees or prospective employees to take a polygraph test, with certain exceptions.

2. Prohibits, with certain exceptions, requesting employees to take a polygraph test.

B. Application to the Judiciary

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 157 of 159

1. The Judicial Conference Report (December 1996), which studied Judicial Branch coverage of applicable statutes, affirmed the principles of the EPPA.

2. The Judicial Branch does not currently request or require its employees or prospective employees to take a polygraph test for any reason except where required to access classified information or where otherwise required by law.

3. Under Chapter VII, sec. 1, of the Model EDR Plan, no employee may be required to take a polygraph test except as noted above.

C.  Coverage

With limited exceptions noted in 8B2, above, the principles of the EPPA apply to all employees and employing offices covered under the Model EDR Plan except to the extent the Model EDR plan is modified by a circuit or local plan.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 158 of 159

B. Application to the Judiciary

1. The Judicial Conference Report (December 1996), which studied Judicial Branch coverage of applicable statutes, affirmed the principles of the EPPA.

2. The Judicial Branch does not currently request or require its employees or prospective employees to take a polygraph test for any reason except where required to access classified information or where otherwise required by law.

3. Under Chapter VII, sec. 1, of the Model EDR Plan, no employee may be required to take a polygraph test except as noted above.

C. Coverage

With limited exceptions noted in 8B2, above, the principles of the EPPA apply to all employees and employing offices covered under the Model EDR Plan except to the extent the Model EDR plan is modified by a circuit or local plan.

Case 1:20-cv-00066-WGY   Document 78-5   Filed 10/02/20   Page 159 of 159