**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66**

JANE ROE,                               )
                                             )
       Plaintiff,                       )
                                               )
v.                                        )
                                             )
UNITED STATES OF AMERICA, et al.,     )
                                             )
       Defendants.                   )

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION ....................................................................................................1

FACTS ......................................................................................................................1
I.    Plaintiff complains of sexual harassment, and an investigation is initiated ........1
II.   The General Counsel's Office provides guidance on the EDR Plan ..................2
III.  Plaintiff files a request for counseling under Chapter X of the EDR Plan and
makes a report of wrongful conduct under Chapter IX of the Plan ...................2
IV.  Plaintiff requests mediation, which results in Plaintiff obtaining a Fourth Circuit
clerkship, and she withdraws her Chapter X claim.............................................3
V.   The Investigation did not support any findings of gender discrimination, sexual
harassment, or retaliation, and Chief Judge Gregory took appropriate action....3

LEGAL STANDARD.................................................................................................4

ARGUMENT .............................................................................................................5
I.    The Court Should Decide Defendants' Motions to Dismiss Prior to Considering
Plaintiff's Motion for Partial Summary Judgment.............................................5
    A.   Immunity Defenses require dismissal of this case ...................................5
    B.   Absolute Immunity applies to Chief Judge Gregory's adjudicatory decisions........6
    C.   Qualified Immunity bars Plaintiff's claims since she has not plausibly
alleged a violation of clearly established constitutional law ..................6
        1.   Plaintiff fails to allege plausibly that Defendants personally
violated her constitutional rights................................................6

i

2.       Plaintiff fails to define the constitutional right with the appropriate level of specificity.................................................................................8

3.       The judicially-implied *Bivens* remedy should not be extended to this new context because special factors caution hesitation ......................9

      a.     The Supreme Court has made clear that the *Abassi* framework now controls .......................................................................9

      b.     This case presents a "new *Bivens* context." ...................................10

      c.     Special factors counsel hesitation ...................................................11

            (1)     The EDR Plan provides an alternative, existing process that precludes implication of a *Bivens* remedy .....12

            (2)     Judicial employment counsels hesitation...........................15

            (3)     Judicial independence counsels hesitation.........................16

            (4)     Judicial Council of the Fourth Circuit and Judicial Conference of the United States policies counsel hesitation ...............................................................................18

            (5)     The role of the General Counsel in promoting compliance with the law counsels hesitation .......................................18

      d.     *Wilcox v. Lyons* forecloses Plaintiff's retaliation claim................19

D.     Fourth Circuit precedent forecloses Plaintiff's statutory argument regarding 42 U.S.C. § 1985(3) and § 1986 ..................................................................20

E.     The Evidentiary Record Does Not Support Entry of Summary Judgment in Plaintiff's Favor ...........................................................................................21

      1.       The First Assistant did not harass or discriminate against Plaintiff, and the Defender responded promptly and appropriately........................21

      2.       The Non-Employer Defendants did not violate any constitutional, statutory, or administrative rights afforded to Plaintiff and acted appropriately without any discriminatory or retaliatory animus...............21

      a.     Employment discrimination claims cannot be imputed to the Non-Employer Defendants ...................................................21

      b.     Circuit Executive Ishida and Chief Judge Gregory properly administered the EDR Plan, and Plaintiff was not denied any "rights" under the EDR Plan.........................................................22

      c.     General Counsel Walter has no constitutional, statutory, or administrative relationship with Plaintiff and provided sound legal advice without discriminatory or retaliatory motive ..............................................................................................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby Inc.*,
   477 U.S. 242 (1986) ........................................................................................ 4
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 5, 6, 7, 8
*Attkisson v. Holder*,
   925 F.3d 606 (4th Cir. 2019) ...................................................................... 18, 19
*Blankenship v. McDonald*,
   176 F.3d 1192 (9th Cir. 1999) ..................................................................... 15, 16
*Booker v. South Carolina Dept. of Corrections*,
   855 F.3d 533 (4th Cir. 2017) ............................................................................ 8
*Bush v. Lucas*,
   462 U.S. 367 (1983) .................................................................................. 13, 16
*Butz v. Economou*,
   438 U.S. 478 (1978) ......................................................................................... 6
*Davis v. Passman*,
   442 U.S. 228 (1979) .................................................................................... 9, 22
*Dotson v. Griesa*,
   398 F.3d 156 (2d Cir. 2005) ......................................................... 13, 15, 16, 18
*Drone v. Duff*,
   2017 WL 6383607 (E.D. Va. Dec. 14, 2017) ................................................. 15
*Grieveson v. Anderson*,
   538 F.3d 763 (7th Cir. 2008) ........................................................................... 7
*Hall v. Clinton*,
   235 F.3d 202 (4th Cir. 2000) ..................................................................... 14, 20
*Hernandez v. Mesa*,
   140 S.Ct. 735 (2020) .................................................................................. 10, 13
*In Re Golinski*,
   587 F.3d 956 (9th Cir. 2009) ..................................................................... 16, 17
*Jacobs v. N.C. Admin. Office of the Courts*,
   780 F.3d 562 (4th Cir. 2015) ............................................................................ 4
*Kisela v. Hughes*,
   -- U.S. --, 138 S.Ct. 1148 (2018) ...................................................................... 8
*Kostishak v. Mannes*,
   145 F.3d 1325  (4th Cir. 1998) ...................................................................... 15
*Lee v. Hughes*,
   145 F.3d 1272 (11th Cir. 1998) .................................................................. 15, 16
*Marcilis v. Township of Redford*,
   693 F.3d 589 (6th Cir. 2012) ......................................................................... 7, 8
*Matthews v. Bergdorf*,
   889 F.3d 1136 (10th Cir. 2018) ........................................................................ 8

*Mirmehdi v. United States,*
    689 F.3d 975 (9th Cir. 2012) ................................................................. 14

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ............................................................................... 5

*Pahls v. Thomas,*
    718 F.3d 1210 (10th Cir. 2013) ............................................................. 8

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) ............................................................. 7

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) ......................................................................... 12, 13

*Semper v. Gomez,*
    747 F.3d 229 (3d Cir. 2014) .............................................................. 15, 16

*Trerice v. Summons,*
    755 F.2d 1081 (4th Cir. 1985) ............................................................. 20

*Tun-Cos v. Perrotte,*
    922 F.3d 514 (4th Cir. 2019) ......................................................... passim

*United States v. Stanley,*
    483 U.S. 669 (1987) ............................................................................. 12

*Vega v. United States,*
    881 F.3d 1146 (9th Cir. 2018) ............................................................. 13

*Ward v. Johnson,*
    690 F.2d 1098 (4th Cir. 1982) ............................................................... 6

*Wilcox v. Lyons,*
    970 F.3d 452 (4th Cir. 2020) ............................................................... 19

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ............................................................................. 13

*Wilson v. Layne,*
    526 U.S. 603 (1999) ............................................................................... 8

