IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

| | |
|---|---|
| JANE ROE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 1:20-cv-00066-WGY |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO STRIKE
DEFENDANTS' SUMMARY JUDGMENT RESPONSES**

Defendants' arguments against Roe's Motion to Strike show that they are engaging in delay tactics to prevent a timely resolution of this case. Because defendants' actions are not "substantially justified" or "harmless," Fed. R. Civ. P. 37(c)(1), Roe's Motion should be granted.

**I.    Joinder Of The Issues Occurred On May 8, 2020.**

To begin with, defendants' arguments contradict the Local Rules. Defendants argue that the Local Rules "expressly prohibit discovery" before their motions to dismiss are decided. ECF No. 96, at 1. But under the Local Rules, discovery may be required even if motions to dismiss are pending. Under Local Rule 16.1, a motion to dismiss will only prevent "joinder of issues" if it is filed *before* the time for a responsive pleading "expires." LCvR 16.1(d). Here, defendants did not file a responsive pleading on or before May 8, 2020, when their time for doing so "expired." *Id.* Thus, the issues joined on May 8, 2020.

Contrary to defendants' arguments, the issues did not "unjoin" after May 8, 2020 merely because the Court granted them a subsequent extension of time to file responsive pleadings.

*Hyatt v. Prudential Ins. Co.*, No. 2:07CV12, 2008 WL 141907, at *1 (W.D.N.C. Jan. 11, 2008). In fact, during the May 11, 2020 hearing, the Court specifically told defendants that although their extension request would be granted, it is not the Court's practice to continue trial dates and the January 2021 trial date would approach rapidly. As the Court made clear to defendants, consistent with the Local Rules, their yet-to-be filed motions to dismiss did not prevent the case from moving forward.

To avoid this outcome, defendants contend that enforcing the Local Rules would "render meaningless" the Court's extension order. ECF No. 96, at 2. But the Court's order certainly was not "meaningless" and in fact substantially benefitted defendants, who were permitted to file dismissal motions that otherwise would have been untimely. *See* ECF No. 26, at 2 (recognizing that defendants were required to file a responsive pleading by May 8, 2020). Defendants simply seek to have their cake and eat it too, but that outcome is prohibited under the Local Rules. Because defendants did not file motions to dismiss and supporting briefs within the time required by the Local Rules—actions which were entirely within their control—joinder of issues occurred on May 8, 2020, and the case moved forward regardless of their subsequent motions to dismiss.

In addition, defendants argue that the Court "confirmed" their view that Roe's discovery requests were "premature," because it granted Defendants' Motion to Set Deadline to Respond to Early Discovery Requests. ECF No. 96, at 2. But the Court "confirmed" no such thing. In their Motion, defendants requested that "the Court set the deadline for Defendants to respond to Plaintiffs' discovery requests as 30 days following the date on which issues have joined and a Rule 16(d) scheduling order has been entered." ECF No. 51, at 4. In granting their motion, the Court did not "confirm[]" anything except that the Local Rules govern this case. The Local

Rules required the case to "move forward" once the issues joined. *Hyatt*, 2008 WL 141907, at *1.

Finally, defendants' attempt to distinguish *Hyatt* fails. ECF No. 96, at 3. As *Hyatt* confirms, the Local Rules prohibit the very outcome defendants are seeking—the use of "placeholder" filings to block joinder of issues. *See* LCvR 16.1(d) ("Rule 12 motions contained in an Answer, but not supported by a brief, act as placeholders and do not prevent joinder of the issues."). This rule is not a technicality, but rather serves the important purpose of "budget[ing]" the Court's "limited resources." *Hyatt*, 2008 WL 141907, at *1. As *Hyatt* explains, a party's attempts to delay the case after joinder of issues inhibits judicial efficiency because it prevents the Court from "proceed[ing] as to all issues." *Id.* These delay attempts also prevent counsel from "resolv[ing]" issues amongst themselves, such as through mediation, without the need for further litigation. *Id*. Therefore, once the issues join, they do not "unjoin" simply because a party subsequently files a motion to dismiss and supporting brief. *Id.* A dismissal motion may be "entirely appropriate," but it will not stop the "court's clock [from] begin[ning] to run for disposition of the case." *Id.*

If anything, the facts supporting joinder are even stronger here than in *Hyatt*. In *Hyatt*, the Court held that a party's filing of a timely "placeholder" dismissal motion did not prevent joinder of issues even though the party later filed a formal motion to dismiss with a supporting brief. 2008 WL 141907, at *1. Here, defendants did not file even a "placeholder" dismissal motion, much less a motion and supporting brief, prior to the date their responsive pleading deadline "expired." LCvR 16.1(d). Instead, defendants only filed a motion for extension of time to file a responsive pleading, which was not granted until *after* the issues joined on May 8, 2020. *See* Minute Entry Order Dated May 13, 2020.

