**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **JANE ROE,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES OF AMERICA,** *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| _____ | ) | |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

**INTRODUCTION**

As defendants' reply briefs show, their evolving arguments merely attempt to confuse the issues and avoid accountability for constitutional violations. Not only should defendants' motions to dismiss be denied, but their arguments confirm that this case largely turns on legal questions that entitle Roe to summary judgment on their liability. *See* ECF Nos. 60, 76; *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 974 (N.D. Cal. 2012) (granting plaintiff's motion for summary judgment and denying motion to dismiss in the same ruling).

**I.      Roe Has Adequately Pled Constitutional Claims For Equitable Relief.**

      **A.      The Civil Service Reform Act Does Not Bar Roe's Claims.**

Defendants argue that the Civil Service Reform Act ("CSRA") silently overrides all judicial review of or remedies for unconstitutional discrimination. *See, e.g.*, ECF No. 54, at 6–12. Their reading of the CSRA is implausible, raises serious constitutional questions, and creates disputes that are intertwined with the merits of Roe's claims.

            **1.      Defendants' Reading of the CSRA is Implausible.**

Defendants' reading of the CSRA violates many canons of statutory interpretation.

***Plain Meaning.*** Defendants' reading contravenes the CSRA's text and structure. When Congress passed the CSRA, it knew "how to provide alternative forums for judicial review based on the nature of an employee's claim." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 13 (2012). However, Congress has never channeled judiciary employees' constitutional claims into strictly administrative EDR forums. Because the CSRA does not "remove[] the jurisdiction given to the federal courts" over these constitutional claims, jurisdiction lies in federal district court under 28 U.S.C. § 1331. *Whitman v. Dep't of Transportation*, 547 U.S. 512, 514 (2006).

Defendants contend, however, that Congress intentionally foreclosed all judicial review because it was "aware" of the judiciary's 1966 antidiscrimination "resolution"—which provided no enforceable remedies—when it passed the CSRA. ECF No. 54, at 11; *see also Equal Employment Opportunity Practices in the Federal Judiciary, Hearings Before the Subcomm. on Civil and Constitutional Rights of the H. Comm. on the Judiciary,* 96th Cong. 22 (1979) (statement of Hon. Elmo B. Hunter) (noting that "only seven district courts and one circuit court took the initiative and made some effort to draw a plan or institute a formal program" based on the judiciary's 1966 resolution). But even if Congress was "aware" of the judiciary's policy, its "silence is far from the clearly discernible will" necessary to preclude judicial review of constitutional claims. *Davis v. Passman*, 442 U.S. 228, 247 (1979) (quotation omitted). As the Supreme Court has held, when Congress declined to extend Title VII remedies to employees who are not in the competitive service, it did not intend to "foreclose alternative remedies available to those not covered by the statute." *Id.* at 247. Instead, Congress left "undisturbed whatever remedies" the employees "might otherwise possess." *Id.*; *see also* Lindemann & Grossman, Employment Discrimination Law Ch. 32.III.E (6th ed. 2020).

Moreover, defendants misconstrue *Elgin*. ECF No. 54, at 7–8. In that case, the Court held that the CSRA was exclusive for the constitutional challenge at issue because the statute provided for judicial review in an Article III court—the Federal Circuit. *Elgin*, 567 U.S. at 10 (explaining that the Federal Circuit was "fully capable of providing meaningful review"). By contrast, the CSRA does not channel judiciary employees' constitutional claims to strictly

administrative EDR forums that are not capable of providing meaningful judicial review. *See* Proceedings of the Judicial Conference of the United States at 25 (Sept. 2010).[1]

*In Pari Materia*. Defendants' reading violates the canon that statutory provisions cannot be read "in isolation; 'we look not only to the particular statutory language, but to the statute as a whole and to its object and policy.'" *Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 303 (4th Cir. 2013) (quotation omitted). Defendants' reading would eliminate all remedies for judiciary employees for discrimination, contrary to the CSRA's purpose "[t]o promote equal employment opportunity." H.R. Rep. No. 95-1403, at 99 (1978).

In addition, defendants' reading of the CSRA creates an intractable and unnecessary conflict with Title VII, which defendants concede does not preclude judiciary employees' constitutional remedies for discrimination. *See* ECF No. 53, at 8 n.4; ECF No. 54, at 7–8. Under defendants' reading, excepted service employees would have constitutional remedies under Title VII, but would be barred from pursuing those remedies by the CSRA—a conflict which violates the Supreme Court's command to read the statutes "in accord." *Perry v. MSPB*, 137 S. Ct. 1975, 1984 (2017); *see also Koger v. Ball*, 497 F.2d 702, 705 (4th Cir. 1974) (Title VII "did not create a new substantive right" but rather a "new remedy").

---

[1] Defendants do not discuss the many decisions holding, consistent with *Elgin*, that the CSRA does not foreclose judicial review of constitutional claims. *See, e.g.*, *Am. Fed'n of Gov't Employees Local 1 v. Stone*, 502 F.3d 1027, 1035–39 (9th Cir. 2007); *Mitchum*, 73 F.3d at 35; *Spagnola v. Mathis*, 859 F.2d 223, 229–30 (D.C. Cir. 1988) (en banc per curiam); *see also Bryant v. Cheney*, 924 F.2d 525, 528 (4th Cir. 1991) (questioning *Pinar v. Dole*, which precluded constitutional claim); *Hardison v. Cohen*, 375 F.3d 1262, 1267 (11th Cir. 2004). Instead, they rely on cases that wrongly conflate administrative EDR forums with the type of judicial review conducted by a judicial officer in an Article III court. *See, e.g.*, *Dotson*, 398 F.3d at 161, 172–77; *Semper v. Gomez*, 747 F.3d 229, 242–44 (3d Cir. 2014); *cf. Golinski*, 781 F. Supp. 2d at 974. Defendants also rely on *United States v. Fausto*, but *Elgin* specifically distinguished *Fausto* because the plaintiff "did not press any constitutional claims." *Id.* at 11 n.4.

