# EXHIBIT A

# Employment Dispute Resolution Interpretive Guide & Handbook

## A Guide to the 2019 Model EDR Plan

Issued January 1, 2020

by the EDR Working Group and

the Office of Judicial Integrity

# TABLE OF CONTENTS

EDR: a Key Element of an Exemplary Workplace ........................................................................... 1

Employees may always report wrongful conduct ........................................................................ 2

This Handbook ........................................................................................................................... 3

I.   Basics of the Employment Dispute Resolution Plan ........................................................... 4

A.   What is EDR? ................................................................................................................. 5

B.   Who is Covered by the Model EDR Plan? ..................................................................... 6

C.   What Is "Wrongful Conduct" Under the Model EDR Plan? ............................................ 7

D.   What Are the Options for Resolution Under the Model EDR Plan? ............................. 10

1.   Informal Advice ................................................................................................... 10

2.   Assisted Resolution ............................................................................................. 10

3.   Formal Complaint ............................................................................................... 11

4.   Allegations Involving a Judge: Special Procedures ............................................ 12

E.   How Is the Model EDR Plan Different From Other Complaint Processes or Policies? ..... 14

1.   Grievance and Adverse Action Appeals .............................................................. 14

2.   Judicial Conduct and Disability .......................................................................... 16

II.  Procedural Rights and Protections ................................................................................... 18

A.   Confidentiality ............................................................................................................ 19

1.   The Confidentiality Provision in the EDR Plan ................................................... 19

2.   Application of the Confidentiality Provision ...................................................... 21

B.   Impartiality ................................................................................................................. 25

C.   Other Procedural Rights and Protections ................................................................... 27

1.   Right to Representation ...................................................................................... 27

2.   Retaliation Is Prohibited .................................................................................... 27

3.   EDR Does Not Confer Due Process Rights for Alleged Violator ........................... 27

III. EDR Coordinators ............................................................................................................. 29

A.   What Is an EDR Coordinator? ..................................................................................... 30

B.   What Are the Important Qualities of an EDR Coordinator? ........................................ 31

C.   Who Should Be an EDR Coordinator? ......................................................................... 32

1.   Unit Executives May Not Be EDR Coordinators. ................................................. 32

2.   Judges May Not Be EDR Coordinators. ............................................................... 33

3.   What About HR Professionals? ........................................................................... 34

Case 1:20-cv-00066-WGY   Document 101-1   Filed 12/18/20   Page 3 of 144

D.    Training and Certification of EDR Coordinators ................................................................. 35

IV.    The EDR Process Step by Step: ................................................................................................ 36

A.    Informal Advice .......................................................................................................................... 37

    1.    Responsibilities of the EDR Coordinator or Director of Workplace Relations ...................... 38

B.    Assisted Resolution ................................................................................................................... 40

    1.    Assisted Resolution Allegations Involving a Unit Executive or a Judge ................................ 41

    2.    The Responsibilities of the Unit Executive (or Chief Judge) ................................................. 42

    3.    The Responsibilities of the EDR Coordinator (or Director of Workplace Relations) ........... 43

    4.    Preliminary Investigation ....................................................................................................... 45

    5.    Facilitated Discussions ............................................................................................................ 45

    6.    Mediation ................................................................................................................................ 46

    7.    Settlement and Documentation .............................................................................................. 50

    8.    Possible Outcomes Following Assisted Resolution ................................................................ 51

C.    Informal Advice and Assisted Resolution Checklists for EDR Coordinators (or DWRs) ........... 52

    1.    Meeting With the Employee ................................................................................................... 52

    2.    Meeting With the Employing Office or Chief Judge ............................................................... 56

D.    Tips on Effective Listening ........................................................................................................ 58

V.    Formal Complaint ......................................................................................................................... 60

A.    The Formal Complaint Process ................................................................................................. 61

B.    The EDR Coordinator's and Chief Judge's Initial Actions ........................................................ 65

C.    Guidance for the Presiding Judicial Officer .............................................................................. 67

    1.    The Presiding Judicial Officer's Role ....................................................................................... 67

    2.    Issues That May Arise ............................................................................................................. 70

    3.    Alleged Violator Participation in the Formal Complaint Process ........................................... 71

    4.    Holding the Formal Complaint in Abeyance .......................................................................... 72

    5.    Pre-Hearing Motions ............................................................................................................... 72

    6.    Investigation and/or Discovery .............................................................................................. 73

    7.    Decision Without a Hearing .................................................................................................... 75

    8.    Hearing .................................................................................................................................... 76

    9.    The Written Decision ............................................................................................................... 78

D.    Remedies ................................................................................................................................... 79

    1.    Interim Relief ........................................................................................................................... 79

    2.    Authority to Order Remedies .................................................................................................. 79

    3.    Purpose and Intent of Remedies Under the Plan ................................................................... 80

    4.    Available Remedies ............................................................................................................ 80

    5.    Prohibited Remedies ........................................................................................................ 82

  E.   Checklist of Presiding Judicial Officer Responsibilities ..............................................83

  F.   EDR Coordinator Responsibilities ................................................................................85

  G.  Employing Office Considerations .................................................................................90

  H.  Guidance for an EDR Investigator ...............................................................................95

    1.    Standard Investigation Practices ......................................................................................95

    2.    Purpose and Scope of the Investigation.............................................................................96

    3.    Planning the Investigation.................................................................................................96

    4.    Interview Tips.....................................................................................................................97

    5.    The Investigation Report ................................................................................................ 100

VI.   Request For Review of Decision ................................................................................. 101

  A.   Procedures .................................................................................................................. 102

  B.   EDR Coordinator's Responsibilities ......................................................................... 102

VII.  Administrative Responsibilities of the EDR Coordinator........................................... 103

  A.   Inform Employees  About EDR .................................................................................. 104

  B.   The EDR Record ........................................................................................................ 106

    1.    Retention of the Record ................................................................................................... 107

    2.    Public Requests for EDR Decision ................................................................................. 107

  C.   Annual Reporting ....................................................................................................... 108

VIII.  The Employment Laws and Policies Applied to the Judiciary by the Model EDR Plan ........... 109

  A.   Discrimination, Discriminatory Harassment, Abusive Conduct, and Retaliation.................... 110

    1.    Discrimination ................................................................................................................. 110

    2.    Discriminatory Harassment............................................................................................. 111

    3.    Abusive Conduct.............................................................................................................. 112

    4.    Retaliation ........................................................................................................................ 113

  B.   Family and Medical Leave, Uniformed Services Employment, Whistleblower Protection, Workforce Adjustment, Occupational Safety, and Polygraph Protection........................... 114

    1.    Family and Medical Leave Act of 1993............................................................................ 114

    2.    Uniformed Services Employment and Reemployment Rights Act of 1994............................ 114

    3.    Whistleblower Protection.................................................................................................. 114

    4.    Workforce Adjustment...................................................................................................... 115

    5.    Occupational Safety (Occupational Safety and Health Act) ............................................ 116

    6.    Polygraph Protection........................................................................................................ 116

IX.     Sample Documents ................................................................................................. 117

    Sample Docket Sheet ............................................................................................... 118

    Sample Notice of Receipt of Request for Assisted Resolution ............................... 119

    Sample Notice to Unit Executive of Request for Assisted Resolution .................... 120

    Sample Notice Ending Assisted Resolution ............................................................ 121

    Sample Notice of Receipt of Formal Complaint to Complainant ........................... 122

    Sample Notice to Chief Judge of Receipt of Formal Complaint ............................. 124

    Sample Email to Presiding Judicial Officer Re: Formal Complaint ....................... 125

    Sample Notice of Hearing ....................................................................................... 127

    Sample Order – Scheduling Order .......................................................................... 128

    Sample Order – Order Extending Hearing Date ..................................................... 130

    Sample Order – Briefing Order ............................................................................... 132

    Sample Notice of Presiding Judicial Officer's Decision ........................................ 133

    Anti-Discrimination and Anti-Harassment Notice ................................................ 134

Additional Resources From the Administrative Office of the United States Courts ............ 135

Index ....................................................................................................................................... 136

# EDR: A KEY ELEMENT OF AN EXEMPLARY WORKPLACE

In Chief Justice John G. Roberts, Jr.'s 2017 and 2018 Year-End Reports, he described the Judiciary's commitment to protecting all Judiciary Employees from improper workplace behavior and ensuring an exemplary workplace of fairness, dignity, and respect for every Judiciary Employee.

The Judicial Conference adopted the 2019 Model Employment Dispute Resolution (EDR) Plan on September 17, 2019. The 2019 Model EDR Plan affirms the Judiciary's commitment to an exemplary workplace, free of discrimination and harassment. It prohibits certain conduct in the Judiciary, called "wrongful conduct," including discrimination or harassment based on race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age (40 years and over), or disability, and abusive conduct regardless of motivation. It describes the employment rights and protections provided to Judiciary Employees, such as family and medical leave and reasonable accommodations for disabilities. It prohibits retaliation for reporting or opposing wrongful conduct, or otherwise participating in any of the resolution procedures under the EDR Plan, and retaliation against whistleblowers. Every federal Court must adopt an EDR Plan based on the Model EDR Plan.

The 2019 Model EDR Plan provides multiple, informal, and flexible ways to report and resolve workplace conduct issues ("Options for Resolution"); requires fair, conflict-free resolution procedures; extends the deadline to file an EDR Complaint to 180 days; and expands coverage to interns and externs. The Options for Resolution are Informal Advice, Assisted Resolution, and Formal Complaint. A Judge appointed as a Presiding Judicial Officer oversees and decides all Formal Complaints.

EDR Coordinators facilitate resolution of disputes asserted under EDR Plans by educating Employees and Employing Offices about their rights and responsibilities under their Court's EDR Plan and providing all parties with fair, neutral guidance. EDR Coordinators never decide EDR matters – that is the role of the Presiding Judicial Officer – but they do facilitate informal Options for Resolution.

## EMPLOYEES MAY ALWAYS REPORT WRONGFUL CONDUCT

The EDR Plan is only one option for reporting wrongful conduct concerns. Nothing in the EDR Plan prevents an Employee from reporting and seeking resolution of wrongful conduct from a supervisor, Unit Executive, HR Professional, Judge, Circuit Director of Workplace Relations, or the national Office of Judicial Integrity.

No ethical and confidentiality obligations are violated when an Employee reports harassment or any other wrongful conduct. To the contrary, the EDR Plan encourages Employees to report wrongful conduct.

Case 1:20-cv-00066-WGY   Document 101-1   Filed 12/18/20   Page 8 of 144

# THIS HANDBOOK

This Handbook provides guidance about the 2019 Model EDR Plan and its Options for Resolution. It is both a handbook and an interpretive guide for use by Unit Executives, Employees, EDR Coordinators, Directors of Workplace Relations, and Judges, including Chief Judges and Presiding Judicial Officers.

All references in this Handbook to the "Model EDR Plan," the "EDR Plan" or the "Plan" refer to the 2019 Model EDR Plan. Consult your Court's EDR Plan to note any differences between it and the Model EDR Plan.

Capitalized terms in this Handbook have the same meaning as in the Definitions section of the Model EDR Plan (Appendix 1). This Handbook, the Model EDR Plan, and other EDR resources can be found on the JNet, via the Workplace Conduct Quick Link on the JNet's homepage.

A person alleged to have violated rights under the Model EDR Plan is referred to in this Handbook as the "alleged violator," but to be clear: Formal EDR Complaints are filed against the appropriate Employing Office, never against the alleged violator or any individual.

The national Office of Judicial Integrity is available to answer EDR questions, including questions about EDR rights and Options for Resolution; the roles and responsibilities of EDR Coordinators and Presiding Judicial Officers; and EDR training for Employees, Unit Executives and Managers, and EDR Coordinators. *See Additional Resources*, Handbook, at 135. The Office of Judicial Integrity welcomes any and all comments about this Handbook, including suggestions for areas of additional guidance for inclusion in the 2021 Handbook.

# I. BASICS OF THE EMPLOYMENT DISPUTE RESOLUTION PLAN

# A.  WHAT IS EDR?

The Model EDR Plan provides judicial branch employees (Employees), including employees of the Federal Public Defenders, with certain employment protections and rights and both informal and formal ways to resolve disputes with their Employing Office about whether those rights were violated.

Many federal employment laws do not apply to Employees of the federal judicial branch. For example, Title VII of the Civil Rights Act, which prohibits discrimination or harassment based on protected classes such as race, gender, or religion, exempts judicial branch Employees from coverage.  Similarly, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (a mirror of the ADA for executive branch Employees), do not apply to the federal judicial branch.

The Judicial Conference, however, has prohibited conduct in the Judiciary workplace that would violate these and other federal employment laws.  It did so by adopting a Model EDR Plan, which provides Employees protection from discrimination, harassment, abusive conduct, retaliation, and violations of certain employment laws.  The employment laws protected by the Model EDR Plan (the EDR Laws) are set out in detail in *The Employment Laws and Policies Applied to the Judiciary by the Model EDR Plan*, Handbook Ch. VIII, and the *Guide to Judiciary Policy*, Vol. 12, Ch. 2.

The 2019 Model EDR Plan offers three Options for Resolution of EDR matters:  Informal Advice or Assisted Resolution, both facilitated by an EDR Coordinator located in an Employee's Court (and in some Circuits, by a Director of Workplace Relations), and an administrative Formal Complaint process, overseen and decided by a federal Judge, called a Presiding Judicial Officer (sometimes abbreviated in this Handbook as the PJO).

The Judicial Conference has directed each Court to adopt its own EDR Plan based on the 2019 Model EDR Plan.  Individual Court EDR Plans can differ, but any variation from the Model EDR Plan must be approved by the Circuit's Judicial Council.

Some Circuits have a Director of Workplace Relations who coordinates workplace conduct issues circuit-wide.  The Model EDR Plan states that Circuit Directors of Workplace Relations (frequently abbreviated in this Handbook as DWRs) may provide Informal Advice and Assisted Resolution.

**This Handbook describes the 2019 Model EDR Plan.  You need to be aware of any differences in your Court's EDR Plan.**

# B.   WHO IS COVERED BY THE MODEL EDR PLAN?

The rights and protections in the Model EDR Plan apply to all:

- Current and former Employees, defined as:
    - Unit Executives and their staffs;
    - judicial assistants and other chambers employees;
    - law clerks;
    - federal public defenders, chief probation officers, chief pretrial services officers, and their respective staffs;
    - court reporters appointed by a Court; and
    - paid and unpaid interns, externs, and other volunteer employees.  *See* Plan Definitions, Appendix I; and
- Applicants for employment who have been interviewed.  *See* Plan § I.

The following persons cannot seek relief under the Model EDR Plan:

- Judges (Judges must, however, comply with all obligations in the Model EDR Plan);
- Applicants for judicial appointment;
- Criminal Justice Act panel attorneys and applicants;
- Outside investigators and service providers;
- Community defender employees;
- Volunteer mediators; and
- Any other non-Employees.  *See* Plan § I.

# C. WHAT IS "WRONGFUL CONDUCT" UNDER THE MODEL EDR PLAN?

The term "wrongful conduct" is used in the Model EDR Plan to describe the conduct that is prohibited in the workplace by Judicial Conference policy and for which an Employee can seek a resolution or remedy under the Model EDR Plan. Wrongful conduct is:

- discrimination based on race, color, national origin, sex, gender, gender identity, pregnancy, sexual orientation, religion, and age (40 years and over);
- racial, sexual, and other discriminatory harassment;
- abusive conduct (a pattern of demonstrably egregious and hostile conduct without regard to motivation);
- retaliation for reporting misconduct, participating in an EDR matter, and properly reporting waste, fraud and abuse, violations of laws or regulations, and gross mismanagement; and
- violations of any of the EDR Laws and Judicial Conference policies.

*See* Plan § II. For more information about each of the EDR Laws, *see The Employment Laws and Policies Applied to the Judiciary by the Model EDR Plan*, Handbook Ch. VIII, and the *Guide to Judiciary Policy*, Vol. 12, Ch. 2.

**EDR Employment Laws.** Wrongful conduct includes violations of the following employment laws:

- Title VII of the Civil Rights Act of 1964: prohibits protected-class discrimination in personnel actions and protected-class harassment;

- Age Discrimination in Employment Act of 1967 (ADEA): prohibits employment discrimination against persons 40 years of age and older;

- Americans with Disabilities Act of 1990 (ADA) & Rehabilitation Act of 1973: prohibits employment discrimination against persons with disabilities and requires Employing Offices to provide reasonable disability accommodations to qualified persons;

- Family and Medical Leave Act of 1993 (FMLA): provides rights and protections for Employees who need unpaid leave for their serious health conditions or those of close family members, or for the birth or adoption of a child;

7

- Uniformed Services Employment and Reemployment Rights Act (USERRA): protects Employees who also serve in the uniformed services from employment discrimination and provides certain reemployment rights;

- Occupational Safety and Health Act of 1970 (OSHA): requires Employing Offices to comply with occupational health and safety standards and provide a workplace free of known hazards;

- Worker Adjustment and Retraining Notification Act (WARN): under narrow circumstances, requires that Employees be given advance notice of a mass layoff or courthouse closure; and

- Employee Polygraph Protection Act of 1998 (EPPA): restricts the use of polygraph testing.

**Judicial Conference Policy.** Judicial Conference Policy also prohibits abusive conduct and retaliation, for which Employees can seek relief under the Model EDR Plan:

- Abusive Conduct: The Model EDR Plan prohibits "abusive conduct," defined as a pattern of demonstrably egregious and hostile conduct *not* based on a Protected Category that unreasonably interferes with an Employee's work and creates an abusive working environment. Abusive conduct is threatening, oppressive, or intimidating. Abusive conduct does not include communications and actions reasonably related to performance management.

- Retaliation: The Model EDR Plan broadly prohibits any retaliation against an Employee for reporting wrongful conduct that s/he experienced or observed; asserting any of the rights protected by the Plan or using any of the Plan's Options for Resolution; or participating in any way in an EDR process, including being a witness or taking actions as the EDR Coordinator.

- Retaliation against Whistleblowers: The Model EDR Plan prohibits retaliation against an Employee who properly reports waste, fraud and abuse; violations of laws, regulations and rules; or gross mismanagement. The Whistleblower Protection Provision is set forth in the *Guide to Judiciary Policy*, Vol. 12, Ch. 2. § 220.10.20(c).

- NOTE: Equal Employment Opportunity: It is Judicial Conference policy to provide equal employment opportunities and to provide and facilitate diversity and inclusion

in its workforce. Courts must ensure that all appropriate vacancies (excluding chambers law clerks and judicial assistants) are publicly announced and that all hiring, promotion, and other employment decisions are based solely on job-related factors and an evaluation of a person's qualifications and ability to perform the job duties. Employees should be provided with equal opportunities for promotions and advancement opportunities. *See Guide to Judiciary Policy*, Vol. 12, Ch. 2. § 230.

Violations of Section 230 do not, however, create a separate cause of action under the Model EDR Plan.

# D.  WHAT ARE THE OPTIONS FOR RESOLUTION UNDER THE MODEL EDR PLAN?

The Model EDR Plan includes three Options for Resolution:  Informal Advice, Assisted Resolution, and Formal Complaint.  This page briefly summarizes the Options, which are explained in greater detail in later chapters of the Handbook.  Although the Plan does not impose a time limit for Informal Advice and Assisted Resolution, prompt reporting can result in the most effective resolution.  **Using Informal Advice or Assisted Resolution does not extend the 180-day deadline to file a Formal Complaint**.

An Employee can use any or all of the Options for Resolution, with one exception:

> **Employees who seek to resolve alleged abusive conduct in the workplace through EDR must first request Assisted Resolution before filing a Formal Complaint.**

*See* Plan § IV(C)(2)(a).

## 1.  *Informal Advice*

Informal Advice allows an Employee to seek confidential guidance about a workplace conduct concern with one of the Court's EDR Coordinators, a Circuit Director of Workplace Relations, or the national Office of Judicial Integrity.  This discussion can be entirely confidential—that is, the Employee can ask that no action be taken on the issue, including disclosure to others—unless there is a risk to safety or security, or the allegation is so serious or egregious that it threatens the integrity of the Judiciary. *See Confidentiality*, Handbook § II(A).

*See Informal Advice*, Handbook § IV(A) and Plan § IV(C)(1).

## 2.  *Assisted Resolution*

Assisted Resolution allows an Employee to request help with a workplace conduct concern without filing a Formal Complaint. An Employee simply fills out a Request asking for his/her desired assistance or resolution of a concern.  There are no "rules" for what that help may be.  Assisted Resolution is intended to be uncomplicated.  It might include discussions facilitated by the EDR Coordinator, voluntary mediation with an experienced mediator, or any other assistance that may resolve the issue.

**Who Assesses and Addresses the Request?**

*Unit Executive*:  The Unit Executive of the Employing Office assesses the Request and determines how best to resolve it if the alleged violator named in the Request is anyone other than a Unit Executive or a Judge.

*Chief Judge*:  If the alleged violator named in the Request is a Unit Executive or a Judge, then the Chief Judge of the Court is responsible for assessing the Request and deciding any appropriate response or resolution.

The Unit Executive or Chief Judge may propose a different resolution than sought by the Employee or may deny the Request under Plan § IV(C)(2)(d).  The goal, however, is to resolve the concern informally and in a mutually agreeable way.  The EDR Coordinator (or Chief Judge) decides when the Assisted Resolution process is no longer likely to resolve the dispute and should end.

Because the Employee is seeking help, information about the issue will be shared with those whose help is needed to address the matter.  *See Confidentiality*, Handbook § II(A).

*See Assisted Resolution*, Handbook § IV(B) and Plan § IV(C)(2).

## 3.  *Formal Complaint*

The Formal Complaint option allows an Employee to engage in a structured, formal process overseen by a Presiding Judicial Officer.  The Parties are entitled to have all of the claims in the Complaint decided by a Judge; to have the matter thoroughly and fairly investigated to the extent necessary under the circumstances; to resolve disputed material facts at a hearing before the Judge, if appropriate; to present and cross-examine witnesses at any hearing; to have a timely written decision based on available legal precedent; and to have the Circuit Judicial Council review a decision.

A Complaint must be filed within 180 days of the alleged violation of EDR rights or when the Employee knows or should have known of the alleged violation.  *See* Plan § IV(C)(3)(a).  NOTE: Seeking Informal Advice or Assisted Resolution does not extend the 180-day deadline to file an EDR Complaint, although Parties can request the Chief Judge or Presiding Judicial Officer to extend that deadline for good cause.  *See* Plan § IV(C)(3)(a).  "Good cause" might include the Parties' attempts to resolve the matter informally in Assisted Resolution or mediation.

11

Allegations of "abusive conduct" must first be raised in a Request for Assisted Resolution before the Employee can file a Complaint. *See* Plan § IV(C)(3)(b). All other EDR allegations, however, can first be raised in a Formal Complaint without any other filing prerequisites.

The filing of a Complaint begins an administrative proceeding that includes:

- o The right to have the allegation(s) decided by a Presiding Judicial Officer who oversees the Complaint process and makes all decisions;
- o The right to a hearing to resolve any relevant, material factual disputes;
- o The right to a written decision; and
- o The right to seek review of the Presiding Judicial Officer's decision by the Circuit Judicial Council.

*See Formal Complaint,* Handbook Ch. V, and Plan § IV(C)(3).

## 4. *Allegations Involving a Judge: Special Procedures*

All of the Options for Resolution may be used by an Employee who is alleging that a Judge has engaged in wrongful conduct as defined in the Model EDR Plan. Plan § IV(B)(5). But special procedures and notifications apply so that any potential misconduct by a judge is brought to the attention of the appropriate district or circuit Chief Judge, who must take appropriate action if there is reliable evidence of a reasonable likelihood of judicial conduct that violates the Code of Conduct for United States Judges. *See id.*, Canon 3(B)(6).

Briefly:

- A Request for Assisted Resolution that includes allegations a Judge violated EDR rights must be addressed by the appropriate Chief District Judge or Chief Circuit Judge. These special Assisted Resolution procedures are discussed in greater detail in *Assisted Resolution Allegations Involving a Unit Executive or a Judge*, Handbook § IV(B)(1), and Plan § IV(C)(2)(b).

- A Complaint that includes allegations that a Judge violated EDR rights must be handled by the Chief Circuit Judge. These special Complaint procedures are discussed in greater detail in *Special Procedures for Complaint Allegations Involving a Judge*, Handbook § V(A), and Plan § IV(C)(3)(d).

An Employee may also file a complaint alleging judicial misconduct under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364 (JC&D). EDR Coordinators and Directors of Workplace Relations must be prepared to explain this process to an Employee, including the required filing procedures.

NOTE: If the allegations involve sexual or other discriminatory harassment, abusive conduct, or retaliation by a Judge, the Chief Circuit Judge and/or Presiding Judicial Officer should consider the need for any necessary or appropriate interim relief. *See Interim Relief*, Handbook § V(D)(1).

# E. HOW IS THE MODEL EDR PLAN DIFFERENT FROM OTHER COMPLAINT PROCESSES OR POLICIES?

## 1. *Grievance and Adverse Action Appeals*

Some Employing Offices have grievance policies that typically permit an Employee to file a grievance to resolve common workplace matters such as:

- co-worker interactions;
- Employee-supervisor interactions;
- working facilities and conditions;
- work assignments; and
- application of personnel policies or procedures.

The EDR Plan is not available to challenge these types of office grievances. Thus, the EDR Plan typically does not cover the same conduct or issues as are covered by an Employing Office's grievance policy.

Similarly, some Employing Offices have adopted adverse action appeal procedures that allow an Employee to appeal certain adverse action decisions, such as a suspension or termination. An adverse action appeal provides an additional level of review to an adverse action **decision**. In other words, if an Employing Office has an adverse action policy that requires notice and an opportunity to be heard prior to an adverse action decision, the adverse action appeal challenges the decision and is subsequent to, and separate from, the opportunity to respond to a **proposed** adverse action. In contrast, the EDR Plan only prohibits adverse employment actions that violate rights under the EDR Plan. Thus, the EDR Plan usually does not address the same types of issues covered by adverse action appeals.

There may be situations, however, where a workplace conduct issue could be covered by both an Employing Office's grievance or adverse action appeals and the Model EDR Plan.

