**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

JANE ROE,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

## DECLARATION OF SHERYL L. WALTER

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am Sheryl Walter, the Administrative Office of the United States Courts' (AO) General Counsel.

2. In my role as General Counsel, I oversee legal guidance and advice that my office provides to the judiciary, which includes legal guidance and advice to employing offices within the judiciary on their legal responsibilities as employers.

3. Around August 2018, I became aware that the then Fair Employment Practices Officer was actively working with Plaintiff to obtain Plaintiff's employment demands surrounding allegations of sexual harassment by a co-worker, while also contacting, directly or indirectly, Plaintiff's employer. This was creating confusion and concern as to whether Plaintiff's employer was being informed of its legal rights and potential liabilities separate and apart from any of Plaintiff's demands. Accordingly, with my consent, the Office of the General Counsel and the Office of Fair Employment Practices agreed that the Office of General Counsel would be the sole AO office responsible for advising Plaintiff's **employer** of its legal rights and responsibilities.

4. Neither I, nor my office, directed the Office of Fair Employment Practices not to speak to Plaintiff. Moreover, my office does not have the authority to direct or prohibit other AO offices to speak to, or not speak to, anyone on any matter.

5. Neither I, nor my office, criticized Plaintiff for reporting complaints to the AO.

GOVERNMENT EXHIBIT G

6. Neither I, nor my office, provided advice or guidance that Plaintiff be denied consideration for a promotion.

7. Neither I, nor my office, provided advice or guidance surrounding Plaintiff's assignments or trial unit assignment.

8. Under the Model EDR Plan in effect in 2018, the wrongful conduct provisions were intended to encourage employees to report discrimination, harassment, or retaliation in the workplace. The wrongful conduct reporting process was intended to be informal and had no formal procedures or time frames. The Model EDR Plan in effect in 2018 expressly stated that a report of wrongful conduct is not the same as initiating or filing an EDR claim. The provision encouraged employees to report wrongful conduct, but the report of wrongful conduct did not entitle the employee to corrective action. Instead, a report of wrongful conduct triggered the appropriate unit executive or chief judge to appropriately investigate whether the alleged individual(s) engaged in misconduct and determine whether a personnel or disciplinary action is warranted.

9. Under the Model EDR Plan in effect in 2018, EDR Coordinators and/or Chief Judges did not typically provide a copy of a Chapter IX investigation to the reporting individual because the Chapter IX investigation was considered an internal investigation into confidential personnel matters. The appropriate Chief Judge was obligated to take appropriate action against the alleged violator based on that investigation, but no EDR plan obligated a court to disclose a Chapter IX investigation report.

10. Under the Model EDR Plan in effect in 2018, EDR Coordinators did not typically provide investigative reports to an employee in his or her capacity as the complainant because the Model EDR Plan did not provide employees with a right to the investigative report and the counseling stage did not consist of an adjudication of the claims.

11. Under the Model EDR Plan in effect in 2018, during the counseling stage only the parties could mutually agree to a resolution. A presiding judicial officer could not make a determination of liability or order a resolution during the counseling stage.

12. The counseling and mediation stages were intended to be non-adversarial processes that provided the employee and the employing office opportunities to engage in open discussion and determine if they could mutually resolve the matter without an adjudication as to the claims. Providing an investigative report could undermine the non-adversarial purpose and intent of the counseling and mediation stages.

13. Moreover, a complainant could request an investigative report in discovery under the EDR Formal Complaint process if he or she completed the counseling and mediation prerequisite stages of EDR and then filed a formal EDR complaint. Specifically, Section X, Paragraph B, subparagraph 2 under the Model EDR Plan that was in effect during the relevant

time period stated: "The presiding judicial officer may provide for such discovery and investigation as is necessary." *See* September 2018 Model Employment Dispute Resolution Plan.

14. The disqualification provision under the Model EDR Plan in effect in 2018 ensured that the EDR Coordinator, Mediator, and presiding judicial officer were impartial. There was no language that promised or ensured that a respondent – employing office would be impartial. This is because the EDR Coordinator, Mediator and presiding judicial officer are involved in the processing of the EDR matter and must, therefore, be fair and impartial to both parties. But the defending respondent-employing office, acting through its unit executive, is the opposing or differing party to an EDR disputed matter. In fact, to disqualify a Respondent-employing office from being able to respond to, and defend, an employment action filed under EDR would be unfair to the Respondent-employing office.

15. The 2019 Model EDR Plan explicitly limits disqualifications for a conflict of interest to the EDR Coordinator, mediator, and presiding judicial officer.

16. The provisions that I discuss in this declaration are substantively identical to the provisions under the Fourth Circuit's Employment Dispute Resolution Plans that were in effect during the relevant time period.

17. My office provided the same advice and guidance to the Fourth Circuit Court of Appeals as it had to every other court on similar queries.

20. My advice and guidance, and my office's advice and guidance, has always been based on a legal understanding and interpretation of EDR Plans and any other applicable employment rights and laws. My advice and guidance, and my office's advice and guidance, is not based on an individual's gender or whether they have engaged in protected activity.

21. To the contrary, in my role and my office's role in providing advice and guidance to the judiciary for complying with any applicable policies or laws, we actively remind everyone that that they may not treat anyone differently because of their gender or for having engaged in protected activity.

22. I have never met or spoken to Plaintiff. I am not, and have never been, Plaintiff's supervisor. I have never had an employment relationship with Plaintiff.

23. I understand that Plaintiff has alleged that I somehow violated her constitutional and statutory rights. I reject those allegations in the strongest terms. I have never taken any action against Plaintiff that could reasonably be considered discrimination, harassment, or retaliation.

Date: October 21, 2020

_____
Sheryl L. Walter
Administrative Office of the United States Courts
Office of the General Counsel
General Counsel