```
 1              UNITED STATES DISTRICT COURT

 2          WESTERN DISTRICT OF NORTH CAROLINA (Asheville)

 3                          No. 1:20-cv-00066-WGY

 4

 5    JANE ROE,
              Plaintiff,
 6

 7    vs.

 8

 9    UNITED STATES OF AMERICA, et al,
              Defendants
10

11
                          * * * * * * * *
12

13                  For Zoom Hearing Before:
                    Judge William G. Young
14

15                    Motion to Dismiss

16

17                  United States District Court
                    District of Massachusetts (Boston)
18                  One Courthouse Way
                    Boston, Massachusetts 02210
                    Monday, November 23, 2020
19

20                      * * * * * * * *

21

22          REPORTER: RICHARD H. ROMANOW, RPR
                  Official Court Reporter
23              United States District Court
         One Courthouse Way, Room 5510, Boston, MA 02210
                    bulldog@richromanow.com
24

25
```

FILED
ASHEVILLE DIVISION
Jan 25 2021
U.S. District Court
Western District of N.C.

```
 1                 A P P E A R A N C E S

 2

 3    COOPER J. STRICKLAND, ESQ.
         Law Office of Cooper Strickland
 4       P.O. Box 92
         Lynn, NC 28750
 5       (828) 817-3703
         Email: Cooper.strickland@gmail.com
 6       For Plaintiff

 7

 8    GILL PAUL BECK, ESQ.
      RACHAEL LYNN WESTMORELAND, ESQ.
 9       U.S. Department of Justice
         1100 L. Street, NW
10       Washington, DC 20005
         (202) 514-1280
11       Email: Rachael.westmoreland@usdoj.gov
         For the United States of America
12

13    SHANNON SUMERELL SPAINHOUR, ESQ.
         Davis, Hartman, Wright, PLLC
14       28 Schenck Parkway, Suite 200
         Asheville, NC 28715
15       (828) 771-0833
         Email: Mss@dhwlegal.com
16       For the FDO

17

18

19

20

21

22

23

24

25
```

```
 1          P R O C E E D I N G S

 2          (Begins, 2:00 p.m.)

 3          THE CLERK:  Now hearing Civil Matter 20-00066, Roe

 4     versus United States of America, et al.

 5          THE COURT:  Good afternoon.  This is a proceeding

 6     that is hosted on our zoom platform.  Our host for the

 7     proceeding is Courtroom Deputy Clerk Jennifer Gaudet.  I

 8     also have on the line and taking down the proceedings

 9     our Official Court Reporter, Rich Romanow, and certain

10     of my law clerks.

11          This is an official proceeding of the court.  It

12     is open to the press and public.  I do not know what

13     members of the press or public may be on the line, but

14     if any are, let me say to you, you are welcome having --

15     but you must understand that you must keep your

16     microphones muted and that the rules of court remain in

17     full force and effect, that is to say there is no

18     rebroadcast, taping, streaming, transcribing, or other

19     broadcasts of these proceedings.

20          Now with that stated, would counsel who think

21     they're going to argue, would you identify yourself and

22     who you represent, starting with the plaintiff.

23          MR. STRICKLAND:  Good afternoon, your Honor,

24     Cooper Strickland for the plaintiff.  And just for the

25     Court's information, I have my client present with me
```

```
 1   just in case any issues come up that I need to discuss
 2   with her.
 3        THE COURT:  Thank you, Mr. Strickland, and of
 4   course she's welcome.
 5        MR. BECK:  Your Honor, this is Gill Beck,
 6   Assistant United States Attorney.  I will be arguing on
 7   behalf of Chief Judge Gregory, Circuit Executive Ishida,
 8   General Counsel of the Fourth Circuit.  With me is
 9   Rachael Westmoreland of the Federal Program's branch,
10   she will be arguing on behalf of the United States and 8
11   other federal defendants.
12        THE COURT:  All right.  Thank you.
13        MS. WESTMORELAND:  Good afternoon, your Honor.
14        THE COURT:  And that's it?
15        MS. SPAINHOUR:  No, your Honor.  This is Missy
16   Spainhour and I will be arguing on behalf of Attorney
17   Anthony Martinez, in his individual capacity, on the
18   *Bivens* claims.
19        THE COURT:  And I thank you.
20        Now I have read all the materials in this case and
21   I believe that I am prepared for oral argument.  All
22   we're arguing today are the various motions to dismiss.
23   Nothing else.  With that said, it seems to me that oral
24   argument ought not exceed 20 minutes a side, and I'm
25   going to hold you to that.
```

 1          The plaintiff, and I think I can fairly say this,

 2     Mr. Strickland, you've got a fairly long road to hoe

 3     here because your complaint is really innovative in

 4     various ways, and so I think I'm going to start with

 5     you.

