# REPORT OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES

*MARCH 11, 1997*

*WASHINGTON, D.C.*

*JUDICIAL CONFERENCE OF THE UNITED STATES*
*CHIEF JUSTICE WILLIAM H. REHNQUIST,*
*PRESIDING*
*LEONIDAS RALPH MECHAM, SECRETARY*

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

## March 11, 1997

### Contents

Call of the Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Elections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Executive Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    United States Sentencing Commission . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Funding for District of Columbia Court System . . . . . . . . . . . . . . . . . . 6
    Optimal Utilization of Judicial Resources . . . . . . . . . . . . . . . . . . . . . . . 7
    Study of the Criminal Justice Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    Miscellaneous Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Committee on the Administrative Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Committee on Automation and Technology . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Long Range Plan for Automation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Library Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Committee on the Administration of the Bankruptcy System . . . . . . . . . . . . 11
    Bankruptcy Judgeships . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    Statistical Reporting of Intercircuit and Intracircuit Assignments . . . . . 12
    Reappointment of Bankruptcy Judges . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Revision of Dollar Amounts in the Bankruptcy Code . . . . . . . . . . . . . . 13
Committee on the Budget . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Committee on Codes of Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Ethics Reform Act Gift Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Committee on Court Administration and Case Management . . . . . . . . . . . . . . 15
    Civil Justice Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Staffing Resources for CJRA and Arbitration Programs . . . . . . . . . . . . . 16
    Space Cost Containment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        Courtroom Sharing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        Acquiring and Releasing Space . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        Probation and Pretrial Services Divisional Offices . . . . . . . . . . . 19
    Miscellaneous Fee Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        Bankruptcy Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        Judicial Panel on Multidistrict Litigation . . . . . . . . . . . . . . . . . . 20
Committee on Criminal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Victims' Rights Constitutional Amendment . . . . . . . . . . . . . . . . . . . . . 21
    Risk Prediction Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Firearms Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Committee on Defender Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    Defender Organization Funding Requests . . . . . . . . . . . . . . . . . . . . . . 22
    Death Penalty Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    Disclosure of Compensation Payments . . . . . . . . . . . . . . . . . . . . . . . . 24
    Panel Attorney Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    Case Compensation Maximums . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Committee on Financial Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Committee on Intercircuit Assignments . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Committee on International Judicial Relations . . . . . . . . . . . . . . . . . . . . . . 26
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Committee on the Judicial Branch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    Committee Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Committee on Judicial Resources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    Article III Judgeship Needs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        District Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        District Judgeship Needs Survey . . . . . . . . . . . . . . . . . . . . . . . . 27
        Temporary Judgeships . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Congressional Accountability Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Court Reporters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Committee on the Administration of the Magistrate Judges System . . . . . . . . . 29
    Background Investigations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Changes in Magistrate Judge Positions . . . . . . . . . . . . . . . . . . . . . . . 29
Committee to Review Circuit Council Conduct and Disability Orders . . . . . . . 34
    Processing of Petitions for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Committee on Rules of Practice and Procedure ........................ 34
    Federal Rules of Civil Procedure ............................... 34
    Federal Rules of Criminal Procedure ........................... 35
    Federal Rules of Evidence .................................... 35
Committee on Security, Space and Facilities ......................... 36
    Courtroom Sharing and Model for Courtroom Planning ........... 36
    *United States Courts Design Guide* ............................ 37
    Five Year Courthouse Project Plan ............................. 39
    Release of Court Facilities ................................... 39
    Opening and Closing Facilities ................................ 40
    Use of Court Facilities by State and Local Governments ........... 40
    Space Management Initiatives Plan ............................ 40
Mail Ballots .................................................... 41
Funding ....................................................... 42
Release of Conference Action ..................................... 42

No. 21-1346, viewed 04/21/2022

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

## March 11, 1997

The Judicial Conference of the United States convened in Washington, D.C., on March 11, 1997, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331. The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Juan R. Torruella
> Chief Judge Joseph L. Tauro,
>     District of Massachusetts

Second Circuit:

> Chief Judge Jon O. Newman
> Chief Judge Peter C. Dorsey,
>     District of Connecticut

Third Circuit:

> Chief Judge Dolores K. Sloviter
> Chief Judge Edward N. Cahn,
>     Eastern District of Pennsylvania

Fourth Circuit:

> Chief Judge J. Harvie Wilkinson III
> Judge W. Earl Britt,
>     Eastern District of North Carolina

*Judicial Conference of the United States*

Fifth Circuit:

        Chief Judge Henry A. Politz
        Judge William H. Barbour, Jr.,
                Southern District of Mississippi

Sixth Circuit:

        Chief Judge Boyce F. Martin, Jr.
        Judge Thomas A. Wiseman, Jr.,
                Middle District of Tennessee

Seventh Circuit:

        Chief Judge Richard A. Posner
        Chief Judge Michael M. Mihm,
                Central District of Illinois

Eighth Circuit:

        Chief Judge Richard S. Arnold
        Judge Donald E. O'Brien,
                Northern District of Iowa

Ninth Circuit:

        Chief Judge Procter Hug, Jr.
        Chief Judge Lloyd D. George,
                District of Nevada

Tenth Circuit:

        Chief Judge Stephanie K. Seymour
        Judge Clarence A. Brimmer,
                District of Wyoming

2

*March 11, 1997*

Eleventh Circuit:

        Chief Judge Joseph W. Hatchett
        Judge Wm. Terrell Hodges,
                Middle District of Florida

District of Columbia Circuit:

        Chief Judge Harry T. Edwards
        Chief Judge John Garrett Penn,
                District of Columbia

Federal Circuit:

        Chief Judge Glenn L. Archer, Jr.

Court of International Trade:

        Chief Judge Gregory W. Carman

    Circuit Judges Norman H. Stahl and David R. Thompson and District Judges Julia Smith Gibbons, John G. Heyburn, II, George P. Kazen, Barefoot Sanders, and Ann C. Williams attended the Conference session. Circuit Executives Vincent Flanagan, Steven Flanders, Toby Slawsky, Samuel W. Phillips, Gregory A. Nussel, James A. Higgins, Collins T. Fitzpatrick, June L. Boadwine, Gregory B. Walters, Robert L. Hoecker, Norman E. Zoller, and Linda Ferren were also present.

    Senators Richard J. Durbin and Patrick J. Leahy and Representative Barney Frank spoke on matters pending in Congress of interest to the Conference. Attorney General Janet Reno and Acting Solicitor General Walter Dellinger addressed the Conference on matters of mutual interest to the judiciary and the Department of Justice.

    Leonidas Ralph Mecham, Director of the Administrative Office of the United States Courts, attended the session of the Conference, as did Clarence A. Lee, Jr., Associate Director for Management and Operations; William R. Burchill, Jr., Associate Director and General Counsel; Karen K. Siegel, Assistant Director, Judicial Conference Executive Secretariat; Michael W. Blommer, Assistant

Director, Legislative Affairs; David Sellers, Acting Assistant Director, Public Affairs; and Wendy Jennis, Deputy Assistant Director, Judicial Conference Executive Secretariat. Judge Rya W. Zobel and Russell R. Wheeler, Director and Deputy Director of the Federal Judicial Center, also attended the session of the Conference, as did James Duff, Administrative Assistant to the Chief Justice; Mary Ann Willis, Supreme Court Staff Counsel; and judicial fellows Sirkka A. Kaufman, Harry L. Pohlman, Mark Syska, and Elizabeth Woodcock.

## REPORTS

Mr. Mecham reported to the Conference on the judicial business of the courts and on matters relating to the Administrative Office. Judge Zobel spoke to the Conference about Federal Judicial Center programs, and Judge Richard Conaboy, Chairman of the United States Sentencing Commission, submitted a written report on Sentencing Commission activities.

## ELECTIONS

The Judicial Conference elected to membership on the Board of the Federal Judicial Center Bankruptcy Judge A. Thomas Small of the Eastern District of North Carolina to replace Bankruptcy Judge Elizabeth L. Perris, and Magistrate Judge Virginia M. Morgan of the Eastern District of Michigan to fill a new position created by the Federal Courts Improvement Act of 1996 (Public Law No. 104-317).

## EXECUTIVE COMMITTEE

### UNITED STATES SENTENCING COMMISSION

On recommendation of the Executive Committee, the Judicial Conference approved the following names for presentation to the President of the United States for appointment, subject to the advice and consent of the Senate, to fill two vacancies on the United States Sentencing Commission:

4

*March 11, 1997*

For reappointment:

Honorable A. David Mazzone, District of Massachusetts;

For appointment (to succeed the Honorable Julie Carnes, who does not seek reappointment):

Honorable Diana E. Murphy, Eighth Circuit
Honorable Donald E. O'Brien, Northern District of Iowa.

## RESOLUTION

On recommendation of the Executive Committee, the Judicial Conference adopted the following resolution, in recognition of the extraordinary contributions of Chief Judge Richard S. Arnold, who stepped down as Chair of the Budget Committee on December 31, 1996:

The Judicial Conference of the United States recognizes with appreciation, respect and admiration the Honorable

### RICHARD S. ARNOLD

Chair of the Committee on the Budget of the Judicial Conference from November 20, 1987 to December 31, 1996. Appointed as committee chair by Chief Justice William H. Rehnquist, Chief Judge Arnold has played a pivotal role in the administration of the federal court system. He has served with distinction leading the Budget Committee while simultaneously performing his duties as Chief Judge of the United States Court of Appeals for the Eighth Circuit. Chief Judge Arnold has earned the gratitude of his colleagues for the innumerable contributions he has made not only while serving on the Budget Committee, but also while serving on the Ad Hoc Committee on Regulatory Reform Legislation from 1981 to 1984, the Subcommittee on Judicial Improvements from 1983 to 1987, and currently as member of the Executive Committee. He has gained the confidence and respect of those with whom he has come in contact in all three branches of

5

government. We pay tribute and extend our deep appreciation to Chief Judge Arnold for his unwavering commitment to the administration of justice and service to the federal judiciary.

