**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Caryn Devins Strickland respectfully requests that this court enter a preliminary injunction ordering Defendants to compensate her for her lost earnings while this litigation is pending. The Fourth Circuit ordered judgment in favor of Strickland on the merits of her due process and equal protection claims, reversing the dismissal of her complaint and allowing her claims for equitable and declaratory relief to proceed in district court. *Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022). The Fourth Circuit further held that Strickland may not recover any back pay directly in federal court. *Id.* at 369–71. Because Strickland cannot recover back pay, she will suffer irreparable harm in the form of lost earnings if she is not afforded immediate relief. This harm will be especially substantial given that a hearing will not be held on her summary judgment motion

1

until September 2022, and a trial will not be held until September 2023. This court should expeditiously grant relief because Strickland is likely to succeed on the merits of her claims, she will suffer irreparable harm without immediate relief, and the other preliminary injunction factors are met.

## PROCEDURAL HISTORY

On March 3, 2020, Strickland filed suit alleging constitutional and civil rights violations by officials in the federal judiciary. ECF No. 1. Strickland, a former assistant federal public defender, alleged that Defendants violated her equal protection rights by subjecting her to sex discrimination, including deliberate indifference to sexual harassment. *See id.* ¶¶ 497–99. She further alleged that Defendants violated her due process rights by subjecting her to a fundamentally unfair process for resolving her workplace discrimination claims. *Id.* ¶¶ 494–96.

On May 11, 2020, the court ordered, based on the parties' agreement, that "any motions for summary judgment shall be filed on or before October 1, 2020." Minute Entry Order Dated May 11, 2020. The court ordered the parties to hold an Initial Attorney's Conference and to submit a joint proposed case management schedule. *Id.* In their joint proposed case management schedule, the parties agreed that discovery would be completed by September 1, 2020, and that summary judgment motions would be filed on or before October 1, 2020. ECF No. 34, at 4.

2

In accordance with the Court's scheduling order and Fed. R. Civ. P. 26(a), Strickland provided her initial disclosures on May 20, 2020. *See id.* at 3. Defendants filed motions to dismiss on June 8, 2020. Defendants did not provide Strickland with initial disclosures, nor did they participate in discovery.

On August 17, 2020, Strickland timely moved for partial summary judgment against the official capacity defendants. ECF No. 60. Defendants did not move for summary judgment. But in their response to Strickland's motion, Defendants included declarations from five witnesses and nearly 400 pages of exhibits, none of which they had provided in discovery. ECF No. 78. Defendants neither asserted that discovery was needed to oppose Strickland's motion nor filed a declaration under Fed. R. Civ. P. 56(d).

On December 30, 2020, this court dismissed Strickland's complaint in its entirety, without ruling on her summary judgment motion. ECF No. 103. On April 26, 2022, the Fourth Circuit reversed this court's dismissal order. *Strickland*, 32 F.4th at 321 (holding that Strickland's equal protection and due process claims "survive the motions to dismiss"). The Fourth Circuit allowed Strickland's claims for prospective equitable relief to proceed against the official capacity defendants. *Id.* The Fourth Circuit held that she could not recover back pay. *Id.* at 369–71.

Following issuance of the Fourth Circuit's mandate on June 21, 2022, Strickland moved for leave to file a supplemental memorandum in support of her

3

motion for summary judgment.  ECF No. 116.  Strickland explained that, in light of the Fourth Circuit's guidance, no reasonable factfinder could find in favor of Defendants on the due process and equal protection claims.  ECF No. 116-1, at 5–11.  Because Defendants did not assert that discovery was needed to oppose Strickland's claims, there was no reason to delay deciding her motion.  *See* Fed. R. Civ. P. 56(d).  Moreover, because Defendants failed to provide their initial disclosures or participate in discovery during the authorized period, they were automatically barred from putting on any evidence to support their case.  *See* Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 56(e).

On July 14, 2022, this court held a status conference.  Notwithstanding Defendants' failure to raise an issue for trial, their failure to participate in discovery, and their failure to assert a need for discovery, the court reset all the deadlines for this case and ordered the parties to confer regarding a schedule for discovery.  The court also stated that it would take no action on Strickland's summary judgment motion, but after her counsel objected, the court set the motion for a hearing in September 2022.  The court granted leave for Defendants to submit further "supporting evidence" that they did not disclose in discovery or in their prior summary judgment opposition.  The court placed the case on the running trial list for September 2023.

