**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

<u>**PLAINTIFF'S DECLARATION IN SUPPORT OF HER
MOTION FOR A PRELIMINARY INJUNCTION**</u>

I, Caryn Strickland, hereby declare and state as follows:

1.      I am the plaintiff in this matter and submit this declaration in support
of my motion for a preliminary injunction.  I have personal knowledge of the facts
set forth herein, and if called upon to do so, could and would testify competently
thereto.

2.      The allegations set forth in the complaint filed on March 3, 2020 are
true to the best of my knowledge and belief, except for those allegations set forth
upon information and belief, and as to those allegations, I believe them to be true.

3.      Before I raised complaints of sexual harassment and sex
discrimination, I was an exemplary judiciary employee.  Immediately before I
began employment at the Federal Defender Office ("FDO"), I served as a Supreme

1

Court Fellow with a placement in the Administrative Office of the U.S. Courts. Before that, I served as a law clerk for a judge on the Second Circuit Court of Appeals, a federal district court judge, and the chief justice of a state supreme court.

4.      My dream since law school was to be a federal defender, and I anticipated working at the FDO until retirement.  I never wanted to lose my job at the FDO.  I only left after months of enduring a hostile working environment with no meaningful action on my complaints.  As a result of my constructive discharge, I lost opportunities for training, experience, and professional growth in my calling to serve indigent clients.

5.      I have never been offered reinstatement.

6.      In April 2021, the Defender, who was disciplined as a result of my report of wrongful conduct, announced his intent to seek another four-year term as Defender.  In August 2021, the Fourth Circuit posted a vacancy for his position. Following the Defender's non-reappointment, the Fourth Circuit announced the appointment of a new Defender in January 2022.

7.      As of the date of this filing, the First Assistant, who was disciplined based on apparent findings that he sexually harassed a subordinate, remains the First Assistant of the FDO.  *See* Ex. A.  A vacancy for the First Assistant position

was posted in April 2022, but the ad names him as the "head[]" of the "search committee" for his own replacement.  Ex. B.

8. Other employees who participated in bullying, sexism, homophobia, and mockery of disabilities remain employed by the FDO.  The Administrative Officer who told a gay male employee's co-workers that he is "like a girl" is still employed by the FDO.  The Team Leader who compared his clients to "dogs," referred to his intellectually disabled client as a "retard," and wore a Brett Kavanaugh costume to the office Halloween party—complete with a Yale-themed beer guzzler helmet—is still employed by the FDO.  The staff members who spread homophobic rumors that an employee was exchanging sexual favors with prison guards are still employed by the FDO.

9. The Appellate Chief, who stated that he believed the First Assistant was a good guy who had made mistakes and that it was in my best interest to mend things and get along with him, and who subsequently discouraged me from applying for a promotion, remains the Appellate Chief of the FDO.

10. In December 2020, I requested advice from the ethics department of the North Carolina Bar, via my counsel, because I wanted to know whether, and how, my ethical duties with respect to practicing law before the Fourth Circuit could be affected by this lawsuit.  I was informed that I would not "have a conflict

3

appearing before the court and court officials until [my] identity is revealed. Thereafter, . . . all the parties and the court must consent."  Ex. C.

11.     Before I received this ethics advice, Defendants had already violated the court-ordered pseudonym order that I had requested, in part, to protect my career.  My true name was exposed at least three times in the declaration of William Moormann and at least three times in the declaration of Anthony Martinez.  My full legal name could be found through a simple keyword search of the document.  Further identifying information, including copies of wedding photos that had been widely shared with family, friends, and prior co-workers, with only faces redacted, was included in the declaration of John Parke Davis.

12.     In March 2022, I was invited to testify at a hearing on "Workplace Protections for Federal Judiciary Employees: Flaws in the Current System and the Need for Statutory Change" by the Honorable Jerrold Nadler, Chair of the House Judiciary Committee's Subcommittee on Courts, Intellectual Property, and the Internet.  Ex. D.  Even though testifying publicly would require coming forward under my true name, I did so, in part, because Defendants had already violated the pseudonym order and disclosed my true name.  Because my identity has been publicly revealed, I will be required to obtain consent from all parties and the court before I can appear in any cases pending before the court or court officials whom I sued.  Ex. C.

13.     I have continued to pursue my passion for indigent criminal defense to the best of my ability.  I am a solo practitioner specializing in state court-appointed criminal appeals.  Following my constructive discharge, I was accepted to the state indigent appellate roster and began taking cases after completing the required training.  Currently, I have 13 cases pending in various stages of appeal before the North Carolina appellate courts.  I was also accepted to the Fourth Circuit Criminal Justice Act panel but, given the ethics advice I received, as well as Defendants' conduct towards me during this litigation, I believe it would be inappropriate to take Fourth Circuit cases.

14.     Though this work fulfills my passion for indigent criminal defense, the compensation is significantly less than I would have received as a federal public defender.  Based on the current judiciary salary plan ("JSP"), my salary would have been $144,296 this year if I had remained employed by the FDO.  Ex. E.  This does not include the value of employer benefits, which could be worth as much as 40 percent of my total compensation.  *See* Congressional Budget Office, Comparing the Compensation of Federal and Private-Sector Employees, 2011 to 2015, at 14 (Apr. 2017), *available at* https://tinyurl.com/bdefza89 (noting that average benefits for federal employees "account[] for 41 percent of the cost of total compensation").  This estimate is conservative, as it assumes that I would not have

5

received any promotions or salary increases, other than nondiscretionary step increases within grade.

15. As of August 21, 2018, my anniversary date at the FDO, I was being compensated as a research and writing attorney at JSP Grade 14, Step 2. *See* Roe Decl., Ex. D (request for personnel action). The Defender Operations Classifications Manual ("DOCS Manual"), on which Defendants relied in their summary judgment opposition, states that research and writing attorneys are compensated based on the JSP pay scale used throughout the federal judiciary, whereas assistant federal public defenders are compensated based on the Administratively Determined ("AD") scale, which is equivalent to what Assistant United States Attorneys make. DOCS Manual, Secs. 2-1, 3-6. A true and correct copy of Sections 1 through 4 of the DOCS Manual, which pertain to attorney positions in federal defender organizations, is attached as Exhibit F hereto.[1]

16. Because August 21, 2018 was my anniversary date, I was eligible for a promotion to JSP Grade 15 based on my qualifications and professional experience, including my service as a federal employee for one full year at the next lower grade. *See* ECF No. 93, at 17–18; *see also* Declaration of William Moormann, Ex. A-1, ECF No. 78-1 (exhibit from FDO stating that Strickland's

---

[1] Because Sections 5 through 13 of the DOCS Manual pertain to staff positions that are not relevant here, they are not included in Exhibit F.

6

"[c]urrent promotion potential" as of August 16, 2018 was "1 grade"). My work performance at the FDO was excellent, as it had been in all of my prior positions in the judiciary. *See* Complaint ¶ 192; Roe Decl., Ex. B, at 44–45 (Defender's agreement that "there is no performance issue with my work"); Martinez Decl., ¶ 49 (Defender "immediately corrected" the "mistaken impression" that there were "complaints . . . about [my] performance"); Declaration of John Parke Davis, ¶ 21, ECF No. 78-2 (First Assistant "thought highly of [my] performance and considered [me] a valuable employee"). If I had not been wrongfully denied consideration for this promotion, I would have been compensated at the equivalent of JSP Grade 15, Step 1 as of August 21, 2018. *See* DOCS Manual Sec. 1-20 (procedure for determining proper grade and step for promotions).

17. On August 28, 2018, the Defender reclassified me as an assistant federal public defender, and then backdated the change to August 20, 2018, the day before I became eligible for a promotion. *See* Roe Decl., Ex. D. The Defender refused to consider me for the promotion to JSP Grade 15 or otherwise increase my salary prior to reclassifying my position. Instead, the Defender requested that my locality pay be eliminated, which would have resulted in a salary cut of nearly 15 percent. *Id.* The Defender had no legal basis to eliminate my locality pay. The DOCS Manual states that "the locality pay adjustment may not be denied under any circumstances." DOCS Manual, Sec. 2-1, at 4.

7

18.     The fact that the Defender reclassified my position and then backdated the change to the day prior to my anniversary date does not change the fact that I was entitled to consideration for a promotion to JSP Grade 15 prior to being reclassified.  The DOCS Manual states that under the "highest previous rate policy," an assistant federal public defender's "starting salary may be set higher than the maximum of the applicable starting salary range if necessary to match the salary . . . the AFD previously earned as an employee of any federal government entity or any FDO."  DOCS Manual, Sec. 2-1, at 11.  Thus, the Defender could have promoted me to a JSP Grade 15 and then maintained that salary after the reclassification, even if it exceeded the salary range for which I was eligible on the AD pay scale.  *Id.*  Indeed, if that were not the case, then a research and writing attorney could experience a decrease in salary upon being promoted to assistant federal public defender, given the differences between the two pay scales.  *See* Moormann Decl., ¶ 19 (noting that at the beginning of an employee's career, the pay scale is "lower" for an AFPD employee than a JSP employee).  That result would make little sense, given that an assistant federal public defender position is more prestigious and comes with greater job responsibilities.  *Id.* ¶¶ 18–19.

19.     If I had not been constructively discharged from the FDO in March 2019, I would have been eligible for a step increase to JSP Grade 15 Step 2 in August 2019.  DOCS Manual, Sec. 1-18 (step increase to steps 2, 3, or 4 require a

8

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 8 of 106

52-calendar week waiting period). In August 2020 and August 2021, I would have been eligible for additional step increases to JSP Grade 15 Steps 3 and 4, respectively. *Id.* Because the waiting period after step 4 is 104 calendar weeks, I would not have been eligible for another step increase until August 2023. *Id.* Thus, as of the date of this filing, my salary would have been $144,296. *See* Ex. E.

20. Because I was reclassified to an assistant federal public defender position, I would have been compensated based on the AD scale rather than the JSP pay scale. DOCs Manual, Secs. 2-1, 3-6. But because the pay bands are far wider on the AD scale than on the JSP scale, it would be more speculative to attempt to approximate what my salary would have been on the AD scale. Moreover, reliance on the JSP pay scale is undoubtedly more conservative and favorable to Defendants, given that the AD pay scale "has a much greater long-term pay potential" because the "pay scale is higher, long term, for AFDs than [JSP] employees." Moormann Decl., ¶ 19. If anything, reliance on the JSP pay scale will likely lead to an underestimation of my lost earnings.

21. By contrast, I estimate that my income for this year will be no more than $40,000, with no employer provided benefits. That is not unusual for an attorney engaging in court-appointed indigent defense work in North Carolina. *See* Margaret A. Gressens, FY19 Private Appointed Counsel Effective Pay Rate Study: Public Defense Attorney Overhead Rates and Access to Benefits, at 4 (Mar. 2019),

available at https://preview.tinyurl.com/y6rp8pqr (noting that court-appointed compensation rates are "far below the fair market value").  While I anticipate that my income may increase modestly over time, particularly since I am in the early stages of starting my own practice, it will never compare to what my compensation would have been as a federal public defender.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 27th day of July, 2022 at Lynn, North Carolina.

<u>/s/ Caryn Strickland</u>
Caryn Strickland

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2022, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send

a notification of such filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

# EXHIBIT A



**Federal Public Defender**
**Western District of North Carolina**

**Charlotte Office**
129 West Trade St.
Suite 300
Charlotte, NC 28202
**Phone:** (704) 374-0720
**Fax:** (704) 375-2287

**Asheville Office**
1 Page Avenue
Suite 210
Asheville, NC 28801
**Phone:** (828) 232-9992
**Fax:** (828) 232-5575

# Charlotte Office

129 West Trade St.
Suite 300
Charlotte, NC 28202
**Phone:** (704) 374-0720
**Fax:** (704) 375-2287



Map data ©2022 Google

**Defender**
   John Baker

**First Assistant**
   JP Davis

**Trial Unit Chief**
   Erin Taylor

**Senior Litigator**
   Kevin Tate

**Assistant Federal Defender**
   Peter Adolf

   Myra Cause

   Taylor Goodnight

   W. Kelly Johnson

Nicole Lybrand

**Appellate Unit**
Melissa Baldwin
Ann Hester
Megan Hoffman
Jared P. Martin

**CHU Chief**
Gerald King

**Capital Habeas Unit**
Casey Crook - *Paralegal*
Kim Fuhrmeister - *Investigator*
Sarah Hewett - *Paralegal*
Stephanie Mieldon - *Investigator*
Teresa Norris - *AFD*
Gretchen Swift - *AFD*
Michelle Thompson - *Paralegal*
David Weiss - *AFD*

**Investigator**
Latorya Blackwell
Kimberly Moseff
Sylvia Summers

**Paralegal**
Claudia Garcia
Lisa Ottens
Melisa Palmer

**Assistant to the Defender**
Holly Dixon

**Interpreter**
Martina Melendez

**Senior Legal Assistant**
Angel Acevedo
Ivette Arroyo-Becker

**Administrative Officer**
William Moormann

**Computer Systems Administrator**
Phil Likins

**Assistant Computer Systems Administrator**
Tony Hellen

**CJA Coordinating Attorney**
Tonja D. Brooks

**CJA Panel Administrator**
Karen Wallace

**Administrative Assistant**
Amanda Buckner

**Reception**
Imelda Garcia

The materials on this website are for informational purposes only and are not legal advice. You should not rely upon the materials without consulting with a lawyer. Communicating by email or otherwise does not create an attorney/client relationship with the Federal Public Defender's Office. The placement of materials on this website and links to other sites does not necessarily represent the Federal Public Defender's endorsement, or agreement with that information.

# EXHIBIT B

# FEDERAL PUBLIC DEFENDER'S OFFICE
# WESTERN DISTRICT OF NORTH CAROLINA

**John G. Baker**
*Federal Public Defender*

129 West Trade Street
Suite 300
Charlotte, NC 28202
(704) 374-0720
Fax (704) 375-2287



1 Page Avenue
Suite 210
Asheville, NC 28801
(828) 232-9992
Fax (828) 232-5575

## Position Announcement
## FIRST ASSISTANT FEDERAL PUBLIC DEFENDER
## Charlotte, NC

**THE FEDERAL PUBLIC DEFENDER**, Western District of North Carolina, is accepting applications for the First Assistant Federal Public Defender. The successful applicant will be someone with extensive federal criminal defense experience, preferably within a federal public defender or community defender office, with strong leadership skills and organizational knowledge. Internal and external candidates are encouraged to apply.

**Duties.** The First Assistant Federal Public Defender is the principal deputy to the Federal Public Defender and assists in the management of all phases of the defender office. In addition to providing zealous, professional legal representation to clients, this position also assumes responsibility for the operations of the defender office as a whole in the absence of the Federal Public Defender. This position actively participates in financial management and organizational structure decisions, personnel decisions such as hiring, training, performance evaluations and disciplinary actions, and office and case-related policy decisions. This position acts as a liaison between the defender office and the court, court personnel, other related agencies, the CJA panel and private bar, Defender Services, other defender offices, clients and their families, and members of the general public on administrative, institutional and case-related matters. The First Assistant Federal Defender also shares the responsibility for supervision and management of the daily operations of the office, of attorneys and support staff, and communicates with the court and other aforementioned parties in a supervisory capacity concerning case-related issues.

The successful applicant will have an established capacity or clearly demonstrated aptitude for law-office management including excellent interpersonal skills, a reputation for integrity, and a commitment to the representation of indigent clients.

**Requirements.** Candidates must be licensed attorneys in good standing of the bar of any state or federal district court. Attorneys applying for this position must have five (5) or more years of experience in criminal federal defense, preferably in a federal public defender or community defender office. Previous supervisory experience is preferred. This position is

classified as a high sensitive position and will require the successful completion of a background investigation.

**Salary and Benefits.** The salary of the First Assistant Federal Public Defender is commensurate with that of a supervisory Assistant U.S. Attorney with similar qualifications and experience, and is currently set at $176,200. The position is in the excepted service category and does not carry the tenure rights of the competitive Civil Service. The position offers federal government employment benefits, including participation in health and life insurance program, retirement, and the Thrift Savings Plan. Salary is payable only by Electronic Funds Transfer (direct deposit). You may qualify for reimbursement of relocation expenses in accordance with agency policy

**How to Apply.** Qualified persons may apply by forwarding a résumé; letter of interest (not to exceed two pages, that specifically addresses prior supervisory experience, complex case experience, and why you are interested in serving as the First Assistant for the Western District of North Carolina); and three to five references (one of whom should be someone you worked for and one should be someone who worked for you) to: WDNCapplication@fd.org.

Applications will be reviewed by a search committee headed by Mr. JP Davis. Those selected for an interview will initially be interviewed remotely. A final in-person interview may also be conducted. No phone calls, please.

For applicants with disabilities, this organization provides reasonable accommodations, which are decided on a case-by-case basis. To request a reasonable accommodation for any part of the application or interview process, please submit the request in writing to WDNCapplication@fd.org.

Position announced April 1, 2022; open until filled. Applications received by May 15, 2022, will be given priority consideration. Interviews are expected to be held during late May 2022.

**The Federal Public Defender Office is an equal-opportunity employer.**

# EXHIBIT C

**From:** Cooper Strickland ████████████████████
**Sent:** Friday, December 11, 2020 2:28 PM
**To:** Caryn Devins ████████████████
**Subject:** Fwd: Ethics Inquiry

---------- Forwarded message ---------
**From:** Nichole McLaughlin ██████████████
**Date:** Fri, Dec 11, 2020 at 1:52 PM
**Subject:** Re: Ethics Inquiry
**To:** Cooper Strickland ██████████████████ >

Cooper,

Thank you for your inquiry. Your client does not have a conflict appearing before the court and court officials until her identity is revealed. Thereafter, I think all the parties and the court must consent. In the alternative, her matters can be moved to a different judge.

Please let me know if I can assist you further.

Nichole P. McLaughlin
Assistant Ethics Counsel
District Bar Liaison
North Carolina State Bar
217 E. Edenton St.
Raleigh, NC 27601
919-719-9238 Direct Dial

**COMMUNICATIONS WITH STATE BAR – EMAIL ONLY**

Effective immediately and until further notice, please communicate with the State Bar through email only. Attempts to communicate with the State Bar via United States Mail, UPS, FedEx, telephone, or facsimile may result in substantial delay.

---

**From:** Cooper Strickland ██████████████████
**Sent:** Friday, December 11, 2020 8:27 AM
**To:** Ethics Advice <ethicsadvice@ncbar.gov>
**Subject:** Ethics Inquiry

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Good Morning,

I am seeking ethics advice on behalf of a client who is an attorney admitted to practice in North Carolina. My client is a former court employee who filed an employment discrimination complaint against the former court employer and various court officials. The litigation is currently pending. My client's identity is not public at this point in the litigation, because of a court ordered pseudonym. The pseudonym is the reason why I am sending this email on behalf of my client.

My client is currently in private practice. Out of an abundance of caution, **are there any ethical concerns with my client appearing in cases before the court or court officials against whom she filed a civil complaint?** For context, the court and court officials continue to conduct business involving my client in such a way that makes clear that they have not identified any conflicts of interest or other issues related to the pending litigation.

