IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE OFFICIAL CAPACITY DEFENDANTS**

The federal government takes seriously its obligation to provide to federal employees a workplace free from unlawful discrimination, harassment, and retaliation. In this case, the government met that obligation—Plaintiff was not subjected to discrimination, harassment, or retaliation in connection with her employment at the Federal Defender's Office. Defendants intend to move for summary judgment at the close of discovery and they fully expect that the record will show that Plaintiff's claims lack evidentiary support and are otherwise meritless.

But Defendants need not make that showing at this stage. Regarding the motion presently before the Court—*Plaintiff's* Motion for Summary Judgment—the only question is whether there is evidence on which a reasonable factfinder could find for Defendants at trial. For the reasons discussed in Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, ECF No. 78, and below, there is ample evidence to support a verdict for Defendants. Accordingly, Plaintiff's Motion should be denied.

1

# PROCEDURAL HISTORY

Plaintiff filed her complaint in this matter on March 3, 2020, and Defendants filed motions to dismiss on June 5, 2020.  *See* ECF Nos. 1, 36-45.  While those motions to dismiss were pending, Plaintiff filed a Motion for Partial Summary Judgment Against the Official Capacity and Entity Defendants, ECF No. 60, and later filed a Motion for Partial Summary Judgment Against the Individual-Capacity Defendants, ECF No. 76.

The Court granted Defendants' motions to dismiss on December 30, 2020, ECF No. 102, and Plaintiff appealed.  On April 26, 2022, the Fourth Circuit issued an opinion affirming in part and reversing in part this Court's judgment.  *See Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022).  The Fourth Circuit also denied Plaintiff's motion to vacate this Court's judgment and to disqualify/recuse this Court and the panel assembled to hear the appeal.  *Id*. at 377.

The Fourth Circuit's mandate issued on June 21, 2022.  That same day, Plaintiff filed her Motion for Leave to File a Supplemental Memorandum in Support of Her Motion for Partial Summary Judgment Against the Official Capacity Defendants.

# ARGUMENT

**I.   The Fourth Circuit's Opinion Does Not Entitle Plaintiff to Summary Judgment**

Plaintiff is not entitled to summary judgment on either of her remaining claims in this case. Her arguments to the contrary are based on an apparent misunderstanding of the applicable legal standard and the impact of the Fourth Circuit's decision.  Plaintiff contends that the Fourth Circuit "ordered judgment" in her favor and "identified certain facts as being dispositive of Strickland's claims."  Pl's Suppl. Memo. in Supp. of Mot. for Summ. J., ECF No. 116-1 ("Suppl. Br.") at 1.  In reality, the Fourth Circuit's decision was in the context of Defendants' motion to dismiss, and the question the Fourth Circuit resolved was whether the complaint states a claim under the Rule

12(b)(6) standard. *See Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022) ("The Court must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'"). The Fourth Circuit's ruling that the *allegations* in the complaint are sufficient to state a claim under Rule 12(b)(6) says nothing about whether any *evidence* supports entry of summary judgment under Rule 56.

"Put simply, a motion to dismiss is different from a motion for summary judgment in both legal standard and factual universe." *Mauller v. Heartland Auto. Servs.*, No. 17-2219, 2019 U.S. Dist. LEXIS 25883, at *11 (E.D. Mo. Feb. 19, 2019). "As such, the [Fourth Circuit's] decision on the former does not govern the latter." *Id.*; *see also McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 760 (7th Cir. 2006) (summary judgment standard is "a different and significantly more demanding standard than the Rule 12(b)(6) standard"). Accordingly, Plaintiff's insistence that the Fourth Circuit's decision controls the outcome of her summary judgment motion is incorrect and should be rejected.[1]

**I.    Plaintiff Is Not Entitled to Summary Judgment on Her Due Process Claim**

To prevail on her summary judgment motion, Plaintiff must show "that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff has not made this showing, or even come close to it. One of the things Plaintiff must prove to prevail on her as-applied due process claim is that she was "led to believe that the [Federal Public Defender] would be the final decisionmaker in her case." *Strickland*, 32 F.4th at

---

[1] Plaintiff argues, in a footnote, that Defendants' summary judgment opposition should be stricken as untimely. Supp. Br. at 3 n.1. But the Court granted Defendants' motions for extensions of time to file their summary judgment opposition, *see* Oct. 23, 2020, Minute Order. Thus, that opposition is timely. Plaintiff's claim that the Court "was not authorized" to grant the extensions, *id.*, fails to appreciate the Court's "broad discretion to grant or deny an extension." *Gruhn v. Denison Indep. Sch. Dist.*, No. 20-00650, 2021 U.S. Dist. LEXIS 81719, at *2 (E.D. Tex. Apr. 29, 2021).

