**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Over three years after Plaintiff resigned from her position at the Office of the Federal Public Defender for the Western District of North Carolina ("FDO") and over two years after filing this lawsuit, Plaintiff has moved for a preliminary injunction. Plaintiff seeks an order compelling the government to pay her lost earnings, offset by her current income, during the duration of this litigation. A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief, particularly where, as here, the injunction would upset the status quo rather than preserve it. For the reasons discussed below, Plaintiff has not come even close to demonstrating a right to preliminary injunctive relief. Her motion should be denied.

## PROCEDURAL HISTORY

Plaintiff filed her complaint in this matter on March 3, 2020, and Defendants filed motions to dismiss on June 5, 2020. *See* ECF Nos. 1, 36-45. While those motions to dismiss were pending, Plaintiff filed a Motion for Partial Summary Judgment Against the Official Capacity and Entity

1

Defendants, ECF No. 60, and later filed a Motion for Partial Summary Judgment Against the Individual-Capacity Defendants, ECF No. 76.

The Court granted Defendants' motions to dismiss on December 30, 2020, ECF No. 102, and Plaintiff appealed. On April 26, 2022, the Fourth Circuit issued an opinion affirming in part and reversing in part this Court's judgment. *See Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022). The Fourth Circuit also denied Plaintiff's motion to vacate this Court's judgment and to disqualify/recuse this Court and the panel assembled to hear the appeal. *Id.* at 377.

The Fourth Circuit's mandate issued on June 21, 2022. That same day, Plaintiff filed a Motion for Leave to File a Supplemental Memorandum in Support of Her Motion for Partial Summary Judgment Against the Official Capacity Defendants. ECF No. 116. Over a month later (and over two years after bringing this lawsuit), Plaintiff filed the Motion for Preliminary Injunction. ECF No. 125.[1]

## **LEGAL STANDARD**

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief' and may never be awarded 'as of right.'" *Mtn. Valley Pipeline v. W. Pocahontas Properties, L.P.*, 918 F.3d 353, 366 (4th Cir. 2019) (quoting *Winter v. NRDC*, 555 U.S. 7, 22, 24 (2008)). "In order to receive a preliminary injunction, a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest." *Id.*

---

[1] Plaintiff contends in the Procedural History section of her Motion that Defendants failed to participate in discovery. Mot. at 3-4. Plaintiff has made that inaccurate accusation numerous times previously and Defendants have refuted it each time. *See, e.g.*, Defs' Resp. to Pl's Suppl. Mem. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity Defs, ECF No. 134 at 10-12.

## ARGUMENT

### I.     Plaintiff Is Not Likely to Succeed on Her Due Process Claim

To prevail on her Motion, Plaintiff must show, *inter alia*, that she is likely to succeed on the merits. *Mtn. Valley Pipeline*, 918 F.3d at 366. Plaintiff falls far short of making this showing. One of the things Plaintiff must prove to prevail on her as-applied due process claim is that she was "led to believe that the [Federal Public Defender] would be the final decisionmaker in her case." *Strickland v. United States*, 32 F.4th 311, 355 (4th Cir. 2022). In describing this standard, the Fourth Circuit relied on *Spreen v. Brey*, 961 F.2d 109 (7th Cir. 1992). *Spreen* makes clear that an objective standard applies here: the question is whether a "reasonable person would have been misled" by the alleged statements. *Id*. at 112.

#### A.     Plaintiff did not reasonably believe that the defender would be the decisionmaker

The current evidence of record does not support the conclusion that a reasonable person could have believed that the Federal Public Defender for the Western District of North Carolina ("Defender") would be the final decisionmaker on Plaintiff's Employment Dispute Resolution ("EDR") claim. The totality of Plaintiff's evidence on this point consists of two alleged statements. First, Plaintiff claims that the Fourth Circuit mediator told her that the Defender was the "decision maker" and that no hearing officer would "micromanage" him or tell him how to do his job. Mot. at 8 (citing Compl. ¶ 415). Second, Plaintiff claims that the Judicial Integrity Officer at the Administrative Office of the United States Courts told her that no remedies would be ordered in a final hearing and that Article III judges do not have authority to manage a federal defender's office. *Id.* (citing Compl. ¶ 439).

