# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF HER
## MOTION FOR A PRELIMINARY INJUNCTION

Defendants' response to Strickland's motion for a preliminary injunction reveals that they are attempting to relitigate issues that the Fourth Circuit squarely decided against them and are asking this court to disregard the Fourth Circuit's mandate. The Fourth Circuit held that Strickland's request for front pay in lieu of reinstatement is a request for an "equitable remedy" that is not barred by sovereign immunity. *Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022). Because front pay is a form of prospective equitable relief that is available upon final judgment in this case, her lost earnings are available at the preliminary injunction stage. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) ("[A] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." (citation omitted)). At

1

bottom, Defendants' arguments amount to a disagreement with the Fourth Circuit's holding that front pay is available in this case, which violates the mandate rule. *See S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) ("[T]he mandate rule 'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" (citation omitted)). In addition to disregarding the Fourth Circuit's ruling, Defendants ignore other Fourth Circuit precedents that undermine their position. Further, Defendants distort the precedents they do cite, and they fundamentally misconstrue the nature and scope of the relief Strickland is requesting. What is clear from their filing is that Defendants have utterly failed to refute Strickland's showing that she is likely to succeed on the merits, her continuing lost earnings definitively establish irreparable harm, and the remaining factors for a preliminary injunction weigh heavily in her favor.

## I.      Strickland is likely to succeed on the merits of her claims.

The factual record in this case clearly demonstrates that Strickland is likely to succeed on the merits of her constitutional claims. Indeed, the factual record is so strongly one-sided in Strickland's favor that she should prevail *on summary judgment*. As discussed in her reply to Defendants' supplemental memorandum in opposition to her motion for summary judgment, which she incorporates by reference here, ECF No. 138, Strickland is entitled to summary judgment because Defendants have failed to raise a genuine dispute of material fact or to request

discovery pursuant to Federal Rule of Civil Procedure 56(d).  This court should grant Strickland summary judgment and order preliminary relief until a final equitable remedy is ordered.  At a minimum, it should order such preliminary relief because she is likely to succeed on the merits of her claims.

Though it is true that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," *G.G. ex. rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016), that is not an invitation to rely on evidence that is shown to be "utterly unreliable," *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 278 (4th Cir. 2002); *see also Signature Flight Support v. Landow Aviation Ltd. P'ship*, No. 1:08CV955 (JCC), 2009 WL 90849, at *3 (E.D. Va. Jan. 13, 2009) (at preliminary injunction stage, courts "refuse[] to consider declarations that 'do[ ] not contain sufficient indicia of reliability'" (citation omitted)).  In this case, Defendants ask this court to rely on selective hearsay quotations from an EDR investigation report that they are not providing to the Strickland or the court.  ECF No. 135, at 8, 9–10.  That omission is extremely telling.  If Defendants had truly responded "promptly and appropriately" to Strickland's complaint and found her allegations unsubstantiated based on a thorough and impartial investigation, they should be eager to disclose the investigation report.  *Id.* at 8.  Yet, Defendants *still* have failed to disclose the report after having been provided at least *four* opportunities to do

3

so, including their summary judgment opposition, filed on October 2, 2020; their response to Strickland's supplemental memorandum, filed on July 3, 2022; their supplemental memorandum, filed on August 22, 2022; and their response to her motion for a preliminary injunction, filed on August 22, 2022. Defendants have made an intentional decision to withhold the report, and they are asking this court to simply take their word for it that the report means what they want the court to believe it means. This dubious approach raises serious red flags about what Defendants are hiding, and it is enough, on its own, to fully discredit their unsupported assertions about the investigation and its findings.

