1            UNITED STATES DISTRICT COURT

2        WESTERN DISTRICT OF NORTH CAROLINA (Asheville)

3                        No. 1:20-CV-00066-WGY

4

5    CARYN DEVINS STRICKLAND, formerly known as Jane Roe,
            Plaintiff

6
     vs.
7                                    **FILED**
                                  **ASHEVILLE DIVISION**
8    UNITED STATES OF AMERICA, et al,
            Defendants                **Dec 07 2022**
9                                  U.S. District Court
                                Western District of N.C.
10

11                      * * * * * * * *

12

13                   For Hearing Before:
                    Judge William G. Young

14

15               Partial Summary Judgment

16

17               United States District Court
                District of Massachusetts (Boston)
                One Courthouse Way
18              Boston, Massachusetts 02210
                Monday, October 31, 2022
19

20
                        * * * * * * * *
21

22

23            REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
                 United States District Court
24       One Courthouse Way, Room 5510, Boston, MA 02210
                   bulldog@richromanow.com
25

```
 1                A P P E A R A N C E S

 2

 3   COOPER J. STRICKLAND, ESQ.
     CARYN DEVINS STRICKLAND, ESQ.
 4       Law Office of Cooper Strickland
         P.O. Box 92
 5       Lynn, NC 28750
         (828) 817-3703
 6       Email: Cooper.strickland@gmail.com
    and
 7   PHIL ANDONIAN,ESQ.
         Caleb Andonian, PLLC
 8       1100 H Street, N.W.
         Suite 315
 9       Washington, DC 20005
         (202) 953-9850
10       Email: Phil@calebandonian.com
         For plaintiff
11

12   JOSHUA MICHAEL KOLSKY, ESQ.
         U.S. Department of Justice
13       1100 L Street NW
         Washington, DC 20005
14       (202) 305-7664
         Email: Joshua.kolsky@usdoj.gov
15       For defendants

16

17

18

19

20

21

22

23

24

25
```

```
 1          P R O C E E D I N G S
 2          (Begins, 3:00 p.m.)
 3          THE CLERK:  Civil Matter 20-00066, Strickland
 4     versus the United States of America.
 5          THE COURT:  Good afternoon counsel.  This is a
 6     hearing to entertain a motion for partial summary
 7     judgment and a motion addressed to scheduling.  We're
 8     holding it on our zoom platform.  Our host for the, um,
 9     zoom proceeding is Courtroom Deputy Clerk, Jennifer
10     Gaudet.  The -- excuse me.  The matter is taken down by
11     our Official Court Reporter, Rich Romanow.  The
12     proceeding is -- and I have law clerks on the line.
13          The proceeding is open to the press and to the
14     public.  I should say if any members of the public are
15     present, you must keep your microphones muted and that
16     the rules of court remain in full force and effect, that
17     is to say there is no taping, streaming, rebroadcast, or
18     other transcription of these proceedings.
19          With that done, would counsel identify themselves
20     and who they represent starting with the plaintiff.
21          MR. ANDONIAN:  Good afternoon, your Honor, Phil
22     Andonian on behalf of Caryn Strickland.
23          THE COURT:  Good afternoon.  And for the defense?
24          MR. KOLSKY:  Good afternoon, your Honor, Joshua
25     Kolsky on behalf of the defendants.
```

```
 1          THE COURT:  And good afternoon, Mr. Kolsky.

 2          All right.  We'll entertain the motion for partial

 3    summary judgment first.  There are -- and each side will

 4    have 15 minutes to argue.  It's my duty to say, as the

 5    rules say, but I think it's always helpful to point it

 6    out, that making a motion for summary judgment has at

 7    least the theoretic possibility of having summary

 8    judgment taken against the moving party on the

 9    appropriate principles.

10          You understand that, Mr. Andonian?

11          MR. ANDONIAN:  I'm sorry, yes, your Honor.  I

12    should note, I'm sorry, in the introduction, that

13    Ms. Strickland is here as well, she's actually going to

14    be arguing the summary judgment portion.

15          THE COURT:  Has she filed an appearance?

16          MS. STRICKLAND:  Your Honor, we didn't know if

17    that would be required, but we are prepared to file one

18    immediately.

19          THE COURT:  Well it is required.

20          MS. STRICKLAND:  Okay.

21          THE COURT:  I recognize that you are an attorney,

22    of course, and, um, you have a right to appear.  It's

23    not customary to have the client appear as well.  But as

24    you're an attorney, you have a right to file an

25    appearance and I understand you are filing an
```

1    appearance, is that correct?

2         MS. STRICKLAND:  Yes, your Honor, we will be

3    filing an appearance immediately.  And I would just say

4    as well, the reason why I'm here is Jeannie Suk Gersen

5    was supposed to be arguing the summary judgment motion

6    today, but she's not available, and because the Court

7    has said no further continuances, I'm prepared to argue

8    the motion and I'm glad to be here today.

9         THE COURT:  Well I'm happy to have you.  I'm happy

10   to have Ms. Gersen.  But the Court has to schedule

11   things to stay on top of its work.  I will hear you.

12        Well then let me address you, because that's what

13   -- um, Mr. Kolsky, because we're going to start with the

14   motion for partial summary judgment.  And, um, in two

15   respects I can make rulings and I don't need oral

16   argument.  The first is the defendant's motion to

17   dismiss.

18        Mr. Kolsky, the motion to dismiss is denied, that

19   doesn't mean the defense of sovereign immunity is gone,

20   but it's denied as a procedural matter.  We're long

21   beyond the motion to dismiss stage.  There was a motion

22   to dismiss.  I granted it.  There was an appeal.  I was

23   affirmed in part and reversed in part.  So I'm not

24   entertaining any other motions to dismiss.  If we get to

25   a remedies stage, then that issue of sovereign immunity

 1    is open to the government and I will entertain it.

