IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,                )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )
                                        )
UNITED STATES OF AMERICA, et al.,       )
                                        )
    Defendants.                         )

## DEFENDANTS' EMERGENCY MOTION FOR PROTECTIVE ORDER

Plaintiff Caryn Strickland has formally noticed the deposition of the Chief Judge of the U.S. Court of Appeals for the Fourth Circuit, Roger L. Gregory, for April 21, 2023. Ex. A. But "[i]t is well established that high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent 'extraordinary circumstances.'" *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) (citations omitted). Such depositions cannot proceed unless the party seeking the testimony can make the weighty showing that the sitting official possesses directly relevant information that is essential to the case and that cannot be obtained from other sources. Plaintiff has not made this showing here, and accordingly, the Court should grant Defendants' motion for protective order. Because Plaintiff has noticed Chief Judge Gregory's deposition for April 21, 2023, Defendants respectfully request that the Court rule on their motion in advance of that date.

## BACKGROUND

Plaintiff filed her complaint in this matter on March 3, 2020. Compl., ECF No. 1. The Court granted Defendants' motions to dismiss on December 30, 2020, Mem. & Order, ECF No.

102, and Plaintiff appealed, Notice of Appeal, ECF No. 107. On April 26, 2022, the Fourth Circuit issued an opinion affirming in part and reversing in part this Court's judgment, holding that Plaintiff could proceed with only her as-applied procedural due process and equal protection claims. *See Strickland v. United States*, 32 F.4th 311, 320–21 (4th Cir. 2022). Discovery as to those claims has been ongoing, and non-expert discovery is scheduled to close on May 1, 2023. ECF No. 187.

Plaintiff had moved for summary judgment on August 17, 2020 and renewed that motion on June 21, 2022, after the Fourth Circuit decided the appeal. *See* Pl.'s Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs., ECF No. 60; Pl.'s Mot. for Leave to File a Supp. Mem. In Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity Defs., ECF No. 116. The Court denied Plaintiff's summary judgment motion on October 31, 2022. October 31, 2022 Minute Order. Plaintiff also moved for a preliminary injunction on July 27, 2022. Mot. for a Prelim. Inj., ECF No. 125. On October 18, 2022, pursuant to Federal Rule of Civil Procedure 65(a), the Court combined consideration of the preliminary injunction motion with the trial on the merits. October 18, 2022 Order, ECF No. 155.

On March 9, 2023, Plaintiff's counsel informed Defendants' counsel via email that they intended to depose Chief Judge Gregory. Ex. B at 6. Defendants' counsel responded on March 15, 2023, informing Plaintiff's counsel that Defendants objected to a deposition of Chief Judge Gregory on numerous grounds. *Id.* at 5. Specifically, Defendants objected on the grounds that Plaintiff has failed to show why taking Chief Judge Gregory's deposition is essential to the claims in her case, particularly when he had minimal involvement in the events giving rise to her claims. *Id*. Defendants' counsel also noted that Plaintiff had not attempted to exhaust alternative routes before seeking to depose Chief Judge Gregory, who has important judicial responsibilities that

would be disrupted by a deposition. *Id*. Finally, Defendants' counsel explained that principles of judicial immunity bars Plaintiff from deposing Chief Judge Gregory. *Id*.

On March 22, Plaintiff's counsel responded, indicating Plaintiff sought Chief Judge Gregory's testimony about "the question of whether Chief Judge Gregory refused to disqualify the Federal Defender, a person with a clear conflict of interest," and specifically, "why he, personally, denied her request to disqualify the Federal Defender." *Id*. at 2–3. Plaintiff maintains that Chief Judge Gregory possesses unique knowledge that cannot be obtained by other means of discovery. *Id*. at 2. On March 27, Defendants' counsel responded that Defendants continue to object to a deposition of Chief Judge Gregory. *Id*. at 1.

## LEGAL STANDARD

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). Courts have "substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) (This Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). Such an order is needed to protect the Government from producing Chief Judge Gregory at a deposition.

