IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND, )
)
    Plaintiff, )
)
v. )
)
UNITED STATES OF AMERICA, et al., )
)
    Defendants. )

## DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR PROTECTIVE ORDER[1]

Plaintiff concedes that the Chief Judge of the U.S. Court of Appeals for the Fourth Circuit, Roger L. Gregory, is a high-ranking Government official. *Pl.'s Resp.* at 4. As such, he should only be deposed in extraordinary circumstances, which Plaintiff has not established. Plaintiff has failed to show that Chief Judge Gregory has relevant first-hand knowledge essential to her case and that such knowledge cannot be obtained from another source. Nor has she made any showing of bad faith or misconduct on Chief Judge Gregory's part—much less the strong showing of bad faith or misconduct required to obtain his deposition. And although Plaintiff contends that Chief Judge Gregory's testimony is necessary to establish his motive, motive is not an element of Plaintiff's due process claim, nor is his motive in making the disqualification determination essential to her equal protection clause claim. Because Plaintiff has failed to establish the extraordinary

---

[1] On April 14, 2023, Plaintiff simultaneously filed her Response to Defendants' Motion (ECF Nos. 199 and 200) along with a related Motion to Unseal (ECF No. 201). Defendants intend to respond to Plaintiff's motion to unseal within the time frame provided by the local rules.

1

circumstances necessary to take the deposition of such a high-ranking Government official, the deposition should be precluded in its entirety.

**ARGUMENT**

**I.     Plaintiff Urges the Court to apply the Wrong Legal Standard.**

At the outset, Plaintiff relies on the wrong legal standard for whether depositions of high-ranking government officials should be permitted under the Supreme Court's decision in *United States v. Morgan*, 313 U.S. 409, (1941). Specifically, Plaintiff relies on *Byrd v. District of Columbia*, an out-of-circuit magistrate judge decision, which applies a balancing test to determine whether the movant's concern of harm to the official whose deposition is sought outweighs the adversary's significant interest in preparing for trial. *Pl.'s Resp.* at 3 (citing *Byrd*, 259 F.R.D. 1, 6 (D.D.C. 2009)). But contrary to the decision in *Byrd*, the Fourth Circuit has repeatedly—and more recently—applied a much stricter standard under the *Morgan* doctrine, recognizing that "[i]t is well established that high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent 'extraordinary circumstances.'" *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) (citations omitted); *see also Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 254 (4th Cir. 2022); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991).

In this Circuit, those seeking to depose a high-ranking government official must satisfy the weighty extraordinary-circumstances requirement by showing that the official: (1) has relevant first-hand knowledge essential to the case, *see Timpson*, 31 F.4th at 254; and (2) that any such knowledge is not obtainable from another source, in other words, "there is no alternative to [the] depos[ition]", *see In re McCarthy*, 636 F. App'x at 143. This Court should thus reject Plaintiff's suggestion that it is bound to follow the decision in *Byrd*, and instead follow Fourth Circuit

2

precedent, which requires the Plaintiff to establish that "extraordinary circumstances" exist to warrant the deposition of Chief Judge Gregory to probe his mental processes.

## II. The *Morgan* Doctrine Applies Here.

Citing a series of out-of-circuit district court decisions, Plaintiff contends that the *Morgan* doctrine does not apply where high-level government officials are personally involved in allegations of wrongdoing. Pl.'s Resp. at 4. Not so. To begin with, this purported restriction on the doctrine is entirely absent from any Fourth Circuit decision that Defendants are aware of, and Plaintiff has cited no such decision. Contrary to Plaintiff's assertions, the *Morgan* doctrine has been applied to situations where high-ranking government officials have personal knowledge.

For example, in *Morgan* itself, the Secretary of Agriculture had extensive personal knowledge about his rate-setting order at issue in that case. The Secretary was questioned at length "regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates." *United States v. Morgan*, 313 U.S. at 422 (1941). Despite the Secretary's extensive personal knowledge, the Supreme Court held that the administrative proceeding had "a quality resembling that of a judicial proceeding," and "[s]uch an examination of a judge would be destructive of judicial responsibility." *Id*. at 422 (citation omitted). The Court thus concluded that that the "Secretary should never have been subjected to this examination". *Id.*

Similarly, the Fourth Circuit applied the *Morgan* doctrine in *McCarthy* in issuing a writ of mandamus precluding the deposition of the EPA administrator. There, the EPA administrator had personal knowledge of the alleged events, which concerned whether the administrator had a non-discretionary duty under the Clean Air Act to conduct certain job loss evaluations related to the EPA's administration and enforcement duties over energy plants, including potential closures. At

