# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

## ASHEVILLE DIVISION

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO AMEND

Nearly four months after Defendants' answer was due (on July 29, 2022) and nearly three months after the deadline to amend their Answer had passed (on September 6, 2022), Defendants moved to amend their Answer to assert, for the first time, an "affirmative defense" of "failure to mitigate her alleged losses." ECF No. 166. Defendants' newly asserted defense is based on facts which they have known *since at least May 20, 2020*, when Strickland served her initial disclosures, and which have been repeatedly raised in the parties' filings. *See*, *e.g.*, ECF Nos. 60 (summary judgment motion), 125 (preliminary injunction motion). Defendants have not shown good cause for their delay in seeking to amend. This Court need not look any further: Defendants' motion should be denied on this basis alone.

Even if Defendants could show good cause for the delay, they fail to meet the requirements for amendment under Rule 15. All the factors on which courts

1

typically rely to deny motions to amend are present here: Defendants unduly delayed seeking amendment, amendment would be futile, and amendment would prejudice Strickland. Moreover, Defendants acted in bad faith. While Defendants claim they are revising their Answer "based on their review of additional evidence in this matter," ECF No. 166, at 3, they have failed to correct misrepresentations that are disproven by the record already before the Court. The Answer contains extensive misrepresentations regarding material issues in the case, thereby prejudicing Strickland.

## ARGUMENT

### I. This Court's grant of the Motion to Strike is not an excuse for Defendants' failure to timely assert a defense of failure to mitigate.

As an initial matter, Defendants disagree with this Court's ruling of September 21, 2022 granting Strickland's Motion to Strike their affirmative defenses. ECF No. 166, at 1–2. They complain that the "absence of any explanation prevents Defendants from understanding the basis for the ruling and its impact on the litigation." *Id.* at 2. They frame their belated motion to amend, filed more than two months after the Court's ruling, as being responsive to the "concerns Plaintiff raised regarding [their] defense." ECF No. 166, at 2. Defendants' argument fails for two reasons.

First, the Court's ruling granting the Motion to Strike is not an excuse for Defendants' failure to timely assert a defense of failure to mitigate. A failure to

2

mitigate "is an affirmative defense and it is the employer's responsibility to carry that burden." *Lundy Packing Co. v. N.L.R.B.*, 856 F.2d 627, 629 (4th Cir. 1988). Defendants did not assert a defense of failure to mitigate in their Answer. *See* ECF No. 127, at 1. Instead, their Answer asserted that Strickland's "alleged damages must be set off by *any amounts earned in mitigation*." *Id.* (emphasis added). This defense conceded that she *did* earn amounts "in mitigation," as Strickland explained in her Motion to Strike. ECF No. 142, at 7. Defendants' allegation that Strickland earned amounts "in mitigation" cannot reasonably be construed as an allegation that she failed to mitigate. Further, their allegation was not properly asserted as an affirmative defense, because it merely reflected the law that a plaintiff's lost earnings must be offset by earnings in mitigation. *See* ECF No. 133-1, at 3. It is therefore unsurprising that the Court granted the Motion to Strike this improper defense. Defendants cannot reasonably claim to be surprised or prejudiced by this straightforward ruling. Nor can they reasonably claim that they were denied an opportunity to assert a defense of failure to mitigate, given that their Answer clearly contemplated the need to mitigate.

Second, the Court was right not to provide Defendants leave to amend. When a party fails to plead a valid defense with the requisite particularity, leave is provided to allow the party to provide the factual basis for the defense. *See, e.g.*, *McGinity v. USAA Fed. Sav. Bank*, No. 5:19-CV-560-BO, 2020 WL 1867386, at

3

\*1–2 (E.D.N.C. Apr. 14, 2020) (striking defense of "failure to mitigate" based on "a bald assertion with no accompanying facts," but allowing leave to amend to "include properly pleaded affirmative defenses"); *Racick v. Dominion Law Associates*, 270 F.R.D. 228, 235 (E.D.N.C. 2010) (allowing amendment of certain defenses "to provide the requisite factual particularity"). By contrast, affirmative defenses that fail as a matter of law will be stricken "with prejudice." *Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D. Md. 2012). Here, Defendants did not assert a defense of failure to mitigate, so there was no basis to provide them leave to amend a defense that they did not assert. *Cf. McGinity*, 2020 WL 1867386, at \*1 (allowing leave to amend defense of "failure mitigate"). The only defense related to mitigation that Defendants did assert—that Strickland's "alleged damages must be set off by *any amounts earned in mitigation*," ECF No. 127, at 1—failed as a matter of law. *See Haley Paint Co.*, 279 F.R.D. at 337 (striking legally insufficient defense "with prejudice"). Thus, the Court was right not to grant Defendants leave to amend. Contrary to Defendants' assertions, the Court's grant of the Motion to Strike does not authorize them to belatedly raise new defenses that were not timely asserted. *See* ECF No. 166, at 2–3.

