# EXHIBIT H

1          IN THE UNITED STATES DISTRICT COURT

2       FOR THE WESTERN DISTRICT OF NORTH CAROLINA

3

4   CARYN DEVINS STRICKLAND,     : CIVIL NO.

5            Plaintiff       1:20-cv-00066-WGY

6          vs.                 :

7   UNITED STATES, et al.,

8            Defendants     :

9   _____

10  DEPONENT:  EDWARD G. SMITH, ESQ.

11  DATE:  APRIL 20, 2023

12  TIME:  10:00 a.m.

13  LOCATION:  CLARK BOLEN

14           671 JAMESTOWN DRIVE, SUITE 206D

15           MURRELLS INLET, SC

16  REPORTED BY:  CAROL T. LUCIC, RPR, RMR

17

18

19

20

21

22   CLARK BOLEN COURT REPORTING & VIDEO CONFERENCING

23            CHARLESTON, SC  29405

24              843-762-6294

25            WWW.CLARK-ASSOCIATES.COM

```
 1              A P P E A R A N C E S

 2

 3   ON BEHALF OF THE PLAINTIFF:

 4           THOMAS, FERGUSON & BESKIND, LLP

 5           BY:  OLIVIA WARREN, ESQ.

 6                119 EAST MAIN STREET

 7                DURHAM, NC  27701

 8

 9   ON BEHALF OF THE DEFENDANT:

10           UNITED STATES DEPARTMENT OF JUSTICE

11           CIVIL DIVISION, FEDERAL PROGRAMS BRANCH

12           BY:  RACHAEL WESTMORELAND, ESQ.

13                MADELINE McMAHON, ESQ.

14                DANIELLE YOUNG, ESQ. (via Zoom)

15                KRISTIN MANNHERZ, ESQ. (via Zoom)

16                1100 L STREET, N.W.

17                WASHINGTON, D.C.  20005

18

19   PRESENT (via Zoom) COOPER STRICKLAND, ESQ.

20                     CARYN STRICKLAND, ESQ.

21

22

23

24

25
```

1                            INDEX

2

3                  EDWARD G. SMITH, ESQ.

4                     APRIL 20, 2023

5

6    EXAMINATION                                          PAGE

7    BY MS. WARREN                                        5

8    BY MS. WESTMORELAND                               124

9

10   CERTIFICATE OF REPORTER                           125

11

12                        EXHIBITS

13   NO.                                                 PAGE

14   40      Email correspondence between

15           Mr. Ishida, Mr. Smith, and

16           Ms. Strickland, 1/31/19               11

17   41      Email correspondence regarding

18           supplement to request for

19           mediation, 2/22/19 and 2/24/19       52

20   42      Email correspondence between

21           Mr. Strickland and Mr. Smith,

22           2/25/19                              58

23   43      Email correspondence between

24           Mr. Smith and Mr. Ishida, 3/20/19   106

25

1    A.    No.

2    Q.    In January of 2019 when Mr. Ishida

3  contacted you, what was your understanding of how

4  mediation worked under Chapter 10 of the EDR plan?

5    A.    My understanding is a mediator is

6  designated, and I get that designation if it's

7  appointing me or if there is somebody else

8  involved, it would go to them.  I then review

9  whatever documentation I may have.  My typical

10  procedure has really been to talk to the parties

11  separately initially anyway.  Sometimes we do end

12  up getting together eventually.

13         It's my role to see if I can settle it

14  within the confines of the remedies within the EDR

15  plan or, as in this case, I really wasn't dealing

16  with those remedies because there really wasn't a

17  remedy that fit the situation.  I was trying to see

18  if I could work out a way to send Caryn back to

19  work that was acceptable to her.

20    Q.    Do you remember if this case was

21  proceeding under the 2013 EDR plan or the 2018 EDR?

22    A.    '13.

23    Q.    The 2013?

24    A.    Well, it was proceeding under a different

25  plan than we're under now.  I don't really know the

1          A.    I was only dealing with trying to get her

2    back in the office.

3          Q.    I know you said you didn't feel there was

4    a remedy that fit that situation, and I think you

5    just said you weren't dealing with these, so what

6    remedies were you dealing with?

7          A.    There wasn't a remedy that I could utilize

8    to fit this situation.  Maybe the internal

9    investigation would fit a remedy.  That's separate

10   and apart from me.  All my authority is what is

11   given to me by the Court.  My job description is I

12   mediate civil disputes between counsel and parties.

