# EXHIBIT K

```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE WESTERN DISTRICT OF NORTH CAROLINA

 3                      ASHEVILLE DIVISION

 4    _____

 5    CARYN DEVINS STRICKLAND,   )

 6                Plaintiff,     )

 7                               )

 8    -vs-                       )  Case No. 1:20-cv-00066

 9                               )

10    UNITED STATES, et al.,     )

11                Defendants.    )

12    _____

13

14                  *** CONFIDENTIAL ***

15              SUBJECT TO PROTECTIVE ORDER

16                      ECF NO. 183

17

18            DEPOSITION OF JAMES N. ISHIDA

19              9:05 a.m. to 5:47 p.m.

20                  April 13, 2023

21                  Richmond, Virginia

22

23

24    Job No. 49661

25            REPORTED BY:  Julia A. Bammel, RPR, CSR
```

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 2 of 28

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

info@cavalier-reporting.com
(800) 972-1993

1          Deposition of JAMES N. ISHIDA, taken and

2     transcribed on behalf of the Plaintiff, by and before

3     Julia A. Bammel, RPR, CSR, Notary Public in and for the

4     Commonwealth of Virginia at large, pursuant to the

5     Federal Rules of Civil Procedure and by Notice to Take

6     Deposition, commencing at 9:05 a.m., April 13, 2023, at

7     140 Virginia Street, Richmond, Virginia.

8

9

10

11     APPEARANCES OF COUNSEL:

12

13          HARVARD LAW SCHOOL

14          1563 Massachusetts Avenue

15          Hauser Hall 510

16          Cambridge, Massachusetts  02138

17          (617) 496-5487

18          jsuk73@gmail.com

19      BY:  JEANNIE SUK GERSEN, ESQUIRE

20          JACOB GERSEN, ESQUIRE

21          Counsel on behalf of the Plaintiff

22

23

24

25

Case 1:20-cv-00066-WGY  Document 243-12  Filed 06/01/23  Page 3 of 28

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

info@cavalier-reporting.com
(800) 972-1993

```
 1    APPEARANCES OF COUNSEL CONTINUED:

 2


 3


 4          THOMAS, FERGUSON & BESKIND, LLP

 5          119 East Main Street

 6          Durham, North Carolina  27701

 7          (919) 682-5648

 8          warren@tfblawyers.com

 9    BY:  OLIVIA WARREN, ESQUIRE

10          Counsel on behalf of the Plaintiff

11


12


13


14          LAW OFFICE OF COOPER STRICKLAND

15          P.O. Box 92

16          Lynn, North Carolina 28750

17          (828) 817-3703

18          cooper.strickland@gmail.com

19          COOPER J. STRICKLAND, ESQUIRE

20          (Appearing Via Remote Videoconference)

21          Counsel on behalf of the Plaintiff

22


23


24


25
```

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 4 of 28
www.cavalier-reporting.com        Cavalier Reporting & Videography        info@cavalier-reporting.com
(434) 293-3300                    Reported by Julia A Bammel                       (800) 972-1993

```
 1   APPEARANCES OF COUNSEL CONTINUED:

 2

 3       UNITED STATES DEPARTMENT OF JUSTICE

 4       Civil Division

 5       1100 L Street NW

 6       Washington, District of Columbia  20005

 7       (202) 305-7664

 8       joshua.kolsky@usdoj.gov

 9       rachael.westmoreland@usdoj.gov

10       madeline.m.mcmahon@usdoj.gov

11    BY: JOSHUA M. KOLSKY, ESQUIRE

12       RACHAEL LYNN WESTMORELAND, ESQUIRE

13       MADELINE MCMAHON, ESQUIRE

14       Counsel on behalf of the Defendants

15

16       ADMINISTRATIVE OFFICE OF THE U.S. COURTS

17       Office of General Counsel

18       1 Columbus Circle NE

19       Washington, District of Columbia 20002

20       (202) 502-1761

21       kristin-mannherz@ao.uscourts.gov

22    BY: KRISTIN P. MANNHERZ, ESQUIRE

23       Counsel on Behalf of the Federal Judiciary

24

25   ALSO PRESENT:  Caryn Strickland (via videoconference)
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1            T A B L E   O F   C O N T E N T S

2

3    WITNESS:  JAMES N. ISHIDA

4       Examination by Ms. Suk Gersen................. 7

5       Examination by Mr. Kolsky......................233

6

7

8

9

10                       E X H I B I T S

11

12   Plaintiff's Exhibit 1
        Notice of Deposition........................... 7
13
     Plaintiff's Exhibit 2
14      E-mail thread
        US00000615 – US00000618....................... 66
15
     Plaintiff's Exhibit 3
16      E-mail thread
        US00002558 – US00002561....................... 94
17
     Plaintiff's Exhibit 4
18      E-mail thread
        US00005359 – US00005360.......................102
19
     Plaintiff's Exhibit 5
20      E-mail thread
        US00000614....................................103
21
     Plaintiff's Exhibit 6
22      E-mail thread
        US00001390 – US00001391.......................128
23
     Plaintiff's Exhibit 7
24      E-mail thread
        US00001382 – US00001383.......................138

25

www.cavalier-reporting.com          Cavalier Reporting & Videography          info@cavalier-reporting.com
(434) 293-3300                          Reported by Julia A Bammel                          (800) 972-1993

