# EXHIBIT N

dumb at the same time and it's hard to stay ahead of.

I don't know that she's doing anything but the fact that she's being weird about it concerns me.

Fri, Jun 1, 11:44 AM

Just ran into Pete. ██████

Fuuuuuuuuck

Looks like we're getting the band back together!

Would pete take it as an appointed case?

I didn't ask but he said ████████
████████ You

So.

and caleb...at no point do they
mention the clients

I thought she could be in mgmt
but I don't think so any more.

Yuuup



Oooh, forgot to tell you that i
heard him talking to kim at the
jail

???

He said, "I understand he likes
trial, but dont try it with me"

I think she was doing 21 day
docs

   Text Message  

US00006855

what I want, to hear the truth.

It's self-centered. With Caleb it's easy. With Caryn it's hard because she probably WILL help Dixon. It's just that it's a coincidence-- she's working in Caryn's self-interest, not his. They just happen to line up.

Tonight really showed me that and that's what really set me off

I'm gonna slap Tony...he forced all this crap to the surface. Now we can't just ignore it.

That's unfortunate. Her talent speaks for itself

Agreed. I'm glad the Jeff stuff is up. We have to deal with it. The rest...

Yep. Agreed.

  Text Message 

US00006856



That's unfortunate. Her talent speaks for itself

Agreed. I'm glad the Jeff stuff is up. We have to deal with it. The rest...

Yep. Agreed.

Plus she's smart enough to be very dangerous trying to counter her manipulations. Ugh. I'm really upset by this.

Anyway, bed time. Tomorrow is another day....

Yep. Shut your brain off for now

Will do. You too. See you in the am

GN


Thu, Jun 7, 7:51 AM

Ohhhh...glad she made the right choice, but you better watch that knife she's holding at your back.

I know. Phil emailed that Jeff is just going to reschedule for next week. Because obviously there was no thought about this at all in advance.

She couldn't just say "I have a conflict?" How dare you order her to do something!

If she made good decisions we wouldn't be here in the first place.

But very bad when you get the same affordance as our clients.

Thu, Jun 7, 6:46 PM

  Text Message 

US00006858


Tue, Jun 26, 4:53 PM

Caryn can be...umm....harsh. lol.

Abrasive may be the word you're looking for.

I assume you mean the email to Tony?

Nope

I got a bit of her wrath when i had to explain her (lack of) role in Dixon

Tight-faced-arms-folded

Really?

She was pissed about being taken off again huh

Apparently, she was still planning on participating in ~~meetings. I was like, no, don't~~

      Text Message     

US00006859


Apparently, she was still planning on participating in meetings. I was like, no, don't worry about that

Did I tell you she blew off a meeting on Davis last week because she was working on Dixon?

This is the problem (one of them)... she only wants to work on what she wants to work on

Yep. And doesn't handle adversity well

Very true. Speaking of which, after ignoring my text and email re: the Illegal Reentry cases on Friday, she hasn't spoken to me at all since the sentencing yesterday... and was clearly trying to avoid me before it.

Yeah, she's not in a happy

  Text Message 



at all since the sentencing yesterday... and was clearly trying to avoid me before it.

Yeah, she's not in a happy place right now

Going to try and talk to her at some point. Hopefully give her a chance to turn around. She may just need to get smacked a bunch, tho.

She has to figure it out.

Probably so. I'm worried she will do something even dumber before she gets there.

She's been told at least 4 times now to stop with the dixon case and she still claims to be "confused"... that sounds like a personal problem

You cant help someone who

  Text Message 

She's been told at least 4 times now to stop with the dixon case and she still claims to be "confused"... that sounds like a personal problem

You cant help someone who doesn't want to hear you

Oh I didn't know she claimed confusion about her role today

Note that when she came to my office for that weird not-an-apology thing, she explicitly said "I'm off Dixon"

Yes. She told me she was confused

Then when she mentioned it last week I asked her if she was on it and she said "just in a consulting role"

Yes. She told me she was confused

Then when she mentioned it last week I asked her if she was on it and she said "just in a consulting role"

Hoo boy.

She is confused as to how she keeps getting caught sneaking back on.

Lol

Then she pretended to be happy about not having to go to more trial team meetings

And reference the "apology" conversation again... "I mean, thank god!"

She thought there was a Dixon meeting tomorrow and was

  Text Message 

She thought there was a Dixon meeting tomorrow and was going to be there

> How did this come up?

(1/2) Jared tried to explain that he was going to use her to collaborate on motions, filings, etc...I guess she didnt take it well and both of them ended up at

(2/2) my door

> SHE GOT IN A FIGHT WITH JARED?????

No!

She acted "confused" again and Jared wanted me to explain to her what was up

> Ahh. Well that's better. But still.

  Text Message 

US00006864

Ahh. Well that's better. But still.

She asked, "am i supposed to stop doing what I'm being asked to do, because I'm still being asked to do stuff."

In fairness, appears to be accurate, but she has also independently been digging into and presenting ideas. Good ones, perhaps. But she is patched full on.

She was told to stop by Tony....more than once. Jared is the lead and has been handling the research. She is ONLY being used to collaborate with Jared.

MO appears to be she comes up with ideas, runs them down (at expense of her other work), presents them and gets buy in then is asked (probably

MO appears to be she comes up with ideas, runs them down (at expense of her other work), presents them and gets buy in then is asked (probably volunteers) to keep working on them.

It's not even subtle.

And even if she is being asked to do something, that doesn't warrant the attitude we all got today

Peter got it from her this morning, then Tony, then me

Yeah, no shit. She's acting like a spoiled brat.

Poor Jared feels stuck in the middle.

Yeah, he is. I'm just really

  Text Message 

US00006866



morning, then Tony, then me

Yeah, no shit. She's acting like a spoiled brat.

Poor Jared feels stuck in the middle.

Yeah, he is. I'm just really disappointed by her immaturity.

Yeah...

I dont understand why she went behind peter's back with that email. He really put some thought in how to approach her and as soon as he left for court...BAM!

I don't either but she's done the same thing to me. With CrossX, I knew she was anxious but she was saying everything was fine until she called Tony and complained

  Text Message 

US00006867


Yeah, he is. I'm just really disappointed by her immaturity.

Yeah...

I dont understand why she went behind peter's back with that email. He really put some thought in how to approach her and as soon as he left for court...BAM!

I don't either but she's done the same thing to me. With CrossX, I knew she was anxious but she was saying everything was fine until she called Tony and complained that I "dumped" it on her.

Maybe she has an issue with direct confrontation.

Wed, Jun 27, 6:55 PM

Phil wants to know if you need

  Text Message 

US00006868

**From:** JP Davis [/O=FDO/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B9C46112FA5F696A0060B28685257A80]
**Sent:** 7/23/2018 12:28:00 PM
**To:** Joshua B Carpenter [Joshua_Carpenter@fd.org]
**Subject:** Re:Follow up

Should we just plan on talking after the call with Todd? I'm free for the next hour if that's preferable.

Sent from IBM Verse

me --- Re:Follow up ---

From: "JP Davis" <JP_Davis@fd.org>
To: "Joshua B Carpenter" <Joshua_Carpenter@fd.org>
Date: Mon, Jul 23, 2018 9:11 AM
Subject: Re:Follow up

Should have done, but it seemed pretty obvious we would need to do this and I wanted her to have time to think about how she wanted the role to run. Plus she gets pissy when you surprise her.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722
Joshua B Carpenter—07/23/2018 08:56:51 AM—Hmm, that does sound fishy. Next time I would just go with the surprise drop in ... Joshua B. Carp

From: Joshua B Carpenter/NCWF/04/FDO
To: JP Davis/NCWF/04/FDO@FDO
Date: 07/23/2018 08:56 AM
Subject: Re:Follow up

Hmm, that does sound fishy. Next time I would just go with the surprise drop in ...

Joshua B. Carpenter
Appellate Chief
Federal Public Defender
Western District of North Carolina
One Page Ave., Suite 210
Asheville, NC 28801
(828) 232-9992

JP Davis—07/23/2018 08:45:32 AM—Yes will do.

US00002794

From: JP Davis/NCWF/04/FDO
To: Joshua B Carpenter/NCWF/04/FDO@FDO
Date: 07/23/2018 08:45 AM
Subject: Re:Follow up

---

Timing no longer an issue-- Caryn called in sick. I'm sure the fact that I emailed her last night asking to meet is purely coincidental, as it was the last two times this happened.

Sent from IBM Verse

Joshua B Carpenter --- Re:Follow up ---

| | |
|---|---|
| From: | "Joshua B Carpenter" <Joshua_Carpenter@fd.org> |
| To: | "JP Davis" <JP_Davis@fd.org> |
| Date: | Sun, Jul 22, 2018 2:02 PM |
| Subject: | Re:Follow up |

---

Yes will do.

Sent from IBM Notes Traveler

JP Davis --- Re:Follow up ---

| | |
|---|---|
| From: | "JP Davis" <JP_Davis@fd.org> |
| To: | "Joshua B Carpenter" <Joshua_Carpenter@fd.org> |
| Date: | Fri, Jul 20, 2018 11:03 PM |
| Subject: | Re:Follow up |

---

Fair enough. Why don't you give me a call when you're free? I have a personnel manual meeting at 1:30, so before that would be good. I'm hoping to meet with her some time Monday to talk procedures and expectations, but will hold off until we can get together.

Sent from IBM Verse

Joshua B Carpenter --- Re:Follow up ---

| | |
|---|---|
| From: | "Joshua B Carpenter" <Joshua_Carpenter@fd.org> |
| To: | "JP Davis" <JP_Davis@fd.org> |
| Date: | Fri, Jul 20, 2018 10:08 PM |
| Subject: | Re:Follow up |

---

Agree on all fronts. I will need it be late morning or early afternoon Monday. Gotta lock myself in a room first thing in the AM to get something done that was supposed to be done two days ago.

US00002795

Sent from IBM Notes Traveler

JP Davis --- Re:Follow up ---

| | |
|---|---|
| From: | "JP Davis" <JP_Davis@fd.org> |
| To: | "Joshua B Carpenter" <Joshua_Carpenter@fd.org> |
| Date: | Fri, Jul 20, 2018 9:40 PM |
| Subject: | Re:Follow up |

I am very much on board with giving her a chance to redeem herself. Her behavior may have been fireable, but she's also a serious asset, and it would take very little to make her one of our best employees. On the flip side, by analogy, it would also take very little to make our political process functional. This is one of my frustrations... a tiny gap is a chasm to those unwilling to cross it.

Let's talk Monday AM and we can review soup to nuts on both past and future.

Sent from IBM Verse

Joshua B Carpenter --- Re:Follow up ---

| | |
|---|---|
| From: | "Joshua B Carpenter" <Joshua_Carpenter@fd.org> |
| To: | "JP Davis" <JP_Davis@fd.org> |
| Date: | Fri, Jul 20, 2018 9:24 PM |
| Subject: | Re:Follow up |

I understand, and I want to get a bit more detail from you on some of what happened so I can tread carefully. I have a game plan in mind for how to give her a chance - whether deserved or not - to redeem herself and return to being a productive employee. If it works, great. If not, we'll encourage Tony to respond appropriately.

