# Exhibit 24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

## <u>DECLARATION OF JOHN G. BAKER</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1.      I am John G. Baker, the current Federal Public Defender for the Western District of North Carolina.

2.      I have served in this role since March 28, 2022.

3.      In this role, I lead the Office of the Federal Public Defender ("FDO" or "the Office") for the Western District of North Carolina, which is headquartered in Charlotte and operates a divisional office in Asheville. The FDO consists of approximately twenty-two assistant federal defenders as well as support staff, including paralegals, investigators, and administrative personnel. The FDO represents defendants charged with federal crimes in North Carolina's thirty-two westernmost counties and provides capital habeas representation for clients throughout the Fourth Circuit.

4.      Prior to serving as the Federal Public Defender, I had significant experience as a criminal defender and leader who served as a career officer in the United States Marine Corps for over thirty-two years.

5.      I am aware that Plaintiff made over a dozen audio recordings of her colleagues in the FDO during her time as a Research and Writing Attorney and Assistant Federal Defender without obtaining prior approval.

6.      I have reviewed Plaintiff's Supplemented Privilege Log for information about the time, place, parties, and content of those audio recordings.

7.     I have also reviewed an excerpt of the Plaintiff's deposition transcript in this matter. I am aware that Plaintiff retained copies of these audio recordings as well as emails containing privileged client information. *See* Pl.'s Depo. at 135:9-13 (admitting she retained copies of recordings discussing privileged matters); 151:18-152:3 (admitting she retained emails containing privileged client communications).

8.     I am familiar with the Office's Employee Handbook, which was created on July 27, 2018 and, as updated, remains in effect today. This Employee Handbook contains the responsibilities and office polices for the FDO.

9.     Plaintiff's audio recordings include "All Staff" meetings and another "team meeting". *See* Ex. A, Pl.'s Supp. Privilege Log. As is to be expected at such meetings, these recordings contain privileged client information. *Id.*

10.     In my view, these audio recordings go well beyond any legitimate need Plaintiff may have had to support her EDR process. The Employee Handbook states that:

> No employee is authorized to release any confidential information about the Office or its clients unless expressly authorized to do so. Client information is confidential and can be used for very limited purposes only. In the case of any doubt or uncertainty, confidentiality should be presumed. With respect to a case, the attorney assigned to that case is responsible for maintaining confidentiality, and no other employee will release information without that attorney's express approval. . . . The removal of any document from the Defender's Office, except for official, authorized use, is also prohibited.

> Ex. B at § 5.18, pp. 56-57.

11.     Both the making of the audio recordings and the retention of copies without authorization after Plaintiff's separation from the FDO raises a serious question about whether she violated section 5.18 of the Employee Handbook.

12.     Plaintiff's retention of FDO emails containing privileged client information also raises a serious question about whether she violated this policy. *See* Pl.'s Depo. at 151:18-152:3.

13.     My office takes the confidentiality of our clients seriously, and Plaintiff has disregarded both the letter and spirit of the confidentiality policy by recording and retaining privileged client information in her possession and for her own personal use.   I would not hire someone to my office or reinstate an employee whom I know to have arguably violated this confidentiality policy.

14.     Plaintiff's conduct also undermines the trust between colleagues necessary to the team approach of this Office. This behavior reflects not only a disregard for the rules of this Office, but also a disregard for the sanctity of the attorney-client relationship.

15. Plaintiff's actions arguably constitute misconduct and, if she were still employed by this Office, I would assess whether Plaintiff could be subject to discipline under the Employee Handbook § 7.00, which states the following applicable grounds for "removal, suspension, demotion, or termination":

> H. Discourteous treatment of the public, clients, or of other employees;
> …
> O. Misuse of federal property, funds, or records;
> …
> Q. Violation of established office rules, policies, and procedures;
> …
> T. Failure to comply with the policies, rules, and procedures of the Office;
> …
> X. Other acts which reflect discredit upon the office and its personnel.

> Ex. B, § 7.00, pp. 70-71.

16. Because of the "red flags" raised by virtue of the recordings and retention of privileged email communications, as described above, as the unit executive of this Office, I consider Plaintiff ineligible for reinstatement.

Date: June 1, 2023

John Baker
Digitally signed by John Baker
Date: 2023.05.31 21:20:16 -04'00'

John G. Baker
Federal Public Defender,
Western District of North Carolina

# Exhibit A

**Strickland v. United States, No. 20-cv-66**

**Plaintiff's Supplemented Privilege Log**

| | Date Range | Doc. Type | Sender(s)/Recipient(s) | Category Description | Privilege Justification | Docs. Withheld/Redactions |
|---|---|---|---|---|---|---|
| 1 | August 2017 – March 2019 | Emails (*e.g.*, EDR complaint exhibits), PDF attachments, handwritten notes produced during EDR complaint process | Various | Redaction of FDO client identifying information, FDO internal case related information, and information protected by FDO WP and AC privileges.[1] | AC privilege WP privilege | Numerous redactions in documents provided in discovery[2] |
| 2 | September 2018 – March 2019 | Emails, handwritten notes produced during EDR complaint process | Cooper Strickland/Caryn Strickland | Communications regarding EDR process while Cooper Strickland was serving as Caryn Strickland's EDR representative | AC privilege WP privilege Spousal privilege | Redactions provided in emails disclosed in discovery |
| 3 | October 5, 2018 | Audio Recording | Heather Beam/Caryn Strickland | FDO client identifying information | AC privilege WP privilege | Audio silenced to redact privileged info |

---

[1] Because the redactions of FDO related information concern many different clients, proceedings, and case assignments, a categorical description of the basis for redaction is provided throughout this document. Counsel are available to meet and confer regarding any specific questions pertaining to the redactions.

[2] The nature of these redactions should be self-evident from the face of the documents. Counsel are available to meet and confer regarding any specific questions pertaining to the redactions.

| 4 | August 9, 2018 | Audio Recording | Josh Carpenter/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
|---|---|---|---|---|---|---|
| 5 | August 24, 2018 | Audio Recording | Josh Carpenter/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 6 | November 16, 2018 | Audio Recording | FDO Team Meeting: Peter Adolf, Cecilia Oseguera, Lisa Ottens, Ivette Arroyo-Becker | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 7 | December 21, 2018 | Audio Recording | FDO All-Staff Meeting: Relevant speakers are Peter Adolf, Kevin Tate, and Tony Martinez | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 8 | November 6, 2018 | Audio Recording | Josh Carpenter/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 9 | January 11, 2019 | Audio Recording | Josh Carpenter/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |

| 10 | August 3, 2018 | Audio Recording | Josh Carpenter/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
|----|----------------|-----------------|----------------------------------|------------------------------------------------------------------------------------------------------------|---------------------------|--------------------------------------------|
| 11 | September 10, 2018 | Audio Recording | Kelly Johnson/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 12 | August 28, 2018 | Audio Recording | Jared Martin/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 13 | August 22, 2018 | Audio Recording | Kelly Johnson/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 14 | September 21, 2018 | Audio Recording | Josh Carpenter/Jared Martin/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
| 15 | October 1, 2018 | Audio Recording | Josh Carpenter/Caryn Strickland | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |

| 16 | March 15, 2019 | Audio Recording[3] | FDO All-Staff Meeting: Relevant Speaker is Tony Martinez | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Audio silenced to redact privileged info |
|----|----|----|----|----|----|----|
| 17 | 6/1/18-8/31/18 | Text Messages | Brian Wise | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 18 | 6/1/18-8/1/18 | Text Messages | Brian Wise and Terra Parrish | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 19 | 5/11/18-6/20/19 | Text Messages | Caleb Newman | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases[4] | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 20 | 3/23/19-12/3/19 | Text Messages | Charlie Hogle | Redaction of internal case-related/chambers information | Judicial confidentiality | Redactions in text messages disclosed in discovery |

[3] Plaintiff withheld approximately 23 recordings that have no relevance to this litigation and that are protected by WP and AC privileges.

[4] In addition to redacting privileged information, Plaintiff redacted personal information relating to this individual, such as information pertaining to the individual's employment, family, and health conditions, that has no relevance to this litigation. For the sake of completeness, Plaintiff provided entire chains of text messages with irrelevant information redacted wherever feasible, rather than extracting particular text messages.

| 21 | 3/21/18-6/17/18 | Text Messages | Jeff King | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
|----|-----------------|---------------|-----------|------------------------------------------------------------------------------------------------------------|---------------------------|----------------------------------------------------|
| 22 | 3/18/19-2/13/20 | Text Messages | Shampa Panda | Redaction of internal case-related/chambers information[5] | Judicial confidentiality | Redactions in text messages disclosed in discovery |
| 23 | 7/19/18-3/17/19 | Text Messages | Jared Martin | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 24 | 7/27/18-2/1/19 | Text Messages | Josh Carpenter | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 25 | 2/27/18-6/19/18 | Text Messages | JP Davis | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 26 | 3/13/18-11/8/18 | Text Messages | Kelly Johnson | Redaction of client identifying info, FDO work product information | AC privilege WP privilege | Redactions in text messages disclosed in discovery |

[5] In addition to redacting privileged information, Plaintiff redacted personal information relating to this individual, such as information pertaining to the individual's employment, family, and health conditions, that has no relevance to this litigation. For the sake of completeness, Plaintiff provided entire chains of text messages with irrelevant information redacted wherever feasible, rather than extracting particular text messages.

| | | | | and internal discussion of FDO cases | | |
|---|---|---|---|---|---|---|
| 27 | 3/30/18-6/15/18 | Text Messages | Peter Adolf | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 28 | 2/25/18-1/4/19 | Text Messages | Terra Parrish | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases[6] | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 29 | 6/19/18 | Text Messages | JP Davis, unidentified number | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 30 | 3/12/18-9/7/18 | Text Messages | Tony Martinez | Redaction of client identifying information | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 31 | 3/27/18-4/19/18 | Text Messages | JP Davis, Terra Parrish | Redaction of client identifying info, FDO work product information | AC privilege WP privilege | Redactions in text messages disclosed in discovery |

---

[6] In addition to redacting privileged information, Plaintiff redacted personal information relating to this individual, such as information pertaining to the individual's employment, family, and health conditions, that has no relevance to this litigation. For the sake of completeness, Plaintiff provided entire chains of text messages with irrelevant information redacted wherever feasible, rather than extracting particular text messages.

| | | | | and internal discussion of FDO cases | | |
|---|---|---|---|---|---|---|
| 32 | 3/10/18-3/27/18 | Text Messages | JP Davis, Terra Parrish | Redaction of client identifying info, FDO work product information and internal discussion of FDO cases | AC privilege WP privilege | Redactions in text messages disclosed in discovery |
| 33 | November 9, 2018 | Audio Recording | Heather Beam/Caryn Strickland/Cooper Strickland | FDO client identifying information | AC privilege WP privilege | Audio silenced to redact privileged info |
| 34 | ███████[7] [CONFIDENTIAL PURSUANT TO ECF NO. 183] | ███████ | ███████ | ███████ | ███████ | ███████ |

███ entry is **CONFIDENTIAL pursuant to the parties' protective order, ECF No. 183.**

[9] *See* Fourth Circuit EDR Plan Ch. X, § 4 (2013) (protecting employee's right to confidentiality and stating that "information about allegations filed under this Plan shall be shared on a need-to-know basis"); Fourth Circuit EDR Plan § V(B)(1) (2020) ("All individuals involved in the processes under this Plan must protect the confidentiality of the allegations of wrongful conduct.").

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | process.[8] Employee asserts all communications initiated after she began discussing employment-related issues with Plaintiff as AC privileged and confidential. | | |
| 35 | [10] [CONFIDENTIAL PURSUANT TO ECF NO. 183] | ███ | ███ | ████████ | ███ | ████ |

---

[8] See Fourth Circuit EDR Plan Ch. X, § 5(b) (2013) ("Each individual invoking the dispute resolution procedures of this Plan has the right to be represented by a person of his or her choice . . . ."); Fourth Circuit EDR Plan § V(B)(3) (2020) (stating that employee has "the right to be represented by an attorney or other person of their choice").

[10] **This entry is CONFIDENTIAL pursuant to the parties' protective order, ECF No. 183.**

[11] See Fourth Circuit EDR Plan Ch. X, § 5(b) (2013) ("Each individual invoking the dispute resolution procedures of this Plan has the right to be represented by a person of his or her choice . . . ."); Fourth Circuit EDR Plan § V(B)(3) (2020) (stating that employee has "the right to be represented by an attorney or other person of their choice").

[12] See Fourth Circuit EDR Plan Ch. X, § 4 (2013) (protecting employee's right to confidentiality and stating that "information about allegations filed under this Plan shall be shared on a need-to-know basis"); Fourth Circuit EDR Plan § V(B)(1) (2020) ("All individuals involved in the processes under this Plan must protect the confidentiality of the allegations of wrongful conduct.").

| | | | | asserts all communications initiated after he began discussing employment-related issues with Plaintiff as AC privileged and confidential. | | |
|---|---|---|---|---|---|---|
| 36 | [CONFIDENTIAL PURSUANT TO ECF NO. 183] [13] | ████ | ████ | ████████ | ████ | ████ |

---

[13] **This entry is CONFIDENTIAL pursuant to the parties' protective order, ECF No. 183.**

[14] *See* Fourth Circuit EDR Plan Ch. X, § 5(b) ("Each individual invoking the dispute resolution procedures of this Plan has the right to be represented by a person of his or her choice . . . ."); Fourth Circuit EDR Plan § V(B)(3) (2020) (stating that employee has "the right to be represented by an attorney or other person of their choice").

[15] *See* Fourth Circuit EDR Plan Ch. X, § 4 (protecting employee's right to confidentiality and stating that "information about allegations filed under this Plan shall be shared on a need-to-know basis"); Fourth Circuit EDR Plan § V(B)(1) (2020) ("All individuals involved in the processes under this Plan must protect the confidentiality of the allegations of wrongful conduct.").

**EMPLOYEE HANDBOOK**
**FEDERAL PUBLIC DEFENDER'S OFFICE**



**WESTERN DISTRICT OF NORTH CAROLINA**

Original: July 27, 2018

1

# Table of Contents

Introduction ........................................................................................................................ 7

1.00    CODE OF CONDUCT ............................................................................................ 8

2.00    OFFICE HOURS AND GENERAL POLICIES ..................................................... 14

   2.01    Working Hours and Holidays ........................................................................... 14

   2.02    Attendance/Punctuality .................................................................................... 15

   2.03    Time Records ................................................................................................... 15

   2.04    Organizational Chart ........................................................................................ 16

3.00    LEAVE POLICY ..................................................................................................... 16

   3.01    Authority .......................................................................................................... 16

   3.02    Definitions of Terms ........................................................................................ 16

   3.03    Annual Leave ................................................................................................... 17

      A.    Accruals ....................................................................................................... 17

      B.    Accrual Exceptions ...................................................................................... 18

      C.    Leave Accumulation and Restored Annual Leave ....................................... 19

      D.    Maximum Use of Annual Leave .................................................................. 20

      E.    Advancing Annual Leave ............................................................................. 20

   3.04    Sick Leave ....................................................................................................... 21

      A.    Accruals ....................................................................................................... 21

      B.    Use of Sick Leave to Care for a Family Member and for Funerals ............. 22

      C.    Sick Leave for Adoption .............................................................................. 22

      D.    Advancing Sick Leave ................................................................................. 23

      E.    Unwarranted Sick Leave .............................................................................. 24

   3.05    Family and Medical Leave Act ........................................................................ 24

      A.    Amount of Leave ......................................................................................... 24

      B.    Serious Health Condition ............................................................................. 25

      C.    Intermittent Leave and Reduced Leave Schedule ....................................... 26

      D.    Substitution of Accrued Leave for Leave Without Pay ............................... 26

      E.    Notification of Request for Leave ................................................................ 26

      F.    Medical Certification ................................................................................... 27

      G.    Return to Employment ................................................................................. 27

2

| | | |
|---|---|---|
| H. | Health Insurance | 28 |
| 3.06 | New Child Policy | 28 |
| A. | Birth Mothers and Fathers | 28 |
| C. | Adoptive and Foster Parents | 28 |
| D. | Approval | 28 |
| 3.07 | Other Types of Leave | 28 |
| A. | Administrative Leave | 29 |
| B. | Court Leave | 29 |
| C. | Funeral Leave | 29 |
| D. | Leave Without Pay (LWOP) | 29 |
| E. | Military Leave | 29 |
| G. | Leave for Bone-Marrow or Organ Donation | 31 |
| 3.08 | Flex Time | 31 |
| 3.09 | Alternate Work Schedules | 31 |
| 3.10 | Compensatory Time | 32 |
| 3.11 | Employee's Leave Responsibilities | 33 |
| 3.12 | Agency's Leave Responsibilities | 33 |
| 3.13 | Voluntary Leave Sharing Program | 33 |
| A. | Procedures for Becoming a Recipient | 34 |
| B. | Approval of Recipient's Request | 34 |
| C. | Procedures for Becoming a Donor | 34 |
| D. | Transfer of Leave Between Agencies | 35 |
| E. | Accrual of Annual and Sick Leave While in a Transferred Leave Status | 36 |
| F. | Use of Transferred Leave by a Recipient | 36 |
| G. | Termination of the Medical Emergency | 37 |
| H. | Restoration of Donated Leave | 38 |
| I. | Emergency Leave Transfer Program | 38 |
| 4.00 | COMPENSATION AND OUTSIDE EMPLOYMENT | 39 |
| 4.01 | Grade and In-Grade Increase (Non-AFPD Staff) | 39 |
| 4.02 | Within-Grade Increase | 39 |
| 4.03 | Quality Step Increases | 40 |

3

4.04 Ungraded Personnel .................................................................................................... 41

4.05 Annual Review ............................................................................................................. 41

4.06 Outside Employment .................................................................................................. 42

5.00 STANDARDS AND RESPONSIBILITIES ................................................................ 42

5.01 Office Conduct and Procedures ................................................................................ 42

5.02 Professionalism ........................................................................................................... 43

5.03 Appearance .................................................................................................................. 43

5.04 Duty Stations ............................................................................................................... 43

5.05 Furniture and Equipment........................................................................................... 44

5.06 Children in the Workplace ......................................................................................... 44

5.07 Gifts, Entertainment, and Favors .............................................................................. 44

5.08 Office Contributions ................................................................................................... 45

5.09 Smoking/E-Cigarette Policy....................................................................................... 46

5.10 Client Property ............................................................................................................ 46

5.11 Mail/Parcel Policy ....................................................................................................... 47

5.12 Expert Policy................................................................................................................ 47

5.13 Transcript Policy ......................................................................................................... 50

5.14 Travel Policy ................................................................................................................ 50

 A. Approvals: ................................................................................................................... 50

 B. Travel Arrangements................................................................................................... 52

 C. Travel Reimbursement: Employees are entitled to be reimbursed for expenses incurred during official travel.  Reimbursement rates are established by the government and vary over time.  Rate particulars can be obtained from the Administrative Officer.................................................... 52

 D. Transportation of Non-Employees .............................................................................. 54

5.15 General Expenses ........................................................................................................ 55

