# Exhibit 25

COUNSELOR'S REPORT

**I.   EMPLOYEE:**

Name: Caryn Devins-Strickland

Job Title: Assistant Federal Public Defender

Place of Employment: North Carolina Western Federal Public Defender Organization

Work Phone: 704-688-6550

Representative: Cooper Strickland (Spouse)

**II.   CHRONOLOGY OF COUNSELING:**

Date of request for counseling: September 10, 2018 (Extended 90 days on September 10, 2018 to December 9, 2018)

Date of Initial Interview: October 5, 2018

Date(s) of alleged violations: May 18, 2018

30th Day after Alleged Violation(s): June 18, 2018

Reason for delayed contact beyond 30 days, if applicable: N/A

Date of Waiver of Confidentiality (if any):

Date of resolution agreement (if any):

Date of notification of employee right to request mediation, if applicable:

Date counseling report completed: November 19, 2018

**III.   CLAIMS MADE:**

Employee alleges sexual harassment based on the following:
- Repeated meetings for lunch on the premise of "mentoring"
- Waiting for her in the lobby after working late into the evening on a case and offering a ride since she was on a bike and it had begun to rain after she had already declined the offer upstairs in the office (See Exhibit 1)
- Attempts to restrict her job responsibilities and speaking to her in an unprofessional manner

1

US00001244

- Quid pro Quo relationship based on email dated May 18, 2018 (**Refer to Exhibit 2**)

## IV.  REMEDY REQUESTED:

The following remedies have been put in place effective August 17, 2018 (agreed to by Tony Martinez (Defender) and Caryn Devins-Strickland (Assistant Federal Public Defender) via email: **Exhibit 3**):

- Caryn's position as a Research & Writing Attorney was reclassified to an Assistant Federal Public Defender. This was based on advice from the AO regarding work measurement and essentially doing away with the practice of hiring Research and Writing attorneys. Caryn's duties remained the same, although with a different title.
  - Caryn reference's an offer letter signed by Ross Richardson that stated she would be transitioned to an Assistant Federal Public Defender sometime soon. There is no mention of a monetary increase with this transition. (**Refer to Exhibit 1**)
- The organizational chart was changed to reflect Caryn reports to Josh Carpenter (Appellate Chief). Caryn cannot work exclusively in appeals as requested, as this will cause an undue hardship on the district with only one position left to support nine trial attorneys. (**Exhibit 4**)
- Full-time telework has been granted on a temporary basis as this investigation is completed.

On July 9, 2018 JP was no longer in a mentorship role to Caryn Devins-Strickland. Caryn requested Kelly Johnson to be her mentor and all agreed to this arrangement.

1) Email dated 09-28-2018 from James Ishida to Caryn Devins-Strickland requesting a list of specific, articulable demands no later than the deadline of December 9, 2018. Caryn has not yet provided these to James Ishida (Circuit Executive)

2) Meeting on November 9, 2018 with Caryn Devins-Strickland and Cooper Strickland (representative / spouse)

  a. Caryn stated the following requests for a resolution:
     i. An environment free from harassment and intimidation
     ii. Advancement based on merit
  b. A follow up email was sent the morning of Monday, November 19 and requested specific resolutions based on the above we could work on.

## V.  SUMMARY OF COUNSELING CONTACTS:

Counselor conducted an initial interview with the employee on October 5, 2018. The employee was informed of her rights under the Federal Public Defender's Employment Dispute Resolution Plan and signed a waiver of her right to confidentiality with respect to interviewing the following individuals for purposes of this investigation: JP Davis and Tony Martinez.

US00001245

**Timeline of Events:**

The employee came to the Western District of North Carolina on August 21, 2017. The employee alleges the "First Assistant has abused his power and offered employment preferences for his unwanted advances."

Employee states soon after her employment with the WDNC the First Assistant "began treating me with favoritism by, for example, requesting to be my mentor and asking me out to lunch with him regularly." As context for this allegation, in an interview with Federal Defender, Tony Martinez on October 18, 2018, Mr. Martinez stated he assigned JP Davis as Caryn's mentor since she was coming to the agency without any trial experience. This was the first mentor / mentee relationship established in the district since Mr. Martinez' arrival in the district. This relationship was established for training purposes with the intention of following through on the offer of employment made where Caryn would transition to an Assistant Federal Public Defender position. At my meeting with JP Davis on October 10, 2018, JP stated his mentor in the past would take him out to lunch about once a month to discuss work related topics and anything else going on to help him in his professional growth. JP Stated this was his intent with the lunch requests to Caryn Devins-Strickland. JP stated these lunches were never made mandatory.

