# Exhibit 29

1        MS. STRICKLAND:  Yeah. There's the Middle
2 District and the Eastern District. Yeah.
3        MR. SMITH:  Okay.
4        MR. STRICKLAND:  Are you bothered by the fact
5 that you have to, you know, meet with Tony? I mean he's
6 an alleged violator.
7        MR. SMITH:  No.
8        MR. STRICKLAND:  But -- but just procedurally.
9        MR. SMITH:  Well --
10       MR. STRICKLAND:  I mean the -- the -- if a
11 settlement agreement's reached, it won't be with Tony
12 personally. It will be with the office. It'll be
13 between Caryn and the office. Is that -- ?
14       MS. STRICKLAND:  Oh, yeah. That was a question
15 that we had.
16       MR. STRICKLAND:  Yeah. It -- [inaudible] talk
17 about conflict. He's an alleged wrongdoer who's going
18 to bond his office to an agreement. I mean, there's a
19 little bit of -- I guess just to get to it more, I
20 mean, Caryn requested that Tony be disqualified from
21 this process and that has never been rolled on. It's
22 just been indicated that --

1         MS. STRICKLAND: [Talking over each other].

2         MR. STRICKLAND: -- yeah. He would not be
3 disqualified.

4         MR. SMITH: Well, I -- and I think the problem
5 is because to work any resolution with you continuing
6 to work in the Western District, he's the head and so
7 he's got to sign off on it, and I do view him a little
8 differently.

9         I -- I mean, JP's the main offender here.
10 Tony, if he did anything wrong, and I'm a mediator in
11 the neutral, and that's why I say things like, yes. I'm
12 not -- it's not for me to decide. It -- it could just
13 be more of, man, I don't want to deal with this. He
14 wanted it to go away, and I think he viewed you as more
15 likely to go away than J- -- JP.

16         You know, if he had tried to do anything with
17 JP, I think there would've been more pushback, and I
18 think that's probably what he was doing. He was hoping
19 he could appease you in some manner and it would just
20 all go away, and it's -- it's not.

21         And so now we have his attention, but I hear
22 your point, and -- and I deal with this all the time. I

1  mean a lot -- with -- with any -- well, when you --
2  generally speaking, when you're dealing with any claim
3  of sexual harassment in the workplace, it's the boss,
4  and I have to deal with the boss, so I, you know, I'm
5  used to it.
6        You know, it's -- it's part of why these
7  things are uneasy because it's very hard to reach
8  settlements where the boss is thinking, well, by
9  settling, I'm admitting I did something there,
10 vehemently protesting that they did.
11       That's why I think the best thing you have
12 going for you here is Tony's more of how he reacted to
13 what was going on. He wasn't the instigator so I think
14 that helps in the situation if you want to get it
15 resolved
16       And I think the best case for you is to get it
17 resolved. You know, otherwise, you get a hearing in
18 front of a judge. If you don't like that resolve, you
19 know, it goes to the council, and my understanding of
20 how that works is it's written up.
21       They each read a copy of it and they say, yay
22 or nay, just -- they poll. And so yo- -- your best

1  say, he asked me to do this?
2          MS. STRICKLAND:  You know, that's interesting.
3  I don't know if she'd tried to lie or I do- --
4  apparently it was common knowledge within the office
5  because I heard about it from someone who said, you
6  know, well, this is really like third hand, you know,
7  so I don't think -- I mean she's very gossipy and so,
8  you know?
9          MR. SMITH:  Well, one thing we do need to do
10 before we break today because I'm sensitive to
11 something you said on the phone the other day about
12 them preparing the defense.
13         MR. STRICKLAND:  That's right.
14         MR. SMITH:  I want it to be clear between us
15 what I can and can't say to Tony. I mean, obviously,
16 you said you'll give me some emails and I'm going to
17 use that, but I don't want to put any of these other
18 things on the table if you don't want me to and because
19 I understand, you know, your position there.
20         And, you know, I don't think you need to lay
21 everything out to begin with anyway. It's going to be a
22 process and -- but just keep that in your head. So at

