# Exhibit 30

```
 1           IN THE UNITED STATES DISTRICT COURT
 2       FOR THE WESTERN DISTRICT OF NORTH CAROLINA
 3
 4   CARYN DEVINS STRICKLAND,    : CIVIL NO.
 5             Plaintiff           1:20-cv-00066-WGY
 6          vs.                  :
 7   UNITED STATES, et al.,
 8             Defendants        :
 9   _____
10   DEPONENT:  EDWARD G. SMITH, ESQ.
11   DATE:  APRIL 20, 2023
12   TIME:  10:00 a.m.
13   LOCATION:  CLARK BOLEN
14              671 JAMESTOWN DRIVE, SUITE 206D
15              MURRELLS INLET, SC
16   REPORTED BY:  CAROL T. LUCIC, RPR, RMR
17
18
19
20
21
22   CLARK BOLEN COURT REPORTING & VIDEO CONFERENCING
23              CHARLESTON, SC  29405
24                   843-762-6294
25              WWW.CLARK-ASSOCIATES.COM
```

1  lawyer, and I have ways of trying to convince
2  people that, you know, you're better off doing it
3  this way than another way.
4     Q.   Did she explain to you why that offer at
5  this point in the process was surprising?  And by
6  "that offer" I mean the offer to move to Asheville.
7     A.   Yes, I understood.
8          The only thing I can remember possibly
9  with regard to that is that she may have been told
10 there was no room because I said that Tony had
11 agreed he would give her his office when he wasn't
12 in Asheville.  I think he's in Charlotte more than
13 Asheville, and I believe she raised the question of
14 what about when he is in Asheville, and I said
15 again we've got to get in a room together and
16 figure these things out.
17    Q.   Did Caryn tell you that she had been
18 asking for the duty station transfer for over six
19 months?
20         MS. WESTMORELAND:  Objection; counsel
21 testifying.
22    A.   I don't recall that.  I know she had
23 requested -- my memory is she had requested a
24 transfer.
25    Q.   Did Caryn tell you about the effect of

1  Q.  I certainly understand that.  I'm not
2  looking forward to reading my own transcript.
3      Who is the respondent party to an EDR
4  proceeding?  Is it the employing office or the unit
5  executive?
6      MS. WESTMORELAND:  Objection; vague.
7  A.  My understanding is that the claim is
8  against the employing office, who responds through
9  the court unit executive.
10 Q.  And Tony was the court unit executive?
11 A.  Of the Federal Defender's Office, correct.
12 Q.  Did you believe that anyone else could
13 have represented that office during the mediation?
14 A.  No.
15 Q.  You didn't think another employee could
16 have?
17 A.  No.
18 Q.  Why not?
19 A.  Because the only person in that office
20 that had the authority or the power to agree to the
21 things that would have to be agreed to was Tony.
22 Q.  Did you explain that to Caryn?
23 A.  I tried.
24 Q.  Did you think she understood?
25 A.  I don't know.

1  him how we're going to deal with this.  He loses
2  all control.  Right now he has control to negotiate
3  with you and try to get a deal he can live with.  I
4  thought that was motivation enough for him, and I
5  believed back then that I could have worked it out.
6      Q.   I just want to understand what you're
7  saying about going to a hearing with a judge.
8           Did you think that a judge could order
9  Tony to do things in his office with a formal
10 complaint and hearing?
11     A.   I don't know what a judge could order at a
12 formal hearing.  I've never been to a formal
13 hearing.  I'm a mediator.  I know what I'm allowed
14 to do under the mediation rules.
15     Q.   Did you tell Caryn what you thought a
16 judge might do?
17     A.   If we discussed it at all, I'm sure I
18 would have prefaced it with I'm not giving legal
19 advice.  Again, as I told you, she had talked to
20 the AO.  She had talked to apparently Director
21 Duff.  I think she may have talked to Jill Langley.
22 She probably knew more than I did.
23     Q.   Did you tell Caryn that no one could
24 micromanage Tony?
25     A.   I told Caryn that in the course of a

1 mediation one of the reasons why I felt in my
2 opinion and my opinion only that he wouldn't be
3 disqualified is a judge can't micromanage him in
4 mediation. He doesn't know the office. He doesn't
5 know the effect of doing these things for Caryn
6 that Caryn wanted, so it made sense to me. I guess
7 that's why in every mediation I've ever done the
8 unit head has been there, because they have to make
9 those decisions. Nobody knows how my office
10 operates but me.
11     Q.   Did you tell Caryn that no one could
12 micromanage Tony at a formal hearing?
13     A.   I don't recall that, and if I said
14 anything like that, I don't know why I would have
15 said that because at a formal hearing the judge is
16 in control and the judge determines what happens.
17 How far he goes, that's up to him. I don't know.
18 Again, I've never been to a formal hearing.
19     Q.   So as you sit here today is it your
20 position that at a hearing a judge could tell Tony
21 how to run his office?
22     A.   I don't know what a judge would do at a
23 hearing is what I've told you.
24     Q.   Could a judge do that? Not would a judge.
25     A.   I think a judge can do whatever he or she

# WITNESS CORRECTION SHEET

Witness: Edward G. Smith, Esq.

Date of Deposition: 4/20/2023

Case: Caryn Devins Strickland v. United States, et al.
56076

I, the undersigned, _Edward G Smith_ do hereby certify that I have read the foregoing deposition and wish to make the following clarifications and/or corrections, if any.

| Page | Line # | Correction | Reason |
|---|---|---|---|
| 82 | 11 | I feel like it was not my place | |
| 82 | 11-12 | I had no Authority | |
| 91 | 17 | I don't want to do this | |

Signature: _Edward G Smith_    Date: 5/31/2023

**Clark & Associates**
4130 Faber Place Drive Suite 200B
Charleston, SC 29405
production@clark-associates.com