# Exhibit 38



# Transcript of 180905_1042

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

US00007615

```
 1
 2
 3
 4
 5
 6
 7                      CONVERSATION
 8                      "180905_1042"
 9      IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF
10                     AMERICA, ET AL.
11
12
13
14
15
16
17
18
19
20   Job No.: 479402
21   Pages: 1 - 60
22   Transcribed by: Christian Naaden
```

US00007616

```
1                P R O C E E D I N G S
2           [phone ringing]
3           REGGIE:  Circuit executive's office, Reggie
4    speaking.
5           MS. STRICKLAND:  Hi, I would like to talk to
6    James Ishida, please.
7           REGGIE:  May I ask who's calling?
8           MS. STRICKLAND:  Yes, this is Caryn
9    Strickland. He should be expecting to hear from me.
10          REGGIE:  All right. One moment, please.
11          MS. STRICKLAND:  Thank you.
12          REGGIE:  Caryn Strickland wants to speak with
13   you. Caryn Strickland. She says you were expecting her
14   call. Okay, I'll transfer.
15          One moment, Caryn, I'll transfer you.
16          MS. STRICKLAND:  Thank you.
17          REGGIE:  You're welcome.
18          [phone ringing]
19          MR. ISHIDA:  Hi, Caryn?
20          MS. STRICKLAND:  Hi. Yeah, I hope you don't
21   mind, I just decided to call you since your number was
22   in your signature line.
```

1        MR. ISHIDA:  Oh, that's -- not at all. I think

2   this is -- I think it's a perfect time.

3        MS. STRICKLAND:  Well, good. Did you -- I

4   guess you were on annual leave. Did you have a good

5   time off?

6        MR. ISHIDA:  I did. I did. I'm not sure if

7   anybody told you, I was -- I went to a Trappist

8   monastery for a week.

9        MS. STRICKLAND:  Wow.

10       MR. ISHIDA:  Yeah, not your -- not your normal

11  vacation. But I -- I -- I've done this before. I found

12  the break really refreshing and so --

13       MS. STRICKLAND:  Yeah, I'm sure.

14       MR. ISHIDA:  -- yeah, so it was -- it -- so I

15  spent a week, Berryville, Virginia, which is close to

16  the West Virginia border --

17       MS. STRICKLAND:  Mm-hmm.

18       MR. ISHIDA:  -- and it is beautiful country.

19  It's just -- there nothing else out there. So, I spent

20  a week, you know, just -- just walking, thinking,

21  reading, and just really having a chance to recharge,

22  so it was really kind of -- it was really a nice break.

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 5 of 79

US00007618

```
1    So, to come back is -- it's been a nice transition too.
2             MS. STRICKLAND:  Oh, good.
3             MR. ISHIDA:  Yeah --
4             MS. STRICKLAND:  Well --
5             MR. ISHIDA:  -- you know. Any -- but -- yeah,
6    thanks for asking and I -- and I'm sorry I wasn't here
7    when you reached out. So, how -- how can I help you?
8             MS. STRICKLAND:  Sure. Well, you know, so I
9    guess just to get this out of the way, you know, I just
10   want to kind of confirm, you know, I'm speaking to you
11   as the EDR coordinator, so just whatever I'm saying is
12   going to be kept confidential. I would --
13            MR. ISHIDA:  Yes, that's --
14            MS. STRICKLAND:  -- okay, which I -- I assume
15   that but just, you know, to get that out of the way.
16            MR. ISHIDA:  Sure.
17            MS. STRICKLAND:  Now, I don't know, you know,
18   if you remember but we actually met in person at the
19   court house renovation thing. I -- my maiden name is
20   Caryn Devins so I just got married and changed my name.
21   But anyways, I just thought, you know, I was like, oh,
22   you know, it -- it's unfortunate that this all kind of
```

1    came up and I've only had the chance to meet you once

2    but I was the one --

3               MR. ISHIDA:  Uh-huh.

4               MS. STRICKLAND:  -- I was the supreme court

5    fellow at the AO.

6               MR. ISHIDA:  Oh, okay.

7               MS. STRICKLAND:  Yeah. And I -- I actually

8    when I was there I worked -- I worked under Laura

9    Minor, so she's kind of been like a sounding board for

10   me, kind of throughout this process.

11              But she, you know, suggested that I mention to

12   you just that, you know, she's kind of, you know, been

13   in a position to give me some guidance through, you

14   know, just what has been a very, very difficult

15   situation through -- for me that I have just -- I've

16   tried to work through the best that I absolutely could.

17              And, you know, I'm just -- it -- I feel that

18   it's very unfortunate that it's gotten to this point

19   and, you know, to be completely honest with you, I feel

20   a little bit -- not a little bit, I feel a lot, you

21   know, kind of blindsided by events in --

22              MR. ISHIDA:  Uh-huh.

1          MS. STRICKLAND:  -- the last few weeks and

2     just not sure what to make of it and confused, you

3     know.

4          So, I don't know if you have any thoughts

5     about -- about that, but I'm kind of, at this point --

6     you know the main thing I wanted to talk to you about

7     is that I'm -- I'm trying to figure out my options and

8     I've been, you know, working as diligently as I can but

9     I'm really concerned about when I read the EDR plan

10    just how short the time periods are for filing

11    anything. And --

12          MR. ISHIDA:  Mm-hmm.

13          MS. STRICKLAND:  -- you know, so my top

14    priority right now -- well, it's really twofold:  My

15    top priority --

16          MR. ISHIDA:  Mm-hmm.

17          MS. STRICKLAND:  -- is to make sure that I

18    will have the time that I need to, for example, figure

19    out if I even need an attorney. I have a consultation

20    scheduled on Friday but I really, you know, I don't --

21    I -- I just don't know, you know, but, you know, to

22    evaluate my options and kind of figure out where --

US00007621

1  where I'm at and what I should do.

2         And, you know, the other thing is just that I

3  understand that there is a, you know, wrongful conduct

4  investigation, which was not started by me, it was

5  started by Tony. And I have misgivings about that

6  situation and I'm not really sure --

7         MR. ISHIDA:  Mm-hmm.

8         MS. STRICKLAND:  -- how to proceed. So, I was

9  kind of hoping to hear from you what you thought may be

10  my -- my options are. But -- but those are the two

11  things, the -- the time and, you know, just the options

12  on just the -- the current investigation and -- and

13  what's going on with that.

14         MR. ISHIDA:  Mm, okay. Okay. Well, Caryn,

15  let's -- let's -- let's -- let's take your options

16  first. And -- and let's -- let's focus on -- on two

17  things under the Fourth Circuit's EDR plan.

18         So, Tony had called me because he had gotten

19  an email from you, I can't remember the date, but

20  Tony's concern was there was mention of sexual

21  harassment in your email. Now, that -- that triggers

22  Chapter 9 of the EDR plan because it's an allegation of

US00007622

1  wrongful conduct.

2           MS. STRICKLAND:  Mm-hmm.

3           MR. ISHIDA:  And so the -- the plan that --

4  the Circuit's plan, you know, is designed to protect

5  all parties but particularly the person bringing the

6  allegation. So, an allegation is a serious as a -- as

7  an allegation of wrongful conduct, which sexual

8  harassment is, is it has to be handled in a certain way

9  and Chapter 9 sets out the process for doing that.

10           So, you know, under Chapter 9, you know, the -

11  - the unit head and the chief judge have to be notified

12  and an investigation has to be done promptly, which is

13  -- which is what we -- we -- I had appointed somebody

14  neutral and outside your office to begin that process.

15           And -- and that -- and -- and so Heather Beam

16  was the one that I had asked would she be willing to

17  take this on. She was fine. And I think she's in the

18  process of doing that. I don't know where she's at now

19  but I think -- I think she is trying to, you know,

20  check into the allegations, make sure, you know, what's

21  going on and then, you know, that -- that process plays

22  out.

US00007623

1           MS. STRICKLAND:  So is she actually

2    investigating, like already?

3           MR. ISHIDA:  Yes. I -- I -- well, I -- I -- I

4    got that -- I -- I don't know because I think she was -

5    - there was -- she was going to be out of -- out of

6    pocket for a while, she was going to be in D.C. for

7    something. So, she couldn't start right away --

8           MS. STRICKLAND:  Uh-huh.

9           MR. ISHIDA:  -- as far as I know. I haven't

10   talked to her in some time, so I don't know where she's

11   at but I'm -- I'm assuming she's in the process of

12   talking to you, talking to Tony, talking to all of the,

13   you know, the people she deems important to get to the

14   bottom of the al- -- of your allegation.

15          MS. STRICKLAND:  Mm-hmm.

16          MR. ISHIDA:  So -- so that -- that's -- that's

17   the process that's playing out now under Chapter 9, the

18   report of wrongful conduct.

19          Your other option is Chapter 10 of the

20   Circuit's EDR plan. And that -- and that -- and that's

21   the EDR process itself. So, it -- there's -- there's

22   really kind of a -- a -- it's a -- it's really kind of

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 11 of 79

US00007624

1  a three-part process.

2       You can -- you can request, under Chapter 10,

3  you can -- you can make a request for counseling. You

4  can make a request for mediation. You can file a

5  complaint. I mean, it -- it -- it's something that you

6  trigger. So, you might --

7       MS. STRICKLAND:  Mm-hmm.

8       MR. ISHIDA:  -- by you filing a request with

9  me under Chapter 10, that's sets off the EDR process

10 and -- and, you know, there's a -- there's a whole

11 series of things that happen after that. So, you've not

12 request that -- you've not requested that, that's not

13 going on right now, but that is an option that you have

14 --

15      MS. STRICKLAND:  Right.

16      MR. ISHIDA:  -- as well.

17      MS. STRICKLAND:  And that's -- I guess that's

18 what I am the most -- well, I guess let me just ask you

19 another question, which is, what is the scope of the

20 investigation that Heather is conducting?

21      MR. ISHIDA:  Well, under -- under the -- under

22 the -- under the plan, under Chapter 9, the provision

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 12 of 79

US00007625

1   reads that the chief judge and the -- or the unit

2   executive shall ensure that the allegations are

3   appropriately investigated --

4           MS. STRICKLAND:  Mm-hmm.

5           MR. ISHIDA:  -- either by a human resources

6   manager or some other person. So, the allegation of

7   sexual harassment is what's being investigated.

8           MS. STRICKLAND:  Okay. So, I'm just going to

9   tell you, and I know -- this is all like really awkward

10  for me, but --

11          MR. ISHIDA:  Sure.

12          MS. STRICKLAND:  -- that -- that is not

13  actually the scope of my allegations. By the -- the

14  allegations are not just sexual harassment by one

15  person. They actually include acts of retaliation as

16  well and, you know, the reason why I'm -- I'm

17  contemplating filing other -- you know, other filings

18  under Chapter 9 and Chapter 10 and, you know, Tony will

19  be named in those filings --

20          MR. ISHIDA:  [inaudible] --

21          MS. STRICKLAND:  -- if that's the route that I

22  take. And, so, I'm very concerned -- you know, I

US00007626

1  understand, you know, what -- what you have said is

2  that Tony told you that I sent an email. Well the truth

3  is, that I had already been speaking with him about --

4        MR. ISHIDA:  Mm-hmm.

5        MS. STRICKLAND:  -- those allegations and he

6  was aware of them and I was working with him to try to

7  resolve them un- -- informally, and we agree. I think

8  in that email, that he forwarded, I was confirming what

9  we had already spoken about and agreed to. And if he --

10       MR. ISHIDA:  Mm-hmm.

11       MS. STRICKLAND:  -- and so that's why, you

12 know, I was very concerned that it almost seems like,

13 you know, like he never came and talked to me and said,

14 hey, there's an issue with you being in appeals, you

15 know, let's -- let's work that out or something like

16 that.

17       I mean, we -- we agreed to that specifically

18 because, you know, I had spoken with him and said

19 there's an issue with me continuing to do trial work,

20 you know, being under the first assistant supervision

21 and there not being a procedure in effect for him, you

22 know, not to assign me cases. And he agreed that it was

US00007627

1   necessary to assign me to appeals.

2          Now, if there is some logistical problem with

3   that, you know, I was perfectly willing to -- you know,

4   I specifically told him, let me work out the details

5   with the appellate chief. So, that's why, you know, I

6   was really surprised when just -- and -- and I

7   understand -- I'm not trying to say an investigation

8   shouldn't be conducted. I want an investigation.

9          MR. ISHIDA:  Mm-hmm.

10          MS. STRICKLAND:  You know, I -- I told Tony

11   that I had emails and text messages, you know, and he

12   has never asked to see them, you know, just as an

13   example. And so, you know, I'm just really concerned

14   about what role he is going to have in the process

15   because I don't feel that he has been -- I -- I mean,

16   the -- you know, like I said, the simplest way that I

17   can put it is that, you know, if I do file other

18   things, he is going to be named in them.

19          MR. ISHIDA:  Mm-hmm. Mm-hmm.

20          MS. STRICKLAND:  So, I just want you to know

21   that and -- and I don't know -- you know, I don't know

22   what the status is of the investigation because I

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 15 of 79

US00007628

1  haven't spoken to Heather. I told her --

2          MR. ISHIDA:  Mm-hmm.

3          MS. STRICKLAND:  -- that I needed additional

4  time.

5          MR. ISHIDA:  Mm-hmm.

6          MS. STRICKLAND:  You know, and I'm not saying

7  there's anything wrong with that. You know, I don't --

8  I don't know her. I mean, I'm -- I'm not saying there's

9  a prob- -- but -- but the -- the way that the whole

10 thing was conceived and, you know, the scope of the

11 investigation, which appears like it doesn't include

12 any allegations against Tony, which is why I would be

13 including, you know, in another filing.

14          It -- it -- it really concerns me whether, you

15 know, he is going to have any role in that

16 investigation. And kind of what the scope of that

17 investigation will include and what he has already told

18 Heather, you know --

19          MR. ISHIDA:  Mm-hmm.

20          MS. STRICKLAND:  -- before I've had a chance

21 to speak with her. So, you know -- so that's why I'm

22 just -- you know, I have concerns about it and that's

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 16 of 79

US00007629

1   why I feel like I'm in this position where I'm

2   contemplating, you know, my own filings and I'm -- you

3   know, just want to make sure that I have the adequate

4   and necessary time to really be able to consider my

5   options under the plan.

