# Exhibit 40

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FOURTH SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants, by and through undersigned counsel, hereby respond to Plaintiff's Fourth Set of Interrogatories:

Defendants' objections and responses are based on information known to Defendants at this time and are made without prejudice to additional objections should Defendants subsequently identify additional grounds for objection. The information submitted herewith is being provided in accordance with the Federal Rules of Civil Procedure, which generally permit the discovery of matters not privileged that are relevant to the claims or defenses in this civil action, and that are proportional to the reasonable needs of this case. Fed. R. Civ. P. 26(b)(1). Accordingly, Defendants do not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or any other appropriate ground. Defendants reserve the right to supplement or revise any of these specific objections and responses.

## OBJECTIONS AS TO DEFINITIONS AND INSTRUCTIONS, AND OTHER OBJECTIONS THAT APPLY TO ALL INTERROGATORIES

1. The following General Objections apply to and are incorporated in each individual response.

1

2.    Defendants object to the definitions in Plaintiff's interrogatories to the extent that the definitions conflict with or purport to expand upon Defendants' obligations under the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the Western District of North Carolina.

3.    Defendants object to the interrogatories to the extent that they seek information that is protected by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, the law enforcement privilege, or any other applicable privilege or protection.

4.    Defendants object to the interrogatories to the extent that they are overly broad or attempt to impose obligations that are unduly burdensome, expensive, or oppressive.

5.    Defendants object to the interrogatories to the extent that they are vague and ambiguous.

6.    Defendants object to the definition of "concern or concerning (or relate or relating)" as "in addition to their usual and customary meanings, referring to, pertaining to, addressing, discussing, describing, regarding, evidencing, constituting, or otherwise having any logical or factual connection with the subject matter addressed." Defendants will construe the terms "concern or concerning (or relate or relating)" with their customary and usual meanings.

7.    Defendants object to Definition 7 to the extent that it seeks individuals' contact information and/or confidential information. To the extent that an individual is identified herein, Plaintiff may contact that individual through undersigned counsel or, if no longer employed by the Government, seek their contact information from undersigned counsel as needed.

8.    Defendants object to Definition 8 to the extent it seeks information not required under the Federal Rules of Civil Procedure and/or inconsistent with how the documents are kept in the usual course of business.

2

9.     Defendants object to Instruction 1 as overly broad, unduly burdensome, and because it seeks information not relevant to any claim or defense. Unless otherwise stated, Defendants will limit their responses to information available from July 21, 2017 through September 9, 2019 (hereinafter referred to as "the relevant time period").

## SPECIFIC OBJECTIONS AND RESPONSES

**Interrogatory No. 10**: Describe, in detail, all training, if any, provided to employees of the Federal Public Defender Office regarding the prevention of employment discrimination, harassment, hostile work environment, retaliation, and complaint procedures (including notice of any applicable EDR plan), including the date and place of each training session (organize response by employee). Identify each person who conducted each training session, materials provided, and the persons who attended, and state whether attendance was mandatory.

**Objections and Response to Interrogatory No. 10**:

Defendants object to this interrogatory as seeking irrelevant information, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information about trainings provided to each and every employee of the Federal Defender's Office and to the extent that it requests Defendants to identify "each person who conducted each training session, materials provided, and the persons who attended, and state whether attendance was mandatory." Defendants will limit their response to office-wide trainings on the identified topics during the relevant time period.

Subject to and without waiving the foregoing objections, Defendants provide the following response:

3

The Federal Defender's Office participated in a district-wide training in March 2019 called "Preventing Workplace Harassment." The Federal Judicial Center conducted the training. The training was mandatory for all staff and managers at the Federal Defender's Office.

**Interrogatory No. 11**: Describe, in detail, all training, if any, provided to Hon. Roger Gregory (EDR chief judge/presiding officer), James Ishida (EDR Coordinator), Jill Langley (Judicial Integrity Officer), Anthony Martinez (Unit Executive), J.P. Davis (First Assistant), Josh Carpenter (Appellate Chief), Peter Adolf (Team Leader), Bill Moormann (Administrative Officer), Ed Smith (Mediator), and Heather Beam (Investigator) regarding the prevention of employment discrimination, harassment, hostile work environment, retaliation, and complaint procedures (including workplace misconduct investigations and EDR proceedings), including the date and place of each training session (organize response by individual). Identify each person who conducted each training session, materials provided, and the persons who attended, and state whether attendance was mandatory.

**Objections and Response to Interrogatory No. 11**:

Defendants object to this interrogatory as seeking irrelevant information, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information about trainings provided to Joshua Carpenter, Peter Adolf, and Bill Moormann, and to the extent that it requests Defendants to identify "each person who conducted each training session, materials provided, and the persons who attended, and state whether attendance was mandatory." The interrogatory is also unduly burdensome because Defendants do not necessarily have records reflecting every training received by the listed individuals on the identified topics.

