# EXHIBIT D

**Sent**: 6/12/2019 8:05:37 AM
**To**: James Ishida ██████████@ca4.uscourts.gov]
**Attachments**: Devins-Strickland Counselor's Report.pdf

Hello James!

I have finished the Counselor's Report with only 1 remaining outstanding issue ... Caryn's specific requests especially as it pertains to her feeling safe to return to the office (if this is possible), but somehow figuring out what the long term resolution will be for her and where she sits in the district. Please let me know if you would like to discuss this report in more detail or if you have any questions. Have a wonderful Thanksgiving!

*(See attached file: Devins-Strickland Counselor's Report.pdf)*
Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

US00001654

COUNSELOR'S REPORT

I.   **EMPLOYEE:**

Name: Caryn Devins-Strickland

Job Title: Assistant Federal Public Defender

Place of Employment: North Carolina Western Federal Public Defender Organization

Work Phone: 704-688-6550

Representative: Cooper Strickland (Spouse)

II.  **CHRONOLOGY OF COUNSELING:**

Date of request for counseling: September 10, 2018 (Extended 90 days on September 10, 2018 to December 9, 2018)

Date of Initial Interview: October 5, 2018

Date(s) of alleged violations: May 18, 2018

30th Day after Alleged Violation(s): June 18, 2018

Reason for delayed contact beyond 30 days, if applicable: N/A

Date of Waiver of Confidentiality (if any):

Date of resolution agreement (if any):

Date of notification of employee right to request mediation, if applicable:

Date counseling report completed: November 19, 2018

III. **CLAIMS MADE:**

Employee alleges sexual harassment based on the following:
- Repeated meetings for lunch on the premise of "mentoring"
- Waiting for her in the lobby after working late into the evening on a case and offering a ride since she was on a bike and it had begun to rain after she had already declined the offer upstairs in the office (See Exhibit 1)
- Attempts to restrict her job responsibilities and speaking to her in an unprofessional manner

1

US00001655

- Quid pro Quo relationship based on email dated May 18, 2018 (**Refer to Exhibit 2**)

## IV.   REMEDY REQUESTED:

The following remedies have been put in place effective August 17, 2018 (agreed to by Tony Martinez (Defender) and Caryn Devins-Strickland (Assistant Federal Public Defender) via email: **Exhibit 3**):

- Caryn's position as a Research & Writing Attorney was reclassified to an Assistant Federal Public Defender. This was based on advice from the AO regarding work measurement and essentially doing away with the practice of hiring Research and Writing attorneys. Caryn's duties remained the same, although with a different title.
  - o  Caryn reference's an offer letter signed by Ross Richardson that stated she would be transitioned to an Assistant Federal Public Defender sometime soon. There is no mention of a monetary increase with this transition. (**Refer to Exhibit 1)**
- The organizational chart was changed to reflect Caryn reports to Josh Carpenter (Appellate Chief). Caryn cannot work exclusively in appeals as requested, as this will cause an undue hardship on the district with only one position left to support nine trial attorneys. (**Exhibit 4**)
- Full-time telework has been granted on a temporary basis as this investigation is completed.

On July 9, 2018 JP was no longer in a mentorship role to Caryn Devins-Strickland. Caryn requested Kelly Johnson to be her mentor and all agreed to this arrangement.

1) Email dated 09-28-2018 from James Ishida to Caryn Devins-Strickland requesting a list of specific, articulable demands no later than the deadline of December 9, 2018. Caryn has not yet provided these to James Ishida (Circuit Executive)

2) Meeting on November 9, 2018 with Caryn Devins-Strickland and Cooper Strickland (representative / spouse)

   a.  Caryn stated the following requests for a resolution:
      i.  An environment free from harassment and intimidation
      ii.  Advancement based on merit
   b.  A follow up email was sent the morning of Monday, November 19 and requested specific resolutions based on the above we could work on.

## V.   SUMMARY OF COUNSELING CONTACTS:

Counselor conducted an initial interview with the employee on October 5, 2018. The employee was informed of her rights under the Federal Public Defender's Employment Dispute Resolution Plan and signed a waiver of her right to confidentiality with respect to interviewing the following individuals for purposes of this investigation: JP Davis and Tony Martinez.

US00001656

**Timeline of Events:**

The employee came to the Western District of North Carolina on August 21, 2017. The employee alleges the "First Assistant has abused his power and offered employment preferences for his unwanted advances."

Employee states soon after her employment with the WDNC the First Assistant "began treating me with favoritism by, for example, requesting to be my mentor and asking me out to lunch with him regularly." As context for this allegation, in an interview with Federal Defender, Tony Martinez on October 18, 2018, Mr. Martinez stated he assigned JP Davis as Caryn's mentor since she was coming to the agency without any trial experience. This was the first mentor / mentee relationship established in the district since Mr. Martinez' arrival in the district. This relationship was established for training purposes with the intention of following through on the offer of employment made where Caryn would transition to an Assistant Federal Public Defender position.  At my meeting with JP Davis on October 10, 2018, JP stated his mentor in the past would take him out to lunch about once a month to discuss work related topics and anything else going on to help him in his professional growth. JP Stated this was his intent with the lunch requests to Caryn Devins-Strickland. JP stated these lunches were never made mandatory.

May 17 – JP requests a "check-in lunch" for the next day, Caryn agrees.

On May 18, Caryn and JP went to lunch for a mentoring session. At this lunch, Caryn stated since her marriage she did not want to have a long-distance relationship with her husband (he resides in Tryon, NC) and would be requesting a transfer to the Asheville office at some point or would have to leave the office. JP was discouraging about this request citing space issues in the Asheville office and that other people had been wanting to transfer there. Caryn also brought up the issue of pay and stated she would be asking for a raise at her annual review. She stated her offer letter confirmed she would be transitioned to an AFPD position in a few months and she would want to be on that pay scale. (**See offer letter, Exhibit 1: This letter does not state a specific time frame for her transition to an AFPD position or mention a pay raise with the transition).** Caryn stated if she were to stay a Research and Writing Attorney, she would want to be a Grade 15. Caryn alleges JP stated upon return to the office, "Don't worry we're going to take care of you." An email was then sent by JP to Caryn on the same day stating, "Dude you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan … just remember I deal in pay for stay😊" **(See Exhibit 2: email dated 05-18-2018 3:56 PM** )

Allegations of repeated attempts to meet outside of the office and interference with her participation in a case as second chair:

After Caryn prepared a motion to suppress with JP and argued it in court, she became interested in getting on a child pornography case that carried a possible life sentence as a second chair with a newer attorney who was the first chair. JP stated he had concerns of a possible Ineffective Counsel claim citing having the two newest attorneys in the district on the case

would not look good. Caryn was looking to get trial experience. She asked Mr. Martinez if she could second chair this case and Mr. Martinez agreed sometime in mid-May 2018. During my interview with Mr. Martinez he admitted this was a poor decision as he had his two newest attorneys on this case and he had also discovered performance deficiencies regarding the first chair on this case. Caryn also stated Peter Adolf (her direct supervisor) had reservations about her being assigned to the case citing the client was very difficult.

On June 1, 2018 JP offered a "drink and an ear" if Caryn needed one in a response to an email related to case involving child molestation where Caryn stated she was exhausted mentally and physically. (**Exhibit 5: See Email dated June 1 3:48 PM**)

On June 5, 2018 this is where the issue between JP and Caryn started to evolve. Caryn cancelled her attendance with JP for a pre-sentence interview on the same date and time she had scheduled the discovery review for the child porn case she was working on as second chair. JP was upset by this and made her attend the pre-sentence interview as this was a commitment she had made by working on this case and JP wanted her to honor her commitments. (**Exhibit 6: See Emails dated June 5 and June 6, 2018**). Caryn said she felt "retaliated against" by this email as JP had copied Peter Adolf (her supervisor) and Tony Martinez. Neither one of them spoke to her about this email after it had been sent to her.

On June 12 Caryn was removed from the child porn case and other attorneys were assigned. The first chair, Jeff King, had been separated from the agency and it was clear there was a lot of work that had not been done on this case by Mr. King.

JP invited Caryn out on June 19 at 5:00 PM for a celebratory drink related to a case they were working on. Caryn declined due to having a "bunch of things going on." **(See Exhibit 7: Email dated June 19, 2018 5:00 PM).**

June 21, 2018: JP and Caryn work late on a case. As Caryn was getting ready to leave the office JP offered her a ride home since she had her bike and it appeared as if it was going to rain. I asked JP if he had ever offered Caryn a ride home in the past and he confirmed he had since they live in the same area. He also stated Caryn had asked him for a ride home on a few occasions in which he did, however she never accepted when he had offered a ride home. On this occasion Caryn declined the ride offer stating she was a "tough girl." When JP left and arrived in the lobby he stated it was storming outside and sent a text to Caryn offering a ride home again and called her a "tough girl." Caryn did not respond to the text, so he waited for her in the lobby until she appeared and offered one more time. Caryn stated JP had cornered her in the lobby and this "creeper her out." In my interview with JP I asked him how far away he was standing and said he was about 100 feet from her. **(See contemporaneous notes by Caryn Devins and text message from JP attached as Exhibit 8)**

On June 26, Caryn emailed Tony Martinez to state she may not be able to handle the new cases assigned to her because of Jeff King being separated from the agency. In my interview with

US00001658

Tony, this did cause him to be upset as he felt Caryn was picking and choosing which cases she would work.

JP asked Tony Martinez for permission to meet with Caryn for a one on one
JP invited Caryn out for a mentoring session on June 27, 2018 via email at 11:52 AM. Suggested lunch, leaving early for a celebratory post case drink, or in the office. Stated believed it would be good to have some distance from work, but whatever made her comfortable would be fine with him **(Exhibit 9: Email dated 6/27/2018 at 11:52 AM.)** This was scheduled for July 2, 2018.

On July 2, 2018 Caryn advised Tony Martinez of her intent to have a meeting with JP to set boundaries with him. In my interview with Tony Martinez he did not recall her using this wording. Caryn explained JP had spoken to her inappropriately and berated her and got extremely angry regarding the presentence interview she as directed to attend in stead of the discovery review, which was rescheduled. She stated she felt uncomfortable around JP and was leaving the office by 5:00 PM each evening to avoid being in the office alone with him. Mr. Martinez asked her if this was harassment or sexual harassment. Caryn stated she did not want to use those words yet and she was self-managing the issue for now. IN my interview with Caryn, she stated she used these words based on advice from Nancy Dunn at the Administrative Office. She explained to Tony she did not want him to do anything yet and to keep her confidence. She explained she was trying to do everything by the book and this was the advice she got on how to go about this. (**See Caryn Devins contemporaneous notes – Exhibit 11**)

Caryn and JP met on July 2, 2018. Per my interview with JP, he had planned to meet with Caryn regarding the following:

- Stress / Anxiety Management
- Prioritizing and Managing the workload
- Communication
- Discussion on obstacles and how to help her

**(Exhibit 12)**

Caryn came to the meeting based on my interview with her to set boundaries with JP that she felt had been crossed. Her specific issue was the tone he had used to speak with her on June 5 and 6 regarding the presentence investigation interview she was trying to not attend to attend the discovery review for the child porn case she was a second chair for. When Caryn stated this, JP had said he would try to keep from using a similar tone in the future, but her actions were unacceptable, and he had to respond to them. Caryn was under the impression the shadowing activities were optional and not required as JP had stated this in a past email back in March. JP attempted to explain his point of view was she had already committed to attending the presentence interview and had forgotten when she scheduled the discovery review. JP felt she needed to honor her commitments and be honest with him. JP felt she had been dishonest with him by saying the date of June 7 was the *only* date that worked for the team when that was not the fact.

US00001659

The meeting fell apart and Caryn stated she was going to talk to Tony. JP suggested they go talk to Tony right now and Caryn wanted time to collect her thoughts. Caryn then walked away.

On July 5, 2018, Tony Martinez, JP Davis and Caryn Devins met to discuss the issues Caryn and JP were having. Caryn stated she was uncomfortable speaking in front of JP, so JP was asked to leave. Caryn discussed with Tony her concerns. Tony asked her specific questions as far as had there been any touching or inappropriate behavior and Caryn stated "no" to those questions. They both agreed the mentor / mentee relationship between her and JP needed to end. Tony felt Caryn still needed a mentor and Caryn asked about Kelly Johnson. Caryn report the "pay for stay" email to Tony and the tone JP used in the walk to the jail for the presentence interview. Caryn felt she was not safe in the Charlotte office and the only reason JP had not touched her is because she had not let him. Tony assured Caryn her performance was not an issue and a new mentor would be assigned to her. This was confirmed in an email dated July 9, 2018 **(Exhibit 13).**

Tony advised in his interview with me that throughout the year she had stated an interest in moving to the Asheville office due to her husband having to reside in the Tryon, NC area for his job. Tony has confirmed there is currently no office space to accommodate more staff in the Asheville office.

Only July 17, Rahwa Gebre-Egziabher asked Peter Adolf (Caryn's supervisor) if she could assist with the rescheduled discovery in the child porn case Caryn had been the second chair on. Peter had said no, due to the fact Caryn had expressed concerns related to her work load (June 26 email). This was a fact and not designed to interfere with Caryn's ability to do her job. At this decision Caryn felt she was beginning to be micromanaged. (**Exhibit 14)**

On July 20, 2018 a staff meeting was held to discuss some reorganizing of positions. Tony Martinez assigned Caryn to JP's team without realizing he had agreed to remove Caryn from JP's chain of command based on their meeting earlier in the month. Based on this action by Tony, Caryn called in sick on Monday, July 23 and Tuesday, July 24. Caryn contacted the Administrative Office on Monday; July 23 feeling Tony had not followed through on what they agreed to resolve this situation. Tony Martinez contacted her on Tuesday, July 24 and explained he had made a mistake and was immediately correcting it to have her report to Joshua Carpenter, the Appellate Chief out of Asheville. He said a revised email with a revised organizational chart would be emailed to staff. Caryn requested to review the email prior to Tony sending this. According to Caryn, Tony had agreed to the request but did not follow through. In my interview with Tony Martinez he stated he did not let Caryn review the email in advance because he did not find it necessary to do so.

On July 25 a vacancy was announced for a Charlotte Appellate AFD position. Caryn stated in my interview she was told not to bother applying for the position. Caryn did in fact apply for the position on August 7, 2018 **(Exhibit 15)** Caryn was not invited to apply, however she was reclassified to an Assistant Federal Public Defender effective August 20, 2018. **(Exhibit 16)**

On August 9, 2018 Tony was contacted by Cait Clark from the AO regarding the situation with Caryn Devins and wanted to discuss how he was handling it. Per my interview with Tony I confirmed since Caryn was converted to an AFD she now has an office that is not shared since her position now warrants a private office space. Research and Writing Specialists have not had

office space of their own in the past based on the duties of the position. This was a complaint Caryn had noted as also feeling retaliated against. Tony was advised by the AO on how they would like to see the situation handled and this resulted his accommodations he has made for Caryn since August 17, 2018 which are outlined in the beginning of this report.

## VI. SUMMARY OF DOCUMENTS RECEIVED

1. Exhibit 1: Offer Letter to Caryn Devins dated March 24, 2017
2. Exhibit 2: May 18, 2018 email from JP Davis "Pay for Stay"
3. Exhibit 3: August 17, 2018, confirmation email on agreement between Tony Martinez and Caryn Devins
4. Exhibit 4: Updated Organizational Chart for the FPDO WDNC
5. Exhibit 5: June 1 email from JP Davis "A drink and an ear"
6. Exhibit 6: June 5 email exchange between Caryn Devins and JP Davis regarding Caryn cancelling the presentence interview for work on another case.
7. Exhibit 7: Email dated June 19 from JP Davis – Invitation for celebratory drink regarding a case
8. Exhibit 8: Contemporaneous Notes by Caryn Devins regarding encounter on evening of June 21 (JP offers ride home to Caryn who has ridden a bike to work) to include text message from JP Davis to Caryn Devins offering a ride again on the same evening
9. Exhibit 9: Email exchange between Tony Martinez and JP Davis – JP Davis asks for permission to meet one on one with Caryn to discuss concerns related to her stress management, etc.
10. Exhibit 10: Email to Caryn Devins from JP Davis to set up July 2 meeting
11. Exhibit 11: Contemporaneous notes by Caryn Devins recapping meeting with Tony Martinez prior to her meeting with JP Davis to set boundaries with him
12. Exhibit 12: Outline of intended discussion JP wanted to have with Caryn Devins on July 2, 2018 and contemporaneous notes by JP Davis recapping that meeting
13. Exhibit 13: Email to Tony Martinez from Caryn Devins clarifying her understanding of the next steps after the July 2, 2018 meeting and her agreement to this plan
14. Exhibit 14: Email; request to have Caryn assist with case she was removed from. Request was denied due to Caryn's self-admitting she had workload concerns.
15. Exhibit 15: Caryn applies for AFD position in the Charlotte office
16. Exhibit 16: Caryn Devins is reclassified to Assistant Federal Public Defender

## VII. SUMMARY OF INFORMAL RESOLUTION ATTEMPT:

Employee Caryn Devins has been accommodated in each request she has made except for where she will sit for the foreseeable future as she is currently teleworking full-time. The Circuit Executive and the EDR Counselor have both asked her to articulate what it will take for her to feel safe in the working environment. Employee has not been able to name anything specific outside of generalities. The counselor is awaiting her response to this request.

