# EXHIBIT M

 **CD events**
JP Davis   to: JP Davis                                    06/06/2018 05:58 AM

From:        JP Davis/NCWF/04/FDO
To:           JP Davis/NCWF/04/FDO@FDO

- at hiring  expressed desire for AVL office due to Trykn connection. Told this was for CLT and was quick to say she would take it.

- Noticed for a long time that she is self-centered and personal goal oriented.

- had trouble getting her to engage in ideas and pathways outside her areas of interest.

- at lunch on 5/18, she expressed her desire to be Jeff's 2d chair on Dixon. States rationale was that she really wanted to be on a trial this summer. She discussed other cases she could be trial counsel on, was fixated on Dixon because it was definitely going.

- same convo, threatened to quit if not moved to AVL. Said she hadn't intended for this to come up until her annual review. Made very clear that she would have to be moved or would quit and Cooper moving was not an option.

- At one point admitted this was why she wanted to be on a trial so badly: so she could point to it as part of her merit to demand move.

- seemed surprised at my reaction. I now believe that she was telling the truth that she didn't mean for this to come up, but she felt she could air it with me because she thought I was sufficiently wrapped around her little finger that I wouldn't resist.

- also demanded more $.

- veiled threats with a supposed offer letter stating she would move up to AFD in a few months after starting.

- i explained that Dixon was a bad case in part because office could not defend having its two most junior attys handle a Life case. She acknowledged this, said she would still just run it by Tony and get his thoughts. Was very casual. Clear to me that she still wanted it but understood why she probably wouldn't get it

- completely non-responsive to email where I told her she couldn't get grade increase but offered that I had a plan to get her up toward where she wanted to be. While this did not directly require response, seemed very odd that she didn't acknowledge this at all.

- made a presentation to Tony in my absence. Unclear how this went, but seems she

did NOT raise my concerns to him. Convinced him to greenlight her 2d chair.

- raised numerous complaints and issues about Jeff's work after approximately 2 days on case (in fairness, appear warranted). Very open with me about it until I told her that she should be prepared to get off the case. She seemed to acknowledge and agree but got bery distant/disengaged very quickly. Has been avoiding me and difficult to talk to ever since.

- since then has focused on Dixon to the exclusion if all else.

- complete disinterest in other matters since that point. Shocking lack of concern for Mobley case. Doesn't even respond to some emails, including re: detention project.

- blew me off completely on seeing Mobley. Unresponsive to my early emails stating we needed to see him. Ignored my Friday email about it/didn't check despite having ASKED me to check in with her. When I gave alternative times, she questioned why I needed her to join me (i had only asked if she wanted to join me and her response vaguely indicated yes). Has never followed up to ask about him.

- displayed seriously avoidant behaviors last week. Clearly does not want to interact with me, but this only started after I questioned her place in Dixon.

- has clearly organized, marshalled her forces and placed herself in position to be indespensible in Dixon.

- was supposed to attend Watt PSI on Thursday. Did not even mention that she had a conflict during scheduling of Dixon disco review. Then emailed me TELLING me that she would be blowing off Watt due to the Dixon review.

- did not respond substantively to my expression of displeasure, but continued emailing Dixon team arranging discovery review-- including moving a different discovery review to accomodate her own schedule.

Sent from IBM Verse

US00005891

ET

Erin

Very good point.

Now that her true colors have been exposed, see her for who she is and stop trying to save a lost cause. If she comes around, cool, we'll have her back...if not, that's one less wall you have to bang your head against

She even had the "I am new and I don't know what I'm doing" thing. Which is accurate, but incongruent with A) her attitude at the time; and B) her assertion on Monday that she had been working for FOUR YEARS and no one had EVER spoken to her that way.

No, you're right. I'm legit done. Just depressed at all the time and emotional energy I've spent trying to lift her up. But she isn't the person I was trying

Text Message

US00005777

No, you're right. I'm legit done. Just depressed at all the time and emotional energy I've spent trying to lift her up. But she isn't the person I was trying to lift.

Jesus, that read like a break-up text. 😩

Ha! We've all been there and it sucks. I felt the same way about rahwa...i was there for her drunk ass many times and then i slapped in the face

Oh and btw, she and beth are up to something...again. i guess the whole jumping on Fredi's trial didnt work out so they're onto something else

Ugh. Josh said it best: why don't people just act right?

Uh oh. What now?

Text Message



Erin

> What, I don't come off as a harsh ogre??? She def plays those tears for sympathy.

> They were accompanied by weepy statement about how we just had to know that she was under so much pressure and Jeff had done nothing and she always tried to make her best decision about what was the client's best interest....

The whole be gentle with me is a low key gender play as well

> Yup

> Very good point.

Now that her true colors have been exposed, see her for who she is and stop trying to save a lost cause. If she comes around, cool, we'll have her back, if not, that's one less

Text Message

US00005779

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

  
 
Wow!

I was trying to be gentle and conciliatory.

But she seriously had the nerve to come at me!

Even when you try to be heavy handed, you're not. Lol. She was on the defensive and basically playing the gender card

What, I don't come off as a harsh ogre??? She def plays those tears for sympathy.

They were accompanied by weepy statement about how we just had to know that she was under so much pressure and Jeff had done nothing and she always tried to make her best decision about what was I the client's best interest

  Text Message 

US00005780





12:02 PM

ET

Erin

Well, you knew she wasn't going to get that

Tried to sell Tony on "this was a misunderstanding" and had the gall to try and lecture me about how next time there was "obvious confusion" that I should be more gentle with her and not "prevent her" from working on her case.

Yeah, truth.

I was like "yeah, I definitely will if there's 'obvious confusion.' But that's not what happened here." And proceeded to lay out how she had lied multiple times. 😫

This ended with waterworks.

Wow!

I was trying to be gentle and

Text Message

  





ET

Erin

> That's a legit settlement mediation, except no one got paid for their time

May be. She might have gotten some of the message... I made a point of working in that I had designed the shadowing stuff she blew off for the purpose of justifying promoting her and that seemed to have an impact.

But generally, she didn't get the important points, ie don't be a lying manipulative underhanded jackass.

> Well, you knew she wasn't going to get that

Tried to sell Tony on "this was a misunderstanding" and had the gall to try and lecture me about how next time there was "obvious confusion" that I should be more gentle with her




Text Message

US00005782

Caryn MentoringJP Davis to: W Kelly Johnson 07/08/2018 11:37 AM
Cc: Anthony Martinez
From: JP Davis/NCWF/04/FDO
To: W Kelly Johnson/NCWF/04/FDO@FDO
Cc: Anthony Martinez/NCWF/04/FDO@FDO
Kelly,

As of last week, I have resigned the role of mentoring Caryn Strickland. On my suggestion and with Tony's approval, she has asked to have you as a mentor going forward-- I imagine one of them will touch base with you on it next week if they haven't already. I hope you don't mind that I volunteered you, but I have noticed that she seems to value and respect your opinion, and hopefully she will listen to your good advice.

If you're amenable to taking the mentor role, I have some materials I prepared for her that I will pass on to you when I get back on the 16th. I put a significant amount of time, thought, and energy into creating them for her, so I hope they will be of value to you. That said, you can use or not use them as you see fit.

Thanks, Kelly. Caryn is an amazingly gifted and talented young woman who has made some egregious errors in attitude and judgement recently. I hope you will have success with her where I did not.

JP

Sent from IBM Verse

US00006088



Erin

Tue, Jun 5, 8:43 PM

Let's plan to meet tomorrow at 10am. I have a quick coffee meeting

Word.

Check your email

She doesn't care about having jeff around either

Well no surprises there. What is this discovery review?

File at usao

It's starting to look like she is way more manipulative than I expected. Disappointing. Will explain tomorrow.



Text Message

US00005807



11:48 AM

ET

Erin

😔

Mega. I really wanted a lot for her.

You think Caleb has her ear?

I'm sure he does and it doesn't help, but her own self interest is the real problem.

Ugh

She wants to use the case to prove that she's a star so she can threaten to quit if we don't move her to Asheville.

Has she met Tony?

She doesn't want to be the next person to cross him

Agreed, but she's going to use

  Text Message 

US00005808

 AT&T  11:48 AM 



Erin

She doesn't want to be the next person to cross him

Agreed, but she's going to use this case to win him over. She basically has his ear already and she'll show him how valuable she is-- because she legitimately IS very good

The diff between her and the others is she has the actual goods to deliver and is very good at playing innocent.

She is...no doubt. But I'm trying to figure out why so much manipulation from these youngbucks? I had to bust my ass to get here.

Yeah, for real.

I would have helped her get where she wants if she would have been patient.

  Text Message 

US00005809

 
  
to figure out why so much manipulation from these youngbucks? I had to bust my ass to get here.

Yeah, for real.

I would have helped her get where she wants if she would have been patient.

Caleb is a dummy and I don't know what's up with Jeff. Caryn is just too sold on her own value... which I at least get with her because unlike the other two she actually HAS value.

But I am not okay with being played. She was sold a Charlotte job and came in here with a plan to threaten her way out. It isn't okay.

Claire had me doing 4th circuit
undates and eran even the she

 Text Message

 

14

11:49 AM



ET

Erin

Claire had me doing 4th circuit updates and crap even tho she knew where I'd end up AND she was my professor at wake...

Yeah, because there's value in slogging through the pits.

Want me to bring a bag of balls into the office and make her carry them? Or maybe my scuba gear?

Yes. Yes I do.

Not too long ago Caryn was crying in Lisa's office because she didnt know how to handle clients

She's cried in front of me on two separate occasions now.

Including the time when she

  Text Message 

US00005811

 AT&T  11:49 AM  

  

ET

Erin

two separate occasions now.

Including the time when she said she would quit if we didn't move her to AVL and I said "I'm sorry to hear that."

Yeah, she ain't ready for this life.

I never thought she would stay. I figured max 2 years b4 she jumped to a firm

She's over the top goal directed. At the same time we lost that suppression motion (which we had no real chance of winning) and she has not interest in talking about the client again.

She won't make it in a firm. She'll be a star anywhere but she can't handle that. She does believe in the mission but she doesn't FEEL the clients

  Text Message 

 AT&T  11:49 AM 

  

ET

Erin

I figured max 2 years b4 she jumped to a firm

She's over the top goal directed. At the same time we lost that suppression motion (which we had no real chance of winning) and she has not interest in talking about the client again.

She won't make it in a firm. She'll be a star anywhere but she can't handle that. She does believe in the mission but she doesn't FEEL the clients.

She'll be a find appellate attorney until she gets bored and moves somewhere else.

That's my big issue with her and caleb...at no point do they mention the clients

I thought she could be in mgmt

  Text Message 

US00005813

 AT&T

11:49 AM




ET

Erin

and caleb...at no point do they
mention the clients

I thought she could be in mgmt
but I don't think so any more.

Yuuup



Text Message

US00005814



.ıll AT&T 📶      **11:40 AM**      ✳ ▬▬

ET

Erin

Thu, May 24, 3:55 PM

Welp... it's my team's turn...as I'm trying to head to the airport ,.of course

Oh god. Again?

When Jared calls me into his office and closes the door, you know it's bad



Oh shit

And apparently he convinced Caryn to 2nd chair





US00005881



ET

Erin

She talked to me about that. I told her the biggest issue wAs having two inexperienced attorneys on the case. She gets that but is really eager to get a trial

But check this...caryn and jeff didnt say anything to me and Peter

Well Caryn was only talking about it tentatively, she said she was going to run it by Tony.

We just found out...jared pulled me in to basically say jk doesnt know wtf he is doing

It def was NOT a done deal by any stretch as of last Friday.



Text Message



US00005882



she was going to run it by Tony.

We just found out...jared pulled me in to basically say jk doesnt know wtf he is doing

It def was NOT a done deal by any stretch as of last Friday.

