# Exhibit 45

In the Matter of:

# Caryn Devins Strickland

*vs*

# United States, et al.

Deposition of:

# JILL LANGLEY

# April 27, 2023



1  occurred to me.  I mean, it's impossible to -- the

2  defending party in any complaint process has a bias.

3  They are just like the complainant has a bias, the

4  defending party has a bias.

5            So it just never occurred to me to apply

6  it to anyone other than who I identified in A, which

7  is the EDR coordinator, mediator, and presiding

8  judicial officer.  That's Jill Langley's

9  understanding of what that section means.

10           If somebody wants to interpret it

11 differently, they are entirely free to; but what I

12 wrote in my paragraph 8 is how I have always read and

13 understood that disqualification provision.

14      Q    Do you think that someone could interpret

15 it differently based on the language of the

16 provision?

17           MS. McMAHON:  Objection.  It calls for

18 speculation.

19           THE WITNESS:  I've been an attorney long

20 enough to know that any two human beings could

21 interpret anything different ways than I do.

22           BY MS. WARREN:

ICR/Rudiger & Green
office@icrdepos.com    www.icrdepos.com    (703) 331-0212
Case 1:20-cv-00066-WGY   Document 249-2   Filed 06/15/23   Page 3 of 6

1  mediation stage and that she had waited months and
2  had not heard back.
3     Q     How did you respond to that?
4     A     What I remember telling her was that I
5  didn't understand the concept at all of disqualifying
6  the party from representing itself.
7           And so I do -- I don't know what I said
8  to her about the delay in getting an answer back but
9  I remember -- and am seeing in my notes -- thinking
10 that it would surprise me if disqualifying the
11 defendant from being the defendant would be granted.
12    Q     Did you talk with Caryn about remedies at
13 the complaint stage?
14    A     I don't remember.
15          The only question -- the only topic that
16 I remember coming up late in our meeting was her
17 asking what would happen if the defender, like if the
18 presiding judicial officer at the end of the
19 complaint stage -- because that's when remedies
20 happen, after there has been a decision on the
21 merits -- what would happen if the defender refused
22 to comply with the orders.

ICR/Rudiger & Green
office@icrdepos.com    www.icrdepos.com    (703) 331-0212
Case 1:20-cv-00066-WGY   Document 249-2   Filed 06/15/23   Page 4 of 6

1   A   Yes.

2   Q   You then said, "I've trained EDR

3 coordinators in the 10th Circuit, but I think that

4 needs to be nationalized."

5        Why did you think that?

6   A   For the same reasons I just said.

7   Q   "And I'd like to better understand if

8 FPDs are adequately protected by EDR remedies."

9        MS. McMAHON:  Objection.

10       MS. YOUNG:  Objection.  Form.

11       THE WITNESS:  What is your question?  I'm

12 sorry.

13       BY MS. WARREN:

14  Q   What did you mean by that?

15  A   That was Caryn had asked me what would

16 happen if the defender didn't comply with the

17 presiding judicial officer's remedies at the end of

18 the complaint stage; and I did not at that time know

19 enough about the appointment, reappointment, and

20 removal of defenders to know what would happen.  They

21 are different than the unit executive in the court

22 which is clearly governed by, supervised by, and

ICR/Rudiger & Green
office@icrdepos.com   www.icrdepos.com   (703) 331-0212
Case 1:20-cv-00066-WGY   Document 249-2   Filed 06/15/23   Page 5 of 6

1  works at the pleasure of the chief judge and the
2  judges on that court.
3          And so I just didn't know the answer to
4  that particular question, and I had said I wanted to
5  find that out.
6      Q    Did you ever tell Caryn the answer to
7  that question?
8      A    I don't think I did.  No.
9      Q    Has your office -- did the Office of
10 Judicial Integrity provide EDR interpretive
11 guidelines to courts?
12     A    Yes.
13     Q    Did they provide national training to EDR
14 coordinators?
15     A    Yes.
16     Q    You were part of a 2018 working group.
17     A    I was.
18     Q    Why was that working group convened?
19     A    It was in response to the recommendations
20 in the June 2018 workplace conduct working group.
21     Q    Sorry.  The working --
22     A    The workplace conduct working group

ICR/Rudiger & Green
office@icrdepos.com    www.icrdepos.com    (703) 331-0212
Case 1:20-cv-00066-WGY   Document 249-2   Filed 06/15/23   Page 6 of 6