# Exhibit 64



# Transcript of Nancy Dunham

**Date:** April 17, 2023
**Case:** Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

```
 1    FOR THE WESTERN DISTRICT OF NORTH CAROLINA
 2                ASHEVILLE DIVISION
 3   --------------------------X
 4   CARYN DEVINS STRICKLAND,   :
 5              Plaintiff,  :
 6      v.                      : Case No.
 7   UNITED STATES OF AMERICA, : 1:20CV66
 8   et al.,                     :
 9              Defendants.:
10   --------------------------X
11
12           Deposition of NANCY DUNHAM
13              Conducted Virtually
14             Monday, April 17, 2023
15                2:08 p.m. EST
16
17
18
19
20
21
22
23   Job No.: 488113
24   Pages: 1 - 202
25   Reported by: Marney Alena Mederos, RPR, CRR
```

1  or before discuss her move from be- -- from being
2  a research and writing attorney to being an
3  Assistant federal defender?
4       A    It sounds familiar, but I cannot -- I
5  cannot remember exactly a conversation like that.
6       Q    Do you remember in this conversation on
7  August 3rd discussing -- appointing some sort of
8  fact-finder to investigate her claims?
9       A    Well, I would not have had the
10 authority to appoint a fact-finder.  I think
11 the -- the judiciary process would have started
12 with counseling, and the counselor could have done
13 some informal fact-finding.  I do remember that
14 happening at some point.
15           MS. McMAHON:  Sophia, if you'll scroll
16 down to the bottom of page 1.
17           AV TECHNICIAN:  (Technician complies.)
18 BY MS. McMAHON:
19      Q    It says in the last bullet, she told
20 Lee Ann very credible - we can't do everything
21 without fact-finder.
22      A    True.
23      Q    What did you mean by that?
24      A    Well, I'm assuming what I meant, and it
25 would have made sense in this situation, is we

1  Caryn had had formal -- informal resolution
2  discussions which could be negatively impacted by
3  a formal investigation.
4           Why do you think that?
5       A    I don't remember exactly why.  As I
6  mentioned, sometimes when things get into a formal
7  complaint mode, people's positions harden, and
8  this was all very delicate at the moment, because
9  Caryn was uncomfortable, Caryn was having
10 conversations of her own in terms of trying to
11 settle the matter, and that we had OGC involved,
12 my office involved, Cait Clarke involved, to try
13 to resolve the matter, and it -- you know, it --
14 it was delicate.
15      Q    And you write here, "I asked (did not
16 direct) her to hold off investigating until I got
17 more information."
18      A    Right.  And I -- I honestly cannot
19 remember saying that, but that -- but if I did, I
20 think all I would have been saying -- I never
21 would have directed a judiciary employee about
22 anything, because I would not have had the
23 authority to do that.
24           I assume from this language that we
25 might have been close to resolving this so that,

1  Q    -- where I think you said you discussed
2  all of these issues, what was said during that
3  conversation?
4  A    Well, again, I believe that we informed
5  Heather that the matter she had talked about with
6  Amaal was also something that had been brought to
7  my attention by the employee and that I was
8  working with AO managers and others on how to
9  assist in the case.
10 Q    And was there anything threatening
11 about the call?
12 A    I didn't think there was.
13 Q    Did you or Amaal give any directives to
14 Heather Beam?
15 A    Never, and we had no authority to give
16 directives to a judiciary employee.
17 Q    Did you give any ultimatums to Heather
18 Beam?
19 A    I did not, nor did I hear Amaal do any
20 such thing.
21 Q    Was there anything out of the ordinary
22 about that call?
23 A    I don't believe so.
24 Q    Thank you.
25      And did you ever talk to Tony Martinez