# Exhibit 66

```
 1            IN THE UNITED STATES DISTRICT COURT

 2         FOR THE WESTERN DISTRICT OF NORTH CAROLINA

 3                     ASHEVILLE DIVISION

 4  _____

 5  CARYN DEVINS STRICKLAND,      )

 6            Plaintiff,          )

 7                                )

 8  -vs-                          )   Case No. 1:20-cv-00066

 9                                )

10  UNITED STATES, et al.,        )

11            Defendants.         )

12  _____

13

14                  *** CONFIDENTIAL ***

15            SUBJECT TO PROTECTIVE ORDER

16                    ECF NO. 183

17

18     DEPOSITION OF THE HONORABLE ROGER L. GREGORY

19              10:02 a.m. to 10:54 a.m.

20                    May 16, 2023

21                  Richmond, Virginia

22

23

24  Job No. 49825

25         REPORTED BY:  Julia A. Bammel, RPR, CSR
```

Case 1:20-cv-00066-WGY  Document 249-23  Filed 06/15/23  Page 2 of 7

www.cavalier-reporting.com | Cavalier Reporting & Videography | info@cavalier-reporting.com
(434) 293-3300 | Reported by Julia A Bammel | (800) 972-1993

```
 1   for disqualification dated February 24th, 2019?
 2        A     Yes.
 3        Q     Did you ever provide a decision to the
 4   plaintiff with that ruling?
 5        A     A decision?  The decision, yes, to deny it.
 6        Q     How was that communicated to --
 7        A     Through James Ishida, to him for
 8   Ms. Strickland.
 9        Q     Were there any written orders memorializing
10   your decision regarding disqualification?
11        A     No.
12        Q     Why did you not issue a written order regarding
13   your decision?
14        A     It wasn't necessary, nor required.
15        Q     All right.  What were your --
16        A     In particular, the confidential was, as I
17   recall, paramount to counsel, so the less you have, the
18   better there.
19        Q     Okay.  So it was confidential --
20        A     Confidentiality.  You know, he told her that he
21   was under strict confidentiality.  So was I.  So that's why
22   I said, it was not required or necessary.
23        Q     All right.  What were your reasons for denying
24   Plaintiff's disqualification request?
25        A     Huh.  Well, that's a long answer, I suppose.
```

Case 1:20-cv-00066-WGY   Document 249-23   Filed 06/15/23   Page 3 of 7
www.cavalier-reporting.com — Cavalier Reporting & Videography — info@cavalier-reporting.com
(434) 293-3300 — Reported by Julia A Bammel — (800) 972-1993

1  There are several.  First of all, the EDR plan says clearly
2  that the employee shall -- mandatory language -- shall put
3  forth all facts in support of the disqualification.  So the
4  short answer is that there were no facts submitted or
5  proffered that would warrant disqualification of Tony
6  Martinez.
7           And it was -- I had to take this as a universal
8  disqualification since it didn't say which area of it.  So
9  I took it by pieces.  There's the EDR, and then there's the
10 counseling, then, if necessary, a full hearing, and, if
11 necessary, an actual review by the Judicial Counsel.
12          It seemed to me that the only grounds that was
13 stated in the letter was the fact that he is a violator or
14 somebody who's -- I'm accusing of something, but that
15 almost is always the case because the appointing
16 authority -- there wouldn't be a dispute if they didn't
17 disagree with something; otherwise, they wouldn't be there.
18          So that's garden-variety, and that person --
19 that party is never neutral because they're defending,
20 obviously, the unit or the appointing authority in it, so
21 that's not enough.  So I saw nothing in terms of -- of
22 course, first was the question of whether or not he handled
23 the EDR.  He did not.  James Ishida was handling the EDR.
24          Would he be dealing with counseling?  He would
25 not be.  The counseling -- "he," meaning Tony Martinez,

