# EXHIBIT DD



# Transcript of 190226_1153

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7                              CONVERSATION

8                            "190226_1153"

9       IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10                          AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20   Job No.: 479402

21   Pages: 1 - 118

22   Transcribed by: Christian Naaden

US00008471

Transcript of 190226_1153

```
 1              MR. STRICKLAND:  That investigation took
 2    months and so did the recommendations to get. James has
 3    it, presumably Chief Judge Gregory has it too. Chief
 4    Judge Gregory ultimately makes the decision about Tony,
 5    I would assume that nothing is going to be done.
 6              They have the information.
 7              MR. SMITH:  If they -- I'm not aware of that
 8    [inaudible].
 9              MS. STRICKLAND:  Well, yeah, and from -- and I
10    think, you know, from our perspective, from my
11    perspective dealing with this, I have to assume that
12    you know, I have to assume that everything else is
13    going to be equal and that, you know.
14              MR. SMITH:  Well, keep in mind what I told you
15    when I first came in here and I'm just speculating as
16    to why.
17    It would be impossible to settle this and make you
18    happy if that report recommends JP or Tony be
19    terminated, because they would have to fight tooth and
20    nail that recommendation and there's no way they'd
21    settle with you or Tony would settle with you.
22    So I hear what you're saying --
```

US00008507

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

```
1            MS. STRICKLAND:  But Tony doesn't know --
2            MR. STRICKLAND:  There's no -- there's no
3    appeal, right, from Chapter 9. We have been repeatedly
4    told that there's no fighting. Once the report's done,
5    it's about how you implement it and it's --
6            MR. SMITH:  They don't have an opportunity to
7    contest the finding?
8            MR. STRICKLAND:  We were told that by the
9    investigator over and over again.
10           MR. SMITH:  Really?
11           MR. STRICKLAND:  That there's no appeal,
12   right? I mean, there's nothing in the EDR plan that
13   even says that there's the ability to do that.
14           MS. STRICKLAND:  Well, and the truth is, and
15   this is me. Well --
16           MR. SMITH:  You may be right, I just assumed
17   like the EDR, I mean, you go to a hearing. If you're
18   not happy there, it goes to the [inaudible] counsel.
19           MS. STRICKLAND:  Right. It's -- yeah.
20           MR. SMITH:  I just assumed there was some
21   opportunity for review.
22           MS. STRICKLAND:  It doesn't -- seem -- appear
```

Case 1:20-cv-00066-WGY   Document 250-11   Filed 06/15/23   Page 5 of 21

US00008508

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

Transcript of 190226_1153

```
 1   to work that way, but I -- but and again, this is me

 2   being cynical, but I think I have good reasons to be.

 3   I -- I think that the chances that -- I just think the

 4   process is so skewed that no matter what facts I

 5   presented, I think it's extremely unlikely that any of

 6   that would result in anything, because the -- the

 7   system just isn't set up that way.

 8           And you know, I've never heard of there ever

 9   being a situation like this where action was actually

10   taken based on somebody's claims.

11           MR. SMITH:  Really?

12           MR. STRICKLAND:  We were told, by the same

13   person that told us that, you know, if you don't do a

14   more substantive narrative about what happened

15   [inaudible] this is a person that was an EDR

16   coordinator for 15 years over a circuit and all the

17   districts within it.

18           Said that in 15 years, she had never seen a

19   claim substantiated.

20           MS. STRICKLAND:  Never. Not once.

21           MR. SMITH:  I thought --

22           MR. STRICKLAND:  So this is when -- this is
```

Case 1:20-cv-00066-WGY   Document 250-11   Filed 06/15/23   Page 6 of 21

US00008509

Transcript of 190226_1153

1  when you start really thinking like, what? Is this

2  real?

3          MS. STRICKLAND:  Well, it almost seems like --

4  and I know there were people who testified to Congress

5  making this same point that in a lot of ways, the

6  process is set up more to bury claims and to absolve

7  the office of liability than it is to actually engage

8  in a [inaudible].

9          MR. STRICKLAND:  The investigator we got did

10  not know the legal definitions of harassment,

11  retaliation, anything like that, so she was

12  uncomfortable making recommendations and would not do

13  it. That she was, quote, not an attorney.

14          I mean, I'm not trying to be offensive to her,

15  but one of her roles in the western district of North

16  Carolina is to make the ID badges.

17          MR. SMITH:  What is her background?

18          MR. STRICKLAND:  She's an HR person, but not -

19  - not one trained in kind of ferreting out these

20  issues.

21          MS. STRICKLAND:  Right.

22          MR. SMITH:  Well, that's somewhat -- EDRs are

US00008510

Transcript of 190226_1153

1  problematic, because you can't go to different caselaw.

