# EXHIBIT EE

CONFIDENTIAL, Subject to Protective Order, ECF No. 183



# Transcript of 190308_1019

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

US00008618

```
 1
 2
 3
 4
 5
 6
 7                    CONVERSATION
 8                    "190308_1019"
 9   IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF
10                    AMERICA, ET AL.
11
12
13
14
15
16
17
18
19
20   Job No.: 479402
21   Pages: 1 - 82
22   Transcribed by: Christian Naaden
```

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

```
1    had another call for [inaudible] voluntary, if you
2    wanted to do this. It would take some work for you. Not
3    much. I -- I don't know but I got to make a
4    presentation at Fourth Circuit EDR conference in May
5    and my title is something like [inaudible] talking to
6    EDR coordinators and what to avoid and [inaudible].
7            And if you wanted to give me your perspective
8    as an employee who has been through this process, what
9    issues you may have had with the EDR process and how it
10   was handled. I'd be more than happy to know those and
11   incorporate them in my presentation.
12           The [inaudible] nobody would know. I would
13   tell -- I talk to people who have been through this and
14   they said X. They wouldn't know it was you. Because I'm
15   going to do that with somebody else [inaudible]. But
16   again, that's -- if you don't want to do it, you don't
17   have to. Don't worry.
18           MS. STRICKLAND: No. No. I'd love to.
19           JUDGE: You vented the last time and I -- I
20   think you had things to say and there's always some
21   things people need to hear.
22           MS. STRICKLAND: No, I mean -- I mean, I think
```

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

1  -- could have been me. I don't know what you all talked
2  about but to me the -- the craziest thing about this
3  and I'm -- I very much appreciate this. I mean, I think
4  this is probably the best part.
5           I mean to get some rational, I mean, but it's
6  clear it doesn't really resolve anything that happened.
7  And it doesn't make me whole. You know, and it -- it's
8  very sadly, I feel what it show me is how much the
9  process doesn't work.
10          I mean, and I'm not trying to be -- I don't
11 mean that as a criticism of you or any. I -- I very
12 much appreciate it. But it -- it's all just is very
13 disturbing to me. This whole situation. And I think I
14 need -- I think I need to kind of process everything
15 that happened and just -- just the fact that, you know,
16 in a way if feels like a very nicely package
17 constructed discharge.
18          You know, in that I have to give up a -- a
19 career that I wanted and over the fact that, you know,
20 I was harassed and retaliated against and meanwhile I
21 don't believe for a second that anything's going to
22 happen to the people who did it. But there's going to

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

```
 1  be any accountability.
 2          JUDGE:  Yeah. I can't address that but from
 3  being with you, I don't even know if that was addressed
 4  with a clean house from what you wrote, it wouldn't do
 5  you any good anyway. I mean it was --
 6          MS. STRICKLAND:  Well and I -- I agree with
 7  you and that's why, you know, it's -- this makes the
 8  most sense for me because I just don't think there is
 9  any way that I could stay there but at the same time,
10  you know, it's just not right.
11          It's just -- I don't know, there's just a real
12  sense of injustice that comes. And I think it's very --
13  it's very institutional. You know, it's not necessarily
14  the fault of any one individual person. It's -- it's a
15  collective fault of the institution.
16          And it's -- it's a weakness in the
17  decentralized nature of the judiciary and the fact that
18  you can -- you have these chambers and offices and
19  union executives and their like little kings in their
20  kingdoms.
21          And I think those people just wouldn't -- if
22  their trying, if that's how a branch of government
```

```
 1   should operate. That there should be -- and especially
 2   if there was a huge difference between an article III
 3   judge and an agency like a Federal Defender's office.
 4            To me, I feel like in some ways, Tony, as a
 5   [inaudible] has more rights in the process than someone
 6   like Judge Ford would have. For example, I don't think
 7   he is even subject to this qualification.
 8            To me, you know, he -- he was involved in the
 9   dispute. Under the first circuit plan he should be
10   disqualified. Yet, that's just not how the system is
11   set up to operate. Yet, if you had an article III judge
12   it goes into the system. they don't hear the claim when
13   they're the person accused.
14            And to me, I just feel like how -- how is it
15   that Federal Defender offices can just so completely
16   [inaudible] and accountability for bad behavior. That
17   the buck just stops at the unit infected and whatever
18   they want.
19            That's all that there is. I just, you know,
20   when we met in DC with the person at the IL, I mean,
21   you know the situation about remedy. What can even
22   legally be ordered against a Federal Defender's office.
```

```
1              What authority does the fourth circuit even
2     have other than -- because the CJ plan -- I don't think
3     it gives them any statutory authority to actually order
4     the [inaudible] be terminated or, you know, you don't.
5              JUDGE:  That's why I pulled the remedies out
6     when I first met with you. I hear you. I hear you.
7              MS. STRICKLAND:  May I just say something.
8              JUDGE:  The mediators hear you. We -- I deal
9     with this. I understand exactly what you're saying. I
10    would suggest to you -- I would hope that you would
11    walk away from this not focused so much on what's wrong
12    with the system but about what is right in this
13    situation.
14             A lot of people went to work for you and found
15    this. It's a testament to you and who you are and what
16    you've accomplished. But it's also a testament to them
17    too that everything you said is true. And they didn't
18    have to do any of this. They wanted to do this.
19             And so, that's what I would offer out there to
20    try to focus this on that. It might make you feel
21    better. Because if you focus on the other, there's
22    nothing you can do about it. I don't disagree with
```

