# Exhibit 68

In the Matter of:

# Caryn Devins Strickland

*vs*

# United States, et al.

Deposition of:

# JILL LANGLEY

April 27, 2023



(703) 331-0212

www.icrdepos.com

1    mediation stage and that she had waited months and

2    had not heard back.

3         Q       How did you respond to that?

4         A       What I remember telling her was that I

5    didn't understand the concept at all of disqualifying

6    the party from representing itself.

7                 And so I do -- I don't know what I said

8    to her about the delay in getting an answer back but

9    I remember -- and am seeing in my notes -- thinking

10   that it would surprise me if disqualifying the

11   defendant from being the defendant would be granted.

12        Q       Did you talk with Caryn about remedies at

13   the complaint stage?

14        A       I don't remember.

15                The only question -- the only topic that

16   I remember coming up late in our meeting was her

17   asking what would happen if the defender, like if the

18   presiding judicial officer at the end of the

19   complaint stage -- because that's when remedies

20   happen, after there has been a decision on the

21   merits -- what would happen if the defender refused

22   to comply with the orders.

ICR/Rudiger & Green
office@icrdepos.com          www.icrdepos.com          (703) 331-0212
Case 1:20-cv-00066-WGY   Document 254-3   Filed 06/29/23   Page 3 of 6

1         Q      And --

2         A      And I said I didn't remember what -- I

3    was not familiar with the -- how a defender could be

4    unappointed.

5               In contrast, if I'm a court employee and

6    the presiding judicial officer orders the clerk of

7    court to provide some remedy, the clerk of court, I

8    understand, is in a very direct employment

9    relationship with the chief judge and the judges on

10   the court.

11              And what I remember telling Caryn is I

12   literally did not know enough about the relationship

13   between a defender -- and I'm talking about the unit

14   executive defender -- and the judges on the Court of

15   Appeals.  And so I remember telling her that I didn't

16   know what would happen.

17              I certainly told her that they are

18   obligated -- a defender would be obligated under the

19   plan to take those remedies and to comply with the

20   order, but I didn't know what would happen if they

21   refused to follow that.

22        Q      Do you know -- I'm just trying to make

**ICR/Rudiger & Green**
office@icrdepos.com            **www.icrdepos.com**            **(703) 331-0212**
Case 1:20-cv-00066-WGY   Document 254-3   Filed 06/29/23   Page 4 of 6

1   sure I understand your answer.

2                   Are you saying that you didn't know if

3   the Court -- if a presiding judicial officer would

4   have authority to enforce remedies ordered under the

5   plan against the defender?

6        A      No.  I knew that they had the power to

7   enforce it.

8                   But the mechanics of what does that

9   enforcement mean, what I didn't know was would they

10  have the power to fire the defender for failing to

11  comply with a presiding judicial officer decision.

12                  And after our meeting, I did learn about

13  a statute that describes how a defender can be

14  removed from office for misconduct in office or

15  neglect of duty; and as a lawyer I would make the

16  argument that failing to comply with a presiding

17  judicial officer's order would be neglect of duty.

18                  So, I didn't know that.

19       Q      At the time.

20       A      So that was -- my answer to her was, "I

21  don't know what would happen."

22       Q      Okay.

ICR/Rudiger & Green
office@icrdepos.com          www.icrdepos.com          (703) 331-0212
Case 1:20-cv-00066-WGY   Document 254-3   Filed 06/29/23   Page 5 of 6

 1      A       But I also want to be clear when you talk

 2   about remedies I am talking exclusively about a

 3   post-decision remedy ordered by a presiding judicial

 4   officer at the end of the complaint stage --

 5      Q       I understand?

 6      A       -- not settlement resolutions or other

 7   informal resolutions.  I'm talking about remedies

 8   under the EDR plan.

 9      Q       Does the EDR plan contemplate any

10   distinction between someone's interests as, say, a

11   unit executive and their interests if they are also

12   an accused party?

13      A       Say it again.

14                    (The following was read back by the

15                    court reporter:

16                    QUESTION:  Does the EDR plan

17                    contemplate any distinction between

18                    someone's interests as, say, a unit

19                    executive and their interests if

20                    they are also an accused party?

21                    THE WITNESS:  So you are going to have to

22   excuse me, but I'm going to stop and reread this to

**ICR/Rudiger & Green**
office@icrdepos.com          **www.icrdepos.com**          **(703) 331-0212**
Case 1:20-cv-00066-WGY   Document 254-3   Filed 06/29/23   Page 6 of 6