# Exhibit 72

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN CHMIELEWSKI,

        *Plaintiff*,

   v.

ENVIRONMENTAL PROTECTION
AGENCY, *et al.*,

        *Defendants*.

Civil Action No. 1:20-cv-3025 (CJN)

**MEMORANDUM OPINION**

Kevin Chmielewski worked at the Environmental Protection Agency as a political appointee from the summer of 2017 until the spring of 2018.  *See generally* Am. Compl. Chmielewski claims that, during his tenure, he observed then-Administrator Scott Pruitt violate travel policies and laws prohibiting corruption, which Chmielewski then disclosed to various people. *Id.* ¶¶ 17, 37.  Chmielewski lost his job soon after blowing the whistle. *Id.* ¶ 18.

A year or so later, Chmielewski interviewed for a job as a political appointee with the Department of Energy. *Id.* ¶ 25.  Energy did not hire him. *Id.* ¶ 26.  Chmielewski alleges here that his removal by the EPA violated the First and Fifth Amendments and that Energy's refusal to hire him violated the First Amendment. *See generally* Am. Compl.  The government has filed a partial motion to dismiss the Amended Complaint, *see* Defs.' Partial Mot. to Dismiss ("Defs.' Mot."), ECF No. 29, which the Court grants in part.

**I.   Background**

In the spring of 2017, Kevin Chmielewski left his job with the Department of Homeland Security to begin a stint in a career-level position with the EPA as Director of Scheduling.  *See*

1

Am. Compl. ¶¶ 14-15.  A couple months later, Chmielewski accepted a non-career, political appointment as the Deputy Chief of Staff for Operations for the Administrator of the EPA.  *See id.* ¶ 16.

Chmielewski claims that, while serving in that position, he observed then-Administrator Scott Pruitt violate various travel policies and laws prohibiting corruption.  *Id.* ¶ 17.  Chmielewski, for instance, alleges that Pruitt instructed his staff to book flights only with Delta Airlines despite cost-saving alternatives so that Pruitt could accumulate personal reward miles.  *Id.* ¶ 38.  He alleges that Pruitt demanded his staff book flights back and forth to Pruitt's home state.  *Id.*  And Chmielewski contends that Pruitt spent around $100,000 of public funds on food, hotels, and airfare during a trip to Italy.  *Id.*  Chmielewski thought the spending so extravagant he voiced his objection to Pruitt himself.  *Id.* ¶ 24.  The response, according to Chmielewski:  "I don't care, I'm a Cabinet Secretary, make it happen."  *Id.* ¶ 34.  Chmielewski's allegations extend beyond travel arrangements.  Chmielewski claims that Pruitt used his personal email to conduct official government business, used public funds to construct a phone booth next to his office, and deployed his security detail to run personal errands on his behalf, including the retrieval of expensive face cream from the Ritz-Carlton.  *Id.* ¶¶ 46, 51.

Fed up with what he perceived as malfeasance, Chmielewski disclosed Pruitt's violation of travel policies and laws governing non-travel related conduct to various people in early 2018, including Pruitt himself, White House officials, and employees within the EPA.  *Id.* ¶ 37.  Chmielewski claims that he suffered immediate reprisals.  *See id.*  Chmielewski alleges that in February 2018, he discovered that he had been locked out of his office.  *Id.* ¶ 52.  Later that day, White House liaison Charles Munoz told Chmielewski that "Pruitt wants you to resign effective immediately" and that Chmielewski should sign a resignation form.  *Id.* ¶¶ 52-53.  Chmielewski

refused to do so. *Id.* ¶ 53. EPA officials followed up by escorting him out of the building and to the curb. *Id.* ¶¶ 54.

