# EXHIBIT JJ



# Transcript of 190117_1621_Limited Confidentiality

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

```
 1
 2
 3
 4
 5
 6
 7                        CONVERSATION
 8          "190117_1621_Limited Confidentiality"
 9    IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF
10                       AMERICA, ET AL.
11
12
13
14
15
16
17
18
19
20   Job No.: 479402
21   Pages: 1 - 62
22   Transcribed by: Christian Naaden
```

```
 1   Chapter 10 right now --
 2           MR. STRICKLAND:  It's the --
 3           MR. ISHIDA:  -- at mediation.
 4           MR. STRICKLAND:  -- same report. Yeah. Same
 5   report.
 6           MR. ISHIDA:  We -- Chapter 9 is different.
 7   Chapter 9 is -- it's that -- that -- the investigation
 8   report, you know, and -- and Judge Gregory and I talked
 9   about that, is on a different track from this.
10           MR. STRICKLAND:  So is Tony going --? Tony's a
11   party either way. I mean, is he going to get it through
12   Chapter 9 or -- and just not Chapter 10, and at the end
13   of the day, he still has it?
14           MR. ISHIDA:  Well, I mean, in -- in -- in --
15   well, if this -- again, if this proceeds to the formal
16   process, you know, OGC is -- their view is everybody
17   gets it, because it's -- it's now -- it's -- it's --
18   it's almost in effect -- you know, it -- it -- it's
19   wha- -- what -- it -- it -- they --
20           They drew the analogy, like, it's almost,
21   like, discovery. It's the only evidence in the case. So
22   their view is everybody is going to get -- the judicial
```

LIMITED CONFIDENTIALITY

```
 1   officer is probably going to order that the report be
 2   given to all the parties.
 3            MS. STRICKLAND:  Co- --
 4            MR. ISHIDA:  Now, in the Chapter 9 case, if --
 5   if they -- hypothetically, there's a recommendation for
 6   discipline against Mr. Martinez, I can imagine that the
 7   chief judge is going to want a response from Mr.
 8   Martinez. And the only way he -- he can respond is if
 9   he is given a copy of the report.
10            MR. STRICKLAND:  I -- I thought that was the
11   point of the report though, was to determine whether
12   anybody was culpable, and make recommendations about
13   what is to be done about that.
14            MR. ISHIDA:  Well, that -- that is. But --
15            MR. STRICKLAND:  So --
16            MR. ISHIDA:  -- to have --
17            MR. STRICKLAND:  -- basically, Chapter 9 is on
18   hold then.
19            MR. ISHIDA:  Well, no. I think I -- well, I
20   think they can -- they can both proceed, but they're
21   going to proceed on different tracks.
22            MR. STRICKLAND:  Well, will Tony get a copy of
```

1  the report then for purposes of Chapter 9 at this time?
2          MR. ISHIDA: Oh, I see what you mean. Well,
3  you're right. In -- so, in thinking about this
4  mechanically that would not be -- that would not be
5  fair for him to have the report and you not to have the
6  report.
7          MR. STRICKLAND: That's exactly right.
8          MR. ISHIDA: So what we could -- what we could
9  do is hold the Chapter 9 proceeding in advance until
10 the Chapter 10 proceeding has been finished. I mean,
11 that's one way we could do that.
12         MS. STRICKLAND: It -- I mean, I guess just
13 practically speaking, if -- if -- if there's nothing,
14 say, observable that -- that I see occur, can I infer -
15 - is it a reasonable inference that the report doesn't
16 recommend any kind of disciplinary actions against
17 anybody?
18         MR. ISHIDA: You know, Caryn, I can't -- I
19 can't answer that question. The -- the whole point of
20 OGC's directive to me is that -- part of -- part of the
21 reason why they feel strongly about not disclosing the
22 investigation report is they feel that it -- it is

```
1    going to taint and compromise, you know, attempts to
2    resolve the matter informally.
3              MS. STRICKLAND:  But I think that's part of
4    the problem. Is that as part of the -- my complaint of
5    retaliation, I was trying to resolve this informally.
6    But unfortunately, the -- my observation was that the
7    federal defender never really came to the table in good
8    faith to negotiate. So I'm -- I'm not sure.
9              To be honest, I actually feel quite the
10   opposite. I don't know how I can go into mediation
11   without any sense of what the findings or
12   recommendations are. Because without knowing whether
13   there are recommendations to hold people accountable
14   for wrongdoing, I'm not really in any kind of position
15   to make decisions about what to do next, or what to
16   even ask for. Like, I guess I feel just very much left
17   in the dark.
18             MR. ISHIDA:  Well, I can -- I can -- I --
19   personally, I can understand that. Although, I think
20   what OGC is recommending makes a lot of sense too. In
21   that their view is if the report is disclosed, it then
22   becomes a fight about the report, and not about -- and
```

```
 1  not about the -- the concerns and issues being raised.
 2          But it -- it's almost going to create
 3  satellite litigation over contesting what the report
 4  says. And it's going to remove focus away from, really,
 5  the -- the -- the real issues and concerns in the case.
 6          MR. STRICKLAND:  Is this kind of an ad hoc
 7  approach to this particular case? Or is this the norm?
 8          MR. ISHIDA:  I -- I don't know. I mean --
 9          MR. STRICKLAND:  Well --
10          MR. ISHIDA:  -- they -- they are much more
11  experienced about EDR matters than I am, which is why
12  we sought out. And we -- we asked their subject matter
13  expert.
14          MR. STRICKLAND:  Yeah. I'm not -- I'm not --
15  this is not a loaded question. It's just -- it's -- is
16  this the first case that's gone to mediation that
17  you've done?
18          MR. ISHIDA:  Oh, no, no.
19          MR. STRICKLAND:  Okay. Well, in -- in those
20  other cases, wha- -- and I'm assuming most cases do
21  include a wrongful conduct investigation once
22  everybody's on notice of -- of what the allegations
```

