# EXHIBIT KK

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF NORTH CAROLINA

3                   ASHEVILLE DIVISION

4    _____

5    CARYN DEVINS STRICKLAND,        )

6              Plaintiff,            )

7                                    )

8    -vs-                            )   Case No. 1:20-cv-00066

9                                    )

10   UNITED STATES, et al.,          )

11             Defendants.           )

12   _____

13

14              *** CONFIDENTIAL ***

15          SUBJECT TO PROTECTIVE ORDER

16                  ECF NO. 183

17

18      DEPOSITION OF THE HONORABLE ROGER L. GREGORY

19             10:02 a.m. to 10:54 a.m.

20                  May 16, 2023

21               Richmond, Virginia

22

23

24   Job No. 49825

25          REPORTED BY:  Julia A. Bammel, RPR, CSR

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

info@cavalier-reporting.com
(800) 972-1993

1          Deposition of THE HONORABLE ROGER L. GREGORY,

2    taken and transcribed on behalf of the Plaintiff, by and

3    before Julia A. Bammel, RPR, CSR, Notary Public in and for

4    the Commonwealth of Virginia at large, pursuant to the

5    Federal Rules of Civil Procedure and by Notice to Take

6    Deposition, commencing at 10:02 a.m., May 16, 2023, at

7    919 East Main Street, Richmond, Virginia.

8

9

10

11   APPEARANCES OF COUNSEL:

12

13        LAW OFFICE OF COOPER STRICKLAND

14        P.O. Box 92

15        Lynn, North Carolina  28750

16        (828) 817-3703

17        cooper.strickland@gmail.com

18   BY:  COOPER J. STRICKLAND, ESQUIRE

19        Counsel on behalf of the Plaintiff

20

21

22

23

24

25

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

info@cavalier-reporting.com
(800) 972-1993

```
 1   APPEARANCES OF COUNSEL CONTINUED:

 2

 3        UNITED STATES DEPARTMENT OF JUSTICE

 4        Civil Division

 5        1100 L Street NW

 6        Washington, District of Columbia  20005

 7        (202) 305-7664

 8        joshua.kolsky@usdoj.gov

 9        rachael.westmoreland@usdoj.gov

10        danielle.young2@usdoj.gov

11   BY:  JOSHUA M. KOLSKY, ESQUIRE

12        RACHAEL LYNN WESTMORELAND, ESQUIRE

13        DANIELLE WOLFSON YOUNG, ESQUIRE

14        Counsel on behalf of the Defendants

15

16        ADMINISTRATIVE OFFICE OF THE U.S. COURTS

17        Office Of General Counsel

18        1 Columbus Circle NE

19        Washington, District of Columbia  20002

20        (202) 502-1761

21        kristin-mannherz@ao.uscourts.gov

22     BY: KRISTIN P. MANNHERZ, ESQUIRE

23        Counsel on Behalf of the Federal Judiciary

24

25   Also Present:  Caryn Strickland
```

www.cavalier-reporting.com             Cavalier Reporting & Videography        info@cavalier-reporting.com
(434) 293-3300                              Reported by Julia A Bammel                   (800) 972-1993

1              T A B L E   O F   C O N T E N T S

2

3

4    WITNESS:  THE HONORABLE ROGER L. GREGORY

5       Examination by Mr. Strickland....................  6

6

7

8

9

10             M A R K E D   E X H I B I T S

11

12   Plaintiff's Exhibit 72
        E-mail with attached September 10, 2018, Request
13      for Disqualification
        US00000466 – US00000467...........................  9
14

15   Plaintiff's Exhibit 73
        E-mail with attached February 24, 2019, Renewed
        Request for Disqualification
16      US00001498 – US00001502...........................  10

17   Plaintiff's Exhibit 74
        E-mail thread
18      US00000852 – US00000855...........................  16

19   Plaintiff's Exhibit 75
        Page 55 of Defendants' privilege log..............  17
20

     Plaintiff's Exhibit 76
21      E-mail with attached request for counseling and
        report of wrongful conduct
22      US00000500 – US00000507...........................  25

23

24

25

www.cavalier-reporting.com                    Cavalier Reporting & Videography                    info@cavalier-reporting.com
(434) 293-3300                                    Reported by Julia A Bammel                                    (800) 972-1993

```
 1              R E F E R E N C E D   E X H I B I T S

 2

 3
       Plaintiff's Exhibit 7
 4        E-mail thread
          US00001382 - US00001383........................... 30
 5
       Plaintiff's Exhibit 24
 6        E-mail thread and Counselor's Report with
          attached exhibits
 7        US00002293 and US00001244 - US00001311............ 28

 8     Plaintiff's Exhibit 41
          E-mail with attached Supplement to Mediation
 9        Request with attached exhibits
          US00003247 - US00003294........................... 33
10

11

12

13

14

15                          *  *  *  *  *

16

17

18

19

20

21

22

23

24

25
```

Case 1:20-cv-00066-WGY   Document 255-2   Filed 06/29/23   Page 6 of 41

www.cavalier-reporting.com                *Cavalier Reporting & Videography*              *info@cavalier-reporting.com*
(434) 293-3300                               *Reported by Julia A Bammel*                              (800) 972-1993

1    (10:02 a.m., May 16, 2023)

2

3              THE HONORABLE ROGER L. GREGORY

4           was sworn and testified as follows:

5                      EXAMINATION

6    BY MR. STRICKLAND:

7        Q     Please state your full name and official title

8    for the record.

9        A     Roger Lee Gregory, Chief Judge of the United

10   States Court of Appeals for the Fourth Circuit.

11       Q     Thank you.

12             My name is Cooper Strickland, and I represent

13   the plaintiff.  She's here with me, Caryn Strickland.

