# EXHIBIT RR



# Transcript of 190109_1116

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7                       CONVERSATION

8                      "190109_1116"

9    IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10                   AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20   Job No.: 479402

21   Pages: 1 - 36

22   Transcribed by: Christian Naaden

US00008152

1    MS. STRICKLAND:  But yeah, So I -- I really

2  appreciate you taking the time to talk to me. I know

3  that -- I'm sure you're very busy. So I just appreciate

4  your time and all the effort that you've put into this.

5    And I thought it would just be good to maybe

6  have a conversation over the phone, because with the --

7  the mediator stuff, I guess, if you could just explain

8  a little more how it would work in terms of the timing

9  of it, and just kind of mechanically how -- how the

10  process would work, or kind of how -- what you see. I

11  think that would be very helpful.

12    MS. STRICKLAND:  Okay. Sure. And -- and Caryn,

13  I have Kim Llewellyn here. So she's my HR

14  administrator. And I asked her to sit in to kind of

15  help kind of explain, maybe fill in some of the blanks

16  mechanically of how this would work, and what I'm

17  thinking about.

18    MS. STRICKLAND:  Okay. Hi, Kim.

19    MS. LLEWELLYN:  Hi, Caryn.

20    MR. ISHIDA:  So, Caryn, the reason -- the

21  reason why I wanted to kind of propose this unusual

22  step is because it -- it was -- it was -- I -- I -- I

US00008154

1  was trying to think of a way to kind of get this going

2  and get this moving along. Because frankly, at this

3  point, I'm not quite sure where we're -- where the --

4  where we're at, where the parties are at.

5        MS. STRICKLAND:  Mm-hmm.

6        MR. ISHIDA:  Uh-huh. And so, let me -- let me

7  -- let me -- let me kind of -- kind of explain where

8  we're at in terms of the process, at least as far as I

9  -- I -- I can get. So again, we have -- we have two

10 proceedings, related but separate. So we have the

11 Chapter 9 proceeding, the report of wrongful conduct.

12       MS. STRICKLAND:  Right.

13       MR. ISHIDA:  And then we have the Chapter 10

14 proceeding, which is the EDR piece of this. Now, the

15 Chapter 9 piece is -- is really -- it was, you know --

16 it was initiated from your concerns. But at this point,

17 it has be- -- it will become an issue between the

18 supervisor and JP [ph], or the Circuit and JP. As to,

19 you know, what the investigator concludes about JP's

20 conduct.

21       And -- and -- and, oh, by the way, we have

22 still not gotten the investigation report from Heather

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 5 of 20

US00008155

1 Beam. I plan to call her later to find out where she's

2 at. But I have not gotten anything from her. So we

3 really need her report to proceed with Chapter 9,

4 because we really need a determination as to, you know,

5 wrongful conduct here.

6       MS. STRICKLAND:  Right.

7       MR. ISHIDA:  But as -- as for the Chapter 10

8 piece of this, the -- the investigator's report will

9 still be very helpful. But we're not tied to it the

10 same way we are Chapter 9, in that we can still try to

11 resolve the issues that you have with the employing

12 office. And so that's why I thought, okay, while we

13 wait for the report, which will be helpful, we can

14 still proceed to try to resolve outstanding issues that

15 you have.

16       Now, the reason why I thought a mediator would

17 be helpful is I think the mediator could help with,

18 okay, you are making X demands. And then they could

19 take that to the employing office and say, okay, Caryn

20 has asked for this, what's your position on this?

21       You know, I think they could facilitate a

22 discussion, and hopefully, fa- -- facilitate settlement

US00008156

1  negotiations in a way that I don't think has happened,

2  or -- or seems to have slowed down at this point.

3          MS. STRICKLAND:  Mm-hmm.

4          MR. ISHIDA:  And -- and part of, I think, my

5  struggle has been that I'm -- I -- I'm still not sure

6  what it is that you're asking. So we ta- -- we -- we

7  had a lot of discussion about it. But I think what I

8  was hoping to get was that list of demands, those --

9  that list that I had asked you to do about specific,

10  particular, what is it that you want?

11          That I could take to the mediator -- oh, I'm -

12  - I'm sorry. That I could take to the employing office.

13  And then -- and then at some point before the holidays,

14  you would introduce a proposal about perhaps taking a

15  transfer or a move from your current office to another

16  office.

