# EXHIBIT TT

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## <u>DECLARATION OF PLAINTIFF'S COUNSEL REGARDING EXHIBIT TT</u>

I, Cooper Strickland, declare as follows:

1.      I represent Plaintiff and make this declaration of my own personal knowledge.

2.      Exhibit O to Plaintiff's renewed motion for summary judgment references audio recordings that were previously provided to this Court through a conventionally filed CD exhibit. *See* ECF Nos. 170, 173.  Plaintiff's counsel served the full recordings on Defendants' counsel during discovery, and Defendants' counsel subsequently amended the Answer to Plaintiff's complaint to incorporate the substance of recordings.  *See* ECF No. 210, ¶¶ 266, 318, 370, 415.

3.      Exhibit TT contains transcripts of the recordings that are referenced in Exhibit O. The transcripts were prepared by Defendants and produced in discovery, and are true and accurate copies thereof.

4.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of June, 2023 at Lynn, North Carolina.

_____/s/ Cooper Strickland_____
Cooper Strickland

1



# Transcript of 180905_1042

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

```
 1

 2

 3

 4

 5

 6

 7                    CONVERSATION

 8                    "180905_1042"

 9    IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10                   AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20    Job No.: 479402

21    Pages: 1 - 60

22    Transcribed by: Christian Naaden
```

US00007616

1   I was getting when I got into this job, which was to be

2   able to, you know, get trained and up to speed to be an

3   assistant federal defender, to do, you know, the type

4   of work that, you know, interests me to the extent they

5   have the case load for it.

6          You know, and as part of that, I mean, the --

7   the -- there is a whole issue with the trials versus

8   appeals. What I had wanted was to be able to do some of

9   my own trial cases in order to make me a better

10  appellate attorney. But, you know, they've told me I

11  can no longer do those. You know, they've basically

12  just demoted me to a pure research and writing position

13  from what I can figure out.

14         And, so, you know, what I want is to be able

15  to do the job that I was hired for and to be able to do

16  it without feeling ethically compromised and without

17  feeling just like my job is being interfered with. My

18  job duties are being interfered with for reasons that

19  are completely inappropriate and unprofessional.

20         So, that's it in a nutshell.

21         MR. ISHIDA:  Mm. We- -- we- -- well -- well,

22  Caryn, what -- well -- well said and -- and

US00007647

1    passionately said I may add. And that's certainly

2    understandable.

3            You know, let -- let me address the history

4    part of this. I'm in a little bit of a disadvantage

5    because all of this, of course, happened before I came

6    on board. But -- but I did hear about some of the back

7    story that you alluded to and, you know, I -- Tony and

8    I came in roughly at the same time, that's why, you

9    know, I don't -- I -- I wasn't part of his hiring, I

10   wasn't part of the conversions.

11           But -- but I -- but from the stories I heard,

12   it -- it -- I -- I agree, it sounded like it was a

13   really kind of a troubled office before. The judges

14   have expressed a lot of concern. There was a -- there

15   was a lot of serious issues for -- that were going on

16   in the office.

17           And, so, you know, it was felt that, you know,

18   we need a -- we need a new structure, we needed form,

19   we needed the leadership and I do know from the stories

20   I've heard that they were -- the judges were very

21   mindful of, okay, we need -- we need change and we need

22   good change and we need to change the culture, first

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 6 of 51

US00007648

1  and foremost.

2        And when they -- when they were looking at

3  candidates, they were -- they were genuinely impressed

4  with Tony because of what he had done, his experience,

5  and -- and -- and just his general track record and

6  reputation that he got as first assistant in -- you

7  know, [inaudible] C and -- and that's why Tony was

8  brought on to -- to kind of really help that office

9  [inaudible].

10        Yeah, I mean, your concerns I think are well

11  founded and --

12        MS. STRICKLAND:  Right. And, you know, I'll

13  tell you another just -- like I -- you know, it's funny

14  because I was hearing a lot of the same things and --

15  and I -- you know, really, really believed in Tony and

16  I -- you know, I didn't come in being like, oh, what's

17  Tony going to do or what -- I mean I have really done

18  nothing but give him the benefit of the doubt until I

19  reached --

20        MR. ISHIDA:  Mm-hmm.

21        MS. STRICKLAND:  -- completely the end of the

22  road and felt like it was no longer warranted.

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 7 of 51

US00007649

1   don't see how Tony can be involved in any way in the

2   process and have it be fair, given my experience, you

3   know.

4          MR. ISHIDA:  Mm-hmm. Well, Caryn, you know,

5   you've -- you've -- you've painted a challenging

6   picture about trust. I mean, you know, once -- once

7   trust has been broken, it's -- it's really hard to

8   piece it back together again. And -- and, you know, I

9   had -- I don't know if you know this but I had a

10   conversation with Sheryl Walter, the general counsel at

11   the AO and --

12          MS. STRICKLAND:  Okay.

13          MR. ISHIDA:  -- other -- other -- other people

14   from the AO and we -- we -- we had a conversation about

15   -- about alleviating some of your concerns.

16          And one of the things that Sheryl really

17   wanted me to do, given -- given the concerns that

18   you've raised with them was, that after the

19   investigation is finished, the report has been

20   compiled, Sheryl wanted me to receive the report and

21   not Tony Martinez. And -- and, you know, I -- I kind of

22   thought, well, you know, that's -- that's not really in

US00007654

1    the process or plan.

2              But I approached Tony about it and kind of

3    said, this is the concern, would you be willing to let

4    me receive the report first. And -- and he was fine

5    with that. Just -- just -- just so you know. And -- and

6    he thought it would be helpful, yeah, you know, you --

7    why don't you accept the report and we'll go from

8    there.

