# EXHIBIT VV



# Transcript of Conversation 180913 1633

**Case:** Caryn Devins Strickland -v- United States of America, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

```
 1
 2
 3
 4
 5
 6
 7                    CONVERSATION
 8                   "180913_1633"
 9    IN RE: CARYN DEVINS STRICKLAND V. UNITED STATES OF
10                   AMERICA, ET AL.
11
12
13
14
15
16
17
18
19
20   Job No.: 484966
21   Pages: 1 - 66
22   Transcribed by: Christian Naaden
```

US00008783

1 reason.
2 　　　　MS. DEVINS: Okay. So I guess what it sounds
3 like is that the counseling stage is basically more
4 procedural, and I get that, you know, a resolution is
5 encouraged. I mean, in terms of a resolution, is there
6 any way procedurally, to come to that by basically
7 skipping over Tony, you know, say, making -- I'm sorry.
8 Yeah. Go ahead.
9 　　　　FEMALE 1: Well, I'm going to say probably
10 not, in this way. I don't know if -- the only person
11 who probably can speak to what the Federal Public
12 Defender's office is willing to give you in this
13 settlement would probably be him.
14 　　　　It doesn't mean that he has to be -- Chief
15 Judge Gregory might say, well, we're going to give that
16 authority to someone other -- obviously, not a second,
17 but someone else. So he could do that but technically,
18 I don't ever think that's -- that -- that idea that the
19 person that you're having the -- the person has the
20 authority to make the settlement agreement, I think
21 should be -- well, should be might be wrong.
22 　　　　But I don't think it's a bad thing that Tony

```
 1   is going to be able to help with settlement
 2   negotiation. He may be the only one. Let's say that
 3   money is going to be given to you. He may be the only
 4   person who has the authority and I don't really know,
 5   as much as Federal Public Defenders, who else would
 6   have some authority, but he may be the only one who has
 7   the authority to grant you time off. He might be the
 8   only one who has the authority to grant money. I don't
 9   --
10           MS. DEVINS:  I mean, but the -- the problem
11   though is that, I mean, I already tried to come to an
12   agreement with him and he acted in a way that was
13   inappropriate and retaliatory, you know, so that's why
14   it's -- it's hard for me to hold those two ideas in my
15   mi- -- I mean, it seems to me like couldn't, you know?
16           FEMALE 1:  I heard you. And so think of it in
17   a different way in what I'm even saying about it. And I
18   totally understand that. I -- I do know some of what
19   obviously has gone on through Nancy. And not everything
20   because everything I didn't -- it's sort of like I
21   didn't need to know everything.
22           MS. DEVINS:  Right.
```

1     FEMALE 1: But I know it to know all of the
2  characters, and I use the term on purpose, but I do
3  know at least all of the players and how all of the
4  players allegedly, at least, have not always behaved as
5  ideal employers.
6     And so I at least know that, and I know a
7  little for me than that, but I'm just keeping it very
8  simple in terms of what I'm saying to you. But here's
9  the thing. I don't -- it doesn't mean that by him
10 having some say in the negotiation of the -- in
11 negotiating the settlement, doesn't -- all it says, and
12 it's not all it says is he is the only one -- that he
13 can't -- he can only speak for the office.
14     So I'm not saying that he should be given any
15 extra weight, but in the same way that no one can speak
16 to your interest, but you, no one can commit the office
17 but him, presumably. Again, I don't know whether the
18 Chief Judge has the ability to do that, the Chief
19 Circuit Judge.
20     I don't know who else might. And so I'm going
21 on my limited understanding of the way offices are
22 normally stacked and organized. I don't really know in

1 the case of a Federal Public Defender, if there is
2 someone else there who has the ability to speak for the
3 office and to make the settlement agreement reach six.
4     But I don't want it to be some little, you
5 know, low level individual because at the end, you need
6 someone -- you want to hold the employing office
7 accountable for whatever it is that you reach in the
8 settlement, and so you can't have it be, you know,
9 Carl, who sits next door.
10     MS. DEVINS: Right.
11     FEMALE 1: It has to be --
12     MS. DEVINS: Well --
13     FEMALE 1: If there's a real cost -- if I made
14 up the Carl name, I didn't use that on purpose.
15     MS. DEVINS: Yeah. No, no. There's no Carl but
16 so is it not possible to have somebody at defender
17 services be -- ?
18     FEMALE 1: At the AO?
19     MS. DEVINS: Yeah.
20     FEMALE 1: You know what? This is a very
21 peculiar situation so it's -- it -- it -- I'm going to
22 say probably not.

