# EXHIBIT ZZ

# QUESTIONNAIRE FOR ECONOMIC ELEMENTS OF LOSS
# EMPLOYMENT TERMINATION

If possible, this form should be completed by the individual whose employment was terminated.

Please answer all appropriate questions. If you do not understand a question do not hesitate to contact Dr. Albrecht.

Gary R. Albrecht, Ph.D.
Albrecht Economics, Inc.
1817 Georgia Ave.
Winston-Salem, NC  27104


Telephone: (336)727-9435
Email: Albrecht@AlbrechtEconomics.com
Fax: (336) 722-9452

## A. General Information

1) Name of Terminated Individual: <u>Caryn Strickland</u>

   Date of Birth: ███

   Date of Termination: <u>3/15/2019 (Constructive Discharge)</u>

   Marital Status: Married 4/28/2018 to present

   Gender: Female

   Race: <u>White</u>

   Address: ███████████████████ (physical)
   <u>PO Box 92, Lynn, NC 28750 (mailing)</u>

2) Name of Individual Completing Questionnaire:

   <u>Caryn Strickland</u>

   May Dr. Albrecht contact the plaintiff? Yes

   If yes, provide appropriate phone number(s)

   Home: _____ Work: _____

   Cell: ███████ ; email ███████████

3) Educational Attainment at the Time of Termination:

   <u>JD, magna cum laude, Order of the Coif, Duke University School of Law (2013)</u>

   <u>BA, summa cum laude, Phi Beta Kappa, University of Vermont (2010)</u>

   _____

4) Training, Special Skills and/or Licenses at the Time of Termination:

   <u>Bar licenses: NC (active), VT (inactive); admitted to federal practice in</u>

   <u>Western District of North Carolina, Fourth Circuit Court of Appeals, U.S.</u>
   <u>Supreme Court</u>

5) Educational Expectations at the Time of Termination:

Continuing legal education and on-the-job training

6) Educational Attainment since the Time of Termination:

Same, with focus on state appellate work instead of federal trial and appellate work

## B. Employment and Earnings

1) Employer when Terminated: Federal Government/Federal Defender Office of the Western District of North Carolina ("FDO")

Date when Employment Began: started at FDO on August 21, 2017 (JSP 14/1); however, I began federal employment earlier (Sept. 2014), which is relevant for retirement and benefits purposes. See attachment.

Nature of Work: Was hired as a Research and Writing attorney (JSP pay scale) and later reclassified to an Assistant Federal Public Defender position (AD pay scale). JSP Pay scale (same as GS federal pay scale): https://www.uscourts.gov/sites/default/files/archive_3/jsp_rest_of_the_us_2023.pdf

AD pay scale (same as pay scale for Assistant United States Attorneys): https://www.justice.gov/usao/career-center/salary-information/administratively-determined-pay-plan-charts

Method of Wages (Hourly or Salary): Salary

Rate at Time of Termination: 109,365.00 (AD Level 28)

Raises Received (Include Dates): see attachment

Was Overtime Work Common?: n/a

Was Work Steady?: Y

2) Annual Wages and Salary Received:

**Year     Income     Portion of Year Employed**

**See attached IRS wage and income transcripts; have also included last FDO pay stub**

_____   _____   _____

Attach earnings documentation (W-2s, tax forms, pay-stubs, etc.).

3) List Promotions (with dates):

   Step Increase from JSP 14/1 to 14/2 on October 30, 2017. Was eligible to receive Grade level promotion to JSP 15/1 on August 21, 2018. Conversion to AD 28 was authorized on August 28, 2018 and backdated to August 20, 2018 to prevent promotion to JSP 15/1. Salary for JSP is highly structured; once promotion to highest grade occurs (in this case, JSP Grade 15), salary increases occur regularly according to non-discretionary step increases. By contrast, salary within AD grades is discretionary within approved min/max bands. See more details below.

4) Employer Provided Benefits:

   Life Insurance: Yes, FEGLI Option B, 2x my pay (https://www.opm.gov/healthcare-insurance/life-insurance/)

   Individual Health Insurance: n/a

   Family Health Insurance: YES, FEHB Blue Cross and Blue Shield Basic Option Self Plus One (https://www.opm.gov/healthcare-insurance/healthcare/). A family plan would have been available to me when I had children. It also would have been available to me in retirement with retiree/employer shared premium structure.

   Retirement Plan: Yes, FERS FRAE and FICA (https://www.opm.gov/retirement-center/fers-information/). FERS service beginning computation date is 8/29/2016. As discussed below, federal employment ended on August 9, 2019.

   Investment Plan: Yes, TSP (employer matches applied). I am invested in the L 2050 fund. According to my records, TSP service computation date is 9/10/2014 (*i.e.*, for purposes of vesting) and agency contribution date is 8/29/2016 (*i.e.*, when I enrolled in TSP and agency contributions began). I maxed out my TSP contributions for the years 2017-2019 and intended to keep doing so for the foreseeable future.

