```
                       UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NORTH CAROLINA
_____
                                        )
CARYN DEVINS STRICKLAND,                )
                                        )
                  Plaintiff,            )
                                        )
           v.                           )   CIVIL ACTION
                                        )   NO. 20-00066-WGY
UNITED STATES OF AMERICA, AND           )
JUDICIAL CONFERENCE OF THE              )
UNITED STATES, THE HON.                 )
ROSLYNN R. MAUSKOPF, IN HER             )
OFFICIAL CAPACITY AS CHAIR OF           )
THE JUDICIAL CONFERENCE                 )
COMMITTEE ON JUDICIAL RESOURCES         )
AND ADMINISTRATIVE OFFICE OF THE        )
UNITED STATES, JAMES C. DUFF, IN        )
HIS OFFICIAL CAPACITY AS DIRECTOR)
OF THE ADMINISTRATION OFFICE OF         )
THE UNITED STATES COURTS,               )
SHERYL L. WALTER, IN HER                )
INDIVIDUAL CAPACITY, JOHN DOE(S)        )
C/O OFFICE OF THE GENERAL               )
COUNSEL FOR THE ADMINISTRATIVE          )
OFFICE OF THE UNITED STATES             )
COURTS, AND UNITED STATES COURT         )
OF APPEALS FOR THE FOURTH               )
CIRCUIT, JUDICIAL COUNCIL OF THE        )
FOURTH CIRCUIT, THE HON. ROGER          )
L. GREGORY, IN HIS INDIVIDUAL           )
CAPACITY AS CHIEF JUDGE OF THE          )
FOURTH CIRCUIT, JAMES N. ISHIDA,        )
IN HIS INDIVIDUAL CAPACITY IN           )
HIS OFFICIAL CAPACITY AS                )
CIRCUIT EXECUTIVE OF THE FOURTH         )
CIRCUIT AND AS SECRETARY OF THE         )
JUDICIAL COUNCIL OF THE                 )
FOURTH CIRCUIT, AND FEDERAL             )
PUBLIC DEFENDER FOR THE WESTERN         )
DISTRICT OF NORTH CAROLINA,             )
ANTHONY MARTINEZ IN HIS                 )
INDIVIDUAL CAPACITY AND HIS             )
OFFICIAL CAPACITY AS FEDERAL            )
PUBLIC DEFENDER FOR THE WESTERN         )
DISTRICT OF NORTH CAROLINA,             )
```

[1]

Defendants.    )
               )
_____)

YOUNG, D.J.[1]                                    July 25, 2023

**MEMORANDUM AND ORDER**

After the parties conducted extensive discovery and briefed the relevant issues, this Court heard cross motions for summary judgment on July 10th, 2023. Pl.'s Mot. Summ. J. ("Pl.'s SJ Mot."), ECF No. 243, Def.'s Mot. Summ. J.("Def.'s SJ Mot."), ECF No. 245. Pl.'s Mem. Supp. Summ. J.("Pl.'s Mem. Supp."), ECF No. 243-1; Def.'s Mem. Supp. Summ. J.("Def.'s Mem. Supp."), ECF No. 245; Pl.'s Mem. Supp. Renewed Mot. Summ. J. ("Pl.'s Unredacted SJ Filing"), ECF No. 248; Def.'s Resp. Opp'n ("Def.'s Opp'n"), ECF No. 249; Pl.'s Resp. Opp'n ("Pl.'s Opp'n"), ECF No. 250; Pl.'s Sealed Resp. Opp'n ("Pl.'s Sealed Opp'n"), ECF No. 253. Following that hearing, the Court granted the motions for summary judgment in part, viz. the government's listing of facts, where undisputed, were established for trial, took one matter under advisement, and otherwise denied the cross motions in their entirety. See Minute Order, Electronic Clerk Note entered on 7/10/2023.

The Court here addresses the reserved issue.

---

[1] Of the District of Massachusetts, sitting by designation.

[2]

This Court took the fourth element of the deliberate indifference to sexual harassment claim under advisement, viz. that "the deliberate indifference was motivated by a **discriminatory intent**". Strickland v. United States, 32 F.4th 311, 359 (4th Cir. 2022)(citing Feminist Majority Found. v. Hurley, 911 F.3d 674 (4th Cir. 2018)(emphasis added). After a thorough review of the evidentiary record, this Court rules that Strickland failed to meet her burden at summary judgment because she does not provide any plausible evidence of discriminatory intent on behalf of any supervisory defendant **EXCEPT** Anthony Martinez ("Martinez") in his individual capacity and his official capacity as Federal Public Defender for the Western District of North Carolina. For this reason, summary judgment on the deliberate indifference claim is partially **GRANTED** with respect to all defendants **EXCEPT** Anthony Martinez.

