```
 1              UNITED STATES DISTRICT COURT

 2         WESTERN DISTRICT OF NORTH CAROLINA (Asheville)

 3                           No. 1:20-cv-00066-WGY

 4

 5   CARYN DEVINS STRICKLAND, formerly known as JANE ROE,
              Plaintiff
 6

 7   vs.

 8

 9   UNITED STATES OF AMERICA, et al,
              Defendants
10

11                      * * * * * * * * *

12

13                  For Zoom Hearing Before:
                    Judge William G. Young
14

15                      Final Pretrial

16

17                  United States District Court
                    District of Massachusetts (Boston)
18                  One Courthouse Way
                    Boston, Massachusetts 02210
19                  Thursday, July 27, 2023

20                      * * * * * * * *

21

22          REPORTER: RICHARD H. ROMANOW, RPR
                    Official Court Reporter
23              United States District Court
        One Courthouse Way, Room 5510, Boston, MA 02210
24              bulldog@richromanow.com

25
```

```
 1                    A P P E A R A N C E S

 2

 3    COOPER J. STRICKLAND, ESQ.
      CARYN STRICKLAND, ESQ.
 4       Law Office of Cooper Strickland
         P.O. Box 92
 5       Lynn, NC 28750
         (828) 817-3703
 6       Email: Cooper.strickland@gmail.com
         For the plaintiff
 7

 8    DANIELLE WOLFSON YOUNG, ESQ.
      MADELINE McMAHON, ESQ.
 9       DOJ - Civ
         Federal Programs
10       1100 L Street NW, Suite 11526
         Washington, DC 20005
11       (202) 616-2035
         Email: Danielle.young2@usdoj.gov
12       For defendants

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          P R O C E E D I N G S
 2          (Begins, 12:30 p.m.)
 3          THE CLERK:  Now hearing Civil Matter Caryn Devins
 4     Strickland versus the United States of America.
 5          THE COURT:  Well good morning counsel.  This is a
 6     final pretrial conference held pursuant to Rule 16 of
 7     the Federal Rules of Civil Procedure.  It's held on our
 8     zoom platform.  Our host for the conference is Courtroom
 9     Deputy Clerk, Jennifer Gaudet.  The proceedings are
10     taken down by our Official Court Reporter, Rich Romanow.
11     I have law clerks on the line.
12          The proceedings are open to the public.  If any
13     members of the public are present, you are of course
14     welcome, but I must remind you to keep your microphone
15     muted and that the rules of court remain in full force
16     and effect.
17          With that said, would counsel introduce themselves
18     once again and we'll get going, starting with the
19     plaintiff.
20          MS. STRICKLAND:  Thank you, your Honor.  Karen
21     Strickland and Cooper Strickland is with me.
22          THE COURT:  Yes, good morning to you both.
23          MR. STRICKLAND:  Good morning, your Honor.
24          THE COURT:  And for the defense?
25          MS. YOUNG:  Daniel Young.
```

```
 1          MS. McMAHON:  Madeline McMahon.

 2          THE COURT:  And good morning to the two of you.

 3          Well let me start by saying that the joint

 4     pretrial memorandum is excellent and of considerable

 5     help to the Court and provides a very good framework for

 6     our discussion this morning, and I thank you for it.

 7     Let's get some things clear here.

 8          This is a jury-waived case and both parties

 9     understand that and that's how we're going to proceed.

10     So I do understand the plaintiff's offer here, but we're

11     not going to try it without live witnesses, credibility

12     is an issue, and so we're going to try it as a normal

13     jury-waived case.  The defense's suggestion that it will

14     take 5 days to try is a very reasonable one and I think

15     we will adopt that as the limit of the days for trial of

16     this case.

17          I do -- well I do urge the following, just to

18     start.  I ask for a more detailed agreement as to the

19     facts, and what you've given me is sort of two separate

20     recitations of facts.  And you recognize that you

21     haven't got time -- you haven't had the time to sit down

22     together and see if you can't hammer out a joint

23     statement of facts, even though it's not complete.  I

24     was asking for one that was more detailed than I had at

25     the summary judgment level and I'm still asking.  But
```

```
 1    I'm not requiring it.
 2         What you've given me though is, um, I cannot
 3    accept it as a -- I view it as -- pretty much as a
 4    request for factual findings, because there's source
 5    material here from -- which I can check, and if you
 6    don't give me anything more, well then that's fine, but
 7    I'm not taking that as an agreed statement of facts, and
 8    I would urge you to agree to a statement of facts.
 9         The second thing is, um, I -- well before we go
10    any further, actually I should raise this.  Now this is
11    jury-waived so I don't want to know Word 1 about
12    settlement beyond what I raise here.  This is not a
13    settlement discussion.  All of this is on the record.
14    But I, at this stage, never would go any further in a
15    jury-waived case without at least asking the attorneys,
16    "Are you talking?"  Now that's all I want to know.
17    Because I think you should talk about a resolution of
18    this case short of trial, and that expresses no opinion
19    as to the merits.  And I'm entitled to ask and so I do
20    ask and we'll start with the plaintiff.
21         I mean I don't want to know anything about
22    discussions as I am the factfinder here, but are you
23    talking at all?  The plaintiff.
24         MS. STRICKLAND:  Yes, your Honor, I'm sorry.  We
25    have talked unsuccessfully, but we are very interested,
```

