```
 1              UNITED STATES DISTRICT COURT

 2        WESTERN DISTRICT OF NORTH CAROLINA (Asheville)

 3                         No. 1:20-cv-00066-WGY

 4

 5   CARYN DEVINS STRICKLAND, formerly known as JANE ROE,
              Plaintiff
 6

 7   vs.

 8

 9   UNITED STATES OF AMERICA, et al,
              Defendants
10

11                      * * * * * * * *

12

13                 For Zoom Hearing Before:
                   Judge William G. Young
14

15                    Status Conference

16

17                 United States District Court
                   District of Massachusetts (Boston)
18                 One Courthouse Way
                   Boston, Massachusetts 02210
19                 Wednesday, June 21, 2023

20                      * * * * * * * *

21

22            REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
23               United States District Court
         One Courthouse Way, Room 5510, Boston, MA 02210
24                   rhrbulldog@aol.com

25
```

```
 1                    A P P E A R A N C E S

 2

 3    COOPER J. STRICKLAND, ESQ.
      CARYN STRICKLAND, ESQ.
 4       Law Office of Cooper Strickland
         P.O. Box 92
 5       Lynn, NC 28750
         (828) 817-3703
 6       Email: Cooper.strickland@gmail.com
         For the plaintiff
 7

 8    DANIELLE WOLFSON YOUNG, ESQ.
      MADELINE McMAHON, ESQ.
 9       DOJ - Civ
         Federal Programs
10       1100 L Street NW, Suite 11526
         Washington, DC 20005
11       (202) 616-2035
         Email: Danielle.young2@usdoj.gov
12       For defendants

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              P R O C E E D I N G S
2         (Begins, 9:30 a.m.)
3         THE CLERK:  Now hearing Civil Matter 20-00066,
4    Strickland versus the United States of America.
5         THE COURT:  Good morning counsel, thank you for
6    attending on this session of the court.  This is a
7    proceeding held on our zoom platform.  Our host for this
8    status conference is Courtroom Deputy Clerk, Jennifer
9    Gaudet.  The proceedings are taken down by our Official
10   Court Reporter, Rich Romanow.  I have law clerks on the
11   line.
12        The proceedings are open to the public.  If any
13   members of the public are present, you are certainly
14   welcome, but I remind you to keep your microphone muted
15   and that the rules of court remain in full force and
16   effect, that is to say there is no taping, streaming,
17   rebroadcast, screen shots, or other transcription of
18   these proceedings.
19        With that said, would counsel identify themselves
20   starting with the plaintiff.
21        MR. STRICKLAND:  Good morning, your Honor, Cooper
22   Strickland for the plaintiff, who I have present with
23   me.
24        THE COURT:  And good morning to you both.
25        MS. STRICKLAND:  Good morning.
```

1          THE COURT:  For the defense?

2          MS. McMAHON:  Good morning, your Honor, I'm

3     Madeline McMahon from the Department of Justice, and

4     Danielle Wolfson Young from the Department of Justice.

5          THE COURT:  And good morning to you.

6          Well I called this status conference to make a

7     suggestion to you and let me tee it up.  First of all, I

8     am preparing for the hearing on the cross-motions for

9     summary judgment that is to be held on the 12th and I

10    want to keep that date, but as to -- and I want to thank

11    you, thank you both, both sides, because now, really for

12    the first time in my examination of this case, we've

13    moved beyond allegations to actual evidence and, um,

14    your, in large measure, thorough presentation of your

15    motions and supporting exhibits have been extremely

16    helpful, but I've noticed the following, there isn't too

17    much dispute as to liability, there isn't too much

18    dispute as to what went on here.  The issues, the major

19    issues are legal issues, what do we make of it when we

20    examine what went on here?  And with that in mind, I

21    offer the following suggestion.  And this is not

22    something that I can require and it's not something I

23    need a response from you this morning, although I'm

24    happy to explain, if I do not do so, the ramifications

25    of what I'm suggesting.

1    In the First Circuit, and I know we're not in the

2  First Circuit, we're in the Fourth Circuit, but in the

3  First Circuit we have a procedure and it's fully

4  appropriate, it's called a case-stated procedure, and

5  under the case-stated procedure where the facts are not

6  in dispute and what is in dispute is the legal

7  requirements to be applied to those facts, the judge

8  may, so long as there is not a significant, um,

9  determination of competing views of the facts, the Court

10  may hold a hearing and taking the undisputed facts may

11  rule on the law and determine the case in whole or in

12  part.  That procedure holds significant advantages, I've

13  found, to a situation where there are competing motions

14  for summary judgment.  And let me explain how I use that

15  procedure because I think it would be helpful here.

