**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AND
DISQUALIFICATION OF DEFENDANTS' COUNSEL**</u>

Plaintiff Caryn Devins Strickland, by and through undersigned counsel, respectfully

moves for appropriate sanctions against Defendants and their counsel.  The basis for this motion

is that Defendants and their counsel made unfounded allegations against Plaintiff with no

plausible basis in law or fact.  *See* ECF No. 219.  In making these unfounded allegations,

Defendants misrepresented the law to the Court and opposing counsel, failed to disclose

controlling adverse authority, and failed to correct their misrepresentations even after they were

on clear notice of an ethical duty to do so.  At bottom, Defendants violated their ethical duty not

to raise "charges of wrongdoing made recklessly or knowing them to be without foundation."

Restatement 3d of the Law Governing Lawyers, § 106 ("Restatement"); N.C. R. Prof. Cond. 3.5,

cmt. 10 ("[T]he prohibition against conduct intended to disrupt a tribunal applies to conduct that

does not serve a legitimate goal of advocacy or a requirement of a procedural rule and includes

. . . unfounded personal accusations . . . .").  Defendants' unfounded allegations have severely

prejudiced Plaintiff and substantially affected her rights in this proceeding, as described below.

1

## BACKGROUND

### A. Defendants' Unfounded Allegations at Plaintiff's Deposition

On April 25, 2023, Defendants' counsel deposed Plaintiff.  During the deposition, Defendants' counsel raised a line of questioning that was not related to any claim or defense in this litigation and had never previously been raised during discovery.  Defendants' counsel did not directly state the purpose of this line of questioning during the deposition, but the clear implication of the questioning was that Defendants were making accusations against Plaintiff.

On April 28, 2023, Defendants' counsel informed Plaintiff's counsel that they intended to pursue the issue they had raised during Plaintiff's deposition in a motion to be filed on May 1, 2023.  Specifically, Defendants intended to request that the discovery period, which was set to expire on May 1, 2023, be extended for the purpose of allowing Plaintiff to decide whether to assert privileges in response to Defendants' questioning.  If Plaintiff's privilege assertions were overruled, then Defendants would seek to reopen her deposition to answer certain specific questions she did not answer during the deposition pending a privilege determination.

The next day, on the Saturday evening of April 29, 2023—that is, just four days after Defendants' counsel first raised this line of questioning on April 25, 2023—Plaintiff's entire legal team, with the exception of her spouse, moved to withdraw *en masse*.  ECF No. 207.  As the basis for the withdrawal, counsel cited an unspecified "conflict" and "irreconcilable differences."  ECF No. 207.  One of Plaintiff's attorneys had been admitted *pro hac vice* only *four days* prior to moving to withdraw, which underscores that there was no preexisting conflict that could have led to the withdrawal.  *See* Entry Order Dated April 25, 2023.

On Sunday, April 30, 2023, Plaintiff's remaining counsel emailed Defendants' counsel regarding Defendants' proposed motion to extend the discovery period.  Plaintiff's counsel stated

2

that Plaintiff would be willing to join the motion, as Defendants requested, so that Plaintiff could

have an opportunity to assert privilege over the issues implicated by Defendants' questioning.

Plaintiff's counsel cautioned, however, that he did not believe there was any basis for

Defendants' allegations. Plaintiff's counsel offered to consent to an extension of time so that the

parties could conduct more research on the issue, but Defendants' counsel rejected the offer and

filed the motion to extend discovery on May 1, 2023. *See* ECF No. 208.

> **B.** **Defendants' Misrepresentations in their "Motion to Strike Privilege Assertion and to Compel Deposition Testimony"**

On May 8, 2023, in accordance with the schedule agreed to by the parties, Plaintiff's

counsel served Defendants' counsel with a letter asserting privileges over Defendants' questions

during the deposition. Among these privileges, Plaintiff's counsel stated that Plaintiff would be

asserting ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████ ECF No. 219-2, at 1.

On May 15, 2023, Defendants filed their "Motion to Strike Privilege Assertion and to

Compel Deposition Testimony" ("Motion to Strike"). ECF No. 212. Because Defendants'

Motion to Strike concerned a claim of privilege that is subject to sealing pursuant to Federal Rule

of Civil Procedure 26(b)(5)(B), Defendants' filing on the public docket was heavily redacted.[1]

---

[1] Because Defendants' allegations implicate privileged matters, this filing describes Defendants' misrepresentations in general terms without discussing the substance of the privileged testimony. Entry Order Dated May 19, 2023 (ordering sealing of filing related to privilege challenge); *see, e.g.*, *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 U.S. Dist. LEXIS 30872, at *2 (N.D. Cal. Mar. 11, 2011) (discussing privilege assertions related to documents submitted for *in camera* review). Defendants' allegations are addressed in detail in Plaintiff's "Response to Defendants' 'Motion to Strike Privilege Assertion and to Compel Deposition,'" which is currently filed in redacted form on the public docket and attached as Exhibit A. ECF No. 226. This Court previously denied Plaintiff's motion to file her Response under seal without explanation. *See* ECF No. 238.

