## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | |
|---|---|
| CARYN DEVINS STRICKLAND, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | **Civil No. 1:20-cv-00066-WGY** |
| ) | |
| UNITED STATES, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

### PLANTIFF'S MOTION IN LIMINE TO PRECLUDE ANY AFTER-ACQUIRED EVIDENCE DEFENSE

Plaintiff Caryn Devins Strickland, by and through undersigned counsel, respectfully moves to preclude Defendants from presenting any after-acquired evidence defense at trial. By failing to plead after-acquired evidence as an affirmative defense or disclose information related to the defense in discovery, Defendants have waived any right to rely on this defense. Even if the Court were to consider any such defense, it is meritless. The record reveals that Plaintiff complied with relevant judiciary policies and ethical obligations, and Defendants' assertions otherwise rely on their failure to disclose adverse controlling authorities to this Court, as well as material facts that undermine the basis for their assertions. Prior to filing this motion, Plaintiff requested Defendants' position. Defendants oppose this motion.

### BACKGROUND

**A.    Defendants Fail to Assert Any Affirmative Defenses in their Answer or During Discovery**

Following remand from the Fourth Circuit, *see Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022), Defendants filed their Answer on July 29, 2022, ECF No. 127. Plaintiff moved to strike all affirmative defenses in Defendants' Answer because they were improperly pleaded

1

or otherwise meritless. ECF No. 133. On September 21, 2022, the Court granted Plaintiff's Motion to Strike in its entirety. Entry Order Dated September 21, 2022.

On November 22, 2022, Defendants moved for leave to file an amended answer asserting an affirmative defense of "failure to mitigate." ECF No. 166. On March 23, 2023, this Court denied the motion without prejudice and instructed them to file a renewed motion to amend within 14 days accompanied by the actual amended answer sought to be filed. ECF No. 192.

On April 6, 2023, Defendants moved to amend their answer to assert an affirmative defense of failure to mitigate. ECF No. 196. Additionally, Defendants' motion to amend referenced Plaintiff's "audio recordings she made without the knowledge of others who participated in the various conversations alleged in the Complaint" as a basis to amend their Answer. *Id.* at 3. As context, Defendants previously denied many of the Complaint's allegations in their Answer, and were forced to withdraw their denials because the recordings plainly revealed them to be false and rendered them untenable. *See* ECF No. 196-2 (red-line Answer). Defendants' motion to amend did not seek to assert any other affirmative defenses. *See id.*

**B.      Plaintiff Timely Discloses Discovery Demonstrating Compliance with Judiciary Policy and Ethical Obligations**

By the time Defendants filed their Motion to Amend on April 6, 2023, Plaintiff's document production had been completed more than a month earlier. As part of her document production, Plaintiff provided all recordings, with client information redacted, in discovery on January 20 and March 2, 2023. *See* ECF No. 250, Ex. AA. Similarly, Plaintiff provided all relevant documents, including emails, with client information redacted. In addition to providing the materials in discovery, Plaintiff had previously disclosed their existence months, if not years, earlier in her initial disclosures, *see* ECF No. 57-1, at 9, and discovery responses and public

2

filings, *see* ECF No. 170, at 24–25 (recordings disclosed on December 7, 2022), and ECF No. 250, Ex. Y (letter dated January 27, 2023 referencing emails disclosed months earlier).

Plaintiff's use of FDO materials was comparable to the case-related materials that FDO officials provided to the EDR Investigator and used in this litigation. *See, e.g.*, ECF No. 248, Ex. D, at 34–40, 47–56; ECF No. 78-2, at 20–26. Her use of these materials was protected by judiciary policy, which states that the "general restriction on use or disclosure of confidential information does not prevent, nor should it discourage, an employee or ***former employee*** from reporting or disclosing misconduct, including sexual or other forms of harassment." Code of Conduct for Federal Defender Employees Canon 3(D)(3) (emphasis added). The FDO's EDR Plan is even more specific, as it states the following:

> Confidentiality obligations in the Code of Conduct for Federal Public Defender Employees concerning use or disclosure of confidential information received in the course of official duties, ***including attorney-client and work-product privileged information,*** do not prevent nor should they discourage Employees from reporting or disclosing wrongful conduct, including sexual, racial, or other forms of discriminatory harassment by the FPD, a Judge, a supervisor, or other person.

Federal Public Defender – Western District of NC Employment Dispute Resolution Plan, § V(B)(1) (Ex. V) (emphasis added) ("FDO EDR Plan"). These protections apply to former employees, like Plaintiff, in addition to current employees. Code of Conduct Canon 3(D)(3); FDO EDR Plan § II; App'x 1 (defining "employee"). These protections are also contained in the Model FDO EDR Plan, which confirms that they reflect national judiciary policy. *See* Model FDO Employment Dispute Resolution Plan, *available at* http://tinyurl.com/4yp7xw2a.

Plaintiff's EDR proceeding and subsequent lawsuit are encompassed within the reporting of "wrongful conduct." The Fourth Circuit concluded that Plaintiff "is alleging that she was subjected to sexual harassment in the workplace and that she was constructively discharged," and

that "the substance of Plaintiff's claims focuses on defendants' actions . . . in executing the EDR Plan in response to her allegations in response to her allegations of workplace sexual harassment." *Strickland*, 32 F.4th at 376. The Fourth Circuit allowed Plaintiff to proceed on her allegations "that defendants' actions knowingly deprived her of meaningful review of her claims of sexual harassment and that these actions ultimately led to her constructive discharge." *Id.*

Moreover, the FDO's EDR Plan specifically contemplates an employee's use of confidential information and requires the employee to "redact privileged information and clients' personal information," as Plaintiff did. FDO EDR Plan §§ IV(C)(2)(d), § IV(C)(3)(e); *see also id.* § V(B), (E). The EDR Plan recognizes that an EDR proceeding may "necessarily contain[] or refer[] to attorney-client or work-product privileged information inherently involved in the Complaint, hearing, or resolution process." *Id.* § V(E). As Plaintiff was an attorney with the FDO at the time of the allegations, her EDR proceeding "necessarily contains or refers to attorney-client or work-product privileged information." *Id.* Indeed, it would be impossible to avoid because FDO officials' defense to the allegations, during the EDR proceeding and this litigation, has been to criticize Plaintiff's experience level and performance; the First Assistant even submitted Plaintiff's hourly work logs and created a calendar to document every working hour, which is included in Defendants' trial exhibits. *See, e.g.*, ECF Nos. 78, 134, 245.

