## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | |
|---|---|
| **CARYN DEVINS STRICKLAND,** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| **v.** | )　**Civil No. 1:20-cv-00066-WGY** |
| | ) |
| **UNITED STATES,** *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

Plaintiff Caryn Devins Strickland, by and through undersigned counsel, respectfully requests that this Court reconsider its ruling denying summary judgment on her equal protection and due process claims and granting summary judgment in favor of Fourth Circuit and AO officials on her equal protection claim. ECF No. 258. This motion is made on three grounds:

*First*, the Court refused to consider MeToo evidence of other discrimination complaints against the FDO, even though the evidence is directly relevant to the issue of discriminatory intent. Indeed, the Court *did not even allow Plaintiff to file this evidence* under seal or review it before ruling on summary judgment, which violated her basic due process right to be heard.

*Second*, this Court's recognition that the Chief Judge's letter of reprimand is an "unimpeached" public record, *see* Fed. R. Evid. 803, containing findings of unlawful discrimination, should have compelled summary judgment in Plaintiff's favor on the equal protection claim. Indeed, the "undisputed" and "unimpeached" facts as recognized by this Court, ECF No. 258, at 5–6, precisely mirrors the summary judgment standard as recognized by the

Supreme Court, *see Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000)

("uncontradicted and unimpeached" evidence supports summary judgment).

*Third*, this Court overlooked Defendants' extensive judicial admissions, even while it

granted Plaintiff summary judgment to the extent that the facts were admitted by Defendants.

These judicial admissions provide incontrovertible evidence that should have supported

judgment in Plaintiff's favor on both the equal protection and due process claims.

## LEGAL STANDARD

"Rule 59(e) permits a court to amend a judgment . . . for three reasons: (1) to

accommodate an intervening change in controlling law; (2) to account for new evidence not

available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *EEOC v.*

*Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997) (citation omitted). When an outcome

is "virtually mandated by controlling law," a district court abuses its discretion by failing to grant

a Rule 59(e) motion. *Id.*

## ARGUMENT

I.  **This Court Clearly Erred by Refusing to Consider MeToo Evidence that is
    Directly Relevant to the Issue of Discriminatory Intent, in Violation of Controlling
    Rules of Procedure and Plaintiff's Due Process Right to be Heard.**

The basis for this Court's July 25, 2023 summary judgment ruling on equal protection

was the "discriminatory intent" prong of the deliberate indifference claim. ECF No. 258, at 3

("This Court took the fourth element of the deliberate indifference to sexual harassment claim

under advisement, viz. that 'the deliberate indifference was motivated by a **discriminatory**

**intent**.'" (citation omitted)). The Court stated that "[a]fter a thorough review of the evidentiary

2

record, this Court rules that Strickland . . . does not provide any plausible evidence of discriminatory intent on behalf of any supervisory defendant EXCEPT Anthony Martinez." *Id.* But contrary to the Court's statement that it conducted a "thorough review of the evidentiary record," *id.*, the Court refused to consider Plaintiff's MeToo evidence of other complaints of discrimination, harassment, and retaliation against the FDO. *See* ECF No. 248-16 (Ex. P).

Plaintiff filed a redacted version of her summary judgment motion and moved, unopposed, to file the MeToo evidence under seal. ECF No. 244. Without ruling on Plaintiff's motion to seal, the Court ruled on the parties' cross-motions for summary judgment without even considering the evidence regarding the MeToo complaints. This Court was required to consider this evidence under Fourth Circuit precedent, which holds that MeToo evidence is relevant to proving an employer's discriminatory intent. The Court's refusal to consider the evidence was contrary to controlling rules of procedure, which allowed Plaintiff to file the evidence under seal for the Court's review, and it violated Plaintiff's due process right to be heard.

### A. Under Fourth Circuit precedent, evidence of MeToo complaints is directly relevant to the issue of discriminatory intent.

