# EXHIBIT A

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

March 25, 2019

To: Chief Judge Gregory

From: James N. Ishida

RE: Investigation Report – Caryn Devins Strickland

Attached is the investigation report that was prepared in the EDR/Report of Wrong Conduct matters filed by Caryn Devins Strickland. You must decide what disciplinary action, if any, should be taken against Federal Public Defender Anthony Martinez (N.C.W.D.) under Chapter IX of the Fourth Circuit's EEO/EDR Plan (November 2018) ("the Plan").

## I.     Summary

On September 10, 2018, Assistant Federal Public Defender Caryn Devins Strickland filed both an EDR Complaint under Chapter X and a Report of Wrongful Conduct under Chapter IX of the Plan, alleging sexual harassment, retaliation, and other acts of wrongdoing. Because both matters arose under the same general facts, I had ordered a joint investigation and appointed HR Manager Heather Beam, from the North Carolina Western District Probation Office, to handle the investigation.

While the investigation was ongoing, I had attempted to find a resolution through the counseling phase of the Chapter X EDR proceeding. In spite of extending the counseling period, I was unsuccessful in settling the matter. The counseling period ended on January 14, 2019.

On January 31, 2019, Ms. Strickland filed a timely request for mediation under Chapter X of the Plan. I thereafter appointed Edward G. Smith, Fourth Circuit Chief Mediator, to conduct the mediation.

The mediation period was extended once by mutual consent of Mr. Smith and Ms. Strickland. Eventually, Mr. Smith was able to persuade Circuit Judge Henry Floyd to offer Ms. Strickland a clerkship to the end of the term in June, and convince Ms. Strickland to withdraw her EDR complaint in return for the clerkship.

On March 11, 2019, Ms. Strickland submitted her request, asking that her EDR complaint be withdrawn.

## II.    Next Steps – Chapter IX Report of Wrong Conduct

The last remaining matter is Ms. Strickland's Report of Wrong Conduct under Chapter IX of the Plan.

Chapter IX describes the process for resolving a Report of Wrongful Conduct:

(a) A Report of Wrongful Conduct is not the same thing as an EDR Complaint, and the two must be handled according to the procedures as set forth in their respective chapters,

(b) An investigation must be conducted into the allegations,

(c) All parties involved in the investigation must protect the confidentiality of the allegations, and

(d) "Employees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct,[1] as defined in this Plan, may be subject to disciplinary action."

The investigation report recommends that disciplinary action be taken against the accused employee – Federal Public Defender First Assistant J.P. Davis – as well as the unit executive, Anthony Martinez. You cannot decide any disciplinary action against Mr. Davis – that is within the authority of the unit executive. But you can and are tasked with deciding if disciplinary action is appropriate for Mr. Martinez.

## III. Additional Information

I'll speak to you later about a conversation that I had with Cait Clarke, the chief of the AO's Defender Services Office, which may help with your decision regarding Mr. Martinez.

Attachment

---

[1] "Wrongful conduct" is defined to include "[d]iscrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited." *See* Chapter II, section 1 of the Plan.

# Exhibit 69

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

May 28, 2019
**CONFIDENTIAL**

Mr. Anthony Martinez
Federal Public Defender
129 West Trade Street, Room 300
Charlotte, NC 28202

RE:   Counseling re Caryn Devins Strickland's Report of Wrongful Conduct

Dear Tony:

I was delighted to see you at last week's Fourth Circuit's Workplace Conduct Conference in Richmond, VA. It gave me the timely and fitting opportunity to speak to you about the contents of this letter of counseling.

On behalf of Chief Circuit Judge Roger L. Gregory, I write to inform you that you are being counseled for your actions arising from the Report of Wrongful Conduct submitted by Caryn Devins Strickland on September 10, 2018, under Chapter IX of the *Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit* ("the Plan").

### I.   Background

On September 10, 2018, Ms. Strickland submitted a Report of Wrongful Conduct under Chapter IX and a Request for Counseling under Chapter X[1] of the Plan, alleging sexual harassment, retaliation, and discrimination during her employment with your office. In her Report of Wrongful Conduct, styled Official Grievance, Ms. Strickland claimed that "[t]he First Assistant [JP Davis] has abused his power and offered employment preferences for his unwanted advances." Ms. Strickland explained that Mr. Davis subjected her to unwanted advances, unreasonably interfered with her work assignments, and even proposed an unsavory quid pro quo proposal on her request for a promotion and raise.[2] Ms. Strickland also included you in her allegations.

With the approval of Chief Judge Gregory, I appointed Heather Beam to investigate Ms. Strickland's Report of Wrongful Conduct.[3]

---

[1] Ms. Strickland voluntarily withdrew her Chapter X claims on March 11, 2019, and they are not part of this letter of counseling.

