# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S *MOTION IN LIMINE* TO EXCLUDE ANY AFTER-ACQUIRED EVIDENCE DEFENSE**

**INTRODUCTION**

In her recently filed Motion in Limine to Exclude Any After-Acquired Evidence Defense (ECF No. 282 ("Pl.'s Mot.")), Plaintiff recycles the very same arguments she raised in her opposition to Defendants' Motion for Summary Judgment. She once again claims that Defendants are seeking to assert the affirmative defense of after-acquired evidence and contends that this Court should follow other non-binding decisions in cases involving statutory claims, which hold that the defense must be affirmatively pled to bar certain forms of relief. Her argument reflects Plaintiff's continued misunderstanding of Defendants' position. Defendants are not raising an after-acquired evidence affirmative defense. Rather, the only relief Plaintiff could obtain is equitable and does not encompass specific remedies set forth by statute. Consequently, the Court can and should factor in Plaintiff's conduct when exercising its discretion to determine whether it would be equitable to award Plaintiff front pay in lieu of reinstatement, including the amount of front pay Plaintiff has requested.

In fact, as Defendants have previously explained, any award of front pay in lieu of reinstatement would not be equitable given Plaintiff's conduct—the full scope of which was only discovered during this litigation. *See, e.g*, Defs.' Mot. for Summ. J., ECF No. 245 at 12-14 ("Defs.'

1

MSJ") (explaining that Plaintiff's retention of privileged client information renders reinstatement, and thus front pay in lieu of reinstatement, inequitable and reserving the right to raise additional arguments against reinstatement after Plaintiff's re-opened deposition). For the reasons set forth below, Plaintiff's Motion should denied.

## BACKGROUND

During discovery, Defendants learned that Plaintiff had made dozens of secret recordings of her colleagues at the Federal Defender's Office for the Western District of North Carolina ("FDO") in addition to those she made of officials at the Fourth Circuit Court of Appeals (including a Federal Judge)[1], and then retained those recordings as well as other materials containing privileged client information without authorization to do so. *See* ECF No. 254-2 (listing over 40 recordings); ECF No. 245-25, Ex. A (listing over a dozen recordings and referencing 23 additional recordings that were withheld in full). The privilege logs Plaintiff provided list recordings of many meetings which, according to Plaintiff's accompanying letter, "do not contain any information relevant to this litigation" and are "not relevant to any claim or defense[.]" *See* ECF No. 254-2 at 3. It is only through these logs that Defendants learned the full scope of Plaintiff's recordings at the FDO, which went well beyond the prior recordings that she relied on during her EDR proceeding.

Plaintiff now seeks to bar Defendants from using this evidence of her conduct to show that certain remedies Plaintiff seeks, including front pay in lieu of reinstatement, would be inequitable under these circumstances. For the reasons set forth below, Defendants' use of this evidence is proper, and Plaintiff's motion in limine should be denied.

## LEGAL STANDARD

"The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance

---

[1] *See* ECF No. 254-2 at 4, Row 4.

of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the [factfinder] will consider." *Baumel v. Barber Power L. Grp., PLLC*, 2023 WL 6121001, at *1 (W.D.N.C. Sept. 18, 2023) (quoting *Moke Am. LLC v. Am. Custom Golf Cars, Inc.*, 2023 WL 3686963, at *1 (E.D. Va. Jan. 11, 2023)). A motion in limine to exclude evidence should be granted only when the evidence is clearly inadmissible on all potential grounds. *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 5439156, at *1 (E.D.N.C. Nov. 8, 2011). Ultimately, the decision lies within the district court's "broad discretion". *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012).

