IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS' EXPERT WITNESSES**

Despite graduating with honors from Duke University School of Law and clerking for multiple federal judges, Plaintiff claims that she will never find employment comparable to her former position at the Federal Defender's Office for the Western District of North Carolina ("FDO"), and as a result, Defendants should pay her more than three million dollars in front pay. Two expert witnesses, Mr. Robert Jackson and Dr. Paul White, have submitted reports demonstrating that Plaintiff is capable of earning just as much as—if not more than—what she earned at the FDO in the near future, and therefore, any lost earnings would be far lower than the staggering sum she seeks. Mr. Jackson, a vocational expert, examined Plaintiff's credentials and employment history and concluded that her earnings capacity is significantly higher than the $44,410 she is currently making as a self-employed indigent criminal defense attorney. Dr. White, an economist, analyzed various scenarios in which Plaintiff finds comparable employment to the FDO in the near future and concluded that her economic loss does not come close to the millions she claims she is owed. At trial, both Mr. Jackson and Dr. White will explain the bases for these opinions and establish that Plaintiff should not receive any front pay at all, let alone the enormous amount that she believes she is entitled to.

1

In her Motion in Limine to Preclude Defendants' Expert Witnesses and to Strike Defendants' Expert Witnesses from Defendants' Trial Witness List ("Mot."), ECF No. 285, Plaintiff contends that Mr. Jackson and Dr. White should be excluded on two grounds. First, she claims that both experts' testimony is irrelevant because Defendants' answer does not plead the affirmative defense of failure to mitigate. But at issue in this case is the equitable remedy of front pay, which allows the Court to have broad discretion in fashioning the scope of appropriate relief. Such equitable relief requires that the Court weigh a number of factors, including whether Plaintiff can find comparable employment, how long it would take for Plaintiff to do so, and whether Plaintiff would be able to offset any loss of earnings in the future. The opinions of both Mr. Jackson and Dr. White bear directly on these factors, and are thus highly relevant to the Court's front pay analysis. Indeed, their opinions are directly responsive to the purported expert testimony that Plaintiff herself intends to offer on these same issues.

Second, Plaintiff argues that these experts should be excluded because Defendants made untimely expert disclosures. This argument likewise has no merit. Defendants made all appropriate expert disclosures and document productions in accordance with the Federal Rules of Civil Procedure and the orders of this Court. Accordingly, for the reasons set forth below, Plaintiff's motion should be denied.

**LEGAL STANDARD**

"The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the [factfinder] will consider." *Baumel v. Barber Power L. Grp., PLLC*, 2023 WL 6121001, at *1 (W.D.N.C. Sept. 18, 2023) (quoting *Moke Am. LLC v. Am. Custom Golf Cars, Inc.*, 2023 WL 3686963, at *1 (E.D. Va. Jan. 11, 2023)). "A motion in limine to exclude evidence should be granted only when the evidence is clearly inadmissible on all potential grounds." *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL

5439156, at *1 (E.D.N.C. Nov. 8, 2011). Ultimately, the decision lies within the district court's "broad discretion." *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012).

**ARGUMENT**

**I.    Defendants' Experts Are Relevant to the Front Pay Analysis in This Case.**

Plaintiff argues that the opinions of Mr. Jackson and Dr. White should be excluded because their reports "exclusively" relate to the affirmative defense of failure to mitigate, which Defendants did not include in their answer. Mot. at 2-6. This argument is without merit.

As Defendants have explained, *see, e.g.*, Defs.' Reply in Supp. of Their Mot. for Summ. J. at 23, ECF No. 254, because Plaintiff brings only constitutional claims in this case, any front pay remedy in this case must be "equitable" in nature. *Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022). If this case proceeds to a remedy phase, the Court must therefore use its discretion to determine whether and how much front pay—defined as the "loss of future income"—would be equitable. *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1416, 1423 (4th Cir. 1991); *see also Dotson v. Pfizer, Inc.*, 558 F.3d 284, 300 (4th Cir. 2009) ("Determinations of front pay are made by the trial court sitting in equity."); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998) (remanding for judge to consider front pay in equity). Both Mr. Jackson and Dr. White offer opinions about whether Plaintiff would suffer any future loss in earnings as a result of her separation from the FDO and, if so, how much that loss would be. That is directly relevant to the Court's analysis of Plaintiff's potential "loss of future income." *Duke*, 928 F.2d at 1416.

