# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | | |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS AND DISQUALIFICATION OF DEFENDANTS' COUNSEL

Defendants' unredacted response confirms that they had no valid evidentiary or legal basis for the allegations they made in their Motion to Strike, that they severely overstated their arguments in favor of reopening Plaintiff's deposition by misrepresenting the law and failing to disclose adverse authorities, and that they are engaged in an ongoing abuse of the discovery process for improper purposes. Indeed, Defendants now acknowledge that the conduct they alleged is not even a violation of the rules of professional responsibility, contrary to their prior representations, let alone the more sensational forms of wrongdoing they had alleged.

Defendants' insinuations of wrongdoing, without providing any supporting evidence or legal authority, degrades the integrity of this judicial proceeding. Indeed, this conduct is a transparent attempt to attack a victim of sexual harassment for bringing legitimate claims of workplace discrimination against officials of the federal judiciary. This all-too-common tactic is recognized as a major barrier to reporting workplace misconduct. *See* Report of the Federal Judiciary Workplace Conduct Working Group to the Judicial Conference of the United States 12 (2018) ("Victims are hesitant to report harassment and other inappropriate behavior for a variety

1

of reasons, including . . . concerns that a complaint will subject them to retaliatory action or affect future job prospects."); *see generally* Tovia Smith, *Noted Defense Attorney Charles Ogletree Dies*, NPR, Aug. 4, 2023, *available at* https://tinyurl.com/4nxthsd4 ("[W]hen she brought allegations of sexual harassment against then-Supreme Court nominee Clarence Thomas . . . [Anita] Hill said [Harvard Law Professor] Ogletree immediately understood that she would need a defense attorney even though she was the accuser, not the accused."). If Defendants had a legitimate defense to Plaintiff's claims of deliberate indifference to sexual harassment and due process violations, one would think they would not need to resort to raising unfounded accusations based on misrepresentations to this Court and opposing counsel. This Court should sanction this conduct not only because it is unethical, but also because condoning it would send a chilling message to every victim of workplace conduct in the judiciary.

Additionally, despite Defendants' counsel's attempts to claim that they are "straightforwardly litigat[ing]" this case as "professional advocates," their underhanded tactics in the handling of their response to the motion for the sanctions show otherwise. ECF No. 294, at 18. Specifically, Defendants' counsel *did not timely serve* Plaintiff's counsel with a copy of their unredacted response to the motion for sanctions, as required by the federal rules of civil procedure. After Plaintiff's counsel objected to their conduct and requested immediate service of their filing, Defendants' counsel initially ignored Plaintiff's counsel's email, then admitted that they purposefully did not serve their unredacted filing and claimed that Plaintiff was not "entitle[d]" to see it, *see* Ex. A—in spite of their apparent position that "Defendants should be allowed to file publicly an unredacted version of their opposition, so that all the relevant facts can be disclosed to the public," ECF No. 299, at 2. Defendants' counsel provided a copy of their unredacted filing based on what they characterized as a "professional courtesy," after the

2

deadlines in the rules had passed and, conveniently for Defendants' counsel, after sandbagging Plaintiff at her re-opened deposition by withholding the redacted concessions in their response. This conduct is severely prejudicial and potentially a willful violation of local and federal court rules. It is also evidence that Defendants or their counsel have chosen to obscure rather than comply with the duty of candor. After all, if Defendants' counsel believed in the strength of the arguments in their response, it is difficult to see why they would deliberately conceal the information in their unredacted response from Plaintiff (and the Court, which has also been provided no opportunity to timely review Defendants' unredacted response because Defendants did not even request to file it under seal, in violation of the local rules and this Court's prior order regarding sealed filings).[1] It is also hard to imagine that Defendants' counsel's clients, as officials of the federal judiciary, would have approved of such improper conduct by Defendants' counsel as deliberately avoiding service of a filing on an opposing party to gain an unfair advantage. Defendants' counsel's subsequent conduct further supports the request for sanctions.

I.    **The Court's Order Authorizing Discovery Without Reviewing Plaintiff's Arguments Does Not Excuse Defendants' Failure to Comply with the Duty of Candor.**

Instead of addressing the basis for Plaintiff's motion for sanctions head-on, Defendants begin by contending that because the Court allowed their requested discovery—based only on reviewing Defendants' arguments in their Motion to Strike, and without reviewing the arguments in Plaintiff's Response—there can be no basis for sanctions against them. ECF No. 294, at 8–9. Defendants' argument amounts to an assertion that because the Court allowed their conduct, their conduct must be permissible. This assertion is circular and self-refuting.

