# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

## ASHEVILLE DIVISION

| | | |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## PLANTIFF'S REPLY IN SUPPORT OF HER MOTION IN LIMINE TO PRECLUDE ANY AFTER-ACQUIRED EVIDENCE DEFENSE

Defendants have unequivocally stated to this Court that they have waived all affirmative defenses in this litigation, including an after-acquired evidence defense: "Defendants are not raising an after-acquired evidence affirmative defense." ECF No. 295, at 1. That waiver must be enforced by this Court. After all, this Court lacks authority to consider *sua sponte* affirmative defenses that Defendants are not raising, and instead have expressly disavowed. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) ("Federal Rule 8(c) does not permit [the] court to consider affirmative defenses *sua sponte*." (citation omitted)).

Defendants' other arguments do not salvage their fatally flawed "defense," either. Defendants must acknowledge that they face insurmountable obstacles, including the fact that they lack basic foundational elements to present the defense at trial and that they waived the defense by failing to disclose it in discovery. Moreover, this defense is plainly meritless. While labeling Plaintiff's conduct as "problematic," Defendants fail to provide any supporting authority for this contention and continue to ignore binding authorities and precedents in this jurisdiction stating otherwise. Defendants also ignore that in contrast to Plaintiff, who scrupulously

1

protected client information and did not disclose it to anyone not authorized to have it, her accused harasser actually did remove from the office and disclose *thousands of pages* of privileged client information outside of the attorney-client relationship. *See* Ex A. The First Assistant plainly was aware of the problematic nature of his conduct, as he stated "**CAUTION: INCLUDES NUMEROUS CASE RELATED EMAILS**" when disclosing thousands of pages of unredacted, privileged client information to the EDR Investigator—an employee of the District's probation office. *Id.* Further, Defendants openly admit that the vast trove of privileged information the First Assistant removed from the office and disclosed to a third party is not "relevant" to the claims in this litigation. Ex. B. Compounding the First Assistant's disclosure of privileged information, Defendants then disclosed this privileged FDO client information ***to the Department of Justice***—the prosecuting authority—during this litigation. *See id.* (letter from DOJ counsel explaining that DOJ had received a document that "is 2,172 pages long and contains numerous case-related emails, and therefore would require extensive redactions . . . before it could be produced in this litigation").

Even though Defendants apparently did not punish the First Assistant for needlessly disclosing thousands of pages of privileged client information, and Defendants themselves disclosed privileged FDO client information to the Department of Justice, Defendants now request that this Court single out and punish Plaintiff, who did none of these things. That result would be unjust and is not what the law allows.

## I.    Defendants Have Waived, and Indeed Expressly Disavowed, All Affirmative Defenses in this Litigation.  That Waiver Must be Enforced.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *Wood v. Crane Co.*, 764 F.3d 316, 326 n.9 (4th Cir. 2014). As the Fourth Circuit has explained: "Our litigation system typically operates on a raise-or-waive model: if a litigant fails to raise a claim in

a complaint, or a defense in an answer, or to preserve an objection at trial, they are generally out of luck.  This model forces efficiency and discourages sandbagging."  *Id.* at 326.

Here, Defendants have waived, and expressly disavowed, all affirmative defenses in this litigation.  Defendants failed to raise any affirmative defenses in their Answer or First Amended Answer, aside from a proposed defense of failure to mitigate, which was denied as untimely.  *See* ECF No. 206.  Defendants also failed to raise any affirmative defenses in the parties' joint pretrial order, which states: "Any requested amendments to the pleadings.  None."  ECF No. 259, at 99.  And in their response to Plaintiff's motion *in limine*, Defendants expressly affirmed their waiver of affirmative defenses by stating: "Defendants are not raising an after-acquired evidence affirmative defense."  ECF No. 295, at 1; *see also* ECF No. 297, at 5 (acknowledging that "Defendants' answer does not include the affirmative defense of failure to mitigate").  It is thus conclusively established that Defendants have intentionally relinquished and abandoned any right to raise affirmative defenses in this litigation.  *Wood*, 764 F.3d at 326 n.9.

This Court is obligated to enforce Defendants' waiver of affirmative defenses.  It is well-established that "Federal Rule 8(c) does not permit [the] court to consider affirmative defenses *sua sponte*."  *Eriline Co. S.A.*, 440 F.3d at 656 (citation omitted).  Moreover, the fact "[t]hat a constitutional right is involved does not mitigate a defendant's burden of pleading its own affirmative defenses."  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1240 (11th Cir. 2010).  "That's because the principle of party presentation is basic to our adversary system, and the court's invocation of a party's affirmative defense generally conflicts with that ideal."  *Burgess v. United States*, 874 F.3d 1292, 1296 (11th Cir. 2017).  Because Defendants have unequivocally waived all affirmative defenses, this Court cannot consider any such defenses *sua sponte* without violating the party presentation rule and improperly acting as an advocate for Defendants.

