IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Civil No. 1:20-cv-00066-WGY |
| | ) |
| UNITED STATES, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**PLANTIFF'S JOINT REPLY IN SUPPORT OF HER MOTION IN LIMINE TO PRECLUDE DEFENDANTS' EXPERT WITNESSES AND FACT WITNESSES THEY DID NOT DISCLOSE IN DISCOVERY**

Plaintiff provides the following joint reply in support of her motions *in limine* to preclude Defendants from presenting expert testimony related to an affirmative defense of "failure to mitigate," which was stricken from this case, and trial witnesses that they did not disclose in discovery. *See* ECF Nos. 285 (experts), 284 (trial witnesses).

**I.   Defendants Are Precluded from Presenting Evidence Related to an Affirmative Defense of Failure to Mitigate, Which Was Stricken from this Case.**

This Court denied Defendants' motion to amend their answer to assert a defense of failure to mitigate on April 25, 2023. ECF No. 206. Thereafter, Defendants did not assert any affirmative defenses in the parties' joint pretrial order. ECF No. 259, at 99 ("<u>Any requested amendments to the pleadings</u>. None."). Defendants' latest filings confirm that they are not raising any affirmative defenses in this litigation, including an affirmative defense of failure to mitigate. *See* ECF No. 297, at 5 (acknowledging that "Defendants' answer does not include the affirmative defense of failure to mitigate"). Accordingly, any evidence of affirmative defenses that Defendants have waived must be precluded at trial, including (1) Dr. Jackson's report that

1

provides the stated conclusion that "it appears [Plaintiff] is not willing to attempt to mitigate her claimed damages," ECF No. 285, at 3 (quoting Ex. A), and (2) Dr. White's report to the extent that it relies on Dr. Jackson's improper testimony. Allowing such evidence would not only be contrary to black letter law, but it would also be severely prejudicial because no discovery was even conducted on this defense. *Id.* (explaining that Plaintiff did not provide comprehensive production related to mitigation efforts or serve relevant discovery requests on Defendants, including regarding whether Defendants retaliated against her or damaged her reputation by treating her with hostility when she applied for other judiciary employment).

      Defendants offer no substantive response to these basic principles. Instead, Defendants contend that, despite their failure to plead any affirmative defenses in this litigation—and the fact that their motion to assert a defense of failure to mitigate was denied as untimely, ECF No. 206—they can submit the same defense that was already rejected by this Court in the guise of a "factor" in considering an "equitable" remedy. ECF No. 297, at 4–5. That is not the law. To the contrary, it is black letter law that "the defense of a wilful loss of earnings . . . is an affirmative defense and it is the employer's responsibility to carry that burden." *Lundy Packing Co. v. NLRB*, 856 F.2d 627, 629 (4th Cir. 1988); *see also Cavalier Hotel Corporation*, 48 F.3d 1343, 1358 (4th Cir. 1995) ("defendant [must] come[] forward with evidence that the plaintiff did not exert reasonable efforts to mitigate her damages"). In accordance with this principle, courts recognize that "'the defendants bear the burden of proof' in demonstrating [a] plaintiff's failure to mitigate." *Westmoreland v. TWC Admin. LLC*, No. 5:16-cv-24, 2018 U.S. Dist. LEXIS 68882, at *14 (W.D.N.C. Apr. 24, 2018) (quoting *Wagner v. Dillard Dept. Stores, Inc.*, 17 Fed. Appx. 141, 153 (4th Cir. 2001)). This principle does not infringe on the Court's discretion to award equitable remedies, as Defendants contend, contrary to binding precedent from the Fourth

Circuit. *See id.* Rather, this principle simply recognizes which party has "the burden of proof" in pleading and proving affirmative defenses to equitable relief. *Id.*

