# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| In re CARYN DEVINS | ) | |
| STRICKLAND, | ) | No. 2023-_____ |
| Petitioner. | ) | |
| | ) | [No. 1:20-cv-00066] |
| _____ | ) | |

## PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION .............................................................................. 1

STATEMENT OF FACTS ................................................................. 2

    A.    This Court Holds that Plaintiff's Constitutional Claims Against Judiciary Officials Survived Dismissal ........... 2

    B.    Plaintiff Moves for a PI Because Any Potential Recovery is Limited to Prospective Equitable Relief ..... 3

    C.    The District Court Forces Plaintiff to Go to Trial in "a Week, Two Weeks," Without Discovery, or Else Forgo Her Right to a PI. ........................................................... 3

    D.    After Plaintiff Appeals the District Court's PI Refusal, the District Court and Defendants Inaccurately Represent that the District Court Desires a "Prompt Evidentiary Hearing." ......................................................................... 4

    E.    Following Dismissal of Plaintiff's Appeal on the Basis that the Court "Desires" a "Prompt Evidentiary Hearing," the District Court Denies Plaintiff a Prompt Evidentiary Hearing ......................................................................... 6

    F.    The District Court Again Confirms its Unlawful Hobson's Choice ............................................................................. 8

    G.    Since the District Court's Denial of a Prompt Evidentiary Hearing, Plaintiff's PI Motion Has Only Been Subject to Further Unjustified Delay ................................................ 9

REASONS WHY THE WRIT SHOULD ISSUE ............................. 14

I.    Plaintiff Has A Clear And Indisputable Right To Relief ........ 17

i

A. The District Court's "Substantial Delay" in Acting on a Matter of Statutory Priority Warrants the Remedy of Mandamus ...................................................................... 17

B. This Court's Prior Decision that the District Court Would Rule "Promptly" on the PI Motion Further Warrants Relief. ........................................................... 21

II. No Other Adequate Remedy Is Available ............................... 22

III. Issuance Of The Writ Would Be Appropriate ......................... 23

CONCLUSION ................................................................................... 31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

Case 1:20-cv-00066-WGY   Document 314-1   Filed 10/30/23   Page 3 of 80

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Abbott v. Perez,*
138 S. Ct. 2305 (2018) ................................................................................ 4

*Cheney v. United States Dist. Court,*
542 U.S. 367 (2004) ........................................................................... 22, 23

*Co. Doe v. Pub. Citizen,*
749 F.3d 246 (4th Cir. 2014) ........................................................................ 28

*Gellman v. Maryland,*
538 F.2d 603 (4th Cir. 1976) ................................................................. 5, 24

*Henry v. Greenville Airport Comm'n,*
284 F.2d 631 (4th Cir. 1960) ........................................................................ 25

*In re Adams,*
No. 14-11102-F, 2014 U.S. App. LEXIS 14513 (11th Cir. July 16, 2014) ...... 21

*In re Hicks,*
118 F. App'x 778 (4th Cir. 2005) ............................................................ 17, 18

*In re Hicks,*
279 F. App'x 236 (4th Cir. 2008) (unpub. per curiam) ........................... *passim*

*In re Murphy-Brown, LLC,*
907 F.3d 788 (4th Cir. 2018) ................................................................. 24, 30

*Jackson v. Beard,*
828 F.2d 1077 (4th Cir. 1987) ...................................................................... 11

*Kerr v. United States Dist. Court,*
426 U.S. 394 (1976) ...................................................................................... 17

*League of Women Voters of N.C. v. North Carolina,*
769 F.3d 224 (4th Cir. 2014) ........................................................................ 25

*Madden v. Myers,*
102 F.3d 74 (3d Cir. 1996) ......................................................... 16, 17, 21, 22

iii

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land,*
    915 F.3d 197 (4th Cir. 2019) ................................................................. 3

*Nwaubani v. Grossman,*
    806 F.3d 677 (1st Cir. 2015) ....................................................... *passim*

*Office of Consumers' Counsel, State of Ohio v. F.E.R.C.,*
    826 F.2d 1136 (D.C. Cir. 1987) ........................................................ 21

*Rosario-Urdaz v. Rivera-Hernandez,*
    350 F.3d 219 (1st Cir. 2003) ........................................................ 3, 30

*Sprague v. Ticonic Nat'l Bank,*
    307 U.S. 161 (1939) ........................................................................ 21

*Strickland v. United States*,
    32 F.4th 311 (4th Cir. 2022) ............................................................. 2

*United States v. Bell*,
    5 F.3d 64 (4th Cir. 1993) ................................................................. 21

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ........................................................................ 27

## Statutes and Rules

28 U.S.C. § 1657 ............................................................... *passim*

Fed. R. Civ. P. 29 ..................................................................... 9

Fed. R. Civ. P. 40 ................................................................... 15

Fed. R. Civ. P. 65 ............................................................. *passim*

Fed. R. Evid. 803 ................................................................... 10

Fourth Cir. Loc. R. 12 ........................................................... 16

# INTRODUCTION

Plaintiff returns to this Court with a discrete request: enforce the Court's decision from over a year ago stating that the district court would rule "promp[tly]" on her motion for preliminary injunction ("PI"). No. 22-1963, Doc. 42, at 4.

Plaintiff's PI motion was filed on July 27, 2022. ECF No. 125. On October 18, 2022, this Court dismissed Plaintiff's appeal challenging the district court's refusal to rule on her PI motion before a "consolidated" trial, which was previously scheduled for nearly a full year later, in September 2023. Relying on the assurances of the district court and Defendants that Plaintiff's motion would be ruled on promptly, this Court stated that "the district court has not yet ruled" on the PI motion and "'desires a prompt evidentiary hearing.'" No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1). A "prompt evidentiary hearing" never occurred. To the contrary, the record conclusively establishes that Plaintiff was denied any consideration for a PI, a right to which she was entitled by law. And now, there is yet further delay. The district court has tentatively scheduled a trial in December 2023—a full *year and a half* after the PI motion was filed—but it has since indicated that this trial date may also be delayed.

This Court must intervene. Condoning this conduct would risk setting a precedent that anytime a district court disfavors a particular plaintiff's PI motion, the court can simply "consolidate" the proceedings and delay the trial, thereby

1

denying the plaintiff any meaningful appellate review. That result would have negative repercussions far beyond this case and risks destabilizing the jurisprudence of this Circuit. Because the district court has violated Plaintiff's clear and indisputable right to expedited treatment of her PI motion, *see* 28 U.S.C. § 1657(a), and no other adequate remedy is available, Plaintiff has established she is entitled to the writ of mandamus.

## STATEMENT OF FACTS

### A. This Court Holds that Plaintiff's Constitutional Claims Against Judiciary Officials Survived Dismissal.

This case involves claims of equal protection and due process violations against officials of the federal judiciary. On April 26, 2022, this Court reversed the district court's dismissal of Plaintiff's complaint. The Court held, for the first time, that a federal judiciary employee may pursue litigation in federal court to remedy judiciary officials' deliberate indifference to sexual harassment and implementation of a fundamentally unfair process for resolving workplace discrimination claims. *Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022). The Court limited Plaintiff's recovery to prospective equitable relief, including front pay in lieu of reinstatement, and held that she may not recover back pay. *Id.* at 366, 369–71.

2

**B. Plaintiff Moves for a PI Because Any Potential Recovery is Limited to Prospective Equitable Relief.**

Following remand, Plaintiff moved for a PI on July 27, 2022. ECF No. 125. Plaintiff's motion explained that because she may only recover prospective equitable relief, and back pay is unavailable, she will suffer irreparable harm absent a PI. ECF No. 125-1, at 1, 17. Precedent from this Circuit and others establishes that "unrecoverable" monetary losses of this type qualify as "irreparable injury justifying preliminary relief." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019); *see also Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003) (stating that it is "nose-on-the-face plain" that the unavailability of back pay is "irreparable harm").

**C. The District Court Forces Plaintiff to Go to Trial in "a Week, Two Weeks," Without Discovery, or Else Forgo Her Right to a PI.**

On September 8, 2022, the district court held a hearing on the PI motion. The district court stated that it would "collapse" consideration of the PI motion with trial on the merits. *See* Entry Order Dated September 15, 2022. The district court stated that Plaintiff must proceed to a "trial on the merits" within "a week, two weeks," without any discovery, or else forgo her right to a PI until the trial previously scheduled for September 2023. ECF No. 149, at 4, 7. The district court stated that "[i]f you want to wait till September [2023], then I will wait, and that's when I will determine the matter, but that's not indefinite." *Id.* at 9. The district

3

court judge previously has been admonished for engaging in precisely this conduct, which violates Rule 65(a) and imposes an "unfair[]" and "inappropriate[]" "Hobson's Choice" on the plaintiff, by his home circuit. *Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015). Confirming the unfairness and inappropriateness of this procedure, when Plaintiff objected that she needed discovery before trial, the district court dismissed these concerns by stating that "[t]here isn't a constitutional right to discovery." ECF No. 149, at 8.

### D. After Plaintiff Appeals the District Court's PI Refusal, the District Court and Defendants Inaccurately Represent that the District Court Desires a "Prompt Evidentiary Hearing."

Plaintiff appealed the district court's order refusing her PI on the basis that "consolidating" a PI motion with a trial scheduled a full year later, in September 2023, was a refusal of the PI. *See* ECF No. 143 (notice of appeal from the "court's refusal to grant and/or denial of her motion for preliminary injunction"). Plaintiff's appeal was grounded in Supreme Court precedent stating that district courts are "not allowed . . . to shield [their] orders from appellate review" regarding PI motions and imposing a "practical effect" inquiry that "prevents such manipulation." *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (citation omitted). It was also grounded in Fourth Circuit precedent stating that ordering a consolidated trial without any discovery "comes perilously close to a violation of due process." *Gellman v. Maryland*, 538 F.2d 603, 606 (4th Cir. 1976); *see also Nwaubani*, 806

4

F.3d at 680 n.7 (recognizing that the procedure ordered by the district court "unfairly" and "inappropriately" imposes a "Hobson's choice").

A week after Plaintiff's notice of appeal was filed, on September 22, 2022, the district court issued an order stating that the court "desires a prompt evidentiary hearing" on "plaintiff's motion for immediate equitable relief." ECF No. 150, at 1. Seizing on this language, Defendants represented to this Court that dismissal of Plaintiff's appeal was warranted because the district court did not refuse the PI, but merely did not wish to rule on the PI "without the benefit of an evidentiary hearing." No. 22-1963, Doc. 19, at 12. Defendants also represented that the district court was "open to revisiting the issue" of a consolidated trial, *id.* at 1, and had "offered to discuss the timing of a pre-trial evidentiary hearing," Doc. 37, at 1. Defendants characterized the district court's September 22, 2022 order as stating that the court had "reiterated its 'desire' to hold a 'prompt evidentiary hearing' on Strickland's motion *prior to trial.*" *Id.* (emphasis added).

On October 18, 2022, relying on the district court's order and Defendants' representations, this Court granted Defendants' motion to dismiss Plaintiff's appeal. The Court's reasons for dismissing the appeal were as follows:

> [A] review of the district court record reveals that the district court has not yet ruled on Strickland's motion for preliminary injunction. More specifically, the record indicates that the district court declined Strickland's request to rule on her preliminary injunction motion solely on the basis of affidavits, and instead "desires a prompt

5

evidentiary hearing" in order to resolve the motion for preliminary injunction. ECF No. 150 at 1. To the extent that Strickland contends the district court's refusal to grant her motion for preliminary injunction solely on the basis of submitted affidavits "in effect" constitutes a denial of her motion, we disagree. As the defendants point out, the district court has stated that it was not prepared to issue such a ruling without the benefit of a more fully developed evidentiary record, but that it is open to further discussing the matter with the parties. Notably, the Federal Rules of Civil Procedure do not require a district court to forego an evidentiary hearing before ruling on the merits of a motion for preliminary injunction. Further, Rule 65(a)(2) expressly authorizes a district court, as occurred here, to "advance the trial on the merits and consolidate it with the hearing" on the motion for preliminary injunction. Fed. R. Civ. P. 65(a)(2).

