## ADDENDUM TABLE OF CONTENTS

Excerpts from Transcript of September 8, 2022 Hearing ........... Add. 1

Order Dated September 22, 2022 ................................................. Add. 5

Excerpts from Transcript of October 31, 2022 Hearing............. Add. 7

Order Dated January 26, 2023 .................................................. Add. 13

Excerpts from Transcript of June 21, 2023 Hearing ................ Add. 17

Summary Judgment Opinion Dated July 25, 2023.................... Add. 19

Excerpts from Transcript of July 27, 2023 Hearing ................. Add. 30

Order Dated October 4, 2023 .................................................... Add. 32

Memorandum to Chief Judge and Letter of Reprimand........... Add. 34

Add 1

4

1    injunction is pursuant to the Federal Rules of Civil Procedure

2    65 combined with trial on the merits, so, Mr. Strickland, when

3    really do you want to go to trial here now?  I understand why

4    you want a prompt resolution, and I'm prepared to give it to

5    you, but we're going to have to have a trial to get there, so

6    when?

7         MR. STRICKLAND:  I believe we have one scheduled for

8    September 2023.  Everybody agreed to that at the status

9    conference.

10:10AM  10         THE COURT:  Everybody did, yes, but you're saying --

11    you see, I'm prepared to revisit that and give you a much more

12    rapid trial subject to what Mr. Kolsky says.  That is what we

13    agreed.

14         What I just did was collapse further consideration of

15    the preliminary injunction with trial on the merits, so I'm

16    asking you now since I'm not giving preliminary injunction

17    today and I'm not deciding it on affidavits, I want a trial, so

18    when is the earliest we can get to a trial that gets you the

19    relief that you seek?

10:11AM  20         MR. STRICKLAND:  You know, partly this is a very

21    difficult question to answer because it's just me here right

22    now.  The other counsel for the plaintiff have not been

23    admitted, and I'm going to try the best I can, but I understand

24    that that's your practice that you use, you collapse it down to

25    the merits.  I would have appreciated some notice of that so we

Add 2

7

1    now because these issues have been going on for weeks, if not

2    months, trying to get counsel admitted here.

3         THE COURT:  Let's take care of it.  They're all

4    admitted so long as they comply with the local rules of the

5    Western District of North Carolina.  If they've submitted the

6    materials.  I see your problem that I have to actually act,

7    they're admitted, so now they're admitted.

8         MR. STRICKLAND:  I brought this up at the July status

9    conference, and you said the same thing, and it never happened,

10:15AM 10    and since that point in time, and we've informed the Court of

11    this in filings that Ms. Gersen has not --

12         THE COURT:  I will follow it up, I will follow it up.

13    Now, Mr. Strickland, maybe we ought to do this.  I've made my

14    order.  I do want to hear from Mr. Kolsky, but why don't you

15    and he confer, and why don't I set it down for a further

16    hearing to schedule a prompt trial, what would you say a week,

17    two weeks?

18         MR. STRICKLAND:  No, I cannot agree to that.  More

19    importantly, I think we're entitled to the preliminary

10:16AM 20    injunction now.  What it sounds like is that you're going to

21    set off a decision of that, and that's not allowed under Fourth

22    Circuit precedent.  You can do not an indefinite suspension of

23    this.  We are entitled to a ruling on the preliminary

24    injunction now.

25         THE COURT:  Mr. Strickland, I haven't done any

Add 3

8

1    indefinite suspension.  If you want me to put you to trial

2    without telling you, there won't be any indefinite suspension,

3    I'll set a prompt trial date.  Let me turn to Mr. Kolsky.

4         MR. STRICKLAND:  How do we get our discovery in this

5    context?

6         THE COURT:  You know, this idea about discovery.  You

7    know, you have subpoenas here.  There isn't a constitutional

8    right to discovery.  This is an important case.  It requires

9    careful attention.  You say you want prompt action.  I'll give

10   it to you.

11        Now, Mr. Kolsky, from your perspective, understanding

12   my practice, when can you be ready to try this case?

13        MR. KOLSKY:  Your Honor, we would prefer to stick with

14   the September 2023 trial date.

15        THE COURT:  He wants much faster action, and actually

16   I don't see a need to wait that long.

17        MR. STRICKLAND:  I don't, I don't.  I don't want it to

18   be framed that way.  That's not what I said.

19        THE COURT:  Well, I will tell you your proposal for a

20   preliminary injunction is woefully inadequate because, for

21   example, we don't know anything about the damages here.  Let's

22   say there was, just for the purpose of discussion, a reasonable

23   likelihood of success on the merits.  I wouldn't know how to

24   frame an order, and there has been none of these things have

25   been subject to cross-examination.  I'm entitled to actually

10:17AM (line 10)
10:18AM (line 20)

Add 4

9

1    take evidence.

2         MR. STRICKLAND:  Yes.

3         THE COURT:  And I propose to take it and I propose

4    then to make a proper ruling on a proper evidentiary record.

5    Now, you can't tell me that I can't get to the merits.  If you

6    want to wait till September, then I will wait, and that's when

7    I will determine the matter, but that's not indefinite.  That's

8    what you're telling me.  I'm telling you the requirements for

9    equitable relief here are an evidentiary hearing beyond

10:19AM 10   affidavits, however we frame it.  Now let me put it that way,

11   if you want to call it a preliminary injunction, when do you

12   want this evidentiary hearing?

13        MR. STRICKLAND:  This is such a difficult position for

14   me to be in.  Last week I contacted your courtroom deputy and

15   asked whether this was an evidentiary hearing or an oral

16   argument.  She told me it was an oral argument.  We, therefore,

17   filed a notice on Friday waiving the oral argument, reiterating

18   yet again that we did not believe an evidentiary hearing was

19   necessary but if the court disagreed, to provide us notice of

10:19AM 20   that so we could provide a position.  I feel I've been brought

21   in here and sand bagged with this a little bit.

22        THE COURT:  Well, I'm sorry you feel that way.  I

23   really don't accept that.  The truth is I'm trying very hard to

24   accommodate you and safeguard the rights of all parties.

25        MR. STRICKLAND:  See, but what's curious to me is at

Add 5

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

| | |
|---|---|
| CARYN DEVINS STRICKLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 1:20-00066-WGY |
| UNITED STATES, ET AL., ) | |
| ) | |
| Defendants. ) | |

YOUNG, D.J.[1]                                September 22, 2022

**ORDER**

In view of the scheduling order of the United States Court of Appeals for the Fourth Circuit, the hearing scheduled for Wednesday, September 28, 2022 is continued until Wednesday, October 26, 2022 at 2:00 p.m.

