**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' *MOTION IN LIMINE* TO EXCLUDE THE TESTIMONY OF**
**PLAINTIFF'S EXPERT VIDA THOMAS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

LEGAL STANDARD ..............................................................................................................1

I.     Federal Rule of Evidence 702. ......................................................................................1

II.    Hearsay..........................................................................................................................1

ARGUMENT ...........................................................................................................................2

I.     Ms. Thomas's Testimony Should Be Excluded Under Rule 702 and *Daubert*. ...........2

       A.    The Court Should Exclude Ms. Thomas's Testimony Because It Offers Legal Conclusions And Is Not Relevant..............................................................3

             1.    Ms. Thomas's opinion that "Defendants failed to protect Strickland from further harassment and from retaliation" for bringing her sexual harassment allegations is a legal conclusion. .........................................4

             2.    Ms. Thomas's opinions that "Defendants' response to Strickland's sexual harassment and retaliation complaints fell below acceptable standards in the HR community" and that the investigation "fell below acceptable standards in the HR community" are legal conclusions that are not relevant. ..........................................................6

       B.    The Court Should Exclude Ms. Thomas's Testimony Because It Is Speculative and Not Reliable..................................................................................9

II.    Ms. Thomas's Deposition Transcript Is Hearsay and Should Be Excluded. ...........12

CONCLUSION.......................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*,
2000 WL 135129 (D. Del. Jan. 13, 2000) .................................................................................. 13, 14, 15

*Barber v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*,
2007 WL 121350 (W.D. Ky. Jan. 12, 2007) .................................................................................. 5

*Bethea v. CSX Transp.*,
2013 WL 5468301 (D.S.C. Sept. 30, 2013) .................................................................................. 5

*Boyer-Liberto v. Fontainebleau Corp.*,
786 F.3d 264 (4th Cir. 2015) .................................................................................. 4

*Caron v. Gen. Motors Corp.*,
37 Mass. App. Ct. 744 (1994) .................................................................................. 13, 14

*Carter-Wallace, Inc. v. Otte*,
474 F.2d 529 (2d Cir. 1972) .................................................................................. 12, 14

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) .................................................................................. 1, 3, 9

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .................................................................................. 1

*Doe v. Coastal Carolina Univ.*,
2021 WL 1651057 (D.S.C. Mar. 8, 2021) .................................................................................. 5, 6

*Feminist Majority Found. v. Hurley*,
911 F.3d 674 (4th Cir. 2018) .................................................................................. 8

*Fiorentino v. Rio Mar Assocs., LP, SE*,
2009 WL 10680817 (D.P.R. Apr. 21, 2009) .................................................................................. 15

*Free v. Bondo-Mar-Hyde Corp.*,
25 F. App'x 170 (4th Cir. 2002) .................................................................................. 1, 9

*Georges v. Dominion Payroll Servs., LLC*,
2018 WL 2088751 (E.D. Va. May 4, 2018) .................................................................................. 2, 5, 7

*In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo.*, on Nov. 15,
1987, 720 F. Supp. 1493 (D. Colo. 1989) .................................................................................. 14

iii

*In re Zetia (Ezetimibe) Antitrust Litig.,*
   2021 WL 6690337 (E.D. Va. Aug. 16, 2021) ................................................................. 3, 7

*James v. BankAtlantic,*
   2011 WL 13393332 (S.D. Fla. May 24, 2011) ................................................................. 2

*Kamara v. United States,*
   2005 WL 2298176 (S.D.N.Y. Sept. 20, 2005) ................................................................ 15

*Kirk v. Raymark Indus., Inc.,*
   61 F.3d 147 (3d Cir. 1995) .......................................................................................... 15

*Merrill v. McCarthy,*
   2016 WL 1258472 (E.D.N.C. Mar. 30, 2016) ............................................................. 2, 5

*Oglesby v. Gen. Motors Corp.,*
   190 F.3d 244 (4th Cir. 1999) ......................................................................................... 9

*Okoli v. City of,*
   *Balt.,* 648 F.3d 216 (4th Cir. 2011) ............................................................................... 4

*Porter v. Prince George's Cnty.,*
   2007 WL 9782627 (D. Md. Sept. 12, 2007) ................................................................... 3

*Salsman v. Witt,*
   466 F.2d 76 (10th Cir. 1972) ....................................................................................... 13

*Slaby v. Holder,*
   2013 WL 12147698 (E.D. Va. 2013) ............................................................................. 4

*Strickland v. United States,*
   32 F.4th 311 (4th Cir. 2022) ...................................................................................... 4, 8

*Truth Tellers, LLC v. Levine,*
   2023 WL 2576756 (N.D.W. Va. Mar. 20, 2023) ......................................................... 13

*United States v. Chapman,*
   209 F. App'x 253 (4th Cir. 2006) .................................................................................. 3

