# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF CHALLENGE TO CONFIDENTIALITY DESIGNATION (ECF No. 324)

Pursuant to the Parties' Protective Order, ECF No. 183, Plaintiff hereby files her response in opposition to Defendants' Notice of Challenge to Confidentiality Designation. ECF No. 324. Defendants' confidentiality challenge is moot because the material that is the subject of Defendants' confidentiality challenge was ordered sealed by this Court during the November 16, 2023 pretrial conference. *See* ECF Nos. 336, 337. Further, if the Court were to order the unsealing of this material, any such order should be stayed so that Plaintiff may exercise her right to an interlocutory appeal, as described below. Accordingly, Defendants' confidentiality challenge should be denied for this reason and others discussed below.

## I. Defendants' Confidentiality Challenge is Moot in Light of the Court's Order Sealing the Material that is the Subject of the Confidentiality Challenge.

Defendants' confidentiality challenge should be denied as moot in light of this Court's order sealing the material that is the subject of Defendants' confidentiality challenge. *See* ECF No. 337 (stating in Defendants' "Notice of Under Seal Filing" that "[p]ursuant to the Court's instructions at the November 16, 2023 pretrial conference, Defendants provide notice that they

1

today filed, under seal, transcripts of Plaintiff's April 25, 2023 and October 12, 2023 depositions in this matter"). During the November 16, 2023 pretrial conference, the Court ordered the filing of this material under seal and also granted Plaintiff's unopposed oral motion to seal the material pursuant to Local Rule 7.1. *See* LCvR 7.1(a) ("*Unless made during a hearing or trial*, all motions must be written and filed as provided by LCvR 5.2.1." (emphasis added)); *see also* ECF No. 327, at 6–7 (stating that "if the Court were to allow Defendants promptly to file unredacted copies of their sanctions opposition and their motion in limine opposition under seal, Defendants would not oppose a stay pending appeal of an order separately authorizing Defendants to file those unredacted documents on the public docket"). During the hearing, the Court acknowledged that Plaintiff would have a right to an interlocutory appeal over any order unsealing the information and that it had notice of Plaintiff's request to stay any such order, if issued. Following the hearing, Defendants filed a notice stating that "[p]ursuant to the Court's instructions at the November 16, 2023 pretrial conference, Defendants provide notice that they today filed, under seal, transcripts of Plaintiff's April 25, 2023 and October 12, 2023 depositions in this matter." ECF No. 337. Because this material has already been sealed pursuant to the Court's order, Defendants' confidentiality challenge is moot.

The Court's sealing order precludes Defendants from challenging the confidentiality of this material under the Parties' Protective Order. After all, designating material as confidential under the Protective Order requires a lesser showing than sealing of the material, given that the Protective Order "does not entitle [the parties] to file Confidential Information under seal." ECF No. 183, at 5. If material is under seal, then it is also confidential under the terms of the Protective Order because sealing orders are authorized by statute and public disclosure of the

2

sealed material is prohibited under pain of contempt. *Id.* at 1 ("Disclosure and discovery activity in this action are likely to involve the production of confidential or private information for which special protection from public disclosure . . . may be warranted."); W.D.N.C. LCvR 6.1 (defining court's authority to issue sealing orders under local rules adopted pursuant to Fed. R. Civ. P. 83 and 28 U.S.C. §§ 2072–74);18 U.S.C. § 401 (defining contempt power associated with court orders); *In re Civil Contempt by Doe*, No. 12-mc-0557 (BMC), 2016 U.S. Dist. LEXIS 80882, at *11 (E.D.N.Y. June 20, 2016) (contempt proceeding related to "dissemination of sealed documents"); *cf. Visual Mining, Inc. v. Ziegler*, No. PWG-12-3227, 2014 U.S. Dist. LEXIS 21839, at *16 (D. Md. Feb. 21, 2014) ("A protective order regulates the parties' extra-judicial conduct but is not sufficient, by itself, to justify the continued sealing of filings in court."). The Court's sealing order, pursuant to statutes and regulations authorizing the sealing of court filings, constitutes a basis for designating the material as confidential pursuant to the Protective Order. ECF No. 183, at 1–2 ("Confidential Information" shall mean information that . . . is designated confidential by the Producing Party because of a good faith belief that the information is confidential, non-public information that is protective from disclosure by statute, regulation, or policy . . ."); LCvR 6.1(a) ("This Rule governs any party's request to seal, or otherwise restrict public access to, any materials filed with the Court or used in connection with judicial decision-making."); *see generally* Fed. R. Civ. P. 83(a) ("A local rule must be consistent with . . . federal statutes and rules . . . .").

