**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLANTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
PLAINTIFF'S "ME TOO" EVIDENCE**

Defendants have filed a motion *in limine* seeking to preclude MeToo evidence of other

complaints of harassment, discrimination, and retaliation against the Federal Defender Office.

ECF No. 330. In their motion, Defendants argue that the evidence should be precluded based on

(1) relevancy and (2) hearsay. During the further pretrial conference on November 16, 2023, the

Court denied Defendants' motion *in limine* and ruled that it will evaluate the relevancy of the

MeToo evidence at trial. Accordingly, this response does not address the relevancy issue.

Plaintiff will demonstrate the relevancy of the MeToo evidence at trial. Rather, Plaintiff files

this response to address Defendants' untimely hearsay objections. Plaintiff reserves the right to

make further arguments in support of admission of this evidence in response to any alternative

arguments that may be asserted at trial.

**I.      This Court Should Summarily Deny Defendants' Hearsay Objection to the MeToo
         Evidence Because it is Untimely.**

This Court should summarily deny Defendants' hearsay objections without considering

the merits because Defendants failed timely to object to Plaintiff's designation of the MeToo

complaints as a trial exhibit on hearsay grounds. ECF No. 259, at 109, 114. Contemporaneously

1

with this response, Plaintiff has filed a motion to strike Defendants' motion *in limine* on timeliness grounds. ECF No. 343.

Under Federal Rule of Civil Procedure 26(a)(3)(B), any objections to Plaintiff's exhibits, including the MeToo evidence, were due "[w]ithin 14 days after they [were] made" in the joint pretrial memorandum filed on July 25, 2023. In the joint pretrial memorandum, Plaintiff specifically states that she "incorporates by reference the exhibits cited in her summary judgment filings," including "Exhibit P," which is the MeToo evidence. ECF No. 259, at 109; *see also id.* at 113 ("FDO EDR Complaints (ECF 248-16; Defendants' Objections and Responses to Plaintiff's Third Set of Interrogatories, Bates No. US5384–89, 7448–49, 7426–47, 7451–53, 7421–25, 7513–16, 7544–47, 7542, 7529–30, 7454–56, 7508–12, 7504–07, 5551–58, 4008–10)."). Plaintiff also listed "Other EDR Complaint Investigation Report Attachment" as a trial exhibit. *Id.* at 114. Defendants' motion *in limine* was filed more than six weeks after the deadline for raising objections had passed, and Defendants did not serve and file any objections within the deadline required by Rule 26(a)(3)(B).[1] Defendants also have not provided any showing of good cause for their delay. Under similar circumstances, many courts have applied Rule 26 to strike untimely hearsay or other similar objections. *See, e.g.*, *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 553 (D. Md. 2007); *Phillips v. Morbark, Inc.*, 519 F. Supp. 2d 591, 596 (D.S.C. 2007); *Great Plains Oilfield Rental v. Aerotek, Inc.*, No. CIV-15-928-F, 2016 U.S. Dist. LEXIS 202281, at *3–4 (W.D. Okla. Oct. 14, 2016); *Balfour Beatty Rail v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 383 (N.D. Tex. 2016).

---

[1] On November 15, 2023, fifty days after the deadline for objections had passed on September 25, 2023, Defendants untimely emailed a list of objections to Plaintiff's counsel. Defendants provided no explanation for their extreme delay in serving objections, which has severely prejudiced Plaintiff because she was already finalizing her trial preparation based on the pretrial disclosures provided in the parties' joint pretrial memorandum. *See* ECF No. 259.

Defendants' challenge on hearsay grounds is therefore waived. Their motion *in limine* should be stricken as untimely.

## II. The MeToo Evidence is Not Inadmissible Hearsay.

In any event, Defendants' hearsay objection fails. The MeToo evidence is admissible both as nonhearsay and under exceptions to the hearsay rule.

