IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Civil No. 1:20-cv-00066-WGY |
| | ) |
| UNITED STATES, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**PLANTIFF'S MOTION TO ADMIT HER EXPERTS' DEPOSITION DESIGNATIONS PURSUANT TO FED. R. CIV. P. 32(A)(4)(E) IF THE COURT DETERMINES THEIR TESTIMONY IS NOT OTHERWISE ADMISSIBLE**

To prevent Plaintiff from presenting probative expert evidence that will be useful to this Court, Defendants have sought to preclude Plaintiff from relying on her timely disclosed deposition designations for her experts, Ms. Vida G. Thomas and Dr. Gary Albrecht. Notably, the depositions that Defendants are now seeking to exclude from trial ***were taken by Defendants' own counsel, at their request.*** Defendants rely on unsupported hypertechnicalities, even though they did not timely object to the deposition testimony as required under Rule 26. Even though Defendants did not timely object to Plaintiff's use of their depositions, and this Court has stated that it is "eager" to read deposition transcripts in lieu of live testimony, Defendants contend that Plaintiff must pay expert fees to bring her experts to testify live at trial. Defendants must know this is an impossible task for Plaintiff, having themselves ***spent nearly $100,000 in taxpayer dollars on their own experts for this case, so far.*** This Court should reject Defendants' attempt to price Plaintiff out of court and to win by default because they have unlimited government resources to spend on this case, whereas Plaintiff does not. That result is not allowed by the rules of evidence, and it would be fundamentally unjust. Defendants oppose this motion.

1

## LEGAL STANDARD

Rule 32(a)(4)(E) provides the following:

> (4) Unavailable Witness. A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . . on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

## ARGUMENT

**I.    Resort to Rule 32(a)(4)(E) should not even be necessary: the deposition designations are already admissible under Rule 26 because Defendants failed to timely object, and under Rule 32(a)(4)(B) because the witnesses are unavailable.**

In the parties' joint pretrial memorandum filed on July 25, 2023, Plaintiff designated experts Vida G. Thomas and Dr. Gary Albrecht as witnesses who she intends to present at trial by deposition. ECF No. 259, at 116. Plaintiff's disclosure complied with Fed. R. Civ. P 26(a)(3)(A)(ii), which requires the party to provide "the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition."[1] *Id.* Two days later, during the final pretrial conference on July 27, 2023, this Court stressed that it was "eager" to read expert deposition transcripts and to accept expert reports in lieu of live testimony, with the agreement of the parties. ECF No. 262, at 22. When Plaintiff's counsel asked a clarifying question about whether expert deposition designations would be accepted if the trial location were changed *sua sponte*, the Court stated that counsel's concerns may be premature because "*[t]here may not be any objection*" to Plaintiff's deposition designations. *Id.* at 25 (emphasis added).

---

[1] Because the depositions of Ms. Thomas and Dr. Albrecht were taken stenographically, Plaintiff was not required under Rule 26 to designate "the pertinent parts of the deposition." *Id.* Nonetheless, Plaintiff went above and beyond what the rules require by designating the entire transcripts for both Ms. Thomas and Dr. Albrecht as soon as they were available.

The Court's statements were prescient. Following a 45-day stay for mediation, when the trial proceedings resumed, Defendants did not file any objections to Plaintiff's expert deposition designations within 14 days, as required by Fed. R. Civ. P. 26(a)(3)(B). *Id.* ("a party may serve and promptly file . . . any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii)" within "14 days after [the disclosures] are made," and "[a]n objection not so made . . . is waived unless excused by the court for good cause").

Because Defendants did not timely object to Plaintiff's deposition designations or show good cause for their failure to timely object, there is no need to conduct any further inquiry regarding admissibility. Plaintiff's deposition designations are admissible both under Rule 26 *and* this Court's explicit instructions allowing deposition designations by agreement. *See* Entry Order Dated September 19, 2023 ("The Court will, with the agreement of the parties take experts by expert deposition without live testimony."); *see also* ECF No. 262, at 25 (stating that counsel's concerns regarding deposition designations may be premature because "[t]here may not be any objection").

