# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

## ASHEVILLE DIVISION

| | | |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil No. 1:20-cv-00066-WGY |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

### PLAINTIFF'S NOTICE OF RESPONSE TO DEFENDANTS' "OPPOSITION TO PLAINTIFF'S ORAL MOTION TO STRIKE TESTIMONY REGARDING CONTINUING RESOLUTION AND LOCALITY PAY 'POLICY'"

Plaintiff Caryn Devins Strickland hereby files this written response to supplement her oral motion to strike Administrative Officer Bill Moormann's testimony regarding a "continuing resolution" as a purported non-discriminatory basis to deny Plaintiff a promotion. Because Defendants never disclosed this defense in discovery or at any time prior to trial, his testimony should be stricken. Moreover, Defendants' response admits that there was not even a continuing resolution in effect at the time of Plaintiff's reclassification, which, at a minimum, renders this belatedly disclosed defense meritless. Similarly, Mr. Moormann's testimony regarding a "locality pay" policy that, again, was never disclosed in discovery, should be stricken.

Plaintiff notes that in their Proposed Findings of Fact, it appears that Defendants do not refer to a continuing budget resolution as a basis to deny a promotion, likely because there is no support for that contention. *See* ECF No. 385. Nevertheless, because Defendants filed a notice of response opposing Plaintiff's motion to strike, and to preserve her objection for appeal, Plaintiff files this notice to supplement her oral motion and respond to Defendants' filing.

1

**I.** **Defendants Did Not Disclose Their "Continuing Resolution Budget" or "Locality Pay" Theories in Discovery, which are Meritless in Any Event.**

**A.** **Defendants were on notice that the denial of promotion was a key allegation in this lawsuit, which they defended by arguing—falsely—that Plaintiff lacked the requisite years of federal service to qualify for a promotion.**

A key allegation in Plaintiff's EDR complaint and subsequent lawsuit, and one that was litigated throughout this proceeding—including through two rounds of summary judgment briefing—is that Plaintiff was discriminated against on the basis of sex, and subjected to retaliation, when Federal Defender Anthony Martinez refused to consider her for a grade-level promotion for which she was eligible on her work anniversary date of August 21, 2018. By refusing even to consider her for the promotion, the Defender facilitated and ratified the First Assistant's *quid pro quo* sexual harassment, including his patently false statement in his May 18, 2018 "Mas Dinero" email that Plaintiff would need "5 more years of fed service" to qualify for the promotion, for which Plaintiff actually would have been eligible in less than four months.

Plaintiff's allegations in this respect are clear. In her complaint, she alleged, for example, as follows: "[Plaintiff] was especially disturbed by the phantom promotion, given that her request for a promotion was a specific triggering event for the First Assistant's quid pro quo email and escalating course of quid pro quo sexual harassment. [Plaintiff] reasonably believed that she was being denied a promotion as part of a continuing course of harassment, retaliation, and discrimination, with Defendants' full knowledge and acquiescence." Complaint ¶ 250; *see also* Complaint ¶¶ 79, 82 (explaining that Plaintiff "told the First Assistant that, at her performance evaluation, she planned to ask for a raise to the equivalent of the next grade on the GS pay scale" and that in response to the First Assistant's email stating that she was "shooting high with a G15," and "[i]n context of the First Assistant's inappropriate interest in her, and his direct references to a request for a promotion," Plaintiff "reasonably interpreted his words as a

2

form of quid pro quo sexual harassment"). Plaintiff was also clear about this allegation during her EDR proceeding, in which she alleged: "My one-year anniversary date has come and gone without a review and no consideration for a raise based on my excellent performance." Tr. Ex. 1, at 7 (ECF No. 248-2, at 7); *see also* Tr. Ex. 3, at 33 (ECF No. 248-2, at 33) ("Ms. Strickland viewed the conversion as a phantom promotion, with no formal progression of job duties, the loss of anticipated pay increase to the next equivalent grade, or step, following an additional year of service, and the loss of her locality adjustment.").

