UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA (ASHEVILLE)

CARYN DEVINS STRICKLAND, formerly known as Jane Roe,

Plaintiff

vs.

UNITED STATES OF AMERICA, et al,

Defendants.

No. 1:20-CV-0006-WGY

BEFORE THE HONORABLE WILLIAM G. YOUNG
UNITED STATES DISTRICT JUDGE
Zoom Motion Hearing

John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210

December 11, 2023
2:50 p.m.

Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

APPEARANCES:

CARYN STRICKLAND, ESQ.
COOPER J. STRICKLAND, ESQ.
P.O. Box 92
Lynn, NC 28750
(802) 318-0926
caryn.devins@hotmail.com
Pro Se Plaintiff.

JOSHUA MICHAEL KOLSKY, ESQ.
DANIELLE YOUNG, ESQ.
MADELINE McMAHON, ESQ.
DOROTHY CANEVARI, ESQ.
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
(202) 305-7664
joshua.kolsky@usdoj.gov
for the Defendants.

P R O C E E D I N G S

THE CLERK: Now hearing Civil Matter 20-00066, Strickland versus the United States.

THE COURT: The government properly has made a motion at the close of the plaintiff's case. I'll entertain that motion now. I think argument on each side should not exceed ten minutes. I'll hear the government.

MR. KOLSKY: Thank you, your Honor. First, on the due process claim, one of the things the plaintiff must prove is

02:49 that she was led to believe that the federal defender would be final decision-maker for her EER claim. That's according to the Fourth Circuit's opinion in this case, but there is no evidence that Ms. Strickland ever held such a belief. There is no testimony to that effect and no exhibits to show that. So the Court doesn't even have to consider whether such a belief would have been reasonable because there is no evidence that Ms. Strickland had that belief. That's dispositive of the due process claim.

THE COURT: Well, I'm not sure that's right. You

02:49 carefully read the Fourth Circuit's decision, and I must follow that decision scrupulously under the mandate rule, but I read the decision as they gave that as an example where she would have been denied her due process rights, but it seems if you can show, rather, she can show, if she can show that the handling of her complaint apart from negligence was as a

consequence of some intention that her particular complaint be handled differently than that of other similarly situated people, that would violate her due process rights.

Now, if the difference was gender based, then it would not only violate her due process rights, it would violate her right to equal protection, which is a violation of the due process.

So I could agree with you and nevertheless deny this motion, at least I think I could. Correct me if I'm wrong.

02:51 MR. KOLSKY: Your Honor, I read the Fourth Circuit's opinion as defining a particular type of due process claim that could go forward, and the Fourth Circuit I think was clear about the requirements of that claim, that Ms. Strickland had to show that the federal defender was not disqualified from the proceeding and that she was led to believe that he would be the final decision-maker in her case. I don't see anything in the Fourth Circuit's opinion to suggest that Ms. Strickland was to come up with other types of due process violations during the course of the litigation and present new theories at the trial.

02:52 THE COURT: I understand that's your position. All right. Go ahead.

MR. KOLSKY: Now, on the equal protection claim, the evidence does not show deliberate indifference. In particular, there is no evidence of any discriminatory intent by Tony Martinez. For instance, there is no evidence that Mr. Martinez

treated Ms. Strickland differently than male employees.

THE COURT: Wait a minute. You're arguing it -- I grant you this is jury waived. So now, unlike summary judgment, I'm not leaning against the proponent of evidence, nor am I adopting it. At this juncture of the trial, I may ask that if it's -- in my own mind, if I'm not persuaded of either or both of these claims, then what I should do is allow the trial to take its normal course until I have all the evidence, but you're arguing it, or you just were, with the conclusory 02:53 there is no evidence, but that's not so.

There is evidence. There's the evidence of the investigator calling him biased. There's evidence of the actual result of the investigation, which I've already said would warrant a finding in favor of Ms. Strickland. I have to say that that evidence hasn't lost its probative weight. It's before me now in these agreed upon exhibits. It seems to me, I'm not telling you I'm going to do it in the least, but it would warrant a finding of liability on gender-based discrimination.

02:54 Go ahead.

MR. KOLSKY: I could speak to those points.

THE COURT: Please. I haven't made up my mind. I'm trying to get your best argument.

MR. KOLSKY: The findings that -- I believe your Honor referenced the findings of the investigation. Those findings

were that the evidence did not show retaliation by Mr. Martinez, and it referred to Mr. Martinez's good faith. So we would argue that that investigation does not support any finding of a discriminatory intent.

With regard to the letter of counseling with, which has been incorrectly referred to as letter of reprimand, that letter of counseling also does not reflect any finding of wrongful conduct. It referenced the wrongful conduct standard, but it did not make any finding of wrongful conduct. In fact, 02:55 it quoted the investigator's determination that Mr. Martinez had acted in good faith, which is, of course, inconsistent with any inference of discriminatory intent.

