# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| In re CARYN DEVINS STRICKLAND, | ) ) ) | No. 2024-_____ |
| Petitioner. | ) ) | [No. 1:20-cv-00066] |
| _____ | ) | |

## PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................. 1

STATEMENT OF FACTS ................................................................ 3

    A.    For Nearly Two Years, the District Court Refuses to
           Rule on Plaintiff's PI Motion........................................... 3

          1.    The district court imposes an "unfair" and
                  "inappropriate" choice of requiring Plaintiff to
                  proceed to an expedited trial without discovery
                  or forgo her PI motion ........................................... 3

          2.    Following trial *a year and a half* after Plaintiff's
                  PI motion was filed, the district court has
                  continued to delay and even erroneously stated
                  that Plaintiff is "not now seeking a [PI]." ............. 5

    B.    The District Court's Own Repeated Statements About
           the Strength of Plaintiff's Evidence Demonstrate
           that She Has Shown a Likelihood of Success on the
           Merits ............................................................................. 9

REASONS WHY THE WRIT SHOULD ISSUE ............................. 14

I.    The District Court Is Clearly And Indisputably Wrong
    To Refuse To Rule on Plaintiff's PI Motion For Nearly
    Two Years ............................................................................. 14

II.    The District Court's Repeated Statements About The
    Strength of Plaintiff's Case Show That She Is Entitled
    To A PI ................................................................................. 20

III.    This Court Has Several Options To Remedy The
    District Court's Clear and Indisputable Violation of
    Plaintiff's Rights ................................................................. 23

i

CONCLUSION ...................................................................... 26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

ii

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Abbott v. Perez,*
    138 S. Ct. 2305 (2018) ...................................................... 17

*Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.,*
    571 F. App'x 250 (4th Cir. 2014) ....................................... 25

*Cedar Coal Co. v. United Mine Workers,*
    560 F.2d 1153 (4th Cir. 1977) ................................. 15, 16, 24

*Cheney v. United States Dist. Court,*
    542 U.S. 367 (2004) ............................................................ 14

*Gellman v. Maryland,*
    538 F.2d 603 (4th Cir. 1976) ................................................ 5

*Henry v. Greenville Airport Comm'n,*
    284 F.2d 631 (4th Cir. 1960) .............................................. 21

*In re A & H Transp., Inc.,*
    319 F.2d 69 (4th Cir. 1963) ................................................ 23

*In re Fort Worth Chamber of Commerce, No. 24-10266,*
    2024 U.S. App. LEXIS 8336 (5th Cir. Apr. 5, 2024) ......... 15, 16, 24

*In re Hicks,*
    118 F. App'x 778 (4th Cir. 2005) ....................................... 24

*In re Hicks,*
    279 F. App'x 236 (4th Cir. 2008) (unpub. per curiam) ..... 24

*In re Strickland,*
    87 F.4th 257 (4th Cir. 2023) ............................................ 4, 7

*Int'l Bhd. of Teamsters, etc. v. Ward,*
    501 F.2d 456 (4th Cir. 1974) .............................................. 23

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't,*
    2 F.4th 330 (4th Cir. 2021) (en banc) ......................... 20, 23

*League of Women Voters of N.C. v. North Carolina,*
    769 F.3d 224 (4th Cir. 2014) ............................... 13, 20, 21

iii

*Lewis v. Bloomsburg Mills, Inc.*,
608 F.2d 971 (4th Cir. 1979) ............................................................ 24

*Madden v. Myers*,
102 F.3d 74 (3d Cir. 1996) ........................................................ 24, 25

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*,
915 F.3d 197 (4th Cir. 2019) ..................................................... 3, 21

*Mt. Graham Red Squirrel v. Madigan*,
954 F.2d 1441 (9th Cir. 1992) ............................................................ 16

*Nwaubani v. Grossman*,
806 F.3d 677 (1st Cir. 2015) ....................................................... 4, 5

*Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*,
463 F.2d 1055 (7th Cir.1972) ............................................................ 5

*Rolo v. Gen. Dev. Corp.*,
949 F.2d 695 (3d Cir. 1991) ............................................................ 16

*Rosario-Urdaz v. Rivera-Hernandez*,
350 F.3d 219 (1st Cir. 2003) ......................................... 3, 18, 21, 22

*Strickland v. United States*,
32 F.4th 311 (4th Cir. 2022) ............................................................ 3

*United States v. Lynd*,
301 F.2d 818 (5th Cir. 1962) ............................................................ 16

*United States v. Texas*,
144 S. Ct. 797 (2024) ........................................................... 15, 18

**Statutes and Rules**

28 U.S.C. § 1292 ................................................................ 15, 16, 24

28 U.S.C. § 1657 ................................................................. 2, 14, 20

Fed. R. Civ. P. 40 ................................................................... 2, 14

Fed. R. Civ. P. 52 ....................................................................... 25

Fed. R. Civ. P. 65 .............................................................. *passim*

iv

Fed. R. Evid. 801 ............................................. 12, 21

Fed. R. Evid. 803 ......................................... 10, 12, 21

# INTRODUCTION

This case involves a former assistant federal public defender's claims that judiciary officials were deliberately indifferent to sexual harassment and subjected her to a fundamentally unfair process for resolving her claims of workplace discrimination. The evidence in this case includes findings by the Fourth Circuit's Chief Judge that First Assistant J.P. Davis, Plaintiff's supervisor, "proposed an unsavory quid pro quo" and Federal Public Defender Anthony Martinez responded to her complaints by (a) using an "inappropriate" and "ill-advised" metaphor comparing the First Assistant's relationship with Plaintiff to a "marriage" and ordering her to "compromise"; (b) "call[ing] out" Plaintiff for seeking "advice and guidance" on her legal rights; (c) making "callous," "minimizing," and "insensitive" remarks, including words to the effect that "at least you weren't touched"; and (d) "shifting responsibility" by failing to accept blame. ECF No. 387, at 3. The record also includes text messages from the First Assistant stating that Plaintiff needed to "***get slapped***" and "***smacked a bunch***," and allegations that the Defender used "crude language" about women, including by referring to a female Assistant United States Attorney as a "***fucking bitch.***" ECF No. 387, ¶ 28e; Tr. 12/18/23, ECF No. 402, at 95–97; Tr. 12/14/23, ECF No. 401, at 159 (Plaintiff's proffer); *see infra*, at 8 n.1. Moreover, even though the Investigator found that the Defender was "biased" against Plaintiff and "could cause more

damage if he were involved in the process," Defendants refused to disqualify him. ECF No. 387, at 4–6. In defense of this conduct, Defendants assert that Plaintiff "experienced sexual harassment only in her mind." Tr. 1/4/24, ECF No. 398, at 4.

The basic facts of this case are straightforward. Yet, the district court has delayed ruling on Plaintiff's motion for a preliminary injunction ("PI") for *nearly two years* since it was filed in July 2022. *See* ECF No. 125. *Trial on the merits* was held more than four months ago, in December 2023, but the district court still has not ruled on the PI motion or entered final judgment.

In fact, during closing arguments, when Plaintiff renewed her request for a PI, the district court even "correct[ed]" Plaintiff and stated that "***[y]ou're not now seeking a preliminary injunction. You're seeking an injunction, and I will take that under advisement.***" Tr. 1/4/24, ECF No. 398, at 39 (emphasis added). The district court's statements misrepresent the law and indicate that, following years of delay, the district court has disregarded Plaintiff's PI motion. These actions blatantly violate statutes and rules that require district courts to expedite a decision on preliminary relief, including during a "consolidated" trial. *See* U.S.C. § 1657(a); Fed. R. Civ. P. 40, 65(a). While the irreparable harm caused by the district court's continued delay cannot be undone, this Court must intervene to prevent any further injustice.

# STATEMENT OF FACTS

**A.** **For Nearly Two Years, the District Court Refuses to Rule on Plaintiff's PI Motion.**

**1.** **The district court imposes an "unfair" and "inappropriate" choice of requiring Plaintiff to proceed to an expedited trial without discovery or forgo her PI motion.**

In April 2022, this Court reversed the district court's order dismissing Plaintiff's case in its entirety. *Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022). The Court limited her recovery to prospective equitable relief and held that she cannot recover back pay. *Id.* at 366, 36–71. Following remand to the district court, in July 2022, Plaintiff moved for a PI, since she cannot recover back pay during this litigation. ECF No. 125. It is "nose-on-the-face plain" that the unavailability of back pay is "irreparable harm." *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003); *see also Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019) ("unrecoverable" monetary losses are "irreparable injury justifying preliminary relief").

In September 2022, the district court "collapse[d]" Plaintiff's PI motion with trial on the merits, which previously had been scheduled for a full year later, in September 2023. Entry Order Dated September 15, 2022. The district court ordered that Plaintiff must proceed to a "trial on the merits" within "a week, two weeks," without any discovery, or else forgo her right to a PI until the trial

3

previously scheduled for September 2023. ECF No. 149, at 4, 7. It did so over Plaintiff's repeated objections that she was being subjected to an unfair and coercive "Hobson's choice" by being required either to proceed to an expedited trial on the merits without discovery or else forgo a PI. *See* Add. 4–133.

This Court even expressly recognized that the district court "advised Strickland that she had the choice of proceeding, without discovery, to a consolidated trial/hearing within a relatively short period of time or, alternatively, proceeding with discovery and then having a consolidated trial/hearing in September 2023." *In re Strickland*, 87 F.4th 257, 259 (4th Cir. 2023). The district court's imposition of this "choice" was unlawful. Indeed, the district court judge previously has been admonished by his home circuit for engaging in precisely this "unfair[]" and "inappropriate[]" conduct. *Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015). In *Nwaubani*, the First Circuit stated as follows:

> [W]e are troubled that the district court, in consolidating the preliminary injunction hearing with a trial on the merits may have unfairly put [the plaintiff] (over his objection) in a position where he was forced to forego a ruling on his interlocutory request for injunctive relief in order to conduct adequate discovery to prepare for a trial on the merits. . . .
>
> As Judge (later Justice) Stevens, writing for the Seventh Circuit, has observed, "[a]t times, particularly if the parties consent, if discovery has been concluded or if it is manifest that there is no occasion for discovery, consolidation may serve the interests of justice," but "[a] litigant applying for a preliminary injunction should seldom be required either

4

to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial." *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972). We are concerned that the district court may have inappropriately used Rule 65(a)(2) to impose such a Hobson's choice here.

*Id.* In addition to being the subject of admonishment by the district court's home circuit, the district court's actions violate longstanding Fourth Circuit precedent disavowing this type of Hobson's choice and holding that ordering a consolidated trial without any discovery "comes perilously close to a violation of due process." *Gellman v. Maryland*, 538 F.2d 603, 604, 606 (4th Cir. 1976). They also violate the Federal Rules of Civil Procedure, which provide that "[t]he fact that the proceedings have been consolidated *should cause no delay in the disposition of the application for the [PI]*, . . . [in fact,] to consolidate the proceedings *will tend to expedite the final disposition of the action*." Fed. R. Civ. P. 65(a)(2), Notes of Advisory Comm. on Rules, 1966 amend. (emphasis added)).

> **2. Following trial *a year and a half* after Plaintiff's PI motion was filed, the district court has continued to delay and even erroneously stated that Plaintiff is "not now seeking a [PI]."**

Following its order "collaps[ing]" the PI with trial on the merits, the district court did not hold the trial until December 2023, nearly a year and a half after the PI motion was filed. *See* ECF Nos. 398–403. Now, four months later, in April

2024, the district court still has not issued either a ruling on Plaintiff's July 2022 request for preliminary relief or a final judgment following trial.

Trial was originally scheduled to conclude by December 18, 2023. Tr. 11/16/23, ECF No. 405, at 4. During the trial, however, the court stated that it would order closing arguments "early in the new year," that is, in 2024, to "give me the opportunity, which I have not completed, of reading all – going through all the exhibits and reading all the depositions and making determinations as to the designations which are in dispute." Tr. 12/18/23, ECF No. 402, at 155. Previously, the court had assured the parties that it would review this evidence *before* any witness testimony had begun. *See* Tr. 7/27/23, ECF No. 262, at 22 (court "will have read" the depositions before trial); Tr. 11/16/23, ECF No. 305, at 20 (court would review evidence "prior to" testimony). The court also stated that "once final arguments have been held," it would ask the parties "whether you want me to stay my hand in preparing my findings and rulings for any period of time so that you can discuss settlement." Tr. 12/19/23, ECF No. 403, at 71. The court stated that "if you don't [agree to discuss settlement], I'll get to work on preparing them just as soon as the final arguments are over." *Id.* at 72.

Thereafter, closing argument was held on January 4, 2024. ECF No. 398. Following the arguments, the district court asked whether the parties would "agree" for the court to "stay my hand so you can talk among yourselves for a brief

period" about settlement. Tr. 1/4/24, ECF No. 398, at 39. Plaintiff responded that "[w]e don't believe that further settlement discussions would be productive at this point," in part, to avoid any further delay in the district court's ruling. *Id.*; *cf. Strickland*, 87 F.4th at 261 (denying Plaintiff's prior mandamus petition, in part, because Plaintiff had participated in court-ordered mediation).

During closing argument, when Plaintiff again renewed her PI motion, the district court also stated, "[o]ne correction, Ms. Strickland. ***You're not now seeking a preliminary injunction. You're seeking an injunction, and I will take that under advisement.***" ECF No. 398, at 39 (emphasis added). Like the district court's "Hobson's choice" order, which unfairly required Plaintiff to forgo her procedural rights or else forgo a PI ruling, the district court's statement that she "was no longer seeking a [PI]" once trial was over contradicts Federal Rule of Civil Procedure 65. In fact, Rule 65 specifically provides that consolidation of a PI motion with trial "*should cause no delay*" in ruling on a PI motion:

> The fact that the proceedings have been consolidated *should cause no delay* in the disposition of the application for the preliminary injunction, for the evidence will be directed in the first instance to that relief, and the preliminary injunction, if justified by the proof, *may be issued in the course of the consolidated proceedings.*

Fed. R. Civ. P. 65, Notes of Advisory Comm. on Rules, 1966 Amend. (emphasis added). Nowhere does this rule state that a district court can render a PI motion moot by delaying the trial and then concluding that the plaintiff is "not now

7

seeking a [PI]" because the trial is over, thus allowing the court to evade a PI motion without ruling and to delay a final judgment even further. ECF No. 398, at 39. To the contrary, the rule expressly provides otherwise: it states that consolidation "*should cause no delay* in the disposition of the application for the [PI]," and a PI "*may be issued in the course of the consolidated proceedings.*"

In the interim, on March 4, 2024, *two full months* after closing arguments, the district court's courtroom deputy emailed the parties inquiring about a "final exhibit list" and requesting "electronic copies of all exhibits," which had already been provided to the court electronically and by a courtesy hardcopy before trial. *See* ECF No. 405, at 22. Then, on March 21, 2024, more than three months after the trial had concluded, the district court issued an order to "tie up some evidentiary loose ends" that, previously, it had told the parties it would resolve between the close of evidence and closing arguments in January 2024.[1] ECF No.

---

[1] This order still did not resolve all outstanding evidentiary issues. For example, the district court has not ruled on whether it will admit the testimony of Plaintiff's workplace investigations expert, Vida G. Thomas, who concluded that Defendants' response to Plaintiff's complaint "fell below well-accepted HR practices." *See* ECF 339-1, 2. Similarly, though the district court excluded Plaintiff's evidence of other EDR complaints entirely—which include allegations that Defender Martinez used "crude language regarding women and members of the LGBTQIA+ community," including by referring to a female Assistant United States Attorney as a "fucking bitch," and that First Assistant Davis used "sexual hand gestures"— the court has not ruled on whether Plaintiff may file her offer of proof regarding other EDR complaints publicly or under seal. The court's failure to do so has prevented Plaintiff from filing those materials as part of the record for appellate review. *See* ECF No. 410.

404, at 1.  Now, it is April 2024, and more than four months have passed since this five-day bench trial (consisting of half days) without a ruling.

Even as the district court has continued to delay, it also has repeatedly recognized the importance of ruling promptly on Plaintiff's PI motion, including during trial if necessary.  Indeed, during an October 2022 hearing—more than a year and a half ago—in which it affirmed its order consolidating the trial, the district court stated, "[i]f we go along in the hearing and I come to a belief at the end of the liability hearing that *an immediate injunctive remedy is required, I won't hesitate to grant it.*"  Tr. 10/31/2022, ECF No. 171, at 36 (emphasis added). These statements starkly contrast with the district court's January 4, 2024 statements, well over a year later, that "[Y]ou're not now seeking a preliminary injunction.  You're seeking an injunction."  ECF No. 398, at 39.  Similarly, during a hearing in June 2023, almost a full year ago now, the district court recognized that "there is both a private interest here on the part of Ms. Strickland, as she wants to win this case, and . . . if we get to damages, her damages are going to be affected by the time that we take to adjudicate it."  Tr. 6/21/23, ECF No. 267, at 12.

### B. The District Court's Own Repeated Statements About the Strength of Plaintiff's Evidence Demonstrate that She Has Shown a Likelihood of Success on the Merits.

The district court has repeatedly recognized that the facts of this case are "generally undisputed."  Tr. 11/16/23, ECF No. 405, at 10–11.  Indeed, while the

9

parties submitted many exhibits for the Court's review, the basic facts of this case can be understood based on a small handful of documents, which the district court itself has repeatedly identified. *See, e.g.*, ECF No. 387, at 1–7.

For example, in its summary judgment opinion issued in July 2023, a full year after Plaintiff's PI motion was filed in July 2022, the district court summarized the "undisputed evidence" regarding the Defender's deliberate indifference to his First Assistant's sexual harassment. ECF No. 258, at 5–7. Among this evidence, the district court explained that the Fourth Circuit's Chief Judge had issued a "letter of reprimand" against Defender Martinez as a result of the wrongful conduct investigation into Plaintiff's allegations under Chapter IX of the EDR Plan. *Id.* at 6. As the district court explained, "[t]he factual findings in this letter constitute an unimpeached public record pursuant to Fed. R. Evid. 803(8)(A)(iii)." *Id.* The court concluded that "[t]he underlying facts" supporting Plaintiff's discrimination claim "appear to be undisputed." *Id.* at 7.

By "letter of reprimand," the district court's opinion refers to a letter dated May 28, 2019, which was delivered by the Circuit Executive on behalf of the Chief Judge. The letter explained that the First Assistant had subjected Plaintiff "to unwanted advances . . . , unreasonably interfered with her work assignments, and even proposed an ***unsavory quid pro quo proposal*** on her request for a promotion

Case 1:20-cv-00066-WGY   Document 411-1   Filed 04/23/24   Page 16 of 167

and raise." ECF No. 387, at 3 (emphasis added). The letter also makes the following findings against the Defender:

- **"Marriage Metaphor"**: "After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a 'marriage,' with the parties needing to 'compromise' and 'meet in the middle.' Ms. Strickland said that she was 'shocked' and 'offended' at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a 'marriage.' The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her."

- **"No Physical Touching"**: "Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, 'at least you weren't touched,' or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt."

- **"Disapproval of Seeking Outside Advice"**: "Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee. The investigator found that you had 'called out' Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office."

- **"Shifting Responsibility"**: "Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with. Ms. Strickland reported that she felt 'offended' by your protest, which she

11

> perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office. This, the investigator concluded, contributed to your mishandling of the matter."

*Id.*

During the "further final pretrial conference" in November 2023, the district court similarly remarked that "the plaintiff points out various factual matters which, as near as I can see, are generally undisputed and constitute admissible evidence and, . . . if I draw inferences in favor of the plaintiff, result in a liability finding." Tr. 11/16/23, ECF No. 406, at 10–11. The court explained that the "letter of reprimand" for the Defender is "a government report under [Rule] 803(8)" and "an admission" under Rule 801(d)(2)(D). *Id.* at 11.

During that hearing, the court also referenced "the e-mail in which the investigator . . . does draw the conclusion that [Defender] Martinez was biased," and stated that the email "may well be powerful evidence" and is "an admission by the Judiciary." *Id.* The email to which the court is referring is an exchange dated January 13, 2019, when, based on the Investigator's recommendation that the Defender be disciplined, the EDR Coordinator asked her whether the Defender should be disqualified from Plaintiff's EDR proceeding. Her answer was an emphatic yes:

12

> On Jan 13, 2019, at 5:53 PM, Heather Beam <Heather_Beam@ncwp.uscourts.gov> wrote:
>
> Hey James,
>
> I truly believe Tony is biased in this case involving JP and Caryn as far as the sexual harassment is concerned. From my conversations with him I know he feels Caryn is attempting to exploit this situation to get the transfer to Asheville, however it has created a bias in him to look at this case from a neutral perspective. I also believe he lacks the experience and understanding of exactly how this process works. I am concerned he could cause more damage if he were involved in the process at this point.
>
> Caryn had requested Tony be disqualified as she felt she was retaliated against after she submitted her claim of Wrongful Conduct. Although retaliation in my investigation was unfounded, I still think in a good faith effort to resolve this the circuit should consider disqualifying him based on the contentious nature of the current situation. I would strongly recommend mediation at this point with perhaps one of the individuals we discussed the other day.
~

ECF No. 387, at 6.  Despite the Investigator's findings that the Defender was "biased" against Plaintiff and "could cause more damage if he were involved in the process at this point," the Chief Judge denied Plaintiff's disqualification request without explanation.  *Id.* at 4–6.

During the trial, the court again repeated that the "evidence of the investigator calling [the Defender] biased" and the "actual result of the investigation . . . would warrant a finding in favor of Ms. Strickland."  Tr. 12/11/23, ECF No. 406, at 5.  Given that a plaintiff seeking a PI "need not show a certainty of success," and "undisputed evidence" favoring the plaintiff's claims will justify a PI, the district court's continued failure to rule on Plaintiff's PI motion more than four months after trial, and nearly two years after the PI motion was filed, violates binding precedent.  *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246–47 (4th Cir. 2014) (citation omitted).

## REASONS WHY THE WRIT SHOULD ISSUE

A writ of mandamus requires a showing that the petitioner has a "clear and indisputable" right to relief, there is no other adequate remedy, and issuance of the writ "is appropriate under the circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004). "These hurdles, however demanding, are not insuperable," and the circumstances here meet this showing. *Id.*

## I. The District Court Is Clearly And Indisputably Wrong To Refuse To Rule On Plaintiff's PI Motion For Nearly Two Years.

The district court's delay in ruling on Plaintiff's PI motion is now approaching *two years*. This delay violates rules, statutes, and Supreme Court precedents requiring that a district "shall expedite" the decision of a PI motion. *See* 28 U.S.C. § 1657(a) ("[T]he court *shall expedite* the consideration of . . . any action for temporary or preliminary injunctive relief." (emphasis added)); Fed. R. Civ. P. 40 ("[T]he court *must* give priority to actions entitled to priority by a federal statute.") (emphasis added)). The district court's extreme delay establishes not only a clear and indisputable right to relief, but also that mandamus is warranted because there is no other adequate remedy, since the district court has continued in its refusal to rule on the PI. Indeed, the district court's statement that Plaintiff is "not now seeking a PI" since trial is over demonstrates that the district court has disregarded Plaintiff's PI motion entirely, and, on its own, is sufficient to demonstrate clear and indisputable error. ECF No. 398, at 39. Moreover, this

14

erroneous statement confirms that the district court has refused to grant the PI and could be alternatively construed as a denial of the PI, particularly in light of the court's continued delay. *See* 28 U.S.C. § 1292(a).

Issuance of the writ also would be appropriate. In fact, a Supreme Court justice recently expressed concern at "the risk" that a lower court could use its "docket-management authority" to avoid deciding the merits of an appeal involving a PI even for *four weeks*. *Cf. United States v. Texas*, 144 S. Ct. 797, 798–99 (2024) (Barrett, J., concurring). While that decision involved a stay pending appeal rather than the merits of the underlying PI motion, it illustrates that the nearly two-year delay at issue here is an extreme outlier, unsupported by rules, statutes, or precedents, warranting intervention by a higher court. *See id.* at 800 (stating that "[t]he time may come" when a court "is forced to conclude" that a lower court has effectively avoided review using administrative procedures and to "review [the court's ruling] accordingly").

