IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
|                       *Plaintiff*, | ) |
| v. | ) Civil No. 1:20-cv-00066-WGY |
| UNITED STATES, *et al.*, | ) |
|                       *Defendants*. | ) |

## PLAINTIFF'S NOTICE OF CHALLENGE TO CONFIDENTIALITY DESIGNATION

Pursuant to the Parties' Protective Order, ECF No. 183, Plaintiff hereby provides notice that she is challenging Defendants' confidentiality designations over the materials contained in Plaintiff's proffered trial Exhibit BB. Exhibit BB contains materials relating to four other EDR complaints filed against the Federal Defender Office ("FDO") for the Western District of North Carolina. The information that has already been disclosed publicly about these complaints includes, *inter alia*, **allegations that Federal Defender Anthony Martinez used "crude language regarding women and members of the LGBTQIA+ community," including by referring to a female Assistant United States Attorney as a "fucking bitch," and that First Assistant JP Davis used "sexual hand gestures."** ECF No. 249, at 21–22; ECF No. 401, at 159.

During discovery, Defendants designated the EDR complaints and related discovery responses as "confidential" pursuant to the Protective Order. Since then, however, information related to those materials has been publicly disclosed in filings and open court during trial. Accordingly, there is no longer any legitimate basis to designate this information as confidential. Moreover, the Court has not ruled on Plaintiff's repeated requests for clarification about whether

1

these materials should be filed publicly or under seal, which has prevented her from filing these materials as part of the trial record and to preserve her objections to the Court's rulings at trial for appeal. As a result, Plaintiff has been effectively silenced from presenting these materials and denied her due process right to be heard, which underscores the importance of striking Defendants' confidentiality designation so the materials can be made public.

I. **Defendants Have Waived Any Right to Assert a Confidentiality Designation by Publicly Disclosing Information Related to the Four Other EDR Complaints.**

"When a party challenges its opponent's designation of materials as 'confidential' under a protective order, the party claiming confidentiality bears the burden of proving that the purportedly confidential documents are, indeed, confidential, as defined in the governing confidentiality order." *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-510, 2011 U.S. Dist. LEXIS 163147, at *7 (D. Md. Apr. 12, 2011). Under the Protective Order, "Confidential Information" is information designated as confidential because of the party's "good faith belief that the information is confidential, *non-public* information." ECF No. 183, at 1–2 (emphasis added). Thus, by definition, to be confidential, information must be "non-public." *Id.* The term "[d]isclose" means "to distribute, provide, or otherwise make available for access, viewing or copying." ECF No. 183, at 2. "'Disclose' shall include the actual covered document or item *as well as the contents or information contained therein*, such that disclosing a copy, *summary, paraphrasing, or characterization of the Confidential Information would be considered a disclosure of the document itself for purposes of this Protective Order.*" *Id.* (emphasis added). Finally, the Protective Order provides that "[n]othing in this Protective Order shall restrict the right of any Producing Party to use its own Confidential Information for any purpose whatsoever, but if any such use results in a disclosure that causes the Confidential Information to

2

lose its designation as Confidential Information, then it shall no longer be subject to any protection under this Protective Order." *Id.* at 5.

Defendants' confidentiality designation should be stricken because Defendants have waived any right to assert confidentiality in these materials by publicly disclosing information related to the four other EDR complaints. Likewise, Defendants failed to object when Plaintiff properly disclosed similar information in open court during trial, pursuant to the Court's orders that "[t]his entire proceeding is going to be public," the Court would not "honor" materials "denominated 'confidential' in the course of discovery," and "[i]f something is going to be proffered to the Court as a basis for making findings and rulings, it's going to be public." ECF No. 399, at 10. Defendants' selective use of the Protective Order to prevent the EDR complaints from becoming public, while also themselves disclosing, or not objecting to Plaintiff's disclosure of, similar materials, indicates that they are misusing the Protective Order to prevent disclosure of embarrassing information rather than to legitimately protect confidential information. *Cf. Vaughan Furniture Co. v. Featureline Mfg.*, 156 F.R.D. 123, 128 (M.D.N.C. 1994) (in context of privilege assertion, concluding that "when a party makes affirmative use of confidential information, it waives protection of other related confidential information pertaining to the subject matter" (citing *In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir. 1988)).

