# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, et al., | ) ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO CORRECT TRIAL TRANSCRIPT

Pursuant to Federal Rule of Civil Procedure 60(a), Defendants respectfully move for an order to correct certain typographical transcription errors in the transcripts of the bench trial of this matter. It is within the Court's authority to correct these errors, and doing so will ensure that the transcript more accurately reflects the actual testimony provided at trial. Accordingly, the Court should order that the trial transcripts be amended as requested herein.

Defendants' counsel contacted Plaintiff's counsel on August 8, 2023 about this motion. Plaintiff's counsel asked Defendants' counsel to provide the following statement in this motion: "Because of the number of revisions requested by Defendants, both substantive and non-substantive, Plaintiff believes it is necessary to review Defendants' motion in its entirety prior to responding."[1]

---

[1] The timing of this motion, coming close in time to the Court's entry of its Findings of Fact, Rulings of Law, and Order for Judgment, ECF No. 429, is pure coincidence. Defendants had initially planned, prior to receiving the Court's ruling, to file this motion on August 9, 2024. For clarity, none of the transcript corrections addressed in this motion require or warrant any change to the Court's conclusions and judgment as set forth in ECF No. 429. Defendants submit this motion solely for the purpose of ensuring an accurate trial record in the event of an appeal.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." *See also* Fed. R. App. P. 10(e)(1) ("If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly."). "The relevant test . . . is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule." *Rhodes v. Hartford Fire Ins. Co.*, 548 F. App'x 857, 859 (4th Cir. 2013) (quoting *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 130 (3d Cir. 2005)).

## ARGUMENT

Defendants have identified instances of transcription errors in the trial transcripts. The attached declarations of Anthony Martinez and John Parke Davis explain that the transcripts of their testimony differ in some respects from the actual testimony they provided at trial. In addition to the declarations, there are further indications that the errors are the result of mistakes in transcription. For example, in one instance, the Court accurately repeated certain testimony given by Mr. Davis in a way that differs from Mr. Davis's testimony as recorded in the transcript. Specifically, the transcript records Mr. Davis testifying as follows: "I believe I told the investigator that I was very upset, **that** I was controlling myself." Dec. 18, 2023 Tr. 99:7-9 (emphasis added). A few lines later, the transcript records the Court repeating Mr. Davis's testimony as follows: "He said that he was very upset, **but** he was controlling himself, that's his testimony here today." *Id.* at 99:14-16 (emphasis added). In other instances, the witness was reading from an exhibit and that exhibit differs from the reported testimony. *Compare id.* at 114:6-7 (Mr. Davis reading from Trial Exhibit 11 as follows: "well on their way to **assess** at the meeting last night") (emphasis added) *with* Tr. Ex. 11 ("well on their way to **a PIP** at the meeting

last night") (emphasis added); *compare* Dec. 14, 2023 Tr. (at 78:9) (Mr. Martinez reading from Trial Exhibit 170 as follows: "Please do not e-mail, text, or meet with **him**[.]") (emphasis added) *with* Tr. Ex. 170 ("Please do not e-mail, text, or meet with **Caryn**[.]") (emphasis added).

Other transcription errors are apparent based on the surrounding testimony. For example, Mr. Davis was asked "[i]n the next few weeks after June 7th, 2018, what was your relationship with Ms. Strickland like?" Dec. 18, 2023 Tr. at 69:20-21. Mr. Davis responded, in part, that "there still were a couple of moments that were tense." Davis Decl. ¶ 7. But the transcript records his testimony as: "There still were a couple of **months** that were tense." Dec. 18, 2023 Tr. at 69:23-24 (emphasis added). That reference to "months" is inconsistent with the preceding sentence in which Mr. Davis testified that "[i]t was tense, um, particularly to begin with, but **over the weeks it got better** and more friendlier." *Id.* at 69:22-23 (emphasis added).

Other transcription errors make no sense in the context of the facts of the case and/or are phonetically similar to other words that do fit here. For example, the transcript records Mr. Martinez discussing his office in "Nashville." Dec. 14, 2023 Tr. at 109:25. Mr. Martinez did not have an office in Nashville, but did have an office in similar-sounding Asheville, and that office was discussed extensively at trial. Also, the transcript records Mr. Martinez as stating that he "graduated from Siena Law School," which does not appear to exist. Dec. 13, 2023 Tr. at 113:1. Mr. Martinez actually testified that he graduated from Seton Hall Law School. Martinez Decl. ¶ 3.