*Ziglar v. Abassi,*
    137 S.Ct. 1843 (2017) .................................................................... passim

**Statutes**

18 U.S.C. § 3006A(g)(2)(A) ................................................................... 15
42 U.S.C. § 1985(3) ............................................................................ ii, 20
U.S.C. § 1985(1) .................................................................................. 20

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................. 4

## INTRODUCTION

Plaintiff has moved for partial summary judgment (ECF No. 76) (hereinafter "PSJ") alleging constitutional torts, arising out of her federal employment, against Judicial Branch officials in their individual capacities. Plaintiff filed her motion notwithstanding that the individual-capacity Defendants, Chief Judge Roger L. Gregory, Circuit Executive James N. Ishida, and General Counsel Sheryl L. Walter ("Non-Employer Defendants" or "Defendants"), have fully briefed motions to dismiss (ECF No. 36-41, 53) which raise the defenses of absolute and qualified immunity, pending before the Court, and those motions, if granted, would dispose of all of Plaintiff's claims. The Defendants respectfully request that the Court decide the pending Motions to Dismiss prior to deciding Plaintiff's Motion for Partial Summary Judgment. If, however, the Court reaches Plaintiff's summary judgment motion, the Court should deny it for the reasons stated herein and in Defendants' Memoranda in Support of their Motions to Dismiss (ECF Nos. 36-41, 53), which are hereby incorporated by reference.

## FACTS

Because this response addresses only the claims against Chief Judge Gregory, Circuit Executive Ishida, and General Counsel Walter, this statement of facts will focus on the facts pertaining to those claims and incorporate by reference the statement of facts that address the events that Plaintiff alleges occurred in the Federal Defender's Office–Western District of North Carolina (FDO-WDNC) as set forth in Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 78), at 1-8, with Government Exhibits (GE) A-F.

### I. Plaintiff complains of sexual harassment, and an investigation is initiated

On August 10, 2018, Plaintiff, in an email to Defender Martinez, stated for the first time that First Assistant J.P. Davis had sexually harassed her. Declaration of Defender Martinez (GE

C) ¶¶ 79-80. The Defender promptly reported the allegation, pursuant to the Fourth Circuit's Employment Dispute Resolution ("EDR") Plan,[1] to Circuit Executive Ishida, and Chief Judge Gregory directed an investigation. GE C ¶¶ 80-83.

## II.     The General Counsel's Office provides guidance on the EDR Plan

In August, 2018, General Counsel Walter, Administrative Office of U.S. Courts ("AO"), became aware that the Fair Employment Practices Officer ("FEPO") was assisting Plaintiff after she alleged sexual harassment by a co-worker. Declaration of General Counsel Sheryl Walter (GE G) ¶¶ 3-4. General Counsel Walter was informed that the FEPO was also directly, or indirectly, communicating with Plaintiff's employer (FPD-WDNC). GE G ¶¶ 3-4. The FEPO's dual role created confusion. GE G ¶¶ 3-4. Accordingly, with the consent of the AO's Deputy Director, the Office of General Counsel ("OGC") and the Office of Fair Employment Practices ("OFEP") agreed that OGC would be the sole AO office responsible for advising Plaintiff's **employer** (FPD-WDNC) of its legal responsibilities. Declaration of Deputy Director Lee Ann Bennett (GE H), ¶ 3; GE G ¶¶ 3-4. The OGC never directed that the OFEP not communicate with Plaintiff. GE G ¶ 5; GE H ¶ 5.

## III.    Plaintiff files a request for counseling under Chapter X of the EDR Plan and makes a report of wrongful conduct under Chapter IX of the Plan

On September 10, 2018, Plaintiff submitted both a request for counseling under Chapter X of the Plan and a report of wrongful conduct under Chapter IX of the EDR Plan, naming both the First Assistant and Defender Martinez as violators of the Plan. Declaration of Circuit Executive James Ishida, (GE D) ¶ 4.

---

[1] The EDR Plan at issue in this case is the EDR Plan (November 2018), previously submitted to the Court as ECF No. 41-1, which is incorporated by reference. On September 14, 2020, the Fourth Circuit adopted a new EDR Plan, which largely parallels the Model EDR Plan that was adopted by the Judicial Conference of the United States in September 2019, previously submitted to the Court as ECF No. 76-2.

2

## IV.    **Plaintiff requests mediation, which results in Plaintiff obtaining a Fourth Circuit clerkship, and she withdraws her Chapter X claim**

On January 31, 2019, Plaintiff requested mediation under the Plan. GE D ¶ 19. Chief Judge Gregory instructed EDR Coordinator Ishida to do whatever he could to facilitate finding Plaintiff an appointment outside of the FDO-WDNC. GE D, ¶ 21. The Mediator offered to help Plaintiff secure a Fourth Circuit clerkship, and after the meeting, the Mediator went to Richmond, Virginia, to advocate on Plaintiff's behalf for a clerkship. Compl. ¶¶ 456-57. Later that week, the Mediator told Plaintiff that a Fourth Circuit judge had an available term clerkship position and wanted to interview Plaintiff. *Id.* ¶ 458. On March 8, 2019, Plaintiff interviewed with the Fourth Circuit Judge, who offered her a clerkship. Plaintiff accepted the offer as a "negotiate[ed] . . . resolution" of her Chapter X claim. *Id.* ¶¶ 7, 459. On March 11, 2019, Plaintiff sent an email to the Circuit Executive withdrawing her Chapter X claim. GE D ¶ 22. On March 18, 2019, Plaintiff transitioned to her Fourth Circuit clerkship. GE A ¶ 50.

## V.    **The Investigation did not support any findings of gender discrimination, sexual harassment, or retaliation, and Chief Judge Gregory took appropriate action**

The facts uncovered during the investigation into Plaintiff's complaints did not support a finding of gender discrimination, sexual harassment, or retaliation but identified management and communication issues, GE C ¶ 98, resulting in the following findings (among others):

- "The mentor/mentee relationship seemed to have started out well enough. [Plaintiff] and Mr. Davis exchanged many text messages after hours that showed a friendly relationship that did not appear to be inappropriate in nature." p. 13.
- "Throughout my investigation I could not find a time that [Plaintiff] had declined Mr. Davis' invitation to lunch until the end of their mentor/mentee relationship. I also did not find any indication [Plaintiff] had ever expressed her uneasiness about these lunch meetings." p. 13.
- Regarding First Assistant Davis's May 18, 2018 e-mail: "I do not believe there was an intention of sexual harassment when he sent the email." p. 13.
- First Assistant Davis and Plaintiff "had a heated exchange regarding a conflict in schedule with a presentence interview and a review of evidence in a case [Plaintiff] had been second chair on. He felt she was not honoring the commitment she made

to attend the presentence interview by knowingly scheduling review of evidence at the same time. This upset [First Assistant Davis] . . . . [Plaintiff] took this exchange to be that [First Assistant Davis] had berated her. I believe this was over exaggerated." p. 13.