Moreover, like in *Hyatt*, defendants' attempts to delay the case's progress have created needless inefficiency and prejudice. *See* 2008 WL 141907, at *1 (purpose of Local Rules is to "budget" the court's "limited resources"). By not following the Local Rules, defendants prevented the case from "moving forward" or from being resolved at an earlier stage. *Id.* For example, defendants' decision not to engage in discovery has impeded Roe's efforts to resolve this dispute promptly. *See* 1993 Amendment, Advisory Committee Notes to Fed. R. Civ. P. 26(a) (discovery rules, such as requirement to serve initial disclosures, are intended to facilitate settlement of disputes). Defendants rejected proposals to engage in settlement discussions,[1] and defendants' counsel even stated that a mediated settlement conference would be "premature" and "burdensome." ECF No. 66, at 7. However, mediation is not an option that defendants may reject because they find it "burdensome."[2] Under the Local Rules, "[a]ll parties to a civil action must attend a mediated settlement conference, unless otherwise ordered by the Court." LCvR 16.2(a). Defendants' approach is contrary to the Local Rules and undermines the purpose of those rules to resolve disputes efficiently and promptly.

---

[1] In their joint case management proposal, the parties agreed to engage in settlement discussions in "good faith" and that a mediated settlement conference would be most useful before non-expert discovery closed on September 1, 2020. ECF No. 34, at 6.

[2] Roe's counsel proposed the alternative option of a judicial settlement conference pursuant to Local Rule 16.3(d), which would likely address the logistical concerns raised by defendants' counsel regarding their clients' physical attendance at a mediated settlement conference. Under Local Rule 16.3(b)(1), all parties must physically attend a mediated settlement conference, absent an exception, pursuant to Rule 4.A(1)–(2) of the *North Carolina Rules Implementing Statewide Mediated Settlement Conferences in Superior Court Civil Actions*. However, the Local Rule regarding judicial settlement conferences only requires participation by "a person with full authority to settle all pending claims," an individual who may be permitted by the Court to participate telephonically. Local Rule 16.3(d)(2). Moreover, government attorneys for entities that cannot meet the participation requirement are permitted to "bring as much binding authority to settle as is feasible under the circumstances." *Id.*

## II. The Court Issued A Scheduling Order On May 11, 2020.

Next, defendants' argument that the Court did not issue a "scheduling order" is flatly contradicted by the record. On May 11, 2020, following a hearing, the Court issued an order that set deadlines for summary judgment, pretrial conference, and trial—all without objection from defendants. *See* Minute Entry Order Dated May 13, 2020.

Indeed, at the start of the hearing, the Court stated that the purpose of the hearing was to establish a case management plan. The Court explained that because it was specially assigned to this case by the Chief Justice, it had a duty to get the case ready for trial and adjudicate the issues with all reasonable speed. To that end, the Court inquired as to a reasonable trial date and initially suggested a trial in September 2020. After further discussion, the parties agreed to place this case on the running trial list for January 2021, to submit a pretrial memorandum by December 1, 2020, and to file dispositive motions by October 1, 2020.

At no time during the hearing, or afterwards, did defendants object to the Court's scheduling order. *See* Minute Entry Dated May 13, 2020; ECF No. 34. On the contrary, defendants' counsel stated that defendants appreciated that the judge was moving fast because they believed the case should be dismissed. As this statement confirms, defendants understood the significance of the scheduling order and chose not to object for tactical reasons.

Given the May 11, 2020 scheduling order, defendants' assertion that this case is in an "early" stage is unfounded. ECF No. 96, at 4–5. Defendants argue that the Court's order "did not constitute a Rule 16(b) scheduling order," ECF No. 96, at 4, but they do not even attempt to explain how the Court's order does not satisfy the requirements of Fed. R. Civ. P. 16(b)(3)(A). On the contrary, the Court's order met the "[r]equired contents" of a scheduling order, *id.*, because it set the summary judgment, pretrial conference, and trial dates, and any other required

dates were set by default under the Federal Rules of Civil Procedure. *See* ECF No. 90-1, at 11–12. Defendants also point out that the Court has not chosen either party's case management proposal, *id.* at 3, but the Court was not required to choose a proposal before issuing the scheduling order. Instead, the Court issued an initial scheduling order "after consulting with the parties' attorneys . . . at a scheduling conference." Fed. R. Civ. P. 16(b)(1)(B).