***Savings clauses favor judicial review***.  Defendants' argument disregards at least three statutory savings clauses that preserve remedies for discrimination.  First, the CSRA states that it "shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity" under Title VII and other civil rights laws.  5 U.S.C. § 2302(d).  Second, the CSRA cross-references Title VII's provision negating any intent to "relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes."  42 U.S.C. § 2000e-16(e).  Finally, CSRA amendments state that judiciary employees' exclusion from the competitive service "shall [not] be construed to abolish or diminish any right or remedy . . . by any law prohibiting discrimination in Federal employment."  AO Personnel Act, Pub L. No. 101-474, § 3(g), 104 Stat. 1097 (1990) (appearing in notes to 28 U.S.C. § 602).  Though the latter provision pertains to AO employees specifically, Congress intended to create a personnel system for AO employees that is "more similar to the rest of the judicial branch."  H.R. Rep. No. 101-770(I).

Based on these savings clauses, it is well-established that the CSRA "does not extinguish any right or remedy available to federal employees under federal discrimination laws."  *Planas v. Lamoutte*, No. CA 14-1468-MML, 2015 WL 5568015, at *8 (D.P.R. Sept. 22, 2015) (citations omitted).[2]  Defendants' argument undermines "[t]he purpose of a savings clause," which is "to nix an inference that the statute in which it appears is intended to be the exclusive remedy for

---

[2] Defendants misconstrue *Planas*, ECF No. 54, at 7 n.2, which recognized that the CSRA does not preempt other remedies for discrimination.  2015 WL 5568015, at *8.  Unlike here, the *Planas* court dismissed the plaintiff's claim because she did not file an EDR complaint alleging discrimination and she failed to state an equal protection violation.  *Id.* at *9–11.  Defendants are being far too literal with their argument, *see, e.g.*, ECF No. 54, at 6–7, and fail to appreciate that none of their cited cases addressed the legal standards applicable to equal protection violations.  Instead, those courts wrongly conflated class-based discrimination claims with review of other nondiscriminatory adverse actions.  *Cf. Whitman v. Dep't of Transp.*, 547 U.S. 512, 514 (2006) (the "CSRA provides different treatment for grievances depending on the nature of the claim").

harms caused by the violation of the statute." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618 (7th Cir. 1998). Defendants also ignore that these savings clauses are in antidiscrimination laws, which "should be liberally construed in light of [their] remedial purpose." *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 409 (4th Cir. 2015).

  ***Presumption in favor of judicial review of administrative actions***. Defendants' reading contravenes the canon that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967). Defendants do not provide "clear and convincing evidence" that Congress intended to preclude judicial review. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 671 (1986).

  ***Presumption in favor of judicial review of constitutional claims***. Defendants cannot meet the "heightened showing" that is required "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988). Though defendants rely on *Dotson v. Griesa* and its progeny, ECF No. 54, at 12–15, those decisions did not consider current judicial policy and wrongly reasoned that EDR proceedings are subject to "judicial review" by a "judicial officer." *See* ECF No. 54, at 10–11, 13–15 (discussing *Dotson*).

### 2. Defendants' Reading Raises Serious Constitutional Questions.

  Defendants do not even attempt to argue that the CSRA entirely forecloses judicial review of constitutional claims, nor could they, given Supreme Court precedent and their own prior statements. *See Elgin*, 567 U.S. at 9–10, 11 n.4; *see also* Resp. Br. 18, *Elgin v. Dep't of Treasury*, No. 11-45 ("[T]here is no dispute that if judicial review were *not* available under the CSRA for a particular employment-related constitutional claim, a federal employee would be

entitled to bring a freestanding action for equitable relief."); *see also* Opp. Br. 17, *Dotson v. Griesa*, No. 04-1276 (recognizing that if "a constitutional issue remain[s]" after the EDR process, the employee may bring suit "arguing that the court should give a further level of Judicial Branch scrutiny to his constitutional claims"). Instead, they argue that EDR forums provide "judicial review" that occurs "through a process separate from the traditional path of a suit filed in federal district court."[3] ECF No. 54, at 12–13.

The problem with defendants' argument is that it is simply untrue. Under current Judicial Conference policy, which is not addressed in defendants' briefs or any cases they cite, EDR proceedings are "strictly administrative," not "judicial," and judiciary employees *cannot* bring constitutional challenges through the EDR process. JCUS at 25; *see also Golinski v. U.S. Office Pers. Mgmt.*, 781 F. Supp. 2d 967, 973 (N.D. Cal. 2011). The Fourth Circuit recently underscored this point in its newest EDR Plan, which states that "Presiding Judicial Officers serve in an administrative capacity with limited, non-Article III authority, even if they otherwise serve as Article III judges." EDR Plan § V(C)(3)(f)(iii) (Sept. 2020); *see* ECF No. 77 (Plaintiff's Notice of Supplemental Authority). Without Article III authority, EDR presiding officers are not engaged in "judicial review" any more than a supervisor making a hiring or firing decision. *Forrester v. White*, 484 U.S. 219, 224, 229 (1988) (judge's actions taken "in an administrative capacity," such as "personnel decisions," are not "themselves judicial or adjudicative"); *see also*

---

[3] Defendants' argument that core Article III claims need not be adjudicated in an Article III court so long as they are adjudicated within the judicial branch, ECF No. 54, at 14, is contrary to Supreme Court precedent. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (explaining that "Congress violated Article III by authorizing bankruptcy judges to decide certain claims for which litigants are constitutionally entitled to an Article III adjudication"). For example, if defendants' argument were correct, then there would be no need for Article III courts to supervise Article I bankruptcy or magistrate judges. *See id.*

*Golinski*, 781 F. Supp. 2d at 974 (courts' "structural independence in their core judicial function" does not "appl[y] to the administration of the courts' personnel system").

Because EDR forums do not provide judicial review, defendants cannot avoid the "serious constitutional question" that would arise from their "extraordinary" reading of the CSRA. *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975). If defendants' argument were correct, then the CSRA would be unconstitutional because it would foreclose judicial remedies for discrimination. *Davis*, 442 U.S. at 234–35 ("[C]lassifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." (quotation omitted)). Because Roe's EDR forum did not provide "meaningful relief . . . that includes some measure of meaningful judicial review," she "has the right to seek equitable and declaratory relief for alleged constitutional violations in a 'federal question' action filed pursuant to § 1331." *Semper*, 747 F.3d at 242.