For example:

- A dispute about teleworking might be covered by both a grievance policy and the Employee's ADA rights under the Model EDR Plan.

14

- A termination decision might be subject to challenge under both an adverse action appeal and as a violation of one of the EDR Laws.

- An Employee's claim that her Employing Office failed to address reports that a co-worker was being verbally abusive might be resolved either through a grievance policy that prohibits profanity or through the EDR Plan, which prohibits abusive conduct.

Thus, there may be times when it is unclear whether an allegation is best resolved by the EDR Plan or a grievance or adverse action appeal.

**Can an Employee file both a grievance or adverse action appeal and an EDR Request or Complaint?** The answer depends on each Court's policy. Some Courts allow an Employee to file both a grievance or adverse action appeal and an EDR Request for Assisted Resolution or Complaint but combine the two processes into one proceeding. Other Courts, however, have policies requiring an Employee to choose only one option.

It is essential that an EDR Coordinator warn an Employee about any Court policy that requires the Employee to elect between proceeding under the EDR Plan or another process. An EDR Coordinator must be able to explain the differences between these processes, and the benefits and risks of the Employee's choice.

Even when Employees must elect between EDR and another process, there may be cases in which the Chief Judge or the Presiding Judicial Officer decides it is best to transfer an allegation under EDR to another process, or vice versa. For example, if an Employee files a grievance claim alleging a supervisor is treating her unfairly, but an investigation reveals evidence the unfair treatment is motivated by protected-class discrimination, the Employee might be entitled to remedies under the EDR Plan that are not available under a grievance policy. Or, if an Employee files an EDR Complaint alleging an employment decision was discriminatory and the investigation finds a violation of the Court's procedural protections but no discrimination, the best resolution might be under the Court's adverse action appeal process.

**Can an Employee file a federal civil action claiming a violation of the EDR Laws?** The short answer is "No." The EDR Plan is intended to be the exclusive remedy of Judiciary Employees relating to the employment rights covered by the EDR Plan. *See In re Levenson*, 587 F.3d 925, 935 (9th Cir. 2009); *see also Semper v. United States*, 694 F.3d 90, 95–96 (Fed. Cir. 2012) (joining other Circuits holding that Congress did not intend for federal judicial branch employees, who are not entitled to review of employment decisions under the Civil Service Reform Act, to have alternative means of "gain[ing] access to

[federal Courts] as a forum in which to adjudicate their personnel claims"); *Dotson v. Griesa*, 398 F.3d 156, 175–80 (2d Cir. 2005) (stating that the "Model [EDR] Plan endorsed by the Judicial Conference and subsequently adopted by each federal Court is expansive," and "federal judicial branch employees . . . are precluded from pursuing . . . damages actions [in federal Court] for adverse employment decisions" or seeking equitable relief such as reinstatement "precisely because the Judiciary's administrative review process itself affords an employee one or more levels of judicial review"); *Semper v. Gomez*, No. 12-79, 2013 WL 2451711, at *6 (D.V.I. June 4, 2013) (explaining that "[t]he lack of remedy for plaintiff, a former judicial branch employee . . . under any statute must be understood in context. The Judiciary has developed its own mechanisms to deal with employment issues in the absence of these other remedies," then describing the Model EDR Plan coverage and process).

## 2. *Judicial Conduct and Disability*

If an Employee believes s/he has been harassed, discriminated against, or retaliated against by a Judge, or has reliable evidence of misconduct by a Judge, the Employee may file a written complaint under the Judicial Conduct and Disability Act (JC&D Act), 28 U.S.C. §§ 351-364, and Rules for Judicial-Conduct and Judicial-Disability Proceedings (JC&D Rules). Filing a written JC&D complaint triggers a formal process for determining whether a Judge committed misconduct as defined by the JC&D Act and Rules. The JC&D Act and the JC&D Rules also authorize a Chief Circuit Judge to initiate an inquiry and identify a complaint if s/he receives information about misconduct in a form other than a formal, signed complaint. A JC&D complaint must be filed with the appropriate Court office, as described in the JC&D Rules and local Court rules. Typically, the Chief Circuit Judge first conducts a limited inquiry into the allegations, but then may appoint a special committee of judges to investigate the complaint.

The JC&D complaint process has strict confidentiality requirements. Information about consideration of a complaint must not be publicly disclosed except as allowed under the JC&D Act and the Rules. A complainant's right to information is described in further detail in the JC&D Act and Rules.

An Employee may both file a JC&D complaint and use EDR to resolve an allegation that a Judge violated rights under the Model EDR Plan. There are notable differences between EDR Options for Resolution and the process for resolving a JC&D complaint. First, EDR offers informal and flexible Options for Resolution, while the JC&D complaint process is governed by a statute and detailed rules. Second, the focus of all EDR Options for Resolution is to provide a remedy if the Employee's EDR rights have been violated, while

the primary focus of a JC&D complaint is to determine whether a Judge engaged in misconduct under the JC&D Act and Rules, and if so, the appropriate Judicial Council action. (The JC&D complaint process is designed to ensure the effective and expeditious administration of the business of the courts. While it does not focus on providing a remedy for an aggrieved individual, remedial action might in some cases resolve a JC&D complaint issue.) Third, a JC&D complaint proceeding generally concludes if the alleged violator Judge resigns or retires. In contrast, an EDR Complaint remains viable even after a Judge retires or resigns, because it is not asserted against the Judge, but rather against the Judge's Court.

# II. PROCEDURAL RIGHTS AND PROTECTIONS

Both the Employee and the Employing Office are entitled to certain rights under the Plan, regardless of which Option for Resolution is chosen. The general rights of the Employee, the Employing Office, and others during all Options for Resolution are listed in the Model EDR Plan at § IV(B).

# A. CONFIDENTIALITY

Information provided during any of the EDR Plan's Options for Resolution is highly confidential. "Confidentiality" includes privacy about personnel matters and discretion about the allegations. It may include the anonymity of the Employee reporting or seeking guidance about alleged wrongful conduct.

## 1. *The Confidentiality Provision in the EDR Plan*

The EDR process operates under a presumption of confidentiality. All Options for Resolution are intended to respect the privacy of all involved to the greatest extent possible. The Model EDR Plan states that:

- all individuals involved in the processes under the Plan must protect the confidentiality of the allegations of wrongful conduct;
- information will be shared only to the extent necessary and only with those whose involvement is necessary to address the situation; and
- an assurance of confidentiality must yield when there is reliable information of wrongful conduct that threatens the safety or security of any person or that is so serious or egregious that it threatens the integrity of the Judiciary.

Plan § IV(B)(1).

The Parties should have total confidence that what they tell the EDR Coordinator will not be shared with anyone who does not need to know that information in order to resolve the issue or dispute. **It is essential that the EDR Coordinator explain the EDR Plan's confidentiality provisions to the Employee and the Employing Office at the outset of any initial EDR meeting**. Both the Employee and Employing Office must have total confidence that the EDR Coordinator is accurately describing confidentiality protections and reporting obligations. **Trust is irrevocably lost when an EDR Coordinator breaks a confidentiality promise to an Employee or an Employing Office**. EDR Coordinators may contact their Circuit Director of Workplace Relations (DWR) or the national Office of Judicial Integrity for guidance on confidentiality matters.

19

**Reasons to Protect Confidentiality:** There are important reasons to protect confidentiality:

- The Employee seeking Informal Advice might not be prepared yet to report wrongful conduct or to use the other EDR Options for Resolution; s/he might be fearful of retaliation or reluctant to come forward and might only want to know what options are available and what to expect if s/he seeks to resolve the matter through EDR. Disclosing information that the Employee isn't prepared to share violates trust in the EDR Coordinator and EDR process.

- Employees may need to reveal private information about themselves to assert or establish an EDR allegation; they have a right to expect that personal information will remain private.

- The Parties need to speak freely with the EDR Coordinator, and they might need to vent frustrations or express painful emotions. They might not do so if they are concerned their confidences will be shared.

- EDR Requests for Assisted Resolution or Complaints allege wrongful conduct that has not been established or proven. The allegations have not been subject to any response and may be unreliable or inaccurate. Thus, sharing this information might unfairly damage reputations or be prejudicial.

- Personnel matters involving the Employee or others in the Employing Office may need to be revealed in order to resolve a dispute, and personnel matters are entitled to the highest privacy protection.

**Reasons Not to Promise Complete Confidentiality.** There are also important reasons why some information must be shared. In order for Courts and Employing Offices to provide a safe workplace, free from discrimination and harassment, information about wrongful conduct that threatens the safety or security of Employees, or the integrity of the Judiciary, must reach those with the ability to take corrective action. The safety and security of all Employees is of paramount concern.

As noted above, the EDR Plan states that:

> confidentiality must yield when there is reliable information of wrongful conduct that threatens the *safety* or *security* of any person or that is serious or egregious such that it threatens the *integrity of the Judiciary*.

Plan § IV(B)(1) (emphasis added). *See Application of the Confidentiality Provision*, Handbook § II(A)(2).

## 2. *Application of the Confidentiality Provision*

Although the Plan contains one confidentiality provision, which is described above and in Plan § IV(B)(1), applying that provision in practice will differ depending on:

- the Option for Resolution requested by the Employee;
- the nature of the allegations; and
- to whom the Employee is reporting the allegations.

This section provides some examples of how to apply the confidentiality provision to these different situations. Knowing what information can and cannot be kept confidential is complex and fact specific. EDR Coordinators and DWRs must be familiar with and understand these complexities.

**Confidentiality During Informal Advice.** When Employees seek Informal Advice, they are likely to want complete confidentiality because they are only seeking advice from the EDR Coordinator, not asking for help. Thus, there is a strong presumption of complete confidentiality during Informal Advice.

Confidentiality requests during Informal Advice can and should be honored, subject to the safety/security/integrity exception, discussed above. An EDR Coordinator or DWR should not disclose to others the possibility of an EDR matter, the identity of the Employee who sought advice, or the alleged wrongful conduct. The EDR Coordinator or DWR should not take any action that the Employee does not agree to unless there is a safety/security/integrity concern.

**Confidentiality During Assisted Resolution.** When an Employee files a Request for Assisted Resolution, s/he is asking for help from someone other than the EDR Coordinator or DWR. Thus, information must be shared with those whose involvement is necessary to address and resolve the Request. But information must still be kept confidential to the extent possible. The Request for Assisted Resolution form asks the Employee to acknowledge that those who can provide the requested help will be told of the allegation.

**Confidentiality During the Formal Complaint Process.** When an Employee has filed a Complaint, multiple people will need to be told of the EDR matter, including the Chief Judge, the Presiding Judicial Officer, the alleged violator, witnesses, and persons with authority to implement any ordered remedy. The EDR Coordinator or DWR should inform

21

all of these individuals that the EDR proceeding is highly confidential, that information can only be shared with those who need to know the information, that they are expected to maintain this confidentiality, and that they should not discuss the matter or expect others to talk to them about any matter beyond what they need to know.

**Confidentiality During Mediation or Settlement Discussions.** If the Parties engage in voluntary mediation, it is likely that the mediator will have strict confidentiality requirements prohibiting disclosure of mediation discussions and records. Neither Party nor any person involved in the mediation process should disclose any information or records of any type obtained through, prepared specifically for, or disclosed in any mediation. *See Mediation,* Handbook § IV(B)(6), for more information about confidentiality of mediation discussions.

**Anonymous Reports.** EDR Coordinators and DWRs should inform Employees that they can make completely confidential or anonymous reports of wrongful conduct via phone or email to the Office of Judicial Integrity (OJI) on the JNet website, found through the Wrongful Conduct Quick Link on the JNet home page.

**Examples of Allegations that Might Implicate Safety/Security/Integrity Concerns.** The EDR Coordinator or DWR will have to assess whether an EDR allegation of wrongful conduct implicates a safety/security/integrity concern. The EDR Coordinator should first try to persuade the Employee to come forward and should explain that information about the conduct will be shared only with those who are able to take corrective action and that retaliation is prohibited and actionable under the Model EDR Plan.

Even when information must be reported under the safety/security/integrity exceptions, only necessary information should be shared, and that information should be shared only with those whose involvement is necessary to address the issue. For example, the EDR Coordinator or DWR should consider whether the identity of the reporting Employee "needs" to be shared in order to report the safety/security/integrity concern.

EDR Coordinators with questions about the safety/security/integrity exceptions may contact their Director of Workplace Relations or the AO's Judicial Integrity Officer for guidance.

*Examples*:

- ▪ *Safety or Security Risk.* An Employee seeks guidance during Informal Advice and requests complete confidentiality but discloses that a co-worker's harassing comments include threats of physical harm. The EDR Coordinator or DWR must

let someone know of this threat: perhaps a Unit Executive, the Chief Judge or another Judge, or a Court Security Officer. The Court must take action to prevent any harm to that Employee or others.

- *Safety or Security Risk*. An Employee seeks confidential Informal Advice about a co-worker who is repeatedly pressuring her for dates, ignoring her lack of interest. She says the co-worker has repeatedly shown up unexpectedly at her car and her home, which makes her uncomfortable. This allegation suggests stalking behavior that may be a risk to the Employee's safety or security.

- *Threat to Judicial Integrity*. Conduct that is serious or egregious enough to threaten the "integrity of the Judiciary" could include allegations of:
  o criminal activity;
  o judicial misconduct;
  o severe or pervasive sexual, racial, or other discriminatory harassment that must be corrected immediately;
  o multiple reports of repeated wrongdoing by the same alleged violator; or
  o egregious conduct that might soon become public.

  For example, an Employee alleges during Informal Advice that a Judge has been sending her text messages with crude sexual suggestions and requests. She shows the EDR Coordinator or DWR some of these text messages. This is reliable information of sexual harassment in violation of both the Code of Conduct for United States Judges and the EDR Plan and presents a risk to the integrity of the Judiciary. The EDR Coordinator or DWR should explain to the Employee that this allegation must be reported to the appropriate Chief Judge, either by the Employee or by the EDR Coordinator or DWR, but that the Chief Judge would also protect the Employee's confidentiality as much as possible.

**Heightened Obligations.** Judges and Unit Executives have heightened obligations to take action, which should inform how they handle reports of wrongful conduct.

*Judges*. Both Judges and Judicial Employees have an ethical obligation to take appropriate action upon receiving any reliable information indicating conduct likely to violate the Codes of Conduct. *See* Code of Conduct for U.S. Judges, Canon 3(B)(6); Code of Conduct for Judicial Employees, Canon 3(C)(1). Appropriate action will vary depending on the circumstances and on the role and authority of the Employee receiving the information.

Additionally, a Judge can be subject to misconduct proceedings if s/he fails to call to the attention of the relevant Chief District Judge or Chief Circuit Judge any reliable

23

information reasonably likely to constitute judicial misconduct or disability. *See* Rule 4(a)(6) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings. Accordingly, Judges cannot necessarily provide the complete confidentiality generally offered in the Informal Advice Option for Resolution.

*Unit Executives*. Courts have held that some supervisors' knowledge of sexual or other harassment can be imputed to their employer. Courts generally define those types of supervisors as those who have the power to take action to remedy the harassment. Thus, if a Unit Executive learns of sexual or other harassment and fails to take corrective action, the Employing Office or Court may be found responsible for failing to respond to the harassment.

In other words, if an Employee informs a Unit Executive of sexual or other harassment, it is very likely that a Unit Executive will be obligated to take action and be unable to honor an Employee's request to take no action. Accordingly, Unit Executives cannot provide the complete confidentiality generally offered in the Informal Advice Option for Resolution.

# B.  IMPARTIALITY

The EDR Coordinator, DWR, and the Presiding Judicial Officer, and any mediator or investigator must be impartial in executing all of their EDR responsibilities during all of the EDR Options for Resolution, including any investigations.  They may not act as an advocate for, or a representative of, the Employee, the Employing Office or its managers, the alleged violator of the EDR rights, or any other person involved in the EDR matter.  All EDR processes must be conducted in an unbiased, fair, and impartial manner, showing neither favor nor prejudice towards the Employee or the Employing Office.  *See* Plan § IV(B)(2).  The EDR Coordinator and DWR should help protect the fairness and thoroughness of the EDR process.

**Recusal based on an actual conflict of interest.**  The EDR Coordinator, DWR, or PJO must recuse if s/he:
- participated in, witnessed, or was otherwise involved substantially in any manner in the conduct, dispute, or adverse employment action that is the subject of the EDR matter;
- is named as being involved in the matter; or
- otherwise has an interest in the issue or dispute that conflicts with impartiality, or a personal relationship with any involved individual that undermines their impartiality.

*See* Plan § IV(B)(2).

Examples of conflicts of interest could include the following:

- The EDR Coordinator is the Human Resource Director who assisted the Employing Office in making the employment decision at issue in the EDR matter.

- The EDR Coordinator works in the same Employing Office as the Employee and reports directly to the Unit Executive or supervisor alleged to have violated the Employee's EDR rights.

- The Employee is challenging a promotion s/he did not get and the investigator or mediator was one of several members of the hiring committee that did not select the Employee.

- The Presiding Judicial Officer approved the adverse employment decision that is the subject of the EDR matter.

25

- The EDR Coordinator has a close personal relationship with the Employee or any of the individuals involved in the alleged violation of the Employee's rights.

If there is a conflict of interest that results in recusal and there is no readily-available alternate in the Parties' Court, the Chief Judge may ask an EDR Coordinator, mediator, investigator, or Judge from another Court to serve, with appropriate permission from that Court.

**Potential or perceived conflicts of interest.**  Even if the EDR Coordinator, DWR, or PJO does not have an actual conflict of interest, s/he must recuse if there is an appearance of a conflict.  Plan § IV(B)(2).  For example, there might be a potential or perceived conflict if the EDR Coordinator has a close personal or social relationship with the Unit Executive of the Employing Office.  If there is a perceived or potential conflict of interest, the EDR Coordinator must refer the matter to an alternate EDR Coordinator.

**Right to Seek Disqualification.**  Any Party has the right to seek disqualification of the EDR Coordinator, DWR, PJO, mediator, or investigator by written request to the Chief Judge.  This right is available for any of the EDR Options for Resolution.  The request must give reasons why the Employee believes that individual should be disqualified.  *See* Plan § IV(C)(3)(e)(iii).

## C.   OTHER PROCEDURAL RIGHTS AND PROTECTIONS

### 1.   *Right to Representation*

Both the Employee and the Employing Office have the right to be represented by an attorney or other person of their choice at their own expense. Another Employee may assist the Employee or Employing Office if doing so will not constitute a conflict of interest or unduly interfere with his/her duties, as determined by the assisting Employee's appointing officer. *See* Plan § IV(B)(3). If the other Employee is a lawyer, s/he must ensure s/he does not violate Canon 4D of the Code of Conduct for Judicial Employees (Practice of Law).

The Administrative Office's Office of the General Counsel can provide legal advice to an Employing Office that is responding to a Request for Assisted Resolution or a Formal Complaint. When hiring outside counsel, Courts should consider ethical issues concerning judicial impartiality in connection with the law firm's appearance before the Court. *See Employing Office Considerations – Right to Representation*, Handbook § V(G).

An alleged violator, even a Unit Executive, is not a Party to the EDR matter and is not entitled to representation during any EDR process. *See EDR Does Not Confer Due Process Rights for Alleged Violator*, Handbook § II(C)(3), and *Alleged Violator Participation in the Formal Complaint Process*, Handbook § V(C)(3).

Reimbursement of an Employee's attorney's fees is an available remedy only if the statutory conditions of the Back Pay Act are met. *See Remedies*, Handbook § IV(D).

### 2.   *Retaliation Is Prohibited*

Retaliation for making a report of wrongful conduct or participating in the EDR process is strictly prohibited and is itself wrongful conduct, and it will not be tolerated. The Codes of Conduct for United States Judges and for Judicial Employees, the JC&D Rules, and the EDR Plan prohibit retaliation for reporting wrongful conduct. Employees may file a separate EDR Complaint if they believe they have been retaliated against.

### 3.   *EDR Does Not Confer Due Process Rights for Alleged Violator*

It is the AO's Office of the General Counsel's opinion that a person alleged to have violated rights under the EDR Plan (called the "alleged violator" in this Handbook) is not entitled to any procedural due process rights (i.e. notice and opportunity to be heard) under any of

Case 1:20-cv-00066-WGY   Document 101-1   Filed 12/18/20   Page 33 of 144

the EDR Plan's Options because: (1) all EDR Options for Resolution involve only an Employee and an Employing Office; (2) a Formal Complaint is never against any individual; and (3) the EDR process does not deprive an alleged violator of a constitutionally-recognized property or liberty interest. Any discipline of an alleged violator occurs separately from EDR. For the legal analysis of this subject, contact the AO's Office of the General Counsel.

# III. EDR Coordinators

# A. WHAT IS AN EDR COORDINATOR?

The EDR Coordinator is a neutral, independent Judiciary Employee who facilitates all of the Options for Resolution, helping to make the EDR process fair to both the Employee and the Employing Office. The EDR Coordinator is not an advocate for either Party, does not offer legal advice, and does not resolve the wrongful conduct dispute. Rather, the EDR Coordinator acts as a guide to both Parties about the EDR Plan and performs EDR administrative tasks.

The EDR Coordinator is responsible for providing an Employee with information about his/her substantive employment and procedural rights under the Model EDR Plan and informing the Employing Office about its rights and obligations under the Plan. The EDR Coordinator is also responsible for providing the Employee and Employing Office with information about the JC&D Rules and any relevant Court or Employing Office policies, as appropriate. The primary EDR Coordinator also has administrative responsibilities. *See Administrative Responsibilities of the EDR Coordinator*, Handbook Ch. VII.

During Informal Advice, the EDR Coordinator provides confidential advice and guidance to an Employee, serving as an honest and neutral broker of information.

During Assisted Resolution, the EDR Coordinator's role is to help the Employee and Employing Office resolve the issue. The EDR Coordinator provides an environment for open dialogue, ideally leading to an informal resolution of the dispute.

If there is a Formal Complaint, the EDR Coordinator assists the Presiding Judicial Officer as requested or needed, helps ensure prompt and efficient processing of the matter, and maintains all EDR records.

The national Office of Judicial Integrity is available to EDR Coordinators to answer their questions about the EDR Plan and its Options for Resolution.

# B.  WHAT ARE THE IMPORTANT QUALITIES OF AN EDR COORDINATOR?

The EDR Coordinator should be:

- **Neutral and objective.**  The EDR Coordinator should be independent and impartial and should neither have, nor be perceived as having, bias for or against the Employee or the Employing Office.  The EDR Coordinator must recuse if s/he has a conflict of interest in the matter.  S/he should remain even-handed in all contacts with everyone involved in the dispute.

- **Discreet.**  The obligation to maintain the confidentiality of communications related to the EDR process requires that the EDR Coordinator scrupulously avoid any discussion of those communications with anyone outside the EDR process.

- **A good listener.**  The EDR Coordinator must be able to extract the crucial details from Employees and others who might be emotional, anxious, or have trouble expressing themselves.

- **Organized.**  The record-keeping function of the EDR Coordinator is critical for ensuring that the applicable EDR procedures are followed.

- **Knowledgeable.**  EDR Coordinators must be able to understand and explain the EDR Plan, its Options for Resolution, including the Formal Complaint process, all relevant deadlines, and know what employment laws and policies are covered in the EDR Plan.  EDR Coordinators must also be familiar with the JC&D Rules and any relevant Court and Employing Office policies.

- **Even-tempered.**  People caught up in disputes are often emotional, and EDR proceedings may adversely affect personal relationships in the Employing Office.  It's important that the EDR Coordinator remain calm and objective.

- **Committed.**  Even though the EDR process may occur infrequently, the EDR Coordinator must strive to conduct the process with fairness, integrity and professionalism.

31

# C.  WHO SHOULD BE AN EDR COORDINATOR?

A Court's Chief Judge designates a primary and at least one alternate EDR Coordinator. It is not uncommon for Courts to share EDR Coordinators with other Courts; for example, a district Court may share EDR Coordinators with the local bankruptcy Court. Typically, EDR Coordinators are performing EDR coordination collateral to their full-time job.

A Court should endeavor to choose an EDR Coordinator who is empathetic and a good listener; able to learn about and understand EDR employment rights and the Options for Resolution; able to provide neutral, independent advice to both Employees and management; and is someone Employees would feel comfortable approaching with a wrongful conduct issue. Because Federal Public Defender Employees are covered by their circuit Court of Appeals, Courts of Appeals should consider including Federal Public Defender employees as EDR Coordinators.

Some Circuits have a Director of Workplace Relations, and the Model EDR Plan permits Employees to use the DWR for Informal Advice and Assisted Resolution. Circuits might also allow courts within their circuit to use the DWR as an alternate EDR Coordinator for Formal Complaints.

Under the Model EDR Plan, an EDR Coordinator must be an Employee who is not a Unit Executive. An EDR Coordinator may not be a Judge. Plan § V(C).

## 1.  *Unit Executives May Not Be EDR Coordinators.*

Nothing in the EDR Plan prevents or prohibits an Employee from coming to a Unit Executive for help with any wrongful conduct concern. EDR provides another alternative when an Employee would like additional assistance and options. The Model EDR Plan prohibits Unit Executives from being EDR Coordinators for two reasons.

First, a Unit Executive serving as an EDR Coordinator has both an actual and perceived conflict of interest in providing impartial advice and guidance to an Employee in an EDR Option for Resolution. Should an Employee ultimately file a Formal Complaint, the Unit Executive represents the side *opposing* the Employee: The Employing Office is the Respondent in a Formal Complaint. It is imperative both that EDR Coordinators actually be neutral and impartial and that they are reasonably perceived by Employees as neutral and impartial. And Unit Executives generally work closely with other Unit Executives, so there is always a perceived conflict of interest. Again, nothing in EDR prohibits Employees from resolving a matter with their Unit Executive. But if they are fearful,

intimidated, or otherwise reluctant to discuss a wrongful conduct matter with their Unit Executive, it is essential that EDR afford another option to seek advice and guidance from someone else.