 6          Now you, defense counsel, everyone will understand

 7     that if we do not have enough time to argue every point

 8     that's been made in the briefs, nothing is waived.  Any

 9     point that is developed in briefing, it's my

10     responsibility to consider and deal with, but I'm going

11     to take 20 minutes a side for oral argument.  So that's

12     20 minutes among the three defendants who are prepared

13     to argue.

14          I do want to start with you, Mr. Strickland,

15     because I think logic compels it, and here's why.

16          Your complaint, um, starts out, of course, or at

17     its basis alleges constitutional violations of the Fifth

18     Amendment, violations of Equal Protection, and

19     violations of Due Process.  Giving all intendments in

20     favor of the complaint, as I must, I'm having trouble

21     seeing how you state a constitutional claim, even if we

22     could get into a new ***Bivens*** action, on either of those

23     grounds.  So I really think that's where I would like

24     you to begin.  If you would develop that for me, I would

25     be grateful.

1    MR. STRICKLAND:  Thank you, your Honor.

2    As far as the -- well there's a Fifth Amendment

3    right to be free of discrimination in federal

4    employment, um, and that's in the *Davis* case law, a very

5    clear principle, um, you just cannot be discriminated at

6    work.  In the context of the judiciary, you have a Due

7    Process right, um, because it -- EDR is the exclusive

8    remedy in order to figure out whether you've been

9    subject to discrimination and whether you're entitled to

10   any written --

11   THE COURT:  Let me interrupt you.  I find in these

12   zoom proceedings I can only ask my questions if I

13   interrupt, and please don't take that as brusque, I was

14   trying to have a conversation.

15   Your client, as to the defendants that are before

16   the Court now, is not claiming discrimination, what

17   she's claiming is retaliation for, um, making a

18   complaint or engaging in protected action by complaining

19   of discrimination.  And, um, at least under the Equal

20   Protection aspect -- we'll get to Due Process in a

21   moment.  But under the Equal Protection aspect of the

22   Fifth Amendment, as I understand the law of the Fourth

23   Circuit, it's not receptive to those claims on the

24   theory that -- that in order to have a constitutional

25   claim there has to be class-based discrimination.

1  Retaliation is not class-based, retaliation has nothing

2  to do with a protected class, it has to do with action

3  taken against one who engages in protected activity.  So

4  goes the argument.

5      What do you say to that?

6      MR. STRICKLAND:  Well I would say that this is not

7  a strictly retaliation-based claim.  I mean if this is

8  kind of a segue to the *Wilcox* decision, we can discuss

9  that, but this is not a purely retaliation-based claim.

10      My client is asserting that from the time that she

11  was subject to discrimination and sexual harassment in

12  her FD office, throughout EDR, the complaint process,

13  that she was subject to discrimination.

14      THE COURT:  Well it's not clear to me that you've

15  alleged that, it seems to me that you've alleged

16  retaliation here?

17      MR. STRICKLAND:  I would disagree with that.  I do

18  not believe -- retaliation in my mind it would seem that

19  you have the discrimination -- the discriminatory act,

20  the sexual harassment, and it kind of ends, you assert a

21  complaint based off it and then things happen because

22  you filed a complaint.  But here I would just point out

23  that the defendants, in various capacities, they delayed

24  the investigation, they failed to disqualify the Federal

25  Defender, they burdened my complainant by denying her a

1    promotion, they put her on telework for over 6 months,

2    um, this conduct was continuing after her complaint.

3         THE COURT:  But you see I understand that this is

4    a motion to dismiss, so at this stage I accept all of

5    that, that's at least factually that's well-pleaded,

6    you've asserted that, but that, at least as I understand

7    your complaint, that's conduct in retaliation for her

8    complaining of sexual discrimination.  Simply saying,

9    "Well she complains of sexual discrimination and

10   therefore retaliation is, um, falls under the same

11   rubric," doesn't seem to be the law at least in the

12   Fourth Circuit.  And you're right to refer to *Wilcox*,

13   um*,* but *Wilcox* would seem to cut against you in this

14   aspect.