## FUNDING FOR DISTRICT OF COLUMBIA COURT SYSTEM

On January 14, 1997, the President announced a plan to restructure the relationship between the federal government and the District of Columbia. The plan included a provision that the Administrative Office of the United States Courts would assume direct responsibility for funding the District of Columbia's local court system, although the local courts would remain "self-managed." The Budget, Federal-State Jurisdiction, and Criminal Law Committees reviewed the plan. The Executive Committee, on behalf of the Conference, concluded that it was inappropriate for the federal judiciary to be involved in the funding or operations of the local courts of the District of Columbia. The Executive Committee approved the following statement reflecting the Conference position:

The District of Columbia Superior Court and Court of Appeals were created in 1970 as a new local court system designed to function like the courts of the various states, separate and apart from the United States District Court and the United States Court of Appeals for the District of Columbia. The separation of the two court systems would be blurred under a far-reaching proposal to restructure the relationship between the federal government and the District of Columbia announced by the President on January 14, 1997. The President's plan would have the federal government assume direct responsibility for funding the District of Columbia's court system, although the courts themselves, characterized by the White House as a "court system [that] works well," would remain "self-managed." While details have yet to be worked out, the plan specifically provides that "[t]he D.C. court system would be funded through the Judiciary's Administrative Office of the U.S. Courts."

The Third Branch is sympathetic to the interest of the President and the Congress in the fiscal stability of the District of Columbia. The federal judiciary also understands fully the need to provide stable funding mechanisms for carrying out judicial functions. If the primary purpose of involving the federal judiciary

6

*March 11, 1997*

is to serve as a conduit for the receipt of funds for the D.C. courts, there are more appropriate models for providing for the necessary funding which are consistent with the stated goal of preserving the ability of the D.C. court system to manage itself. These include, among others, funding systems developed for Article I courts, and creation of an independent agency to receive and disburse funds for D.C. courts and their related functions. Such options would also be more consistent with the time-honored principle that federal courts are to have limited jurisdiction, whereas state and local courts such as those in the District of Columbia are to be courts of general jurisdiction under our system of federalism.

The proposed solution to fund the D.C. courts through the Administrative Office presents serious legal and practical problems. While these are numerous, two are of such concern that they warrant detailed consideration. First, the plan would place the Director of the Administrative Office in the untenable position of assuming legal responsibility for handling D.C. court funds without the authority to assure that such funding is expended in accordance with law. In addition, to the extent that the plan can be read to involve the federal courts in the supervision of offenders sentenced by D.C. judges, the federal probation system is simply not equipped to assume such massive new responsibilities.

It is essential to preserve the independence of the federal courts and, at the same time, retain an independent local judiciary for D.C. citizens. The Executive Committee of the Judicial Conference, acting by virtue of its emergency authority on the Conference's behalf, therefore urges the Executive and Legislative Branches to develop alternatives that would avoid the entanglement of the federal judiciary in the operations of the local courts of the District of Columbia.

## OPTIMAL UTILIZATION OF JUDICIAL RESOURCES

In reports accompanying the judiciary's appropriations legislation for fiscal years 1996 and 1997, Congress asked the federal judiciary to study and report on the "optimal utilization of judicial resources." The Executive

7

Committee reviewed a draft report, endorsed by several Conference committees, which addressed four specific topics, as well as additional areas where improvements and cost efficiencies could be achieved, and determined to give the members of the Judicial Conference an opportunity to review the report. In a mail ballot which concluded on November 18, 1996, the Judicial Conference voted to approve the report. (Two members included suggestions for changes, which were accommodated.) The report was transmitted to Congress by the due date of November 30, 1996 (see *infra*, "Mail Ballots," p. 41).

## STUDY OF THE CRIMINAL JUSTICE ACT

The *Report of the Judicial Conference of the United States on the Federal Defender Program*, approved by the Judicial Conference in March 1993, contained a recommendation that the judiciary should arrange for a comprehensive, impartial review of the Criminal Justice Act (CJA) program every seven years (JCUS-MAR 93, p. 28). In response to a Defender Services Committee suggestion that planning begin now so that the study could be completed by the year 2000, the Executive Committee determined not to proceed with a comprehensive study. Instead, the Executive Committee requested the Defender Services Committee to examine specific problem areas which may be in need of in-depth review.

## MISCELLANEOUS ACTIONS

The Executive Committee:

- Approved participation in the Attorney General's pretrial drug testing initiative (now called Operation Drug TEST) of 20 districts, plus three additional districts provided they meet the budgetary parameters of the project, and authorized the chair of the Criminal Law Committee to approve the remaining two districts (see JCUS-SEP 96, p. 46);

- Declined to authorize the Administrative Office to request permission from Congress to implement in fiscal year 1997 a $5 per hour increase in Criminal Justice Act panel attorney rates in those districts in which a rate of $75 per hour has been approved but not implemented;

8

*March 11, 1997*

- Approved a transfer of up to $8.5 million from the judiciary's fee account to the Court Security account, assuming congressional approval;

- Approved for codification in the *Guide to Judiciary Policies and Procedures* a long-standing policy of the judicial branch that drugs should not be used, possessed, or distributed in the workplace;

- Granted approval of a sentencing program sponsored by the Federal Judicial Center, but only on the basis of the Executive Committee's interpretation that the statute (28 U.S.C. § 334) requiring Judicial Conference approval of sentencing institutes is inapplicable to this program, and with the further understanding, consistent with that interpretation, that Federal Judicial Center funds would be used to defray the costs;

- Agreed that the Conference should continue to take no position on legislation to create a commission to study the boundaries of the circuits, in particular the Ninth Circuit (see JCUS-SEP 96, p. 45), but voted to seek a change in appropriations language to allow funds provided to such a commission to be "available until expended";

- Authorized a one-time waiver of the limit on reimbursement of relocation expenses for an overseas law clerk, due to the particular circumstances;

- Made no change in the judges' maximum daily subsistence allowance, but asked the Judicial Branch Committee to review established *per diem* rates in the Boston area;

- Referred to the Judicial Resources Committee a question involving law clerk assistance to courts with significant judicial vacancies;

- Received from the Bankruptcy Committee a report providing recommendations for improving the United States trustee program, which had been requested by the Executive Committee in 1995 on the assumption that the program will remain, for now, within the Department of Justice;

9

- Adopted a position proposed by the Automation and Technology Committee regarding multiple vendors for computer-assisted legal research; and

- On request of the Bankruptcy Committee, approved the release of a preliminary Federal Judicial Center study of a bankruptcy *in forma pauperis* pilot project, provided that a two-page executive summary and appropriate disclaimers were included.

# COMMITTEE ON THE ADMINISTRATIVE OFFICE

## COMMITTEE ACTIVITIES

The Committee on the Administrative Office reported that it was briefed by Director Mecham on legislation affecting the judiciary and on the agency's budget. The Committee also heard reports from senior Administrative Office managers on the agency's 1997 goals and objectives; efforts to improve the judiciary's financial management systems; the J-Net, the judiciary's intranet; the status of a study of the processes by which the Administrative Office obtains advice and feedback; human resource programs, including efforts to improve available information regarding health benefits; and evaluation and assessment activities.

# COMMITTEE ON AUTOMATION AND TECHNOLOGY

## LONG RANGE PLAN FOR AUTOMATION

Pursuant to 28 U.S.C. § 612, the Committee on Automation and Technology recommended approval of a fiscal year 1997 update to the *Long Range Plan for Automation in the Federal Judiciary* with the proviso that approval does not constitute authority for any specific project to proceed outside the automation management process. The Judicial Conference approved the update.

10

*March 11, 1997*

## LIBRARY PROGRAM

In addition to library collections maintained in chambers, federal court libraries exist as circuit headquarters libraries, satellite libraries, and unstaffed libraries. Depending on the needs and sizes of the populations they serve, staffed satellite and unstaffed libraries provide varying levels of services, collections and staffing. On recommendation of the Committee, the Judicial Conference approved functional requirements for satellite and unstaffed libraries, including the requirement that satellite libraries should be sufficiently large to house a satellite library collection as established by the Judicial Conference. The Conference also agreed, on recommendation of the Security, Space and Facilities Committee, to incorporate these functional requirements into the *United States Courts Design Guide* (see *infra*, "*United States Courts Design Guide*," pp. 37-39).

## COMMITTEE ON THE ADMINISTRATION OF THE BANKRUPTCY SYSTEM

### BANKRUPTCY JUDGESHIPS

The Judicial Conference is required by 28 U.S.C. § 152(b)(2) to submit recommendations for new bankruptcy judgeships to the Congress, which establishes the number of such judgeships for each judicial district. Based on the results of its most recent biennial bankruptcy judgeship survey,[1] the Bankruptcy Committee recommended that the Judicial Conference transmit to Congress proposed legislation to create 18 additional bankruptcy judgeships, either permanent or temporary based on the most recent case filing statistics available at the time legislation for the judgeships is sent to Congress. The Judicial Conference agreed with the Committee, and recommended judgeships in the following districts:

---

[1]This survey was conducted on an expedited basis in November 1996 because of a change in the schedule for completing the surveys approved by the Judicial Conference at its September 1996 session (JCUS-SEP 96, p. 50).

11

*Judicial Conference of the United States*

> Northern District of New York (1)
> Eastern District of New York (1)
> Southern District of New York (1)
> District of New Jersey (1)
> Eastern District of Pennsylvania (1)
> Middle District of Pennsylvania (1)
> District of Maryland (2)
> Eastern District of Virginia (1)
> Southern District of Mississippi (1)
> Eastern District of Michigan (1)
> Western District of Tennessee (1)
> Eastern District of California (1)
> Central District of California (4)
> Southern District of Florida (1)

The proposed judgeship in the Southern District of Mississippi would also provide assistance to the Northern District of Mississippi. The Conference also approved and agreed to transmit to Congress proposed legislation either to make the existing temporary bankruptcy judgeship in the District of Delaware permanent or to extend it for an additional five-year period so that the position does not lapse when the first vacancy occurs on or after October 28, 1998, as supported by the caseload and other factors at the time the legislation is to be transmitted.

---

## STATISTICAL REPORTING OF INTERCIRCUIT AND INTRACIRCUIT ASSIGNMENTS

On recommendation of the Bankruptcy Committee, the Judicial Conference approved the collection and tracking of data on intercircuit and intracircuit assignments of bankruptcy judges. To assist in this effort, the Conference authorized the Director of the Administrative Office to make technical corrections, as necessary, to the B102 form (Monthly Report of Trials and Other Activity) and to add a supplemental form designed to collect information on judicial time spent outside of court assisting other districts. Improved statistical reporting may enable the judiciary to demonstrate more effectively to Congress its efforts to use existing judicial resources to meet rising workloads throughout the nation.