## LEGAL STANDARD

To obtain a preliminary injunction, "a plaintiff must establish that 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm absent preliminary relief; 3) the balance of the equities favors relief; and 4) the relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). "While plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits, they need not show a certainty of success." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (internal quotation marks and citation omitted).

## ARGUMENT

Strickland easily meets the requirements for a preliminary injunction. The Fourth Circuit ruled that Strickland's due process and equal protection claims survived the motions to dismiss, and it provided specific guidance as to the factual showing needed to prove her claims. *Id.* at 355–56 (due process); *id.* at 358–60 (equal protection). In light of this specific guidance, no reasonable factfinder could find in favor of Defendants on the due process and equal protection claims. Moreover, because Strickland cannot recover back pay, she will suffer irreparable harm if she is not afforded immediate relief. The remaining factors for a preliminary injunction are likewise met: the equities clearly favor ordering an

5

injunction to stop Defendants from violating Strickland's constitutional rights, and the public interest is plainly served by such an injunction. An injunction in the form of lost wages while this litigation is pending is amply supported by the record, and is narrowly tailored to the harm Strickland has shown.

## I. Strickland is likely to succeed on the merits of her claims.

In deciding whether a party is likely to succeed on the merits, a district court "abuses its discretion when it makes an error of law or ignores unrebutted, significant evidence." *Leaders of a Beautiful Struggle*, 2 F.4th at 339. Here, the Fourth Circuit's binding conclusions of law and the unrebutted, significant evidence in Strickland's summary judgment motion, which she incorporates by reference here, show that she is likely to succeed on the merits of her due process and equal protection claims.

### A. Due process

Strickland is likely to succeed on her due process claim. The Fourth Circuit held that judiciary employees have a property interest in the protections granted by the EDR Plan. *Strickland*, 32 F.4th at 348–52. The Plan affords judiciary employees "substantive rights" to be free from discrimination, harassment, and retaliation," and it "creates a clear and specific set of procedures that are to be followed in the event that an employee claims that his or her substantive rights afforded under the EDR Plan have been violated." *Id.* at 349–50.

6

The Fourth Circuit held that Strickland could proceed with an as-applied challenge to the Plan "because the refusal to disqualify the [Federal Public Defender] from the investigation and the alleged coercing of Strickland to end the investigation stated a plausible violation of her due process rights. The refusal to disqualify the FPD created a conflict of interest that infected the entire investigation when Strickland was led to believe that the FPD would be the final decisionmaker in the case." *Id.* at 355. Thus, "Strickland's due process rights were violated if she can prove that the FPD, an accused party, was not disqualified from the EDR process, and if Strickland was led to believe that the FPD would be the final decisionmaker in her case." *Id.* at 356. "Under these circumstances, a reasonable factfinder could conclude that continuing with the EDR process would be futile and that Strickland had reason to believe that the more suitable alternative was to drop her complaint and accept the Fourth Circuit clerkship. Such findings would lead to the conclusion that Strickland was deprived, without due process, of her property right to a remedy for the injuries that she allegedly suffered from harassment by the First Assistant and from retaliation by the FPD." *Id.*

This showing is easily met on the facts of this case. Defendants' own sworn declarations acknowledge that the Defender, who was an accused party, was not disqualified from exercising authority in the EDR process. *See* Declaration of James Ishida ("Ishida Decl."), ¶ 18, ECF No. 78-4 ("The Chief Judge denied

7

Plaintiff's request to disqualify, which was orally communicated to Plaintiff . . .

.").  And Defendants did not refute Strickland's testimony that she was led to believe that the accused Defender would be the decisionmaker in her case.  Indeed, the Fourth Circuit's Chief Circuit Mediator told Strickland that the Defender was the "decision maker," and no hearing officer would "micromanage" him.  *See* Mem. in Support of Mot. for Partial Summary Judgment at 7, ECF No. 60-1 (quoting Complaint ¶ 415).[1]  The Judicial Integrity Officer told Strickland that no remedies would be ordered in a final hearing, even if she prevailed, because Article III judges do not have authority to "manage" federal defender offices.  *Id.* (quoting Complaint ¶ 439); *see also* Declaration of Jane Roe ("Roe Decl."), Ex. C., at 69, ECF No. 60-2 (email from Judicial Integrity Officer stating that she would like "to better understand if FPDs are adequately protected by EDR remedies").  During this litigation, the AO's General Counsel and Judicial Integrity Officer claimed that a unit executive who is the subject of an EDR complaint "is the opposing or differing party to an EDR disputed matter" and that disqualifying the accused unit executive "would be unfair to the Respondent-employing office."  Declaration of Sheryl Walter, ¶ 14, ECF No. 94-7; *see also* Declaration of Jill Langley, ¶¶ 8–9, (same).  Defendants themselves recognized that the Defender exercised decision-

---

[1] Strickland verified the complaint's allegations as her sworn testimony.  *See* Roe Decl. at 1, Ex. A.