Thank You,

Cooper Strickland
(828) 817-3703
NC Bar No. 43242

Please be advised that the contents of this message and any reply may be subject to disclosure under North Carolina law. Informal ethics inquiries and advisories communicated via electronic mail are confidential pursuant to Rule 1.6 of the Rules of Professional Conduct. Attorney Client Assistance Program communications and Lawyer Assistance Program client communications via electronic mail are also treated as confidential pursuant to Rule 1.6 of the Rules of Professional Conduct and N.C. Gen. Stat. 84-32.1.
--
Cooper

# EXHIBIT D

ONE HUNDRED SEVENTEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–3951
judiciary.house.gov

March 14, 2022

Caryn Devins Strickland, Esq.
1563 Massachusetts Avenue
Cambridge, MA 02138

Dear Ms. Strickland:

The Subcommittee on Courts, Intellectual Property, and the Internet will hold a hearing on "Workplace Protections for Federal Judiciary Employees: Flaws in the Current System and the Need for Statutory Change" on March 17, 2022, at 10:00 a.m. in room 2141 of the Rayburn House Office Building.

I invite you to testify at this hearing. Please prepare a written statement of proposed testimony prior to your appearance. The written statement may be as extensive as you wish and will be included in the hearing record. To allow sufficient time for questions at the hearing, please briefly highlight the most significant points of your written statement in an oral presentation lasting five minutes or less. Oral testimony at the hearing, as well as answers to questions submitted for the record, will be printed as part of the verbatim record of the hearing.

To enable the Subcommittee to prepare for the hearing, please submit an electronic copy of your written statement, together with any supplemental materials; a current curriculum vitae (CV) or short bio; and a completed Truth in Testimony Disclosure Form (Disclosure Form) ***not later than two business days in advance of the hearing***. Your written statement and CV or bio should be prepared in Microsoft Word or Adobe Acrobat. Please number all pages of the written statement, and attach a cover page with your name, position, date, and the title of the hearing.

Be advised that your written statement, CV or bio, and Disclosure Form will be made part of the public record and posted on the Committee's website pursuant to House Rule XI, clause 2(g)(5). In addition, should you want any portion of these documents to be redacted, please submit a separate redacted version of such document(s). These documents should be emailed to Atarah McCoy on my staff at atarah.mccoy@mail.house.gov.

Additionally, if you wish to participate in the hearing remotely, my staff will work with you to arrange a practice session of the Zoom Video Webinar technology to address any questions or technical matters that may arise. If you have any questions or concerns, please contact Subcommittee Counsel Matthew Robinson on my staff at matthew.robinson@mail.house.gov.

I look forward to your participation in the hearing.

Sincerely,

Jerrold Nadler
Chairman

Enclosure: Truth in Testimony Form

# EXHIBIT E

# JUDICIARY SALARY PLAN
## Rest of the United States - Table RUS
### 16.20% Locality Payment Included
### Effective January 3, 2022

| Grade | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $23,440 | $24,227 | $25,005 | $25,781 | $26,560 | $27,015 | $27,787 | $28,563 | $28,594 | $29,322 |
| 2 | $26,356 | $26,984 | $27,857 | $28,594 | $28,918 | $29,768 | $30,619 | $31,469 | $32,320 | $33,170 |
| 3 | $28,758 | $29,717 | $30,676 | $31,634 | $32,593 | $33,552 | $34,510 | $35,469 | $36,428 | $37,386 |
| 4 | $32,283 | $33,359 | $34,435 | $35,511 | $36,587 | $37,663 | $38,739 | $39,815 | $40,891 | $41,967 |
| 5 | $36,118 | $37,322 | $38,526 | $39,730 | $40,934 | $42,138 | $43,341 | $44,545 | $45,749 | $46,953 |
| 6 | $40,262 | $41,604 | $42,946 | $44,288 | $45,631 | $46,973 | $48,315 | $49,657 | $50,999 | $52,341 |
| 7 | $44,740 | $46,231 | $47,722 | $49,213 | $50,704 | $52,195 | $53,686 | $55,176 | $56,667 | $58,158 |
| 8 | $49,549 | $51,200 | $52,851 | $54,502 | $56,154 | $57,805 | $59,456 | $61,107 | $62,758 | $64,410 |
| 9 | $54,727 | $56,551 | $58,375 | $60,200 | $62,024 | $63,848 | $65,673 | $67,497 | $69,321 | $71,146 |
| 10 | $60,266 | $62,275 | $64,284 | $66,293 | $68,302 | $70,311 | $72,321 | $74,330 | $76,339 | $78,348 |
| 11 | $66,214 | $68,421 | $70,628 | $72,834 | $75,041 | $77,247 | $79,454 | $81,661 | $83,867 | $86,074 |
| 12 | $79,363 | $82,009 | $84,655 | $87,301 | $89,947 | $92,593 | $95,239 | $97,885 | $100,530 | $103,176 |
| 13 | $94,373 | $97,519 | $100,664 | $103,810 | $106,955 | $110,101 | $113,246 | $116,392 | $119,537 | $122,683 |
| 14 | $111,521 | $115,238 | $118,955 | $122,672 | $126,390 | $130,107 | $133,824 | $137,541 | $141,259 | $144,976 |
| 15 | $131,178 | $135,551 | $139,923 | $144,296 | $148,669 | $153,041 | $157,414 | $161,786 | $166,159 | $170,532 |
| 16 | $153,848 | $158,976 | $164,103 | $169,231 | $174,359 | $179,487 | $184,615 | $187,300 * | $187,300 * | $187,300 * |
| 17 | $176,690 | $182,580 | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * |
| 18 | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * | $187,300 * |

* Rate limited to the rate for Level III of the Executive Schedule.

# EXHIBIT F

# Defender Organization Classification System



**2016 Version**
*Revised September 2016*

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 28 of 106

# DOCS

## Sections
Revised September 2016

| | |
|---|---|
| **1** | *General Information and Key Terms* <br> *Salary and Experience Scale* |
| **2** | *Appointment and Compensation of Assistant Defenders* |
| **3** | *Assistant Federal Defender Positions* |
| **4** | *Research and Writing Specialist Positions* <br> *Legal Intern Positions* |
| **5** | *Paralegal Positions* |
| **6** | *Investigator Positions* |
| **7** | *Interpreter and Librarian Positions* |
| **8** | *Legal Assistant Positions* |
| **9** | *Administrative Positions* |
| **10** | *Information Technology Positions* |
| **11** | *Office Support Positions* |
| **12** | *National Support Positions* |
| **13** | *Mitigation Specialist Positions* |

# RELEASE NOTES AND UPDATE INFORMATION

❖ **DOCS, December 2016 updates**
> (*DOCS2016.pdf* - full document)

> ➤ This version includes a capital mitigation specialist position description and a non-capital mitigation specialist position description as approved by the Judicial Conference.

❖ **DOCS, December 2012 updates**
> (*DOCS12212012.pdf* - full document)
> (*DOCS12212012Portfolio.pdf* – includes national positions)

> ➤ This version includes updated "Litigation Support Duties," which were added to all paralegal, investigator and CSA staff position descriptions, as approved by the DOCS Expert Panel.

❖ **DOCS, December 2010 Version, Third Edition.**
> (*DOCS1210.pdf* – full document.)

> ➤ The new *DOCS*. Supersedes all previous versions. The new edition reflects all of the adopted Federal Defender Compensation Study changes endorsed by the Defender Services Committee at its meeting in December 2009, and issued through a series of policy memoranda during 2010.

❖ **DOCS, November 1998 Version, Second Edition, Updated July 2000.**
> (*DOCS98_2d.pdf* – full document.)
> (*DOCS0700.pdf* – revisions package released July 2000.)

> ➤ Revisions to the ***Research and Writing Specialist*** position description (as reviewed by Defenders at the January 2000 conference).

> ➤ Addition of *Release Notes and Update Information* page.

❖ **DOCS, November 1998 Version.**
> (*DOCS1198.pdf* – full document.)

> ➤ The new *DOCS*. Supersedes all previous versions.

# TABLE OF CONTENTS

## DEFENDER ORGANIZATION CLASSIFICATION SYSTEM (DOCS)

**RELEASE NOTES AND UPDATE INFORMATION** ................................................................ i

**SECTION 1: GENERAL INFORMATION AND DEFINITION OF KEY TERMS**

| | | |
|---|---|---|
| I. | Introduction ................................................................................ 1-1 | |
| | A. | Purpose ........................................................................ 1-1 |
| | B. | Key Definitions ........................................................... 1-1 |
| | C. | Additional References ................................................ 1-2 |

| | | |
|---|---|---|
| II. | Appointment and Compensation of Personnel: Statutory Authority .............................. 1-2 | |
| | A. | General ........................................................................ 1-2 |
| | B. | Federal Public Defender Organizations (FPDOs) ......................... 1-2 |
| | C. | Community Defender Organizations (CDOs) ................................ 1-2 |

| | | |
|---|---|---|
| III. | Development and Contents of DOCS ........................................... 1-3 | |
| | A. | Purpose and Development of DOCS ............................ 1-5 |
| | B. | Categorization of DOCS Positions ............................. 1-5 |
| | | 1. Graded Positions ............................................. 1-5 |
| | |    a. General (includes DOCS position categories)................. 1-5 |
| | |    b. One-of-a-Kind Positions ................................. 1-6 |
| | |    c. National Support Positions ............................ 1-6 |
| | |    d. Legal Interns .............................................. 1-6 |
| | | 2. Ungraded (Attorney) Positions ...................... 1-6 |
| | | 3. Supervisory Positions............................................ 1-7 |
| | |    a. Supervisory Responsibilities…….. ........................... 1-7 |

| | | |
|---|---|---|
| IV. | DSC-Authorized Positions for FDOs........................................... 1-8 | |
| | A. | Process for Obtaining Positions:   Resource Requirements, Budget Requests, Supplemental Requests............................ 1-8 |
| | B. | Obtaining DSC Approval ............................................ 1-9 |
| | C. | Changes to DSC-Authorized Positions ....................... 1-9 |
| | | 1. General ............................................................ 1-9 |
| | | 2. Effecting Change............................................. 1-9 |
| | | 3. Reclassification............................................... 1-9 |
| | | 4. Mixed-Function Position ............................... 1-10 |
| | | 5. Exception to Approval Requirement ............. 1-10 |

| | | |
|---|---|---|
| V. | Appointing Personnel.................................................................. 1-11 | |
| | A. | Determining Qualifications ........................................ 1-11 |
| | | 1. Qualification Standards .................................. 1-12 |
| | | 2. General Work Experience ............................... 1-12 |
| | | 3. Specialized Work Experience ......................... 1-12 |
| | | 4. Selective Placement Factors ........................... 1-12 |
| | | 5. Creditability .................................................... 1-12 |
| | | 6. Educational Substitutions .............................. 1-13 |
| | | 7. Determination of Equivalence........................ 1-13 |

B.      Job Sharing ................................................................................................ 1-13
C.      Mixed-Function Positions ........................................................................ 1-14
D.      Position Reassignments ............................................................................ 1-14

VI.    Grade Levels ..................................................................................................... 1-15
A.      General ..................................................................................................... 1-15
B.      Entry Level .............................................................................................. 1-15
      1.     Standard DOCS Positions ............................................................. 1-15
      2.     Mixed-Function Positions .............................................................. 1-15
C.      Target Grade ............................................................................................ 1-16
      1.     Standard DOCS Positions ............................................................. 1-16
      2.     Mixed-Function Positions .............................................................. 1-16
D.      Saved Grade and Saved Pay Plan ............................................................ 1-17
E.      Possible Overtime Pay Requirement for CDOs ....................................... 1-17

VII.   Movement Within and Between Grade Levels .................................................. 1-17
A.      General ..................................................................................................... 1-17
B.      Within-Grade Increases (WGIs) .............................................................. 1-18
      1.     Definition ....................................................................................... 1-18
      2.     Eligibility ....................................................................................... 1-18
          a.    Waiting Period ...................................................................... 1-18
          b.    Performance .......................................................................... 1-18
      3.     Denial of WGIs ............................................................................. 1-19
C.      Promotions .............................................................................................. 1-19
      1.     Definition ....................................................................................... 1-19
      2.     Eligibility ....................................................................................... 1-20
      3.     Anniversary Date Status ................................................................ 1-20
      4.     Determining Proper Grade and Step for Promotions .................... 1-20
D.      Quality Step Increases (QSIs) ................................................................. 1-22
E.      Awards ..................................................................................................... 1-23
F.      Demotions ............................................................................................... 1-23

VIII.   Exceptions to DOCS Requirements ................................................................. 1-23
A.      General ..................................................................................................... 1-23
B.      Process for Obtaining Approvals ............................................................. 1-23

IX.    Updating and Revising DOCS .......................................................................... 1-24
A.      Identifying Need for New Positions or Revisions to Existing Policies ......... 1-24
B.      DOCS Expert Panel ................................................................................. 1-24
C.      DSC Approval of New Positions ............................................................. 1-24
D.      Drafting New Position Descriptions ........................................................ 1-24
E.      Modification to Existing DOCS Policies ................................................ 1-25

X.     Comparative Salary and Experience Scale Information ................................... 1-25
      *Comparative Salary and Experience Table* ................................................ 1-25

## SECTION 2: APPOINTMENT AND COMPENSATION OF ASSISTANT DEFENDERS

Appointment and Compensation of Assistant Federal Defenders .................................... 2-1
   (Effective May 26, 2010)

# SECTION 3: ASSISTANT DEFENDER POSITION DESCRIPTIONS

First Assistant Defender ...........................................................................................3-1
Second Level Supervisor .........................................................................................3-4
Third Level Supervisor ............................................................................................3-7
Senior Litigator .......................................................................................................3-10
Assistant Federal Defender ....................................................................................3-13

# SECTION 4: RESEARCH POSITION DESCRIPTIONS

Research and Writing Specialist .............................................................................4-1
Legal Intern .............................................................................................................4-6

# SECTION 5: PARALEGAL POSITION DESCRIPTIONS

Chief Paralegal .......................................................................................................5-1
Paralegal .................................................................................................................5-6
Assistant Paralegal .................................................................................................5-11

# SECTION 6: INVESTIGATOR POSITION DESCRIPTIONS

Chief Investigator ...................................................................................................6-1
Investigator .............................................................................................................6-7
Assistant Investigator .............................................................................................6-12

# SECTION 7: INTERPRETER AND LIBRARIAN POSITION DESCRIPTIONS

Chief Interpreter .....................................................................................................7-1
Interpreter ...............................................................................................................7-6
Librarian .................................................................................................................7-10

# SECTION 8: LEGAL SECRETARY/ASSISTANT POSITION DESCRIPTIONS

Secretary to the Defender .......................................................................................8-1
Secretary to the First Assistant ..............................................................................8-5
Senior Legal Assistant ............................................................................................8-9
Supervisory Legal Assistant ...................................................................................8-13
Legal Assistant .......................................................................................................8-17

# SECTION 9: ADMINISTRATIVE POSITION DESCRIPTIONS

Administrative Officer .............................................................................................9-1
Supervisory Administrative Assistant ......................................................................9-10
Administrative Assistant ..........................................................................................9-19
Financial Administrator ...........................................................................................9-28
Personnel Administrator ..........................................................................................9-33
Property and Procurement Administrator ................................................................9-38
Panel Administrator .................................................................................................9-43

# SECTION 10: INFORMATION TECHNOLOGY POSITION DESCRIPTIONS

Supervisory Computer Systems Administrator ........................................................10-1
Computer Systems Administrator ............................................................................10-7
Assistant Computer Systems Administrator ............................................................10-13

# SECTION 11: OFFICE SUPPORT POSITION DESCRIPTIONS

Administrative Secretary ..........................................................................................11-1
Case Management Assistant ....................................................................................11-5
Panel Assistant .......................................................................................................11-9
Clerical Assistant ....................................................................................................11-14
Receptionist ............................................................................................................11-18

# SECTION 12: NATIONAL SUPPORT POSITION DESCRIPTIONS

NITOAD:  Branch Chief, Branch Deputy Chief, Administrative Assistant, Domain Administrator and Network Administrator............................................................................................................12-1

NITOAD:  Programmer, Project Manager, Property & Procurement Administrator and Operating Systems Administrator...........................................................................................................12-28

National Litigation Support-NLS:  Administrator, Assistant Administrator and Paralegal.....................12-50

Federal Capital Habeas-2255 Project:  Project Director, Project Manager, Attorney, Paralegal and Research and Writing Specialist ..............................................................................................12-65

National SRC:  Attorney, Paralegal and Research and Writing Specialist...............................................12-92

National FCARC:  Attorney and Research and Writing Specialist...........................................................12-110

National Mitigation:  Mitigation Coordinator and Mitigation Paralegal ................................................12-120

National CRC:  Attorney, Paralegal and Investigator (Victim Liaison Specialist)...................................12-129

# SECTION 13: MITIGATION SPECIALIST POSITION DESCRIPTIONS

Non-Capital Mitigation Specialist.............................................................................................................13-1

Capital Mitigation Specialist.....................................................................................................................13-5

Case 1:20-cv-00066-WGY   Document 135-2   Filed 07/27/22   Page 34 of 106

# *DEFENDER ORGANIZATION CLASSIFICATION SYSTEM*

# *GENERAL INFORMATION AND DEFINITION OF KEY TERMS*

I.      **Introduction**

      A.      **Purpose**

This section, the *General Information and Definition of Key Terms,* provides Federal Public and Community Defender Organizations with general information concerning the authorities, responsibilities and processes associated with the appointment and compensation of graded personnel.[1]  Key terms are defined and personnel management policy statements are included.

      B.      **Key Definitions**

**DOCS:** the Defender Organization Classification System.  The DOCS is the personnel classification system for defender organizations.

**FDOs:**  Federal Public and Community Defender Organizations are collectively referred to as *FDOs, federal defender organizations*, or *defender organizations.*

**AOUSC:**  the Administrative Office of the United States Courts.

**DSC:**  the Judicial Conference Committee on Defender Services.

**ODS:**  the Office of Defender Services, AOUSC.

**OHR:**  the Office of Human Resources, AOUSC.

**USAO:**  the Office of the United States Attorney.

**JSP:**  the Judiciary Salary Plan.

---

[1]Position descriptions for defender organization attorneys (*ungraded* personnel) are included in the DOCS Manual as a matter of convenience.  As noted in **Section III.B.2** herein, policies and procedures associated with the appointment and compensation of attorneys are found in ODS policy memoranda.  Examples of the most recent memoranda are included in Section 2 for reference.  Updated memoranda concerning salary charts are sent by ODS to Defenders on an annual basis.

### C.    Additional References

FDOs should consult the *Guide to Judiciary Policy (Guide), Volume 12, Human Resources,* for additional information on judiciary personnel policies.

FDOs should also consult the *Federal Defender Operations Manual, Chapter 11 (Personnel),* for comprehensive information regarding personnel policies and procedures.

## II.    Appointment and Compensation of Personnel: Statutory Authority

### A.    General

The Criminal Justice Act *(18 U.S.C. § 3006A)* grants Federal Public Defenders the authority to appoint attorneys and other personnel.

### B.    Federal Public Defender Organizations (FPDOs)

The Federal Public Defender (FPD) appoints full-time attorneys in such numbers as approved by the circuit court of appeals *(18 U.S.C. § 3006A (g)(2)(A)),* and by the Judicial Conference Committee on Defender Services (DSC). The FPD may also appoint non-attorney personnel as authorized by the DSC.

The FPD may fix the compensation of attorneys and other personnel at rates not to exceed those paid to individuals of similar qualifications, experience, and responsibilities in the Office of the United States Attorney (USAO) for the same district. *(*see the *Guide, Volume 7, Defender Services.)*

### C.    Community Defender Organizations (CDOs)

Although not statutorily mandated, the DSC considers the authority of the CDO Executive Director comparable to that of the Federal Public Defender with respect to the appointment and compensation of personnel. Throughout DOCS, the term *Defender* or *Federal Defender* refers to the head of a FDO.