3

355. In describing this standard, the Fourth Circuit relied on *Spreen v. Brey*, 961 F.2d 109 (7th Cir. 1992). *Spreen* makes clear that an objective standard applies here: the question is whether a "reasonable person would have been misled" by the alleged statements. *Id*. at 112. As discussed below, there is clearly evidence on which a factfinder could find for Defendants on this question.

### A. Plaintiff did not reasonably believe that the defender would be the decisionmaker

The current evidence of record does not support the conclusion that a reasonable person could have believed that the Federal Public Defender for the Western District of North Carolina ("Defender") would be the final decisionmaker on Plaintiff's Employment Dispute Resolution ("EDR") claim. The totality of Plaintiff's evidence on this point consists of two alleged statements. First, Plaintiff claims that the Fourth Circuit mediator told her that the Defender was the "decision maker" and that no hearing officer would "micromanage" him or tell him how to do his job. Suppl. Br. at 7 (citing Compl. ¶ 415). Second, Plaintiff claims that the Judicial Integrity Officer at the Administrative Office of the United States Courts told her that no remedies would be ordered in a final hearing and that Article III judges do not have authority to manage a federal defender's office. *Id.* (citing Compl. ¶ 439).

At the outset, the Judicial Integrity Officer disputes that she made the statement Plaintiff attributes to her. As the Judicial Integrity Officer explains in her declaration, "[a]t no time" did she tell "Plaintiff that a designated EDR Presiding Judicial Officer had no jurisdiction to order a remedy against a Federal Public Defender organization." Aug. 16, 2022 Decl. of Jill Langley ¶ 9. Moreover, the Judicial Integrity Officer informed Plaintiff that "under the EDR Plan that applied to her (and the Model EDR Plan in effect in 2018), after adjudication of a formal EDR Complaint, the designated [Presiding Judicial Officer] could order remedies contemplated under the EDR Plan

4

against any employing office, including a Federal Public Defender organization, designed to make her 'whole[.]'" *Id*. ¶ 8.

As to the alleged statement by the mediator, Defendants are working with the mediator to address his concerns about disclosing any confidential information relating to the mediation. Defendants therefore have not yet ascertained whether the mediator in fact made the statement that Plaintiff claims he made. Even assuming the statement was made, however, it does not clearly indicate that the Defender would be the decisionmaker for Plaintiff's EDR complaint. Instead, the alleged statement refers to the Defender being the "decisionmaker" without indicating whether that is with respect to a hearing on any EDR complaint that Plaintiff might later file, or with respect to the mediation. *See* Compl. ¶ 415. Given that the statement allegedly was made in the context of a mediation, the most natural reading of the alleged statement is that it referred to the fact that the Defender – as a party to the mediation – could decide to agree or not agree to a proposed resolution of the matter through mediation. *See* ECF No. 60-16, EDR Plan Ch. X, § 9(B)(3), (5). Particularly considering that the alleged statement must be interpreted in the light most favorable to Defendants, *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011), the alleged statement is wholly insufficient to establish a right to summary judgment.

Moreover, any claim that Plaintiff reasonably relied on the alleged statements by the Judicial Integrity Officer and the mediator is belied by the EDR Plan itself. The EDR Plan states that the "Chief Judge or designee ('judicial officer') . . . shall hold a hearing on the merits" of a complaint submitted under Chapter X, unless he or she dismisses the complaint or determines that no material or factual dispute exists. EDR Plan, Ch. X § 10(B)(1). Moreover, "remedies may be provided in accordance with § 12 of this Chapter where the presiding judicial officer finds that the complainant has established by a preponderance of the evidence that a substantive right protected

5

by this Plan has been violated[.]" *Id*., Ch. X § 10(B)(2)(f). Section 12 in turn provides that, "[w]here judicial officers acting pursuant to § 10 or § 11 of this Plan find that a substantive right protected by this Plan has been violated, they may order a necessary and appropriate remedy." *Id*., Ch. X § 12(A). The EDR Plan therefore establishes that the judicial officer would be the decisionmaker on any complaint that Plaintiff might have filed, both with respect to whether a violation had occurred and with respect to any remedy. Plaintiff's alleged belief to the contrary is contradicted by the express terms of the EDR Plan.