At the outset, the Judicial Integrity Officer disputes that she made the statement Plaintiff attributes to her. As the Judicial Integrity Officer explains in her declaration, "[a]t no time" did

she tell "Plaintiff that a designated EDR Presiding Judicial Officer had no jurisdiction to order a remedy against a Federal Public Defender organization."  Aug. 16, 2022 Decl. of Jill Langley ¶ 9. Moreover, the Judicial Integrity Officer informed Plaintiff that "under the EDR Plan that applied to her (and the Model EDR Plan in effect in 2018), after adjudication of a formal EDR Complaint, the designated [Presiding Judicial Officer] could order remedies contemplated under the EDR Plan against any employing office, including a Federal Public Defender organization, designed to make her 'whole[.]'"  *Id*. ¶ 8.

As to the alleged statement by the mediator, Defendants are working with the mediator to address his concerns about disclosing any confidential information relating to the mediation. Defendants therefore have not yet ascertained whether the mediator in fact made the statement that Plaintiff claims he made.  Even assuming the statement was made, however, it does not indicate that the Defender would be the decisionmaker for Plaintiff's EDR complaint.  Instead, the alleged statement refers to the Defender being the "decisionmaker" without indicating whether that is with respect to a hearing on any EDR complaint that Plaintiff would later choose to file, or with respect to the mediation.  *See* Compl. ¶ 415.  Given that the statement allegedly was made in the context of a mediation, the most natural reading of the alleged statement is that it referred to the fact that the Defender – as a party to the mediation – could decide to agree or not agree to a proposed resolution of the matter.  *See* ECF No. 60-16, EDR Plan Ch. X, § 9(B)(3), (5).

Any claim that Plaintiff reasonably relied on the alleged statements by the Judicial Integrity Officer and the mediator is belied by the EDR Plan itself.  The EDR Plan states that the "Chief Judge or designee ('judicial officer') shall hold a hearing on the merits" of a complaint submitted under Chapter X, unless he or she dismisses the complaint or determines that no material or factual dispute exists.  EDR Plan, Ch. X § 10(B)(1).  Moreover, "remedies may be provided in accordance

with § 12 of this Chapter where the presiding judicial officer finds that the complainant has established by a preponderance of the evidence that a substantive right protected by this Plan has been violated[.]" *Id*., Ch. X § 10(B)(2)(f). Section 12 in turn provides that, "[w]here judicial officers acting pursuant to § 10 or § 11 of this Plan find that a substantive right protected by this Plan has been violated, they may order a necessary and appropriate remedy." *Id*., Ch. X § 12(A). The EDR Plan therefore established that the judicial officer would be the decisionmaker on any complaint that Plaintiff might have filed, both with respect to whether a violation had occurred and with respect to any remedy. Plaintiff's alleged belief to the contrary is contradicted by the express terms of the EDR Plan.

In addition, the EDR Coordinator discussed the EDR process with Plaintiff on many occasions. *See* Decl. of James Ishida (attached hereto) ¶ 3. During at least one of those discussions, Plaintiff expressed concern that the Defender would be the decisionmaker in the EDR process and the EDR Coordinator corrected Plaintiff's understanding. *Id*. ¶ 4. He informed Plaintiff that if she proceeded to the final stage of the EDR Plan (which involves a complaint and hearing under Chapter X, § 10 of the EDR Plan), the Chief Judge or a presiding judicial officer would handle that phase of the process, and the judge would be the decisionmaker with regard to her complaint and any remedies. *Id*.

Accordingly, Plaintiff's claim of reasonable reliance is far-fetched and meritless. The EDR Plan itself made clear that the Chief Judge or his designee – not the Defender – would be the decisionmaker. And Plaintiff was specifically so informed by both the EDR Coordinator and the Judicial Integrity Officer. *See Coker v. TWA*, 165 F.3d 579, 586 (7th Cir. 1999) (plaintiff could

not have reasonably relied on certain statements "in light of her easy access to convenient ways of ascertaining the true facts"). Plaintiff is not likely to succeed on her due process claim.[2]

## B. Plaintiff has not established that she had a viable EDR claim

Aside from Plaintiff's failure to establish that she had a reasonable belief that the Defender would be the decisionmaker for her EDR case, her due process claim is unlikely to succeed for another reason as well—she has not shown that she was denied any valuable property interest. To be sure, the EDR Plan "effectively affords employees with the substantive right to work under conditions free from discrimination and harassment, as well as the substantive right to be free from retaliation in the event that they file a claim under the EDR Plan." *Strickland*, 32 F.4th at 349. But Plaintiff's property interest, if any, is in her "underlying legal claims," as opposed to the "adjudicatory process[.]" *Id.* at 350-51 (quoting *Shvartsman v. Apfel*, 138 F.3d 1196, 1199 (7th Cir. 1998)); *see also Shvartsman*, 138 F.3d at 1199 (rejecting "the proposition that there can be a property right in procedures that allow for a fair opportunity to adjudicate an underlying claim . . . regardless of whether any property interest attaches to the underlying claim itself").