Compounding the doubts about whether the Defendants are being candid with the court and parties about material facts, Defendants have not even provided a declaration from the Investigator who conducted the investigation of Strickland's EDR claim. Instead, Defendants introduced selective quotations from the investigation report through a declaration from the Defender, *an accused party*, who was ultimately disciplined for wrongful conduct based on the report's findings. *See* Martinez Decl., ¶ 105. Defendants have failed to answer for the Defender's misleading and deceptive quotations from the report, including his omission, using carefully curated ellipses, of the report's finding that he exercised "poor judgment and decision-making skills." *Compare* ECF No. 94, at 4, *with* Martinez Decl., ¶ 105. Defendants' assertion that there is no "material difference"

4

between the Defender's deceptive quotation and the actual statement in the investigative report is simply incredible. ECF No. 135, at 10. Obviously, the investigation's finding that the Defender exercised "poor judgment and decision-making skills" is relevant to whether Strickland's claims against him had merit and were substantiated, which are material issues in this case. There is clearly a material difference between the assertion that Strickland "exploited . . . upper management," Martinez Decl., ¶ 105, and the assertion that she supposedly "exploited poor judgment and decision-making skills," ECF No. 94, at 4, of "upper management," Martinez Decl., ¶ 105. Moreover, it appears that this deception was revealed only inadvertently, when Defendants mistakenly quoted the words "poor judgment and decision-making skills" instead of "upper management" in quoting the Defender's declaration in another filing. ECF No. 94, at 4. By failing to correct the Defender's misleading and deceptive statements and by failing to disclose material facts, Defendants and their counsel violated their duty of candor to the court. The fact that the deception was revealed only through sloppy drafting, rather than through a forthright admission, makes it even more troubling.

Defendants have provided no legitimate reason for not offering into evidence the investigation report or the related disciplinary action, which they also rely on to claim that Strickland's allegations were unsubstantiated. *See* ECF No. 135, at 8. Their assertion that she is merely "disappointed by [the investigation's]

outcome" misses the point entirely, which is that she does not know the investigation's outcome because she still has not seen the report. *Id.* at 10. Defendants' "take-our-word-for-it" approach to the investigation blatantly violates the rules of evidence and civil procedure, as discussed in Strickland's reply to their supplemental memorandum. *See* ECF No. 138, at 24–25. But more fundamentally, it underscores Defendants' denigration of Strickland's due process right to a meaningful opportunity to be heard on her claims—the same right that the Fourth Circuit found that Defendants violated during her EDR process. *Strickland*, 32 F.4th at 351 (holding that Strickland had a "right to redress" discrimination, "a right that is functionally equivalent to a cause of action"); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (due process protects "civil litigants who seek recourse in the courts" and is violated by actions that deny them "an opportunity to be heard upon their claimed right[s]" (citation omitted)). After all, it is an "immutable" principle that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970) (citation omitted). Under this principle, this court cannot deny Strickland's claims based on evidence that the government will not disclose to her or to the court. The fact that Defendants are urging the court to

6

violate this basic principle shows that they have not heeded the lessons from the Fourth Circuit's decision and are continuing to disregard its mandate.

## II.   Strickland has demonstrated irreparable harm.

The Fourth Circuit held that Strickland cannot recover back pay directly in federal court.  *Strickland*, 32 F.4th at 369–71.  It is thus "nose-on-the-face plain" that, absent a preliminary injunction, she will suffer irreparable harm in the form of lost earnings while this litigation is pending.  *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003); *see Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("[When] monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury justifying preliminary relief.").  Moreover, the losses Strickland is suffering are "actual and immediate."  *N. Carolina Growers' Ass'n, Inc. v. Solis*, 644 F. Supp. 2d 664, 668 (M.D.N.C. 2009), *as amended* (July 1, 2009).  In her sworn declaration, Strickland testified that she is currently losing close to $100,000 per year in salary alone.  Plaintiff's Decl. ¶ 14.  That does not include the value of employer benefits, which could be worth as much as 40 percent of her total compensation.  *Id.*  Strickland is continuing to pursue indigent criminal defense work to the best of her ability, but due to circumstances out of her control, she is unable to earn anywhere near as much in compensation as she would as a federal