 2         The other respect that I can --

 3         MR. KOLSKY:  Thank you, your Honor.

 4         THE COURT:  -- knock off is a point that the

 5    government raises in its brief.

 6         Ms. Strickland, you did not make argument as to

 7    certain of the government actors and as to those

 8    identified in your original complaint as actors, the

 9    motion for partial summary judgment is denied.

10    That's -- it's a matter of little moment because of

11    course if you succeed against the government actors in

12    any respect, you've succeeded.

13         But give me a moment though, and I'm going to give

14    you your full 15 minutes to argue, to say a word about

15    my review of the papers here.

16         First, Cooper Strickland is not here today, but I

17    would say thank you to him.  I have been eager and

18    remain eager to get this case to a trial.  But his

19    insistence that we hear the motion for partial summary

20    judgment, um, has actually served the Court well in that

21    it is required a very careful look at the evidentiary

22    record and those things which actually constitute

23    evidence, and, um, I've made no conclusions, but I want

24    you to know what my reaction is.

25         I went into this thinking that well probably it's

not disputed that Ms. Strickland suffered some improper
harassment in the workplace.  In fact that's disputed,
it's significantly disputed.  And in a case in this
posture, that's something on which the government bears
the burden of proof, because the focus here is not on
whether she suffered improper harassment, but what the
government actors did about it.  And so I thought, "Well
you know where they bear the burden of proof, they'd
better have come forward with evidence," and they have.
So I, at least, I'm sitting here thinking that's
disputed.  And the second thing I thought was "Well
probably there's no dispute that she made complaints
about it," and I find that's disputed.  So, um, it's
difficult to see how I'm going to go forward.

     And then I come to the third point, which I
expected to be disputed and which is the actual core of
the case, "Was the government's response adequate under
the law, under the Constitution and the law?"  And
that's disputed.

     So I -- I have to say I'm meeting with you
thinking -- my mind is completely open as to an
evaluation of the evidence, and I recognize that this is
a judge-tried case, but this is a motion for summary
judgment, all I can do is make rulings, and I don't see
how on this record I'm going to be able to make any

1    ruling of law.

2         There is one thing, and I just throw this out to

3    you and then I do want to hear your argument.

4         It would appear undisputed that whatever the

5    harassment -- let's say egregious harassment was proved,

6    let's just assume that, if that were so it appears that

7    under the system that the government has here, as to

8    remedy there's no binding authority.  The Human

9    Resources people, all they can do is make like

10   recommendations, that wouldn't be sufficient if we were

11   dealing with a private corporation.  Now recognizing

12   that the Article 3 judicial officers themselves, that

13   may be a little more dicey, but it's possible that that

14   issue, um, might be isolated and determined on a

15   case-stated basis.  But I tell you that I am, um, open

16   to these arguments, but I come thinking that I have

17   genuine issues of material fact.

18        Ms. Strickland, I'll hear you.

19        MS. STRICKLAND:  Thank you, your Honor.  You have

20   made several points so I'd like to go through each of

21   them in turn and then I have my own statement about the

22   claims and then I'd be happy to answer your questions.

23   But there were --

24        THE COURT:  You have 15 minutes.  Go ahead.

25        MS. STRICKLAND:  Yeah, thank you, your Honor.

 1          The first thing you mentioned is the possibility

 2     of putting a party on notice that summary judgment could

 3     be granted in favor of the non-moving party.  We would

 4     object to that and because there has to be notice and an

 5     opportunity to respond, and we would also request the

 6     opportunity to file our own Rule 56 affidavit setting

 7     out the areas where we would need discovery before

 8     any --

 9          THE COURT:  I consider that highly unlikely here

10     so I wouldn't worry about that.  Don't, um -- I always

11     give notice, that's the notice.  But I wouldn't spend

12     your time on that.

13          Go ahead.

14          MS. STRICKLAND:  Okay, thank you, your Honor.

15          The next issue that you mentioned is the remedies

16     phase and the issue of sovereign immunity.  Our

17     understanding of the Fourth Circuit decision in

18     **Dadenback** is that they settled that issue and they said

19     that front pay in lieu of reinstatement is not barred by

20     sovereign immunity.  So I just wanted to make clear that

21     in fact I do not think the issue of sovereign immunity

22     is on the table at this point because we are not seeking

23     back pay, that has been foreclosed by the --

24          THE COURT:  No, I understand that.  I have to say

25     I'm not clear that that is a holding of the Fourth

1    Circuit, but you say it is, and I guess that's a matter

2    that -- of course I'm bound by the Fourth Circuit and

3    the mandate rule and I embrace it.  I have no problem

4    with that.  That's not to be argued now.

5         Remedy.  Go ahead.

6         MS. STRICKLAND:  Yes, your Honor.

7         A third point that you raised, and I want to make

8    sure I understand it because it sounds like what you are

9    discussing is a possible facial challenge under the EDR

10   plan and the possibility of authority to order remedies.

11   That was initially raised in our summary judgment

12   motion.  But our understanding is that the facial claim

13   under the EDR plan was foreclosed by the Fourth

14   Circuit's decision because the Fourth Circuit held that

15   adequate remedies do exist facially under the EDR plan.

16        THE COURT:  Thank you.

17        MS. STRICKLAND:  Yes.  And so what we're here to

18   discuss now and what I would like to turn to are the

19   as-applied challenges to the EDR plan.  And, um, in

20   particular you mentioned issues about whether there are

21   disputes of fact about the harassment and issues like

22   that, and I'll turn to that in a moment, but first I

23   think it's important to understand that the facts

24   supporting the due process claim, there are no genuine

25   disputes of material fact here on the due process claim.

1     The Fourth Circuit held that due process was

2  violated if defendants refused to disqualify the

3  Defender from the EDR investigation and led plaintiffs

4  to believe he was the decision-maker.  That showing is

5  not here based on defendant's own sworn declaration.