## ARGUMENT

**I.     Plaintiff Has Not Demonstrated That the Deposition of Chief Judge Gregory Is Warranted Under *Morgan*.**

As recognized by the Fourth Circuit and virtually every circuit court of appeals, "[i]t is well established that high-ranking government officials may not be deposed or called to testify

3

about their reasons for taking official actions absent 'extraordinary circumstances.'" *In re McCarthy*, 636 F. App'x at 143; *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 254 (4th Cir. 2022); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203–04 (2d Cir. 2013); *In re United States (Jackson)*, 624 F.3d 1368, 1372–73, 1376 (11th Cir. 2010); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586–87 (D.C. Cir. 1985); *Peoples v. USDA*, 427 F.2d 561, 567 (D.C. Cir. 1970) ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."); *Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968).

This doctrine stems from the Supreme Court case *United States v. Morgan*, which held that the Secretary of Agriculture should not have been subjected to a deposition because it was improper "to probe [his] mental processes" concerning a proceeding over which he presided. 313 U.S. 409, 421–22 (1941) (citation omitted). The proceeding had "a quality resembling that of a judicial proceeding," and "[s]uch an examination of a judge would be destructive of judicial responsibility." *Id*. at 422 (citation omitted). "Just as a judge cannot be subjected to such a scrutiny," the Court reasoned, "so the integrity of the administrative process must be equally respected." *Id*.

"Since *Morgan*, federal courts have consistently held that, absent 'extraordinary circumstances,' a government decision-maker will not be compelled to testify about his mental processes in reaching a decision." *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991). Indeed, courts of appeals have routinely granted the extraordinary remedy of mandamus to prevent such depositions. *See, e.g.*, *In re McCarthy*, 636 F. App'x at 143; *U.S. Bd. of Parole v. Merhige*,

4

487 F.2d 25, 29 (4th Cir. 1973); *In re U.S. Dep't of Educ.*, 25 F.4th at 692; *In re Clinton*, 973 F.3d 106, 109 (D.C. Cir. 2020); *In re United States (Vilsack)*, No. 14-5146, 2014 U.S. App LEXIS 14134, at *1–2 (D.C. Cir. July 24, 2014). The reason for this standard is clear. "High ranking government officials have greater duties and time constraints than other witnesses" and, given the frequency that government policies and actions are litigated, their "time would be monopolized by preparing and testifying" if their testimony were not limited to extraordinary circumstances. *Kessler,* 985 F.2d at 512. As such, "the Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." *Id*.

> **A. No "Extraordinary Circumstances" Exist That Would Warrant a Deposition of Chief Judge Gregory.**

The party seeking the deposition of a high-ranking official must "establish *at a minimum*" that the official possesses "information essential to [her] case which is not obtainable from another source." *In re United States (Holder)*, 197 F.3d 310, 313–14 (8th Cir. 1999) (emphasis added and citations omitted); *see also In re U.S. Dep't of Educ.*, 25 F.4th at 692 (information must be "absolutely needed" for the case); *Blankenship v. Fox News Network*, LLC, No. 2:19-CV-00236, 2020 WL 7234270, at *6 (S.D.W. Va. Dec. 8, 2020) (deposition must be "essential to that party's case") (citations omitted). "The party seeking to depose a high-ranking government official bears the burden of proving that exceptional circumstances are present." *Id*. (citing *Lederman*, 731 F.3d at 203; *Holder*, 197 F.3d at 314).

The "extraordinary circumstances" that must exist to justify a deposition of a high-level government official, such as the Chief Judge of the Fourth Circuit, do not exist here. Plaintiff cannot show, as she must, (1) that Chief Judge Gregory has relevant first-hand knowledge essential to her case and (2) that any such knowledge would be uniquely held by Chief Judge Gregory and thus not obtainable from another source.