3

issue were the administrator's own statements about whether the Agency had made job loss evaluation determinations under the Clean Air Act, which the plaintiffs contended contradicted the EPA's litigation position in the case, and thus, warranted the administrator's deposition. The Fourth Circuit rejected the plaintiffs' view, finding instead that "extraordinary circumstances" were not present because plaintiffs "ha[d] not demonstrated a need for [the Administrator's] testimony beyond what [wa]s already in the public record, particularly since the district court ha[d] authorized Plaintiffs to take a Rule 30(b)(6) deposition of the agency." *McCarthy*, 636 F. App'x at 144. In other words, the plaintiffs failed to establish that the administrator's testimony was essential to their claims and that the administrator's knowledge could not be obtained through other sources, such as a 30(b)(6) deposition. *See id.*

In sum, Plaintiff's purported restriction on the *Morgan* doctrine has no basis in binding precedent and should be rejected by this Court. As *Morgan* and its progeny demonstrate, the doctrine is not limited to instances where the high-ranking government official lacks personal knowledge.

Perhaps recognizing this weakness in her argument, Plaintiff further argues that the cases applying the *Morgan* doctrine cited by Defendants are not factually analogous to the situation here, and that because her claims survived a motion to dismiss, the doctrine does not apply. *See* Pl.'s Resp. at 5-6. Yet a close look at the cited cases shows otherwise.[2] For example, Plaintiff contends that the *In re United States (Holder)* decision is inapposite because the party there "failed to make

---

[2] Similarly, Plaintiff seeks to distinguish *Sweeney* on the grounds that the plaintiffs there failed to show the Governor possessed information essential to their case. Pl.'s Resp at 6. Defendants have no quibble with that argument. Indeed, Defendants have maintained here that the Plaintiff, as the party seeking the deposition, must show that the testimony she seeks is essential to her case. *See* Defs.' Mot. for a Protective Order (ECF No. 193) at 5-7. And as for the remaining cases Plaintiff cites in passing, while each case involves a different set of factual circumstances, none of those cases negate the binding legal standard that has been repeatedly affirmed by the Fourth Circuit.

4

a sufficient showing of substantive or procedural rights enforceable against officials" whereas "here, by contrast, the Fourth Circuit held that Plaintiff stated a claim that Chief Judge Gregory personally violated her constitutional rights." *See* Pl.'s Resp. at 6. That is incorrect for two reasons.

First, the Fourth Circuit did not hold that Plaintiff had stated a claim that Chief Judge Gregory personally violated Plaintiff's constitutional rights. The Fourth Circuit's opinion did not even address the allegations as to particular defendants. Instead, it discussed the allegations against Defendants generally, without parsing them out, and found they were sufficient to state an as-applied procedural due process claim and an equal protection claim. *Strickland v. United States*, 32 F.4th 311, 347-60 (4th Cir. 2022). In any event, while it is true enough that some of Plaintiff's claims survived the motion to dismiss phase, her attempt to distinguish the *Holder* case on that basis is unsuccessful.

Second, the criminal defendant in *Holder* moved to set aside a verdict against him on the grounds that the death penalty protocol was not followed. *In re U.S.*, 197 F.3d 310, 312 (8th Cir. 1999). The defendant subpoenaed Attorney General Janet Reno and Deputy Attorney General Eric Holder about their decision to not withdraw his death notice. *Id.* at 311. The Eighth Circuit explained that the depositions of Reno and Holder were not necessary to establish the factual basis for the defendant's argument that they had not followed protocols, since the record already contained sufficient facts relating to this claim, and the defendant had failed to show that there were "no other sources" for the information he sought. *Id*. Although the Eighth Circuit further held that the defendant had failed to make a sufficient showing that the death penalty protocols created an enforceable procedural right, thus barring the need for additional discovery, that was just one additional requirement the Court considered in denying the defendant's request to depose Reno

5

and Holder. *Id.* at 314-16 (turning to the procedural right showing after addressing whether the testimony was necessary and whether there were other ways to obtain the same information).

In short, the *Holder* decision reinforces the requirement that Plaintiff must establish that the "discovery sought is relevant and necessary and that it cannot otherwise be obtained." *Id.* at 314. As explained below in Sections III and IV, Plaintiff has not established that Chief Judge Gregory's testimony is "relevant and necessary and that it cannot otherwise be obtained." *See id.*

Plaintiff also contends that the *Morgan* doctrine does not apply because this case involves procedural due process and equal protection clause claims related to workplace sexual harassment. *See* Pl.'s Resp. at 17-18. Although Plaintiff cites two cases involving whether overseeing an administrative matter is a judicial or quasi-judicial act subject to judicial immunity (*see id.* at 17), that is different than the question before the Court here: whether the *Morgan* doctrine and its progeny bar the deposition probing Chief Judge Gregory's mental processes in denying the disqualification request. As Defendants have explained, Plaintiff, without any showing of bad faith or improper behavior on Chief Judge Gregory's part,[3] seeks the exact sort of testimony that the *Morgan* doctrine seeks to protect: a probing of the Chief Judge's reasons for denying the disqualification request. Defs.' Mot. at 9-13. But just as "an examination of a judge would be destructive of judicial responsibility," *Morgan*, 313 U.S. at 422, a deposition predicated on uncovering Chief Judge Gregory's reasons for denying this request is unwarranted. *See United States v. Wal-Mart Stores*, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002) (applying the *Morgan*