## II. Defendants failed to show good cause for their belated motion to amend.

"After the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."

4

*Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).  Defendants have made no showing of good cause to amend their responsive pleading several months after the applicable deadlines passed.  *See* ECF No. 166, at 2–3.  This, alone, is reason to deny their motion to amend.

### A.  A party must show good cause to amend pleadings once the applicable deadline has passed.

When a party files a motion to amend pleadings "outside the period prescribed by the Court's Scheduling Order, . . . two rules are implicated: FRCP Rule 15(a)(2), which instructs the Court to freely grant leave to amend when justice so requires, and FRCP Rule 16(b)(4), which warns that the scheduling order may be modified 'only for good cause.'"  *United States v. Hartford Accident & Indem. Co.*, No. CV JKB-14-2148, 2016 WL 386218, at *4 (D. Md. Feb. 2, 2016).  Accordingly, "[o]nce the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a)."  *Id.* (citation omitted).  If the moving party fails to satisfy Rule 16(b), the inquiry ends, as "there is no cause" to address Rule 15(a) considerations.  *Nourison Rug Corp.*, 535 F.3d at 299.

As the Fourth Circuit has explained, the good cause standard must be satisfied because "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16."  *Id.* at 298.  To show good

5

cause, the moving party must "show that the deadlines cannot reasonably be met despite the diligence of the party needing an extension." *Remediation Products, Inc. v. Adventus Americas Inc.*, No. 307CV00153-RJC-DCK, 2009 WL 101692, at *1 (W.D.N.C. Jan. 8, 2009) (citation omitted). "The Court must focus on the reasons the movant has given for his delay instead of the substance of the proposed amendment." *Id.* (citation and quotation marks omitted). "The burden for demonstrating good cause rests on the moving party." *Hartford Accident & Indem. Co.*, No. CV JKB-14-2148, 2016 WL 386218, at *5. "*If that party was not diligent, the inquiry should end*." *Id.* (citation omitted).

### B. Defendants have shown no good cause for their months-long delay in seeking to amend their answer.

The Court ordered Defendants to file their Answer by July 29, 2022. *See* Status Conf. Tr. 5, ECF No. 129.[1] Under Fed. R. Civ. P. 15, Defendants had 21 days, or until August 19, 2022, to amend their Answer as of right. *See* Fed. R. Civ. P. 15(1)(a)(A) ("[A] party may amend its pleading once as a matter of course within 21 days after serving it."). Though the Court did not set a specific deadline for amendments to pleadings, the parties stipulated to a deadline of September 6,

---

[1] Defendants' Answer was due on July 5, 2022, but the Court granted them additional time to file their Answer after the deadline had passed. *See id.* The Court did not reduce its order to writing as required by Rule 79. *See* Entry Order Dated September 15, 2022 (minute order memorializing orders from July 14, 2022 status conference, but not Court's order granting Defendants additional time to file their Answer after the deadline passed).

2022.  ECF No. 132, at 6 ("Parties' Joint Proposal: Except for good cause shown, amendment of pleadings or joinder of parties completed by **September 6, 2022.**"); *see* Fed. R. Civ. P. 16(b), Advisory Comm. Notes (1983) (requirement to "limit the time" to amend pleadings "assures that at some point . . . the pleadings will be fixed").  That stipulation is binding on the parties.  *See CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999) ("Because stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent.").  Thus, Defendants had until September 6, 2022, at the latest, to amend their Answer.

Defendants have failed to provide any basis for their months-long delay in seeking to amend their Answer after the applicable deadlines had passed.  To the contrary, the record shows there is no good cause for the delay.  Defendants were aware of the facts on which they are relying for their asserted defense for more than two-and-a-half years, but simply failed to assert that defense in their Answer. *See Faulconer v. Centra Health, Inc.*, 808 Fed. Appx. 148, 152 (4th Cir. 2020) (unpub.) ("If the moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party cannot establish good cause under Rule 16.").  They delayed in seeking to amend their Answer even after they were on notice that they had not asserted a defense of failure to mitigate.