13   I was asked to participate in the EDR as a mediator

14   because I'm a mediator.  My charge is here are your

15   remedies, mediate this case, and see if you can

16   resolve it.

17          You can read these.  None of these are

18   going to do anything in this particular case, so I

19   was trying to figure out how I was going to get

20   Caryn back in the office in such a way where she is

21   given some concessions where she's happy, and

22   that's what I did.

23          Q.    Did you tell Caryn that you were operating

24   with remedies outside of the plan?

25          A.    No.  I said I was trying to work out a way

1   Office works, so I can't answer that.  I know if

2   you're a mediator, wherever you're located you get

3   locality pay.

4        Q.   I want to talk about some of the details

5   in this case from your early meetings in January

6   before Caryn filed a supplemental request a little

7   bit later in February.

8             Did you think that it would be hard to get

9   Caryn back to the Charlotte office?



















1     A.   You have to understand I wasn't thinking

2     this through.  These are general things that

3     mediators use to try to say, hey, I don't know what

4     the motivation was.  You could be right, but it

5     could be all of these other things.  Let's figure

6     it out.  Then I go meet with Tony, and I'm hit with

7     what I'm hit with.  One reason I asked Caryn some

8     of these questions is I want her impression because

9     if I walk in and I get hit with the same thing,

10    okay, I'm not getting this resolved.  It's

11    invaluable information to me.

12    Q.   Before this mediation had you ever had any

13    training from the circuit in sexual harassment?

14    A.   No.  I have never worked on a sexual

15    harassment case in my life to my knowledge and

16    don't know the standards, don't know anything, so

17    that's another reason I couldn't weigh into this

18    because I know nothing about it.

19    Q.   Just to understand what you mean, was this

20    your first ever sexual harassment mediation?

21    A.   To my knowledge it's the only sexual

22    harassment case I have ever mediated.

23    Q.   Including the other EDR complaints?

24    A.   Correct.

25    Q.   Were you aware of whether Mr. Martinez was

1   of interest to Caryn.

2       Q.   Did you think that Caryn was pleased with

3   the result?

4       A.   She said she was.  I can only base it on

5   that.

6       Q.   On March 8 of 2019 did she tell you that

7   it felt like a very nicely packaged constructive

8   discharge?

9       A.   I seem to remember reading that, but my

10  memory is it was before she had interviewed with

11  Judge Floyd and taken it.  My memory is it was

12  brought up when we were talking about possible

13  options, but I do recall that being said, yes.

14      Q.   So you recall that she communicated she

15  felt a clerkship would be a constructive discharge?

16      A.   Right, something to that effect.

17      Q.   Did she tell you that she had to give up a

18  career that she wanted because she was harassed and

19  retaliated against?

20      A.   I have a memory that she said she felt

21  like that, but my understanding and my belief of

22  what was going to occur is that she was going to

23  take the clerkship.  There was a possibility for

24  the Western District of Virginia to get her into a

25  Federal Defender's Office, so I didn't think that

```
 1   CERTIFICATE OF REPORTER
     STATE OF SOUTH CAROLINA
 2   COUNTY OF CHARLESTON

 3

 4          I, Carol T. Lucic, Registered Professional
     Reporter and Notary Public for the State of South
 5   Carolina at Large, do hereby certify that the
     witness in the foregoing deposition was by me duly
 6   sworn to testify to the truth, the whole truth, and
     nothing but the truth in the within-entitled cause;
 7   that said deposition was taken at the time and
     location therein stated; that the testimony of the
 8   witness and all objections made at the time of the
     examination were recorded stenographically by me
 9   and were thereafter transcribed by computer-aided
     transcription; that the foregoing is a full,
10   complete, and true record of the testimony of the
     witness and of all objections made at the time of
11   the examination; and that the witness was given an
     opportunity to read and correct said deposition and
12   to subscribe the same.

13
            Should the signature of the witness not be
14   affixed to the deposition, the witness shall not
     have availed himself/herself of the opportunity to
15   sign or the signature has been waived.

16
            I further certify that I am neither
17   related to nor counsel for any party to the cause
     pending or interested in the events thereof.
18

19          Witness my hand, I have hereunto affixed
     my official seal on May 2, 2023, at Charleston,
20   Charleston County, South Carolina.

21
                    Carol T. Lucic
22                  NCRA MERIT REPORTER
                    REGISTERED PROFESSIONAL REPORTER
23

24
     My Commission expires:  November 27, 2027
25
```