```
 1                  Who is Cait Clarke?

 2      A     Oh, is Cait Clarke part of this e-mail?

 3  Maybe I'm looking at the wrong e-mail.

 4      Q     Later on in the page.  Sorry.  Sorry.  Let's

 5  move to -- we're going to get to that one later.

 6            (Plaintiff's Exhibit 5 marked.)

 7            THE WITNESS:  Okay so I'm looking at

 8  Exhibit 5?

 9  BY MS. SUK GERSEN:

10      Q     Yes.

11      A     Okay.  I'm sorry.  Can --

12      Q     US-614.  So can you walk us through what

13  this e-mail -- what is happening in this e-mail?

14      A     Okay.  You know, I don't recall this, and

15  even looking at it, it just doesn't ring a bell.  But

16  in just kind of reconstructing what I'm reading, it

17  looks like Cait Clarke, who was the chief of the

18  Defender's Services Office at the Administrative Office

19  is telling Nancy Dunham, you know, what you see in the

20  e-mail, and I'm commenting on that.

21            And I will confess, I was -- I think I was a

22  little irritated by the fact that there were all these

23  AO employees weighing in and calling Tony and telling

24  him what he needed to do and what he needed to not do,

25  and I just -- I just felt that that -- I don't think
```

www.cavalier-reporting.com      Cavalier Reporting & Videography      info@cavalier-reporting.com
(434) 293-3300      Reported by Julia A Bammel      (800) 972-1993

1    they knew there was an ongoing proceeding, so I think

2    they felt, you know, free to do that, but I was a

3    little -- I think I was -- I think it's fair to say I

4    was a little irritated at what was going on and how it

5    could impact the proceedings that we were handling at

6    the time.

7        Q     So you say in this e-mail, "I wonder if

8    she's going to walk back her statement and say she only

9    insisted Caryn telework while this is being worked

10   out."

11            Who is "she"?

12       A     I think I was referring to Cait Clarke, and

13   if I recall correctly, I think Cait had essentially

14   ordered Tony to do certain things involving the

15   plaintiff, and, you know, I'm just thinking telework

16   might have been one of those.

17       Q     What -- why did you say, "I wonder if she's

18   going to walk back her statement"?

19       A     Well, instead of coming across as, "I'm

20   ordering you to do that," she might say, "Well, I was

21   just advising Tony to do that."

22            But the way I understood it from

23   Mr. Martinez was he was getting directives from the AO

24   saying, "You have to do this" and "You have to do

25   that."

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1        Q      And at the time, you believed that

2   Mr. Martinez was accurately describing what happened?

3        A      Again, this was based on what he had told

4   me, and I don't know if this was before or after the

5   conversation I had with Lee Ann Bennett that really

6   clarified things for me.

7        Q      So how did Lee Ann Bennett -- how did

8   talking to her clarify things?

9        A      Well, again, she made those two takeaway

10  points that, "Oh, I didn't know that these

11  conversations were going on, and I didn't know that the

12  Fourth Circuit had ongoing matters involving this

13  case."

14       Q      Did you -- were you worried that the AO

15  employees were interfering with the EDR investigation?

16       A      In the sense that they were ordering Tony to

17  do certain things, which I thought was not appropriate

18  given that we've already got proceedings that were

19  designed to address the concerns that Plaintiff was

20  raising.

21       Q      What were the proceedings that were already

22  ongoing?

23       A      Well, we had the Chapter IX proceeding that

24  the investigation was going, and so we -- I mean, my

25  recollection was the AO was asking Tony to do certain

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 9 of 28

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1    things before even the outcome or what was known -- you

2    know, the outcome of the investigation of what had

3    actually happened.  They were just ordering him to take

4    preemptive action and really, you know, that -- I felt

5    that was inappropriate.

6        Q    And when you say that the proceeding was

7    already ongoing, do you mean that by then you had

8    already appointed Heather Beam?

9        A    Well, again, I can't remember at what point

10   that happened, but I'm looking at the date, and this is