Sent from IBM Notes Traveler

JP Davis --- Follow up ---

| | |
|---|---|
| From: | "JP Davis" <JP_Davis@fd.org> |
| To: | "Joshua B Carpenter" <Joshua_Carpenter@fd.org> |
| Date: | Fri, Jul 20, 2018 8:22 PM |
| Subject: | Follow up |

A quick follow up since I realize I reacted a bit strongly on the phone. My primary concern is that I am the only one who has communicated to Caryn that her actions--which were fireable offenses-- were in fact problematic. I feel a bit out in the wind here, and I am going to have trouble working with her so long as I think she thinks she can lie to me and disobey me and no one will back me up.

This is not really fair to dump on you as you are not in a great position to be chastizing her. To be blunt, though, Caryn needs to get the message that she fucked up and she needs to make things better and apologize. She may not ever do that --I suspect she won't-- but she needs to at least know

US00002796

that lying to your superior and overt insubordination are not considered acceptable in our organization. If she chooses to continue the "fuck off" attitude, then at least we know what we have. Right now, it's not clear to me that she thinks anything other than that I'm an asshole and she is the only one willing to stand up to me.

Anyway, that was longer than I intended, and we can talk more on Monday. Enjoy the weekend, and give Nora and the kids my love.

JP

Sent from IBM Verse

US00002797

## Significant Event Log

Employee Name: Caryn Devins

Evaluation Period:

| Date | Event |
|---|---|
| 7/5/2018 | On this date I met with Caryn and JP  I pulled both of them because I wanted to resolve a breakdown in communication  I also wanted to clarify with Caryn any issue about any harassment by JP  A few days ago Caryn walked into my office and told me she wanted to know if she had me support  I asked her what kind of support she wanted and she said that she just wanted to give me a headsup and keep me in the loop |
|  | Caryn started the meeting telling me that she was not prepared to speak to me in front of JP and asked if she could speak to me by herself  I said yes and asked JP to excuse us  Caryn then proceeded to tell me that JP questioned her performance  I advised her that it must be a misunderstanding because he has never said that Caryn performance was lacking  I proceeded to thank her for all of her hard work in the Dixon case and the Davis case  Had it not been for her work on those cases I would not have found out what was missing in Dixon's case |
|  | I then specifically asked her about any possible harassment by JP  She advised me that on several occasions he made her feel uncomfortable by wanting to meet after work hours  On one specific situation she said they both had stayed late working on a case  When the meeting was over JP asked her if she needed a ride  Caryn advised him that she had her bike and did not need a ride  She went and got her bike and on her way out on the first floor JP was waiting for her in the lobby and asked if she needed a ride  Caryn said no and left  Caryn said she felt creeped out by this event |
|  | I specifically asked Caryn if there was ever any inappropriate touching or attempted touching but she said no  I told her that I wanted to make sure that she was able to work in an environment where she felt comfortable  She advised me that she did not want to submit a complaint against JP |
|  | After some time of talk with her I asked JP to come in  I articulated to JP that Caryn felt he was questioning her performance  He advised that at no time was he questioning her performance  He did mentioned that he felt he blew her off twice  Once on a psr meeting with a client and she decided to do a discovery review in the Dixon case  Another time that had to do with meeting a client  Caryn's response was that her understanding from JP was that she was merely shadowing him and that the meeting with the client was not more important than helping out in the Dixon case |
|  | After much discussion. JP agreed the best course of action is for him to step aside as Caryn's mentor. I and Caryn agreed. I suggested that Caryn think of who could be her mentor going forward. She suggested Kelly. I agreed he would be good. JP then left the room and spoke with Caryn alone for some time. I asked her if she agreed with the resolution and she advised that she did. |
|  | I asked if she felt comfortable going forward and she said she did |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**Sent**:  6/12/2019 1:12:55 PM
**To**:  Anthony Martinez
**CC**:  Kim Llewellyn [kim_llewellyn@ca4.uscourts.gov]

Tony,

I would simply advise Josh and Jared that Caryn will be teleworking temporarily for the time being. I don't think you need to say anything more. As for Jared, I would simply ask him not to assign any work from JP to Caryn. People may wonder, but I think this approach is best. You're doing all you can to protect Caryn, you're not making up any fabrications, and you're also not revealing confidences. You could make up something to disguise these moves, but I don't like the idea of being deceptive in order to avoid raised eyebrows.

I think you're doing a great job, Tony. Your organizational changes are brilliant.

James


James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA  23217-3517

̄̄̄̄̄̄̄̄̄ca4.uscourts.gov

Anthony Martinez—08/14/2018  01:56:06 PM—James, Thank you. I have a question. In my attempt to insulate Caryn from JP I created a Research &

From: **Anthony Martinez/NCWF/04/FDO@FDO**
To: **James Ishida/CE04/04/USCOURTS@USCEXT**
Cc: Kim Llewellyn/CE04/04/USCOURTS@USCOURTS
Date: 08/14/2018 01:56 PM
Subject: Re: Fw: CONFIDENTIAL - Requesting Heather Beam


James,

Thank you. I have a question. In my attempt to insulate Caryn from JP I created a Research & Writing Unit (composed of Caryn and Jared the other R&W) that would become part of the Appellate Unit. Josh Carpenter is the Appellate Chief. I have made Jared Martin the gatekeeper for all R&W assignments. In other words, all requests for R&W work should go through Jared. How do I instruct Jared to not give Caryn any work assignments from JP without raising any eyebrows? Also, Jared and Josh will need to know that Caryn is working remotely. How should I advise them so as to maintain confidentiality? I'm just trying to avoid any allegations of violating confidentiality. At the same time, I need to let some people know that she's working remotely.

Thanks again for everything you are doing,
Tony

US00000615

**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

James Ishida—08/14/2018 01:33:03 PM—Hi Tony, So we now have Heather Beam. I'd suggest reaching out to her to set up a meeting to discus

From: James Ishida/CE04/04/USCOURTS@USCOURTS
To: Anthony Martinez/NCWF/04/FDO@FDO
Cc: Kim Llewellyn/CE04/04/USCOURTS@USCOURTS, James Ishida/CE04/04/USCOURTS@USCOURTS
Date: 08/14/2018 01:33 PM
Subject: Fw: CONFIDENTIAL - Requesting Heather Beam

Hi Tony,

So we now have Heather Beam. I'd suggest reaching out to her to set up a meeting to discuss the case. Heather will need to know that you're appointing her to investigate the allegations contained in Caryn's email. (I'd also suggest that you prepare something in writing to that effect. I might say that because of your earlier involvement in the matter that you are recusing and appointing Heather as your designee to investigate the allegations.)

Heather will also serve as your witness when you meet with Caryn. Again, I think the scope of your meeting with Caryn will be to inform her of her rights under Chapter X of the Fourth Circuit's EDR Plan (i.e., right to request counseling, which triggers the Circuit's EDR process), describe next steps under your Office's EDR Plan (i.e., file a written grievance), and inform her of actions already taken under Chapter IX of the Fourth Circuit's EDR Plan (i.e., that Judge Gregory has been informed of her allegations).

As for who would receive the investigatory report, I'm having additional thoughts. Perhaps we can talk this through later. We don't need to act until the investigation is complete. I want to chew on this a little more.

Hope that's enough to go on. Let us know if you have any questions. Thanks.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

▓▓▓▓▓@ca4.uscourts.gov
---- Forwarded by James Ishida/CE04/04/USCOURTS on 08/14/2018 01:10 PM ----

US00000616

From: James Ishida/CE04/04/USCOURTS
To: Lisa G Morris/NCWP/04/USCOURTS@USCOURTS
Date: 08/14/2018 01:05 PM
Subject: Re: CONFIDENTIAL - Requesting Heather Beam

Many thanks Lisa. Much appreciated. I'll be in touch.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

████████@ca4.uscourts.gov

▼ Lisa G Morris—08/14/2018 12:46:36 PM—Absolutely Heather is available. Let me know if you need anything else. Take care! Lisa G. Morris

From: Lisa G Morris/NCWP/04/USCOURTS
To: James Ishida/CE04/04/USCOURTS@USCOURTS
Date: 08/14/2018 12:46 PM
Subject: Re: CONFIDENTIAL - Requesting Heather Beam

Absolutely Heather is available. Let me know if you need anything else. Take care!

*Lisa G. Morris*
*Chief U. S. Probation Officer*
*200 S. College St., Suite 1650*
*Charlotte, NC 28202*
*(704)350-7650*

▼ James Ishida—08/14/2018 11:26:54 AM—Hi Lisa, I have a favor to ask. There's a personnel matter brewing in the Western District that Hea

From: James Ishida/CE04/04/USCOURTS
To: Lisa G Morris/NCWP/04/USCOURTS@USCOURTS
Date: 08/14/2018 11:26 AM
Subject: CONFIDENTIAL - Requesting Heather Beam

Hi Lisa,

I have a favor to ask. There's a personnel matter brewing in the Western District that Heather Beam can help us with. It involves a sensitive EDR matter, and I need someone outside the particular office to help us gather facts. I don't think the task will be onerous, and I'm hopeful that we can wrap this up quickly.

Pls let me know if Heather is available. I hope everything is going well for you.

US00000617

Best,

James


James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

███████ @ca4.uscourts.gov

US00000618

**From:** Caryn Devins
**Sent:** Monday, October 8, 2018 5:01 PM
**To:** Heather_Beam@ncwp.uscourts.gov
**Subject:** EDR documentation
**Attachments:** Strickland Witness List and Timeline.docx; FDO Employee Manual_FINAL.pdf; FDO Employee Manual_FINAL.pdf; FDO Employee Manual APPENDICES.pdf; Strickland EDR documentation shortened version_redacted.pdf

Dear Heather,

I wanted to thank you again for taking the time to meet with me and Cooper last Friday and for even staying after work hours to continue our meeting. Your time and attention are very much appreciated.

To follow up on our meeting, I have the notes/documentation scanned from my binder and I attached a shorter version with just the highlights - the most egregious emails, texts, etc. I will attach the full version to a separate email - it is split into several different PDFs due to file size. I have taken care to redact all client or sensitive information so please let me know ASAP if you see any info that needs to be redacted. In addition, I have attached a copy of the personnel manual and appendices, as well as a witness list/timeline.

I am still working on compressing the recording to a size that can be emailed. If not, I may need to use a cloud service or bring you a thumb drive (there are no case sensitive discussions on recording).

Finally, you had mentioned that you may move to extend counseling since the 30 day period ends on October 10. Are you planning to reach out to James about this or would you prefer that I do so?

Thank you again and please let me know if there's anything else I can do to be helpful.

Best regards,

Caryn

060590

Strickland 1

To: Heather Beam

From: Caryn Strickland

Re: Wrongful Conduct Investigation

Date: October 8, 2018

Dear Heather:

I am providing a list of individuals that may be helpful to talk to and a timeline of events below. The timeline is not intended to be comprehensive but highlights the most important events.

I greatly appreciate your time and attention to this matter. If there is anything else I can do to be helpful to you, please let me know.

060591

Strickland 2

Witness List

1. Caleb Newman ████████████

2. Terra Parrish ███████████

3. Brian Wise (I do not have his personal cell – the number for his new employer is ████████ )

4. Jeffrey King (cell ███████ )

**From:** Heather Beam [heather_beam@ncwp.uscourts.gov]
**Sent:** 3/13/2019 10:55:00 AM
**To:** Frank Johns [frank_johns@ncwd.uscourts.gov]
**Subject:** Re: Fw: Pro Se Law Clerk Application

Yep – I think she would have been a true pain in the you know what. :)
Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

Frank Johns—03/13/2019 10:45:58 AM—YEA!  That one is off the chess board! From: Heather Beam/NCWP/04/USCOURTS

From: Frank Johns/NCWD/04/USCOURTS
To: Heather Beam/NCWP/04/USCOURTS@USCOURTS
Date: 03/13/2019 10:45 AM
Subject: Re: Fw: Pro Se Law Clerk Application

YEA!  That one is off the chess board!