5.16 Personnel Files & Release of Personal Information................................................... 55

5.17 Outside Requests for Employee Information ............................................................ 56

5.18 Releasing or Disclosing Information .......................................................................... 56

5.19 Request for Information .............................................................................................. 57

5.20 Telephone Policy......................................................................................................... 57

5.21 Computer, Internet and Device Policies ................................................................... 58

4

US00004451

|   | A. | Computer Use | 58 |
|---|----|--------------|----|
|   | B. | Internet Use | 59 |
|   | C. | Mobile Device Policy | 62 |
| 5.22 | | Political Activity | 65 |
| 5.23 | | Practice of Law | 65 |
| 5.24 | | Harassment | 65 |
| 5.25 | | Consolidated Equal Employment Opportunity & Employment Dispute Resolution Plan (EEO/EDR) | 65 |

6.00 PERSONNEL ACTION PROCEDURES ... 66

| 6.01 | Policy Statement | 66 |
|------|------------------|----|
| 6.02 | Definitions | 66 |
| 6.03 | Personnel Selection Plan | 67 |
| 6.04 | Employee Plan | 68 |
| 6.05 | Resignations | 68 |
| 6.06 | Termination Procedures and Benefits | 68 |

7.00 DISCIPLINARY ACTIONS ... 70

| 7.01 | Fair Employment Practices | 71 |
|------|---------------------------|----|
| A. | Equal Employment Opportunity | 71 |
| B. | Employee Dispute Resolution | 72 |

8.00 BENEFITS AND OTHER POLICIES ... 73

| 8.01 | Health Benefits | 73 |
|------|-----------------|----|
| 8.02 | Additional Health Benefits | 74 |
| 8.03 | Life Insurance | 74 |
| 8.04 | Retirement | 74 |
| 8.05 | Thrift Savings Plan | 75 |
| 8.06 | Long Term Care Insurance | 75 |
| 8.07 | Flexible Spending Account (FSA) | 75 |
| 8.08 | Employee Assistance Program | 75 |
| 8.09 | Unemployment Compensation | 76 |
| 8.10 | Workers' Compensation Program | 76 |
| 8.11 | Employee Education and Development | 77 |

Case 1:20-cv-00066-WGY   Document 245-25   Filed 06/01/23   Page 18 of 98

US00004452

9.00    SECURITY ....................................................................................... 77

    9.01    Office Visitors ........................................................................... 77

    9.02    Dealing with Difficult Persons .................................................. 77

    9.03    Phone Calls ............................................................................... 78

    9.04    Parcels and Packages ............................................................... 78

    9.05    Personal Security Outside Building ........................................... 78

    9.06    Locked Doors and Passcodes ................................................... 78

    9.07    Emergency Evacuation of Building ........................................... 78

10.00    HAZARDOUS WEATHER POLICY ................................................ 79

11.00    TELEWORK AND OUT OF OFFICE WORK ................................. 79

12.00    FIREARMS AND WEAPONS ........................................................ 80

13.00    WORKPLACE VIOLENCE ............................................................ 80

14.00    SUBSTANCE ABUSE POLICY ..................................................... 82

15.00    CRIMINAL CHARGES AND CONVICTIONS .............................. 84

6

US00004453

**Introduction**

This manual was developed for the purpose of providing written guidance of your responsibilities and office policies. These policies are meant to cover the vast majority of situations to which they are applicable. However, it is impossible to develop policies that will accomplish the intended result in all situations. Therefore, there will be occasions when facts and circumstances are not addressed by the policies set forth below. It is incumbent upon employees to seek guidance from office management whenever it appears that standard office policy does not cover a specific situation.

The mission of the Office of the Federal Public Defender requires many persons working together in a framework of a professional organization. This manual speaks to that framework, defines expectations, and provides accountability for the expenditure of appropriated funds. While the Office of the Federal Public Defender uses the *Guide to Judicary Policy* as a source of authority, and will always operate with the *Guide*, our office policies may be more restrictive than the *Guide*.

The contents of this manual are informational and are intended solely as a guide. The language used in this manual is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract between the Office of the Federal Public Defender and any of its employees. All employees, whether temporary or permanent, are **at will** employees of the Federal Public Defender. The terms and provisions of this handbook herein are subject to change at any time, with or without notice. Should you have any questions concerning any of the information contained herein, please contact the Administrative Officer.

Case 1:20-cv-00066-WGY   Document 245-25   Filed 06/01/23   Page 20 of 98

US00004454

## 1.00   CODE OF CONDUCT

On September 19, 1995, the Judicial Conference of the United States adopted the Code of Conduct for Federal Public Defenders to be effective January 1, 1996. This code applies to all Federal Public Defender employees.

## CANON 1

### A FEDERAL PUBLIC DEFENDER EMPLOYEE SHOULD UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE OFFICE

An independent and honorable defender system is indispensable to justice in our society. A defender employee should personally observe high standards of conduct so that the integrity and independence of the office are preserved and so that the defender office reflects a devotion to serving the public defender's clients and the principle of equal justice under law. Defender employees should require adherence to such standards by personnel subject to their direction and control. The provisions of this code should be construed and applied to further these objectives. The standards of this code shall not affect or preclude other more stringent standards required by law, by applicable codes of professional responsibility, by court order, or by the federal public defender.

## CANON 2

### A FEDERAL PUBLIC DEFENDER EMPLOYEE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL ACTIVITIES

A defender employee should not engage in any activities that would put into question the propriety of the defender employee's conduct in carrying out the duties of the office. A defender employee should not use public office for private gain.

## CANON 3

### A FEDERAL PUBLIC DEFENDER EMPLOYEE SHOULD ADHERE TO APPROPRIATE STANDARDS PERFORMING THE DUTIES OF THE OFFICE

In performing the duties prescribed by law, by resolution of the Judicial Conference of the United States, by court order, or by the Federal Public Defender, the following standards apply:

US00004455

A.     A defender employee should respect and comply with the law and these canons.  A defender employee should report to the appropriate supervising authority any attempt to induce the defender employee to violate these canons.

Note:  A number of criminal statutes of general applicability govern defender employees' performance of official duties.  These include:

18 U.S.C. § 201 (bribery of public officials and witnesses);

18 U.S.C. § 211 (acceptance or solicitation to obtain appointive public office);

18 U.S.C. § 285 (taking or using papers relating to government claims);

18 U.S.C. § 287 (false, fictitious, or fraudulent claims against the government);

18 U.S.C. § 508 (counterfeiting or forging transportation requests);

18 U.S.C. § 641 (embezzlement or conversion of government money, property, or records);

18 U.S.C. § 643 (failing to account for public money);

18 U.S.C. § 798 and 50 U.S.C. § 783 (disclosure of classified information);

18 U.S.C. § 1001 (fraud or false statements in a government matter);

18 U.S.C. § 1719 (misuse of franking privilege);

18 U.S.C. § 2071 (concealing, removing, or mutilating a public record);

31 U.S.C. § 1344 (misuse of government vehicle);

31 U.S.C. § 3729 (false claims against the government).

This is not a comprehensive listing but sets forth some of the more significant provisions with which defender employees should be familiar.

B.     A defender employee should be faithful to professional standards and maintain competence in the defender employee's profession.

C.     A defender employee should be patient, dignified, respectful, and courteous to all persons with whom the defender employee deals in an official capacity, and should

US00004456

require similar conduct of personnel subject to the defender employee's direction and control. A defender employee should diligently discharge the responsibilities of the office in a nondiscriminatory fashion.

D. A defender employee should not solicit or accept a payment of money or anything of value from a client, except that a defender employee may accept an appropriate memento or token that is neither money nor of commercial value. A defender employee should never disclose any confidential communications from a client, or any other confidential information received in the course of official duties, except as authorized by law. A former defender employee should observe the same restrictions on disclosure of confidential information that apply to a current defender employee.

E. A defender employee should not engage in nepotism prohibited by law.

<u>Note</u>: <u>See also</u> 5 U.S.C. § 3110 (employment of relatives); 28 U.S.C. § 458 (employment of judges' relatives).

F. <u>Conflicts of Interest</u>

(1) In providing legal representation to clients, a public defender should observe applicable rules of professional conduct governing the disclosure and avoidance of conflicts of interest.

(2) In the performance of administrative duties, a defender employee should avoid conflicts of interest. A conflict of interest arises when a defender employee knows that he or she (or the spouse, minor child residing in the defender employee's household, or other close relative of the defender employee) might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the defender employee's ability to properly perform administrative duties.

(3) When a defender employee knows that a conflict of interest may be presented in the performance of duties, the defender employee should promptly inform the Federal Public Defender. The Federal Public Defender, after determining that a conflict or the appearance of a conflict of interest exists, should take appropriate steps to restrict the defender employee's performance of duties in such a matter so as to avoid a conflict or the appearance of a conflict of interest. If the conflict involves a conflict between or among clients, the Federal Public Defender should consider withdrawal from one or more representations, or other appropriate remedial actions, as necessary to comply with applicable rules of professional conduct. A defender employee should observe any restrictions imposed by the Federal Public Defender in this regard.

10

US00004457

## CANON 4

**A FEDERAL PUBLIC DEFENDER EMPLOYEE MAY ENGAGE IN ACTIVITIES TO IMPROVE THE LAW, THE LEGAL SYSTEM, AND THE ADMINISTRATION OF JUSTICE**

A defender employee, subject to the proper performance of official duties, may engage in the law-related activities enumerated below.

A.     A defender employee may speak, write, lecture, teach, and participate in other activities concerning defender services, the legal system, and the administration of justice.

B.     A defender employee may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A defender employee may assist such an organization in raising funds and may participate in the management and investment of such funds. A defender employee may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal profession, and the administration of justice. A defender employee may solicit funds for law-related activities, subject to the following limitations:

(1)     A defender employee should not use or permit the use of the prestige of the office in the solicitation of funds.

(2)     A defender employee should not solicit subordinates to contribute funds to any such activity but may provide information to them about a general fund-raising campaign.

(3)     A defender employee should not solicit or accept funds from lawyers, clients, or other persons likely to have official business with the federal public defender office, except as an incident to a general fund-raising activity.

C.     A defender employee may promote the development of professional organizations and foster the interchange of information and experience with others in the profession. A defender employee may make himself or herself available to the public at large for speaking engagements and public appearances designed to enhance the public's knowledge of the operation of defender services and the criminal justice system.

## CANON 5

**A FEDERAL PUBLIC DEFENDER EMPLOYEE SHOULD REGULATE EXTRA-OFFICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH OFFICIAL DUTIES**

11

US00004458

A.    Avocational Activities.    A defender employee may write, lecture, teach, and speak on subjects unrelated to the profession, and may engage in the arts, sports, and other social and recreational activities, if such avocational activities do not detract from the dignity of the office, interfere with the performance of official duties, or adversely reflect on the public defender's role as an advocate.  A defender employee may solicit funds for avocational activities, subject to the limitations set forth in Canon 4B.

B.    Civic and Charitable Activities.    A defender employee may participate in civic and charitable activities that do not detract from the dignity of the office, interfere with the performance of official duties, or adversely reflect on the public defender's role as an advocate.  A defender employee may serve as an officer, director, trustee, or advisor of an educational, religious, charitable, fraternal, or civic organization, and may solicit funds for any such organization subject to the limitations set forth in Canon 4B.

C.    Financial Activities.

(1)    A defender employee should refrain from financial and business dealings that tend to detract from the dignity of the office or interfere with the performance of official duties.

(2)    A defender employee should not solicit or accept a gift from anyone seeking official action from or doing business with the Federal Public Defender Office, or from anyone whose interests may be substantially affected by the performance or nonperformance of official duties, except that a defender employee may accept a gift as permitted by the Ethics Reform Act of 1989 and the Judicial Conference regulations thereunder.  A defender employee should endeavor to prevent a member of a defender employee's family residing in the household from soliciting or accepting any such gift except to the extent that a defender employee would be permitted to do so by the Ethics Reform Act of 1989 and the Judicial Conference regulations thereunder.

Note: See 5 U.S.C. § 7353 (gifts to federal employees).  See also 5 U.S.C. § 7342 (foreign gifts); 5 U.S.C. § 7351 (gifts to superiors).

(3)    A defender employee should report the value of gifts to the extent a report is required by the Ethics Reform Act, other applicable law, or the Judicial Conference of the United States.

Note: See 5 U.S.C. app., §§ 101 to 111 (Ethics Reform Act financial disclosure provisions).

D.    Practice of Law.  A defender employee should not engage in the private practice of law.  Notwithstanding this prohibition, a defender employee may act pro se and

US00004459

may, without compensation, give legal advice to and draft or review documents for a member of the defender employee's family, so long as such work does not present an appearance of impropriety and does not interfere with the defender employee's primary responsibility to the defender office.

Note: See 18 U.S.C. § 3006A(g)(2)(A) (prohibiting public defenders from engaging in the private practice of law.)  See also 18 U.S.C. § 203 (representation in matters involving the United States); 18 U.S.C. § 205 (claims against the United States).

## CANON 6

**A FEDERAL PUBLIC DEFENDER EMPLOYEE SHOULD REGULARLY FILE REPORTS OF COMPENSATION RECEIVED FOR ALL EXTRA-OFFICIAL ACTIVITIES**

A defender employee may receive compensation and reimbursement of expenses for outside activities provided that receipt of such compensation or reimbursement is not prohibited or restricted by this code, the Ethics Reform Act, and other applicable law, and provided that the source or amount of such payments does not influence or give the appearance of influencing the defender employee in the performance of official duties or otherwise give the appearance of impropriety.  Expense reimbursement should be limited to the actual cost of travel, food, and lodging reasonably incurred by a defender employee, and, where appropriate to the occasion, by the defender employee's spouse or relative. Any payment in excess of such an amount is compensation.  A defender employee should make and file reports of compensation and reimbursement for outside activities to the extent prescribed by the Ethics Reform Act, other applicable law, or the Judicial Conference for the United States.

Notwithstanding the above, a defender employee should not receive any salary, or any supplementation of salary, as compensation for official government services from any source other than the United States.
Note: See 5 U.S.C. app., §§ 101 to 111 (Ethics Reform Act financial disclosure provisions). See also 5 U.S.C. app., §§ 501 to 505 (outside earned income and employment).

## CANON 7

**A FEDERAL PUBLIC DEFENDER EMPLOYEE SHOULD REFRAIN FROM INAPPROPRIATE POLITICAL ACTIVITY**

      A.     A defender employee should not be a candidate for or hold partisan elective office and should not solicit partisan political contributions.  A defender employee should not engage in any political activity while on duty or in the defender employee's workplace and may not utilize any federal resources in any such activity.  Political activity includes, but

13

US00004460

is not limited to, displaying campaign literature, badges, stickers, signs, or other items of political advertising on behalf of any party, political committee, or candidate for political office and soliciting signatures for political candidacy or membership in a political party.

B.     A defender employee may engage in political activity not otherwise prohibited, provided that such activity does not detract from the dignity of the office or interfere with the proper performance of official duties.   A defender employee who participates in political activity should not use his or her position or title in connection with any such activity.

Note: See also 18 U.S.C. Chapter 29 (elections and political activities).

## COMPLIANCE WITH THE CODE OF CONDUCT FOR FEDERAL PUBLIC DEFENDERS

All Federal Public Defenders and Assistant Federal Public Defenders shall comply with this code.

## PRIMARY RESPONSIBILITY OF FEDERAL PUBLIC DEFENDERS AS COUNSEL

Nothing contained in these Canons is intended to limit or modify the primary responsibility of the Federal Public Defender, as appointed counsel, to render effective legal representation to his clients as required by the Constitution and laws of the United States and by applicable rules governing professional conduct.

## EFFECTIVE DATE OF COMPLIANCE

Persons to whom this Code becomes applicable should arrange their affairs as soon as reasonably possible to comply with it and should do so in any event within the period of one year.

## 2.00   OFFICE HOURS AND GENERAL POLICIES

### 2.01   Working Hours and Holidays

The Federal Public Defender's Office is open during our regular business hours, Monday through Friday, except for the following federally recognized holidays:

New Year's Day, January 1
Martin Luther King, Jr.'s Birthday, 3rd Monday in January
Presidents Day, 3rd Monday in February
Memorial Day, last Monday in May
Independence Day, July 4

14

US00004461

Labor Day, first Monday in September
Columbus Day, 2nd Monday in October
Veterans Day, November 11
Thanksgiving Day, 4th Thursday in November
Christmas Day, December 25

Whenever one of the legal holidays falls on Saturday or Sunday, the office is closed on the Friday immediately preceding or the Monday immediately following, respectively.

The official office hours are 8:30 a.m. to 5:30 p.m. in the Charlotte office, and 8:00 a.m. to 5:00 p.m. in the Asheville office. A work day contains a 1-hour lunch break, taken sometime between 11:00 a.m. and 2:00 p.m.

The Federal Employee's Pay Act of 1945 [5 U.S.C. § 5504(b)] establishes a work week of 40 hours. Accordingly, all full time employees are required to work a 40 hour per week and 8 hour per day tour of duty, exclusive of lunch. Part time employees are required to work in proportion to their part time status on schedules approved by the Federal Public Defender. The normal lunch period is sixty (60) minutes for employees with a nine hour-work day and one-half hour for employees with an eight and one-half hour work day. **While the office does not set a specific time for lunch, the lunch period may not be utilized during the first or last hour of the workday.**

### 2.02    Attendance/Punctuality

Regular attendance and punctuality are expected. Habitual absenteeism or tardiness may result in the changing of regular work hours, reprimand, suspension, or dismissal.

### 2.03    Time Records

**Time and Attendance Sheets:** All employees are required to submit a Bi-weekly Time and Attendance entry. Time and Attendance entry is to be submitted into the HRMIS Time and Attendance system. Failure to submit a Time and Attendance Entry could adversely affect an employee's pay. The Bi-weekly Time and Attendance entry, along with other data available to the Defender, are used by the Defender to certify the payroll online through HRMIS. Accordingly, all such Bi-weekly Time and Attendance data shall be completed and submitted promptly.

**Timekeeper:** All employees must account for all hours spent daily on office-related activity. It is *highly recommended* that any case-related time be entered immediately, but at least on a weekly basis, to increase the time report accuracy. **All timekeeping data for each month must be entered into defenderData no later than the 5th of the following month, e.g., January's timekeeper data must be entered no later than February 5th.**

15

**2.04　Organizational Chart**
See Appendix 1.

**3.00　LEAVE POLICY**

**3.01　Authority**

Chapter 63 of Title 5, United States Code (U.S.C.), authorizes the accrual and use of various types of leave by government employees ("Leave Act"). The Leave Act covers all employees. The Guide to Judiciary Policy (the "Guide") establishes the procedures for managing the leave program. The following provides some of the basic information about the leave policy as promulgated in the Guide.

**3.02　Definitions of Terms**

"Approving Official" shall mean the individual designated to approve leave requests.

"Leave Donor" shall mean an employee who voluntarily transfers accrued annual leave to an approved recipient.

"Family Member" shall mean the following:

1. Spouse and parents thereof (spouse includes life partner, with official documentation of such status);
2. Children, including adopted children, and spouses thereof;
3. Parents;
4. Brothers and sisters and spouses thereof;
5. Any individual related by blood or affinity whose close association with the employee is the equivalent of a family relationship.