May 17 – JP requests a "check-in lunch" for the next day, Caryn agrees.

On May 18, Caryn and JP went to lunch for a mentoring session. At this lunch, Caryn stated since her marriage she did not want to have a long-distance relationship with her husband (he resides in Tryon, NC) and would be requesting a transfer to the Asheville office at some point or would have to leave the office. JP was discouraging about this request citing space issues in the Asheville office and that other people had been wanting to transfer there. Caryn also brought up the issue of pay and stated she would be asking for a raise at her annual review. She stated her offer letter confirmed she would be transitioned to an AFPD position in a few months and she would want to be on that pay scale. (**See offer letter, Exhibit 1: This letter does not state a specific time frame for her transition to an AFPD position or mention a pay raise with the transition).** Caryn stated if she were to stay a Research and Writing Attorney, she would want to be a Grade 15. Caryn alleges JP stated upon return to the office, "Don't worry we're going to take care of you." An email was then sent by JP to Caryn on the same day stating, "Dude you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan … just remember I deal in pay for stay😊" **(See Exhibit 2: email dated 05-18-2018 3:56 PM** )

Allegations of repeated attempts to meet outside of the office and interference with her participation in a case as second chair:

After Caryn prepared a motion to suppress with JP and argued it in court, she became interested in getting on a child pornography case that carried a possible life sentence as a second chair with a newer attorney who was the first chair. JP stated he had concerns of a possible Ineffective Counsel claim citing having the two newest attorneys in the district on the case

3

would not look good. Caryn was looking to get trial experience. She asked Mr. Martinez if she could second chair this case and Mr. Martinez agreed sometime in mid-May 2018. During my interview with Mr. Martinez he admitted this was a poor decision as he had his two newest attorneys on this case and he had also discovered performance deficiencies regarding the first chair on this case. Caryn also stated Peter Adolf (her direct supervisor) had reservations about her being assigned to the case citing the client was very difficult.

On June 1, 2018 JP offered a "drink and an ear" if Caryn needed one in a response to an email related to case involving child molestation where Caryn stated she was exhausted mentally and physically. (**Exhibit 5: See Email dated June 1 3:48 PM**)

On June 5, 2018 this is where the issue between JP and Caryn started to evolve. Caryn cancelled her attendance with JP for a pre-sentence interview on the same date and time she had scheduled the discovery review for the child porn case she was working on as second chair. JP was upset by this and made her attend the pre-sentence interview as this was a commitment she had made by working on this case and JP wanted to honor her commitments. (**Exhibit 6: See Emails dated June 5 and June 6, 2018**). Caryn said she felt "retaliated against" by this email as JP had copied Peter Adolf (her supervisor) and Tony Martinez. Neither one of them spoke to her about this email after it had been sent to her.

On June 12 Caryn was removed from the child porn case and other attorneys were assigned. The first chair, Jeff King, had been separated from the agency and it was clear there was a lot of work that had not been done on this case by Mr. King.

JP invited Caryn out on June 19 at 5:00 PM for a celebratory drink related to a case they were working on. Caryn declined due to having a "bunch of things going on." **(See Exhibit 7: Email dated June 19, 2018 5:00 PM).**

June 21, 2018: JP and Caryn work late on a case. As Caryn was getting ready to leave the office JP offered her a ride home since she had her bike and it appeared as if it was going to rain. I asked JP if he had ever offered Caryn a ride home in the past and he confirmed he had since they live in the same area. He also stated Caryn had asked him for a ride home on a few occasions in which he did, however she never accepted when he had offered a ride home. On this occasion Caryn declined the ride offer stating she was a "tough girl." When JP left and arrived in the lobby he stated it was storming outside and sent a text to Caryn offering a ride home again and called her a "tough girl." Caryn did not respond to the text, so he waited for her in the lobby until she appeared and offered one more time. Caryn stated JP had cornered her in the lobby and this "creeper her out." In my interview with JP I asked him how far away he was standing and said he was about 100 feet from her. **(See contemporaneous notes by Caryn Devins and text message from JP attached as Exhibit 8)**

On June 26, Caryn emailed Tony Martinez to state she may not be able to handle the new cases assigned to her because of Jeff King being separated from the agency. In my interview with

4

US00001247

Tony, this did cause him to be upset as he felt Caryn was picking and choosing which cases she would work.