1  the end of the day, you know, you can say, well, okay,
2  these things we talked about, or you can on -- think
3  about it on the ride home, shoot me an email.
4      MS. STRICKLAND:  Yeah.
5      MR. SMITH:  These bullet points, let's keep
6  between us right now, but anything else you're welcome
7  to use as [inaudible].
8      MS. STRICKLAND:  Right. Right. No. There's
9  that. And I mean, the other thing too is that, you
10 know, I have other, you know, you said I -- I'm aware
11 that I can't ask for compensatory damages, but I'm
12 pretty pissed off that I haven't even been considered
13 for a raise, you know, with this supposed phantom
14 promotion to the -- this AFD title. And that, I mean,
15 ironically, if I had stayed in a research and writing
16 position, I would've at least been entitled to step
17 increases essentially automatically.
18     MR. SMITH:  What step increases have you lost?
19 What -- what's your -- what's your credit right now?
20     MS. STRICKLAND:  So they put me -- and
21 actually think I have it with me. They -- they put me
22 in a different -- so there's two different pay scales.

1   When I was a research and writing, I was on one pay
2   scale and then they put me on the AFD pay scale, but
3   they kept my -- in -- I guess, grade 28, I think. This
4   isn't it, unfortunately. I don't think I have the --
5   this is just the request, but I can send you that too.
6   But --
7           MR. SMITH:  I'm just trying to -- to put a
8   dollar figure on what you say you've lost because
9   again, I'm -- this really isn't a back pay. This
10  wouldn't fall under the -- the statute -- the Back Pay
11  Act.
12          But if -- if those are issues, you know,
13  placement of an employee position previously denied, we
14  might be able to get those steps done. That's an AO
15  issue and I can just tell you from past experience, I
16  have had cases where the -- I'm just going to say the
17  employer or the court unit was on board.
18          The employee was on the board and the AO said
19  you can't do it and we couldn't do it because they were
20  lost when it comes to pay, and the -- the AO. Now,
21  you've been at the AO. You may know that or you've got
22  friends or contacts up there. And so, you know, maybe

1  we could get all that worked out, or if it's just not
2  allowed, you know, you could talk to somebody because
3  it's always hard to explain that.
4      But the last one I actually did, the reason it
5  did not resolve was the AO said, no. We cannot do that.
6  It was not allowed by statute. So I can read this how I
7  want to read it. The general counsel up there may not
8  agree with me.
9      MS. STRICKLAND: Mm-hmm. Well, I mean, I guess
10 just to put it in perspective in that -- that email,
11 what I -- I was still on the research and writing pay
12 scale and what I was asking for was the next grade.
13     That's wha- -- I was at grade 14, and I was
14 telling JP, I said, when I have my annual review, I'm
15 going to ask for, if I can't get the AFD title right
16 away, you know, I've been working my butt off here.
17     I've basically been second chairing all these
18 cases I'm not getting credit for and all, so -- so I
19 want the grade 15 which that is a -- a specific number.
20 I can't -- I don't remember exactly what it is, but,
21 you know, and it really bothers me that I feel like
22 part of the -- the way -- it's almost like it came full