6           Especially because, you know, this situation

7   is so dynamic and ongoing. Like I keep learning --

8           MR. ISHIDA:  Mm-hmm.

9           MS. STRICKLAND:  -- new things that -- like --

10  you know the way I read the plan, there's not just like

11  one -- some one discreet act that, oh, that triggers

12  the -- the 30 days. But I -- I want to make sure that

13  my rights are not prejudiced by me taking the time that

14  I need to assess the situation.

15          Does that make sense?

16          MR. ISHIDA:  It -- it -- it does, Caryn, and -

17  - and that's -- it's understandable. Now, I don't know

18  your office's EDR plan as well. I mean, I just -- I

19  just looked at it and it looks like there are short

20  deadlines in that.

21          Now, the Circuit's EDR plan doesn't have those

22  short deadlines. Like, for instance, on their Chapter

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 17 of 79

US00007630

1    9, report of wrongful conduct, there really is no

2    deadline in that. I mean, the only -- the only kind of

3    assumed deadline is that once the EDR coordinator,

4    which is me, gets a report, I've got to promptly notify

5    Judge Gregory --

6              MS. STRICKLAND:  Mm-hmm.

7              MR. ISHIDA:  -- of that. But -- but -- but

8    aside from that, there's no real deadline in Chapter 9.

9    So, the investigation takes as long as it does and

10   then, you know, if there's disciplinary action that's

11   called for by the investigation, that -- that happens

12   whenever it happens. So, there's no deadline there.

13             Under Chapter 10, the EDR process itself,

14   there really is -- there really is no deadline until

15   you in- -- invoke the process. Now -- [coughing] excuse

16   me -- I don't know -- I don't know frankly if you can

17   wait 10 years and then decide at some point --

18             MS. STRICKLAND:  Mm-hmm.

19             MR. ISHIDA:  -- you know, I think I'll file

20   it. I don't know that. I mean there may be an issue

21   there. But -- but there's no -- there's no deadline

22   for, you know, you have to file a Chapter 10 EDR

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 18 of 79

US00007631

1   request within X days. There is nothing like that in

2   the plan.

3         MS. STRICKLAND: Oh, I guess I misread it

4   because there's something in there about it being like

5   30 days within becoming aware of the violation or

6   something like that.

7         MR. ISHIDA: There is -- there is -- there is

8   that requirement in the FPP's plan, and I think it's

9   shorter than 30 days --

10        MS. STRICKLAND: Can --

11        MR. ISHIDA: -- but --

12        MS. STRICKLAND: -- can I just ask you a

13   clarifying question about that because I don't -- I

14   don't know what the office EDR plan is. And I know that

15   Tony mentioned that in his email but like I don't --

16        MR. ISHISA: Uh-huh.

17        MS. STRICKLAND: -- is that in the employee

18   manual or like -- I don't know what that is.

19        MR. ISHIDA: Yeah, I mean, I -- like I said,

20   Caryn, I don't -- I don't know either. I'm not -- I'm

21   not familiar with it. It looks like something the

22   office has done kind of over and above the Circuit's

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 19 of 79

US00007632

1    EDR plan.

2            MS. STRICKLAND:  So, but --

3            MR. ISHIDA:  I think it was --

4            MS. STRICKLAND:  -- yeah --

5            MR. ISHIDA:  -- I think it was de- -- I think

6    it was designed to present another avenue where

7    employees would pursue claims --

8            MS. STRICKLAND:  Is it like the grievance

9    procedure? I mean --

10           MR. ISHIDA:  I -- it -- that -- that's -- I

11   mean when I read the plan, it's -- they -- they couch

12   it in terms of filing a grievance.

13           MS. STRICKLAND:  Okay. So, it is what's in the

14   employee manual then because I -- I didn't -- it -- it

15   doesn't --

16           MR. ISHIDA:  Yeah, yeah.

17           MS. STRICKLAND:  -- sound -- it's not labeled

18   in EDR plans so I didn't --

19           MR. ISHIDA:  Okay, okay.

20           MS. STRICKLAND:  -- so I didn't understand

21   that. I -- I -- I mean it -- and it's -- it's -- yeah,

22   so that's just a -- I don't know what -- so like did he

US00007633

1  actually send you like a physical copy of it?

2        MR. ISHIDA:  I -- I saw some of that

3  somewhere. Yeah. But I -- yeah, I don't -- I don't

4  know. But --

5        MS. STRICKLAND:  Yeah, anyways I'm not --

6        MR. ISHIDA:  Yeah, you know -- yeah --

7        MS. STRICKLAND:  -- but that --

8        MR. ISHIDA:  -- I'm not sure.

9        MS. STRICKLAND:  -- that's the one where it

10  says it's like within five days or something like that.

11  But I didn't understand that to apply -- I thought that

12  was like for things that weren't EDR plan issues. But -

13  -

14        MR. ISHIDA:  Yeah, like I said, I -- I think

15  from what my reading of it was, was that it was -- you

16  know, I mean it was designed to be over and above the -

17  - the plan. And -- and, Caryn, let me -- let me just --

18  let me just say one thing, I -- as long as I'm on this.

19        I do see that provision about must be made

20  within 30 days of the alleged violation or within 30

21  days of the time the employee becomes aware of alle- --

22  allegation. So, that is part of Section A, the

US00007634

1    counseling part of this --

2             MS. STRICKLAND:  Mm-hmm.

3             MR. ISHIDA:  -- it does look like -- it does

4    look like there's that 30-day requirement here too.

5             MS. STRICKLAND:  Right. And I just -- for me

6    because, you know -- and I've actually asked a few

7    people and it -- it's just -- I don't know -- so if

8    this was like a civil case, say, and it was like a

9    statute of limitations thing, this -- because this

10   situation is ongoing, and kind of new things keep

11   happening, I don't -- the way that I read it's almost

12   like every time something new happens, that starts the

13   clock.

14            But I just don't want, you know, I just want

15   some kind of assurance and -- and I'm happy to file --

16   and, in fact, I think I probably will file a formal

17   motion for extension of time but -- or, you know,

18   whatever, request an extension of time under the plan.

19            But I wanted to just talk to you first about

20   it just to -- you know, so that you would kind of

21   understand like my situation and that, you know, this

22   is all very confusing to me and I'm trying the best

1  that I can -- you know, I'm not sitting on my hands. I

2  just -- I want to make sure that I have the time that I

3  need to figure out what I'm going to do and not have a

4  risk of getting it kicked out on some kind of perceived

5  technicality.

6          Do you see what I'm saying?

7          MR. ISHIDA:  Mm-hmm, mm-hmm. Mm-hmm. No, I do

8  and I think -- I think certainly you -- you -- you want

9  to be in the position where you're preserving all our

10 rights and options.

11         Like I said, Chapter 9, the report of wrongful

12 conduct, you know, doesn't have those hard and fast

13 deadlines and -- and the process is already ongoing.

14 But I think -- I think you're okay there.

15         Chapter 10 does mention that that the 30-day -

16 - there's that 30 day -- the request for counseling has

17 to be made within 30 days of the alleged allegation. I

18 don't -- I mean I -- I don't -- I don't remember off

19 the top of my head when these allegations came up but

20 there is -- I -- I am reading that there. So, you're

21 right, I think -- I think what you read -- I mean,

22 that's the way I'm reading this too.

US00007636

1          MS. STRICKLAND:  Right. I think -- I forget

2    what -- I don't have the plan in front of me right now,

3    but I -- there is a provision in there where it says

4    that any of the deadlines can be extended for good

5    cause.

6          And I'm not even arguing -- or I'm not even

7    saying necessarily that like I legally need an

8    extension because I think the acts are ongoing. It's

9    more of like I -- I just would like -- I would like the

10   assurance that I'll have the time that I need --

11         MR. ISHIDA:  Mm-hmm.

12         MS. STRICKLAND:  -- to -- to be able to make a

13   decision and, you know, I've read the -- the working

14   conduct group report and, you know, I know that they

15   recommended extending the deadline to 180 days. And

16   that hasn't been done yet.

17         But, you know, just as like a sense of like

18   clearly they've -- you know, clearly the deadline

19   probably should be longer and it is going to be longer

20   but, you know, I'm in a situation where like I haven't

21   even had a chance to speak with an attorney yet. And --

22         MR. ISHIDA:  Mm-hmm.

US00007637

```
1          MS. STRICKLAND:  -- you know, there's not that

2    many attorneys that even do this kind of thing. And

3    like I said I haven't even decided if I actually need

4    an attorney for the process but I think I need to at

5    least speak with one and get --

6          MR. ISHIDA:  Mm-hmm.

7          MS. STRICKLAND:  -- you know, an opinion. And,

8    so, you know I don't -- so -- so that's kind of my --

9    my biggest concern is it -- it doesn't sound to me from

10   reading the plan like those are hard and fast deadlines

11   in the sense that I can request an extension. And I'm

12   kind of, you know, hoping to do that, kind of from the

13   get-go --

14         MR. ISHIDA:  Mm-hmm.

15         MS. STRICKLAND:  -- you know, to -- just to --

16   just to kind of head off any type of argument that

17   something isn't timely.

18         MR. ISHIDA:  Mm-hmm.

19         MS. STRICKLAND:  Does that make sense? Because

20   I have been trying very diligently and the best I can

21   to work through all of this.

22         MR. ISHIDA:  No, and -- and, you know, Caryn,
```

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 25 of 79

US00007638

1    I think part of the reason why the -- the AO's working

2    group report recommended that is because I think there

3    is a -- there's a certainly an understanding and a

4    recognition that this is not the easiest of areas to

5    navigate.

6          And, you know, a lot of these short deadlines

7    just really aren't helpful. It's a difficult area,

8    people have a lot of questions and so that's why, um,

9    the working group recommended a number of things to try

10   to address.

11         Some of these structural shortcomings like --

12   like you said. Extending the deadlines to -- from 30

13   days to 180 days to try to make the plans clearer, more

14   intuitive and that kind of thing. So, I -- I think --

15   and I -- and I -- and I just -- that -- that's probably

16   going to happen. Because this is -- this is kind of a -

17   - a byzantine area and, you know, people's rights -- a

18   lot of people's rights are at stake here. So, I think -

19   -

20         MS. STRICKLAND:  Mm-hmm.

21         MR. ISHIDA:  -- they want to make it -- I

22   think they just want to make it fair, reasonable, so

US00007639

1  that ultimately what happens is, you know, we address

2  wrongful conduct and -- and make sure this -- you know,

3  steps are taken that it doesn't happen again and

4  there's -- there's real redress here.

5          MS. STRICKLAND:  Mm-hmm.

6          MR. ISHIDA:  So, yeah, so I get all that.

7  Caryn, can I ask you a question? This is kind of just

8  for my own curiosity.

9          MS. STRICKLAND:  Yeah.

10         MR. ISHIDA:  Have -- have you -- have you

11  thought about what is that you want out of this? What

12  is it that you -- what is it that you're looking for?

13         MS. STRICKLAND:  Well, you know, I -- I think

14  that that -- that is a good question. And, you know,

15  ultimately, when I really look back like big picture at

16  all of this --

17         MR. ISHIDA:  Mm-hmm.

18         MS. STRICKLAND:  -- I think what really

19  frustrates me the most is that I feel like I have been

20  -- I -- I came in with a certain understanding of what

21  I thought my job was supposed to be. I thought that I,

22  you know, I was hired to be an assistant federal

US00007640

1  defender and they started me off as a research and

2  writing attorney basically to give me some training.

3       MR. ISHIDA:  Mm-hmm.

4       MS. STRICKLAND:  But I -- I thought that I was

5  coming in with the opportunity for professional

6  advancement and to be able to choose, you know,

7  ultimately the type of work I wanted to do.

8       And I feel like be -- not be -- and I've --

9  you know, I will also mention, I've worked my butt off

10  for that place and I've had nothing but excellent

11  performance since I've been there. You know, and I feel

12  like I've been taken off that track and deprived of

13  those opportunities, not because of anything to do with

14  my performance or, you know, but because of all of

15  these issues that have come up.

16       And, you know, that's what I mean when I say

17  that I feel that part of my issue is retaliation. And,

18  so, you know and the other thing that I want is -- or

19  that -- I shouldn't say that I want, that I feel is

20  necessary is, I do feel that a full, fair and impartial

21  investigation is necessary of not just the sexual

22  harassment allegations but of everything else that

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 28 of 79

US00007641

1   happened.

2          When I tried to -- you know, because my

3   understanding is that, you know, you should always

4   bring these things to your supervisor and try to get

5   them resolved at the lowest level possible and that's

6   exactly what I tried to do. And I feel as a result of

7   that that, you know, I have just experienced

8   retaliation.

9          And, you know, I mean, if I'm going to go

10  under the EDR plan, you know, I can't get compensatory

11  damages. I can't get the things that I would get

12  through a lawsuit. So, at a bare minimum what I would

13  like is the opportunities that frankly I was denied.

14  And I wo- -- and on the flip side, you know,

15  accountability for people who have acted in a

16  completely unprofessional manner and just done things

17  that they sh- -- that they should not be doing.

18          And, you know, I would not be surprised if --

19  you know, I don't know this, I don't want to, you know,

20  say any- -- I won't, you know, say anything I don't

21  know, but I will just put it this way, I will not be

22  surprised if this wasn't the only incidents of these

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 29 of 79

US00007642

1    types of issues going on.

2            And, so, you know, I mean I do think -- you

3    know and I'll just tell you something too, which I --

4    you may know already, I don't know, but this office has

5    a very, very troubled history. And, you know, the --

6    the types of misbehavior going on really go beyond just

7    my little corner of the universe, you know, or -- of --

8    of what's going on with me.

9            And, so, I'm very concerned about whether I

10   even have a future here, not because -- I mean, I love

11   the work, I consider the work to be a calling. I've

12   wanted to be in a federal defender office since law

13   school. And, so, you know --

14           MR. ISHIDA:  Mm-hmm.

15           MS. STRICKLAND:  -- when I was a supreme court

16   fellow, I made a point of having a -- you know,

17   creating a good professional relationship with Kate

18   Clark and, you know, making friends and def- -- I mean

19   it was like a big deal to me to get this job.