4

Subject to and without waiving the foregoing objections, Defendants provide the following response:

Chief Judge Gregory's training on the identified subjects during the relevant time period includes but is not necessarily limited to attending the Fourth Circuit Workplace Conduct Conference in May 2019 and a workshop for judges of the Fourth Circuit in June 2019, which included a session on "Creating and Maintaining an Exemplary Workplace."

James Ishida's training on the identified subjects during the relevant time period includes but is not necessarily limited to attending the Fourth Circuit Workplace Conduct Conference in May 2019.

Jill Langley's training on the identified subjects during the relevant time period includes but is not necessarily limited to the following:

- Workshop for Ninth Circuit EDR Coordinators (September 2019)

- ABA Book: The Shield of Silence: How Power Perpetuates a Culture of Harassment and Bullying in the Workplace (May 2019)

- ABA Book: Zero Tolerance: Best Practices for Combating Sex-Based Harassment (December 2018)

- Tenth Circuit Court of Appeals Training by an Employment Lawyer on Workplace Respect (October 2018)

- FJC: Ethics for Federal Judicial Law Clerks and Employees (September 2018)

- FJC's Preventing Workplace Harassment (Summer and Fall of 2018)

Anthony Martinez's training on the identified subjects during the relevant time period includes but is not necessarily limited to a March 2019 training called "Preventing Workplace Harassment" conducted by the Federal Judicial Center, and the Fourth Circuit Workplace Conduct Conference in May 2019.

J.P. Davis's training on the identified subjects during the relevant time period includes but is not necessarily limited to an online CLE training on or about January 1, 2019 titled "'Time's Up' and #MeToo: Considerations of the Benefits and Ethics of an Early Private Settlement," a March 2019 training called "Preventing Workplace Harassment" conducted by the Federal Judicial Center, and the Fourth Circuit Workplace Conduct Conference in May 2019.

Heather Beam's training on the identified subjects during the relevant time period includes but is not necessarily limited to attending human resources academies, including one involving a session on preventing workplace harassment in August 2018. Ms. Beam also attended a training on "Preventing Workplace Harassment" conducted by the Federal Judicial Center in March 2019.

**Interrogatory No. 12**: Describe, in detail, the qualifications (e.g., experience, education, and/or training) of Heather Beam (EDR Investigator) to perform workplace misconduct investigations and make associated recommendations, including for purposes of EDR proceedings.

**Objections and Response to Interrogatory No. 12**:

Defendants object to the word "qualifications" as ambiguous and vague.

Subject to and notwithstanding the forgoing objection, Defendants offer the following response: Heather Beam served as a human resources specialist for the U.S. District Court and probation office of the Western District of North Carolina since 2015. She worked as a human resources specialist at the U.S. Bankruptcy Court for the Northern District of Indiana from 2008-2015. She has a Master of Business Administration in Human Resources Management from the Indiana Institute of Technology. She has received training at HR academies covering various aspects of human resources, including discrimination, harassment, and retaliation.

6

**Interrogatory No. 13**: Describe, in detail, all steps or actions, if any, Defendants (organize response by Defendant) took to prevent harassment, discrimination, hostile work environment, and retaliation against Plaintiff after she, or others (*see*, *e.g.*, Bates No. US1382, US5535), notified Defendants of the information and conduct described in Plaintiff's EDR complaint, both before and after the filing of her EDR complaint.

**Objections and Response to Interrogatory No. 13**:

Defendants object to this interrogatory because it is vague and ambiguous, including as to the phrase "steps or actions" and "information and conduct described in Plaintiff's EDR complaint[.]"

Defendants further object to the interrogatory to the extent it suggests Plaintiff experienced harassment, discrimination, hostile work environment, or retaliation in connection with her employment at the Federal Defender's Office.

Subject to and without waiving the foregoing objections, Defendants provide the following response:

Anthony Martinez / Federal Defender's Office for the Western District of North Carolina

In July 2018, Mr. Martinez assigned a different mentor to Plaintiff, removed Plaintiff from J.P. Davis's supervisory chain of command, and instructed Mr. Davis not to email, text, or meet with Plaintiff at all until further notice. In August 2018, Mr. Martinez advised James Ishida of Plaintiff's claim of sexual harassment, concurred in the appointment of an investigator selected by Mr. Ishida to conduct an investigation into Plaintiff's claims, and authorized Plaintiff to telework during the pendency of the investigation.