US00001661

| | |
|---|---|
| **From:** | James Ishida         @ca4.uscourts.gov] |
| **Sent:** | 1/11/2019 5:26:00 PM |
| **To:** | Heather Beam [heather_beam@ncwp.uscourts.gov] |
| **CC:** | RL Gregory        @ca4.uscourts.gov];; |
| **Subject:** | Re: Counselor's Report with Addendum - EDR and Wrongful Conduct Claim for Carybn Devins FPDO WDNC |

Dear Heather,

Thank you very much for your report. On behalf of Chief Circuit Judge Roger Gregory and the Fourth Circuit, I would like to extend our thanks and appreciation for your diligence, hard work, and thorough investigation report. It's simply a superb job.

You have my profound best wishes.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

ca4.uscourts.gov

On Jan 11, 2019, at 5:08 PM, Heather Beam <Heather_Beam@ncwp.uscourts.gov> wrote:

Hello James,

Attached please find the Counselor's Report with the addendum. I hope this provides the level of detail you were looking for. This also includes my suggestions as far as a resolution or next steps. I hope you have a great weekend!

*(See attached file: 11-19-2018 Counselor's Report with Addendum.pdf)*
Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

<11-19-2018 Counselor's Report with Addendum.pdf>

US00002293

COUNSELOR'S REPORT

I. **EMPLOYEE:**

Name: Caryn Devins-Strickland

Job Title: Assistant Federal Public Defender

Place of Employment: North Carolina Western Federal Public Defender Organization

Work Phone: 704-688-6550

Representative: Cooper Strickland (Spouse)

II. **CHRONOLOGY OF COUNSELING:**

Date of request for counseling: September 10, 2018 (Extended 90 days on September 10, 2018 to December 9, 2018)

Date of Initial Interview: October 5, 2018

Date(s) of alleged violations: May 18, 2018

30th Day after Alleged Violation(s): June 18, 2018

Reason for delayed contact beyond 30 days, if applicable: N/A

Date of Waiver of Confidentiality (if any):

Date of resolution agreement (if any):

Date of notification of employee right to request mediation, if applicable:

Date counseling report completed: November 19, 2018

III. **CLAIMS MADE:**

Employee alleges sexual harassment based on the following:
- Repeated meetings for lunch on the premise of "mentoring"
- Waiting for her in the lobby after working late into the evening on a case and offering a ride since she was on a bike and it had begun to rain after she had already declined the offer upstairs in the office (See Exhibit 1)
- Attempts to restrict her job responsibilities and speaking to her in an unprofessional manner

US00001244

- Quid pro Quo relationship based on email dated May 18, 2018 (**Refer to Exhibit 2**)

## IV.  REMEDY REQUESTED:

The following remedies have been put in place effective August 17, 2018 (agreed to by Tony Martinez (Defender) and Caryn Devins-Strickland (Assistant Federal Public Defender) via email: **Exhibit 3**):

- Caryn's position as a Research & Writing Attorney was reclassified to an Assistant Federal Public Defender. This was based on advice from the AO regarding work measurement and essentially doing away with the practice of hiring Research and Writing attorneys. Caryn's duties remained the same, although with a different title.
    - o  Caryn reference's an offer letter signed by Ross Richardson that stated she would be transitioned to an Assistant Federal Public Defender sometime soon. There is no mention of a monetary increase with this transition. (**Refer to Exhibit 1)**
- The organizational chart was changed to reflect Caryn reports to Josh Carpenter (Appellate Chief). Caryn cannot work exclusively in appeals as requested, as this will cause an undue hardship on the district with only one position left to support nine trial attorneys. (**Exhibit 4**)
- Full-time telework has been granted on a temporary basis as this investigation is completed.

On July 9, 2018 JP was no longer in a mentorship role to Caryn Devins-Strickland. Caryn requested Kelly Johnson to be her mentor and all agreed to this arrangement.

1) Email dated 09-28-2018 from James Ishida to Caryn Devins-Strickland requesting a list of specific, articulable demands no later than the deadline of December 9, 2018. Caryn has not yet provided these to James Ishida (Circuit Executive)

2) Meeting on November 9, 2018 with Caryn Devins-Strickland and Cooper Strickland (representative / spouse)

    a.  Caryn stated the following requests for a resolution:
        i.  An environment free from harassment and intimidation
        ii.  Advancement based on merit
    b.  A follow up email was sent the morning of Monday, November 19 and requested specific resolutions based on the above we could work on.

## V.  SUMMARY OF COUNSELING CONTACTS:

Counselor conducted an initial interview with the employee on October 5, 2018. The employee was informed of her rights under the Federal Public Defender's Employment Dispute Resolution Plan and signed a waiver of her right to confidentiality with respect to interviewing the following individuals for purposes of this investigation: JP Davis and Tony Martinez.

2

US00001245

**Timeline of Events:**

The employee came to the Western District of North Carolina on August 21, 2017. The employee alleges the "First Assistant has abused his power and offered employment preferences for his unwanted advances."

Employee states soon after her employment with the WDNC the First Assistant "began treating me with favoritism by, for example, requesting to be my mentor and asking me out to lunch with him regularly." As context for this allegation, in an interview with Federal Defender, Tony Martinez on October 18, 2018, Mr. Martinez stated he assigned JP Davis as Caryn's mentor since she was coming to the agency without any trial experience. This was the first mentor / mentee relationship established in the district since Mr. Martinez' arrival in the district. This relationship was established for training purposes with the intention of following through on the offer of employment made where Caryn would transition to an Assistant Federal Public Defender position. At my meeting with JP Davis on October 10, 2018, JP stated his mentor in the past would take him out to lunch about once a month to discuss work related topics and anything else going on to help him in his professional growth. JP Stated this was his intent with the lunch requests to Caryn Devins-Strickland. JP stated these lunches were never made mandatory.

May 17 – JP requests a "check-in lunch" for the next day, Caryn agrees.

On May 18, Caryn and JP went to lunch for a mentoring session. At this lunch, Caryn stated since her marriage she did not want to have a long-distance relationship with her husband (he resides in Tryon, NC) and would be requesting a transfer to the Asheville office at some point or would have to leave the office. JP was discouraging about this request citing space issues in the Asheville office and that other people had been wanting to transfer there. Caryn also brought up the issue of pay and stated she would be asking for a raise at her annual review. She stated her offer letter confirmed she would be transitioned to an AFPD position in a few months and she would want to be on that pay scale. (**See offer letter, Exhibit 1: This letter does not state a specific time frame for her transition to an AFPD position or mention a pay raise with the transition**). Caryn stated if she were to stay a Research and Writing Attorney, she would want to be a Grade 15. Caryn alleges JP stated upon return to the office, "Don't worry we're going to take care of you." An email was then sent by JP to Caryn on the same day stating, "Dude you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan … just remember I deal in pay for stay😊" (**See Exhibit 2: email dated 05-18-2018 3:56 PM** )

Allegations of repeated attempts to meet outside of the office and interference with her participation in a case as second chair:

After Caryn prepared a motion to suppress with JP and argued it in court, she became interested in getting on a child pornography case that carried a possible life sentence as a second chair with a newer attorney who was the first chair. JP stated he had concerns of a possible Ineffective Counsel claim citing having the two newest attorneys in the district on the case

3

would not look good. Caryn was looking to get trial experience. She asked Mr. Martinez if she could second chair this case and Mr. Martinez agreed sometime in mid-May 2018. During my interview with Mr. Martinez he admitted this was a poor decision as he had his two newest attorneys on this case and he had also discovered performance deficiencies regarding the first chair on this case. Caryn also stated Peter Adolf (her direct supervisor) had reservations about her being assigned to the case citing the client was very difficult.

On June 1, 2018 JP offered a "drink and an ear" if Caryn needed one in a response to an email related to case involving child molestation where Caryn stated she was exhausted mentally and physically. (**Exhibit 5: See Email dated June 1 3:48 PM**)

On June 5, 2018 this is where the issue between JP and Caryn started to evolve. Caryn cancelled her attendance with JP for a pre-sentence interview on the same date and time she had scheduled the discovery review for the child porn case she was working on as second chair. JP was upset by this and made her attend the pre-sentence interview as this was a commitment she had made by working on this case and JP wanted her to honor her commitments. (**Exhibit 6: See Emails dated June 5 and June 6, 2018**). Caryn said she felt "retaliated against" by this email as JP had copied Peter Adolf (her supervisor) and Tony Martinez. Neither one of them spoke to her about this email after it had been sent to her.

On June 12 Caryn was removed from the child porn case and other attorneys were assigned. The first chair, Jeff King, had been separated from the agency and it was clear there was a lot of work that had not been done on this case by Mr. King.

JP invited Caryn out on June 19 at 5:00 PM for a celebratory drink related to a case they were working on. Caryn declined due to having a "bunch of things going on." **(See Exhibit 7: Email dated June 19, 2018 5:00 PM).**

June 21, 2018: JP and Caryn work late on a case. As Caryn was getting ready to leave the office JP offered her a ride home since she had her bike and it appeared as if it was going to rain. I asked JP if he had ever offered Caryn a ride home in the past and he confirmed he had since they live in the same area. He also stated Caryn had asked him for a ride home on a few occasions in which he did, however she never accepted when he had offered a ride home. On this occasion Caryn declined the ride offer stating she was a "tough girl." When JP left and arrived in the lobby he stated it was storming outside and sent a text to Caryn offering a ride home again and called her a "tough girl." Caryn did not respond to the text, so he waited for her in the lobby until she appeared and offered one more time. Caryn stated JP had cornered her in the lobby and this "creeper her out." In my interview with JP I asked him how far away he was standing and said he was about 100 feet from her. **(See contemporaneous notes by Caryn Devins and text message from JP attached as Exhibit 8)**

On June 26, Caryn emailed Tony Martinez to state she may not be able to handle the new cases assigned to her because of Jeff King being separated from the agency. In my interview with

4

US00001247

Tony, this did cause him to be upset as he felt Caryn was picking and choosing which cases she would work.

JP asked Tony Martinez for permission to meet with Caryn for a one on one
JP invited Caryn out for a mentoring session on June 27, 2018 via email at 11:52 AM. Suggested lunch, leaving early for a celebratory post case drink, or in the office. Stated believed it would be good to have some distance from work, but whatever made her comfortable would be fine with him **(Exhibit 9: Email dated 6/27/2018 at 11:52 AM.)** This was scheduled for July 2, 2018.

On July 2, 2018 Caryn advised Tony Martinez of her intent to have a meeting with JP to set boundaries with him. In my interview with Tony Martinez he did not recall her using this wording. Caryn explained JP had spoken to her inappropriately and berated her and got extremely angry regarding the presentence interview she as directed to attend in stead of the discovery review, which was rescheduled. She stated she felt uncomfortable around JP and was leaving the office by 5:00 PM each evening to avoid being in the office alone with him. Mr. Martinez asked her if this was harassment or sexual harassment. Caryn stated she did not want to use those words yet and she was self-managing the issue for now. IN my interview with Caryn, she stated she used these words based on advice from Nancy Dunn at the Administrative Office. She explained to Tony she did not want him to do anything yet and to keep her confidence. She explained she was trying to do everything by the book and this was the advice she got on how to go about this. (**See Caryn Devins contemporaneous notes – Exhibit 11**)

Caryn and JP met on July 2, 2018. Per my interview with JP, he had planned to meet with Caryn regarding the following:
- Stress / Anxiety Management
- Prioritizing and Managing the workload
- Communication
- Discussion on obstacles and how to help her

**(Exhibit 12)**

Caryn came to the meeting based on my interview with her to set boundaries with JP that she felt had been crossed. Her specific issue was the tone he had used to speak with her on June 5 and 6 regarding the presentence investigation interview she was trying to not attend to attend the discovery review for the child porn case she was a second chair for. When Caryn stated this, JP had said he would try to keep from using a similar tone in the future, but her actions were unacceptable, and he had to respond to them. Caryn was under the impression the shadowing activities were optional and not required as JP had stated this in a past email back in March. JP attempted to explain his point of view was she had already committed to attending the presentence interview and had forgotten when she scheduled the discovery review. JP felt she needed to honor her commitments and be honest with him. JP felt she had been dishonest with him by saying the date of June 7 was the *only* date that worked for the team when that was not the fact.

US00001248

The meeting fell apart and Caryn stated she was going to talk to Tony. JP suggested they go talk to Tony right now and Caryn wanted time to collect her thoughts. Caryn then walked away.

On July 5, 2018, Tony Martinez, JP Davis and Caryn Devins met to discuss the issues Caryn and JP were having. Caryn stated she was uncomfortable speaking in front of JP, so JP was asked to leave. Caryn discussed with Tony her concerns. Tony asked her specific questions as far as had there been any touching or inappropriate behavior and Caryn stated "no" to those questions. They both agreed the mentor / mentee relationship between her and JP needed to end. Tony felt Caryn still needed a mentor and Caryn asked about Kelly Johnson. Caryn report the "pay for stay" email to Tony and the tone JP used in the walk to the jail for the presentence interview. Caryn felt she was not safe in the Charlotte office and the only reason JP had not touched her is because she had not let him. Tony assured Caryn her performance was not an issue and a new mentor would be assigned to her. This was confirmed in an email dated July 9, 2018 **(Exhibit 13).**

Tony advised in his interview with me that throughout the year she had stated an interest in moving to the Asheville office due to her husband having to reside in the Tryon, NC area for his job. Tony has confirmed there is currently no office space to accommodate more staff in the Asheville office.

Only July 17, Rahwa Gebre-Egziabher asked Peter Adolf (Caryn's supervisor) if she could assist with the rescheduled discovery in the child porn case Caryn had been the second chair on. Peter had said no, due to the fact Caryn had expressed concerns related to her work load (June 26 email). This was a fact and not designed to interfere with Caryn's ability to do her job. At this decision Caryn felt she was beginning to be micromanaged. (**Exhibit 14)**

On July 20, 2018 a staff meeting was held to discuss some reorganizing of positions. Tony Martinez assigned Caryn to JP's team without realizing he had agreed to remove Caryn from JP's chain of command based on their meeting earlier in the month. Based on this action by Tony, Caryn called in sick on Monday, July 23 and Tuesday, July 24. Caryn contacted the Administrative Office on Monday; July 23 feeling Tony had not followed through on what they agreed to resolve this situation. Tony Martinez contacted her on Tuesday, July 24 and explained he had made a mistake and was immediately correcting it to have her report to Joshua Carpenter, the Appellate Chief out of Asheville. He said a revised email with a revised organizational chart would be emailed out to staff. Caryn requested to review the email prior to Tony sending this. According to Caryn, Tony had agreed to the request but did not follow through. In my interview with Tony Martinez he stated he did not let Caryn review the email in advance because he did not find it necessary to do so.

On July 25 a vacancy was announced for a Charlotte Appellate AFD position. Caryn stated in my interview she was told not to bother applying for the position. Caryn did in fact apply for the position on August 7, 2018 **(Exhibit 15)** Caryn was not invited to apply, however she was reclassified to an Assistant Federal Public Defender effective August 20, 2018. **(Exhibit 16)**

On August 9, 2018 Tony was contacted by Cait Clark from the AO regarding the situation with Caryn Devins and wanted to discuss how he was handling it. Per my interview with Tony I confirmed since Caryn was converted to an AFD she now has an office that is not shared since her position now warrants a private office space. Research and Writing Specialists have not had

US00001249

office space of their own in the past based on the duties of the position. This was a complaint Caryn had noted as also feeling retaliated against. Tony was advised by the AO on how they would like to see the situation handled and this resulted his accommodations he has made for Caryn since August 17, 2018 which are outlined in the beginning of this report.