There is no disco in the file

!!!!!

I spoke to tony on tues and he didnt say anything and said he hasnt been able to get up woth jeff

I don't know if she ever talked to him. It didn't seem like this was imminent from my talk with her. She was basically saying "Jeff wants me to do this and I might see if Tony will let me" and I was basically telling her "in addition to not being a good

Text Message

US00005883

  11:40 AM 

  

ET

Erin

was imminent from my talk with her. She was basically saying "Jeff wants me to do this and I might see if Tony will let me" and I was basically telling her "in addition to not being a good case for your first trial, we're probably not going to be okay with that as an office."

There's some email btwn jeff & caryn that Peter and i haven't seen

Caryn and Terra are doing disc review together next week???

She said he really wanted her to be second chair.

For Dixon?

With Dixon?

Now?

Yes, for dixon

  Text Message 

US00005884



.ıll AT&T 📶    11:40 AM    ⁕ 🔋

ET

Erin

Now?

Yes, for dixon

New stuff?

They were talking about doing it together either this week or next week.

I have no idea. I was on my way out of the office when Jared wanted to talk

You may want to go ahead and check in with Tony and get him to nip this in the bud. I don't want to get in Caryn's way and as much as I don't think that's the right case for her, I'd be fine if there was an experienced atty on it. But there's no way in hell we can have our two least experienced attorneys handling a Life trial.

Text Message

 AT&T

11:40 AM



ET

Erin

You may want to go ahead and check in with Tony and get him to nip this in the bud. I don't want to get in Caryn's way and as much as I don't think that's the right case for her, I'd be fine if there was an experienced atty on it. But there's no way in hell we can have our two least experienced attorneys handling a Life trial.

Which is the best number for Tony?

I probably need to butt out since I really don't have a role here other than generic mentor/mgmt stuff, but if you or Peter need me to talk to Caryn or Tony, I will.

Hold on

██████████████

Text Message

US00005886



Peter might be yanking her off the case

Again

Ha. She just really wants a trial this summer. She thinks this one is fascinating but that's all she really wants.

Of course, so do I...

Me too...



Text Message



11:41 AM

**ET**

Erin

Welp...

My fear is that Jeff is bringing Caryn in because she listens to him....jeff wont listen to tony or anyone else with more experience

He wont even ask phil to view the forensics even tho we told him to

Yes I think that's right. Caryn knows that, too. We discussed it. The virtue is that he may listen to her, and she will definitely listen to others. If the stakes were lower, it might even be worth it.

Jeff is going to need an intervention on this at some point. We may even have to consider taking the case from him, but since Tony's in it already he will have to make



Text Message

 AT&T  11:41 AM  

ET

Erin

My fear is that Jeff is bringing Caryn in because she listens to him....jeff wont listen to tony or anyone else with more experience

He wont even ask phil to view the forensics even tho we told him to

Yes I think that's right. Caryn knows that, too. We discussed it. The virtue is that he may listen to her, and she will definitely listen to others. If the stakes were lower, it might even be worth it.

Jeff is going to need an intervention on this at some point. We may even have to consider taking the case from him, but since Tony's in it already he will have to make that call.

Text Message

**Anthony Martinez**

| | |
|---|---|
| **From:** | JP Davis |
| **Sent:** | Friday, July 6, 2018 10:22 AM |
| **To:** | Anthony Martinez |
| **Subject:** | Follow Up From Last Night |

Tony,

I continued to be bothered after our conversation with Caryn last night, and I believe I have figured out why. I am often clearer in writing than I am in person, so I'm sending this as an email to express to you the best way I know how. This is primarily to convey my feelings about the situation and how it affects things going forward-- it does not require a response, and I am not requesting any further immediate action.

First, as I said yesterday, I believe the way you handled the situation with her was for the best. The temperature had to come down and that couldn't have been accomplished except through a non-accusatory type of resolution. That said, I want to be sure that you and I are on the same page: this was not a case of miscommunication. Caryn willfully and deliberately deceived us both, and in my case, blatantly lied to me more than once. She has been completely unrepentant for that, and continues to blame me-- and, in regards to the 2255 issue, you-- for her own failings. That's putting aside numerous other issues with her conduct.

I do believe Caryn when she said that she was just trying to make the best decisions she could (including, apparently, to be deceptive and insubordinate) to achieve what she thought was most important at the time. What troubles me is that she blames her inexperience for any issues, but that's exactly why we assigned her a mentor: to have someone with experience who could help her navigate difficult choices and situations. Instead of seeking help or taking it when it was offered to her, she decided she knew better than me and that her judgement could override the judgment of the very person who was there to help her deal with her inexperience.

Ultimately, this is the real issue that I have with Caryn, and the real reason that I was so upset about her canceling the PSI in the first place: it is part of her repeated pattern of deciding that she knows best and will pick and choose what she sees fit to work on, everything else be damned. That pattern is continuing even now, in the email that she sent you last week about her new case assignments. She has showed no remorse nor accepted any responsibility, and I doubt the pattern will relent.

This brings me to my final point, and what I think really truly was continuing to gnaw at me: If this had been Caleb or Jeff King or most any other employee, I would have insisted they receive a formal reprimand after deception and insubordination this severe. I would never have permitted the multiple instances of being out without leave and unapproved telework, and I would have expected that after the continued mendacity and lack accountability, they would get chewed out and be well on their way to a PIP at the meeting last night.

To be clear, I'm not being critical of your handling of the situation last night-- to the contrary, as I said above, I believe that you handled it in the correct way. /set up the environment where that approach was necessary; this is a monster of my own making. From the beginning, I have treated and talked up Caryn as a special and valuable asset to the office. I have enabled her behavior, and encouraged others to enable it as well. I still believe very strongly in her potential and have high hopes for her, but she has displayed some serious errors in judgment and conduct that I have allowed to be downplayed or dismissed, mostly by myself. That was an error in judgement on *my* part, and I take full responsibility for it.

I'm writing this now for two reasons. First, while I am not requesting any disciplinary action at all for Caryn, I

US00003974

want to make sure that these incidents are not just written off as a mutual mistake or personality conflict, as I believe they need to be addressed during her annual performance review (alongside her many positive traits). We are considering making her an AFD, for various reasons, and I think we need to be serious about whether she actually lives up to that title at the moment. Second, I want to ensure that in the future, we treat her as we would any other employee in her shoes. I created the culture of enabling her in conduct no one else would get away with, so I want to make sure that I end it.

JP

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00003975

 AT&T 🛜    5:36 AM    ⁎ 

        

**TM**

Tony

clean. Let see if she files

> She's right on the edge. I said something generic about transfers from other offices and her lip was practically quivering. She said "Is that what you're looking for, a transfer from another office?" It was like the thought was breaking her heart.    7:05 PM

Oh no. I'm gonna lose this bet    7:06 PM

> She obviously knows she shouldn't. We'll see...    7:07 PM

> Btw I just got home and there's oregano hanging EVERYWHERE.    7:07 PM

Ha!Ha!    7:09 PM

Fri, Jun 22, 7:27 PM

  iMessage 

      

US00006035

CONFIDENTIAL, Subject to Protective Order, ECF No. 183



Tony

Thu, Jun 21, 6:57 PM

I would like you to know that I respect the sanctity of a bet: Caryn asked me out of the blue if we were just "inundated with applications for the AFD slot."    6:57 PM

She was clearly fishing for whether she should apply (if she hasn't already)    6:57 PM

I was sorely tempted to subtly encourage her, but I pretended like I didn't see where she was angling    6:58 PM

I appreciate you respecting the sanctity of a bet. You could of played dirty but you played it clean. Let see if she files    7:00 PM

She's right on the edge. I said something generic about

iMessage

  

      

US00006036

**From**: Holly Dixon [Holly_Dixon@fd.org]
**Sent**: 7/23/2018 11:57:20 AM
**To**: Anthony Martinez [Anthony_Martinez@fd.org]; JP Davis [JP_Davis@fd.org]; William Moormann [William_Moormann@fd.org]; Erin Taylor [Erin_Taylor@fd.org]; Peter Adolf [Peter_Adolf@fd.org]; Mary Ellen Coleman [Mary_Ellen_Coleman@fd.org]
**Subject**: Team Leaders Meeting Minutes
**Attachments**: Team Leader Meeting Minutes_07.20.18.docx

I have attached my notes from the Team Leaders Meeting and here are the action items I noted from that meeting. I have **not** added any individual personnel issues, though they are in my attached notes.

1. We are internally posting an Assistant Paralegal position for JP's team.

2. The R&W's are now "unlocked" from the teams and will no longer take duty days (unless needed as back-up) nor take new criminal cases. Jared will work on assignments for Erin and Mary Ellen's teams and Caryn will work on assignments for JP and Peter's teams. Jared and Caryn will use each other as back-up.

3. We will hire either another R&W or AFD for the appellate team. Bill will set up a phone call with Todd Watson so that Josh and JP can talk to him about his theory that we should make the R&W's into AFD positions to determine what is best for our office.

4. We will NOT be hiring a one-year contract position for #3 because of the reduced quality of applicants for those positions.

5. The answer to #3 will also determine whether Jared stays an R&W or becomes an AFD.

6. If Ann wants to work full-time in the short-term, that is fine and in the budget. Josh will speak with Ann about this.

7. Josh already told Caleb to review his DM2 and Johnson cases and start closing them out (he has 218 open cases in dD). Caleb was told to close the cases in dD himself.

8. Holly will start doing zero time reports for cases each quarter to ensure attorneys put time in each quarter to assist in future case weight distribution.

9. Each team leader will write out each team member's role and send to Tony.

10. We are finalizing the Expert Policy for the Personnel Manual and will send to Mary Ellen for review before distributing to staff. Mary Ellen or Nancy will speak about experts at the next staff meeting.

*(See attached file: Team Leader Meeting Minutes_07.20.18.docx)*

US00007411

**Holly Dixon, J.D.**
Legal Assistant to the Federal Defender



Federal Public Defender
Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Holly_Dixon@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

US00007412

## Team Leader Meeting Agenda
*Friday, July 20, 2018 at 11:00 a.m.*
*Present: Tony, Bill, JP, Josh, Erin, Mary Ellen, Peter, Holly*

1. Football game

2. Staffing

    a. What to do with R&W's.

    b. Should we replace Caleb's position with R&W or assistant paralegal?

        *JP spoke with Kelly and Beth. Kelly wanted a paralegal and Beth wanted an R&W. Claudia has been filling in as paralegal so team not really feeling the difficulty, but then she's not able to keep up with Legal Assistant position.

        * Bill – we have enough money and approval for two FTE's at AFD salary range (this is counting Jeff's position) and one FTE at a lower range. Our full FTE is 41.5. Right now, we could have 44 FTE's but in the next few years we would not be able to sustain that in our budget because our numbers were down for a while and that's what number is based on.

        * Appeal FTE is 2.75 (but have been surviving with 1.75 FTE)

        * One suggestion is to have the trial teams and then have an R&W team so they are not tied to the trial teams. Erin feels we need to maintain some structure, very difficult for Jared to have people coming in at random times asking for things.

        * Bring in an R & W who is .5 appeals and .5 trial support?

        * Hire an Asst. Paralegal for JP's team, hire another R&W for ½ time appeals and ½ time, and hire another Ross?? This would also free up Terra to start doing the mitigation work in CLT so Nancy can focus more on AVL.

        *Go ahead and post internally for Asst. Paralegal, then hire outside for Legal Assistant (if Claudia gets AP position).

        *"Unlock" the R&W's for a month. Take Caryn off trial support cases. Also need to take her off duty days. CLT is not taking SRV's right now anyway, so wouldn't affect her current caseload. The R&W's will be more Jared's, essentially. Pretrial motions, sentencing objections, trial research, appellate, etc.