1  would not be.  If it went to mediation, he would not be
2  handling the mediation.
3              Another question about, "Well, I don't want him
4  investigating," well, I had my own investigation
5  independent of him.  He wasn't the investigator.  He would
6  be a witness.
7              So all of those reasons.  To disqualify the
8  appointing authority is an unusual -- or rare.  Yes, I
9  understood I had the authority to disqualify him.  No
10 question about that.  I do.  But in looking at it, you look
11 at the whole context of it.
12             And based on her letter -- I'm sorry --
13 Ms. Strickland's letter on September 10, in terms of saying
14 what her grievance was, it's clearly -- in the documents,
15 it clearly said that she and Mr. Martinez were engaged in
16 negotiating at that point.  Not that she agreed with that,
17 no meeting of the minds, but they were.
18             So there was no allegation that he was
19 stonewalling, would not meet with her, would not negotiate.
20 There was nothing that he would be a mediator, nothing that
21 he would have any fact-finding or be involved in the
22 investigation or those things.  Those are the kinds of
23 things you would look for if there was a situation.  None
24 of them were there.
25             That's why, based on what -- as was required,

Case 1:20-cv-00066-WGY  Document 249-23  Filed 06/15/23  Page 5 of 7
www.cavalier-reporting.com — Cavalier Reporting & Videography — info@cavalier-reporting.com
(434) 293-3300 — Reported by Julia A Bammel — (800) 972-1993

```
 1   you shall put forth the facts, because that's what I'm
 2   looking at.  I'm not making a merit decision.  I'm looking
 3   at the facts you proffered, and the proffered facts did not
 4   justify disqualification.
 5       Q    All right.  Have you ever been presented a
 6   disqualification request before in EDR?
 7       A    Have I?  No, I have not.
 8       Q    Is there -- and, again, I know this can be
 9   somewhat repetitive.  Is there anything else you'd like to
10   add regarding the basis for your decision?
11       A    Well, of course, I gave you the interrogatory
12   in this case, so to the extent I have excluded something
13   there, I would incorporate it by reference as well.  But
14   it's -- at this point, I think that seems to be most of it
15   in terms of -- because the facts were so -- presented were
16   very few, and it basically all dealt with the fact that
17   he's a violator, and, therefore -- and another thing too.
18            It suggested, I think -- suggested that "I
19   don't want to be made to sit down and negotiate with him,"
20   but the rules clearly say you don't have to do any
21   face-to-face counseling.  It's and/or.  You don't have to
22   meet with anyone in terms of what -- face someone.  It
23   could be meeting -- a counselor can meet with, and together
24   or separately.
25            So even those things -- so I saw nothing -- I
```

Case 1:20-cv-00066-WGY  Document 249-23  Filed 06/15/23  Page 6 of 7
www.cavalier-reporting.com — Cavalier Reporting & Videography — info@cavalier-reporting.com
(434) 293-3300 — Reported by Julia A Bammel — (800) 972-1993

```
 1  probably shouldn't say nothing, but I saw nothing that
 2  warranted disqualification.
 3       Q    Okay.  And just to clarify on that point, you
 4  would agree that counseling and mediation were required
 5  phases of EDR at that time?
 6       A    Were required?  No.  I don't think it was
 7  necessarily required.  No.  You could -- you could be
 8  finished with EDR, and you could go straight -- you know,
 9  it's EDR.  I mean, EDR counseling could be the end of it
10  and never get to mediation.
11       Q    So you could -- if you were a complainant, you
12  could skip counseling and mediation and just go straight to
13  a final hearing?
14       A    No.  No.  No.  I'm not saying that.  No.
15       Q    All right.  And so as far as -- just to clarify
16  what you were just talking about, you made it more in the
17  sense of like communications could occur over phone in
18  order to perform counseling or mediation.  They wouldn't
19  necessarily have -- the parties wouldn't necessarily have
20  to be in the same room?
21       A    They wouldn't have to be on the phone at the
22  same time either.  You talk to one side, what they want,
23  and I think -- it seemed like they were -- was engaged in
24  that, by her letter, already.  Not that they came to a
25  meeting of minds.  That's why we had -- the actual EDR was
```

Case 1:20-cv-00066-WGY   Document 249-23   Filed 06/15/23   Page 7 of 7  
www.cavalier-reporting.com  
(434) 293-3300  
Cavalier Reporting & Videography  
Reported by Julia A Bammel  
info@cavalier-reporting.com  
(800) 972-1993