2  There's -- there's --

3          MR. STRICKLAND:  Well, the definitions of

4  Title VII should be applied.

5          MR. SMITH:  They should, but you can't go --

6  because it's all confidential, you can't go try to find

7  a similar fact pattern in [inaudible].

8          MS. STRICKLAND:  Right, what was done.

9          MR. SMITH:  -- any clue about what -- what

10  somebody may do.

11          MS. STRICKLAND:  Right.

12          MR. SMITH:  And it's problematic. Everybody --

13  I think everybody understands the -- the -- you lose a

14  few rights when you become a federal employee. There's

15  some nice perks, but you lose some -- some rights.

16          But again, you know, and I'm just trying to

17  figure out what you want to do, Caryn. I've always --

18  I'm supposed to be a neutral here, but you know, I do

19  EDRs. I consider myself an advocate for the employee.

20          Unless I get in and I say, look, you don't

21  have anything here, and I thought that, I'd tell you.

22  You obviously -- what happened shouldn't have happened,

US00008511

1    in my opinion, for what it's worth.

2            And Tony's, I think, responding. I might -- I

3    think I can work something into your favor, but we've

4    got to figure out if that's what you want. And we've

5    got to -- you know, we're running up on the deadline

6    for mediation. March 2.

7            We can extend that, it's not an issue. I just

8    need your consent. I've already talked to James,

9    because I've already alerted James that I didn't think,

10   even with the 30 day extension, we'd be able to resolve

11   it, because the -- the agreement, it's not going to be

12   a two page agreement if we get there.

13           MS. STRICKLAND:  Mm-hmm.

14           MR. SMITH:  It's got to be pretty detailed.

15   And he said that Judge Gregory would have the authority

16   to extend it as necessary to allow us to do that. I

17   just throw that at you. So we have time, just so you

18   know that.

19           And if you want to explore other things and

20   just give up on -- let's just say you want to not go

21   back to the office right now. You want to explore other

22   things. I still think you ought to extend the

US00008512

Transcript of 190226_1153

1  mediation, because otherwise you've got to file your

2  complaint within 10 days, 20 days?

3          MS. STRICKLAND:  Right, it's something quick,

4  yeah.

5          MR. SMITH:  I can't remember what it is. And

6  why be bothered with all that work if that's not going

7  to get you what you want at the end of the day either?

8          MS. STRICKLAND:  When you -- I mean, when you

9  say it's not going to get me what I want, I understand

10  the piece about accountability and all that, because

11  that just seems to be not built into this process.

12          That's another thing she told us is she said

13  that to the extent that I've been told that, that's

14  completely wrong.

15          MR. STRICKLAND:  Fundamentally wrong.

16          MS. STRICKLAND:  She said -- she was shocked

17  that I've been told that. She said if you want JP to be

18  fired, just ask for it. If you want Tony to be fired,

19  just ask for it. That's what she --

20          MR. SMITH:  In the EDR?

21          MS. STRICKLAND:  Yeah. For what it's worth,

22  that's what she said, and she thought we were crazy for

US00008513

Transcript of 190226_1153

```
 1   saying --
 2          MR. SMITH:  [inaudible] the EDR in the
 3   remedies and that's not in there.
 4          MS. STRICKLAND:  That's what we said. That's
 5   what we said and she --
 6          MR. SMITH:  And that's what I come back to,
 7   Caryn. If you file your complaint, but the remedy is
 8   that it specifically allows you, I mean, what are you
 9   going to ask for that -- that I might not be able to
10   get you through a settlement agreement?
11          And I don't know of any. Well, telecommuting
12   would be the only one that I -- that a full time
13   telecommute. I don't know that I could ever get Tony to
14   agree to that.
15   I think I could get him to agree to a phasing in, which
16   works if you've got some idea that Virginia might work
17   out sooner rather than later. But that's why I say I
18   think it's probably in your best interest, let's push
19   the time back for mediation, let you talk to Virginia.
20          Let me make some inquiries about other jobs
21   and attack this on all fronts. I would recommend while
22   doing that, that we try to get down to the details of
```

US00008514

Transcript of 190226_1153

1   an agreement.

2         MS. STRICKLAND:  Mm-hmm.

3         MR. SMITH:  If that's still a possibility,

4   because we need to be making progress.

5         MS. STRICKLAND:  Mm-hmm.

6         MR. SMITH:  And I think that meeting with Tony

7   would be good, because first thing you've got to get by

8   is can I put this behind me? And that's going to answer

9   that question for you, I think.

10         If you -- if you meet him, you sit down and

11   you talk to him and maybe you'll go, wow, he gets it

12   now, I'm willing to try to resolve it. You may get the

13   feeling you have right now, he still doesn't get it and

14   I don't want to pursue this anymore.

15         I want to see where I can go or just go to a

16   hearing. So I think it progresses the ball and gives

17   you something.