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

1  anything you say about the mediation process. I don't.
2          MS. STRICKLAND: Yeah.
3          JUDGE: I understand it's my frustration.
4  They're looking at a new EDR plan right now at the DA.
5  I don't think it's going to address what your all
6  concern is. And even with me, the remedy part, which is
7  a big problem here.
8          But I hope they will address some of the
9  concerns about how everything works. Because I have
10 other issues with it. I mean, you were [inaudible] like
11 when you and I first met it was like why -- I think you
12 came in here why am I meeting with you? You admit your
13 counsel had tried to drop and then you're going into
14 mediation to try to resolve this. Well, that didn't
15 make sense to me.
16         MS. STRICKLAND: Mm-hmm. I'm curious what you
17 mean by that.
18         JUDGE: Well, because everybody's dug in.
19         MS. STRICKLAND: Yeah.
20         JUDGE: You walk in here and you go why would
21 he agree to anything different? He's already said no.
22         MS. STRICKLAND: Well, exactly.

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

```
 1           JUDGE:  And all I have to say is Caryn trust
 2   me.  I haven't been involved.  Give me an opportunity.
 3           MS. STRICKLAND:  Right.  Well, you got further
 4   than anyone else.  I mean, you know.
 5           JUDGE:  And I think [inaudible] and mediation
 6   should be merged to let a mediator come in here
 7   earlier.  He really has to dog fight and try to get
 8   people to -- but still the -- the remedy --
 9           MS. STRICKLAND:  It's actually a good idea.
10           JUDGE:  Well, it -- I'm, you know, we'll see
11   if anything ever happens but and there's another chief
12   mediator in the schedule.  He does a lot of these and he
13   has the same frustrations I've always had and he's done
14   more of these than I have.
15           And he -- he has been beating the drum for
16   change but there's only so much change you're ever
17   going to get.  And -- and I hear you on the
18   disqualification but I will tell you this there have
19   been -- and not been too often -- but there have been
20   cases where judges have been accused of sexual
21   harassment.
22           In those cases, the mediation is held with the
```

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

1  judge. Now, he can hear his case but if he's the only
2  one that can settle it and say we're going to do X, Y
3  and Z. So, it is just the same as --
4          MS. STRICKLAND: So, it is the same.
5          JUDGE: And of course, to get rid of it off
6  the judge, you've got one route and one route only.
7  Now, and you forget, and I don't think anything will
8  happen here but Tony does have a boss. It's a judge. He
9  can be removed.
10         My understanding is it is John [inaudible].
11 It's just like mine. He works at the court chief judge
12 or serves at the court chief judge. I'm not saying
13 anything will happen but that is there for those really
14 bad cases.
15         I don't know where this is going to shake out.
16 I -- I'm just trying to get you out of the grief and
17 move on and not care what happens. So be it. I want to
18 get on my feet. You're right about everything you said.
19         I hope that if you're ever going to be a
20 Federal Defender you'll think about Virginia and maybe
21 Greenville. And then at least there's that opportunity
22 for you to carry on and have that career. And before