Chmielewski did not receive formal notice of his termination in the immediate wake of his removal. *Id.* ¶ 56. Weeks later, in late April 2018, Chmielewski received documents representing that he had resigned on his own authority earlier in March. *Id.* ¶ 57. Thereafter, Chmielewski contacted staffers from the House Oversight and Government Reform Committee as well as various media outlets to disclose what had happened to him and Pruitt's alleged abuse of office. *Id.* ¶¶ 49-50. News organizations like CNN, ABC, and The Hill published articles exploring Chmielewski's allegations and his saga with the EPA. *Id.* ¶ 50.

Chmielewski alleges that, after being unemployed for over a year, he received word from contacts in the White House that a position as a travel logistics coordinator became available in the Department of Energy. *Id.* ¶ 23. In March 2020, a liaison with Energy contacted Chmielewski about scheduling an interview. *Id.* ¶ 25. The interview went well according to Chmielewski. *Id.* Chmielewski claims that, in a follow-up interview, he received praise from the interviewer, who stated that he was "highly qualified for the job." *Id.* ¶ 26. Chmielewski believed an offer was imminent but one never arrived. *Id.* According to Chmielewski, his paperwork never made it past White House officials. *Id.* ¶ 61. In Chmielewski's view, numerous White House officials torpedoed his application out of retaliation for what transpired during his time at the EPA. *Id.* ¶ 61.

Believing that the government had wronged him, Chmielewski challenged his separation from the EPA at both the Merit Systems Protection Board and the Office of Special Counsel. *Id.* ¶ 6. Both determined that they lacked jurisdiction to hear Chmielewski's grievances because Congress excluded non-career political appointees like Chmielewski from protections under both

3

the Civil Service Reform Act and the Whistleblower Enhancement Protection Act. *Id.; see* 5 U.S.C. § 7701 *et seq.;* 5. U.S.C. § 2302 *et seq.* Chmielewski also lodged a challenge regarding Energy's decision not to hire him. *See* Am. Compl. ¶ 6. The Office of Special Counsel concluded that it lacked jurisdiction to hear that claim, too. *Id.*

Having exhausted his administrative remedies, Chmielewski filed this lawsuit in late 2020, claiming that the government's actions violated the First and Fifth Amendments. *See generally id.* Chmielewski asserts that Pruitt's "improprieties concerning the expenditure of public funds on travel, a phone booth, office furniture and redecoration, use of public servants to perform non-governmental functions, falsification of calendars and documents," and use of personal email accounts to conduct government business violated numerous statues, rules, regulations, and policies. *Id.* ¶ 51. He also claims that the EPA fired him in retaliation for his disclosures and that Energy refused to hire him because of the same. *See generally id.*

As far the requested relief goes, Chmielewski seeks (1) a declaratory order that he was not lawfully removed and, therefore, continues to retain his status as an EPA employee; (2) reinstatement to his employment as Deputy Chief of Staff in the EPA or to a comparable position; (3) instatement to the position at Energy he applied for; (4) expungement of all records related to his purported resignation from the EPA; (5) an order enjoining the government from further retaliatory action; (6) the award of costs and attorney fees; and (7) any and all other relief provided by the laws of the United States and equity. *See* Am. Compl. VIII.

The government has moved to dismiss in part Chmielewski's Amended Complaint. *See* Defs.'s Mot. In particular, the government moves to dismiss Chmielewski's Fifth Amendment

claim against the EPA; moves to dismiss his First Amendment claim against Energy; and seeks to narrow the relief available on his First Amendment claim against the EPA.  *See id.*

## II.   Legal Standard

**Civil 12(b)(1).**  Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint if the court lacks subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  When ruling on a Rule 12(b)(1) motion, the court must "treat the complaint's factual allegations as true" and must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (quotation omitted). Although the court need not accept inferences unsupported by the factual allegations, the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 56 (D.D.C. 2015) (quotation omitted).