1    are.
2              MR. ISHIDA:  Unfortunately, this is not the
3    first, and it's not one involving misconduct. But every
4    -- you know, we -- and that's why I sought out general
5    counsel, is I wanted to be very careful about this and
6    all cases, again.
7              MR. STRICKLAND:  Yeah. So I'm -- I'm curious,
8    what -- what provision of the Fourth Circuit's EDR plan
9    is OGC relying on to say that no party is entitled to
10   the report? Because the way I read it is slightly
11   different.
12             MR. ISHIDA:  Well, I don't think -- they just
13   -- the -- the general counsel had just told me that
14   she's -- she looked at our EDR plan, she didn't specify
15   what part of it. She just told me that she reviewed the
16   plan, here's her -- here's her advice from counsel.
17             MR. STRICKLAND:  That seems like a pragmatic
18   suggestion, as opposed to one that's based off the
19   terms of the EDR plan. Because the way I read it, and
20   this is, you know, in Chapter 9 and section four of
21   Chapter 10, it says that information and records,
22   that's a quote, is -- are shared based on a need to

LIMITED CONFIDENTIALITY

Transcript of 190117_1621_Limited Confidentiality

17

```
 1   know.
 2            So it would seem like the -- the -- there
 3   would have to be a determination that there was not a
 4   need to know on the part of the parties in order for --
 5   to not share information and records that are part of
 6   the -- both of those proceedings.
 7            MR. ISHIDA:  I -- I -- I'm not -- you know, I
 8   mean, I -- I -- I know the -- the provision you're --
 9   you're -- you're citing.
10            MR. STRICKLAND:  Yeah. I mean, if the report
11   is not information or a record, what is it. Well, I --
12   that's okay.
13            MS. STRICKLAND:  Yeah. We'll --
14            MR. STRICKLAND:  I -- we -- we can move on
15   from that.
16            MS. STRICKLAND:  Yeah.
17            MR. STRICKLAND:  I mean, it's -- it -- it --
18   it's more of just a point of curiosity. If AO has
19   suggested that the -- the report not be shared, it
20   would seem like there would be something definitive in
21   the pa- -- plan that they would say supports that.
22            MS. STRICKLAND:  The other thing -- and -- and
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Case 1:20-cv-00066-WGY   Document 255-1   Filed 06/29/23   Page 10 of 16

US00008218

1    of course, this is -- we're not trying to shoot the
2    messenger here. We know this is, you know -- you're --
3    this is what OGC recommended. But the idea that it
4    disincentivizes an informal resolution seems really
5    counterintuitive to me because it actually seems to
6    create an incentive to accelerate this.
7              Because neither side can find out the basic
8    facts and findings of what happened without it going to
9    a final hearing. So I'm not sure -- to the extent that
10   there is a pragmatic angle on what they're trying to
11   incentivize, it may be true as a general matter. But
12   I'm not sure that that is true in this particular case.
13             MR. ISHIDA: Well, I don't disagree with what
14   either of you has said. You know, I'm -- you know, I --
15   I'm left in the, I guess, impossible situation of
16   trying to discern the basis for OGC's advice to us. And
17   I don't -- certainly don't want to speak for them.
18             I mean, their -- their advice, their counsel
19   to us make a lot of sense, and we intend to follow it.
20   Does it, you know -- I mean, it -- are there issues and
21   difficulties? I think we can all agree that there are
22   different views on it they can take.