14   Before we start, I want to thank you for your time this

15   morning.  I also want to confirm that my questions will be

16   limited to the topics outlined in the Court's order

17   permitting this deposition.

18             I'll try my best to complete this deposition as

19   quickly as possible.  If at any time you need a break, or

20   for that matter, anyone else, just please let me know.

21             And so just to start with some just preliminary

22   questions, how did you prepare for this deposition?

23       A     I prepared by looking at the documents that I

24   thought that were pertinent with -- to the disqualification

25   decision.

Case 1:20-cv-00066-WGY   Document 255-2   Filed 06/29/23   Page 7 of 41

www.cavalier-reporting.com                    Cavalier Reporting & Videography              info@cavalier-reporting.com
(434) 293-3300                                     Reported by Julia A Bammel                            (800) 972-1993

1      Q     Okay.  Could you just give a couple examples?

2      A     A couple examples:  a document dated

3   September 10th, 2018, that was a sort of grievance; and

4   then a document also stated -- dated September 10th, 2018,

5   and it was a request for disqualification; a document that

6   was dated February 22nd, 2019, that was dated -- that was

7   designated as a supplement to a request for mediation; and

8   then there was a document on February the 24th, 2019, that

9   was called renewed request for disqualification.

10     Q     Okay.

11     A     Yeah.

12     Q     Thank you.

13           Did you speak to anybody to prepare for the

14   deposition?

15     A     My counsel.

16     Q     Okay.  And did you look at anything else, any

17   other documents or information?

18     A     Well, I quickly went over the, I think about

19   500, close to, counts in the complaint.

20     Q     Okay.  All right.  So you looked at the

21   complaint.  All right.

22           So just moving on from there, were you the

23   Chief Judge of the Fourth Circuit in 2018 and 2019?

24     A     Yes.

25     Q     Okay.  As Chief Judge, did you have an official

Case 1:20-cv-00066-WGY   Document 255-2   Filed 06/29/23   Page 8 of 41

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1    role in the Fourth Circuit EDR proceedings?

2         A     Yes.

3         Q     Okay.  Were you aware of the EDR proceeding for

4    Caryn Devins Strickland from the Federal Defender Office

5    for the Western District of North Carolina?

6         A     Yes.

7         Q     Did you have an official role in Plaintiff's

8    EDR proceeding?

9         A     Yes.  I think I would call it official, yes.

10        Q     And just if you could describe what your role

11   was in the EDR proceeding.

12        A     My role was to make sure that I would

13   investigate the facts, or see that the facts were done, and

14   then -- in terms of in the proceeding or what I did here?

15        Q     Generally --

16        A     Well, generally, that's what I would normally

17   do, and then it's left to, then, the EDR person, and then

18   the person who does the counseling, if that's necessary,

19   and then mediation, if necessary, and then a hearing, if

20   necessary.  And then my role is different based on how far

21   it proceeds.  Yes.