17          MS. STRICKLAND:  Mm-hmm.

18          MR. ISHIDA:  I said, okay, well, that's fine.

19  You need to let me know if that's the route you want to

20  go down. And I don't know where we are with that, which

21  could obviously change the direction of this whole

22  process.

US00008157

1        So I think a mediator could help kind of bring

2    into focus where the parties -- where both parties

3    stand. And that's why I had thought a mediator might be

4    helpful. Now, there's another reason for thinking about

5    mediation too. And that is, the counseling period is

6    scheduled to end next week.

7        MS. STRICKLAND:  Mm-hmm.

8        MR. ISHIDA:  And so the -- if -- if -- if

9    counseling is unsuccessful, then I will declare an end

10   to counseling. And then the next step will be up to

11   you. And you can certainly, in the EDR process, request

12   mediation. So by -- by thinking about me- -- a mediator

13   now, you know, we could -- we could maybe, if that's

14   the road you want to take, we could have -- we could

15   already start the mediation process.

16        But anyway, these are -- these are thoughts

17   that I had. And that's why I wanted to have a

18   discussion with you about what is it that you wanted to

19   do? Or what do you want to do next? Or what are you

20   thinking about?

21        MS. STRICKLAND:  Okay. Well, um, thank you for

22   all of that. So I -- I guess, for me, what I'm a little

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 8 of 20

US00008158

1    guess what -- well, let me -- let me -- before I go too
2    far down that road. What -- what claims are you
3    concerned that won't be included, that we aren't
4    talking about now?
5              MS. STRICKLAND:  Well, I -- I think -- well --
6              MR. STRICKLAND:  I'm just going to jump in for
7    a second. I -- I think maybe a different way of putting
8    it is, if -- if Caryn were to file a request for
9    mediation, it would include or reassert the request for
10   disqualification of Tony based off his retaliation
11   against her.
12             And kind of going back, I remember part of the
13   discussion was that Heather's investigation was not
14   just for the purposes of wrongful conduct, but it's
15   kind of a preliminary investigation for Chapter 10 as
16   well. Because that --
17             MS. STRICKLAND:  Right.
18             MR. STRICKLAND:  -- was going to be what was
19   used to determine whether Tony was disqualified or not.
20   So it -- it would be a shame, I guess, to kind of get a
21   couple of weeks down the road, and, you know, right
22   back at the same point in time. If Heather's report's

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 9 of 20

US00008164

1    not done, no determination can be made on the

2    disqualification. And it's essentially, mediation would

3    be over pretty quick at that point, I think.

4            MR. ISHIDA:  Well, but -- but I'm not sure

5    you're giving up that right.

6            MR. STRICKLAND:  Well, it's a -- it's a timing

7    right.

8            MS. STRICKLAND:  I guess --

9            MR. STRICKLAND:  I mean, wo- -- would -- would

10   it just be a new status quo of -- of nothing really

11   happening until Heather's report comes out?

12           MS. STRICKLAND:  I mean, I guess to put it

13   another way, what I had envisioned, and it sounds like

14   it may be a little bit different from what you had

15   envisioned, but my thought was, to avoid the -- some of

16   these complicated procedural issues, why not agree to

17   bring in the mediator as part of counseling, and just

18   put a pause on it?

19           You know, so that none of those other things

20   have to be decided. And we could agree that, I mean, if

21   Tony wants to sit on the other table -- or the other

22   end of the table, fine. But that so long as I wouldn't

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 10 of 20

US00008165

1   be waiving my right to have that request for

2   disqualification decided in the future.

3         That's kind of maybe where I kind of thought

4   that it was going. Because then we can kind of have

5   everything still on the table. We can try to negotiate

6   a resolution without continuing to escalate it into a

7   more and more formal situation, where there's basically

8   fewer and fewer opportunities to resolve it prior to a

9   final hearing. But --

10         MR. ISHIDA:  Well --

11         MS. STRICKLAND:  -- that may not --

12         MR. ISHIDA:  Well, I -- I get where you're --

13   I get where you're coming from, Caryn. And I -- I

14   guess, you know, one of the things that concerned Judge

15   Gregory, and -- and I -- and I don't want to speak for

16   him, and I can't speak for him. So this is just my --

17   this is just my perception. But I think there was a

18   concern on his part about why is this taking so long?