9              I -- you know, so I told Sheryl, sure, I'm

10   willing to -- I'm willing to accept the report and

11   depending on what it says, we'll -- we'll just go from

12   there. But what I did tell Sheryl too, was just my

13   sense that, I -- I understand why, you know -- do you

14   feel -- I mean, having been a supreme court fellow, you

15   know, you've made contacts and connections and

16   relations with some people at that AO, so you feel more

17   comfortable going to them. I said I get all that and

18   that I probably would do the same thing.

19             I just told Sheryl that, in this case, it may

20   not be entirely helpful because we're now giving it

21   arms' length instead of trying to communicate issues

22   and concerns directly and I -- one of the things I

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 9 of 51

US00007655

1   mentioned to Sheryl was things can get -- when that

2   happens, you know, the -- the barriers go up, the walls

3   go up, the people are on guard and I -- and I'm -- I'm

4   concerned that there isn't real dialogue between the

5   parties. And -- and trust can break down and all sorts

6   of things.

7         So, I said, I'm happy to accept the report but

8   -- but this is my concern that we -- we may hinder a

9   dialogue between you and Tony in really kind of trying

10   to resolve this.

11         So, that's -- that's -- that's kind of -- that

12   -- now I -- I did want to -- I did want to mention that

13   to you, Caryn, but I also -- I also want to -- I also

14   want to tell you too that, you know, my -- my -- my

15   heart goes out to you. I -- I hear what you're saying.

16   You know, in another life I was an assistant public

17   defender --

18         MS. STRICKLAND: Oh.

19         MR. ISHIDA: -- and so when you -- when you

20   talk about, you know, your passion for the job and --

21   and just wanting to, you know, really do what you love,

22   I mean, I -- I -- I get that because I was -- I was

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 10 of 51

US00007656

1             CERTIFICATE OF TRANSCRIBER

2       I, Chris Naaden, a transcriber, hereby declare

3  under penalty of perjury that to the best of my ability

4  from the audio recordings and supporting information;

5  and that I am neither counsel for, related to, nor

6  employed by any of the parties to this case and have no

7  interest, financial or otherwise, in its outcome, the

8  above 59 pages contain a full, true and correct

9  transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12      I further declare that I have no interest in

13  the event of the action.

14

15

16

17      February 10, 2023

18      Chris Naaden

19

20

21

22

US00007675



# Transcript of 180918-0845

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

US00007693

CONVERSATION

"180918-0845"

IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

AMERICA, ET AL.

Job No.: 479402

Pages: 1 - 64

Transcribed by: Christian Naaden

PROCEEDINGS

MR. COOPER: [Inaudible].

MS. STRICKLAND: [Inaudible]?

MR. COOPER: Negative. [Inaudible] closer.

MS. STRICKLAND: Yeah.

MR. COOPER: [Inaudible].

MS. STRICKLAND: [Inaudible] but there's a chance that the jury deliberation [inaudible]. I know it's [inaudible], it's just [inaudible]. [Inaudible] and they just do that [inaudible]. I have [inaudible] I'll just send my concerns right there.

MR. COOPER: [Inaudible]?

MS. STRICKLAND: [Inaudible].

MR. COOPER: It is [inaudible].

MS. STRICKLAND: Well, I think -- I mean, it's the jury deliberation room for that court room. So I feel like it's [inaudible].

FEMALE 2: [Inaudible].

MR. COOPER: So we'll probably [inaudible] access today?

MS. STRICKLAND: Well, it might be. Okay. So after visitor [inaudible] have been taken immediately

left, and maybe over there, maybe the entrance to the --

MR. COOPER: [Inaudible].

MS. STRICKLAND: Yeah.

MALE 2: [Inaudible].

FEMALE 3: Thank you.

FEMALE 4: [Inaudible].

FEMALE 5: Good morning. [Inaudible].

MR. COOPER: [Inaudible].

MS. STRICKLAND: Yeah. It's a little, um -- I guess that's why they're renovating that. It's full of [inaudible]. It's got kind of like a nice historic look to it.

MR. COOPER: Mm-hmm.

MS. STRICKLAND: But still I thought that they were still in that courthouse. It's beautiful.

MR. COOPER: [Inaudible].

MS. STRICKLAND: Um, I think it's Judge [inaudible] I think. I'm surprised we haven't run into him yet. Maybe he got in earlier.

MR. COOPER: This is [inaudible] because of the possibility. It seems to be so much [inaudible].

MS. STRICKLAND: I agree. Yeah. I agree. [Inaudible].

MR. COOPER: [Inaudible].

MALE 4: Morning.

MR. COOPER: Morning.

MS. STRICKLAND: Morning.

MR. COOPER: [Inaudible].

MS. STRICKLAND: Well, he has to walk past this [inaudible].

MR. COOPER: Are you excited for that?

MS. STRICKLAND: No. [Inaudible]. We don't have to go down the stairs.

MR. COOPER: Okay. [Inaudible].

MS. STRICKLAND: I don't [inaudible].

MALE 5: [Inaudible].

FEMALE 6: Awesome. Thank you.

FEMALE 7: Oh yeah. Hi. How are you. Good to see you. Do you remember [inaudible]?

MR. COOPER: Yeah. I do. I do.

FEMALE 7: [Inaudible] because I might run into you today.

MR. COOPER: Yes. I'm -- I'm upstairs

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 13 of 51

US00007694

**5**

1 [inaudible].

2     FEMALE 7: Good luck.

3     MR. COOPER: [Inaudible].

4     FEMALE 7: Yeah. Good seeing you. [Inaudible].

5     MS. STRICKLAND: Hi. I'm Caryn Strickland.

6     MR. ISHIDA: Caryn, hi. I'm James Ishida, nice

7 to meet you.