1     MS. DEVINS: Okay.
2     FEMALE 1: I've never [inaudible] and I once
3  asked, and it was a former court I clerked on which I
4  actually adore, if I would be their EDR coordinator for
5  something because they were having some difficulties.
6  And it was a very touchy situation that the Chief Judge
7  didn't want everyone on the court involved in.
8     And it really was something I would've wanted
9  to for the sake of that court. Again, I love them
10 dearly. But I even was like, no. I can't. That's not
11 going to be possible. We typically, at the AO, don't
12 step into your shoe. Now, this is a situation where we
13 are definitely trying to help, if I step into your
14 shoes -- not yours, but step into the shoes of the
15 employing office.
16    MS. DEVINS: So I guess then what does
17 disqualification mean then? Because that's what I
18 would've thought that disqualifying somebody would do.
19 So like I mean, I'm not trying to -- I'm just confused
20 like what is -- what am I disqualifying him from?
21    FEMALE 1: But you don't know what he was
22 disqualify- -- you don't know. So I have no idea what -

1  - if Judge Gregory's going to allow it or not. So
2  remember the situation I just explained to you earlier
3  that was handled last year, in that instance, the
4  individual was disqualified.
5          Just -- but they were disqualified with very
6  specific -- and very specific times in the processing
7  of it. I've seen -- and so I'm going to use this as a
8  bad example, but I'll use it. Let's say that in the
9  matter where you had the allegation against Judge
10 Kazinski, let's say that it proceeded in an EDR claim.
11         It did not, but let's say that it proceeded in
12 an EDR claim or it was initiated from an EDR claim. You
13 wouldn't have had Judge Kazinski be involved in the
14 matter. And so you wouldn't have Tony be the EDR
15 coordinator. You wouldn't have Tony be the mediator.
16 You wouldn't have Tony be the hearings officer.
17         But just like you have an opportunity just to
18 present your side, he has an opportunity to actually
19 defend his position. That's a lot different. So I -- I
20 don't want to give the impression that -- and I don't
21 know what Judge Gregory is going to do with it, but I
22 really do feel this part is either way.

1       Even if Judge Gregory doesn't disqualify him
2  from being able to be at the negotiating table for
3  mediation, that is not a [inaudible] thing. He's not --
4  so he's not going to have the authority to decide your
5  case.
6       He's not going to have the authority to render
7  a decision. He is simply having the opportunity to give
8  his position. He has the opportunity to be at the table
9  and negotiate. And so I do understand -- I understand
10 completely sort of where you're coming from.
11      But I don't want to give him more authority
12 than he has in the process if Judge Gregory happens to
13 disqualify him from everything but mediation. Because
14 what, in this matter, I was describing to you, they --
15 this individual is completely removed from it but they
16 did allow the individual to at least have their
17 interests heard at mediation.
18      MS. DEVINS:  Sure.
19      FEMALE 1:  And -- and it really wasn't for the
20 benefit -- I'm going to use Tony again. It really isn't
21 for the benefit of Tony. It's because no settlement
22 that you reached is going to be able to stick for the

```
 1  whole office without someone who is a higher-up in that
 2  office being the signatory.
 3          MS. DEVINS:  Right. Right. Okay. That makes --
 4  okay.
 5          FEMALE 1:  For that reason. But I don't want
 6  you to think he's going to be like, oh, well, no. I
 7  don't want to give her that because of -- and then
 8  people are going to be like, oh, exactly. [inaudible]
 9  so right.
10          MS. DEVINS:  Ri- -- yeah. I guess that's what
11  I'm afraid of because already, you know, he -- like,
12  when I kind of thought that we came to this agreement,
13  he agreed to all of these terms except, you know, he's
14  been like, I'm reserving the right to force you to work
15  in Charlotte after this.
16          And I'm like, well, how can you say that when
17  you acknowledge that there was harassment? You know,
18  you conceded that you knew of my concerns. You said you
19  tried to address them and yet you're putting your foot
20  down and you're saying, yeah.
21          But I'm going to force you to work in the same
22  building as your harass- -- I mean, to me, it just
```

```
 1   seemed so completely out of line so I'm afraid of him.
 2   And he says, oh, you know, we don't have office space.
 3            Well, I -- I mean, my office is in a cubicle
 4   that's literally inside a utility closet right now in
 5   Charlotte so I don't quite buy that. But anyways,
 6   putting that all aside, that's the kind of thing I'm
 7   afraid of is him being like, well, we just don't have
 8   office space.
 9            Or saying something really silly and them
10   being like, well, you know, I -- but -- which I guess
11   in that case, if -- if that's the case, I just won't
12   accept the proposed settlement and I'll move on to the
13   next stage, you know, if that's --
14            FEMALE 1:  Yes. Sure. And you sort of read my
15   mind. It is -- and so I don't want to attribute good
16   motives to him at all so I'm going to attribute really
17   bad motives for these purposes of this conversation
18   right now.
19            LET'S say that everything that he offers is so
20   not [inaudible] to you, then you won't accept a
21   settlement agreement. You'll move on to a hearing where
22   you'll have a judicial officer make some decisions.
```