   Bonus: paid occasionally, including after my termination, but I have not received info in discovery to give you more exact estimates. Bonuses were likely low enough to not justify delay in waiting on discovery for this category.

   Stock Options: n/a

   Other: Dental FEP BlueDental, PPO, National/International, High, Self Plus

> One. Again, a family plan would have been available to me when I had children.
>
> Sick/Annual Leave (https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/annual-leave/), plus 11 paid federal holidays (https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/federal-employee-compensation-package/). My service computation date for annual leave purposes is 9/10/2014. At the time of my constructive discharge, I was earning 6 hours annual leave and 4 hours sick leave per pay period. (See FDO last pay stub).
>
> Federal Long Term Care Insurance Program (https://www.opm.gov/healthcare-insurance/long-term-care/), FSA (https://www.opm.gov/healthcare-insurance/flexible-spending-accounts/), and Vision were available but I had not yet taken the opportunity to enroll, but I intended on enrolling in the future.

Please attach a copy of the I.R.A., 401K or Profit Sharing plan or attach a copy of the statement of benefits if available.

I am not sure if/how this applies to me, but if you tell me specifically what you're looking for, I can provide you information from my TSP account.

5) Out of the Ordinary Expenses Associated with Job:

n/a

6) Prior to Termination, What was the Planned Retirement Age? My federal pension minimum retirement age is 57 (w/ 30 yrs of service, assuming termination not considered break in service; if not, then 61 is when I would first become eligible for retirement). I believe age 67 would be an appropriate retirement age for these purposes because I would qualify for both federal retirement and normal/full social security. Alternatively, the average age of voluntary retirement for federal service (as of 2019) is 62.6 years: https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/retirement-statistics-and-trend-analysis-2015-2019.pdf.

7) Employment Expectations Prior to Termination: (promotions, new job, etc.):

My salary assumptions for front pay purposes are as follows (see also attachment): I should have been promoted to the equivalent of JSP 15/1 on August 21, 2018. The lost earnings chart previously provided to you is based on my progression on the JSP pay scale, assuming only future non-discretionary step increases with no future promotions. I used that pay scale for my initial disclosures because there is no speculation involved in calculating the salary, and it thus provides a more conservative baseline assumption. However, when I was reclassified to an Assistant Federal Public Defender position on August 20, 2018, I was moved to the AD pay scale and was no

longer being compensated on the JSP pay scale; therefore, it would likely be more accurate to use the AD pay scale to calculate front pay. With discretionary promotions, I would have maxed out my salary on the AD pay scale faster than I would have on the JSP pay scale, which is confirmed by the Defendants' own declarations in this case. (I can provide citations if that would be helpful). By the time of trial in September 2023, based on my years of experience and performance level, I would have qualified for compensation at the maximum of the AD-29 Grade ($149,044 base salary, for a total salary of $173,189 including RUS locality). Because that salary is the maximum of the AD pay scale, I would assume no further raises or promotions, apart from inflationary and general increases applied to that max rate. For example, between 2018 and 2023, the maximum base salary for the AD-29 grade increased approximately 7 percent.

**If you have worked since the termination, complete parts 8-13. If not, go to section C.**

8) Employer(s) since Termination: Self-employed attorney_____

Dates of Employment: May 25, 2021 (date of first court-appointed assignment) through present. Because back pay is not available in this case, I am not including employment information for the time period between when I left the federal government and began my current position.

Nature of Work: Appellate indigent criminal defense work (court-appointed)

Method of Wages (Hourly or Salary): Hourly_____

Current Rate: $75 (low level felony) or $85 (high level felony) (does not account for overhead costs)_____

Raises Received (Include Dates): Rates are set by statute; n/a__

Is Overtime Work Common?: n/a_____

Is Work Steady?: see below explanation_____

9) Annual Wages and Salary Received:

| Year | Income | Portion of Year Employed |
|------|--------|--------------------------|
| **See 1099 for 2022; vouchers for 2023** | | |
| | | |
| | | |
| | | |

Attach earnings documentation (W-2s, tax forms, pay-stubs, etc.).

10) List Promotions (with dates):

    n/a

11) Employer Provided Benefits:

    Life Insurance: none

    Individual Health Insurance: none

    Family Health Insurance: none

    Retirement Plan: none

    Investment Plan: none

    Bonus: none

    Stock Options: none

    Other: none

Because I am self-employed, I have to bear all of these costs personally.

Please attach a copy of the I.R.A., 401K or Profit Sharing plan or attach a copy of the statement of benefits if available.

12)     Out of the Ordinary Expenses Associated with Job:

    See below explanation

13) What is the currently planned retirement age? 67

## C. Other

> Please provide any information which has not been asked for but may have some bearing on past or future income or expenses.