**A. The Legal Framework**

This case is directly controlled by the mandate of the Fourth Circuit in Strickland v. United States, 32 F.4th at 311. Here the plaintiff Caryn Strickland ("Strickland") claims, inter alia, she was denied equal protection of the laws due to the deliberate indifference of various judges and officials within the judicial branch of the United States (collectively "the government").

[3]

In Strickland the Fourth Circuit explained that the four elements for a deliberate indifference claim to sexual harassment are "essentially identical to those outlined by the Fourth Circuit in Feminist Majority Foundation." Strickland 32 F.4th at 359 (citing Feminist Majority Found. v. Hurley, 911 F.3d 674, 703 (4th Cir. 2018). Feminist Majority Found. v. Hurley sets out the four elements of such a claim and expressly directs how this Court is to assess the fourth element of the deliberate indifference to sexual harassment claim: "Because there is no theory of respondent superior for constitutional torts, a plaintiff must plead that each ... defendant has violated the Constitution. In the equal protection context, this means showing that the supervisor ... intended to discriminate on the basis of a protected class."[2] Feminist Majority Found. v. Hurley, 911 F.3d at 703 (citing T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010); Ashcroft v. Iqbal, 556 U.S. 662, 676-77,(2009)(explaining that, to allege equal protection claim based on supervisory liability, plaintiff must

---

[2] In this respect, it is important to note that the constitutional tort considered here does not sweep as broadly as the judicial gloss on Title VII, where liability may flow from deliberate indifference to a claim of sexual harassment because supervisory personnel's intent is presumed. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 756 (1998)("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment. Sexual harassment under Title VII presupposes intentional conduct.")

plausibly demonstrate supervisor's discriminatory purpose)).

**Analysis of the Undisputed Facts**

Pursuant to Fed. R. Civ. P. 56, this Court, before it could grant any part of the government's motion, must determine what facts are genuinely undisputed and then must draw all reasonable inferences in favor of the non-moving party -- here Strickland. The Court has done so here.

After a thorough review of the voluminous evidentiary record -- and drawing all reasonable inferences in Strickland's favor -- there is simply no evidence, not a scintilla, with the possible exceptions discussed below, that **any** judge or judicial official acted on the basis of gender-based discrimination. Indeed, Strickland develops no such argument, and the Court must, therefore, enter summary judgment in their favor on the equal protection claim.

As to the three remaining defendants on the equal protection claim:

**1. Anthony Martinez, the Chief Federal Defender**

As to Martinez, Strickland has satisfied her burden of going forward sufficient to survive summary judgment on this issue. She has provided evidence that, were the Court to accept it and draw from it the inferences she urges, would warrant the Court in finding Martinez's deliberate indifference was

[5]

motivated by gender based discriminatory intent. Prominent among this evidence is Chief Judge Gregory's letter of reprimand dated May 28, 2019. Ex. D, ECF No. 248-5 at 80-83. The factual findings in this letter constitute an unimpeached public record pursuant to Fed. R. Evid. 803 (8)(A)(iii). Strickland's unredacted memorandum, ECF No. 248-1, summarizes the undisputed evidence this Court has before it regarding Martinez's alleged deliberate indifference motivated by gender based discriminatory intent:

> [T]he Defender facilitated and ratified the First Assistant's quid pro quo harassment by diminishing Plaintiff's job duties and refusing to consider her for the grade-level promotion that was the subject of the First Assistant's "Mas Dinero" email, for which she was eligible on her work anniversary date. See Ex. C, at 9 (admission that Plaintiff "was eligible for a grade-level promotion"). In a sworn declaration filed in this proceeding, the Defender falsely stated that he had no "discretion" to raise Plaintiff's pay. ECF No. 78-3, ¶ 33; see Ex. C, at 10 (stating that "all grade-level promotions are awarded at the discretion of the Federal Defender"). The Defender gave Plaintiff a "reclassification" to AFD in title only, which he stated was "for purposes of case weight measurement." Ex. A, at 52. The Defender even backdated the reclassification to the day before Plaintiff qualified for the promotion. Ex. N, at 46. As part of the "reclassification," the Defender also attempted to remove Plaintiff's locality pay and reduce her salary by nearly 15 percent. Id. Contrary to the job description for an AFD position, which requires the attorney to carry her own caseload, the Defender required Plaintiff to continue serving in a research-and-writing support role. Compare Ex. A, at 52, with Ex. N, at 51-57.
> The Defender told Plaintiff that he could not transfer her exclusively to appeals, even though he had an open position. Ex. M, at 33 ("Appeal FTE is

[6]

2.75 (but have been surviving with 1.75 FTE))"; id. at 53 (office "needed more appellate support"). Thus, the Defender required her to continue working for the trial unit supervised by the First Assistant. See Ex. A, at 52; Ex. C, at 3. The Defender also refused a transfer to the Asheville division office. See id. The Defender claimed there was no office space, but a few months later, he began advertising positions for an intern and a paralegal to work in Asheville. See Ex. D, at 17; see also Ex. I, at 95 (FEOO had seen lack of office space "used as an excuse previously in many other cases"). Because of the Defender's continued failure to address the harassment, Plaintiff did not feel safe in the office and requested to work remotely. Ex. A, at 51; see Ex. I, at 94-95 . . . The Defender, however, became furious when he learned that Plaintiff had reported her allegations of wrongful conduct to the AO. He "called her out on contacting the AO to receive guidance on her civil rights as a federal employee." Ex. D, at 81. The Defender berated Plaintiff for going to "some other party" and stated that he was being "blamed" and "attacked" for something that was not his "fault." Ex. A, at 30. The Defender minimized the harassment, stating words to the effect that, "at least you weren't touched." Ex. D, at 81.