 1    as always, in talking about settlement, and we think the

 2    matter could be referred for a judicial settlement

 3    conference or mediation, and we'd be happy to do that.

 4          THE COURT:  And the defense, are you talking?

 5          MS. YOUNG:  We had settlement talk previously,

 6    your Honor, several months ago and they were not

 7    successful and they haven't been resumed since.  At that

 8    point the parties were way too far apart for us to --

 9          THE COURT:  But I'm eager -- we're right up

10    against a trial now, so when we talk about a resolution

11    or we talk about referring it to a mediator, um -- well

12    let's put that to one side, because if the plaintiff

13    wanted that, I can see good reason for the plaintiff

14    getting to judgment, however that judgment may work out.

15    So we'll circle around and come back to that.

16          The next thing I wanted to say is that while I

17    think it's in the interests of justice, and therefore

18    that's how we're going to do it, to have live witnesses

19    where I can make my own credibility assessments, we

20    would save a lot of time here with respect to things

21    that are not, um, genuinely disputed, if you agreed that

22    I might, um -- notwithstanding the Federal Rules of

23    Civil Procedure, I might accept the testimony of a

24    witness otherwise available by reading that witness's

25    deposition.  I'm very much open to that.  And that would

```
 1   cut down the number of witnesses as to whom it would
 2   make sense to have those witnesses testify live.
 3        So what I'd like to do is turn to the
 4   defendants --  turn to Page 107 where the defendants
 5   list the list of those -- it's not an overlong list and
 6   I'm certainly not holding the plaintiff to it, but the
 7   defendants' list of witnesses, um, factual witnesses
 8   anyway, who, um, they are reserving the right to call at
 9   trial, well that all makes sense to me, but I don't
10   think we have to call all these witnesses.  So let me
11   ask.  And we'll ask the defense since it's -- I'm
12   working off your list.
13        If we are going to try the case, which witnesses
14   do you want to see live, whether you call them or
15   whether the Stricklands call them?
16        MS. YOUNG:  Your Honor, I think there are several
17   of these witnesses that we would definitely need to have
18   live testimony because we think it would be beneficial
19   to the --
20        THE COURT:  That's what I'm asking.  Which?
21        MS. YOUNG:  Yeah.  Certainly, your Honor, um, we
22   would need JP, we would need Ms. Strickland --
23        THE COURT:  Wait.  Wait.  Wait.  We would need
24   who?
25        MS. YOUNG:  Oh, sorry.  Mr. JP Davis.
```

1        THE COURT:  All right, Davis.

2        MS. YOUNG:  Mr. Anthony Martinez.

3        THE COURT:  Yes, I understand that.

4        MS. YOUNG:  Mr. Bill Norman.  Likely Ms. Taylor.

5        THE COURT:  I'm looking at your list here.

6        MS. YOUNG:  The plaintiff.

7        THE COURT:  Yes.

8        MS. YOUNG:  And possibly there are others, your

9    Honor.  But we would need to confirm more before we

10    could -- confer with our client to determine if there

11    would be additional witnesses we need to call or whether

12    we would be willing to designate their deposition

13    transcript.