16    If we go forward on the 12th and argue the

17  competing motions for summary judgment, under the --

18  under Rule 56 I am required, and I shall, take each

19  motion separately and, um, draw all inferences against

20  the moving party, and that could very well result in --

21  and I'm not -- my mind is completely open here.  I am

22  preparing for the hearing, so I am getting myself into

23  the actual evidentiary materials that are before me now,

24  and I will tell you that my mind is completely open.  If

25  you think I've got some agenda here, you won't go for

1   what I'm suggesting, but all I can say is I have no
2   agenda at all, I'm trying fairly and impartially to
3   adjudicate the matter in the most efficient and helpful
4   way.
5       So my experience has been that if you have
6   competing motions for summary judgment, not infrequently
7   both motions get denied or a little bit gets decided,
8   but the motions are denied.  On the contrary, if you
9   treat it as a case-stated, in essence it is the final
10  argument for so much of the case as can be handled in
11  the case-stated fashion.  And procedurally, it works
12  like this.
13      With -- if we go on the cross-motions for summary
14  judgment on the 12th, what I'll do is I'll give you each
15  15 minutes a side to argue, more than likely I'll take
16  the matter under advisement.  Recognizing that we have a
17  September trial, I'm sensitive to the defense's motion
18  here, but for the moment we have a September trial.  And
19  I'll make my ruling.
20      If we go case-stated, here's the way it will work.
21  I'll give you -- because it's like final argument, I'll
22  give you 40 minutes a side, because it's final
23  argument -- well to be specific, this will only work on
24  liability.  Damages, if we get to damages, since the
25  record is not as fully developed, a case-stated won't

1   work as to any damages here.  So I'm talking just about

2   the liability determination.

3        So I'll give you 40 minutes to argue.  My practice

4   is the plaintiff argues last because the plaintiff bears

5   the burden of proof.  I will hear the arguments, take

6   the matter under advisement.  Under Rule 52 then, I am

7   obliged to write an opinion, a full opinion as to

8   liability with findings of fact and rulings of law.

9   There are two possible outcomes, either the plaintiff

10   wins and we schedule a hearing on damages or the

11   plaintiff loses and judgment enters for the defendant.

12        Because it seems to me the facts are largely

13   undisputed, and I want to get to two areas where clearly

14   there are disputes, and it's either -- well let me get

15   to those areas right now.

16        It seems that the facts on liability are

17   undisputed.  In one respect I find a dispute, a factual

18   dispute between what Ms. Strickland says the Judicial

19   Integrity Officer said to her and what the Judicial

20   Integrity Officer says was said to her.  I've got no

21   idea whether that factual dispute is dispositive, but

22   it's a factual dispute, and if we did it on a

23   case-stated, I'm not in a position to resolve that

24   factual dispute because I haven't heard the testimony

25   and the like.

```
 1        I will tell you how I analyze it.  As to that I
 2   would say, "Well" -- once I found everything else that
 3   isn't in dispute, I'd say "Well suppose Ms. Strickland
 4   is right, does it change anything?"  And then I would
 5   figure that out and I would go on to assume the
 6   contrary, I would say, "Well suppose the government's
 7   version of what the Judicial Integrity Officer said is
 8   right, does that change anything?"
 9        Now if the answer to both those questions are
10   "No," I can go ahead and resolve the case.  If the
11   answer to either of those questions is "Yes," that
12   that's a dispositive dispute, well we're going to have
13   to have an evidentiary hearing, but it's much shorter
14   and it focuses on that particular dispute.
15        The other aspect of the evidentiary record that I
16   have before me that quite candidly I'm not clear whether
17   it's in dispute or not, I've got this, um, tape and,
18   um -- well I've gotten into it, but quite candidly I
19   don't know what it is, I don't know who's talking, I
20   don't know what the setting is.  Now I suppose that can
21   all be explained to me at the time of argument, whether
22   the argument's going to be on cross-motions for summary
23   judgment or on the case-stated, but, um, I really do
24   want to be candid.  My statement about it seems to me
25   that everything is undisputed, I've identified the one
```

dispute, and then this tape.  I don't know what to make
of this tape, I don't know whether it's peripheral,
whether it's central?  And you people, not this morning,
but you people are going to have to explain that to me
at an appropriate time.