*See id.*  Rule 26(b)(5)(B) specifically states that when "information produced in discovery is subject to a claim of privilege," a party "may promptly present the information to the court under seal for a determination of the claim."  Defendants thus separately filed a consent motion to file the unredacted version of their Motion to Strike.  *See* ECF No. 213.  This Court granted Defendants' motion to seal on May 19, 2023.  *See* Entry Order Dated May 19, 2023.  That same day, Defendants filed their unredacted Motion to Strike under seal.  *See* ECF No. 219.

In their sealed Motion to Strike, Defendants made three separate misrepresentations to this Court and opposing counsel.

***False Allegation of*** ███████████  First, Defendants implied that if the allegations raised by their questioning of Plaintiff during her deposition were true, then Plaintiff's actions would be ███████████  Specifically, Defendants asserted that Plaintiff's testimony was "highly relevant" to this litigation because ███████████████████████████ ████████████████████████████ ██████████████████████  ECF No. 219, at 8.  Defendants failed to disclose to this Court, however, that there is no plausible basis to argue that the conduct that they alleged is █████ ██████████████████████████ ████████████████████████████ ███████████████████████████ █████████████████████████ ██████████████████████ ████████████████████████████ ████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

Defendants' questioning also makes clear that ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ This issue provides a separate basis to conclude that Defendants'

implication of ████████ is facially implausible and frivolous.

Defendants' Motion to Strike did not cite the controlling adverse authorities that fatally

undermined their argument that Plaintiff's alleged conduct was █████, let alone attempt to

distinguish those authorities. ECF No. 219. Nor did the Motion to Strike acknowledge the

numerous persuasive authorities making clear that the weight of authority is firmly contrary to

Defendants' position. These adverse authorities render Defendants' argument that Plaintiff

allegedly █████████████████████ frivolous.

***False Allegation of*** ██████████████████ Second, Defendants implied tha ████████

████████████ and argued that the conduct Plaintiff allegedly engaged in was ████████

████████ ECF No. 219, at 8–9. This allegation, too, is lacking in any basis. In making this

allegation, ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

5

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

Defendants' assertion that Plaintiff's alleged conduct was ██████████ while failing to disclose

controlling adverse authority, was frivolous and grounded in a misapprehension of the law.

Further, ████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████ In

failing to disclose the ██████████████████████ to the Court, Defendants failed to disclose

additional adverse controlling authority from the relevant jurisdiction.

***Misrepresentation of Legal Authority.*** Third, Defendants misstated legal authority by

misrepresenting the source of a quotation cited in their Motion to Strike. *See* ECF No. 226, at

12. The effect of Defendants' misrepresentation was to create a false impression that the cited

quotation supported Defendants' argument and to conceal controlling adverse authority.

In support of their argument that reopening Plaintiff's deposition was necessary to

determine ████████████████████████████████████████ Defendants included a

6

citing parenthetical to a decision in support of the proposition that Plaintiff's alleged conduct was ███████████████ ECF No. 219, at 8–9. This decision was the *only* case Defendants cited for this proposition, and it was thus critical to their argument. *See id.* The language that Defendants quoted, however, that this alleged conduct is ████████████████ *does not even appear in the cited decision*. *Id.* Rather, that precise quotation *does* appear in a later federal court decision, which specifically discusses the adverse controlling authority that Defendants failed to disclose to this Court. The later federal court decision recognizes the current controlling ████████, but it concludes ██████████████████████████████████ ██████████████████████████████

Defendants' misrepresentation of legal authority raises a reasonable question of whether they were aware of the current ████████ and intentionally failed to disclose it because doing so would fatally undermine their argument that Plaintiff engaged in ████████████ The altered quotation also raises a reasonable question of whether Defendants intentionally miscited precedent to conceal adverse controlling authority and mislead the Court and opposing counsel. Defendants' misciting of precedent and altering the meaning of a quotation was inconsistent with their duty of candor and to make arguments that are warranted by existing law.

### C. The Court's Denial of Leave to File Plaintiff's Response Under Seal and Adverse Ruling Against Plaintiff

When Defendants filed their sealed Motion to Strike, Plaintiff's counsels' motion to withdraw was still pending. *See* ECF No. 207. Thus, Plaintiff's legal team, in addition to this Court, had access to the sealed filing containing Defendants' misrepresentations of law and distortions of cited precedent.

On May 15, 2023, after Defendants filed their Motion to Strike, Plaintiff filed a response to her counsels' motion to withdraw. Plaintiff explained that "[b]ecause of pending issues in this

7

litigation raised by Defendants that have not yet been resolved, Plaintiff currently lacks information that is needed to provide an informed response to Counsels' motion."  ECF No. 215.  Thus, "[g]iven the severe prejudice to Plaintiff that would result from Counsels' withdrawal, Plaintiff respectfully requests that Counsels' motion be held in abeyance to allow Plaintiff to evaluate the ongoing developments that may affect their motion and to provide a more informed position to the Court," with her remaining counsel "represent[ing] her" in the interim.  *Id.*  By "ongoing developments," Plaintiff was referring to Defendants' Motion to Strike, to which Plaintiff intended to respond under seal, as permitted by Rule 26(b)(5)(B), and demonstrate that their allegations were meritless.  Plaintiff "request[ed] the opportunity" to be heard on these issues and "provide a further update to the Court as soon as reasonably possible."  *Id.* at 2.  That same day, Defendants filed a response to the motion to withdraw stating that they take "no position."  ECF No. 214.