Additionally, Defendants were aware of Plaintiff's use of recordings and relied on them in her EDR proceeding. Plaintiff told the EDR Investigator that she was recording and provided a recording of Defender Martinez as evidence for use in the investigation. The discriminatory and retaliatory statements Defender Martinez made in the recording were the basis, in part, of disciplinary action later taken against him. *See* ECF No. 250, at 9. Plaintiff also informed the FDO and the Fourth Circuit in her narrative supplement to her mediation request that she had

4

"tape-recorded the conversation" with Mr. Martinez because she "no longer trusted" him.  *Id.*

The FDO Employee Handbook contains no policy prohibiting audio recordings, which are legal

under state and federal law, *see* N.C. Gen. Stat. § 15A-287(a)(3), and ethical under the Rules of

Professional Conduct, *see* ABA Formal Op. 01-422 (2001), *available at* tinyurl.com/5n87bh73;

*cf.* N.C. RPC 171 (1994), *available at* tinyurl.com/24s6v4xd.  At no point during Plaintiff's EDR

process did anyone inform her that she had violated any office rule by taking recordings.  Nor

did the recordings disqualify Plaintiff from placement in a subsequent Fourth Circuit judicial

clerkship.  Like the documents, Plaintiff properly redacted the recordings to protect client

information.  *See* ECF No. 245-25, Ex. A (Plaintiff's privilege log).

### C.  Defendants Reveal in Discovery that the First Assistant Disclosed Over 2,000 Pages of Unredacted, Privileged FDO Client Information to the EDR Investigator, which Defendants then Disclosed to DOJ During this Litigation.

Defendants' disclosures during discovery reveal that unlike Plaintiff, Defendants did not

take steps to redact privileged client information.  On January 27, 2023, Defendants' counsel

sent Plaintiff's counsel a letter stating the following:

> During Defendants' document review, we identified a single PDF
> document that appears to contain all emails from the Federal
> Defender's Office between Mr. Davis and Ms. Strickland dated on
> or before July 26, 2018.  It is our understanding that this document
> was among the materials that Mr. Davis provided to Heather Beam
> in connection with her investigation into Ms. Strickland's
> Employment Dispute Resolution claims.  ***The document is 2,172
> pages long and contains numerous case-related emails, and
> therefore would require extensive redactions of such information
> before it could be produced in this litigation.***  . . .  Defendants
> therefore object to production of the document containing the case-
> related information on privilege, burden, and relevance grounds.

Ex. A (emphasis added).  In short, Defendants revealed that the First Assistant provided more

than *2,000 pages* containing unredacted, privileged client information to EDR Investigator

Heather Beam.  *Id.*  Defendants' discovery shows that he did so knowingly, as he told the

Investigator "**CAUTION: INCLUDES NUMEROUS CASE RELATED EMAILS**" when he disclosed this privileged information.  Ex. B.  Ms. Beam, who was appointed by Defender Martinez to conduct the EDR investigation, works for the Probation Department, which oversees FDO clients on pretrial and supervised release, and the District Court, which hears FDO clients' cases.  ECF No. 250, at 7.  Compounding this disclosure, Defendants disclosed this 2,000-page document containing privileged FDO client information to the Department of Justice—the authority responsible for prosecuting the FDO's clients—during this litigation.  *See* Ex. A.

Neither the First Assistant nor the FDO, as the respondent employing office, redacted this privileged client information before disclosing it.  Defendants themselves stated that the emails are "privileged" and not "relevant" to the claims in this proceeding and would require "extensive redactions" before being disclosed.  *Id.*  Defendants' failure to redact privileged client information is inconsistent with the EDR Plan's recognition that "[a]ll individuals involved in the processes under this Plan must protect attorney-client and work-product privileged communications."  FDO EDR Plan, § V(B)(2).

### D. While Arguing that Plaintiff's "Conduct" is a Bar is to Front Pay, Defendants Fail to Raise an After-Acquired Evidence Defense.

On April 25, 2023, the Court denied as "untimely" Defendants' assertion of a defense of failure to mitigate.  ECF No. 206.  The Court allowed Defendants' motion to amend their Answer only "to permit the amendment of so much of the answer as now contains admissions or qualified admissions."  *Id.*  Following the Court's order, Defendants filed a First Amended Answer on May 5, 2023 containing no affirmative defenses.  ECF No. 210.  At no time did Defendants provide notice of any intent to raise an affirmative defense based on after-acquired evidence, even though they had been on notice of the relevant facts for months, if not years.  Defendants did not provide notice in their initial disclosures, as required by Fed. R. Civ. P. 26(a)

6

and (e), of any witnesses or information related to an after-acquired evidence defense.  *See* Ex.

C.  Defendants also did not disclose any intent to rely on after-acquired evidence in response to

Plaintiff's discovery requests, including an interrogatory specifically requesting that Defendants

"[s]tate the basis . . . for the assertion of any defenses, including any affirmative or factual basis,

that Defendants have raised or intend to raise in response to the complaint."  ECF No. 250, at 12.