The Fourth Circuit has held that "[a]s a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Calobrisi v. Booz Allen Hamilton, Inc.*, 660 F. App'x 207, 210 (4th Cir. 2016) (citation omitted) (unpub. per curiam); *see also Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir. 1988) ("Where a plaintiff seeks to prove discriminatory intent, the probative value of statements revealing the racial attitudes of the decisionmaker is great."). In determining whether this evidence is admissible, courts consider "whether the other discriminatory behavior described 'is close in time to the events at issue in the case, whether the same decisionmakers

3

were involved, whether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated.'" *Calobrisi*, 660 F. App'x at 210. The Fourth Circuit has held that a trial court errs when, at the summary judgment stage, it categorically excludes MeToo evidence without "individually analyz[ing] each piece of other employee evidence." *Id.*

Moreover, the Fourth Circuit has held that a pattern of violations is "relevant evidence" to proving deliberate indifference. *Basta v. Novant Health Inc.*, 56 F.4th 307, 317 (4th Cir. 2022). The Fourth Circuit recognized that "intentional discrimination can be proven via deliberate indifference," which "lies 'somewhere between the poles of negligence at one end and purpose or knowledge at the other.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)); *cf. Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001) (applying *Farmer* to sexual harassment deliberate indifference claim). This standard, is "at bottom, an actual-notice standard." *Basta*, 56 F.4th at 317 (citation omitted). "[A] history of violations is relevant evidence to proving deliberate indifference," though not required to succeed. *Id.*

Here, the Court failed to consider evidence of other complaints that is directly relevant to the issue of discriminatory intent. The evidence is relevant because it is close in time to the events in this case and involves the same decision makers, similar treatment, and similarly situated complainants. The complaints are relevant to establishing the discriminatory intent of Defender Martinez, who is alleged to have engaged in discrimination and retaliation against other individuals, as well as other supervisory officials who were aware of the complaints and responded with deliberate indifference. *See Strickland v. United States*, 32 F.4th 311, 359 (4th Cir. 2022) (holding that "federal judiciary employees who occupy supervisory roles and/or who

are charged with enforcing an EDR plan can, under *Feminist Majority Foundation*, be held liable under the Fifth Amendment for their deliberate indifference to sexual harassment committed by a federal judiciary employee or supervisor against another federal judiciary employee").

Indeed, the Circuit Executive testified during his deposition that he was "concerned about a pattern of complaints against JP Davis or Mr. Martinez":

> Q    Were you, at any point during Ms. Strickland's complaint and proceeding, concerned about a pattern of complaints against JP Davis or Mr. Martinez?
>
> A    Well, I think -- I think I was concerned about that.   There were multiple coming within a relatively short period of time, so I remember being somewhat concerned about that.

ECF No. 248, Ex. K, at 227–28.

Further, the Chief Judge was aware of "every" one of the complaints:

> Q    Did you speak with Chief Judge Gregory about the concern you just mentioned?
>
> A    Well, again, in my role as the EDR Coordinator, whenever I get, you know, like, say, a Chapter IX or Chapter X, I would always let him know that this is a – "Chief, by the way, this is what" – "I received this complaint or this request" – "this report of wrongful conduct."   So I would let him know every time I received one what would happen.

*Id.*

Defendants' interrogatory responses confirm the similarity of these complaints, demonstrating a pattern of conduct that is relevant to proving discriminatory intent:



5



ECF No. 248, Ex. P, at 3–4.

6

Indeed, the information Defendants provided shows nearly a perfect fit with the factors considered by courts in determining relevancy, as demonstrated by the below chart:

| Identity of Complainant | Time Period of Alleged Wrongful Conduct | Identity of Decision Makers Involved | Nature of Discriminatory Treatment | Protected Class of Complainant and Other Similarities |
|---|---|---|---|---|
| Caryn Strickland | Complaint filed September 10, 2018; alleging ongoing course of wrongful conduct beginning in 2017 (during Anthony Martinez's tenure as FD) | Anthony Martinez<br><br>JP Davis | Sexual harassment, discrimination, retaliation | Female<br><br>Assistant Federal Public Defender<br><br>Charlotte Office<br><br>Non-supervisory position |
| ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | ███ | ███ | ███ |

7



The following excerpts from Plaintiff's Exhibit P, which contains evidence provided by Defendants in discovery pertaining to the other complaints, provides illustrative examples of the relevancy and probative value of this evidence:







10



Case 1:20-cv-00066-WGY   Document 292-1   Filed 10/10/23   Page 11 of 27





ECF No. 248, Ex. P, at 7–11, 14–35, 52, 55–57, 58–62.