[2] In an email dated May 18, 2018, and titled "Mas Dinero," Mr. Davis responded to Ms. Strickland's request:
   Dude, you're shooting high with a G15. Not least of all since you'll need 5 more years of fed
   service to qualify for it. But fret not, I have a plan . . . just remember I deal in pay-for-stay 😊

[3] Under Chapter IX of the Plan, "[t]he EDR Coordinator shall promptly inform the Chief Judge and unit executive of any report. The Chief Judge and/or unit executive shall ensure that the allegations in the report are appropriately investigated, either by the human resources manager or other person."

## II. The Investigator's Report

Following a painstaking investigation, Ms. Beam issued her Counselor's Report on November 19, 2018, later supplemented on January 11, 2019. In her report, Ms. Beam suggested that you "be counseled and trained on how to handle workplace conduct complaints. He should also be counseled or training [sic] on judgement and decisiveness." Ms. Beam explains:

> *For example, Caryn states when she initially brought her complaint to Mr. Martinez he compared her relationship with the First Assistant Defender as a marriage and asked her to compromise. He also made comments bade [sic] on Caryn's report such as "At least she was not touched" and called her out on contacting the AO to receive guidance on her civil rights as a federal employee. He also stated he was being blamed for something that was not his fault. It is evident this claim was mishandled from the beginning by Mr. Martinez and he would benefit greatly with additional training on workplace conduct as well as basic managerial/leadership skills.*

### A. Marriage Metaphor

On or around July 5, 2018, you met with Ms. Strickland and Mr. Davis to resolve a "breakdown in communications." Though well-intended, you had not abided by Ms. Strickland's wishes that she meet with you privately to discuss Mr. Davis's conduct. This made Ms. Strickland feel "uncomfortable" and "intimidated," having to confront the person she accused of sexually harassing her. She was also troubled by your characterization that this was a simple misunderstanding, feeling that you had trivialized the incident.

After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a "marriage," with the parties needing to "compromise" and "meet in the middle." Ms. Strickland said that she was "shocked" and "offended" at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a "marriage." The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her.

### B. No Physical Touching

You had a subsequent discussion with Ms. Strickland in which you attempted to clarify whether Mr. Davis had touched Ms. Strickland or had engaged in other inappropriate behavior. Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, "at least you weren't touched," or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt.

Anthony Martinez
May 28, 2019
Page 3

### C. Disapproval of Seeking Outside Advice

Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee. The investigator found that you had "called out" Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office.

### D. Shifting Responsibility

Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with. Ms. Strickland reported that she felt "offended" by your protest, which she perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office. This, the investigator concluded, contributed to your mishandling of the matter.

### E. Mitigating Factors

In mitigation, Investigator Beam found that you had acted expeditiously to accommodate Ms. Strickland's requests, except her request to be transferred to your Asheville Office. You had noted, however, that there was no physical space in that office to accommodate Ms. Strickland.

The investigator also found that you had acted in good faith in accommodating Ms. Strickland's request to telework, and you were flexible in other work assignments.

Finally, Ms. Strickland alleged that you had retaliated against her by denying merit-based promotional opportunities and by removing her locality pay. The investigator found that these allegations are without support.

### F. Conclusion

In conclusion, Investigator Beam reported that she did "not see a case for retaliation based on [her] investigation and the facts presented by both sides." The investigator also concluded that "Mrs. Devins has experienced in her mind sexual harassment although the facts discovered in this case find this claim to be very flimsy."

But the investigator did record the numerous missteps that you committed, which contributed to Ms. Strickland's perception of mistreatment and retaliation by you. These missteps appeared to have exacerbated the underlying situation, and they broke trust between you and Ms. Strickland. This was not helpful. But the investigator observed that most of your "decisions . . . were made at the end of a day where [you had] attended meetings all day and was tired." She found that your actions were not motivated by malice or ill-will, but rather were the result of poor judgment caused by fatigue.

Anthony Martinez
May 28, 2019
Page 4

Taking all of this into account, the investigator concluded that harsher discipline was not appropriate; instead, she recommended that you should be "counseled or train[ed] on judgement and decisiveness," in addition to be "counseled and trained on how to handle workplace conduct complaints."

### III. Chief Judge Gregory's Decision

Under Chapter IX of the Plan, "[e]mployees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan,[4] may be subject to disciplinary action." After careful consideration of the investigator's report, supporting attachments, and documents filed in this case – and noting the mitigating circumstances – Chief Judge Gregory has decided to adopt the recommendations contained in the report.

In addition to this letter of counseling, Chief Judge Gregory hopes that you will avail yourself of continual workplace conduct, decision-making, and leadership training opportunities. The Fourth Circuit's highest priority is to ensure a safe, civil, professional, and collegial workplace for all court employees, and it expects its managers and leaders to uphold the same standard. Anything less is unacceptable.

Chief Judge Gregory also wanted me to convey that the Fourth Circuit unequivocally stands behind you and your efforts to create a safe, civil, professional, and collegial work environment in your office. Therefore, if there is anything that I or my colleagues can do to support your efforts, please feel free to call upon me anytime.

Best regards,

cc: Honorable Roger L. Gregory

---

[4] Under Chapter II, section 1 of the Plan, "wrongful conduct" is defined:

> Discrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited. All of the above constitute "wrongful conduct."