I. **Plaintiff's conduct is a relevant factor in the Court's exercise of its discretion to fashion equitable remedies.**

Plaintiff contends that the Court cannot consider her conduct in fashioning equitable remedies in this case because Defendants did not plead an after-acquired evidence defense. But as Defendants have explained extensively in prior briefing, *e.g.*, Defs.' Reply in Supp. of their Mot. for Summ. J., ECF No. 254 at 23 ("Defs.' MSJ Reply"), because Plaintiff brings only constitutional claims, any remedy to which she may be entitled can only be "equitable" in nature. *Id.* (quoting *Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022)). And while front pay, as the Fourth Circuit held, can sometimes constitute prospective equitable relief under the *Larson-Dugan* exception, *id.*, it would not be equitable to award such relief here because Plaintiff's course of conduct has been inconsistent with the obligations of an FDO employee. Despite Plaintiff's arguments to the contrary, "the Supreme Court has emphasized that a district court's authority to award and fashion equitable relief is 'necessarily broad and a strong showing of abuse must be made to reverse it.'" *Porter v. Clarke*, 923 F.3d 348, 364 (4th Cir. 2019), *as amended* (May 6, 2019) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Here, the Court can and should consider Plaintiff's conduct in determining whether it would be equitable to award any front pay in lieu of reinstatement, and if so, in determining how much front pay to award her. Put simply, if, as Defendants contend (*see infra* Part II), Plaintiff is ineligible for reinstatement because of her actions, she likewise is ineligible for front pay in lieu of reinstatement.

3

Plaintiff cites many non-binding decisions where courts have held that the after-acquired evidence defense must be affirmatively pled or else it is waived. *See* Pl.'s Mot. at 8-14. But the cases Plaintiff cites are irrelevant because they all involve the use of the defense in cases involving statutory claims, where monetary relief, like front pay, back pay, punitive damages, and compensatory damages, are often available as a matter of course. *See, e.g.*, *Rinaldi v. CCX, Inc.*, No. 3:05-cv-108-RJC, 2009 WL 412966, at *8 (W.D.N.C. Feb. 18, 2009) (ERISA case), *aff'd in part and rev'd in part*, 388 F. App'x 290, 295 (4th Cir. 2010) (collecting cases applying the doctrine, all of which involved different statutory claims where monetary relief is an available remedy as a matter of course); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1232 (4th Cir. 1995) (Title VII case); *Nzabandora v. Univ. of Va. Health Sys.*, 2017 WL 4230514, at *1 (W.D. Va. Sept. 22, 2017) (Title VII case); *Pennell v. Vacation Rsrv. Ctr., LLC*, 783 F. Supp. 2d 819, 821 (E.D. Va. 2011) (Americans with Disabilities Act case); *Bello v. United Pan Am Fin. Corp.*, 2022 WL 17324441, at *4 (D.N.J. Nov. 29, 2022), *reconsideration denied*, 2023 WL 4627814 (D.N.J. July 19, 2023), and *reconsideration denied*, 2023 WL 5447285 (D.N.J. Aug. 24, 2023) (diversity jurisdiction case involving disability discrimination and retaliation under New Jersey Law Against Discrimination); *Murphy v. Trader Joe's*, 2017 WL 235193, at *1 (N.D. Cal. Jan. 19, 2017) (private sector case not involving constitutional claims); *EEOC v. BOK Fin. Corp.*, 995 F. Supp. 2d 1251, 1252 (D.N.M. 2014) (Title VII and ADEA case); *Miranda v. Deloitte LLP*, 962 F. Supp. 2d 379, 384 (D.P.R. 2013) (private sector case involving statutory discrimination claims); *Stubbs v. Regents of Univ. of Cal.*, 2007 WL 1532148, at *1 (E.D. Cal. May 25, 2007) (ADA and Title VII case); *Santos v. Boeing Co.*, No. 02 C 9310, 2004 WL 2005817, at *1 (N.D. Ill. Sept. 2, 2004) (Title VII, FLSA, and Section 1981 case); *Red Deer v. Cherokee Cnty.*, 183 F.R.D. 642, 647–48 (N.D. Iowa 1999) (Title VII and ADEA case).

These cases stand in contrast to the issue before the Court here, where the Plaintiff seeks millions of dollars as an "equitable" remedy for alleged constitutional violations. Defendants are not aware of any case, nor has Plaintiff cited any, in which a court has held that factors weighing against