Moreover, when calculating how much front pay should be awarded, the Fourth Circuit has explained that courts should examine "all the circumstances existing at the time of trial," *id.* at 1423, as "[t]here is no bright line test for awarding front pay," *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 562 (4th Cir. 2018) (citations omitted). *See also Duke*, 928 F.2d at 1424 (Front pay is not "susceptible to legal standards for awarding damages."). The Fourth Circuit has repeatedly emphasized

3

that "because of the 'speculative' nature of front-pay awards and 'the potential for windfall,' the use of front pay 'must be tempered.'" *Hunter*, 897 F.3d at 562 (quoting *Duke*, 928 F.2d at 1423-24). To temper such an inherently speculative remedy, courts commonly consider factors such as:

> "the plaintiff's age; the length of plaintiff's employment with the defendant-employer; the likelihood that plaintiff's employment would have continued absent the discrimination; the length of time it would take plaintiff to secure comparable employment using reasonable efforts; plaintiff's work and life expectancy; the typical length of time other employees held the position lost; plaintiff's status as an at-will employee; plaintiff's ability to work, including the ability to work for the defendant-employer; plaintiff's subjective intention to remain in the position; and plaintiff's efforts to mitigate damages." 897 F.3d at 563 (citation omitted).

The opinions of Mr. Jackson and Dr. White touch on a number of these factors. As a vocational expert, Mr. Jackson's report centers on Plaintiff's "employability and earnings capacity issues." Mot. Ex. A ("Report of Robert W. Jackson") at 2,[1] ECF No. 285-1. He opines that, given Plaintiff's background and credentials, she is "capable of earnings comparable to and even exceeding her Assistant Public Defender salary." *Id.* at 4. He draws on his knowledge as a vocational expert to explain that the average duration of unemployment is 20.9 weeks. *Id.* at 4. Mr. Jackson concludes that "[i]t is reasonable to presume [Plaintiff] would be able to find employment as an attorney with earnings comparable to or exceeding her former Assistant Public Defender salary within this timeframe[.]" *Id.* at 4-5. These observations are directly relevant to the length of time it would take Plaintiff to secure comparable employment using reasonable efforts, Plaintiff's work expectancy at her current position, Plaintiff's current employment status, and Plaintiff's ability to work. *See Hunter*, 897 F.3d at 563; *see also Dotson*, 558 F.3d at 300 (upholding denial of front pay when district court "refuse[d] to assume that [the plaintiff] would never earn a salary comparable to what he made at [the defendant-employer], given his relative youth and education level").

---

[1] For ease of reference, Defendants use the ECF page numbers for citations.

4

Dr. White's report addresses how the Court should calculate any front pay that Plaintiff may be owed. First, Dr. White explains why the assumptions that Plaintiff's own economic expert made to determine her lifetime earnings in her current position are flawed. Mot. Ex. B ("Report of Paul F. White") at 5-8, ECF No. 285-2. He points out that Plaintiff's expert does not account for "any probability that the Plaintiff would have ended her FDO employment for any voluntary or involuntary reason prior to the year 2055," *id.* at 6, or "Plaintiff's earnings capacity when estimating her mitigating earnings" in the future, *id.* at 7. Then, Dr. White explains that because Plaintiff could reasonably obtain employment earning income comparable to what she received at the FDO after 20.9 weeks, her earnings loss would amount to $46,675. *Id.* at 9. Dr. White also offers an alternative scenario in which Plaintiff could reach her prior earnings level at the FDO after six years—the same length of time it took her to reach that earnings level after graduating from law school in 2013. *Id.* at 9-10. Dr. White's analyses of these different scenarios will aid the Court in evaluating how much front pay, if any, Plaintiff may be owed when considering various factors such as the length of time it would take her to secure comparable employment, her work expectancy at her current position, and her current employment status. *See Hunter*, 897 F.3d at 563.

Further, contrary to Plaintiff's arguments, neither expert directly opines about what steps Plaintiff has taken to mitigate her earnings loss—for example, neither discusses how many jobs Plaintiff applied to after leaving the FDO or whether any of those jobs would be considered "comparable work." *See Vega v. Chicago Park Dist.*, 351 F. Supp. 3d 1078, 1088 (N.D. Ill. 2018), *aff'd*, 954 F.3d 996 (7th Cir. 2020) (describing the elements of a failure to mitigate affirmative defense). In any event, Plaintiff is wrong to assert that the Court may not consider *any* aspect of Plaintiff's mitigation efforts simply because Defendants' answer does not include the affirmative defense of failure to mitigate. As noted, "[d]eterminations of front pay are made by the trial court sitting in equity." *Dotson*, 558 F.3d at 300. When deciding an award of front pay as a matter of equity, a judge