_____

[1] Defendants' "confidentiality designation" challenge, which seeks to re-raise a privilege challenge that was already brought by Defendants and decided by this Court, *see* ECF No. 233, is addressed further below and in Plaintiff's motion to strike Defendants' response.

3

Defendants' argument ignores the basic duty of candor imposed by the ethical rules, which recognizes that "[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." N.C. R. Prof. Cond. 3.3(a)(1). As part of this rule, "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities." N.C. R. Prof. Cond. 3.3 cmt. 4. That is because "[t]he underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case." *Id.* Based on the discussion in Defendants' unredacted response (which they have not even attempted to request to seal or timely provide to the Court),[2] there can be no question that their Motion to Strike did not disclose "the existence of pertinent legal authorities" or seek to "determine the legal premises properly applicable to the case." *Id.*

---

[2] As discussed in Plaintiff's motion to strike filed with this reply, instead of requesting to file the unredacted version of their response with the Court as required by the Local Rules, Defendants chose to file a redacted version only and initiate a "confidentiality designation" challenge to the same exact material that they already challenged in May 2023 in their Motion to Strike. ECF No. 219. This Court ruled on Defendants' privilege challenge on June 1, 2023. ECF No. 233. Defendants' Motion to Strike remains under seal pursuant to Fed. R. Civ. P. 26(b)(5)(B), which confirms that the material in that motion cannot be discussed publicly on pain of contempt. ECF No. 219. Defendants' implication that Plaintiff should have filed her Motion for Sanctions publicly, which specifically discussed information that is under seal, is groundless, as is their attempt to bring a "confidentiality designation" challenge without even acknowledging that the information related to that challenge has already been ordered sealed. *See* ECF No. 289, at 5 ("If Plaintiff had not requested to file the information under seal, she would have risked being held in contempt of court for publicly revealing information that this Court had ordered sealed. . . . Further, she would have risked waiver of privileged information, including the very privilege assertion that this Court upheld in concluding that the Fifth Amendment privilege was not waived pursuant to Fed. R. Civ. P. 26(b)(5)(B). . . . Under these circumstances, because the Court denied Plaintiff's motion to seal, Plaintiff cannot file the materials with the Court, compounding the associated denial of her right to be meaningfully heard." (citations omitted)).

4

Moreover, even if Defendants or their counsel were initially unaware of these pertinent authorities when they filed their Motion to Strike, they could not permissibly ignore these authorities once they were disclosed in Plaintiff's Response. The failure to disclose these adverse authorities violates the duty "to correct a false statement of material fact or law previously made to the tribunal by the lawyer," N.C. R. Prof. Cond. 3.3(a)(1), and to "disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the client and not disclosed by opposing counsel," N.C. R. Prof. Cond. 3.3(a)(2). Because Defendants failed to comply with the duty of candor, any resulting order from the Court allowing the discovery was not based on "pertinent legal authorities" or "the legal premises properly applicable to the case." N.C. R. Prof. Cond. 3.3 cmt. 4.

Indeed, if Defendants' argument were correct, there would be no need to impose a duty of candor in the first place. Rather, it would suffice to comply with ethical rules that, so long as the Court allowed a proposed course of action, even if the arguments favoring that action were based on deceit, the action would be permissible because the Court allowed it. This logic contravenes the purpose of the duty of the candor "to avoid conduct that undermines the integrity of the adjudicative process." N.C. R. Prof. Cond. 3.3 cmt. 2.