What is more, Defendants' filings reveal that their waiver of affirmative defenses is the result of a strategic decision, to which they must be held. As the Fourth Circuit has explained, when a party makes "a strategic decision not to assert" a defense in its pleadings, "[w]e usually hold parties to that sort of strategic decision." *Wood*, 764 F.3d at 326. Here, it is clear from the record that Defendants understood their obligation to plead affirmative defenses in their Answer. In fact, earlier in this case, Defendants attempted unsuccessfully to amend their Answer to plead an affirmative defense of failure to mitigate. *See* ECF No. 166, at 2 (Defendants' motion for leave to file amended answer "to include a revised version of one affirmative defense"); ECF No. 296 (second motion to amend answer "to include a revised version of one affirmative defense"). After Defendants' attempts to assert this affirmative defense were unsuccessful, Defendants chose to undertake a new and extremely bold gambit as an alternative to properly pleading and proving affirmative defenses as required by the Federal Rules of Civil Procedure. Specifically, Defendants now contend that they are not obligated to raise affirmative defenses *at all* because the Court can consider any affirmative defenses they failed to plead or prove as a "relevant factor" in fashioning equitable relief. ECF No. 295, at 3.

Unsurprisingly, Defendants cite no precedent in support of this novel contention, because none exists. To the contrary, the Fourth Circuit has repeatedly recognized that under Federal Rule of Civil Procedure 8(c), the defendant bears the burden of proving an affirmative defense to an equitable claim. *See, e.g.*, *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (recognizing "affirmative defens[e]" of laches to equitable claim, which "imposes on the defendant the ultimate burden" of proof); *WorldCom, Inc. v. Boyne*, 68 F. App'x 447, 451 (4th Cir. 2003) (discussing elements that "a defendant raising an unclean hands defense must demonstrate"); *Diamonds Direct USA, Inc. v. BFJ Holdings, Inc.*, Civil Action No. 3:12CV303-HEH, 2012 U.S.

Dist. LEXIS 161316, at *14 n.5 (E.D. Va. Nov. 9, 2012) ("[T]he affirmative defense raised here is one of general unclean hands, which is an equitable defense requiring the invoking party to demonstrate its own good faith."). The same is true of equitable claims arising under the Constitution. *See, e.g.*, *Curtin v. Va. State Bd. of Elections*, 463 F. Supp. 3d 653, 659 (E.D. Va. 2020) (considering "[a]n affirmative defense to claims for equitable relief" in case involving constitutional claims). In short, there is no exception to Rule 8(c)'s pleading requirement of affirmative defenses for equitable claims.

Rule 8(c)'s pleading requirement undoubtedly applies to an after-acquired evidence defense, which is merely a variation of the affirmative defense of unclean hands. *See McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 360–63 (1995) (holding that employer "must . . . establish" after-acquired evidence defense and analogizing to affirmative defense of "unclean hands"). That affirmative defense "must be timely plead[ed] or it too is waived." *Farhad Dastranj v. Mehdi Dehghan*, Civil Action No. PX 15-2436, 2017 U.S. Dist. LEXIS 131879, at *19-20 (D. Md. Aug. 17, 2017) (citation omitted). Resisting this conclusion, Defendants cast aside the numerous precedents cited in Plaintiff's motion *in limine* by claiming that those precedents involve "statutory" rather than "equitable" claims. ECF No. 195, at 3. But this argument misunderstands what an equitable claim is. The term "equitable" means that the claim is decided by a court rather than a jury. *See Rinaldi v. CCX, Inc.*, No. 3:05-cv-108-RJC, 2009 U.S. Dist. LEXIS 16101, at *1 n.1 (W.D.N.C. Feb. 18, 2009) ("ERISA actions are equitable in nature and are for the Court to decide rather than the jury."); *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991) (front pay claims are "for the court sitting in equity to consider and not the jury"); *see generally Pollard v. E. I. du Pont de Nemours & Co.*, 532 U.S. 843, 849 (2001) (front pay awards are "equitable relief" not subject to Title VII's statutory cap on

5

compensatory damages).  An equitable claim can be statutory, as the concepts are not mutually exclusive.  *See id.*  Indeed, Defendants' argument is nonsensical because equitable defenses like after-acquired evidence regarding front pay, unclean hands, and failure to mitigate *only* apply in the context of equitable claims.  *See, e.g.*, *White*, 909 F.2d at 102 (laches "is relevant only where the claims presented may be characterized as equitable, rather than legal").  Accordingly, the distinction that Defendants attempt to draw between "statutory" and "equitable" claims in obviating their pleading requirements is incorrect.

Indeed, front pay is an equitable claim regardless of whether it arises under a statute or the Constitution, as the Fourth Circuit expressly recognized in the prior appeal in this case. Relying explicitly on Title VII cases, the Fourth Circuit held that Plaintiff's request for front pay was not barred by sovereign immunity because "[t]his remedy has been deemed by federal courts to constitute an equitable remedy."  *Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022) (citing, *e.g.*, *Pollard v. E.I. du Pont de Nemours*, 532 U.S. 843 (2001) (holding, in a Title VII case, that front pay constituted equitable relief and not an element of compensatory damages); *Monohon v. BNSF Rwy. Co.*, 17 F.4th 773, 784 (8th Cir. 2021); *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) (holding that, although reinstatement of a wrongfully discharged employee is preferable, "in appropriate circumstances a district court may award front pay in lieu of reinstatement")).  The Fourth Circuit's recognition that analogous Title VII decisions provide guiding precedent regarding front pay is the law of the case, which this Court is bound to follow under the mandate rule.  *United States v. Moussaoui*, 483 F.3d 220, 232 (4th Cir. 2007) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)).