Aside from providing general citations to cases describing the factors relevant to front pay, which do not address the issue of affirmative defenses, the *only* citation Defendants provide for the novel proposition that they are not required to prove failure to mitigate as an affirmative defense is *Starr v. QuikTrip Corp*, a district court case from the Northern District of Oklahoma. ECF No. 297, at 6. Defendants contend that *Starr* "permitted the defendant to introduce evidence of the plaintiff's failure to mitigate damages . . . even though the defendant had not pleaded mitigation as an affirmative defense." *Id.* But Defendants conveniently omit relevant context from that decision that renders their argument misleading. Below is the relevant context that Defendants failed to disclose to this Court:

> Starr argues QuikTrip cannot introduce evidence of Starr's failure to mitigate damages because it did not plead mitigation as an affirmative defense. The "USERRA . . . makes no mention of an obligation to mitigate. However, federal regulations do." *Campbell v. Catholic Comm. Servs. of W. Wash.*, No. C10-1579RSL, 2012 U.S. Dist. LEXIS 22320, 2012 WL 600725, at *3 (W.D. Wash. Feb. 22, 2012). Ordinarily, the burden of pleading and proving mitigation rests with an employer. *See id.* ("Failure to mitigate is generally a valid affirmative defense."); *Serrichio v. Wachovia Servs., LLC*, 606 F.Supp.2d 256, 262 (D. Conn. 2009) (similar); *Davis v. Crothall Servs. Grp., Inc.*, 961 F.Supp.2d 716, 738 (W.D. Pa. 2013) (similar). But here, mitigation is inherently relevant to the court's consideration of equitable damages. *See Carpenter v. Tyler Indep. Sch. Dist.*, 429 F.Supp.2d 848, 852 (E.D. Tex. 2006), *aff'd by* 226 Fed. App'x 400 (5th Cir. 2007).

*Starr v. Quiktrip Corp.*, No. 14-CV-621-GKF-TLW, 2016 U.S. Dist. LEXIS 195019, at *3-4 (N.D. Okla. Nov. 22, 2016). In short, *Starr* stands for exactly the opposite proposition that Defendants represented to this Court. *Starr* recognizes that "[o]rdinarily, the burden of pleading and proving mitigation rests with an employer." *Id.* However, as the decision states, there is an

3

exception to this general rule for equitable remedies under the Uniformed Services Employment and Reemployment Rights Act because the duty to mitigate is codified in an implementing regulation to the statute. *See id.* Contrary to Defendants' assertions, *Starr* confirms the obligation to plead and prove failure to mitigate as an affirmative defense.

Based on Defendants' filings and their expert reports, there is no question that they are improperly attempting to raise an affirmative defense of failure to mitigate that is not part of this case. Defendants assert that "Plaintiff is capable of earning just as much as—if not more than— what she earned at the FDO in the near future." ECF No. 297, at 1. Defendants' report from Dr. Jackson opines that "given Plaintiff's background and credentials, she is 'capable of earnings comparable to and even exceeding her Assistant Public Defender salary.'" *Id.* at 4. Further, both of Defendants' experts opine on what they deem to be "Plaintiff's earnings capacity when estimating her mitigating earnings," *id.*, a topic which was not even subject to discovery.

These opinions are unquestionably aimed at developing an improper affirmative defense of failure to mitigate. After all, the inquiry regarding failure to mitigate is whether the plaintiff was "reasonably diligent in seeking and accepting new employment substantially equivalent to that from which [s]he was discharged." *Westmoreland*, 2018 U.S. Dist. LEXIS 68882, at *14 (quoting *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985)). A plaintiff "need not go into another line of work, accept a demotion, or take a demeaning position." *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982). Instead, "the burden regarding mitigation requires the defendant to prove that substantially equivalent work was available and that the employee did not use reasonable diligence to obtain it." *Crump v. United States Dept. Navy*, 205 F. Supp. 3d 730, 745 (E.D. Va. 2016). "[A]n employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so." *Moore v. Univ.*

4

of Notre Dame, 22 F. Supp. 2d 896, 906 (N.D. Ind. 1998). "Furthermore, a claimant has no obligation to accept lesser employment … or relocate to a new community." *Id.* at 906–07. The guiding question is whether the plaintiff has reasonably attempted to obtain "comparable employment," even if the plaintiff is unsuccessful in offsetting lost earnings. *Id.*