No. 22-1963, Doc. 42, at 4.

### E. Following Dismissal of Plaintiff's Appeal on the Basis that the Court "Desires" a "Prompt Evidentiary Hearing," the District Court Denies Plaintiff a Prompt Evidentiary Hearing.

On October 21, 2022, based on Defendants' representations that the district court desired a "'prompt evidentiary hearing'" on the PI motion "prior to trial," Doc. 37, at 1 (quoting ECF No. 150, at 1), Plaintiff filed a "motion for prompt evidentiary hearing" on the PI motion. ECF No. 157. Contradicting what they represented to this Court, Defendants opposed Plaintiff's motion and argued that the district court "has already appropriately consolidated" the PI with "trial on the merits" and had, therefore, not authorized a prompt evidentiary hearing on the PI motion. ECF No. 158, at 1.

6

On October 31, 2022, the district court orally denied Plaintiff's motion for a prompt evidentiary hearing. The district court stated that a prompt evidentiary hearing was "not going to happen" because it was not going to hear evidence "twice." ECF No. 171, at 32, 36. The district court explained that "of course you have the right" to an evidentiary hearing, "but if I did that, then you're onto the Court of Appeals." *Id.* at 36. The district court stated that it would not be "helpful" if Plaintiff exercised her right to an evidentiary hearing and a subsequent appeal. *Id.* at 29. The court stated: "I think the Fourth Circuit understands exactly what I'm trying in fairness to do here." *Id.* at 28.

The district court reiterated that Plaintiff must proceed to trial in November or December 2022 without discovery, which still had not meaningfully taken place, or else she would be required to forgo a ruling on her PI motion. *Id.* at 39. When Plaintiff again objected that she needed discovery before trial, the district court stated that "[s]ubpoenas work" and "this idea that we're going to have a round of depositions . . . there is no requirement for that due process or otherwise." *Id.* at 39, 31. Following the hearing, in accordance with the district court's order requiring the parties to submit a consolidated trial date, the parties jointly notified the court that a September 2023 trial date was necessary to ensure that they could "adequately conduct discovery and prepare for trial." ECF No. 160, at 1.

Plaintiff notified this Court through a petition for rehearing that the district court had denied a "prompt evidentiary hearing" and there was no possibility of a ruling on her PI motion before September 2023, more than a full year after the PI motion was filed. No. 22-1963, Doc. 44. This Court denied Plaintiff's petition for rehearing on December 16, 2022. Doc. 49.

**F.      The District Court Again Confirms its Unlawful Hobson's Choice.**

On January 26, 2023, the district court entered a written order "formally" denying Plaintiff's motion for prompt evidentiary hearing. ECF No. 185, at 1 ("Upon reflection, the Court realizes that it has not formally ruled on the Plaintiff's 'Motion For Prompt Evidentiary Hearing.'"). The district court's order "outline[s] its insistence upon a full trial" rather than deciding the PI motion promptly as required by statutes and procedural rules. *Id.* at 2. The district court's order "reiterates that it is the parties, not the Court, who insist that they need until September 2023 to be ready for trial," and contends that the court's actions were "expressly confirmed . . . by the Fourth Circuit." *Id.* at 2–3.

As crucial context for this order, the district court had delayed acting on the parties' motion for a protective order for months and did not enter it until January 20, 2023, a mere six days before its January 26, 2023 order "insist[ing] upon a full trial." *See* ECF No. 183. The district court was thus well-aware at the time of its January 26, 2023 order that no meaningful discovery had yet taken place, because

8

Defendants refused to provide discovery until the protective order was formally entered.[1]  *See, e.g.*, ECF No. 176, at 6 n.4 (stating in December 2022 filing that "Defendants have . . . explained to Plaintiff that they cannot produce confidential documents until the Court enters the parties' proposed protective order").  The district court's order again confirmed that it had imposed an "unfair[]" and "inappropriate[]" "Hobson's Choice," and that it believed it had the express approval of this Court to do so.  *Nwaubani*, 806 F.3d at 680 n.7.

### G. Since the District Court's Denial of a Prompt Evidentiary Hearing, Plaintiff's PI Motion Has Only Been Subject to Further Unjustified Delay.

Since the district court's formal denial of a prompt evidentiary hearing, there has been no action on Plaintiff's PI motion since January 26, 2023.  That is true even though discovery has since closed and the record has been "fully developed" through briefing on summary judgment, allaying this Court's stated concerns about a premature ruling on the PI motion.  No. 22-1963, Doc. 42, at 4.

---

[1] Defendants refused to provide "confidential" discovery, including the EDR investigation report and records of disciplinary action, even though they did not timely move for a protective order as required by the rules of civil procedure, and Plaintiff had even offered to stipulate to maintain confidentiality of *all* discovery until the protective order was entered to prevent any delay.  *See* Fed. R. Civ. P. 29 (allowing "stipulations about discovery procedure").  Further, four months earlier, in September 2022, Plaintiff had requested that the district court require disclosure of the EDR investigation report and records of disciplinary action, but the district court denied Plaintiff's request without explanation.  ECF No. 151.

On June 1, 2023, the parties cross-moved for summary judgment. ECF Nos. 245, 248. On June 21, 2023, the district court offered the parties the option to proceed on a case-stated basis because "we've moved beyond allegations to actual evidence" and "the facts are not in dispute." ECF No. 267, at 4–5. The court stated that "there is both a private interest here on the part of Ms. Strickland, as she wants to win this case, and . . . if we get to damages, *her damages are going to be affected by the time that we take to adjudicate it*." *Id.* at 12 (emphasis added). However, the parties could not reach agreement to proceed on a case-stated basis.

On July 10, 2023, the district court held a hearing on the parties' cross-motions for summary judgment. On July 25, 2023, the district court entered an opinion on summary judgment which summarized the "undisputed evidence" the court had before it regarding the deliberate indifference of Federal Defender Anthony Martinez to his First Assistant's *quid pro quo* sexual harassment. ECF No. 258, at 5–7. Among this evidence, the district court explained that the Fourth Circuit's Chief Judge had issued a "letter of reprimand" against Defender Martinez as a result of the wrongful conduct investigation into Plaintiff's allegations under Chapter IX of the EDR Plan. *Id.* at 6. As the district court explained, "[t]he factual findings in this letter constitute an unimpeached public record pursuant to Fed. R. Evid. 803(8)(A)(iii)." *Id.* The court concluded that "[t]he underlying facts" supporting Plaintiff's discrimination claim "appear to be undisputed." *Id.* at 7.

On July 27, 2023, the district court held the final pretrial conference.  *See* Entry Order Dated September 19, 2023.  The district court set the case for a five-day bench trial, consisting of half-days of four hours each—that is, a total of two-and-a-half days of trial time.  ECF No. 262, at 13.  The district court scheduled the trial to commence on September 5, 2023.  The court stated, however, that if the parties wished to pursue mediation, it would only allow them to do so if the case were taken off the trial calendar.  *Id.* at 16.

Plaintiff had requested mediation nearly a full year earlier in the parties' Certificate of Initial Attorney's Conference, filed on August 15, 2022.  ECF No. 132, at 8; *see also* ECF No. 34, at 6 (reflecting parties' earlier agreement that mediation should be "conducted no later than the close of non-expert discovery").  Plaintiff was entitled to mediation under the district's local rules.  WDNC LCvR 16.2(a) ("All parties to a civil action must attend a mediated settlement conference, unless otherwise ordered by the Court.").  Under the local rules, the district court was required to "select the ADR method and schedule the deadline for its completion after considering counsel's responses in the Certificate of Initial Attorney's Conference."  LCvR 16.3(a).  The district court failed to comply with this requirement.  *See Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987) (local rules "have the force and effect of law, and are binding upon the parties and the court" (quotation omitted)).  Instead, the district court only raised the possibility of

11

mediation for the first time during the final pretrial conference nearly a year later, when it stated that mediation would not be ordered without delaying the trial.

Plaintiff's counsel objected "because of the preliminary injunction that has been pending for so long and it's just — this is a rock and a hard place." ECF No. 262, at 16. However, because Plaintiff prudently wished to see if the case could be resolved through mediation, an opportunity she had never been provided, the parties agreed to a temporary stay to pursue mediation. ECF No. 261.

On August 10, 2023, after mediation was scheduled, the district court issued the following order: "Should this case not resolve through mediation, th[e] [deliberate indifference] issue and the due process claims *will promptly be addressed as soon as possible* following notification that mediation has been unsuccessful or the expiration of 45 days from September 5, 2023 *whichever shall first occur*." Entry Order Dated August 10, 2023 (emphasis added). Based on this order, Plaintiff reasonably believed that if mediation were unsuccessful, the district court intended to "promptly" address her claims "as soon as possible," but no later than "45 days from September 5, 2023." *Id.*

Following the mediator's notification on September 19, 2023 that mediation was not successful,[2] Plaintiff notified the court that she was prepared for a prompt

_____

[2] Mediation was scheduled for August 17, 2023, and the mediator's report was due 7 days later. *See* LCvR 16.3(c). If this requirement had been followed, mediation would not have delayed a September 5 trial date.

12

trial date before October 20, 2023 (that is, 45 days from September 5, 2023) in accordance with the court's August 10, 2023 order.  ECF No. 281.  In response to Plaintiff's filing, and in stark contrast to its repeated prior statements recognizing the importance of deciding this case promptly, the district court criticized Plaintiff for "tak[ing] umbrage that the Court is not available to try the case just as soon as it was informed mediation had failed."  ECF No. 286, at 1 n.2.  The district court stated that "[o]ther cases (criminal and civil) are eager and ready for trial and have been previously scheduled in the interim."  *Id.*  The district court's statements starkly contrast with its prior recognition that "this is not a case where . . . we're concerned with a lengthy civil docket or the like, I'm specially assigned, so I've got duties, with all reasonable speed, to address this case."  ECF No. 104, at 10.  After repeatedly telling the parties it that would provide a trial "just as soon as they are ready to go," the court insisted on delay once Plaintiff requested a prompt trial consistent with its August 10 order.  ECF No. 185, at 4.

On October 4, 2023, the district court tentatively scheduled the trial for "Monday, December 11, 2023 or *on the next trial day* following the conclusion of the case then on trial."  *Id.* at 1 (emphasis added).  The court scheduled a "further final pretrial conference" for November 16, 2023.  ECF No. 288.  On October 19, 2023, however, the district court issued a revised order resetting the case "for the week of December 11 for trial *or as soon thereafter as the Court's docket will*

13

*permit.*" ECF No. 304 (emphasis added). The court's order stated, "The Court will schedule a further pre-trial conference," indicating that the previously scheduled "further final preconference" of November 16, 2023 may not occur. *Id.*

Between the date of this filing on October 30, 2023 and the tentative trial date on the week of December 11, 2023, the district court has scheduled (1) a four-week antitrust trial, which has been rescheduled twice since the court's October 4, 2023 order, and (2) seven criminal trials, including four criminal trials scheduled for the week of December 11 alone. Based on the district court's schedule, it appears unlikely that this case will even proceed to trial before the end of the year. That is more than a year and a half after Plaintiff's PI motion was filed in July 2022, and more than a year since this Court dismissed her PI appeal because the district court intended to hold "a prompt evidentiary hearing." No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1).