While the Court is willing to entertain further such motions should that be necessary, the public interest would seem to require, see Fed. R. Civ. P. 1, that the Court address the plaintiff's motion for partial summary judgment (which the plaintiff has asked be first addressed) and the plaintiff's motion for immediate equitable relief (upon which this Court desires a prompt evidentiary hearing).

---

[1] Of the District of Massachusetts, sitting by designation.

[1]

Add 6

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

[ 2 ]

```
 1   hearing.  And I read both the motion and the defendants'
 2   response and I appreciate both.
 3         And, Mr. Andonian, you're going to speak to this?
 4         MR. ANDONIAN:  Yes, your Honor.
 5         THE COURT:  All right.
 6         MS. STRICKLAND:  Your Honor, may I be heard on one
 7   other matter regarding the summary judgment motion?
 8         THE COURT:  No, there's no rebuttal, ma'am.
 9         MS. STRICKLAND:  It's not rebuttal.
10         THE COURT:  I said 15 minutes a side.
11         All right.
12         MS. STRICKLAND:  It's not for rebuttal.
13         THE COURT:  I beg your pardon?
14         MS. STRICKLAND:  We would request that under Rule
15   56(a) the Court state the reasons on the record for
16   denying the motion for partial summary judgment.
17         THE COURT:  Yes, and you're entitled to that.
18   Because in the Court's view, having reviewed the entire
19   record carefully, there exist genuine issues of material
20   fact as to each essential element that the plaintiff
21   must prove.  Therefore the motion is denied.
22         All right.
23         Mr. Andonian, um, I think the Fourth Circuit
24   understands exactly what I'm trying in fairness to do
25   here, so I'm not going to decouple my already-made
```

Add 8

1    ruling that consideration of a preliminary injunction

2    will be combined with trial on the merits.  No one is

3    hamstrung, no one is denied either discovery or the

4    production of evidence at trial.  Indeed having looked

5    over this evidentiary record in detail now, it seems to

6    me that the plaintiff, um, herself is in possession of

7    virtually all of the evidence necessary for the

8    liability case, and as Mr. Kolsky has described with his

9    various statements, the government is in possession of

10   the evidence that it will seek to rebut that evidence.

11        There may be something to expert testimony with

12   respect to a front-pay determination if we get to that

13   point, but the Court is open to a prompt evidentiary

14   hearing as to liability and then once the Court

15   determines liability, if we're going to further explore

16   damages, to set a later date for the exploration of

17   damages or some other remedy.  But I'm only going to do

18   it once.

19        Your motion for a prompt evidentiary hearing,

20   which Ms. Gersen is the lead person who signs that,

21   makes very clear that what you want is a hearing and

22   then you can appeal that and then we'll have the trial.

23   That's not helpful.  It does not, as Rule 1 requires,

24   "tend towards the just, speedy, and inexpensive

25   resolution of the case."  The case does present

Add 9

```
 1    that there isn't any discovery --
 2         THE COURT:  Let me explain this to you about
 3    discovery.  Wait.  Wait.  Only one of us can talk.  And
 4    respectfully you're going to have to listen to me.
 5         I haven't foreclosed any discovery.  I haven't
 6    foreclosed subpoenas to bring people before the Court to
 7    testify.  But this idea that we're going to have a round
 8    of depositions so that every possible person is going to
 9    be deposed and then we will have the trial, there is no
10    requirement due process or otherwise for that.  I am
11    offering a prompt trial.
12         Now in the real world the earliest I can get to it
13    probably is in December.  But as -- in December I will
14    give you the time necessary to put on your case and the
15    government the time necessary to put on its case just as
16    promptly as the Court has trial days.  All I'm asking is
17    when do you want it?  And when I hear that, I'll hear
18    from the government and hear when they want it.
19         This motion has made various statements about the
20    government withholding discovery.  Well I haven't heard
21    that from Mr. Kolsky and I'm not going to be very happy
22    about anyone withholding discovery.
23         So I'll hear from you or Mr. Andonian, but not
24    both.
25         Who's going to talk?
```

Add 10

```
1          MR. ANDONIAN:  Your Honor, if I could?  And I'm
2    coming into this, you know, after some work has been
3    done so forgive me if I'm retreading a little bit of
4    ground.  But what I do think is important are a couple
5    of points.
6          The first is, um, just to piggyback on what
7    Ms. Strickland said, there is a need for discovery.  As
8    in any case, we don't know what we don't know until we
9    take discovery.  I don't understand the government to be
10   denying that and disputing that and in fact --
11         THE COURT:  I'm not saying they are, you give me a
12   date.  When do you want this hearing?
13         MR. ANDONIAN:  We want this hearing that's
14   pretrial and is not --
15         THE COURT:  Well that's not going to happen.  I've
16   already ruled on that.
17         MR. ANDONIAN:  If I could just ask, your Honor?  I
18   guess I'm confused as to what -- what the problem with
19   having a pretrial hearing is as opposed to the
20   consolidated trial?  With all due respect, I've
21   litigated plenty of these and I'm not sure I've ever had
22   a consolidated trial.
23         Rule 65 itself allows the testimony to be
24   incorporated into the trial record.  So this idea that
25   there would be duplication or undue burden, I guess I'm
```

Add 11

1   and I am happy with that.  But I'm simply asking for

2   some reasonable proposal.

3        Telling me you're going to put it on for a day and

4   then now -- and of course you have the right, I'm not

5   foreclosing the right, but if I did that, then you're on

6   to the Court of Appeals with respect to that.  I don't

7   propose to do it twice.  I propose to get all the

8   evidence that is necessary to make difficult, difficult

9   factual determinations here.  That's all.  And I propose

10  to do it in a reasonable way.

11       So, um, now your last chance.  Give some date

12  where we could begin to have this hearing?

13       Now I am persuaded of one thing.  If we go along

14  in the hearing and I come to a belief at the end of the

15  liability hearing that an immediate injunctive remedy is

16  required, I won't hesitate to grant it.  And I've

17  already laid myself open to saying that liability is one

18  thing and prospective relief is another and so maybe we

19  can put the prospective relief off further.  But I don't

20  really, um, and looking at this record, see what we're

21  waiting so long for?  I can't get you till December, get

22  to you till December, and I'm trying to -- well let me

23  go to the government while you think about it.