*United States v. McIver,*
   470 F.3d 550 (4th Cir. 2006) ..................................................................................... 4, 7

*United States v. Offill,*
   666 F.3d 168 (4th Cir. 2011) ..................................................................................... 3, 7

*United States v. Perkins,*
   470 F.3d 150 (4th Cir. 2006) ..................................................................................... 4, 5

iv

*United States v. Shaw*,
  69 F.3d 1249 (4th Cir. 1995)................................................................................2

*Wilson v. Muckala*,
  303 F.3d 1207 (10th Cir. 2002)............................................................................2

## Rules

Fed. R. Civ. P. 32 ................................................................................12, 13, 15

Fed. R. Civ. P. 42 ................................................................................................12

Fed. R. Evid. 403 ..................................................................................................1

Fed. R. Evid. 702 ..................................................................................1, 3, 7, 9

Fed. R. Evid. 801 ..............................................................................................2, 12

Fed. R. Evid. 802 ..................................................................................................2

Fed. R. Evid. 803 ..................................................................................................2

Fed. R. Evid. 804 ..................................................................................2, 14, 15

## Other Authorities

House Judiciary Subcommittee on Courts, Intellectual Property, and the Internet: Hearing on
  Workplace Protections for Federal Judiciary Employees, before H. Comm. on the Judiciary,
  117th Cong. (Mar. 17, 2022) (testimony of Caryn Devins Strickland)..................................................3

v

## INTRODUCTION

Plaintiff has suggested she may call Ms. Vida Thomas as an expert witness at the trial of this matter. Defendants respectfully submit this *motion in limine* to exclude the testimony of Ms. Thomas, as well as her expert report and deposition transcript. Ms. Thomas' proffered testimony and report are fundamentally unhelpful and unreliable under extensive case law. Her opinions therefore cannot survive the Court's gate-keeping role under *Daubert*. Additionally, any deposition testimony would be hearsay that cannot be admitted.

## LEGAL STANDARD

### I. Federal Rule of Evidence 702.

Pursuant to Federal Rule of Evidence 702, an expert witness may testify only if she satisfies all of the following conditions:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The court must determine at the outset whether the proffered testimony is relevant, *i.e.*, helpful to the trier of fact, and whether it is reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). The expert opinion therefore must be based on specialized knowledge—"not on belief or speculation"—and derived from sufficient facts or data "using scientific or other valid methods." *Free v. Bondo-Mar-Hyde Corp.*, 25 F. App'x 170, 172 (4th Cir. 2002); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (trial courts must "act as gatekeepers to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable'" (quoting *Daubert*, 509 U.S. at 588)). This gatekeeping function is critical, given the potential of expert testimony to "be both powerful and quite misleading." *Id.* (citation omitted); *see also* Fed. R. Evid. 403.

### II. Hearsay.

The Federal Rules of Evidence define "hearsay" as a "statement" that "the declarant does not make while testifying at the current trial or hearing," and that a "party offers in evidence to prove the

1

truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)-(2). Hearsay is not admissible unless it falls within a prescribed exception. Fed. R. Evid. 802; *see also United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995) ("Federal Rule of Evidence 802 prohibits generally the admission of out-of-court statements offered to prove the truth of the matters asserted."). Rule 803 lists certain exceptions to the rule against hearsay, regardless of whether the declarant is available as a witness. *See generally* Fed. R. Evid. 803. And Rule 804 lists exceptions that apply when the declarant is unavailable as a witness. *See generally* Fed. R. Evid. 804.

## ARGUMENT

### I.   **Ms. Thomas's Testimony Should Be Excluded Under Rule 702 and *Daubert*.**

Plaintiff seeks to introduce the purported expert report and testimony of Ms. Thomas, an employment attorney. Ms. Thomas's report provides three opinions: (1) that Defendants' response to Plaintiff's allegations of sexual harassment and retaliation "fell below acceptable standards in the [Human Resource ("HR")] community"; (2) that the investigation of Plaintiff's allegations "fell below acceptable standards in the HR community"; and (3) that Defendants "failed to protect" Plaintiff from "further harassment and from retaliation." Ex. 1 ¶ 39 ("Report").

Courts routinely exclude similar purported experts on workplace conduct. *See, e.g.*, *Wilson v. Muckala*, 303 F.3d 1207, 1218 (10th Cir. 2002) (affirming district court's exclusion of testimony from a human resources expert regarding the reasonableness of the defendant's response to a sexual harassment claim); *Georges v. Dominion Payroll Servs., LLC*, 2018 WL 2088751, at *4-5 (E.D. Va. May 4, 2018) (excluding testimony from Human Resources Consultant); *Merrill v. McCarthy*, 2016 WL 1258472, at *1 (E.D.N.C. Mar. 30, 2016) (excluding testimony from "expert in [human resources] Management, management, and various discrimination issues") (citation omitted); *James v. BankAtlantic*, 2011 WL 13393332, at *2 (S.D. Fla. May 24, 2011) (excluding expert who sought to testify about how the defendant handled the plaintiff's termination, since "such testimony would [be] unnecessary as the evidence in this case is not likely to be so difficult to understand that the jury would require the assistance of an expert"). As in these cases, for the reasons outlined below, Ms. Thomas's opinions fail to satisfy the standard set forth under Rule 702 and *Daubert* and should be excluded.