This Court acknowledged during the pretrial conference on November 16, 2023 that because the information that Defendants are requesting to file publicly is currently under seal, Plaintiff has a right to an interlocutory appeal of any order that would subsequently unseal that

information.  *See* ECF No. 219; Entry Order Dated May 19, 2023 ("Consent MOTION to Seal Document. Text of Order: Motion allowed.  So Ordered."); ECF No. 337 (Defendants' "Notice of Under Seal Filing").  The Fourth Circuit has explicitly held that "both sealing and unsealing orders are appealable collateral orders."  *United States v. Doe*, 962 F.3d 139, 143 (4th Cir. 2020). Therefore, if the Court were to grant Defendants' request to file the materials publicly, any such order should be stayed pursuant to Plaintiff's unopposed oral motion at the parties' further pretrial conference, so that she may pursue an interlocutory appeal.

Moreover, in the event of an interlocutory appeal, Plaintiff would request that the Fourth Circuit exercise pendent jurisdiction and review other orders from this Court that are "inextricably intertwined" with this appealable order.  An appellate court may exercise pendent jurisdiction over orders that are "inextricably intertwined" with an appealable order.  *Pena v. Porter*, 316 F. App'x 303, 309 (4th Cir. 2009).  Pendent jurisdiction is appropriate when the "same specific question" underlies the court's orders, or review of the "pendent issue[s] will be 'necessary to ensure meaningful review' of an immediately appealable issue."  *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 309 (4th Cir. 2013).

If this Court were to order ECF No. 336 or any related documents unsealed, then on an interlocutory appeal, Plaintiff would seek review of other orders from this Court suspending Local Rule 6.1(d) and denying Plaintiff's motions to seal and ruling against her without reviewing her evidence and arguments.  *See, e.g.*, ECF No. 292 (reconsideration of summary judgment ruling); ECF No. 272 (protective order); ECF No. 270 (sanctions); ECF No. 248 (summary judgment); ECF No. 227 (protective order); ECF No. 226 (response to motion to strike privilege assertion and reopen deposition).  Specifically, Plaintiff would request that the

4

Fourth Circuit decide whether it was an abuse of discretion, and a violation of due process, for this Court to deny Plaintiff's motions to seal and to rule adversely to her on matters such as her privilege assertions, her motions for a protective order, and her motion for sanctions without reviewing her evidence and arguments. *See Cadet Constr. Co. v. Archer W. Constr., LLC*, No. 22-1576, 2023 U.S. App. LEXIS 21725, at *7–8 (4th Cir. Aug. 18, 2023) ("A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." (citation omitted)); *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970) ("[t]he fundamental requisite of due process of law is the opportunity to be heard," and due process requires "an effective opportunity" for the party to "present[] his own arguments and evidence"). Pendent jurisdiction would be appropriate because these rulings are "inextricably intertwined" with the sealed information, and the "same specific question" underlies these orders. *Ealy*, 514 F. App'x at 309.

Moreover, any order from this Court unsealing this material also would necessarily raise a reasonable question of why the Court has allowed Defendants to file sealed materials in support of their case, including at ECF Nos. 219 and 336, but the Court has not allowed Plaintiff to file sealed materials in support of her case, such as the MeToo evidence filed in support of her summary judgment motion and motions *in limine*—even when Defendants have not opposed sealing of that material and have moved to seal the same material. *See* ECF No. 228 (privilege assertion); ECF No. 244, 247 (summary judgment); ECF No. 271 (sanctions); ECF No. 273 (protective order); ECF No. 293 (reconsideration of summary judgment); ECF No. 283 (motion to preclude after-acquired evidence). This disparate treatment of Plaintiff and Defendants raises

5

concerns of fundamental fairness that must be addressed in order to ensure that Plaintiff has a fair opportunity to be heard on the merits of her constitutional claims. *See Morgan v. United States*, 298 U.S. 468, 478 (1936) (reversing ruling that decisionmaker issued against a plaintiff without "having read or considered the briefs which the plaintiffs submitted," and based only on information it "derived from consultation with employees of the [government]"); *Morgan v. United States*, 304 U.S. 1, 19, 22 (1938) (these principles are "fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature," and their violation "is more than an irregularity in practice; it is a vital defect"). Accordingly, these additional rulings are the proper subject of pendent jurisdiction because review of the "pendent issue[s] will be 'necessary to ensure meaningful review' of an immediately appealable issue." *Ealy*, 514 F. App'x at 309.

## II. Defendants' Confidentiality Challenge is Also Moot Because it Was Prematurely Filed.

Defendants' confidentiality challenge should also be denied as moot because Defendants filed their confidentiality designation challenge prematurely, without allowing Plaintiff thirty days to make confidentiality designations, as required under the Parties' Protective Order.