### A. Admissions by a Party Opponent Under Rule 801(d)(2)(D)

"Federal Rule of Evidence 801(d)(2)(D) excludes from the hearsay rule 'a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.'" *Geleta v. Gray*, 645 F.3d 408, 415 (D.C. Cir. 2011). That includes statements by employees related to adverse employment actions or other acts of discrimination by the employer, which "concern[] a matter within the scope of their employment." *Id.* Here, at least two of the EDR complaints reporting unlawful discrimination, harassment, and retaliation—specifically, the complaints filed by ███████████████ ██████████████████████—were filed by employees during their employment at the FDO and are party admissions. *See* ECF No. 330, at 10. "[R]eporting workplace sexual harassment is so clearly a part of an employee's duties." *Brown v. United States*, 933 F. Supp. 2d 780, 785 (E.D. Va. 2013). After all, "[s]exual harassment is illegal," as are other forms of gender-based discrimination and retaliation. *Id.* at 784. "It follows that when, as here, a [government] employee, consistent with the [agency's] Policy on harassment, reports an incident of sexual harassment, the employee is acting within the scope of her employment." *Id.* at 785; *see also Grantham v. Durant*, 471 F. Supp. 2d 1069, 1075 (D. Nev. 2006) ("Reporting sexual harassment in the workplace is not an independent venture of the employee and is committed in the course of the very task assigned to the employee."); *Cole v. Tenn. Watercraft, Inc.*, No. 3:06-

3

CV-381, 2008 U.S. Dist. LEXIS 54231, at *16 (E.D. Tenn. July 15, 2008) ("sexual harassment related-matters are within the scope of employment" and are thus party admissions under Rule 801(d)(2)(D)).

The EDR Plan specifically states that "employees are encouraged to report wrongful conduct to the Court's EDR Coordinator, the Chief Judge, unit executive, human resources manager, or their supervisor as soon as possible, before it becomes a [sic] severe or pervasive." EDR Plan Ch IX (ECF No. 248, Ex. B, at 7).  Further, the EDR Plan creates a mechanism for "[a]n employee who claims a denial of the rights granted" under the Plan to seek remedies and states that "[b]efore invoking a request for counseling an employee (to the extent feasible) is encouraged to bring his or her concerns to his or her supervisor or unit executive" or to the EDR Coordinator, "if the supervisor or unit executive is the alleged violator."  EDR Plan Ch. X §§ 1– 2.  The EDR Plan thus makes unmistakably clear that the reporting of allegations of wrongful conduct, whether informally or through the EDR Plan, is not only within the scope of employment for FDO employees, but strongly encouraged.  The statements in these complaints plainly relate to the scope of the employment and, as such, are admissible as party admissions under Rule 801(d)(2)(D).

Defendants appear to incorrectly contend that only statements by employees in management pertaining to employment conditions at the FDO are admissible under Rule 801(d)(2)(D)'s hearsay exception.  But there is no categorical rule that an employee must be in management for the exception to be invoked.  Courts have routinely allowed hearsay statements under this exception from non-supervisory employees when the statements relate to the employee's job duties of which the employee has personal knowledge.  *See, e.g.*, *Sutton v. Roth, LLC*, 361 F. App'x 543, 548 (4th Cir. 2010) (line employee at McDonald's could make binding

admissions on employer supporting liability[2]); *Hunter v. Wash. Metro. Area Transit Auth.*, Civil Action No. 18-1494 (CKK), 2022 U.S. Dist. LEXIS 240835, at *20–21 (D.D.C. Mar. 10, 2022) (memorandum of "compliance specialist" working for a transit authority "appears to be exempted from the hearsay definition, because it is a document [she] provided as a WMATA employee, within the scope of her WMATA employment, now offered into evidence against WMATA"); *Majure v. Primland, Ltd.*, No. 4:17-cv-00033, 2018 U.S. Dist. LEXIS 116597, at *18 n.9 (W.D. Va. July 13, 2018) (HR director who "did not have authority to hire or fire" fell within Rule 801(d)(2)(D) exception because her statements that the defendant's managers wanted to hire a man for the position and "would impose unreasonable demands on Plaintiff until she quit" were based on personal knowledge and related to her job duties). And ironically, ███