Nevertheless, in an attempt to preclude Plaintiff from presenting evidence in support of the merits of her case based on an unsupported hypertechnicality, Defendants belatedly objected to Plaintiff's deposition designations and moved to exclude them as "hearsay." *See* ECF No. 323, 334. Indeed, Defendants did not even publicly file their objections to this testimony until December 1, 2023, just over one week before the start of trial, and nearly six months after Plaintiff designated the experts' depositions in the joint pretrial memorandum. ECF No. 354. Defendants' extremely belated objections, which were made with no explanation at all, let alone a motion seeking Court permission with a showing of good cause, have severely prejudiced Plaintiff because she was already finalizing her trial preparation based on the deadlines provided

3

by Rule 26(a)(3).  *See, e.g.*, ECF No. 262 at 19 (stating during July 27, 2023 final pretrial conference that factual findings and conclusions of law "may be filed [after final closing arguments], but you should understand that I intend no delay while we wait for a transcript . . . we're going to get busy deciding this case").

Accepting Defendants' extremely belated objections would be severely prejudicial. Specifically, even though the Court explicitly stated—including in a written order—that it would accept deposition designations by agreement, and Defendants did not object as required by Rule 26, the Court would be required to retroactively amend its pretrial order so that it could accept Defendants' late objection and thereby preclude Plaintiff's unobjected-to deposition designation, which the Court had previously stated it was "eager" to accept in lieu of live testimony.  ECF No. 262, at 22.  To accept Defendants' proposed objections, the Court would need to excuse Defendants' failure to comply with the rules without providing any showing of good cause, while at the same time penalizing Plaintiff, who complied with the rules in good faith.  *See, e.g.*, ECF No. 274 at 2 (asserting a vague assumption that is unsupported by the record that the "the Court at the pretrial conference *contemplated*" that the parties would confer regarding deposition designations" (emphasis added)).  Such a distortion of the normal rules of litigation to Defendants' advantage is not allowed under the rules.

In any event, the deposition designations are admissible under Rule 32 because Ms. Thomas and Dr. Albrecht are located more than 100 miles away from the location of the trial proceeding.  *See* Fed. R. Civ. P. 32(a)(4).  Plaintiff did not intentionally procure the unavailability of these witnesses, as she has explained in previous filings.  *See* ECF Nos. 339, 350.  But if this Court were to disagree, and to determine both that it will accept Defendants'

4

untimely objections *and* that Rule 32's plain text does not apply here, then Plaintiff respectfully requests that the deposition designations be admitted pursuant to Fed. R. Civ. P. 32(a)(4)(E).

**II.     Rule 32(a)(4)(E) exists to prevent the situation Defendants are advocating for in attempting to price Plaintiff out of court over an unsupported technicality, in contrast to Defendants' own exorbitant use of taxpayer funds for their own experts.**

Rule 32(a)(4)(E) provides the following:

> (4) Unavailable Witness. A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . . . on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

*Id.* In applying this rule, courts may "look to the expressly written exceptions to Rule 32 for guidance." *Ortiz v. Wal-Mart Stores E., LP*, No. 2:18-cv-461, 2019 U.S. Dist. LEXIS 250702, at *3 (E.D. Va. Apr. 15, 2019). Courts also consider "(1) the preference for live testimony and (2) whether the circumstances are such that allowing the witness to testify by deposition would serve the interest of justice." *Id.* (citing Fed. R. Civ. P. 32(a)(4)(E)).