During this litigation, the Federal Defender, the First Assistant, and the Administrative Officer all filed sworn declarations in this Court stating that Plaintiff was not eligible for a promotion to Grade 15 on the pay scale for federal employees because she did not meet the requirements for eligibility. In his declaration, Administrative Officer Bill Moormann stated: "In May of 2018, at the time Plaintiff raised the issue of being promoted to GS-15, the guidelines for promotion to GS-15 stated that 10 years of experience in the federal GS system is required to be eligible for promotion to GS-15. Plaintiff had slightly less than 4 years' federal government employment at that time, about 9 months of which was with the FDO-WDNC." ECF No. 245-2, ¶ 16. In his declaration, Federal Defender Martinez stated: "[T]he maximum I would normally have been permitted to pay Plaintiff under the 'ungraded' AD System was $101,038.00 (which would have included locality pay) per year, resulting in an annual pay decrease of $6,319.00 for the Plaintiff. . . . Without the Red Circle Rule, Plaintiff would have had to take a pay cut to become an AFD. It was <u>not</u> within my discretion to pay Plaintiff a <u>higher</u> amount than what she was making in the GS scale." ECF No. 245-3, ¶¶ 31, 33. And in his declaration, First Assistant J.P. Davis stated: "I was surprised and taken aback by Plaintiff's demands" for a promotion and transition to the AFD position for which she had been hired; nevertheless, he reviewed the salary

3

tables and purportedly "determined that she did not meet the technical requirements for increase to the G15 level she had requested." ECF No. 245-3, ¶ 21.

These statements that Plaintiff was ineligible for a promotion, made in sworn declarations under penalty of perjury, are patently false. In fact, in response to Plaintiff's requests for admission during this litigation, Defendants were forced to admit as follows: "Defendants admit that Plaintiff would have been eligible for a grade-level promotion to FD-15 on or about August 21, 2018 and that all grade-level promotions are awarded at the discretion of the Federal Defender." Tr. Ex. 137 at 9–10 (ECF No. 248-4 at 10–11). It is easy to understand why Defendants were forced to make this admission: Plaintiff's eligibility for Grade 15 is obvious from even a cursory glance at the relevant pay scales, which provide that an employee is eligible for a grade-level promotion after one year of service at the next lowest grade (in this case, Grade 14). *See* Tr. Ex. 138 (DOCS Manual).

Having been forced to make the admission that Plaintiff was, in fact, eligible for a promotion, and faced with the lack of credibility in the sworn statements made by their own witnesses to the contrary, Defendants' witness, Administrative Officer Bill Moormann, apparently chose to take a new approach at trial. In contrast to his sworn declaration, in which he falsely claimed that Plaintiff's years of federal service did not meet the requirements for GS-15, he testified at trial that "no pay raises could occur" because "the FDO was operating under a continuing resolution budget." ECF No. 383, at 2. Contrary to Defendants' assertions in their response, Defendants never previously disclosed a purported "continuing resolution budget" theory as a reason to deny Plaintiff a promotion for which she was eligible—instead, they consistently represented, falsely, that she lacked the requisite years of federal service. Indeed,

4

Federal Defender Martinez continued to testify as such during the trial and, tellingly, never mentioned a pay freeze due to a continuing resolution in his trial testimony.

Ironically, the most significant aspect of Defendants' response is not their failure to disclose the "continuing resolution budget" theory at any prior time during the litigation, in violation of their discovery obligations. Rather, it is the fact that once again, Defendants were forced to admit that the sworn statements of their own witness before this Court were false. *In a footnote*, Defendants admitted that following Mr. Moormann's testimony, "***Defendants' counsel has since learned that the 2018 continuing resolution ended on March 23, 2018***"—that is, five months before Plaintiff became eligible for a grade-level promotion on August 21, 2018. ECF No. 383, at 2 (emphasis added). A continuing resolution was not implemented again until October 1, 2018, nearly two months *after* Plaintiff's reclassification. *See id.* Accordingly, a continuing resolution that ***was not even in effect*** at the time of Plaintiff's reclassification in August 2018 could not have been the basis for the failure to promote Plaintiff. This Court should therefore reject Defendants' "continuing resolution budget" theory because it is facially lacking in merit. Similarly, Defendants' novel "locality pay" theory is lacking in credibility because it does not have a basis in any written policy, which Defendants were forced to admit during the trial. Even if such a policy existed, it would not explain why Defender Martinez requested ***to eliminate*** Plaintiff's locality pay entirely in his August 28, 2018 request for personnel action, in blatant violation of the policies in the DOCS Manual. Tr. Ex. 174.