So I don't think those pieces of evidence help plaintiff in this case. There is evidence in what plaintiff has submitted. I'm showing that Mr. Martinez separated Ms. Strickland in July of 2018. That's at page 173 of Mr. Martinez's deposition destinations. In the supplement, which the plaintiff has submitted as an exhibit, shows that Mr. Martinez authorized her to telework in August 2018, which 02:55 she requested, and her request is attached as an exhibit to that mediation supplement.

So the evidence shows that Mr. Martinez took agency after he received a report from Ms. Strickland of sexual harassment. So we think that there would not be a basis to find any discriminatory intent based on, certainly not based on

what Ms. Strickland has presented in her case.

The evidence is also insufficient to show that there was sexual harassment. There is evidence of a few emails offering to get a drink with Ms. Strickland, offering her a ride home, or suggesting an increase in salary if Ms. Strickland remained employed in the office. That's my understanding of what the evidence on sexual harassment is, but the evidence does not support a finding that the conduct wasn't warranted, that it was based on plaintiff's gender and was not severe or pervasive. And I'm not aware of any cases to have found sexual harassment existed on evidence such that the plaintiff presented here.

02:57

The evidence also fails under the quid pro quo theory of harassment, number one, because there was no quid pro quo request. Moreover, plaintiff cannot establish a causal link between what she mistakenly believes was a quid pro quo request and any tangible employment action, and that is a requirement under the quid pro quo theory of sexual harassment that needs to be a causal link. Ms. Strickland has not presented evidence that Mr. Davis was even involved in any tangible employment action regarding her after these issues arose.

02:57

Finally, your Honor, there is not evidence that would support a remedy in this case. Ms. Strickland is seeking front pay in lieu of reinstatement. Front pay requires -- front pay is awarded for lost compensation. So Ms. Strickland would have

to show that she was constructively terminated, which means she has to present evidence that her working conditions when she left the Federal Defenders' Office in March of 2019, that those working conditions were intolerable and a reasonable person in her position would have been compelled to resign. The evidence does not show that.

She was teleworking since August of 2018. She has not presented any evidence that she was even in contact with Mr. Davis in March of 2019, much less that her working conditions were intolerable. So she cannot prove a constructive termination, and that means she cannot recover front pay and, therefore, there is no remedy available to her.

For that reason and the other reasons I've described, the Court should enter judgment in favor of the defendants.

THE COURT: Thank you. Either one for Ms. Strickland may argue. Which one will argue?

MS. STRICKLAND: I will argue, your Honor.

THE COURT: Very well. I'll hear you.

MS. STRICKLAND: Thank you, your Honor.

As I understand the arguments that the defendants are making, it sounds like they are essentially repeating all of the same arguments that they made at the summary judgment phase. Those arguments failed then and they should fail now for the same reasons.

THE COURT: Wait a minute. With perhaps one

exception. It's this business about was there a reasonable belief that Mr. Martinez was the decision-maker in the dispute resolution process.

Now, I am bound by what the Fourth Circuit said, and one of the things they unequivocally said is that, if that were a reasonable belief, then that would violate your rights to due process. Counsel now has ably argued that, on the evidentiary record at the moment that you rested, there is not sufficient evidence that would warrant such I finding. He says that sweeps the board clear, that particular claim. I question that, but it does resonate with me that I don't see here the evidence where it was reasonable for you to believe.

And we're just looking at the documentary evidence at the moment you rested. We're not looking at what has happened this morning in receipt of evidence and these various tape recordings that I'm going to have to -- they're evidence now and I'm going to have to listen to them. So put those aside. But he makes that argument and I think there's something to that argument.

So would you focus on that?

MS. STRICKLAND: Yes, your Honor. I'd be happy to focus on that.

First of all, I think you aptly identified that there are two separate issues going on here. I read the Fourth Circuit decision the same way that you do, which was that they

identified one route to establish a due process violation but, of course, would not be exclusive of all other routes to establish a due process claim.

And, more broadly, what the Fourth Circuit was describing was a violation of the EDR plan, that the EDR establishes property rights. So when there is a severe deviation in a way that the EDR plan is applied by the officials who are responsible for administering the EDR process, then that is a due process violation regardless of the particular theory that they identified on this complaint.

So I think you had identified at the November 16 further pretrial conference and, of course, it was in opening statements and in our proposed findings, an email that is admissible as an omission by a party opponent, among other bases, I would imagine, that these officials knew that the defender was so biased he would do more damage if he was allowed to participate in this process and that the investigation had found that disciplinary action needed to be taken against him, and yet he was not disqualified. He was allowed to continue representing the office in proceeding.

So that's a particular summary of that due process claim.

On the reasonable belief about the decision-maker, there is evidence in our proposed findings. There are exhibits to which we understand there are no objections by either party.