Courts have recognized that "a motion for preliminary injunctive relief 'must be granted *promptly* to be effective,' so if a district court does not timely rule on a [PI] motion, it can effectively deny the motion." *In re Fort Worth Chamber of Commerce*, No. 24-10266, 2024 U.S. App. LEXIS 8336, at *7 (5th Cir. Apr. 5, 2024) (quoting 16 Charles Allen Wright & Arthur Miller, Federal Practice & Procedure § 3924.1 (3d ed.)); *see also Cedar Coal Co. v. United Mine Workers*,

15

560 F.2d 1153, 1161 (4th Cir. 1977); *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449–50 (9th Cir. 1992); *Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 703 (3d Cir. 1991); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962). Noting that delays of three, four, and eight months have been recognized as an effective denial of a PI, the Fifth Circuit recently observed that "simply sitting on a [PI] motion for too long can effectively deny it." *In re Fort Worth*, 2024 U.S. App. LEXIS 8336, at *7, n.12. That is true even if the district court takes other actions in the case, but simply does not rule on the PI motion. *See id.* (holding that PI motion was effectively denied when court "chose to give its attention" to other motions in the case). Here, the district court's delay of nearly two years in ruling on the PI motion, even as this case has progressed *past trial on the merits*, far exceeds any of these delays, and is an effective denial of the PI motion, regardless of the district court's attempt to characterize the denial as a "consolidation" order.

Indeed, a rational observer could conclude that, despite repeatedly recognizing the strength of Plaintiff's claims, the district court has unilaterally decided, without the opportunity for statutorily authorized appellate review, that she is not entitled to any preliminary relief. *But see* 28 U.S.C. § 1292(a) (orders "refusing" injunctions are appealable). But instead of issuing a ruling to this effect and allowing the appellate review process to take its ordinary course, the district court has chosen to "consolidate" the proceeding in order to avoid any appellate

16

review of a ruling adverse to Plaintiff. The Supreme Court has strongly repudiated this tactic of district courts' "manipulation" of proceedings "'to shield [their] orders from appellate review' by avoiding the label 'injunction,'" and for good reason. *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (citation omitted). Otherwise, a district court that wished to rule against the plaintiff could "consolidate" the proceeding to avoid appellate review of a PI denial before trial. That approach is prohibited by Rule 65 and does violence to the rule of law.

Moreover, even if there could be any justification for the delay of a year and a half between the filing of Plaintiff's PI motion in July 2022 and the "consolidated" trial in December 2023, there is no justification for the district court's continued post-trial delay. The delay of two months, for example, before even requesting a final exhibit list and copies of exhibits that had already been provided prior to trial, raises an appearance to a reasonable person that despite Plaintiff's clear statement that she did not wish to delay a ruling to pursue settlement, the district court chose to delay in resolving the case anyway. That is especially so because the district court even told Plaintiff that "[y]ou're not now seeking a preliminary injunction" since the trial is over, which is a blatant misstatement of the law. *See* Fed. R. Civ. P. 65, Notes of Advisory Comm. on Rules, 1966 Amend.

The district court itself has recognized that Plaintiff is suffering irreparable harm each day that passes without a ruling on her PI motion. *See* ECF No. 267, at 12 ("[T]here is both a private interest here on the part of Ms. Strickland, as she wants to win this case, and . . . if we get to damages, her damages are going to be affected by the time that we take to adjudicate it."). It is "nose-on-the-face plain" that the loss of wages while a plaintiff "is contesting her ouster" constitutes "irreparable harm." *Rosario-Urdaz*, 350 F.3d at 222. "Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists." *Id.*

The district court's extreme delay raises the perception to a reasonable observer that Plaintiff is being treated differently from other litigants. Put simply, it is difficult to imagine that a nearly two-year delay in ruling on a PI motion would be tolerated for any other litigant. *Cf. Texas*, 144 S. Ct. at 798–99 (Barrett, J., concurring) (in context of stay pending appeal, expressing concern at "the risk" that a court will use its "docket-management authority" to "avoid *Nken* for too long"). Such a delay of not days or months, but *years*, in deciding a request for preliminary relief—particularly if Plaintiff must pursue a further appeal after the district court rules on the merits—has eroded the possibility of meaningful relief after final judgment.

In short, the district court's extreme delay raises reasonable concerns that the district court has refused to rule on Plaintiff's PI motion because it has, in fact, *denied* the PI motion (which is the natural result of a refusal to rule for nearly two years) but also seeks to avoid any appellate review of the issue whether Plaintiff is likely to succeed on the merits of her claims. Indeed, in a filing in this Court in December 2022—nearly a year and a half ago—Plaintiff explained that the district court's statements in open court "presuppose[] that [the court] is *denying* the PI" but is "insulating [its] decision from interlocutory appeal":

> Tellingly, Judge Young stated, "what you want is a hearing and then you can appeal that and then we'll have the trial. That's not helpful." He continued, "of course you have the right" to a pretrial evidentiary hearing, but revealingly said, "if I did that, then you're on to the Court of Appeals with respect to that. I don't propose to do it twice." These statements unmistakably confess his intent to obstruct her right to appeal. Indeed, Judge Young's statement that Strickland will be "on to the Court of Appeals" after a pretrial hearing presupposes that he is *denying* the PI—the only reason she would appeal. By his own words, Judge Young prefers instead to prevent Strickland from going "on to the Court of Appeals" by masking his refusal of a PI as a "consolidation" and thus insulating his decision from interlocutory appeal. This is unlawful.

Add. 43–44 (citations omitted). The district court's continued delay in ruling on the PI motion provides similar indications of how the court may rule on the merits, while also unlawfully insulating its PI denial from appellate review. After all, if the court intended to *grant* relief in favor of Plaintiff in its final decision, one

19

would reasonably expect the court to "expedite" its decision as required by statutes, 28 U.S.C. § 1657(a), and rules, *see* Fed. R. Civ. P. 65, in order to prevent the irreparable harm the district court itself has recognized will be caused by any further delay. *See* ECF No. 171, at 36; ECF No. 267, at 12. That is particularly true because a PI "may be issued in the course of the consolidated proceedings." Fed. R. Civ. P. 65, Notes of Advisory Comm. on Rules, 1966 Amend.

## II. The District Court's Repeated Statements About The Strength Of Plaintiff's Case Show That She Is Entitled To A PI.

To obtain a preliminary injunction, "a plaintiff must establish that 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm absent preliminary relief; 3) the balance of the equities favors relief; and 4) the relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). "While plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits, they need not show a certainty of success." *League of Women Voters*, 769 F.3d at 247 (internal quotation marks and citation omitted).

Here, the district court's own repeated statements demonstrate that Plaintiff has proven a likelihood of success on the merits of her claims of deliberate indifference to sexual harassment and a fundamentally unfair process for resolving her workplace discrimination complaints. The district court has recognized that the "[t]he factual findings" in the Chief Judge's "letter of reprimand" "constitute

20

an unimpeached public record pursuant to Fed. R. Evid. 803(8)(A)(iii)," as well as "an admission" under Fed. R. Evid. 801(d)(2)(D). ECF No. 258, at 5–7; ECF No. 405, at 10–11. The district court has also stated that "the e-mail in which the investigator . . . does draw the conclusion that [Defender] Martinez was biased . . . may well be powerful evidence" and "an admission by the Judiciary." ECF No. 405, at 11. The district court has made repeated statements that the facts are "generally undisputed," "[t]he underlying facts" supporting Plaintiff's discrimination claim "appear to be undisputed," and the "evidence of the investigator calling [the Defender] biased" and the "actual result of the investigation . . . would warrant a finding in favor of Ms. Strickland." ECF No. 258, at 5–7; ECF No. 405, at 10–11; ECF No. 406, at 5. Such "undisputed evidence" favoring the plaintiff's claims will justify a PI. *League of Women Voters*, 769 F.3d at 246–47 (citation omitted); *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right.").

The district court has also repeatedly recognized that Plaintiff is being subjected to irreparable harm due to the unavailability of back pay. *See Mountain Valley Pipeline*, 915 F.3d at 218 ("unrecoverable" monetary losses qualify as "irreparable injury justifying preliminary relief"); *Rosario-Urdaz*, 350 F.3d at 222

(it is "nose-on-the-face plain" that the unavailability of back pay is "irreparable harm").  Indeed, the district court recognized in October 2022 that if "an immediate injunctive remedy is required, I won't hesitate to grant it," ECF No. 171, at 36, statements which it contradicted over a year later, in January 2024, when it stated, "[Y]ou're not now seeking a [PI].  You're seeking an injunction." ECF No. 398, at 39.  Similarly, the district court recognized in June 2023, nearly a year after the PI motion was filed, that "if we get to damages, her damages are going to be affected by the time that we take to adjudicate it."  ECF No. 267, at 12.

This irreparable harm can be quantified.  Indeed, both parties' experts testified regarding estimates of the potential lost salary and benefits Plaintiff is accruing.  *See* ECF No. 387, at 346–398, 467–474.  That is because there is no position in indigent criminal defense, Plaintiff's calling, that provides comparable compensation to the one she held at the Federal Defender Office.  The district court has stated that, based on Plaintiff's continued pursuit of this "important, socially beneficent work" in indigent criminal defense, she does not have a duty to mitigate these lost earnings by seeking higher-paying employment outside of her chosen field.  ECF No. 398, at 17.  Moreover, Defendants have not raised any affirmative defenses to Plaintiff's front pay claim.  *See* ECF No. 387, at 470–71; *see also* ECF No. 210; ECF No. 259, at 99.

Irreparable harm is established not only because back pay is unavailable in this litigation—which would not be the case for any other employee challenging workplace discrimination under the nation's civil rights laws—but also because "the irreparable harm factor is satisfied" when "there is a likely constitutional violation." *Leaders of a Beautiful Struggle*, 2 F.4th 330 at 346.

The balance of equities likewise weighs in favor of issuing an injunction against Defendants' ongoing violations of Plaintiff's constitutional rights. *Id.* ("[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.").  And the public interest favors Plaintiff, because it "is well-established that the public interest favors protecting constitutional rights." *Id.*

## III. This Court Has Several Options To Remedy The District Court's Clear And Indisputable Violation Of Plaintiff's Rights.

While the irreparable harm caused by the district court's nearly two-year delay likely can never be remedied, this Court has several options to ensure that this unlawful delay does not continue. *Cf. Int'l Bhd. of Teamsters, etc. v. Ward*, 501 F.2d 456, 458 (4th Cir. 1974) (issuing "a writ of mandamus" ordering the district court to "hear and decide" the motion to dissolve a PI); *In re A & H Transp., Inc.*, 319 F.2d 69, 70 (4th Cir. 1963) (reviewing "an unappealable order" by treating the appeal notice "as a petition for a writ of mandamus").

23

*First,* this Court may construe the district court's continued refusal to grant the PI, including its statement that Plaintiff is "not now seeking a PI," as an order "refusing" a PI that is immediately appealable under Section 1292(a).  *See Cedar Coal Co.*, 560 F.2d 1153 at 1161 (court's granting of "indefinite continuance" fifteen days after PI motion was filed "amounted to the refusing of an injunction and is appealable"); *In re Fort Worth*, 2024 U.S. App. LEXIS 8336, at *7 ("simply sitting on a [PI] motion for too long can effectively deny it").  The Fourth Circuit has explained that "[i]n determining whether or not an order is appealable under § 1292(a)(1), the courts do not look to the terminology of the order but to its substantial effect."  *Lewis v. Bloomsburg Mills, Inc.*, 608 F.2d 971, 973 (4th Cir. 1979).  Because the "substantial effect" of the district court's nearly two-year delay in ruling on Plaintiff's PI motion is a refusal of the PI, this Court may review the PI refusal as an appealable order.

*Second*, the Court may order the district court to promptly rule on the merits of the case.  The Fourth Circuit, in accordance with other courts, has recognized that when a district court acts with "substantial delay" in addressing a case that is entitled to statutory priority, mandamus relief is appropriate.  *In re Hicks*, 279 F. App'x 236, 236 (4th Cir. 2008) (unpub. per curiam); *see also In re Hicks*, 118 F. App'x 778, 778 (4th Cir. 2005); *Madden v. Myers*, 102 F.3d 74, 78 (3d Cir. 1996) ("Mandamus petitions provide an avenue for dealing with the situation . . . where

24

cases have been unduly delayed in the district court.").  An appellate court may issue a writ of mandamus based on a court's "undue delay," or, "without actually issuing a writ, may order a district court not to defer adjudicating a case." *Madden*, 102 F.3d at 79.

*Lastly*, the Court may remand with instructions for the district court to rule on Plaintiff's PI motion, if a final judgment continues to be delayed.  The district court's refusal to rule on the PI motion for nearly two years, without providing any analysis of the "findings and conclusions that support its action," supports this approach.  *Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*, 571 F. App'x 250, 252 (4th Cir. 2014) (quoting Fed. R. Civ. P. 52(a)(2)).

Given the district court's continued delay, failure to intervene would only further entrench the injustice of the judicial exceptionalism created by the judiciary's exemption from Title VII and other civil rights laws.  It has been five years since Plaintiff was constructively discharged due to a fundamentally unfair and discriminatory EDR process.  Plaintiff cannot obtain back pay, unlike any other employee covered by civil rights laws, and yet she also has been denied the basic procedural right to have her PI motion decided for nearly two years, as required by rules, statutes, and precedents.  This conduct is highly unjust and undermines the rule of law.

**CONCLUSION**

Plaintiff has demonstrated a clear and indisputable right to relief, that she has no other adequate remedy, and issuance of the writ would be appropriate.

This the 23rd day of April, 2024.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I, Cooper Strickland, hereby certify that on this 23rd day of April, 2024, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system.  Service on counsel for all parties in the district court will be accomplished by notice filed through the district court's CM/ECF system attaching a copy of this filing, as well as by email to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

/s/ Cooper Strickland
Cooper Strickland

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains less than 7,800 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland

## ADDENDUM TABLE OF CONTENTS

Excerpt from Transcript of Closing Arguments .......................... Add. 1

Prior Filings .................................................................. Add. 4

clerkship, and that is relevant to the remedy component of this.

I do think that the issues about front pay have been extensively briefed, so I won't say too much about that, except I don't believe there is a lot of difference between the two front pay experts, and even their expert seems to acknowledge that a substantial front pay award is warranted in this case. And we would submit that the award of six years of front pay plus lost pension benefits amounting to $692,881, plus an appropriate tax (Unclear), is the absolute floor of what the record supports in this case because that number comes from defendants' own expert. But really Dr. Albert's testimony establishes that the amount should be much higher, but whatever the Court awards, it should award an amount that appropriately accounts for the long-term career damage here.

So in closing, I would like to renew our prior motions to admit exhibits and deposition designations. I renew the motion for preliminary injunction relief. I also object to defendants' reliance in their conclusions of law on the alleged after-acquired-evidence defense that was not pleaded or disclosed in discovery. And I would note that if this was a proper part of the trial, we would have put on evidence that JP Davis disclosed thousands of pages of unredacted client information to an employee at the Probation Office, but those documents are in the record and they are subject to judicial notice. And I also renew my objection to defendants' untimely

1  exhibit and deposition designations.  Thank you.

2      THE COURT:  Thank you.  Well, I thank you all, and my

3  thanks is sincere.  The matter is now before the Court, the

4  responsibility to rule on these matters.

5      One correction, Ms. Strickland.  You're not now

6  seeking a preliminary injunction.  You're seeking an injunction,

7  and I will take that under advisement.

8      I said I would ask this at the close of the arguments

9  and I do.  It's this, and I do this routinely in jury-waived

11:03 10  cases:  If there is any hope of you people getting together and

11  resolving the case, now that we are at an end, save only for

12  the decision at the trial level, I will respect that and stay

13  my hand until some date that you agree to.  On the other hand,

14  there has been discussion throughout this about delay, and I'm

15  prepared to begin working on this matter at once.  But I do

16  want to ask if you would like me to stay my hand so you can

17  talk among yourselves for a brief period.  You both have to

18  agree.

19      We'll start with the plaintiff.  Do you want me to

11:04 20  start or stay my hand for some reasonable period, Ms. Strickland?

21      MS. STRICKLAND:  Thank you, your Honor.  Thank you for

22  making that offer.  We don't believe that further settlement

23  discussions would be productive at this point.

24      THE COURT:  Very well.  You both have to agree and one

25  does not.  I will get to work with all reasonable speed, given

1    my other obligations.

2         My thanks to counsel is genuine.  At least in the

3    trial of this case, all counsel -- and I speak to both Mr. and

4    Mrs. Strickland and I speak to counsel for the Judiciary --

5    conducted themselves both appropriately and forcefully.  This

6    is how a case ought to be tried, and I have been privileged to

7    be the judge who's had the obligation and chance to preside

8    over it.  Thank you.  We'll stand in recess.

9         THE CLERK:  All rise.

11:05 10         (Adjourned, 11:05 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Add 4

No. 22-1963

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

UNITED STATES, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

# PLAINTIFF-APPELLANT'S MOTION
# FOR EMERGENCY INJUNCTION PENDING APPEAL

Following this Court's ruling in favor of Plaintiff-Appellant Caryn Devins

Strickland, *see Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022), this

case has gone off the rails on remand before Judge William Young in the district

court.   The proceeding below has been marred by severe irregularities, including the

district court's failure to admit Strickland's chosen counsel to represent her in the

proceeding for nearly three months, which continues to this day.   The severe

irregularities culminated in a hearing on Strickland's motion for preliminary

injunction, on September 8, 2022, with Strickland being forced to proceed without

her choice of counsel, over her objection.   Without any notice, Judge Young

suddenly announced that he would "consolidate" her preliminary injunction hearing

1

Add 5

with trial on the merits, which had previously been scheduled for a year later, in September 2023, to allow adequate time for discovery. Judge Young then explicitly imposed on Strickland a Hobson's choice: either go to trial on an expedited basis, within weeks, without discovery, or else forgo the possibility of preliminary relief. In so ordering, Judge Young flagrantly disregarded the evidentiary standards that apply to preliminary injunction motions, as well as the significant, unrebutted evidence that Strickland presented in favor of her motion. Further, Judge Young "unfairly" and "inappropriately" used Rule 65(a) to coerce Strickland to forgo discovery. *Nwaubani v. Grossman*, 806 F.3d 677, 681 n.7 (1st Cir. 2015). Judge Young has been admonished by the First Circuit, his home circuit, for engaging in this conduct in the past. *See id.*

Based on the overwhelming showing Strickland has made, she is entitled to immediate injunctive relief in the form of her ongoing lost earnings. This Court held that Strickland's request for front pay in lieu of reinstatement is a request for an "equitable remedy" that is not barred by sovereign immunity. *Strickland*, 32 F.4th at 366. Because front pay is a form of prospective equitable relief that is available upon final judgment in this case, her lost earnings are available at the preliminary injunction stage. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) ("[A] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." (citation omitted)).

2

Add 6

And because this Court held that an award of back pay in this action would be barred by sovereign immunity, *see Strickland*, 32 F.4th at 369–71, Strickland cannot recover her ongoing lost earnings without an order of prospective injunctive relief, *see Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (sovereign immunity bars a "retroactive award of monetary relief").  The district court's refusal to grant the preliminary injunction is thus causing Strickland ongoing irreparable harm in the form of lost earnings she may never recover.  Strickland should not be denied the immediate relief to which she is entitled simply because the district court disregarded binding legal standards and imposed an unfair and coercive procedure on her.

This motion is made in this Court in the first instance because "moving first in the district court would be impracticable."  Fed. R. App. P. 8(a)(1)–(2).  Strickland has been severely prejudiced by the irregularities in the proceeding below, including the district court's ongoing failure to act on her pending motions for *pro hac vice* admission of Jeannie Suk Gersen, ECF No. 115 (June 21, 2022), and Philip Andonian, ECF No. 128 (August 2, 2022), and its further failure to act on her motion to clarify whether it will allow her choice of counsel, Professor Gersen and Mr. Andonian, to appear on her behalf in the proceeding, ECF No. 130 (August 8, 2022).[1]  Indeed, even as the district court refused to rule on these motions, it still

---

[1] All references to ECF numbers are to the district court docket.  The district court filings relevant to this motion are attached as Exhibit A.

3

Add 7

forced her to proceed to the preliminary injunction hearing without the participation

of her chosen counsel, over her objection.  *See* ECF No. 140 (notice of waiver of

hearing).  Because of the ongoing uncertainty over whether Strickland's chosen

counsel will be allowed to represent her in the proceedings below, it is untenable for

Strickland to seek emergency relief before the district court in the first instance.

Appellees have stated that they oppose this motion.

      1.    This case involves alleged constitutional violations by officials in the

federal judiciary.  On April 26, 2022, this Court held that Strickland's due process

claim alleging that Defendants subjected her to a fundamentally unfair Employment

Dispute Resolution ("EDR") process and her equal protection claim alleging that

Defendants subjected her to sex discrimination, including deliberate indifference to

sexual harassment, were "sufficient to survive the motions to dismiss."  *Strickland*,

32 F.4th at 321.  The Court provided guidance on the factual showing needed to

prove Strickland's claims.  *Id.* at 355–36 (due process); *id.* at 358–60 (equal

protection).  The Court limited her recovery to prospective equitable relief, and it

held that she could not recover back pay.  *Id.* at 369–71.

      2.    Following issuance of the mandate on June 21, 2022, Strickland

promptly pursued dispositive motions against Defendants.  That day, Strickland

moved for leave to file a supplemental memorandum in support of her motion for

summary judgment.  ECF No. 116.  Strickland's motion for summary judgment,

4

Add 8

which was timely filed on August 17, 2020 in accordance with the court's pretrial order of May 11, 2020, and which Defendants opposed on October 2, 2020, remained pending before the district court following this Court's ruling, and was fully briefed and ripe for decision.  ECF No. 60 (motion); ECF No. 78 (response); ECF No. 93 (reply); *see also* Entry Order Dated May 11, 2020 (setting a summary judgment motions deadline of October 1, 2020); ECF No. 34, at 4 (parties' stipulation to summary judgment motions deadline).  In her supplemental memorandum, Strickland explained that in light of this Court's specific guidance, no reasonable factfinder could find in favor of Defendants on the due process and equal protection claims.  ECF No. 116-1, at 5–12.  Because Defendants had not asserted that discovery was needed to oppose Strickland's claims, there was no reason to delay deciding her motion.  *See* Fed. R. Civ. P. 56(d).  Moreover, because Defendants had failed to provide their initial disclosures or participate in discovery during the authorized period, they were automatically barred from putting on any evidence to support their case.  *See* Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 56(e).  On July 5, 2022, Strickland moved for default judgment against Defendants on the basis that they repeatedly failed to comply with the district court's May 11, 2020 pretrial order and the Federal Rules of Civil Procedure.  ECF No. 122.

      3.     On July 14, 2022, the district court held a status conference.  *See* Transcript of Status Conference ("Tr."), ECF No. 129.  The district court announced,

5

Add 9

for the first time, that its grant of dismissal in favor of Defendants on December 30, 2020 had "mooted" the court's May 11, 2020 pretrial order and all other orders in the case, and that therefore the court would reset all deadlines. Tr. 5. The district court summarily denied Strickland's default judgment motion without reducing its order to writing, and without requiring Defendants to respond to her motion. Tr. 4–5. The district court stated that it would take no action on Strickland's summary judgment motion, stating that "in fairness I don't really see it going anywhere." Tr. 6. When Strickland's counsel objected because the motion was fully briefed and ripe for decision, the court then stated that it would set a hearing on the summary judgment motion sometime during the latter half of September 2022. The court granted Defendants an extra five-and-a-half weeks leave to submit further supporting evidence that they did not disclose in discovery or in their summary judgment opposition. Tr. 15. The court placed the case on the running trial list for September 2023, and ordered the parties to hold a second Rule 26(f) conference to confer regarding a schedule for discovery. Tr. 9.