*First*, Defendants themselves have summarized, paraphrased, and characterized the EDR complaints in their public filings. In fact, in Defendants' summary judgment filings, Defendants summarized the EDR complaints as including, *inter alia*, "**the Defender's alleged use of crude language regarding women and members of the LGBTQIA+ community and the First Assistant's alleged use of sexual hand gestures.**" ECF No. 249, at 21–22 (emphasis added).

3

Likewise, Defendants have repeatedly disclosed that the EDR complaints contain, in part, allegations of "[w]histleblower retaliation" and "[d]iscrimination on the basis of age, race/national origin, and gender," directly quoting from materials they had previously designated as confidential. *Id.* at 21; *see also* ECF No. 330, at 1 (stating that EDR complaints contain allegations of "age discrimination and whistleblower retaliation").

Even though Defendants have publicly disclosed these facts, they have required Plaintiff to redact, and seek sealing of, any discussion of the EDR complaints from her own public filings by use of the Confidentiality Designation. *See, e.g.*, ECF No. 249, at 21 (quoting Plaintiff's redacted summary judgment exhibit in Defendants' public filing); ECF No. 330, at 1 (citing Plaintiff's redacted motion relating to EDR complaints in Defendants' public filing). Under the Protective Order, Plaintiff is *required* to request sealing of any information designated by Defendants as confidential absent their written permission, which they have not provided. *See* ECF No. 183, at 12 ("Unless the Designating Party gives written permission, all Confidential Information that is filed with the Court must be filed under seal or *in camera* . . . ."). Defendants have, therefore, enforced a pattern of requiring Plaintiff to redact and seek to seal information related to the other EDR complaints, while selectively quoting or disclosing facts related to the same materials in furtherance of their own litigation strategy. Defendants directly benefitted from that strategy because they successfully convinced the Court to exclude Exhibit BB from evidence based on their representations about the other EDR complaints, even though the Court had not even reviewed the unredacted arguments in the parties' motions *in limine*.[1] Defendants'

---

[1] As discussed below, the Court suspended the local rules regarding sealing after Plaintiff initially attempted to file information regarding the EDR complaints under seal in April 2023. *See* ECF No. 203. Following trial, the Court has failed to clarify whether the EDR complaints

4

Case 1:20-cv-00066-WGY   Document 412-1   Filed 04/25/24   Page 4 of 11

use of the Protective Order as both a "sword" and a "shield" is impermissible. *Vaughan Furniture Co.*, 156 F.R.D. at 128.

*Second,* Defendants failed to take the necessary steps under the Protective Order to prevent information related to the EDR complaints from being introduced publicly at trial. The Protective Order "does not govern the use by the Parties of Confidential Information in open court at any hearing or trial." ECF No. 183, at 4. Prior to the use of such information, the Protective Order requires that a party give "reasonable notice to the producing party who, after a good faith effort to meet-and-confer, may seek additional relief from the Court." *Id.* at 13.

Defendants were on notice several months before trial that Plaintiff intended to use the other EDR complaints at trial. *See, e.g.*, ECF No. 259, at 113. Prior to trial, Defendants' counsel stated in an email that "[w]e believe that Plaintiff's exhibits [that] contain information about EDR matters or personnel actions . . . should not be made public without the consent of the individuals to whom the information pertains," ECF No. 374-1, but Defendants' counsel never subsequently sought "additional relief from the Court" as required by the Protective Order. ECF No. 183, at 13. Underscoring this point, the Court specifically stated during the trial that "I have sealed nothing that is going to be used as a trial exhibit. The burden is on the party to seek to have an exhibit treated other than as a public document." ECF No. 399, at 14.