Accordingly, Defendants respectfully request the Court issue an order amending the trial transcripts in the following manner:

| Witness | Transcript Citation | Transcribed Testimony | Corrected Testimony |
| --- | --- | --- | --- |
| Anthony Martinez | 12/13 Tr. at 113:1 | I graduated from Siena Law School | I graduated from Seton Hall Law School |
| Anthony Martinez | 12/13 Tr. at 115:1-3 | So I split the office up into trial teams, an appellate | So I split the office up into trial teams, an appellate unit, and an |

| | | unit, and a trip team, and an administrative unit team. | IT team and an administrative team. |
|---|---|---|---|
| Anthony Martinez | 12/13 Tr. at 129:24 | Mr. Kaite in the trial unit | Mr. Tate in the trial unit |
| Anthony Martinez | 12/13 Tr. at 137:8 and 10-11 | Aaron Johnson | Kelly Johnson |
| Anthony Martinez | 12/13 Tr. at 144:11-12 | Ms. Strickland would be supporting or doing R & W work for JP Davis's time. | Ms. Strickland would be supporting or doing R & W work for JP Davis's team. |
| Anthony Martinez | 12/14 Tr. at 78:9 | Please do not e-mail, text, or meet with him | Please do not e-mail, text, or meet with Caryn |
| Anthony Martinez | 12/14 Tr. at 109:25 | Nashville | Asheville |
| Anthony Martinez | 12/14 Tr. at 110:8-9 | If an IT person came in, they would come in through the EDR office. | If an IT person came in, they would come in and share the office. |
| J.P. Davis | 12/18 Tr. at 59:19 | and took her response. It was a "Yes." | and took her response as a yes. |
| J.P. Davis | 12/18 Tr. at 61:4-6 | First, because Ms. Coleman is in the Asheville office and so it had nothing to do with the Dixon matter and she can be objective about that. | First, because Ms. Coleman is in the Asheville office and so she had nothing to do with the Dixon matter and she can be objective about that. |
| J.P. Davis | 12/18 Tr. at 68:2-3 | I asked her if she had raised that she had a conflict, and she responded to that. | I asked her if she had raised that she had a conflict, and she didn't respond to that. |
| J.P. Davis | 12/18 Tr. at 69:4-5 | The specific individual instances reflects both. | The specific individual instances were flexible. |
| J.P. Davis | 12/18 Tr. at 69:23-24 | There still were a couple of months that were tense | There still were a couple of moments that were tense. |
| J.P. Davis | 12/18 Tr. at 70:11-12 | I had sent her the final product, the first and final edits | I had sent her the final product for her final edits |

| | | | |
|---|---|---|---|
| J.P. Davis | 12/18 Tr. at 74:8-9 | and under the previous month | and over the previous month |
| J.P. Davis | 12/18 Tr. at 92:19 | I already had it | I already had set it |
| J.P. Davis | 12/18 Tr. at 99:7-9 | I believe I told the investigator that I was very upset, that I was controlling myself. | I believe I told the investigator that I was very upset, but that I was controlling myself. |
| J.P. Davis | 12/18 Tr. at 101:20-21 | the first text sounded more serious than I admitted. | the first text sounded more serious than I intended. |
| J.P. Davis | 12/18 Tr. at 106:24-25 | after I made that comment, for that 'You had been | after I made that comment, after that 'You had been |
| J.P. Davis | 12/18 Tr. at 107:16-17 | it may have only changed when, um, the time when I believed Tony would take you off the case. | your attitude only changed when, um, I told you I believed Tony would take you off the case. |
| J.P. Davis | 12/18 Tr. at 108:15-16 | if you don't think it's set | because you looked upset |
| J.P. Davis | 12/18 Tr. at 112:9-11 | I believe I was responding to your text stating that you had, um, some fun things that you had to do that day | I believe I was responding to your text stating that you had, um, some things that you had to do that day |
| J.P. Davis | 12/18 Tr. at 114:2-7 | I would never have permitted multiple instances of being out without leave. And then for teleworking, I would have expected to have to – (Inaudible.) audacity, lack of accountability, for them to get chewed out, and be well on their way to assess at the meeting last night | I would never have permitted the multiple instances of being out without leave and unapproved telework, and I would have expected that after the continued mendacity and lack of accountability, they would get chewed out and be well on their way to a PIP at the meeting last night |

Amending the transcripts in this manner will ensure a more accurate record of the trial proceedings. The requested changes are clerical in nature because they merely correct transcription errors. Accordingly, revising the transcripts is appropriate under Rule 60(a). Rule 60(a) "[c]learly" allows "courts to perform mechanical adjustments to judgments, such as correcting transcription errors[.]" *Sartin v. McNair Law Firm PA*, 756 F.3d 259, 265 (4th Cir. 2014).[2]

## CONCLUSION

For the foregoing reasons, the Court should amend the trial transcripts as requested herein.

Dated: August 12, 2024            Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

*/s/ Joshua Kolsky*
JOSHUA KOLSKY
Senior Trial Counsel
DOROTHY CANEVARI
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20001
Tel.: (202) 305-7664
Email: joshua.kolsky@usdoj.gov

*Counsel for Defendants*

---

[2] Defendants recognize that the court reporter was located in a different location than the witnesses, which likely made it more difficult to accurately transcribe the proceedings, and they appreciate the court reporter's fine work.

**CERTIFICATION PURSUANT TO JUNE 18, 2024 STANDING ORDER**

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, Fastcase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

    /s/ Joshua M. Kolsky    
Joshua M. Kolsky