- Plaintiff has also stated she was promised the Assistant Federal Defender position in her offer letter dated March 24, 2017. This letter clearly states it was expected she would *transition* to an Assistant Federal Defender position. The letter did not outline a timeline or place an expected date of when this would occur. The offer letter also did not mention any promise of promotion. p. 9.
- Plaintiff's "locality pay was never removed by the Federal Defender." p. 8.
- Plaintiff "states she was never granted an annual performance review. According to the DOCS manual, there are no formal policies governing performance evaluations of employees in federal defender organizations." p. 9.
- "I do not find any merit to [Plaintiff's] claim of regression of job duties or her intentionally not being invited to participate in moots." p. 9.
- "I do not see a case for retaliation based on my investigation . . . ." p. 11.
- Plaintiff "has experienced in her mind sexual harassment although the facts discovered in this case find this claim to be very flimsy."
- "The investigation has also found [Plaintiff] has also exploited poor judgement and decision-making skills . . . to attain her goal of a transfer to Asheville."

GE C, ¶ 105.[2] Based on the investigation, Chief Judge Gregory took appropriate action as to Defender Martinez, *id*. C ¶ 101, who took appropriate action as to First Assistant Davis, *id*. ¶ 99.

## **LEGAL STANDARD**

A district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). The evidence must be viewed in favor of the nonmovant, and all "justifiable inferences" must be drawn in its favor. *Id*. at 255; *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).

---

[2] The Investigative Report contains confidential information pertaining to the Chapter IX Report of Wrongful Conduct and, accordingly, the complete Investigative Report is not provided to the Court at this time. Should the Court want a copy provided, Defendants request that the Court order the Investigative Report to be filed under seal.

**ARGUMENT**

This case presents novel *Bivens* claims against the Chief Judge of a Circuit Court of Appeals, a Circuit Executive, and the General Counsel of the Administrative Office of U.S. Courts. The Plaintiff's claims differ in a constitutionally meaningful way from previous Supreme Court *Bivens* decisions, present a "new *Bivens* context," and special factors counsel hesitation in implying a *Bivens* remedy. *Ziglar v. Abassi*, 137 S.Ct. 1843 (2017); *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019). For the reasons that follow, Plaintiff's novel *Bivens* claims must be dismissed. Additionally, absolute and qualified immunity bar this lawsuit.

**I.     The Court Should Decide Defendants' Motions to Dismiss Prior to Considering Plaintiff's Motion for Partial Summary Judgment**

     **A.      Immunity Defenses require dismissal of this case.**

In their motions to dismiss (ECF No. 36-41, 53), Defendants have raised the defenses of absolute and qualified immunity. Those defenses should be decided prior to summary judgment. The immunity defense is "an entitlement not to stand trial *or face the other burdens of litigation*" prior to "the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added). "Litigation . . . exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government," and a defendant entitled to dismissal on the pleadings should "be free from the burdens of discovery" and the "concerns of litigation." *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009). Courts "are impelled to give real content to the concept of qualified immunity for high-level officials who must be neither deterred nor detracted from the vigorous performance of their duties." *Id.* at 686.

**B.** **Absolute Immunity applies to Chief Judge Gregory's adjudicatory decisions.**

Plaintiff argues that Chief Judge Gregory is not entitled to absolute immunity because the EDR Plan involved an administrative process. PSJ 21-22. However, Chief Judge Gregory's decisions to deny, in part, Plaintiff's motion for a continuance and defer ruling on her motion for disqualification are entitled to absolute immunity because he was performing a "quasi-judicial function," *Ward v. Johnson*, 690 F.2d 1098, 1105 (4th Cir. 1982) (*en banc*), and his adjudicatory decisions were "functionally equivalent" to an Article III judge's rulings on similar motions, *Butz v. Economou*, 438 U.S. 478, 512-13 (1978). For the reasons set forth in his memoranda in ECF No. 41, pp 20-22, and ECF No. 53, pp 13-14, Plaintiff's argument should be rejected.[3]

**C.** **Qualified Immunity bars Plaintiff's claims since she has not plausibly alleged a violation of clearly established constitutional law.**

> 1. Plaintiff fails to allege plausibly that Defendants personally violated her constitutional rights.

Because officials must have clear notice that their own specific actions are unconstitutional before they can be held liable in damages, *see Iqbal*, 556 U.S. at 676, step one of the qualified immunity test asks whether the plaintiff has plausibly alleged the violation of a right. *Id.* Specifically, in a *Bivens* action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *id.*, because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," *id.* at 677, and a plaintiff must plausibly allege facts as to each defendant's particular actions.

---

[3] Chief Judge Gregory is not asserting that absolute immunity applies to his decisions to order an investigation, Compl. ¶ 484, or to direct the EDR Coordinator to assist Plaintiff with a transfer, *id.* ¶ 410, but those allegations, which are favorably to Plaintiff, fail to plausibly allege a violation of a clearly established constitutional right. Plaintiff has failed to plausibly allege any other basis for liability.

6

Plaintiff cannot overcome qualified immunity because she fails to plausibly allege that each of the Defendants has ***personally*** violated her constitutional rights. As to Chief Judge Gregory, Plaintiff alleges that he granted, in part, her request to extend the counseling period, Comp. ¶¶ 287, 388, that he directed the EDR Coordinator to lend assistance with her transfer request, *id.*, ¶ 410, that he did not grant her motion for disqualification *id.*, ¶ 453, and that he ordered an investigation, *id.*, ¶ 484. As to General Counsel Walter, Plaintiff alleges she reversed a decision of one of her attorneys and authorized the FEOO to talk with Plaintiff, *id.*, ¶ 234, and that she suggested to the EDR Coordinator that he receive the investigative report rather than the Defender, *id.,* ¶ 234. As to Circuit Executive Ishida, she alleges that he communicated with her and attempted to assist her and did not disclose the investigative report to her, *id.,* 398. *See* GE I (Chart of Plaintiff's Allegations). None of those actions constitutes a violation of any constitutional right, and Plaintiff's pleading insufficiency is not remedied by reference to Judiciary policy, codes of conduct, or other non-constitutional sources. Whether viewed as "an unadorned, the-defendant-unlawfully harmed-me accusation," *Iqbal*, 556 U.S. at 678, or an impermissible theory of "supervisory liability," *see id.* at 677, Plaintiff's allegations are insufficient to overcome qualified immunity and to establish a plausible claim that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

To the extent Plaintiff attempts to generally implicate the Defendants, a complaint that contains "only collective references to defendants does not adequately state a *Bivens* claim . . . ." *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)); *see also Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). When a complaint, like Plaintiff's, "makes only categorical references to 'Defendants,'" it fails to "'allege, with particularity, facts that demonstrate what *each* defendant

did to violate the asserted constitutional right."' *Marcilis*, 693 F.3d at 596-97; *see also Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (complaint's "undifferentiated contention that 'defendants' infringed" plaintiff's rights failed to state a claim); *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) ("Before a court may undertake the proper analysis, the complaint must 'isolate the allegedly unconstitutional acts of each defendant'; otherwise the complaint does not 'provide adequate notice as to the nature of the claims against each' and fails for this reason."). Here, Plaintiff's collective allegations regarding Defendants do not state plausible claims.