More broadly, defendants' interpretation of Court-ordered deadlines as somehow not binding on them is unreasonable. Defendants do not explain how they possibly could have expected the parties to prepare for the October 1, 2020 summary judgment deadline or the January 2021 trial date without engaging in discovery. Though defendants criticize Roe for what they perceive as her "aggressive" litigation decisions, ECF No. 95, at 6, Roe has complied in good faith with the deadlines that were ordered by the Court and to which defendants did not object.

Indeed, allowing defendants to engage in their delay tactics would effectively punish Roe for complying with Court orders. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (purpose of discovery requirements is to "avoid unfair surprise"). Defendants' delay tactics have enabled them to evolve their factual and legal defenses in response to Roe's filings. For example, defendants have made inconsistent arguments on basic issues, such as who Roe's "employer" is, depending on which of her arguments they are responding to. *Compare*, *e.g.*, ECF No. 78, at 18, at 18 n.4 (asserting that the Chief Judge was the "head of the agency"), *with* ECF No. 94, at 21 (asserting that the Chief Judge was not Roe's "employer"). Defendants should not be rewarded for obstructing Roe's efforts to prove her claims with a second chance to complete discovery and dispositive motions. *See*, *e.g.*, ECF No. 64-3 (requests for admission on the facts supporting Roe's claims, mitigation efforts, and lost earnings); ECF No. 64-2, at 4–6

(interrogatories regarding mitigation efforts and lost earnings); ECF No. 51-1, at 13 (requests for production regarding same).

## III. Defendants' Improper Approach Has Prejudiced Roe.

Finally, defendants' approach was not "harmless," and substantially prejudiced Roe. Fed. R. Civ. P. 37(c)(1). For example, even though defendants have not engaged in discovery, they have selectively relied on facts outside of the complaint and portions of the EDR administrative record from the very start of this case. *See* ECF No. 90-1, at 14–16. Moreover, in their summary judgment oppositions, defendants provided seven declarations and nearly 400 pages of exhibits, none of which they disclosed in discovery. *See* ECF Nos. 78, 94, 95. Though defendants contend they merely "respond[ed] to the motions for summary judgment [Roe] filed," ECF No. 96, at 4, they ignore how their failure to engage in discovery prejudiced Roe.

In perhaps the most egregious instance, defendants selectively quoted the "investigation" report in their summary judgment filings, even though they did not produce the report in discovery. *See* ECF No. 94, at 3–4; ECF No. 78, at 15. Defendants' own filings show that their selective quotations were misleading and even deceptive. For example, in his declaration, the Defender asserted that the report found that Roe "exploited . . . upper management to attain her goal of a transfer." ECF No. 78-3, at 16. However, the other individual-capacity defendants' brief adds critical context to that sentence, which states that Roe allegedly "exploited <u>poor judgment and decision-making skills</u>," ECF No. 94, at 4, of "upper management," ECF No. 78-3, at 16. Contrary to the Defender's insinuation, the report's statement is strong evidence that Roe's allegations against him were substantiated but trivialized as "poor judgment and decision-making skills." ECF No. 94, at 4.

7

As this example shows, defendants' approach enabled them to present a misleading and incomplete picture in response to Roe's summary judgment arguments. Defendants' approach undermines the Court's function to find the facts based on a "proper record, sufficiently developed through discovery proceedings." *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 220 (4th Cir. 2012) (en banc). Even worse, the evidence already in the record shows that Roe's constitutional rights were violated, and her case likely would have been even stronger with discovery.

## CONCLUSION

Roe's Motion to Strike should be granted.

This the 6th day of November, 2020.

Respectfully Submitted,

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

 Gill P. Beck at Gill.Beck@usdoj.gov

 Joshua M. Kolsky at Joshua.kolsky@usdoj.gov

 Shannon Sumerall Spainhour at mss@dhwlegal.com

                */s/ Cooper Strickland*
                Cooper Strickland
                N.C. Bar No. 43242
                P.O. Box 92
                Lynn, NC 28750
                Tel. (828) 817-3703
                cooper.strickland@gmail.com