### 3. Defendants' Jurisdictional Defenses are Intertwined with the Merits.

Finally, defendants' CSRA arguments create disputes that cannot be resolved in their favor without addressing Roe's claims on the merits. It is well-established "that when the contested basis for jurisdiction is also an element of the plaintiff's federal claim, the claim should not be dismissed for lack of subject matter jurisdiction." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 239 (4th Cir. 1988) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Rather, "when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

As noted above, defendants assert that Roe's claims are jurisdictionally barred because the EDR process provided her with "meaningful review" by a "judicial officer" and an

opportunity for "appellate review." ECF No. 54, at 12–13; *but see* Declaration of James Ishida, ECF No. 78-4, ¶ 18 (disqualification decisions cannot be appealed). But their assertions contradict Roe's allegations and merely dispute her constitutional claims. For example, Roe alleges that the Judicial Integrity Officer, among others, told her that an EDR presiding officer cannot order remedies against an FDO, an issue which she described as jurisdictional, and on which she followed up in an email. Complaint ¶¶ 439, 445. Roe was also told that any meaningful action would be viewed as "micromanaging" or "meddl[ing]." *Id.* ¶¶ 415, 438.

Though defendants contend that Roe's complaints are meritless "regardless of what 'Roe was told,'" ECF No. 54, at 16, their argument requires making factual inferences in their favor, which is improper on a motion to dismiss. *Kerns*, 585 F.3d at 193 (when jurisdictional facts are intertwined with the merits, court should "assume the truthfulness of the facts alleged"). When Roe's allegations are accepted as true, it was objectively reasonable for her to rely on statements from the Judicial Integrity Officer, "a primary resource for the entire judiciary" on EDR issues, Declaration of Jill Langley, ECF No. 78-5, ¶ 4, which would lead a reasonable person in her position to resign. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004).

### B. Roe's Claims Are Not Barred By Sovereign Immunity.

Roe's claims are not barred by sovereign immunity. Defendants contend that 28 U.S.C. § 1331 is not an independent waiver of sovereign immunity, ECF No. 54, at 1–2, but under that statute, it is "established practice" for the "federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Bell v. Hood*, 327 U.S. 678, 684 (1946). Under Section 1331,

a federal court may order injunctive relief requiring judiciary officials to comply with their duties under the Constitution and EDR Plan.[4] *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988).

As defendants recognize, EDR remedies are statutorily authorized under 28 U.S.C. §§ 331, 332.[5] ECF No. 43, at 17 n.7. Defendants have also never asserted that reinstatement *or* front pay are not allowed under the EDR Plan; on the contrary, the Plan states that "equitable" relief is authorized, and the only relief that is *not* available are "compensatory" damages, "punitive" damages, and "attorneys' fees" except as allowed under the Back Pay Act. EDR Plan § 12(B); *see also Confronting Sexual Harassment and Other Workplace Misconduct in the Federal Judiciary, Questions for the Record from Chairman Grassley*, *Sen. Comm. on the Judiciary*, 115th Cong. 16–17 (June 20, 2018) (Director Duff's testimony that sexual harassment EDR complainants have received "monetary relief"). Thus, defendants cannot assert both that EDR remedies are statutorily authorized and that sovereign immunity bars those remedies on

---

[4] Defendants contend that Roe has not asserted the *Larson* exception to sovereign immunity, ECF No. 54, at 2, but she plainly has asserted that defendants acted unconstitutionally and relied on *Bowen*, which is based on, and an application of, the *Larson* exception. *See Bowen*, 487 U.S. at 893 (applying *Larson*). Their argument misconstrues Roe's position, which is that if sovereign immunity somehow bars her official capacity claims, she requests leave to assert claims against the same defendants in their individual capacity. *See* ECF No. 49, at 20.

[5] Defendants are wrong to argue that statutory waivers, such as the Back Pay Act and the APA, do not apply. ECF No. 54, at 3–4. For example, defendants argue that a district court is not an "appropriate authority" under the Back Pay Act, *see id.*, but they fail to consider that district courts have authority to enjoin constitutional violations—especially where, as here, the EDR process did not provide judicial review. Defendants also argue that federal defender offices are "auxiliaries" of the courts under the APA, ECF No. 54, at 4–5, but the case they rely on states that the APA exemption only applies to entities "that perform functions that would otherwise be performed by courts." *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994). Unlike probation officers, who perform "dut[ies] that the court may designate," 18 U.S.C. § 3603(10), federal defenders perform independent Sixth Amendment defense functions, *id.* § 3006A.

judicial review. Rather, relief on judicial review is "an equitable action for specific relief" to enforce a legal "mandate," not an action for money damages. *Bowen*, 487 U.S. at 893.

Moreover, defendants' assertion of sovereign immunity is intertwined with disputes that "are substantially related, if not identical, to the elements" of Roe's claims. *Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x 758, 760 (4th Cir. 2019). Specifically, they contend that a federal court with jurisdiction under Section 1331 cannot fashion injunctive relief against official capacity defendants by ordering declaratory relief and remedies available under EDR plans. ECF No. 54, at 4–5. But their logic assumes that these remedies were available to Roe during the EDR process, who in their view simply made a choice not to pursue them, making specific injunctive relief to enforce antidiscrimination remedies in an Article III court unnecessary. *See Bowen*, 487 U.S. at 893 (equitable actions for specific relief are not barred by sovereign immunity even if relief has "monetary aspects"). Of course, their assumptions about the efficacy of the EDR process are directly contradicted by Roe's complaint. If their logic were correct, then judiciary employees in Roe's position "would have no remedy at all" for discrimination. *In re Golinski*, 587 F.3d 956, 961 (9th Cir. 2009).

Finally, defendants' assertion of sovereign immunity is subject to "continuing disputes of material fact." *Al Shimari*, 775 F. App'x at 760. For example, though defendants claim that Roe "expressly does not seek reinstatement," ECF No. 54, at 2, that assertion is oversimplified. Roe has broadly requested any "relief as the Court deems just and proper," Complaint p 85, which could include reinstatement and other appropriate equitable remedies if the Court so orders based on a full evidentiary record, considering the factual circumstances at the time of judgment. Regardless, defendants cannot seriously contest that reinstatement is a form of specific relief not

barred by sovereign immunity,[6] and that alone is sufficient to defeat a motion to dismiss.
*Bowen*, 487 U.S. at 893; *Dotson v. Griesa*, 398 F.3d 156, 177–79 (2005).