Second, Unit Executives may be held to be agents of the Court, such that their knowledge of wrongful conduct can be imputed to the Court. A Unit Executive may not be able to provide confidential Informal Advice because his/her failure to take corrective action after learning of wrongful conduct could expose the Employing Office or Court to being held responsible for that inaction, even if no one but the Unit Executive knew. Allowing a Unit Executive to be an EDR Coordinator would thus undermine the goal of enabling Employees to seek confidential guidance. *See Confidentiality – Heightened Obligations*, Handbook § II(A)(2).

## 2. *Judges May Not Be EDR Coordinators.*

The Model EDR Plan prohibits Judges, including District, Magistrate, and Bankruptcy Judges, from being EDR Coordinators. Judges are, of course, dedicated to being neutral and impartial. But there are two primary reasons they should not be EDR Coordinators.

First, having a Judge as an EDR Coordinator can be a barrier to reporting misconduct. Many Employees, particularly those who do not interact regularly with Judges, may be intimidated by, or reluctant to seek advice from, a Judge about EDR matters. Many Employees are uncomfortable talking to a Judge about their personal work concerns and issues or revealing private information to a Judge.

Second, like Unit Executives, Judges may not be able to provide confidential Informal Advice. *See Confidentiality – Heightened Obligations*, Handbook § II(A)(2). Judges are required by their Code of Conduct to take appropriate action upon receipt of reliable information indicating the likelihood that a Judge's or a Judicial Employee's conduct contravened the Codes of Conduct. Although Employees have the same duty, Judges are also bound by the Rules for Judicial-Conduct and Judicial-Disability Proceedings, which provide that "[c]ognizable misconduct includes failing to call to the attention of the relevant Chief District or Chief Circuit Judge any reliable information reasonably likely to constitute judicial misconduct or disability." JC&D Rule 4(a)(6). Since Employees cannot trust that a Judge (in the role of EDR Coordinator) will be able to protect their confidentiality during Informal Advice and may have to report a matter to a Chief Judge, they will be unlikely to seek confidential advice from a Judge (in the role of EDR Coordinator).

### 3. *What About HR Professionals?*

HR professionals often have the right qualities to serve as an EDR Coordinator, but due to the nature of their work, HR professionals may have actual or perceived conflicts of interest. For example, many EDR Complaints challenge an employment decision, such as a failure to promote or a termination. HR is often actively involved in those decisions. Thus, they either cannot, or would be perceived as unable to, give neutral, independent advice to an Employee challenging a personnel action in which the HR professional was involved. HR professionals therefore would have to recuse in many EDR matters. Additionally, even if the HR professional was not involved in the EDR issue, s/he works for management and may be perceived as having a conflict of interest. HR professionals may also have reporting obligations that would not allow them to adhere to the confidentiality provisions under the Model EDR Plan. These factors may be a barrier to Employees reporting workplace conduct issues to an HR professional serving as an EDR Coordinator.

However, an HR professional from another Court or Employing office might be an appropriate EDR Coordinator. For example, the HR professional from a bankruptcy court could serve as the EDR Coordinator for the district court, and vice versa. Or the HR professionals from the district court, bankruptcy court, and probation and pretrial services office could each serve as the EDR Coordinators for the other Employing Offices.

If an HR professional is an EDR Coordinator, when an Employee seeks advice from that HR professional, s/he should first determine whether the Employee is seeking general HR advice or Informal Advice or Assisted Resolution under the EDR Plan.

# D. TRAINING AND CERTIFICATION OF EDR COORDINATORS

The Model EDR Plan requires that all EDR Coordinators be trained and certified. Plan § V(C). As of the publication date of this Handbook, the national Office of Judicial Integrity is working with the Federal Judicial Center to develop an online training and certification program for EDR Coordinators. An EDR Coordinator training program is expected to be available in by mid-2020. EDR Coordinators will be able to participate in this training and take the certification test remotely at their convenience. The program will provide training, including interactive scenarios, on the EDR Options for Resolution; wrongful conduct under the EDR Plan, including the EDR laws and policies; the responsibilities of the EDR Coordinator; and other skills, such as conducting a workplace investigation.

A training PowerPoint for Employees, including EDR Coordinators, and one for Unit Executives and Managers is posted on the JNet via the Wrongful Conduct Quick Link on the home page. These explain the EDR Options for Resolution, wrongful conduct and the EDR laws and policies, and the role and responsibilities of EDR Coordinators. This Handbook itself is also training material for EDR Coordinators.

# IV. The EDR Process Step by Step: Informal Advice and Assisted Resolution

## (with Checklists for EDR Coordinators and Directors of Workplace Relations)

# A.  INFORMAL ADVICE

An Employee can contact an EDR Coordinator, a Director of Workplace Relations, or the national Judicial Integrity Officer for confidential advice and guidance at any time about an EDR wrongful conduct concern.  No written submission is required to seek advice, and Informal Advice contacts need not be reported in the annual report to the Administrative Office.

Informal Advice should include listening to the Employee's concerns, understanding the relief or remedy s/he seeks, and providing information that helps the Employee assess his/her rights and options to address the issue.  At a minimum, the advice should help the Employee understand the rights and protections provided under the EDR Plan or other applicable policies.

Informal advice may cover a range of topics including:
- ways to respond to and report wrongful conduct;
- the rights and protections provided under the EDR Plan;
- any other potentially available informal and formal remedies, such as a grievance, an adverse action appeal, or a complaint under the Judicial Conduct and Disability Act (if the allegations involve a Judge); and
- any other information that could be helpful to an Employee in assessing the conduct at issue and the Employee's rights and options for addressing it.

For example:

- The Employee might want to understand the process before s/he is willing to come forward with a report or potential Request for Assisted Resolution or Complaint. (*I'm not sure I want to file an EDR Complaint.  What is the process? Who will be involved?*)  The EDR Coordinator or DWR can explain the relevant policies and options.

- The Employee might be fearful of retaliation or reluctant to come forward. (*I am afraid I will lose my job if I tell what happened.  This should be investigated, but others in the office are afraid too. Are we protected from retaliation?*)  The EDR Coordinator or DWR can provide reassurance that the EDR Plan prohibits retaliation for making a report or seeking relief under the Plan.

- The Employee may be reluctant to report the issue.  *(His actions really offended me, but he is basically a good person and I don't want him to get in trouble.)*  The EDR

Coordinator or DWR can explain the importance of addressing unwelcome conduct early; that the alleged violator may be unaware his/her actions or comments are unwelcome and might explain the importance of protecting other Employees who might also be subject to the alleged violator's unwelcome conduct.

▪ The Employee might be willing to share some but not all information with others or may be willing to tell some people about the problem but not others. (*I trust Mary, and it's okay if you tell her, but I don't trust Jane, and I don't want Mary to tell Jane I have reported this.* Or: *It's okay if you tell my supervisor that Bill said [x], but I am really embarrassed about [y], and I don't want others to know about that right now.*) The EDR Coordinator or DWR can ask about the Employee's actual confidentiality concerns.

REMEMBER: The EDR Coordinator (or DWR) must honor the Employee's request to keep the Informal Advice meetings and discussions entirely confidential unless the allegations indicate a reasonable risk to someone's safety or security or are so serious or egregious that they threaten the integrity of the Judiciary. Do not tell anyone that the Employee is considering filing an EDR Request or Complaint. Do not tell anyone what the Employee revealed during Informal Advice without his/her permission. If Employees do not trust that the EDR Coordinator (or DWR) will keep Informal Advice confidential, they will tell others you are not to be trusted.

## 1. *Responsibilities of the EDR Coordinator or Director of Workplace Relations*

In providing Informal Advice, the EDR Coordinator (or DWR) should:
▪ listen to the Employee's allegations and concerns;
▪ determine if there are any safety or security concerns;
▪ determine if there is any need for immediate relief or corrective action;
▪ assess whether the concern is covered by EDR or a different process;
▪ determine what advice and guidance the Employee wants;
▪ determine what remedy or relief the Employee wants;
▪ discuss the Employee's willingness to seek assistance from a supervisor, Unit Executive, or other person;
▪ advise the Employee about his/her rights and options under the EDR Plan and the Plan's procedures and deadlines;
▪ provide the Employee with a copy of the Court's EDR Plan and any necessary forms;

- advise the Employee about other potentially applicable claim processes, such as a grievance, adverse action appeal, or complaint under the Judicial Conduct and Disability Act; and
- inform the Employee that retaliation for reporting wrongful conduct is prohibited by the Codes of Conduct and the EDR Plan.

*See Informal Advice and Assisted Resolution Checklists for EDR Coordinators (or DWRs)*, Handbook § IV(C)(1), and *Tips for Effective Listening*, Handbook § IV(D), for additional guidance on how to discuss these matters with the Employee.

The EDR Coordinator does not have to provide advice at the first meeting. The EDR Coordinator may want time to think about the Employee's issue and to review the Court policies that potentially address the Employee's concerns. It is perfectly fine to tell the Employee you'd like to think about the matter for a day or two and schedule a follow-up meeting.

The EDR Coordinator may contact the national Office of Judicial Integrity for general guidance about the EDR Plan and its Options for Resolution. That Office abides by the same confidentiality standards stated in the EDR Plan.

# B.   ASSISTED RESOLUTION

Assisted Resolution allows an Employee to attempt to resolve his/her wrongful conduct concern with the assistance of the EDR Coordinator or DWR.  It is an interactive and flexible process facilitated by an EDR Coordinator or DWR, but the request for assistance is assessed and addressed by the Unit Executive or the Chief Judge, depending on the circumstances.

Assisted Resolution may include:

- Facilitated discussion with the person whose behavior is of concern.  *(Could you meet with me and my supervisor? I want to tell him that his comments upset me, but it would help if you came with me.) See Facilitated Discussion*, Handbook § IV(B)(5).

- Preliminary investigation or evaluation of the alleged wrongful conduct.  The Unit Executive (or Chief Judge) might direct this investigation or might ask the EDR Coordinator (or DWR) or a third-party investigator to do so.  *See Preliminary Investigation*, Handbook § IV(B)(4).  An investigation is advisable whenever the wrongful conduct allegations concern sexual or other discriminatory harassment. *See Employing Office Considerations*, Handbook § V(G).

- Temporary interim relief, such as an alternative work arrangement, if the Employee asserts that the workplace is untenable because of sexual or other discriminatory harassment, abusive conduct, or retaliation by a supervisor.  *See Interim Relief*, Handbook § IV(D)(1) and Plan § IV (B)(4).

- Voluntary mediation with an experienced mediator (such as a Circuit Mediator or a Magistrate Judge).  *See Mediation*, Handbook § IV(B)(6).

- Any other steps that may yield an effective resolution of the wrongful conduct concern, including resolution of the matter by agreement.

Assisted Resolution is intended to be flexible so that the Employee can request whatever assistance s/he wants, the Employing Office's Unit Executive (or the Chief Judge) can offer whatever assistance or resolution s/he thinks best, and all interested persons can discuss the issue with the EDR Coordinator (or DWR) in order to reach a satisfactory resolution.

Assisted Resolution is not intended to be adversarial or simply a stepping stone to a Formal Complaint, but to attempt an actual resolution of the wrongful conduct concern. Other than the Request for Assisted Resolution form and a written settlement or resolution agreement, it should not involve paperwork or formal responses or motions.

## 1. *Assisted Resolution Allegations Involving a Unit Executive or a Judge*

If an Employee's Request for Assisted Resolution alleges that a Judge or a Unit Executive violated EDR rights, the EDR Coordinator (or DWR) must immediately notify the Chief Judge of the appropriate district or circuit Court. That Chief Judge is then responsible for assessing the Request and taking whatever steps s/he determines appropriate to resolve the matter. Plan § IV(C)(2)(b) and (c). If the Request alleges that the Chief Judge violated EDR rights, the next most senior active Judge is responsible for addressing the Request.

The Chief Judge (or next most senior active judge) may personally assess and address the Request for Assisted Resolution or appoint someone else, such as another Judge or Unit Executive, to do so. If the allegations concern a Judge, the EDR Coordinator (or DWR) will only be involved to the extent requested by the Chief Judge.

The Assisted Resolution process may include, but does not require, discussing the matter with the Judge or Unit Executive whose behavior is of concern. When the Request for Assisted Resolution alleges a Judge violated EDR rights, the Chief Judge should assess whether:

- interim relief is appropriate if the Employee asserts that working in chambers is untenable because of sexual or other discriminatory harassment, abusive conduct, or other egregious conduct by the Judge. *See Interim Relief*, Handbook § V(D)(1), and Plan § IV(B)(4).

- the allegations should be brought to the attention of the Chief Circuit Judge. *See Code of Conduct for United States Judges*, Canon 3(B)(6) (requiring Judges to take appropriate action if there is reliable evidence of a reasonable likelihood of judicial conduct that violates the Code).

- the Employee's Unit Executive should be notified of the matter so that s/he can assist in providing any appropriate interim relief to the Employee or otherwise be of assistance to the Employee.

41

Should an allegation be made against a Magistrate Judge or Bankruptcy Judge, in the absence of any safety concern, the Chief Judge is encouraged to notify and discuss the allegation with the judge. Article I judges face reappointment procedures periodically, which include the opportunity for public comment, so it is important for them to be aware of and have an opportunity to discuss any allegation made against them.

## 2. *The Responsibilities of the Unit Executive (or Chief Judge)*

The Unit Executive (or Chief Judge) is responsible for assessing the Request for Assisted Resolution and deciding what, if any, actions are appropriate to take to resolve the matter. *See* Plan § IV(C)(2)(b) and (c). Working with the EDR Coordinator (or DWR), the Unit Executive (or Chief Judge) may determine that a facilitated discussion, a preliminary investigation, or voluntary mediation with an experienced mediator could resolve the situation. Or the Unit Executive (or Chief Judge) might determine that the Request should be denied.

The following examples illustrate some of the options for handling an Employee's Request for Assisted Resolution:

- An Employee says she was terminated last month by the Unit Executive in retaliation for using Family and Medical Leave and for reporting wrongful conduct. She requests that she be reinstated. The Chief Judge suggests the Employee and Unit Executive engage in voluntary mediation using the Circuit Mediator or DWR, and the Employee and Unit Executive agree to do so. The Chief Judge will remain involved to assess the results of the mediation.

- An Employee whose supervisor denied her request for a four-day flexible work week files a Request for Assisted Resolution asking the Unit Executive to grant the request. The Unit Executive can deny the Request on the grounds that it does not fall under any rights protected by the EDR Plan.

- An Employee needs to telework for six months while he recovers from heart surgery, as a reasonable accommodation under the Americans with Disability Act. The Unit Executive does not believe the Employee could perform his job from home so denies that particular request but, with the guidance of the EDR Coordinator or DWR, engages in an interactive process to find a reasonable accommodation that satisfies both the Employee and the Employing Office.

- A co-worker sexually harassed the Employee last year. She didn't report it then, but now the co-worker has become her supervisor and she has filed a Request for Assisted Resolution, asking to be supervised by someone else, stating she is fearful of working near him. Even though it is too late to file a Formal Complaint, there is no deadline to Request Assisted Resolution, and the Unit Executive understands her priority is to protect the Employee, not focus on deadlines. She temporarily grants the request, allows the Employee to work under another supervisor, and asks the DWR to investigate the allegations further.

## 3. *The Responsibilities of the EDR Coordinator (or Director of Workplace Relations)*

The role of the EDR Coordinator (or DWR) is to facilitate, not to dictate a resolution or make any factual determinations. An EDR Coordinator (or DWR) may suggest alternative ways of resolving the Request for Assisted Resolution, but ultimately the Unit Executive (or Chief Judge) is responsible for determining what resolution or remedy s/he is willing or able to provide. Although the EDR Coordinator or DWR should not try to force a resolution or settlement, s/he can help bridge communication barriers, help the Parties understand each other's perspective, and offer new suggestions for resolving the matter. S/he is also responsible for documenting any settlement and maintaining the EDR records.

*See also Informal Advice and Assisted Resolution Checklists for EDR Coordinators (or DWRs)*, Handbook § IV(C).

The EDR Coordinator (or DWR) must:

**Assist the Employee in completing the Request for Assisted Resolution and submit it to the Employing Office or Chief Judge:**

Although the Assisted Resolution option is flexible, the Model EDR Plan does require Employees to fill out a Request for Assisted Resolution (Plan, Appendix 2). The purpose of the written Request is to: (1) elicit accurate information about the workplace conduct issue; (2) clarify the requested assistance; (3) ensure the Employee understands the confidentiality provisions and reporting obligations; and (4) collect national data about EDR and workplace conduct matters and their resolutions in the annual reports to the Administrative Office of the U.S. Courts. *See Annual Reporting*, Handbook § VIII(C). The EDR Coordinator (or DWR) can help the Employee fill out the Request.

43

The EDR Coordinator (or DWR) gives a copy of the Request for Assisted Resolution to the Unit Executive of the Employing Office (or the Chief Judge).

**Explain Assisted Resolution EDR Rights:** The EDR Coordinator (or DWR) must explain to the Employee that:

- Seeking Assisted Resolution does not extend the 180-day deadline to file a Formal Complaint. *See* Plan § IV(C)(2)(a), (3)(a). The EDR Coordinator (or DWR) should explain that either Party can submit a written extension-of-time request to the Chief Judge or Presiding Judicial Officer to extend the Complaint deadline while they use Assisted Resolution. *See* Plan § IV(C)(3)(e)(vii).

- The Unit Executive (or Chief Judge) may deny a Request for Assisted Resolution if it is frivolous, does not allege violation of an EDR right, or was already resolved in a prior process. *See* Plan § IV(C)(2)(d). The Unit Executive (or Chief Judge) may also deny the request if s/he is unwilling to grant it, but should ideally propose alternative resolutions, since it is generally preferable to resolve a matter in Assisted Resolution than in a Formal Complaint.

**Determine if an Assisted Resolution is possible by asking the Employee and the Employing Office the following questions:**

- What relief or remedy does the Employee want?
- What options are possible? (For example: stopping offending behavior, reasonable accommodations, training, or early retirement options)
- What action is the Employing Office willing to take?
- Is there room for a mutually-agreeable resolution? Are the Parties' interests actually incompatible or do they just perceive them as incompatible?
- Are the Parties willing to use an experienced mediator to assist with reaching resolution, such as a Magistrate Judge or a Circuit Mediator?

**Determine when Assisted Resolution should end:**

There is no fixed end date to Assisted Resolution because it is intended to be informal and flexible. The EDR Coordinator (or DWR) decides when the Assisted Resolution process should end by determining when it is no longer productive or is unlikely to resolve the dispute or concern. The decision to end Assisted Resolution is not a "finding" as to the merits of any allegation; it is simply a determination that the dispute could not be resolved by informal means. The decision to end Assisted Resolution is final and should be clearly communicated to both Parties in writing.

For example, Assisted Resolution can be terminated by the EDR Coordinator (or DWR) when:

- the Parties agree the matter has been resolved;
- the Unit Executive (or Chief Judge) has denied the requested relief;
- Assisted Resolution is no longer productive; or
- the mediator states that mediation was not successful.

## 4.   *Preliminary Investigation*

A preliminary investigation in Assisted Resolution is an evaluation of: (1) each Party's position; (2) how the Parties want the issue to be resolved; and (3) whether there are witnesses or other evidence.

If the EDR Coordinator (or DWR) is asked to conduct a preliminary investigation of the allegations in a Request for Assisted Resolution s/he **may not make findings of fact or assess credibility**.  Only the Unit Executive (or Chief Judge) may make factual and credibility determinations during Assisted Resolution.  The EDR Coordinator (or DWR) may suggest possible resolutions **but should never recommend any personnel action to be taken**.

## 5.   *Facilitated Discussions*

An EDR Coordinator (or DWR), as a neutral third person, can facilitate discussions between an Employee and Unit Executive during Assisted Resolution simply by creating a safe and open environment in which both Parties feel comfortable discussing their concerns and sharing their views, learn about the other's perspective, and work toward a resolution.

The goals are to determine each Party's primary concerns, identify their separate and shared goals, and assess whether there is a resolution that would be satisfactory to both Parties.  The discussions should be non-judgmental.  Open with a discussion of the confidentiality rules and the goals of the session.

The EDR Coordinator (or DWR) should:

- Explain your role. (*"My role is to help you voice your concerns in a safe and respectful atmosphere. I may offer suggestions, but they are just suggestions; I am here to help you resolve this, not to decide anything for you."*)

- Create an environment of trust. (*"Please listen to each other and respect each other's views. It is important that you are each able to express your disagreements without being disagreeable."*)

- Strive to let the Parties express their views. (*"Please listen respectfully; try not to interrupt or criticize."*)

- Encourage everyone to start with an open mind. (*"You may have a particular resolution in mind, but please keep an open mind to new possibilities; perhaps we can find a way to achieve what you really want but in a different way."*)

- Show the same respect to both Parties – remain neutral, impartial and equally empathetic to both Parties.

- Clarify the issues for both Parties – summarize, reframe, ask questions, listen. (*"Tom, what do you think about Mary's suggestion?" "Mary, what are your biggest concerns about Tom's proposal?" "Tom, can you describe what you really want?" "Mary, if I am understanding you correctly, you think that [_____]."*)

- Keep the discussion focused. (*"I think this conversation is reminding you of problems and concerns from the past. But those older issues do not seem really relevant to this issue today. If you agree, can we refocus on just this issue?"*)

- Solicit and present rational proposed resolutions. (*"This is just a suggestion, which you are free to reject, but I wonder if [_____]."*)

## 6. *Mediation*

With the Parties' consent, the EDR Coordinator (or DWR) may seek assistance from an experienced mediator. Mediation is voluntary but should be encouraged as an ideal way to resolve a matter during Assisted Resolution. If both Parties are willing to engage in mediation, the EDR Coordinator (or DWR) should find an experienced mediator who is agreeable to both Parties to handle the mediation.

46

Circuit Mediators, Magistrate and Bankruptcy Judges, and other Employees with mediation experience have historically served as mediators in EDR proceedings. Some DWRs also have mediation experience. If a private mediator is used, the EDR Coordinator must follow procurement regulations for obtaining mediation services.

**Selecting a mediator**. The EDR Coordinator (or DWR) should confirm the mediator has the skills necessary to help the Parties to resolve their dispute. These include:

- *Mediation experience*: the ability to generate ideas and collaborative solutions consistent with the facts and both Parties' goals and to move them toward resolution.

- *Impartiality*: the ability to maintain neutrality and effectively manage interpersonal conflicts.

- *Substantive knowledge*: a solid understanding of the EDR process and the factual and legal issues underlying the dispute, and the ability to identify and seek pertinent information.

- *Empathy*: genuine consideration of both Parties' needs and goals.

If the Parties elect to participate in mediation, the EDR Coordinator (or DWR) should take the following steps:

- Confirm that there is no obvious conflict of interest between the mediator and the Parties;
- Provide the mediator with the Request for Assisted Resolution and all other background information;
- Help the mediator understand the EDR Plan, Options for Resolution, and available Remedies; and
- Monitor time frames to determine whether ongoing mediation efforts are productive and that both Parties are still voluntarily engaged in mediation.

**Strict Confidentiality During Formal Mediation**.

Confidentiality is a critical element to a successful mediation. The Parties and their attorneys or representatives need to be able to have frank discussions about the issues and their motivations, concerns, and goals, including the risks of not achieving a settlement. Parties must be able to discuss these private matters and propose possible settlement offers without risk that this information will be disclosed outside of the mediation. If mediation discussions are not completely confidential, it is much less likely that mediation will be

successful. The mediator, the Parties, and their attorneys or representatives must all agree that all mediation discussions and information disclosed during mediation are **completely confidential and may never be discussed or disclosed outside of mediation**. The only exception to the absolute confidentiality requirement is that information may be discussed as necessary to consult with the Parties or their representatives, and that safety and security or integrity of the Judiciary concerns must be reported.

Before any mediation session, the mediator should ask the Parties and any attorneys or representatives to sign a Mediation Confidentiality Agreement. A sample follows on the next page.

With the exception of a Mediation Confidentiality Agreement and a signed settlement agreement, records relating to mediation should not be filed with the EDR Coordinator (or DWR) under Plan § V(B). The EDR Coordinator (or DWR) should document the Parties' agreement to this strict confidentiality.

**Sample Mediation Confidentiality Agreement**

Confidentiality is essential to effective mediation because it allows the parties to have a full and candid exchange of information. A successful mediation requires that the parties be able speak with complete candor, acknowledge risks and weaknesses, and look for common ground, without fear that, if a settlement is not achieved, their words will later be used against them in an EDR hearing or otherwise. Offers to resolve or settle an EDR matter may not be disclosed outside of the settlement or mediation discussions. Thus, we require the parties and any attorney or representative to sign the following confidentiality agreement:

The Requesting Employee, the Employing Office and all persons acting on behalf of the Employing Office, any attorneys or representatives, and any party involved in the settlement or mediation discussions may not disclose any information or records obtained through, or prepared specifically for, the settlement or mediation process, except:

> (1) as necessary to consult with the parties or their counsel or representatives, and then only with notice to all parties: or
> (2) if the information or records are otherwise properly discoverable in an EDR Formal Complaint proceeding.

Records relating to the settlement or mediation discussion will not be filed with the EDR Coordinator.

Please ask the Mediator any questions you have about this confidentiality provision or the mediation process.

Sign below to acknowledge your agreement to abide by this confidentiality provision.

_____       _____

# 7.  *Settlement and Documentation*

The mediator, EDR Coordinator, or DWR is responsible for documenting any settlement agreement.  The settlement must be reduced to writing and signed by the Employee and the member of the Employing Office authorized to settle the matter.  *See* Plan § IV(C)(2)(e).  Courts and Employing Offices can contact the AO's Office of the General Counsel (OGC) for guidance on settlement agreements.  OGC can 1) send an appropriate sample settlement agreement; 2) discuss potential additional settlement terms; and 3) review the settlement agreement terms for legality, policy compliance, and enforceability.

Provisions to consider include:

- **Scope of release.**  Verify that the release of responsibility covers all the claims the Parties want it to cover.  For example, it might include a broad general release of "any and all claims" the Employee has against the Employing Office, whether or not alleged in the Request for Assisted Resolution.

- **Type of dismissal.**  An Employee may agree to dismiss his/her allegations with or without prejudice.  If the allegations are dismissed with prejudice, they are completely extinguished and may not be reasserted.  If the allegations are dismissed without prejudice, or if the agreement does not specify, the Employee might be able to file them again.