15        MR. STRICKLAND:  And I would just add a couple of

16   points here.  As far as this being simply retaliation,

17   there was a conscious failure to act here, the

18   defendants had a duty to act, they assumed that

19   responsibility in order to essentially get to the bottom

20   of the discrimination and provide meaningful remedies

21   and relief, and meaningful review.

22        The *Wilcox* decision, it troubles me on a variety

23   of levels because I understand that it's pretty hard on

24   retaliation, this is not a purely retaliatory claim, but

25   I would point out it bothers me that that decision came

1 out after this case was filed and after this case was

2 subject to intercircuit transfer, and I would just point

3 out too it was authored by a judge who was in our

4 initial disclosures as having discoverable information.

5 That bothers me. And the fact that the Fourth Circuit

6 as a defendant can come up with case law that supports

7 their argument for dismissal or any other kind of relief

8 in this action is problematic.

9 THE COURT: Well you know that raises an

10 interesting point, you don't suggest that somehow I'm

11 not bound by the Fourth Circuit? The intercircuit

12 assignment assigns me to act as a district judge in the

13 Fourth Circuit.

14 Now I've done a fair number of intercircuit

15 assignments and I've always understood that I was

16 subject -- I mean and it's very basic, I am subject to

17 the decisions of the higher courts, and in this case the

18 higher court is the Fourth Circuit. That's not the only

19 case, of course, *Wilcox,* it does seem that that builds

20 on other cases in the Fourth Circuit supporting the

21 principle that I put out to you.

22 MR. STRICKLAND: And I would just go back and

23 reassert again, this is not a purely retaliation-based

24 claim, the discrimination continued the pre-EDR

25 complaint and post-EDR complaint. And there was, um,

1    coordinated efforts after the EDR complaint to ensure

2    that my client was burdened, that appropriate relief was

3    not taken.  I mean we even have it down to like, um,

4    once the EDR complaint was filed, you had the Federal

5    Defender having the opportunity to appoint an

6    investigator.

7        THE COURT:  Well now because I have to give all

8    intendments in favor of your complaint, so I'm asking,

9    you're saying that on the allegations I have here,

10   you're alleging that the conduct to which you make

11   reference here is because of her gender, among other

12   things, not just that she engaged in protected conduct

13   complaining of sexual harassment, but in fact they took

14   these actions -- you're saying to me, as an officer of

15   the court, that they took these actions because of her

16   gender?  In part.

17       MR. STRICKLAND:  Again it began when the quid pro

18   quo e-mail was sent.  By example, um, you have a male

19   supervisor going to a female subordinate saying, "the

20   papers say" essentially, and that resulted in a chain of

21   events that passed through the Federal Defender whenever

22   he signed off on it and then to the Fourth Circuit as

23   well whenever they engaged in the conversion to an AUSA,

24   the pending promotion, and they denied my client the

25   promotion that she was entitled to based off her

1   anniversary date?  Of all of those things, it's a

2   continuing course of conduct, it was, from beginning to

3   end, it just -- it was new defendants that came in and

4   became involved in the process.

5         This is not as simple -- this is not as simple as,

6   um, the First Assistant engaging in such sexual

7   harassment, it ended, my client filed a complaint, and

8   then she was somehow retaliated again for filing that

9   complaint.  There were continuing actions in order to

10   burden my client and punish her for conduct that began

11   with the First Assistant.

12         And I would just say, as far as *Wilcox*, if that's

13   the holding, if that's controlling in the Court's

14   opinion, I think it sets forth the alternative here,

15   which is to allow my client to amend her complaint and

16   file or assert a First Amendment claim.

17         THE COURT:  And what would be the basis of that

18   claim?

19         MR. STRICKLAND:  That's what *Wilcox* identified as

20   the appropriate form of relief for a retaliation claim

21   in this context.

22         THE COURT:  All right.

23         Now if you wouldn't develop the Due Process aspect

24   of your argument, what liberty or property interest here

25   is involved in the process?

1          MR. STRICKLAND:  Well the Due Process interest is
2     -- there's several.  I would say that the main one
3     though is that EDR is set up as the exclusive remedy for
4     employees that are subject to discrimination or other
5     misconduct, and you have a situation, at least with
6     federal defenders, where the CJA and the EDR plan
7     provide no jurisdiction for the Court -- for the Court
8     to consider these claims against an FDO office, and
9     everything else that we've alleged in the complaint, on
10    top of those problems, you have just basic procedural
11    safeguards that are failing.