March 11, 1997

## REAPPOINTMENT OF BANKRUPTCY JUDGES

Section 303 of the Federal Courts Improvement Act of 1996 authorizes the Judicial Conference to prescribe regulations which provide for the reappointment of incumbent bankruptcy judges that differ from the initial appointment procedure. The Bankruptcy Committee recommended revisions to the regulations governing the selection and appointment of bankruptcy judges, including a new chapter 5, entitled "Reappointment of United States Bankruptcy Judges," that would permit a court of appeals to reappoint an incumbent bankruptcy judge to an additional 14-year term without considering other qualified candidates. The Judicial Conference slightly modified the Committee's recommendation and approved the revisions to the regulations, which are now called the *Regulations of the Judicial Conference of the United States for the Selection, Appointment, and Reappointment of United States Bankruptcy Judges.*

## REVISION OF DOLLAR AMOUNTS IN THE BANKRUPTCY CODE

Under section 104(a) of the Bankruptcy Code, the Judicial Conference is required to "transmit to the Congress and to the President before May 1, 1985 and before May 1 of every sixth year after May 1, 1985, a recommendation for the uniform percentage adjustment of each dollar amount in [title 11] and in section 1930 of title 28." The Bankruptcy Committee determined not to recommend dollar adjustments at this time because some adjustments had been made by Congress when it enacted the Bankruptcy Reform Act of 1994 (Public Law No. 103-394), and because the congressionally established National Bankruptcy Review Commission, which is tasked with studying the bankruptcy system, will provide an opportunity for further review of the dollar amounts. The Judicial Conference approved the Bankruptcy Committee's recommendation that Congress and the President be advised that no uniform percentage adjustment should be made at this time to the dollar amounts contained in the Bankruptcy Code or in 28 U.S.C. §1930.

13

*Judicial Conference of the United States*

# COMMITTEE ON THE BUDGET

## COMMITTEE ACTIVITIES

The Committee reported that it reviewed a presidential proposal to restructure the District of Columbia's finances which included the proposition that the federal government, through the Administrative Office of the U.S. Courts, assume the responsibility for providing funds for the local D.C. court system. While it appeared that the Administrative Office would serve only as a "pass-through" for funding with no management or operational responsibilities, the Committee determined that it was inappropriate for the Judicial Branch to undertake this role, and the issue was presented to the Executive Committee (see *supra*, "Funding for District of Columbia Court System," pp. 6-7).

# COMMITTEE ON CODES OF CONDUCT

## ETHICS REFORM ACT GIFT REGULATIONS

The Committee on Codes of Conduct proposed revision of the Judicial Conference Ethics Reform Act regulations on gifts to clarify that judicial officers and employees may properly accept certain benefits from prospective and future employers under the gift regulations. The Judicial Conference approved the revision, which adds the following language to a new section 5(i) of the regulations and renumbers the existing section 5(i) as 5(j) (new language is in italics):

> § 5. A judicial officer or employee shall not accept a gift from anyone except for --
>
> \*   \*   \*   \*   \*
>
> *(i)(1)   meals, lodgings, transportation, and other benefits customarily provided by a prospective employer in connection with bona fide employment discussions;*

14

*March 11, 1997*

> (2)    *in the case of a judicial officer or employee who has obtained employment to commence after judicial employment ends, reimbursement of relocation and bar-related expenses customarily paid by the employer;*
>
> (3)    *nothing in this subsection alters any other standards or Codes of Conduct adopted by the Judicial Conference of the United States relating to recusal due to conflicts of interest.*

## COMMITTEE ACTIVITIES

The Committee on Codes of Conduct reported that since its last report to the Conference in September 1996, the Committee received 39 new written inquiries and issued 42 written advisory responses. During 1996, the average response time for these requests was 19 days, excluding responses that were held for discussion at Committee meetings. The Chairman received and responded to 25 telephonic inquiries. In addition, individual Committee members responded to 46 inquiries from their colleagues.

# COMMITTEE ON COURT ADMINISTRATION AND CASE MANAGEMENT

## CIVIL JUSTICE REFORM ACT

The Civil Justice Reform Act of 1990 (CJRA) required all 94 federal district courts to implement expense and delay reduction plans for civil litigation. The CJRA established specific principles, guidelines, and techniques for the courts to consider in making their plans, and required the designation of certain pilot, comparison, and demonstration courts to measure the effectiveness of these principles and guidelines. A contract was awarded to the RAND Corporation (RAND) to study the experience of the pilot and comparison courts, and the Federal Judicial Center studied the programs implemented in the demonstration courts.

The CJRA requires the Judicial Conference to submit a report to Congress by June 30, 1997, on the pilot program. The Committee on Court Administration

15

*Judicial Conference of the United States*

and Case Management, which oversees the CJRA program, sought and received input from other Judicial Conference committees and from federal judges and clerks, and drafted a report which, *inter alia*, reviews the independent evaluation conducted by RAND, the evaluation conducted by the Federal Judicial Center, and the experiences of the 94 district courts in implementing their CJRA plans; recommends that the Act's pilot program, *as a package*, not be expanded; and identifies a proposed alternative program consisting of a number of measures based in large part on the CJRA experiment. The Judicial Conference approved the proposed Civil Justice Reform Act report for submission to Congress.[2]

## STAFFING RESOURCES FOR CJRA AND ARBITRATION PROGRAMS

Federal district courts have been experimenting with arbitration (both voluntary and mandatory non-binding programs) for more than a decade. Legislation formally authorizing such experimentation was extended twice and is scheduled to sunset on September 30, 1997 (see 28 U.S.C. §§ 651-658). The Committee on Court Administration and Case Management, determining that there had been sufficient time for experimentation and that courts interested in continuing their arbitration programs or beginning new ones could do so by local rule, made no proposal to extend the legislation.

Staffing resources to support the court-annexed arbitration program have been authorized and allocated to the district courts since the mid-1980's as part of the pilot program. These positions have been used by the courts to manage cases referred to arbitration. Similarly, staffing resources to support implementation and operations under the CJRA were authorized and allocated to the district courts over the last six years. These positions have been used by the courts, for example, to administer alternative dispute resolution (ADR) programs, to provide support for CJRA advisory groups, and to enhance case management. The CJRA is scheduled to sunset on December 1, 1997.

Because of the impending sunset of the CJRA and legislation authorizing the arbitration pilot programs, the Judicial Conference approved a recommendation of the Court Administration and Case Management Committee that (a) the Judicial Resources Committee be directed to consider the development

---

[2]The report will become public at the same time it is submitted to Congress.

16

*March 11, 1997*

of a funding mechanism for addressing ADR staffing resources in the courts; (b) centralized funding for existing CJRA and arbitration positions be continued pending the Judicial Resources Committee's recommendations and subsequent Conference action; and (c) the Judicial Resources Committee be directed to report back to the Judicial Conference on this issue at its March 1998 session.

## SPACE COST CONTAINMENT

In March 1996, the Judicial Conference approved a space cost containment plan (JCUS-MAR 96, p. 35). The Court Administration and Case Management Committee was designated to take the lead in (a) determining what policy on courtroom sharing for active and senior judges should be adopted and whether the impact of any delays resulting from courtroom sharing would adversely affect case processing; and (b) developing criteria for acquiring and releasing space for facilities where there is no judicial officer, visiting courtrooms and chambers where there is a resident judicial officer, and divisional offices.

**Courtroom Sharing.** On recommendation of the Court Administration and Case Management Committee, the Judicial Conference adopted the following policy statement and agreed to encourage courts to take into account the factors set forth below when considering requests to construct additional courtrooms:

Recognizing how essential the availability of a courtroom is to the fulfillment of the judge's responsibility to serve the public by disposing of criminal trials, sentencings, and civil cases in a fair and expeditious manner and presiding over the wide range of activities that take place in courtrooms requiring the presence of a judicial officer, the Judicial Conference adopts the following policy for determining the number of courtrooms needed at a facility:

With regard to district judges, one courtroom should be provided for each active judge. In addition, with regard to senior judges who do not draw caseloads requiring substantial use of courtrooms and to visiting judges, judicial councils should utilize the following factors as well as other appropriate factors in evaluating the number of courtrooms at a facility necessary to permit them to discharge their responsibilities.

17

*Judicial Conference of the United States*

- An assessment of workload in terms of the number and types of cases anticipated to be handled by each such judge;

- The number of years each such judge is likely to be located at the facility;

- An evaluation of the current complement of courtrooms and their projected use in the facility and throughout the district in order to reaffirm whether construction of an additional courtroom is necessary;

- An evaluation of the use of the special proceedings courtroom and any other special purpose courtrooms to provide for more flexible and varied use, such as use for jury trials; and

- An evaluation of the need for a courtroom dedicated to specific use by visiting judges, particularly when courtrooms for projected authorized judgeships are planned in the new or existing facility.

The Judicial Conference also agreed to encourage each circuit judicial council to develop a policy on sharing courtrooms by senior judges when a senior judge does not draw a caseload requiring substantial use of a courtroom.

**Acquiring and Releasing Space.** The Judicial Conference approved a recommendation of the Committee that a two-stage approach be taken in determining whether a non-resident facility should be closed, and adopted the following non-exclusive list of criteria for circuit judicial councils to use in determining whether to establish or maintain a facility without a resident judge:

1.  The circuit councils should first evaluate the following three factors:

    a.   the number of miles from the nearest facility within the district;

    b.   the number of days the facility is used for court-related proceedings; and

    c.   the cost per day of use.

18

*March 11, 1997*

2.    If those factors indicate that a facility should be considered for closure, the council should apply a cost-benefit test using the following criteria to determine whether the facility should remain open or be closed:

    a.    travel and per diem costs for judges and staff, litigants, and witnesses to the nearest alternative facility;

    b.    travel and per diem costs entailed by jurors if the facility is closed;

    c.    travel costs for all others involved in the proceeding (e.g., U.S. marshals, attorneys);

    d.    economic or other benefit the facility has to the community;

    e.    cost of defender services if the facility is closed;

    f.    historic significance of the facility;

    g.    representativeness of the jury pool; and

    h.    use of the facility by a community that would not be served as well if the facility were closed (e.g., Indian reservation, military base, national park).