8

making authority over the EDR process, including by appointing the Investigator for Strickland's claims against him. Declaration of Anthony Martinez ("Martinez Decl."), ¶ 81, ECF No. 78-3; *id.* at 43. Under these circumstances, Strickland reasonably concluded that proceeding with the EDR process would be futile; indeed, no reasonable factfinder would conclude otherwise.

### B. Equal protection

Strickland is also likely to succeed on her equal protection claim. The Fourth Circuit held that "federal judiciary employees who occupy supervisory roles and/or who are charged with enforcing an EDR plan can . . . be held liable under the Fifth Amendment for their deliberate indifference to sexual harassment committed by a federal judiciary employee or supervisor against another federal judiciary employee." *Strickland*, 32 F.4th at 359 (citing *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 702–03 (4th Cir. 2018)). "This conclusion is based on the principle that the Fifth Amendment's Equal Protection Clause secures a federal judiciary employee's right to be free from sexual harassment in the workplace. It thus both guards against sexual harassment perpetrated by other federal judiciary employees and protects federal judiciary employees from deliberate indifference on the part of federal judicial employees charged with preventing sexual harassment and investigating complaints of sexual harassment." *Id.* The Fourth Circuit held that Strickland's complaint alleged each of the

9

elements of a deliberate indifference claim, including that (1) she "was subjected to sexual harassment by the First Assistant"; (2) she "reported the sexual harassment to various judiciary employees, some of whom alerted the FPD to the harassment"; (3) Defendants "'fail[ed] to take immediate and effective action on her complaints' and also 'fail[ed] to provide her with meaningful review or remedies'" (quoting Complaint ¶ 498); and (4) Defendants' "failure to take proper corrective action was intentional and motivated by their intent to discriminate against her because of her gender." *Id.* at 359–60.

These facts cannot be meaningfully disputed. To begin with, Strickland clearly was subjected to sexual harassment, along with related sex discrimination and retaliation. Defendants themselves acknowledge that "disciplinary action" was taken based on Strickland's report of wrongful conduct. *See* Roe Decl., Ex. C, at 73; *see also* Martinez Decl., ¶¶ 99, 101–03 (stating that he "personally counseled" the First Assistant and that he "received counseling" under Chapter IX of the Fourth Circuit EDR Plan); Ishida Decl., ¶ 11 (stating that Chief Judge "took appropriate action under Chapter IX of the EDR Plan"). The taking of disciplinary action against employees as a result of the EDR claim that Strickland filed necessarily required findings of violations of Strickland's rights under the EDR Plan. *See* EDR Plan Ch. IX ("Employees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan, may be

subject to disciplinary action.").  Defendants' self-serving assertion in their summary judgment response that Strickland was not subjected to discrimination is blatantly contradicted by the record, including Defendants' own decision to take disciplinary action, and does not preclude entry of a preliminary injunction.  *Cf. E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1090 (5th Cir. 1987) (holding that employee had established a "substantial likelihood" of success on retaliation claim when employer provided "no legal excuse" for terminating employee's severance pay); *Farkas v. New York State Dep't of Health*, 554 F. Supp. 24, 28 (N.D.N.Y. 1982), *aff'd sub nom. Farkas v. Dep't of Health*, 767 F.2d 907 (2d Cir. 1985) (finding that plaintiff had demonstrated "a likelihood of success on the merits" where she established a prima facie case of discrimination and the employer offered no legitimate reason for the failure to promote her).

Defendants also cannot reasonably dispute that they were deliberately indifferent to the harassment.  In response to Strickland's summary judgment motion, Defendants largely did not dispute the facts surrounding their handling of her report of sexual harassment, sex discrimination, and retaliation.  Instead, Defendants claimed that their actions were reasonable and that they properly administered the EDR Plan.  *See* ECF No. 78, at 16–24.  The Fourth Circuit disagreed, holding that Strickland's allegations clearly stated a claim of deliberate indifference.  *Strickland*, 32 F.4th at 359.