The DSC annually approves federal grants for CDOs. The receipt and use of grant funds is subject to the conditions set forth in the *Grant and Conditions. (*See the *Guide, Volume 7, Part A, Chapter 4 and its Appendix.)* Approval of a CDO grant by the DSC is based on the assumption that the CDO follows judiciary policies regarding appointment and compensation of personnel. DOCS, therefore, applies to CDOs.

Clause 15 of the *Grant and Conditions* requires a CDO to:

•    provide its employees with written personnel policies and other terms and conditions of employment;

- • furnish the ODS a copy of said policies and any subsequent changes thereto;
- • notify the ODS of the intent to fill a personnel vacancy.

## III. Development and Contents of DOCS

### A. Purpose and Development of DOCS

DOCS was developed to provide FDOs with a variety of positions that are comparable, in scope of responsibility and pay levels, to those used by the USAOs while meeting the unique needs of a defender organization. The needs of a 100-person office are quite different from those of a four- to six- person office. DOCS was designed to allow a Defender to structure his or her organization and select positions for the most effective office operations.

Prior to the implementation of DOCS, the positions available to FDOs were very limited. The duties and responsibilities included in the original position descriptions (written in the late 1960s or early 1970s) no longer accurately reflected the tasks performed by defender personnel. Additionally, the grade levels were not comparable to those of the USAO or other judiciary positions. Further, the rapid growth of the federal defender program combined with the divestiture of authority from the AOUSC to Defenders, redefined the role of many positions in defender operations. Changes in the nature of the practice of criminal law, increased Congressional oversight, and additional accountability and reporting requirements highlighted the limitations of the original position descriptions and emphasized the need for updated and expanded position descriptions.

Beginning in 1990, Defender organization personnel developed DOCS to meet the changing needs of all defender organizations. In May 1993, the FDOs adopted DOCS as the personnel classification system. In 1995, a *DOCS Expert Panel*, consisting of FDO Defenders and staff, was formed to review and recommend revisions to the DOCS positions descriptions. The groups' efforts are ongoing.

An 18-month Study on Compensation in Federal Defender Organizations was undertaken in 2008. The Study analyzed and compared the compensation levels and benefits of both graded and ungraded positions in Federal Defender Organizations (FDOs) to compensation levels and benefits in U.S. attorneys' offices (USAOs) to ensure parity at all levels. The study concluded in December 2009 when the contractor, Human Resources Research Organization, assisted

ODS in presenting the study recommendations to the Defender Services Committee.

Overall, the Study found that:

- FDO compensation is in compliance with 18 U.S.C. § 3006A(g)(2)(A).
- There are no major deficiencies with FDO compensation policies or patterns of over-compensation in FDOs relative to United States attorneys' offices.
- There is a considerable degree of parity for attorney and graded compensation systems.
- There are several policies that allow United States attorneys' offices to compensate their employees at higher levels than FDOs can provide.

The *DOCS Expert Panel*, which served as the primary source of specialized knowledge for the contractor and ODS during the study, considered the study findings and defender comments in August 2009. The *DOCS Expert Panel* submitted its recommendations to the Performance Measurement Working Group (PMWG) and the Defender Services Advisory Group (DSAG). At their meetings in September and October 2009, respectively, the PMWG and the DSAG endorsed the recommendations, which were then submitted for consideration by the Defender Services Committee's Long-Range Planning and Education Subcommittee. The Subcommittee endorsed the recommendations at its meeting in October 2009.

The full Defender Services Committee (the Committee) considered and endorsed the study recommendations at its meeting in December 2009.

The *DOCS Expert Panel* and ODS undertook the substantive work needed to implement the recommendations and reissue an updated DOCS in December 2010.

## B. Categorization of DOCS Positions

### 1. Graded Positions

#### a. General

To facilitate ODS's tracking of DSC-authorized positions, ODS has grouped the graded DOCS positions into six major *categories* according to type of positions (*see below*). FDOs are generally authorized several positions in each of the six DOCS categories.

The six ODS position categories are: Research and Writing/Paralegal; Investigator/Interpreter; Administrative; Information Technology; Legal Secretarial; and Office Support. The individual DOCS positions in each category are listed below:

---

## *DOCS Position Categories*

**Research & Writing/Paralegal**
Research & Writing Specialist
Legal Intern
Chief Paralegal
Paralegal
Assistant Paralegal

**Investigator/Interpreter**
Chief Investigator
Investigator
Assistant Investigator
Chief Interpreter
Interpreter
Librarian

**Administrative**
Administrative Officer
Supervisory Administrative Assistant
Administrative Assistant
Financial Administrator
Personnel Administrator
Property & Procurement Administrator
Panel Administrator

**Information Technology**
Supervisory Computer Systems Administrator
Computer Systems Administrator
Assistant Computer Systems Administrator

**Legal Assistant**
Secretary to the Federal Public or Community Defender
Secretary to the First Assistant Defender
Senior Legal Assistant
Supervisory Legal Assistant
Legal Assistant

**Office Support**
Administrative Secretary
Case Management Assistant
Panel Assistant
Clerical Assistant
Receptionist

GENERAL INFORMATION AND DEFINITION OF KEY TERMS
Defender Organization Classification System - DOCS
Revised: 2010
Page 1 - 5

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 39 of 106

### b. One-of-a-Kind Positions

The functions of several DOCS positions are considered unique, and only one such position is available to each organization. The positions that are limited to one per organization are identified in the DOCS description definitions as one-of-a-kind.

### c. National Support Positions

In order to economize, certain DOCS positions provide centralized support to all FDOs on a national program level. These positions are assigned to individual defender offices, yet support all FDOs. Position descriptions for these national support positions are contained in the DOCS in a reserved chapter available only through ODS. FDOs hosting national positions should consult with ODS regarding the DOCS title, grade level and position description prior to advertising or filling a national position.

### d. Legal Interns

FDOs regularly hire law students or recent law school graduates to assist with legal research, writing, and case preparation. The DSC does not specifically authorize these positions. Legal Interns are only hired as *temporary* employees. The Legal Intern position is often incorrectly referred to as a Law Clerk. The title *Law Clerk* is reserved for high-level positions on a judge's staff. **Legal Intern is the correct title for the defender organization position.** The Legal Intern position description is included in DOCS. An individual who has passed the bar cannot be placed in a Legal Intern position.

### 2. Ungraded (Attorney) Positions

The Federal Defender and all assistant federal defenders are considered ***ungraded*** positions. Salaries for these attorney positions *are not* based on the Judiciary Salary Plan (JSP) grade and step tables used to calculate salaries of graded personnel.

Position descriptions for the various AFD positions are included in the DOCS Manual as a matter of convenience. The AFD position descriptions contain a general explanation of the duties and activities associated with AFDs, based on those of the USAO. These position descriptions should be used as guidelines. ***Policies and procedures related to the appointment and compensation of AFDs, and applicable salary charts, are sent to FDOs by the ODS in the form of policy memoranda and***

*updates to Tab 2 of this manual. The individual memoranda and Tab 2 should be replaced as they are updated by ODS.*

The number of authorized ungraded positions is also tracked by ODS.

3.     **Supervisory Positions**

       a.     **Supervisory Responsibilities**

              Listed below are the types of responsibilities generally performed by supervisors who are either attorneys or graded employees. With few exceptions, supervisors meet the technical qualifications of the positions they supervise. They may have line responsibilities in addition to providing, on a daily basis, the technical and administrative supervision of employees who are performing a particular job function or functions. Technical supervision generally relates to the abilities associated with the functional responsibilities, e.g., technical proficiency in using interviewing techniques to obtain factual information from witnesses as an Investigator or applying the principles of financial accounting as a Financial Administrator. Administrative supervision generally relates to the ability to select, direct, develop, reward, and retain qualified people to perform their work.

              Employees holding supervisory positions generally perform the following list of supervisory tasks:

              1)     Plan work to be accomplished by subordinates, including setting and adjusting priorities and deadlines, and distributing and balancing the workload among employees.
              2)     Assign work to subordinates.
              3)     Evaluate work performance of subordinates by keeping in touch with the status and progress of work and maintaining records of accomplishments.
              4)     Give advice or assist with work in progress. Approve, revise, or reject completed work.
              5)     Interview and recommend candidates for vacant positions, identify training needs and conduct on-the-job training, establish performance standards consistent with job description, and recommend salary increases, promotions and awards for subordinate employees.
              6)     Hear and resolve subordinates' concerns or complaints, assist with problems when possible, and recommend and, as authorized, implement disciplinary actions when required.

7) Develop or accept recommendations from subordinates to increase productivity or quality.

8) Keep subordinates informed of the policies and procedures of the organization and make sure they are followed.

9) Approve leave in accordance with personnel policies.

10) Inform employees of available services and employee activities.

11) Report to the next level supervisor on performance, progress, and training needs, and on behavior or performance problems. Provide information to the next level supervisor as requested concerning promotions, reassignments, recognition, and personnel needs.

12) Facilitate and participate in annual performance reviews of subordinate employees.

Some supervisors may also be assigned budgetary or personnel responsibilities for the staff that they supervise.

## IV. DSC-Authorized Positions for FDOs

### A. Process for Obtaining Positions: Resource Requirements, Budget Requests, Supplemental Requests

Annually, FDOs are required to submit resource requirements to ODS for the fiscal year commencing several months in the future. For example, in February 2010, FDOs submitted resource requirements for FY 2011.

The information submitted includes a projected caseload for the upcoming fiscal year. The current year FTE levels and the projected caseload in the budget year are used to calculate an attorney and non-attorney FTE ceiling for each organization. If an organization requests any positions above the calculated FTE ceiling, justification must be provided for consideration by the Defender Services Budget Subcommittee (DSBS). The DSBS forwards a recommendation to the Defender Services Committee for each individual organization's budget and FTE ceiling for the upcoming fiscal year.

Once FDOs receive their yearly budgets, they are required to submit a monthly Electronic Status of Funds Report (ESFR) which shows projected surpluses or shortfalls. FDOs may submit requests for supplemental positions or funding for a specific case, or for a sudden increase in caseload, etc. Approval for supplemental requests is based on the justification submitted, the availability of funds and the guidelines established by the Defender Services Committee.

**B.    Obtaining DSC Approval**

Resource requests are reviewed by ODS.  Questions or concerns regarding the budget request are discussed with the Federal Defender/Executive Director or Administrative Officer.  Once a year, the Defender Services Committee's Budget Subcommittee meets to review FDO budgets for the upcoming fiscal year, and forwards a recommendation to the Defender Services Committee for its consideration.  The recommended budgets must fall within the Defender Services' Financial Plan as approved by the Executive Committee of the Judicial Conference.  The approved financial plan is based upon funding appropriated by Congress to Defender Services.

FPDO requests for new attorney positions must be approved by each Circuit.  (CDO new attorney requests do not require Circuit approval.)   After Circuit approval is obtained, **all new attorney positions must also be approved by the ODS prior to an offer of employment being made (for both FPDOs and CDOs).**

**C.    Changes to DSC-Authorized Positions**

    **1.    General:**  FDOs may find it necessary to change an authorized position to a different position.   The types of changes are indicated below.  The ODS tracks the number of positions authorized by the DSC according to district and position category (described in **Section III.B.1.a.** above).

    **2.    Effecting Change:** The ODS must approve changes to DSC-authorized positions.  All requests to ODS for approval of personnel actions must include a statement that the FDO has sufficient funding to support the requested action.  If additional funding is required, the request must be submitted to the DSC for approval, as described in **Section IV.B.** above.

    **FPDOs** must submit to the Office of Human Resources (OHR) an *AO-193, Request for Personnel Action* form, or its electronic equivalent using remote data entry (RDE), to effect either a reclassification or a mixed-function position.  **CDOs** are not required to submit additional paperwork.

    **3.    Reclassification**

    A reclassification changes the title of an existing **filled** position to one that more closely describes the duties that are actually performed by the employee.

    For example, a Defender has determined that a Legal Assistant is actually performing the duties associated with a Case Management Assistant, and

s/he should reclassify the position accordingly. The category would change from Legal Assistant to Office Support.

**ODS's prior written approval is required to reclassify an authorized position. The "Nature of Action" or NOA Code which FPDOs must submit to the OHR to effect this reclassification is 984. ODS's written approval should be attached to the reclassification request when submitted to OHR. (CDOs are not required to submit additional paperwork, but must obtain ODS written approval to reclassify a position.)**

4.      **Mixed-Function Position**

A **mixed-function position** combines the primary functions of two (or more) different DOCS positions, and may change the total number of authorized positions in two (or more) categories.

For example, an organization has been authorized four legal assistant positions and six paralegal positions, and the Defender determines that one paralegal is actually performing as 50% legal assistant and 50% paralegal. After requesting and receiving the ODS's written approval, the Defender could create such a mixed-function position, which would result in a change in authorized positions to 4.5 legal assistant and 5.5 paralegal.

Please refer to **Sections V.C.** and **VI.B.2.** below for additional information concerning mixed-function positions.

5.      **Exception to Approval Requirement**

There are certain "series" of DOCS positions which are so similar in nature that prior ODS approval is **not** required to reclassify positions within those series. These series are in three categories: **Paralegal, Investigator** and **Legal Assistant** positions.

An organization that is authorized one or more of these positions may appoint a new employee to any of the DOCS positions within the series for which s/he qualifies. The organization may also reclassify an existing employee to a different position in the same series without ODS approval.

For example, a Defender may determine that an Assistant Investigator meets the qualifications for, and is actually performing as, an Investigator. The Defender may reclassify the Assistant Investigator to Investigator. Or, the Defender may wish to reclassify a Legal Assistant to the position of Secretary to the First Assistant Defender, and s/he may do so without prior ODS approval.

Please note, however, that to reclassify a **Legal Assistant** as **Administrative Secretary,** or vice versa, ODS approval is required, because these two classifications fall into different *categories* of positions. Please refer to **Section III.B.1.a., and the listing of DOCS position categories,** above.

## V.  Appointing Personnel

### A.  Determining Qualifications

The Defender, or his/her designee, is responsible for determining the qualifications of prospective employees and ensuring that personnel employed by the organization meet the DOCS qualifications for the positions to which they are appointed.  **The Defender is the appointing authority, and that authority may not be delegated.**

A careful review must be made of the applicant's education, training and work experience, and a determination made of the highest-grade level for which the individual qualifies.  Although the Defender may appoint at a lower grade than the highest grade for which an applicant qualifies (for reasons such as funding constraints, a desire to evaluate the individual's performance for a certain period of time, etc.), this is not recommended.  The decision to appoint at a lower grade and promote at a later date will not entitle the employee to retroactive compensation at the higher rate.  Taking future actions to properly compensate an employee who was initially appointed at a lower level than that for which s/he qualified is very difficult.

Generally, individuals are appointed at the first step in a grade level.  However, in order to compete successfully for the services of a quality applicant, a Defender may consider it necessary to either match the current salary or other offer received by that applicant.  Please refer to the *Guide, Volume 12, Chapter 6.*

If the Defender erroneously sets the entrance grade lower than that for which the employee qualifies, the Defender may, at any time, request prospective promotion to the highest eligible grade.  Likewise, if a Defender determines that an existing employee's grade was improperly established, the Defender may, at any time, request prospective promotion to the highest eligible grade.  That promotion becomes effective in the first pay period subsequent to the date of the promotion request, and cannot be made retroactive.

General descriptions of the different types of qualifying experience are provided below.

1.    **Qualification Standards**

Qualification standards are considered the *minimum level* of knowledge, skill and/or ability. Certification or education requirements for professionals (e.g. attorneys, interpreters) **must be job related.**

2.    **General Work Experience**

General work experience refers to the minimum entry-level qualifications that demonstrate the applicant's ability to acquire knowledge and skills necessary to function within a position. General work experience cannot be credited as specialized experience.

3.    **Specialized Work Experience**

These elements are related directly to the duties of the position. This is experience required for above entry-level work. General work experience requirements and any minimum educational, licensure, or other special qualification requirements and selective factors established for the position must be met first. Specialized work experience must demonstrate the knowledge, skill, and ability (KSAs) necessary for successful job performance. When an applicant meets the experience requirement for a specific DOCS grade level, s/he also meets the experience requirements for lower grade levels in that position, as well as other similar DOCS positions at lower grade levels.

4.    **Selective Placement Factors**

Selective placement factors are the elements considered above minimum requirements, and are based on special circumstances of knowledge required. These elements do not alter minimum qualification standards. Licensure or certification and language fluency are examples of selective placement factors. Language fluency may be considered a minimum qualification for a position, depending upon cultural circumstances. Selective placement factors *cannot* be substituted for general or specialized experience requirements.

5.    **Creditability**

Creditable work experience provides the individual with the knowledge, skills and abilities (KSAs) to perform the duties of the position. One year of creditable experience is gained through completion of either twelve months or 52 weeks of creditable work experience, whichever comes first.

6. **Educational Substitutions**

Education above the high school level may be substituted for a prescribed amount of general, or where noted, specialized experience as detailed in each position description. Unless otherwise provided, education may be substituted for experience only in full year increments of academic study for the prescribed number of years of general experience.

If an academic degree is used as a qualification for appointment at a particular grade level, *all* requirements for that degree must have been completed and *the degree granted.* The Defender is responsible for ensuring that the degree was actually granted.

7. **Determination of Equivalence**

Experience attained outside the federal system, or in ungraded federal positions, must be evaluated and equivocated to the appropriate federal grade level. This applies exclusively to service outside the federal system, or to service in ungraded federal positions. **If a federal employee has attained the next lower grade in the federal service, determination of equivalency is not necessary.**

Non-federal work experience is subject to varying interpretations of relative complexity. Such experience must be examined for general relevance to the position in question, level of responsibility and complexity, and salary level. All valuable experience and training, including experience and training gained in religious, civic, welfare, service, and organization activities should be considered in determining qualifications, regardless of whether or not compensation was received. Unpaid experience should be given as much credit as paid experience if it is valuable and pertinent to the position in question.

Part-time experience is prorated according to the relation it bears to a full workweek.

Education may also affect the determination of equivalency. The manner in which education may be substituted for required years of employment experience, either general or specialized, is detailed in each position description.

B. **Job Sharing**

Job sharing is available in DOCS, and the Federal Defender may appoint two (or more) persons to fill one full-time authorized position. The total hours worked by

the individuals may not exceed the hours associated with one full-time position, or 40 hours per workweek.

**FPDOs** should note "job sharing" on the AO-193 form, or its electronic equivalent, that is submitted to OHR for processing. OHR will assign the same position number to all individuals who share that position, so that the 40-hour weekly work schedule *per position* is not exceeded.

**CDOs** should carefully track the hours of individuals in a job sharing situation to ensure that the authorized working hours per position/per workweek are not exceeded.

C.     **Mixed-Function Positions**

Mixed-function positions combine the performance of two or more DOCS positions into one position. DOCS provides flexible staffing options by allowing a Defender to create mixed-function positions. Defenders may find it useful to combine some positions.

Only graded positions may be combined to form a mixed-function position. Defenders may not create positions that are part graded and part ungraded (e.g., Research & Writing Specialist/Assistant Federal Defender). This is not permitted because the positions are subject to different compensation systems and different placement and advancement policies. A mixture of graded and ungraded positions cannot be accommodated in one mixed-function position.

Generally speaking, one-of-a-kind positions cannot be combined with another position to create a mixed function position.