In addition, the EDR Coordinator discussed the EDR process with Plaintiff on many occasions. *See* Decl. of James Ishida (attached hereto) ¶ 3. During at least one of those discussions, Plaintiff expressed concern that the Defender would be the decisionmaker in the EDR process and the EDR Coordinator corrected Plaintiff's understanding. *Id*. ¶ 4. He informed Plaintiff that if she proceeded to the final stage of the EDR Plan (which involves a complaint and hearing under Chapter X, § 10 of the EDR Plan), the Chief Judge or a presiding judicial officer would handle that phase of the process, and the judge would be the decisionmaker with regard to her complaint and any remedies. *Id*.

Accordingly, Plaintiff's claim of reasonable reliance is far-fetched and meritless. The EDR Plan itself made clear that the Chief Judge or his designee – not the Defender – would be the decisionmaker. And Plaintiff was specifically so informed by both the EDR Coordinator and the Judicial Integrity Officer. *See Coker v. TWA*, 165 F.3d 579, 586 (7th Cir. 1999) (plaintiff could not have reasonably relied on certain statements "in light of her easy access to convenient ways of ascertaining the true facts"). But Defendants do not have to conclusively disprove Plaintiff's claim of reliance in order to defeat her summary judgment motion. It is enough that a factfinder could

conclude that Plaintiff's belief that the Defender would be the decisionmaker for her EDR claim was unreasonable.²

### B. Plaintiff has not established that she had a viable EDR claim

Aside from Plaintiff's failure to establish that she had a reasonable belief that the Defender would be the decisionmaker for her EDR case, her due process claim fails for another reason as well—she has not shown that she was denied any valuable property interest. To be sure, the EDR Plan "effectively affords employees with the substantive right to work under conditions free from discrimination and harassment, as well as the substantive right to be free from retaliation in the event that they file a claim under the EDR Plan." *Strickland*, 32 F.4th at 349. But Plaintiff's property interest, if any, is in her "underlying legal claims," as opposed to the "adjudicatory process[.]" *Id*. at 350-51 (quoting *Shvartsman v. Apfel*, 138 F.3d 1196, 1199 (7th Cir. 1998)); *see also Shvartsman*, 138 F.3d at 1199 (rejecting "the proposition that there can be a property right in procedures that allow for a fair opportunity to adjudicate an underlying claim . . . regardless of whether any property interest attaches to the underlying claim itself").

Here, a reasonable factfinder could find that Plaintiff's underlying EDR claims lacked merit and, therefore, Plaintiff lacked a cognizable property interest. As discussed in greater detail in the following section regarding Plaintiff's equal protection claim, the evidence does not establish that Plaintiff suffered sexual harassment or deliberate indifference. Accordingly, Plaintiff is not entitled to summary judgment on her due process claim.

---

² Plaintiff also contends that the "Defender exercised decision-making authority over the EDR process, including by appointing the Investigator for Strickland's claims against him." Suppl. Br. at 7 (citing Martinez Decl. ¶ 81). But the very declaration that Plaintiff cites as support shows that the Defender did *not* select the investigator. *See* Martinez Decl. ¶ 81. Moreover, at that point, Plaintiff had not raised any claims against the Defender. *See* Aug. 10, 2018 Email from Plaintiff, Martinez Decl. at 42 (raising complaint as to First Assistant but not the Defender).

7

## II. Plaintiff Is Not Entitled to Summary Judgment for Her Equal Protection Claim

The Fourth Circuit ruled that, for purposes of Rule 12(b)(6), Plaintiff had adequately alleged an equal protection claim, and it defined the elements of such claim as follows:

> (1) the plaintiff was subjected to sexual harassment by another employee or supervisor; (2) the plaintiff alerted supervisory officials and/or officials responsible for overseeing the court's EDR plan about the sexual harassment; (3) the supervisory officials and/or officials responsible for overseeing the court's EDR plan responded to the allegations with deliberate indifference; and (4) the deliberate indifference was motivated by a discriminatory intent.

*Strickland*, 32 F.4th at 359.