Here, Plaintiff's underlying EDR claims were meritless and, therefore, Plaintiff lacked a cognizable property interest. As discussed in greater detail in the following section regarding Plaintiff's equal protection claim, the evidence does not establish that Plaintiff suffered sexual harassment or deliberate indifference. Accordingly, Plaintiff is not likely to succeed on her due process claim.

---

[2] Plaintiff also claims that the "Defender exercised decision-making authority over the EDR process, including by appointing the Investigator for Strickland's claims against him." Motion at 8-9 (citing Martinez Decl. ¶ 81). But the very declaration that Plaintiff cites as support shows that the Defender did *not* select the investigator. *See* Martinez Decl. ¶ 81. Moreover, at that point, Plaintiff had not raised any claims against the Defender. *See* Aug. 10, 2018 Email from Plaintiff, Martinez Decl. at 42 (raising complaint as to First Assistant but not the Defender).

6

## II.     Plaintiff Is Not Likely to Succeed on Her Equal Protection Claim

The Fourth Circuit ruled that Plaintiff had adequately alleged, for purposes of Rule

12(b)(6), an equal protection claim, and it defined the elements of such claim as follows:

> (1) the plaintiff was subjected to sexual harassment by another employee or
> supervisor; (2) the plaintiff alerted supervisory officials and/or officials responsible
> for overseeing the court's EDR plan about the sexual harassment; (3) the
> supervisory officials and/or officials responsible for overseeing the court's EDR
> plan responded to the allegations with deliberate indifference; and (4) the deliberate
> indifference was motivated by a discriminatory intent.

*Strickland*, 32 F.4th at 359.

Plaintiff is not likely to succeed on this claim.  As to the first element, Plaintiff was *not*

subjected to sexual harassment by the First Assistant.  As discussed in greater detail in Defendants'

Summary Judgment Opposition, ECF No. 78, at 14-20, the First Assistant vigorously denies

Plaintiff's allegations that he harassed her.  For instance, the First Assistant has explained that he

did not repeatedly invite Plaintiff to meet after hours, Davis Decl., ECF No. 78-2, ¶ 46, did not

"appear" at the end of the workday and walk Plaintiff out of the building, *id*. ¶ 47, did not "lurk"

at the county jail waiting for Plaintiff, *id*. ¶ 48, did not recruit employees to "spy" on Plaintiff, *id*.

¶ 50, and did not "harass" Plaintiff by copying her on a work-related email, *id*. ¶ 51.  Likewise, the

First Assistant's offer to give Plaintiff a ride home when it was raining was not at all inappropriate,

particularly given that Plaintiff had solicited rides from the First Assistant previously.  *Id*. ¶¶ 18,

31.  Also, the First Assistant's "pay-for-stay" email to Plaintiff was in response to *her* demand that

either she receive more money or she would quit, *id*. ¶ 23, and Plaintiff's interpretation of that

email as having a sexual connotation is inexplicable.

Plaintiff simply ignores this evidence contradicting her claim of harassment.  Instead, she

insists that there must have been a finding during the EDR process that her rights were violated.

Mot. at 10.  But there was no such finding.  On the contrary, the investigation into Plaintiff's

complaints did not find her claims to have merit and specifically noted that her sexual harassment claim was "very flimsy." *See* Decl. of Anthony Martinez, ECF No. 78-3, ¶ 105 (quoting investigation report). Plaintiff assumes there was a finding of a violation because the First Assistant and the Defender were counseled at the conclusion of the investigation, but the counseling they received was not based on any violation of her rights. *See id.* ¶¶ 99-101.[3]