7

public defender. *Id.* ¶¶ 10–21. These irreparable losses are having a devastating effect on her personally. As stated in her verified complaint, Strickland "has been forced to delay major life goals, including obtaining her own home and having children." Complaint ¶ 489. These unrecoverable losses clearly constitute irreparable harm and warrant a preliminary injunction, given that sovereign immunity bars her from obtaining back pay at the end of this suit. *See Mountain Valley Pipeline, LLC*, 915 F.3d at 218 (when "economic losses would not be recoverable at the end of litigation, . . . that is enough to take th[e] case out of the ordinary presumption against treating economic losses as irreparable injury"); *Rosario-Urdaz*, 350 F.3d at 222 ("Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists."); *N. Carolina Growers' Ass'n, Inc.*, 644 F. Supp. 2d at 670 (finding "irreparable harm" because the plaintiff's "economic losses are unrecoverable" due to sovereign immunity); *Am. Fed'n of Gov't Employees, AFL-CIO v. United States*, 104 F. Supp. 2d 58, 75–76 (D.D.C. 2000) (finding irreparable harm where federal employees were deprived "not just of their income but also of their health insurance, retirement annuities and other benefits," they presented evidence "beyond the serious harm occasioned whenever an employee is terminated," and there was a "substantial risk" that they would be unable to be recover back pay even if they prevailed at trial); *Farkas v. New York*

8

*State Dep't of Health*, 554 F. Supp. 24, 28 (N.D.N.Y. 1982), *aff'd sub nom. Farkas v. Dep't of Health*, 767 F.2d 907 (2d Cir. 1985) ("Since a back pay award is not available to plaintiff, he will have no means to recover any lost increase in wages to which he may be entitled, accruing during the pendency of this action. Accordingly, plaintiff has met his burden of establishing irreparable injury.").

### A. Sovereign immunity does not preclude a preliminary injunction.

In contending that Strickland has not demonstrated irreparable harm, Defendants misconstrue the relief she is seeking, ignore decisions from the Fourth Circuit that undermine their position, and make arguments that border on the frivolous. To begin with, Defendants are plainly wrong to contend that Strickland's request for front pay is really for one "back pay" that is barred by sovereign immunity. ECF No. 135, at 11. As already discussed, the Fourth Circuit held that Strickland's request for front pay is one for prospective relief that is not barred by sovereign immunity. *Strickland*, 32 F.4th at 366. Because front pay is a form of prospective equitable relief that is available upon final judgment in this case, ongoing lost earnings are necessarily also an "appropriate" form of "intermediate" relief. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d at 525 (citation omitted). Indeed, courts routinely grant preliminary injunctive relief when the recovery of lost earnings would otherwise be barred by sovereign immunity, as discussed above. Defendants act as though there is no mechanism to

recover these lost earnings prior to entry of final judgment, but that is precisely the purpose of a preliminary injunction, "to preserve the relative positions of the parties until a trial on the merits can be held." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016) (citation omitted).

**B.    Strickland has shown she was constructively discharged.**

Defendants argue that Strickland's lost earnings were not "caused" by Defendants because she has not proven she was constructively discharged as a result of their violations of her due process and equal protection rights.  ECF No. 135, at 11–14.  This argument, too, is foreclosed by the Fourth Circuit's decision. The Fourth Circuit held that if Strickland proved the facts supporting her due process claim, "a reasonable factfinder could conclude that continuing with the EDR process would be futile and that Strickland had reason to believe that the more suitable alternative was to drop her complaint and accept the Fourth Circuit clerkship." *Strickland*, 32 F.4th at 356.  The Fourth Circuit similarly held that her allegations that Defendants "fail[ed] to take immediate and effective action on her complaints" and also "fail[ed] to provide her with meaningful review or remedies," both of which led directly to her resignation, supported her claim that they were deliberately indifferent to sexual harassment.  *Id.* at 360 (quoting Complaint at 83). Thus, under the Fourth Circuit's decision, Strickland's showing that she is likely to succeed on the merits is also a showing that she was constructively discharged.