6  Their declaration confirms that the Defender was not

7  disqualified from the EDR process even though he was an

8  accused party.

9     And defendants have never disputed that plaintiff

10  was led to believe that he was the decision-maker,

11  including by the Fourth Circuit's chief circuit mediator

12  who stated that the Defender was the decision-maker and

13  no hearing officer would micromanage him.  The showing

14  in favor of our due process claim is extremely

15  straightforward and because it's supported by

16  defendant's own sworn declaration.  I can give you other

17  examples as well.

18     For example, the EDR coordinator's declaration

19  states that the Defender was the final decision-maker in

20  the EDR investigation.  He determined what -- and I'm

21  quoting this, he determined "Whether the First Assistant

22  had engaged in any misconduct and whether an employment

23  personnel action was necessary to address any findings

24  of misconduct or workplace concerns against the First

25  Assistant."  And that's at Paragraph 8 of the EDR

1    coordinator's declaration.

2         So there is no dispute here that the Defender was

3    a decision-maker, he appointed the investigator, he made

4    final decisions regarding the investigation, and we were

5    told that he would be the decision-maker in a final

6    hearing.  So regardless of whether the Court believes

7    that disputes of fact remain on the equal protection

8    claim, we're entitled to summary judgment in our favor

9    on the due process claim at this point.  But I will

10   address the equal protection claim as well.

11        The Fourth Circuit held that equal protection was

12   violated if defendants were deliberately indifferent to

13   sexual harassment and sex discrimination.  Defendants

14   were deliberately indifferent if their response to the

15   harassment and discrimination was clearly unreasonable.

16   Here defendant's response was clearly unreasonable.

17        It is undisputed that when plaintiff reported

18   harassment under the EDR plan, defendants dragged their

19   feet and failed to take discipline.  In fact it was

20   merely a year that was --

21        THE COURT:  Excuse me.  Excuse me.  Forgive me for

22   interrupting.

23        MS. STRICKLAND:  Yes, your Honor.

24        THE COURT:  It's difficult on these zoom hearings.

25   If we were in a courtroom together, I wouldn't interrupt

1    so abruptly.  And you must forgive me for that.

2          I understand your argument as to the due process

3    claim and I want to hear Mr. Kolsky's response.  But

4    when you get to the equal protection claim, now it

5    sounds like you're making that factual argument, you're

6    saying, "Well just look at this, of course it was

7    unreasonable."  Well they deny it and they come up with

8    facts which, at least if credited, would support such a

9    conclusion.

10          How could I resolve that in your favor on summary

11    judgment?

12          MS. STRICKLAND:  Well, your Honor, because none of

13    the facts here are actually undisputed.  The parties may

14    draw different inferences from those facts, but they

15    were legal conclusions that were drawn in a summary

16    judgment motion.

17          For example, the defendants have admitted -- and

18    this is at Paragraph 317 of the answer, that they did

19    not interview any witnesses, no witnesses in the

20    investigation beside the complainant, the First

21    Assistant, and the Defender.  That is undisputed.  It is

22    undisputed that they did not take disciplinary action

23    until June 3rd, 2019, almost a full year after the

24    harassment was reported.

25          And as to the harassment itself, it is undisputed

1    that disciplinary action was taken under Chapter 9 of

2    the EDR plan for wrongful conduct.  "Wrongful conduct"

3    is defined to include harassment, discrimination,

4    retaliation, "wrongful conduct."  Defendants themselves

5    took disciplinary actions against the First Assistant

6    and the Defender.

7         And if you look at the core facts supporting the

8    harassment claim -- for example there is no dispute that

9    the First Assistant sent a quid-pro-quo e-mail

10   entitled "Not now" -- and I can read it to you, but he

11   acknowledged in his text messages that his invitations

12   to meet outside of the office made the plaintiff

13   uncomfortable.  All of these things are in the record,

14   they are undisputed, there was disciplinary action

15   taken.  We do not have to prove every single fact in our

16   complaint in order to establish that there is no genuine

17   dispute of material fact, and that is the situation that

18   --

19        THE COURT:  I agree, you don't have to prove

20   everything alleged, let's be clear on that, and I think

21   that the Fourth Circuit opinion is clear on that, you

22   don't have to prove everything alleged, and the Court

23   does not view it -- this Court does not view it that way

24   at all, but we're talking about what was reasonable

25   under the circumstances.

1        Well go ahead, I'll hear you.

2        MS. STRICKLAND:  Yes, your Honor.  And if you want

3   to talk about what was clearly unreasonable under the

4   circumstances, I agree, that is absolutely the pertinent

5   question here, and that is part of the reason why the

6   Fourth Circuit took 118 pages to lay out in its decision

7   precisely what the factual allegations were here and

8   what was reasonable or not reasonable, and they found

9   that the allegations --

10       THE COURT:  Well, wait.  Wait.  Wait.  Wait.  Wait

11  a minute.  I interrupt again.

12       They didn't find anything, they weren't in a

13  position to find anything.  No one has found anything.

14  This was a motion to dismiss.  What they did was rule

15  that if you prove certain things, then a remedy

16  potentially will follow.  That's the order.  That's what

17  an appellate court does, they make rulings.  They took

18  your complaint as though it was true.  I took your

19  complaint as though it was true, and thought, as I

20  understood the law, there was no remedy.  The Court of

21  Appeals reversed, they said "Yes, there is, it's a

22  narrow remedy, but it exists."  I fully embrace that.