5

### 1. Plaintiff Has Not Demonstrated that Chief Judge Gregory Has Relevant First-Hand Knowledge Essential to Her Case.

As demonstrated by the scant mentions of Chief Judge Gregory in the complaint, Chief Judge Gregory played a minimal role in the events giving rise to her claims. Indeed, Plaintiff has so far refused to describe in detail the actions that she ascribes to Chief Judge Gregory. *See* Pl.'s Objs. & Answers to Defs.' First Set of Interrogatories, Ex. C, at 1–2; Pl.'s Letter of March 3, 2023, Ex. D, at 1. Though Plaintiff represents that she seeks to depose Chief Judge Gregory on the topic of "why he, personally, denied her request to disqualify the Federal Defender," Ex. B at 2, she fails to demonstrate why the reasoning behind that decision is essential to her case. Plaintiff's due process claim does not concern the rationale for the decision not to disqualify the Defender. Rather, she alleges her due process rights were violated simply because the Defender was not disqualified. *See, e.g.*, Pl.'s Opp. to Official Capacity & Entity Defs.' Mot. to Dismiss, ECF No. 49, at 24 (arguing that Defendants violated the Employment Dispute Resolution ("EDR") Plan because they "refused to disqualify the Defender from serving as the employing office's representative"); Pl.'s Mem. of L. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity and Entity Defs., ECF No. 60-1, at 16 (claiming that Defendants violated her due process rights because they "refused to disqualify the Defender from representing the employing office even though he was 'involved in,' and a subject of, the complaint"). The considerations and rationale underpinning that denial—the information that Plaintiff seeks to uncover in a deposition of Chief Judge Gregory—are thus immaterial to her claim that the Defender's continued involvement in the EDR process violated her due process rights. *See Lewis v. Frayne*, No. 3:12-cv-1070, 2016 U.S. Dist. LEXIS 92867, at *31 (D. Conn. July 18, 2016) ("intent is not an element of a due process claim").

Nor is the information essential to Plaintiff's equal protection claim. Although intent is an element of that claim, Plaintiff has not contended that the denial of her motion to disqualify the Defender was an act of deliberate indifference constituting an equal protection violation. Plaintiff's filings uniformly reference the disqualification issue only with respect to her due process claim, not her equal protection claim. *See* Pl.'s Mem. of L. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs. at 16–17; Pl.'s Supp. Mem. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs., ECF No. 116-1, at 5–7; Pl.'s Mem. of L. in Supp. of Mot. for a Prelim. Inj., ECF No. 125-1, at 7–8. If Plaintiff believed that the denial of her motion to disqualify was truly essential to her equal protection claim, it seems she would have addressed that denial in at least one of these briefs when arguing why she is entitled to relief on that claim. Her failure to do so undercuts her position now that such evidence is necessary to prove her claims.

Plaintiff plainly has not demonstrated that questioning Chief Judge Gregory about his thought process in denying her motion to disqualify would be "essential" to her case. *See Blankenship*, 2020 WL 7234270, at *6 (quashing subpoena of Senators McConnell and Gardner because they did not have knowledge essential to the plaintiff's case). The *Holder* case is illustrative. In that case, after federal prosecutors obtained a notice of intention to seek the death penalty for a criminal defendant, the defendant subpoenaed Attorney General Janet Reno and Deputy Attorney General Eric Holder about their decision to not withdraw his death notice. *Holder*, 197 F.3d at 311. The Eighth Circuit explained that depositions of Reno and Holder were not necessary to establish the factual basis for the defendant's argument that they had not followed protocols, since the record already showed that "the death penalty protocol was not followed." *Id.* at 314. Similarly, in this case, the record already reflects that Chief Judge Gregory denied

Plaintiff's motion to disqualify the Defender. His intent in doing so is not essential to Plaintiff's claims.