---

[3] Plaintiff claims that the Fourth Circuit held that Chief Judge Gregory's "refusal to disqualify the accused Defender created a conflict of interest that infected the entire investigation when the Defender was allowed to be a decisionmaker." Pl.'s Resp. at 18. That is incorrect. The Fourth Circuit held that Plaintiff had stated a plausible violation of her due process rights based on the allegation that the "refusal to disqualify the FPD created a conflict of interest that infected the entire investigation *when Strickland was led to believe that the FPD would be the final decisionmaker in the case*." *Strickland*, 32 F.4th at 355 (emphasis added).

6

Case 1:20-cv-00066-WGY    Document 202    Filed 04/18/23    Page 6 of 11

doctrine to an "executive capacity" decision made by the Consumer Product Safety Commission to refer a case to the Department of Justice for prosecution).

### III. Chief Judge Gregory Lacks First-Hand Knowledge Essential to the Case.

As explained in Defendants' Motion, Plaintiff has failed to establish that Chief Judge Gregory has first-hand knowledge that is essential to her case. Defs.' Mot. at 6-9. Despite Plaintiff's assertion in her Response that the Chief Judge was "centrally involved in actions giving rise to potential constitutional liability", he is only mentioned in 17 of the 505 paragraphs of the complaint, alleging that: Chief Judge Gregory was responsible for duties under the EDR Plan, Compl., ¶ 32; that he was copied on e-mail communications, *id.*, ¶¶ 287, 322, 325, 330, or otherwise provided information, *id.* ¶¶ 217, 451; that he decided Plaintiff's extension request, *id.*, ¶¶ 285, 287, 388, and disqualification request, *id.*, ¶¶ 285, 453; that he directed assistance regarding Plaintiff's transfer request, *id.*, ¶ 410; and he ordered an investigation and took disciplinary action, *id.*, ¶ 484. These minimal allegations do not come close to establishing that Chief Judge Gregory was "centrally involved", but even if they did, the relevant standard is whether he has first-hand knowledge essential to this case. He does not.

Plaintiff argues that she needs to depose the Chief Judge "to ascertain whether he was, in fact, aware of the Defender's conduct, the reasons for the request to disqualify the Defender, the Investigator's view that the Defender was personally biased against the Plaintiff and should be disqualified, and the Circuit Executive's view that the Defender should announce his 'recusal'". Pl.'s Resp. at 8. Essentially, Plaintiff seeks to probe the Chief Judge's mental processes for "how and why he made the decision not to disqualify the Defender". *Id.* at 10. But she fails to establish that the reasons underlying the disqualification decision are relevant to her due process claims. As Defendants explained in their opening brief, intent is not an element of a due process claim. Defs.'

Mot. at 6 (citing *Lewis v. Frayne*, No. 3:12-cv-1070, 2016 U.S. Dist. LEXIS 92867, at *31 (D. Conn. July 18, 2016) ("intent is not an element of a due process claim"). Indeed, Plaintiff herself has repeatedly argued that the Defender's continued involvement in her EDR proceedings was itself the violation of her due process rights—regardless of the intent of the decisionmaker in denying her disqualification request. *See, e.g.*, Pl.'s Opp. to Official Capacity & Entity Defs.' Mot. to Dismiss, ECF No. 49, at 24 (arguing that Defendants violated the Employment Dispute Resolution ("EDR") Plan because they "refused to disqualify the Defender from serving as the employing office's representative"); Pl.'s Mem. of L. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity and Entity Defs., ECF No. 60-1, at 16 (claiming that Defendants violated her due process rights because they "refused to disqualify the Defender from representing the employing office even though he was 'involved in,' and a subject of, the complaint"). Because Plaintiff has not shown that the Chief Judge's intent is a necessary element of her due process claim, this Court should deny Plaintiff's request to depose the Chief Judge about his mental processes in denying the disqualification request.