7

### 1. Defendants have been aware of the facts purportedly supporting their proposed defense since at least May 20, 2020, more than two-and-a-half years ago.

Defendants base their newly proposed affirmative defense on their allegation that "Plaintiff has pursued work as a solo practitioner specializing in state court-appointed criminal appeals when higher-paying positions were and are available." ECF No. 166, at 4. But Defendants have been aware that Strickland intended to pursue court-appointed work as a solo practitioner since at least May 20, 2020, when she provided her initial disclosures. In her initial disclosures, which Defendants publicly filed on July 27, 2020, Strickland stated: "Given the manner in which Plaintiff's departure from the FDO has damaged her professional reputation, her professional references, and future job prospects, Plaintiff's next best employment in her calling for indigent defense is state court-appointed work, which pays substantially less than Plaintiff's job with the FDO and offers no benefits." ECF No. 57-1, at 10. She continued:

> Beyond the shame, humiliation, and emotional anguish [Defendants'] betrayal has caused, these events have forever shaken Plaintiff's belief in herself, her ambition, and her ability to progress in a male-dominated legal profession. They have caused her trauma and fear that she will be harassed and victimized by other employers—a significant factor in her decision to become a solo practitioner.

8

*Id.* at 13–14 (with partial redaction removed).[2]  These facts provided the basis for Strickland's lost earnings calculation, *see id.* at 10–11, 15, which she was required to provide in her initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii).  *Id.* (requiring "a computation of each category of damages claimed by the disclosing party"); *see also* Fed. R. Civ. P. 26, Advisory Comm. Notes (1993) ("duty to disclose" information exists so that parties can "prepare for trial or make an informed decision about settlement").  Thus, Defendants were plainly aware of Strickland's ambition to become a solo practitioner specializing in court-appointed indigent defense work since at least May 20, 2020.

Further, Strickland's work in court-appointed indigent defense has been repeatedly highlighted in the parties' filings since May 20, 2020.  In her summary judgment motion, filed on August 17, 2020, Strickland filed a sworn declaration stating: "My next best employment is in court-appointed indigent appellate defense work.  I have been accepted to the state indigent appellate roster and, after completing required training, I anticipate taking cases as soon as possible." Plaintiff's Decl. ¶ 10, ECF No. 60-2.

---

[2] Defendants substantially redacted the Initial Disclosures in their filing, including by redacting the names of certain judiciary officials who were involved in the allegations in the complaint.  *See* ECF No. 57-1; *but see* ECF No. 135, Ex. B (Defendants' argument that "the Court has not ordered any information to be sealed in this case" aside from allowing the pseudonym).

9

Following remand from the Fourth Circuit, Strickland again discussed her court-appointed work in her motion for preliminary injunction ("PI"), filed on July 27, 2022:

> I have continued to pursue my passion for indigent criminal defense to the best of my ability. I am a solo practitioner specializing in state court-appointed criminal appeals. Following my constructive discharge, I was accepted to the state indigent appellate roster and began taking cases after completing the required training. Currently, I have 13 cases pending in various stages of appeal before the North Carolina appellate courts. I was also accepted to the Fourth Circuit Criminal Justice Act panel but, given the ethics advice I received, as well as Defendants' conduct towards me during this litigation, I believe it would be inappropriate to take Fourth Circuit cases.

Plaintiff's Decl. ¶ 13, ECF No. 125-2.  As these filings illustrate, Defendants had ample notice of the facts purportedly supporting their defense of "failure to mitigate" before they filed their Answer on July 29, 2022.  *See* ECF No. 127. Nonetheless, Defendants failed to timely assert that defense.

### 2. Defendants' post-Answer conduct further demonstrates a lack of diligence.

Defendants' actions after filing their Answer further demonstrate a lack of diligence.  Defendants could have amended their Answer without seeking leave of Court until August 19, 2022, *see* Fed. R. Civ. P. 15(a)(1)(A), and they had until September 6, 2022 to amend their Answer per the parties' stipulation, *see* ECF No. 132, at 6.  But they failed to timely amend their Answer, despite being on notice of

10

the relevant facts.  Their failure is even more egregious because Strickland repeatedly pointed out the deficiencies in their Answer, but they still failed to amend it.