11   August 15th.  I mean, by this time, we were -- we

12   were all -- you know, I had already heard about the

13   plaintiff's concerns and complaints, and so -- and

14   that -- and, again, I can't remember at what point I

15   got that, but that would have kicked off Chapter IX,

16   the report of wrongful conduct, which I think that had

17   already started when this was -- you know, when this

18   was -- the AO's involvement was coming to light.

19       Q    So was your worry that if the AO were

20   involved, that would be prejudging the outcome before

21   the investigation was complete?

22       A    I think that's fair to say.

23       Q    Once Tony informed you of the concern about

24   the AO and after you had informed the Chief Judge, why

25   were you continuing to communicate with Tony about

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 10 of 28

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1    happened after this exchange.  Certainly I could see

2    raising that as part of his deliberations.

3         Q    So you said before that Chief Judge Gregory

4    denied the request for qualification.

5         A    That's correct.

6         Q    So given that Tony was not disqualified,

7    what role was he tasked with performing after the

8    investigative report?

9         A    Well, if I remember correctly, this was --

10   it was either at the close or close to the end of the

11   counseling period or at the beginning of the mediation

12   period, and so Tony's role would have been -- as the

13   unit executive of the office, he would have been in the

14   position to, you know, see what he could do to address

15   Plaintiff's concerns about, you know, promotion, the

16   work conditions, and so on and so forth.

17        Q    And he had that role because he was the unit

18   executive?

19        A    Who had the authority to do that, yes.

20        Q    Would you normally ask someone that the

21   investigator thought was biased to participate in those

22   roles?

23        A    Well, again, there -- you know, biased in

24   terms -- I mean, I'm struggling to answer that because

25   as the unit executive, he has to make decisions that he

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 11 of 28

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1   feels is in the best interest of not only the employee

 2   but the office and other colleagues, and so he may have

 3   to take -- he or she may have to take action that

 4   people disagree with, and, you know, he could be

 5   accused of being biased against the individual

 6   employee.

 7            MS. SUK GERSEN:  Would you please read out

 8   Mr. Ishida's previous answer.  Not this one but the one

 9   before.

10            (Requested record read by the stenographer.)

11            MS. SUK GERSEN:  Which exhibit is Tab 1?  Do

12   you remember?

13            MR. GERSEN:  What's the Bates number?

14            MS. SUK GERSEN:  Bates Number 615.

15            MR. KOLSKY:  That's Exhibit 2.

16   BY MS. SUK GERSEN:

17       Q    Do you have Exhibit 2 there, Mr. Ishida?

18       A    I think I do.  Yes, I do.

19       Q    At the top of the page in the first -- in

20   the paragraph that's an e-mail from you to

21   Mr. Martinez --

22       A    Okay.

23       Q    -- I'd like to point you to the sentence

24   starting with "You're doing."

25       A    Okay.
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1        Q       "You're doing all you can to protect Caryn."

2                So what did you mean by that?  What did you

3    mean when you said, "You're doing all you can to

4    protect Caryn"?

5        A       Well, so I think -- I think part of

6    Mr. Martinez's concern was he had taken -- once he

7    received the concerns about sexual harassment the

8    plaintiff made against JP Davis, Mr. Martinez had

9    asked, "Okay" -- he did X, Y, and Z, and I think what

10   he asked me too was, "Can you think of anything else I

11   need to do?"

12               And my response is, "Well, I think, to me,

13   it appears like, you know, you've taken the appropriate

14   steps to protecting the plaintiff from JP Davis."

15       Q       What were the appropriate steps?

16       A       As I recall, it was physical separation.  He

17   had allowed Plaintiff to telework, and he had

18   removed -- or he said he had removed the plaintiff from

19   JP's chain of command.

20       Q       Why did you think that Ms. Strickland needed

21   protection?

22       A       Because she had told me on a number of