*Frank Johns*
Clerk
USDC, Western District of North Carolina
Frank_Johns@ncwd.uscourts.gov
http://www.ncwd.uscourts.gov
704.350.7400

Heather Beam—03/13/2019  10:41:58 AM—FYI Heather Beam

From: Heather Beam/NCWP/04/USCOURTS
To: Frank Johns/NCWD/04/USCOURTS@USCOURTS
Date: 03/13/2019 10:41 AM
Subject: Fw: Pro Se Law Clerk Application

FYI
Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

----- Forwarded by Heather Beam/NCWP/04/USCOURTS on 03/13/2019 10:41 AM -----

From: Caryn Devins <caryn.devins@hotmail.com>
To: ██████@ncwd.uscourts.gov" <██████@ncwd.uscourts.gov>, "██████@ncwd.uscourts.gov" <██████@ncwd.uscourts.gov>,
"██████@ncwd.uscourts.gov" <██████@ncwd.uscourts.gov>
Cc: "Heather_Beam@ncwp.uscourts.gov" <Heather_Beam@ncwp.uscourts.gov>
Date: 03/13/2019 10:37 AM
Subject: Pro Se Law Clerk Application

US00004025

Dear Judge Cogburn, Judge Reidinger, and Judge Metcalf,

Thank you very much for considering my application for the pro se law clerk position and for inviting me for an interview. I wanted to let you know I have accepted a clerkship with Fourth Circuit Judge Henry Floyd, and so I am withdrawing my application.

I have greatly enjoyed working with you during my time at the Federal Defender Office. Judge Metcalf, I hope I have the privilege of meeting you in person sometime soon.

Thank you again for your time and consideration.

Best regards,

Caryn Devins Strickland

US00004026

**Sent:**      6/12/2019 4:07:48 PM
**To**:        Caryn Devins [caryn.devins@hotmail.com]

Dear Caryn,

At this point, to my knowledge, the only things that have been disclosed to the Employing Office are your Request for Counseling and your Request for Mediation, which I am required to disclose under the Fourth Circuit EDR Plan. I did not disclose any documents to the Employing Office that you had submitted with your request for disqualification. And, as I mentioned before, I did not disclose the investigator's report or its attachments to the Employing Office.

I can't speak to the investigation itself because I had specifically separated myself from that to ensure a fair and impartial investigation. But Heather Beam knows full well the confidentiality and limited-disclosure requirements in our EDR Plan.

As for the mediation process, Ed Smith is a seasoned and skilled mediator whose only interest will be to attempt to resolve your EDR case. I'm sure he would not act in any way that would jeopardize that objective. But I will relay your concerns and request to him.

Btw, that's also one of the reasons why I did not want to release the investigator's report to the parties at this time. As you mentioned, I'm sure that would have sparked satellite litigation over the accuracy of the report, and that's not helpful. What would be helpful is to focus on the outstanding issues, and resolve them in the most mutually satisfactory manner. I'm confident that Ed will do an excellent job.

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

███████████a4.uscourts.gov

On Feb 1, 2019, at 10:20 AM, Caryn Devins <caryn.devins@hotmail.com> wrote:

Dear James,

Thank you for your response.

The only document I submitted with my request for counseling was a five-page grievance containing a factual narrative, along with my request to disqualify the Federal Defender. It is my impression that the employing office has not received a copy of the grievance narrative, the source materials (e.g., emails, contemporaneous notes, etc.) I provided for the investigation, or my disqualification request. I am concerned that the materials I provided in confidence for purposes of cooperating with the investigation could be disclosed to the employing office through the mediation process. I am concerned, in part, that under current circumstances disclosure of these materials would result in relitigating my allegations during the mediation process.

US00000519

Can you please confirm that no materials other than my request for counseling (2 pages) and my request for mediation (2 pages) have been, or will be, provided to the employing office during the mediation process absent my waiver of confidentiality by consent to the mediator?

Respectfully,

Caryn

**From:** ███████ @ca4.uscourts.gov <███████ 9ca4.uscourts.gov>
**Sent:** Thursday, January 31, 2019 4:19 PM
**To:** Caryn Devins
**Cc:** Kim_Llewellyn@ca4.uscourts.gov; ███████ @ca4.uscourts.gov
**Subject:** Re: Request for Mediation (EDR Claim)

Dear Caryn,

I do not believe that we had a discussion about releasing documents that you had filed with your Request for Counseling to the mediator. I did say that I would not release the investigator's report to the parties. I'm also inclined to withhold it from the mediator as well.

Under the Fourth Circuit's EDR Plan, "information about allegations filed under this Plan shall be shared on a need-to-know basis." I need to consider whether the mediator needs to know the information filed in your request. The mediator is also bound by this directive, as well as his confidentiality obligations under the Plan.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

███████ ca4.uscourts.gov

On Jan 31, 2019, at 3:48 PM, Caryn Devins <caryn.devins@hotmail.com> wrote:

Dear James,

Thank you for your email. I wanted to confirm from our last discussion that my mediation request is the only documentation that will be provided to the mediator and Tony Martinez - specifically, that documents I provided for purposes of the investigation and subsequent report, including my initial narrative submitted with my request for counseling, will not be shared.

Respectfully,

Caryn

US00000520

On Jan 31, 2019, at 3:23 PM, " ████████ @ca4.uscourts.gov" < ████████ @ca4.uscourts.gov> wrote:

Dear Caryn,

Thank you for your attached request for mediation. In accord with the Fourth Circuit's EDR Plan, I am notifying Chief Judge Gregory and Anthony Martinez of your request.

I am also designating Chief Fourth Circuit Mediator Edward G. Smith as mediator in this proceeding.

Receipt of your mediation request initiates the start of the 30-day mediation period, which expires on March 2, 2019.

Mr. Smith will reach out to the parties shortly.

Best regards,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

████████ ca4.uscourts.gov

Begin forwarded message:

**From:** "Caryn Devins" <caryn.devins@hotmail.com>
**Date:** January 31, 2019 at 2:16:28 PM EST
**To:** " ████████ @ca4.uscourts.gov" < ████████ @ca4.uscourts.gov>
**Cc:** " ████ @ca4.uscourts.gov" < ████ @ca4.uscourts.gov>
**Subject: Request for Mediation (EDR Claim)**

Dear Circuit Executive Ishida,

Please find attached my request for mediation under the Fourth Circuit EDR Plan.

Respectfully,

Caryn Devins Strickland
<Strickland Mediation Request.pdf>

US00000521

**Sent:** 6/12/2019 8:07:49 AM
**To:** Caryn Devins [caryn.devins@hotmail.com]
**CC:** Kim Llewellyn [kim_llewellyn@ca4.uscourts.gov]; James Ishida ▮▮▮▮@ca4.uscourts.gov]

Dear Caryn,

My apologies for the delay in getting back to you. The government shutdown is having a serious effect on our office.

Notwithstanding your pending request to Chief Judge Gregory for an extension of the counseling period, I am preparing a notice to you announcing the end of the counseling period and your right to file a request for mediation. I expect to transmit that shortly. Kim and I also spoke to Chief Judge Gregory the other day, where he informed me that he intends to deny your request to disqualify Tony Martinez. We are preparing an order to that effect.

I'd like to see if we can arrange a conference call to discuss where things stand. Tomorrow is tough but I can make 2:00pm or 3:00pm work. Otherwise, we'll have to wait until next week because Kim is unavailable this Friday. Tuesday, January 22 is another option.

Pls let me know your preference. Many thanks,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

▮▮▮▮@ca4.uscourts.gov

Caryn Devins —01/14/2019 02:24:37 PM—Dear James, I hope you are doing well. I was hoping that we would still be able to talk today. Right

From: Caryn Devins <caryn.devins@hotmail.com>
To: "▮▮▮▮@ca4.uscourts.gov" <▮▮▮▮@ca4.uscourts.gov>
Date: 01/14/2019 02:24 PM
Subject: Re: In on another call. Will call you immediately thereafter

Dear James,

I hope you are doing well. I was hoping that we would still be able to talk today. Right now, I'm leaning towards requesting another extension of counseling but I would like to have a conversation first, if possible.

Thanks,

Caryn

On Jan 11, 2019, at 5:27 PM, ▮▮▮▮@ca4.uscourts.gov" <▮▮▮▮@ca4.uscourts.gov> wrote:
I just received the report. I'll be in touch.

James

US00001533

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

███████████ ca4.uscourts.gov

On Jan 11, 2019, at 2:57 PM, Caryn Devins <caryn.devins@hotmail.com> wrote:
James,

That sounds good, thanks. If you don't mind, can you please email me and let me know if you do receive the report from her today?

Thank you,

Caryn

On Jan 11, 2019, at 2:51 PM, "█████████@ca4.uscourts.gov" <█████████@ca4.uscourts.gov> wrote:
Caryn,

I still haven't received the report yet, and without it I don't think there's much we can accomplish today. Let's try again on Monday. Monday, again, is the end of the counseling period so you should be prepared.

Many thanks. Best regards.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

███████████ @ca4.uscourts.gov

On Jan 11, 2019, at 2:44 PM, Caryn Devins <caryn.devins@hotmail.com> wrote:
Dear James,

I am just following up on our conversation the other day - do you still anticipate wanting to speak briefly by telephone today?

Thank you,

Caryn

On Jan 9, 2019, at 5:42 PM, "█████████@ca4.uscourts.gov" <█████████@ca4.uscourts.gov> wrote:
Dear Caryn,

US00001534

I wanted to let you know that I spoke to Heather Beam this afternoon, and she said that she expects to finish her report and have it to me by the end of the week. Heather confirmed that her report will address your allegation of retaliation by Tony Martinez.

Thanks again for participating in this morning's call. I thought it was very productive, and it helped move the ball forward in resolving the pending matters.

I'll be in touch. Best regards.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

@ca4.uscourts.gov

From: James Ishida/CE04/04/USCOURTS
To: caryn.devins@hotmail.com
Date: 01/09/2019 10:01 AM
Subject: In on another call. Will call you immediately thereafter

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

@ca4.uscourts.gov

US00001535

**Sent**: 6/12/2019 8:07:47 AM
**To**: ▇@ca4.uscourts.gov
**CC**: ▇▇▇@ca4.uscourts.gov

Dear Chief Judge Gregory,

I respectfully request an extension of the counseling period under Chapter X of the EDR Plan. *See* EDR Plan, Ch. X, Sec. 5(E) (providing that the Chief Judge "may extend any of the deadlines set forth in this Chapter for good cause").

Previously, I requested an extension of time because the preliminary investigation and subsequent report under Chapter X were not completed before the counseling period expired on November 28, 2018. *See* Email Request for an Extension of Time (EDR Claim), November 28, 2018. In response to my request, this Court granted an extension of 45 days. *See* Confidential Order, dated November 29, 2018.