"Medical Certificate" shall mean a written statement signed by a registered practicing physician or other practitioner certifying to the incapacitation, examination or treatment for the period of disability while the patient was receiving professional treatment.

"Medical Emergency" shall mean a medical condition of an employee or an immediate relative of the employee that requires the employee to be absent from duty for a prolonged period of time (at least 80 hours), resulting in a substantial loss of income due to the unavailability of paid leave.

"Recipient" shall mean a current employee for whom an application to receive annual leave from the annual leave of one or more Donors has been approved.

16

US00004463

### 3.03   Annual Leave

Annual leave is provided for vacations, rest and relaxation, personal business or emergencies.  Whenever possible, employees are encouraged to take at least a week of annual leave per year. Annual leave may also be used for an illness or other absence ordinarily chargeable to sick leave.  Annual leave is chargeable in increments of thirty minutes.

Approval for annual leave is **not** automatic.  Annual leave for employees must be approved in advance with consideration given to work load, the interest of the office, and previous leave granted.  **Requests for five or more days of consecutive annual leave will be submitted at least two weeks in advance except in unusual or emergency cases. Where practicable, requests for less than five days will be submitted at least one day in advance.**  Failure to obtain prior approval for leave may result in an unauthorized absence and being placed on a leave without pay status.  Requests for annual leave must be submitted through the HRMIS Time and Attendance System.

The Defender shall be the Approving Official for annual leave for the First Assistant, Administrative Officer, Senior Litigator, Trial Team Leaders, Computer Systems Administrator and Legal Assistant to the Federal Defender.  The Branch Supervisor in Asheville shall be the Approving Official for all employees in the Asheville office. The Administrative Officer shall be the Approving Official for annual leave for Administrative employees, including Administrative Assistants, CJA Panel Administrators, Receptionist, and the Defender.  The First Assistant shall be the Approving Official for annual leave for all other employees.  The Administrative Officer will be the back-up approver when necessary.

### A.   Accruals

Full-time employees, both permanent and temporary, having an appointment of more than 90 days will earn annual leave as follows:

1.  Less than 3 years of creditable service: 4 hours for each bi-weekly pay period for a total of 106 hours (13 days) of leave per year.

2.  3 years of creditable service but less than 15 years: 6 hours for each full bi-weekly pay period, except that accruals for the last full bi-weekly pay period in a calendar year will be 10 hours for a total of 160 hours (20 days) of leave per year.

3.  15 years or more creditable service: 8 hours for each full bi-weekly pay period for a total of 208 hours (26 days) of leave per year.

17

US00004464

Part-time employees will earn annual leave as follows:

1. Less than 3 years of creditable service: 1 hour for each 20 hours in a pay status.

2. 3 years of creditable service but less than 15 years: 1 hour for each 13 hours in a pay status.

3. 15 years or more creditable service: 1 hour for each 10 hours in pay status.

Should an employee terminate his/her employment with the Federal Public Defender's Office, the employee's annual leave balance will be paid to the employee in a lump-sum amount or, in the event the employee obtains new employment subject to the Leave Act during the period covered by his/her unused leave, such leave balance shall instead be transferred to the employee's balance with the new employer. If a lump sum payment has already been made and the employee obtains such new employment within such period, the employee must refund any lump-sum payment or portion thereof which corresponds to the time from date of reemployment to the expiration of the lump-sum period.

**B.    Accrual Exceptions**

Although temporary employees who are appointed for less than 90 days do not earn annual leave, an individual employed for a continuous period of 90 days under successive appointments without a break in service is entitled to leave credit retroactive to the beginning date of the initial appointment. For purposes of this section, a break in service is one (1) workday or more when the employee is not on the government's employee rolls.

If an employee separates during a pay period so that he/she is in a pay status for less than a full bi-weekly pay period, no leave is accrued.

During a period of non-pay status because of illness or disability when payment is made by the Department of Labor, Office of Worker's Compensation, leave is not accrued.

A full-time employee's annual leave accrual is reduced by the amount of annual leave the employee earns in a pay period each time the employee accumulates 80 hours in a non-pay status. Any non-pay status hours which are not used for reduction purposes at the end of the leave year are dropped at the end of that year. Part-time employees earn leave on a prorated basis, based on the number of hours in pay status. Therefore, no leave is earned during any period of time in which the part-time employee is on leave without pay status.

18

US00004465

### C.    Leave Accumulation and Restored Annual Leave

Employees may accumulate in excess of 240 hours of leave during a leave year.  However, no more than 240 hours may be carried over from one leave year to the next.

Under certain circumstances, leave in excess of 240 hours that is forfeited may be restored. Restored leave is annual leave in excess of the 240 hours ceiling which is returned to an employee who has forfeited his/her leave due to unforeseeable circumstances.

1.  Annual leave may be restored for use in the new leave year if it has been scheduled prior to the third bi-weekly pay period prior to the end of the leave year and if one of the following conditions exists:

    a.  An administrative error causes the loss of annual leave otherwise earned.

    b.  When sickness of the employee prohibits use of annual leave which was scheduled in advance.

    c.  When an exigency of the public business occurs and prohibits use of annual leave which was scheduled in advance.

2.  In order for annual leave to be restored, an employee will make a written request and submit it to the Defender.  The Defender must determine if one of the above conditions exists, and if deemed appropriate, prepare a written statement approving restoration of the leave.

3.  If approved, the restored annual leave must be credited to a separately maintained leave balance established for the employee and maintained by the Administrative Officer through HRMIS.  This separate balance will be supported by the following data:

    a.  The date the leave was restored;

    b.  The amount credited;

    c.  The specific schedule established for use;

    d.  The amount of usage and balance.

19

US00004466

4. Restored annual leave credited to an employee must be used within two (2) years of the starting date which is computed as follows:
   a. Administrative error: the starting date is computed from the date the annual leave was restored.

   b. Exigency of the public business: the starting date will be the date fixed by the Federal Public Defender as the termination date of the exigency and subsequent restoration of annual leave.

   c. Sickness of the employee: the starting date will be the date the employee is determined to be recovered and able to return to duty.

   d. Ending date: the ending date of two-year period is the last day of the leave year in which the end of the second year occurs. There is no statutory authority that permits retention thereof if it is not used within the specified time limit. Any restored leave unused at the expiration of the two-year limit is again forfeited with no further right to restoration. The amount of restored leave does not in any way increase or change an employee's maximum permissible carryover of annual leave into a new leave year.

## D.      Maximum Use of Annual Leave

Without prior notice to and approval of both the Leave Approving Officer and the Defender, the maximum period of consecutive annual leave that may be utilized by employees is 10 business days (two calendar weeks).

## E.      Advancing Annual Leave

a.      Permanent employees who do not plan to leave government service during the current leave year may, subject to approval, be granted in advance the leave which will be earned during the leave year, by the Defender.

b.      Upon separation from government employment, except upon separation caused by death or disability, an employee who is indebted for unearned annual leave shall either refund the amount for the period of leave for which the employee is indebted, or the amount may be deducted from the last pay due the employee.

20

US00004467

### 3.04   Sick Leave

Sick leave is granted to employees when they are incapacitated by sickness, injury, or pregnancy and confinement; for medical, dental, or optical examination or treatment; when required to care for a member of the employee's immediate family with a contagious disease; or when exposure to a contagious disease would jeopardize the health of co-workers. Sick leave may be accrued without limit. Sick leave is for legitimate need and may not be taken in lieu of annual leave.

Sick leave is chargeable in increments of thirty minutes. Requests for sick leave must be approved in advance of planned absences, i.e., doctor or dental appointments. **When an employee is ill or unable to report for work, the employee must notify their work unit/team prior to 9:00 a.m., including when the employee expects to return. Once the employee returns to work, a leave form must be submitted in HRMIS immediately.**

It is within the discretion of the Defender or the Administrative Officer to request a medical certificate for any time taken as sick leave. If a medical certificate is requested and thereafter not provided, the absence is considered unauthorized, and may be charged to any combination of sick leave, annual leave, compensatory time, or leave without pay, as determined by the Defender.

If sickness occurs during a period of annual leave, the period of illness may be charged as sick leave subject to the provision of supporting evidence.

The Leave Approval Officials for sick leave shall be the same as for annual leave.

### A.   Accruals

Full-time employees earn 4 hours of sick leave for each bi-weekly pay period for a total of 13 days per year. Part-time employees earn 1 hour of sick leave for each 20 hours in a pay status. Sick leave may be accrued without limit and is not affected by type of appointment or length of service.

Should an employee terminate his/her employment with the Office, the employee's sick leave balance remains on file with the Administrative Office of the United States Courts. If re-employed by an employer subject to the Leave Act, the sick leave balance will be re-credited. When an employee qualifies for retirement, 50% of all accrued sick leave may be applied to creditable service for retirement purposes. Effective January 1, 2014, 100% of sick leave remaining to an employee's credit upon death or separation is creditable towards a FERS annuity.

21

US00004468

**B. Use of Sick Leave to Care for a Family Member and for Funerals**

1. 1. One hundred and four (104) hours of sick leave in any leave year (or a proportional amount for part-time employees) may be used (i) to give care or otherwise attend to a family member having an illness, injury, or other condition which, if an employee had such a condition, would justify the use of sick leave by such an employee, (ii) for purposes relating to the death of a family member, including to make arrangements for or attend the funeral of such family member; or (iii) any combination of the matters referenced in (i) or (ii) above.

2. Four hundred and eighty hours (480) of sick leave in any leave year (or a proportional amount for part-time employees) may be used to give care to a family member with a serious health condition. For purposes of this ¶2, "serious health condition" shall have the same meaning as set forth in § 3.05B and is subject to the medical certification requirements of § 3.05F. Only the Defender may approve sick leave requests under this subsection.

3. If, at the time an employee uses sick leave to care for a family member with a serious health condition pursuant to ¶2 above, the employee has already used sick leave pursuant to ¶1 above during that leave year, then the maximum hours of sick leave available for use to care for a family member with a serious health condition shall be reduced by the number of hours used pursuant to ¶1. In other words, an employee may not use more than a total of 480 hours (or a proportional amount for part-time employee) for all family care purposes under this § 3.04B.

**C. Sick Leave for Adoption**

Employees are permitted to use sick leave for purposes relating to the adoption of a child. These purposes include appointments with adoption agencies, social workers, and attorneys; court proceedings; required travel; and any other activities necessary to allow the adoption to proceed. This list is not all-inclusive because adoption rules may vary from jurisdiction to jurisdiction. Use of sick leave for adoption purposes is deemed to be concurrent with an employee's entitlement to <u>unpaid</u> leave for the placement of a child with an employee for adoption under the Family and Medical Leave Act of 1993 (FMLA). Parents who voluntarily choose to be absent from work to bond with or care for an adopted child may not use sick leave for this purpose. Rather, they may use annual leave or LWOP.

22

US00004469

Employees are required by 5 CFR 630.402 to request, to the extent possible, advance approval to use sick leave for adoption-related purposes.

### D.    Advancing Sick Leave

Sick leave may be advanced at the discretion of the Defender subject to the following:

1. In certain exigent circumstances, an employee whose appointment is not temporary may be advanced not in excess of 240 hours of unearned sick leave for serious disability or ailment.  For other circumstances set forth in the Guide, advance sick leave is limited to maximum of 104 hours. See the Administrative Officer for details regarding advanced sick leave.  Sick leave may be advanced regardless of whether or not an employee has an annual leave balance.  No later than upon return to duty, the employee will submit a leave request in HRMIS and provide a medical certificate to the Administrative Officer.  The advanced sick leave is charged against subsequently earned sick leave.

2. An employee holding a temporary appointment which is to expire on a specified date may be advanced only the amount of leave which will accrue during the term of the appointment.

3. Sick leave may be advanced for medical, funeral or adoption purposes only.

4. Upon separation from government employment, an employee who is indebted for unearned sick leave shall either refund the amount for the period of leave for which the employee is indebted, or the amount owed may be deducted from final pay.

Sick leave will **not** be advanced:

1. If it is known that an employee does not plan to return to duty except where application for disability retirement has been made and approval thereof has not been received from the Office of Personnel Management.

2. After the Office of Personnel Management has approved disability retirement and official notice has been received.

US00004470

### E.     Unwarranted Sick Leave

Sick leave is provided to ensure salary protection during emergencies and periods of extended illness.

The Defender will determine if an employee has abused or is abusing sick leave privileges. When such determination has been made, the Defender will advise the employee that a medical certificate may be required for any future absence taken as sick leave.  If a medical certificate is not thereafter provided, the request for sick leave will not be approved, and the absence deemed unauthorized and charged to leave without pay.

Continued abuse of sick leave privileges may result in further disciplinary action being taken which may include, but is not limited to, suspension or termination.

*Telework is not to be used as a substitute for sick leave* (see 11.00 – Telework and Out of Office Work).

### 3.05    Family and Medical Leave Act

The Family and Medical Leave Act (FMLA) became effective on August 5, 1993.  Title II of FMLA provides unpaid family and medical leave to all federal employees covered by the annual and sick leave program established under Chapter 63 of Title 5, United States Code. Notice of intent to use leave pursuant to the FMLA must be discussed with the Defender and invoked by the employee before the same is approved.  The Federal Defender Office requires use of approved paid leave while taking FMLA leave; utilizing sick leave first and annual leave thereafter. All leave/LWOP taken pursuant to the provisions of the FMLA will be recorded and administered outside of HRMIS.  The Administrative Officer will maintain individual FMLA files for employees for whom FMLA is approved.

### A.     Amount of Leave

An employee with at least 12 months of prior civilian service with the federal government will be entitled to a total of 12 administrative work weeks of unpaid leave during any rolling 12-month period for one or more of the following reasons:

1.  Birth of a son or daughter and care of newborn (leave must conclude within one year of birth);

2.  Placement of a son or daughter with employee for adoption or foster case (leave must conclude within one year of placement);

24

US00004471

3. Care for a spouse, son, daughter, or parent with serious health condition; or

4. Serious health condition of employee that makes the employee unable to perform duties of his or her position;

5. Qualifying exigencies relating to active duty assignments of specified family members as described more fully in the Guide;

6. Care for a Covered Service Member with a serious injury or illness as described more fully in the Guide.

### B. Serious Health Condition

A serious health condition of the employee is one that makes an employee unable to perform the duties of his or her position. Serious health condition means an illness, injury, impairment, or physical or mental condition that involves:

1. Any period of incapacity or treatment connected with inpatient care (i.e., an overnight stay) in hospital, hospice, or residential medical care facility; or

2. Continuing treatment by a health care provider for a period of incapacity requiring absence of three or more consecutive calendar days including any subsequent treatment or incapacity relating to the same condition;

3. Any period of incapacity due to pregnancy, or for prenatal care; or

4. Any period of incapacity (or treatment) due to a chronic serious health condition (e.g., asthma, diabetes, epilepsy, etc.); or

5. A period of incapacity that is permanent or long-term due to a condition for which treatment may not be effective (e.g., Alzheimer's, stroke, terminal disease, etc.); or

6. Any absences to receive multiple treatments (including any period of recovery that follows) by, or on referral by, a health care provider for a condition that likely would result in incapacity of more than three consecutive calendar days if left untreated (e.g., chemotherapy, physical therapy for severe arthritis, dialysis, etc.).

25

US00004472

### C. Intermittent Leave and Reduced Leave Schedule

1. An employee must obtain the agreement of the Defender to take leave intermittently or on a reduced leave schedule for the reasons noted in A.1. and A.2.

2. Leave may be taken intermittently or on a reduced leave schedule under A.3. - A.6. when necessary. The Defender may require the temporary transfer of an employee to an alternative position with equivalent pay and benefits that can better accommodate intermittent leave under A.3. - A.6.

3. On a "reduced leave schedule," the employee's usual number of hours of work per workday or workweek are reduced. The hours of leave taken by an employee under a reduced leave schedule will be subtracted, on an hour-for-hour basis, from the total amount of the 12 workweeks of leave remaining available to the employee for purposes of the rolling 12-month period involved.

### D. Substitution of Accrued Leave for Leave Without Pay

An employee is required to substitute annual leave or sick leave (consistent with existing sick leave regulations) for unpaid leave (leave without pay) for any part of the 12-week leave entitlement. A combination of annual, sick leave, and LWOP may also be used as the situation warrants.

### E. Notification of Request for Leave

1. An employee will provide at least 30 days notice of need for leave, as practicable.

2. When leave is being requested for a serious health condition under A.3. or A.4., an employee will make a reasonable effort to schedule treatment, subject to the approval of the health care provider, so as not to unduly disrupt the operations of the office.

3. When leave is being requested for circumstances described in A.5 or A.6, the employee will make a reasonable effort to schedule treatment or other events, to the extent practicable, so as not to unduly disrupt the operations of the office.

26

US00004473

**F.** **Medical Certification**

1. An employee is required to submit medical certification from a health care provider for any request for leave due to a serious health condition affecting the employee or covered family member. The medical certification must be completed in its entirety and must state the date of onset, prognosis, statement of need for care, etc. The Office may require a second opinion, at its expense, if the Defender doubts the accuracy or validity of the original certification.

2. The term "health care provider" includes providers who are recognized by the Federal Employee Health Program, certified under federal or state law, recognized as a Native American "traditional healing practitioner," or who practice in a foreign country.

**G.** **Return to Employment**

1. An employee who invokes FMLA, and takes leave for the intended purpose under FMLA, is entitled to be restored to the same or equivalent position, with equivalent benefits, pay status, and other terms and conditions of employment.

2. Use of FMLA will not result in the loss of any employment benefit accrued before leave began. Except as otherwise provided by or under law, the law will not entitle any restored employee to 1) the accrual of any employment benefits during any period of leave or, 2) to any right, benefit, or position of employment other than those to which the employee would have been entitled had the employee not taken the leave.

3. In each instance in which FMLA is invoked based on a medical condition of an employee, the employee shall, before returning to work, provide the Office with a health care provider's certification concerning the ability of the employee to return to work and any limitations or restrictions. The Defender may also require periodic reports on the employee's ability or intention to return to work from a serious health condition.

27

US00004474

### H. Health Insurance

Federal Employee Health Benefits (FEHB) coverage is generally continued for an employee on LWOP in connection with FMLA. The Administrative Officer will make arrangements to collect the employee FEHB contribution when the employee returns to work. (Note: FEHB coverage is limited to one year on LWOP at the employee's option and expense). However, vision, dental, disability and other plans which complement traditional health care may have different rules and requirements. Employees are urged to discuss these matters with the Administrative Officer before invoking LWOP under FMLA.

### 3.06 New Child Policy

In connection with the birth or placement of a new child, employees may take leave in accordance with this provision, as provided for in the Family Medical Leave Act policy (3.05).

### A. Birth Mothers and Fathers

Employees having a child may take up to 12 weeks (3 months) of leave.

Of the 12 weeks, employees may utilize a combination of annual or sick leave, as may be available, and LWOP. If both parents are employed by the same employer, the mother and father must share the 12 weeks of FMLA leave.

### C. Adoptive and Foster Parents

Leave in connection with the arrival of an adopted or foster child is governed by the Family Medical Leave Act.