JP asked Tony Martinez for permission to meet with Caryn for a one on one
JP invited Caryn out for a mentoring session on June 27, 2018 via email at 11:52 AM. Suggested lunch, leaving early for a celebratory post case drink, or in the office. Stated believed it would be good to have some distance from work, but whatever made her comfortable would be fine with him **(Exhibit 9: Email dated 6/27/2018 at 11:52 AM.)** This was scheduled for July 2, 2018.

On July 2, 2018 Caryn advised Tony Martinez of her intent to have a meeting with JP to set boundaries with him. In my interview with Tony Martinez he did not recall her using this wording. Caryn explained JP had spoken to her inappropriately and berated her and got extremely angry regarding the presentence interview she as directed to attend in stead of the discovery review, which was rescheduled. She stated she felt uncomfortable around JP and was leaving the office by 5:00 PM each evening to avoid being in the office alone with him. Mr. Martinez asked her if this was harassment or sexual harassment. Caryn stated she did not want to use those words yet and she was self-managing the issue for now. IN my interview with Caryn, she stated she used these words based on advice from Nancy Dunn at the Administrative Office. She explained to Tony she did not want him to do anything yet and to keep her confidence. She explained she was trying to do everything by the book and this was the advice she got on how to go about this. (**See Caryn Devins contemporaneous notes – Exhibit 11**)

Caryn and JP met on July 2, 2018. Per my interview with JP, he had planned to meet with Caryn regarding the following:
- Stress / Anxiety Management
- Prioritizing and Managing the workload
- Communication
- Discussion on obstacles and how to help her

**(Exhibit 12)**

Caryn came to the meeting based on my interview with her to set boundaries with JP that she felt had been crossed. Her specific issue was the tone he had used to speak with her on June 5 and 6 regarding the presentence investigation interview she was trying to not attend to attend the discovery review for the child porn case she was a second chair for. When Caryn stated this, JP had said he would try to keep from using a similar tone in the future, but her actions were unacceptable, and he had to respond to them. Caryn was under the impression the shadowing activities were optional and not required as JP had stated this in a past email back in March. JP attempted to explain his point of view was she had already committed to attending the presentence interview and had forgotten when she scheduled the discovery review. JP felt she needed to honor her commitments and be honest with him. JP felt she had been dishonest with him by saying the date of June 7 was the *only* date that worked for the team when that was not the fact.

US00001248

The meeting fell apart and Caryn stated she was going to talk to Tony. JP suggested they go talk to Tony right now and Caryn wanted time to collect her thoughts. Caryn then walked away.

On July 5, 2018, Tony Martinez, JP Davis and Caryn Devins met to discuss the issues Caryn and JP were having. Caryn stated she was uncomfortable speaking in front of JP, so JP was asked to leave. Caryn discussed with Tony her concerns. Tony asked her specific questions as far as had there been any touching or inappropriate behavior and Caryn stated "no" to those questions. They both agreed the mentor / mentee relationship between her and JP needed to end. Tony felt Caryn still needed a mentor and Caryn asked about Kelly Johnson. Caryn report the "pay for stay" email to Tony and the tone JP used in the walk to the jail for the presentence interview. Caryn felt she was not safe in the Charlotte office and the only reason JP had not touched her is because she had not let him. Tony assured Caryn her performance was not an issue and a new mentor would be assigned to her. This was confirmed in an email dated July 9, 2018 **(Exhibit 13).**

Tony advised in his interview with me that throughout the year she had stated an interest in moving to the Asheville office due to her husband having to reside in the Tryon, NC area for his job. Tony has confirmed there is currently no office space to accommodate more staff in the Asheville office.

Only July 17, Rahwa Gebre-Egziabher asked Peter Adolf (Caryn's supervisor) if she could assist with the rescheduled discovery in the child porn case Caryn had been the second chair on. Peter had said no, due to the fact Caryn had expressed concerns related to her work load (June 26 email). This was a fact and not designed to interfere with Caryn's ability to do her job. At this decision Caryn felt she was beginning to be micromanaged. (**Exhibit 14)**

On July 20, 2018 a staff meeting was held to discuss some reorganizing of positions. Tony Martinez assigned Caryn to JP's team without realizing he had agreed to remove Caryn from JP's chain of command based on their meeting earlier in the month. Based on this action by Tony, Caryn called in sick on Monday, July 23 and Tuesday, July 24. Caryn contacted the Administrative Office on Monday; July 23 feeling Tony had not followed through on what they agreed to resolve this situation. Tony Martinez contacted her on Tuesday, July 24 and explained he had made a mistake and was immediately correcting it to have her report to Joshua Carpenter, the Appellate Chief out of Asheville. He said a revised email with a revised organizational chart would be emailed to all staff. Caryn requested to review the email prior to Tony sending this. According to Caryn, Tony had agreed to the request but did not follow through. In my interview with Tony Martinez he stated he did not let Caryn review the email in advance because he did not find it necessary to do so.