1  circle in that that whole discussion which led to
2  essentially that quid pro quo email, was about me
3  saying, I'm going to ask for a raise.
4       And then what happened when I came around to
5  my year anniversary, I had no performance review. I
6  wasn't even considered for a raise. They changed my job
7  title. And they literally -- they -- what they did was
8  they made my total salary, the so-called base pay and
9  put in my locality of zero which --
10      MR. SMITH: And -- and that was August of `18
11 when you should have had your review.
12      MS. STRICKLAND: Correct.
13      MR. SMITH: You're not in it -- are you in a
14 developmental range?
15      MS. STRICKLAND: I don't know what that means.
16      MR. SMITH: Okay. May not apply to you guys
17 but it applies in my office that generally when we hire
18 somebody into our office, they fall into what's -- it's
19 on the pay charts. It's on a developmental range and it
20 allows you, in addition to your default steps, I think
21 you can go anywhere from two to four discretionary
22 steps.

```
1              MS. STRICKLAND:  Okay.
2              MR. SMITH:  And I'm just curious if you were
3    in that range and you may not have been. I -- I just
4    don't know how the pay works.
5              MS. STRICKLAND:  Well, we're --
6              MR. SMITH:  Do you know if the pay scales that
7    you guys are on are -- are they on the Fourth Circuit
8    website? When you go to -- I don't know if you know
9    where to look for that on the website.
10             MS. STRICKLAND:  I don't think it's on the
11   Fourth Circuit website, but I can send it to you. I
12   didn't bring it today because I didn't know how much in
13   the weeds we were going to get. But there's -- there's
14   basically -- so the -- the research and writing pay
15   scale is exactly the same.
16             It's JSP. It's exactly the same as the law
17   clerk pay scale. And the AD pay scale, which I'm on
18   now, is exactly the same as the U.S. attorney's pay
19   scale, and that you can find just by Google.
20             And we're supposed to have pay parody by
21   statute with the -- the U.S. attorney's office as AFDs.
22   So that's part of -- I'm like, you know, they put me in
```

1  this different pay scale, but then what I'm getting
2  paid is essentially completely arbitrary because they
3  didn't even consider me for --
4          MR. SMITH:  Well, how come you don't get more
5  [talking over each other]? I don't know [talking over
6  each other].
7          MS. STRICKLAND:  Well, yeah. Yeah. Yes.
8          MR. SMITH:  It's not -- it's not a tele
9  commute thing because I'm a tele commuter and I get
10 locality pay so I -- I don't know. And -- and I'm not
11 going to go into any of this with Tony on Monday.
12         MS. STRICKLAND:  Okay.
13         MR. SMITH:  I -- I want to hope to go up there
14 and lay the groundwork for working with the Asheville
15 actual office and get you into appeals, and if I can
16 get in that door, you know, then we'll talk about
17 today.
18         MS. STRICKLAND:  Okay.
19         MR. SMITH:  Yeah. One thing at a time.
20         MS. STRICKLAND:  And he -- and he may try to
21 tell you something to the effect, well, I already did
22 that. I already put her in appeals and that is not the

1  case. I was just on a phone call with him yesterday
2  about a trial matter in Charlotte, so he knows that I'm
3  not --
4           MR. SMITH:  You're still handling drama.
5           MS. STRICKLAND:  Yeah. He -- he knows that.
6  And, you know, so I just -- I don't even want to hear
7  that if he tries to say, well, you know, and they may
8  also try to say, well, our appeals people do trial
9  support now, and it's like, no.
10          There's -- they created a separate class
11 essentially of people who were research and writing
12 attorneys that they just call us appellate AFDs now,
13 but we're doing exactly what we did before. So, you
14 know, I just -- I -- he may try to use -- I don't know
15 where he's at. He may try to use slippery language with
16 you like that, and it's like, you know?
17          MR. SMITH:  I would think -- I mean, I know
18 justice. They operate separately and one reason is they
19 want a separate set of eyes  to reevaluate it and
20 really see, okay. Do we really want to appeal this
21 because sometimes the trial council's a little too
22 close to it?

1  And so I -- I -- it wouldn't seem like if --
2  if I were running the show, I wouldn't want my appeals
3  people working on trial, you know, totally, but we'll
4  see what he says.
5  And -- and just so you know, going forward,
6  I'm going to meet with him Monday and then, you know, I
7  don't know what'll happen next, but if I feel like,
8  hey, we've got something to talk about, you know, then,
9  you know, we get together again and move forward that
10  way, you know?
11  We can do a lot of it by phone if you like.
12  I'm going to leave that up to you, or, you know, we can
13  meet -- meet somewhere closer, halfway point. It's
14  totally up to you, just so you know. But I'm hoping,
15  and I don't know, really know where this went in
16  counseling, but I -- I don't know that counseling ever
17  does a whole lot.
18  MS. STRICKLAND: Really. Okay. Because no- --
19  it basically went nowhere. I don't even know that there
20  was any attempt to try to resolve this at counseling
21  because I had a pending disqualification request that
22  was only -- they only told me after counseling was over