20           And, you know, if -- if there was something

21   else I wanted to do I would have left already, frankly,

22   because I wouldn't have put up with all of this. But

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 30 of 79

US00007643

```
 1   the truth is, I just feel like it's wrong that I'm in
 2   the job that I really want to be doing and that I've
 3   been -- I've faced so many issues, not because of my
 4   performance, you know, not because of anything that I
 5   did, but because there's so many problems in that
 6   office.
 7          And they really, you know, are -- are bigger
 8   than just harassment. I mean I've seen, ethical
 9   problems on multiple occasions that are very troubling
10   to me. And, you know, I mean, it's just those are all
11   like bigger concerns and I've -- you know, kind of
12   struggled with whether I should bring those up
13   separately or how to deal with those.
14          But I think those are probably addressed --
15   those may be better addressed at a different time. I
16   really don't know but, you know, my experience -- I've
17   only been there for a year, but my experience has been
18   really disturbing, especially because the whole reason
19   why that office was converted to a -- a federal
20   defender from a CDO to begin with, was because I think
21   the judges in that district had noticed a lot of the
22   same things that I have noticed.
```

1         And they -- they demanded that that transition

2    occur because they wanted a change in leadership and

3    they wanted a change in how the place was run. And to

4    me, you know, and this -- again, this is just my

5    perspective but my -- you know, I did my due diligence

6    on that place before I went there and I tried to talk

7    to people who had worked there and -- you know,

8    whatever, and since I've started there, I almost feel

9    like the people there have acted like they just a free

10   pass because they made it through the transition to an

11   FDO.

12        I mean they were -- they were under FBI

13   investigation. I guess they made it through that for,

14   you know, all I know. And it's -- it's like, I don't

15   know, I'm not trying to just -- it -- it's -- it's just

16   my perception is there's a lot of just bad things going

17   on that I have never experienced in a professional

18   environment before.

19        And I had, you know, four different jobs since

20   law school in different  -- you know, I clerked for

21   three different judges and then I was at the AO. And I

22   just -- I mean I have just never seen anything like

1    this before.

2            MR. ISHIDA:  Mm-hmm.

3            MS. STRICKLAND:  So, you know, I'm not -- I'm

4    not trying to like bring it -- but it -- I just think

5    the context of it is important and I mean you've had

6    one employee who got fired and three others have put in

7    notice since June --

8            MR. ISHIDA:  Mm-hmm.

9            MS. STRICKLAND:  -- you know, and I'm on

10   temporary telework. And, you know, I think if you asked

11   the employees who put in their notice, why they put in

12   their notice, they would probably tell you that it

13   wasn't completely voluntary, you know, the reasons why

14   they left.

15           So, I mean, all of that doesn't necessarily

16   have to do with me or my -- you know, it's just what

17   I've been going through is almost like just a cherry on

18   top of all this other stuff.

19           MR. ISHIDA:  Mm-hmm.

20           MS. STRICKLAND:  And, so, you know, I guess

21   when you ask me for what I want, I mean, in my ideal

22   world I would love to be able to do what I thought that

1    I was getting when I got into this job, which was to be

2    able to, you know, get trained and up to speed to be an

3    assistant federal defender, to do, you know, the type

4    of work that, you know, interests me to the extent they

5    have the case load for it.

6              You know, and as part of that, I mean, the --

7    the -- there is a whole issue with the trials versus

8    appeals. What I had wanted was to be able to do some of

9    my own trial cases in order to make me a better

10   appellate attorney. But, you know, they've told me I

11   can no longer do those. You know, they've basically

12   just demoted me to a pure research and writing position

13   from what I can figure out.

14             And, so, you know, what I want is to be able

15   to do the job that I was hired for and to be able to do

16   it without feeling ethically compromised and without

17   feeling just like my job is being interfered with. My

18   job duties are being interfered with for reasons that

19   are completely inappropriate and unprofessional.

20             So, that's it in a nutshell.

21             MR. ISHIDA:  Mm. We- -- we- -- well -- well,

22   Caryn, what -- well -- well said and -- and

US00007647

1    passionately said I may add. And that's certainly

2    understandable.

3           You know, let -- let me address the history

4    part of this. I'm in a little bit of a disadvantage

5    because all of this, of course, happened before I came

6    on board. But -- but I did hear about some of the back

7    story that you alluded to and, you know, I -- Tony and

8    I came in roughly at the same time, that's why, you

9    know, I don't -- I -- I wasn't part of his hiring, I

10   wasn't part of the conversions.

11          But -- but I -- but from the stories I heard,

12   it -- it -- I -- I agree, it sounded like it was a

13   really kind of a troubled office before. The judges

14   have expressed a lot of concern. There was a -- there

15   was a lot of serious issues for -- that were going on

16   in the office.

17          And, so, you know, it was felt that, you know,

18   we need a -- we need a new structure, we needed form,

19   we needed the leadership and I do know from the stories

20   I've heard that they were -- the judges were very

21   mindful of, okay, we need -- we need change and we need

22   good change and we need to change the culture, first

US00007648

1    and foremost.

2            And when they -- when they were looking at

3    candidates, they were -- they were genuinely impressed

4    with Tony because of what he had done, his experience,

5    and -- and -- and just his general track record and

6    reputation that he got as first assistant in -- you

7    know, [inaudible] C and -- and that's why Tony was

8    brought on to -- to kind of really help that office

9    [inaudible].

10           Yeah, I mean, your concerns I think are well

11   founded and --

12           MS. STRICKLAND:  Right. And, you know, I'll

13   tell you another just -- like I -- you know, it's funny

14   because I was hearing a lot of the same things and --

15   and I -- you know, really, really believed in Tony and

16   I -- you know, I didn't come in being like, oh, what's

17   Tony going to do or what -- I mean I have really done

18   nothing but give him the benefit of the doubt until I

19   reached --

20           MR. ISHIDA:  Mm-hmm.

21           MS. STRICKLAND:  -- completely the end of the

22   road and felt like it was no longer warranted.

1    And, you know, to be honest with you I think I
2  really put myself at a disadvantage because other
3  people around me were saying, he's not changing
4  anything, he's promoted all of the worst people in the
5  office and -- and I just said, you know, I kept telling
6  other people, give him a chance, give him a chance.
7  And, you know, it --
8          MR. ISHIDA:  Mm-hmm.
9          MS. STRICKLAND:  -- really wasn't until kind
10 of this latest stuff happened with, you know, the first
11 assistant and everything and I -- I -- you know, was in
12 ongoing conversations with Tony about it and -- and I
13 feel like he really betrayed my trust in how he --
14         MR. ISHIDA:  Mm-hmm.
15         MS. STRICKLAND:  -- he -- he didn't -- he
16 didn't protect me. And, sorry, I'm just -- he didn't
17 protect me and --
18         MR. ISHIDA:  Mm-hmm.
19         MS. STRICKLAND:  -- it's very emotional for me
20 because I -- it's just -- you know, at a certain point
21 I just have to think about, you know, myself and even
22 just basic things like, you know, my -- my safety. And

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 37 of 79

US00007650

1    I was trying to -- I was genuinely trying to pro- --

2    protect myself the best that I could and I -- you know,

3    wanted him to help me and --

4         MR. ISHIDA:  Mm-hmm.

5         MS. STRICKLAND:  -- I thought that we had --

6    you know, it was crazy to me because he basically

7    agreed to everything that I had said I thought was

8    necessary except for transferring out of that office,

9    which was just hard for me to believe because I was

10   like, you know, you're -- you're acknowledging that

11   these things happened, you're acknowledging that

12   they're a problem, you're agreeing to changes but

13   you're going to make me work in the physical proximity

14   of the person who has been harassing me.

15         You know, and that was kind of where we left

16   it is that, you know, I had thought if anything, he

17   would agree to the transfer or remote work, whatever,

18   you know, just get her out of there and then we'll

19   figure out everything else.

20         And, so, it's just -- it's hard for me -- with

21   circumstances like that, it's hard for me to give him

22   the benefit of the doubt or, you know, I'm -- I'm not

US00007651

1  sure that he really understands just like, you know,

2  I've told him eve-  -- you know I've told him I would

3  never have brought any of this stuff up if I didn't

4  think it was necessary.

5         Like I am not somebody who's just like

6  hypersensitive or a me too-er or anything like that.

7  Like I -- you know, genuinely felt threatened by this

8  person. And, you know, and I just feel like he -- he --

9  he didn't protect me, he did the opposite. He escalated

10  the situation and made it harder for me.

11         And, so, that's why I feel like I've just been

12  put in a really difficult spot where, you know, I'm --

13  I'm -- I don't understand -- you know, I understand him

14  following his obligations under Chapter 9 or whatever

15  it is, like I'm -- I'm not begrudging him of that but I

16  feel like, you know, for him to do that, you know, and

17  limit the scope to, you know, just -- I'm -- I'm -- I'm

18  concerned about, you know, fairness in the process --

19         MR. ISHIDA:  Mm-hmm, mm-hmm.

20         MS. STRICKLAND:  -- when, you know, he has

21  been intimately involved and, you know, he basically

22  took the first assistant side from the very beginning -

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 39 of 79

US00007652

```
1   --
2            MR. ISHIDA:  Mm-hmm.
3            MS. STRICKLAND:  -- so, I'm really concerned
4   about him having a role in the wrongful -- or -- or I'm
5   just -- I'm concerned about how the whole thing has,
6   you know, unfolded so far. And, then I'm not sure that
7   he -- you know, I'm just -- yeah, maybe I should just
8   stop there. But it -- it's just -- it's hard for me to
9   understand like -- and why, you know, I'm most
10  concerned about getting the time that I need because I
11  may file my own, you know, Chapter 9 thing -- wrongful
12  conduct thing --
13           MR. ISHIDA:  Mm-hmm.
14           MS. STRICKLAND:  -- and I understand that may
15  not have a deadline but the request for counseling does
16  and I'm still just trying to figure out how that whole
17  process even works --
18           MR. ISHIDA:  Mm-hmm, mm-hmm.
19           MS. STRICKLAND:  -- and so, you know, I'm just
20  -- I'm trying to protect myself the best that I can and
21  to ensure that whatever happens is completely fair and
22  -- to me, you know, and just an impartial -- and I just
```

US00007653

1    don't see how Tony can be involved in any way in the

2    process and have it be fair, given my experience, you

3    know.

4            MR. ISHIDA:  Mm-hmm. Well, Caryn, you know,

5    you've -- you've -- you've painted a challenging

6    picture about trust. I mean, you know, once -- once

7    trust has been broken, it's -- it's really hard to

8    piece it back together again. And -- and, you know, I

9    had -- I don't know if you know this but I had a

10   conversation with Sheryl Walter, the general counsel at

11   the AO and --

12           MS. STRICKLAND:  Okay.

13           MR. ISHIDA:  -- other -- other -- other people

14   from the AO and we -- we -- we had a conversation about

15   -- about alleviating some of your concerns.

16           And one of the things that Sheryl really

17   wanted me to do, given -- given the concerns that

18   you've raised with them was, that after the

19   investigation is finished, the report has been

20   compiled, Sheryl wanted me to receive the report and

21   not Tony Martinez. And -- and, you know, I -- I kind of

22   thought, well, you know, that's -- that's not really in

1    the process or plan.

2            But I approached Tony about it and kind of

3    said, this is the concern, would you be willing to let

4    me receive the report first. And -- and he was fine

5    with that. Just -- just -- just so you know. And -- and

6    he thought it would be helpful, yeah, you know, you --

7    why don't you accept the report and we'll go from

8    there.

9            I -- you know, so I told Sheryl, sure, I'm

10   willing to -- I'm willing to accept the report and

11   depending on what it says, we'll -- we'll just go from

12   there. But what I did tell Sheryl too, was just my

13   sense that, I -- I understand why, you know -- do you

14   feel -- I mean, having been a supreme court fellow, you

15   know, you've made contacts and connections and

16   relations with some people at that AO, so you feel more

17   comfortable going to them. I said I get all that and

18   that I probably would do the same thing.

19           I just told Sheryl that, in this case, it may

20   not be entirely helpful because we're now giving it

21   arms' length instead of trying to communicate issues

22   and concerns directly and I -- one of the things I

US00007655

1  mentioned to Sheryl was things can get -- when that

2  happens, you know, the -- the barriers go up, the walls

3  go up, the people are on guard and I -- and I'm -- I'm

4  concerned that there isn't real dialogue between the

5  parties. And -- and trust can break down and all sorts

6  of things.

7        So, I said, I'm happy to accept the report but

8  -- but this is my concern that we -- we may hinder a

9  dialogue between you and Tony in really kind of trying

10 to resolve this.

11        So, that's -- that's -- that's kind of -- that

12 -- now I -- I did want to -- I did want to mention that

13 to you, Caryn, but I also -- I also want to -- I also

14 want to tell you too that, you know, my -- my -- my

15 heart goes out to you. I -- I hear what you're saying.

16 You know, in another life I was an assistant public

17 defender --

18        MS. STRICKLAND:  Oh.

19        MR. ISHIDA:  -- and so when you -- when you

20 talk about, you know, your passion for the job and --

21 and just wanting to, you know, really do what you love,

22 I mean, I -- I -- I get that because I was -- I was

US00007656

1  where you're at now.

2          And yet, you know, I've also worked at some

3  really horrific, dysfunctional offices that, you know,

4  made me frustrated as well because I felt like, you

5  know, I just want to do my job, I just want to do what

6  I love. And all of -- I -- I've got to deal with all of

7  these things. And there's a sense of frustration,

8  there's a sense of unfairness, there's a -- there's all

9  these things.

10          And, so, as you were describing your

11  situation, I -- I -- I can't -- I couldn't help but

12  flashback to, you know, my experience and -- and I -- I

13  think I understand a little bit about the things that

14  you're going through. And so -- so that's why when I

15  say my heart goes out to you, I really do -- I really

16  do feel what you're -- you're trying to tell me.