James Ishida / U.S. Court of Appeals for the Fourth Circuit

7

In August 2018, Mr. Ishida selected Heather Beam as an investigator to investigate Plaintiff's claim of sexual harassment. The investigation was later expanded to include Plaintiff's claim of retaliation by Mr. Martinez. From August 2018 until March 2019, Mr. Ishida coordinated Plaintiff's EDR process, including by counseling Plaintiff about the process, arranging mediation, and speaking with Plaintiff on multiple occasions to answer questions and to provide an opportunity for Plaintiff to raise any concerns. Mr. Ishida also asked Plaintiff on multiple occasions to articulate what additional actions she needed Mr. Martinez to take for her to feel safe, but Plaintiff did not identify any such actions.

Chief Judge Gregory / U.S. Court of Appeals for the Fourth Circuit

In August 2018, Chief Judge Gregory authorized an investigation to assess whether there had been misconduct and whether an action was necessary to address any findings of misconduct. From August 2018 until March 2019, Chief Judge Gregory, as necessary, conferred with Mr. Ishida and ruled on requests Plaintiff made in the EDR process.

**Interrogatory No. 14**: Describe, in detail, whether Defendants dispute that Plaintiff's next best employment is in indigent criminal defense work and state the basis for Defendants' position.

**Objections and Response to Interrogatory No. 14**:

Defendants object to this interrogatory because it is vague and ambiguous, including as to the term "next best employment."

Subject to and without waiving the foregoing objection, Defendants provide the following response: Defendants dispute that Plaintiff's next best employment is limited to indigent criminal defense work. Plaintiff has the skills and experience to apply for and potentially obtain employment as an attorney at a private law firm or in house counsel at a company. If she were to

8

be hired, such employment likely would offer more favorable employment terms, including significantly higher compensation, than indigent criminal defense work.


**Interrogatory No. 15**: Describe, in detail, whether the pay changes approved in March 2019 for Jared Martin associated with his conversion from an R&W attorney to an AFD in August 2018, see Bates No. US 2705, would have also been applicable to Plaintiff at the time of her conversion from an R&W attorney to an AFD and state the resulting pay adjustment that she should have received, and, if disputed, describe, in detail, whether Plaintiff would have been eligible for a grade-level promotion to JSP Grade 15 in August 2018 but for her conversion to an AFD position.

**Objections and Response to Interrogatory No. 15**:

Subject to and notwithstanding the foregoing general objections, Defendants provide the following response: The pay change approved in March 2019 for Mr. Martin was not directly associated with his conversion from an R&W attorney to an AFD in August 2018. Instead, the pay change was intended to remedy the FDO's determination that Mr. Martin was highly underpaid in relation to other AFDs for his over ten years of experience. Additionally, all pay decisions for AFDs are based on their individual level of professional attorney experience and performance and are not directly applicable to other AFDs. Plaintiff was properly compensated when she was reclassified to an AFD commensurate with her experience level and the AFD pay scale. Plaintiff would have been eligible for a grade-level promotion to FD-15 on or about August 21, 2018, but all grade-level promotions are awarded at the discretion of the Federal Defender.

**Interrogatory No. 16**: Identify each client (entities or individuals) the Office of General Counsel (OGC) provided legal advice regarding Plaintiff's workplace misconduct allegations and EDR proceeding, including identifying OGC counsel (e.g., Sheryl Walter, William Meyers, Shirley

9

Sohrn, etc.) and respective client entities or individuals provided legal advice by named OGC counsel, and any applicable procedures used to address actual or potential conflicts of interest or waiver of confidentiality.

**Objections and Response to Interrogatory No. 16**:

Defendants object to this interrogatory as irrelevant, overly burdensome and disproportionate to the needs of the case. Whether and to whom the Office of General Counsel (OGC) may have provided legal advice has no bearing on Plaintiff's procedural due process or equal protection claims. Two of the attorneys identified by Plaintiff, Sheryl Walter and Shirley Sohrn, no longer work at the OGC, and it would be burdensome to contact them to identify who they provided advice to regarding Plaintiff's workplace misconduct allegations and EDR proceeding. Any marginal relevance of this interrogatory is outweighed by the burden it imposes on Defendants.

Defendants further object to the phrase "any applicable procedures used to address actual or potential conflicts of interest or waiver of confidentiality" as ambiguous and vague.

Defendants object to this interrogatory to the extent that it requests information subject to the attorney-client privilege, including but not limited to information about advice that OGC gave concerning potential conflicts of interest or waivers of confidentiality.

Defendants object to the interrogatory in its entirety.

**Interrogatory No. 17**: Identify each individual or entity provided information regarding Plaintiff's workplace misconduct allegations and EDR proceeding by Defendants or their employees or agents (*see, e.g.*, Bates Nos. US3026, US4099, US4212, US4163, US4212, US4328, US4445–46) and state the basis for the disclosure (*see* EDR Plan Ch. X, § 4 ("The Court or employing office

shall protect the confidentiality of allegations filed under this Plan to the extent possible. However, information about allegations filed under this Plan shall be shared on a need-to-know basis. Records relating to violations under this Plan shall be kept confidential on the same basis.").