## VI.   SUMMARY OF DOCUMENTS RECEIVED

1. Exhibit 1: Offer Letter to Caryn Devins dated March 24, 2017
2. Exhibit 2: May 18, 2018 email from JP Davis "Pay for Stay"
3. Exhibit 3: August 17, 2018, confirmation email on agreement between Tony Martinez and Caryn Devins
4. Exhibit 4: Updated Organizational Chart for the FPDO WDNC
5. Exhibit 5: June 1 email from JP Davis "A drink and an ear"
6. Exhibit 6: June 5 email exchange between Caryn Devins and JP Davis regarding Caryn cancelling the presentence interview for work on another case.
7. Exhibit 7: Email dated June 19 from JP Davis – Invitation for celebratory drink regarding a case
8. Exhibit 8: Contemporaneous Notes by Caryn Devins regarding encounter on evening of June 21 (JP offers ride home to Caryn who has ridden a bike to work) to include text message from JP Davis to Caryn Devins offering a ride again on the same evening
9. Exhibit 9: Email exchange between Tony Martinez and JP Davis – JP Davis asks for permission to meet one on one with Caryn to discuss concerns related to her stress management, etc.
10. Exhibit 10: Email to Caryn Devins from JP Davis to set up July 2 meeting
11. Exhibit 11: Contemporaneous notes by Caryn Devins recapping meeting with Tony Martinez prior to her meeting with JP Davis to set boundaries with him
12. Exhibit 12: Outline of intended discussion JP wanted to have with Caryn Devins on July 2, 2018 and contemporaneous notes by JP Davis recapping that meeting
13. Exhibit 13: Email to Tony Martinez from Caryn Devins clarifying her understanding of the next steps after the July 2, 2018 meeting and her agreement to this plan
14. Exhibit 14: Email; request to have Caryn assist with case she was removed from. Request was denied due to Caryn's self-admitting she had workload concerns.
15. Exhibit 15: Caryn applies for AFD position in the Charlotte office
16. Exhibit 16: Caryn Devins is reclassified to Assistant Federal Public Defender

## VII.   SUMMARY OF INFORMAL RESOLUTION ATTEMPT:

Employee Caryn Devins has been accommodated in each request she has made except for where she will sit for the foreseeable future as she is currently teleworking full-time. The Circuit Executive and the EDR Counselor have both asked her to articulate what it will take for her to feel safe in the working environment. Employee has not been able to name anything specific outside of generalities. The counselor is awaiting her response to this request.

US00001250

Addendum to Counselor's Report Dated November 19, 2018

This addendum is to provide more detail on the allegations brought by Mrs. Caryn Devins-Strickland and to lay out her resolution requests as well as the Counselor's suggestions.

**Allegation of Retaliation by the Federal Defender for the Western District of North Carolina**

Under Chapter X of the Employment Dispute Resolution Plan Caryn has brought forth a complaint of retaliation in light of her sexual harassment claim against the First Assistant Federal Defender for the Western District of North Carolina.

Caryn alleges Mr. Martinez (Federal Defender) has not worked with her in good faith to protect her from further harassment and has denied her advancement in the organization. Mr. Martinez sent an email dated August 17, 2018 summarizing his meeting with Caryn Devins that took place on August 16, 2018. In this email he states, "I will allow you to telework temporarily during the pendency of this investigation. This is not a permanent solution. I am reserving the right to request your return to your duty station in Charlotte subject to and upon completion of this investigation." This is the only mention of Mr. Martinez's desire for Caryn to return to the Charlotte office depending on the outcome of this investigation this counselor is aware of.

She states the reason she was given to not be able to transfer to the Asheville office is due to a shortage of office space. I have confirmed with Joshua Carpenter as well as Mr. Martinez there is not office space available in Asheville to accommodate Caryn working out of that office on a full-time basis. Mr. Carpenter stated there is a visiting managers office in Asheville that is primarily used by the Federal Defender or First Assistant when they travel in from Charlotte. It is also used by IT or other staff when traveling to the Asheville office. There has also been an advertisement for a summer intern in the Asheville office as well as a Charlotte paralegal position that will require occasional travel to Asheville. Mr. Carpenter stated he is not sure where the intern will sit and they may have to set up a temporary cubicle. The paralegal can use the visiting manager's office when they come to the Asheville office. Caryn's rebuttal of the fact there is office space in Asheville is unfounded as a result of my conversations with Mr. Carpenter and Mr. Martinez.

In addition, Mrs. Devins-Strickland alleges she has been denied merit based promotional opportunities as well as her locality pay was taken away. Locality pay is based on the statutory limits placed on the compensation of assistant U.S. Attorneys such that total pay may not exceed $100 less than the statutory maximum of Executive Schedule Level IV. Defenders should always authorize both ECI and locality for all AFD's except as indicated below:

Locality pay may not be denied under any circumstances (This is true regardless of the AFD's performance and regardless of green or red circled rates) unless a reduced amount is given to comply with the statutory limitations placed on assistant U.S. Attorney's mentioned above. [1]

Her locality pay was never removed by the Federal Defender.

---

[1] Found in the Defender Organization Classification System Manual – Assistant Federal Defender Appointment and Compensation Policies page 4.

US00001251

Caryn has also stated she was promised a promotion to the Assistant Federal Defender position in her offer letter dated March 24, 2017. This letter clearly states it was expected she would *transition* to an Assistant Federal Defender position. This letter did not outline a timeline or place an expected date of when this would occur. The offer letter also did not mention any promise of a promotion. In an earlier email dated March 21, 2017 from Ross Richardson, Ms. Richardson stated, "We would like to offer you the position of Research and Writing Attorney. As we discussed to some extend last Monday, the idea would be for you to be in this role initially in order to get some experience. We would look to move you to an Assistant Federal Defender position pretty soon thereafter."

Caryn received a step increase effective October 30, 2017 which changed her annual earnings from $101,929 to $105,327. On January 8, 2018 she also received the cost of living increase bringing her to a salary of $107,319. This salary puts her in the top of the range for an AFD classified as an AD25 (Exhibit 16). This was confirmed in an email from William Moorman the Administrative Officer for the district. In an email to Caryn from Mr. Martinez dated August 17, 2018, Caryn was advised of her reclassification to the position of Assistant Federal Defender. This reclassification was explained by Mr. Martinez that this was to the office's advantage since the Research and Writing Specialist positions did not affect the case weight measurement. This position change did not result in an increase in pay, although the reclassification from a Research and Writing Specialist to an Assistant Federal Defender has greatly increased her future earnings potential. Caryn also states she was never granted an annual performance review. According to the DOCS manual, there are no formal policies governing performance evaluations of employees in federal defender organizations.

Caryn states there was an advertisement for an Appellate Assistant Federal Defender Position in August of 2018. On August 7, 2018, Caryn applied for this position. She states she was not granted an interview. Mr. Martinez explained to me in my interview with him this is because she was already being reclassified to an Assistant Federal Defender effective August 20, 2018, and it was the same position. She also spoke about this to the Appellate Chief, Joshua Carpenter. He also stated that he believed this is a position she already had (due to the reclassification), and therefore no need to apply but she could do whatever she wanted. Caryn ultimately was not interviewed for this position and another person was hired. I could not find any evidence of the plan for her reclassification being discussed directly with her. This leads me to believe that management did not adequately communicate with Caryn what the plan was for her position.

The report of retaliation also claims she is still being treated as a Research and Writing Specialist based on her current job duties and is no longer invited to participate in moots for the Appellate Chief. In speaking with Joshua Carpenter, he stated Caryn is truly valuable and asked good questions in the moots when she has been physically able to be present. She has participated since her placement on telework via the telephone. The telephone participation has made it more difficult for Caryn to bring value to the moot, however she is still being invited to participate. Caryn had been invited to moots in September, October and December. Caryn did attend the December moot via telephone and was unavailable on the other dates. She is also invited to a moot in January. Mr. Carpenter also stated all the attorneys under him work on a mix of appeals as well as motions. I do not find any merit to Caryn's claim of regression of job duties or her intentionally not being invited to participate in moots. I believe Mr. Carpenter has worked with the limitations Caryn has to the best of his ability. Mr. Carpenter also added Caryn did not provide any feedback or ask any questions during the December moot. He felt disappointed by this as she was an excellent contributor when she participated in the spring of last year.

US00001252

Mr. Carpenter also added during this conversation there is a case Caryn had briefed over the summer that is going to go to oral arguments. He received this notice in November and immediately sent Caryn an email asking her if she would like to provide the arguments since she had stated an interest in doing so when she briefed this case over the summer. Caryn has not responded to the invitation and Mr. Carpenter has not followed up for fear of inadvertently making her feel pressured to come to the office based on the fact she is not comfortable coming to the office. Mr. Carpenter will be providing the oral arguments himself. He also went on to explain for the appellate side of the work Caryn does, when a case is assigned to her or another appellate AFD, due to the limited experience both have, they are given the responsibility to take the lead in reviewing the record and drafting briefs. Mr. Carpenter and another supervisory AFD is available to answer any procedural or substantive questions, provide feedback on potential legal issues, edit drafts of the brief, and ultimately sign off before filing. This is done with the goal of helping Caryn and the other newer AFD gain appellate experience while ensuring the end product is where it needs to be for the client.

Caryn had requested to be removed from the chain of command of the First Assistant Federal Defender as a result of her accusations. Mr. Martinez had agreed to this. During a meeting that was held on July 20, a reorganization of the positions took place and Caryn was placed under JP's team once again. Mr. Martinez admitted to me this was a mistake in which he did not realize was made until Tuesday, July 24. Caryn had received an email from JP on Sunday, July 22 as a result of this reorganization in which he was wanting to discuss with her some work-related items the upcoming week. This upset Caryn so much she called in sick on Monday, July 23 and Tuesday, July 24. When Mr. Martinez realized his mistake, he immediately contacted Caryn and explained he had made a mistake and was taking immediate action to fix this by placing her under the direct supervision of Joshua Carpenter and a new organizational chart would be distributed. Caryn had also been given back the sick time she had used.

In addition to the above, Caryn states she has been placed under another attorney for assignment of work. This does not appear to be the case on the organization chart (Exhibit 4) and I also confirmed with Mr. Carpenter he oversees assigning the work to the attorneys.

I spoke with Mr. Carpenter about JP Davis participating in moots for the Appellate Division although Mr. Davis is the Trial Division Chief. Mr. Carpenter stated Mr. Davis is valuable for the moots because he had previously worked as a law clerk for Judge Mullen and asks very good questions that impacts how they prepare when cases are going to trial. Participation on Appellate Moots is something JP Davis has never requested to do and is therefore not an inadvertent ploy to be closer to Caryn. His participation was requested by Mr. Carpenter. Mr. Carpenter also stated there has never been an attorney in the district who has volunteered to participate in a moot – they have always been asked to participate. It is their practice to typically invite a core group of mooters in which Caryn and JP are part of, and in one instance a request for mooters was sent to the entire district due to three moots being held for outside lawyers. It was explained this can be a timely event and most attorneys would rather be working on their own cases instead of someone else's.

I believe the Federal Defender has worked in good faith with Ms. Devins on her request to telework until this complaint has been resolved. Caryn has been placed on full-time telework and has not been pressured to come into the office. It should be noted that Caryn came into the office in October of last year and cleaned out her personal effects while all the staff was at the district retreat in Blowing Rock,

US00001253

NC. During my interview with JP Davis, he stated this action taken by Caryn seemed to be presumptuous on her part as it seemed she did not expect to be returning to the Charlotte office at all.

Based on my interviews with Joshua Carpenter, Anthony Martinez and JP Davis, it seems all three individuals value Caryn's talent in their district and would like for her to remain as an Assistant Federal Defender in this district. I do not see a case for retaliation based on my investigation and the facts presented by both sides.


**Resolution Request 1:**

Promotion to an Assistant Federal Defender position as "promised" in her offer letter.

**Resolution Request 1 Status:** Resolved – Caryn has been reclassified as an Assistant Federal Defender. This reclassification did not come with an increase in salary and was never promised in her offer letter.

<u>I suggest the following based on Caryn's claim of retaliation:</u>

The process in which an Assistant Federal Defender is classified and thereafter promoted must be explained so Caryn clearly understands this process and how it applies to her.

Future changes in Caryn's job duties or job title must be clearly explained in advance of the effective date.

Any sick leave taken due to Caryn not being taken out of JP Davis' chain of command should be returned to her and Administrative Leave granted in it's place. (August 10-17 sick leave requests were returned to her, however there were dates in July she used as well based on Mr. Martinez mistakenly placing her back under the supervision of JP Davis).

How and why individuals are or are not invited to participate in moot courts should also be explained not only to Caryn, but perhaps to the district, so there is a clear understanding of this practice.

Executive Coaching / Training for Mr. Martinez for future employee issues he will be tasked to handle. For example, Caryn states when she initially brought her complaint to Mr. Martinez he compared her relationship with the First Assistant Defender as a marriage and asked her to compromise. He also made comments bade on Caryn's report such as "At least she was not touched" and called her out on contacting the AO to receive guidance on her civil rights as a federal employee. He also stated he was being blamed for something that was not his fault. It is evident this claim was mishandled from the beginning by Mr. Martinez and he would benefit greatly with additional training on workplace conduct as well as basic managerial / leadership skills.

US00001254

**Resolution Request 2 - Separation from the First Assistant's Chain of Command:**

Caryn had request to be transferred to the appellate division and to work on appellate cases only. Mr. Martinez explained in his email to Caryn dated August 17, 2018 he was unable to accommodate this request as it would leave only one Research and Writing Specialist to support nine trial attorneys. Caryn was placed under the direct supervision of Joshua Carpenter, however maintained duties related to trial work. The organizational chart was also changed to reflect these supervisory changes.

I have explained above in the section Resolution Request 1 regarding the First Assistant's participation in the moot court process.

Based on the make up of the Federal Public Defender's office and the various duties Caryn carries, I do not believe it would be possible to eliminate all possibilities of Caryn being in the presence of the First Assistant.

**Resolution Request 3 – Remote Work / Transfer**

Caryn has been teleworking since mid August 2018. This situation has minimized some of her effectiveness as an employee of the Federal Defender's Organization. She did not participate in the district's retreat that was held in October and has participated via telephone for one moot court. It should be noted that during the district retreat in October, Caryn came to the office and removed all her personal effects. The Federal Defender and First Assistant perceived this as a sign Caryn had no intention of returning the office.

In an email dated November 21, 2018, Caryn states "This situation has irreparably damaged my relationships with the Federal Defender and my colleagues, and I believe I am no longer welcome in that environment. At this time, I am hopeful the Fourth Circuit will assist me in transitioning out of Tony's office."

This may be the case for Caryn based on her own perception of how this case has been handled. She believes the details of her case have not been handled in a confidential matter. This investigation has not revealed this perception to be true.

**Allegation of Sexual Harassment against the First Assistant Federal Defender:**

This section of the addendum is to provide additional details on events surrounding this allegation as brought by Mrs. Caryn Devins-Strickland.

When Caryn was appointed as a Research and Writing Specialist, JP Davis was assigned to be her mentor my Mr. Anthony Martinez (Federal Defender). JP Davis did not request to be assigned as Caryn's mentor as Caryn had alleged. I confirmed this fact during my separate interviews with Mr. Martinez and Mr. Davis. This was the first mentorship created in the district as Mr. Martinez felt strongly that new attorneys should be mentored by more tenured staff. Mrs. Devins-Strickland was a hiring anomaly since the district does not typically hire attorneys that do not have trial experience. An exception was made for Caryn since she came with high recommendations and impressive experience as a previous law clerk and fellow with the United States Supreme Court.

US00001255

The mentor / mentee relationship seemed to have started out well enough. Mrs. Devins-Strickland and Mr. Davis exchanged many text messages after hours that would show a friendly relationship that did not appear to be inappropriate in nature.