        *The R&W's will report to the team leaders for their teams (Caryn on Peter and JP's team, and Jared on Erin and Mary Ellen's team). Team leaders will be responsible to talk to each other.

        ==*We're opening up Asst. Paralegal position, internally. If Claudia, then Legal assistant opens up. Jared and Caryn will be assigned to two teams (each) and Jared and Caryn not on duty days (unless back-up and then will go to duty attorney) and will be pure R&W. Jared will be on Erin and Mary Ellen's team, and Caryn will be on JP and Peter's team.== Face-to-face with R&W's (today).

        **This was discussed with Jared and Caryn on 7/20.

    c. Should we replace Ross with AFD or R&W? Also, consider that we could have a one-year contract position.

US00007413

* Ross will exhaust her donated leave by the end of the year, so planning on filling her position.
* Agreed that we do NOT want to do a one-year and a day contract because the quality of applicants goes down tremendously.
* Josh does not think we have enough appellate work to do a whole another AFD for Ross's position. He thinks we should have an R&W doing .5 appellate and .5 trial support. Or AFD with R&W responsibilities. R&W pending conversation with Todd Watson.
*Josh is "pretty sure" we have full-time need for AVL R&W (will be CLT-based at least for the first year or so)

d. Converting Jared to AFD - What effect does that have on work measurement (i.e. increasing number of AFD's may dilute work measurement)?
* Josh and JP requested call with Todd Watson to discuss why he is advocating changing the R&W to AFD status. Is this just better for DSO in general or is this really better for our office?

e. How is the appellate unit doing now?
Also, consider the possibility of SCOTUS granting cert on ███████ case and what effect this will have on unit. How does that impact whether we get an R&W or AFD for Ross's position?
*If this happens, Josh and Ann have talked to ███████████████████████
████████████████████████████████████████████████████████████████

2. Caleb – DM2 and Johnson cases

a. 218 open dD cases, mostly DM2 and Johnson – status?
Josh talked to Caleb about doing this and closing in dD himself (Josh will follow up with Caleb)
Holly – zero time reports once every quarter so that there is attorney time in each case during every quarter.

3. Job Descriptions for each role in the teams

a. Do we have these in writing?
* Erin has hers written out since retreat
* Peter has it but not sure if it's written out
* Each team leader draft each team member's roles and send to Tony

4. What are the ongoing challenges within the teams

a. Get specific – what do we need to focus on?
* Mary Ellen will talk with Kathy about being back-up on the phone (instead of putting it on busy and not answering the phone) Tony will reiterate this when he meets with Kathy next week.

US00007414

* Do we need to reevaluate her position? Mary Ellen has had problems getting her to do receptionist duties instead of doing legal assistant duties so don't think it's a good time to change her position now.

*Appellate unit – Ross's unavailability has left them down for a long time.

      *Short term – would Ann want FT? Josh will talk to her on Monday

*Erin – Jackson requires reminders, kicks in the butt, leave often, and he's supposed to ask Martina, Lisa and Claudia to back him up on mail runs, etc. Generally, if he's asked to do something, he does it.

      Concerned that Rahwa has LaTorya's ear right now and is responding a little more negatively. Rahwa is smart and manipulative but has a lot of anxiety and paranoia. Not good with clients. The biggest issue is the toxicity that Rahwa is continuing to spew.

      Suggestion is to have Erin talk about it during the team meeting of how to address how to get coverage if needed. And document, document, document.

*Need random case reviews (like SD trial team leader position)

*JP – team in good place. Biggest issue has been balancing responsibilities with absent role. Worry about Beth because she is a great lawyer but doesn't trust herself. Need more kudos time for her and ask for her input on things.

      He still wants to push Kimberly out of her shell a bit.

*Mary Ellen – Emily is the best asset to the AVL office, perfect team player. Iveth helping with the clerical stuff. When Jim and Nancy are on, they are on. Fredi is a lone wolf and will not let any other attorneys help her. She will use Jim and Nancy but no lawyers, even when judges' perception is that she's never offered any help. She's out a lot for trainings. The judges love her.

      *Latest example, Fredi just left for 4th Circuit training without taking leave, didn't get coverage for her duty day which had multiple detention hearings.

*Peter – support staff working together well. The attorneys have their own issues but seem to be more style than substance.

Bcc'ing most of the team to keep everyone on the same page.

5. Expert Issues

*Nancy still receiving a lot of requests for mental health experts where no records have been received and if you get the records, it obviates the need for mental health experts. Really need to get records first (JP's team starting to do the quasi-"21-day docs" early on to get records)

*Now 12-month contract will be the max. Anything over that will need additional signatures, outside approval, etc.

* Expert policy in Personnel Manual will help

* Mary Ellen or Nancy will talk at next staff meeting

US00007415

| From: | James Ishida [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=E25E5DCAB5AE47DAB7640CE0BBA79A23-JAMES ISHID] |
| Sent: | 8/15/2018 7:16:00 PM |
| To: | Judge Roger L Gregory [█████@ca4.uscourts.gov] |
| CC: | Kim Llewellyn [Kim_Llewellyn@ca4.uscourts.gov]; |
| Subject: | Fwd: CONFIDENTIAL – Personnel Matter |

Dear Chief,

I wanted to alert you about a disturbing incident that happened today in this EDR matter.

It's a long story, one that I'll fill you in on tomorrow, but the short version is it appears that the head of the AO's Fair Employment Practices Office, Nancy Dunham, tried to obstruct an ongoing Fourth Circuit EDR investigation. Ms. Dunham allegedly instructed one of her staff to tell Tony Martinez that he needed to give the complainant, Caryn Devins, whatever it is that she is asking for — telework, relocation, etc — before Ms Devins hires an attorney or goes to the press. Ms Dunham reportedly said that this was not a request but an order that comes from the highest levels of the AO.

After some checking, Tony discovered that this "demand" did not come from the highest levels of the AO, but from Ms Dunham, who coincidentally is a friend of the complainant, Caryn Devins.

Needless to say, Tony felt threatened, coerced, intimidated, and mystified by the extraordinary demand. He's also very upset and intends to write Jim Duff a letter tomorrow.

I suggested to Tony that we step back and think about this overnight before doing anything further. I also told him that I wanted to advise you of what had happened.

I'll reach out to Thelma tomorrow to see if you have time to talk.

Thanks,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

████████ca4.uscourts.gov

Begin forwarded message:

**From:** "James Ishida" <████████@ca4.uscourts.gov>
**Date:** August 14, 2018 at 12:17:13 PM EDT
**To:** "Anthony Martinez" <Anthony_Martinez@fd.org>
**Cc:** "Judge Roger L Gregory" <████████@ca4.uscourts.gov>
**Subject: CONFIDENTIAL – Personnel Matter**

Dear Tony,

## 37

Thank you very much for forwarding the below email from Caryn Devins, your Research and Writing Attorney, who has accused your First Assistant of sexual harassment.

Under Chapter IX of the *Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit* (January 2013) ("the Plan"), I as the EDR Coordinator am required to inform Chief Judge Gregory of any report of wrongful conduct, which includes allegations of sexual harassment. Chapter IX also directs "[t]he Chief Judge and/or unit executive [to] ensure that the allegations in the report are appropriately investigated either by the human resources manager or other person."

I understand that arrangements are currently being made for you to appoint someone outside your office to investigate the allegations contained in the below email. At the conclusion of the investigation, under the Plan, any employee found to have engaged in wrongful conduct may be subject to appropriate disciplinary action.

As a reminder, Chapter IX imposes an obligation on everyone involved in the investigation to "protect the confidentiality of the allegations of wrongful conduct to the extent possible," which includes limiting the dissemination of information and records on a need-to-know basis.

Please let me know if you have any questions. I'll be in touch with additional information.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

██████████ )ca4.uscourts.gov
Anthony Martinez---08/14/2018 10:56:10 AM---James, Here it is.

From: Anthony Martinez/NCWF/04/FDO@FDO
To: James Ishida/CE04/04/USCOURTS@USCOURTS
Date: 08/14/2018 10:56 AM
Subject: Fw: Agreement from yesterday's meeting

James,

Here it is.

Thanks

US00002559

38

**Anthony Martinez**
Federal Public Defender



Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722
E-mail: Anthony_Martinez@fd.org

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s)
named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for
delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly
prohibited. If you have received this e-mail in error, please notify us by reply e-mail.

----- Forwarded by Anthony Martinez/NCWF/04/FDO on 08/14/2018 10:54 AM -----

From: Caryn Devins/NCWF/04/FDO
To: Anthony Martinez/NCWF/04/FDO@FDO
Date: 08/10/2018 11:12 AM
Subject: Agreement from yesterday's meeting

Tony,

I am confirming what we discussed yesterday. We agreed to the following:
1. I will be an Assistant Federal Defender;
2. I will work exclusively in appeals;
3. The First Assistant will not be in my chain of command or have any supervisory authority over me. I will
report to the Appellate Chief, who will report to the Federal Defender. The organizational chart will be
modified to reflect this.
As we discussed, these steps are necessary to protect myself from further sexual harassment by the First
Assistant, and to allow me to do my job effectively going forward.

In addition, as I told you, I am not safe working in the Charlotte office. The First Assistant has already crossed
many lines with me by engaging in sexually harassing and threatening behaviors, such as cornering me in the
lobby after hours when he knew I was alone. I have already curtailed my working hours to avoid being alone in
the building and this situation is not tenable moving forward. The First Assistant is likely to be very angry when
he finds out about these changes, which puts me at further risk.

You indicated that there was an issue with office space in Asheville and that it might take up to two weeks to
resolve the issue, but that you would report back to me in a week. In order to prevent further threats to my
safety, I am requesting to work remotely until the duty station issue is resolved. A long-term resolution that
allows me to work remotely and report to the Appellate Chief in Asheville is fine with me. An exception to the
telework policy can be justified by the lack of office space in Asheville.

Caryn

US00002560

Sent from Mail for Windows 10

US00002561

10/18/18
Tony Martinez

Interview w/ CD - No interest expressed
in Asheville via Skype. Does not recall.
Clearly understood CLT position.

Never asked about going to Asheville even up to today.
Spoke w/ JP. and possibly Josh.

Offered to help w/ asheville, but never said anything
about a long term move.

Knew nothing about her personal life. Had a bridal
shower for her. Came highly recommended by Court Clerk.

Normally hire people w/ at least 5 years
experience. Had 3 clerkships w/ high recco
from Court Clark. TM was new and just had been
appointed Defender.

TM not involved w/ offer. Never discussed w/ TM
about transition to FPD.

TM came ☞ late June / early July
CD EOD: August 2017

Discussed her goals - Trial or Appeals. She did

TM believes in mentorship. TM initiates the mentor relationship for JP + Caryn. JP had never done it before.

J. King came in a few months prior to Caryn.

CD expresses her goal to go to Asheville (after she got married)
Around May 2018
JP told TM (third party) "If I don't get to go to ASH I'll quit.)

Was going to wait until 1 year + make demand. "Going to make myself indispensable" to get to goal of going to ASH.

J. King 1st chair on Dixon case —
  July 10 trial date.
Went w/ Caryn + Jeff to see Mr. Dixon
  - No basic knowledge, common sense
  - Total lack of work

Prior to this: CD had a motion to suppress.
Allowed her to cross examine a Police Officer.
Called TM @ 9:30 pm nervous + TM encouraged her.
J. King helped her on technique to cross.

US00005948

CD's role was R+W on the case initially.
CD helps J. King but realizes he had done nothing. Believes she sees an opportunity. Starts taking over case.
End of May asked to 2nd chair; agreed however was not thinking

Goes to KC, getting msgs from Erin (Team Leader). She was upset, because CD was taking over case. Peter Adolf expressed concerns of her lack of experience.