18         MR. STRICKLAND:  Why do you say that it would

19   not be possible to get the things that she's asked for

20   through the hearing process? I mean, just the -- the

21   more obvious ones like telework and immediate appeals?

22         Because if I -- if I were a hearing officer

US00008515

1    and I heard Tony come in and say, I'll just promise you

2    he won't show up in Ashville anymore and I promise you

3    even though I'm going to make you do trial work, JP

4    won't do anything to you, because even though he's

5    still first assistant and over all of that, I just -- I

6    don't think that's going to -- nobody's going to buy

7    that.

8           MR. SMITH:  Well, what I mean by that --

9           MR. STRICKLAND:  Is it because they won't

10   micromanage the office?

11          MR. SMITH:  Well, partly. One, what I'm mainly

12   talking about is you're not going go get what you want,

13   a lot of what you want is the backtalk and the optics

14   of the whole thing to go away and that's not going to

15   happen.

16          I think that goes away more likely if you have

17   a settlement agreement, because to me that vindicates

18   you, that Tony had to sit down and resolve this because

19   you were wronged.

20          That's mainly what I'm talking about, but to

21   get back to your other thing, it's like telecommuting.

22   If you go look at the telecommuting police of the

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

1  Fourth Circuit, it's the unit head's decision and it

2  can be revoked at any time.

3        There is no right and that's specifically in

4  the policy, there is no right of an employee to

5  telecommute and if Tony doesn't re-up and somebody else

6  comes in, I mean, first thing they could do is tear it

7  up.

8        Therefore I think in drafting a settlement

9  agreement that binds Tony, you have the better ability

10 to work these things in there, because I don't think

11 the judge is going to micromanage this office and tell

12 a federal defender how to do his job and run his

13 office.

14       They'd be better off terminating him. They

15 would -- to me, terminate him first.

16       MS. STRICKLAND:  Mm-hmm.

17       MR. SMITH:  But that's not something, the way

18 I read the EDR, and I'm not giving any legal advice,

19 that would allow you to put in a [inaudible] for relief

20 that JP or Tony be terminated.

21       MS. STRICKLAND:  Right.

22       MR. SMITH:  I think you all read it the way I

Transcript of 190226_1153

1    read it.

2         MR. STRICKLAND:  These seem like problems that

3    would exist in any EDR situation.

4         MR. SMITH:  They do.

5         MR. STRICKLAND:  Where you have a unit

6    executive. So what's the point of having a hearing

7    officer?

8         MS. STRICKLAND:  Part of it -- yeah, I mean,

9    part of my feeling is that this all seems like a sham.

10   Like why am I even doing this?

11        MR. STRICKLAND:  It's a kangaroo court.

12        MS. STRICKLAND:  When there's no -- I mean,

13   and there's no outside review of this. There's no

14   possibility that I can sue. I mean, it's just -- I just

15   have to -- and that's part of my feeling of like, you

16   know, he's going to have to do a lot to show me.

17        It's not going to just be enough, well, I

18   guess we can find you -- we can give you the intern's

19   desk. It's an attitude. I mean, it's -- you know.

20        MR. SMITH:  Well, no, he's not giving you the

21   intern's desk, but we don't need to talk about that

22   right now, but --

Transcript of 190226_1153

1          MS. STRICKLAND:  But you get my point and it's
2    like --
3          MR. SMITH:  No, you're expressing my
4    frustration as a mediator who's told to come in here
5    and mediate EDRs.
6          MR. STRICKLAND:  You're in an awful situation.
7          MR. SMITH:  I have talked to people in
8    Washington about my frustration with this whole
9    process. Not in terms of what this specific one is.
10   I've had other issues, which we don't need to get in
11   to, [inaudible] things and what not that I'm just
12   totally frustrated.
13         That because I'm in here working for an
14   employee and sometimes confidentially, in this room, I
15   feel exactly what you just said. I can't do anything.
16   You know? I think I can with you, but I can't give you
17   what you want, which is comfort with Tony.
18         That's just the problem if he stays.
19         MS. STRICKLAND:  Mm-hmm.
20         MR. SMITH:  And I wish I could answer the
21   question whether he's going to stay or not and I can't.
22   I just don't know.

US00008519

Transcript of 190226_1153

1      MR. STRICKLAND:  See, we believe that Tony is

2   well aware of this dynamic, that he won't get

3   micromanaged and this is the cynical part of me. He can

4   throw out Ashville, whatever he wants to, he knows that

5   all he needs to kind of do is have the appearance of

6   doing something.

7      But he will never get micromanaged. I mean,

8   what do you -- what happens if you get down the road

9   just a little bit in time and they do the work

10  measurement study and it's not lucky like your office,

11  it requires a cut.

12      Well, why not cut Caryn?

13      MR. SMITH:  Well --

14      MS. STRICKLAND:  Especially if I'm doing

15  research and writing work.