**Civil 12(b)(6).**  Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive such a motion to dismiss, a plaintiff must plead "facts to state a claim of relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court treats the "complaint's factual allegations as true and afford[s] the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (quotation omitted).  Although the court accepts all well pleaded facts in the complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The claim to relief must be "plausible on its face," *id.*, meaning that the plaintiff must have pleaded "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Deprivation of Property under the Fifth Amendment Due Process Clause

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . "deprived of life, liberty, or property, without due process of law." *See* U.S. Const. amend. V. To state a due process claim, a plaintiff must allege a (i) deprivation of a protected liberty or property interest, (ii) by the government, (iii) without the process that is due. *NB ex rel. Peacock v. D.C.*, 794 F.3d 31, 41 (D.C. Cir. 2015) (quotation omitted). Step one requires asking whether the plaintiff has been deprived of a protected interest in liberty or property. *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010). "If no protected interest exists, no due process claim exists." *Raven v. Sajet*, 334 F. Supp. 3d 22, 33 (D.D.C. 2018). Chmielewski acknowledges that this case does not involve an alleged deprivation of a liberty interest, so his Fifth Amendment claim hinges on the deprivation of a property interest. *See generally* Am. Compl.

Property interests, which arise from independent sources like state common law as well as state and federal statutes and regulations, "take many forms." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972); *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988). One recognized property interest includes an expectation of "continued employment." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Courts probe the nature of the employment to determine whether a plaintiff has a property interest in continued employment, asking whether the employer could terminate the employee at will or only for cause. *Dave v. D.C. Metro. Police Dep't*, 905 F. Supp. 2d 1, 9 (D.D.C. 2012). An employee has no protected property interest in continued employment when terminable at will. *See Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 393 (D.D.C. 2016). The opposite may be true when the employee is terminable

6

only for cause.  *Id.*  The reason behind the at will/for cause dichotomy makes sense.  Employees terminable only for cause "can expect to remain employed unless they do something warranting their termination."  *Hall*, 856 F.2d at 265.  Employees terminable at will, by contrast, lack an "objective basis for believing that they will continue to be employed indefinitely."  *Id.*

Another recognized property interest includes, under certain circumstances, government benefits.  *See Goldberg v. Kelly*, 397 U.S. 254 (1970).  A plaintiff must show a "legitimate claim of entitlement" to a government benefit for it to count as a protected property interest.  *See Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014).  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).

Chmielewski claims that his termination from the EPA deprived him of a property interest in his continued employment.  *See* Am. Compl. ¶ 1.  But the EPA could terminate Chmielewski at will, at any time, and for any reason given his status as a non-career, political appointee.  *See Yeghiayan v. United States*, 649 F.2d 847, 854 (Ct. Cl. 1981) (noting that a "political appointee in federalese often signifies nothing more than a policymaker who is terminable at will").  Because Chmielewski has failed to alleged facts that might show he possessed a property interest in his continued employment at the EPA, his Fifth Amendment claim must be dismissed.

Chmielewski's reliance on 5 C.F.R. § 359.902—the "Conditions of Removal" regulation governing political appointees—misses the mark.  In Chmielewski's view, 5 C.F.R. § 359.902 required the EPA to provide him with written notice before his termination.  *See* Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 36 at 18 (arguing that Chmielewski possessed a property interest in his job as Deputy Chief of Staff for Operations because "a published rule or regulation not subject to the discretion of the terminating official can alone create a protected expectation if

7

it conditions or limits the otherwise purely at will nature of the continued employment"). Chmielewski further contends that government officials, instead of providing him with the required notice, "affirmatively concealed the removal from [Chmielewski] by creating false documentation of a resignation he had not submitted." *See* Am. Compl. ¶ 84. But the first subsection of 5 C.F.R. § 359.902(a) states that an "agency may remove an appointee subject to this subpart at any time." The agency here did just that: removed Chmielewski at a time of its choosing. True, 5 C.F.R. § 359.902(b) does state that the "agency shall notify the appointee in writing before the effective date of the removal." Conditioning an employee's removal on compliance with certain specified procedures, however, does not in and of itself create a property right to continued employment. *See Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 495 (D.C. Cir. 1988) (noting that a "legislative provision of procedural safeguards cannot in itself create a property interest for purposes of due process analysis"); *Cobb v. City of Harahan*, 516 F. App'x 337, 340 (5th Cir. 2013) (quotation omitted) ("An ordinance merely conditioning an employee's removal on compliance with certain specified procedures does not endow that employee with a property interest in his employment.").[1]

---

[1] Plus, reading 5 C.F.R. § 359.902(b) as requiring written notice before the removal of an at-will political appointee creates additional problems.