```
1              MR. STRICKLAND:  On interpreting the report?
2              MR. ISHIDA:  No. On -- on interpreting what
3    makes sense, and what procedure we, you know --
4    effectuates a good outcome. I mean, I think we can -- I
5    think we all -- you know, we can agree that the process
6    has -- is not perfect.
7              MS. STRICKLAND:  Right. Well, what --? I'm
8    sorry. I'm just going back to something a little bit
9    earlier that you said about Chapter 9. So when -- when
10   will Chapter 9 be acted upon?
11             MR. ISHIDA:  Well, unlike Chapter 10, there
12   are no deadlines in Chapter 9. But -- but, you know,
13   there -- there -- there is a good, practical reason for
14   deferring this. I mean, if -- if -- if you -- if you
15   look at judicial misconduct, there's a lot of times
16   where a complaint against a judge will be filed.
17             An EDR complaint and a judicial misconduct
18   complaint under the Judicial Conduct and Disability Act
19   typically, like -- like in this case, you've got two
20   different claims, two different tracks a lot of times
21   arising from the same set of fact.
22             And so what we've done in the past is we have
```

```
1    done what we are contemplating doing here. And that is,
2    you hold the judicial conduct piece of this in advance,
3    and you let the EDR piece just go forward.
4         MR. STRICKLAND: It's an uncomfortable
5    situation. I -- you know, because this is going to
6    require Caryn to mediate with somebody that she has
7    alleged engaged in wrongdoing. That's -- that's an
8    awkward thing to do. It's also going to require her to
9    come up with thoughts about how this could be resolved
10   not knowing whether the first assistant is going to
11   remain in his job and in that duty station.
12        MR. ISHIDA: Well, I think this is -- that
13   would be certainly be a matter that can be brought in
14   mediation.
15        MR. STRICKLAND: So it -- so -- so but -- but
16   in -- but how would that work in mediation? How would
17   you bring it up? Would you have to, essentially, try to
18   talk Tony into under- -- understanding that?
19        MR. ISHIDA: Well --
20        MR. STRICKLAND: Because that's been attempted
21   before.
22        MS. STRICKLAND: I --
```

```
1          MR. ISHIDA:  Well, but -- but now you've got
2   the assistance of a mediator.
3          MS. STRICKLAND:  Right. I mean, I guess for
4   me, there's -- there's a more -- there's a fundamental
5   question which really doesn't have to do with me at
6   all. But it has to do with the fact that the purpose of
7   the EDR plan, as I understand it, is not just to make
8   me whole, but it's to ensure a safe workplace
9   environment.
10         And it's disturbing to me the fact that these
11  allegations may be out there, and that whatever is in
12  the report isn't going to be acted on in a timely
13  manner out of a concern about its -- and -- and I could
14  be completely misunderstanding what you're saying. So I
15  apologize if I did.
16         But it sounds like the reasoning for not
17  giving me the re- -- or not giving Tony the report, or
18  whoever the report earlier to act on it is that I
19  wouldn't have the report. And to me, it seems like,
20  what about the interest in creating a safe working
21  environment? And the fact that all of this time has
22  passed, and allegations haven't been rectified or acted
```

```
 1   on.
 2          MR. ISHIDA:  Well, nothing could happen until
 3   we had a copy of the investigation report. And I think
 4   I would disagree with the sense that nothing will
 5   happen, or that somehow things are being delayed. I
 6   think we've tried to act expeditiously as we possibly
 7   could at every step of the proceeding. And now that we
 8   have the report, we're moving ahead.
 9          MS. STRICKLAND:  But it sounds like the -- the
10   interest in -- I -- OGC's -- whatever's underlying
11   their recommendation to keep the report from the
12   parties is outweighing the interest in expeditiously
13   imposing accountability.
14          MR. ISHIDA:  Well, I think there's a
15   difference between when that happens and ultimately
16   that it will happen. I think I can -- I can certainly
17   assure you that Chief Judge Gregory is going to -- is
18   going to hold -- if -- if -- if parties need to be held
19   accountable, he will certainly do that.
20          MR. STRICKLAND:  But -- but the basis for
21   holding people accountable is the report. I mean,
22   Chapter 9 is the pathway to accountability.
```

LIMITED CONFIDENTIALITY

```
1           CERTIFICATE OF TRANSCRIBER
2        I, Chris Naaden, a transcriber, hereby declare
3   under penalty of perjury that to the best of my ability
4   from the audio recordings and supporting information;
5   and that I am neither counsel for, related to, nor
6   employed by any of the parties to this case and have no
7   interest, financial or otherwise, in its outcome, the
8   above 61 pages contain a full, true and correct
9   transcription of the tape-recording that I received
10  regarding the event listed on the caption on page 1.
11
12           I further declare that I have no interest in
13  the event of the action.
14
15
16           [signature]
17           February 10, 2023
18           Chris Naaden
19
20
21
22
```