22        Q     Thank you.

23              Is it fair to say that the EDR plan in this

24   case, the 2013 EDR plan, defines the Chief Judge's role for

25   EDR proceedings?

www.cavalier-reporting.com                Cavalier Reporting & Videography              info@cavalier-reporting.com
(434) 293-3300                                   Reported by Julia A Bammel                          (800) 972-1993

```
 1        A      I would say yes.

 2        Q      Thank you.

 3               I want to show you what we're going to mark as

 4   Exhibit 72.  It's Bates Number US-466, and it is

 5   Plaintiff's request to disqualify the Federal Defender

 6   dated September 10th, 2018, which is a document you

 7   referenced just a few minutes ago.

 8               (Plaintiff's Exhibit 72 marked.)

 9   BY MR. STRICKLAND:

10        Q      You tell me if you're --

11        A      Oh, yeah, I'm familiar with it.  Yeah.

12        Q      Okay.  All right.

13        A      Yes.

14        Q      All right.  And so you're familiar with this

15   e-mail?

16        A      I am.

17        Q      Okay.  Does it appear to be an e-mail from

18   Plaintiff addressed to you?

19        A      Yes.

20        Q      Okay.  Does it look like an accurate copy?

21        A      Yes.

22        Q      Do you see -- some of these are going to be a

23   little bit repetitive based off of what you said, but just

24   to confirm, do you see where there's a redaction followed

25   by ca4.uscourts.gov?
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1        A     Yes.

 2        Q     Okay.  If Defendants stated in their privilege

 3   log, "Contact information for Chief Judge Gregory and the

 4   Circuit Executive redacted," would that seem accurate to

 5   you?

 6        A     Yes.

 7        Q     Okay.  To the best of your knowledge, did you

 8   receive the disqualification request attached to this

 9   e-mail on September 10th, 2018?

10        A     Thereabouts, yes.  Yeah.

11        Q     All right.  I'm going to show you what we're

12   going to mark as Exhibit 73, and this is US Bates Number

13   1498, and it is Plaintiff's request to disqualify the

14   Federal Defender dated February 24th, 2019.

15              (Plaintiff's Exhibit 73 marked.)

16   BY MR. STRICKLAND:

17        Q     Are you familiar with this e-mail?

18        A     Yes.

19        Q     Does it look like an accurate copy?

20        A     It does.

21        Q     Is it addressed to you?

22        A     Yes, it is.

23        Q     Okay.  Is this Plaintiff's request to

24   disqualify the Federal Defender dated February 24th, 2019?

25        A     Yes.
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1    Q    If Defendants stated in their privilege log,

2    "Contact information for the Circuit Executive and the

3    Chief Judge of the Fourth Circuit redacted," would that

4    seem accurate to you?

5    A    Yes.

6    Q    To the best of your knowledge, did you receive

7    Plaintiff's request to disqualify the Federal Defender on

8    February 24th, 2019?

9    A    Thereabouts, yes.

10   Q    All right.  Just give me one moment.  All

11   right.  Did you discuss Plaintiff's request for

12   disqualification dated September 10th, 2018, with anyone?

13   A    Yes.

14   Q    Okay.  With whom did you discuss the request?

15   A    James Ishida.

16   Q    Was anyone else present?

17   A    No.

18   Q    When was that discussion?

19   A    Well, I would have to say it was there about

20   the time -- which document?  You mean the first one?

21   Q    Yes, sir.

22   A    The September document?

23   Q    Yes, sir.  September 10th.

24   A    It was somewhere about that time,

25   September 10th.

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1      Q      Okay.

2      A      Yes.

3      Q      All right.  Thank you.

4             What was the substance of that discussion?

5      A      The substance?  The substance was to look at

6    what was stated as the grounds for the disqualification.

7    The disqualification one you're talking about,

8    September 10th; right?

9      Q      Yes, sir.  Yes, Your Honor.

10     A      The grounds of it.

11     Q      Okay.

12     A      And it was something that I would have to

13   decide.

14     Q      Okay.  Did you have any other discussions

15   regarding that disqualification request?

16     A      With James?

17     Q      Or anyone else.

18     A      No one else.

19     Q      Okay.  Did you ask James Ishida to discuss the

20   disqualification request with anyone?

21     A      No.

22     Q      To your knowledge, did James Ishida discuss the

23   disqualification with anyone?

24     A      Yes.

25     Q      All right.  Can you tell me who that was and --

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1   who he had a conversation with about the disqualification

2   request?

3       A    Persons at the AO.

4       Q    Okay.

5       A    AO meaning Administrative Offices of the United

6   States Court.

7       Q    Do you know specific names of anyone he spoke

8   with?

9       A    In terms of what he told me or --

10      Q    Yes, sir.

11      A    I'm not pronouncing this right, but "Shorn,"

12  "Shoren." S-o-h-r-n, something like that.  Right.

13      Q    Okay.

14      A    Yeah.

15      Q    I think that's Sohrn?

16      A    Sohrn, yes.

17      Q    Okay.  Would those discussions that he had been

18  around that September 2018 time period?

19      A    Probably then and also later as well in terms

20  of February, around February as well, when the renewed

21  request was made.

22      Q    Okay.

23      A    Yeah.

24      Q    All right.  Are you aware of any other

25  communications regarding this disqualification request?

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

info@cavalier-reporting.com
(800) 972-1993

1      A      No, other than with counsel for the AO that I

2   know that he told me.  I know I had none.

3      Q      Okay.

4      A      In terms of what he told me, none that I know

5   of, no.

6      Q      All right.  To your knowledge, were any of your

7   discussions or communications in writing with James Ishida?

8      A      No, they were not.

9      Q      Okay.  And I think I know the answer to this.

10  To your knowledge, were any of his communications with

11  others in writing?

12     A      Yes.  I think he did have some writing

13  communications.

14     Q      Is it fair to say that you wouldn't necessarily

15  be able to recall what those specific --

16     A      They were with counsel.

17     Q      Okay.  All right.

18     A      You're talking about disqualification; right?

19     Q      Yes, sir.  Yes, sir.  Yes, Your Honor.

20            Just -- what would you prefer I --

21     A      I'm comfortable with whatever you think that's

22  appropriate.

23     Q      Okay.  Did you discuss Plaintiff's request for

24  disqualification dated February 24th, 2019, with anyone?

25     A      Yes.  James Ishida.

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1        Q      Did you discuss it with anyone beyond James

 2   Ishida?

 3        A      No.

 4        Q      Was anyone else present?

 5        A      When I spoke to James?

 6        Q      (Nodding head.)

 7        A      No.  We weren't even present.  Most of the time

 8   it was by phone.

 9        Q      Okay.  When was that discussion?

10        A      Again, it would have to be on or about that

11   time.  Yeah.

12        Q      All right.  So around February 2019?

13        A      Yes.

14        Q      What was the substance of that discussion?

15        A      That discussion would be in terms of looking at

16   what was different, also in terms of making a decision, and

17   that was it.  It was my decision to make.  But I don't

18   recall anything that was specifically said other than the

19   fact that we had to deal with this because that's part of

20   my job, to make a decision.  But other than that -- of

21   course, he relayed information, but I didn't -- I made the

22   decision.

23        Q      All right.  Just to confirm, did you have any

24   other discussions with regard to the February 2019

25   disqualification request?
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1        A      Not that I recall, no.

 2        Q      Were any of your communications or discussions

 3   with James in writing regarding the --

 4        A      Disqualification?  No.

 5        Q      What was your decision regarding Plaintiff's

 6   request for disqualification dated September 10th, 2018?

 7        A      Denied, at that time.  Yes.  Denied.

 8        Q      Are you aware of how the decision regarding

 9   Plaintiff's request for disqualification was communicated

10   to the plaintiff?  And that is specifically the September

11   2018 disqualification request.

12        A      Well, I assume it would have to be James,

13   because that's the one I told.

14        Q      Okay.

15        A      He was -- he made communications, James.

16        Q      All right.  I'm going to show you what we're

17   going to mark as Plaintiff's Exhibit 74, and this is

18   US Bates Number 852, and it's an e-mail chain.

19               (Plaintiff's Exhibit 74 marked.)

20               THE WITNESS:  Thank you.

21               Okay.  All right.

22   BY MR. STRICKLAND:

23        Q      Okay.  Are you familiar with this e-mail?

24        A      No, not really.

25        Q      Okay.  Do you have any reason to doubt that it
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1    would be an accurate copy of an e-mail?

 2         A    I can't answer that because I'm not familiar

 3    with it.

 4         Q    If Defendants stated in their privilege log,

 5    "Contact information for the Circuit Executive redacted,"

 6    would that seem accurate to you?

 7                   MR. KOLSKY:  Objection.  Lacks foundation.

 8                   MR. STRICKLAND:  This is an excerpt from the

 9    Defendants' privilege log.  We'll mark this as Exhibit 75.

10                   (Plaintiff's Exhibit 75 marked.)

11    BY MR. STRICKLAND:

12         Q    And I'll just draw your attention to the

13    bottom-line row.  It says US-852 --

14         A    Yes.

15         Q    -- on the privilege log.

16         A    Uh-huh.

17         Q    It's the very last line.  And does that match

18    the Bates number on that Exhibit 74?

19         A    Number 74.  What am I matching on this?

20         Q    It's the very bottom row.

21         A    Bottom row.

22         Q    Yes, sir.

23         A    Okay.

24         Q    So all the way over on the left column it has a

25    Bates number, and it says US-852.
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1        A      Yes.  I see that, yes.

 2        Q      Okay.  And then if you go all the way over to

 3   the far right, it has a box of information, and it says --

 4        A      Yeah, I see that.  Right here?

 5        Q      Yeah.

 6        A      Okay.

 7        Q      All right.  So does this look like an e-mail

 8   involving James Ishida?

 9               MR. KOLSKY:  Objection.  Lacks foundation.

10               THE WITNESS:  It purports to be, but I can't

11   verify, but it purports to be.  It's in writing, and that's

12   what it says, but -- yeah.

13   BY MR. STRICKLAND:

14        Q      All right.

15        A      It's not to or from me, but ...

16        Q      Do you have any reason to doubt that this would

17   be an accurate copy of an e-mail involving James Ishida?

18               MR. KOLSKY:  Objection.  Lacks foundation.

19               THE WITNESS:  Well, any reason to doubt, I

20   don't know.  I mean, it's difficult to say whether I have a

21   reason.  Right now I don't know anything in terms of

22   doubting it one way or the other.  I'm not saying it's not

23   accurate, but I'll just say that I see it, and it's there,

24   not to or from me, but I don't know -- I can't state as a

25   fact witness about doubts.
```