19   And why is this -- you know, why -- why is this not

20   moving? And --

21         MS. STRICKLAND:  Mm-hmm.

22         MR. ISHIDA:  -- while he -- he understood your

Case 1:20-cv-00066-WGY  Document 255-9  Filed 06/29/23  Page 11 of 20

US00008166

1 request for an extension of the counseling period, he

2 didn't grant in -- in completely. I mean, I think you

3 wanted an extension until the investigation report was

4 completed. And I -- and I'm guessing he felt that that

5 was just -- it would just prolong this whole process.

6          And -- and -- and he was thinking about

7 fairness to all sides, that we should keep this moving.

8 And so I think that's part of his thinking for granting

9 only a 45 day extension. Now, the proposal you're

10 raising, okay, I mean, I -- I can see the logic in

11 that.

12          But I think what would have to happen then is

13 you'd have to go back to Judge Gregory with another

14 request to extend counseling, because according to his

15 order, counseling ends on the 14th.

16          MR. STRICKLAND:  And -- and that may be the --

17 the way to do this. I -- I don't know. I -- it would be

18 something we'd have to think about. But yeah. It's kind

19 of a chicken or an egg type question in my mind.

20 Because, yes. Counseling has taken a long time. But it

21 also appears that the investigation has taken a really

22 long time.

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 12 of 20

US00008167

1       Because it's my understanding that, you know,

2  Heather did the initial draft of -- of her report, and

3  it was sent back to her. But the investigation has not

4  been reopened. So -- so no new witnesses are being

5  interviewed or anything like that.

6       And it seems like if my memory is corre- --

7  correct, she had basically said before that her

8  recommendations were already typed up, she had just not

9  included them because of concerns about length. You

10  know, and -- but now, it seems like it's six, seven

11  weeks down the road, and the report's still not done.

12  And --

13       MR. ISHIDA:  Well, I think -- I think part of

14  that was, I'm -- I'm -- I'm guessing the holidays con-

15  -- contributed to that. And -- and I -- I don't know --

16  I don't know if she -- I don't know if it's accurate to

17  say that her recommendations were completed.

18       I think when we had the discussion, Heather

19  had expressed to me her thoughts. But I don't know --

20  you -- you know, the -- you know, once you start

21  writing something down, you know, you may have -- you

22  may have thoughts in mind about how you want to

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 13 of 20

US00008168

1   proceed. Or, you know -- but when you start writing it

2   down, then it may become more complicated.

3            Now, I don't know if that's what's happening

4   in this case. Which is -- which is why I'm going to

5   reach out to Heather to find out where she's at. But I

6   could see where, as she's writing this out, she could

7   come to the conclusion that, hey, this is a little more

8   complicated than I initially thought, which is why it's

9   taking longer.

10           And that's part of the other thing about the

11  delay was, I -- I wouldn't entirely put it on Heather's

12  shoulders either. I think she had expressed to me that

13  there were -- she -- she was delayed because of

14  different things that happened where -- so she could

15  not start her investigation at the time that I had

16  asked her to do them.

17           MR. STRICKLAND:  And I'm not -- I'm not --

18           MR. ISHIDA:  But all that to say -- but all

19  that to say, I mean, you know, it's -- it's -- it's --

20  it would still be helpful to have her report. But I

21  think it's also helpful to, you know -- to -- to try to

22  -- I mean, I -- I -- I think at the end of the day, we

1  -- we just want to -- to make sure this was resolved in

2  a fair and satisfactory way for everybody. And I think

3  this is just -- let's just see what we can do to -- to

4  -- to move towards that.

5          MR. STRICKLAND:  I think that's -- and I agree

6  with that. And I -- I don't want to come off in the

7  wrong way. I'm not putting this all on Heather or

8  anything else like that. I just -- I -- I actually,

9  truly believe that this all is very complicated, and

10  time intensive.

11          But, you know, i- -- if you go to the next

12  stage in the process, and I agree with Caryn, I think

13  it's an escalation under the rules of kind of how this

14  goes. Because you're -- you're running out of ground,

15  or running out of options of what you can do. Is that,

16  you get into the situation where a mediator is

17  involved.

18          But it's still -- like, even if the

19  communication is indirect, it's Ca- -- Caryn having to

20  communicate with Tony, who she has clearly identified

21  in her filings as somebody who retaliated against her.

22  Which, you know, I interpret just quite simply to mean

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 15 of 20

US00008170

1  that Tony found out about what his first assistant was

2  doing. And then pretty much started, you know,

3  essentially punishing Caryn for having bra- -- brought

4  it up.