8     MS. STRICKLAND: Hi, this is my husband,

9 Cooper.

10     MR. ISHIDA: Cooper. Hi, nice to meet you.

11     MR. FRANK: I'm Frank [inaudible].

12     MS. STRICKLAND: Hi. We met maybe a while ago.

13 Yeah. But it's good seeing you.

14     MR. FRANK: Yep. Nice to meet you. Cooper.

15     MR. COOPER: Frank.

16     MR. FRANK: Nice to meet you.

17     MR. COOPER: Yeah.

18     MR. ISHIDA: You guys are welcome over here

19 and have a seat.

20     MS. STRICKLAND: Oh sure. Thank you.

21 Appreciate it.

22     MR. ISHIDA: This spot is our attorney lounge.

**6**

1 Sorry, it took -- it took a second to get setup. Come

2 on now.

3     MS. STRICKLAND: It's all right. Thank you.

4 Where would you like us to sit?

5     MR. ISHIDA: Sit anywhere you're comfortable.

6     MS. STRICKLAND: Okay. I guess I'll move

7 inside. So did you, um -- your travels were okay? I was

8 thinking about, man, what terrible timing with the

9 hurricane and everything.

10     MR. ISHIDA: We were okay. Actually it's

11 really good timing because I was coming down

12 [inaudible] to make sure everything was okay. So it

13 actually worked out great. So I was in Winston-Salem

14 yesterday.

15     So the middle district was -- was okay. I

16 mean, the leaks and a few things, but on whole the

17 district came out okay. And then here it's better than

18 there. So it's -- it's -- it's -- it's good to know.

19 The Eastern District is another story.

20     MS. STRICKLAND: Not. Yeah.

21     MR. ISHIDA: I mean, Wilmington, Newburn, the

22 courthouses there are just flooded and so.

**7**

1     MS. STRICKLAND: Man, that's horrible.

2     MR. ISHIDA: I was supposed to go to Newburn

3 today but the judge there told me don't even try. So

4 I'm going to try to get to Raleigh tomorrow and see how

5 far it needs to come. But -- but on the whole, I think

6 the state did pretty well considering.

7     MS. STRICKLAND: Yeah. Better than expected

8 maybe.

9     MR. ISHIDA: Yeah. Yeah. So it was -- it was -

10 - it was really -- I'm -- I'm glad I -- I'm glad I --

11 I'm glad I came down here and I'm glad the timing

12 worked out. I'm glad the timing worked out.

13     MS. STRICKLAND: Yeah. No. It's nice to meet

14 in person for sure. I think that makes a difference,

15 so.

16     MR. ISHIDA: Well, Caryn, thanks for -- for

17 meeting with me. Um, I wanted to start by saying I -- I

18 got a number of the things and I got some of the things

19 you sent Judge Gregory.

20     MS. STRICKLAND: Excuse me.

21     MR. ISHIDA: Is there anything else that -- I

22 mean, because I was kind of in a mad dash to leave, so

**8**

1 I'm not sure I got everything that you sent.

2     MS. STRICKLAND: Okay. The thing -- so I

3 printed out all the things that I have, so there's the

4 request for counseling, there's the kind of written

5 complaint or grievance, this part of it.

6     MR. ISHIDA: Right. Which supports the

7 request.

8     MS. STRICKLAND: Correct. And there's a

9 request for disqualification and stay.

10     MR. ISHIDA: Right. Which you entrusted with

11 Gregory. Okay. Is the -- was there anything else that

12 you sent us?

13     MS. STRICKLAND: Not at this time. Okay.

14     MR. ISHIDA: I did have a chance to talk to

15 Judge Gregory. We were -- we were at the judicial

16 conference in DC earlier this -- or last week. And we

17 chatted briefly about the request that you made to him.

18 I think he was a little surprised because I -- I told

19 him what you could expect was a request for

20 continuance, and he said he was fine with that.

21     That's not a problem. But when he got -- when

22 he saw the disqualification and then when he saw the, I

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 14 of 51

US00007695

9

1 guess the stay, he -- he was a little kind of taken
2 aback by that. Not that he was adverse, but he just
3 wasn't expecting that. But I wanted to know if we can
4 chat with that in the overall kind of context of where
5 we want to go with this.
6        So we're proceeding under the Fourth Circuit's
7 EDR plan. That has a provision of confidentiality. So,
8 you know, you can -- we can only talk about this on a
9 need to know basis with people who are actually --
10 absolutely critical to the process. So I have not
11 shared this with anybody outside Judge Gregory. And I
12 don't -- I don't think he's done that either.
13        MS. STRICKLAND: Okay.
14        MR. ISHIDA: We can -- we can still go ahead
15 with the request. The disqualification of Tony
16 Martinez, if you want to pursue that, makes it harder
17 to -- for me to talk to him about things that you may
18 want from his office. So just something to think about.
19 And the -- the stay of the investigation, you've also
20 filed request of wrongful conduct, which --
21        MS. STRICKLAND: Correct.
22        MR. ISHIDA: -- as you know would trigger an

10

1 investigation anyway.
2        MS. STRICKLAND: Correct.
3        MR. ISHIDA: So I guess I'm not quite sure.
4 We've already got Heather Beam who I've appointed to
5 investigate the initial allegations, but you're asking
6 us to stop that but then we have to initiate another
7 investigation. So I'm just wondering.
8        MS. STRICKLAND: Yes. And -- yes. That is --
9 that is exactly what I am asking for. Yes. And the
10 reason why I asked for that is because I felt like it
11 was necessary because -- and maybe this is something
12 you can tell me, is Tony involved with the wrongful
13 conduct investigation with Heather?
14        MR. ISHIDA: Well, I mean, you -- well, Tony -
15 - Heather would have interviewed Tony as part of the
16 investigation. I think her plan was to talk to you,
17 talk to Tony, talk to JP. I think at the -- at -- at --
18 at the very outset. I don't -- I haven't talked to her
19 so I don't know that, but I -- I suspect that that's
20 what she was going to do. So she was going to talk to
21 Tony anyway.
22        MS. STRICKLAND: But as like a -- I mean, I