1    I don't want to lie that I know how it's going
2    to play out in the end but I do think that given the
3    climate that we're in right now, you probably have a
4    better chance of being heard and the matter being taken
5    seriously.
6          None of us want to have either an employing
7    office and/or our agency on the front page of a major
8    newspaper. Particularly when we had a very public,
9    let's say lashing in some ways by the hill lately, that
10   a lot of it based on the allegations that were raised
11   by Judge Kazinski and then Judge Kazinski stepping
12   down.
13         MS. DEVINS:  Right.
14         FEMALE 1:  And so it's just -- I -- I don't
15   think this is the time, at any time there is, that it's
16   going to be taken somewhat seriously. I'm not saying
17   that I wouldn't have been in the past, but I think
18   everyone, both the AO has been [inaudible] to make sure
19   that it's taken care of. The court has an incentive to
20   make sure that they take care of it. If -- if not for
21   that, there would be no other reason that the AO would
22   have been that they have.

```
 1          Now, Nancy might have still had the
 2   involvement she had initially for the obvious reason
 3   because of [inaudible] so that's different, but there
 4   would not be an entire group of people who are prepared
 5   to make sure that you are afforded your rights.
 6          MS. DEVINS:  Okay. Okay.
 7          FEMALE 1:  And so that part, I don't know how
 8   it's going to take -- how it's going to, you know,
 9   shake out in the end, but I don't believe that it will
10   be all to the benefit of Tony at the detriment of you.
11          I don't believe that that's going to be the
12   way it pans out. But should, in mediation, Tony provide
13   you with some options that just don't seem palatable,
14   then you will go to a hearing specifically.
15          MS. DEVINS:  Okay. So when you say -- you said
16   something about like the case being deci- -- I mean the
17   counseling and the -- the settlement seems to be one
18   thing, but in terms of just like the case being
19   decided, is that -- does that refer to the
20   investigation of the facts and whether the harassment
21   and retaliation occurred, or is it more of like a
22   decision about the remedy that's appropriate, or is it
```

```
1                CERTIFICATE OF TRANSCRIBER
2          I, Chris Naaden, a transcriber, hereby declare
3    under penalty of perjury that to the best of my ability
4    from the audio recordings and supporting information;
5    and that I am neither counsel for, related to, nor
6    employed by any of the parties to this case and have no
7    interest, financial or otherwise, in its outcome, the
8    above 65 pages contain a full, true and correct
9    transcription of the tape-recording that I received
10   regarding the event listed on the caption on page 1.
11
12           I further declare that I have no interest in
13   the event of the action.
14
15   _____
16           March 22, 2023
17           Chris Naaden
18
19   (484966, 180913_1633)
20
21
22
```