Because I have only been working in my current position for a short period of time, my income has not yet stabilized. For front pay calculation purposes, I anticipate making income in line with the effective hourly rate used in the 2019 IDS study that is cited in the lost earnings chart previously provided to you. After that study was conducted, the court-appointed hourly rates were raised by statute to $75 per hour for low-level felonies and $85 per hour for high-level felonies (they were $60 and $75 per hour at the time of the study. It is extremely rare for the legislature to raise the hourly rates). The lost earnings chart reflects the current effective hourly rate, accounting for overhead. For purposes of making a conservative baseline assumption, the lost earnings chart assumes that I would work 40 hours for 52 weeks a year, or 2,080 billable hours. That assumption includes no time off or non-billable/administrative hours. The IDS study uses 1,800 billable hours per year, which I believe is more realistic for purposes of your report.

Alternatively, the BLS annual wage for Mountain North Carolina nonmetropolitan area (which includes Polk County, where I am located), is $77,890 at the 50% percentile and $90,880 at the mean. (See https://www.bls.gov/oes/current/oes231011.htm). Based on the type of work I do and comparing with salaries for public defenders employed by the State, either of those assumptions would be, if anything, optimistic. I can provide current (2023) state salaries for comparable work, if helpful.

## ATTACHMENT: PLAINTIFF'S FEDERAL SALARY HISTORY

I was employed by the federal government (which the FDO is a part of) from September 2014 to August 2019. Estimations for benefits purposes should account for all federal service, not just employment at the FDO. Because I am no longer located in Charlotte, RUS locality pay is used for future lost earnings. If you would like to see the underlying documentation of salary and benefits info, please let me know.

    2014-2015: term clerkship at JSP Grade 12, Step 1 (ending salary was $70,192.00, RUS locality). Before this position, I had 1 year prior experience in state government following law school. According to my records, TSP and annual leave service computation date is 9/10/2014.

    2015-2016: term clerkship at JSP Grade 13, Step 1 (ending salary was $84,443.00, RUS locality).

    2016-2017: Supreme Court Fellowship at JSP Grade 13, Step 1 (ending salary was $94,796.00, DC locality). Although I would have normally qualified for a Grade level increase for this position based on years of service, I did not

receive one because the position was capped at Grade 13, Step 1. This was the first year of creditable service towards my pension because term clerkships do not count. FERS service computation date is 8/29/2016; TSP contributions (including agency contributions) began 8/29/2016.

 August 21, 2017: FDO start of employment at JSP Grade 14, Step 1 ($101,929.00, Charlotte locality pay)

 October 30, 2017: step increase to JSP Grade 14, Step 2 ($105,327.00)

 January 8, 2018: general increase of 1.4 percent and locality increase (still JSP Grade 14, Step 2) ($107,319.00)

 August 28, 2018: reclassified to Assistant Federal Public Defender position on AD pay scale Grade Level 28; salary remained at $107,319.00; reclassification was backdated to prevent consideration of promotion to JSP Grade 15 Step 1 ($122,163, Charlotte locality pay), for which I was eligible on August 21, 2018.

 January 7, 2019: general increase of 1.4 percent and locality increase (still equivalent of JSP Grade 14, Step 2) ($109,365.00)

 March 15, 2019: constructive discharge from FDO

 March 19, 2019: began clerkship at Grade 14 Step 2 (RUS locality) ($106,543.00). All benefits remain in effect.

 April 27, 2019: salary correction to implement ECI and locality increase for 2019 (still JSP Grade 14, Step 2) ($108,316.00)

 March 27, 2019: step increase to JSP Grade 14 Step 3 ($111,810.00)

 August 9, 2019: end of federal employment

United States Federal Courts
One Columbus Circle, NE
Suite 2-270
Washington, DC 20544

| | |
|---|---|
| Net Pay: | $2,085.75 |
| Pay Begin Date: | 03/04/2019 |
| Pay End Date: | 03/17/2019 PP06 |
| Pay Date: | 03/22/2019 |

| | | | |
|---|---|---|---|
| Name: | Caryn Ann Devins Strickland | Business Unit: | CTSBU |
| Employee ID: | 179180 | Pay Group: | 4th Circuit |
| Address: | ▇▇▇▇▇▇ | Department: | F04NCWX - N. Carolina (W) - FP |
| | | Location: | NCW - Charlotte - FPD Office |
| | Charlotte, NC 28209 | Job Title: | Assistant Federal Public Defen |
| | | Pay Rate: | $109,365.00 Per Annum |

## Tax Data

| | | | |
|---|---|---|---|
| Fed Marital Status: | Single | NC Marital Status: | Single |
| Fed Allowances: | 2 | NC Allowances: | 0 |
| Fed Addl Percent: | 0.000 | NC Addl Percent: | 0.000 |
| Fed Addl Amount: | 0.00 | NC Addl Amount: | 0.00 |

## Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 4,128.00 | 3,172.78 | 884.58 | 1,157.67 | 2,085.75 |

## Earnings

| Description | Hours | Rate | Amount |
|---|---|---|---|
| Reg Pay | 80.00 | 51.6 | 4,128.00 |
| Total: | 80.00 | | 4,128.00 |

## Taxes

| Description | Amount |
|---|---|
| Fed Withholdng | 435.49 |
| Fed MED/EE | 56.88 |
| Fed OASDI/EE | 243.21 |
| NC Withholdng | 149.00 |
| Total: | 884.58 |