Pl.'s Unredacted SJ Filing . The Court fully recognizes that it is here quoting extensively from Strickland's **argument**. It is, of course, making no such findings -- nor can it at the summary judgment stage. The underlying facts, however, appear to be undisputed and the argument well illustrates the plausible conclusions a court could draw. Summary judgment must be denied as to Martinez.

[7]

### 2. James Ishida, Circuit Executive

In relation to James Ishida, in her deposition Strickland alleges he violated her constitutional rights by criticizing her for going to the AO with her complaints. Ex. 6 at 105:19-20. Mr. Ishida allegedly said "when that happens, barriers go up and people go on guard". Id. While Strickland interpreted this comment to be "a very adverse reaction to the fact that [she] had reported [her] complaints to the EO", Id. at 105:20-22, this comment does not rise to the level of deliberate indifference motivated by a discriminatory intent necessary for Ishida to remain as a defendant on this claim.

For example, in T.E. v. Grindle,[3] the plaintiff offered evidence creating a reasonable inference that the defendant, a school principal, **knew** about the Music teacher's sexual abuse and **deliberately** helped cover it up by misleading the girl's parents, the superintendent, and other administrators. Grindle, 599 F.3d at 589 (citing Cf. Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1190-91 (7th Cir.1986) (Posner, J., concurring) (suggesting that policy of **deliberately** refusing to respond to complaints of sexual harassment would support an inference of intentional discrimination))(emphasis added). Here, unlike

---

[3] Cited by the Fourth Circuit in Feminist Majority Found. v. Hurley, 911 F.3d 674, 703 (4th Cir. 2018).

[8]

Grindle, no evidence of deliberate cover up by Ishida is alleged. All that is presented is a general comment made by Ishida rising to no more than an observation from his experiences in dealing with reports.

At Strickland's own deposition, she alleged that Ishida "excluded [her] — or at least did not tell Heather Beam [the investigator], did not communicate to her. Somehow, she believed that [Ishida] had excluded [her] claims against Tony from the investigation and she did not investigate those claims." Ex. 6 at 108-109:22-1. No evidence as to why the investigator "somehow believed" that Ishida excluded Strickland's claims against Martinez is provided. This evidentiary gap is simply too great to bridge. This Court may not leap this evidentiary gap reasonably to infer Ishida's discriminatory intent arises by way of a **deliberate** cover up or other misleading behaviors due to Strickland's rightful reporting. The Circuit Executive is entitled to summary judgment on this aspect of the case.

### 3. Roger Gregory, Chief Judge, Fourth Circuit

Strickland claims that gender based discriminatory intent may reasonably be inferred from the decision of the Chief Judge not to exclude Martinez from the EDR process here despite the

[9]

recommendation by the Investigator communicated to the Circuit Executive that Martinez be excluded in this case.[4]

Here, it may reasonably be inferred that the Chief Judge at least suspected that Martinez was somehow complicit in the sexual harassment of Strickland. That inference, however, does not carry the day for her. There are a plethora of wholly legitimate inferences one may draw from the Chief Judge's largely unrefuted testimony, each one negating any suggestion of discriminatory intent. Here, at summary judgment, it is not for this Court to pick the "correct" inference.

At summary judgment, the Court only makes "rulings" not "findings." Here, therefore, the point is that to draw **any** inference of **discriminatory** intent would be an inference too far, an impermissible piling of inference on inference. "[P]laintiffs need to present more than their own unsupported speculation and conclusory allegations to survive summary judgment." Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 776 (4th Cir. 2023)(citing Fed. R. Civ. P. 56(a); Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir.

---

[4] This point is not admitted. While the email from the Investigator to the Circuit Executive expressing doubts as to Martinez's further participation is undisputed, the Chief Judge testified he did not remember receiving a copy or having been informed of it. ECF No. 255-2 at 33. At the summary judgment stage this Court infers it was conveyed to him and read.

[10]

2003).  The Chief Judge is entitled to summary judgment on this aspect of the case.

## B. Conclusion

Thus, it is this Court's obligation to **GRANT** partial summary judgment, ECF No. 245, on the equal protection claim to all defendants **EXCEPT** Anthony Martinez.  All other claims survive summary judgment and will stand for trial in September 2023.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[11]