14        THE COURT:  You've listed them, that's fine.  And

15    so long as they're here in this final pretrial

16    conference memorandum I'm not going to say it's a

17    surprise witness or anything.  But I'm only giving you 5

18    days here and you want to think of what you want to

19    call.

20        So let me turn to the plaintiffs.  Who else on

21    live witnesses, um -- and it doesn't have to be off of

22    their list, but who else as to live witnesses would you

23    think you might want to call?

24        MS. STRICKLAND:  Your Honor, this is very awkward

25    for me to say, but we would maintain our position that

1    we think this record is sufficient to decide this case

2    and I would just like to say a couple of things about

3    that.

4         All of the witnesses that they just named are

5    relevant to the underlying EDR investigation that

6    already occurred and already resulted in a letter of

7    reprimand and factual findings against these

8    individuals.  And as recognized in your order from the

9    other day, those findings are unimpeached at this stage.

10   In order to impeach those findings, they would have to

11   impeach the credibility of Chief Judge Gregory and

12   Circuit Executive Ishida who participated in --

13        THE COURT:  I know I'm interrupting, I'm not

14   requiring you to put on witnesses if you have other

15   evidentiary matters.  I, for instance that letter, I've

16   already expressed myself, the factual findings anyway

17   seem to be evidence in this case.  As we sit now, that

18   evidence seems to me to be unimpeached.  Meaning really

19   the greatest respect to you, Ms. Strickland and no

20   disrespect, I'd like to hear you testify in this case

21   and give your testimony while I'm looking at you

22   carefully and candidly, and be subjected to cross-

23   examination.  I'd like to hear Mr. Martinez testify.  I

24   think that is a significant element of the factfinding.

25   And indeed some of the other people that they've -- and

1    I'm not -- I haven't got a take on this case at all.  So
2    you're right, I could do it without that, but I prefer
3    that.  And the rules allow it, our normal mode of
4    procedure is live testimony.
5         So I'm asking you, if we're going to have live
6    testimony, and I'm not holding you to it because anyone
7    you've listed you may certainly call, and what I'm
8    encouraging is exactly what you're talking about.  Let's
9    agree on what depositions I should read because, while I
10   worked hard on the summary judgment hearing, um, I mean
11   I'm a very -- I try to be a transparent person, I worked
12   with the law clerks.  As a factfinder I must read, and
13   read the exhibits, I must listen to -- I, personally,
14   must listen to the recorded transcripts that you want to
15   put in evidence, and I must read the depositions, and
16   candidly I haven't done all of that yet and I haven't
17   done it in a trial sense, I've done it only to make a
18   appropriate rulings, because you wanted to do it by
19   summary judgment, and that's fine, and I've handled it.
20   Now we've got a trial, and I take my responsibility very
21   seriously, and you can be sure that if you designate a
22   deposition, I will have read it.
23        But I want to get this all to trial early in
24   September.  So what we're going to get to is I want --
25   you've got more work to do as to the exhibits and I want

1  to know what depositions you want me to read because

2  come September I will have had them all read and I'll be

3  in a position to hear argument with respect to them if

4  -- once we've got the live testimony in.

5        So my question again is, as you look at the case,

6  who would you like to call live?  Just so I can get a

7  feel for it.

8        MS. STRICKLAND:  Yes, your Honor, um,

9  I -- everything you're saying is very reasonable and I

10  completely understand it.  Unfortunately due to events

11  in this case that have been discussed in our filings, I

12  do not intend on testifying, and the reasons for that

13  are stated in our filings and I don't --

14        THE COURT:  You need say no more.  You need say no

15  more.  If they want to call you as an adverse witness,

16  well then they can.  I'm not asking that you testify.

17        But who else?  Are you planning on calling anyone

18  else live?

19        MS. STRICKLAND:  The only witnesses that we have

20  put on our witness list to call live are witnesses that

21  would be needed for foundational testimony for the

22  admission of exhibits, if defendant objects, but we

23  don't feel that that should be necessary because all of

24  the exhibits that we're introducing came from defendants

25  in discovery and we don't foresee any kind of dispute

that the foundational requirements have been met.

THE COURT:  Okay, I don't either really.  So here's what I need with respect to -- I said what I need with respect to depositions, I said what I need -- now I'm going to tell you what I need with respect to exhibits.