So there's my proposal.  If we went for that, um
-- again I see various advantages to that.  You've got
to trust me that I haven't got an agenda here, I'm just
talking about procedurally how we might address the
case.  I have no opinion whatsoever as to the outcome.
I look forward to the argument, whether it's
cross-motions or case-stated.

It's not -- I don't want you to jump now, but I do
want you to confer among yourselves.  If I have missed
some, what the parties think are truly central factual
disputes, um, feel free to bring them to my attention.
And then I want you to give Ms. Gaudet a heads-up as to
-- in sufficient time before the 12th, as to how we're
going to proceed.  Whether you agree to case-stated, in
which case we're going to take an hour and 20 minutes
for final argument as to liability, or whether we're
going to do this as cross-motions for summary judgment,
in which case we'll take a half an hour to argue the two
motions for summary judgment.

Now that's my suggestion.  I'm through.  This is

```
1    not the time for argument, but I am certainly open to
2    questions.  I want you to be very clear what I'm
3    proposing.
4          We'll start with the plaintiff.  Questions?
5          MR. STRICKLAND:  Thank you, your Honor.
6          I'm familiar with your use of this practice and
7    I -- at this moment I don't have any specific questions.
8    If maybe I can mute my microphone and turn off my
9    camera, I'll confer with my client and come right back
10   and ask any, but --
11         THE COURT:  Before you do that, let's see what the
12   defense has in the way of questions and then you go
13   right ahead and do that and we'll stand by.  But let's
14   first see the defense.
15         Questions from the defense?
16         MS. McMAHON:  Your Honor, just to clarify
17   something.  We have seen on the docket that the motion
18   for summary judgment hearing was scheduled for July
19   10th, not July 12th.
20         THE COURT:  I misspoke.  I misspoke.
21         MS. McMAHON:  No problem.
22         THE COURT:  I work for Ms. Gaudet.  If it says the
23   10th, it's the 10th.
24         MS. McMAHON:  And to follow up on that, just to be
25   clear, if we agree -- if the parties agree to a
```

1   case-stated, we would convert the summary judgment

2   hearing to the case-stated, is that right?

3          THE COURT:  Exactly.

4          MS. McMAHON:  Got it.

5          So just to clarify as well, we wouldn't be -- the

6   case-stated hearing would just be argument, is that

7   right, there would be no fact witnesses whatsoever?

8          THE COURT:  Correct, because the theory of it is

9   that the facts are in such significant measure

10  undisputed that the -- I'm not going to be drawing

11  inferences against each moving party.  To the extent I

12  draw inferences, I'm permitted to draw reasonable

13  inferences from undisputed facts, and then I must apply

14  the law.

15         MS. McMAHON:  So would -- in terms of the evidence

16  that's before you, um, would that have been confined to

17  what we've attached to our motion for summary judgment

18  or would we have the opportunity to put additional

19  evidence into the record to the extent you think it's

20  relevant?

21         THE COURT:  Excellent question.  I had thought it

22  would be confined to the exhibits to the motions for

23  summary judgment.  If you went for the case-stated route

24  and you thought there was additional -- again we're just

25  talking liability here, there was additional evidence

1    that you wanted to proffer on liability, we'd have to

2    work out a schedule -- we might have to slip the date of

3    the 10th, work out a schedule to get that evidence

4    before me, and of course this won't work if the evidence

5    is disputed by the other side and it is significant

6    evidence.

7            Am I making sense?

8            MS. McMAHON:  Yes, that makes sense.

9            One thing, at least at the top of our mind, is

10   that, um, per the Court's ruling we're planning to

11   reopen the plaintiff's deposition, which is something we

12   haven't been able to do since we've been --

13           THE COURT:  I have that in mind, but we've got

14   to -- I'm trying to move the thing along.  Remember, um,

15   there is both a private interest here on the part of

16   Ms. Strickland, as she wants to win this case, and, um,

17   if we get to damages, her damages are going to be

18   affected by the time that we take to adjudicate it.  And

19   also there is an appropriate public interest in

20   resolving this matter.  And I'm -- and I've said

21   throughout, I'm sensitive to that.