On May 22, 2023, having presumably reviewed Defendants' sealed filing containing false allegations, Plaintiff's legal team filed a reply in support of their motion to withdraw, stating that the motion is "ripe for consideration."  ECF No. 221.  The next day, in a text-only entry order, the Court granted the motion to withdraw on the basis that "[s]ufficient time ha[d] elapsed for the plaintiff to object to the motion to withdraw and only a request for delay ha[d] been received by the Court."  Entry Order Dated May 23, 2023.  The Court did not allow Plaintiff additional time to be heard on issues that affected her position on the motion to withdraw, as she had requested, or determine whether there was good cause for the withdrawal of Plaintiff's legal team so close to the trial date, given the severe prejudice to Plaintiff that would result from the withdrawal.  *See Wallace v. City of Hampton*, No. 2:15-cv-126, 2017 U.S. Dist. LEXIS 228032, at *14 (E.D. Va. July 20, 2017) ("When an attorney voluntarily moves to

withdraw, 'it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause.'" (citation omitted)). The Court also did not apply the requirement of the local rules that counsel show "good cause for the withdrawal," which cannot be satisfied by naming an "unspecified 'conflict'" or "irreconcilable differences." *See* WDNC Local Rule 83.1(f) ("Absent the client's consent, withdrawal may be obtained by filing a motion to withdraw, *showing good cause for the withdrawal*." (emphasis added)); *Champboat Series, LLC v. In2focus Films, Inc.*, No. 3:09-CV-183-RJC-DCK, 2009 U.S. Dist. LEXIS 143071, at *3 (W.D.N.C. Nov. 16, 2009) (an "unspecified 'conflict'" is insufficient to comply with local rule). This Court was obligated to make a finding of good cause before granting the motion to withdraw. *See* Fed. R. Civ. P. 83; *Jackson*, 828 F.2d at 1078 (stating that local rules "have the force and effect of law").

On May 30, 2023, Plaintiff filed her "Response to Defendants' Motion to Strike Privilege Assertion and Compel Deposition Testimony" ("Response"). ECF No. 226. Plaintiff's Response contained an extensive discussion of the legal errors that Defendants made in their Motion to Strike, including their misrepresentations of cited authority discussed above. *See id.* In addition to filing her Response, Plaintiff filed a Motion for a Protective Order from this ████████████████████████████████████████████ *Id.* at 23–25; *see* ECF No. 227.

Plaintiff explained ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

████████████████████████████████

Like Defendants, Plaintiff filed a redacted version of her Response on the public docket. *Id.* And like Defendants, Plaintiff moved, unopposed, to file the unredacted version of her Response under seal, which she was entitled to do under the controlling rule of civil procedure that governs privilege challenges. ECF No. 228; *see* Fed. R. Civ. P. 26(b)(5)(B). Plaintiff's counsel served the unredacted version of her Response on Defendants' counsel by email, contemporaneously with filing her redacted Response. *See* Ex. B.

Unlike Defendants, however, Plaintiff was not allowed to present her arguments under seal to the Court. On June 1, 2023, this Court denied Plaintiff leave to file her Response under seal. ECF No. 238. The Court did not explain its decision or distinguish Rule 26(b)(5)(B), which explicitly provided Plaintiff a right to file her Response under seal, and which Defendants benefited from when they were allowed to file their Motion to Strike under seal. As a result, the Court reviewed only Defendants' Motion to Strike raising unfounded allegations, and not Plaintiff's Response thoroughly rebutting those allegations, before ruling on Defendants' motion.

That same day, on June 1, 2023, the Court granted Defendants' Motion to Strike in part and denied it in part. ECF No. 233. Without reviewing any of Plaintiff's arguments, the Court rejected her privilege claims with the exception of one. ECF No. 233, at 2. The Court allowed Plaintiff's deposition to be "reopened for a period not to exceed two hours," which was twice as much time as the one-hour deposition that Defendants requested. *Id.*; ECF No. 208, at 3. The

10

Court stated that Defendants could ask "appropriate follow-up questions . . . as may be devoted to this particular topic" and serve "requests for production," which Defendants did not request. ECF No. 233, at 2; ECF No. 208, at 2–3. The Court summarily denied Plaintiff's Motion for a Protective Order, again, without reviewing any of her arguments. ECF No. 237.

### D. Defendants' Failure to Correct their Misrepresentations and Disclose Controlling Adverse Authorities Not Disclosed by Opposing Counsel

After the Court denied Plaintiff's motion to file her Response under seal and failed to consider the authorities she cited, Defendants were on clear notice of an ethical duty to correct the misrepresentations they made in their Motion to Strike. *See* N.C. R. Prof. Cond. 3.3(a)(1) (stating that "[a] lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"). Defendants failed to comply with this ethical duty and instead have continued to pursue Plaintiff's deposition. *See, e.g.*, ECF No. 265.