The only defenses that Defendants asserted were "failure to mitigate" and "judicial immunity,"

which were rejected as untimely or otherwise meritless.  *See id.*  Plaintiff also served at least

*seven* discovery requests relating to alleged misconduct and ethical concerns regarding FDO

employees, but Defendants objected to her requests as "overbroad" and "not relevant."  *Id.*

On June 1, 2023, Defendants moved for summary judgment and asserted, for the first

time, that Plaintiff's "conduct" is a "bar to front pay."  ECF No. 245, at 12.  Defendants argued

that Plaintiff's use of recordings and FDO information was "arguably" misconduct that makes

her ineligible for reinstatement.  *Id.*  Defendants' sole support for this argument was a

declaration from Defender John Baker, who was not disclosed as a witness in Defendants' initial

disclosures or in response to Plaintiff's interrogatories requesting identification of "all

individuals whom Defendants intend to call as witnesses at trial" and "all persons with

knowledge or information relating to the allegations in the civil complaint, including any related

denials or defenses asserted in any answer to the civil complaint."  Ex. D.

On July 10, 2023, the Court heard the parties' cross-motions for summary judgment and

instructed them to prepare a joint pretrial filing before the final pretrial conference on July 27,

2023.  *See* Entry Order Dated July 25, 2023 ("A joint pretrial memorandum is due prior to the

final pretrial conference.").  On July 25, 2023, the parties submitted their joint pretrial filing,

which does not assert any affirmative defenses.  ECF No. 259, at 99.

## LEGAL STANDARD

An affirmative defense based on an employee's alleged misconduct is known as an "after-acquired evidence" defense. *Rinaldi v. CCX, Inc.*, No. 3:05-cv-108-RJC, 2009 U.S. Dist. LEXIS 16101, at *22 (W.D.N.C. Feb. 18, 2009). Like any affirmative defense, an after-acquired evidence defense may be waived if not properly pleaded by the defendant. *See, e.g., McLean Contracting Co. v. Waterman S.S. Corp.*, 277 F.3d 477, 480 (4th Cir. 2002) ("Failure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried."). And when the employer appears unable to meet its burden, courts will preclude the introduction of such evidence in all stages of trial. *See Perkins v. Silver Mt. Sports Club & Spa, Ltd. Liab. Co.*, 557 F.3d 1141, 1149 (10th Cir. 2009) (affirming exclusion of after-acquired evidence at trial when defendant failed to proffer sufficient showing of proof).

## ARGUMENT

### I.    Defendants Have Waived the After-Acquired Evidence Defense.

#### A.    Defendants have not raised an affirmative defense of after-acquired evidence.

Now that the Court has held the final pretrial conference, it is indisputable that Defendants cannot raise after-acquired evidence as an affirmative defense at trial because they did not assert it in their responsive pleadings. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party *must* affirmatively state any . . . affirmative defense . . . ." (emphasis added)). In fact, Defendants have not asserted *any* affirmative defenses. *See* Entry Order Dated September 21, 2022 (order striking Defendants' affirmative defenses); ECF No. 206 (order denying motion to assert affirmative defense of failure to mitigate losses); ECF No. 210 (Defendants' First Amended Answer with no affirmative defenses); ECF No. 259, at 99 (Parties' Joint Pretrial Statement) ("<u>Any requested amendments to the pleadings. None.</u>"). Defendants

8

have therefore waived an after-acquired evidence defense, which is confirmed by the parties' recent joint pretrial filing raising *no* affirmative defenses. *See* ECF No. 259, at 99 (stating that there are no "requested amendments to the pleadings").

Defendants were well-aware of this potential affirmative defense at the time of the final pretrial conference on July 27, 2023, as they had been on notice of all relevant facts for months, if not years, based on Plaintiff's disclosures in discovery. Because this issue was within Defendants' knowledge at the time of the final pretrial conference, Defendants cannot raise an affirmative defense based on this issue in a subsequent belated attempt to modify the pretrial order. *See McLean Contracting Co.*, 277 F.3d at 480 ("Failure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried."); *Koch v. Koch Indus.*, 203 F.3d 1202, 1217 (10th Cir. 2000) ("If the evidence or issue was within the knowledge of the party seeking modification [of the pretrial order] at the time of the [pretrial conference] . . . then it may not be allowed." (quoting 6A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1527, at 287–89 (1990)); *see also Youren v. Tintic Sch. Dist.*, 343 F.3d 1296 (10th Cir. 2003) (defense in answer waived when it was omitted from pretrial order); *Eagle v. AT&T Corp.*, 769 F.2d 541, 548 (9th Cir. 1985) (claims raised in pleadings but omitted from final order are precluded); *Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1116 (N.D. Cal. 2014) ("Because Samsung did not include these defenses in the joint pretrial statement, which the parties stated specified the 'issues of fact and law remaining to be litigated,' . . . Samsung abandoned those defenses and they were eliminated from the case.").

This Court stated during the final pretrial conference that "[t]he whole idea, the whole genius of the Rules of Civil Procedure is to narrow proceedings, not expand them, and having been given ample time and warning, we now know the parameters of how we're going to do this

9

work." ECF No. 262, at 26. As the Court explained, at this stage, the proceedings are supposed to be "narrow[ed]," not "expand[ed]," so that the parties will have "ample time and warning" about the issues to be tried. *Id.* Allowing Defendants to litigate at trial a potential affirmative defense that they did not raise in their Answer, First Amended Answer, or the parties' joint pretrial filing would contravene the Court's mandate and prejudice Plaintiff.