At a minimum, if this Court were to consider excluding this evidence, it would need to consider the factors listed above regarding the relevancy of the complaints. The Court could not undertake the required inquiry without even reviewing this evidence. *See Calobrisi*, 660 F. App'x at 210 (court must "individually analyze" the evidence).

13

**B.** **In refusing to consider the MeToo evidence, this Court violated controlling rules of procedure and denied Plaintiff her due process right to be heard.**

Plaintiff initially submitted evidence regarding other EDR complaints on April 14, 2023, with her response to Defendants' motion for a protective order from Chief Judge Gregory's deposition. *See* ECF No. 199. She submitted the materials under seal because Defendants had marked them as confidential and opposed their unsealing. *See* ECF No. 201. Pursuant to Local Rule 6.1, which states that a "party seeking to file material under seal may submit an unredacted version of the material under seal for review by the Court along with the motion to seal," Plaintiff filed the unredacted version of her response and accompanying exhibits under seal. WDNC Local Rule 6.1(d). Plaintiff contended that the materials showed that deposition questioning of the Chief Judge was warranted, in part, because "Chief Judge Gregory was responsible for overseeing all EDR complaints within the Circuit during Plaintiff's employment at the FDO," and he "has unique knowledge regarding the Circuit's response to harassment and discrimination that no other official would have." ECF No. 199, at 13.

This Court responded to Plaintiff's submissions by *sua sponte* suspending Local Rule 6.1 and refusing to consider any of the materials Plaintiff submitted under seal in compliance with Rule 6.1. ECF No. 203. The Court stated that it had "consulted only the redacted filings before it in arriving at its conclusion," and that any documents "purportedly under seal . . . are to be returned to the sender." *Id.* at 2. The Court further stated: "**Nothing** is to be filed in court under seal unless and until this Court upon motion expressly so orders." *Id.* The Court thus *sua sponte* suspended Rule 6.1, which expressly allows a party to submit materials under seal for the Court's review pending a sealing determination, and barred the parties from submitting any sealed materials without prior court approval. While the Court allowed Plaintiff to depose Chief

14

Judge Gregory regarding his refusal to disqualify the Defender, it did not allow *any* questioning regarding his knowledge of other EDR complaints. *Id.* at 203, at 2 ("The deposition is limited to the decision not to disqualify the Federal Public Defender after challenge . . . .").

Thereafter, at the summary judgment stage, Plaintiff moved to submit evidence under seal regarding other EDR complaints and to redact that information from her public filing. The basis for the motion to seal was that the materials contain confidential personnel information pertaining to third parties. ECF Nos. 244, 247; *see Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2014 U.S. Dist. LEXIS 172229, at *26 (E.D.N.C. Dec. 11, 2014) (recognizing "the privacy interests in a non-party's personnel file"). Plaintiff's motion was unopposed.

This Court did not act on Plaintiff's motion to seal and did not consider the information she requested to submit before ruling on the motion for summary judgment. *See* ECF No. 258. At the same time, the Court seemed to prejudge the relevancy and probative value of the complaints, without even having reviewed them, as it stated that "each of these witnesses seems somewhat peripheral and the Court is not disposed to allow cumulative testimony." ECF No. 233, at 1; *see also* ECF No. 267, at 13 ("But in candor my guess is -- again I don't know, whatever they have to say is peripheral."). If the Court believed that sealing of these materials was not proper, then it could have denied the motion to seal and ordered Plaintiff to submit the materials on the public docket, or considered other alternatives to sealing. *See Johnson*, 2014 U.S. Dist. LEXIS 172229, at *37 (allowing party to file "renewed motion to seal within 10 days of the filing date of this order, accompanied by, if necessary, redacted versions of any documents"). But the Court did not have discretion to ignore, and prejudge the relevancy of, evidence Plaintiff was not even allowed to submit before the Court ruled on summary judgment.