4

a requested equitable remedy must be affirmatively pled in a case involving constitutional claims. That lack of case law is unsurprising. Unlike in statutory cases where the defense works as an absolute bar to certain types of relief that a prevailing plaintiff might otherwise be entitled to by statute, in cases where only equitable relief is available, courts have considerable discretion to determine the appropriate relief. *See, e.g.*, *Smith v. Bounds*, 813 F.2d 1299, 1301 (4th Cir. 1987), *on reh'g*, 841 F.2d 77 (4th Cir. 1988) ("A district court enjoys wide discretionary authority in formulating remedies for constitutional violations."); *Porter*, 923 F.3d at 364 (affirming the principle that a district court has broad "authority to award and fashion equitable relief" based on Supreme Court precedent in Eighth Amendment suit involving equitable relief only). In short, the Court can and should consider Plaintiff's conduct in determining in its discretion what would constitute "equitable" relief under the circumstances of this case. *Strickland*, 32 F.4th at 366. And because Plaintiff has not shown that this evidence is "clearly inadmissible" for this purpose, her motion in limine should be denied. *Silicon Knights*, 2011 WL 5439156, at *1.

## II.     Plaintiff's conduct is problematic and should be considered in fashioning equitable relief.

Plaintiff spends the bulk of her Motion trying to explain that, although she admittedly made dozens[2] of secret recordings of her co-workers and then retained those recordings along with additional materials containing privileged client information from the FDO, doing so was not a violation of FDO policy or otherwise inappropriate because she sought to use these materials for her EDR process. This is the same argument Plaintiff made in her opposition to Defendants' summary judgment motion, and the argument is as incorrect now as it was then. *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 250 at 6-9 ("Pl.'s MSJ Opp'n").

### A.  Plaintiff's unauthorized retention of privileged client information is not protected activity.

---

[2] *See* ECF No. 254-2 (listing over 40 recordings); ECF No. 245-25, Ex. A (listing over a dozen recordings, plus an additional 23 recordings that were withheld in full).

5

To begin, as Defendants have previously explained, Plaintiff's pattern of conduct went well beyond the scope of the policies that Plaintiff seeks to use as a shield. *See* Defs.' MSJ Reply at 22-23. Setting aside whether it was permissible for Plaintiff to make dozens of secret recordings of her colleagues without their consent, it is undisputed that Plaintiff retained those secret recordings as well as other material containing privileged client information without authorization, even after she voluntarily resigned from the FDO and ended her EDR process in March 2019. *See* Tr. of Strickland Dep. (Apr. 25, 2023), ECF No. 245-7 at 135:4-13, 151:18-152:1. Plaintiff now contends that her unauthorized retention of this privileged client information is "protected activity" under The Code of Conduct for Federal Public Defender Employees and the FDO's EDR Plan. Not so.

The Code of Conduct on which Plaintiff relies recognizes only that the "general restriction on use or disclosure of confidential information does not prevent, nor should it discourage, an employee or former employee from reporting or disclosing misconduct, including sexual or other forms of harassment[.]" Code of Conduct Canon 3(D)(3), ECF No. 250-2 at 5 (Ex. U). Noticeably absent from that canon is any allowance for an employee who has *already* reported or disclosed misconduct to continue to retain that privileged client information indefinitely without authorization to do so and in arguable contravention of other FDO policies. *See id.* Put differently, even if it was permissible for Plaintiff to secretly record meetings discussing privileged client matters and to disclose some of those recordings when she first reported and disclosed alleged misconduct during the EDR process, nothing in this policy sanctions Plaintiff's retention of that information at this late date, nearly four years after she voluntarily ended the EDR process. *See* ECF No. 245-24 (Plaintiff's email to James Ishida withdrawing her EDR complaint). In fact, it is impossible to reconcile Plaintiff's continued retention of recordings with the FDO policy given her position in her privilege logs that they "do not contain any information relevant to this litigation." *See* ECF No. 254-2 at 3.

The FDO's EDR Plan does not provide cover for Plaintiff's conduct, either. The provision Plaintiff relies on affirms only that materials used during an EDR process may "necessarily contain[] or refer[] to attorney-client or work-product privileged information inherently involved in the Complaint, hearing, or resolution process." *See* ECF No. 250-3 § VI(E) at 15 (Ex. V). Defendants do

6

not dispute that this provision applied to Plaintiff's EDR process or that it may have been permissible for privileged information to be used during the EDR proceedings, but that process has been over since March 2019, *see* ECF No. 245-24, and there is nothing in this provision that even suggests employees have the right to remove privileged client information from the FDO after their departure—let alone to retain this information indefinitely as Plaintiff has done. In short, neither of the two policies Plaintiff relies on allow for the unauthorized retention of materials containing privileged client information after an employee has ended the EDR process and departed the FDO.