5

may consider "the plaintiff's efforts to mitigate damages," *Hunter*, 897 F.3d at 563, even when the defendant has not invoked an affirmative defense of failure to mitigate. In *Starr v. QuikTrip Corp.*, the court permitted the defendant to introduce evidence of the plaintiff's failure to mitigate damages for its front pay analysis, even though the defendant had not pleaded mitigation as an affirmative defense. 2016 WL 10340224, at *2 (N.D. Okla. Nov. 22, 2016). As the court there explained, "a plaintiff's failure to mitigate is inherently relevant to the court's consideration of an equitable award of front pay." *Id.* at 1. "In calculating the size of a front-pay award the court must estimate the plaintiff's ability to mitigate damages in the future," *Dominic v. Consolidated Edison Co. of New York*, 822 F.2d 1249, 1258 (2d Cir. 1987), and both Mr. Jackson and Dr. White offer opinions that would aid the court in making this estimation. It is thus appropriate for the Court to consider their opinions when it decides how much front pay Plaintiff may be owed. *See Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985) ("The plaintiff's duty to mitigate damages should serve as an effective control on unjustified damage awards."); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984) ("[A]n award of front pay in lieu of reinstatement does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing, because the duty to mitigate damages by seeking employment elsewhere significantly limits the amount of front pay available.").

Plaintiff separately takes issue with the substance of both experts' reports, faulting them for purportedly "misappl[ying] relevant legal standards." Mot. at 4-6. However, it is not an expert's role to apply legal standards—rather, the role of the expert is to aid the factfinder by offering opinions about their specialized knowledge. *See* Fed. R. Evid. 702; *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."). And, indeed, the reports of Mr. Jackson and Dr. White do not contain or otherwise address legal standards. Moreover, Plaintiff misapprehends the relevant legal standards. In *United States Equal Employment Opportunity Commission v. Consol Energy, Inc.*, the plaintiff, a

6

coal miner, accepted a lower-paying construction job after "an extended period of time searching for work without success," including "search[ing] for mining jobs at UMWA mines, attend[ing] job fairs in the mining industry . . . and appl[ying] for a mining job[.]" 860 F.3d 131, 148-49 (4th Cir. 2017) (citations omitted). Plaintiff has completed no comparable job search without success. *See Quint v. A.E. Staley Manufacturing Co.*, 172 F.3d 1, 16 (1st Cir. 1999) (holding that the plaintiff's "utter failure to mitigate" warranted a significant reduction in back pay, despite the fact that the defendant "did not "attempt to prove that substantially equivalent jobs existed during the relevant time period"). While Plaintiff contends that courts examine whether "there were substantially equivalent jobs available in the relevant geographic area," Mot. at 4, they typically look at the geographic area where the *former employer* was located, not the area where the plaintiff has since relocated. *See Lundy Packing Co. v. NLRB*, 856 F.2d 627, 629 (4th Cir. 1988). Since separating from the FDO, Plaintiff has chosen to move away from the metropolitan area of Charlotte to the rural town of Tryon, N.C., which with a population of 1,562[2] has far fewer legal employment opportunities. And despite Plaintiff's assertion that the front pay analysis should not consider whether she could find employment in a more lucrative position, she cites to no case holding as much. *See Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995) (stating, in dicta, the definition of front pay as the "difference (after proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future in his next best employment"). She is also wrong as a matter of logic: Plaintiff's ability to secure a job with a *higher* salary than her position at the FDO position in the future would certainly decrease any future loss of earnings, and would thus be relevant to how much front pay she may be owed.

---

[2] United States Census Bureau, Total Population in Tyron Town, North Carolina, *available at* https://perma.cc/9VBD-4J79.

In sum, the expert reports and opinions of Mr. Jackson and Dr. White are relevant to the issue of front pay, and any testimony on Plaintiff's ability to locate alternative employment in the future can and should be considered by this Court. Accordingly, the Court should not exclude Defendants' experts on this basis.

## II. Defendants Have Complied With All Expert Disclosure Requirements.

Plaintiff's next argument—that Defendants did not make their expert disclosures in a timely manner, Mot. at 7-11—also falls short. Pursuant to this Court's order, Defendants timely served their expert disclosures on Plaintiff on June 1, 2023. *See* Order, ECF No. 187 (setting a June 1 deadline to serve expert disclosures). Defendants' disclosures also complied with Federal Rule of Civil Procedure 26(a)(2), providing the identities of their two expert witnesses and their written reports, which include their opinions, the bases and reasons for them, the facts or data that support them, exhibits used to support them, their qualifications, lists of cases in which they testified previously, and statements of their compensation to be paid. *See* Report of Robert W. Jackson; Report of Paul F. White.