Defendants next contend that the only avenue of relief for Plaintiff is to seek reconsideration of the Court's rulings—which, again, were based on Defendants' misrepresentations—rather than to challenge the basis for Defendants' motion by enforcing their duty of candor. ECF No. 294, at 9. This argument is unavailing for the same reasons discussed above. Indeed, Defendants' duty of candor was heightened, not lessened, by the Court's failure to allow Plaintiff to file her Response to the Motion to Strike under seal. *See* ECF No. 238. Because the Court denied Plaintiff leave to file her Response under seal pursuant to Rule

5

26(b)(5)(B), it relied *only* on Defendants' arguments, without reviewing her arguments, before ruling on the Motion to Strike. In this respect, Defendants' motion was analogous to an *ex parte* proceeding in which Plaintiff was not permitted to present an opposing position. Under similar circumstances, when only one party is permitted to be heard, the ethical rules recognize that "there is no balance of presentation by opposing advocates" and so the lawyer for the represented party "has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer believes are necessary to an informed decision." N.C. R. Prof. Cond. 3.3 cmt. 15. Because Plaintiff was not allowed to be heard, it was even more important for Defendants to scrupulously comply with ethical rules, to not misrepresent or exaggerate the basis for their position, and to correct misstatements of law after disclosure to them by the opposing party.

Defendants similarly contend that because Plaintiff agreed to hold open discovery for the limited purpose of litigating her privilege assertions, she agreed to allow Defendants to engage in misrepresentations of law for the purpose of branding her with unfounded allegations. ECF No. 294, at 13. Needless to say, Plaintiff did no such thing. Moreover, Plaintiff's counsel specifically warned Defendants' counsel that the implication of their deposition questioning lacked merit and suggested that the parties take more time to research the issue before pursuing it in discovery. *See* ECF No. 270-1, at 2–3. Defendants rejected this suggestion.

## II. Defendants' Response Confirms that they Made Accusations Without a Valid Legal or Evidentiary Basis.

Defendants' Motion to Strike presents a straightforward theory of wrongdoing that is clear from the face of Defendants' counsel's questioning during Plaintiff's deposition. This theory of wrongdoing is misguided and baseless, as Defendants now implicitly concede in their response. Further, in their Motion to Strike, Defendants made an additional, unequivocal representation regarding how this alleged conduct is inherently a form of wrongdoing no matter

what factual context in which it takes place. This representation was also incorrect. Indeed, Defendants now concede that binding authorities from this jurisdiction specifically provide that this alleged conduct is *not* a form of wrongdoing, which they never disclosed in their Motion to Strike. Instead, Defendants presented inapplicable precedents without providing relevant context (including by misattributing a quotation to a different source) that would have shown that those precedents do not apply. In short, in making these representations, Defendants never disclosed contrary authorities that undermine the premise of their questioning and make their allegations of wrongdoing based on the deposition testimony attenuated and speculative, at best.

Defendants' misrepresentations were material because it is possible, if not likely, that the Court would not have granted leave to reopen discovery, following the conclusion of the discovery period and during summary judgment briefing, to pursue nebulous allegations based on speculation without an objective evidentiary basis. Contrary to Defendants' assertions, failing to present relevant context that undermines the basis for their assertions of relevancy is not consistent with the ordinary process of discovery. In fact, courts strongly disapprove of misusing discovery to pursue a "fishing expedition" based on "nebulous allegations, in the hope of finding particular evidence of wrongdoing," and approach such requests for discovery "with a predisposition to treat them as discovery abuse." *Albert S. Smyth Co., Inc. v. Motes*, No. CCB-17-677, 2019 U.S. Dist. LEXIS 234378, at *12 (D. Md. May 9, 2019) (citations omitted).

## A. Defendants' allegations of wrongdoing in their Motion to Strike were misleading and unsupported.

Defendants severely overstated the basis for reopening Plaintiff's deposition by implying, and outright asserting, that the facts already uncovered supported an inference of wrongdoing, and so they were entitled to conduct further discovery on the issue. Now that Defendants have been confronted with adverse authorities that undermine the basis for their allegations, they have

7

retreated to a position that they never actually made the allegations, that they are only highlighting "potential" hypothetical ways in which the facts could be relevant, and they are "seeking only to probe th[e] facts."  ECF No. 294, at 12.  Defendants' newfound position contradicts the representations in their Motion to Strike, which did, in fact, make allegations. But more importantly, it confirms that their motion lacked a factual or legal basis to allege wrongdoing based on anything more than unsupported speculation.