6

In short, Defendants "made a strategic decision not to assert" any affirmative defenses in this litigation. *Wood*, 764 F.3d at 326. Instead, they chose to argue, erroneously, that this Court may consider their failed affirmative defenses as "factors" relevant to front pay. Having had their affirmative defenses rejected as improperly pleaded and meritless, Defendants conveniently now contend that any time a claim is "equitable" in nature, the defendant is automatically absolved of their burden to plead and prove affirmative defenses. This argument is meritless.

Finally, it is worth underscoring that Defendants' waiver of all affirmative defenses applies equally to their reliance on Plaintiff's re-opened deposition, which occurred on October 12, 2023. Indeed, in their response brief dated October 16, 2023, Defendants specifically discuss Plaintiff's re-opened deposition in the same filing that they unequivocally assert that "Defendants are not raising an after-acquired evidence affirmative defense." ECF No. 295, at 1, 9–10. Accordingly, even if Defendants reliance on the deposition had any merit, this Court cannot even reach Defendants' arguments because Defendants have waived the defense.

## II. In Addition to Waiving the Defense in their Pleadings, Defendants Also Waived the Defense by Failing to Disclose it in Discovery.

It is a basic concept that a party must disclose all witnesses and information they intend to rely on at trial in their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a). Moreover, a party has an obligation to provide timely supplementation of discovery responses pursuant to Federal Rule of Civil Procedure 26(e). "The purpose of Rule 26(a) is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 396 (4th Cir. 2014). Therefore, "[u]nder Rule 26(e), a party who has made a Rule 26(a) disclosure or responded to discovery must provide timely supplementation 'if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been

7

made known to the other parties during the discovery process or in writing.'" *Id.* (quoting Fed. R. Civ. P. 26(e)(1)(A)). "Pursuant to Federal Rule of Civil Procedure 37, a party who fails to comply with the disclosure requirements of Rule 26(a) or the supplementation requirement of Rule 26(e) 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Id.* (quoting Fed. R. Civ. P. 37(c)(1)). As the commentary to Rule 37 explains, "[t]his automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion." Fed. R. Civ. P. 37(c), Advisory Comm. Notes (1993). Indeed, this sanction is both "automatic" and "self-executing." *Id.*

Defendants failed to disclose an after-acquired evidence defense at any time during discovery, even after they were on notice of the relevant facts. The procedural history regarding this defense makes abundantly clear that Defendants had ample notice of the relevant facts during discovery, and so there was no justifiable reason for their failure to disclose the defense. After all:

> [T]he party wishing to raise [an affirmative] defense is obliged to plead [it] at the earliest possible moment. Certainty of success is not an essential element in determining whether to set forth the affirmative defense in a pleading. If the defense lurks in the case, vacillation can cause the other party irreparable injury.

*Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983); *see also Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir. 2013) ("[A] party may waive such a defense arising during the course of litigation by waiting too long to assert the defense after it becomes available"). In this case, Defendants were well-aware of the facts supporting their purported after-acquired evidence defense for months before discovery concluded. They had an obligation to raise the defense at the earliest possible moment. Their failure to even hint at the

possibility of the defense until after discovery had concluded has irreparably injured Plaintiff because she has been sandbagged by the inability to conduct discovery on this defense. *See Burton v. Ghosh*, 961 F.3d 960, 965–66 (7th Cir. 2020) ("But if the defense is untimely and the delay prejudices (*i.e.*, significantly harms) the plaintiff, it is forfeited and normally may not be considered by the court."). That is especially true because Defendants' asserted defense does not arise from the same facts at issue in the equal protection and due process claims, but rather "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party." *McCall-Scovens v. Blanchard*, Civil Action No. ELH-15-3433, 2016 U.S. Dist. LEXIS 148750, at *15 (D. Md. Oct. 27, 2016) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)); *Pennell v. Vacation Reservation Ctr., LLC*, No. 4:11cv53, 2011 U.S. Dist. LEXIS 150763, at *7 (E.D. Va. Sep. 19, 2011) (discovery is "necessary" for a plaintiff to "fairly test" an after-acquired evidence defense); *see generally* ECF No. 282, at 13–18 (citing many cases recognizing the "unfair surprise" that would result from allowing an after-acquired evidence defense to be asserted only after the close of discovery).

Defendants' delay in raising this issue is unjustified and results in prejudice. Indeed, Plaintiff provided all relevant discovery to Defendants—including the recordings which they are now complaining about without having properly asserted an affirmative defense—in two batches on January 20, 2023 and March 3, 2023, months before discovery closed. Further, in an interrogatory response dated January 20, 2023, Plaintiff's prior trial counsel objected to the overbreadth of Defendants' document requests and stated: "Moreover, such recordings may pertain to privileged client matters and internal FDO matters that have no relation to this action." Ex. C. In a letter response dated February 14, 2023, Defendants stated: "Plaintiff also says that the audio recordings she possesses 'may pertain to privileged client matters and internal FDO

matters that have no relation to this action.' Plaintiff offers no explanation, however, for why she would have such privileged recordings within her possession after she left her employment with the FDO." Ex. D. This letter exchange dated two-and-a-half months before the close of discovery on May 1, 2023 confirms that Defendants were aware, for several months, of the precise factual basis for an affirmative defense they raised for the first time in their summary judgment motion on June 1, 2023, without providing notice in discovery.