Defendants' attempt to undermine Plaintiff's assertion "that she will never find employment comparable to her former position" is a quintessential defense based on an alleged failure to mitigate. ECF No. 297, at 1. Moreover, Defendants misconstrue the standard for this defense, which is another basis to preclude their expert reports. Defendants have not even *attempted* to explain what comparable employment existed that Plaintiff allegedly should have pursued. Defendants cannot establish a failure to mitigate defense without meeting this threshold requirement. *See, e.g., Fresquez v. BNSF Ry. Co.*, 421 F. Supp. 3d 1099, 1112 (D. Colo. 2019) (rejecting failure to mitigate defense because the defendant "failed to establish that there were suitable positions" comparable to the plaintiff's prior employment); *Warren v. Cty. Comm'n of Lawrence Cty.*, 826 F. Supp. 2d 1299, 1314 (N.D. Ala. 2011) (recognizing the "basic point that a longer period of front pay is merited in this case based on the unique and inherent difficulties [the plaintiff] faces in obtaining comparable alternate employment"); *Hunter v. Town of Mocksville*, 201 F. Supp. 3d 750, 760 (M.D.N.C. 2016) (rejecting failure to mitigate defense where employee was unable to obtain "a position comparable to the one he lost").

Defendants' failure to meet this requirement is unsurprising because no comparable employment exists. Defendants have never contested that all opportunities in indigent criminal defense outside of the FDO offer far less compensation than Plaintiff's prior position, and so there is no comparable employment to the job she once held. Instead of recognizing this fact, Defendants apparently are asking this Court to require that Plaintiff abandon her chosen career in

5

Case 1:20-cv-00066-WGY     Document 311     Filed 10/23/23     Page 5 of 13

indigent criminal defense and become an associate in a big law firm because she was sexually harassed and discriminated against. That is not a valid defense. To the contrary, the Supreme Court has expressly recognized that a plaintiff "need not go into another line of work" to mitigate her damages. *Ford Motor Co.*, 458 U.S at 231. Nor is Plaintiff's location relevant: the rate for this type of work is identical no matter where she works in the state. *See* N.C. Office of Indigent Servs., Currently Hourly Assigned Counsel Rates, *available at* https://tinyurl.com/25wdm3hy. Based on Defendants' failure to properly assert the defense in this litigation—and the fundamental unfairness that would result in considering a defense that was not subject to discovery, and is meritless in any event—Defendants should be barred from presenting expert testimony based on this improper defense.

Additionally, Defendants do not contest that they failed to provide hundreds of pages of relevant documents in discovery until after the period to do so required under Rule 26(e)(2) had expired. ECF No. 297, at 8–10. Misleadingly, Defendants contend that their belated production "included documents that were created after June 1." *Id.* at 8. In fact, the vast majority of the documents were created *before* June 1, including the emails that Defendants' counsel sent to their experts with the documents the experts used in creating their reports. These emails necessarily had to be created before June 1, when the reports were due.

Defendants do not provide any justification for their belated disclosures, but instead complain about Plaintiff's timely supplementation of her front pay expert's report after her expert, Dr. Gary Albrecht, explained during his deposition that he had made a minor math error in calculating her annual leave. Plaintiff had no prior awareness of this minor error, which apparently came to Dr. Albrecht's attention as he was preparing for the deposition. During the deposition, Dr. Albrecht fully explained the nature of the error and how it affected his

6

calculations, subject to hours of examination by Defendants' counsel. He also provided his revised calculations for lost earnings and the tax offset. Following the deposition, Dr. Albrecht revised his written report to reflect the slight effect the error had on his final calculations, and his revised report and supporting documentation were immediately provided to Defendants. This supplementation was timely under Fed. R. Civ. P. 26(e)(2), which provides that "the party's duty to supplement extends both to information included in the report *and to information given during the expert's deposition*." (emphasis added). The rule states that "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.* The rule thus recognizes that new information may be provided during the expert's deposition, and that supplementation of this information is timely so long as it is provided by the time the party's pretrial disclosures are due. Contrary to Defendants' assertions, Plaintiff's timely supplementation proves that she did comply with the rules governing expert disclosures, unlike Defendants. Defendants cannot credibly contend they have been prejudiced by the timely disclosure and supplementation of this information.