## REASONS WHY THE WRIT SHOULD ISSUE

The district court made a choice to "consolidate" Plaintiff's PI motion with a trial on the merits pursuant to Fed. R. Civ. P. 65(a)(2), over Plaintiff's objection. Because the district court made that choice, the court was required to "advance" the trial date. *Id.* The district court failed to do so. Instead, the trial has been delayed, in violation of statutes and rules requiring Plaintiff's case to be treated with priority. *See* 28 U.S.C. § 1657(a) ("[T]he Court *shall expedite* the

14

consideration of . . . any action for temporary or preliminary injunctive relief."
(emphasis added)); Fed. R. Civ. P. 40 ("[T]he court *must* give priority to actions
entitled to priority by a federal statute.") (emphasis added)).  Moreover, Plaintiff
has exhausted all alternative options to challenge the court's refusal to rule on her
PI motion, including appealing the refusal and petitioning for rehearing.  Because
the district court has continued to delay, Plaintiff has no other adequate remedy.

To ensure a "prompt evidentiary hearing" on Plaintiff's PI motion, as
required by law and this Court's prior decision from more than a year ago, this
Court should order the district court to "advance" the trial as required by Rule
65(a)(2), or, at a minimum, to not defer the trial date already set.  This Court also
should ensure that the district court issues a prompt final judgment.  That result
accords with cases from this Circuit involving "substantial delay."  *In re Hicks*,
279 F. App'x 236, 236 (4th Cir. 2008) (unpub. per curiam) (granting writ and
ordering district court "to act" on the pending matter "within sixty days").

Plaintiff anticipates that Respondents may contend that issuance of the writ
would be premature because the district court could still hold the tentative
December 11 trial as scheduled.  But this possibility does not mean that the petition
should be dismissed.  The district court stated that it "desire[d]" a "prompt
evidentiary hearing" on Plaintiff's motion in September 2022 in order to secure
dismissal of Plaintiff's PI appeal, but that "prompt evidentiary hearing" never

15

occurred.  ECF No. 150, at 1.  Similarly, the district court stated in its August 10, 2023 order that Plaintiff's claims would "promptly be addressed" if mediation were unsuccessful, but no later than October 20, 2023.  After being notified that mediation was unsuccessful, however, the district court delayed the trial date until December 2023 and has signaled that there may be yet further delay.  Entry Order Dated August 10, 2023.

If this Court were to decide to give the district court another opportunity to rule promptly on Plaintiff's PI motion, the Court has options short of granting a writ of mandamus to ensure that a prompt ruling is made.  For example, the Court could hold this petition in abeyance until the district court rules promptly on Plaintiff's PI motion.  *See* Fourth Cir. Loc. R. 12(d) ("[T]he Court may, either on its own motion or upon request, place a case in abeyance pending disposition of matters . . . which may affect the ultimate resolution of an appeal.").  Alternatively, this Court could deny the petition "without prejudice" to the filing of a new petition for writ of mandamus if the district court does not enter a final judgment within sixty days.  *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996).  That is the course taken by the Third Circuit (with then-Circuit Judge Hon. Samuel A. Alito, Jr. on the panel) in *Madden v. Myers*.  In that case, the district court had delayed eight months (far less than the delay at issue here) in ruling on a petition for habeas corpus relief.  *Id.*  The Court stated that "[a]lthough this delay is of concern, it does

16

not yet rise to the level of a denial of due process," and the Court was "confident that the district court will issue its decision quickly." *Id.* Likewise, here, if this Court is "confident that the district court will issue its decision quickly," it could deny the petition without prejudice to the filing of a new petition if the district court does not enter judgment within sixty days. *Id.*

## I. Plaintiff Has A Clear And Indisputable Right To Relief.

### A. The District Court's "Substantial Delay" in Acting on a Matter of Statutory Priority Warrants the Remedy of Mandamus.

The Fourth Circuit has recognized that when a district court acts with "substantial delay" in addressing a case that is entitled to statutory priority, mandamus relief is appropriate. *Hicks*, 279 F. App'x at 236; *see also In re Hicks*, 118 F. App'x 778, 778 (4th Cir. 2005). Mandamus "has traditionally been used . . . to compel [a court] to exercise its authority when it is its duty to do so." *Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976) (citation omitted). Thus, "[m]andamus petitions provide an avenue for dealing with the situation . . . where cases have been unduly delayed in the district court." *Madden*, 102 F.3d at 78. An appellate court may issue a writ of mandamus based on a court's "undue delay," or, "without actually issuing a writ, may order a district court not to defer adjudicating a case." *Id.* at 79.

This case is similar to *Hicks* in establishing a clear and indisputable right to relief. In *Hicks*, the petitioner filed a motion under Fed. R. Civ. P. 60(b) in his

17

civil habeas case, which was fully briefed by August 2, 2006. *Hicks*, 279 F. App'x at 236. In May 2008, a year and a half later, the Fourth Circuit granted mandamus in favor of the petitioner because the district court still had not yet ruled on the Rule 60(b) motion, which was entitled to statutory priority. *Id.* The Fourth Circuit explained that "Hicks has established a clear and indisputable right to expeditious treatment of his Rule 60(b) motion, and no other adequate remedy is available." *Id.* Thus, "he has shown his entitlement to the writ of mandamus." *Id.* The Fourth Circuit ordered the district court to rule on the motion "within sixty days of the date of this opinion." *Id.*

Here, as in *Hicks*, Plaintiff's case must be expedited and given priority, because federal statutes and procedural rules specifically command that result. *Cf. Hicks*, 118 F. App'x at 778 ("Pursuant to 28 U.S.C. § 1657(a) (2000), the district court must give priority to habeas corpus cases over other civil cases."). The district court's failure to rule on the PI motion since it was filed on July 27, 2022 does not comply with these federal statutes and rules. Nor does the fact that the district court ordered a "consolidated trial" on the PI motion change this result. Under Rule 65, a district court "may *advance* the trial on the merits and consolidate it with the hearing" on a PI motion. Fed. R. Civ. P. 65(a)(2) (emphasis added). Permitting the court to "advance" the trial plainly does not allow the court to delay the trial for months or years—as this Court previously recognized in

18

stating that the district court intended to hold a "prompt evidentiary hearing," which could include "advanc[ing]" the trial date. No. 22-1963, Doc. 42, at 4. Indeed, the advisory committee notes to Rule 65 specifically state that "[t]he fact that the proceedings have been consolidated *should cause no delay* in the disposition of the application for the preliminary injunction, . . . [in fact,] to consolidate the proceedings *will tend to expedite* the final disposition of the action." Fed. R. Civ. P. 65(a)(2), Advisory Comm. Notes (emphasis added).

Based on the district court's orders, it appears that the district court may believe that because Plaintiff exercised a right to mediation to which she is entitled under this district's local rules, her case is no longer entitled to priority and a ruling can be delayed indefinitely. ECF No. 286, at 1 n.2. That is not the case.

Rather, the district court's actions reflect its continued use of unfair tactics to force Plaintiff to proceed to trial or else forgo rights to which she is entitled by law. After imposing the unfair and inappropriate Hobson's choice of forcing Plaintiff to proceed to trial without discovery, or else forgo a PI, the district court presented Plaintiff with a similar Hobson's choice between proceeding to trial or exercising her right to mediation, which the court was required to order a year earlier under the local rules. LCvR 16.3(a) ("The presiding . . . judicial officer will, in the Scheduling Order or ADR Order issued shortly thereafter [the Initial Attorney's Conference], select the ADR method and schedule the deadline for its

completion."). The district court's continued use of unfair and coercive Hobson's choices—conduct for which this district court judge previously has been admonished—does not obviate Plaintiff's right to a prompt ruling on the PI. *See Nwaubani*, 806 F.3d at 680 n.7 ("[W]e are troubled that the district court, in consolidating the preliminary injunction hearing with a trial on the merits may have unfairly put Nwaubani (over his objection) in a position where he was forced to forego a ruling on his interlocutory request for injunctive relief in order to conduct adequate discovery to prepare for a trial on the merits.").

In any event, the district court itself recognized its continued duty to expedite treatment of Plaintiff's PI motion when it issued an order on August 10, 2023 stating that her claims "*will promptly be addressed as soon as possible following notification that mediation has been unsuccessful.*"  Entry Order Dated August 10, 2023 (emphasis added).  Plaintiff reasonably relied on the district court's representation that her claims "will promptly be addressed" and planned for a prompt trial date by October 20, 2023 in accordance with the district court's order.  But after Plaintiff notified the district court of her readiness for a prompt trial, the district court further delayed trial in violation of Rule 65(a), which requires the trial court to "advance"—not delay—the trial date.

**B.  This Court's Prior Decision that the District Court Would Rule "Promptly" on the PI Motion Further Warrants Relief.**

Courts routinely grant mandamus relief when a district court fails to comply with the mandate of the Court of Appeals.  *See, e.g.*, *Madden*, 102 F.3d at 78 ("[M]andamus is the appropriate remedy when the district court ignores this Court's mandate."); *In re Adams*, No. 14-11102-F, 2014 U.S. App. LEXIS 14513, at *3–4 (11th Cir. July 16, 2014) ("A party always has recourse to the court to seek enforcement of its mandate." (quoting *Office of Consumers' Counsel, State of Ohio v. F.E.R.C.*, 826 F.2d 1136, 1140 (D.C. Cir. 1987)).

This Court's decision of October 18, 2022 stating that "the district court has not yet ruled on Strickland's motion for preliminary injunction" and "'desires a prompt evidentiary hearing' in order to resolve the motion for preliminary injunction" further counsels in favor of mandamus.  No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1).  "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'"  *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).  As a "specific application of the law of the case doctrine," the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *Id.* (citation omitted).

This Court "expressly or impliedly decided" that the district court was to rule promptly on the PI motion in its decision of October 18, 2022.  *Id.*  After all,

21

this Court presumably would not have dismissed Plaintiff's appeal on the basis that the district court "has not yet ruled on Strickland's motion for preliminary injunction" and "'desires a prompt evidentiary hearing' in order to resolve the motion for preliminary injunction" if it did not anticipate that the district court would rule promptly on the PI motion. No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1). The Court's ruling anticipated, if not outright ordered, a prompt ruling on the PI motion as required by law. Because the district court has not promptly ruled on the PI motion as this Court stated it would, "mandamus is the appropriate remedy." *Madden*, 102 F.3d at 78.

## II.    No Other Adequate Remedy Is Available.

The second mandamus factor, that no other adequate remedy is available, is also met. The purpose of this factor is "to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004). The Fourth Circuit has recognized that this factor is met when a district court acts with "substantial delay" in ruling on a matter that is entitled to statutory priority. *Hicks*, 279 F. App'x at 236. When a court declines to rule promptly on a matter that is entitled to statutory priority, then "no other adequate remedy is available" except for a writ of mandamus. *Id.*

In this case, Plaintiff is not attempting to use mandamus as a substitute for the regular appeals process. To the contrary, Plaintiff exhausted all possible

22

options for appealing the district court's refusal to promptly rule on the PI motion, but her appeal was dismissed and her petition for rehearing was denied. Plaintiff could not, in good faith, return to this Court for a third time to raise the same arguments that the Court had denied, absent further delay of a trial.

But now, the trial has been delayed months beyond the original September 2023 trial date and it appears possible that this case may not even proceed to trial before the end of the year. Contrary to Rule 65(a)'s requirement that the court "advance" the trial date, Plaintiff's case is tentatively scheduled for trial only after a four-week antitrust trial and seven criminal trials, resulting in potentially substantial delay. This "substantial delay" plainly violates Rule 65(a), which requires the court to "advance" the trial, and 28 U.S.C. § 1657(a), which requires the court to "expedite the consideration" of a PI motion. *Hicks*, 279 F. App'x at 236. Indeed, the fact that Plaintiff has been forced to wait for a ruling on her PI motion for nearly a year and a half since the motion was filed in July 2022 self-evidently demonstrates that she has no other adequate remedy.