24       Mr. Kolsky, they haven't had a chance really to

25  digest your proposal.  Your proposal is fine by me,

Add 12

1    like in any other case, which I think would be

2    beneficial here, I think the government thinks it would

3    be beneficial here, and it would be in fact beneficial.

4    The proposal is to simply have a pretrial preliminary

5    injunction hearing and --

6         THE COURT:  Mr. Andonian, um, I am not denying a

7    preliminary injunction because I see that's your grounds

8    for saying I am not giving you the attention that you're

9    entitled, I have consolidated the two.  I am prepared to

10   go forward as early as November.

11        MR. ANDONIAN:  Your Honor, I --

12        THE COURT:  I have a double trial, but I am

13   prepared to go forward as early as November and

14   certainly trial days in December.  So your answer is --

15   you're only saying what you already said.

16        MR. ANDONIAN:  Your Honor, we are not prepared to

17   go forward with a trial on the merits without discovery,

18   and again I --

19        THE COURT:  Again no one says you'll be without

20   discovery.

21        MR. ANDONIAN:  Your Honor --

22        THE COURT:  You don't understand.  Subpoenas work.

23   Bring in the people.  If that's inefficient --

24        MR. ANDONIAN:  Your Honor, what I've been --

25        THE COURT:  If you think that's inefficient, the

Add 13

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

|  |  |  |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 1:20-00066-WGY |
| UNITED STATES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

YOUNG, D.J.[1]                                    January 26, 2023

**MEMORANDUM**

After a somewhat contentious hearing, the parties appear to have settled down and are apparently engaged in preparing for a September 2023 trial – the date they all agree the case will be trial ready.

Upon reflection, the Court realizes that it has not formally ruled on the Plaintiff's "Motion For Prompt Evidentiary Hearing" (ECF No. 157). As was evident at the hearing, the Court thought the Plaintiff wanted her trial but she actually envisioned some sort of hybrid proceeding.

The Court has already combined further hearing on preliminary relief with trial on the merits as authorized by

---

[1] Of the District of Massachusetts, sitting by designation.

[1]

Add 14

Fed. R. Civ. P. 65(a)(2), a course of action expressly confirmed here by the Fourth Circuit as within this Court's discretion. United States v. Strickland, 2022 U.S. App. Lexis 28846 (4th Cir. Oct. 18, 2022). The Court adheres to that position.

Still, the Court fully recognizes the Plaintiff's interest in prompt relief should she prevail on the merits. A decent respect for her concerns causes the Court briefly to outline its insistence upon a full trial.

Over a half century ago, I was privileged to serve as law clerk to a truly formidable and brilliant jurist, the Honorable Raymond S. Wilkins, Chief Justice of the Massachusetts Supreme Judicial Court. "Facts are like flint," Chief Justice Wilkins would say, and he taught me 1. that only a trial court could establish those facts, and 2. "their proper ascertainment is the entire goal of our adversary system." See Berthoff v. United States, 140 F. Supp. 2d 50, 91 (D. Mass. 2001) (emphasizing the vital role of judicial fact finding); In re Nexium (Esomeprazole) Antitrust Litigation, 297 F.R.D. 168, 176 (D. Mass. 2013) (same). Over the now forty-four years of my judicial service, the value of fair, thorough, and scrupulously independent **fact finding** has only increased in importance in a world where unfiltered instant information crowds the marketplace of ideas. The best way to ascertain the facts is, and always has been, at a **trial**, with live witnesses, thoughtful

[2]

# Add 15

cross-examination, and adherence to the rules of evidence.
Indeed, I've become skeptical of short cuts. See e.g. United
States v. Massachusetts, 781 F. Supp. 2d 1, 22 n. 25 (D. Mass.
2011) ("Affidavits are the Potemkin Villages of today's
litigation landscape… all lawyer painted facade and no interior
architecture").

> [F]act-finding is difficult.  Exacting and time
> consuming, it inevitably falls short of absolute
> certainty. More than any society in history, the
> United States entrusts fact-finding to the collective
> wisdom of the community. Our insistence on procedural
> safeguards, application of evidence rules, and our
> willingness to innovate are all designed to enhance
> impartial fact-finding.
>     Judicial fact-finding is equally rigorous.
> Necessarily detailed, judicial fact-finding must draw
> logical inferences from the record, and, after lucidly
> presenting the subsidiary facts, must apply the legal
> frame-work in a transparent written or oral analysis
> that leads to a relevant conclusion. Such fact-finding
> is among the most difficult of judicial tasks. It is
> tedious and demanding, requiring the entirety of the
> judge's attention, all her powers of observation,
> organization, and recall, and every ounce of analytic
> common sense he possesses. Moreover, fact finding is
> the one judicial duty that may never be delegated to
> law clerks or court staff. Indeed, unlike legal
> analysis, many judges will not even discuss fact-
> finding with staff, lest the resulting conclusions
> morph into judgment by committee rather than the
> personal judgment of the duly constituted judicial
> officer.

William G. Young, A Lament For What Was Once and Yet Can Be, 32
B.C. Int. & Comp. L. Rev. 312-313 (2009) (footnotes omitted)

I do not for an instant claim it is easy. But it is just.

Thus, the Court reiterates that it is the parties, not the
Court, who insist that they need until September 2023 to be
ready for trial. Consistent only with its established calendar

[3]

Add 16

of actual trials, the Court stands ready to afford these litigants a full and fair trial just as soon as they are ready to go,[2] and will advance the trial date accordingly.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[2] I am reminded of a story told to me recently by my longtime colleague and friend, Judge George O'Toole. Like me, he served as a Justice of the Massachusetts Superior Court. Once, during a call of the lengthy civil list, counsel responded, "We'll be ready when reached, your Honor."

"You have been reached," the Judge responded.

So here.

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.