2

**A. The Court Should Exclude Ms. Thomas's Testimony Because It Offers Legal Conclusions And Is Not Relevant.**

The proponent of expert testimony must show that such testimony "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a); *see also Cooper*, 259 F.3d at 199. Expert opinion that "states a legal standard or draws a legal conclusion by applying law to the facts" is not admissible because, rather than helping the fact finder, it supplies "no information other than the witness's view of how the verdict should read." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (citations omitted); *see also United States v. Chapman*, 209 F. App'x 253, 269-70 (4th Cir. 2006); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 6690337, at *3-5 (E.D. Va. Aug. 16, 2021); *Porter v. Prince George's Cnty.*, 2007 WL 9782627, at *3 (D. Md. Sept. 12, 2007)) ("Evidence supplied by experts as to legal conclusions is not admissible, nor indeed evidence at all." (citation omitted)). Nor do courts permit an expert "to supplant the role of counsel" in presenting factual evidence and making argument at trial. *In re Zetia*, 2021 WL 6690337, at *5.

Ms. Thomas's report is replete with unsupported legal conclusions rather than testimony based on facts. Ms. Thomas—a practicing employment attorney—essentially has written a legal brief under the guise of an expert report. The report puts forth a section entitled "Summary of Background Facts" comprised of one-sided alleged facts that Ms. Thomas lifted largely from Plaintiff's Complaint and her March 2022 testimony before a U.S. House Judiciary Subcommittee.[1] Report ¶¶ 11-30. Next, the report includes a section entitled "Applicable Standards," which merely contains a description of federal laws and judicial decisions. *Id.* ¶¶ 31-38. Finally, in two sections entitled "Summary of Opinions" and "Opinions," Ms. Thomas applies these cherry-picked alleged "facts" to law and draws

---

[1] Some parts of this section appear to be copied directly from Plaintiff's Subcommittee testimony. For example, in her Subcommittee testimony, Plaintiff wrote, "After Judge Kozinski of the Ninth Circuit retired following allegations of sexual misconduct, the First Assistant gloated to me that the process for bringing sexual harassment complaints in the judiciary is useless." House Judiciary Subcommittee on Courts, Intellectual Property, and the Internet: Hearing on Workplace Protections for Federal Judiciary Employees, before H. Comm. on the Judiciary, 117th Cong. at 4 (Mar. 17, 2022) (testimony of Caryn Devins Strickland). In her report, Ms. Thomas changed only the pronoun and tense, writing, "After Judge Kozinski of the Ninth Circuit retired following allegations of sexual misconduct, Davis gloated to Strickland that the process for bringing sexual harassment complaints in the judiciary was useless." Report ¶ 13.

3

a series of legal conclusions. Because "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible," *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006), each of Ms. Thomas's opinions should be excluded.

### 1. Ms. Thomas's opinion that "Defendants failed to protect Strickland from further harassment and from retaliation" for bringing her sexual harassment allegations is a legal conclusion.

One of Ms. Thomas's primary opinions—that Defendants "failed to protect" Plaintiff from "further harassment and from retaliation," Report ¶ 39.c.—is plainly a legal conclusion. At trial, Plaintiff must prove, in part, that she was "subjected to sexual harassment" and that the United States "responded to the allegations with deliberate indifference." *Strickland v. United States*, 32 F.4th 311, 359 (4th Cir. 2022). Ms. Thomas's claim that Defendants did not adequately respond to Plaintiff's allegations of sexual harassment purports to answer the very question this Court must decide at trial—namely, whether Defendants responded with deliberate indifference.

Additionally, Ms. Thomas's assertion that Plaintiff suffered "further harassment" assumes that Plaintiff has satisfied the legal requirements of "sexual harassment," one of four elements that she must prove for her equal protection claim. *See Okoli v. City of Balt.*, 648 F.3d 216, 220, 222 (4th Cir. 2011) (setting forth the elements a plaintiff must meet to prove sexual harassment). Ms. Thomas's claim that Plaintiff encountered "retaliation" likewise presumes that Plaintiff has met the legal requirements of "retaliation." *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (setting forth the elements of retaliation). When evaluating whether an opinion is a legal conclusion, courts should assess whether "the terms used by the [expert] witness have a separate, distinct, and specialized meaning in the law" such that the testimony would not be helpful to, but instead would usurp the role of, the fact finder. *United States v. Perkins*, 470 F.3d 150, 157-58 (4th Cir. 2006). "Sexual harassment" and "retaliation" are legal terms of art with specific elements that a plaintiff must demonstrate. Permitting Ms. Thomas's testimony would usurp the fact finder's role in reaching its own conclusions on these key legal issues. *See Slaby v. Holder*, 2013 WL 12147698, at *1-2 (E.D. Va. 2013) (excluding expert opinions that plaintiff was treated differently because of his disability "based

on nothing more than a recital of facts provided to him by the plaintiff and his subjective opinion about what those facts prove").