The Protective Order provides the following requirements for the designation of deposition transcripts as confidential:

> For depositions, designation of Confidential Information shall be made during the deposition on the record that should include reasons for the assertion (and the court reporter shall mark those pages of the transcript containing Confidential Information), or by letter from counsel within thirty (30) days of receipt of the official deposition transcript or copy thereof (or written notification that the transcript is available), listing the specific pages and lines of the transcript and/or any exhibits that should be treated as Confidential Information. The entire deposition transcript (including any

6

exhibits not previously produced in discovery in this Action) shall be treated as Confidential Information under this Protective Order until the expiration of the above-referenced 30-day period for designation, except that the deponent (and his or her counsel, if any) may review the transcript of his or her own deposition during the 30-day period subject to this Protective Order and the requirement of executing the certification attached as Exhibit A.

ECF No. 183, at 7–8.

Under this provision, Plaintiff had thirty (30) days to make specific confidentiality designations after her re-opened deposition on October 12, 2023. Because Plaintiff was concerned about the possibility that Defendants would not respect Plaintiff's right to have thirty days to review the transcript and make confidentiality designations, on October 20, 2023, Plaintiff's counsel sent a letter to Defendants' counsel reiterating that Plaintiff intended to review the transcript and make confidentiality designations within thirty days, and that until then, the entire transcript must be treated as confidential. ECF No. 324-2. However, Defendants did not wait for the thirty days under the Protective Order to expire and instead prematurely filed their confidentiality challenge on November 6, 2023, even though Plaintiff had not yet made confidentiality designations under the Protective Order. ECF No. 324.

On November 13, 2023, Plaintiff's counsel sent Defendants' counsel a letter making confidentiality designations for the re-opened deposition transcript. Ex. A. Defendants have not filed a confidentiality designation challenge to Plaintiff's November 13, 2023 designations. Because Defendants' prematurely filed confidentiality challenge does not address Plaintiff's subsequently served November 13, 2023 designations, Defendants' confidentiality challenge filed on November 6, 2023 should be denied as moot. *Compare* ECF No. 324, at 1 ("Defendants served on Plaintiff a notice challenging Plaintiff's designation of her *entire* re-opened deposition

7

transcript as confidential." (emphasis added)), *with* ECF No. 337, at 2 ("Defendants are challenging Plaintiff's confidentiality designations at . . . pages 5:17–21:17 and 23:19–24:16 of Plaintiff's October 12 deposition.").

### III.    Defendants' Confidentiality Challenge is Lacking in Merit.

The Court need not reach the merits of Defendants' confidentiality challenge for the reasons discussed above, but if the Court does reach the merits, it should deny their challenge. Defendants' November 6, 2023 confidentiality challenge is similar to their prior confidentiality designation challenge filed on October 17, 2023, but with some notable omissions discussed below. *See* ECF No. 299. As Plaintiff explained in her response to Defendants' prior confidentiality challenge, the information is properly designated confidential because (1) it is currently under seal by order of this Court, (2) it is privileged information, and (3) it implicates constitutionally protected liberty and privacy interests. *See* ECF No. 183, at 1–2 (protecting "confidential, non-public information that is protected from disclosure by statute, regulation, or policy"); *see also id.* at 13 ("Nothing herein shall be deemed or construed as a waiver of any applicable privilege [or] right of privacy . . . ."). Plaintiff reiterates and expands on her analysis from her prior response to Defendants' October 17, 2023 confidentiality challenge, which she filed at ECF No. 320, as set forth below.

In addition, Plaintiff reiterates that she previously asserted various privileges over this information, but the Court denied her privilege assertions, except for the Fifth Amendment assertion, without reviewing her arguments because it denied her motion to seal without explanation. *See* ECF No. 226 (privilege challenge response), ECF No. 238 (order denying motion to seal). Plaintiff specifically reserved her assertions of privilege for purposes of

8

preserving the record during her reopened deposition, and Plaintiff does not waive any of her assertions of privilege that she previously raised. The analysis below is intended to address the Fifth Amendment privilege that the Court allowed in its June 1, 2023 order. ECF No. 233, at 2.

### A. Plaintiff Did Not Waive the Fifth Amendment Privilege.

The crux of Defendants' confidentiality challenge is that Plaintiff "waived" privilege over the deposition testimony she provided on April 25, 2023. ECF No. 324-1, at 2. But tellingly, Defendants omit the portion of this Court's order which states: "The Fifth Amendment privilege **has not been waived** and may be asserted during any further discovery or trial proceedings." ECF No. 233, at 2 (emphasis added). Defendants' argument that "the Court has already determined that no privilege applies to that testimony," ECF No. 324-1, at 2, directly contradicts this Court's ruling that "[t]he Fifth Amendment privilege has not been waived," ECF No. 233, at 2. Thus, Defendants' motion should be denied based on this Court's June 1, 2023 order, which expressly states that the privilege was not waived. ECF No. 233, at 2.