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████ *See* ECF No. 248-16, at 7 (Ex. P)[3]

██████████████████████████████████████

---

[2] The dissent in *Sutton* makes clear that for purposes Rule 801(d)(2)(D), the relevant inquiry is whether "the statement was made by an agent regarding a matter within the scope of the agency. Indeed, the agent 'need not have the authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority.'" *Id.* at 550 (quoting *United States v. Brothers Constr. Co.*, 219 F.3d 300, 311 (4th Cir. 2000)). Of importance here, the dissent in *Sutton* criticizes the majority's position not because of the lack of evidence regarding any supervisory responsibility, but because the "dearth of evidence" regarding the unidentified employee's area of authority, including whether "[s]he could have been hired to clean the facility, work the cash register, take inventory, etc." *Id.* at 551. The dissent highlights how *Sutton* does not support Defendants' argument. Contrary to the judiciary's encouragement of employees to report workplace misconduct, Defendants apparently view this activity as being less clearly within the scope of the employee's area of authority than the connection in *Sutton* between "work[ing] the cash register" and the employee's statements regarding "properly" draining "chicken sandwiches." *Id.* at 550–51.

[3] Plaintiff has attached Exhibit P as an exhibit to this response.

████████████████████████████████

████████████████████████████████

In this same vein, courts have held that employees' statements about their employer's violations of policies are "'related to a matter' within the scope of their employment." *Vaughan v. Boeing Co.*, 229 F. Supp. 3d 339, 348 n.14 (E.D. Pa. 2017). In *Vaughan*, for example, an African American plaintiff alleging race discrimination was allowed to admit his white coworkers' statements that they worked unauthorized overtime and were not disciplined, in contrast to the plaintiff, who was fired for allegedly taking unauthorized overtime. *Id.* at 348. The court recognized that the coworkers' statements fell within Rule 801(d)(2)(D) because they were made by Boeing's employees and offered against Boeing. *Id.* Moreover, courts have specifically held that statements made pursuant to an employer's sexual harassment policy fall within the exception because "sexual harassment related-matters are within the scope of employment" for those employees. *Cole*, 2008 U.S. Dist. LEXIS 54231, at *15–16.

As demonstrated by this litigation, statements made by current employees about the employer's violations of policy are, if anything, particularly trustworthy because employees making statements against their employer's interests expose themselves to the risk of retaliation and losing their jobs—a powerful disincentive to making those statements. *Cf. La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 n.7 (5th Cir. 2002) (finding records of sexual harassment investigation "trustworthy" because the investigator "surely had an incentive to alter his notes to omit evidence" of the harassment "rather than to accentuate it"); *see* Report of the Federal Judiciary Workplace Conduct Working Group to the Judicial Conference of the United States 12 (2018) ("Working Group Report") ("Victims are hesitant to report harassment and other inappropriate behavior [in the Federal Judiciary] for a variety of reasons, including . . . concerns

6

that a complaint will subject them to retaliatory action or affect future job prospects.").  Indeed, if the Rule 801(d)(2)(D) exception were limited to statements by employees in management positions, the likely result would be unwarranted exclusion of probative and "damaging" admissions against the employer, which is contrary to the rule's purpose.  *Vaughan*, 229 F. Supp. 3d at 348 n.14.

The cases Defendants cite regarding the declarant's involvement in a particular adverse employment action are inapposite here.  Plaintiff is not using the statements as evidence that the declarants had personal knowledge of the reasons why Defendants took adverse personnel actions against Plaintiff.  Rather, she is using the statements as evidence of the employees' own treatment in their job duties by Defender Martinez and other employees in FDO management, including the supervisors' violations of applicable policies.  Those statements are related to "a matter within the scope" of employment.  Fed. R. Evid. 801(d)(2)(D).  Moreover, the record independently supports the conclusion that the employees' statements are related to the scope of their employment, as confirmed by the terms of the EDR Plan.  *Cole*, 2008 U.S. Dist. LEXIS 54231, at \*15–16 (reporting pursuant to "Defendant's sexual harassment policy" "concerned a matter within the scope of [declarant's] employment"); *Vaughan*, 229 F. Supp. 3d at 348 n.14 (employee statements that employer allowed violations of policy were party admissions).  Defendants themselves do not dispute that ███████████████████ were employed by the FDO, and covered by the EDR Plan, when they made these statements.  ECF No. 330, at 10.