**A.     Courts have recognized that Rule 32(a)(4)(E) should be applied to prevent pricing individual plaintiffs out of court due to high expert fees.**

Courts "have found that the incredible cost for the live testimony of [an expert] constitutes exceptional circumstances where there is no indication that witness's credibility is at issue and the cost of that [expert's] deposition is considerably less burdensome." *Id.* For example, in *Ortiz*, the court concluded that expert testimony necessary to establish the plaintiff's diagnosis could be presented by deposition, even when none of the exceptions in Rule 32 applied, where the "cost of an expert's live testimony was a minimum of $4,000" and "Plaintiff seeks an award of $780,000 of lost wages, future lost wages, and compensatory damages." *Id.* at 3–4. In allowing presentation of the testimony by deposition, the court stated the following:

5

> The Court recognizes that the extreme cost of litigation can often price an individual plaintiff out of court, particularly where experts or other professionals are necessary witnesses. Considering (1) the preference for live testimony and (2) whether the circumstances are such that allowing the witness to testify by deposition would serve the interest of justice, the need for Dr. Magoon to testify live is minimal since his credibility and the underlying facts to which he would testify appear largely uncontested, and the interest of justice weighs in favor of economic efficiency as bringing Dr. Magoon to trial would unnecessarily saddle Plaintiff with high fees when a deposition is a practical and cost-saving alternative.

*Id.* at 6.

As in *Ortiz*, the "extreme cost of litigation," including presenting two expert witnesses at trial, should not "price [Plaintiff] out of court," because that would be contrary to the interests of justice. *Id.* Plaintiff's experts, Ms. Thomas and Dr. Albrecht, charge $600 per hour and $500 per hour, respectively. Requiring these witnesses to testify live at trial would likely cost thousands, if not tens of thousands, of dollars. Starting with Dr. Albrecht, who charges $500 per hour and applies his rate "door to door," estimating the cost of his trial testimony does not require much speculation. Defendants alone paid Dr. Albrecht $2,050 for a 3.5-hour deposition in his location in Winston-Salem, which required no travel time. Ex. A. Requiring Dr. Albrecht to travel to Asheville and to pay his fee to testify in court would likely double or triple his expert fee, at a minimum. And while Dr. Albrecht's fee would be high, Ms. Thomas's fee to testify live likely would be even more unaffordable, since she would be required to travel from Sacramento, California to provide live testimony.

This financial burden is further complicated by the fact that this is the first time that a federal judiciary employee has been allowed to pursue litigation in federal court to remedy judiciary officials' deliberate indifference to sexual harassment and implementation of a fundamentally unfair process for resolving workplace discrimination claims. *Strickland v.*

6

*United States*, 32 F.4th 311, 321 (4th Cir. 2022). And, the fact that Plaintiff's preliminary injunction motion has been pending since July 2022. ECF No. 125. This Court even recently stated that "there is both a private interest here on the part of Ms. Strickland, as she wants to win this case, and . . . if we get to damages, *her damages are going to be affected by the time that we take to adjudicate it*." ECF No. 267 at 12 (emphasis added).

> **B.** **Defendants' own exorbitant use of taxpayer funds on this case—including *nearly $100,000* in expert fees, alone—highlights the injustice of their unreasonable demand that Plaintiff pay her experts to testify live.**

As an attorney practicing in indigent criminal defense,[2] the fact that Plaintiff has continued her career in public service should not result in denying her day in court simply because she cannot afford to present live testimony of experts in support of her case. That is particularly true because Plaintiff is specifically alleging that she has suffered substantial lost earnings due to Defendants' discriminatory conduct. *Cf. Ortiz*, 2019 U.S. Dist. LEXIS 250702, at *4 (finding expert designation admissible where plaintiff suffered lost earnings "after allegedly being fired by Defendant because of her medical condition"). By contrast, Defendants have the unlimited resources of the federal government at their disposal, which they have gratuitously demonstrated in defending this case.

In fact, according to Defendants' expert discovery, Defendants have allocated up to ***$72,900 in government funds to pay for a single defense expert***, Dr. Paul White. Ex. B. Recently, Defendants increased the ceiling for Dr. White's contract ***by $15,000 for his trial testimony,*** which indicates what Plaintiff may expect to pay for comparable trial testimony from

---

[2] If this Court questions whether Plaintiff could afford to pay tens of thousands in expert fees as an attorney practicing in indigent criminal defense, Plaintiff's lost earnings information was introduced by Defendants during Dr. Albrecht's deposition and will also be introduced at trial.