**B.** **Defendants' failure to comply with their discovery obligations was not substantially justified or harmless.**

If this Court does consider Defendants' evolving theories, it should reject them because Defendants failed to disclose these theories in discovery. If Defendants wished to rely on a "continuing resolution budget" or theoretical "locality pay" policy as an alleged non-

discriminatory basis for their actions, they were required to disclose those theories in discovery—both in their initial disclosures and in response to Plaintiff's discovery requests. Federal Rule of Civil Procedure 26(a) requires a party to provide, *inter alia*, "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Presumably, if a continuing resolution had had such a significant effect on the FDO's budget that it required pay freezes for its employees, one would expect some sort of written guidance to exist that would communicate this significant policy change to FDO staff. But Defendants have not identified a single document disclosed in discovery related to a continuing resolution budget or pay freeze (which, incidentally, further undermines the credibility of this purported theory). *See* ECF No. 383.

Additionally, Plaintiff requested that Defendants disclose in discovery "the basis for any denial of any allegation contained in the civil complaint or the assertion of any defenses, including any affirmative or factual basis, that Defendants have raised or intend to raise in response to the civil complaint." ECF No. 383-1 (Plaintiff's Interrogatory No. 3). Plaintiff's allegation that she was wrongly denied a promotion was not a peripheral allegation in her complaint, but rather was central to her allegations of *quid pro quo* sexual harassment, sex discrimination, and retaliation—as Defendants recognized when their witnesses falsely attempted to refute Plaintiff's eligibility for a promotion in their sworn declarations. Similarly, Plaintiff alleged in her complaint that the Defender "requested to strip her of the locality adjustment to which she was legally entitled as a federal employee," and Defendants denied this allegation in their Answer. Complaint ¶ 246; First Amended Answer (ECF No. 210), ¶ 246.

The fact that Defendants made an inappropriate, blanket objection to Plaintiff's Interrogatory No. 3 does not justify their failure to disclose the information in discovery. Federal Rule Civil Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The burden is on the party facing sanctions to prove that its failure to comply with Rule 26(a) was 'substantially justified or harmless.'" *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013). While a party "may move to compel" disclosures or discovery responses, nothing in the rules requires the party to do so. Fed. R. Civ. P. 37(a)(3)(B); *see also Abraham v. Cty. of Greenville*, 237 F.3d 386, 392 (4th Cir. 2001) (mistrial was properly declared when the defendant "had not been forthcoming in producing relevant documents" and instead asserted "boilerplate objections," when plaintiff did not file a motion to compel); *Samsung Elecs. Co. v. NVIDIA Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) (citing cases for the proposition that "one party's failure to file a motion to compel did not waive the nondisclosing party's obligation to disclose"). Instead, Rule 37 specifically places the burden on the party responsible for responses and disclosures to "provide information or identify a witness" as required by Rule 26(a), and to "supplement an earlier response" as required by Rule 26(e). Fed. R. Civ. P. 37(c)(1).

In addition to the above discovery requests, Plaintiff's Interrogatory No. 15 requested that Defendants provide specific information about Plaintiff's eligibility for a promotion to Grade 15. That interrogatory states the following:

> Interrogatory No. 15: Describe, in detail, whether the pay changes approved in March 2019 for Jared Martin associated with his conversion from an R&W attorney to an AFD in August 2018, *see* Bates No. US 2705, would have also been applicable to Plaintiff at

7

the time of her conversion from an R&W attorney to an AFD and state the resulting pay adjustment that she should have received, and, if disputed, describe, in detail, whether Plaintiff would have been eligible for a grade-level promotion to JSP Grade 15 in August 2018 but for her conversion to an AFD position.

Ex. A. If there had been a "continuing resolution budget" policy or a pay freeze in effect that would have prevented Plaintiff's promotion to Grade 15, Defendants were required to disclose that information in response to Interrogatory No. 15. Defendants failed to do so. Instead, they continued to reiterate that Plaintiff was eligible for the promotion to Grade 15:

> **Objections and Response to Interrogatory No. 15**:
> Subject to and notwithstanding the foregoing general objections, Defendants provide the following response: The pay change approved in March 2019 for Mr. Martin was not directly associated with his conversion from an R&W attorney to an AFD in August 2018. Instead, the pay change was intended to remedy the FDO's determination that Mr. Martin was highly underpaid in relation to other AFDs for his over ten years of experience. Additionally, all pay decisions for AFDs are based on their individual level of professional attorney experience and performance and are not directly applicable to other AFDs. Plaintiff was properly compensated when she was reclassified to an AFD commensurate with her experience level and the AFD pay scale. Plaintiff would have been eligible for a grade-level promotion to FD-15 on or about August 21, 2018, but all grade-level promotions are awarded at the discretion of the Federal Defender.