In fact, the recordings and the transcripts establish the same things. I know they cherry picked certain statements today, but there was never any aspect of this claim that had to do with whether a judge would be the final presiding over or whether that would be the defender. That is just a complete mischaracterization of the claim. The claim was always whether there would be remedies as a practical matter during a final hearing.

And we have not only the recordings but the deposition testimony of Jill Langley where she did -- she said that she had sent this email saying she was very concerned to me about whether there would be adequate remedies in a final hearing. And she testified at her deposition that she explained that she didn't know what would happen if the defender chose not to comply with an EDR order and that she didn't understand or know the mechanics of how EDR remedies could be enforceable.

Now, this is somebody who is speaking as the Judicial Integrity Officer representing the judiciary as a resource for guidance of judiciary employees. And so much of the evidence at the time established my contemporaneous understanding that if somebody is going to make statements like that who is a national resource on behalf of the entire judiciary, then it would be reasonable to believe that it would be very questionable whether remedies would be enforced following a final hearing.

So that's the basis for the due process claim.

The discrimination claim I think was covered in this Court's summary judgment decision, that clearly we have put forward enough evidence on the defender's alleged deliberate indifference motivated by gender-based discriminatory intent through the letter reprimand, which is an unimpeached public record. The fact that disciplinary action was taken, and that is said not only in the letter but in the Circuit Executive's memorandum to the Chief Judge saying that the investigation found that disciplinary action needs to be taken, I would also mention that Chapter 9 of the EDR plan that existed at the time didn't have any other basis in it for which disciplinary action could be taken except for a finding of wrongful conduct as defined with regard to standard employment laws, Title 7, intentional sex discrimination, sexual harassment, those type of bases. There was no other basis for disciplinary action. I think that the evidence, which is in our proposed findings and conclusions of law as it stands, show the one issue about remedy that they brought up was the constructive discharge.

I mean, I think it shows not only that there was discriminatory intent but that there was a continuing series of official and unofficial employment actions that resulted in the constructive discharge. The only question in that constructive discharge is not about J.P. Davis as a first assistant. You look at the totality of the circumstances. The idea that the

effects of this harassment were not continuing is just contradicted by the record.

Just to read from this decision, the defender facilitated and ratified the first assistant's quid pro quo harassment by diminishing plaintiff's job duties and refusing to consider her for the grade-level promotion that was the subject of the first assistant's email for which she was eligible on her work anniversary date.

The defendant admitted I was eligible for that promotion that I did not receive. And all of these things are cited in the summary judgment ruling, as well as our proposed findings in the conclusions of law are admissions by a party opponent. These are just documents that show at the time what was happening and what was going on.

So I'm happy to answer any questions that the Court has about the remedy issue in particular or any other questions.

THE COURT: Thank you. The matter has been argued on both sides. The Court rules as follows: In part, the Judiciary's motion is allowed, and that is that on all this evidence as I believe it to be at the close of the plaintiff's case, there is no basis for concluding that the plaintiff reasonably believed that the decision-maker in her employment discrimination dispute would be anyone other than an independent judicial officer. There simply is no reason, no

basis to draw that conclusion.

In all other respects, the motion is denied. It is within the Court's discretion to go on until the case is over, but more than that, it does seem to this Court that justice would be aided by hearing the case in full.

So that's the ruling of the Court. We will recess now until 9 a.m. We seemed to have worked out the bugs in the electronics. Until 9 a.m. on Wednesday morning, we'll stand in recess.

03:09 MR. KOLSKY: Your Honor, can I just ask a procedural question?

THE COURT: Yes.

MR. KOLSKY: We had scheduled -- we have two expert witnesses and we had scheduled them for Friday. That was based on our understanding that we would have the trial on Friday.

THE COURT: I can't sit on Friday. We'll take them Monday or Tuesday or whenever.

MR. KOLSKY: I understand. We have contacted them to check on their availability. One of them is available only on 03:09 the 14th. Depending on how the trial goes, that might be out of order. We wanted to see if we could call them potentially out of order.

THE COURT: Yes. You can call witnesses out of order. Yes. Absolutely.

MR. KOLSKY: The other expert is only available on

Monday by video. We wanted to see if it would be possible to call him by video.

THE COURT: If everyone agrees, and I see no reason not to. All right. We'll recess.

THE CLERK: All rise.

(Adjourned, 3:10 p.m.)

C E R T I F I C A T E



    UNITED STATES DISTRICT COURT )

    DISTRICT OF MASSACHUSETTS    )



            I, Kristin M. Kelley, certify that the foregoing is a
    correct transcript from the record of proceedings taken
    December 11, 2023 in the above-entitled matter to the best of
    my skill and ability.



        /s/ Kristin M. Kelley                    March 25, 2024
        Kristin M. Kelley, RPR, CRR              Date
        Official Court Reporter