4.    Because the district court's resetting of all deadlines would significantly delay any resolution of this case, Strickland moved for a preliminary injunction on July 27, 2022. ECF No. 125. Strickland requested that the district court order Defendants to compensate her for her ongoing lost earnings while the litigation is pending. *Id.* She explained that because she cannot recover back pay directly in

Add 10

federal court, she will suffer irreparable harm in the form of lost earnings if she is not afforded immediate relief.  ECF No. 125-1, at 1, 17.

5.      On August 10, 2022, the parties held a second Rule 26(f) conference to confer regarding a schedule for discovery, as ordered by the court during the July 14, 2022 status conference.  *See* ECF No. 132 (parties' joint statement).  Before the Rule 26(f) conference, Plaintiff served requests for production on Defendants.  *See* Fed. R. Civ. P. 26(d)(2) (providing that early requests for production are "considered to have been served" at the Rule 26(f) conference).  The parties filed their joint proposed scheduling order on August 15, 2022, but as of the date of this filing, the district court has not entered a revised scheduling order.  *See* ECF No. 132.

6.      On August 22, 2022, Defendants filed their response to Strickland's motion for a preliminary injunction, as well as their supplemental memorandum in opposition to her motion for summary judgment.  ECF Nos. 134, 135.  Defendants' further "supporting evidence" included two declarations of two pages each.  *See id.* In their filings, Defendants asked the district court to rely on selective hearsay quotations from an EDR investigation report of Strickland's EDR claims, but Defendants did not provide the report to Strickland or to the court.  *See* ECF No. 134, at 9; ECF No. 135, at 7–8; *see also* ECF No. 78.  The record contains clear evidence that Defendants' selective quotations from the report were misleading and deceptive. *See* ECF No. 125-1, at 14–16.  Instead of introducing the full report through a

7

Add 11

witness with personal knowledge of the investigation and the ability to speak to its

methodology and findings, Defendants introduced selective quotations through the

Defender—an accused party, who was ultimately disciplined for wrongful conduct

based on the EDR investigation's findings. *See* ECF No. 78, at 15 (quoting Martinez

Decl., ¶ 105). The Defender, in turn, insinuated that the report had found that

Strickland "exploited . . . upper management." Martinez Decl. ¶ 105. He used

carefully curated ellipses to omit the report's actual finding, which was that

Strickland supposedly "exploited poor judgment and decision-making skills," ECF

No. 94, at 4, displayed by "upper management," Martinez Decl., ¶ 105. In other

words, the Defender misleadingly claimed that the report found that Strickland

"exploited" "upper management," while omitting the report's reference to his own

"poor judgment and decision-making skills." *Id.* Moreover, it appears that this

deception was revealed only inadvertently, when Defendants mistakenly quoted the

words "poor judgment and decision-making skills" instead of "upper management"

in quoting the Defender's declaration in another filing. ECF No. 94, at 4.

7.     On September 2, 2022, Defendants requested a 30-day extension of time

to respond to Plaintiff's requests for production, which were due on September 9,

2022. *See* ECF No. 141. Plaintiff objected, in part, to Defendants' extension

request. She requested that the district court order Defendants to disclose the EDR

investigation report and record of disciplinary action. Because Defendants had

8

extensively relied on those documents in their filings, there was no basis to withhold the documents or delay disclosing them. *Id.* at 2. As of the date of this filing, the district court has not acted on Defendants' extension request, and Defendants have not responded to her requests for production. As a result, Strickland has not seen the EDR investigation report upon which Defendants are relying to urge the court to deny her motions.

8. On September 8, 2022, the district court held a hearing on Strickland's motion for a preliminary injunction. Before the hearing, on September 1, 2022, the district court's courtroom deputy confirmed via email to all counsel that the preliminary injunction hearing "will not be an evidentiary hearing." *See* Ex. B (Decl. Plaintiff's Counsel). On September 2, 2022, Strickland filed a notice of waiver of the hearing, which requested that if the court determined that an evidentiary hearing was necessary for her to obtain preliminary injunctive relief, the court provide her notice of its intent to hold an evidentiary hearing and an opportunity to respond. ECF No. 140, at 6–7.

9. Strickland waived the hearing, in part, because she has been severely prejudiced by the district court's months-long and ongoing failure to act on her pending motions for *pro hac vice* admission of her choice of counsel, Jeannie Suk Gersen and Philip Andonian, and its failure to act on her motion to clarify whether it will allow Professor Gersen and Mr. Andonian to appear on her behalf in the

9

Add 13

proceeding, including in the hearing itself.  *See* ECF Nos. 115, 128.  Courts have

recognized the right of litigants "freely to choose their counsel," *Shaffer v. Farm*

*Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992), as well as the "serious and immediate

adverse effect" of "denying the client his choice of counsel," *Soc'y for Good Will to*

*Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979).  While the

court has discretion over *pro hac vice* admission, the Fourth Circuit has recognized

that *pro hac vice* admission is proper where a party has "complied with" the local

rules "governing the admittance of an attorney pro hac vice."  *See Scott v. Health Net*

*Fed. Servs.*, LLC, 463 Fed. Appx. 206, 209 (4th Cir. 2012).

10.    Both Professor Gersen and Mr. Andonian have complied with the local

rules for *pro hac vice* admission, and no basis has been provided to deny or fail to act

on their applications for admission.  Professor Gersen's application has been pending

for nearly three months, since it was filed on June 21, 2022, with no order from the

court, ECF No. 115, even as the court has entered other orders on a timely basis.

*See, e.g.*, Entry Orders Dated July 6, 2022 (notice of status conference), August 3,

2022 (notice of hearing on preliminary injunction), August 8, 2022 (order on

extension of time), August 11, 2022 (order on motion to continue), August 24, 2022

(order on extension of time).  During the status conference on July 14, 2022, this

court stated that it had "utterly no objection" to her admission and that "assuming

that the procedural requirements of the district in which I'm visiting are met, I do

Add 14

admit Professor Gersen with pleasure." Tr. 7. Professor Gersen's June 21, 2022

application did meet the procedural requirements for the U.S. District Court for the

Western District of North Carolina, *see* Attorney Admissions,

https://www.ncwd.uscourts.gov/attorney-admissions, as reflected in the docket entry

text for the motion, *see* ECF No 115 ("MOTION for Leave to Appear Pro Hac Vice

as to Jeannie Suk Gersen Filing fee $288, receipt number ANCWDC-5623514, by

*Caryn Devins Strickland (Strickland, Cooper)"). Strickland has not been notified of

any procedural deficiencies in the application for Professor Gersen's *pro hac vice*

admission. But the district court has still not entered a written order on the

application for admission, despite Strickland's repeated notifications about the

pending motion to the court and to the clerk. *See* ECF Nos. 130, 136, 140; *see also*

Ex. B (email to clerk). As a result, Professor Gersen has been unable to receive ECF

notices or register for a CM/ECF account in this case. Indeed, when Professor

Gersen attempted to register for a CM/ECF account on July 24, 2022, she was

informed that "[y]our ECF filing request cannot be granted until your application to

appear pro hac vice has been approved. Please resubmit your request for ECF filing

access upon entry of an order allowing your appearance via pro hac vice." Similarly,

Mr. Andonian's application for admission has been pending since August 2, 2022,

with no order from the court, and he is unable to access ECF notices or register for a

CM/ECF account. Strickland thus filed an unopposed "Motion to Clarify Status of

11

Add 15

Pro Hac Vice Admission," on August 8, 2022, which "respectfully request[ed] that the court clarify whether it will allow her chosen counsel, Jeannie Suk Gersen and Philip Andonian, to appear *pro hac vice* on her behalf in this proceeding."  ECF No. 130, at 1.  The motion explained that, without an order from the court on her pending motions for admission, "it is unclear whether Mr. Andonian and Professor Gersen will be allowed to represent Strickland during important upcoming events in this case," including "the preliminary injunction hearing on September 6."  *Id*. at 2.  Later that day, on August 8, 2022, the district court granted Defendants' request for an extension of time to respond to Strickland's motion for a preliminary injunction, but it did not act on her motion to clarify or her pending motions for admission of her chosen counsel for the proceeding.  *See* Entry Order Dated August 8, 2022.  On August 9, 2022, Defendants moved to reschedule the preliminary injunction hearing, in part, to accommodate the leave schedules of Defendants' counsel.  *See* ECF No. 131.  The district court promptly granted Defendants' request and rescheduled the hearing for September 8, 2022, but it still did not act on Strickland's motion to clarify or her pending motions for admission.  *See* Entry Order Dated August 11, 2022.  On August 23, 2022, Strickland requested a four-day extension to file a reply in support of her motion for a preliminary injunction, explaining that an extension would "serve the interests of basic fairness," in part, because "no order has been entered on [her] requests for *pro hac vice* admission, which has impeded her counsel

12

Add 16

from receiving ECF notices for the past eight weeks."  ECF No. 136, at 2.  The court

granted her extension request on August 24, 2022, but it still did not act on her

motion to clarify or her pending motions for admission.  Given the court's ongoing

failure to act on her motions for admission, Strickland felt compelled to waive the

preliminary injunction hearing because proceeding to the hearing without her chosen

counsel would be severely prejudicial.  ECF No. 140, at 6.

11.    Following Strickland's waiver of the hearing, the district court still did

not act on her motion to clarify or her motions for admission.  Nor did it

acknowledge her notice of waiver of the hearing.  The district court sent the Zoom

link for the hearing only to Cooper Strickland, her "counsel of record," and to

counsel for Defendants.  *See* Ex. B.  The district court thus forced Strickland to

proceed to the hearing, on September 8, 2022, without the participation of her chosen

counsel.  During the hearing, when Mr. Strickland raised the issue, Judge Young

stated that he would look into the matter and would admit Professor Gersen and Mr.

Andonian so long as they satisfied the local rules, much like he did during the July

14, 2022 status conference without following up with the necessary order.  As of the

date of this filing, the district court has not entered a written order regarding the

admission of her chosen counsel.

12.    Having previously informed the parties through the clerk that the

hearing on the preliminary injunction motion would not be an evidentiary hearing,

13

Add 17

Judge Young preemptively announced at the hearing that he would "collapse" consideration of Strickland's preliminary injunction motion with an expedited trial on the merits. He stated that he would not decide her motion based on affidavits because he wanted to receive "evidence" through a "trial." He stated that it is his "standard practice" to collapse a preliminary injunction hearing with trial on the merits. He stated that Strickland's showing on her motion was "woefully inadequate." Judge Young then imposed on Strickland a choice between proceeding to trial on an expedited basis in a matter of weeks, or else forgoing preliminary relief for a trial on the merits in September 2023. When Strickland's counsel asked how she would obtain discovery if the trial were expedited, Judge Young responded that there is no constitutional right to discovery. Strickland's counsel objected on the grounds that he did not want to prejudice his client's right to discovery (which Judge Young had ordered the parties to begin on July 14), that Judge Young's statements that her motions weren't "going anywhere" and were "inadequate" indicated that she needed to conduct discovery, and that he was "sandbagged" by Judge Young's order without the ability to consult with Strickland's chosen counsel. Defendants' counsel also confirmed that they preferred to keep the September 2023 trial date rather than an expedited trial.

Strickland filed notice of appeal of the district court's order the next day, on September 9, 2022. ECF No. 143. The district court's order refusing to grant her

Add 18

motion for preliminary injunction and deferring further consideration of the motion is

immediately appealable because it has the effect of denying her requested relief.  *See*

*Cedar Coal Co. v. United Mine Workers*, 560 F.2d 1153, 1161 (4th Cir. 1977)

(holding that an "indefinite continuance amounted to the refusing of an injunction

and is appealable"); *accord Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441,

1450 (9th Cir. 1992) ("[W]hen a court declines to make a formal ruling on a motion

for a preliminary injunction, but its action has the effect of denying the requested

relief, its refusal to issue a specific order will be treated as equivalent to the denial of

a preliminary injunction and will be appealable." (citation omitted)); *United States v.*

*Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (holding that district court's failure to grant

preliminary injunction "was in all respects a 'refusal'" and was "appealable").

Since this case was remanded, the district court has not reduced many of its

orders to writing as required by Federal Rule of Civil Procedure 79.  *See* Fed. R. Civ.

P. 79(a) (stating that "orders" and "judgments" "must be . . . entered chronologically

in the docket").  Because Strickland does not know when, if ever, the district court

intends to reduce its order denying the preliminary injunction to writing, she filed her

notice of appeal based on the district court's announcement of its decision from the

bench.  *Cf. FirsTier Mortgage Co. v. Inv'rs Mortgage Ins. Co.*, 498 U.S. 269, 273

(1991) (notice of appeal filed after the announcement of a decision but before entry

of judgment does not "extinguish an otherwise proper appeal").  If the district court

15

Add 19

inexplicably refuses to reduce certain important oral orders to writing, that cannot have the effect of insulating those orders from being appealed.

This Court should grant the relief requested on an expedited basis. The Fourth Circuit has held that the "most critical[]" factor in obtaining injunctive relief pending appeal is whether the plaintiff has made a "strong showing that [she is] likely to succeed on the merits." *Grimmett v. Freeman*, No. 22-1844, 2022 WL 3696689, at *1 (4th Cir. Aug. 25, 2022) (per curiam) (citation omitted). In this case, the district court filings speak for themselves: Strickland's showing on her claims is not just strong, but overwhelming. *See* Ex. A. Regarding Strickland's due process claim, Defendants failed to refute the facts showing that they "refuse[d] to disqualify [the Defender] from the investigation" and "coerc[ed] [her] to end the investigation," in violation of her due process rights. *Strickland*, 32 F.4th at 355. Defendants' own sworn declarations in this litigation confirmed that the Defender, who was an accused party, was not disqualified from exercising authority in the EDR process. *See* ECF No. 138, at 4–6. Defendants themselves also recognized that the Defender exercised decision-making authority over the EDR process, including by appointing the Investigator for Strickland's claims against him. *Id.* at 9–10. Moreover, Defendants failed to refute that Strickland was "led to believe that the [Defender] would be the final decisionmaker," *Strickland*, 32 F.4th at 355, including by the Fourth Circuit's Chief Circuit Mediator, who told her that the "Defender was the

16

Add 20

'decision maker' and that no hearing officer would 'micromanage' him or tell him how to do his job." Complaint ¶ 415. As for Strickland's equal protection claim, she presented strong, unrefuted evidence that Defendants were deliberately indifferent to the First Assistant's *quid pro quo* sexual harassment. ECF No. 138, at 21–25. Indeed, Defendants' answer to her complaint provides further admissions of their deliberate indifference. Defendants admit that the Investigator failed to interview *any* witnesses besides Strickland, the First Assistant, and the Defender. Answer ¶ 317, ECF No. 127. For this glaring failure on their part, Defendants inexplicably blame *Strickland* for failing to provide a witness list, even though her email sending the Investigator her witness list is already part of the summary judgment record. ECF No. 138, at 23 (quoting Roe Decl., Ex. C, at 14 ("I have attached a copy of the personnel manual and appendices, as well as a witness list/timeline.")). Defendants further admit that the Investigator told Strickland that "training would have helped" and "maybe even 'avoided'" her situation, but the office was "left on its own to learn." Answer ¶ 304. The lack of "adequate training or guidance that is obviously necessary" is further evidence of Defendants' deliberate indifference. *Hill v. Cundiff*, 797 F.3d 948, 975 (11th Cir. 2015). All told, Strickland plainly has made a strong showing that she is likely to succeed on the merits of her claims.

Strickland has also demonstrated that "irreparable harm is likely absent an injunction." *Grimmett*, 2022 WL 3696689, at *2. The Fourth Circuit has held that

17

Add 21

"[i]nfringing constitutional rights generally constitutes irreparable harm."  *Id.*; *see also Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc) ("Because there is a likely constitutional violation, the irreparable harm factor is satisfied.").  Moreover, because Strickland cannot recover back pay directly in federal court, she is suffering irreparable harm in the form of lost earnings she may never recover.  *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("[When] monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury justifying preliminary relief."); *see also Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003) ("The unavailability of back pay or other monetary damages against . . . the defendants in their official capacities goes a long way toward establishing irreparable injury.  It is nose-on-the-face plain that the plaintiff will lose wages while she is contesting her ouster.  Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists.").  Further, the equities and public interest favor Strickland, because it "is well-established that the public interest favors protecting constitutional rights."  *Leaders of a Beautiful Struggle*, 2 F.4th at 346.

In concluding that Strickland's showing in favor of a preliminary injunction was "woefully inadequate," the district court disregarded the evidentiary standards

18

Add 22

that apply to preliminary injunction motions under Supreme Court and Fourth Circuit precedent.  It is well-established that "[a] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."  *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016), *vacated on other grounds*, 197 L. Ed. 2d 460 (2017) (citation omitted).  Thus, "[f]or purposes of [the court's] review, all of the well-pleaded allegations of [the] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true."  *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).  The district court disregarded these standards when it stated that it would not decide Strickland's motion based on affidavits because it wanted to receive "evidence" through a "trial."  In fact, affidavits *are* evidence, and Strickland's "uncontroverted affidavits" plainly support her right to a preliminary injunction.  *Id.*

Moreover, the district court "unfairly" and "inappropriately" used the consolidation procedure in Rule 65(a) to impose a "Hobson's choice" to coerce Strickland to forgo her right to discovery.  *See Nwaubani v. Grossman*, 806 F.3d 677, 681 n.7 (1st Cir. 2015).  Judge Young has been admonished by his home circuit for similar conduct:

> [W]e are troubled that the district court, in consolidating the preliminary injunction hearing with a trial on the merits may have unfairly put [the plaintiff] (over his objection) in a position where he was forced to forego a

19

> ruling on his interlocutory request for injunctive relief in
> order to conduct adequate discovery to prepare for a trial
> on the merits. . . .
>
> As Judge (later Justice) Stevens, writing for the Seventh
> Circuit, has observed, "[a]t times, particularly if the parties
> consent, if discovery has been concluded or if it is manifest
> that there is no occasion for discovery, consolidation may
> serve the interests of justice," but "[a] litigant applying for
> a preliminary injunction should seldom be required either
> to forego discovery in order to seek emergency relief, or
> to forego a prompt application for an injunction in order to
> prepare adequately for trial." *Pughsley v. 3750 Lake Shore
> Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972).
> We are concerned that the district court may have
> inappropriately used Rule 65(a)(2) to impose such a
> Hobson's choice here.

*Id.*

As he did in *Nwaubani*, Judge Young "unfairly" and "inappropriately"

imposed the Hobson's choice of requiring Strickland to proceed to an expedited trial

with no discovery, or else to forgo preliminary relief in order to conduct discovery

for a later trial.  *Id.*  But Judge Young's order in this case is even more troubling,

given that previously he ordered the parties to begin discovery, and then later

changed course, after Strickland requested that Defendants disclose in discovery the

EDR investigation report and record of disciplinary action on which Defendants

relied in their filings.  The effect of Judge Young's order is to prevent Strickland

from receiving information in discovery that could potentially undermine a key basis

of Defendants' theory of the case and further expose their deceptive conduct.  And

20

Add 24

Judge Young's "Hobson's choice" order was especially unfair and coercive given his exclusion of Strickland's choice of counsel from the hearing and insistence on proceeding without her choice of counsel. Indeed, Strickland still does not know whether Professor Gersen and Mr. Andonian will be allowed to represent her in the proceeding in the district court, even as the district court has ordered an expedited trial on the merits.

**CONCLUSION**

This Court should order an injunction pending appeal in the form of ongoing lost earnings. The Court should allow Defendants, in consultation with Strickland, to compute the precise amount owed, and to determine whether accrued earnings will be paid on a biweekly, monthly, or other basis. *Cf. In re Levenson*, 587 F.3d 925, 937 (9th Cir. 2009) (ordering back pay to "accrue" on an ongoing basis and ordering the parties "in consultation" to "compute the amount due"). As security, the Court should order Defendants to deposit the funds directly with the district court. *See* Fed. R. App. P. 8(a)(2)(E); Fed. R. Civ. P. 67(a).

Respectfully Submitted,

*/s/ Jeannie Suk Gersen*

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487
jsuk73@gmail.com

21

Add 25

Philip Andonian*
D.C. Bar No. 490792
CALEB ANDONIAN PLLC
1156 Fifteenth Street, N.W.,
Ste. 510
Washington, D.C. 20005
Tel: (202) 787-5792
phil@calebandonian.com

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff-Appellant*

---

* Pending forthcoming application for admission in the Fourth Circuit.

Add 26

**CERTIFICATE OF COMPLIANCE**

I certify that this Motion complies with the type-volume limitations of Fed. R.

App. P. 27(d)(2) because it contains 5,192 words, excluding the parts exempted by

Fed. R. App. P. 27(d)(2).  This Motion complies with the typeface and type-style

requirements of Fed. R. App. P. 27(d)(1) because it has been prepared in a 14-point,

proportionally spaced typeface.

<u>/s/ Cooper Strickland</u>
Cooper Strickland

23

Add 27

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2022, I electronically filed the foregoing Motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system, which accomplished service on counsel of record through CM/ECF.

/s/ Cooper Strickland
Cooper Strickland

24

Add 28

No. 22-1963

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant,*

v.

UNITED STATES, ET AL.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

---

## PETITION FOR
## REHEARING

---

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION AND RULE 40 STATEMENT ................................................1

STATEMENT OF THE CASE ......................................................................2

      A.    Fourth Circuit Decision........................................................2

      B.    PI Motion ............................................................................3

      C.    Refusal of PI........................................................................4

      D.    Appeal of the PI Denial.........................................................5

      E.    Refusal of Prompt Evidentiary Hearing...................................5

REASONS FOR GRANTING THE PETITION ...................................................7

I.    Misapprehension of Fact ...................................................................7

II.    Failure to Apply Governing Law........................................................11

III.    Exceptionally Important Issues ........................................................15

CONCLUSION ......................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

EXHIBIT A

i

Add 30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018)................................................................... 11, 12

*Am. Humanist Ass'n v. Greenville Cnty. Sch. Dist.*,
    571 Fed. Appx. 250 (4th Cir. 2014).................................................2, 8

*Aurora Bancshares Corp. v. Weston*,
    777 F.2d 385 (7th Cir. 1985) ...........................................................8

*Cedar Coal Co. v. United Mine Workers*,
    560 F.2d 1153 (4th Cir. 1977) .......................................................8, 13

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*,
    822 F.3d 709 (4th Cir. 2016) .........................................................9, 15

*Gellman v. Maryland*,
    538 F.2d 602 (4th Cir. 1976) ...........................................................10

*Int'l Refugee Assistance Project v. Trump*,
    883 F.3d 233 (4th Cir. 2018) ...........................................................15

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*,
    915 F.3d 197 (4th Cir. 2019) ............................................................3

*Mt. Graham Red Squirrel v. Madigan*,
    954 F.2d 1441 (9th Cir. 1992) .......................................................9, 13

*Nat'l Labor Relations Bd. v. Brown & Root, Inc.*,
    206 F.2d 73 (8th Cir. 1953) .............................................................7

*Nwaubani v. Grossman*,
    806 F.3d 677 (1st Cir. 2015).............................................................10

*Pughsley v. 3750 Lake Shore Drive Co-op. Bldg.*,
    463 F.2d 1055 (7th Cir. 1972) .........................................................10

ii

Add 31

*Rolo v. Gen. Dev. Corp.*,
  949 F.2d 695 (3d Cir. 1991) ...................................................................9

*Rosario-Urdaz v. Rivera-Hernandez*,
  350 F.3d 219 (1st Cir. 2003) ..................................................................3

*Strickland v. United States*,
  32 F.4th 311 (4th Cir. 2022) ..............................................................3, 15

*United States v. Lynd*,
  301 F.2d 818 (5th Cir. 1962) ...................................................................9

*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981)...............................................................................14

**Statutes**

28 U.S.C. § 1292(a) ...............................................................................1, 5

28 U.S.C. § 1657(a) ............................................................................ 1, 8, 9

**Rules**

Fed. R. App. P. 40 ........................................................................... *passim*

Fed. R. Civ. P. 65 ............................................................................ *passim*

Add 32

## INTRODUCTION AND RULE 40 STATEMENT

Plaintiff-Appellant Caryn Devins Strickland respectfully requests rehearing of this Court's decision dismissing her appeal. A district court is required to "expedite the consideration" of a preliminary injunction ("PI"). 28 U.S.C. § 1657(a). An order "refusing" an injunction is immediately appealable. 28 U.S.C. § 1292(a). Here, Judge William Young refused to grant a PI before trial or to hold a pretrial evidentiary hearing. He expressed—and reiterated, after this Court's dismissal order—that he would only consider prompt injunctive relief if she would forfeit her procedural rights and proceed to an expedited trial without discovery. What he imposed was unlawful. And because neither party consented to go to trial without discovery, the trial date remains September 2023, more than a year after the PI motion was filed. Because Judge Young refused to grant the PI before trial, which will be in September 2023, his refusal of the PI is immediately appealable.