During the trial, the Court allowed Plaintiff to make offers of proof related to the EDR complaints. Specifically, the Court stated: "You may recite your offers of proof, they'll be on the record, the Court Reporter will take it down." ECF No. 401, at 155. Defendants did not

---

should be filed publicly or under seal, which has prevented Plaintiff from filing her written proffer regarding the EDR complaints with the Court. *See* ECF No. 387.

object or make any attempt to close the courtroom for Plaintiff's proffer. Plaintiff then made the following proffer on the public record, as instructed by the Court:

> [O]ne of the things is that when Mr. Martinez testified that he was reorganizing the attorney structure, after he announced the promotions, a female Assistant Federal Public Defender filed an EDR complaint against him and alleged that she was discriminated against because she was demoted from a supervisory position to a line attorney and replaced by a man.
>
> The second offer of proof is that another Assistant Federal Public Defender warned Mr. Martinez that JP Davis was not suited to have supervisory authority over other people, and she told him that he should not rely on Mr. Davis. As part of her allegations in her EDR complaint, she alleged that she was later retaliated against in part for making those remarks.
>
> . . .
>
> [I]n response to Mr. Martinez's statements that he took personnel actions regarding the ***Dixon*** case, including removing the first chair based on his concerns about ineffective assistance of counsel, this employee, um, or this attorney who was removed, in fact filed an EDR complaint against Mr. Martinez alleging that he was retaliated against for reporting wrongful conduct, and then [Mr. Martinez] testified that he took over the case and that the case was handled better because he took it over.
>
> Our offer of proof on that is that he testified that he did not have a second chair on that case. There's a female Assistant Federal Public Defender who filed an EDR complaint against Mr. Martinez and in part of her allegations she alleged that she was assigned as the second chair of that case, that Mr. Martinez failed to follow any of the basic steps towards properly preparing the case, that the motions that Mr. Martinez eventually filed in the case were motions that the Research and Writing attorneys, including myself and Jared Martin, had proposed months earlier. And this attorney alleged that Mr. Martinez made other questionable decisions, like replacing an experienced litigation paralegal with a new paralegal who had very limited criminal defense background and had never handled a case of this type. This attorney also alleged that Mr. Martinez had mismanaged the plea negotiations with the government. And she also alleged that when Mr. Martinez lost the plea offer, um, as a

6

> result of mismanaging the plea negotiations, he referred to the
> female Assistant United States Attorney as being a "fucking bitch."

ECF No. 401, at 156–59. During Plaintiff's proffer, Defendants objected that "this document should not be displayed publicly" because "it's not sufficiently redacted," but Defendants failed to seek sealing of the information prior to its use in open court. *Id.* at 157. Additionally, Defendants did not request to redact the trial transcript during the time allowed by court order, which means that the transcript will be made publicly available without redaction after 90 days or June 6, 2024. *See* Docket Entry Dated March 11, 2024, ECF No. 401.

*Third*, Defendants have publicly released exhibits containing information related to other employees' EDR complaints without seeking to redact or seal that information. On December 27, 2023, and April 5, 2024, Defendants' counsel emailed Plaintiff's counsel and asked if Plaintiff had any objection to Defendants making exhibits "available to the public" that Plaintiff previously had designated as confidential. *See* Ex. A. On both occasions, Plaintiff responded that the materials had been designated confidential because they "involve EDR matters" and "other employee personnel matters." *Id.* At no time did Defendants seek to seal or redact this information before providing it to the public.

In short, Defendants' confidentiality designations over other EDR complaints should be stricken. Because material regarding the other EDR complaints has already become public, there is no legitimate basis to designate the materials confidential.

**II.     The Court's Failure to Clarify Whether the Parties Should File Materials Related to the EDR Complaints Publicly or Under Seal Further Underscores the Need to Strike Defendants' Confidentiality Designation.**

For a full year, this Court has prevented Plaintiff from filing the EDR-related materials as part of the record in this case. Plaintiff initially submitted evidence regarding other EDR

complaints on April 14, 2023, with her response to Defendants' motion for a protective order from Chief Judge Gregory's deposition. *See* ECF No. 199. She submitted the materials under seal because Defendants had marked them as confidential and opposed their unsealing. *See* ECF No. 201. Pursuant to Local Rule 6.1, which states that a "party seeking to file material under seal may submit an unredacted version of the material under seal for review by the Court along with the motion to seal," Plaintiff filed the unredacted version of her response and accompanying exhibits under seal. WDNC Local Rule 6.1(d). Plaintiff contended that the materials showed that deposition questioning of the Chief Judge was warranted, in part, because "Chief Judge Gregory was responsible for overseeing all EDR complaints within the Circuit during Plaintiff's employment at the FDO," and he "has unique knowledge regarding the Circuit's response to harassment and discrimination that no other official would have." ECF No. 199, at 13.