Similarly, *Bivens* liability cannot be established solely on a theory of *respondeat superior*. *Iqbal*, 556 U.S. 676 ("Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Because vicarious liability is inapplicable to *Bivens* suits, a plaintiff must plead that the Government-official defendant, through the official's own individual actions, violated the Constitution. Here, Plaintiff offers no specific allegations against each Defendant that plausibly state a constitutional violation.

2.  Plaintiff fails to define the constitutional right with the appropriate level of specificity.

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, -- U.S. --, 138 S.Ct. 1148 (2018) (per curiam). Similarly, the Fourth Circuit has instructed, "we must first define the right at the 'appropriate level of specificity,'" *Booker v. South Carolina Dept. of Corrections*, 855 F.3d 533, 539 (4th Cir. 2017) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Plaintiff's generalized proposition that Defendants should know what sexual harassment or discrimination is does not define the issue at the appropriate level of specificity. *See Booker*, 855 F.3d at 539 (citing *Wilson*, 526 U.S. at 615).

Specifically, Plaintiff has failed to allege with the appropriate specificity that Chief Judge Gregory violated Plaintiff's constitutional rights in granting, in part, her motion for extension of the counseling period, considering her disqualification motion, or promptly directing an investigation once he learned of her allegations. Similarly, Plaintiff has not alleged with specificity that General Counsel Walter, in providing advice regarding who should advise the employer and how the investigative report should be handled, violated Plaintiff's constitutional rights. And with regard to Circuit Executive Ishida, Plaintiff has failed to show that any of his actions as EDR Coordinator, while communicating with her and attempting to assist her, violated her constitutional rights. Tellingly, Plaintiff cites no controlling case or consensus of cases with the requisite specificity; accordingly, Defendants are entitled to qualified immunity.

3.    The judicially-implied *Bivens* remedy should not be extended to this new context because special factors caution hesitation.

Counts One and Two allege novel *Bivens* claims that differ in a constitutionally meaningful way from previous Supreme Court *Bivens* cases, and special factors counsel hesitation in implying a *Bivens* cause of action. *Abbasi*, 137 S.Ct. 1843. Because Plaintiff has failed to state a cause of action, Plaintiff's claims must be dismissed.

a.    *The Supreme Court has made clear that the Abassi framework now controls.*

Plaintiff argues that Defendants are liable under *Davis v. Passman,* 442 U.S. 228 (1979) because the Fifth Amendment provides a cause of action for sex discrimination, PSJ 13, and the Supreme Court "has never overruled Davis," PSJ 14. The Supreme Court has, however, emphasized that *Davis* was "decided before the Court's cautionary instructions with respect to *Bivens* suits," and "the *Chappell* framework . . . now controls." *Abbasi*, 137 S.Ct. at 1859. Building on *Chappell v. Wallace,* and other post-*Davis* case, the *Abassi* Court established a

"framework that now must be applied in determining whether a *Bivens* remedy is available against federal officials." *Tun-Cos*, 922 F.3d at 522. "Under the *Abassi* framework, a court must determine (1) whether the case presents a "new *Bivens* context" and (2) if the context is new, whether there are "special factors *counseling hesitation* in the absence of affirmative action by Congress." *Tun-Cos*, 922 F.3d at 522 (emphasis in original).

        b.        *This case presents a "new Bivens context."*

Application of the *Abassi* framework reveals that Plaintiff's claims differ in constitutionally meaningful ways from *Davis*, and therefore, present a "new *Bivens* context." While *Davis* dealt with a Congressman-employer, this case deals with "a new category of defendants" – non-employer Judiciary officials – a Circuit Chief Judge presiding over Plaintiff's EDR claim, a Circuit Executive coordinating the EDR process, and the AO's General Counsel providing legal guidance on the EDR process. If a "new class of defendants" is at issue, as in this case, the claim arises in a "new *Bivens* context," and the Court must consider special factors. *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020).

Because "the new-context inquiry is easily satisfied," *Abassi,* 137 S.Ct. at 1865, and "even a modest extension is still an extension," *Abassi*, 137 S.Ct. at 1864, each of the below constitutionally meaningful differences, in addition to the "new class of defendants," demonstrate that Plaintiff's claims present a "new *Bivens* context," *Abassi,* 137 S.Ct. at 1865; *Tun-Cos,* 922 F.3d 523, and require the Court to determine whether special factors counsel hesitation before implying a *Bivens* remedy: (1) rank of officers involved (in *Davis*, the case involved a Congressman, whereas this case involves the Circuit Chief Judge, Circuit Executive, and General Counsel); (2) different constitutional rights at issue (in *Davis*, the case involved a Fifth Amendment Due Process Clause claim, whereas this cases also involves claims under the Fifth

Amendment Equal Protection Clause); (3) the statutory or legal mandate under which the officials operated (unlike *Davis,* this case involves the Fourth Circuit's EDR Plan); (4) the Civil Service Reform Act ("CSRA") (in *Davis*, the Court did not address the CSRA, whereas in this case the CSRA is directly at issue as supported by Second, Fourth, Ninth, and Eleventh Circuit decisions); (5) judicial independence (in *Davis,* the case involved an internal Congressional personnel decision with no risk to judicial independence, whereas in the present case the Plaintiff argues that the Court should invalidate the Fourth Circuit's EDR Plan (and by extension the Model EDR Plan on which all Circuit EDR Plans are based) which manages internal judiciary matters); (6) policy challenges (in *Davis*, the case did not present policy issues, whereas in the present case Plaintiff challenges the Fourth Circuit's EDR Plan by seeking to hold the Chief Judge, Circuit Executive, and General Counsel personally liable in damages for the policies of the Judicial Council of the Fourth Circuit and Judicial Council of the United States); (7) the role of the General Counsel in promoting compliance with the law (in *Davis*, the role of the General Counsel was not at issue, whereas in the present case the Plaintiff seeks to convert the relationship between the General Counsel and the Judiciary into a basis for *Bivens* liability), and (8) the availability of remedies under the EDR Plan (in *Davis*, it was "damages or nothing," whereas here Plaintiff had ample remedies under the EDR Plan. Each of these differences is constitutionally meaningful, and this Court should not imply a *Bivens* remedy because "the new-context inquiry is easily satisfied," *Tun-Cos*, 922 F.3d at 523, and "'even a modest extension is still an extension' for purposes of the new-context analysis." *Tun-Cos*, 922 F.3d at 525 (quoting *Abbasi*, 137 S.Ct. at 1864).

c. *Special factors counsel hesitation.*

Because Plaintiff's constitutional claims "meaningfully differ" from the claims in *Davis*, the Court must proceed to determine whether special factors counsel hesitation before implying a

*Bivens* remedy. "In determining whether 'special factors' are present, [courts] focus on whether Congress *might doubt* the need for an implied damages remedy." *Tun-Cos*, 922 F.3d at 525 (quoting *Abbasi*, 137 S.Ct. at 1858) (emphasis added). Courts should not extend "the application of *Bivens* to [a] new context [if doing so] *causes [the court] to hesitate*, as it raise[s] the substantial question of whether Congress would want plaintiffs to have a money damages remedy against [federal officials]." *Tun-Cos*, 922 F.3d at 528 (emphasis added). Applying these standards, Plaintiff's arguments fail because there is strong reason to believe that "Congress *might doubt*" the need for an implied damages remedy, and extending this novel *Bivens* remedy "causes hesitation" as it raises substantial questions regarding separation of powers and whether Congress would want an unprecedented, novel money damages remedy against a Circuit Chief Judge, Circuit Executive, and the AO's General Counsel.