### C.  Roe Was Not Required to "Exhaust" the EDR Process.

Defendants argue that Roe did not "exhaust" the EDR process because she "voluntarily" resigned.  ECF No. 43, at 4.  Defendants rely on this assertion for each of their arguments, including (1) subject matter jurisdiction, ECF No. 54, at 13 ("Had Plaintiff not cut the process short, she could have obtained an adjudication of the merits of her claims."); (2) failure to exhaust, *id.* at 15 ("By failing to fully pursue the EDR process, Plaintiff prevented the judiciary from adjudicating the merits of her complaints and awarding relief if appropriate."); (3) failure to state a claim, *id.* at 19 (plaintiff "was not denied due process under the Plan because she withdrew from the process"), (4) new context for *Bivens*, ECF No. 53, at 4 (Roe "could have requested a hearing" and "sought review of the hearing decision"), and (5) *Bivens* special factors, *id.* at 12 ("Plaintiff glosses over the fact that she withdrew her Chapter X claim.").

Because defendants' factual assertions are directly contrary to the complaint's allegations, their arguments cannot be resolved at the dismissal stage.  *Ashcroft*, 556 U.S. at 678. The premise of Roe's complaint is that she was forced to resign because of the failures of the EDR process.  Specifically, she alleges that defendants subjected her to sexual harassment, discrimination, and retaliation; failed to take immediate and effective action on her complaints; and failed to provide meaningful remedies or review, which resulted in her constructive discharge and the loss of her career.  *See* Complaint ¶¶ 1–10.  If accepted as true, Roe's

---

[6] If defendants' sovereign immunity argument were correct, then no judiciary employee would ever be able to sue for injunctive relief over constitutional violations by judiciary officers. That is obviously not the case.  *See Guffey v. Duff*, No. 18-CV-1271 (CRC), 2020 WL 2065274, at *20 (D.D.C. Apr. 29, 2020) (enjoining enforcement of AO policy that violated First Amendment under Section 1331).

allegations show that the EDR process was futile and exhaustion was not required.  *See* ECF No. 49, at 20–22.  And given the complaint's allegations that the EDR process was incapable of providing meaningful review or remedies, Complaint ¶¶ 439, 445–47, it would have been futile for Roe to pursue a "constructive discharge" EDR claim post-resignation, *see* ECF No. 54, at 16.

In addition, defendants' exhaustion argument is improper because they selectively rely on facts outside of the complaint and portions of the EDR administrative record.  Though defendants contend that Roe's email may be considered on a motion to dismiss because it is "integral" to the complaint, ECF No. 43, at 4 n.3, the purpose of that rule is to prevent a plaintiff from "evad[ing] a properly argued motion to dismiss simply because plaintiff has chosen not to attach [a document] to the complaint or to incorporate it by reference."  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).  That same principle applies to defendants.  They cannot selectively disclose portions of the EDR administrative record and refuse to disclose other portions that are equally "integral" to the complaint.  *See Ryan v. McAleenan*, No. CV ELH-19-1968, 2020 WL 1663172, at *5 (D. Md. Apr. 3, 2020) (district judge has discretion to "reject" any materials beyond the pleadings).

### D.     Roe Has Stated Claims For Due Process and Equal Protection Violations.

Defendants are also wrong to argue that Roe has failed to state a claim.  To begin with, defendants violated Roe's protected rights under the EDR Plan.  Contrary to their argument that Roe's due process claim "merely duplicates her equal protection claim," ECF No. 54, at 18, she had a liberty interest in being free from sex discrimination and a property interest in the judiciary's procedures that were designed to protect her from workplace discrimination.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) ("[T]he concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive.").

Moreover, defendants are wrong to argue that Roe had no due process interest in adjudicating her right to be free from unlawful discrimination. ECF No. 54, at 17–19. Defendants cannot argue both that Roe had no protected interest in the EDR process *and* that the EDR process provided her "the exclusive remedy." EDR Plan Ch. I, § 1. In the adjudication of her legal rights, Roe was entitled to due process protections "which have traditionally been associated with the judicial process." *Hannah v. Larche*, 363 U.S. 420, 442 (1960).

Defendants argue that Roe did not "plausibly allege that any defendant violated th[e] [EDR] plan," ECF No. 54, at 18, but they contradict the complaint in doing so. For example, defendants' assertion that the investigation was "appropriate," ECF No. 54, at 19, contradicts Roe's allegations that the "investigation" dragged on for more than four months, over which the Chief Judge expressed concern, Complaint ¶ 392; was conducted by an investigator who admitted she was not qualified or trained, *id.* ¶ 320, and who did not interview any of Roe's witnesses, *id.* ¶ 317; and did not include Roe's claims against the Defender within the scope of her investigation, *id.* ¶ 318. Defendants' argument cannot be substantiated without discovery, particularly in light of their subsequent summary judgment filings. *See* ECF No. 93, at 5–10 (discussing flawed investigation report); *see Ambrose-Frazier v. Herzing Inc.*, No. CV 15-1324, 2016 WL 890406, at *4 (E.D. La. Mar. 9, 2016) (where employer relies on appropriate investigation as a defense, investigation report is not protected by attorney-client or work product privilege); *Robinson v. Vineyard Vines, LLC*, No. 15CIV4972VBJCM, 2016 WL 845283, at *4 (S.D.N.Y. Mar. 4, 2016) (same).

Defendants also contend that Roe has not alleged any failure to take prompt and effective action.[7] ECF No. 54, at 16. But even when defendants received the long-delayed investigation report, they deliberately refused to take corrective action. Complaint ¶ 398. Indeed, they did not take any corrective action until several months after Roe resigned and almost a year after she raised her complaints. *Id.* ¶ 485. That kind of extreme and intentional delay is, by definition, a "conscious failure." *Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir. 1986).