- **Confidentiality provision.**  Determine whether the Parties want the agreement to be confidential.  Discuss with each Party what terms they want to keep confidential and whether there are any exceptions to confidentiality.

- **Enforcement of the settlement.**  Any disputes concerning the enforcement, interpretation, or application of a settlement agreement under the EDR Plan must be submitted to an EDR Coordinator and resolved under the Options for Resolution procedures of the EDR Plan.

## 8.    *Possible Outcomes Following Assisted Resolution*

Any resolution in Assisted Resolution must comply with the Model EDR Plan's allowable remedies.   *See Remedies*, Handbook § IV(D), and Plan § IV(C)(3)(h).   Examples of possible resolutions include:

- Apology;
- Letter of Reference;
- Training for Employees, supervisors, or co-workers;
- Reinstatement;
- Promotion;
- Modified work schedule; or
- Job reassignment.

## C. INFORMAL ADVICE AND ASSISTED RESOLUTION CHECKLISTS FOR EDR COORDINATORS (OR DWRs)

### 1. *Meeting With the Employee*

Whenever an Employee first meets with an EDR Coordinator or DWR for Informal Advice or Assisted Resolution, the EDR Coordinator or DWR should:

**Prepare in advance of the meeting, if possible:**
- Review the EDR Plan, particularly Section IV;
- Review any Court grievance or adverse action plan, or other relevant policies;
- Review the applicable laws covered by the EDR Plan; Guide to Judiciary Policy, Vol. 12, Ch. 2; and The Employment Laws and Policies Applied to the Judiciary by the Model EDR Plan, Handbook Ch. VIII; and
- Use this Handbook as a checklist reminder of the information you want to provide to, and receive from, the Employee.

**At the start of the meeting.** Whenever an Employee first comes to an EDR Coordinator (or DWR), **before the Employee describes the issue**, the EDR Coordinator (or DWR) should: (1) explain that s/he is neutral and not an advocate for any Party; (2) explain the confidentiality provisions and reporting exceptions; and (3) determine the Employee's confidentiality request.

*Explain impartiality.* *See Impartiality*, Handbook § II(B), and Plan § IV(B)(2). Briefly:

- The EDR Coordinator's (or DWR's) role is neutral – s/he is not an advocate for either the Employee or the Employing Office and will recuse if s/he participated in the employment dispute or decision.

- The EDR Coordinator (or DWR) will provide his/her best guidance to both Parties about the EDR Plan, its Options for Resolution, and their rights and help facilitate the EDR process fairly and impartially.

*Explain confidentiality.* *See Confidentiality*, Handbook § II(A), and Plan § IV(B)(1). Briefly:

- All individuals involved in the processes under the Plan must protect the confidentiality of the allegations of wrongful conduct.

- Information will be shared only to the extent necessary and only with those whose involvement is necessary to address the situation.

- Informal Advice discussions can be completely confidential **unless** there is reliable information of wrongful conduct that either threatens the safety or security of any person or is so serious or egregious that it threatens the integrity of the Judiciary.

- During Assisted Resolution, information will only be shared with those whose help is requested or who need to know about the EDR matter in order to assist with the requested resolution, but reliable information of wrongful conduct that threatens the safety or security of any person or that is so serious or egregious that it threatens the integrity of the Judiciary must also be disclosed.

**Listen to the Employee's allegations and concerns.**

- Determine if there are any potential risks or threats to the Employee's or anyone else's safety or security.

- Listen effectively and non-judgmentally to everything the Employee wants to discuss. *See Tips on Effective Listening,* Handbook § IV(D).

- Be empathetic without losing neutrality or becoming an advocate (for example, "*I can see you are upset*," rather than "*You have every right to be upset about this*").

- Take good notes, but don't let note-taking interfere with communication. Maintain eye contact and body orientation with the Employee.

**Gather facts.** Possible questions include:

- *What exactly happened?* Move the discussion from conclusory allegations, like "s/he harassed me," to specifics – find out exactly what was said, when it happened, and where it happened.

- *Why do you believe the incident(s) involve EDR?* Find out if the Employee is alleging discrimination, harassment, abusive conduct, retaliation, a violation of an EDR Law, or other wrongful conduct.

- *Do you have any concerns about your safety or security?*

53

- *What are the relevant dates?*  Develop a timeline.

- *What did you say and how did you react to the incident(s)?*

- *Who else was present or may have seen or heard the incident(s)?*

- *Who else have you talked to about this?*

- *Have you discussed the issue with your supervisor, HR professional, or Unit Executive?*  Often these managers are best able to quickly and discreetly resolve a workplace conduct issue.
  - *If not, why not?*
  - *If so, were you dissatisfied with how they resolved the matter?*

- *Does the Employee have any notes, physical evidence, or other documentation regarding the incident(s)?*

- *What actions or relief do you want?*

NOTE:  These are just possible questions.  They are not applicable in every case, and there may be other, more pertinent, questions to ask depending on the situation.

**Educate the Employee about the EDR Process.**  Give the Employee a copy of this Handbook and the EDR Plan (and the attached forms) and make sure s/he knows where to find the Plan on the Court's website.  Explain:

- The informal and formal Options for Resolution under the EDR Plan.

- The General Rights applicable throughout the EDR process.

- The 180-day deadline to file a Formal Complaint, which is not extended when the Employee uses Informal Advice or Assisted Resolution (unless the Chief Judge extends that deadline for good cause).

- If the Employee elects to proceed with Assisted Resolution or a Formal Complaint, s/he must submit the Request or Complaint in writing.

- The Formal Complaint process includes some investigation and/or discovery, a hearing within 60 days if there are disputed issues of fact, and a right to request review (appeal) to the Circuit Judicial Council.

54

- ▪ The Employee's Rights and Responsibilities under the EDR Plan, including:
  - o Protection from retaliation. *See* Plan § II(E).
  - o Right to representation (at Employee's expense). *See* Plan § IV(B)(3).
  - o Right to seek disqualification of EDR Coordinator or Presiding Judge when a Formal Complaint has been filed. *See* Plan §§ IV(B)(2) and (C)(3)(e)(iii).
  - o Right to use a reasonable amount of official time to prepare case when a Formal Complaint has been filed, so long as there is minimal interference with work duties. *See* Plan § IV(C)(3)(e)(vi).
  - o Remedies that are and are not available under EDR Plan when a Formal Complaint has been filed. *See* Plan § IV(C)(3)(h).

**Identify possible issues.** The EDR Coordinator (or DWR) should determine whether:

- ▪ The Employee is alleging a Judge or Unit Executive violated his/her EDR rights. If so, the Request must be referred to the Court's Chief Judge.

- ▪ The Employee's issue or allegations are covered by your Court's EDR Plan.

- ▪ The allegations are potentially covered by a grievance policy or adverse action appeal.

- ▪ The EDR Coordinator (or DWR) has a conflict of interest.

**Special note: victims of sexual harassment or sexual assault.** If an Employee has been subject to sexual harassment, racial harassment, other discriminatory harassment, or abusive conduct, s/he may be experiencing strong emotions, such as anger, fear, shame, vulnerability, or powerlessness. It might be appropriate to provide such an Employee with information about the Employee Assistance Program.

## 2. *Meeting With the Employing Office or Chief Judge*

After receiving a Request for Assisted Resolution, the EDR Coordinator (or DWR) will first meet with the Employing Office (or Chief Judge) . **The EDR Coordinator (or DWR) does not meet with the Employing Office if the Employee has only sought confidential Informal Advice.**

**Know in advance who is responsible for addressing the Request.**

*Allegations Against a Unit Executive.* If the Request for Assisted Resolution alleges that the Unit Executive violated EDR rights, the EDR Coordinator (or DWR) must first meet with the Court's Chief Judge, not the Unit Executive, because it is the Chief Judge who is responsible for assessing the allegations and addressing the matter. *See* Plan § IV(C)(2)(c). The Chief Judge may, however, designate another Unit Executive or Judge to address the Request for Assisted Resolution.

*Allegations Involving a Judge.* If the Request for Assisted Resolution alleges that a Judge violated EDR rights, the EDR Coordinator (or DWR) must meet with the Court's Chief Judge, who will assess and address the Request. *See* Plan § IV(C)(2)(b).

**Educate the Employing Office about EDR.**

- Provide a copy of the Court's EDR Plan and this Handbook.
- Explain confidentiality. *See* Plan § IV(B)(1).
- Explain impartiality. *See* Plan § IV(B)(2). Explain that even though you have already met with the Employee, you are not the Employee's advocate, but will help both sides understand their EDR Options.
- Discuss any potential risks or threats to anyone's safety or security.
- Explain Employing Office's Rights and Responsibilities under the EDR Plan, including:
  - The Unit Executive (or Chief Judge) has the right to assess the Request and take any appropriate steps to address it. Consider whether it would be appropriate to explain that outright rejection of the Request may increase the likelihood that the Employee will file a Formal Complaint.
  - Right to deny a Request for Assisted Resolution under Plan § IV(C)(2)(d).
  - Right to use an attorney (at Employing Office's expense) or a representative. Plan, § IV(B)(3).

56

- An Employee may not be retaliated against; the Employing Office can be held responsible for any retaliation in a separate Complaint, regardless of the merits of the original Complaint. *See* Plan § II(E).
- The Employing Office and the Employee may voluntarily agree to mediate the matter.

The Unit Executive or Chief Judge may investigate the matter or ask the EDR Coordinator (or DWR) to investigate the matter. Be mindful of confidentiality obligations and be sensitive to the Employee's expectations about confidentiality.

Unit Executives and Chief Judges may contact the Office of the General Counsel for legal guidance.

**Gather facts.** Possible questions include:

- *Has the Employee previously raised this concern with a Unit Executive or supervisor, and if so, what was the response?*
- *What are the Employing Office's reasons for any employment actions or decisions?*
- *What resolutions are acceptable to the Employing Office?*
- *Does the Employing Office have supporting personnel records, documents, notes, or other physical evidence?*
- *What are the relevant dates?*
- *Are there witnesses?*
- *Are there any safety/security concerns?*
- *Is there a need for Interim Relief?*
- *Are there other workplace concerns relevant to the EDR matter?*

NOTE: These are just possible questions, they are not applicable in every case, and there may be other, more pertinent, questions to ask depending on the situation.

# D. TIPS ON EFFECTIVE LISTENING

"To listen well is as powerful a means of communication and influence as to talk well."
    – Supreme Court Chief Justice John Marshall

The EDR Coordinator needs to listen accurately, empathetically, and non-judgmentally.

**Goals.**

- Build trust and rapport with both Parties in order to encourage them to discuss the dispute honestly and openly.
- Create a safe, neutral environment in which both Parties feel safe to express their concerns, ask questions, and understand the EDR process.
- Defuse strong emotions by listening and letting the Parties know you are hearing and understanding their issues and concerns.
- Focus the Parties on the relevant facts and issues.
- Identify all of the issues, claims, witnesses, evidence, immediate needs, and desired outcome.

**Active Listening.**

DO:
- Listen to hear and understand. Fully concentrate, understand, respond and then remember or take notes on what is being said.
- Stay focused on the speaker and avoid turning the discussion to your observations or comments or experience.
- Allow for comfortable silences to slow down the exchange. Pause before following up with questions or comments. Give the speaker time to think as well as talk. Pauses can be very helpful in diffusing strong emotions.
- Use brief, positive prompts to keep the communication going and show you are listening: "*Tell me more*"; "*I understand*"; "*What happened then?*"
- Summarize/paraphrase the speaker's words in order to clarify understanding: "*Am I understanding this correctly?*"
- Notice the emotional content of the communication and observe the speaker's behavior and body language. Is s/he angry, frightened, depressed? Understanding the underlying emotions helps the EDR Coordinator (or DWR) have a more accurate understanding of the speaker's true concerns.
- Combine facts with observed feelings: "*So you felt very upset when…?*" "*I sense that you're worried that….*"

58

- Use your body language to show you are listening. Orient yourself toward the speaker, make eye contact, nod your head.
- Seek to clarify and clear up any confusion. Use open-ended questions with a neutral tone of voice.

DON'T:
- Judge or evaluate. Simply confirm what the speaker said. Allow the speaker to correct you when you are summarizing/paraphrasing to demonstrate you truly want to understand.
- Disagree with the speaker or minimize his/her concerns: "*Well, that's just part of the job*"; "*I'm sure you just misunderstood*"; "*You need to calm down.*"
- Give unsolicited advice: "*What you should do is...*"; "*Why don't you just...*"
- Interrupt or finish the speaker's sentences or steer the communication in a direction before s/he is finished with a line of thought.

**A note on notes and notetaking.**

- Let the Parties or witnesses know you will be keeping notes for your personal use.
- Type your notes in detail as soon as the session is over, while your recollection is still fresh.
- Do not record meetings with Employees or Employing Offices. These are confidential discussions.
- Keep these personal notes in a highly secure place.

- IMPORTANT: The notes an EDR Coordinator or DWR take during meetings with Employees or Employing Offices are intended solely for the note-taker's personal use. They serve as a personal reminder of the issues discussed in these meetings and may be retained and discarded at the sole discretion of the EDR Coordinator or DWR. These notes are not official records and should not be maintained in any EDR official record-keeping system. *See The Presiding Judicial Officer's Role*, Handbook § V(C)(1).

# V. Formal Complaint

# A.  THE FORMAL COMPLAINT PROCESS

The Formal Complaint option allows an Employee to have a Judge determine whether his/her rights under the EDR Plan were violated and, if so, the appropriate remedy.

The filing of a Complaint begins an administrative proceeding that generally proceeds as follows:

- The Chief Judge designates a Judge as the Presiding Judicial Officer (PJO) to manage the Formal Complaint process and to decide whether the Employee's EDR rights were violated and, if so, whether s/he is entitled to a remedy for any violations. Plan § IV(C)(3)(e)(i).
- The PJO may dismiss a Complaint immediately if appropriate (for example, it does not state a cognizable EDR claim).  Plan § IV(C)(3)(f)(i).
- The Employing Office files a Response to the Complaint.  Plan § IV(C)(3)(e)(iv).
- The PJO decides how best to gather information about the allegations, such as directing the Parties to share information or appointing a third-party investigator. Plan § IV(C)(3)(e)(v).
- The PJO decides whether to hold a hearing or whether the Complaint can be decided without one.  Plan § IV(C)(3)(f) and (g).
- The PJO holds a hearing, if necessary.
- The PJO issues a written decision, which will include ordered remedies if appropriate.  Plan § IV(C)(3)(g) and (h).

**Deadline to file.**  A Complaint must be filed within 180 days of the alleged wrongful conduct or within 180 days of the time the Employee became aware or reasonably should have become aware of the wrongful conduct.  The Chief Judge or the PJO may grant an extension of time for good cause.  Plan § (IV)(C)(3)(a).  Use of the Informal Advice or Assisted Resolution options does not toll (extend) this 180-day deadline unless the Chief Judge or the PJO grants an extension of time for good cause.  *Id.*

**No prerequisites to file a Formal Complaint except for abusive conduct allegations.** With one exception, Employees do not need to exhaust any process or procedure before filing a Complaint.  There is no requirement that they first use Informal Advice or Assisted Resolution.  The exception is for claims of "abusive conduct," which must first be raised in a Request for Assisted Resolution before an Employee can file a Complaint.  Plan § IV(C)(3)(b).  If a Complaint contains a mix of abusive conduct and other allegations, the PJO will determine how best to proceed.

61

**The Employee is the Complainant.**  In a Formal Complaint proceeding, the Employee is called the "Complainant."  To protect privacy, the Complaint, any pleadings or orders, the decision, and any Request for Review of Decision should always refer to the Employee by the generic "Complainant" name, not by the Employee's actual name.

**The Employing Office is the Respondent.**  An EDR Complaint is always filed against the Employing Office of the Complainant.  That is because EDR is designed to ensure Employing Offices provide appropriate workplace protections to their Employees under generally recognized employment law principles.  The Court is the Employing Office of chambers employees.  *See* Plan *Definitions*, Employing Office/Respondent, Appendix 1.

**An alleged violator is not a Party to a Formal Complaint.**  An EDR Complaint is never filed against an individual, including a person alleged to have engaged in wrongful conduct (referred to in this Handbook as the "alleged violator").  *See Alleged Violator Participation in the Formal Complaint Process*, Handbook § V(C)(3), and Plan § IV(C)(3)(c).

**Response.**  The Respondent may file a response to the Complaint with the EDR Coordinator within 30 days of receiving the Complaint.  The EDR Coordinator must then send the Response to the PJO and the Complainant.  Plan § IV(C)(3)(e)(iv). The Complainant may not file a reply to the Response unless authorized to do so by the PJO.

**Procedural rights.**  The EDR Plan provides Parties with the right:

- to have the allegations in the Formal Complaint decided by an impartial PJO;
- to have all EDR matters treated with the highest confidentiality possible;
- to use an attorney (at their expense) or representative to assist them throughout the Formal Complaint process;
- to have the EDR Coordinator explain their rights and obligations under the EDR Plan;
- to have the matter thoroughly and fairly investigated to the extent necessary under the circumstances;
- to a hearing if the PJO decides that it is necessary to resolve any relevant, material factual disputes;
- to present evidence and witnesses and to cross-examine witnesses at any hearing;
- to a timely written decision based on existing legal standards and precedent; and
- to request review of the PJO's decision by the Circuit Judicial Council.

**Investigation or discovery.**  The PJO must decide how best to gather information about the Complaint and Response.  Options include an investigation or discovery.  An

investigation is when a neutral third-party, not affiliated with either Party, researches the allegations by interviewing the Parties, the alleged violator, and any witnesses, gathers documentary and other physical evidence relevant to the allegations in the Complaint, and prepares a written report for the PJO and the Parties. Discovery is the exchange of relevant information between the Parties. Each Party may also conduct its own investigation by contacting witnesses.

**Mediation and settlement.** The Parties are free to attempt a settlement through mediation with an experienced mediator, or any other means, at any time during Complaint proceedings. Indeed, mediation of an EDR matter, particularly with an experienced mediator, is always encouraged. Detailed information about mediation can be found in *Assisted Resolution – Mediation*, Handbook § IV(B)(6).

The Parties or the EDR Coordinator should inform the PJO that they are attempting to resolve the matter through mediation, so that s/he can consider whether an adjustment of any deadlines or hearing date is appropriate.

**Case preparation time.** The EDR Plan states that the Complainant may use **official time** (not administrative leave) to prepare his/her case, including interviewing witnesses and gathering documentary evidence, so long as it does not unduly interfere with the performance of duties. Plan § IV(C)(3)(e)(vi). The supervisor or Unit Executive should make this determination, taking care to avoid any conduct that could be perceived as retaliatory. The PJO has discretion to resolve any dispute.

**Special Procedures for Complaint Allegations involving a Judge.** *See* Plan § IV(C)(3)(d).

If a Complainant files a Formal Complaint alleging that a Judge violated rights under the EDR Plan, the EDR Coordinator must immediately provide a copy of the Complaint to the Chief Circuit Judge. If a District, Magistrate, or Bankruptcy Judge is the alleged violator, the EDR Coordinator must also provide a copy of the Complaint to the Chief District Judge (unless the Chief District Judge is the alleged violator, in which case the Complaint need only be given the Chief Circuit Judge). (It is permissible, but not required, to also give a copy of a Complaint alleging a Bankruptcy Judge violated EDR rights to the Chief Bankruptcy Judge.) The Chief Circuit Judge will then appoint a PJO to decide the Complaint (which can be a Judge from a different Court). If the alleged violator is the Chief Circuit Judge, the next most-senior active Circuit Judge will appoint the PJO to decide the Complaint.

In designating a Presiding Judicial Officer to decide the Complaint, Plan § IV(C)(3)(e)(i), the Chief Circuit Judge should take care to avoid any actual or perceived conflict of interest, *see id.*, § IV(B)(2). When a Judge is the alleged violator, the "Employing Office" is the Judge's Court, and the Chief Judge of that Court will represent the Court as Respondent. *See* Plan, *Definitions*, Employing Office/Respondent, Appendix 1.

*Related EDR and JC&D Complaints.* If a Judge is the subject of both a Formal Complaint and a JC&D complaint, the Chief Circuit Judge will determine the appropriate procedure for addressing both, subject to all requirements of the Judicial Conduct and Disability Act, the Rules for Judicial-Conduct and Judicial-Disability Proceedings, and, as practicable, this EDR Plan. The Chief Circuit Judge will need to determine how best to investigate and assess any common issues of fact. The Chief Circuit Judge may hold the EDR Complaint in abeyance in order to first investigate and decide the JC&D Complaint.

Regardless of whether there is a complaint under the Judicial Conduct and Disability Act, the Chief Circuit Judge should consider the need for any necessary or appropriate interim relief.

64

# B. THE EDR COORDINATOR'S AND CHIEF JUDGE'S INITIAL ACTIONS

**The EDR Coordinator**. Formal Complaints must be filed with an EDR Coordinator. The EDR Coordinator is responsible for educating the Parties about the Formal Complaint process, their rights and responsibilities, and the available remedies. The EDR Coordinator is also responsible for maintaining all official records of the Formal Complaint process.

Beyond that, however, the EDR Coordinator's role and responsibilities will largely be dictated by the Presiding Judicial Officer designated by the Chief Judge to hear and decide the Complaint. Typically, the PJO directs the EDR Coordinator to accept all EDR filings from the Parties, to send all orders and decisions to the Parties, and to be the central communication point so that Parties do not contact the PJO directly. The essential responsibilities of the EDR Coordinator during a Formal Complaint are detailed in *EDR Coordinator Responsibilities*, Handbook § V(F) below.

The Model EDR Plan does not contemplate that a Director of Workplace Relations will be involved in Formal Complaint proceedings. Circuits may, however, allow courts in their circuit to designate their DWR as an alternate EDR Coordinator for Formal Complaints.

**Complaint goes to the Chief Judge.** The EDR Coordinator must immediately give a copy of the Complaint to the Chief Judge of the Court. If the allegations in the Complaint allege that a Judge violated the Complainant's EDR rights, the Chief Judge will transfer the Complaint to the Chief Circuit Judge. Plan § IV(C)(3)(e)(i). *See The Presiding Judicial Officer's Role*, Handbook § V(C)(1). Otherwise, the Chief Judge will designate a Presiding Judicial Officer.

**Chief Judge designates the Presiding Judicial Officer.** As soon as a Complaint is filed, the Chief Judge must designate a Judge as the Presiding Judicial Officer who will decide the matter and oversee all aspects of the Formal Complaint process.

The PJO can be:
- an Article III Judge (including Judges in senior or inactive status);
- a Magistrate Judge;
- a Bankruptcy Judge;
- a Judge of the Court of International Trade;
- a Judge of the Court of Federal Claims; or
- a territorial Court Judge.

Plan, *Definitions*, Judge, Appendix 1.

Because Chief Judges typically advise, even direct, actions by an Employing Office, the Chief Judge should not act as the PJO because s/he will likely have a conflict of interest. The Chief Judge may have been involved in, or have independent knowledge about, any employment decision at issue in the Complaint. Further, the Unit Executive of the Respondent Employing Office may want to seek advice and guidance from the Chief Judge in responding to or resolving a Formal Complaint.

**Copy of the Complaint.** Upon appointment, the PJO gives a copy of the Complaint to whoever should act on behalf of the Respondent Employing Office. Plan § IV(C)(3)(e)(ii). In most cases, that will be the Unit Executive of the Respondent Employing Office, but circumstances might dictate that someone other than the Unit Executive act on behalf of the Employing Office. *See Guidance for the Presiding Judicial Officer--Initial Actions*, Handbook § V(C)(1), and Plan § IV(C)(3)(e)(ii) (stating that the PJO may determine there is good cause not to give a copy of a Complaint to a Unit Executive).

**The Parties should not communicate directly with the PJO.** The Model EDR Plan does not address whether *ex parte* or direct communications related to the EDR proceedings with the PJO are permitted, but typically, the PJO prohibits both *ex parte* and direct communications of EDR-related matters with the PJO, and instead directs the Parties to communicate only through, and file all EDR motions and requests with, the EDR Coordinator (not with the PJO or his/her chambers staff). *Ex parte* communications relating to EDR Complaints are strongly discouraged to maintain a level playing field and trust in the process, and to ensure any communications with the PJO are with all Parties present.

This does not prevent either Party from communicating with the PJO regarding matters *unrelated to the EDR matter*, such as routine Court matters.

# C.  GUIDANCE FOR THE PRESIDING JUDICIAL OFFICER

## 1.  *The Presiding Judicial Officer's Role*

**The PJO hears and decides the Complaint and manages the Formal Complaint process.**

The Model EDR Plan states that the PJO will:
- provide for appropriate investigation and discovery;
- allow for mediation and/or settlement discussions;
- determine if any written submissions should to be submitted by the Parties;
- decide if a hearing is needed;
- determine the time, date, and place of the hearing, and provide notice of the hearing;
- issue a written decision; and
- if warranted, order remedies.

*See* Plan § IV(C)(3)(e)(ii).

**Initial actions by the Presiding Judicial Officer.**

*Determine who receives the Complaint on behalf of the Respondent Employing Office.*  In almost all cases, the Unit Executive of the Respondent Employing Office should be given a copy of the Complaint because the Unit Executive is the head of the Employing Office and acts on behalf of the Respondent Employing Office.

But the EDR Plan allows an exception "when the Presiding Judicial Officer determines for good cause that circumstances dictate otherwise."  Plan § IV(C)(3)(e)(ii).  For example, if the Complainant alleges that the Unit Executive sexually harassed her, the personal interests of the Unit Executive likely conflict with the Employing Office's interests, and someone other than the Unit Executive should likely act on behalf of the Respondent Employing Office.  Recall that the Model EDR Plan states that an alleged violator does not get a copy of the Complaint, only notice that a Complaint was filed and the nature of the allegations.  Plan § IV(C)(3)(e)(ii).

As the Unit Executive's appointing official, the Chief Judge may also determine that someone other than the Unit Executive should act on behalf of the Respondent Employing Office.

*Notice of allegations to the alleged violator.*  The PJO does not give an alleged violator a copy of the Complaint but must give any alleged violator notice that a Complaint has been filed and a description of the nature and substance of the allegations.  Plan § IV(C)(3)(e)(ii). The PJO has the discretion to determine the level of appropriate notice to give to the alleged violator under the specific circumstances.