12          Again I referenced before, it's as simple as the
13    Federal Defender got to pick the investigators.  That's
14    extremely problematic.  How are you ever supposed to
15    have a fair process in that situation when the
16    investigation -- by James Ishida's own admission, was
17    the basis for the disciplinary action under Chapter 9
18    and the adjudication right under Chapter 10?

19          THE COURT:  But frequently in situations involving
20    a private employer, for example, if the employer has an
21    EDR process, it is the employer who, um, investigates,
22    um, but people independent of that -- those against whom
23    the complaint is made, and that's what happened here.

24          MR. STRICKLAND:  No, I would disagree with that.
25    I don't think there's any disagreement at this point

1    that the targets of the EDR complaint were the First

2    Assistant and the Federal Defender.  Now no matter how

3    this got corrupted after the complaint was filed,

4    whether the Federal Defender was investigated or not, is

5    kind of beside the point.  Everyone understood at the

6    time that my client filed a claim, an EDR claim against

7    the Federal Defender, and under those circumstances this

8    is borrowing on Title VII principles.  He's not --

9         THE COURT:  You see that's it, you're absolutely

10   right, what you've done here is, um, borrowing Title VII

11   principles and jurisprudence and applying them to this

12   claim which reads -- which if it exists at all, it's got

13   to go forward as a new *Bivens* claim, straight out of the

14   Constitution.

15        What's the authority for importing into such a

16   claim the jurisprudence from Title VII?

17        MR. STRICKLAND:  So I would just quote from *Davis*

18   at this point, "Litigation under Title VII of the Civil

19   Rights Act of 1964 has given federal courts great

20   experience evaluating claims for back pay due to illegal

21   discrimination."  I think *Davis* is the model here.  The

22   *Davis* court understood this as well, it was not going to

23   be simply applicable to members of Congress, it would be

24   applicable to the judiciary.

25        THE COURT:  But no one says it's just applicable

1   to members of Congress, but it -- in *Davis* the factual

2   situation was strikingly different.

3       MR. STRICKLAND:  I would disagree with that, I

4   would say that -- I know that much has been made about

5   the fact that it was a member of Congress, who was the

6   defendant here, but -- but it's not different in the

7   sense that -- well not different in a meaningful

8   constitutional way because what you're really looking at

9   here are what are the remedies for accepted service

10  employees, those without any other pathway for Article

11  III review of constitutional violations?  I think that

12  you have *Webster*, you have *Elgin*, you have all of these

13  cases that sit there and say "You cannot preclude

14  constitutional review of constitutional" -- "or judicial

15  review of constitutional violations."

16      THE COURT:  Mr. Strickland, I'm going to stick to

17  my time limits, you've got 5 minutes left.

18      Identify for me the liberty interest that you

19  think is invoked in your Due Process claim?  And if it's

20  the law, and again you can correct me, but process is

21  not an end in itself, you cannot fashion a Due Process

22  claim out of the fact that you've been deprived of

23  process.  At least that's how I understand it.

24      So what is it here?

25      MR. STRICKLAND:  The liberty interest, quite

1   simply, is you have a federal employee, a citizen
2   employee, who retains their constitutional rights, and
3   they have freedom from discrimination in their
4   employment, and there ought to be some pathway for
5   relief, some way to review what the claims are.  EDR is
6   not it.  It is not an Article III court --
7           THE COURT:  So this really, um, and I am
8   understanding you, you're making yourself clear.  You
9   think *Davis* is the way forward here?
10          MR. STRICKLAND:  I think *Davis*, at the end of the
11  day is primarily viewed as a *Bivens* claim, but it
12  provides tremendous insight into how you interpret the
13  Fifth Amendment with respect to gender discrimination.
14  And sexual harassment and those things are underneath
15  that umbrella.  It is directly applicable.  You have
16  freedom to be -- you are, as a federal employee, you
17  should be free of gender discrimination, discrimination,
18  sexual harassment, in your federal employment, and I
19  think *Davis* clearly states that.
20          And as far as the Due Process interest, I would
21  say again, when you have a system like EDR that does not
22  have adequate procedural safeguards, those typically
23  associated with a judicial proceeding -- there is
24  Supreme Court precedent on that, it's *Hannah v. Larche*,
25  we cited it in our proceedings.  You have to have those

1    hallmarks of judicial procedural Due Process --

2    procedural safeguards.

3         THE COURT:  You'd agree with me though that there

4    is no property interest in process alone, isn't that

5    right?