On recommendation of the Security, Space and Facilities Committee (at the suggestion of the Committee on Court Administration and Case Management), the Judicial Conference approved the biennial filing by the circuit councils of space reduction reports. The Conference also agreed to require the circuit councils, as part of their reports, to assess the need for maintaining any facility that does not have a resident judge (see *infra*, "Space Management Initiatives Plan," pp. 40-41).

**Probation and Pretrial Services Divisional Offices**. After obtaining input from the Criminal Law Committee, the Court Administration and Case Management Committee recommended the endorsement of criteria and a process for consideration by district courts and circuit councils whenever they are considering acquiring or releasing space in probation and pretrial services divisional offices. The Committee also recommended that the Judicial Conference urge all districts to go through the process of applying the cost-benefit

19

criteria whenever a lease is up for renewal or, in government-owned space, every five years. The Judicial Conference approved the Committee's recommendations (see also *infra*, "Opening and Closing Facilities," p. 40).

---

## MISCELLANEOUS FEE SCHEDULES

**Bankruptcy Courts.** Item 15 of the Miscellaneous Fee Schedule for the Bankruptcy Courts provides for a fee of $5.00 per page for the provision of mailing labels. Because of advancements in technology, the information needed for mailing labels is available to the public electronically (for example, through PACER for a fee of $.60 per minute), and most courts no longer provide mailing labels as set forth in the fee schedule. A party without access to an electronic system such as PACER can still receive copies of addresses, printed from the court's automated system, for the copy fee of $.50 per page. Thus, because the fee for providing mailing labels is rarely used and the amount of funds involved is negligible, the Judicial Conference approved the recommendation of the Committee to eliminate Item 15 from the Miscellaneous Fee Schedule for the Bankruptcy Courts. The Conference also agreed to designate Item Number 15 of the Miscellaneous Fee Schedule as "Repealed" so as not to disrupt the enumeration of the schedule, since Public Law No. 100-459 permits fees collected for all services enumerated after Item 18 to be deposited in a special fund for the operation and maintenance of the courts.

**Judicial Panel on Multidistrict Litigation**. At its March 1995 session, the Judicial Conference voted to propose legislation authorizing the establishment of a miscellaneous fee schedule for the Judicial Panel on Multidistrict Litigation (JCUS-MAR 95, p. 15). Such authorization was provided in the Federal Courts Improvement Act of 1996. On recommendation of the Committee, the Judicial Conference approved a miscellaneous fee schedule for the Judicial Panel on Multidistrict Litigation consistent with the other fee schedules.

20

*March 11, 1997*

# COMMITTEE ON CRIMINAL LAW

## VICTIMS' RIGHTS CONSTITUTIONAL AMENDMENT

Several proposals were made in the 104th Congress for a constitutional amendment on victims' rights, and it is anticipated that similar proposals will be made in the 105th Congress. With the concurrence of the Federal-State Jurisdiction Committee, the Committee on Criminal Law recommended that the Judicial Conference take no position on a victims' rights constitutional amendment at this time because no one proposal has emerged in Congress upon which the judiciary can base a position. While lauding the goal of such proposals, the Criminal Law Committee raised concerns about the impact of previous victims' rights proposals on the administration of justice. The Judicial Conference approved the recommendations of the Criminal Law Committee that it (a) take no position on the enactment of a victims' rights constitutional amendment at this time; and (b) authorize the Criminal Law Committee, in consultation with the Federal-State Jurisdiction Committee and the Chair of the Executive Committee, to maintain contact with Congress as it deliberates enactment of a victims' rights constitutional amendment to inform how the amendment may impact the administration and costs of operating the federal courts.

## RISK PREDICTION INDEX

Since 1980, federal probation officers have used a device known as the Risk Prediction Scale-1980 to assist in the assessment of the risk of recidivism posed by offenders being supervised on terms of probation or supervised release. At the request of the Committee on Criminal Law, an updated assessment tool was developed by the Federal Judicial Center. The Committee recommended, and the Judicial Conference approved, the use of the new Risk Prediction Index by probation officers in the case classification process in lieu of the Risk Prediction Scale-1980.

21

*Judicial Conference of the United States*

## FIREARMS REGULATIONS

The Federal Courts Improvement Act of 1996 amended 18 U.S.C. §§ 3603(9) and 3154(13) to provide federal statutory authority for United States probation and pretrial services officers to carry firearms "under such rules and regulations as the Director of the Administrative Office of the United States Courts may prescribe." The Criminal Law Committee proposed *Regulations of the Director of the Administrative Office Concerning Carrying and Using Firearms by United States Probation and Pretrial Services Officers.* In addition, the Committee recommended that the authorized cylinder capacity of the weapons be increased from the standard which had been in use since 1985. At this session, the Judicial Conference modified the Committee's proposal with regard to the firearms and ammunition authorized for use by deleting proposed paragraph 4 of the regulations and inserting in lieu thereof the following new paragraph 4:

> The Director, in consultation with the Committee on Criminal Law of the Judicial Conference, shall periodically determine which firearms and ammunition are authorized for use by probation and pretrial services officers. No unauthorized firearms or ammunition shall be carried or used.

With that revision, the draft regulations of the Criminal Law Committee were approved by the Conference. These regulations will be published in the *National Firearms Training Manual* and the *Guide to Judiciary Policies and Procedures.*

## COMMITTEE ON DEFENDER SERVICES

### DEFENDER ORGANIZATION FUNDING REQUESTS

Under its delegated authority from the Judicial Conference (JCUS-MAR 89, pp. 16-17), the Defender Services Committee approved fiscal year 1997 funding for Federal Public Defender organizations in the amount of $140,759,800 and grants for Community Defender organizations totaling $39,149,200.

22

*March 11, 1997*

## DEATH PENALTY REPRESENTATION

In September 1995, the Judicial Conference approved a *Report on Death Penalty Representation* which included recommendations for procedures to contain the costs of private representation in death penalty habeas corpus proceedings (JCUS-SEP 95, pp. 78-81). To implement those procedures, the Defender Services Committee recommended amending paragraph 6.02 (Compensation of Appointed Counsel in Capital Cases) of the *Guidelines for the Administration of the Criminal Justice Act (CJA Guidelines)* to include a provision encouraging courts to (a) require attorneys to submit and to seek advance approval of litigation budgets in federal capital habeas corpus cases; and (b) employ the case-management techniques used in complex civil litigation to control costs in such cases. The Judicial Conference approved the amendment, which will be published in Volume VII of the *Guide to Judiciary Policies and Procedures*.

The Antiterrorism and Effective Death Penalty Act of 1996 (Public Law No. 104-132) (Antiterrorism Act) contained provisions relating to compensation of counsel and other service providers in capital cases (with respect to those commenced, or in which appeal is perfected, or on or after April 26, 1994), including a limit of $125 on the maximum hourly compensation rate for attorneys appointed in capital cases; a provision that courts "may" as opposed to "shall" authorize investigative, expert, or other services in capital cases where found to be reasonably necessary; a requirement that no *ex parte* request for investigative, expert, or other services in capital cases may be considered "unless a proper showing is made concerning the need for confidentiality"; and a case maximum of $7,500 on the payment of fees and expenses for services other than counsel unless certified as necessary by the court and approved by the chief judge (or designee) of the circuit. On recommendation of the Defender Services Committee, the Judicial Conference approved amendments to the *CJA Guidelines* to implement these provisions of the Antiterrorism Act relating to compensation of counsel and authorization and payment of other service providers in capital cases.

In addition, the Judicial Conference approved a recommendation of the Committee that two statutory provisions (21 U.S.C. § 848(q) and 18 U.S.C. § 3005) as recently amended (Public Law No. 104-132; Public Law No. 103-322) be included in Chapter I of the *CJA Guidelines* for the convenience of judicial officers and attorneys providing representation pursuant to those statutes. The

23

Conference also agreed that the language "and Related Statutes" should be added after the words "Guidelines for the Administration of the Criminal Justice Act (18 U.S.C. § 3006A)" at the appropriate tab.

## DISCLOSURE OF COMPENSATION PAYMENTS

The Antiterrorism Act includes provisions dealing with disclosure of Criminal Justice Act (CJA) payment information. The current Judicial Conference policy regarding release of information pertaining to CJA activities is basically consistent with the Antiterrorism Act disclosure provisions; the Act, in essence, converts the Judicial Conference policy favoring disclosure of CJA payment information into a statutory requirement. The Defender Services Committee recommended, and the Judicial Conference approved, amendments to paragraph 5.01 of the *CJA Guidelines* specifically to implement provisions in the Antiterrorism Act relating to disclosure of payments made to appointed counsel and providers of investigative, expert and other services.

## PANEL ATTORNEY ADMINISTRATION

On request from two districts, the Defender Services Committee agreed to recommend that funding be provided from the Defender Services appropriation to support a two-year pilot project designed to enhance CJA voucher review and panel attorney management, with the caveat that, in light of the availability of other resources for training panel attorneys in substantive criminal law, the pilot project should not duplicate such activities. The Judicial Conference approved the two-year pilot project in the Central District of California and the District of Maryland. Each court will employ an attorney to assist the court in CJA panel administration and case cost analysis, supported by up to $261,000 over the two-year period in the Central District of California and up to $266,000 over the two-year period in the District of Maryland.

*March 11, 1997*

## CASE COMPENSATION MAXIMUMS

On recommendation of the Defender Services Committee, the Judicial Conference agreed to support an amendment to the Criminal Justice Act to provide that compensation of counsel for representation in non-capital habeas corpus cases will be governed by the case limits applicable to felonies, since the collateral representation (which is provided where the interests of justice require) is often as difficult as that provided in directly defending against a felony prosecution. The budgetary impact of this amendment should be insignificant since chief judges of the courts of appeals (or designees) have the authority to approve compensation in excess of the statutory limits in appropriate cases.

## COMMITTEE ON FINANCIAL DISCLOSURE

### COMMITTEE ACTIVITIES

The Committee on Financial Disclosure reported that as of December 31, 1996, it had received 2,983 financial disclosure reports and certifications for the calendar year 1995, including 1,215 reports and certifications from Supreme Court justices, Article III judges and judicial officers of special courts; 336 from bankruptcy judges; 478 from magistrate judges; and 954 from judicial employees.

## COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

### COMMITTEE ACTIVITIES

The Committee on Intercircuit Assignments reported that during the period from July 1, 1996 to December 31, 1996, a total of 88 intercircuit assignments, undertaken by 68 Supreme Court justices and Article III judges, were processed and recommended by the Committee on Intercircuit Assignments and approved by the Chief Justice. Several long-term designations were recommended and approved during calendar year 1996.

25

*Judicial Conference of the United States*

# COMMITTEE ON INTERNATIONAL JUDICIAL RELATIONS

## COMMITTEE ACTIVITIES

The Committee on International Judicial Relations reported that its members had participated in rule of law programs involving Hong Kong and Thailand, the People's Republic of China, the Russian Federation, countries of Eastern and Western Europe, countries of Latin America, and Haiti.

# COMMITTEE ON THE JUDICIAL BRANCH

## COMMITTEE ACTIVITIES

The Committee on the Judicial Branch reported that a major item on its agenda is judicial compensation. The Committee determined that the mechanism for annually adjusting judicial compensation established by the Ethics Reform Act of 1989 is broken, and that the repeated denial of judges' pay adjustments is a threat to judicial independence. The Committee recommended the pursuit of legislation which would accomplish the following objectives: (a) give judges a "catch-up" pay adjustment; (b) sever the linkage between judicial, congressional, and Executive Schedule compensation and substitute linking judges' salary adjustments to the mechanism for adjusting General Schedule pay rates; and (c) repeal section 140 of Public Law No. 97-92. By mail ballot concluded on January 27, 1997, the Judicial Conference unanimously endorsed the Committee's recommendation (see *infra*, "Mail Ballots," p. 41).

# COMMITTEE ON JUDICIAL RESOURCES

## ARTICLE III JUDGESHIP NEEDS

**Courts of Appeals.** In September 1996, the Judicial Conference approved a recommendation from the Judicial Resources Committee to adopt a revised process for reviewing the judgeship needs of the courts of appeals (JCUS-SEP 96,

26

pp. 60-61). In response to that action, the Judicial Resources Committee and its Subcommittee on Judicial Statistics initiated an immediate survey of judgeship needs for the courts of appeals, since the last survey was outdated. Based on the results of the survey and utilizing the approved process, the Committee recommended that the Judicial Conference authorize the Administrative Office to transmit a request to Congress for an additional 12 permanent and five temporary circuit judgeships (in lieu of the previous request for 20 additional temporary judgeships). The Judicial Conference approved the recommendation, as follows:

| | |
|---|---|
| First Circuit | 1 Permanent |
| Second Circuit | 2 Permanent |
| Fifth Circuit | 1 Permanent |
| Sixth Circuit | 2 Permanent and 2 Temporary |
| Ninth Circuit | 6 Permanent and 3 Temporary |

**District Courts.** On recommendation of the Committee, which reviewed three requests for additional district judgeships utilizing the applicable weighted caseload formula and considering any special factors, the Judicial Conference authorized the Administrative Office to transmit a request to Congress for one additional judgeship for the Northern District of Texas, one additional judgeship for the Southern District of Texas, and one additional judgeship for the Eastern District of Virginia. This is in addition to the 33 district judgeships approved by the Conference in September 1996 (JCUS-SEP 96, pp. 59-60).

**District Judgeship Needs Survey.** In March 1996, the Judicial Conference approved a recommendation from the Judicial Resources Committee to include in biennial district judgeship surveys a review of courts where it may be appropriate to recommend eliminating judgeships or leaving a vacant judgeship unfilled (JCUS-MAR 96, p. 24). The Committee circulated for comment a proposed process for such a review and revised the process to incorporate suggestions of the judicial councils. The Judicial Conference approved the revised process recommended by the Committee to be incorporated into the routine biennial surveys of judgeship needs to take into account the need to eliminate judgeships.

**Temporary Judgeships.** Over the last several years, legislation establishing temporary judgeships has varied in the method for calculating when those judgeships expired. The most recent provision, enacted in 1996, amended

27

the Federal Judgeship Act of 1990 (Public Law No. 101-650) to allow temporary judgeships created in 1990 to exist until at least the first vacancy occurring five years after the confirmation of the judges named to fill the temporary positions. However, logistical problems associated with the temporary positions remain because Congress does not act on judgeship issues in a systematic manner, and since 1968, has acted on average only once every six to seven years. Since this cycle is beyond the five-year period for temporary judgeships, the judiciary has occasionally lost judgeships that are still necessary. On recommendation of the Judicial Resources Committee, the Judicial Conference agreed to authorize the Administrative Office to include in future Article III district and circuit judgeship proposals submitted for congressional consideration a seven-year minimum provision for temporary judgeships.

## CONGRESSIONAL ACCOUNTABILITY ACT

In September 1996, the Judicial Conference approved a draft of the judiciary report required by the Congressional Accountability Act of 1995 (Public Law No. 104-1) (JCUS-SEP 96, pp. 63-64), and the report was submitted to Congress in December 1996. In keeping with the final report, the Judicial Resources Committee drafted a new model employment dispute resolution plan and circulated the plan widely for comments. After numerous revisions based on comments received, the Committee recommended, and the Conference approved a model employment dispute resolution plan.

## COURT REPORTERS

Since September 1983, it has been the policy of the Judicial Conference regarding retention of official court reporters when district judges elect to use electronic sound recording (ESR) systems with a dedicated operator rather than official court reporters, to allow any necessary reduction in personnel to be accomplished through attrition (JCUS-SEP 83, p. 48). The Judicial Conference approved a Judicial Resources Committee recommendation to limit to one year the amount of time courts may retain over-strength reporters when judges change their election to ESR systems. The revised policy reads as follows:

*March 11, 1997*

In the event the need for shorthand, stenotype, or other reporter services should diminish by reason of the utilization of an electronic sound recording system, necessitating a reduction in court reporter staffing, funding for the court reporter position will be discontinued one year from the date of the election to the electronic sound recording system.

# COMMITTEE ON THE ADMINISTRATION OF THE MAGISTRATE JUDGES SYSTEM

## BACKGROUND INVESTIGATIONS

Section 4.02 of the *Regulations of the Judicial Conference of the United States Establishing Standards and Procedures for the Appointment and Reappointment of United States Magistrate Judges* requires background investigations of nominees to magistrate judge positions by the Federal Bureau of Investigation (FBI) prior to appointment. Nominees for full-time magistrate judge positions are required to undergo full-field background investigations with a 15-year scope and Internal Revenue Service (IRS) tax checks, and nominees for part-time magistrate judge positions are required to undergo only FBI name checks and IRS tax checks. On recommendation of the Committee on the Administration of the Magistrate Judges System, which determined that it is just as important to the federal judiciary for part-time magistrate judges to be subject to extensive FBI background investigations as full-time magistrate judges, the Judicial Conference amended § 4.02 of the regulations to require any new appointee to a part-time magistrate judge position to undergo an FBI full-field background investigation, with a 15-year scope, prior to appointment. In circumstances involving high turnover and recruitment problems due to isolated locations of certain part-time magistrate judge positions, the Conference agreed to permit the Committee to grant waivers to the requirement for full-field background investigations by the FBI, on an individual case basis.

## CHANGES IN MAGISTRATE JUDGE POSITIONS

After consideration of the report of the Committee and the recommendations of the Director of the Administrative Office, the district courts,

29

*Judicial Conference of the United States*

and the judicial councils of the circuits, the Judicial Conference approved the following changes in salaries and arrangements for full-time and part-time magistrate judge positions. Changes with a budgetary impact are to be effective when appropriated funds are available.

**FIRST CIRCUIT**

District of Rhode Island

Made no change in the number or location of the magistrate judge positions in the district.

**SECOND CIRCUIT**

Northern District of New York

1.    Authorized an additional full-time magistrate judge position at Syracuse, Watertown, or Binghamton;

2.    Increased the salary of the part-time magistrate judge position at Plattsburgh or Champlain from Level 6 ($10,640 per annum) to Level 5 ($20,640 per annum); and

3.    Made no change in the number or location of the other magistrate judge positions in the district.

**THIRD CIRCUIT**

Western District of Pennsylvania

1.    Increased the salary of the part-time magistrate judge position at Johnstown from Level 2 ($51,600 per annum) to Level 1 ($56,760 per annum);

2.    Increased the salary of the part-time magistrate judge position at Erie from Level 2 ($51,600 per annum) to Level 1 ($56,760 per annum); and

30

*March 11, 1997*

3.    Made no change in the number, location, or arrangements of the other magistrate judge positions in the district.

**FOURTH CIRCUIT**

Western District of North Carolina

Made no change in the number, locations, or arrangements of the magistrate judge positions in the district.

Northern District of West Virginia

1.    Increased the salary of the part-time magistrate judge position at Morgantown from Level 5 ($20,640 per annum) to Level 4 ($30,960 per annum); and

2.    Made no change in the number, locations, salaries, or arrangements of the other magistrate judge positions in the district.

**SIXTH CIRCUIT**

Middle District of Tennessee

1.    Authorized an additional full-time magistrate judge position at Nashville; and

2.    Made no change in the number, location, or arrangements of the other magistrate judge positions in the district.

**EIGHTH CIRCUIT**

District of Minnesota and District of South Dakota

Authorized the part-time magistrate judge position at Sioux Falls in the District of South Dakota to serve in the adjoining District of Minnesota in accordance with 28 U.S.C. § 631(a).

31

*Judicial Conference of the United States*

Eastern District of Missouri

Made no change in the number, locations, or arrangements of the magistrate judge positions in the district.

**NINTH CIRCUIT**

District of Arizona

1.  Authorized an additional full-time magistrate judge position at Tucson;

2.  Increased the salary of the part-time magistrate judge position at Yuma from Level 4 ($30,960 per annum) to Level 2 ($51,600 per annum); and

3.  Made no change in the locations or arrangements of the other magistrate judge positions in the district.

Southern District of California

Made no change in the number, locations, salaries, or arrangements of the magistrate judge positions in the district.

District of Oregon

1.  Authorized an additional full-time magistrate judge position at Portland;

2.  Discontinued the part-time magistrate judge position at Bend upon the appointment of a magistrate judge to fill the newly-authorized position at Portland; and

3.  Made no change in the number, locations, salaries, or arrangements of the other magistrate judge positions in the district.