11

## C. Unreliability of investigation report

Defendants also asserted that they conducted an appropriate investigation, but they did not produce any admissible evidence to support that claim. *See* ECF No. 78, at 16–20. Defendants instead relied on hearsay quotations from an investigation report that they refused to provide to Strickland or to this court, but that is plainly not admissible evidence. *United States Dept. of Housing and Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920, 926 (4th Cir. 1995) ("[H]earsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment."). Even if the court were to consider this evidence despite its clear inadmissibility, it would be entitled to no weight at the preliminary injunction stage. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 277 (4th Cir. 2002) (holding that district court abused its discretion by giving "unreliable" evidence "any weight" at the preliminary injunction stage).

To begin with, Defendants offered no evidence to show that the investigation report was reliable. *See id.* (holding that evidence that was "utterly unreliable" could not be "considered probative" of the issues in the case). To the contrary, Strickland's sworn declaration and supporting exhibits show that the investigation was not reliable. Despite his conflict of interest as an accused person and her request for his disqualification, the Defender was allowed to appoint the Investigator. Martinez Decl., ¶ 81; *id.* at 43; *Strickland*, 32 F.4th at 355 ("The

12

refusal to disqualify the FPD created a conflict of interest that infected the entire investigation . . . .").  The Investigator, a court employee, told Strickland that her allegations of the Defender's violations of the EDR Plan were not being investigated because the EDR Coordinator/Circuit Executive excluded them from the investigation.  Complaint ¶¶ 318–19.  The Investigator went periods of three to six weeks without providing Strickland any updates on the investigation's progress.  *Id.* ¶¶ 306, 384.  More than two months after the investigation opened, the report was sent back to be redone.  *Id.* ¶ 362.  Strickland's witnesses were never interviewed.  *Id.* ¶ 317.  The Investigator confessed she lacked training to make findings and conclusions, *id.* ¶ 320, and yet, the EDR Coordinator asked her to make findings and conclusions, *id.* ¶ 364.  The Investigator said the EDR Coordinator, in consultation with the Chief Judge, would make final decisions, even though the EDR Plan did not give the EDR Coordinator that role.  *Id.* ¶ 320; EDR Plan Ch. IX.  The results of an investigation conducted in such an unreliable and biased manner are plainly not admissible to support Defendants' assertion that Strickland's claims were unsubstantiated.  *Castelluccio v. Int'l Bus. Machines Corp.*, No. 3:09CV1145 TPS, 2013 WL 6842895, at *2 (D. Conn. Dec. 23, 2013) (excluding results of an investigation that was not "conducted by a neutral party," that "minimized" the employee's complaints, and that seemed to have a purpose of "exonerat[ing]" the employer).

13

Strickland also learned from Defendants' filings that the investigation report stated that she "exploited" the "poor judgment and decision-making skills" of her supervisors to obtain a transfer, indicating that the report impugned her integrity without giving her notice of any such allegation or an opportunity to respond. ECF No. 94, at 4; Martinez Decl., ¶ 105. Had Strickland been given notice that such claims about her were being investigated, she would have had the chance to refute them as nonsensical and contrary to the factual record. *See Castelluccio*, 2013 WL 6842895, at *2 (investigation report was inadmissible where there was "no opportunity for [the employee] to respond to the criticisms leveled against him," and evidence that was "favorable" to the employee was "absent" from the report). Quite simply, the investigation was a farce, and its "utterly unreliable" results "cannot be considered probative" of anything except to show how deeply biased and grossly inadequate the investigation was. *Scotts Co.*, 315 F.3d at 277.