To ensure that the records are correct concerning the number and type of DSC-authorized positions, as described in **Section IV.** above, a written request to create a mixed-function position must be submitted to, and approved by the ODS prior to processing the personnel action to classify/reclassify the mixed-function position to assure that work is organized in an efficient and cost-effective manner, and that the skills and abilities of employees are used to the fullest extent possible. Assignment  of work that results in a higher grade based on duties performed less than a majority of time generally is not efficient or cost-effective.

D.     **Position Reassignments**

A Defender may reassign an employee from one authorized position to another authorized position, based on an assessment of the individual's qualifications and the needs of the office. ODS approval is not required for this action.

For **FPDOs**, a Form AO-193, or its electronic equivalent, must be submitted to OHR to effect this change. **CDOs** should notify the ODS of any position reassignments, in accordance with Clause 15 of the Grant and Conditions agreement, which requires notification be given to the ODS prior to filling all personnel vacancies.

## VI.    Grade Levels

### A.    General

The grade levels of the DOCS positions are comparable to those in offices of United States Attorneys (USAOs). DOCS positions are graded according to the Federal Defender (FD) plan, which is identical to JSP and federal General Schedule (GS) positions.

### B.    Entry Level

#### 1.    Standard DOCS Positions

The first grade level on the Salary and Experience Scale (also referred to as the *grade ladder*) of each position is generally considered the minimum entry level for the position.

A professional *internship* is available in certain positions. A one- or two-year internship may be utilized. A Defender may hire into those positions, as an intern, an individual who does not possess the requisite years of specialized experience, at one or two grades lower than the minimum entry level for the position. The availability of internship is described in each position to which it applies.

#### 2.    Mixed-Function Positions

The proper grade of a mixed function position is determined by evaluation of the regularly assigned work which is paramount in the position. In most instances, the highest level work assigned to and performed by the employee for the majority of time is grade-determining. When the highest level of work is a smaller portion of the job, it may be grade-controlling only if:

- The work is officially assigned to the position on a regular and continuing basis;
- It is a significant and substantial part of the overall position (i.e., occupying at least 25 percent of the employee's time); and
- The higher level knowledge and skills needed to perform the work would be required in recruiting for the position if it became vacant.

Work which is temporary or short-term, carried out only in the absence of another employee, performed under closer than normal supervision, or assigned solely for the purpose of training an employee for higher level work, cannot be considered paramount for grade level purposes.

The entry level of a mixed-function position is determined by the percentage of time spent performing each DOCS position function. The entry grade for the mixed function position is the entry grade for the highest graded DOCS job that is performed at least 25 percent of the time.

**EXAMPLE:**    Legal Assistant          Grades 6-8    60%
                Asst. Paralegal          Grades 5-9    40%

The entry-level grade of the above mixed function Legal Assistant /Asst. Paralegal position would be 5.

## C.    Target Grade

### 1.    Standard DOCS Positions

The highest grade on the Salary and Experience Scale of each DOCS position is the target grade for that position. **The established target grade may not be exceeded under any circumstances; exceptions to this requirement are not available.**

**Please Note:** *Person-in-the-job* increases, available prior to the implementation of DOCS, were used to upwardly adjust the grades of experienced individuals who had reached the target grades of their positions. These increases are no longer available to FDOs. DOCS provides an adequate variety of positions, at grade levels comparable to the USAO and JSP, to properly compensate all FDO graded personnel.

### 2.    Mixed-Function Positions

The target grade of a mixed-function position is determined in the same manner as described for determining the entry grade of a mixed-function position.

**EXAMPLE:**    Legal Assistant          Grades 6-8    60%
                Asst. Paralegal          Grades 5-9    40%

The target grade of the above mixed-function Legal Assistant /Asst. Paralegal position would be 9

Note: Although the Legal Assistant job progresses at the one-grade interval whereas the Assistant Paralegal job progresses at the two-grade interval, the

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 50 of 106

Assistant Paralegal job is grade-determining. Therefore, the mixed function job is graded 5-7-9 following the Assistant Paralegal job's two-grade interval progression scheme. The qualifications requirements for each of the grades for the Assistant Paralegal and Legal Assistant positions should be reviewed to ensure the incumbent meets all general and specialized qualifications.

D. **Saved Pay Plan**

The Judicial Conference reinstated saved pay provisions for federal public defender and judiciary employees in September 2007. This plan provides that, under specific circumstances, a graded employee who is placed by management action into a different salary plan or pay table, or rehired/reclassified into a lower graded position, may continue to receive the same rate of basic pay as s/he would have received if s/he had remained in the former position. Under saved pay, an employee receives the same rate of pay that was received immediately before the reduction to the lower grade, but does not receive any step increases and receives a reduced employment cost index (ECI) rate until the employee's pay is overtaken by the regularly prescribed pay for the current position. For information concerning applicability of this policy in specific situations, FPDOs should contact OHR or consult the *Guide, Volume 12, Chapter 6, §680*; CDOs should contact the program duty officer in ODS**.**

E. **Possible Overtime Pay Requirement for CDOs**

**CDOs** may be required to pay overtime to certain nonexempt employees, in accordance with the Fair Labor Standards Act (FLSA), as well as state employment regulations. There are variations in Federal rules regarding overtime, and there are no uniform standards for states to use in defining *nonexempt employees*. ODS strongly recommends that the Defender and/or the Administrative Officer/Assistant in each CDO meet with a local Department of Labor representative to determine the liability of the organization with respect to overtime pay. The overtime pay requirement may affect a CDO's decisions with respect to setting grade levels and the advancement of graded personnel discussed in the following section. FPDOs are not legally permitted to pay overtime.

VII. **Movement Within and Between Grade Levels**

A. **General**

As noted in **Section VI. A.** above, employees in graded DOCS positions are compensated according to JSP grade levels that are identical to the GS levels of the USAO. Advancement within a grade, and between grade levels of DOCS positions, is administered in the same manner as for JSP positions. See the *Guide, Volume 12, Human Resources*. **FPDOs** must follow the *Guide* with respect to all salary-related personnel policies. Those same requirements are extended to

**CDOs** whenever possible, to ensure consistency in compensation for FDO employees who perform similar functions in the two types of organizations.

**B.      Within-Grade Increases (WGIs)**

**1.      Definition**

A within-grade increase (WGI) is the advancement of an employee to the next higher step in the same grade.  A WGI is also referred to as a ***step*** increase.

**2.      Eligibility**

**a.      Waiting Period**

The Within-Grade Increase Plan (see the *Guide, Volume 12, Chapter 6, §665.40)*  provides that each full-time or part-time employee in steps 1 through 9 will be eligible for a WGI after the appropriate waiting period at the next lower step has been completed. **FPDO** personnel are required to meet the specified waiting period, and it is ODS policy that all **CDO** personnel are subject to the same requirements.

The waiting period begins on the date the employee was hired or the date the employee was promoted to the current grade, whichever is most recent.   This month and day become the employee's *anniversary date.* The *WGI date* is the date on which an employee becomes eligible for a WGI, based on the following waiting periods: WGIs to steps 2, 3, or 4 require a 52-calendar week waiting period (approximately one year of service at the next lower step of the grade); WGIs to steps 5, 6, or 7 require a 104-calendar week waiting period (approximately two years); and WGIs to steps 8, 9, or 10, require a 156-calendar week waiting period (approximately three years) at the next lower step.

**b.      Performance**

The AOUSC's personnel/payroll system is keyed to automatically grant WGIs to eligible **FPDO** employees on their WGI dates, *unless they are specifically denied* by the Defender for unacceptable performance, as discussed below, or a promotion is granted in lieu of a WGI.   A **WGI should be granted only if the employee has performed at an acceptable level of competence during the waiting period**.  The FPDO should generate a   rating form   for   each   graded   employee   from   the   AOUSC's

personnel/payroll system for the Defender's action at least 90 days prior to the employee's WGI date. *If the employee's performance is acceptable, the rating form should be completed and maintained in the local office personnel file*.

**CDOs** should consider each employee's performance and determine that it is at the acceptable level prior to awarding WGI increases.

### 3. Denial of WGIs

If an employee is not performing at an acceptable level, the Defender may deny a WGI to the employee. **To deny a WGI in a FPDO, the FPD must appropriately complete the rating form and return it to the AOUSC at least two weeks prior to the WGI date, to ensure that the employee does not receive the WGI automatically.**

The Defender should give the employee written notice of any unacceptable rating, fully documenting the reasons for the denial of a WGI. If an employee whose performance level was determined unacceptable subsequently improves, the acceptable level may be certified as such by the Defender in any subsequent pay period and a WGI may then be awarded. Written notice to reinstate WGIs must be provided to the OHR. In such instances, the employee's WGI date will change to the date the WGI is awarded and the waiting period for eligibility for the next WGI will be calculated from that new date. WGIs may not be made retroactive.

**CDOs** also may deny a WGI to an employee whose performance is not acceptable. The employee should be given written notice of this action, which also should be fully documented in the employee's file. If performance improves and WGIs are reinstated by the CDO, it is recommended that the WGI date and eligibility waiting period be adjusted in the same manner as for FPDO employees.

## C. Promotions

### 1. Definition

A promotion is the advancement of an employee from one grade to the next higher grade.

GENERAL INFORMATION AND DEFINITION OF KEY TERMS

Defender Organization Classification System - DOCS
Revised: 2010
Page 1 - 19
Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 53 of 106

2. **Eligibility**

A promotion is available to an employee when: (a) the higher grade level has been previously authorized for the position, as per the DOCS position description; and (b) the employee has met the qualifications for promotion to that grade level. At the discretion of the Defender, a promotion may be awarded once an individual meets the requirements of the position for the next grade level, and completes the time-in-grade requirements. A promotion is not an entitlement; it should not be granted automatically simply because it is available. A promotion should be awarded only when the Defender determines that the employee's performance merits such recognition.

3. **Anniversary Date Status**

When a promotion is processed in conjunction with an employee's anniversary date, the anniversary date remains the same. However, if a promotion is authorized by an **FPDO** at any time other than on the anniversary date, the anniversary date will change to the date of the promotion, and the new WGI date waiting period begins as of that new date. **CDOs** should record anniversary dates and WGI waiting periods in the same manner.

4. **Determining Proper Grade and Step for Promotions**

When promoting an eligible employee to the next higher grade, the proper method for determining the employee's new step at that grade is as follows: Start with the employee's current grade and step, go two steps higher within the same grade and identify the salary amount for that step; then, at the next higher grade, find the lowest step at which the salary meets or exceeds that amount.

## Table 01: REST OF THE UNITED STATES

2010 Pay Rates of the Judiciary Salary Plan with 14.16% Locality Pay Differential

| Grade | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $20,324 | $21,003 | $21,679 | $22,351 | $23,027 | $23,424 | $24,092 | $24,766 | $24,792 | $25,422 |
| 2 | $22,851 | $23,395 | $24,151 | $24,792 | $25,071 | $25,808 | $26,546 | $27,283 | $28,021 | $28,758 |
| 3 | $24,933 | $25,764 | $26,595 | $27,426 | $28,257 | $29,088 | $29,919 | $30,750 | $31,581 | $32,412 |
| 4 | $27,990 | $28,922 | $29,855 | $30,788 | $31,720 | $32,653 | $33,586 | $34,519 | $35,451 | $36,384 |
| 5 | $31,315 | $32,359 | $33,402 | $34,445 | $35,489 | $36,532 | $37,576 | $38,619 | $39,663 | $40,706 |
| 6 | $34,907 | $36,070 | $37,233 | $38,397 | $39,560 | $40,723 | $41,886 | $43,050 | $44,213 | $45,376 |
| 7 | $38,790 | $40,084 | $41,377 | $42,671 | $43,964 | $45,258 | $46,551 | $47,844 | $49,138 | $50,431 |
| 8 | $42,960 | $44,391 | $45,823 | $47,254 | $48,686 | $50,117 | $51,549 | $52,981 | $54,412 | $55,844 |
| 9 | $47,448 | $49,029 | $50,611 | $52,192 | $53,773 | $55,354 | $56,935 | $58,516 | $60,097 | $61,678 |
| 10 | $52,252 | $53,994 | $55,736 | $57,478 | $59,221 | $60,963 | $62,705 | $64,447 | $66,189 | $67,931 |
| 11 | $57,408 | $59,321 | $61,234 | $63,148 | $65,061 | $66,974 | $68,888 | $70,801 | $72,714 | $74,628 |
| 12 | $68,809 | $71,102 | $73,396 | $75,689 | $77,983 | $80,276 | $82,570 | $84,863 | $87,157 | $89,450 |
| 13 | $81,823 | $84,550 | $87,278 | $90,005 | $92,732 | $95,459 | $98,187 | $100,914 | $103,641 | $106,369 |
| 14 | $96,690 | $99,913 | $103,136 | $106,358 | $109,581 | $112,804 | $116,027 | $119,249 | $122,472 | $125,695 |
| 15 | $113,735 | $117,527 | $121,318 | $125,109 | $128,900 | $132,692 | $136,483 | $140,274 | $144,065 | $147,857 |
| 16 | $133,389 | $137,836 | $142,282 | $146,729 | $151,175 | $155,622 | $160,068 | $164,515 | $165,300 * | $165,300 * |
| 17 | $153,194 | $158,300 | $163,406 | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * |
| 18 | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * | $165,300 * |

* The rate of pay payable at these steps is limited to the rate for Level III of the Executive Schedule, which is $165,300.

**EXAMPLE:**  To promote a Legal Assistant currently at the grade/step of 7/3:
- advance two steps to 7/5, note that the salary is $43,964
- find the lowest step at grade 8 that would meet or exceed that salary, which is 8/2, with a salary of $44,391.
- the correct promotion from grade/step 7/3 is to 8/2.

There are several situations in which this rule is modified:

If an individual is currently at step 9 or 10, it is not possible to perform the calculation as noted above. In those instances, determine the WGI *value* (which is the dollar difference between the steps in that grade), add that amount to the current salary **twice;** then proceed to the next grade to determine the proper step.

**EXAMPLE:**  To promote a Legal Assistant at the 7/9 level to grade 8:
- The WGI value at 7/9 (the difference between the salaries paid at 7/9 and 7/10) is $1,293. Double that amount to $2,586.
- Add $2,586 to the current salary of $49,138, for a total of $51,724.
- find the lowest step at grade 8 that meets or exceeds that salary, (in this example it is step 8, with the salary of $52,981). The employee would be promoted from grade/step 7/9 to 8/8.

If a promotion is awarded on an individual's anniversary date, and if the employee is eligible for a WGI on that anniversary date (see **Section VII. B. 2. a.** above), the WGI should be added when calculating the grade/step for the promotion. In other words, identify the salary amount at *three* steps, rather than two, above the current step in determining the proper

step at the next higher grade. Adding this additional step may, or may not, affect the new grade/step.

The following examples illustrate how promotions, awarded first on a non-anniversary and secondly on the anniversary date, would be determined for two individuals. In one situation, the result would change; in the other, it would not:

**EXAMPLE:**

Investigator John Smith has been at grade/step 11/6 for one year and eight months. Grade 12 is available in that position, and he meets the requirements for promotion to that grade. The Defender is promoting Smith to Grade 12 as of February 20. This is not his anniversary date, and because he has not completed the WGI waiting period at step 6 (which is approximately two years), he is not eligible for a WGI to step 7. Therefore, to calculate: advance two steps, from 11/6 to 11/8 ($70,801), then to the lowest step at grade 12 that meets or exceeds that salary, which is 12/2 ($71,102). *But*, if the Defender delays the promotion until June 20 (Smith's anniversary date and the date he completes the 104-week waiting period at step 6), he is eligible for a WGI to an 11/7, then up two steps to 11/9 ($72,714), and the correct promotion then would be to 12/3 ($73,396).

**EXAMPLE:**

Research and Writing Specialist Mary Jones, grade/step 12/3, is being promoted on a non-anniversary date. Advance to 12/5 ($77,983), then promote to the 13/1 level ($81,823). For Ms. Jones, an anniversary-date promotion would result in the same new grade/step: 12/3 to 12/4, then to 12/6 ($80,276), and the promotion to 13/1 ($81,823).

## D. Quality Step Increases (QSIs)

The judiciary's Quality Step Increase (QSI) Program was designed to recognize and reward, on a continuing basis, employees who maintain outstanding performance. The QSI program was approved for graded personnel by the Judicial Conference at its 1976 session; but QSIs were suspended for all personnel in Fiscal Year 1993. At its March 1998 session, the Judicial Conference granted federal defenders the authority to reinstate QSIs for graded employees in their organizations, to the same extent and within the same constraints as the offices of United States Attorneys. The policy for granting QSIs can be found in the *Federal Defender Operations Manual*.

### E. Awards

The awards program set forth in the *Guide to Judiciary Policy* for court employees specifically **excludes** FPDOs. The awards available to FDO employees are Quality Step Increases (QSIs), which are discussed above, and Time-Off and On-the-Spot Awards, discussed in this section.

In December 2009, the Defender Services Committee approved the establishment of an FDO awards program to implement Time-Off and On-the-Spot Awards for employees of FDOs, comparable to awards available to employees of USAOs.

The policy for granting awards can be found in the *Federal Defender Operations Manual.*

As set forth in the *Guide, Volume 12, Chapter, 6, §660.30,* the aggregate pay for any FDO employee may not exceed the salary of a district court judge.

### F. Demotions

A demotion is a change to a lower grade, based upon an employee's unsatisfactory job performance. Should this type of action be necessary, please refer to the *Guide*, *Volume 12, Chapter 6, §645.60.*

## VIII. Exceptions to DOCS Requirements

### A. General

Although DOCS positions will continue to be reviewed and revised as appropriate, requests for exceptions are anticipated. All requests for exceptions will be considered; however, exceptions will be granted only in truly unusual circumstances or when the proposed exception points out a problem with a DOCS position or policy that should be corrected in the next revision of that position description.

### B. Process for Obtaining Approvals for Exception Requests

A written request for exception should be sent to the ODS, fully detailing the reason(s) for the request. The ODS will evaluate the request. The ODS will promptly distribute the request and the ODS evaluation to the *DOCS Expert Panel*. The request will be considered, and a determination will be made. Written approval will be forwarded to the requesting Defender as soon as possible. If the exception request is denied, a written explanation will be provided to the Defender.

## IX.    Updating and Revising DOCS

### A.    Identifying Need for New Positions Or Revisions to Existing Policies

As the priorities and requirements of the federal defender program change in future years, DOCS will be subject to review and revision. If a Defender, or group of Defenders and/or Administrators, believes there is a need to create a new DOCS position, or a series of positions, a detailed proposal should be submitted to the ODS. The ODS will evaluate the request, and consult with the Executive Office for United States Attorneys (EOUSA) to determine whether a comparable position, or series of positions, exists in the USAOs.  All suggestions for new DOCS positions and the ODS evaluation will be forwarded to the *DOCS Expert Panel* for further action.  The ODS and the *DOCS Expert Panel* will follow a similar protocol when evaluating requests to revise existing DOCS requirements and policies.

### B.    DOCS Expert Panel

The *DOCS Expert Panel* will continually work with the ODS to update and revise DOCS as needed.  The *DOCS Expert Panel* will develop new positions, modify existing DOCS policies, and review requests for exceptions to DOCS requirements and generally represent the Defender community in all DOCS-related matters.

### C.    DSC Approval of New Positions

The DSC does not review and approve each individual DOCS position description. The DSC is notified and approves the series or types of positions available to defender organizations.  When the ODS and *DOCS Expert Panel* have determined that additional positions are necessary, a proposal concerning the development of new position descriptions is submitted by the ODS to the DSC for approval.   After DSC approval is received, the positions are developed and adopted by the Defenders as outlined below.