Although the Fourth Circuit determined that the allegations in Plaintiff's complaint were sufficient to state a claim and, thus, survive the official-capacity Defendants' motion to dismiss, Plaintiff is not entitled to summary judgment on this claim. As to the first element, Plaintiff was ***not*** subjected to sexual harassment by the First Assistant, and there is substantial evidence on which a factfinder could find for Defendants on that element. As discussed in greater detail in Defendants' Summary Judgment Opposition, ECF No. 78, at 14-20, the First Assistant vigorously denies Plaintiff's allegations that he harassed her. For instance, the First Assistant has explained that he did not repeatedly invite Plaintiff to meet after hours, Davis Decl., ECF No. 78-2, ¶ 46, did not "appear" at the end of the workday and walk Plaintiff out of the building, *id*. ¶ 47, did not "lurk" at the county jail waiting for Plaintiff, *id*. ¶ 48, did not recruit employees to "spy" on Plaintiff, *id*. ¶ 50, and did not "harass" Plaintiff by copying her on a work-related email, *id*. ¶ 51. Likewise, the First Assistant's offer to give Plaintiff a ride home when it was raining was not at all inappropriate, particularly given that Plaintiff had solicited rides from the First Assistant previously. *Id*. ¶¶ 18, 31. Also, the First Assistant's "pay-for-stay" email to Plaintiff was in response to *her* demand that either she receive more money or she would quit, *id*. ¶ 23, and Plaintiff's interpretation of that email as having a sexual connotation is inexplicable.

8

Plaintiff simply ignores this evidence contradicting her claim of harassment. Instead, she insists that there must have been a finding during the EDR process that her rights were violated. Suppl. Br. at 9. But there was no such finding. On the contrary, the investigation into Plaintiff's complaints did not find her claims to have merit and specifically noted that her sexual harassment claim was "very flimsy." *See* Decl. of Anthony Martinez ¶ 105 (quoting investigation report). Plaintiff assumes there was a finding of a violation because the First Assistant and the Defender were counseled at the conclusion of the investigation, but the counseling they received was not based on any violation of her rights. *See id*. ¶¶ 99-101.[3]

Next, Plaintiff argues that Defendants "cannot reasonably dispute that they were deliberately indifferent to the [alleged] harassment." Suppl. Br. at 10. But Plaintiff fails to identify even the actions by Defendants that she thinks constitute deliberate indifference. Her conclusory assertion that Defendants were "deliberately indifferent" plainly fails to demonstrate any entitlement to summary judgment. Moreover, as Defendants have already explained at length, the evidence establishes that Defendants responded promptly and appropriately to Plaintiff's claims of harassment. ECF No. 78, at 16-23. For example, upon learning of Plaintiff's allegations of sexual harassment regarding the First Assistant, the Defender exercised reasonable care and took prompt action in informing the Circuit Executive. *Id*. at 17 (citing Martinez Decl. ¶ 80). That same day, the Chief Judge ordered an investigation, and an investigating officer was appointed. *Id*. (citing Martinez Decl. ¶ 81). On or about August 17, 2018, at Plaintiff's request, the Defender authorized Plaintiff to telework from home during the pendency of the investigation. *Id*. (citing

---

[3] Even if there had been a finding of harassment during the EDR process (there was not), that would not entitle Plaintiff to summary judgment. Indeed, it would not even preclude summary judgment in favor of *Defendants*. *Cf. Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (EEOC report finding probable cause that age discrimination had occurred did not render the granting of summary judgment to defendant improper).

9

Moormann Decl. ¶ 37). Plaintiff teleworked for over six months, until she transferred out of the FDO on March 18, 2019, *id.* (citing Moormann Decl. ¶ 49), and had no contact with the First Assistant, Davis Decl., ECF No. 78-2, ¶ 42.

Plaintiff does not address Defendants' evidence in her Supplemental Brief, other than to claim that the excerpts from the investigation report included in the Martinez Declaration are hearsay. Suppl. Br. at 10. Those excerpts are excluded from the hearsay rule under Federal Rule of Evidence 803(8) because the investigation report is a public record setting out "factual findings from a legally authorized investigation[.]" *See Hunter v. Prince George's Cty.*, 36 F. App'x 103, 106 (4th Cir. 2002) (assuming that an "EEO report would be admissible at trial under the public records exception to the hearsay rule" although noting some doubt on the issue). Moreover, the report's findings are admissible to dispute Plaintiff's false assertion that there were "findings of violations of Strickland's rights under the EDR Plan." Suppl. Br. at 9. As discussed above, there were no such findings. The report's findings are admissible to rebut Plaintiff's false characterizations.[4]

### III. Plaintiff's Assertions Regarding Discovery Have Been Refuted by Defendants Many Times Previously and Already Have Been Rejected by the Court