Next, Plaintiff argues that Defendants "cannot reasonably dispute that they were deliberately indifferent to the [alleged] harassment." Mot. at 11. But Plaintiff fails to identify even the actions by Defendants that she thinks constitute deliberate indifference. Her conclusory assertion that Defendants were "deliberately indifferent" obviously fails to demonstrate a likelihood of success on the merits. Moreover, as Defendants have already explained at length, the evidence establishes that Defendants responded promptly and appropriately to Plaintiff's claims of harassment. ECF No. 78, at 16-23. For example, upon learning of Plaintiff's allegations of sexual harassment regarding the First Assistant, the Defender exercised reasonable care and took prompt action in informing the Circuit Executive. *Id.* at 17 (citing Martinez Decl. ¶ 80). That same day, the Chief Judge ordered an investigation, and an investigating officer was appointed. *Id.* (citing Martinez Decl. ¶ 81). On or about August 17, 2018, at Plaintiff's request, the Defender authorized Plaintiff to telework from home during the pendency of the investigation. *Id.* (citing Moormann Decl. ¶ 37). Plaintiff teleworked for over six months, until she transferred from the

---

[3] Plaintiff cites two cases where courts found a likelihood of success in employment matters, but neither of those is analogous to this case. In *EEOC v. Cosmair, Inc., L'Oreal Hair Care Division*, 821 F.2d 1085 (5th Cir. 1987), it was undisputed that, after the plaintiff filed an age discrimination charge with the EEOC, the defendant had stopped making severance payments required by an agreement between the parties, and the only liability question was whether the defendant was justified in doing so because the plaintiff allegedly had breached the agreement. *Id.* at 1089-90. And in *Farkas v. N.Y. State Department of Health*, 554 F. Supp. 24, 28 (N.D.N.Y. 1982), the defendants "offered no reason, nondiscriminatory or otherwise," for the action challenged by the plaintiff.

8

FDO on March 18, 2019, *id.* (citing Moormann Decl. ¶ 49), and had no contact with the First Assistant, Davis Decl., ECF No. 78-2, ¶ 42.

Plaintiff does not address Defendants' evidence in her Motion, other than to claim that the excerpts from the investigation report included in the Martinez Declaration are hearsay. Mot. at 12. But the excerpts from the investigation report are excluded from the hearsay rule under Federal Rule of Evidence 803(8) because the report is a public record setting out "factual findings from a legally authorized investigation[.]" *See Hunter v. Prince George's Cty.*, 36 F. App'x 103, 106 (4th Cir. 2002) (assuming that an "EEO report would be admissible at trial under the public records exception to the hearsay rule" although noting some doubt on the issue).

Even if the report were hearsay (it is not), that would not prevent its consideration in connection with Plaintiff's Motion. Plaintiff has put the contents of the investigation report at issue by falsely claiming that there were "findings of violations of Strickland's rights under the EDR Plan." *Id.* at 10; *see also* Pl's Decl. in Supp. of Her Mot. for a Prelim. Inj. ("Pl's Decl.") ¶ 7 (referencing supposed "apparent findings that [the First Assistant] sexually harassed a subordinate"). As discussed, there have been no such findings. Accordingly, the report's findings are admissible to rebut Plaintiff's false characterizations. *See United States v. Craig*, 358 F. App'x 446, 452 (4th Cir. 2009) (a court may admit hearsay if the opposing party "opens the door").

Moreover, it is well-settled that a court may consider hearsay evidence on a preliminary injunction motion because such a motion is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *G.G. ex rel Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725-26 (4th Cir. 2016), vacated on other grounds, 137 S. Ct. 1239 (2017); *see also Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, No. 08-955, 2009 U.S. Dist. LEXIS 1937, at *8 (E.D. Va. Jan. 13, 2009) (courts may consider hearsay

9

in connection with preliminary injunction motion). Plaintiff insists that the investigation report is not reliable because she claims, again, that the Defender was allowed to appoint the investigator. Mot. at 12. But as discussed above, the Defender did not select the investigator. *See supra* at 6 n.2. Plaintiff also claims that her allegations against the Defender were not investigated, Mot. at 13, but that too is incorrect. *See* Martinez Decl., ECF No. 78-3, ¶ 105(k) (quoting investigator's conclusion that "I do not see a case for retaliation based on my investigation"). Plaintiff attempts to show that the Defender quoted the report in a "biased and misleading manner," but she fails to show any material difference between the quotation in the Defender's declaration and the report itself. Mot. at 15. At bottom, Plaintiff contends the investigation was a "farce" only because she is disappointed by its outcome. *Id.* at 14. Plaintiff's subjective belief that the investigation was rigged against her provides no basis to exclude the report from the Court's consideration.