10

Moreover, Defendants are wrong to contend that Strickland has not addressed the standard for a constructive discharge. ECF No. 135, at 12. Strickland's summary judgment motion, which was incorporated by reference into her motion for a preliminary injunction, *see* ECF No. 125-1, at 6, contains a section titled "Defendants are Liable for Roe's Resignation" that explicitly applies the constructive discharge standard to Strickland's claims. ECF No. 60-1, at 20– 21. Strickland expanded on these arguments in her reply brief in support of summary judgment. *See* ECF No. 93, at 16–17. She explained, among other things, that the Judicial Integrity Officer's statements to her, including that she would "like to better understand if FPDs are adequately protected by EDR remedies," *id.* (citation omitted), were "official company acts" that made it objectively reasonable for her to conclude that the EDR process was futile, *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004). Moreover, Defendants' decision to place Strickland on telework for *over seven months* with no meaningful action on her complaints was an ostracizing "tangible employment action." ECF No. 93, at 4–5 (quoting *Suders*, 542 U.S. at 143). Given the totality of the discriminatory "co-worker conduct, unofficial supervisory conduct, [and] official company acts," Strickland's belief that she had no choice but to resign was objectively reasonable. *Id.* at 16 (quoting *Suders*, 542 U.S. at 148).

## C. The ongoing harm caused by Defendants' constitutional violations establishes irreparable harm.

Defendants argue that Strickland has not established irreparable harm because the constitutional violations here have "already occurred" and are "not ongoing." ECF No. 135, at 15. This argument, again, violates the mandate rule. *See S. Atl. Ltd. P'ship of Tennessee, LP*, 356 F.3d at 584 ("[T]he mandate rule 'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" (citation omitted)). Defendants made this same argument on appeal, and the Fourth Circuit explicitly rejected it. *Strickland*, 32 F.4th at 365 ("[W]e reject the Official Capacity Defendants' argument that Strickland 'has not identified any prospective equitable relief or ongoing constitutional violations.'" (quoting Aple. Br. at 15)). Though Strickland is not currently being sexually harassed or retaliated against because she involuntarily resigned from the FDO, she clearly is suffering ongoing harm as a result of the constitutional violations. That is why the Fourth Circuit held that she may seek front pay as a prospective equitable remedy. *Id.*; *see also id.* (holding that the *Larson-Dugan* exception allows Strickland to "seek to enjoin federal officials in their official capacities from exceeding the scope of their authority or acting unconstitutionally" (quoting Huq & Chemerinsky Amicus Br. at 2)). The Fourth Circuit thus definitively resolved this issue in Strickland's favor. Defendants did not seek to challenge the Fourth Circuit's ruling through a petition for rehearing or a petition for a writ of certiorari. They

12

cannot challenge the Fourth Circuit's ruling in this court, because it is both final and binding on this court. *See S. Atl. Ltd. P'ship of Tennessee, LP*, 356 F.3d at 584 ("Under the mandate rule, a district court cannot reconsider issues the parties failed to raise on appeal; the court must attempt to implement the spirit of the mandate; and the court may not alter rulings impliedly made by the appellate court.").

Citing out-of-circuit decisions, Defendants also contend that a likelihood of success on the merits of a constitutional claim does not necessarily establish irreparable harm. ECF No. 135, at 15. But the rule in the Fourth Circuit is that when "there is a likely constitutional violation, the irreparable harm factor is satisfied." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc) (citing *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'")); *see also Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right."). This rule accords with the principle that "[t]he basic guarantees of our Constitution are warrants for the here and now and, unless there is an overwhelmingly compelling reason, they are to be promptly fulfilled." *Watson v. City of Memphis*, 373 U.S. 526, 533 (1963).

**D.** **Strickland's unrecoverable lost earnings plainly establish irreparable harm.**

Defendants make a hodge-podge of arguments under the heading "Plaintiff Has Failed to Show that Lost Earnings Constitute Irreparable Harm."  ECF No. 135, at 15.  Some of these arguments misconstrue the relief that Strickland is seeking, while others seem aimed at questioning her sworn testimony that the harm she is suffering is serious and immediate.  All of them miss the mark.