23       That's -- now we're engaged -- I'm not finding

24  anything now, that's the issue with summary judgment, I

25  can't find anything.  I would have to rule as a matter

1  of law that this or that fact was either reasonable or
2  unreasonable, and that's a difficult thing to do on this
3  record.
4        Go ahead, you've got about 5 more minutes.
5        MS. STRICKLAND:  Yes, your Honor.
6        I understand -- I understand that there are
7  clearly differences between the legal standard on a
8  motion to dismiss and a motion for summary judgment, um,
9  but the facts remain that in order for the nonparty to
10  prevail on summary judgment, they cannot rest on mere
11  allegations or denials, but they must present specific
12  facts showing that contradiction is possible.  And not
13  only that, the Court must treat a verified complaint as
14  the equivalent of an opposing affidavit and it must set
15  out the undisputed allegations as true.
16        Now when the Fourth Circuit was considering our
17  complaint and the detailed allegations in the complaint
18  and stating that as a matter of law these factual
19  allegations gave rise to a valid claim of deliberate
20  indifference, those allegations have been verified under
21  penalty of perjury, and many of those allegations that
22  are pertinent to the deliberate indifference claim are
23  entirely undisputed.
24        We understand that the First Assistant
25  unsurprisingly denies that he engaged in sexual

harassment.  I'm sure every sexual harasser would feel

that way.  But that's not the pertinent question.  The

pertinent question is whether there is objective

evidence in the record?  And we would argue that the

fact that the defendants themselves took disciplinary

action for wrongful conduct under the EDR plan shows

that they understood that this was wrongful conduct

under the EDR plan.  And there has been no admissible

evidence contrary to that showing that has been

presented.

        We understand that the defendants -- and I can

talk about this in rebuttal, but we understand that they

are relying on selective hearsay quotations from an

investigational court that they won't introduce into

evidence, but that's not admissible evidence for

purposes of a summary judgment motion, it can't be

considered, it's double hearsay.

        THE COURT:  Why isn't it admissible under 808?

        MS. STRICKLAND:  Because it's selective hearsay

quotations from a document itself that hasn't been

admitted.  If the public records exception were to apply

at all, it would apply to the report.  But they have

only introduced selective quotations from the report.

        THE COURT:  I see your point.

        MS. STRICKLAND:  Yes, yes, exactly.  And I would

1  further just emphasize that that was a touchstone of

2  this rule about the hearsay exceptions is about

3  reliability, it's about ensuring that we don't have

4  unreliable evidence. And their selective quotations of

5  the report clearly show that their representations were

6  unreliable. They left out very clearly material

7  information about how the investigation found that the

8  accused supervisor has poor judgment and decision-making

9  skills, and that is only inadvertently revealed in

10  another filing. And so, no, they can't rely on that,

11  it's not admissible. Rule 56(b) is very clear that

12  evidence must be admissible to be relied upon at the

13  summary judgment stage.

14       And our argument again, just to quote, because I

15  know I'm running out of time, the due process claim, the

16  pertinent factor, is undisputed, as I have laid out.

17  The Defender was the decision-maker, that is shown by

18  the defendant's own sworn declarations. And as to the

19  equal protection claim, they simply haven't presented

20  any admissible evidence to refute our showing. And so

21  we are entitled to summary judgment on both the due

22  process and the equal protection claims.

23       THE COURT: Thank you. Thank you.

24       Mr. Kolsky?

25       MR. KOLSKY: Thank you. Thank you, your Honor.

1          Your Honor, I'd first like to address your Honor's

2     comments earlier in the hearing regarding a motion to

3     dismiss and just clarify that.

4          Although we did file motions to dismiss early in

5     the case, we have not, um, subsequently filed any motion

6     to dismiss.  Our summary judgment opposition refers our

7     motions to dismiss -- the fact that it was filed back

8     when our motions to dismiss were still pending.  But

9     we're not seeking dismissal.  And with that

10    clarification, I'll turn to the summary judgment motion.

11         Now defendants have not yet moved for summary

12    judgment in this case, only plaintiff has, and that

13    means that for purposes of today's hearing we only have

14    to point to evidence that would be enough to support a

15    verdict in defendants' favor.  If we do that,

16    plaintiff's not entitled to summary judgment.

17         THE COURT:  No, I understand that.  Don't rise to

18    this business that -- no one thinks that you can get

19    summary judgment.  She was concerned about that.  That's

20    my usual -- I'll point that out every time the word

21    "summary judgment" comes up here.  And I said "under

22    appropriate circumstances."  Here my concern is with

23    genuine issues of material fact.

24         So she did break down her argument in a fairly

25    intelligible way and I would like you to deal with the

1    due process and equal protection points which she

2    argued.

3          MR. KOLSKY:  Yes, thank you, your Honor.

4          Now to prevail on plaintiff's due process claim,

5    one thing she must prove is that she was led to believe

6    that the Federal Public Defender would be the final

7    decision-maker in her EDR case, that's from the Fourth

8    Circuit's decision.  We have presented evidence that

9    would support a claim in our favor on that element in

10   her claims.  In fact the evidence is overwhelming that

11   plaintiff could not reasonably believe that the Federal

12   Defender would be the decision-maker in the EDR process.

13         The EDR plan itself made clear that the judicial

14   officer, the Chief Judge or designee, resolves the

15   merits of EDR claims and decides upon a remedy.  It's in

16   the EDR plan in black and white.  And the plaintiff was

17   --

18         THE COURT:  But what about the admissions to which

19   she refers?

20         MR. KOLSKY:  So she's referring to two alleged

21   statements, one by the Judicial Integrity Officer, Jo

22   Langley, and one by the Circuit Mediator, Ed Smith.  We

23   do not concede that either of those statements have been

24   made.  In fact we submitted a declaration from

25   Ms. Langley disputing that that statement was made.

1         But in addition to that, we have presented

2     evidence that the plaintiff was specifically told by the

3     Circuit Executive, James Ishida, and also by the

4     Judicial Integrity Officer, Jo Langley, that the

5     judicial officer would be the decision-maker.  And again

6     that's what the EDR plan itself says.