Plaintiff has also repeatedly claimed that the existing record is sufficient to prove her claims. *See* Pl.'s Mem. of Law in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs. at 1 ("the material facts showing these constitutional violations are not subject to genuine dispute"); Pl.'s Supp. Mem. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs. at 5 ("The Fourth Circuit's decision makes this an easy case . . . Strickland is entitled to summary judgment"); Mem. of Law in Supp. of Mot. for a Prelim. Inj., ECF No. 125-1, at 5 ("no reasonable factfinder could find in favor of Defendants on the due process and equal protection claims"). After making those assertions, Plaintiff's contention that she requires a deposition of Chief Judge Gregory to establish her claims is not credible. *See In re U.S. Dep't of Educ.*, 25 F.4th at 704 (granting mandamus relief to the government where plaintiff's "[c]ounsel even acknowledged that plaintiffs likely could win relief on the existing record").

Moreover, the topic on which Plaintiff seeks to depose Chief Judge Gregory falls squarely within the reasoning *Morgan* sets forth for prohibiting depositions of high-level officials. "*Morgan* has come to stand for the notion that as for high-ranking government officials, their thought processes and discretionary acts will not be subject to later inspection under the spotlight of deposition." *United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002). Plaintiff's stated justification for deposing Chief Judge Gregory is precisely to probe his "thought processes" in making a discretionary determination to deny her motion to disqualify. "Other courts have also refused to allow examination of top Government officials regarding decisions committed to their discretion." *Simplex Time Recorder*, 766 F.2d at 586. For example, in *Sweeney v. Bond*, the Eighth Circuit refused to allow the plaintiffs

8

Case 1:20-cv-00066-WGY   Document 193   Filed 04/03/23   Page 8 of 14

to depose the Governor of Missouri about his dismissal of them, despite their contention that they were wrongfully terminated due to their political affiliation. 669 F.2d 542, 546 (8th Cir. 1982), *abrogated on other grounds by O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996); *see also Merhige*, 487 F.2d at 29 (barring depositions of members of the Parole Board that would have examined parole decisions because the Board "is given absolute discretion in matters of parole"). Chief Judge Gregory's ruling on Plaintiff's motion to disqualify is a decision committed to his discretion under Chapter X § 7 of the EDR Plan, and Plaintiff has not established that a deposition inquiring about this decisionmaking process would yield information essential to her case.

### 2. Plaintiff Has Not Demonstrated that the Information Plaintiff Seeks Cannot Be Obtained From Other Sources.

Plaintiff has also not attempted to exhaust potential alternatives for the desired discovery, a prerequisite to making the showing that a high-level official has information that "cannot be obtained elsewhere." *Alexander v. F.B.I.*, 186 F.R.D. 1, 4 (D.D.C. 1998); *accord In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008); *Simplex*, 766 F.2d at 586.

Relevant information about the motion to disqualify can be gleaned from the voluminous documents Defendants have already produced and from the EDR Coordinator, whose deposition has already been scheduled. *Holder*, 197 F.3d at 314 ("If other persons can provide the information sought, discovery will not be permitted against such an official."). Plaintiff herself acknowledges that the EDR Coordinator discussed her motion to disqualify with Chief Judge Gregory. *See* Compl. ¶ 370 ("The EDR Coordinator explained that, early on, he and the Chief Judge had discussed the motion, and agreed that disqualification would be 'premature' without a finding against the Defender"); *id*. ¶ 395 (the EDR Coordinator "said that the Chief Judge 'intend[ed]' to deny her request to disqualify the Defender"). Moreover, Plaintiff claims that the EDR

9

Coordinator told her that *he* was the one drafting the denial order, not Chief Judge Gregory. *Id.* ¶ 397. Under these circumstances, Chief Judge Gregory's testimony on this topic could well be cumulative and unnecessary. *See Blankenship*, 2020 WL 7234270, at *7 ("It is also significant that Plaintiff has scheduled the depositions of several others who would also have personal knowledge of the alleged" events.).