Plaintiff's argument that the Chief Judge has first-hand knowledge essential to her equal protection claim fares no better. Although Plaintiff argues that as the overseer of the Circuit's EDR complaints, Chief Judge Gregory has "unique knowledge regarding the Circuit's response to harassment and discrimination" claims, Plaintiff fails to explain how this general knowledge of other, unrelated cases is essential to proving her personal equal protection claim. *See* Pl.'s Rep. at 13-14 (claiming that her claim, like two other EDR claims disclosed in discovery, was made against the same two individuals, but failing to explain why the Chief Judge's knowledge is essential to her case). Indeed, the "history of violations" Plaintiff apparently seeks to now prove (*see* Pl.'s Resp. at 14) can be demonstrated without any probing of the Chief Judge's mental

8

processes in making decisions about other EDR proceedings. And while Plaintiff mentions in passing that the Chief Judge's refusal to disqualify the Defender "warrants exploration through deposition questioning," she does not explain how that testimony is essential to her equal protection claim. *Id.* at 13. This is unsurprising, given that, until last week, Plaintiff had only mentioned the disqualification decision in reference to her due process claim.[4] *See* Pl.'s Mem. of L. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs. at 16–17; Pl.'s Supp. Mem. in Supp. of Her Mot. for Partial Summ. J. Against the Official Capacity & Entity Defs., ECF No. 116-1, at 5–7; Pl.'s Mem. of L. in Supp. of Mot. for a Prelim. Inj., ECF No. 125-1, at 7–8.

Plaintiff also claims that the Chief Judge's knowledge of sexual harassment issues in her case entitles her to take his deposition so that she can find out what actions he took, what corrective actions he implemented, and why he took some actions but not others. *Id.* Yet Plaintiff already has knowledge of when and what corrective actions the Chief Judge took here, namely, the letter of counseling, which is already part of the record in this matter. *Id.* at 13. Plaintiff has not explained how probing the Chief Judge's mental processes in issuing that counseling letter is essential to proving her equal protection claim.

IV. **Plaintiff Has Failed to Demonstrate that the Information She Seeks Cannot Be Obtained From Other Sources**

Not only is the information Plaintiff seeks unessential to her case, it is also "obtainable from another source." *In re United States (Holder)*, 197 F.3d 310, 313–14 (8th Cir. 1999); *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (party seeking to depose high-level official must show that the information "cannot be obtained elsewhere").

---

[4] Notably, to date, Plaintiff has refused to meaningfully answer Defendants' interrogatory about what conduct Plaintiff believes supports each of her claims.

As Defendants explained in their Motion, Plaintiff recently served an interrogatory seeking "the basis for not disqualifying Anthony Martinez (Federal Defender) from Plaintiff's EDR proceeding." Pl.'s Fourth Set of Interrogatories, Ex. E, at 1. That interrogatory requests the same information that Plaintiff seeks to obtain from Chief Judge Gregory's deposition and therefore may obviate the need for his deposition altogether. Defs.' Mot. at 10. Plaintiff's Opposition fails to respond to that argument, so she effectively concedes that her interrogatory seeks the same information as she would obtain through a deposition. On that basis alone, the Court should enter Defendants' proposed protective order.

Plaintiff argues that a deposition of Chief Judge Gregory is necessary because "[o]nly he knows what factors he considered in denying Plaintiff's request for disqualification and how he weighed them." Pl.'s Resp. at 16. But that information can be obtained in written format. There is no need to burden Chief Judge Gregory with a deposition for Plaintiff to obtain this information. Indeed, courts in similar situations have approved the use of interrogatories as a reasonable alternative to a deposition. *See* Defs.' Mot. at 10 (citing cases).

Plaintiff suggests that a deposition is superior to a written response because the deposing attorney can adjust questions on the fly. Opp'n at 15. Plaintiff relies on *Sherrod v. Breitbart*, 304 F.R.D. 73 (D.D.C. 2014), in which the court denied the government's motion to quash a subpoena to depose the Secretary of Agriculture. But Plaintiff neglects to mention that just weeks after that ruling was issued, the D.C. Circuit granted the government's petition for a writ of mandamus and ordered the district court to quash the subpoena. *See In re United States*, No. 14-5146, 2014 U.S. App. LEXIS 14134, at *1 (D.C. Cir. July 24, 2014). In doing so, the district court held that "the district court abused its discretion by allowing the deposition of Secretary Vilsack at this stage in the proceedings." *Id*. at *2. And it explained that it is "well-established that 'top executive

10

department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'" *Id*. Thus, far from supporting Plaintiff's position, the rulings in *Sherrod* weigh heavily against Plaintiff's effort to depose Chief Judge Gregory here.

## CONCLUSION

For the reasons set forth above, the Court should grant this motion and enter an order precluding Plaintiff from deposing Chief Judge Gregory.

Dated: April 18, 2023

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

JOSHUA M. KOLSKY
Senior Trial Counsel

*/s/ Danielle Young*
DANIELLE YOUNG (TX Bar 24098649)
MADELINE M. MCMAHON
RACHAEL L. WESTMORELAND
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 616-2035
E-mail: Danielle.young2@usdoj.gov

*Counsel for Defendants*