First, in her Motion to Strike, filed on August 15, 2022, Strickland explained that Defendants had not asserted a defense based on failure to mitigate.  ECF No. 133-1, at 3.  Because Strickland filed her Motion to Strike early (it was not due until August 19, 2022, per Fed. R. Civ. P. 12(f)(2)), Defendants had nearly a week to amend their Answer to correct the deficiency without seeking leave of Court. *See* Fed. R. Civ. P. 15, Advisory Comm. Notes (2009) (noting that purpose of rule is to "force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion").  Defendants failed to do so.

Second, on August 22, 2022, Defendants argued in their response to Strickland's PI motion that she had "fail[ed] to mitigate damages," even though they had not asserted failure to mitigate as an affirmative defense.  ECF No. 135, at 18.  In her reply in support of the PI, filed on September 2, 2022, Strickland again explained that Defendants "did not plead failure to mitigate damages as an affirmative defense."  ECF No. 139, at 24.  These filings demonstrate that Defendants were fully aware that they intended to assert failure to mitigate as a defense.  Though Defendants were still within the stipulated September 6, 2022

11

deadline for amendments to pleadings, *see* ECF No. 132, at 6, they did not move to amend their Answer to assert that defense.

Third, Strickland explained again in her reply in support of her Motion to Strike, filed on September 6, 2022, that Defendants did not assert a "valid defense" of "failure to mitigate damages." ECF No. 142, at 7. Defendants still did not move to amend their Answer.

The Court granted the Motion to Strike on September 21, 2022. *See* Entry Order Dated September 21, 2022. At this point, Defendants were plainly aware that they would need to amend their Answer to assert failure to mitigate as an affirmative defense. Even still, Defendants waited more than two months after the Court's ruling, until November 22, 2022, to file their motion. ECF No. 166.

These facts show a lack of diligence on Defendants' part. A party who knows of the facts supporting a claim or defense but "simply failed to raise it" in a pleading "cannot establish good cause." *Faulconer*, 808 Fed. Appx. at 152; *see Remediation Products, Inc.*, 2009 WL 101692, at *2 (denying motion to add parties where Defendants "were aware of [the] potential parties early in the litigation"); *Hartford Accident & Indem. Co.*, 2016 WL 386218, at *6 (denying motion to amend when the facts supporting a defense were "well within [the party's] knowledge long before" its filing of the motion). Defendants' lack of diligence is reason enough to deny their motion to amend, without addressing the

12

Rule 15 standard. *See Nourison Rug Corp.*, 535 F.3d at 298 (upholding denial of motion to amend under Rule 16); *Hartford Accident & Indem. Co.*, 2016 WL 386218, at *5 ("*If that party was not diligent, the inquiry should end.*" (citation omitted)).

## III. Defendants fail to meet the requirements for amendment under Rule 15.

If the Court does consider the Rule 15 standard, it should still deny the motion to amend. "Under Rule 15(a)(2), leave to amend should be freely given, however it is not unbounded." *Tri-Realty Co. v. Ursinus Coll.*, No. CV 11-5885, 2015 WL 8312660, at *2 (E.D. Pa. Dec. 9, 2015) (citation omitted). "A district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.* (citation omitted). While a party's "mere delay" is not a sufficient justification for denial, "evidence of dilatoriness" or "resulting prejudice" is. *Simmons v. Justice*, 196 F.R.D. 296, 297 (W.D.N.C. 2000).

### A. Undue delay

Under Rule 15, a court may deny a motion to amend when there is undue delay in the filing of an amended pleading. *Calderón–Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend.").

"[I]n assessing whether delay is undue, a court will take account of what the movant 'knew or should have known and what he did or should have done.'" *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377-FDS, 2016 WL 393215, at *9 (D. Mass. Feb. 1, 2016) (citation omitted); *see Simmons*, 196 F.R.D. at 297 (denying motion to amend where, *inter alia*, defendant "fail[ed] to explain the five-month delay in moving to amend"); *cf. High Voltage Beverages, L.L.C. v. Coca-Cola Co.*, No. 3:08-CV-367, 2010 WL 2342458, at *2 (W.D.N.C. June 8, 2010) (finding no undue delay in party's "prompt completion" of reviewing evidence, researching law, and determining viability of claims "in just two months" after receiving thousands of pages of new material in discovery).