23   occasions she was afraid of Mr. Davis, and I think -- I

24   remember at least one time where she said, "I'm

25   physically afraid of him."

Case 1:20-cv-00066-WGY  Document 243-12  Filed 06/01/23  Page 13 of 28

www.cavalier-reporting.com          Cavalier Reporting & Videography          info@cavalier-reporting.com
(434) 293-3300                      Reported by Julia A Bammel                 (800) 972-1993

1          Q      Did you believe her?

2          A      I had no reason to doubt her, and she

3     seemed -- if I recall, she seemed very upset, so I took

4     her at her word.

5          Q      So taking her at her word, you felt that she

6     needed protection?

7                 MR. KOLSKY:   Objection.   Misstates

8     testimony.

9     BY MS. SUK GERSEN:

10         Q      Did you believe she needed protection?

11         A      I believed that she had felt that she was

12    physically threatened by JP Davis.

13         Q      And you believed her?

14         A      Again, yes.   I had no reason to doubt her.

15         Q      Is there any special provision in the EDR

16    plan that applies if a unit executive is the person who

17    is alleged to be a violator of the EDR plan?

18         A      Say that again.   I'm sorry.

19         Q      Is there any provision in the EDR plan that

20    would apply in the circumstance where a unit executive

21    is themselves alleged to have violated the EDR plan?

22         A      So the EDR plan would apply to unit

23    executives equally.

24         Q      So does that mean that the unit executive

25    would be the person in charge of responding to an

www.cavalier-reporting.com
(434) 293-3300
Cavalier Reporting & Videography
Reported by Julia A Bammel
info@cavalier-reporting.com
(800) 972-1993

1    A    I wouldn't read it that way, because the

2   examples in the report that I recall reading that the

3   investigator was concerned about was -- were statements

4   that the Defender had said that may have been

5   inappropriate and assurances of things he would do that

6   he apparently had not done.

7         So to say that you can construe this to also

8   include that, well, the investigator concluded that

9   Mr. Martinez did not do everything in his power to

10  protect, I don't think I would read it that way at all.

11         MS. SUK GERSEN:  Okay.  Let's take a break.

12         THE WITNESS:  Okay.

13         MS. SUK GERSEN:  Thank you.

14         THE WITNESS:  Sure.

15         MS. SUK GERSEN:  Thank you so much for your

16  endurance.

17         (Break in proceedings.)

18  BY MS. SUK GERSEN:

19

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 15 of 28

www.cavalier-reporting.com                *Cavalier Reporting & Videography*              info@cavalier-reporting.com
(434) 293-3300                              Reported by Julia A Bammel                      (800) 972-1993

1

17

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 16 of 28

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

*info@cavalier-reporting.com*
(800) 972-1993



www.cavalier-reporting.com
(434) 293-3300
*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*
*info@cavalier-reporting.com*
(800) 972-1993

www.cavalier-reporting.com
(434) 293-3300
Cavalier Reporting & Videography
Reported by Julia A Bammel
info@cavalier-reporting.com
(800) 972-1993



www.cavalier-reporting.com
(434) 293-3300
*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*
*info@cavalier-reporting.com*
(800) 972-1993



www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

*Info@cavalier-reporting.com*
(800) 972-1993



www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

*info@cavalier-reporting.com*
(800) 972-1993



19    Q    So did you ever disclose the findings of the

20    draft report that Heather produced to anyone?

21    A    No.  I, you know, did not receive any drafts

22    or anything preliminary.

23         So my view on this was Heather was appointed

24    to investigate Plaintiff's allegations, and so at that

25    point, you know, it was -- I wanted, really, nothing to

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 22 of 28

www.cavalier-reporting.com                 Cavalier Reporting & Videography              info@cavalier-reporting.com
(434) 293-3300                             Reported by Julia A Bammel                    (800) 972-1993

1  do with the investigation.  I let Heather dictate how

2  that would go.  So she didn't give me any draft.  She

3  didn't, you know, show me anything.

4       Q    We have in the record that you received an