On Friday, January 11, 2019, Mr. Ishida informed me that he received a copy of the revised investigatory report under Chapters IX and X. Currently, the counseling period is set to expire on January 14, 2019. Under these circumstances, I believe there is good cause to extend counseling. My understanding is that the findings in the report will help determine the next steps in the wrongful conduct investigation under Chapter IX, including whether it is appropriate for the Federal Defender to make any decisions regarding disciplinary action. A similar dynamic exists with the parallel Chapter X request for counseling. An extension would allow the parties time to evaluate the report's findings and recommendations and to resolve any outstanding procedural issues.

Thank you for considering my request.

Respectfully,

Caryn Devins Strickland

US00001536

19-4 Caryn Devins

Stephen ?, Special Assistant to Jeff Minear, Counselor to the Chief Justice, called me in his personal capacity – not his official capacity, to ask if a friend of his, Caryn Devins MLN, could meet with me on Friday, Feb. 15 about an EDR matter that seems not to be going as it should. I agreed. Caryn and her husband Cooper came to my office at 2 pm on 2/15/2019. My notes follow.

Caryn was a Supreme Court Fellow a few years ago, supervised by Stephen. Prior to that, Caryn clerked for a Vermont Supreme Court clerk and a Second Circuit federal judge. After her term as a Supreme Court Fellow, she became an Assist. (fix) Federal Public Defender in [ ]. She alleges that shortly after beginning that job, the First Assistant who supervised her began making inappropriate sexual-type comments and remarks. She characterized his actions towards her as stalking. She reported the First Assistant's conduct to the Defender. She alleges he did not take her allegations seriously enough, telling her that at least the First Assistant never touched her. She also believes the Defender has been retaliating against her by not hiring her for an AFPD position for which she was well qualified.

Caryn's allegations are set forth in the attached Request for Mediation.

Caryn's immediate concern is how her EDR claim is being processed. Caryn stated that Circuit Executive James Ishida is the EDR Coordinator. She says he seems very sincere and willing to help, but nonetheless, the EDR process seems to be bungled. And she believes it is being bungled to protect the Defender.

When she reported the harassment to the Defender, the Defender apparently filed a Wrongful Conduct Report with the Fourth Circuit. The Fourth Circuit treated that as if it were a separate complaint process, rather than simply a reporting mechanism for those who become aware of, but are not victims of, harassment. Caryn was told the EDR complaint process would need to be abated during the Wrongful Conduct investigation. She spent five hours with the HR Specialist assigned to investigate this. James apparently told the HR Specialist was told to redo her investigation because she did such a bare-bones investigation and failed to investigate Caryn's allegations that the Defender retaliated against her for reporting the harassment. Caryn has waited months for the investigation to be finished, and now is being told that the Circuit will not give her the results of its investigation.

In the EDR proceeding, Caryn moved to disqualify the Defender from acting on behalf of the FPD Office (the named Respondent). She is very unhappy that she filed that motion many months ago with Circuit Chief Judge Roger Gregory and he still has not ruled on her motion. She is now at the EDR Mediation stage – she met with the Circuit Mediator for the first-time last week. Caryn has requested that the First Assistant be terminated, or that she either be transferred to a different location within the Defender's office or be allowed to permanently telework. She has been told that neither of these are available options.

Caryn is upset that her EDR matter was abated, and that she is not being given the results of the investigation. Further, when she sought help from OFEP last fall, James and the Defender were very angry at her for doing so, which she feels is a form of retaliation because she has every right to seek guidance from OFEP.

I explained to Caryn that the purpose of the wrongful conduct provision in chapter IX is simply a reporting mechanism for those who become aware of harassment and was not designed or intended as

a separate complaint mechanism. But I said that courts are free to interpret EDR plans they way they see fit and the Fourth Circuit seemed to think that was the appropriate process, which they can do. I said it was very typical not to reveal the results of a wrongful conduct investigation to the parties, as it is an internal investigation. The Chief Judge is obligated to take appropriate action based on that investigation, but the EDR Plan does not obligate the court to reveal the actual investigation report. Nonetheless, I said Caryn could request that as part of her EDR discovery request. Caryn said the Mediator had mentioned it was difficult to mediate the matter without all of the facts. I suggested that Caryn request the Circuit to provide the full report to the Mediator, but if I were the Circuit, I would either disclose to everyone or no one.

Caryn said that she had revealed all of her allegations and supporting evidence to the HR Specialist, but had never revealed all that information in her EDR Request for Counseling or Mediation. I said that surprised me and that I didn't understand why. Caryn said she was told that would upset the Defender and make him defensive, rather than being willing to mediate a resolution. I said this frankly made no sense to me at all. Its fine in normal litigation to provide a short plain statement of allegations in a complaint because there are clear discovery rules, but in EDR, it is fast and short and there are no clear discovery rules, so it seems to me critical for a complainant to reveal all the allegations and evidence as soon as possible. I said Caryn could still amend her Request for Mediation to include all of the allegations and evidence that she provided to the HR Specialist/Investigator. Caryn said she believed that none of her factual allegations, even those in her Request for Counseling and Mediation, had ever been given to the Defender. I said the EDR Plan obligates the EDR Coordinator to provide a copy of the complete Requests for Counseling and Mediation to the UE of the Responding party, so this would make no sense to me at all. Again, though, I suggested she amend her Request for Mediation to include all of her allegations and supporting evidence and insist that the Defender be given a full copy of her amended Request for Mediation. If she was concerned that doing so would make the Defender unwilling to mediate with her on a reasonable basis, she could provide this information at the EDR Complaint stage but (1) that makes mediation even more useless and (2) risks an argument that she is raising new allegations and claims for the first time in her complaint, which is prohibited by the EDR Plan (which obligates all claims to be presented in the Request for Mediation). Caryn said the court is aware of all her allegations and evidence from its investigation, so she doubted the court would say she had waived these allegations/claims. Nonetheless, I said I did not see any benefit in not including everything in the Request for Mediation, whether as a supplement or an amendment.

I also said that it would not be expected that the EDR hearing officer would disqualify the head of the Responding Employing Office to act on behalf of the office, even when the UE is accused of wrongdoing. I explained that almost all EDR complaints allege that the UE violated their employment rights and that it was still entirely contemplated that the UE would act as the head of the Responding Office, just as any defendant to a civil action is the party responsible for acting as the defendant. If the court concluded there was a significant conflict of interest, it could act --such as hiring an outside law firm to represent the office -- and her motion for disqualification could be a means to do that, but that it would not at all surprise me if her disqualification motion was denied. I explained that disqualification motions were designed to ensure that the EDR Coordinator, Mediator, and Hearing Officer were impartial, not that the defending party was impartial.

Caryn, Cooper and I met for three hours on 2/15. Thus, this is a brief summary of all we discussed. Caryn and Cooper are going to consider their options. I asked if they wanted me to reach out to James

Ishida to discuss their concerns or to provide any EDR guidance. They said they would have to consider this over the weekend, as they fear my involvement might inflame matters. Generally speaking, they believe the EDR process has not been fair and impartial, certainly has not been transparent, and certainly has not provided Caryn with the safety or necessary resolution she desires. I said I did empathize with them about how things have proceeded, but (1) don't share their cynicism about why things have proceeded as they have and (2) reassured them that they are at the start of the EDR process, with all of the due process that it offers.

US00005447

| | |
|---|---|
| **From**: | Jill Langley [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CD4EF0166ACB4CC0859B60A4AEFDD2E6-JILL LANGLE] |
| **Sent**: | 3/1/2019 5:50:50 PM |
| **To**: | Caryn Devins [caryn.devins@hotmail.com] |
| **Subject**: | RE: checking in |

Thanks Caryn,

Thank you for following up with me. I am interested in your situation, and I do care about having this EDR process work better for you going forward. Do keep me in the loop and don't hesitate to call me whenever you want.

Warmest regards,

Jill

**From:** Caryn Devins <caryn.devins@hotmail.com>
**Sent:** Thursday, February 28, 2019 10:20 AM
**To:** Jill Langley <Jill_B_Langley@ca10.uscourts.gov>
**Subject:** Re: checking in

Dear Jill,

I hope you are doing well. I thought I would send you a copy of the latest filings in my EDR case, including a Supplement to Mediation Request and Renewed Request for Disqualification.

Best regards,

Caryn

**From:** Jill Langley <Jill_B_Langley@ca10.uscourts.gov>
**Sent:** Tuesday, February 19, 2019 9:16 AM
**To:** Caryn Devins
**Subject:** RE: checking in

Don't hesitate to contact me again. At least, do let me know how this is ultimately resolved. Every matter can be a "lesson learned." For example, your experience has taught me that I/we need to provide EDR interpretive guidelines to courts, to flesh out what I/we think should happen in EDR proceedings. I've trained EDR Coordinators in the Tenth Circuit, but I think that needs to be nationalized. And I'd like to better understand if FPDs are adequately protected by EDR remedies.

I wish you well, and remain here if you want.

Jill

**From:** Caryn Devins <caryn.devins@hotmail.com>
**Sent:** Tuesday, February 19, 2019 9:11 AM
**To:** Jill Langley <Jill_B_Langley@ca10.uscourts.gov>
**Subject:** Re: checking in

Dear Jill,

US00002207

Thank you for your warm email and for taking so much of your time to meet with me in person. I really appreciated your advice to supplement my original narrative with more detail in writing and I am currently working on that now.

I appreciate your offer to speak to James, but I would like to let things play out more first and see if my filings move things in a different direction. I will certainly let you know if that changes though.

Thanks again and I wish you the best in your new judicial integrity officer role.

Best regards,

Caryn

On Feb 17, 2019, at 3:59 PM, Jill Langley <Jill_B_Langley@ca10.uscourts.gov> wrote:

Caryn,

I hope Friday wasn't completely overwhelming. I felt a little overwhelmed, so I suspect you did as well. I want EDR to work; that is such a passion of mine. I can't address the whys of what has transpired in your cast to date, and I know this has been an arduous path for you, but I think it would be helpful to remember that you are still at the start of the EDR process. All of the due process rights in the EDR complaint process are still there for you to use.

If you were to let me speak to James, I could at least offer myself to him as a guide for how I train and expect EDR to work. I would not want to intervene, but just to offer him a sounding board for how I think the EDR process needs to work, so that everyone believes that the ultimate EDR result was fairly and transparently arrived at. It would involve me letting him know you reached out to me, which is entirely within your rights to do, but if that concerns you, I will not ever reveal our conversation or my knowledge of your claim.

I am also passionate that employees not fear retaliation for coming forward and for using EDR. You can and should report any retaliatory actions that you experience, and that includes letting me know.

With warmest regards,

Jill

Jill B. Langley
Judicial Integrity Officer
Office of Judicial Integrity
Administrative Office of the United States
Office: 202-502-3957
Gov't Cell: 202.531.4026

US00002208

**Sent**:      6/12/2019 5:24:20 PM
**To**:        Shirley Sohrn

Roger that. Thanks Shirley. I'll touch bases with you later about the workplace conduct conference.

Thanks again on both counts.

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

████████████ @ca4.uscourts.gov

On Apr 5, 2019, at 2:42 PM, Shirley Sohrn <Shirley_Sohrn@ao.uscourts.gov> wrote:

No, there is nothing that mandates sharing the report with either the individual who made the accusation, or the individual accused of the wrongful conduct. In fact, we generally advise NOT to share the report with either individual.

Reporting wrongful conduct under chapter IX is not the same as filing an EDR complaint. There are no "parties" at this point.