### D. Approval

Leave under this section must be requested and approved in advance. Leave provided for by this section must be approved by the Defender.

### 3.07 Other Types of Leave

The following types of leave may only be granted by the Defender. [In the event the Defender seeks such leave, the request shall be subject to the approval of the First Assistant.] Other than LWOP, these types of leave are administered outside of HRMIS. Notwithstanding the fact that LWOP is recorded in HRMIS, requests for LWOP shall not be approved by a Leave Approving Official without prior consultation by the Defender. The Administrative Officer will maintain files relating to such leave as it is not tracked in HRMIS.

US00004475

A.   **Administrative Leave** is an excused absence from duty which is administratively authorized without loss of pay or leave. Such leave is solely at the discretion of the Defender. Administrative leave generally occurs when normal operations of the office are interrupted due to events beyond the control of the Defender or his employees or where such leave is deemed of general benefit to the Office or the Defender program.

B.   **Court Leave** is granted to an employee serving on jury duty or as a witness. Compensation tendered to an employee for jury duty or witness service by a state or local court must be provided to the Administrative Officer who shall credit the amount to the employee's pay or, in lieu thereof, cause the compensation to be credited to the Office's payroll account. Reimbursements received by an employee for travel expenses while on court leave may be retained by the employee.

C.   **Funeral Leave** is granted for up to three workdays to an employee whose family member dies as a result of wounds, disease, or injury incurred as a member of the Armed Forces in a combat zone or in the line of duty.

D.   **Leave Without Pay (LWOP)** is an approved absence without pay granted to an employee in lieu of annual or sick leave. A request for LWOP is subject to the same regulations as the type of leave it replaces. HOWEVER, whenever a full-time employee accrues 80 hours in a nonpay status, the employee does not earn annual leave and sick leave for the pay period in which the eightieth hour occurs. Part time employees only accrue leave while in a pay status and therefore do not accrue leave while on LWOP.

The general policy of this office will be to deny all requests for LWOP if an employee has annual leave or sick leave (if the request is the result of illness) available. The Defender may consider the following factors, among others, in making a decision as to whether to grant LWOP: 1) good of the Defender office, 2) protection or improvement of the employee's health, and 3) the retention of a valuable employee.

Before requesting LWOP, the employee must consult with the Administrative Officer regarding continuation and payment of benefits while on LWOP.

E.   **Military Leave** (5 U.S.C. §6323; 38 U.S.C. §2024) Eligible reservists of the Armed Forces or members of the National Guard who are ordered to report for military training or duty are entitled to military leave.

Case 1:20-cv-00066-WGY   Document 245-25   Filed 06/01/23   Page 42 of 98

US00004476

However, when an employee is given a choice of dates, the military duty is to be performed at the time most convenient to the mission of the Office.

To qualify for military leave, an individual must be a permanent or temporary indefinite employee whose appointment is not limited to one year.

All requests for military leave will be made in writing on an SF-71, or similar form, to the Defender in advance, and accompanied by a copy of the orders directing the employee to report for military duty.

1. **Granting**

   i. Military leave is granted for active duty, training and other special purposes (e.g., military aid to enforce the law).

   ii. If the military duty/training time exceeds that for which military leave is available, there is limited discretion in determining the type of additional leave to grant an employee. The Federal Public Defender may deny the use of annual leave and require the employee to use leave-without-pay (LWOP), but may not require an employee to use annual leave if the employee would rather use LWOP instead. A military reservist cannot be made involuntarily to use annual leave as a result of military duty.

2. **Accumulation and Use**

   i. An eligible full-time employee accrues 15 <u>calendar</u> days or 120 hours of military leave at the beginning of each <u>fiscal</u> year. Part-time employees accrue military leave on a percentage of the number of regularly scheduled hours in the work week. (In certain circumstances relating to "Emergency Duty" an additional 22 days may accrue per calendar year as set forth in the Guide.)

   ii. Military leave is chargeable on a calendar-day basis, except that nonwork days at the beginning or end of a period of military leave are not charged to military leave.

   iii. When an employee's military duty/training days exceed military leave days accrued, the extra days must be charged

30

US00004477

to annual leave or LWOP.  An employee may carry forward up 15 days or unused military leave from one fiscal year to the next for a maximum accumulation of 30 days in any one fiscal year.

### G.     Leave for Bone-Marrow or Organ Donation

Section 629(a) of Public Law 103-329 added a new section 6327 to Title 5, United States Code, to provide federal employees with up to seven (7) days of paid leave in a calendar year (in addition to sick or annual leave) to serve as a bone-marrow donor.  An employee may use up to 30 days of paid leave in a calendar year (in addition to sick or annual leave) to serve as an organ donor.

### 3.08    Flex Time

Our office is required by the AO to keep accurate records of hours worked. Each employee is required, on a daily basis, to fairly and accurately report hours worked. Employees are also required to keep accurate accounts of the amounts of leave taken. A record of leave taken shall be kept within the HRMIS system by each staff member on the individual's time and attendance.

Employees may re-schedule up to four hours per pay period for personal reasons.  Examples include moving your lunch hour, doctor's appointments, attending child's school functions, or other non-vacation or non-sick leave reasons.  **The permanent rescheduling of lunch hours is not permitted.**

Flex time requests must be made as soon as practicable to the employee's designated Leave Approving Official.  The requesting employee must ensure the request will not adversely impact the office. The request must identify the specific date to be taken off (AWT) **and** the time during which the employee will work the re-scheduled hours (AWW).  AWW not utilized within two pay periods is forfeited.

### 3.09    Alternate Work Schedules

Employees may request an adjusted work schedule modifying daily reporting times up to 1 hour prior and after the standard reporting time by 30-minute increments.  Requests should be submitted to the Defender and will be determined by the Defender or designee. Requests are determined on organizational needs including staff coverage and availability, and may be cancelled at the discretion of the Defender.  Employees will be notified in writing of the approval/denial of the request and if an approved schedule is cancelled. Employees may request a change to an approved schedule based on changing personal circumstances or needs but should avoid making frequent change requests such as every pay period or monthly. Any approved adjusted work schedule automatically reverts to the

31

US00004478

standard work schedule for any court or case related needs including duty coverage, trials, or other needs of the organization. The approved work schedules for all staff are available electronically.

The following options would be available:
*Asheville Options*

Standard Work Schedule - 8:00am to 5:00pm

Possible Options:

7:00am to 4:00pm
7:30am to 4:30pm
8:30am to 5:30pm
9:00am to 6:00pm

*Charlotte Options*

Standard Work Schedule - 8:30am to 5:30pm

7:30am to 4:30pm
8:00am to 5:00pm
9:00am to 6:00pm
9:30am to 6:30pm

### 3.10   Compensatory Time

Federal law does not require federal court units (which includes Federal Public Defender's Offices) to provide compensatory time off for their employees. The federal premium pay provisions as set out in 5 U.S.C. § 5541 do not require the courts to provide premium pay to court employees or to offer compensatory time in lieu thereof. Further, there is no statutory limitation on the number of hours court employees may be asked to work each week without additional pay. [The basic 40-hour work week does not apply to the federal court units.] The Fair Labor Standards Act, 28 U.S.C. § 201.09, which requires payment of overtime for work in excess of 40 hours in a week, does not apply to employees in the federal courts. Consequently, the Defender may ask employees to work in excess of 40 hours in a week without any additional obligation to pay overtime or allow compensatory time off.
The policy of this office is that granting compensatory time is rare and will only be granted in specific circumstances, usually centered around significant hours required for a trial. All requests to earn compensatory time **must be approved in advance** by the Defender. Compensatory time must be utilized within six (6) months of accruing it. Any compensatory time not used within 6 months will be forfeited.

32

US00004479

### 3.11 Employee's Leave Responsibilities

A. Submit a leave request through HRMIS in advance when requesting leave. In the case of unscheduled sick leave, submit a request <u>immediately</u> upon return to duty (through HRMIS).

B. Notify the Administrative Officer or Branch Supervisor, as applicable, as soon as possible in cases of emergency absence. An absence for which no satisfactory explanation is given may be grounds for disciplinary action.

C. Requests for sick leave will be made at least two (2) working days in advance for routine medical, dental, or optical examinations.

D. Provide required supporting documents for certain types of leave. Military leave requires military orders. Court leave requires a court summons. Additionally, the Defender or Administrative Officer may request a medical certificate from the employee to document an illness.

### 3.12 Agency's Leave Responsibilities

A. Approve or deny leave in a consistent and equitable manner.

B. Advise the employees of proper use of the various types of leave, the procedures for requesting leave, and who to call in case of emergency and sickness.

C. Be aware of and advise employees of any changes to the leave policy or procedures for requesting leave.

D. Maintain leave records, determine if the employee's accumulated leave account covers the leave requested, provide the employees with their leave account balances through HRMIS, and prepare leave SF-1150 reports for separating employees.

### 3.13 Voluntary Leave Sharing Program

Under this program, employees experiencing a medical emergency who have exhausted all of their available annual and sick leave may seek approval from the Defender to seek donations of annual leave from any judiciary employees to help offset the hardship resulting from the medical emergency.

33

US00004480

## A. Procedures for Becoming a Recipient

The request to become a leave sharing recipient will be made in writing by the employee or, if incapable of making such a request, by a personal representative on behalf of the employee. This request will be submitted to the Administrative Officer and must include the following:

1. The name and position of the employee;

2. The reasons why transferred leave is needed, including a brief description of the nature, severity, and anticipated duration, and if it is a recurring medical emergency, the approximate frequency of recurrence;

3. Certification from a physician or appropriate medical expert, if the Administrative Officer or the Defender so requires; and,

4. Any additional information needed by the Administrative Officer or the Defender.

## B. Approval of Recipient's Request

The Defender will determine whether the employee's request will be approved or denied, in writing, within ten (10) working days after receipt of the application and all additional information requested. If approved, the Administrative Officer will establish a file for the Recipient and post an announcement that the employee has been approved for the program. If an employee does not receive sufficient donated leave within this Office, an announcement may, at the discretion of the Defender, also be sent to other Defender Offices or to other judicial units. The Defender will work with the Administrative Officer to create a donated leave account for the Recipient in HRMIS and otherwise to comply with the requirements of subsection E hereof.

## C. Procedures for Becoming a Donor

1. Submit your donation (subject to the maximum donation restrictions below) through HRMIS specifying the number of accrued annual leave hours to be transferred to the account of a specified recipient. If not done previously, contact the Administrative Officer and advise her of the donated leave requests. The Administrative Officer will work with the employee to ensure that OPM Form 630A, OPM 630-B and/or OMP Form 71 are completed. Failure to coordinate with the Administrative Officer

34

US00004481

may result in the Donor's loss of leave without receipt thereof by the Recipient.

2. For full-time and part-time employees who accrue annual leave throughout an entire year, the maximum donation would be one-half of the amount of annual leave accrued during the leave year in which the donation was made. This maximum would be lower for an employee who does not accrue annual leave during the entire year due to circumstances such as appointment after the beginning of the year or leave without pay.

3. A Donor may not have leave transferred from his or her annual leave account to the account of his or her supervisor.

4. Annual leave transferred under this program may be substituted retroactively for leave without pay or to liquidate the indebtedness for an advance of annual and/or sick leave granted due to a medical emergency.

5. If a Donor is subject to leave forfeiture at the end of the leave year, the amount of annual leave which can be donated will be the lesser of:

    a. One-half of the amount of annual leave the employee would be entitled to accrue during the leave year in which the donation is made; or

    b. The number of hours remaining in the leave year (as of the date of the leave transfer) for which the Donor is scheduled to work and receive pay.

### D. Transfer of Leave Between Agencies

The employer of a Recipient will accept annual leave transferred from an immediate relative of the Recipient, and outside agencies to whom announcement has been made (if the amount of annual leave transferred from within the employing office or agency is insufficient to meet the needs of the Recipient).

The employing office or agency is responsible for verifying the Donor has sufficient leave available and satisfies all the conditions of C(1) through (5) above. Upon satisfying these conditions, the Donor's office or agency will reduce the amount of annual leave credited to the Donor's account by the amount of leave donated, and notify the Recipient's office or

US00004482

agency in writing of the amount of annual leave to be credited to the Recipient's annual leave account.  **This is a transfer of leave hours only; there is no transfer of funds involved.**

E.     **Accrual of Annual and Sick Leave While in a Transferred Leave Status**

1.  An employee in a transferred leave status accrues annual and sick leave at the same rate as if the employee were in a paid leave status.

2.  The cumulative total amount of annual and sick leave that may be accrued while in a transferred leave status in connection with any particular emergency may not exceed 40 hours in each annual and sick leave.  For part-time employees, the maximum amount of accrued leave may not exceed the average number of hours of work in the employee's weekly schedule tour of duty.

3.  A separate leave account will be established for the employee for purposes of crediting all sick and annual leave accrued while in a transferred leave status.  This leave will not be available for use until the beginning of the first full pay period after the date the Medical Emergency has terminated as defined in G(1) through (4) below. At this time, this separate leave account will be transferred to the employee's regular leave account.

4.  If the Medical Emergency terminates as a result of termination of the Recipient's service, none of the leave in the separate account will be transferred to the Recipient's regular account.

F.     **Use of Transferred Leave by a Recipient**

1.  A Recipient must exhaust any annual and sick leave, or any annual leave in the case of a family member experiencing the medical emergency, that was accrued prior to the date the request to become a recipient was approved before using annual leave transferred by a Donor.

2.  A leave recipient may use annual leave donations only for the medical emergency for which the donation was approved.

3.  In the case where a Recipient is able to work a portion of the time while experiencing a medical emergency, additional leave earned for that time worked must be used before using transferred annual

36

US00004483

leave. Such an employee would earn leave based in part on the amount of time spent in a pay status and on the amount of time spent in a transferred leave status, using the leave accrual formula that applies to part-time employees.

4. The approval and use of donated annual leave is subject to all conditions and requirements applicable to the use of leave accrued by the employee, except that transferred annual leave may accumulate without regard to the 240-hour carryover limitation.

5. Unused donated annual leave may not (a) be transferred to a different Recipient without the consent of the Donor, (b) be included in a lump-sum payment to the Recipient, or (c) be made available for re-credit upon reemployment by another federal agency.

### G. Termination of the Medical Emergency

A Medical Emergency affecting a Recipient will be considered terminated:

1. When the Recipient terminates from service;

2. At the end of the bi-weekly pay period in which the Defender receives written notification from the Recipient that the Recipient is no longer experiencing the Medical Emergency;

3. At the end of the bi-weekly pay period in which the Defender determines, after written notice and opportunity for the Recipient to respond orally or in writing, that the Recipient is no longer experiencing the Medical Emergency; or

4. At the end of the bi-weekly pay period in which the Defender receives notification that the Office of Personnel Management has approved an application for disability retirement for the Recipient under the Civil Service Retirement System or the Federal Employee's Retirement System.

The Defender will monitor the status of the Medical Emergency affecting the Recipient to ensure that such emergency continues to exist. Upon termination of the emergency, no further requests for the transfer of annual leave to the Recipient may be granted, and any unused transferred leave will be restored to the Donors.

37

US00004484

## H. Restoration of Donated Leave

Any donated annual leave remaining to the credit of a Recipient upon termination of the Medical Emergency will, to the extent possible, be restored to the annual leave accounts of the Donors who are still employed and are under the Leave Act on the date restoration is made. The amount of unused transferred annual leave to be restored to each Donor will be determined as follows:

1. Divide the number of hours of unused transferred annual leave by the total number of hours of annual leave transferred to the Recipient.

2. Multiply the ratio obtained in step (a) by the number of hours of annual leave transferred by each Donor eligible for restoration.

3. Round each amount to the nearest whole hour increment. If the total number of hours obtained through this process exceed the total number of hours to be restored to the Donors, then no unused transferred annual leave will be restored. If this occurs, the unused hours cease to exist and are not available for use by that Recipient or any other Recipient. In no case will the amount of annual leave restored to a Donor exceed the amount transferred to the Recipient by the Donor. If the Donor retires, dies, or is otherwise separated from service before the leave can be restored, the Recipient's agency will not restore the unused transferred annual leave.

4. At the election of the Donor, the unused annual leave restored to that Donor may be credited to the Donor's annual leave account in the current leave year, credited to the Donor's annual leave account as of the first day of the first leave year beginning after the date of such election, or donated to another recipient.

5. Transferred annual leave that is restored to the account of a Donor is subject to the 240-hour carryover limit at the end of the year in which it is restored.

## I. Emergency Leave Transfer Program

In certain emergency circumstances, the President may direct that an emergency leave program be implemented. In such circumstances, employees may donate leave to other federal employees affected by the emergency. The circumstances and procedures governing the emergency leave program are set forth in the Guide. There are two major differences

US00004485

with respect to leave donated under this program. First, leave is donated to a federal unit or organization, and not to an individual. Second, the recipients of such leave are not required to exhaust annual or sick leave before utilizing donated leave.

## 4.00   COMPENSATION AND OUTSIDE EMPLOYMENT

### 4.01   Grade and In-Grade Increase (Non-AFPD Staff)

The salary structure for graded employees of the Defender's Office is governed by the Defender Organization Classification System (DOCS), which consists of grade levels and within-grade levels or step increases. The grade levels assigned to each position are classified and authorized by the Human Resources Division of the Administrative Office based upon the complexity and responsibility of the job assignment.

Advancing from one grade to the next higher grade of a position is a promotion and is **not** automatic. Promotions may be awarded based upon work performance of the employee and the assurance that the requirements established by DOCS have been met, but exemplary performance does not entitle an employee to a promotion as budget and other organizational factors may be considered by the Defender.

### 4.02   Within-Grade Increase

Each graded employee in step 1 through 9 of his/her grade will be eligible for a within grade increase ("WGI") to the next step of the grade effective the first day of the first pay period provided the following criteria are met:

   A.   Employee has completed the appropriate waiting period:

   1.   52 calendar weeks to be advanced to steps 2, 3, and 4;

   2.   104 calendar weeks to be advanced to steps 5, 6, and 7;

   3.   156 calendar weeks to be advanced to steps 8, 9, and 10.

   4.   Leave without pay is considered as creditable service so long as it does not exceed 2 work weeks or 80 hours for each 52 weeks of a waiting period. Excess time in a non-pay status serves to extend the waiting period by the amount of excess time.

39

US00004486

B. No equivalent increase in compensation was received during the waiting period. Quality step increases and increases in compensation granted by law or executive order are not considered to be equivalent increases.

C. Performance of the employee at an acceptable level of competence. The Defender will determine if the employee is performing the duties of the position at an acceptable level. Employees are not entitled to WGIs if they are rated below an acceptable level of competence.

D. If an employee whose level of competence was previously determined to be unacceptable subsequently improves, they may have their level of competency certified as acceptable by the Defender in any subsequent pay period.

### 4.03   Quality Step Increases

Quality step increases ("QSI"s) may be given to recognize and reward employees who display and sustain continuing high-quality performance and excellent service in all aspects of their job. As with promotions, QSIs are at the sole discretion of the Defender and are not an entitlement.

- Absent a freeze on QSIs, all graded personnel who have not reached the top of their grade may receive QSIs. No more than one QSI may be granted to an employee within any period of 52 consecutive calendar weeks.