On July 25 a vacancy was announced for a Charlotte Appellate AFD position. Caryn stated in my interview she was told not to bother applying for the position. Caryn did in fact apply for the position on August 7, 2018 **(Exhibit 15)** Caryn was not invited to apply, however she was reclassified to an Assistant Federal Public Defender effective August 20, 2018. **(Exhibit 16)**

On August 9, 2018 Tony was contacted by Cait Clark from the AO regarding the situation with Caryn Devins and wanted to discuss how he was handling it. Per my interview with Tony I confirmed since Caryn was converted to an AFD she now has an office that is not shared since her position now warrants a private office space. Research and Writing Specialists have not had

US00001249

office space of their own in the past based on the duties of the position. This was a complaint Caryn had noted as also feeling retaliated against. Tony was advised by the AO on how they would like to see the situation handled and this resulted his accommodations he has made for Caryn since August 17, 2018 which are outlined in the beginning of this report.

## VI.    SUMMARY OF DOCUMENTS RECEIVED

1. Exhibit 1: Offer Letter to Caryn Devins dated March 24, 2017
2. Exhibit 2: May 18, 2018 email from JP Davis "Pay for Stay"
3. Exhibit 3: August 17, 2018, confirmation email on agreement between Tony Martinez and Caryn Devins
4. Exhibit 4: Updated Organizational Chart for the FPDO WDNC
5. Exhibit 5: June 1 email from JP Davis "A drink and an ear"
6. Exhibit 6: June 5 email exchange between Caryn Devins and JP Davis regarding Caryn cancelling the presentence interview for work on another case.
7. Exhibit 7: Email dated June 19 from JP Davis – Invitation for celebratory drink regarding a case
8. Exhibit 8: Contemporaneous Notes by Caryn Devins regarding encounter on evening of June 21 (JP offers ride home to Caryn who has ridden a bike to work) to include text message from JP Davis to Caryn Devins offering a ride again on the same evening
9. Exhibit 9: Email exchange between Tony Martinez and JP Davis – JP Davis asks for permission to meet one on one with Caryn to discuss concerns related to her stress management, etc.
10. Exhibit 10: Email to Caryn Devins from JP Davis to set up July 2 meeting
11. Exhibit 11: Contemporaneous notes by Caryn Devins recapping meeting with Tony Martinez prior to her meeting with JP Davis to set boundaries with him
12. Exhibit 12: Outline of intended discussion JP wanted to have with Caryn Devins on July 2, 2018 and contemporaneous notes by JP Davis recapping that meeting
13. Exhibit 13: Email to Tony Martinez from Caryn Devins clarifying her understanding of the next steps after the July 2, 2018 meeting and her agreement to this plan
14. Exhibit 14: Email; request to have Caryn assist with case she was removed from. Request was denied due to Caryn's self-admitting she had workload concerns.
15. Exhibit 15: Caryn applies for AFD position in the Charlotte office
16. Exhibit 16: Caryn Devins is reclassified to Assistant Federal Public Defender

## VII.    SUMMARY OF INFORMAL RESOLUTION ATTEMPT:

Employee Caryn Devins has been accommodated in each request she has made except for where she will sit for the foreseeable future as she is currently teleworking full-time. The Circuit Executive and the EDR Counselor have both asked her to articulate what it will take for her to feel safe in the working environment. Employee has not been able to name anything specific outside of generalities. The counselor is awaiting her response to this request.

US00001250

Addendum to Counselor's Report Dated November 19, 2018

This addendum is to provide more detail on the allegations brought by Mrs. Caryn Devins-Strickland and to lay out her resolution requests as well as the Counselor's suggestions.

**Allegation of Retaliation by the Federal Defender for the Western District of North Carolina**

Under Chapter X of the Employment Dispute Resolution Plan Caryn has brought forth a complaint of retaliation in light of her sexual harassment claim against the First Assistant Federal Defender for the Western District of North Carolina.