17          MS. STRICKLAND:  Mm-hmm. No. And I -- I

18  appreciate that and, you know, I'm not sure what -- you

19  know, when you talk about like the contacts made at the

20  -- the AO and, you know, whether they're helpful or

21  not, I mean, the reason why I went to the AO because I

22  went to Tony directly and he -- and I told him about

US00007657

```
1    these issues and he did not resolve my concerns.
2            He actually put me --
3            MR. ISHIDA:  Mm-hmm.
4            MS. STRICKLAND:  -- in a far worse position.
5    And, so, I felt -- and I was -- and, you know, Laura
6    was actually the one who gave me Nancy's name. And --
7            MR. ISHIDA:  Mm-hmm.
8            MS. STRICKLAND:  -- you know, I initially was
9    getting advice just from Laura just because, you know,
10   she's retired and she's a mentor of mine or whatever,
11   and, you know, I think there's some kind of perception
12   that I was like trying to go outside of the chain of
13   command and that -- that is just not the case. That's
14   just not what happened at all.
15           I -- I contacted Nancy because I was at a
16   place of complete desperation --
17           MR. ISHIDA:  Mm-hmm.
18           MS. STRICKLAND:  -- you know, where -- hi --
19   where, you know, nothing -- nothing that I -- I had
20   communicated, I had started a dialogue and, you know,
21   it went in like completely the opposite direction.
22           So, I just want to make that clear that I
```

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 45 of 79

US00007658

1    didn't try to like go outside or do any -- I -- I

2    started with Tony. He's the person that I --

3              MR. ISHIDA:  Mm-hmm, mm-hmm.

4              MS. STRICKLAND:  -- started with. I actually

5    started -- to be fair, I actually started with JP.

6              MR. ISHIDA:  Mm.

7              MS. STRICKLAND:  I started with him directly.

8    I spoke to him directly. And, you know, I told him, you

9    know, that, you know, I made very clear to him that I

10   was not comfortable with certain things that he did.

11             And, you know, I mean I won't go into all of

12   the details of it now, but suffice it to say that I did

13   that and it set off a chain of events where I spoke to

14   Tony numerous times about the situation. So, that's why

15   I'm surprised when he said that I sent an email and

16   that was, you know, what triggered it because he -- he

17   knew already.

18             But that's also what I mean with the -- you

19   know, that this is all very ongoing and there's -

20             MR. ISHIDA:  Mm-hmm.

21             MS. STRICKLAND:  -- there's not like -- that's

22   my discomfort with this is that I don't want to be, you

US00007659

1  know, penalized for the fact that this is ongoing and

2  that ever- -- basically, everything that I've tried

3  hasn't worked and has basically --

4          MR. ISHIDA:  Mm-hmm.

5          MS. STRICKLAND:  -- backfired. But I took

6  every step that I possibly could to try to resolve it,

7  informally and at the lowest level possible and --

8          MR. ISHIDA:  Mm-hmm.

9          MS. STRICKLAND:  -- you know, I went to Nancy

10 because I was in a completely desperate situation of

11 last resort where I was not --

12         MR. ISHIDA:  Mm-hmm.

13         MS. STRICKLAND:  -- being protected and I was

14 not being listened to. And, so, you know, and I -- I

15 think that what they were trying to do -- you know, I

16 think she was trying to give me guidance and I think

17 she was trying to do the same thing, resolve it at, you

18 know, the lowest level possible.

19         So, this -- you know, and I'm not saying --

20 you know, I completely understand your concern and I

21 completely understand why you would think about -- why

22 you would think that and why it would come off that

US00007660

1    way, but the reason why the AO got involved is because

2    I was trying to have a dialogue with him and he would

3    not have a dialogue with me.

4            MR. ISHIDA:  Mm. Mm-hmm.

5            MS. STRICKLAND:  And, you know, there's a lot

6    more details that I could go into about that but I

7    don't think now is the time, so.

8            MR. ISHIDA:  Yeah. You know, I think -- you

9    know, Caryn, this -- this is the nail for them. And you

10   know this was -- this was part of -- and -- and -- and

11   I -- I understand completely, I get it. I -- you know,

12   going to Laurel made sense.

13           I -- I -- I had never heard that before, and

14   I'm not quite sure why I would have but, you know, I

15   used to work for Laura for a couple years as -- at the

16   tail end of my -- my tenure at the AO and I know she's

17   the -- she was the EEO officer as well --

18           MS. STRICKLAND:  Mm-hmm.

19           MR. ISHIDA:  -- but, you know, aside from

20   that, I mean she's just a really smart lady who had

21   really good advice. So, I get why you'd go and talk to

22   Laura. I -- I guess -- I guess it was -- one of the

US00007661

1   things I -- I mentioned to Sheryl was, you know, I -- I

2   -- I think I understand why all of these things are

3   going on.

4           The challenge I think that we all face in this

5   environment is we don't all seem to be on the same page

6   and we -- we -- I -- I -- I just told Sheryl my -- my

7   gut tells me that I think we're -- we -- we all want

8   the same thing, and I think we all want to get this

9   resolved, but I -- but I almost feel like there --

10  there are -- there are things that are blocking us from

11  fully understanding and fully kind of, you know,

12  working together to get this resolved.

13          MS. STRICKLAND:  Mm-hmm.

14          MR. ISHIDA:  So, you know, and -- and -- and

15  again, I -- you know, that is not -- that is not

16  blaming anybody, that is not, you know -- I -- I just -

17  - I just said that when there's -- when there's a lot

18  of people involved, that's -- that's how, you know --

19  you know, things can kind of take a life. They can take

20  on a life of its own after a while.

21          Now, I can say that -- well, I can -- I can

22  tell you this in general terms. I was involved in

US00007662

```
1    another matter involving Tony's office --
2            MS. STRICKLAND:  Mm-hmm.
3            MR. ISHIDA:  -- and -- and then -- and that's
4    -- that's about as much as I can tell you. But we were
5    able to work that out successfully and we did get
6    resolution and -- and that -- that was actually my
7    first EDR matter that -- that really had a good ending.
8    And that told me a lot about Tony and how he was
9    earnest and willing and -- and wanted -- wanted the
10   best for his staff and -- and his employees. So --
11           MS. STRICKLAND:  Mm-hmm.
12           MR. ISHIDA:  -- yeah, I -- you know, that's
13   why, Caryn, when I asked you, you know, to -- to
14   describe what is it -- what is it that you want. What
15   is -- what is your end goal. My -- my guess -- my --
16   just my hunch is I'm not sure you and Tony are going to
17   be far off from what you want.
18           So, in the back of my mind, I'm trying to
19   think, okay, how can we resolve it to everybody's
20   satisfaction. How can we -- how can we address your
21   concerns, you know, and -- and how can we get everybody
22   to work together on this. So, as you're talking about
```

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 50 of 79

US00007663

1    options, I'm thinking about that as well.

2          Like, we want to make sure -- certainly we

3    want to make sure you're protected, certainly we want

4    to make sure that yo- -- we preserve all your available

5    options. But I'm also trying to think about ways, well

6    what can we do to help you try to get what -- what, you

7    know -- what -- what you're -- what -- what you want

8    out of this. What is it that you want.

9          MS. STRICKLAND:  Mm-hmm.

10          MR. ISHIDA:  And, so, I do appreciate that.

11    Now, what I did in that other case was we settled it at

12    the counseling stage so, we were able to -- I -- I

13    posed the same question to both sides, what is it that

14    you want out of this. And once -- once everyone's kind

15    of -- once -- once their wish lists -- once both sides

16    wish lists were put together, it -- it was easy for me

17    to see, you know, I think we can work this out. And --

18    and that's in fact what did happen.

19          So, Caryn, I'm just, you know, in the back of

20    my mind wondering, while -- while preserving all of

21    your rights, I'm wondering if there's a way where we

22    can -- we can start that process, where we can work on

US00007664

1   what is it that you want out of this.

2           MS. STRICKLAND:  Mm-hmm.

3           MR. ISHIDA:  What -- what is -- what's --

4   what's possible. What can we do to -- to resolve this?

5           MS. STRICKLAND:  Yeah, I mean, I -- I think

6   that's a very good question and, you know, I -- I think

7   that that -- that's very fair and, you know, I think

8   it's really -- and I can -- I think I'd have to really

9   think more about -- well, let me ju- -- I guess it's

10  two things:  You know, on the one side just a full and

11  fair and impartial investigation that includes the full

12  scope --

13          MR. ISHIDA:  Mm-hmm.

14          MS. STRICKLAND:  -- of the allegations. And on

15  the other side, you know, basically, the opportunities

16  for professional advancement and attainment that I

17  believed that I was promised when I started the job --

18          MR. ISHIDA:  Mm-hmm.

19          MS. STRICKLAND:  -- you know --

20          MR. ISHIDA:  Mm-hmm.

21          MS. STRICKLAND:  -- and still are looking for

22  and I can -- you know, I haven't distilled those down

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 52 of 79

US00007665

1  to, you know, a precise list, but I don't think I'm far

2  off from being able to do that.

3          MR. ISHIDA:  Okay.

4          MS. STRICKLAND:  So, I mean I think those are

5  the two things that are the most important to me.

6          MR. ISHIDA:  Okay. Well, like I said, that was

7  -- that was one of the reasons why Heather Beam was --

8  was so attractive to me was, she was somebody outside

9  the office, somebody who is in HR, somebody who enjoys

10  a pretty good reputation in your district.

11         So, the appointment of, you know, my asking

12  Heather that Heather be appointed was kind of an easy

13  choice and so I trust that, you know, she'll conduct a

14  full, fair, transparent investigation that I will get

15  at -- you know, whenever she's finished.

16         And, so, I -- you know, I look forward to that

17  process playing out and I think it'll play out well --

18          MS. STRICKLAND:  Mm-hmm.

19          MR. ISHIDA:  -- the -- the -- the other thing

20  about your concerns that you had mentioned, career

21  advancement, things that have been done that, you know,

22  seems like it's taking you off that career track, I'm

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 53 of 79

US00007666

1    just -- I'm just wondering if there's a way we can also

2    simultaneously have a dialogue with that.

3          The one thing I'm -- the one thing I'm

4    concerned about, Caryn, is, you know, my additional

5    thought was, well, you know, you should have a

6    conversation with Tony. But you mentioned, you know, a

7    concern that I have and that's trust. I mean it's

8    difficult to have a conversation with somebody if you

9    don't fully trust them.

10         MS. STRICKLAND:  Right.

11         MR. ISHIDA:  So, I don't know if having a

12   direct conversation with Tony will be as productive as

13   we all hope given that there's this, you know, almost a

14   sense of broken trust that you have.

15         So, I'm wondering, would it make sense to have

16   someone else work with the two of you possibly? And

17   what I'm thinking of is, we have circuit mediators that

18   are just outstanding. And the chief circuit mediator is

19   outstanding, I've used him in other instances and he's

20   done a fantastic job.

21         MS. STRICKLAND:  Mm-hmm.

22         MR. ISHIDA:  I'm just wondering if his

US00007667

1   services would be helpful here to try to address some

2   of these -- your career concerns as well. Because, like

3   I said, my feeling is, I don't know if you and Tony are

4   that far off. I mean, I can think --

5           MS. STRICKLAND:  Mm-hmm.

6           MR. ISHIDA:  -- I think the both of you will

7   agree on a lot of what you've already mentioned.

8           MS. STRICKLAND:  Mm-hmm.

9           MR. ISHIDA:  It's just that the -- the trust

10  issue worries me and to -- to make sure that the

11  process is fully successful, that's why I wonder would

12  it help to bring somebody else in at this point.

13          MS. STRICKLAND:  It may. I mean, it -- it may

14  but I think I'm just -- you know, I appreciate that

15  suggestion but I think I need some time to think about

16  it before I can commit --

17          MR. ISHIDA:  Okay.

18          MS. STRICKLAND:  -- to that, if you don't

19  mind.

20          MR. ISHIDA:  Okay. Not at all. Not at all.

21          MS. STRICKLAND:  I mean, I -- I think maybe

22  the thing to do is, maybe -- well, you said you were

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 55 of 79

US00007668

1    going to be gone next week, right, at the judicial

2    conference but --

3          MR. ISHIDA: Right.

4          MS. STRICKLAND: -- I think that I -- I am

5    going to go ahead and -- I'm going to send an email to

6    Chief Judge Gregory and to you requesting, you know, an

7    extension of time and just say, you know, I'm currently

8    involved in a dialogue and I'm considering my options

9    and, you know, just before I send it I just kind of

10   want to make sure like since we've talked about it and

11   stuff that there's not going to be an issue with me

12   doing that.

13         MR. ISHIDA: Mm-hmm, mm-hmm. Well -- well,

14   certainly, as -- as you've mentioned that preserves

15   your rights or --

16         MS. STRICKLAND: Uh-huh.

17         MR. ISHIDA: -- you know, you're -- you're --

18   you're trying to preserve all of your options and

19   addressing the timeliness issue is going to be, you

20   know, certainly one way to get -- get that [inaudible]

21   so sending that out to me and Judge Gregory is -- I

22   think is a good first step.

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 56 of 79

US00007669

1          MS. STRICKLAND:  Okay. Yeah, I just want to

2    make sure -- you know, just so that -- you know, you're

3    not blindsided by it or anything. So, and then --

4          MR. ISHIDA:  Sure.

5          MS. STRICKLAND:  -- you know, maybe the thing

6    to do is, I definitely have some things to -- to think

7    about.

8          So, maybe when you get back, you know, first

9    thing of, you know, not next week but the week after,

10   maybe we can have another phone call --

11         MR. ISHIDA:  Mm-hmm.

12         MS. STRICKLAND:  -- which is, you know, an up-

13   -- a status update and kind of figure out where we're

14   at.

15         MR. ISHIDA:  Sure, sure. That's -- that's --

16   we'll --

17         MS. STRICKLAND:  And in the meantime, I can

18   kind of think about, you know, the things you said --

19   you know, what would I want, the possible circuit

20   mediator.

21         And what is that's person name? You may have

22   said it but I just missed it.

US00007670

1          MR. ISHIDA:  The chief circuit mediator his

2     name is Ed Smith.