**Objections and Response to Interrogatory No. 17**:

Defendants object to this interrogatory to the extent that it requests information subject to any privilege or restriction on the release of information, including the attorney-client privilege and the deliberative process privilege. Specifically, this request appears to seek information regarding consultations between the AO Office of General Counsel and their clients regarding Ms. Strickland's EDR matter subject to the attorney client privilege as well as internal predecisional and deliberative materials regarding the processing of Ms. Strickland's EDR matter subject to the deliberative process privilege.

Defendants further object to this interrogatory as overly burdensome and disproportionate to the needs of the case. The interrogatory asks for information provided by "Defendants or their employees or agents." This could be read to require Defendants to discuss the interrogatory with the approximately 50 current FDO employees, every employee of the Fourth Circuit, and countless employees and offices in the Administrative Office of the U.S. Courts, the vast majority of which are unlikely to have responsive information. Requiring such a broad response would pose a disproportionate burden on Defendants while being unlikely to provide any relevant information allowing Plaintiff to support her claims.

In addition, the interrogatory is written so as not to place any limits on listing the number of disclosures relating to Ms. Strickland's EDR matter, even if the disclosures were between a limited number of individuals. As evidenced by the hundreds of email communications already produced to Plaintiff in response to her requests for production, certain key individuals had

numerous communications regarding the EDR process. Requiring Defendants to list each disclosure and the basis for such a disclosure would be enormously burdensome and still unlikely to provide any relevant information allowing Plaintiff to support her claims given that Plaintiff has already received the relevant email communications.

Defendants further object to Plaintiff's use of the phrases "workplace misconduct allegations" and "EDR proceeding" as they are ambiguous and vague.

Defendants object to the interrogatory in its entirety.

**Interrogatory No. 18**: Describe, in detail, the basis for Jill Langley's "interpretation," as a "primary resource for the entire judiciary on the Model Employment Dispute Resolution Plan," that a chief judge or designated judicial officer has "authority," pursuant to the Judicial Conference of the United States' September 2010 policy statement, to order remedies under the Model EDR Plan against Federal Public Defender organizations established under the Criminal Justice Act. ECF 101-2 at ¶ 12, *see* 135-2 at ¶ 9, Bates No. US2207 ("I'd like to better understand if FPDs are adequately protected by EDR remedies.").

**Objections and Response to Interrogatory No. 18**:

Defendants object to Plaintiff's reference to the "basis" for Jill Langley's interpretation as ambiguous and vague.

Subject to and notwithstanding the forgoing objection, Defendants offer the following response: Jill Langley's "interpretation" as a "primary resource for the entire judiciary on the Model Employment Dispute Resolution Plan" that a chief judge or designated judicial officer has "authority," pursuant to the Judicial Conference of the United States' September 2010 policy statement, to order remedies under the Model EDR Plan against Federal Public Defender organizations is based on her personal experience advising on EDR matters over fifteen years,

12

various provisions in the Model EDR Plan in effect in 2018, and other sources of authority. Specifically, the Plan states in Chapter I § 2 that its provisions apply to the unit executive and staff of the Federal Public Defenders within the Fourth Circuit. Chapter X § 10(B)(2)(f) states that remedies may be provided in accordance with § 12 of Chapter X, and Chapter X § 12 states that "where judicial officers acting pursuant to § 10 . . . of this EDR Plan find that a substantive right protected by this Plan has been violated, they may order a necessary and appropriate remedy." Further, the Judicial Conference of the United States in September 2010 stated that an EDR presiding judicial officer has the authority to "compel the participation of or impose remedies upon . . . the employing office which is the respondent in such matters," and Federal Public Defender Offices are employing offices. And 18 U.S.C. § 3006A(g)(2) permits the removal of a Federal Public Defender "by the court of appeals of the circuit for incompetency, misconduct in office or neglect of duty," which may include ignoring a remedy ordered by a presiding judicial officer.

**Interrogatory No. 19**: Describe, in detail, the basis for Ed Smith's statement, in his role as EDR mediator, that he did not "think a judge is going to micromanage [the FDO] and tell a federal defender how to do his job and run [the FDO]. They'd be better off terminating him." *See* Defendants' Response to Request No. 6.

**Objections and Response to Interrogatory No. 19**:

Defendants object to Plaintiff's citation to "Defendants' Response to Request No. 6" as ambiguous and vague because Plaintiff has not defined "Request," and there have been myriad discovery requests exchanged and received during this litigation. Defendants' response is drafted as though excluding this citation.