Caryn alleges Mr. Davis repeatedly asked her to meet outside of the office. These invitations were made by Mr. Davis to discuss mentoring topics over lunch. Mr. Davis always paid for these meals. When I asked Mr. Davis why he was inviting Caryn to lunch and then subsequently paying for these lunches, he stated his mentor had done the same thing for him so he was following what he had experienced. Throughout my investigation I could not find a time that Caryn had declined Mr. Davis' invitation to lunch until the end of their mentor / mentee relationship. I also did not find any indication Caryn had ever expressed her uneasiness about these lunch meetings.

JP sent Caryn one questionable email after their mentoring lunch on May 18, 2018 in which Caryn had expressed a desire to transfer to Asheville and also asked for a promotion. The email states, "Dude, you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan … just remember I deal in pay for stay : )" (Exhibit #2). This email can clearly be inferred to be a quid pro quo request. When I interviewed JP Davis he did give me a copy of this email along with other documentation. I asked him about it and he openly admitted this was a stupid email to send. Based on his forthrightness with the email and his reaction when I brought it up, I do not believe there was an intention of sexual harassment when he sent the email. Regardless, this email supports Caryn's claim of sexual harassment.

On the evening of June 21, 2018 Caryn and JP worked late together on a case. Caryn routinely rode her bike to work. JP had offered her a ride home based on the fact there was rain in the forecast. Caryn declined the ride and said she was tough and would ride home. When JP left the office and got off the elevator it was storming outside so he sent a subsequent text message again asking Caryn if she wanted a ride (Exhibit8). Caryn did not respond to the text so JP waited for her in the lobby. He stated to me during his interview that he was standing in a part of the lobby that was in shadow and was considering leaving, but thought he should wait since he had sent her a text offering a ride and did not want Caryn to think he just left after making the second offer. When he was about to leave Caryn came off the elevator and that is when he asked her again. Caryn again declined and left the building to ride home. Caryn stated this had creeped her out and that JP had cornered her in the lobby. I asked JP how far away he was standing when Caryn came off the elevator and he said he was about 100 feet away. I understand there is no way to prove either scenario happened, however I find it important to include this in my summary.

JP and Caryn then had a heated exchange regarding a conflict in schedule with a presentence interview and a review of evidence in a case Caryn had been second chair on. He felt she was not honoring the commitment she made to attend the presentence interview by knowingly scheduling the review of evidence at the same time. This upset JP and there was an email exchange that took place. (Exhibit 6).

Caryn took this exchange to be that JP had berated her. I believe this was overexaggerated. JP had spoken with Mr. Martinez and got his blessing to discuss this conduct with Caryn and how he felt about it. JP had felt Caryn was misrepresenting how these two meetings came into conflict with each other and was upset about what seemed to be dishonesty on Caryn's part. He also felt Caryn had misrepresented the facts when she approached Mr. Martinez about getting on this case as it was representing a client who faced a life sentence on a child pornography charge. The lead attorney on the

US00001256

case was a new attorney and JP felt there could be issues if the two newest attorneys in the district were representing this client. Mr. Martinez showed poor judgement and decision-making when he agreed to let Caryn be the second chair on this case. JP had stated his concerns to Caryn and so had Caryn's direct supervisor Mr. Peter Adolf. Caryn neglected to bring up these concerns when she approached Mr. Martinez at the end of the day. This was the turning point of his relationship with Caryn and it remained contentious going forward from that event.

Mr. Martinez attempted to mediate between Caryn and JP even after Caryn stated she was uncomfortable meeting with JP and wanted to speak with Mr. Martinez separately and in private. Ultimately Caryn was able to speak to Mr. Martinez without JP present, however the initial handling of this incident also elevated the severity of Caryn's feelings about this allegation of sexual harassment and retaliation.

**Suggested Actions to Be Taken:**

JP Davis MUST be counseled and trained on workplace conduct issues and professional communications via email. I have seen copies of other emails where he has used profanity and this is simply unprofessional in a court environment. I must clarify the profanity used was not *at* anyone as it was simply used in a sentence.

Mr. Martinez MUST also be counseled and trained on how to handle workplace conduct complaints. He should also be counseled or training on judgement and decisiveness. From my interview with him and these decisions he made he had commented most of these were made at the end of a day where he attended meetings all day and was tired.

I would not recommend terminating employment for either individual, Mr. Davis or Mr. Martinez. This situation should be documented and discussed.

Mrs. Devins has experienced in her mind sexual harassment although the facts discovered in this case find this claim to be very flimsy. This investigation has also found she has also exploited poor judgement and decision-making skills of upper management to attain her goal of a transfer to Asheville.

US00001257

Exhibit 1

## FEDERAL PUBLIC DEFENDER
## WESTERN DISTRICT NORTH CAROLINA

**Ross Richardson**
Interim Federal Public Defender

129 West Trade Street
Suite 300
Charlotte, NC 28202
(704) 374-0720
Fax (704) 374-0722



1 Page Avenue
Suite 210
Asheville, NC 28801
(828) 232-9992
Fax (828) 232-5575

March 24, 2017

Ms. Caryn Devins
18 Oak Beach Drive
Burlington, Vermont 05401

Re: Offer letter for attorney position

Dear Caryn,

This offer letter confirms our conversation regarding your employment as a Research and Writing Specialist Attorney with the expectation that you will transition to an Assistant Defender position. You will be working at the Charlotte Headquarters Office. Your salary has been set in accordance with Defender Services Office policy at Grade 14, Step 1, earning $101,929 per annum, including locality pay. At this time, we expect your start date to be between July 15 and August 15, 2017, but that may change depending upon circumstances.

You will be eligible for the federal benefits package including health insurance, dental insurance, life insurance, and retirement benefits. You will accrue sick leave at the rate of 4 hours per pay period and accrue annual leave at the rate of 4 hours per pay period. Employment terms are subject to final approval by the Defender Services Office and the Administrative Office of the Courts.

We are excited about the talents and skills you bring to this position and are looking forward to working with you.

If you have any questions, please contact William Moormann, our Administrative Officer.

Sincerely,

Ross Richardson

Ross Richardson
Federal Public Defender, Interim

Signed: _____
Caryn Devins

US00001258



**Position**
Ross Richardson  to: Caryn Devins

03/21/2017 02:57 PM

| From: | Ross Richardson/NCWF/04/FDO@FDO |
|---|---|
| To: | Caryn Devins/DCA/AO/USCOURTS@uscourts |
| History: | This message has been forwarded. |

Caryn,

It was great to meet you on Monday. We enjoyed talking with you and are excited about the possibility of you joining our office. We would like to offer you the position of Research and Writing Attorney. As we discussed to some extent last Monday, the idea would be for you to be in this role initially in order to get some experience. We would look to move you to an Assistant Federal Defender position pretty soon thereafter. Bill has taken a preliminary look at your experience and education to determine starting salary and we think that we could start you at Grade 14, step 1, which is $101,929.00 annually.

We will draw up a formal offer letter with these terms. I would've liked to have talked with you by phone about this but I am in and out of the office a lot this week so it would be hard to schedule.

Please let me know if you are still interested and I will get the offer letter to you.

Best,

Ross

Sent from my iPhone

US00001259



**Mas Dinero**
JP Davis   to: Caryn Devins                                05/18/2018 03:56 PM

Dude, you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan... just remember I deal in pay-for-stay :)

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00001260

Exhibit 3

 **Re: Agreement from yesterday's meeting** 🗋
Anthony Martinez    to: Caryn Devins                                08/17/2018 01:52 PM
Cc: James Ishida, Heather Beam

From:        Anthony Martinez/NCWF/04/FDO@FDO
To:          Caryn Devins/NCWF/04/FDO@FDO
Cc:          James Ishida/CE04/04/USCOURTS@USCOURTS, Heather
             Beam/NCWP/04/USCOURTS@USCOURTS


To:          Caryn_Devins@fd.org

Cc:          ▮▮▮▮@ca4.uscourts.gov, Heather_Beam@ncwp.uscourts.gov

Caryn,

As a result of our meeting on Thursday, 8/9/18 I have done the following:

1. I have instructed our Administrative Officer William Moorman to start the process to make you an Assistant Federal Defender. As I indicated to you at our meeting, Josh and Bill spoke with Todd Watson, who advised that it was to the office's advantage to reclassify Research & Writing Specialists to AFD positions for purposes of case weight measurement.  Bill has already started the paperwork.

2. At our meeting I never agreed to allow you to work exclusively on appeals. I advised you I personally had no problem with it but had to clear it through Appellate Chief Josh Carpenter. If I were to allow you to only work on appeals, it would leave me with only one Research & Writing Specialist to support nine trial attorneys. After discussion with Josh about this request, we determined this is not doable and I will not agree to have you do appeals exclusively.

3. We have already changed the organizational chart to reflect that you will report to the Appellate Chief, who will report to the Federal Defender.  As Appellate Chief, Josh Carpenter is aware of this change.

In your email you state, "these steps are necessary to protect myself from further sexual harassment by the First Assistant". You further state, "The First Assistant has already crossed many lines with me by engaging in sexually harassing and threatening behaviors..." I take allegations of wrongful conduct on the part of my employees very seriously. Based on your allegation of sexual harassment and my obligation pursuant to the Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit Chapter IX, I have contacted the Circuit Executive for the 4th Circuit and advised him of this allegation. The Circuit Executive has promptly informed Chief Judge Gregory. Our office also has an EDR plan but it doesn't appear to apply in this case.

Under the 4th Circuit Court of Appeals EDR plan, you have certain rights. The

US00001261

investigation into these allegations will be conducted by Heather Beam who is the HR professional for the US District Court in the Western District of NC. Ms. Beam has been approved to conduct this investigation by the Circuit Executive. Both Ms. Beam and I will need to meet with you in order to advise you of your rights under the 4th Circuit Court of Appeals EDR plan. We will be in contact with you some time next week since Ms. Beam will be out of the office for training from Monday through Thursday. In the meantime, I will allow you to telework temporarily during the pendency of this investigation. This is not a permanent solution. I am reserving the right to request your return to your duty station in Charlotte subject to and upon completion of this investigation. I am also going to count the time from Friday, 8/10/18 (the date of your email) through today as Administrative leave so you do not have to use your sick leave. If you have any additional questions, please feel free to ask.

I will also be in touch with you to ask you the status of some of the cases you have been handling.

Thank you,


**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

Caryn Devins---08/10/2018 11:12:42 AM---Tony, I am confirming what we discussed yesterday. We agreed to the following:

From: Caryn Devins/NCWF/04/FDO
To: Anthony Martinez/NCWF/04/FDO@FDO
Date: 08/10/2018 11:12 AM
Subject: Agreement from yesterday's meeting

Tony,

I am confirming what we discussed yesterday. We agreed to the following:

1. I will be an Assistant Federal Defender;
2. I will work exclusively in appeals;
3. The First Assistant will not be in my chain of command or have any supervisory authority over me. I will report to the Appellate Chief, who will report to the Federal Defender. The organizational chart will be modified to reflect this.

As we discussed, these steps are necessary to protect myself from further sexual harassment by the First Assistant, and to allow me to do my job effectively going forward.

In addition, as I told you, I am not safe working in the Charlotte office. The First Assistant has already crossed many lines with me by engaging in sexually harassing and threatening behaviors, such as cornering me in the lobby after hours when he knew I was alone. I have already curtailed my working hours to avoid being alone in the building and this situation is not tenable moving forward. The First Assistant is likely to be very angry when he finds out about these changes, which puts me at further risk.

You indicated that there was an issue with office space in Asheville and that it might take up to two weeks to resolve the issue, but that you would report back to me in a week. In order to prevent further threats to my safety, I am requesting to work remotely until the duty station issue is resolved. A long-term resolution that allows me to work remotely and report to the Appellate Chief in Asheville is fine with me. An exception to the telework policy can be justified by the lack of office space in Asheville.

Caryn

Sent from Mail for Windows 10

US00001264

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

Exhibit 4

## Federal Public Defender - Western District of North Carolina
## Organization Chart



**Anthony Martinez** — Federal Defender

**Holly Dixon** — Legal Assistant to the Defender

**JP Davis** — Trial Team Leader / First Assistant

**William Moormann** — Administrative Officer
- **Amanda Buckner** — Administrative Assistant
- **Kathy Phillips** — Administrative Assistant
- **Nancy Kimbrough** — Panel Administrator
- **Karen Wallace** — Panel Administrator
- **Imelda Garcia** — Receptionist

**Phil Likins** — Computer Systems Administrator
- **Tony Hellen** — Assistant Computer Systems Admin.

- **Elizabeth Blackwood** — Attorney
- **Kelly Johnson** — Attorney
- **Claudia Garcia** — Assistant Paralegal
- **Kimberly Moseff** — Investigator
- **Vacant** — Legal Assistant

**Peter Adolf** — Trial Team Leader
- **Kevin Tate** — Senior Litigator
- **Cecilia Oseguera** — Attorney
- **Lisa Ottens** — Paralegal
- **Terra Parrish** — Investigator
- **Ivette Arroyo-Becker** — Senior Legal Assistant

**Erin Taylor** — Trial Team Leader
- **Rahwa Gebre-Egziabher** — Attorney
- **Myra Cause** — Attorney
- **Jackson Riley** — Assistant Paralegal
- **LaTorya Blackwell** — Investigator
- **Martina Melendez** — Interpreter

**Mary Ellen Coleman** — Trial Team Leader / Branch Supervisor
- **Fredilyn Sison** — Training Director / Coord. - Attorney
- **Emily Jones** — Attorney
- **Nancy Smith** — Mitigation Specialist/Paralegal
- **James Allard** — Investigator
- **Iveth Ahumada** — Receptionist

**Josh Carpenter** — Appellate Chief
- **Ann Hester** — Attorney
- **Ross Richardson** — Attorney
- **Larry Jones** — Paralegal

- **Jared Martin** — Attorney
- **Caryn Devins** — Attorney
- **Vacant** — Attorney

⩔ JP Davis---06/01/2018 03:24:52 PM---My apologies, I have been completely absorbed in the ███ matter. I am doing some more research here and then I was planning o

From:    JP Davis/NCWF/04/FDO
To:      Caryn Devins/NCWF/04/FDO@FDO
Date:    06/01/2018 03:24 PM
Subject:    Re: ███

The meeting was primarily to inform Mr. ███ of the ruling and discuss the case. I don't need you to go with me; I just asked if you wanted to go and took your response as a yes. It's fine for you to not.

I did notice that you looked pretty unhappy earlier. I hope you feel better. I'm happy to offer a drink and an ear if you need one, though I get the feeling you are not comfortable talking to me about it. Might I suggest Mary Ellen? She's completely separate from all aspects of this and would give you some good perspective.

Sent from IBM Verse

Caryn Devins --- Re: ███ ---

From:        "Caryn Devins" <Caryn_Devins@fd.org>
To:          "JP Davis" <JP_Davis@fd.org>
Date:        Fri, Jun 1, 2018 2:43 PM
Subject:     Re: ███

My apologies, I have been completely absorbed in the ███ matter. I am doing some more research here and then I was planning on leaving a little early. I am completely mentally and emotionally exhausetd.

This is to discuss with him the plea options? Not sure if you really need me to go with you but if so then Monday would probably work better for me. Thanks, Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain

US00001265

information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

JP Davis---06/01/2018 12:12:27 PM---I wasn't able to fit him in this morning. I could meet you there at 1:15 or head down at 3:30. You c

From: JP Davis/NCWF/04/FDO
To: Caryn Devins/NCWF/04/FDO@FDO
Date: 06/01/2018 12:12 PM
Subject: Re: █████

I wasn't able to fit him in this morning. I could meet you there at 1:15 or head down at 3:30. You can also go see him without me if that works better.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

Caryn Devins---05/31/2018 05:58:44 PM---I have a meeting tomorrow morning for █████ I have no idea how long it will take. Let me know when

From: Caryn Devins/NCWF/04/FDO
To: JP Davis/NCWF/04/FDO@FDO
Date: 05/31/2018 05:58 PM
Subject: Re: █████

I have a meeting tomorrow morning for █████ I have no idea how long it will take. Let me know when you're going and I'll let you know if I can join you. Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720

**From:** JP Davis
**To:** Caryn Devins
**Subject:** Re:█████
**Date:** 06/01/2018 03:48 PM

I understand. My comments were directed as much at the being exposed to child molestation parts as the office drama. We tend to laugh it off day to day, but everyone of us have suffered through it and it really is okay to talk about it if you need to.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

℣ Caryn Devins---06/01/2018 03:28:03 PM---I'm totally fine, we are figuring out a ton of useful information about this case and connecting som

From: Caryn Devins/NCWF/04/FDO
To: JP Davis/NCWF/04/FDO@FDO
Date: 06/01/2018 03:28 PM
Subject: Re:█████

I'm totally fine, we are figuring out a ton of useful information about this case and connecting some dots. It is just intense to read about child molestation all day.