TM takes CD off of Dixon June 12. does not recall how delivered. Her reaction to TM uneventful. Asked to stay on as support. This caused issues w/ the workload for his team so sent back to Peter's team + reassigned Jared to Dixon. Seemed to be fine to TM w/ these decisions.

6/22 J. King let go

7/5 - Both of them taking notes - told to stop.

US00005949

CD told JP + Josh about her intent to go to Asheville.

Dixon was an opportunity to get trial experience Would have been her first trial ever.

7/26 email - Executive decision to send Asked to review said ok.

AFPD advertised for CIT - she applied and was not interviewed. TM states this was for a position she currently.

✳ Did anyone talk to her about her application?

CD office was located in back in a cubby / shared w/ Caleb.
- now has a regular office

10/1/2016 became AFPD

8/24/2017 TM sworn in
     No manual at time going off of CJA manual

✳ Send Paul an email regarding signed Policy receipt by CD.

No training on EDR, Sexual Harassment

Unaware of CD requesting a ride home
from JP in the past.

TM never gave a ride home to CD.

Week of July 23 sick days created back

possible corelation between marriage +
Dixon case.

Participates in interview process.
Does not normally hire w/o trial experience

Researched mentorship w/ San Diego FPDO
checklist for shadowing.

1st project was working on a large white collar
case.
EOD: August

Nov. team structure implemented.
requested to be an informal mentor since she was
not on his team on Peter's team.

Prior cases from before teams (3 cases)

August to November - professional, friendly,

Early Nov.
Took Caryn + investigator to Little Rock to investigate a
case. Three went to dinner together, no time alone.

Tried to Arrange shadowing opportunities as
much as possible.

US00006226

5/18/18 – Last Lunch
Purpose of lunch: Basically to check in talk about whatever is going. Intent was to create a Safe space. Previously mentored like this in the past for him.

really wanted to be on a trial over the summer.
Fixated on Dixon (Child porn case)
1st chair (Jeff King) ; 2nd chair (Tony)
Brought Caryn along in March to meet w/ Dixon
Initially discussed case involvement in April.

█████████████████████████████

*(margin, left side)* Asheville came up in interview, made it clear his position was for CLT.

really wanted a trial that summer. When left for lunch went to jail to see a client. Asked about how things were going personally. If she couldn't move to Asheville she was going to quit. Was told no position in Asheville ; was hoping for more flexibility on his part (Cooper). Had not meant to bring it up. Not impossible, but can't guarantee.
*Got a little tense, but ended friendly

Context of convo was I am really working hard + wants a trial to become indispensable + get her transfer to Asheville.

If no transfer, wanted a promotion.

US00006227

5/15: Lunch + a drink after hearing. Caryn asked to get a drink after lunch, Tara could not go. So just JP + Caryn. JP agreed that a transition to AFD was proposed.

Caryn stated made w/ in 3 months. JP asked to see the offer letter. Twice told she had pre-existing plans to make demands on the office.

+ Lunches total.

JP felt Caryn was doing a "bait and switch", while at week of 5/21 Caryn lobbied to get on Dixon.

Text msg from Erin Taylor on 5/24, issues w/ Dixon due to Jeff not doing his due-diligence. Concerns w/ Caryn being a new atty.

5/29 walk + talk (45 mins) Caryn discussed concerns w/ case. was feeling overwhelmed, discussed how she was feeling about it. Just want to do my job and not worry about drama. Said "Don't get too attached to the case as Tony may take you off." No immediate reaction - seemed to become distant.

read her vehicles to get to know her better since he was her mentor.

✱ mentioned he read a book she had mentioned to read from an author she has worked w/ in the past.

Felt she started avoiding JP; felt she was dropping everything but Dixon.

Mobley case - She had been very engaged in this case. All of a sudden no interest as some AFD's get very attached

Dixon interest by Caryn was to get trial experience and at end of summer could request transfer or quit.
(Dixon did not go to trial)

Jeff seemed very attached to Caryn being on the case. And had a severe reaction.

Normal procedure — not to remove atty's from cases.
* this is abnormal *

Jeff + Caryn both newer atty's not a good decision to put them on the case. TM admitted to making a mistake.

While out of office JP asked Tony to check in w/ Caryn to see how the mentoring was going. Nothing negative to say; no concerns.

How was Caryn notified of coming off case?
  JP unsure how it was communicated to her.
  Erin asked JP to ask Caryn how she was doing + to find out.

F/u email sent to ~~Mobley~~ Caryn re: Mobley.

Caryn appeared upset about having to end meeting w/ Dixon so JP could have his team meeting.

Caryn responds to Mobley email: Curt, did not want to
~~JP understand about itself~~

US00006229

PSI scheduled around her schedule sometime around 5/29 or 5/30. Set for June 7th @ 9am.

6/5: All hands mtg. re: Dixon case. JP not in attendance. Email from Caryn @ 9am to review disc on same day as prev scheduled

    * Putting off another client meeting to get what she wanted *

JP had felt very bothered by what her intentions seemed to be. (Txsfer to ASH)

6/6 Caryn reschedules disco. mtg w/ USA. to accommodate her meeting w/ Mobley + JP to go over order.

6/6 Caryn requests mtg. Sorry about mix up w/ scheduling. "Did you raise you had a conflict?" (JP) "I thought I had to prioritize." (CD) Upsetting did not try to accommodate both, needs to consider all of her clients. Really needed to figure out her disc — needs to honor commitment although did not need to be there.

Told this was about communication; be open + honest and I'll bend over backwards to get you what you want.

*Admitted to being very upset. Was controlling. Does not recall to raised his voice or not.*

Open F/U this was not the only time all could meet for disco review as Caryn has stated.

US00006230

6/12: offer letter copy to JP - Caryn approaches
JP @ 6:30 pm dressed in full biking gear. } Awkward convo-
6/12: Meeting re: Davis, tense but went well } felt apologetic;
mentioned off of
Dixon case.
6/12 - 6/21 Worked on Davis brief, things seemed
to be okay - not great.
Dates:
} Said sorry for
being short. JP
mentioned very
invested in her
success. "I know"
+ left.

6/20: Came by JP office + seemed friendly re: Davis case.
Let's meet in am to go over sent prep.

6/21 - not in office as am. Got email from Caryn
re: Her schedule + if needed anything. He needed some
research. Met @ 5 to discuss what he needed +
AFD opening as a result of J. King departure.
"I bet you're getting flooded w/ lots of applications."
JP tried to stay neutral.
   Mtg. ended about 6:30 pm. Asked if she rode +
needed a ride home due to bad weather coming in.
   *She has asked for rides in the past*
Caryn declined stating did not think it would
rain + she was a tough girl.
   As JP walked out of office it started raining.
Did not respond... wasn't sure if should wait
since he text and then she came down. Standing
about 10 yards away - did not block her egress.

offered ride due to a positive seeming mtg and felt they were in the "healing process."

6/22: CD out of office. res

6/22: J. King fired — Had to move cases around. Caryn could take SRV cases + illegal re-entry cases. Team leaders took most of work.

* Aware CD had reacted badly in the past when assigned cases so sent text + email as a heds up. No response

6/25: Caryn attends sentencing for Davis

6/26: Peter sits down to discuss cases she was assigned. After mtg. sent Tony an email ~~????~~ to say how busy she is.

She had asked for structured training in the past. Decided to try and push her out of her comfort zone due to being a trial atty + needing to be able to think on her feet.

6/27 – Invites out to lunch, post Davis drinks, or in office. Scheduled for 6/29 @ 9am.

6/29 called in sick.

7/2 — Had mtg.
Crossed boundary regarding how she spoke to her regarding the PSI.

US00006232

7/3 Caryn on duty - JP saw her in break room @ lunch. "What do I need to do @ duty atty on a day when office is closing early." In hindsight she seemed very angry.

Met w/ TM + CD

7/5: Break down in communication
CD requested to meet w/ TM w/o JP in the room. Both started taking notes. TM told them both to stop taking notes.

CD cried @ end of meeting explaining was under pressure, has no experience.

JP stated you need to get a new mentor, someone you have a good relationship w/. Suggested Kelly. Explained the purpose of the checklist to justify her transition to AFD.

7/6 - Entered elevator @ same time w/ Erin.

JP out of office 7/8 — 7/13

7/20 RW assignment discussion due to outgoing RW. Did not propose or was uncomfortable w/ CD being on his team.
Did not voice any concerns due to trying to model what he has said in the past about not being able to choose who you worked with

US00006233

Had concerns re: her personal feelings toward JP may affect her work.

Emailed 7/22 CD to discuss structure of her placement on the team

Called in sick 7/23-7/27

7/24- First informed of Caryn's concerned.

7/25 Appellate AFD position — RW could be converted as an AFD. This was an organizational decision to convert the two remaining RW's to AFD.
* Due to unforeseen issue needed more appellate support not explained to staff prior to Appellate AFD. (CLT)
* TIMING ISSUES * COMMUNICATION *

Spoke about ORG chart; had not had any input on this.

On 8/7 told by Bill W
CD had applied for AFD position. JP asked to recuse himself from the entire recruitment for this position.

Applied on 8/7
Morning of 8/10 spoke w/ Tony about not being the leave approver for CD.
→ 8/9: Passed each other in hallway and said hi.
No contact w/ Caryn since 8/10 other than being in same email chain re: cases.

Admitted this was dumb to do (Pay for stay)
It was a joke.
    referring to a plan to move her to an AFD.

~~She was the only day~~
Never promised increase in pay, etc.

No recollection of training
Nicknames - early January referencing lunch
as a joke. All name came out of her mouth.

No annual review to his knowledge
    Review would be done w/ Tony.
5/18 convo - when CD mentioned raise GP had
every intention of trying to get this done.

CD never mentioned JP's concern of her lack of experience
to TM when lobbying to get on DIXON case. Stated was
not her responsibility to inform him. JP disagreed

Her behavior changed when realized she would not get
her way. Feels victimized by her.

Pattern of avoiding what she doesn't want, goes over
heads, then comes out swinging
    almost always
CD gone by 5:30; JP does not leave prior to 5:30
hardly ever sees her when she is leaving. Probably ran
into her leaving but uncommon. Gave notes 5-10 times   may not have    accepted

repair of relationship?

Biggest Fear: This becomes a shadow

Would like documented she was found to be making this up.

All units should report to him; this should not be one unit that goes around me.

No intention to have interaction. Would be comfortable w/ a level of insulation.

Explicit provision to address the things she has done that do not relate to the complaint (JP not involved in this)

1) Finding of fact
2) What can be considered and what should not be considered
3) Clearly explain no retaliation
4) One month cooling off once she returns to the office
5) Any communication is work related
6) No involvement during this time for JP to make any decisions regarding her
7.) Eventual return to status quo + normal reporting process.
8) No issue w/ Caryn staying w/ agency.

US00006236

**From**: JP Davis [JP_Davis@fd.org]
**Sent**: 9/26/2018 1:16:00 PM
**To**: heather_beam@ncwp.uscourts.gov
**Subject**: Re: Advice re: Process and Rights

No problem, will do. Thanks!

Get Outlook for Android

From: heather_beam@ncwp.uscourts.gov
Sent: Wednesday, September 26, 1:04 PM
Subject: Re: Advice re: Process and Rights
To: JP Davis

Hey JP,

I have not seen anything yet written. I would ask Tony or James Ischida at the Circuit Executives Office. Sorry I can't help with that.

Heather

Sent from my iPhone

On Sep 26, 2018, at 12:51 PM, JP Davis <JP_Davis@fd.org> wrote:

Hey Heather, one more question did occur to me after thinking about it for a bit – you referenced a Chapter X complaint, which to my understanding would have required Caryn to actually write down what she alleged had occurred. As I said in my original email, I have very little information about what Caryn accused me of doing. If there is such a complaint, would it be possible for me to see or be told at least those parts that pertain to my own conduct?