16      MR. SMITH:  There's only one reason not to cut

17  and it could be viewed as retaliation.

18      MR. STRICKLAND:  Yeah, but [inaudible] back

19  right in here and he'll be like, well, the hearing

20  officer can't do anything because they're not going to

21  micromanage the office.

22      MR. SMITH:  You're right. You're right,

US00008520

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

1  Cooper. Look, I'm not disagreeing with you all. I'm

2  just telling you if you go on with the hearing, your

3  best opportunity, if you want to stay in that office

4  and try to figure this thing out is to formulate a

5  settlement agreement that you can hold his feet to the

6  fire as opposed to -- I mean, let's just play it out

7  like you guys are saying, if it's a sham.

8          What are you going to get? You're not going to

9  get anything.

10          MR. STRICKLAND:  She may not, but she'll have

11  to have the admission that they can't do anything. You

12  know, and --

13          MR. SMITH:  The admission that who can't do

14  anything?

15          MR. STRICKLAND:  The -- the --

16          MS. STRICKLAND:  [inaudible] court.

17          MR. STRICKLAND:  The hearing officer. We can't

18  do anything. You'll just have to do whatever Tony says.

19  He agrees with this, you do that.

20          MS. STRICKLAND:  See, here's the --

21          MR. SMITH:  They're not going to say it that

22  way.

Case 1:20-cv-00066-WGY   Document 250-11   Filed 06/15/23   Page 18 of 21

US00008521

Transcript of 190226_1153

1          MR. STRICKLAND:  They won't say [inaudible]

2    it'll be obvious.

3          MS. STRICKLAND:  [inaudible]

4          MR. SMITH:  Sure, but what does that give you?

5          MR. STRICKLAND:  But you know, you give up a

6    lot to be a federal employee. I don't think you give up

7    your Constitutional right to due process. This is a

8    process and it doesn't appear that very many things are

9    being followed.

10          Even James sending out that supplement, I

11   don't understand why he did that.

12          MR. SMITH:  Because he was told by the AO he

13   had to.

14          MR. STRICKLAND:  No, he was told by the AO

15   that he was unable to redact, which I disagree with

16   that. He was interpreting the plan as requiring that. I

17   mean, this plan has repeated instances where, for

18   example, Chapter 9.

19          As unit executive, Tony should have been

20   notified that he was the subject of her complaint. He

21   was not. You know, the five page narrative you read,

22   Tony was never given that.

US00008522

Transcript of 190226_1153

1          MS. STRICKLAND:  I want some kind of, you
2  know, transition that is comfortable for me.
3          MR. SMITH:  Sure.
4          MS. STRICKLAND:  So that I can move on into a
5  different permanent position, which you know, I mean, I
6  guess I could go out and apply for jobs tomorrow, but
7  you know, I don't want to just have to run to something
8  or just take whatever.
9          MR. STRICKLAND:  Isn't that disgusting though?
10          MS. STRICKLAND:  Yeah, it's disgusting.
11          MR. STRICKLAND:  I mean, she'll lose her job
12  and everybody else will keep on trucking.
13          MS. STRICKLAND:  I mean, this is -- and this
14  is part of the reason why I've come this far is --
15          MR. SMITH:  Well, I hope something happens
16  here. I don't know what, but I hear you and I don't dis
17  -- look --
18          MR. STRICKLAND:  I've lived enough life, not
19  as much as I can, hopefully, but you know, once the
20  pressure is off, it goes away. That's the way it looks.
21          MR. SMITH:  Well, [inaudible].
22          MS. STRICKLAND:  That's my --

US00008527

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

1          MR. SMITH:  -- say that, but there is that

2     report and I would hope -- look, you showed me one

3     email and what was my initial reaction? That's an

4     improper email.

5          MS. STRICKLAND:  Mm-hmm.

6          MR. SMITH:  I'll never see that report, but

7     I'm just -- and I'm cynical as -- I've been doing this

8     so long, I just can't believe anybody is going to say

9     it wasn't an improper email. I don't know what'll

10    happen and I'm not -- I don't know what they'll say

11    about all the other stuff.

12         But the -- the -- I don't know, the quid pro

13    quo or pay for stay, whatever it was, that email's just

14    -- that's not something a supervisor [inaudible].

15         MR. STRICKLAND:  The problem though, the

16    concerning [inaudible] this is that report has been out

17    there since just prior to the end of counseling and

18    nobody's done anything.

19         MS. STRICKLAND:  I mean, I told James --

20         MR. STRICKLAND:  I mean, JP is still at work.

21    He's not been put on administrative leave.

22         MS. STRICKLAND:  I told James, I said, you

Case 1:20-cv-00066-WGY   Document 250-11   Filed 06/15/23   Page 21 of 21

US00008528