Consider the first. Placing procedural hurdles in the way of the Executive's ability to remove at-will political appointees may raise constitutional concerns. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2206 (2020). The Court need not draw a line here, but a line nonetheless exists.

Consider a second. Congress made the deliberate decision to exclude at-will political appointees like Chmielewski from coverage under the Civil Service Reform Act, *Jefferson v. Harris*, 170 F. Supp. 3d 194, 209 (D.D.C. 2016). That Act grants a covered employee "the right to notice, representation by counsel, an opportunity to respond, and a written, reasoned decision from the agency" when the agency seeks to terminate a covered employee. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 6 (2012); *see* Am. Compl. ¶ 6 (admitting that Chmielewski has "no right to any remedy as a non-career . . . employee under the Civil Service Reform Act"). Political appointees do not

8

Any suggestion that Chmielewski's property interest arises from his prior stint with the EPA as Director of Scheduling fails, too. Recall that Chmielewski worked in a civil service, career level position as a Director of Scheduling before he accepted a non-career, political appointee position as the Deputy Chief of Staff for Operations. *See* Am. Compl. ¶ 15. Chmielewski's voluntary decision to leave his career position dooms his claim to a property interest in continued employment in that position. Indeed, "no basis" exists for a claim of deprivation of property without due process where, as here, an employee leaves his position "voluntarily." *Lawrence v. Acree*, 665 F.2d 1319, 1325 (D.C. Cir. 1981); *Monahan v. Romney*, 625 F.3d 42, 47 (1st Cir. 2010) ("Because Monahan voluntarily resigned, his claim that the defendants deprived him of a property interest within the meaning of the Due Process Clause necessarily fails.").

One last note. Chmielewski alleged in his original Complaint that his loss of health care benefits following his "resignation" from the EPA also gave rise to a Fifth Amendment Due Process claim. *See* Original Compl., ECF No. 1 ¶ 67. He has conceded that he has failed to state a claim based on the termination of his health insurance benefits. Pl.'s Opp'n at 20 n.15; *see also* Minute Entry, December 16, 2021.

---

receive career civil servant protections under the CSRA, 5 U.S.C. § 7511(b)(2), and their employment is presumed to be at will and not to give rise to a property interest in the absence of such protections. *Lamb v. Holder*, 82 F. Supp. 3d 416, 424 (D.D.C. 2015) (citing *Garrow v. Gramm*, 856 F.2d 203, 205–06 (D.C. Cir. 1988)).

Even if Chmielewski should have received written notice prior to his removal in accordance with 5 C.F.R. § 359.902(b), he still lacked a property interest in his at-will role as the Deputy Chief of Staff for Operations, which forecloses his Fifth Amendment claim.

### IV. Chmielewski's Claims under the First Amendment

Chmielewski asserts two claims under the First Amendment based on two distinct events: (1) his 2018 separation from the EPA, and (2) his failure in 2020 to obtain a position as a political appointee with the Department of Energy. *See generally* Am. Compl. As to the first, Chmielewski alleges that Pruitt and the EPA retaliated against him for disclosing Pruitt's alleged violations of regulations and laws governing anti-corruption. *See id.* ¶ 77. As to the second, Chmielewski contends that Energy refused to hire him based on retaliatory animus for Chmielewski's decision to blow the whistle on Pruitt. *See id.* ¶ 80.