Case 1:20-cv-00066-WGY   Document 255-2   Filed 06/29/23   Page 19 of 41

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1    BY MR. STRICKLAND:

 2        Q     All right.  Well, I won't belabor the point.

 3              If you'll turn to the second page, which is

 4    Bates Number 853.  If you can just look at the first -- or

 5    it's the second paragraph.  It has four lines in it.

 6        A     Uh-huh.

 7        Q     If you'll read -- review that paragraph.

 8        A     I read it.  "Notwithstanding," the one that

 9    started with that?  Yeah, I read it.

10        Q     Yes, Your Honor.

11              Okay.  And then I'm going to read the final two

12    sentences.  It says, "Kim and I also spoke to Chief Judge

13    Gregory the other day where he informed me that he intends

14    to deny your request to disqualify Tony Martinez.  We are

15    preparing an order to that effect."

16              Do you see that?

17        A     I do.

18        Q     Does that statement accurately reflect your

19    ruling on the September 2018 disqualification request?

20        A     That I'm -- denied it, yes.  That I denied it.

21    That's all that it reflects.

22        Q     Was James Ishida authorized to communicate this

23    information on your behalf to the plaintiff?

24        A     Yes.

25        Q     Did you ever decide Plaintiff's renewed request
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1    for disqualification dated February 24th, 2019?

 2         A     Yes.

 3         Q     Did you ever provide a decision to the

 4    plaintiff with that ruling?

 5         A     A decision?  The decision, yes, to deny it.

 6         Q     How was that communicated to --

 7         A     Through James Ishida, to him for

 8    Ms. Strickland.

 9         Q     Were there any written orders memorializing

10    your decision regarding disqualification?

11         A     No.

12         Q     Why did you not issue a written order regarding

13    your decision?

14         A     It wasn't necessary, nor required.

15         Q     All right.  What were your --

16         A     In particular, the confidential was, as I

17    recall, paramount to counsel, so the less you have, the

18    better there.

19         Q     Okay.  So it was confidential --

20         A     Confidentiality.  You know, he told her that he

21    was under strict confidentiality.  So was I.  So that's why

22    I said, it was not required or necessary.

23         Q     All right.  What were your reasons for denying

24    Plaintiff's disqualification request?

25         A     Huh.  Well, that's a long answer, I suppose.
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1   There are several.  First of all, the EDR plan says clearly

2   that the employee shall -- mandatory language -- shall put

3   forth all facts in support of the disqualification.  So the

4   short answer is that there were no facts submitted or

5   proffered that would warrant disqualification of Tony

6   Martinez.

7           And it was -- I had to take this as a universal

8   disqualification since it didn't say which area of it.  So

9   I took it by pieces.  There's the EDR, and then there's the

10  counseling, then, if necessary, a full hearing, and, if

11  necessary, an actual review by the Judicial Counsel.

12          It seemed to me that the only grounds that was

13  stated in the letter was the fact that he is a violator or

14  somebody who's -- I'm accusing of something, but that

15  almost is always the case because the appointing

16  authority -- there wouldn't be a dispute if they didn't

17  disagree with something; otherwise, they wouldn't be there.

18          So that's garden-variety, and that person --

19  that party is never neutral because they're defending,

20  obviously, the unit or the appointing authority in it, so

21  that's not enough.  So I saw nothing in terms of -- of

22  course, first was the question of whether or not he handled

23  the EDR.  He did not.  James Ishida was handling the EDR.