5        And it -- it makes it difficult, in my mind,

6  how you continue to negotiate with somebody like that

7  without some kind of determination on whether that's

8  accurate or not. And that's what I thought Heather's

9  report was supposed to do, part of it. But, you know,

10 and I agree. There were inconsistent things said about,

11 like, you know, whether retaliation was actually within

12 the scope of the work she did, and everything else. So

13 --

14       MS. STRICKLAND:  The other thing that I would

15 mention is that, in terms of what I want, or what's

16 going to come out of this, some of that is really hard

17 for me to know without knowing what the outcome of the

18 report would be, or the recommendations.

19       Because, unfortunately, my feeling is that

20 earlier on, this whole situation probably could have

21 been settled fairly easily. There might have been

22 problems in the future or whatever. But because it's

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 16 of 20

US00008171

1  kind of dragged on so long without problems being

2  addressed, I don't know that it's --

3       And I know I've tried to articulate this in

4  the past, maybe not very effectively. But it's hard for

5  me to really know, like -- basically, put very simply,

6  unless there -- there have to be changes in the office

7  outside of -- there's a cultural problem there.

8       And so it doesn't feel like a one-sided thing

9  for me. And -- and what I -- the decisions that I make

10  in terms of, do I stay there, or do I find another

11  opportunity? In my mind, actually, depends somewhat --

12  at least somewhat on the outcome of Chapter 9. So it --

13  it's difficult for me, because I feel like there's a

14  lot of uncertainty still surrounding all of this.

15       But, you know, at the end of the day -- yeah.

16  I -- I want -- I think we all want to settle it, like

17  you said, in a satisfactory way.

18       MR. ISHIDA:  Well, and I -- I guess -- I

19  guess, Caryn, that -- that's -- I mean, I -- I -- I

20  think that's what everybody wants. I think -- you know,

21  I think that's what Tony and the office wants, and I --

22  and that's what you want. I -- I certainly want what's

Case 1:20-cv-00066-WGY   Document 255-9   Filed 06/29/23   Page 17 of 20

US00008172

1    best for everybody here.

2            And that's why the mediator idea, I thought,

3    could -- could, you know, help bring the parties

4    together, and help bridge some of the gaps. Not having

5    the report complicates it a little. But I think we can

6    make progress on -- on working towards a resolution.

7    And I don't see us making any real -- real significant

8    progress now.

9            So it's really just kind of an attempt to,

10   okay, what can we do while we're waiting for the report

11   to move this forward? Now, I will -- I will -- like I

12   said, I will reach out to Heather and just kind of get

13   an idea of where she's at. But -- but -- but that's why

14   I just wanted to -- to have this conversation with you

15   to see, well, these are thoughts that I have to move

16   this forward. What do you think? And let's -- let's see

17   if we can come up with a path forward on this.

18           MR. STRICKLAND:  Has Tony communicated

19   anything to you about a desire to resolve this?

20           MR. ISHIDA:  Oh, I think I -- I haven't talked

21   to Tony in a while. But -- but that -- in the

22   beginning, that was -- that was made very clear to me.

US00008173

1      MR. STRICKLAND:  Yeah. And so I'll tell you a

2  little story that's happened, you know, kind of just in

3  this interim period, where Caryn's been doing remote

4  work. You know, there -- there was this issue, and it's

5  -- it's natural in any kind of office environment, your

6  computer needs updates.

7      And, you know, the IT people had contacted

8  Caryn about bringing her computer into the office in

9  order to have those updates done. And obviously, that's

10 a concern. That's why she's on remote work, is because

11 of the -- the issues with going into that office with

12 the first assistant still being there.

13     And Caryn had gone through kind of working

14 with -- with the IT people there, and had been told

15 that those issues were resolved, her computer was

16 updated, everything like that. Another IT person

17 subsequently came back and said, oh, actually, no, you

18 -- you have to bring it in to have all the updates done

19 completely.

20     And at that point, Caryn e-mailed Tony. And

21 said, you know, how do we resolve this, you know, so

22 that, you know, I'm safe? I -- you know, I can get you

US00008174

```
1                CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3    under penalty of perjury that to the best of my ability

4    from the audio recordings and supporting information;

5    and that I am neither counsel for, related to, nor

6    employed by any of the parties to this case and have no

7    interest, financial or otherwise, in its outcome, the

8    above 35 pages contain a full, true and correct

9    transcription of the tape-recording that I received

10   regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13   the event of the action.

14

15

16

17        February 10, 2023

18        Chris Naaden

19

20

21

22
```

US00008187