11

1 think that's, I guess from the perspective of him being
2 like a, you know, potential violator talking to him or
3 as somebody involved in the process from the
4 perspective of -- of administering the investigation,
5 you know what I mean? Because those are two different
6 things.
7        MR. ISHIDA: Sure. I think -- well, she
8 wouldn't -- Heather would not have known that you're
9 also including Tony in some of your allegations,
10 because that was never part of the initial --
11        MS. STRICKLAND: Right.
12        MR. ISHIDA: -- concern about sexual
13 harassment with JP. What I got, and which I don't think
14 Heather got -- Heather knows about, is you're also
15 implicating Tony.
16        MS. STRICKLAND: Okay.
17        MR. ISHIDA: So that would -- well, I would
18 imagine that would cast a different take on Heather's
19 questioning of Tony than it would if she thought the
20 focus was solely on JP.
21        MS. STRICKLAND: Right. And I think that's --
22 that's kind of why I was asking for those things.

12

1        MR. ISHIDA: Sure. Sure. No, no, no. And --
2 and I understand, and that makes sense. What I might --
3 what I might suggest you do is in light of the
4 grievance that you gave me, is I can give this to
5 Heather and ask her to include this in her overall
6 investigation, because this obviously expands the
7 initial scope, which I think -- I'm just thinking
8 logistically that probably makes sense but it is your
9 choice.
10        MS. STRICKLAND: Yeah. I mean, I guess -- so,
11 and again, you can completely just correct me if I'm
12 wrong, but my understanding of what had happened was
13 that Tony kind of initiated the wrongful conduct
14 investigation to begin with. Which -- and -- and that,
15 you know, originally Heather was to report to him.
16        MR. ISHIDA: Well, initially.
17        MS. STRICKLAND: Right.
18        MR. ISHIDA: At the very outset the way the
19 process would work is it's -- it's once -- once there's
20 a report of wrongful conduct, then that report has to
21 get forwarded to me as the EDR coordinator, and then
22 I'm obligated to notify the chief judge and the -- the

US00007696

61

1 direction you go in.
2      MS. STRICKLAND: Okay.
3      MR. ISHIDA: Yeah. And of course I won't say
4 anything to anybody else at this point because we don't
5 know how we're going to go forward.
6      MS. STRICKLAND: Okay.
7      MR. ISHIDA: So, do you have any questions for
8 me?
9      MS. STRICKLAND: I think you answered most of
10 the questions. Let me just -- I had written down a
11 couple, so let me just make sure that I'm not missing
12 anything. No. I -- I think this was very informative
13 and I appreciate you taking the time. Do you have any
14 questions? Okay. No.
15      MR. ISHIDA: I think you've got -- you've got
16 my -- you don't have my -- you've got my email address.
17 You don't have -- I'm going to be traveling.
18      MS. STRICKLAND: Okay.
19      MR. ISHIDA: So after this I'm going to
20 Raleigh, but I've also got a visit to [inaudible] so
21 I'm not going to be back in the office this week. If
22 you would like to reach me this week, here's my cell

62

1 phone number.
2      MS. STRICKLAND: Okay.
3      MR. ISHIDA: And so you can just let me know.
4 Otherwise [inaudible].
5      MS. STRICKLAND: Okay. Thank you.
6      MR. ISHIDA: Thank you so much for coming out.
7      MR. COOPER: Thank you.
8      MS. STRICKLAND: Thank you.
9      MR. COOPER: I think [inaudible] do something
10 with the lights. I'll figure that out.
11      MS. STRICKLAND: We'll figure that out. All
12 right. Thank you very much.
13      MR. COOPER: Thank you very much. I
14 appreciate.
15      MR. ISHIDA: Thank you. Have a good one.
16      MR. COOPER: Thank you. You want to go to the
17 restroom?
18      MS. STRICKLAND: Let's -- yeah. Let's go to
19 the restroom.
20      MR. COOPER: Okay. Let me hold your stuff when
21 you go.
22      MS. STRICKLAND: No. No. You go first.

63

1      MR. COOPER: I'll do that.

64

1           CERTIFICATE OF TRANSCRIBER
2      I, Chris Naaden, a transcriber, hereby declare
3 under penalty of perjury that to the best of my ability
4 from the audio recordings and supporting information;
5 and that I am neither counsel for, related to, nor
6 employed by any of the parties to this case and have no
7 interest, financial or otherwise, in its outcome, the
8 above 63 pages contain a full, true and correct
9 transcription of the tape-recording that I received
10 regarding the event listed on the caption on page 1.
11
12      I further declare that I have no interest in
13 the event of the action.
14
15      _[signature]_
16
17 February 10, 2023
18 Chris Naaden
19
20
21
22

US00007709



# Transcript of 181005_1434_Redacted_Limited Confidentiality

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

US00007730

1

2

3

4

5

6

7                         CONVERSATION

8        "181005_1434_Redacted_Limited Confidentiality"

9      IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10                        AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20   Job No.: 479402