## Before Tax Deductions

| Description | Amount |
|---|---|
| Dental-Pre | 34.65 |
| FEHB PTax | 170.57 |
| TSPFERS EM | 750.00 |
| Total: | 955.22 |

## After Tax Deductions

| Description | Amount |
|---|---|
| Basic Life | 16.50 |
| OPT B ADLF | 4.32 |
| FERS-FRAER | 181.63 |
| Total: | 202.45 |

## Employer Paid Benefits

| Description | Amount |
|---|---|
| FEHB PTax | 492.27 |
| Basic Life | 8.25 |
| TSPFERS EM | 165.12 |
| FERS-FRAER | 491.23 |
| TSP 1% | 41.28 |
| Total: | 1,198.15 |

## Net Pay Distribution

| Payment Type | Paycheck Number | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 13131648 | Checking | XXXXXXXX0006 | 2,085.75 |

## Leave Balances

| Description | Beginning Balance | Hours Earned | Hours Taken | End Bal/Hrs Taken YTD |
|---|---|---|---|---|
| Annual | 69.00 | 6.00 | 0.00 | 75.00 |
| Sick | 117.00 | 4.00 | 8.00 | 113.00 |

This Earnings Statement is provided to you for your records. Please review all information carefully and notify your Personnel Office of any discrepancy. Failure to notify may obligate you to repay any salary overpayment that results.

# North Carolina Office of Indigent Defense Services

# FY19 Private Appointed Counsel (PAC) Effective Pay Rate Study

## Public Defense Attorney Overhead Rates and Access to Benefits

Margaret A. Gressens
IDS Research Director

March 2019

North Carolina Office of Indigent Defense Services
123 West Main Street, Suite 400
Durham, NC 27701
919-354-7200
www.ncids.org



*Safeguarding individual liberty and the Constitution by equipping the North Carolina public defense community with the resources it needs to achieve fair and just outcomes for clients*



Copyright © 2019 NC Office of Indigent Defense Services

# FY19 Private Appointed Counsel (PAC) Effective Pay Rate Study

## Introduction

Over the years, the North Carolina Office of Indigent Defense Services (IDS) continuously hears from attorneys heart-rending stories about their efforts to serve clients under impossible conditions, their financial difficulties, and the lack of respect they are treated with by the system. Since the rate cuts imposed by the legislature in 2011, the frequency, frustration, and anguish in these stories continue to intensify every year. Good attorneys who have long felt an obligation to serve justice and protect the Constitution have been forced to walk away from public defense. They simply cannot afford to do this work any longer. Morale has eroded, faith in the system is failing, and many attorneys wonder when the system will simply collapse under the strain. All agree justice is suffering.

Yet diametrically opposed to the anguish is the equally deeply held belief by some that public defense attorneys milk the system with disregard to the fact that the public is paying, that $55 an hour is a considerable wage and still attorneys pad their bills, and that public defense attorneys make a very good living.

Amid the confusion and opposing opinions, what do we know? Yes, $55 an hour sounds like a very nice sum, but the fact is, unlike judges, clerks, prosecutors, magistrates, public defender office attorneys, and virtually every actor in the criminal justice system, private appointed public defense attorneys (PAC) are different. They are contractors. As contractors, their hourly pay rate represents gross pay, not net earnings. As contractors, before a dime goes in their pockets, they first have to pay office overhead and self-employment tax. The remainder of their payment has to pay for benefits, such as health insurance and retirement, without any contributions or help from an employer, as well as monthly earnings.



Gross Hourly Rate → Less Office Overhead → Less Employer FICA → Less Health Insurance → Less Retirement → Less Life Insurance → Effective Hourly Rate

We know the PAC hourly rate paid, but that is only half of the picture. What are their overhead costs? What benefits are they able to afford? At the end of the day, what is the effective hourly rate PAC receive for doing public defense work? IDS needed data to inform the debate on the appropriate hourly rate for public defense attorneys.

## Obtaining Data: The IDS Attorney Effective Hourly Rate Survey

In January 2019, IDS conducted a survey and collected data on attorney overhead costs, support staff, benefits, annual billable hours, and other financial information. The survey was sent to 2,380 attorneys in every county around the state, and 322 attorneys around the state responded (a 13.5% survey response rate).

### Gross Pay vs Earnings

Private appointed public defense attorneys are contractors; payment does not equal earnings.