Each one of you has set out a very extensive exhibit list, that's fine.  Now you've got to sit down together sometime before trial, I don't care when you do it, and it need not be done until we're right up against trial, but I'm not going to be looking over exhibits until we get to trial.  You've got to give me a single exhibit list and that exhibit list will start with the exhibits that the plaintiffs want to introduce and they'll all have numbers, and when -- and then the defendant's to which there are no objections.  The exhibits to which there are no objections, they're in evidence, you've agreed to them, so give them numbers.  Exhibits to which there are any objections -- and you people are working well together, it doesn't seem that there are going to be many objections, give them letters, and the letters are to the base 26, by which I mean A to Z, then AA, AB, AC, AD, not AA, BB, CC.  I once had a case we got up to 7Qs, the Court Reporter couldn't distinguish there being 6 or 7Qs, it was

terrible.  So I'm a peasant on this.  Do it my way.  If
you get to a number, I'm going to take it that it is
admitted in evidence.

Now what does that mean?  It doesn't mean it's
established, it means it's evidence, which means as the
factfinder I may decide that it is both authentic and I
may decide that its substance is probative.  That's all.
And I will use the normal means of reasoning to arrive
at that result.  I don't think there should be much
dispute.  But I want a single exhibit list.

Now let's talk about the trial because of this
business about going to judicial mediation or something.
Look, I can give you a 5-day trial starting on the 5th
of September, going 9:00 till 1:00 for 5 days, except
the 5th is the Tuesday after Labor Day, so I may be
picking a jury on Monday or the following Monday.  So
I'm not sure I'm going to give you the, um -- that
following Monday.  So the 5th of September would be the
5th, 6th, 7th, 8th, that's four days.  The 11th, I, um
-- we'll have to see during that week how the rest of my
trial calendar is falling out.  But if I don't -- if I
start a jury case, I pick the jury on the 11th, I will
give you the 12th.

Now the 5 days, 9:00 till 1:00 are for evidence.
That's not -- I'm not arguing that you should, um -- I'm

1    not requiring that you do argument during that 5 days,

2    but there are three stages of argument here in a jury-

3    waived case and they are these.

4         Once the plaintiff has presented her case -- if

5    her case is entirely a documents case, that's fine,

6    that's fine.  Once we are clear I have read those

7    documents, I myself have read them, then at that stage

8    it will be open, as in any jury-waived case, for the

9    defense to say it's not persuasive on any of the live

10   theories that would bring the plaintiff to a verdict.

11   Then -- it's possible I could so come out, it's possible

12   I could say "No, I want to hear the defense's evidence,"

13   and then we'd go forward.  Then when the defense has

14   presented all its evidence, then we'll have another

15   stage for argument.  Again, I could say the plaintiff

16   hasn't made it out or the plaintiff has made it out on

17   any one of the variety of theories.

18        And then we would go -- at least the logic of this

19   case presents itself this way, that then we would go on

20   to the front-pay damages, which are what the Fourth

21   Circuit has said is the remedy here, and I would hear

22   from both sides after that.  Then we would have final

23   final argument and I would take the matter under

24   advisement.

25        Now let's --

1    How does that suit the plaintiff?

2    MS. STRICKLAND:  Yes, your Honor, I mean all of

3    that in theory, it makes sense and it's reasonable.  I

4    just want to put on the record that, um --

5    THE COURT:  In theory?  That's how I try a case.

6    MS. STRICKLAND:  No, I understand.  I just want to

7    see --

8    MS. YOUNG:  In theory for me?  That's how I do it.

9    MS. STRICKLAND:  Yeah, I just want to state the

10   obvious, which is that my, um, essentially entire legal

11   team that we were relying on to try this case withdrew

12   on the eve of trial and Cooper and I have never done a

13   trial, jury-waived or otherwise.  So we just feel

14   that -- it's not really -- it's not a criticism of you.

15   THE COURT:  Oh, and I'm not taking it that way.

16   I'm not.  And maybe judicial mediation is worthwhile.

17   There is a public interest, wholly apart from your

18   interest, in getting the matter resolved.  But I am

19   sensitive, because it was raised earlier, that you want

20   to get resolution here and for very good reason.  So

21   this isn't the earliest I can do it.  If you want to go

22   off to a trial later on and try judicial mediation, um,

23   how would you envision doing that?