22           So, um, I actually think -- well I don't want to

23   get into the weeds of what's going to be discovered in

24   this further discovery, but the further discovery that

25   I've permitted is, um, the Chief Judge.  We already know

1    what the Circuit Executive says happened at that

2    meeting, so fine, they can have that deposition.  Then

3    you're complaining about four last-minute witnesses and

4    I say "Fine, you can look at those witnesses."  But in

5    candor my guess is -- again I don't know, whatever they

6    have to say is peripheral.

7         And then there's this business about reopening

8    Ms. Strickland's deposition.  Well I read that and made

9    my rulings with care, but it seems to me that whatever

10   you're going to discover in the two additional hours

11   largely goes to liability.  Now this is not the time to

12   argue, but I'm trying to be transparent.  Not -- it goes

13   to damages, excuse me, I misspoke again, it goes to

14   damages and the right to obtain damages.  That's not

15   what I'm taking up here, but I can see how you would

16   think of that as liability.

17        I look at this as follows.  The mandate from the

18   Fourth Circuit has instructed me that if the allegations

19   of the complaint are sustained, then Ms. Strickland is

20   entitled to recover front pay, and I -- it goes without

21   saying, I fully accept that, I intend to vindicate that

22   opinion and test the evidence against that opinion.  So

23   now I understand -- having looked at the evidence here,

24   I understand the theory much more than I did.  I

25   understand that she's claiming deliberate indifference

1   to a sexual harassment claim, she's claiming her due

2   process and equal protection rights have been violated.

3   Now whatever one may say about that Fourth Circuit

4   opinion, it's a significant development in the law and

5   I'm going to treat it as such. And I must, um, work out

6   the contours of that, um, with your aid. And I'm saying

7   I'm very favorably impressed by both sides's motions for

8   summary judgment and the exhibits, and I'm working with

9   it, I'm getting ready for the hearing.

10       It seems that what you want to get into is a

11   possible bar to damages and, um, I don't know as that

12   that's what we should deal with -- actually your

13   question is a very good one and it reveals I haven't

14   thought this through to that extent. I don't know as we

15   want to get into that in what I contemplate as the case-

16   stated portion here. Again I see it as writing an

17   opinion that either comes out that in some respect, in

18   those theories I just mentioned, her rights were not, by

19   the conduct of the government, as we will call it, not

20   significantly respected and the government is therefore

21   liable, or writing an opinion that in one or another

22   respects the evidence just doesn't support it,

23   notwithstanding the significance of the Fourth Circuit's

24   opinion.

25       So, um, I guess to directly answer your question,

yes, you're entitled to reopen the deposition and to
ascertain those things which I don't think are
privileged and, um, with the possible exceptions that
exist in my order, but I would not encompass them in the
case-stated if we go case-stated.

Does that answer your question?

MS. McMAHON:  It does, your Honor.  Thank you.

THE COURT:  Yes.  Okay.  So let me make that
clear.  And that was a very good question because the
contours are liability given the issues raised in the
Fourth Circuit's decision, which it's my duty to
implement.

Okay, Mr. Strickland, why don't you mute yourself,
go off camera, and we will stand by for a reasonable
period of time to see if you have questions.

MR. STRICKLAND:  Thank you.  We'll just take a few
minutes.

THE COURT:  Thank you.

(Pause.)

MR. STRICKLAND:  Thank you, your Honor.

Just to clarify a point.  We will still be able to
file a reply to the summary judgment motions?

THE COURT:  Oh, yes.

MR. STRICKLAND:  Okay.  And, um, in that case I
think that, um, what you have kind of mapped out makes a

1     lot of sense as far as the way you view the record, and

2     I think that if we could just have -- it's a significant

3     decision --

4         THE COURT:  I recognize that, that's why I wanted

5     to take time to explain it in detail.

6         MR. STRICKLAND:  And so from my perspective

7     though, if we were still following the reply and

8     argument, it's still going to be on the 10th, but it's

9     going to be expanded to 40 minutes, we kind of need to

10    know sooner than later so that we can prepare for that

11    eventuality.  And what I would suggest is that I think

12    we would be prepared to, um, let your Courtroom Deputy

13    know by the end of the day our position.

14        THE COURT:  Well how about by the end of the week?

15    Well the government, maybe the government can agree or

16    not agree by the end of the day.  You both have to

17    agree.

18        How does the government feel?

19        MS. McMAHON:  I think this is something that we

20    would need to discuss with our client.  So at this point

21    --

22        THE COURT:  End of the week?

23        Ms. McMAHON:  Yeah, end of the week I think makes

24    sense.