Even as Defendants have continued to press this issue with Plaintiff, they did not attempt to raise it as an affirmative defense in their Answer or the parties' joint pretrial statement. *See* ECF No. 259, at 99 (stating that there are no "requested amendments to the pleadings"). Defendants have therefore not made any substantive attempt to justify the arguments they raised in their Motion to Strike and, to the contrary, have waived any affirmative defenses. *See id.*

### LEGAL STANDARD

Several judicial norms prohibit Defendants' conduct. First, a court has inherent authority to sanction "matters involving deceit that, when not disclosed, undermine the integrity of the process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 459 (4th Cir. 1993). While Rule 11 does not directly apply to a discovery motion, *see* Fed. R. Civ. P. 11(d), that rule provides guidance as to how this Court should evaluate Defendants' misrepresentations, misleading of the Court and opposing counsel, and pursuit of frivolous legal contentions. *See Precision Specialty*

11

*Metals, Inc. v. United States*, 315 F.3d 1346, 1357 (Fed. Cir. 2003) (in case involving misrepresentations of law, stating that "[w]ithout regard to whether [the attorney's] misconduct violated Rule 11, the sanction imposed upon her would have been sustainable under the inherent power of the court"). "Although 'the central purpose of Rule 11 is to deter baseless filings in district court,' the scope of the rule is not that limited," as "it provides that by presenting legal documents to the court, an attorney is certifying her belief, formed after reasonable inquiry, that the 'claims, defenses and other legal contentions therein are warranted by existing law or a non-frivolous argument' to change the law." *Id.* at 1355 (citation omitted). Thus, when an attorney, "either willfully or through an unacceptable level of negligence," uses "selective quotations and direct misquotation" to "conceal" adverse authority "from the court and opposing counsel," she violates her "fundamental duty to be candid and scrupulously accurate." *Id.* (citation omitted).

Second, Defendants' conduct involves abuse of the discovery process and other litigation misconduct. Quite simply, Defendants' counsel threatened Plaintiff with false and misleading allegations during her deposition, then obtained an order to reopen her deposition based on falsehoods. *See Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519 (4th Cir. 2018) ("'[A] lawyer shall not knowingly . . . make a false statement . . . or fail to correct a false statement' of material fact to the tribunal." (quoting N.C. R. Prof. Cond. 3.3)). And rather than correcting their misrepresentations even when they were on clear notice of a duty to do so, Defendants chose to exploit the unfair advantages they gained through their misconduct. *See id.* at 520 (sanctions where party "intentionally misled" the court "to gain a tactical advantage" (citation omitted)). Courts have broad authority to sanction this type of misconduct, which undermines the fundamental fairness and integrity of the judicial process. *See id.* at 511 (sanctions for "affirmative misrepresentation" and "failures to correct known misrepresentations"); *Shaffer*

12

*Equip. Co.*, 11 F.3d at 461 (sanctions for failing to correct misrepresentations made by DOJ

witness); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (witness

tampering in deposition resulting in dismissal of claims).

Third, "[a] motion to disqualify counsel is the proper method for a party to bring an

alleged breach of ethical duties to the court's attention." *Kitchen v. Aristech Chem.*, 769 F. Supp.

254, 256 (S.D. Ohio 1991). In deciding a motion to disqualify, "the trial court is not to weigh the

circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power

over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is

to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273

n.3 (4th Cir. 1977). "In considering violations of ethical rules of conduct, courts must consider

the overarching question of whether a violation of such rules 'will undermine, or seriously

threaten to undermine, the integrity of judicial proceedings.'" *M.O. v. Fairfax Cty. Sch. Bd.*,

Civil Action No. 1:21-cv-00769 (RDA/JFA), 2022 U.S. Dist. LEXIS 15625, at *6 (E.D. Va. Jan.

27, 2022) (citation omitted). Permitting attorneys who have engaged in misconduct to continue

representation "would suggest a modicum of tolerance for [this] conduct where there is none."

*Barksdale Sch. Portraits, LLC v. Williams*, 339 F.R.D. 341, 346 (D. Mass. 2021).

## ARGUMENT

### I.  Defendants Violated Ethical Standards by Making Allegations Recklessly and Without Foundation.

When a party or her counsel makes allegations against an opposing party, "they darn well

better be in a position to demonstrate it." *Perkins v. Silver Mt. Sports Club & Spa, Ltd. Liab.*

*Co.*, 557 F.3d 1141, 1148 (10th Cir. 2009) (citation omitted). If the party doesn't "have a

modicum of evidence" or "a sufficient basis, then you better take a hard look at Rule 11." *Id.*

(citation omitted). Moreover, counsel is ethically prohibited from raising "charges of

13

wrongdoing made recklessly or knowing them to be without foundation." Restatement § 106; N.C. R. Prof. Cond. 3.5 cmt. 10 ("[G]roundless personal accusations made in documents filed with the tribunal are also prohibited by this Rule."). Such conduct "breeds disrespect for the courts," and prejudices "the administration of justice." N.C. R. Prof. Cond. 3.5 cmt. 10 (citation omitted). By making unfounded allegations against Plaintiff, by misrepresenting legal authority and misleading the Court and opposing counsel, and by failing to correct their misrepresentations and disclose controlling adverse authority even when they were on notice of an ethical duty, Defendants and their counsel violated ethical norms designed to safeguard the integrity of the judicial process. *See Six*, 891 F.3d at 511 (upholding sanctions for conduct that "evince[s] lack of candor to the court and disrespect for the judicial process").