**B.** **Defendants were required to raise this issue as an affirmative defense.**

Defendants cannot plausibly contend that this issue is not an affirmative defense that must be raised in their pleadings. *See* Fed. R. Civ. P. 8(c). Defendants' stated basis for the defense is that Plaintiff's "conduct" is a "bar to front pay." ECF No. 245, at 12. This type of defense, involving ineligibility for reinstatement due to a plaintiff's alleged misconduct, is an after-acquired evidence defense. *See Rinaldi*, 2009 U.S. Dist. LEXIS 16101, at *22. As courts within this Circuit and across the country have held, this type of defense is an affirmative defense that the defendant must plead and prove by a preponderance of the evidence. *See McKennon*, 513 U.S. at 360–63 (holding that employer "must . . . establish" after-acquired evidence defense and analogizing to affirmative defense of "unclean hands"); *Russell*, 65 F.3d at 1238–40 (employer must "prove" and "meet[] th[e] burden" to show after-acquired evidence defense); *Nzabandora v. Univ. of Va. Health Sys.*, Civil Action No. 3:17cv00003, 2017 U.S. Dist. LEXIS 155217, at *4 (W.D. Va. Sep. 22, 2017) ("Defendants seek leave to amend to assert an affirmative defense based on after-acquired evidence of wrongdoing."); *Pennell v. Vacation Reservation Ctr.*, LLC, No. 4:11cv53, 2011 U.S. Dist. LEXIS 150763, at *2 (E.D. Va. Sep. 19, 2011) (addressing defendants' motion seeking the "addition of a new Affirmative Defense . . . asserting an after-acquired evidence defense"); *accord Bello v. United Pan Am Fin. Corp.*, No. 19-9118 (CPO/MJS), 2022 U.S. Dist. LEXIS 214449, at *18 (D.N.J. Nov. 29, 2022) ("'After-

10

acquired evidence' is an affirmative defense."); *Murphy v. Trader Joe's*, No. 16-cv-02222-SI, 2017 U.S. Dist. LEXIS 7754, at *8 (N.D. Cal. Jan. 19, 2017) ("[A]fter-acquired evidence, like failure to mitigate, is nonetheless considered an affirmative defense." (citing *Pulliam v. Tallapoosa Cnty. Jail*, 185 F.3d 1182, 1185 (11th Cir. 1999) ("[T]he doctrine of after-acquired evidence . . . is an affirmative defense that an employer must plead in its answer or otherwise ensure that it is a subject of the pretrial order.")); *EEOC v. BOK Fin. Corp.*, No. CIV 11-1132 RB/LAM, 2014 U.S. Dist. LEXIS 188612, at *5 (D.N.M. Jan. 30, 2014) (after-acquired evidence was "an affirmative defense" that was untimely and thus waived); *Miranda v. Deloitte LLP*, 962 F. Supp. 2d 379, 386 & n.5 (D.P.R. 2013) (addressing amended answer invoking "an 'after-acquired evidence' defense" as an "affirmative defense"); *Stubbs v. Regents of the Univ. of Cal.*, 2007 U.S. Dist. LEXIS 40506, at *21 (E.D. Cal. May 24, 2007) ("Even assuming, arguendo, that the alleged application fraud rose to such a level, after-acquired evidence is an affirmative defense that must be pled in the answer. Otherwise, it is waived. . . . Here, the defendant waived the defense by failing to pled [sic] it in its answer"); *Santos v. Boeing Co.*, No. 02 C 9310, 2004 U.S. Dist. LEXIS 17666, at *22 (N.D. Ill. Sep. 1, 2004) ("We need not address Boeing's arguments regarding the after-acquired evidence doctrine, because . . . the doctrine is an affirmative defense and Boeing failed to plead the defense in its answer to the second amended complaint."); *Red Deer v. Cherokee Cty.*, 183 F.R.D. 642, 653 (N.D. Iowa 1999) ("Treating the 'after-acquired evidence' defense as an affirmative one that must be pleaded and proved also is consonant with the purposes of Rule 8(c), because it is a defense for which the need for notice to avoid surprise and undue prejudice to the plaintiff is particularly apparent.").

　　　To prove an affirmative defense based on after-acquired evidence, it is not enough for an employer merely to allege that the plaintiff engaged in misconduct. Rather, the employer must

"prove that [the plaintiff's] ostensible 'wrongdoing was of such severity that [she] in fact would have been terminated on those grounds alone if [the employer] had known of' her alleged misdeeds, and that it was unaware of her conduct." *Russell*, 65 F.3d at 1240 (quoting, in part, *McKennon*, 513 U.S. at 362–63). "In evaluating an after-acquired [evidence] defense, a court 'must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals.'" *Pennell*, 2011 U.S. Dist. LEXIS 150763, at *7 (quoting *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 298 (4th Cir. 2009)). To "fairly contest" the defense, the plaintiff must have an opportunity "to conduct . . . discovery" on the defense. *Id.* And "[the defendant] must establish that [the employer's] practice has been to dismiss employees for similar [conduct]." *Davis v. Billington*, 51 F. Supp. 3d 97, 111 (D.D.C. 2014) (citation omitted). If the employer "cannot meet the stringent test set out in *McKennon* for application of the defense," the employee "is eligible for *the full panoply of remedies* available to victims of discrimination." *Russell*, 65 F.3d at 1240 (emphasis added); *see also Rinaldi,* 2009 U.S. Dist. LEXIS 16101, at *24 (where the employer "failed to prove its defense of after-acquired evidence," employee was "entitled" to full severance benefits).