In refusing to consider materials that Plaintiff requested to submit before ruling adversely to her interests, this Court violated binding rules of procedure and denied Plaintiff her due process right to be heard. This Court lacks authority to suspend this District's local rules, including Rule 6.1's procedure expressly allowing a party to file materials under seal pending the Court's sealing determination. *See* Fed. R. Civ. P. 83(b) ("A judge may regulate practice in any manner *consistent* with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules." (emphasis added)); *Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987) ("[Local rules] have the force and effect of law, and are binding upon the parties and the court which promulgated them . . . ." (quotation omitted)). As a result of the Court's *sua sponte* order suspending the local sealing rule, Plaintiff was barred from filing the unredacted MeToo evidence under seal without prior court approval. This Court then failed to act on the motion to seal and ruled on summary judgment without even reviewing Plaintiff's unredacted filing as contemplated by the local rule. *See* ECF No. 258. The Court's refusal even to consider the MeToo evidence was extremely prejudicial to Plaintiff: the Court ruled that Plaintiff had not presented any evidence of discriminatory intent on the part of the Circuit Executive and Chief Judge, even though the Court did not even consider evidence of a pattern of complaints. *Id.* at 8– 11. Further, this evidence would have made Plaintiff's showing of discriminatory intent on the part of Defender Martinez even more overwhelming. *See supra* Part II.

In refusing to consider this evidence, this Court contravened not only Local Rule 6.1, but also Plaintiff's basic due process right to be heard. The Supreme Court has held that it is fundamentally unfair for a court to rule against a plaintiff without "having read or considered the briefs which the plaintiffs submitted," and based only on information it "derived from

16

consultation with employees of the [government.]" *Morgan v. United States*, 298 U.S. 468, 478 (1936). These principles are "fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature," and their violation "is more than an irregularity in practice; it is a vital defect." *Morgan v. United States*, 304 U.S. 1, 19, 22 (1938).

Here, as in *Morgan*, this Court contravened principles of due process when it ruled against Plaintiff on summary judgment without even considering the MeToo evidence. Further, as in *Morgan*, this Court considered only information provided by Defendants without even considering Plaintiff's arguments. Indeed, even though Defendants did not oppose Plaintiff's motion to seal because the information involves confidential personnel matters, Defendants openly discussed (and mischaracterized) the other EDR complaints in their public filings. *See, e.g.*, ECF No. 249, at 21–22, ECF No. 254, at 21. This Court then considered *only* Defendants' characterization of the MeToo evidence, without even considering Plaintiff's arguments or the underlying evidence, before ruling against her. The Court's refusal to consider Plaintiff's evidence demonstrates a failure to respect her right to be heard and a concerning bias in favor of Defendants, who were afforded favorable treatment that is unfounded in the law.

II.     **This Court's Recognition that the Chief Judge's Letter of Reprimand is an "Unimpeached" Public Record Compels Summary Judgment in Plaintiff's Favor on the Equal Protection Claim.**

This Court's summary judgment opinion confirms that, based on the undisputed facts and Defendants' judicial admissions, there are no reasonable inferences that can be drawn in Defendants' favor on the equal protection claim. This Court's ruling states that "[p]rominent among th[e] evidence" supporting Plaintiff's showing of discriminatory intent against Defender Martinez "is Chief Judge Gregory's letter of reprimand dated May 28, 2019." ECF No. 258, at

17

5–6 (citing Ex. D, ECF No. 248-5 at 80–83). As the Court explained, "[t]he factual findings in this letter constitute an unimpeached public record pursuant to Fed. R. Evid. 803(8)(A)(iii)." *Id.* Based on this letter of reprimand, among other evidence, this Court recognized that the facts supporting Plaintiff's equal protection claim against Defender Martinez "appear to be undisputed" and Plaintiff's argument "well illustrates the plausible conclusions a court could draw." *Id.* at 7. The Court concluded that "[s]ummary judgment must be denied as to Martinez." *Id.* Thus, the Court denied *Defendants'* motion for summary judgment regarding Defender Martinez. *Id.* But it appears that the Court did not consider whether to grant *Plaintiff* summary judgment based on the "undisputed" facts. *Id.*; *see* Fed. R. Civ. P. 56(a) ("The court *shall grant* summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (emphasis added)).