Seeking additional cover for her actions beyond these two policies, Plaintiff further contends that her removal of these materials is "protected activity" under Fourth Circuit case law. The case she relies on, *Glover v. South Carolina Law Enforcement Division*, addressed whether a witness in a Title VII matter could be fired for "unreasonable" deposition testimony that demonstrated "poor judgment" and maligned her employer unnecessarily. 170 F.3d 411, 413-14 (4th Cir. 1999). Under a plain text reading of Title VII, the Fourth Circuit concluded that "all testimony in a Title VII proceeding is protected against putative employer action", even if that testimony is unreasonable. *Id.* at 414. In her motion, Plaintiff argues that this case shows her decision to retain these secret recordings and other materials containing privileged client information—without authorization—was "reasonable and protected" to "preserv[e] evidence" and protect "against perjury by others". *See* Pl.'s Mot. at 21.

The holding in *Glover* is inapposite, however, for three reasons. First, as explained above, unlike deposition testimony during a Title VII proceeding, Plaintiff's retention of the secret recordings and other materials containing privileged client information after the end of her EDR process is not protected activity. In fact, given that the recordings concern privileged information from her *clients'* cases, it is entirely unclear how her unauthorized retention could be necessary to preserve evidence or prevent perjury. To the contrary, even if Plaintiff had returned the privileged client information to the FDO, she would have had access to any information concerning this lawsuit through the ordinary course of discovery. The bottom line is that there was nothing "protected" or "reasonable" about Plaintiff's unauthorized removal and retention of materials containing privileged client information. Second, this is not a Title VII case, so the "exceptionally broad" statutory protections of Title VII for

7

testimony discussed in the *Glover* decision have no bearing on Plaintiff's non-testimonial conduct here. 170 F.3d at 414. Third, unlike the employer in *Glover*, Defendants have not retaliated against Plaintiff for this allegedly protected activity. Defendants are simply raising the issue that Plaintiff's unauthorized retention of privileged client information is a factor the Court can and should consider in its broad "authority to award and fashion equitable relief" if this case reaches the remedies stage. *Porter*, 923 F.3d at 364. Although Plaintiff may disagree with Defendants' legal argument on the merits, a legal argument in a brief is plainly not the same thing as a retaliatory employer action.

Without any policy or case law to support her position, Plaintiff next turns to an ABA opinion that concludes secret recordings are not inherently deceitful. *See* Pl.'s Mot. at 21-22. But that opinion addresses only whether recordings are permissible under the model rules and has no bearing on FDO policy concerning the removal of materials containing privileged client information. In any event, the current Federal Defender has determined that Plaintiff would be ineligible for reinstatement because her conduct arguably violates several provisions of the FDO manual. *See* Defs.' MSJ at 12-13.

### B. Defendants raised legitimate concerns under the Federal Records Act about the materials Plaintiff retained without authorization.

Defendants previously explained that Plaintiff's conduct may also violate the Federal Records Act, which Plaintiff did not meaningfully contest during summary judgment briefing. *See* ECF No. 250 at 6-9 (arguing only that the use of the materials during ongoing EDR proceedings was permissible and failing to address the Federal Records Act issue). The Federal Records Act broadly defines a "record" as "all recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]" *See* 44 U.S.C. § 3301(a)(1)(A). Despite this broad definition, Plaintiff now contends that the Federal Records Act does not apply to the privileged materials she retained because they allegedly are

8

"client case files." Pl.'s Mot. at 22-23. But at least some, if not all, of the materials she retained, such as recordings of staff meetings, do not qualify as client case files. Further, the document Plaintiff cites explains that "[c]lient case files are the client's property[.] . . . The case file belongs to the client and is held in trust by the attorney." *See* U.S. Courts Guide to Judiciary Policy, Vol. 10, Ch. 6, Appx. 6C, available at https://www.uscourts.gov/sites/default/files/vol10-ch06-appx6c.pdf. If Plaintiff is suggesting that she retained client case files that belong to the client, that would raise additional concerns regarding her conduct that would be appropriate for the Court to consider at the remedies stage.[3] Indeed, Plaintiff's removal of privileged client information already raises serious questions about whether she violated FDO policy. *See* ECF No. 245-25 at 57, Employee Handbook, § 5.18. ("The removal of any document from the Defender's Office, except for official, authorized use, is also prohibited.").