Plaintiff appears to confuse what parties are required to disclose under Rule 26(a)(2) with document productions relating to the experts. Defendants did make a document production on September 27, 2023 that contained additional materials, such as their attorneys' communications with their experts, but these materials are not part of the expert disclosures required by Rule 26(a)(2). Rather, they were produced in response to a Rule 34 document request that Plaintiff served for various documents relating to Defendants' experts, and they included documents that were created after June 1. The production included, for example, emails between Defendants' counsel and the experts, contracts with the experts, and invoices.[3] Notably, despite receiving a Rule 34 document request seeking substantially similar documents relating to Plaintiff's experts, Plaintiff herself has not

---

[3] Defendants plan to produce, prior to trial, additional responsive documents, such as new invoices from the experts, as these documents are continuing to be generated.

8

produced any "communications with [her] experts regarding the bases for their opinions," or "information regarding payment of [her] experts," *see* Mot. at 8, in response to that request.[4]

Plaintiff also seems to argue that Rule 26(e) required Defendants to supplement their expert disclosures with their document production. *Id.* But Defendants had no obligation to supplement their experts' reports, because their experts did not change their reports from those disclosed on June 1. By contrast, Plaintiff was obligated under Rule 26(e) to supplement her expert disclosures because her expert, Dr. Albrecht, changed his report on July 19, 2023. Defendants took Dr. Albrecht's deposition two days earlier, on July 17, 2023, and during that deposition, Dr. Albrecht admitted that the expert report that Plaintiff initially disclosed to Defendants was inaccurate. *See* Ex. 1, Albrecht Depo. at 94:24-95:18 (testifying that all the calculations and tables in the original March report are incorrect). Indeed, Plaintiff did not serve Defendants with the updated report until July 20, 2023—three days after Dr. Albrecht's deposition. If anything, Defendants have been prejudiced by Plaintiff's failure to timely supplement her own expert disclosures. *See Berryman-Dages v. City of Gainesville*, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012) ("Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question.").

Plaintiff next contends that Defendants were obligated to respond to Plaintiff's document request seeking expert information by the close of fact discovery on May 1, 2023. *See* Mot. at 9. Not so. Defendants appropriately provided these documents more than two months before the December 11, 2023 trial date. *See* Order, ECF No. 187 (ordering that the "deposition of experts, if any, must be arranged so not to delay the . . . trial readiness date."). To the extent Plaintiff was unsatisfied with this

---

[4] The only documents that have been produced of the type Plaintiff claims Defendants belatedly produced were in response to two Rule 45 subpoenas of Plaintiff's experts: a March 1, 2023 email from Plaintiff to Dr. Albrecht attaching a questionnaire she filled out about her employment history; a March 2, 2023 retainer agreement from Ms. Thomas; and a May 31, 2023 invoice from Ms. Thomas.

9

response, she chose not to file a motion to compel, which would be the appropriate means to request that the opposing party produce documents. *See* Fed. R. Civ. P. 37(a). And such a motion must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," Fed. R. Civ. P. 37(a)(1), which Plaintiff failed to do. It would be inappropriate for the Court to exclude Defendants' experts on this basis, and Plaintiff identifies no case holding that such a remedy is warranted.[5]

Moreover, Plaintiff has suffered no prejudice from Defendants' document production on September 27. Despite Plaintiff's insistence that she "lacks reasonable notice of the bases for the experts' opinions as needed to prepare for trial," Mot. at 10, the 11 weeks between the document production and the start of trial on December 11 more than suffices to give Plaintiff time to review these documents and prepare for trial. And Plaintiff has had in her possession the identities of Defendants' experts and their reports since June 1, 2023. Plaintiff chose not to depose Defendants' expert witnesses or serve subpoenas requesting documents on Defendants' experts, despite having several months to do so. She therefore suffered no prejudice when Defendants abided by the existing deadlines and properly served their document production with ample time before trial.

---

[5] The cases Plaintiff does cite are inapposite. In *Pertile v. General Motors, LLC*, 2017 WL 3767780, at *8 (D. Colo. Aug. 31, 2017), the judge granted a motion to compel the production of a model that the expert witness "unequivocally" relied upon and that one party refused to produce. Here, Defendants' expert reports, which were shared with Plaintiff on June 1, attached all relevant modeling data that the experts considered. In *Zurich America Insurance Co. v. Hardin*, the plaintiff discovered through a subpoena requesting documents from an expert that the defendant had withheld "accounting, financial, and corporate" records that it should have produced during fact discovery, and because depositions had concluded, their counsel "could not question witnesses" about these documents. 2020 WL 1150981, at *1-*2 (M.D. Fla. Mar. 10, 2020). By contrast, Defendants have not improperly withheld any documents that should have been produced during fact discovery, nor has Plaintiff suffered prejudice akin to the inability to ask questions about these documents during depositions.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motion in limine.

Dated: October 16, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

JOSHUA KOLSKY
Senior Trial Counsel

*/s/ Madeline M. McMahon*
MADELINE MCMAHON
DANIELLE YOUNG
Trial Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20001
Tel.: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*