This Court would likely find the adverse authorities that Defendants failed to disclose, and Defendants' about-face in response to disclosure of those authorities, to be material in assessing their motion.  When it "is apparent" that a party has raised a claim or defense "without any factual basis evincing specific misconduct by the [other party] and then bases extensive discovery requests upon conclusory allegations in the hope of finding the necessary evidence of misconduct, that [party] abuses the judicial process."  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000) (unpub.).  After all, discovery "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support."  *Tottenham v. Trans World Gaming Corp.*, 00 Civ. 7697 (WK), 2002 U.S. Dist. LEXIS 11313, at *3 (S.D.N.Y. June 21, 2002) (citation omitted).  Because "[d]iscovery requests cannot be based on pure speculation or conjecture," courts will not "condone such a fishing expedition" based on "mere speculation" when the requesting party "has not offered any objective support for that contention."  *Id.*

Defendants' response confirms that they have not offered any objective support for the contention that further discovery to explore the testimony in the Motion to Strike was permissible.  For example, Defendants only disclosed for the first time, after Plaintiff renewed her motion for a protective order and moved for sanctions, that the conduct they alleged is *not* a

8

violation of the rules of professional conduct that govern this proceeding. ECF No. 276, at 4 (acknowledging that this alleged conduct "falls short of violating [Plaintiff's] particular bar's rules of professional responsibility"). It is an understatement to say that this concession contradicts the representations Defendants made to this Court and opposing counsel in their Motion to Strike. Indeed, even with this concession that the alleged conduct "falls short" of violating the rules of professional conduct, Defendants are still understating the extent to which they mispresented the law to this Court. *Id.* That is because Defendants are failing to disclose to this Court controlling adverse authority that is directly on point and states exactly the *opposite* of what they represented to this Court in their Motion to Strike, *i.e.*, that this alleged conduct is *not* a violation of the applicable rules of professional conduct.

Moreover, Defendants' Motion to Strike is suffused with other insinuations of wrongdoing, and their attempt to deny that they made these allegations is specious. Indeed, even after this Court held that Plaintiff has *not* waived her right to assert her Fifth Amendment privilege in this proceeding, ECF No. 233, Defendants are asserting that she *did* waive the privilege over testimony she provided based on precedents that apply to deponents who provide *incriminating* testimony, ECF No. 275, at 2. Defendants' argument that the privilege was waived necessarily presumes that the testimony Plaintiff provided is incriminating.

It is hornbook law that when an individual is subjected to compelled testimony, as in a deposition, she does not waive the Fifth Amendment privilege when the answers she provided are not incriminating. *See, e.g.*, *Chao v. Halko*, No. 3:19-cv-10194-MGM, 2021 U.S. Dist. LEXIS 163481, at *6–9 (D. Mass. Aug. 30, 2021) (holding that officer did not waive his Fifth Amendment rights when his admissions were "not, standing alone, incriminating"); *see generally Arndstein v. McCarthy*, 254 U.S. 71, 72 (1920) (providing evidence that "did not amount to an

admission of guilt or furnish clear proof of crime . . . did not constitute a waiver"). A waiver of the Fifth Amendment privilege can be inferred "only in the most compelling of circumstances," and requires a finding that the statements were (a) "testimonial," and (b) "incriminating," meaning that they "directly inculpated the witness on the charges at issue." *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981). Otherwise, it would be "unfair" to infer a waiver of the privilege because a witness who did not provide incriminating testimony would have no "reason to know" that she was waiving the privilege. *Id.*; *see also United States v. Cox*, 836 F. Supp. 1189, 1200–01 (D. Md. 1993) (applying *Klein* and concluding that witness did not waive privilege when he "inadvertently (and briefly) described" facts "without an appreciation that he might be waiving his Fifth Amendment rights"). Thus, to even argue in the first place that Plaintiff waived the Fifth Amendment privilege necessarily communicates an accusation that her testimony was incriminating.

Defendants' response confirms that this accusation lacks any objective basis in existing precedent. Indeed, the relevant precedents state the exact opposite of what Defendants have alleged. And while those governing precedents do not involve precisely the factual situation presented in this case, the legal principles essential to the holdings of those decisions *do* address precisely the issues presented here, and are therefore controlling. *See, e.g.*, *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 978 (3d Cir. 1980) ("When a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision." (citation omitted)). Defendants' belated attempt to distinguish these precedents, which, again, they failed to disclose in the first place, is unavailing.