If this were not enough notice, Plaintiff's prior trial counsel provided a detailed privilege log to Defendants' counsel regarding the recordings on March 24, 2023. Ex. E. That privilege log included entries for "FDO Team Meetings" and "FDO All-Staff Meetings" with the following description: "Redaction of client identifying info, FDO work product information and internal discussion of FDO cases." *Id.* Similarly, the privilege log included an entry regarding "[e]mails" and "handwritten notes," which provides the following caption: "Redaction of FDO client identifying information, FDO internal case related information, and information protected by FDO WP and AC privileges." *Id.* Moreover, in response to Defendants' request, Plaintiff's prior trial counsel provided a supplemental privilege log containing information regarding similar recordings that she did not produce in discovery on April 7, 2023. Ex. F. As these efforts demonstrate, unlike Defendants, Plaintiff took great care during discovery to ensure that confidential information was not improperly disclosed.

Following these disclosures, Defendants did not attempt to amend their Answer to assert a defense of after-acquired evidence, even though discovery was still ongoing. Defendants also did not disclose the defense in response to Plaintiff's interrogatory requesting that Defendants "[s]tate the basis . . . for the assertion of any defenses, including any affirmative or factual basis, that Defendants have raised or intend to raise in response to the complaint." ECF No. 250, at 12.

Even if Defendants believed they were not obligated to raise after-acquired evidence defense in their pleadings, there was no justification for them not to disclose the defense in discovery as a "factual basis that Defendants have raised or intend to raise in response to the complaint." *Id.*

Moreover, Defendants ignored and refused to respond to *at least seven discovery requests* that Plaintiff served requesting information related to misconduct by other FDO employees. ECF No. 250, at 12. These discovery requests are relevant because if the FDO did not terminate other employees who engaged in similar conduct, then that fact strongly undermines the basis for an after-acquired evidence defense. *See Pennell*, 2011 U.S. Dist. LEXIS 150763, at *7 (explaining that discovery is "necessary" for a plaintiff "to fairly contest" the defense, and that such discovery would likely include (1) "interrogatories seeking to determine whether the defendants actually had terminated anyone in the past" for similar conduct, (2) "requests for the production for inspection of potentially voluminous personnel records concerning employees" found to have engaged in misconduct, (3) "requests for admissions that the defendant had or had not actually terminated employees" for similar conduct, and (4) "[a]dditional depositions of managers, human resources staff, or corporate designees of the defendants").

Defendants objected to every discovery request regarding other employees in the FDO as "overbroad" and "not relevant." ECF No. 250, at 12. Defendants failed to supplement their responses to those discovery requests even many months after raising Plaintiff's "conduct" as an issue in this litigation, in violation of Rule 26(e). Their failure to do so confirms that Plaintiff has been severely prejudiced by the denial of *any* opportunity to conduct discovery on this defense. *Pennell*, 2011 U.S. Dist. LEXIS 150763, at *7 (discovery is "necessary" for a plaintiff "to fairly contest" an after-acquired evidence defense). Even without discovery, however, it is clear that the defense is meritless because (1) ███████████████████████████████,

which Defendants have not even attempted to deny, and (2) other employees removed from the office and disclosed privileged FDO client information that, by Defendants' own admission, is not relevant to the claims in this litigation.

Incredibly, Defendants actually contend that Plaintiff "should have filed a motion to compel during the fact discovery period" to force them to disclose information that they were obligated to disclose under the Federal Rules of Civil Procedure. ECF No. 295, at 12. That is not the way discovery works. Indeed, the absurdity of Defendants' argument is highlighted by the fact that Plaintiff *specifically* requested this information in discovery, but Defendants failed to disclose it and even represented that the information was "irrelevant" to this case. ECF No. 250, at 12. Plaintiff could not have possibly known that there was any need to move to compel information that Defendants failed to disclose and specifically represented was "irrelevant." *Id.*

Perhaps the most tell-tale sign that an after-acquired evidence defense is waived is that on April 6, 2023—after Defendants had received all document production from Plaintiff *and* her privilege log—Defendants moved to amend their Answer to assert an affirmative defense of failure to mitigate. ECF No. 196. In response to the recordings Plaintiff produced in discovery, Defendants also moved to amend *more than a hundred paragraphs of their Answer* to withdrawal their false denials of Plaintiff's allegations, which were disproven by the recordings. ECF No. 196-2; ECF No. 196, at 3 (motion to amend referencing Plaintiff's "audio recordings she made without the knowledge of others who participated in the various conversations alleged in the Complaint"). Even though Defendants moved to amend their Answer in response to Plaintiff's recordings, *they did not assert an affirmative defense of after-acquired evidence. See id.* Defendants' failure to raise the defense, despite being on notice of the relevant facts, demonstrates that Defendants failed to act with diligence and sandbagged Plaintiff.