Defendants also contend that Plaintiff "has not produced" certain documents related to her experts. *Id.* at 8–9. Defendants received Plaintiff's written communications with her front pay expert, including her economic loss questionnaire, prior to the June 1 deadline. *See* ECF No. 285, at 8–9 (explaining that Defendants had threatened to file a motion to compel if Plaintiff did not provide these disclosures, even though Defendants did not provide the same disclosures to Plaintiff). Defendants also received all written communications between Plaintiff's prior trial counsel and her workplace investigations expert prior to her deposition. Finally, Defendants received compensation information regarding Plaintiff's experts. Pursuant to Rule 26(a) and Defendants' production request, Plaintiff was obligated to disclose "a statement of the

7

compensation to be paid" the experts, Fed. R. Civ. P. 26(a)(2)(B)(vi), and "the current fee schedule for the expert" and "any bills or invoices generated by the expert." Defendants obviously did receive this information, as it was a subject of both experts' depositions by Defendants.

II. **Defendants Should Be Precluded from Presenting Witnesses They Did Not Disclose in Response to Plaintiff's Interrogatory Requesting Their Trial Witnesses.**

Defendants do not contest that they failed to disclose *any* trial witnesses in response to Plaintiff's interrogatory requesting that Defendants "[i]dentify all persons whom Defendants intend to call as witnesses at trial." ECF No. 296, at 4 (quoting ECF No. 284-3). Indeed, some of Defendants' trial witnesses were not even identified in their initial disclosures. *See id.* Instead of providing any substantive response, Defendants contend that "[t]he relevant point is that Defendants complied with their disclosure obligations by identifying witnesses in Defendants' initial disclosures and/or in response to Plaintiff's Interrogatory One." *Id.*

That, in fact, is not the relevant point. As Defendants themselves recognized earlier in this case, providing general disclosures in discovery about the possible relevancy of an individual is not sufficient to put the opposing party on notice that the individual will actually be a witness at trial. That is why a party is entitled to serve an interrogatory requesting that the opposing party name their trial witnesses, as both Plaintiff and Defendants did here. In compliance with Federal Rule of Civil Procedure 34, which requires a response to an interrogatory within 30 days, and Federal Rule Civil Procedure 26(e), which requires the party to supplement discovery responses, Plaintiff named her potential trial witnesses during the discovery period, including by supplementing her disclosures with additional names based on new information that affected her decision whether to list the individuals as witnesses. In contrast to Plaintiff, who complied with all disclosure obligations, Defendants refused to respond

8

to Plaintiff's interrogatory requesting their trial witnesses and failed to timely update their response when the information became available.

Defendants do not contest any of these facts. Instead, they contend that because Plaintiff "did not object" to their interrogatory response, it was permissible for them to refuse to disclose any of their trial witnesses during the discovery period. ECF No. 296, at 4–5. Defendants have repeatedly raised variations of this erroneous argument to excuse their failure to comply with discovery obligations. This argument inverts the burden imposed by the Federal Rules of Civil Procedure. The rules impose the burden on the *producing party* to disclose all information and witnesses they intend to rely on at trial, and to timely supplement discovery responses. Fed. R. Civ. P. 26(a), (e). If the party does not provide such information, the "party *is not allowed* to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c) (emphasis added). Thus, it was Defendants' obligation to disclose their trial witnesses in response to Plaintiff's interrogatory. Because they failed to do so, they are "not allowed" to present those witnesses "on a motion, at a hearing, or at a trial." *Id.*