## III.    Issuance Of The Writ Would Be Appropriate.

Finally, issuance of "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. In fact, if this Court were to *not* take appropriate steps to ensure a prompt ruling on the PI motion, it would send an unmistakable message of approval of the district court's delay. That result would severely prejudice the

rights of other litigants in this Circuit who rely on the statutory right to expedited treatment of a PI motion. It would also risk setting a double standard where employees of the federal judiciary who bring constitutional claims against judiciary officials are unjustly denied basic procedural rights to which other civil litigants are entitled, without an opportunity for appellate review of a PI ruling or the availability of back pay.

The Fourth Circuit has recognized that issuance of a writ of mandamus is "appropriate" when a district court's erroneous actions could undermine the rights of other litigants who "may be involved in future legal proceedings." *In re Murphy-Brown, LLC*, 907 F.3d 788, 801–02 (4th Cir. 2018). That is especially true when the district court's orders involve infringements on constitutional rights that result in "irreparable" injury. *Id.* at 801 (citation omitted).

The district court's refusal to promptly rule on Plaintiff's PI motion violates longstanding principles governing preliminary relief. The Fourth Circuit has long recognized that "[a] litigant applying for a preliminary injunction should seldom be required either to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial." *Gellman*, 538 F.2d at 604 (citation omitted). Moreover, ordering a consolidated trial without "permitting any discovery . . . comes perilously close to a violation of due process." *Id.* at 606. The district court's abuse of Rule 65(a)'s consolidation

24

procedure, and its constructive denial of a PI motion through continued delay, is blatantly unlawful.

Indeed, the undisputed evidence in favor of Plaintiff's claims, which have been developed through the summary judgment stage, demonstrates the profound unfairness of the district court's approach. A plaintiff seeking a PI "need not show a certainty of success," and "undisputed evidence" favoring the plaintiff's claims will justify a PI. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246–47 (4th Cir. 2014) (citation omitted); *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right.").

The district court itself recognized that "[t]he underlying facts" favoring Plaintiff's equal protection claim against the Defender "appear to be undisputed," including through a "letter of reprimand" issued by the Fourth Circuit's Chief Judge for the Defender's wrongful conduct. ECF No. 258, at 6–7. The Chief Judge's letter of reprimand reads as a roadmap of the Defender's deliberate indifference as articulated by this Court, *see Strickland*, 32 F.4th at 359–60:

- "<u>Marriage Metaphor</u>": "After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a 'marriage,' with the parties needing to 'compromise' and 'meet in the middle.' Ms. Strickland said that she was 'shocked' and 'offended' at the

25

reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a 'marriage.' The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her."

- "No Physical Touching": "Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, 'at least you weren't touched,' or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt."

- "Disapproval of Seeking Outside Advice": "Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee. The investigator found that you had 'called out' Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office."

- "Shifting Responsibility": "Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with. Ms. Strickland reported that she felt 'offended' by your protest, which she perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office. This, the investigator concluded, contributed to your mishandling of the matter."

ECF No. 248-1, at 18–19; Add. 34–41.

The district court even informed the parties—contrary to its prior insistence

on requiring "live witnesses" rather than "affidavits," ECF No. 185, at 2–3—that it

was able to decide liability on a case-stated basis because "the facts are not in

26

dispute," ECF No. 267, at 4–5.  If "an unimpeached public record" from the Fourth Circuit's Chief Judge containing "undisputed" findings of unlawful sex discrimination is not sufficient to prove a likelihood of success on the merits and thus justify a PI, it is hard to imagine what would be sufficient.  ECF No. 258, at 6. Indeed, it is inherently contradictory to contend that the record is sufficiently developed to rule *on the merits* of the case at summary judgment, but that a ruling on the PI motion—which requires a lesser showing—would be premature.  *Cf. Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (stating that a party "is not required to prove his case in full at a preliminary-injunction hearing," and "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits").

The substantial delay in ruling on Plaintiff's case, in violation of governing rules and statutes, also risks setting a double standard where judiciary employees bringing constitutional claims are unjustly denied procedural rights that are afforded to other civil litigants.  This disparate treatment creates an intolerable appearance of partiality and undermines the rule of law.

In fact, this is not the first time that Plaintiff has been forced to resort to the remedy of mandamus to enforce her basic procedural rights in this litigation.  From the outset, Plaintiff's *entire* case was sealed *sua sponte* without any explanation.  A public docket entry stating only that the case was "sealed at direction of Clerk

27

pending assignment of judge" did not identify a judicial officer who sealed the case or state any reasons for the blanket sealing. Entry Order Dated Mar. 4, 2020. Indeed, *Plaintiff's own counsel* could not even access the docket as a result of the blanket sealing. *See* Entry Order Dated Mar. 6, 2020. The blanket sealing of Plaintiff's entire case, without an order by a judicial officer, notice to the public, or explanation of the sealing, violated the First Amendment. *See Co. Doe v. Pub. Citizen*, 749 F.3d 246, 266–67 (4th Cir. 2014). The case was unsealed, again without explanation, only after Plaintiff filed a petition for a writ of mandamus in the Fourth Circuit. *See* ECF Nos. 6, 9.

When Plaintiff attempted to obtain an explanation for the blanket sealing of her entire case, which remains unresolved to this day, Defendants asserted that the Clerk of Court likely "took the action that would be most protective of Plaintiff's asserted rights," and accused Plaintiff of engaging in "speculation and perception of conspiracies where none exist." ECF No. 195, at 4 (quoting ECF No. 174, at 4). Subsequent discovery from Defendants revealed, however, that the district's Clerk of Court, Mr. Frank Johns, was directly involved in the facts of this case to an extent previously unknown to Plaintiff.

Following Plaintiff's EDR proceeding, Mr. Johns had exchanged emails with Plaintiff's EDR Investigator (his subordinate), Ms. Heather Beam, mocking and disparaging Plaintiff after she applied for other employment in the District

28

Court for the Western District of North Carolina. *Id.* at 5 (citing email from Mr. Johns stating, **"YEA! That is one more off the chess board!"** in reference to Plaintiff withdrawing her application to be a *pro se* law clerk, and response from Ms. Beam stating, **"Yep - I think she would have been a true pain in the you know what :)"** (emphasis added)). These emails demonstrate that Mr. Johns and Ms. Beam engaged in the sort of hostile and retaliatory behavior in relation to job prospects that the judiciary has identified as a serious barrier to reporting workplace misconduct. Mr. Johns and Ms. Beam also likely violated Plaintiff's confidentiality rights under the EDR Plan. Far from being "speculation and perception of conspiracies," ECF No. 174, at 4, this evidence raises a well-grounded, and highly troubling, perception in a reasonable person that Mr. Johns may have participated in unlawfully sealing this case because he was biased against Plaintiff, having been personally involved in the allegations at issue in her lawsuit, and in order to protect himself, his co-workers, or subordinates from embarrassment. The district court's failure to docket a judicial sealing order or state any reasons for the sealing raises further reasonable questions as to whether the judicial officer who authorized the sealing may have acquiesced in or shared an unlawful motivation. Had Plaintiff not used the remedy of mandamus to challenge the sealing, it is possible that this information may have never become public, and her case could still be under seal. Yet, Plaintiff's motion to unseal all orders and

29

directions to seal this case and provide a public explanation for the blanket sealing has been pending for more than six months without a ruling. ECF No. 195.

This proceeding involves other severe procedural irregularities that result in "irreparable" injury. *Murphy-Brown, LLC*, 907 F.3d at 802. That is because even if these errors can be remedied through a subsequent appeal, the delay required to address them will cause "irreparable" harm that cannot be remedied due to the unavailability of back pay. *Id.* Thus, the irreparable harm caused by the district court's refusal to rule on the PI motion may be compounded by the delay involved in a subsequent appeal.

It is "nose-on-the-face plain" that the loss of wages while a plaintiff "is contesting her ouster" constitutes "irreparable harm." *Rosario-Urdaz*, 350 F.3d at 222. "Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists." *Id.* Thus, each day, month, and year that passes without injunctive relief results in ongoing lost earnings that Plaintiff may never recover. Indeed, the very fact that the district court and Defendants have engaged in delay tactics for a year and a half to avoid the possibility of an order of lost earnings highlights the injustice of the judicial exceptionalism created by the judiciary's exemption from Title VII and other civil rights laws. These delay tactics, including Defendants' representations that the district court was "open" to a "pre-trial evidentiary

30

hearing" on the PI motion, only to take the opposite position as soon as the appeal was dismissed, would not be possible in cases involving employees who are covered by civil rights statutes. *See supra*, at 5–6. That is because those employees have access to the remedy of back pay before final judgment.

It has been nearly five years since Plaintiff was constructively discharged due to a fundamentally unfair and discriminatory EDR process. It has been over a year since this Court anticipated a "prompt" ruling on her PI motion. Plaintiff should not have to wait months or years more for a resolution of her case. This Court should enforce Plaintiff's procedural rights under governing statutes and rules because that is what the law requires.

## CONCLUSION

For all the above reasons, this Court should take the necessary steps to ensure a prompt resolution of this case.

This the 30th day of October, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Petitioner*

31

## CERTIFICATE OF SERVICE

I, Cooper Strickland, hereby certify that on this 30th day of October, 2023, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system. Service on counsel for all parties in the district court will be accomplished by notice filed through the district court's CM/ECF system attaching a copy of this filing, as well as by email to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

/s/ Cooper Strickland
Cooper Strickland

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains less than 7,785 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland

## ADDENDUM TABLE OF CONTENTS

Excerpts from Transcript of September 8, 2022 Hearing ........... Add. 1

Order Dated September 22, 2022 ................................................. Add. 5

Excerpts from Transcript of October 31, 2022 Hearing............. Add. 7

Order Dated January 26, 2023 .................................................... Add. 13

Excerpts from Transcript of June 21, 2023 Hearing ................ Add. 17

Summary Judgment Opinion Dated July 25, 2023.................... Add. 19

Excerpts from Transcript of July 27, 2023 Hearing................. Add. 30

Order Dated October 4, 2023 .................................................... Add. 32

Memorandum to Chief Judge and Letter of Reprimand........... Add. 34

i

1     injunction is pursuant to the Federal Rules of Civil Procedure

2     65 combined with trial on the merits, so, Mr. Strickland, when

3     really do you want to go to trial here now?  I understand why

4     you want a prompt resolution, and I'm prepared to give it to

5     you, but we're going to have to have a trial to get there, so

6     when?

7          MR. STRICKLAND:  I believe we have one scheduled for

8     September 2023.  Everybody agreed to that at the status

9     conference.

10:10AM 10          THE COURT:  Everybody did, yes, but you're saying --

11     you see, I'm prepared to revisit that and give you a much more

12     rapid trial subject to what Mr. Kolsky says.  That is what we

13     agreed.

14          What I just did was collapse further consideration of

15     the preliminary injunction with trial on the merits, so I'm

16     asking you now since I'm not giving preliminary injunction

17     today and I'm not deciding it on affidavits, I want a trial, so

18     when is the earliest we can get to a trial that gets you the

19     relief that you seek?

10:11AM 20          MR. STRICKLAND:  You know, partly this is a very

21     difficult question to answer because it's just me here right

22     now.  The other counsel for the plaintiff have not been

23     admitted, and I'm going to try the best I can, but I understand

24     that that's your practice that you use, you collapse it down to

25     the merits.  I would have appreciated some notice of that so we

1  now because these issues have been going on for weeks, if not

2  months, trying to get counsel admitted here.

3          THE COURT:  Let's take care of it.  They're all

4  admitted so long as they comply with the local rules of the

5  Western District of North Carolina.  If they've submitted the

6  materials.  I see your problem that I have to actually act,

7  they're admitted, so now they're admitted.