[4]

Add 17

```
 1        THE COURT:  For the defense?
 2        MS. McMAHON:  Good morning, your Honor, I'm
 3   Madeline McMahon from the Department of Justice, and
 4   Danielle Wolfson Young from the Department of Justice.
 5        THE COURT:  And good morning to you.
 6        Well I called this status conference to make a
 7   suggestion to you and let me tee it up.  First of all, I
 8   am preparing for the hearing on the cross-motions for
 9   summary judgment that is to be held on the 12th and I
10   want to keep that date, but as to -- and I want to thank
11   you, thank you both, both sides, because now, really for
12   the first time in my examination of this case, we've
13   moved beyond allegations to actual evidence and, um,
14   your, in large measure, thorough presentation of your
15   motions and supporting exhibits have been extremely
16   helpful, but I've noticed the following, there isn't too
17   much dispute as to liability, there isn't too much
18   dispute as to what went on here.  The issues, the major
19   issues are legal issues, what do we make of it when we
20   examine what went on here?  And with that in mind, I
21   offer the following suggestion.  And this is not
22   something that I can require and it's not something I
23   need a response from you this morning, although I'm
24   happy to explain, if I do not do so, the ramifications
25   of what I'm suggesting.
```

Add 18

1        In the First Circuit, and I know we're not in the

2    First Circuit, we're in the Fourth Circuit, but in the

3    First Circuit we have a procedure and it's fully

4    appropriate, it's called a case-stated procedure, and

5    under the case-stated procedure where the facts are not

6    in dispute and what is in dispute is the legal

7    requirements to be applied to those facts, the judge

8    may, so long as there is not a significant, um,

9    determination of competing views of the facts, the Court

10    may hold a hearing and taking the undisputed facts may

11    rule on the law and determine the case in whole or in

12    part.  That procedure holds significant advantages, I've

13    found, to a situation where there are competing motions

14    for summary judgment.  And let me explain how I use that

15    procedure because I think it would be helpful here.

16        If we go forward on the 12th and argue the

17    competing motions for summary judgment, under the --

18    under Rule 56 I am required, and I shall, take each

19    motion separately and, um, draw all inferences against

20    the moving party, and that could very well result in --

21    and I'm not -- my mind is completely open here.  I am

22    preparing for the hearing, so I am getting myself into

23    the actual evidentiary materials that are before me now,

24    and I will tell you that my mind is completely open.  If

25    you think I've got some agenda here, you won't go for

Add 19

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

```
                              )
CARYN DEVINS STRICKLAND,      )
                              )
              Plaintiff,      )
                              )
         v.                   )    CIVIL ACTION
                              )    NO. 20-00066-WGY
UNITED STATES OF AMERICA, AND )
JUDICIAL CONFERENCE OF THE    )
UNITED STATES, THE HON.       )
ROSLYNN R. MAUSKOPF, IN HER   )
OFFICIAL CAPACITY AS CHAIR OF )
THE JUDICIAL CONFERENCE       )
COMMITTEE ON JUDICIAL RESOURCES )
AND ADMINISTRATIVE OFFICE OF THE )
UNITED STATES, JAMES C. DUFF, IN )
HIS OFFICIAL CAPACITY AS DIRECTOR)
OF THE ADMINISTRATION OFFICE OF )
THE UNITED STATES COURTS,     )
SHERYL L. WALTER, IN HER      )
INDIVIDUAL CAPACITY, JOHN DOE(S) )
C/O OFFICE OF THE GENERAL     )
COUNSEL FOR THE ADMINISTRATIVE )
OFFICE OF THE UNITED STATES   )
COURTS, AND UNITED STATES COURT )
OF APPEALS FOR THE FOURTH     )
CIRCUIT, JUDICIAL COUNCIL OF THE )
FOURTH CIRCUIT, THE HON. ROGER )
L. GREGORY, IN HIS INDIVIDUAL )
CAPACITY AS CHIEF JUDGE OF THE )
FOURTH CIRCUIT, JAMES N. ISHIDA, )
IN HIS INDIVIDUAL CAPACITY IN )
HIS OFFICIAL CAPACITY AS      )
CIRCUIT EXECUTIVE OF THE FOURTH )
CIRCUIT AND AS SECRETARY OF THE )
JUDICIAL COUNCIL OF THE       )
FOURTH CIRCUIT, AND FEDERAL   )
PUBLIC DEFENDER FOR THE WESTERN )
DISTRICT OF NORTH CAROLINA,   )
ANTHONY MARTINEZ IN HIS       )
INDIVIDUAL CAPACITY AND HIS   )
OFFICIAL CAPACITY AS FEDERAL  )
PUBLIC DEFENDER FOR THE WESTERN )
DISTRICT OF NORTH CAROLINA,   )
```

[1]

Add 20

```
                        Defendants.        )
                                           )
_____    )
```

YOUNG, D.J.[1]                                        July 25, 2023

### MEMORANDUM AND ORDER

After the parties conducted extensive discovery and
briefed the relevant issues, this Court heard cross motions for
summary judgment on July 10th, 2023. Pl.'s Mot. Summ. J. ("Pl.'s
SJ Mot."), ECF No. 243, Def.'s Mot. Summ. J.("Def.'s SJ Mot."),
ECF No. 245. Pl.'s Mem. Supp. Summ. J.("Pl.'s Mem. Supp."), ECF
No. 243-1; Def.'s Mem. Supp. Summ. J.("Def.'s Mem. Supp."), ECF
No. 245; Pl.'s Mem. Supp. Renewed Mot. Summ. J. ("Pl.'s
Unredacted SJ Filing"), ECF No. 248; Def.'s Resp. Opp'n ("Def.'s
Opp'n"), ECF No. 249; Pl.'s Resp. Opp'n ("Pl.'s Opp'n"), ECF No.
250; Pl.'s Sealed Resp. Opp'n ("Pl.'s Sealed Opp'n"), ECF No.
253. Following that hearing, the Court granted the motions for
summary judgment in part, viz. the government's listing of
facts, where undisputed, were established for trial, took one
matter under advisement, and otherwise denied the cross motions
in their entirety. See Minute Order, Electronic Clerk Note
entered on 7/10/2023.

The Court here addresses the reserved issue.

---

[1] Of the District of Massachusetts, sitting by designation.

Add 21

This Court took the fourth element of the deliberate
indifference to sexual harassment claim under advisement, viz.
that "the deliberate indifference was motivated by a
**discriminatory intent**".  Strickland v. United States, 32 F.4th
311, 359 (4th Cir. 2022)(citing Feminist Majority Found. v.
Hurley, 911 F.3d 674 (4th Cir. 2018)(emphasis added).  After a
thorough review of the evidentiary record, this Court rules that
Strickland failed to meet her burden at summary judgment because
she does not provide any plausible evidence of discriminatory
intent on behalf of any supervisory defendant **EXCEPT** Anthony
Martinez ("Martinez") in his individual capacity and his
official capacity as Federal Public Defender for the Western
District of North Carolina.  For this reason, summary judgment
on the deliberate indifference claim is partially **GRANTED** with
respect to all defendants **EXCEPT** Anthony Martinez.