Ms. Thomas repeats these legal conclusions throughout Subsection C of the "Opinions" section of her report, entitled "Defendants Failed to Protect Strickland from Retaliation." Report ¶¶ 57-63. She doubles down on her conclusion that Defendants inadequately responded to Plaintiff's allegations of harassment, stating that "[a]t no time did anyone in a position of authority in the FDO take steps to protect Strickland from retaliation," *id.* ¶ 61, and that "Defendants did not meet their obligation to protect [Plaintiff] from retaliation," *id.*; *see also id.* ¶ 62. She also refers to Defendants' supposed "retaliation" repeatedly throughout this section. For example, she describes two actions taken by former Federal Defender Anthony Martinez—his suggestion that Plaintiff and First Assistant JP Davis meet and his request that the two stop taking notes during that meeting—as "in and of themselves retaliatory." *Id.* ¶ 57. Later, Thomas calls Appellate Chief Josh Carpenter's comments to Plaintiff about an open job position at the FDO "potentially retaliatory," *id.* ¶ 60. Courts consistently exclude expert testimony that similarly asserts that a legal term such as "retaliation" has been satisfied. *See, e.g.*, *Perkins*, 470 F.3d at 158 ("testimony that a company engaged in 'discrimination'" . . . involves the use of terms with considerable legal baggage" and thus "nearly always invades the province of the jury.") (collecting Circuit cases); *Georges*, 2018 WL 2088751, at *4 (excluding expert opinions, including that employer "wrongfully terminated [the plaintiff] due to her age," because they were "impermissible legal conclusions"); *Merrill*, 2016 WL 1258472, at *3 (excluding expert opinions because they were "couched in the very elements plaintiff must prove to establish defendant violated the Act and, in essence, direct the jury's verdict on plaintiff's retaliation and hostile work environment claims"); *Doe v. Coastal Carolina Univ.*, 2021 WL 1651057, at *3 (D.S.C. Mar. 8, 2021) (excluding expert opinion that defendant's conduct violated Title IX because it "would supplant the jury's role in evaluating and determining the facts"); *Bethea v. CSX Transp.*, 2013 WL 5468301, at *2 (D.S.C. Sept. 30, 2013) (excluding testimony because "the matters on which [the expert] proposes to testify are similar to the legal factors necessary in determining whether a hostile work environment exists") (collecting cases); *Barber v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 2007 WL 121350, at *3 (W.D. Ky. Jan. 12, 2007)

(excluding expert testimony saying he "found no evidence of retaliation" by the defendant) (collecting cases).

Ms. Thomas also outright states that Defendants violated the law. She asserts that Defendants' conduct "deprived [Plaintiff] of the protections to which she was entitled under Title VII," and that the conduct Plaintiff reported was "potentially illegal under Title VII." Report ¶ 62. It is undeniable that calling Defendants' conduct "illegal" under a federal employment law is a legal conclusion, not an expert "opinion." Moreover, because "the issue in this case is whether [Defendants] violated" the Constitution and not Title VII, these opinions "would introduce a legal framework and standard that cannot be the basis of liability in this trial." *Doe*, 2021 WL 1651057, at *2. Ms. Thomas herself acknowledged that "Title VII doesn't apply to the Federal Judiciary," and thus has no application in this case. *See* Ex. 2, Dep. of Vida Thomas at 103:7-15. Accordingly, this Court should exclude Ms. Thomas's opinion that Defendants "failed to protect" Plaintiff from "further harassment and from retaliation," Report ¶ 39.c., and exclude any testimony relating to Subsection C of the "Opinions" section of her report.