In any event, Plaintiff plainly did not waive the privilege. A "testimonial waiver" of the Fifth Amendment "is not to be lightly inferred, and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver." *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981). "'Testimonial waiver' is found only in the most compelling of circumstances." *United States v. Cox*, 836 F. Supp. 1189, 1200–01 (D. Md. 1993) (quoting *Klein*, 667 F.2d at 287). Accordingly, "a court should only infer a waiver of the fifth amendment's privilege against self-incrimination from a witness' prior statements if (1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know

that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." *Klein*, 667 F.2d at 287. The first prong focuses "on whether the witness's prior testimony has created a significant danger of distortion." *Id.* "Such circumstances do not exist unless a failure to find a waiver would prejudice a party to the litigation." *Id.* The second prong recognizes that "[i]t would be unfair to the witness for a court to infer such a waiver unless the witness had reason to know, when he made the prior statements, that he might thereby be found to have waived his fifth amendment privilege." *Id.* at 288. Therefore, to meet the second prong, the statements must be (a) "testimonial" and (b) "incriminating," meaning that they "directly inculpated the witness on the charges at issue." *Id.*

Here, the second prong disposes of the inquiry, because the testimony Plaintiff provided was not "incriminating." Indeed, Defendants conceded in their response to Plaintiff's motion for sanctions that "Defendants Did Not Accuse Plaintiff" of wrongdoing based on her deposition testimony. ECF No. 294, at 10. To the contrary, Defendants asserted that they merely sought "to identify what they do not know," to "probe th[e] factual details further," and were "seeking only to probe th[e] facts." *Id.* at 10, 12. During the briefing on Defendants' prior confidentiality challenge, Defendants reaffirmed that they did not "accus[e] her of wrongdoing." ECF No. 327, at 5. These statements necessarily concede that Defendants lack any particularized evidence of wrongdoing based on Plaintiff's deposition testimony and that any allegations they could make are based on unsupported speculation.

It is hornbook law that an individual does not waive the Fifth Amendment privilege when the answers she provided are not incriminating. *See, e.g.*, *Chao v. Halko*, No. 3:19-cv-10194-MGM, 2021 U.S. Dist. LEXIS 163481, at *6–9 (D. Mass. Aug. 30, 2021) (holding that officer

did not waive his Fifth Amendment rights when his admissions were "not, standing alone, incriminating"); *Arndstein v. McCarthy*, 254 U.S. 71, 72 (1920) (providing evidence that "did not amount to an admission of guilt or furnish clear proof of crime . . . did not constitute a waiver"). Otherwise, it would be "unfair" to infer a waiver of the privilege because a witness who did not provide incriminating testimony would have no "reason to know" that she was waiving the privilege. *Klein*, 667 F.2d at 287; *see also Cox*, 836 F. Supp. at 1200–01 (concluding that witness did not waive privilege when he "inadvertently (and briefly) described" facts "without an appreciation that he might be waiving his Fifth Amendment rights").

Here, Plaintiff would have had no "reason to know" she was waiving the Fifth Amendment privilege over her deposition testimony. *Id.* Indeed, from the face of the deposition questioning, it is obvious that Plaintiff had no reason to know this testimony could conceivably be incriminating, because the facts that Defendants relied on to insinuate that conclusion were not even known to her. *Cf. United States v. Pérez-Greaux*, 83 F.4th 1 (1st Cir. 2023) ("Proof of mens rea requires proof 'that the defendant know the facts that make his conduct illegal.'"); *Staples v. United States*, 511 U.S. 600, 605 (1994) (same). That is not to mention that even if Plaintiff were aware of these facts, Defendants' theory of alleged wrongdoing is misguided and baseless because it is directly contradicted by the laws of the relevant jurisdictions, as Defendants implicitly conceded in their response to the motion for sanctions. *See, e.g.*, ECF No. 302, at 10–11 (explaining that Defendants conceded the relevancy of these authorities, which they failed to disclose to the Court in their Motion to Strike, and tried unsuccessfully to distinguish them). It would be "unfair" to infer a waiver of privilege over testimony that, on its face, does not conceivably implicate Plaintiff in any offense.

11

Notably, in their previous confidentiality challenge, Defendants relied on decisions involving incriminating testimony which are inapposite. *See* ECF No. 299-1, at 2. In *Garner v. United States*, the government introduced a defendant's tax returns, which contained the incriminating disclosure that he was a gambler by occupation, in his prosecution for illegal gambling. The Supreme Court held that the defendant waived the Fifth Amendment privilege by disclosing this incriminating information on his tax returns. *Garner v. United States*, 424 U.S. 648, 650 (1976); *see also id.* at 656 (characterizing returns as containing "incriminating disclosures"). Similarly, *Mitchell v. United States* involved the invocation of the privilege regarding crimes encompassed in a plea agreement at sentencing, which the Supreme Court held was not waived. *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (holding that forcing a defendant to "relinquish all rights against compelled self-incrimination" because the defendant participated in a plea colloquy would mean allowing "the Government [to] turn this constitutional shield into a prosecutorial sword"). *Mitchell* discussed general principles involving testimonial waiver, which apply when there is an "admission of guilt or incriminating facts," unlike here. *Rogers v. United States*, 340 U.S. 367, 373 (1951). Finally, *Guardipee v. Raj Transp., Inc.* involves testimony by a witness that "voluntarily revealed the criminating fact" that he looked at his cell phone immediately before a collision resulting in personal injury. *Guardipee v. Raj Transp., Inc.*, No. 1:20CV833, 2022 U.S. Dist. LEXIS 125159, at *13 (M.D.N.C. May 3, 2022). In short, these cases do not apply for the simple reason that they involve waiver over incriminating testimony, which is not the case here.