Importantly, the purpose of Rule 801(d)(2)(D) was to move away from the traditional "test of agency"—"Was the admission made by the agent acting in the scope of his employment?"  Fed. R. Evid. 801(d)(2)(D) advisory comm. notes.  As the advisory committee notes explain: "Since few principals employ agents for the purpose of making damaging

7

statements, the usual result was exclusion of the statement. Dissatisfaction with this loss of valuable and helpful evidence has been increasing. A substantial trend favors admitting statements related to a matter within the scope of the agency or employment." *Id.* Thus, when the case involves "key allegations" that the employer allowed violations of policy to occur, statements by current employees regarding the employer's violations of the policy fall within Rule 801(d)(2)(D). *Vaughan*, 229 F. Supp. 3d at 348 n.14.

**B. Nonhearsay Purpose of Showing Notice to the Employer**

In addition, all four of the MeToo complaints are admissible for the nonhearsay purpose of showing that Defendants were on notice of a pattern of complaints. A "pattern" of violations is "relevant evidence to proving deliberate indifference." *Basta v. Novant Health Inc.*, 56 F.4th 307, 317 (4th Cir. 2022). When an employer "claim[s] that it maintained effective . . . policies prohibiting racial and sexual harassment," the employee is "entitled to present evidence showing that [the employer] had consistently failed to prevent illegal conduct and to correct it promptly." *Madison v. IBP, Inc.*, 257 F.3d 780, 793–94 (8th Cir. 2001). The employer's duty to take reasonable steps to prevent harassment and stop it from recurring exists regardless of the truth of the matter asserted in the underlying complaints. *See id.* at 796 (explaining relevancy of evidence that the plaintiff "and other employees complained to management on many occasions that their civil rights were being violated, but management did not take reasonable care to investigate or stop such behavior"). As Plaintiff's workplace investigations expert, Vida G. Thomas, explained during her deposition testimony, the truth of a complainant's underlying allegations "don't necessarily go directly to the questions of: How did – how did the Defendants respond to her complaint? How did [the appointed investigator] investigate the complaint? What steps did they take?" ECF No. 339, at 13–14 (quoting Thomas Depo. Tr. at 75)).

8

It is a basic principle that "a statement is not hearsay when the statement is offered to show that the [employer] was on notice of the statement." *Bland v. Fairfax Cty.*, No. 1:10cv1030 (JCC/JFA), 2011 U.S. Dist. LEXIS 47164, at *11 (E.D. Va. May 3, 2011); *see Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 660 (5th Cir. 2002) (holding that testimony about three other complaints of sexual harassment was not hearsay because it was offered to prove that the employer was on notice rather than for the truth of the matter asserted), *abrogation on other grounds recognized by, McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)); *Southerland v. Sycamore Cmty Sch. Dist. Bd. of Educ.*, 125 F. App'x 14, 22 (6th Cir. 2004) (holding that rumor testimony and notes were admissible as non-hearsay because they were not offered to prove the truth of the matters they asserted, but instead were used to show that government "officials had knowledge of the problem").

As the district court explained in *Bland v. Fairfax County*, an employer's notice of prior similar complaints is "highly relevant" to whether the employer should have anticipated further discriminatory conduct. *Bland*, 2011 U.S. Dist. LEXIS 47164, at *44 (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 107 (4th Cir. 1989), *vacated and remanded on other grounds*, 900 F.2d 27 (4th Cir. 1990) ("[A]n employer's knowledge that a male worker has previously harassed female employees other than the plaintiff will often prove highly relevant in deciding whether the employer should have anticipated that the plaintiff too would become a victim of the male employee's harassing conduct."). Further, when other similar complaints are raised after the harassment of the plaintiff, that fact is "[a]lso significant" because a reasonable factfinder could conclude that the "Defendant knew or should have known about the harassment and failed to take effective action to stop it" based on the continued harassment. *Id.* at 44–45. Thus, the MeToo evidence is admissible for the nonhearsay purpose of showing notice to the employer.