a single expert witness.  Ex. C.  As for the second expert, Mr. Robert W. Jackson, ***it appears Defendants have paid him at least $24,750***.  Ex. D.  That is so even though Mr. Jackson's report on "vocational rehabilitation," regarding Plaintiff's "employability and earning capacity," is only relevant to a mitigation affirmative defense that is not applicable to this case.  *See, e.g.*, ECF No. 359, at 1 ("There is no dispute that Defendants' Amended Answer does not contain any affirmative defenses.").  In short, ***Defendants have spent nearly $100,000 in federal taxpayer dollars on expert fees, alone,*** in their defense of this lawsuit.  Those fees are in addition to the fees that Defendants paid to take the depositions of Ms. Thomas and Dr. Albrecht, resulting in the deposition testimony that Plaintiff has designated.

These fees provide a reasonable comparison to demonstrate the cost of bringing an expert to court to testify live.  Plaintiff cannot compete with the level of resources to which Defendants have access as officials of the federal government.  Defendants' assertion that Plaintiff may simply "request[] her [experts]' presence at trial and offer[] to pay her expert fee[s]" is not reasonable, realistic, or grounded in facts, as Defendants well know that such an endeavor would likely cost tens of thousands of dollars, having expended that level of resources on their own experts.  ECF No. 323, at 14; ECF No. 334, at 17.  It would be fundamentally unfair to price Plaintiff out of court because she cannot afford to duplicate in live format the testimony of her experts already given by deposition, in comparison to Defendants, who have unlimited resources and have spent nearly $100,000 in taxpayer funds to pay expert fees in defending this case.

**C.    Other factors, including this Court's prior statements that it is "eager" to accept expert deposition designations and reports in lieu of live testimony, favor admission of the deposition testimony.**

Moreover, there are other factors that weigh strongly in favor of allowing admission of the deposition designations here.  First, this Court should consider the fact that the depositions

8

are already admissible under Rules 26 and 32, which should obviate the need to even consider the "exceptional circumstances" provision in the first place. *See Ortiz*, 2019 U.S. Dist. LEXIS 250702, at *3 (courts may "look to the expressly written exceptions to Rule 32 for guidance"). As discussed above, Defendants did not timely object to Plaintiff's deposition designations, which means they have waived any objections under Rule 26. Further, Defendants have provided no basis to excuse their waiver of objections for good cause. *See* Fed. R. Civ. P. 26(a)(3)(B). Additionally, the deposition designations are admissible under Rule 32(a)(4) because the witnesses are more than 100 miles from the courthouse, which makes them unavailable for purposes of the Rule. Courts have explained that "[n]either Rule 32(a)(4)(B) on its face nor the Advisory Committee Notes distinguish between depositions of fact and expert witnesses," and there is "no case establishing a blanket exception to Rule 32(a)(4)(B) for depositions of expert witnesses," *Nichols v. Am. Risk Mgmt., Inc.*, 89 Civ. 2999 (JSM)(AJP), 2000 U.S. Dist. LEXIS 807, at *4 (S.D.N.Y. Jan. 27, 2000).

To exclude the depositions of Ms. Thomas and Dr. Albrecht, this Court would need to exercise its discretion in such a manner to determine that the plain text of Rule 32 should not apply to Plaintiff's expert deposition designations. That result would be highly unjust under the circumstances of this case, particularly since Defendants did not timely object, and this Court has already stated that it will accept expert depositions in lieu of live testimony. *See, e.g.*, ECF No. 262 at 6, 23 (stating during July 27, 2023 final pretrial conference that Plaintiff has "every right to depend upon [the Court] rigorously following the Federal Rules of Evidence" and Civil Procedure regarding the acceptance of "testimony of a witness otherwise available by reading that witness's deposition"). Indeed, it would be especially prejudicial to require Ms. Thomas to testify live regarding a *Daubert*/Rule 702 objection that Defendants did not timely raise. *See,*

9

*e.g.*, *Rybas v. Riverview Hotel Corp.*, Civil Action No. ELH-12-3103, 2015 U.S. Dist. LEXIS 176294, at *14 (D. Md. Jan. 15, 2015) (striking untimely *Daubert* motion filed "without any explanation or showing of good cause for the untimeliness"); Judge William G. Young, USDC Judicial Forum Survey, available at https://www.mad.uscourts.gov/boston/young.htm ("Daubert motions ought to be resolved *before the close of discovery* so a different expert may be substituted if necessary." (emphasis added)).