Ex. A.

In short, Defendants failed to meet their discovery obligation to disclose their reliance on a "continuing resolution budget" or a "locality pay" theory.[1] Defendants also have not met their

---

[1] Defendants contend that Mr. Moormann's declaration provided notice that "the FDO was affected by 'prior Sequestration and uncertain budgets," but their selective quotation of his declaration is misleading. ECF No. 383, at 2. Mr. Moormann's declaration states, "[a]s a result of prior Sequestration and uncertain budgets, th[e] Appellate AFD position was going to be filled as a 'term' position. As a term position, the Appellate AFD position was only for a period of one year and one day." ECF No. 245-2, ¶ 24. In discussing the Appellate AFD position being initially a term position, Mr. Moormann's declaration nowhere states that the entire budget of the FDO was affected by a continuing resolution or that Plaintiff was ineligible for a promotion for

8

burden to show that their failure to disclose the information was not substantially justified or harmless. To the contrary, their failure to disclose this information is plainly unjustified because Defendants' reasons for denying Plaintiff a promotion are central to the allegations of *quid pro quo* sexual harassment, discrimination, and retaliation in this case. Not only did Defendants not disclose this information, but they actively misled Plaintiff to believe that they would be arguing that she was denied a promotion because she was not eligible for it based on her years of service, not because a continuing resolution or pay freeze would have prevented a promotion. *See*, *e.g.*, Answer ¶ 242 ("As to the second sentence, Defendants admit that Plaintiff was not eligible for an increase in salary or job responsibilities at the time and therefore was not considered for such an increase, but otherwise deny the allegations.").

Moreover, Defendants' failure to disclose this information was highly prejudicial because it prevented Plaintiff from exploring the basis for their contentions in discovery. For example, it is a judicially noticeable fact that continuing resolutions are routinely used to fund the federal government; in fact, what is anomalous is the timely passage of appropriations bills. *See* Congressional Research Service, Continuing Resolutions: Overview of Components and Practices (Updated May 16, 2023), *available at* https://crsreports.congress.gov/product/pdf/R/R46595. During years when continuing resolutions were used to fund the federal government, Plaintiff was hired into several different federal government positions and received regular pay increases, including grade-level pay increases. Had Plaintiff been provided notice of Defendants' "continuing resolution budget"

---

that reason. Notably, the Appellate AFD position was not even advertised as a term position, *id.* at 69 (Gov't Ex. A-11a), and the individual hired into that position remains employed by the FDO as an Appellate Assistant Federal Defender to this day. These facts indicate that while the position may have initially been a term position, it was intended to be a permanent position, which further undermines Defendants' purported "continuing resolution budget" theory.

9

theory in discovery, she would have explored whether there was even a continuing resolution in effect during Plaintiff's reclassification (as it turns out, there was not), as well as the effect that any such continuing resolution would have had on the FDO's budget.  For example, did a continuing resolution require a pay freeze?  And is it Defendants' position that no federal employees are eligible for pay increases or promotions during a continuing resolution?  Because of Defendants' failure to disclose this factual defense in discovery, Plaintiff was denied the opportunity to conduct discovery on this issue.  Similarly, Plaintiff was denied the opportunity to explore Defendants' "locality pay" theory, leaving Plaintiff and the Court to simply take the Administrative Officer's word at face value that the required elements of the personnel form, which clearly separates base and locality pay, was not required for AFD positions at that time, even though Defendants have provided no other evidence, other than his convenient trial testimony, to support this position.

## CONCLUSION

Plaintiff's motion to strike Mr. Moormann's testimony regarding defenses that were not disclosed during discovery should be granted.  If the Court does consider the substance of these defenses, they are meritless for the reasons discussed above.

This the 3rd day of January, 2024.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of January, 2024, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

    Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

    Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

    Danielle Young at Danielle.young2@usdoj.gov

    Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com