These simple facts have been obscured by Judge Young's attempts to circumvent appeal and Defendants' misrepresentation of the record. They made it appear to this Court that Judge Young was open to holding a prompt *pretrial* evidentiary hearing and promptly ruling on the PI. *See*, *e.g.*, Doc. 37, at 1, 3. As a result, this panel incorrectly concluded that it lacked jurisdiction over the appeal because the district court would hold a "prompt evidentiary hearing." Dismissal

1

Order ("Order"), at 4.  The record makes clear that this is not true and that Judge

Young has denied a prompt evidentiary hearing.  Rehearing is thus needed to allow

the panel to apply the governing law to Judge Young's refusal of the PI.  But if the

Court continues to conclude that Judge Young still has not ruled on the PI, then it

should remand with instructions for him to rule on the PI motion.  *See, e.g.*, *Am.*

*Humanist Ass'n v. Greenville Cnty. Sch. Dist.*, 571 Fed. Appx. 250, 252 (4th Cir.

2014) (unpublished per curiam).

If this Court does not correct Judge Young's aberrational pretrial procedure,

the repercussions will be profound.  Allowing his unlawful conduct to govern this

proceeding undermines the rights of all litigants seeking PIs in this Circuit.  Due to

the recusal of all Fourth Circuit judges, there is no possibility of en banc

review.  *See United States v. Roof*, Doc. 177, No. 17-3 (4th Cir. 2021) (Gregory,

C.J.) (Ex. A).  Judge Young's extreme departures from judicial practice undermine

public trust in the integrity of this proceeding.  If left unaddressed, these departures

"from the accepted and usual course of judicial proceedings" may warrant

Supreme Court review.  Sup. Ct. R. 10(a).

## STATEMENT OF THE CASE

### A.     Fourth Circuit Decision

This case involves constitutional claims against judiciary officials for sex

discrimination, including deliberate indifference to sexual harassment, and for a

2

fundamentally unfair process in handling workplace misconduct claims.  ECF No.

1.  On April 26, 2022, this Court held that Strickland's due process and equal

protection claims survived dismissal, *Strickland v. United States*, 32 F.4th 311, 321

(4th Cir. 2022), and provided specific factual guidance on the showing needed to

prove her claims, *id.* at 355–536, 358–60.  The Court limited her recovery to

prospective equitable relief, including front pay, and held that she could not

recover back pay.  *Id.* at 366, 369–70.

### B.    PI Motion

Following remand, Strickland pursued her fully briefed motion for summary

judgment ("SJ"), which she had filed in August 2020 in accordance with court-

ordered deadlines.  ECF No. 116; *see also* Entry Order Dated May 11, 2020

(pretrial order).  At a status conference in July 2022, Judge Young stated that he

didn't see her SJ motion "going anywhere," set a trial date of September 2023, and

ordered discovery.  Status Conf. Tr., ECF No. 129, at 6, 9.

Strickland moved for a PI on July 27, 2022, requesting lost earnings while

the litigation continued.  ECF No. 125.  Because this Court held that back pay is

unavailable, a PI is necessary to prevent irreparable harm. *Mountain Valley*

*Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d

197, 218 (4th Cir. 2019) (unrecoverable monetary losses due to sovereign

immunity qualify "as irreparable injury justifying preliminary relief"); *Rosario-*

3

# Add 35

*Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003) (it is "nose-on-the-face plain" that the unavailability of back pay is "irreparable harm").

## C.    Refusal of PI

On September 8, 2022, Judge Young held a hearing on Strickland's PI motion.  Before the hearing, the courtroom deputy confirmed that the PI hearing "will not be an evidentiary hearing."  Doc. 3, Ex. B.

At the hearing, Judge Young refused the PI, saying that her showing was "woefully inadequate."  Tr. PI Hearing ("PH Tr.") at 8, ECF No. 149; *id.* at 4 ("I'm not giving preliminary injunction today and I'm not deciding it on affidavits.").  He stated that he would rule on her injunction request after a "consolidated" trial.  PH Tr. 4.  He proposed that Strickland agree to an expedited "trial on the merits" within weeks, without discovery, or else forgo a PI until trial in September 2023.  PH Tr. 7, 9.  When Strickland objected that she needed discovery before trial, Judge Young stated, "There isn't a constitutional right to discovery."  PH Tr. 8.  He did not reduce his order to writing, consistent with his failure to promptly reduce other important orders to writing.  *See, e.g.*, Entry Order Dated September 15, 2022 (reducing default judgment denial to writing more than two months after oral order).

4

Add 36

### D.    Appeal of the PI Denial

Strickland appealed the refusal of the PI pursuant to 28 U.S.C. § 1292(a)(1).

ECF No. 143.  After Strickland filed her appeal, Judge Young issued a written

order indicating that he "collapses" the PI with "trial on the merits" under Rule

65(a).  Entry Order Dated September 15, 2022.  A week later, while the appeal and

emergency motion to stay the district court proceeding were pending, he issued

another order stating his desire for a "prompt evidentiary hearing."  ECF No. 150.

Appellees claimed to this Court that Judge Young did not refuse the PI, but

merely did not wish to rule on the PI motion "without the benefit of an evidentiary

hearing."  Doc. 19, at 10.  Appellees specifically contended that he expressed his

"desire" to hold a "prompt evidentiary hearing" on the motion *"prior to trial."*

Doc. 37 at 1, 3 (emphasis added).  This Court dismissed Strickland's appeal,

reasoning that the district court "has not yet ruled" and was "open" to holding a

"prompt evidentiary hearing" on the PI motion.  Order at 4.

### E.    Refusal of Prompt Evidentiary Hearing

On October 21, 2022, adopting Defendants' view of Judge Young's

openness, Strickland moved for a prompt pretrial evidentiary hearing on her PI

motion.  ECF No. 157.  On October 31, 2022, Defendants opposed the motion.  In

an about-face, they argued that Judge Young was *not* open to a "pretrial"

evidentiary hearing.  ECF No. 158, at 1 (opposing pretrial evidentiary hearing

5

Add 37

because the court "has already appropriately consolidated" the PI with "trial on the merits"). Defendants directly contradicted the representations they had made to this Court to secure its dismissal of the appeal, that Judge Young was open to an evidentiary hearing "prior to trial." Doc. 37 at 1, 3.

The same day, on October 31, 2022, Judge Young orally denied Strickland's motion for a pretrial evidentiary hearing, without reducing his order to writing. He stated that a pretrial evidentiary hearing was "not going to happen" and that he was not going to hear evidence "twice." Tr. SJ Hearing ("SJ Tr.") 32, 36. He stated that "of course you have the right" to a pretrial hearing, "but if I did that, then you're onto the Court of Appeals." SJ Tr. 36.

Judge Young reiterated his intent to hold an expedited trial without discovery, over Strickland's objection. *See* SJ Tr. 39. Defendants objected to a consolidated trial any earlier than June 2023. SJ Tr. 37; *see also* SJ Tr. 38 (defense counsel's statement that it would be "difficult to get through discovery" even for a March 2023 trial date). Judge Young then suggested a trial "as early as November and certainly . . . in December." SJ Tr. 39. When Strickland again objected that she needed discovery before trial, Judge Young responded, "[Y]ou don't understand. Subpoenas work. Bring in the people." SJ Tr. 39. He stated that "this idea that we're going to have a round of depositions . . . there is no

6

Add 38

requirement for that due process or otherwise." SJ Tr. 31. Judge Young ordered the parties to submit a date for the consolidated trial. SJ Tr. 40.

On November 7, 2022, the parties jointly notified the court of their agreement to maintain its previously ordered September 2023 trial date to ensure that they can "adequately conduct discovery and prepare for trial." ECF No. 160, at 1. Thus, the September 2023 trial date remains. Because Judge Young unambiguously refused a pretrial evidentiary hearing, and because an expedited trial without adequate discovery, over both parties' objections, would be unlawful, there is no possibility of a ruling on the PI motion before September 2023.

**REASONS FOR GRANTING THE PETITION**

**I.    Misapprehension of Fact**

"The purpose of a petition for rehearing . . . is to direct the Court's attention to some material matter of law or fact which it has overlooked in deciding a case, and which, had it been given consideration, would probably have brought about a different result." *Nat'l Labor Relations Bd. v. Brown & Root, Inc.*, 206 F.2d 73, 74 (8th Cir. 1953); *see also* Fed. R. App. P. 40(a)(2); Fourth Cir. Loc. R. 40(b)(i) (rehearing when "[a] material factual or legal matter was overlooked"). This Court's dismissal of Strickland's appeal rested on a misunderstanding that the district court was willing to hold a "prompt evidentiary hearing" on her PI motion. Order at 4. Judge Young plainly refused the PI and refused a prompt

7

evidentiary hearing on the matter. *See Aurora Bancshares Corp. v. Weston*, 777

F.2d 385, 386 (7th Cir. 1985) (argument that Court lacked jurisdiction was

"preposterous" where "[t]he plaintiffs asked for . . . an injunction, and the judge

refused to give it to them—refused even to hold a hearing on the matter"). But if

this Court believes that he still has not ruled on the motion, which Strickland filed

on July 27, 2022, it should remand with instructions for him to rule immediately on

the PI.[1] *See Am. Humanist Ass'n*, 571 Fed. Appx. at 252.

Judge Young explicitly denied Strickland's motion for a prompt evidentiary

hearing and refused to consider a PI before trial on the merits. SJ Tr. 28–29,

32. He previously ordered a trial date of September 2023, and the parties agree

that this trial date is needed to ensure adequate discovery. ECF No. 160. Judge

Young stated that waiting until September 2023 to grant a PI is not an "indefinite"

continuance, PH Tr. 9, but it is certainly not "prompt." Order at 4. It violates the

statutory requirement to "expedite the consideration" of the PI motion, 28 U.S.C.

§ 1657(a), and constitutes a refusal of the PI, *see Cedar Coal Co. v. United Mine

Workers*, 560 F.2d 1153, 1161 (4th Cir. 1977) (court's granting of "indefinite

continuance" fifteen days after PI motion was filed "amounted to the refusing of

---

[1] Judge Young also failed to rule on Strickland's motion for a prompt ruling
on her PI motion, filed more than two weeks ago (Defendants took no position and
did not file a response). ECF No. 165. She has exhausted all options for obtaining
a ruling on the PI.

8

Add 40

injection and is appealable"); *accord Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449–50 (9th Cir. 1992); *Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 703 (3d Cir. 1991); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

A "consolidated trial" in September 2023, more than a year after the PI motion was filed, is not a consolidated trial pursuant to Rule 65(a). Rather, it is simply a trial held after a year-long refusal of the PI. The law is crystal clear that a PI motion must be ruled on promptly. *See* 28 U.S.C. § 1657(a) (court "shall expedite the consideration of [a PI]"). Indeed, the very purpose of a PI is to provide *preliminary* relief *before* a trial is held. *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016). Because consideration of a PI must be expedited, a court consolidating a trial pursuant to Rule 65(a) must "advance the trial on the merits." Fed. R. Civ. P. 65(a)(2). Here, the opposite occurred: because the district court is unable to advance the trial on the merits as the parties agree that they need time for adequate discovery prior to trial, the district court refuses to consider a PI until the purportedly "consolidated" trial set for September 2023. Rule 65(a) clearly prohibits this misuse of consolidation. *See* Fed. R. Civ. P. 65(a)(2), Advisory Comm. Notes (1966) ("The fact that the proceedings have been consolidated *should cause no delay* in the disposition of the application for the [PI] . . . .") (emphasis added).

9

Add 41

Because this Court misapprehended the facts, it overlooked Judge Young's abuse of Rule 65(a)'s consolidation procedure. He repeatedly sought to force Strickland into an expedited trial without discovery, over her objection. *See, e.g.*, PH Tr. 7, 8; SJ Tr. 39. This abuse of Rule 65(a) is unlawful. *Gellman v. Maryland*, 538 F.2d 602, 604 (4th Cir. 1976) ("A litigant applying for a [PI] should seldom be required either to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial." (citation omitted)). Consolidation of a PI hearing with trial is appropriate only "if the parties consent, if discovery has been concluded or if it is manifest that there is no occasion for discovery." *Pughsley v. 3750 Lake Shore Drive Co-op. Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972). None of those circumstances are present here. Strickland does not consent to the consolidation, discovery has not concluded, and the parties agree that discovery is necessary. *See* ECF No. 160. Moreover, "the parties should be given a clear opportunity to object, or to suggest special procedures, if a consolidation is to be ordered." *Pughsley*, 463 F.2d at 1057. Here, Judge Young improperly ordered consolidation over Strickland's objection. ECF No. 160, at 1 n.1. Indeed, Judge Young has been admonished for engaging in this "unfair[]" and "inappropriate[]" conduct in the past. *Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015).

10

# Add 42

Because Strickland would not agree to Judge Young's unfair and coercive "Hobson's choice," *id.*, she has been forced to forgo a PI. Unfortunately, this Court's dismissal order gave Judge Young the misimpression that this Court approved of his unlawful conduct. SJ Tr. 28 ("I think the Fourth Circuit understands exactly what I'm trying in fairness to do here."). Rehearing is thus necessary to enforce Fourth Circuit precedent and correct Judge Young's mistaken view that he is not bound by it.

Strickland is being severely prejudiced by Judge Young's refusal of the PI. Because Strickland cannot recover back pay, each day that passes without injunctive relief results in ongoing lost earnings that she may never recover. Requiring her to wait until September 2023 for a ruling on her PI motion will mean forgoing her lost earnings for more than one year. *See* ECF No. 125-2 (Plaintiff's Decl.). That irreparable harm cannot be remedied absent an immediate appeal.

## II.   Failure to Apply Governing Law

Because this Court incorrectly believed that Judge Young would hold a "prompt evidentiary hearing," Order at 4, it did not apply binding precedent holding that a district court cannot avoid an interlocutory appeal by simply refusing to rule on a PI motion until trial. *See* Loc. R. 40(b)(ii) (failure to address "conflict" with precedent). The Supreme Court has "not allowed district courts to shield their orders from appellate review" regarding PI motions. *Abbott v. Perez*,

11

Add 43

138 S. Ct. 2305, 2320 (2018) (citation omitted). That is because, "[i]f an interlocutory injunction is improperly . . . denied, much harm can occur before the final decision in the district court." *Id.* at 2319. Thus, "if the availability of interlocutory review depended on the district court's use" of "particular language, Congress's scheme could be frustrated." *Id.* at 2319–20. "The 'practical effect' inquiry prevents such manipulation." *Id.* at 2320.

Here, Judge Young has quite literally attempted to frustrate appellate review of the PI motion. After Strickland filed her appeal, Judge Young suddenly attempted to evince openness to holding a "prompt evidentiary hearing," ECF No. 150, only to deny Strickland that hearing days after this Court dismissed her appeal based on the panel's view there would be a prompt evidentiary hearing, SJ Tr. 29. Moreover, Judge Young has attempted to frustrate appellate review of his orders by refusing to reduce them to writing. For example, more than a week after the October 31, 2022 hearing in which he clearly orally denied Strickland's motion for a prompt pretrial evidentiary hearing, *see* SJ Tr. 32 (stating "I've already ruled on that" and "that's not going to happen"), he omitted to reduce that order to writing when memorializing his denial of SJ, *see* Entry Order Dated Nov. 10, 2022.[2] Tellingly, Judge Young stated, "what you want is a hearing and then you

---

[2] The court failed to provide a Notice of Electronic Filing for this docket entry or docket the transcript of the hearing.

12

Add 44

can appeal that and then we'll have the trial. That's not helpful." SJ. Tr. 29. He

continued, "of course you have the right" to a pretrial evidentiary hearing, but

revealingly said, "if I did that, then you're on to the Court of Appeals with respect

to that. I don't propose to do it twice." SJ Tr. 36. These statements unmistakably

confess his intent to obstruct her right to appeal. *Compare* SJ Tr. 29, 36, *with Mt.*

*Graham Red Squirrel*, 954 F.2d at 1448, 1450 (expressing "dismay" at district

court's refusal to schedule a hearing, *id.* at 1450, and noting that the district court

reacted to plaintiff's intent to appeal by stating, "you really break my heart," *id.* at

1448); *see also Cedar Coal Co.*, 560 F.2d at 1162 (noting that if appeal were not

allowed, "it would permit a plain denial of even the bare consideration of whether

to consider injunctive relief to go unaccounted for by virtue of an indefinite

continuance"). Indeed, Judge Young's statement that Strickland will be "on to the

Court of Appeals" after a pretrial hearing presupposes that he is *denying* the PI—

the only reason she would appeal. By his own words, Judge Young prefers instead

to prevent Strickland from going "on to the Court of Appeals" by masking his

refusal of a PI as a "consolidation" and thus insulating his decision from

interlocutory appeal. PH Tr. 9; SJ Tr. 39, 36. This is unlawful.

Judge Young's contortions to negate Strickland's right to appeal subvert

precedent and threaten to undermine the rights of other litigants in this Circuit.

The Supreme Court has long held that "it is generally inappropriate for a federal

13

Add 45

court at the [PI] stage to give a final judgment on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Moreover, a plaintiff "is not required to prove his case in full at a [PI] hearing." *Id.* Contrary to this precedent, Judge Young conflated the standards for a PI and for a trial on the merits, and displayed confusion about the difference between them. SJ Tr. 33 ("I don't understand. . . . Do you think there's some sort of different standard between a reasonable likelihood of success and a fair preponderance of the evidence?"). Judge Young also incorrectly believed that evidence presented at a PI evidentiary hearing would be presented again at trial, *see* SJ Tr. 29, 36, even though "evidence that is received on the [PI] motion . . . becomes part of the trial record." Fed. R. Civ. P. 65(a)(2). Further, he repeatedly conflated pretrial discovery with Rule 45 "subpoenas," indicating an intent to conduct a trial by ambush, without the ordinary exchange of evidence before trial. *See, e.g.*, SJ Tr. 39–40 ("Subpoenas work. Bring in the people. . . . If you think that's inefficient, the inefficiency falls on the Court as well."). That procedure would be especially prejudicial to Strickland, because of Defendants' pattern of deceptively misrepresenting evidence, including the EDR investigation report, and refusing to provide it to her even as they rely on it before the Court. *See* Doc. 3, at 7–8; Doc. 30, at 2–3.

Judge Young's approach would lead to absurd and outrageous results. Imagine if a religious minority seeking an immediate injunction against

14

discriminatory policies, or a transgender student seeking to use the restroom matching his gender identity, were told that they would have to wait for a decision on the injunction until trial because their appeal of an unfavorable PI ruling would not be "helpful." Imagine if they were told there is no need for pretrial discovery because "subpoenas work." That would be unlawful. *See Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 256 (4th Cir. 2018), *as amended* (Feb. 28, 2018), *vacated on other grounds*, 138 S.Ct. 2710 (2018); *G.G. ex rel. Grimm*, 822 F.3d at 725. Tolerating Judge Young's unlawful conduct risks setting a dangerous precedent by empowering district court judges to undermine the rights of parties seeking preliminary injunctive relief.

## III. Exceptionally Important Issues

The importance of the issues raised by this appeal extends far beyond the abuse of Rule 65. *See* Loc. R. 40(b)(iv) ("questions of exceptional importance"). This Court's prior decision was the first time that a lawsuit challenging the use of discriminatory and unfair procedures for addressing workplace misconduct in the federal judiciary has survived a motion to dismiss. *Strickland*, 32 F.4th at 321. The procedures used to resolve this case will set an example for future cases, and it is imperative that the procedures be transparent, fair, and lawful, so as to avoid repetition of the unfairness of the judiciary's EDR procedures. Strickland

15

Add 47

should not have to wait months or years to correct the district court's unlawful conduct, which she has a statutory right to appeal.

The district court proceeding has been marred by severe irregularities, including the unexplained sealing of Strickland's *entire* case *sua sponte*; Judge Young's refusal to admit her chosen counsel *pro hac vice* for nearly three months, resulting in their exclusion from the PI hearing; his refusal to reduce his oral orders to writing or file relevant transcripts; his attempts to insulate his orders from appeal; and his attempt to coerce Strickland to an expedited trial without discovery or else forgo a PI. These irregularities undermine the integrity of the proceeding and raise a reasonable perception that Strickland is unfairly being treated differently from other litigants. Likewise, Defendants' misrepresentation of the record before this Court to secure dismissal of this appeal, only to immediately take the opposite position in the district court, falls outside the bounds of acceptable advocacy. Allowing them to benefit from this runaround would seriously undermine the fairness and integrity of this proceeding.

## CONCLUSION

This Court should review Judge Young's refusal of the PI. At a minimum, it should remand with instructions for him to rule on the PI.

Respectfully submitted,

/s/ Jeannie Suk Gersen

16

Add 48

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487
jsuk73@gmail.com

*Counsel for Plaintiff-Appellant*

17

Add 49

**CERTIFICATE OF COMPLIANCE**

I certify that this Petition complies with the type-volume limitations of Fed. R. App. P. 40(b)(1) because it contains 3,896 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

<u>/s/ Cooper Strickland</u>
Cooper Strickland

Add 50

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of December, 2022, I filed this Petition with the

Clerk of Court using the CM/ECF system, which will automatically serve

electronic copies on all counsel of record.

/s/ Cooper Strickland
Cooper Strickland

Add 51

FILED:  September 27, 2021

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 17-3
(2:15-cr-00472-RMG-1)

_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DYLANN STORM ROOF

Defendant - Appellant

------------------------------

AUTISTIC SELF ADVOCACY NETWORK; AUTISTIC WOMEN &
NONBINARY NETWORK

Amici Supporting Appellee

_____

O R D E R

_____

The judges of the Fourth Circuit having recused themselves in this case, Chief

Justice Roberts designated and assigned Eighth Circuit Judge Duane Benton, Third

Circuit Judge Kent A. Jordan, and Sixth Circuit Senior Judge Ronald Lee Gilman to

perform judicial duties in this case.

Following briefing and oral argument, the designated panel issued a 149-page

Add 52

published decision affirming appellant's conviction and sentence. Appellant filed a timely petition for rehearing and rehearing en banc and a request for designation of an en banc court pursuant to 28 U.S.C. § 291(a) or § 292(a) or (d). Judge Benton, Judge Jordan, and Senior Judge Gilman have denied appellant's petition for panel rehearing.

The court declines to take the unprecedented step of using 28 U.S.C. § 291 or 292 to seek a substitute en banc court for the purpose of considering appellant's petition for rehearing en banc. "[U]nder the wording of 28 U.S.C. § 46(c) and the Supreme Court's holding in *Moody v. Albemarle Paper Co.*, 417 U.S. 622, 94 S.Ct. 2513, 41 L.Ed.2d 358 (1974), only judges of the Circuit who are in regular active service may make the determination to rehear a case en banc." *United States v. Nixon*, 827 F.2d 1019, 1021 (5th Cir. 1987). Designation of a visiting judge for this purpose is "an inappropriate procedure, unrelated to providing a quorum for the en banc court of a circuit." *Comer v. Murphy Oil USA*, 607 F.3d 1049, 1054 (5th Cir. 2010).

Accordingly, the motion for designation of an en banc court is denied, and the petition for en banc rehearing is denied due to the lack of a quorum for en banc review.

Entered at the direction of Chief Judge Gregory.