This Court responded to Plaintiff's submissions by *sua sponte* suspending Local Rule 6.1 and refusing to consider any of the materials Plaintiff submitted under seal in compliance with Rule 6.1. ECF No. 203. The Court stated that it had "consulted only the redacted filings before it in arriving at its conclusion," and that any documents "purportedly under seal . . . are to be returned to the sender." *Id.* at 2. The Court further stated: "**Nothing** is to be filed in court under seal unless and until this Court upon motion expressly so orders." *Id.* The Court thus *sua sponte* suspended Rule 6.1, which expressly allows a party to submit materials under seal for the Court's review pending a sealing determination, and barred the parties from submitting any sealed materials without prior court approval. While the Court allowed Plaintiff to depose Chief Judge Gregory regarding his refusal to disqualify the Defender, it did not allow any questioning regarding his knowledge of other EDR complaints. *Id.* at 2 ("The deposition is limited to

8

the decision not to disqualify the Federal Public Defender after challenge . . . .").

Since then, the Court granted summary judgment in favor of all Defendants except for Anthony Martinez on the equal protection claim, even though it did not rule on Plaintiff's motion to seal evidence regarding other EDR complaints and did not even review the materials she had requested to submit before issuing its ruling. *See* ECF No. 292-1, at 14–17 (describing Court's issuance of ruling against Plaintiff without even reviewing her evidence and arguments). Thereafter, the Court denied Plaintiff's motion to reconsider the Court's summary judgment ruling on the basis that the Court had refused even to review the MeToo evidence, but still without reviewing that evidence or even allowing Plaintiff to file it with the Court. *See* Entry Order Dated December 13, 2023; ECF No. 405, at 8–10. During the hearing in which it denied Plaintiff's motion, the Court even stated, "the plaintiff is correct, I looked at the redacted data," acknowledging that it had refused even to review the MeToo evidence before issuing its ruling. *Id.* at 9–10. The Court addressed the summary judgment standard as it applied to its denial of summary judgment in favor of Defender Martinez, but the Court failed to address its *grant* of summary judgment in favor of the other Defendants, including the Chief Judge and the Circuit Executive, in light of the MeToo evidence it had refused to consider. *Id.* at 8–12.

Thereafter, during the trial, the Court initially stated that all exhibits would be public, but then ruled that it would review the EDR complaints "as sealed" for purposes of evaluating the motions *in limine*. ECF No. 402, at 28–29. But later, the Court excluded the evidence in its entirety, without allowing Plaintiff to file the evidence under seal. ECF No. 403, at 68. The Court did state, however, that it would allow Exhibit BB to serve as a written proffer for purposes of appeal. *Id.* at 73.

9

Following the trial, on January 3, 2024, Plaintiff filed a motion requesting clarification, *inter alia*, on "whether Plaintiff's references to Exhibit BB in her proposed findings should be filed publicly or under seal." ECF No. 386, at 1. On March 21, 2024, the Court issued a ruling addressing other aspects of Plaintiff's motion to clarify, but the Court did not address Plaintiff's request to clarify whether Exhibit BB and related references in her proposed findings should be filed publicly or under seal. ECF No. 404. As a result, Plaintiff has been prevented from filing her unredacted proposed findings for the Court's review. Plaintiff cannot file the EDR materials publicly without risking contempt of court because they have been marked confidential by Defendants. *See supra*, at 4.

In short, the fact that the Court has repeatedly ruled against Plaintiff without even reviewing her MeToo evidence and related arguments further counsels in favor of striking Defendants' confidentiality designation, so that the evidence may be made part of the record.

## CONCLUSION

This Court should strike Defendants' confidentiality designation over Plaintiff's proffered Exhibit BB.

This the 19th day of April, 2024.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2024, I will email the foregoing to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com