The only special factor that Plaintiff addresses is whether the EDR Plan provides an alternative, existing process precluding the implication of a *Bivens* remedy. Plaintiff argues that it does not because according to Plaintiff she had "no alternative form of judicial relief." PSJ 15.

> (1)     The EDR Plan provides an alternative, existing process that precludes implication of a *Bivens* remedy.

Although "an alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action,' *Abassi*, 137 S.Ct. at 1858, the absence of a damages remedy standing alone is insufficient to extend *Bivens* liability. *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."); *United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] an 'adequate' federal remedy for his injuries"). As the Fourth Circuit explained:

The plaintiffs are correct that the protections provided by the INA do not include a money damages remedy . . . . But this misses the point, for the relevant question "is not what remedy the court should provide for a wrong that would otherwise go unredressed" but instead "whether an elaborate remedial system . . . should be augmented by the creation of a new judicial remedy." *Bush v. Lucas*, 462 U.S. 267, 388 (1983) . . .

*Tun-Cos*, 922 F.3d 527.

Plaintiff's argument that a "judicial remedy" must be provided has been expressly rejected as a basis for implying a *Bivens* cause of action because a judicially-created cause of action "is not an automatic entitlement," *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007), and "even in the absence of an alternative [remedial scheme]," courts must "pay[] particular heed . . . to any special factors counseling hesitation." *Id.* As the Court stated in *Hernandez*:

Congress's decision not to provide a judicial remedy does not compel us to step into its shoes. "The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Schweiker*, 487 U.S. at 421–422 . . . .

*Hernandez,* 140 S.Ct. at 750.

Moreover, the Supreme Court has not limited "alternative, existing process" to a "judicial remedy" but rather "the question [is] whether *any* alternative, existing process for protecting the interests amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550 (emphasis added). "Alternative, existing process" includes "administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). The Fourth Circuit's EDR Plan provides an existing, alternative process. *See* Plan, § 12.

Plaintiff's belief that she would not have been provided meaningful remedies is entirely speculative because she withdrew[4] her claim before the remedial phase. Her belief is predicated

---

[4] The failure to exhaust remedies under the EDR Plan is a basis in itself for denying Plaintiff's motion. *Dotson v. Griesa*, 398 F.3d 156, 161 n.2 (2d Cir. 2005) (a plaintiff who failed to pursue relief under an EDR Plan cannot bring a *Bivens* due process challenge "if the plaintiff failed to avail himself of the very administrative procedures he attacks

on a misunderstanding of rights and available options for resolution in the counseling phase under Chapter X, *see* EDR Plan, ¶ 8, compared to rights, remedies, and review available during the formal complaint phase of the EDR Plan, *see* EDR Plan, ¶¶ 10-13. In the mediation phase, the parties are engaged in finding a voluntary, mutually satisfactory resolution to the dispute and may voluntarily agree to a resolution but cannot be forced to take particular action. In contrast, during the formal complaint phase, after adjudication of a formal complaint, a chief judge or designated judicial officer could *order any "make-whole" remedies* contemplated under the EDR Plan against any employing office, including a Federal Public Defender organization, *see* EDR Plan, ¶¶ 10.B.e. & 12. Specifically, the Chief Judge or designated judicial officer "acting pursuant to ¶ 10 or ¶ 11 of this Plan," who found a "substantive right protected by this Plan has been violated," may "[o]rder a necessary and appropriate remedy." EDR Plan, ¶ 10. Remedies "include, but are not limited to" placement, promotion, back pay and associated benefits, records modification and/or expungement, equitable relief, and other remedies. EDR Plan, ¶ 12.

Plaintiff argues that a judicial officer may not order remedies against an FDO. PSJ 10. But the Proceedings of the Judicial Conference of the United States at 25 (Sept. 2010 (JCUS), which she cites, say otherwise. It states that "Judges presiding in EDR matters may not compel the participation of or impose remedies upon agencies or entities *other than the employing office*," (emphasis added), indicating that the EDR Judicial Officer has the power to impose remedies on the employing office, which in this case is the FDO-WDNC. Similarly, the Employment Dispute Resolution Guide – Bench Book for Judges, which served as an interpretive guide for the relevant

---

as inadequate"); *cf. Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) (declining to imply a *Bivens* remedy when plaintiffs have sought alternative relief "through not one but two different remedial systems"). "The purpose of denying a [*Bivens*] private cause of action to federal employees is to ensure that they do not bypass comprehensive and carefully-balanced statutory and administrative remedies in order to seek direct judicial relief." *Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000) (citation omitted). This is especially true in this case where Plaintiff withdrew her Chapter X claim after obtaining a Fourth Circuit clerkship and did not file a formal complaint under the EDR Plan.

Model EDR Plan, provides that a judicial officer "[r]etain[s] jurisdiction over the complaint until court officials fully implement the resolution and any relief ordered," §§ 12.24(A)(2)(c), and the judicial officer may "[i]mpose sanctions for failure to do so," § 14.04(B)(2). Also, if a Defender failed to follow an EDR Order, the Defender can be removed from office for neglect of duty. 18 U.S.C. § 3006A(g)(2)(A). Plaintiff does not cite to a single instance where a Judiciary employing unit, after adjudication of a formal EDR Complaint, failed to follow the order of the Judicial Hearing Officer, because there are none. *See* GE 5, ¶16.

Plaintiff does not distinguish the Second, Third, and Fourth Circuit decisions which have found that circuit EDR Plans provide a meaningful relief and preclude a *Bivens* action. *Semper v. Gomez*, 747 F.3d 229, 243 (3d Cir. 2014); *Dotson*, 398 F.3d at 171; *Kostishak v. Mannes*, 145 F.3d 1325, *2-7 (4th Cir. 1998) (unpub.); *see also Drone v. Duff*, 2017 WL 6383607 *2 (E.D. Va. Dec. 14, 2017) (USDC-EDVA's EDR Plan provided meaningful review by judicial officers).[5]

(2)     Judicial employment counsels hesitation.