Finally, defendants argue that the EDR Plan did not "require" disqualification of the Defender who was a subject of her complaint,[8] the right to receive the Investigator's findings, or the right to a prompt investigation. ECF No. 54, at 18–19. However, their arguments merely dispute Roe's claims that the EDR process was fundamentally unfair and discriminatory. For example, defendants assert that no conflicts of interest existed in the EDR process, *e.g.*, ECF No. 52, at 13 n.6, but their own declarations confirm that unit executives accused of discrimination cannot be disqualified. *See* ECF No. 93, at 12–14 (discussing conflicts of interest); *cf.* EEOC

---

[7] The Defender's sweeping assertion that the EEOC's guidance "lacks persuasive force," ECF No. 52, at 16–17, is based on a case rejecting a single provision of a different EEOC manual dealing with causation in the retaliation context. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013). But EEOC guidance on the duty to take prompt and effective action comports with precedent from the Supreme Court, *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), and the Fourth Circuit, *e.g.*, *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008). It also comports with the "conscious failure" standard, *Bohen*, 799 F.2d at 1187, and the EDR Plan, *see* EDR Plan Ch. IX (requiring appropriate investigations). The Defender provides no legitimate reason why these standards do not apply to him.

[8] Defendants' arguments about disqualification are often contradictory. For example, defendants' assertion that Roe "withdrew" her complaint before her disqualification request was decided, ECF No. 54, at 17, contradicts their declarations. Ishida Decl., ¶ 18 ("The Chief Judge denied Plaintiff's request to disqualify, which was orally communicated to Plaintiff on January 16, 2019."). Defendants have also contradicted themselves regarding whether disqualification rulings can be appealed, *compare* ECF No. 53, at 4, *with* Ishida Decl., ¶ 18, and the identity of Roe's employer, *compare* ECF No. 53, at 4 (Chief Judge was not Roe's "employer"), *with* ECF No. 78, at 18 n.4 (Chief Judge was the "head of the agency").

Mgmt. Directive 110, 1-7 (2015) (an accused "high-level official" with "influence" over the EEO process should recuse himself). Likewise, defendants cannot dispute that EDR presiding officers do not have independent legal authority to order remedies against FDOs. JCUS at 25.

With respect to Roe's equal protection claim, defendants argue that she did not allege an "intent to discriminate."[9] ECF No. 54, at 20. But Roe has alleged that defendants downplayed the harassment and failed to act, which establishes the intent element of an equal protection claim. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 703 (4th Cir. 2018). Even worse, defendants' evidence shows that they violated Roe's constitutional rights pursuant to official policies and practices. *See* ECF No. 93, at 1–17. For example, defendants' own declarations show that in practice, the judiciary does not follow its own antidiscrimination policies requiring employers to follow Title VII principles and take appropriate action on complaints. *Id.* at 2–4. Defendants' actions provide "[e]vidence of a pattern or practice of discrimination," and are "strong evidence supporting a plaintiff's claim that she herself has been the victim of discrimination." *Bohen*, 799 F.2d at 1187.

## II.     Roe Has Adequately Pled Damages Claims Under *Davis v. Passman*.

### A.     This Case is Not a New Context.

Defendants' attempts to avoid Roe's *Bivens* claims fail, *see* ECF No. 53, at 1–5, because this case does not present a new context. Rather this case is controlled by *Davis*, which held that the Fifth Amendment provides a "cause of action" for sex discrimination that "may be redressed

---

[9] Defendants argue that the First Assistant was not Roe's supervisor. ECF No. 54, at 20. Their assertion contradicts judiciary policy, *see* ECF No. 97, Ex. A, and her allegations that he abused his supervisory authority to sexually harass her, including through a quid pro quo "plan" to raise her pay, Complaint ¶ 82; *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (supervisors "initiat[e]" employment actions or "ma[ke] recommendations regarding promotions"). Moreover, even defendants recognize that the First Assistant was second-in-charge and would have replaced the Defender if disqualified. ECF No. 53, at 12 n.9.

by a damages remedy." 442 U.S. at 249.  As the Court held, "all individuals, whatever their position in government, are subject to federal law."  *Id.* at 246.

   To avoid responsibility, defendants argue that Roe's claims are an "overarching conspiracy theory" unlike the sex discrimination experienced by the *Davis* plaintiff.  ECF No. 53, at 2.  But it has long been clearly established that sexual harassment violates the Constitution, *see Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994), and the facts of this case are not different in any way that is constitutionally "meaningful," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017).  Under the EDR Plan, defendants had a duty to "appropriately" investigate Roe's complaints and to take immediate and effective remedial action.[10]  EDR Plan Ch. IX; *see Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (plaintiff must "identif[y] the specific policies over which defendants possessed responsibility and that led to the alleged constitutional violation").  Each of the defendants violated these duties and personally engaged in "affirmative conduct . . . that played a role in the discrimination."  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citation omitted).  Thus, each defendant is being sued for "his or her own acts,"[11] *Ziglar*, 137 S. Ct. at 1860, which violated the judiciary's antidiscrimination policies.

   Defendants further contend that the Chief Judge, EDR Coordinator, and General Counsel were not Roe's "employer" or the "primary tortfeasor."  ECF No. 53, at 4; *but see* ECF No. 78,

---

   [10] Specifically, the Defender was the unit executive, *see* 18 U.S.C. § 3006A(g)(2)(A), responsible for ensuring Roe's rights under the EDR Plan, *e.g.*, EDR Plan Ch. IX.  The Chief Judge and the Defender were responsible for ensuring "that the allegations in the report [were] appropriately investigated."  *Id.*  The EDR Coordinator had a duty "[t]o provide information" to Roe "regarding the rights and protections afforded under th[e] Plan."  EDR Plan Ch. X, § 6(A).  And the General Counsel and her subordinates advised the Defender and the Fourth Circuit.  Complaint ¶¶ 222–235, 398, 407, 451, 474; *see also* Walter Decl., ¶¶ 3, 17.