Although an alleged violator must be given notice of any hearing, Plan § IV(C)(3)(g)(ii), s/he is not entitled to any procedural due process rights (i.e. notice and opportunity to be heard) under any of the Plan's processes.  *See EDR Does Not Confer Due Process Rights for Alleged Violator*, Handbook § II(C)(3), and *Alleged Violator Participation in the Formal Complaint Process*, Handbook § V(C)(3).  Of course, the alleged violator should be interviewed during any investigation, Plan § IV(C)(3)(e)(v), and is likely to be a witness in a hearing.

**Limitations on the Presiding Judicial Officer's authority.**  The Model EDR Plan sets some limits on a PJO's authority.

*Administrative function.*  EDR proceedings are administrative and are not "cases and controversies" under Article III of the U.S. Constitution.

*Compelling testimony.*  The Plan does not provide the PJO with power to issue subpoenas or compel attendance of witnesses during discovery, an investigation, or at a hearing. Nonetheless, Employees should cooperate in an EDR proceeding, and managers may request that Employees participate in an EDR investigation, discovery, or hearing.  *See also Compelling Testimony from an EDR Coordinator or Director of Workplace Relations*, on the next page.

*Established precedent.*  The PJO should be guided by judicial and administrative decisions under relevant rules and statutes, as appropriate, in reaching a decision.  Plan § IV(C)(3)(e)(viii).

*Allowable Remedies.*  The EDR Plan limits the remedies that a PJO can order.  The allowable remedies are discussed in *Remedies*, Handbook § V(D), and Plan § IV(C)(3)(h).

*Deadline to issue a written decision.*  The EDR Plan requires the PJO to issue a written decision within 60 days of a hearing.  Only the Chief Judge can grant an extension of that deadline.  Plan § IV(C)(3)(g)(v).  The PJO can extend all other Plan deadlines upon a showing of good cause.  *See id*. § IV(C)(3)(e)(vii).

**Compelling Testimony from an EDR Coordinator or Director of Workplace Relations.** EDR Coordinators and DWRs do not possess any legal "privilege" from testifying at an EDR hearing or otherwise. Nonetheless, there is a strong expectation that notes and recollections from an EDR Coordinator or DWR should never be disclosed, including during the Formal Complaint process. The EDR Plan states that EDR Coordinators and DWRs should provide confidential Informal Advice and that discussions with an EDR Coordinator or DWR are to be considered highly confidential. Similarly, the notes that an EDR Coordinator or DWR takes of these confidential discussions are considered their private notes, to serve as a reminder of the issues discussed solely for their personal use, and they can be retained or discarded by them at their sole discretion.

Thus, EDR Coordinators and DWRs should not be asked to testify about any confidential discussions they had as part of their responsibilities to provide confidential Informal Advice or Assisted Resolution or to produce any of their private notes. Such a directive would violate the representations of confidentiality made in the Model EDR Plan, the spirit and intent of the role of the EDR Coordinator and DWR, and essential trust in the EDR process for providing safe, confidential ways to report and address wrongful conduct.

**The Presiding Judicial Officer's discretion.**

The PJO has discretion over all procedural matters relating to the Formal Complaint proceeding, subject to any express limitations set forth in the EDR Plan. If a Party requests a Review of Decision, a Circuit Judicial Council might review these discretionary decisions under an abuse-of-discretion standard.

The PJO's discretion includes:

- Extending the deadline to file the Formal Complaint, Plan § IV(C)(3)(a);
- Extending any deadline under the EDR Plan except the deadline to issue a written decision, Plan § IV(C)(3)(e)(vii);
- Liberally construing a pro se Formal Complaint;
- Allowing the Complainant to amend or supplement the Formal Complaint;
- Consolidating related EDR matters;
- Determining the appropriate discovery and/or investigation to ensure the allegations are appropriately investigated, Plan § IV(C)(3)(e)(v);
- Requiring the Parties to file briefs, such as a pre-hearing motion to dismiss or for summary judgment, or a post-hearing summary of arguments;

- Dismissing a Complaint (at any stage) if it is untimely, fails to state an EDR claim, is repetitious or frivolous, or is an abusive conduct claim that was not first raised in a request for Assisted Resolution, Plan § IV(C)(3)(f)(i);
- Issuing a decision without hearing if s/he determines there are no material factual disputes, Plan § IV(C)(3)(f)(ii); and
- Determining when, where, and how to conduct any hearing; *see Hearing*, Handbook § V(C)(8), and Plan § IV(C)(3)(g)(i).

## 2. *Issues That May Arise*

**Abusive conduct claim**. The EDR Plan requires Employees alleging abusive conduct to request Assisted Resolution before filing a Complaint. Plan § IV(C)(3)(b). If the Employee has failed to do so or the Complaint includes a mix of abusive conduct and other claims, the PJO should determine how best to proceed. Options include dismissing the Complaint or staying the Formal Complaint proceeding to allow the Employee to request Assisted Resolution.

**Amending a Complaint**. Complainants sometimes ask to amend or supplement their Complaint. While the Model EDR Plan is silent on whether this is permitted, the issue is committed to the discretion of the PJO. The PJO might consider whether a proposed amendment would prejudice the Respondent or whether the Respondent consents to the amendment.

**Extensions of time**. The Chief Judge and PJO can extend EDR deadlines as follows:

- Either the Chief Judge or the PJO can extend the 180-day deadline to file a Complaint for good cause. Plan § IV(C)(3)(a).

- The PJO can extend all EDR deadlines for good cause except the deadline to issue a decision within 60 days of the hearing. Plan § IV(C)(3)(e)(vii).

- The Chief Judge can extend the PJO's deadline to issue a written decision within 60 days after the hearing. Plan § IV(C)(3)(e)(vii).

NOTE: There are no deadlines associated with Informal Advice or a Request for Assisted Resolution but pursuing those options does not change the requirement that a Complaint must be filed within 180 days.

### 3. *Alleged Violator Participation in the Formal Complaint Process*

Because the EDR Plan is intended to address Employee rights and Employing Office responsibilities exclusively, it does <u>not</u> give an alleged violator the rights to respond to the Complaint, intervene in the EDR matter, be a Party to the EDR matter, call or cross-examine witnesses, or appeal the EDR matter (although the Plan does require that an alleged violator receive notice of the nature and substance of the Complaint, notice of any hearing, and a copy of the written decision). *See* Plan § II(A). Thus, the Plan explicitly states that the issue in an EDR Complaint is whether the Employing Office is responsible for the alleged conduct and that it is not an action against any individual. Plan § IV(C)(3)(c) and footnote 3. Accordingly, the standards and findings required to resolve a Formal Complaint under the Plan are markedly different than the issues involved in assessing and effectuating an appropriate adverse employment or disciplinary action against an alleged violator.

For example, "wrongful conduct" under the Plan is defined as: discrimination, sexual, racial and other discriminatory harassment, abusive conduct, retaliation, and conduct that would violate the federal anti-discrimination laws and other federal workplace laws. Plan § II(A). "[C]ognizable misconduct" by a judge is defined, under the Judicial Conduct and Disability Act and the Rules for Judicial-Conduct and Judicial-Disability Proceedings, as conduct prejudicial to the effective and expeditious administrative of the business of the Courts. *Guide to Judiciary Policy*, Vol. 2, Pt. E, Rule 4. Employee termination "for cause" is defined, under federal law employee relations principles, as anything that adversely affects the proper and efficient operation of the employing office. *See* 5 U.S.C. § 7513(a); *Guide to Judiciary Policy*, Vol. 12, Ch. 3, § 320.50.10. Thus, a finding of employer liability for wrongful conduct under the Plan is not the same as a determination of "cause" for termination or "cognizable misconduct" by a Judge.

Further, whether and how to engage in disciplinary action against an alleged violator requires a complex analysis of: (1) the alleged violator's employment status (e.g. at will, for cause, term appointment, lifetime appointment); (2) whether there are any statutory rights provided to the position the alleged violator holds; (3) what standard has previously been used when disciplining similarly situated individuals; (4) what, if any, practices or policies apply to taking a disciplinary action, such as a termination or referral to Congress for consideration of impeachment; and (5) who has the authority to effectuate a disciplinary action against the alleged violator. The listed considerations are not part of determining whether an Employing Office is liable to the Complainant for abusive conduct or harassment.

Because the factual investigation, legal analysis, and jurisdictional authority pertaining to EDR Complaints and misconduct actions are not the same, it is generally recommended that alleged violators not be permitted to actively participate in the EDR process so as to avoid conflating EDR issues with misconduct and disciplinary actions. Keeping the EDR process separate from misconduct and disciplinary actions and recognizing that the EDR process does not implicate any due process rights for the alleged violator ensures that all involved (i.e. Employing Offices, Complainants, and alleged violators) have an opportunity to assert their rights through a process that takes into account all interested individuals' rights before an appropriate authority. *See Holding the EDR Formal Complaint Process in Abeyance*, Handbook § V(C)(4).

## 4.   *Holding the Formal Complaint in Abeyance*

When the EDR Complaint involves allegations of sexual or other harassment or abusive conduct, the PJO might hold the EDR matter in abeyance to give the Employing Office an opportunity to prevent and promptly correct the harassing or abusive behavior. Holding the EDR matter in abeyance may provide relief to the Complainant more efficiently and effectively than could be provided through the Formal Complaint process. Because compensatory damages or other monetary damages are not permitted under the Plan, the only available relief for discriminatory harassment and abusive conduct under the Plan may be to order the Employing Office to prevent or correct the abusive or harassing conduct. An Employing Office already has an interest in preventing and correcting the abusive or harassing behavior independent of the EDR Formal Complaint process and is often able promptly to implement practicable options for preventing and addressing the behavior.

Also, when the EDR Complaint involves allegations of harassment or abusive conduct, the PJO may consider whether to grant interim relief to the Complainant. *See Interim Relief*, Handbook § V(D)(1).

## 5.   *Pre-Hearing Motions*

The PJO has complete discretion as to whether to allow pre-hearing motions, to set any deadlines to file such motions, and the page limits of such motions. In determining whether to allow or require pre-hearing motions, the PJO should consider the complexity of the issues and whether either of the Parties is proceeding *pro se* or is represented by counsel.

If the Parties are proceeding *pro se* and are unfamiliar with usual motion practice, an alternative may be to allow them to submit a letter or email making any desired request or argument. The opposing Party should always have an opportunity to respond to any pre-hearing motion, request, or argument.

# 6. *Investigation and/or Discovery*

Unless the Complaint is summarily dismissed on its face under Plan § IV(C)(3)(f)(i), the PJO must ensure that any relevant allegations in the Complaint are thoroughly, impartially, and fairly investigated. *See* Plan § IV(C)(3)(e)(v).

The PJO has sole discretion to determine the method and scope of the investigation and/or discovery, and the deadlines by which investigation and/or discovery must be completed. The PJO could decide to have a neutral third-party conduct an investigation, could supplement an investigation with traditional discovery methods, or require the Parties to engage in discovery instead of an investigation. There is not one way to gather information: the method need only be sufficient to make the PJO and the Parties aware of the evidence that is relevant to the determination and disposition of the Complaint and that may be presented at any hearing.

In selecting an investigation and/or discovery method, the PJO could consider the complexity of the allegations, the factual detail in the EDR Complaint and Response, whether either or both of the Parties are proceeding *pro se* or are represented by counsel, and the desired formality or informality of the EDR process.

**Investigation.**

An investigation might be appropriate when neither Party is represented by counsel and they are unfamiliar with usual discovery practices. An investigation may also be an efficient and effective method to determine the relevant facts with little formality. An investigation might minimize the potential power imbalance between the Complainant and the Respondent.

At the end of this Chapter is guidance for an investigator on how to conduct a fair, impartial, and thorough workplace conduct investigation. *See Guidance for an EDR Investigator*, Handbook § V(H). The PJO and both Parties should get a copy of any Investigation Report.

**Discovery.**

Discovery might be appropriate when both Parties are represented by counsel or are capable of fairly exchanging information. Discovery should be proportionate to the complexity of the issues, recognizing that this is an administrative process that seeks to provide a remedy to a Complainant who alleges wrongful conduct. Discovery may include:

73

- a set number of interrogatories prepared and answered by the Parties;
- requests for production of documents;
- requests for admissions; and
- stipulated facts.

The PJO should focus any investigation and/or discovery on evidence that is relevant, material, and probative of the asserted EDR claim(s). Any investigation or discovery should be completed prior to commencement of a hearing. Given the 60-day deadline to hold a hearing (which can be extended by the PJO), investigation and discovery must be commenced and completed without delay to give the PJO time to assess whether there are material facts in dispute and to focus any hearing on those disputed material facts. The PJO should consider holding a conference with the Parties to plan for any investigation and/or discovery, including a completion date.

NOTE: If there are any concerns about the Parties or any of their attorneys or representatives having access to confidential information, the PJO may require them to sign a confidentiality and non-disclosure agreement.

Investigation and/or discovery is a tool for the PJO to determine whether a hearing is necessary and whether additional information is needed or if further discovery should be limited. Thus, after investigation and/or discovery is complete, the PJO should assess whether the Complaint should be decided without a hearing under Plan § IV(C)(3)(f)(ii) – similar to a summary judgment based on undisputed facts. If so, the Parties should be given notice and opportunity to respond to a potential decision without a hearing. *See Decision Without a Hearing*, Handbook § V(C)(7).

**Selecting an investigator.** The PJO selects an investigator. Investigations may be conducted by any trusted, qualified, impartial person, ideally with relevant workplace investigation experience, such as:

- an investigator from another Court;
- an outside investigator retained by the Court, with Court budget funds;
- a Judge (including a Magistrate Judge or a senior Judge);
- an EDR Coordinator who was <u>not</u> involved in any of the EDR matters at issue in the Formal Complaint; or
- the Circuit Director of Workplace Relations.

Qualities of a good investigator include:

- good listening and social/interpersonal skills, and the ability to establish a rapport;

74

- honesty, integrity, discretion, and objectivity;
- intelligence/competence, the ability to understand the basics of the EDR employment law(s) at issue, and an understanding of how to ask clear, logical questions;
- good memory and note-taking skills;
- the ability to write well; and
- organizational skills.

## 7. *Decision Without a Hearing*

A decision without a hearing may occur in three circumstances: settlement, summary dismissal, or a decision based on undisputed facts.

**Voluntary Dismissal or Settlement.** If the Complainant voluntarily withdraws the Complaint, the PJO should enter an order of dismissal. The Parties can jointly request the PJO to dismiss a Complaint if they settle the matter on their own. *See* Plan § IV(C)(3)(f)(iii). The settlement must be in writing and it must be approved by the Chief Judge and the Presiding Judicial Officer. *See id.*

**Summary dismissal.** Similar to a dismissal of a civil suit under Fed. R. Civ. P. 12(b), the PJO may summarily dismiss a Complaint under Plan § IV(C)(3)(f)(i), if, based on the allegations on the face of the Complaint, s/he determines:

- the Complaint was untimely under Plan § IV(C)(3)(a) and neither the Chief Judge nor the PJO determines that good cause exists for a deadline extension under Plan § IV(C)(3)(e)(vii);

- the allegations are frivolous, or fail to state a claim upon which relief may be granted;

- the claims are not covered by the EDR Plan;

- an abusive conduct claim was not first raised in a Request for Assisted Resolution as required by Plan § IV(C)(2)(a); and/or

- the allegations are unduly repetitive of a previous EDR Complaint, adverse action appeal, or grievance.

*See* Plan § IV(C)(3)(f)(i).

75

The PJO may summarily dismiss a Complaint under Plan § IV(C)(3)(f)(i) at any time and may do so on his/her own initiative or on the request/motion of a Party. The PJO must give the Parties notice and opportunity to respond. Rule 12(b)(6) and its established interpretations do not apply but may be used as a guide.

**Decision without a hearing based on undisputed facts.** Similar to summary judgment under Fed. R. Civ. P. 56, the PJO may decide a Complaint without a hearing if s/he determines that no material, relevant facts are in dispute and that one of the Parties is entitled to a favorable decision on these undisputed facts. Plan § IV(C)(3)(f)(ii).

A decision without a hearing under Plan § IV(C)(3)(f)(ii) may only be issued after completion of investigation and/or discovery in order to give the Parties a reasonable opportunity to present all the evidence relevant to the Complaint.

A Party may file a motion or request that the Complaint be decided based on the undisputed facts, as determined by the investigation and/or discovery. Or the PJO may issue a decision without a hearing under Plan § IV(C)(3)(f)(ii) on his/her own initiative, so long as s/he gives the Parties notice and opportunity to respond before issuing that decision.

In determining whether to decide a Complaint without a hearing under Plan § IV(C)(3)(f)(ii), the PJO has discretion to determine when investigation and/or discovery has been completed, what facts are or are not in dispute, what disputed facts are relevant and material to the EDR claims, what evidence to consider, whether testimony needs to be sworn statements, and all other procedural issues.

## 8. *Hearing*

The Presiding Judicial Officer is required to hold a hearing if s/he determines that there are material facts required to decide the Complaint are in dispute. Plan § IV(C)(3)(f)(ii) and (g). The Parties can present evidence and witnesses and cross-examine witnesses.

The PJO sets the date, time, and location of the Hearing. Plan § IV(C)(3)(g)(i). The hearing can be as informal or formal as the PJO determines appropriate to the nature and complexity of the claims and whether the Parties are proceeding *pro se* or are represented by counsel. It can be held wherever the PJO determines appropriate, such as a courtroom, chambers, or conference room.

**Notice of the Hearing.** The Complainant, the Respondent, and the alleged violator must receive reasonable written notice of the time and place of the hearing. Plan

§ IV(C)(3)(g)(ii). The PJO typically issues a Notice of Hearing and directs the EDR Coordinator to send this Notice to the Parties and any alleged violator.

**Procedural requirements.** The Plan sets out the following rules regarding the Hearing:

- The hearing must be held no later than 60 days after the Complaint was filed, Plan § IV(C)(3)(g)(i), but the PJO can extend that deadline for good cause, *id.* § IV(C)(3)(e)(vii).

- The Complainant and Respondent have the right to bring an attorney or representative to the hearing. Plan § IV(B)(3).

- The Complainant and Respondent have the right to present witnesses and documentary evidence on their behalf, and to cross-examine adverse witnesses.

- A verbatim record of the hearing (either a digital recording or a court reporter transcript) must be kept, which shall be the sole official record of the proceeding. Plan § IV(C)(3)(g)(iv). A written transcript is only needed if there is an appeal, however.

**Witnesses and testimony.** The Federal Rules of Evidence and Civil Procedure do not apply. The PJO has sole discretion to determine what witnesses and testimony are relevant. The PJO should limit the witnesses, testimony, and documentary evidence to that which is relevant, material, and probative to the asserted EDR claim(s) and the disputed factual issues.

The Presiding Judicial Officer has sole discretion over all hearing matters, such as:

- the length of the hearing;
- whether to grant a requested postponement of the hearing;
- whether to administer an oath;
- what witnesses and testimony are relevant;
- what documents are appropriate to introduce;
- whether to request stipulated facts from the Parties;
- whether to allow new evidence not produced during investigation and discovery;
- whether to admit hearsay evidence;
- whether to allow proffered testimony or affidavits;
- whether to allow expert testimony;
- whether to allow the record to be supplemented after the hearing; and
- whether to require post-hearing briefing or closing arguments.

77

## 9. *The Written Decision*

The Presiding Judicial Officer must issue a written decision containing findings of fact and conclusions of law within 60 days of the conclusion of the hearing unless good cause warrants an extension. Only the Chief Judge may grant such an extension. Plan § IV(C)(3)(g)(v).

To protect confidentiality, the Complainant should be referred to in the title and text of the decision simply as the "Complainant." The PJO should also use language in the decision to avoid personally identifying information and protect the confidentiality of other people, including witnesses and the alleged violator.

The PJO's decision should be guided by the judicial and administrative decisions under the relevant statutes and rules of the EDR Laws and Judicial Conference policies, as appropriate. Plan § IV(C)(3)(e)(viii).

Appropriate remedies are available when the Complainant has established by a preponderance of the evidence (more likely than not) that a substantive right under the Plan has been violated. *See Remedies*, Handbook § V(D).

A copy of the decision must be given to both Parties and any alleged violator. Plan § IV(C)(3)(e)(ix). It should also be given to the Chief Judge of the Court.

The EDR Coordinator must inform the Parties of the appeal rights, procedures, and deadlines.

# D. REMEDIES

## 1. *Interim Relief*

The Federal Judiciary's Workplace Conduct Working Group recommended that interim relief be available as a way to provide prompt corrective action when there is an allegation of sexual or other discriminatory harassment. Thus, the EDR Plan expressly permits an Employee to request immediate temporary interim relief, such as an alternative work arrangement, during the pendency of an Assisted Resolution or Formal Complaint, if s/he believes that working in chambers or an Employing Office is untenable because of sexual or other discriminatory harassment, abusive conduct, or retaliation by a supervisor. Plan § IV (B)(4). The Unit Executive and/or Chief Judge has sole discretion to grant or deny this request.

The Unit Executive and/or Chief Judge should consider all requests for interim relief. Providing interim relief may be a good way to take immediate and corrective action to prevent harassment, thus avoiding EDR responsibility for failing to take corrective action. The Unit Executive and/or Chief Judge are not required to provide the specific requested relief and have sole discretion to determine whether to allow such interim relief, whether such relief is feasible, and what relief is appropriate. They will take into consideration funding and other organizational considerations.

It is possible that a Presiding Judicial Officer could ultimately determine that an Employing Office's failure or refusal to provide interim relief to an Employee/Complainant alleging harassment or abusive conduct means it is vicariously responsible for such wrongful conduct. *See Employing Office Considerations*, Handbook § V(G).

Unit Executives and Chief Judges determining whether interim relief is feasible or appropriate should contact the AO's Court Human Resources Office and Office of the General Counsel for more information.

## 2. *Authority to Order Remedies*

The authority to order remedies rests with the Presiding Judicial Officer, whose authority is limited to that provided under the Model EDR Plan because s/he functions in an administrative, rather than an Article III capacity.

Any remedy the PJO orders must be in accord with all applicable statutes and regulations, including the applicable EDR Plan. The PJO has no authority to declare such statutes or regulations unconstitutional or invalid. The PJO has no authority to modify the Plan.

### 3. _Purpose and Intent of Remedies Under the Plan_

The Plan states that "remedies are limited to providing relief to the Complainant." Plan § IV(C)(3)(h).

When the Presiding Judicial Officer concludes that a right under this Plan has been violated, s/he should fashion a remedy that, as nearly as possible, places the Complainant in the situation s/he would have been had the right not been violated. *See id.*

### 4. _Available Remedies_

Available Remedies include:

- Placement of the Complainant in a position previously denied, or a comparable alternative position.

- Reinstatement to a position from which the Complainant was removed.

- Priority Consideration of the Complainant for a future promotion or position.

- Leave restoration: Complainant must demonstrate a causal nexus between the discrimination for which the Employing Office is responsible and the need to take leave.
  - Must be in the form of leave restoration and not cash value.
  - For Leave Without Pay, the Complainant's leave should be restored as official time and not cash value.

- Back pay under the Back Pay Act (5 U.S.C. § 5596), to restore the Complainant's income s/he should or would have earned, but for the violation of rights under this Plan.
  - An award under the Back Pay Act requires:
    - A finding that the Complainant was affected by an unjustified or unwarranted personnel action; and
    - The unjustified or unwarranted personnel action resulted in the withdrawal or reduction of all or part of the Employee's pay, allowance, or differentials. "Personnel action" under the Back Pay Act typically applies to removals, demotions, suspensions. *See Guide to Judiciary Policy*, Vol. 12, § 690.10.40 for definitions of "pay, allowances, and differentials" and "unjustified or unwarranted personnel action."

- *Back Pay and Constructive Discharge.* Where a claim for back pay is premised on constructive discharge due to abusive conduct or harassment, there must be an actual resignation or personnel action. *Green v. Brennan*, 136 S. Ct. 1769, 1776-77 (2016).
- An order of back pay is subject to review and approval by the Director of the Administrative Office of the U.S. Courts. *See Guide to Judiciary Policy*, Vol. 12, § 690. The Director of the Administrative Office of the U.S. Courts must confirm that an unjustified or unwarranted personnel action actually resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of an Employee.

**Examples**. The following chart contains some examples of potentially appropriate remedies. The chart is only intended to serve as a guideline.

| Alleged Wrongful Conduct | Remedies |
|---|---|
| Non-selection for a position where the PJO determines the Complainant would have been selected absent a violation of rights provided under this Plan | Back pay and attorney's fees<br><br>Placement into the position or substantially equivalent position |
| Non-selection for position where the PJO determines the Complainant would not have been selected even absent a violation of rights provided under this Plan | Priority consideration for future promotion or position |
| Demotion | Back pay and attorney's fees<br><br>Reinstatement to the subject position |
| Removal | Back pay<br><br>Reinstatement to the position prior to the removal or comparable position |
| Abusive Conduct/Harassment | Leave restoration where Complainant shows both a causal nexus (connection) between the wrongful conduct for which the Employing Office is responsible and the need to take leave<br><br>Alternative work arrangement |
| Denial of leave where the PJO determines the denial of leave was abusive or discriminatory | Leave restoration where Complainant shows both a causal nexus (connection) between the wrongful conduct for which the Employing Office is responsible and the need to take leave |

Case 1:20-cv-00066-WGY   Document 101-1   Filed 12/18/20   Page 87 of 144

## 5. *Prohibited Remedies*

No monetary damages are permissible, other than back pay under the Back Pay Act. Examples of *prohibited* monetary remedies include, but are not limited to:

- Compensatory damages (including pecuniary damages, such as medical expenses)
- Punitive damages
- Front pay
- Liquidated damages

The PJO may not order or recommend that disciplinary or similar action be taken against an alleged violator. A Formal Complaint proceeding is between the Employee and the Employing Office, not an individual; and the matters adjudicated under this Plan are limited to whether the Employing Office is responsible to the Employee under employment law principles. Where there is a finding of wrongful conduct, the appointing official, or official with delegated authority, should separately assess whether action, in accordance with any applicable policies and procedures, is necessary to correct and prevent wrongful conduct and promote appropriate workplace behavior. *See EDR Does Not Confer Due Process Rights for Alleged Violator*, Handbook § II(C)(3), and *Alleged Violator Participation in the Formal Complaint Process*, Handbook § V(C)(3).