6         MR. STRICKLAND:  No, I disagree with that.  I know

7    that --

8         THE COURT:  What's your strongest case on that

9    point?

10        MR. STRICKLAND:  The defendants have made much of

11   that and I would just simply say that they have a point.

12   If you want to analogize this simply to like this is

13   just something in an employee handbook, that's fine, but

14   that is incorrect.

15        Give me one second here.  (Pause.)  But the

16   problem with that concept though is that they're dealing

17   with cases that are nondiscrimination-based adverse

18   employment actions, like you repeatedly showing up late

19   for work or something like that.  And then the other

20   thing that I would point out is that in those instances

21   you have an opportunity for further judicial review of

22   whatever kind of decision is made in the administrative

23   process.

24        THE COURT:  All right.

25        MR. STRICKLAND:  Plus this Court has the

1  opportunity to provide equitable relief, um, for a

2  constitutional violation.

3  　　　　　THE COURT:  And what would you say that would be?

4  　　　　　MR. STRICKLAND:  The equitable relief?

5  　　　　　THE COURT:  Yes.

6  　　　　　MR. STRICKLAND:  Well the minimum it would be, I

7  would say, is a threshold, that you would have

8  reinstatement.

9  　　　　　THE COURT:  I thought she left that position to

10  take another position within the judiciary as a result

11  of the mediation process?

12  　　　　　MR. STRICKLAND:  Because the conditions of

13  employment became so burdensome that she was

14  constructively discharged from her employment.  There

15  was no way that she was going to be able to stay at an

16  employer where people wear offensive Justice Kavanaugh

17  costumes to work, when they're saying, "Oh, you're on

18  telework for 6 months, let's go meet you at the Waffle

19  House," and jokes about "Where's Waldo?" and everything

20  else.  It was clear that they were not going to provide

21  her any kind of relief where she could continue to do

22  her job.

23  　　　　　THE COURT:  All right, thank you, Mr. Strickland.

24  　　　　　All right, we'll hear from the defendants.  I

25  assume you figured out your own time, because I'm not

1   going to call time say at the end of 20 minutes.

2        Now really I have pressed Mr. Strickland on areas

3   that I found -- well I don't find anything on a motion

4   to dismiss, but areas where I consider that he has

5   difficulties in his argument.  You need not -- well you

6   make your own arguments.  But what I'd like for you to

7   develop is your argument about this new *Bivens* action.

8   If he gets beyond that -- let's say he gets the answers

9   to my questions and gets beyond that, um, isn't this a

10  case that at least ought go forward through discovery?

11  I'll hear the defense.

12       MR. BECK:  Your Honor, this is Gill Beck, United

13  States Attorney for Chief Judge Gregory and General

14  Counsel Walter.

15       The analysis is provided by *Aldizetti* and

16  *Aldizetti* asks whether there is a meaningful difference?

17  There is a meaningful difference between *Davis vs.*

18  *Passman* in multiple ways.  There's a meaningful

19  difference with regard to the new category of

20  defendants.  There is a meaningful difference with

21  regard to the standard analysis of this claim, there was

22  a very specific discrimination claim involving the

23  Congressman.  This is a conspiracy being alleged and

24  it's very very broad reaching all the way up to the

25  Eastern District of New York, the Director of the

1    Administrative Office, the Chief Judge of the Circuit

2    Court, the generality and specificity provides a

3    meaningful difference.

4         The rights of the officers provides a meaningful

5    difference under the *Forrester* analysis and *Atkinson vs.*

6    *Holder* and *Doe vs. Meron*.  The statutory or legal

7    mandate under which they operate provides a difference.

8    And in this case, Chief Judge Gregory, Circuit Executive

9    Ishida, and General Counsel Walter, were, um,

10   implementing, administrating the EDR process of the

11   Fourth Circuit, totally different from what the

12   Congressman was doing.

13        In addition, the Civil Service Reform Act, a major

14   change in federal employment law, as reflected in the

15   Supreme Court case in *Bush vs. Lucas*, that is a

16   difference.  Judicial independence is a meaningful

17   difference.  This policy challenges a meaningful

18   difference.  Why bring in Chief Judge Mauskopf and the

19   Administrative Judicial Counsel of the United States if

20   he's not challenging policy?  All of those are

21   meaningful differences from *Davis vs. Passman*.