Western District of Washington

1.  Increased the salary of the part-time magistrate judge position at Bellingham from Level 7 ($5,160 per annum) to Level 5 ($20,640 per annum); and

32

*March 11, 1997*

2.    Increased the salary of the part-time magistrate judge position at Vancouver from Level 7 ($5,160 per annum) to Level 6 ($10,320 per annum).

### TENTH CIRCUIT

District of Kansas

1.    Authorized a new part-time magistrate judge position at Topeka at Salary Level 2 ($51,600 per annum);

2.    Upon the appointment of a part-time magistrate judge at Topeka, discontinued the part-time magistrate judge position at Leavenworth; and

3.    Made no change in the number or locations of the other magistrate judge positions in the district.

### ELEVENTH CIRCUIT

Northern District of Alabama

1.    Authorized an additional full-time magistrate judge position at Birmingham; and

2.    Made no change in the number, locations, or arrangements of the other magistrate judge positions in the district.

Middle District of Florida

1.    Authorized an additional full-time magistrate judge position at Orlando;

2.    Authorized an additional full-time magistrate judge position at Tampa; and

3.    Made no change in the number, locations, or arrangements of the other magistrate judge positions in the district.

33

*Judicial Conference of the United States*

# COMMITTEE TO REVIEW CIRCUIT COUNCIL CONDUCT AND DISABILITY ORDERS

## PROCESSING OF PETITIONS FOR REVIEW

The *Rules of the Judicial Conference of the United States for the Processing of Petitions for Review of Circuit Council Orders under the Judicial Conduct and Disability Act (Rules for the Processing of Petitions for Review)* govern the handling by the Committee to Review Circuit Council Conduct and Disability Orders of petitions for Judicial Conference review filed pursuant to 28 U.S.C. § 372(c)(10). These rules do not impose any time limit upon the filing of a petition for review with the Conference. Because of the potential problems created by the absence of a clear time limit for filing a petition for review, the Committee recommended, and the Judicial Conference approved, an amendment to Rule 6 of the *Rules for the Processing of Petitions for Review* to establish a 60-day time limit for the filing of a petition for Conference review of final action of a circuit council, with an additional 30 days for the filing of cross-petitions.

As a result of the above amendment, two conforming changes to the Illustrative Rules Governing Complaints of Judicial Misconduct and Disability are necessary. On recommendation of the Committee, the Judicial Conference approved (a) the deletion of Illustrative Rule 17(d) (Special rule for decisions of judicial council) and the renumbering of the other subsections of Rule 17; and (b) the deletion of the last sentence of Illustrative Rule 18(e) (Judge under investigation) to conform to the amended Judicial Conference Rule 6.

# COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

## FEDERAL RULES OF CIVIL PROCEDURE

The Committee on Rules of Practice and Procedures submitted to the Judicial Conference proposed amendments to Federal Rule of Civil Procedure 73 (Magistrate Judges; Trial by Consent and Appeal Options) and proposed amendments abrogating Rules 74 (Method of Appeal From Magistrate Judge to District Judge Under Title 28, U.S.C. § 636(c) and Rule 73(d)), 75 (Proceedings

34

March 11, 1997

on Appeal From Magistrate Judge to District Judge Under Rule 73(d)), and 76 (Judgment of the District Judge on the Appeal under Rule 73(d) and Costs), and revisions of Forms 33 and 34. The proposed amendments were accompanied by Committee notes explaining their purpose and intent. These changes were proposed to conform to the provisions in the Federal Courts Improvement Act of 1996 which eliminate the alternative appeal to a district judge from a decision entered by a magistrate judge under 28 U.S.C. § 636(c). The Judicial Conference approved the amendments for transmission to the Supreme Court for its consideration, with the recommendation that they be approved by the Court and transmitted to Congress in accordance with the law.

## FEDERAL RULES OF CRIMINAL PROCEDURE

The Committee on Rules of Practice and Procedure submitted to the Judicial Conference proposed amendments to Criminal Rule 58 (Procedure for Misdemeanors and Other Petty Offenses) together with Committee notes explaining their purpose and intent. The proposed amendments conform with the provisions in the Federal Courts Improvement Act which modify the procedures governing the consent of a defendant to be tried by a magistrate judge. The Conference approved the amendments and authorized their transmittal to the Supreme Court for its consideration with the recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

## FEDERAL RULES OF EVIDENCE

Under 42 U.S.C. § 13942(c), as amended in 1996, the Judicial Conference is required to report to Congress on whether the Federal Rules of Evidence should be amended, and if so how, "to guarantee that the confidentiality of communications between sexual assault victims and their therapists or trained counselors will be adequately protected in Federal court proceedings." The Committee on Rules of Practice and Procedure prepared a report to Congress, which explains that no amendment is necessary to guarantee the fair and adequate protection of the confidentiality of these communications in federal court proceedings. The Judicial Conference approved the proposed report, which concludes that it is not advisable to amend the Evidence Rules to include a special privilege for confidential communications between sexual assault victims and

35

their counselors or therapists, for transmission to Congress in accordance with the law.

# COMMITTEE ON SECURITY, SPACE AND FACILITIES

## COURTROOM SHARING AND MODEL FOR COURTROOM PLANNING

At this session, the Judicial Conference approved factors recommended by the Court Administration and Case Management Committee that encourage courts and circuit judicial councils to consider the number of courtrooms to be constructed in new and existing facilities for senior judges not drawing caseloads requiring substantial use of courtrooms and for visiting judges (see *supra*, "Space Cost Containment," pp. 17-20). On recommendation of the Security, Space and Facilities Committee, the Judicial Conference agreed to incorporate in the *United States Courts Design Guide (Design Guide)* the factors with commentary.

The Judicial Conference approved a recommendation of the Security, Space and Facilities Committee that it endorse the use of an automated planning model to assist courts and councils in calculating courtroom requirements in courthouse facilities. The Conference also approved the following specific planning assumptions for making projections of courtroom requirements. These assumptions may be modified by courts and judicial councils based upon actual circumstances, so that individual court needs can be considered when making the projections:

a.     If a senior judge will be provided with a courtroom, it will be occupied by the judge for ten years after taking senior status;

b.     It will take three years for a new judgeship to be established and for the judge to begin work once a court's caseload warrants an additional judgeship;

c.     A replacement judge will begin working two years after the judge being replaced takes senior status; and

d.     Active judges will take senior status in the year they are eligible.

36

*March 11, 1997*

The Conference agreed to incorporate these factors and planning assumptions in the *United States Courts Design Guide*.

## UNITED STATES COURTS DESIGN GUIDE

After a comprehensive review of the *United States Courts Design Guide*, including the solicitation of comments from individuals in the private sector, the courts, and the General Services Administration (GSA), the Committee on Security, Space and Facilities determined to recommend modifications to the *Design Guide*. Among the proposed revisions was the inclusion of policy statements in the *Design Guide* to assist in its use by a wide range of individuals, and to ensure that Congress and others involved with making public policy decisions about the construction of federal buildings are fully aware of the rationale for certain space standards. On recommendation of the Committee, the Judicial Conference also approved revisions to the *Design Guide* that:

a.      emphasize the important role the project budget, long-term durability, and maintenance costs play in determining the level and type of interior finishes in new courthouses and in renovation projects, and add language that precludes the use of exotic hardwoods;

b.      add a new Chapter 2 on general programming and budgetary considerations;

c.      incorporate functional requirements recommended by the Committee on Automation and Technology and approved by the Conference for use by courts and circuit judicial councils when contemplating construction of satellite and unstaffed libraries (see *supra*, "Library Program," p. 11), and also require specific approval by the circuit council of space associated with circuit headquarters, satellite, and unstaffed libraries;

d.      reduce the sizes of chambers suites when chambers library collections are shared between or among judicial officers, and incorporate designs that reduce chambers lawbook costs and do not increase rental costs, as optional design configurations to be considered for new construction and remodeled space;

37

e.    define in more specific terms the amount of space needed to move from one space to another (i.e., circulation space), and prohibit design architects and court staff from adding spaces not originally contemplated in design programs, including spaces that increase floor size or building volume;

f.    delineate in more specific terms staff office sizes using benchmarks from the Court Personnel System;

g.    encourage the use of, and reaffirm the need for, shared use of space common to all court offices, such as conference and training rooms and staff lavatories, and provide specific standards on the size and number of these facilities;

h.    increase the size of magistrate judges' courtrooms to 1,800 square feet and ceiling height to 16 feet;

i.    encourage sharing of district court courtrooms for large, complex bankruptcy proceedings but permit, with specific approval of the circuit judicial council, one 2,400 square foot courtroom for large, complex bankruptcy proceedings in bankruptcy facilities; and

j.    take no position on locating courtrooms and chambers on separate floors, but include this design configuration as an option available to courts wishing to incorporate it into construction projects.

The Conference agreed that changes to the *Design Guide* will be implemented effective with any project, the design of which begins on or after April 1, 1997. Any design which already has commenced could be amended provided no additional design fees or rental costs will result from the changes. Further, the costs of any changes incorporated into the designs of projects whose design appropriation already has been enacted will be absorbed from within the design budget if the design has not yet commenced. The proposed construction budget for these projects will not be increased as a result of incorporating these changes.

The Conference also prohibited any action taken by a court or circuit judicial council that would lead to extravagance in courthouse construction or renovation; at the same time, the Conference recognized that a pragmatic approach to design ensures that courthouses constructed or renovated represent

38

long-term value.  In addition, the Conference endorsed transmission to the Congress of documentation for any departures from the space standards described in the *Design Guide* approved by the circuit judicial councils.

## FIVE-YEAR COURTHOUSE PROJECT PLAN

The first five-year plan of courthouse construction projects was approved by the Judicial Conference in March 1995 (JCUS-MAR 95, pp. 31-32).  The judiciary was urged by the Congress and GSA to list the courthouse projects in priority order, and in March 1996, the Conference approved criteria for prioritizing projects (JCUS-MAR 96, p. 36).  At this session, the Conference approved an updated five-year plan for the fiscal years 1998 to 2002 as recommended by the Committee on Security, Space and Facilities.  In addition, the Conference agreed to include, as recommended by the General Accounting Office, a brief narrative description of each project's scope, and a description of how the criteria used to rank courthouse construction projects were applied to each project.