Moreover, Defendants' characterization of the investigation based on selective quotations of an investigation report that they have not shared with the court was deceptive, and should be entirely discredited. *See* ECF No. 78, at 15; Martinez Decl., ¶ 105. Defendants' selective quotations of the investigation report plainly would not be admissible at trial, and Defendants provided no legitimate reason for not offering the investigation's findings in an admissible form. *See Scotts Co.*, 315 F.3d at 278 (finding the "deficiencies" in the evidence to be "so

14

substantial" that "the district court abused its discretion by giving the evidence any weight"). Instead of introducing the full report through a witness with personal knowledge of the investigation and the ability to speak to its methodology and findings, Defendants introduced selective quotations from the report through the Defender—an accused party, who was ultimately disciplined for wrongful conduct based on the investigation's findings. *See* ECF No. 78, at 15 (quoting Martinez Decl., ¶ 105). As an accused party, the Defender had an obvious motivation to quote the report in a biased and misleading manner. And the record contains clear evidence that he did just that. In his declaration, the Defender asserted that the investigation report found that Strickland "exploited . . . upper management to attain her goal of a transfer." Martinez Decl., ¶ 105. Later, in quoting the Defender's declaration in another filing, Defendants inadvertently revealed that the Defender had omitted critical context from that sentence, which states that Strickland allegedly "exploited poor judgment and decision-making skills," ECF No. 94, at 4 (emphasis added), of "upper management," Martinez Decl., ¶ 105. In short, the Defender misleadingly claimed that the report found that Strickland "exploited" "upper management," while omitting the report's reference to his own "poor judgment and decision-making skills." *Id.* Contrary to the Defender's insinuation, the report's statement indicates that Strickland's allegations were substantiated, but Defendants minimized the misconduct and scapegoated her for

her supervisors' "poor judgment and decision-making skills." *See* ECF No. 93, at

5–10, 21–22 (describing Defendants' minimization of the misconduct and victim

blaming); *see also* ECF No. 97, at 18–19 (same).  In blaming Strickland for

"exploit[ing]" the misconduct of her supervisors, Defendants also relied on sexist

victim-blaming tropes.  *Id.*

   In an attempt to justify their selective quotations of the report, Defendants

claimed that the report contains "confidential information" pertaining to the

Chapter IX report of wrongful conduct and can only be filed under seal.  ECF No.

78, at 15 n.3.  But if the report were confidential as Defendants claimed, then

Defendants violated Strickland's confidentiality by introducing the portions of the

report that pertained to her Chapter X claim.  *Id.* at 15.  Strickland had as much of

a right to confidentiality under Chapter X of the EDR Plan as her accused

supervisors had under Chapter IX of the Plan.  *Compare* EDR Plan Ch. X, § 4

("The Court or employing office shall protect the confidentiality of allegations

filed under this Plan to the extent possible."), *with id.* Ch. IX ("All individuals

involved in the investigation shall protect the confidentiality of the allegations of

wrongful conduct to the extent possible.").  Defendants' actions in selectively

breaching the confidentiality of Strickland as the complainant, while maintaining

the confidentiality of the supervisors who were disciplined based on her complaint,

further demonstrate their bias against her and their bad faith.

**II. Strickland has satisfied the remaining preliminary injunction factors.**

The remaining preliminary injunction factors are also satisfied. Because Strickland is likely to succeed on the merits, she has also established irreparable harm. *Leaders of a Beautiful Struggle*, 2 F.4th at 346; *see Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right.").

Moreover, the Fourth Circuit held that Strickland may not recover any back pay directly in federal district court. *Strickland*, 32 F.4th at 369–71. Thus, any further delay will cause Strickland irreparable harm in the form of lost earnings she may never recover. *See Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003) ("The unavailability of back pay or other monetary damages against . . . the defendants in their official capacities goes a long way toward establishing irreparable injury. It is nose-on-the-face plain that the plaintiff will lose wages while she is contesting her ouster. Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists.").

The balance of equities likewise weighs in favor of issuing an injunction against Defendants' ongoing violations of Strickland's constitutional rights. *Leaders of a Beautiful Struggle*, 2 F.4th at 346 ("[A] state is in no way harmed by

17

issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction."). And the public interest favors Strickland, because it "is well-established that the public interest favors protecting constitutional rights." *Id.*

## III. An award of lost earnings is supported by the record, and is narrowly tailored to preserve the parties' respective rights and positions.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 1239 (2017) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Therefore, an injunction must be "narrowly tailored to remedy the specific harm shown." *Neb. Dep't of Health & Human Servs. v. Dep't of Health and Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (citation omitted).