### D.    Drafting New Position Descriptions

The ODS and the *DOCS Expert Panel* will identify the individual(s) in the defender community who are most familiar with requirements of the position description(s) under development, and will request that those individuals draft the new position description(s).  The new DOCS positions will be forwarded to all members of the *DOCS Expert Panel*, and selected staff members in the ODS and OHR at the AOUSC, for review and comment.  The ODS and the *DOCS Expert Panel* chair will jointly agree on finalizing each position description.  For new national positions, the *DOCS Expert Panel* is not consulted.   Instead, the appropriate oversight committee or advisory group participates in the process of developing the new national position description.

The new DOCS position description(s) will be distributed to all Defenders for review and comment, revised as considered appropriate by the ODS and the *DOCS Expert Panel*, and then redistributed for adoption by a vote of the Defenders.  The approved positions will be incorporated into the DOCS Manual and distributed to the defender community.  New national position descriptions are distributed to those with direct knowledge and involvement in the national program.

### E.     Revisions to Existing DOCS Policies

When a Defender has a suggestion for a revision to an existing policy, a written request should be sent to the ODS, fully detailing the reason(s) for the suggested change in policy.  The ODS will evaluate the request.  All suggestions for revisions to DOCS policies and the ODS evaluation will be forwarded to the *DOCS Expert Panel* for further action.  The request will be considered, and an initial determination will be made about the feasibility of the proposal. Depending on the nature of the proposed policy, the issue may require additional research or coordination with one or more of the advisory or working groups. The ODS will determine if final disposition of the request will be issued by the Assistant Director, ODS, or by the DSC based on the scope and impact of the proposed change.  Written notification of the outcome will be forwarded to the requesting Defender by the ODS as soon as possible.

## X.     The Comparative Salary and Experience Scale

The following table provides summary grade and experience requirements information for each DOCS position.  Each position is listed in the far left column. Moving horizontally, the numbers in each column represent the number of years of general and specialized experience (expressed as *g/s*) required to qualify for the grade listed at the top of each column.

Please note:  The general and specialized years of experience identify qualifications requirements for the employees holding these positions at these grade levels.  Some positions have specific grade qualifiers.  Please refer to the DOCS descriptions when making grade determinations.

# DOCS: COMPARATIVE SALARY AND EXPERIENCE TABLE
## Summary of Grade Levels, General and Specialized Years of Experience for all DOCS Positions
(updated May 14 2012)

| | DOCS Grades | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Legal Staff** | **4** | **5** | **6** | **7** | **8** | **9** | **10** | **11** | **12** | **13** | **14** | **15** |
| First Assistant Defender (AD-37) | | | | | | | | | | | | |
| Second Level Supervisor (AD-37) | | | | | | | | | | | | |
| Third Level Supervisor (AD-31, AD-35) | | | | | | | | | | | | |
| Senior Litigator (AD-33, AD-35 (if pre-3/24/1995)) | | | | | | | | | | | | |
| Assistant Federal Defender (AD-21, AD-24 to 29) | | | | | | | | | | | | |
| Research and Writing Specialist | | | | | | 3/2 | | 3/3 | 3/4 | 3/5 | 3/6 | 3/7 |
| Legal Intern | | Intern | | Intern | | 3/2 | | | | | | |
| Chief Paralegal | | | | | | | | | | 3/5 | 3/6 | 3/7 |
| Paralegal | | | | | | | | 3/3 | 3/4 | 3/5 | 3/6 | |
| Assistant Paralegal | | Intern | | Intern | | 3/2 | | | | | | |
| Chief Investigator | | | | | | | | | | 3/5 | 3/6 | 3/7 |
| Investigator | | | | | | | | 3/3 | 3/4 | 3/5 | 3/6 | |
| Assistant Investigator | | Intern | | Intern | | 3/2 | | | | | | |
| Chief Interpreter | | | | | | | | | | 3/5 | 3/6 | 3/7 |
| Interpreter | | | | | | 3/2 | | 3/3 | 3/4 | 3/5 | 3/6 | |
| Librarian | | | | 3/1 | | 3/2 | | 3/3 | 3/4 | | | |
| Secretary to Defender | | | | | 2/3 | 2/4 | 2/4 | | | | | |
| Secretary to First Assistant | | | | 2/2 | 2/3 | 2/4 | | | | | | |
| Senior Legal Assistant | | | | | | 2/4 | | | | | | |
| Supervisory Legal Assistant | | | | | 2/3 | 2/4 | | | | | | |
| Legal Assistant | | | 2/1 | 2/2 | 2/3 | | | | | | | |
| **Administrative Staff** | | | | | | | | | | | | |
| Administrative Officer | | | | | | | | 3/3 | 3/4 | 3/5 | 3/6 | 3/7 |
| Supervisory Administrative Assistant | | | | | | | | | 3/4 | 3/5 | | |
| Administrative Assistant | | Intern | | Intern | | 3/2 | | 3/3 | 3/4 | | | |
| Financial Administrator | | Intern | | Intern | | 3/2 | | 3/3 | 3/4 | | | |
| Personnel Administrator | | Intern | | Intern | | 3/2 | | 3/3 | 3/4 | | | |
| Property and Procurement Administrator | | Intern | | Intern | | 3/2 | | 3/3 | 3/4 | | | |
| Panel Administrator | | | | 3/1 | | 3/2 | | 3/3 | 3/4 | 3/5 | | |
| **Information Technology Staff** | | | | | | | | | | | | |
| Supervisory Computer Systems Administrator | | | | | | | | | | 3/5 | 3/6 | |
| Computer Systems Administrator | | | | | | 3/2 | | 3/3 | 3/4 | 3/5 | | |
| Assistant Computer Systems Administrator | | Intern | | Intern | | 3/2 | | 3/3 | 3/4 | | | |
| **Office Support Staff** | | | | | | | | | | | | |
| Administrative Secretary | | | 2/1 | 2/2 | 2/3 | | | | | | | |
| Case Management Assistant | | 2/0 | 2/1 | 2/2 | 2/3 | 2/4 | | | | | | |
| Panel Assistant | | | 2/1 | 2/2 | 2/3 | | | | | | | |
| Clerical Assistant | 1/0 | 2/0 | 2/1 | 2/2 | | | | | | | | |
| Receptionist | | 2/0 | 2/1 | 2/2 | | | | | | | | |

# Assistant Federal Defender

# Appointment and Compensation Policies

Effective: May 26, 2010[1]

---

[1]These policies were last issued on October 1, 1998, and amended by a memorandum dated November 25, 2005. This version supercedes all previous versions.

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 61 of 106

**Assistant Federal Defender (AFD)**
**Appointment and Compensation Policies**

**Contents**

I.    **Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    Statutory and U.S. Judicial Conference Requirements
           Regarding Compensation of AFDs
      B.    Implementation of AFD Compensation Policies
      C.    Equal Employment Opportunity
      D.    ECI, Locality and Non-foreign COLA Adjustments

II.   **Appointment and Compensation of <u>Non</u>-Supervisory/<u>Non</u>-Senior
     Litigator AFDs (Line AFDs)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Authority to Appoint Line AFDs
      B.    Compensation of Line AFDs

III.  **Appointment and Compensation of Supervisory and
     Senior Litigator AFDs (S/SL AFDs)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    Appointment of S/SL AFDs
      B.    Compensation of S/SL AFDs

IV.  **Additional Compensation Policies Applicable to <u>All</u> AFDs** . . . . . . . . . . . . . . . . . . . 20

      A.    Salary Inequity Policy
      B.    AFD Salaries Exceeding the Applicable Salary Cap
      C.    Movement/Transfer of AFDs Between Locations with Different
           Locality/Non-foreign COLA Rates
      D.    Financial Disclosure Requirements

.

Effective: May, 26, 2010

**Assistant Federal Defender**
**Appointment and Compensation Policies**

## I.    Introduction

<u>CONTENTS</u>

A.    Statutory and U.S. Judicial Conference Requirements
      Regarding Compensation of AFDs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Implementation of AFD Compensation Policies  . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    Equal Employment Opportunity  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D.    ECI, Locality and Non-foreign COLA Adjustments  . . . . . . . . . . . . . . . . . . . . . . 3

      1.    Generally  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      2.    Defenders' Authority to Deny ECI/Locality  . . . . . . . . . . . . . . . . . . . . . . . 4

_____

A.    Statutory and U.S. Judicial Conference Requirements Regarding Compensation of
      Assistant Federal Defenders

Statutory requirements regarding compensation of assistant federal defenders (AFDs) in
federal <u>public</u> defender organizations (FPDOs) are found in section (g)(2)(A) of the Criminal
Justice Act, 18 U.S.C. 3006A, which provides, in part:

> Compensation paid to such attorneys . . . shall be fixed by the federal public defender at a
> rate not to exceed that paid to attorneys . . . of similar qualifications and experience of the
> Office of the United States Attorney in the district where representation is furnished or, if
> two districts or parts of districts are involved, the higher compensation paid to persons of
> similar qualifications and experience in the districts.

U.S. Judicial Conference requirements regarding compensation of all FPDO employees
are found in section 420.10.30 (b) of *Part A: Guidelines for Administering the CJA and Related
Statutes,* Volume 7, *Guide to Judiciary Policy,* which provides, in part, that:

> The federal public defender determines the compensation of assistant defenders and other
> personnel, which may not exceed the compensation paid to attorneys and other personnel
> of similar qualifications, experience, and ***responsibilities*** in the office of U.S. attorneys
> for the same district. (Emphasis added.)

Effective: May, 26, 2010

There are no statutory or Judicial Conference requirements addressing compensation of employees in Community Defender Organizations (CDOs).

B.      Implementation of AFD Compensation Policies

In its March 1993 report on the federal defender program, the U.S. Judicial Conference stated that the Criminal Justice Act contemplates equal pay between FPDO staff and comparably experienced and qualified staff in the U.S. attorneys' offices.  The Conference said that such parity will reflect the importance of the work performed in defender offices and will assist in recruiting and retaining qualified and diversified personnel.  Accordingly, the Office of Defender Services (ODS) implements AFD compensation policies that are essentially the same as Department of Justice (DOJ) guidelines regarding the compensation of assistant U.S. attorneys (AUSAs).  With regard to CDOs, the Defender Services Committee evaluates and approves CDO grants based upon the assumption that CDO employees will be compensated in accordance with the policies applicable to FPDO employees.  Accordingly, these AFD appointment and compensation policies are applicable to both FPDOs and CDOs.

**The policies in this document are effective May 26, 2010, and supersede all previous versions of the AFD appointment and compensation policies.**  However, any offers or commitments made prior to that date, pursuant to the previous version of these policies, should be honored.

These policies are to be used in determining all AFD starting salaries and salary adjustments, and must be used in conjunction with the AFD salary charts provided by ODS.  It is not possible for these policies to cover every situation.  If, in the judgment of the federal defender, variance from these policies is necessary, a request detailing the justification for the proposed variance should be submitted to ODS and the requested action should not be taken unless and until ODS approval is given.

C.      Equal Employment Opportunity

Defenders should be aware of equal employment opportunity (EEO) requirements applicable to appointment and compensation of employees.  Employment practices of **FPDOs** are governed by the provisions of the EEO plan and Employee Dispute Resolution procedures adopted by their respective circuits.  **CDOs** are required to comply with the EEO provisions stated in their grant and conditions agreements.  All defenders are reminded of the U.S. Judicial Conference's recommendation that national recruiting and EEO programs in the defender services system should be encouraged and facilitated.

Effective: May, 26, 2010

D.      ECI, Locality and Non-foreign COLA Adjustments

1.      Generally

Each AFD's salary consists of two components.  Salaries of AFDs stationed within the conterminous United States consist of basic pay[2] plus a locality adjustment.  AFDs stationed in Hawaii, Alaska, Puerto Rico, and the Virgin Islands receive basic pay with locality pay plus a non-foreign COLA adjustment until locality pay is completely phased-in for COLA as required by the implementation of the Non-Foreign Area Retirement Equity Assurance Act of 2009.

The annual employment cost index (ECI) adjustment, which is authorized each January, is an increase to an employee's <u>basic pay</u> amount.  The amount of the ECI adjustment does not vary by location.  All eligible employees nationwide receive the same ECI percentage adjustment.

The annual locality pay adjustment was designed to close the pay gap between the salaries of federal and non-federal employees located within the conterminous United States.  In these areas, each AFD's salary consists of a basic pay amount plus a locality pay amount.  The locality pay portion is determined by multiplying the applicable locality percentage rate times the individual's basic pay amount.  The applicable locality percentage rate varies by geographic location.  Each January, the locality percentage changes in each location — the old percentage is <u>replaced</u> by the new percentage.  At that time, each employee's salary is increased to reflect his/her new basic pay (which is the old basic pay increased by the new ECI adjustment) plus a new locality pay portion (which is the new basic pay times the new locality rate).  Employees in Hawaii, Alaska, Puerto Rico and the Virgin Islands will continue to receive a non-foreign COLA adjustment on top of the ECI and locality pay increases until implementation of the Non-Foreign Area Retirement Equity Assurance Act of 2009 is complete.

All eligible AFDs are authorized the same employment cost index (ECI), and the same locality or non-foreign COLA adjustments, that are authorized for eligible AUSAs in the same district(s) as the federal defender organization (FDO).

All information regarding these adjustments is provided to FDOs in memoranda from ODS, prior to implementation each January (or whenever a non-foreign COLA rate is changed).

---

[2] "Basic pay" is the employee's salary exclusive of any locality or non-foreign COLA adjustment.

Effective: May, 26, 2010

2.        Defenders' Authority to Deny ECI/Locality

Federal Defenders must always authorize any pay adjustment, and ECI/locality must be authorized before it can be implemented.  Locality pay is subject to the statutory limits placed on the compensation of assistant U.S. attorneys such that total pay may not exceed $100 less than the statutory maximum of Executive Schedule Level IV.   Defenders should always authorize both ECI and locality for all AFDs except as indicated below:

The locality pay adjustment may not be denied under any circumstances (this is true regardless of the AFD's performance and regardless of green or red-circled rates) unless a reduced amount is given to comply with the statutory limitations placed on assistant U.S. attorneys mentioned above.

The ECI adjustment may be denied only under the following circumstance:

The ECI must be denied for an AFD whose salary is a red-circled rate (as defined in section II.B.3.b. below), except that if the ECI/locality adjustments to the AD-level maximum amount raise this maximum higher than the AFD's salary, then the AFD must be given a partial ECI increase, enough to raise his/her total salary up to the new AD-level maximum.

**II.    Appointment and Compensation of <u>Non</u>-Supervisory/<u>Non</u>-Senior Litigator AFDs (Line AFDs)**

<u>CONTENTS</u>

A.    Authority to Appoint Line AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B.    Compensation of Line AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      1.    Overview of Line AFD Compensation System . . . . . . . . . . . . . . . . . . . . . 6

      2.    Determining the "AD-level" of Each Line AFD . . . . . . . . . . . . . . . . . . . . 7

      3.    AD-level Salary Minimums and Maximums . . . . . . . . . . . . . . . . . . . . . . 7
          a.    Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          b.    "Red-circled" and "Green-circled" Rates . . . . . . . . . . . . . . . . . . 7

      4.    Setting Starting Salaries of Line AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          a.    Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          b.    Determining the Number of Years of
               Professional Attorney Experience . . . . . . . . . . . . . . . . . . . . . . . 9
          c.    Selecting a Starting Salary Amount from within
               the Salary Range . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          d.    "Highest Previous Rate" Policy . . . . . . . . . . . . . . . . . . . . . . . . . 11
          e.    Changes to Established Starting Salaries . . . . . . . . . . . . . . . . . . 11

      5.    Annual Pay Review (APR) Pay Adjustments for Line AFDs . . . . . . . . . 11
          a.    Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          b.    Eligibility to Receive an APR Pay Increase . . . . . . . . . . . . . . . 12
          c.    Evaluation of AFDs' Performance as a Basis
               for Determining APR Pay Increases . . . . . . . . . . . . . . . . . . . . . 12
          d.    Determining the APR Pay Increase Amount . . . . . . . . . . . . . . . 12
          e.    APR Bonus Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          f.    Limitations on APR Pay Adjustments . . . . . . . . . . . . . . . . . . . . 14
          g.    Increases/Bonuses for "Red-Circled Rate" AFDs . . . . . . . . . . . 14
          h.    Increases/Bonuses for "Green-circled Rate" AFDs . . . . . . . . . . 14

      6.    Other Compensation for Line AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          a.    Salary Increase Via Elevation to a Supervisory
               or Senior Litigator AFD Position . . . . . . . . . . . . . . . . . . . . . . . 14
          b.    Salary Inequity Increases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      7.    Salary Caps for Line AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 67 of 106

A.      Authority to Appoint Line AFDs

Federal defenders are authorized to fill AFD positions in such number as is authorized by the Defender Services Committee.   Committee approval is always subject to the availability of funds, and restrictions may be imposed on that basis.  In FPDOs, the number of AFD positions must also be approved by the court of appeals for the circuit in which the FPDO is located. CDOs do not need Circuit approval of their AFD positions.

Individuals may be appointed to fill AFD positions only if they meet the qualification standards set forth in the AFD position descriptions in the Defender Organization Classification System (DOCS) manual.  An AFD may be designated as a "supervisory" or "senior litigator" AFD only if the requirements under section III.A. below are met.

B.      Compensation of Line AFDs

1.      Overview of Line AFD Compensation System

The system of compensation for Line AFDs is separate and distinct from the compensation system for supervisory and senior litigator AFDs (S/SL AFDs).  (The S/SL AFD compensation system is discussed in section III.B. of these policies.)  The Line AFD compensation system is primarily a system for determining starting salaries for newly hired AFDs and annual pay review (APR) pay increases for currently employed Line AFDs.  Line AFD starting salary charts and APR increase charts, provided annually by ODS, are used in making these determinations.

Both of the Line AFD salary charts list 7 levels of salary ranges, each level being applicable to a different level of "professional attorney experience".  Each level is identified by its own numbered "AD-level."  (Note: "AD" is DOJ's abbreviation of "administratively determined").  The two digit AD-level code is formed by adding the number "2" to the first digit of the "years of experience" column for 4 or more years experience.  The AD-21 level is assigned to the first pay range and represents professional attorney experience of less than four years.  An AFD at the AD-27 level is paid from the "at least 7 but less than 8 years of experience" range. DOJ added the "2" to the first digit of the years of experience in order to distinguish further the AD plan attorneys from the graded employees, whose graded system covers grades 1 to 15.

To use these charts, the defender must determine the AFD's level of attorney experience, identify the corresponding "AD-level" and the applicable salary range, and then select an appropriate salary amount from within that range.  The starting salary chart provides one salary range for each AD-level.  The APR increase chart has two ranges for each AD-level (one range for Line AFDs rated as "Meets or Exceeds Expectations" and the other range for those rated as "Substantially Exceeds Expectations") and the defender chooses which of the two ranges is appropriate based on the AFD's performance during the last 12 months.

The Line AFD compensation system also addresses:  salaries that are set at amounts above the maximum or below the minimum of the applicable range ("red-circled" and "green-circled" rates, respectively), and salary caps.  Annual "cost of living" type of salary increases are described in section I.D. of these policies.