Plaintiff argues, in the alternative, that her motion for summary judgment should be granted because she claims Defendants failed to participate in discovery. Suppl. Br. at 12-14. Plaintiff has made that accusation numerous times previously, *see* ECF No. 55, at 22-23; ECF No. 60-1 at 24; ECF No. 66; ECF No. 85; ECF No. 86; ECF No. 87-1; ECF No. 98; ECF No. 116-1, at 12-14;

---

[4] Plaintiff claims that Defendants "refused to provide" the investigation report "to Strickland or to this Court." Suppl. Br. at 10. That is demonstrably false. Defendants expressly offered to provide a copy of the report under seal. MSJ Opp'n at 15 n.3 ("Should the Court want a copy provided, Defendants request that the Court order the Investigative Report to be filed under seal.").

10

ECF No. 122-1; ECF No. 125-1, at 3-4, but the Court has already ruled that Defendants were not required to respond to Plaintiff's premature discovery requests. *See* Oct. 23, 2020 Minute Order.

As the Court will recall, on May 11, 2020, in the early stages of this case, the Court issued a minute order stating in part:

> The case is placed on the running trial list for January 2021. A joint pretrial memorandum is due on or before December 1, 2020. A final pretrial conference will be held in December 2020. Any motions for summary judgment shall be filed on or before October 1, 2020. Counsel shall file a joint proposed case management schedule within two weeks.

*See* May 11, 2020 Minute Order.

Plaintiff insists that that order "clearly permitted the parties to take discovery[.]" Suppl. Br. at 12. It clearly did not. The minute order did not even mention discovery, much less set a schedule for it. Instead, the minute order required the parties to "file a joint proposed case management schedule within two weeks"—which necessarily means there was no discovery schedule in place at the time. *Id*. The parties thereafter filed their joint proposed case management schedule, in which they presented "their respective positions . . . regarding a reasonable timetable for discovery and motion practice[.]" ECF No. 34, at 1. Defendants argued therein that there should be no discovery prior to a ruling on Defendants' motions to dismiss because (1) Defendants' qualified immunity defenses entitled Defendants to dismissal before the commencement of discovery and (2) the local rules expressly provide that discovery does not begin until Rule 12 motions are resolved. *Id*. at 1-3. *No discovery schedule was ever entered*, and the Court instead proceeded to rule on Defendants' motions to dismiss.

Even though the Court had not authorized discovery, Plaintiff proceeded to serve discovery requests on Defendants. Defendants objected to those requests and explained to Plaintiff that her requests were premature under the local rules. *See* ECF No. 51-3. Plaintiff nevertheless served additional discovery requests, and Defendants again objected and again informed Plaintiff that the

11

requests were premature.  ECF No. 64-4.  At no time did Plaintiffs seek an order from the Court permitting her to serve those discovery requests before the time specified in the local rules.

The issue was resolved—or so Defendants thought—when, on October 23, 2020, the Court granted Defendants' Motion to Set Deadline to Respond to Early Discovery Requests.  *See* Oct. 23, 2020 Minute Order.  That motion sought confirmation that the local rules governing the timing of discovery apply to this case and that, accordingly, Defendants were not obligated to respond to Plaintiffs' discovery requests until the timeframe set forth by the local rules.  *See* ECF No. 51.  Thus, any question Plaintiff may have had about whether Defendants were obligated to respond to Plaintiff's early discovery requests was eliminated by the Court's October 23, 2020 order—an order that Plaintiff did not appeal or seek reconsideration of.

Unfortunately, the Court's ruling did not resolve this issue for Plaintiff.  Plaintiff and her counsel continue to press her baseless argument that "Defendants failed to participate in discovery," Suppl. Br. at 13, notwithstanding the Court's October 23, 2020 order (which Plaintiff omits any mention of in her Supplemental Brief).  Her Supplemental Brief even discusses Defendants' Motion to Set Deadline to Respond to Early Discovery Requests, *see* Suppl. Br. at 13 (calling the arguments therein "frivolous and nonsensical") without acknowledging the fact that the Court *granted* that motion.  By continuing to argue issues that the Court has already resolved in Defendants' favor, Plaintiff is imposing a significant and unnecessary burden on the Court and Defendants.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion.

Respectfully submitted,

BRIAN D. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

*/s/Joshua Kolsky*
JOSHUA M. KOLSKY
RACHAEL L. WESTMORELAND
Trial Attorneys
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

*Counsel for Defendants*