Lastly, Plaintiff claims that Defendants "refused to provide" the investigation report "to Strickland or to this Court." Mot. at 12. That is demonstrably false. Defendants expressly offered to provide a copy of the report under seal. ECF No. 78, at 15 n.3 ("Should the Court want a copy provided, Defendants request that the Court order the Investigative Report to be filed under seal.").

For these reasons, Plaintiff is not likely to succeed on the merits of her claims.

### III. Plaintiff Has Not Demonstrated Irreparable Harm

#### A. Sovereign Immunity Precludes the Recovery of Back Pay in This Case

Plaintiff argues that, absent a preliminary injunction, she will suffer irreparable harm in the form of lost earnings. Mot. at 1. There are numerous flaws in that argument. First and foremost, Plaintiff is precluded by sovereign immunity from any recovery of pre-judgment lost earnings, *i.e.*, back pay. The Fourth Circuit has already held in this case that "[t]he Official Capacity Defendants are entitled to sovereign immunity from the Fifth Amendment due process and equal protection claims . . . to the extent those claims seek back pay[.]" *Strickland*, 32 F.4th at 321. Nevertheless,

Plaintiff's Motion seeks an order requiring the government to pay her "lost earnings *while this litigation is pending*," Mot. at 1 (emphasis added)—in other words, back pay. Plaintiffs' suggestion that her Motion is actually seeking front pay, *id*. at 18-19, reflects a misunderstanding of the difference between back pay and front pay.

"An award of back pay compensates plaintiffs for lost wages and benefits between the time of the discharge and the trial court judgment." *Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368, 379 (1st Cir. 2004) (citations omitted); *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 167 (2d Cir. 1998) ("backpay" is paid "from the date of discharge until the date of judgment"). In contrast, "front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). Given that judgment has not been entered here, the lost earnings that Plaintiff seeks to recover necessarily constitute back pay.

Indeed, the Fourth Circuit has explained that a preliminary injunction is "appropriate to grant intermediate relief of the same character as that which may be granted finally, but conversely, preliminary relief may never be granted that addresses matters which in no circumstances can be dealt with in any final injunction that may be entered[.]" *Sun Microsystems, Inc. v. Microsoft Corp.*, 333 F.3d 517, 525 (4th Cir. 2003) (internal quotation marks and citation omitted). It is undisputed that Plaintiff cannot recover pre-judgment lost earnings through any final injunction that may be entered in this matter. Accordingly, Plaintiff likewise may not recover such earnings through a preliminary injunction. *Id*.

**B. Plaintiff's Lost Earnings Were Not Caused by Defendants**

Even accepting for purposes of argument Plaintiff's mischaracterization of her pre-judgment lost earnings as "front pay," Plaintiff fails to show that Defendants caused her to lose

those earnings. *See Sierra Club v. United States DOE*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) ("A plaintiff may be irreparably harmed by all sorts of things, but the irreparable harm considered by the court must be *caused by the conduct in dispute* and remedied by the relief sought.") (emphasis added). Plaintiff appears to assume that she necessarily will be entitled to front pay if she prevails on her due process and equal protection claims. But that is incorrect—front pay is not a remedy for a due process violation or a finding that an employer was deliberately indifferent to claims of sexual harassment, absent proof of constructive termination. *See, e.g.*, *Hatter v. N.Y.C. Hous. Auth.*, No. 97-9351, 1998 U.S. App. LEXIS 27571, at *4 (2d Cir. Oct. 22, 1998) (plaintiff would not be entitled to front pay even if she "could show that she was subjected to a hostile work environment" because front pay is "only available when the employee's separation from employment results from the discriminatory conduct"); *Robson v. Shaws Supermarkets Inc.*, 411 F. Supp. 3d 58, 73 (D. Me. 2019) ("to obtain an award of . . . front pay" in connection with a hostile work environment claim, "a plaintiff needs to demonstrate that the [departure from employment] was, for practical purposes, involuntary and compelled, *i.e.*, a 'constructive discharge'").