**1.** **In the Fourth Circuit, an unrecoverable economic loss establishes irreparable harm.**

Relying on out-of-circuit decisions, Defendants contend that unrecoverable lost earnings are not enough to establish irreparable harm.  ECF No. 135, at 15–16.  Defendants argue that, beyond proving her lost earnings, Strickland must show that the loss "would cause extreme hardship" and that it is "serious in terms of its effect" on her.  ECF No. 135, at 15–16 (citations omitted).  If this showing were required, Strickland would plainly meet it based on the serious and ongoing financial loss and the tremendous hardship it has caused her.  *Supra*, at 7–8; Complaint ¶ 489.  But in fact, the Fourth Circuit has expressly rejected any such heightened showing.  *See Mountain Valley Pipeline*, LLC, 915 F.3d at 217–18 (rejecting argument that "prospective financial losses" can never qualify as 'irreparable injury,' at least where they do not 'threaten the party's very existence'").  Instead, the rule in this circuit is that when "economic losses would

*not* be recoverable at the end of litigation . . . that is enough to take th[e] case out of the ordinary presumption against treating economic losses as irreparable injury." *Id.* Thus, when "monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury justifying preliminary relief." *Id.* That is the case here, because Strickland cannot recover back pay directly in federal court. *Strickland*, 32 F.4th at 369–71.

### 2. Strickland is not required to prove a "genuinely extraordinary situation."

Defendants contend that a finding of irreparable harm in the government employment context requires a "genuinely extraordinary situation," based on the Supreme Court's decision in *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). ECF No. 135, at 16. But *Sampson* is a "relic of the world" before the Supreme Court's decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), which fundamentally altered the test for establishing irreparable harm. *Roe v. Shanahan*, 359 F. Supp. 3d 382, 419 (E.D. Va. 2019), *aff'd sub nom. Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020). Following *Winter*, "[t]here is but one standard for issuing injunctive relief," in government cases "no less"—and "no more"—"than in other cases." *Id.* (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006)); *Roe*, 947 F.3d at 229 (a "special standard" no longer applies to preliminary injunctions in government cases after *Winter*).

15

### 3. Strickland's lost earnings are not "speculative" or "unsupported."

Defendants contend that Strickland "has failed to provide the Court with information sufficient to calculate a reasonably certain front pay award." ECF No. 135, at 17. But Strickland's motion does not request a front pay award, which would be ordered at the end of this case; rather, it requests a preliminary injunction in the form of lost earnings while this case is pending. *See* ECF No. 125-1, at 1 ("Plaintiff Caryn Devins Strickland respectfully requests that this court enter a preliminary injunction ordering Defendants to compensate her for her lost earnings while this litigation is pending."). The cases that Defendants cite regarding whether a permanent front pay award is "non-speculative" are wholly inapplicable to her request for a temporary preliminary injunction. ECF No. 135, at 17. Defendants do not even attempt to identify what is "speculative" about the fact that Strickland is currently earning far less than she would have earned at the FDO. Courts order injunctions to compensate for ongoing lost earnings, as Strickland is requesting here, without engaging in any speculation. *See, e.g.*, *Farkas*, 554 F. Supp. at 29 (ordering that plaintiff "shall receive a salary commensurate with the position to which he seeks appointment during the pendency of this action"); *cf. In re Levenson*, 587 F.3d 925, 937 (9th Cir. 2009) (ordering compensation for lost benefits to "accrue" on a "monthly, quarterly, or other basis").

16

Defendants further contend that Strickland's lost earnings calculation "contains unsupported assumptions." ECF No. 135, at 17. The only such assumption that Defendants identify is that she should have been promoted to a JSP Grade 15 in August 2018. *Id.* But as Strickland explained in her reply to Defendants' supplemental memorandum, the Defender clearly *did* deny her a promotion for which she was eligible on her August 21, 2018 work anniversary date, even going so far as to *backdate* her "reclassification" to *the day before* her work anniversary. ECF No. 138, at 16–17. Defendants provided no legitimate basis to deny Strickland the promotion. Instead, they argued that she was not eligible for the promotion based on a blatant misrepresentation of her qualifications and years of relevant professional experience. *Id.*