7         So even if plaintiff were told these things by,

8     um, the mediator and by the Judicial Integrity Officer,

9     that doesn't negate this evidence that we've presented.

10    In fact Ms. Strickland said that defendants have never

11    disputed that plaintiff was led to believe the defendant

12    was the decision-maker, and that is simply untrue.  We

13    submitted declarations with our supplemental summary

14    judgment brief that directly disputes that and presents

15    evidence.  And that's in addition to the terms of the

16    EDR plan itself which makes clear who the decision-maker

17    was.

18        So there is very much, um -- there's certainly

19    evidence on our side that would support a finding that

20    the plaintiff did not and could not reasonably believe

21    that the Defender would be the decision-maker in her

22    case, it's just contrary to what the EDR plan says, it's

23    contrary to what she was told.  And so that evidence is

24    enough to defeat summary judgment on the due process

25    claim.

1　　　　And turning to the equal protection claim.  To

2　　prevail on that claim, plaintiff must show first that

3　　she was subjected to sexual harassment at the Federal

4　　Defender's office.  We have presented abundant evidence

5　　that plaintiff was not subjected to sexual harassment.

6　　In particular --

7　　　　THE COURT:  Do you agree with the Court's -- again

8　　you must forgive me because I feel I'm interrupting

9　　abruptly and I apologize.

10　　　　Do you agree with my initial conclusion that if

11　　that fact were to be part of your defense, you bear the

12　　burden of proof on that, don't you?

13　　　　MR. KOLSKY:  I think that -- the Fourth Circuit

14　　defines that as one of the elements of the equal

15　　protection claim, that the plaintiff must show she was

16　　subjected to sexual harassment.  She has to show that.

17　　　　THE COURT:  Well it seems to me that that, um, if

18　　she complains about it -- whether or not it happened,

19　　she has to complain about it, and then there has to be a

20　　constitutionally and statutorily reasonable response.

21　　Now if -- part of the defense is it didn't happen or

22　　whatever did happen does not constitute wrongful

23　　harassment, um, my initial reaction is you bear the

24　　burden of proof on that.  But I don't know as we have to

25　　decide that today, you have submitted evidence.

1          Go ahead.

2          MR. KOLSKY:  Yeah, and I would just direct your

3     Honor to Page 359 of the Fourth Circuit's opinion where

4     they list the elements.  They say "The elements of such

5     a claim we conclude are essentially identical to those

6     outlined by the Fourth Circuit in *Feminist Majority*

7     *Foundation* and the first element is the plaintiff was

8     subjected to sexual harassment by another employee.  So

9     we do think that's part of her case that she has to

10    prove.

11         THE COURT:  Thank you.

12         MR. KOLSKY:  We have submitted a very detailed

13    declaration by the First Assistant, the supposed

14    harasser, responding to plaintiff's allegations about

15    him, and he vigorously denied that he sexually harassed

16    the plaintiff.

17         The incidents that plaintiff complains of are not

18    inherently sexual in nature or inherently harassing, um,

19    offering plaintiff a ride home when it was rainy out,

20    the plaintiff was sent a letter by phone asking the

21    plaintiff to attend management lunches, criticizing her

22    for campaign client obligations.  The plaintiff wants

23    the Court to interpret these as being acts of sexual

24    harassment, but that would conflict with the First

25    Assistant's declaration which forcefully rejected the

1   allegations that he engaged in sexual harassment.

2       Ms. Strickland mentioned "inferences." Well at

3   summary judgment inferences go in favor of the

4   non-moving party. So inferences are drawn in the

5   defendant's favor. Plaintiff's subjective belief that

6   she was harassed does not entitle her to summary

7   judgment.

8       In addition to proving that she was subjected to

9   sexual harassment, plaintiff also must prove that

10  defendants were deliberately indifferent to her claims

11  of harassment. But again they didn't present evidence

12  to support a finding that defendants were not

13  deliberately indifferent.

14      The facts are when plaintiff reported the alleged

15  harassment to the Defender, he promptly informed the

16  circuit executives, that same day the Chief Judge

17  ordered an investigation and investigators were

18  selected, and plaintiff was allowed to telework during

19  the investigation, so she was not in contact with the

20  First Assistant. Far from the decision of deliberate

21  indifference, defendants' actions showed they took the

22  plaintiff's claim seriously and responded promptly.

23      Plaintiff relies on the decision in *Feminist*

24  *Majority Foundation,* but that case was in the context of

25  a motion to dismiss, not summary judgment, and there the

1    allegation was that the defendants took little or no

2    action in response to ongoing harassment and threats

3    against the plaintiff.  That's not the situation we have

4    here.

5         Here plaintiff's deliberate indifference claim is

6    that defendants failed to take action in response to

7    alleged harassment.  It is undisputed that defendants

8    took action.  It is undisputed that defendants initiated

9    an investigation and ensured the plaintiff did not have

10   contact with the First Assistant while that

11   investigation was pending.

12        Now to be sure the plaintiff has certain

13   criticisms of the investigation including that in her

14   opinion it took too long, that in her opinion the

15   investigator didn't do an adequate investigation, and

16   the plaintiff certainly disagrees with the

17   investigation's findings, which do not support a claim.

18   But none of that shows deliberate indifference.

19        And not only does plaintiff have to prove

20   deliberate indifference, she also has to prove that any

21   deliberate indifference was motivated by discriminatory

22   intent.  We have presented evidence that the actions in

23   response to plaintiff's claims of sexual harassment were

24   undertaken in good faith and not for the purpose of

25   discrimination, harassment, or retaliation, and that was

1 suggested in several of the declarations we submitted.