Plaintiff has also not shown that she is unable to obtain the information she seeks from Chief Judge Gregory through less intrusive means. While Defendants maintain that the reasons underlying Chief Judge Gregory's decision to deny Plaintiff's motion to disqualify is not essential to her case, less burdensome means, such as interrogatories, exist to seek relevant information. *See Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (permitting the plaintiff to issue interrogatories instead of requiring a deposition); *Alexander*, 186 F.R.D. at 5 (preventing deposition of high-level officials but permitting the plaintiffs to issue interrogatories to determine if officials had relevant knowledge). Indeed, two days *after* serving the deposition notice for Chief Judge Gregory, Plaintiff served on March 31, 2023 an interrogatory requesting "the basis for not disqualifying Anthony Martinez (Federal Defender) from Plaintiff's EDR proceeding." Pl.'s Fourth Set of Interrogatories, Ex. E, at 1. Defendants' response to this interrogatory—which requests the same information that Plaintiff seeks to obtain from Chief Judge Gregory's deposition—may obviate the need for his deposition altogether. At the very least, it underscores that deposing Chief Judge Gregory on April 21, 2023 would be premature.

For all of the reasons stated above, Plaintiff has failed to demonstrate that Chief Judge Gregory "possess[es] information essential to [her] case which is not obtainable from another source," and therefore, she has not demonstrated the "exceptional circumstances" necessary to

10

depose him.  *See Holder*, 197 F.3d at 314.  Therefore, the Court should issue a protective order to preclude Plaintiff from taking Chief Judge Gregory's deposition.

### B. *Morgan*'s Bar on Probing the Mental Processes of Judicial and Quasi-Judicial Officers Further Prevents the Deposition of Chief Judge Gregory.

Based on the principles articulated in *Morgan*, courts have also held that judges and quasi-judicial officers may not be compelled to testify about the "mental processes used in formulating official judgments or the reasons that motivated [them] in the performance of [their] official duties."  *United States v. Roebuck*, 271 F. Supp. 2d 712, 718 (D.V.I. 2003) (citing *Morgan*, 313 U.S. at 422).  "[O]nly in the most extraordinary of cases, such as a strong showing of bad faith or improper behavior by a judge or quasi-judicial officer or where circumstances were such to overcome the presumption of regularity as to the acts of the decision maker, may a judge be questioned as to matters within the scope of his adjudicative duties."  *Id.*; *see also United States v. Dowdy*, 440 F. Supp. 894, 896 (W.D. Va. 1977) ("[C]ourts have refused to issue subpoenas for oral testimony of the decision-makers as to the basis for their opinions absent extreme and extraordinary circumstances.").

Chief Judge Gregory's mental processes that culminated in the denial of Plaintiff's motion to disqualify are protected by this doctrine.  Plaintiff has not represented that she would limit her questions to Chief Judge Gregory to matters of fact—she "seeks the foundation for a judge's decision making process, not simply to ask questions regarding the observations made by a witness who happened to be a judge."  *Roebuck*, 271 F. Supp. 2d at 719.  Simply because Chief Judge Gregory was not presiding over an Article III case does not mean he was not performing a judicial function.  *See Partington v. Gedan*, 961 F.2d 852, 866–67 (9th Cir. 1992) (enforcing state bar disciplinary rules is a judicial function); *LaNave v. Minnesota Sup. Ct.*, 915 F.2d 386, 387 (8th Cir. 1990) (denying an application for admission to a state bar is a judicial function).  And courts

11

have repeatedly declined to compel the depositions of judges about rulings on motions to disqualify. *See Roebuck*, 271 F. Supp. 2d at 719 (denying request to depose four judges in relation to motion to recuse); *Cheeves v. S. Clays, Inc.*, 797 F. Supp. 1570, 1580–84 (M.D. Ga. 1992) (declining to permit depositions of three judges concerning motion to disqualify).