For the same reasons that Defendants failed to show good cause under Rule 16, they have unduly delayed in seeking amendment under Rule 15. *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 357 (S.D.N.Y. 2020) (under Rule 15, "a court 'may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.' " (citation omitted)). Defendants have been aware of the facts purportedly supporting their affirmative defense for more than two-and-a-half years. Yet, Defendants did not assert that affirmative defense in their Answer or move to assert it within the applicable deadlines for amending pleadings. Defendants also failed to timely

14

remedy the deficiencies in their Answer even after being put on notice of them through several filings by Strickland and the Court's ruling granting the Motion to Strike. These circumstances go beyond "mere delay," as they present "evidence of dilatoriness." *Simmons*, 196 F.R.D. at 297. Defendants wasted the time and resources of Strickland and the Court by failing to amend when it became clear that their pleaded defenses were insufficient. *Tri-Realty Co. v. Ursinus Coll.*, 2015 WL 8312660, at *3 ("Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the [party] has had previous opportunities to amend." (citation omitted)).

## B. Futility

Defendants' motion should also be denied because their proposed amendment is futile. *See Nourison Rug Corp.*, 535 F.3d at 298 (motion to amend "should be denied" where the "amendment would be futile"). Defendants have failed to allege facts that "plausibly suggest a cognizable defense." *Racick*, 270 F.R.D. at 234. Instead, they have made a "a bald assertion with no accompanying facts—much less facts that would permit the Court to draw a reasonable inference that would suggest a cognizable defense." *McGinity*, 2020 WL 1867386, at *1.

### 1. The defense is improperly pleaded.

Defendants' proposed affirmative defense is improperly pleaded, like their other improper defenses that were previously stricken. *Drapkin v. Mjalli*, 441 F.

Supp. 3d 145, 150 (M.D.N.C. 2020) ("An 'amendment to add an affirmative defense is futile when 'the proposed affirmative defense is not a defense to liability,' that is, when 'the proposed affirmative defense lacks a sound basis in law.'" (citation omitted)). Defendants' proposed defense alleges that Strickland "voluntarily departed from the Federal Defender's Office and thereby relinquished the pay and benefits associated with her position." ECF No. 166, at 4. But this allegation is not properly asserted as the basis for a defense of failure to mitigate. A defense of failure to mitigate focuses on whether the plaintiff exercised reasonable diligence to secure "*other* suitable employment" *after* a discriminatory discharge. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982) (emphasis added). Defendants' allegation that Strickland "voluntarily departed" from the FDO, ECF No. 166, at 4, is plainly not relevant to whether she secured "*other* suitable employment" *after* leaving the FDO, *Ford Motor Co.*, 458 U.S. at 231 (emphasis added). Rather, the allegation merely disputes Strickland's claim that the FDO, as her employer, is liable for her discriminatory constructive discharge. *Cf. DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (plaintiff's allegations that employer's "allegedly discriminatory policy" "was the but-for cause" of her resignation "would be redressed by an award of damages or reinstatement"). Because Defendants' allegations are not properly pleaded as the basis of a defense of failure to mitigate, their proposed amendment should be rejected as futile.

## 2.    The defense is conclusory.

Defendants failed to plead their allegation of "failure to mitigate her losses" with particularity. ECF No. 166, at 4. An affirmative defense must be pleaded in a manner that is "intelligible, gives fair notice, and is plausibly suggested by the facts." *Racick*, 270 F.R.D. at 234 (citation omitted). "At a minimum, the facts asserted in an affirmative defense, and the reasonable inferences that may be drawn from those facts, must plausibly suggest a cognizable defense." *Id.* (citation omitted). Thus, courts in this Circuit have stricken a defense of "failure to mitigate" where the defendant failed "to provide any factual basis that would allow the inference that this defense is plausible." *Id.* at 237; *McGinity*, 2020 WL 1867386, at *1 (striking defense of "failure to mitigate" that was based on "a bald assertion with no accompanying facts").