5  earlier report from Heather Beam --

6       A    Uh-huh.

7       Q    -- earlier than the one that we reviewed

8  here --

9       A    Uh-huh.

10       Q    -- on November 19th.

11       A    Uh-huh.

12       Q    Was that a draft of Heather Beam's

13  investigative report?

14       A    I think she had submitted to me with the

15  intent that this was her final report.

16       Q    Can you clarify?

17       A    So she had given me a copy of the

18  investigation report that she had completed, and so I

19  looked at it, and it had a recitation of the events --

20  a chronology of the events that happened along with a

21  sizeable set of attachments, and -- but the one thing

22  that I didn't see in there was her impressions.

23            And we had -- we had a conversation, I

24  think -- I can't remember when, but Heather mentioned

25  that in the process of conducting her investigation,

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1    she had formed, you know, some views, some opinions,

2    she had some suggestions, but they weren't included in

3    the report.

4             So I said, "Well, I think it would be

5    helpful to have all of your impressions in the report

6    because you obviously had interviewed people

7    face-to-face, and so you would have information that we

8    would not have."  So I -- in essence, what I did was I

9    asked her to include those impressions and her thoughts

10   in the report.  So she went back and then revised the

11   report to include those observations and her

12   recommendations as well.

13       Q    What do you mean by impressions and

14   observations?

15       A    Well, so -- and I'm trying to remember --

16   the conversation I had with Heather was -- I don't know

17   if she used those words, but the sense I -- what I was

18   hearing her to say was she had other thoughts about the

19   case that were not included in the report, and so I had

20   asked her, you know, to create a full, complete, and

21   accurate account of what she found during the course of

22   her investigation.  I had asked her to include those in

23   the report.

24       ▮     ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

     ▇     ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

www.cavalier-reporting.com
(434) 293-3300
Cavalier Reporting & Videography
Reported by Julia A Bammel
info@cavalier-reporting.com
(800) 972-1993



1

21      Q      When were the findings disclosed to anyone

22  other than yourself and Heather Beam?

23      A      Well, I think -- I think Chief Judge Gregory

24  had a copy of it as soon as I received it because I

25  responded back to Heather thanking her for the job she

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 25 of 28

www.cavalier-reporting.com                    Cavalier Reporting & Videography                    info@cavalier-reporting.com
(434) 293-3300                                  Reported by Julia A Bammel                                  (800) 972-1993

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

*info@cavalier-reporting.com*
(800) 972-1993

1

18

Case 1:20-cv-00066-WGY  Document 243-12  Filed 06/01/23  Page 27 of 28

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

*info@cavalier-reporting.com*
(800) 972-1993

1   COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

2        I, Julia A. Bammel, RPR, CSR, Notary Public

3   in and for the Commonwealth of Virginia at large, and

4   whose commission expires May 31, 2024, do certify that

5   the aforementioned appeared before me, was sworn by me,

6   and was thereupon examined by counsel, and that the

7   foregoing is a true, correct, and full transcript of

8   the testimony adduced.

9        I further certify that I am neither related

10  to nor associated with any counsel or party to this

11  proceeding nor otherwise interested in the event

12  thereof.

13       I further certify that the deponent's right

14  to review the transcript was reserved.

15       Given under my hand and notarial seal at

16  Charlottesville, Virginia, this 24th day of April,

17  2023.

18

19  _____

20       Julia A. Bammel, RPR, CSR

21       Notary Public Registration No. 7205414

22       Commonwealth of Virginia at Large

23

24  Job No. 49661

25

Case 1:20-cv-00066-WGY   Document 243-12   Filed 06/01/23   Page 28 of 28

www.cavalier-reporting.com              Cavalier Reporting & Videography              info@cavalier-reporting.com
(434) 293-3300                          Reported by Julia A Bammel                    (800) 972-1993