**From:** James Ishida [mailto ████████ @ca4.uscourts.gov]
**Sent:** Friday, April 05, 2019 2:21 PM
**To:** Shirley Sohrn <Shirley_Sohrn@ao.uscourts.gov>
**Subject:** Disclosure of EDR Investigation Report

Hi Shirley,

Quick question. We are in a Chapter IX EDR proceeding (Report of Wrongful Conduct). I gave a copy of the investigation report to the unit executive to decide whether disciplinary action should be taken against the employee accused of sexual harassment.

Is the employee entitled to see the investigation report?

Many thanks,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

████████████ @ca4.uscourts.gov

US00002739_0001

45

| | |
|---|---|
| **From:** | Caryn Devins |
| **To:** | ▮▮▮▮▮@ca4.uscourts.gov |
| **Cc:** | ▮▮▮▮▮ca4.uscourts.gov |
| **Subject:** | Re: INFORMATION - Actions Taken on Your Report of Wrongful Conduct |
| **Date:** | 06/04/2019 02:24 PM |

Dear James,

Thank you for letting me know.

Best regards,

Caryn

On Jun 3, 2019, at 4:29 PM, "▮▮▮▮▮@ca4.uscourts.gov"
<▮▮▮▮▮@ca4.uscourts.gov> wrote:

> Dear Caryn,
>
> I wanted to let you know that disciplinary action was taken last week as a result of your
> report of wrongful conduct. As we had discussed previously, I cannot reveal the nature of
> the action because it is a disciplinary matter. But I wanted to let you know that action was
> taken, and I wanted to re-emphasize that: (1) the Fourth Circuit took your report very
> seriously, (2) Chief Judge Gregory ordered a painstaking and exhaustive investigation into
> your allegations, and (3) actions were taken based on careful consideration of the
> investigation report.
>
> The Fourth Circuit deeply appreciates your time and effort in this process.
>
> Best regards,
>
> James
>
>
> James N. Ishida
> Circuit Executive
> U.S. Court of Appeals for the Fourth Circuit
> 1100 East Main Street, Suite 617
> Richmond, VA 23217-3517
>
> ▮▮▮▮▮@ca4.uscourts.gov

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 46 of 74

US00004714

AO 52
Rev 7/91

# REQUEST FOR PERSONNEL ACTION

U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 4

| PART A - Requesting Office | (Also complete Part B, Items 1,7-22,32,33,36 and 39) | |
|---|---|---|
| 1. Actions Requested<br>Pay Rate Change | | 2. Request Number<br>475673 |
| 3. For Additional Information Call     (Name and Telephone Number)<br>William Moormann | | 4. Emplid |
| This request is submitted with the approval of the court and is electronically signed by: | 6. Action Authorized By     (Typed Name, Title, Signature, and Date)<br>Anthony Martinez<br>Federal Public Defender | |

| PART B - For Preparation of SF 50 | (Use only codes in The Guide to Personnel Data Standards.  Show all dates in month-day-year order.) | | |
|---|---|---|---|
| 1. Name  (Last, First, Middle)<br>Strickland,Caryn Ann Devins | 2. Social Security Number | 3. Date of Birth | 4. Effective Date<br>08-20-2018 |

## FIRST ACTION / SECOND ACTION

| | FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|---|
| 5-A. Code<br>894 | 5-B. Nature of Action<br>Pay Adjustment | 6-A. Code | 6-B. Nature of Action | |
| 5-C. Code<br>S52 | 5-D. Legal Authority<br>AO 52 dated xx-xx-xxxx<br>08-28-2018 | 6-C. Code | 6-D. Legal Authority | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| Research & Writing Specialist<br>PD: 541011          Position:    P1700619 | Assistant Federal Public Defender<br>PD: 540400          Position:    P1700619 |

| 8.Pay Plan | 9.Occ. CD | 10.Grd/Lvl | 11.Step/Rate | 12.Tot. Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. CD | 18.Grd/Lvl | 19.Step/Rate | 20.Tot. Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FD | FD04 | 14 | 2 | $107,319.00 | PA | UG | FD02 | 00 | 0 | $92,349.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $92,349.00 | | $107,319.00 | | $92,349.00 | | $92,349.00 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| Federal Public Defender Office<br>129 West Trade Street<br>Room 300<br><br>Charlotte NC USA | Federal Public Defender Office<br>129 West Trade Street<br>Room 300<br><br>Charlotte NC USA |

## EMPLOYEE DATA

| 23. Veterans Preference<br>1-None     3-10 Point/Disability     5-10 Point/Other<br>2-5 Point     4-10 Point/Compensable     6-10 Point/Compensable/30% | 24. Tenure<br>0-None     2-Conditional<br>3     1-Permanent     3-Indefinite | 25. Agency Use | 26. Veterans Preference for RIF<br>YES              NO |
|---|---|---|---|
| 27. FEGLI<br>K0          Basic + Option B (2x) | 28. Annuitant Indicator<br>9     Not Applicable | | 29. Pay Rate Determinant |
| 30. Retirement Plan<br>KF     FERS FRAE and FICA | 31. Service Comp. Date (Leave)<br>09-10-2014 | 32. Work Schedule<br>F     Full Time | 33. Part-Time Hours Per Biweekly<br>Pay Period |

## POSITION DATA

| 34. Position Occupied<br>1-Competitive Service 3-SES General<br>2     2-Excepted Service     4-SES Career Reserved | 35. FLSA Category<br>E-Exempt<br>N-Nonexempt | 36. Appropriation Code | | |
|---|---|---|---|---|
| 38. Duty Station Code<br>FNCWXCHNCW | 39. Duty Station     (City-County-State or Overseas Location)<br>Charlotte  NC | | | |

| 40. Agency Data<br>LEI:  10-30-2017 | 41. | 42. SCD LEO | 43. | 44. |
|---|---|---|---|---|
| 45. Reason<br>PAY | 46. Reason<br>CPP | 47. Pay Rate Deter<br>Regular Rt | 48. Bud Cat<br>011E | 49. Org Title Code<br>0000 | 50. Jobcode<br>540400 | 51. Paygroup<br>C04 |

| PART C - Reviews and Approvals | (Not to be used by requesting office.) | | | | | |
|---|---|---|---|---|---|---|
| 1. Office/Function | Initials/Signature | Date | 1. Office/Function | Initials/Signature | Date | |
| A.  Requestor | William Moormann | 08-28-2018 | D. | | | |
| B. | | | E. | | | |
| C. | | | F. | | | |

**CONTINUED ON REVERSE SIDE**          **OVER**          Editions Prior to 7/91 Are Not Usable After 6/30/93

US00003411

Name: Strickland,Caryn Ann Devins           PAR Number:    475673

## PART D - Remarks by Requesting Office

## PART E - Employee Resignation/Retirement

1. Reasons for Resignation/Retirement (NOTE: Your reasons are used in determining possible unemployment benefits.
   Please be specific and avoid generalizations.
   Your resignation/retirement is effective at the end of the day - midnight - unless you specify otherwise.)

| 2. Effective Date | 3. Your Signature | 4. Date Signed | 5. Forwarding Address    (Number, Street, City, State, ZIP Code) |
|---|---|---|---|
|  |  |  |  |

## PART F - Remarks for SF 50

# *FIRST ASSISTANT DEFENDER*

## A. DEFINITION

The First Assistant Defender serves as the **principal deputy** to the Federal Public/Community Defender, assisting in the management of all phases of the defender organization. The First Assistant assumes the authority to take actions that affect the basic content and character of the organization's administrative and legal operations. ***The First Assistant Defender is a one-of-a-kind position within a defender organization and supervises a minimum of five (5) Assistant Federal Defenders (AFDs.)***

A defender organization that is authorized six or more AFDs, including those assigned to a branch office, may designate one of the six assistants as a supervisory AFD. One additional supervisory AFD may be designated out of each additional six AFDs on staff. Thus, a staff of six AFDs allows for one supervisory assistant; a staff of twelve AFDs allows for two to serve as supervisory AFDs.

## B. PRIMARY JOB DUTIES

The First Assistant Defender performs or supervises the performance of tasks such as the following:

1. In addition to providing zealous, professional legal representation to clients, the First Assistant assumes responsibility for the operations of the defender organization in the absence of the Federal Public/Community Defender.

2. Ensures attorneys and legal staff members are adequately trained to perform assigned duties. Training topics include current case law developments, advocacy in the courtroom and developing advanced skills in written, oral and interpersonal communications.

3. Supervises attorneys and legal staff members in order to provide clients with prompt, courteous and zealous legal representation.

4. Ensures that staff attorneys are provided adequate support staff and services in order to represent their clients.

5. Communicates in a supervisory capacity with the court, opposing counsel, clients and the families of clients concerning case-related issues.

6. Provides the CJA Panel with training, information and support. As designated by the court, assists with CJA Panel selection, supervision, case assignments, and voucher review.

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 49 of 74

US00004956

7. Acts as liaison between the defender organization and the court, court personnel, other related agencies, members of the CJA Panel and the private bar, Defender Services Division, other defender organizations, clients and client families, and members of the general public on administrative, institutional and case-related matters.

8. Analyzes organizational structure and recommends policy implementation to defender. Identifies, communicates, and positively resolves internal problems which might negatively impact the operation of the defender organization.

9. Initiates personnel actions involving all staff members when required. Actions may include: hiring, performance appraisals, mediation and negotiation, disciplinary actions, and employee job termination.

10. Oversees operations of the defender organization, and ensures that costs are kept within allocated budget levels. May actively participate in financial and procurement management.

11. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The First Assistant reports directly to the Federal Public/Community Defender.

## D. QUALIFICATIONS

To qualify for the position of First Assistant Defender, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The First Assistant Defender must be an attorney with a significant history of practice in the area of criminal law. Familiarity with the provision of defense or prosecution services, in either the public or private sectors, is necessary. Previous supervisory experience is preferred.

Requirements include admission and good standing before the federal bar, in combination with admission and good standing to a state bar. If mandated by the laws of the state or the local rules of the district in which the defender organization is located, admission to the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 50 of 74

US00004957

## E.  SALARY AND EXPERIENCE

The salary of the First Assistant Defender may not exceed the maximum salary level established for that position by Executive Office for United States Attorneys (EOUSA) and must conform to AFD Appointment and Compensation Policies provided by the ODS.  Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

## F.  EXPERIENCE REQUIREMENTS

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above.  Such experience provides evidence the individual has:

- the ability to supervise the work of others;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- an understanding of criminal law, criminal procedure, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

## G.   PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear.  The individual frequently is required to use hands to touch, handle, or feel.  The individual is frequently required to stand, walk and reach with hands and arms.  The individual must occasionally lift and/or move up to 25 pounds.  Frequent travel to branch offices may be required.  The individual will spend most of his/her time in an office environment.

US00004958

## ASSISTANT FEDERAL DEFENDER

### A. DEFINITION

The Assistant Federal Defender (AFD) provides every aspect of legal representation to individuals charged with federal criminal offenses but who are unable to retain an attorney. Duties include trials and court hearings, direct appeals to the circuit court, habeas, post-conviction and witness representation, and representation in other matters such as supervised release hearings and probation and parole hearings.

*In districts where an AFD is the only attorney in a branch office, some uncompensated supervisory duties may be assigned. The Federal Public/Community Defender, however, has full responsibility for all actions of the AFD.*

### B. PRIMARY JOB DUTIES

The Assistant Federal Defender performs tasks such as the following:

1. Provides zealous, professional legal representation to his/her clients. Appears, on behalf of the client, in court hearings and at other related proceedings.