- A QSI requires that performance in all major duties be of a high-quality level and substantially exceed normal requirements. The high level of effectiveness must be sustained for a reasonable period, i.e., a minimum of six months, and must give promise of continuing at the high level. An employee must have a minimum of 12 continuous months of service and have a minimum of 12 continuous months in the same grade immediately prior to the recommendation for a QSI. In addition to strict performance factors, good attendance, punctuality, ability to get along with other employees, and exemplary work attitude are some of the other employee factors that may be taken into account when consideration is given to a quality step increase. Notwithstanding employee performance, budget and other organizational factors may also be considered.

- A QSI is independent of regular within-grade increase (WGI). The employee does not start a new waiting period to meet the time requirements for a regular within-grade increase if a QSI is given. However, if a QSI places the employee in the 4th or 7th step of the grade, the waiting period for a regular within-grade increase is extended by 52 weeks.

Case 1:20-cv-00066-WGY   Document 245-25   Filed 06/01/23   Page 53 of 98

US00004487

### 4.04    Ungraded Personnel

Assistant Federal Public Defenders are ungraded personnel and not included in the Judiciary Salary Plan. Compensation of Assistant Federal Public Defenders is at the discretion of the Defender at rates not to exceed those established by the Administrative Office of the United States Courts and, in any event, not to exceed those paid to attorneys of similar qualifications and experience in the Office of the United States Attorney in the district where representation is furnished. Increases, if awarded, normally will be granted on the anniversary date of appointment.

### 4.05    Annual Review

All regular full-time employees will receive at least one annual review during a calendar year on or near their anniversary date. Performance strengths and weaknesses will be discussed with the employee informally as the need arises. All employees of the Office of the Federal Public Defender are at will employees. A favorable review does **not** alter that status or create any entitlement to continued employment.

The annual review is for the following purpose:

A.  To appraise the employee's performance relative to specific job duties and responsibilities.

B.  To assist employees in identifying performance strengths and weaknesses;

C.  To provide positive methods for improving performance areas that are not meeting standards;

D.  To give recognition for work well done;

E.  To open lines of communication between the employee and the office;

F.  To identify employee's accomplishments toward achieving objectives set at prior appraisals;

G.  To provide a history of work performance;

H.  To determine employee's career objectives and initiate formal and informal training to assist employee in achieving his/her objectives.

41

US00004488

### 4.06 Outside Employment

No employee will engage in any other employment unless approved by the Defender. No employee may engage in any other employment which:

A.      In any manner interferes with the proper and effective performance of the duties and responsibilities of his/her position;

B.      Results in a conflict of interest;

C.      May subject the Federal Public Defender's Office and/or the Judiciary to public criticism or embarrassment;

D.      Constitutes or involves the practice of law in contravention of the Canons or applicable law.

When contemplating additional employment, the employee must notify the Administrative Officer in order to be provided assistance in determining whether or not a particular job is appropriate. In no event shall the position or view of the Administrative Officer bind the Defender. If a contemplated position is determined by the Defender to be inconsistent with the above criteria, such employment cannot be accepted.

The above criteria also applies when the outside employment was being performed prior to employment with the Defender's Office. The Administrative Officer must be informed of the outside employment and consulted regarding a determination of consistency with the above criteria. If a determination of inconsistency is made by the Defender, such outside employment will be terminated upon notification in writing by the Defender to the employee.

Failure to timely inform the Administrative Officer of outside employment may result in disciplinary action. Permission for outside employment may be withdrawn at any time.

## 5.00   STANDARDS AND RESPONSIBILITIES

### 5.01   Office Conduct and Procedures

Employees must maintain the highest standards of honesty, integrity, and ethics to assure proper performance of the office's business. Every person having business with the Federal Public Defender's Office is entitled to have complete confidence in the integrity of the office and its staff. Every employee must help earn and honor that trust by demonstrating the highest moral and ethical principles in all actions. Regardless of whether any particular

42

US00004489

action is specifically prohibited, an employee has an obligation to avoid any action that creates even the appearance of impropriety or conflict because such an appearance may adversely affect confidence in the integrity of the office.

### 5.02   Professionalism

All employees of the Office are expected to be courteous when dealing with the public. If you are faced with an unpleasant situation or unreasonable request that you cannot deal with in a courteous or polite manner, immediately refer that matter to a supervisor or the Administrative Officer.

Courtesy and professionalism are also expected between employees in the performance of their duties. If you feel an employee is performing in an improper manner, refer that matter to the Defender, the Administrative Officer, or your Trial Team Leader.

Should you believe that a directive or instruction given to you by a supervisor is improper and unjust, you have the right to respectfully call their attention to the matter and ask for the opportunity to discuss the matter in private.

As an employee serving the public you may be asked for your name. Except in situations where you have concerns for your personal safety, it is expected that you will give this information. If you have such a concern, contact your supervisor immediately.

Courtesy, helpfulness and professionalism will be maintained not only in personal contact with the public, but also over the telephone.

### 5.03   Appearance

Employees should be aware that this is a law office with heavy public contact.

While no formal dress code exists and casual dress is permitted, all employees are expected to dress in a manner appropriate for the business of the office. The final decision as to whether particular dress is appropriate for the office rests with the Defender. In general, shorts, tank tops, tube tops, see through shirts and blouses, and halters will be viewed as inappropriate. Whenever an employee chooses to dress in a casual manner, he or she shall have available in the office attire appropriate for court or other needs which may arise unexpectedly.

### 5.04   Duty Stations

Each employee is responsible for keeping his/her assigned office or work area neat, orderly, and professional in appearance.

US00004490

Employees are expected to be at their stations working or available for work throughout the work day.

It is imperative that we be able to account for all employees and quickly get in touch with them, especially the legal staff, when not in the office. Whenever any employee leaves the office, the person should utilize the In/Out Board posted in the receptionist area. If it is a protracted absence, the employee should also send an email to the office stating his/her whereabouts.

### 5.05 Furniture and Equipment

Each employee is personally responsible for maintaining and securing all office furniture and equipment assigned to them. Employees should use extreme care in securing and caring for accountable property (laptops, tablets, etc.). Employees could be held responsible for any furniture or equipment lost or damaged due to their negligence.

### 5.06 Children in the Workplace

The office recognizes the needs of employees to occasionally take care of family matters, for limited periods of time, during working hours. An employee may need to take a child to a doctor or school appointment, pick up a sick child, attend to an ailing parent, etc. The use of annual leave or family sick leave, when appropriate, is available for such purposes.

On some occasions, it may be appropriate to bring a child to the office for a short time so that the employee will not have to be on leave. This is permissible, with approval of the employee's supervisor.

### 5.07 Gifts, Entertainment, and Favors

A.  An employee will not solicit or accept, directly or indirectly, any gift, gratuity, favor, entertainment, loan, or any other thing of monetary value, from a person who:

1. Has, or is seeking to obtain, contractual or other business or financial relations with the office;

2. Conducts operations or activities that are within the jurisdiction of the office; or

3. Has interests that may be substantially affected by the performance or non-performance of the employee's duty.

44

US00004491

Contracting officers are held to a higher standard and should not accept any gifts from any contractor.

Exceptions to this prohibition may be made in certain circumstances as follows:

1. Obvious family or personal relationships (such as a spouse) if the circumstances make it clear that it is those relationships rather than the business of the persons concerned which are the motivating factors;

2. Acceptance of food and refreshments of nominal value on infrequent occasions in the ordinary course of a luncheon or dinner meeting or other meeting or on an occasion when an employee may properly be in attendance;

3. Acceptance of loans from banks or other financial institutions, on customary terms of finance, for proper and usual activities of employees, such as home mortgage loans; and

4. Acceptance of unsolicited advertising or promotional materials, such as pens, pencils, note pads, calendars, or other items of nominal intrinsic value.

5. A maximum gift value of $50 can be received from a vendor. The sum total of all gifts from the same vendor cannot exceed $100 within the same year.

B. An employee will neither solicit nor accept a payment of money or anything of value from a client, except that an employee may accept an appropriate momento or token that is neither money nor of commercial value.

C. An employee will not accept a gift, present, decoration, or other thing from a foreign government unless authorized by Congress as provided by the Constitution and law.

### 5.08   Office Contributions

Occasionally a staff member may ask for contributions to pay for flowers, a gift, etc., when another staff member is seriously sick, getting married, having a child, or other similar occasions that would traditionally warrant the giving of flowers or a gift. **Contributions are strictly voluntary, no staff member will ever be required to contribute**.

45

US00004492

The selling of commercial items such as Amway or tupperware is prohibited in the office. However, employees selling items for schools that their children attend, for organizations such as the boy or girl scouts, or for charities, may place order forms in the office to allow other employees to order items. **As with other contributions, purchases of such items are strictly voluntary.**

### 5.09   Smoking/E-Cigarette Policy

Smoking, including use of e-cigarettes, is not permitted anywhere in the office.

### 5.10   Client Property

Client property is not to be accepted from the client, agent, or any other party. Staff may assist in facilitating the transfer of client property from the client to an authorized third party, or in facilitating the release of client property from a law enforcement agency to the client or an authorized third party. In such cases, the staff member should obtain a list of the property being released and a copy of the receipt signed by the third party. Client contact with law enforcement should be minimized.

Should a staff member determine that accepting and/or storing client property is required in order to provide effective counsel, authorization must be received from the Federal Defender or First Assistant. If the exception is granted, an agreed upon inventory list must be received, including a notation of the time, date, place, and from whom the property was received. The client property must be stored in a locked and secure area, and the inventory list must be verified upon return.

As soon as reasonably practical, and so long as doing so would not interfere with providing effective counsel, property held by this office should be returned to the client or a third party authorized by the client to receive the property. In no event should client property remain in the care of our office following the end of representation, unless specific arrangements have been made and approved in advance by the Federal Defender or First Assistant. Disposal of client property other than by return to the client or authorized third party, should be limited to those cases where return of the property is not possible or likely to become possible in the foreseeable future, and after approval by the Federal Defender or First Assistant. Any questions regarding this policy should be referred to the Federal Defender or First Assistant.

**Government postage, Federal Express accounts or other funds are not to be used to mail or ship client property.**

US00004493

### 5.11    Mail/Parcel Policy

The mailing address of the office is for official use only.  The office address will not be used for any personal business.  Nor will any personal item or correspondence inappropriate to the workplace be delivered to the Office.  Under no circumstances will the Office address be used as a billing or collection address for any personal business of an employee.  Under no circumstances will the Office be responsible for any loss or damage to any item delivered to the office not related to the business of the Office.  All mail and parcels delivered to the office are subject to being opened and reviewed by the Federal Public Defender before delivery to employees.

No mail or parcel will be received which cannot be inspected by the Federal Public Defender, who reserves the right to inspect all incoming mail.

All mail is to be stamped with a date and time received immediately upon receipt of the mail.

**Return Envelopes/Labels:** No stamped return envelopes or return Federal Express labels are to be used for any reason except where there is a specific request by an attorney asking for the return of specific and necessary information, and the belief that the information would not be returned without the stamped return envelope or Fed Ex label.  All such envelopes and labels must have the Federal Public Defender Office's return address imprinted prior to mailing or delivery.  Notwithstanding an instruction or request by an attorney, no employee shall provide a return FedEx label without prior notice to the Administrative Officer or Defender.  Employees are required to advise the Administrative Officer in all instances where a FedEx label or account number is provided to an outside party.

### 5.12    Expert Policy

This guidance is designed to provide the Assistant Federal Public Defender (AFPD) and support staff with a framework outlining the procedures for securing, managing, and paying for the services of an expert.  The steps outlined in this section are in no way intended to discourage the use of experts in cases, but to ensure that we are able to demonstrate that the FDO is a good steward of federal funds.  As an FDO, we are committing and expending federal funds and it is important that the expert services are utilized in the most judicious and appropriate manner.

Before requesting expert services, the AFPD should consider whether the outcome sought can be achieved through obtaining a client's records for education, mental health, substance abuse treatment, or other medical treatment.  In addition, the AFPD must first consult with the CSA before attempting to obtain any digital forensic experts.

US00004494

The AFPD requesting services must have **specific**, **documentable reasons** for why a particular expert is needed and how that expert's services will assist the client.

Only the Expert Contracting Officer has the authority to contract with an expert. An AFPD or other staff may not instruct an expert to begin work (or to continue work past the agreed-upon funding in the contract) or make any adjustments to the contract.

The following procedures will be used for requesting expert services. Please note that while it is the responsibility of the AFPD to perform the identified functions outlined below, support staff can provide assistance with the approval and review of the AFPD.

Please consult with the Expert Contracting Officer (ECO) if you have any questions.

1. The AFPD determines the type of expertise needed and locates the appropriate expert(s). The ECO or support staff can be used for assistance with this process.

2. The AFPD fills out the Request/Approval to Expend Funds for Expert Services and submits to the ECO (this must come <u>directly</u> from the requesting attorney). The ECO obtains a signed Expert Certification form from the AFPD.

   The AFPD will need to include the following information in the request document:

   a. **A description of the requested services, including what the expert is going to assess** (i.e. psychiatric disorders, acquired and developmental disorders, cognitive and intellectual impairments, trauma and violence exposure, the flow of funds through bank accounts) and what you want the expert to do (i.e. review records, evaluate client, conduct testing).

   b. **At what stage of the case you want to use the expert** (i.e. pretrial motions, plea negotiations, trial, sentencing, competence to stand trial, insanity at the time of the offense).

   c. **How you expect the expert services to be useful in obtaining a more favorable disposition** (i.e. Can you connect the diagnosis/condition to the offense conduct? Are there conditions of incarceration too onerous in consideration of the diagnosis/condition? Did the diagnosis/condition affect his criminal history/past behaviors? Does the diagnosis/condition effect the 3553 factors?)

   d. **Name of expert, hourly rate and amount of funds needed**

US00004495

If the AFPD is unsure as to any of the information requested above, please consult with the potential expert prior to submitting the request. *Please note that the FDO cannot pay the expert for this consultation*, but it is a general practice of most experts to engage in a brief discussion before hire to determine the nature of the work needed.

3. The ECO reviews the Request/Approval to Expend Funds for Expert Services for completeness and sends the request and all supporting documentation to the Defender for approval. This should include a confirmation of the availability of funds for the contract.

4. If approved, the Defender emails authorization (with history attached) to the ECO and Financial Administrators.

5. The Financial Administrator will obligate the funds for expert use. The ECO prepares a Contract and Retainer Letter and sends it to the expert for signature. The Financial Administrator maintains an expert spreadsheet detailing the funding approved and funds expended for each expert in each case.

An expert services contract cannot be exceeded in time or amount. If additional time is needed to complete the work or additional work is needed, this entire process must be repeated, starting with the AFPD emailing the ECO to request additional funds with an explanation and justification for doing so. **This new approval and amended contract must be in place BEFORE any additional work can begin. The expert may not bill for any work done between exceeding the initial funds and when the amended contract is in place.**

6. Once the contract file is complete, the ECO notifies the requesting AFPD of same and that the expert has been authorized to begin work.

7. Upon completion of services, the AFPD evaluates the work and the expert's itemized bill and, if determined acceptable, emails the ECO indicating that requested services were satisfactorily rendered and payment is recommended. The ECO will then ensure that all supporting documentation, including the itemized expert bill, is in the client's casemap expert folder and notify the Financial Administrator. The Financial Administrator will retrieve the invoice and supporting documentation to prepare and submit for payment.

8. If the AFPD determines that the expert services were satisfactorily rendered and that it would be beneficial to have the expert listed on the expert roster, the AFPD provides the expert's name, address, phone number, email address and area of expertise to the ECO. The ECO will then retrieve the expert's CV from the casemap folder and add the expert to the Expert List.

49

US00004496

<div style="border:1px solid black; padding:10px">

**Keep in mind:**

Only the ECO has the authority to authorize work under the contract.

No work may begin until the executed contract has been returned to the ECO.

Supplemental funds must be requested prior to running out – no work may be done after these funds are exceeded. No work or expenses will be reimbursed if they exceed the amount of funding approved or the dates of the contract.

Reimbursement is limited to actual expenses incurred. Receipts must be provided for lodging; meals; telephone calls over $5.00; common carrier expenses; and any cash expenditure exceeding $25.00. Restaurant receipts must indicate the name and location of the restaurant, the items purchased, the date, and amount of the expense (*Guide*, Vol. 19, Ch. 4, §450.30.30).

</div>

### 5.13 Transcript Policy

Transcript orders must be approved in advance. Employees are to complete the standard Transcript Authorization Form and submit the same to the Federal Defender for approval before ordering transcripts. Requests for expedited or daily transcripts require additional explanation (as noted on the Transcript Authorization Form).

### 5.14 Travel Policy

**A. Approvals:** Approval must be obtained for travel as set forth below:

1. **Out of District:** All travel outside of the home district requires prior written approval of the Defender, except that blanket approval exists for travel (i) for attorneys and investigators to travel to identified pre-trial detention facilities in which clients may from time to time be detained, and (ii) for attorneys to travel to Richmond, Virginia for appearances before the Fourth Circuit Court of Appeals. All requests that require approval shall be in writing and submitted through the Travel Coordinator. Notwithstanding the blanket approval described above, where such travel involves overnight stays or requires that a rental car or other commercial costs be incurred, advance approval of such costs shall be obtained in the same manner as for comparable costs for In District travel.

2. **In District:**

50

a. **Overnight Stays:** All travel within the home district involving overnight stays must be approved by the Defender or his designee, in advance. Once travel is approved, a travel authorization must be produced prior to travel. The employee must contact the Travel Coordinator who will gather information such as the dates of travel, nature and amount of anticipated expenses, and the purpose of the trip in order to complete the travel authorization.

b. **Daily Travel**: Blanket approval is given for attorneys, investigators, paralegals, legal assistants and interpreters to engage in **daily** travel within the district and for the Defender, Administrative Officer or IT Staff Members to travel from the Charlotte office to the Asheville office on daily travel or for overnight stays of 2 days or less.

In **all** cases of daily travel where **either** rental car or other commercial transportation costs are to be incurred, advance approval is required.

c. **Administrative Travel:** Except where permitted in paragraphs one and two above, all administrative travel by staff requires written approval by the Defender.

d. **DSO Approval:** Defender Services Office approval is required for the following travel**:**

i. **Outside the Continental United States:** All travel to another country or to any location outside of the 48 contiguous states requires the approval of the Defender Services Office. Such approval frequently takes multiple weeks to obtain and needs to be sought at the earliest possible time. In all instances of such travel, the employee shall consult and coordinate with the Administrative Officer.

ii. **Out of District Administrative Travel:** All administrative travel outside of the district by the Defender, excepting (1) travel to attend training or to participate as faculty at an event sponsored by DSO or another Defender office and (2) travel to attend circuit judicial conferences when

51

invited in writing by the Chief Judge of the Court of Appeals or Director of the AO, requires DSO approval. Staff is not required to have DSO approval in addition to that of the Defender.

    **iii.** **Special Purpose Travel:** There are special authorizations that may be required by the AO, DSO, or others in connection with travel for special purposes, such as to attend an investiture or similar ceremony. The Guide must be consulted in connection with any travel which is special in nature or otherwise neither case related nor related to DSO functions.