Caryn alleges Mr. Martinez (Federal Defender) has not worked with her in good faith to protect her from further harassment and has denied her advancement in the organization. Mr. Martinez sent an email dated August 17, 2018 summarizing his meeting with Caryn Devins that took place on August 16, 2018. In this email he states, "I will allow you to telework temporarily during the pendency of this investigation. This is not a permanent solution. I am reserving the right to request your return to your duty station in Charlotte subject to and upon completion of this investigation." This is the only mention of Mr. Martinez's desire for Caryn to return to the Charlotte office depending on the outcome of this investigation this counselor is aware of.

She states the reason she was given to not be able to transfer to the Asheville office is due to a shortage of office space. I have confirmed with Joshua Carpenter as well as Mr. Martinez there is not office space available in Asheville to accommodate Caryn working out of that office on a full-time basis. Mr. Carpenter stated there is a visiting managers office in Asheville that is primarily used by the Federal Defender or First Assistant when they travel in from Charlotte. It is also used by IT or other staff when traveling to the Asheville office. There has also been an advertisement for a summer intern in the Asheville office as well as a Charlotte paralegal position that will require occasional travel to Asheville. Mr. Carpenter stated he is not sure where the intern will sit and they may have to set up a temporary cubicle. The paralegal can use the visiting manager's office when they come to the Asheville office. Caryn's rebuttal of the fact there is office space in Asheville is unfounded as a result of my conversations with Mr. Carpenter and Mr. Martinez.

In addition, Mrs. Devins-Strickland alleges she has been denied merit based promotional opportunities as well as her locality pay was taken away. Locality pay is based on the statutory limits placed on the compensation of assistant U.S. Attorneys such that total pay may not exceed $100 less than the statutory maximum of Executive Schedule Level IV. Defenders should always authorize both ECI and locality for all AFD's except as indicated below:

Locality pay may not be denied under any circumstances (This is true regardless of the AFD's performance and regardless of green or red circled rates) unless a reduced amount is given to comply with the statutory limitations placed on assistant U.S. Attorney's mentioned above. [1]

Her locality pay was never removed by the Federal Defender.

_____

[1] Found in the Defender Organization Classification System Manual – Assistant Federal Defender Appointment and Compensation Policies page 4.

US00001251

Caryn has also stated she was promised a promotion to the Assistant Federal Defender position in her offer letter dated March 24, 2017. This letter clearly states it was expected she would *transition* to an Assistant Federal Defender position. This letter did not outline a timeline or place an expected date of when this would occur. The offer letter also did not mention any promise of a promotion. In an earlier email dated March 21, 2017 from Ross Richardson, Ms. Richardson stated, "We would like to offer you the position of Research and Writing Attorney. As we discussed to some extend last Monday, the idea would be for you to be in this role initially in order to get some experience. We would look to move you to an Assistant Federal Defender position pretty soon thereafter."

Caryn received a step increase effective October 30, 2017 which changed her annual earnings from $101,929 to $105,327. On January 8, 2018 she also received the cost of living increase bringing her to a salary of $107,319. This salary puts her in the top of the range for an AFD classified as an AD25 (Exhibit 16). This was confirmed in an email from William Moorman the Administrative Officer for the district. In an email to Caryn from Mr. Martinez dated August 17, 2018, Caryn was advised of her reclassification to the position of Assistant Federal Defender. This reclassification was explained by Mr. Martinez that this was to the office's advantage since the Research and Writing Specialist positions did not affect the case weight measurement. This position change did not result in an increase in pay, although the reclassification from a Research and Writing Specialist to an Assistant Federal Defender has greatly increased her future earnings potential. Caryn also states she was never granted an annual performance review. According to the DOCS manual, there are no formal policies governing performance evaluations of employees in federal defender organizations.

Caryn states there was an advertisement for an Appellate Assistant Federal Defender Position in August of 2018. On August 7, 2018, Caryn applied for this position. She states she was not granted an interview. Mr. Martinez explained to me in my interview with him this is because she was already being reclassified to an Assistant Federal Defender effective August 20, 2018, and it was the same position. She also spoke about this to the Appellate Chief, Joshua Carpenter. He also stated that he believed this is a position she already had (due to the reclassification), and therefore no need to apply but she could do whatever she wanted. Caryn ultimately was not interviewed for this position and another person was hired. I could not find any evidence of the plan for her reclassification being discussed directly with her. This leads me to believe that management did not adequately communicate with Caryn what the plan was for her position.