3          MS. STRICKLAND:  Okay.

4          MR. ISHIDA:  So, he's based out of South

5     Carolina.

6          MS. STRICKLAND:  Okay. And then, yeah -- and

7     then, I guess, just the last thing is just, the --

8     well, no, I mean, I -- I think that -- I think that is

9     -- I think that is it but, you know, in terms of the

10    ongoing investigation, I mean, do you have any

11    understanding of just kind of like what the timeframe

12    of that would be? I know that it's supposed to be

13    prompt but --

14         MR. ISHIDA:  Yeah -- no. A- -- a- -- aside

15    from -- I mean there -- Chapter 9 doesn't specify, you

16    know, when the investigation has to be concluded by. It

17    just says that, you know, the -- the allegations have

18    to be investigated promptly.

19         MS. STRICKLAND:  Okay.

20         MR. ISHIDA:  And, so, yeah, they're -- they're

21    really -- I mean, there are -- there are no hard and

22    fast deadlines for when this investigation has to be

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 58 of 79

US00007671

1  completed.

2         MS. STRICKLAND:  Okay. All right. All right,

3  that is -- that's -- that's good to know. Well, I -- I

4  really appreciate you taking the time and, you know, I

5  hope this kind of just is the -- the start of a, you

6  know, continuing dialogue.

7         MR. ISHIDA:  Yeah. No, I -- I -- I think -- I

8  think when -- as long as people are talking, you know,

9  that's always a good sign because that means that

10  people are willing to engage in the process and people

11  are actively looking for ways to resolve this. So, I'm

12  -- I'm happy to keep talking as long as you think it's

13  helpful for me.

14         And -- and -- and ultimately, Caryn, I think

15  what I would -- what I would just tell you is that, the

16  -- whatever decisions are made you have to feel good

17  about that, you have to feel comfortable about that. To

18  -- to do something where you're -- you're kind of not -

19  - you don't feel good about it, if -- if -- is, you

20  know, really not helpful or productive.

21         So, in thinking about -- you should really

22  think about what is it that you are looking for. What

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 59 of 79

US00007672

```
1   do you hope to get out of this process.
2           And the -- the -- the more you can articulate
3   that I think the -- at that -- that -- that gives us an
4   opportunity to, okay, let's really see if we can
5   address all of the concerns that you've identified and
6   articulated.
7           MS. STRICKLAND:  Okay. Well, I appreciate --
8           MR. ISHIDA:  The only -- so --
9           MS. STRICKLAND:  I'm sorry, go ahead.
10          MR. ISHIDA:  -- yeah, don't even -- no, no.
11  All I'm saying, don't leave anything out. Just think
12  about what is it that you really want.
13          MS. STRICKLAND:  Okay. Okay. Well, that --
14  that's very helpful and -- and I do appreciate it. So,
15  I will -- I'll be in touch again soon.
16          MR. ISHIDA:  Okay. And I will as soon as I get
17  back, I'll -- I'll let you know and we can go from
18  there.
19          MS. STRICKLAND:  Okay. That sounds great.
20          MR. ISHIDA:  All right, Caryn. Thanks so much.
21          MS. STRICKLAND:  Yep. Thanks.
22          MR. ISHIDA:  Okay. You --
```

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 60 of 79

US00007673

1    MS. STRICKLAND:  Bye-bye.

2    MR. ISHIDA:  -- you take care now. Bye-bye.

3    MS. STRICKLAND:  Thanks you too. Bye.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER

2       I, Chris Naaden, a transcriber, hereby declare

3  under penalty of perjury that to the best of my ability

4  from the audio recordings and supporting information;

5  and that I am neither counsel for, related to, nor

6  employed by any of the parties to this case and have no

7  interest, financial or otherwise, in its outcome, the

8  above 59 pages contain a full, true and correct

9  transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12       I further declare that I have no interest in

13  the event of the action.