13

Subject to and notwithstanding the forgoing objection, Defendants offer the following response: During mediation, Mr. Smith attempted to convey to Ms. Strickland that she had more flexibility to craft a settlement agreement reflecting her priorities than she would at a hearing following the filing of a formal complaint, where the presiding judicial officer would decide what, if any, remedies were appropriate. In his role as a mediator, Mr. Smith viewed it as his job to see if he could get the parties to agree on a negotiated resolution. It was Mr. Smith's opinion that a judge presiding over a hearing on a formal complaint would fashion the remedy the judge felt was appropriate after hearing the evidence. In Mr. Smith's opinion, the judge would not, as Mr. Smith was doing, negotiate between the parties to reach a remedy. Responding to Ms. Strickland's concerns about the relief available at a final hearing, Mr. Smith offered his opinion that Ms. Strickland could get more specific relief in line with her personal desires, such as partial telework, by negotiating directly with the Federal Defender. In making this point, he stated: "Therefore I think in drafting a settlement agreement that binds [the Federal Defender], you have the better ability to work these things in there, because I don't think the judge is going to micromanage this office and tell a federal defender how to do his job and run his office. They'd be better off terminating him. They would – to me, terminate him first."

**Interrogatory No. 20**: Describe, in detail, the basis for James Ishida's statement in his sworn declaration that at a final EDR hearing, a presiding officer would be the "decisionmaker" regarding Plaintiff's EDR complaint and any remedies. ECF 135-1 at ¶ 9.

**Objections and Response to Interrogatory No. 20**:

Defendants object to the interrogatory as confusing, vague, and ambiguous because the cited paragraph (paragraph 9) does not exist in Mr. Ishida's declaration. Defendants will construe

14

the interrogatory as referring to paragraph 4 of Mr. Ishida's declaration at ECF No. 135-1. Defendants further object to this interrogatory to the extent that it requests information subject to any privilege or restriction on the release of information, including the attorney-client privilege, the attorney work product doctrine, and the deliberative process privilege. To the extent Mr. Ishida's statement was based on any privileged conversations, the response below does not reference those conversations.

Subject to and notwithstanding the foregoing objections, Defendants provide the following response: Mr. Ishida's statement was based, first, on the terms of the Fourth Circuit's Employment Dispute Resolution Plan ("EDR Plan"). The EDR Plan in effect at the time of Ms. Strickland's EDR proceeding states in part:

> If the Chief Judge or designee ("judicial officer") does not dismiss the complaint under the preceding subsection, the presiding judicial officer shall hold a hearing on the merits of the complaint unless he or she determines that no material factual dispute exists.

EDR Plan, Ch. X § 10(B)(1).

In addition, the EDR Plan states: "remedies may be provided in accordance with § 12 of this Chapter where the presiding judicial officer finds that the complainant has established by a preponderance of the evidence that a substantive right protected by this Plan has been violated[.]" *Id*., Ch. X § 10(B)(2)(f). Section 12 provides: "[w]here judicial officers acting pursuant to § 10 or § 11 of this Plan find that a substantive right protected by this Plan has been violated, they may order a necessary and appropriate remedy." *Id*., Ch. X § 12(A).

In addition to the terms of the EDR Plan itself, Mr. Ishida's statement was informed by his experience with other EDR matters. In particular, Mr. Ishida was involved in another EDR matter that proceeded to the formal complaint stage and where Chief Judge Gregory appointed a presiding judicial officer.

15

**Interrogatory No. 21**: Describe, in detail, whether, during Plaintiff's EDR proceeding or prior to her reclassification to an assistant federal defender, there was sufficient appellate (*i.e.*, non-trial) work to support at least .70 appellate assistant federal defender positions at the FDO, *see*, *e.g.*, Bates Nos. US856, US4156, and identify any assistant federal defenders employed by the FDO at that time who worked in part-time positions or had less than a full appellate caseload. Identify each part-time attorney and their full-time equivalency (e.g., .75) and the appellate caseload percentage of any attorney performing appellate work (e.g., .75).

**Objections and Response to Interrogatory No. 21**:

Defendants object to this interrogatory as ambiguous and vague because it does not explain whether the interrogatory is referring to "sufficient appellate (*i.e.*, non-trial) work" to support an *additional* .70 appellate assistant federal defender positions at the FDO or whether there was "sufficient appellate (*i.e.*, non-trial) work" to be covered by existing appellate assistant federal defender positions totaling .70 FTE.

Defendants further object to this interrogatory as ambiguous and vague because the reference to "part-time" positions and employees does not make it clear whether the interrogatory is seeking information about all part-time employees or just part-time employees who had at least some appellate caseloads.

Defendants further object to Plaintiff's citation to Bates No. US856 as ambiguous and confusing because that document is wholly unrelated to appellate or part time assistant federal defender positions. Because Defendants do not understand what relevance that document has to this interrogatory, Defendants have construed the interrogatory as not containing reference to Bates No. US856.

16

Defendants further object to this request as overly burdensome and disproportionate to the needs to the case to the extent it asks Defendants to calculate the appellate caseload percentage of any attorney performing appellate work (e.g., .75). Such calculations would have little, if any, relevance, to Plaintiff's claims and would impose an unnecessary burden on Defendants to look at every case that each assistant federal defender worked on to calculate the percentage of their appellate versus trial work.