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

US00001267



**watt :(**
Caryn Devins    to: JP Davis                                    06/05/2018 05:57 PM

From:     Caryn Devins/NCWF/04/FDO
To:       JP Davis/NCWF/04/FDO@FDO
History:              This message has been replied to.

JP, I have to review kiddie porn in Dixon's case on Thursday at 9am. I know that is the time Watt's PSI, but it was the only time everyone was available. The FBI agents are going to be gone Friday and all of next week so I'm trying to get all discovery reviewed this week.

Sorry again!

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

US00001268



**Re: watt :(**
JP Davis   to: Caryn Devins                                              06/05/2018 06:45 PM

From:       JP Davis/NCWF/04/FDO
To:         Caryn Devins/NCWF/04/FDO@FDO

That's really not okay with me.

Sent from IBM Verse

Caryn Devins --- watt :( ---
From:       "Caryn Devins" <Caryn_Devins@fd.org>
To:         "JP Davis" <JP_Davis@fd.org>
Date:       Tue, Jun 5, 2018 5:57 PM
Subject:    watt :(

JP, I have to review kiddie porn in Dixon's case on Thursday at 9am. I know that is the time Watt's PSI, but it was the only time everyone was available. The FBI agents are going to be gone Friday and all of next week so I'm trying to get all discovery reviewed this week.

Sorry again!

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

US00001269



**Re: watt :(**
Caryn Devins    to: JP Davis                                                 06/05/2018 06:47 PM

From:       Caryn Devins/NCWF/04/FDO
To:         JP Davis/NCWF/04/FDO@FDO
History:              This message has been replied to.

Is that sarcasm or for real?

Sent from my iPhone using IBM Verse

On Jun 5, 2018, 6:45:06 PM, JP_Davis@fd.org wrote:

From: JP_Davis@fd.org
To: Caryn_Devins@fd.org
Cc:
Date: Jun 5, 2018, 6:45:06 PM
Subject: Re: watt :(

That's really not okay with me.

Sent from IBM Verse

Caryn Devins --- watt :( ---
From:       "Caryn Devins" <Caryn_Devins@fd.org>
To:         "JP Davis" <JP_Davis@fd.org>
Date:       Tue, Jun 5, 2018 5:57 PM
Subject:    watt :(

JP, I have to review kiddie porn in Dixon's case on Thursday at 9am. I know that is the time Watt's PSI,
but it was the only time everyone was available. The FBI agents are going to be gone Friday and all of
next week so I'm trying to get all discovery reviewed this week.

Sorry again!

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

US00001270

**Re: watt :(**
JP Davis  to: Caryn Devins

06/05/2018 06:53 PM

From:    JP Davis/NCWF/04/FDO
To:      Caryn Devins/NCWF/04/FDO

Real.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

| Caryn Devins | JP, I have to review kiddie porn in Dixon's case... | 06/05/2018 06:47:33 PM |

From:     Caryn Devins/NCWF/04/FDO
To:       JP Davis/NCWF/04/FDO@FDO
Date:     06/05/2018 06:47 PM
Subject:  Re: watt :(

Is that sarcasm or for real?

Sent from my iPhone using IBM Verse

On Jun 5, 2018, 6:45:06 PM, JP_Davis@fd.org wrote:

From: JP_Davis@fd.org
To: Caryn_Devins@fd.org
Cc:
Date: Jun 5, 2018, 6:45:06 PM
Subject: Re: watt :(

That's really not okay with me.

Sent from IBM Verse

Caryn Devins --- watt :( ---
From:      "Caryn Devins" <Caryn_Devins@fd.org>
To:        "JP Davis" <JP_Davis@fd.org>
Date:      Tue, Jun 5, 2018 5:57 PM
Subject:   watt :(

JP, I have to review kiddie porn in Dixon's case on Thursday at 9am. I know that is the time Watt's PSI, but it was the only time everyone was available. The FBI agents are going to be gone Friday and all of next week so I'm trying to get all discovery reviewed this week.

US00001271

Sorry again!

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

US00001272



**Re: meet this morning?**
JP Davis  to: Caryn Devins

06/06/2018 09:35 AM

From:    JP Davis/NCWF/04/FDO
To:      Caryn Devins/NCWF/04/FDO@FDO

I'm free now, have something at 10, should be back from that between 10:30 and 11 and am open from then until 1. Whatever works best for you.

Sent from IBM Verse

Caryn Devins --- meet this morning? ---

From:     "Caryn Devins" <Caryn_Devins@fd.org>
To:       "JP Davis" <JP_Davis@fd.org>
Date:     Wed, Jun 6, 2018 8:53 AM
Subject:  meet this morning?

Hey let me know when you're free and maybe we can talk this morning. Best, Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

 **Watt Tomorrow**
JP Davis   to: Caryn Devins                                    06/06/2018 03:02 PM

From:     JP Davis/NCWF/04/FDO
To:       Caryn Devins/NCWF/04/FDO@FDO

We will need to see him in advance, so should go down a little early. Let's plan on
heading out at 8:15.

Sent from IBM Verse

US00001274

| From: | JP Davis |
|---|---|
| To: | Caryn Devins |
| Cc: | Peter Adolf; Anthony Martinez |
| Subject: | Re: ▆▆ tomorrow |
| Date: | 06/06/2018 05:27 PM |

Caryn,

This is not the right way to handle this situation. You made the knowing and deliberate decision to disregard your commitment and schedule the FBI review without even raising the preexisting PSI or clearing it with me ahead of time. The fact that it is now scheduled is your own doing.

I did not give you an option this morning. I am directing you to attend the PSI. If you choose to disobey a direct order, that is an action that I as a supervisor cannot ignore.

I will have my phone if you would like to discuss this further. Otherwise, I expect you to be ready to go at 8:15.

JP

Sent from IBM Verse

Caryn Devins --- ▆▆ tomorrow ---

| From: | "Caryn Devins" <Caryn_Devins@fd.org> |
|---|---|
| To: | "JP Davis" <JP_Davis@fd.org> |
| Date: | Wed, Jun 6, 2018 5:11 PM |
| Subject: | ▆▆ tomorrow |

JP,

I am sorry, but the FBI meeting time is set and I cannot change it at this point. I will not be able to attend the PSI meeting tomorrow.

I was under the impression that this was a shadowing activity that is optional and that we could find other similar activities if schedules could not be accommodated, as explained in the email below. I very much appreciate the opportunity for mentorship and hopefully there is another one we can go to soon.

Thank you,

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

US00001275

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

----- Forwarded by Caryn Devins/NCWF/04/FDO on 06/06/2018 05:06 PM -----

From: JP Davis/NCWF/04/FDO
To: Caryn Devins/NCWF/04/FDO@FDO
Date: 03/13/2018 09:53 AM
Subject: Re: ▮▮▮ raincheck

No worries, though sucks not to have you there. We'll find another one. Also, I'm sure you know this, but you don't have to do these shadowing things with me; just let me know if you do something with someone else so I can check it off your list.

PS - after yesterday, I'm going to add "Evidence Review" to the checklist. That really is something every new attorney should do, glad you suggested it.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722
Caryn Devins---03/13/2018 08:54:57 AM---JP, I am so sorry but I am going to have to take a rain check on ▮▮▮ ▮▮▮ tomorrow. I have to prep

From: Caryn Devins/NCWF/04/FDO
To: JP Davis/NCWF/04/FDO@FDO
Date: 03/13/2018 08:54 AM
Subject: ▮▮▮ raincheck

JP,

I am so sorry but I am going to have to take a rain check on ▮▮▮ ▮▮▮ tomorrow. I have to prepare for two SRV hearings next week and that is the only day I can visit the clients. Hopefully I'll be able to visit a debrief with you another time.

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

US00001276



**Re: Brief** 🗋
Caryn Devins    to: JP Davis                  06/19/2018 05:22 PM

Good, glad to see it done. Yes I have a bunch of things going on but I hope you enjoy. Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public
Defender's Office which is confidential or privileged. The information is intended only for the use of the
individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any
disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have
received this e-mail in error, please notify us immediately by reply e-mail.

---

JP Davis          Yes, I did that for purposes of humanizing the cli...      06/19/2018 05:00:34 PM

| | |
|---|---|
| From: | JP Davis/NCWF/04/FDO |
| To: | Caryn Devins/NCWF/04/FDO@FDO |
| Date: | 06/19/2018 05:00 PM |
| Subject: | Re: Brief |

Yes, I did that for purposes of humanizing the client. I'm aware it may be off-putting if you're used to a drier
writing style, but in my experience that form of psychological distance-closing can be effective.

Thanks. I'm going to get this filed and get a celebratory drink. You're welcome to join me, but if I recall
correctly, you have an appellate brief to write.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

---

Caryn Devins        Sorry for not getting to this earlier, busy aftenroo...      06/19/2018 04:33:48 PM

| | |
|---|---|
| From: | Caryn Devins/NCWF/04/FDO |
| To: | JP Davis/NCWF/04/FDO@FDO |
| Date: | 06/19/2018 04:33 PM |
| Subject: | Re: Brief |

Sorry for not getting to this earlier, busy aftenroon. I agree it's close and I mostly just fixed a few minor
typos in track changes. the only thing I wanted to double check is that you want to refer to him as ▨▨▨

JP said no and him and Pete were joking about it on the email thread.

Last night we were at the office until around 7pm working on forfeiture issues. When we were getting to leave he said, I assume you didn't ride your bike today. I said yes I did. He said, it looks like it's going to rain, do you want a ride? I said I just checked the weather and it said 5% chance of rain. I said I will be fine, I'm tough. I went and changed and when I was leaving the office, I ran & had signed out, even I took the elevator down to the lobby, he was standing there waiting. He said are you sure? I said yes I'm sure, I will be fine. When I got home I saw I had text messages from him from 6:45 pm. He said, "It's raining. Last chance for a ride, tough girl."

*[margin note: 6:45pm and accurate]*

I may be paranoid, but I am afraid to be alone w/ him. ~~I don't~~ He seems to be pushing for that. I don't know if it's because he wants to spend time w/ me, because he wants try something, or because he wants to create the impression of something inappropriate to blackmail me later.

He has a habit of ~~stepping~~ knowing exactly when I'm leaving and seeming like if ('s) coincidental when he walks around the corner right at the same time. Obviously he is waiting for me. I will start writing down

US00001278

every time this happens.

The other day when I saw Nancy, she said she had mentioned to JP that I would be great in Asheville and there is office space there for me. She said she was told (I'm not sure by who—maybe Che ME or Josh) never to talk about that again.



●●○○○ Verizon 📶          2:15 PM          🌙 ⏱ ⚹ 75% ▰▰

  **‹** 3          **Jp**          

Exhbt 8

Fri, Jun 15, 5:44 PM

Hey, just tried to call and missed you. Feel free to give me a call back whenever.

Thu, Jun 21, 6:44 PM

It is currently raining.

Last chance for a ride, tough girl...

Fri, Jun 22, 5:02 PM

How would you feel about handling a sentencing hearing

1 of 1                                    10/4/2018, 1:49 PM

US00001280

Exhibit 9 



**Re: Fw: Jeff King cases to Caryn**
Anthony Martinez   to: JP Davis

06/26/2018 04:44 PM

I'd rather she'd not know I shared the email. This way I keep the channel of communication open with her. Please do sit down with her though.


**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

\*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

| JP Davis | I just got done talking with Erin and Peter. I've ca... | 06/26/2018 04:28:07 PM |
|---|---|---|

From:     JP Davis/NCWF/04/FDO
To:       Anthony Martinez/NCWF/04/FDO@FDO
Date:     06/26/2018 04:28 PM
Subject:  Re: Fw: Jeff King cases to Caryn


Good. That is likely the better approach. I may still try to sit down with her.... if I so, do you care if I refernce her email? I don't need to if you'd rather she not know you shared it.

Sent from IBM Verse

Anthony Martinez --- Re: Fw: Jeff King cases to Caryn ---

From:     "Anthony Martinez" <Anthony_Martinez@fd.org>
To:       "JP Davis" <JP_Davis@fd.org>
Date:     Tue, Jun 26, 2018 3:55 PM
Subject:  Re: Fw: Jeff King cases to Caryn

I just got done talking with Erin and Peter. I've calmed down substantially and I've decided to change my approach. I'm going to be very encouraging in my approach. I'll tell her the same thing I told her when she called me the night before the cross examination of the cop. That is, " I have complete confidence in you that you can do

US00001281

this....." She's not going to pick and choose what cases she's going to work on. So, I'm going to stop worrying about it.

Thanks

**Anthony Martinez**
Federal Public Defender

 Western District of North Carolina
129 West Trade Street, Suite 300.
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

JP Davis---06/26/2018 03:33:30 PM---Good question. I don't know if she raised her concerns to Peter. I will venture to guess not.

From: JP Davis/NCWF/04/FDO
To: Anthony Martinez/NCWF/04/FDO@FDO
Date: 06/26/2018 03:33 PM
Subject: Re: Fw: Jeff King cases to Caryn

Tony,

Didn't get a chance to check in with you on this before I had to leave. I may regret it, but I think I'd like to try talking to her 1-on-1 before we have a come-to-Jesus. In part, I'd like to try a different approach based on what we discussed earlier; in part I feel some sense of obligation being that I have never formally retired from being her mentor, even if that relationship is effectively over. What do you think? We can discuss in the AM if that's easier.

JP

Sent from IBM Verse

Anthony Martinez --- Re: Fw: Jeff King cases to Caryn ---

From:      "Anthony Martinez" <Anthony_Martinez@fd.org>
To:        "JP Davis" <JP_Davis@fd.org>

US00001282

Cc: "Joshua B Carpenter" <Joshua_Carpenter@fd.org>
Date: Tue, Jun 26, 2018 1:00 PM
Subject: Re: Fw: Jeff King cases to Caryn

Good question. I don't know if she raised her concerns to Peter. I will venture to guess not.

Thanks

**Anthony Martinez**
Federal Public Defender

 Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

JP Davis---06/26/2018 12:29:44 PM---Tony, I believe Caryn has told me she has started the drafting on Chavez-Lopez. Recollect that she

From: JP Davis/NCWF/04/FDO
To: Joshua B Carpenter/NCWF/04/FDO@FDO
Cc: Anthony Martinez/NCWF/04/FDO@FDO
Date: 06/26/2018 12:29 PM

Subject: Re: Fw: Jeff King cases to Caryn

Tony,

I believe Caryn has told me she has started the drafting on Chavez-Lopez. Recollect that she took a day of TEL a few weeks ago to work on it. If I recall correctly, she was at the drafting stage then. I could be misremembering, but hopefully, that means she has made significant progress. Regardless, I know that as of last week, she felt she had to put in more time on it.

I would also add that during our meeting last week to divvy up cases, when the idea of Caryn handling the uncontested time-served illegal reentry sentencings came up, I texted her to ask how she would feel about handling something like that. Shortly thereafter, I sent her an email pointing her to my text. She has never responded to either.

Do we know if she raised these issues to Peter? I am concerned she is developing a habit of not expressing her real concerns up front and then complaining up the chain.

J.P. Davis
First Assistant Federal Defender

US00001283

Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

Joshua B Carpenter---06/26/2018 11:58:11 AM---For Chavez-Lopez, she owes me a draft of the opening brief at some point soon, preferably by the end

From: Joshua B Carpenter/NCWF/04/FDO
To: Anthony Martinez/NCWF/04/FDO@FDO
Cc: JP Davis/NCWF/04/FDO@FDO
Date: 06/26/2018 11:58 AM
Subject: Re: Fw: Jeff King cases to Caryn

For Chavez-Lopez, she owes me a draft of the opening brief at some point soon, preferably by the end of next week, but I've not given her a precise internal deadline. The filing deadline in the Fourth Circuit is now July 18, so I need it a good while in advance of that so that I can review and give her an opportunity to make any needed revisions. She's already reviewed the trial transcripts and we've talked through the two issues we'll be raising in the brief. So I believe all that's left is for her to write it up. The appeal is from a trial, though, so the writing process will take some time. If she's not started drafting yet, I would anticipate that she'll need something like 2-3 full days (16-24 hours) of effort to draft and revise it into good shape for my review.