Thanks,

JP

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Wednesday, September 26, 2018 9:46 AM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** RE: Advice re: Process and Rights

You're welcome JP! If I can do anything else please let me know.

Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

<image001.gif>JP Davis ---09/26/2018 09:38:39 AM---Thanks for letting me know, Heather. I will contact Mr. Ishida for more details, as Tony is out of t

From: JP Davis <JP_Davis@fd.org>

To: "Heather_Beam@ncwp.uscourts.gov" <Heather_Beam@ncwp.uscourts.gov>
Date: 09/26/2018 09:38 AM
Subject: RE: Advice re: Process and Rights


Thanks for letting me know, Heather. I will contact Mr. Ishida for more details, as Tony is out of the country all week. I really appreciate how fair and patient you have been in this.

JP

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Wednesday, September 26, 2018 9:24 AM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** RE: Advice re: Process and Rights

Good morning JP,

I apologize for not following up with you sooner, however I heard from James Ischida at the circuit on Friday that Caryn has decided to hold off on further pursuit of her complaint under Chapter IX and X of the EDR plan. She wants to consider her options. So until I hear further from Mr. Ischida, this complaint has been put on hold. I would encourage you to please keep all of your documentation together in the event this comes back and also continue to maintain your distance to the best of your ability as it concerns Caryn.

Of course if you have any other questions please feel free to contact me, but I would also talk with Tony as he may have more information.

I hope you have a nice day!

Heather Beam
Human Resources
Western District of North Carolina
704-350-7601


<image001.gif>JP Davis ---09/26/2018 08:59:19 AM---Hi Heather, Hope you're well-- just wanted to give you a head's up on my schedule this week for plan

From: JP Davis <JP_Davis@fd.org>
To: "Heather_Beam@ncwp.uscourts.gov" <Heather_Beam@ncwp.uscourts.gov>
Date: 09/26/2018 08:59 AM
Subject: RE: Advice re: Process and Rights


Hi Heather,

Hope you're well-- just wanted to give you a head's up on my schedule this week for planning purposes. I have a hearing scheduled tomorrow afternoon at 2:15 PM and a lunchtime commitment on Friday, but am otherwise available all day today, tomorrow morning and after about 3:30, and Friday other than lunch. I need to schedule some jail visits during some of those times, but meeting with you takes priority, so just let me know. I am on your schedule, so if we need to go into next week, that's perfectly fine-- I have a good bit of availability then as well.

Additionally, I have pulled together a number of documents that I think may be relevant, including a timeline of the significant events from my perspective and various emails and text messages, among other things. I don't

really know what Caryn is alleging, so I tried to cast a broad net over the last few months leading up to this. I am planning on having these available when we talk, but if you think it would be helpful to have any of them in advance, please let me know.

Thanks!

JP

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Saturday, September 8, 2018 11:45 AM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** Re: Advice re: Process and Rights

Hey JP,

All I can say is do your best to stay away from Caryn and if you need to talk keep it to Bill or Tony and of course your wife only. You are more than welcome to contact me with any questions and I will be in touch w you as soon as I meet w Caryn to set up a meeting w you and we can hopefully resolve this as soon as possible. Enjoy your weekend!!

Heather

Sent from my iPhone

On Sep 8, 2018, at 10:02 AM, JP Davis <JP_Davis@fd.org> wrote:
Thanks for getting back to me so quickly, Heather, just having a general idea of the timeframe and how it will work helps a lot. I'm sure I will have more questions for you when we meet, but I understand the process takes time and will hold off until then. I'll look forward to hearing from you in a couple weeks, and if there is anything I ought to be doing in the meantime -or NOT doing- please let me know.
JP
Get Outlook for Android

From: heather_beam@ncwp.uscourts.gov
Sent: Saturday, September 8, 9:13 AM
Subject: Re: Advice re: Process and Rights
To: JP Davis

Hey JP,

I have been trying to schedule an initial meeting with Caryn to discuss this exact same thing with her and get more information. We have rescheduled our meeting for week after next. Once I meet with her I will then schedule a meeting with you to ask you some questions. Essentially until I have met with her and you this process is at a standstill. Once all involved parties have been interviewed I will submit my report to Tony Martinez for him to make a decision on if this complaint will go any further. I hope this helps and I understand this is a stressful time for you. Please feel free to reach out with any other questions.
Sincerely,
Heather Beam
Sent from my iPhone
On Sep 7, 2018, at 4:32 PM, JP Davis <JP_Davis@fd.org> wrote:
Hi Heather,

Sorry to reach out to you like this, but I asked Bill this morning in his capacity as our HR administrator if there is anyone who could advise me in general of the process and my rights regarding the on-going investigation instituted by Caryn Devins. Bill believed you were the proper person for that, and thought it would be fine for me to reach out to you in that regard.

US00001359

Would it be possible to speak with you some time next week related solely to those topics? To be as clear as possible, *all* I am looking for is general process information, e.g. whatever I am allowed to know re: how the process works, what rights I might have related to it, how long I should expect it to take, what outcomes are possible, what I am allowed or not allowed to do in the meantime, etc. The main reason I am asking is that this situation has created some serious personal and professional hardships for me, and I think it would help me a lot just to have a basic understanding of the process and what rights I may have related to it, if any.

Thanks, Heather. To be honest, I was initially a little hesitant about asking, because I'm a little worried that even reaching out like this might be viewed as trying to rush or influence things. I am in no way interested in doing that, and If you feel it would be better to refer me to someone else to advise me on these topics, please don't hesitate to do so.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00001360

**From:** JP Davis [JP_Davis@fd.org]
**Sent:** 10/4/2018 3:00:00 PM
**To:** heather_beam@ncwp.uscourts.gov
**Subject:** Re: Request re Investigation

That sounds great, Heather. Why don't we say 9:30 on Wednesday? That way we can knock it out but also give you some room in case your staff meeting runs long. Thanks so much!

Get Outlook for Android

From: heather_beam@ncwp.uscourts.gov
Sent: Thursday, October 4, 2:19 PM
Subject: Re: Request re Investigation
To: JP Davis

Hello JP,

I appreciate your request and I believe I can most likely accommodate it. I have a meeting planned with Caryn tomorrow afternoon at 3:00 PM. Will you be available to meet next week? Since Monday is a holiday and I was thinking of using Tuesday to review the information I receive from Caryn I would be ready to meet with you on Wednesday. I have an 8:00 AM staff meeting, but should be available at 9:00 AM and anytime thereafter. I am also available anytime next Thursday as well as Friday with the exception of one meeting scheduled from 9-10AM on Friday. Please let me know what works best for you. Also, please bring along any and all documentation you have put together as that will be most helpful to me to complete the investigation. I know this has been a long process and I can assure you I will not hold it up any longer than necessary from coming to a conclusion. I am also fairly confident I can have my final report to James Ishida prior to your retreat. Please let me know if you have any questions or concerns. Have a great day!

Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

JP Davis ----10/04/2018 12:13:33 PM----Hi Heather, As I'm sure you are already aware, last week I spoke to James Ishida and requested the i

From: JP Davis <JP_Davis@fd.org>
To: "Heather_Beam@ncwp.uscourts.gov" <Heather_Beam@ncwp.uscourts.gov>
Date: 10/04/2018 12:13 PM
Subject: Request re Investigation

Hi Heather,

As I'm sure you are already aware, last week I spoke to James Ishida and requested the investigation go forward, which has now happened with Caryn's consent. I had mentioned one thing to James that I wanted to pass on to you as well, and I would also like to make a related request. I don't mean to be presumptuous in doing so-- I know my ability to make any requests, let alone have them granted, is extremely limited to say the least. All the same, it is important to me, so I figured it wouldn't hurt to ask.

US00001353

Our office will begin a three-day full office "retreat" on October 24, 2018. I would like to request that the factual investigation be completed before then if at all possible, assuming that can be done without compromising its integrity. I know that means asking more of your time, and I don't do so lightly. There are three reasons why I am making this request:

First, while I haven't been part of the planning, the retreat should necessarily involve review and discussion of team organization and office structure. As you are probably aware, the entire Appeal/Research and Writing Unit has been temporarily removed from my authority pending this investigation. Most of the office is currently unaware of that, but I expect the retreat will make them aware—it is pretty obvious once you see it, as this is the only part of the office that goes around me, and there is no real reason why that should be the case. Even trying to avoid conversations related to Caryn, I have heard enough to know that many of employees have figured out there is some kind of existing HR matter. Once folks see that my authority has been reduced, I strongly expect that at least a few of them will connect the dots, and quite possibly reach the wrong conclusion regarding the status and merits of Caryn's claim. If that happens, I am afraid it will result in damage to my reputation and standing in the office that I may never be able to repair. It's my hope that the Chapter IX investigation can be completed in time for the restructuring to be addressed and decisions made before it is highlighted.

Second, in addition to affecting me personally, it seems to me that a cloud has hung over the office as a whole in the two months since this began. Caryn's extended unexplained absence and management's inability to address it or issues related to it has resulted in an atmosphere of tension that has impacted morale and affected our office's operations. I'm concerned that will be a backdrop to the whole retreat, and undercut efforts to build office unity. It certainly will affect my own participation and leadership. Resolving the Chapter IX investigation won't fix that completely, as we won't be able to reveal anything about it, but I think it will let us at least project some kind of certainty that matters are being handled appropriately and will ultimately be resolved.

Last and just as importantly, this should not prejudice Caryn in any way. Since she is just reporting facts already known to her and which she has already raised, it doesn't require any preparation or decision-making on her part. Plus, she is aware and has consented to the investigation proceeding. Additionally, to the best of my understanding, Caryn is employed full time with our office with no court obligations and very few client obligations or other meetings, so her schedule should be amply flexible to accommodate this, particularly given that she should be available by phone during all work hours. Thus, moving forward swiftly should not be any imposition on her.

Thanks, Heather. I really do respect your time and effort in this, and I fully appreciate there may be reasons I don't know about as to why this timeframe is impossible. Again, I don't want to be overly presumptuous by even asking. Nevertheless, since the potential damage to me and the office is significant and there is no prejudice to Caryn, I am hoping you will be able to accommodate my request. Regardless, it seemed like something I should put out there, and thanks for your consideration.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00001354

**From**: JP Davis [JP_Davis@fd.org]
**Sent**: 10/11/2018 10:00:00 AM
**To**: Heather_Beam@ncwp.uscourts.gov
**Subject**: Investigation Follow Ups
**Attachments**: Early Mgmt Project Discussion.pdf; Feb Mentoring Lunch Request & Response.pdf

Hi Heather,

In thinking about your questions, I came up with a few more things that I thought I would pass on.

First, regarding mentoring lunches being mandatory, I've attached an email chain setting up the one in February, which I believe was the second out of four. Honestly, this is probably not all that meaningful, but it at least shows that the demeanor was more asking than telling, and her responses were not reticent.

Second, and more substantively, I definitely think saying she was "involved in management decisions" is a bit of grandiosity on Caryn's part. It would certainly be accurate to say she was involved in some management *projects*, which is why I struggled a bit with that wording yesterday. She is certainly not the only person to be included in this type of project, but I did give her an elevated role, so it's not wrong to say that she was more involved in *some* management projects than most. On further reflection, I thought it might be useful to explain how that came about.

Caryn and I spoke in early November about ideas she had for improving the system/administrative structures (I can't remember if she asked to talk to me about this or if it came up in another conversation). I was very impressed with her thinking, which was similar in many ways to my own. I had expected that her unique background and talents would make her a significant resource for administrative/management issues, but I was surprised by how quickly she took to it on her own. That conversation ended up turning to detention rates, which is something I've been interested in attacking for a long time. That's how she ended up working on the detention project with me, which, to my knowledge was the main management project she worked on. I've attached an email chain reflecting our conversations — particularly relevant is the first email from me where I talk about her ideas in general, which reflects that first conversation that started the whole thing.