The government moves to dismiss Chmielewski's First Amendment claim against Energy in full. *See* Def.'s Mot. In the government's view, the Court cannot redress Chmielewski's alleged harm, and in any event Chmielewski's claim fails on the merits. *See id.* The government does not, however, move to dismiss Chmielewski's First Amendment claim against the EPA, but instead seeks to limit the relief available to Chmielewski. *See* Def.'s Mot.[2]

#### A. The Available Relief on Chmielewski's First Amendment Claims

Article III of the federal Constitution establishes that federal courts may exercise "judicial Power" only in "Cases" and "Controversies." U.S. Const. art. III, § 2. A plaintiff must, among other things, possess "standing" to satisfy the "irreducible constitutional minimum" necessary to have a case or controversy within the meaning of Article III. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). To establish

---

[2] The Court will construe the government's motion to limit the relief available on Chmielewski's First Amendment claim against the EPA as a partial motion for summary judgment. *See* Def.'s Mot. at 18 n.11 ("To the extent the Court disagrees about whether a 12(b)(6) motion is the appropriate mechanism to address the unavailability of a specific type of relief as a matter of law, Defendants move in the alternative for summary judgment on this issue.").

Article III standing, a plaintiff must show that he has suffered "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  A core element of Article III's case-or-controversy requirement is that a plaintiff must establish his or her standing to sue separately for each form of relief sought.  *Cierco v. Mnuchin*, 857 F.3d 407, 416 (D.C. Cir. 2017) ("A plaintiff must demonstrate standing separately for each form of relief sought.").

Recall that Chmielewski seeks the following relief:  (1) a declaratory order that he was never lawfully removed from the EPA and thus retains his status as an EPA employee; (2) reinstatement to his employment as Deputy Chief of Staff in the EPA or to a comparable position; (3) instatement to the position he applied for with the Energy; (4) expungement of all records related to his purported resignation from the EPA; (5) an order enjoining the government from further retaliatory action; (6) the award of costs and attorney fees; and (7) any and all other relief provided by the laws of the United States and equity.  *See* Am. Compl. VIII.[3]

*Request for a Declaratory Order.*  Chmielewski seeks a declaration that he "was never lawfully removed from his Federal position, and, therefore, continues to lawfully retain his status as an EPA employee."  *See* Am. Compl. VIII ¶ A.  For a declaratory order to be "a proper judicial

---

[3] The doctrine of federal sovereign immunity shields the federal government from lawsuits "without its consent."  *See United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Section 702 of the APA "waives the federal government's sovereign immunity for a limited set of suits, brought by a person suffering legal wrong because of agency action to obtain relief other than money damages."  *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019) (quotation omitted).  A litigant, therefore, may sue an agency of the federal government for injunctive or declaratory relief but not monetary relief under 5 U.S.C. § 702.  *See In re Sealed Case No. 99-3091*, 192 F.3d 995, 999 (D.C. Cir. 1999).  The Court assumes this explains, at least in part, why Chmielewski seeks just equitable forms of relief.

resolution of a 'case or controversy' rather than an advisory opinion," it must "settl[e] some dispute which affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (quotation omitted). A judicial declaration that the EPA broke the law when it removed Chmielewski would not change the legal relationship between the parties. Chmielewski has been separated from EPA for multiple years. *See* Am. Compl. ¶ 20 (alleging that Chmielewski completed his last assignment with the EPA around in early 2018). "Declaratory relief," in this situation, "would amount to nothing more than an advisory opinion regarding the wrongfulness of the [EPA's] past conduct." *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 548 (D.N.J. 2014). The Court therefore cannot grant Chmielewski's request for a declaratory order. *See Ka Lok Lau v. Holder*, 880 F. Supp. 2d 276, 280 (D. Mass. 2012) ("Declaratory relief, in such a situation, amounts to an advisory opinion, which federal courts are prohibited from offering.").