24          Would he be dealing with counseling?  He would

25  not be.  The counseling -- "he," meaning Tony Martinez,

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

info@cavalier-reporting.com
(800) 972-1993

 1    would not be.  If it went to mediation, he would not be

 2    handling the mediation.

 3              Another question about, "Well, I don't want him

 4    investigating," well, I had my own investigation

 5    independent of him.  He wasn't the investigator.  He would

 6    be a witness.

 7              So all of those reasons.  To disqualify the

 8    appointing authority is an unusual -- or rare.  Yes, I

 9    understood I had the authority to disqualify him.  No

10    question about that.  I do.  But in looking at it, you look

11    at the whole context of it.

12              And based on her letter -- I'm sorry --

13    Ms. Strickland's letter on September 10, in terms of saying

14    what her grievance was, it's clearly -- in the documents,

15    it clearly said that she and Mr. Martinez were engaged in

16    negotiating at that point.  Not that she agreed with that,

17    no meeting of the minds, but they were.

18              So there was no allegation that he was

19    stonewalling, would not meet with her, would not negotiate.

20    There was nothing that he would be a mediator, nothing that

21    he would have any fact-finding or be involved in the

22    investigation or those things.  Those are the kinds of

23    things you would look for if there was a situation.  None

24    of them were there.

25              That's why, based on what -- as was required,

Case 1:20-cv-00066-WGY  Document 255-2  Filed 06/29/23  Page 23 of 41

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1    you shall put forth the facts, because that's what I'm

2    looking at.  I'm not making a merit decision.  I'm looking

3    at the facts you proffered, and the proffered facts did not

4    justify disqualification.

5        Q     All right.  Have you ever been presented a

6    disqualification request before in EDR?

7        A     Have I?  No, I have not.

8        Q     Is there -- and, again, I know this can be

9    somewhat repetitive.  Is there anything else you'd like to

10   add regarding the basis for your decision?

11       A     Well, of course, I gave you the interrogatory

12   in this case, so to the extent I have excluded something

13   there, I would incorporate it by reference as well.  But

14   it's -- at this point, I think that seems to be most of it

15   in terms of -- because the facts were so -- presented were

16   very few, and it basically all dealt with the fact that

17   he's a violator, and, therefore -- and another thing too.

18           It suggested, I think -- suggested that "I

19   don't want to be made to sit down and negotiate with him,"

20   but the rules clearly say you don't have to do any

21   face-to-face counseling.  It's and/or.  You don't have to

22   meet with anyone in terms of what -- face someone.  It

23   could be meeting -- a counselor can meet with, and together

24   or separately.

25           So even those things -- so I saw nothing -- I

www.cavalier-reporting.com          Cavalier Reporting & Videography          info@cavalier-reporting.com
(434) 293-3300                         Reported by Julia A Bammel                      (800) 972-1993

```
1   probably shouldn't say nothing, but I saw nothing that

2   warranted disqualification.

3        Q    Okay.  And just to clarify on that point, you

4   would agree that counseling and mediation were required

5   phases of EDR at that time?

6        A    Were required?  No.  I don't think it was

7   necessarily required.  No.  You could -- you could be

8   finished with EDR, and you could go straight -- you know,

9   it's EDR.  I mean, EDR counseling could be the end of it

10  and never get to mediation.

11       Q    So you could -- if you were a complainant, you

12  could skip counseling and mediation and just go straight to

13  a final hearing?

14       A    No.  No.  No.  I'm not saying that.  No.

15       Q    All right.  And so as far as -- just to clarify

16  what you were just talking about, you made it more in the

17  sense of like communications could occur over phone in

18  order to perform counseling or mediation.  They wouldn't

19  necessarily have -- the parties wouldn't necessarily have

20  to be in the same room?

21       A    They wouldn't have to be on the phone at the

22  same time either.  You talk to one side, what they want,

23  and I think -- it seemed like they were -- was engaged in

24  that, by her letter, already.  Not that they came to a

25  meeting of minds.  That's why we had -- the actual EDR was
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

 1    filed.

 2        Q    All right.  What other information did you

 3    consider in denying the disqualification request?

 4        A    I considered the -- what was submitted on

 5    February the 22nd.  It's labeled as the supplement for a

 6    request for mediation as well, for the -- you know, for

 7    that.

 8        Q    Any other documents?

 9        A    Documents?  Well, there was a lot of documents.

10    It was a long -- it was like, I think, 23 pages or

11    something like that.  It was a lot.

12        Q    So maybe I'll go through a few of them.  It's

13    ones that we have discussed already, but --

14        A    Okay.

15        Q    I'm going to show you what we are going to mark

16    as Plaintiff's Exhibit 76.  And this is US Bates

17    Number 500, and it is Plaintiff's request for counseling

18    and report of wrongful conduct.

19            (Plaintiff's Exhibit 76 marked.)

20            THE WITNESS:  Yes.  Yes.  The September 10th,

21    yes.  Okay.

22    BY MR. STRICKLAND:

23        Q    All right.  Are you familiar with this --

24        A    Oh, yes.

25        Q    -- e-mail and document?

www.cavalier-reporting.com                Cavalier Reporting & Videography              info@cavalier-reporting.com
(434) 293-3300                              Reported by Julia A Bammel                   (800) 972-1993

1      A      Yes.

2      Q      Does this document appear to be a request for

3   counseling and report of wrongful conduct filed by

4   Plaintiff?

5      A      Yes.

6      Q      All right.  Is it dated September 10th, 2018?

7      A      Yes.

8      Q      Does it look like an accurate copy?

9      A      Yes.

10     Q      Is that James Ishida's name on the e-mail?

11     A      Yes.

12     Q      Okay.  Do you see where there's a redaction

13   followed by ca4.uscourts.gov?

14     A      Yes.

15     Q      If Defendants stated in their privilege log,

16   "Contact information for the Circuit Executive redacted,"

17   would that seem accurate to you?

18     A      Yes.

19     Q      Does this e-mail reflect that Mr. Ishida

20   received Plaintiff's request for counseling and report of

21   wrongful conduct on September 10th, 2018?

22     A      Yes.

23     Q      This actually may -- let me get -- give me one

24   second.

25              I'll just -- I'll point out for you that on the

www.cavalier-reporting.com          Cavalier Reporting & Videography          info@cavalier-reporting.com
(434) 293-3300                        Reported by Julia A Bammel                        (800) 972-1993