21   Pages: 1 - 262

22   Transcribed by: Christian Naaden

```
 1              MS. STRICKLAND:  Okay. Sure. [inaudible]

 2              MS. BEAM:  How's [inaudible]

 3              MR. STRICKLAND:  Doing all right; how are you?

 4              MS. BEAM:  I'm okay. [inaudible]

 5              MS. STRICKLAND:  We actually were just down

 6     there.

 7              MS. BEAM:  Okay. [inaudible]. So [inaudible]

 8     wanted to ask you about [inaudible] okay?

 9              MS. STRICKLAND:  Mm-hmm.

10              MS. BEAM:  And in it, you checked the box that

11     you were not willing to waive confidentiality in order

12     to permit [inaudible] office or to attempt resolution

13     of the [inaudible] matter. Now, I just want to make

14     sure you understand what that means when you check that

15     box; okay? That means that I can't talk to anyone.

16              MS. STRICKLAND:  Mm-hmm.

17              MS. BEAM:  So I won't be able to investigate

18     your claim. However, if you waived the confidentiality,

19     what that means is that your claim still has to be

20     confidential.

21              MS. STRICKLAND:  Okay.

22              MS. BEAM:  I can only share it with those that
```

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 19 of 51

US00007733

```
1    are on a need-to-know basis which would be --
2            MS. STRICKLAND:  Okay.
3            MS. BEAM:  -- like James Ishida would get a
4    copy of my report. Most likely, he'd share it with
5    Chief Judge Gregory --
6            MS. STRICKLAND:  Okay.
7            MS. BEAM:  -- since he's aware and probably
8    wants to be kept in the loop. And then I would need to
9    talk with JP Davis and Mr. Martinez --
10           MS. STRICKLAND:  Okay.
11           MS. BEAM:  -- since they're involved in the
12   claim. But and if there were any other witnesses that --
13   -
14           MS. STRICKLAND:  Uh-huh.
15           MS. BEAM:  -- you wanted me to talk to, I can.
16   But other than that, that would be the extent of my
17   communication about this matter to anybody.
18           MS. STRICKLAND:  Okay.
19           MS. BEAM:  Okay?
20           MS. STRICKLAND:  Would they --
21           MS. BEAM:  And also --
22           MS. STRICKLAND:  I'm sorry. Keep going.
```

```
1            MS. STRICKLAND:  No, they don't.
2            MS. BEAM:  Government employees, you know, a
3  qualified government employee, since they haven't done
4  that for that long. [Talking in background] [Shuffling
5  things around in background]
6            MS. STRICKLAND:  For -- for investigating it?
7            MS. BEAM:  [Inaudible]
8            MS. STRICKLAND:  Well, yeah -- yeah, I mean
9  think that's -- that's necessary.
10           MS. BEAM:  So, will you write a note on here
11 basically saying I agree to allow me to speak with Tony
12 Martinez and JP Davis solely to investigate this case.
13           MS. STRICKLAND:  Okay.
14           MS. BEAM:  And if there are any other people
15 that you would like me to talk to, and I understand
16 it's too late tonight and we're probably all a little
17 tired, so why don't you think about it over the
18 weekend, send me an email on Tuesday and just let me
19 know if there's anyone else that you would like me to
20 talk to.
21           MS. STRICKLAND:  Okay.
22           MS. BEAM:  Like you two discuss it, you know,
```

1    if you've heard this another time, maybe they'll have

2    some input as well. And I'm happy to go to whatever

3    length I need to go to get this investigated completely

4    and get you a resolution that's fair.

5         MS. STRICKLAND:  Thank you. I do appreciate

6    that, and I appreciate just your attention to it.

7         MS. BEAM:  Yeah.

8         MS. STRICKLAND:  But I agree to allow Heather

9    Beam to speak with Tony Martinez and JP Davis solely

10   for the purpose of investigating my complaint.

11        MS. BEAM:  Okay. Thank you.

12        MS. STRICKLAND:  I'm sorry for the [Shuffling

13   things around in background] and I understand that.

14   That's what I said when I talked to Nancy and I think I

15   was on the phone with her for over two hours and I was

16   like what just happened.

17        MS. BEAM:  I just hope my husband remembers

18   that I told him to pick up our [inaudible] this

19   morning. [Talking in background]

20        MS. STRICKLAND:  If you don't mind, I'm going

21   to grab my parking ticket, because it got my little

22   [inaudible] on it.

```
1                CERTIFICATE OF TRANSCRIBER

2       I, Chris Naaden, a transcriber, hereby declare

3   under penalty of perjury that to the best of my ability

4   from the audio recordings and supporting information;

5   and that I am neither counsel for, related to, nor

6   employed by any of the parties to this case and have no

7   interest, financial or otherwise, in its outcome, the

8   above 261 pages contain a full, true and correct

9   transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12       I further declare that I have no interest in

13  the event of the action.

14

15

16

17

18       February 10, 2023

19       Chris Naaden

20

21

22
```



# Transcript of 181109_1540_Redacted_Limited Confidentiality

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7                          CONVERSATION

8        "181109_1540_Redacted_Limited Confidentiality"

9      IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10                        AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20    Job No.: 479402

21    Pages: 1 - 33

22    Transcribed by: Christian Naaden

US00008045

```
 1              MR. STRICKLAND:  Yes. Something's gone wrong
 2    because Tony triggered nine --Caryn triggered nine and
 3    10 -- thought the nines were unified.
 4              MS. BEAM:  Right.
 5              MR. STRICKLAND:  Counseling ends on the 29th
 6    of November and there's no renewal of it based off of
 7    what James has said.
 8              MS. BEAM:  Right. Right
 9              MR. STRICKLAND:  So, it seems at that point
10    it's going to mediation.
11              MS. STRICKLAND:  Right. And I'm --- I'm just -
12    - you know, I mean, I -- I haven't heard anything from
13    James in like six weeks.
14              MS. BEAM:  Yeah. Well, there may have to be a
15    separate investigation done then under Tony's conduct
16    because I mean, I'd really, you know, been focusing on
17    the sexual harassment and intimidation claim with JP as
18    well as how Tony handled it.
19              MS. STRICKLAND:  Mm-hmm.
20              MS. BEAM:  Okay? So, that's what I've been
21    focused on. So, if there's a true feeling of
22    retaliation, then I think that might be investigated
```

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 26 of 51

US00008068

LIMITED CONFIDENTIALITY

1   separately. I'll have to talk to James about that

2          MS. STRICKLAND:  Mm-hmm. I mean, the -- yeah.

3   And it would be -- it would basically be based on the -

4   - the same facts. I had -- and everything that I've

5   given you. Do you have a copy of both the grievance and

6   the -- you do? Okay.