### Their Voices

- *I put off purchase of personal items like groceries, because I am concerned the money will be needed elsewhere, like to pay the mortgage.*

- *I do not have room in my finances to handle any family emergency.*

- *It would be nice to have access to health insurance.*

- *The only way I could afford to do indigent defense work was because I am married. I am able to get health insurance through my husband and he pays the mortgage. I would not be able to afford my monthly expenses if I were not married.*

- *My overhead has been reduced to about $45/hour on a 2000 hour annual work year (which includes only a very modest monthly salary for me, less than what my assistant receptionist makes).*

- *I love indigent defense. I struggle running my practice and I am pretty good at the business aspects. It's a new practice and I spend the majority of my time on indigent defense. I just did the taxes and I made 5k. If it weren't for my husband we wouldn't make it and I would have to give up what I love.*

- *I have seen a number of individuals around the age of 30-35 take different jobs because they cannot make enough to support a solo law practice.*

- *I pay a higher fee rate for plumbers, electricians, and auto mechanics than $55 per hour. These are trade skills that don't require advanced levels of education.*

- *I include indigent defense cases because it's the right thing to do and as a service to those in need of help.*

**Public Defense Attorney Net Earnings and Access to Benefits**

- 20% make an effective hourly rate of less than $10/hr.

- Four in 10 make an effective hourly rate of less than $22/hr.

- One in 10 loses money by handling public defense cases.

- One in 10 has no health insurance, and an additional 40% only have insurance due to a spouse or parent.

- 8 in 10 do not earn enough to invest in retirement.

- 7 in 10 PAC attorneys are solo practitioners, and 84% have no support staff whatsoever.

- Almost one in three report being constantly worried about finances, and two-thirds report they are often or constantly worried.

- Eighty-six percent report they experienced at least one of the these financial hardships in 2018:
    - Credit card debt
    - Taking on secondary employment
    - Late student loan payments
    - Late payments on other Loans
    - Being on income-based government assistance
    - Delay in starting a family

- One in two report that in the last three years, lowered rates have forced them to reduce the amount of public defense work they can take or to stop taking cases altogether, and a number report that the instigation of flat fee and contract compensation systems in some counties has made the situation worse.

**PAC Overhead Costs**

The survey collected 2018 data on the monthly cost for a list of overhead items, such as rent, parking, malpractice insurance, office equipment, telephones, internet, bar dues, required CLE programs, non-attorney employee salaries, non-employee benefit programs, and data access fees, as well as their total billable hours, firm type, number of attorneys in the firm, and percent of their hours handling public defense cases.

In 2018, attorneys report their average per attorney per hour overhead cost was $38.10 per hour and the median was $21.72 per hour. The average effective hourly rate before benefits was $15.62 and the median was $30.75. However, these low overhead rates were achieved by eliminating critical resources, such as legal research tools, that enable attorneys to provide competent representation. Thirty percent of public defenders had overhead hourly rates under $15 and five percent had rates under $5.

| Average Overhead Costs per Attorney per Hour in 2018 | | | | |
|---|---|---|---|---|
| | | Effective District Court Hourly Rate Less Overhead | Employer Share of FICA* (7.6%) | Effective District Court Hourly Rate Before Benefits |
| N | 200 | | | |
| Average | $38.10 | $16.90 | $1.28 | $15.62 |
| Median | $21.72 | $33.28 | $2.53 | $30.75 |
| Minimum | $2 | $52.92 | $4.02 | $48.90 |
| Maximum | $553 | -$497.51 | $0.00 | -$497.51 |
| Percentiles 10 | $8.14 | $46.86 | $3.56 | $43.30 |
| 20 | $10.78 | $44.22 | $3.36 | $40.86 |
| 30 | $14.04 | $40.96 | $3.11 | $37.85 |
| 40 | $16.88 | $38.12 | $2.90 | $35.23 |
| 50 | $21.72 | $33.28 | $2.53 | $30.75 |
| 60 | $28.92 | $26.08 | $1.98 | $24.10 |
| 70 | $37.22 | $17.78 | $1.35 | $16.43 |
| 80 | $45.73 | $9.27 | $0.70 | $8.56 |
| 90 | $71.77 | -$16.77 | $0.00 | -$16.77 |

*Contractors pay both the employer and employee share of the Self-Employment Tax or FICA (contributions to Social Security and Medicare). Each contribute 7.6% of earnings (15.2% total). The analysis excludes survey responses that did not provide complete information on overhead costs, firm type, and annual billable hours.*

**PAC Attorneys Have Made Themselves As Lean As Possible:**

Contrary to some public perception, public defense attorneys operate very leanly in order to survive and continue handling public defense cases.

After the rate reductions in 2011, one third of public defense attorneys took steps to reduce overhead, and another third took drastic steps to reduce overhead, including:

- ❖ Eliminated support staff positions
- ❖ Reduced staff benefits
- ❖ Moved practice from office to home
- ❖ Eliminated malpractice insurance

In fact, 84% of the attorneys who continue to handle public defense cases report that they have zero support staff. Only 12.7% of public defense attorneys report access to one full-time equivalent support staff.

Perversely, this lack of access to support staff forces attorneys to perform non-attorney duties, such as clerical and paralegal work, at attorney rates. It creates inefficiency in the system.