24   We have -- in this district, and you see I know I

25   can do this, which everyone might like, um, we have just

marvelous magistrate judges who are superb mediators and
one has a nationwide reputation, Judge Maryanne Bowler,
who has served as a mediator for multidistrict
litigation outside the District of Massachusetts.  And
this is something I've examined -- I've tried this
ground before, Judge Bowler and I have served sometime
together, and certainly I would be willing to ask her if
she'd like to mediate this case, but that would pretty
much obviate a trial in early September.  I mean we're
about to -- I don't know what her vacation status is.
I'd just be asking her.

      But practically what are you thinking about in
judicial mediation?

      MS. STRICKLAND:  You have to understand that --

      MR. STRICKLAND:  That's a very difficult question
because of the preliminary injunction that has been
pending for so long and it's just -- this is a rock and
a hard place, and the resistance to mediation up until
this.  But we asked for it before, it's required under
the local rules here, we didn't get it, um, so it might
not be worthwhile.

      THE COURT:  Well you see this is the final
pretrial conference today, I'm telling you when you'll
get a trial.  I'm not a mediator but I am a judge.  You
know cases can always be settled.  My instinct is to

hold up the trial schedule and leave it to you people to suggest something, "you people" meaning the defendants as well.

Now let me turn to the defendants. How does that trial schedule suit?

MS. YOUNG: Your Honor, the week of September 5th would be really difficult because several of our critical witnesses are out of the office that week.

THE COURT: I'm, um -- I'm really disinterested in that, um, with all respect.

MS. YOUNG: Okay.

THE COURT: I mean this is a trial and, um, I think it's up to you to get witnesses.

Now I'm perfectly amenable to taking witnesses out of order, but when you tell me, "Well we can't do it that week, everyone's out of the office." Well of course we're gearing up here in Massachusetts too. So I'm going to do a jury-waived cause and then I'll get my first jury case on the following week. I live in the real world. No, no, you can get your witnesses, you've got more than a month's time, vacations are largely over.

Otherwise to that, what problems do you have?

MS. YOUNG: Just to be clear, your Honor, I believe some of those are work conflicts. But the week

of September 12th would look much better for our
witnesses.

As for mediation, defendants are open to do
mediation, but we would need to push back the trial date
just because of the amount of time and resources it's
going to take to prepare for trial.

THE COURT: But you see I agree with that, I agree
with that if you would agree on mediation, but I'm not
hearing anything about an agreement on mediation and no
one's given me a practical suggestion as to who the
mediator should be. I suggested quite candidly a
professional friend of mine whom I have enormous
professional regard for, but no one has jumped at that
bait. So I'm setting the trial date for the 5th of
September. Get ready for trial. Of course I know the
12th of September would be more convenient, I expect to
be trying a jury case that week and for each of the
weeks thereafter. I have a month-long antitrust case in
October. So, um, this case is set down for the 5th of
September.

There will be openings of 15 minutes, the final,
per side, if you wish. There will be closings of half
an hour per side, but that's not an invitation to take
that long. Your requests for findings and rulings may
be filed at any time up to and including the date of

1    the, um, final closing arguments.  They may be filed

2    thereafter, but you should understand that I intend no

3    delay while we wait for a transcript -- though I have

4    great respect for Mr. Romanow and he's a superb Court

5    Reporter, no, we're going to get busy deciding this

6    case.

7          And now I think I've pretty much gone over the

8    agenda that I need to go over, so I'm open for

9    questions.  If, um -- well let me say this to you -- to

10   the Stricklands because it may be that the, um, the

11   defense will call Ms. Strickland as an adverse witness.

12   If they do, um, they of course have the right to cross-

13   examine her.  I follow the procedure that if the defense

14   does that, then Ms. Strickland has -- or I will expect

15   Mr. Strickland, I will expect you to do the examination.

16   But you may also cross-examine Caryn Strickland.  And

17   again if they call her as an adverse witness, they're

18   going to be confined to -- you're going to be confined

19   on your cross-examination to the matters that they went

20   over on their direct by way of cross.

21         And now I realize I did leave one thing out.  You

22   make reference to expert witnesses here.  Have we got

23   expert reports?