25        THE COURT:  Because Mr. Strickland's point is a

```
 1    good one, you want to know what you're preparing for.
 2    So by the end of the week you'll tell Ms. Gaudet.  Both
 3    will have to agree because this is a procedure that can
 4    only work by agreement.
 5         All right.  Any other questions, Mr. Strickland?
 6    Because there's one other thing I want to say, just so
 7    the record is clear.
 8         MR. STRICKLAND:  The only other question I have
 9    is, um would you like courtesy copies of the response
10    and the reply just the same as the opening brief?
11         THE COURT:  I think we would.
12         MR. STRICKLAND:  Okay, we'll get those in the
13    mail.
14         THE COURT:  Thank you.
15         All right.  If there are no other questions, I
16    simply want to put on the record something because there
17    is a sensitivity.
18         I recognize now that the United States is the
19    defendant and the Department of Justice is defending
20    the, um, federal employees of the judicial branch and
21    the judicial officers in their official capacities and
22    the United States is the defendant, but I want to state
23    to you, simply because in the interests of transparency,
24    that since the case has been remanded to me for further
25    proceedings, I have had three completely innocuous, in
```

1  my view, interactions with the Director of the

2  Administrative Office of the United States Judicial

3  Conference who early on in this case was a named

4  defendant, the Honorable Roslynn Mauskopf, and so I

5  state what those interactions were.

6       First, the government of Japan has awarded me a

7  medal for my working with Japanese judges who are on

8  sabbatical and studying here in Boston and, um, under

9  the regulations it's appropriate for me to accept this

10 medal, if has no intrinsic value so long as I report it

11 and of course I have.  But in order to retain it for

12 display in these chambers, I need the permission of the

13 Director of the Administrative Office.  I wrote her a

14 formal letter and she wrote me a formal response

15 granting that permission.  That's one.

16      Also, I have -- I yearly, and I have since 2009,

17 prepare an internal -- it's completely unofficial, but

18 I'm responsible for it, an internal document within the

19 judiciary which I entitle "America's Most Productive

20 Federal District Courts."  I did so and I send copies to

21 the Chief Judges of the courts who are the most

22 productive and also a copy to Judge Mauskopf, as she is

23 the Director, and to John Cook, the Director of the

24 Federal Judicial Center for Education, and I've done so.

25 I mean no disrespect, but she didn't respond or

1    acknowledge it.

2         Third, last month there was the Judicial

3    Conference of the First Circuit which I attended and

4    Judge Mauskopf spoke at that conference and, um, one

5    thing she said was that "The true home of the judge is

6    the courthouse."  I am one who is very much in favor of

7    that view of the role of the judicial officer.  And

8    afterwards I went up and introduced myself to her, we've

9    never met, and, um, identified myself as the author of

10   "America's Most Productive."  She said, um, that she

11   thanked me for it, expressed that she was sorry she

12   didn't respond, and I said not to worry about it, she's

13   busy, and she further said how much she favored the

14   proposition that judges be out on the bench, and as that

15   is something I've written about extensively, I thanked

16   her for that.  The whole interaction was less than 3

17   minutes.

18        These have nothing to do with the case at all.

19   I've assiduously avoided anything that even remotely

20   might bear on this particular case.  But there have been

21   those three interactions and I place them on the record.

22        All right.  I look forward then to hearing you one

23   way or the other.  And I will say, this is not

24   something -- I'm offering this as, um, a fair and

25   impartial way to move forward on this case.  If one of

1    you wants it and one of you don't, don't think that's

2    going to rebound against anyone, Ms. Gaudet is

3    instructed to tell me only that both parties agree or

4    that the parties don't agree.  If you don't agree, we'll

5    hear it as cross-motions for summary judgment.

6            So I think we're ready to recess and we'll stand

7    in recess.  Thank you.

8            (Ends, 9:30 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                C E R T I F I C A T E

 2

 3          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

 4     do hereby certify that the foregoing record is a true

 5     and accurate transcription of my stenographic notes

 6     before Judge William G. Young, on Wednesday, June 21,

 7     2023, to the best of my skill and ability.

 8

 9

10

11     /s/ Richard H. Romanow 09-19-23
       _____
12     RICHARD H. ROMANOW    Date

13

14

15

16

17

18

19

20

21

22

23

24

25
```