### A.      Failure to Conduct Reasonable Inquiry

In their Motion to Strike, Defendants raised multiple frivolous arguments, including allegations that should have been dispelled with basic legal research. After all, attorneys have "an obligation under Rule of Professional Conduct 1.1 to provide 'competent representation,' which includes an ability to research the law." *Massey v. Prince George's Cty.,* 918 F. Supp. 905, 908 (D. Md. 1996). "Similarly, Rule 1.3 requires that 'a lawyer shall act with reasonable diligence and promptness in representing a client,' which includes pursuing applicable legal authority in timely fashion." *Id.* While "a mere failure to cite contrary authority, without regard to the facts of the particular case, is not necessarily enough to show a violation of Rule 11," *Precision Specialty Metals*, 315 F.3d at 1357, an attorney's "ostrich-like tactic of pretending that potentially dispositive authority against [his] contention does not exist" is "precisely the type of behavior that would justify imposing Rule 11 sanctions," *Borowski v. DePUY, Inc.*, 850 F.2d 297, 304–05 (7th Cir. 1988); *cf. Massey*, 918 F. Supp. at 908 (criticizing government attorneys

14

Case 1:20-cv-00066-WGY   Document 270-1   Filed 09/27/23   Page 14 of 27

for their "bold and risky gambit" of assuming that adverse authority not cited in their brief "is distinguishable and therefore unnecessary to call to the Court's attention").

Here, Defendants baselessly implied that Plaintiff's alleged conduct was ████████████, even though ███████████████████████████████████████████████████████████████████████████████████████████████████████████████ Defendants also failed to disclose that ████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████ Similarly, Defendants' baseless assertion that Plaintiff's alleged conduct was ███████████████████████████████████████████ ████ *See supra*, at 5–6; *Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp. 3d 392, 403 n.5 (D. Md. 2016) (under Rule 3.3's duty of candor, "failure to disclose that a legal authority cited has been overruled could have significant professional ramifications for an offending attorney"). It is objectively unreasonable for an attorney, in a signed motion filed with the Court, to make assertions ████████████████████████████████████████████ ███████████████████████████. It is particularly unreasonable when those assertions involve sensational allegations against an opposing party. And that is especially so when opposing counsel warned Defendants' counsel that their allegations were baseless, but Defendants pursued them anyway. *See supra* at 2–3.

## B. Misrepresenting Legal Authority and Misleading the Court and Opposing Counsel

An attorney has a duty to avoid misleading the Court by misciting authority, including "distorting cited authority by omitting language from quotations"; "misrepresenting facts or law

to the court"; and "failing to reference or discuss controlling precedents," all of which make the pleading "frivolous as argued." *Precision Specialty Metals*, 315 F.3d at 1356 (citation omitted). While a party may "distinguish[]" adverse authority "as she s[ee]s fit" or "urge[] the Court" not to follow it, she cannot, consistent with her obligations as an officer of the court, "simply ignore" adverse authority "by deleting it from the material she quoted." *Id.* Similarly, an attorney has a duty of fairness to opposing parties and counsel. *See* N.C. R. Prof. Cond. 3.4(d)(1), (3). As part of this duty, the lawyer "shall not . . . make a frivolous discovery request," or "fail to disclose evidence or information that the lawyer knew, or reasonably should have known, was subject to disclosure under applicable law, rules of procedure or evidence, or court opinions." *Id.*

Defendants' conduct contains troubling indications that the misrepresentations of law that they made in their Motion to Strike may have been intentionally misleading. As discussed above, Defendants miscited precedent by misattributing a quotation in a citing parenthetical that came from an entirely different federal court decision. *Supra*, at 6–7. A later decision in which the cited quotation actually appears specifically discusses adverse controlling authority ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ that Defendants failed to disclose in their Motion to Strike. *Id.* These circumstances raise a reasonable question whether Defendants intentionally altered the quotation they cited to conceal adverse authority from the Court and opposing counsel.

*Precision Specialty Metals* is instructive on how courts should analyze this type of quotation altering. In that decision, the Federal Circuit upheld a court's reprimand of a Department of Justice attorney for her "concealment and miscitation of relevant precedent and cropping of quotations to alter their meaning." *Precision Specialty Metals*, 315 F.3d at 1356. Specifically, the attorney had misrepresented cited authority to make it appear that her filing of a summary judgment response twelve days late was in compliance with the court's order requiring

16

filing of the document "forthwith." *Id.* at 1348. In cropping quotations and concealing adverse authority, the attorney's filing created the misimpression that the term "forthwith" means "within a reasonable time under the circumstances of the case," even though the Supreme Court has held that "forthwith" is "usually construed, and sometimes defined by rule of court, as within twenty-four hours." *Id.* at 1355 (citations omitted). As the Federal Circuit explained, "[t]he effect of [the attorney's] editing of this material and ignoring the Supreme Court decision that dealt with the issue—a decision that seriously weakened her argument—was to give the Court of International Trade a misleading impression of the state of the law on the point." *Id.* "This distortion of the law was inconsistent with and violated the standards of Rule 11." *Id.* at 1356.