The reasons for requiring employers to prove after-acquired evidence as an affirmative defense are at least two-fold. First, placing the burden of proof on the employer prevents the employer's abuse of the after-acquired evidence doctrine to avoid accountability for providing appropriate remedies for unlawful discrimination. As courts have explained, "employers often say they will discharge employees for certain misconduct while in practice they do not." *Miranda*, 962 F. Supp. 2d at 386 (quoting *Palmquist v. Shinseki*, 729 F. Supp. 2d 425, 429–30 (D. Me. 2010)). Therefore, "an employer must establish by a preponderance of the evidence 'not only that it *could* have fired an employee for the later-discovered misconduct, but that it *would* in

12

fact have done so.'" *Id.* (quoting *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996) (emphasis in original)). This means that an employer cannot prevail "based only on bald assertions that an employee would have been discharged for the later-discovered misconduct." *Id.* (quoting *McDonnell*, 79 F.3d at 759); *see also Adams v. City of Gretna*, 2009 U.S. Dist. LEXIS 79014 at *21 (E.D. La. Sept. 2, 2009) ("An employer must demonstrate, by a preponderance of the evidence, that its actual employment practices would have led to the employee's termination, not simply that the employee's conduct was in contravention of the employer's stated policies.").

Second, requiring the employer to raise an affirmative defense in its pleadings prevents the unfair surprise that would result from asserting an affirmative defense for the first time on the doorstep of trial. Many courts have explained that raising an after-acquired evidence defense for the first time after discovery has closed would clearly be prejudicial and therefore is not allowed. *See, e.g.*, *BOK Fin. Corp.*, 2014 U.S. Dist. LEXIS 188612, at *5 ("Courts and counsel 'do not normally expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order, especially in such cursory form.' Such a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice. This Court does not endorse such practices and will not permit litigation by ambush." (citation omitted)); *Pennell*, 2011 U.S. Dist. LEXIS 150763, at *11 (holding that a "late stage in the litigation, after the close of plaintiff's discovery and shortly before trial, this amendment would be clearly prejudicial to the plaintiff if allowed"); *Santos*, 2004 U.S. Dist. LEXIS 17666, at *22–23 (precluding assertion of after-acquired evidence defense after close of discovery and summary judgment briefing because "[i]t would be unfair to allow Boeing to thrust the defense into the action at this juncture, thereby

13

depriving Santos of the ability to conduct discovery relating to the defense or address the merits of the defense in its brief"); *accord S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 373 (4th Cir. 2003) (failure to raise an affirmative defense prior to summary judgment will result in "waiver" if the "failure to plead resulted in unfair surprise or prejudice").

Here, Defendants did not raise any affirmative defenses in their Answer, First Amended Answer, or the parties' joint pretrial statement. *See* ECF No. 259. Defendants were on notice of the relevant facts that they contend supported an after-acquired evidence defense many months, if not years, ago, and so there is "no justifiable explanation for their delay." *BOK Fin. Corp.*, 2014 U.S. Dist. LEXIS 188612, at *6. Allowing Defendants to raise this affirmative defense for the first time *during the trial*, without having ever pleaded the defense, would be severely prejudicial and is not allowed under the governing rules of civil procedure and circuit precedent.

### C. Defendants have deprived Plaintiff of notice of the basis for an affirmative defense and an opportunity to respond.

Not only did Defendants fail to raise any affirmative defenses in the joint pretrial statement, but they failed to plead any such defenses with specificity. Defendants have therefore deprived Plaintiff of any reasonable notice of the basis for an after-acquired evidence defense, let alone the opportunity to conduct discovery or test the defense through motions practice. *See Staton v. N. State Acceptance, LLC*, No. 1:13-CV-277, 2013 U.S. Dist. LEXIS 105599, at *6 (M.D.N.C. July 29, 2013) (purpose of pleading requirements is to eliminate "burdensome discovery" on meritless or "irrelevant" affirmative defenses (citation omitted)).

As discussed in Plaintiff's prior Motion to Strike Defendants' affirmative defenses, "the majority of district courts" in this Circuit "have concluded that the particularity and plausibility standard from *Iqbal/Twombly* does apply to the pleading of affirmative defenses." *See* ECF No. 133-1 (quoting *Staton*, 2013 U.S. Dist. LEXIS 105599, at *6). In granting the Motion to Strike

14

in its entirety, this Court implicitly adopted the *Iqbal/Twombly* standard. Entry Order Dated September 21, 2022 (order granting Plaintiff's motion to strike Defendants' affirmative defenses). Therefore, the *Iqbal/Twombly* standard is the law of the case. *United States v. Moussaoui*, 483 F.3d 220, 232 (4th Cir. 2007) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)). The purpose of this pleading standard is "to ensure that the opposing party receives fair notice of the nature of a claim or defense." *Barry v. EMC Mortgage*, No. CIV.A. DKC 10-3120, 2011 WL 4352104, at *3–4 (D. Md. Sept. 15, 2011) (citation omitted). And the requirement of specificity in pleading affirmative defenses holds even greater force at this stage of the proceeding, on the eve of trial, where failure to provide adequate notice would be severely prejudicial to the plaintiff. *See BOK Fin. Corp.*, 2014 U.S. Dist. LEXIS 188612, at *5 (when a defense is raised for the first time in a pretrial order, 'the party seeking to add a claim or defense should do so with specificity and clarity so as to minimize the ill effects of that practice . . . and provide the trial court with a fair opportunity to consider whether to approve or deny what is obviously an attempt to amend the pleadings at a rather late date'" (citation omitted)).

By failing to properly plead this affirmative defense, Defendants deprived Plaintiff of notice and an opportunity to test the plausibility of the asserted defense. *See, e.g.*, *Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D. Md. 2012) (affirmative defenses that fail as a matter of law should be stricken "with prejudice"); *Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F. Supp. 2d 357, 364 (D. Md. 2004) ("An affirmative defense will be stricken 'if it is impossible for the defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint.'" (citation omitted)). Without raising any affirmative defense based on after-acquired evidence, Defendants argued in their summary

judgment motion that Plaintiff is ineligible for front pay due to her "conduct." As discussed in Plaintiff's response, there are serious flaws in Defendants' argument. ECF No. 250, at 5–12.