The findings in Chief Judge Gregory's letter of reprimand are admissible as an admission by a party opponent, Fed. R. Evid. 801(d)(2)(D), and as an investigative report of a public agency, Fed. R. Evid. 803(8)(A). *Allen v. Chi. Transit Auth.*, 317 F.3d 696, 700 (7th Cir. 2003); *see Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976) (explaining that "prior administrative findings" on a discrimination claim can be admissible and "in the light of the prior administrative proceedings, many potential issues can be eliminated by stipulation or in the course of pretrial proceedings"). While a party may "present evidence tending to contradict or diminish the weight of those conclusions" in a public record, Defendants have not done so here. *Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 783 (D. Md. 2012). To the contrary, Defendants' judicial admissions confirm that they did, indeed, take "disciplinary action" pursuant to Chapter IX of the EDR Plan, which required a finding of violations of Plaintiff's rights under the EDR Plan. *See* EDR Plan

18

Ch. IX ("Employees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan, may be subject to disciplinary action.").

It is well-established that a party's "judicial admission[s]" are "*conclusively binding*" on summary judgment. *Bright v. QSP, Inc.*, 20 F.3d 1300, 1305 (4th Cir. 1994) (emphasis in original). This Court granted partial summary judgment in favor of Plaintiff with respect to all judicial admissions provided by Defendants in this case, thus confirming that Defendants' judicial admissions are binding at this stage. *See* Entry Order Dated July 25, 2023 (confirming that Court had entered an order "granting in part/denying in part and taking under advisement" Plaintiff's motion for summary judgment"); ECF No. 258, at 2 (stating that Plaintiff's motion for summary judgment had been granted "in part, viz. the government's listing of facts, where undisputed, were established for trial"); ECF No. 268, at 25 (statement at summary judgment hearing that Plaintiff's motion was granted "insofar that we will say that those facts that the defense has actually admitted are taken as established," including the "facts established as to the documents and the meetings"). In Defendants' Answer, they admitted that "[t]he EDR Coordinator disclosed to Plaintiff: 'I wanted to let you know that *disciplinary action* was taken last week as a result of your report of wrongful conduct.'" Answer ¶ 311; *see* ECF No. 259, at 76 (emphasis added). Defendants further admitted "that Plaintiff was not informed about the content of the investigation report, or the *disciplinary action* taken under Chapter IX of the EDR Plan." Answer ¶ 312; ECF No. 259, at 76 (emphasis added). It is therefore a judicial admission by Defendants that "disciplinary action" was taken against the Defender and the First Assistant for wrongful conduct, which is confirmed by the contents of the letter of reprimand.

19

In stating that the letter of reprimand is an "*unimpeached* public record," this Court recognized that Defendants have not introduced any evidence to undermine the reliability of the letter of reprimand.  ECF No. 258, at 6 (emphasis added).  That letter of reprimand made specific findings of wrongful conduct, that is, "[d]iscrimination against employees based on . . . sex," including "sexual harassment," and "retaliation for engaging in any protected activity":

- "Marriage Metaphor": "After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a 'marriage,' with the parties needing to 'compromise' and 'meet in the middle.' Ms. Strickland said that she was 'shocked' and 'offended' at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a 'marriage.' The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her."

- "No Physical Touching": "Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, 'at least you weren't touched,' or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt."

- "Disapproval of Seeking Outside Advice": "Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee. The investigator found that you had 'called out' Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office."

- "Shifting Responsibility": "Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with. Ms. Strickland reported that she felt 'offended' by your protest, which she perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office. This, the investigator concluded, contributed to your mishandling of the matter."

Ex. A.

Further, the letter specifically stated that disciplinary action was being taken based on the wrongful conduct provision of the EDR Plan:

### III. Chief Judge Gregory's Decision

Under Chapter IX of the Plan, "[e]mployees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan, may be subject to disciplinary action." After careful consideration of the investigator's report, supporting attachments, and documents filed in this case - and noting the mitigating circumstances – Chief Judge Gregory has decided to adopt the recommendations contained in the report.

*Id.*

Based on these unimpeached findings of fact by the Fourth Circuit's Chief Judge, no reasonable factfinder could find in Defendants' favor on the equal protection claim against the Defender. Indeed, if anything, these findings of wrongful conduct are not strong enough because they resulted from an investigation that was grossly inadequate and severely biased against Plaintiff by an Investigator who, *inter alia*, had no experience investigating EDR complaints, did not interview any of Plaintiff's witnesses, and referred to Plaintiff as a "true pain in the you know what." ECF No. 248, at 10–11. The fact that these findings in Plaintiff's favor resulted at all from such a flawed investigation makes them even more compelling and incontrovertible. *Cf. Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988) (court may reject "portions" of report that it determines are untrustworthy).