### C. Plaintiff's recently re-opened deposition provides an additional basis to bar or limit any award of front pay here.

Plaintiff's motion addresses the dozens of recordings Plaintiff made while at the FDO and her retention of those recordings and other materials containing privileged client information after her resignation, but it does not address the subject of her testimony at her re-opened deposition on October 12, 2023. *See generally* Pl.'s Mot. Defendants thus do not read Plaintiff's present motion as seeking to exclude the introduction of this newly uncovered evidence that █████████████

---

[3] Plaintiff also discusses the Privacy Act in her motion, Pl.'s Mot. at 23, but Defendants did not suggest Plaintiff violated the Privacy Act. Rather, Defendants referenced that law in a parenthetical because it was mentioned on NARA's webpage explaining how the Federal Records Act applies to departing employees. Defs.' MSJ at 12 n.3. As Defendants previously explained, that webpage explains that employees cannot remove federal records when they depart federal service without authorization to do so. *See* National Archives, Federal Records Management, *What Do Government Employees Need to Do When Leaving Federal Service?*, available at https://www.archives.gov/records-mgmt/publications/documenting-your-public-service.html (explaining that departing employees may only take copies of federal records that are already publicly available, subject to each agency's review and approval).

9

███████████████████████████████████████.[4] In any event, this evidence is plainly relevant to this litigation, as Defendants have repeatedly explained. *See* ECF No. 276 at 4; ECF No. 219 at 8-9. In fact, this Court has twice recognized the relevance of this information because it has twice denied Plaintiff's motion for a protective order seeking to bar the re-opened deposition on the grounds that it was not relevant. *See* Order, ECF No. 233 at 2 (allowing for the re-opening of Plaintiff's deposition); ECF No. 286 at 1 (denying her renewed motion for a protective order as raising grounds that are "obscure at best"). Further, Defendants' use of this evidence is timely because Plaintiff's re-opened deposition took place just last week. *E.g.*, *Sellers v. Mineta*, 358 F.3d 1058, 1060-61 (8th Cir. 2004) ("Even if the after-acquired evidence theory . . . is an affirmative defense that must be pleaded . . . clearly the Secretary cannot be expected to raise the defense in an answer filed over two years prior to the events giving rise to the defense").

Defendants will accordingly address any motion in limine seeking to exclude this newly obtained evidence at the appropriate juncture.

****

For the reasons set forth above, evidence of Plaintiff's conduct has clear relevance to this litigation. And although Plaintiff may not agree with the weight this Court should give that evidence, Plaintiff has not met her burden to show that the evidence she seeks to exclude "is clearly inadmissible on all potential grounds." *See Silicon Knights*, 2011 WL 5439156, at *1.

### III. Plaintiff had fair notice of Defendants' equity argument.

Plaintiff contends in her motion that "Defendants have deprived Plaintiff of notice of the basis for an affirmative defense and an opportunity to respond." Pl.'s Mot. at 14. But allowing

---

[4] Defendants are filing this Opposition with redactions because Plaintiff still maintains that portions of her deposition testimony referenced herein are privileged and confidential. Defendants disagree, and they have initiated the process under the Court's January 20, 2023 Protective Order to challenge Plaintiff's confidentiality designation. *See* ECF No. 183, at 9-10. That process requires a one-week meet and confer period. *Id.* Defendants intend to promptly file a written notice challenging the confidentiality designation if Plaintiff does not withdraw that designation, and Defendants will likewise seek to file an unredacted copy of this Opposition.

Defendants to make this argument in equity is appropriate and will not cause prejudice to Plaintiff as she had ample notice.

With respect to Plaintiff's retention of recordings and other materials containing privileged client information after she left the FDO, Defendants did not know the full scope of Plaintiff's conduct until they received her privilege logs about these materials—just weeks before the close of discovery. *See* ECF No. 254-2 (listing over 40 recordings); ECF No. 245-25, Ex. A (listing over a dozen recordings as well as 23 additional recordings that were withheld in full). Those logs demonstrated for the first time the breadth and scope of Plaintiff's recording practices, which did not just include a handful of meetings with the parties involved in her EDR complaint, but many other recordings, including all staff meetings that, according to the letter accompanying Plaintiff's own privilege log, "do not contain any information relevant to this litigation" and are "not relevant to any claim or defense[.]" *See* ECF No. 254-2 at 3.