In response, Defendants invite this Court to indulge their position by applying undefined and subjective standards *ad hoc* that contradict existing precedent, which contains no support for their position. To even invite this approach is to concede that the precedents that Defendants failed to disclose are pertinent authorities that should have been considered in ruling on the Motion to Strike.[3] *See* ABA Formal Opinion 280 (1949); 2018 N.C. Formal Ethics Op. 2 ("[A] lawyer must not allow the tribunal to be misled by false statements of law and 'must recognize the existence of pertinent legal authorities.'" (citation omitted)). In short, Defendants are now acknowledging that these precedents are relevant, even dispositive. Their response is to attempt to find ways to distinguish these precedents, which they never previously disclosed to the Court. This is precisely the type of conduct that courts have held is sanctionable.

After all, Defendants "could have distinguished" these precedents as they "saw fit or urged the Court . . . not to follow" them. *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1356 (Fed. Cir. 2003). Consistent with their obligations as officers of the court, however, Defendants "could not simply ignore" these precedents by failing to disclose them. *Id.* Defendants' approach confirms that instead of complying with the duty of candor, they chose to undertake "a bold and risky gambit" of "rely[ing] on their mere *ipse dixit* that the case is distinguishable and therefore unnecessary to call to the Court's attention." *Massey v. Prince George's Cty.*, 918 F. Supp. 905, 908 (D. Md. 1996). As one court explained in rejecting this approach: "[C]areful lawyering demands greater sensitivity." *Id.* Therefore, "whenever a case" from the relevant jurisdiction "comes anywhere close to being relevant to a disputed issue, the

_____

[3] Even if the Court believed that the legal question could not be straightforwardly resolved based on existing precedent, which it can because the issue is not novel or unsettled, the proper mechanism would be to certify the question rather than for the Court to reinterpret the law, for itself, in a manner serving of Defendants' interests.

better part of wisdom is to cite it and attempt to distinguish it. The matter will then be left for the judge to decide. While [the party] may still in time be judged unsuccessful in their attempt to distinguish the case, they will never be judged ethically omissive for failing to cite it." *Id.* In failing to disclose relevant precedents to the Court, and only belatedly (and unsuccessfully) attempting to distinguish them after the fact, Defendants failed to adhere to this ethical principle.

### B. Defendants' reliance on Plaintiff's re-opened deposition confirms their abuse of the discovery process.

Based on Defendants' response and in context with their other filings, it appears that Defendants intend to double down on their improper approach of insinuating wrongdoing without providing any legal or evidentiary basis—and, in the process, infringing on Plaintiff's fundamental constitutional rights. Specifically, Plaintiff anticipates that Defendants may seek to penalize her in this case for her invocation of constitutionally guaranteed privileges, without providing any particularized evidence of wrongdoing. *See, e.g.*, ECF No. 295, at 9–10. That approach would be profoundly mistaken. At best, such an approach demonstrates a fundamental misapprehension of the guarantees provided by the Fifth Amendment. At worst, it is an intentional abuse of the discovery process. In short, such an approach would confirm that Defendants constructed a false accusation against Plaintiff based on misapprehensions of law. And when Plaintiff invoked her constitutionally protected right to silence in response to that accusation, Defendant sought to penalize her silence as a substitute for evidence.

Courts have condemned such misuse of the Fifth Amendment privilege. *Slochower v. Bd. of Higher Educ.*, 350 U.S. 551, 557 (1956) ("[W]e must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment."). Moreover, courts "have been uniform in suggesting that an adverse inference" arising from a party's silence in a civil matter "can only be drawn when independent evidence exists of the fact

to which the party refuses to answer." *Lawrence v. Madison Cty.*, 176 F. Supp. 3d 650, 666–67 (E.D. Ky. 2016) (quoting *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)); *see Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (the Fifth Amendment permits adverse inferences against parties in civil cases "when they refuse to testify *in response to probative evidence offered against them*" (emphasis added)). Thus, "an adverse inference can be drawn when silence is countered by *independent evidence* of the fact being questioned, but that same inference cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint." *Doe*, 232 F.3d at 232 (emphasis in original). "In such instances, when there is no corroborating evidence to support the fact under inquiry, the proponent of the fact must come forward with evidence to support the allegation, otherwise no negative inference will be permitted." *Id.*