12

### III. Defendants Cannot Meet the Basic Foundational Requirements to Present an After-Acquired Evidence Defense at Trial.

Even if Defendants could overcome the above problems with an after-acquired evidence defense, they face another insurmountable obstacle. Specifically, Defendants cannot meet the basic foundational requirements to present the defense at trial, including a witness with personal knowledge of the facts supporting the defense and essential exhibits.

First, Defendants' response unequivocally confirms that the current Federal Defender, John Baker, will *not* be a witness at trial: "[W]ith respect to the current Federal Defender, Defendants did not list him on their witness list and do not intend to call him at trial." ECF No. 295, at 12. Indeed, Defender Baker could not be a witness at trial, because Defendants never disclosed him in discovery as a potential witness, including in (1) their initial disclosures, (2) their response to Plaintiff's interrogatory requesting all individuals with information relevant to their claims or defenses, or (3) their response to Plaintiff's interrogatory requesting their trial witnesses. Put simply, Defender Baker's name never came up in discovery, at any point. Defender Baker also was not listed as a trial witness in the parties' joint pretrial order filed on July 25, 2023. ECF No. 259, at 107–08. Accordingly, it is conclusively established that Defender Baker is not a witness in this case. Indeed, Defender Baker's declaration in support of Defendants' summary judgment motion, which they also cite in their response to the motion *in limine*, ECF No. 295, at 8, must be stricken and disregarded based on their undisputed failure to disclose him as a witness. *See* Fed. R. Civ. P. 37(c) (when a party fails to provide information in discovery, "the party is not allowed to use that information or witness to supply evidence *on a motion, at a hearing, or at a trial* . . . .") (emphasis added)).

Defendants cannot prove an after-acquired evidence defense without Defender Baker's testimony, as a matter of law. Defendants acknowledge that the FDO employee manual does not

require termination for any of the alleged conduct that they have raised (even assuming that the conduct constituted misconduct, which it does not for reasons discussed below). Rather, the FDO manual provides that all disciplinary decisions are discretionary and that *only* the "Defender" may impose "disciplinary action." ECF No. 245-25, at 70 (FDO Manual § 7.00) (stating that the list of grounds for possible disciplinary action does not "*imply that the Defender is obligated to take formal disciplinary action if any employee commits any of these offenses*" (emphasis in original)). Recognizing this fact, Defendants state that "the current Federal Defender has determined that Plaintiff would be ineligible for reinstatement because her conduct *arguably* violates several provisions of the FDO manual." ECF No. 295, at 8 (emphasis added). Defendants' use of the term "arguably" confirms that they cannot even fairly represent that Plaintiff committed misconduct, let alone that such conduct would preclude reinstatement or front pay. Indeed, confirming the discretionary nature of the FDO policy, even a criminal conviction would not necessarily disqualify an attorney from employment at the FDO. *See* Ex. G (advertisement dated May 1, 2023 for AFPD position stating: "*A prior criminal conviction is not necessarily disqualifying.*" (emphasis in original)).

Because disciplinary action is a discretionary matter that can only be decided by the Defender, no other employees other than the current Defender have the personal knowledge necessary to establish an after-acquired evidence defense. This conclusion is also confirmed by the fact that the bulk of the conduct Defendants are alleging occurred *after* Plaintiff's employment at the FDO. ECF No. 295, at 5–6 (discussing retention of information purportedly "without authorization" *after* she "resigned from the FDO"). That is doubly true of Defendants' meritless allegations based on Plaintiff's re-opened deposition. When an employer alleges post-termination conduct, the "proper inquiry" is whether the employer "would have reinstated" the

14

employee.  *Sellers v. Mineta*, 358 F.3d 1058, 1065 n.1 (8th Cir. 2004).[1]  Here, Defendants rely

on this issue "solely to avoid the equitable remedies of reinstatement or front pay, thereby

shifting the inquiry to whether [the employee] would have been reinstated."  *Id.*  Because only

the current Defender can testify about whether Plaintiff would have been reinstated, the fact that

the current Defender is not a witness is fatal to an after-acquired evidence defense.

Second, Defendants' trial exhibit list makes clear that there is another fundamental

foundational flaw in their defense.  Defendants' defense depends on the provisions of the FDO

manual, which Defendants allege that Plaintiff purportedly violated.  *See* ECF No. 295, at 8

(alleging that Plaintiff's "conduct arguably violates several provisions of the FDO manual").  But

Defendants did not even include the FDO manual—either the prior version that applied to

Plaintiff during her employment, or any current version—as an exhibit for trial.  ECF No. 259-1

(Defendants' exhibit list).  Defendants cannot prove a violation of the FDO manual, even an

"arguable" violation, when they do not even intend to introduce the manual as a trial exhibit.