Further, Defendants' own filings demonstrate the prejudice caused by a party's failure to disclose their trial witnesses and establishes the law of the case that must be applied to Defendants. *See United States v. Moussaoui*, 483 F.3d 220, 232 (4th Cir. 2007) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)). Defendants successfully moved for sanctions because Plaintiff disclosed four potential trial witnesses—who had already been disclosed in her initial disclosures—on the last day of discovery. *See* ECF No. 211, 233. Defendants argued that even though Plaintiff had already named the witnesses in her initial disclosures, and the witnesses were plainly known to Defendants because they were Defendants' own employees,

Plaintiff had engaged in "gamesmanship" that was "unreasonable and inconsistent with the Federal Rules." ECF No. 211, at 1–2. Specifically, Defendants explained:

> Defendants were surprised by Plaintiff's last-minute disclosure of these witnesses. Although the witnesses were among the 52 individuals listed in Plaintiff's initial disclosures, the entire purpose of Defendants' Interrogatory Two was to avoid surprise by seeking the identity of the witnesses that Plaintiff actually anticipated calling at trial.

*Id.* at 3. Defendants prevailed on their motion when this Court granted their request to reopen discovery to depose the witnesses. ECF No. 233, at 1. Thus, according to basic principles of the law of the case doctrine and judicial estoppel, Defendants must be held to the same standard that they advocated to this Court in their filings and benefitted from in obtaining a favorable ruling. *See Lamonds v. GMC*, 34 F. Supp. 2d 391, 395 (W.D. Va. 1999) ("The Fourth Circuit has clearly held that the doctrine of judicial estoppel bars parties from prevailing as a result of inconsistent positions and representations made in a proceeding during the course of the same litigation." (citing *Zurich Insurance Co.*, 667 F.2d at 1166 (4th Cir. 1982)). Under the standard that Defendants themselves advocated successfully to this Court, disclosing a large number of individuals in initial disclosures or other discovery responses is not a reasonable substitute for naming the party's trial witnesses during discovery. Rather, by their own account, when the party fails to disclose trial witnesses until the last minute—or not at all—the party engages in "gamesmanship" that is "unreasonable and inconsistent with the Federal Rules." ECF No. 211, at 1–2.

Defendants plainly failed to comply with the standard that Defendants themselves set and benefitted from. Defendants failed to disclose *any* trial witnesses in response to Plaintiff's interrogatory. Defendants' only excuse now is that because they subjectively believe that Plaintiff's initial disclosures included what they characterize as "an extremely large number of

witnesses" (an approach which is required with the Federal Rules of Civil Procedure), that there should be a double standard where Plaintiff is required to disclose trial witnesses in discovery, but Defendants are not. ECF No. 296, at 4. But Defendants themselves disclosed a large number of witnesses in response to Plaintiff's interrogatory requesting individuals with information relevant to this case. The number of witnesses they identified is far greater than Plaintiff could have possibly deposed, and it is not meaningfully distinguishable from the number of witnesses provided in her initial disclosures. Moreover, Defendants are seeking to present some of these witnesses as trial witnesses even though they were never even disclosed in Defendants' initial disclosures.

In short, Defendants' argument boils down to an assertion that they should be afforded a more favorable legal standard than Plaintiff—which is different from the standard they successfully advocated to this Court and benefitted from in obtaining a favorable ruling—because her initial disclosures contained 52 witnesses, the vast majority of whom are judiciary employees, whereas their interrogatory response listing individuals with information relevant to this case contained 22 witnesses. That is a thin reed upon which to rest their argument. *Cf. Lamonds*, 34 F. Supp. 2d at 394 (the purpose of judicial estoppel is "to prevent a party from 'playing fast and loose with the courts'" and "to protect the integrity of the courts and the judicial process"). This Court should grant the motion *in limine* and prevent Defendants from "capitaliz[ing] on [their] noncompliance" with discovery obligations. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 279 (4th Cir. 2005).

## CONCLUSION

Plaintiff's motions *in limine* should be granted.

This the 23rd day of October, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

    Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

    Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

    Danielle Young at Danielle.young2@usdoj.gov

    */s/ Cooper Strickland*
    Cooper Strickland
    N.C. Bar No. 43242
    P.O. Box 92
    Lynn, NC 28750
    Tel. (828) 817-3703
    cooper.strickland@gmail.com