8          MR. STRICKLAND:  I brought this up at the July status

9  conference, and you said the same thing, and it never happened,

10:15AM 10  and since that point in time, and we've informed the Court of

11  this in filings that Ms. Gersen has not --

12          THE COURT:  I will follow it up, I will follow it up.

13  Now, Mr. Strickland, maybe we ought to do this.  I've made my

14  order.  I do want to hear from Mr. Kolsky, but why don't you

15  and he confer, and why don't I set it down for a further

16  hearing to schedule a prompt trial, what would you say a week,

17  two weeks?

18          MR. STRICKLAND:  No, I cannot agree to that.  More

19  importantly, I think we're entitled to the preliminary

10:16AM 20  injunction now.  What it sounds like is that you're going to

21  set off a decision of that, and that's not allowed under Fourth

22  Circuit precedent.  You can do not an indefinite suspension of

23  this.  We are entitled to a ruling on the preliminary

24  injunction now.

25          THE COURT:  Mr. Strickland, I haven't done any

1    indefinite suspension.  If you want me to put you to trial

2    without telling you, there won't be any indefinite suspension,

3    I'll set a prompt trial date.  Let me turn to Mr. Kolsky.

4            MR. STRICKLAND:  How do we get our discovery in this

5    context?

6            THE COURT:  You know, this idea about discovery.  You

7    know, you have subpoenas here.  There isn't a constitutional

8    right to discovery.  This is an important case.  It requires

9    careful attention.  You say you want prompt action.  I'll give

10:17AM 10   it to you.

11           Now, Mr. Kolsky, from your perspective, understanding

12   my practice, when can you be ready to try this case?

13           MR. KOLSKY:  Your Honor, we would prefer to stick with

14   the September 2023 trial date.

15           THE COURT:  He wants much faster action, and actually

16   I don't see a need to wait that long.

17           MR. STRICKLAND:  I don't, I don't.  I don't want it to

18   be framed that way.  That's not what I said.

19           THE COURT:  Well, I will tell you your proposal for a

10:18AM 20   preliminary injunction is woefully inadequate because, for

21   example, we don't know anything about the damages here.  Let's

22   say there was, just for the purpose of discussion, a reasonable

23   likelihood of success on the merits.  I wouldn't know how to

24   frame an order, and there has been none of these things have

25   been subject to cross-examination.  I'm entitled to actually

1    take evidence.

2            MR. STRICKLAND:  Yes.

3            THE COURT:  And I propose to take it and I propose

4    then to make a proper ruling on a proper evidentiary record.

5    Now, you can't tell me that I can't get to the merits.  If you

6    want to wait till September, then I will wait, and that's when

7    I will determine the matter, but that's not indefinite.  That's

8    what you're telling me.  I'm telling you the requirements for

9    equitable relief here are an evidentiary hearing beyond

10:19AM 10   affidavits, however we frame it.  Now let me put it that way,

11   if you want to call it a preliminary injunction, when do you

12   want this evidentiary hearing?

13           MR. STRICKLAND:  This is such a difficult position for

14   me to be in.  Last week I contacted your courtroom deputy and

15   asked whether this was an evidentiary hearing or an oral

16   argument.  She told me it was an oral argument.  We, therefore,

17   filed a notice on Friday waiving the oral argument, reiterating

18   yet again that we did not believe an evidentiary hearing was

19   necessary but if the court disagreed, to provide us notice of

10:19AM 20   that so we could provide a position.  I feel I've been brought

21   in here and sand bagged with this a little bit.

22           THE COURT:  Well, I'm sorry you feel that way.  I

23   really don't accept that.  The truth is I'm trying very hard to

24   accommodate you and safeguard the rights of all parties.

25           MR. STRICKLAND:  See, but what's curious to me is at

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

_____

)
CARYN DEVINS STRICKLAND,           )
                                   )
                 Plaintiff,        )
                                   )
         v.                        )        CIVIL ACTION
                                   )        NO. 1:20-00066-WGY
UNITED STATES, ET AL.,             )
                                   )
                 Defendants.       )
_____    )


YOUNG, D.J.[1]                                September 22, 2022

**ORDER**

In view of the scheduling order of the United States Court of Appeals for the Fourth Circuit, the hearing scheduled for Wednesday, September 28, 2022 is continued until Wednesday, October 26, 2022 at 2:00 p.m.

While the Court is willing to entertain further such motions should that be necessary, the public interest would seem to require, see Fed. R. Civ. P. 1, that the Court address the plaintiff's motion for partial summary judgment (which the plaintiff has asked be first addressed) and the plaintiff's motion for immediate equitable relief (upon which this Court desires a prompt evidentiary hearing).

_____

[1] Of the District of Massachusetts, sitting by designation.

[1]

# Add 6

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

```
 1    hearing.  And I read both the motion and the defendants'
 2    response and I appreciate both.
 3          And, Mr. Andonian, you're going to speak to this?
 4          MR. ANDONIAN:  Yes, your Honor.
 5          THE COURT:  All right.
 6          MS. STRICKLAND:  Your Honor, may I be heard on one
 7    other matter regarding the summary judgment motion?
 8          THE COURT:  No, there's no rebuttal, ma'am.
 9          MS. STRICKLAND:  It's not rebuttal.
10          THE COURT:  I said 15 minutes a side.
11          All right.
12          MS. STRICKLAND:  It's not for rebuttal.
13          THE COURT:  I beg your pardon?
14          MS. STRICKLAND:  We would request that under Rule
15    56(a) the Court state the reasons on the record for
16    denying the motion for partial summary judgment.
17          THE COURT:  Yes, and you're entitled to that.
18    Because in the Court's view, having reviewed the entire
19    record carefully, there exist genuine issues of material
20    fact as to each essential element that the plaintiff
21    must prove.  Therefore the motion is denied.
22          All right.
23          Mr. Andonian, um, I think the Fourth Circuit
24    understands exactly what I'm trying in fairness to do
25    here, so I'm not going to decouple my already-made
```

ruling that consideration of a preliminary injunction

will be combined with trial on the merits.  No one is

hamstrung, no one is denied either discovery or the

production of evidence at trial.  Indeed having looked

over this evidentiary record in detail now, it seems to

me that the plaintiff, um, herself is in possession of

virtually all of the evidence necessary for the

liability case, and as Mr. Kolsky has described with his

various statements, the government is in possession of

the evidence that it will seek to rebut that evidence.

There may be something to expert testimony with

respect to a front-pay determination if we get to that

point, but the Court is open to a prompt evidentiary

hearing as to liability and then once the Court

determines liability, if we're going to further explore

damages, to set a later date for the exploration of

damages or some other remedy.  But I'm only going to do

it once.

Your motion for a prompt evidentiary hearing,

which Ms. Gersen is the lead person who signs that,

makes very clear that what you want is a hearing and

then you can appeal that and then we'll have the trial.

That's not helpful.  It does not, as Rule 1 requires,

"tend towards the just, speedy, and inexpensive

resolution of the case."  The case does present

```
 1    that there isn't any discovery --
 2           THE COURT:  Let me explain this to you about
 3    discovery.  Wait.  Wait.  Only one of us can talk.  And
 4    respectfully you're going to have to listen to me.
 5           I haven't foreclosed any discovery.  I haven't
 6    foreclosed subpoenas to bring people before the Court to
 7    testify.  But this idea that we're going to have a round
 8    of depositions so that every possible person is going to
 9    be deposed and then we will have the trial, there is no
10    requirement due process or otherwise for that.  I am
11    offering a prompt trial.
12           Now in the real world the earliest I can get to it
13    probably is in December.  But as -- in December I will
14    give you the time necessary to put on your case and the
15    government the time necessary to put on its case just as
16    promptly as the Court has trial days.  All I'm asking is
17    when do you want it?  And when I hear that, I'll hear
18    from the government and hear when they want it.
19           This motion has made various statements about the
20    government withholding discovery.  Well I haven't heard
21    that from Mr. Kolsky and I'm not going to be very happy
22    about anyone withholding discovery.
23           So I'll hear from you or Mr. Andonian, but not
24    both.
25           Who's going to talk?
```

 1      MR. ANDONIAN:  Your Honor, if I could?  And I'm

 2  coming into this, you know, after some work has been

 3  done so forgive me if I'm retreading a little bit of

 4  ground.  But what I do think is important are a couple

 5  of points.

 6      The first is, um, just to piggyback on what

 7  Ms. Strickland said, there is a need for discovery.  As

 8  in any case, we don't know what we don't know until we

 9  take discovery.  I don't understand the government to be

10  denying that and disputing that and in fact --

11      THE COURT:  I'm not saying they are, you give me a

12  date.  When do you want this hearing?

13      MR. ANDONIAN:  We want this hearing that's

14  pretrial and is not --

15      THE COURT:  Well that's not going to happen.  I've

16  already ruled on that.

17      MR. ANDONIAN:  If I could just ask, your Honor?  I

18  guess I'm confused as to what -- what the problem with

19  having a pretrial hearing is as opposed to the

20  consolidated trial?  With all due respect, I've

21  litigated plenty of these and I'm not sure I've ever had

22  a consolidated trial.

23      Rule 65 itself allows the testimony to be

24  incorporated into the trial record.  So this idea that

25  there would be duplication or undue burden, I guess I'm

1    and I am happy with that.  But I'm simply asking for
2    some reasonable proposal.
3         Telling me you're going to put it on for a day and
4    then now -- and of course you have the right, I'm not
5    foreclosing the right, but if I did that, then you're on
6    to the Court of Appeals with respect to that.  I don't
7    propose to do it twice.  I propose to get all the
8    evidence that is necessary to make difficult, difficult
9    factual determinations here.  That's all.  And I propose
10   to do it in a reasonable way.
11        So, um, now your last chance.  Give some date
12   where we could begin to have this hearing?
13        Now I am persuaded of one thing.  If we go along
14   in the hearing and I come to a belief at the end of the
15   liability hearing that an immediate injunctive remedy is
16   required, I won't hesitate to grant it.  And I've
17   already laid myself open to saying that liability is one
18   thing and prospective relief is another and so maybe we
19   can put the prospective relief off further.  But I don't
20   really, um, and looking at this record, see what we're
21   waiting so long for?  I can't get you till December, get
22   to you till December, and I'm trying to -- well let me
23   go to the government while you think about it.
24        Mr. Kolsky, they haven't had a chance really to
25   digest your proposal.  Your proposal is fine by me,

1   like in any other case, which I think would be
2   beneficial here, I think the government thinks it would
3   be beneficial here, and it would be in fact beneficial.
4   The proposal is to simply have a pretrial preliminary
5   injunction hearing and --
6       THE COURT:  Mr. Andonian, um, I am not denying a
7   preliminary injunction because I see that's your grounds
8   for saying I am not giving you the attention that you're
9   entitled, I have consolidated the two.  I am prepared to
10  go forward as early as November.
11      MR. ANDONIAN:  Your Honor, I --
12      THE COURT:  I have a double trial, but I am
13  prepared to go forward as early as November and
14  certainly trial days in December.  So your answer is --
15  you're only saying what you already said.
16      MR. ANDONIAN:  Your Honor, we are not prepared to
17  go forward with a trial on the merits without discovery,
18  and again I --
19      THE COURT:  Again no one says you'll be without
20  discovery.
21      MR. ANDONIAN:  Your Honor --
22      THE COURT:  You don't understand.  Subpoenas work.
23  Bring in the people.  If that's inefficient --
24      MR. ANDONIAN:  Your Honor, what I've been --
25      THE COURT:  If you think that's inefficient, the

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

_____

|                          | )  |                          |
|--------------------------|----|--------------------------|
| CARYN DEVINS STRICKLAND, | )  |                          |
|                          | )  |                          |
|             Plaintiff,   | )  |                          |
|                          | )  |                          |
|          v.              | )  | CIVIL ACTION             |
|                          | )  | NO. 1:20-00066-WGY       |
| UNITED STATES, ET AL.,   | )  |                          |
|                          | )  |                          |
|            Defendants.   | )  |                          |
|                          | )  |                          |

_____

YOUNG, D.J.[1]                                    January 26, 2023

**MEMORANDUM**

After a somewhat contentious hearing, the parties appear to
have settled down and are apparently engaged in preparing for a
September 2023 trial – the date they all agree the case will be
trial ready.