### A. The Legal Framework

This case is directly controlled by the mandate of the
Fourth Circuit in Strickland v. United States, 32 F.4th at 311.
Here the plaintiff Caryn Strickland ("Strickland") claims, inter
alia, she was denied equal protection of the laws due to the
deliberate indifference of various judges and officials within
the judicial branch of the United States (collectively "the
government").

[3]

Add 22

In <u>Strickland</u> the Fourth Circuit explained that the four
elements for a deliberate indifference claim to sexual
harassment are "essentially identical to those outlined by the
Fourth Circuit in <u>Feminist Majority Foundation</u>." <u>Strickland</u> 32
F.4th at 359 (citing <u>Feminist Majority Found.</u> v. <u>Hurley</u>, 911
F.3d 674, 703 (4th Cir. 2018). <u>Feminist Majority Found.</u> v.
<u>Hurley</u> sets out the four elements of such a claim and expressly
directs how this Court is to assess the fourth element of the
deliberate indifference to sexual harassment claim: "Because
there is no theory of respondent superior for constitutional
torts, a plaintiff must plead that each ... defendant has
violated the Constitution.  In the equal protection context,
this means showing that the supervisor ... intended to
discriminate on the basis of a protected class."[2] <u>Feminist</u>
<u>Majority Found.</u> v. <u>Hurley</u>, 911 F.3d at 703 (citing <u>T.E.</u> v.
<u>Grindle</u>, 599 F.3d 583, 588 (7th Cir. 2010); <u>Ashcroft</u> v. <u>Iqbal</u>,
556 U.S. 662, 676-77,(2009)(explaining that, to allege equal
protection claim based on supervisory liability, plaintiff must

---

[2] In this respect, it is important to note that the
constitutional tort considered here does not sweep as broadly as the
judicial gloss on Title VII, where liability may flow from deliberate
indifference to a claim of sexual harassment because supervisory
personnel's intent is presumed.  <u>Burlington Indus., Inc.</u> v. <u>Ellerth</u>,
524 U.S. 742, 756 (1998)("An employer may be liable for both
negligent and intentional torts committed by an employee within the
scope of his or her employment. Sexual harassment under Title VII
presupposes intentional conduct.")

[4]

Add 23

plausibly demonstrate supervisor's discriminatory purpose)).

**Analysis of the Undisputed Facts**

Pursuant to Fed. R. Civ. P. 56, this Court, before it could grant any part of the government's motion, must determine what facts are genuinely undisputed and then must draw all reasonable inferences in favor of the non-moving party -- here Strickland. The Court has done so here.

After a thorough review of the voluminous evidentiary record -- and drawing all reasonable inferences in Strickland's favor -- there is simply no evidence, not a scintilla, with the possible exceptions discussed below, that **any** judge or judicial official acted on the basis of gender-based discrimination. Indeed, Strickland develops no such argument, and the Court must, therefore, enter summary judgment in their favor on the equal protection claim.

As to the three remaining defendants on the equal protection claim:

**1. Anthony Martinez, the Chief Federal Defender**

As to Martinez, Strickland has satisfied her burden of going forward sufficient to survive summary judgment on this issue. She has provided evidence that, were the Court to accept it and draw from it the inferences she urges, would warrant the Court in finding Martinez's deliberate indifference was

[5]

Add 24

motivated by gender based discriminatory intent.  Prominent

among this evidence is Chief Judge Gregory's letter of reprimand

dated  May 28, 2019. Ex. D, ECF No. 248-5 at 80-83. The factual

findings in this letter constitute an unimpeached public record

pursuant to Fed. R. Evid. 803 (8)(A)(iii).  Strickland's

unredacted memorandum, ECF No. 248-1, summarizes the undisputed

evidence this Court has before it regarding Martinez's alleged

deliberate indifference motivated by gender based discriminatory

intent:

> [T]he Defender facilitated and ratified the First
> Assistant's quid pro quo harassment by diminishing
> Plaintiff's job duties and refusing to consider her
> for the grade-level promotion that was the subject of
> the First Assistant's "Mas Dinero" email, for which
> she was eligible on her work anniversary date. See Ex.
> C, at 9 (admission that Plaintiff "was eligible for a
> grade-level promotion"). In a sworn declaration filed
> in this proceeding, the Defender falsely stated that
> he had no "discretion" to raise Plaintiff's pay. ECF
> No. 78-3, ¶ 33; see Ex. C, at 10 (stating that "all
> grade-level promotions are awarded at the discretion
> of the Federal Defender"). The Defender gave Plaintiff
> a "reclassification" to AFD in title only, which he
> stated was "for purposes of case weight measurement."
> Ex. A, at 52. The Defender even backdated the
> reclassification to the day before Plaintiff qualified
> for the promotion. Ex. N, at 46. As part of the
> "reclassification," the Defender also attempted to
> remove Plaintiff's locality pay and reduce her salary
> by nearly 15 percent. Id. Contrary to the job
> description for an AFD position, which requires the
> attorney to carry her own caseload, the Defender
> required Plaintiff to continue serving in a research-
> and-writing support role. Compare Ex. A, at 52, with
> Ex. N, at 51-57.
> The Defender told Plaintiff that he could not
> transfer her exclusively to appeals, even though he
> had an open position. Ex. M, at 33 ("Appeal FTE is

[6]

Add 25

2.75 (but have been surviving with 1.75 FTE))"; id. at 53 (office "needed more appellate support"). Thus, the Defender required her to continue working for the trial unit supervised by the First Assistant. See Ex. A, at 52; Ex. C, at 3. The Defender also refused a transfer to the Asheville division office. See id. The Defender claimed there was no office space, but a few months later, he began advertising positions for an intern and a paralegal to work in Asheville. See Ex. D, at 17; see also Ex. I, at 95 (FEOO had seen lack of office space "used as an excuse previously in many other cases"). Because of the Defender's continued failure to address the harassment, Plaintiff did not feel safe in the office and requested to work remotely. Ex. A, at 51; see Ex. I, at 94-95 . . . . The Defender, however, became furious when he learned that Plaintiff had reported her allegations of wrongful conduct to the AO. He "called her out on contacting the AO to receive guidance on her civil rights as a federal employee." Ex. D, at 81. The Defender berated Plaintiff for going to "some other party" and stated that he was being "blamed" and "attacked" for something that was not his "fault." Ex. A, at 30. The Defender minimized the harassment, stating words to the effect that, "at least you weren't touched." Ex. D, at 81.