> **2. Ms. Thomas's opinions that "Defendants' response to Strickland's sexual harassment and retaliation complaints fell below acceptable standards in the HR community" and that the investigation "fell below acceptable standards in the HR community" are legal conclusions that are not relevant.**

Ms. Thomas's other two opinions—that Defendants' response to Plaintiff's allegations of sexual harassment and retaliation "fell below acceptable standards in the HR community" and that the Fourth Circuit's investigation "fell below acceptable standards in the HR community for conducting workplace investigations," Report ¶ 39.a.-b.—are also legal conclusions masquerading as expert opinions. Ms. Thomas attempts to characterize these statements as "opinions" by abstractly comparing Defendants' actions to "acceptable standards in the HR community," but she never sets forth what these "standards" are. Ms. Thomas cites to no authority to support her claim that "there are well-developed standards in the human resource field relating to practices in preventing and responding to workplace complaints." *Id.* ¶ 37. Similarly, the court in *Georges v. Dominion Payroll Services*

6

rejected the testimony of a human resources expert who claimed that the defendant had "breached" its "duty to establish, disseminate, and enforce an anti-discrimination policy," but failed to "articulate from where this duty arises, how this so-called duty amounts to a standard of care, or why this Court could treat it as one." 2018 WL 2088751 at *5. The Court should likewise reject Ms. Thomas's attempt to disguise her conclusions of law as industry standards. *See In re Zetia*, 2021 WL 6690337, at *3-5 (excluding expert who purported to offer opinion on "an industry's custom, practice and usage" as improperly testifying to conclusions of law).

Indeed, in the "Applicable Standards" section of her report, the only source that Ms. Thomas references aside from federal laws and court cases is a single EEOC guidance document issued almost 20 years ago. *See* Report ¶ 35 n.5. In her deposition, Ms. Thomas acknowledged that "the EEOC Enforcement Guidance is providing guidance on Title VII." Dep. of Vida Thomas at 108:15-25. And these two legal sources—the EEOC legal guidance and Title VII—are the only citations that Ms. Thomas uses to support her opinions that "Defendants' response to Strickland's sexual harassment and retaliation complaints fell below acceptable standards in the HR community" and that the investigation "fell below acceptable standards in the HR community." *See* Report ¶¶ 38-58. Rather than offering an opinion on any defined "standard in the HR community," Ms. Thomas merely applies these legal standards to the alleged actions of Defendants. Her opinions are thus akin to drawing "legal conclusion[s] by applying law to the facts," *Offill*, 666 F.3d at 175 (quoting *McIver*, 470 F.3d at 562), and are inadmissible.

Ms. Thomas's opinion that the investigation "fell below acceptable standards in the HR community for conducting workplace investigations" should be excluded for the additional reason that it is not relevant to the remaining claims in this case, so it would not "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Whether the investigation "fell below acceptable standards in the HR community" has no relevance to Plaintiff's procedural due

process claim, for which she must prove that she was "led to believe that the [Defender] would be the final decisionmaker" for her EDR claim. *Strickland*, 32 F.4th at 356. On the equal protection claim, the Court granted summary judgment in favor of all Defendants except Martinez. *See* Mem. & Order, ECF No. 258. Plaintiff now must prove: (1) that she "was subjected to sexual harassment" by Davis; (2) that she alerted "supervisory officials and/or officials responsible for overseeing the court's EDR plan"; (3) that these "supervisory officials and/or officials responsible for overseeing the court's EDR plan responded to the allegations with deliberate indifference"; and (4) that Martinez was motivated by a discriminatory intent based on Plaintiff's gender, i.e., that he treated her differently than men who filed similar workplace complaints. *See Strickland*, 32 F.4th at 359.

Particularly in light of all of the actions Defendants took in response to Plaintiff's allegations of sexual harassment, *see, e.g.*, Defs.' Mot. for Summ. J. at 24-25, ECF No. 245, the issue of whether the investigation complied with amorphous, undefined "standards in the HR community" has no relationship to any of the elements of Plaintiff's equal protection claim. And Plaintiff herself does not claim that any harassment continued after she told Martinez in August 2018 that she believed she was being sexually harassed. *See* Dep. of Caryn Strickland at 93:3-20 (admitting she teleworked for the last 7 months of her employment and had no substantive interactions with Davis), ECF No. 249-47; *id.* at 104:19-22 (admitting she did not speak to the Federal Defender after the EDR process started). As the Fourth Circuit explained in *Feminist Majority Found. v. Hurley*, cases with deliberate indifference claims have involved situations in which a failure to address sexual harassment "result[ed] in the harassment victim suffering further injury." 911 F.3d 674, 702 (4th Cir. 2018). Because Plaintiff suffered no further harassment after the investigation began in September 2018, any purported deficiencies in the Fourth Circuit's investigation could not have possibly led to any further harassment of Plaintiff.

In sum, these opinions clearly sound in legal conclusions, not expert opinions. Ms. Thomas's

testimony not only would be unhelpful, but also would constitute a superfluous "expert stamp" to the legal conclusions Plaintiff would like the fact finder to reach. *See Cooper*, 259 F.3d at 199. Therefore, the opinions described in Subsections A and B of the "Opinions" section of Ms. Thomas's report, as well as any testimony relating to these opinions, should also be excluded.