Defendants' second confidentiality challenge noticeably lacks a citation to these decisions involving waiver of the Fifth Amendment privilege over incriminating testimony. *See*

12

ECF No. 324-1, at 2 (not citing *Garner*, *Mitchell*, or *Guardipee*).  The fact that Defendants are no longer relying on these decisions further confirms that their accusations of wrongdoing against Plaintiff, which they were forced to retract in their response to Plaintiff's motion for sanctions, are lacking in merit.  It also confirms that Plaintiff's argument that she did not waive the Fifth Amendment privilege because the testimony she provided was *not* incriminating is well-founded.  Indeed, Defendants have provided *no* citations in support of their contention that the privilege was somehow waived.  *See* ECF No. 324-1 (providing no citations in support of their position).  Defendants argue that this Court's decisions related to sealing of materials demonstrates that the testimony is not privileged, but the Court has subsequently confirmed that both the reopened deposition and Plaintiff's prior deposition testimony must remain under seal.  *See* ECF No. 337, at 1–2 (Defendants' notice of sealing of "transcripts of Plaintiff's April 23, 2023 and October 12, 2023 depositions in this matter").  Because Defendants have provided no authority in support of their position, their conclusory and unsupported assertions in support of their confidentiality designation challenge should be rejected.  *Cf. Hobbs v. Balt. Cty.*, Civil Action No. ELH-21-2052, 2023 U.S. Dist. LEXIS 124233, at *29 (D. Md. July 18, 2023) (stating that "[c]onclusory allegations are not sufficient" to proceed on claim).

Because the second prong of the *Klein* test, *i.e.*, that the testimony was not incriminating, is dispositive, this Court need not reach the first prong.  *Klein*, 667 F.2d at 287.  But that prong—which considers whether there is a "significant danger of distortion" that "would prejudice a party to the litigation"—also counsels against a finding of waiver.  *Id.*  Notably, the testimony that Defendants seek to use relates to a potential affirmative defense that Defendants have not raised, and instead expressly disavowed, in this litigation.  Defendants have unequivocally stated

13

to this Court that they have waived all affirmative defenses in this litigation, including an after-acquired evidence defense: "Defendants are not raising an after-acquired evidence affirmative defense." ECF No. 295, at 1. Thus, the only purpose for which Defendants intend to use the testimony is related to an affirmative defense that they have expressly disavowed.[1]

Moreover, even if Defendants had pleaded this defense, they would have no way to present it at trial because the only official with the personal knowledge necessary to establish the defense, Federal Defender John Baker, will not be a witness, in part, because he was not listed as a witness in the parties' final pretrial conference memorandum. ECF No. 295, at 12 ("[W]ith respect to the current Federal Defender, Defendants did not list him on their witness list and do not intend to call him at trial."); ECF No. 262, at 8 ("And so long as they're here in this final pretrial conference memorandum I'm not going to say it's a surprise witness or anything."); *see* ECF No. 309, at 13–14 (explaining that Defendants cannot prove an after-acquired evidence defense without Defender Baker's testimony). There is no "danger of distortion" or "prejudice" related to testimony that cannot even be offered for a relevant, nonprejudicial purpose in this litigation.

---

[1] It is also questionable whether alleged post-termination conduct that is unrelated to the employee's relationship with the employer can even support an after-acquired evidence defense. *Jones v. Nissan N. Am., Inc.*, 438 F. App'x 388, 406 (6th Cir. 2011) (explaining that while courts have split on the issue, some "courts have concluded that, because *McKennon* was premised on an employee-employer relationship, any misconduct occurring outside that relationship falls outside of the reach of the rule"); *Oster v. Huntington Bancshares Inc.*, No. 2:15-cv-2746, 2017 U.S. Dist. LEXIS 76651, at *72 (S.D. Ohio May 19, 2017) ("Imagine the perverse incentives created if employers were rewarded for rummaging around an ex-employee's life following his or her termination, all in the name of creating some post-hoc rationale for that very termination."). The attenuated nature of Defendants' allegations further weighs against any relevancy of this defense, even if they had properly raised it.