## C. Nonhearsay Purpose of Impeachment

The complaints are also admissible for the nonhearsay purpose of impeachment. "[W]hen the impeachment tends to show the witness's untruthfulness, it is not hearsay, as it is not primarily offered to prove the truth of the matter asserted." *Bratt v. Genovese*, 782 F. App'x 959, 967 (11th Cir. 2019). Here, the complaints are admissible for impeachment purposes against FDO supervisors, including Anthony Martinez, J.P. Davis, and William Moormann, who denied in sworn declarations filed in this Court that there were other instances of discriminatory conduct or complaints filed against the FDO. Moreover, Plaintiff is entitled to use extrinsic evidence, *i.e.*, the MeToo complaints, to impeach these individuals' credibility because the evidence is admissible for substantive purposes and does not pertain to a collateral matter.

### 1. Impeachment by Contradiction

The method of impeachment by contradiction is well-established. As one district court explained in summarizing the law in this area:

> Another traditional method of impeachment not explicitly recognized by the Federal Rules of Evidence is impeachment by contradiction. At common law, a witness could be impeached by contradiction, sometimes referred to as "specific contradiction", meaning that the witness' testimony was shown to be incorrect or false, either through the witness' own concession during examination, or through the introduction of extrinsic contradicting evidence, either testimonial, documentary, demonstrative, or real. Weinstein Treatise, at § 607.06[1] ("Impeachment by contradiction or specific error is a well-recognized technique used to bring specific errors in testimony to the attention of the trier of fact."); Wright and Gold Treatise, at § 6096; Graham Treatise, at § 607.8; Mueller and Kirkpatrick Treatise, at § 6.58 (a witness may be impeached by contradiction in several ways: "close questioning" to elicit concessions of errors in testimony during direct; questioning a witness about the substance or implications of evidence already produced during the case to suggest contradictions; confronting the witness with his or her own contradictory prior statements; and calling another witness or introducing other extrinsic contradicting evidence); McCormick Treatise, at § 45.

*Behler v. Hanlon*, 199 F.R.D. 553, 557–58 (D. Md. 2001).

In this case, Defendants filed sworn declarations from Federal Defender Anthony Martinez, Administrative Officer William Moormann, and First Assistant J.P. Davis. *See* ECF Nos. 78-1, 78-2, 78-3; ECF Nos. 245-2, 245-3, 245-4. Defendants have stated that all three individuals are "may call" witnesses at trial. *See* ECF No. 259, at 107–08.

In their sworn declarations, these FDO supervisors made the following statements:

- "I have never witnessed or even heard of any gender-based discrimination, or sexual harassment involving the First Assistant, Plaintiff, or anyone else in my office at any time, other than what I describe above about Plaintiff's reports raised in mid-August, 2018. . . . Had I observed or even heard rumors or speculation about any such conduct, I would have immediately followed all steps to ensure the issues were investigated and handled accordingly. I have never made derogatory comments about Plaintiff or anyone else based on gender (or any other protected category). I have never heard anyone in the FDO-WDNC make any such comments either."

Declaration of Anthony Martinez, ECF No. 245-4, ¶¶ 124–27.

- "I have never witnessed any sexual harassment or discrimination of any kind in our office, nor have I witnessed any retaliation. No employee has ever reported to me, as the human resources contact for the FDO-WDNC or otherwise, any type of harassment, discrimination, or retaliation they have witnessed or experienced in the FDO-WDNC."

Declaration of William Moormann, ECF No. 245-2, ¶ 54.