Second, this case involves a remote bench trial where there is no jury, and this Court already stated at the final pretrial conference that it is "eager" to accept deposition designations in lieu of live testimony. In fact, this Court even stated that it would be willing to read the experts' reports without hearing any testimony from the experts at all, whether live or by deposition designation. ECF No. 262, at 20 ("And again I am open, by agreement, to your resting on the expert reports and not calling the witnesses live and, you know, I'll just evaluate the expert report."). If the Court was willing to accept Plaintiff's experts' reports—to which Defendants did not timely object—then presenting deposition testimony from the experts goes above and beyond that standard.

Third, the deposition testimony at issue here was not even taken by Plaintiff. Rather, the expert depositions were taken by Defendants' counsel, at Defendants' request. Defendants omitted this critical fact when they moved to exclude the transcripts as "hearsay" and complained that admitting the transcripts, in which they vigorously cross-examined Plaintiff's experts, would somehow deprive them of the right to cross-examine Plaintiff's experts. ECF Nos. 323, 334. In fact, Defendants' examination of Ms. Thomas comprises approximately 130 pages of the 166-page transcript, and their examination of Dr. Albrecht comprises approximately 90 pages of the 118-page transcript. Defendants cannot plausibly claim prejudice or unfair

surprise through the admission of deposition testimony that they took, the vast majority of which consists of their own cross-examination of the experts. Nor can Defendants claim that they were deprived of an opportunity to cross-examine Plaintiff's experts, as that contention "flies in the face of unyielding facts." *Fletcher v. Tomlinson*, 895 F.3d 1010, 1019 (8th Cir. 2018). Defendants had ample opportunity to probe the credibility of Plaintiff's experts through their deposition testimony, particularly since this Court has already stated that it is willing to accept deposition designations in lieu of live testimony. And in any event, to the extent there are factual disputes, those disputes pertain to the underlying facts of the case, not Plaintiff's experts' opinions. If Defendants feel they have not had a sufficient opportunity to cross-examine Plaintiff's experts, they are more than capable of using their unlimited resources to pay Plaintiff's experts their fee and bring them into court to cross-examine them live.

Fourth, this Court should account for the fact that Plaintiff's prior legal team intended to bring her experts to testify live at trial with the assistance of a litigation grant they procured on Plaintiff's behalf. Plaintiff no longer has access to this litigation funding following her legal team's unforeseen withdrawal, which took place after the experts were hired. *See* ECF No. 207, 215 (explaining that Plaintiff would be "severely prejudice[d]" by counsel's withdrawal and that Plaintiff's expert costs were "covered by a litigation grant"). This confluence of unforeseen events does not support any inference that Plaintiff intentionally procured her expert's absence at trial. If anything, it suggests that Defendants are unfairly taking advantage of Plaintiff's counsels' withdrawal by attempting to prevent Plaintiff from using deposition testimony that is allowed by Rule 32, based on an unsupported hypertechnicality, when *they did not even timely object* as required under Rule 26. It would be highly unjust to deny Plaintiff her expert

11

deposition designations based on an unsupported hypertechnicality when Defendants themselves did not even timely object as required by the rules.

## CONCLUSION

For these reasons, if the Court determines the depositions are not admissible under Rules 26 and 32(a)(4)(B), it should determine they are admissible based on "exceptional circumstances" under Rule 32(a)(4)(E).

This the 6th day of December, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of December, 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

    Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

    Danielle Young at Danielle.young2@usdoj.gov

    Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

                                                   */s/ Cooper Strickland*
                                                     Cooper Strickland
                                                     N.C. Bar No. 43242
                                                     P.O. Box 92
                                                     Lynn, NC 28750
                                                     Tel. (828) 817-3703
                                                     cooper.strickland@gmail.com