For the Court

/s/ Patricia S. Connor, Clerk

Add 53

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| In re CARYN DEVINS STRICKLAND, Petitioner. | ) ) ) ) ) ) | No. 2023-_____ [No. 1:20-cv-00066] |

## PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703

*Counsel for Petitioner*

Add 54

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION ............................................................................ 1

STATEMENT OF FACTS .............................................................. 2

    A.    This Court Holds that Plaintiff's Constitutional Claims
         Against Judiciary Officials Survived Dismissal ............ 2

    B.    Plaintiff Moves for a PI Because Any Potential
        Recovery is Limited to Prospective Equitable Relief..... 3

    C.    The District Court Forces Plaintiff to Go to Trial in "a
        Week, Two Weeks," Without Discovery, or Else Forgo
        Her Right to a PI. ........................................................... 3

    D.    After Plaintiff Appeals the District Court's PI Refusal,
        the District Court and Defendants Inaccurately Represent
        that the District Court Desires a "Prompt Evidentiary
        Hearing." .......................................................................... 4

    E.    Following Dismissal of Plaintiff's Appeal on the Basis
        that the Court "Desires" a "Prompt Evidentiary Hearing,"
        the District Court Denies Plaintiff a Prompt Evidentiary
        Hearing .......................................................................... 6

    F.    The District Court Again Confirms its Unlawful Hobson's
        Choice ........................................................................... 8

    G.    Since the District Court's Denial of a Prompt Evidentiary
        Hearing, Plaintiff's PI Motion Has Only Been Subject to
        Further Unjustified Delay ............................................... 9

REASONS WHY THE WRIT SHOULD ISSUE ............................. 14

I.    Plaintiff Has A Clear And Indisputable Right To Relief........ 17

i

Add 55

A.     The District Court's "Substantial Delay" in Acting on a Matter of Statutory Priority Warrants the Remedy of Mandamus ...................................................................... 17

B.     This Court's Prior Decision that the District Court Would Rule "Promptly" on the PI Motion Further Warrants Relief. ........................................................... 21

II.     No Other Adequate Remedy Is Available ............................... 22

III.     Issuance Of The Writ Would Be Appropriate ......................... 23

CONCLUSION ................................................................................... 31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

ii

## TABLE OF AUTHORITIES

**Cases**                          **Page(s)**

*Abbott v. Perez,*
  138 S. Ct. 2305 (2018) ........................................................ 4

*Cheney v. United States Dist. Court,*
  542 U.S. 367 (2004) ...................................................... 22, 23

*Co. Doe v. Pub. Citizen,*
  749 F.3d 246 (4th Cir. 2014) .................................................. 28

*Gellman v. Maryland,*
  538 F.2d 603 (4th Cir. 1976) ............................................... 5, 24

*Henry v. Greenville Airport Comm'n,*
  284 F.2d 631 (4th Cir. 1960) ................................................. 25

*In re Adams,*
  No. 14-11102-F, 2014 U.S. App. LEXIS 14513 (11th Cir. July 16, 2014) ...... 21

*In re Hicks,*
  118 F. App'x 778 (4th Cir. 2005) ........................................ 17, 18

*In re Hicks,*
  279 F. App'x 236 (4th Cir. 2008) (unpub. per curiam) ................. *passim*

*In re Murphy-Brown, LLC,*
  907 F.3d 788 (4th Cir. 2018) ............................................. 24, 30

*Jackson v. Beard,*
  828 F.2d 1077 (4th Cir. 1987) ................................................ 11

*Kerr v. United States Dist. Court,*
  426 U.S. 394 (1976) .......................................................... 17

*League of Women Voters of N.C. v. North Carolina,*
  769 F.3d 224 (4th Cir. 2014) ................................................. 25

*Madden v. Myers,*
  102 F.3d 74 (3d Cir. 1996) ....................................... 16, 17, 21, 22

Add 57

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land,*
915 F.3d 197 (4th Cir. 2019) ................................................ 3

*Nwaubani v. Grossman,*
806 F.3d 677 (1st Cir. 2015) .................................... *passim*

*Office of Consumers' Counsel, State of Ohio v. F.E.R.C.,*
826 F.2d 1136 (D.C. Cir. 1987) ......................................... 21

*Rosario-Urdaz v. Rivera-Hernandez,*
350 F.3d 219 (1st Cir. 2003) ....................................... 3, 30

*Sprague v. Ticonic Nat'l Bank,*
307 U.S. 161 (1939) ......................................................... 21

*Strickland v. United States,*
32 F.4th 311 (4th Cir. 2022) ............................................. 2

*United States v. Bell,*
5 F.3d 64 (4th Cir. 1993) ................................................ 21

*Univ. of Tex. v. Camenisch,*
451 U.S. 390 (1981) ......................................................... 27

**Statutes and Rules**

28 U.S.C. § 1657 ........................................................ *passim*

Fed. R. Civ. P. 29 ............................................................. 9

Fed. R. Civ. P. 40 ........................................................... 15

Fed. R. Civ. P. 65 .................................................... *passim*

Fed. R. Evid. 803 ........................................................... 10

Fourth Cir. Loc. R. 12 .................................................... 16

iv

Add 58

## INTRODUCTION

Plaintiff returns to this Court with a discrete request: enforce the Court's decision from over a year ago stating that the district court would rule "promp[tly]" on her motion for preliminary injunction ("PI"). No. 22-1963, Doc. 42, at 4.

Plaintiff's PI motion was filed on July 27, 2022. ECF No. 125. On October 18, 2022, this Court dismissed Plaintiff's appeal challenging the district court's refusal to rule on her PI motion before a "consolidated" trial, which was previously scheduled for nearly a full year later, in September 2023. Relying on the assurances of the district court and Defendants that Plaintiff's motion would be ruled on promptly, this Court stated that "the district court has not yet ruled" on the PI motion and "'desires a prompt evidentiary hearing.'" No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1). A "prompt evidentiary hearing" never occurred. To the contrary, the record conclusively establishes that Plaintiff was denied any consideration for a PI, a right to which she was entitled by law. And now, there is yet further delay. The district court has tentatively scheduled a trial in December 2023—a full *year and a half* after the PI motion was filed—but it has since indicated that this trial date may also be delayed.

This Court must intervene. Condoning this conduct would risk setting a precedent that anytime a district court disfavors a particular plaintiff's PI motion, the court can simply "consolidate" the proceedings and delay the trial, thereby

1

Add 59

denying the plaintiff any meaningful appellate review. That result would have

negative repercussions far beyond this case and risks destabilizing the

jurisprudence of this Circuit. Because the district court has violated Plaintiff's

clear and indisputable right to expedited treatment of her PI motion, *see* 28 U.S.C.

§ 1657(a), and no other adequate remedy is available, Plaintiff has established she

is entitled to the writ of mandamus.

**STATEMENT OF FACTS**

**A.    This Court Holds that Plaintiff's Constitutional Claims Against
       Judiciary Officials Survived Dismissal.**

This case involves claims of equal protection and due process violations

against officials of the federal judiciary. On April 26, 2022, this Court reversed the

district court's dismissal of Plaintiff's complaint. The Court held, for the first

time, that a federal judiciary employee may pursue litigation in federal court to

remedy judiciary officials' deliberate indifference to sexual harassment and

implementation of a fundamentally unfair process for resolving workplace

discrimination claims. *Strickland v. United States*, 32 F.4th 311, 321 (4th Cir.

2022). The Court limited Plaintiff's recovery to prospective equitable relief,

including front pay in lieu of reinstatement, and held that she may not recover back

pay. *Id.* at 366, 369–71.

2

Add 60

**B.    Plaintiff Moves for a PI Because Any Potential Recovery is Limited to Prospective Equitable Relief.**

Following remand, Plaintiff moved for a PI on July 27, 2022.  ECF No. 125.

Plaintiff's motion explained that because she may only recover prospective

equitable relief, and back pay is unavailable, she will suffer irreparable harm

absent a PI.  ECF No. 125-1, at 1, 17.  Precedent from this Circuit and others

establishes that "unrecoverable" monetary losses of this type qualify as

"irreparable injury justifying preliminary relief."  *Mountain Valley Pipeline, LLC*

*v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019); *see also Rosario-Urdaz*

*v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003) (stating that it is "nose-on-

the-face plain" that the unavailability of back pay is "irreparable harm").

**C.    The District Court Forces Plaintiff to Go to Trial in "a Week, Two Weeks," Without Discovery, or Else Forgo Her Right to a PI.**

On September 8, 2022, the district court held a hearing on the PI motion.

The district court stated that it would "collapse" consideration of the PI motion

with trial on the merits.  *See* Entry Order Dated September 15, 2022.  The district

court stated that Plaintiff must proceed to a "trial on the merits" within "a week,

two weeks," without any discovery, or else forgo her right to a PI until the trial

previously scheduled for September 2023.  ECF No. 149, at 4, 7.  The district court

stated that "[i]f you want to wait till September [2023], then I will wait, and that's

when I will determine the matter, but that's not indefinite."  *Id.* at 9.  The district

3

court judge previously has been admonished for engaging in precisely this conduct, which violates Rule 65(a) and imposes an "unfair[]" and "inappropriate[]" "Hobson's Choice" on the plaintiff, by his home circuit. *Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015). Confirming the unfairness and inappropriateness of this procedure, when Plaintiff objected that she needed discovery before trial, the district court dismissed these concerns by stating that "[t]here isn't a constitutional right to discovery." ECF No. 149, at 8.

### D. After Plaintiff Appeals the District Court's PI Refusal, the District Court and Defendants Inaccurately Represent that the District Court Desires a "Prompt Evidentiary Hearing."

Plaintiff appealed the district court's order refusing her PI on the basis that "consolidating" a PI motion with a trial scheduled a full year later, in September 2023, was a refusal of the PI. *See* ECF No. 143 (notice of appeal from the "court's refusal to grant and/or denial of her motion for preliminary injunction"). Plaintiff's appeal was grounded in Supreme Court precedent stating that district courts are "not allowed . . . to shield [their] orders from appellate review" regarding PI motions and imposing a "practical effect" inquiry that "prevents such manipulation." *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (citation omitted). It was also grounded in Fourth Circuit precedent stating that ordering a consolidated trial without any discovery "comes perilously close to a violation of due process." *Gellman v. Maryland*, 538 F.2d 603, 606 (4th Cir. 1976); *see also Nwaubani*, 806

4

Add 62

F.3d at 680 n.7 (recognizing that the procedure ordered by the district court "unfairly" and "inappropriately" imposes a "Hobson's choice").

A week after Plaintiff's notice of appeal was filed, on September 22, 2022, the district court issued an order stating that the court "desires a prompt evidentiary hearing" on "plaintiff's motion for immediate equitable relief." ECF No. 150, at 1. Seizing on this language, Defendants represented to this Court that dismissal of Plaintiff's appeal was warranted because the district court did not refuse the PI, but merely did not wish to rule on the PI "without the benefit of an evidentiary hearing." No. 22-1963, Doc. 19, at 12. Defendants also represented that the district court was "open to revisiting the issue" of a consolidated trial, *id.* at 1, and had "offered to discuss the timing of a pre-trial evidentiary hearing," Doc. 37, at 1. Defendants characterized the district court's September 22, 2022 order as stating that the court had "reiterated its 'desire' to hold a 'prompt evidentiary hearing' on Strickland's motion *prior to trial.*" *Id.* (emphasis added).

On October 18, 2022, relying on the district court's order and Defendants' representations, this Court granted Defendants' motion to dismiss Plaintiff's appeal. The Court's reasons for dismissing the appeal were as follows:

> [A] review of the district court record reveals that the district court has not yet ruled on Strickland's motion for preliminary injunction. More specifically, the record indicates that the district court declined Strickland's request to rule on her preliminary injunction motion solely on the basis of affidavits, and instead "desires a prompt

5

evidentiary hearing" in order to resolve the motion for preliminary injunction. ECF No. 150 at 1. To the extent that Strickland contends the district court's refusal to grant her motion for preliminary injunction solely on the basis of submitted affidavits "in effect" constitutes a denial of her motion, we disagree. As the defendants point out, the district court has stated that it was not prepared to issue such a ruling without the benefit of a more fully developed evidentiary record, but that it is open to further discussing the matter with the parties. Notably, the Federal Rules of Civil Procedure do not require a district court to forego an evidentiary hearing before ruling on the merits of a motion for preliminary injunction. Further, Rule 65(a)(2) expressly authorizes a district court, as occurred here, to "advance the trial on the merits and consolidate it with the hearing" on the motion for preliminary injunction. Fed. R. Civ. P. 65(a)(2).

No. 22-1963, Doc. 42, at 4.

### E.  Following Dismissal of Plaintiff's Appeal on the Basis that the Court "Desires" a "Prompt Evidentiary Hearing," the District Court Denies Plaintiff a Prompt Evidentiary Hearing.

On October 21, 2022, based on Defendants' representations that the district court desired a "'prompt evidentiary hearing'" on the PI motion "prior to trial," Doc. 37, at 1 (quoting ECF No. 150, at 1), Plaintiff filed a "motion for prompt evidentiary hearing" on the PI motion.  ECF No. 157.  Contradicting what they represented to this Court, Defendants opposed Plaintiff's motion and argued that the district court "has already appropriately consolidated" the PI with "trial on the merits" and had, therefore, not authorized a prompt evidentiary hearing on the PI motion.  ECF No. 158, at 1.

6

Add 64

On October 31, 2022, the district court orally denied Plaintiff's motion for a prompt evidentiary hearing.  The district court stated that a prompt evidentiary hearing was "not going to happen" because it was not going to hear evidence "twice."  ECF No. 171, at 32, 36.  The district court explained that "of course you have the right" to an evidentiary hearing, "but if I did that, then you're onto the Court of Appeals."  *Id.* at 36.  The district court stated that it would not be "helpful" if Plaintiff exercised her right to an evidentiary hearing and a subsequent appeal.  *Id.* at 29.  The court stated: "I think the Fourth Circuit understands exactly what I'm trying in fairness to do here."  *Id.* at 28.

The district court reiterated that Plaintiff must proceed to trial in November or December 2022 without discovery, which still had not meaningfully taken place, or else she would be required to forgo a ruling on her PI motion.  *Id.* at 39.  When Plaintiff again objected that she needed discovery before trial, the district court stated that "[s]ubpoenas work" and "this idea that we're going to have a round of depositions . . . there is no requirement for that due process or otherwise."  *Id.* at 39, 31.  Following the hearing, in accordance with the district court's order requiring the parties to submit a consolidated trial date, the parties jointly notified the court that a September 2023 trial date was necessary to ensure that they could "adequately conduct discovery and prepare for trial."  ECF No. 160, at 1.

7

Add 65

Plaintiff notified this Court through a petition for rehearing that the district court had denied a "prompt evidentiary hearing" and there was no possibility of a ruling on her PI motion before September 2023, more than a full year after the PI motion was filed. No. 22-1963, Doc. 44. This Court denied Plaintiff's petition for rehearing on December 16, 2022. Doc. 49.

### F. The District Court Again Confirms its Unlawful Hobson's Choice.

On January 26, 2023, the district court entered a written order "formally" denying Plaintiff's motion for prompt evidentiary hearing. ECF No. 185, at 1 ("Upon reflection, the Court realizes that it has not formally ruled on the Plaintiff's 'Motion For Prompt Evidentiary Hearing.'"). The district court's order "outline[s] its insistence upon a full trial" rather than deciding the PI motion promptly as required by statutes and procedural rules. *Id.* at 2. The district court's order "reiterates that it is the parties, not the Court, who insist that they need until September 2023 to be ready for trial," and contends that the court's actions were "expressly confirmed . . . by the Fourth Circuit." *Id.* at 2–3.

As crucial context for this order, the district court had delayed acting on the parties' motion for a protective order for months and did not enter it until January 20, 2023, a mere six days before its January 26, 2023 order "insist[ing] upon a full trial." *See* ECF No. 183. The district court was thus well-aware at the time of its January 26, 2023 order that no meaningful discovery had yet taken place, because

8

Defendants refused to provide discovery until the protective order was formally entered.[1]  *See, e.g.*, ECF No. 176, at 6 n.4 (stating in December 2022 filing that "Defendants have . . . explained to Plaintiff that they cannot produce confidential documents until the Court enters the parties' proposed protective order").  The district court's order again confirmed that it had imposed an "unfair[]" and "inappropriate[]" "Hobson's Choice," and that it believed it had the express approval of this Court to do so.  *Nwaubani*, 806 F.3d at 680 n.7.

### G. Since the District Court's Denial of a Prompt Evidentiary Hearing, Plaintiff's PI Motion Has Only Been Subject to Further Unjustified Delay.

Since the district court's formal denial of a prompt evidentiary hearing, there has been no action on Plaintiff's PI motion since January 26, 2023.  That is true even though discovery has since closed and the record has been "fully developed" through briefing on summary judgment, allaying this Court's stated concerns about a premature ruling on the PI motion.  No. 22-1963, Doc. 42, at 4.

---

[1] Defendants refused to provide "confidential" discovery, including the EDR investigation report and records of disciplinary action, even though they did not timely move for a protective order as required by the rules of civil procedure, and Plaintiff had even offered to stipulate to maintain confidentiality of *all* discovery until the protective order was entered to prevent any delay.  *See* Fed. R. Civ. P. 29 (allowing "stipulations about discovery procedure").  Further, four months earlier, in September 2022, Plaintiff had requested that the district court require disclosure of the EDR investigation report and records of disciplinary action, but the district court denied Plaintiff's request without explanation.  ECF No. 151.

9

Add 67

On June 1, 2023, the parties cross-moved for summary judgment. ECF Nos. 245, 248. On June 21, 2023, the district court offered the parties the option to proceed on a case-stated basis because "we've moved beyond allegations to actual evidence" and "the facts are not in dispute." ECF No. 267, at 4–5. The court stated that "there is both a private interest here on the part of Ms. Strickland, as she wants to win this case, and . . . if we get to damages, *her damages are going to be affected by the time that we take to adjudicate it*." *Id.* at 12 (emphasis added). However, the parties could not reach agreement to proceed on a case-stated basis.

On July 10, 2023, the district court held a hearing on the parties' cross-motions for summary judgment. On July 25, 2023, the district court entered an opinion on summary judgment which summarized the "undisputed evidence" the court had before it regarding the deliberate indifference of Federal Defender Anthony Martinez to his First Assistant's *quid pro quo* sexual harassment. ECF No. 258, at 5–7. Among this evidence, the district court explained that the Fourth Circuit's Chief Judge had issued a "letter of reprimand" against Defender Martinez as a result of the wrongful conduct investigation into Plaintiff's allegations under Chapter IX of the EDR Plan. *Id.* at 6. As the district court explained, "[t]he factual findings in this letter constitute an unimpeached public record pursuant to Fed. R. Evid. 803(8)(A)(iii)." *Id.* The court concluded that "[t]he underlying facts" supporting Plaintiff's discrimination claim "appear to be undisputed." *Id.* at 7.

10

Add 68

On July 27, 2023, the district court held the final pretrial conference. *See* Entry Order Dated September 19, 2023. The district court set the case for a five-day bench trial, consisting of half-days of four hours each—that is, a total of two-and-a-half days of trial time. ECF No. 262, at 13. The district court scheduled the trial to commence on September 5, 2023. The court stated, however, that if the parties wished to pursue mediation, it would only allow them to do so if the case were taken off the trial calendar. *Id.* at 16.

Plaintiff had requested mediation nearly a full year earlier in the parties' Certificate of Initial Attorney's Conference, filed on August 15, 2022. ECF No. 132, at 8; *see also* ECF No. 34, at 6 (reflecting parties' earlier agreement that mediation should be "conducted no later than the close of non-expert discovery"). Plaintiff was entitled to mediation under the district's local rules. WDNC LCvR 16.2(a) ("All parties to a civil action must attend a mediated settlement conference, unless otherwise ordered by the Court."). Under the local rules, the district court was required to "select the ADR method and schedule the deadline for its completion after considering counsel's responses in the Certificate of Initial Attorney's Conference." LCvR 16.3(a). The district court failed to comply with this requirement. *See Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987) (local rules "have the force and effect of law, and are binding upon the parties and the court" (quotation omitted)). Instead, the district court only raised the possibility of

11

Add 69

mediation for the first time during the final pretrial conference nearly a year later, when it stated that mediation would not be ordered without delaying the trial.

Plaintiff's counsel objected "because of the preliminary injunction that has been pending for so long and it's just — this is a rock and a hard place." ECF No. 262, at 16. However, because Plaintiff prudently wished to see if the case could be resolved through mediation, an opportunity she had never been provided, the parties agreed to a temporary stay to pursue mediation. ECF No. 261.

On August 10, 2023, after mediation was scheduled, the district court issued the following order: "Should this case not resolve through mediation, th[e] [deliberate indifference] issue and the due process claims *will promptly be addressed as soon as possible* following notification that mediation has been unsuccessful or the expiration of 45 days from September 5, 2023 *whichever shall first occur*." Entry Order Dated August 10, 2023 (emphasis added). Based on this order, Plaintiff reasonably believed that if mediation were unsuccessful, the district court intended to "promptly" address her claims "as soon as possible," but no later than "45 days from September 5, 2023." *Id.*

Following the mediator's notification on September 19, 2023 that mediation was not successful,[2] Plaintiff notified the court that she was prepared for a prompt

---

[2] Mediation was scheduled for August 17, 2023, and the mediator's report was due 7 days later. *See* LCvR 16.3(c). If this requirement had been followed, mediation would not have delayed a September 5 trial date.

12

Add 70

trial date before October 20, 2023 (that is, 45 days from September 5, 2023) in accordance with the court's August 10, 2023 order. ECF No. 281. In response to Plaintiff's filing, and in stark contrast to its repeated prior statements recognizing the importance of deciding this case promptly, the district court criticized Plaintiff for "tak[ing] umbrage that the Court is not available to try the case just as soon as it was informed mediation had failed." ECF No. 286, at 1 n.2. The district court stated that "[o]ther cases (criminal and civil) are eager and ready for trial and have been previously scheduled in the interim." *Id.* The district court's statements starkly contrast with its prior recognition that "this is not a case where . . . we're concerned with a lengthy civil docket or the like, I'm specially assigned, so I've got duties, with all reasonable speed, to address this case." ECF No. 104, at 10. After repeatedly telling the parties it that would provide a trial "just as soon as they are ready to go," the court insisted on delay once Plaintiff requested a prompt trial consistent with its August 10 order. ECF No. 185, at 4.

On October 4, 2023, the district court tentatively scheduled the trial for "Monday, December 11, 2023 or *on the next trial day* following the conclusion of the case then on trial." *Id.* at 1 (emphasis added). The court scheduled a "further final pretrial conference" for November 16, 2023. ECF No. 288. On October 19, 2023, however, the district court issued a revised order resetting the case "for the week of December 11 for trial *or as soon thereafter as the Court's docket will*

13

Add 71

*permit."* ECF No. 304 (emphasis added). The court's order stated, "The Court will schedule a further pre-trial conference," indicating that the previously scheduled "further final preconference" of November 16, 2023 may not occur. *Id.*

Between the date of this filing on October 30, 2023 and the tentative trial date on the week of December 11, 2023, the district court has scheduled (1) a four-week antitrust trial, which has been rescheduled twice since the court's October 4, 2023 order, and (2) seven criminal trials, including four criminal trials scheduled for the week of December 11 alone. Based on the district court's schedule, it appears unlikely that this case will even proceed to trial before the end of the year. That is more than a year and a half after Plaintiff's PI motion was filed in July 2022, and more than a year since this Court dismissed her PI appeal because the district court intended to hold "a prompt evidentiary hearing." No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1).

## REASONS WHY THE WRIT SHOULD ISSUE

The district court made a choice to "consolidate" Plaintiff's PI motion with a trial on the merits pursuant to Fed. R. Civ. P. 65(a)(2), over Plaintiff's objection. Because the district court made that choice, the court was required to "advance" the trial date. *Id.* The district court failed to do so. Instead, the trial has been delayed, in violation of statutes and rules requiring Plaintiff's case to be treated with priority. *See* 28 U.S.C. § 1657(a) ("[T]he Court *shall expedite* the

14

Add 72

consideration of . . . any action for temporary or preliminary injunctive relief."
(emphasis added)); Fed. R. Civ. P. 40 ("[T]he court *must* give priority to actions
entitled to priority by a federal statute.") (emphasis added)).  Moreover, Plaintiff
has exhausted all alternative options to challenge the court's refusal to rule on her
PI motion, including appealing the refusal and petitioning for rehearing.  Because
the district court has continued to delay, Plaintiff has no other adequate remedy.