The Second, Third, Ninth, and Eleventh Circuits have determined that Judiciary Branch employment is a special factor that counsels hesitation because "Congress's omission of review rights [under the CSRA] for judicial branch employees was not inadvertent and, therefore, preclude[s] pursuit of a *Bivens* claim." *Dotson*, 398 F.3d at 169 (rejecting probation officer's *Bivens* claim for racial discrimination); *Semper*, 747 F.3d at 237 (in rejecting probation officer's *Bivens* claim, "it is undisputed that the CSRA precludes current or former federal employees from bringing a *Bivens* damages action for alleged constitutional violations arising out of the

---

[5]The Ninth and Eleventh Circuits have found it unnecessary to reach the issue of the adequacy of the EDR Plan because the Civil Service Reform Act (CSRA) is a remedial scheme, and Congress' omission of Judiciary employees was not inadvertent. *Blankenship v. McDonald*, 176 F.3d 1192, 1194-96 (9th Cir. 1999) (finding CSRA as adequate remedial scheme); *Lee v. Hughes*, 145 F.3d 1272, 1273-77 (11th Cir. 1998) (same).

employment context"); *Blankenship*, 176 F.3d at 1195 (denying federal court reporter's *Bivens* action holding "that the CSRA precludes a *Bivens* remedy in this case"); *Lee*, 145 F.3d at 1276 (CSRA precludes probation officer's *Bivens* claim).  Additionally, although not dealing with a Judiciary employee, the Supreme Court has rejected a damages remedy for federal employees whose claims arise out of a federal employment relationship.  *Bush v. Lucas*, 462 U.S. 367, 368 (1983).  This Court should follow those courts.

(3)   Judicial independence counsels hesitation.

The Federal Judiciary has long taken the position that the Judicial Branch must have control over its employees and workplace management to ensure both the independence, and the appearance of independence, of its decisions.  *Dotson*, 398 F.3d at 175.  The "judiciary's internal governance system is a necessary corollary to judicial independence."  *Id. (internal citations omitted).*  "Congress has indicated on a number of occasions that employment disputes with the Judicial Branch implicate a special set of circumstances, including the doctrine of separation of powers and the protection of the independent judiciary."  *Semper*, 747 F.3d at 240.  Congressional action in withholding CSRA review rights from judicial branch employees was not inadvertent, *Dotson*, 398 F.3d at 169, and, in fact, the CSRA's history evidences Congress's deliberate decision to exclude judicial branch employees from the CSRA's review process, *Dotson*, 398 F.3d at 170; *In Re Golinski*, 587 F.3d 956, 962 (9th Cir. 2009) (EDR Proceeding) ("History reveals that Congress intended the Judiciary to have . . . the ability to manage its own personnel and adjudicate workplace complaints.").

"Congress initially considered extending the [Congressional Accountability Act's (CAA's)] coverage to employees of the judicial branch but, mindful of the importance of judicial autonomy, ultimately decided against such action."  *Dotson*, 398 F.3d at 173.  "The Judicial

Conference of the United States submitted [a] report in 1996, telling Congress: 'The judicial branch is committed to providing the general protections of the CAA laws in a manner that preserves judicial independence and the decentralized administration of the federal courts.'" *In Re Golinski*, 587 F.3d at 962 (quoting Judicial Conference of the United States, Study of Judicial Branch Coverage Pursuant to the Congressional Accountability Act of 1995 (Study) 2-3 (1996)). "As part of that commitment, the Judicial Conference reported that it was developing 'a plan to provide the rights, protections, and remedies similar to the CAA.'" *In re Golinski*, 587 F.3d at 963 (quoting Study at 15). That Plan became the Model EDR Plan, which the Fourth Circuit adopted.

On June 20, 2018, the Senate Judiciary Committee held a hearing that addressed Judiciary workplace misconduct, sexual harassment, and EDR Plans (including remedies). Senate Judiciary Committee Hearing Confronting Sexual Harassment and Other Workplace Misconduct in the Federal Judiciary, 115 Cong. (June 20, 2018), https://www.judiciary.senate.gov/meetings/confronting-sexual-harassment-and-other-workplace-misconduct-in-the-federal-judiciary. As part of that hearing, Senator Grassley stated that Congress may have to take action to address sexual harassment in the Judiciary, *id*. at 1, in light of the CAA, *id*. at 4, to provide "meaningful remedies, *id*. at 2, to which Administrator Duff responded, describing the EDR process and Judiciary improvements to it, and the handling of misconduct within the Judiciary, *id*. at 18-28. When Senator Tillis raised the possibility of congressional action, Director Duff responded that such action was "unnecessary," "with regard to misconduct, we have a very healthy review system," and for Congress to interfere with the independence of the Judiciary would be "unconstitutional," *id.* at 25-26. This Senate Judiciary Committee hearing brings into sharp focus the separation of powers issue and highlights why Congress has not attempted to dictate internal Judiciary personnel practices.

17

In the aftermath of the hearing, Congressional silence is relevant and telling, *see Abassi*, 137 S.Ct. at 1862, and demonstrates that the failure to enact legislation to provide for a damages remedy was "not inadvertent." *See Dotson*, 398 F.3d at 169 ("Congress's omission of review rights [under the CSRA] for judicial branch employees was not inadvertent and, therefore, preclude[s] pursuit of a *Bivens* action."). Congress, aware of the Judiciary's use of EDR Plans, has not taken further action to bring judiciary employees within a statutory scheme, but instead has allowed the Judiciary to implement EDR plans. Congressional action and inaction in this area underscores the separation of powers concerns regarding the independence of the federal judiciary. These concerns reveal that "Congress might doubt" the need for a *Bivens* remedy, *Tun-Cos*, 922 F.3d at 525, demonstrate that Congress' failure to provide a damages remedy was "more than inadvertent," and strongly counsel hesitation before creating a *Bivens* remedy. *Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019); *Dotson*, 398 F.3d at 171.

> (4) Judicial Council of the Fourth Circuit and Judicial Conference of the United States policies counsel hesitation.

Defendants incorporate by reference their argument (ECF No. 37 at 16-18; 39 at 17-18; 41 at 16-17) that Judicial Council of the Fourth Circuit and Judicial Conference of the United States policies counsel hesitation.

> (5) The role of the General Counsel in promoting compliance with the law counsels hesitation.

General Counsel Walter is responsible for rendering legal advice and opinions to courts and judges across the country on a wide array of administrative matters. Plaintiff's allegations attack General Counsel Walter for engaging in the very actions and functions General Counsel Walter and the OGC have been appointed to engage in. Recognizing a *Bivens* action to punish General Counsel Walter for providing legal guidance and advice would undermine the role of the

General Counsel and the entire OGC's role in promoting compliance with the law and providing legal guidance to courts, judges, the Judicial Conference and its committees on administrative matters. There is no context, private or public, in which anyone could file such an action against an attorney for providing legal guidance to their clients. Recognizing a *Bivens* action would undermine OGC's important role in ensuring compliance with the law within the Judiciary.