   [11] Even as the General Counsel claims that her job description is a "special factor," ECF No. 53, at 3, she implicitly admits she participated in the discrimination by conflating the interests of the accused Defender and the interests of the employing office, Walter Decl., ¶ 14.

at 18 n.4 (Chief Judge was the "head of the agency"). Even if true, contrary to their assertions, what matters under the Fifth Amendment is not an official's job title or whether he was a "primary tortfeasor," but whether he violated a duty to act on sexual harassment complaints. *See*, *e.g.*, *Bohen*, 799 F.2d at 1189 (7th Cir. 1986) (city officials were liable because they were aware of harassment and tolerated it). The judiciary, and specifically the Fourth Circuit, assumed that duty by covering Roe's employing office under their EDR Plan. *See* EDR Plan Ch. IX. And of course, the Defender was unequivocally both Roe's employer and a "primary tortfeasor" as a subject of her EDR complaint. *See id.*

Defendants' arguments also contradict Roe's allegations that they participated in the discrimination by, for example, approving the Defender's discriminatory denial of promotion. *See* ECF No. 97, at 9. Moreover, each of the defendants personally involved themselves in the investigation. For example, on the advice of the General Counsel, the EDR Coordinator "received" the investigation report instead of the Defender. Complaint ¶ 265. The EDR Coordinator told Roe that if the allegations against the Defender were substantiated, then the Chief Judge would "step in" as the Defender's "supervisor." Complaint ¶ 287; *see also* Ishida Decl., ¶ 9 (Chief Judge was responsible for disciplining the Defender). And the EDR Coordinator and Chief Judge relied on the directives of John Doe(s) in the Office of General Counsel throughout the investigation. Complaint ¶¶ 227, 230, 398, 451, 474; *see also* Declaration of Sheryl Walter, ECF No. 94-7, ¶ 17. Defendants would not have had authority to take these actions if they were not acting, at a minimum, as agents of Roe's employer. *See* JCUS at 25 (EDR proceedings are "strictly administrative").

In addition, defendants argue that this case is about administering the EDR Plan, and not about sex discrimination, but they unduly narrow the "legal mandate" governing their conduct.[12] ECF No. 53, at 4. Defendants disregard 150 years of precedent applying the Fifth Amendment to the federal judiciary, *see Hurd v. Hodge*, 334 U.S. 24, 35–36 (1948); *Murray's Lessee v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 276 (18 How. 272) (1855), triggering the applicability of legions of cases holding that sex discrimination by all government officials, including in the judiciary, is unconstitutional. These cases are not "ancient and irrelevant," ECF No. 53, at 16, and stand for the unremarkable, but fundamental, principle that the judiciary cannot live by a different set of rules. *See In re Employment Discrimination in the Federal Judiciary*, Petition Seeking the Adoption of Equal Opportunity Plans by the Federal Judiciary at 19 (June 5, 1979).

Likewise, defendants fault Roe for "import[ing] Title VII employment concepts,"[13] ECF No. 53, at 2, but it is well-established that "[c]ourts may apply the standards developed in Title VII litigation to similar litigation" against individuals under the Constitution. *Beardsley*, 30 F.3d at 529. The Supreme Court has held that *Bivens* claims for gender discrimination are appropriate precisely because "[l]itigation under Title VII of the Civil Rights Act of 1964 has given federal courts great experience evaluating claims [of] illegal sex discrimination." *Davis*, 442 U.S. at 245. Moreover, the judiciary imposes Title VII standards through its antidiscrimination policies,

---

[12] Contrary to defendants' assertion that this case involves "different constitutional rights" from *Davis, id.*, the Fifth Amendment does not have an "Equal Protection Clause." *Davis*, 442 U.S. at 244 ("[A] cause of action may be implied directly under the equal protection component of the Due Process Clause of the Fifth Amendment.").

[13] Most disturbingly, the Defender asserts that as the head of a federal office, *see* 18 U.S.C. § 3006A, he has no legal duty to protect his employees from discrimination, ECF No. 52, at 4 n.2, or to follow the Title VII principles required by Supreme Court precedent, Judicial Conference policy, the Fourth Circuit's EDR Plan, and the Codes of Conduct. *Id.* at 14–17 (arguing that because Title VII "does not apply" to the judiciary, Title VII principles are "irrelevant"). He even describes Roe's constitutional rights as "non-existent." *Id.* at 18.

codes of conduct, and the EDR Plan. Guide to Judiciary Policy § 220.10.10; Code of Conduct

for Federal Public Defender Employees Canon 3(C); EDR Plan Ch. II, § 10B(2)(e). These

standards provide a "meaningful guide for official conduct," *see Ziglar v. Abbasi*, 137 S. Ct.

1843, 1864 (2017), and support a *Bivens* remedy, unlike novel contexts such as border security

or immigration, *Tun-Cos v. Perrotte*, 922 F.3d 514, 526 (4th Cir. 2019). If Title VII standards do

not apply, then it is unclear what standards, if any, defendants believe govern their conduct. *See*

ECF No. 54, at 10 (referencing judiciary's antidiscrimination policies since 1966).

Finally, defendants' other arguments attempt to resurrect disputes that *Davis* rejected.

For example, defendants argue that judiciary officials are a "new category" of defendants, ECF

No. 53, at 3, but as *Davis* held, "all individuals, whatever their position in government, are

subject to federal law." 422 U.S. at 246. Consistent with this holding, the Court recognized that

the decision would apply to federal employers of all excepted service employees not covered by

Title VII. *See*, *e.g.*, *id.* at 246–48; *see also* Oral Arg. Tr. 21–22. Justice Powell even stressed in

his dissent from the bench that the Court's holding "cannot be limited to the legislative branch,"

and "extend[s] equally to the executive and judicial branches." Justice Powell, Dissent from the

Bench, at 2, *available in Davis v. Passman*, Supreme Court Case Files Collection, Box 63, Lewis

F. Powell Jr. Archives, Washington & Lee University School of Law, Virginia.

Likewise, defendants' argument that the EDR Plan provided an "alternative, existing

process," ECF No. 53, at 4, ignores Roe's allegations that the Plan did not provide meaningful

remedies and was not "constitutionally adequate,"[14] *Bush v. Lucas*, 462 U.S. 367, 378 n.14

---

[14] Defendants contend that Chapters IX and X were separate proceedings under the EDR Plan, ECF No. 53, at 12, but their assertion contradicts the EDR Coordinator's statement that the investigation "overlapped" for both proceedings. Ishida Decl., ¶ 12. Roe incorporates by reference her previous discussion of how defendants raised numerous factual assertions that cannot be taken as true on a motion to dismiss. *See* ECF No. 55, at 4–21.

(1983). Though defendants contend that an alternative remedy is adequate even if it does not make a "particular plaintiff whole," ECF No. 53, at 10, Roe has alleged that the EDR process was a sham that provided *no* legally binding remedies, *e.g.*, ECF No. 93, at 15–16. Thus, the EDR process is indistinguishable from the contemporaneous, inadequate congressional employment policies that did not preclude judicial relief in *Davis*. *See* ECF No. 48, at 21–22.