# E.    CHECKLIST OF PRESIDING JUDICIAL OFFICER RESPONSIBILITIES

**At the outset of the Complaint proceedings, the Presiding Judicial Officer should determine:**

- If the Complaint and any other documents provided by the EDR Coordinator correctly names the Respondent Employing Office and provides all other necessary information.  Plan § IV(C)(3)(c).

- Whether s/he is able to act impartially in deciding the matter, or has a conflict of interest, such that recusal is warranted under Plan § IV(B)(2).

- Who should receive a copy of the Complaint on behalf of the Respondent Employing Office.  *See* Plan § IV(C)(3)(e)(i).  The Chief Judge or PJO can decide whether there is good cause to designate someone other than the Unit Executive to act on behalf of the Respondent Employing Office.

- Whether immediate temporary interim relief is warranted if the Complainant believes that working in chambers or an Employing Office is untenable because of sexual or other discriminatory harassment, abusive conduct, or retaliation by a supervisor.  Plan § IV (B)(4).

- The appropriate notice of the Complaint and its allegations to give to an alleged violator.  *See* Plan § IV(C)(3)(e)(i).

- Whether the Complaint should be summarily dismissed under Plan § IV(C)(3)(f)(i) as untimely, frivolous, or not covered by the EDR Plan, and if so, give the Parties notice and opportunity to respond to the potential dismissal.  *See Decision Without a Hearing*, Handbook § V(C)(7).

**During the Complaint proceedings, the Presiding Judicial Officer should:**

- If desired, set a pre-hearing conference with the Parties.

- Determine the scope, appropriate method of, and deadlines for the investigation and/or discovery, and issue any appropriate discovery orders.  *See Investigation and/or Discovery*, Handbook § V(C)(6).

83

- After investigation and/or discovery, determine if the Complaint can be decided based on the undisputed material facts under Plan § IV(C)(3)(f)(ii). *See Decision Without a Hearing*, Handbook § V(C)(7).

- If desired, issue a scheduling order for the Parties to submit any pre-hearing motions and responses, and to submit witness and exhibit lists, stipulated facts, and proposed findings of fact and conclusions of law.

- Set and send notice of a hearing date within 60 days of the filing date of the Complaint and the time, length and place (courtroom, chambers, conference room) of the hearing. Plan § IV(C)(3)(g)(i) and (ii).

**During a Hearing:**

- Determine the admissibility of witness testimony and evidence and all other procedural matters. *See A Hearing*, Handbook § V(C)(8).

- Ensure the Hearing is being transcribed or recorded. Plan § IV(C)(3)(g)(iv).

**The Decision:**

- Must be in writing;
- Should avoid actual names to protect privacy;
- Must be issued within 60 days of the Hearing, unless that deadline is extended by the Chief Judge (if no hearing was held, there is no express deadline but should be consistent with EDR timeframes);
- Should be guided by judicial and administrative decisions under the relevant statutes and rules of the EDR Laws and policies;
- Should set forth findings of fact and conclusions of law;
- Order only remedies that comply with EDR Plan requirements; and
- Be given to the Complainant, the Respondent, the Chief Judge of the Court, and any alleged violator.

# F.   EDR Coordinator Responsibilities

**Accept the Complaint for filing.**

The EDR Coordinator should accept the Complaint for filing, even if it is incorrect. Alert the Complainant and Presiding Judicial Officer that there may be issues when correction/amendment is required.

- The Complaint should:
  o Name only the Employing Office as the Respondent, not any individual;
  o Provide the Complainant's contact information;
  o Identify the EDR Law(s) or wrongful conduct on which the Complaint is based;
  o Describe the actions, omissions, and allegations, with dates and sufficient detail to allow meaningful assessment of the merits;
  o State the desired remedy or relief; and
  o Demonstrate that the Complainant requested Assisted Resolution if there is a claim of abusive conduct.

- Give the Complainant an opportunity to cure any obvious defects. Correcting any deficiencies, particularly as to relevant dates to assess timeliness, will expedite resolution of the Complaint.

- REMEMBER: only the PJO can dismiss a Formal Complaint as untimely or for any other reason. The EDR Coordinator may not refuse to accept or otherwise reject a Complaint as untimely or outside the scope of EDR. Instead, the EDR Coordinator should gather the necessary information to assess timeliness and alert the Parties and the PJO to any potential untimeliness issues, the Complainant's right to request an extension of time from the PJO, and the Employing Office's right to seek dismissal of an untimely Complaint.

**Create an EDR record.**

- *Assign a case number*: Typically: last two digits of year, then EDR-AR (for a Request for Assisted Resolution) or EDR-FC (for a Formal Complaint) then the chronological number of Requests or Complaints submitted that year. Thus: 20-EDR-AR-01 or 20-EDR-FC-01.

- *Create a "Docket"*: Start with the Complaint and include the Response, any filings, notices, motions, responses, rulings, and orders; and the written decision.

85

- *Create and maintain a confidential folder* for all communications, letters, emails, and any other documents related to the Complaint.

**Submit the Complaint to the Chief Judge and the Presiding Judicial Officer, then to the person acting on behalf of the Respondent.**

*First,* submit the Complaint, along with any related EDR records, such as an earlier Request for Assisted Resolution, to the Chief Judge. S/he will designate a Presiding Judicial Officer, who must also receive these EDR records.

REMEMBER: If the Complaint alleges that a Judge has violated rights under the EDR Plan, the Chief Judge must immediately transfer the Complaint to the Chief Circuit Judge, who will appoint a Presiding Judicial Officer to oversee the EDR Complaint process. Plan § IV(C)(3)(d).

If the Complainant has alleged judicial misconduct (indicating a potential inquiry or complaint under the Judicial Conduct and Disability Act or related Rules), the Chief Circuit Judge must determine the appropriate procedure for deciding both the EDR matter and any judicial misconduct matter. *Id.*

*Second*, give a copy of the Complaint and related EDR records to whomever the Chief Judge or PJO determines should act on behalf of the Respondent. Plan § IV(C)(3)(e)(ii).

The PJO will determine what notice of the Complaint should be given to the alleged violator.

**Meet with the Presiding Judicial Officer.** Provide the PJO with a copy of the Court's EDR Plan and this Handbook. Inform the PJO if any immediate actions or decisions are needed, such as:

- There are safety/security/integrity concerns, or the Complainant might need immediate temporary interim relief because s/he is alleging sexual or other harassment. *See* Plan § IV(B)(4).

- The allegations are subject to immediate dismissal because they are clearly untimely, do not allege any EDR-related claim, or other grounds. *See* Plan § IV(C)(3)(f)(i).

86

- The Complainant also seeks relief under the Court's grievance policy or adverse action plan and the Court's EDR Plan requires Employees to elect only one available process.

**Educate the Parties.** Provide both Parties with a copy of the Court's EDR Plan and this Handbook. Explain the Parties' Rights and Responsibilities under the EDR Plan, including:

- All Parties must respect the confidentiality of the EDR proceeding.

- A Complainant alleging sexual or other discriminatory harassment or abusive conduct by a supervisor may request temporary interim relief if the conduct has made the workplace untenable. Plan § IV(B)(4).

- Respondent has the right to file a response to a Complaint. Plan § V(C)(3)(e)(iv).

- Both Parties can request extension of the Plan's deadlines, which are:
  - The Complaint must be filed within 180 days of the alleged violation or when the Complainant knew, or should have known, of the alleged violation.
  - Any response to the Complaint must be filed within 30 days of notice of the Complaint.
  - Any hearing must be held within 60 days of the date the Complaint was filed, unless extended for good cause. Plan §§ IV(C)(3)(a), (e)(vii).
  - The final decision must be issued no later than 60 days after the conclusion of the hearing unless the Chief Judge grants an extension. Plan § IV(C)(3)(g)(v).

- Respondent can seek dismissal of the Complaint without a hearing under Plan § IV(C)(3)(f)(i).

- After an investigation and/or discovery, either Party can seek a written decision without a hearing under Plan § IV(C)(3)(f)(ii).

- Both Parties may use an attorney (at their expense) or a representative. Plan § IV(B)(3).

- Both Parties can seek disqualification of EDR Coordinator or PJO if they believe s/he has a conflict of interest. Plan § IV(C)(3)(e)(iii).

87

- Complainant has the right to use a reasonable amount of official time to prepare his/her case. Plan § IV(C)(3)(e)(vii).

- Complainant and anyone participating in the EDR proceeding may not be retaliated against; the Employing Office can be held responsible for any retaliation in a separate Complaint, regardless of the merits of the original Complaint. Plan § II(E).

Explain the remedies that are and are not available under the EDR Plan, including that compensatory and punitive damages are not available. *See Remedies*, Handbook § V(D), and Plan, § IV(C)(3)(h).

Explain that the PJO will decide the matter in a written decision and will determine all Complaint proceedings matters, including:

- Whether to grant any extensions of EDR deadlines;
- The appropriate method and scope of any investigation and/or discovery;
- Whether to hold a pre-hearing conference with the Parties;
- Whether any pre-hearing briefing by the Parties is necessary;
- Whether to dismiss or decide the matter without a hearing;
- The time, place, and manner of a hearing; and
- Any appropriate remedy.

**During the Complaint proceedings, the EDR Coordinator should:**

- Answer any questions the Parties may have about the Formal Complaint process, with guidance from the PJO as appropriate. The national Office of Judicial Integrity is available to answer questions about the EDR process as well.

- Serve as "Clerk" for the PJO:
  o Maintain the EDR "Docket" of the Complaint, the Response, any motions/responses and orders, and the written decision. Alternatively, the PJO may also maintain a sealed docket.
  o Accept for filing all motions, briefs, and other pleadings; ensure that each Party receives copies.
  o Submit the Parties' motions, briefs and other pleadings to the PJO and send all orders and decisions from the PJO to the Parties. (Some PJOs prefer to have their law clerks do this, in which case the law clerks must send copies to the EDR Coordinator to maintain the EDR record.)

**After the Decision is issued, the EDR Coordinator must:**

- Give a copy of the PJO's decision to all Parties, the Chief Judge, and any person alleged to have violated rights under the EDR Plan (the alleged violator).  Plan § IV(C)(3)(e)(ix).

- Inform the Parties of their right to appeal the PJO's decision by filing a Request for Review of Decision to the EDR Coordinator within 30 days.  Explain all of the procedures and requirements established by the Circuit Judicial Council for the appeal.  *See Request For Review*, Handbook Ch. VI.

- Maintain the EDR Record.  *See The EDR Record*, Handbook § VII (B).

# G. Employing Office Considerations

**Who acts on behalf of the Respondent Employing Office?**  In almost all cases, the Unit Executive of the Respondent Employing Office will act on behalf of the Employing Office during Formal Complaint proceedings and will immediately receive a copy of the Complaint.  But the Model EDR Plan allows an exception when "circumstances dictate otherwise."  Plan § IV(C)(3)(e)(ii).  Depending on the allegations in the Complaint, the Chief Judge or Presiding Judicial Officer might determine that the personal interests of the Unit Executive conflict with the Employing Office's interests and decide that someone other than the Unit Executive – likely the second-in-command – should act on behalf of the Respondent Employing Office instead.

**The EDR Coordinator is neutral.**  Although the Complainant has likely discussed his/her wrongful conduct concern with the EDR Coordinator prior to filing a Complaint, that does not mean the EDR Coordinator is an advocate for the Complainant.  The EDR Coordinator's role is neutral and s/he must provide the Employing Office with equal assistance in understanding the EDR Plan, the Formal Complaint process, and the Employing Office's rights and responsibilities.

If the Employing Office believes the EDR Coordinator (or the Presiding Judicial Officer) has a conflict of interest, it may seek disqualification by written request to the Chief Judge, explaining why that individual should be disqualified.

**Interim relief.**  The EDR Plan expressly permits a Complainant to request immediate temporary interim relief, such as an alternative work arrangement, if s/he believes that working in chambers or an Employing Office is untenable because of sexual or other discriminatory harassment, abusive conduct, or retaliation by a supervisor.  Plan § IV (B)(4).  The Unit Executive or Chief Judge has sole discretion to grant or deny this request.  *Id.*

The Unit Executive should consider such requests for interim relief.  Providing interim relief may be a good way to take immediate and corrective action to prevent harassment, thus avoiding EDR responsibility for failing to take corrective action.  For related topics, *see Employing Office Responsibility for Sexual, Racial or other Discriminatory Harassment*, below; *Holding the EDR Formal Complaint in Abeyance*, Handbook § V(C)(3); and *Interim Relief*, Handbook § V(D)(1).

**Right to respond.**  The Respondent has the right to file a response to the Complaint with the EDR Coordinator within 30 days of receiving the Complaint.  This response can include any documentary or other evidence the Employing Office believes relevant.

**Right to representation.**  An Employing Office is free to retain counsel to represent it during Formal Complaint proceedings.  Retaining counsel is at the Employing Office's own expense, and generally must be paid for from local funds. The AO's Office of the General Counsel is also available to provide legal advice to a Respondent Employing Office.  Because EDR is an administrative process and is neither a suit against the United States, nor against any Employee in their official or individual capacity, the Department of Justice does not provide representation to the Employing Office.

Courts and Employing Offices should consider the ethical implications involved when hiring outside counsel for representation in an EDR matter (or any personnel matter), considering the guidance in Ethics Compendium, Section 3.6-2, which states: "(a) Where an attorney-client relationship exists between the judge and a lawyer whose law firm appears in the case, the judge should recuse absent remittal. **Same where an attorney represents the court in personnel matters**." (emphasis added).  http://jnet.ao.dcn/sites/default/files/pdf/Vol2B_Ch3.pdf.  *See also* Code of Conduct for United States Judges Canon 3C(1), which states:  "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . .," and Canon 3D of the Code of Conduct for United States Judges (explaining remittal).

Court unit or FPDO Contracting Officers (i.e., COCP Level 3s) have delegated procurement authority to contract for experts under 5 U.S.C. § 3109 up to $25,000. Contracts over $25,000 require approval from the AO's Procurement Management Division (PMD).  *See, e.g.*, *Guide*, Vol. 14, Appx 1F.  PMD has a sample EDR expert contract template available on PMD's JNet site.  If a court has a procurement question, they may contact the PMD Helpdesk (via a HEAT ticket process noted on JNet).

Costs for outside EDR counsel/EDR expert services contracts are paid through local funds.  BOC 2529 ("Expert Services") should be used for 5 U.S.C. § 3109 expert/consultant services (includes "[o]btaining an attorney to represent the court who is an expert in Employee Dispute Resolution …."). If a court unit does not have sufficient funding, it may contact the AO's Budget Office to discuss a potential supplemental request, subject to funding availability.  FPDOs should contact the Defender Services Office to discuss funding options.

An alleged violator, even a Unit Executive, is not a Party to the EDR matter and is not entitled to representation during any EDR process.  *See EDR Does Not Confer Due Process Rights for Alleged Violator*, Handbook § II(C)(3), and *Alleged Violator Participation in the Formal Complaint Process*, Handbook § V(C)(3).

**Employing Office responsibility for sexual, racial or other discriminatory harassment.**  The Supreme Court has ruled that an employer is always liable for harassment by a supervisor that results in a "tangible" employment action, generally

defined as a change in employment status or a significant change in benefits, such as termination, failure to promote or hire, and loss of wages.

The Supreme Court has also ruled that an employer will be liable for harassment by non-supervisory employees (or non-employees over whom it has control) if it knew or should have known about the harassment and failed to take prompt and appropriate corrective action.

The Supreme Court has also ruled that if the supervisor's harassment results in a hostile work environment, the employer can avoid responsibility if it can prove that: (1) it reasonably tried to prevent and promptly correct the harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

**Investigation and discovery.** An Employing Office is always free to conduct an investigation into any allegation of wrongful conduct in its workplace; indeed, it should do so immediately whenever it receives a report of sexual or other discriminatory harassment. It is still free to conduct an investigation during a Formal Complaint proceeding. If a Complainant alleges sexual harassment, discriminatory harassment, or abusive conduct, the Employing Office would likely want to investigate the allegations immediately to determine if any interim relief is appropriate or if other prompt corrective action should be taken to protect the Complainant.

At the same time, however, the Presiding Judicial Officer has an express obligation to ensure the allegations in a Complaint are impartially and fairly investigated. Plan § IV(C)(3)(e)(v). And the PJO has sole discretion to select an investigator and determine the scope of an investigation. Because the Employing Office is not impartial, but is the defending Respondent Party, the PJO will need to determine whether any investigation undertaken by the Employing Office satisfies the requirements that an investigation be thorough, impartial, and fair, and whether the results of the Employing Office's investigation are relevant to the proceeding.

**Taking disciplinary or adverse action against an alleged violator.** If the allegations in an EDR matter reveal conduct by an alleged violator that could potentially warrant disciplinary action, Unit Executives should further investigate and/or consider taking disciplinary action in accordance with any applicable court policies. *See Alleged Violator Participation in the Formal Complaint Process*, Handbook § V(C)(3), and *Holding the Formal Complaint in Abeyance*, Handbook § V(C)(4).

**Confidentiality of Formal Complaint proceedings.** As noted in *Confidentiality*, Handbook § II(A), EDR proceedings are highly confidential. Limit communication about the EDR issues to those who need to know, which may include employees who need to be interviewed or be a witness. If a Formal Complaint proceeding causes disruption or

92

concern in the workplace, the Employing Office may wish to send a communication like the following to all staff:

> The [Employing Office] is currently involved an Employment Dispute Resolution (EDR) matter pursuant to the Court's EDR Plan. Details regarding this matter are highly confidential, as are all personnel matters. Indeed, the EDR Plan obligates the Employing Office and others involved in the EDR process to protect the confidentiality of EDR claims as much as possible. For this reason, the Employing Office is not disclosing the name of the complaining employee and is not discussing this matter at this time.

> The Parties to the EDR matter may request some [Employing Office] employees to provide information or to be a witness if there is an EDR hearing. If you are asked to do so, you are encouraged to cooperate and you, too, should maintain the highest degree of confidentiality about the EDR matter.

Additional tips:

- Don't fear the EDR process. The facts will come out, and the process is intended to resolve the matter with finality.

- Try not to be defensive. Keep an open mind to possible resolutions and have confidence in the process.

- Remember the EDR process is there for you as well as the Employee. The goal is always to get to the truth. Ask questions of the EDR Coordinator (or DWR) who assists you and the Employee. Call the AO's Office of the General Counsel if you want legal advice.

- Refresh your recollection on the events giving rise to the concern/complaint as best you can. Review any relevant documents that are available including emails, correspondence, and/or performance evaluations or hiring documents. It is a good idea to have the exact timeline of events at hand.

- Continue to manage your staff and the office in the best possible way, with your usual norms and standards. That will minimize disruption and negative impact on your operations and staff.

- Do not retaliate. You can discipline or terminate a Complainant if your actions are motivated by non-retaliatory reasons that would result in that consequence

regardless of the Complaint.  But do not treat the Complainant in ways that would discourage a reasonable person from exercising his/her EDR rights.

# H.  Guidance for an EDR Investigator

## 1.  *Standard Investigation Practices*

**Be thorough and fair**.  All workplace investigations must be thorough, fair, and impartial. *See* Plan § IV(B)(2), (C)(3)(e)(v).

- **Thorough**.  The investigation should identify all of the EDR allegations and claims, the known defenses, and describe the witness and documentary evidence.

- **Fair and impartial**.  To ensure fairness and impartiality, investigators should:

  - Be trained and experienced in conducting investigations and/or talking to witnesses;
  - Avoid bias for or against either Party or any personal stake in the outcome;
  - Have no actual or perceived conflict of interest, and be perceived as impartial by the Parties;
  - Be neutral in factual development—never mentally pre-judge the result; and
  - Explicitly inform all Parties and witnesses from the outset that it is the investigator's role to investigate the underlying facts of the matter and that s/he is neutral and independent.

**Maintain confidentiality**:  Every aspect of the investigation should be kept confidential. Disclosure of information can:

- Damage someone's reputation;
- Undermine the investigation (for example, people might tailor their testimony or try to cover up evidence); or
- Cause unnecessary turmoil and anxiety in the workplace.

Investigators should *always*:

- Ask interviewees not to reveal what was discussed during the interview; and
- Maintain records in a highly secure manner.

Investigators should *never*:

- Disclose confidential information about the Parties, their allegations or responses, or their desired outcomes; or
- Tell an interviewee what another interviewee said—avoid giving witnesses the ability to conform his/her statements to the statements of others.

95

**Be prompt**:  Because the investigation must be completed within the applicable EDR Plan deadlines, the investigator should:

- Begin and conduct the investigation in a timely manner; and
- Keep a record of when the investigation started and of every attempt to interview Parties and witness(es).  Keep a daily log of actions and communications.

## 2. *Purpose and Scope of the Investigation*

The purpose and scope of an EDR investigation is limited to identifying and collecting facts and evidence.  **Investigators should not make credibility assessments, recommendations of personnel or disciplinary action, or any legal conclusions**.

Investigators should have a clear understanding of the Presiding Judicial Officer's orders or directions regarding the purpose and scope of the investigation.  The PJO and investigator should discuss who should be informed of the investigation, what issues should be investigated, who should be interviewed, and what documentary evidence could be relevant.  Investigators may not expand the scope of the investigation without the PJO's consent.

## 3. *Planning the Investigation*

Any good investigation must start with a clear plan, prepared in advance of any interviews.  As part of this plan, investigators should:

- Understand the allegations and defenses and the relevant legal concepts.  Discuss the relevant legal principles with the PJO if necessary.
- Create a witness list and determine the sequence of the interviews.  Always interview one person at a time.
- Generally, interview the Employee/Complainant first, and interview the alleged violator at or near the end of the investigation.
- Prepare a list of interview questions but be flexible and responsive during the interview.
- Decide if a co-interviewer will be present during the interviews.
- Decide where the interviews will take place and what the interviewees will be told (less is best).
- Schedule the interviews, allowing time between interviews to type up notes and adjust to new information, evidence, or witnesses.
- Identify potential sources of documentary information and evidence.

## 4. *Interview Tips*

**Do not allow witness attorneys, representatives, or non-employees to sit in on an interview.** Witnesses, even alleged violators, do not have any right to use an attorney or representative in connection with a Formal Complaint proceeding. *See EDR Does not Confer Due Process Rights for Alleged Violator*, Handbook § II(C)(3). Thus, the investigator should deny a witness's request to bring an attorney or representative to an interview. An investigator should not allow non-employees to sit in on interviews because they are outside any supervisory chain of command, so the Court has no ability to ensure they maintain confidentiality or otherwise comply with EDR standards.

**Make a good first impression**: be professional, respectful, prepared, open, and attentive.

At the outset, explain:

- the purpose of the interview and your role;
- you are impartial;
- confidentiality provisions;
- who will know what the interviewee discloses;
- retaliation for participating in the investigation is prohibited and witnesses can file a Request for Assisted Resolution or Formal Complaint if they believe they are retaliated against for participating in the investigation;
- the importance of not disclosing the interview questions or responses; and
- whether interviewees will be able to review your interview notes (don't record the interview because doing so chills the interview).

**The interview**:

- Start with broad, open-ended questions such as "*Did anything unusual happen recently?*" And "*Have you ever heard/seen insulting or offensive language/conduct in the office?*"
- Then focus on details and more specific information: what exactly was said, what were the exact actions, when did this happen (if you can't determine the day, determine the month or time of year), what was the tone of voice, who witnessed what happened, and are there notes or messages, etc. Drill down to get all the specifics you can.
- ALWAYS ASK: who, what, where, when, why, and how.
- Ask the interviewee who else you should talk to.
- Ask for any documents or other evidence the interview has.

See the EEOC Sample Questions at the end of this section for more suggestions about what to ask interviewees.

Determine if the interviewee is giving information based on **personal knowledge**: Did s/he actually see or hear what happened? When did s/he see or hear this? If the witness learned the information from someone else, find out who.

Listen. Let the interviewee fully explain and allow for moments of silence—an interviewee will often fill the silence with more information.

Pay attention to the answer. Do you need clarification? Is this a new line of inquiry?

Do not disclose your opinions or judgments.

Acknowledge emotions, but in a neutral way: "*you sound angry,*" not "*you have every right to be angry about this.*" Keep your voice calm, neutral, open, and interested. Notice the interviewee's emotions and reactions.

Notice the interviewee's potential biases and conflicts-of-interest, such as friendships or animosities.

**Ending the interview**:

Before ending the interview:

- Ask yourself if there any other information you think would be helpful for your investigation;
- Ask yourself whether there is anything you didn't ask that you should have;
- Tell the interviewee to contact you if s/he thinks of something else;
- Tell the interviewee that if you have more questions, you may contact him or her again;
- Invite the interviewee to let you know if s/he believes s/he experiences any negative repercussions because of the participation; and
- Thank the interviewee.

**Special note about interviewing victims of sexual harassment or sexual assault.**

If a Complainant or witness has been subject to sexual harassment, racial harassment, other discriminatory harassment, or abusive conduct, s/he may be experiencing strong emotions, such as anger, fear, shame, vulnerability, or powerlessness. It is essential to listen to and notice and expressly acknowledge those feelings in addition to the words. "*I notice you seem scared – is there something or someone you are afraid of?*" Or: "*I can see how angry/sad you are feeling. How are you coping with this?*"

NOTE: Investigating a case of sexual misconduct requires very specific interview techniques. Interviews of a sexual assault victim should be conducted by someone trained in trauma-informed techniques and practices. EDR Coordinators typically do not have this training and therefore should not be selected to interview a victim of sexual misconduct.

The EEOC's list of sample questions one might ask during a sexual harassment investigation is available at https://www.eeoc.gov/policy/docs/harassment.html. The following are some of the sample questions.