22        And with regard to *Aldizetti,* the Court emphasized

23   the new context is easily satisfied, as did the Fourth

24   Circuit in *Fund Hope*.  A radical difference is not

25   required, even a modest extension, the Supreme Court in

1     *Aldizetti* said, and as the Fourth Circuit in *Fund Hope*

2     said, that's an extension, even a modest extension. And

3     in this case there's no question that there has been --

4     there is a meaningful difference from *Davis vs. Passman*,

5     that requires the Court to go to special factors.

6         And that's another big difference between *Davis*

7     *vs. Passman.* In the first three business cases special

8     factors were only considered in dicta, there was no

9     special factor -- um, there was mention of the debate

10     clause in dicta, but there was no special factor. There

11     are three -- there are three circuit courts that have

12     held that the special factor of the Civil Service Reform

13     Act is a bar to this action going forward.

14         THE COURT: But not the Fourth Circuit?

15         MR. BECK: No, your Honor, that's correct. The

16     Fourth Circuit, along with the Third Circuit, has said

17     that the EDR process is a bar, a special factor that

18     precludes the action from going forward. Now the Fourth

19     Circuit decision is an unpublic decision, but it does

20     indicate what the law of the Fourth Circuit is.

21         And in this particular case, there is a very very,

22     um, substantial EDR process. This individual is -- had

23     precluded, she voluntarily had withdrawn it, she would

24     have had to have built in her back pay, promotion, and

25     reinstatement, all kinds of remedies are listed there,

1   with the ability to have a review by a judge, which is

2   much better than you routinely have, an experienced

3   Article III judge, acting in an administrative capacity

4   but still entitled to absolute immunity, um, providing

5   that.  So there are multiple reasons why she cannot go

6   forward with a *Bivens* action.

7          And the Supreme Court has indicated, very very

8   clearly, as has the Fourth Circuit, that this is a

9   different strategy than when *Bivens, Carlson*, and *Davis*

10  were decided.  If decided now, some of the Supreme Court

11  justices said there may be a different result.  But in

12  any event, it is disfavored to extend *Bivens*.

13         I would like to pass to my other counsel, but I

14  would like just like to --

15         THE COURT:  That would be fine.  Let me just ask

16  one discrete question.

17         You've cited this unpublished decision in your

18  papers?

19         MR. BECK:  Yes, your Honor.

20         THE COURT:  Fine.  Thank you.  Go ahead.

21         MR. BECK:  With regards to the points, your Honor,

22  in that particular case is *Kostishak vs. Mannes*,

23  *Kostishak vs. Mannes*, it's a 1998 case, 145 F. 3rd 1325.

24  And to give you an example of a District Court, in, um,

25  the Fourth Circuit, the Eastern District of Virginia in

1    ***Drone vs. Duff***, 2017 Westlaw 6383607, applied this same

2    analysis with regard to the Eastern District of Virginia

3    EDR plan and found that a different factor applied.

4         I'd like to go back to retaliation.  Your Honor is

5    exactly right that ***Wilcox vs. Lyons*** is very important.

6    ***Wilcox*** just says retaliation for reporting alleged sex

7    discrimination -- on an employee was because of the

8    employee's report, not because of the employee's sex.

9    Another point in ***Wilcox,*** a retaliation claim of this

10   type thus does not implicate disparate treatment on the

11   basis of a classification within the Equal Protection

12   Clause.

13        Another question your Honor raised --

14        THE COURT:  But what do you say -- what do you say

15   to his point that if I were to dismiss, it should be a

16   dismissal with leave to file a proposed amended

17   complaint to assert a First Amendment violation and then

18   we'll give you a chance to attack that.  What do you say

19   to that?

20        MR. BECK:  Your Honor, we would oppose that

21   because both the Supreme Court and the Fourth Circuit

22   have been very clear that the Supreme Court has never

23   ever allowed a First Amendment ***Bivens*** claim.  So we

24   believe the law is very strong and it would be futile to

25   allow amendment.

1     Another question your Honor raised was the

2  relationship between Title VII and the Constitution, and

3  this is a case about the Constitution.  But the ***Wilcox***

4  case is also very important there.  So the ***Wilcox*** court

5  said, "Thus, if Wilcox's retaliation claim was governed

6  by the Title VII framework, her claim provides

7  dismissal."  But it did not because there is a different

8  standard, a constitutional standard.

9     And at this time I will defer to Missy Spainhour.

10     THE COURT:  Fine.  I'm happy to hear you.  There's

11  about 11 minutes left.  Go ahead.