## RELEASE OF COURT FACILITIES

Last year, upon review by courts and circuit judicial councils of their space assignments -- a review prompted by the Judicial Conference-approved Space Management Initiatives in the Federal Courts Plan (see JCUS-MAR 96, p. 35), six locations without full-time resident judges were identified for release to GSA, for a savings to the judiciary of about $400,000 in annual space rental costs.  On recommendation of the Security, Space and Facilities Committee, the Judicial Conference approved for release court facilities at five additional locations identified by the courts and circuit councils, as follows, subject to the ability of the court to obtain space at each location on an as-needed basis should it continue to require accommodations at that location:  Clarksdale, Mississippi; Joplin, Missouri; St. Joseph, Missouri; Ardmore, Oklahoma; and Guthrie, Oklahoma.

39

*Judicial Conference of the United States*

## OPENING AND CLOSING FACILITIES

At this session, the Judicial Conference approved, on recommendation of the Court Administration and Case Management Committee, a two-stage process for evaluating the need for non-resident visiting judge facilities and criteria for acquiring and releasing space in probation and pretrial services offices (see *supra*, "Space Cost Containment," pp. 17-20). To supplement these processes, the Security, Space and Facilities Committee recommended, and the Judicial Conference agreed, to require a report addressing the criteria approved by the Judicial Conference, or circuit council-specific criteria, to accompany any space request for a new facility without a judicial officer in permanent residence or for a new probation or pretrial services office.

## USE OF COURT FACILITIES BY STATE AND LOCAL GOVERNMENTS

The Judicial Conference approved a recommendation of the Security, Space and Facilities Committee that, as a cost-savings measure, it strongly encourage courts to enter into shared facilities arrangements with state and local governments, or other entities. The Conference agreed to direct the Administrative Office to develop instructions and procedures for use by courts wishing to enter into such arrangements and to provide financial incentives to courts consummating agreements with state and local governments or other entities, subject to funding availability.

## SPACE MANAGEMENT INITIATIVES PLAN

Initially, the Space Management Initiatives in the Federal Courts Plan called for square footage and dollar allotments to be provided to each circuit judicial council. Because personnel staffing and costs are now projected to increase at a greater rate than was contemplated when the space rental restrictions were first considered by the Conference, it appears that the development of space allotments is not financially feasible, and the Committee recommended that the Plan be amended. The Committee further recommended that the November 1995 "Interim Guidelines for Acquisition of Space and Funding of Tenant Alterations," issued by the Administrative Office, should be used to limit future space growth,

*March 11, 1997*

and that space assignments should be reviewed periodically with a view toward controlling costs. The Judicial Conference approved the recommendations of the Security, Space and Facilities Committee, as follows:

a. Amended the Space Management Initiatives in the Federal Courts Plan to delete the requirement that the AO provide allotments of square footage and space funding caps to the judicial councils, and add language providing that mechanisms for reducing space costs will be developed for use when needed if funding levels in annual financial plans do not support the priorities established by the Executive Committee;

b. Agreed to require space reduction reports (evaluations of current space holdings to determine if space can be used more effectively or released to the General Services Administration) to be submitted by circuit councils on a biennial basis;

c. Agreed to require that space benchmarks, once developed, be used by judicial councils when considering space requests. This action will ensure that courts and circuit councils examine and evaluate space requests using the *Design Guide* and other space analytical tools, including national space utilization averages, in making decisions to acquire space; and

d. Endorsed continued use by the AO until further notice of the November 1995 "Interim Guidelines for Space Acquisition and Tenant Alterations Funding" to limit future space growth.

## MAIL BALLOTS

The Judicial Conference completed two mail ballots since its last session. On November 18, 1996, the Conference concluded a ballot approving a report on the "optimal utilization of judicial resources" and authorized the report's transmittal to Congress (see *supra*, "Optimal Utilization of Judicial Resources," pp. 7-8). By mail ballot concluded on January 27, 1997, the Conference unanimously endorsed a Judicial Branch Committee proposal to seek legislation on judicial compensation (see *supra*, "Committee Activities," p. 26).

41

*Judicial Conference of the United States*

## FUNDING

All of the foregoing recommendations which require the expenditure of funds for implementation were approved by the Judicial Conference subject to the availability of funds, and subject to whatever priorities the Conference might establish for the use of available resources.

## RELEASE OF CONFERENCE ACTION

Except as otherwise specified, the Conference authorized the immediate release of matters considered by this session where necessary for legislative or administrative action.

Chief Justice of the United States
Presiding

42

*March 11, 1997*

## INDEX

**Administrative Office, Committee on the**, 10

**Administrative Office of the U. S. Courts**
    bankruptcy data collection, 12
    District of Columbia court system funding, 6-7, 14
    firearms regulations, 22
    magistrate judge positions, 29
    sharing court facilities, instructions and procedures, 40
    space acquisition and tenant alterations guidelines, 40-41
    temporary Article III judgeships proposal, 27-28

**Alternative dispute resolution**, 16-17

**Antiterrorism and Effective Death Penalty**
    **Act of 1966**, 23-24, 24

**Appropriations**
    Court Security account, 9
    commission to study boundaries of circuits, 9
    defender organizations funding, 22
    Defender Services account, 24
    fee account, 9

**Arbitration programs**
    staffing resources, 16-17

**Arnold, Richard S.**, 5-6

**Attorney General of the United States**, 8

**Automation**
    computer-assisted legal research, 10
    J-Net, 10
    *Long Range Plan for Automation in the Federal Judiciary,* 10

**Automation and Technology, Committee on,** 10, 10-11, 37

43

*Judicial Conference of the United States*

**Bankruptcy judges** (see judges, bankruptcy)

**Bankruptcy Reform Act of 1994**, 13

**Bankruptcy system**
> code, dollar amounts adjustment, 13
> courtroom for complex proceedings, 38
> fees, miscellaneous, 20
> judgeships, additional, 11-12
> National Bankruptcy Review Commission, 13
> statistical reporting, 12

**Bankruptcy System, Committee on the Administration of the**, 9, 10, 11-13

**Biennial judgeship needs surveys** (see judgeships, Article III; judgeships, bankruptcy)

**Budget, Committee on the**, 6-7, 14

**Carnes, Julie**, 5

**Chambers**
> location, 38
> size, 37

**Chief judges, circuit**, 23, 25

**Circuit judges** (see judges, circuit)

**Circuit judicial councils**
> conduct and disability orders, 34
> courthouse construction and renovation, 37-39
> courtroom planning model, 36-37

44

*March 11, 1997*

Circuit judicial councils (continued)
 courtroom sharing, 18, 36-37
 courtrooms for complex bankruptcy proceedings, 38
 judgeship needs survey, district, 27
 magistrate judge positions, 29
 opening and closing facilities, 40
 release of court facilities, 39, 40
 space acquisition and release, 18-19, 19-20, 40
 space for libraries, 37
 space management initiatives plan, 19, 40-41
 space reduction reports, biennial, 19, 40

**Circuit libraries** (see libraries)

**Civil Justice Reform Act of 1990 (CJRA)**, 15-16
 staffing resources, 16-17

**Civil rules** (see rules of practice and procedure)

**Codes of conduct**
 Ethics Reform Act gift regulations, 14-15

**Codes of Conduct, Committee on**, 14-15

**Commission to study the structure and alignment of the courts of appeals**, 9

**Community defender organizations** (see defender services)

**Compensation**
 death penalty, services other than counsel, 23
 death penalty representation, 23
 disclosure of Criminal Justice Act payments, 24
 judicial, 26, 41
 Criminal Justice Act panel attorney, 8
 non-capital habeas corpus representation, 25

**Computer-assisted legal research**, 10

45

*Judicial Conference of the United States*

**Conduct and disability, judicial**
Illustrative Rules Governing Complaints, 34
Rules for Processing of Petitions for Review, 34

**Conduct and Disability Orders, Committee to Review Circuit Council**, 34

**Confidentiality, sexual assault victims and therapists**, 35

**Congressional Accountability Act of 1995**
model employment dispute resolution plan, 28

**Congress**
bankruptcy code dollar amounts adjustment, 13
circuit boundaries study commission, 9
Civil Justice Reform Act, 15-16
confidentiality, sexual assault victims and therapists, 35-36
Congressional Accountability Act of 1995 report, 28
Criminal Justice Act, panel attorney compensation, 8
District of Columbia court system funding, 6-7, 14
federal building construction, 37
fee account, 9
five-year courthouse construction plan, 39
judgeships, Article III, 26-27
judgeships, bankruptcy, 11-12
judgeships, temporary, 27-28
judicial compensation, linkage with legislative
        and executive branches, 26
judicial resources, utilization, 7-8, 12, 41
rules of practice and procedure amendments, 34-36
victims' rights, constitutional amendment, 21

***Constitution of the United States***
amendment, 21

**Court administration**
Civil Justice Reform Act, 15
miscellaneous fee schedules, 20

46

*March 11, 1997*

**Court Administration and Case Management, Committee on**, 15-20

**Court of Appeals of the District of Columbia**, 6-7, 14

**Court Personnel System**, 38

**Court reporters**, 28-29

**Courthouses** (see space and facilities)

**Courtrooms**
     bankruptcy, complex proceedings, 38
     chambers on separate floor, 38
     planning model, 36-37
     senior judges sharing, 17-18, 36-37

**Courts of appeals**
     structure and alignment study commission, 9

**Criminal Justice Act (CJA)** (see also defender services)
     comprehensive study, 8
     death penalty representation, 23-24
     disclosure of compensation payments, 24
     guidelines, 23-24, 24
     non-capital habeas corpus representation, 25
     panel attorney administration, pilot program, 24
     panel attorney compensation rate, 8
     voucher review, 24

**Criminal law** (see also probation and pretrial services system)
     drug testing, pretrial, 8
     firearms and ammunition regulations, 22
     risk prediction index, 21
     victims' rights, 21

**Criminal Law, Committee on**, 6, 19, 21-22

**Criminal rules** (see rules of practice and procedure)

47

*Judicial Conference of the United States*

**Defender services** (see also Criminal Justice Act)
case compensation maximums, 25
community defender organizations, funding, 22
death penalty representation, 23-24
disclosure of CJA payments, 24
federal public defender organizations, funding, 22
fees for services other than counsel, 23
non-capital habeas corpus representation, 24
panel attorney administration, pilot program, 24
panel attorney compensation rate, 8