Strickland "expressly requests in her complaint that she be awarded front pay in lieu of reinstatement" as an "equitable remedy." *Strickland*, 32 F.4th at 366; *see* Complaint at 84. An award of lost earnings would therefore be the most narrowly tailored and appropriate remedy. To this day, Defendants have never offered Strickland reinstatement, which brings into question whether reinstatement is even feasible. *See Farkas*, 554 F. Supp. at 28–29 (ordering lost wages due to "the potentially disruptive effect injunctive relief might have upon the state in its capacity as employer"). Moreover, Defendants' bad faith conduct towards

18

Strickland, including baselessly impugning her integrity and deceptively mischaracterizing the investigation report, brings into question whether reinstatement will ever be feasible. *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) ("[C]ourts have reasonably declined to award reinstatement when the employer has demonstrated such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." (citation omitted)); *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991) (reinstatement is "inappropriate" when the litigation itself has "created such animosity" that the "employer-employee relationship was irreparably damaged").

In addition, current circumstances bring into question whether the hostile working environment that forced Strickland to resign has been corrected. *See McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1145 (10th Cir. 2006) ("[A] plaintiff need not 'request reinstatement as a prerequisite to obtaining front pay where the evidence reveals an atmosphere of hostility.'" (citation omitted)). To this day, the First Assistant, who was disciplined based on apparent findings that he sexually harassed a subordinate, remains the First Assistant of the FDO. *See* Declaration of Caryn Strickland ("Plaintiff's Decl."), Ex. A. A vacancy for the First Assistant's position was posted in April 2022, but the ad names him as the "head[]" of the "search committee" for his own replacement. *Id.* Ex. B. Moreover, while the Defender who discriminated and retaliated against Strickland was not

19

reappointed, *Strickland*, 32 F.4th at 336, other employees who participated in a toxic workplace culture of discrimination, harassment, and retaliation are still employed by the FDO, including some holding supervisory positions. *See*, *e.g.*, *id.* at 324 (discussing complaint's allegations that "bullying, sexism, homophobia, racism, and mockery of disabilities was normalized"; that the "individuals most responsible for misconduct" were promoted and employees who complained were "punished"; and that "female employees were belittled, not taken seriously as professionals, and targeted for bullying and abusive behavior"); *id.* at 328 (discussing complaint's allegations that the FDO's Appellate Chief "was pressuring [Strickland] to drop her complaints"). In a workplace "fraught with [such] hostility and friction," reinstatement could "potentially cause th[is] court to become embroiled in each and every employment dispute that arose between the plaintiff and the employer following the plaintiff's reinstatement." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 861–62 (7th Cir. 2001).

Even if the hostile working conditions that forced Strickland to resign were corrected, there would be other barriers to reinstatement. *See Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d 1003, 1010 (N.D. Iowa 1998) (courts consider "whether the plaintiff has the ability to return to work for the defendant employer" in determining the propriety of reinstatement). In December 2020, Strickland requested advice from the ethics department of the North Carolina Bar, via her

counsel, because she wanted to know whether, and how, her ethical duties with respect to practicing law before the Fourth Circuit could be affected by this lawsuit. She was informed that she would not "have a conflict appearing before the court and court officials until her identity is revealed. Thereafter, . . . all the parties and the court must consent." Plaintiff's Decl., Ex. C.

Before Strickland received this ethics advice, Defendants had already violated the court-ordered pseudonym order that Strickland requested, in part, to protect her career. *See* ECF No. 2. Strickland's true name was exposed at least three times in the declaration of William Moormann and at least three times in the declaration of Anthony Martinez. *See* Declaration of Cooper Strickland, Ex. A. Strickland's full legal name could be found through a simple keyword search of the document. *Id.* Further identifying information, including copies of wedding photos that had been widely shared with family, friends, and prior co-workers, with only faces redacted, was included in the declaration of John Parke Davis. *Id.*

In March 2022, Strickland was invited to testify at a hearing on "Workplace Protections for Federal Judiciary Employees: Flaws in the Current System and the Need for Statutory Change" by the Honorable Jerrold Nadler, Chair of the House Judiciary Committee's Subcommittee on Courts, Intellectual Property, and the Internet. Plaintiff's Decl., Ex. D. Even though testifying publicly would require coming forward under her true name, Strickland did so, in part, because

Defendants had already violated the pseudonym order and disclosed her true name. Because Strickland's identity has been publicly revealed, she will be required to obtain consent from all parties and the court before she can appear in any cases pending before the court or court officials whom she sued. *Id.* Ex. C.