       2.        Determining the "AD-level" of Each Line AFD

Each Line AFD must be assigned an "AD" level based on the number of years of professional attorney experience the AFD had as of his/her last anniversary date or entrance on duty date.  "Professional attorney experience" is defined in Section II.B.4.b. of these policies.  Either the starting salary chart or the APR increase chart can be used to determine the AFD's AD-level in this manner.  **An AFD's AD-level can be changed only on the basis of the number of years experience the AFD had as of his/her anniversary date.**

Each Line AFD's AD-level should be documented in his/her personnel records.  These records should note the future anniversary date on which the AFD's AD-level will change, and they should be kept updated with each change, so that this information may properly be used when determining Line AFD APR pay increases each year.

       3.        AD-level Salary Minimums and Maximums

       a.        Generally

The **AD-level minimum** is the amount at the bottom of the "Meets or Exceeds Expectations" range for that AD-level on the APR increase chart (which is the same as the bottom of the range for that AD-level on the <u>starting</u> salary chart).  The **AD-level maximum** is the amount at the top of that level's "Substantially Exceeds Expectations" range on the APR increase chart.  The amount at the top of the AD-29 level is the Line AFD "salary ceiling" — the highest salary level possible for a Line AFD.

       b.        "Red-circled" and Green-circled" Rates

**"Red-circled rate salaries"** are Line AFD salaries that exceed the AFD's AD-level maximum.[3]

Red-circled rate salaries should occur only if: (1) the AFD's salary exceeds the applicable AD-level maximum <u>upon conversion</u> to the new Line AFD compensation system (on October 1, 1998), or (2) an AFD's starting salary is set higher than the maximum pursuant to the "highest previous rate" policy — see section II.B.4.d. below).  In these instances, the AFD's salary will

---

[3] Note: No AD-29 level AFDs should ever have red-circled rates since the AD-29 level maximum is the Line AFD salary ceiling.

not be reduced, but will be held constant until the applicable AD-level cap amount overtakes the salary.  Specifically, when an AFD's salary is red-circled, the basic pay portion of the salary will be held constant (i.e., the AFD will not be given any APR pay increase or the employment cost index (ECI) increase awarded each January) until the AD-level maximum applicable to the AFD overtakes (becomes higher than) the AFD's salary.  The applicable AD-level maximum will eventually overtake such an AFD's salary because the AD-level maximum will be increased by annual ECI increases and because all red-circled AFDs will ultimately move into a higher AD-level (with a higher AD-level maximum).

While these red-circled AFDs may not receive ECI or APR pay increases, they will receive the full amount of any applicable locality adjustment (changed each January) even if it results in a salary higher than the AD-level maximum.[4]

If a Line AFD's salary exceeds the applicable AD-level maximum for any reason other than the two stated above, then immediate action may be necessary to reduce the salary and possibly recover overpayments pursuant to *Guide to Judiciary Policy*, Volume 20, Chapter 7.

Additional policies concerning red-circled rates are stated in sections II.B.4.d. and II.B.5.g. below.

**"Green-circled rates"** are Line AFD salaries that fall below the minimum of the "Meets or Exceeds Expectations" range applicable to the AFD's AD-level.  Green-circled rates may occur in three instances, with varying ramifications, as follows:

(1)  upon conversion to the new Line AFD compensation system.  In such instances, the AFD, if performing at least at the "Meets or Exceeds Expectations" level, may be given an immediate increase up to the applicable AD-level minimum.

(2)  when an AFD reaches an APR anniversary date that moves him/her to a higher AD-level (with a higher AD-level minimum) but is denied an APR pay increase due to poor performance (see section II.B.5.b. below), causing his/her salary to stay below the new AD-level minimum.  Such an AFD's salary may be raised up to the AD-level minimum as soon as his/her performance reaches the "Meets or Exceeds Expectations" level;

(3)  upon hiring of the AFD.   As stated in section II.B.4.c. below, defenders have the discretion to hire an AFD at a salary that is less than the minimum of the applicable starting salary range (although ODS does not encourage this practice).  Such an AFD may

---

[4] All ECI, locality and non-foreign COLA adjustments will continue to be addressed in memoranda provided to all federal defender organizations prior to the implementation of these increases each January.

not receive any increase, other than the ECI and locality or non-foreign COLA adjustments, until his/her first APR anniversary date.

Additional policies concerning green-circled rate employees are stated in sections II.B.4.c. and II.B.5.h. below.

    4.    Setting Starting Salaries of Line AFDs

        a.    Generally

Starting salaries of Line AFDs must be determined using the AFD starting salary chart(s) provided to federal defender organizations (FDOs) annually by ODS, in conjunction with the policies for using these charts set forth below.

The starting salary for a newly hired Line AFD is determined by selecting a salary amount from within the applicable salary range on the Line AFD starting salary chart. This is accomplished by: (1) determining the individual's number of years of prior "professional attorney experience" (as defined below), (2) using this number to determine the AFD's AD-level and applicable starting salary range on the starting salary chart, and (3) choosing an appropriate salary amount from within that range. For example, when hiring an AFD with 4 years and 9 months of professional attorney experience, the starting salary chart indicates that the starting salary should be selected from within the AD-24 salary range. The exact amount of the salary within that range is determined pursuant to the policies set forth in subsection II.B.4.c. below.

Exception: ("Highest Previous Rate Policy"): See section II.B.4.d. below regarding setting a Line AFD's starting salary higher than the AD-level maximum in order to match the AFD's salary in a previous federal service or FDO position.

        b.    Determining the AFD's Number of Years of Professional Attorney Experience

In determining the number of years of professional attorney experience, only activities that a practicing attorney would normally perform may be counted, and such experience may be counted only from the time that the AFD completed law school. Investigative, quasi-legal, and other types of non-attorney law enforcement-related or defense-related experience (e.g., experience as an agent of the Federal Bureau of Investigation or as an investigator in an FDO are not creditable in determining years of professional attorney experience). At the defender's discretion, legal research and writing experience obtained after graduation from law school may be counted as professional attorney experience.

Any calculation of years of professional attorney experience should include time the attorney was employed (in a position that provided professional attorney experience) but on leave

including, but not limited to, time spent on leave without pay, maternity leave, or while on sabbatical.

In determining the amount of experience to be credited, it is important to project an entrance-on-duty date. Applicants may acquire additional experience between the time their applications are submitted and the time they actually enter on duty.

c.      Selecting a Starting Salary Amount from within the Salary Range

Once the AFD's number of years of professional attorney experience has been determined, the starting salary amount must be selected from within the corresponding starting salary range.

Defenders are encouraged to set Line AFD starting salaries at the minimum amount in the applicable range. However, when the federal defender believes that a salary higher than the minimum is warranted, he/she may set the salary at any amount within the applicable starting salary range, as necessary: (1) to ensure consistency between the salary of the AFD being hired and the salaries of other AFDs in the organization, based on their relative experience and qualifications, or (2) to match the salary of an AUSA, having similar (or lesser) experience, qualifications, and responsibilities, in the same district(s) served by the FDO. ODS approval is not needed to award a starting salary higher than the minimum of the applicable range as long as the maximum of the range is not exceeded.

ODS approval of a Line AFD starting salary is needed only for salaries set higher than the maximum of the applicable starting salary range (except that ODS approval is not needed if a starting salary higher than the maximum is determined pursuant to the "highest previous rate" policy set forth in II.B.4.d. below.)

Note that some AD-21 Line AFDs will remain at the AD-21 level for anywhere from zero to four years before becoming an AD-24. Consequently, such AFDs will be subject to the same AD-21 range maximums (adjusted only for cost of living increases) year after year until the AFD reaches four years of attorney experience and becomes an AD-24. Accordingly, ODS recommends that when hiring a Line AFD at the AD-21 level, defenders set the starting salary low enough in the range to allow for appropriate APR pay increases each year until the AFD becomes an AD-24.

At the federal defender's discretion, Line AFD starting salaries may be set lower than the minimum amount of the applicable range, although defenders are reminded that such a practice will likely result in AFD salaries that are below those of comparably experienced and qualified AUSAs in the same district(s). Salaries that are below the minimum of the applicable starting salary range are "green-circled rates." A starting salary set at a green-circled rate may not be increased up to the AD-level minimum until the AFD's first APR anniversary date. (See section II.B.3.b. above.)

ODS advises that the justification for setting any starting salary at an amount <u>other</u> than the minimum amount of the applicable range should be documented in the AFD's personnel file.

d.        "Highest Previous Rate" Policy

Under the "highest previous rate" policy, a Line AFD's starting salary may be set higher than the maximum of the applicable starting salary range if necessary to match the salary (adjusted for locality) the AFD previously earned as an employee of any federal government entity or any FDO (including any community defender organization).  **Such salaries will be considered "red-circled rates," and subject to the provisions of section II.B.3.b. providing that such salaries must be held constant until they are eventually overtaken by a higher AD-level maximum.**  Under no circumstances may a Line AFD's salary be set higher than the Line AFD "salary ceiling" (i.e., the highest allowable salary for Line AFDs, which is equal to the maximum of the AD-29 level.)

Setting an AFD's starting salary based on the AFD's "highest previous rate" does not require ODS approval, but such an action should be fully documented by the FDO.  FDOs are encouraged to consult with ODS prior to setting any AFD's starting salary based on this policy.

e.        Changes to Established Starting Salaries

Once a starting salary amount has been established, it may not be later adjusted <u>retroactively</u> under any circumstances.  It may be later adjusted <u>prospectively</u> only in instances of administrative error, a misunderstanding with respect to pertinent qualifications, or if the starting salary was <u>improperly</u> set at a red-circled rate and must therefore be immediately reduced (see section II.B.3.b. above.).

5.        Annual Pay Review (APR) Pay Adjustments for Line AFDs

a.        Generally

APR-related pay adjustments are discretionary performance based increases in salary and/or bonus payments that can be given annually to an "eligible" AFD on his/her "anniversary date" as defined in section b. below.  Amounts, requirements, and limitations on APR-related pay adjustments is discussed in sections c. through h. below.

b.        Eligibility to Receive an APR Pay Increase

An AFD is eligible for an APR pay increase only if:  (1) the AFD's performance during the previous 12 months is determined to be at least "Meets or Exceeds Expectations" <u>and</u> (2) the AFD's salary, before the increase, is below the maximum of the APR salary range applicable to the AFD's AD-level and performance rating, as of this new APR anniversary date.

Eligible AFDs may receive an APR pay increase each year on their "anniversary date." For all FPDOs, and for CDOs on a bi-weekly payroll system, the AFD's anniversary date occurs on each <u>52 week</u> anniversary of the AFD's entrance-on-duty date.  For CDOs on a semi-monthly payroll system, the anniversary date occurs on each <u>one-year</u> (exactly) anniversary of the AFD's entrance-on-duty date.[5]  (I.e., The anniversary date always falls on the first day of a pay period.)

c.        Evaluation of AFDs' Performance as a Basis for Determining APR
            Pay  Increases

Although the APR increase charts and policies assume that APR pay increase determinations are made based on a performance rating of each AFD, there are no formal policies governing performance evaluations of employees in federal defender organizations. Accordingly, federal defenders may use their own performance evaluation systems.  It is suggested that defenders use systems with at least three ratings categories, including at least two categories for which an APR pay increase can be given (consistent with the APR increase chart) and at least one lower rating for which an APR pay increase cannot be given.  (The rating categories listed on the APR increase chart are the same as those used for AUSAs.)  Any organization that does not have a performance evaluation system in place may wish to consider the system suggested by the Defender Services Advisory Group's ad hoc group that conducted a study of this issue.  That group suggested using four ratings categories.

Regardless of the performance evaluation system used by an organization (if any), the APR increase chart should always be applied in determining the amounts of all Line AFDs' salary increases.  If the rating categories in an organization's evaluation system differ from the rating categories on the APR increase chart, the defender should use his/her discretion in determining the appropriate rating on the APR pay increase chart for each eligible AFD.

d.        Determining the APR Pay Increase Amount

The APR increase chart is used to determine each Line AFD's APR pay increase by selecting a new (higher) salary amount from within the applicable salary range on the chart.  The applicable range is found at the intersection of: (1) the column representing the AFD's

---

[5] See section IV.C. below for different rules regarding anniversary dates for AFDs who transfer from one defender organization to another.

performance rating (for performance over the previous 12 months), and (2) the row representing the AFD's AD-level (based on his/her years of "professional attorney experience") as of the effective date of the salary increase.

The exact amount chosen from within the applicable range is determined totally at the defender's discretion subject to the limitations described in II.B.5.e-f below.

For example, consider an AFD whose performance falls into the "Meets or Exceeds Expectations" performance category and who has a total of 5 years and 7 months of professional attorney experience at the time of the APR pay increase.   This AFD's new (increased) salary amount would be selected from anywhere within the salary range found in the AD-25 row and under the "Meets or Exceeds Expectations" column, as long as the amount chosen is not more than 10% higher than the old salary.

As indicated above, if a Line AFD's salary prior to the APR pay increase is higher than the maximum of the range applicable to the AFD's performance rating, he/she is not eligible to receive an APR pay increase and will not become eligible until the next anniversary date at which his/her salary does not exceed the applicable range maximum.

> e.      APR Bonus Payments

Defenders are authorized to approve one APR-based bonus payment in addition to, or in lieu of, an APR pay increase for each AFD whose performance "Meets or Exceeds Expectations" at the time of the AFD's anniversary date.   These bonus payments  must be documented and based on a performance review conducted by the defender.

A bonus payment is a one-time lump sum payment that does not increase the salary of an AFD.  For FPDOs, bonuses are paid from BOC 1157 in the "Personnel" budget category. FPDOs should use Nature of Action (NOA) code 944 for attorney bonuses.

Tax and Benefit Ramifications of Performance Bonuses:  **Note that** bonus payments are considered to be "income," and therefore are subject to all applicable federal, state and local income taxes, as well as to Social Security and Medicare taxes. (There are standard tax rates specific to bonus payments.)   However, for federal employees (including **FPDOs**), bonus payments are not considered part of the employee's "salary" for any purpose, including for purposes of determining benefit contributions and payments that are calculated as a percentage of the employee's "salary" (e.g., calculations of:  an employee's maximum allowable contribution to the Thrift Savings Plan, contributions to CSRS or FERS, payout of CSRS or FERS benefits, life insurance premiums, workman's compensation benefits, severance pay, or annual leave payout upon separation from the government).  **CDOs** should consult their benefit providers and other appropriate sources to determine if/when bonus amounts are factored into calculations of benefits or other payments.

Effective: May, 26, 2010

f.      Limitations on APR Pay Adjustments

Total APR-related pay adjustments, i.e. increases in salary and bonus payments, are limited to 10 percent of pay prior to the AFD's anniversary date.  **Pay adjustments that exceed 10 percent require the approval of the Assistant Director, Office of Defender Services**.

g.      Increases/Bonuses for "Red-Circled Rate" AFDs

As stated in section II.B.5.b.above, in order to be eligible to receive an APR pay increase, an AFD's salary must be lower than the maximum of the APR salary range he/she qualifies for on his/her anniversary date.  Note that, on their APR anniversary dates, **red-circled rate** AFDs with 4 to 9 years of professional attorney experience will advance to the **next higher AD-level**, and the maximum of the new AD-level will likely be higher than the AFD's salary.  Thus, most of these AFDs' salaries will no longer be red-circled, and they will become eligible for an APR pay increase.  **In all cases, however, an AFD may only be given an APR pay increase up to the maximum of the salary range for the performance rating and the AD-level applicable to that AFD.**   Red-circled rate AFDs are eligible for an APR bonus payment, regardless of salary, as outlined in section II.B.5.e-f above.

h.      Increases/Bonuses for "Green-circled Rate" AFDs

As stated in section II.B.5.b. above, if the defender believes that a Line AFD's performance is not at least "Meets or Exceeds Expectations," the AFD is not eligible for an APR pay increase.  If the AFD moves to a higher AD-level on his/her anniversary date (with a higher AD-level minimum), but is denied an APR salary increase, it may result in leaving the AFD's salary below the minimum of the "Meets or Exceeds Expectations" salary range for the AFD's new AD-level (i.e., it would be a **"green-circled rate"**).  If, at any time, such an AFD's performance improves to the "Meets or Exceeds Expectations" level, the defender may give the AFD an <u>immediate</u> salary increase up to the minimum of the "Meets or Exceeds Expectations" range for the AD-level that the AFD qualified for <u>as of his/her last APR anniversary date</u>.  Such increases are prospective only and the AFD's APR anniversary date would not change.   Once at the "Meets or Exceeds Expectations" range, the AFD is eligible to receive an APR bonus payment as outlined in sections e. and f. above.

6.      Other Compensation for Line AFDs

a.      Salary Increase Via Elevation to a Supervisory or Senior Litigator AFD Position

When a Line AFD is designated as a supervisory or senior litigator (S/SL) AFD, his/her salary may be increased up to any amount that is equal to or less than the salary cap for the AFD's new S/SL AFD level.  (These caps are discussed in section III.B. below.)  Criteria for

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 76 of 106

determining whether or not an AFD is eligible to be appointed to a supervisory or senior litigator position is provided in section III.A. below.

Upon designation to a S/SL AFD classification, the AFD's APR anniversary date is changed to the anniversary of the effective date of the action.

b.      Salary Inequity Increases

AFD salary inequity increases, which may be available to both Line AFDs and S/SL AFDs, are discussed in section IV.A. below.

7.      Salary Caps for Line AFDs

Under no circumstances may any **Line AFD** be paid a salary that exceeds the Line AFD "salary ceiling" for his/her locality area, as listed on the Line AFD salary charts.  The salary ceiling is the maximum amount of the "Substantially Exceeds Expectations" range of the AD-29 level.

In addition, each Line AFD is "capped" at the maximum salary for his/her AD-level, and if a Line AFD's salary exceeds the applicable AD-level maximum (i.e., red-circled rate AFDs), steps must be taken to bring the salary within that AD-level maximum, as explained in section II.B.3.b.

Section IV.B. below sets forth policies regarding corrective actions that must be taken when an AFD's salary exceeds any applicable salary cap (either the Line AFD salary ceiling or the applicable AD-level maximum).  Salary caps for supervisory and senior litigator AFDs are addressed in section III.B. below.

## III.    Appointment and Compensation of Supervisory and Senior Litigator AFDs (S/SL AFDs) and Acting Federal Defenders

CONTENTS

A.     Appointment of S/SL AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    1.     Appointment of Supervisory AFDs . . . . . . . . . . . . . . . . . . . . . . . . . 16
        a.     Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        b.     Appointment of First Assistant . . . . . . . . . . . . . . . . . . . . . . 16
        c.     Appointment of Second-Level and Third-Level Supervisory AFDs . . . . . . . . . . . . . . . . . . . . . . . . . 17

    2.     Appointment of Senior Litigator AFDs . . . . . . . . . . . . . . . . . . . . . . . 17

B.     Compensation of S/SL AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    1.     Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    2.     Senior Litigator Salary Cap Levels . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    3.     Additional Limitations on Salary Caps . . . . . . . . . . . . . . . . . . . . . . . 18

    4.     Other Compensation Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Appendix:     Summary of Requirements and Supervisory Minimums for S/SL AFDs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

---

A.     Appointment of S/SL AFDs

    1.     Appointment of Supervisory AFDs

        a.     Generally

There are three general levels of supervisory AFDs: First Assistant, second-level supervisor, and third-level supervisor.  All AFD appointment requirements stated in section II.A. are applicable to appointment of supervisory AFDs.  Additional requirements, applicable only to supervisory AFDs, are set forth below.