Accordingly, to establish a basis for receiving front pay, Plaintiff would need to prove, *inter alia*, that she was constructively terminated from her position at the FDO. Plaintiff's Motion, however, fails to cite *any* evidence whatsoever to support such a finding. Indeed, her Motion fails to even identify the relevant legal standard for a constructive discharge claim, much less to present evidence and argument showing how the standard could be satisfied here. Plaintiff's failure to address the issue is reason enough to deny her Motion. *See, e.g.*, *CC1 Ltd. P'ship v. NLRB*, 898 F.3d 26, 35 (2018) (arguments not raised in opening brief are forfeited).

In any event, the evidence refutes Plaintiff's allegation that she was constructively discharged. "The [constructive discharge] inquiry is objective: Did working conditions become

so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (emphasis added). In other words, Plaintiff must show "that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign" and that she actually did resign. *Evans v. Int'l Paper Co.*, 936 F.3d 183 (4th Cir. 2019) (internal citations omitted). Here, a reasonable person in Plaintiff's shoes would not have felt compelled to resign, as the working conditions—at the time of her resignation and throughout her employment—were objectively not "intolerable."

The crucial inquiry for this Court's "intolerability" review are frequency and severity. *Id*. The more continuous and egregious the conduct, the more likely it is "intolerable." *Id*. Here, as discussed above, the evidence establishes that Plaintiff was not subjected to harassment, discrimination, or retaliation. In fact, for the last seven months of her employment before her voluntary transfer, she teleworked and did not see anyone from the office. Davis Decl., ECF No. 78-2, ¶¶ 39, 42; Martinez Decl., ECF No. 78-3 ¶¶ 93-94. She did not communicate with her alleged harasser, who was fully removed from her chain of command, nor did she have any direct interaction with the Defender. *Id*. The fact that Plaintiff might subjectively believe she was harassed, discriminated against, or retaliated against before she began teleworking does not establish a violation, and it certainly does not show intolerable working conditions at the time she resigned several months later. *See Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) ("dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" are not "intolerable"); *see also Triplett v. N.C. Dep't of Pub. Safety*, No. 15-75, 2018 U.S. Dist. LEXIS 150991, at *6-8 (W.D.N.C. Sep. 5, 2018) (denying request for back pay and front pay where the plaintiff had been "removed from the environment that she deemed hostile" at

13

the time of her resignation).  Notably, "'[u]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.'"  *Suders*, 542 U.S. at 147.  Plaintiff did not "have to remain on the job while seeking redress" and was permitted to telework at her request.

The circumstances surrounding Plaintiff's departure from the FDO further confirm that there was no constructive discharge.  She eagerly accepted a transfer while pursuing the process afforded her by the Fourth Circuit.  *See* Decl. of James Ishida, ECF No. 78-4, Ex. D-1.  The transfer was part of a mediated resolution, to which she voluntarily agreed, with the advice of her lawyer.  On these facts, a reasonable person would not have felt "compelled" to resign.  Accordingly, the evidence on this issue – which Plaintiff has entirely failed to address – shows that Plaintiff was not constructively discharged.  Therefore, Plaintiff cannot recover lost earnings.

### C. A Likelihood of Success on the Merits (Which Plaintiff Has Failed to Prove) Would Not Establish Irreparable Harm

Plaintiff argues that she is "likely to succeed on the merits" and therefore "has also established irreparable harm."  Mot. at 17.  Not only is Plaintiff unlikely to succeed on the merits, for the reasons discussed above, but likelihood of success on the merits does not establish irreparable harm.  If it did, the irreparable harm factor would be superfluous.  *See Mt. Valley Pipeline*, 918 F.3d at 366 ("Each of these four requirements [for a preliminary injunction] must be satisfied.").

To the extent Plaintiff may be arguing that she faces irreparable harm because she has alleged a constitutional violation, that too is incorrect.  Although there are cases holding that a threatened or ongoing constitutional violation may sometimes establish irreparable harm, this case involves neither.  *See Strickland*, 32 F.4th at 365-66 ("Strickland's resignation and acceptance of another job means that she is not currently being impacted by the alleged constitutional

14

violations"). Irreparable harm is lacking where, as here, "the alleged constitutional violation has already occurred; it is not ongoing, and there is no threat that it will occur again." *Youngman v. Yucaipa Am. All. Fund L.P.*, No. 21-994-CFC, 2021 U.S. Dist. LEXIS 143691, at *5-6 (D. Del. Aug. 2, 2021).