In their latest filing, Defendants seem to concede that Strickland *was* eligible for the grade-level promotion. ECF No. 135, at 17. But they now attempt to conjure up a new explanation for the promotion denial: that the "typical path" to a grade-level promotion "requires years of within-grade increases," and that the burden is on Strickland to prove otherwise. *Id.* This newly conjured theory in Defendants' unsworn filing is not evidence in this case, especially because it blatantly contradicts the explanation they previously gave in their sworn declarations. *See* Moormann Decl., ¶ 16 (asserting that Strickland was not eligible for a grade-level promotion because ten years of "federal service" were required

for eligibility and she had "slightly less than 4 years"); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004) ("[U]nsworn statements in memoranda filed by Government counsel do not constitute evidence.").  But in any event, Defendants' new explanation is also false.  In fact, "GS employees [including JSP employees] may advance to higher grades by promotion at certain intervals (generally after at least a year), . . . up to the full promotion potential advertised in the job announcement."[1]  *See* OPM, General Schedule Classification and Pay, https://tinyurl.com/yck3aj26.  Strickland's "appointing officer," *i.e.*, the Defender, had the authority to promote her "to any grade level for which she qualifi[ed], at or below the target grade."  Guide to Judiciary Policy, Vol. 12, § 615.40.  Strickland was thus subject to the same promotion policy that governs chambers law clerks, who are eligible for yearly grade-level promotions.  *See id.* Appx 5F: JSP Qualification Standards, at 3 (JSP chart for chambers law clerks).  The only difference is that the target grade for her position was Grade 15 instead of Grade 14.  *Compare id.* (JSP chart for chambers law clerks) with DOCs Manual, Sec. 4–3 (JSP chart for research-and-writing attorneys).  Moreover, the progression through yearly grade-level promotions is borne out through Strickland's own history of

---

[1] Defendants cite an OPM webpage that provides general information about step increases in federal employment, but nowhere does it state that the "typical path requires years of within-grade increases before promotion to a higher grade."

service in the federal judiciary. As a judiciary employee, Strickland was given a grade-level promotion every year, including upon the start of her employment at the FDO. *See* Ex. A (certified documents from Strickland's personnel file). The only exception was her Supreme Court Fellowship, because the target grade for the position was the equivalent of Grade 13 and she was already being compensated at that grade. *See* Supreme Court Fellows Program, https://tinyurl.com/4xf2khyu (stating that fellows "receive salaries equivalent to GS-13/1 of the government pay scale"). In fact, if the target grade for the Fellowship had been Grade 14 rather than Grade 13, Strickland would have been eligible for Grade 15 when she began employment at the FDO. In any event, Defendants' assertion that the FDO would not have given her a grade-level promotion after a year of excellent work performance is belied by the fact that the FDO gave her a grade-level promotion one year earlier, before she had even started work there. *Id.*

Defendants also contend that Strickland is requesting an "open-ended payment requirement with no defined end-date." ECF No. 135, at 17. Again, that is wrong. At this stage of litigation, Strickland is requesting a temporary preliminary injunction until the date of final judgment, not a permanent front pay award. But more broadly, Defendants are wrong to contend that front pay awards must be "temporary." *Id.* In fact, the court must "tak[e] into account both economic and personal circumstances" of the plaintiff in awarding front pay. *U.S.*

*Equal Employment Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 149 (4th Cir. 2017). And long periods of front pay are not unusual when the opportunities for a plaintiff to find an equivalent job are limited. *See Bennett v. R & L Carriers Shared Servs., LLC*, 492 Fed. Appx. 315, 336 (4th Cir. 2012) (upholding front pay award based on 11-and-a-half years of earnings); *Tinsley v. City of Charlotte*, No. 3:16-CV-00656-GCM, 2019 WL 1874044, at *6 (W.D.N.C. Apr. 26, 2019) (awarding 9 years of front pay and explaining that "other Circuits have upheld front pay awards for longer than nine years"); *accord Passantino v. Johnson & Johnson Consumer Order and Products, Inc.*, 212 F.3d 493, 511–12 (9th Cir. 2000) (upholding award of 22 years of front pay to 43-year-old plaintiff); *Gotthardt v. Nat'l Railroad Passenger Corp.*, 191 F.3d 1148, 1156–58 (9th Cir. 1999) (upholding award of 11 years of front pay); *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 355 (1st Cir. 1998) (upholding award of 19 years of front pay); *Padilla v. Metro-North Commuter RR*, 92 F.3d 117, 126 (2nd Cir. 1996) (upholding front pay award of "well over 20 years"); *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 574 (7th Cir. 1995) (upholding award of 10 years of front pay); *Feldman v. Philadelphia Housing Auth.*, 43 F.3d 823, 832–33, 841 (3d Cir. 1995) (upholding award of 27 years of front pay to 38-year-old plaintiff); *Jackson v. City of Cookeville*, 31 F.3d 1354, 1360 (6th Cir. 1994) (upholding award of 11 years of front pay, "which is the expected number of years that [the