2 And that alone precludes granting summary judgment on

3 the equal protection claim.  As best I can tell, the

4 issue of discriminatory intent has not been addressed in

5 any of the several briefs that plaintiff filed with the

6 Court.

7   And I want to respond to the point that

8 Ms. Strickland made a couple of times, she said that

9 disciplinary action was taken for wrongful conduct.

10 That's simply untrue.  There was counseling.  There was

11 no evidence in the record, nothing to support the

12 conclusion that there was any wrongful conduct

13 determination, in fact there was not.

14   THE COURT:  She says that I can draw an inference

15 that that is just, um, in fact it's discipline but under

16 another name, that's what she's arguing.

17   MR. KOLSKY:  Well honestly I understand her

18 argument, she's saying that, um, the fact that there was

19 counseling means there must have been, um, a finding of

20 wrongful conduct under the EDR plan.  But we've

21 submitted the findings from the investigation which

22 showed there wasn't a finding of wrongful conduct.  So

23 plaintiffs put that in issue and it is -- um,

24 complaining that we're responding by indicating what the

25 findings of the investigation were.

1    Now lastly, the plaintiff argued in her motion
2    that summary judgment should be granted because
3    defendants allegedly failed to participate in discovery.
4    I don't believe this argument merits much of a response,
5    we've refuted it several times previously, but I'll just
6    note a few things.
7    We filed motions to dismiss early in the case.
8    The local rules specifically say discovery does not
9    begin while motions to dismiss are pending.
10   Nevertheless plaintiffs proceeded to serve voluminous
11   discovery on defendants without first seeking legal
12   course to conduct early discovery.  We objected and said
13   it was rather premature and we filed a motion to confirm
14   that we didn't have an obligation to respond to her
15   request at that point.  The Court granted that motion.
16   So there's no merit whatsoever to plaintiff's repeated
17   assertion that defendants somehow failed to participate
18   in discovery.  And for all these reasons the Court
19   should deny the plaintiff's motion.
20   Thank you.
21   THE COURT:  All right.
22   Well having heard the parties and carefully
23   reviewed the record, the motion for partial summary
24   judgment is denied.
25   We'll take up the motion for a prompt evidentiary

```
 1    hearing.  And I read both the motion and the defendants'
 2    response and I appreciate both.
 3         And, Mr. Andonian, you're going to speak to this?
 4         MR. ANDONIAN:  Yes, your Honor.
 5         THE COURT:  All right.
 6         MS. STRICKLAND:  Your Honor, may I be heard on one
 7    other matter regarding the summary judgment motion?
 8         THE COURT:  No, there's no rebuttal, ma'am.
 9         MS. STRICKLAND:  It's not rebuttal.
10         THE COURT:  I said 15 minutes a side.
11         All right.
12         MS. STRICKLAND:  It's not for rebuttal.
13         THE COURT:  I beg your pardon?
14         MS. STRICKLAND:  We would request that under Rule
15    56(a) the Court state the reasons on the record for
16    denying the motion for partial summary judgment.
17         THE COURT:  Yes, and you're entitled to that.
18    Because in the Court's view, having reviewed the entire
19    record carefully, there exist genuine issues of material
20    fact as to each essential element that the plaintiff
21    must prove.  Therefore the motion is denied.
22         All right.
23         Mr. Andonian, um, I think the Fourth Circuit
24    understands exactly what I'm trying in fairness to do
25    here, so I'm not going to decouple my already-made
```

1    ruling that consideration of a preliminary injunction

2    will be combined with trial on the merits.  No one is

3    hamstrung, no one is denied either discovery or the

4    production of evidence at trial.  Indeed having looked

5    over this evidentiary record in detail now, it seems to

6    me that the plaintiff, um, herself is in possession of

7    virtually all of the evidence necessary for the

8    liability case, and as Mr. Kolsky has described with his

9    various statements, the government is in possession of

10   the evidence that it will seek to rebut that evidence.

11       There may be something to expert testimony with

12   respect to a front-pay determination if we get to that

13   point, but the Court is open to a prompt evidentiary

14   hearing as to liability and then once the Court

15   determines liability, if we're going to further explore

16   damages, to set a later date for the exploration of

17   damages or some other remedy.  But I'm only going to do

18   it once.

19       Your motion for a prompt evidentiary hearing,

20   which Ms. Gersen is the lead person who signs that,

21   makes very clear that what you want is a hearing and

22   then you can appeal that and then we'll have the trial.

23   That's not helpful.  It does not, as Rule 1 requires,

24   "tend towards the just, speedy, and inexpensive

25   resolution of the case."  The case does present

1   important public -- matters of public interest.  I'm

2   simply trying to get it in a posture where factual

3   findings can be made.  We don't have findings yet.

4        So, Mr. Andonian, when do you want your

5   evidentiary hearing, which in fact is at a minimum --

6   I've got to hear what the government says, but at a

7   minimum it's going to be trial as to liability.

8        MR. ANDONIAN:  Your Honor --

9        MS. STRICKLAND:  Your Honor, just very quickly

10  again just because what you just said about discovery

11  relates to the summary judgment motion, and then I

12  promise I'll turn it over to Mr. Andonian.

13       THE COURT:  Now look, ma'am, I'll hear you, but

14  we're not going to just jump back and forth like this, I

15  understood he was going to argue that.

16       MS. STRICKLAND:  Yes, your Honor, but --

17       THE COURT:  I denied the summary judgment motion.

18       MS. STRICKLAND:  I know that.

19       THE COURT:  Now if you have something to say about

20  scheduling, I'll hear you.

21       MS. STRICKLAND:  Yes, your Honor, this is related

22  to scheduling.

23       Because you have stated that genuine issues of

24  fact exist as to each essential element, we are going to

25  need summary discovery.  I just thought you just said

1    that there isn't any discovery --

2         THE COURT:  Let me explain this to you about

3    discovery.  Wait.  Wait.  Only one of us can talk.  And

4    respectfully you're going to have to listen to me.