Moreover, Chief Judge Gregory's role in deciding the motion to disqualify under Chapter X § 7 of the EDR Plan is "quasi-judicial" and entitled to protection. "The mental process rule . . . has been applied to federal administrative officials who act in a quasi-judicial capacity[.]" *Singer Sewing Mach. Co. v. NLRB*, 329 F.2d 200, 206 (4th Cir. 1964) (citing *Morgan*); *see also Gary W. v. State of La., Dep't of Health & Hum. Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988) (quashing subpoena of special master, who was performing "quasi-judicial" function); *Standard Packaging Corp. v. Curwood, Inc.*, 365 F. Supp. 134, 136 (N.D. Ill. 1973) (declining to compel testimony of patent officers because "it is unquestionable that patent examiners perform quasi-judicial duties that merit the protection of the 'mental processes' rule") (citations omitted). Courts have also held that judicial immunity principles apply to quasi-judicial officers involved in decision-making about misconduct allegations. *See Adams v. Comm. on Jud. Conduct & Disability*, 165 F. Supp. 3d 911, 922–24 (N.D. Cal. 2016) (holding Circuit Executive was immune from suit based on her decision to deny the plaintiff's request to obtain an investigative file on a judge's misconduct); *Sanai v. Kozinski*, No. 4:19-cv-08162-YGR, 2021 WL 1339072, at *7 (N.D. Cal. Apr. 9, 2021) (holding judges serving in their capacity as members of the Ninth Circuit Judicial Council was immune from suit over disciplinary action it took against the plaintiff); *Shemonsky v. Vanaskie*, No. 04CV2759, 2005 WL 2031140 (M.D. Pa. Aug. 16, 2005) (immunity barred claim against Third Circuit Judicial Council). Because Chief Judge Gregory played an "adjudicative role" in

ruling on the motion to disqualify, *see Adams*, 165 F. Supp. 3d at 24, these principles apply in equal force to his actions here.

Similarly, Chief Judge Gregory's ruling on Plaintiff's motion to disqualify resembles one that would occur in a judicial proceeding. *See Wal-Mart Stores*, 2002 WL 562301, at *1 ("*Morgan* stands for the principle that when the Secretary's duties take on a judicial quality there is no right to conduct a deposition of such a decision maker in the absence of extraordinary circumstances."). Plaintiff filed a motion, pursuant to Ch. X, § 7 of the EDR Plan, and knew the motion would be considered by the Chief Judge, a federal judge. She set forth a basis for her motion in a formal letter. *See* Pl.'s Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs. Ex. B, ECF No. 60-3, at 8. Just as "an examination of a judge would be destructive of judicial responsibility," *Morgan*, 313 U.S. at 422, a deposition predicated on uncovering Chief Judge Gregory's reasons for denying this motion is unwarranted.

This conclusion is further bolstered by *Wal-Mart Stores*, which held that the defendant could not depose the former head of the Consumer Product Safety Commission about a decision to refer a case to the Department of Justice. 2002 WL 562301, at *4. Even though the court deemed the CPSC to be acting "in an executive capacity" when it made the referral decision, the rule barring quasi-judicial officials from testifying about mental processes applied unless the defendant made a prima facie showing of misconduct. *Id*. (citing *Singer Sewing Machine*, 329 F.2d 200). The defendant failed to make such a showing. *Id*. Likewise, even if Chief Judge Gregory was considered to be acting in an executive capacity in denying Plaintiff's motion to disqualify, the principles barring inquiry into his mental processes would still apply. And Plaintiff has made no attempt to show that Chief Judge Gregory was acting in bad faith or improperly when

13

he denied her motion. Accordingly, Chief Judge Gregory should not be compelled to testify in this matter.

## CONCLUSION

For the reasons set forth above, the Court should grant this motion and enter an order precluding Plaintiff from deposing Chief Judge Gregory.

Dated: April 3, 2023

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

　/s/ *Madeline M. McMahon*
MADELINE M. MCMAHON (DC Bar No. 1720813)
JOSHUA M. KOLSKY
RACHAEL L. WESTMORELAND
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 451-7722
E-mail: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*