Defendants failed to provide Strickland "fair notice" of the basis for their asserted defense. *Racick*, 270 F.R.D. at 234. Aside from vaguely asserting that "there were and are positions available that are substantially equivalent to Plaintiff's federal employment," Defendants have failed to plead any facts alleging what "substantially equivalent" positions were available that she failed to pursue. ECF No. 166, at 4; *cf. Francisco v. Verizon S., Inc.*, No. 3:09CV-737, 2010 WL 2990159, at *3 (E.D. Va. July 29, 2010) (defense of failure to mitigate was sufficient where Defendant alleged that plaintiff "did not apply for a single

17

Verizon job within the thirty-day window after being notified that she had been selected for a Reduction in Force and before being taken off the payroll"). Defendants have no justification for not alleging these facts with particularity since, as judiciary officials, they obviously have access to information regarding what "substantially equivalent" positions were supposedly available. ECF No. 166, at 4. Absent the requisite particularity, Strickland has no way of knowing what those "substantially equivalent" positions were.

### 3. The defense is implausible.

Defendants failed "to provide any factual basis that would allow the inference" that their asserted "defense is plausible." *Racick*, 270 F.R.D. at 237; *see also Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F. Supp. 2d 357, 364 (D. Md. 2004) ("An affirmative defense will be stricken 'if it is impossible for the defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint.'" (citation omitted)). The mitigation inquiry must account for plaintiff's "economic and personal circumstances." *U.S. Equal Employment Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 149 (4th Cir. 2017). To show a failure to mitigate, an employer must prove "there were substantially equivalent jobs available in the relevant geographic area." *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 15 (1st Cir. 1999).

18

Defendants have failed to allege facts showing that a defense of failure

mitigate is plausible. There is only one federal defender office in this district, and

Defendants have never even offered reinstatement or shown that reinstatement is

viable. *See* ECF No. 125-1, at 18–22. The new Defender, John Baker, has allowed

the FDO employee who sexually harassed Strickland to remain employed in a

supervisory position. *See id.* Further, Strickland has been advised by the ethics

department of the North Carolina Bar that because she brought a legal complaint

against the Fourth Circuit as her former employer, she cannot practice law before

the Fourth Circuit unless "all the parties and the court" consent. ECF No. 125-2,

Ex. C. This ethics advice, which has no end date, obviously imposes substantial

restrictions on her ability to obtain comparable employment in the Fourth Circuit.

Thus, Defendants have offered no plausible factual basis for their proposed

defense. *Cf. Nourison Rug Corp.*, 535 F.3d at 299 (upholding denial of motion to

amend where factual basis for the amendment was "highly questionable"). Even if

the Court were to allow the amendment, it would be subject to a motion to dismiss

or for judgment as a matter of law.

## C.    Prejudice

Strickland would be prejudiced if Defendants were allowed to belatedly

assert their legally insufficient defense. When a defendant "toss[es] the defense

into the case without any basis for it," that naturally "compel[s] plaintiff to commit

time and resources to it during discovery." *McGinity*, 2020 WL 1867386, at *1;

*see also Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 651 (D. Kan. 2009)

(pleader must show that she "at least has some valid premise for asserting the

defense and is not merely tossing it into the case like a fish hook without bait").

That is why courts strike conclusory and improperly pleaded affirmative defenses:

such "legally insufficient" defenses "prejudice" plaintiffs by "result[ing] in

increased time and expense of trial, including the possibility of extensive and

burdensome discovery." *Staton v. N. State Acceptance, LLC*, No. 1:13-CV-277,

2013 WL 3910153, at *2 (M.D.N.C. July 29, 2013) (citation omitted).

Because Defendants failed to plead their proposed defense with particularity,

Strickland would need to spend considerable time and resources in discovery

attempting to understand the basis of the defense. *Smithfield Foods Inc. v. United

Food & Commercial Workers Int'l Union*, 254 F.R.D. 274, 278 (E.D. Va. 2008)

("If an amendment requires the opponent 'to engage in significant new

preparation,' or results in 'added expense and the burden of a more complicated

and lengthy trial,' prejudice may be found.").  For example, if Defendants contend

that Strickland's prior attempts to seek other judiciary employment are relevant to

their alleged defense, then she would need to seek discovery from Article III

judges and judiciary officials who were involved in those attempts to seek

employment, as named in her initial disclosures. *See* ECF No. 57-1.  Such an

effort would be outside of the claims and defenses currently presented in this case. And it would be especially prejudicial given the short window that remains to complete discovery and Defendants' resistance to discovery thus far. Strickland has basic discovery requests—including for the EDR investigation report and record of disciplinary action on which Defendants relied in their summary judgment response, filed more than two years ago—that remain pending since she served them nearly five months ago, on August 10, 2022. Strickland requested that the Court order Defendants to disclose the documents nearly three months ago, on September 2, 2022, but the Court denied her request without explanation. *See* ECF No. 151. As a result, Strickland still has not even seen the EDR investigation report into her EDR claims. Given the difficulties Strickland has had in obtaining basic information from Defendants, it would be prejudicial to require her to divert time and resources towards a poorly pleaded, conclusory, and implausible defense that Defendants unjustifiably delayed for months in asserting.