2. Communicates with the court, opposing counsel, probation officers, witnesses, clients and the families of clients concerning case-related issues.

3. Maintains in-depth and updated knowledge of criminal defense trial and appellate practices and case law. Develops expertise with the federal sentencing guidelines, understands the ethical obligations and restrictions and practices courtroom advocacy. Pursues all appropriate available training opportunities including local or nationally sponsored core training within the limits of funding, workload and defender organization approval.

4. Prepares motions and briefs for consideration in federal magistrate, district, and appellate courts. Also prepares petitions for certiorari.

5. Prepares legal memoranda, review of issues, comprehensive statements of relevant facts, standards of review and briefs complex legal and factual arguments. Consults with investigative and legal staff regarding issues relevant to the case.

6. Examines complex and diverse records. Reviews the record proper, exhibits, transcripts and tapes of trials and hearings in habeas and direct appeals cases. Analyzes the record and determines relevant legal issues. Determines the need for an evidentiary hearing and prepares evidence for presentation.

7. Performs legal research utilizing all available resources including computer-assisted legal research tools. Research includes state and federal statutes, case law,

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 52 of 74

US00004968

regulations, precedents, treaties, sentencing guidelines, and related subject matter. Analyzes legal decisions, opinions, rulings, memoranda and related legal materials. Compiles and summarizes substantive information on statutes, treaties and specific legal subjects.

8. Analyzes the potential impact of new legislation, policies and regulations on the defender organization. Recommends short and long range plans to ensure efficient operations.

9. Updates research and prepares for oral argument. Prioritizes issues, analyzes difficulties of the case and prepares responses to possible panel questions.

10. Continues development of strong written and verbal communication skills to enhance professional documentation and interpersonal interaction.

11. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Assistant Federal Defender reports directly to the Federal Public/Community Defender or other supervising attorney as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Assistant Federal Defender, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Assistant Federal Defender must be an attorney with knowledge of defense or prosecution services, in either the public or private sector.

Requirements include admission and good standing before the federal bar, in combination with admission and good standing to a state bar. If mandated by the laws of the state or the local rules of the district in which the defender organization is located, admission to the bar of that state, or a commitment to admission to that bar within a year of acceptance of the position, is also required.

## E. SALARY AND EXPERIENCE

The salary of the Assistant Federal Defender may not exceed the maximum salary level established for that position by the Executive Office for United States Attorneys (EOUSA) and must conform to the AFD Appointment and Compensation Policies

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 53 of 74

US00004969

provided by the ODS.  Information concerning the salary maximum for this position is updated as received from the EOUSA and is provided to all defender organizations.

## F.  EXPERIENCE REQUIREMENTS

Progressively responsible experience as a lawyer in the functional areas described in the *Primary Job Duties* section above.  Such experience provides evidence the individual has:

- the ability to coordinate the work of others;
- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- an understanding of criminal law, criminal procedure, and evidence;
- experience performing progressively responsible duties as a lawyer;
- the skills and ability to execute the duties of the position.

## G.  PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear.  The individual frequently is required to use hands to touch, handle, or feel.  The individual is frequently required to stand, walk and reach with hands and arms.  The individual must occasionally lift and/or move up to 25 pounds.  Frequent travel to court locations and detention facilities may be required.  The individual works primarily in an office environment.

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 54 of 74

US00004970

# RESEARCH AND WRITING SPECIALIST

## A. DEFINITION

The Research and Writing Specialist provides advanced research and writing services to assistant federal defender (AFD) staff on trial and appellate cases. The individual in this position must be an attorney. The Research and Writing Specialist writes briefs, motions, petitions for certiorari, and legal memoranda for review by the Defender and staff attorneys. General duties include examining, analyzing and researching records and issues; performing legal research and preparing legal documents; assisting AFD staff with all aspects of case preparation, training and continuing legal education and supervision of other research staff as appropriate.

***The Research and Writing Specialist does not ordinarily sign pleadings or make court appearances. The Research and Writing Specialist position is not intended to serve as a proxy, substitute, or replacement for an AFD position, nor in the place of an additional AFD position.***

The Research and Writing Specialist, under supervision of the responsible AFD, may sign pleadings or make court appearances in exceptional circumstances, but only if the following conditions are met:

(1) the RWS has extraordinary case-specific expertise; the RWS has performed an exceptionally large amount of high quality work on the case; the RWS has an unusually strong interest in the case issues; the Defender concludes that a court appearance, under direct supervision, is appropriate for training purposes; or in other exceptional circumstances as determined by the Defender when necessary to protect the client's interest;

(2) authorization of the appropriate court; and

(3) if mandated by the laws of the state or the local rules of the district in which the defender organization is located, the RWS must be admitted to the bar of that state and to the bar of the federal court.

## B. PRIMARY JOB DUTIES

The Research and Writing Specialist performs or supervises the performance of tasks such as the following:

1. Assists the assigned attorney in the preparation of motions and briefs for review and signature by the Defender or the responsible case attorney for filing in federal magistrate, district, and appellate courts. Also assists in the preparation of petitions for certiorari.

2. Assists the assigned attorney in the preparation of legal memoranda for review and signature by the Defender and staff attorneys. Assists in the preparation of jurisdictional statements, review of issues, comprehensive statements of relevant facts, standards of review, and briefs complex legal and factual arguments. Advises the responsible attorney regarding all issues relevant to the case.

RESEARCH AND WRITING SPECIALIST
Defender Organization Classification System - DOCS
Revised: 2010
Page 4 - 1
Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 55 of 74
US00004971

3. Examines complex and diverse records. Reviews the record proper, exhibits, transcripts and tapes of trials and hearings in habeas and direct appeals cases. Analyzes the record and determines relevant legal issues. Determines the need for an evidentiary hearing and prepares evidence for presentation.

4. Performs legal research utilizing all available resources including computer-assisted legal research tools. Research includes state and federal statutes, case law, regulations, precedents, treaties, sentencing guidelines, and related subject matter.

5. Analyzes the potential impact of new legislation, policies and regulations on the defender organization. Develops and recommends short and long-range plans.

6. Updates research in preparation for oral argument by the responsible attorney. Consults with the attorney regarding the priority of issues, difficulties of the case and possible responses to panel questions.

7. Supervises law students, legal interns and paralegals where appropriate.

8. Analyzes legal decisions, opinions, rulings, memoranda and related legal materials, and prepares digests and indexes of same. Compiles and summarizes substantive information on statutes, treaties and specific legal subjects.

9. Coordinates and assists in coordinating training and CLE programs for office staff (and Panel attorneys where appropriate.)

10. Performs all other duties as assigned.

## C. ORGANIZATIONAL RELATIONSHIPS

The Research and Writing Specialist reports to the Defender or other supervisor as designated by the Defender.

## D. QUALIFICATIONS

To qualify for the position of Research and Writing Specialist, the individual must demonstrate the requisite experience outlined in the *Salary and Experience* and *Experience Requirements* sections. The individual must be able to perform each essential job duty satisfactorily. The job requirements are representative of knowledge, skills, and/or abilities necessary to perform the essential functions of the job.

The Research and Writing Specialist must be an attorney with knowledge of defense or prosecution services, in either the public or private sector.

Requirements include admission and good standing to a federal and state bar (see *DEFINITION*, subpart (3)).

RESEARCH AND WRITING SPECIALIST
Defender Organization Classification System - DOCS
Revised: 2010
Page 4 - 2
Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 56 of 74

US00004972

## E. SALARY AND EXPERIENCE SCALE

| DOCS Grade Level | Years of General Experience | Years of Specialized Experience | Total Years of Experience |
|---|---|---|---|
| 9 | 3 | 2 | 5 |
| 11 | 3 | 3 | 6 |
| 12 | 3 | 4 | 7 |
| 13 | 3 | 5 | 8 |
| 14 | 3 | 6 | 9 |
| 15 | 3 | 7 | 10 |

**Note:** One year of the required experience must have been at, or equivalent to, the next lower grade in federal service. Experience that has not provided training or required the application of the knowledge, skills and abilities outlined in the *Primary Job Duties* section above is **not** creditable experience. Specialized experience may always substitute for general experience but general experience may not substitute for specialized experience.

## F. EXPERIENCE REQUIREMENTS

### General Experience

Experience that provides evidence the individual has:

- a general understanding of the methods and skills required for accomplishing the tasks outlined in the *Primary Job Duties* section above;
- a general understanding of office confidentiality issues, such as attorney/client privilege;
- the ability to read, analyze and interpret common technical journals and legal documents;
- the ability to apply common sense understanding to carry out instructions furnished in written, oral or diagram form;
- the ability to analyze and apply relevant policies and procedures to office operations;
- the ability to exercise good judgment in a mature and diplomatic manner;
- the ability to communicate orally and in writing;
- a general knowledge of office practices and legal processes;
- the ability to recognize and analyze problems and recommend practical solutions;
- the ability to use a personal computer.

### Specialized Experience

Progressively responsible legal experience in the functional areas described in the *Primary Job Duties* section above. Such experience provides the individual:

- a comprehensive knowledge of legal principles, practices, methods and techniques;
- the ability to identify and evaluate pertinent facts and regulations, policies and precedents;
- skill and judgment in the analysis of cases and legal opinions;
- understanding of criminal law, criminal procedure, and evidence;

RESEARCH AND WRITING SPECIALIST
Defender Organization Classification System - DOCS
Revised: 2010
Page 4 - 3
Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 57 of 74
US00004973

- a knowledge of sentencing guidelines and evidence handling;
- experience performing progressively responsible duties of a lawyer;
- the skills and ability to execute the duties of the position.

## G.  EDUCATIONAL SUBSTITUTIONS

Education above the high school level in accredited institutions may be substituted for the general experience on the basis of one academic year (30 semester or 45 quarter hours) equals nine months of experience.

Completion of all the requirements for a bachelor's degree from an accredited college or university and having met one of the following may be substituted for one year of specialized experience:

1. An overall "B" grade point average equaling 2.9 or better of a possible 4.0.

2. Standing in the upper third of the class.

3. A "B+" (3.5) grade point average or better in major fields of study such as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position.

4. Election to membership in Phi Beta Kappa, Sigma XI, or one of the National Honor Scholastic Societies meeting the minimum requirements of the Association of College Honor Societies, other than Freshman Honor Societies.

Completion of one academic year (18 semester hours) of graduate study in an accredited university in such fields as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position, may be substituted for one year of specialized experience.

Completion of a master's degree or two years of graduate study (36 semester hours) in an accredited university in such fields as business or public administration, criminal justice, political science, law, management or other field closely related to the subject matter of the position, or completion of a Juris Doctor (JD), may be substituted for two years of specialized experience.

## H.  PHYSICAL DEMANDS AND WORK ENVIRONMENT

The physical demands described are representative of those required in order for an individual to successfully perform the essential functions of this job.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the individual is regularly required to sit and talk or hear. The individual frequently is required to use hands to touch, handle, or feel.  The individual is frequently required to stand, walk and reach with hands and arms. The individual must occasionally lift and/or move up to 25 pounds. Frequent travel to court locations and detention facilities may be required.  The individual will spend most of his/her time in an office environment.