**B.** **Travel Arrangements:** Airline, hotel, and rental car reservations will be made through the AO approved travel agency, National Travel. This agency has a contract with the government to provide travel-related services. To provide consistency and expertise with regard to travel arrangements, the Travel Coordinator shall make all travel arrangements for employees in the Charlotte office and the Asheville office.

**C.** **Travel Reimbursement:** Employees are entitled to be reimbursed for expenses incurred during official travel. Reimbursement rates are established by the government and vary over time. Rate particulars can be obtained from the Administrative Officer.

    1. **Overnight Travel**

    A claim for reimbursement for overnight travel must be submitted **within 10 days** after the completion of the travel. The Travel Coordinator is ordinarily responsible for preparing travel vouchers. Whenever possible the Travel Coordinator will secure lodging at or below the government rate. When the expenses of lodging are expected to exceed the GSA maximum lodging rate for the location, the Defender may, at his discretion, authorize employee reimbursement for the actual cost of lodging plus the applicable GSA locality M&IE allowance, up to 150 percent of the applicable GSA locality per diem rate. **When expenses of lodging are expected to exceed the GSA maximum, secondary approval from the Defender explaining the need for the exception is required.** It is the traveler's responsibility to complete

52

US00004499

the appropriate tax waiver form as the federal government is not responsible for taxes.

Travelers must submit receipts for the following expenses:

a. Lodging;

b. Rental car (travelers must obtain prior approval for rental cars), taxis, or shuttles;

c. Gasoline for rental cars (see above);

d. Baggage fees and, when needed for purposes of official business, excess baggage fees;

e. Long distance telephone calls in excess of $5 each;

f. Any other authorized expense in excess of $25.00;

g. Air Travel;

h. Parking[1] (receipt **required** for any fees over $10);

i. Miscellaneous additional expenses (i.e. shuttle, taxi, or ride-sharing service).

If a receipt was lost or it was impracticable to obtain a receipt as required, the traveler must see the Travel Coordinator for guidance.

Reimbursement for overnight travel will be made under the following methods: Per Diem, or Lodging Plus, at the discretion of the Defender. Under the Per Diem method, the employee is reimbursed a set amount established by the government, which varies depending on the destination, for lodging plus food. Under the Lodging Plus method, the employee is reimbursed the actual cost of lodging (plus taxes, if tax form not accepted) and given an additional allowance per day for meals and incidental expense.

---

[1] With respect to parking at Charlotte Douglas International Airport, the Office will only reimburse for daily, long-term or off-site parking and will not reimburse for hourly or concierge parking. The Office will only reimburse for valet parking at a hotel if it is the only option available.

53

US00004500

The goal of travel reimbursement is to provide repayment to the employee without causing either a windfall to the employee or unnecessary expense for the government. The reimbursement methods described above are intended to minimize these consequences.

The particular method selected for reimbursement will depend on travel factors and generally be that which inures to the benefit of the government. For example, an employee traveling out of district on case related matters but choosing to stay with a friend or relative in the destination city will **not** receive lodging per diem, but likely only M&IE for meals and incidentals. Similarly, if the per diem for City A is $200 per day and the employee chooses to obtain lodging from a remote Super 8 motel for $40.00 per night, the employee would not be reimbursed under the Per Diem method and thereby provided with $160.00 per day for food. Rather, reimbursement would be by Lodging Plus.

If any employee has unusual travel or lodging arrangements (including room sharing) or is concerned about the method of reimbursement to be utilized, he or she should discuss the matter with the Travel Coordinator or Administrative Officer before embarking on travel. In all instances in which the employee seeks to combine personal travel with government travel, he or she must discuss all details with the Travel Coordinator before embarking on such travel.

### 2. Daily Travel

This office does not currently lease government vehicles; accordingly, personal vehicles may be used for daily travel. Such use shall be reimbursed utilizing the standard rate per mile authorized by the Director of the AO. There is a separate rate for automobiles and motorcycles.

The Office will reimburse for daily travel as follows: Employees embarking from the office and returning to the office following daily travel, shall be reimbursed at the authorized rate without offset. Employees embarking from home and traveling to a jail or other destination before arriving at the office, as well as employees embarking from the office on local travel and proceeding directly home from such travel, will be reimbursed at the authorized rate for the actual miles traveled minus a mileage offset equal to the distance which corresponds to the employee's normal one-way commute to or from the Office.

### D. Transportation of Non-Employees

Concern over liability rises when non-employees are transported by the office's employees. The general rule is that, while on duty, employees shall not transport any non-employee.

It may be appropriate for an employee to transport a non-employee, with prior approval from the Defender, in the following circumstances:

54

US00004501

\*An emergency where physical or emotional harm or other grave risk is a factor; or

\*The passenger is a "professional" such as a lawyer, judge, physician, psychologist, or interpreter who (i) is involved in the same case or activity as that which necessitates the employee's travel, and (ii) would be going to the same destination in such capacity independently.

Where employees use their personal vehicles to perform official duties, employees are advised that they should check their insurance coverage to see whether they are insured and protected if transporting others in the course of their work. While the expectation is that government tort or other protections may protect employees from claims of passengers, there may be exceptions, exclusions or other judiciary provisions that apply. Accordingly, employees are discouraged from transporting others in their personal vehicles. In the event such transportation is required, employees shall obtain the written approval of the Defender in advance of such travel to document its business purpose.

### 5.15   General Expenses

Unless specifically delegated procurement authority in writing, all staff members must receive prior approval from the Administrative Officer or the Defender to expend any funds. However, attorneys, paralegals and investigators may spend up to $100.00 to purchase items such as photocopies, film, batteries, office supplies, etc., when working out of the office. A request for reimbursement, which includes a receipt, must be submitted as soon as possible. Employees are cautioned that expenditures of personal funds in excess of $100 may be deemed by the government to be a "voluntary creditor" whose reimbursement is not guaranteed. In order to prevent that presumption from being applied to a necessary expenditure, employees are required to obtain written approval from the Defender or Administrative Officer in advance of any such expenditure of personal funds. Employees with procurement authority or purchase cards are subject to such delegations of authority and internal controls as may apply to such authority or use of card.

### 5.16   Personnel Files & Release of Personal Information

A. The Defender maintains a local personnel file on each employee. The local file contains personal history information including appointment forms, promotions, health and life insurance enrollment forms, disciplinary action, etc. The "Official" personnel file is maintained in Washington, D.C. at the Office of Personnel Management. Employees have access to their official personnel file through eOPF (available through JENIE). Employees are given access to comparable portions of their local personnel file. Employees must notify the Administrative Officer of any changes to their

55

US00004502

addresses, telephone numbers and persons to be notified in case of any emergency so that our records are current.

All personnel files are treated as confidential and may be reviewed only by the employee, the Administrative Officer, the Defender, and their designees.

B. Personal information of current and former employees is considered confidential.

### 5.17 Outside Requests for Employee Information

There are instances when telephone inquiries are made concerning an employee's work status with this office. These inquiries are generally made following an employee's application for a loan or in connection with the establishment of a good credit rating.

For employee protection, all requests for employee information must be forwarded to the Administrative Officer or Defender. The only information that will be given by this office pursuant to a telephone request will be to verify employment and the length of employment. If the person making the inquiry requests any additional information, such as salary, etc., that person will be instructed to make the inquiry in writing. The exception to this rule will be where an employee has indicated on a loan application, or otherwise, the amount of his/her salary, and the Office is asked to verify the accuracy of that representation.

To assist in responding to these matters, it is requested that employees notify the Administrative Officer in advance if they are expecting an inquiry to be made.

### 5.18 Releasing or Disclosing Information

No employee is authorized to release any confidential information about the Office or its clients unless expressly authorized to do so. Client information is confidential and can be used for very limited purposes only. In the case of any doubt or uncertainty, confidentiality should be presumed. With respect to a case, the attorney assigned to that case is responsible for maintaining confidentiality, and no other employee will release information without that attorney's express approval.

These restrictions apply not only with respect to face-to-face encounters, but also with respect to social media. Employees should refrain from posting on Facebook, tweeting about, using Instagram, or using any other social media to comment or communicate about a non-public aspect of the Office or its clients. Additionally, employees should refrain from using social media to comment upon any proceedings in cases of the Office or upon the

56

US00004503

actions of any judicial officer before whom the Office appears.  Doing so may result in disciplinary action up to and including termination.

The removal of any document from the Defender's Office, except for official, authorized use, is also prohibited.

### 5.19   Request for Information

Any request for non-case related information other than routine requests will be referred to the Defender.

### 5.20   Telephone Policy

It is the policy of the Office to take all business telephone calls (except collect calls, see below) from all callers, if the person called is available.  If an employee is present in the office and for any reason does not take the call, the caller should be advised, through the receptionist or other staff that the person called is unavailable.

The Office only accepts collect calls from clients.  If available, attorneys are expected to accept calls from their clients.  When a client becomes a nuisance by calling too much, then the responsible attorney can instruct staff to refuse any calls from that person.

It is realized that everyone must make a necessary personal call on occasion and such calls are permitted.  Employees are reminded, however, that this is a business office and the telephones are for business purposes.  Personal phone calls, therefore, must be brief and kept to a minimum.  Under no circumstances should long-distance personal calls be made from Office phones.

The Office will not routinely reimburse employees for business calls made on personal cell phones.  Reimbursement will be made only for such calls as are approved in advance by the Defender and which:  (i) are for the official business of the Office, (ii) required the use of personal cell phone rather than existing government alternatives (e.g., FTS network, AT&T phone card), and (iii) caused the employee to exceed his/her plan minutes or otherwise resulted in a discrete and identifiable cost to the employee that otherwise would not been incurred.

Where a cell phone is provided to an employee, its use is subject to the general telephone policy of the Office.

US00004504

**5.21    Computer, Internet and Device Policies**

**A.  Computer Use**

1.  **In General:** Computer use is subject to the same standards as telephone use within the Office.  While there may be times when personal use is necessary, it should be brief.

2.  **Security:** Employees are responsible for the security of their workstations.  Passwords must be kept secure.  Passwords shall not be freely exchanged, disclosed or disseminated.  In no event shall computer passwords be reduced to writings posted on office computers or otherwise left in places accessible by others.  Employees will periodically be prompted to change their computer passwords and must do so to avoid being locked out of the system.  When an employee leaves the office for the day, the employee must lock the computer, log out or shut down his or her computer.

3.  **Outside Software Programs:**  Installation of any software programs not provided by the office must be coordinated with and approved by the CSA to assure that there are no incompatibilities, viruses or other system concerns.  Violation of this provision may, among other things, cause the Defender to direct the CSA to limit installation and other user rights.

4.  **Hardware Connections:** No hardware or peripherals including but not limited to iPads, digital cameras, cell phones, or other serial/USB devices shall be connected to any office computer without the approval of the CSA.

5.  **Surveillance Programs:**  In no event shall any surveillance, key logging or background screen capture software such as SpectorPro, eBlaster or any similar program be installed on any computer or network device by any employee without the express approval of the Defender.  Similarly, no employee may install GPS tracking hardware or software on any Office device or object.  Employees are advised that violation of this provision will be viewed as grounds for immediate termination.  Notwithstanding the above, employees are advised that the Office installs and utilizes tracking software or devices with respect to certain government owned devices.

58

US00004505

## B. Internet Use

1. **Authority:** The Office is authorized internet access via the Federal Defender Program Wide Area Network (DWAN) and utilizes the DWAN by default. Internet services are made available to all employees.

2. **Policy:** The Internet is intended to be used for official business, but is an unregulated and uncontrolled global network. Many of the sites accessible via the Internet contain useful information related to the Office's work for clients; others are designed strictly for recreational use. Consequently, there are risks associated with Internet usage that must be controlled. Among those risks, the Judicial Conference of the U.S. Courts has identified four of particular concern:

   a. ***Institutional Embarrassment.*** Websites typically capture and record the domain name of all sites accessing them. It would be embarrassing to the judicial branch for one of its domain names to be found in the access records of inappropriate sites. Therefore, all users should use discretion and avoid accessing Internet sites which may be inappropriate or reflect badly on the judiciary, the Federal Defender program, and/or this Office.

   b. ***Agency Public Presence.*** The Internet at large is an open medium. An employee using the Internet must guard against inadvertently giving the impression of articulating official judicial branch policy or positions. Unless a user has been given specific authority to do so, no one has the authority to speak on behalf of the judiciary, the Federal Defender program, or this office and should avoid the appearance of doing so.

   c. ***Lost Productivity.*** The Internet provides a vast array of information only some of which is applicable to the business of the office. Utilizing the Internet for personal use results in lost productivity. Users should limit personal use of the Internet in order to avoid lost productivity.

   d. ***Capacity Demand.*** The Office pays for high-speed Internet access adequate to support business use. As a result, Internet use should be limited to the minimum necessary in order to avoid inappropriate stress on the Office's capacity. Additionally, the Internet use of this Office affects bandwidth available to other users of the DWAN. Therefore, special attention must be

59

paid to uses of the Internet which strain capacity or could affect other users within the office or across the DWAN.

3. **Notice:** No expectation of privacy exists, nor should any be presumed to exist, with respect to employee Internet usage. This specifically includes use of the Office's Internet capacity to access personal email services, social media, banking data, or other services. From time to time or as the Defender sees fit, computers in the Office may be subjected to monitoring, data capture, examination of usage history, or other controls or examinations which may capture details of Internet usage, including details of such personal use as employees may make of Office computers (including passwords, account numbers, and other details revealed by the employee's use). Additionally, from time to time, in order to protect the security of the DWAN, computer usage may be monitored or tracked by NITOAD. By choosing to use the Office computers for personal purposes, the employee recognizes that their personal and otherwise private information may be made known to the Defender or others. If any employee wishes to maintain personal privacy with respect to computer usage, that employee should avoid using government computers for personal matters. All use of Office computers is monitored under the direction of the Defender. No employee has any right to privacy with respect to any use of any Office computer, cell phone, iPad or other device.

4. **Special Use Prohibitions:** Employees shall not use the Internet access of the Office or any Internet service accessed via a government issued device for illegal, unlawful or unethical purposes. Employees shall not utilize any such access or device for partisan political purposes or for commercial gain. In addition to these general prohibitions, the following specific uses are prohibited for capacity, security and other reasons: use of internet radio and streaming video sites accessed through the Office; downloading or viewing pornography; downloading pirated software or obtaining program "hacks" or "cracks;" use of any peer-to-peer file network. The specific prohibitions do not apply where necessary for case related reasons. Where case related use is necessary, the employee shall consult with the Defender and the CSA before engaging in the activity.

5. **Additional Guidelines:** The following criteria should assist employees in determining what types of Internet related activities are appropriate;

60

US00004507

**Do not access sites that may be inappropriate or reflect poorly on the Office of the Federal Public Defender**
Creating, downloading, viewing, storing, copying, and transmitting sexually explicit or sexually oriented materials is not appropriate and may be illegal unless it is case related. Internet sites capture the domain name of all computers that access them, and maintain a record of this information. All such sites should be avoided unless clearly case related.

**Do not transmit confidential information using Internet email**
Internet email is subject to inspection by a variety of people and mechanisms as it travels from the sender to the recipient. Consequently, great care should be exercised when sending information relating to client matters or litigation. Unless special precautions are taken, sending confidential client information via the Internet will likely be a breach of the attorney-client privilege. (If client information must be transmitted across the Internet, see the CSA for help in securing the confidentiality of the data.)

**Use government email appropriately**
It is not appropriate to use government systems to send or receive emails containing political statements, jokes, pictures, and other items of a personal nature. Chain letters or other unauthorized mass mailings, regardless of the subject matter, likewise are inappropriate.

**Do not log on to radio and other broadcast services or download music/video files**
Logging onto video or audio sites slows the performance of the entire network. Downloading music/video files consumes significant disk space on local computers and may be a violation of copyright law.

**Do not send large attachments unless required for official business**
Video, sound, and other large file attachments present several problems. First, they take up space - both on the local server and national email servers. In addition, the transmission of large file attachments slows the network down, which affects access to Westlaw, Lexis, and the Internet.

**Do not subscribe to newsgroups or enter chat rooms**
Hackers often exploit security holes in chat programs in an attempt to gain access to network resources. Newsgroups can be a source of unsolicited inappropriate content, and are also used as a vehicle for spreading computer viruses.

**Do not download or install unauthorized software from the Internet**
Many web sites provide free or inexpensive programs (known as shareware) for download. While many shareware programs are beneficial, some are not compatible with currently installed applications. Additionally, some shareware installs "spyware" or other "malware" which gathers information from the infected computer or device. Only the CSA is authorized

Case 1:20-cv-00066-WGY   Document 245-25   Filed 06/01/23   Page 74 of 98

US00004508

to load software on a workstation or the network.  Employees should consult with the CSA before installing programs on government issued devices other than computers.

**Do not install or use "instant messaging" or peer-to-peer (P2P) software on government devices**
As noted above, these activities are to be avoided.  If there is a case-related need to use one of these programs, the CSA can set up a "protected" computer that is not part of the office network.  After the investigation, the designated machine can be wiped clean before it is reattached to the network.

**Do not use email or the network connection for offensive activities**
It is not appropriate to use government devices, email or the Internet to access, send or receive information on or in support of activities that are illegal or offensive to fellow employees or the public.  Such activities include, but are not limited to, hate speech or material that ridicules others on the basis of race, creed, religion, color, sex, disability, national origin, or sexual orientation.

**Do not install wireless LANs in the Office**
No wireless routers or access points shall be connected to the Office's systems or devices, except by the CSA under the direction of the Defender.

**Do not use private VPNs or Proxy sites**
The use of private VPN sites, Proxy sites, TOR or the dark web to circumvent the network security and monitoring of the internal network is prohibited.

**Do not post email address**
Spammers, hackers, and distributors of spyware, adware and viruses frequently utilize tools which capture and target email addresses posted at web sites on the Internet.  Because of this, employees shall not post their office email address on non-secure web pages or web forms without the approval of the CSA.

**Do not "unsubscribe" to unwanted email**
Unwanted or "spam" email may contain a "unsubscribe" button.  Usually this button will not actually unsubscribe a user and may make a user vulnerable to viruses. These emails should be deleted.  **Under no circumstances** should the link, button or other professed means of removal be clicked or used.  Instead, classify the email as "junk."

### C.  Mobile Device Policy

Mobile devices such as iPads, iPhones, Android and similar smart phones, tablets and devices present additional issues beyond those applicable to computer workstations.  With respect to the Internet capabilities of such devices, the Internet policy of the Office applies to all such

US00004509

devices issued by the Office or attached to the DWAN or the Office's wireless network. Additionally, all Office policies with respect to email usage applies to use of the Office's email system over such devices, regardless of whether the device is personal or Office issued. The following policies also apply to such devices:

1. **Passwords:** All mobile devices issued by the Office to employees shall be password protected at all times. Generally, the CSA sets these passwords. Employees are not allowed to change any password set by the CSA. Employees are not allowed to "jailbreak" or "root" any device issued to them. In the case of personally owned mobile devices not issued by the Office, employees are required to password protect those devices at all times whenever (i) the employee uses the device to access LotusNotes or other Office email through a client or application installed on the device, (ii) the employee uses a client installed on the device to obtain VPN access to the Office, the DWAN or any of their systems, or (iii) Office issued passwords for programs (e.g., Westlaw) or systems (e.g., network passwords) are stored on the device.