The report of retaliation also claims she is still being treated as a Research and Writing Specialist based on her current job duties and is no longer invited to participate in moots for the Appellate Chief. In speaking with Joshua Carpenter, he stated Caryn is truly valuable and asked good questions in the moots when she has been physically able to be present. She has participated since her placement on telework via the telephone. The telephone participation has made it more difficult for Caryn to bring value to the moot, however she is still being invited to participate. Caryn had been invited to moots in September, October and December. Caryn did attend the December moot via telephone and was unavailable on the other dates. She is also invited to a moot in January. Mr. Carpenter also stated all the attorneys under him work on a mix of appeals as well as motions. I do not find any merit to Caryn's claim of regression of job duties or her intentionally not being invited to participate in moots. I believe Mr. Carpenter has worked with the limitations Caryn has to the best of his ability. Mr. Carpenter also added Caryn did not provide any feedback or ask any questions during the December moot. He felt disappointed by this as she was an excellent contributor when she participated in the spring of last year.

9

US00001252

Mr. Carpenter also added during this conversation there is a case Caryn had briefed over the summer that is going to go to oral arguments. He received this notice in November and immediately sent Caryn an email asking her if she would like to provide the arguments since she had stated an interest in doing so when she briefed this case over the summer. Caryn has not responded to the invitation and Mr. Carpenter has not followed up for fear of inadvertently making her feel pressured to come to the office based on the fact she is not comfortable coming to the office. Mr. Carpenter will be providing the oral arguments himself. He also went on to explain for the appellate side of the work Caryn does, when a case is assigned to her or another appellate AFD, due to the limited experience both have, they are given the responsibility to take the lead in reviewing the record and drafting briefs. Mr. Carpenter and another supervisory AFD is available to answer any procedural or substantive questions, provide feedback on potential legal issues, edit drafts of the brief, and ultimately sign off before filing. This is done with the goal of helping Caryn and the other newer AFD gain appellate experience while ensuring the end product is where it needs to be for the client.

Caryn had requested to be removed from the chain of command of the First Assistant Federal Defender as a result of her accusations. Mr. Martinez had agreed to this. During a meeting that was held on July 20, a reorganization of the positions took place and Caryn was placed under JP's team once again. Mr. Martinez admitted to me this was a mistake in which he did not realize was made until Tuesday, July 24. Caryn had received an email from JP on Sunday, July 22 as a result of this reorganization in which he was wanting to discuss with her some work-related items the upcoming week. This upset Caryn so much she called in sick on Monday, July 23 and Tuesday, July 24. When Mr. Martinez realized his mistake, he immediately contacted Caryn and explained he had made a mistake and was taking immediate action to fix this by placing her under the direct supervision of Joshua Carpenter and a new organizational chart would be distributed. Caryn had also been given back the sick time she had used.

In addition to the above, Caryn states she has been placed under another attorney for assignment of work. This does not appear to be the case on the organization chart (Exhibit 4) and I also confirmed with Mr. Carpenter he oversees assigning the work to the attorneys.

I spoke with Mr. Carpenter about JP Davis participating in moots for the Appellate Division although Mr. Davis is the Trial Division Chief. Mr. Carpenter stated Mr. Davis is valuable for the moots because he had previously worked as a law clerk for Judge Mullen and asks very good questions that impacts how they prepare when cases are going to trial. Participation on Appellate Moots is something JP Davis has never requested to do and is therefore not an inadvertent ploy to be closer to Caryn. His participation was requested by Mr. Carpenter. Mr. Carpenter also stated there has never been an attorney in the district who has volunteered to participate in a moot – they have always been asked to participate. It is their practice to typically invite a core group of mooters in which Caryn and JP are part of, and in one instance a request for mooters was sent to the entire district due to three moots being held for outside lawyers. It was explained this can be a timely event and most attorneys would rather be working on their own cases instead of someone else's.

I believe the Federal Defender has worked in good faith with Ms. Devins on her request to telework until this complaint has been resolved. Caryn has been placed on full-time telework and has not been pressured to come into the office. It should be noted that Caryn came into the office in October of last year and cleaned out her personal effects while all the staff was at the district retreat in Blowing Rock,

US00001253

NC. During my interview with JP Davis, he stated this action taken by Caryn seemed to be presumptuous on her part as it seemed she did not expect to be returning to the Charlotte office at all.

Based on my interviews with Joshua Carpenter, Anthony Martinez and JP Davis, it seems all three individuals value Caryn's talent in their district and would like for her to remain as an Assistant Federal Defender in this district. I do not see a case for retaliation based on my investigation and the facts presented by both sides.