14

15

16

17       February 10, 2023

18       Chris Naaden

19

20

21

22
```

| A |
| --- |

**ability**
60:3
**able**
15:4, 22:12,
26:6, 31:22,
32:2, 32:8,
32:14, 32:15,
48:5, 49:12,
51:2
**about**
6:5, 6:6, 6:9,
7:5, 12:3, 12:9,
13:14, 14:22,
17:4, 17:13,
19:19, 20:19,
25:11, 28:9,
33:6, 35:12,
35:21, 37:18,
38:4, 38:5,
38:10, 39:6,
39:14, 39:15,
40:2, 41:20,
42:13, 42:19,
42:22, 44:14,
45:21, 46:6,
48:4, 48:8,
48:22, 49:1,
49:5, 50:9,
51:20, 52:4,
53:15, 54:10,
55:7, 55:18,
57:17, 57:19,
57:21, 57:22,
58:12
**above**
17:22, 19:16,
60:8
**absolutely**
5:16
**accept**
40:7, 40:10,
41:7
**accountability**
27:15
**acknowledging**
36:10, 36:11

**act**
15:11
**acted**
27:15, 30:9
**action**
16:10, 60:13
**actively**
57:11
**acts**
11:15, 22:8
**actually**
4:18, 5:7, 9:1,
11:13, 11:15,
19:1, 20:6,
23:3, 43:2,
43:6, 44:4,
44:5, 48:6
**add**
33:1
**additional**
14:3, 52:4
**address**
24:10, 25:1,
33:3, 48:20,
53:1, 58:5
**addressed**
29:14, 29:15
**addressing**
54:19
**adequate**
15:3
**advancement**
26:6, 50:16,
51:21
**advice**
43:9, 46:21
**after**
10:11, 39:18,
47:20, 55:9
**again**
25:3, 30:4,
39:8, 47:15,
58:15
**against**
14:12
**agree**
12:7, 33:12,
36:17, 53:7

**agreed**
12:9, 12:17,
12:22, 36:7
**agreeing**
36:12
**ahead**
54:5, 58:9
**al**
1:10, 9:14
**all**
2:10, 3:1,
4:22, 8:5, 9:12,
11:9, 20:22,
21:9, 23:21,
25:6, 25:16,
26:14, 28:22,
29:10, 30:14,
31:15, 31:18,
33:5, 35:4,
40:17, 41:5,
42:6, 42:8,
43:14, 44:11,
44:19, 47:2,
47:4, 47:5,
47:7, 47:8,
49:4, 49:20,
52:13, 53:20,
54:18, 57:2,
58:5, 58:11,
58:20
**alle**
19:21
**allegation**
7:22, 8:6, 8:7,
9:14, 11:6,
19:22, 21:17
**allegations**
8:20, 11:2,
11:13, 11:14,
12:5, 14:12,
21:19, 26:22,
50:14, 56:17
**alleged**
19:20, 21:17
**alleviating**
39:15
**alluded**
33:7

**almost**
12:12, 20:11,
30:8, 31:17,
47:9, 52:13
**already**
9:2, 12:3,
12:9, 14:17,
21:13, 28:4,
28:21, 44:17,
53:7
**also**
26:9, 41:13,
42:2, 44:18,
49:5, 52:1
**always**
27:3, 57:9
**america**
1:10
**annual**
3:4
**another**
10:19, 14:13,
18:6, 34:13,
41:16, 48:1,
55:10
**any**
4:5, 6:4,
14:12, 14:15,
22:4, 23:16,
27:20, 37:3,
39:1, 44:1,
56:10, 60:6
**anybody**
3:7, 47:16
**anything**
6:11, 14:7,
26:13, 27:20,
29:4, 30:22,
35:4, 36:16,
37:6, 55:3,
58:11
**anyways**
4:21, 19:5
**ao**
5:5, 30:21,
39:11, 39:14,
40:16, 42:20,
42:21, 46:1,

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 63 of 79

US00007676

46:16
ao's
24:1
appeals
12:14, 13:1,
32:8
appears
14:11
appellate
13:5, 32:10
apply
19:11
appointed
8:13, 51:12
appointment
51:11
appreciate
42:18, 49:10,
53:14, 57:4,
58:7, 58:14
approached
40:2
appropriately
11:3
area
24:7, 24:17
areas
24:4
aren't
24:7
arguing
22:6
argument
23:16
arms
40:21
around
35:3
articulate
58:2
articulated
58:6
aside
16:8, 46:19,
56:14
asked
8:16, 13:12,
20:6, 31:10,

48:13
asking
4:6, 51:11
assess
15:14
assign
12:22, 13:1
assistant
12:20, 25:22,
32:3, 34:6,
35:11, 37:22,
41:16
assume
4:14
assumed
16:3
assuming
9:11
assurance
20:15, 22:10
attainment
50:16
attorney
6:19, 22:21,
23:4, 26:2,
32:10
attorneys
23:2
attractive
51:8
audio
60:4
available
49:4
avenue
18:6
aware
12:6, 17:5,
19:21
away
9:7
awkward
11:9

---
**B**
---

back
4:1, 25:15,
33:6, 39:8,

48:18, 49:19,
55:8, 58:17
backfired
45:5
bad
30:16
bare
27:12
barriers
41:2
based
56:4
basic
35:22
basically
26:2, 32:11,
36:6, 37:21,
45:2, 45:3,
50:15
beam
8:15, 51:7
beautiful
3:18
because
7:18, 7:22,
9:4, 12:18,
13:15, 13:22,
15:6, 17:4,
17:13, 18:14,
20:6, 20:9,
22:8, 23:19,
24:2, 24:16,
26:13, 26:14,
27:2, 28:10,
28:22, 29:3,
29:4, 29:5,
29:18, 29:20,
30:2, 30:10,
33:5, 34:4,
34:14, 35:2,
35:20, 36:6,
36:9, 38:10,
40:20, 41:22,
42:4, 42:21,
43:9, 43:15,
44:16, 45:10,
46:1, 53:2, 57:9
becomes
19:21

becoming
17:5
been
4:1, 5:9, 5:12,
5:14, 6:8, 12:3,
13:15, 22:16,
23:20, 25:19,
26:11, 26:12,
29:3, 29:17,
31:17, 36:14,
37:11, 37:21,
39:7, 39:19,
40:14, 51:21
before
3:11, 14:20,
30:6, 30:18,
31:1, 33:5,
33:13, 46:13,
53:16, 54:9
begin
8:14, 29:20
beginning
37:22
begrudging
37:15
being
11:7, 12:14,
12:20, 12:21,
17:4, 32:17,
32:18, 34:16,
45:13, 45:14,
51:2
believe
36:9
believed
34:15, 50:17
benefit
34:18, 36:22
berryville
3:15
best
5:16, 20:22,
23:20, 36:2,
38:20, 48:10,
60:3
betrayed
35:13
better
29:15, 32:9

between
41:4, 41:9
beyond
28:6
big
25:15, 28:19
bigger
29:7, 29:11
biggest
23:9
bit
5:20, 33:4,
42:13
blaming
47:16
blindsided
5:21, 55:3
blocking
47:10
board
5:9, 33:6
border
3:16
both
49:13, 49:15,
53:6
bottom
9:14
break
3:12, 3:22,
41:5
bring
27:4, 29:12,
31:4, 53:12
bringing
8:5
broken
39:7, 52:14
brought
34:8, 37:3
butt
26:9
bye
59:3
bye-bye
59:1, 59:2
byzantine
24:17

**C**

call
2:14, 2:21,
55:10
called
7:18, 16:11
calling
2:7, 28:11
came
5:1, 12:13,
21:19, 25:20,
33:5, 33:8
can't
7:19, 27:10,
27:11, 42:11
candidates
34:3
caption
60:10
care
59:2
career
51:20, 51:22,
53:2
carolina
56:5
caryn
1:9, 2:8, 2:12,
2:13, 2:15,
2:19, 4:20,
7:14, 15:16,
17:20, 19:17,
23:22, 25:7,
32:22, 39:4,
41:13, 46:9,
48:13, 49:19,
52:4, 57:14,
58:20
case
20:8, 32:5,
40:19, 43:13,
49:11, 60:6
cases
12:22, 32:9
cause
22:5
cdo
29:20

certain
8:8, 25:20,
35:20, 44:10
certainly
21:8, 24:3,
33:1, 49:2,
49:3, 54:14,
54:20
certificate
60:1
chain
43:12, 44:13
challenge
47:4
challenging
39:5
chance
3:21, 5:1,
14:20, 22:21,
35:6
change
30:2, 30:3,
33:21, 33:22
changed
4:20
changes
36:12
changing
35:3
chapter
7:22, 8:9,
8:10, 9:17,
9:19, 10:2,
10:9, 10:22,
11:18, 15:22,
16:8, 16:13,
16:22, 21:11,
21:15, 37:14,
38:11, 56:15
check
8:20
cherry
31:17
chief
8:11, 11:1,
13:5, 52:18,
54:6, 56:1
choice
51:13

choose
26:6
chris
60:2, 60:18
christian
1:22
circuit
2:3, 52:17,
52:18, 55:19,
56:1
circuit's
7:17, 8:4,
9:20, 15:21,
17:22
circumstances
36:21
civil
20:8
claims
18:7
clarifying
17:13
clark
28:18
clear
43:22, 44:9
clearer
24:13
clearly
22:18
clerked
30:20
clock
20:13
close
3:15
come
4:1, 26:15,
34:16, 45:22
comfortable
40:17, 44:10,
57:17
coming
26:5
command
43:13
commit
53:16

communicate
40:21
communicated
43:20
compensatory
27:10
compiled
39:20
complaint
10:5
complete
43:16
completed
57:1
completely
5:19, 27:16,
31:13, 32:19,
34:21, 38:21,
43:21, 45:10,
45:20, 45:21,
46:11
compromised
32:16
conceived
14:10
concern
7:20, 23:9,
33:14, 40:3,
41:8, 45:20,
52:7
concerned
6:9, 11:22,
12:12, 13:13,
28:9, 37:18,
38:3, 38:5,
38:10, 41:4,
52:4
concerns
14:14, 14:22,
29:11, 34:10,
39:15, 39:17,
40:22, 43:1,
48:21, 51:20,
53:2, 58:5
concluded
56:16
conduct
7:3, 8:1, 8:7,

9:18, 16:1,
21:12, 22:14,
25:2, 38:12,
51:13
conducted
13:8
conducting
10:20
conference
54:2
confidential
4:12
confirm
4:10
confirming
12:8
confused
6:2
confusing
20:22
connections
40:15
consider
15:4, 28:11
considering
54:8
consultation
6:19
contacted
43:15
contacts
40:15, 42:19
contain
60:8
contemplating
11:17, 15:2
context
31:5
continuing
12:19, 57:6
conversation
1:7, 39:10,
39:14, 52:6,
52:8, 52:12
conversations
35:12
conversions
33:10

converted
29:19
coordinator
4:11, 16:3
copy
19:1
corner
28:7
correct
60:8
couch
18:11
coughing
16:15
could
5:16, 36:2,
45:6, 46:6
couldn't
9:7, 42:11
counsel
39:10, 60:5
counseling
10:3, 20:1,
21:16, 38:15,
49:12
country
3:18
couple
46:15
course
33:5
court
4:19, 5:4,
28:15, 40:14
crazy
36:6
creating
28:17
culture
33:22
curiosity
25:8
current
7:12
currently
54:7

---
D
---

damages
27:11

date
7:19
day
20:4, 21:15,
21:16
days
15:12, 17:1,
17:5, 17:9,
19:10, 19:20,
19:21, 21:17,
22:15, 24:13
de
18:5
deadline
16:2, 16:3,
16:8, 16:12,
16:14, 16:21,
22:15, 22:18,
38:15
deadlines
15:20, 15:22,
21:13, 22:4,
23:10, 24:6,
24:12, 56:22
deal
28:19, 29:13,
42:6
decide
16:17
decided
2:21, 23:3
decision
22:13
decisions
57:16
declare
60:2, 60:12
deems
9:13
def
28:18
defender
26:1, 28:12,
29:20, 32:3,
41:17
definitely
55:6
demanded
30:1

demoted
32:12
denied
27:13
depending
40:11
deprived
26:12
describe
48:14
describing
42:10
designed
8:4, 18:6,
19:16
desperate
45:10
desperation
43:16
details
13:4, 44:12,
46:6
devins
1:9, 4:20
dialogue
41:4, 41:9,
43:20, 46:2,
46:3, 52:2,
54:8, 57:6
different
29:15, 30:19,
30:20, 30:21
difficult
5:14, 24:7,
37:12, 52:8
diligence
30:5
diligently
6:8, 23:20
direct
52:12
direction
43:21
directly
40:22, 42:22,
44:7, 44:8
disadvantage
33:4, 35:2

disciplinary
16:10
discomfort
44:22
discreet
15:11
distilled
50:22
district
29:21, 51:10
disturbing
29:18
doing
8:9, 8:18,
27:17, 29:2,
54:12
done
3:11, 8:12,
17:22, 22:16,
27:16, 34:4,
34:17, 51:21,
52:20
doubt
34:18, 36:22
down
41:5, 50:22
due
30:5
duties
32:18
dynamic
15:7
dysfunctional
42:3

E

earnest
48:9
easiest
24:4
easy
49:16, 51:12
ed
56:2
edr
4:11, 6:9,
7:17, 7:22,
9:20, 9:21,

10:9, 15:18,
15:21, 16:3,
16:13, 16:22,
17:14, 18:1,
18:18, 19:12,
27:10, 48:7
eeo
46:17
effect
12:21
either
11:5, 17:20
else
3:19, 26:22,
28:21, 36:19,
52:16, 53:12
email
7:19, 7:21,
12:2, 12:8,
17:15, 44:15,
54:5
emails
13:11
emotional
35:19
employed
60:6
employee
17:17, 18:14,
19:21, 31:6
employees
18:7, 31:11,
48:10
end
34:21, 46:16,
48:15
ending
48:7
engage
57:10
enjoys
51:9
ensure
11:2, 38:21
entirely
40:20
environment
30:18, 47:5

escalated
37:9
especially
15:6, 29:18
et
1:10
ethical
29:8
ethically
32:16
evaluate
6:22
eve
37:2
even
6:19, 22:6,
22:21, 23:2,
23:3, 28:10,
35:21, 38:17,
58:10
event
60:10, 60:13
events
5:21, 44:13
ever
45:2
every
20:12, 45:6
everybody
48:21
everybody's
48:19
everyone's
49:14
everything
26:22, 35:11,
36:7, 36:19,
45:2
exactly
27:6
example
6:18, 13:13
excellent
26:10
except
36:8
excuse
16:15

Case 1:20-cv-00066-WGY   Document 245-39   Filed 06/01/23   Page 67 of 79

US00007680

executive
11:2
executive's
2:3
expecting
2:9, 2:13
experience
29:16, 29:17,
34:4, 39:2,
42:12
experienced
27:7, 30:17
expressed
33:14
extended
22:4
extending
22:15, 24:12
extension
20:17, 20:18,
22:8, 23:11,
54:7
extent
32:4

**F**

face
47:4
faced
29:3
fact
20:16, 45:1,
49:18
fair
24:22, 26:20,
38:21, 39:2,
44:5, 50:7,
50:11, 51:14
fairness
37:18
familiar
17:21
fantastic
52:20
far
9:9, 38:6,
43:4, 48:17,
51:1, 53:4

fast
21:12, 23:10,
56:22
fbi
30:12
fdo
30:11
february
60:17
federal
25:22, 28:12,
29:19, 32:3
feel
5:17, 5:19,
5:20, 13:15,
15:1, 25:19,
26:8, 26:11,
26:17, 26:19,
26:20, 27:6,
29:1, 30:8,
35:13, 37:8,
37:11, 37:16,
40:14, 40:16,
42:16, 47:9,
57:16, 57:17,
57:19
feeling
32:16, 32:17,
53:3
fellow
5:5, 28:16,
40:14
felt
33:17, 34:22,
37:7, 42:4, 43:5
few
6:1, 20:6
figure
6:7, 6:18,
6:22, 21:3,
32:13, 36:19,
38:16, 55:13
file
10:4, 13:17,
16:19, 16:22,
20:15, 20:16,
38:11
filing
6:10, 10:8,

11:17, 14:13,
18:12
filings
11:17, 11:19,
15:2
financial
60:7
fine
8:17, 40:4
finished
39:19, 51:15
fired
31:6
first
7:16, 12:20,
20:19, 33:22,
34:6, 35:10,
37:22, 40:4,
48:7, 54:22,
55:8
five
19:10
flashback
42:12
flip
27:14
focus
7:16
following
37:14
foremost
34:1
forget
22:1
form
33:18
formal
20:16
forward
51:16
forwarded
12:8
found
3:11
founded
34:11
four
30:19

fourth
7:17
fpp's
17:8
frankly
16:16, 27:13,
28:21
free
30:9
friday
6:20
friends
28:18
front
22:2
frustrated
42:4
frustrates
25:19
frustration
42:7
full
26:20, 50:10,
50:11, 51:14,
60:8
fully
47:11, 52:9,
53:11
funny
34:13
further
60:12
future
28:10

**G**

gave
43:6
general
34:5, 39:10,
47:22
genuinely
34:3, 36:1,
37:7
get-go
23:13