Defendants further object to this request as providing an ambiguous time frame for the requested information. Defendants interpret this request as seeking information between August 1, 2017 and March 31, 2019.

Subject to and notwithstanding the forgoing objections, Defendants provide the following response: All appellate assistant federal defenders (AFDs) employed between August 1, 2017 – March 31, 2019 were required to undertake at least some trial litigation support work in addition to their appellate caseload. Each appellate AFD divided their time between three workstreams (direct appeals, trial support, and post-conviction). The percentage of each work stream assigned to each appellate AFD has varied over time depending upon the needs of the office, but all appellate AFDs have been expected to carry some load in each workstream.

Between August 1, 2017 – March 31, 2019, Ann Hester was the only part time employee of the FDO. Ann Hester is classified as a .75 FTE employee.


**Interrogatory No. 22**: Describe, in detail, the basis for not disqualifying Anthony Martinez (Federal Defender) from Plaintiff's EDR proceeding.

**Objections and Response to Interrogatory No. 22**:

Defendants object to this interrogatory because the phrases "in detail" and "EDR proceeding" are vague, ambiguous, and undefined. Defendants further object to this request on the basis that the scope of the request is vague and ambiguous as Ms. Strickland filed both an initial disqualification request and a renewed request, and it is not clear which request Plaintiff is referring to.

Subject to and without waiving the foregoing objections, Defendants provide the following response: Ms. Strickland's September 10, 2018 request to disqualify Mr. Martinez from her EDR proceeding was, at best, unclear. At the time of the initial request, Ms. Strickland's request did not precisely state what she was seeking Mr. Martinez to be disqualified from. Nevertheless, Chief Judge Gregory evaluated Ms. Strickland's request to disqualify Mr. Martinez from each step of an EDR proceeding under Chapter X and found that, on the basis of the facts presented in Ms. Strickland's letter, disqualification was not warranted at that time.

Specifically, with respect to the counseling and mediation stages, disqualification was not appropriate on the basis of the facts presented. As the basis for disqualification, Ms. Strickland's letter states that Mr. Martinez is "a subject of [Ms. Strickland's] wrongful conduct report" and is "named in [her] request for counseling". *See* US00000467. However, given the responsibility of a unit executive for approving personnel actions within his or her employing office, it is not unusual for the unit executive to be named in reports complaining about personnel actions. This fact itself is not a sufficient basis for disqualification. During the counseling period, James Ishida, the EDR Coordinator, conducted Ms. Strickland's counseling, not Mr. Martinez, and during the mediation period, Ed Smith served as the mediator. Mr. Martinez represented the named respondent employing office, which is an interested, and not neutral, party to an EDR matter. Further, if Mr. Martinez were to be disqualified during the counseling and mediation processes, it was unclear

18

who would have had the authority to take the employment actions Ms. Strickland might seek from her employing office as resolution.

In addition, the investigation under the EDR plan was initiated at the direction of Chief Judge Gregory. Further, the investigation was being performed by an independent investigator, Heather Beam. Disqualification of Mr. Martinez from the investigation process was thus unnecessary because he was participating only as a witness.

Finally, even though Ms. Strickland did not file a formal complaint under Chapter X, to the extent she sought to disqualify Mr. Martinez from the formal hearing stage, Ms. Strickland had not presented facts demonstrating that he should be disqualified from any formal hearing. Under the EDR plan, the presiding judicial officer would have been the final decisionmaker with regard to the hearing and any remedies. Mr. Martinez could not have served as the presiding judicial officer. Consequently, there would have been no need to disqualify Mr. Martinez from the hearing stage because Mr. Martinez's role at that point would have been as a witness and to represent the employing office.

For all these reasons, Ms. Strickland's September 10, 2018 request for disqualification was denied without prejudice to consider whether disqualification might be appropriate at a later date in the proceedings.

As for Ms. Strickland's renewed motion for disqualification dated February 24, 2019, like her initial request, it did not state facts that warranted disqualification of Mr. Martinez from the EDR proceeding. The EDR proceeding ended on March 11, 2019, when Ms. Strickland emailed James Ishida stating that she "no longer wish[ed] to pursue the Chapter X portion of [her] EDR claim." *See* US00003300.

**Interrogatory No. 23**: Identify and describe all final decisions relevant to Plaintiff's EDR proceeding, including, if applicable, citation to documentation of all final decisions (*see, e.g.*, Bates Nos. US628, US1434, US1790, US1794, US1803, US2589, US3302, US4038, US4068, US4073, US5312), associated with each assertion of "Deliberative Process Privilege" by Defendants in their "Privilege Log" served on March 24, 2023, including, if necessary, reference to any document produced in response to Request for Production 82.