For Cornette, she is right that we'll be filing a motion for a new briefing schedule, which will likely put our amended opening brief due in mid-to-late July. But I will not need much work from her in that regard. At this point, I suspect that her time commitment for that case will be less than one full day (8 hours) over the course of the next month. We had not discussed this yet, though, so it wasn't unreasonable for her to expect that more would be required. The reply brief won't be an issue until the government files its reply, likely in September.

Joshua B. Carpenter
Appellate Chief
Federal Public Defender
Western District of North Carolina

US00001284

One Page Ave., Suite 210
Asheville, NC 28801
(828) 232-9992

Anthony Martinez---06/26/2018 11:12:10 AM---Josh, What exactly does Caryn have to do on the Chavez-Lopez and the Randall Cornette cases? I need

From: Anthony Martinez/NCWF/04/FDO
To: Joshua B Carpenter/NCWF/04/FDO@FDO
Cc: JP Davis/NCWF/04/FDO@FDO
Date: 06/26/2018 11:12 AM
Subject: Fw: Jeff King cases to Caryn

Josh,

What exactly does Caryn have to do on the Chavez-Lopez and the Randall Cornette cases? I need to nip this whining in the bud. She has 1 case in Defender Data and the other cases she mentions there is nothing pending at the moment.

Thanks,
Tony

**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.
----- Forwarded by Anthony Martinez/NCWF/04/FDO on 06/26/2018 11:08 AM -----

From: Caryn Devins/NCWF/04/FDO
To: Anthony Martinez/NCWF/04/FDO@FDO
Date: 06/26/2018 10:46 AM
Subject: Fw: Jeff King cases to Caryn

Dear Tony,

US00001285

I wanted to give you a status update on my workload in light of the new case assignments below.

1. I have a preexisting commitment to Josh to work on an appeal in US v. Chavez-Lopez. We have already gotten one extension (due to other pressing R&W commitments in trial cases) and I am on a hard deadline to finish the brief shortly.

2. I have another commitment to work with Josh on an appeal in US v. Randall Cornette, a 2255 case involving complex retroactivity and Simmons issues. We filed an opening brief in March. The Fourth Circuit just reversed the district court and granted us a certificate of appealability last week. I anticipate that we will ask for a formal briefing schedule, which will require further briefing and, in any event, I will be required to draft a reply brief.

3. Kevin has a trial coming up on Fuentes and I will be providing R&W support. The docket call is set July 16.

4. I am also working on Alexander Smith and Aaron Dixon, among other trial cases. As you know, both of those cases involve difficult issues and substantial R&W support.

In light of these preexisting commitments and others, I do not have the capacity to work on any of these newly-assigned cases until after I finish the appeals briefs and help Kevin with the Fuentes trial later this month, at a minimum. I wanted to be upfront with you with my scheduled commitments. I do not want to be ineffective simply by being assigned more cases than I can handle.

In addition, I am concerned that I have not received any training in handling these these types of cases. For example, I have never worked on an illegal reentry case. I was assured that these particular cases are straightforward, but in similar situations in the past, I have sometimes found that not to be the case.

I am happy to talk with you in person about this further, and I am of course happy to do what needs to be done to help with the office, but I have concerns about this situation and felt I needed to express them to you directly.

Thanks,

Caryn


Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

----- Forwarded by Caryn Devins/NCWF/04/FDO on 06/26/2018 10:16 AM -----

US00001286

From: Ivette Arroyo-Becker/NCWF/04/FDO
To: Caryn Devins/NCWF/04/FDO@FDO
Cc: Lisa Ottens/NCWF/04/FDO@FDO
Date: 06/26/2018 10:08 AM

Subject: Jeff King cases to Caryn


Stamey Ricky 5:10cr062 SRV- waiting on Hrg Date-
Moses, Jordan 3:12cr282 SRV- waiting on Hrg Date
Locklear, Shelton 3:14cr234 SRV- waiting on Hrg Date
Mendoza, Jose 3:18cr17 reentry- Waiting on sentencing date- I looked in file- character letter info unsure
as to whether sent or not, not sure if client has copies of his final PSR- I will check with Martina
Morel, Henry 3:18cr020 reentry- Waiting on sentencing date- I looked in file- nothing in correspondence
folder so not sure if client has received copies of anything- I will check with Martina




Ivette Arroyo-Becker
Senior Legal Assistant
Federal Public Defenders
Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte NC 28202
Main: 704-374-0720
Fax: 704-374-0722
Direct: 704-688-6920
E-mail: Ivette_Arroyo-Becker@fd.org

CONFIDENTIALITY NOTE
This email, and any attachments accompanying this e-mail, contain information from the Federal
Defenders of Western North Carolina which is confidential or privileged. The information is intended only
for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be
aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If
you have received this e-mail in error, please notify us immediately by reply e-mail.d[attachment
"Arroyo-Becker_Ivette.vcf" deleted by Joshua B Carpenter/NCWF/04/FDO]

US00001287

Exhibit 10



**RE: Catching up**
Caryn Devins  to: JP Davis

06/28/2018 06:49 AM

History:        This message has been replied to.

Ok, how about 9am then. Thanks, Caryn

Sent from Mail for Windows 10

**From:** JP Davis
**Sent:** Wednesday, June 27, 2018 4:53 PM
**To:** Caryn Devins
**Subject:** Re: Catching up

Yes, I think just about everyone is deep underwater right now. I certainly am. Friday morning is fine, we
can meet in the large conference room. Let's plan on at least an hour, though it may not take that long. Let
me know what time works; I was scheduled for duty so I'm wide open.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

| Caryn Devins | Hey JP, I'm pretty swamped this week and woul... | 06/27/2018 02:25:19 PM |

From:       Caryn Devins/NCWF/04/FDO
To:         JP Davis/NCWF/04/FDO@FDO
Date:       06/27/2018 02:25 PM
Subject:    Re: Catching up

Hey JP,

I'm pretty swamped this week and would prefer to meet in office. I'm free Friday morning, does that work
for you?

Thanks,

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina

US00001288

129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public
Defender's Office which is confidential or privileged. The information is intended only for the use of the
individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any
disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have
received this e-mail in error, please notify us immediately by reply e-mail.

| JP Davis | Hey Caryn, Can we catch up for a little bit some t... | 06/27/2018 11:52:05 AM |

| | |
|---|---|
| From: | JP Davis/NCWF/04/FDO |
| To: | Caryn Devins/NCWF/04/FDO@FDO |
| Date: | 06/27/2018 11:52 AM |
| Subject: | Catching up |

Hey Caryn,

Can we catch up for a little bit some time this week? I think it would be good for us to
have another mentoring session. We can do it over lunch, or cut out early one day for a
celebratory post-Davis drink, or we can just do it in the office-- I think it might be good
to have some distance from work, but whatever makes you most comfortable is fine with
me. I am free all day tomorrow and Friday; could even do this afternoon after I get out of
a debrief. Just let me know what your schedule is like.

JP

Sent from IBM Verse

US00001289



**Re: Catching up** 🗅
Caryn Devins  to: JP Davis

06/27/2018 02:25 PM

History:     This message has been replied to.

Hey JP,

I'm pretty swamped this week and would prefer to meet in office. I'm free Friday morning, does that work for you?

Thanks,

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

| JP Davis | Hey Caryn, Can we catch up for a little bit some t... | 06/27/2018 11:52:05 AM |
|---|---|---|

From:     JP Davis/NCWF/04/FDO
To:     Caryn Devins/NCWF/04/FDO@FDO
Date:     06/27/2018 11:52 AM
Subject:     Catching up

Hey Caryn,

Can we catch up for a little bit some time this week? I think it would be good for us to have another mentoring session. We can do it over lunch, or cut out early one day for a celebratory post-Davis drink, or we can just do it in the office-- I think it might be good to have some distance from work, but whatever makes you most comfortable is fine with me. I am free all day tomorrow and Friday; could even do this afternoon after I get out of a debrief. Just let me know what your schedule is like.

JP

Sent from IBM Verse

US00001290

10/2/18

| Meeting w/ Tony |

- I told Tony that all I want to do is keep this in confidence and that I'm giving him a heads up that I'm going to have a meeting w/ FP and that I will need to set boundaries — Tony does not recall this part

- He said what about and what do I mean by wanting his report. I said that he spoke to me inappropriately and berated me and got extremely angry when he sent that email a few weeks/ago. I said I felt uncomfortable and that I've been leaving the office by 5 every night to avoid issues.

He asked is this harassment/sexual harassment, etc? (which led to me saying details above). I said I dont feel we are there yet, I dont want to use words like that to trigger something. I said I am self-managing and that everyone deserves the benefit of me having a conversation w/ him 1st to try to resolve the issue. ①

He said I understand so this a heads up. I said yes, I dont want you to do anything except keep my confidence and so you'll know if something happens. I said I am trying to do this all by the book and this is

US00001291

The advice that I got was to give you ahead's
up. I said I wouldn't want to do any of
this and I certainly wouldn't involve him unless
I thought it was absolutely necessary.

<u>CD Talk</u>

**I-** **Clear Statement of Issue**
    a. Stress/Anxiety
        i. Physical reaction, other acts below
        ii. Pre-wedding

    b. Prioritizing & Managing Workload
        i. Mobley/Watt issues
        ii. Davis
        iii. New post-Jeff assignments
        iv. Past statements

    c. Avoidance/Forgetting/Missing
        i. Last wkend text and email
        ii. Detention & Discovery Projects
        iii. Davis forfeiture mtg
        iv. Absenteeism

    d. Difficulty Handling Change
        i. Davis brief reaction
        ii. Pre-wedding anxiety
        iii. Cross examination call to Tony
        iv. Own statements

    e. Reacting Poorly to Anxiety & Frustration
        i. Cross exam
        ii. Time entries
        iii. Recent assignments

**II-** **Reassurance**
    a. Y? b/c we like U!

**III-** **Obstacles and Issues**
    a. What causes you the most trouble?
        i. Time Management?
        ii. Prioritizing?
        iii. Keeping up with multiple obligations?
        iv. Rearranging plans?

    b. What are your stressors?
        i. Environmental?
        ii. Interpersonal?

US00001293

           iii.  Work flow?

           iv.  Office space?

           v.  Distractions?

c.  What helps?

d.  How do you …. ?
      i.  Approach tasks?
           1.  Plow through a single task excluding all others?

      ii.  How do you schedule your workload?

      iii.  Keep track of assignments, due dates?

      iv.  Communicate?

**IV-**    **Setting Goals**

a.  Short Term

b.  Long Term

**V-**    **Exploring Solutions**

a.  Assistant/Staff usage?

b.  New office space?

c.  Regular help structuring workload and prioritizing?

d.  Structured work flow and clear chain of authority?

e.  Specific person to ask questions?

**VI-**    **Expectations of Caryn**

a.  Do work as instructed by team leader or other supervisor.

b.  Ask for help if you are overwhelmed or otherwise having difficulty prioritizing and balancing your workload. Do not attempt to dictate what assignments you will or won't do.
      i.  Your team leader is your first source for help prioritizing and balancing your workload.

US00001294

c. Try to meet *all* your obligations wherever possible. When a conflict arises, ask for permission *before* cancelling a pre-existing commitment.

d. Respond to legitimate work-related emails or texts asking you for feedback.

e. Ask for specific instructions where you need them, including asking your team leader to establish general practices or procedures that you need.

    i. Try to identify when you are requesting something that you would prefer or would make you more comfortable vs. when what you are requesting is something you actually *need*. Be as clear about the distinction as possible, bearing in mind that your team leader/supervisor may have good reasons for pushing you outside your comfort zone.

f. Communicate concerns as clearly as possible to the appropriate person.

    i. If it is unclear who the appropriate person is, the default is your team leader, except for general office administrative concerns, or any HR-related concerns, which should be communicated to a member of the management team (Bill, Tony or JP), generally Bill.

    ii. If an issue arises involving more than one team leader/supervisor, request a meeting with both or that they speak to each other to clarify priority. Do not try to get one to override the other.

    iii. Respect your team leader or supervisor's decisions and follow their directions if possible.

    iv. Absent a compelling reason not to, let the team leader/first-level supervisor involved know if you feel you must elevate an issue to a higher level supervisor.

g. Work on identifying when your reactions are based on emotion or stress rather than logic or legitimate concern.

h. Find a mentor whose opinion and judgment you respect, and seek their advice when you are stressed or need advice.

i. If you are unsure how to meet these expectations and you cannot or do not feel comfortable asking your team leader or an informal mentor, ask JP or Tony.

**VII-** **Expectations of Us?**

US00001295



**Documenting Conversation with Caryn**
JP Davis  to: JP Davis                                    07/02/2018 05:45 PM

I met today with Caryn to attempt to have a mentoring meeting to help her cope with stress and manage goals and expectations. I began by saying that June had been a rough month, and she was clearly having some trouble and struggling with balancing workload and managing priorities, and I wanted to help her with that, because this job is difficult to manage.

I I told her up front several times that this was not a meeting to say she did something wrong or be critical of her, that it was a mentoring meeting designed to help her deal with her stresses, and that anything I said should be viewed in context of that. I believe I did say something about how I had been frustrated by some of her conduct, but that wasn't what the meeting was about-- my sole purpose was try to help her deal with things for her own benefit. I believe -- though I can't say for sure-- that she accepted that premise, and the later blow up was because she wanted the chance to confront me.

I recounted how she had asked in the past for clear goals and expectations and more structure, and how I had intentionally not provided that to push her outside of her comfort zone. I told her that I didn't think that strategy had accomplished it's intended purpose and that I wanted to work with her to give her what she needed. I said I wanted to start with short term and long term goals, and asked her what they were. She seemed confused that I was asking her to do so right then, and I encouraged her, clarifying that I meant professionally.

Caryn immediately redirected the conversation to the Watt PSI/Dixon discovery cancellation three weeks ago.At this point, she became confrontational, though voices were never raised. I intentionally kept my tone as even as possible and tried to redirect the conversation away from the topic, but Caryn stated that she felt like it needed to be discussed. Thereafter, I tried to keep the conversation from becoming argumentative while simultaneously not giving ground on the fact that her behavior was unacceptable.

Caryn's position was that she was grateful for how much I had tried to help her over the last year, but I had "crossed a boundary" when I spoke to her on 6/6 and 6/7. She acknowledged that as her supervisor I had the authority to disapprove of her actions, but she was offended by my "tone." She stated repeatedly that it "cannot happen again." At one point, she stated that she had been working for four years and no one had ever spoken to her like that. She later clarified that she was referring to our entire course of interactions over 6/6 and 6/7.

I responded that for as long as I had been attorney directing support staff and as a supervisor, I had never had to tell anyone that I was giving them an order.

She brought up the email she had forwarded me as evidence of how she didn't have to go to anything shadowing related (a mischaracterization of that email). I raised that she had not even attempted to satisfy both her obligations. Among other things, I raised that the time for the review had not even been confirmed when I first told her that she had to go to the PSI. At first she denied this, but she backed off when I insisted that it was true. I had evidence with me but did not have to present it.

I then brought up that she had told me the discovery review was set at the only time when everyone could go, when I now knew from others that the actual time wasn't important. She launched into a long explanation of how she had decided to set the discovery review at 9AM because she knew that there would be a large amount of evidence and she wanted to be sure she had all day to go through it.... she added some detail about the FBI office being far away and not knowing how far, and Brian Wise "sometimes" going home at 4:30, and stated she did not want to go back to the FBI office twice. In short, she affirmed that she had personally decided to set the review at 9 AM for her own reasons.

I pointed out that she had told *me* the reason it was set at 9AM was because it was the only time that everyone could go. She claimed that she was only referring to the *day*, which was the only day the agents could do it, and even claimed to have *said* "day" and not "time," which is false. The email she sent is plain

US00001296

on its face, and also because if she had said that to me, I would have asked why they couldn't start later. I pointed this out, she claimed not to recall.

She returned to the idea that I had crossed a boundary with the "tone" of how I had spoken to her. Without admitting that there was anything improper about my tone on 6/6 or 6.7, I told her I would try to keep from using a similar tone in the future but her actions were unacceptable and I had to respond to them. She said something about how speaking to her like that could never happen again, and I said, in as unconfrontational a tone as possible, "Caryn, you lied to me repeatedly. That's not okay."