Other than the detention project, I recall her being involved with two other management projects: One about discovery agreements and one about the Cardone report. If I recall correctly, I think she got involved in the discovery agreement issue because it came up in a meeting between her, me and Tony "huddling" right after a meeting with USPO and other stakeholders on the detention issue. Tony and I each independently solicited her feedback on Card one because it was up her alley and played to her knowledge of the AO.

Outside of those specific projects, she absolutely did not participate in any office-level decision making. I certainly solicited her feedback and was open to her ideas, as I do with all employees, and it's possible if not likely I solicited her input more proactively than with others, due frankly to the fact that I found it more valuable, as her ideas often complemented my own. Also, as I said, I did think she could ultimately grow into a leadership/management position, so I was trying to keep her engaged. That said, I don't recall anything significant.

Thanks!

JP


J.P. Davis
First Assistant Federal Defender
Federal Public Defender

US00004014

Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00004015

**From**: JP Davis [JP_Davis@fd.org]
**Sent**: 10/15/2018 3:38:42 PM
**To**: Anthony Martinez [Anthony_Martinez@fd.org]
**Subject**: FW: Policy Follow Up

FYI – long story short is we can touch base per my email whenever you feel appropriate.

**From:** JP Davis
**Sent:** Monday, October 15, 2018 3:31 PM
**To:** 'Heather_Beam@ncwp.uscourts.gov' <Heather_Beam@ncwp.uscourts.gov>
**Subject:** RE: Policy Follow Up

Thanks for keeping me updated, Heather, knowing where things stand is really helpful. I understand, and greatly appreciate your willingness to do that on the summary of facts. I will ask Tony if he can touch base with James early next week after James gets it and maybe they will be able to get enough idea of where this is headed to address at least some of my retreat concerns.

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Monday, October 15, 2018 1:42 PM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** Re: Policy Follow Up

Great, thank you so much! I am meeting with Tony this week and will be working on putting my report together for James Ishida. I am sorry to say this may not get done prior to your conference on October 24. I will be in interviews all day on Monday with the new magistrate judge coming in on Monday next week and more meetings in Asheville that Tuesday. I am going to see if I can work from home on Friday to work on this and perhaps get my summary of the facts up to James Ishida on Friday afternoon or Monday morning.
Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

JP Davis —10/15/2018 12:58:13 PM—Heather, One more follow up for you. I've looked into it a little and unfortunately, it really doesn

From: JP Davis <JP_Davis@fd.org>
To: "Heather_Beam@ncwp.uscourts.gov" <Heather_Beam@ncwp.uscourts.gov>
Date: 10/15/2018 12:58 PM
Subject: Policy Follow Up

Heather,

One more follow up for you. I've looked into it a little and unfortunately, it really doesn't seem like much if anything was done between conversion and the release of our new manual to train FPDO employees on harassment or make them aware of EEO/EDR policies. That said, I do recall telling *Caryn* that the office was generally following policies in the old CDO personnel manual, such as they applied, pending release of the new FPDO manual. I know I told one or two others the same thing, and I believe all employees were told that at some point, though I can't swear to it.

With Caryn, it came up on the afternoon after our very first mentoring lunch, which would have been 12/19/17. After we got back from lunch, Caryn asked me if she was allowed to appear in court on behalf of her mother-in-law related to a family property

dispute. I remember citing to the Code of Conduct in the old manual, and her saying she didn't think we *had* a manual. I specifically recall telling her that Tony was working on creating one, but in the meantime we were generally going by the policies in the old CDO manual, such as they applied. I remember being in her office and showing her where it was kept in our digital library, and I *think* we even looked at the Canons of Conduct together. We definitely did *not* look at any other parts of the manual, or discuss harassment or other EEO issues in any way. I probably would have told her to ask me, Bill or Tony if she ever had any questions about policies, but I don't have a clear memory of that part.

I'm attaching a copy of the CDO manual as it was at the time for reference; Code of Conduct is up front and EEO/harassment policies are on pages 15-18. Of course, the manual doesn't reference the EEO plan at all, so this may actually be worse for me than nothing. Nevertheless, I thought I should pass it on. I'm also attaching an email chain reflecting the actual question she was asking, which doesn't mention the manual but does reflect the date (if you looked at our texts, this is the email she was referring to when she said she "hated being paranoid").

Incidentally, I do recall having a conversation with Caryn about sexual harassment in the judiciary on one point, while I was driving her home. It was casual conversation, just discussion of it in general and our takes on it. I'm pretty confident that conversation would have been different if she had been feeling any discomfort with me, but it happened a good bit before any of this — probably around March — so that probably doesn't mean much.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

 [attachment "Personnel Manual 9-10-15 Update - Final.pdf" deleted by Heather Beam/NCWP/04/USCOURTS] [attachment "Re_ of counsel role.pdf" deleted by Heather Beam/NCWP/04/USCOURTS]

US00002823

**From**: JP Davis [JP_Davis@fd.org]
**Sent**: 11/14/2018 9:10:00 AM
**To**: Heather_Beam@ncwp.uscourts.gov
**Subject**: RE: Policy Follow Up

I know, I know, I almost didn't send that! I really am not trying to be a pest, I promise. When I got your email I did have to ask myself why I'm not a little more zen about the whole thing when that's what I would say to one of my clients. I guess the reality is that with Caryn's conspicuous absence, it feels less like a settling of past events and more like we're still being taken advantage of, every day. Of course, the fact that I could still lose my job for misconduct doesn't help either, so there's that ☺.

Anyway, I really do appreciate everything you have going on and you being willing to keep me updated like this. Having an endpoint is a huge comfort in and of itself, so no worries on the timing. You and your family have a wonderful Thanksgiving too!

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Wednesday, November 14, 2018 8:18 AM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** Re: Policy Follow Up

Hey JP! Haha! Ya know, with every email you send me it takes me away from working on this report. :) Just Kidding ... I had to have a conversation with James yesterday regarding the report so I told him he will have it by Friday. I feel that is a reasonable goal and is truly the best I can do with everything else on my plate at the moment. I appreciate you checking up and I know you want this resolved as quickly (or even quicker) than I do. If I do not talk with you before hand I hope you and your family have a wonderful Thanksgiving!

Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

JP Davis —11/14/2018 08:13:55 AM—Hey Heather, I hate to follow up so soon, but wanted to let you know that James and Tony are togethe

From: JP Davis <JP_Davis@fd.org>
To: "heather_beam@ncwp.uscourts.gov" <heather_beam@ncwp.uscourts.gov>
Date: 11/14/2018 08:13 AM
Subject: Re: Policy Follow Up

Hey Heather,

I hate to follow up so soon, but wanted to let you know that James and Tony are together at a conference today and half of tomorrow. I am hoping that if they get the report while they're there they can discuss it and we will have a chance of getting the whole thing wrapped up before Thanksgiving so it isn't hanging over our heads during the holidays. I know you're working on it as hard as you can and me bugging you probably isn't helping, but wanted to pass that on. And if it makes you feel any better, I've had three prosecutors send me similar emails already this week :)

JP

Get Outlook for Android

US00001343

On Tue, Nov 6, 2018 at 7:13 PM -0500, "JP Davis" <JP_Davis@fd.org> wrote:
Thank you so much, Heather, I really appreciate you being willing to do that. It helps a lot. I understand, this has definitely been a crazy season. And just think, soon you'll have Judge Bell to staff up!

Get Outlook for Android

On Tue, Nov 6, 2018 at 6:25 PM -0500, "Heather_Beam@ncwp.uscourts.gov"
<Heather_Beam@ncwp.uscourts.gov> wrote:
Thankfully I am. I promise I want to get this done as soon as possible. It's been busy for me as our new magistrate judge has been appointed in Asheville and we did interviews for his law clerk. I've got like 6 active vacancies right now amongst other things. Having this illness since last week definitely set me back in my progress on these projects. Have a great evening!!

I'll let you know as soon as I send my report to James at the circuit.

Heather

Sent from my iPhone

On Nov 6, 2018, at 5:20 PM, JP Davis <JP_Davis@fd.org> wrote:
Thanks, Heather. How crappy to be sick over the weekend, hope you're feeling better!

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Tuesday, November 6, 2018 5:16 PM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** Re: Policy Follow Up

Hey JP,

I am working on it this week. Unfortunately I was sick from Thursday night to yesterday so I did not work on this over the weekend as I would have liked. Anyway, my goal is to have this wrapped up within a week.

Heather
Sent from my iPhone

On Nov 6, 2018, at 5:07 PM, JP Davis <JP_Davis@fd.org> wrote:
Hi Heather,

Just wanted to check in and see if you have any indication when we might hear something. Sorry to be anxious, but the new org chart did get put up during the retreat, and while we were there Caryn came into the office and removed all her personal effects, which I worry gives more credence to the idea that her claims were meritorious.

JP

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Monday, October 22, 2018 4:37 PM
**To:** JP Davis <JP_Davis@fd.org>

**Subject:** Re: Policy Follow Up

Thanks for understanding JP. I'll see you in Blowing Rock.

Heather
Sent from my iPhone

On Oct 22, 2018, at 3:57 PM, JP Davis <JP_Davis@fd.org> wrote:

Thanks, Heather. The timeframe is a bit of a bummer, but I have no question you've done what you could, and I support this being thorough, fair and accurate over being quick. And in fairness, all those papers and the thumb drive full of junk I dumped on you probably didn't help my cause much.

I appreciate it, and also appreciate you coming out to the retreat for us! See you in Blowing Rock!

JP

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Monday, October 22, 2018 3:11 PM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** Re: Policy Follow Up

Hey JP,

My timeline was a little too optimistic unfortunately. I am meeting with one other person today and then hope to work on it as much as possible tomorrow, however I also have to get ready to present at your retreat on Thursday. :)

I am working on this as quickly as possible as I would like to get this done as well. I am sorry it looks like it will not be resolved prior to the retreat.
Heather Beam
Human Resources
Western District of North Carolina
704-350-7601


<image001.gif>JP Davis —10/22/2018 03:08:16 PM—Hi Heather, I know your timeframe on the summary of facts was optimistic, so I wanted to check in wi

From: JP Davis <JP_Davis@fd.org>
To: "heather_beam@ncwp.uscourts.gov" <heather_beam@ncwp.uscourts.gov>
Date: 10/22/2018 03:08 PM
Subject: Re: Policy Follow Up


Hi Heather,

I know your timeframe on the summary of facts was optimistic, so I wanted to check in with you before I asked Tony to get up with James. I know you are tied up today and tomorrow and understand if you weren't able to get through it all before that.

Thanks,

JP

Get Outlook for Android

US00001345

On Mon, Oct 15, 2018 at 3:31 PM -0400, "JP Davis" <JP_Davis@fd.org> wrote:

Thanks for keeping me updated, Heather, knowing where things stand is really helpful. I understand, and greatly appreciate your willingness to do that on the summary of facts. I will ask Tony if he can touch base with James early next week after James gets it and maybe they will be able to get enough idea of where this is headed to address at least some of my retreat concerns.