*Request for Injunctive Relief.* Chmielewski next asks the Court to "[e]njoin Defendants from further retaliation against the Plaintiff." Am. Compl. VIII ¶ E. To have standing to pursue injunctive relief, Chmielewski must establish that: "(1) he is likely to suffer a future injury; (2) he is likely to suffer the injury at the hands of the defendant; and (3) the relief he seeks will likely prevent the injury from occurring." *Navellier v. Fla.*, 672 F. App'x 925, 928 (11th Cir. 2016). Here, Chmielewski offers no credible allegations that he would suffer imminent retaliation if the Court were to instate or reinstate him into a position with the federal government. Chmielewski has also not indicated that he intends to seek federal employment in the current Administration (and he conceded at oral argument he has not already done so). In this situation, then, any possible future harm amounts to nothing "more than conjecture." *Trump v. New York*, 141 S. Ct. 530, 535 (2020). Chmielewski does not face any ongoing retaliation nor would his past alleged injury likely be redressed with injunctive relief. *See Cierco v. Mnuchin*, 857 F.3d 407, 417 (D.C. Cir. 2017)

(holding that plaintiffs' claims for injunctive relief are "far too speculative to support their invocation of federal court jurisdiction").  The Court therefore cannot grant Chmielewski's request for injunctive relief.

*Request for Reinstatement or Instatement.*  Chmielewski requests that the Court "reinstate Plaintiff to his employment as Deputy Chief of Staff of the EPA . . . or to a comparable position."  Am. Compl. VIII ¶ B.  In a similar vein, Chmielewski asks that the Court "instate Plaintiff to the GS-15 non-career position he was to receive at [Energy]."  *Id.* ¶ C.  A federal civil servant who lost his job because of illegal action may be entitled to reinstatement into his prior position.  *Davis v. Billington*, 51 F. Supp. 3d 97, 108 (D.D.C. 2014); *Spagnola v. Mathis*, 859 F.2d 223, 230 (D.C. Cir. 1988); *Hubbard v. EPA*, 809 F.2d 1, 12 (D.C. Cir. 1986).  But whether a court may grant reinstatement as a form of relief depends in part on what job the civil servant held.  A career civil servant laboring under the protections of the Civil Service Reform Act of 1978 can as a general matter seek reinstatement.  *Davis v. Billington*, 51 F. Supp. 3d 97, 114 (D.D.C. 2014); *Resolute Forest Prod., Inc. v. U.S. Dep't of Agric.*, 219 F. Supp. 3d 69, 75 (D.D.C. 2016).  Reinstatement, however, does not appear to be an appropriate remedy where the federal employee was a political appointee.  *See* Exec. Order No. EO 13989, 86 FR 7029, 7030 (2021) (noting that political appointees include all "full-time, non-career Presidential or Vice-Presidential appointee, non-career appointee in the Senior Executive Service (or other SES-type system), and appointee to a position that has been excepted from the competitive service by reason of being of a confidential or policymaking character . . . in an executive agency").  The Court need not decide whether reinstatement of a political appointee is *ever* an appropriate remedy; here, however, it is not.  Consider two reasons why.

First, political appointees are, by definition, political, which makes reinstatement of a political appointee into the same position within a different Administration a questionable remedy. *Peters v. Hobby*, 349 U.S. 331, 345 (1955) (suggesting that "political appointees . . . might be more vulnerable to the pressures of heated public opinion"); *UC Health v. N.L.R.B.*, 803 F.3d 669, 685 (D.C. Cir. 2015) (Silberman, J., dissenting) (drawing a distinction between "civil servants [and] political appointees").  It is fair to say that political appointees represent just the sort of positions for which political affiliation is an "appropriate requirement for the effective performance of the [ ] office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980).  Reinstating a political appointee into a prior position risks infringing on the current administration's authority to pick and choose its own political appointees.