```
 1   very first page, US Bates Number 500, there's a date that

 2   says September 12th, 2019.

 3       A     Uh-huh.

 4       Q     My understanding, there was an e-mail merge.

 5       A     There was.

 6       Q     Okay.  And --

 7             MR. KOLSKY:  And I'm sorry.  I think you said

 8   September 12, 2019.

 9             MS. STRICKLAND:  June.

10             MR. STRICKLAND:  I'm sorry.  June 12, 2019.

11   Thank you.

12   BY MR. STRICKLAND:

13       Q     But if you look on the next page, US-501, you

14   can see at the top there's a date, September 10, 2018; is

15   that correct?

16       A     That's correct.

17       Q     Okay.  Was James Ishida the EDR Coordinator for

18   this EDR proceeding?

19       A     Yes.

20       Q     Did Mr. Ishida provide you the request for

21   counseling and report of wrongful conduct attached to this

22   e-mail?

23       A     Yes.

24       Q     Okay.

25       A     So we discussed it.  Yes.
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1      Q      When did you receive the request for counseling

 2   and report of wrongful conduct?

 3      A      I can't say exactly when I received it the

 4   first time, no, but it should have been on or about the

 5   time in September, so ...

 6      Q      All right.  Did you consider Plaintiff's

 7   September 10, 2018, request for counseling and report of

 8   wrongful conduct in making your decision on her

 9   disqualification request?

10      A      Yes, I did, because it's -- it took a while.

11   Also, I don't think we mentioned another document in terms

12   of, also, I looked at the report from the -- but that was

13   later on -- but the report from the factual findings.  But,

14   yes, I did consider this.  Yes.

15      Q      Thank you.

16             All right.  I'm going to show you what has been

17   previously marked as Exhibit 24 from the deposition of

18   Heather Beam that was previously taken in this case.  It's

19   Bates Number US-2293, and then the next page starts at

20   1244, and this is Heather Beam's investigation report dated

21   January 11th of 2019.  It's also referred to as the

22   Counselor's Report.

23             (A copy of Plaintiff's Exhibit 24 was presented

24             to the witness for reference.)

25             THE WITNESS:  Uh-huh.  I'm sorry.  Go ahead.
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
1    BY MR. STRICKLAND:

2         Q     Are you familiar with this e-mail?

3         A     Yes.

4         Q     Okay.  Does it appear to be an e-mail from

5    Heather Beam with her investigation report or Counselor's

6    Report?

7         A     Yes.

8         Q     Okay.  Does it look like an accurate copy?

9         A     It does, yes.

10        Q     Is that your name and e-mail address in the

11   cc line?

12        A     Yes.

13        Q     Okay.  Does this e-mail accurately reflect that

14   you received Heather Beam's investigation report on

15   January 11th, 2019?

16        A     Yes.  I would say thereabout, yeah.

17        Q     Did you consider the findings of Heather Beam's

18   January 11th, 2019, investigation report in making your

19   decision on her disqualification request, Plaintiff's

20   disqualification request?

21        A     Yes.  That was a factor because it was ongoing.

22   Absolutely.  Yes.

23        Q     Thank you.

24              I'm going to show you what has been previously

25   marked as Plaintiff's Exhibit 7 from the deposition of
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

```
 1   James Ishida that was previously taken in this case.

 2        A    Uh-huh.

 3        Q    It's US Bates Number 1382, and it's Heather

 4   Beam's January 13th, 2019, e-mail recommending

 5   disqualification.

 6             (A copy of Plaintiff's Exhibit 7 was presented

 7             to the witness for reference.)

 8             THE WITNESS:  Okay.

 9   BY MR. STRICKLAND:

10        Q    Are you familiar with this e-mail?

11        A    I can't say that I am.

12        Q    Having read the e-mail now, was the substance

13   of it ever communicated to you?

14        A    I don't recall that.  I can't flat-out deny it,

15   but I ...

16        Q    I just want to walk through certain components

17   of this e-mail.  On the very first page, the 1382 --

18        A    Uh-huh.

19        Q    -- on the very bottom of the page, I'm going to

20   read what's -- it's James e-mailing Heather on January 13,

21   2019.

22        A    Uh-huh.

23        Q    It says, "I'd like your thoughts on whether you

24   think Tony should be disqualified from participating in the

25   EDR case."
```

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1          Do you see that?

2     A     Yes, I see that.

3     Q     And then I would like to go up to the next

4 block, which is January 13, 2019, 5:53 p.m.  It's from

5 Heather Beam back to James, and it says -- I'm just going

6 to read it into the record and see if you can confirm that

7 this is what it says.

8          "Hey, James.  I truly believe Tony is biased in

9 this case involving JP and Caryn as far as the sexual

10 harassment is concerned.  From my conversations with him, I

11 know he feels Caryn is attempting to exploit this situation

12 to get the transfer to Asheville.  However, it has created

13 a bias in him to look at this case from a neutral

14 perspective.  I also believe he lacks the experience and

15 understanding of exactly how this process works.  I am

16 concerned he could cause more damage if he were involved in

17 the process at this point.