7          MS. BEAM:  Yep.

8          MS. STRICKLAND:  That's good. That'll help.

9   Yeah.

10          MR. STRICKLAND:  That's it?

11          MS. STRICKLAND:  Yeah. So, yeah. I'm glad that

12   we clarified that because I kept thinking of like, you

13   know -- because, you know, like I said, basically the

14   last substantive communication I have with James,

15   except for getting this one extension, is he basically

16   said, you know, if you want to do counseling, all we

17   can really do for you at this point is, you know, you

18   send the list of demands to Tony, basically, and --

19          MR. STRICKLAND:  Well, hold on.

20          MS. STRICKLAND: Yeah.

21          MR. STRICKLAND:  But you -- you're pretty

22   certain you're not the chapter x counselor?

1           CERTIFICATE OF TRANSCRIBER

2     I, Chris Naaden, a transcriber, hereby declare

3 under penalty of perjury that to the best of my ability

4 from the audio recordings and supporting information;

5 and that I am neither counsel for, related to, nor

6 employed by any of the parties to this case and have no

7 interest, financial or otherwise, in its outcome, the

8 above 32 pages contain a full, true and correct

9 transcription of the tape-recording that I received

10 regarding the event listed on the caption on page 1.

11

12     I further declare that I have no interest in

13 the event of the action.

14

15

16

17     February 10, 2023

18     Chris Naaden

19

20

21

22



# Transcript of 181127_1711

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7                        CONVERSATION

8                        "181127_1711"

9       IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10                        AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20      Job No.: 479402

21      Pages: 1 - 40

22      Transcribed by: Christian Naaden

US00008090

1    implicated -- is -- if it's substantiated that he was

2    involved in escalating and mishandling this situation,

3    then he shouldn't be involved in discipline.

4            But on the same token, it - it also seems to

5    be important to the Chapter 10 claim because that --

6    and that was kind of -- and I feel like - you know, I'm

7    not sure if there's confusion over my disqualification

8    request or there's a way that I can make it more clear.

9            I'm happy to do that but it's the same problem

10   essentially that you just identified, which is that if

11   he is involved and he -- and retaliation is

12   substantiated against him, then I don't see how I can

13   negotiate a settlement with him.

14           MR. ISHIDA:  Well, I think at the time it was

15   raised -- and I had a conversation with Judge Gregory

16   about it. I think the initial steps was -- it's

17   premature at this point without a finding. Because if

18   we disqualify Tony now, then there's really no one that

19   represents the office, so I think -- I think -- if I

20   remember, the thought was well why don't we see how the

21   investigation goes and we can make a decision at the

22   appropriate time as to whether or not Tony's involved

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 31 of 51

US00008103

1  or not. I think that's how the discussion went.

2       MS. STRICKLAND:  Okay. So --

3       MR. ISHIDA:  But -- but in any event, I mean I

4  think the practical effect is if -- if Heather does

5  substantiate the allegation of retaliation, then, you

6  know, we would not consider it appropriate that he be

7  in a position to determine discipline.

8       And that would be -- so under the plan, the

9  chief judge or the unit executive is charged with

10 determining discipline. So, in this case, I would

11 imagine that Judge Gregory would be involved.

12      MS. STRICKLAND:  Okay. So, is -- is there --

13 so, it sounds like the disqualification issue, it's

14 almost like, to put a legal term on it, it's being held

15 in abeyance. I guess one thing that's being -- that's

16 confusing to me though is why I have not actually

17 received a ruling on that yet because I think that that

18 would help me have more clarity on where we are in the

19 process and you know, kind of what -- what my options

20 are, especially if, you know, fifteen days from now or

21 whatever, I file for mediation, I mean it's really

22 going to be the same issue.

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 32 of 51

US00008104

```
1              CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3   under penalty of perjury that to the best of my ability

4   from the audio recordings and supporting information;

5   and that I am neither counsel for, related to, nor

6   employed by any of the parties to this case and have no

7   interest, financial or otherwise, in its outcome, the

8   above 39 pages contain a full, true and correct

9   transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13  the event of the action.

14

15

16

17        February 10, 2023

18        Chris Naaden

19

20

21

22
```

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 33 of 51

US00008129



# Transcript of 190117_1621_Limited Confidentiality

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

US00008201

1

2

3

4

5

6

7               CONVERSATION

8        "190117_1621_Limited Confidentiality"

9   IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10                 AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20   Job No.: 479402

21   Pages: 1 - 62

22   Transcribed by: Christian Naaden

US00008202

1          MR. ISHIDA:  Sorry. I missed that.

2          MR. STRICKLAND:  Is it -- is it based on the

3    findings of the investigator's report?

4          MR. ISHIDA:  No. This was -- this was -- he --

5    Judge Gregory had told me his decision before the

6    reports came out.