### Attorneys Cutting Back or Removing Themselves from Public Defense

A significant number of attorneys report that they make financial sacrifices to handle public defense cases, and they did so even when the hourly rate was $75 an hour but were willing to do so out of a strong sense of public service. However, many report that after the 2011 rate drops, although it pained them greatly, they simply could no longer afford to continue taking public defense cases at the $55 rate or had to severely limit the number of cases they took. In fact, 50%, or one in two attorneys, report that in the last three years they reduced their amount of public defense work or have withdrawn completely and they further report the primary reason for doing so is that they cannot afford public defense work at the current low rates.

The rate at which attorneys have left the public defense rosters across the state since the 2011 rate cut is a major concern for the criminal justice system, as it has led to court inefficiencies, delays, and increasing numbers of court continuances. As experienced attorneys remove themselves from public defense, fewer attorneys remain to handle cases. Those who remain are pressured to join multiple lists and even to join lists in multiple counties. The result is more continuances and more court delay as attorneys cannot be in two courts simultaneously and they struggle to handle larger caseloads.

For example, IDS recently was asked if an attorney could travel to another county to provide representation because the local list of attorneys willing to accept appointed cases was so small that one of the few attorneys willing to do the work would often handle 20 to 30 probation violation cases in one day. When so few attorneys are willing to do the work, the remaining attorneys handle more cases than they can reasonably cover, creating a risk clients will be represented by poorly prepared attorneys. The situation was sufficiently serious that the local judge and prosecutor were trying to recruit experienced attorneys to cover their county. Without an increase in the rates to allow attorneys to cover overhead and earn a living this situation will continue to worsen.

### Low Fees Exasperated by a Culture that Expects Indigent Cases to be Handled with Very Few Hours of Work

Attorneys report that there is a strong expectation that public defense cases will be handled with very few hours of work, which leads to two phenomona being present in public defense work: 1) some judges cut fees when that expectation is exceeded, and 2) attorneys self-cut their fees to meet that expectation and avoid the humiliation of having their hours cut in open court.

---

**Their Voices**

- *I'd like to see some way for private attorneys doing primarily appointed work to have affordable health insurance, long term disability insurance, and a retirement plan. Although I'm philosophically dedicated to indigent defense, these are the issues that I think about when I consider seeking other employment.*

- *I discontinued indigent defense to accept more profitable work although I have a passion and affinity for indigent clients and representation.*

- *As the fees have been reduced, I have taken fewer indigent cases and removed myself from appointment lists in favor of retained work. I have been appointed to some cases in two of the counties in our district where I am not on the list as favors to clerks, judges or other attorneys due to the lack of willing attorneys to take indigent cases.*

- *I know my practice is new but I'm constantly scared to ask for the actual amount of money I spent on a case. If we spend more than 5 hours our district Judge requires an affidavit which makes us spend time to do the affidavit so for most attorneys I know it's 4.9 if it's 5 or more hours.*

- *I maintain very low overhead, however, I feel the IDS rate grossly underpays attorneys. When factoring in the number of nonbillable hours that go into a case, the fees end up being less than paralegals, who tend to have much less student loan debt, much less stress, and much less malpractice exposure.*

### Their Voices

- *I do IDS work because the system is already so severely slanted in the favor of those with money. I use IDS work as an opportunity to help those who need it most. The money I make off of IDS work does not even cover overhead for the time I expend on the work.*

- *I have been doing indigent defense work for 25 years and I am being paid less than I was 10-15 years ago. I have watched the salary of other segments (judges, DA, ADA, clerks) of the criminal justice system increase while the attorneys who perform indigent defense pay decrease. It says that we are not an important component of the system. I understand how people feel about the people we represent, but they are entitled to qualified and competent representation.*

- *Cabarrus County is a flat rate county. We did have a judge that would routinely cut extraordinary fee apps claiming if he didn't cut them, IDS would. Our work is drastically undervalued by the state.*

- *If I didn't love helping the "little guy" and the underdogs who need help, and practicing mostly criminal defense, I would have gone into another line of work, or at least another area of the law that is more profitable. As a fellow attorney, also at the end of his career, told me, "All the good I've done hasn't done me any good."*

- *We do not accept indigent cases. We could not cover overhead and pay our staff (let alone our attorneys) on the rates that IDS is paying.*

Almost half (46.2%) of attorneys report they self-cut the hours they submit for the judges approval on fee applications every month. The average number of fee applications self-cut per month per attorney was eight and the median was five fee applications per month.

In addition, over one in 10 attorneys (15.4%) report judges cutting the fee of at least one fee application per month. Judges cut fees by reducing the number of hours the attorney will be compensated for in the case. When judges cut hours, the average number of hours cut per fee application was almost four hours (3.91) and the median was three hours.

The result of this pervasive expectation that few hours should be spent on public defense cases is two-fold. First, a significant percentage of an attorney's billable hours go uncompensated every year, further reducing the effective hourly rate earned by public defense attorneys. Second, over time, the impact of this culture cannot help but have a negative impact on quality as it pits the financial survival of the attorney against the interests of serving their clients, further exasperating a criminal justice system that provides one kind of justice to the wealthy and another to those without means.

The conflict between the attorneys' financial survival and their clients interest is even more pronounced under flat fee compensation systems, where the pressure to not spend time on a client's case is even stronger, as it is almost guaranteeed that those hours will not be compensated.