24         MS. YOUNG:  Yes, your Honor, we do, both parties

25   do.

```
 1        THE COURT:  All right.  Understand that no witness

 2   will testify to anything that's not in the expert

 3   report.  And again I am open, by agreement, to your

 4   resting on the expert reports and not calling the

 5   witnesses live, and, you know, I'll just evaluate the

 6   expert report.  But that has to be by agreement.

 7        All right.  Questions?

 8        (Pause.)

 9        MS. YOUNG:  Your Honor, defendants have a couple

10   of questions, if that's all right?

11        THE COURT:  Sure.

12        MS. YOUNG:  If the parties agreed to have your

13   colleague mediator serve as a mediator in this case in

14   the next day or two, could we possibly file a notice to

15   the Court about that, if there's agreement?

16        THE COURT:  If you do and the answer is "yes,"

17   well then the trial date is off.  So that's to be set

18   just as soon as I can reset it should mediation not

19   prove successful.

20        MS. YOUNG:  Understood, your Honor.

21        Additionally, what is your Honor's deadline for

22   pretrial motions, such as motions in limine?

23        THE COURT:  Really right up until the eve of

24   trial.  I will tell you that motions in limine,

25   especially -- I like motions in limine, they're, um,
```

```
1   really almost better than a trial brief because they
2   tell me where the tension points are.  I but rarely
3   grant them.  What I do is read them and try to be
4   prepared on them and then I see how the trial develops.
5   And that's not meant to discourage you from filing, I am
6   very open to the filing of motions in limine.
7         MS. YOUNG:  Thank you, your Honor.
8         THE COURT:  Here with so little in dispute, there
9   may be some interesting evidentiary issues, but I don't
10  think evidence looms so large here.  Again being just as
11  candidly as I can, um, what this case comes down to is
12  what I'm going to make of this evidence.  I've looked at
13  a lot of it.  I've got to look at more of it.  I do want
14  to hear live witnesses and evaluate their credibility.
15  But I'm not looking towards this as a massive evidence
16  workout.  But if I'm mistaken, you'll bring it my
17  attention.
18        MS. YOUNG:  Yes, your Honor.  And I believe the
19  defendants have one final question.
20        Your Honor, will we be permitted to call witnesses
21  that are not named in this pretrial joint filing?
22        THE COURT:  No one will call anyone that's not
23  named in this joint pretrial filing.
24        MS. YOUNG:  Understood, your Honor.  Thank you.
25        THE COURT:  And now for the Stricklands,
```

1   questions?

2        MR. STRICKLAND:  Yes.  I want to touch on, um, you

3   said we could submit expert reports by agreement.  Can

4   we do, um, expert deposition designations?

5        THE COURT:  Exactly, again by agreement.

6        MR. STRICKLAND:  Oh, so the designations require

7   agreement as well?

8        THE COURT:  Yes, because the normal rule, you see,

9   is that witnesses testify live.  So unless you agree,

10  the witness has to be produced and testify under oath.

11  But here I am telling you that if you'll agree, I am

12  more than amenable, in fact I am eager to have you agree

13  to deposition excerpts.  And, um, I guarantee you that,

14  um, no factual finding will ever be rendered until I

15  have read those depositions.  I take that just like

16  evidence.  But I'm hopeful you'll get together and send

17  me depositions in August that I will have read before

18  the 5th of September.

19       MR. STRICKLAND:  So even in situations where

20  there's the unavailability of the witness because of the

21  --

22       THE COURT:  Oh, well, no, if the rule governs --

23  if the rule governs, then the rule governs.

24       MR. STRICKLAND:  Okay.  So, for example, Anthony

25  Martinez lives in South Florida, so he's over 100 miles

1  away, so we're going to designate his deposition.  You

2  know there's several instances of that that we'll be

3  using to basically accept your offer to present this

4  case on the documents.

5        THE COURT:  Right.  But you have every right to

6  depend upon my rigorously following the Federal Rules of

7  Evidence.

8        And, Mr. Cooper, you know it's -- it's not a sign

9  -- I'll be very candid here.  It's not a sign of -- if

10  this is your first trial outing for the two of you, it's

11  never a sign of weakness to ask a question.  There's no

12  -- and let me tell you, it's not any sort of help to one

13  side or another to ask questions about trial procedure

14  of Ms. Gaudet, she is as good a Courtroom Deputy as you

15  would find in any district anywhere.  And during the

16  course of the trial, if you are unclear as to a ruling

17  that the Court has made, it's never wrong to say "Why

18  are you doing that, Judge?"  I should have a reason.