Defendants' cropping of quotations and distortion of the law in their Motion to Strike is strikingly similar to the misrepresentations made in *Precision Specialty Metals*, but it is also far more egregious. In *Precision Specialty Metals*, the attorney's misrepresentations were made for the purpose of attempting to obtain a post-hoc extension of time. Here, by contrast, Defendants' misrepresentations were made with the purpose and effect of branding Plaintiff with false allegations, in violation of their ethical duties. *See* Restatement § 106; N.C. R. Prof. Cond. 3.5, cmt. 10. Moreover, in *Precision Specialty Metals*, the attorney's misrepresentations were detected by the presiding judge and were unsuccessful in influencing the case. *See Precision Specialty Metals*, 315 F.3d at 1349. By contrast, Defendants were largely successful in obtaining the relief they sought—the reopening of Plaintiff's deposition—and even obtained *more* relief than their motion requested. *Supra*, at 10–11.

### C. Failure to Disclose Adverse Controlling Authority Not Disclosed by Opposing Counsel

Under N.C. R. Prof. Cond. 3.3(a)(2), a lawyer shall not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse

17

to the position of the client and not disclosed by opposing counsel." Moreover, "[t]he disclosure duty covers not only court decisions, but also statutes and regulations adverse to a client's position." 2018 N.C. Formal Ethics Op. 2. "The lawyer's knowledge of the adverse authority may be inferred from the circumstances." *Id.* (citing N.C. R. Prof. Cond. 1.0(g)).

Here, the circumstances leading to the Court's partial grant of Defendants' Motion to Strike and denial of Plaintiff's Motion for a Protective Order fall squarely within Rule 3.3(a)(2). After Plaintiff served her unredacted Response on Defendants, which contained the adverse controlling authorities that they failed to disclose in their Motion to Strike, Defendants plainly had actual knowledge of those adverse authorities. *See* Ex. A. Plaintiff was not provided any opportunity to present those adverse authorities for the Court's consideration, however, because the Court denied her unopposed motion to file her unredacted Response under seal before ruling adversely to her interests. *See* ECF No. 238. Regardless of whether the Court erred in doing so, it is undeniable that at this point, the adverse controlling authorities contained in Plaintiff's unredacted Response were "not disclosed by opposing counsel." N.C. R. Prof. Cond. 3.3(a)(2). Thus, Defendants had a duty to disclose these known controlling adverse authorities to the Court.

Defendants cannot reasonably contend that these adverse authorities were not required to be disclosed. "An attorney should advise the court of decisions adverse to his case which opposing counsel has not raised if the decision is one which the court should clearly consider in deciding the case, if the judge might consider himself misled by the attorney's silence, or if a reasonable judge would consider an attorney who advanced a proposition contrary to the undisclosed opinion lacking in candor and fairness to him." ABA Formal Opinion 280 (1949); 2018 N.C. Formal Ethics Op. 2 ("[A] lawyer must not allow the tribunal to be misled by false statements of law and 'must recognize the existence of pertinent legal authorities.'" (citation

omitted)). Here, the authorities that Defendants failed to disclose make clear that their allegations are baseless. It was objectively unreasonable not to disclose these authorities because they were ones which the court should clearly consider, and Defendants' continued silence was both misleading and lacking in candor and fairness.

**D.    Failure to Correct False Statements of Law Previously Made to Tribunal**

The duty of candor to the Court prohibits an attorney not only from "mak[ing] a false statement of material fact or law to a tribunal," but also from "fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer." N.C. R. Prof. Cond. 3.3(a)(1). Therefore, even if Defendants contend that the initial misrepresentations that they made in their Motion to Strike were not intentional, they still violated the duty of candor.

The Fourth Circuit has held that, when Department of Justice attorneys were aware of misrepresentations made by their own witness and obstructed the opposing party's attempts to uncover and failed themselves to reveal it, the attorneys "overstepped the bounds of zealous advocacy, exposing themselves and their employer to sanctions." *Shaffer Equip. Co.*, 11 F.3d at 461 (citing Rule 3.3). The same principle applies here. Defendants failed to correct the misrepresentations of law that they made in their Motion to Strike even after they were plainly on notice that the Court was unaware of those misrepresentations, having denied Plaintiff leave to file her Response under seal. *See* ECF No. 238. Instead of correcting those misrepresentations, Defendants chose to unfairly benefit from the Court's ruling. *See, e.g.*, ECF No. 245, at 13 n. 4 (reasserting argument that "Plaintiff is ineligible for reinstatement and front pay" because of alleged conduct referenced in Motion to Strike). Defendants' failure to correct their prior misrepresentations violated Rule 3.3's duty of candor, was objectively unreasonable, and severely prejudiced Plaintiff.