To start with, Defendants appear to assert that Plaintiff's protected activity is evidence of a "disregard for the sanctity of the attorney-client relationship." ECF No. 245, at 12. And yet, Defendants themselves disclosed thousands of pages containing privileged client information, not only to the EDR Investigator, but also to DOJ, the authority responsible for prosecuting FDO clients. These disclosures did not comply with judiciary policies requiring redaction of privileged materials, in contrast to Plaintiff's painstaking use of redactions. *See supra*, at 4–6. Defendants cannot plausibly contend that Plaintiff, who made good faith efforts to protect client information, engaged in misconduct in light of their own conduct.

Similarly, Defendants contend that Plaintiff's recordings "undermine[] the trust between colleagues." ECF No. 245, at 12. But Plaintiff disclosed that she was recording during the EDR process and provided a recording for use as evidence. She was never informed that recording was contrary to an office policy. As a matter of law, Defendants cannot raise an after-acquired evidence defense based on conduct they knew about during Plaintiff's employment. *See Russell*, 65 F.3d at 1240 (evidence must be "newly acquired in the course of discovery").

By failing to provide notice, Defendants also deprived Plaintiff of an opportunity to conduct discovery on this defense. An employer's assertion of an after-acquired evidence for the first time after the close of discovery "would be clearly prejudicial to the plaintiff if allowed," because discovery is "necessary" for a plaintiff "to fairly contest th[e] after-acquired evidence defense." *Pennell*, 2011 U.S. Dist. LEXIS 150763, at *11. If Plaintiff had been provided notice of this affirmative defense during discovery, she would have requested discovery about what policies, laws, and/or regulations were allegedly violated; whether other employees engaged in

16

similar conduct; and whether Defendants took any action against any other employees. This discovery would have been important because judiciary policies, which Defendants failed to disclose, show that Plaintiff did not commit misconduct. *See infra,* at 19–23. Moreover, Plaintiff *did* serve discovery requests related to Defendants' affirmative and factual defenses, as well as misconduct by other employees, but Defendants refused to provide responsive materials and rejected her requests as "overbroad" and "irrelevant." ECF No. 250, at 12. Defendants' conduct in evading Plaintiff's timely served discovery requests and sandbagging her after discovery closed confirms that this defense is waived. *Supra*, at 6–7; *Crown Castle Fiber, L.L.C. v. City of Pasadena*, No. 22-20454, 2023 U.S. App. LEXIS 20364, at *21–22 (5th Cir. Aug. 4, 2023) ("A failure timely to answer or raise an affirmative defense before springing it on plaintiffs at summary judgment almost always constitutes an 'unfair surprise.'").

Based on the limited discovery Defendants *did* disclose, it is evident that other employees engaged in similar conduct without any apparent consequences. As discussed above, the First Assistant disclosed thousands of pages of privileged client information to the EDR Investigator, which was then disclosed by Defendants to DOJ during this litigation. Plaintiff's protected activity, including redactions of client information, simply does not compare to this conduct.

Further, Defendants' limited disclosures show ███████████████████



███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

Plaintiff would have moved to compel this information, if necessary, had she been aware of Defendants' intent to assert an after-acquired evidence defense. Because of Defendants' failure to timely raise the defense, Plaintiff was denied the ability to conduct relevant discovery.

## II. Defendants are Barred from Relying on After-Acquired Evidence Because They Did Not Produce Any Evidence Related to that Defense in Discovery.

Defendants' after-acquired evidence defense is also barred because Defendants did not produce any evidence related to this defense in discovery. As discussed above, Defendants did not disclose any information or witnesses related to an after-acquired defense in their initial disclosures, as required by Fed. R. Civ. P. 26(a) and (e). Defendants did not disclose Defender Baker, the sole witness on whom they rely for this defense, in their initial disclosures or any discovery responses. *Cf.* FDO Office Manual § 7.00 (stating that only the "Defender" may impose "disciplinary action"). Defender Baker is also not listed as a trial witness in the parties' joint pretrial filing. ECF No. 259, at 107–08. Further, Defendants failed to disclose any information related to this defense in response to any of Plaintiff's discovery requests for their affirmative defenses or evidence of misconduct by other employees. *Supra*, at 6–7.

The purpose of the disclosure requirement "is to allow the parties to adequately prepare their cases for the trial and avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). Thus, a party who fails to provide information or identify a witness in their initial disclosures or discovery responses "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This sanction is "automatic" and

18

"self-executing."  Fed. R. Civ. P. 37(c), Advisory Comm. Notes (1993).  Defendants' failure was not substantially justified or harmless, because they were on notice of the relevant facts for months, if not years, and their failure to provide notice of the defense was severely prejudicial for all the reasons discussed above.  Thus, Defendants are subject to Rule 37's "automatic" and "self-executing" sanction preventing use of the information at trial.

## III.      An After-Acquired Evidence Defense Would be Meritless.

When an employer alleges that an employee has engaged in misconduct, "they darn well better be in a position to demonstrate it."  *Perkins*, 557 F.3d at 1148 (citation omitted).  Here, Defendants' after-acquired evidence defense would be meritless for several reasons.