Moreover, the findings in the letter of reprimand also support summary judgment in Plaintiff's favor on the equal protection claim against the Chief Judge, the Circuit Executive, and AO officials, who assisted and advised them. *See, e.g.*, ECF No. 78-4, ¶ 24 (Circuit Executive's sworn declaration stating that he relied on "the Administrative Office of the United States Court's Office of the General Counsel, in assisting me interpret and administer the EDR Plan");

21

ECF No. 94-7, ¶ 3 (sworn declaration of AO's General Counsel stating that the "Office of General Counsel [was] the sole AO office responsible for advising Plaintiff s employer of its legal rights and responsibilities"). After all, the letter of reprimand, which was dated May 28, 2019, confirms that judiciary officials did not take disciplinary action for more than four months after the investigation concluded, eight months after Plaintiff filed her report of wrongful conduct, and *nearly a year* after she first raised her allegations. Indeed, the March 25, 2019 Memorandum from the Circuit Executive to the Chief Judge confirms that they did not even *begin the process* of considering disciplinary action until March 25, 2019, weeks after Plaintiff forcibly resigned from the FDO. Ex. A. Defendants' response was "clearly unreasonable in light of known circumstances." *Strickland*, 32 F.4th at 359 (citation omitted).

## III. The Court Overlooked the Binding Effect of Defendants' Extensive Judicial Admissions, Which Compel Summary Judgment in Plaintiff's Favor on the Equal Protection and Due Process Claims.

While the Court granted Plaintiff summary judgment on Defendants' judicial admissions (which are conclusively binding in any event, *see Bright*, 20 F.3d at 1305), its summary judgment opinion does not consider the effect of those binding admissions on Plaintiff's equal protection and due process claims. Defendants' First Amended Answer admits well over half of the allegations contained in Plaintiff's complaint and confirms the veracity of her allegations on many issues that were crucial to the Fourth Circuit's decision, including her conversations with judiciary officials that coerced her to resign. *See, e.g., id.* ¶¶ 257–273, 284–298, 300–305, 309–302, 362–383, 390–392, 396–404, 414–417, 454–464, 474–478. Together with the admissions contained in the EDR administrative record, which this Court confirmed are "undisputed" and "unimpeached," these judicial admissions establish that Plaintiff is entitled to summary

22

judgment.  ECF No. 258, at 5–6.  Given the "uncontradicted and unimpeached" evidence, the

Court's failure to grant summary judgment was improper.  *Reeves*, 530 U.S. at 151.

Previously, in granting summary judgment to a plaintiff bearing the burden of proof, this

Court described the standard for granting summary judgment as follows:

> Summary judgment is appropriate on any claim for which there is
> no genuine dispute of material fact and one party is entitled to
> judgment as matter of law. Fed. R. Civ. P. 56(c). The moving party
> bears the burden of proving it is entitled to summary judgment.  That
> party, if it bears the burden at trial as is the case here, has an initial
> burden of producing incontrovertible prima facie evidence of its
> claims.  Once it has done so the non-moving party has the burden of
> producing evidence creating a "genuine issue" of dispute.
>
> A fact is material if it "has the potential to change the outcome of
> the suit." A genuine dispute exists if the evidence is "sufficiently
> open-ended to permit a rational factfinder to resolve the issue in
> favor of either side." If there are no genuine disputes of material
> fact, the court reviews the record in the light most flattering to the
> nonmoving party, taking all reasonable inferences in that party's
> favor. The court is not required, however, to make unreasonable
> inferences in favor of the nonmoving party if the factual record
> supports only one interpretation.

*Atl. Specialty Ins. Co. v. Karl's Boat Shop, Inc.*, 480 F. Supp. 3d 322, 329 (D. Mass. 2020)

(citations omitted).  This Court also cautioned that even when "[b]oth parties purport to dispute

the material facts submitted by the other party," the purported dispute does not necessarily

preclude summary judgment.  *Id.* at 328.  That is true when "[o]n closer examination . . . most of

these purported disputes merely amount to different characterizations of the underlying

undisputed evidence."  *Id.*  When the nonmoving party "has not actually disputed the inference,

and there are no genuine disputes of material fact," summary judgment is proper.  *Id.* at 329.