By contrast, Plaintiff has known about the full extent of her own recording practices for years—so there is no "surprise" to her.[5] In fact, contrary to Plaintiff's assertion that Defendants are engaging "in a subsequent belated attempt to modify the pretrial order", *see* Pl.'s Mot. at 9, Defendants have raised this equity argument multiple times, and Plaintiff has had the opportunity to respond. For example, Defendants raised this issue in their summary judgment briefing in June 2023, *see* Defs.' MSJ

---

[5] With respect to the topic addressed during Plaintiff's re-opened deposition last week, Defendants did not even learn of the basis to re-open her deposition until the week before discovery closed. Even so, Defendants have repeatedly alerted Plaintiff and this Court that, depending on the facts uncovered at Plaintiff's re-opened deposition, Defendants may raise additional arguments about how that conduct should be considered a bar to, or at least a limit on, any award of equitable relief. *See* Defs.' MSJ at 13 n.4 ("Defendants reserve the right to make the argument that Plaintiff is ineligible for reinstatement and front pay because of the recordings referenced in the Court's recent favorable ruling on Defendants' Motion to Strike, ECF No. 233, once Defendants have completed additional discovery on this topic."); *see also* ECF No. 259 at 99 (raising that Plaintiff's conduct—not just the recordings she made at the FDO—may render reinstatement or an award of front pay in lieu of reinstatement inequitable).

at 12-14, Defs.' MSJ Reply at 22-23, and Plaintiff responded, *see* Pl.'s MSJ Opp'n at 6-9. Defendants also raised it again in the parties' joint pre-trial filing as an issue of law: "Whether Ms. Strickland's conduct renders an award of reinstatement or front pay in lieu of reinstatement inequitable. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361–62 (1995)." Joint Pretrial Filing, ECF No. 259 at 99. Contrary to Plaintiff's assertion then, Defendants have not waived this issue by failing to assert it because they have repeatedly and plainly raised this issue in multiple filings, including in the parties' joint pretrial filing. *Cf., McLean Contracting Co. v. Waterman S.S. Corp.*, 277 F.3d 477, 480 (4th Cir. 2002) ("Failure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried.").

Plaintiff next argues that she lacked notice because Defendants were required to produce evidence about this defense during discovery and that their argument should be barred as a result. *See* Pl.'s Mot. at 18-19. Defendants' objections to Plaintiff's discovery requests were proper, and to the extent Plaintiff was dissatisfied with those responses, she should have filed a motion to compel during the fact discovery period, which closed on May 1, 2023. *See* Revised Discovery Schedule, ECF No. 187 at 1. It is thus too late for her to raise objections that Defendants' discovery responses are inadequate now. Even so, it is Plaintiff, not Defendants, who possessed the relevant information about the recordings, including the recordings that Plaintiff refused to produce to Defendants. *See* ECF No. 254-2 (listing over a dozen recordings that were withheld in full). And with respect to the current Federal Defender, Defendants did not list him on their witness list and do not intend to call him at trial, so the exact nature of Plaintiff's objection is unclear.

In sum, Plaintiff had ample notice of Defendants' equity argument regarding Plaintiff's unauthorized retention of recordings and other materials containing privileged client information. And although Plaintiff is now apparently dissatisfied with Defendants' discovery responses and claims she lacked fair notice as a result, those objections come far too late. Plaintiff has failed to meet her burden

of showing that this recording evidence is "clearly inadmissible on all potential grounds", and her motion in limine should accordingly be denied. *Silicon Knights, Inc.*, 2011 WL 5439156, at *1.

## CONCLUSION

For these reasons, Plaintiff's motion in limine should be denied.

Dated: October 16, 2023

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

JOSHUA KOLSKY
Senior Trial Counsel

*/s/ Danielle Young*
DANIELLE YOUNG (TX Bar 24098649)
MADELINE MCMAHON
Trial Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20001
Tel.: (202) 616-2035
Email: Danielle.young2@usdoj.gov

*Counsel for Defendants*