The decision in *Lawrence* provides guidance that is especially instructive regarding Defendants' ongoing abuse of the discovery process. In *Lawrence*, the district court declined to draw an adverse inference based on a party's invocation of the Fifth Amendment privilege where the questions asked at her deposition "were not grounded in independent evidence." *Lawrence*, 176 F. Supp. 3d at 666. "Instead, counsel employed a shock-and-awe approach to deposition questioning, peppering [the party] with dozens of imagined scenarios and hoping the Court would draw an adverse inference each time she declined to respond." *Id.* "Unfazed" by the lack of independent evidence, counsel "proceeded to ask [the party] dozens of deeply repetitive questions" about the subject matter, "most of which [the party] refused to answer on the advice of her attorney." *Id.* Explaining that there was no independent evidence in the record to support counsel's allegations of wrongdoing, the court concluded that the inference that such wrongdoing occurred "is not a reasonable inference drawn from evidence and actually in the

record" but was instead "unsupported speculation." *Id.* at 667. And the court would not "use such speculation" in deciding the matters at issue. *Id.*

The circumstances of this case are similar to *Lawrence* and demonstrate why the protections of the independent evidence rule exist. Plaintiff will leave no surprise about what happened at her deposition: Defendants' counsel engaged in a "shock-and-awe approach," "peppering" her with "dozens of imagined scenarios" without independent supporting evidence. *Lawrence*, 176 F. Supp. 3d at 666. Despite the lack of any evidentiary value in this approach, and its apparent purpose of humiliation and intimidation, Defendants apparently hope that this Court will find Plaintiff guilty of these imagined scenarios based solely on the fact that she invoked her constitutional rights. That is not how the law works.

After all, a witness "may have a reasonable fear of prosecution and yet be innocent of any wrongdoing." *Slochower*, 350 U.S. at 557–58. Thus, "the innocent and guilty alike have a right of recourse to the Fifth Amendment." *Ullmann v. United States*, 350 U.S. 422, 427 n.2 (1956). In fact, "one of the Fifth Amendment's basic functions is to protect innocent men [and women] who otherwise might be ensnared by ambiguous circumstances." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (alterations and citations omitted). As these decisions underscore, the privilege is designed to protect the innocent from "heedless" or "unfounded" accusations. *Quinn v. United States*, 349 U.S. 155, 161–62 (1955) (the privilege "is a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded, or tyrannical prosecutions"). "Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Grunewald v. United States*, 353 U.S. 391, 421 (1957). Rather, "[t]he assertion of the privilege, particularly on the advice of counsel, is an

14

ambiguous response. An attorney might advise her or his client not to answer questions simply as a safety measure . . . ." *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210–11 (5th Cir. 1983).

Faced with heedless and unfounded accusations by officials of the federal government, Plaintiff invoked her constitutionally protected right to silence. She cannot be penalized for doing so unless this Court were to "abrogate a fundamental constitutional right." *In re Caucus Distributors, Inc.*, 83 B.R. 921, 926 (Bankr. E.D.Va. 1988). And if Defendants were to advocate that course of conduct in this litigation, their approach would be not only legally unfounded, but also an abuse of the judicial process given their prior misrepresentations.

## C. This Court cannot penalize Plaintiff based on Defendants' subjective preferences.

Lacking any objective basis to contend that Plaintiff engaged in wrongdoing, Defendants also advocate for this Court to depart from governing legal authorities and sanction Plaintiff based on Defendants' own vague and subjective preferences, including for precedents that do not apply in this jurisdiction, without providing any prior notice. That course, too, is foreclosed by binding authority.

Under Federal Rule Civil Procedure 83, "[n]o sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement." Fed. R. Civ. P. 83(b); W.D.N.C. LCvR 83.1(a) ("By making an appearance, such attorney agrees to abide by . . . the North Carolina Rules of Professional Conduct, and to submit themselves to this Court for the enforcement of such rules."). Rule 83 implements common sense notions of fair play and due process in judicial proceedings. As the commentary to the rule explains, "[t]here should be no adverse consequence to a party or attorney for violating special requirements relating to practice before a particular court unless the party or attorney has actual

15

notice of those requirements." Advisory Comm. Notes, 1995 Amendment. Interpreting an analogous rule, the Fourth Circuit has explained that courts lack discretion to disregard binding local rules in favor of precedents that "have no application to cases in this Circuit." *United States v. Hyman*, 884 F.3d 496, 499 (4th Cir. 2018). Defendants' suggested approach fails to respect the requirement of notice before sanctioning a party for permissible conduct.