## IV.    Defendants' Arguments Regarding After-Acquired Evidence are Meritless.

Defendants' arguments confirm that they are substituting innuendo and insinuation for

evidence and legal analysis in their attempt to baselessly smear an employee who brought

legitimate claims of workplace discrimination.  Notably, Defendants cannot point to *any* source

---

[1] Even as Defendants rely on *Sellers*, they ignore *Seller's* statement that "*McKennon* makes clear that the burden of establishing these facts rests on the employer."  *Sellers*, 358 F.3d at 1064; ECF No. 295, at 9 (relying on *Sellers* without disclosing to this Court that *Sellers* expressly recognizes the employer's burden of proof).  Defendants' own cited authority thus confirms that after-acquired evidence is an affirmative defense.  Notably, on remand, the district court held that the employer, a federal agency, "failed to meet its burden" on this defense because it could not show that its "actual employment practices" would show the plaintiff was ineligible for reinstatement—particularly because other employees had engaged in misconduct without being terminated.  *Sellers v. Peters*, No. 4:97CV2260 FRB, 2007 U.S. Dist. LEXIS 7288, at *21 (E.D. Mo. Jan. 31, 2007).  Thus, *Sellers* strongly supports Plaintiff's argument.

15

of authority for their purported after-acquired evidence theory except for vague and undefined provisions of the FDO manual. But Defendants ignore that their own conduct of misusing privileged client information—which they ignore instead of providing any substantive response—dooms an after-acquired evidence defense. Moreover, Defendants' reliance on an office policy is insufficient to defeat evidence-gathering in support of a discrimination claim, as recognized by Fourth Circuit precedent. *See Netter v. Barnes*, 908 F.3d 932, 940 (4th Cir. 2018) (the phrase "'in any manner' clearly forecloses any reasonableness requirement for participation claims," and "we see no basis to create a blanket exception to the *Glover* analysis for cases that happen to implicate employer confidentiality policies").

### A. Defendants' own conduct in mishandling privileged client information forecloses an after-acquired evidence defense.

Plaintiff's motion *in limine* argued that Defendants cannot assert a defense based on her alleged retention of work-related information because Defendants themselves improperly disclosed privileged FDO information—first, to the EDR investigator, and second, to the Department of Justice during this litigation. ECF No. 282, at 16, 23–24. Defendants did not respond to this argument and have thus conceded this point. *Sasser v. Safe Home Sec., Inc.*, No. 1:18CV746, 2019 U.S. Dist. LEXIS 138619, at *13 (M.D.N.C. Aug. 15, 2019) ("[F]ailing to respond to an argument constitutes an abandonment of a claim.").

Defendants' own conduct is plainly relevant to assessing the basis for an after-acquired evidence defense. When a party invokes an equitable defense based on the other party's alleged inequitable conduct, the defense "require[s] the invoking party to demonstrate its own good faith." *Diamonds Direct USA*, 2012 U.S. Dist. LEXIS 161316, at *14 n.5. Thus, a party has "failed to show that it is entitled to this equitable defense" when the party engages in "inequitable conduct of its own." *Id.* A similar principle exists for an after-acquired evidence

16

defense. An employer cannot prove the defense if other employees engaged in similar, or more egregious, conduct without consequence. *See EEOC v. BOK Fin. Corp.*, No. CIV 11-1132 RB/LAM, 2014 U.S. Dist. LEXIS 188612, at *9 (D.N.M. Jan. 30, 2014) (after-acquired evidence defense was precluded based on evidence "that Defendants apply their policies selectively"); *Rinaldi*, 2009 U.S. Dist. LEXIS 16101, at *24 (where the employer "was unwilling to terminate" another employee who condoned the plaintiff's alleged misconduct, the employer "has not prevailed on the after-acquired evidence defense"); *Sellers*, 2007 U.S. Dist. LEXIS 7288, at *21.

Here, there is *no* allegation that Plaintiff misused or disclosed privileged information. *Cf. Gonzalez v. City of McFarland*, No. 1:13-cv-00086 - JLT, 2014 U.S. Dist. LEXIS 111767, at *52–57 (E.D. Cal. Aug. 12, 2014) (rejecting after-acquired evidence defense based on plaintiff's use surreptitious recordings of staff meetings, in part, because defendants "have not identified any evidence that Plaintiff disclosed the information to any unauthorized person or entity"). At most, Defendants' allegations reflect a contrived dispute about the ownership of certain work-related information that Plaintiff was authorized to possess, which is addressed in the next section. By contrast, the record *does* show that Defendants mishandled privileged client information. First, the First Assistant removed from the office and disclosed a flash drive containing *thousands of pages* of privileged information during the EDR investigation. The First Assistant plainly did not have authorization for this vast release of client information. This is confirmed by his statement "**CAUTION: INCLUDES NUMEROUS CASE RELATED EMAILS**" when disclosing this material. Ex. A. Second, Defendants disclosed this privileged, FDO client information to the Department of Justice, which prosecutes the FDO's clients. Ex. B.

None of the individuals involved in this conduct, including the First Assistant, who remains employed at the FDO, faced any apparent consequences for this conduct. Given that

17

Defendants are "unwilling to terminate" other employees who engaged in conduct that is more serious than their allegations against Plaintiff, Defendants cannot prevail on an after-acquired evidence defense. *Rinaldi*, 2009 U.S. Dist. LEXIS 16101, at *24.