Upon reflection, the Court realizes that it has not
formally ruled on the Plaintiff's "Motion For Prompt Evidentiary
Hearing" (ECF No. 157). As was evident at the hearing, the Court
thought the Plaintiff wanted her trial but she actually
envisioned some sort of hybrid proceeding.

The Court has already combined further hearing on
preliminary relief with trial on the merits as authorized by

_____

[1] Of the District of Massachusetts, sitting by designation.

[1]

Fed. R. Civ. P. 65(a)(2), a course of action expressly confirmed here by the Fourth Circuit as within this Court's discretion. <u>United States</u> v. <u>Strickland</u>, 2022 U.S. App. Lexis 28846 (4th Cir. Oct. 18, 2022). The Court adheres to that position.

Still, the Court fully recognizes the Plaintiff's interest in prompt relief should she prevail on the merits. A decent respect for her concerns causes the Court briefly to outline its insistence upon a full trial.

Over a half century ago, I was privileged to serve as law clerk to a truly formidable and brilliant jurist, the Honorable Raymond S. Wilkins, Chief Justice of the Massachusetts Supreme Judicial Court. "Facts are like flint," Chief Justice Wilkins would say, and he taught me 1. that only a trial court could establish those facts, and 2. "their proper ascertainment is the entire goal of our adversary system." See <u>Berthoff</u> v. <u>United States</u>, 140 F. Supp. 2d 50, 91 (D. Mass. 2001) (emphasizing the vital role of judicial fact finding); <u>In re Nexium (Esomeprazole) Antitrust Litigation</u>, 297 F.R.D. 168, 176 (D. Mass. 2013) (same). Over the now forty-four years of my judicial service, the value of fair, thorough, and scrupulously independent **fact finding** has only increased in importance in a world where unfiltered instant information crowds the marketplace of ideas. The best way to ascertain the facts is, and always has been, at a **trial**, with live witnesses, thoughtful

[2]

cross-examination, and adherence to the rules of evidence.

Indeed, I've become skeptical of short cuts. See e.g. United States v. Massachusetts, 781 F. Supp. 2d 1, 22n. 25 (D. Mass. 2011) ("Affidavits are the Potemkin Villages of today's litigation landscape… all lawyer painted facade and no interior architecture").

> [F]act-finding is difficult. Exacting and time consuming, it inevitably falls short of absolute certainty. More than any society in history, the United States entrusts fact-finding to the collective wisdom of the community. Our insistence on procedural safeguards, application of evidence rules, and our willingness to innovate are all designed to enhance impartial fact-finding.
>
> Judicial fact-finding is equally rigorous. Necessarily detailed, judicial fact-finding must draw logical inferences from the record, and, after lucidly presenting the subsidiary facts, must apply the legal frame-work in a transparent written or oral analysis that leads to a relevant conclusion. Such fact-finding is among the most difficult of judicial tasks. It is tedious and demanding, requiring the entirety of the judge's attention, all her powers of observation, organization, and recall, and every ounce of analytic common sense he possesses. Moreover, fact finding is the one judicial duty that may never be delegated to law clerks or court staff. Indeed, unlike legal analysis, many judges will not even discuss fact-finding with staff, lest the resulting conclusions morph into judgment by committee rather than the personal judgment of the duly constituted judicial officer.

William G. Young, A Lament For What Was Once and Yet Can Be, 32 B.C. Int. & Comp. L. Rev. 312-313 (2009) (footnotes omitted)

I do not for an instant claim it is easy. But it is just.

Thus, the Court reiterates that it is the parties, not the Court, who insist that they need until September 2023 to be ready for trial. Consistent only with its established calendar

[3]

of actual trials, the Court stands ready to afford these litigants a full and fair trial just as soon as they are ready to go,[2] and will advance the trial date accordingly.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[2] I am reminded of a story told to me recently by my longtime colleague and friend, Judge George O'Toole. Like me, he served as a Justice of the Massachusetts Superior Court. Once, during a call of the lengthy civil list, counsel responded, "We'll be ready when reached, your Honor."

"You have been reached," the Judge responded.

So here.

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.

1        THE COURT:  For the defense?

2        MS. McMAHON:  Good morning, your Honor, I'm

3   Madeline McMahon from the Department of Justice, and

4   Danielle Wolfson Young from the Department of Justice.

5        THE COURT:  And good morning to you.

6        Well I called this status conference to make a

7   suggestion to you and let me tee it up.  First of all, I

8   am preparing for the hearing on the cross-motions for

9   summary judgment that is to be held on the 12th and I

10  want to keep that date, but as to -- and I want to thank

11  you, thank you both, both sides, because now, really for

12  the first time in my examination of this case, we've

13  moved beyond allegations to actual evidence and, um,

14  your, in large measure, thorough presentation of your

15  motions and supporting exhibits have been extremely

16  helpful, but I've noticed the following, there isn't too

17  much dispute as to liability, there isn't too much

18  dispute as to what went on here.  The issues, the major

19  issues are legal issues, what do we make of it when we

20  examine what went on here?  And with that in mind, I

21  offer the following suggestion.  And this is not

22  something that I can require and it's not something I

23  need a response from you this morning, although I'm

24  happy to explain, if I do not do so, the ramifications

25  of what I'm suggesting.

1       In the First Circuit, and I know we're not in the
2   First Circuit, we're in the Fourth Circuit, but in the
3   First Circuit we have a procedure and it's fully
4   appropriate, it's called a case-stated procedure, and
5   under the case-stated procedure where the facts are not
6   in dispute and what is in dispute is the legal
7   requirements to be applied to those facts, the judge
8   may, so long as there is not a significant, um,
9   determination of competing views of the facts, the Court
10  may hold a hearing and taking the undisputed facts may
11  rule on the law and determine the case in whole or in
12  part.  That procedure holds significant advantages, I've
13  found, to a situation where there are competing motions
14  for summary judgment.  And let me explain how I use that
15  procedure because I think it would be helpful here.
16      If we go forward on the 12th and argue the
17  competing motions for summary judgment, under the --
18  under Rule 56 I am required, and I shall, take each
19  motion separately and, um, draw all inferences against
20  the moving party, and that could very well result in --
21  and I'm not -- my mind is completely open here.  I am
22  preparing for the hearing, so I am getting myself into
23  the actual evidentiary materials that are before me now,
24  and I will tell you that my mind is completely open.  If
25  you think I've got some agenda here, you won't go for

```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NORTH CAROLINA

                                          )
CARYN DEVINS STRICKLAND,                  )
                                          )
                Plaintiff,                )
                                          )
        v.                                )    CIVIL ACTION
                                          )    NO. 20-00066-WGY
UNITED STATES OF AMERICA, AND             )
JUDICIAL CONFERENCE OF THE                )
UNITED STATES, THE HON.                   )
ROSLYNN R. MAUSKOPF, IN HER               )
OFFICIAL CAPACITY AS CHAIR OF             )
THE JUDICIAL CONFERENCE                   )
COMMITTEE ON JUDICIAL RESOURCES           )
AND ADMINISTRATIVE OFFICE OF THE          )
UNITED STATES, JAMES C. DUFF, IN          )
HIS OFFICIAL CAPACITY AS DIRECTOR         )
OF THE ADMINISTRATION OFFICE OF           )
THE UNITED STATES COURTS,                 )
SHERYL L. WALTER, IN HER                  )
INDIVIDUAL CAPACITY, JOHN DOE(S)          )
C/O OFFICE OF THE GENERAL                 )
COUNSEL FOR THE ADMINISTRATIVE            )
OFFICE OF THE UNITED STATES               )
COURTS, AND UNITED STATES COURT           )
OF APPEALS FOR THE FOURTH                 )
CIRCUIT, JUDICIAL COUNCIL OF THE          )
FOURTH CIRCUIT, THE HON. ROGER            )
L. GREGORY, IN HIS INDIVIDUAL             )
CAPACITY AS CHIEF JUDGE OF THE            )
FOURTH CIRCUIT, JAMES N. ISHIDA,          )
IN HIS INDIVIDUAL CAPACITY IN             )
HIS OFFICIAL CAPACITY AS                  )
CIRCUIT EXECUTIVE OF THE FOURTH           )
CIRCUIT AND AS SECRETARY OF THE           )
JUDICIAL COUNCIL OF THE                   )
FOURTH CIRCUIT, AND FEDERAL               )
PUBLIC DEFENDER FOR THE WESTERN           )
DISTRICT OF NORTH CAROLINA,               )
ANTHONY MARTINEZ IN HIS                   )
INDIVIDUAL CAPACITY AND HIS               )
OFFICIAL CAPACITY AS FEDERAL              )
PUBLIC DEFENDER FOR THE WESTERN           )
DISTRICT OF NORTH CAROLINA,               )
```

[1]

```
                Defendants.            )
                                       )
     _____ )
```

YOUNG, D.J.[1]                                          July 25, 2023

### MEMORANDUM AND ORDER

After the parties conducted extensive discovery and briefed the relevant issues, this Court heard cross motions for summary judgment on July 10th, 2023. Pl.'s Mot. Summ. J. ("Pl.'s SJ Mot."), ECF No. 243, Def.'s Mot. Summ. J. ("Def.'s SJ Mot."), ECF No. 245. Pl.'s Mem. Supp. Summ. J. ("Pl.'s Mem. Supp."), ECF No. 243-1; Def.'s Mem. Supp. Summ. J. ("Def.'s Mem. Supp."), ECF No. 245; Pl.'s Mem. Supp. Renewed Mot. Summ. J. ("Pl.'s Unredacted SJ Filing"), ECF No. 248; Def.'s Resp. Opp'n ("Def.'s Opp'n"), ECF No. 249; Pl.'s Resp. Opp'n ("Pl.'s Opp'n"), ECF No. 250; Pl.'s Sealed Resp. Opp'n ("Pl.'s Sealed Opp'n"), ECF No. 253. Following that hearing, the Court granted the motions for summary judgment in part, viz. the government's listing of facts, where undisputed, were established for trial, took one matter under advisement, and otherwise denied the cross motions in their entirety. See Minute Order, Electronic Clerk Note entered on 7/10/2023.

The Court here addresses the reserved issue.

---

[1] Of the District of Massachusetts, sitting by designation.

This Court took the fourth element of the deliberate indifference to sexual harassment claim under advisement, viz. that "the deliberate indifference was motivated by a **discriminatory intent**". Strickland v. United States, 32 F.4th 311, 359 (4th Cir. 2022)(citing Feminist Majority Found. v. Hurley, 911 F.3d 674 (4th Cir. 2018)(emphasis added). After a thorough review of the evidentiary record, this Court rules that Strickland failed to meet her burden at summary judgment because she does not provide any plausible evidence of discriminatory intent on behalf of any supervisory defendant **EXCEPT** Anthony Martinez ("Martinez") in his individual capacity and his official capacity as Federal Public Defender for the Western District of North Carolina. For this reason, summary judgment on the deliberate indifference claim is partially **GRANTED** with respect to all defendants **EXCEPT** Anthony Martinez.

**A. The Legal Framework**

This case is directly controlled by the mandate of the Fourth Circuit in Strickland v. United States, 32 F.4th at 311. Here the plaintiff Caryn Strickland ("Strickland") claims, inter alia, she was denied equal protection of the laws due to the deliberate indifference of various judges and officials within the judicial branch of the United States (collectively "the government").