Pl.'s Unredacted SJ Filing . The Court fully recognizes that it is here quoting extensively from Strickland's **argument**. It is, of course, making no such findings -- nor can it at the summary judgment stage. The underlying facts, however, appear to be undisputed and the argument well illustrates the plausible conclusions a court could draw. Summary judgment must be denied as to Martinez.

[7]

Add 26

## 2. James Ishida, Circuit Executive

In relation to James Ishida, in her deposition Strickland alleges he violated her constitutional rights by criticizing her for going to the AO with her complaints.  Ex. 6 at 105:19-20. Mr. Ishida allegedly said "when that happens, barriers go up and people go on guard".  Id.  While Strickland interpreted this comment to be "a very adverse reaction to the fact that [she] had reported [her] complaints to the EO", Id. at 105:20-22, this comment does not rise to the level of deliberate indifference motivated by a discriminatory intent necessary for Ishida to remain as a defendant on this claim.

For example, in T.E. v. Grindle,[3] the plaintiff offered evidence creating a reasonable inference that the defendant, a school principal, **knew** about the Music teacher's sexual abuse and **deliberately** helped cover it up by misleading the girl's parents, the superintendent, and other administrators. Grindle, 599 F.3d at 589 (citing Cf. Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1190-91 (7th Cir.1986) (Posner, J., concurring) (suggesting that policy of **deliberately** refusing to respond to complaints of sexual harassment would support an inference of intentional discrimination))(emphasis added).  Here, unlike

---

[3] Cited by the Fourth Circuit in Feminist Majority Found. v. Hurley, 911 F.3d 674, 703 (4th Cir. 2018).

[8]

Add 27

Grindle, no evidence of deliberate cover up by Ishida is alleged.  All that is presented is a general comment made by Ishida rising to no more than an observation from his experiences in dealing with reports.

At Strickland's own deposition, she alleged that Ishida "excluded [her] — or at least did not tell Heather Beam [the investigator], did not communicate to her.  Somehow, she believed that [Ishida] had excluded [her] claims against Tony from the investigation and she did not investigate those claims." Ex. 6 at 108-109:22-1.  No evidence as to why the investigator "somehow believed" that Ishida excluded Strickland's claims against Martinez is provided.  This evidentiary gap is simply too great to bridge.  This Court may not leap this evidentiary gap reasonably to infer Ishida's discriminatory intent arises by way of a **deliberate** cover up or other misleading behaviors due to Strickland's rightful reporting.  The Circuit Executive is entitled to summary judgment on this aspect of the case.

### 3. **Roger Gregory, Chief Judge, Fourth Circuit**

Strickland claims that gender based discriminatory intent may reasonably be inferred from the decision of the Chief Judge not to exclude Martinez from the EDR process here despite the

[9]

Add 28

recommendation by the Investigator communicated to the Circuit Executive that Martinez be excluded in this case.[4]

Here, it may reasonably be inferred that the Chief Judge at least suspected that Martinez was somehow complicit in the sexual harassment of Strickland. That inference, however, does not carry the day for her. There are a plethora of wholly legitimate inferences one may draw from the Chief Judge's largely unrefuted testimony, each one negating any suggestion of discriminatory intent. Here, at summary judgment, it is not for this Court to pick the "correct" inference.

At summary judgment, the Court only makes "rulings" not "findings." Here, therefore, the point is that to draw **any** inference of **discriminatory** intent would be an inference too far, an impermissible piling of inference on inference. "[P]laintiffs need to present more than their own unsupported speculation and conclusory allegations to survive summary judgment." Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 776 (4th Cir. 2023)(citing Fed. R. Civ. P. 56(a); Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir.

---

[4] This point is not admitted. While the email from the Investigator to the Circuit Executive expressing doubts as to Martinez's further participation is undisputed, the Chief Judge testified he did not remember receiving a copy or having been informed of it. ECF No. 255-2 at 33. At the summary judgment stage this Court infers it was conveyed to him and read.

[10]

Add 29

2003).  The Chief Judge is entitled to summary judgment on this aspect of the case.

**B. Conclusion**

Thus, it is this Court's obligation to **GRANT** partial summary judgment, ECF No. 245, on the equal protection claim to all defendants **EXCEPT** Anthony Martinez.  All other claims survive summary judgment and will stand for trial in September 2023.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[11]

Add 30

```
 1    terrible.  So I'm a peasant on this.  Do it my way.  If
 2    you get to a number, I'm going to take it that it is
 3    admitted in evidence.
 4         Now what does that mean?  It doesn't mean it's
 5    established, it means it's evidence, which means as the
 6    factfinder I may decide that it is both authentic and I
 7    may decide that its substance is probative.  That's all.
 8    And I will use the normal means of reasoning to arrive
 9    at that result.  I don't think there should be much
10    dispute.  But I want a single exhibit list.
11         Now let's talk about the trial because of this
12    business about going to judicial mediation or something.
13    Look, I can give you a 5-day trial starting on the 5th
14    of September, going 9:00 till 1:00 for 5 days, except
15    the 5th is the Tuesday after Labor Day, so I may be
16    picking a jury on Monday or the following Monday.  So
17    I'm not sure I'm going to give you the, um -- that
18    following Monday.  So the 5th of September would be the
19    5th, 6th, 7th, 8th, that's four days.  The 11th, I, um
20    -- we'll have to see during that week how the rest of my
21    trial calendar is falling out.  But if I don't -- if I
22    start a jury case, I pick the jury on the 11th, I will
23    give you the 12th.
24         Now the 5 days, 9:00 till 1:00 are for evidence.
25    That's not -- I'm not arguing that you should, um -- I'm
```

Add 31

1    marvelous magistrate judges who are superb mediators and

2    one has a nationwide reputation, Judge Maryanne Bowler,

3    who has served as a mediator for multidistrict

4    litigation outside the District of Massachusetts.  And

5    this is something I've examined -- I've tried this

6    ground before, Judge Bowler and I have served sometime

7    together, and certainly I would be willing to ask her if

8    she'd like to mediate this case, but that would pretty

9    much obviate a trial in early September.  I mean we're

10   about to -- I don't know what her vacation status is.

11   I'd just be asking her.

12        But practically what are you thinking about in

13   judicial mediation?