### B. The Court Should Exclude Ms. Thomas's Testimony Because It Is Speculative and Not Reliable.

Under Federal Rule of Evidence 702, an expert's testimony must also be reliable, which means it cannot be based on "belief or speculation," *Free*, 25 F. App'x at 172, and instead must be "based on sufficient facts or data" and apply "reliable principles and methods," Fed. R. Evid. 702. *See also Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (excluding testimony that "depended on an imperfect syllogism constructed from unsupported suppositions"). Ms. Thomas's testimony should be excluded for the additional reason that it relies on incorrect facts and cherry-picks others, making it impermissibly unreliable.

Many of the supposed facts that Ms. Thomas relies on are not supported by the factual record in this case. Ms. Thomas never provides citations for any of the factual assertions she uses to draw her conclusions, further underscoring the unreliability of her testimony. For instance, to support her opinion that Defendants' response to Plaintiff's allegations fell short of well-accepted HR practices, *see* Report at 13-15, Ms. Thomas claims—without any citation to the record—that Martinez "was permitted to control aspects of the investigation" because he "was permitted to appoint [Heather] Beam as the investigator." Report ¶ 42. This is inaccurate. Discovery in this case has shown that the investigation was initiated at the direction of Chief Judge Gregory and Beam was selected by James Ishida, not Martinez. *See* Decl. of James Ishida, ¶ 7, ECF No. 245-16; Email from James Ishida to Lisa Morris at US617, ECF No. 249-10; Dep. of James Ishida at 71:16-72:7, ECF No. 249-11; Dep. of Anthony Martinez at 217:6-10, ECF No. 249-16. In her deposition, Ms. Thomas stated that if Ishida, not Martinez, selected Ms. Beam as investigator, "certainly, that would allay some of [her] concerns

about Mr. Martinez playing a role in the investigation." Dep. of Vida Thomas at 96:19-25. As the record demonstrates, Martinez only participated in the investigation as a witness, which Ms. Thomas acknowledged was "more in line with what is . . . well-accepted HR standards for conducting an investigation." *Id.* at 97:7-10.

Ms. Thomas also claims—again without any citation—that Defendants "apparently instructed Beam not to investigate" Plaintiff's allegations that Martinez retaliated against her for reporting her allegations against Davis. Report at 15. However, fact discovery has demonstrated that Beam was repeatedly instructed to investigate Plaintiff's claims of retaliation, and her final report included a lengthy discussion of the retaliation claim. *See* Counselor's Report at 8-12, ECF No. 245-26. During her deposition, Ms. Thomas stated that she could not recall which record evidence she based her assertion that Defendants "apparently instructed Beam not to investigate" Plaintiff's retaliation claim on. Dep. of Vida Thomas at 104:4-9. She also acknowledged that Beam's undertaking to investigate the retaliation claim would "comport[] with well-accepted, well-established HR standards for responding to retaliation complaints." *Id.* at 104:21-25. Ms. Thomas's departure from the opinions in her report when presented with facts grounded in record evidence underscores just how flawed her testimony is.

Further, Ms. Thomas states that Martinez refused to approve Plaintiff's transfer to another location during mediation. Report ¶ 45. This is not accurate. Martinez approved Plaintiff's transfer to the Asheville location during mediation and offered that to Plaintiff. *See* Dep. of Edward G. Smith at 46:4-16, ECF No. 245-32. Plaintiff instead chose to accept a Fourth Circuit clerkship rather than remain at the FDO. *See* Conversation 190226_1153 Tr. at 33:8-22, ECF No. 245-21; Emails from James Ishida to Edward Smith (Mar. 2019), ECF No. 245-22. Ms. Thomas claimed at her deposition that her belief that Martinez refused the transfer during mediation came from unspecified, unidentified "emails" between Plaintiff and another individual whose name she did not know. *See* Dep. of Vida

Thomas at 93:4-94:9. Ms. Thomas's tenuous grasp of the facts in this case and her inability to support her factual assertions with any specific citation or details further highlights the unreliability of her opinions.

Ms. Thomas similarly relies on incorrect facts to support her second opinion, that the Fourth Circuit's investigation fell below "well-accepted HR practices." *See* Report at 15-18. Ms. Thomas criticizes the investigator, Heather Beam, for not asking Martinez "follow up questions" about a situation where Martinez allegedly "claimed that after promising [Plaintiff] that he would move her to another supervisor, he accidentally assigned her to Davis again." Report ¶ 52. But Ms. Thomas's conclusion is based on an incorrect factual premise. Martinez never promised Plaintiff that he would move her to another supervisor—he told her on July 5, 2018 that he would assign her a new mentor, and he did so immediately. And Ms. Thomas cites no record evidence to support her assertion that Beam did not ask questions about whether Martinez accidentally assigned Plaintiff to work under Davis. To the contrary, Beam found that Martinez made a "mistake" that he took "immediate action to fix." Counselor's Report at 10. Later, Ms. Thomas states (again with no record citation) that Beam did not investigate the veracity of a statement purportedly made by Martinez that "[Plaintiff] was not eligible for a promotion." Report ¶ 52. But the record reflects that Martinez did not tell Plaintiff she was not eligible for a promotion—rather, he told her on August 9, 2018 that he would, consistent with Plaintiff's own request, transition her to an Assistant Federal Defender position, and he initiated the process to do so shortly after. Conversation 180809_1344 Tr. at 18:6-19:5, ECF No. 254-6. Ms. Thomas also criticizes Beam for allegedly permitting Davis to read her report, while not providing Plaintiff the opportunity to do so. Report ¶ 54. This is wholly unsupported by the record. No evidence shows that Beam ever allowed Davis to read the report.