14

**B.     Plaintiff Has Constitutionally Protected Liberty and Privacy Interests in Preventing Public Disclosure of Unfounded Allegations by Government Officials.**

Aside from claiming that the information is not privileged, Defendants are also wrong to contend that there is no other basis under the Parties' Protective Order to protect this information from public disclosure.  The Protective Order defines "Confidential Information" as information that "is designated confidential . . . because of a good faith belief that the information is confidential, non-public information that is protected from disclosure by statute, regulation, or policy . . . ."  ECF No. 183, at 1–2.  Moreover, "[n]othing in this Protective Order supersedes existing independent statutory, law enforcement, national security, or regulatory obligations imposed on a Party, and this Protective Order does not prohibit or absolve the Parties from complying with such other obligations."  *Id.* at 4; *see also id.* at 13 ("Nothing herein shall be deemed or construed as a waiver of any applicable privilege [or] right of privacy . . . .").  In short, the Protective Order does not absolve Defendants and their counsel from their duty, as government officials, not to infringe on Plaintiff's right to be free from being "public[ly] brand[ed]" with unfounded allegations.  *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021) (citation omitted).

Here, the briefing on the motion for sanctions—including Defendants' retreat to a position that they are "seeking only to probe th[e] facts" rather than making accusations of wrongdoing—makes clear that Defendants have no factual or legal basis to assert that Plaintiff engaged in wrongdoing.  ECF No. 294, at 12.  Because Defendants have not presented any particularized evidence of wrongdoing, the only purpose in publicly disclosing these facts is to smear Plaintiff with false insinuations of wrongdoing and thereby interfere with prospective

15

employment opportunities, including the possibility of reinstatement or front pay in this case. Precedent from this Circuit and others makes clear that this approach infringes on constitutionally protected liberty and privacy interests. Moreover, this Court's order sealing this material confirms that it must be protected from public disclosure. *See* ECF No. 337; *see supra*, at 1–6 (discussing Court's sealing order).

### 1. The information involved in Defendants' confidentiality challenge serves no valid evidentiary purpose in this litigation.

As noted above, Defendants have conceded that they are not accusing Plaintiff of wrongdoing. ECF No. 294, at 10 (stating that "Defendants Did Not Accuse Plaintiff" of the conduct alleged in their Motion to Strike). Defendants must make this concession because the deposition testimony that Plaintiff provided plainly does not implicate her in any wrongdoing, contrary to the assertions Defendants made in their Motion to Strike. *See* ECF No. 219. Indeed, pertinent authorities from the relevant jurisdictions expressly state that this alleged conduct is specifically allowed and is *not* a form of wrongdoing. *See* ECF No. 302, at 11–12. To the extent that Defendants would have this Court sanction Plaintiff for the alleged conduct notwithstanding these governing authorities, that approach is barred by Federal Rule of Civil Procedure 83. *See* Fed. R. Civ. P. 83(b) ("No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."). Thus, it is clear that the deposition testimony is not relevant to any claim or defense in this litigation.

Even though Defendants have not provided any particularized evidence of wrongdoing, Plaintiff anticipates that Defendants may seek to penalize her in this litigation because she invoked her constitutionally protected right to silence in response to their unfounded allegations.

16

*See, e.g.*, ECF No. 295, at 9–10. That approach fails to comport with the "uniform" approach of courts "in suggesting that an adverse inference" arising from a party's silence in a civil matter "can only be drawn when independent evidence exists of the fact to which the party refuses to answer." *Lawrence v. Madison Cty.*, 176 F. Supp. 3d 650, 666–67 (E.D. Ky. 2016) (quoting *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)); *see Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (the Fifth Amendment permits adverse inferences against parties in civil cases "when they refuse to testify *in response to probative evidence offered against them*" (emphasis added)). In short, drawing an adverse inference from a party's silence is "proper when incriminating evidence had also been presented." *Doe*, 232 F.3d at 1264 (citing *Baxter*, 425 U.S. at 317–18). But "when there is no corroborating evidence to support the fact under inquiry, the proponent of the fact must come forward with evidence to support the allegation, otherwise no negative inference will be permitted." *Id.*

Applying these principles here, Defendants have not provided any particularized evidence of wrongdoing. Indeed, they have conceded that they do not have a basis to accuse Plaintiff of wrongdoing because they are "seeking only to probe th[e] facts." ECF No. 294, at 12. Accordingly, Defendants have no basis to contend that Plaintiff should be disadvantaged for her exercise of constitutional rights. Any such basis would only exist if Defendants had presented independent incriminating evidence, which is lacking here. Indeed, Defendants' reckless, inherently contradictory, and opportunistic statements as agents of the federal government on this issue—insinuating wrongdoing for the purpose of re-opening Plaintiff's deposition, only to deny having made such allegations when confronted with a motion for sanctions—demonstrate why the protections of the Fifth Amendment exist. "Historically, the