- "I have never seen nor heard Defender Martinez nor anyone else in the organization speak about women using crude or derogatory language, belittle them, or otherwise treat any employee differently based on their sex. I have not seen nor heard Team Leader

11

Peter Adolf—or anyone else—refer to Black or other clients as "dogs" or use similar terms. While I have heard staff members struggle with understanding that the term "retarded" is no longer culturally appropriate, I have never heard anyone mock clients with disabilities or otherwise belittle disability. I have never experienced any homophobic commentary or attitude from any FDO-WDNC employees, whether in management or otherwise."

Declaration of John Parke Davis, ECF No. 245-3, ¶ 8.

As the MeToo evidence demonstrates, the statement by Defender Martinez that he has never "even heard of gender-based discrimination" aside from Plaintiff's complaint is patently false in light of the other complaints against the FDO. ECF No. 245-4, ¶¶ 124–27. Indeed,



ECF No. 248–16, at 7–11; *see also id.* at 1–5 (

). Moreover,

*See id.* at 14–35. Defender Martinez

████████████████████████████████████████████ *Id.* at 36. ███████

██████████████████████████████████████ when he

swore under penalty of perjury that he had never "even heard rumors or speculation about any

such conduct." ECF No. 245-4, ¶¶ 124–27.

      Similarly, ████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████. ECF No.

248-16, at 52. In their motion *in limine*, Defendants omitted ████████████████

██████████████████████████████████████████████████

████████████████████████████████████ ECF

No. 330, at 10 n.5 (citations omitted). During this litigation, on May 19, 2023, Defender

Martinez filed an updated declaration correcting an error regarding an office chart. ECF No.

218. Yet, Defender Martinez apparently found it unnecessary to update his statement that he had

never "even heard of any gender-based discrimination," No. 245-4, ¶ 124, which was

unequivocally false ████████████████████████████████████████

████████████████████████████████████.

*See* ECF No. 248–16, at 1–5. For similar reasons, Administrative Officer Moormann's statement

that "[n]o employee has ever reported" to him, in his capacity as human resources contact or

otherwise, "any type of harassment, discrimination, or retaliation" is not even plausibly true.

ECF No. 245-2, ¶ 54. In fact, Mr. Moormann was specifically identified ██████████████

████████████████████. *See* ECF No. 248–16, at 3 (████████████████████

13

████████████████████████████████████████████

████████████████████████████████████████ ).

In addition to demonstrating that other complaints of discrimination existed, Plaintiff is entitled to impeach Defender Martinez, Administrative Officer Moormann, and First Assistant Davis on their statements made under penalty of perjury that they never made "derogatory comments" or witnessed harassment, discrimination, or retaliation based on gender or other protected categories, and their denials that other employees engaged in such conduct. Those denials are contradicted by the MeToo evidence, which is admissible for impeachment purposes.

### 2. Use of Extrinsic Evidence for Impeachment

Plaintiff is entitled to use the MeToo evidence for impeachment as extrinsic evidence because it does not involve collateral matters. As the district court in *Behler* explained:

> [T]he rule at common law was that, since impeachment by contradiction frequently involved extrinsic proof, it was limited to non-collateral matters, meaning facts that were independently admissible for some purpose other than purely for impeachment. Weinstein Treatise, at § 607.06[1], [3][a] (contradiction may be proved by examination (having the witness admit mistake) or extrinsic evidence (having another witness testify to contradict), provided that extrinsic evidence must not be collateral)); Mueller and Kirkpatrick Treatise, at § 6.58 (for impeachment by contradiction, extrinsic proof is permitted, provided it is non-collateral); McCormick Treatise, at § 45, 49 (contradiction impeachment may not be accomplished by collateral evidence)). Thus, evidence that impeaches by contradiction, and is not collateral, can be both substantively admissible, as well as admissible for its impeachment value.

*Behler*, 199 F.R.D. at 558.