    To ensure a "prompt evidentiary hearing" on Plaintiff's PI motion, as
required by law and this Court's prior decision from more than a year ago, this
Court should order the district court to "advance" the trial as required by Rule
65(a)(2), or, at a minimum, to not defer the trial date already set.  This Court also
should ensure that the district court issues a prompt final judgment.  That result
accords with cases from this Circuit involving "substantial delay."  *In re Hicks*,
279 F. App'x 236, 236 (4th Cir. 2008) (unpub. per curiam) (granting writ and
ordering district court "to act" on the pending matter "within sixty days").

    Plaintiff anticipates that Respondents may contend that issuance of the writ
would be premature because the district court could still hold the tentative
December 11 trial as scheduled.  But this possibility does not mean that the petition
should be dismissed.  The district court stated that it "desire[d]" a "prompt
evidentiary hearing" on Plaintiff's motion in September 2022 in order to secure
dismissal of Plaintiff's PI appeal, but that "prompt evidentiary hearing" never

15

Add 73

occurred.  ECF No. 150, at 1.  Similarly, the district court stated in its August 10,

2023 order that Plaintiff's claims would "promptly be addressed" if mediation

were unsuccessful, but no later than October 20, 2023.  After being notified that

mediation was unsuccessful, however, the district court delayed the trial date until

December 2023 and has signaled that there may be yet further delay.  Entry Order

Dated August 10, 2023.

　　　　If this Court were to decide to give the district court another opportunity to

rule promptly on Plaintiff's PI motion, the Court has options short of granting a

writ of mandamus to ensure that a prompt ruling is made.  For example, the Court

could hold this petition in abeyance until the district court rules promptly on

Plaintiff's PI motion.  *See* Fourth Cir. Loc. R. 12(d) ("[T]he Court may, either on

its own motion or upon request, place a case in abeyance pending disposition of

matters . . . which may affect the ultimate resolution of an appeal.").  Alternatively,

this Court could deny the petition "without prejudice" to the filing of a new

petition for writ of mandamus if the district court does not enter a final judgment

within sixty days.  *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996).  That is the

course taken by the Third Circuit (with then-Circuit Judge Hon. Samuel A. Alito,

Jr. on the panel) in *Madden v. Myers*.  In that case, the district court had delayed

eight months (far less than the delay at issue here) in ruling on a petition for habeas

corpus relief.  *Id.*  The Court stated that "[a]lthough this delay is of concern, it does

16

Add 74

not yet rise to the level of a denial of due process," and the Court was "confident that the district court will issue its decision quickly." *Id.* Likewise, here, if this Court is "confident that the district court will issue its decision quickly," it could deny the petition without prejudice to the filing of a new petition if the district court does not enter judgment within sixty days. *Id.*

## I. Plaintiff Has A Clear And Indisputable Right To Relief.

### A. The District Court's "Substantial Delay" in Acting on a Matter of Statutory Priority Warrants the Remedy of Mandamus.

The Fourth Circuit has recognized that when a district court acts with "substantial delay" in addressing a case that is entitled to statutory priority, mandamus relief is appropriate. *Hicks*, 279 F. App'x at 236; *see also In re Hicks*, 118 F. App'x 778, 778 (4th Cir. 2005). Mandamus "has traditionally been used . . . to compel [a court] to exercise its authority when it is its duty to do so." *Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976) (citation omitted). Thus, "[m]andamus petitions provide an avenue for dealing with the situation . . . where cases have been unduly delayed in the district court." *Madden*, 102 F.3d at 78. An appellate court may issue a writ of mandamus based on a court's "undue delay," or, "without actually issuing a writ, may order a district court not to defer adjudicating a case." *Id.* at 79.

This case is similar to *Hicks* in establishing a clear and indisputable right to relief. In *Hicks*, the petitioner filed a motion under Fed. R. Civ. P. 60(b) in his

17

Add 75

civil habeas case, which was fully briefed by August 2, 2006.  *Hicks*, 279 F. App'x at 236.  In May 2008, a year and a half later, the Fourth Circuit granted mandamus in favor of the petitioner because the district court still had not yet ruled on the Rule 60(b) motion, which was entitled to statutory priority.  *Id.*  The Fourth Circuit explained that "Hicks has established a clear and indisputable right to expeditious treatment of his Rule 60(b) motion, and no other adequate remedy is available." *Id.*  Thus, "he has shown his entitlement to the writ of mandamus."  *Id.*  The Fourth Circuit ordered the district court to rule on the motion "within sixty days of the date of this opinion."  *Id.*

Here, as in *Hicks*, Plaintiff's case must be expedited and given priority, because federal statutes and procedural rules specifically command that result.  *Cf. Hicks*, 118 F. App'x at 778 ("Pursuant to 28 U.S.C. § 1657(a) (2000), the district court must give priority to habeas corpus cases over other civil cases.").  The district court's failure to rule on the PI motion since it was filed on July 27, 2022 does not comply with these federal statutes and rules.  Nor does the fact that the district court ordered a "consolidated trial" on the PI motion change this result. Under Rule 65, a district court "may *advance* the trial on the merits and consolidate it with the hearing" on a PI motion.  Fed. R. Civ. P. 65(a)(2) (emphasis added).  Permitting the court to "advance" the trial plainly does not allow the court to delay the trial for months or years—as this Court previously recognized in

18

Add 76

stating that the district court intended to hold a "prompt evidentiary hearing," which could include "advanc[ing]" the trial date. No. 22-1963, Doc. 42, at 4. Indeed, the advisory committee notes to Rule 65 specifically state that "[t]he fact that the proceedings have been consolidated *should cause no delay* in the disposition of the application for the preliminary injunction, . . . [in fact,] to consolidate the proceedings *will tend to expedite* the final disposition of the action." Fed. R. Civ. P. 65(a)(2), Advisory Comm. Notes (emphasis added).

Based on the district court's orders, it appears that the district court may believe that because Plaintiff exercised a right to mediation to which she is entitled under this district's local rules, her case is no longer entitled to priority and a ruling can be delayed indefinitely. ECF No. 286, at 1 n.2. That is not the case.

Rather, the district court's actions reflect its continued use of unfair tactics to force Plaintiff to proceed to trial or else forgo rights to which she is entitled by law. After imposing the unfair and inappropriate Hobson's choice of forcing Plaintiff to proceed to trial without discovery, or else forgo a PI, the district court presented Plaintiff with a similar Hobson's choice between proceeding to trial or exercising her right to mediation, which the court was required to order a year earlier under the local rules. LCvR 16.3(a) ("The presiding . . . judicial officer will, in the Scheduling Order or ADR Order issued shortly thereafter [the Initial Attorney's Conference], select the ADR method and schedule the deadline for its

19

Add 77

completion.").  The district court's continued use of unfair and coercive Hobson's

choices—conduct for which this district court judge previously has been

admonished—does not obviate Plaintiff's right to a prompt ruling on the PI.  *See*

*Nwaubani*, 806 F.3d at 680 n.7 ("[W]e are troubled that the district court, in

consolidating the preliminary injunction hearing with a trial on the merits may

have unfairly put Nwaubani (over his objection) in a position where he was forced

to forego a ruling on his interlocutory request for injunctive relief in order to

conduct adequate discovery to prepare for a trial on the merits.").

In any event, the district court itself recognized its continued duty to

expedite treatment of Plaintiff's PI motion when it issued an order on August 10,

2023 stating that her claims "*will promptly be addressed as soon as possible*

following notification that mediation has been unsuccessful."  Entry Order Dated

August 10, 2023 (emphasis added).  Plaintiff reasonably relied on the district

court's representation that her claims "will promptly be addressed" and planned for

a prompt trial date by October 20, 2023 in accordance with the district court's

order.  But after Plaintiff notified the district court of her readiness for a prompt

trial, the district court further delayed trial in violation of Rule 65(a), which

requires the trial court to "advance"—not delay—the trial date.

Add 78

**B.    This Court's Prior Decision that the District Court Would Rule "Promptly" on the PI Motion Further Warrants Relief.**

Courts routinely grant mandamus relief when a district court fails to comply with the mandate of the Court of Appeals.  *See, e.g.*, *Madden*, 102 F.3d at 78 ("[M]andamus is the appropriate remedy when the district court ignores this Court's mandate."); *In re Adams*, No. 14-11102-F, 2014 U.S. App. LEXIS 14513, at *3–4 (11th Cir. July 16, 2014) ("A party always has recourse to the court to seek enforcement of its mandate." (quoting *Office of Consumers' Counsel, State of Ohio v. F.E.R.C.*, 826 F.2d 1136, 1140 (D.C. Cir. 1987)).

This Court's decision of October 18, 2022 stating that "the district court has not yet ruled on Strickland's motion for preliminary injunction" and "'desires a prompt evidentiary hearing' in order to resolve the motion for preliminary injunction" further counsels in favor of mandamus.  No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1).  "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'"  *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).  As a "specific application of the law of the case doctrine," the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *Id.* (citation omitted).

This Court "expressly or impliedly decided" that the district court was to rule promptly on the PI motion in its decision of October 18, 2022.  *Id.*  After all,

21

Add 79

this Court presumably would not have dismissed Plaintiff's appeal on the basis that the district court "has not yet ruled on Strickland's motion for preliminary injunction" and "'desires a prompt evidentiary hearing' in order to resolve the motion for preliminary injunction" if it did not anticipate that the district court would rule promptly on the PI motion.  No. 22-1963, Doc. 42, at 4 (quoting ECF No. 150, at 1).  The Court's ruling anticipated, if not outright ordered, a prompt ruling on the PI motion as required by law.  Because the district court has not promptly ruled on the PI motion as this Court stated it would, "mandamus is the appropriate remedy."  *Madden*, 102 F.3d at 78.

## II.    No Other Adequate Remedy Is Available.

The second mandamus factor, that no other adequate remedy is available, is also met.  The purpose of this factor is "to ensure that the writ will not be used as a substitute for the regular appeals process."  *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004).  The Fourth Circuit has recognized that this factor is met when a district court acts with "substantial delay" in ruling on a matter that is entitled to statutory priority.  *Hicks*, 279 F. App'x at 236.  When a court declines to rule promptly on a matter that is entitled to statutory priority, then "no other adequate remedy is available" except for a writ of mandamus.  *Id.*

In this case, Plaintiff is not attempting to use mandamus as a substitute for the regular appeals process.  To the contrary, Plaintiff exhausted all possible

options for appealing the district court's refusal to promptly rule on the PI motion, but her appeal was dismissed and her petition for rehearing was denied. Plaintiff could not, in good faith, return to this Court for a third time to raise the same arguments that the Court had denied, absent further delay of a trial.

But now, the trial has been delayed months beyond the original September 2023 trial date and it appears possible that this case may not even proceed to trial before the end of the year. Contrary to Rule 65(a)'s requirement that the court "advance" the trial date, Plaintiff's case is tentatively scheduled for trial only after a four-week antitrust trial and seven criminal trials, resulting in potentially substantial delay. This "substantial delay" plainly violates Rule 65(a), which requires the court to "advance" the trial, and 28 U.S.C. § 1657(a), which requires the court to "expedite the consideration" of a PI motion. *Hicks*, 279 F. App'x at 236. Indeed, the fact that Plaintiff has been forced to wait for a ruling on her PI motion for nearly a year and a half since the motion was filed in July 2022 self-evidently demonstrates that she has no other adequate remedy.

## III.   Issuance Of The Writ Would Be Appropriate.

Finally, issuance of "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. In fact, if this Court were to *not* take appropriate steps to ensure a prompt ruling on the PI motion, it would send an unmistakable message of approval of the district court's delay. That result would severely prejudice the

23

Add 81

rights of other litigants in this Circuit who rely on the statutory right to expedited treatment of a PI motion.  It would also risk setting a double standard where employees of the federal judiciary who bring constitutional claims against judiciary officials are unjustly denied basic procedural rights to which other civil litigants are entitled, without an opportunity for appellate review of a PI ruling or the availability of back pay.

The Fourth Circuit has recognized that issuance of a writ of mandamus is "appropriate" when a district court's erroneous actions could undermine the rights of other litigants who "may be involved in future legal proceedings."  *In re Murphy-Brown, LLC*, 907 F.3d 788, 801–02 (4th Cir. 2018).  That is especially true when the district court's orders involve infringements on constitutional rights that result in "irreparable" injury.  *Id.* at 801 (citation omitted).

The district court's refusal to promptly rule on Plaintiff's PI motion violates longstanding principles governing preliminary relief.  The Fourth Circuit has long recognized that "[a] litigant applying for a preliminary injunction should seldom be required either to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial." *Gellman*, 538 F.2d at 604 (citation omitted).  Moreover, ordering a consolidated trial without "permitting any discovery . . . comes perilously close to a violation of due process."  *Id.* at 606.  The district court's abuse of Rule 65(a)'s consolidation

24

Add 82

procedure, and its constructive denial of a PI motion through continued delay, is blatantly unlawful.

Indeed, the undisputed evidence in favor of Plaintiff's claims, which have been developed through the summary judgment stage, demonstrates the profound unfairness of the district court's approach. A plaintiff seeking a PI "need not show a certainty of success," and "undisputed evidence" favoring the plaintiff's claims will justify a PI. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246–47 (4th Cir. 2014) (citation omitted); *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right.").

The district court itself recognized that "[t]he underlying facts" favoring Plaintiff's equal protection claim against the Defender "appear to be undisputed," including through a "letter of reprimand" issued by the Fourth Circuit's Chief Judge for the Defender's wrongful conduct. ECF No. 258, at 6–7. The Chief Judge's letter of reprimand reads as a roadmap of the Defender's deliberate indifference as articulated by this Court, *see Strickland*, 32 F.4th at 359–60:

- "Marriage Metaphor": "After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a 'marriage,' with the parties needing to 'compromise' and 'meet in the middle.' Ms. Strickland said that she was 'shocked' and 'offended' at the

25

reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a 'marriage.' The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her."

- "No Physical Touching": "Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, 'at least you weren't touched,' or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt."

- "Disapproval of Seeking Outside Advice": "Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee. The investigator found that you had 'called out' Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office."

- "Shifting Responsibility": "Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with. Ms. Strickland reported that she felt 'offended' by your protest, which she perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office. This, the investigator concluded, contributed to your mishandling of the matter."

ECF No. 248-1, at 18–19; Add. 34–41.

The district court even informed the parties—contrary to its prior insistence on requiring "live witnesses" rather than "affidavits," ECF No. 185, at 2–3—that it was able to decide liability on a case-stated basis because "the facts are not in

26

Add 84

dispute," ECF No. 267, at 4–5.  If "an unimpeached public record" from the Fourth

Circuit's Chief Judge containing "undisputed" findings of unlawful sex

discrimination is not sufficient to prove a likelihood of success on the merits and

thus justify a PI, it is hard to imagine what would be sufficient.  ECF No. 258, at 6.

Indeed, it is inherently contradictory to contend that the record is sufficiently

developed to rule *on the merits* of the case at summary judgment, but that a ruling

on the PI motion—which requires a lesser showing—would be premature.  *Cf.*

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (stating that a party "is not

required to prove his case in full at a preliminary-injunction hearing," and "it is

generally inappropriate for a federal court at the preliminary-injunction stage to

give a final judgment on the merits").

The substantial delay in ruling on Plaintiff's case, in violation of governing

rules and statutes, also risks setting a double standard where judiciary employees

bringing constitutional claims are unjustly denied procedural rights that are

afforded to other civil litigants.  This disparate treatment creates an intolerable

appearance of partiality and undermines the rule of law.

In fact, this is not the first time that Plaintiff has been forced to resort to the

remedy of mandamus to enforce her basic procedural rights in this litigation.  From

the outset, Plaintiff's *entire* case was sealed *sua sponte* without any explanation.  A

public docket entry stating only that the case was "sealed at direction of Clerk

27

pending assignment of judge" did not identify a judicial officer who sealed the case or state any reasons for the blanket sealing.  Entry Order Dated Mar. 4, 2020. Indeed, *Plaintiff's own counsel* could not even access the docket as a result of the blanket sealing.  *See* Entry Order Dated Mar. 6, 2020.  The blanket sealing of Plaintiff's entire case, without an order by a judicial officer, notice to the public, or explanation of the sealing, violated the First Amendment.  *See Co. Doe v. Pub. Citizen*, 749 F.3d 246, 266–67 (4th Cir. 2014).  The case was unsealed, again without explanation, only after Plaintiff filed a petition for a writ of mandamus in the Fourth Circuit.  *See* ECF Nos. 6, 9.

When Plaintiff attempted to obtain an explanation for the blanket sealing of her entire case, which remains unresolved to this day, Defendants asserted that the Clerk of Court likely "took the action that would be most protective of Plaintiff's asserted rights," and accused Plaintiff of engaging in "speculation and perception of conspiracies where none exist."  ECF No. 195, at 4 (quoting ECF No. 174, at 4). Subsequent discovery from Defendants revealed, however, that the district's Clerk of Court, Mr. Frank Johns, was directly involved in the facts of this case to an extent previously unknown to Plaintiff.

Following Plaintiff's EDR proceeding, Mr. Johns had exchanged emails with Plaintiff's EDR Investigator (his subordinate), Ms. Heather Beam, mocking and disparaging Plaintiff after she applied for other employment in the District

28

Court for the Western District of North Carolina. *Id.* at 5 (citing email from Mr. Johns stating, **"YEA! That is one more off the chess board!"** in reference to Plaintiff withdrawing her application to be a *pro se* law clerk, and response from Ms. Beam stating, **"Yep - I think she would have been a true pain in the you know what :)"** (emphasis added)). These emails demonstrate that Mr. Johns and Ms. Beam engaged in the sort of hostile and retaliatory behavior in relation to job prospects that the judiciary has identified as a serious barrier to reporting workplace misconduct. Mr. Johns and Ms. Beam also likely violated Plaintiff's confidentiality rights under the EDR Plan. Far from being "speculation and perception of conspiracies," ECF No. 174, at 4, this evidence raises a well-grounded, and highly troubling, perception in a reasonable person that Mr. Johns may have participated in unlawfully sealing this case because he was biased against Plaintiff, having been personally involved in the allegations at issue in her lawsuit, and in order to protect himself, his co-workers, or subordinates from embarrassment. The district court's failure to docket a judicial sealing order or state any reasons for the sealing raises further reasonable questions as to whether the judicial officer who authorized the sealing may have acquiesced in or shared an unlawful motivation. Had Plaintiff not used the remedy of mandamus to challenge the sealing, it is possible that this information may have never become public, and her case could still be under seal. Yet, Plaintiff's motion to unseal all orders and

29

Add 87

directions to seal this case and provide a public explanation for the blanket sealing has been pending for more than six months without a ruling.  ECF No. 195.

This proceeding involves other severe procedural irregularities that result in "irreparable" injury.  *Murphy-Brown, LLC*, 907 F.3d at 802.  That is because even if these errors can be remedied through a subsequent appeal, the delay required to address them will cause "irreparable" harm that cannot be remedied due to the unavailability of back pay.  *Id.*  Thus, the irreparable harm caused by the district court's refusal to rule on the PI motion may be compounded by the delay involved in a subsequent appeal.

It is "nose-on-the-face plain" that the loss of wages while a plaintiff "is contesting her ouster" constitutes "irreparable harm."  *Rosario-Urdaz*, 350 F.3d at 222.  "Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists."  *Id.*  Thus, each day, month, and year that passes without injunctive relief results in ongoing lost earnings that Plaintiff may never recover.  Indeed, the very fact that the district court and Defendants have engaged in delay tactics for a year and a half to avoid the possibility of an order of lost earnings highlights the injustice of the judicial exceptionalism created by the judiciary's exemption from Title VII and other civil rights laws.  These delay tactics, including Defendants' representations that the district court was "open" to a "pre-trial evidentiary

30

Add 88

hearing" on the PI motion, only to take the opposite position as soon as the appeal was dismissed, would not be possible in cases involving employees who are covered by civil rights statutes. *See supra*, at 5–6. That is because those employees have access to the remedy of back pay before final judgment.

It has been nearly five years since Plaintiff was constructively discharged due to a fundamentally unfair and discriminatory EDR process. It has been over a year since this Court anticipated a "prompt" ruling on her PI motion. Plaintiff should not have to wait months or years more for a resolution of her case. This Court should enforce Plaintiff's procedural rights under governing statutes and rules because that is what the law requires.

## CONCLUSION

For all the above reasons, this Court should take the necessary steps to ensure a prompt resolution of this case.

This the 30th day of October, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Petitioner*

31

Add 89

## CERTIFICATE OF SERVICE

I, Cooper Strickland, hereby certify that on this 30th day of October, 2023, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system.  Service on counsel for all parties in the district court will be accomplished by notice filed through the district court's CM/ECF system attaching a copy of this filing, as well as by email to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

<u>/s/ Cooper Strickland</u>
Cooper Strickland

32

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains less than 7,785 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland

33

Add 91

## ADDENDUM TABLE OF CONTENTS

Excerpts from Transcript of September 8, 2022 Hearing ........... Add. 1

Order Dated September 22, 2022 ................................................ Add. 5

Excerpts from Transcript of October 31, 2022 Hearing............. Add. 7

Order Dated January 26, 2023 .................................................. Add. 13

Excerpts from Transcript of June 21, 2023 Hearing ................. Add. 17

Summary Judgment Opinion Dated July 25, 2023.................... Add. 19

Excerpts from Transcript of July 27, 2023 Hearing.................. Add. 30

Order Dated October 4, 2023 ................................................... Add. 32

Memorandum to Chief Judge and Letter of Reprimand............ Add. 34

1    injunction is pursuant to the Federal Rules of Civil Procedure

2    65 combined with trial on the merits, so, Mr. Strickland, when

3    really do you want to go to trial here now?  I understand why

4    you want a prompt resolution, and I'm prepared to give it to

5    you, but we're going to have to have a trial to get there, so

6    when?

7              MR. STRICKLAND:  I believe we have one scheduled for

8    September 2023.  Everybody agreed to that at the status

9    conference.

10:10AM 10              THE COURT:  Everybody did, yes, but you're saying --

11    you see, I'm prepared to revisit that and give you a much more

12    rapid trial subject to what Mr. Kolsky says.  That is what we

13    agreed.

14              What I just did was collapse further consideration of

15    the preliminary injunction with trial on the merits, so I'm

16    asking you now since I'm not giving preliminary injunction

17    today and I'm not deciding it on affidavits, I want a trial, so

18    when is the earliest we can get to a trial that gets you the

19    relief that you seek?

10:11AM 20              MR. STRICKLAND:  You know, partly this is a very

21    difficult question to answer because it's just me here right

22    now.  The other counsel for the plaintiff have not been

23    admitted, and I'm going to try the best I can, but I understand

24    that that's your practice that you use, you collapse it down to

25    the merits.  I would have appreciated some notice of that so we

1    now because these issues have been going on for weeks, if not

2    months, trying to get counsel admitted here.

3              THE COURT:  Let's take care of it.  They're all

4    admitted so long as they comply with the local rules of the

5    Western District of North Carolina.  If they've submitted the

6    materials.  I see your problem that I have to actually act,

7    they're admitted, so now they're admitted.

8              MR. STRICKLAND:  I brought this up at the July status

9    conference, and you said the same thing, and it never happened,

10:15AM 10    and since that point in time, and we've informed the Court of

11    this in filings that Ms. Gersen has not --

12              THE COURT:  I will follow it up, I will follow it up.

13    Now, Mr. Strickland, maybe we ought to do this.  I've made my

14    order.  I do want to hear from Mr. Kolsky, but why don't you

15    and he confer, and why don't I set it down for a further

16    hearing to schedule a prompt trial, what would you say a week,

17    two weeks?