Each of the aforementioned special factors individually "causes hesitation" because Congress "might doubt" the wisdom of providing an unprecedented money damages remedy against a Circuit Chief Judge, Circuit Executive, and AO's General Counsel. When Congress has considered a matter and not taken action, then Congress's failure to provide a damages remedy is "more than inadvertent" and Congress's silence or failure to take action strongly counsels hesitation before courts create such a remedy. *Attkisson*, 925 F.3d at 621. Accordingly, in addition to the arguments set forth in the Defendants' memoranda (ECF No. 36, 38, 40, 53), Congressional silence and inaction and separation of powers concerns "counsel hesitation" because Congress "might doubt" the efficacy of a money damages remedy against high-level Judiciary officials.

*d. Wilcox v. Lyons forecloses Plaintiff's retaliation claim.*

Plaintiff's retaliation claim is foreclosed by *Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020), which held that a "'pure or generic retaliation claim' . . . even if premised on complaints of sex discrimination, is not cognizable under the Equal Protection Clause." *Id*. at 461. In *Wilcox*, like here, "the subject matter" of the plaintiff's complaint was "sex discrimination and harassment[.]" *Id*. at 459. But "[r]etaliation for reporting alleged sex discrimination imposes negative consequences on an employee because of the employee's report, not because of the employee's sex." *Id*. at 460. As in *Wilcox*, Plaintiff attempts to assert an equal protection claim by alleging that various defendants subjected her to retaliation, failed to take "immediate and effective action on her complaints," and failed to "provide her with meaningful review and remedies[.]" Compl.

19

¶ 498. Plaintiff's allegations do not implicate an impermissible classification or discrimination on the basis of her sex and fail to state a claim of retaliation under *Wilcox*.

### D.  **Fourth Circuit precedent forecloses Plaintiff's statutory argument regarding 42 U.S.C. § 1985(3) and § 1986 .**

The Fourth Circuit in *Hall* considered and rejected Plaintiff's statutory argument that repeal by implication is disfavored.  "Because 'Congress clearly intended the CSRA to be the exclusive remedy for federal employees,' the comprehensive grievance procedures of **the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions**." *Hall*, 235 F.3d at 206 (emphasis added).  After rejecting the very argument Plaintiff is making, the *Hall* Court announced a broad rule that bars both of Plaintiff's statutory claims:  "[W]e hold that Congress intended the CSRA would operate to the exclusion of **_all_** other statutory remedies for claims arising out of the federal employment relationship." *Hall*, 235 F.3d at 206 (emphasis added).  While *Hall* dealt with a 42 U.S.C. § 1985(1) claim, the Fourth Circuit's holding applies to **_all_** other statutory remedies for claims arising out of the federal employment relationship, *Id.*, 235 F.3d at 206 (emphasis added), including Plaintiff's 42 U.S.C. § 1985(3) and § 1986  claims, since they arose out of  Plaintiff's federal employment relationship.  *See* Compl. ¶ 1 ("This action seeks relief for the deprivation of constitutional rights suffered by Jane Roe ("Roe") during her employment as a federal judiciary employee.").  Similarly, Plaintiff's argument regarding her § 1986 claim is foreclosed by *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985), which holds that a cause of action under § 1986 is dependent upon the existence of a claim under § 1985; accordingly, the dismissal of Plaintiff's § 1985 claim requires the dismissal of her § 1986 claim.  *Trerice*, 755 F.2d at 1085.

**E.** **The Evidentiary Record Does Not Support Entry of Summary Judgment in Plaintiff's Favor.**

      1.    The First Assistant Did Not Harass or Discriminate Against Plaintiff, and the Defender Responded Promptly and Appropriately.

Defendants incorporate by reference § 3B1-3B2 from Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment. ECF Doc. 78, at 14-17.

      2.    The Non-Employer Defendants Did Not Violate Any Constitutional, Statutory, or Administrative Rights Afforded to Plaintiff and Acted Appropriately Without Any Discriminatory or Retaliatory Animus.

          *a.*    *Employment Discrimination Claims Cannot Be Imputed to the Non-Employer Defendants.*

Plaintiff predicates her claims against the Non-Employer Defendants on the premise that they "violated Roe's constitutional right to be free from sex discrimination in her federal employment." PSJ 1. As discussed, *infra*, Plaintiff has failed to demonstrate that she was subjected to "sex discrimination" or that the actions by the First Assistant could be imputed to WDNC-FPD. Without a finding that the First Assistant discriminated against Plaintiff and that the First Assistant's alleged harassment is legally imputable to FPD Martinez as head of the FDO-WDNC, it logically follows that the underlying alleged discrimination cannot be imputed to Non-Employer Defendants. Accordingly, Plaintiff's motion against the Non-Employer Defendants should be denied because Plaintiff failed to meet the requisite burden of proving that Plaintiff was subjected to discrimination by FDO-WDNC.

Moreover, constitutional law does not recognize a duty or relationship between the Non-Employer Defendants and Plaintiff in this specific context. To the extent Plaintiff alleges that "Defendants ratified, enforced, and amplified the discrimination . . ." by her employing office, PSJ 4, no constitutional authority imputes an employer's liability to non-employers, and certainly not in these circumstances to Chief Judge Gregory, Circuit Executive Ishida, or General Counsel

Walter, who were far removed from what allegedly occurred within the FPD-WDNC. Imputing an employer's liability to a non-employer would mean that the non-employer has the authority to engage in employment actions to correct and prevent future harassment in the workplace, which is not legally correct or factually supportable in this case.[6]

> b.     Circuit Executive Ishida and Chief Judge Gregory properly administered the EDR Plan, and Plaintiff was not denied any "rights" under the EDR Plan

Plaintiff claims that Defendants violated her "rights and protections" under the EDR Plan by not (1) disqualifying the Defender from representing his office, (2) providing a copy of the investigation report to Plaintiff, and (3) providing Plaintiff with a "remedy" she deemed to be "appropriate." Mot. 16-18. Again, the record refutes Plaintiff's arguments. Notably, at the time Plaintiff voluntarily dismissed her Chapter X claim, she was in the request for counseling phase of Chapter X. *See* EDR Plan ¶ 8. Plaintiff chose not to file a formal EDR complaint, request a hearing, or otherwise exhaust her administrative remedies. Thus, Plaintiff did not avail herself of the procedural rights and remedies afforded to a complainant who files a formal complaint, requests a hearing, and meets his or her burden of proving a violation by the employer. Her choice in not exhausting her administrative remedies under the EDR Plan has consequences, *see supra* n. 4, and precludes this Court from hypothesizing what Defendants might have done if Plaintiff had filed a formal complaint under the EDR Process.