**B.  The "Special Factors" Raised by Defendants Were Rejected in *Davis*.**

Defendants' "special factors" were also considered and rejected in *Davis*.

Defendants' argument that "federal employment" is a special factor misconstrues the CSRA, which does not foreclose judiciary employees' remedies for discrimination. *See supra*, at 1–5. Nor could it, because judiciary employees have a right to be free from discrimination under the Constitution. *See Koger*, 497 F.2d at 704–05 & n.7. When Congress has expanded statutory remedies for discrimination, like Title VII and the CSRA, it has only created new remedies to enforce existing rights. *See id.* Indeed, *Davis* held that Congress did not intend to "foreclose alternative remedies available to those not covered by [Title VII]," and instead left "undisturbed" those employees' remedies. 442 U.S. at 247; *cf. Tahy v. United States*, 189 F.3d 478 (10th Cir. 1999) (precluding *Bivens* remedy for FBI employee, who was covered by Title VII).

Defendants contend, however, that *Davis* did not consider the CSRA because that statute did not apply "retroactively" to the *Davis* plaintiff. ECF No. 53, at 7 n.2; ECF No. 54, at 8. Their argument fails to account for the criteria governing the Supreme Court's discretionary certiorari jurisdiction. *See* Sup. Ct. R. 10. If the CSRA eliminated excepted service employees' remedies for discrimination, then this major intervening change would have justified dismissing the writ. *See*, *e.g.*, *Lawrence on Behalf of Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (discussing Court's practice of vacating and remanding in light of "intervening developments");

*Cook v. Hudson*, 429 U.S. 165, 166 (1976) (dismissing writ as improvidently granted due to intervening statute). In addition, *Davis* would be legislatively abrogated for all excepted service federal employees after the CSRA's passage, including congressional employees, which would render the question presented one of only "isolated significance."[15] *Rice v. Sioux City Mem'l Park Cemetery*, 349 U.S. 70, 76 (1955); *see also Triangle Improvement Council v. Ritchie*, 402 U.S. 497, 499 (1971), *id.* at 498–99 (Harlan, J., concurring); *Sanks v. Georgia*, 401 U.S. 144, 147 (1971). Contrary to defendants' arguments, *Davis* has never been overturned or held to be legislatively abrogated by the CSRA. *See, e.g.*, *Hernandez v. Mesa*, 140 S. Ct. 735, 743–44 (2020); *cf.* Lindemann, *supra*, at Ch. 32.III.E (noting that the Congressional Accountability Act "legislatively abrogated *Davis* with respect to congressional employees").

Moreover, if defendants were right that the CSRA eliminated constitutional remedies for discrimination, the Court had the perfect opportunity to say so in *Bush v. Lucas*, which analyzed the constitutional remedies available to federal employees and specifically discussed the CSRA.[16] *See, e.g.*, 462 U.S. 367, 385 n.25 (1983). Instead, the Court stressed that it was *not* disturbing *Davis*'s holding or deciding whether the Constitution requires a damages remedy

---

[15] Contrary to defendants' arguments, ECF No. 54, at 8, the Congressman in *Davis* had every incentive to raise these issues, because dismissal of the writ would have preserved the Fifth Circuit's *en banc* ruling in his favor. *Davis v. Passman*, 571 F.2d 793 (5th Cir. 1978) (en banc). Other members of Congress also filed an amicus brief stating that Congress did not intend to foreclose discrimination remedies for excepted service employees. *See* Amicus Br. of the Hon. Morris Udall, et al in Support of Reversal, No. 78-5072, 1978 WL 223687, at *9–14.

[16] Defendants contend that Roe "ignores" the Supreme Court's cautionary instructions with respect to special factors in *Chappell v. Wallace*, ECF No. 53, at 8 n.3, but those instructions are not relevant because this case does not present a new context. *See* 462 U.S. 296, 298–304 (1983) (discussing special factors in race discrimination case involving the military). Defendants do not explain how *Chappell*, which involved a separate justice system pursuant to Congress's Article I "plenary authority" over the military, applies to the judiciary. *See id.* at 301. The judiciary does not, and could not, assert plenary authority over its 30,000 federal employees.

when existing remedies are not "constitutionally adequate." *Id.* at 378 n.14.  Since then, the

Court has confirmed that "alleged gender discrimination in employment" is an "appropriate"

context for a *Bivens* claim.  *FDIC v. Meyer*, 510 U.S. 471, 484 n.9 (1994).

In addition, defendants contend that providing remedies for discrimination would infringe

on "judicial independence."  ECF No. 53, at 8–9.  But that line of reasoning was rejected in

*Davis*, which held that any "special concerns" about an official's duties are "coextensive" with

existing immunity doctrines.  *See* 442 U.S. at 246.  In fact, defendants' position was vigorously

advocated by the *Davis* dissenters, who argued that the majority's decision "presents very grave

questions of separation of powers."  *Id.* at 249 (Burger, J., dissenting); *see also id.* at 251

(Powell, J., dissenting) (criticizing majority's "intrusion upon the legitimate powers of Members

of Congress").  Defendants' outdated notion of a coequal branch of government's

"independence" was rejected more than forty years ago and cannot prevail today.[17]

Defendants' remaining arguments merely dispute the complaint's allegations that the

EDR process failed to provide meaningful remedies and review.  *See* ECF No. 53, at 11–13.

What defendants fail to recognize is that Roe's complaint raises constitutional defects in the

EDR process that have never been addressed by any court.  Thus, the court of appeals cases that

defendants rely upon do not support their argument because those cases wrongly presume,

contrary to the complaint's allegations, that the EDR process was an "adequate remedial

scheme."  *Id.* (quoting *Kostishak v. Mannes*, 145 F.3d 1325, 1999 WL 196607 at *2 (4th Cir.

1998) (unpub.)); *see also id.* at 10 (citing statement in *Dotson v. Griesa* that the EDR process

---

[17] In fact, defendants' arguments advocate judicial supremacy over co-equal branches of government and other employers.  *See* Charles Grassley and Jennifer Shaw Schmit, *Practicing What we Preach: A Legislative History of Congressional Accountability*, 35 HARV. J. ON LEGIS. 33, 49 (1998) (noting that judiciary's position "indicates that the Judiciary believes that its work is more important than the work of any other American business or branch of government").

provides "comprehensive review procedures" and "review by judicial officers"). Roe has "no effective means other than the judiciary" to "vindicate" her rights. *Davis*, 442 U.S. at 243.