**Questions to Ask the Complainant:**

- Who, what, when, where, and how: Who committed the alleged harassment? What exactly occurred or was said? When did it occur and is it still ongoing? Where did it occur? How often did it occur? How did it affect you?
- How did you react? What response did you make when the incident(s) occurred or afterwards?
- How did the harassment affect you? Has your job been affected in any way?
- Are there any persons who have relevant information? Was anyone present when the alleged harassment occurred? Did you tell anyone about it? Did anyone see you immediately after episodes of alleged harassment?
- Did the person who harassed you harass anyone else? Do you know whether anyone complained about harassment by that person?
- Are there any notes, physical evidence, or other documentation regarding the incident(s)?
- How would you like to see the situation resolved?
- Do you know of any other relevant information?

**Questions to Ask the Alleged Harasser:**

- What is your response to the allegations?
- If the harasser claims the allegations are false, ask why the Complainant might lie.
- Are there any persons who have relevant information?
- Are there any notes, physical evidence, or other documentation regarding the incident(s)?
- Do you know of any other relevant information?

**Questions to Ask Third Parties:**

- What did you see or hear? When did this occur? Describe the alleged harasser's behavior toward the Complainant and toward others in the workplace.
- What did the Complainant tell you? When did s/he tell you this?
- Do you know of any other relevant information?
- Are there other persons who have relevant information?

## 5. *The Investigation Report*

The investigator must prepare a written report and give it first to the Presiding Judicial Officer and then to the Parties, with any redactions deemed necessary by the Presiding Judicial Officer. The report must be completed before any hearing and before any adjudication of the Formal Complaint under Plan § IV(C)(3)(f)(ii) or (g). The report should describe the Parties' and witnesses' statements, the documentary evidence, and the disputed and undisputed facts relating to the allegations and defenses. The Presiding Judicial Officer has discretion to decide whether an alleged violator gets a copy of this report.

The report should:

- Be objective, factual, and professional;
- Summarize the investigation process and provide a list of witnesses;
- Summarize the facts learned during the investigation;
- Note contradictory information and what facts are disputed;
- Note where there is no factual dispute or where there is strong agreement;
- Note evidence that supports or contradicts a Party's allegation or defense;
- If an alleged violator makes an admission, be very clear about exactly what s/he said;
- Provide an accurate written record of all interviews—use direct quotes and actual descriptions when possible;
- Avoid expressing opinions: *"Mary cried during the interview,"* rather than *"Mary was sad."*
- Note if an interviewee refused to answer a question.

**REMEMBER: investigators should not make credibility assessments, recommendations of personnel or disciplinary action, or any legal conclusions**.

# VI. REQUEST FOR REVIEW OF DECISION

# A.  PROCEDURES

Either Party may appeal the Presiding Judicial Officer's written decision to the Circuit Judicial Council.  The Model EDR Plan requires that a Request for Review of Decision be filed with the EDR Coordinator within 30 days of the date of the written decision.  Each Circuit Judicial Council establishes its own procedures for filing, processing, and reviewing a Review of Decision.  **The Circuit Judicial Council's procedures must be set forth in Appendix 4 of each Court's EDR Plan**.

The Circuit Judicial Council (or a Judicial Council EDR Committee) will review the decision based on the record created by the Presiding Judicial Officer.  Typically, the Judicial Council will affirm the decision if it is supported by substantial evidence and proper application of legal principles.

The Circuit Judicial Council's decision is final.  No appeal is available from its decision.

# B.  EDR COORDINATOR'S RESPONSIBILITIES

**Notify Parties of the review procedure.**  The EDR Coordinator should:

- Verify that the Circuit Judicial Council's policy for filing and processing a Request for Review of Decision request is included in Appendix 4 of the Court's EDR Plan.
- Explain the Circuit Judicial Council's policies for filing and processing a Request for Review of Decision to both Parties.

**Prepare the EDR Record for the Judicial Council and submit it to the Judicial Council in accordance with its review procedures, including:**

- Any Request for Assisted Resolution;
- The Formal Complaint;
- All motions, responses, objections, or other pleadings or briefs, as well as any document, memorandum, or other record submitted to the Presiding Judicial Officer;
- Verbatim transcript of the hearing, if a hearing was held;
- The Presiding Judicial Officer's decision; and
- Any other document that is relevant or material to the Review.

# VII. ADMINISTRATIVE RESPONSIBILITIES OF THE EDR COORDINATOR

# A.  INFORM EMPLOYEES  ABOUT EDR

EDR Coordinators are typically responsible for helping ensure all the Employees in their court or office are aware of their rights under the EDR Plan.  The primary EDR Coordinator of each Court or Employing Office should help ensure that their Court and Employing Offices meet the obligations listed in sections V(D)(1) and V(D)(2) of the Plan. Circuit Directors of Workplace Relations also monitor compliance with these requirements by the courts within their circuit.

**Advising Employees of their rights.**  Courts and Employing Offices must:

1. Prominently post on their internal and external main homepages a direct link, labeled "**Your Employee Rights and How to Report Wrongful Conduct,**" that Employees can use to navigate to:
   - the entire EDR Plan with all Appendices and relevant contact information;
   - the Judicial Conduct and Disability Act, the Rules for Judicial-Conduct and Judicial-Disability Proceedings, and the Judicial Conduct and Disability Complaint form; and
   - contact information for all of the Court's EDR Coordinators, Circuit Director of Workplace Relations, and the national Office of Judicial Integrity.

Plan § V(D)(1).

Court InfoWeb Administrators should list all of their Court's or Employing Office's EDR Coordinator's on InfoWeb.  Under the InfoWeb Human Resources section, select "EDR Coordinators"; then select your Court, then select "Edit EDR Coordinators" and add all of  your Court's EDR Coordinators from the list of your Court's employees. Directors of Workplace Relations also have InfoWeb rights to add the EDR Coordinators for all of the courts in their circuit.  The Office of Judicial Integrity can also add EDR Coordinators to this list.  Contact the InfoWeb Help Desk for technical help.

2. Prominently display in the workplace:
   - the posters set forth in Plan Appendix 5; and
   - an Anti-Discrimination and Harassment Notice that:
     - o states that discrimination or harassment based on race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age (40 years and over), or disability is prohibited;

- o explains that Employees can report, resolve, and seek remedies for discrimination, harassment, or other wrongful conduct under the EDR Plan by contacting any of the Court's EDR Coordinators and/or the Circuit Director of Workplace Relations, and/or the national Office of Judicial Integrity;
- o provides the names and contact information of all Court EDR Coordinators, the Circuit DWR, and the national Office of Judicial Integrity; and
- o states where the EDR Plan can be located on the Court's website.

# B. THE EDR RECORD

The EDR Coordinator is responsible for retaining and organizing all papers, files, and reports during Assisted Resolutions and Formal Complaints. Typically, the primary EDR Coordinator maintains all EDR records at the conclusion of a matter.

**The official record of the EDR proceeding.** The EDR Coordinator handling an Assisted Resolution or Formal Complaint must maintain the EDR Record, which should include the following:

- Request for Assisted Resolution, if any, including;
    - Information about the disposition of any Request for Assisted Resolution;
    - Any settlement agreement;
- Formal Complaint, if any, including;
    - All motions, responses, replies, or other filings by the Parties;
    - All orders or rulings by the Presiding Judicial Officer;
    - The final written decision by the Presiding Judicial Officer;
    - Request for Review of Decision, if any;
    - Hearing transcript, if there was a Request for Review of Decision; and
- Any other document that is relevant or material to the EDR proceedings and any Request for Review of Decision.

The EDR Coordinator should maintain all EDR records in a secure location, inaccessible to others, and separate from other personnel files or other records. Access to EDR records in electronic files should be limited and password-protected.

At the conclusion of a Formal Complaint, after issuance of the decision, the Presiding Judicial Officer should give his/her records to the EDR Coordinator. If a Court has multiple EDR Coordinators, the EDR Coordinator who handled the matter should give his/her final EDR records to the primary EDR Coordinator for retention. *See Retention of the Record*, Handbook § VII(B)(1). All EDR records that are not retained should be shredded.

**The EDR Coordinator's (or DWR's) personal notes.** The notes an EDR Coordinator or DWR takes during meetings with Employees or Employing Offices are their personal notes. These notes are not official records and should not be maintained in any EDR official record-keeping system. These personal notes serve as the EDR Coordinator's (or DWR's) reminder of the issues discussed in meetings with the Parties or others. They are intended solely for the EDR Coordinator's (or DWR's) personal use and may be retained and discarded at the EDR Coordinator's (or DWR's) sole discretion.

106

**EDR records are never filed in personnel records.** No papers, files, or reports relating to an EDR matter may be filed in any Employee's personnel folder, except as necessary to implement a remedy under the EDR Plan. *See* Plan § V(B). No papers, files, or reports relating to an EDR matter will be filed in any alleged violator's personnel folder under any circumstances. This prohibition does not include any materials generated by a Unit Executive or Chief Judge conducting an independent investigation in determining whether action should be taken against an alleged violator.

## 1. *Retention of the Record*

The Court's primary EDR Coordinator must retain all EDR records as set forth in the *Guide to Judiciary Policy*. Briefly, the *Guide* requires EDR records to be retained for at least:

- Three years if the matter did not involve a Formal Complaint;
- Seven years if there was a Formal Complaint; and
- Five years for all EDR matter reporting information.

Consult the *Guide to Judiciary Policy*, Vol. 10, Appendix 6B: Administrative Records, § 2 for more detailed information.

## 2. *Public Requests for EDR Decision*

The Model EDR Plan states that final EDR decisions are to be made available to the public, **appropriately redacted to protect the identity of all persons,** in accordance with procedures established by the Circuit Judicial Council. *See* Plan § V(B). Each Circuit Judicial Council will have its own policy as to how to make final EDR decisions available to the public, and the EDR Coordinator is responsible for knowing his/her Judicial Council's Policy.

# C.  ANNUAL REPORTING

Courts are obligated under the EDR Plan to provide the following information about EDR matters under Assisted Resolution or a Formal Complaint, which the primarily EDR Coordinator should either directly submit, or ensure his/her Court is submitting.  Plan § V(E):

- the number and types of alleged violations for which Assisted Resolution was requested, and for each matter, whether it was resolved or was also the subject of a Formal Complaint under this Plan or other complaint;
- the number and type of alleged violations for which Complaints under the Plan were filed;
- the resolution of each Complaint under the Plan (dismissed or settled prior to a decision, or decided with or without a hearing);
- the rights under the Plan that were found by decision to have been violated; and
- any information that may be helpful in identifying the conditions that may have enabled wrongful conduct or prevented its discovery, and what precautionary or curative steps should be undertaken to prevent its recurrence.

The national Office of Judicial Integrity has developed new data collection procedures for Court EDR Plans based on the 2019 Model EDR Plan.  The reporting period is based on the Requests for Assisted Resolution or the Formal Complaints that were filed or resolved during the prior fiscal year.  Courts are not obligated to report Informal Advice contacts.

Claims that arose under the prior Model EDR Plan are submitted by the InfoWeb FEP Claims form; claims that arose under Plans based on the 2019 Model EDR Plan are submitted on the InfoWeb EDR Claim form.  Although EDR claims must be reported at the end of each fiscal year, courts can also submit claim information in "real time," that is, at the end of any Assisted Resolution or Formal Complaint.

EDR Coordinators and DWRs should assist their Court in providing this annual information.  **Information and forms relating to EDR annual reporting requirements can be found on the Office of Judicial Integrity's JNet site, found through the Workplace Conduct Quick Link on the homepage of the JNet.**

# VIII.   THE EMPLOYMENT LAWS AND POLICIES APPLIED TO THE JUDICIARY BY THE MODEL EDR PLAN

# A. DISCRIMINATION, DISCRIMINATORY HARASSMENT, ABUSIVE CONDUCT, AND RETALIATION

All of the employment laws and policies applied to Judiciary Employees by the Model EDR Plan are set forth in detail in the *Guide to Judiciary Policy*, Vol. 12, Ch. 2.

EDR Coordinators and Directors of Workplace Relations should never give legal advice to Employees or Employing Offices. They do need to understand the basic employment law protections provided in the EDR Plan, however, so that they have some understanding of what is likely covered by the EDR Plan and so they can ask relevant questions when they meet with Employees and Employing Offices. The Office of the General Counsel is available to provide legal advice to Employing Offices (but not to Employees).

## 1. *Discrimination*

- An Employing Office may not discriminate against an individual with regard to any term, condition, or privilege of employment (for example, hiring, firing, failing to promote, significant change in benefits) because of such individual's protected category, that is:
  - race,
  - color,
  - sex,
  - gender,
  - gender identity,
  - pregnancy,
  - sexual orientation,
  - religion,
  - national origin,
  - age (40 years and over), or
  - disability

- Discrimination is defined more specifically under one of the following statutes:

  - Title VII, Civil Rights Act of 1964, as amended and codified in 42 U.S.C. §§ 2000e–2- 2000e-3, 2000e-16(a) (prohibits retaliation and discrimination based on race, color, religion, sex, and national origin), including failure to provide a reasonable accommodation for a religious observance or practice.

- Age Discrimination in Employment Act of 1967 (ADEA), as codified in 29 U.S.C. §§ 623 and 633a (prohibits discrimination based on age 40 and older).

  **Note:** The age discrimination provision does not apply to the initial hiring, retirement, or separation of probation and pretrial services officers under 5 U.S.C. chapters 83 and 84.

- Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12102, 12111-12114, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAA), including failure to provide a reasonable accommodation for a qualified disability.

Generally, an Employee presents direct or circumstantial evidence of discrimination, an Employing Office presents evidence that the personnel action was taken for a legitimate, non-discriminatory reason, and the Presiding Judicial Officer makes a decision based on the evidence presented.

## 2. *Discriminatory Harassment*

Discriminatory harassment (which includes sexual harassment) is unwelcome conduct that is based on a protected category (race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age (at least 40 years of age), and disability), when enduring the conduct becomes a condition of continued employment or the conduct is sufficiently severe or pervasive that a reasonable person would consider it intimidating, hostile, or abusive.

Generally, a Presiding Judicial Officer will consider all the circumstances, such as the frequency of the harassment; its severity; whether it is physically threatening or humiliating; and whether it unreasonably interferes with the Employee's work performance. A sufficiently severe episode might qualify even if it occurs only once, while an ongoing pattern of lesser harassment over a period of time might also qualify.

An Employing Office may be responsible for harassment by an Employee if it knew or should have known about the hostile work conditions and failed to make reasonable efforts to prevent and promptly correct the harassing behavior. An Employing Office is automatically responsible for harassment by a supervisor if the harassment resulted in a tangible employment action (hiring, firing, failing to promote).

The Employing Office may avoid responsibility if it establishes that:

111

- it exercised reasonable care to prevent and promptly correct any harassing behavior between co-workers; or
- the Employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Court or Employing Office.

## 3.  *Abusive Conduct*

The EDR Plan defines abusive conduct as a pattern of demonstrably egregious and hostile conduct *not* based on a protected category (listed under Discrimination and Harassment above) that unreasonably interferes with an Employee's work and creates an abusive working environment. Abusive conduct is threatening, oppressive, or intimidating. Abusive conduct does not include communications and actions reasonably related to performance management.

The Codes of Conduct expressly prohibit Judges and Judiciary Employees from engaging in abusive or oppressive conduct, including treating Employees, co-workers, or others in a demonstrably egregious and hostile manner.  *See* Code of Conduct for U.S. Judges Canon 3(B)(4) and its Commentary; and Code of Conduct for Judicial Employees, Canon 3(C)(1). Consistent with the Codes of Conduct, the Model EDR Plan treats abusive conduct as "wrongful conduct," just as it does sexual, racial or other discriminatory harassment.  The EDR Plan uniformly provides fair and impartial options for all Employees to resolve issues of abusive conduct by any Judge or fellow Employee.

There is no legal definition of "abusive conduct" to guide interpretation of what conduct is or is not abusive.  The Court Unit Executive or Employing Office will make that determination during Assisted Resolution and the Presiding Judicial Officer will make that determination in a formal EDR Complaint.

Using the Plan's definition, here are factors that might be considered:

- Is the alleged behavior "egregious," in other words, obviously wrong, beyond reasonable behavior?
- Is there a "pattern"?  Has the alleged violator behaved this way on one or more occasions or towards more than one person?  Does the behavior happen repeatedly or persistently?
- Is it offensive, intimidating, malicious or insulting?  Is it an abuse or misuse of power that undermines, humiliates, or denigrates another?

- Has it affected the Employee's work? Has it affected his/her job productivity, performance, attendance or focus? Is the Employee experiencing anxiety, stress or other symptoms related to the behavior?

**Reasonable Performance Management is not Abusive Conduct.** The EDR Plan explains that abusive conduct does not include communications and actions reasonably related to performance management. It may be important to consider whether performance management matters were communicated in a "reasonable" way, or in an "abusive" way.

Employees alleging abusive conduct must first request Assisted Resolution before filing a Formal Complaint. Unit Executives typically address abusive conduct issues in the workplace either informally in the office or in performance reviews. EDR is not intended to circumvent that normal management responsibility. Thus, the Model EDR Plan requires Employees to first seek Assisted Resolution before filing a Formal Complaint alleging abusive conduct. Only if an Employee believes his/her Employing Office has failed to address or correct the abusive conduct should an Employee need to resort to a Formal Complaint.

## 4.   *Retaliation*

The EDR Plan prohibits retaliation against any person who engages in the following protected activities:

- Asserting EDR rights, such as requesting FMLA leave, or making a request for a reasonable disability accommodation;
- Using any of the EDR Options for Resolution or reporting wrongful conduct under the EDR Plan;
- Assisting in the defense of rights protected by the Model EDR Plan; or
- Participating in the filing, processing or investigation of an EDR matter or wrongful report, including as an EDR Coordinator, DWR, mediator, witness, or representative.

Adverse actions that might be considered retaliatory are actions that would dissuade a reasonable worker from engaging in protected activity. A Presiding Judicial Officer will generally consider whether there is evidence to suggest that such an adverse action was taken in retaliation for protected activities. An Employing Office may present evidence that it took a previously-planned employment action that was not motivated by retaliation.

# B.  FAMILY AND MEDICAL LEAVE, UNIFORMED SERVICES EMPLOYMENT, WHISTLEBLOWER PROTECTION, WORKFORCE ADJUSTMENT, OCCUPATIONAL SAFETY, AND POLYGRAPH PROTECTION

## 1.  *Family and Medical Leave Act of 1993*

Covered Employees as defined in the *Guide to Judiciary Policy*, Vol. 12, § 920.45.20 are entitled to the rights and protections provided under the Family and Medical Leave Act of 1993 and as established under the *Guide to Judiciary Policy*, Vol. 12, §§ 920.45.20–920.45.70.

## 2.  *Uniformed Services Employment and Reemployment Rights Act of 1994*

Judiciary policy and law protect the reemployment rights of many Employees who leave their position to serve in the military. *See* Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301-4319.

USERRA guarantees an Employee returning from military service or training the right to be reemployed at his/her same job (or a comparable job) with the same pay and benefits.

- The Employee must timely request reemployment upon return from service in the uniformed services by reporting for work the next day or submitting an application for reemployment with the Employing Office within 14-90 days, depending on how long the service lasted.

- The Court is not required to reemploy a servicemember if:
  - the Court's circumstances have so changed that reemployment is unreasonable or would impose an undue hardship; or
  - there was no reasonable expectation of reemployment.

## 3.  *Whistleblower Protection*

Any Judiciary personnel with authority to take, direct others to take, recommend, or approve any personnel action may not use such authority to take or threaten to take an

114

adverse employment action against an Employee (excluding applicants for employment) because of any disclosure of information:

- by the Employee to:
    - the appropriate federal law enforcement authority,
    - supervisor or managerial official of the Employing Office,
    - a Judge of the Court, or
    - the AO;

- that the Employee reasonably and in good faith believes:
    - violates any law, rule, or regulation, or other conduct that constitutes gross mismanagement,
    - represents a gross waste of funds, or
    - poses a substantial and specific danger to public health or safety; and

- where such disclosure:
    - is not specifically prohibited by law,
    - does not reveal case-sensitive information, sealed material, or the deliberative processes of the federal Judiciary, and
    - does not reveal information that would endanger the security of any Judge.

## 4. *Workforce Adjustment*

Employees who face certain types of office closings or reductions in force must be provided notice similar to what is required under the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2101. JCUS-MAR 97, p. 28.

Unless caused by the absence of appropriated funds, no Employing Office closing or mass layoff may occur until the end of a 60-day period after the Employing Office serves affected Employees with written notice of such prospective closing or layoff.

"Employing office closing" refers to the permanent or temporary shutdown of a single site of employment, or facilities or units within a site, if the shutdown results in a loss of 50 or more full-time Employees at the site during any 30-day period. *See* 29 U.S.C. § 2101(a)(2).

"Mass layoff" refers to a reduction in force that:

- is not the result of an Employing Office closing; and

- results in an employment loss at the single site of employment during any 30-day period for:
  - o at least 33 percent of the Employees (excluding any part-time Employees), and at least 50 Employees (excluding any part-time Employees); or
  - o at least 500 Employees (excluding any part-time Employees).

*See* 29 U.S.C. § 2101(a)(3).

## 5.   *Occupational Safety (Occupational Safety and Health Act)*

It is the Judiciary's policy to promote safe workplace conditions, consistent with the principles of the Occupational Safety and Health Act of 1970, as amended.  JCUS-MAR 97, p. 28.

Each Employing Office will implement a program to provide to its Employees a place of employment free from recognized hazards that cause or are likely to cause death or serious physical harm to Employees.

This chapter's policies do not apply to claims seeking a remedy exclusively within the jurisdiction of the General Services Administration (GSA) or the United States Postal Service (USPS) to provide.  Those claims should instead be filed directly with GSA or USPS, as appropriate.

## 6.   *Polygraph Protection*

Unless required for access to classified information or otherwise required by law, no Employee may be required to take a polygraph test.  *See* Employee Polygraph Protection Act of 1988 (EPPA), 29 U.S.C. §§ 2001-2009; JCUS-MAR 97, p. 28.

# IX. SAMPLE DOCUMENTS

# SAMPLE DOCKET SHEET

**EDR No. 20-EDR-01 DOCKET SHEET**

| Docket No. | Date | Description |
|---|---|---|
| 1 | 9/12/2020 | Request for Assisted Resolution (20-EDR-AR-01) |
| 2 | 10/18/2020 | Notice of Conclusion of Assisted Resolution |
| 3 | 1/2/2021 | Formal Complaint filed (20-EDR-FC-01) |
| 4 | 1/3/2021 | Designation of Presiding Judicial Officer |
| 5 | 1/8/2021 | Notice of Hearing, set for 2/28/2020 |
| 6 | 1/30/2021 | Employing Office Response |
| 7 | 2/3/2021 | Scheduling Order |
| 8 | 2/5/2021 | Respondent's Motion to Dismiss |
| 9 | 2/14/2021 | Complainant's Response to Motion to Dismiss |
| 10 | 2/21/2021 | Order Denying Motion to Dismiss |
| 11 | 2/25/2021 | Order Rescheduling Hearing to 4/3/2020 |
| 12 | 3/27/2021 | Parties' Stipulated Facts |
| 13 | 4/3/2021 | Hearing Held |
| 14 | 4/6/2021 | Briefing Order for Written Post-Hearing Closing Arguments |
| 15 | 4/17/2021 | Complainant's Closing Argument Brief |
| 16 | 4/17/2021 | Respondent's Closing Argument Brief |
| 17 | 4/24/2021 | Complainant's Response |
| 18 | 4/24/2021 | Respondent's Response |
| 19 | 5/8/2021 | Decision and Order Granting Relief to Complainant |
| 20 | 6/5/2021 | Respondent's Request for Review of Decision |
| 21 | 6/12/2021 | Complainant's Response to Request for Review (?) |
| 22 | 7/6/2021 | Judicial Council's Order Affirming Presiding Judicial Officer's Decision |

Case 1:20-cv-00066-WGY   Document 101-1   Filed 12/18/20   Page 124 of 144

# SAMPLE NOTICE OF RECEIPT OF REQUEST FOR ASSISTED RESOLUTION

(sent via email)

Dear [Requester name]:

This notice confirms that on [date], I received a copy of the Request for Assisted Resolution that you submitted to me in accordance with the Court's Employment Dispute Resolution (EDR) Plan, § IV(C)(2). You have requested that your Unit Executive, [Unit Executive name], reconsider your supervisor's denial of your request for a reasonable accommodation. You believe that your arthritis qualifies as a disability under the Americans with Disability Act, under which you have rights under EDR Plan § II(A). You believe that your supervisor's statement that arthritis is not a disability and denying your request for a modification of your workstation violates your rights under the EDR Plan.

I will submit a copy of your Request to [Unit Executive name], who is responsible for assessing your request and allegations and for taking appropriate steps to resolve the matter. I have assigned a case number: No. 20–EDR-AR–01.

You have also requested that I facilitate discussions between you and [Unit Executive name], so I will schedule a time when we can all meet.

Is there a time this week when you are available to meet with me to discuss this matter? I want to be sure I understand your EDR concerns and goals.

As I can explain when we meet, my role as EDR Coordinator is neutral; I am not an advocate for you, [Unit Executive name], or the [Employing Office], but rather am available to all Parties to assist with the EDR process and try to resolve the dispute as soon as possible.

I have attached a copy of the Court's EDR Plan. I have also attached a copy of the Employment Dispute Resolution Interpretive Guide and Handbook. When we meet, I can explain your Options for Resolution under the Plan, all of your rights and responsibilities under the Plan, and answer any questions you may have.


[insert name], EDR Coordinator

# SAMPLE NOTICE TO UNIT EXECUTIVE OF REQUEST FOR ASSISTED RESOLUTION

(sent via email)

Dear [Unit Executive name]:

As an EDR Coordinator for the [Court Name], I have received a Request for Assisted Resolution from [Requester name] on [date], filed under the Court's Employment Dispute Resolution (EDR) Plan, § IV(C)(2). I have assigned this as No. 20–EDR–AR–01.

[Requester name] states that she has been diagnosed with arthritis and she asked her supervisor [supervisor name] for a modification of her workstation to help with her arthritis pain. She says her supervisor said that "everyone has arthritis pain; just deal with it."