12     MS. SPAINHOUR:  I'll just take a few minutes so

13  that Ms. Westmoreland can give her argument.

14     Your Honor, I would say -- I represent

15  Mr. Martinez and I would say a couple of things with

16  regard to what Mr. Strickland just said.

17     The first is that he discusses how the Court has

18  the ability to impose equitable relief in this case.

19  That is not true as to the individual defendants.  There

20  is Fourth Circuit case law on point that says that

21  individuals defendant cannot be subjected to equitable

22  relief.

23     THE COURT:  He did not state that in that context

24  and I understand that to be the law.

25     MS. SPAINHOUR:  Okay.  I just wanted to be sure

1    about that.

2         I also wanted to talk about **_Davis vs. Passman_** a

3    little more.  Even in that case the Court said that, um

4    -- it says "As a course, were Congress to create

5    equally-effective alternative remedies, the need for

6    damages relief may be obviated."  Well right around the

7    same time the CSRA was enacted, the Congress and the

8    CSRA did not exclude or did not ignore judiciary

9    employees, they just put them in an excepted service

10   category, and then later judiciary employees of course

11   are entitled to receive back pay or other things like

12   that, which again had she gone through this process,

13   it's possible that she could have received those things

14   had she proven her claims.  So I wanted to address that.

15        THE COURT:  And just so we're clear, the "should

16   she have gone through this process" is the extant EDR

17   process which after mediation she withdrew from to take

18   another position.  Those are the facts, correct?

19        MS. SPAINHOUR:  That's correct.  And also she did

20   not file another EDR process to try to, um, to try to

21   address her complaint of constructive discharge, which

22   she claims happened when she left after mediation.  So

23   there was another --

24        THE COURT:  Thank you.  All right.  We'll hear,

25   um, from counsel.

1      MS. WESTMORELAND: Thank you, your Honor. And as

2 Mr. Beck stated in the beginning, I'm representing the

3 Federal Defendants including the individual defendants

4 in their official capacities.

5      So in addition to the fact that, um, plaintiff has

6 failed to state a claim here for Equal Protection or a

7 violation of equal proceedings or Due Process, the fact

8 of the matter is that the Court doesn't have

9 jurisdiction to hear plaintiff's claims against the

10 federal entity defendants. The plaintiff has still not

11 identified a waiver of sovereign immunity and it's

12 axiomatic that this Court can either -- either there can

13 be no suit against the federal government or the

14 defendants in their official capacity without a waiver

15 of sovereign immunity, and that waiver simply does not

16 exist here. The Administrative Procedure Act exempts

17 courts of the United States, including their

18 auxiliaries, including the Federal Public Defender's

19 Office, which is connected to the federal court system

20 by statute. The Act does not provide a waiver of

21 sovereign immunity because no appropriate authority has

22 first found the employee to have suffered an illegal

23 action as would be required. The EDR plan itself cannot

24 provide a waiver of sovereign immunity because it's

25 simply an administrative proceeding and doesn't

1    implicate a suit against the United States in federal
2    court.  20 USC 1331 simply provides for the subject
3    matter jurisdiction this Court can hear it, it has
4    absolutely nothing to do with sovereign immunity or the
5    ability of court claims to be heard against the United
6    States.  And the *Larson Duggan* exemption does not apply
7    here.  To the extent it wasn't waived by the
8    Administrative Procedure Act, in any event she doesn't
9    allege the sort of heightened standard required.  So for
10   those reasons, um, there can be no suit against the
11   United States for money damages or equitable relief.
12   And for that reason alone, this Court should grant the
13   federal defendants' motion to dismiss.
14        But even putting sovereign immunity aside, the
15   CSRA concludes that --
16        THE COURT:  Well let me stop you -- let me stop
17   you there for a second here.  Because I started at least
18   where I thought it was logical to start, which was has a
19   constitutional violation been alleged?  And counsel and
20   I went back and forth on that and he has answered my
21   questions and I have to consider that.
22        You launch in saying, "Wait one second, Judge,"
23   and you're saying it very well and respectfully, but
24   you're saying "You don't have subject matter
25   jurisdiction here because at least as to the federal

1    employees in their official capacities, they are

2    employees" -- well judges don't like to consider

3    themselves employees, but "they are officers of the

4    government of the United States."  And so when I come to

5    address this, actually you would say that your argument

6    has to get top-billing, that is whatever I think about

7    these other things, um, I simply cannot go forward, as

8    you've developed it, absent a waiver of sovereign

9    immunity as to these people in their official

10   capacities, because there has been no waiver.  Have I

11   got your argument right?