**Defender Services, Committee on**, 8, 22-25

**Department of Justice**
Attorney General, 8
Operation Drug TEST, 8
United States trustee program, 9

*Design Guide* (see *United States Courts Design Guide*)

**District courts** (see also bankruptcy system; magistrate judges system; probation and pretrial services system)
court reporters, 28-29
courtroom sharing, 17-18, 36-37
courtrooms for complex bankruptcy proceedings, 38
drug testing, pretrial, 8
electronic sound recording, 28-29
judgeship needs survey, 27
judgeships, additional, 27
judgeships, temporary, 27-28
magistrate judge positions, 29-33
magistrate judges, background investigations, 29
space, acquiring and releasing, 18-20, 40

**District judges** (see judges, district)

**District of Columbia court system funding**, 6-7, 14

**Drug testing, pretrial**, 8

48

*March 11, 1997*

**Electronic sound recording (ESR)**, 28-29

**Employment dispute resolution model plan**, 28

**Ethics Reform Act of 1989**, 14-15, 26

**Executive branch**
    Attorney General, 8
    compensation, linkage with judiciary, 26
    President of the United States, 4, 6-7, 13

**Executive Committee**, 4-10, 21, 41

**Evidence rules** (see rules of practice and procedure)

**Federal Bureau of Investigation**, 29

**Federal Courts Improvement Act of 1996**, 4, 13, 20, 22, 34-35

**Federal Judgeship Act of 1990**, 27-28

**Federal Judicial Center**
    bankruptcy *in forma pauperis* pilot, 10
    Civil Justice Reform Act, 15-16
    election to the board, 4
    risk prediction index, 21
    sentencing program, 9

**Federal public defender organizations** (see defender services)

**Federal rules** (see rules of practice and procedure)

**Federal-State Jurisdiction, Committee on**, 6, 21

**Fees**
    account, 9
    bankruptcy miscellaneous, 20
    Judicial Panel on Multidistrict Litigation, 20
    miscellaneous schedules, 20

*Judicial Conference of the United States*

**Financial Disclosure, Committee on**, 25

**Financial disclosure reports**, 25

**Firearms regulations**, 22

**General Accounting Office**, 39

**General Services Administration**, 37, 39, 41

***Guide to Judiciary Policies and Procedures***
     Criminal Justice Act guidelines, 23
     firearms and ammunition regulations, 22
     illegal drugs in the workplace, 9

***Guidelines for the Administration of the Criminal Justice Act***, 23-24, 24

**Habeas corpus**
     federal capital cases, 23-24
     non-capital cases, 25

**Illustrative Rules Governing Complaints of Judicial Misconduct and Disability**, 34

**Intercircuit and intracircuit assignments**
     bankruptcy judges, statistics, 12

**Intercircuit Assignments, Committee on**, 25

***Interim Guidelines for Acquisition of Space and Funding Tenant Alterations***, 40-41

**Internal Revenue Service**, 29

**International Judicial Relations, Committee on**, 26

50

*March 11, 1997*

**Judges, Article III** (see also judges, circuit; judges, district; judges, senior)
>   chambers, 37, 38
>   code of conduct gift regulations, 14-15
>   compensation, 26, 41
>   courtroom sharing, 17-18, 36
>   financial disclosure reports, 25
>   intercircuit assignments, 25
>   subsistence rates, 9
>   visiting judge facilities, 36, 40

**Judges, bankruptcy** (see also bankruptcy system)
>   code of conduct gift regulations, 14-15
>   financial disclosure reports, 25
>   intercircuit and intracircuit assignments data, 12
>   reappointment regulations, 13

**Judges, circuit** (see also judges, Article III; judges, senior)
>   chief, Criminal Justice Act compensation, 23, 25

**Judges, district** (see also judges, Article III; judges, senior)
>   court reporters, 28-29
>   electronic sound recording, 28-29

**Judges, magistrate** (see also magistrate judges system)
>   background investigations, 29
>   code of conduct gift regulations, 14-15
>   courtroom size, 38
>   financial disclosure reports, 25

**Judges, senior** (see also judges, Article III)
>   courtrooms, 17-18, 36-37

**Judgeships, Article III**
>   additional, 26-28
>   needs survey process, district, 27
>   needs surveys, 26-28
>   temporary, 27-28
>   vacancies, law clerk assistance, 9

51

*Judicial Conference of the United States*

**Judgeships, bankruptcy**
    additional, 11-12

**Judicial branch**
    Congressional Accountability Act, 28
    drug policy, 9
    judicial compensation, 26, 41

**Judicial Branch, Committee on the**, 9, 26, 41

**Judicial Conduct and Disability Act**, 34
    processing of petitions for review, 34

**Judicial Conference of the United States**
    federal defender program report, 8
    funding of actions, 42
    release of actions, 42
    resolution for former committee chair, 5-6

**Judicial councils of the circuits** (see circuit judicial councils)

**Judicial independence**, 26

**Judicial Panel on Multidistrict Litigation**, 20

**Judicial resources, utilization**, 7-8, 12, 41

**Judicial Resources, Committee on**, 9, 26-29
    Subcommittee on Judicial Statistics, 26-27

**Law clerks**
    courts with judgeship vacancies, 9
    relocation allowance, 9

**Legislation**
    commission to study circuit boundaries, 9
    victims' rights constitutional amendment, 21

*March 11, 1997*

**Libraries**
computer-assisted legal research, 10
functional requirements, 11, 37
satellite and unstaffed, 11, 37

*Long Range Plan for Automation in the Federal Judiciary,* 10

**Long range planning**:
automation, 10
model for courtroom planning, 36-37

**Magistrate judges** (see judges, magistrate)

**Magistrate judges system**
courtroom size, 38

**Magistrate Judges System, Committee on the Administration of the,** 29-33

**Mail ballots,** 7-8, 26, 41

**Mazzone, A. David,** 5

**Morgan, Virginia M.,** 4

**Murphy, Diana E.,** 5

**National Bankruptcy Review Commission,** 13

**National Firearms Training Manual,** 22

**O'Brien, Donald E.,** 5

**Operation Drug TEST,** 8

**Optimal utilization of judicial resources,** 7-8, 41

**Panel attorneys** (see defender services)

53

*Judicial Conference of the United States*

**Perris, Elizabeth L.**, 4

**Personnel, court**
> arbitration programs, staffing resources, 16-17
> Civil Justice Reform Act, staffing resources, 16-17
> code of conduct gift regulations, 14-15
> court reporters, 28-29
> financial disclosure reports, 25
> office sizes, 38

**Pilot programs**
> arbitration programs, 16-17
> bankruptcy *in forma pauperis*, 10
> Civil Justice Reform Act, 15-16, 16-17
> panel attorney administration, 24

**President of the United States**
> bankruptcy code dollar adjustments, 13
> District of Columbia court system, 6-7, 14
> sentencing commission vacancies, 4-5

**Pretrial services** (see probation and pretrial services system)

**Probation and pretrial services system**
> District of Columbia offenders, 6-7
> firearms and ammunition regulations, 22
> risk prediction index, 21
> space, acquiring and releasing, 19-20, 40

**Probation system** (see probation and pretrial services system)

**Public buildings** (see space and facilities)

**RAND Corporation,** 15-16

***Regulations of the Director of the Administrative Office Concerning Carrying and Using Firearms by United States Probation and Pretrial Services Officers***, 22

54

*March 11, 1997*

*Regulations of the Judicial Conference Establishing Standards and*
*Procedures for the Appointment and Reappointment of United States*
*Magistrate Judges*, 29

*Regulations of the Judicial Conference of the United States*
*for the Selection, Appointment, and Reappointment of United States*
*Bankruptcy Judges,* 13

**Relocation allowance**, 9

*Report on Death Penalty Representation*, 23

*Report of the Judicial Conference of the United States on the Federal*
*Defender Program,* 8

**Resolution**
    Arnold, Richard S., 5-6

**Resources utilization** (see judicial resources, utilization)

**Risk prediction index,** 21

**Rules of practice and procedure**
    civil procedure, 34-35
    criminal procedure, 35
    evidence, 35-36

**Rules of Practice and Procedure, Committee on**, 34-36

*Rules of the Judicial Conference of the United States for the*
*Processing of Petitions for Review of Circuit Council Orders under*
*the Judicial Conduct and Disability Act*, 34

**Security**
    Court Security account, 9

**Security, Space and Facilities, Committee on**, 11, 19,  36-41

**Senior judges** (see judges, senior)

55

*Judicial Conference of the United States*

**Sentencing**
    commission vacancies, 4-5
    program, 9

**Small, A. Thomas**, 4

**Space and facilities**
    acquiring and releasing space, 18-20, 40
    circulation factor, 38
    cost containment plan, 17-20, 36-37, 39, 40, 40-41
    courthouse construction and renovation, 37-39
    courtroom planning model, 36-37
    courtroom sharing, 17-18
    courtroom size for magistrate judges, 38
    five-year courthouse construction plan, 39
    *Interim Guidelines for Space Acquisition and*
        *Tenant Alterations Funding*, 40-41
    libraries, 11, 37
    release of court facilities, 39
    sharing with state and local entities, 40
    space benchmarks, 41
    space management initiatives plan,  40-41
    space reduction reports, biennial, 19, 40-41
    space rental cost containment, 17-20, 36-37, 39, 40, 40-41
    tenant alterations, 40-41
    *United States Courts Design Guide*, 11, 36-37, 37-39, 41

**Space Management Initiatives in the Federal Courts**, 39, 40-41
**Staffing resources**
    arbitration programs, 16-17
    Civil Justice Reform Act programs, 16-17

**Subcommittee on Judicial Statistics**, 26-27

**Superior Court of the District of Columbia**, 6-7, 14

**Supporting personnel** (see personnel, court)

56

*March 11, 1997*

**Supreme Court of the United States**
    financial disclosure reports, 25
    intercircuit assignments, 25
    rules of practice and procedure amendments, 34-36

**Technology** (see automation)

***United States Courts Design Guide***, 11, 36-37, 37-39, 41

**United States Sentencing Commission,** 4-5

**United States trustee program,** 9

**Victims' rights**
    constitutional amendment, 20-21

*U.S. Government Printing Office: 1997 - 520-071