Strickland has continued to pursue her calling in indigent criminal defense to the best of her ability. Strickland is a solo practitioner specializing in state court-appointed criminal appeals. *Id.* ¶ 13. Following her constructive discharge, she was accepted to the state indigent appellate roster and began taking cases after completing the required training. *Id.* Currently, she has 13 pending cases in various stages of appeal before the North Carolina appellate courts. *Id.* Strickland was also accepted to the Fourth Circuit Criminal Justice Act panel but, given the ethics advice she received as well as Defendants' conduct towards her during this litigation, she believes it would be inappropriate to take Fourth Circuit cases. *Id.*

Though this work fulfills her passion for indigent criminal defense, the compensation is significantly less than she would have received as a federal public defender. Based on the current judiciary pay scale, Strickland's salary would have been $144,296 this year if she had remained employed by the FDO. *Id.* ¶ 14. This does not include the value of employer benefits, which could be worth as much as 40 percent of her total compensation. *Id.* This estimate is conservative, as it

22

assumes that Strickland would not have received any promotions or salary increases, other than nondiscretionary step increases within grade. *Id.*

By contrast, Strickland estimates that her income for this year will be no more than $40,000, with no employer benefits. *Id.* ¶ 21. That is not unusual for an attorney engaging in court-appointed indigent defense work in North Carolina. *See id.* (citing study describing compensation for court-appointed work as "far below market value"). While Strickland anticipates that her income may increase modestly over time, particularly since she is in the early stages of starting her own practice, it will never compare to what her compensation would have been as a federal public defender.

Strickland therefore requests that the court enter a preliminary injunction ordering Defendants to pay her a salary commensurate with what she would have received had she not been forced to resign from the FDO, offset by her current earnings. *Cf. Farkas*, 554 F. Supp. at 29 (ordering that plaintiff "shall receive a salary commensurate with the position to which he seeks appointment during the pendency of this action"). The court should allow Defendants, in consultation with Strickland, to compute the precise amount owed, and to determine whether accrued earnings will be paid on a biweekly, monthly, or other basis. *See In re Levenson*, 587 F.3d 925, 937 (9th Cir. 2009). Such an order would preserve Strickland's

rights while this litigation is pending and would be narrowly tailored to the specific harm she has shown.

## IV. This court should expeditiously grant a preliminary injunction and need not hold an evidentiary hearing to do so.

This court should rule expeditiously on Strickland's motion. Each day that passes without action on her motion results in accrued back pay that she may never recover. Moreover, given the strength of the uncontested evidence, the court does not need to hold an evidentiary hearing to grant the requested relief.

"[G]iven the haste that is often necessary if [the parties'] positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *G.G. ex rel. Grimm*, 822 F.3d at 725 (quoting *Univ. of Tex.*, 451 U.S. at 395). "A requirement of oral testimony would in effect require a full hearing on the merits and would thus defeat one of the purposes of a preliminary injunction which is to give speedy relief from irreparable injury." *Ross-Whitney Corp. v. Smith Kline & French Labs.*, 207 F.2d 190, 198 (9th Cir. 1953). Accordingly, for purposes of a preliminary injunction, uncontested factual testimony presented in affidavits is usually "taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).

In this case, the uncontested evidence is more than sufficient to justify a preliminary injunction without a full-fledged evidentiary hearing. *Supra*, at 6–16. Unlike most preliminary injunction motions, which require gathering and

24

presenting evidence on a tight timetable at the outset of litigation, Strickland's motion can be granted based on the fully briefed summary judgment motion already before the court.

## CONCLUSION

This court should grant the motion for a preliminary injunction. The court should enter an order with the following findings:

1.      A preliminary injunction is necessary to prevent irreparable harm in the form of lost earnings while this litigation is pending. Moreover, Strickland is likely to succeed on the merits of her claims, and the remaining factors for a preliminary injunction are satisfied.

2.      Defendants shall be required to pay Strickland a salary commensurate with what she would have received had she not been forced to resign from the FDO, offset by her current earnings. Defendants will consult with Strickland to determine the precise amount owed, and whether that amount will be paid on a biweekly, monthly, or other basis.

3.      This injunction will prevent ongoing harm resulting from Defendants' violations of Strickland's due process and equal protection rights, which resulted in her constructive discharge from the FDO.

This the 27th day of July, 2022.

Respectfully Submitted,

<u>/s/ Jeannie Suk Gersen</u>

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487
jsuk73@gmail.com

Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

/s/ Cooper Strickland
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com