Effective: May, 26, 2010

A Line AFD may be elevated to a supervisory AFD position or a supervisory AFD may be elevated to a higher level supervisory AFD position. Upon designation to the higher level position, the AFD's APR date changes and the AFD becomes eligible for his/her next APR 52 weeks after the date of the action.

> b.      Appointment of First Assistant

Any organization that is authorized at least 6 AFD positions may designate <u>one</u> of them as the "First Assistant" (also known as "Deputy Assistant," "Deputy Defender" or "Chief Deputy"). No organization may designate more than one AFD in this position. The First Assistant functions as the principal assistant to the federal defender.

> c.      Appointment of Second-Level and Third-Level Supervisory AFDs

Second-level supervisors report to either the federal defender or the First Assistant, as designated by the defender. A second-level supervisory AFD supervises one or more third-level supervisory AFDs. Accordingly, an organization must be authorized and have designated at least one third-level supervisor for every second-level supervisor designated (i.e., an organization cannot designate more second-level supervisors than third-level supervisors).

Third-level supervisors report to the federal defender, First Assistant or second-level supervisor, as designated by the defender. AD-31 level third-level supervisors may be designated to supervise Line AFDs when an organizational unit (capital habeas, appellate, trial, or branch office) is authorized four or more AFDs. Once a particular unit is authorized six or more Line AFDs, the third-level supervisor is eligible to be elevated to the AD-35 level.

> 2.      Appointment of <u>Senior</u> <u>Litigator</u> AFDs

All AFD appointment requirements stated in section II.A. are applicable to appointment of senior litigator AFDs. Additional requirements, applicable only to senior litigator AFDs, are set forth below.

The senior litigator designation is intended as a recognition of truly outstanding AFDs based on their overall careers as litigators. An incumbent of this position is responsible for the in-office training of AFDs less knowledgeable in advocacy skills. **The senior litigator position is <u>not</u> a supervisory position.**

> **Each FDO is authorized to designate <u>one</u> (and only one) AFD as a senior litigator.**

B.      Compensation of S/SL AFDs

1.      Generally

All S/SL AFD salary actions are determined using the S/SL AFD salary charts, which include AD-levels for each position, with corresponding starting salary and APR pay increase ranges.  Each organization is furnished the S/SL AFD salary chart(s) applicable to its locality area(s) that reflect the current ECI and locality-based adjustments.

Upon initial designation as a supervisory AFD or a senior litigator, an AFD's **starting salary** may be set at any amount that does not exceed the applicable salary cap.  The anniversary date for a S/SL AFD is the 52 week anniversary of the date the AFD was hired by the organization or the date he/she was last elevated to a higher level AFD position, whichever is more recent.  S/SL AFDs are eligible for APR pay increases (not to exceed the applicable salary cap), and APR bonus payments.  APR-related pay adjustments, i.e. salary increases and/or bonus payments that exceed 10 percent of the S/SL AFD's  pre-APR pay require approval from the Assistant Director, ODS.  See section IV.A. below for policies regarding AFD salary inequity increases.

2.      Senior Litigator Salary Cap Levels

Prior to March 24, 1995, all senior litigator AFDs were subject to the AD-35 level salary cap.  In March 1995, ODS's policy was modified, consistent with DOJ policy, to provide that AFDs designated as senior litigators prior to March 24, 1995 will remain subject to the AD-35 salary cap and those so designated on or after this date are subject to the AD-33 level cap.

3.      Additional Limitations on Salary Caps

Pursuant to an identical DOJ policy applicable to AUSAs, no AFD salary cap may exceed the amount equal to the U.S. attorney's salary minus $100.  Accordingly, where necessary, some S/SL AFD salary caps, in a few districts, reflect reduced locality adjustments, applied so that the resulting salary cap is equal to this amount.  Further, in districts where the defender is paid less than the U.S. attorney, the salary cap for First Assistant AFDs may exceed the salary of the defender.  In these situations, the defender has the discretion to allow the salary of any such AFD to exceed the defender's salary or to hold the AFD's salary at a specified ceiling equal to or lower than the defender's salary.

4.      Other Compensation Issues

Salary inequity increases, corrective actions for salaries exceeding the applicable salary cap, setting salaries of AFDs who move or transfer into federal defender organizations, and financial disclosure requirements are discussed in section IV. below.

**IV.     Additional Compensation Policies Applicable to <u>All</u> AFDs**

<u>CONTENTS</u>

A.     Salary Inequity Policy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.     AFD Salaries Exceeding the Applicable Salary Cap  . . . . . . . . . . . . . . . . . . . . . . 20

C.     Movement/Transfer of AFDs Between or Within FDOs   . . . . . . . . . . . . . . . . . . 20

D.     Financial Disclosure Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

_____

A.     Salary Inequity Policy

The AFD salary policies, charts, and salary caps addressed in this document provide defenders with substantial flexibility in determining AFD salaries, which should enable them to ensure consistency among salaries of AFDs within the same organization.  Further, since these policies, charts, and salary caps for AFDs are basically the same as the ones for AUSAs in the same location, AFDs should generally be assured of receiving compensation consistent with that of AUSAs in their district(s) having similar experience, qualifications and responsibilities. However, individual U.S. attorney offices may occasionally allow exceptions to their compensation policies and inequity between the salaries of AUSAs and comparable AFDs may result.

Accordingly, if an AFD's salary is lower than the salary paid to an attorney with similar experience, qualifications, and responsibilities in the U.S. Attorney's Office in any district in which representation is furnished by the federal defender organization (FDO), ODS may authorize, on an exception basis, a salary in excess of the prescribed amount for the AFD.

These salary inequity increases may be given to AFDs at any time during the year upon ODS's approval of a written request from the federal defender.  The request must justify the increase based upon a showing that the salary requested for the AFD is no greater than the salary of a <u>currently employed</u> AUSA in the same district(s) with comparable (or lesser) experience, qualifications and responsibilities as the AFD.  For AFDs in FPDOs, the AO's Human Resources Division (HRD) will implement inequity increases only after receiving written authorization from ODS.  Implementation of such an increase will not change the AFD's APR anniversary date.

Effective: May, 26, 2010

Upon request, ODS will provide defenders with a list of the current salaries of the AUSAs in their district(s).  However, federal defenders are responsible for obtaining information regarding the experience, qualifications and responsibilities of the AUSAs in their district(s).

B.        AFD Salaries Exceeding the Applicable Salary Cap

Corrective actions must be taken whenever an AFD's salary exceeds any salary cap applicable to that AFD.  If an AFD salary in excess of the applicable cap is discovered, ODS should be contacted immediately to determine the corrective action required.

Exceeding the Applicable AFD Salary Ceiling:  For S/SL AFDs whose salaries exceed the cap for their designated supervisory or senior litigator level, and for Line AFDs whose salaries exceed the Line AFD salary ceiling (i.e., the maximum of the AD-29 level), immediate action must be taken to reduce the AFD's salary to the proper level and additional action may be required to recover salary overpayment amounts.  (Specific requirements of this policy applicable to Judiciary employees are set forth in the *Guide to Judiciary Policy*, Volume 20, Chapter 7.)

Line AFD Salaries Exceeding the AD-level maximum:  If a Line AFD's salary exceeds the applicable AD-level maximum upon conversion to the new compensation system, or because it was set above this maximum pursuant to the "highest previous rate" policy (see section II.B.4.d. above)), then such a "red-circled rate" will not be reduced.  Instead, it will be held constant until it is overtaken by the applicable APR range maximum, as outlined in section II.B.3.b. above.   However, if a Line AFD's salary exceeds the applicable AD-level maximum for any other reason without ODS approval, then immediate action may be necessary to reduce the salary and possibly recover overpayments pursuant to the *Guide* section cited above.

C.        Movement/Transfer of AFDs Between or Within FDOs

For situations in which an AFD either moves to a different office location within the same federal defender organization (FDO) (either a CDO or an FPDO) or moves/transfers from one FDO to another FDO, the following policies apply:

(1)     Movement within an organization:

When moving from one duty station to another within the same organization, an AFD's salary must be adjusted to reflect any difference in the locality rates between the two locations.  In such a case, the AFD's APR "anniversary" date will not be affected.

(2)     Movement between two FDOs:

Compensation:  Upon moving from one FDO to another, an AFD's new salary should be set at the starting salary amount the AFD qualifies for at the time of the move, using the AFD salary chart applicable to the AFD's new duty station.  For Line AFDs, such a salary

may be set higher than the maximum of the applicable starting salary range if justified under the "Highest Previous Rate" policy, as set forth in section II.B.4.d. of these policies.

<u>Change in APR Date</u>:  Generally, upon moving from one FDO to another FDO, an AFD's APR anniversary date will be changed to the anniversary of the AFD's entrance on duty date at the new FDO.  The exception to this rule is for an AFD transferring from one <u>FPDO</u> to another <u>FPDO</u>, without a break in service, and without being simultaneously elevated to an S/SL AFD position having a higher salary cap.  In such a case, the AFD's APR anniversary date would not be affected because the move would be considered a lateral transfer within the judiciary.

D.      Financial Disclosure Requirements

Pursuant to sections 101 - 111 of the Ethics Reform Act of 1989, 5 U.S.C. app. 6, all <u>FPDO</u> employees whose <u>basic</u> pay is equal to or greater than 120% of the basic pay of a grade 15 step 1 must file a financial disclosure report with the Administrative Office.  The Administrative Office's Financial Disclosure Office will notify FPDOs annually regarding any of their employees who are subject to this requirement.  This requirement is not applicable to employees in CDOs.

**Appendix**
Summary of Requirements and Supervisory Minimums for S/SL AFDs

Please refer to the position descriptions for each supervisory and senior litigator AFD for additional requirements by position. In general, offices are allocated one supervisory AFD for every six authorized AFD positions. Each office is entitled to one senior litigator AFD.

| AD Level | Position | Authorized Position(s) per FDO | Additional Criteria |
|---|---|---|---|
| 37 | First Assistant | 1 | A minimum of (6) authorized AFD positions is required before an FDO can designate one as a First Assistant. Only one may be authorized per FDO. |
| 37 | Second Level Supervisor | variable; one may be added for every six authorized AFD positions provided there is a corresponding Third Level Supervisor to supervise | A minimum of (10) authorized AFD positions is required in the FDO before the first Second Level Supervisor can be designated to supervise a Third Level Supervisor(s), AD-31. A minimum of (12) authorized AFD positions is required in the FDO before the first Second Level Supervisor can be designated to supervise a Third Level Supervisor(s), AD-35. |
| 35 | Senior Litigator | 1 | For those designated before March 1995. One, either at the AD-33 or AD-35 level, is authorized per FDO. |
| 35 | Third Level Supervisor | variable | For units where there are a minimum of (5) AFDs being supervised. |
| 33 | Senior Litigator | 1 | For those designated after March 1995. One, either at the AD-33 or AD-35 level, is authorized per FDO. |
| 31 | Third Level Supervisor | variable | For units where there are a minimum of (3) AFDs being supervised. |

Effective: May, 26, 2010

# FIRST ASSISTANT DEFENDER

## A. DEFINITION

The First Assistant Defender serves as the ***principal deputy*** to the Federal Public/Community Defender, assisting in the management of all phases of the defender organization. The First Assistant assumes the authority to take actions that affect the basic content and character of the organization's administrative and legal operations. ***The First Assistant Defender is a one-of-a-kind position within a defender organization and supervises a minimum of five (5) Assistant Federal Defenders (AFDs.)***

A defender organization that is authorized six or more AFDs, including those assigned to a branch office, may designate one of the six assistants as a supervisory AFD. One additional supervisory AFD may be designated out of each additional six AFDs on staff. Thus, a staff of six AFDs allows for one supervisory assistant; a staff of twelve AFDs allows for two to serve as supervisory AFDs.

## B. PRIMARY JOB DUTIES

The First Assistant Defender performs or supervises the performance of tasks such as the following:

1. In addition to providing zealous, professional legal representation to clients, the First Assistant assumes responsibility for the operations of the defender organization in the absence of the Federal Public/Community Defender.

2. Ensures attorneys and legal staff members are adequately trained to perform assigned duties. Training topics include current case law developments, advocacy in the courtroom and developing advanced skills in written, oral and interpersonal communications.

3. Supervises attorneys and legal staff members in order to provide clients with prompt, courteous and zealous legal representation.

4. Ensures that staff attorneys are provided adequate support staff and services in order to represent their clients.

5. Communicates in a supervisory capacity with the court, opposing counsel, clients and the families of clients concerning case-related issues.

6. Provides the CJA Panel with training, information and support. As designated by the court, assists with CJA Panel selection, supervision, case assignments, and voucher review.

7. Acts as liaison between the defender organization and the court, court personnel, other related agencies, members of the CJA Panel and the private bar, Defender Services Division, other defender organizations, clients and client families, and members of the general public on administrative, institutional and case-related matters.

8. Analyzes organizational structure and recommends policy implementation to defender. Identifies, communicates, and positively resolves internal problems which might negatively impact the operation of the defender organization.

9. Initiates personnel actions involving all staff members when required. Actions may include: hiring, performance appraisals, mediation and negotiation, disciplinary actions, and employee job termination.

10. Oversees operations of the defender organization, and ensures that costs are kept within allocated budget levels. May actively participate in financial and procurement management.

11. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The First Assistant reports directly to the Federal Public/Community Defender.

## D. QUALIFICATIONS

To qualify for the position of First Assistant Defender, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The First Assistant Defender must be an attorney with a significant history of practice in the area of criminal law. Familiarity with the provision of defense or prosecution services, in either the public or private sectors, is necessary. Previous supervisory experience is preferred.

Requirements include admission and good standing before the federal bar, in combination with admission and good standing to a state bar. If mandated by the laws of the state or the local rules of the district in which the defender organization is located, admission to the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

**E. SALARY AND EXPERIENCE**

The salary of the First Assistant Defender may not exceed the maximum salary level established for that position by Executive Office for United States Attorneys (EOUSA) and must conform to AFD Appointment and Compensation Policies provided by the ODS. Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

**F. EXPERIENCE REQUIREMENTS**

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above. Such experience provides evidence the individual has:

- the ability to supervise the work of others;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- an understanding of criminal law, criminal procedure, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

**G. PHYSICAL DEMANDS AND WORK ENVIRONMENT**

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear. The individual frequently is required to use hands to touch, handle, or feel. The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds. Frequent travel to branch offices may be required. The individual will spend most of his/her time in an office environment.

# SECOND LEVEL SUPERVISOR

## A. DEFINITION

A Second Level Supervisor serves as a supervisor of other supervisory attorneys. The position is available only in FDOs with a minimum of 10 authorized AFD positions. A Second Level Supervisor may serve as the Chief of one or more units (trial, appellate or capital habeas unit or branch office) as designated. This position assists in the management of all phases of the defender organization. The Second Level Supervisor makes recommendations and decisions and may take action that affects the basic content and character of the organization's administrative and legal operations.

A defender organization that is authorized six or more AFDs, including those assigned to a branch office, may designate one of the six assistants as a supervisory AFD. One additional supervisory AFD may be designated out of each additional six AFDs on staff. Thus, a staff of six AFDs allows for one supervisory assistant; a staff of twelve AFDs allows for two to serve as supervisory AFDs. In organizations with 10 AFDs and one Second Level Supervisor, the second supervisory AFD must be a Third Level Supervisor. In organizations with a First Assistant, the second supervisory AFD must be a Third Level Supervisor. In addition to the number of authorized AFDs needed to justify a Second Level Supervisor, there must be at least one corresponding Third Level Supervisor for every Second Level Supervisor.

## B. PRIMARY JOB DUTIES

The Second Level Supervisor performs or supervises the performance of tasks such as the following:

1. In addition to providing zealous, professional legal representation to clients, the Second Level Supervisor assists in overseeing operations of the defender organization, and ensures that costs are kept within allocated budget levels.

2. Serves as Chief Counsel for a trial or appellate unit or a branch office of a defender organization.

3. Supervises supervisory and line attorneys, and legal staff members in order to provide clients with prompt, courteous, and zealous legal representation.

4. Ensures attorneys and legal staff members are adequately trained to perform assigned duties. Training topics include current case law developments, advocacy in the courtroom, developing advanced skills in written, oral and interpersonal communications.

5. Ensures that staff attorneys are provided adequate support staff and services in order to represent their clients.

6. Communicates in a supervisory capacity with the court, opposing counsel, clients and the families of clients concerning case-related issues.

7. Provides the CJA Panel with training, information and support. As designated by the court, assists with CJA Panel selection, supervision, case assignments, and voucher review.

8. Acts as liaison between the defender organization and the court, court personnel, other related agencies, members of the CJA Panel and the private bar, ODS, other defender organizations, clients and client families, and members of the general public on administrative, institutional and case-related matters.

9. Identifies, communicates, and positively resolves internal problems which might negatively impact the operation of the defender organization.

10. Initiates personnel actions involving all staff members when required. Actions may include: hiring, performance appraisals, mediation and negotiation, disciplinary actions, and employee job termination.

11. Assists in overseeing operations of the defender organization, ensuring costs are kept within allocated budget levels.

12. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Second Level Supervisor reports directly to the Federal Public/Community Defender or other supervising attorney as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Second Level Supervisor, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Second Level Supervisor must be an attorney with a significant history of practice in the area of criminal law. Familiarity with the provision of defense or prosecution services, in either the public or private sectors, is necessary. Previous supervisory experience is preferred.

Requirements include admission and good standing before the federal bar, in combination with admission and good standing to a state bar. If mandated by the laws of the state or

the local rules of the district in which the defender organization is located, admission to the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

## E.  SALARY AND EXPERIENCE

The salary of the Second Level Supervisor may not exceed the maximum salary level established for that position by the Executive Office for United States Attorneys (EOUSA) and must conform to the AFD Appointment and Compensation Policies provided by the ODS.  Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

## F.  EXPERIENCE REQUIREMENTS

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above.  Such experience provides evidence the individual has:

- the ability to supervise the work of others;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- an understanding of criminal law, criminal procedures, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

## G.  PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear.  The individual frequently is required to use hands to touch, handle, or feel.  The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds.  Frequent travel to branch offices may be required.  The individual will spend most of his/her time in an office environment.

# *THIRD LEVEL SUPERVISOR*

## A. DEFINITION

The Third Level Supervisor supervises a designated number of Assistant Federal Defenders (AFDs) and may serve as the chief counsel of one or more units (e.g., trial, appellate or capital habeas unit or branch office) within a defender organization. The Third Level Supervisor occupies a leadership position, recommending actions and making decisions that affect the basic content and character of the organization's legal operations. The title (and designation) Third Level Supervisor applies to most of the *supervisory* AFD positions in defender organizations. **The Third Level Supervisor does not supervise other supervisory attorneys.**

A defender organization that is authorized six or more AFDs, including those assigned to a branch office, may designate one of the six assistants as a supervisory AFD. One additional supervisory AFD may be designated out of each additional six AFDs on staff. Thus, a staff of six AFDs allows for one supervisory assistant; a staff of twelve AFDs allows for two to serve as supervisory AFDs. These Third Level Supervisors are established at the AD-35 level.

Third Level Supervisors who supervise a minimum of three AFDs are established at the AD-31 level. The Third Level Supervisor AD-31 is elevated to AD-35 once the Third Level Supervisor supervises a minimum of five AFDs.

## B. PRIMARY JOB DUTIES

The Third Level Supervisor performs or supervises the performance of tasks such as the following:

1. In addition to providing zealous, professional legal representation to clients, the Third Level Supervisor serves as Chief Counsel for a trial or appellate unit or a branch office of a defender organization. Appears, on behalf of the client, in court hearings and at other related proceedings.