Moreover, findings of irreparable harm for a constitutional violation have been generally reserved for "infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief" and "it cannot be said that violations of plaintiffs' rights to due process and equal protection automatically result in irreparable harm[.]" *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484-85 (1st Cir. 2009); *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) ("Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm. Our case law has not gone that far, however."); *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm[.]"). Thus, the fact that Plaintiff has alleged constitutional violations does not establish that she will be irreparably harmed absent an injunction.

### D. Plaintiff Has Failed to Show that Lost Earnings Constitute Irreparable Harm

Plaintiff next argues that "any further delay" will cause her "irreparable harm in the form of lost earnings she may never recover." Mot. at 17. But Plaintiff is mistaken in her assumption that "any" unrecoverable financial loss constitutes irreparable harm. "[T]he mere fact that economic losses may be unrecoverable does not, in and of itself, compel a finding of irreparable harm." *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 114 (D.D.C. 2015). Even where "a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity," the movant still has a "considerable burden of proving that those losses are

15

certain, great and actual[.]" *Id.* A contrary rule would "effectively eliminate the irreparable harm requirement" because "[a]ny movant that could show any damages against an agency with sovereign immunity—even as little as $1—would satisfy the standard." *Id.* Thus, "the injury must be more than simply irretrievable, it must also be serious in terms of its effect on the plaintiff." *Air Transp. Ass'n of Am. v. Exp.-Import Bank of the United States*, 840 F. Supp. 2d 327, 336 (D.D.C. 2012).[4]

Moreover, "the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction" in a government personnel case is greater than is required under traditional standards. *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). A finding of irreparable harm in the government employment context requires a "genuinely extraordinary situation" and factors such as "an insufficiency of savings or difficulties in immediately obtaining other employment – external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself – will not support a finding of irreparable injury, however severely they may affect a particular individual." *Id.*

Here, Plaintiff has failed to show that her lost earnings will cause serious economic harm in the absence of a preliminary injunction. Plaintiff claims only that she is currently earning less income than she would have if she were still employed at the FDO. *See* Pl's Decl. ¶¶ 14-21. But that fact alone is insufficient to demonstrate a serious economic impact. *Air Transp. Ass'n*, 840 F. Supp. 2d at 336.

---

[4] For example, in the business context, courts require the plaintiff to make "a strong showing that the economic loss would significantly damage its business above and beyond a simple diminution in profits,' or demonstrates that the loss would 'cause extreme hardship to the business, or even threaten destruction of the business[.]'" *Save Jobs USA*, 105 F. Supp. 3d at 114.

16

Moreover, Plaintiff has failed to provide the Court with information sufficient to calculate a reasonably certain front pay award. *See Peyton v. DiMario*, 287 F.3d 1121, 1129 (D.C. Cir. 2002) ("The plaintiff bears the initial burden of providing the district court 'with the essential data necessary to calculate a reasonably certain front pay award."). Plaintiff has merely identified what she believes her salary would be had she remained at the FDO and her estimation of her current income. That is insufficient to support a non-speculative front pay award. *See Peyton*, 287 F.3d at 1129 (vacating front pay award where "the district court simply calculated the difference between pay at [the new employer] and [the defendant employer], and assumed that appellee would have stayed at [the new employer] for the rest of her career"); *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) ("[W]e have cautioned that because of the 'speculative' nature of front-pay awards and 'the potential for windfall,' the use of front pay 'must be tempered.'").

Even the limited information that Plaintiff did provide contains unsupported assumptions. For instance, Plaintiff contends that she should have been promoted to a Grade 15 in August 2018. Pl's Decl. ¶ 16. But at that point, Plaintiff had only been at the FDO for one year, and she presents no evidence to show that FDO employees – even high performing employees – are ordinarily promoted to a higher grade after only one year on the job. On the contrary, the typical path requires years of within-grade increases before promotion to a higher grade.[5] Moreover, Plaintiff's request for an open-ended payment requirement with no defined end-date is contrary to the principle that "front pay is intended to be temporary in nature." *Gotthardt v. AMTRAK*, 191 F.3d 1148, 1157 (9th Cir. 1999).

---

[5] *See* https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/within-grade-increases/.