plaintiff] would work"); *Hukkanen v. Int'l Union of Operating Engineers, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir. 1993) (upholding front pay award of 10 years as "reasonable and necessary"); *Tyler v. Bethlehem Steel Corporation*, 958 F.2d 1176, 1189 (2nd Cir.), *cert. denied*, 506 U.S. 826 (1992) (upholding award of 17 years of front pay); *see also Newton v. Pennsylvania State Police*, No. CV 18-1639, 2022 WL 874306, at *10 (W.D. Pa. Mar. 24, 2022) (awarding 11.8 years of front pay and explaining that the "Third Circuit and other courts of appeals have affirmed front-pay awards of 10 years or more"); *Fresquez v. BNSF Ry. Co.*, 421 F. Supp. 3d 1099, 1108 (D. Colo. 2019) (awarding 10 years of front pay to 37-year-old plaintiff because "no comparable employment exist[ed]" outside of his industry); *Warren v. Cnty. Comm'n of Lawrence Cnty., Ala.*, 826 F. Supp. 2d 1299, 1313 (N.D. Ala. 2011) (awarding 32 years of front pay to 33-year-old plaintiff); *Picinich v. United Parcel Service*, 583 F. Supp. 2d 336 (N.D.N.Y. 2008) *aff'd*, 318 Fed. Appx. 34 (2d Cir. 2009) (awarding 18 years of front pay); *Bates v. Bd. of Educ. of Capital Sch. Dist.*, No. 97-394-SLR, 2000 WL 376405, at *10 (D. Del. Mar. 31, 2000) (awarding 17 years of front pay); *cf. Davoll v. Webb*, 194 F.3d 1116, 1143–44 (10th Cir. 1999) (reversing award of only 2 years of front pay because the evidence showed that plaintiffs' income would be reduced "for their full work-life expectancies").

Indeed, an important purpose of front pay is to "mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Padilla*, 92 F.3d at 125–26; *see Hunter v. Town of Mocksville*, 201 F. Supp. 3d 750, 758 (M.D.N.C. 2016) ("a long term award [of front pay] may be warranted" if a plaintiff is unable to "secure comparable employment"), *aff'd*, 897 F.3d 538 (4th Cir. 2018). Thus, the principle that front pay should be "tempered" does not apply "where the earning capacity of a plaintiff is destroyed or damaged," because lost wages can be "determined with reasonable certainty" in those situations. *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991). For this inquiry, courts consider factors including whether the position was "so specialized as to be virtually unique," *Padilla*, 92 F.3d at 121, whether it provided an "optimum and unparalleled occasion" to earn a living, *Peyton v. DiMario*, 287 F.3d 1121, 1129 (D.C. Cir. 2002), and whether a "comparable position" is unavailable, *Duke*, 928 F.2d at 1423. The undisputed evidence in this case clearly establishes that these factors are met. First, Defendants have made clear that reinstatement to the FDO—the only federal public defender office in the district where Strickland resides—is a nonstarter. Defendants have never offered Strickland reinstatement during the two-and-a-half years this litigation has been pending. Plaintiff's Decl., ¶ 5; *see Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d

22

1003, 1009 (N.D. Iowa 1998) (reinstatement was inappropriate where defendant "failed to produce any evidence that it had offered reinstatement to the plaintiff"). To this day, the FDO employee who sexually harassed Strickland remains the First Assistant of the FDO, where he has authority to "[i]nitiate[] personnel actions involving all staff members." DOCS Manual, Sec. 3–1. Indeed, the day after Strickland filed her motion for a preliminary injunction, his job title was updated to "Trial Team Leader" in addition to "First Assistant." Ex. B. Second, Strickland has been advised by the ethics department of the North Carolina Bar that because she brought a legal complaint against the Fourth Circuit as her former employer, she cannot practice law before the Fourth Circuit unless "all the parties and the court" consent. Plaintiff's Decl., Ex. C. This ethics advice, which has no end date, obviously imposes substantial restrictions on her ability to obtain comparable employment in the Fourth Circuit.