5         I haven't foreclosed any discovery.  I haven't

6    foreclosed subpoenas to bring people before the Court to

7    testify.  But this idea that we're going to have a round

8    of depositions so that every possible person is going to

9    be deposed and then we will have the trial, there is no

10   requirement due process or otherwise for that.  I am

11   offering a prompt trial.

12        Now in the real world the earliest I can get to it

13   probably is in December.  But as -- in December I will

14   give you the time necessary to put on your case and the

15   government the time necessary to put on its case just as

16   promptly as the Court has trial days.  All I'm asking is

17   when do you want it?  And when I hear that, I'll hear

18   from the government and hear when they want it.

19        This motion has made various statements about the

20   government withholding discovery.  Well I haven't heard

21   that from Mr. Kolsky and I'm not going to be very happy

22   about anyone withholding discovery.

23        So I'll hear from you or Mr. Andonian, but not

24   both.

25        Who's going to talk?

1          MR. ANDONIAN:  Your Honor, if I could?  And I'm

2     coming into this, you know, after some work has been

3     done so forgive me if I'm retreading a little bit of

4     ground.  But what I do think is important are a couple

5     of points.

6          The first is, um, just to piggyback on what

7     Ms. Strickland said, there is a need for discovery.  As

8     in any case, we don't know what we don't know until we

9     take discovery.  I don't understand the government to be

10    denying that and disputing that and in fact --

11         THE COURT:  I'm not saying they are, you give me a

12    date.  When do you want this hearing?

13         MR. ANDONIAN:  We want this hearing that's

14    pretrial and is not --

15         THE COURT:  Well that's not going to happen.  I've

16    already ruled on that.

17         MR. ANDONIAN:  If I could just ask, your Honor?  I

18    guess I'm confused as to what -- what the problem with

19    having a pretrial hearing is as opposed to the

20    consolidated trial?  With all due respect, I've

21    litigated plenty of these and I'm not sure I've ever had

22    a consolidated trial.

23         Rule 65 itself allows the testimony to be

24    incorporated into the trial record.  So this idea that

25    there would be duplication or undue burden, I guess I'm

1    missing, because it's not like we're going to have Part

2    1 and then Part 2 be an exact carbon copy of Part 1.  We

3    would do Part 1 and get to Part 2 when the trial date

4    rolls around.

5         I would note just for -- um, illustratively, the

6    preliminary injunction motion or the hearing that we're

7    asking for pretrial of that we think would take about a

8    day with a few witnesses.  The trial, by comparison, is

9    at least a week with multiple witnesses and more issues

10   than what we would cover in the PI hearing.  So they're

11   not a carbon copy.  And to the extent that --

12        THE COURT:  I don't understand.  I don't

13   understand.  If we -- I don't see how you can do this in

14   a day if you're going to --

15        Do you think there's some sort of different

16   standard between a reasonable likelihood of success and

17   a fair preponderance of the evidence?

18        MR. ANDONIAN:  No, I think it's a different

19   presentation, it's a different presentation between the

20   two events.  And you know frankly, your Honor, what we

21   come forward with and what we present is what we would

22   have to live with.  We believe the preliminary

23   injunction hearing looks different than the full-blown

24   trial, and we --

25        THE COURT:  Also, respectfully, I've litigated a

number of them too and this procedure, um, so long as I
give both sides their full chance to present their
evidence does achieve the goal -- the primary goal of a
just, speedy, and inexpensive resolution.

When you say you've got to have something for your
week-long trial -- and I think that's about right, a
week is about right to try this case. What is it that
you want to be ready for a week-long trial that you
could not have if we started the trial in December or
January?

MR. ANDONIAN: Well I don't -- I think that's kind
of the point that we're trying to make, is that we don't
know. The purpose of discovery is to discover
information that could be relevant and helpful in
preparing for a trial in the case.

THE COURT: But that it could be -- you know this
case has been pending for some years, it's already
traveled to the Circuit and back. At least looking at
this evidentiary record -- and there is an evidentiary
record now, it's a rather fulsome evidentiary record.
Who do you want to hear from that hasn't been mentioned
in this evidentiary record?

MR. ANDONIAN: Well, your Honor, I think, um,
again to go back to your ruling just a minute ago, and
as you've stated, there are open questions of fact now.

1    And again I want to emphasize, based on the government's

2    filing this morning, that I don't understand the

3    government to be disputing any of this, that there is a

4    need for discovery, that there are open questions that

5    --

6    THE COURT:  The Court has a responsibility itself.

7    Let me ask you this.

8    Are you okay with the government's proposal?  The

9    government proposes a trial in late spring.

10    MR. ANDONIAN:  I know, I'm not sure, we just got

11    that this morning when you did.  There was an effort to

12    discuss that with us ahead of time.  But I can tell you

13    right off the bat, off the tip of my tongue, that I'm

14    scheduled to be in trial in Texas in June, so I'm not

15    sure frankly that that would be all right.

16    THE COURT:  But you see this is precisely -- and I

17    really respect you, sir, and you're talking my language.