### D. Bad Faith

Defendants' motion to amend should be denied because the responses in their Answer show bad faith. Defendants contend that their motion is made in good faith because they are "taking this opportunity to revise their response to allegations in paragraph 140 of the Complaint based on their review of additional evidence in this matter." ECF No. 166, at 3. Strickland does not oppose allowing

Defendants to amend their Answer to admit, as they now do, that "the Defender used a marriage metaphor when discussing the relationship" between Strickland and the alleged harasser and told her that she "needed to 'compromise' and 'meet in the middle.'"  ECF No. 166-1, at 20.  But Strickland respectfully submits that if Defendants are allowed to amend their Answer to correct paragraph 140, they should also be required to correct many other misrepresentations in their Answer. Indeed, the misrepresentations are so extensive that it appears that Defendants chose to deny or show willful blindness to material facts without reasonable investigation.  *See, e.g.*, ECF No. 139, at 23 (Defendants denied that Strickland provided a witness list to the Investigator, even though her email sending the Investigator her witness list is part of the summary judgment record).  This approach is plainly improper, *see* Fed. R. Civ. P. 11, and it has prejudiced Strickland by requiring her to spend time and resources seeking to prove allegations that should have been admitted.  *Bright v. QSP, Inc.*, 20 F.3d 1300, 1305 (4th Cir. 1994) ("[A]dmissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions.").

The Answer contains many implausible denials or responses of "lacks knowledge or information," which materially prejudice Strickland's case:

James Ishida (EDR Coordinator/Circuit Executive)

- Defendants deny that "[t]he EDR Coordinator acknowledged that, before the Defender's hiring, there were a lot of 'serious issues' in the FDO and the judges

22

were 'mindful' of the need to change the office culture. He said that Roe's concerns were 'well-founded.'" Complaint ¶ 264. But in a recording of that conversation, the EDR Coordinator stated: "I agree, it sounded like it was a really kind of troubled office before, the judges had expressed a lot of concern. There was a lot of serious issues that were going on in that office. . . . And I do know from the stories I've heard that the judges were very mindful of, okay, we need change and we need good change and we need to change the culture first and foremost. . . . Yeah, I mean, your concerns I think are well-founded." *See* Audio File 1 (available with the Court).[3]

- Defendants deny that the EDR Coordinator "told Roe that it was not 'helpful' for her to have reported her complaints to the AO. He said that when that happens, 'barriers go up,' walls go up, and people are 'on guard.'" Complaint ¶ 266. But in a recording of that conversation, the EDR Coordinator stated: "I just told [General Counsel] Sheryl [Walter] that in this case it may not be entirely helpful [to go to the AO] because we're now dealing at arms length instead of trying to communicate issues and concerns directly. And one of the things I mentioned to Sheryl was . . . when that happens, the barriers go up, the walls go up, people are on guard." *See* Audio File 2.

- Defendants deny that the EDR Coordinator "emphasiz[ed] that the Chief Judge was 'taken aback' by Roe's request to disqualify the Defender because he wasn't 'expecting it.'" Complaint ¶ 285. But in a recording of that conversation, the EDR Coordinator stated: "When he saw the disqualification, . . . he was a little kind of taken aback by that. Not that he was adverse, but he just wasn't expecting that." *See* Audio File 3.

- Defendants deny that "[t]he EDR Coordinator explained that, early on, he and the Chief Judge had discussed the motion [to disqualify the accused Defender], and agreed that disqualification would be 'premature' without a finding against the Defender." Complaint ¶ 370. But in a recording of that conversation, the EDR Coordinator stated: "Well I think at the time it was raised and I had a conversation with Judge Gregory about it, I think the initial sense was it's premature at this point without a finding because if we disqualify Tony now then there's really no one that represents the office." *See* Audio File 4.