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 58 of 74

US00004974

PPT 008.1

*Workplace harassment*



**Workplace Harassment**

- Workplace harassment is unlawful and is a form of discrimination.
- Workplace harassment is defined as any *unwelcome* verbal, written, or physical conduct that either denigrates or shows hostility or aversion toward a person on the basis of race, color, religion, sex, national origin, age, disability, or military or veteran status, and that ...

Participant Guide, page 5

Workplace harassment is unlawful and is a form of discrimination.

PPT 008.2



**Workplace Harassment**

- Workplace harassment is unlawful and is a form of discrimination.
- Workplace harassment is defined as any *unwelcome* verbal, written, or physical conduct that either denigrates or shows hostility or aversion toward a person on the basis of race, color, religion, sex, national origin, age, disability, or military or veteran status, and that ...

Workplace harassment is defined as any *unwelcome* verbal, written, or physical conduct that either denigrates or shows hostility or aversion toward a person on the basis of race, color, religion, sex, national origin, age, disability, or military or veteran status, and that

**Note:** Modify to include any additional protected classes in the court's EEO/EDR plans.

US00007017

PPT 009.1

**Workplace Harassment**

- has the purpose or effect of creating an intimidating, hostile, or offensive work environment;
- has the purpose or effect of unreasonably interfering with an employee's work performance; or
- affects employment decisions.

1. has the purpose or effect of creating an intimidating, hostile, or offensive work environment;

2. has the purpose or effect of unreasonably interfering with an employee's work performance; or

3. affects *employment decisions.*

PPT 009.2

**Workplace Harassment**

- has the purpose or effect of creating an intimidating, hostile, or offensive work environment;
- has the purpose or effect of unreasonably interfering with an employee's work performance; or
- affects employment decisions.

PPT 009.3

**Workplace Harassment**

- has the purpose or effect of creating an intimidating, hostile, or offensive work environment;
- has the purpose or effect of unreasonably interfering with an employee's work performance; or
- affects employment decisions.

Ask class.

What are some examples of employment decisions?

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 60 of 74

US00007018

Possible answers.

*Performance rating*

*Hiring or firing*

*Increasing or decreasing pay*

*Promoting or demoting*

*Making a job assignment*

Let's take a closer look at what the phrase "unwelcome verbal, written, or physical conduct" means.

By "unwelcome" we mean unwelcome to the person who perceives the alleged workplace harassment.

This is an important point.

Ensure that this point is made.

It is the perception of the individual who feels harassed that counts.

What is perceived as an offending comment or gesture by one person may seem perfectly innocent to another. But the *intent* doesn't determine whether it's workplace harassment; what counts is the perception of the person who feels harassed.

If the behavior makes the recipient feel uncomfortable, then if continued after a request to stop is made, it could be workplace harassment.

US00007019

**PPT 010**

**Quid Pro Quo Harassment**

Quid pro quo harassment involves expressed or implied demands for sexual favors in exchange for some benefit—such as a promotion or pay increase—or to avoid some workplace detriment—such as termination or demotion.

*Quid pro quo harassment{ TC  "Quid Pro Quo Harassment" \l 1 }*

Participant Guide, page 5

One type of workplace harassment is known as quid pro quo harassment.

The concept of workplace harassment first emerged in the context of sexual harassment. You may recall from previous sexual harassment prevention training that *quid pro quo* is Latin and means "this for that."

**PPT 010.1**

**Quid Pro Quo Harassment**

Quid pro quo harassment involves expressed or implied demands for sexual favors in exchange for some benefit—such a promotion or pay increase—or to avoid some workplace detriment—such as termination or demotion.

Quid pro quo harassment involves expressed or implied demands for sexual favors in exchange for some benefit— such as a promotion or pay increase—or to avoid some workplace detriment—such as termination or demotion.

**PPT 011**

**Quid Pro Quo Harassment**

By definition, quid pro quo harassment can be perpetrated only by someone in a position of power or authority over another—for example, a manager or supervisor over a subordinate.

By definition, quid pro quo harassment can be perpetrated only by someone in a position of power or authority over another—for example, a manager or supervisor over a subordinate.

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 62 of 74

US00007020

| | |
|---|---|
| Ask class. | For quid pro quo workplace harassment to occur, does it matter whether the demand was made outright or simply implied? |
| Ensure that this point is made. | *No, it doesn't matter. Either way, the manager or supervisor making this demand is committing quid pro quo workplace harassment.* |
| Ask class. | Does quid pro quo harassment occur only if someone makes sexual advances, requests sexual favors, or displays other verbal or physical conduct of a sexual nature? |
| Answer | *No. For example, supervisors who give plum job assignments on the basis of whether employees join them in telling obscene jokes are not making actual requests for sex but are nevertheless committing quid pro quo harassment because their verbal conduct is of a sexual nature.* |
| Ensure that this point is made.<br><br>Participant Guide, page 6 | Although EEOC regulations are not applicable to federal courts, they are instructive in saying that if one employee submits to a supervisor's request for sexual favors and gains job benefits or employment opportunities from that, then other qualified employees, both male and female, may file claims of sex discrimination for not being allowed those same job benefits or opportunities. |

Case 1:20-cv-00066-WGY   Document 243-15   Filed 06/01/23   Page 63 of 74

US00007021

**From:** Anthony Martinez [/O=FDO/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D2DBB0EDF64D67C4005FF8AB06256F69]
**Sent:** 7/26/2018 8:48:00 AM
**To:** Joshua B Carpenter [Joshua_Carpenter@fd.org]
**CC:** JP Davis [JP_Davis@fd.org]; Erin Taylor [Erin_Taylor@fd.org]; Holly Dixon [Holly_Dixon@fd.org]; Mary Ellen Coleman
[Mary_Ellen_Coleman@fd.org]; Peter Adolf [Peter_Adolf@fd.org]; William Moormann [William_Moormann@fd.org]
**Subject:** Re: Appeals / RW Posting DRAFT

Josh,

The posting was sent out yesterday. It should be on fd.org by this afternoon. Don't over think this. It's
a lot simpler than what it looks.

Thanks,
Tony

**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s)
named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for
delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly
prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

Joshua B Carpenter—07/26/2018 08:32:22 AM—Good morning everyone, After thinking about this for another day
and re-reading everyone's e-mails

From: Joshua B Carpenter/NCWF/04/FDO
To: JP Davis/NCWF/04/FDO@FDO
Cc: Erin Taylor/NCWF/04/FDO@FDO, Anthony Martinez/NCWF/04/FDO@FDO, Holly Dixon/NCWF/04/FDO@FDO, Mary Ellen Coleman/NCWF/04/FDO@FDO,
Peter Adolf/NCWF/04/FDO@FDO, William Moormann/NCWF/04/FDO@FDOEX
Date: 07/26/2018 08:32 AM
Subject: Re: Appeals / RW Posting DRAFT

Good morning everyone,

After thinking about this for another day and re-reading everyone's e-mails and concerns, my
recommendation is to go forward with the posting as drafted. Although it would be ideal to have the
conceptual stuff sorted out in advance, perhaps the more important point is what Erin suggested -- to
find someone good and figure it out from there. If, for example, we find someone with significant

US00004155

appeals experience, we may give that person something more like 70/30 appeals and, by doing so, free up more time for Jared and Caryn to work on trial-support issues. On the other hand, if the best person is really smart but less experienced, then perhaps we would have that person join Jared and Caryn with something like a 30/70 appeals split. Between the three of them, we need basically one FTE of appeals / post-conviction work, so there are a lot of ways to get there.

With all that said, when the time comes for the structural discussion, I continue to believe that the structure I articulated -- based on Jared's input -- is the one that best serves the office team **as a whole**. I understand that it would be ideal for each of the four trial teams to have a dedicated, full-time RW for the team leader to direct as they see fit. But we don't have the funding capacity for that, so it's a nonstarter. The difference between the single-unit concept (appellate and trial-support together) versus the separate-units concept is fairly minimal in practice. I prefer the single-unit concept because (1) that's how Jared prefers it, from what he told me; and (2) that's how we hired Jared in the first place, and I believe there's a consensus that hiring him has been a strong positive for the office as a whole. But I'm happy to defer further discussion on this until we get the posting up and see what our applicant pool looks like.

Thanks,

Josh


Joshua B. Carpenter
Appellate Chief
Federal Public Defender
Western District of North Carolina
One Page Ave., Suite 210
Asheville, NC 28801
(828) 232-9992


JP Davis—07/25/2018 02:24:25 PM—My thoughts, en bref: 1) I don't actually care. Like Peter, I have traditionally done all my own wor

From: JP Davis/NCWF/04/FDO
To: Joshua B Carpenter/NCWF/04/FDO@FDO
Cc: Erin Taylor/NCWF/04/FDO@FDO, Anthony Martinez/NCWF/04/FDO@FDO, Holly Dixon/NCWF/04/FDO@FDO, Mary Ellen Coleman/NCWF/04/FDO@FDO, Peter Adolf/NCWF/04/FDO@FDO, William Moormann/NCWF/04/FDO@FDOEX
Date: 07/25/2018 02:24 PM
Subject: Re: Appeals/ RW Posting DRAFT


My thoughts, en bref:

1) I don't actually care. Like Peter, I have traditionally done all my own work, and despite a brief hiatus I expect to return to that model.

2) I thought we were hiring this person to be more like 50/50 trial and appeal. If that's the case, then I think they are close enough to an appellate RW that they would report to the appeals chief. If they are 70% trial support, then they're basically the same as our current RWs and I'm not sure what the distinction is between the positions. Am I misremembering?

US00004156

3) To my knowledge, every Charlotte trial team meets regularly. My team's RW hasn't really been acting as an RW so I'm not sure I can speak to the utility of having them in meetings.

4) On the one hand, having a free flowing RW unit seems to me to be a little contrary to the team structure Tony had in mind. On the other hand, 3 does not divide evenly by 4. These seem to be the main issues in tension from my point of view.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

Joshua B Carpenter—07/25/2018 11:16:42 AM—I agree with thinking more about it. But because the theoretical question is highly relevant to this

From: Joshua B Carpenter/NCWF/04/FDO
To: Erin Taylor/NCWF/04/FDO@FDO
Cc: Anthony Martinez/NCWF/04/FDO@FDO, Holly Dixon/NCWF/04/FDO@FDO, JP Davis/NCWF/04/FDO@FDO, Mary Ellen Coleman/NCWF/04/FDO@FDO, Peter Adolf/NCWF/04/FDO@FDO, William Moormann/NCWF/04/FDO@FDOEX
Date: 07/25/2018 11:16 AM
Subject: Re: Appeals / RW Posting DRAFT

I agree with thinking more about it. But because the theoretical question is highly relevant to this posting -- and pretty much irrelevant in every other context -- we need to figure it out sooner rather than later.

Here are a few points of information relevant to the conversation:

• 1 -- I agree that when Erin was an RW, she was not in any way part of the appellate unit. Nor was I even here at that time. RWs were used differently then, as a training ground for future trial AFPDs. I don't think anyone is intending to go back to that model, but let me know if I'm mistaken.

• 2 -- The current iteration, in which the RWs have been ostensibly a part of the "appellate unit," began when we posted for the position that ultimately led to Jared's hiring. This was a vision that Ross and I had, believing that someone who assisted with more traditional RW or trial-support tasks would greatly benefit the office. From the time I arrived in 2012 until Jared joined in 2015, the trial AFPDs either did their own motions or they didn't get done. We believed adding someone like Jared would enhance the overall practice of our office, and I think that's been a success. Let me know if anyone disagrees.