2. **Apple and Comparable IDs:** The Office issues Apple devices (iPads and iPhones) to some employees. These devices require the creation and use of an Apple ID. Apple IDs are created by the CSA with respect to devices issued by the Office. Employees may not change any Apple ID associated with a device assigned to them. This policy will also apply to any ID or identifying name or number that may be associated with any Android, Blackberry, or other device that may be issued by the Office.

3. **Application Purchases:** Apple, Android, and other devices provide an "App Store" at which an owner can acquire applications, some of which are free and others of which require some form of payment. No employee, other than the CSA, is authorized to use a government procurement card to purchase apps. No employee is permitted to use or associate a government procurement card with a device ID or to store any government procurement card number or data on any mobile device.

   For personally owned devices, the following also applies: If any employee uses a personal credit card, gift card or other method of payment to acquire an app associated with the government ID, that purchase will be deemed a donation to the Office for which no reimbursement will be made. Any and all data collected or used by

63

such app shall also be the property of the Office. The Office cannot and will not transfer such an app or its data to a personal device or device ID upon the employee's request or termination of employment. If any employee wishes to make an app purchase, the employee must consult with the CSA to both as to security issues and as to means to associate a personal purchase with a personal ID.

4. **Airwatch:** Mobile devices issued by the Office may be monitored and administered by the Airwatch software program. The use of Airwatch requires the installation of a client on all software devices being managed by Airwatch. Employees are not allowed to uninstall, reconfigure or otherwise alter the Airwatch client or any of its settings. This policy shall also apply to such programs as may in the future be selected by the CSA to replace Airwatch.

5. **Security:** If any electronic device issued by the Office or otherwise described in paragraph one above (which includes personal devices) is lost or stolen, the employee must immediately notify the CSA and Administrative Officer. In any such event, the CSA will locate or wipe any government issued device monitored by Airwatch and, for both government issued and personal devices, require the employee to change any and all passwords which may be compromised.

6. **Wireless Access:** Mobile devices of employees, both office issued and personal, may be connected to the Office's wireless Internet system which is not part of the DWAN. While attached to the wireless system only, and not while attached to the DWAN, Internet usage may include the use of texting capabilities of attached devices, FaceTime, Skype, Apple Messenger, and other default or comparable programs. The CSA has the authority to limit the use of any particular program which he or she finds compromises the security of the wireless network, consumes excessive bandwidth or is otherwise technologically inappropriate in the CSA's opinion. The expansion of permitted program usage on mobile devices attached to the wireless network is simply that - an expansion of programs that may be used. All other Office policies pertaining the appropriateness of use, limitations on privacy interests, email limitations, security, social networking and other matters apply in full force to mobile devices attached to the wireless network.

64

US00004511

7. **The "Cloud":** Many mobile devices use the "cloud" as a means for storing or transferring documents. The cloud is actually space on a server utilized by the program as a repository for documents. The software vendor owns or leases such server space. Because of this, confidentiality concerns arise. Examples of such programs include Dropbox, Evernote, and SkyDrive. Employees should be mindful of their inability to control confidentiality when using the cloud and should consult with the CSA as to technical considerations. Additionally, many mobile devices passively use the cloud to back up the device and its contents. Employees should be aware of this feature in determining what documents and information are stored on a mobile device. Employees wishing to alter their back-up settings should consult with the CSA.

8. **Driving Caution:** Employees are strongly discouraged from reviewing or sending email, texting, browsing or otherwise using mobile devices (except navigation functions) while driving. A number of states have laws which regulate the use of such devices while driving and employees are required to comply with applicable law. For example, North Carolina prohibits texting while driving, and some municipalities prohibit any use of a cell phone (other than hands-free) while driving.

## 5.22   Political Activity

See Canon 7 in Section 1.00, Code of Conduct.

## 5.23   Practice of Law

See Canon 5D in Section 1.00, Code of Conduct.

## 5.24   Harassment

This office does not condone or allow harassment of any kind. Employees who feel that they are being harassed should report it to the Administrative Officer or the Defender.

## 5.25   Consolidated Equal Employment Opportunity & Employment Dispute Resolution Plan (EEO/EDR)

The EEO/EDR for the Fourth Circuit Court of Appeals is applicable to this Office and affords protection for employees against discrimination and harassment based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40)

65

US00004512

and disability. A copy of the EEO/EDR plans is provided to all employees (see Appendix 2) and is also available on the Fourth Circuit Court of Appeals website.

The EEO/EDR Coordinator for this office is the Administrative Officer.

## 6.00 PERSONNEL ACTION PROCEDURES

### 6.01 Policy Statement

The Federal Public Defender's Office, in an effort to realize equality under the law, is committed to enforcing the rights of individuals as guaranteed in the Civil Rights Acts of 1964, the Equal Employment Opportunity Act of 1972, and Executive Order 11246 as amended, and denounces the practice of employment based upon race, color, religion, sex, age, national origin, ancestry, or political affiliation.

It is the policy of this office to:

A. Recruit and employ applicants on the bases of qualification and Office need without regard to race, color, religion, sex, age, national origin, ancestry, or political affiliation;

B. Utilize and develop the skills of present employees by providing training opportunities.

C. Provide counseling to employees for the encouragement of professional growth and development.

### 6.02 Definitions

The following definitions apply to terms used in discussion of these procedures.

<u>Personnel Action</u>: Any action which will result in the employment of new personnel; the termination (voluntary or involuntary) of current employees; promotion of current employees (either a grade or step increase); demotion of current employees (either grade or step decrease); reassignment of current employees without promotion or demotion, change in physical location of work, or change in number or schedule of work hours.

<u>Vacancy</u>: Any position which is unfilled as a result of a vacant position or the creation of a new position, as approved by the Administrative Office of the Courts.

US00004513

<u>Full-Time</u>: Any position which involves work on an established schedule of a five (5) day forty (40) hour week.

<u>Permanent</u>: Any position established for an unlimited period of time.

<u>Temporary</u>: Any position established for a specified limited time period.

<u>Part-Time</u>: Any position which involves work on a prearranged schedule of hours or days of work less than forty (40) hours per week.

<u>Promotion</u>: Appointment of a staff member to a higher graded position.

<u>Demotion</u>: Appointment of a staff member to a lower graded position.

### 6.03    Personnel Selection Plan

When a vacancy occurs in the Office of the Federal Public Defender, the following procedures will be followed:

A.  Notice of the available position will be publically advertised as well as posted on our web page at ncw.fd.org.  The position announcement is also sent, as appropriate and without limitation, to other federal defender offices, the District Court for the Western District of North Carolina, the Fourth Circuit Court of Appeals, and the North Carolina State Public Defender's offices.  In the case of an attorney vacancy, the position announcement may also be sent to specialized bars within the State of North Carolina.

B.  All applicants will be required to submit a comprehensive resume to be considered for a vacant position.

C.  The Defender or a designee will receive and review all resumes, as well as letters and employment records of employee applicants.

D.  Candidates may be invited for one or more interviews.  Interviews may be conducted by the Defender or designee; however, the Defender will participate in one or more interviews before an applicant is hired.

E.  The Defender will make or personally approve any final selection.

67

US00004514

F. At the discretion of the Defender, a list may be retained of position finalists. This list may be used to fill any similar vacancy which occurs within a six (6) month period.

G. The applicant selected for appointment will be notified and a starting date established. A written offer letter will be sent to the selected applicant.

**6.04   Employee Plan**

A. Compensation and Outside Employment: See Section 4.00.

B. Position Reclassification

Reclassification may occur to make an employee's position in the Office conform to a proper classification of the duties being performed. A reclassification of an incumbent's position based on the duties actually being performed changes the employee's official position or job classification within the Office, but does not necessarily result in a change in duties. Whenever permanent substantial change in the nature of an employee's work is deemed by the Defender to exist, the Defender may seek to have the employee's position reclassified to one that more closely describes the duties that are actually performed by the employee. Employees should be aware that authorized positions and salaries associated with those positions are subject to administration by DSO, Defender Services Committee, and others. If the Defender determines that a reclassification should be made, the Defender may be required to obtain approval before instituting the reclassification.

**6.05   Resignations**

Staff members will give sufficient notice if they intend to resign from their position for any reason. Sufficient notice is generally two weeks prior to resigning for support staff and three weeks for attorneys to ensure that they provide enough time to complete any client work or to assign the departing attorney's cases to another attorney. A letter of resignation stating the last day of work must be given to the Defender or Administrative Officer.

Despite the minimum notice period set forth above, employees are encouraged to advise the Defender of a potential or anticipated resignation as soon as possible to enable the Office to properly plan for recruitment and training of a replacement. No employee will ever be penalized for announcing an intention or consideration of an intention to resign.

**6.06   Termination Procedures and Benefits**

An exit interview will be conducted by the Administrative Officer on or before the employee's last working day. At that interview, the Administrative Officer will explain rights with

US00004515

respect to benefits, pay outs and other matters. Employees will be required to turn in any equipment or devices issued to them, as well as all identification cards, parking pucks, card key passes, office keys they have in their possession, and all other government issued or owned items. Each employee will also notify the Administrative Officer of his/her forwarding address (both physical and email). Some of the matters to be discussed during the exit interview are briefly summarized below.

Accrued Leave: No lump sum payment is made for any unused compensatory time or sick leave. If an employee is leaving federal service, he or she may receive payment for any unused annual leave. If an employee has accrued sick leave, remaining leave will remain available for credit in future federal service or, on retirement be creditable service towards a FERS annuity.

Health Insurance: If an employee is enrolled in a health benefits program, the coverage terminates on the last day of the pay period in which separation occurs. However, the employee will continue to have health insurance coverage for an additional 31 days after the last day of the pay period at no cost to the employee. During this 31 day period the employee may convert to a non-group plan offered by the present carrier or may elect to continue coverage for an additional eighteen (18) months under Temporary Continuation of Health Benefits Coverage (TCC), assuming the employee cost, the government cost and 2% administrative fee.

Life Insurance: If an employee is enrolled in the Federal Employees Group Life Insurance (FEGLI), coverage will continue for 31 days after separation at no cost to the employee during which time the employee may convert to an individual life insurance policy.

Transfer to Another Federal Agency: If an employee transfers within federal service, the health benefits coverage and/or life insurance program remains the same, provided that the health plan is available in the geographic area of transfer. Depending upon the timing of a transfer an employee's options with respect to annual leave may be affected.

Retirement Contributions to FERS: If an employee leaves federal service without retiring, an employee may either request a refund of the amount paid into the Federal Employees Retirement System or may wait until retirement age to apply for a monthly retirement benefits (also referred to as a "deferred retirement"). If a transfer is within federal service, the retirement contribution transfers with the employee.

TSP: Departing employees have several options available with respect to their TSP account. Available options will be reviewed with the employee by the Administrative Officer.

US00004516

## 7.00   DISCIPLINARY ACTIONS

Disciplinary actions are directly related to specific deficiencies in work performance and/or other expectations dictated by the rules of common courtesy, conduct, or accepted office practice.  This type of action is to be used when the Defender feels the situation warrants action to correct deficiencies in employee performance and/or conduct.

The following list contains examples of employee conduct, each of which is an example of a valid reason for imposing disciplinary action.  *The list does not exhaust all possible grounds for disciplinary action, nor does it imply that the Defender is obligated to take formal disciplinary action if any employee commits any of these offenses.*  The Defender, however, may reprimand, suspend, demote, or dismiss the employee for such conduct.

The following violations will be just cause for removal, suspension, demotion, or termination:

A.   Inappropriate harassment of co-workers, visitors or clients - including sexual harassment or harassment based race, gender, sexual orientation, religion, disability, marital status, age, nationality or other bases prohibited by law.

B.   Absence from duty without leave:

C.   Abuse of leave privileges, including any failure to follow proper leave procedure and  policy, and/or excessive or patterned absenteeism;

D.   Assault (physical or verbal);

E.   Careless or below standard work performance;

F.   Conflicting outside employment;

G.   Dereliction of duty;

H.   Discourteous treatment of the public, clients, or of other employees;

I.   While working or on any federal property, being intoxicated, under the influence of alcohol or marijuana, or under the influence of any substance whose possession or use by the employee is illegal;

J.   Excessive tardiness;

70

US00004517

K. Fraud or misrepresentation in securing appointment or promotion;

L. Improper political activity or violation of the Hatch Act (18 U.S.C. 594, *et seq.*);

M. Violation of office policy regarding conducting personal business during office hours;

N. Insubordination and/or refusal to perform reasonable work assignments or cooperate with supervisors;

O. Misuse of federal property, funds, or records;

P. Neglect of duty or sleeping on the job;

Q. Violation of established office rules, policies, and procedures;

R. Violation of penal codes (with or without formal conviction);

S. Dishonesty with the Defender or other forms of willful deceit;

T. Failure to comply with the policies, rules, and procedures of the Office;

U. Requiring excessive supervision or instruction in performance of duties after completion of training in position;

V. Disrupting the work of other employees;

W. Failure to cooperate with or using abusive language toward other employees or the public;

X. Other acts which reflect discredit upon the office and its personnel.


**7.01 Fair Employment Practices**

A. **Equal Employment Opportunity:** The Judicial Conference of the United States has directed that each court adopt a plan in conformance with the national policy of providing equal employment opportunity to all persons regardless of their race, sex, color, national origin, religion, age or disability. This Office is subject to the EEO/EDR plan adopted by the Fourth Circuit Court of Appeals. The EEO/EDR plan is provided to each

71

US00004518

employee. It is also available on the Fourth Circuit's website. The EDR Coordinator and an Alternate EDR Coordinator is available at the Fourth Circuit. Employees are advised to review the plan in advance of need as strict time limits and other requirements apply.

**B. Employee Dispute Resolution:** In addition to the EEO/EDR Plan described above, this office has this additional Employee Dispute Resolution for grievances not covered by the Fourth Circuit's EEO/EDR Plan. This grievance procedure is intended to promote the swift determination of employee complaints with regard to matters that arise as a result of any action by a supervisor or co-worker other than the Defender. This grievance procedure will not apply to grievances based on periodic evaluations of employees or any employee dispute covered by consolidated EEO/EDR plan adopted by the Fourth Circuit.

1. Employees must attempt to resolve perceived grievances informally with either the co-worker(s) involved in the dispute, their immediate supervisor, or the Defender. Employees are expected to talk freely with their supervisors on matters that affect their duties and working conditions. Supervisors are expected to make themselves available to employees for these purposes.

2. These procedures will not interfere with the normal operation of this Defender organization, and they must not interfere with the obligation of this office and each employee to competently represent each client.

3. Any employee whose grievance is not resolved informally will file a written grievance in memorandum form with the Defender or his/her designee within five (5) working days following the alleged incident giving rise to the grievance. The memorandum will detail each allegation, including dates and times of occurrence and witnesses, and specify what remedy the grievant desires. The memorandum will also include the employee's request for a hearing.

4. The Defender may, within his discretion, designate someone other than the Defender[2] to either receive or investigate grievances, either for a certain time period or for a certain grievance.

---

[2] The Defender may wish to designate another person under this section for any number of reasons including, but not limited to, unavailability, press of other commitments, or because of personal involvement in the grievance, either as a witness or a party.

72

5. The Defender or his designee, upon receipt of the written statement, will conduct an appropriate investigation of the allegations. Upon completion of the investigation, the Defender or his designee will attempt to resolve the matter within ten (10) days. The Defender's or his designee's decision will be in writing and will be final. Nothing will preclude the Defender or his designee from conferring with others concerning the subject matter of the grievance.

6. The filing of a grievance will not negatively impact the grievant's employee assessment and/or evaluation of work performance. This does not preclude the Defender from determining that this grievance procedure is being abused and taking action, as necessary.

7. All documents, witness statements and other materials gathered or discovered in connection with the investigation of a grievance will remain confidential except to the extent that disclosure is necessary to resolve the grievance.

## 8.00 BENEFITS AND OTHER POLICIES

Employee benefits programs are under the control and administration of the Administrative Office of the U.S. Courts and Office of Personnel Management, and not the Defender. The Defender neither selects the available programs nor guarantees the continued availability of the program during the course of an individual's employment. The benefits discussed below are subject to change without notice. Please see the Administrative Officer for all questions pertaining to benefits.

### 8.01 Health Benefits

The Federal Employee's Health Benefits Program is available on a voluntary basis with costs partly financed by the government. New staff members have sixty (60) days after the effective date of appointment to enroll in a plan. Enrollments, as well as costs, become effective the first day of the first pay period after the one in which your registration form is received in the personnel office in Washington, D.C.

Annually, the federal government holds an open season for health benefits. During open season (which is normally held mid-November through the first week of December), staff members have the opportunity to make changes to their current health insurance plan with an effective date of January.

73

US00004520

Information about the enrollment and changing a type of enrollment can be obtained from the Administrative Officer.

The Administrative Officer can provide plan comparison booklets pertaining to each plan. However, it is the employee's responsibility to seek answers to claim questions and plan coverage questions from his or her plan representative. Each plan package explains these steps in detail, with appropriate phone numbers.

Employees who have a change in "Family Status" or have children who reach critical ages, marry, or lose their status as stepchildren or foster children: or have disabled children of a critical age who marry, recover from their disability, or become able to support themselves generally cannot continue coverage under the employee's enrollment. However, they may continue coverage under Temporary Continuation of Coverage (TCC) plan for up to 36 months. Under the TCC, all costs (the enrollee's share, the amount the government contributes, plus a two percent charge of administrative costs) are the responsibility of the enrollee. **Employees are responsible for notifying the Administrative Officer of the change in family status or in the child's status and the address of the affected individuals within 60 days after the event that caused the loss of coverage. Failure to do this may have an adverse effect on the eligibility of a family member to enroll in the TCC.** As the critical age threshold and other disqualifying events vary across time, please see the Administrative Officer as your children approach adulthood or as other life changing events occur to discuss the possible implications.

### 8.02    Additional Health Benefits

In addition to traditional health insurance, employees are also eligible for specialized health benefits as these become available to judiciary employees. Currently, vision and dental health care plans are available on a voluntary basis. See the Administrative Officer for details.

### 8.03    Life Insurance

All eligible employees are automatically covered for a basic benefit under the Federal Employees Life Insurance Act, unless such coverage is waived or subsequently canceled by filing the required waiver form.

### 8.04    Retirement

There are two retirement systems available to federal government employees. The two systems are the Federal Employees Retirement Systems (FERS) and the Civil Service Retirement System (CSRS). The retirement system for which an employee is eligible depends on when the individual became a federal government employee. Staff members

US00004521

who became federal government employees after December 31, 1983, are automatically covered by FERS. Staff members who became federal government employees before January1, 1984, with some exceptions, are covered by the CSRS.

### 8.05  Thrift Savings Plan

The Thrift Savings Plan (TSP) is a retirement savings and investment plan for federal employees. New employees (hired after July 31, 2010) are automatically enrolled in the program to the extent of an automatic contribution of 3% of basic pay unless the employee makes a prompt election to stop or change contributions. Existing employees may enroll or make changes to or terminate current TSP contributions at any time. Employees should access www.tsp.gov for additional information.