**Resolution Request 1:**

Promotion to an Assistant Federal Defender position as "promised" in her offer letter.

**Resolution Request 1 Status:** Resolved – Caryn has been reclassified as an Assistant Federal Defender. This reclassification did not come with an increase in salary and was never promised in her offer letter.

<u>I suggest the following based on Caryn's claim of retaliation:</u>

The process in which an Assistant Federal Defender is classified and thereafter promoted must be explained so Caryn clearly understands this process and how it applies to her.

Future changes in Caryn's job duties or job title must be clearly explained in advance of the effective date.

Any sick leave taken due to Caryn not being taken out of JP Davis' chain of command should be returned to her and Administrative Leave granted in it's place. (August 10-17 sick leave requests were returned to her, however there were dates in July she used as well based on Mr. Martinez mistakenly placing her back under the supervision of JP Davis).

How and why individuals are or are not invited to participate in moot courts should also be explained not only to Caryn, but perhaps to the district, so there is a clear understanding of this practice.

Executive Coaching / Training for Mr. Martinez for future employee issues he will be tasked to handle. For example, Caryn states when she initially brought her complaint to Mr. Martinez he compared her relationship with the First Assistant Defender as a marriage and asked her to compromise. He also made comments bade on Caryn's report such as "At least she was not touched" and called her out on contacting the AO to receive guidance on her civil rights as a federal employee. He also stated he was being blamed for something that was not his fault. It is evident this claim was mishandled from the beginning by Mr. Martinez and he would benefit greatly with additional training on workplace conduct as well as basic managerial / leadership skills.

US00001254

**Resolution Request 2 - Separation from the First Assistant's Chain of Command:**

Caryn had request to be transferred to the appellate division and to work on appellate cases only. Mr. Martinez explained in his email to Caryn dated August 17, 2018 he was unable to accommodate this request as it would leave only one Research and Writing Specialist to support nine trial attorneys. Caryn was placed under the direct supervision of Joshua Carpenter, however maintained duties related to trial work. The organizational chart was also changed to reflect these supervisory changes.

I have explained above in the section Resolution Request 1 regarding the First Assistant's participation in the moot court process.

Based on the make up of the Federal Public Defender's office and the various duties Caryn carries, I do not believe it would be possible to eliminate all possibilities of Caryn being in the presence of the First Assistant.

**Resolution Request 3 – Remote Work / Transfer**

Caryn has been teleworking since mid August 2018. This situation has minimized some of her effectiveness as an employee of the Federal Defender's Organization. She did not participate in the district's retreat that was held in October and has participated via telephone for one moot court. It should be noted that during the district retreat in October, Caryn came to the office and removed all her personal effects. The Federal Defender and First Assistant perceived this as a sign Caryn had no intention of returning the office.

In an email dated November 21, 2018, Caryn states "This situation has irreparably damaged my relationships with the Federal Defender and my colleagues, and I believe I am no longer welcome in that environment. At this time, I am hopeful the Fourth Circuit will assist me in transitioning out of Tony's office."

This may be the case for Caryn based on her own perception of how this case has been handled. She believes the details of her case have not been handled in a confidential matter. This investigation has not revealed this perception to be true.

**Allegation of Sexual Harassment against the First Assistant Federal Defender:**

This section of the addendum is to provide additional details on events surrounding this allegation as brought by Mrs. Caryn Devins-Strickland.

When Caryn was appointed as a Research and Writing Specialist, JP Davis was assigned to be her mentor my Mr. Anthony Martinez (Federal Defender). JP Davis did not request to be assigned as Caryn's mentor as Caryn had alleged. I confirmed this fact during my separate interviews with Mr. Martinez and Mr. Davis. This was the first mentorship created in the district as Mr. Martinez felt strongly that new attorneys should be mentored by more tenured staff. Mrs. Devins-Strickland was a hiring anomaly since the district does not typically hire attorneys that do not have trial experience. An exception was made for Caryn since she came with high recommendations and impressive experience as a previous law clerk and fellow with the United States Supreme Court.

12

US00001255

The mentor / mentee relationship seemed to have started out well enough. Mrs. Devins-Strickland and Mr. Davis exchanged many text messages after hours that would show a friendly relationship that did not appear to be inappropriate in nature.