getting
21:4, 32:1,

38:10, 43:9
**give**
5:13, 26:2,
34:18, 35:6,
36:21, 45:16
**given**
39:2, 39:17,
52:13
**gives**
58:3
**giving**
40:20
**go**
27:9, 28:6,
40:7, 40:11,
41:2, 41:3,
43:12, 44:1,
44:11, 46:6,
46:21, 54:5,
58:9, 58:17
**goal**
48:15
**goes**
41:15, 42:15
**going**
4:12, 7:13,
8:21, 9:5, 9:6,
10:13, 11:8,
13:14, 13:18,
14:15, 21:3,
22:19, 24:16,
27:9, 28:1,
28:6, 28:8,
30:16, 31:17,
33:15, 34:17,
36:13, 40:17,
42:14, 46:12,
47:3, 48:16,
54:1, 54:5,
54:11, 54:19
**gone**
54:1
**good**
3:3, 3:4, 4:2,
22:4, 25:14,
28:17, 33:22,
46:21, 48:7,
50:6, 51:10,

54:22, 57:3,
57:9, 57:16,
57:19
**gotten**
5:18, 7:18
**great**
58:19
**gregory**
16:5, 54:6,
54:21
**grievance**
18:8, 18:12
**group**
22:14, 24:2,
24:9
**guard**
41:3
**guess**
3:4, 4:9,
10:17, 10:18,
17:3, 30:13,
31:20, 46:22,
48:15, 50:9,
56:7
**guidance**
5:13, 45:16
**gut**
47:7

**H**

**handled**
8:8
**hands**
21:1
**happen**
10:11, 24:16,
25:3, 49:18
**happened**
27:1, 33:5,
35:10, 36:11,
43:14
**happening**
20:11
**happens**
16:11, 16:12,
20:12, 25:1,
38:21, 41:2
**happy**
20:15, 41:7,

57:12
**harassing**
36:14
**harassment**
7:21, 8:8,
11:7, 11:14,
26:22, 29:8
**hard**
21:12, 23:10,
36:9, 36:20,
36:21, 38:8,
39:7, 56:21
**harder**
37:10
**head**
8:11, 21:19,
23:16
**hear**
2:9, 7:9, 33:6,
41:15
**heard**
33:11, 33:20,
46:13
**hearing**
34:14
**heart**
41:15, 42:15
**heather**
8:15, 10:20,
14:1, 14:18,
51:7, 51:12
**help**
4:7, 34:8,
36:3, 42:11,
49:6, 53:12
**helpful**
24:7, 40:6,
40:20, 42:20,
53:1, 57:13,
57:20, 58:14
**here**
4:6, 20:4,
24:18, 25:4,
28:10, 53:1
**hereby**
60:2
**hey**
12:14

**hi**
2:5, 2:19,
2:20, 43:18
**hinder**
41:8
**hired**
25:22, 32:15
**hiring**
33:9
**history**
28:5, 33:3
**honest**
5:19, 35:1
**hope**
2:20, 52:13,
57:5, 58:1
**hoping**
7:9, 23:12
**horrific**
42:3
**house**
4:19
**hr**
51:9
**human**
11:5
**hunch**
48:16
**hypersensitive**
37:6

**I**

**ideal**
31:21
**identified**
58:5
**impartial**
26:20, 38:22,
50:11
**important**
9:13, 31:5,
51:5
**impressed**
34:3
**inappropriate**
32:19
**incidents**
27:22

| | | | |
|---|---|---|---|
| **include** 11:15, 14:11, 14:17 | 46:1, 47:18, 47:22, 54:8 | **K** | 43:9, 46:15, 46:22 |
| **includes** 50:11 | **involving** 48:1 | **kate** 28:17 | **laurel** 46:12 |
| **including** 14:13 | **ishisa** 17:16 | **keep** 15:7, 20:10, 57:12 | **law** 28:12, 30:20 |
| **informally** 12:7, 45:7 | **issue** 12:14, 12:19, 16:20, 26:17, 32:7, 53:10, 54:11, 54:19 | **kept** 4:12, 35:5 | **lawsuit** 27:12 |
| **information** 60:4 | | **kicked** 21:4 | **leadership** 30:2, 33:19 |
| **initially** 43:8 | **issues** 19:12, 26:15, 28:1, 29:3, 33:15, 40:21, 43:1 | **kind** 3:22, 4:10, 4:22, 5:9, 5:10, 5:12, 5:21, 6:5, 6:22, 7:9, 9:22, 14:16, 16:2, 17:22, 20:10, 20:15, 20:20, 21:4, 23:2, 23:8, 23:12, 23:16, 24:14, 24:16, 25:7, 29:11, 33:13, 34:8, 35:9, 36:15, 39:21, 40:2, 41:9, 41:11, 43:11, 47:11, 47:19, 49:14, 51:12, 54:9, 55:13, 55:18, 56:11, 57:5, 57:18 | **learning** 15:7 |
| **instance** 15:22 | | | **least** 23:5 |
| **instances** 52:19 | **it'll** 51:17 | | **leave** 3:4, 58:11 |
| **instead** 40:21 | **itself** 9:21, 16:13 | | **left** 28:21, 31:14, 36:15 |
| **interest** 60:7, 60:12 | **J** | | **legally** 22:7 |
| **interests** 32:4 | **james** 2:6 | | **length** 40:21 |
| **interfered** 32:17, 32:18 | **job** 1:20, 25:21, 28:19, 29:2, 32:1, 32:15, 32:17, 32:18, 41:20, 42:5, 50:17, 52:20 | | **let's** 7:15, 7:16, 12:15, 58:4 |
| **intimately** 37:21 | | | **level** 27:5, 45:7, 45:18 |
| **intuitive** 24:14 | | **knew** 44:17 | **life** 41:16, 47:19, 47:20 |
| **investigated** 11:3, 11:7, 56:18 | **jobs** 30:19 | **L** | **limit** 37:17 |
| **investigating** 9:2 | **jp** 44:5 | **labeled** 18:17 | **limitations** 20:9 |
| **investigation** 7:4, 7:12, 8:12, 10:20, 13:7, 13:8, 13:22, 14:11, 14:16, 14:17, 16:9, 16:11, 26:21, 30:13, 39:19, 50:11, 51:14, 56:10, 56:16, 56:22 | **ju** 50:9 | **lady** 46:20 | **line** 2:22 |
| | **judge** 8:11, 11:1, 16:5, 54:6, 54:21 | **last** 6:1, 45:11, 56:7 | **list** 51:1 |
| | **judges** 29:21, 30:21, 33:13, 33:20 | **latest** 35:10 | **listed** 60:10 |
| | **judicial** 54:1 | **laura** 5:8, 43:5, | **listened** 45:14 |
| **invoke** 16:15 | **june** 31:7 | | **lists** 49:15, 49:16 |
| **involved** 37:21, 39:1, | | | **little** 5:20, 28:7, |

33:4, 42:13
**load**
32:5
**logistical**
13:2
**long**
16:9, 19:18,
57:8, 57:12
**longer**
22:19, 32:11,
34:22
**look**
20:3, 20:4,
25:15, 51:16
**looked**
15:19
**looking**
25:12, 34:2,
50:21, 57:11,
57:22
**looks**
15:19, 17:21
**lot**
5:20, 24:6,
24:8, 24:18,
29:21, 30:16,
33:14, 33:15,
34:14, 46:5,
47:17, 48:8,
53:7
**love**
28:10, 31:22,
41:21, 42:6
**lowest**
27:5, 45:7,
45:18

**M**

**made**
19:19, 21:17,
28:16, 30:10,
30:13, 37:10,
40:15, 42:4,
42:19, 44:9,
46:12, 57:16
**maiden**
4:19
**main**
6:6

**make**
6:2, 6:17,
8:20, 10:3,
10:4, 15:3,
15:12, 15:15,
21:2, 22:12,
23:19, 24:13,
24:21, 24:22,
25:2, 32:9,
36:13, 43:22,
49:2, 49:3,
49:4, 52:15,
53:10, 54:10,
55:2
**making**
28:18
**manager**
11:6
**manner**
27:16
**manual**
17:18, 18:14
**many**
23:2, 29:3,
29:5
**married**
4:20
**martinez**
39:21
**matter**
48:1, 48:7
**maybe**
38:7, 53:21,
53:22, 55:5,
55:8, 55:10
**mean**
10:5, 12:17,
13:15, 14:8,
15:18, 16:2,
16:20, 17:19,
18:9, 18:11,
18:21, 19:16,
21:18, 21:21,
26:16, 27:9,
28:2, 28:10,
28:18, 29:8,
29:10, 30:12,
30:22, 31:5,

31:15, 31:21,
32:6, 34:10,
34:17, 39:6,
40:14, 41:22,
42:21, 44:11,
44:18, 46:20,
50:5, 51:4,
52:7, 53:4,
53:13, 53:21,
56:8, 56:10,
56:15, 56:21
**means**
57:9
**meantime**
55:17
**mediation**
10:4
**mediator**
52:18, 55:20,
56:1
**mediators**
52:17
**meet**
5:1
**mention**
5:11, 7:20,
21:15, 26:9,
41:12
**mentioned**
17:15, 41:1,
47:1, 51:20,
52:6, 53:7,
54:14
**mentor**
43:10
**messages**
13:11
**met**
4:18
**might**
10:6
**mind**
2:21, 48:18,
49:20, 53:19
**mindful**
33:21
**mine**
43:10

**minimum**
27:12
**minor**
5:9
**misbehavior**
28:6
**misgivings**
7:5
**misread**
17:3
**missed**
55:22
**mm**
7:14, 32:21,
44:6, 46:4
**mm-hmm**
3:17, 6:12,
6:16, 7:7, 8:2,
9:15, 10:7,
11:4, 12:4,
12:10, 13:9,
13:19, 14:2,
14:5, 14:19,
15:8, 16:6,
16:18, 20:2,
21:7, 22:11,
22:22, 23:6,
23:14, 23:18,
24:20, 25:5,
25:17, 26:3,
28:14, 31:2,
31:8, 31:19,
34:20, 35:8,
35:14, 35:18,
36:4, 37:19,
38:2, 38:13,
38:18, 39:4,
42:17, 43:3,
43:7, 43:17,
44:3, 44:20,
45:4, 45:8,
45:12, 46:4,
46:18, 47:13,
48:2, 48:11,
49:9, 50:2,
50:13, 50:18,
50:20, 51:18,
52:21, 53:5,

53:8, 54:13,
55:11
**moment**
2:10, 2:15
**monastery**
3:8
**more**
22:9, 24:13,
40:16, 46:6,
50:9, 58:2
**most**
10:18, 25:19,
38:9, 51:5
**motion**
20:17
**much**
48:4, 58:20
**multiple**
29:9
**must**
19:19
**myself**
35:2, 35:21,
36:2, 38:20

**N**

**naaden**
1:22, 60:2,
60:18
**nail**
46:9
**name**
4:19, 4:20,
43:6, 55:21,
56:2
**named**
11:19, 13:18
**nancy**
43:15, 45:9
**nancy's**
43:6
**navigate**
24:5
**necessarily**
22:7, 31:15
**necessary**
13:1, 15:4,
26:20, 26:21,

36:8, 37:4
**need**
6:18, 6:19,
15:14, 21:3,
22:7, 22:10,
23:3, 23:4,
33:18, 33:21,
33:22, 38:10,
53:15
**needed**
14:3, 33:18,
33:19
**neither**
60:5
**neutral**
8:14
**never**
12:13, 13:12,
30:17, 30:22,
37:3, 46:13
**new**
15:9, 20:10,
20:12, 33:18
**next**
54:1, 55:9
**nice**
3:22, 4:1
**normal**
3:10
**nothing**
3:19, 17:1,
26:10, 34:18,
43:19
**notice**
31:7, 31:11,
31:12
**noticed**
29:21, 29:22
**notified**
8:11
**notify**
16:4
**number**
2:21, 24:9
**numerous**
44:14
**nutshell**
32:20

**O**

**obligations**
37:14
**occasions**
29:9
**occur**
30:2
**office**
2:3, 8:14,
17:14, 17:22,
28:4, 28:12,
29:6, 29:19,
33:13, 33:16,
34:8, 35:5,
36:8, 48:1, 51:9
**office's**
15:18
**officer**
46:17
**offices**
42:3
**oh**
3:1, 4:2, 4:21,
5:6, 15:11,
17:3, 34:16,
41:18
**okay**
2:14, 4:14,
5:6, 7:14, 11:8,
18:13, 18:19,
21:14, 33:21,
39:12, 48:19,
51:3, 51:6,
53:17, 53:20,
55:1, 56:3,
56:6, 56:19,
57:2, 58:4,
58:7, 58:13,
58:16, 58:19,
58:22
**once**
5:1, 16:3,
39:6, 49:14,
49:15
**one**
2:10, 2:15,
5:2, 8:16,

11:14, 15:11,
19:9, 19:18,
23:5, 31:6,
39:16, 40:22,
43:6, 46:22,
50:10, 51:7,
52:3, 54:20
**ongoing**
15:7, 20:10,
21:13, 22:8,
35:12, 44:19,
45:1, 56:10
**only**
5:1, 16:2,
27:22, 29:17,
58:8
**opinion**
23:7
**opportunities**
26:13, 27:13,
50:15
**opportunity**
26:5, 58:4
**opposite**
37:9, 43:21
**option**
9:19, 10:13
**options**
6:7, 6:22,
7:10, 7:11,
7:15, 15:5,
21:10, 49:1,
49:5, 54:8,
54:18
**order**
32:9
**other**
7:2, 9:19,
11:6, 11:17,
13:17, 26:18,
31:18, 35:2,
35:6, 39:13,
49:11, 50:15,
51:19, 52:19
**others**
31:6
**otherwise**
60:7

out
3:19, 4:7, 4:9,
4:15, 6:7, 6:19,
6:22, 8:9, 8:22,
9:5, 9:17,
12:15, 13:4,
21:3, 21:4,
25:11, 32:13,
36:8, 36:18,
36:19, 38:16,
41:15, 42:15,
48:5, 49:8,
49:14, 49:17,
50:1, 51:17,
54:21, 55:13,
56:4, 58:1,
58:11
outcome
60:7
outside
8:14, 43:12,
44:1, 51:8
outstanding
52:18, 52:19
over
17:22, 19:16
own
15:2, 25:8,
32:9, 38:11,
47:20

**P**

page
47:5, 60:10
pages
1:21, 60:8
painted
39:5
part
19:22, 20:1,
24:1, 26:17,
32:6, 33:4,
33:9, 33:10,
46:10
particularly
8:5
parties
8:5, 41:5, 60:6

pass
30:10
passion
41:20
passionately
33:1
penalized
45:1
penalty
60:3
people
9:13, 20:7,
24:8, 27:15,
30:7, 30:9,
35:3, 35:4,
35:6, 39:13,
40:16, 41:3,
47:18, 57:8,
57:10
people's
24:17, 24:18
perceived
21:4
perception
30:16, 43:11
perfect
3:2
perfectly
13:3
performance
26:11, 26:14,
29:4
periods
6:10
perjury
60:3
person
4:18, 8:5,
11:6, 11:15,
36:14, 37:8,
44:2, 55:21
perspective
30:5
phone
2:2, 2:18,
55:10
physical
19:1, 36:13

picture
25:15, 39:6
piece
39:8
place
26:10, 30:3,
30:6, 43:16
plan
6:9, 7:17,
7:22, 8:3, 8:4,
9:20, 10:22,
15:5, 15:10,
15:18, 15:21,
17:2, 17:8,
17:14, 18:1,
18:11, 19:12,
19:17, 20:18,
22:2, 23:10,
27:10, 40:1
plans
18:18, 24:13
play
51:17
playing
9:17, 51:17
plays
8:21
please
2:6, 2:10
pocket
9:6
point
5:18, 6:5,
16:17, 28:16,
35:20, 53:12
posed
49:13
position
5:13, 15:1,
21:9, 32:12,
43:4
possible
27:5, 45:7,
45:18, 50:4,
55:19
possibly
45:6, 52:16
precise
51:1

prejudiced
15:13
present
18:6
preserve
49:4, 54:18
preserves
54:14
preserving
21:9, 49:20
pretty
51:10
priority
6:14, 6:15
pro
36:1
prob
14:9
probably
20:16, 22:19,
24:15, 29:14,
31:12, 40:18
problem
13:2, 36:12
problems
29:5, 29:9
procedure
12:21, 18:9
proceed
7:8
process
5:10, 8:9,
8:14, 8:18,
8:21, 9:11,
9:17, 9:21,
10:1, 10:9,
13:14, 16:13,
16:15, 21:13,
23:4, 37:18,
38:17, 39:2,
40:1, 49:22,
51:17, 53:11,
57:10, 58:1
productive
52:12, 57:20
professional
26:5, 28:17,
30:17, 50:16

| | | | |
|---|---|---|---|
| promised 50:17 | read 6:9, 15:10, 18:11, 20:11, 21:21, 22:13 | received 60:9 | 20:18, 21:16, 23:11, 38:15 |

promised
50:17
promoted
35:4
prompt
56:13
promptly
8:12, 16:4,
56:18
protect
8:4, 35:16,
35:17, 36:2,
37:9, 38:20
protected
45:13, 49:3
provision
10:22, 19:19,
22:3
proximity
36:13
public
41:16
pure
32:12
pursue
18:7
put
13:17, 27:21,
28:22, 31:6,
31:11, 35:2,
37:12, 43:2,
49:16

**Q**

question
10:19, 17:13,
25:7, 25:14,
49:13, 50:6
questions
24:8
quite
46:14

**R**

raised
39:18
reached
4:7, 34:19

read
6:9, 15:10,
18:11, 20:11,
21:21, 22:13
reading
3:21, 19:15,
21:20, 21:22,
23:10
reads
11:1
real
16:8, 25:4,
41:4
really