**Objections and Response to Interrogatory No. 23**:

Defendants object to this request as seeking irrelevant information and because it is overbroad, unduly burdensome, and not proportional to the needs of the case. It is unnecessary for the government to identify a final decision in order to invoke successfully the deliberative process privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975) ("Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared."); *see also Moye, O'Brien, O'Rourke, Hogan & Pickert v. AMTRAK*, 376 F.3d 1270, 1280 (11th Cir. 2004).

**Interrogatory No. 24**: Describe, in detail, whether during the last five years, Anthony Martinez (Federal Defender), J.P. Davis (First Assistant), Peter Adolf (Team Leader), Bill Moormann (Administrative Officer) or Jill Langley (Judicial Integrity Officer) (a) has been fired/removed from, demoted from, or not reappointed to, judiciary employment or a supervisory position for any reason by a judiciary employer, (b) quit/resigned or withdrawn from any judiciary employment or supervisory position after being told that they would be fired or not retained by a judiciary employer, or (c) left/resigned a job or discontinued pursuit of any judiciary employment or

20

supervisory position by mutual agreement because of specific problems identified by a judiciary employer.

**Objections and Response to Interrogatory No. 24**:

Defendants object to this interrogatory to the extent that it requests information subject to any privilege or restriction on the release of information, including the attorney-client privilege, the attorney work product doctrine, and the deliberative process privilege.

Defendants further object to this interrogatory as overbroad, irrelevant, and not proportional to the needs of this case, to the extent that it seeks information about Peter Adolf and Bill Moormann.

Subject to and without waiving the foregoing objections, Defendants provide the following response: In 2021, Anthony Martinez was not reappointed to the position of Federal Defender for the Western District of North Carolina. In 2022, J.P. Davis requested to no longer serve in the role of First Assistant at the Office of the Federal Defender for the Western District of North Carolina, but not for any reasons described in this interrogatory, and the Federal Defender approved that request. In 2020, Jill Langley resigned from her position as Judicial Integrity Officer, but not for any reasons described in this interrogatory, and continued judiciary employment as Director of Workplace Relations for the Eighth and Tenth Circuits.

**Interrogatory No. 25**: Identify years of post-law school legal experience (including describing job responsibilities) prior to CDO/FDO employment, years of service at CDO/FDO, and current grade level and total salary of all attorneys currently employed by the Appellate Unit of the FDO, all attorneys who have served as Research and Writing Attorneys in the CDO/FDO during the past

21

ten years, and all attorneys currently employed by the FDO who have ever served as Research and Writing Attorneys.

**Objections and Response to Interrogatory No. 25**:

Defendants object to this interrogatory as seeking irrelevant information to the extent it seeks the "current grade level and total salary" of the attorneys referenced in this request. Defendants further object to the interrogatory as seeking irrelevant information, unduly burdensome, and not proportional to the needs of this case to the extent it seeks a description of "job responsibilities" of the attorneys referenced in this request. Defendants further object to this interrogatory as vague and ambiguous, including as to the term "CDO/FDO." Defendants will interpret that term as referring to the Federal Defender's Office for the Western District of North Carolina and its predecessor entity. Defendants further object to the term "legal experience" as vague and ambiguous. Defendants will interpret that term as referring to work as an attorney or similar role, without including experience prior to graduating from law school that may have been credited towards determining an employee's pay level.

Subject to and without waiving the foregoing objections, Defendants provide the following response:

**The following response is CONFIDENTIAL and is subject to the protective order entered at ECF No. 181.**

| Name | Approximate Years of Post-Law School Legal Experience Prior to CDO/FDO Employment | Dates of Employment at CDO/FDO |
|---|---|---|
| Melissa Baldwin | 5 | 10/1/2018—current |
| Elizabeth Blackwood | 3 | 9/30/2008—1/31/2020 |

22

| | | |
|---|---|---|
| Tonja Brooks | 21 | 8/5/2019—current |
| Joshua Carpenter | 6 | 6/9/2012—current |
| Ann Hester | 9 (some years part time) | 6/15/2007—current |
| Jared Martin | 8 | 3/16/2015—current |
| Caleb Newman | Not Available | 3/1/2015—8/7/2018 |
| Douglas Roberts | 4 | 5/7/2012—7/15/2015 |
| Megan Hoffman Sacksteder | 14 | 8/5/2019—current |
| Erin Taylor | 3 | 9/30/2008—current |

Dated: May 8, 2023                              Respectfully submitted,

                                                                BRIAN BOYNTON
                                                                Principal Deputy Assistant Attorney General

                                                                CARLOTTA P. WELLS
                                                                Assistant Branch Director