She responded that if that was the case we should go talk to Tony and got up and left the room. I came out with her and said that it was fine, we could go and talk to Tony. She said "now?" I said yes, either that or we could cool down first and try to talk to each other again. She said something that comported with that but was ambiguous as to whether she meant she would later want to meet with me or with Tony. I asked, and she said "Let me go... deal with this and I'll get back to you very soon." Then she walked away into her office.

She left for the day 10 to 20 minutes later.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00001297

Exhibit 13

**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

Caryn Devins---07/09/2018 09:20:43 AM---Dear Tony,

From: Caryn Devins/NCWF/04/FDO
To: Anthony Martinez/NCWF/04/FDO@FDO
Date: 07/09/2018 09:20 AM
Subject: next steps after meeting last week

Dear Tony,

Thanks for meeting with me and JP last Thursday. I wanted to make sure that I understand the next steps moving forward. From the meeting, my understanding is that there is no performance issue with my work, but that this is a matter of receiving the right mentoring. Based on this, I am planning to ask for a new mentor.

Please let me know if you have any questions or concerns.

Best regards,

Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

US00001298

## Caryn Strickland

**From:** Caryn Devins
**Sent:** Monday, July 9, 2018 11:42 AM
**To:** Anthony Martinez
**Subject:** Re: next steps after meeting last week

Yes, this works for me. Thank you very much. Caryn

Caryn Devins
Research & Writing Attorney
Federal Public Defender for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, North Carolina 28202
Main - 704-374-0720
Fax - 704-374-0722

CONFIDENTIALITY NOTE

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender's Office which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

Anthony Martinez---07/09/2018 10:37:34 AM---Caryn, You are correct. As I indicated to you at our meeting, your performance is not at issue. We a

From: Anthony Martinez/NCWF/04/FDO
To: Caryn Devins/NCWF/04/FDO@FDO
Date: 07/09/2018 10:37 AM
Subject: Re: next steps after meeting last week

Caryn,

You are correct. As I indicated to you at our meeting, your performance is not at issue. We agreed that we should have someone else other than JP mentor you. I asked you who you'd prefer. You advised me you would like for Kelly to be your mentor. I've already discussed the matter with Kelly and he's advised he'd be more than willing to be your mentor. I've talked with Peter (your team leader) and advised him that Kelly would be acting in that capacity with you. Is this ok with you?

Thanks,
Tony

1

US00001299

Exhibit 14



**Re: Caryn and work on** ▆▆▆▆ 🗋

Peter Adolf   to: Rahwa Gebre-Egziabher                                    07/17/2018 02:51 PM

Cc:  Anthony Martinez, Jared P Martin, Caryn Devins, Erin Taylor, JP Davis, Phil Likins, Joshua B Carpenter

I'm going to have to say no. Caryn expressed concerns recently to myself and Tony about her workload, particularly after getting several of Jeff's cases, and this is part of the larger problem of our R&Ws getting swamped with Caleb leaving. In fact, this week's staff and management meetings are set to include discussion about the R&W workloads and how to re-prioritize. I think three lawyers on the ▆▆▆▆ case is plenty, and two of them plus the CSA going to a discovery review should be more than enough.

-PSA

**Peter Adolf**
**Trial Team Leader**
**Assistant Federal Public Defender**



Federal Public Defender
Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Peter_Adolf@fd.org

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender, Western District of North Carolina which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

Rahwa Gebre-Egziabher      Hi, Peter- Checking in to see if it's okay fo...      07/17/2018 10:53:08 AM

From:       Rahwa Gebre-Egziabher/NCWF/04/FDO
To:         Peter Adolf/NCWF/04/FDO@FDO, Anthony Martinez/NCWF/04/FDO@FDO, Jared P
            Martin/NCWF/04/FDO@FDO
Date:       07/17/2018 10:53 AM
Subject:    Caryn and work on ▆▆▆

Hi, Peter-

Checking in to see if it's okay for Caryn to come with us to the FBI on the 24th to review the forensics in this case. I ran this by Tony yesterday, and it seems Caryn and Jared have been pulling together information to draft a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Caryn was lead on one of the issues when she worked the case previously and has been helpful to Jared in framing some of the issues and she has a good command of the discovery. It would be helpful if she could come with us to view the forensics (and a good learning opportunity for her). I understand she has a brief she's working, which she expects to finish this week.

Thanks for the consideration, and please let me know your thoughts.

Caryn Devins Strickland
3301 Park Rd., Apt. J
Charlotte, NC 28209

August 7, 2018

Anthony Martinez, Federal Public Defender
Office of the Federal Public Defender
129 West Trade Street, Suite 300
Charlotte, NC 28202

Dear Mr. Martinez:

Please accept my application for the Appellate Assistant Federal Public Defender position. My prior work experiences, including in this office, have prepared me well for this position. In addition, this position would allow me to transition to an Assistant Federal Defender position and to pursue my talents and interests in appeals, as anticipated when I was hired.

I have enclosed my resume, writing sample, and three references for your review.

Respectfully,

Caryn Devins Strickland

US00001301

## CARYN DEVINS STRICKLAND

caryn_devins@fd.org • (802) 318-0926

**EDUCATION**

**DUKE UNIVERSITY SCHOOL OF LAW**
Juris Doctor, May 2013

GPA: 3.771 *(magna cum laude, Order of the Coif)*

Honors: *Duke Law Journal*, Editorial Board Member

**UNIVERSITY OF VERMONT**
Bachelor of Arts in Political Science and Spanish, May 2010

GPA: 3.98 *(summa cum laude, Phi Beta Kappa)*

Honors: National Pi Sigma Alpha Undergraduate Thesis Competition, Runner-Up Department's Senior Thesis Award and Comparative Politics Prize

**EXPERIENCE**

**FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

*Research & Writing Attorney, Federal Public Defender*     Aug. 2017 – present

*Appeals:* Draft appellate briefs regarding trial, sentencing, and post-conviction issues, with anticipation of argument before the Fourth Circuit Court of Appeals.

*Trial:* Assist trial attorneys in all aspects of litigation, including discovery review, case theory development and motions practice. Represent clients in court hearings, including litigating motions to suppress.

*Post-Conviction:* Responsible for litigating *Johnson* and Amendment 782 matters.

*Training:* Responsible for monitoring and summarizing relevant case developments, especially in the Fourth Circuit Court of Appeals, and assisting attorneys with training.

**SUPREME COURT FELLOWSHIP**

*Supreme Court Fellow, Administrative Office of the U.S. Courts*     Aug. 2016 – July 2017

Assisted Judicial Conference committees with policy agendas and conducted study regarding district courts' implementation of recent retroactive changes to sentencing law

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*Law Clerk for the Honorable Peter W. Hall, Circuit Judge*  Sept. 2015 – Aug. 2016

Performed legal research and drafted opinions in a variety of civil and criminal cases

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA**

*Law Clerk for the Honorable James P. Jones, U.S. District Judge*     Sept. 2014 – Aug. 2015

Performed legal research and drafted opinions and jury instructions

**VERMONT SUPREME COURT**

*Law Clerk for the Honorable Paul Reiber, Chief Justice*     Aug. 2013 – Aug. 2014

Performed legal research, drafted opinions, and assisted in judicial branch administration

**PUBLICATIONS**  Caryn Devins, *Lessons Learned From Retroactive Resentencing After* Johnson *and Amendment 782*, FED. COURTS L. REV. (2018), *cited in* BRIEF OF NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS AND NATIONAL ASSOCIATION OF FEDERAL DEFENDERS AS AMICI CURIAE IN SUPPORT OF PETITIONER, *Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018).

Caryn Devins, Stuart Kauffman, Roger Koppl, and Teppo Felin, *The Law and Big Data*, 27 CORNELL J.L. & PUB. POL'Y 357 (2017).

Caryn Devins, Stuart Kauffman, Roger Koppl, and Teppo Felin, *Against Design*, 47 ARIZ. ST. L.J. 609 (2015), *responses by* Steven Calabresi, Sanford Levinson & Vernon Smith

**BAR ADMISSIONS**

Supreme Court of the United States
United States Court of Appeals for the Fourth Circuit
United States District Court for the Western District of North Carolina
Vermont (Active)
North Carolina (Application for Admission by Comity Pending)

US00001303

**Re: Tony follow up**

Caryn Devins
Mon 8/6/2018, 8:21 AM
To: Nancy Dunham <Nancy_Dunham@ao.uscourts.gov>

Nancy,

I had a good phone call with Laura yesterday and she gave me some useful thoughts and suggestions for how we may proceed. If you have time I think a phone call today or tomorrow would be very helpful.

In the meantime, I have attached copies of my offer letter and a related email. I have also attached some communications from the first assistant, including an email saying he would raise my pay if I stayed in charlotte and a text messsage he sent me when he waited for me in the lobby one evening when I had already said no to a ride and he knew I was alone.

Finally, I have attached an organizational chart from December 2017 and one that just came out in the new personnel manual (in which they did not use my married name despite my having given formal notice of the name change to hr). The first assistant has been elevated to a role just below the federal defender and in a direct supervisory role to the research and writing attorney to whom I am now a subordinate.

I look forward to talking again soon.

Caryn

Ps the images will come in separate emails as pictures from my cell phone. My apologies but it's difficult trying to do this on my iPhone .

Sent from my iPhone

On Aug 3, 2018, at 3:48 PM, Nancy Dunham <Nancy Dunham@ao.uscourts.gov> wrote:

Hi Caryn,

Please give me a call today if you can—202-502-3081. Thank you.

Nancy

Case 1:20-cv-00066-WGY   Document 248-5   Filed 06/07/23   Page 71 of 84

US00001304

## Position Announcement
## ASSISTANT FEDERAL PUBLIC DEFENDER (APPELLATE)
Office of the Federal Public Defender
Western District of North Carolina (Charlotte Office)

The Office of the Federal Public Defender for the Western District of North Carolina is accepting applications for an Assistant Federal Public Defender to join our appellate team in the Charlotte Office. The Federal Public Defender operates under authority of the Criminal Justice Act, 18 U.S.C. 3006A, to provide defense services in federal criminal cases and related matters by appointment from the court to individuals unable to afford counsel.

**Duties.** In addition to handling traditional appeals, our appellate team provides extensive legal-issue support to the office's trial teams while also aggressively pursuing post-conviction relief in appropriate cases. Accordingly, the duties of this position may include: (1) researching, briefing, and arguing cases in the Fourth Circuit and the Supreme Court; (2) assisting the office's trial attorneys in identifying legal issues in pending cases, and researching and drafting motions, objections, and memoranda in those cases; (3) litigating post-conviction motions arising from retroactive judicial decisions or Sentencing Guidelines amendments; and (4) monitoring relevant legal developments and helping to train the office's lawyers, and other criminal defense practitioners, on the impact of those developments. The balance of responsibilities among these duties will vary depending on the office's needs at any particular time.

**Requirements.** Candidates must be law school graduates and members in good standing of the bar of any state or federal district court. Attorneys applying for this position should have sufficient experience to undertake the defense of serious criminal cases before the United States District Court and the Fourth Circuit Court of Appeals. Appointment is subject to a satisfactory background investigation, including but not limited to an FBI name and fingerprint check and an IRS tax check. The private practice of law is prohibited.

**Selection Criteria.** The successful applicant will have a strong academic background and excellent research, writing, and oral advocacy skills. Appellate experience in federal court is preferred. Prior judicial clerkship experience is preferred.

**Salary and Benefits.** The salary of an assistant federal public defender is commensurate with that of an assistant U.S. attorney with similar qualifications and experience. The position is in the excepted service and does not carry the tenure rights of the competitive Civil Service. The position offers federal government employment benefits, including

US00001305

participation in health and life insurance program, retirement, and the Thrift Savings Plan. Salary is payable only by Electronic Funds Transfer (direct deposit).

**How to Apply.** You may apply by submitting a letter of interest, résumé, and representative writing sample, along with 3 references, to WDNCapplication@fd.org. Please describe in detail your experience with appellate work and motions practice.

For applicants with disabilities, this organization provides reasonable accommodations which are decided on a case-by-case basis. To request a reasonable accommodation for any part of the application or interview process, please submit the request in writing to WDNCapplication@fd.org.

Position announced July 25, 2018; open until filled. Applications received by August 17, 2018, will be given priority consideration.

**Federal Public Defender is an equal-opportunity employer.**

US00001306

Writing attorneys will be assigned to cover two teams. Jared will be assigned to Erin and Mary Ellen's teams. Caryn will be assigned to Peter and JP's teams. We are still exploring the possibility of adding an additional position with research and writing responsibilities at some point in the future, so please keep your team leaders informed about how your R&W needs are being met.

Thanks,
Tony

**Anthony Martinez**
Federal Public Defender

 Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

US00001307

Re: ▮▮▮ Appeal 🗐

Peter Adolf  to: JP Davis                                                      07/26/2018 10:28 AM

Cc: Caryn Devins, Claudia M Garcia, Lisa Ottens, Terra Parrish

Not to mention the CV case number for the § 2255.

-PSA

**Peter Adolf**
**Trial Team Leader**
**Assistant Federal Public Defender**

 **Federal Public Defender**
**Western District of North Carolina**
**129 West Trade Street, Suite 300**
**Charlotte, NC 28202**
**Tel: (704) 374-0720**
**Fax: (704) 374-0722**
**E-mail: Peter_Adolf@fd.org**

This e-mail, and any attachments accompanying this e-mail, contain information from the Federal Public Defender, Western District of North Carolina which is confidential or privileged. The information is intended only for the use of the individual(s) or entity(s) named in this e-mail. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this e-mail in error, please notify us immediately by reply e-mail.

JP Davis                     FYI, after a letter, two emails, and a solid hour of...        07/26/2018 09:19:50 AM

From:       JP Davis/NCWF/04/FDO
To:         Claudia M Garcia/NCWF/04/FDO@FDO, Caryn Devins/NCWF/04/FDO@FDO, Terra
            Parrish/NCWF/04/FDO@FDO, Lisa Ottens/NCWF/04/FDO@FDO, Peter
            Adolf/NCWF/04/FDO@FDO
Date:       07/26/2018 09:19 AM
Subject:    ▮▮▮ Appeal

FYI, after a letter, two emails, and a solid hour of dicking around with me on text last night, ▮▮▮ finally confirmed that he did not want to file an appeal of his primary sentence. So as soon as we wrap up restitution and forfeiture, we can call this thing officially done.

Notably, he did ask for transcripts from every hearing in the case, which he would like delivered after he is incarcerated. According to him, "It will make for interesting reading that I will use for the next chapter of this saga." I assume the clerk's office is already preparing the 3:23-CR- case number....