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Monday, October 15, 2018 1:42 PM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** Re: Policy Follow Up

Great, thank you so much! I am meeting with Tony this week and will be working on putting my report together for James Ishida. I am sorry to say this may not get done prior to your conference on October 24. I will be in interviews all day on Monday with the new magistrate judge coming in on Monday next week and more meetings in Asheville that Tuesday. I am going to see if I can work from home on Friday to work on this and perhaps get my summary of the facts up to James Ishida on Friday afternoon or Monday morning.
Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

<image001.gif>JP Davis —10/15/2018 12:58:13 PM—Heather, One more follow up for you. I've looked into it a little and unfortunately, it really doesn

From: **JP Davis** <JP_Davis@fd.org>
To: "Heather_Beam@ncwp.uscourts.gov" <Heather_Beam@ncwp.uscourts.gov>
Date: 10/15/2018 12:58 PM
Subject: **Policy Follow Up**

Heather,

One more follow up for you. I've looked into it a little and unfortunately, it really doesn't seem like much if anything was done between conversion and the release of our new manual to train FPDO employees on harassment or make them aware of EEO/EDR policies. That said, I do recall telling *Caryn* that the office was generally following policies in the old CDO personnel manual, such as they applied, pending release of the new FPDO manual. I know I told one or two others the same thing, and I believe all employees were told that at some point, though I can't swear to it.

With Caryn, it came up on the afternoon after our very first mentoring lunch, which would have been 12/19/17. After we got back from lunch, Caryn asked me if she was allowed to appear in court on behalf of her mother-in-law related to a family property dispute. I remember citing to the Code of Conduct in the old manual, and her saying she didn't think we *had* a manual. I specifically recall telling her that Tony was working on creating one, but in the meantime we were generally going by the policies in the old CDO manual, such as they applied. I remember being in her office and showing her where it was kept in our digital library, and I *think* we even looked at the Canons of Conduct together. We definitely did *not* look at any other parts of the manual, or discuss harassment or other EEO issues in any way. I probably would have told her to ask me, Bill or Tony if she ever had any questions about policies, but I don't have a clear memory of that part.

I'm attaching a copy of the CDO manual as it was at the time for reference; Code of Conduct is up front and EEO/harassment policies are on pages 15-18. Of course, the manual doesn't reference the EEO plan at all, so this may actually be worse for me than nothing. Nevertheless, I thought I should pass it on. I'm also attaching an email chain reflecting the actual question she was asking, which doesn't mention the manual but does reflect the date (if you looked at our texts, this is the email she was referring to when she said she "hated being paranoid").

Incidentally, I do recall having a conversation with Caryn about sexual harassment in the judiciary on one point, while I was driving her home. It was casual conversation, just discussion of it in general and our takes on it. I'm pretty confident that conversation would have been different if she had been feeling any discomfort with me, but it happened a good bit before any of this —probably around March—so that probably doesn't mean much.

J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722
[attachment "Personnel Manual 9-10-15 Update - Final.pdf" deleted by Heather Beam/NCWP/04/USCOURTS] [attachment "Re_ of counsel role.pdf" deleted by Heather Beam/NCWP/04/USCOURTS]

US00001347

**From**: JP Davis [JP_Davis@fd.org]
**Sent**: 11/19/2018 8:10:26 PM
**To**: Anthony Martinez [Anthony_Martinez@fd.org]
**Subject**: Fwd: EDR Report

FYI-- the report is in, but now I'm more confused than ever. Let's touch base in the morning but all the more reason to talk to James!

Get Outlook for Android

From: heather_beam@ncwp.uscourts.gov
Sent: Monday, November 19, 7:59 PM
Subject: Re: EDR Report
To: JP Davis

Actually there are claims for both chapters but only chapter IX applies to you. Have a nice evening!!

Heather

Sent from my iPhone

On Nov 19, 2018, at 5:03 PM, JP Davis <JP_Davis@fd.org> wrote:

You too, Heather! Thanks so much for letting me know. One quick question—if I recall correctly from our interview, we are under Chapter IX wrongful conduct and not Chapter X EDR? Or did I mix that up?

**From:** Heather_Beam@ncwp.uscourts.gov <Heather_Beam@ncwp.uscourts.gov>
**Sent:** Monday, November 19, 2018 4:58 PM
**To:** JP Davis <JP_Davis@fd.org>
**Subject:** EDR Report

JP,

I have just now sent my EDR Report to Mr. Ishida. There is one outstanding item as far as Caryn's request for resolution, however I felt that could be added when she responds. I hope you have a nice Thanksgiving!

Heather Beam
Human Resources
Western District of North Carolina
704-350-7601

US00002820

**Sent:** 6/12/2019 3:05:17 PM
**To:** JP Davis

Ok JP. My tomorrow is booked solid and I'm traveling on Wednesday. I may be able to call you on Wednesday. But so there's no delay when we do speak, and to assure myself that I can respond to your questions, tell me what you plan to ask me. My concern is that I can be helpful and safeguard the process.

Many thanks,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

ca4.uscourts.gov

On Dec 3, 2018, at 9:20 PM, JP Davis <JP_Davis@fd.org> wrote:

Thanks again, James. I would still like to speak.
I do understand where you're coming from, and what you just told me is vastly more information than I have ever gotten about this process, but that just shows me there are basic structural facts that you may take for granted but are completely mysterious to me. I will not ask you to engage in speculation and I will be brief.

Get Outlook for Android

From: ᴏca4.uscourts.gov
Sent: Monday, December 3, 8:59 PM
Subject: Re: Investigation Resolution/Procedure
To: JP Davis

Dear JP,

I can appreciate your interest and sense of urgency, but I really don't know when Heather will finish the report, and it's hard to say how things will proceed because it all depends on Heather's findings and recommendations. For example, under the Chapter IX proceeding, let's say that Heather finds wrongful conduct and recommends some form of discipline. That recommendation would most likely be shared with the unit executive for his consideration.

However, let's suppose that Heather's recommendation also includes a finding questioning the unit executive's impartiality. If that's the case, then I could envision a scenario where the recommendation would instead be submitted to the chief judge for his consideration.

Part of the difficulty here, JP, is all of this is pure speculation because I don't know what the report will find and recommend. And until the report is complete, I really can't tell you much more, with any degree of certainty, what the next steps will be.

So, again, while I'm happy to talk to you, I'm afraid that there's really nothing more that I can say, with reasonable certainty, on how things will move forward. And I would prefer not getting into a discussion about

possible scenarios because that's just pure speculation, and it could open me and the process up to accusations of prejudging the case.

So, again, while I'm sympathetic, I would urge you to be patient and let the process play out. The only thing that I can offer is we'll know more once I receive the report from Heather.

Best regards,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

@ca4.uscourts.gov

On Dec 3, 2018, at 8:14 PM, JP Davis < JP_Davis@fd.org> wrote:

Thank you, James. Just knowing a little more about where things stand helps greatly. I see the wisdom in your words and would greatly prefer to have this  conversation after the supplement is finalized. If we could say that would be a matter of days and I would be informed a few days thereafter, I would much prefer to defer until then.

That said, it sounds like we don't know if it will be days or weeks before the next step, and that being the case, I do feel that I would benefit from a better understanding of the process. For example, will I hear anything once the supplement is completed, or should I expect there to be more steps that take more weeks, or months, even? Am I one of the appropriate parties you mention who will be notifies, or am I several steps down the road? Who is making the final decision and will that decision be limited to whether wrongful conduct occurred, or could it sweep more broadly, for example to Caryn's conduct or to matters that do not rise to the level of "wrongful conduct" under the Plan?

I raise all these simply to give you an idea of what I am talking about -- really just to know the basics. As much as I would prefer not to bother you with these questions, as I said above, having some understanding of where things are is a great help. Of course, if I am misunderstanding and we can expect to have the supplement and I can expect to hear something within a week, I can and absolutely would prefer to hold off.

JP

Get Outlook for Android

On Mon, Dec 3, 2018 at 7:21 PM -0500, "                    @ca4.uscourts.gov" <
                    @ca4.uscourts.gov> wrote:

Dear JP,

I'd be happy to talk to you, but let me tell you where things stand at the moment. I've asked Heather to submit a supplemental report that contains her findings and recommendations. Her initial report did not contain them.  I'm not sure when Heather will do so, but until then the proceedings are at a stand still.

So, as difficult as this must be for you and everyone involved, I'm counseling patience. We need to let the process play out and allow the investigator to complete her work. Once Heather submits her supplemental report, the path forward should be much clearer.

I don't have anything more to add. But if you still wish to talk, pls let me know. Otherwise, I will inform the appropriate parties at the appropriate time.

Thank you for your patience and understanding.

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

@ca4.uscourts.gov

On Dec 3, 2018, at 6:58 PM, JP Davis < JP_Davis@fd.org> wrote:

Hi James,

Hope you're doing well. Can we schedule a time to speak about the on-going investigation? This would be mainly to help me get a better understanding of what the procedure is at this point. It's been 4 months since Caryn made her false harassment claims, and with the facts now reported, I believe everyone now recognizes that no harassment or physical threats ever occurred. I don't want to rush anything, but as the victim of Caryn's malicious conduct, the harm to me is serious and on-going every day, not just historical. I am just hoping to get a better understanding of what to expect going forward, and what remedies I will have at the end of it.

Thanks, James. I appreciate the value of your time, and will do my best not to take too much of it.
J.P. Davis
First Assistant Federal Defender
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Phone: 704-374-0720
Fax: 704-374-0722

US00002041

## Significant Event Log

| Employee Name: JP Davis |
| --- |
| Evaluation Period: |

| Date | Event |
| --- | --- |
| 12/04/2018 around 4:15 p.m. | **Present:** Tony Martinez, William Moormann, JP Davis, Holly Dixon (notes only) |
| | |
| | Tony Martinez addressed issue with JP Davis about contacting James Ishida regarding the ongoing sexual harassment claim. Tony received an email from James Ishida regarding a "troubling email exchange with one of your attorneys, and I'd like to chat briefly about it." Tony spoke with James Ishida about this earlier today. |
| | Tony asked JP why JP talked to James Ishida about something that Tony and JP talked about in a private conversation. Tony gave JP an order that if he contacts Heather Beam or James Ishida again, then Tony will walk him out of the office. Bill pointed out that JP was the accused and now it looks like something might have happened. JP initially stated that he felt he needed counsel present, but quickly decided that he did not want counsel after further discussion. Tony repeatedly cautioned JP that he (Tony) is trying to protect JP's rights. JP expressed that he felt like the victim. Tony expressed that JP is not the victim and we do not have a final report yet. Tony expressed extreme concern that his boss (James Ishida) is uncomfortable with JP's communication with him (James). From Tony's perspective, JP expressed something to the "judge" in this case. JP clearly asked what the procedures were and what the procedures are that the court is following as far as who makes the decision in the case and who will determine the outcome. Tony expressed frustration that he has been trying to protect JP from making it worse for himself and JP is aggravating the key players in the process. |
| | Tony made clear that he did not want to talk about the Sexual Harassment investigation with JP Davis any longer. JP also made clear that if he thought he would have breached Tony's trust by talking with James, he would have never done it. He did not realize that the communication he had earlier with Tony was to remain confidential. |
| | JP asked for clarification on what he did wrong. Tony explained that he asked from the beginning for JP to let the process work itself out, let the process happen and just let go. He understands being accused is a bad spot to be in, but let the process work. Now, we are at the point where the Circuit Executive is uncomfortable with their conversation. Tony expressed several times that you cannot go to the trier of fact and speak about "legal conclusions" when there is no basis - that was an informal conversation between James and Tony. There is currently no legal conclusion to the ongoing investigation. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**From:** James Ishida ████████@ca4.uscourts.gov]
**Sent:** 1/13/2019 6:55:00 PM
**To:** Heather Beam [heather_beam@ncwp.uscourts.gov]
**CC:** Kim Llewellyn [kim_llewellyn@ca4.uscourts.gov]
**Subject:** Re: Caryn Devin's Request to Disqualify


Thanks Heather. Well said. Kim and I have a meeting tomorrow with Chief Judge Gregory at 2:00pm. It would be great to talk before then, but my day is jammed. Maybe we can try 1:30?

Thanks again Heather. What a case! But your report has been and will be invaluable in resolving the matter. Thanks again for a great job!