Second, separation of powers concerns cut against reinstatement as a remedy for wrongfully terminated political appointees.  The Constitution grants the coordinate branches wide latitude to operate within their own lanes.  Consider *Sampson v. Murray*, 415 U.S. 61 (1974). Noting that the Executive Branch possesses "the widest latitude in the dispatch of its own internal affairs," the Supreme Court has cautioned against awarding equitable relief that would have a "disruptive effect" on personnel decisions.  *Id.* at 83–84.  The Court adheres to that caution here. Indeed, Congress has precluded political appointees from appealing adverse actions to the Merit Systems Protection Board, which adjudicates claims brought by career federal employees.  *See* 5 U.S.C. § 7511(b)(2) (excluding positions that have "been determined to be of a confidential, policy-determining, policy-making or policy-advocating character").  A judicial order compelling the reinstatement of a terminated political appointee into the current administration risk offending the separation of powers and would conflict with the statutory apparatus in place for civil servants.

*See Grosdidier v. Chairman, Broadcasting Board of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) (Kavanaugh, J.).

All in all, the Court believes it lacks the authority to order the reinstatement of Chmielewski into a current position as a political appointee with the EPA. Nor does the Court have the authority to install Chmielewski into a position as a political appointee with Energy. And the Court lacks the authority to reinstate or instate Chmielewski into a career civil servant position with either agency, since Chmielewski never held such a position with either agency at the time of his separation.

*Request for Expungement of Personal Records.* Chmielewski also requests an "[o]rder expung[ing] from Plaintiff's personnel file all records related to any alleged removal from Federal service, and the correction of any other false record." *See* Am. Compl. VIII ¶ D. The government concedes that the Court could order the EPA either to expunge or correct his personnel records, and for that reason has not moved to dismiss Chmielewski's First Amendment claim against the EPA. The government, however, does argue that Energy cannot expunge or correct any of Chmielewski personnel records because Chmielewski never worked there and because Energy has no personnel records related to Chmielewski. *See* Def.'s Mot. at 32; *see id.* Exhibit 1 Affidavit of Farhana Hossain ("I conducted a thorough search of our human resources system (CHRIS-HR) for any personnel records at all related to Kevin Chmielewski, who I understand to be the Plaintiff in the above-captioned action. Based on my review of the system, [Energy] does not have any personnel records for Mr. Chmielewski."). The Court agrees. Chmielewski has not seriously disputed that Energy has no relevant records, and thus a judicial order requiring the agency to either expunge or amend Chmielewski's non-existent personnel file could not redress Chmielewski's alleged injuries.

### B. Chmielewski's First Amendment Claim against Energy is not Redressable

For the reasons discussed above, the Court cannot grant Chmielewski any of the relief he seeks against Energy: a declaratory order, a prospective injunction, instatement, or expungement of his personnel records. Put differently, the Court cannot provide Chmielewski with any relief that would redress his First Amendment claim against that agency. As a result, the Court lacks Article III jurisdiction to entertain Chmielewski's First Amendment claim against Energy. *See CREW v. Trump*, 438 F. Supp. 3d 54, 69 n.14 (D.D.C. 2020) (dismissing the case under Rule 12(b)(1) because the "court lack[ed] the power" to award the relief sought); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 (1992) (holding that a claim must be redressable or else the Court lacks Article III jurisdiction over it).[4]

### V.  Conclusion

For the foregoing reasons, the government's Motion to Dismiss is **GRANTED in PART**. Chmielewski's Fifth Amendment claim against the EPA is dismissed under Rule 12(b)(6); his First Amendment claim against Energy is dismissed under Rule 12(b)(1); and the relief available on his First Amendment claim against the EPA is narrowed under the summary judgment standard of Rule 56. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: July 28, 2022

_____
CARL J. NICHOLS
United States District Judge

---

[4] The Court declines, as it must, to engage with the merits of Chmielewski's First Amendment claim against Energy. Where, as here, the Court lacks Article III jurisdiction to entertain the claim, the Court has just one duty: pronounce that fact and dismiss the claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998).