18          "Caryn had requested Tony be disqualified as

19 she felt she was retaliated against after she submitted her

20 claim of wrongful conduct.  Although retaliation in my

21 investigation was unfounded, I still think in a good faith

22 effort to resolve this, the Circuit should consider

23 disqualifying him based on the contentious nature of the

24 current situation."

25          Do you see that in the e-mail?

www.cavalier-reporting.com                Cavalier Reporting & Videography              info@cavalier-reporting.com
(434) 293-3300                              Reported by Julia A Bammel                         (800) 972-1993

1    A    Oh, yeah.  Yeah.  That's what it says.

2    Q    All right.  And then I'll --

3    A    It's dated January the 13th.  Yeah.

4    Q    And going to the top block now in this chain,

5    it's from James Ishida to Heather Beam, January 13, 2019,

6    6:55 p.m., and I'm just going to read from it.

7         It says, "Well said.  Kim and I have a meeting

8    tomorrow with Chief Judge Gregory at 2 p.m."

9    A    Uh-huh.  Yes.  That's what it says.

10    Q    All right.  So to confirm, you never received

11    this e-mail?  It was never forwarded to you?

12    A    I said I don't recall it, but I do know this,

13    that this was -- is dated two days after -- no.  Scratch

14    that.  No.  I don't recall it.  I don't recall it.

15    Q    And just to confirm, no one ever communicated

16    the substance of this e-mail to you?

17         MR. KOLSKY:  Objection.  Asked and answered.

18         THE WITNESS:  No, that I know of.  Not that I

19    know of.

20    BY MR. STRICKLAND:

21    Q    And just to confirm, did you consider Heather

22    Beam's January 13, 2019, e-mail recommending that the

23    Defender be disqualified in making your decision on

24    Plaintiff's disqualification request?

25    A    Did I consider it, her opinion?

Case 1:20-cv-00066-WGY   Document 255-2   Filed 06/29/23   Page 33 of 41

www.cavalier-reporting.com                Cavalier Reporting & Videography                info@cavalier-reporting.com
(434) 293-3300                              Reported by Julia A Bammel                        (800) 972-1993

1      Q    Heather Beam's opinion.

2      A    No, I did not, because it wasn't her job to

3 make the decision, nor was I counseling her -- or sought

4 counsel from her to help in that decision, so, no, I

5 didn't.

6      Q    So you did not -- you did not direct James

7 Ishida to request Heather's opinion?

8      A    No, I did not.

9      Q    Do you have any reason to know why James would

10 have asked for her opinion?

11      A    I don't know.  You have to ask him that.

12      Q    Okay.  I'm going to show you what has

13 previously been marked as Plaintiff's Exhibit 41 from the

14 deposition of Ed Smith that was previously taken in this

15 case.  It is US Bates Number 3247, and it is Plaintiff's

16 Supplement to Mediation Request dated February 22nd, 2019.

17           (A copy of Plaintiff's Exhibit 41 was presented

18           to the witness for reference.)

19           THE WITNESS:  Yeah.  I got it.  Yeah.  Go

20 ahead.

21 BY MR. STRICKLAND:

22      Q    Are you familiar with this e-mail and document?

23      A    Yes, I am.

24      Q    Does this appear to be an e-mail with

25 Plaintiff's supplement to her request for mediation?

Case 1:20-cv-00066-WGY   Document 255-2   Filed 06/29/23   Page 34 of 41

www.cavalier-reporting.com
(434) 293-3300

*Cavalier Reporting & Videography*
*Reported by Julia A Bammel*

info@cavalier-reporting.com
(800) 972-1993

1      A      Yes, it does.

2      Q      Does it look like an accurate copy?

3      A      It does.

4      Q      Is that your name in the cc line on the e-mail?

5      A      Yes.

6      Q      If Defendants stated in their privilege log,

7   "Contact information for the Circuit Executive and the

8   Chief Judge of the Fourth Circuit redacted," would that

9   seem accurate to you?

10     A      Yes.

11     Q      Does this e-mail accurately reflect that you

12  received Plaintiff's supplement to her mediation request on

13  September 24th, 2019?

14     A      Yes.  Thereabouts, yes.

15     Q      Thank you.

16            Did you consider Plaintiff's February 22nd,

17  2019, supplement to her mediation request in making your

18  decision on her -- on Plaintiff's disqualification request?

19     A      Yes.  That was definitely a part of it.

20     Q      To the best of your knowledge, have you

21  provided all of the reasons for your disqualification

22  request?

23            MR. KOLSKY:  Object to form.

24            MR. STRICKLAND:  I'll restate it.

25  BY MR. STRICKLAND:

www.cavalier-reporting.com                    Cavalier Reporting & Videography                    info@cavalier-reporting.com
(434) 293-3300                                    Reported by Julia A Bammel                              (800) 972-1993

1     Q     To the best of your knowledge, have you

2   provided all of the reasons for your disqualification

3   decision?

4     A     That's difficult to say.  I suppose -- well,

5   no.  I would say no, because as being a judge, you have to

6   have context as well as text.  So in making the decision to

7   disqualify, I looked at a broader issue; that is, first, we

8   start with what is the purpose of an EDR, and it's called

9   dispute resolution.  It's to resolve matters.  That's the

10  whole point of it.

11          And so I looked at the whole context of

12  resolving it with the person -- or with the appointing

13  authority that needs to resolve it as best Ms. Strickland

14  and the appointing authority can agree to.  So then you

15  have to have the right people there who can effect a

16  settlement.