7          MR. STRICKLAND:  Okay.

8          MS. STRICKLAND:  Okay.

9          MR. STRICKLAND:  Yeah. It's -- the reason why

10   I ask is I -- I -- I was just curious if -- I -- I kind

11   of thought that, based off prior discussions, that --

12         MR. ISHIDA:  Well, no -- no --

13         MR. STRICKLAND:  -- we -- we were waiting on

14   the report in order to determine whether the facts

15   supported disqualification or not.

16         MR. ISHIDA:  No, no. I'm -- I'm sorry. I'm --

17   I'm ge- -- I'm getting -- I'm getting mixed up. Let me

18   -- let me remember this. And -- and she was actually

19   with me when we talked about this.

20         I think the report had come out, because

21   that's why we were waiting on Caryn's request, because

22   we could not make that determination until we actually

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 36 of 51

US00008206

1  saw the report. Think that was right. I'll have to go

2  back and double check, but I think that's why we had

3  waited.

4           MR. STRICKLAND:  Yeah -- yeah. I recall the --

5  well, my sense of what the hold-up was from when that

6  de- -- request for disqualification was filed in

7  September is that it -- the investigation needed to be

8  done in order to find out whether Tony had engaged in

9  wrongdoing, including actionable retaliation.

10           MR. ISHIDA:  Right. And -- and we -- so we

11  waited for the report. And we also -- we also reached

12  out to the AO's general counsel's office for their

13  input as well.

14           MR. STRICKLAND:  Okay.

15           MS. STRICKLAND:  Okay.

16           MR. STRICKLAND:  Is it just a -- is it -- is

17  it more of a basis where a unit executive just can't be

18  disqualified? Or is it based off the --

19           MR. ISHIDA:  We- --

20           MR. STRICKLAND:  -- findings of the report?

21           MR. ISHIDA:  You know, I -- I would wait for

22  the order to come out, because the order's going to

1  speak for itself.

2          MR. STRICKLAND:  Okay. But you -- you're

3  preparing the order. So --

4          MR. ISHIDA:  Well, I'm preparing it for Judge

5  Gregory's review.

6          MR. STRICKLAND:  Okay.

7          MS. STRICKLAND:  Okay. We'll -- we'll wait.

8  Let's -- yeah. We'll -- we'll wait --

9          MR. ISHIDA:  Okay. So --

10          MS. STRICKLAND:  -- for the order.

11          MR. ISHIDA:  So I think what I would show that

12  -- let's see. So -- so the -- this was -- this was

13  months ago. At the time, I was, you know, meet- --

14  there were -- there were -- there were -- there was

15  decision-making, and there was, you know, consideration

16  by me as to -- well, at the time I was contemplating

17  ordering an investigation, and the scope of the

18  investigation.

19          I reached out to the AO's general counsel

20  office for, you know, guidance on that. And one of the

21  things that we had talked about was, okay, when this

22  report is completed, who is it distributed to? So we

US00008208

1    of course, this is -- we're not trying to shoot the

2    messenger here. We know this is, you know -- you're --

3    this is what OGC recommended. But the idea that it

4    disincentivizes an informal resolution seems really

5    counterintuitive to me because it actually seems to

6    create an incentive to accelerate this.

7          Because neither side can find out the basic

8    facts and findings of what happened without it going to

9    a final hearing. So I'm not sure -- to the extent that

10    there is a pragmatic angle on what they're trying to

11    incentivize, it may be true as a general matter. But

12    I'm not sure that that is true in this particular case.

13          MR. ISHIDA: Well, I don't disagree with what

14    either of you has said. You know, I'm -- you know, I --

15    I'm left in the, I guess, impossible situation of

16    trying to discern the basis for OGC's advice to us. And

17    I don't -- certainly don't want to speak for them.

18          I mean, their -- their advice, their counsel

19    to us make a lot of sense, and we intend to follow it.

20    Does it, you know -- I mean, it -- are there issues and

21    difficulties? I think we can all agree that there are

22    different views on it they can take.

Case 1:20-cv-00066-WGY   Document 255-11   Filed 06/29/23   Page 39 of 51

US00008219

```
 1              MR. STRICKLAND:  On interpreting the report?
 2              MR. ISHIDA:  No. On -- on interpreting what
 3    makes sense, and what procedure we, you know --
 4    effectuates a good outcome. I mean, I think we can -- I
 5    think we all -- you know, we can agree that the process
 6    has -- is not perfect.
 7              MS. STRICKLAND:  Right. Well, what --? I'm
 8    sorry. I'm just going back to something a little bit
 9    earlier that you said about Chapter 9. So when -- when
10    will Chapter 9 be acted upon?
11              MR. ISHIDA:  Well, unlike Chapter 10, there
12    are no deadlines in Chapter 9. But -- but, you know,
13    there -- there -- there is a good, practical reason for
14    deferring this. I mean, if -- if -- if you -- if you
15    look at judicial misconduct, there's a lot of times
16    where a complaint against a judge will be filed.
17              An EDR complaint and a judicial misconduct
18    complaint under the Judicial Conduct and Disability Act
19    typically, like -- like in this case, you've got two
20    different claims, two different tracks a lot of times
21    arising from the same set of fact.
22              And so what we've done in the past is we have
```