Inadequate compensation leads attorneys to cut corners. In one county, the prosecutor was so concerned about the lack of time being spent on cases that she contacted IDS and expressed that her prosecutors often had to look out to ensure defendants were being properly represented. She went on to recount a case in which an attorney appeared without knowing that the client was facing a probation violation rather than a criminal charge.

### Public Defense Attoneys Compensated Far Below the Fair Market Value

Current public defense rates are extraordinarily low, especially in comparison to retained practice compensation rates. The table belows show the average fees charged by attorneys with retained practices.

| | Retained Practice Charging Practices | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Flat Fee Charges | | | | | | Hourly Rate Charges | | | | |
| | Armed Robbery | Felony Drug | Felony H or I | DWI | Misd. Class 1 to 3 | Probation Violation | Bond Hearing | I Only Charge an Hourly Rate | Adult Criminal Hourly Rate | Juvenile Hourly Rate | Parent Rep. Hourly Rate | Other Hourly Rate |
| N | 124 | 130 | 139 | 154 | 162 | 137 | 111 | 14 | 45 | 37 | 53 | 42 |
| Average | $ 7,703 | $ 4,610 | $ 3,057 | $1,717 | $ 735 | $ 719 | $ 602 | $ 223 | $ 239 | $ 214 | $ 220 | $ 240 |
| Median | $ 6,000 | $ 4,000 | $ 2,500 | $ 1,500 | $ 650 | $ 625 | $ 500 | $ 250 | $ 250 | $ 200 | $ 225 | $ 250 |
| Minimum | $ 1,000 | $ 750 | $ 275 | $ 200 | $ 100 | $ 185 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 55 |
| Maximum | $ 35,000 | $ 20,000 | $ 15,000 | $ 5,000 | $ 5,000 | $ 2,500 | $ 4,007 | $ 350 | $ 450 | $ 350 | $ 350 | $ 350 |

Public defense rates also are extremely low compared to the federal public defense rate, which was just raised. Effective February 15, 2019, the non-capital federal public defense rate increased from $140 to $148 an hour, and the capital rate increased from $188 to $190 an hour.

## Appropriate Overhead Costs

Private public defense attorneys should be compensated at levels that allow necessary overhead costs to be covered and to earn enough to provide some appropriate level of health care and retirement like every other actor in the criminal justice system, including judges, prosecutors, magistrates, clerks, and salaried public defender office employees.

IDS reviewed all the itemized overhead costs and identified 13 non-optional overhead items that the hourly rate paid to public defense attorneys should cover: rent, malpractice insurance, office equipment, office expenses, telephone, internet, bar dues, required annual CLE programs, legal research tools such as Lexis or Westlaw, access to one full-time support staff, and debt service or the interest on the firm's line of credit. The average overhead cost for non-optional items averaged $46.72 an hour and the median was $38.20 an hour. Note that, because so few survey respondents had access to support staff, the analysis used the average and median salary of a paralegal in North Carolina instead of survey data.

### Average and Median Overhead Costs of Solo Practitioners for Non-Optional Overhead Items

| | Non-Optional Overhead Items | | | | | | | | | | | | | Overhead Cost | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Rent | Malpractice Insur. | Equipment (Deprec. Value) | Phones | Internet | Office Expenses (supplies, postage, etc.) | Legal Research Tools (Lexis, etc.) | Bar Dues | Required CLE Programs | 1 FTE Support Staff | Staff Benefits | Data Access Fees (DMV, NC Crim., etc.) | Debt Service (interest on firm line of credit) | Per Atty per Mos. Ovrhd Cost | Per Atty Billable Hours | Per Atty per Hr Ovrhd Cost |
| N | 109 | 105 | 85 | 115 | 101 | 114 | 53 | 116 | 107 | 13 | 6 | 41 | 25 | | | |
| Average | $783 | $141 | $180 | $196 | $115 | $228 | $140 | $79 | $118 | $3,826 | $782 | $56 | $362 | $7,007 | 1,800 | $46.71 |
| Median | $700 | $100 | $100 | $150 | $80 | $150 | $100 | $40 | $50 | $3,479 | $600 | $30 | $150 | $5,729 | 1,800 | $38.20 |

*Note: 1 FTE support staff position based on average and median paralegal salaries in North Carolina. Billable hours based on typical billable hours per year by attorneys. Analysis includes survey responses of public defense solo practitioners with a minimum of 15% overhead ($8.25 per hour) for all items in the survey. Responses where the overhead was less than 15% were excluded.*

The table below shows the effective earnings of public defense attorneys with appropriate overhead levels at the current $55 hourly rate, as well as at $85 an hour, which is the pre-2011 rate adjusted for inflation.

### Average and Median Attorney Earnings with Appropriate Overhead Rates at Current and Restored Paid Hourly Rates

| Paid Hourly Rates | | Overhead Cost | | | Effective Rate | | Benefits | | | Earnings | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Per Atty per Mos. Ovrhd Cost | Per Atty Billable Hours | Per Atty per Hr Ovrhd Cost | Eff. Hourly Rate | Eff. Hourly Rate Less FICA | Health Hourly Cost | Retirement Hourly Cost (6%) | Life Insur. Hourly Cost ($500,000) | Eff. Hourly Rate Less Ben. | Annual Earnings |
| $55 Rate | Average | $7,007 | 1,800 | $46.71 | $8.29 | $7.66 | $3.72 | $0.46 | $0.77 | $2.71 | $4,877 |
| | Median | $5,729 | 1,800 | $38.20 | $16.81 | $15.53 | $3.61 | $0.93 | $0.76 | $10.23 | $18,412 |
| $85 Rate | Average | $7,007 | 1,800 | $46.71 | $38.29 | $35.38 | $3.72 | $2.12 | $0.77 | $28.77 | $51,779 |
| | Median | $5,729 | 1,800 | $38.20 | $46.81 | $43.25 | $3.61 | $2.59 | $0.76 | $36.29 | $65,314 |

*Note: $85 paid hourly rate based on restored rate of $75 adjusted for inflation ($83.90). Billable hours based on typical billable hours per year by attorneys. Health insurance based on 79 survey responses with health benefits (average $724 and median $575 a month). Retirement based on 6% employer match. Life insurance based on average cost of $500,000 policy.*

Even at restored hourly rates adjusted for inflation, attorney earnings would be extremely modest.

> **Their Voices**
>
> - . . . I have to do a lot of other stuff to make ends meet and make a little money for myself. In turn, I end up spending less time on my court-appointed cases than I should. I am surprised the State has not yet been hit with a class-action lawsuit for violation of due process rights by defendants with court-appointed attorneys on a theory that the State is giving them less than adequate representation. It's not that these attorneys are bad attorneys. They are simply overworked and trying to make ends meet.
>
> - When I went into solo practice, I took very intentional steps to keep overhead as low as possible (e.g. working from home rather than having a dedicated office, getting on my spouse's insurance rather than trying to pay for it on my own), knowing that IDS rates would not enable me to do otherwise. If something were to happen to my spouse, I would be unable to meet my financial obligations (mortgage, child care, etc.) on IDS income.
>
> - While I find it rewarding, it can be disheartening, especially when you encounter ingratitude when trying to serve the underserved. Financial necessity has forced me to leave indigent defense (which I did for several years, but at $75/hr I determined it was a break-even, so I limited my hours; when it was lowered to $55/hr, I simply had to stop, as I was losing money).
>
> - The firm stopped paying my malpractice insurance, my bar dues, my CLE, and my health insurance. I had to pay for these items out of pocket.
>
> - I have no savings and retirement. I live paycheck to paycheck.
>
> - It's a constant battle to stay in budget with my firm and my household. I worry more about long-term financial goals like retirement.

## Conclusion

It is IDS's long-held position that rates need to be raised immediately, and every year that passes only intensifies this need. The 2011 rate cuts were intended to be a temporary measure that was necessary when the state was in extreme financial difficulty. Now that state finances have recovered, PAC hourly rates should be restored to their pre-2011 levels after being adjusted for inflation, then periodically adjusted for cost of living increases as and when other court system actors receive cost of living adjustments. Today, restored rates adjusted for inflation would be $85, $95, and $105.

In addition, IDS should support attorney compensation systems that do not pit the financial survival of the attorneys against their clients' interests. Compensation systems that pressure attorneys to spend few hours on cases, such as grossly low flat fee schedules and inadequate contract payments, compromise justice and erode faith in the criminal justice system.

## Note

A copy of the survey in its entirety is available on the IDS website along with the companion worksheet IDS provided to assist attorneys in completing the overhead cost section of the survey at www.ncids.org.

> *It is not possible to provide competent and thorough representation to a criminal defendant for what amounts to less than $200 for the entire case, and the attorney has to handle dozens of cases at a time. Witnesses are not interviewed, evidence is not reviewed, trials are virtually out of the question, so it's a plea-factory.*
>
> *If this is a shocking suggestion, it should be. That is actually the reality of the current situation, with the malpractice insulation being that although these clients know they are getting treated like cattle, they don't have the means to hold anyone accountable.*

**Their Voices**

- *It is nearly financially illogical to stay on the court appointed list based upon my overhead and the hourly rate. I wouldn't do it if I didn't believe in the right for people to have legal representation and could not afford it financially.*

- *I have filed bankruptcy. I have defaulted on student loans (currently rehabilitating). I have had to recover my mortgage from foreclosure twice, most recently with assistance from the North Carolina Housing Authority bridge loan.*

- *I've had to set up payment arrangements for back taxes, and I have not been able to purchase health insurance.*

- *I have not taken a salary in many months due to financial strains in the office.*

- *I have no retirement plan. My health insurance is like a second mortgage and that is through the bar plan. And I am healthy . . . I operate on a shoestring budget.*

- *I have strongly considered leaving the legal profession.*