19        MR. STRICKLAND:  Oh, in all honesty I don't even

20  know where to start with my questions.  I mean we're all

21  within months of the trial and we're kind of --

22        THE COURT:  I think it is -- actually a trial is,

23  um, it's an exercise in reaching out for justice and the

24  logic of, um, the logic of the process is really very

25  good.

1          Now one thing I also ignored.  I know you'd prefer

2     to do this in Ashville.  We are going to go wherever the

3     Western District of North Carolina tells us to go, that

4     is to say it looks like we're going to be in Charlotte.

5     You'll know -- well I'm going to be in Boston.  But it

6     looks like you're going to be in a courtroom in

7     Charlotte.  I will be in a courtroom here in Boston.

8     And we will all be able to see each other.  But we will

9     know that well before the 5th of September and

10    Ms. Gaudet will inform you at once.

11         They have a very heavy criminal workload, I

12    understand from the clerks there, and, um, again this is

13    an important case, important to the litigants and beyond

14    the litigants, but it is a civil case and the criminal

15    cases comes first.

16         Any other questions?

17         MR. STRICKLAND:  As far as deposition designations

18    though, will Ashville control?  Because that's the

19    division that controls where the --

20         THE COURT:  What do you mean "Will Ashville

21    control?"

22         MR. STRICKLAND:  It's the location of the

23    courthouse for the 100-mile rule.

24         THE COURT:  I don't know the answer to that

25    question, that's something that can be researched.

 1          MR. STRICKLAND:  Well we've been relying on this

 2     case would be tried in Ashville.

 3          THE COURT:  Well it was filed in the Ashville

 4     division.  There may not be any objection.

 5          MR. STRICKLAND:  Okay.  And as far as the trial

 6     time, is it going to be evenly split between the

 7     parties?

 8          THE COURT:  It is, and I'm the timekeeper.

 9          MR. STRICKLAND:  And it's going to be kind of a

10     chess-clock type of thing?

11          THE COURT:  It is, to the nearest 5 minutes.

12          All right.  If there are no other questions.

13     Again, if you want mediation, let me know right away

14     because I'll get in touch with Magistrate Judge Bowler,

15     but otherwise we're on for the 5th of September.  If you

16     were to settle the case, a simple phone call to

17     Ms. Gaudet is all that's necessary.  Don't ever make

18     that call unless the case in fact is settled.  Because

19     if you make that call, don't spend another dime, and all

20     the deadlines are off, but if you later come and say

21     it's been unwound, I will be very sticky indeed.

22          I have enjoyed working with you and I say that

23     with sincerity and I will enjoy -- well, I, of course,

24     institutionally hope you settle, but if you don't, I'm

25     sure I will enjoy the trial.  And I wish you well.  And

1    I think we're ready to adjourn.

2         MS. YOUNG:  Your Honor, defendants have one more

3    question.

4         THE COURT:  Yes.

5         MS. YOUNG:  Will the parties be able to call

6    expert witnesses that are not named in the joint

7    pretrial statement?

8         THE COURT:  No.

9         MS. YOUNG:  Understood, your Honor.  Thank you.

10        THE COURT:  I mean that's why we do this.  The

11   whole idea, the whole genius of the Rules of Civil

12   Procedure is to narrow proceedings, not to expand them,

13   and having been given ample time and warning, we now

14   know the parameters of how we're going to do this work.

15        MS. YOUNG:  Understood.  Thank you very much, your

16   Honor.

17        THE COURT:  Thank you.  We will recess.

18        (Ends, 1:15 p.m.)

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

4   do hereby certify that the foregoing record is a true

5   and accurate transcription of my stenographic notes

6   before Judge William G. Young, on Thursday, July 27,

7   2023, to the best of my skill and ability.

8

9

10

11   /s/ Richard H. Romanow 08-01-23
     _____
12   RICHARD H. ROMANOW    Date

13

14

15

16

17

18

19

20

21

22

23

24

25