## II.    Sanctions for Defendants' Conduct are Warranted.

A court has broad authority to order appropriate sanctions for misrepresentations in filings, ranging from a reprimand to default judgment against the offending party. *See, e.g.*, *Precision Specialty Metals*, 315 F.3d at 1355 (reprimand of DOJ attorney); *King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018) ("dismissal with prejudice is an essential tool in the sanction toolbox" for willful misconduct). Similarly, the Court has broad discretion to order sanctions for discovery abuses and other abuses of the judicial process. *Six*, 891 F.3d at 519 ("[C]ourts are empowered 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" (citation omitted)); *Shaffer Equip. Co.*, 11 F.3d at 462 ("[W]hen a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action."). In determining what sanctions to impose, the court should consider factors including "the degree of the wrongdoer's culpability," "the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney," "the prejudice to the judicial process and the administration of justice," "the prejudice to the victim," "the availability of other sanctions," the need for "deter[rence]," and "the public interest." *Shaffer Equip. Co.*, 11 F.3d at 462–63.

Here, the most significant factor this Court should consider is that Defendants' actions have resulted in severe and irreparable prejudice to Plaintiff and, by the same token, unjustly benefited them. Courts have recognized that unfounded allegations aimed at an opposing party or her counsel results in prejudice to the administration of justice. *See, e.g.*, *N.C. State Bar v. Springs*, 273 N.C. App. 407 (2020) (unpub.) (upholding discipline against attorney who, "with no legitimate evidence," "publicly humiliat[ed] and accus[ed] a former legal adversary of a crime"). It is obvious to any reasonable person that raising unfounded allegations against an

20

opposing party could affect the party's rights, including by interfering with the party's relationship with counsel and undermining her ability to present a case. Such conduct "tends to impede opposing counsel's ability to represent his or her client effectively," and may "directly interfere with the truth-finding function." N.C. R. Prof. Cond. 8.4, cmt. 5 (citation omitted).

In this case, the withdrawal of Plaintiff's legal team only four days after Defendants raised these allegations has severely prejudiced Plaintiff, leaving only Plaintiff and her spouse, neither of whom have ever tried a case, to represent her. *See* ECF No. 262, at 15 ("I just want to state the obvious, which is that my, . . . essentially entire legal team that we were relying on to try this case withdrew on the eve of trial and Cooper and I have never done a trial, jury-waived or otherwise."). Counsels' withdrawal also had a direct financial impact: Plaintiff lost the remainder of a litigation grant her lead counsel had obtained and no longer has funds for costly expert witness testimony. *See* Ex. C.; ECF No. 215, at 1–2 (discussing use of litigation grant for expert witness). Further, the withdrawal has prejudiced Plaintiff by "distracting" the court and parties from "the serious business at hand" implicated by the merits of her constitutional claims. N.C. R. Prof. Cond. 8.4, cmt. 5 (citation omitted). Quite simply, Plaintiff's case may wrongly be assumed to be less meritorious, regardless of the strength of the evidence favoring her claims, because of the unfounded allegations and subsequent withdrawal of her legal team.

Additionally, Defendants' unfounded allegations have severely intimidated Plaintiff from testifying or exercising her rights in this litigation. *See* ECF No. 219-2, at 1, ECF No. 226, at 13, 19–20, 23–25; *see also* ECF No. 233, at 2. The fact that Plaintiff's entire legal team moved to withdraw *only four days* after Defendants' counsel raised these allegations shows that it is reasonable for Plaintiff to feel severely intimidated by their conduct.

This Court should further consider that Defendants' conduct involves a pattern of recklessly making unfounded allegations in their filings. *See Six*, 891 F.3d at 521 ("continuing misrepresentations and exaggerations of the record" supported sanctions). After the discovery period closed, and without giving Plaintiff notice in their pleadings or discovery as required by the Federal Rules of Civil Procedure, Defendants baselessly alleged that Plaintiff "disregard[ed] the sanctity of the attorney-client relationship" by engaging in protected activity during the EDR proceeding and in this lawsuit. ECF No. 245, at 13. Defendants claimed that Plaintiff "likely" violated the Federal Records Act, *see* ECF No. 245, at 12, which does not even apply, *see* Guide to Judiciary Policy, Ch. 6, Vol. 10, Appx. 6C, *available at* https://tinyurl.com/2abj6r9e (case files are not "federal records" and are treated the same regardless of "[c]ourt-appointed or public defender status"). Defendants also baselessly implied that Plaintiff violated the "Privacy Act," *see* ECF No. 245, at 12 n.3, which does not apply to the judicial branch, *see* DOJ, Overview of the Privacy Act: 2020 Edition, *available at* https://tinyurl.com/3r6rdvfb ("Federal entities outside of the executive branch are not subject to the Act.").

In making these baseless allegations, Defendants also failed to disclose controlling adverse authority from the judiciary that prevents office confidentiality policies from being misused to retaliate against employees who engage in protected activity. *See* Federal Public Defender – Western District of NC Employment Dispute Resolution Plan, § V(B)(1) ("Confidentiality obligations . . . concerning use or disclosure of confidential information received in the course of official duties, including attorney-client and work-product privileged information, do not prevent nor should they discourage Employees from reporting or disclosing wrongful conduct."); Report of the Federal Judiciary Workplace Conduct Working Group 25 (2018) (explaining that policies were enacted to "clarify" "that confidentiality obligations should

never prevent any employee . . . from revealing abuse or reporting misconduct by any person"). Further, Defendants failed to disclose that unlike Plaintiff, who took painstaking care to protect client information, the First Assistant accused of sexual harassment provided a flash drive containing *thousands* of pages of unredacted, privileged FDO client information to the EDR Investigator. Ex. D. Defendants' discovery shows that he did so knowingly. Defendants themselves have acknowledged that this information is "privileged" and not "relevant" to the claims in this proceeding. *Id.* Compounding this disclosure, Defendants disclosed this unredacted, privileged FDO client information to the Department of Justice—the authority responsible for prosecuting the FDO's clients—during this litigation. *Id.*

A reasonable fact finder would find the above information to be material in assessing Defendants' allegation that Plaintiff "disregard[ed] the sanctity of the attorney-client relationship." ECF No. 245, at 13. Defendants' failure to disclose this information to the Court renders their allegations misleading and lacking in candor and fairness. Further, Defendants' failure to raise this issue in their pleadings or during discovery, in violation of procedural rules designed to ensure fair notice, raises concerns that they engaged in "cynical gamesmanship and deliberate obfuscation" to sandbag Plaintiff and prevent her from meaningfully responding to their allegations. *Six*, 891 F.3d at 521 (citation omitted). This conduct evinces a pattern of reckless allegations, unfair and misleading representations, and disregard for the integrity of the judicial process. This Court should not allow any "modicum of tolerance" for this conduct. *Barksdale Sch. Portraits*, 339 F.R.D. at 346.

Finally, this Court should consider that this case represents the first time a federal court has allowed allegations of discriminatory and unfair procedures for resolving workplace discrimination to proceed against federal judiciary officials. *Strickland v. United States*, 32 F.4th

311, 321 (4th Cir. 2022). Given the public importance of this case, the public interest requires a proceeding that is fundamentally fair and that does not repeat the same, or even more egregious, deprivations of due process that gave rise to the suit in the first place. Defendants' conduct has prejudiced the administration of justice by undermining public confidence in this proceeding.

Given the severity of Defendants' conduct, which has functionally derailed this entire proceeding, default judgment would be justified. *See Shaffer Equip. Co.*, 11 F.3d at 462 ("[T]he inherent power to dismiss a case for the misconduct of counsel is undoubtedly clear."). Alternatively, this Court may consider appropriate evidentiary sanctions, including precluding Defendants from receiving "the benefit of any portion of the record . . . which may have been tainted by [the] misconduct." *Id.* at 463. Additionally, Defendants should be ordered to compensate Plaintiff for expenses resulting from the loss of litigation funding. *See* Fed. R. Civ. P. 11(c)(4) (allowing order of expenses "directly resulting from the violation").

## III.    At a Minimum, Defendants' Counsel Must be Disqualified.

"A Department attorney who is found to have engaged in professional misconduct in a particular case *shall not* continue to represent the United States in that case . . . ." DOJ Manual § 1-4.330 (emphasis added). This policy is bolstered by precedent requiring disqualification of counsel where necessary to safeguard the integrity of court proceedings. *See Clarkson*, 567 F.2d at 273 n.3. Here, Defendants' counsel violated the ethical rule that "[i]n representing a client in a matter before a tribunal, a lawyer may not use means that have no substantial purpose other than to embarrass, delay, or burden a third person," specifically by raising "charges of wrongdoing made recklessly or knowing them to be without foundation." Restatement § 106. Disqualification is a remedy proportionate to the severe prejudice caused by this conduct.

Disqualification is also necessary to avoid an appearance of impropriety. The Judicial Conference has recognized that "[n]o request for representation of a federal public defender . . . shall normally be submitted to the Department of Justice, in view of the Department's prosecutorial role and its consequent apparent disqualification to represent a public defender against whom it prosecutes criminal cases." *See* Hearing on Federal Judicial Branch, Subcomm. on Courts, Civil Liberties, and Administration of Justice, House Jud. Comm. 758 (Apr. 25, 1985), *available at* https://tinyurl.com/4y2r3r5v. Here, DOJ's representation is intertwined with FDO client matters, which is confirmed by DOJ's receipt of thousands of pages of privileged FDO client information. This raises concerns about client confidentiality and loyalty. *See* N.C. R. Prof. Cond. 1.6(c), 1.7 cmt. 1. It also implicates Canon 1 of the Codes of Conduct, which requires federal defenders to uphold "the integrity and independence of the office . . . so that the defender office reflects a devotion to serving the public defender's clients." Indeed, even after Defendants baselessly accused Plaintiff of disregarding the attorney-client relationship, they continued to gratuitously disclose FDO client personal information in their pretrial filings. *See, e.g.*, ECF No. 259, at 79, 86 (naming FDO client in public filing); *cf.* FDO EDR Plan § V(C)(3)(e) (requiring redaction of "clients' personal identification information"). This conduct casts an "appearance of impropriety" on this proceeding and requires that "all doubts" be resolved "in favor of disqualification." *Clarkson*, 567 F.2d at 273 n.3.

## CONCLUSION

Given the public importance of this case, the public interest demands appropriate sanctions for the conduct of Defendants and their counsel.

This the 27th day of September, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com