### A.      Plaintiff did not engage in misconduct.

#### 1.      Plaintiff's activity was protected under judiciary policy.

An after-acquired evidence defense does not apply unless the plaintiff "actually engaged in 'misconduct.'"  *Russell*, 65 F.3d at 1240.  Defendants cannot meet this threshold showing because Plaintiff's use of documents and recordings in support of her claims is protected by judiciary policy.  *See supra*, at 4–6.  As explained in Plaintiff's summary judgment response, the judiciary codified these policies specifically to "clarify" "that confidentiality obligations should never prevent any employee . . . from revealing abuse or reporting misconduct by any person."  Report of the Federal Judiciary Workplace Conduct Working Group 25 (2018).  The policies were enacted in response to reports that judiciary employees "mistakenly believe[d] that the obligation of confidentiality extends to the reporting of misconduct," which has never been the case.  *Id.*; Report of the Proceedings of the JCUS at 13 (Mar. 2019), *available at* https://tinyurl.com/rkt3ycmk (amendments "clarify" that "duty of confidentiality" does not apply to reporting of misconduct).  In failing to disclose these adverse controlling authorities,

19

Defendants ignored this important national judiciary policy and compounded the problem the judiciary intended to solve in encouraging judiciary employees not to be intimidated from coming forward about wrongful conduct. *See id.*

In their summary judgment filings, Defendants appear to raise two arguments that Plaintiff's activity was not protected notwithstanding judiciary policy. Both arguments fail. First, Defendants contend that the judiciary policy was not formally codified until after Plaintiff's employment ended (even though it was announced *before* Plaintiff commenced her EDR proceeding, *see* Working Group Report at 25), and so it does not apply to her. ECF No. 254, at 22. This argument contravenes basic canons of construction. The judiciary policy was specifically enacted to "clarify" existing policy. This use of the term "clarify" has meaning, as it indicates an intent "to clarify existing law" or "to correct a misinterpretation." *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (citations omitted). A statutory change "need not *ipso facto* constitute a change in meaning and effect," because it "may be passed purely to make what was intended all along even more unmistakably clear." *Id.* (citation omitted). Thus, as a matter both of judiciary policy and common sense, Plaintiff's activity during her EDR proceeding and the subsequent litigation was protected. Indeed, if it were otherwise, Plaintiff could not have complied with the EDR Investigator's requests for materials supporting Plaintiff's claims, which necessarily contained confidential information, or Defendants' requests for discovery during this litigation. *See* FDO EDR Plan § V(E) (recognizing that materials may "necessarily contain[] or refer[] to attorney-client or work-product privileged information inherently involved in the Complaint, hearing, or resolution process").

Second, Defendants contend that Plaintiff's preservation of materials went "beyond the scope" of what was needed and was not protected activity. ECF No. 254, at 22. This argument

is contradicted by Fourth Circuit precedent, which "forecloses" this type of "slippery reasonableness standard" regarding an employee's participation in a protected proceeding. *Glover v. S.C. Law Enf't Div.*, 170 F.3d 411, 414 (4th Cir. 1999); *cf.* FDO EDR Plan, § V(C)(3)(f)(viii) (EDR proceedings are "guided by judicial and administrative decisions under relevant statutes and rules"). An employee who "'has made a charge, testified, assisted, or participated *in any manner*' . . . is protected against punitive employer action," even if the employer deems the employee's efforts "irrelevant" and "unreasonable." *Glover*, 170 F.3d at 414 (quoting 42 U.S.C. § 2000e-3(a) (emphasis added)). Employees who engage in protected activity "are endowed with 'exceptionally broad protection'" so that their participation "will not be chilled." *Id.* (citation omitted). Plaintiff's preservation of evidence and protection of herself against perjury by others was reasonable and protected, particularly when compared to FDO officials' unnecessary disclosures of privileged client information.

Similarly, Defendants' *post hoc* contention that Plaintiff's recordings constitute a terminable offense has no basis in the FDO office manual, which contains no prohibition of recordings. Defendants have produced no evidence that the recordings were misconduct, particularly since other employees may have engaged in the same conduct. As explained above, the recordings are legal and ethical. *Supra,* at 4–5. The ABA formal opinion addressing this issue concludes that "the mere act of secretly but lawfully recording a conversation inherently is not deceitful." ABA Formal Op. 01-422, at 2. Indeed, the ABA opinion even concludes that prohibiting this conduct "may defeat a legitimate and even necessary activity," including documenting a claim of discrimination. *Id.* at 4; *see supra* at 4 (Plaintiff's recording used as supporting evidence for disciplinary action). The ABA opinion further recognizes the legitimate purposes of "documenting conversations for self-protection of the lawyer" and "documenting

21

conversations with potential witnesses to protect against later perjury" in a proceeding. ABA Formal Op. 01-422, at 2; *see supra*, at 2 (discussing Defendants' extensive amendments to their Answer after recordings were disclosed). Defendants' belief that such activity "undermines the trust between colleagues" demonstrates a selective enforcement of office norms, as it ignores that acts of sexual harassment, discrimination, and retaliation "undermine the trust between colleagues." *Cf.* FDO EDR Plan § 1 ("[B]ullying, harassment, or inappropriate conduct does not align with treating colleagues with respect and will not be tolerated.").

## 2. Plaintiff did not violate the Federal Records Act.

Defendants contend that Plaintiff's protected activity "likely" violates the Federal Records Act, though notably, they never *actually* claim it does. ECF No. 245, at 12; *cf. Russell*, 65 F.3d at 1240 (plaintiff must "actually engage[] in 'misconduct'" for defense to apply). Defendants' argument is unfounded. Plaintiff did not "unlawfully" remove records because her use of materials was protected by judiciary policy. *See* 44 U.S.C. § 3106. Indeed, if Defendants' argument were correct, then the First Assistant violated the Federal Records Act by removing thousands of pages of privileged client materials from the FDO and providing them to the EDR Investigator, and Defendants then collectively violated the Federal Records Act by removing the privileged materials and providing them to DOJ.

But Defendants' argument suffers from a more fundamental flaw, which is that these case-related materials are not federal records. Judiciary policy states that "[c]lient case files are the client's property, held by the attorney, and regulated by the bar rules of each state. Court-appointed or public defender status makes no difference in the ethical standard." Guide to Judiciary Policy, Ch. 6, Vol. 10, Appx. 6C, *available at* https://tinyurl.com/2abj6r9e; *see also* NARA, Request for Records Disposition Authority, *available at* https://tinyurl.com/khnnwyjh

22

(adoption of records schedule). Thus, materials related to case files are not federal records.[2]

Defendants' failure to disclose this adverse controlling authority underscores the prejudice to Plaintiff caused by the lack of notice of and discovery on this defense. Had Plaintiff been provided notice, she would have requested any policies related to the definition of records, which would have required disclosure of this policy. Indeed, Defendants themselves recognized that case-related discussions are not federal records when they rejected Plaintiff's discovery requests for relevant text messages on electronic devices being used by FDO employees for official purposes. *See, e.g.*, Ex. F (stating that Defendants do not have "the legal right to obtain documents on demand from [employee personal] devices" and "disagree[ing] with [Plaintiff's] position that Defendants have possession, custody, or control of information contained on federal employee personal devices").

Defendants' brief also mentions the Privacy Act. ECF No. 245, at 12 n.3. But it is well-settled that the Privacy Act does not apply to the judiciary. *See* DOJ, Overview of the Privacy Act: 2020 Edition, *available at* https://tinyurl.com/3r6rdvfb (citing authorities).

### B. Defendants cannot meet any of the other elements of an after-acquired evidence defense.

In addition to failing to establish misconduct, Defendants cannot establish any other elements of an after-acquired evidence defense. As discussed above and in Plaintiff's summary judgment response, Defendants cannot establish that the information was newly acquired in the course of discovery or that the conduct would have resulted in Plaintiff's termination. *See* ECF

---

[2] There are other flaws in Defendants' "records" argument, including that the materials are either "copies," *see* 44 U.S.C. § 3301(a)(1)(B)(ii), or analogous to personal notes, *see, e.g.*, *McErlean v. United States DOJ*, 97 Civ. 7831 (BSJ), 1999 U.S. Dist. LEXIS 15544, at *32 (S.D.N.Y. Sep. 30, 1999). But this Court need not reach these issues to determine that their argument fails for the reasons discussed above.

23

No. 250, at 10–11.  That is particularly true because Defendants' own conduct raises reasonable questions about their compliance with judiciary policies and ethical obligations.

Defendants' failure to redact client information implicates not only the duty of confidentiality, but also the duty of loyalty, since they disclosed privileged information to DOJ, the authority responsible for prosecuting FDO clients.  *See* N.C. R. Prof. Cond. 1.6(c) (lawyer "shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of . . . information relating to the representation of a client"), 1.7 cmt. 1 ("Loyalty and independent judgment are essential elements in the lawyer's relationship to a client.").  It implicates Canon 1 of the Codes of Conduct, which requires federal defenders to uphold "the integrity and independence of the office . . . so that the defender office reflects a devotion to serving the public defender's clients."  And it implicates the propriety of DOJ's representation of FDO officials, given DOJ's prosecutorial role.  *See* Hearing on Federal Judicial Branch, Subcomm. On Courts, Civil Liberties, and Administration of Justice, House Jud. Comm. 785 (Apr. 25, 1985), *available at* https://tinyurl.com/4y2r3r5v (discussing Judicial Conference policy that "[n]o request for representation of a federal public defender or his staff . . . shall normally be submitted to the Department of Justice, in view of the Department's prosecutorial role and its consequent apparent disqualification to represent a public defender against whom it prosecutes criminal cases").  Indeed, Defendants' continued gratuitous disclosures of clients' personal information, including names, in their pretrial filings demonstrates a continued lack of adherence to judiciary policies and sensitivity to client interests.  *See, e.g.*, ECF No. 259, at 79, 86 (naming FDO client in public filing); ECF No. 269, at 10 (objection to Defendants' trial exhibits that include unredacted personal identifying information and case-related discussions); *cf.* FDO EDR Plan § V(C)(3)(e) (requiring redaction of "clients' personal identification information").  Given their

24

own conduct, Defendants cannot credibly contend that Plaintiff engaged in misconduct, let alone that she would have been terminated.

### C.  Defendants are barred from relying on conduct that directly resulted from the discrimination as after-acquired evidence.

Courts have recognized that when alleged misconduct arises as "a direct result" of an employer's discriminatory conduct, "the necessary balancing of the equities hardly mandates a *McKennon*-type instruction on after-occurring evidence." *Medlock v. Ortho Biotech*, 164 F.3d 545, 555 (10th Cir. 1999). In *Medlock*, the Tenth Circuit held that a district court properly refused to admit evidence that an employee "touched and cursed at" the employer's counsel at a post-termination unemployment benefits hearing. *Medlock*, 164 F.3d at 555. The Court explained that it would be inequitable to apply the *McKennon* doctrine when the alleged conduct "arises as a direct result of retaliatory termination." *Id.*

Here, as in *Medlock*, it would be inequitable to apply the after-acquired evidence doctrine for all the reasons discussed above, and because Plaintiff's protected activities arose directly from her efforts to report wrongful conduct and to vindicate her legally protected rights to be free from sexual harassment, discrimination, and retaliation. There was no other reason for these protected activities. Moreover, Plaintiff worked in good faith to protect client information and comply with judiciary policy. Defendants cannot use the after-acquired evidence doctrine to bar relief based on conduct that arose directly from their own discriminatory conduct.

## CONCLUSION

For these reasons, the motion *in limine* should be granted.

This the 2nd day of October, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October, 2023, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

    Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

    Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

    Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

    Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

27