As in *Atlantic Specialty Ins. Co.*, the facts of this case are "undisputed," as described by

this Court regarding the parties' summary judgment filings:

> I've noticed the following, there isn't too much dispute as to
> liability, there isn't too much dispute as to what went on here. The
> issues, the major issues are legal issues, what do we make of it
> when we examine what went on here?

ECF No. 267, at 4.  Indeed, this Court stated that "everything is undisputed" except for one

factual dispute and a clarifying question:

> Because it seems to me the facts are largely undisputed, and I want
> to get to two areas where clearly there are disputes . . . . It seems that
> the facts on liability are undisputed. In one respect I find a dispute,
> a factual dispute between what Ms. Strickland says the Judicial
> Integrity Officer said to her and what the Judicial Integrity Officer
> says was said to her. I've got no idea whether that factual dispute is
> dispositive, but it's a factual dispute, and if we did it on a case-
> stated, I'm not in a position to resolve that factual dispute because I
> haven't heard the testimony and the like.
> …
>
> The other aspect of the evidentiary record that I have before me that
> quite candidly I'm not clear whether it's in dispute or not, I've got
> this, um, tape and, um -- well I've gotten into it, but quite candidly
> I don't know what it is, I don't know who's talking, I don't know
> what the setting is. Now I suppose that can all be explained to me at
> the time of argument, whether the argument's going to be on cross-
> motions for summary judgment or on the case-stated, but, um, I
> really do want to be candid. My statement about it seems to me that
> everything is undisputed, I've identified the one dispute, and then
> this tape.

ECF No. 267, at 7–9.  As explained in Plaintiff's summary judgment reply, any dispute

regarding the Judicial Integrity Officer's statements is immaterial because other undisputed facts

support her due process claim.  ECF No. 255, at 16–17.  Moreover, any dispute about the tapes is

clarified by Defendants' admissions in their First Amended Answer and the transcripts they

provided in discovery.  *Id.* at 14, Ex. TT.

    This Court misapplied the summary judgment standard by failing to consider the effect of

Defendants' admissions.  The following facts are a sample of admitted facts:

24

- After the investigation report was completed, the EDR Coordinator informed Plaintiff that the wrongful conduct investigation would be held "in abeyance" until her EDR process concluded, confirming that Defendants *deliberately* delayed taking disciplinary action. *See* Complaint ¶ 400; Answer ¶ 400; ECF No. 255, at 6 & Ex. JJ at 13, 19–20.

- The EDR Investigator told Plaintiff that she did not investigate her retaliation claim because if there is a "true feeling of retaliation," that would need to be "investigated separately." Complaint ¶ 318; Answer ¶ 318; ECF No. 255, at 21 & Ex. YY, at 24–25.

- The Mediator, a Fourth Circuit employee, told Plaintiff that "I don't think a judge is going to micromanage this office and tell a federal defender how to do his job and run this office" because "[t]hey'd be better off terminating him," which confirms that Plaintiff was led to believe the Defender would be the decisionmaker in a final hearing. Complaint ¶ 415; Answer ¶ 415; ECF No. 250, at 14 & Ex. DD, at 47, Ex. C, at 4.

- Defendants refused to disqualify the Defender even though the Investigator found that he had engaged in conduct warranting disciplinary action, was "biased" against Plaintiff, and "could cause more damage if he were involved in the process at this point." ECF No. 248-1 at 12 & Ex. M, at 76. While the Chief Judge did not recall whether he received the Investigator's email, he testified that the email would not have changed his decision because "it wasn't her job to make the decision," nor did he seek "counsel from her to help in that decision." ECF No. 255, Ex. KK, at 32–33.

- Defendants admit that the Defender was allowed to exercise "discretionary" authority over discipline of the First Assistant, even though the Defender himself was also disciplined regarding the same allegations. ECF No. 248-1, at 14 & Ex. E, at 275.

Because any inferences in favor of Defendants based on these undisputed facts would be unreasonable, summary judgment in favor of Plaintiff is proper. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## CONCLUSION

For all these reasons, this Court should reconsider its summary judgment ruling.

This the 10th day of October, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October, 2023, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

27