## III. Defendants Mispresented Legal Authority and Misled the Court and Opposing Counsel.

Defendants concede that their Motion to Strike did misattribute cited precedent. ECF No. 294, at 2, 5, 13. Conveniently, Defendants contend that this error was "essentially typographical" and "accidental." *Id.* at 14–15. To be clear, this alleged typographical error involved putting two quotations from different federal court decisions within the same citing parenthetical and creating the misimpression that they both came from the same case. And in making this alleged error, the quoting parenthetical left out the citation to a decision that contains adverse authority that undermines the basis for Defendants' Motion to Strike, which Defendants failed to disclose to the Court. This alleged error, therefore, happened to be very favorable to the position Defendants were advocating to the Court.

Even if this alleged error was initially inadvertent, it should have been corrected upon timely disclosure by the opposing party because a reasonable factfinder would find the error to be material. The effect of the alleged error was to conceal the true source of Defendants' quoted citation and thereby deprive the Court of the opportunity to evaluate the quotation in context of the cited decision. When considered in context, it is clear that the cited quotation does not support Defendants' position because it results from a wholly different legal framework that has no applicability to this case. Indeed, Defendants repeat this same alleged error in their response to the motion for sanctions by block-quoting decisions that have no applicability to the facts of

16

this case.  Defendants fail to disclose important distinctions in the legal frameworks from which these cases arise, and again falsely present these cases as if they establish a categorical rule that applies in all circumstances, when that is simply not the case.  To the contrary, the applicable authority for this jurisdiction establishes the exact opposite of Defendants' representations.

Though Defendants attempt to distinguish *Precision Specialty Metals*, their conduct is similar to, if not more egregious than, that case.  In *Precision Specialty Metals*, the Federal Circuit held that a Department of Justice attorney made misrepresentations by omitting relevant language from quotations, failing to cite applicable precedent, and creating a "false implication resulting therefrom" that authority adverse to the attorney's position did not exist.  *Precision Specialty Metals*, 315 F.3d at 1349.  The decision thus stands for the proposition that an attorney violates the duty of candor when she creates a "misleading impression of the state of the law on point . . . in a way that overstated the basis for her claim." *Id.* at 1356.  Moreover, an attorney fails to state the "'existing law' accurately and correctly" when "her omissions from and excisions of judicial authority mischaracterized what those courts had stated." *Id.*  Similarly, here, Defendants' representations were misleading and mischaracterized what courts had stated. These errors were exacerbated by Defendants' failure to correct miscitations of precedent after they were on notice of a duty to do so.

Defendants also contend that certain authority that they did not disclose was not "controlling" because it is not "binding" on the Court.  ECF No. 294, at 15–16.  But Defendants themselves represented this type of authority as being highly persuasive.  Indeed, Defendants' *sole* citation in support of the position in their Motion to Strike was a decision that relied heavily on this authority.  Defendants failed to disclose, however, that the authority they relied on is no longer good law, as recognized by more recent federal decisions.  Rather, the current version of

17

the authority establishes the exact opposite of what Defendants represented in their Motion to Strike. It was misleading to present the prior version of this authority as still being good law. *See Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp. 3d 392, 403 n.5 (D. Md. 2016) (under Rule 3.3's duty of candor, "failure to disclose that a legal authority cited has been overruled could have significant professional ramifications for an offending attorney").

In a last-ditch effort, Defendants contend that even if applicable authorities in this jurisdiction establish that this alleged conduct is not a form of wrongdoing, authorities in other jurisdictions could apply. This assertion is incorrect. To the contrary, the rules of professional conduct, both in this jurisdiction and under the model rules, provide that the pertinent rules of conduct "in connection with a matter pending before a tribunal" are "the rules of the jurisdiction in which the tribunal sits." *See* N.C. R. Prof. Cond. 8.5(b)(1); *see* Model R. Prof. Cond. 8.5(b)(1). Moreover, the rules provide "a safe harbor for lawyers who act reasonably in the face of uncertainty" even if conflicting rules could apply. N.C. R. Prof. Cond. 8.5 cmt. 3. Rules of conduct in other jurisdictions are therefore irrelevant because this proceeding is not pending in those jurisdictions. Defendants' attempt to stretch jurisdictional boundaries in the rules, despite contrary authority that they did not disclose, further confirms that they have no valid basis for their allegations.

## IV. Defendants Have Not Dispelled the Appearance of Impropriety Arising from DOJ's Receipt of Privileged FDO Client Information During this Lawsuit.

Defendants have failed to dispel the appearance of impropriety that arises from the fact that officials of the Department of Justice, the authority which prosecutes the FDO's clients, received privileged information pertaining to FDO clients' cases during this lawsuit. Defendants' only response is that this concern is "belated[]" and "there is no bar to DOJ representing the FDO in this case." ECF No. 294, at 18–19.

Defendants' response fails to address the appearance of a serious conflict of interest in this proceeding. The appearance of impropriety arises not from the mere fact that DOJ is representing the FDO, but rather because it has become clear that DOJ's representation is intertwined with privileged FDO client matters. That circumstance presents a clear appearance of impropriety, and it is misleading for Defendants to suggest that representation under these circumstances is not barred by judiciary policy. After all, a prosecuting authority should not have access to privileged information from the cases of the clients it prosecutes.

Defendants claim that the Judicial Conference policy recognizing DOJ's "apparent disqualification to represent a public defender against whom it prosecutes criminal cases," *see* Hearing on Federal Judicial Branch, Subcomm. on Courts, Civil Liberties, and Administration of Justice, House Jud. Comm. 758 (Apr. 25, 1985), *available at* https://tinyurl.com/4y2r3r5v, no longer reflects "current judiciary policy." ECF No. 294, at 19. But notably, Defendants have failed even to disclose the "current judiciary policy" to which they are apparently referring. ECF No. 294, at 19. Because Defendants have not disclosed the judiciary's "current" policy regarding this issue, they have made it impossible to evaluate whether their conduct complies with that policy.

The failure to disclose the "current" policy raises a reasonable question whether the non-disclosure is motivated by concern that DOJ's representation, under these circumstances, may in fact violate the policy. Moreover, Defendants failed to explain why the Judicial Conference's stated concern about the DOJ's prosecutorial role in representing federal defenders would be any less valid today than in 1985, when the policy was first issued. Indeed, the judiciary's recognition of this concern decades ago confirms its continued validity. *Cf.* Report of the Proceedings of the Judicial Conference (Sept. 2021) (FDO EDR Plan was enacted "[t]o address

issues unique to federal public defender organizations, including the distinct employment relationship between FPDs and their employees, their role as legal representatives with ethical obligations to clients on whose behalf they appear in court, and the need to mitigate concerns regarding access to sensitive information (including protecting attorney-client privileged information as well as sensitive information about internal FPDO operations)").

Defendants' argument that this issue is "belatedly rais[ed]" also lacks merit. ECF No. 294, at 18. Courts in this circuit have concluded that even a "six-month delay does not appear to be particularly long" in moving for opposing counsel's disqualification compared to cases in which waiver is found. *HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 763 (S.D. W. Va. 2003). In this case, Defendants injected the issue of alleged misuse of client information into this litigation for the first time on June 1, 2023, when they filed their summary judgment motion. ECF No. 245, at 12. Because Defendants never previously raised this issue in their pleadings or in discovery, as required by the federal rules of civil procedure, Plaintiff had no prior notice of this issue. By raising this allegation against Plaintiff—who never disclosed or misused privileged client information, contrary to Defendants' insinuations and, instead, took painstaking care to protect that information—Defendants put at issue their own conduct in removing privileged FDO client information from the office and disclosing it to other officials, including within the Department of Justice. *See* ECF No. 282, at 5 (letter from DOJ counsel explaining that DOJ had received a document that "is 2,172 pages long and contains numerous case-related emails, and therefore would require extensive redactions . . . before it could be produced in this litigation"); *Id.* at 6 (email from First Assistant to EDR Investigator stating "**CAUTION: INCLUDES NUMEROUS CASE RELATED EMAILS**" when disclosing thousands of pages of unredacted, privileged client information). Accordingly, the fact that DOJ

20

officials were provided privileged FDO client information only became a relevant issue in this proceeding on June 1, 2023. Thus, Plaintiff's motion to disqualify was timely.

## CONCLUSION

For all these reasons, the motion for sanctions and disqualification of Defendants' counsel should be granted.[4]

This the 18th day of October, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

---

[4] Because certain of Plaintiff's prior filings are necessary to understand the arguments in this reply, Plaintiff has attached them as exhibits B and C and requested leave to file them under seal.

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October, 2023, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com