**B.    Defendants' analysis is misleading and ignores relevant authorities from this jurisdiction.**

Defendants' insinuation that Plaintiff's recordings and use of work-related information was "problematic," without providing any supporting authority for that contention, is also misleading in context of legal authorities that apply in this jurisdiction.

Start with EDR related recordings. Defendants ignore crucial legal authorities establishing that the practice of recording for the purpose of documenting a discrimination claim, and protecting the complainant from the perjury of others, is legal and ethical. *See, e.g.*, N.C. Gen. Stat. § 15A-287 (establishing that North Carolina is a one-party consent jurisdiction); N.C. RPC 171 (1994), *available at* https://tinyurl.com/38yx53kh (recording is not a violation of the North Carolina rules of professional conduct); ABA Formal Opinion 01-422 (June 24, 2001), *available at* https://tinyurl.com/5n87bh73 (recording is not "inherently deceitful" and "there are circumstances in which requiring disclosure of the recording of a conversation may defeat a legitimate and even necessary activity").

As the American Bar Association recognizes, "courts universally accept evidence acquired by such techniques." ABA Formal Op. 01-422, at 4. In fact, Plaintiff's use of recordings was not particularly intrusive or lengthy compared to other circumstances where employment discrimination plaintiffs successfully relied on recordings in litigation. For example, federal employee Simone Grimes secretly recorded her supervisor, the Director of the Federal Housing Finance Agency, as well as other employees in the agency, for a *year and a half* to support her harassment, retaliation, and equal-pay claims. *See* Federal Housing Agency

18

Employee Secretly Taped Director's Sexual Advances Toward Her, NPR (Aug. 21, 2018), *available at* https://tinyurl.com/2p97jew7. Presumably, not every conversation that she recorded was ultimately relevant to her claims, and such conversations likely included discussion of internal agency topics, given the nature of her claims. Her conduct was legally protected and led to a congressional investigation of her federal agency. *See* Katy O'Donnell, *Housing regulator settles sexual harassment suit tied to Mel Watt*, Politico, *available at* https://tinyurl.com/43pcmss8 (detailing settlement of lawsuit and noting lawmakers' anger at Director's argument that he "was exempt" from the agency's "anti-harassment policy").

In this case, like Grimes's, there can be no question that the use of recordings was a "legitimate and even necessary activity." ABA Formal Opinion, 01-422, at 4. In fact, Defendants themselves *relied on a recording of the Defender* that Plaintiff provided in taking disciplinary action against him. ECF No. 250, at 9. Moreover, this litigation confirms that if the recordings were not available, she likely would not have been able to bring her claims because the relevant officials could have falsely denied her allegations through well-worn tactics, including he-said-she-said and appeals to authority. Defendants' Answer, which initially falsely denied *more than 100 paragraphs* of the complaint and had to be extensively amended to retract those false denials after the recordings were disclosed, confirms that this concern is not theoretical. ECF No. 196.

By contrast, the only policy Defendants can point to is an FDO office manual that does not even prohibit recordings. Given the specific ethical and legal guidance from pertinent authorities for attorneys in this jurisdiction, coupled with the fact that officials of the federal judiciary relied on Plaintiff's recordings and *never* advised her that the use of recordings would violate an office policy, it is inconceivable that Plaintiff would have had fair notice that use of

19

this practice was not permitted.  Indeed, to even call these "secret" recordings is a misnomer, given that Plaintiff openly disclosed she was taking the recordings during her EDR proceeding.  *See* ECF No. 250, at 9.  Further, Defendants do not deny that ██████████████████████████ ████████████████████—even though they have refused to disclose relevant discovery regarding the issue.  ████████████████████████, which underscores the absurdity of Defendants' broad-brush accusations.

Seemingly recognizing that their arguments about the recordings are lacking in merit, Defendants contend that if the recordings were of office meetings where client cases were discussed, then none of the above authorities apply.  Defendants' argument seems to presume that acts of discriminatory conduct and a hostile environment never occurred in office meetings.  That argument is wrong, as discussed in the next section.  Further, Defendants' argument, again, misconstrues the ethical and legal principles that apply to this issue.

To begin with, Defendants must concede that the Federal Records Act does not apply to the materials at issue.  While characterizing their concern as "legitimate," it is, in fact, not "legitimate" to present generally applicable information regarding federal employees while failing to disclose judiciary-specific authorities regarding federal defenders offices that provide the contrary.  ECF No. 295, at 8–9.  Judiciary policy provides that client-related information does *not* constitute federal records.[2]  Guide to Judiciary Policy, Ch. 6, Vol. 10, Appx. 6C, *available at* https://tinyurl.com/2abj6r9e.  Defendants failed to disclose this policy, which fatally undermines their argument, to this Court.

---

[2] Indeed, it is likely that this policy exists to ensure that client-related records are protected according to applicable bar rules of each state, rather than improperly disclosed to the federal government as "records."

20

Moreover, Defendants misconstrue Plaintiff's argument regarding case files and, in doing so, continue to insinuate wrongdoing without any legal or factual basis. Information can be part of a client's case file, and therefore not a federal record, without belonging to the client. *Id.* ("Client case files are the client's property, held by the attorney, and *regulated by the bar rules of each state*." (emphasis added)). In this case, the information constitutes either incomplete work product or copies of materials, neither of which must be returned to the client under North Carolina bar rules. *See* N.C. R. Prof. Cond. 1.16 cmt. 10 ("The lawyer's personal notes and incomplete work product need not be released."); N.C. Bar, Client Rights & Responsibilities, *available at* https://tinyurl.com/yckrua43 (client is entitled to "[t]he client's file *not* including the lawyer's personal notes or incomplete work—the lawyer *may* keep a copy of the file for the lawyer's records" (emphasis added)).

Defendants are also wrong about the confidentiality policy. Defendants seem to recognize that activity related to Plaintiff's EDR proceeding *is* protected by judiciary policy, but they arbitrarily contend that such protected activity does not extend to a subsequent lawsuit challenging a fundamentally unfair and discriminatory EDR process. ECF No. 295, at 6. Defendants' contention reflects their ongoing denial about the fact that the Fourth Circuit held that Plaintiff's constitutional claims can proceed in federal court. This is undeniably protected activity. *See Monk v. Stuart M. Perry, Inc.*, Civil Action No. 5:07cv00020, 2008 U.S. Dist. LEXIS 62028, at *5 (W.D. Va. July 18, 2008) ("there is no question" that filing "a lawsuit in federal court" is protected activity). Because this lawsuit is protected activity, the protection provided to Plaintiff's participation in the lawsuit, including preservation of evidence, is "exceptionally broad." *Glover v. S.C. Law Enf't Div.*, 170 F.3d 411, 414 (4th Cir. 1999). That protection applies even to activities that Defendants perceive as "unreasonable" or "irrelevant,"

21

including evidence gathering. *Netter*, 908 F.3d at 937; *see id.* at 939 (recognizing that "an employee's ability to gather evidence" is a protected activity).

Plaintiff did not violate the FDO's confidentiality policy because her activity was expressly protected by judiciary policy. The judiciary's policies provide, consistent with Title VII, that office confidentiality policies do not prohibit activities related to an employee's reporting of wrongful conduct. Further, the policies recognize that protected activities may implicate privileged information and require the employee to protect such information from disclosure—which Plaintiff did, unlike Defendants. But even if Plaintiff did violate the confidentiality policy, that still would not vitiate the protection afforded her conduct. *Id.* at 940 (holding that there is no "blanket exception" to the protected activity analysis "for cases that happen to implicate employer confidentiality policies"). Defendants' assertions otherwise undermine the judiciary's stated intention to follow comparable Title VII principles and underscore their desire for judicial exceptionalism that is not grounded in the law and is fundamentally illegitimate.

### C. Office meetings were encompassed in Plaintiff's discrimination claim.

The assumption implicit in Defendants' argument is that office meetings at the FDO were not relevant to Plaintiff's claims of sex discrimination and a hostile working environment. That is not true. To the contrary, in Plaintiff's experience, office meetings were a breeding ground for bullying and discrimination at the FDO. That experience is also reflected in the accounts of other FDO employees, as demonstrated by the following limited list of examples:

- In a single all-staff meeting at the FDO, employees made comments mocking an African American Assistant United States Attorney for *rapping* to the jury; a supervising Team Leader mocked his intellectually disabled death-penalty client

22

for the "problems" caused by the fact that he "is so retarded"; and the Defender

mocked "all our clients"—who are predominantly African American—for

"want[ing] to smoke a blunt" during the holidays.  ECF No. 259, at 110–11;

Complaint ¶ 54.  ███████████████████████████████████████████

███████████████████████████████████████ Ex. P, at 31

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ *id.* at 42–43 ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

- When Plaintiff was on extended telework because Defendants failed to take

  prompt and appropriate action on her complaints, her co-workers mocked and

  belittled her and spread disparaging rumors in a staff meeting.  Complaint ¶¶ 348–

  54.  They joked "Should we meet her at Waffle House?" and "Where's Waldo?"

  and mocked her for her purported inability to do her job, confirming that the

  extended telework was an ostracizing, career-ending tangible employment action.

- ████████████████████████████████████████████████

  █████████████████████████████████████████████████

  █████████████████████████████████████████████████

  ████████████████████████████████████████████

  ██████████████████████████████████████████████████

  ████████████████████████████████████████████



Ex. P, at 17–18.

- In addition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. P, at 18.

-


Ex. P, at 70.

The fact that every office meeting ultimately was not relevant to the claims in the lawsuit does nothing to minimize the fact that office meetings were the source of a hostile working environment, for Plaintiff and other employees. Moreover, Defendants cannot be heard to complain that Plaintiff's evidence gathering on this point is overly broad. Defendants openly acknowledge that the First Assistant disclosed thousands of pages of privileged client information with *no* relevance to any claims or defenses in this litigation. Ex. A, B. Defendants have not even criticized or denounced this conduct in this litigation, let alone terminated the First Assistant, who remains employed at the FDO. Defendants' non-action against the First Assistant underscores the specious and self-serving nature of their defense.

## CONCLUSION

Plaintiff's motion *in limine* should be granted.

This the 23rd day of October, 2023.

Respectfully Submitted,

25

_/s/ Cooper Strickland_

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

_Counsel for Plaintiff_

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October, 2023, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com