[3]

In <u>Strickland</u> the Fourth Circuit explained that the four elements for a deliberate indifference claim to sexual harassment are "essentially identical to those outlined by the Fourth Circuit in <u>Feminist Majority Foundation</u>." <u>Strickland</u> 32 F.4th at 359 (citing <u>Feminist Majority Found.</u> v. <u>Hurley</u>, 911 F.3d 674, 703 (4th Cir. 2018). <u>Feminist Majority Found.</u> v. <u>Hurley</u> sets out the four elements of such a claim and expressly directs how this Court is to assess the fourth element of the deliberate indifference to sexual harassment claim: "Because there is no theory of respondent superior for constitutional torts, a plaintiff must plead that each ... defendant has violated the Constitution. In the equal protection context, this means showing that the supervisor ... intended to discriminate on the basis of a protected class."[2] <u>Feminist Majority Found.</u> v. <u>Hurley</u>, 911 F.3d at 703 (citing <u>T.E.</u> v. <u>Grindle</u>, 599 F.3d 583, 588 (7th Cir. 2010); <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 676-77, (2009)(explaining that, to allege equal protection claim based on supervisory liability, plaintiff must

---

[2] In this respect, it is important to note that the constitutional tort considered here does not sweep as broadly as the judicial gloss on Title VII, where liability may flow from deliberate indifference to a claim of sexual harassment because supervisory personnel's intent is presumed. <u>Burlington Indus., Inc.</u> v. <u>Ellerth</u>, 524 U.S. 742, 756 (1998)("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment. Sexual harassment under Title VII presupposes intentional conduct.")

plausibly demonstrate supervisor's discriminatory purpose)).

**Analysis of the Undisputed Facts**

Pursuant to Fed. R. Civ. P. 56, this Court, before it could grant any part of the government's motion, must determine what facts are genuinely undisputed and then must draw all reasonable inferences in favor of the non-moving party -- here Strickland. The Court has done so here.

After a thorough review of the voluminous evidentiary record -- and drawing all reasonable inferences in Strickland's favor -- there is simply no evidence, not a scintilla, with the possible exceptions discussed below, that **any** judge or judicial official acted on the basis of gender-based discrimination. Indeed, Strickland develops no such argument, and the Court must, therefore, enter summary judgment in their favor on the equal protection claim.

As to the three remaining defendants on the equal protection claim:

**1. Anthony Martinez, the Chief Federal Defender**

As to Martinez, Strickland has satisfied her burden of going forward sufficient to survive summary judgment on this issue. She has provided evidence that, were the Court to accept it and draw from it the inferences she urges, would warrant the Court in finding Martinez's deliberate indifference was

[5]

motivated by gender based discriminatory intent. Prominent among this evidence is Chief Judge Gregory's letter of reprimand dated May 28, 2019. Ex. D, ECF No. 248-5 at 80-83. The factual findings in this letter constitute an unimpeached public record pursuant to Fed. R. Evid. 803 (8)(A)(iii). Strickland's unredacted memorandum, ECF No. 248-1, summarizes the undisputed evidence this Court has before it regarding Martinez's alleged deliberate indifference motivated by gender based discriminatory intent:

> [T]he Defender facilitated and ratified the First Assistant's quid pro quo harassment by diminishing Plaintiff's job duties and refusing to consider her for the grade-level promotion that was the subject of the First Assistant's "Mas Dinero" email, for which she was eligible on her work anniversary date. See Ex. C, at 9 (admission that Plaintiff "was eligible for a grade-level promotion"). In a sworn declaration filed in this proceeding, the Defender falsely stated that he had no "discretion" to raise Plaintiff's pay. ECF No. 78-3, ¶ 33; see Ex. C, at 10 (stating that "all grade-level promotions are awarded at the discretion of the Federal Defender"). The Defender gave Plaintiff a "reclassification" to AFD in title only, which he stated was "for purposes of case weight measurement." Ex. A, at 52. The Defender even backdated the reclassification to the day before Plaintiff qualified for the promotion. Ex. N, at 46. As part of the "reclassification," the Defender also attempted to remove Plaintiff's locality pay and reduce her salary by nearly 15 percent. Id. Contrary to the job description for an AFD position, which requires the attorney to carry her own caseload, the Defender required Plaintiff to continue serving in a research-and-writing support role. Compare Ex. A, at 52, with Ex. N, at 51-57.
> The Defender told Plaintiff that he could not transfer her exclusively to appeals, even though he had an open position. Ex. M, at 33 ("Appeal FTE is

[6]

2.75 (but have been surviving with 1.75 FTE))"; id. at
53 (office "needed more appellate support"). Thus, the
Defender required her to continue working for the
trial unit supervised by the First Assistant. See Ex.
A, at 52; Ex. C, at 3. The Defender also refused a
transfer to the Asheville division office. See id. The
Defender claimed there was no office space, but a few
months later, he began advertising positions for an
intern and a paralegal to work in Asheville. See Ex.
D, at 17; see also Ex. I, at 95 (FEOO had seen lack of
office space "used as an excuse previously in many
other cases"). Because of the Defender's continued
failure to address the harassment, Plaintiff did not
feel safe in the office and requested to work
remotely. Ex. A, at 51; see Ex. I, at 94-95
. . . The Defender, however, became furious when he
learned that Plaintiff had reported her allegations of
wrongful conduct to the AO. He "called her out on
contacting the AO to receive guidance on her civil
rights as a federal employee." Ex. D, at 81. The
Defender berated Plaintiff for going to "some other
party" and stated that he was being "blamed" and
"attacked" for something that was not his "fault." Ex.
A, at 30. The Defender minimized the harassment,
stating words to the effect that, "at least you
weren't touched." Ex. D, at 81.



Pl.'s Unredacted SJ Filing . The Court fully recognizes

that it is here quoting extensively from Strickland's **argument**.

It is, of course, making no such findings -- nor can it at the

summary judgment stage. The underlying facts, however, appear to

be undisputed and the argument well illustrates the plausible

conclusions a court could draw. Summary judgment must be

denied as to Martinez.

## 2. James Ishida, Circuit Executive

In relation to James Ishida, in her deposition Strickland alleges he violated her constitutional rights by criticizing her for going to the AO with her complaints. Ex. 6 at 105:19-20. Mr. Ishida allegedly said "when that happens, barriers go up and people go on guard". Id. While Strickland interpreted this comment to be "a very adverse reaction to the fact that [she] had reported [her] complaints to the EO", Id. at 105:20-22, this comment does not rise to the level of deliberate indifference motivated by a discriminatory intent necessary for Ishida to remain as a defendant on this claim.

For example, in T.E. v. Grindle,[3] the plaintiff offered evidence creating a reasonable inference that the defendant, a school principal, **knew** about the Music teacher's sexual abuse and **deliberately** helped cover it up by misleading the girl's parents, the superintendent, and other administrators. Grindle, 599 F.3d at 589 (citing Cf. Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1190-91 (7th Cir.1986) (Posner, J., concurring) (suggesting that policy of **deliberately** refusing to respond to complaints of sexual harassment would support an inference of intentional discrimination))(emphasis added). Here, unlike

---

[3] Cited by the Fourth Circuit in Feminist Majority Found. v. Hurley, 911 F.3d 674, 703 (4th Cir. 2018).

Grindle, no evidence of deliberate cover up by Ishida is alleged. All that is presented is a general comment made by Ishida rising to no more than an observation from his experiences in dealing with reports.

At Strickland's own deposition, she alleged that Ishida "excluded [her] — or at least did not tell Heather Beam [the investigator], did not communicate to her. Somehow, she believed that [Ishida] had excluded [her] claims against Tony from the investigation and she did not investigate those claims." Ex. 6 at 108-109:22-1. No evidence as to why the investigator "somehow believed" that Ishida excluded Strickland's claims against Martinez is provided. This evidentiary gap is simply too great to bridge. This Court may not leap this evidentiary gap reasonably to infer Ishida's discriminatory intent arises by way of a **deliberate** cover up or other misleading behaviors due to Strickland's rightful reporting. The Circuit Executive is entitled to summary judgment on this aspect of the case.

### 3. Roger Gregory, Chief Judge, Fourth Circuit

Strickland claims that gender based discriminatory intent may reasonably be inferred from the decision of the Chief Judge not to exclude Martinez from the EDR process here despite the

recommendation by the Investigator communicated to the Circuit Executive that Martinez be excluded in this case.[4]

Here, it may reasonably be inferred that the Chief Judge at least suspected that Martinez was somehow complicit in the sexual harassment of Strickland. That inference, however, does not carry the day for her. There are a plethora of wholly legitimate inferences one may draw from the Chief Judge's largely unrefuted testimony, each one negating any suggestion of discriminatory intent. Here, at summary judgment, it is not for this Court to pick the "correct" inference.

At summary judgment, the Court only makes "rulings" not "findings." Here, therefore, the point is that to draw **any** inference of **discriminatory** intent would be an inference too far, an impermissible piling of inference on inference. "[P]laintiffs need to present more than their own unsupported speculation and conclusory allegations to survive summary judgment." Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 776 (4th Cir. 2023)(citing Fed. R. Civ. P. 56(a); Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir.

---

[4] This point is not admitted. While the email from the Investigator to the Circuit Executive expressing doubts as to Martinez's further participation is undisputed, the Chief Judge testified he did not remember receiving a copy or having been informed of it. ECF No. 255-2 at 33. At the summary judgment stage this Court infers it was conveyed to him and read.

Case 1:20-cv-00066-WGY Document 324-1 Filed 07/25/23 Page 67 of 80

2003). The Chief Judge is entitled to summary judgment on this aspect of the case.

## B. Conclusion

Thus, it is this Court's obligation to **GRANT** partial summary judgment, ECF No. 245, on the equal protection claim to all defendants **EXCEPT** Anthony Martinez. All other claims survive summary judgment and will stand for trial in September 2023.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

```
 1    terrible.  So I'm a peasant on this.  Do it my way.  If
 2    you get to a number, I'm going to take it that it is
 3    admitted in evidence.
 4         Now what does that mean?  It doesn't mean it's
 5    established, it means it's evidence, which means as the
 6    factfinder I may decide that it is both authentic and I
 7    may decide that its substance is probative.  That's all.
 8    And I will use the normal means of reasoning to arrive
 9    at that result.  I don't think there should be much
10    dispute.  But I want a single exhibit list.
11         Now let's talk about the trial because of this
12    business about going to judicial mediation or something.
13    Look, I can give you a 5-day trial starting on the 5th
14    of September, going 9:00 till 1:00 for 5 days, except
15    the 5th is the Tuesday after Labor Day, so I may be
16    picking a jury on Monday or the following Monday.  So
17    I'm not sure I'm going to give you the, um -- that
18    following Monday.  So the 5th of September would be the
19    5th, 6th, 7th, 8th, that's four days.  The 11th, I, um
20    -- we'll have to see during that week how the rest of my
21    trial calendar is falling out.  But if I don't -- if I
22    start a jury case, I pick the jury on the 11th, I will
23    give you the 12th.
24         Now the 5 days, 9:00 till 1:00 are for evidence.
25    That's not -- I'm not arguing that you should, um -- I'm
```

marvelous magistrate judges who are superb mediators and
one has a nationwide reputation, Judge Maryanne Bowler,
who has served as a mediator for multidistrict
litigation outside the District of Massachusetts.  And
this is something I've examined -- I've tried this
ground before, Judge Bowler and I have served sometime
together, and certainly I would be willing to ask her if
she'd like to mediate this case, but that would pretty
much obviate a trial in early September.  I mean we're
about to -- I don't know what her vacation status is.
I'd just be asking her.

     But practically what are you thinking about in
judicial mediation?

     MS. STRICKLAND:  You have to understand that --

     MR. STRICKLAND:  That's a very difficult question
because of the preliminary injunction that has been
pending for so long and it's just -- this is a rock and
a hard place, and the resistance to mediation up until
this.  But we asked for it before, it's required under
the local rules here, we didn't get it, um, so it might
not be worthwhile.

     THE COURT:  Well you see this is the final
pretrial conference today, I'm telling you when you'll
get a trial.  I'm not a mediator but I am a judge.  You
know cases can always be settled.  My instinct is to

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

```
_____
                                    )
CARYN DEVINS STRICKLAND,            )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        CIVIL ACTION
                                    )        NO. 1:20-00066-WGY
UNITED STATES, ET AL.,              )
                                    )
                Defendants.         )
_____)
```

YOUNG, D.J.[1]                                    October 4, 2023

**ORDER**

1. Trial will commence in this case on Monday, December 11, 2023[2] or on the next trial day following the conclusion of the case then on trial. There will be no continuance.

2. The plaintiff's motion for a protective order is denied. The grounds raised are obscure at best, and it is important promptly to conclude discovery. Accordingly, the continued deposition of the plaintiff will take place

_____
[1] Of the District of Massachusetts, sitting by designation.
[2] The plaintiff having joined in the motion to refer the case to mediation, (and thus delay the September 5th trial in order to explore that remedy) now takes umbrage that the Court is not available to try the case just as soon as it was informed mediation had failed. That's not the way it works. Other cases (criminal and civil) are eager and ready for trial and have been previously scheduled in the interim.

[1]

as scheduled on Thursday October 12, 2023. There will be no continuance.

3. The plaintiff's motion for sanctions is taken under advisement. Her request to seal documents in connection with that motion is denied as it does not comport with Local Rule 6.1 (c).

4. The Court will schedule a further pre-trial conference at its earliest convenience.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

[2]

# EXHIBIT A

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

March 25, 2019

To:        Chief Judge Gregory

From:      James N. Ishida

RE:        Investigation Report – Caryn Devins Strickland

Attached is the investigation report that was prepared in the EDR/Report of Wrong Conduct matters filed by Caryn Devins Strickland. You must decide what disciplinary action, if any, should be taken against Federal Public Defender Anthony Martinez (N.C.W.D.) under Chapter IX of the Fourth Circuit's EEO/EDR Plan (November 2018) ("the Plan").

**I.    Summary**

On September 10, 2018, Assistant Federal Public Defender Caryn Devins Strickland filed both an EDR Complaint under Chapter X and a Report of Wrongful Conduct under Chapter IX of the Plan, alleging sexual harassment, retaliation, and other acts of wrongdoing. Because both matters arose under the same general facts, I had ordered a joint investigation and appointed HR Manager Heather Beam, from the North Carolina Western District Probation Office, to handle the investigation.

While the investigation was ongoing, I had attempted to find a resolution through the counseling phase of the Chapter X EDR proceeding. In spite of extending the counseling period, I was unsuccessful in settling the matter. The counseling period ended on January 14, 2019.

On January 31, 2019, Ms. Strickland filed a timely request for mediation under Chapter X of the Plan. I thereafter appointed Edward G. Smith, Fourth Circuit Chief Mediator, to conduct the mediation.

The mediation period was extended once by mutual consent of Mr. Smith and Ms. Strickland. Eventually, Mr. Smith was able to persuade Circuit Judge Henry Floyd to offer Ms. Strickland a clerkship to the end of the term in June, and convince Ms. Strickland to withdraw her EDR complaint in return for the clerkship.

On March 11, 2019, Ms. Strickland submitted her request, asking that her EDR complaint be withdrawn.

**II.   Next Steps – Chapter IX Report of Wrong Conduct**

The last remaining matter is Ms. Strickland's Report of Wrong Conduct under Chapter IX of the Plan.

Chapter IX describes the process for resolving a Report of Wrongful Conduct:

(a)   A Report of Wrongful Conduct is not the same thing as an EDR Complaint, and the two must be handled according to the procedures as set forth in their respective chapters,

(b)   An investigation must be conducted into the allegations,

(c)   All parties involved in the investigation must protect the confidentiality of the allegations, and

(d)   "Employees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct,[1] as defined in this Plan, may be subject to disciplinary action."

The investigation report recommends that disciplinary action be taken against the accused employee – Federal Public Defender First Assistant J.P. Davis – as well as the unit executive, Anthony Martinez.  You cannot decide any disciplinary action against Mr. Davis – that is within the authority of the unit executive.  But you can and are tasked with deciding if disciplinary action is appropriate for Mr. Martinez.

**III.   Additional Information**

I'll speak to you later about a conversation that I had with Cait Clarke, the chief of the AO's Defender Services Office, which may help with your decision regarding Mr. Martinez.

Attachment

---

[1] "Wrongful conduct" is defined to include "[d]iscrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited." *See* Chapter II, section 1 of the Plan.

# Exhibit 69

Add 38

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

May 28, 2019
**CONFIDENTIAL**

Mr. Anthony Martinez
Federal Public Defender
129 West Trade Street, Room 300
Charlotte, NC 28202

RE:    Counseling re Caryn Devins Strickland's Report of Wrongful Conduct

Dear Tony:

I was delighted to see you at last week's Fourth Circuit's Workplace Conduct Conference in Richmond, VA.  It gave me the timely and fitting opportunity to speak to you about the contents of this letter of counseling.

On behalf of Chief Circuit Judge Roger L. Gregory, I write to inform you that you are being counseled for your actions arising from the Report of Wrongful Conduct submitted by Caryn Devins Strickland on September 10, 2018, under Chapter IX of the *Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit* ("the Plan").

## I.    Background

On September 10, 2018, Ms. Strickland submitted a Report of Wrongful Conduct under Chapter IX and a Request for Counseling under Chapter X[1] of the Plan, alleging sexual harassment, retaliation, and discrimination during her employment with your office.  In her Report of Wrongful Conduct, styled Official Grievance, Ms. Strickland claimed that "[t]he First Assistant [JP Davis] has abused his power and offered employment preferences for his unwanted advances."  Ms. Strickland explained that Mr. Davis subjected her to unwanted advances, unreasonably interfered with her work assignments, and even proposed an unsavory quid pro quo proposal on her request for a promotion and raise.[2]  Ms. Strickland also included you in her allegations.

With the approval of Chief Judge Gregory, I appointed Heather Beam to investigate Ms. Strickland's Report of Wrongful Conduct.[3]

---

[1] Ms. Strickland voluntarily withdrew her Chapter X claims on March 11, 2019, and they are not part of this letter of counseling.

[2] In an email dated May 18, 2018, and titled "Mas Dinero," Mr. Davis responded to Ms. Strickland's request:
> Dude, you're shooting high with a G15.  Not least of all since you'll need 5 more years of fed service to qualify for it.  But fret not, I have a plan . . . just remember I deal in pay-for-stay 😊

[3] Under Chapter IX of the Plan, "[t]he EDR Coordinator shall promptly inform the Chief Judge and unit executive of any report.  The Chief Judge and/or unit executive shall ensure that the allegations in the report are appropriately investigated, either by the human resources manager or other person."

US00004264

## II.    The Investigator's Report

Following a painstaking investigation, Ms. Beam issued her Counselor's Report on November 19, 2018, later supplemented on January 11, 2019. In her report, Ms. Beam suggested that you "be counseled and trained on how to handle workplace conduct complaints. He should also be counseled or training [sic] on judgement and decisiveness." Ms. Beam explains:

> *For example, Caryn states when she initially brought her complaint to Mr. Martinez he compared her relationship with the First Assistant Defender as a marriage and asked her to compromise. He also made comments bade [sic] on Caryn's report such as "At least she was not touched" and called her out on contacting the AO to receive guidance on her civil rights as a federal employee. He also stated he was being blamed for something that was not his fault. It is evident this claim was mishandled from the beginning by Mr. Martinez and he would benefit greatly with additional training on workplace conduct as well as basic managerial/leadership skills.*

### A.    Marriage Metaphor

On or around July 5, 2018, you met with Ms. Strickland and Mr. Davis to resolve a "breakdown in communications." Though well-intended, you had not abided by Ms. Strickland's wishes that she meet with you privately to discuss Mr. Davis's conduct. This made Ms. Strickland feel "uncomfortable" and "intimidated," having to confront the person she accused of sexually harassing her. She was also troubled by your characterization that this was a simple misunderstanding, feeling that you had trivialized the incident.

After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a "marriage," with the parties needing to "compromise" and "meet in the middle." Ms. Strickland said that she was "shocked" and "offended" at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a "marriage." The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her.

### B.    No Physical Touching

You had a subsequent discussion with Ms. Strickland in which you attempted to clarify whether Mr. Davis had touched Ms. Strickland or had engaged in other inappropriate behavior. Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, "at least you weren't touched," or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt.

US00004265

# Add 40

Anthony Martinez
May 28, 2019
Page 3

C.     Disapproval of Seeking Outside Advice

Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee.  The investigator found that you had "called out" Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office.

D.     Shifting Responsibility

Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with.  Ms. Strickland reported that she felt "offended" by your protest, which she perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office.  This, the investigator concluded, contributed to your mishandling of the matter.

E.     Mitigating Factors

In mitigation, Investigator Beam found that you had acted expeditiously to accommodate Ms. Strickland's requests, except her request to be transferred to your Asheville Office.  You had noted, however, that there was no physical space in that office to accommodate Ms. Strickland.

The investigator also found that you had acted in good faith in accommodating Ms. Strickland's request to telework, and you were flexible in other work assignments.

Finally, Ms. Strickland alleged that you had retaliated against her by denying merit-based promotional opportunities and by removing her locality pay.  The investigator found that these allegations are without support.

F.     Conclusion

In conclusion, Investigator Beam reported that she did "not see a case for retaliation based on [her] investigation and the facts presented by both sides."  The investigator also concluded that "Mrs. Devins has experienced in her mind sexual harassment although the facts discovered in this case find this claim to be very flimsy."

But the investigator did record the numerous missteps that you committed, which contributed to Ms. Strickland's perception of mistreatment and retaliation by you.  These missteps appeared to have exacerbated the underlying situation, and they broke trust between you and Ms. Strickland.  This was not helpful.  But the investigator observed that most of your "decisions . . . were made at the end of a day where [you had] attended meetings all day and was tired."  She found that your actions were not motivated by malice or ill-will, but rather were the result of poor judgment caused by fatigue.

US00004266

# Add 41

Anthony Martinez
May 28, 2019
Page 4

Taking all of this into account, the investigator concluded that harsher discipline was not appropriate; instead, she recommended that you should be "counseled or train[ed] on judgement and decisiveness," in addition to be "counseled and trained on how to handle workplace conduct complaints."

## III.  Chief Judge Gregory's Decision

Under Chapter IX of the Plan, "[e]mployees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan,[4] may be subject to disciplinary action." After careful consideration of the investigator's report, supporting attachments, and documents filed in this case – and noting the mitigating circumstances – Chief Judge Gregory has decided to adopt the recommendations contained in the report.

In addition to this letter of counseling, Chief Judge Gregory hopes that you will avail yourself of continual workplace conduct, decision-making, and leadership training opportunities. The Fourth Circuit's highest priority is to ensure a safe, civil, professional, and collegial workplace for all court employees, and it expects its managers and leaders to uphold the same standard. Anything less is unacceptable.

Chief Judge Gregory also wanted me to convey that the Fourth Circuit unequivocally stands behind you and your efforts to create a safe, civil, professional, and collegial work environment in your office. Therefore, if there is anything that I or my colleagues can do to support your efforts, please feel free to call upon me anytime.

Best regards,

cc:    Honorable Roger L. Gregory

---

[4] Under Chapter II, section 1 of the Plan, "wrongful conduct" is defined:

Discrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited. All of the above constitute "wrongful conduct."

US00004267