14        MS. STRICKLAND:  You have to understand that --

15        MR. STRICKLAND:  That's a very difficult question

16   because of the preliminary injunction that has been

17   pending for so long and it's just -- this is a rock and

18   a hard place, and the resistance to mediation up until

19   this.  But we asked for it before, it's required under

20   the local rules here, we didn't get it, um, so it might

21   not be worthwhile.

22        THE COURT:  Well you see this is the final

23   pretrial conference today, I'm telling you when you'll

24   get a trial.  I'm not a mediator but I am a judge.  You

25   know cases can always be settled.  My instinct is to

Add 32

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

_____
                                 )
CARYN DEVINS STRICKLAND,         )
                                 )
              Plaintiff,         )
                                 )
       v.                        )        CIVIL ACTION
                                 )        NO. 1:20-00066-WGY
UNITED STATES, ET AL.,           )
                                 )
              Defendants.        )
_____)


YOUNG, D.J.[1]                              October 4, 2023

**ORDER**

1. Trial will commence in this case on Monday, December 11,
   2023[2] or on the next trial day following the conclusion
   of the case then on trial. There will be no continuance.

2. The plaintiff's motion for a protective order is denied.
   The grounds raised are obscure at best, and it is
   important promptly to conclude discovery. Accordingly,
   the continued deposition of the plaintiff will take place

_____

[1] Of the District of Massachusetts, sitting by designation.
[2] The plaintiff having joined in the motion to refer the case to
mediation, (and thus delay the September 5th trial in order to
explore that remedy) now takes umbrage that the Court is not
available to try the case just as soon as it was informed
mediation had failed. That's not the way it works. Other cases
(criminal and civil) are eager and ready for trial and have been
previously scheduled in the interim.

[1]

Add 33

as scheduled on Thursday October 12, 2023. There will be
no continuance.

3. The plaintiff's motion for sanctions is taken under
advisement. Her request to seal documents in connection
with that motion is denied as it does not comport with
Local Rule 6.1 (c).

4. The Court will schedule a further pre-trial conference at
its earliest convenience.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE

[2]

Add 34

# EXHIBIT A

USCA4 Appeal: 23-2132    Doc: 2-2    Filed: 10/30/2023    Pg: 36 of 42

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

March 25, 2019

To:      Chief Judge Gregory

From:    James N. Ishida

RE:      Investigation Report – Caryn Devins Strickland

Attached is the investigation report that was prepared in the EDR/Report of Wrong Conduct matters filed by Caryn Devins Strickland. You must decide what disciplinary action, if any, should be taken against Federal Public Defender Anthony Martinez (N.C.W.D.) under Chapter IX of the Fourth Circuit's EEO/EDR Plan (November 2018) ('the Plan").

## I.   Summary

On September 10, 2018, Assistant Federal Public Defender Caryn Devins Strickland filed both an EDR Complaint under Chapter X and a Report of Wrongful Conduct under Chapter IX of the Plan, alleging sexual harassment, retaliation, and other acts of wrongdoing. Because both matters arose under the same general facts, I had ordered a joint investigation and appointed HR Manager Heather Beam, from the North Carolina Western District Probation Office, to handle the investigation.

While the investigation was ongoing, I had attempted to find a resolution through the counseling phase of the Chapter X EDR proceeding. In spite of extending the counseling period, I was unsuccessful in settling the matter. The counseling period ended on January 14, 2019.

On January 31, 2019, Ms. Strickland filed a timely request for mediation under Chapter X of the Plan. I thereafter appointed Edward G. Smith, Fourth Circuit Chief Mediator, to conduct the mediation.

The mediation period was extended once by mutual consent of Mr. Smith and Ms. Strickland. Eventually, Mr. Smith was able to persuade Circuit Judge Henry Floyd to offer Ms. Strickland a clerkship to the end of the term in June, and convince Ms. Strickland to withdraw her EDR complaint in return for the clerkship.

On March 11, 2019, Ms. Strickland submitted her request, asking that her EDR complaint be withdrawn.

## II.   Next Steps – Chapter IX Report of Wrong Conduct

The last remaining matter is Ms. Strickland's Report of Wrong Conduct under Chapter IX of the Plan.

Chapter IX describes the process for resolving a Report of Wrongful Conduct:

(a)    A Report of Wrongful Conduct is not the same thing as an EDR Complaint, and the two must be handled according to the procedures as set forth in their respective chapters,

(b)    An investigation must be conducted into the allegations,

(c)    All parties involved in the investigation must protect the confidentiality of the allegations, and

(d)    "Employees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct,[1] as defined in this Plan, may be subject to disciplinary action."

The investigation report recommends that disciplinary action be taken against the accused employee – Federal Public Defender First Assistant J.P. Davis – as well as the unit executive, Anthony Martinez. You cannot decide any disciplinary action against Mr. Davis – that is within the authority of the unit executive. But you can and are tasked with deciding if disciplinary action is appropriate for Mr. Martinez.

**III.    Additional Information**

I'll speak to you later about a conversation that I had with Cait Clarke, the chief of the AO's Defender Services Office, which may help with your decision regarding Mr. Martinez.

Attachment

---

[1] "Wrongful conduct" is defined to include "[d]iscrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited." *See* Chapter II, section 1 of the Plan.

Add 37

# Exhibit 69

Add 38

OFFICE OF THE CIRCUIT EXECUTIVE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

May 28, 2019
**CONFIDENTIAL**

Mr. Anthony Martinez
Federal Public Defender
129 West Trade Street, Room 300
Charlotte, NC 28202

RE:    Counseling re Caryn Devins Strickland's Report of Wrongful Conduct

Dear Tony:

I was delighted to see you at last week's Fourth Circuit's Workplace Conduct Conference in Richmond, VA. It gave me the timely and fitting opportunity to speak to you about the contents of this letter of counseling.

On behalf of Chief Circuit Judge Roger L. Gregory, I write to inform you that you are being counseled for your actions arising from the Report of Wrongful Conduct submitted by Caryn Devins Strickland on September 10, 2018, under Chapter IX of the *Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit* ("the Plan").

**I.    Background**

On September 10, 2018, Ms. Strickland submitted a Report of Wrongful Conduct under Chapter IX and a Request for Counseling under Chapter X[1] of the Plan, alleging sexual harassment, retaliation, and discrimination during her employment with your office. In her Report of Wrongful Conduct, styled Official Grievance, Ms. Strickland claimed that "[t]he First Assistant [JP Davis] has abused his power and offered employment preferences for his unwanted advances." Ms. Strickland explained that Mr. Davis subjected her to unwanted advances, unreasonably interfered with her work assignments, and even proposed an unsavory quid pro quo proposal on her request for a promotion and raise.[2] Ms. Strickland also included you in her allegations.

With the approval of Chief Judge Gregory, I appointed Heather Beam to investigate Ms. Strickland's Report of Wrongful Conduct.[3]

---

[1] Ms. Strickland voluntarily withdrew her Chapter X claims on March 11, 2019, and they are not part of this letter of counseling.

[2] In an email dated May 18, 2018, and titled "Mas Dinero," Mr. Davis responded to Ms. Strickland's request:
  Dude, you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan . . . just remember I deal in pay-for-stay 😊

[3] Under Chapter IX of the Plan, "[t]he EDR Coordinator shall promptly inform the Chief Judge and unit executive of any report. The Chief Judge and/or unit executive shall ensure that the allegations in the report are appropriately investigated, either by the human resources manager or other person."

US00004264

CONFIDENTIAL, Subject to Protective Order, ECF No. 183
Add 39

Anthony Martinez
May 28, 2019
Page 2

## II.    The Investigator's Report

Following a painstaking investigation, Ms. Beam issued her Counselor's Report on November 19, 2018, later supplemented on January 11, 2019. In her report, Ms. Beam suggested that you "be counseled and trained on how to handle workplace conduct complaints. He should also be counseled or training [sic] on judgement and decisiveness." Ms. Beam explains:

> For example, Caryn states when she initially brought her complaint to Mr. Martinez he compared her relationship with the First Assistant Defender as a marriage and asked her to compromise. He also made comments bade [sic] on Caryn's report such as "At least she was not touched" and called her out on contacting the AO to receive guidance on her civil rights as a federal employee. He also stated he was being blamed for something that was not his fault. It is evident this claim was mishandled from the beginning by Mr. Martinez and he would benefit greatly with additional training on workplace conduct as well as basic managerial/leadership skills.

### A.    Marriage Metaphor

On or around July 5, 2018, you met with Ms. Strickland and Mr. Davis to resolve a "breakdown in communications." Though well-intended, you had not abided by Ms. Strickland's wishes that she meet with you privately to discuss Mr. Davis's conduct. This made Ms. Strickland feel "uncomfortable" and "intimidated," having to confront the person she accused of sexually harassing her. She was also troubled by your characterization that this was a simple misunderstanding, feeling that you had trivialized the incident.

After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a "marriage," with the parties needing to "compromise" and "meet in the middle." Ms. Strickland said that she was "shocked" and "offended" at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a "marriage." The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her.

### B.    No Physical Touching

You had a subsequent discussion with Ms. Strickland in which you attempted to clarify whether Mr. Davis had touched Ms. Strickland or had engaged in other inappropriate behavior. Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, "at least you weren't touched," or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt.

US00004265

Anthony Martinez
May 28, 2019
Page 3

C.    Disapproval of Seeking Outside Advice

Ms. Strickland had also sought advice and guidance from the Fair Employment
Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a
judiciary employee.  The investigator found that you had "called out" Ms. Strickland for seeking
legal advice from that office, which further eroded trust between you and Ms. Strickland and
exacerbated the deteriorating situation in your office.

D.    Shifting Responsibility

Finally, the investigator noted that you had said you were being blamed for matters that
you had nothing to do with.  Ms. Strickland reported that she felt "offended" by your protest,
which she perceived as disapproving her right to seek outside advice and counsel from the AO
Fair Employment Opportunity Office.  This, the investigator concluded, contributed to your
mishandling of the matter.

E.    Mitigating Factors

In mitigation, Investigator Beam found that you had acted expeditiously to accommodate
Ms. Strickland's requests, except her request to be transferred to your Asheville Office.  You had
noted, however, that there was no physical space in that office to accommodate Ms. Strickland.

The investigator also found that you had acted in good faith in accommodating Ms.
Strickland's request to telework, and you were flexible in other work assignments.

Finally, Ms. Strickland alleged that you had retaliated against her by denying merit-based
promotional opportunities and by removing her locality pay.  The investigator found that these
allegations are without support.

F.    Conclusion

In conclusion, Investigator Beam reported that she did "not see a case for retaliation based
on [her] investigation and the facts presented by both sides."  The investigator also concluded
that "Mrs. Devins has experienced in her mind sexual harassment although the facts discovered
in this case find this claim to be very flimsy."

But the investigator did record the numerous missteps that you committed, which
contributed to Ms. Strickland's perception of mistreatment and retaliation by you.  These
missteps appeared to have exacerbated the underlying situation, and they broke trust between
you and Ms. Strickland.  This was not helpful.  But the investigator observed that most of your
"decisions . . . were made at the end of a day where [you had] attended meetings all day and was
tired."  She found that your actions were not motivated by malice or ill-will, but rather were the
result of poor judgment caused by fatigue.

US00004266

Add 41

Anthony Martinez
May 28, 2019
Page 4

Taking all of this into account, the investigator concluded that harsher discipline was not appropriate; instead, she recommended that you should be "counseled or train[ed] on judgement and decisiveness," in addition to be "counseled and trained on how to handle workplace conduct complaints."

## III.   Chief Judge Gregory's Decision

Under Chapter IX of the Plan, "[e]mployees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan,[4] may be subject to disciplinary action." After careful consideration of the investigator's report, supporting attachments, and documents filed in this case – and noting the mitigating circumstances – Chief Judge Gregory has decided to adopt the recommendations contained in the report.

In addition to this letter of counseling, Chief Judge Gregory hopes that you will avail yourself of continual workplace conduct, decision-making, and leadership training opportunities. The Fourth Circuit's highest priority is to ensure a safe, civil, professional, and collegial workplace for all court employees, and it expects its managers and leaders to uphold the same standard. Anything less is unacceptable.

Chief Judge Gregory also wanted me to convey that the Fourth Circuit unequivocally stands behind you and your efforts to create a safe, civil, professional, and collegial work environment in your office. Therefore, if there is anything that I or my colleagues can do to support your efforts, please feel free to call upon me anytime.

Best regards,

cc:    Honorable Roger L. Gregory

---

[4] Under Chapter II, section 1 of the Plan, "wrongful conduct" is defined:

> Discrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited. All of the above constitute "wrongful conduct."

US00004267