Finally, to support her third opinion—that Defendants "Failed to Protect Strickland from Retaliation," Report at ¶¶ 57-62—Ms. Thomas asserts that Plaintiff continued to suffer sexual

11

harassment by Davis after she met with him and Martinez on July 5, 2018. *Id.* ¶ 57-59. Specifically, Ms. Thomas claims that in "the following months" after that meeting, Plaintiff "continued to make it clear that Davis was still subjecting her to unwanted conduct that made her uncomfortable." *Id.* ¶ 59. This is patently incorrect and contrary to Plaintiff's own deposition testimony. Plaintiff's Depo. Tr. at 93:3-20, ECF No. 249-4 (after Plaintiff began teleworking in August 2018, she did not have any further contact with Davis, other than a few moots attended by several people, and in which Plaintiff participated by phone). Ms. Thomas's continued reliance on information with no basis in the record demonstrates the unreliability of her opinions. Accordingly, her testimony should be excluded.

## II. Ms. Thomas's Deposition Transcript Is Hearsay and Should Be Excluded.

Plaintiff seeks to introduce Ms. Thomas's deposition testimony and an accompanying exhibit, which is Ms. Thomas's expert report. Defendants object to the introduction of the deposition transcript and its accompanying exhibit as inadmissible hearsay. Plaintiff did not list Ms. Thomas on her witness list, *see* Joint Pretrial Filing, ECF No. 259 at 106, but she indicated that she "may call" Ms. Thomas if the Court excludes her deposition testimony, *id.* at 116. "[T]he general preference of the federal rules, as expressed in F[ed]. R. Civ. P. 43(a), is for oral testimony so that there will be an opportunity for live cross-examination and observation of the demeanor of the witness." *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972).

Plaintiff seeks to use Ms. Thomas's statements made during her deposition and in her report to show the truth of the matter asserted, which clearly falls within the definition of hearsay. *See* Fed. R. Evid. 801(c). Indeed, Plaintiff herself seems to recognize that these materials are hearsay. *See* ECF No. 269-2 at 4, Row 53 (conditionally asserting hearsay objections to Defendants' potential use of Plaintiff's exhibit "Thomas Expert Report and Declaration"). But there is no hearsay exception under Rule 804(b)(1) that would apply here, nor is Ms. Thomas's deposition testimony admissible at trial under Federal Rule of Civil Procedure 32. Plaintiff cannot circumvent the oral testimony of her own

expert witness—and avoid live cross-examination—by simply designating her deposition testimony and reports to support her case.

Plaintiff may argue that she can rely on the deposition testimony because Ms. Thomas located more than 100 miles from the trial location, and so is "unavailable" under Rule 32(a)(4)(B). She is incorrect. *See Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir. 1972) ("The various restrictions imposed by Rule 32(a)(3)[2] upon the use of depositions at trial make it clear that there has been no change in the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness be unavailable to testify in person."). Courts "are not automatically required to admit deposition testimonies" under Rule 32(a)(4)(B) "just because the witness is more than one hundred miles away." *Truth Tellers, LLC v. Levine*, 2023 WL 2576756, at *10 (N.D.W. Va. Mar. 20, 2023) (citation omitted). Indeed, Rule 32(a)(4)(B) does not apply to expert witnesses, because "[u]nlike fact witnesses, who are determined by their personal knowledge of relevant facts, regardless of where they live or work, a party normally has broad latitude in selecting his expert witnesses." *See Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 2000 WL 135129, at *4 (D. Del. Jan. 13, 2000) (citing *Caron v. Gen. Motors Corp.*, 37 Mass. App. Ct. 744, 747 (1994)). The reason behind this interpretation of Rule 32(a)(4)(B) is self-evident: if the Rule were construed otherwise, parties could intentionally procure the unavailability of their own expert witnesses for trial by choosing expert witnesses who are located out of state. As the Second Circuit put it:

> [U]nlike the typical witness whose involvement with the case may depend on the fortuity of his observing a particular event and whose presence at trial is often involuntary, a party ordinarily has the opportunity to choose the expert witness whose testimony he desires and invariably arranges for his presence privately, by mutual agreement, and for a fee. Although a requirement of an attempt to secure the voluntary attendance of a witness who lives beyond the subpoena power of the court is not ordinarily imposed before prior testimony can be used in civil litigation, we think that such a requirement is particularly appropriate when dealing

---

[2] Fed. R. Civ. P. Rule 32(a)(4) was formerly Fed. R. Civ. P. Rule 32(a)(3).

with the testimony of expert witnesses whose earlier attendance is almost invariably secured by such voluntary arrangements.

*Carter-Wallace*, 474 F.2d at 536 (internal citations omitted). In fact, the Second Circuit went further, requiring that the proponent of the expert deposition testimony "show[] not only that the witness is unavailable, but that no other expert of similar qualifications is available or that the unavailable expert has some unique testimony to contribute." *Id.* at 536-37.

By selecting an expert from California, Plaintiff "'procured' that expert's absence from this Court" because she "voluntarily created a situation in which" Ms. Thomas would be more than 100 miles away unless she "should make arrangements for the expert's appearance at trial." *Aubrey Rogers Agency*, 2000 WL 135129, at *4 (citing *Caron*, 37 Mass. App. Ct. at 747). "Mere inconvenience to the witness does not outweigh the substantial need to evaluate the demeanor of a witness presenting controversial testimony of questionable relevance. Nor does inconvenience outweigh the unfairness of limiting an opponent's right to demonstrate varying interpretations of the facts on which the witness bases his testimony." *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo.*, on Nov. 15, 1987, 720 F. Supp. 1493, 1502 (D. Colo. 1989) (refusing to admit deposition testimony of expert who the plaintiffs claimed was unavailable solely because he lived outside 100-mile radius). Plaintiff made the decision to select Ms. Thomas as an expert witness in this case and she has already relied on her testimony in summary judgment briefing. *See* Pl.'s Mot. for Summ. J. at 19, ECF No. 248. Plaintiff cannot reap the benefit of Ms. Thomas's out-of-court testimony and simultaneously evade cross-examination by insisting that Ms. Thomas is unavailable.

For similar reasons, Ms. Thomas also is not an "unavailable" witness under the hearsay exception in Fed. R. Evid. 804(b)(1). Under Fed. R. Evid. 804(a)(5), a witness is only unavailable if "the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance." Fed. R. Evid. 804(a)(5)(A). There is no indication that Plaintiff cannot secure Ms. Thomas's attendance at trial by "reasonable means," including by requesting her presence at trial

14

and offering to pay her expert fee. *See Aubrey Rogers Agency*, 2000 WL 135129, at *2 (holding that expert witness was not unavailable when the proponent "proffered no explanation for [his] unavailability other than that he lives in Texas" and had not "indicated that it has even asked this chosen expert to appear at trial, nor that [it] ha[d] offered to pay for the expert's fee and expenses"). As with Federal Rule 32(a)(4)(B), the mere fact that Ms. Thomas works or resides outside of the 100-mile radius of the Court's subpoena power does not suffice to render an expert witness unavailable for purposes of Fed. R. Evid. 804(b)(1). *Id.* at *2-3; *see also Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 163 (3d Cir. 1995) (holding that an expert witness's being beyond the court's subpoena power was insufficient to prove unavailability); *Kamara v. United States*, 2005 WL 2298176, at *6 (S.D.N.Y. Sept. 20, 2005) (noting that "because [the witness] has been retained as Plaintiffs' expert, an even greater showing than mere unavailability is required to excuse his attendance at trial"). Parties are "responsible for selecting their own expert witnesses and presumably have control over them." *Fiorentino v. Rio Mar Assocs., LP, SE*, 2009 WL 10680817, at *2 (D.P.R. Apr. 21, 2009) (excluding expert witnesses' deposition testimony because proponent failed to show they were unavailable).

Plaintiff cannot claim that Ms. Thomas is unavailable when Plaintiff has made no effort to secure her presence at trial, despite the fact that Plaintiff hired her. Accordingly, Ms. Thomas is not "unavailable" under Rule 32(a)(4) or 804(b)(1), and her deposition testimony and attached report should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion and exclude Ms. Thomas as an expert.[3]

---

[3] Pursuant to Local Civil Rule 7.1(b), Defendants conferred with Plaintiff about her position on this motion. Plaintiff requested that Defendants represent her position as follows: "Plaintiff opposes Defendants' motion and intends to file a response pursuant to W.D.N.C. LCvR 7.1(e)."

Dated: November 6, 2023

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

JOSHUA KOLSKY
Senior Trial Counsel

*/s/ Madeline M. McMahon*
MADELINE MCMAHON (DC Bar 1720813)
DANIELLE YOUNG
DOROTHY CANEVARI
Trial Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20001
Tel.: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*

16