17

privilege was intended to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him.  Such was the process of the ecclesiastical courts and the Star Chamber—the inquisitorial method of putting the accused upon his oath and compelling him to answer questions designed to uncover uncharged offenses, without evidence from another source."  *Doe v. United States*, 487 U.S. 201, 212 (1988) (citations omitted); *see also Miranda v. Arizona*, 384 U.S. 436, 459 (1966) (stating that "the critical historical event" in shedding light on the Fifth Amendment's origins was a trial of John Lilburn in which he resisted the "Star Chamber Oath" and proclaimed that "no man's conscience ought to be racked by oaths imposed, to answer to questions concerning himself in matters criminal, or *pretended to be so*" (emphasis added)).

Against this backdrop, the only conceivable basis for Defendants to publicly disclose this information is to humiliate and intimidate Plaintiff by falsely insinuating wrongdoing.  That approach is both legally unfounded and unethical.  *Slochower v. Bd. of Higher Educ.*, 350 U.S. 551, 557 (1956) ("[W]e must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment."); *cf. In re Smith*, 656 F.2d 1101, 1104 (5th Cir. 1981) (discussing plaintiff's allegations that he "had been singled out solely for publicity purposes" with unfounded allegations by U.S. Attorney's Office "and that such actions were unethical"); N.C. R. Prof. Cond. 3.4(e) ("[A] lawyer shall not . . . allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . . [or] ask an irrelevant question that is intended to degrade a witness . . . ."); 18 U.S.C. § 1512(b)(1) (prohibiting "misleading conduct" with intent to "influence, delay, or prevent the testimony of any person in an official proceeding").

18

### 2. Plaintiff has constitutionally protected liberty and privacy interests in not being publicly branded with unfounded allegations by government officials.

Courts have recognized the "strong interest" individuals have in being protected from "public brand[ing]" with unfounded allegations by government officials. *Pub. Interest Legal Found.*, 996 F.3d at 267. Indeed, one of the purposes of grand jury secrecy is to ensure that "persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Id.* (citation omitted); *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979). Unwarranted public disclosure of allegations may "subject [these individuals] to potential embarrassment or harassment," and "could have long-standing personal and professional repercussions." *Pub. Interest Legal Found.*, 996 F.3d at 268. Moreover, "[i]t would be unrealistic to deny" that such accusations, "even if unfounded," may "impinge upon employment opportunities." *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975).

For these reasons, courts strenuously protect individuals' liberty and privacy interests to be free from such public branding. Courts recognize a due process violation where government officials have branded an individual with stigmatizing allegations for the purpose of interfering with the individual's employment opportunities. *See Bd. of Regents v. Roth*, 408 U.S. 564, 573, (1972) (recognizing possibility of due process claim if the State, "in declining to rehire the respondent," made a "charge against him that might seriously damage his standing and associations in his community"); *Briggs*, 514 F.2d at 797 (recognizing that "injury to [] good names and reputations and impairment of [] ability to obtain employment" were "substantial and legally cognizable interests entitled to constitutional protection against official governmental action"); *Masvidal v. United States DOJ*, 716 F. Supp. 2d 1207, 1211–13 (S.D. Fla. 2010)

19

(holding that plaintiff adequately "alleged that his reputation was damaged in conjunction with the DOJ's interference with his private employment" sufficient to survive dismissal).  This principle holds when unfounded allegations are made during litigation.  *Masvidal*, 716 F. Supp. 2d at 1213.  In fact, "due process claims based upon slanderous in-court statements [by DOJ officials]" have been "permitted with no suggestion that the conduct could be shielded by a 'defamation privilege.'"  *Id.* (citing supporting authorities).

Here, the express purpose of Defendants' unfounded accusations is to interfere with Plaintiff's prospective federal employment opportunities.  *See, e.g.*, ECF No. 295, at 9 (stating that Plaintiff's deposition provides a "basis to bar or limit any award of front pay").  Contrary to Defendants' assertions that they are not retaliating against Plaintiff or engaging in public branding because "a legal argument in a brief is plainly not the same thing as a retaliatory employer action," precedent does not support this cynical and *carte blanche* approach to government officials' conduct in litigation.  ECF No. 295, at 8.  As government officials, Defendants and their counsel must be held to the higher constitutional standards imposed by virtue of the duties of their public office.

Defendants' argument that they are seeking to disclose only "Plaintiff's statements," rather than making accusations, confirms the cynicism in their approach and slices the argument much too thinly.  ECF No. 327, at 5.  The purpose of disclosing this information publicly, as Defendants themselves have repeatedly stated, is to contend that Plaintiff is ineligible for reinstatement or front pay because of purported misconduct.  *See* ECF No. 219; ECF No. 327, at 5 (reaffirming arguments in ECF No. 219).  Obviously, then, public disclosure of this information necessarily means that Defendants are alleging the information implicates Plaintiff

20

in wrongdoing, because otherwise it would be entirely irrelevant to the litigation. In short, the only reason why the information would be disclosed publicly is for the purpose of making an accusation of wrongdoing against Plaintiff. Defendants, however, have already conceded no legitimate basis for such an accusation exists. *See, e.g.*, ECF No. 294, at 12; ECF No. 327, at 5. Thus, the only possible purpose for disclosing the information is to embarrass and intimidate Plaintiff with false and misleading insinuations of wrongdoing, in attempt to attack Plaintiff and likely also to deter others who would raise similar allegations from coming forward. This conduct is blatantly unconstitutional and unethical.

At this point in the litigation, the facts of this case are simple and compelling. This Court recognized that "[t]he underlying facts" favoring Plaintiff's equal protection claim against the Federal Defender "appear to be undisputed," including through a "letter of reprimand" issued by the Fourth Circuit's Chief Judge for the Defender's wrongful conduct. ECF No. 258, at 6–7. If "an unimpeached public record" from the Fourth Circuit's Chief Judge containing "undisputed" findings of unlawful sex discrimination is not sufficient to demonstrate that Plaintiff's claims have merit, it is hard to imagine what would be sufficient.[2] *Id.* at 6. Lacking a valid defense to Plaintiff's claims, Defendants have resorted to attacking the victim who raised a legitimate claim of sexual harassment. This all-too-common tactic is recognized as a major barrier to reporting workplace misconduct. *See* Report of the Federal Judiciary Workplace Conduct Working Group

---

[2] Defendants have perplexingly contended that Plaintiff "incorrectly describes a 'letter of counseling' as a 'letter of reprimand,'" ECF No. 327, at 6, even though Plaintiff used the description that was provided by this Court, ECF No. 258, at 6. Defendants' contention that Plaintiff has "false[ly]" asserted that there were findings of unlawful sex discrimination in this case is equally perplexing in light of Defendants' own confirmation that "disciplinary action" was taken for "wrongful conduct," which is defined as "[d]iscrimination against employees based on . . . sex." ECF No. 314-1, Add. 35–36, 41 n.4.

to the Judicial Conference of the United States 12 (2018) ("Victims are hesitant to report harassment and other inappropriate behavior for a variety of reasons, including . . . concerns that a complaint will subject them to retaliatory action or affect future job prospects."); *see generally* Tovia Smith, Noted Defense Attorney Charles Ogletree Dies, NPR, Aug. 4, 2023, *available at* https://tinyurl.com/4nxthsd4 ("[W]hen she brought allegations of sexual harassment against then-Supreme Court nominee Clarence Thomas . . . [Anita] Hill said [Harvard Law Professor] Ogletree immediately understood that she would need a defense attorney even though she was the accuser, not the accused."). This conduct is severely intimidating, as evidenced by the fact that Plaintiff's entire legal team moved to withdraw *only four days* after Defendants' counsel raised these allegations. *See* ECF No. 270-1, at 21. Defendants' continued conduct has also severely intimidated Plaintiff from testifying or exercising her rights in this litigation and prejudiced her substantial rights. Allowing Defendants to publicly brand Plaintiff with unfounded allegations would only deepen the infringement of her fundamental rights.

**C.     If this Court Were to Grant Defendants' Confidentiality Challenge and Order the Unsealing of the Requested Information, it Must Stay Any Such Ruling So that Plaintiff Can Exercise Her Right to an Interlocutory Appeal.**

The Fourth Circuit has held that "[b]oth sealing and unsealing orders are appealable collateral orders." *Doe*, 962 F.3d at 143. The information that Defendants seek to reveal publicly is currently under seal. *See* ECF No. 219; Entry Order Dated May 19, 2023 ("Consent MOTION to Seal Document. Text of Order: Motion allowed. So Ordered."); ECF No. 337 (Notice of Sealed Filing). Thus, granting Defendants' confidentiality challenge would require the unsealing of information that is currently under seal.

22

As discussed above, Plaintiff has a right of interlocutory appeal over any such order to unseal information. If this Court were to decide to grant Defendants' confidentiality challenge and order the public filing of this information, its ruling should be stayed so that Plaintiff can exercise her right to an interlocutory appeal. *Doe*, 962 F.3d at 143. Allowing Plaintiff to appeal would be particularly important because the subject matter of the sealing involves liberty and privacy interests that would be irredeemably compromised if the information were publicly disclosed. *Cf. Smith*, 656 F.2d at 1105 (explaining that once harmful information is disclosed, "no relief will be able to undo past harm" but can only "prevent future harm").

## CONCLUSION

This Court should deny Defendants' confidentiality challenge.

This the 20th day of November, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of November, 2023, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

/s/ Cooper Strickland
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com