Here, the MeToo evidence is admissible for substantive purposes, for both nonhearsay purposes and under exceptions to the hearsay rule. Indeed, this Court already denied

Defendants' motion *in limine* on the basis that the evidence is relevant. Accordingly, the MeToo evidence is admissible as extrinsic evidence for impeachment purposes.

### D. Business Records Exception Under Rule 803(6) and Unimpeached Public Records Under Rule 803(8)(A)(iii)

Under Rule 803(6), business records "may be admitted as an exception to the hearsay rule if '[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness.'" *La Day*, 302 F.3d at 481 n.7 (quoting Fed. R. Evid. 803(6)). Courts have recognized that this exception applies to notes and records kept during the course of an investigation into complaints of workplace discrimination. *See id*. Similarly, this Court has also recognized that the records of presiding officers during EDR proceedings may "constitute . . . unimpeached public record[s] pursuant to Fed. R. Evid. 803(8)(A)(iii)." *See* ECF No. 258, at 6. Thus, to the extent that documents in the MeToo complainants' files fall within these exceptions, they are admissible as business records or unimpeached public records. *See, e.g.*, ECF 248-16, at 53–54 (██████

██████████████████████████████████

██████████████████████████████████

██████████████).

### E. Residual Hearsay Exception Under Rule 807

If the Court determines that none of the above grounds for admissibility applies to the MeToo evidence, it should consider whether the MeToo evidence falls under the residual exception to the hearsay rule. *See* Fed. R. Evid. 807.

15

The residual hearsay exception provides that a statement is not excluded by the rule against hearsay, even if not admissible under another exception, if "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." *City of Huntington v. Amerisourcebergen Drug Corp.*, 535 F. Supp. 3d 542, 546–47 (S.D. W. Va. 2021) (quoting Fed. R. Evid. 807). The Fourth Circuit has rejected the approach of "narrowly" construing the residual hearsay exception by "depriv[ing] the jury of probative evidence relevant to the jury's truth-seeking role." *United States v. Clarke*, 2 F.3d 81, 83 (4th Cir. 1993)). Rather, the "rule rejects formal categories in favor of a functional inquiry into trustworthiness, thus permitting the admission of statements that fail the strict requirements of the prior exceptions, but are nonetheless shown to be reliable." *Id.*

In this case, the MeToo evidence is material to the issues in the case and has circumstantial guarantees of trustworthiness. This Court has already recognized that the MeToo evidence is probative of the issues in this case by denying the motion *in limine* on relevancy grounds. In addition, the MeToo complaints have circumstantial guarantees of trustworthiness. As already discussed, at least two of the complaints were filed by employees, ███████████ ███████████ during the scope of their employment and contain statements against the employer's interests, which could expose the employees to retaliation. In addition, a third complainant, ███████████, initiated the EDR complaint process while an employee, which bolsters the trustworthiness of that employee's complaint. Indeed, there is a particular irony to the fact that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

16

████████████████████████ Thus, as to those three complaints, the MeToo evidence is particularly trustworthy because it effectively contains statements against the employees' interests. *Cf. Goode v. United States*, 730 F. Supp. 2d 469, 473 (D. Md. 2010) (evidence is admissible under residual exception "especially where it also satisfied the requirements of the 'statement against interest' exception" (citing *United States v. Workman*, 860 F.2d 140, 144 (4th Cir. 1988)); *La Day*, 302 F.3d 474 at n.7 (explaining that touchstone of hearsay exceptions is "trustworthiness," and that business records with statements against the employer's interest "are trustworthy").

Moreover, all of the MeToo complaints are supported by "evidence . . . corroborating the statement." Fed. R. Evid. 807(a)(1). In fact, the MeToo complaints are remarkably consistent with each other, and with Plaintiff's allegations in the federal complaint filed this case. *See* ECF No. 292-1, at 5–13 (describing similarities in the MeToo evidence). As further important context in evaluating trustworthiness, the Defender was not reappointed by the Fourth Circuit after the MeToo complaints were raised during his term. *See* U.S. Court of Appeals, Federal Public Defender Vacancy Announcement (Aug. 12, 2021), *available at* https://www.ca4.uscourts.gov/docs/pdfs/vacancy-fpd-wdnc-2021.pdf?sfvrsn=6e38bb09_2. The number, similarity, and consistency of the MeToo complaints, as well as the Defender's subsequent non-reappointment, bolsters the statements' trustworthiness under "the totality of circumstances." Fed. R. Evid. 807(a)(2).

Finally, the MeToo evidence "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2). Requiring the MeToo complainants to testify live against Defendants would likely expose them to retaliation and reprisal for their testimony. *Cf. United States v. Carlson*, 547

17

F.2d 1346, 1352 (8th Cir. 1976) (fact that witness "feared reprisals" from testimony supported admission of prior statements under residual clause). The judiciary itself has recognized that employees' concerns about retaliation, and the commensurate "reluctance to report misconduct," warrants "special attention" given the "acute 'power disparit[ies]'" involved in the judiciary. Working Group Report, at 12–13. Recognizing these concerns, this Court granted Plaintiff's request to proceed under a pseudonym because of her legitimate fear of retaliation and reprisal for filing this lawsuit—concerns which have since been borne out. *See* ECF No. 2; ECF No. 104, at 6 (Court's statement that "I fully understand the reason why your client desires to proceed under a pseudonym"). This recognition of judiciary employees' legitimate fear of retaliation is the law of the case that should govern the same issue at a subsequent stage of the proceedings. *See United States v. Moussaoui*, 483 F.3d 220, 232 (4th Cir. 2007) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)).

This concern about potential retaliation against the MeToo complainants is not theoretical because Defendants have repeatedly stated in their public filings that the MeToo allegations are "vigorously disputed" by Defendants. *See* ECF No. 330, at 8; *see also* ECF No. 249, at 22 ("Defendants vigorously dispute the veracity of these unproven allegations."). These statements raise serious concerns about the possibility of retaliation against the MeToo complainants. *See*

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ Importantly, the Defendants in this case include not only the FDO as employer, but also judiciary officials and entities, including officials of the Fourth Circuit Court of Appeals and the Administrative Office of the U.S. Courts, who serve as

or assist the administrators in EDR proceedings and are therefore supposed to be neutral with respect to an employee's complaint. *See, e.g.*, ECF No. 334 (containing caption with current parties as identified by Defendants). There is no objective basis in the record for these neutral officials in the judiciary to state that they "vigorously dispute" the "veracity" of the MeToo complainants' allegations. After all, ████████████████████████████████████

██████████████████████████████. ECF No. 330, at 4–5.

    As to ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████ *Compare* ECF No. 248-16, at 61 ████████████

████████████████████████████████████

████████████████, *with id.* at 27 ████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

████████ Additionally, ████████████████████████████

████████████████████████████████████

████████████████ *Id.* at 26 (████████████████

████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████. *Id.* at 70–72.  The fact that ████████████████████████████

█████████ undercuts any assertion that those allegations were not trustworthy.

The fact that these officials, including high ranking judiciary officials, have taken the position that they "vigorously dispute the veracity" of the MeToo evidence—despite their role as neutral adjudicators in the EDR process—demonstrates a real risk that requiring the MeToo complainants to testify live could further expose them to retaliation in their legal careers, either from judiciary officials or others in the legal community.  In recognizing the "acute 'power disparity' between a life-tenured judge, who is a person of stature and influence, and a law clerk," the judiciary has explained that "[a] judge's rancor may result in embarrassment among peers, tarnish the clerk's professional reputation, and curtail career opportunities."  Working Group Report, at 13.  This same "acute power disparity" exists for the MeToo complainants.  *Id.*  Given the corroboration and circumstantial guarantees of trustworthiness in this evidence, it should be considered under the residual hearsay exception if no other exception applies.

## CONCLUSION

Defendant's hearsay objection should be summarily denied as untimely.  If the Court reaches the merits, it should conclude that the MeToo evidence is not inadmissible hearsay.

This the 24th day of November, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750

20

Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November, 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

22