18              MR. STRICKLAND:  No, I cannot agree to that.  More

19    importantly, I think we're entitled to the preliminary

10:16AM 20    injunction now.  What it sounds like is that you're going to

21    set off a decision of that, and that's not allowed under Fourth

22    Circuit precedent.  You can do not an indefinite suspension of

23    this.  We are entitled to a ruling on the preliminary

24    injunction now.

25              THE COURT:  Mr. Strickland, I haven't done any

Add 94

8

1    indefinite suspension.  If you want me to put you to trial

2    without telling you, there won't be any indefinite suspension,

3    I'll set a prompt trial date.  Let me turn to Mr. Kolsky.

4         MR. STRICKLAND:  How do we get our discovery in this

5    context?

6         THE COURT:  You know, this idea about discovery.  You

7    know, you have subpoenas here.  There isn't a constitutional

8    right to discovery.  This is an important case.  It requires

9    careful attention.  You say you want prompt action.  I'll give

10:17AM 10   it to you.

11        Now, Mr. Kolsky, from your perspective, understanding

12   my practice, when can you be ready to try this case?

13        MR. KOLSKY:  Your Honor, we would prefer to stick with

14   the September 2023 trial date.

15        THE COURT:  He wants much faster action, and actually

16   I don't see a need to wait that long.

17        MR. STRICKLAND:  I don't, I don't.  I don't want it to

18   be framed that way.  That's not what I said.

19        THE COURT:  Well, I will tell you your proposal for a

10:18AM 20   preliminary injunction is woefully inadequate because, for

21   example, we don't know anything about the damages here.  Let's

22   say there was, just for the purpose of discussion, a reasonable

23   likelihood of success on the merits.  I wouldn't know how to

24   frame an order, and there has been none of these things have

25   been subject to cross-examination.  I'm entitled to actually

1   take evidence.

2          MR. STRICKLAND:  Yes.

3          THE COURT:  And I propose to take it and I propose

4   then to make a proper ruling on a proper evidentiary record.

5   Now, you can't tell me that I can't get to the merits.  If you

6   want to wait till September, then I will wait, and that's when

7   I will determine the matter, but that's not indefinite.  That's

8   what you're telling me.  I'm telling you the requirements for

9   equitable relief here are an evidentiary hearing beyond

10:19AM 10   affidavits, however we frame it.  Now let me put it that way,

11   if you want to call it a preliminary injunction, when do you

12   want this evidentiary hearing?

13          MR. STRICKLAND:  This is such a difficult position for

14   me to be in.  Last week I contacted your courtroom deputy and

15   asked whether this was an evidentiary hearing or an oral

16   argument.  She told me it was an oral argument.  We, therefore,

17   filed a notice on Friday waiving the oral argument, reiterating

18   yet again that we did not believe an evidentiary hearing was

19   necessary but if the court disagreed, to provide us notice of

10:19AM 20   that so we could provide a position.  I feel I've been brought

21   in here and sand bagged with this a little bit.

22          THE COURT:  Well, I'm sorry you feel that way.  I

23   really don't accept that.  The truth is I'm trying very hard to

24   accommodate you and safeguard the rights of all parties.

25          MR. STRICKLAND:  See, but what's curious to me is at

Add. 56

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

| | | |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 1:20-00066-WGY |
| UNITED STATES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

YOUNG, D.J.[1]                                      September 22, 2022

**ORDER**

     In view of the scheduling order of the United States Court
of Appeals for the Fourth Circuit, the hearing scheduled for
Wednesday, September 28, 2022 is continued until Wednesday,
October 26, 2022 at 2:00 p.m.

     While the Court is willing to entertain further such
motions should that be necessary, the public interest would seem
to require, see <u>Fed. R. Civ. P. 1</u>, that the Court address the
plaintiff's motion for partial summary judgment (which the
plaintiff has asked be first addressed) and the plaintiff's
motion for immediate equitable relief (upon which this Court
desires a prompt evidentiary hearing).

_____

[1] Of the District of Massachusetts, sitting by designation.

[1]

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE

```
 1    hearing.  And I read both the motion and the defendants'
 2    response and I appreciate both.
 3          And, Mr. Andonian, you're going to speak to this?
 4          MR. ANDONIAN:  Yes, your Honor.
 5          THE COURT:  All right.
 6          MS. STRICKLAND:  Your Honor, may I be heard on one
 7    other matter regarding the summary judgment motion?
 8          THE COURT:  No, there's no rebuttal, ma'am.
 9          MS. STRICKLAND:  It's not rebuttal.
10          THE COURT:  I said 15 minutes a side.
11          All right.
12          MS. STRICKLAND:  It's not for rebuttal.
13          THE COURT:  I beg your pardon?
14          MS. STRICKLAND:  We would request that under Rule
15    56(a) the Court state the reasons on the record for
16    denying the motion for partial summary judgment.
17          THE COURT:  Yes, and you're entitled to that.
18    Because in the Court's view, having reviewed the entire
19    record carefully, there exist genuine issues of material
20    fact as to each essential element that the plaintiff
21    must prove.  Therefore the motion is denied.
22          All right.
23          Mr. Andonian, um, I think the Fourth Circuit
24    understands exactly what I'm trying in fairness to do
25    here, so I'm not going to decouple my already-made
```

```
 1   ruling that consideration of a preliminary injunction
 2   will be combined with trial on the merits.  No one is
 3   hamstrung, no one is denied either discovery or the
 4   production of evidence at trial.  Indeed having looked
 5   over this evidentiary record in detail now, it seems to
 6   me that the plaintiff, um, herself is in possession of
 7   virtually all of the evidence necessary for the
 8   liability case, and as Mr. Kolsky has described with his
 9   various statements, the government is in possession of
10   the evidence that it will seek to rebut that evidence.
11        There may be something to expert testimony with
12   respect to a front-pay determination if we get to that
13   point, but the Court is open to a prompt evidentiary
14   hearing as to liability and then once the Court
15   determines liability, if we're going to further explore
16   damages, to set a later date for the exploration of
17   damages or some other remedy.  But I'm only going to do
18   it once.
19        Your motion for a prompt evidentiary hearing,
20   which Ms. Gersen is the lead person who signs that,
21   makes very clear that what you want is a hearing and
22   then you can appeal that and then we'll have the trial.
23   That's not helpful.  It does not, as Rule 1 requires,
24   "tend towards the just, speedy, and inexpensive
25   resolution of the case."  The case does present
```

1    that there isn't any discovery --

2           THE COURT:  Let me explain this to you about

3    discovery.  Wait.  Wait.  Only one of us can talk.  And

4    respectfully you're going to have to listen to me.

5           I haven't foreclosed any discovery.  I haven't

6    foreclosed subpoenas to bring people before the Court to

7    testify.  But this idea that we're going to have a round

8    of depositions so that every possible person is going to

9    be deposed and then we will have the trial, there is no

10   requirement due process or otherwise for that.  I am

11   offering a prompt trial.

12          Now in the real world the earliest I can get to it

13   probably is in December.  But as -- in December I will

14   give you the time necessary to put on your case and the

15   government the time necessary to put on its case just as

16   promptly as the Court has trial days.  All I'm asking is

17   when do you want it?  And when I hear that, I'll hear

18   from the government and hear when they want it.

19          This motion has made various statements about the

20   government withholding discovery.  Well I haven't heard

21   that from Mr. Kolsky and I'm not going to be very happy

22   about anyone withholding discovery.

23          So I'll hear from you or Mr. Andonian, but not

24   both.

25          Who's going to talk?

1        MR. ANDONIAN:  Your Honor, if I could?  And I'm

2    coming into this, you know, after some work has been

3    done so forgive me if I'm retreading a little bit of

4    ground.  But what I do think is important are a couple

5    of points.

6        The first is, um, just to piggyback on what

7    Ms. Strickland said, there is a need for discovery.  As

8    in any case, we don't know what we don't know until we

9    take discovery.  I don't understand the government to be

10   denying that and disputing that and in fact --

11       THE COURT:  I'm not saying they are, you give me a

12   date.  When do you want this hearing?

13       MR. ANDONIAN:  We want this hearing that's

14   pretrial and is not --

15       THE COURT:  Well that's not going to happen.  I've

16   already ruled on that.

17       MR. ANDONIAN:  If I could just ask, your Honor?  I

18   guess I'm confused as to what -- what the problem with

19   having a pretrial hearing is as opposed to the

20   consolidated trial?  With all due respect, I've

21   litigated plenty of these and I'm not sure I've ever had

22   a consolidated trial.

23       Rule 65 itself allows the testimony to be

24   incorporated into the trial record.  So this idea that

25   there would be duplication or undue burden, I guess I'm

```
 1    and I am happy with that.  But I'm simply asking for
 2    some reasonable proposal.
 3         Telling me you're going to put it on for a day and
 4    then now -- and of course you have the right, I'm not
 5    foreclosing the right, but if I did that, then you're on
 6    to the Court of Appeals with respect to that.  I don't
 7    propose to do it twice.  I propose to get all the
 8    evidence that is necessary to make difficult, difficult
 9    factual determinations here.  That's all.  And I propose
10    to do it in a reasonable way.
11         So, um, now your last chance.  Give some date
12    where we could begin to have this hearing?
13         Now I am persuaded of one thing.  If we go along
14    in the hearing and I come to a belief at the end of the
15    liability hearing that an immediate injunctive remedy is
16    required, I won't hesitate to grant it.  And I've
17    already laid myself open to saying that liability is one
18    thing and prospective relief is another and so maybe we
19    can put the prospective relief off further.  But I don't
20    really, um, and looking at this record, see what we're
21    waiting so long for?  I can't get you till December, get
22    to you till December, and I'm trying to -- well let me
23    go to the government while you think about it.
24         Mr. Kolsky, they haven't had a chance really to
25    digest your proposal.  Your proposal is fine by me,
```

```
 1    like in any other case, which I think would be
 2    beneficial here, I think the government thinks it would
 3    be beneficial here, and it would be in fact beneficial.
 4    The proposal is to simply have a pretrial preliminary
 5    injunction hearing and --
 6         THE COURT:  Mr. Andonian, um, I am not denying a
 7    preliminary injunction because I see that's your grounds
 8    for saying I am not giving you the attention that you're
 9    entitled, I have consolidated the two.  I am prepared to
10    go forward as early as November.
11         MR. ANDONIAN:  Your Honor, I --
12         THE COURT:  I have a double trial, but I am
13    prepared to go forward as early as November and
14    certainly trial days in December.  So your answer is --
15    you're only saying what you already said.
16         MR. ANDONIAN:  Your Honor, we are not prepared to
17    go forward with a trial on the merits without discovery,
18    and again I --
19         THE COURT:  Again no one says you'll be without
20    discovery.
21         MR. ANDONIAN:  Your Honor --
22         THE COURT:  You don't understand.  Subpoenas work.
23    Bring in the people.  If that's inefficient --
24         MR. ANDONIAN:  Your Honor, what I've been --
25         THE COURT:  If you think that's inefficient, the
```

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

_____
                              )
CARYN DEVINS STRICKLAND,       )
                              )
                Plaintiff,     )
                              )
        v.                     )          CIVIL ACTION
                              )          NO. 1:20-00066-WGY
UNITED STATES, ET AL.,         )
                              )
                Defendants.    )
_____)


YOUNG, D.J.[1]                              January 26, 2023

**MEMORANDUM**

After a somewhat contentious hearing, the parties appear to have settled down and are apparently engaged in preparing for a September 2023 trial – the date they all agree the case will be trial ready.

Upon reflection, the Court realizes that it has not formally ruled on the Plaintiff's "Motion For Prompt Evidentiary Hearing" (ECF No. 157). As was evident at the hearing, the Court thought the Plaintiff wanted her trial but she actually envisioned some sort of hybrid proceeding.

The Court has already combined further hearing on preliminary relief with trial on the merits as authorized by

_____
[1] Of the District of Massachusetts, sitting by designation.

[1]

Add 115

Fed. R. Civ. P. 65(a)(2), a course of action expressly confirmed here by the Fourth Circuit as within this Court's discretion. United States v. Strickland, 2022 U.S. App. Lexis 28846 (4th Cir. Oct. 18, 2022). The Court adheres to that position.

Still, the Court fully recognizes the Plaintiff's interest in prompt relief should she prevail on the merits. A decent respect for her concerns causes the Court briefly to outline its insistence upon a full trial.

Over a half century ago, I was privileged to serve as law clerk to a truly formidable and brilliant jurist, the Honorable Raymond S. Wilkins, Chief Justice of the Massachusetts Supreme Judicial Court. "Facts are like flint," Chief Justice Wilkins would say, and he taught me 1. that only a trial court could establish those facts, and 2. "their proper ascertainment is the entire goal of our adversary system." See Berthoff v. United States, 140 F. Supp. 2d 50, 91 (D. Mass. 2001) (emphasizing the vital role of judicial fact finding); In re Nexium (Esomeprazole) Antitrust Litigation, 297 F.R.D. 168, 176 (D. Mass. 2013) (same). Over the now forty-four years of my judicial service, the value of fair, thorough, and scrupulously independent **fact finding** has only increased in importance in a world where unfiltered instant information crowds the marketplace of ideas. The best way to ascertain the facts is, and always has been, at a **trial**, with live witnesses, thoughtful

[2]

Add. 156

cross-examination, and adherence to the rules of evidence.

Indeed, I've become skeptical of short cuts. See e.g. United

States v. Massachusetts, 781 F. Supp. 2d 1, 22n. 25 (D. Mass.

2011) ("Affidavits are the Potemkin Villages of today's

litigation landscape…  all lawyer painted facade and no interior

architecture").

> [F]act-finding is difficult.  Exacting and time
> consuming, it inevitably falls short of absolute
> certainty. More than any society in history, the
> United States entrusts fact-finding to the collective
> wisdom of the community. Our insistence on procedural
> safeguards, application of evidence rules, and our
> willingness to innovate are all designed to enhance
> impartial fact-finding.
>     Judicial fact-finding is equally rigorous.
> Necessarily detailed, judicial fact-finding must draw
> logical inferences from the record, and, after lucidly
> presenting the subsidiary facts, must apply the legal
> frame-work in a transparent written or oral analysis
> that leads to a relevant conclusion. Such fact-finding
> is among the most difficult of judicial tasks. It is
> tedious and demanding, requiring the entirety of the
> judge's attention, all her powers of observation,
> organization, and recall, and every ounce of analytic
> common sense he possesses. Moreover, fact finding is
> the one judicial duty that may never be delegated to
> law clerks or court staff. Indeed, unlike legal
> analysis, many judges will not even discuss fact-
> finding with staff, lest the resulting conclusions
> morph into judgment by committee rather than the
> personal judgment of the duly constituted judicial
> officer.

William G. Young, A Lament For What Was Once and Yet Can Be, 32
B.C. Int. & Comp. L. Rev. 312-313 (2009) (footnotes omitted)

I do not for an instant claim it is easy. But it is just.

Thus, the Court reiterates that it is the parties, not the

Court, who insist that they need until September 2023 to be

ready for trial. Consistent only with its established calendar

[3]

of actual trials, the Court stands ready to afford these litigants a full and fair trial just as soon as they are ready to go,[2] and will advance the trial date accordingly.

                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                              JUDGE
                                              of the
                                        UNITED STATES[3]

---

[2] I am reminded of a story told to me recently by my longtime colleague and friend, Judge George O'Toole. Like me, he served as a Justice of the Massachusetts Superior Court. Once, during a call of the lengthy civil list, counsel responded, "We'll be ready when reached, your Honor."

        "You have been reached," the Judge responded.
        So here.

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.

[4]

```
1          THE COURT:  For the defense?

2          MS. McMAHON:  Good morning, your Honor, I'm

3     Madeline McMahon from the Department of Justice, and

4     Danielle Wolfson Young from the Department of Justice.

5          THE COURT:  And good morning to you.

6          Well I called this status conference to make a

7     suggestion to you and let me tee it up.  First of all, I

8     am preparing for the hearing on the cross-motions for

9     summary judgment that is to be held on the 12th and I

10    want to keep that date, but as to -- and I want to thank

11    you, thank you both, both sides, because now, really for

12    the first time in my examination of this case, we've

13    moved beyond allegations to actual evidence and, um,

14    your, in large measure, thorough presentation of your

15    motions and supporting exhibits have been extremely

16    helpful, but I've noticed the following, there isn't too

17    much dispute as to liability, there isn't too much

18    dispute as to what went on here.  The issues, the major

19    issues are legal issues, what do we make of it when we

20    examine what went on here?  And with that in mind, I

21    offer the following suggestion.  And this is not

22    something that I can require and it's not something I

23    need a response from you this morning, although I'm

24    happy to explain, if I do not do so, the ramifications

25    of what I'm suggesting.
```

```
 1        In the First Circuit, and I know we're not in the
 2   First Circuit, we're in the Fourth Circuit, but in the
 3   First Circuit we have a procedure and it's fully
 4   appropriate, it's called a case-stated procedure, and
 5   under the case-stated procedure where the facts are not
 6   in dispute and what is in dispute is the legal
 7   requirements to be applied to those facts, the judge
 8   may, so long as there is not a significant, um,
 9   determination of competing views of the facts, the Court
10   may hold a hearing and taking the undisputed facts may
11   rule on the law and determine the case in whole or in
12   part.  That procedure holds significant advantages, I've
13   found, to a situation where there are competing motions
14   for summary judgment.  And let me explain how I use that
15   procedure because I think it would be helpful here.
16        If we go forward on the 12th and argue the
17   competing motions for summary judgment, under the --
18   under Rule 56 I am required, and I shall, take each
19   motion separately and, um, draw all inferences against
20   the moving party, and that could very well result in --
21   and I'm not -- my mind is completely open here.  I am
22   preparing for the hearing, so I am getting myself into
23   the actual evidentiary materials that are before me now,
24   and I will tell you that my mind is completely open.  If
25   you think I've got some agenda here, you won't go for
```

Add 190

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

————————————————————
                                    )
CARYN DEVINS STRICKLAND,            )
                                    )
                 Plaintiff,         )
                                    )
            v.                      )        CIVIL ACTION
                                    )        NO. 20-00066-WGY
UNITED STATES OF AMERICA, AND       )
JUDICIAL CONFERENCE OF THE          )
UNITED STATES, THE HON.             )
ROSLYNN R. MAUSKOPF, IN HER         )
OFFICIAL CAPACITY AS CHAIR OF       )
THE JUDICIAL CONFERENCE             )
COMMITTEE ON JUDICIAL RESOURCES     )
AND ADMINISTRATIVE OFFICE OF THE    )
UNITED STATES, JAMES C. DUFF, IN    )
HIS OFFICIAL CAPACITY AS DIRECTOR   )
OF THE ADMINISTRATION OFFICE OF     )
THE UNITED STATES COURTS,           )
SHERYL L. WALTER, IN HER            )
INDIVIDUAL CAPACITY, JOHN DOE(S)    )
C/O OFFICE OF THE GENERAL           )
COUNSEL FOR THE ADMINISTRATIVE      )
OFFICE OF THE UNITED STATES         )
COURTS, AND UNITED STATES COURT     )
OF APPEALS FOR THE FOURTH           )
CIRCUIT, JUDICIAL COUNCIL OF THE    )
FOURTH CIRCUIT, THE HON. ROGER      )
L. GREGORY, IN HIS INDIVIDUAL       )
CAPACITY AS CHIEF JUDGE OF THE      )
FOURTH CIRCUIT, JAMES N. ISHIDA,    )
IN HIS INDIVIDUAL CAPACITY IN       )
HIS OFFICIAL CAPACITY AS            )
CIRCUIT EXECUTIVE OF THE FOURTH     )
CIRCUIT AND AS SECRETARY OF THE     )
JUDICIAL COUNCIL OF THE             )
FOURTH CIRCUIT, AND FEDERAL         )
PUBLIC DEFENDER FOR THE WESTERN     )
DISTRICT OF NORTH CAROLINA,         )
ANTHONY MARTINEZ IN HIS             )
INDIVIDUAL CAPACITY AND HIS         )
OFFICIAL CAPACITY AS FEDERAL        )
PUBLIC DEFENDER FOR THE WESTERN     )
DISTRICT OF NORTH CAROLINA,         )

[1]

Defendants.    )
                   )
_____ )

YOUNG, D.J.[1]                              July 25, 2023

### MEMORANDUM AND ORDER

After the parties conducted extensive discovery and
briefed the relevant issues, this Court heard cross motions for
summary judgment on July 10th, 2023.  Pl.'s Mot. Summ. J. ("Pl.'s
SJ Mot."), ECF No. 243, Def.'s Mot. Summ. J.("Def.'s SJ Mot."),
ECF No. 245.  Pl.'s Mem. Supp. Summ. J.("Pl.'s Mem. Supp."), ECF
No. 243-1; Def.'s Mem. Supp. Summ. J.("Def.'s Mem. Supp."), ECF
No. 245; Pl.'s Mem. Supp. Renewed Mot. Summ. J. ("Pl.'s
Unredacted SJ Filing"), ECF No. 248; Def.'s Resp. Opp'n ("Def.'s
Opp'n"), ECF No. 249; Pl.'s Resp. Opp'n ("Pl.'s Opp'n"), ECF No.
250; Pl.'s Sealed Resp. Opp'n ("Pl.'s Sealed Opp'n"), ECF No.
253. Following that hearing, the Court granted the motions for
summary judgment in part, <u>viz</u>. the government's listing of
facts, where undisputed, were established for trial, took one
matter under advisement, and otherwise denied the cross motions
in their entirety.  <u>See</u> Minute Order, Electronic Clerk Note
entered on 7/10/2023.

The Court here addresses the reserved issue.

_____

[1] Of the District of Massachusetts, sitting by designation.

This Court took the fourth element of the deliberate indifference to sexual harassment claim under advisement, viz. that "the deliberate indifference was motivated by a **discriminatory intent**". Strickland v. United States, 32 F.4th 311, 359 (4th Cir. 2022)(citing Feminist Majority Found. v. Hurley, 911 F.3d 674 (4th Cir. 2018)(emphasis added). After a thorough review of the evidentiary record, this Court rules that Strickland failed to meet her burden at summary judgment because she does not provide any plausible evidence of discriminatory intent on behalf of any supervisory defendant **EXCEPT** Anthony Martinez ("Martinez") in his individual capacity and his official capacity as Federal Public Defender for the Western District of North Carolina. For this reason, summary judgment on the deliberate indifference claim is partially **GRANTED** with respect to all defendants **EXCEPT** Anthony Martinez.

### A. The Legal Framework

This case is directly controlled by the mandate of the Fourth Circuit in Strickland v. United States, 32 F.4th at 311. Here the plaintiff Caryn Strickland ("Strickland") claims, inter alia, she was denied equal protection of the laws due to the deliberate indifference of various judges and officials within the judicial branch of the United States (collectively "the government").

[3]

In <u>Strickland</u> the Fourth Circuit explained that the four
elements for a deliberate indifference claim to sexual
harassment are "essentially identical to those outlined by the
Fourth Circuit in <u>Feminist Majority Foundation</u>."  <u>Strickland</u> 32
F.4th at 359 (citing <u>Feminist Majority Found.</u> v. <u>Hurley</u>, 911
F.3d 674, 703 (4th Cir. 2018).  <u>Feminist Majority Found.</u> v.
<u>Hurley</u> sets out the four elements of such a claim and expressly
directs how this Court is to assess the fourth element of the
deliberate indifference to sexual harassment claim: "Because
there is no theory of respondent superior for constitutional
torts, a plaintiff must plead that each ... defendant has
violated the Constitution.  In the equal protection context,
this means showing that the supervisor ... intended to
discriminate on the basis of a protected class."[2]  <u>Feminist</u>
<u>Majority Found.</u> v. <u>Hurley</u>, 911 F.3d at 703 (citing <u>T.E.</u> v.
<u>Grindle</u>, 599 F.3d 583, 588 (7th Cir. 2010); <u>Ashcroft</u> v. <u>Iqbal</u>,
556 U.S. 662, 676-77,(2009)(explaining that, to allege equal
protection claim based on supervisory liability, plaintiff must

---

[2] In this respect, it is important to note that the
constitutional tort considered here does not sweep as broadly as the
judicial gloss on Title VII, where liability may flow from deliberate
indifference to a claim of sexual harassment because supervisory
personnel's intent is presumed.  <u>Burlington Indus., Inc.</u> v. <u>Ellerth</u>,
524 U.S. 742, 756 (1998)("An employer may be liable for both
negligent and intentional torts committed by an employee within the
scope of his or her employment. Sexual harassment under Title VII
presupposes intentional conduct.")

[4]

Add 234

plausibly demonstrate supervisor's discriminatory purpose)).

**Analysis of the Undisputed Facts**

Pursuant to Fed. R. Civ. P. 56, this Court, before it could grant any part of the government's motion, must determine what facts are genuinely undisputed and then must draw all reasonable inferences in favor of the non-moving party -- here Strickland. The Court has done so here.

After a thorough review of the voluminous evidentiary record -- and drawing all reasonable inferences in Strickland's favor -- there is simply no evidence, not a scintilla, with the possible exceptions discussed below, that **any** judge or judicial official acted on the basis of gender-based discrimination. Indeed, Strickland develops no such argument, and the Court must, therefore, enter summary judgment in their favor on the equal protection claim.

As to the three remaining defendants on the equal protection claim:

**1. Anthony Martinez, the Chief Federal Defender**

As to Martinez, Strickland has satisfied her burden of going forward sufficient to survive summary judgment on this issue. She has provided evidence that, were the Court to accept it and draw from it the inferences she urges, would warrant the Court in finding Martinez's deliberate indifference was

[5]

motivated by gender based discriminatory intent.  Prominent
among this evidence is Chief Judge Gregory's letter of reprimand
dated  May 28, 2019. Ex. D, ECF No. 248-5 at 80-83. The factual
findings in this letter constitute an unimpeached public record
pursuant to Fed. R. Evid. 803 (8)(A)(iii).  Strickland's
unredacted memorandum, ECF No. 248-1, summarizes the undisputed
evidence this Court has before it regarding Martinez's alleged
deliberate indifference motivated by gender based discriminatory
intent:

> [T]he Defender facilitated and ratified the First
> Assistant's quid pro quo harassment by diminishing
> Plaintiff's job duties and refusing to consider her
> for the grade-level promotion that was the subject of
> the First Assistant's "Mas Dinero" email, for which
> she was eligible on her work anniversary date. See Ex.
> C, at 9 (admission that Plaintiff "was eligible for a
> grade-level promotion"). In a sworn declaration filed
> in this proceeding, the Defender falsely stated that
> he had no "discretion" to raise Plaintiff's pay. ECF
> No. 78-3, ¶ 33; see Ex. C, at 10 (stating that "all
> grade-level promotions are awarded at the discretion
> of the Federal Defender"). The Defender gave Plaintiff
> a "reclassification" to AFD in title only, which he
> stated was "for purposes of case weight measurement."
> Ex. A, at 52. The Defender even backdated the
> reclassification to the day before Plaintiff qualified
> for the promotion. Ex. N, at 46. As part of the
> "reclassification," the Defender also attempted to
> remove Plaintiff's locality pay and reduce her salary
> by nearly 15 percent. Id. Contrary to the job
> description for an AFD position, which requires the
> attorney to carry her own caseload, the Defender
> required Plaintiff to continue serving in a research-
> and-writing support role. Compare Ex. A, at 52, with
> Ex. N, at 51-57.
>    The Defender told Plaintiff that he could not
> transfer her exclusively to appeals, even though he
> had an open position. Ex. M, at 33 ("Appeal FTE is

[6]

Add 156

2.75 (but have been surviving with 1.75 FTE))"; id. at
53 (office "needed more appellate support"). Thus, the
Defender required her to continue working for the
trial unit supervised by the First Assistant. See Ex.
A, at 52; Ex. C, at 3. The Defender also refused a
transfer to the Asheville division office. See id. The
Defender claimed there was no office space, but a few
months later, he began advertising positions for an
intern and a paralegal to work in Asheville. See Ex.
D, at 17; see also Ex. I, at 95 (FEOO had seen lack of
office space "used as an excuse previously in many
other cases"). Because of the Defender's continued
failure to address the harassment, Plaintiff did not
feel safe in the office and requested to work
remotely. Ex. A, at 51; see Ex. I, at 94–95
. . . The Defender, however, became furious when he
learned that Plaintiff had reported her allegations of
wrongful conduct to the AO. He "called her out on
contacting the AO to receive guidance on her civil
rights as a federal employee." Ex. D, at 81. The
Defender berated Plaintiff for going to "some other
party" and stated that he was being "blamed" and
"attacked" for something that was not his "fault." Ex.
A, at 30. The Defender minimized the harassment,
stating words to the effect that, "at least you
weren't touched." Ex. D, at 81.


Pl.'s Unredacted SJ Filing . The Court fully recognizes

that it is here quoting extensively from Strickland's **argument**.

It is, of course, making no such findings -- nor can it at the

summary judgment stage. The underlying facts, however, appear to

be undisputed and the argument well illustrates the plausible

conclusions a court could draw. Summary judgment must be

denied as to Martinez.

[7]

Add. 267

## 2. James Ishida, Circuit Executive

In relation to James Ishida, in her deposition Strickland alleges he violated her constitutional rights by criticizing her for going to the AO with her complaints.  Ex. 6 at 105:19-20. Mr. Ishida allegedly said "when that happens, barriers go up and people go on guard".  Id.  While Strickland interpreted this comment to be "a very adverse reaction to the fact that [she] had reported [her] complaints to the EO", Id. at 105:20-22, this comment does not rise to the level of deliberate indifference motivated by a discriminatory intent necessary for Ishida to remain as a defendant on this claim.

For example, in T.E. v. Grindle,[3] the plaintiff offered evidence creating a reasonable inference that the defendant, a school principal, **knew** about the Music teacher's sexual abuse and **deliberately** helped cover it up by misleading the girl's parents, the superintendent, and other administrators. Grindle, 599 F.3d at 589 (citing Cf. Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1190-91 (7th Cir.1986) (Posner, J., concurring) (suggesting that policy of **deliberately** refusing to respond to complaints of sexual harassment would support an inference of intentional discrimination))(emphasis added).  Here, unlike

---

[3] Cited by the Fourth Circuit in Feminist Majority Found. v. Hurley, 911 F.3d 674, 703 (4th Cir. 2018).

[8]

Grindle, no evidence of deliberate cover up by Ishida is alleged.  All that is presented is a general comment made by Ishida rising to no more than an observation from his experiences in dealing with reports.

At Strickland's own deposition, she alleged that Ishida "excluded [her] — or at least did not tell Heather Beam [the investigator], did not communicate to her.  Somehow, she believed that [Ishida] had excluded [her] claims against Tony from the investigation and she did not investigate those claims." Ex. 6 at 108-109:22-1.  No evidence as to why the investigator "somehow believed" that Ishida excluded Strickland's claims against Martinez is provided.  This evidentiary gap is simply too great to bridge.  This Court may not leap this evidentiary gap reasonably to infer Ishida's discriminatory intent arises by way of a **deliberate** cover up or other misleading behaviors due to Strickland's rightful reporting.  The Circuit Executive is entitled to summary judgment on this aspect of the case.

### 3. **Roger Gregory, Chief Judge, Fourth Circuit**

Strickland claims that gender based discriminatory intent may reasonably be inferred from the decision of the Chief Judge not to exclude Martinez from the EDR process here despite the

[9]

Add. 289

recommendation by the Investigator communicated to the Circuit
Executive that Martinez be excluded in this case.[4]

Here, it may reasonably be inferred that the Chief Judge at
least suspected that Martinez was somehow complicit in the
sexual harassment of Strickland.  That inference, however, does
not carry the day for her.  There are a plethora of wholly
legitimate inferences one may draw from the Chief Judge's
largely unrefuted testimony, each one negating any suggestion of
discriminatory intent.  Here, at summary judgment, it is not for
this Court to pick the "correct" inference.

At summary judgment, the Court only makes "rulings" not
"findings."  Here, therefore, the point is that to draw **any**
inference of **discriminatory** intent would be an inference too
far, an impermissible piling of inference on inference.
"[P]laintiffs need to present more than their own unsupported
speculation and conclusory allegations to survive summary
judgment."  Robinson v. Priority Auto. Huntersville, Inc., 70
F.4th 776 (4th Cir. 2023)(citing Fed. R. Civ. P. 56(a); Bouchat
v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir.

---

[4] This point is not admitted. While the email from the
Investigator to the Circuit Executive expressing doubts as to
Martinez's further participation is undisputed, the Chief Judge
testified he did not remember receiving a copy or having been
informed of it. ECF No. 255-2 at 33.  At the summary judgment stage
this Court infers it was conveyed to him and read.

[10]

Add 1290

2003).  The Chief Judge is entitled to summary judgment on this aspect of the case.

## B. Conclusion

Thus, it is this Court's obligation to **GRANT** partial summary judgment, ECF No. 245, on the equal protection claim to all defendants **EXCEPT** Anthony Martinez.  All other claims survive summary judgment and will stand for trial in September 2023.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[11]

```
 1    terrible.  So I'm a peasant on this.  Do it my way.  If
 2    you get to a number, I'm going to take it that it is
 3    admitted in evidence.
 4         Now what does that mean?  It doesn't mean it's
 5    established, it means it's evidence, which means as the
 6    factfinder I may decide that it is both authentic and I
 7    may decide that its substance is probative.  That's all.
 8    And I will use the normal means of reasoning to arrive
 9    at that result.  I don't think there should be much
10    dispute.  But I want a single exhibit list.
11         Now let's talk about the trial because of this
12    business about going to judicial mediation or something.
13    Look, I can give you a 5-day trial starting on the 5th
14    of September, going 9:00 till 1:00 for 5 days, except
15    the 5th is the Tuesday after Labor Day, so I may be
16    picking a jury on Monday or the following Monday.  So
17    I'm not sure I'm going to give you the, um -- that
18    following Monday.  So the 5th of September would be the
19    5th, 6th, 7th, 8th, that's four days.  The 11th, I, um
20    -- we'll have to see during that week how the rest of my
21    trial calendar is falling out.  But if I don't -- if I
22    start a jury case, I pick the jury on the 11th, I will
23    give you the 12th.
24         Now the 5 days, 9:00 till 1:00 are for evidence.
25    That's not -- I'm not arguing that you should, um -- I'm
```

```
 1   marvelous magistrate judges who are superb mediators and
 2   one has a nationwide reputation, Judge Maryanne Bowler,
 3   who has served as a mediator for multidistrict
 4   litigation outside the District of Massachusetts.  And
 5   this is something I've examined -- I've tried this
 6   ground before, Judge Bowler and I have served sometime
 7   together, and certainly I would be willing to ask her if
 8   she'd like to mediate this case, but that would pretty
 9   much obviate a trial in early September.  I mean we're
10   about to -- I don't know what her vacation status is.
11   I'd just be asking her.
12        But practically what are you thinking about in
13   judicial mediation?
14        MS. STRICKLAND:  You have to understand that --
15        MR. STRICKLAND:  That's a very difficult question
16   because of the preliminary injunction that has been
17   pending for so long and it's just -- this is a rock and
18   a hard place, and the resistance to mediation up until
19   this.  But we asked for it before, it's required under
20   the local rules here, we didn't get it, um, so it might
21   not be worthwhile.
22        THE COURT:  Well you see this is the final
23   pretrial conference today, I'm telling you when you'll
24   get a trial.  I'm not a mediator but I am a judge.  You
25   know cases can always be settled.  My instinct is to
```

Add. 23

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

```
                              )
CARYN DEVINS STRICKLAND,       )
                              )
                Plaintiff,     )
                              )
        v.                     )        CIVIL ACTION
                              )        NO. 1:20-00066-WGY
UNITED STATES, ET AL.,         )
                              )
                Defendants.    )
                              )
```

YOUNG, D.J.[1]                              October 4, 2023

**ORDER**

1. Trial will commence in this case on Monday, December 11, 2023[2] or on the next trial day following the conclusion of the case then on trial. There will be no continuance.

2. The plaintiff's motion for a protective order is denied. The grounds raised are obscure at best, and it is important promptly to conclude discovery. Accordingly, the continued deposition of the plaintiff will take place

---

[1] Of the District of Massachusetts, sitting by designation.
[2] The plaintiff having joined in the motion to refer the case to mediation, (and thus delay the September 5th trial in order to explore that remedy) now takes umbrage that the Court is not available to try the case just as soon as it was informed mediation had failed. That's not the way it works. Other cases (criminal and civil) are eager and ready for trial and have been previously scheduled in the interim.

[1]

Add. 34

as scheduled on Thursday October 12, 2023. There will be
no continuance.

3. The plaintiff's motion for sanctions is taken under
advisement. Her request to seal documents in connection
with that motion is denied as it does not comport with
Local Rule 6.1 (c).

4. The Court will schedule a further pre-trial conference at
its earliest convenience.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

# EXHIBIT A

USCA4 Appeal: 23-2132   Doc: 2-2   Filed: 10/30/2023   Pg: 36 of 42   Total Pages:(74 of 80)

OFFICE OF THE CIRCUIT EXECUTIVE
## UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

March 25, 2019

To:      Chief Judge Gregory

From:    James N. Ishida

RE:      Investigation Report – Caryn Devins Strickland

Attached is the investigation report that was prepared in the EDR/Report of Wrong Conduct matters filed by Caryn Devins Strickland. You must decide what disciplinary action, if any, should be taken against Federal Public Defender Anthony Martinez (N.C.W.D.) under Chapter IX of the Fourth Circuit's EEO/EDR Plan (November 2018) ('the Plan").

## I.    Summary

On September 10, 2018, Assistant Federal Public Defender Caryn Devins Strickland filed both an EDR Complaint under Chapter X and a Report of Wrongful Conduct under Chapter IX of the Plan, alleging sexual harassment, retaliation, and other acts of wrongdoing. Because both matters arose under the same general facts, I had ordered a joint investigation and appointed HR Manager Heather Beam, from the North Carolina Western District Probation Office, to handle the investigation.

While the investigation was ongoing, I had attempted to find a resolution through the counseling phase of the Chapter X EDR proceeding. In spite of extending the counseling period, I was unsuccessful in settling the matter. The counseling period ended on January 14, 2019.

On January 31, 2019, Ms. Strickland filed a timely request for mediation under Chapter X of the Plan. I thereafter appointed Edward G. Smith, Fourth Circuit Chief Mediator, to conduct the mediation.

The mediation period was extended once by mutual consent of Mr. Smith and Ms. Strickland. Eventually, Mr. Smith was able to persuade Circuit Judge Henry Floyd to offer Ms. Strickland a clerkship to the end of the term in June, and convince Ms. Strickland to withdraw her EDR complaint in return for the clerkship.

On March 11, 2019, Ms. Strickland submitted her request, asking that her EDR complaint be withdrawn.

## II.   Next Steps – Chapter IX Report of Wrong Conduct

The last remaining matter is Ms. Strickland's Report of Wrong Conduct under Chapter IX of the Plan.

USCA4 Appeal: 23-2132      Doc: 2-2      Filed: 10/30/2023      Pg: 37 of 42      Total Pages:(75 of 80)

Chapter IX describes the process for resolving a Report of Wrongful Conduct:

(a)     A Report of Wrongful Conduct is not the same thing as an EDR Complaint, and the two must be handled according to the procedures as set forth in their respective chapters,

(b)     An investigation must be conducted into the allegations,

(c)     All parties involved in the investigation must protect the confidentiality of the allegations, and

(d)     "Employees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct,[1] as defined in this Plan, may be subject to disciplinary action."

The investigation report recommends that disciplinary action be taken against the accused employee – Federal Public Defender First Assistant J.P. Davis – as well as the unit executive, Anthony Martinez.  You cannot decide any disciplinary action against Mr. Davis – that is within the authority of the unit executive.  But you can and are tasked with deciding if disciplinary action is appropriate for Mr. Martinez.

**III.     Additional Information**

I'll speak to you later about a conversation that I had with Cait Clarke, the chief of the AO's Defender Services Office, which may help with your decision regarding Mr. Martinez.

Attachment

---

[1] "Wrongful conduct" is defined to include "[d]iscrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited." *See* Chapter II, section 1 of the Plan.

# Exhibit 69

OFFICE OF THE CIRCUIT EXECUTIVE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES N. ISHIDA
CIRCUIT EXECUTIVE

1100 EAST MAIN STREET, SUITE 617
RICHMOND, VIRGINIA 23219-3517

May 28, 2019
**CONFIDENTIAL**

Mr. Anthony Martinez
Federal Public Defender
129 West Trade Street, Room 300
Charlotte, NC 28202

RE:     Counseling re Caryn Devins Strickland's Report of Wrongful Conduct

Dear Tony:

I was delighted to see you at last week's Fourth Circuit's Workplace Conduct Conference in Richmond, VA. It gave me the timely and fitting opportunity to speak to you about the contents of this letter of counseling.

On behalf of Chief Circuit Judge Roger L. Gregory, I write to inform you that you are being counseled for your actions arising from the Report of Wrongful Conduct submitted by Caryn Devins Strickland on September 10, 2018, under Chapter IX of the *Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan of the United States Court of Appeals for the Fourth Circuit* ("the Plan").

## I.     Background

On September 10, 2018, Ms. Strickland submitted a Report of Wrongful Conduct under Chapter IX and a Request for Counseling under Chapter X[1] of the Plan, alleging sexual harassment, retaliation, and discrimination during her employment with your office. In her Report of Wrongful Conduct, styled Official Grievance, Ms. Strickland claimed that "[t]he First Assistant [JP Davis] has abused his power and offered employment preferences for his unwanted advances." Ms. Strickland explained that Mr. Davis subjected her to unwanted advances, unreasonably interfered with her work assignments, and even proposed an unsavory quid pro quo proposal on her request for a promotion and raise.[2] Ms. Strickland also included you in her allegations.

With the approval of Chief Judge Gregory, I appointed Heather Beam to investigate Ms. Strickland's Report of Wrongful Conduct.[3]

---

[1] Ms. Strickland voluntarily withdrew her Chapter X claims on March 11, 2019, and they are not part of this letter of counseling.

[2] In an email dated May 18, 2018, and titled "Mas Dinero," Mr. Davis responded to Ms. Strickland's request:

Dude, you're shooting high with a G15. Not least of all since you'll need 5 more years of fed service to qualify for it. But fret not, I have a plan . . . just remember I deal in pay-for-stay 😊

[3] Under Chapter IX of the Plan, "[t]he EDR Coordinator shall promptly inform the Chief Judge and unit executive of any report. The Chief Judge and/or unit executive shall ensure that the allegations in the report are appropriately investigated, either by the human resources manager or other person."

US00004264

Anthony Martinez
May 28, 2019
Page 2

## II.   The Investigator's Report

Following a painstaking investigation, Ms. Beam issued her Counselor's Report on November 19, 2018, later supplemented on January 11, 2019. In her report, Ms. Beam suggested that you "be counseled and trained on how to handle workplace conduct complaints. He should also be counseled or training [sic] on judgement and decisiveness." Ms. Beam explains:

> For example, Caryn states when she initially brought her complaint to Mr. Martinez he compared her relationship with the First Assistant Defender as a marriage and asked her to compromise. He also made comments bade [sic] on Caryn's report such as "At least she was not touched" and called her out on contacting the AO to receive guidance on her civil rights as a federal employee. He also stated he was being blamed for something that was not his fault. It is evident this claim was mishandled from the beginning by Mr. Martinez and he would benefit greatly with additional training on workplace conduct as well as basic managerial/leadership skills.

### A.   Marriage Metaphor

On or around July 5, 2018, you met with Ms. Strickland and Mr. Davis to resolve a "breakdown in communications." Though well-intended, you had not abided by Ms. Strickland's wishes that she meet with you privately to discuss Mr. Davis's conduct. This made Ms. Strickland feel "uncomfortable" and "intimidated," having to confront the person she accused of sexually harassing her. She was also troubled by your characterization that this was a simple misunderstanding, feeling that you had trivialized the incident.

After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a "marriage," with the parties needing to "compromise" and "meet in the middle." Ms. Strickland said that she was "shocked" and "offended" at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a "marriage." The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her.

### B.   No Physical Touching

You had a subsequent discussion with Ms. Strickland in which you attempted to clarify whether Mr. Davis had touched Ms. Strickland or had engaged in other inappropriate behavior. Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, "at least you weren't touched," or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt.

US00004265

Anthony Martinez
May 28, 2019
Page 3

C.    Disapproval of Seeking Outside Advice

Ms. Strickland had also sought advice and guidance from the Fair Employment
Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a
judiciary employee.  The investigator found that you had "called out" Ms. Strickland for seeking
legal advice from that office, which further eroded trust between you and Ms. Strickland and
exacerbated the deteriorating situation in your office.

D.    Shifting Responsibility

Finally, the investigator noted that you had said you were being blamed for matters that
you had nothing to do with.  Ms. Strickland reported that she felt "offended" by your protest,
which she perceived as disapproving her right to seek outside advice and counsel from the AO
Fair Employment Opportunity Office.  This, the investigator concluded, contributed to your
mishandling of the matter.

E.    Mitigating Factors

In mitigation, Investigator Beam found that you had acted expeditiously to accommodate
Ms. Strickland's requests, except her request to be transferred to your Asheville Office.  You had
noted, however, that there was no physical space in that office to accommodate Ms. Strickland.

The investigator also found that you had acted in good faith in accommodating Ms.
Strickland's request to telework, and you were flexible in other work assignments.

Finally, Ms. Strickland alleged that you had retaliated against her by denying merit-based
promotional opportunities and by removing her locality pay.  The investigator found that these
allegations are without support.

F.    Conclusion

In conclusion, Investigator Beam reported that she did "not see a case for retaliation based
on [her] investigation and the facts presented by both sides."  The investigator also concluded
that "Mrs. Devins has experienced in her mind sexual harassment although the facts discovered
in this case find this claim to be very flimsy."

But the investigator did record the numerous missteps that you committed, which
contributed to Ms. Strickland's perception of mistreatment and retaliation by you.  These
missteps appeared to have exacerbated the underlying situation, and they broke trust between
you and Ms. Strickland.  This was not helpful.  But the investigator observed that most of your
"decisions . . . were made at the end of a day where [you had] attended meetings all day and was
tired."  She found that your actions were not motivated by malice or ill-will, but rather were the
result of poor judgment caused by fatigue.

CONFIDENTIAL, Subject to Protective Order, ECF No. 183

US00004266

Add. 42

Anthony Martinez
May 28, 2019
Page 4

Taking all of this into account, the investigator concluded that harsher discipline was not appropriate; instead, she recommended that you should be "counseled or train[ed] on judgement and decisiveness," in addition to be "counseled and trained on how to handle workplace conduct complaints."

## III.   Chief Judge Gregory's Decision

Under Chapter IX of the Plan, "[e]mployees found by the Chief Judge and/or unit executive to have engaged in wrongful conduct, as defined in this Plan,[4] may be subject to disciplinary action." After careful consideration of the investigator's report, supporting attachments, and documents filed in this case – and noting the mitigating circumstances – Chief Judge Gregory has decided to adopt the recommendations contained in the report.

In addition to this letter of counseling, Chief Judge Gregory hopes that you will avail yourself of continual workplace conduct, decision-making, and leadership training opportunities. The Fourth Circuit's highest priority is to ensure a safe, civil, professional, and collegial workplace for all court employees, and it expects its managers and leaders to uphold the same standard. Anything less is unacceptable.

Chief Judge Gregory also wanted me to convey that the Fourth Circuit unequivocally stands behind you and your efforts to create a safe, civil, professional, and collegial work environment in your office. Therefore, if there is anything that I or my colleagues can do to support your efforts, please feel free to call upon me anytime.

Best regards,

cc:     Honorable Roger L. Gregory

---

[4] Under Chapter II, section 1 of the Plan, "wrongful conduct" is defined:

> Discrimination against employees based on race, color, religion, sex (including pregnancy and sexual harassment), national origin, age (at least 40 years of age at the time of the alleged discrimination), and disability is prohibited. Harassment against an employee based upon any of these protected categories or retaliation for engaging in any protected activity is prohibited. All of the above constitute "wrongful conduct."

US00004267