---

[6] Plaintiff's reliance on *Davis* and *Beardsley v. Webb,* 526, 528 (4th Cir. 1994), both decided years before *Abassi*, is misplaced. Mot. 2-3. In *Davis*, the plaintiff, a congressional staffer, filed a sexual harassment claim against her employer-congressman after he terminated her employment. *Davis*, 442 U.S. at 228. Likewise, in *Beardsley*, the plaintiff, a sheriff's office employee filed a claim for sexual harassment against the alleged harassing supervisor and the sheriff. Here, the Non-Employer Defendants are not alleged to have engaged in the underlying sexual harassment, and it is undisputed that the Non-Employer Defendants have never had any employment relationship with Plaintiff.

As to the disqualification request, Plaintiff withdrew from the EDR process before her request was decided. Compl. ¶ 453. Moreover, Plaintiff failed to establish a reasonable basis for disqualification because, *inter alia*, the disqualification provision was designed to ensure that the EDR coordinator, mediator, and judicial officer, who are involved in the processing of the EDR complaint, were fair and impartial, not that the official defending the claim of discrimination against the employing office was impartial. GE E ¶ 7. The defending respondent or employing office, acting through its unit executive, is the opposing party in an EDR disputed matter, and thus acts and responds on behalf of the respondent or employing office, GE E ¶ 7, and it would be counter-productive and unfair to the respondent-employing office to decide otherwise.[7] GE G ¶ 15. Plaintiff has failed to point to a single provision of the Plan that required disqualification of the Defender from representing the interests of the FDO-WDNC.

Circuit Executive Ishida's decision not to provide Plaintiff with a copy of the investigative report was well-founded, GE D ¶¶ 10, 14-15, and consistent with OGC's guidance,[8] GE G ¶¶ 11, 13. Specifically, the EDR Plan did not provide that such a report must be produced to a complainant during the counseling phase. Additionally, the report contained confidential Chapter

---

[7] Further, because mediation expressly required a mediator to meet with the employee and the employing office to discuss alternatives for resolving an employment-related dispute, OGC always advised that both an employee and the employing office participate in mediation. The purpose of mediation was for a mediator to meet with the employee **and the employing office** to discuss alternatives for voluntary, mutually satisfactory resolution. Because the counseling and mediation stages of the Model EDR process were not adversarial and did not result in an adjudication of any EDR claims, an investigation was not necessary to achieve the goals of counseling and mediation. The focus of the counseling and mediation stages was on finding a mutually agreeable resolution, and not whether the employing office violated an employee's substantive rights under the EDR Plan.

[8] Under the 2018 Model EDR Plan, OGC has interpreted the wrongful conduct provisions under Chapter IX of the Model EDR Plan as a vehicle for encouraging employees to report discrimination, harassment, or retaliation in the workplace. The wrongful conduct reporting process had no formal procedures or time frames and was expressly not an initiation or filing of an EDR claim. Employees who reported wrongful conduct were not afforded make-whole remedies or a promise of corrective action. Instead, a report of wrongful conduct triggered the chief judge or appropriate unit executive to investigate whether the alleged individual(s) engaged in misconduct and determine whether a personnel or disciplinary action is warranted. The wrongful conduct investigation was an internal investigation into a confidential personnel matter of the alleged violator. Accordingly, OGC typically advised against EDR Coordinators and/or Chief Judges providing a copy of the investigation to anyone other than the employer responsible for assessing if, and what, personnel or disciplinary action the investigation supported. GE G.

IX personnel information. Furthermore, providing Plaintiff with a copy of the report would undermine the purpose of the counseling phase, which was to encourage open dialogue between the employee and the employing office to assess the potential for early resolution, GE D ¶ 14.

EDR Coordinators and/or the chief judges do not reveal the results of a wrongful conduct investigation to the parties under Chapter IX because it is considered an internal investigation into confidential personnel matters. GE E ¶ 5; GE G ¶¶ 11, 13. The Chief Judge determines whether it is necessary to take appropriate action based on that investigation, but the EDR Plan does not obligate disclosure of the investigation report, or even the results of the investigation. GE E ¶ 5. As the EDR Plan states, "All individuals involved in the investigation shall protect the confidentiality of the allegations of wrongful conduct to the extent possible. Information and records about allegations shall be shared on a need-to-know basis." EDR Plan, Ch. IX.

In contrast, had Plaintiff exhausted her administrative remedies by filing a formal complaint under ¶ 8 of Chapter X of the EDR Plan, she could have requested the investigative report, and Chief Judge Gregory, who had authority to "provide for such discovery and investigation as is necessary," could have provided it to her under ¶10.B.2. *See also* GE E ¶ 6. The Chapter X proceeding was terminated at Plaintiff's request before Chief Judge Gregory could enter an order based on the report of investigation.

> c.      *General Counsel Walter Has No Constitutional, Statutory, or Administrative Relationship with Plaintiff and Provided Sound Legal Advice Without Discriminatory or Retaliatory Motive.*

General Counsel Walter did not have an employment relationship with Plaintiff. The AO is a wholly separate entity from the FDO-WDNC. More specifically, the AO did not exercise any control over the FDO-WDNC and does not have any supervisory or oversight authority over the FDO-WDNC in personnel matters. The AO also does not play a role in administering each court's

EDR Plan. Most importantly, as discussed previously, Circuit Executive Ishida and Chief Judge Gregory properly administered the EDR Plan, and Plaintiff was not denied any "rights" under the EDR Plan. General Counsel Walter's role was limited to providing legal guidance. The OGC provides the same advice and guidance consistent with its interpretation of the Model EDR Plan to all courts, court units, EDR Coordinators, Chief Judges, or presiding judicial officers that requested OGC's advice or guidance. There is no legal precedent, under employment law principles or otherwise, that holds an attorney, who provides legal advice and guidance to a client, accountable to a third-party in similar circumstances.

To the extent Plaintiff argues that someone within the OGC prohibited Plaintiff from communicating with the AO's FEPO, the evidence refutes her claim. OGC never directed, nor had the authority to direct, the FEPO not to speak with Plaintiff. GE G ¶¶ 4-5; GE H ¶¶ 3-4. Any discussion between OGC and the FEPO regarding this matter pertained to which office should be responsible for providing advice and guidance to the FDO-WDNC – Plaintiff's employing office. OGC and the FEPO agreed that the OGC would be responsible for providing advice and guidance to Plaintiff's employing office on its employer obligations. GE G ¶¶ 4-5; GE H ¶¶ 3-4. Moreover, even taking Plaintiff's allegation as true *arguendo*, Plaintiff fails to identify a constitutional or statutory right subject to this Court's jurisdiction to request that the AO's FEPO assist her in obtaining her employment demands. Plaintiff also fails to identify how the alleged restriction created any prohibition on a right afforded to her under the EDR Plan. In fact, Plaintiff does not identify a single instance where she requested assistance from the FEPO and was denied assistance.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion.

This the 26th day of October, 2020.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

s/*Joshua Kolsky*
JOSHUA M. KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov


R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone:  (828) 271-4661
Fax:  (828) 271-4327
Email:  Gill.Beck@usdoj.gov