### C. Defendants Are Not Entitled To Qualified or Absolute Immunity.

Defendants' immunity arguments also fail. Defendants argue that Roe has not defined the constitutional violation with "specificity." ECF No. 53, at 16. However, it has long been clearly established that government officials who "conscious[ly] fail[ed]" to act on, "acquiesced" in, or "d[id] nothing" in response to sexual harassment violate the Constitution. *Bohen*, 799 F.2d at 1185; *Andrews*, 895 F.2d at 1478; *Cross v. State of Ala.*, 49 F.3d 1490, 1503 (11th Cir. 1995); *Beardsley*, 30 F.3d at 530 (citing *Bohen* with approval and noting that "sexual harassment has long been recognized to be a type of gender discrimination"); *Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999); *Bator v. Hawaii*, 39 F.3d 1021, 1029 (9th Cir. 1994). Even an official who is not "entirely unresponsive" will be liable for not "engag[ing] in efforts that were reasonably calculated to end the harassment." *Feminist Majority Found.*, 911 F.3d at 689. The test is whether the official's conduct was "clearly unreasonable" or "deliberately indifferent," *id.* at 701–02, which describes defendants' conduct here.

In the context of sexual harassment specifically, courts have long emphasized that officials may be liable "[e]ven under novel factual circumstances," *id.* at 704, so long as "a reasonable government official in the defendants' shoes would have understood that the prohibition against sexual harassment extended to their [conduct]," *Markham v. White*, 172 F.3d 486, 492 (7th Cir. 1999); *see also Johnson*, 195 F.3d at 1216; *Andrews*, 895 F.2d at 1479–80. Defendants' arguments that they were not Roe's "employer" or a "primary tortfeasor" ignore this commonsense standard, which imposes liability on officials who violate a duty to act on harassment. *See supra*, at 16–17. Their arguments are especially unavailing given that they

were on notice of the standards governing their conduct through the judiciary's codes of conduct and the EDR Plan. *See*, *e.g.*, Guide to Judiciary Policy § 220.10.10; EDR Plan Ch. II, § 1. No reasonable officer would believe it was acceptable to engage in "serious violations" of the judiciary's antidiscrimination policies. *Ziglar*, 137 S. Ct. at 1864.

If qualified and absolute immunity are not outright denied, defendants' arguments raise disputes that cannot be resolved on dismissal. *Al Shimari*, 679 F.3d at 221 (court cannot rule on "a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of the events actually occurred" at dismissal stage). Whether defendants consciously failed to act on harassment raises questions of fact that cannot be resolved on a motion to dismiss. Likewise, any claim of absolute immunity depends on whether EDR is a type of judicial proceeding, and if so, whether it contained sufficient procedural safeguards to support absolute immunity on the facts of this case. *Cf.* JCUS at 25 (EDR proceedings are "strictly administrative"). Though defendants assert that the EDR Plan provided "robust procedural protections" and that Roe simply did not "avail herself" of them, ECF No. 53, at 14, they merely dispute her allegations.

### III.    Roe Has Adequately Pled Claims Under 42 U.S.C. §§ 1985(3), 1986.

Defendants argue that the CSRA implicitly repealed Sections 1985(3) and 1986, but their analysis is oversimplified. *See, e.g.*, ECF No. 52, at 21–22; ECF No. 53, at 18. Defendants rely on cases involving competitive service employees who did not bring equal protection claims. *See* ECF No. 53, at 18 (citing *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000)). By contrast, the CSRA did not repeal longstanding equal protection remedies for excepted service employees. Instead, Congress left "undisturbed" the "alternative remedies" those employees possess. *Davis*, 442 U.S. at 247. Because the "statutes are capable of co-existence," courts must "regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

Defendants also argue that Roe's allegations are "conclusory" and do not show "discriminatory intent," ECF No. 53, at 19–20, but the complaint fully sets out a conspiracy to violate Roe's equal protection rights.  Defendants coordinated their actions throughout the EDR process, including the decisions to withhold the report, deny disqualification, and delay any remedial action.  *Supra*, at 12–15.  Defendants' arguments even concede that they worked together because, for example, the General Counsel was advising the Defender and the Fourth Circuit on Roe's complaint.  Walter Decl., ¶¶ 3, 17.  In addition, Roe has alleged that the defendants acted with discriminatory animus because they engaged in "unjustified unequal treatment" because of her sex.  *Bohen*, 799 F.2d at 1185.  Even if some of the defendants did not personally act with class-based, discriminatory animus, they are still liable for violating her equal protection rights.  *See* Linda E. Fisher, *Anatomy of a Duty to Protect*: *42 U.S.C. Section 1986*, 56 WASH. & LEE L. REV. 461, 464 (1999); *Clark v. Clabaugh*, 20 F.3d 1290, 1298 (3d Cir. 1994).

Finally, the intracorporate-conspiracy doctrine does not apply.  As defendants' own arguments confirm, *see* ECF No. 53, at 4, the judiciary is inherently decentralized because no one office is in any other office's chain of command, especially with respect to federal defenders.  *Cf. Ziglar*, 137 S. Ct. at 1867 (noting that officers being sued were within in the Department of Justice).  Moreover, defendants' acts were "unauthorized" and violated the judiciary's antidiscrimination policies.  *Buschi v. Kirven*, 775 F.2d 1240, 1253 (4th Cir. 1985).  Their actions also "involved a series of acts over time going well beyond simple ratification of a managerial decision."  *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984).

## CONCLUSION

For all these reasons, defendants' motions to dismiss should be denied and Roe's motions for partial summary judgment, ECF Nos. 60, 76, should be granted.

This the 16th day of November, 2020.

Respectfully Submitted,

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

      Gill P. Beck at Gill.Beck@usdoj.gov

      Joshua M. Kolsky at Joshua.kolsky@usdoj.gov

      Rachael Westmoreland at rachael.westmoreland@usdoj.gov

      Shannon Sumerall Spainhour at mss@dhwlegal.com

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com