[Requester name] believes that her arthritis qualifies as a disability under the Americans with Disability Act, and says she has medical documentation of that. She believes the denial of her request denies her rights under EDR Plan § II(A), which applies the Americans with Disabilities Act to Judiciary Employees. [Requester name] has requested that I facilitate a discussion between her and you to resolve this issue.

I have attached a copy of the Court's EDR Plan. Section II sets out the ADA right, described in the *Guide to Judiciary Policy*, Vol. 12, Ch. 2. Plan § IV sets out the different Options for Resolution. I have also attached a copy of the Employment Dispute Resolution Interpretive Guide and Handbook.

Is there a time this week when you are available to meet with me to discuss this matter? I want to give you an opportunity to respond to [Requester name]'s allegations and concerns and be sure that I understand your workplace goals. I also want to be sure you understand the EDR process and deadlines.

My role as EDR Coordinator is neutral; I do not represent [Requester name], you, or the [Employing Office], but I am available to all Parties to assist with the EDR process and try to resolve the dispute as soon as possible.

[insert name], EDR Coordinator

# SAMPLE NOTICE ENDING ASSISTED RESOLUTION

(sent via email)

Dear [Requester and Unit Executive name]:

As the EDR Coordinator in No. 20-EDR-AR-01, I have decided to terminate the Assisted Resolution process. As you know, we had several meetings concerning [Requester's] Request for a modification of her workstation because of her arthritis, but the [Unit Executive] was unwilling to make that modification and [Requester] did not believe any of [Unit Executive's] offered alternatives would resolve her accommodation needs. I have concluded that the EDR Assisted Resolution Option will not resolve this dispute, and thus, am terminating this process. My decision is final and non-appealable.

[Requester] believes that her arthritis qualifies as a disability under the Americans with Disabilities Act, and she still has the option to file a Formal Complaint under the EDR Plan and have a Judge decide whether the denial of her accommodation request violates her rights under the EDR Plan, which applies the Americans with Disabilities Act to Judiciary Employees.

**Any such Formal Complaint would need to be filed with me by [date],** which is 180 days from the date the [Unit Executive] first denied [Requester's] accommodation request. Attached is a blank Formal Complaint form. Any Complaint must name [Employing Office] as the Respondent, not any individual. Both Parties have copies of the Court's EDR Plan; I have explained that the ADA is described in the *Guide to Judiciary Policy*, Vol. 12, Ch. 2; and I previously gave both Parties a copy of the Employment Dispute Resolution Interpretive Guide and Handbook.

If [Requester] does file a Formal Complaint, I will meet with both of you to answer any questions you may have about the Formal Complaint process. Indeed, I am always available to all Parties to answer any EDR process questions.

[insert name], EDR Coordinator

# SAMPLE NOTICE OF RECEIPT OF FORMAL COMPLAINT TO COMPLAINANT

(sent via email)

Dear [Complainant name]:

This is to confirm that on [date], I received a copy of the Formal Complaint you filed with me, as the EDR Coordinator, in accordance with EDR Plan, § IV(C)(3). I have assigned this as No. 20–EDR–FC-01.

You claim you were terminated from employment last month in retaliation for taking Family and Medical Leave, in violation of your rights under EDR Plan § II(A). This is also to confirm that I gave you a copy of the Court's EDR Plan and explained that Plan § IV(C)(3) describes all of the Complaint procedures. As additional information, attached is the Employment Dispute Resolution Interpretive Guide and Handbook. I explained that my role is neutral and independent, the remedies that are and are not available under the EDR Plan, and your rights under the EDR Plan, including:

- The EDR process is confidential, and information will be shared only to the extent necessary and only with those whose involvement is necessary to resolve your Complaint.
- All investigations, hearings, and other EDR processes will be conducted in a thorough, fair, and impartial manner.
- You have the right to use an attorney, at your expense, or have a representative assist you. *See* Plan § IV(B)(3).
- You can seek my or the Presiding Judicial Officer's disqualification if you believe we have a conflict of interest or will not act impartially. *See* Plan § IV(C)(3)(e)(iii)
- You can use a reasonable amount of official time to prepare your case, so long as there is minimal interference with Court duties. *See* Plan § IV(C)(3)(e)(vii).
- You are protected from retaliation. *See* Plan § II(E).

I will submit your Complaint to Chief Judge [Judge name]. S/he will designate a Presiding Judicial Officer to hear and decide your Complaint and oversee all aspects of the Complaint process.

The Presiding Judicial Officer will determine what investigation or discovery is appropriate to ensure s/he has a fair and complete understanding of your allegations and

the Employing Office's response. The Presiding Judicial Officer may dismiss a Complaint or decide it without a hearing if there are no material disputed factual issues, as provided in Plan § IV(C)(3)(f). If there is a hearing, it must be held within 60 days of when you filed your Complaint, but either Party can request an extension of time. The Presiding Judicial Officer will issue a written decision in your case, whether or not there is a hearing.

Any and all requests or motions you file must be submitted to me as the EDR Coordinator, with a copy to the Respondent. Parties may not contact the Presiding Judicial Officer or his/her chambers directly.

I am available throughout this Complaint process to answer any questions you may have. What we discuss is confidential, and I will not reveal our discussions with the Employing Office or the Presiding Judicial Officer unless you permit me to do so. As we discussed, EDR allegations and claims are confidential.

[insert name], EDR Coordinator

# SAMPLE NOTICE TO CHIEF JUDGE OF RECEIPT OF FORMAL COMPLAINT

(sent via email)

Dear Chief Judge [Judge name]:

As the Court's EDR Coordinator, I have received a Formal Complaint under EDR Plan § IV(C)(3), which I am sending you in accordance with Plan § IV(C)(3)(e)(i). The Complaint was filed on [date], and I have assigned it No. 20–EDR–FC-01. The Complaint appears to be timely filed on its face.

I have attached a copy of the Court's EDR Plan; the Complaint procedures are described in Plan § IV(C)(3). I have also attached the Employment Dispute Resolution Interpretive Guide and Handbook.

[Brief summary of the allegations and the legal claims alleged.]

[ALTERNATIVE ONE: At this time, all that you need to do is designate a Judge (which can be an Article III, magistrate or bankruptcy judge) to serve as the Presiding Judicial Officer to oversee, hear, and decide this Complaint. *See* Plan § IV(C)(3)(e)(i). The Presiding Judicial Officer cannot have participated in, witnessed, or otherwise have been involved with the employment action giving rise to the Complaint. *See* Plan § IV(B)(2). I have attached a sample designation order for you.]

[ALTERNATIVE TWO: Because the Complaint involves a Judge, it must be transferred to Chief Circuit Judge [Judge name] under Plan § IV(C)(3)(d). Chief Judge [Judge name] will oversee the EDR process, including designating a Presiding Judicial Officer, and will assess whether the allegations implicate misconduct under the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

I have drafted a transfer letter for your signature and have attached all of the EDR records in this matter, for submission to Chief Judge [Judge name].

Please let me know if I can be of any further assistance.

[insert name], EDR Coordinator

# SAMPLE EMAIL TO PRESIDING JUDICIAL OFFICER RE: FORMAL COMPLAINT

(sent via email)

Dear Judge [Judge name]:

Chief Judge [Judge name] has informed me that s/he designated you to serve as the Presiding Judicial Officer for the Formal Complaint in No. 20–EDR–FC-01 to oversee, hear and decide this matter. I have attached a copy of the Court's EDR Plan. EDR Plan § IV(C)(3) describes the Complaint procedures. The Complaint appears to be timely on its face, based on the date of the allegations and the filing date. I am also attaching the Employment Dispute Resolution Interpretive Guide and Handbook, which provides detailed information about EDR, the procedures for a Formal Complaint, and the Presiding Judicial Officer's role and responsibilities.

Briefly, the Presiding Judicial Officer determines the appropriate investigation and/or discovery methods, sets a hearing date within 60 days of the date the Complaint was filed to resolve any material factual disputes, and issues a written decision within 60 days of the hearing.

To assist you, I will keep all of the EDR records, receive and submit all filings, and transmit information between you and the Parties. I will also be of any additional assistance you would like.

[Brief summary of the allegations and the legal claims alleged.]

There are some matters that require your immediate attention.

1) <u>Sexual Harassment Claim</u>. The Complainant alleges that the Unit Executive, [Unit Executive name], has sexually harassed her and refused to promote her when she rejected his sexual advances. This presents some immediate issues to consider:

First, although a Presiding Judicial Officer typically gives a copy of a Formal Complaint to the Unit Executive of the Employing Office (the Respondent), there is an exception if the Presiding Judicial Officer determines there is good cause to designate another person to act on behalf of the Respondent Employing Office. Plan § IV(C)(3)(e)(ii). In this case, the Unit Executive's interest in defending against the sexual harassment claim may differ from the Respondent Employing Office's interest. This is

125

either your decision or the Chief Judge's decision, but it might be appropriate to designate the Deputy Clerk of Court to act on behalf of the Employing Office in responding to this Complaint.

Second, given the nature of the allegations, you might consider whether immediate temporary interim relief is warranted. The Complainant believes that working with the Clerk of Court is untenable because of his sexual harassment. *See* Plan § IV(B)(4).

2)    <u>Notice to alleged violator</u>. If you decide not to provide a copy of the Complaint to the Unit Executive, he is still entitled to notice that a Complaint has been filed, because he is the person alleged to have violated the Complainant's rights. This means he is entitled to a description of the nature and substance of the Complaint allegations. *See* Plan § IV(C)(3)(e)(ii).

3)    <u>Request for Counsel</u>. The Complaint includes a request that the Court provide "representation from the Court, such as a career law clerk." You will need to address this request at the outset. The EDR Plan states that Complainants have the right to be represented by a person of their choice at their own expense, but the Plan says nothing about appointing an attorney or representative. Canon 4(D) of the Code of Conduct for Judicial Employees generally prohibits Judicial Employees from engaging in the practice of law.

Is there a convenient time to meet to discuss the Formal Complaint procedure? I would like to provide you with information about the process and determine how I can be of assistance to you.

[insert name], EDR Coordinator

# SAMPLE NOTICE OF HEARING

## UNDER THE EMPLOYMENT DISPUTE RESOLUTION PLAN
## OF THE
## [COURT NAME]

---

COMPLAINANT,

v.

[EMPLOYING OFFICE NAME], AS
THE RESPONDENT EMPLOYING
OFFICE,

    Respondent.

EDR No. 20-EDR-FC-01

---

## NOTICE OF HEARING

Filed:  [date]

---

At the direction of Presiding Judicial Officer [Judge name]:

This EDR Plan matter will come on for hearing in accordance with EDR Plan § IV(C)(3)(g) before Judge [Judge name] at [time] on [day, date], at [Court Name and Location].

This Notice of Hearing will be served by the Court's EDR Coordinator to both Parties and all interested persons in accordance with Plan § IV(C)(3)(g)(ii).

Dated this [date] at [City, State].

_____
Hon. [Judge name]
Judge, [Court Name]

127

# Sample Order – Scheduling Order

**UNDER THE EMPLOYMENT DISPUTE RESOLUTION PLAN
OF THE
[COURT NAME]**

---

|  |  |
|---|---|
| COMPLAINANT, | |
| v. | EDR No. 20-EDR-FC-01 |
| [EMPLOYING OFFICE NAME], AS THE RESPONDENT EMPLOYING OFFICE, | |
| Respondent. | |

---

**SCHEDULING ORDER**

Filed:  [date]

---

The undersigned has been designated by the Chief Judge as the Presiding Judicial Officer to hear and decide the above-captioned EDR Complaint filed on [date]. Complainant was terminated from employment by the Respondent on [date].  She asserts in her Complaint that she was terminated based on her age (over 40) and in retaliation for using Family and Medical Leave.  Complainant seeks reinstatement, back pay, records modification, and attorney fees.  Respondent filed a timely Response on [date], denying any discriminatory or retaliatory motive, and asserting that it terminated Complainant for legitimate, non-discriminatory and non-retaliatory reasons, namely, that she was absent without leave on four occasions, having been warned that she was subject to termination if she again took leave without prior authorization.

The EDR Plan allows the Presiding Judicial Officer to provide for appropriate investigation and discovery.  The undersigned has determined that informal, reciprocal

128

discovery is appropriate in this case, as both Parties are represented by counsel. The Court will allow the Parties to propound interrogatories by [date], with a maximum of 20 interrogatories by each Party to the other. Responses are due 10 days after service.

The Parties may file any pre-hearing motions with the EDR Coordinator by close of business on [date], with responses due by close of business on [date]. Replies are optional and must be filed by [date]. Motions may not exceed ten pages, responses five pages, and replies three pages.

The hearing is currently set for [date]. By [time] on [day, date], each Party should submit to the EDR Coordinator (1) a witness list; (2) an exhibit list; (3) stipulated facts; (4) proposed findings of fact and conclusions of law; and (5) an optional hearing brief not to exceed 10 pages.

IT IS SO ORDERED.

Dated this [date] at [City, State].


_____
Hon. [Judge name]
Judge, [Court Name]

# SAMPLE ORDER – ORDER EXTENDING HEARING DATE

## UNDER THE EMPLOYMENT DISPUTE RESOLUTION PLAN
## OF THE
## [COURT NAME]

---

COMPLAINANT,

v.

[EMPLOYING OFFICE NAME], AS
THE RESPONDENT EMPLOYING
OFFICE,

    Respondent.

EDR No. 20-EDR-FC-01

---

## ORDER CONTINUING HEARING

Filed:  [date]

---

Complainant and Respondent in the above-captioned EDR matter filed a joint request to continue the date of the hearing in this matter for 45 days.  Following the denial of Respondent's Motion to Dismiss, the Parties initiated mediation proceedings and anticipate that this matter may be resolved without a hearing.  I find this is good cause to postpone the hearing.

Accordingly, I hereby continue the hearing in until [time] on [day, date], before the undersigned at [Court Name and Location].  By [time] on [day, date], each Party should submit to the EDR Coordinator (1) a witness list; (2) an exhibit list; (3) stipulated facts; (4) proposed findings of fact and conclusions of law; and (5) an optional hearing brief not to exceed 10 pages.

This Order Continuing Hearing will be served by the EDR Coordinator to both Parties and all interested persons in accordance with Plan § IV(C)(3)(g)(ii).

IT IS SO ORDERED.

Dated this [date] at [City, State].

_____
Hon. [Judge name]
Judge, [Court Name]

# SAMPLE ORDER – BRIEFING ORDER

## UNDER THE EMPLOYMENT DISPUTE RESOLUTION PLAN
## OF THE
## [COURT NAME]

---

COMPLAINANT,

v.

[EMPLOYING OFFICE NAME], AS
THE RESPONDENT EMPLOYING
OFFICE,

    Respondent.

EDR No. 20-EDR-FC-01

---

## CLOSING ARGUMENTS BRIEFING ORDER

Filed: [date]

---

At the direction of the Hon. [Judge name]:

The matter in the above-captioned EDR matter No. 20-EDR-01 came on for hearing in accordance with EDR Plan § IV(C)(3)(g) on [day, date].  By close of business on [day, date] Complainant and Respondent should submit simultaneous written closing arguments to the EDR Coordinator.  Simultaneous responses should be submitted by close of business on [day, date].

Dated this [date] at [City, State].

_____

Hon. [Judge name]

Judge, [Court Name]

132

# SAMPLE NOTICE OF PRESIDING JUDICIAL OFFICER'S DECISION

Dear [Complainant name]:

Attached is a written Decision of the Findings of Fact and Conclusions of Law by Presiding Judicial Officer Judge [Judge name] in No. 20-EDR-FC-01. This decision, which dismisses your Formal Complaint with prejudice, is the final decision in this EDR matter unless you file a Request for Review of Decision.

Under Plan § IV(C)(3)(i), you have the right to appeal the Presiding Judicial Officer's decision by filing a Request for Review of Decision with me, as the EDR Coordinator, within 30 days of today, the date of the Presiding Judicial Officer's decision; that is, by [time] on [date]. Any Request for Review must comply with all of the requirements set forth in the Procedures for Review of Final Decisions by the Judicial Council of the [__] Circuit. A copy of those review procedures is attached.

Please contact me if you have any questions.

[insert name], EDR Coordinator.

# ANTI-DISCRIMINATION AND ANTI-HARASSMENT NOTICE

[Court seal]

The [name of Court] prohibits employment discrimination on the basis of race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age (over 40 years and over), or disability ("protected categories"). The Court provides equal employment opportunities to all individuals, and employment considerations will be based solely on merit, qualifications, and abilities.

The Court also prohibits harassment based on any protected category, such as sexual or racial harassment, or any abusive conduct, regardless of motivation. The Court has adopted an Employment Dispute Resolution Plan (EDR Plan), which allows employees, interns/externs, and applicants who have been interviewed to seek redress for wrongful discrimination and harassment in the workplace and provides other employment law protections. Retaliation for reporting any discrimination, harassment, abusive conduct, or other wrongful conduct is prohibited.

Employees can report, resolve, or seek remedies for any discrimination, harassment or other wrongful conduct under the EDR Plan by contacting any of the Court's EDR Coordinators listed below. Employees can also seek confidential advice from [a Circuit Director of Workplace Relations, if applicable or] the national Office of Judicial Integrity, listed below. A copy of the EDR Plan is posted on the Court's internal and external websites, on a page/through a link labeled "Your Employee Rights and How to Report Wrongful Conduct."

EDR Coordinators:

Name                                        Name
Phone                                       Phone
Email                                       Email

[Any Circuit Director of Workplace Relations]      Office of Judicial Integrity
                                                   Jill B. Langley
                                                   202.502.1603
                                                   jill_langley@ao.uscourts.gov

                                                   _____
                                                   Honorable [Name]
                                                   Chief Judge

134

# ADDITIONAL RESOURCES FROM THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**Office of Judicial Integrity:**

Jill Langley, Judicial Integrity Officer
jill_langley@ao.usCourts.gov
202.502.3957

**Information about EDR matters and the Office of Judicial Integrity can be found on the JNet's homepage via the Workplace Conduct Quick Link**

**Office of the General Counsel, which provides legal advice to Courts and Employing Offices, can be reached at:**

| Charlene Hardy | Shirley Sohrn |
|---|---|
| charlene_hardy@ao.uscourts.gov | shirley_sohrn@ao.uscourts.gov |
| 202.502.3626 | 202.502.1039 |

**Court Human Resources Division – provides human resources guidance to Courts and Employing Offices:**

| Holly Weaver | Nicholas Czekalski |
|---|---|
| holly_weaver@ao.uscourts.gov | nicholas_czekalski@ao.uscourts.gov |
| 202-502-3209 | 202-502-3228 |

**Budget Division – resource for budget and procurement guidance related to EDR matters, including retaining counsel:**

James Farris III, Attorney Advisor
james_farris@ao.uscourts.gov
202-502-1493

135

# INDEX

**Abusive conduct, 112**
prerequisite, 12
reasonable performance management
is not abusive conduct, 113
**Administrative responsibilities of EDR
Coordinators**
annual reporting, 108
EDR record, 106
inform Employees about EDR, 104
**Adverse action appeal, 14, 15**
**Allegations involving a Judge, 12, 41,
56, 64**
Magistrate Judge or Bankruptcy Judge,
42
**Alleged violator, 3**
disciplinary or adverse action against,
92
due process, 27, 68
not a Party to Formal Complaint, 62
notice of Formal Complaint, 68
participation in Formal Complaint
process, 71
**Annual reporting, 108**
**Anonymous reports, 22**
**Assisted Resolution, 5, 10, 40**
allegations involving a Judge, 41
allegations involving a Unit Executive,
41
confidentiality, 21
confidentiality of settlement, 50
denial of Request, 44
facilitated discussion, 40, 45
mediation, 40
possible outcomes, 51
preliminary investigation, 40, 45
Request, 43
settlement and documentation, 50
termination of, 44
**Chief Judge**
responsibilities, 11, 41, 42, 65
**Compelling testimony, 68, 69**
**Complainant, 62**

**Confidentiality, 19, 52**
application, 21
Assisted Resolution, 21
during investigation/discovery, 95
Employing Office considerations, 92
exceptions, 20, 22
Formal Complaint, 21
heightened obligations for Judges and
Unit Executives, 23
Informal Advice, 21, 38
mediation or settlement discussions,
22, 47
non-disclosure agreement, 74
presumption, 19
provision in Model EDR Plan, 19
reasons to protect, 20
sample mediation confidentiality
agreement, 49
written decision, 78
**Conflict of interest, 25, 26**
**Deadlines**
extensions of time, 70
Formal Complaint, 1, 11, 61, 70, 87
hearing, 54, 77, 84, 87
no deadlines for Informal Advice or
Assisted Resolution, 70
Request for Review of Decision, 89, 102
response to Formal Complaint, 62, 87,
90
written decision, 68, 78, 84, 87
**Director of Workplace Relations, 5**
compelling testimony, 69
meeting with the Employee, 52
meeting with the Employing Office or
Chief Judge, 56
personal notes of, 59, 106
responsibilities, 25, 38, 43
tips on effective listening, 58
**Discrimination, 110**
**Discriminatory harassment, 111**
**Disqualification, 26**
**EDR Coordinator, 29**

136

administrative responsibilities. See Administrative responsibilities of EDR Coordinators

after written decision, 89

compelling testimony, 69

description, 30

during Formal Complaint, 85, 86, 87, 88

EDR record, 85

meeting with the Employee, 52

meeting with the Employing Office or Chief Judge, 56

personal notes of, 59, 106

qualities, 31

responsibilities, 25, 38, 43, 65, 85, 102

tips on effective listening, 58

training and certification, 35

**EDR employment laws and Judicial Conference policy, 7, 8, 109**

abusive conduct, 112, See Abusive conduct

Age Discrimination in Employment Act, 7, 111

Americans with Disabilities Act, 5, 7, 111

discrimination, 110

discriminatory harassment, 111

Employee Polygraph Protection Act, 8

Family and Medical Leave Act, 7, 114

Occupational Safety and Health Act, 8, 116

polygraph protection, 116

retaliation, 113, See Retaliation

Title VII of the Civil Rights Act, 5, 7, 110

Uniformed Services Employment and Reemployment Rights Act, 8, 114

whistleblower protection, 8, 114

Worker Adjustment and Retraining Notification Act, 8, 115

**EDR record, 85, 106**

not filed in personnel records, 107

personal notes of EDR Coordinators or DWRs, 59

public requests for decision, 107

retention of the record, 107

**Employing Office considerations, 90**

confidentiality, 92

disciplinary or adverse action against alleged violator, 92

interim relief, 90

investigation/discovery, 92

responsiblity for harassment, 91

right to representation, 91

right to respond, 90

**Equal Employment Opportunity, 8**

**Formal Complaint, 5, 11, 60**

abeyance of, 72

abusive conduct, 70

allegations involving a Judge, 64

alleged violator participation, 71

amendment, 70

case preparation during official time, 63

compelling testimony, 68

Complainant, 62

confidentiality, 21

deadline, 1, 11, 61, 87

decision without a hearing, 75, 76

designation of PJO, 65

distribution of Complaint, 66

established precedent, 68

extensions of time, 70

hearing. See Hearing

initial actions, 65

investigation/discovery, 62, 73

mediation, 63

no ex parte communication with Presiding Judicial Officer, 66

no prerequisites except for abusive conduct allegations, 61

pre-hearing motions, 72

Presiding Judicial Officer. See Presiding Judicial Officer

procedural rights, 62

process, 61

Respondent, 62

response deadline, 62

summary dismissal, 75

voluntary dismissal or settlement, 75

written decision, 78, 84

**Grievance, 14, 15**

**Hearing, 76**

notice of, 76

procedural requirements, 77

Case 1:20-cv-00066-WGY   Document 101-1   Filed 12/18/20   Page 143 of 144

witnesses and testimony, 77
**HR professionals**
as EDR Coordinators, 34
**Impartiality, 25, 52**
**Informal Advice, 5, 10, 37**
confidentiality, 21
responsibilities of EDR Coordinator or DWR, 38
**Interim relief, 13, 40, 41, 79, 90**
**Investigation/discovery, 73**
confidentiality and non-disclosure agreement, 74
confidentiality during, 95
EEOC sample questions, 99
guidance for EDR investigator, 95
interview tips for investigator, 97
investigation report, 100
planning investigation, 96
purpose and scope of investigation, 96
selecting investigator, 74
standard investigation practices, 95
**Judge**
allegations involving. See Allegations involving a Judge
may not be EDR Coordinators, 33
responsibilities, 23
**Judicial Conduct and Disability Act, 13, 16, 64**
**Mediation, 40, 46**
confidentiality, 22, 47
during Formal Complaint, 63
sample confidentiality agreement, 49
selecting a mediator, 47
**Model EDR Plan**
basics, 4
differences from other complaint processes or policies, 14
Options for Resolution, 10
who cannot seek relief, 6
who is covered, 6
**Office of Judicial Integrity, 2, 3, 10, 19, 22, 30, 35, 39, 88, 104, 105, 108**
**Office of the General Counsel**
guidance from, 27, 50, 57, 79, 91, 93, 110

opinion on due process for alleged violator, 27
**Presiding Judicial Officer, 5, 67**
authority to order remedies, 79
designation of, 65
discretion, 69
during Complaint proceedings, 83
during hearing, 84
initial actions, 67, 83
limits on authority, 68
responsibilities, 25, 67, 83
written decision, 84
**Procedural rights and protections, 18**
**Remedies, 79**
authority, 79
available remedies, 80
Back Pay Act, 80
examples, 81
interim relief, 79
prohibited remedies, 82
purpose and intent, 80
**Request for Review of Decision, 101**
EDR Coordinator responsibilities, 102
procedures, 102
**Respondent, 62**
**Retaliation, 27, 113**
**Right to representation, 27, 91**
**Safety/security/integrity, 86, See Confidentiality:exceptions**
**Sample Documents, 117**
**Settlement and documentation, 50**
guidance from OGC, 50
**Tips on effective listening, 58**
**Unit Executive**
allegations involving, 41
Employing Office considerations. See Employing Office considerations
may not be EDR Coordinator, 32
responsibilities, 11, 23, 25, 42
**Written decision**
established precedent, 78
public requests for decision, 107
**Wrongful conduct**
definition, 7
employees may always report, 2

Case 1:20-cv-00066-WGY   Document 101-1   Filed 12/18/20   Page 144 of 144