12        MS. WESTMORELAND:  That's correct, your Honor.

13        THE COURT:  All right.  And now you've got about 3

14   minutes left for the fallback in case I don't agree with

15   that.  Go ahead.

16        MS. WESTMORELAND:  Well I'll sum it up pretty

17   quickly.

18        You stated at the beginning that you've read all

19   of the briefing, which there's been quite a bit of in

20   this case, but even if your Honor were to find that

21   sovereign immunity has been waived, the CSRA clearly

22   precludes any sort of claim outside of the framework by

23   the CSRA.  And this has been recognized in *Elgin* and

24   *Fausto* by the Supreme Court.  The arguments the

25   plaintiff makes simply -- they just don't make sense.

1          For example, they say through the statutory

2     provision that talks about specific discrimination

3     statutes, it has really nothing at all to do with

4     constitutional claims.  And there's the legislative

5     history and the fact that this has gone back and forth

6     between the court and the judicial branch and Congress

7     and Congress had many opportunities to amend the CSRA

8     and chosen not to even when it applied certain

9     employment discrimination laws to itself.  And then

10    finally plaintiff makes this argument that somehow this

11    interpretation of the CSRA is a constitutional violation

12    in itself, and that also simply doesn't really make

13    sense.  *Webster v. Doe* does stand for the proposition

14    that, you know, courts should have some sort of

15    heightened scrutiny lens considering whether Congress

16    precluded constitutional claims.  But that requires a

17    predicate showing that there's no judicial forum.

18         And so here there is an EDR process where

19    experienced Article III judges, albeit acting in their

20    administrative capacities, who can order discovery,

21    order all the sorts of relief that plaintiff is seeking

22    here.  She still hasn't identified any relief that the

23    judicial officers could not have given her through the

24    EDR process, and that can -- that decision of the

25    judicial officer through the EDR process, there is an

1    opportunity for further sort of review of that decision.

2         So with all that and the separation of powers

3    issues, um, that are outlined in **Buckley**, in **Semper**, and

4    **Dotson**, if your Honor wants to refer to those cases for

5    a more fulsome explanation of those issues.

6         THE COURT:  Thank you.  I think I have the

7    argument.

8         MS. WESTMORELAND:  All right.

9         THE COURT:  Let me tell you how we're going to

10   proceed here.  And I don't want anyone to take any

11   comfort, anyone, plaintiff or defendant, to take any

12   comfort from what I am going to say now.  I'm going to

13   enter the following order and here it is.  This case is

14   stayed until I enter at least an order, and hopefully a

15   memorandum of decision, on the motion to dismiss.

16        Now this has been very ably argued by all four

17   counsel who have argued.  I am grateful not only for

18   your argument, but for your comprehensive briefing.  I

19   take my responsibilities very seriously, I am a visiting

20   judge in this district, in the Fourth Circuit, so I will

21   tell you I believe I am bound by the law, under stare

22   decisis I am bound by the decisions of the Fourth

23   Circuit, but that is not the circuit in which I have

24   routinely practiced, and so what I'm going to do is take

25   this matter under advisement.  And having taken it under

1    advisement, we've really uncovered that I am not even

2    clear where to start the analysis.  But I'm going to

3    figure that out.  And as soon as I can reasonably, in a

4    deliberate way, do it, I will enter an order and a

5    memorandum of decision.

6         So don't think that this is prejudging the case,

7    because it's not.  Yes, I have read everything.  I am

8    one who believes in oral argument and oral argument here

9    has been extraordinarily helpful and I appreciate

10   counsels' devotion as advocates.  Now the ball is in my

11   court.  Everything is stayed until I make an order.  And

12   if anything is going forward, at that time we can figure

13   out the orderly method in which it will go forward.

14   Again with my thanks we'll take the matter under

15   advisement and we'll stand in recess.  Thank you.

16        (Ends, 2:50 p.m.)

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3

4          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

5     do hereby certify that the foregoing record is a true

6     and accurate transcription of my stenographic notes

7     before Judge William G. Young, on Monday, November 23,

8     2020, to the best of my skill and ability.

9

10

11

12    /s/ Richard H. Romanow 01-22-21
      _____
13    RICHARD H. ROMANOW    Date

14

15

16

17

18

19

20

21

22

23

24

25