2. Ensures attorneys and legal staff members are adequately trained to perform assigned duties. Training topics include current case law developments, advocacy in the courtroom, developing advanced skills in written, oral and interpersonal communications.

3. Supervises attorneys and legal staff members in order to provide clients with prompt, courteous, and zealous legal representation.

4. Ensures that staff attorneys are provided adequate support staff and services in order to represent their clients.

5. Communicates in a supervisory capacity with the court, opposing counsel, clients and the families of clients concerning case-related issues.

6. Provides the CJA Panel with training, information and support. As designated by the court, assists with CJA Panel selection, supervision, case assignments, and voucher review.

7. Acts as liaison between the defender organization and the court, court personnel, other related agencies, members of the CJA Panel and the private bar, ODS, other defender organizations, clients and client families, and members of the general public on administrative, institutional and case-related matters.

8. Identifies, communicates, and positively resolves internal problems which might negatively impact the operation of the defender organization.

9. Initiates personnel actions involving all staff members when required. Actions may include: hiring, performance appraisals, mediation and negotiation, disciplinary actions, and employee job termination.

10. Assists in overseeing operations of the defender organization, ensuring costs are kept within allocated budget levels.

11. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Third Level Supervisor reports directly to the Federal Public/Community Defender or other supervising attorney as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Third Level Supervisor, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Third Level Supervisor must be an attorney with a significant history of practice in the area of criminal law. Familiarity with the provision of defense or prosecution services, in either the public or private sectors, is necessary. Previous supervisory experience is preferred.

Requirements include admission and good standing before the federal bar, in combination with admission and good standing to a state bar. If mandated by the laws of the state or the local rules of the district in which the defender organization is located, admission to

the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

## E.  SALARY AND EXPERIENCE

The salary of the Third Level Supervisor may not exceed the maximum salary level established for that position by the Executive Office for United States Attorneys (EOUSA) and must conform to the AFD Appointment and Compensation Policies provided by the ODS.  Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

## F.  EXPERIENCE REQUIREMENTS

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above.  Such experience provides evidence the individual has:

- the ability to supervise the work of others;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- an understanding of criminal law, criminal procedure, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

## G.  PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear.  The individual frequently is required to use hands to touch, handle, or feel.  The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds.  Frequent travel to branch offices may be required.  The individual works primarily in an office environment.

# *SENIOR LITIGATOR*

## A. DEFINITION

The Senior Litigator is designated as such in recognition of his/her consistently outstanding skills as a litigator, and is responsible for assisting AFDs less knowledgeable with advocacy skills. This position carries no administrative responsibilities and it is a non-supervisory position. Each FDO is authorized to designate ***only one*** AFD as a Senior Litigator.

## B. PRIMARY JOB DUTIES

The Senior Litigator performs tasks such as the following:

1. Litigates the defender organization's most serious cases including death penalty offenses, mandatory life offenses or the most complex multi-document litigation.

2. Maintains in-depth and updated knowledge of criminal defense trial and appellate practices and case law. Develops expertise with the federal sentencing guidelines, understands the ethical obligations and restrictions and practices courtroom advocacy.

3. Analyzes the potential impact of new legislation, policies and regulations on the defender organization. Recommends short and long range plans to ensure efficient operations.

4. Provides training to attorneys and legal staff members, as well as the private bar, in areas such as current case law developments, advocacy in the courtroom, developing advanced skills in written, oral and interpersonal communications.

5. Coordinates disparate teams of personnel to provide representation of clients facing very serious charges.

6. Communicates with the court, opposing counsel, clients and client families concerning case-related issues.

7. Demonstrates skill in dealing with challenging clients.

8. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Senior Litigator reports directly to the Federal Public/Community Defender or other supervising attorney as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Senior Litigator, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Senior Litigator must be an attorney with a minimum of eight years litigation experience in either state or federal court, and be recognized as an outstanding litigator in the federal court system with a commitment to the active litigation of significant cases.

Admission and good standing before the federal bar, in combination with admission and good standing to a state bar, is required. If mandated by the laws of the state or the local rules of the district in which the defender organization is located, admission to the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

## E. SALARY AND EXPERIENCE

Although this is a non-supervisory position, in recognition of superior skills and experience the Senior Litigator is compensated at a supervisory level. The salary of the Senior Litigator may not exceed the maximum salary level established for that position by the Executive Office for United States Attorneys (EOUSA) and must conform to the AFD Appointment and Compensation Policies provided by the ODS. Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

## F. EXPERIENCE REQUIREMENTS

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above. Such experience provides the individual:

- at least eight years litigation experience in state or federal court;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- understanding of criminal law, criminal procedure, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

## G.  PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job.   Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear.  The individual frequently is required to use hands to touch, handle, or feel.  The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds. Frequent travel to court locations and detention facilities may be required.  The individual works primarily in an office environment.

# *ASSISTANT FEDERAL DEFENDER*

## A. DEFINITION

The Assistant Federal Defender (AFD) provides every aspect of legal representation to individuals charged with federal criminal offenses but who are unable to retain an attorney. Duties include trials and court hearings, direct appeals to the circuit court, habeas, post-conviction and witness representation, and representation in other matters such as supervised release hearings and probation and parole hearings.

*In districts where an AFD is the only attorney in a branch office, some uncompensated supervisory duties may be assigned. The Federal Public/Community Defender, however, has full responsibility for all actions of the AFD.*

## B. PRIMARY JOB DUTIES

The Assistant Federal Defender performs tasks such as the following:

1. Provides zealous, professional legal representation to his/her clients. Appears, on behalf of the client, in court hearings and at other related proceedings.

2. Communicates with the court, opposing counsel, probation officers, witnesses, clients and the families of clients concerning case-related issues.

3. Maintains in-depth and updated knowledge of criminal defense trial and appellate practices and case law. Develops expertise with the federal sentencing guidelines, understands the ethical obligations and restrictions and practices courtroom advocacy. Pursues all appropriate available training opportunities including local or nationally sponsored core training within the limits of funding, workload and defender organization approval.

4. Prepares motions and briefs for consideration in federal magistrate, district, and appellate courts. Also prepares petitions for certiorari.

5. Prepares legal memoranda, review of issues, comprehensive statements of relevant facts, standards of review and briefs complex legal and factual arguments. Consults with investigative and legal staff regarding issues relevant to the case.

6. Examines complex and diverse records. Reviews the record proper, exhibits, transcripts and tapes of trials and hearings in habeas and direct appeals cases. Analyzes the record and determines relevant legal issues. Determines the need for an evidentiary hearing and prepares evidence for presentation.

7. Performs legal research utilizing all available resources including computer-assisted legal research tools. Research includes state and federal statutes, case law,

regulations, precedents, treaties, sentencing guidelines, and related subject matter. Analyzes legal decisions, opinions, rulings, memoranda and related legal materials. Compiles and summarizes substantive information on statutes, treaties and specific legal subjects.

8. Analyzes the potential impact of new legislation, policies and regulations on the defender organization. Recommends short and long range plans to ensure efficient operations.

9. Updates research and prepares for oral argument. Prioritizes issues, analyzes difficulties of the case and prepares responses to possible panel questions.

10. Continues development of strong written and verbal communication skills to enhance professional documentation and interpersonal interaction.

11. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Assistant Federal Defender reports directly to the Federal Public/Community Defender or other supervising attorney as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Assistant Federal Defender, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Assistant Federal Defender must be an attorney with knowledge of defense or prosecution services, in either the public or private sector.

Requirements include admission and good standing before the federal bar, in combination with admission and good standing to a state bar. If mandated by the laws of the state or the local rules of the district in which the defender organization is located, admission to the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

## E. SALARY AND EXPERIENCE

The salary of the Assistant Federal Defender may not exceed the maximum salary level established for that position by the Executive Office for United States Attorneys (EOUSA) and must conform to the AFD Appointment and Compensation Policies

provided by the ODS. Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

## F.  EXPERIENCE REQUIREMENTS

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above.  Such experience provides evidence the individual has:

- the ability to coordinate the work of others;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- an understanding of criminal law, criminal procedure, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

## G.  PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear.  The individual frequently is required to use hands to touch, handle, or feel.  The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds. Frequent travel to court locations and detention facilities may be required.  The individual works primarily in an office environment.

# RESEARCH AND WRITING SPECIALIST

## A. DEFINITION

The Research and Writing Specialist provides advanced research and writing services to assistant federal defender (AFD) staff on trial and appellate cases. The individual in this position must be an attorney. The Research and Writing Specialist writes briefs, motions, petitions for certiorari, and legal memoranda for review by the Defender and staff attorneys. General duties include examining, analyzing and researching records and issues; performing legal research and preparing legal documents; assisting AFD staff with all aspects of case preparation, training and continuing legal education and supervision of other research staff as appropriate.

***The Research and Writing Specialist does not ordinarily sign pleadings or make court appearances. The Research and Writing Specialist position is not intended to serve as a proxy, substitute, or replacement for an AFD position, nor in the place of an additional AFD position.***

The Research and Writing Specialist, under supervision of the responsible AFD, may sign pleadings or make court appearances in exceptional circumstances, but only if the following conditions are met:

(1)     the RWS has extraordinary case-specific expertise; the RWS has performed an exceptionally large amount of high quality work on the case; the RWS has an unusually strong interest in the case issues; the Defender concludes that a court appearance, under direct supervision, is appropriate for training purposes; or in other exceptional circumstances as determined by the Defender when necessary to protect the client's interest;

(2)     authorization of the appropriate court;  and

(3)     if mandated by the laws of the state or the local rules of the district in which the defender organization is located, the RWS must be admitted to the bar of that state and to the bar of the federal court.

## B. PRIMARY JOB DUTIES

The Research and Writing Specialist performs or supervises the performance of tasks such as the following:

1.  Assists the assigned attorney in the preparation of motions and briefs for review and signature by the Defender or the responsible case attorney for filing in federal magistrate, district, and appellate courts. Also assists in the preparation of petitions for certiorari.

2.  Assists the assigned attorney in the preparation of legal memoranda for review and signature by the Defender and staff attorneys. Assists in the preparation of jurisdictional statements, review of issues, comprehensive statements of relevant facts, standards of review, and briefs complex legal and factual arguments. Advises the responsible attorney regarding all issues relevant to the case.

3. Examines complex and diverse records. Reviews the record proper, exhibits, transcripts and tapes of trials and hearings in habeas and direct appeals cases. Analyzes the record and determines relevant legal issues. Determines the need for an evidentiary hearing and prepares evidence for presentation.

4. Performs legal research utilizing all available resources including computer-assisted legal research tools. Research includes state and federal statutes, case law, regulations, precedents, treaties, sentencing guidelines, and related subject matter.

5. Analyzes the potential impact of new legislation, policies and regulations on the defender organization. Develops and recommends short and long-range plans.

6. Updates research in preparation for oral argument by the responsible attorney. Consults with the attorney regarding the priority of issues, difficulties of the case and possible responses to panel questions.

7. Supervises law students, legal interns and paralegals where appropriate.

8. Analyzes legal decisions, opinions, rulings, memoranda and related legal materials, and prepares digests and indexes of same. Compiles and summarizes substantive information on statutes, treaties and specific legal subjects.

9. Coordinates and assists in coordinating training and CLE programs for office staff (and Panel attorneys where appropriate.)

10. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Research and Writing Specialist reports to the Defender or other supervisor as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Research and Writing Specialist, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Research and Writing Specialist must be an attorney with knowledge of defense or prosecution services, in either the public or private sector.

Requirements include admission and good standing to a federal and state bar (see **DEFINITION**, subpart (3)).

## E. SALARY AND EXPERIENCE SCALE

| DOCS Grade Level | Years of General Experience | Years of Specialized Experience | Total Years of Experience |
|---|---|---|---|
| 9 | 3 | 2 | 5 |
| 11 | 3 | 3 | 6 |
| 12 | 3 | 4 | 7 |
| 13 | 3 | 5 | 8 |
| 14 | 3 | 6 | 9 |
| 15 | 3 | 7 | 10 |

**Note:** One year of the required experience must have been at, or equivalent to, the next lower grade in federal service. Experience that has not provided training or required the application of the knowledge, skills and abilities outlined in the *Primary Job Duties* section above is **not** creditable experience. Specialized experience may always substitute for general experience but general experience may not substitute for specialized experience.

## F. EXPERIENCE REQUIREMENTS

### General Experience

Experience that provides evidence the individual has:

- a general understanding of the methods and skills required for accomplishing the tasks outlined in the *Primary Job Duties* section above;
- a general understanding of office confidentiality issues, such as attorney/client privilege;
- the ability to read, analyze and interpret common technical journals and legal documents;
- the ability to apply common sense understanding to carry out instructions furnished in written, oral or diagram form;
- the ability to analyze and apply relevant policies and procedures to office operations;
- the ability to exercise good judgment in a mature and diplomatic manner;
- the ability to communicate orally and in writing;
- a general knowledge of office practices and legal processes;
- the ability to recognize and analyze problems and recommend practical solutions;
- the ability to use a personal computer.

### Specialized Experience

Progressively responsible legal experience in the functional areas described in the *Primary Job Duties* section above. Such experience provides the individual:

- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- understanding of criminal law, criminal procedure, and evidence;

Case 1:20-cv-00066-WGY   Document 125-2   Filed 07/27/22   Page 102 of 106

- a knowledge of sentencing guidelines and evidence handling;
- experience performing progressively responsible duties of a lawyer;
- the skills and ability to execute the duties of the position.

## G. EDUCATIONAL SUBSTITUTIONS

Education above the high school level in accredited institutions may be substituted for the general experience on the basis of one academic year (30 semester or 45 quarter hours) equals nine months of experience.

Completion of all the requirements for a bachelor's degree from an accredited college or university and having met one of the following may be substituted for one year of specialized experience:

1. An overall "B" grade point average equaling 2.9 or better of a possible 4.0.

2. Standing in the upper third of the class.

3. A "B+" (3.5) grade point average or better in major fields of study such as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position.

4. Election to membership in Phi Beta Kappa, Sigma XI, or one of the National Honor Scholastic Societies meeting the minimum requirements of the Association of College Honor Societies, other than Freshman Honor Societies.

Completion of one academic year (18 semester hours) of graduate study in an accredited university in such fields as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position, may be substituted for one year of specialized experience.

Completion of a master's degree or two years of graduate study (36 semester hours) in an accredited university in such fields as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position, or completion of a Juris Doctor (JD), may be substituted for two years of specialized experience.

## H. PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear. The individual frequently is required to use hands to touch, handle, or feel. The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds. Frequent travel to court locations and detention facilities may be required. The individual will spend most of his/her time in an office environment.

# *LEGAL INTERN*

## A. DEFINITION

The Legal Intern provides research and writing services to staff attorneys.  The Legal Intern writes briefs, motions, petitions for certiorari, and legal memoranda for review by the Defender and staff attorneys.  General duties include examining, analyzing and researching records and issues.  ***The Legal Intern is a law student at least half-time or a recent graduate of a law school.  This is not a Full-Time Permanent position.   The Legal Intern is pending admission to the bar and therefore is not permitted to represent clients in court.  However, under the supervision of the responsible AFD and as part of training and development, the Legal Intern may assist the AFD.***

## B. PRIMARY JOB DUTIES

The Legal Intern performs tasks such as the following:

1. Performs legal research, which constitutes a significant portion of the intern's role, utilizing all available resources including computer-assisted legal research tools and by interviewing clients, witnesses, and/or experts.  Research includes state and federal statutes, case law, regulations, precedents, treaties, sentencing guidelines, and related subject matter.  Analyzes legal decisions, opinions, rulings, memoranda and related legal materials and prepares digests and indexes of those materials.  Compiles and summarizes substantive information on statutes, treaties and specific legal subjects.

2. Prepares legal memoranda for review and signature by the Defender and staff attorneys.  Prepares jurisdictional statements, review of issues, comprehensive statements of relevant facts, standards of review and briefs complex legal and factual arguments.  Advises the responsible attorney regarding all issues relevant to the case.

3. Obtains and reviews documents, records and information relevant to case preparation.

4. Prepares, for review and signature by the Defender or the responsible case attorney, motions and briefs for consideration in federal magistrate, district and appellate courts.  Reviews the record proper, exhibits and tapes of trials and hearings in habeas and direct appeals cases.  Analyzes the record and determines relevant legal issues.

5. Updates research in preparation for oral argument by the responsible attorney. Consults with the responsible attorney regarding the priority of issues, difficulties of the case and possible responses to panel questions.

6. Under the direct supervision of the responsible case attorney, appears in court with the appropriate certification and approval required by the court, the state bar, the certified law student program as required, the law school and the client.

7. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Legal Intern reports an Assistant Federal Defender, the Research and Writing Specialist, Chief Paralegal or other supervisor as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Legal Intern, a person must be a high school graduate or the equivalent, be a law student at least half-time or recent graduate of a law school, and must have the requisite experience outlined in the *Salary and Experience Scale* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

## E. SALARY AND EXPERIENCE SCALE

| DOCS Grade Level | Years of General Experience | Years of Specialized Experience | Total Years of Experience |
|---|---|---|---|
| 5 | 3 | 0 | 3 |
| 7 | 3 | 1 | 4 |
| 9 | 3 | 2 | 5 |

**Note:** One year of the required experience must have been at, or equivalent to, the next lower grade in federal service. Experience that has not provided training or required the application of the knowledge, skills and abilities outlined in the *Primary Job Duties* section above is **not** creditable experience. Specialized experience may always substitute for general experience but general experience may not substitute for specialized experience.

## F. REQUIREMENTS

**General Experience**

Experience that provides evidence the individual has:

- a general understanding of the methods and skills required for accomplishing the tasks outlined in the *Primary Job Duties* section above;
- a general understanding of office confidentiality issues, such as attorney/client privilege;
- the ability to read, analyze and interpret common technical journals and legal documents;

- the ability to apply common sense understanding to carry out instructions furnished in written, oral or diagram form;
- the ability to analyze and apply relevant policies and procedures to office operations;
- the ability to exercise good judgment in a mature and diplomatic manner;
- the ability to communicate orally and in writing;
- a general knowledge of office practices and legal processes;
- the ability to recognize and analyze problems and recommend practical solutions;
- the ability to use a personal computer.

**Specialized Experience**

Progressively responsible experience in the functional areas described in the *Primary Job Duties* section above. Such experience provides the individual:

- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- understanding of criminal law, criminal procedure, and evidence;
- experience in a legal environment performing progressively responsible legal research and other case preparation duties;
- the ability to conduct computer-assisted legal research;
- the skills and ability to execute the duties of the position.

## G. EDUCATIONAL SUBSTITUTIONS

Legal Interns who have completed an undergraduate degree and have been accepted in an accredited law school (proof of acceptance from law school is required) are qualified for grade 5.

Legal Interns who have completed one year (full time) of graduate level education in an accredited law school, or 1 year at the GS-5 level or equivalent; or one year working in a law firm or other legal office conducting legal research and analysis, are qualified for grade 7.

Legal Interns who have graduated from an accredited law school and possess a Juris Doctor (JD) degree (or are certified as having completed all law school studies and requirements and are merely awaiting conferment of degree) and are pending admission to the bar are qualified for grade 9. Upon admission to the bar, the Legal Intern should be properly reclassified to Assistant Federal Defender or Research and Writing Specialist.

Education above the high school level in accredited institutions may be substituted for the general experience on the basis of one academic year (30 semester or 45 quarter hours) equals nine months of experience.