Finally, Plaintiff has a duty to mitigate any damages. *See Triplett*, 2018 U.S. Dist. LEXIS 150991, at *6-7. Plaintiff has not shown why, given her impressive credentials, she has been unable to secure substantially equivalent employment in the years since her departure from the FDO. That she apparently has not done so indicates a failure to mitigate damages, precluding a front pay award. *See Crump v. United States Dep't of Navy*, 205 F. Supp. 3d 730, 748 (E.D. Va. 2016) ("Courts have also denied front pay in cases where a plaintiff has failed to mitigate their damages by seeking substantially equivalent employment with reasonable diligence.").

## IV. The Remaining Equitable Factors Require Denial of Plaintiff's Motion

A party seeking a preliminary injunction must demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, they weigh against a preliminary injunction.

Rather than preserve the status quo pending final adjudication, Plaintiff requests a mandatory injunction, demanding that this Court order the government to pay her a salary, offset by current earnings, while this litigation is pending. Motions for a mandatory injunction are subject to a high standard, and "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Sun Microsystems*, 333 F.3d at 526. Plaintiff has not met this standard.

Plaintiff claims that the equities favor an injunction to protect against "Defendants' ongoing violations of Strickland's constitutional rights." Mot. at 17. That argument runs headlong into the Fourth Circuit's decision in this case, which specifically observed that Plaintiff "is not currently being impacted by the alleged constitutional violations[.]" *Strickland*, 32 F.4th at 365-66. Plaintiff left the FDO years ago—there are no "ongoing violations" to protect against.

Notably, Plaintiff's Motion ignores altogether the question of what would happen if money were paid pursuant to a preliminary injunction and the government were to ultimately prevail in this suit. Plaintiff fails to identify any process by which the government could recoup that money, at least some of which likely would have been spent by that point. The public interest clearly weighs against the waste of public funds. *See Brock v. Pierce County*, 476 U.S. 253, 262 (1986) ("[T]he protection of the public fisc is a matter that is of interest to every citizen."). And even if it were possible to recover some portion of the money, doing so would be administratively complicated and would impose significant burdens on the government.

Lastly, it is well-established that "a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (denying preliminary injunction in part because "plaintiffs' unnecessary . . . delay in asking for preliminary injunctive relief weighed against their request"). Although Plaintiff resigned from the FDO in March 2019, Compl. ¶ 464, she did not file suit until March 2020, and did not move for a preliminary injunction until July 2022. Plaintiff offers no explanation for her substantial delay in seeking relief. *See Hornig v. Trustees of Columbia Univ.*, No. 17-cv-3602, 2018 U.S. Dist. LEXIS 189268, at *20 (S.D.N.Y. Nov. 5, 2018) (finding the plaintiff's two-and-a-half-month delay in bringing motion for preliminary injunction in employment discrimination case undermined "a finding [o]f irreparability because 'courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months'"). Plaintiff should not be granted extraordinary relief in the form of a preliminary injunction after waiting so long to seek relief from this Court.

* * *

19

In closing, Defendants address Plaintiff's unsupported accusation of "bad faith" by Defendants. Mot. at 19. What Plaintiff relies upon as the basis for such a weighty allegation is nothing more than her subjective and unsupported belief that Defendants "impugn[ed] her integrity" and "mischaracteriz[ed] the investigation report." *Id*. Plaintiff also accuses Defendants of "violat[ing] the court-ordered pseudonym order." *Id*. at 21. Defendants acknowledge that Plaintiff's name was inadvertently not properly redacted in connection with one filing in this case. Immediately upon being notified of the issue, counsel for Defendants contacted the clerk's office and requested that the filing be restricted from public viewing, and the clerk's office promptly took action. *See* Oct. 3, 2020 Email from Gill Beck, attached hereto as Ex. A. As to Plaintiff's claim that Defendants improperly disclosed other alleged "identifying information," that information did not reveal Plaintiff's identity, and there was never any order prohibiting the disclosure of such information. Indeed, after this issue arose, Defendants' counsel expressly invited Plaintiff to seek an order requiring identifying information to be filed under seal—so that Defendants would know what information Plaintiff believes would reveal her identity—but Plaintiff's counsel declined, relying instead on the supposed "general understanding of what should be redacted," even after Defendants' counsel disagreed that there was any such understanding. *See* Oct. 21, 2020 Email from Cooper Strickland, attached hereto as Exhibit B.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion.

Respectfully submitted,

BRIAN D. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

*/s/ Joshua Kolsky*

20

JOSHUA M. KOLSKY
RACHAEL L. WESTMORELAND
Trial Attorneys
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

*Counsel for Defendants*