Strickland's dream since law school was to be a federal defender. Plaintiff's Decl., ¶ 4. In the nearly ten years since Strickland graduated from law school, she has never practiced law outside of public service or indigent criminal defense; indeed, she has never even worked in a private law firm. Strickland continues to pursue her calling in indigent criminal defense, but there is no other position in that field with comparable terms and compensation to the one she held at the FDO. To

23

the contrary, a recent study found that court-appointed compensation rates in North Carolina are "far below the fair market value." *Id.* ¶ 21 (citing study).

### 4. Strickland has mitigated her damages.

Finally, Defendants contend that Strickland has not mitigated her damages. ECF No. 135, at 18. A failure to mitigate damages "is an affirmative defense and it is the employer's responsibility to carry that burden." *Lundy Packing Co. v. N.L.R.B.*, 856 F.2d 627, 629 (4th Cir. 1988). Defendants did not plead failure to mitigate damages as an affirmative defense. Rather, they stated that "her alleged damages must be set off *by any amounts earned in mitigation*," which concedes that she did earn amounts "in mitigation." Answer at 1, ECF No. 127 (emphasis added). Aside from noting that Strickland has "impressive credentials," they have also not presented any evidence showing a failure to mitigate. Defendants have thus clearly failed to meet their burden, but in any event, Strickland has mitigated damages by pursuing her "next best employment" in indigent criminal defense. *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995).

## III. The equities weigh in favor of Strickland.

The equities clearly favor Strickland, as it is well-established that the public interest favors protecting constitutional rights. *Leaders of a Beautiful Struggle*, 2 F.4th at 346. In contending otherwise, Defendants repeat their meritless argument that the constitutional violations here are not "ongoing." Defendants also fret

24

about what would happen if a preliminary injunction were ordered and the government were to ultimately prevail in this suit. But the drafters of the rules of civil procedure thought of a solution to that problem: the posting of security. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (security is "mandatory" under Fed. R. Civ. P. 65(c)). Here, Strickland requests that Defendants deposit the funds directly with the court. *See* Fed. R. Civ. P. 67(a).

Lastly, Defendants' assertion that Strickland did not pursue this relief with diligence is entirely meritless. There are no "rigid deadlines by which a request for preliminary injunctive relief must be made," and the inquiry is whether the party exercised "reasonable diligence." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998). Strickland has pursued her claims with reasonable diligence. At a minimum, Strickland could not have known that she would be limited to pursuing prospective equitable relief until the Fourth Circuit issued its decision; it would have been frivolous, and a waste of judicial time and resources, for her to pursue a preliminary injunction simultaneously with her claims for damages and back pay. Following remand on June 21, 2022, Strickland reasonably believed that the case was near its conclusion, and diligently pursued her dispositive motions for summary judgment and default judgment. After the court announced on July 14, 2022 that it would deny default judgment and reset all deadlines in the case, she moved for a preliminary injunction within 13 days.

This the 2nd day of September, 2022.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487
jsuk73@gmail.com

Philip Andonian
D.C. Bar No. 490792
CALEB ANDONIAN PLLC
1156 Fifteenth Street, N.W.,
Ste. 510
Washington, D.C. 20005
Tel: (202) 787-5792
phil@calebandonian.com

*Counsel for Plaintiff*

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2022, I will electronically file

the foregoing with the Clerk of Court using the CM/ECF system, which will then

send a notification of such filing (NEF) to the following:

Gill P. Beck at Gill.Beck@usdoj.gov

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

27