18    I -- I believe that the best way we could reach out for

19    justice for all parties -- and I haven't heard from

20    Mr. Kolsky yet, but I'll hear from him, is if we really

21    pay attention to what the evidence is in this case and

22    we lay that evidence out -- and I mean it's going to be

23    before me in a full and fair presentation, and I do my

24    level-best to make findings of fact, and then whoever

25    disputes that, then we are on to the Court of Appeals

```
 1    and I am happy with that.  But I'm simply asking for
 2    some reasonable proposal.
 3          Telling me you're going to put it on for a day and
 4    then now -- and of course you have the right, I'm not
 5    foreclosing the right, but if I did that, then you're on
 6    to the Court of Appeals with respect to that.  I don't
 7    propose to do it twice.  I propose to get all the
 8    evidence that is necessary to make difficult, difficult
 9    factual determinations here.  That's all.  And I propose
10    to do it in a reasonable way.
11          So, um, now your last chance.  Give some date
12    where we could begin to have this hearing?
13          Now I am persuaded of one thing.  If we go along
14    in the hearing and I come to a belief at the end of the
15    liability hearing that an immediate injunctive remedy is
16    required, I won't hesitate to grant it.  And I've
17    already laid myself open to saying that liability is one
18    thing and prospective relief is another and so maybe we
19    can put the prospective relief off further.  But I don't
20    really, um, and looking at this record, see what we're
21    waiting so long for?  I can't get you till December, get
22    to you till December, and I'm trying to -- well let me
23    go to the government while you think about it.
24          Mr. Kolsky, they haven't had a chance really to
25    digest your proposal.  Your proposal is fine by me,
```

although I would move more quickly than that. And, um,
further I would say, um, in their motion for a prompt
evidentiary hearing, they cast dispersions about various
productions by the government. I extended your
production once, but I'm not about to extend any delays
in discovery, this is a case that has to be on the front
burner by everybody, um, the Court has so ordered. And
so if they went for your proposal, I'd go for your
proposal.

     What about a proposal, Mr. Kolsky, that gets us to
trial at about, um, in March, how do you feel about
that?

     MR. KOLSKY: Um, your Honor, this is Josh Kolsky,
I called in by phone. I apologize, I somehow lost my
video connection so I missed the last few minutes. But
I did hear your Honor's question.

     You know we've tried to come up with a proposal
that, you know, we think is reasonable and is a good
compromise and it will allow this matter to be resolved,
you know, relatively quickly, and so our proposal would
be for a trial in June.

     THE COURT: I've read it, I know what it says.
Now I'm saying how about taking roughly that same
schedule but trying it in March?

     MR. KOLSKY: Um, I think it's going to be

1　difficult to get through discovery and --

2　　　THE COURT:  Why don't we try -- and this is what I

3　was talking to Mr. Andonian about.  If all we're trying

4　is liability, then why?

5　　　MR. KOLSKY:  There are -- we are in the process of

6　reviewing documents so that we can produce documents.

7　This case involves a significant amount of electronic

8　discovery.  We received 60 document requests from

9　plaintiff.  So there's just a lot of information to go

10　through.

11　　　THE COURT:  Well you know with respect, and I do

12　say this with respect, this is the government of the

13　United States, you could do it if you turn-two.  That's

14　just a standard objection.

15　　　We'll go back to Mr. Andonian.  Mr. Andonian, what

16　do you say, how about trial in March of liability only?

17　　　MR. ANDONIAN:  Well you've asked for a proposal,

18　I'm trying to give you one.  I guess I'll say it like

19　this.  I'll piggyback off Mr. Kolsky.

20　　　THE COURT:  All right.

21　　　MR. ANDONIAN:  Merely again, as I've been saying,

22　I don't think there's disagreement between the parties

23　that discovery is necessary and that it's going to take

24　some time.  We have a trial date currently set in

25　September which allows for a regular discovery process

1    like in any other case, which I think would be

2    beneficial here, I think the government thinks it would

3    be beneficial here, and it would be in fact beneficial.

4    The proposal is to simply have a pretrial preliminary

5    injunction hearing and --

6         THE COURT:  Mr. Andonian, um, I am not denying a

7    preliminary injunction because I see that's your grounds

8    for saying I am not giving you the attention that you're

9    entitled, I have consolidated the two.  I am prepared to

10   go forward as early as November.

11        MR. ANDONIAN:  Your Honor, I --

12        THE COURT:  I have a double trial, but I am

13   prepared to go forward as early as November and

14   certainly trial days in December.  So your answer is --

15   you're only saying what you already said.

16        MR. ANDONIAN:  Your Honor, we are not prepared to

17   go forward with a trial on the merits without discovery,

18   and again I --

19        THE COURT:  Again no one says you'll be without

20   discovery.

21        MR. ANDONIAN:  Your Honor --

22        THE COURT:  You don't understand.  Subpoenas work.

23   Bring in the people.  If that's inefficient --

24        MR. ANDONIAN:  Your Honor, what I've been --

25        THE COURT:  If you think that's inefficient, the

1    inefficiency falls on the Court as well.  I'll be there.

2    I can make rulings as to what's relevant and what isn't.

3    I will decide.

4         All right, here's the Court's order.  You're to

5    sit down and in a week's time you're to give me a joint

6    proposal as to a -- I maintain my view -- not view, I

7    maintain the order that the case will go forward with

8    trial on the merits.  You see if you can't agree as to

9    when that trial on the merits will commence, though I am

10   amenable to bifurcating liability and remedy.

11        One week from today I want a joint proposal.  If I

12   don't get a joint proposal, you give me your separate

13   proposals and I will enter an order thereon.

14        Are there any questions?

15        MR. ANDONIAN:  Your Honor, I just want to note for

16   the record that it's over our objection or continuing

17   objection that the --

18        THE COURT:  Noted, your rights are certainly

19   saved, sir.

20        All right.  I do thank you, I do appreciate the

21   argument, and I appreciate the briefing on the motion

22   for partial summary judgment on both sides, it is a very

23   good primer as to the evidence that we will be dealing

24   with at trial.

25        We'll stand in recess.

1      (Ends 4:00 p.m.)

2

3            C E R T I F I C A T E

4

5        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

6   do hereby certify that the foregoing record is a true

7   and accurate transcription of my stenographic notes

8   before Judge William G. Young, on Monday, October 31,

9   2022, to the best of my skill and ability.

10

11

12

13

14   /s/ Richard H. Romanow 11-8-22
     _____
15   RICHARD H. ROMANOW Date

16

17

18

19

20

21

22

23

24

25