---

[3] All audio files will be filed conventionally with the Court and provided to opposing counsel.

- Defendants deny that the EDR Coordinator "seemed unsure [why her request to disqualify was denied]. At first, he said the Chief Judge had made a decision *before* the report came out, but then he said the decision was made *after* the report came out." Complaint ¶ 396. But in a recording of that conversation, the EDR Coordinator stated: "Judge Gregory had told me his decision before the report came out. . . . No, I'm sorry, I'm getting mixed up. . . . I think the report had come up because that's why we were waiting on Caryn's request because we could not make that determination until we actually saw the report. . . . And so we waited for the report and we also reached out to the AO's General Counsel's Office with their input as well. . . . I would wait for the order to come out because the order's gonna speak for itself." *See* Audio File 5.

- Defendants deny that the EDR Coordinator "admitted that the EDR process is not 'perfect.'" Complaint ¶ 399. But in a recording of that conversation, the EDR Coordinator stated: "I mean, I think we can agree that the process is not perfect." *See* Audio File 6.

- Defendants deny that the EDR Coordinator "explained that no decisions about disciplinary action would be made until *after* Roe's EDR proceeding was over, perhaps after a final hearing." Complaint ¶ 400. But in a recording of that conversation, the EDR Coordinator stated: "And so what we've done in the past is, we have done what we are contemplating doing here, and that is you hold the judicial conduct piece of this in abeyance and you let the EDR piece move forward." *See* Audio File 7.

## Heather Beam (EDR Investigator/HR Specialist)

- Defendants claim that the "HR Specialist was prevented from talking to anyone outside of the Federal Defender, the First Assistant, and Plaintiff by the terms of Plaintiff's confidentiality agreement." Answer ¶ 317. But in a recording of the conversation, the HR Specialist stated: "[I]f you waived the confidentiality, what that means is that your claim still has to be confidential. Okay. I can only share it with those that are on a need to know basis, which would be like James Ishida would get a copy of my report. Most likely he would share with Chief Judge Gregory and probably wants to be kept in the loop. And then I would need to talk with JP Davis and Mr. Martinez since they're involved in the claim. And if there were any other witnesses that you want me to talk to, I can. But other than that, that would be the extent of my communication about this matter to anybody." In addition, she stated: "And if there are any other people that you

24

would like me to talk to . . . think about it over the weekend, send me an email on Tuesday and just let me know if there's anyone else that you would like me to talk to. . . . And I'm happy to go to whatever length I need to go to get this investigated completely and get you a resolution that's fair." *See* Audio Files 8, 9.

- Defendants deny that "[t]he HR Specialist explained that she had been focusing on the sexual harassment claims regarding the First Assistant, as well as how the Defender 'handled' them." Defendants claim to "lack knowledge or information sufficient to admit or deny" that "[s]he stated that if there is a 'true feeling of retaliation,' then that would have to be investigated 'separately.' Complaint ¶ 318. But in a recording of that conversation, the HR Specialist stated: "Well, there may have to be a separate investigation done then under Tony's conduct because I really been focusing on the sexual harassment and intimidation claim with JP as well as how Tony handled it. . . So if there's a true feeling of retaliation, then I think that might need to be investigated separately." *See* Audio File 10.

Ed Smith (Mediator)

- The Mediator was recorded stating, regarding the Defender: "And that may be why [he didn't receive the grievance], because he is involved in what happened. But he is the decision maker." In addition: "I don't think a judge is gonna micromanage this office and tell a federal defender how to do his job and run this office. They'd be better off terminating him." *See* Complaint ¶ 415; *see* Audio Files 11, 12. Defendants failed to investigate these statements, despite having the opportunity to do so, and instead asserted conclusory denials. *See*, *e.g.*, SJ Transcript at 20 ("[w]e do not concede" Mediator's statements).

These examples are illustrative, not comprehensive. But they are enough to demonstrate Defendants' bad faith and lack of credibility.

## CONCLUSION

This Court should deny the motion to amend with prejudice.

This the 6th day of December, 2022.

Respectfully Submitted,

*/s/ Jeannie Suk Gersen*

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487
jsuk73@gmail.com

Philip Andonian
D.C. Bar No. 490792
CALEB ANDONIAN PLLC
1100 H Street., N.W., Ste. 315
Washington, D.C. 20005
Tel: (202) 953-9850
phil@calebandonian.com

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com