• 3 -- I also agree with Erin that having the RWs participate in team meetings can be a good thing. Not all teams do those meetings on a regular basis, but I don't believe that the outcome of the structural discussion impacts the ability of team leaders to ask RWs to participate in team meeting when appropriate (and if "always" is the appropriate answer, that's fine with me). In fact, if a trial team has more than one RW in the meeting because more than one RW is working on the trial team's cases, that would seem like an even better outcome more likely to facilitate the brainstorming process.

•

US00004157

- 4 -- I also agree with Erin that I don't much care what unit they belong to, in a theoretical sense. But it is relevant to how we advertise and fill the current open slot. Based on our meeting Friday, I believe we all envision that position's initial workload balance being something like 70% trial-support and 30% traditional appeals or post-conviction. If we are using a separate-unit structure or an embedded-within-a-single-trial-team structure, then we need to advertise the position that way. We would also, I think, be well advised to advertise it as an RW slot if we want to use either of those structures. And the structure also logically affects who participates from our end in the interview process.

- 5 -- To illustrate the point, here is why I believe it is critical to think through the structural question now. Imagine, in the interview, that an applicant asks "So if I'm hired, who would be my supervisor?" It's a reasonable question, right? In the appellate-unit structure, that person would technically be me, though we would explain that Jared will be serving as the gatekeeper for trial-support assignments and that the person will be expected to participate in trial-team meetings for cases they are assigned. In the separate-unit structure, the supervisor would be Jared -- I'm not sure he wants that responsibility, but if we decide it's best, I'm sure we can talk him into it. If the answer is an embedded-in-a-single-trial-team structure, then the answer would be the trial team leader. The point is -- if we post this as an "appellate" position, then the answer to that question has to be the appellate chief. Otherwise, we need to frame the posting differently.

-

I apologize for the length of this e-mail. I recognize that I've spent the last 24 to 48 hours puzzling about this, and talking it through with Jared and Mary Ellen, while many of you are now thinking about it for the first time. I'm very much open to further thoughts and discussion -- I just want to do what's right for the office. Frankly, I was somewhat undecided about this until I talked to Jared last night, and he convinced me that the concept of a single-unit providing support to everyone best suits his understanding of what we've been doing and what we hope to accomplish in the future.

-
-

Joshua B. Carpenter
Appellate Chief
Federal Public Defender
Western District of North Carolina
One Page Ave., Suite 210
Asheville, NC 28801
(828) 232-9992

Erin Taylor—07/25/2018 10:47:30 AM—I have to disagree with the suggestion that this marks any kind of significant change. In fact, I was basing this articulation

From: Erin Taylor/NCWF/04/FDO
To: Joshua B Carpenter/NCWF/04/FDO@FDO
Cc: Peter Adolf/NCWF/04/FDO@FDO, Anthony Martinez/NCWF/04/FDO@FDO, Holly Dixon/NCWF/04/FDO@FDO, JP Davis/NCWF/04/FDO@FDO, Mary Ellen Coleman/NCWF/04/FDO@FDO, William Moormann/NCWF/04/FDOEX
Date: 07/25/2018 10:47 AM
Subject: Re: Appeals/RW Posting DRAFT

US00004158

I think we all need to take a step back, and discuss this further as Peter suggested. I do want to add that having the R&Ws participate in our team meetings has proven to be extremely valuable because they add a great deal to our brainstorming sessions, which also makes their involvement in trial cases more fluid when something comes up. I also believe that the R&Ws find value in being involved from the ground up. Frankly, I don't care what "unit" they belong to so long as we don't lose their team involvement. Also, when I was an R&W, I never saw myself as part of the Appellate unit, nor was I treated as such. Remember, the trial team structure is brand new for us, so deciding exactly where the R&Ws will end up may be a bit premature. Let's just get someone in here who can do the work and we can tweak everything else later.

Sent from IBM Verse

Erin K. Taylor
Trial Team Leader
Assistant Federal Public Defender
Federal Public Dedender
Western District of North Carolina
(704) 374-0720

Joshua B Carpenter --- Re: Appeals / RW Posting DRAFT ---

| | |
|---|---|
| From: | "Joshua B Carpenter" <Joshua_Carpenter@fd.org> |
| To: | "Peter Adolf" <Peter_Adolf@fd.org> |
| Cc: | "Anthony Martinez" <Anthony_Martinez@fd.org>, "Erin Taylor" <Erin_Taylor@fd.org>, "Holly Dixon" <Holly_Dixon@fd.org>, "JP Davis" <JP_Davis@fd.org>, "Mary Ellen Coleman" <Mary_Ellen_Coleman@fd.org>, "William Moormann" <William_Moormann@fd.org> |
| Date: | Wed, Jul 25, 2018 10:34 AM |
| Subject: | Re: Appeals / RW Posting DRAFT |

I have to disagree with the suggestion that this marks any kind of significant change. In fact, I was basing this articulation of things in part on your e-mail from over the weekend, Peter. I don't understand how or why this would affect an R&W's involvement in a trial case at all. In your hypothetical, when an RW becomes involved with a suppression, I agree that it might naturally lead to participation in a hearing, to the extent both the RW and the trial lawyer believe that is appropriate -- Jared, of course, never does this; but other RWs might want to. None of that changes at all. In other words, when a RW begins working on an assignment in a particular trial case, they become a part of that trial case team.

Based on my conversation with Jared, he and I both view this as simply an articulation of the way we've viewed the relationship as previously existing, not as marking any kind of change.

Joshua B. Carpenter
Appellate Chief
Federal Public Defender
Western District of North Carolina

US00004159

One Page Ave., Suite 210
Asheville, NC 28801
(828) 232-9992

Peter Adolf—07/25/2018  10:21:33 AM—While it doesn't affect the posting one way or the other in my view, the proposed single-unit struct

From: Peter Adolf/NCWF/04/FDO
To: Joshua B Carpenter/NCWF/04/FDO@FDO
Cc: Anthony Martinez/NCWF/04/FDO@FDO, Erin Taylor/NCWF/04/FDO@FDO, Holly Dixon/NCWF/04/FDO@FDO, JP Davis/NCWF/04/FDO@FDO, Mary Ellen Coleman/NCWF/04/FDO@FDO, William Moormann/NCWF/04/FDO@FDOEX
Date: 07/25/2018 10:21 AM
Subject: Re: Appeals/ RW Posting DRAFT

While it doesn't affect the posting one way or the other in my view, the proposed single-unit structure would be a significant change, for better or worse. The appellate/R&Ws' involvement in trial unit cases would change from case-based to task-based. As an example, currently an R&W's involvement in identifying suppression issues or drafting a suppression motion might naturally lead to participation in questioning police witnesses at a suppression hearing, or even second-chairing the trial at which those same witnesses testify, any of which would naturally also lead to more client contact and trial/plea strategy involvement. That would all be because the R&W is part of the trial team from the beginning, whether utilized or not, and presumably has some familiarity with the case from team meetings if nothing else. All of that is much less likely to happen if the R&W/AFD is officially part of the appellate team only. Also, I am aware that R&Ws have drafted sentencing memos for some lawyers in the past, which presents a more awkward fit for an appellate lawyer unfamiliar with the case and client at the time a sentencing date is set.

I don't have a strong opinion one way or the other about how trial R&W work gets assigned, because frankly I use R&Ws very little – really only for occasional issue-spotting for suppression issues and narrow research for guidelines objections, since I usually write my own suppression motions and sentencing objections/memos. It might be worthwhile to talk to the trial lawyers more generally about the role of R&Ws in their cases, either informally one-on-one, through team meetings, or in a larger attorneys' meeting.

-PSA

**Peter Adolf**
Trial Team Leader
Assistant Federal Public Defender



Federal Public Defender
Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Peter_Adolf@fd.org

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender, Western District of North Carolina which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

Joshua B Carpenter—07/25/2018  08:49:22 AM—All, With thanks to Bill for sending me a draft with all the technical requirements, I'm attaching

From: Joshua B Carpenter/NCWF/04/FDO
To: Anthony Martinez/NCWF/04/FDO@FDO, JP Davis/NCWF/04/FDO@FDO, William Moormann/NCWF/04/FDO@FDOEX, Peter Adolf/NCWF/04/FDO@FDO, Erin Taylor/NCWF/04/FDO@FDO, Holly Dixon/NCWF/04/FDO@FDO, Mary Ellen Coleman/NCWF/04/FDO@FDO
Date: 07/25/2018 08:49 AM
Subject: Appeals/ RW Posting DRAFT

All,

With thanks to Bill for sending me a draft with all the technical requirements, I'm attaching for everyone's input a draft of the Appeals / RW posting. The posting is drafted to reflect the way I envision the appellate team, which is as a single unit that serves the rest of the office by providing support to the trial teams and by handling appeals and post-conviction issues. This is the vision we had for the appellate team when we posted in 2014 / 2015 for an Appellate RW position, which is the posting that led to Jared's hiring, and it is the way I have continued to envision it. But I've been putting a lot of thought -- probably too much -- into this conceptual issue, because it would be also possible, I suppose, to treat the Appellate and RW (trial-support) units as separate and distinct.

Because I was working through this conceptual issue, I reached out to Jared and had a lengthy conversation with him last night about his preference between these two structures. He told me that he prefers the single-unit structure rather than the separate structure, in large part because he likes that, under that structure, he has me as an outlet to address any workload or personnel issues that arise. He also reminded me that this is what happened on the Bradley case, where we recently won the motion to suppress -- when Mary Ellen made the help request, Jared was at capacity and Caleb and Caryn were too, so Jared reached out to me and I helped Ann juggle some things to allow her to work with Mary Ellen on the initial motion.

Please let me know if anyone has thoughts or concerns about this whole issue. I feel sure I've been over-thinking it. But if, for some reason, we do prefer the alternative structure -- with the Appellate and RW (trial-support) units being separate -- then I think we will need to rework the posting. Most importantly, I don't think we can advertise an "Appellate" position if the person would be located within the RW (trial-support) unit rather than the Appellate unit under that alternative structure.

Finally, I inserted a priority date of August 17 -- let me know if anyone has thoughts on moving that one way or the other.

Thanks,

Josh


[attachment "App AFD posting.docx" deleted by Peter Adolf/NCWF/04/FDO]


Joshua B. Carpenter
Appellate Chief
Federal Public Defender
Western District of North Carolina
One Page Ave., Suite 210
Asheville, NC 28801
(828) 232-9992

**From**: Caryn Devins [caryn.devins@hotmail.com]
**Sent**: 8/6/2018 9:26:25 AM
**To**: Nancy Dunham [Nancy_Dunham@ao.uscourts.gov]
**Subject**: August 2018 organizational chart
**Attachments**: IMG_2780.JPG; ATT00001.txt

As a last thought...I have three more emails asking me out to drinks that I can provide if needed, but I will need to redact client information. Just let me know whatever you need. Caryn

# Federal Public Defender - Western District of North Carolina
## Organization Chart



US00001057

**From**: Caryn Devins [caryn.devins@hotmail.com]
**Sent**: 8/6/2018 9:24:41 AM
**To**: Nancy Dunham [Nancy_Dunham@ao.uscourts.gov]
**Subject**: Dec 2017 organizational chart
**Attachments**: IMG_2779.JPG; ATT00001.txt

US00001059

US0001000160



Federal Public Defender - Western District of North Carolina
Organization Chart