### 8.06  Long Term Care Insurance

Judiciary employees are eligible to participate in a long-term care insurance program. Long-term care is a variety of services for people who need assistance in caring for themselves. It could be assistance in the home with day-to-day activities such as bathing or dressing, or care in a nursing home.

New employees may enroll at any time, but receive abbreviated medical underwriting if the employee enrolls within the first 60 days of employment. Employees who apply for enrollment after 60 days, are subject to a higher standard of medical underwriting. The cost for this program is solely the responsibility of the employee. The Judiciary does not subsidize this program, as it does with the health insurance program. The insurer should mail an information/enrollment packet directly to new employees at their home addresses. The Administrative Officer should be notified if a packet is not received. Information about long-term care insurance may be found at the FLTCP website www.ltcfeds.com.

### 8.07  Flexible Spending Account (FSA)

The FSA is designed to assist employees in defraying the cost of health insurance premiums; out-of-pocket medical and dental expenses for the employee, his or her spouse and dependents; and dependent care expenses. The program consists of three separate parts: Premium Payment Plan (PPP), a Health Care Reimbursement Account (HCRA) and a Dependent Care Reimbursement Account (DCRA). An employee can participate in any or all plans. Additional information can be found in the Benefits section of JENIE.

### 8.08  Employee Assistance Program

The Employee Assistance Program ("EAP") is a free confidential short-term counseling program to assist employees with personal problems. The program offers assessment,

Case 1:20-cv-00066-WGY   Document 245-25   Filed 06/01/23   Page 88 of 98

US00004522

referral, short-term counseling and follow-up for employees confronted with family and marital problems, financial problems, substance abuse, eating disorders, stress, depression and any other emotional challenges. When appropriate, counselors may or can make a referral to an outside organization, facility or program that can further assist the employee in resolving his or her problem.

The EAP is accessible 24 hours a day, seven (7) days a week by calling 1-800-222-0364 or at www.worklife4you.com.

### 8.09   Unemployment Compensation

An employee may, under certain circumstances, be entitled to unemployment compensation if discharged or otherwise separated from employment. The compensation is usually payable by the state in which the employee last worked. However, a claim for benefits may be filed in the local office nearest the employee's residence. If an employee is discharged for misconduct, quits voluntarily without good cause, or refuses a suitable job without good cause, then the employee may be disqualified from receiving benefits. Rules regarding disqualification which vary from state to state. Benefits and the duration of benefits vary from state to state.

### 8.10   Workers' Compensation Program

An employee injured or incurring disease as a result of performance of duty while on government premises or during the employees's tour of duty may be entitled to medical care and monetary benefits under the provisions of the Federal Employees' Compensation Act (5 U.S.C. §8101 *et seq*.). In instances where such injury or disease is fatal, the employee's family may be entitled to monetary benefits.

The Division of Federal Employees' Compensation (DFEC) administers the Compensation Act. Forms for filing notices of injury and claims for compensation are available from the Administrative Officer.

**Notice of Injury:  The Administrative Officer must be informed in writing within forty-eight (48) hours of any on-the-job injuries.  For purposes of this section and for purposes of Title 5 U.S.C. §8119 of the Compensation Act, the Administrative Officer is deemed by the Defender to be the "Supervisor" for all employees.**

Title 5 U.S.C. §8119 of the Compensation Act requires that the employee or a person acting in his or her behalf must give written notice of an injury to his/her immediate supervisor upon sustaining an  injury on the job. Compensation may be denied if the employee fails to report an injury in a timely manner or if the supervisor has no knowledge of the injury. The notice may be delivered personally or by depositing it in the mail, properly stamped and

76

US00004523

addressed. Compensation Form No. CA-1 is available from the Administrative Officer. The policy of the Office is that all such injuries must be reported to the Administrative Officer within 48 hours.

In accordance with Title 5 U.S.C. §8103(a), "The United States shall furnish to an employee who is injured while in the performance of duty, the service, appliances, and supplies prescribed or recommended by a qualified physician, which the Secretary of Labor considers likely to cure, give relief, reduce the degree or the period of disability, or aid in lessening the amount of the monthly compensation."

### 8.11    Employee Education and Development

It is the policy of the Defender to provide for employee professional growth and development through on-the-job training, seminars, conferences, and specialized job training programs. In recognizing the need for continuing education, the office seeks to fulfill the projected needs of the organization, as well as the goals of the individual employee.

## 9.00    SECURITY

Employees should be aware that office security, both physical and personal, is the responsibility of everyone. The following procedures have been established to aid in providing each employee in the Office a more secure work environment:

### 9.01    Office Visitors

Client confidentiality and personal security of our employees is of the utmost importance in this office. All visitors to our office must be announced and monitored at all times beyond the reception area. Authorized visitors, such as clients or service vendors, should be accompanied by an employee at all times while in the office. If an employee sees or encounters an unknown and unaccompanied individual, the employee is encouraged to ask the visitor to identify himself or herself and for the identity of the employee with whom they have business.

Employees may not allow personal visitors into the secured office area without prior authorization from Management. Employees who have authorized personal visitors are responsible for accompanying their visitors at all times.

### 9.02    Dealing with Difficult Persons

Any employee confronted with an angry or hostile person will immediately notify the Administrative Officer, his/her supervisor, or the Defender. If a situation becomes physically threatening, you should call the police "9-911" immediately, if possible. DO NOT RISK HARM

US00004524

TO YOURSELF OR OTHERS BY ATTEMPTING TO PHYSICALLY CONFRONT THE THREATENING PERSON.

Additionally, if a situation becomes physically threatening to any person, the employee involved should attempt to draw attention to the situation by email, paging, excess noise, or any other means available to draw attention to the situation. There are also panic buttons in the small conference rooms in both Asheville and Charlotte. Any employee who becomes aware of a situation through such means should call the police at 9-911. Securing the safety of employees should be the primary concern of all employees and calling the authorities takes precedence over notifying the Defender or Administrative Officer.

### 9.03 Phone Calls

Phone calls that contain a threatening message must be reported immediately to the Defender or Administrative Officer.

### 9.04 Parcels and Packages

If any package or envelope delivered to the Office or received in the mail causes any concern by virtue of its appearance or for any other reason, the employee should immediately notify the Administrative Officer before opening or delivering the package or envelope.

### 9.05 Personal Security Outside Building

Employees should be careful walking to and from their parking lots. Employees should exercise a greater degree of caution after dark and on the weekend. Always go in or out with another person, if possible, and have your car key in hand. Anyone who is uncomfortable going to his/her car and would like an escort should see the security guard at the lobby desk.

### 9.06 Locked Doors and Passcodes

The main entrance will always be locked outside of normal business hours. Each person leaving after normal business hours is responsible for ensuring the door is closed. Each employee has a unique code for the security system. No employee shall disclose their security code to anyone.

### 9.07 Emergency Evacuation of Building

When notification is given to evacuate the Office, everyone is required to leave the building. Egress will be via the emergency exits located at the main reception area and near the server room. Staff members who have visitors during an emergency evacuation of the building are responsible for escorting them out of the office. Upon exiting the building, everyone in the

US00004525

Charlotte office will meet at the park on the corner of Trade and Tryon Streets, and everyone in the Asheville office will meet in front of the Cambria Hotel.

## 10.00  HAZARDOUS WEATHER POLICY

All employees are to presume that the Office will be open each regular workday and should be prepared to cope with difficult driving conditions and minor disruptions of public transportation.  However, emergency situations do arise which may prevent the opening of the Office, prevent employees from getting to work, or create the necessity to dismiss employees early.

### A.  Before the Workday Begins

If hazardous weather conditions develop during non-work hours and a decision not to open the office is made, employees will be notified by the Defender or Administrative Officer via email.  Absent an email or other notification, all employees should proceed with the understanding that the office is open.

### B.  Emergency Situation During Work Hours

When an emergency develops during normal work hours, an early dismissal without loss of pay or charge of leave for employees may be granted by the Defender.  When an employee is absent on previously approved annual leave, sick leave, or leave without pay for the entire workday, the leave will remain unchanged.

### C.  Special Circumstances

The Defender may, at his or her discretion, dismiss an employee before an authorized dismissal time under hazardous weather or emergency situations if the employee can demonstrate the existence of a hardship, e.g., children are released early from school.

## 11.00  TELEWORK AND OUT OF OFFICE WORK

The Defender has examined the costs and benefits to both the Office and the government which may be secured by telework.  The Defender has determined that currently telework is incompatible with effective implementation of the mission of the Office and affords no opportunity in Charlotte or Asheville for cost savings in space or other areas.

Accordingly, the Office's policy with respect to telework is that no employees are eligible at this time for regular and recurring telework.  This telework policy will, however, be reviewed periodically.  If at any time additional or different space or facilities are acquired, the

US00004526

Defender will consider telework as an alternative or complement to such space acquisitions or changes.

Telework otherwise authorized by the Office's COOP policies, effective in the event that disasters or similar events damage or destroy the official workplace or access thereto, are not subject to this prohibition, but will be governed by the terms of the COOP.

Notwithstanding the declination of a regular telework policy, it is recognized that on rare occasions, case needs may justify a request that an employee work at a location outside of the regular locales at which employment duties are typically performed. Any request for such out of office work on a limited, temporary basis shall be made in advance and in writing to the Defender. ***The Defender must approve all such requests before they are undertaken. An out of office request will not be accommodated or approved in order to relieve the employee of the need to utilize annual or sick leave to care for personal matters.***

## 12.00 FIREARMS AND WEAPONS

This office is committed to providing a safe, healthy working environment, and to making adequate provisions for the safety and health of its employees, clients and the public. This office will not knowingly permit unsafe working conditions to exist, nor will it permit employees to act in ways that may endanger themselves or others.

All employees are prohibited from possessing, carrying, trading or showing weapons of any kind, including firearms, fireworks, guns, explosives, bows and arrows, knives, tasers, etc. while on FPD-WDNC premises, while on duty, or while operating FPD-WDNC vehicles or equipment. Employees are prohibited from keeping weapons in their personal vehicles unless such weapons are properly licensed and the employee is not making use of the vehicle while engaged in business for FPD-WDNC. FPD-WDNC premises include any property owned, operated, controlled or managed by this office. Employees are permitted to carry mace, pepper spray and pocket knives that have a blade no longer than four inches as long as stored in the employee's pocket, purse, briefcase or other personal belongings. An employee who violates this policy will be subject to disciplinary action up to and including termination.

## 13.00 WORKPLACE VIOLENCE

This office expects and requires all employees to display common courtesy and respect for others, and to engage in safe and appropriate behavior on the job at all times.

US00004527

Any involvement in incidents of physical violence is considered unacceptable behavior which violates this policy. "Physical violence" means any unwanted or hostile contact such as hitting, fighting, pushing, shoving, slapping or throwing objects.

Racial or ethnic slurs, sexually harassing remarks, threats of violence, and any other provocative comments, language, or actions also violate this policy and will not be tolerated. A "threat of violence" means an expression (verbal or otherwise) of a present or future intention to cause physical harm. Employees who threaten violence or otherwise engage in provocative conduct towards co-workers, clients, vendors or other individuals ordinarily are held at least equally at fault for an ensuing physical altercation, even if they do not strike the first blow or otherwise initiate a physical confrontation.

**Prohibited conduct includes, but is not limited to:**

Striking and/or injuring another person physically;

Engaging in behavior that creates a reasonable fear of injury in another person;

Possession, brandishing, or using a weapon while on FPD-WDNC premises or engaged in FPD-WDNC business;

Intentionally damaging office property, property of employees, clients, visitors or the general public;

Threatening to injure an individual or to damage property;

Verbally threatening behavior, such as direct or veiled threats of violence;

Harassment or sexual harassment that blurs into conduct threatening an employee's safety, including unwanted and offensive physical touching and stalking;

Threats or intimidation that create fear or extreme emotional distress; and

Obscene telephone calls on or off duty where there is a nexus to work or the work environment.

This policy applies to employees while on FPD-WDNC premises, whether they are on or off duty; to employees traveling on office business; to employees on duty but off the premises; and to employees while off duty where the violence, threats of violence or other violations of this policy are directed by an employee toward a fellow employee or client and there is a nexus to work or the work environment.

81

US00004528

This office will promptly investigate any physical or verbal altercation, threats of violence, or other conduct by employees that threaten the health or safety of other employees, clients, or the public or otherwise might involve a violation of this policy. All complaints will be investigated in a timely manner. Information will be released only to those persons directly involved in the investigation and confidentiality will be maintained to the extent practicable. This office will make every effort to guard the reputations of the complainant and the accused.

All employees have a duty to warn the Defender or the Administrative Officer of any workplace activity, situations or incidents that they observe or are aware of involving other employees, clients and visitors and which appear to violate this policy. This includes, for example, threats or acts of violence, aggressive behavior, offensive acts, threatening or offensive comments or remarks, and the like. Employee reports pursuant to this policy will be held in confidence to the maximum extent possible under the circumstances. This office will not condone any form of retaliation against any employee for making a report under this policy.

All employees who commit violent acts or who otherwise violate this policy are subject to disciplinary action, up to and including termination. FPD-WDNC may seek prosecution of those who engage in violence on its premises or against its employees while they are engaged in office business.

## 14.00 SUBSTANCE ABUSE POLICY

This office is committed to a safe working environment, to making adequate provisions for the safety and health of its employees at their place of employment, and to the safety and health of the general public. This office also is dedicated to operating in a responsible and efficient manner for the benefit of its clients. This office is further committed to compliance with all applicable laws. FPD-WDNC recognizes that drug and alcohol abuse presents a major problem throughout society and that the workforce is not immune from this societal problem. The use of illegal drugs and abuse of alcohol by employees not only threatens the health and safety of fellow employees and the public, but also results in increased costs in the form of lost productivity, high absenteeism, tardiness, excessive sick leave, accidents on the job and lower morale of other employees who must do the work of the substance abusers. The goal is to provide the safest and most efficient working environment that can be provided, to make adequate provisions for the safety and health of employees, and to preserve the confidence placed in FPD-WDNC by our employees and the public.

As part of the organization's effort to achieve the foregoing health, safety and efficiency goals, this office has developed the following drug and alcohol abuse policy. This policy will be communicated to each employee on the effective date hereof or as soon thereafter as reasonably practicable.

US00004529

The unlawful manufacture, use, possession, distribution, dispensation, or sale of controlled substances, or abuse of prescription medication, while on FPD-WDNC properties, while on duty for regularly scheduled or emergency work, while operating a personal vehicle on authorized travel, or off the job so as to affect the employee's job performance or integrity on the job as a representative of the FPD-WDNC is strictly prohibited. Violation of this policy will lead to disciplinary action up to and including discharge.

Illegal drugs, for the purpose of this policy, include any substance which under the Federal Controlled Substance Abuse Act or state statute is unlawful to possess. Some examples are marijuana, cocaine, heroin, quaaludes, hallucinogens, and other street drugs. Also included are controlled prescription drugs such as amphetamines and barbiturates that have not been lawfully prescribed for the individual using or possessing them.

Employees who use, possess, or traffic in illegal drugs, whether on or off the job or FPD-WDNC properties, subject themselves to disciplinary action up to and including termination, even for a first offense.

Employees who must use drugs prescribed by a physician which may lead to a violation of this policy or which may affect their ability to perform their assigned duties in a safe and efficient manner must inform their supervisor prior to the start or resumption of work.

The inappropriate and irresponsible use of alcoholic beverages by employees is inconsistent with the FPD-WDNC of operating in a safe and efficient manner. No employee shall report to work under the influence of alcoholic beverages, or use or be under the influence of alcoholic beverages while on FPD-WDNC properties (other than at approved FPD-WDNC social engagements), while on duty for regularly scheduled or emergency work, while operating a personal vehicle, or off the job so as to affect the employee's job performance or integrity on the job as a representative of this office. Violation of this policy will result in disciplinary action up to and including discharge even for a first offense. Any employee who reasonably appears to have consumed drugs and/or alcohol while on duty or to be under the influence of the same while on duty will be subject to drug and alcohol testing.

**Reasonable Suspicion Testing**

Whenever the Defender reasonably suspects that an employee's work performance or on-the-job behavior may have been affected in any way by illegal drugs or alcohol, or that an employee has otherwise violated FPD-WDNC's Substance Abuse Policy, the Defender may require the employee to subject to a breath and/or urine sample for drug and alcohol testing as covered by the North Carolina Substance Examination Regulation Act.

US00004530

"Illegal drugs", for purpose of reasonable suspicion testing, means the same drugs or classes of drugs listed previously.

Reasonable suspicion sufficient to test will be based on a reasonable and clear belief that the employee is using an illegal drug or alcohol, or is otherwise in violation of the FPD-WDNC's Substance Abuse Policy based on specific, current, or continuing physical, behavioral, or performance indicators of probable drug or alcohol use, or information provided by a reliable and credible source. Suspicion sufficient to justify drug testing may be based on, but not limited to, direct observation by a supervisor of symptoms of drug and alcohol use such as slurred speech, unsteady walk, impaired coordination, or displays of violent or argumentative behavior, improperly talkative speech, loud or uncontrolled laughter, information provided by reliable and credible sources, or job performance behaviors over a period of time where continued deterioration of job performance has resulted in a pattern of events identifiable with drug or alcohol abuse.
An employee who is required to submit to drug/alcohol testing for reasonable suspicion and refuses will be terminated.

An employee who tests positive for drugs or alcohol as a result of such a test will be in violation of this policy and will be subject to disciplinary action, up to and including termination. In determining what discipline is appropriate, the Defender will consider the circumstances surrounding the violation and any serious consequences as a result of the violation. In addition, the individual, after testing positive, has the right to re-test a confirmed positive sample at the same or different laboratory.

Nothing in this policy shall be deemed to preclude the Defender from taking immediate steps to terminate any employee found to be in violation of any part of this policy.

## 15.00  CRIMINAL CHARGES AND CONVICTIONS

Any employee who has been charged or convicted of violating any criminal law must report the charge or conviction to the Defender no later than five (5) days after such charge or conviction. This office must notify the Administrative Office of the United States Courts within 10 days of any conviction for a criminal offense; however, employees are also required to report any charges. Failure to report the charge or conviction within the time prescribed will lead to disciplinary action up to and including termination.

Charges or convictions for a criminal offense can result in disciplinary action up to and including termination. In the case of a criminal substance abuse conviction, this office is required either to discipline or require participation in a drug and alcohol treatment program. In determining whether and to what extent an employee will be disciplined or discharged for the charge or conviction of a criminal offense, this office will consider the following primary factors: the degree to which the nature of the charged offense reduces

84

this office's ability to maintain a safe and efficient working environment; the degree to which the nature of the charged criminal offense unreasonably endangers the safety of other employees and/or the public; the degree to which the nature of the charge or conviction undermines the public confidence of this office's operations; the nature of the criminal offense; and the nature of the employee's job, and any mitigating factors.

Case 1:20-cv-00066-WGY   Document 245-25   Filed 06/01/23   Page 98 of 98

US00004532