Caryn alleges Mr. Davis repeatedly asked her to meet outside of the office. These invitations were made by Mr. Davis to discuss mentoring topics over lunch. Mr. Davis always paid for these meals. When I asked Mr. Davis why he was inviting Caryn to lunch and then subsequently paying for these lunches, he stated his mentor had done the same thing for him so he was following what he had experienced. Throughout my investigation I could not find a time that Caryn had declined Mr. Davis' invitation to lunch until the end of their mentor / mentee relationship. I also did not find any indication Caryn had ever expressed her uneasiness about these lunch meetings.

JP sent Caryn one questionable email after their mentoring lunch on May 18, 2018 in which Caryn had expressed a desire to transfer to Asheville and also asked for a promotion. The email states, "Dude, you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan … just remember I deal in pay for stay : )" (Exhibit #2). This email can clearly be inferred to be a quid pro quo request. When I interviewed JP Davis he did give me a copy of this email along with other documentation. I asked him about it and he openly admitted this was a stupid email to send. Based on his forthrightness with the email and his reaction when I brought it up, I do not believe there was an intention of sexual harassment when he sent the email. Regardless, this email supports Caryn's claim of sexual harassment.

On the evening of June 21, 2018 Caryn and JP worked late together on a case. Caryn routinely rode her bike to work. JP had offered her a ride home based on the fact there was rain in the forecast. Caryn declined the ride and said she was tough and would ride home. When JP left the office and got off the elevator it was storming outside so he sent a subsequent text message again asking Caryn if she wanted a ride (Exhibit8). Caryn did not respond to the text so JP waited for her in the lobby. He stated to me during his interview that he was standing in a part of the lobby that was in shadow and was considering leaving, but thought he should wait since he had sent her a text offering a ride and did not want Caryn to think he just left after making the second offer. When he was about to leave Caryn came off the elevator and that is when he asked her again. Caryn again declined and left the building to ride home. Caryn stated this had creeped her out and that JP had cornered her in the lobby. I asked JP how far away he was standing when Caryn came off the elevator and he said he was about 100 feet away. I understand there is no way to prove either scenario happened, however I find it important to include this in my summary.

JP and Caryn then had a heated exchange regarding a conflict in schedule with a presentence interview and a review of evidence in a case Caryn had been second chair on. He felt she was not honoring the commitment she made to attend the presentence interview by knowingly scheduling the review of evidence at the same time. This upset JP and there was an email exchange that took place. (Exhibit 6).

Caryn took this exchange to be that JP had berated her. I believe this was overexaggerated. JP had spoken with Mr. Martinez and got his blessing to discuss this conduct with Caryn and how he felt about it. JP had felt Caryn was misrepresenting how these two meetings came into conflict with each other and was upset about what seemed to be dishonesty on Caryn's part. He also felt Caryn had misrepresented the facts when she approached Mr. Martinez about getting on this case as it was representing a client who faced a life sentence on a child pornography charge. The lead attorney on the

US00001256

case was a new attorney and JP felt there could be issues if the two newest attorneys in the district were representing this client. Mr. Martinez showed poor judgement and decision-making when he agreed to let Caryn be the second chair on this case. JP had stated his concerns to Caryn and so had Caryn's direct supervisor Mr. Peter Adolf. Caryn neglected to bring up these concerns when she approached Mr. Martinez at the end of the day. This was the turning point of his relationship with Caryn and it remained contentious going forward from that event.

Mr. Martinez attempted to mediate between Caryn and JP even after Caryn stated she was uncomfortable meeting with JP and wanted to speak with Mr. Martinez separately and in private. Ultimately Caryn was able to speak to Mr. Martinez without JP present, however the initial handling of this incident also elevated the severity of Caryn's feelings about this allegation of sexual harassment and retaliation.

**Suggested Actions to Be Taken:**

JP Davis MUST be counseled and trained on workplace conduct issues and professional communications via email. I have seen copies of other emails where he has used profanity and this is simply unprofessional in a court environment. I must clarify the profanity used was not *at* anyone as it was simply used in a sentence.

Mr. Martinez MUST also be counseled and trained on how to handle workplace conduct complaints. He should also be counseled or training on judgement and decisiveness. From my interview with him and these decisions he made he had commented most of these were made at the end of a day where he attended meetings all day and was tired.

I would not recommend terminating employment for either individual, Mr. Davis or Mr. Martinez. This situation should be documented and discussed.

Mrs. Devins has experienced in her mind sexual harassment although the facts discovered in this case find this claim to be very flimsy. This investigation has also found she has also exploited poor judgement and decision-making skills of upper management to attain her goal of a transfer to Asheville.

US00001257