3:12, 3:21,
3:22, 6:9, 6:14,
6:20, 7:6, 9:22,
11:9, 13:6,
13:13, 14:14,
15:4, 16:1,
16:14, 24:7,
25:15, 25:18,
28:6, 29:2,
29:7, 29:16,
29:18, 33:13,
34:8, 34:15,
34:17, 35:2,
35:9, 35:13,
37:1, 37:12,
38:3, 39:7,
39:16, 39:22,
41:9, 41:21,
42:3, 42:15,
46:20, 46:21,
48:7, 50:8,
56:21, 57:4,
57:20, 57:21,
58:4, 58:12
reason
11:16, 24:1,
29:18, 42:21,
46:1
reasonable
24:22
reasons
31:13, 32:18,
51:7
receive
39:20, 40:4

received
60:9
recharge
3:21
recognition
24:4
recommended
22:15, 24:2,
24:9
record
34:5
recordings
60:4
redress
25:4
refreshing
3:12
regarding
60:10
reggie
2:3, 2:7, 2:10,
2:12, 2:17
related
60:5
relations
40:16
relationship
28:17
remember
4:18, 7:19,
21:18
remote
36:17
renovation
4:19
report
9:18, 16:1,
16:4, 21:11,
22:14, 24:2,
39:19, 39:20,
40:4, 40:7,
40:10, 41:7
reputation
34:6, 51:10
request
10:2, 10:3,
10:4, 10:8,
10:12, 17:1,

20:18, 21:16,
23:11, 38:15
requested
10:12
requesting
54:6
requirement
17:8, 20:4
research
26:1, 32:12
resolution
48:6
resolve
12:7, 41:10,
43:1, 45:6,
45:17, 48:19,
50:4, 57:11
resolved
27:5, 47:9,
47:12
resort
45:11
resources
11:5
result
27:6
retaliation
11:15, 26:17,
27:8
retired
43:10
right
2:10, 6:14,
9:7, 10:13,
10:15, 20:5,
21:21, 22:1,
22:2, 34:12,
52:10, 54:1,
54:3, 57:2,
58:20
rights
15:13, 21:10,
24:17, 24:18,
49:21, 54:15
ringing
2:2, 2:18
risk
21:4

| | | | |
|---|---|---|---|
| road | 58:11 | sets | since |
| 34:22 | says | 8:9, 10:9 | 2:21, 26:11, |
| role | 2:13, 19:10, | settled | 28:12, 30:8, |
| 13:14, 14:15, | 22:3, 40:11, | 49:11 | 30:19, 31:7, |
| 38:4 | 56:17 | sexual | 54:10 |
| roughly | scheduled | 7:20, 8:7, | sitting |
| 33:8 | 6:20 | 11:7, 11:14, | 21:1 |
| route | school | 26:21 | situation |
| 11:21 | 28:13, 30:20 | sh | 5:15, 7:6, |
| run | scope | 27:17 | 15:6, 15:14, |
| 30:3 | 10:19, 11:13, | shall | 20:10, 20:21, |
| **S** | 14:10, 14:16, | 11:2 | 22:20, 37:10, |
| safety | 37:17, 50:12 | she'll | 42:11, 44:14, |
| 35:22 | section | 51:13 | 45:10 |
| said | 19:22 | sheryl | smart |
| 12:1, 12:13, | see | 39:10, 39:16, | 46:20 |
| 12:18, 13:16, | 13:12, 19:19, | 39:20, 40:9, | smith |
| 17:19, 19:14, | 21:6, 39:1, | 40:12, 40:19, | 56:2 |
| 21:11, 23:3, | 49:17, 58:4 | 41:1, 47:1, 47:6 | some |
| 24:12, 32:22, | seem | short | 5:13, 9:10, |
| 33:1, 35:5, | 47:5 | 6:10, 15:19, | 11:6, 13:2, |
| 36:7, 40:3, | seems | 15:22, 24:6 | 15:11, 16:17, |
| 40:17, 41:7, | 12:12, 51:22 | shortcomings | 19:2, 20:15, |
| 44:15, 47:17, | seen | 24:11 | 21:4, 24:11, |
| 51:6, 53:3, | 29:8, 30:22 | shorter | 26:2, 32:8, |
| 53:22, 55:18, | send | 17:9 | 33:6, 39:15, |
| 55:22 | 19:1, 54:5, | should | 40:16, 42:2, |
| same | 54:9 | 2:9, 7:1, | 43:11, 53:1, |
| 29:22, 33:8, | sending | 22:19, 27:3, | 53:15, 55:6 |
| 34:14, 40:18, | 54:21 | 27:17, 29:12, | somebody |
| 45:17, 47:5, | sense | 38:7, 52:5, | 8:13, 37:5, |
| 47:8, 49:13 | 15:15, 22:17, | 57:21 | 51:8, 51:9, |
| satisfaction | 23:11, 23:19, | shouldn't | 52:8, 53:12 |
| 48:20 | 40:13, 42:7, | 13:8, 26:19 | someone |
| saw | 42:8, 46:12, | side | 52:16 |
| 19:2 | 52:14, 52:15 | 27:14, 37:22, | something |
| say | sent | 50:10, 50:15 | 9:7, 10:5, |
| 13:7, 19:18, | 12:2, 44:15 | sides | 12:15, 17:4, |
| 20:8, 26:16, | separately | 49:13, 49:15 | 17:6, 17:21, |
| 26:19, 27:20, | 29:13 | sign | 19:10, 20:12, |
| 42:15, 44:12, | series | 57:9 | 23:17, 28:3, |
| 47:21, 54:7 | 10:11 | signature | 28:20, 57:18 |
| saying | serious | 2:22 | somewhere |
| 4:11, 14:6, | 8:6, 33:15 | signature-mig2k | 19:3 |
| 14:8, 21:6, | services | 60:15 | soon |
| 22:7, 35:3, | 53:1 | simplest | 58:15, 58:16 |
| 41:15, 45:19, | set | 13:16 | sorry |
| | 44:13 | simultaneously | 4:6, 35:16, |
| | | 52:2 | |

58:9
**sorts**
41:5
**sound**
18:17, 23:9
**sounded**
33:12
**sounding**
5:9
**sounds**
58:19
**south**
56:4
**speak**
2:12, 14:21,
22:21, 23:5
**speaking**
2:4, 4:10, 12:3
**specifically**
12:17, 13:4
**specify**
56:15
**speed**
32:2
**spent**
3:15, 3:19
**spoke**
44:8, 44:13
**spoken**
12:9, 12:18,
14:1
**spot**
37:12
**staff**
48:10
**stage**
49:12
**stake**
24:18
**start**
9:7, 49:22,
57:5
**started**
7:4, 7:5, 26:1,
30:8, 43:20,
44:2, 44:4,
44:5, 44:7,
50:17

**starts**
20:12
**states**
1:9
**status**
13:22, 55:13
**statute**
20:9
**step**
45:6, 54:22
**steps**
25:3
**still**
38:16, 50:21
**stop**
38:8
**stories**
33:11, 33:19
**story**
33:7
**structural**
24:11
**structure**
33:18
**struggled**
29:12
**stuff**
31:18, 35:10,
37:3, 54:11
**successful**
53:11
**successfully**
48:5
**suffice**
44:12
**suggested**
5:11
**suggestion**
53:15
**supervision**
12:20
**supervisor**
27:4
**supporting**
60:4
**supposed**
25:21, 56:12
**supreme**
5:4, 28:15,

40:14
**sure**
3:6, 3:13, 4:8,
4:16, 6:2, 6:17,
7:6, 8:20,
11:11, 15:3,
15:12, 19:8,
21:2, 25:2,
37:1, 38:6,
40:9, 42:18,
46:14, 48:16,
49:2, 49:3,
49:4, 53:10,
54:10, 55:2,
55:4, 55:15
**surprised**
13:6, 27:18,
27:22, 44:15

### T

**tail**
46:16
**take**
7:15, 8:17,
11:22, 47:19,
59:2
**taken**
25:3, 26:12
**takes**
16:9
**taking**
15:13, 51:22,
57:4
**talk**
2:5, 6:6,
20:19, 30:6,
41:20, 42:19,
46:21
**talked**
9:10, 12:13,
54:10
**talking**
9:12, 48:22,
57:8, 57:12
**tape-recording**
60:9
**technicality**
21:5

**telework**
31:10
**tell**
11:9, 28:3,
31:12, 34:13,
40:12, 41:14,
42:16, 47:22,
48:4, 57:15
**telling**
35:5
**tells**
47:7
**temporary**
31:10
**tenure**
46:16
**terms**
18:12, 47:22,
56:9
**text**
13:11
**thank**
2:11, 2:16
**thanks**
4:6, 58:20,
58:21, 59:3
**thing**
4:19, 6:6, 7:2,
14:10, 19:18,
20:9, 23:2,
24:14, 26:18,
38:5, 38:11,
38:12, 40:18,
45:17, 47:8,
51:19, 52:3,
53:22, 55:5,
55:9, 56:7
**things**
7:11, 7:17,
10:11, 13:18,
15:9, 19:12,
20:10, 24:9,
27:4, 27:11,
27:16, 29:22,
30:16, 34:14,
35:22, 36:11,
39:16, 40:22,
41:1, 41:6,

42:7, 42:9,
42:13, 44:10,
47:1, 47:2,
47:10, 47:19,
50:10, 51:5,
51:21, 55:6,
55:18
**think**
3:1, 3:2, 8:17,
8:19, 9:4, 12:7,
16:19, 17:8,
18:3, 18:5,
19:14, 20:16,
21:8, 21:14,
21:21, 22:1,
22:8, 23:4,
24:1, 24:2,
24:14, 24:18,
24:22, 25:13,
25:18, 28:2,
29:14, 29:20,
31:4, 31:10,
34:10, 35:1,
35:21, 37:4,
42:13, 43:11,
45:15, 45:16,
45:21, 45:22,
46:7, 46:8,
47:2, 47:4,
47:7, 47:8,
48:19, 49:5,
49:17, 50:5,
50:6, 50:7,
50:8, 50:9,
51:1, 51:4,
51:17, 53:4,
53:6, 53:14,
53:15, 53:21,
54:4, 54:22,
55:6, 55:18,
56:8, 56:9,
57:7, 57:8,
57:12, 57:14,
57:22, 58:3,
58:11
**thinking**
3:20, 49:1,
52:17, 57:21

**thought**
4:21, 7:9,
19:11, 25:11,
25:21, 26:4,
31:22, 36:5,
36:7, 36:16,
39:22, 40:6,
52:5
**thoughts**
6:4
**threatened**
37:7
**three**
30:21, 31:6
**three-part**
10:1
**through**
5:13, 5:15,
5:16, 23:21,
27:12, 30:10,
30:13, 31:17,
42:14
**throughout**
5:10
**time**
3:2, 3:5, 6:10,
6:18, 7:11,
9:10, 14:4,
15:4, 15:13,
19:21, 20:12,
20:17, 20:18,
21:2, 22:10,
29:15, 33:8,
38:10, 46:7,
53:15, 54:7,
57:4
**timeframe**
56:11
**timeliness**
54:19
**timely**
23:17
**times**
44:14
**together**
39:8, 47:12,
48:22, 49:16
**told**
3:7, 12:2,

13:4, 13:10,
14:1, 14:17,
32:10, 37:2,
40:9, 40:19,
42:22, 44:8,
47:6, 48:8
**tony**
7:5, 7:18,
9:12, 11:18,
12:2, 13:10,
14:12, 17:15,
33:7, 34:4,
34:7, 34:15,
34:17, 35:12,
39:1, 39:21,
40:2, 41:9,
42:22, 44:2,
44:14, 48:8,
48:16, 52:6,
52:12, 53:3
**tony's**
7:20, 48:1
**too-er**
37:6
**took**
37:22, 45:5
**top**
6:13, 6:15,
21:19, 31:18
**touch**
58:15
**track**
26:12, 34:5,
51:22
**trained**
32:2
**training**
26:2
**transcribed**
1:22
**transcriber**
60:1, 60:2
**transcription**
60:9
**transfer**
2:14, 2:15,
36:17
**transferring**
36:8

**transition**
4:1, 30:1,
30:10
**transparent**
51:14
**trappist**
3:7
**trial**
12:19, 32:9
**trials**
32:7
**tried**
5:16, 27:2,
27:6, 30:6, 45:2
**trigger**
10:6
**triggered**
44:16
**triggers**
7:21, 15:11
**troubled**
28:5, 33:13
**troubling**
29:9
**true**
60:8
**trust**
35:13, 39:6,
39:7, 41:5,
51:13, 52:7,
52:9, 52:14,
53:9
**truth**
12:2, 29:1
**try**
12:6, 24:9,
24:13, 27:4,
44:1, 45:6,
49:6, 53:1
**trying**
6:7, 8:19,
13:7, 20:22,
23:20, 30:15,
31:4, 36:1,
38:16, 38:20,
40:21, 41:9,
42:16, 43:12,
45:15, 45:16,

45:17, 46:2,
48:18, 49:5,
54:18
**two**
7:10, 7:16,
50:10, 51:5,
52:16
**twofold**
6:14
**type**
23:16, 26:7,
32:3
**types**
28:1, 28:6

**U**

**uh-huh**
5:3, 5:22, 9:8,
17:16, 54:16
**ultimately**
25:1, 25:15,
26:7, 57:14
**um**
24:8
**un**
12:7
**under**
5:8, 7:17,
8:10, 9:17,
10:2, 10:9,
10:21, 10:22,
11:18, 12:20,
15:5, 16:13,
20:18, 27:10,
30:12, 37:14,
60:3
**understand**
7:3, 12:1,
13:7, 18:20,
19:11, 20:21,
37:13, 38:9,
38:14, 40:13,
42:13, 45:20,
45:21, 46:11,
47:2
**understandable**
15:17, 33:2
**understanding**
24:3, 25:20,

27:3, 47:11,
56:11
**understands**
37:1
**unfairness**
42:8
**unfolded**
38:6
**unfortunate**
4:22, 5:18
**unit**
8:11, 11:1
**united**
1:9
**universe**
28:7
**unprofessional**
27:16, 32:19
**until**
16:14, 34:18,
35:9
**update**
55:13

**V**

**vacation**
3:11
**versus**
32:7
**violation**
17:5, 19:20
**virginia**
3:15, 3:16
**voluntary**
31:13

**W**

**wait**
16:17
**walking**
3:20
**walls**
41:2
**walter**
39:10
**want**
4:10, 13:8,
13:20, 15:3,

15:12, 20:14,
21:2, 21:8,
24:21, 24:22,
25:11, 26:18,
26:19, 27:19,
29:2, 31:21,
32:14, 41:12,
41:13, 41:14,
42:5, 43:22,
44:22, 47:7,
47:8, 48:14,
48:17, 49:2,
49:3, 49:7,
49:8, 49:14,
50:1, 54:10,
55:1, 55:19,
58:12
**wanted**
6:6, 20:19,
26:7, 28:12,
28:21, 30:2,
30:3, 32:8,
36:3, 39:17,
39:20, 48:9
**wanting**
41:21
**wants**
2:12
**warranted**
34:22
**way**
4:9, 4:15, 8:8,
13:16, 14:9,
15:10, 20:11,
21:22, 27:21,
39:1, 46:1,
49:21, 52:1,
54:20
**ways**
49:5, 57:11
**we'll**
36:18, 40:7,
40:11, 55:16
**we're**
40:20, 47:7,
55:13
**we've**
54:10

**week**
3:8, 3:15,
3:20, 54:1, 55:9
**weeks**
6:1
**welcome**
2:17
**went**
3:7, 30:6,
42:21, 42:22,
43:21, 45:9
**weren't**
19:12
**west**
3:16
**whatever**
4:11, 20:18,
30:8, 36:17,
37:14, 38:21,
43:10, 57:16
**whenever**
16:12, 51:15
**whether**
14:14, 28:9,
29:12, 42:20
**whole**
10:10, 14:9,
29:18, 32:7,
38:5, 38:16
**willing**
8:16, 13:3,
40:3, 40:10,
48:9, 57:10
**wish**
49:15, 49:16
**within**
17:1, 17:5,
19:10, 19:20,
21:17
**without**
32:16
**wo**
27:14
**wonder**
53:11
**wondering**
49:20, 49:21,
52:1, 52:15,

52:22
**work**
5:16, 12:15,
12:19, 13:4,
23:21, 26:7,
28:11, 32:4,
36:13, 36:17,
46:15, 48:5,
48:22, 49:17,
49:22, 52:16
**worked**
5:8, 26:9,
30:7, 42:2, 45:3
**working**
6:8, 12:6,
22:13, 24:1,
24:9, 47:12
**works**
38:17
**world**
31:22
**worries**
53:10
**worse**
43:4
**worst**
35:4
**wouldn't**
28:22
**wow**
3:9
**writing**
26:2, 32:12
**wrong**
14:7, 29:1
**wrongful**
7:3, 8:1, 8:7,
9:18, 16:1,
21:11, 25:2,
38:4, 38:11

| Y |
|---|
**yeah**
2:20, 3:10,
3:13, 3:14, 4:3,
4:5, 5:7, 17:19,
18:4, 18:16,
18:21, 19:3,

19:5, 19:6,
19:14, 25:6,
25:9, 34:10,
38:7, 40:6,
46:8, 48:12,
50:5, 55:1,
56:6, 56:14,
56:20, 57:7,
58:10
**year**
29:17
**years**
16:17, 46:15
**yep**
58:21
**yo**
49:4

| 1 |
|---|
**10**
9:19, 10:2,
10:9, 11:18,
16:13, 16:17,
16:22, 21:15,
60:17
**1042**
1:8
**180**
22:15, 24:13
**180905**
1:8

| 2 |
|---|
**2023**
60:17

| 3 |
|---|
**30**
15:12, 17:5,
17:9, 19:20,
20:4, 21:15,
21:16, 21:17,
24:12

| 4 |
|---|
**479402**
1:20

| 5 |
|---|
**59**
60:8

| 6 |
|---|
**60**
1:21

US00007692