                                                                  /s/ Joshua M. Kolsky
                                                                JOSHUA M. KOLSKY (DC Bar No. 993430)
                                                                RACHAEL L. WESTMORELAND
                                                                MADELINE M. McMAHON
                                                                DANIELLE YOUNG
                                                                Trial Attorneys
                                                                U.S. Department of Justice
                                                                Civil Division, Federal Programs Branch
                                                                1100 L Street, NW
                                                                Washington, DC 20005
                                                                Tel: (202) 305-7664
                                                                E-mail: joshua.kolsky@usdoj.gov

                                                                *Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA, et al.,　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

## <u>VERIFICATION OF INTERROGATORIES</u>

Based on information that I obtained in the course of my official duties, I declare under

penalty of perjury that the response to Interrogatories 10, 11, 13, 14, 24, and 25 are true and correct

to the best of my knowledge and belief.


Dated: May 8, 2023　　　　　　SIGNED: _Colleen M Papson_

　　　　　　　　　　　　　　　　　　Colleen Papson
　　　　　　　　　　　　　　　　　　Paralegal Specialist
　　　　　　　　　　　　　　　　　　Office of the General Counsel
　　　　　　　　　　　　　　　　　　Administrative Office of the U.S. Courts

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,          )
                                  )
    Plaintiff,              )
                                  )
v.                                )
                                  )
UNITED STATES OF AMERICA, et al., )
                                  )
    Defendants.             )

## VERIFICATION OF INTERROGATORY 12

    Based on information that I obtained in the course of my official duties, I declare under penalty of perjury that the responses to Interrogatory 12 is true and correct to the best of my knowledge and belief.


DATED: ___05-05-2023___       SIGNED: _Heather Beam_

                                  Heather Beam
                                  Human Resources Specialist
                                  Western District of North Carolina

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION OF INTERROGATORY 15

Based on information that I obtained in the course of my official duties, I declare under penalty of perjury that the response to Interrogatory 15 is true and correct to the best of my knowledge and belief.

DATED: _5/5/2023_          SIGNED: William J Moormann

Digitally signed by William J
Moormann
Date: 2023.05.05 15:12:09 -04'00'

William Moorman
Administrative Officer
Federal Public Defender
Western District of North Carolina

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,  )
                          )
    Plaintiff,  )
                          )
v.                        )
                          )
UNITED STATES OF AMERICA, et al.,  )
                          )
    Defendants.  )

## VERIFICATION OF INTERROGATORY 18

    Based on information that I obtained in the course of my official duties, I declare under penalty of perjury that the responses to Interrogatory 18 is true and correct to the best of my knowledge and belief.


DATED: _____    SIGNED:    Jill B. Langley  Digitally signed by Jill B. Langley
Date: 2023.05.05 09:03:23
-06'00'

Jill Langley
Director of Workplace Relations
U.S. Court of Appeals for the Tenth Circuit

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,                )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )
                                        )
UNITED STATES OF AMERICA, et al.,       )
                                        )
        Defendants.                     )

## VERIFICATION OF INTERROGATORY 19

Based on my personal knowledge and information that I obtained in the course of my

official duties, I declare under penalty of perjury that the response to Interrogatory 19 is true and

correct to the best of my knowledge and belief.

DATED: 5/5/2024          SIGNED: _____

Edward Smith
Chief Circuit Mediator
U.S. Court of Appeals, 4th Circuit

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

## <u>VERIFICATION OF INTERROGATORY 20</u>

Based on information that I obtained in the course of my official duties, I declare under penalty of perjury that the response to Interrogatory 20 is true and correct to the best of my knowledge and belief.

Dated: May 5 , 2023          SIGNED: _James N. Ishida_____

James Ishida
Circuit Executive
U.S. Courts of the Fourth Circuit

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,                    )
                                            )
     Plaintiff,                            )
                                            )
v.                                          )
                                            )
UNITED STATES OF AMERICA, et al.,           )
                                            )
     Defendants.                           )

## VERIFICATION OF INTERROGATORY 21

     Based on information that I obtained in the course of my official duties, I declare under penalty of perjury that the response to Interrogatory 21 is true and correct to the best of my knowledge and belief.

DATED: _____     SIGNED:   Joshua B. Carpenter

    Digitally signed by Joshua B. Carpenter
    Date: 2023.05.05 15:22:11 -04'00'

     Joshua B. Carpenter
     Appellate Chief
     Federal Public Defender
     Western District of North Carolina

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,                    )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )
                                            )
UNITED STATES OF AMERICA, et al.,           )
                                            )
        Defendants.                         )

## VERIFICATION OF INTERROGATORY 22

Based on my personal knowledge and information that I obtained in the course of

my official duties, I declare under penalty of perjury that the response to Interrogatory 22

is true and correct to the best of my knowledge and belief.

DATED: May 8, 2023       SIGNED _____

Chief Judge Roger L. Gregory
U.S. Court of Appeals, Fourth Circuit