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00001308

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

**1. Name (Last, First, Middle)**
Strickland, Caryn Ann Devins

| 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|
| | | 08/20/2018 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 894 | Pay Adjustment |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| S52 | AO 52 dated 08-1702018 |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

**7. FROM: Position Title and Number**
Research & Writing Specialist
PD: 541011
Position: P1700619

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| FD | FD04 | 14 | 2 | $107,319.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $92,349.00 | $14,970.00 | $107,319.00 | $0 |

**14. Name and Location of Position's Organization**

Federal Public Defender Office
129 West Trade Street
Room 300

Charlotte NC USA

**15. TO: Position Title and Number**
Assistant Federal Public Defender
PD: 540406
Position: P1700619

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| UG | FD02 | 00 | 0 | $107,319.00 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $107,319.00 | $0 | $107,319.00 | $0 |

**22. Name and Location of Position's Organization**

Federal Public Defender Office
129 West Trade Street
Room 300

Charlotte NC USA

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other    1 - None    2 - Conditional    2 - 1-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30%    3 | 3    0 - None    2 - Conditional    1 - Permanent    3 - Indefinite | | YES    NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| K0    Basic + Option B (2x) | 9    Not Applicable | |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| KF    FERS FRAE and FICA | 09/10/2014 | F    Full Time | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service    3 - SES General    2    2 - Excepted Service    4 - SES Career Reserved | E - Exempt    N - Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| FNCWXCHNCW | Charlotte NC |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| LEI: 10/30/2017 | | | | |

**45. Remarks**
Assistant Federal Public Defender is placed in AD Level 28

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| United States Federal Courts | Electronically Signed by: |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | Janice Chiverton |
|---|---|---|---|
| JC01 | 6007 | 08/28/2018 | Chief, Court Personnel Mgmt Div |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

# Caryn Strickland

| | |
|---|---|
| United States Federal Courts | **Net Pay:** $2,068.54 |
| One Columbus Circle, NE | **Pay Begin Date:** 08/06/2018 |
| Suite 2-270 | **Pay End Date:** 08/19/2018 PP17 |
| Washington, DC 20544 | **Pay Date:** 08/24/2018 |

| | | | |
|---|---|---|---|
| **Name:** | Caryn Ann Devins Strickland | **Business Unit:** | CTSBU |
| **Employee ID:** | | **Pay Group:** | 4th Circuit |
| **Address:** | 3301 Park Rd. | **Department:** | F04NCWX - N. Carolina (W) - FP |
| | Apt. J | **Location:** | NCW - Charlotte - FPD Office |
| | Charlotte, NC 28209 | **Job Title:** | Research & Writing Specialist |
| | | **Pay Rate:** | $107,319.00 Per Annum |

## Tax Data

| | | | |
|---|---|---|---|
| **Fed Marital Status:** | Single | **NC Marital Status:** | Single |
| **Fed Allowances:** | 2 | **NC Allowances:** | 0 |
| **Fed Addl Percent:** | 0.000 | **NC Addl Percent:** | 0.000 |
| **Fed Addl Amount:** | 0.00 | **NC Addl Amount:** | 0.00 |

## Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 4,128.00 | 3,169.37 | 898.38 | 1,161.08 | 2,068.54 |

## Earnings

| Description | Hours | Rate | Amount |
|---|---|---|---|
| Reg Pay | 80.00 | 51.6 | 4,128.00 |
| Total: | 80.00 | | 4,128.00 |

## Taxes

| Description | Amount |
|---|---|
| Fed Withholdng | 439.55 |
| Fed MED/EE | 56.83 |
| Fed OASDI/EE | 243.00 |
| NC Withholdng | 159.00 |
| Total: | 898.38 |

## Before Tax Deductions

| Description | Amount |
|---|---|
| Dental-Pre | 36.79 |
| FEHB PTax | 171.84 |
| TSPFERS EM | 750.00 |
| Total: | 958.63 |

## After Tax Deductions

| Description | Amount |
|---|---|
| Basic Life | 16.50 |
| OPT B ADLF | 4.32 |
| FERS-FRAER | 181.63 |
| Total: | 202.45 |

## Employer Paid Benefits

| Description | Amount |
|---|---|
| FEHB PTax | 491.00 |
| Basic Life | 8.25 |
| TSPFERS EM | 165.12 |
| FERS-FRAER | 491.23 |
| TSP 1% | 41.28 |
| Total: | 1,196.88 |

## Net Pay Distribution

| Payment Type | Paycheck Number | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 12651876 | Checking | XXXXXXXX0006 | 2,068.54 |

## Leave Balances

| Description | Beginning Balance | Hours Earned | Hours Taken | End Bal/Hrs Taken YTD |
|---|---|---|---|---|
| Annual | 39.00 | 6.00 | 0.00 | 45.00 |
| Sick | 122.00 | 4.00 | 1.00 | 125.00 |

This Earnings Statement is provided to you for your records. Please review all information carefully and notify your Personnel Office of any discrepancy. Failure to notify may obligate you to repay any salary overpayment that results.

Case 1:20-cv-00066-WGY   Document 248-5   Filed 06/07/23   Page 77 of 84

US00001310

# 2018* Line AFD Salary Charts

Exhibit 16

| **Office location(s): | NC(W) – Charlotte |
|---|---|

2018 locality rate for this location(s): **16.21** %

| **Starting Salary Chart** Calendar Year 2018 | | | | | |
|---|---|---|---|---|---|
| AD Level | Years of Professional Attorney Experience | | Starting Salary Ranges | | |
| | At Least | Less Than | | | |
| AD-21 | 0 | 3 | $ | 61,663 – | $94,037 |
| AD-23 | 3 | 5 | $ | 66,254 – | $101,038 |
| AD-25 | 5 | 6 | $ | 71,187 – | $108,560 |
| AD-26 | 6 | 7 | $ | 76,487 – | $116,642 |
| AD-27 | 7 | 8 | $ | 82,183 – | $125,328 |
| AD-28 | 8 | 9 | $ | 88,301 – | $134,659 |
| AD-29 | 9+ | | $ | 94,875 – | $144,685 |

| **APR Increase Chart** Calendar Year 2018 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | SALARY RANGES | | | | | | |
| AD Level | Years of Professional Attorney Experience | | For AFDs whose performance "Meets or Exceeds Expectations" | | | For AFDs whose performance "Substantially Exceeds Expectations" | | | |
| | At Least | Less Than | | | | | | | AD-Level Maximums*** |
| AD-21 | 0 | 3 | $ | 61,663 – | $ 94,037 | $ | 83,246 – | $ | 104,827 |
| AD-23 | 3 | 5 | $ | 66,254 – | $ 101,038 | $ | 89,443 – | $ | 112,632 |
| AD-25 | 5 | 6 | $ | 71,187 – | $ 108,560 | $ | 96,102 – | $ | 121,018 |
| AD-26 | 6 | 7 | $ | 76,487 – | $ 116,642 | $ | 103,257 – | $ | 130,029 |
| AD-27 | 7 | 8 | $ | 82,183 – | $ 125,328 | $ | 110,947 – | $ | 139,710 |
| AD-28 | 8 | 9 | $ | 88,301 – | $ 134,659 | $ | 119,206 – | $ | 150,112 |
| AD-29 | 9+ | | $ | 94,875 – | $ 144,685 | $ | 128,082 – | $ | 161,288 |

* These charts supercede the corresponding 2017 charts. They should be used for **all actions effective on or after January 8, 2018.** When applying these charts, including the administration of APR bonus payments, please consult the policies that are located in the AFD Appointment and Compensation Policies (in Tab 2 of the DOCS manual), which were revised on May 26, 2010. Any discretionary pay adjustments that exceed 10 percent of the AFD's salary require the approval of the Chief of DSO.

** Please select your office location(s) from the blue drop down menu. Once you have made this selection, the correct amounts will appear on the charts. If your office location(s) appear in separate listings on this drop down menu, a separate version of these charts should be created for each separate listing. Federal defender organizations in the non foreign areas should consult tab 3 of this sheet for current locality and COLA rates. Employees in these areas may receive a COLA adjustment.

*** Bold amounts in the right hand column represent the maximums for each AD-level. Any AFD salary exceeding the applicable AD-level maximum is subject to the "red-circled rate" policies in section II.B.4 of the AFD Appointment & Compensation Policies. No Line AFD's salary should ever exceed the AD-29 maximum.

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1 100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

March 25, 2019

To:     Chief Judge Gregory

From:    James N. Ishida

RE:     Investigation Report – Caryn Devins Strickland

Attached is the investigation report that was prepared in the EDR/Report of Wrong Conduct matters filed by Caryn Devins Strickland. You must decide what disciplinary action, if any, should be taken against Federal Public Defender Anthony Martinez (N.C.W.D.) under Chapter IX of the Fourth Circuit's EEO/EDR Plan (November 2018) ('the Plan").

## I.    Summary

On September 10, 2018, Assistant Federal Public Defender Caryn Devins Strickland filed both an EDR Complaint under Chapter X and a Report of Wrongful Conduct under Chapter IX of the Plan, alleging sexual harassment, retaliation, and other acts of wrongdoing. Because both matters arose under the same general facts, I had ordered a joint investigation and appointed HR Manager Heather Beam, from the North Carolina Western District Probation Office, to handle the investigation.

While the investigation was ongoing, I had attempted to find a resolution through the counseling phase of the Chapter X EDR proceeding. In spite of extending the counseling period, I was unsuccessful in settling the matter. The counseling period ended on January 14, 2019.

On January 31, 2019, Ms. Strickland filed a timely request for mediation under Chapter X of the Plan. I thereafter appointed Edward G. Smith, Fourth Circuit Chief Mediator, to conduct the mediation.

The mediation period was extended once by mutual consent of Mr. Smith and Ms. Strickland. Eventually, Mr. Smith was able to persuade Circuit Judge Henry Floyd to offer Ms. Strickland a clerkship to the end of the term in June, and convince Ms. Strickland to withdraw her EDR complaint in return for the clerkship.

On March 11, 2019, Ms. Strickland submitted her request, asking that her EDR complaint be withdrawn.

## II.    Next Steps – Chapter IX Report of Wrong Conduct

The last remaining matter is Ms. Strickland's Report of Wrong Conduct under Chapter IX of the Plan.

Chapter IX describes the process for resolving a Report of Wrongful Conduct:

(a)     A Report of Wrongful Conduct is not the same thing as an EDR Complaint, and the two must be handled according to the procedures as set forth in their respective chapters,

(b)     An investigation must be conducted into the allegations,

(c)     All parties involved in the investigation must protect the confidentiality of the allegations, and

(d)     "Employees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct,[1] as defined in this Plan, may be subject to disciplinary action."

The investigation report recommends that disciplinary action be taken against the accused employee – Federal Public Defender First Assistant J.P. Davis – as well as the unit executive, Anthony Martinez. You cannot decide any disciplinary action against Mr. Davis – that is within the authority of the unit executive. But you can and are tasked with deciding if disciplinary action is appropriate for Mr. Martinez.

**III.    Additional Information**

I'll speak to you later about a conversation that I had with Cait Clarke, the chief of the AO's Defender Services Office, which may help with your decision regarding Mr. Martinez.

Attachment

---

[1] "Wrongful conduct" is defined to include "[d]iscrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited." *See* Chapter II, section 1 of the Plan.

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

May 28, 2019
**CONFIDENTIAL**

Mr. Anthony Martinez
Federal Public Defender
129 West Trade Street, Room 300
Charlotte, NC 28202

RE:     Counseling re Caryn Devins Strickland's Report of Wrongful Conduct

Dear Tony:

I was delighted to see you at last week's Fourth Circuit's Workplace Conduct Conference in Richmond, VA. It gave me the timely and appropriate opportunity to talk to you about the contents of this letter of counseling.

On behalf of Chief Circuit Judge Roger L. Gregory, I write to inform you that you are being counseled for your actions arising from the Report of Wrongful Conduct submitted by Caryn Devins Strickland on September 10, 2018, under Chapter IX of the *Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit* ("the Plan").

## I.     Background

On September 10, 2018, Ms. Strickland submitted a Report of Wrongful Conduct under Chapter IX and a Request for Counseling under Chapter X[1] of the Plan, alleging sexual harassment, retaliation, and discrimination during her employment with your office. In her Report of Wrongful Conduct, styled Official Grievance, Ms. Strickland claimed that "[t]he First Assistant [JP Davis] has abused his power and offered employment preferences for his unwanted advances." Ms. Strickland explained that she was subjected to unwanted advances by Mr. Davis, unreasonably interfered with her work assignments, and even proposed an unsavory quid pro quo proposal on her request for a promotion and raise.[2] Ms. Strickland also included you in her allegations.

With the approval of Chief Judge Gregory, I appointed Heather Beam to investigate Ms. Strickland's Report of Wrongful Conduct.[3]

---

[1] Ms. Strickland voluntarily withdrew her Chapter X claims on March 11, 2019, and they are not part of this letter of counseling.

[2] In an email dated May 18, 2018, and titled "Mas Dinero," Mr. Davis responded to Ms. Strickland's request:
  Dude, you're shooting high with a G15. Not least of all since you'll need 5 more years of fed
  service to qualify for it. But fret not, I have a plan . . . just remember I deal in pay-for-stay ☺

[3] Under Chapter IX of the Plan, "[t]he EDR Coordinator shall promptly inform the Chief Judge and unit executive of any report. The Chief Judge and/or unit executive shall ensure that the allegations in the report are appropriately investigated, either by the human resources manager or other person."

Anthony Martinez
May 28, 2019
Page [ PAGE \* MERGEFORMAT ]

## II.    The Investigator's Report

Following a painstaking investigation, Ms. Beam issued her Counselor's Report on November 19, 2018, later supplemented on January 11, 2019. In her report, Ms. Beam suggested that you "be counseled and trained on how to handle workplace conduct complaints. He should also be counseled or training on judgement and decisiveness." Ms. Beam explains:

> *For example, Caryn states when she initially brought her complaint to Mr. Martinez he compared her relationship with the First Assistant Defender as a marriage and asked her to compromise. He also made comments bade on Caryn's report such as "At least she was not touched" and called her out on contacting the AO to receive guidance on her civil rights as a federal employee. He also stated he was being blamed for something that was not his fault. It is evident this claim was mishandled from the beginning by Mr. Martinez and he would benefit greatly with additional training on workplace conduct as well as basic managerial/leadership skills.*

### A.    Marriage Metaphor

On or around July 5, 2018, you met with Ms. Strickland and Mr. Davis to resolve a "breakdown in communications." Though well-intended, you had not abided by Ms. Strickland's wishes that she meet with you privately to discuss Mr. Davis's conduct. This made Ms. Strickland feel "uncomfortable" and "intimidated," having to confront the person she accused of sexually harassing her. She was also troubled by your characterization that this was a simple misunderstanding, feeling that you had trivialized the incident.

After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a "marriage," with the parties needing to "compromise" and "meet in the middle." Ms. Strickland said that she was "shocked" and "offended" at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a "marriage." The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her.

### B.    No Physical Touching

You had a subsequent discussion with Ms. Strickland in which you attempted to clarify whether Mr. Davis had touched Ms. Strickland or had engaged in other inappropriate behavior. Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, "at least you weren't touched," or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt.

US00001313

Anthony Martinez
May 28, 2019
Page [ PAGE  \* MERGEFORMAT  ]

C.      Disapproval of Seeking Outside Advice

Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee. The investigator found that you had "called out" Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office.

D.      Shifting Responsibility

Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with. Ms. Strickland reported that she felt "offended" by your protest, which she perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office. This, the investigator concluded, contributed to your mishandling of the matter.

E.      Mitigating Factors

In mitigation, Investigator Beam found that you had acted expeditiously to accommodate Ms. Strickland's requests, except her request to be transferred to your Asheville Office. You had noted, however, that there was no physical space in that office to accommodate Ms. Strickland.

The investigator also found that you had acted in good faith in accommodating Ms. Strickland's request to telework, and you were flexible in other work assignments.

Finally, Ms. Strickland alleged that you had retaliated against her by denying merit-based promotional opportunities and by removing her locality pay. The investigator concluded that these allegations are without support.

F.      Conclusion

In conclusion, Investigator Beam reported that she did "not see a case for retaliation based on [her] investigation and the facts presented by both sides." The investigator concluded that "Mrs. Devins has experienced in her mind sexual harassment although the facts discovered in this case find this claim to be very flimsy."

But she did record the numerous missteps that you committed, which contributed to Ms. Devins' perception of mistreatment and retaliation by you. These missteps appeared to have exacerbated the underlying situation, and it broke trust between you and Ms. Devins. This was not helpful. But the investigator observed that most of your "decisions . . . were made at the end of a day where [you had] attended meetings all day and was tired." The investigator thus recommended that you should be "counseled or train[ed] on judgement and decisiveness," in addition to be "counseled and trained on how to handle workplace conduct complaints."

US00001314

Anthony Martinez
May 28, 2019
Page [ PAGE  \* MERGEFORMAT  ]

### III.   Chief Judge Gregory's Decision

Under Chapter IX of the Plan, "[e]mployees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan,[4] may be subject to disciplinary action."  After careful consideration of the investigator's report, supporting attachments, and documents filed in this case − and noting the mitigating circumstances − Chief Judge Gregory has decided to adopt the recommendations contained in the report.

In addition to this letter of counseling, Chief Judge Gregory hopes that you will avail yourself of continual workplace conduct, decision-making, and leadership training opportunities. The Fourth Circuit's highest priority is to ensure a safe, civil, professional, and collegial workplace for all court employees, and it expects its managers and leaders to uphold the same standard.  Anything less is unacceptable.

Chief Judge Gregory also wanted me to convey that the Fourth Circuit unequivocally stands behind you and your efforts to create a safe, civil, professional, and collegial work environment in your office.  Therefore, if there is anything that I or my colleagues can do to support your efforts, please feel free to call upon me anytime.

Best regards,

cc:     Honorable Roger L. Gregory

---

[4] Under Chapter II, section 1 of the Plan, "wrongful conduct" is defined:

Discrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited. All of the above constitute "wrongful conduct."

US00001315