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517
████████@ca4.uscourts.gov

> On Jan 13, 2019, at 5:53 PM, Heather Beam <Heather_Beam@ncwp.uscourts.gov> wrote:
>
> Hey James,
>
> I truly believe Tony is biased in this case involving JP and Caryn as far as the sexual harassment is concerned. From my conversations with him I know he feels Caryn is attempting to exploit this situation to get the transfer to Asheville, however it has created a bias in him to look at this case from a neutral perspective. I also believe he lacks the experience and understanding of exactly how this process works. I am concerned he could cause more damage if he were involved in the process at this point.
>
> Caryn had requested Tony be disqualified as she felt she was retaliated against after she submitted her claim of Wrongful Conduct. Although retaliation in my investigation was unfounded, I still think in a good faith effort to resolve this the circuit should consider disqualifying him based on the contentious nature of the current situation. I would strongly recommend mediation at this point with perhaps one of the individuals we discussed the other day.
>
> I am happy to call you on this tomorrow. We can talk in the morning. My day starts pretty early so if you want to talk early just let me know what works and if not, I am more than happy to talk to Kim.
>
> Thank you again for having the confidence in me to participate in this important process. I was very happy to do it. Have a nice evening!!
>
> Heather
>
>
>
> > On Jan 13, 2019, at 1:21 PM, James Ishida < ████████@ca4.uscourts.gov> wrote:
> >
> > Dear Heather,
> >
> > Thanks again for your excellent investigation report. I just finished reading it again. I have one question that I'd like your thoughts on.
> >
> > Caryn has submitted a request to Chief Judge Gregory to disqualify Tony Martinez, apparently from participating in the EDR proceeding. Caryn explains "[t]he basis for disqualifying the Federal Defender is that he is a subject of my wrongful conduct report ... and he is named in my request for counseling under the EDR Plan."
> >
> > Given your recommendation that Tony be counseled and trained on handling workplace conduct complaints and decision making, I'd like your thoughts on whether you think Tony should be disqualified from participating in the EDR case.

US00001382

> >
> > My schedule tomorrow is terrible. But I would like to chat for a few minutes about this, so if I'm not in could you please speak to Kim?
> >
> > Many thanks. Again, great job!
> >
> > James
> >
> > James N. Ishida
> > Circuit Executive
> > U.S. Court of Appeals for the Fourth Circuit
> > 1100 East Main Street, Suite 617
> > Richmond, VA 23217-3517
> >
> > ███████████@ca4.uscourts.gov

US00001383

From:    Caryn Devins <caryn.devins@hotmail.com>
To:      "████████@ca4.uscourts.gov" <████████@ca4.uscourts.gov>
Cc:     "████████@ca4.uscourts.gov" <████████@ca4.uscourts.gov>
Date:   11/21/2018 02:05 PM
Subject:  Re: status of EDR claim

Dear James,

Thank you for your email and for your offer to meet via teleconference. I would be willing to drive to Richmond to meet with you in person, if that is considered work travel.

I have been reflecting on this situation and discussing potential next steps with my family. This situation has irreparably damaged my relationships with the Federal Defender and my colleagues, and I believe I am no longer welcome in that environment. I would appreciate the Fourth Circuit's assistance in transitioning me out of Mr. Martinez's office. I will continue to think about potential solutions and I hope to discuss them with you next week.

I appreciate your time and efforts, and I hope you have a happy Thanksgiving.

Sincerely,

Caryn

---

From: ████████@ca4.uscourts.gov <████████@ca4.uscourts.gov>
Sent: Monday, November 19, 2018 9:14 AM
To: Caryn Devins
Cc: ████████@ca4.uscourts.gov
Subject: Re: status of EDR claim

Dear Caryn,

While I'd be happy to return to Charlotte to meet with you again, I don't have any time between now and the expiration of the counseling period on November 29. I've got two work trips planned between now and then, and we do have the Thanksgiving holiday, which I had planned to spend in New York. Finally, I still haven't received the investigatory report, but I do expect it any day now.

So let me suggest this. If you'd still like to meet, we can set up a conference telephone or Skype call for November 27-28. I'll be in Richmond, and I would have had the chance to study the report. To make the call fruitful, I'll again suggest that you consider specifically what it is that you want. For example, reiterating that you want a safe workplace free from harassment isn't helpful because Mr. Martinez already believes that he's done and is doing all he can to provide such a workplace for you.

Please let me know how you'd like to proceed.

Best regards,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

█████████ ca4.uscourts.gov

On Nov 16, 2018, at 11:31 AM, Caryn Devins <caryn.devins@hotmail.com> wrote:

Dear James,

I agree that we should meet in person to discuss these issues. What is your availability?

Respectfully,

Caryn

---

**From:** █████████@ca4.uscourts.gov <█████████@ca4.uscourts.gov>
**Sent:** Wednesday, November 14, 2018 4:01 PM
**To:** Caryn Devins
**Cc:** █████@ca4.uscourts.gov; █████████@ca4.uscourts.gov
**Subject:** Re: status of EDR claim

Dear Caryn,

This is probably a better discussion in person rather than by email. Suffice it to say, I am aware that Mr Martinez has allowed you to telework, removed you from the chain of command so that you have no reporting obligations with the person in question, and taken other steps to avoid contact with the accused. I'm also aware that Mr Martinez attempted to accommodate your relocation to Asheville, but I understand that there literally is no space in that office. So, as I understand, there have been a number of measures that have been taken to ensure your safety.

But again if you still feel that you are not in a safe environment, then we need to know that and precisely what you would like to see to feel safe so that we can present that to Mr Martinez for consideration.

As for your career advancement, Heather has been tasked with investigating your allegations that your rights were violated by alleged discriminatory actions by the FPD Office. But in order to help facilitate a possible settlement, it would be helpful to understand what career advancements you feel that you're entitled to but were denied.

Finally, I am the counselor in the Chapter X proceeding, as specified in the Circuit's EDR Plan. Ms Beam's investigatory report will be submitted to me. My intent going forward, and the purpose of the counseling phase, is "to assist the employee in achieving an early resolution of the matter, if possible." However, in order to facilitate a possible settlement, I need to know what you specifically want and hope to gain from this process.

I expect to receive the investigatory report sometime this week. I will be studying Heather's findings and recommendations and will be considering them and appropriate next steps, including distribution of the report.

US00001636

Pls let me know if you have any other questions.

Best regards,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

████████████ ca4.uscourts.gov

On Nov 13, 2018, at 1:55 PM, Caryn Devins <caryn.devins@hotmail.com> wrote:

Dear James,

Thank you for clarifying the current conditions for counseling under Chapter X and that Ms. Heather Beam's investigation is serving as a joint investigation for Chapters IX and X.

To help me better understand your positions, can you identify the steps taken by the Federal Defender to protect me from further harassment and to ensure my safety in the office as they have been described to you? I am only familiar with his rejection of a transfer from the First Assistant's duty station and his asserted authority to require me to return to that work environment at the impending conclusion of the Chapter IX process. Similarly, can you identify the steps taken by the Federal Defender to address my concerns about career advancement? I am familiar with the administrative reclassification of my job title with no consideration for a raise in total salary or formal progression of duties, the elimination of my locality adjustment, and the failure to interview me for a newly created "Appellate" AFD position that I was discouraged from applying for, among other events described in my official grievance. Without more information regarding the steps taken by the Federal Defender since our last conversations, can you understand why I do not view these measures as an attempt at resolution, but instead as evidence of actionable retaliation by the Federal Defender and support for my disqualification request? In this context, can you tell me how to renew the consideration of my disqualification request prior to the end of the counseling period?

Can you also inform me of which individuals will receive the Chapter IX investigator's factual report, including who will receive the report for the purpose of making recommendations based on its content? Similarly, who will make final decisions based on that individual's recommendations and how will I be informed of those decisions? Finally, can you please clarify and confirm that you, not Heather, are the counselor for purposes of Chapter X?

Thank You,

Caryn

**From:** ████████ @ca4.uscourts.gov < ████████ @ca4.uscourts.gov>
**Sent:** Monday, November 12, 2018 9:01 PM
**To:** Caryn Devins
**Cc:** ████ @ca4.uscourts.gov; ████████ @ca4.uscourts.gov
**Subject:** Re: status of EDR claim

Dear Caryn,

Thank you for your message. Let me address the issues you raise separately.

US00001637

First, you are correct in that the two proceedings — the Complaint for Wrongful Conduct under Chapter IX and Request for Counseling under Chapter X — are separate proceedings. The link between the two is the investigation that is being conducted by Heather Beam. Because both proceedings share essentially the same set of facts, I ordered a joint investigation for both. But you are correct, the Chapter IX report of wrongful conduct and Chapter X request for counseling are two separate, distinct proceedings.

Second, you are correct in that the counseling period ends on November 29. Since we had agreed earlier to an extension of the counseling period, this is the last extension that can be granted. In other words, counseling ends on November 29.

Third, I think you've correctly identified the difficulties in resolving this matter. As we'd discussed earlier, I had asked that you articulate precisely what it is that you're looking for in terms of your numbers 1 and 2 below. As you know, Tony Martinez has taken numerous steps to protect your safety in the office. He has also proposed a number of career moves that he had hoped would address your concerns about career advancements. But he's also not sure what other things you have in mind, and he's also not sure if you still have safety concerns. So that's why I had encouraged you to think about what is it that you want and to identify what things are still deficient because we need those to have further discussions with Mr Martinez.

So, for example, you had asked for "the ability to work in an environment free of harassment and retaliation[.]" Mr Martinez has implemented a number of safety measures designed to protect you from further harassment. There have been discussions between you and Mr Martinez, which have been helpful and productive, but there still seems to be lingering issues. And I'm not sure Mr Martinez is aware of them. So unless he and I know specifically your concerns about the current work environment, we're not in a position to help address the deficiencies.

So, again, Caryn I would encourage you to think about and let me know what is it that you want and what are your present concerns with the current workplace so that I can present them to Mr Martinez for his response.

The counseling period is coming to an end. I'm more than happy to raise your concerns with Mr Martinez, but I do need to know what you want so that I can present them to him to start the discussion.

I'll be in South Carolina this week attending several Fourth Circuit conferences, but I can make myself available if you have any questions.

Many thanks,

James

James N. Ishida
Circuit Executive
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 617
Richmond, VA 23217-3517

▮▮▮▮▮▮▮▮▮▮▮ ca4.uscourts.gov

On Nov 12, 2018, at 5:18 PM, Caryn Devins <caryn.devins@hotmail.com> wrote:

Dear James,

I have questions about the status of my request for counseling under Chapter X. At this point, my request for counseling under Chapter X appears to be temporally and procedurally linked to the ongoing wrongful conduct investigation under Chapter IX, but I believed that those were separate proceedings under the EDR Plan? My concern is that it seems possible, if not likely, that the

counseling period will expire before the wrongful conduct investigation and subsequent actions on Heather's factual report are concluded and shared with me? Stated differently, have we been unable to pursue a resolution of this matter at the most informal level available because the wrongful conduct investigation under Chapter IX is now serving as precondition to counseling under Chapter X?

Under these circumstances, what is the status of counseling? My understanding is that the counseling period ends on November 29. In my request for counseling, I identified the following remedies: (1) the ability to work in an environment free of harassment and retaliation and (2) professional advancement based on merit. I have put pen to paper too many times to count since our last meeting, but I am unable to come up with a proposed solution on my own that would achieve these goals. The problem I keep encountering is, how can these remedies be achieved without action by others, outside of my control? In other words, if I initiate the formulation of the ultimate remedy about how I can do my job, safely and effectively, as a precondition to counseling, then this dilemma seems inextricably linked to my request for disqualification. Put simply, I do not see how I can negotiate a remedy with an individual who retaliated against me for raising concerns of sexual harassment?

Thank you for considering these questions.

Best regards,
Caryn