17          And that is -- for example, all these things

18  were grievance-type things, like pay, job duties, who

19  you'll report to, where you would work, all of those things

20  like that.  That's the very essence of the idea of what a

21  dispute is, and Mr. Martinez is the fulcrum there.

22          I think the things that -- the "bad acts"

23  aspect of it was the alleged sexual harassment.  Well, he

24  was not that person.  The other part is, of course, in

25  terms of how -- questions of how he reacted, what he did,

Case 1:20-cv-00066-WGY  Document 255-2  Filed 06/29/23  Page 36 of 41

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

 1    what my job things were, so all of that.

 2           So I can't say that universally, sitting down

 3    with you right now, all of the things I considered.  It's

 4    not just a check the box.  That's why it was an ongoing

 5    thing.  I said "at this time" in those things, but nothing

 6    came to me in terms of -- you know, there are many people,

 7    I'm sure, who have opinions about things and views, but in

 8    terms of facts -- and that's what it said, shall, shall put

 9    forth the facts in it.

10           And so I looked at the broader reach of it and

11    went beyond her facts in terms of looking in terms of every

12    sector where it would be appropriate to disqualify, take

13    the appointing authority out.  And you're trying to -- if

14    you're trying to legitimately resolve it, you need that

15    person, and I saw nothing in there that said that he was

16    resisting that.  By her own statement, they were

17    negotiating it.

18       Q     And just to clarify, when you say the

19    appointing authority, is another way to describe that the

20    Unit Executive?

21       A     Exactly.  That's what -- yeah.  The government

22    appointing authority, yes.

23       Q     And so just to confirm, from what you just

24    described, it sounds like you believe that Mr. Martinez was

25    just a necessary component of the EDR process at that time?

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1      A      No.  Not to the point where he could not be

2   disqualified.  He could be necessary, but there could be

3   facts that suggest that he should be disqualified.  That

4   was not dispositive just because he's necessary.  His being

5   necessary begins the inquiry as to are you going to take

6   the step to pull him out.  But in some circumstances, he or

7   anybody else may be pulled out because they've shown

8   themselves, because of the facts, that they cannot do their

9   job.

10           I mean, I don't think anybody likes to be in a

11   dispute resolution, you know, but the point is, that comes

12   with the territory.  I saw nothing in the facts that

13   suggested he had abdicated that or totally resisted it.

14   Did they agree on it?  No.  That's why they had a dispute.

15           So if I just wanted to tell you in terms of the

16   full thing, then we'd be here a long time.  We could get

17   into, I guess, legal philosophy and all those kinds of

18   things like that, because all that -- you know, an

19   appellate judge looks at a lot of things.  They have more

20   time to cogitate than our hardworking District Court

21   judges.

22           But the bottom line is, as a judge in making a

23   judicial decision, I looked at all those factors, and I

24   believe the decision I made was correct; not perfect,

25   necessarily, but I think it's correct.  And I think the

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1   problem with the standard is abuse of discretion since it

2   doesn't lay out a standard at all.  So the EDR doesn't even

3   talk about what the standards are, what the guidelines are,

4   so ...

5              MR. STRICKLAND:  Well, at this point, can we

6   take a break and just confer?  Because that may be the

7   extent of what we need to ask.

8              MR. KOLSKY:  Sure.  That's fine with me.

9              MR. STRICKLAND:  We may come back with just a

10  few more questions --

11             THE WITNESS:  Sure.  Sure.  Okay.

12             MR. STRICKLAND:  -- but we're close.  And,

13  again, we're trying to be as respectful of your time as

14  possible.

15             THE WITNESS:  And I appreciate that.  I really

16  do.  No.  But take your time, and --

17             MR. STRICKLAND:  Okay.  So we'll --

18             THE WITNESS:  -- we'll be here.  We'll stay

19  right here.

20             MR. STRICKLAND:  You all have more people, so

21  we'll step out in the hallway --

22             THE WITNESS:  Thank you.

23             MR. STRICKLAND:  -- and we'll come back.

24             (Break in proceedings.)

25             MR. STRICKLAND:  That does conclude the

www.cavalier-reporting.com                    Cavalier Reporting & Videography                    info@cavalier-reporting.com
(434) 293-3300                                  Reported by Julia A Bammel                          (800) 972-1993

```
 1  questions that we'd like to ask, so we pass the witness.

 2            MR. KOLSKY:  I have no questions, but I did

 3  want to note on the record that the witness will read and

 4  sign the transcript.

 5            (Deposition concluded at 10:54 a.m.)

 6            (Signature reserved.)

 7

 8                        *  *  *  *  *

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 1:20-cv-00066-WGY  Document 255-2  Filed 06/29/23  Page 40 of 41

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993

1    COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

2            I, Julia A. Bammel, RPR, CSR, Notary Public in

3    and for the Commonwealth of Virginia at large, and whose

4    commission expires May 31, 2024, do certify that the

5    aforementioned appeared before me, was sworn by me, and was

6    thereupon examined by counsel, and that the foregoing is a

7    true, correct, and full transcript of the testimony

8    adduced.

9            I further certify that I am neither related to

10   nor associated with any counsel or party to this proceeding

11   nor otherwise interested in the event thereof.

12           I further certify that the deponent's right to

13   review the transcript was reserved.

14           Given under my hand and notarial seal at

15   Charlottesville, Virginia, this 18th day of May, 2023.

16

17

18

19   _____

20           Julia A. Bammel, RPR, CSR

21       Notary Public Registration No. 7205414

22         Commonwealth of Virginia at Large

23

24   Job No. 49825

25

www.cavalier-reporting.com
(434) 293-3300

Cavalier Reporting & Videography
Reported by Julia A Bammel

info@cavalier-reporting.com
(800) 972-1993