US00008220

```
 1   done what we are contemplating doing here. And that is,

 2   you hold the judicial conduct piece of this in advance,

 3   and you let the EDR piece just go forward.

 4           MR. STRICKLAND:  It's an uncomfortable

 5   situation. I -- you know, because this is going to

 6   require Caryn to mediate with somebody that she has

 7   alleged engaged in wrongdoing. That's -- that's an

 8   awkward thing to do. It's also going to require her to

 9   come up with thoughts about how this could be resolved

10   not knowing whether the first assistant is going to

11   remain in his job and in that duty station.

12           MR. ISHIDA:  Well, I think this is -- that

13   would be certainly be a matter that can be brought in

14   mediation.

15           MR. STRICKLAND:  So it -- so -- so but -- but

16   in -- but how would that work in mediation? How would

17   you bring it up? Would you have to, essentially, try to

18   talk Tony into under- -- understanding that?

19           MR. ISHIDA:  Well --

20           MR. STRICKLAND:  Because that's been attempted

21   before.

22           MS. STRICKLAND:  I --
```

```
1                   CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3   under penalty of perjury that to the best of my ability

4   from the audio recordings and supporting information;

5   and that I am neither counsel for, related to, nor

6   employed by any of the parties to this case and have no

7   interest, financial or otherwise, in its outcome, the

8   above 61 pages contain a full, true and correct

9   transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13  the event of the action.

14

15

16

17        February 10, 2023

18        Chris Naaden

19

20

21

22
```



# Transcript of 190207_1056_Limited Confidentiality

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

CONVERSATION

"190207_1056_Limited Confidentiality"

IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

AMERICA, ET AL.

Job No.: 479402

Pages: 1 - 103

Transcribed by: Christian Naaden

US00008284

1    that they were going to deny it. So I don't even know.

2    I don't even think anybody's reached out to Tony that

3    I'm aware of.

4             MR. STRICKLAND:  Tony won't -- in all

5    likelihood, he will not know much of anything. He'll

6    have gotten the two standard forms that are two pages

7    each that initiates counseling and the mediation

8    request. He'll have about four pages of information. He

9    won't know.

10            MS. STRICKLAND:  He doesn't know.

11            MR. STRICKLAND:  He's a target.

12            MS. STRICKLAND:  Right. He doesn't have that

13   narrative grievance that I gave you.

14            MR. SMITH:  Okay.

15            MR. STRICKLAND:  He was removed from the

16   process very early on.

17            MR. SMITH:  And that may be why, because he is

18   involved in what happened and -- but he is the decision

19   maker. Okay. Well, we'll -- we'll see what -- what

20   happens Monday, but I mean, he was very quick to react

21   to me, so that's generally a good sign. I've had cases

22   where they quite try and even meet with me. I've seen

```
1                    CERTIFICATE OF TRANSCRIBER

2         I, Chris Naaden, a transcriber, hereby declare

3    under penalty of perjury that to the best of my ability

4    from the audio recordings and supporting information;

5    and that I am neither counsel for, related to, nor

6    employed by any of the parties to this case and have no

7    interest, financial or otherwise, in its outcome, the

8    above 102 pages contain a full, true and correct

9    transcription of the tape-recording that I received

10   regarding the event listed on the caption on page 1.

11

12         I further declare that I have no interest in

13   the event of the action.

14

15

16

17         February 10, 2023

18         Chris Naaden

19

20

21

22
```



# Transcript of 190226_1153

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

US00008470

1

2

3

4

5

6

7           CONVERSATION

8          "190226_1153"

9   IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF

10             AMERICA, ET AL.

11

12

13

14

15

16

17

18

19

20   Job No.: 479402

21   Pages: 1 - 118

22   Transcribed by: Christian Naaden

US00008471

Transcript of 190226_1153

```
 1   and I heard Tony come in and say, I'll just promise you
 2   he won't show up in Ashville anymore and I promise you
 3   even though I'm going to make you do trial work, JP
 4   won't do anything to you, because even though he's
 5   still first assistant and over all of that, I just -- I
 6   don't think that's going to -- nobody's going to buy
 7   that.
 8           MR. SMITH:  Well, what I mean by that --
 9           MR. STRICKLAND:  Is it because they won't
10   micromanage the office?
11           MR. SMITH:  Well, partly. One, what I'm mainly
12   talking about is you're not going go get what you want,
13   a lot of what you want is the backtalk and the optics
14   of the whole thing to go away and that's not going to
15   happen.
16           I think that goes away more likely if you have
17   a settlement agreement, because to me that vindicates
18   you, that Tony had to sit down and resolve this because
19   you were wronged.
20           That's mainly what I'm talking about, but to
21   get back to your other thing, it's like telecommuting.
22   If you go look at the telecommuting police of the
```

US00008516

Transcript of 190226_1153

1    Fourth Circuit, it's the unit head's decision and it

2    can be revoked at any time.

3            There is no right and that's specifically in

4    the policy, there is no right of an employee to

5    telecommute and if Tony doesn't re-up and somebody else

6    comes in, I mean, first thing they could do is tear it

7    up.

8            Therefore I think in drafting a settlement

9    agreement that binds Tony, you have the better ability

10   to work these things in there, because I don't think

11   the judge is going to micromanage this office and tell

12   a federal defender how to do his job and run his

13   office.

14           They'd be better off terminating him. They

15   would -- to me, terminate him first.

16           MS. STRICKLAND:  Mm-hmm.

17           MR. SMITH:  But that's not something, the way

18   I read the EDR, and I'm not giving any legal advice,

19   that would allow you to put in a [inaudible] for relief

20   that JP or Tony be terminated.

21           MS. STRICKLAND:  Right.

22           MR. SMITH:  I think you all read it the way I

US00008517

Transcript of 190226_1153

1           CERTIFICATE OF TRANSCRIBER

2     I, Chris Naaden, a transcriber, hereby declare

3  under penalty of perjury that to the best of my ability

4  from the audio recordings and supporting information;

5  and that I am neither counsel for, related to, nor

6  employed by any of the parties to this case and have no

7  interest, financial or otherwise, in its outcome, the

8  above 117 pages contain a full, true and correct

9  transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12     I further declare that I have no interest in

13  the event of the action.

14

15

16

17     February 10, 2023

18     Chris Naaden

19

20

21

22

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM